UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN PRODUCTS LIABILITY LITIGATION** | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Hon. Robert B. Kugler,<br>District Court Judge<br><br>Hon. Thomas Vanaskie (Ret.),<br>Special Master |
| **This Document Relates to All Actions** | |

**WHOLESALERS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION AND INCORPORATED MEMORANDUM OF LAW TO MODIFY SPECIAL MASTER REPORT AND ORDER NO. 46**

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

    I.    PLAINTIFFS' OBJECTIONS TO THE DISMISSAL OF THEIR NEGLIGENCE CLAIMS ARE UNSUPPORTED AND UNPERSUASIVE. ...........................................................................................2

    II.   PLAINTIFFS' BELATEDLY-RAISED NEW NEGLIGENCE THEORIES AND COMPLAINTS REGARDING DISCOVERY COME OUT OF THIN AIR AND ARE UNAVAILING. ...............................................8

CONCLUSION............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butera v. Honeywell Int'l, Inc.*,
   No. CV 18-13417-SDW-LDW, 2020 WL 64568 (D.N.J. Jan. 6, 2020) ............................ 8, 10

*Fagan v. AmerisourceBergen Corp.*,
   356 F. Supp. 2d 198 (E.D.N.Y. 2004) ...................................................................................6, 7

*Leslie v. United States*,
   986 F. Supp. 900 (D.N.J. 1997), *aff'd,* 178 F.3d 1279 (3d Cir. 1999) ....................................5

*Love v. Weecoo (TM)*
   774 F. App'x 519 (11th Cir. 2019) ..........................................................................................6

*In re Nexus 6P Prod. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ......................................................................... 8, 9, 10

*Peruto v. TimberTech Ltd.*,
   126 F. Supp. 3d 447 (D.N.J. 2015) ..........................................................................................6

# **INTRODUCTION**

Plaintiffs' Objection merely repeats the same, tired arguments that have failed twice before, and should be again rejected by this Court. *See* Plaintiffs' Objection and Incorporated Memorandum of Law to Modify Special Master Report and Order No. 46 (hereinafter "Objection"). Plaintiffs contend this Court erred in dismissing their negligence claims as to Wholesalers because (1) Plaintiffs' Complaints allege that Wholesalers owed various common law duties; and (2) Plaintiffs' Complaints allege that Wholesalers "should have known" of the alleged NDMA contamination. Objection at 3-6. The Court has already fully considered the purported duties owed by Wholesalers, however, as well as Plaintiffs' allegations regarding Wholesalers' knowledge, in dismissing their negligence claims. Plaintiffs' third (at least) bite at this apple should fare no better here, as their cited authorities do not compel a different conclusion.

Perhaps because Plaintiffs realize that they cannot repeat the identical failed arguments again, they also use this briefing as a vehicle to have the Court consider *brand new* negligence allegations against Wholesalers, nowhere to be found in any of their Amended Complaints or prior pleadings. These new allegations are not only procedurally improper and untimely, but also conclusory, and similarly fail to state a proper claim for negligence as to Wholesalers.

Finally, Plaintiffs complain to the Court *for the very first time* that their pleading failures are a result of Wholesalers' conduct during the discovery process. In essence, Plaintiffs are blaming Wholesalers for following this Court's and the Special Master's discovery schedule. Unfortunately for Plaintiffs, there is no dispute that: (1) Wholesalers complied with the Court-ordered discovery schedule, and (2) Plaintiffs have never before raised a discovery dispute with Wholesalers to the Court. The Court should not now allow Plaintiffs to revive their negligence claims based on the false hope that there is something out there that may provide greater color to the allegations this Court has already deemed insufficient multiple times.

The reality is that after more than two-and-a-half years of litigation, multiple iterations of the Master Complaints, and the completion of extensive written discovery, document productions, and Wholesaler 30(b)(6) depositions, Plaintiffs still have no basis to assert negligence claims against Wholesalers. The Court should maintain its dismissal of those claims and overrule Plaintiffs' Objection.

## ARGUMENT

### I. PLAINTIFFS' OBJECTIONS TO THE DISMISSAL OF THEIR NEGLIGENCE CLAIMS ARE UNSUPPORTED AND UNPERSUASIVE.

Plaintiffs argue against this Court's findings that: (1) Plaintiffs cite no authority in support of the supposed duties they alleged are owed by Wholesalers; and (2) the Complaints contain no allegations that Wholesalers knew of the NDMA

2

contamination. Plaintiffs first contend that they need not cite any authority to support the alleged Wholesaler duties scattered throughout the factual allegations in the Complaints (and notably, absent from the negligence counts themselves). Plaintiffs next contend that their allegations that Wholesalers "knew or should have known" of the alleged NDMA contamination are sufficient. Objection at 4-5. Both contentions are without merit. Plaintiffs merely make up duties out of thin air, and then fail to establish that Wholesalers actually owed the various duties alleged. To top it all off, Plaintiffs' allegations regarding breach of those purported duties are unsupported and conclusory. Finally, Plaintiffs do not plausibly plead that Wholesalers "should have known" of the alleged contamination.

