Neutral

As of: November 29, 2021 11:59 PM Z

# Berman v. Mobil Shipping & Transp. Co.

United States District Court for the Southern District of New York

March 27, 2019, Decided; March 27, 2019, Filed

14 Civ. 10025 (GBD)

### Reporter
2019 U.S. Dist. LEXIS 55671 *; 2019 WL 1510941

DANIEL J. BERMAN, as Special Administrator of the Estate of Jurgen Unterberg, Plaintiff, -against- MOBIL SHIPPING AND TRANSPORTATION COMPANY, Defendant.

**Prior History:** Unterberg v. ExxonMobil Oil Corp., 203 F. Supp. 3d 324, 2016 U.S. Dist. LEXIS 118586 (S.D.N.Y., Aug. 23, 2016)

## Core Terms

Vessels, exposure, asbestos, mesothelioma, samples, asbestos exposure, argues, summary judgment, collected, aboard, ships, exposure to asbestos, tankers, insulation, reliable, repair, expert testimony, opine, exposed to asbestos, asbestos-containing, exposed, records, triable issue of fact, asbestos fiber, causation, airborne, asserts, concentrations, cumulative, preclusion

**Counsel:** [*1] For Daniel J. Berman as Special Administrator of the Estate of Jurgen Unterberg, deceased, Plaintiff: Robert I. Komitor, LEAD ATTORNEY, Keith Binder, Levy Konigsberg, LLP, New York, NY USA.

For Mobil Shipping And Transportation Company, Defendant: Arshia Hourizadeh, Dennis Enrique Vega, Tanenbaum Keale LLP, Newark, NJ USA; Joseph P. LaSala McElroy, Deutsch, Mulvaney & Carpenter, LLP(NJ) Newark, NJ USA.

For Ingersoll-Rand Company, Cross Defendant: Lisa M. Pascarella.

**Judges:** GEORGE B. DANIELS, United States District Judge.

**Opinion by:** GEORGE B. DANIELS

## Opinion

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

Plaintiff Daniel J. Berman, in his capacity as Special Administrator of the Estate of Decedent Jurgen Unterberg, brings this action against Defendant Mobil Shipping and Transportation Company ("MOSAT") asserting claims stemming from Decedent's alleged asbestos exposure while working aboard certain vessels (the "Subject Vessels") allegedly owned or controlled by Defendant. (*See* Third Am. Compl., ECF No. 277.) Defendant moves for summary judgment, (ECF No. 230), and to preclude the testimony of Plaintiff's expert witnesses. (ECF Nos. 247, 250, 253, 256, 259, 262, 265.) Plaintiff cross-moves [*2] to preclude the testimony of Defendant's expert witnesses. (ECF No. 270, 281.)

Defendant's motion for summary judgment is DENIED. Defendant's motions to preclude the testimony of Commander David E. Cole, Dr. Ronald E. Gordon, Kristin Kucsma, Captain William A. Lowell, Dr. Steven Markowitz, David Rosner, and Dr. Allan H. Smith are DENIED. Defendant's motion to preclude the testimony of Dr. Arnold R. Brody is DENIED as moot.[1] Plaintiff's motions to preclude the testimony of Dr. Charles R. Cushing and Dana Hollins are GRANTED in part and DENIED in part. Dr. Cushing and Hollins are not precluded as witnesses, but certain areas of their testimony and opinions will be excluded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Decedent Jurgen Unterberg, a German citizen, served in the German Navy and was a merchant seaman and surveyor from 1964 to 2012. (Def.'s 56.1 Stmt., ECF No. 232-21, ¶ 1.) Plaintiff alleges that Unterberg worked for MOSAT aboard the Subject Vessels from 1973 to 1978. (*Id.* ¶ 15.) Plaintiff further alleges that Decedent's exposure to asbestos-containing material ("ACM") aboard the Subject Vessels caused him to develop mesothelioma and ultimately caused his death. (*Id.* ¶ 6.)

On December [*3] 28, 2012, Kelan Unterberg, Decedent's widow, brought an action in the Circuit Court of the First Circuit of the State of Hawaii (the "Hawaii Action"), against MOSAT's parent company, ExxonMobil Oil Corporation f/k/a Mobil Oil Corporation ("ExxonMobil") and various other defendants. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s MSJ Opp'n"), ECF No. 285, at 3; *see also* Cert. of Dennis E. Vega in Supp. of Def.'s Mot. for Summ. J. dated Oct. 2, 2015 ("Vega ExxonMobil Cert."), Ex. 1, ECF No. 113-1 (complaint in the Hawaii Action).) The Hawaii Action was dismissed for lack of personal jurisdiction. (Pl.'s MSJ Opp'n at 4; *see also* Vega ExxonMobil Cert., Ex. L, ECF No. 113-14 (order granting motion to dismiss in the Hawaii Action).)

On November 14, 2014, Kelan Unterberg brought a new action (the "New York Action") in the Supreme Court of the State of New York ("New York Supreme Court") against ExxonMobil and others, asserting claims for: (1) negligence under § 33 of the Merchant Marine Act of 1920 (the "Jones Act"), *46 U.S.C. § 50101 et seq.*; (2) breach of the warranty of seaworthiness and reasonable fitness under general maritime law; and (3) a remedy of maintenance and cure. (Pl.'s MSJ Opp'n at 4; *see also* [*4] Compl., ECF No. 1-1.) On December 19, 2014, ExxonMobil removed the New York Action to this Court. (Pl.'s MSJ Opp'n at 4; *see also* Notice of Removal, ECF No. 1.)

On January 5, 2016, ExxonMobil moved for summary judgment. (ECF No. 139.) ExxonMobil argued, among other things, that [e]xtensive discovery in the Hawaii [A]ction revealed that from 1973-1978 . . . , Mr. Unterberg's employer was MOSAT[.]" (Br. in Supp. of Def.'s Mot. for Summ. J., ECF No. 140, at 10.) At oral argument on ExxonMobil's motion, this Court granted Kelan Unterberg leave to file a Second Amended Complaint naming MOSAT as a defendant.[2] (*See* Order, ECF No. 183.) She did so on May 31, 2016. (*See* Second Am. Compl., ECF No. 186.) On August 23, 2016, this Court granted ExxonMobil's motion for

---

[1] Defendant filed a motion to preclude the testimony of Dr. Arnold R. Brody, who was retained by Plaintiff. (ECF No. 265.) However, Plaintiff did not file an opposition to the preclusion motion, nor did Plaintiff cite Brody's testimony in opposing Defendant's summary judgment motion. At oral argument, Plaintiff stated that he will not seek to introduce Brody's report or testimony at trial. Accordingly, the motion to preclude Brody's testimony is moot.

[2] Kelan Unterberg previously amended the original complaint in New York Supreme Court. (*See* Am. ECF No. 1-3.)

summary judgment. (*See* Memorandum Decision and Order, ECF No. 139.)

On September 8, 2016, Defendant moved to dismiss the Second Amended Complaint for lack of personal jurisdiction. (ECF No. 200.) On September 20, 2017, this Court denied Defendant's motion. (Memorandum Decision and Order, ECF No. 216.) On November 7, 2018, this Court granted Plaintiff's motion for leave to file a Third Amended Complaint. (ECF No. 274.)

Defendant now [*5] moves for summary judgment. (ECF No. 230.) Defendant also moves to preclude the testimony of Plaintiff's expert witnesses. (ECF Nos. 244, 247, 250, 253, 256, 259, 262, 265.) Plaintiff cross-moves to preclude the testimony of two of Defendant's expert witnesses. (ECF Nos. 270, 281.)

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56(a)*. "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*). A fact is material when "it 'might affect the outcome of the suit under the governing law.'" *Gayle, 313 F.3d at 682* (quoting *Anderson, 477 U.S. at 248*).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002)*. In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002)* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986))*, and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)* (quoting *Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998))*. Rather, the opposing party must produce [*6] admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289-90, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)*. In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003)* (quoting *Anderson, 477 U.S. at 252*).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. See *Niagara, 315 F.3d at 175*. However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki, 814 F.3d 47, 59 (2d Cir. 2016)* (internal quotation marks and citations omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party." *Marvel, 310 F.3d at 286*.

