# EXHIBIT E

2013 WL 4675377
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Sandra GEISS and Robert Geiss h/w, Plaintiffs,
v.
TARGET CORPORATION and/or Target Corporation of Minnesota, John Does 1–5 (fictitious persons) and ABC Corps 1–5 (fictitious corporations), Defendants/Third Party Plaintiff(s),
v.
Virtua Memorial Hospital, Virtua Memorial Hospital—Mt. Holly, Virtua West, John Does 1–10 (names unknown) and ABC Corps 1–10 (names unknown), Third Party Defendant(s).

Civil No. 09–2208 (RBK/KMW).
|
Aug. 30, 2013.

**Attorneys and Law Firms**

Gary Frederick Piserchia, Parker McCay P.A., Mount Laurel, NJ, for Plaintiffs.

Christopher Eugene McIntyre, Fishman McIntyre P.C., East Hanover, NJ, for Defendants/Third Party Plaintiffs.

John A. Talvacchia, Stahl & DeLaurentis, P.C., Voorhees, NJ, for Third Party Defendants.

**OPINION**

KUGLER, District Judge.

*1 This matter comes before the Court upon the motion of Target Corporation ("Target") for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, against Sandra and Robert Geiss ("Plaintiffs"). Virtua Memorial Hospital ("Virtua"), a third party defendant in this case, also now moves for summary judgment. For the reasons expressed herein, Target's motion for summary judgment is **DENIED.** However, Virtua's motion for summary judgment is **GRANTED.**

**I. FACTS AND PROCEDURAL HISTORY**

According to Plaintiffs, this matter arises out of a fall that Plaintiff Sandra Geiss sustained at a Target store in Burlington, New Jersey. Because Plaintiff's medical history and post-fall treatment are relevant to the conflicting theories of causation advanced by both parties, the Court will provide a detailed background to this case. Although the Court presents a composite of facts from Plaintiffs, Target, and Virtua, the Court will construe all facts in the light most favorable to the non-moving parties, as it must at this stage in the litigation.

In January 2006, Plaintiff underwent knee replacement surgery in which her right knee joint was removed and replaced with a prosthetic component. Target's Mot. Summ. J., Ex. P–1 at 1. Plaintiff alleges that on July 25, 2007, she tripped over an uneven rug while passing through the entrance of the Burlington, NJ Target store, landing on her stomach and knees. *Id.,* Ex. B at 2; Target's Statement of Undisputed Material Facts ("SUMF"), ¶ 2. Plaintiff did not experience immediate pain on the day of her fall, but days later developed increasing pain in her right knee and required a cane and walker to ambulate. *Id.,* Ex. T at 33–40. On August 2, 2012, Plaintiff visited her primary care physician, Dr. Chatyrka, complaining of right knee pain. Target's SUMF, ¶ 3. Dr. Chatyrka determined that Plaintiff was suffering from sciatica and recommended that she obtain an X-ray of her right knee. Target's Mot. Summ. J., Ex. C. The X-ray indicated that the prosthetic components were properly positioned and undamaged, but also revealed a fluid collection of unknown origin. *Id.,* Ex. D.

On August 17, 2012, Dr. Schoifet, the orthopedic surgeon who performed Plaintiff's knee replacement in 2006, examined Plaintiff's knee. *Id.,* Ex. E. Dr. Schoifet noted Plaintiff's complaints of increasing knee pain, but found that Plaintiff had no instability in her knee and confirmed that the X-ray demonstrated good positioning of the prosthetic components. *Id.;* Target's SUMF, ¶ 5–6. He ultimately concluded that Plaintiff suffered a right knee contusion as a result of her fall. *Id.*

