2012 WL 252919
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

In re ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI).
This Document Relates To
Valent Rabovsky and Ann Rabovsky, Plaintiffs,
v.
Air & Liquid Systems
Corporation, et al., Defendants.

Civil Action No. MDL 875.
|
EDPA Civil Action No. 10–cv–03202.
|
Jan. 25, 2012.

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE, United States Magistrate Judge.

### I. Introduction

 *1 Valent and Ann Rabovsky (collectively "Plaintiffs"), husband and wife, filed this asbestos personal injury action in the Court of Common Pleas of Philadelphia County on March 30, 2010, asserting claims against multiple parties. (Doc. 1.) On July 1, 2010, the matter was removed to the United States District Court for the Eastern District of Pennsylvania and included in the multi-district Asbestos Liability Litigation (MDL 875). (*Id.*)

The underlying claims are that Plaintiff Valent Rabovsky was exposed to asbestos over various periods between the 1950s and 1980s, causing him to suffer from the disease of mesothelioma. Plaintiffs allege that this exposure occurred while he was working as a millwright and came to be in regular contact with asbestos-containing valves, pumps, gaskets, boilers and other products manufactured by multiple Defendants, including Goulds Pumps, Inc. ("Goulds") and Crane Co. (*See, e.g.* Doc. 125, at 4 .)

Presently before the Court is Goulds's Motion in Limine to Preclude or Limit Plaintiffs' Experts' Testimony Based on *Daubert v. Merrell Dow Pharmaceuticals* (Doc. 109), several defendants' motions adopting the same,[1] together with Plaintiffs' Response (Doc. 125) and Goulds' Reply (Doc. 138). Also, presently before the Court is Crane Co.'s Motion in Limine to Exclude the "Each and Every Exposure" Opinion (Doc. 115), two defendants' motions adopting it,[2] together with Plaintiffs' Response (Doc. 125), Crane Co.'s Reply (Doc. 142), and Crane Co.'s Supplemental Memorandum of Law on Plaintiffs' Causation Evidence (Doc. 171). Oral argument was heard on January 19, 2012 and the motions are now ripe for review. For the following reasons, Defendants' motions are **DENIED**.

### II. Motions under Review

Goulds challenges, under Fed.R.Evid. 702 and *Daubert,* the expert opinions of John Maddox, M.D., Arnold Brody, Ph.D., and Edwin Holstein, M.D., that Defendants' products caused or contributed to Mr. Rabovsky's mesothelioma. In its separate motion, Crane Co. challenges the expert opinions of Drs. Maddox and Brody only.[3] (Doc. 115.) The issue before us, focusing principally upon the question of reliability, is whether the experts' opinions are admissible.

Dr. Maddox, Dr. Holstein and Dr. Brody each seek to offer opinions dealing with certain aspects of the question of whether "each and every exposure" to asbestos above background levels increases the risk of mesothelioma. Dr. Maddox, a board-certified anatomical and clinical pathologist, has opined, " '[w]ith a reasonable degree of medical certainty, that each and every exposure to asbestos above background levels that Mr. Rabovsky sustained was a significant contributing factor in the development of his mesothelioma.' " Expert Report of John C. Maddox, M.D., July 13, 2011, at 23. Dr. Holstein, who is Board Certified in Occupational Medicine and Preventative Medicine, has written that "each inhalation of asbestos-containing dust from the use of products (other than the purely ambient exposure from urban dwelling) has been shown to contribute to cause asbestos-related disease including pleural mesothelioma." Report of Edwin C. Holstein, M.D., July 21, 2011, at 15. Dr. Brody, a cell biologist who specializes in the biological mechanisms of the disease, has stated that "[e]ach and every exposure to asbestos that an individual with mesothelioma experienced in excess of a background level contributes to the development of the disease." Expert Report of Arnold R. Brody, Ph.D., April 25, 2010, at 20.

 *2 Goulds and Crane Co., and those who join in their motions, allege that these opinions "lack the requisite

reliability and validity and, consequently, the necessary scientific methodology mandated under *Daubert* and the [Federal Rules of Evidence 702](#) and [703](#)," to even be presented to the fact-finder. (Doc. 109, at 3. *See also* Doc. 115 at 4.) Denouncing the theories as "legal invention[s]," (Doc. 109 at 9) and the product of "invalid science," (Doc. 115 at 4) Defendants specifically take issue with the fact that the opinions have not been tested or subjected to the scientific method, such that their accuracy cannot be determined. (Doc. 109 at 9. *See also* Doc. 115 at 11–14 (describing the opinion as "a hypothesis, not a result.").) Defendants further claim that the experts have not offered any specific conclusions causally linking their products to Mr. Rabovsky's [mesothelioma](#) and cite to Pennsylvania and other case law deeming inadmissible similar opinions offered in other cases. (*See, e.g.* Doc. 115 at 5, 9–11, 14. *See also* Doc. 109, at 5, 6, 11, 12–14.) Finally, Defendants argue that the causation standard for asbestos cases is higher than what Plaintiffs' experts opine and that rather than merely contributing to the development of a disease, the alleged exposures must "substantially contribute" to the [mesothelioma](#) risk. (*See, e.g.* Doc. 138, at 11, Doc. 115 at 2, 5, 9.) Accordingly, Defendants seek to preclude the experts from testifying that Mr. Rabovsky's exposure to their products was a substantial contributing factor to his [mesothelioma](#).[4]

