1
2
3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

CIVIL ACTION NUMBER:

4    **IN RE:  VALSARTAN PRODUCTS**
     **LIABILITY LITIGATION**                    **19-md-02875-RBK-KMW**

5    _____

6                                           **CASE MANAGEMENT CONFERENCE**
                                               **VIA REMOTE ZOOM**
                                               **VIDEOCONFERENCE**
7

8        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
9        Camden, New Jersey  08101
         December 15, 2021
10       Commencing at 4:00 p.m.

11   **B E F O R E:**              **THE HONORABLE THOMAS I VANASKIE (RET.)**
                                  **SPECIAL MASTER**
12

     **A P P E A R A N C E S:**
13

14       MAZIE SLATER KATZ & FREEMAN, LLC
         BY:  ADAM M. SLATER, ESQUIRE
15       103 Eisenhower Parkway
         Roseland, New Jersey  07068
16       For the Plaintiffs

17       GOLOMB & HONIK, P.C.
         BY:  RUBEN HONIK, ESQUIRE
18       1835 Market Street, Suite 2900
         Philadelphia, Pennsylvania  19103
19       For the Plaintiffs

20       KANNER & WHITELEY, LLC
         BY:  DAVID J. STANOCH, ESQUIRE
21       701 Camp Street
         New Orleans, Louisiana  70130
22       For the Plaintiffs

23            Camille Pedano, Official Court Reporter
                        camillepedano@gmail.com
                             609-774-1494
24

25   Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3        DUANE MORRIS LLP
         BY:  SETH A. GOLDBERG, ESQUIRE
         BY:  JESSICA PRISELAC, ESQUIRE

4        BY:  REBECCA BAZAN, ESQUIRE
         30 South 17th Street

5        Philadelphia, Pennsylvania  19103
         For the Defendants, Prinston Pharmaceuticals,

6        Solco Healthcare U.S. LLC, and
         Zhejiang Huahai Pharmaceuticals Ltd.

7

8        GREENBERG TRAURIG LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE

9        3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia  30305

10       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,

11       and Actavis Pharma, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (PROCEEDINGS held via remote Zoom videoconference before The

2    Honorable Thomas I. Vanaskie (Ret.), Special Master, at 4:00

3    p.m.)

4          JUDGE VANASKIE:  I think all the participants waiting

5    have been admitted to this Zoom session and we're ready to get

6    started.

7          You all know the protocol.  Please mute your mics when

8    you're not speaking and identify yourself as well.  Even though

9    we can see your names on the screen, it is helpful for Camille,

10   our court reporter, to know who is speaking.

11         Having said that, we'll start today's conference call.

12         I'm going to proceed in the order of the defense

13   letter that I received and I wanted to take the prerogative, I

14   suppose, to add one other item to the agenda, and that is to

15   discuss compliance with Special Master Order Number 54 in two

16   respects:  One concerning the document retention policy issue,

17   and the other concerning the issuance of the litigation hold

18   notices, but we will finish with that item.

19         So let's proceed first.

20         The first item appears to be a matter on which there

21   is agreement that deals with the font size for the reply

22   briefs, for the briefs on the class certification motion.

23   There's no disagreement on this.  It can be 12 point and not

24   the 14 point that the rules otherwise require.  And I guess

25   there's no need to do a reduction as the rules contemplated.

 1              I know I'm badly stating that issue but there is

 2    agreement on it.

 3              The guidance that was sought from me was should there

 4    be a proposed order submitted?  And yes, there should be a

 5    proposed order so that my fumbling with exactly what you all

 6    have agreed to doesn't prejudice or harm anybody.  So I'll ask

 7    that you submit a proposed order, an agreed-to proposed order

 8    on font size.

 9              The next issue that I wanted -- is there any need to

10    add anything with respect to that issue?  Mr. Slater?

11              MR. SLATER:  I don't believe so, Your Honor.

12              JUDGE VANASKIE:  All right.  Who will be speaking on

13    behalf of the defense team today?

14              MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

15    think different attorneys will cover different issues.

16              On that first issue, there's nothing that needs to be

17    done.

18              JUDGE VANASKIE:  All right, great.

19              MR. GOLDBERG:  We will submit a proposed order.

20              JUDGE VANASKIE:  Okay, good.  All right.  Let's move

21    then to the dismissal of withdrawn class representatives.  And

22    as I understand it, I'm a little bit confused exactly what the

23    defense position is here.  At one point there's a statement

24    that they wanted an on-the-record confirmation within seven

25    days that those five class representatives will be dismissed

1  from the action pursuant to Rule 41 of the Federal Rules of

2  Civil Procedure.  And then there's also an indication that they

3  wanted the Rule 41 motion made within seven days.  So I wasn't

4  clear whether you just want an on-the-record confirmation that

5  they will do that or they have to file the motion within seven

6  days.

7        MS. BAZAN:  Your Honor, Rebecca Bazan for the

8  defendants.

9        As we put in our submission, our understanding is that

10  plaintiffs have withdrawn these five class representatives and

11  given that we are now at this point trying to finish all class

12  representative depositions and brief our class certification

13  oppositions, we're just looking for clarity and confirmation on

14  the record that plaintiffs have officially withdrawn those

15  class representatives.

16        So with previous plaintiffs who have opted not to

17  pursue their cases, plaintiffs have filed Rule 41 notices of

18  voluntarily dismissal so we thought that would be the way that

19  they would proceed.  If they would prefer to proceed in a

20  different fashion, we are open to discussing it.  We just are

21  requesting that we get that certainty of any class

22  representatives plaintiffs intend to withdraw within seven days

23  so we know that as we wrapping up these depositions and our

24  briefing.

25        JUDGE VANASKIE:  Who will be addressing this issue for

1  the plaintiffs?

2          MR. STANOCH:  Your Honor, I can.  This is David

3  Stanoch for plaintiffs.

4          I don't think there's any real issue here for Your

5  Honor's attention.  We told them that we are withdrawing these

6  few persons as class representatives.  We have, we will, we

7  did, I'll confirm right now that they should be considered

8  withdrawn as class representatives.  We can talk about filing a

9  formality, as a housekeeping matter, a notice of stipulation of

10  dismissal.  I know that's been done on the PI side, it has not

11  been done on the class side.

12          Defendants have their confirmation now on the record

13  and happy to talk to them about the format of what the

14  stipulation and notice of dismissal should look like and we

15  will get that on file in due course soon.

16          JUDGE VANASKIE:  All right.  Ms. Bazan, is that

17  satisfactory?

18          MS. BAZAN:  I think we would appreciate a

19  representation that it could get on file in the next week

20  before the holiday break.

21          MR. STANOCH:  David Stanoch again.  Provided we get

22  feedback from the format and agreement on it, happy to work

23  towards that as a goal.  Again, we are not going forward with

24  these as class representatives, I'll say it for a third time,

25  but that's fine.

1          JUDGE VANASKIE:  I think that is the necessary

2    confirmation on the record, Mr. Stanoch.  And I also understand

3    that you will act in good faith in getting these filed and

4    confer with the other side and we won't put a hard-and-fast

5    deadline, especially, I hate to say it, but at this time of

6    year because things are crazy.  And I expect that by the time

7    we have our next call, which isn't until after the first of the

8    year, these five withdrawn class representatives will no longer

9    be part of the litigation.  All right?

10          MR. STANOCH:  Thank you, Judge.

11          MS. BAZAN:  Thank you, Your Honor.

12          JUDGE VANASKIE:  Thank you.

13          Now, the next issue we have is the time allotted for

14    the deposition of plaintiffs' class certification experts.

15          Now, on this we have the defense asking for ten hours,

16    which was the length of the depositions for the general

17    causation expert witnesses, as I recall, and the plaintiffs

18    proposing different minutes for different experts.  For Conte

19    and Craft and Quick, seven hours of deposition; for Kaplan and

20    Song, four hours; and for Panagos and Najafi, two hours.

21          Have you all engaged in any discussion on trying to

22    reach agreement on this issue?  I suppose you have.

23          What's the defense position right now with respect to

24    this matter?

25          MS. LOCKARD:  Your Honor, it's Victoria Lockard from

1    Greenberg Traurig for the defendants on this issue.

2          The extent of the discussion that we have had is in

3    connection with scheduling of the depositions where Ms. Layne

4    Hilton and I were communicating about the dates and we had

5    included an exhibit with our submission that set that out, but,

6    essentially, we were operating, on the defense side, assuming

7    that the importance of these class certification witnesses and

8    the significance and the complexity of their opinions is no

9    less than what we have on the general causation side.

10          So it was, you know, our expectation that we would be

11    proceeding under the same parameters that this Court set for

12    the general causation experts.  I attempted to confirm that

13    with plaintiffs' counsel and they said, no, they don't agree

14    with that, that the rule provides for seven hours.

15          It wasn't until we got their submission from plaintiff

16    yesterday that we heard for the first time that they were

17    trying to shorten these even further to a period of two hours

18    or four hours, which, obviously, is absolutely unreasonable and

19    will not give us sufficient time.

20          So whereas we have said certainly we agree in some

21    cases these will not take ten hours, we agree with that,

22    several of them could probably be finished within seven hours.

23    We did so with the general causation experts as well.  So, you

24    know, we don't intend to take maximum amount of time but you

25    can tell if you've taken a look at the extent of the briefing

1    on the class certification motion and these reports, you know,

2    these are significant issues, there are a number of defendants

3    who will need to ask questions.

4         You know, plaintiffs' submission said that these don't

5    get into the merits of the case but that's just frankly not

6    true.  We have several experts from plaintiffs who are

7    attempting to offer opinions about individual manufacturer's

8    violations of cGMP, what they should have done or should not

9    have done, and so there are some individualized issues with

10   some of these witnesses.  You know, on the other hand, some of

11   them are relying on complex, you know, damages calculations

12   that will take time to walk through and we don't think we

13   should be limited here certainly not less than seven hours, but

14   in many cases we are going to need more than that given this

15   case.

16        So the plaintiffs also referenced the number of pages

17   of the reports.  You know, I don't know that that's

18   necessarily, you know, the guide that we should go through.  In

19   some instances, some of the reports are so skeletal that we're

20   going to need more time for those witnesses where their reports

21   are shorter because they don't really provide the adequate

22   bases for their opinions so we're going to need to explore

23   that.  So I don't think you can take a look at the number of

24   pages on each report and attribute that to how many hours it

25   will take to depose these witnesses.

1          This is a highly sophisticated case, there are a lot

2  of defendants.  I mean, to suggest that we can do this in less

3  than seven hours is just unreasonable.

4          So I'll stop there and see if there are any questions

5  or if plaintiffs want to have a chance to respond.

6          JUDGE VANASKIE:  Yes, before hearing from the

7  plaintiffs, I did have a question, and that is, are you able,

8  at least at this time, to identify any of these deponents that

9  you will not require more than seven hours for?

10          MS. LOCKARD:  I think we could do that, but at this

11  point, you know, we haven't approached this because we just

12  heard yesterday that plaintiffs wanted to try to limit this to

13  less than seven hours.  We haven't looked at each of these to

14  endeavor to identify where we could.  And the rule provides

15  seven hours in a standard case.  So I don't see that plaintiffs

16  have made any good-faith showing that we should be limited to

17  less than seven hours.