Plaintiffs argue that they need not "cite a singular source" for the duties purportedly owed by Wholesalers. Objection at 5. To the contrary, courts routinely consider whether a plaintiff has cited authority to support the existence of an alleged duty when ruling on the sufficiency of a complaint. *See, e.g.*, *Leslie v. United States*, 986 F.Supp. 900, 913 (D.N.J. 1997), *aff'd,* 178 F.3d 1279 (3d Cir. 1999) ("Plaintiffs have cited no authority, and the Court's research has yielded none, which requires manufacturers of legally distributed ammunition to ensure instantaneous removal of their products from the shelves upon an announced intention to discontinue product sales to a certain market and to refocus their marketing efforts. Having failed to establish a duty, plaintiffs cannot state a cognizable claim for negligence.

3

Accordingly, the Count IX of the complaint alleging negligent recall must also be dismissed."); *Peruto v. TimberTech Ltd.*, 126 F.Supp.3d 447, 458 (D.N.J. 2015) (dismissing a negligent misrepresentation claim, where "Plaintiffs provide no authority establishing a duty to disclose based on the allegations in the Complaint.").

Indeed, in the case Plaintiffs rely upon for the proposition that Wholesalers owed a duty of care based on "familiar common law negligence principles," the court explicitly weighed various authorities to decide whether the wholesaler owed a specific duty of care. *See Fagan v. AmerisourceBergen Corp.*, 356 F.Supp.2d 198, 207-211 (E.D.N.Y. 2004). In *Fagan*, the court considered whether the wholesaler owed a duty of care based on the criminal acts of third parties putting counterfeit labels on certain medication. *Id*. at 207. The court evaluated several cases in determining whether the wholesaler owed a duty of care, ultimately finding that "[t]he holdings of the Ninth Circuit and the Ohio Supreme Court provide persuasive authority for a finding of duty on the part of ABC in this case." *Id*. at 209.

By contrast, here, Plaintiffs fail to identify any authority to support the various supposed duties they contend were owed by Wholesalers – for example, the alleged duty to comply with "Good Distribution Practices". Objection at 3 (citing PELMC ¶ 492). This is reason enough to maintain the dismissal of Plaintiffs' negligence claims against Wholesalers.

4

Further, as detailed in Wholesalers' Opposition to Plaintiffs' Motion for Leave to Amend and supporting Sur-Reply, Plaintiffs only recite conclusory allegations regarding Wholesalers' purported breach of those unsupported duties. ECF 1281 at 38-39; ECF 1454 at 14-16. For example, Plaintiffs do not explain how any Wholesaler failed to conduct "[a] good faith risk assessment" or failed to exercise "ordinary diligence" in their acquisition of VCDs. ECF 1454 at 15-16. Instead, Plaintiffs simply conclude that Wholesalers should have been on notice of the VCDs' contamination based on sources such as "regulatory submissions on file with the FDA." *Id.* But Plaintiffs do not identify those "regulatory submissions" (if there are any) nor articulate *what* information in those "regulatory submissions" or other sources would have informed Wholesalers of the alleged contamination of VCDs. *Id.* Unspecific, conclusory allegations of breach such as these are fatal to Plaintiffs' claims.

Relatedly, in dismissing Plaintiffs' claims, the Court explicitly considered allegations that Wholesalers "knew or **should have known**" of the "actual or potential adulteration, misbranding, or contamination of VCDs" and that "Manufacturer Defendants utilized different manufacturing and quality practices or controls than those used by the brand-reference drug manufacturer." ECF 1614 at 30 (quoting PPIMC ¶394; PELMC ¶715; PMMMC ¶471) and 35 (quoting PELMC ¶ 535) (emphasis added). While allegations of actual knowledge are not required to

5

support a negligence claim, the Court properly dismissed Plaintiffs' claims because they did not even plausibly allege that Wholesalers *should have* known of the alleged "different manufacturing and quality practices," or the NDMA contamination. Indeed, dismissal is appropriate at the pleadings stage where, as here, allegations regarding a defendant's knowledge (actual or constructive) are conclusory. *See, e.g.*, *Butera v. Honeywell Int'l, Inc.*, No. CV 18-13417-SDW-LDW, 2020 WL 64568, at *7 n.13 (D.N.J. Jan. 6, 2020)(granting the defendant's motion to dismiss, where the plaintiff's "allegation that Defendant performed 'materials testing' on the Valves prior to sale, and that this testing was either 'inadequate' or revealed the defect . . . is a conclusory allegation unsupported by facts and is therefore insufficient to show Defendant's knowledge."); *In re Nexus 6P Prod. Liab. Litig.*, 293 F.Supp.3d 888, 908-09 (N.D. Cal. 2018) (finding the plaintiffs' allegation that "Defendants knew (or exercising due diligence should have known) that the Phones were defective at the time of sale . . . is conclusory," and granting the defendant's motion to dismiss in part, on the basis that "Plaintiffs have not adequately alleged that Huawei or Google knew (or reasonably should have known) of the defects when Plaintiffs purchased their phones.").