## III. TRIABLE ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT

Defendant argues that it is entitled to summary judgment because there is no admissible evidence that: (1) Defendant employed Decedent; (2) Decedent was exposed to asbestos aboard the Subject Vessels; or (3) Decedent's alleged asbestos exposure aboard the

Case 1:19-md-02875-RMB-SAK   Document 1794-24   Filed 12/01/21   Page 4 of 19
PageID: 50804
2019 U.S. Dist. LEXIS 55671, *6

Page 4 of 19

Subject Vessels was a "substantial factor" in causing Decedent's injury. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s MSJ Mem."), ECF No. 231, at [*7] 1.) However, Plaintiff cites evidence raising triable issues of fact on each of those issues.

### A. Defendant's Role as Decedent's Employer

Defendant claims that there is no "admissible evidence that Decedent was ever employed by MOSAT." (*Id.* at 6.) Defendant acknowledges that International Marine Transportation Ltd. ("IMT"), an ExxonMobil affiliate, "found . . . a document that purported to be a 'Service Record' for Jurgen Unterberg" in its files. (Def.'s Reply Mem. in Further Supp. of Mot. for Summ. J. ("Def.'s MSJ Reply"), ECF No. 308, at 2; *see also* Cert. of Dennis E. Vega dated Sept. 18, 2018 ("Vega MSJ Cert."), Ex. I ("Service Record"), ECF No. 232-9.) In its responses to interrogatories in the Hawaii Action, Defendant explained that "IMT's human resources function (HR) was responsible for administering the personnel [sic] employed by MOSAT, including maintenance of their employment records." (Cert. of Ilana K. Waxman dated Nov. 15, 2018 ("Waxman Cert."), Ex. 5 ("Def.'s Resps. & Objs."), ECF No. 286-5, at 5 ¶ 7.)

Defendant argues that the Service Record is inadmissible hearsay and that it "cannot qualify as a record of regularly conducted activity under Rule 803(6)" of the Federal Rules of Evidence because [*8] "MOSAT . . . has located no witness with personal knowledge" of whether "the entries were all made 'at or near the time' of the events recorded."[3] (Def.'s MSJ Reply at 3.)

However, a "custodian need not have personal knowledge of the actual creation of a document to lay a proper foundation" for its admission under Rule 803(6). United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014) (quoting Phoenix Assocs. III v. Stone, 60 F.3d 95, 101 (2d Cir. 1995)). Rather, "[t]o lay a proper foundation, a custodian or other qualified witness must testify that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record]." *Id.* (quoting United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)) (alteration in original). If Plaintiff produces a witness who so testifies at trial, the Service Record may be admissible under Rule 803(6).

Defendant also argues that the Service Record is not admissible because there are "several aspects of th[e] document that cast doubt on its authenticity." (Def.'s MSJ Reply at 3.) Under Rule 901, to "authenticat[e] . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). But this rule 'does not erect a particularly high hurdle' and is 'satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" Crawford v. Tribeca Lending Corp., 815 F.3d 121, 126 (2d Cir. 2016) (quoting United States v. Tin Yat Chin, 371 F.3d 31, 37–

---

[3] Rule 803(6) provides an exception to the rule against hearsay for a "record of an act, event, condition, opinion, or diagnosis if," as relevant here:

   (A) the record was made at near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business . . . ; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances [*9] of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

38 (2d Cir. 2004)). Here, as noted above, the Service Record was produced by IMT, and Defendant acknowledges that IMT regularly maintained employment records for MOSAT employees. (*See* Def.'s Resps. & Objs. at 5 ¶ 7.) Based on this acknowledgement, a reasonable juror could find that the Service Record is authentic.[4]

Records found in Plaintiff's files also contain evidence from which a jury could infer that Defendant employed Decedent. A Certificate of Service on letterhead of an entity named "Mobil Oil Gesellschaft m.b.H.," dated December 22, 1978 (the "1978 Certificate of Service") states "Mr. H.J.W. [*10] Unterberg . . . had been employed with our company as a Repair and Service Engineer from dec.6th.1973 till dec.21st.1978 [sic]" and lists several of his duties. (Vega MSJ Cert., Ex. H ("Certs. of Service"), ECF No. 232-8, at 1.) A second Certificate of Service, dated February 22, 1979 (the "1979 Certificate of Service"), similarly states, "Mr. Jurgen Unterberg . . . had been employed as a 2nd and Chief engineer with our company from dec.6th 1973 till dec.21st 1978 [sic]." (*Id.* at 2.) The 1979 Certificate of Service also contains a list of voyages that Decedent took from June 12, 1973 to December 21, 1978. (*Id.* at 2-3.) Although the Service Record from IMT lists Decedent's "[d]ate employed" as October 12, 1974, the names of the Subject Vessels listed in the IMT Service Record and the voyages listed on and after October 12, 1974 correspond with those listed in the 1979 Certificate of Service.[5] (*Compare* Service Record, *with* Certs. of Serv. at 2-3.)

Defendant asserts that "[b]ased on MOSAT's investigation," no company named Mobil Oil Gesselschaft m.b.H. "existed in the 1970s." (Def.'s MSJ Mem. at 8 n.4.) However, because Plaintiff asserts that the Certificates of Service are evidence of Decedent's employment, Plaintiff—not Defendant—bears [*11] the burden of establishing their admissibility. If Plaintiff produces a qualified witness who lays an adequate foundation at trial, the Certificates of Service may be admissible as further evidence that MOSAT employed Decedent.

Even if neither the Service Record nor the Certificates of Service are admissible, Plaintiff cites other evidence suggesting that Defendant employed Decedent. In a letter dated July 1, 1982, ExxonMobil states, "Since 1967 German Fleet Officers during their service with Mobil have been employed by Mobil Shipping and Transportation Company, Monrovia, Liberia (MOSAT). MOSAT has been the employer notwithstanding that Officers have been assigned to vessels owned or bare-boat chartered by Mobil marine shipowning companies other than MOSAT." (Waxman Cert., Ex. 2, ECF No. 286-2, at 2.) Defendant's Assistant Corporate Secretary, Fiona Harness, has signed an affidavit to the same effect. (*See* Aff. of Fiona Harness dated Apr. 23, 2014, ¶ 6 ("From 1967 to August 1982, MOSAT employed all German officers who sailed aboard merchant vessels

---

[4] Because this Court finds that the Service Record may be admissible under Rule 803(6), it need not address Plaintiff's alternative argument that the Service Record is admissible as an ancient document pursuant to Rule 803(16). (*See* Pl.'s MSJ Opp'n at 7.)

[5] Defendant notes that a Seefahrtbuch ("Sea Service Book") produced by Plaintiff contains entries reflecting voyages on dates that conflict with the dates listed in the Service Record and 1979 Certificate of Service. (Del's 56.1 Stmt. ¶ 15 (citing Vega MSJ Cert., Ex. G, ECF No. 232-7).) However, Plaintiff states that it "does not intend to offer the Seefahrtbuch into evidence" at trial. (Pl.'s Resp. to Def.'s 56.1 Stmt., ECF No. 286-22, ¶ 15.) While Defendant may seek to introduce the Sea Service Book into evidence, the Service Record and 1979 Certificate of Service are sufficient to raise a triable issue of fact as to whether Decedent sailed on the Subject Vessels during the relevant period.

owned or bare-boat chartered by MOSAT and others.") (attached as Waxman Cert., Ex. 6, ECF No. 286-6, at 17).) Additionally, in its sworn [*12] interrogatory responses in the Hawaii Action, Defendant states, "Between 1967 and July 1982, MOSAT was the employer of all German seafarers serving the Mobil brand such as [D]ecedent, Jurgen Unterberg." (Def.'s Resps. & Objs. at 4 ¶ 6.) Because this evidence is sufficient to raise a triable issue of fact, Defendant is not entitled to summary judgment on the grounds that there is no evidence that it employed Decedent.

### B. Decedent's Asbestos Exposure

Defendant argues that, even assuming that it employed Decedent on the Subject Vessels, summary judgment is proper because Plaintiff has not "establish[ed] that there was *any* asbestos-containing equipment or material . . . on the [S]ubject . . . [V]essels" during the relevant time period. (Def.'s MSJ Mem. at 10.) However, Plaintiff cites evidence sufficient to raise a triable issue of fact as to whether Decedent was exposed to asbestos on the Subject Vessels.