On August 29, 2012, Plaintiff Sandra Geiss presented to Virtual Memorial Hospital complaining of "back pain, leg pain, numbness, pain radiating from back into legs and extreme pain when ambulating." Pls.' Supplemental Statement of Disputed Material Facts ("SDMF"), ¶ 7. A few hours after Plaintiff's arrival, tests revealed that Plaintiff had an elevated white blood cell count, elevated blood pressure, high blood sugar, and a high temperature. Target's Mot. Summ. J. at 4; *see also* Ex. F at 6–8. Soon thereafter, Plaintiff

was diagnosed with hypoxia and pneumonia. *Id.,* Ex. F at 9. Plaintiff was admitted to the hospital, and then to the Intensive Care Unit, where she was intubated. *Id.,* Ex. I at 2. Blood cultures also revealed that Plaintiff had MSSA (Methicillin–Sensitive Staphylococcus Aureus), a bacterial infection. *Id.* Plaintiff spent some time in the ICU in order to receive treatment for her various ailments and to stabilize her condition. *See* Pls.' Opp'n, Ex. A at 42–43. Dr. Lee does not recall exactly how long Plaintiff remained in the ICU.[1] *Id.* at 42–43.

**\*2** Much of the controversy in this case surrounds an "event" which allegedly occurred during Plaintiff's hospitalization. On September 25, 2007, an X-ray of Plaintiff's right knee revealed that her previously intact right knee prosthesis had subluxed (dislocated) by 3cm. Target's Mot. Summ. J., Ex. J. Plaintiff underwent emergency repair surgery on September 26, 2007, while her immune system was still compromised from the treatment of her other ailments. *Id.,* Ex. Q at 99–100. Despite the repair, Plaintiff subsequently developed an infection in her right knee requiring further treatment. Target's SUMF, ¶ 32. The infection persisted, which required doctors to remove the prosthesis and insert an antibiotic spacer. *Id.* at ¶ 33. Ultimately, Dr. Schoifet had to perform a "right knee arthrodesis," or fusion of Plaintiff's right knee. *Id.* at ¶ 34. Plaintiff's knee fusion has caused her significant pain, led to difficulty walking, and altered the range of activities in which she can participate. Dep. of Sandra Geiss at 90–94.

Although the subluxation was discovered on September 25, 2007, Plaintiff has no memory as to when or how it occurred. Target's Mot. Summ. J., Ex. T at 56–57. According to Plaintiff's expert, Dr. Gleimer, this subluxation occurred at some point while Plaintiff was hospitalized, but he cannot pinpoint a specific event, place or date. *Id.,* Ex. P–1 at 3. He does note, however, that the prosthetic is inherently stable and would not sublux on its own. *Id.* This confusion is enhanced due to a number of missing medical records. Specifically, Virtua cannot locate progress notes from August 29, 2007 to September 14, 2007, physician orders from September 4, 2007 to September 17, 2007, medical administration records from September 4, 2007 to September 19, 2007, and flow records from September 14, 2007, September 18, 2007 and October 3, 2007. Target's SUMF, ¶ 35. The Custodian of Records for Virtua, Jennfier Raio, attributes the loss of the records to human error. Virtua's Mot. Summ. J., Ex. D at 64–65.

On the basis of these events, Plaintiffs filed suit against Target on March 26, 2009 in the Superior Court of New Jersey, Burlington County. In the Complaint, Plaintiffs assert claims against Target for negligence and loss of consortium on behalf of Plaintiff Robert Geiss. Target was served on April 6, 2009. Within one month, Target properly moved the matter to this Court. On July 29, 2010, Target impleaded Virtua as a third party defendant in the case. In the Third Party Complaint, Target contends that Plaintiff's knee subluxation constitutes a superseding, intervening cause and that any injuries resulting therefrom are due solely to Virtua's negligence. Target seeks contribution and indemnification from Virtua for any damages for which Target may be liable to Plaintiffs in the underlying suit. Target's Third Party Compl., ¶ 11. Target also claims that it has been prejudiced by Virtua's failure to preserve all of Plaintiff's medical records and asserts a tort action for careless, negligent, and/or intentional spoliation of evidence, seeking contribution and/or indemnification as a remedy. *Id.* at 3–4.