### III. Legal Standard

The standard for the admissibility of expert testimony is set forth in [Fed.R.Evid.702](#), as interpreted by the United States Supreme Court in [*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)](#). [Rule 702](#) provides that an expert opinion is admissible to assist the trier of fact to understand evidence if (1) "the testimony is based upon sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods; and" (3) "the expert has reliably applied the principles and methods to the facts of the case." The Third Circuit specifically has described [Rule 702](#) as requiring three elements: " '(1) the proffered witness must be an expert, *i.e.,* must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge[, i.e. reliability]; and (3) the expert's testimony must assist the trier of fact[, i.e. fit].' " [*United States v. Schiff,* 602 F.3d 152, 172 (3d Cir. April 7, 2010)](#) (quoting *Pineda v. Ford Motor Co.,* 502 F.3d 237, 243–44 (3d Cir.2008)). As is the case with regard to the Federal Rules of Evidence generally, [Rule 702](#) is to be interpreted liberally in favor of admission in that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." [*Daubert,* 509 U.S. 579 at 596, 113 S.Ct. 2786, 125 L.Ed.2d 469](#).

**\*3** Defendants challenge the experts' opinions principally under the "reliability" prong of [Rule 702](#). *Daubert* sets out four factors to help the federal courts evaluate the reliability of expert opinions, based on an analysis of whether the theory or technique proffered by the expert: 1) has been or can be tested; 2) has been subjected to peer review and publication; 3) has an ascertainable rate of error; and 4) is generally accepted by " 'a relevant scientific community.' " *Id.* at 593–594. The Third Circuit has added additional factors which may further guide a court's admissibility determination, including "the relationship of the technique to methods which have been established to be reliable; ... the qualifications of the expert testifying based on the methodology; and ... the non-judicial uses to which the method has been put." *See* [*Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 742, n. 8 (3d Cir.1994)](#).

Federal courts are accorded a great deal of flexibility in this analysis. [*Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)](#). The Third Circuit specifically has determined that "even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result," the judge may still find the opinion admissible. [*Paoli R.R. Yard PCB Litigation,* 35 F.3d at 744](#).

### III. Discussion

Defendants argue that the experts failed to support their conclusions with adequate testing. (*See, e.g.,* Doc. 109 at 9.) As Plaintiff points out, however, testing is not an absolute prerequisite to the admission of an expert opinion. (*See, e.g.,* Doc. 125 at 12.) Rather, testing is simply one of many factors to be considered with regard to an expert's testimony. [*Daubert,* 509 U.S. at 593](#). We consider that in the case of asbestos-related injury, where the gestation period for the development of the disease is measured in terms of decades and the circumstances of a particular plaintiff's exposure is highly variable, the ability to establish specific testing relating to a particular plaintiff is exceedingly problematic. *See, e.g.*

Case 1:19-md-02875-RMB-SAK   Document 1797-11   Filed 12/01/21   Page 3 of 5
                                     PageID: 54066
In re Asbestos Products Liability Litigation (No. VI), Not Reported in F.Supp.2d (2012)
2012 WL 252919

*Rutherford v. Owens–Illinois,* 16 Cal.4th 953, 957, 67 Cal.Rptr.2d 16, 941 P.2d 1203 (Ca.1997). [5]

It is clear that the adequacy of testing is merely one of the factors that could be put before the trier of fact. We thus conclude that, when considered in relation to the full scope of the three experts' opinions, the questions with respect to the adequacy of the testing do not lead us to exclude their testimony. As we did in *Cicolello v. Caterpillar,* "we accept the rationale of the district court of New Jersey that 'to the extent ... lack of testing calls into question the reliability of [the expert's] testimony, such lacunae are best addressed at trial, under cross-examination.' " 2008 WL 183737 at *3, 2008 U.S. Dist. LEXIS 4223 at *8 (E.D.Pa. Jan.18, 2008) (quoting *Lindsey v. Caterpillar,* 2007 U.S. Dist. LEXIS 45452 at * 14, 2007 WL 1816105 (D.N.J. June 22, 2007)).