18          So, you know, at a minimum, for some of these, I think

19  we could depose them within the seven hours but for the

20  majority of them, it's going to require more than that.  And

21  that's why we initially raised this with plaintiffs and with

22  the Court.

23          JUDGE VANASKIE:  All right.  Thank you.

24          Mr. Honik, are you addressing this issue?

25          MR. HONIK:  I am, Your Honor.  Thanks for taking note

1   of my presence for a change, and yes, I will be speaking on

2   this.

3         It's always good to start with agreement and much as I

4   like Victoria, I agree with her in this instance that length in

5   pages doesn't tell us very much.  We argued that to Your Honor

6   with general causation.  It was true then and it's true now.

7         I think what the Court is obliged to do, under Rule

8   30, is to look at what the presentation is and, in strict

9   conformance with Rule 30, limit it to seven hours unless

10  there's some specific good cause presented by the questioner

11  who desires more than the rule permits.  And what we've

12  attempted to do, and I don't disagree that we haven't spent a

13  lot of time conferring on this, what I think we attempted to do

14  in our letter is, at a high level, to explain why three of the

15  witnesses can be well handled in seven hours and others less

16  than that.

17        Let me start by pointing out the obvious.  Of course

18  these experts talk about facts, but they don't offer a

19  discussion of the facts for the truth of the merits of any of

20  those facts.  What they, in every instance, talk about is how

21  those facts make it susceptible to determine answers to

22  questions on a class-wide basis.  In other words, if our cGMP

23  expert talks about cGMP failures that the record in this case

24  suggests exists, he or she is not positing it for the truth of

25  the matter, simply stating that it is an example of cGMP

1  failures that are susceptible to class-wide treatment.  That's

2  significant because if the Court deigns to certify one or more

3  classes here, these same experts, and others, will be weighing

4  in on those facts for the truth of the matters asserted.

5          If one looks at these reports, Your Honor, and many of

6  them are quite short, but if one looks at these reports,

7  they're really at a high level modeling different propositions

8  under Rule 23 and not delving in any, you know, considerable

9  matter into the merits themselves.

10         We concede that it could very well take as much as,

11 but certainly no more than seven hours for Conte, who's a

12 health economist who prepared a damage model.  Frankly, Your

13 Honor, many of us on this call on the plaintiffs' said have

14 taken health economists' depositions in a class setting and

15 defended them and they rarely take more than four or five hours

16 even in the most complex case.  The fact that this case is

17 complex, in and of itself, doesn't suggest whether Rule 30

18 should be abrogated.

19         And we think, respectfully, with respect to Conte,

20 Craft and Quick, that we ought to follow what the rule

21 provides.  Limit it to seven hours and if we reach seven hours,

22 a subset of that rule permits the parties to confer and

23 lengthen it or shorten it, as the case may be.  The rule

24 provides I think under (d)(3) that if we reach hour three or

25 four or five say of Najafi, who wrote a seven-page report for

1    one proposition as a chemist, if we are in hour three or four

2    or five of Najafi, we're permitted to stop the deposition and

3    come to Your Honor and say we've exhausted any conceivable

4    possibility, it's just harassment.  We want to get ahead of

5    that.  And we made a good-faith examination of these reports

6    and provided to the Court what we thought was a reasonable

7    length of time for each of these witnesses.

8        The reason we've got two hours for Najafi is he's got

9    a seven-page report who offers no opinion on the merits and

10   simply is stating that contaminated drugs are chemically

11   different than uncontaminated drugs.  It's really not a

12   controversial position at all.  And the same thing with some of

13   the others on the medical monitoring side.

14       What the rule permits, Your Honor, is for Your Honor

15   to limit it to the hours we've proposed, and, frankly, if we

16   get to Dr. Song at the end of four hours and counsel confers

17   with us and says, hey, we have the following additional areas,

18   we think we need an additional 45 minutes, that's the way to go

19   about applying Rule 30.

20       So we would respectfully request the limitations that

21   we set out here.  If Your Honor is unprepared to do that today,

22   which you might be because neither of us have offered any great

23   detail, we, frankly, would like to brief it.  It's that

24   important.

25       Number two:  There's a practical consideration here,

1    Judge, and I just want to be candid with the Court.  Many of

2    these experts are simply not available on two consecutive days.

3    And, you know, it's always ideal if you can do a deposition in

4    one straight shot but, you know, frankly, if we do Conte,

5    Craft, and Quick, and by some act of miracle we get to hour

6    seven and Victoria or Seth says we need another hour or two,

7    and there's a bona fide reason to do it, and we don't have a

8    dispute, we'll get them an additional hour or two.

9         So we think as a practical matter, so as not to impose

10   unduly on these experts whose schedules are enormously

11   complicated by teaching, by other assignments that they have,

12   by the holidays, you know, at this point as we speak, we've

13   given them dates for everybody, and I would hate to go back to

14   them and say, well, we need potentially, we're not even sure,

15   but we need a second day, give us a second day.  That's going

16   to cause us to have to completely look at the calendar anew.

17   So I don't want to disrupt the dates that we've given defense

18   counsel which they have agreed to I think in every instance but

19   one.  We're working through Dr. Conte who we want to do on the

20   10th of February, but everyone else is locked in for one day,

21   and I think the rule, Rule 30, is flexible enough so that, you

22   know, well-intended counsel can go with the hours that we've

23   suggested.  When we reach the end of that period, frankly, if

24   there's a good-faith basis to go forward, we'll be reasonable

25   about it and proceed; and if there isn't, and if there is a

 1   dispute, we can take it back to you.

 2          JUDGE VANASKIE:  When are the depositions scheduled to

 3   begin?

 4          MR. HONIK:  I believe the earliest of the depositions

 5   are currently slated to begin at the end of January; although

 6   most of them, as I recall, are presently in February.

 7          MS. LOCKARD:  Our concern with a proposal like that on

 8   a wait-and-see ad-hoc basis is that, you know, some of these

 9   depositions are in February.  If we get ready, take the

10   depositions, decide we need more time, then have to come to the

11   Court, then have to go get more dates from the experts, this is

12   going to extend this process well beyond the deadlines we're

13   currently working with.  And it is much better on the front end

14   to decide how much time we are going to take or we will be

15   allotted so that we can be prepared, so that the defendants can

16   allocate time among the defendants for the questioning and we

17   can go in and do this.

18          To have to come back to the Court, bother the Court,

19   there are seven experts who have been named in addition, plus

20   two of the prior general causation experts who are also giving

21   opinions supportive of plaintiffs' class certification motion,

22   which we may need to depose those as well, so we're talking

23   about, you know, a number of experts we would have to come back

24   and bother the Court on each of these.  This will inevitably

25   extend this process well beyond the deadline.

1        So this is something we need to have decided and know

2    what our parameters are going into the depositions.

3        The difficulty of finding an additional date for some

4    of these witnesses should not be insurmountable.  We do it all

5    the time in litigation.  We did it for our general causation

6    experts, they did it for theirs.  And in a case of this

7    magnitude, that really should not be considered a burden, you

8    know, of any significance.

9        MR. HONIK:  Your Honor, we're not proposing that.  We

10   can get a second date.  I'm saying they can't always be

11   consecutive, in fact, unlikely to be consecutive.  I have no

12   objection to asking our experts for a backup date.  And I am in

13   no way suggesting the Court has to intervene in the event that

14   there is a request.

15       Rule 30 is very specific.  It permits me, if I'm

16   defending an expert, and we're going beyond a reasonable amount

17   of time, I can suspend that deposition, (d)(3) of the rule

18   permits us to do that, to come to the Court and make a showing

19   for why a continuation of the deposition to the seven-hour

20   limit, and that's what it is, it's a limit, it doesn't mean

21   they all have to go seven, shouldn't continue past three or

22   four, whatever it may be.

23       Now, I agree, in a perfect world, the Court could read

24   the expert opinions, reports, we can submit letter briefing,

25   but I'd rather not do that.  I think that we have worked in

1    good faith with defendants and defendants with us, and I think

2    that we can do the limits that we propose.  And we're not

3    talking about coming back to you.  I'm talking about doing

4    Najafi in two hours.  And if Victoria gets to an hour and 59

5    minutes and says, Ruben, we need another 45 minutes with

6    Najafi, you can bet that I'm going to say yes and we're not

7    going to call you, Your Honor.

8         So these are our best judgments about what the limits

9    should be.  Three of them are at the full seven hours, two of

10   them are at four hours, and two are at two.  I suggest that you

11   send us back to fine tune the four and two.  If we need to fine

12   tune that, if Victoria can make a case that, you know, we

13   really should have five, not four, we will do that; but the

14   rule is pretty clear that the parties can confer in real time

15   during the deposition, and I'm not -- we're not going to

16   withhold unreasonably conducting an additional 45 minutes or an

17   hour, and that doesn't require your intervention.

18        So, respectfully, I think we ought to lock in Conte,

19   Craft, and Quick at seven.  I will get additional dates from

20   them in the unlikely event we need to do it over two days, I

21   will get the dates, I'll provide them to counsel.  They're

22   unlikely to be consecutive.  But I would also ask that you

23   direct us to confer on the remaining four witnesses who we

24   propose limiting to four hours in two cases and two hours in

25   two other cases.  If we really can't work it out and arrive at

1    an arrangement that doesn't require a lot of attention from

2    you, Your Honor, we will come back to you in due course, in

3    short order, but I think that this is something that should be

4    limited under Rule 30.

5              MS. LOCKARD:  Your Honor, we're entitled to seven

6    hours.  It's not our burden to show that we should get more

7    than two hours as is suggested here by Mr. Honik.  If he thinks

8    he has good reason for limiting us in this way, this

9    restrictively, it's his burden to show that.  I haven't heard

10   anything in the papers or today that suggests that he has made

11   that showing.

12             You know, one of the issues here is we have a number

13   of downstream defendants as well who will need the opportunity

14   to ask their questions on top of the manufacturers.  We have

15   several buckets of defendants, it's not just the manufacturers

16   involved in this, and I know the downstreamers are very

17   concerned about having an opportunity to ask their questions as

18   well.  So I just don't want to lose sight of that for the Court

19   that we have multiple interests on the defense side in terms of

20   deposing these class certification experts.

21             MR. HONIK:  Your Honor, we have made a showing.  I --

22             MS. LOCKARD:  I'm sorry, Mr. Honik.  May I continue?

23             JUDGE VANASKIE:  Wait a second, Mr. Honik.

24             MR. HONIK:  I apologize, I thought you were done.

25             MS. LOCKARD:  No.  So, Your Honor, we raise this issue

*United States District Court*
*District of New Jersey*

1   because we think we need more than seven hours.  If we need to

2   brief this issue and show the Court which experts we need the

3   extra time for and make our showing, we're happy to do that, as

4   Mr. Honik suggested; but to come in and try to limit these

5   experts to a two-hour, in a case of this significance, in a

6   class certification, expert deposition with this number of

7   defendants, the downstream defendants, the manufacturers, I

8   mean, I would venture to say, if you look at these reports

9   themselves, Your Honor, there is absolutely no way that such a

10  proposal is reasonable.  There's no basis for it.