In the primary case relied upon by Plaintiffs, *Love v. Weecoo (TM)*, the Eleventh Circuit found that the plaintiff had "alleged enough facts" to infer that the Amazon (the retailer) had "at least constructive knowledge" of the alleged defect in

6

the hoverboard at issue. 774 F.App'x 519, 521–22 (11th Cir. 2019). The Court found that "[t]he complaint contains more than just 'bare assertions' that Amazon 'knew or should have known' about the risk of fire[,]" and that "Plaintiff provided additional 'factual content' to support that allegation." *Id*. Specifically, the Plaintiff alleged that several fires had already been caused by the same model of hoverboard, and that "Amazon had already been sent written notification of four specific fires that had been caused by hoverboards sold by Amazon." *Id*.

By contrast, here, all Plaintiffs present are "bare assertions" that Wholesalers "knew or should have known" of the alleged contamination and "different manufacturing and quality practices," without alleging what facts, specifically, put Wholesalers on constructive notice. For example, Plaintiffs allege that "Wholesaler Defendants knew or should have known, **based on information provided or available from each manufacturer defendant**, of the actual or potential adulteration, misbranding, or contamination of VCDs they purchased from manufacturer defendants." PPIMC ¶ 454 (emphasis added). But Plaintiffs do not articulate *what* specific "information provided or available" from each manufacturer would have put Wholesalers on notice of any alleged contamination of VCDs. Bare assertions such as these are a far cry from the specific facts alleged in *Love*, where Amazon had already been given written notice of the exact danger (fires) occurring with the exact type of product at issue. *Love*, 774 F. App'x at 521–22. Because

7

Plaintiffs only plead conclusory allegations regarding Wholesalers' knowledge of the alleged defects, their negligence claims were, and should stay, properly dismissed. *See, e.g., Butera*, 2020 WL 64568, at *7 n.13; *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d at 908-09.

## II. PLAINTIFFS' BELATEDLY-RAISED NEW NEGLIGENCE THEORIES AND COMPLAINTS REGARDING DISCOVERY COME OUT OF THIN AIR AND ARE UNAVAILING.

Incredibly, after two-and-a-half years of litigation, Plaintiffs now raise, for the very first time in a motion, allegations that Wholesaler Defendants "continued selling VCDs after the first recalls began in 2018," and "did nothing in the wake of the unprecedented notices about NDMA in VCDs, and simply sat back passively without going back to their suppliers to ensure that *other* VCDs that had yet to be recalled were NDMA-free (which, it turned out, they were not)[.]" Objection at 5. Plaintiffs claim these facts are "evidence enough from which a jury could find these defendants were negligent[.]" *Id*.

Like the rest of Plaintiffs' negligence allegations, these statements are conclusory and fail to properly articulate a duty owed to Plaintiffs by Wholesalers.[1] But more importantly, these allegations are nowhere to be found in Plaintiffs'

---

[1] Indeed, there is no factual dispute that Wholesalers followed the Manufacturers' various instructions sent in the recall notices, and Plaintiffs articulate no duty that Wholesalers needed to do more than instructed.

8

Motion for Leave to Amend, any of their Proposed Amended Complaints, or their Reply in Support of their Motion for Leave to Amend. *See generally*, ECF 1148, ECF 1382. Plaintiffs cannot have unlimited bites at the apple. The Court should disregard Plaintiffs' attempt to rewrite their pleadings yet again – after being given ample time and opportunities to do so.

Plaintiffs also complain to the Court – also for the very first time – that they should be allowed to amend their Complaints because Wholesalers have supposedly "slow-play[ed]" discovery, preventing Plaintiffs from uncovering facts necessary to prop up their unsubstantiated negligence allegations. Objection at 5-6. Plaintiffs' complaint of prejudice is meritless. At the outset, Wholesalers have worked diligently with Plaintiffs throughout this case to negotiate the scope of discovery, and have timely complied with all of their discovery obligations within the schedules set out by this Court (or through the Special Master) and agreed-to by the parties. Specifically:

- Wholesalers met and conferred with Plaintiffs about Requests for Production ("RFPs") on numerous occasions, on Plaintiffs' schedule. Wholesalers did so even when Plaintiffs' claims against them in two of the three Master Complaints had been dismissed in their entirety based on standing, and thus the proper scope of discovery was uncertain.