Decedent made statements concerning his asbestos exposure to his pulmonologist, Dr. Alvin Furuike, and thoracic surgeon, Dr. Paul Morris. (*See* Pl.'s MSJ Opp'n at 8-9.) Defendant argues that these statements cannot defeat summary judgment because they are "strikingly similar to those deemed [*13] insufficient" in *Bartel v. A-C Products Liability, No. 10 Civ. 37528 (ECR), 2014 U.S. Dist. LEXIS 130420 (E.D. Pa. Sept. 3, 2014)*. (Def.'s MSJ Reply at 4 n.4.) However, in *Bartel*, the statements in the decedent's medical records were "not vessel or defendant specific." *Bartel, 2014 U.S. Dist. LEXIS 130420, at *11*. Here, Dr. Furuike's declaration and notes state that Decedent informed Dr. Furuike that he had "asbestos exposure while working aboard tankers *for Mobil Oil*." (Decl. of Alvin N. Furuike, M.D. dated October 31, 2018 ("Furuike Decl."), ECF No. 286-10, at ¶ 5 (emphasis added) (attached as Exhibit 10 to Waxman Cert.)); *see also* Waxman Cert., Ex. 11 ("Furuike Progress Note"), ECF No. 286-11 (noting Decedent's "remote asbestos exposure working for Mobil Oil aboard tankers").

Decedent's statements in Dr. Morris's records do not expressly mention MOSAT or ExxonMobil. However, Dr. Morris's records do refer to a specific incident that occurred "many years ago" when Decedent was "the chief engineer onboard an[] oil containing ship" in which the ship's boiler "caught on fire and . . . he needed to extinguish[] and systematically debride the asbestos from the insulation."[6] (Decl. of Paul T. Morris, M.D., FACS, FCCP dated Nov. 2, 2018, ("Morris Decl."), ECF No. 286-9, ¶ 7 (attached as Ex. 9 to Waxman Cert.); *id.*, Ex. 2, at 1 (consultation note [*14] dated Dec. 6, 2011).)

Defendant argues that Decedent's statements in Dr. Furuike's and Dr. Morris's records are inadmissible hearsay and that the medical records exception in *Rule 803(4)* does not apply because "neither of the medical notes were made contemporaneously with the incident giving rise to [Plaintiffs] claims" and "[t]here is no evidence that a diagnosis or treatment *depended on* whether Decedent's mesothelioma was caused by asbestos, much less whether the asbestos came from work aboard Mobil related ships as opposed to some other source of asbestos." (Def.'s MSJ Reply at 4 & n.1 (emphasis added).)

But *Rule 803(4)* does not require statements to made contemporaneously with the incident giving rise to a plaintiffs claims or that a diagnosis or treatment depend

---

[6] Dr. Morris's notes state, "On one baby boy alert caught on fire." (Morris Decl., Ex. 2, at 1.) However, Morris explains in his declaration that the statement should read, "One day the boiler caught on fire." (Morris Decl. ¶ 7.)

on the statements at issue. Rather, a statement is admissible under Rule 803(4) if it: (1) "is made for—and . . . reasonably pertinent to—medical diagnosis or treatment" and (2) "describes past medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4). Here, Dr. Furuike's and Dr. Morris's declarations indicate that Decedent made the statements during the course of their medical evaluations. (Furuike Decl. ¶ 5; Morris [*15] Decl. ¶ 8.) Defendant's suggestion that the statements were not pertinent to Decedent's diagnosis and treatment, (see Def.'s MSJ Reply at 4 n.1); is belied by the doctors' assertions that they "routinely . . . ask about the patient's past asbestos exposure . . . when diagnosing a patient with mesothelioma." (Furuike Decl. ¶ 4; Morris Decl. ¶ 4.)

Defendant further argues that "a report that . . . [asbestos] exposure occurred on *specific* ships as opposed to other exposures is not '*general* cause.'" (Def.'s MSJ Mem. at 4 (emphasis added).) But Defendant reads Rule 803(4) too narrowly. Decedent's statement that he was 10 exposed to asbestos while working on specific ships is a statement regarding the "general cause" of his mesothelioma—i.e., asbestos exposure. Indeed, Dr. Morris explains that he "ask[s] about past asbestos exposure because [his] experience and training tell [him] . . . that a patient's occupational history of exposure to asbestos is directly relevant to the diagnosis and cause of [the patient's] illness." (Morris Decl. ¶ 5.) If Plaintiff lays a proper foundation at trial, the statements in Decedent's medical records may be admissible under Rule 803(6). Thus, the statements are sufficient to raise [*16] a triable issue of fact as to Decedent's asbestos exposure on the Subject Vessels.[7]

---

[7] Defendant also asserts that "Dr. Furuike and Dr. Morris were never listed as . . . witness[es]" in Plaintiff's Rule 26 disclosures, and MOSAT never had an opportunity to depose[]

Even if Decedent's statements in the medical records were not admissible, Plaintiff cites other evidence from which a jury could find Decedent was exposed to asbestos aboard the Subject Vessels. Defendant's corporate representative, Bruce Larson, testified that "when [he] boarded [ExxonMobil] tankers in 1978 to 1982, there was asbestos-containing insulation present in the machinery spaces" and "asbestos-containing gaskets [and] packing."[8] (Waxman Cert., Ex. 1 ("Larson Dep. Tr."), ECF No. 286-1, at 90:16-25.)

Although Larson boarded only "domestic, U.S. based" vessels, (id. at 84:25-85:4), Larson provided additional testimony from which a jury could infer that the foreign flag Subject Vessels contained asbestos. Larson acknowledged that five of the six Subject Vessels were steam-powered and that boilers created the steam to power the ships. (Id. at 120:24-121:3.) When asked if "these boilers would have been insulated with asbestos

---

. . . or confront them about their declarations." (Def.'s MSJ Reply at 4 n.1.) However, Defendant knew of the relevant records at least as of August 8, 2018—prior to the close of fact discovery on August 17, 2018 (see Case Management Plan Scheduling Order, ECF No. 220, ¶ 7)—when Defendant's expert Dana Hollins provided Defendant with a report quoting Decedent's statements from those records. (See Report of Dana Hollins ("Hollins Report"), ECF No. 283-1, at 9 (quoting "medical record[s]" from "Furuike, M.D." and "Morris, M.D.").) Defendant did not seek an extension of the fact discovery schedule or seek to reopen discovery prior to moving for summary judgment. Because any failure to disclose Dr. Furuike's and Dr. Morris's names in Plaintiff's Rule 26 disclosures was harmless, exclusion of the records on that basis is not warranted. Fed. R. Civ. 37(c)(1).

[8] Larson gave deposition testimony as a corporate representative for ExxonMobil, but the parties have agreed that Larson's testimony "may be used in th[is] . . . matter as though Mr. Larson was also the corporate representative of Mobil Shipping and Transportation Company ('MOSAT')." (Waxman Cert., Ex. 12, ECF No. 286-12, ¶ 1.)

even after 1973," Larson stated, "[t]here would be, I'm sure, some residual insulation that contained asbestos over time." (*Id.* at 121:4-8.) Larson explained that he could [*17] not "give . . . a specific year" when any asbestos-containing insulation on MOSAT vessels was replaced with non-asbestos insulation, because there was a "transition period" in which the replacement "was done in the shipyards . . . when [vessels] would go in for their yearly repairs." (*Id.* at 121:8-17.) Larson also testified that the boilers would have had asbestos-containing gaskets and packing, because gaskets and packing "were not generally available in asbestos-free form" until the early 1980s.[9] (*Id.* at 129:16-130:7.)

Plaintiff asserts that Decedent's exposure to asbestos may also be inferred from the nature of Decedent's duties on the Subject Vessels. As evidence of those duties, Plaintiff cites the 1978 Certificate of Service, which describes his duties as, among other things, "[t]he supervision of all repairs aboard our tankers and troubleshooting," which "included the complete repairs and overhauling of shipsdieselengines [sic], compressors, generators and all auxillary [sic] engines, the maintenance and repair of highpressure [sic] boilers aboard and ashore" and "[t]he planning and supervision of shipyardrepairs [sic] and planned maintenance aboard the fleet." [*18] (Certs. of Serv. at 1.)