**\*3** Both Virtua and Target now move for summary judgment. Target argues that Plaintiff's knee subluxation was neither actually nor proximately caused by Target's negligence. Target also contends that the expert opinion causally relating Plaintiff's fall at Target to her subsequent hospitalization should be barred as a net opinion. In its motion for judgment on the Third–Party Complaint, Virtua argues that neither party has adduced evidence supporting a prima facie case of negligence. Accordingly, Virtua asserts that there is no issue of material fact and that the hospital is entitled to judgment as a matter of law based on the current record.

## II. STANDARD OF REVIEW

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushida Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' ") (quoting *First National Bank of Arizona v. Cities Service Co.,* 391

U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson,* 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255; *Matsushida,* 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson,* 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**III. DISCUSSION & ANALYIS**
Target's Third Party Complaint seeks contribution and indemnification from Virtua for any liability that Target may face in Plantiffs' underlying action. If Target's motion is granted, Virtua's motion for summary judgment would be rendered moot. Therefore, it is prudent for the Court to first address Target's motion for summary judgment.

**A. Target's Motion for Partial Summary Judgment**
Target moves for summary judgment based on Plaintiffs' alleged failure to establish causation. Target argues that its alleged negligence was neither the actual nor proximate cause of Plaintiff's knee subluxation and the complications resulting therefrom. Target further posits that Plaintiff's knee subluxation was a superseding intervening cause which severs the causal chain of liability. Target also seeks to bar Dr. Gleimer's conclusion that "all hospitalizations subsequent to July 25, 2007 related to Ms. Geiss' knee, back or related infection or problems were caused by the fall at Target." *See* Target's Mot. Summ. J. at 31. Target argues that Dr. Gleimer's statement is a "net opinion," which is unsubstantiated by objective evidence. *Id.* The Court will address these arguments in reverse order, beginning with Target's challenge to Plaintiffs' expert.

**a. Sufficiency of Expert Testimony**
*4 Target challenges Dr. Gleimer's conclusion that all hospitalizations subsequent to July 25, 2007 are causally related to Plaintiff's fall at Target, arguing that it is a "net opinion" that is unsupported by the factual record. Admissibility of expert testimony is governed by Rule 702, which was amended in 2000 to reflect the Supreme Court decision in *Daubert.* The Rule provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. This rule requires a court to act as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir.2008). Rule 702 has a " 'liberal policy of admissibility.' " *Id* . (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir.1997)). The burden of showing expert testimony is admissible, once challenged, lies with the offering party. *See Kannankeril,* 128 F.3d at 807.

To be admissible, expert testimony must satisfy three requirements under Rule 702: 1) the witness must be an expert (i.e., must be qualified); 2) the expert must testify about matters requiring scientific, technical, or specialized knowledge (i.e., must be reliable); and 3) the expert's testimony must assist the trier of fact (i.e, must fit). *Id.* at 806 (citing *In re Paoli R.R. Yard PCB Litig. (Paoli II),* 35 F.3d 717, 742 (3d Cir.1994)); *Elcock v. Kmart Corp.,* 233 F.3d 734, 741 (3d Cir.2000) (stating three requirements are qualifications, reliability, and fit). An expert is qualified if

he " 'possesses specialized expertise.' " *Pineda,* 520 F.3d at 244 (quoting *Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir.2003)). The qualification requirement is liberally construed. *Id* .

A reliable opinion is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli II,* 35 F.3d at 742 (quoting *Daubert,* 509 U.S. at 589). The focus of the reliability inquiry is on the expert's principles and methodology, not on his conclusions. *Daubert,* 509 U.S. at 595. In determining reliability, a court may look to several non-exhaustive factors, including:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non judicial uses to which the method has been put.