**\*4** With respect to the other aspects of a reliability analysis, we point out that both Pennsylvania state and federal case law support the admission of the opinions articulated by Plaintiffs' experts. Defendants urge us to find the experts' opinions unreliable in light of their failure to meet the legal standard of demonstrating that Mr. Rabovsky's exposure to Defendants' products constituted a *substantial* factor in his development of mesothelioma. The Superior Court of Pennsylvania, in a case upon which review has been denied by the Supreme Court of this state, has found that "the substantial factor test is not concerned with the quantity of the injury-producing agent or force but rather its legal significance." *Estate of Hicks v. Dana Companies, LLC,* 984 A.2d 943, 957–58 (Pa.Super.2009), *allocatur denied,* 19 A.3d 1052 (Pa.2011). [6]

Specifically, we recently have found the "each and every exposure" opinion to be sufficiently reliable to pass muster under Rule 702 and *Daubert. See Anderson v. Saberhagen Holdings, Inc.,* 2011 WL 605801, at *7 (E.D.Pa. Feb.16, 2011) (finding that an expert's opinion that "there is no established 'threshold' of exposure to asbestos below which mesothelioma is known to occur" and that "any of the occupational or bystander exposures could have been sufficient to cause" the plaintiff's mesothelioma "sufficiently reliable to meet the admissibility standard of Rule 702." *Id.* at *3–4, *7.)

We observe as well that Judge Robreno also has ruled favorably on the admissibility of the opinions of two of the three experts whose testimony is being challenged here. *See Schumacher v. Amtico, et al.,* No. 10–cv–01627, Doc. 143. *See also Larson v. Bondex Int'l,* 2010 WL 4676563 (E.D.Pa. Nov.15, 2010). In November of 2010, in *Schumacher,* Judge Robreno found, as we do now, that the "Defendants' arguments are fodder for cross-examination, and do not preclude the admissibility of Dr. Maddox's opinion." *Schumacher,* 10–01627 Doc. 143 at 4. He also allowed the admission of Dr. Brody's testimony to assist the jury's general understanding of mesothelioma in the same case. *See Larson,* 2010 WL 4676563 at *3, n. 3 (describing the *Schumacher* opinion). In *Larson,* Judge Robreno similarly upheld Magistrate Judge Angell's finding that "Dr. Brody's opinion was reliable." *Id.* at *3. In both of these cases, Judge Robreno's decisions emphasized that the experts had relied on a "variety of peer-reviewed studies and reports to form [their] ultimate opinion[s]." *Schumacher,* 10–01627 Doc. 143 at 3 (later highlighting that "Dr. Maddox relied on numerous published studies and reports, drawing from the fields of pathology, radiology, epidemiology, and industrial hygienics." *Id.* at 4.)

Judge Robreno's conclusions guide our analysis with respect to Dr. Maddox's and Dr. Brody's opinions here. The opinions Plaintiffs seek to introduce are of the same nature as those admitted in the cases previously before this Court, and are similarly derived from and accepted by a large body of peer-reviewed, scientific literature. We acknowledge that Crane Co. recently has filed a Supplemental Memorandum of Law on Plaintiff's Causation Evidence (Doc. 171), in which it addresses, for the first time, the *Schumacher* case. While Crane Co.'s argument regarding differences between the attack launched against Drs. Maddox and Brody in *Schumacher* and the one we confront now may be applicable to a consideration of summary judgment, it is misapplied here where we are concerned only with the reliability of the evidence.

**\*5** We also observe that Plaintiffs have attached to their Consolidated Response in Opposition to Defendants' Joinders in the Motions in Limine to Exclude Plaintiffs' Expert Causation Testimony (Doc. 169) an affidavit from Dr. Maddox attesting to his using the same methodologies to arrive at his opinions in this case as he did in *Schumacher.* (*Id.,* Ex. 1.) We consider this as further support for our reliance on Judge Robreno's decision. In that all parties here agree that the three doctors offer the same opinions (*see, e.g.* Doc. 109 at 1, 3, 7, 11,13–14, 19; Doc. 125 at 2, Doc. 171 at 1 n. 1), we view Judge Robreno's decision as equally applicable to each of them. Accordingly, we deny the Goulds and Crane Co. Motions.