11          So, you know, I'm frankly flabbergasted that Mr. Honik

12  would suggest that we would be limited to two hours and have to

13  beg for 45 more minutes in the middle of the deposition.

14          MR. HONIK:  May I at this point?

15          JUDGE VANASKIE:  Yes, you may, Mr. Honik.

16          MR. HONIK:  Yes.  Your Honor, we have made a showing.

17  We've indicated to you that Dr. Najafi, for example, is a

18  chemist who wrote a seven-page report and offers one opinion.

19  That opinion is that, chemically speaking, contaminated

20  valsartan is not the same as uncontaminated valsartan under the

21  ANDA.  He's not an FDA expert, he has no knowledge about

22  regulations, he simply states that chemical proposition.  We

23  believe, with good cause, that that only requires a two-hour

24  deposition of this chemist, full stop.

25          Dr. Panagos wrote an 11-page report, as I indicated in

1    our letter to the Court, discussing what the TPP industry is

2    about, how the insurance industry pays for these drugs, and

3    opines that the damages and losses to that industry is

4    susceptible to class-wide treatment.  He doesn't discuss any

5    facts specific to any of the defendants, has no knowledge about

6    that, and we think an 11-page report that simply is oversight

7    about the TPP industry can ably be covered in two hours.

8           Dr. Song, who is a medical monitoring class expert,

9    offers no opinion on the merits and simply talks about how to

10   cost out, how to put price tags on the screening regimen that

11   we propose for the medical monitoring class.  That's it.  An

12   X-ray costs X, an upper GI costs Y, this is how we would go

13   about determining on a class-wide basis what the cost would be,

14   that's it.  He has no medical opinion about the need for it.

15   That's reserved for the oncologist, Dr. Kaplan, who wrote a

16   seven-page report who simply describes the handful of medical

17   screening techniques that are available.  We think, reasonably,

18   that's a four-hour deposition.  That's our showing.

19          Now, we can expand on that but I think we've made an

20   adequate showing under Rule 30 to limit those depositions to

21   the proposed hours.  And I simply offered as a gesture,

22   frankly, of good faith and compliance with the rule that if we

23   find ourselves in any one of those -- it's only four

24   depositions that we're proposing shortening.  If we get to the

25   end of that timeframe and Seth or somebody says, we've ably

1   covered it but we think we have another hour, we'll go another

2   hour.  That strikes me as an eminently reasonable way to

3   approach these depositions.  We're not trying to limit Conte,

4   Craft, and Quick, we're going to do the full seven hours.  And

5   the rule is clear, if you need more than seven, which is the

6   limit, that's the language of the rule, it's limited to seven,

7   that burden falls to the defendants.  And I think you should

8   direct them to explain to us why they need more than seven in

9   real time; and if we -- if that's a reasonable explanation and

10   they need another hour, we'll be reasonable in contemplating

11   it.

12       And to Victoria's point that we don't want to run

13   around trying to get a second day later on, we will get a

14   second day for the three witnesses who are admittedly

15   potentially seven-hour witnesses now.  We'll get a second date,

16   it just won't be consecutive.

17       I think that's a fair and reasonable way to handle

18   this.  I really don't want to burden you with briefing on this.

19   I think it's unnecessary.  I've made I think a very able case

20   about why the four I've mentioned should be shortened, and if

21   Victoria wants to argue specifically why she needs seven hours

22   with a chemist and somebody who talks about the TPP industry,

23   I'll be curious to hear what that argument is.

24       JUDGE VANASKIE:  All right.  Ms. Lockard?

25       MS. LOCKARD:  Your Honor, let me tell you, just Mr.

1   Honik attempts to simplify some of these reports.  But if we

2   take Ron Najafi's report, for example, he's not just offering

3   one opinion.  He discusses violation of cGMPs, the expectations

4   of the FDA with respect to changes involving a drug substance,

5   the chemistry, the manufacturing, and the controls, there is an

6   entire section that discusses NDMA and NDEA are carcinogenic

7   and mutagenic compounds.  So it goes far afield than one simple

8   opinion.  He discusses the FDA guidances, the IARC statements.

9   I mean, there are a number of references in here that he will

10  need to be questioned about that go beyond the simple opinion

11  that Mr. Honik has described.

12        And so while his report itself is somewhat skeletal,

13  he does rely on opinions that relate to individual

14  manufacture's supposed violations of cGMP, their supposed

15  failures to adequately assess the changes in the drug

16  formulation process.  And so it's not correct to say that he

17  gives one simple opinion and that we can go in and depose him

18  in two hours.

19        So, you know, we can go through each and every one of

20  these reports, I don't know if Your Honor's had a chance to

21  review these, but I mean it's a gross over-simplification to

22  say it's one opinion.  I mean, it goes far afield from that.

23        JUDGE VANASKIE:  All right.  Thank you.

24        I think the rules wisely set a limit on the deposition

25  recognizing that there are certainly going to be exceptions

1 where a deposition cannot be completed within seven hours, but

2 I think also the rules set a timeframe for completion of the

3 deposition so that the Court does not find itself having to

4 decide sort of in the abstract what the appropriate length of a

5 deposition should be in advance.  Everybody goes in with an

6 understanding that the deposition could last seven hours, there

7 could be seven hours of deposition time.  You're right, Mr.

8 Honik, it doesn't have to be.  You do have the right to suspend

9 the deposition if the questions are repetitive, if they're

10 covering the same ground over and over again, if they're

11 insisting on an answer to a question and they're not going to

12 say I'm going to be here for seven hours until I get an answer

13 to my question, you have the right to suspend under those

14 circumstances.  But I don't want to see you all spending time

15 briefing the question in advance to me to say that in the case

16 of Mr. Najafi, two hours versus three hours versus seven hours

17 is appropriate or maybe it's going to require more than seven

18 hours, I don't know that.  I do know this:  The rule would give

19 you up to seven hours.

20          We are going to follow the rule and say that for each

21 of these deponents, going into the deposition, the defense has

22 up to seven hours.

23          Now, I think it would behove the defense to identify,

24 and I did ask that question, have they identified particular

25 witnesses that they're certain will require more than seven

1   hours at this time.  I think it would be in their interests to

2   brief them on a deponent-by-deponent basis, because I think

3   from what I'm hearing there's an understanding that on the

4   defense part that not all of these witnesses are going to

5   require more than seven hours.

6        So I would encourage, I'm not requiring it, but I

7   would encourage the defendants to file in advance a motion per

8   deponent or a motion that identifies the deponents that they

9   believe will require more than seven hours, and you'll,

10  obviously, Mr. Honik, have an opportunity to respond and

11  explain why seven hours is sufficient, and then we'll make a

12  decision and everybody will know going into the deposition.  I

13  think that's a good observation by Ms. Lockard that it's good

14  to know going into a deposition what the parameters are, what

15  the duration parameters are.

16       So right now, for purposes of our discussion today,

17  the depositions will be seven hours in length.  We are not

18  deciding in advance that each deponent could go for ten hours.

19  That will have to be done on a deponent-by-deponent basis, but

20  I'm not also going to artificially limit the depositions to

21  less than seven hours.

22       MR. HONIK:  Thank you, Your Honor.

23       JUDGE VANASKIE:  We'll proceed along those lines.

24       MS. LOCKARD:  Understood, Your Honor.  We'll take a

25  hard look at the individual experts and we will, in fact, brief

```
 1   any or all that we believe will be entitled to more than seven.
 2          JUDGE VANASKIE:  Yes, and that's true, Ms. Lockard, if
 3   you think all of them are going to require more than seven
 4   hours, you certainly can go ahead and make that showing and
 5   we'll make a decision.  All right?
 6          MS. LOCKARD:  Thank you, Judge.
 7          JUDGE VANASKIE:  Thank you.
 8          Now, the last thing I wanted to talk about today deals
 9   with an order we issued, I don't have the date in front of me
10   right now, but it was Special Master Order 54, and it addressed
11   discovery issues and it required the submission of a couple of
12   affidavits:  An affidavit that confirmed that the litigation
13   hold notices that had been submitted to me for in camera review
14   were the only notices issued in this matter, and I've received
15   an affidavit to that effect.  The content of the notice has
16   been submitted to me under seal, so that has not been shared
17   with plaintiffs, and they've also made some corrections with
18   respect to an exhibit to identify who received the notices.
19          And I take it that plaintiffs have received that
20   exhibit, that is, who received the notices.  Am I wrong in
21   that, Mr. Slater?
22          MR. SLATER:  I have to be -- this is Adam Slater, Your
23   Honor.  I'm not actually certain whether we got it or not.  If
24   it came in, then I'll accept that it came in but I don't recall
25   seeing it.
```

1          JUDGE VANASKIE:  I know I'm hitting you with this

2    cold.  There were two exhibits to the affidavit of Mr. -- I

3    don't know if it's a Mister or Miss, the affidavit of Peng Jang

4    or Jang Peng, and it's Ms. Jang, and Exhibit A was submitted to

5    me separately.  That's the actual litigation hold notice.

6    Exhibit B was a list of those who received the notices and

7    when.  And I believe -- but maybe you are at a disadvantage

8    here.  This would have been handled by Ms. Priselac.  I don't

9    know if she is on the call now.

10          MS. PRISELAC:  Yes, Your Honor.  Jessica Priselac, I'm

11   here.

12          When we sent the declaration, the exhibits, to Your

13   Honor, we did copy Mr. Slater and Mr. Geddis and the Defense

14   Executive Committee.

15          JUDGE VANASKIE:  Okay.  So did they receive Exhibit B?

16          MS. PRISELAC:  Correct.

17          JUDGE VANASKIE:  They did not receive Exhibit A.

18          MS. PRISELAC:  Correct.  Exhibit B is also a publicly

19   filed document from last year.

20          JUDGE VANASKIE:  Okay.  And there were some

21   corrections made to it.

22          MS. PRISELAC:  Yes.  And I'm happy to explain those

23   corrections, Your Honor, if you would like to hear.  They're

24   truly typographical because of the spelling of Chinese names.

25          JUDGE VANASKIE:  Yes.  No, I don't think there's any

1   need to elaborate on that.

2          The question I have for you all with respect to the

3   litigation hold notices is now that I've received an affidavit

4   that said this is the notice that was sent to these individuals

5   on these dates, while plaintiffs don't have the actual

6   litigation hold notice, they do know when they were sent or

7   claimed to have been sent to specific individuals, is there

8   anything more that you expect to be decided by me with respect

9   to this matter?  Mr. Slater?

10          MR. SLATER:  I have to be honest with Your Honor, I

11   wasn't prepared to talk about this so I'd be making it up and

12   guessing and we don't want that.