- On May 17, 2021 when it looked like the parties were almost agreed on the RFP language, *Plaintiffs added two entirely new RFPs* seeking additional product tracing and inventory/order forecasting information. At a May 26, 2021 meet and confer, Plaintiffs stated that they understood that the new RFPs required additional time to discuss,

9

- and that they wanted to postpone discussion of the 30(b)(6) notices until the RFPs were settled.

- On June 1, 2021 the parties reached agreement on the RFP language, and on June 7, 2021, Plaintiffs' counsel requested that the Court approve the finalized RFPs and order downstream defendants to (i) respond and commence production within 30 days of entry, and (ii) substantially complete their productions within 60 days of entry. On June 10, 2021 the Court entered an Order to that effect. ECF 1306.

- On July 12, 2021, in accordance with the Court-ordered timeline, Wholesalers responded to the Second Set of RFPs and commenced production. Wholesalers timely completed their productions by August 9, 2021. This was almost two months before the 30(b)(6) depositions of Wholesalers' representatives, on October 5, 2021.

- Far from being prejudiced by this Court-ordered timeline, as it turned out, Plaintiffs did not even review certain Wholesalers' productions for weeks—or even months—after receipt, and were not even sure what materials they actually had. For example, on September 15, 2021, DISCO, Plaintiffs' discovery vendor, stated to McKesson that it had failed to download 3 entire volumes of McKesson's production, encompassing over 1,000 bates numbers (MCK00000744 - MCK00001785), the earliest of which was produced *a full year earlier* on September 14, 2020. Ex. 1. [2]

In short, it is an egregious misstatement to say that Wholesalers "slow played" discovery. Wholesalers engaged in cooperative negotiations with Plaintiffs and

---

[2] Similarly, on September 30, 2021, Plaintiffs' counsel stated that they had not yet placed Cardinal Health's August 9, 2021 production on a review platform, and asked Cardinal Health to reproduce the documents. And during the deposition of ABC witness Stephen Mays on October 5, 2021, Plaintiffs' counsel incorrectly claimed ABC had not produced inventory management policies, although those documents were produced with ABC's August 9, 2021 production.

10

wholly complied with the Court-ordered discovery schedule. If anything, Plaintiffs' complaint is directed at the Court's schedule, not Wholesalers' conduct. Further, Plaintiffs *never* brought any discovery dispute with Wholesalers or related motion to compel to the Court's attention – belying their sudden claim of disadvantage.

In sum, Plaintiffs grasp at straws to resuscitate their negligence claims against Wholesalers. They brazenly repeat their allegations regarding imaginary duties supposedly owed by Wholesalers without citing to any supporting authority for those purported duties, and then continue to recite unsubstantiated and conclusory allegations regarding Wholesalers' knowledge of the alleged contamination. They also belatedly attempt to introduce brand-new (and still wholly conclusory) allegations of Wholesaler negligence. And for the first time, Plaintiffs feign injury due to the Court-ordered schedule in the discovery process, which has supposedly prevented them from making out plausible negligence allegations against Wholesalers. The Court should disregard these feeble attempts to rewrite history and maintain its dismissal of all negligence claims[3] as to Wholesalers.

---

[3] Specifically, the Court should maintain its dismissal as to PPIMC Count IV and Count XI (to the extent the State-Law Products Liability Act Claims sound in negligence); PELMC Count XIII and Count XIV; and PMMMC Count I and Count IX (to the extent the State-Law Products Liability Act Claims sound in negligence).

11

## CONCLUSION

WHEREFORE, for the foregoing reasons, Wholesalers respectfully request that the Court reject Plaintiffs' request to modify the Special Master Report (ECF 1614) and Order No. 46 (ECF 1615), with respect to the negligence claims against Wholesalers. Plaintiffs' negligence claims against Wholesalers have been properly dismissed with prejudice.

Dated: November 23, 2021                Respectfully submitted,

/s/    Jeffrey D. Geoppinger
Jeffrey D. Geoppinger, Esq.
Liaison Counsel for Wholesalers
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

***Counsel for Amerisource Bergen***

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel.: (202)624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com

*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com

*Counsel for McKesson Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of November, 2021, I filed the foregoing **WHOLESALERS' RESPONSE IN OPPOSITION TO PLAINTIFFS' OBJECTION AND INCORPORATED MEMORANDUM OF LAW TO MODIFY SPECIAL MASTER REPORT AND ORDER NO. 46** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

/s/ Jeffrey D. Geoppinger
Jeffrey D. Geoppinger