Plaintiff also cites the 1979 Certificate of Service, which reflects that Decedent was "employed as a 2nd and Chief [E]ngineer" on the Subject Vessels.[10] (Certs. of Serv. at 2.) While this Certificate does not list Decedent's duties, a 1976 ExxonMobil Tanker Manual (the "Tanker Manual") states that the "chief engineer is the head of the engine department" and is responsible for, among other things, "the efficient operation, maintenance and repair of all machinery and electrical equipment including cargo pumps, valves, piping, the inert gas system, deck machinery, refrigeration machinery, galley and domestic and other equipment as assigned." (Waxman Cert., Ex. 8 ("Tanker Manual"), ECF No. 286-8, § 1-5-46(b).) The chief engineer is also responsible for "making frequent inspections of machinery spaces to ensure proper operation of machinery." (*Id.* § 1-5-46(g).) The Tanker Manual also states that the "second engineer/first assistant is the second in charge of the engine department" and is responsible for, among other things, "all maintenance work associated with the engine department and for proper supervision of all personnel engaged in such work." (*Id.* § 1-5-50(c).)

Plaintiff then cites Larson's testimony to show that those duties exposed Decedent to asbestos. [*19] As discussed above, Larson testified that the domestic ExxonMobil tankers he boarded during the relevant time

---

[9] Plaintiff also claims that a March 30, 1982 letter from J.T. Knepper, MOSAT's vice president, to G.W. Thompson, an 1MT employee, "gives rise to an . . . inference that asbestos was used on" the Subject Vessels. (Pl.'s MSJ Opp'n at 13 (citing Waxman Cert., Ex. 9 ("Mar. 1982 Letter"), ECF No. 28.) The letter states, in pertinent part, "we should . . . investigate the presence of asbestos in [ExxonMobil] vessel[s] and, if it is found, . . . provide information to ships' officers concerning the safe handling of this potentially dangerous material." (Mar. 1982 Letter.) Knepper's recognition of the need to "investigate" whether asbestos was present on ExxonMobil vessels does not support an inference that ACM was used, and his discussion of what should be done "*if it is found*" makes clear that he is speaking hypothetically. (*Id.* (emphasis added).) However, as explained above, other evidence Plaintiff cites raises a triable issue of fact as to whether the Subject Vessels contained asbestos.

[10] The list of voyages in the 1979 Certificate of Service indicates that Decedent served as a "2nd Engr." on the Mobil Exporter, Mobil Pride, and Mobil Wapello, and as a "Chief Engr." on the Mobil Comet, Mobil Conastoga, Mobil Vigilant, and Mobil Wapello. (Certs. of Serv. at 2-3.)

period had ACM in the machinery spaces, that boilers in the Subject Vessels would have been insulated with asbestos, and that ExxonMobil generally used asbestos-containing gaskets and packing on its vessels until asbestos-free substitutes became available in the early 1980s.[11] (*See* Larson Dep. Tr. at 90:16-25, 121:4-8, 129:16-130:7.) This testimony, coupled with the evidence of Decedent's duties discussed above, raises a triable issue of fact as to whether Decedent was exposed to asbestos on the Subject Vessels.

### C. Causation

Defendant argues that even if Decedent was exposed to asbestos on the Subject Vessels, summary judgment is still appropriate because Plaintiff fails to raise a triable issue of fact as to whether the asbestos exposure was a substantial factor in causing Decedent's injury.[12] (Def.'s MSJ Mem. at 15.)

As evidence that asbestos exposure generally caused Decedent's injury, Plaintiff cites testimony from a pathology expert, Dr. Ronald E. Gordon, that a "significant [asbestos] fiber burden seen in Mr. Unterberg's lungs and lymph nodes" [*20] was the "causative factor in the development of his mesothelioma." (*Id.* at 22.) As evidence of Decedent's exposure on the Subject Vessels—in addition to the documentary evidence discussed above—Plaintiff seeks to introduce testimony from two marine experts, Commander David E. Cole and Captain William A. Lowell, that "Mr. Unterberg's job duties as an engineer aboard the [Subject Vessels] would have necessarily put him in contact with asbestos-containing insulation, gaskets, and packing on steam plant equipment" and "he would have had to disturb [ACM to] repair and replace such equipment." (Pl.'s MSJ Opp'n at 21-22.) Additionally, Plaintiff seeks to introduce testimony from two epidemiologists, Dr. Steven Markowitz and Dr. Allan H. Smith, that Decedent's "asbestos exposure during his . . . employment in the 1970s as an engineer for [MOSAT] was a contributing cause of his mesothelioma." (*Id.*)

Defendant argues that this "expert testimony . . . fails to raise any triable issue of fact" because Plaintiff "cannot rely upon . . . experts . . . to fill crucial evidentiary gaps." (Def.'s MSJ Reply at 9.) In particular, Defendant asserts that Plaintiff's experts do not "have any evidence of Decedent's [*21] specific tasks, service, duties, or responsibilities aboard any MOSAT vessel." (*Id.*) But this assertion is incorrect. As discussed above, the 1978 Certificate of Service lists duties that Decedent performed, and the Tanker Manual describes duties that

---

[11] As further evidence that MOSAT used ACM on the Subject Vessels and that Decedent's duties would have exposed him to asbestos, Plaintiff cites the testimony of two marine experts, Commander David E. Cole and Captain William A. Lowell. (*See* Pl.'s MSJ Opp'n at 12-13.) The testimony of these experts is discussed in the context of Plaintiff's motions to preclude, discussed in Section V, *infra*.

[12] The "substantial factor" standard applies only to Plaintiff's claim for a breach of the warranty of seaworthiness and reasonable fitness, which is brought under maritime law. *See LaFemina v. Bay Head, Inc., No. 04 Civ. 6523, 2005 U.S. App. LEXIS 22364, 2005 WL 265005, at *2 (2d Cir. Oct. 17, 2005)* (quoting *Barlas v. United States, 279 F. Supp. 2d 201, 208 (S.D.N.Y. 2003)*). "Under the *Jones Act*, a plaintiff is entitled to go to the jury if the proofs justify with reason the conclusion that employer negligence played any part, *even the slightest*, in producing the injury." *Oxley v. City of New York, 923 F.2d 22, 25 (2d Cir. 1991)* (quoting *Diebold v. Moore McCormack Bulk Transport Lines, Inc., 805 F.2d 55, 57-58 (2d Cir. 1986)*) (emphasis in original) (internal quotation marks omitted).

Because, as explained *infra*, Plaintiff has introduced evidence sufficient to raise a triable issue of fact under the maritime law standard, he has also satisfied the Jones Act standard.

Case 1:19-md-02875-RMB-SAK    Document 1794-24    Filed 12/01/21    Page 10 of 19
PageID: 50810

Page 10 of 19
2019 U.S. Dist. LEXIS 55671, *21

ExxonMobil required of individuals with positions listed in the Service Record and 1979 Certificate of Service. (*See* Tanker Manual; Cells. of Serv.)

Defendant further argues that even if Decedent performed work on the Subject Vessels, Plaintiffs experts made impermissible "logical leaps" in concluding that such work resulted in asbestos exposure that was a substantial factor in causing Decedent's injury. (Def.'s MSJ Mem. at 15.) To bolster this argument, Defendant cites the report of its industrial hygiene expert, Dana Hollins, who found that air samples taken from shipping vessels between 1978 and 1992 had asbestos concentration levels consistently below permissible limits, both "when no work was being conducted on [ACM]" and "during repair or clean-up activities . . . involving suspected [ACM]." (*Id.* (citing Hollins Report)) Defendant also argues that a "report[] prepared by . . . Dr. Charles Cushing," a naval architecture and marine [*22] engineering expert, shows that "the inferences necessary to support Plaintiff's case are wholly unsupportable," but does not cite to any findings in that report. (*Id.* at 15.) However, for reasons explained below, preclusion of Plaintiff's experts is not warranted. Because Plaintiff's experts' testimony, coupled with additional evidence discussed above, raises a triable issue of fact as to whether exposure to asbestos on the Subject Vessels was a substantial factor in causing Plaintiff's injury, Defendant is not entitled to summary judgment on the grounds that Plaintiff cannot establish causation.

**IV. LEGAL STANDARDS FOR PRECLUSION OF EXPERT WITNESSES**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which requires a court to first resolve "the threshold question of whether a witness is 'qualified as an expert by knowledge, skill, experience, training, or education' to render his or her opinions." Nimely v. City of New York, 414 F.3d 381, 396 n.11 (2d Cir. 2005) (quoting Fed. R. Evid. 702). In resolving this question, "a court must first ascertain whether the proffered expert has the educational background or training in a relevant field" and "then 'compare the area in which the witness has superior knowledge, education or experience, or skill with the subject matter of [*23] the preferred testimony.' Arista Records LLC v. Lime Grp. LLC, No. 06 Civ. 5936 (KMW), 2011 U.S. Dist. LEXIS 47416, 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (quoting United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004)) (additional citation and internal quotation marks omitted).