**\*5** *Elcock,* 233 F.3d at 745–46 (quoting *Paoli II,* 35 F.3d at 742 n. 8). Finally, an opinion fits a particular case (and thus helps the trier of fact) when there is a " 'connection between the scientific research or test result to be presented and particular disputed factual issues in the case.' " *Oddi v. Ford Motor Co.,* 234 F.3d 136, 145 (3d Cir.2000) (quoting *Paoli II,* 35 F.3d at 743). Fit is an issue of relevance and simply means that scientific validity of the method or principles applies to the issues at hand. *U.S. v. Ford,* 481 F.3d 215, 220 n. 6 (3d Cir.2007).

Target has not raised a proper *Daubert* challenge. Target does not challenge Dr. Gleimer's expertise, the reliability of his methodology, or the relevance of his opinion to this particular case. Target merely challenges the reliability of his conclusions. This is not the "inquiry envisioned by Rule 702." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). As the Supreme Court cautioned, the overarching subject of a challenge under Rule 702 is "the scientific validity and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Id.* Consequently, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

Even construing Target's motion as a challenge to the reliability of Dr. Gleimer's methodology, Target has not raised any justification for barring his opinions. Target first argues that Dr. Gleimer "elected to disregard the medical evidence" and failed to explain how Plaintiff's presentation to the emergency room could have been caused by her fall. Target Mot. Summ. J. at 30. Target also finds significant that Dr. Gleimer cannot state exactly how and when the knee dislocation occurred, but attributes the dislocation to "some event/injury while in the hospital." *Id.* Target further contends that Dr. Gleimer failed to explicitly state that his opinions are based upon a reasonable degree of medical probability or certainty. *Id.* at 31. However, Dr. Gleimer did explain at length his reasons for reaching this conclusion. *See* Dr. Gleimer Dep. at 42–45. The balance of Target's arguments may be properly raised on cross-examination, not on a Rule 702 challenge. Therefore, the Court will deny Target's request to bar Dr. Gleimer's opinions.

### b. Negligence

In order to establish negligence under the laws of New Jersey, a plaintiff must establish: (1) a duty of care owed to Plaintiff, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages. *Jersey Cent. Power & Light Co. v. Melcar Utility Co.,* 212 N.J. 576, 594 (2013). Target only challenges Plaintiffs' ability to establish the third prong—actual and proximate causation.

### i. Proximate Causation

Target argues that Plaintiff cannot establish that Target's negligence was the proximate cause of her knee subluxation. Target accords little weight to Dr. Gleimer's opinion that an "event" occurred during her hospitalization, but argues that even accepting this conclusion, "it is not foreseeable [that] any treatment for this alleged injury would cause a stable, intact knee prosthetic to dislocate, even if that treatment

was negligently administered." Target's Mot. Summ. J. at 27. Target also highlights that Plaintiff's own expert "does not state [that] plaintiff was receiving treatment for her back when the knee dislocation occurred, or that the dislocation of plaintiff's was a foreseeable consequence of such treatment." *Id.* However, none of these arguments justify summary judgment.

**\*6** Under well-established principles of tort law, "a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries." *Rappaport v. Nichols,* 31 N.J. 188, 156 A.2d 1, 9 (N.J.1959). Therefore, to be considered a proximate cause, "conduct need only be a cause which sets off a foreseeable sequence of consequences, unbroken by any superseding cause, and which is a substantial factor in producing the particular injury." *Bendar v. Rosen,* 247 N.J.Super. 219, 588 A.2d 1264, 1269 (N.J.Super.Ct.App.Div.1991) (quoting *Scafidi,* 574 A.2d at 398). The New Jersey Supreme Court has been clear that "[p]roximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." *Scafidi v. Seiler,* 119 N.J. 93, 574 A.2d 398, 402 (N.J.1990).