An appropriate order will follow.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 252919

## Footnotes

1 Defendant Foster Wheeler Energy Corporation's Motion in Limine Adopting Co–Defendant, Goulds Pumps, Inc.'s Motion in Limine to Preclude Plaintiffs Experts' Testimony Based on *Daubert v. Merrell Dow Pharmaceuticals* (Doc. 118), Pennsylvania Electric Company's Motion in Limine Adopting Co–Defendant, Goulds Pumps, Inc.'s Motion in Limine to Preclude Plaintiffs Experts' Testimony Based on *Daubert v. Merrell Dow Pharmaceuticals* (Doc. 156), Motion for in Limine of Defendant, the Doe Run Resources Corporation, f/k/a St. Joseph Lead Co. Adopting Co–Defendant, Goulds Pumps, Inc., Motion in Limine to Preclude Plaintiffs' Experts' Testimony based on *Daubert v. Merrell Dow Pharmaceuticals* (Doc. 162), A.K. Steel Corporation's Motion in Limine Adopting Co–Defendant, Goulds Pumps, Inc.'s Motion in Limine to Preclude Plaintiffs Experts' Testimony Based on *Daubert v. Merrill Dow Pharmaceuticals* (Doc. 164), Joinder by Defendant CBS Corporation, Successor to Westinghouse Electric Corporation, in Motions in Limine to Preclude Plaintiffs' Experts' Testimony Regarding "Each and Every Exposure" Opinions and as Required by *Daubert v. Merrill Dow Pharmaceuticals* (Doc. 165). In response, Plaintiffs filed a Consolidated Response in Opposition to Defendants' Joinders in the Motions in Limine to Exclude Plaintiffs' Expert Causation Testimony (Doc. 169), which we consider as well. All of these defendants, together with Goulds and Crane Co., hereinafter will be referred to collectively as "Defendants."

2 Motion for in Limine of Defendant, The Doe Run Resources Corporation, f/k/a St. Joseph Lead Co. Adopting the Motion in Limine of Defendant, Crane Co., to Exclude "Each and Every Exposure" Opinion (Doc. 161), and Joinder by Defendant CBS Corporation, Successor to Westinghouse Electric Corporation, in Motions in Limine to Preclude Plaintiffs' Experts' Testimony Regarding "Each and Every Exposure" Opinions and as Required by *Daubert v. Merrill Dow Pharmaceuticals* (Doc. 165).

3 We note, however, that in its Supplemental Memorandum of Law on Plaintiffs' Causation Evidence (Doc. 171), Crane Co.'s arguments seem to focus on Dr. Maddox and Dr. Holstein, despite the initial motion being tailored to Dr. Maddox and Dr. Brody only. We recognize and appreciate that the Supplemental Memorandum appears to represent an effort to synthesize the two parties' motions, in response to a specific request made by the Court.

4 We note as well that Defendants challenged the fit or applicability of the experts' opinions with respect to Mr. Rabovsky's exposure to a great deal of asbestos from other products over the course of his career as a millwright. Defendants allege, for example, that Plaintiffs cannot show that "a small dose caused a disease in a person who experienced much larger doses from alternative sources," or substantial alternative exposure. (Doc. 138, at 10.) Defendants further describe Plaintiffs' citations to certain studies, such as the *Consensus Report: Asbestos, asbestosis and cancer: the Helsinki criteria for diagnosis and attribution,* SCAND J WORK ENVIRON HEALTH, 23:311–6 (1997), upon which all three experts' opinions are premised, as "conflating the issues because there is no debate that Mr. Rabovsky's mesothelioma was caused by asbestos, but rather, the issues are whether the infrequent exposures attributable to Goulds in the context of substantial alternative exposure meets the substantial contributing factor test and whether Plaintiffs' experts' opinions (based on cumulative dose and downward extrapolation) are admissible ." (*Id.* at 9–10.) Crane Co., too, argues that there must be a "dose-response relationship," regarding the minimum degree of exposure necessary to cause the alleged asbestos-related injury (Doc. 115, at 9.)

5 We observe that Plaintiffs' counsel, at oral argument, directed us to the *Rutherford* case. Although not precedential in this jurisdiction, we cite it here to show that courts have made the connection between the

nature and development of asbestos-related injury and the flexibility accorded to courts in analyzing expert opinions under *Daubert.*

6    Additionally, we acknowledge Plaintiffs' point, made by counsel during the course of oral argument, that the "substantial factor" standard allows for the admission of the experts' "each and every exposure" opinions. In *Rutherford,* the California Supreme Court observed that although a plaintiff must

> demonstrate to a reasonable medical probability that a product or products supplied by the defendant, to which he became exposed, were a substantial factor in causing his disease or risk of injuries, he is free to further establish that his particular asbestos disease is cumulative in nature, which many separate exposures each having constituted a "substantial factor."

16 Cal.4th at 958. Although not cited in Plaintiffs' response motions (Doc. 125 and Doc. 169), nor in the Pennsylvania cases upon which those motions rely, we find this reasoning persuasive.

---

**End of Document**    © 2021 Thomson Reuters. No claim to original U.S. Government Works.