13          JUDGE VANASKIE:  Well, let me just say, you're free to

14   address the matter.  Now that you know that the declarations

15   have been submitted and you have -- and I know how busy you all

16   are -- you have a list of who received them, if there's

17   anything else that you expect to be decided -- I looked at the

18   notices -- I looked at the notice.  It's essentially the same

19   notice that was sent on several occasions to a number of

20   individuals at ZHP.  I find the notice on their face to be

21   adequate but maybe I'm missing something.  And so I know you're

22   shooting in the dark on that but I'm looking for guidance from

23   you now in terms of what you were expecting.

24          MR. SLATER:  I'd have to give some thought to it, Your

25   Honor.  I'd have to look at the exhibit that they sent.

1    Although if it's changing a few spellings of names, it doesn't

2    really matter.

3            Your Honor, obviously, we're not seeing the hold

4    notices, so, for example, we don't know what the notice says,

5    if anything, as to what triggered the need for the notice or

6    what the event was that triggered the need for them to start to

7    preserve documents, ESI, et cetera.  So we don't know -- we

8    don't have that information in order to challenge the adequacy

9    of the date because we don't know what their basis was, for

10   example.  So, I mean, we will certainly talk on our end but

11   we're in the dark enough that I don't really know how we can

12   challenge what we haven't seen.

13           JUDGE VANASKIE:  Understood.  Well, I'm just giving

14   you the opportunity, if you want to raise the issue, to raise

15   it at our next conference.

16           MR. SLATER:  Okay.  We'll look into it.

17           JUDGE VANASKIE:  All right.

18           MR. SLATER:  If we have something clever, we'll let

19   you know.

20           JUDGE VANASKIE:  The other point was the document

21   retention policies.  At one point in time -- and I said in the

22   order that the defense had represented that all document

23   retention policies had been produced, and I asked for

24   confirmation of that.  What we received was a declaration that

25   said there are no formal document retention policies, that

```
 1   document retention was handled on a department-by-department

 2   basis pursuant to standard operating procedures.  So that is

 3   all that I have with respect to that matter.  I don't intend to

 4   take any additional action on that.  And if plaintiffs want to

 5   follow up, they certainly can follow up, but that's the

 6   information that I now have.

 7            MR. SLATER:  Thank you, Judge.

 8            JUDGE VANASKIE:  All right.  Is there anything else

 9   for the good of the order?

10            MR. SLATER:  I don't believe from plaintiffs.

11            JUDGE VANASKIE:  Okay.  On the defense side?

12            MS. LOCKARD:  Not that I'm aware of, Judge.

13            JUDGE VANASKIE:  All right.  Thank you all very much.

14   I do want to wish those of you who celebrate the holidays to

15   have a great holiday season and we'll see you all in the new

16   year.  I don't think there will be anything before then.

17   Thanks.

18            MR. SLATER:  Thank you, Judge.

19            MS. LOCKARD:  Thank you.

20            MR. SLATER:  You too.  Have a nice holiday.

21            JUDGE VANASKIE:  Bye-bye.

22            (The proceedings concluded at 4:44 p.m.)

23            - - - - - - - - - - - - - - - -

24

25
```

1          I certify that the foregoing is a correct transcript from

2     the record of proceedings in the above-entitled matter.

3

4     /S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR
      Court Reporter/Transcriber

5

6     December 15, 2021
          Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## /

/S [1] - 30:4

## 0

07068 [1] - 1:15
08101 [1] - 1:9

## 1

103 [1] - 1:14
10th [1] - 14:20
11-page [2] - 19:25, 20:6
12 [1] - 3:23
14 [1] - 3:24
15 [2] - 1:9, 30:6
17th [1] - 2:4
1835 [1] - 1:17
19-md-02875-RBK-KMW [1] - 1:4
19103 [2] - 1:18, 2:5

## 2

2021 [2] - 1:9, 30:6
23 [1] - 12:8
2500 [1] - 2:9
2900 [1] - 1:17

## 3

30 [9] - 2:4, 11:8, 11:9, 12:17, 13:19, 14:21, 16:15, 18:4, 20:20
30305 [1] - 2:9
3333 [1] - 2:9

## 4

41 [3] - 5:1, 5:3, 5:17
45 [4] - 13:18, 17:5, 17:16, 19:13
4:00 [2] - 1:10, 3:2
4:44 [1] - 29:22
4th [1] - 1:8

## 5

54 [2] - 3:15, 25:10
59 [1] - 17:4

## 6

609-774-1494 [1] - 1:23

## 7

701 [1] - 1:20
70130 [1] - 1:21

## A

able [2] - 10:7, 21:19
ably [2] - 20:7, 20:25
above-entitled [1] - 30:2
abrogated [1] - 12:18
absolutely [2] - 8:18, 19:9
abstract [1] - 23:4
accept [1] - 25:24
act [2] - 7:3, 14:5
Actavis [2] - 2:10, 2:11
ACTION [1] - 1:3
action [2] - 5:1, 29:4
actual [2] - 26:5, 27:5
ad [1] - 15:8
ad-hoc [1] - 15:8
ADAM [1] - 1:14
Adam [1] - 25:22
add [2] - 3:14, 4:10
addition [1] - 15:19
additional [7] - 13:17, 13:18, 14:8, 16:3, 17:16, 17:19, 29:4
address [1] - 27:14
addressed [1] - 25:10
addressing [2] - 5:25, 10:24
adequacy [1] - 28:8
adequate [3] - 9:21, 20:20, 27:21
adequately [1] - 22:15
admitted [1] - 3:5
admittedly [1] - 21:14
advance [4] - 23:5, 23:15, 24:7, 24:18
affidavit [5] - 25:12, 25:15, 26:2, 26:3, 27:3
affidavits [1] - 25:12
afield [2] - 22:7, 22:22
agenda [1] - 3:14
agree [5] - 8:13, 8:20, 8:21, 11:4, 16:23
agreed [3] - 4:6, 4:7, 14:18
agreed-to [1] - 4:7
agreement [5] - 3:21, 4:2, 6:22, 7:22, 11:3
ahead [2] - 13:4, 25:4
aided [1] - 1:25
allocate [1] - 15:16
allotted [2] - 7:13, 15:15
amount [2] - 8:24, 16:16
ANDA [1] - 19:21
anew [1] - 14:16
answer [2] - 23:11, 23:12
answers [1] - 11:21
apologize [1] - 18:24
applying [1] - 13:19
appreciate [1] - 6:18
approach [1] - 21:3
approached [1] - 10:11
appropriate [2] - 23:4, 23:17
areas [1] - 13:17
argue [1] - 21:21
argued [1] - 11:5
argument [1] - 21:23
arrangement [1] - 18:1
arrive [1] - 17:25
artificially [1] - 14:20
asserted [1] - 12:4
assess [1] - 22:15
assignments [1] - 14:11
assuming [1] - 8:6
Atlanta [1] - 2:9
attempted [3] - 8:12, 11:12, 11:13
attempting [1] - 9:7
attempts [1] - 22:1
attention [2] - 6:5, 18:1
attorneys [1] - 4:15
attribute [1] - 9:24
available [2] - 14:2, 20:17
aware [1] - 29:12

## B

backup [1] - 16:12
badly [1] - 4:1
bases [1] - 9:22
basis [9] - 11:22, 14:24, 15:8, 19:10, 20:13, 24:2, 24:19, 28:9, 29:2
BAZAN [4] - 2:4, 5:7, 6:18, 7:11
Bazan [2] - 5:7, 6:16
beg [1] - 19:13
begin [2] - 15:3, 15:5
behalf [1] - 4:13
behove [1] - 23:23
best [1] - 17:8
bet [1] - 17:6
better [1] - 15:13
beyond [4] - 15:12, 15:25, 16:16, 22:10
bit [1] - 4:22
bona [1] - 14:7

bother [2] - 15:18, 15:24
break [1] - 6:20
brief [5] - 5:12, 13:23, 19:2, 24:2, 24:25
briefing [5] - 5:24, 8:25, 16:24, 21:18, 23:15
briefs [2] - 3:22
buckets [1] - 18:15
Building [1] - 1:8
burden [5] - 16:7, 18:6, 18:9, 21:7, 21:18
busy [1] - 27:15
BY [7] - 1:14, 1:17, 1:20, 2:3, 2:3, 2:4, 2:8
bye [2] - 29:21
bye-bye [1] - 29:21

## C

calculations [1] - 9:11
calendar [1] - 14:16
Camden [1] - 1:9
camera [1] - 25:13
Camille [3] - 1:22, 3:9, 30:4
camillepedano@gmail.com [1] - 1:23
Camp [1] - 1:20
candid [1] - 14:1
cannot [1] - 23:1
carcinogenic [1] - 22:6
CASE [1] - 1:5
case [13] - 9:5, 9:15, 10:1, 10:15, 11:23, 12:16, 12:23, 16:6, 17:12, 19:5, 21:19, 23:15
cases [5] - 5:17, 8:21, 9:14, 17:24, 17:25
causation [7] - 7:17, 8:9, 8:12, 8:23, 11:6, 15:20, 16:5
CCR [1] - 30:4
celebrate [1] - 29:14
certain [2] - 23:25, 25:23
certainly [7] - 8:20, 9:13, 12:11, 22:25, 25:4, 28:10, 29:5
certainty [1] - 5:21
certification [8] - 3:22, 5:12, 7:14, 8:7, 9:1, 15:21, 18:20, 19:6
certify [2] - 12:2, 30:1
cetera [1] - 28:7
cGMP [5] - 9:8, 11:22,

11:23, 11:25, 22:14
cGMPs [1] - 22:3
challenge [2] - 28:8, 28:12
chance [2] - 10:5, 22:20
change [1] - 11:1
changes [2] - 22:4, 22:15
changing [1] - 28:1
chemical [1] - 19:22
chemically [2] - 13:10, 19:19
chemist [4] - 13:1, 19:18, 19:24, 21:22
chemistry [1] - 22:5
Chinese [1] - 26:24
circumstances [1] - 23:14
CIVIL [1] - 1:3
Civil [1] - 5:2
claimed [1] - 27:7
clarity [1] - 5:13
class [26] - 3:22, 4:21, 4:25, 5:10, 5:11, 5:12, 5:15, 5:21, 6:6, 6:8, 6:11, 6:24, 7:8, 7:14, 8:7, 9:1, 11:22, 12:1, 12:14, 15:21, 18:20, 19:6, 20:4, 20:8, 20:11, 20:13
class-wide [4] - 11:22, 12:1, 20:4, 20:13
classes [1] - 12:3
clear [3] - 5:4, 17:14, 21:5
clever [1] - 28:18
Cohen [1] - 1:8
cold [1] - 26:2
coming [1] - 17:3
Commencing [1] - 1:10
Committee [1] - 26:14
communicating [1] - 8:4
completed [1] - 23:1
completely [1] - 14:16
completion [1] - 23:2
complex [3] - 9:11, 12:16, 12:17
complexity [1] - 8:8
compliance [2] - 3:15, 20:22
complicated [1] - 14:11
compounds [1] - 22:7
computer [1] - 1:25
computer-aided [1] - 1:25
concede [1] - 12:10