"If an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Id.* (quoting In re Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007)). "Assertions that the witness lacks particular educational or other experiential background[] 'go to the weight, not the admissibility, of [the] testimony.' In re Zyprexa, 489 F. Supp. 2d at 282 (quoting McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995)) (alteration in original).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, if a court finds that an expert is qualified, it must then determine whether the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004) (quoting Daubert, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). To evaluate whether expert testimony is relevant, a district court "should look to the standards of Rule 401, . . . i.e., whether it 'ha[s]

any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 401).

In assessing whether expert testimony is reliable, "the district court should [*24] consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data, (2) that the testimony 'is the product of reliable principles and methods,' and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" Id. (quoting Fed. R. Evid. 702). A district court may exclude expert testimony as unreliable "if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." Restivo v. Hessemann, 846 F.3d 547, 577 (2d Cir. 2017) (citation omitted). "By contrast, 'other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.'" Id. (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)). Similarly, "[m]ere weakness in the factual basis of an opinion bears on the weight of the evidence, not its admissibility. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." U.S. Bank Nat'l Ass'n v. PHL Variable Life Ins. Co., 112 F. Supp. 3d 122, 134 (S.D.N.Y. 2015) (internal quotation marks and citations omitted).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair [*25] prejudice, confusion of the issues, or misleading the jury.'" Nimely, 414 F.3d at 397 (quoting Fed. R. Evid. 403). But "rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes to 2000 amendments. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Amorgianos, 303 F.3d at 267.

## V. DEFENDANTS' MOTIONS TO PRECLUDE ARE DENIED

Defendant argues that the testimony of Plaintiff's marine experts, Cole and Lowell, pathology expert, Gordon, and epidemiology experts, Markowitz and Smith, should be precluded pursuant to Daubert and Rule 702 or, in the alternative, pursuant to Rule 403.[13] None of.

---

[13] Defendant also moves to preclude Plaintiff's economics expert, Kristin Kucsma, and Plaintiff's state of the art expert, Dr. David Rosner. (ECF Nos. 244, 262.) Neither party cites Kucsma's or Rosner's testimony in connection with Defendant's summary judgment motion. Preclusion is not warranted as to either expert. Defendants do not dispute Rosner's general qualifications as a scientific historian, and their arguments as to his lack of expertise in asbestos and training in other areas, (Mem. in Supp. of Mot. to Exclude ("Rosner Mem."), ECF No. 263, at 4-5), go to the weight rather than the admissibility of his testimony. See Arista Records LLC, 2011 U.S. Dist. LEXIS 47416, 2011 WL 1674796, at *2. Rosner's testimony is relevant and will assist the jury by "synthesiz[ing]" information "into a coherent narrative on what was knowable about the hazards of asbestos" during the time period of Decedent's alleged employment. New v. Borg-Warner Corp., No. 13 Civ. 675 (CV), 2015 U.S. Dist. LEXIS 117426, 2015 WL 5166946, at *3 (W.D. Mo. Sept. 3, 2015). Because Rosner's testimony is offered to show that the information he cites was known, rather than that it is true, Rosner will not be a "conduit for hearsay." (Rosner Mem. at 5.) Kucsma's testimony is relevant to the jury's determination of Plaintiff's damages. Defendant's object that Kucsma's methodology is flawed because she did not "deduct . . .

Case 1:19-md-02875-RMB-SAK   Document 1794-24   Filed 12/01/21   Page 12 of 19
PageID: 50812
2019 U.S. Dist. LEXIS 55671, *25

Page 12 of 19

Defendant's arguments has merit.

### A. Captain Lowell and Commander Cole

Defendant argues that Cole "lacks pertinent qualifications to offer any opinion regarding foreign seagoing vessels" because "he never served on a foreign vessel, never served on the crew of a tanker and never served in the engineering department or engineering crew of any seagoing vessel." (Def.'s Mem. in Supp. of Mot. to Exclude ("Cole Mem."), ECF No. 248, at 2.) However, Cole testified that he inspected "hundreds" of ships from [*26] 1967 to 1978 as a United States Coast Guard inspector, including foreign flag ships built during the same time period as the Subject Vessels. (Cert. of Dennis Vega dated Sept. 25, 2018, Ex. B ("Cole Dep. Tr."), ECF No. 249-2, at 75:9-15.) Cole further testified that during these inspections he "work[ed] next to the[] engineers" while "they were doing . . . repairs" and that the repair work involved disturbance of ACM. (*Id.* at 77:11-80:8.) Although some of the engineers he observed worked on domestic ships, Cole testified that he "saw the same activity whether they're foreign or U.S. flag ships." (*Id.* at 87:16-19.) Thus, Cole's experience inspecting foreign and domestic ships is "closely related" to the work of engineers on those ships and qualifies him to opine on Decedent's work as an engineer on the Subject Vessels and the extent to which it could have exposed Decedent to asbestos. *Arista Records LLC*, 2011 U.S. Dist. LEXIS 47416, 2011 WL 1674796, at *2. Defendant's challenge to Cole's "experiential background go[es] to the weight, not the admissibility, of [his] testimony." *In re Zyprexa, 489 F. Supp. 2d at 282*.

While Defendant does not challenge Lowell's qualifications, Defendant's remaining arguments that Defendant makes regarding Lowell's and Cole's testimony are substantially identical. [*27] Defendant argues that Cole's and Lowell's "opinion[s] do[] not meet the relevance standard of the Federal Rules of Evidence because [they] do [] not *prove* that it is more probable than not that [ACM] were installed on the merchant vessels Decedent sailed upon in areas where Decedent would have encountered it." (Cole Mem. at 16; Def.'s Mem. in Supp. of Mot. to Exclude ("Lowell Mem."), ECF No. 251, at 13.) But an expert's testimony need not "satisfy the plaintiff's burden [of proof] on the ultimate issue at trial" in order to "assist the trier of fact." *In re Pfizer Sec. Litig., 819 F.3d 642, 661 (2d Cir. 2016)*. Here, Cole's and Lowell's testimony is relevant because it has a "tendency to make . . . [it] more probable" that Decedent performed work aboard the Subject Vessels that exposed him to a substantial amount of ACM. *Fed. R. Evid. 401*.

### B. Dr. Gordon

Dr. Gordon opines that "[t]here is a significant asbestos fiber burden seen in Decedent's lungs" that is the "causative factor in the development of his mesothelioma." (Decl. of Ronald E. Gordon, Ph.D. dated Dec. 12, 2015, Ex. A, ECF No. 255-1, at 2.) Defendant argues that "Gordon's testimony can hardly be deemed relevant to the facts in this case, as facts linking Mr. Unterberg's duties aboard MOSAT vessels [*28] to any asbestos-containing products simply do not exist."

---

income taxes and work expenses." (Mem. in Supp. of Mot. to Exclude ("Kucsma Mem."), ECF No. 245, at 3.) However, this "flaw" does not warrant preclusion, because it is not "large enough that [Kucsma] lacks 'good grounds' for her conclusions." *Amorgianos, 303 F.3d at 267*. Defendant's remaining arguments, (*see* Kucsma Mem. at 3-4; Rosner Mem. at 5-7), concern the "factual basis" for the experts' opinions and their underlying "assumptions," and therefore go to the weight, not admissibility, of the experts' testimony. *See Restivo, 846 F.3d at 577*; *U.S. Bank Nat'l Ass'n, 112 F. Supp. 3d at 134*.

(Def.'s Mem. in Supp. of Mot. to Exclude, ECF No. 254, at 6.) But the fact that Gordon cannot "attribute the asbestos fibers found in Decedent's lungs to MOSAT" does not render his testimony irrelevant. (*Id.* at 7.) To prevail on his negligence claim, Plaintiff "must demonstrate both that exposure to asbestos can cause mesothelioma as a general matter (i.e. 'general causation') and that . . . specific instances of exposure [attributable to Defendant] were the cause of his own mesothelioma (i.e. 'specific causation')." *Yates v. Ford Motor Co., No. 12 Civ. 752 (FL), 2015 U.S. Dist. LEXIS 70476, 2015 WL 3463559, at *2 (E.D.N.C. May 30, 2015)* (citing *Westberry v. Gislaved Gummi AB, 178 F.3d 257, 263 (4th Cir. 1999))*. "[E]xpert testimony on the issue of causation" may be admissible in "Jones Act cases where a lay juror could not be expected to intuit the causal relationship between the acts in question and the injury." *Wills, 379 F.3d at 41*. Plaintiff asserts that Gordon will opine on general causation and will "not offer any opinions on specific causation as to MOSAT." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Exclude, ECF No. 301, at 2.) To the extent that Defendant is concerned the jury will be confused or misled, Defendant may object to individual questions or cross-examine Gordon to clarify the scope of his opinions.