Contrary to Target's arguments, Plaintiffs have identified a triable issue of fact as to causation. First, Plaintiffs have offered ample evidence that Plaintiff's visit to the emergency room was spurred by severe back and knee pain. In her deposition, Plaintiff states that she had her husband call an ambulance "because of the excruciating pain she was experiencing in her knee and back." Pls.' SDMF, ¶ 3. Dr. Gleimer opines, and some of the emergency records indicate, that Plaintiff presented to the hospital with complaints of severe left leg pain, back pain, and ambulatory pain. *Id.,* Ex. F; Ex. P–2 at 1. The records also note that Plaintiff complained of "pain to lower back" and that Plaintiff "ambulate[d] slowly without assistance." *Id.* at 6–7.

Although, as Plaintiff concedes, the reasons for her actual admission remain less certain, Plaintiffs have also produced sufficient evidence on this point to survive summary judgment. Plaintiffs' expert, Dr. Gleimer, concluded that there were multiple reasons for Plaintiff's admission and observed that she was treated almost exclusively for her low back pain and sciatica. Pls.' Opp'n at 5(citing Gleimer Dep. at 44–45). Dr. Gleimer notes that these painkillers can also suppress respiration. *Id.* Dr. Gleimer also highlights that Virtua's Admission Record lists back pain as "one of the conditions chiefly responsible for Ms. Geiss' admission to Virtua." *Id.* (citing Gleimer Dep. at 45–46). Dr. Lee, the admitting doctor on the date in question, also testified that Plaintiff was admitted, at least in part, for "low back pain." *Id.* (citing Lee Dep. at 29). Thus, Plaintiffs have produced adequate evidence for a jury to find that Target's initial negligence was a proximate cause of her knee subluxation.

### ii. Actual Causation

Target also argues that Plaintiff's fall was not the actual cause of her knee subluxation. Essentially, Target argues that because an x-ray confirmed that Plaintiff's prosthetic knee was in place after her initial fall and because Dr. Gleimer cannot state with certainty how or when the knee dislocation occurred, Target cannot be the actual cause of her subsequent injury. This argument fundamentally misconstrues the meaning of "actual cause." Actual cause serves as an "important corollary to the proximate cause rule." *See Dawson v. Bunker Hill Plaza Associates,* 289 N.J.Super. 309, 326, 673 A.2d 847 (App.Div.1996). In order to impose liability, a plaintiff must also establish that defendant's negligent conduct was "a substantial factor in bringing about harm to another." *Id.* An actor's conduct is not a substantial factor, "if [the injury] would have been sustained even if the actor had not been negligent.' " *Id.*

**\*7** Taking the evidence in the light most favorable to the non-moving party, Plaintiffs have established that Target's conduct was an actual cause of the knee subluxation. Target incorrectly focuses on whether the fall was the direct cause of Plaintiff's injury. However, the law is clear that Target can be liable, "even where there are 'other intervening causes which were foreseeable or were normal incidents of the risk created.' " *Camp v. Jiffy Lube No. 114,* 309 N.J.Super. 305, 309–10, 706 A.2d 1193 (App.Div.1998). Target has not provided any valid basis for summary judgment. Therefore, Target's motion for summary judgment is DENIED.

### B. Virtua's Motion for Summary Judgment

Virtua has also moved for summary judgment on Target's Third–Party Complaint against the hospital. Virtua argues that "[n]o party has factually established a prima facie claim against Virtua for negligence." Virtua Mot. Summ. J. at 5. Virtua also contends that to the extent that Target's claim against Virtua alleges medical malpractice, expert

testimony is required to establish a deviation from accepted medical standards. *Id.* at 4, 706 A.2d 1193. Target responds with a number of arguments, none of which are presented with particular lucidity. Target first argues that it need not produce expert testimony because the "common knowledge" exception applies. Target then contends that Virtua's negligent spoliation of evidence entitles Target to an adverse inference. Target also raises the doctrine of "unclean hands" to thwart Virtua's motion for summary judgment. Finally, Target attempts to assert a claim for fraudulent concealment. The Court will address these arguments in turn.