**conceivable** [1] - 13:3
**concern** [1] - 15:7
**concerned** [1] - 18:17
**concerning** [2] - 3:16, 3:17
**concluded** [1] - 29:22
**conducting** [1] - 17:16
**confer** [4] - 7:4, 12:22, 17:14, 17:23
**CONFERENCE** [1] - 1:5
**conference** [2] - 3:11, 28:15
**conferring** [1] - 11:13
**confers** [1] - 13:16
**confirm** [2] - 6:7, 8:12
**confirmation** [6] - 4:24, 5:4, 5:13, 6:12, 7:2, 28:24
**confirmed** [1] - 25:12
**conformance** [1] - 11:9
**confused** [1] - 4:22
**connection** [1] - 8:3
**consecutive** [5] - 14:2, 16:11, 17:22, 21:16
**considerable** [1] - 12:8
**consideration** [1] - 13:25
**considered** [2] - 6:7, 16:7
**contaminated** [2] - 13:10, 19:19
**Conte** [7] - 7:18, 12:11, 12:19, 14:4, 14:19, 17:18, 21:3
**contemplated** [1] - 3:25
**contemplating** [1] - 21:10
**content** [1] - 25:15
**continuation** [1] - 16:19
**continue** [2] - 16:21, 18:22
**Continued** [1] - 2:1
**controls** [1] - 22:5
**controversial** [1] - 13:12
**Cooper** [1] - 1:8
**copy** [1] - 26:13
**correct** [4] - 22:16, 26:16, 26:18, 30:1
**corrections** [3] - 25:17, 26:21, 26:23
**cost** [2] - 20:10, 20:13
**costs** [2] - 20:12
**counsel** [5] - 8:13,

13:16, 14:18, 14:22, 17:21
**couple** [1] - 25:11
**course** [3] - 6:15, 11:17, 18:2
**Court** [19] - 1:22, 8:11, 10:22, 11:7, 12:2, 13:6, 14:1, 15:11, 15:18, 15:24, 16:13, 16:18, 16:23, 18:18, 19:2, 20:1, 23:3, 30:4
**court** [1] - 3:10
**COURT** [1] - 1:1
**Courthouse** [1] - 1:8
**cover** [1] - 4:15
**covered** [2] - 20:7, 21:1
**covering** [1] - 23:10
**Craft** [5] - 7:19, 12:20, 14:5, 17:19, 21:4
**crazy** [1] - 7:6
**CRC** [1] - 30:4
**CRR** [1] - 30:4
**curious** [1] - 21:23

## D

**d)(3** [2] - 12:24, 16:17
**damage** [1] - 12:12
**damages** [2] - 9:11, 20:3
**dark** [2] - 27:22, 28:11
**date** [6] - 16:3, 16:10, 16:12, 21:15, 25:9, 28:9
**Date** [1] - 30:6
**dates** [7] - 8:4, 14:13, 14:17, 15:11, 17:19, 17:21, 27:5
**David** [2] - 6:2, 6:21
**DAVID** [1] - 1:20
**DAVIS** [1] - 2:8
**days** [6] - 4:25, 5:3, 5:6, 5:22, 14:2, 17:20
**deadline** [2] - 7:5, 15:25
**deadlines** [1] - 15:12
**deals** [2] - 3:21, 25:8
**December** [2] - 1:9, 30:6
**decide** [3] - 15:10, 15:14, 23:4
**decided** [3] - 16:1, 27:8, 27:17
**deciding** [1] - 24:18
**decision** [2] - 24:12, 25:5
**declaration** [2] - 26:12, 28:24

**declarations** [1] - 27:14
**defendants** [16] - 5:8, 6:12, 8:1, 9:2, 10:2, 15:15, 15:16, 17:1, 18:13, 18:15, 19:7, 20:5, 21:7, 24:7
**Defendants** [2] - 2:5, 2:10
**defended** [1] - 12:15
**defending** [1] - 16:16
**Defense** [1] - 26:13
**defense** [13] - 3:12, 4:13, 4:23, 7:15, 7:23, 8:6, 14:17, 18:19, 23:21, 23:23, 24:4, 28:22, 29:11
**deigns** [1] - 12:2
**delving** [1] - 12:8
**department** [2] - 29:1
**department-by-department** [1] - 29:1
**deponent** [2] - 24:2, 24:8, 24:18, 24:19
**deponent-by-deponent** [2] - 24:2, 24:19
**deponents** [3] - 10:8, 23:21, 24:8
**depose** [4] - 9:25, 10:19, 15:22, 22:17
**deposing** [1] - 18:20
**deposition** [21] - 7:14, 7:19, 13:2, 14:3, 16:17, 16:19, 17:15, 19:6, 19:13, 19:24, 20:18, 22:24, 23:1, 23:3, 23:5, 23:6, 23:7, 23:9, 23:21, 24:12, 24:14
**depositions** [15] - 5:12, 5:23, 7:16, 8:3, 12:14, 15:2, 15:4, 15:9, 15:10, 16:2, 16:20, 20:24, 21:3, 24:17, 24:20
**described** [2] - 22:11
**describes** [1] - 20:16
**desires** [1] - 11:11
**detail** [1] - 13:23
**determine** [1] - 11:21
**determining** [1] - 20:13
**different** [7] - 4:15, 5:20, 7:18, 12:7, 13:11
**difficulty** [1] - 16:3
**direct** [2] - 17:23, 21:8
**disadvantage** [1] -

26:7
**disagree** [1] - 11:12
**disagreement** [1] - 3:23
**discovery** [1] - 25:11
**discuss** [2] - 3:15, 20:4
**discusses** [3] - 22:3, 22:6, 22:8
**discussing** [2] - 5:20, 20:1
**discussion** [4] - 7:21, 8:2, 11:19, 24:16
**dismissal** [4] - 4:21, 5:18, 6:10, 6:14
**dismissed** [1] - 4:25
**dispute** [2] - 14:8, 15:1
**disrupt** [1] - 14:17
**DISTRICT** [2] - 1:1, 1:1
**document** [6] - 3:16, 26:19, 28:20, 28:22, 28:25, 29:1
**documents** [1] - 28:7
**done** [7] - 4:17, 6:10, 6:11, 9:8, 9:9, 18:24, 24:19
**downstream** [2] - 18:13, 19:7
**downstreamers** [1] - 18:16
**Dr** [6] - 13:16, 14:19, 19:17, 19:25, 20:8, 20:15
**drug** [2] - 22:4, 22:15
**drugs** [3] - 13:10, 13:11, 20:2
**DUANE** [1] - 2:2
**due** [2] - 6:15, 18:2
**duration** [1] - 24:15
**during** [1] - 17:15

## E

**earliest** [1] - 15:4
**economist** [1] - 12:12
**economists'** [1] - 12:14
**effect** [1] - 25:15
**Eisenhower** [1] - 1:14
**elaborate** [1] - 27:1
**eminently** [1] - 21:2
**encourage** [2] - 24:6, 24:7
**end** [6] - 13:16, 14:23, 15:5, 15:13, 20:25, 28:10
**endeavor** [1] - 10:14
**engaged** [1] - 7:21
**enormously** [1] -

14:10
**entire** [1] - 22:6
**entitled** [3] - 18:5, 25:1, 30:2
**ESI** [1] - 28:7
**especially** [1] - 7:5
**ESQUIRE** [7] - 1:14, 1:17, 1:20, 2:3, 2:3, 2:4, 2:8
**essentially** [2] - 8:6, 27:18
**et** [1] - 28:7
**event** [3] - 16:13, 17:20, 28:6
**exactly** [2] - 4:5, 4:22
**examination** [1] - 13:5
**example** [5] - 11:25, 19:17, 22:2, 28:4, 28:10
**exceptions** [1] - 22:25
**Executive** [1] - 26:14
**exhausted** [1] - 13:3
**Exhibit** [5] - 26:4, 26:6, 26:15, 26:17, 26:18
**exhibit** [4] - 8:5, 25:18, 25:20, 27:25
**exhibits** [2] - 26:2, 26:12
**exists** [1] - 11:24
**expand** [1] - 20:19
**expect** [3] - 7:6, 27:8, 27:17
**expectation** [1] - 8:10
**expectations** [1] - 22:3
**expecting** [1] - 27:23
**expert** [7] - 7:17, 11:23, 16:16, 16:24, 19:6, 19:21, 20:8
**experts** [19] - 7:14, 7:18, 8:12, 8:23, 9:6, 11:18, 12:3, 14:2, 14:10, 15:11, 15:19, 15:20, 15:23, 16:6, 16:12, 18:20, 19:2, 19:5, 24:25
**explain** [4] - 11:14, 21:8, 24:11, 26:22
**explanation** [1] - 21:9
**explore** [1] - 9:22
**extend** [2] - 15:12, 15:25
**extent** [2] - 8:2, 8:25
**extra** [1] - 19:3

## F

**face** [1] - 27:20
**fact** [3] - 12:16, 16:11, 24:25

*facts* [6] - 11:18, 11:19, 11:20, 11:21, 12:4, 20:5
*failures* [3] - 11:23, 12:1, 22:15
*fair* [1] - 21:17
*faith* [6] - 7:3, 10:16, 13:5, 14:24, 17:1, 20:22
*falls* [1] - 21:7
*far* [2] - 22:7, 22:22
*fashion* [1] - 5:20
*fast* [1] - 7:4
*FDA* [3] - 19:21, 22:4, 22:8
*February* [3] - 14:20, 15:6, 15:9
*Federal* [1] - 5:1
*feedback* [1] - 6:22
*few* [2] - 6:6, 28:1
*fide* [1] - 14:7
*file* [4] - 5:5, 6:15, 6:19, 24:7
*filed* [3] - 5:17, 7:3, 26:19
*filing* [1] - 6:8
*fine* [3] - 6:25, 17:11
*finish* [2] - 3:18, 5:11
*finished* [1] - 8:22
*first* [5] - 3:19, 3:20, 4:16, 7:7, 8:16
*five* [7] - 4:25, 5:10, 7:8, 12:15, 12:25, 13:2, 17:13
*flabbergasted* [1] - 19:11
*flexible* [1] - 14:21
*follow* [4] - 12:20, 23:20, 29:5
*following* [1] - 13:17
*font* [2] - 3:21, 4:8
*FOR* [1] - 1:1
*foregoing* [1] - 30:1
*formal* [1] - 28:25
*formality* [1] - 6:9
*format* [2] - 6:13, 6:22
*formulation* [1] - 22:16
*forward* [2] - 6:23, 14:24
*four* [15] - 7:20, 8:18, 12:15, 12:25, 13:1, 13:16, 16:22, 17:10, 17:11, 17:13, 17:23, 17:24, 20:18, 20:23, 21:20
*four-hour* [1] - 20:18
*frankly* [8] - 9:5, 12:12, 13:15, 13:23, 14:4, 14:23, 19:11,

20:22
*free* [1] - 27:13
*FREEMAN* [1] - 1:13
*front* [2] - 15:13, 25:9
*full* [3] - 17:9, 19:24, 21:4
*fumbling* [1] - 4:5