### C. Dr. Markowitz and Dr. [*29] Smith

Defendant contends that Smith's and Markowitz's opinions should be precluded because they have been "rejected" by other courts. (Def.'s Reply Mem. ("Markowitz Reply"), ECF No. 310, at 4-7; Def's Reply Mem. ("Smith Reply"), ECF No. 312, at 5-7.) But none of the cases 20 Defendant cites involved preclusion.[14]

Moreover, *Daubert* provides that the "gatekeeping inquiry must be 'tied to the facts' of a particular 'case,'" *Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)* (quoting *Daubert, 509 U.S. at 591*); see also *Thomas v. YRC Inc., No. 16 Civ. 6105 (AT) (HBP), 2018 U.S. Dist. LEXIS 24384, 2018 WL 919998, at *8 (S.D.N.Y. Feb. 14, 2018)* (quoting same and finding that "[p]laintiff's argument that just because [an expert's] testimony was precluded in one state court case . . . warrants preclusion here[] clearly fails"). Thus, the fact that Markowitz's and Smith's opinions were rejected in other cases does not provide a basis for preclusion here.

Defendant argues that Markowitz's and Smith's opinions lack a sufficient factual basis, because they "unhesitatingly admit[] that [they] ha[ve] no facts or data to support [their] conclusion[s] that Mr. Unterberg was exposed to asbestos." (Markowitz Mem. at 13; Smith Mem. at 10.) But Markowitz and Smith made no such admissions. As to Dr. Markowitz, Defendant cites testimony in which he acknowledged that he "didn't see any description [*30] of disturbance of asbestos materials by Mr. Unterberg on" the Subject Vessels in materials that he reviewed. (Cert. of Arshia Hourizadeh dated Sept. 25, 2018, Ex. B, ECF No. 261-2 ("Markowitz Dep. Tr."), at 110:4-6.) However, Markowitz also testified that Decedent, "through at least three doctors [,] reported exposure to asbestos during [his] employment" with MOSAT and that the 1979 Certificate of Service describes "work [that] would involve direct contact with

---

[14] In two cases, the experts were permitted to testify, and the courts' decisions concerned whether the jury's findings regarding their testimony was supported by the evidence. *See*

*In re N.Y.C. Asbestos Litig., 148 A.D.3d 233, 48 N.Y.S.3d 365, 370-71 (App. Div. 1st Dep't 2017)*; *Howard v. Owens Corning, 72 Cal. App. 4th 621, 85 Cal. Rptr. 2d 386, 396 (Cal. Ct. App. 1999)*. In the third case, the court rejected a declaration that Markowitz submitted in support of a motion for reconsideration on the grounds that it was untimely, without addressing its admissibility. *Wannall v. Honeywell Int'l Inc., 292 F.R.D. 26, 37 (D.D.C. 2013)*.

[ACM]."[15] (*Id.* at 107:19-108:20.) As to Dr. Smith, Defendant cites a portion of Smith's report which states that "the only question in a case like this is . . . if there is evidence that the patient inhaled asbestos dust in the workplace. He probably did so over many years." (Decl. of Allan H. Smith dated Dec. 13, 2015, Ex. A ("Smith Report"), ECF No. 258-1, at 4 ¶ 4.) Defendant suggests that the word "probably" indicates that Smith's opinion that Decedent was exposed to asbestos on the Subject Vessels is pure conjecture. (Mem. in Supp. of Def.'s Mot. to Exclude, ECF No. 257, at 11-12.) But elsewhere in his report Dr. Smith explains that "the *evidence reviewed* indicates that Mr. Unterberg experienced occupational exposure to asbestos [*31] dust over many years," including "the five year period [from] 1973-1978 [when] he worked as an engineer on ships" in the "engine rooms and also supervising shipyard work." (*Id.* at 3 ¶ 2 (emphasis added).) Because Markowitz's and Smith's opinions are not "fundamentally unsupported," Defendant's challenges to the factual basis for their opinions "bear[] on the weight of [their testimony], not its admissibility." U.S. Bank Nat'l Ass'n, 112 F. Supp. 3d at 134.

Defendant asserts that Markowitz's and Smith's opinions employ an unreliable methodology, because they are "based on [Markowitz's and Smith's] holistic view that every exposure to asbestos, no matter how minimal, is a substantial contributing factor to mesothelioma." (Markowitz Mem. at 16; Smith Mem. at 14.) However, Defendant does not identify any portion of Smith's report that states or implies that every exposure to asbestos causes mesothelioma. At his deposition, Markowitz expressly denied that he was "including every exposure as a potential cause of mesothelioma." (Markowitz Dep. Tr. at 111:24-112:8.); cf. Smith v. Ford Motor Co., No. 08 Civ. 630 (DB), 2013 U.S. Dist. LEXIS 7861, 2013 WL 214378, at *3 (D. Utah Jan. 18, 2013) (excluding testimony where expert "wants to be allowed to tell a jury that all of the plaintiff's *possible* exposures to asbestos during his entire life were contributing causes [*32] of the plaintiff's cancer"). Markowitz explained that his theory is one of "cumulative exposure." (Markowitz Dep. Tr. at 112:8-12.) Defendant suggests that there is "no meaningful distinction" between a "cumulative exposure" theory and expert testimony that has been rejected by other courts. (Markowitz Mem. at 18; Smith Mem. at 15.) But a "cumulative exposure" theory that "any exposure above [a] background [level] . . . *increases [a] person's risk* of developing mesothelioma . . . . is *not* . . . a 'rewording' of the 'every exposure' counts theory."[16] Relyea v. Borg Warner Corp., No. 12 Civ. 3564 (DLC), 2015 U.S. Dist. LEXIS 126895, 2015 WL 5567034, at *2 n.2 (S.D.N.Y. 2015); see also Gore v. Air & Liquid Sys. Corp., No. 16 Civ. 716 (BR), 2018 U.S. Dist. LEXIS 161711, 2018 WL 4658182, at *9-10 (E.D.N.C. Sept. 21, 2018) (finding expert's opinions that "mesothelioma is caused by an individual's cumulative asbestos exposure and

---

[15] The third doctor referred to by Dr. Markowitz is likely Dr. Ummed, an oncologist. In his report, Markowitz notes that "Dr. Ummed . . . reported . . . Mr. Unterberg had asbestos exposure while working on tankers for Mobil Oil 20 years previously." (Decl. of Steven Markowitz, M.D. dated June 13, 2018, Ex. A ("Markowitz Report"), ECF No. 261-1, at 5.)

[16] Defendant "anticipates" that Smith and Markowitz will "attempt to . . . espouse[] an 'every significant exposure' opinion." (Markowitz Mem. at 18; Smith Mem. at 15.) But Defendant cites no such testimony or statements from either expert, and "[o]ther courts have distinguished" theories that "suggest[] that a *de minimus* exposure to asbestos could cause mesothelioma . . . from testimony that each significant exposure to asbestos could be a cause." Osterhout v. Crane Co., No. 14 Civ. 208 (MAD) (DEP), 2016 U.S. Dist. LEXIS 39890, 2016 WL 10050439, at *22 (N.D.N.Y. Mar. 21, 2016) (collecting cases).