### a. Negligence

It is axiomatic that "the mere showing of an incident causing the injury sued upon is not alone sufficient to authorize the finding of an incident of negligence." *Long v. Landy,* 35 N.J. 44, 54, 171 A.2d 1 (1961). As a third-party plaintiff, Target bears the burden of demonstrating the existence of negligence. *See Buckelew v. Grossbard,* 87 N.J. 512, 435 A.2d 1150, 1157 (N.J.1981) ("We start with the basic proposition that ordinarily negligence must be proved and will never be presumed, that indeed there is a presumption against it, and that the burden of proving negligence is on the plaintiff"). Negligence may only be inferred from proven facts and circumstances and cannot be based on speculation or conjecture. *Long,* 35 N.J. at 54, 171 A.2d 1.

Target largely ignores these well-settled principles and attempts to survive summary judgment without providing any competent evidence of Virtua's negligence. Target argues that "the 'event' presumably occurred as a result of the carelessness, negligence, and/or gross negligence of Virtua." Target's Opp'n at 9. However, the law is clear that negligence "will never be presumed." *Buckelew,* 435 A.2d at 1157. Target first attempts to surmount this obstacle by invoking the "common knowledge" exception. According to Target, the common knowledge exception is applicable "where a lay person using ordinary understanding and experience is sufficient to determine a defendant's negligence without the benefit of expert testimony." Target's Opp'n (citing *Bender v. Walgreen Eastern Co. ., Inc.,* 399 N.J.Super. 584, 590, 945 A.2d 120 (N.J.Super.Ct.App.Div.2008)). Target previously raised this same exception in its opposition to Virtua's prior motion to dismiss in relation to the Affidavit of Merit requirement. The Court rejected its application then and will do so again.[2] *See* Doc. No. 30 at 7. Moreover, even if the Court did apply the common knowledge exception, it would not obviate Target's obligation to establish negligence. It merely alters the proofs upon which a plaintiff may rely to demonstrate a deviation from the standard of care.

**\*8** In addition to raising the common knowledge exception, Target makes two ill-fated attempts to establish a duty by Virtua. Target Mot. Summ. J. at 11. Target appears to argue that Virtua breached some duty to Target by failing to preserve evidence, which prejudiced Target. However, Target has not identified the source of such a duty. To the extent that Target relies on a common law duty to preserve evidence, Target has not established any of the required elements. The duty to preserve evidence only arises when there is pending or likely litigation between two parties, knowledge of this fact by the alleged spoliator, evidence relevant to the litigation, and the foreseeability that the opposing party would be prejudiced by the disposal of this evidence. *Cockerline v. Menendez,* 411 N.J.Super. 596, 620, 988 A.2d 575 (App.Div.2010). Target also argues that Virtua violated a statutory duty, imposed by N.J. 13:35–6.5, by failing to maintain complete and accurate records.[3] However, the statute does not give rise to a cause of action. *See Proske v. St. Barnabas Med. Ctr.,* 313 N.J.Super. 311, 318–19, 712 A.2d 1207 (App.Div.1998) (finding that N.J.S.A. 26:8–5 does not create a statutory cause of action and that "violation of the statute did not have a causal relation to the physical injury suffered"). Therefore, Target has not alleged any fact, much less provided competent evidence, of Virtua's negligence.[4]

### b. Fraudulent Concealment of Evidence

Target also asserts a claim for fraudulent concealment of evidence against Virtua.[5] In order to prove this tort, a plaintiff must demonstrate that: (1) the defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with *existing* or *pending* litigation, (2) the evidence was material to the litigation, (3) the plaintiff could not have reasonably obtained the evidence elsewhere, (4) the defendant *intentionally* withheld, altered, or destroyed evidence with purpose to disrupt litigation, (5) Plaintiff was damaged by having to rely on an incomplete record that did not contain the evidence defendant concealed. (emphasis added) *Rosenblit v. Zimmerman,* 166 N.J. 391, 406–07, 766 A.2d 749 (2001). Target has not established these elements. Target has not provided any evidence that the missing records may have been material to this litigation. Target has not even established that Virtua intentionally

withheld the missing entries. Even under the favorable standard of review on summary judgment, Target's claims cannot survive.