## G

*Geddas* [1] - 26:13
*general* [7] - 7:16, 8:9, 8:12, 8:23, 11:6, 15:20, 16:5
*Georgia* [1] - 2:9
*gesture* [1] - 20:21
*GI* [1] - 20:12
*given* [4] - 5:11, 9:14, 14:13, 14:17
*goal* [1] - 6:23
*Goldberg* [1] - 4:14
*GOLDBERG* [3] - 2:3, 4:14, 4:19
*GOLOMB* [1] - 1:16
*good-faith* [3] - 10:16, 13:5, 14:24
*great* [3] - 4:18, 13:22, 29:15
*GREENBERG* [1] - 2:8
*Greenberg* [1] - 8:1
*gross* [1] - 22:21
*ground* [1] - 23:10
*guess* [1] - 3:24
*guessing* [1] - 27:12
*guidance* [2] - 4:3, 27:22
*guidances* [2] - 22:8
*guide* [1] - 9:18

## H

*hand* [1] - 9:10
*handful* [1] - 20:16
*handle* [1] - 21:17
*handled* [3] - 11:15, 26:8, 29:1
*happy* [4] - 6:13, 6:22, 19:3, 26:22
*harassment* [1] - 13:4
*hard* [2] - 7:4, 24:25
*hard-and-fast* [1] - 7:4
*harm* [1] - 4:6
*hate* [2] - 7:5, 14:13
*health* [2] - 12:12, 12:14
*Healthcare* [1] - 2:6
*hear* [2] - 21:23, 26:23
*heard* [3] - 8:16, 10:12, 18:9
*hearing* [2] - 10:6, 24:3

*held* [1] - 3:1
*helpful* [1] - 3:9
*high* [2] - 11:14, 12:7
*highly* [1] - 10:1
*Hilton* [1] - 8:4
*hitting* [1] - 26:1
*hoc* [1] - 15:8
*hold* [6] - 3:17, 25:13, 26:5, 27:3, 27:6, 28:3
*holiday* [3] - 6:20, 29:15, 29:20
*holidays* [2] - 14:12, 29:14
*honest* [1] - 27:10
*Honik* [11] - 10:24, 18:7, 18:22, 18:23, 19:4, 19:11, 19:15, 22:1, 22:11, 23:8, 24:10
*HONIK* [10] - 1:16, 1:17, 10:25, 15:4, 16:9, 18:21, 18:24, 19:14, 19:16, 24:22
*Honor* [32] - 4:11, 4:14, 5:7, 6:2, 7:11, 7:25, 10:25, 11:5, 12:5, 12:13, 13:3, 13:14, 13:21, 16:9, 17:7, 18:2, 18:5, 18:21, 18:25, 19:9, 19:16, 21:25, 24:22, 24:24, 25:23, 26:10, 26:13, 26:23, 27:10, 27:25, 28:3
*Honor's* [2] - 6:5, 22:20
*HONORABLE* [1] - 1:11
*Honorable* [1] - 3:2
*hour* [15] - 12:24, 13:1, 14:5, 14:6, 14:8, 16:19, 17:4, 17:17, 19:5, 19:23, 20:18, 21:1, 21:2, 21:10, 21:15
*hours* [59] - 7:15, 7:19, 7:20, 8:14, 8:17, 8:18, 8:21, 8:22, 9:13, 9:24, 10:3, 10:9, 10:13, 10:15, 10:17, 10:19, 11:9, 11:15, 12:11, 12:15, 12:21, 13:8, 13:15, 13:16, 14:22, 17:4, 17:9, 17:10, 17:24, 18:6, 18:7, 19:1, 19:12, 20:7, 20:21, 21:4, 21:21, 22:18, 23:1, 23:6, 23:7,

23:12, 23:16, 23:18, 23:19, 23:22, 24:1, 24:5, 24:9, 24:11, 24:17, 24:18, 24:21, 25:4
*housekeeping* [1] - 6:9
*Huahai* [1] - 2:6

## I

*IARC* [1] - 22:8
*ideal* [1] - 14:3
*identified* [1] - 23:24
*identifies* [1] - 24:8
*identify* [5] - 3:8, 10:8, 10:14, 23:23, 25:18
*importance* [1] - 8:7
*important* [1] - 13:24
*impose* [1] - 14:9
*IN* [1] - 1:4
*Inc* [2] - 2:10, 2:11
*included* [1] - 8:5
*indicated* [2] - 19:17, 19:25
*indication* [1] - 5:2
*individual* [3] - 9:7, 22:13, 24:25
*individualized* [1] - 9:9
*individuals* [3] - 27:4, 27:7, 27:20
*Industries* [1] - 2:10
*industry* [5] - 20:1, 20:2, 20:3, 20:7, 21:22
*inevitably* [1] - 15:24
*information* [2] - 28:8, 29:6
*insisting* [1] - 23:11
*instance* [3] - 11:4, 11:20, 14:18
*instances* [1] - 9:19
*insurance* [1] - 20:2
*insurmountable* [1] - 16:4
*intend* [3] - 5:22, 8:24, 29:3
*intended* [1] - 14:22
*interests* [2] - 18:19, 24:1
*intervene* [1] - 16:13
*intervention* [1] - 17:17
*involved* [1] - 18:16
*involving* [1] - 22:4
*issuance* [1] - 3:17
*issue* [14] - 3:16, 4:1, 4:9, 4:10, 4:16, 5:25, 6:4, 7:13, 7:22, 8:1, 10:24, 18:25, 19:2,

28:14
*issued* [2] - 25:9, 25:14
*issues* [5] - 4:15, 9:2, 9:9, 18:12, 25:11
*item* [3] - 3:14, 3:18, 3:20
*itself* [3] - 12:17, 22:12, 23:3

## J

*Jang* [3] - 26:3, 26:4
*January* [1] - 15:5
*JERSEY* [1] - 1:1
*Jersey* [2] - 1:9, 1:15
*Jessica* [1] - 26:10
*JESSICA* [1] - 2:3
*Judge* [6] - 7:10, 14:1, 25:6, 29:7, 29:12, 29:18
*JUDGE* [31] - 3:4, 4:12, 4:18, 4:20, 5:25, 6:16, 7:1, 7:12, 10:6, 10:23, 15:2, 18:23, 19:15, 21:24, 22:23, 24:23, 25:2, 25:7, 26:1, 26:15, 26:17, 26:20, 26:25, 27:13, 28:13, 28:17, 28:20, 29:8, 29:11, 29:13, 29:21
*judgments* [1] - 17:8

## K

*KANNER* [1] - 1:19
*Kaplan* [2] - 7:19, 20:15
*KATZ* [1] - 1:13
*knowledge* [2] - 19:21, 20:5

## L

*language* [1] - 21:6
*last* [3] - 23:6, 25:8, 26:19
*Layne* [1] - 8:3
*least* [1] - 10:8
*length* [5] - 7:16, 11:4, 13:7, 23:4, 24:17
*lengthen* [1] - 12:23
*less* [7] - 8:9, 9:13, 10:2, 10:13, 10:17, 11:15, 24:21
*letter* [4] - 3:13, 11:14, 16:24, 20:1
*level* [2] - 11:14, 12:7
*LIABILITY* [1] - 1:4
*limit* [12] - 10:12, 11:9, 12:21, 13:15, 16:20,

19:4, 20:20, 21:3, 21:6, 22:24, 24:20
**limitations** [1] - 13:20
**limited** [5] - 9:13, 10:16, 18:4, 19:12, 21:6
**limiting** [2] - 17:24, 18:8
**limits** [2] - 17:2, 17:8
**lines** [1] - 24:23
**list** [2] - 26:6, 27:16
**LITIGATION** [1] - 1:4
**litigation** [7] - 3:17, 7:9, 16:5, 25:12, 26:5, 27:3, 27:6
**LLC** [4] - 1:13, 1:19, 2:6, 2:10
**LLP** [2] - 2:2, 2:8
**lock** [1] - 17:18
**Lockard** [4] - 7:25, 21:24, 24:13, 25:2
**LOCKARD** [12] - 2:8, 7:25, 10:10, 15:7, 18:5, 18:22, 18:25, 21:25, 24:24, 25:6, 29:12, 29:19
**locked** [1] - 14:20
**look** [9] - 6:14, 8:25, 9:23, 11:8, 14:16, 19:8, 24:25, 27:25, 28:16
**looked** [3] - 10:13, 27:17, 27:18
**looking** [2] - 5:13, 27:22
**looks** [2] - 12:5, 12:6
**lose** [1] - 18:18
**losses** [1] - 20:3
**Louisiana** [1] - 1:21
**Ltd** [2] - 2:6, 2:10

**M**

**magnitude** [1] - 16:7
**majority** [1] - 10:20
**MANAGEMENT** [1] - 1:5
**manufacture's** [1] - 22:14
**manufacturer's** [1] - 9:7
**manufacturers** [3] - 18:14, 18:15, 19:7
**manufacturing** [1] - 22:5
**Market** [1] - 1:17
**Master** [3] - 3:2, 3:15, 25:10
**MASTER** [1] - 1:11
**matter** [12] - 3:20, 6:9, 7:24, 11:25, 12:9,

14:9, 25:14, 27:9, 27:14, 28:2, 29:3, 30:2
**matters** [1] - 12:4
**maximum** [1] - 8:24
**MAZIE** [1] - 1:13
**mean** [7] - 10:2, 16:20, 19:8, 22:9, 22:21, 22:22, 28:10
**mechanical** [1] - 1:24
**medical** [3] - 13:13, 20:8, 20:11, 20:14, 20:16
**mentioned** [1] - 21:20
**merits** [5] - 9:5, 11:19, 12:9, 13:9, 20:9
**mics** [1] - 3:7
**middle** [1] - 19:13
**might** [1] - 13:22
**minimum** [1] - 10:18
**minutes** [6] - 7:18, 13:18, 17:5, 17:16, 19:13
**miracle** [1] - 14:5
**Miss** [1] - 26:3
**missing** [1] - 27:21
**Mister** [1] - 26:3
**Mitchell** [1] - 1:8
**model** [1] - 12:12
**modeling** [1] - 12:7
**monitoring** [3] - 13:13, 20:8, 20:11
**MORRIS** [1] - 2:2
**most** [2] - 12:16, 15:6
**motion** [7] - 3:22, 5:3, 5:5, 9:1, 15:21, 24:7, 24:8
**move** [1] - 4:20
**MR** [23] - 4:11, 4:14, 4:19, 6:2, 6:21, 7:10, 10:25, 15:4, 16:9, 18:21, 18:24, 19:14, 19:16, 24:22, 25:22, 27:10, 27:24, 28:16, 28:18, 29:7, 29:10, 29:18, 29:20
**MS** [18] - 5:7, 6:18, 7:11, 7:25, 10:10, 15:7, 18:5, 18:22, 18:25, 21:25, 24:24, 25:6, 26:10, 26:16, 26:18, 26:22, 29:12, 29:19
**multiple** [1] - 18:19
**mutagenic** [1] - 22:7
**mute** [1] - 3:7