exposures which contribute to the individual's cumulative dose can be considered substantial factors if mesothelioma results" were admissible and "not based upon the 'each and every exposure theory"). Courts have found that such a "'cumulative exposure' theory is sufficiently reliable to meet the admissibility standard of Rule 702." Osterhout v. Crane Co., No. 14 Civ. 208 (MAD) (DEP), 2016 U.S. Dist. LEXIS 39890, 2016 WL 10950439, at *23 (N.D.N.Y. Mar. 21, 2016); see also In re Asbestos Prods. Liab. Litig. (No. VI), No. 10 Civ. 61118 (DRS), 2011 U.S. Dist. LEXIS 15870, 2011 WL 605801, at *4 (E.D. Pa. Feb. 16, 2011) (permitting testimony that "each exposure contributed to [plaintiff's] cumulative dose of asbestos exposure, which determines his overall risk of developing an asbestos-related disease"). [*33] Moreover, in the cases upon which Defendant relies, the experts failed to "plug the impermissible gap . . . from the general causation proposition that exposure to asbestos increases the risk of mesothelioma[] to the specific . . . exposure" experienced by the plaintiff Vedros v. Northrop Grumman Shipbuilding, Inc., 119 F. Supp. 3d 556, 565 (E.D. La. Aug. 4, 2015). Here, Smith and Markowitz opine that Plaintiff's exposure to asbestos *on the Subject Vessels*, not merely his general exposure, caused Plaintiff's mesothelioma. (*See* Markowitz Report at 6 ("Mr. Jurgen Unterberg developed and died from malignant mesothelioma of the pleura as result of his prior occupational exposure to asbestos . . . as a marine engineer in for at least 5 years in the 1970's . . . ."); Smith Report at 3 ¶ 2, 4 ¶ 4 ("Mr. Unterberg experienced occupational exposure to asbestos dust over many years," including "the five year period 1973-1978" and "his mesothelioma was caused by inhalation of asbestos dust").) Thus, Defendant's objections do not warrant preclusion.

Defendant further argues that even if Markowitz's and Smith's methodologies are generally reliable, they have not been reliably applied here. Defendant notes that Markowitz and Smith have not quantified Decedent's asbestos exposure and, [*34] indeed, cannot do so, because there are no "facts about the frequency, duration, or intensity of [Decedent's] exposures" on the Subject Vessels. (Markowitz Reply at 4; Smith Reply at 4.) But courts in this district have rejected similar arguments and found Markowitz's testimony admissible under Rule 702. See Transcript, *Curry v. Am. Standard Inc.*, No. 08 Civ. 10228 (JSG) (S.D.N.Y. Jan. 10, 2011), at 13:8-11, 18:2-4 (rejecting argument that Markowitz's testimony should be excluded because Markowitz "concedes . . . it is important to know frequency, duration, location and the like, and yet he does not have that information here" because "that objection goes more to weight of his testimony as opposed to the admissibility"); Osterhout, 2016 U.S. Dist. LEXIS 39890, 2016 WL 10950439, at *19 (rejecting argument that Markowitz's testimony should be precluded because he "knows nothing about the actual dose [of asbestos], if any, attributable to [the defendants]" and noting that "in admitting similar expert testimony, other courts have held that 'in cases of occupational or environmental exposure, it is usually difficult, if not impossible, to quantify the amount of exposure') (quoting Quirin v. Lorillard Tobacco Co., No. 13 Civ. 2633 (JBG), 2014 U.S. Dist. LEXIS 23198, 2014 WL 716162, at *6 (N.D. Ill. Feb. 25, 2014) (internal citation and quotation marks omitted)).

Defendant contends that, even if they are admissible under Rule 702, Markowitz's and Smith's [*35] opinions should be excluded under Rule 403 because they are "misleading and will only serve to confuse a jury" by "provok[ing] the notion that Mr. Unterberg's mere presence aboard MOSAT vessels can be equated with substantial exposure to asbestos." (Markowitz Mem. at 19; Smith Mem. at 17.) But as explained above, Markowitz and Smith have opined that Decedent's *work*

on the Subject Vessels—not his *presence* on those vessels—resulted in substantial exposure to asbestos.

In sum, Markowitz's and Smith's testimony is admissible because it is relevant, reliable, and will assist the trier of fact in determining whether Decedent's exposure to asbestos on the Subject Vessels was a substantial factor in causing his injury. Any confusion regarding the nature of their testimony may be remedied through cross examination.

## VI. PLAINTIFF'S MOTIONS TO PRECLUDE ARE GRANTED IN PART AND DENIED IN PART

### A. Dr. Cushing

Cushing opines that Decedent "could have contracted mesothelioma on . . . other vessels, his Guam salvage company or elsewhere." (Decl. of Keith W. Binder dated Oct. 25, 2018 ("Binder Decl."), Ex. 1 ("Cushing Report"), ECF No. 280-1, at 45 ¶ 1.) Plaintiff argues that Cushing's opinions regarding how Decedent [*36] "contracted mesothelioma" should be precluded because Cushing lacks the qualifications to opine on the "cause of Mr. Unterberg's mesothelioma and the levels of his exposure to asbestos." (Pl.'s Mem. in Supp. of Mot. to Exclude ("Cushing Mem."), ECF No. 279, at 13.) Defendant makes no argument that Cushing is qualified to opine as to the cause of Decedent's mesothelioma.[17] Because Cushing's opinion as to how Decedent "could have contracted mesothelioma" is speculative and beyond the scope of his expertise, that opinion is precluded. (Cushing Report at 45 ¶ 1.)

---

[17] Defendant argues that Cushing is "qualified to provide expert testimony regarding naval architecture and marine engineering," but Plaintiff does not challenge Cushing's qualifications in that regard. (Def.'s Mem. in Opp'n to Pl.'s Mot. to Exclude ("Cushing Opp'n"), ECF No. 306, at 1.)

Plaintiff contends that Cushing is also unqualified to opine as to Decedent's "exposure" to asbestos while working for entities other than Defendant. Plaintiff claims that these opinions also concern causation, because Cushing testified that his use of phrase "significant exposure" was a reference to exposure that "[f]igures to cause him . . . [t]o contract asbestos [sic] diseases." (Cushing Mem. at 14-15 (quoting Binder Decl., Ex. 2 ("Cushing Dep. Tr."), at 205:23-206:6).) One of Cushing's opinions is that Decedent performed salvage work on other vessels that exposed him to asbestos.[18] (*See id.* at 15 (citing Cushing Report at 45 ¶ 7).) Cushing's [*37] work in shipyards and studying the repair and maintenance of various vessels qualifies him to render such an opinion. (*See* Cushing Report at 52.) However, Cushing's opinion that "[i]t is possible that [Decedent] had significant asbestos exposure while occupied at other work" based on the fact that "Plaintiff has not provided a complete work history for Mr. Unterberg" is precluded because it is speculative. (*Id.* at 45 ¶ 2.)

Plaintiff also argues that Cushing's opinions regarding Mr. Unterberg's exposure to respirable asbestos on the Subject Vessels should be precluded because it is

---

[18] Plaintiff contends that Cushing's opinion regarding Decedent's salvage work should also be precluded because it is "based on documents he concludes are unreliable," citing Cushing's opinion that "Mr. Unterberg's seaman's documents . . . are so clearly altered and annotated as to be of little to no value as evidence." However, Cushing reviewed documents other than the seaman's documents that discuss Decedent's salvage work, including deposition testimony from Decedent in an unrelated action and depositions of other employees at the salvage company. (*See* Cushing Report at 40-41, 51.) To the extent Plaintiff argues that such documents do not provide an adequate "factual basis" for Cushing's opinion, that argument goes to the weight, rather than admissibility, of his testimony. U.S. Bank Nat'l Ass'n, 112 F. Supp. 3d at 134.

impossible to "reconcile Cushing's . . . opinion[s] regarding Mr. Unterberg's work as an engineer on MOSAT tankers [and] non-MOSAT tankers." (Cushing Mem. at 3.) This argument has merit. Cushing opines that "Mr. Unterberg served on many deep sea, non-Mobil named vessels as second engineer and chief engineer and is likely to have been exposed to ACM on those vessels." (Cushing Report at 45 ¶ 5.) However, Cushing also opines that "Mr. Unterberg's duties as Chief Engineer on large ocean-going tankers" and "Second Engineer watch standing duties" on the Subject Vessels "were not likely to have exposed him to significant [*38] respirable fibers." (*Id.* at 45 ¶¶ 13-14.) Neither Cushing's report nor his deposition testimony explains why Decedent is not likely to have been exposed to ACM on the Subject Vessels but is likely to have been exposed to such materials on other deep-sea vessels.[19]

When asked the basis for his opinion that Decedent would have been exposed to asbestos on other deep-sea vessels, Cushing testified, "Because [ACM] were prevalent, especially in the engine rooms, and the engineers would have had cause to . . . work with . . . [ACM]." (Cushing Dep. Tr. at 209:1-13.) But Cushing offers no explanation as to why this would not have also been true of the Subject Vessels. Defendant argues that there is not "a scintilla of evidence that Decedent worked with [ACM] on [the Subject Vessels]." (Cushing Opp'n at 3.) However, as discussed above, Larson's testimony and Decedent's statements to his medical providers constitute such evidence. Moreover, Cushing testified that "[v]irtually, all deep-sea ships had asbestos on them . . . in the 1970s and leading up to the 1980s." (Cushing Dep. Tr. at 210:5-8.) Cushing's opinions that

Decedent was likely exposed to respirable asbestos while serving as a Chief and Second [*39] Engineer on other vessels but not on the Subject Vessels are precluded as "unrealistic and contradictory." *Restivo, 846 F.3d at 577*.