In the Third–Party Complaint, Target alleged claims for negligence and what this Court will construe as fraudulent concealment of evidence against Virtua. However, Target has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex,* 477 U.S. at 322. Therefore, the Court will grant Virtua's motion for summary judgment. [6]

### IV. CONCLUSION

For the foregoing reasons, Target's Motion for Partial Summary Judgment is DENIED. Virtua's motion for summary judgment is GRANTED. An appropriate order shall issue today.

### ORDER

**\*9 THIS MATTER** having come before the Court on the motions of Virtua Memorial Hospital ("Virtua") and Target Corporation ("Target") for summary judgment, pursuant to Federal Rule of Civil Procedure 56, and the Court having considered the moving papers and attached documents, and the responses thereto, and for the reasons expressed in the Opinion issued this date;

**IT IS HEREBY ORDERED** that Target's motion for summary judgment is **DENIED.**

**IT IS HEREBY FURTHER ORDERED** that Virtua's motion for summary judgment on Target's Third Party Complaint is **GRANTED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 4675377

---

### Footnotes

| | |
|---|---|
| 1 | Plaintiff remained in the hospital until she was discharged on October 11, 2007. Target's SUMF, ¶ 24. |
| 2 | In the August 2, 2011 Opinion and Order, the Court stated: "Target has not demonstrated that its claim turns on common knowledge. Target alleges only that 'something' happened while Mrs. Geiss was at Virtua that caused her injuries. Target does not allege that an obvious error by Virtua or its employees caused Mrs. Geiss' injuries. Rather, Target acknowledges that it does not know the exact cause of her injuries. Because Mrs. Geiss received medical treatment, her injuries may have resulted from negligent medical care that requires expert testimony to prove." |
| 3 | Virtua notes that Target relies on the wrong statutory provision provision. According to Virtua, NJAC 13:35–6.5 is an administrative code and is not applicable to institutions. Virtua instead posits that NJSA 26:8–5 is the appropriate statutory provision mandating the maintenance of records. |
| 4 | Virtua also urges the Court to apply the doctrine of "unclean hands" and deny Virtua's motion for summary judgment. This doctrine "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in the suit." *Faustin v. Lewis,* 85 N.J. 507, 427 A.2d 1105, 1107 (N.J.1981). As with every other argument in Target's opposition, Target has not demonstrated how this doctrine would be applicable. Although it is unfortunate that Virtua could not provide Plaintiff's complete medical record in discovery, Target has not provided any evidence of "wrongdoing with respect to the subject matter in the suit." Jennifer Raio testified that despite their best efforts in searching, her team had not been able to uncover the missing records. Jennifer Raio Dep., Target's Opp'n, Ex. D, 33–34. Moreover, Target has not produced any evidence or testimony linking Virtua's failure to maintain records to Plaintiff's actual injury. |
| 5 | The Third Party Complaint does not explicitly articulate a claim for fraudulent concealment, but it does contain allegations of spoliation of evidence. As Target states, spoliation of evidence claims are recognized as the tort of fraudulent concealment. See *Rosenblit v. Zimmerman,* 166 N.J. 391, 406, 766 A.2d 749 (2001). |

6     Target also seeks an adverse inference jury instruction based on Virtua's alleged spoliation of evidence. Even if the Court were denying Virtua's motion, the Court would not be inclined to address jury instruction requests on a motion for summary judgment.

---

**End of Document**     © 2021 Thomson Reuters. No claim to original U.S. Government Works.