**N**

**Najafi** [8] - 7:20, 12:25, 13:2, 13:8,

17:4, 17:6, 19:17, 23:16
**Najafi's** [1] - 22:2
**named** [1] - 15:19
**names** [3] - 3:9, 26:24, 28:1
**NDEA** [1] - 22:6
**NDMA** [1] - 22:6
**NE** [1] - 2:9
**necessarily** [1] - 9:18
**necessary** [1] - 7:1
**need** [28] - 3:25, 4:9, 9:3, 9:14, 9:20, 9:22, 13:18, 14:6, 14:14, 14:15, 15:10, 15:22, 16:1, 17:5, 17:11, 17:20, 18:13, 19:1, 19:2, 20:14, 21:5, 21:8, 21:10, 22:10, 27:1, 28:5, 28:6
**needs** [2] - 4:16, 21:21
**new** [1] - 29:15
**NEW** [1] - 1:1
**New** [3] - 1:9, 1:15, 1:21
**next** [5] - 4:9, 6:19, 7:7, 7:13, 28:15
**nice** [1] - 29:20
**note** [1] - 10:25
**nothing** [1] - 4:16
**notice** [11] - 6:9, 6:14, 25:15, 26:5, 27:4, 27:6, 27:18, 27:19, 27:20, 28:4, 28:5
**notices** [10] - 3:18, 5:17, 25:13, 25:14, 25:18, 25:20, 26:6, 27:3, 27:18, 28:4
**number** [9] - 9:2, 9:16, 9:23, 13:25, 15:23, 18:12, 19:6, 22:9, 27:19
**Number** [1] - 3:15
**NUMBER** [1] - 1:3

**O**

**objection** [1] - 16:12
**obliged** [1] - 11:7
**observation** [1] - 24:13
**obvious** [1] - 11:17
**obviously** [3] - 8:18, 24:10, 28:3
**occasions** [1] - 27:19
**OF** [1] - 1:1
**offer** [2] - 9:7, 11:18
**offered** [2] - 13:22, 20:21
**offering** [1] - 22:2
**offers** [3] - 13:9,

19:18, 20:9
**Official** [1] - 1:22
**officially** [1] - 5:14
**on-the-record** [2] - 4:24, 5:4
**oncologist** [1] - 20:15
**one** [19] - 3:14, 3:16, 4:23, 12:2, 12:5, 12:6, 13:1, 14:4, 14:19, 14:20, 18:12, 19:18, 20:23, 22:3, 22:7, 22:17, 22:19, 22:22, 28:21
**open** [1] - 5:20
**operating** [2] - 8:6, 29:2
**opines** [1] - 20:3
**opinion** [10] - 13:9, 19:18, 19:19, 20:9, 20:14, 22:3, 22:8, 22:10, 22:17, 22:22
**opinions** [6] - 8:8, 9:7, 9:22, 15:21, 16:24, 22:13
**opportunity** [4] - 18:13, 18:17, 24:10, 28:14
**oppositions** [1] - 5:13
**opted** [1] - 5:16
**order** [11] - 3:12, 4:4, 4:5, 4:7, 4:19, 18:3, 25:9, 28:8, 28:22, 29:9
**Order** [2] - 3:15, 25:10
**Orleans** [1] - 1:21
**otherwise** [1] - 3:24
**ought** [2] - 12:20, 17:18
**ourselves** [1] - 20:23
**over-simplification** [1] - 22:21
**oversight** [1] - 20:6

**P**

**P.C** [1] - 1:16
**p.m** [3] - 1:10, 3:3, 29:22
**page** [4] - 12:25, 13:9, 19:18, 20:16
**pages** [3] - 9:16, 9:24, 11:5
**Panagos** [2] - 7:20, 19:25
**papers** [1] - 18:10
**parameters** [4] - 8:11, 16:2, 24:14, 24:15
**Parkway** [1] - 1:14
**part** [2] - 7:9, 24:4
**participants** [1] - 3:4
**particular** [1] - 23:24

**parties** [2] - 12:22, 17:14
**past** [1] - 16:21
**pays** [1] - 20:2
**Pedano** [2] - 1:22, 30:4
**Peng** [2] - 26:3, 26:4
**Pennsylvania** [2] - 1:18, 2:5
**per** [1] - 24:7
**perfect** [1] - 16:23
**period** [2] - 8:17, 14:23
**permits** [5] - 11:11, 12:22, 13:14, 16:15, 16:18
**permitted** [1] - 13:2
**persons** [1] - 6:6
**Pharma** [1] - 2:11
**Pharmaceutical** [1] - 2:10
**Pharmaceuticals** [3] - 2:5, 2:6, 2:10
**Philadelphia** [2] - 1:18, 2:5
**PI** [1] - 6:10
**Piedmont** [1] - 2:9
**plaintiff** [1] - 8:15
**Plaintiffs** [3] - 1:15, 1:18, 1:21
**plaintiffs** [20] - 5:10, 5:14, 5:16, 5:17, 5:22, 6:1, 6:3, 7:17, 9:6, 9:16, 10:5, 10:7, 10:12, 10:15, 10:21, 25:17, 25:19, 27:5, 29:4, 29:10
**plaintiffs'** [5] - 7:14, 8:13, 9:4, 12:13, 15:21
**plus** [1] - 15:19
**point** [10] - 3:23, 3:24, 4:23, 5:11, 10:11, 14:12, 19:14, 21:12, 28:20, 28:21
**pointing** [1] - 11:17
**policies** [5] - 28:21, 28:23, 28:25
**policy** [1] - 3:16
**positing** [1] - 11:24
**position** [3] - 4:23, 7:23, 13:12
**possibility** [1] - 13:4
**potentially** [2] - 14:14, 21:15
**practical** [2] - 13:25, 14:9
**prefer** [1] - 5:19
**prejudice** [1] - 4:6
**prepared** [3] - 12:12,

15:15, 27:11
**prerogative** [1] - 3:13
**presence** [1] - 11:1
**presentation** [1] - 11:8
**presented** [1] - 11:10
**presently** [1] - 15:6
**preserve** [1] - 28:7
**pretty** [1] - 17:14
**previous** [1] - 5:16
**price** [1] - 20:10
**Prinston** [1] - 2:5
**Priselac** [2] - 26:8, 26:10
**PRISELAC** [5] - 2:3, 26:10, 26:16, 26:18, 26:22
**Procedure** [1] - 5:2
**procedures** [1] - 29:2
**proceed** [6] - 3:12, 3:19, 5:19, 14:25, 24:23
**proceeding** [1] - 8:11
**proceedings** [2] - 29:22, 30:2
**PROCEEDINGS** [1] - 3:1
**Proceedings** [1] - 1:24
**process** [3] - 15:12, 15:25, 22:16
**produced** [2] - 1:25, 28:23
**PRODUCTS** [1] - 1:4
**proposal** [2] - 15:7, 19:10
**propose** [3] - 17:2, 17:24, 20:11
**proposed** [7] - 4:4, 4:5, 4:7, 4:19, 13:15, 20:21
**proposing** [3] - 7:18, 16:9, 20:24
**proposition** [2] - 13:1, 19:22
**propositions** [1] - 12:7
**protocol** [1] - 3:7
**provide** [2] - 9:21, 17:21
**provided** [2] - 6:21, 13:6
**provides** [4] - 8:14, 10:14, 12:21, 12:24
**publicly** [1] - 26:18
**purposes** [1] - 24:16
**pursuant** [2] - 5:1, 29:2
**pursue** [1] - 5:17
**put** [3] - 5:9, 7:4,

20:10

## Q

**questioned** [1] - 22:10
**questioner** [1] - 11:10
**questioning** [1] - 15:16
**questions** [6] - 9:3, 10:4, 11:22, 18:14, 18:17, 23:9
**Quick** [5] - 7:19, 12:20, 14:5, 17:19, 21:4
**quite** [1] - 12:6

## R

**raise** [3] - 18:25, 28:14
**raised** [1] - 10:21
**rarely** [1] - 12:15
**rather** [1] - 16:25
**ray** [1] - 20:12
**RE** [1] - 1:4
**reach** [1] - 7:22, 12:21, 12:24, 14:23
**read** [1] - 16:23
**ready** [2] - 3:5, 15:9
**real** [3] - 6:4, 17:14, 21:9
**really** [9] - 9:21, 12:7, 13:11, 16:7, 17:13, 17:25, 21:18, 28:2, 28:11
**reason** [3] - 13:8, 14:7, 18:8
**reasonable** [8] - 13:6, 14:24, 16:16, 19:10, 21:2, 21:9, 21:10, 21:17
**reasonably** [1] - 20:17
**Rebecca** [1] - 5:7
**REBECCA** [1] - 2:4
**receive** [2] - 26:15, 26:17
**received** [9] - 3:13, 25:14, 25:18, 25:19, 25:20, 26:6, 27:3, 27:16, 28:24
**recognizing** [1] - 22:25
**record** [7] - 4:24, 5:4, 5:14, 6:12, 7:2, 11:23, 30:2
**recorded** [1] - 1:24
**reduction** [1] - 3:25
**referenced** [1] - 9:16
**references** [1] - 22:9
**regimen** [1] - 20:10
**regulations** [1] - 19:22
**relate** [1] - 22:13

**rely** [1] - 22:13
**relying** [1] - 9:11
**remaining** [1] - 17:23
**REMOTE** [1] - 1:6
**remote** [1] - 3:1
**repetitive** [1] - 23:9
**reply** [1] - 3:21
**report** [9] - 9:24, 12:25, 13:9, 19:18, 19:25, 20:6, 20:16, 22:2, 22:12
**Reporter** [1] - 1:22
**reporter** [1] - 3:10
**Reporter/ Transcriber** [1] - 30:4
**reports** [11] - 9:1, 9:17, 9:19, 9:20, 12:5, 12:6, 13:5, 16:24, 19:8, 22:1, 22:20
**representation** [1] - 6:19
**representative** [1] - 5:12
**representatives** [9] - 4:21, 4:25, 5:10, 5:15, 5:22, 6:6, 6:8, 6:24, 7:8
**represented** [1] - 28:22
**request** [2] - 13:20, 16:14
**requesting** [1] - 5:21
**require** [10] - 3:24, 10:9, 10:20, 17:17, 18:1, 23:17, 23:25, 24:5, 24:9, 25:3
**required** [1] - 25:11
**requires** [1] - 19:23
**requiring** [1] - 24:6
**reserved** [1] - 20:15
**respect** [8] - 4:10, 7:23, 12:19, 22:4, 25:18, 27:2, 27:8, 29:3
**respectfully** [3] - 12:19, 13:20, 17:18
**respects** [1] - 3:16
**respond** [2] - 10:5, 24:10
**restrictively** [1] - 18:9
**Ret** [1] - 3:2
**RET** [1] - 1:11
**retention** [5] - 3:16, 28:21, 28:23, 28:25, 29:1
**review** [2] - 22:21, 25:13
**RMR** [1] - 30:4

**Road** [1] - 2:9
**Ron** [1] - 22:2
**Roseland** [1] - 1:15
**RPR** [1] - 30:4
**Ruben** [1] - 17:5
**RUBEN** [1] - 1:17
**Rule** [12] - 5:1, 5:3, 5:17, 11:7, 11:9, 12:8, 12:17, 13:19, 14:21, 16:15, 18:4, 20:20
**rule** [15] - 8:14, 10:14, 11:11, 12:20, 12:22, 12:23, 13:14, 14:21, 16:17, 17:14, 20:22, 21:5, 21:6, 23:18, 23:20
**rules** [4] - 3:24, 3:25, 22:24, 23:2
**Rules** [1] - 5:1
**run** [1] - 21:12