## B. Hollins

Plaintiff seeks to preclude Hollins' opinions on: (1) her calculation of Decedent's potential exposure to background airborne asbestos on the Subject Vessels; and (2) her research regarding airborne asbestos fiber concentrations from samples collected during repair or clean-up work involving "suspected" ACM. (Pl.'s Mot. to Exclude, ECF No. 282, at 1-2)[20] Preclusion of both opinions is warranted.

Hollins opines that Decedent's "estimated potential exposure to background airborne asbestos not associated with work involving [ACM] . . . on board MOSAT vessels from 1973 until 1978 ranged from 0.019 to 0.06 [fibers per cubic centimeter per year ('f/cc-yr')]" and that this level of exposure is "insufficient to increase [Decedent's] risk of developing pleural mesothelioma." (Cert. of Ilana K. Waxman dated Oct. 25, 2018 ("Hollins Cert."), Ex. 1 ("Hollins Report"), ECF No. 283-1, at 23-24.) Defendant argues that Hollins' opinions "confirm that no . . . link has been established" between Decedent's alleged exposure to asbestos on the Subject Vessels and Decedent's mesothelioma. (Def.'s [*40] Opp'n to Pl.'s Mot. to Exclude ("Hollins Opp'n"), ECF No. 307, at 12.) But Hollins opinions have

---

[19] Cushing testified that he used the phrase "deep-sea vessels" to refer to vessels that were "[o]cean going," rather than "in-land river vessel[s]." (Cushing Dep. Tr. at 211:12-20.)

[20] Plaintiff does not seek to preclude Hollins from "opining about the significance of dose, type, and dimensions of asbestos fiber type in the development of asbestos disease [or] from reporting her findings regarding the average airborne asbestos concentration reported in industrial hygiene surveys of merchant ships from 1978 to 1992." (Pl.'s Mem. in Reply ("Hollins Reply"), ECF No. 309, at 1-2.)

limited relevance, because she only estimated Decedent's exposure to "*background* airborne asbestos *not* associated with work involving [ACM]." (Hollins Report at 23 (emphasis added).) Plaintiff alleges that Decedent was exposed to asbestos while performing work on the Subject Vessels that *did* involve ACM. (*See* Compl. ¶ 15 (alleging Decedent worked on the Subject Vessels "where asbestos products were being used").)

While Hollins' opinions are relevant to the extent Plaintiff alleges that Decedent was also exposed to background levels of airborne asbestos, (*see id.* (alleging that ACM were "contained on or in equipment on board ship")), her opinions are not reliable. Hollins calculated both the lower and upper bound of Decedent's estimated asbestos exposure using air samples collected from 1978 to 1992. (*See* Hollins Report at 17-18, 21-22.) Thus, no samples were collected in four of the five years of the relevant time period. It is unclear if *any* of the samples used to calculate the lower bound of Decedent's potential background asbestos exposure were collected in 1978 or if they were collected [*41] from ExxonMobil vessels. While some of the samples used to calculate the upper bound of Decedent's potential asbestos exposure were collected on ExxonMobil vessels in 1978, it does not appear that any of those vessels were the Subject Vessels. (*See* Hollins Cert., Ex. 5 ("Upper Bound Table"), ECF No. 283-5 (table of samples used to calculate the upper bound Plaintiff' exposure).) Moreover, both the upper and lower bound estimates were based on *averages* of samples, the majority of which were taken after 1981. (*See* Upper Bound Table; *see also* Hollins Cert., Ex. 3 ("Hollins Paper"), ECF No. 283-3, at 272 (table of samples analyzed in published paper authored in 2008).) This is significant because, as Hollins notes in a published paper, "in most industries and settings, asbestos air concentrations fell dramatically after 1981 because of stricter regulatory limits and increased awareness about the precautions that were necessary to decrease exposures." (Hollins Paper at 273.)

Defendant argues that Hollins' opinions are reliable because she "employed an accepted methodology" and her estimates are based on "measurements reported in the literature." (Hollins Opp'n at 2, 12.) While the publication of Hollins' work [*42] suggests that her analysis is generally sound, for the reasons explained above, that analysis does not provide a reliable basis for her specific conclusions about airborne asbestos fiber concentrations on the Subject Vessels. Because it is unreliable and of limited relevance, Hollins' opinion regarding her estimate of Decedent's potential exposure to background airborne asbestos is precluded.

Plaintiff also seeks to preclude Hollins' opinion that "during repair or clean-up activities that may have involved suspected [ACM]" airborne asbestos fiber concentrations were "consistently below contemporaneous occupational exposure limits" for the period from 1978 to 1989.[21] (Hollins Report at 19.) Hollins' report states that her analysis involved "140 historical personal and area industrial hygiene measurements collected on maritime vessels during or after work that may have involved insulation or other potential ACMs." (*Id.*) Table 1 attached to Hollins' report, which contains more detailed information about a subset of twenty-one samples collected "during the handling of insulation," indicates that two personal samples and four area samples were taken from a vessel named "MobilGas" in 1978. [*43] (Waxman Cert., Ex. 7, ECF No. 283-7.) However, it is unclear whether any of the samples were collected on the Subject Vessels.

---

[21] Although Hollins' report refers to "the timeframe 1980 to 1989," (Hollins Report at 19), she testified at her deposition that this was a typographical error. (Hollins Cert., Ex. 2 ("Hollins Dep. Tr."), ECF No. 283-2, at 105:3-15.)

More significantly, it is unclear whether any of the samples collected in 1978 were collected during or after work involving ACMs. The two samples from 1978 listed in Table 1 had no measurable concentration of asbestos fibers. (*Id.*) At her deposition, Hollins testified that—although the table purports to describe samples "collected during and/or after the direct handling of insulation," Hollins did not know if any insulation—either asbestos-containing or not—was being removed when those two samples were collected. (Hollins Dep. Tr. at 115:17-116:19, 118:6-9.) She had "inferred" that insulation was being removed because the samples were taken "in shipyard settings." (*Id.* at 117:25-118:5.) As to the broader sample, Hollins' report states that "approximately 5% of 127 area [samples] and 23% of the 13 personal samples in the entire sample were below the reported analytical detection limit" for asbestos fibers, and that all of the samples were collected during or after "routine work activities that *may or may not* have involved work with ACM[]." (Hollins Report at [*44] 19.)

In sum, it is unclear whether any of the samples Hollins analyzed were collected in the relevant time period, collected during or after work known to involve ACM, or collected on the Subject Vessels. Because Hollins' opinion regarding asbestos fiber concentration levels in samples collected during or after work that "may have involved suspected [ACM]" cannot be reliably applied to the facts of this case, it is precluded. (*Id.* at 19.)

## VII. CONCLUSION

Defendant's motion for summary judgment, (ECF No. 230), is DENIED. Defendant's motions to preclude the testimony of Commander David E. Cole, Dr. Ronald E. Gordon, Captain William A. Lowell, Kristin Kucsma, Dr. Steven Markowitz, Dr. David Rosner, and Dr. Allan H. Smith, (ECF Nos. 244, 247, 250, 253, 256, 259, 262), are DENIED.[22] Defendant's motion to preclude the testimony of Dr. Arnold R. Brody, (ECF No. 265), is DENIED as moot. Plaintiff's motions to exclude the opinions and testimony of Dr. Charles R. Cushing and Dana Hollins, (ECF Nos. 270 & 281), are GRANTED in part and DENIED in part.

The Clerk of Court is directed to close the motions accordingly.

Dated: New York, New York

March 27, 2019

SO ORDERED.

/s/ George B. Daniels

GEORGE B. DANIELS [*45]

United States District Judge

End of Document

---

[22] As stated on the record at oral argument, this Court's denial of certain witness preclusion motions is without prejudice to motions *in limine* to further limit the scope of those witness's testimony.