## S

**satisfactory** [1] - 6:17
**scheduled** [1] - 15:2
**schedules** [1] - 14:10
**scheduling** [1] - 8:3
**screen** [1] - 3:9
**screening** [2] - 20:10, 20:17
**seal** [1] - 25:16
**season** [1] - 29:15
**second** [7] - 14:15, 16:10, 18:23, 21:13, 21:14, 21:15
**section** [1] - 22:6
**see** [6] - 3:9, 10:4, 10:15, 15:8, 23:14, 29:15
**seeing** [2] - 25:25, 28:3
**send** [1] - 17:11
**sent** [6] - 26:12, 27:4, 27:6, 27:7, 27:19, 27:25
**separately** [1] - 26:5
**session** [1] - 3:5
**set** [5] - 8:5, 8:11, 13:21, 22:24, 23:2
**SETH** [1] - 2:3
**Seth** [3] - 4:14, 14:6, 20:25
**setting** [1] - 12:14
**seven** [53] - 4:24, 5:3, 5:5, 5:22, 7:19, 8:14, 8:22, 9:13, 10:3, 10:9, 10:13, 10:15, 10:17, 10:19, 11:9, 11:15, 12:11, 12:21, 12:25, 13:9, 14:6,

15:19, 16:19, 16:21, 17:9, 17:19, 18:5, 19:1, 19:18, 20:16, 21:4, 21:5, 21:6, 21:8, 21:15, 21:21, 23:1, 23:6, 23:7, 23:12, 23:16, 23:17, 23:19, 23:22, 23:25, 24:5, 24:9, 24:11, 24:17, 24:21, 25:1, 25:3
**seven-hour** [2] - 16:19, 21:15
**seven-page** [4] - 12:25, 13:9, 19:18, 20:16
**several** [4] - 8:22, 9:6, 18:15, 27:19
**shared** [1] - 25:16
**shooting** [1] - 27:22
**short** [2] - 12:6, 18:3
**shorten** [2] - 8:17, 12:23
**shortened** [1] - 21:20
**shortening** [1] - 20:24
**shorter** [1] - 9:21
**shot** [1] - 14:4
**show** [3] - 18:6, 18:9, 19:2
**showing** [9] - 10:16, 16:18, 18:11, 18:21, 19:3, 19:16, 20:18, 20:20, 25:4
**side** [8] - 6:10, 6:11, 7:4, 8:6, 8:9, 13:13, 18:19, 29:11
**sight** [1] - 18:18
**significance** [3] - 8:8, 16:8, 19:5
**significant** [2] - 9:2, 12:2
**simple** [3] - 22:7, 22:10, 22:17
**simplification** [1] - 22:21
**simplify** [1] - 22:1
**simply** [8] - 11:25, 13:10, 14:2, 19:22, 20:6, 20:9, 20:16, 20:21
**size** [2] - 3:21, 4:8
**skeletal** [2] - 9:19, 22:12
**slated** [1] - 15:5
**Slater** [5] - 4:10, 25:21, 25:22, 26:13, 27:9
**SLATER** [12] - 1:13, 1:14, 4:11, 25:22, 27:10, 27:24, 28:16,

28:18, 29:7, 29:10, 29:18, 29:20
**Solco** [1] - 2:6
**somewhat** [1] - 22:12
**Song** [1] - 7:20
**song** [2] - 13:16, 20:8
**soon** [1] - 6:15
**sophisticated** [1] - 10:1
**sorry** [1] - 18:22
**sort** [1] - 23:4
**sought** [1] - 4:3
**South** [1] - 2:4
**speaking** [5] - 3:8, 3:10, 4:12, 11:1, 19:19
**SPECIAL** [1] - 1:11
**Special** [3] - 3:2, 3:15, 25:10
**specific** [4] - 11:10, 16:15, 20:5, 27:7
**specifically** [1] - 21:21
**spelling** [1] - 26:24
**spellings** [1] - 28:1
**spending** [1] - 23:14
**spent** [1] - 11:12
**standard** [2] - 10:15, 29:2
**STANOCH** [4] - 1:20, 6:2, 6:21, 7:10
**Stanoch** [3] - 6:3, 6:21, 7:2
**start** [4] - 3:11, 11:3, 11:17, 28:6
**started** [1] - 3:6
**statement** [1] - 4:23
**statements** [1] - 22:8
**states** [1] - 19:22
**STATES** [1] - 1:1
**stating** [3] - 4:1, 11:25, 13:10
**stenography** [1] - 1:24
**stipulation** [2] - 6:9, 6:14
**stop** [3] - 10:4, 13:2, 19:24
**straight** [1] - 14:4
**Street** [3] - 1:17, 1:20, 2:4
**Streets** [1] - 1:8
**strict** [1] - 11:8
**strikes** [1] - 21:2
**submission** [5] - 5:9, 8:5, 8:15, 9:4, 25:11
**submit** [3] - 4:7, 4:19, 16:24
**submitted** [5] - 4:4, 25:13, 25:16, 26:4, 27:15

**subset** [1] - 12:22
**substance** [1] - 22:4
**sufficient** [2] - 8:19, 24:11
**suggest** [4] - 10:2, 12:17, 17:10, 19:12
**suggested** [3] - 14:23, 18:7, 19:4
**suggesting** [1] - 16:13
**suggests** [2] - 11:24, 18:10
**Suite** [2] - 1:17, 2:9
**supportive** [1] - 15:21
**suppose** [2] - 3:14, 7:22
**supposed** [2] - 22:14
**susceptible** [3] - 11:21, 12:1, 12:4
**suspend** [3] - 16:17, 23:8, 23:13

## T

**tags** [1] - 20:10
**talks** [3] - 11:23, 20:9, 21:22
**teaching** [1] - 14:11
**team** [1] - 4:13
**techniques** [1] - 20:17
**ten** [3] - 7:15, 8:21, 24:18
**terms** [2] - 18:19, 27:23
**Teva** [2] - 2:10, 2:10
**THE** [2] - 1:1, 1:11
**theirs** [1] - 16:6
**themselves** [2] - 12:9, 19:9
**they've** [1] - 25:17
**thinks** [1] - 18:7
**third** [1] - 6:24
**Thomas** [1] - 3:2
**THOMAS** [1] - 1:11
**three** [7] - 11:14, 12:24, 13:1, 16:21, 17:9, 21:14, 23:16
**timeframe** [2] - 20:25, 23:2
**today** [5] - 4:13, 13:21, 18:10, 24:16, 25:8
**today's** [1] - 3:11
**top** [1] - 18:14
**towards** [1] - 6:23
**TPP** [3] - 20:1, 20:7, 21:22
**transcript** [2] - 1:24, 30:1
**transcription** [1] - 1:25
**Traurig** [1] - 8:1

**TRAURIG** [1] - 2:8
**treatment** [2] - 12:1, 20:4
**triggered** [2] - 28:5, 28:6
**true** [4] - 9:6, 11:6, 25:2
**truly** [1] - 26:24
**truth** [3] - 11:19, 11:24, 12:4
**try** [2] - 10:12, 19:4
**trying** [5] - 5:11, 7:21, 8:17, 21:3, 21:13
**tune** [2] - 17:11, 17:12
**two** [26] - 3:15, 7:20, 8:17, 13:8, 13:25, 14:2, 14:6, 14:8, 15:20, 17:4, 17:9, 17:10, 17:11, 17:20, 17:24, 17:25, 18:7, 19:5, 19:12, 19:23, 20:7, 22:18, 23:16, 26:2
**two-hour** [2] - 19:5, 19:23
**typographical** [1] - 26:24

## U

**U.S** [2] - 1:8, 2:6
**uncontaminated** [2] - 13:11, 19:20
**under** [9] - 8:11, 11:7, 12:8, 12:24, 18:4, 19:20, 20:20, 23:13, 25:16
**understood** [2] - 24:24, 28:13
**unduly** [1] - 14:10
**UNITED** [1] - 1:1
**unless** [1] - 11:9
**unlikely** [3] - 16:11, 17:20, 17:22
**unnecessary** [1] - 21:19
**unprepared** [1] - 13:21
**unreasonable** [2] - 8:18, 10:3
**unreasonably** [1] - 17:16
**up** [6] - 5:23, 23:19, 23:22, 27:11, 29:5
**upper** [2] - 20:12
**USA** [2] - 2:10

## V

**VALSARTAN** [1] - 1:4
**valsartan** [2] - 19:20

**Vanaskie** [1] - 3:2
**VANASKIE** [32] - 1:11, 3:4, 4:12, 4:18, 4:20, 5:25, 6:16, 7:1, 7:12, 10:6, 10:23, 15:2, 18:23, 19:15, 21:24, 22:23, 24:23, 25:2, 25:7, 26:1, 26:15, 26:17, 26:20, 26:25, 27:13, 28:13, 28:17, 28:20, 29:8, 29:11, 29:13, 29:21
**venture** [1] - 19:8
**versus** [2] - 23:16
**via** [1] - 3:1
**VIA** [1] - 1:6
**VICTORIA** [1] - 2:8
**Victoria** [6] - 7:25, 11:4, 14:6, 17:4, 17:12, 21:21
**Victoria's** [1] - 21:12
**VIDEOCONFERENCE** [1] - 1:6
**videoconference** [1] - 3:1
**violation** [1] - 22:3
**violations** [2] - 9:8, 22:14
**voluntarily** [1] - 5:18

## W

**wait** [2] - 15:8, 18:23
**wait-and-see** [1] - 15:8
**waiting** [1] - 3:4
**walk** [1] - 9:12
**wants** [1] - 21:21
**week** [1] - 6:19
**weighing** [1] - 12:3
**well-intended** [1] - 14:22
**whereas** [1] - 8:20
**WHITELEY** [1] - 1:19
**wide** [4] - 11:22, 12:1, 20:4, 20:13
**wisely** [1] - 22:24
**wish** [1] - 29:14
**withdraw** [1] - 5:22
**withdrawing** [1] - 6:5
**withdrawn** [5] - 4:21, 5:10, 5:14, 6:8, 7:8
**withhold** [1] - 17:16
**witnesses** [5] - 7:17, 8:7, 9:10, 9:20, 9:25, 11:15, 13:7, 16:4, 17:23, 21:14, 21:15, 23:25, 24:4
**words** [1] - 11:22
**world** [1] - 16:23
**wrapping** [1] - 5:23

**wrote** [4] - 12:25, 19:18, 19:25, 20:15

## X

**X-ray** [1] - 20:12

## Y

**year** [4] - 7:6, 7:8, 26:19, 29:16
**yesterday** [2] - 8:16, 10:12
**yourself** [1] - 3:8

## Z

**Zhejiang** [1] - 2:6
**ZHP** [1] - 27:20
**ZOOM** [1] - 1:6
**Zoom** [2] - 3:1, 3:5