**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

```
 1
 2
 3  _____
 4  IN RE:  VALSARTAN PRODUCTS        CIVIL ACTION NUMBER:
    LIABILITY LITIGATION,
 5                                    19-md-02875-RBK
 6  _____          TELEPHONIC STATUS
                                      CONFERENCE
 7
 8      Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
 9      Camden, New Jersey  08101
        December 1, 2021
10      Commencing at 3:00 p.m.

11  B E F O R E:            THE HONORABLE THOMAS I. VANASKIE
                            (RET.), SPECIAL MASTER
12
                            THE HONORABLE ROBERT B. KUGLER
13                          UNITED STATES DISTRICT JUDGE

14  A P P E A R A N C E S:

15      MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
16      103 Eisenhower Parkway
        Roseland, New Jersey  07069
17      For the Plaintiffs

18      KANNER & WHITELEY, LLC
        BY:  DAVID JOHN STANOCH, ESQUIRE
19      701 Camp Street
        New Orleans, LA 70130
20      For the Plaintiffs

21

22

23          Megan McKay-Soule, Official Court Reporter
                    megansoule430@gmail.com
24                     (215) 779-6437

25  Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription.
```

*United States District Court*
*District of New Jersey*

```
 1   A P P E A R A N C E S (Continued):

 2        DUANE MORRIS LLP
          BY:  SETH A. GOLDBERG, ESQUIRE
 3             JESSICA PRISELAC, ESQUIRE
          30 South 17th Street
 4        Philadelphia, Pennsylvania  19103
          For the Defendants, Prinston Pharmaceuticals, Solco
 5        Healthcare U.S. LLC, and Zhejiang Huahai Pharmaceuticals
          Ltd.
 6
          GREENBERG TRAURIG LLP
 7        BY:  STEVEN M. HARKINS, ESQUIRE
               VICTORIA DAVIS LOCKARD, ESQUIRE
 8        3333 Piedmont Road, NE, Suite 2500
          Atlanta, Georgia  30305
 9        For the Defendants, Teva Pharmaceutical Industires, Ltd.,
          Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis
10        Pharma, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (PROCEEDINGS held via teleconference before The Honorable

2   Thomas I. Vanaskie (Ret.), Special Master, on December 1, 2021

3   at 3:00 p.m.)

4        JUDGE VANASKIE:  First, I want to apologize to

5   everyone that I had to reschedule this call from last week.  I

6   had an uncontrollable nosebleed.  It was very perplexing and

7   not serious.  As the doctor said, nobody ever dies from a

8   nosebleed, but it's hard to do something when you've got blood

9   streaming out of your nose.  It took all day for them to get

10  it to stop.  I'm glad you are all able to accommodate that

11  last minute request, and we'll proceed now with the call that

12  we would have had, maybe a little bit more educated because of

13  the status reports that I've received.

14       Who do we have on the line for the plaintiffs?

15       MR. SLATER:  Hello, Judge.  Adam Slater.  I'm glad to

16  hear you're feeling better.

17       JUDGE VANASKIE:  It wasn't serious, but unfortunately

18  I couldn't conduct it, and I certainly wasn't going to try to

19  do it.  My bride was saying, why don't you just do it from the

20  emergency room?  I said, no, I'm not conducting the call from

21  here.

22       Who do we have on for the defense?

23       MR. GOLDBERG:  Good afternoon, Judge.  This is Seth

24  Goldberg, and I'm sure there are a bunch of other defense

25  counsel on the line.

1    JUDGE VANASKIE:  I'm sure there are, and as is our

2    procedure here, if you're speaking, great.  If you're not

3    speaking, please mute your phone or other device you're using

4    to join in this conference.  We'll go through the agenda

5    letters that were sent to me last week as supplemented by some

6    letters that came in after the original submissions, the

7    initial submissions.

8    We'll start with the plaintiffs' letter.  The first

9    item on the letter deals with the deposition of Mr. Chen.

10   Now, as I understand from what I have read in the letters,

11   permission for Mr. Chen to travel to have his deposition taken

12   has been denied, and that denial appears to be definitive.  Is

13   my understanding correct, Mr. Goldberg?

14   MR. GOLDBERG:  It is, Your Honor, that's right.

15   After attempting to get more information and possibly get that

16   denial, I guess, modified in some way as the ZHP did receive

17   confirmation that the denial is definitive.

18   JUDGE VANASKIE:  All right.  Mr. Slater, what is your

19   position with respect to this matter?

20   MR. SLATER:  My position -- our position as

21   plaintiffs is that there's a court order that this -- that the

22   Chairman of ZHP was supposed to appear for a deposition.

23   We're now told that he's not going to appear, so there would

24   need to be probably a sanction evaluated as to what would be

25   the appropriate sanction for failure to appear for this

1    deposition.  That's our take.  And I will say one other thing,

2    Judge, which I think should color the Court's consideration of

3    what we do going forward here.  In looking at defendant's

4    letter, apparently the Chinese government denied this travel

5    permit first on October 27, 2021, which was the day of that

6    conference that month for us.  We had the CMC the same day.

7    So it's very, very confusing to us why the plaintiff and the

8    Court were not advised at least by the next day that this had

9    happened because at that conference we asked for an update and

10   we were told we know nothing, we have no further information.

11   We'll let the Court know and the plaintiffs know when we do.

12       Then our next case management conference was November

13   10, and even as of then we were still not informed and defense

14   counsel still said -- and I'm quoting from pages 10 and 11 of

15   the transcript of November 10 -- no updates.  That they would

16   tell us when they get more information.  That's a paraphrase.

17   And so that was November 10.

18       On November 11, China apparently then said for the

19   second time we're not going to get the permit.  We still

20   weren't advised about that until we finally got the agenda

21   letters for this conference.

22       So that, I think, should color the Court's

23   consideration because I think everybody's understanding from

24   what was discussed -- and that's the reason why we kept asking

25   for updates because we wanted to know as soon as possible.  So

1   now another month has gone by, or more, from the time we

2   should have known this.  So I'm presuming that the defense is

3   going to say they want to move for a protective order.  I

4   think the time has passed for that.  I don't think there's a

5   basis to even permit such a motion and that at this point the

6   plaintiffs should be permitted to file a motion for

7   appropriate sanctions based on the failure or refusal of the

8   chairman of the company to appear for his ordered deposition.

9          JUDGE VANASKIE:  Do you want to respond, Mr.

10  Goldberg?

11         MR. GOLDBERG:  Yes, Your Honor.  I don't think Mr.

12  Slater has the sequence of events correct, but I'm going off

13  of memory.  But I do believe that both on October 27th and in

14  the mid November conference we did inform the Court that the

15  Chinese government had verbally denied Mr. Chen's permit.

16  What we said was that ZHP was, nonetheless, trying to obtain

17  either some modification to that, if not the recision of that

18  denial.  And I believe that we had been keeping the Court

19  abreast of this situation throughout, including in those two

20  conferences.

21         Mr. Chen has done what he could do to try to attend

22  this deposition.  You know, this is really outside of his

23  control or the control of the ZHP parties.  And as we set

24  forth in the letter, this is really a reflection of forces

25  that are much larger than what's at issue in this litigation.

1    The Chinese government has issued its determination that Mr.

2    Chen is not permitted to travel for his deposition.  And

3    that's it.  And plaintiffs, you know, I think are ignoring one

4    obvious fact here, which is this is something that is really,

5    in a way, an issue that they could have prevented had they

6    pursued the Hague protocols and permission to take Mr. Chen's

7    deposition in China, which they have not done.  They've never

8    attempted to do.  But if they wanted to attempt to do that,

9    they could right now.  They could follow that Hague process

10    and obtain permission for the deposition in China.

11        So, you know, the question of ascension or a protective

12    order, I don't know where we are on that.  But, you know, the

13    deposition was ordered to be taken by December 15th.  Mr. Chen

14    can't travel for the deposition.  Plaintiffs have done nothing

15    to take the deposition in China.  It seems that that may be

16    their issue.

17        JUDGE VANASKIE:  All right.  Anything else on this

18    issue, Mr. Slater?

19        MR. SLATER:  Just to say that I don't think that

20    there's any validity to that argument.  We have a court order

21    to take a deposition of a very important witness, and we have

22    the right to take that deposition under the rules that govern

23    this case.  And whatever issues there may be in China or with

24    their government, that should never be a basis on which to

25    shield this company from legitimate discovery in this lawsuit

1    where we're presenting the United States plaintiffs that were

2    harmed by the conduct of this company, and that court order is

3    what it is.  It stands and I think that we should be able to

4    now move for sanctions and be able to then move forward from

5    this issue.

6              JUDGE VANASKIE:  I do believe that you should be able

7    to move for sanctions.  I'm not sure sanctions are necessarily

8    warranted.  I'm not indicating that at all.  But you do have a

9    court order.  You've been told unequivocally that the

10   deposition will not occur by December 15th and will not occur

11   at all, at least as we presently stand.  And under those

12   circumstances, I think you certainly can pursue such a motion

13   and will have to address it.  It's a fascinating issue, and I

14   look forward to seeing what kind of guidance you can provide

15   on this particular matter.

16             MR. GOLDBERG:  Your Honor, I just want to correct the

17   record on something that you just said because I do want it to

18   be clear.  Because Your Honor said that it was unequivocal

19   that the deposition cannot go forward, and I don't think that

20   that is, you know, a fair statement.

21             JUDGE VANASKIE:  Okay.  I think it's a fair -- go

22   ahead, Mr. Goldberg.  I interrupted you, and I apologize.  Go

23   ahead.

24             MR. GOLDBERG:  I was just going to say the Court

25   ordered the deposition to be taken by December 15th, and the

1  only issue right now is that Mr. Chen has been prohibited from

2  traveling for the deposition, but that does not mean that had

3  the Hague protocols been followed, the deposition couldn't

4  have been taken by December 15th.  And plaintiffs have always

5  had that opportunity.  This case has been on for three years.

6  They've always known they were going to be taking the

7  depositions of Chinese citizens.  The issue of Mr. Chen's

8  deposition has been on the table for the better part of a

9  year, and they haven't sought to commence the Hague protocols.

10 The Hague protocols are incorporated into U.S. law and are

11 explicitly discussed in the Federal Rules of Civil Procedure.

12 So to say this is somehow shielding Mr. Chen's deposition is

13 really unfair.  It's a mischaracterization, and it's an

14 attempt by plaintiffs to really cast the blame on ZHP for

15 their own failure to follow the protocols.

16         JUDGE VANASKIE:  Mr. Slater?

17         MR. SLATER:  I don't think that merits any response,

18 Your Honor.  I'll wait until we brief things and move forward

19 with this issue.  Thank you.

20         JUDGE VANASKIE:  What I was trying to indicate -- and

21 you were right to correct me, Mr. Goldberg -- that what is

22 unequivocal is that permission to take his deposition is not

23 going to be granted.  That appears to be.  That's why I asked

24 before whether or not the position of the Chinese government

25 was definitive on this issue, and you confirmed that it is

1    definitive.  And, yes, there is this other matter, other route

2    of a -- the route under the Hague convention, and that might

3    preclude imposition of sanctions.  I'm not saying it doesn't.

4    What I was trying to indicate is that there's no need to wait

5    until December 15th to file the motion for sanctions.  We've

6    been told that he won't be able to travel outside China for

7    the purpose of his deposition being taken.  At the time that

8    the order was issued to have his deposition taken by December

9    15th, it was anticipated that he would be deposed, as have

10   other ZHP witnesses been deposed by traveling to Macau or Hong

11   Kong, and that's not going to happen.

12           So all I'm trying to indicate is that the matter is

13   ripe for submissions to the Court.  It may be, as you

14   indicate, Mr. Goldberg, that sanctions cannot be ordered,

15   should not be ordered, would be inappropriate because

16   plaintiffs took the Hague convention route.  That will have to

17   await presentation in the motion papers and the response

18   papers.  So all I'm saying right now is that the plaintiffs

19   may move for sanctions and all positions have been preserved.

20           I think that about covers the question of Mr. Chen's

21   deposition, and so we can move to the next item on the agenda

22   letter which deals with special master order number 54.  And I

23   received today or yesterday, I believe it was, an updated

24   status report with respect to testing information, testing

25   data.  But who is going to address this issue for plaintiffs?

1 Where do things stand with respect to compliance with special

2 master order 54? From the plaintiffs' perspective.

3      MR. SLATER: Thank you, Your Honor. It's Adam Slater

4 again. Your Honor obviously entered that order, and there are

5 several numbered provisions at the end of it. And I'll just

6 kind of walk through those because I think that's the most

7 orderly way I can present a status.

8      So point one in your order on page 9 of the filing,

9 which is document 1753, provided a deadline of November 22 for

10 an affidavit to be provided regarding litigation hold notices

11 and document preservation. ZHP has asked for extensions to

12 December 1 and into December 8. We consented to both

13 extensions so the current deadline for that production is

14 December 8, 2021.

15      Item number two in the order was to produce the Maggie

16 Kong, K-O-N-G, file. And number three was a direction to

17 produce another document -- actually, several documents -- all

18 by November 22. None of those documents were produced. So at

19 this point, ZHP is in violation of the order as to those

20 matters. Our understanding from our communications with ZHP

21 and their submission to the Court is that they are not able to

22 produce documents to us because a new data security law passed

23 in China precludes them from doing so. And I'll say

24 parenthetically I think I -- that we stated in our letter that

25 the data security law in China was not in effect until

1  November 1st.  That was information I had been provided.  And

2  then afterwards what we were informed by ZHP, and then we

3  double-checked, is that parts of the law went into effect

4  September 1 and parts of the law went into effect apparently

5  November 1.  So the law went into effect September 1.  It

6  doesn't really change anything other than the fact that the

7  documents are not being provided to us either way.  And that

8  would be, again, another violation of another of your order.

9       The other points in that order, point number five has

10  to do with the testing information.  And if there's any

11  detailed discussion, Mr. Williamson, George Williamson from

12  our side will address it.  I can just tell you in general that

13  ZHP approached us and suggested a spreadsheet of data and we

14  made it very clear that if they want to provide that in the

15  interim before they get permission from the government of

16  China to release the actual documents, then we'll certainly

17  accept that spreadsheet.  But we're certainly not agreeing to

18  that in lieu of the documents because, as Your Honor well

19  knows from all of the submissions, our greatest interest is

20  actually seeing the actual documents, chromatograms, et

21  cetera.  But if ZHP wants to provide interim information, we

22  certainly are willing to look at it, but we're not agreeing to

23  not get the documents.

24       The last part of the order is the section having to do

25  with the -- well, it's really the same issue.  December 7

1  deadline for ZHP to provide a burden affidavit and a showing

2  of burden.  I'm not sure that if there really is a burden

3  argument anymore.  Our understanding from the meet and confers

4  was that the main issues was this law.  And we tried that and

5  we had a fairly positive conversation in the sense that we

6  talked through what the issues were on both sides.  I'm not

7  sure that we're going to agree on this, but I'm not sure what

8  ZHP's intention is with getting that brief filed by December 7

9  by that deadline.

10      But from the best of my understanding, that's the

11  status of the special master order 54 issues.  And certainly

12  if somebody wants to supplement what I said on the plaintiffs'

13  side, I certainly invite that.

14      JUDGE VANASKIE:  I'm pausing just to see if anybody

15  else on the plaintiffs' side would like to chime in.

16      Okay.  Do you want to respond, Mr. Goldberg, or who

17  will be addressing this issue on behalf of the defense?

18      MS. PRISELAC:  Your Honor, this is Jessica Priselac

19  of Duane Morris for the ZHP parties.

20      JUDGE VANASKIE:  Okay.

21      MS. PRISELAC:  Thank you, Your Honor.  With respect

22  to Your Honor's order with respect to the declaration, we do

23  have those in process, and Mr. Slater is correct.  The

24  plaintiffs graciously agreed to extend that deadline for us,

25  and we appreciate that.

1     In terms of the status report we submitted to Your

2  Honor last night, our client is currently considering whether

3  they can prepare such a spreadsheet under the security law

4  that went into effect.  But as Mr. Slater said, we understand

5  that they still want all of the underlying documents.  Our

6  hope in proposing that spreadsheet given the data security law

7  and potentially the ban on exporting documents from China at

8  this time is that that would be an interim measure to try to

9  see if we could, you know, provide them with some type of

10  information until this data security law and the relevant

11  provisions for getting permission to produce documents from

12  China are more clear and in focus.

13     So the issue that we're facing at this point, Your

14  Honor, is that we did have a meet and confer with plaintiffs

15  where we requested that they hold the deadlines for the

16  production in abeyance until such time that we could get

17  permission from the Chinese government to export certain

18  documents.  They were not amenable to that.  So,

19  unfortunately, at this point in time, Your Honor, given the,

20  you know, relatively recent enactment of the data security law

21  in September, if we cannot hold those production deadlines in

22  abeyance until our client gets permission from the Chinese

23  government to produce documents, we'll have to move for a

24  protective order -- not to never produce the documents but to

25  hold the deadlines in abeyance until we get permission to

1    produce them.

2         JUDGE VANASKIE:  Let me ask a question because I'm a

3    little confused.  Are you saying absent an agreement on the

4    part of plaintiffs to accept a spreadsheet of information that

5    nothing will be done, that you'll move for a protective order,

6    or can the spreadsheet be produced as an interim solution?

7         MS. PRISELAC:  Just to clarify that, Your Honor, our

8    client is still trying to determine whether they can produce

9    that spreadsheet even under the new law.  They're working on

10   doing that now at the moment.

11        JUDGE VANASKIE:  All right.  Do you want to be heard

12   any more on this issue, Mr. Slater?

13        MR. SLATER:  Your Honor, just to say that obviously

14   anybody who's on this call and who's involved in this case now

15   realizes that we're in an interesting situation, and I just --

16   I think that it's important for us to say to the Court, you

17   know, our issue is we understand that if ZHP can't do

18   something, they can't do it.  If they're in a country that

19   won't let them do it, you know, that's an issue that can be

20   documented and that's what this law currently says.  But

21   obviously, from our perspective, the government of China can't

22   interfere and block our ability to proceed in an orderly way

23   pursuant to court orders in a United States federal court

24   proceeding, and that may be somewhat of the issue that's going

25   to come before the Court.  But obviously we feel very strongly

1    that we should be able to proceed under the rules of these

2    courts.  These companies sold these products in the United

3    States.  Reaped massive profit.  Took advantage of the laws of

4    the United States.  And now, for whatever reason, the Chinese

5    government is interfering with our ability to proceed with the

6    case.  So I think it's an interesting issue and we look

7    forward to putting it on your plate.

8         JUDGE VANASKIE:  Okay.  Let me ask a question of Ms.

9    Priselac.  On this spreadsheet issue, can ZHP agree to -- if

10   ZHP gets authorization to do so under the Chinese data

11   security law, will ZHP agree to provide that ZHP while

12   plaintiffs preserve their position that they want the

13   underlying documents?

14        MS. PRISELAC:  So, Your Honor, our -- right now we

15   have been strictly focused on whether this spreadsheet could

16   be produced as an interim measure under Chinese law.  So we

17   haven't really got -- because of the complete ban on the

18   export of the large documents at this point, and knowing that

19   that, you know, is not going to happen any time in the near

20   future, we've been focused on the spreadsheet.  So I don't

21   know -- I understand that plaintiffs reserve their right to

22   still move for the underlying documents if they do receive the

23   spreadsheet.  I'm hoping that the spreadsheet, per Your

24   Honor's order, would hopefully lead to a meet and confer

25   process whereby the plaintiffs and the ZHP parties could

1    potentially meet and confer over a subset of the testing

2    records being produced after they look at the actual

3    spreadsheet and the testing data.  Because I would imagine

4    that they don't need every single test after they review that

5    spreadsheet, and would hopefully only want some subset, which

6    I think would be much more amenable to given how many hard

7    copy documents, our testing data that underlie that

8    spreadsheet.  So that's a long way of saying I understand the

9    plaintiffs' position, but our goal would be that if the

10   spreadsheet provides some more data, perhaps then their

11   request for the underlying data would be more narrow and

12   tailored rather than quite broad-brushed as it is currently.

13            JUDGE VANASKIE:  All right.  Thank you for that.

14   That's very helpful in understanding that -- as I understand

15   it, that the spreadsheet could be produced and each side is

16   preserving their respective positions with respect to the

17   production of the underlying documents.  In other words,

18   certainly ZHP is not agreeing to produce the underlying

19   documents, even if they can, because I think that's when we

20   get into the burden issue that you had raised previously.  And

21   at the same time, plaintiffs are not foreclosed from seeking

22   the underlying documents by agreeing to accept as an interim

23   solution this spreadsheet if it can be produced.  And that

24   brings me to the next question and that is, do you have sense,

25   Ms. Priselac, of how long it will take to determine whether

1    the spreadsheet can be produced?

2         MS. PRISELAC:  Sure.  Your Honor, we are hoping to

3    have more information about whether this spreadsheet can be

4    produced by early next week.

5         JUDGE VANASKIE:  Okay.  That's good.  That's

6    encouraging.

7         Anything else on this issue, Mr. Slater?

8         MR. SLATER:  Nothing, Your Honor.  Thank you.

9         JUDGE VANASKIE:  All right.  Is there anything else

10   on special master order 54?

11        MS. PRISELAC:  I'm sorry.  Your Honor, I just wanted

12   to get a point of clarification from Your Honor probably from

13   a procedural standpoint.  You know, given that we haven't been

14   able to come to an agreement with plaintiffs about holding

15   these deadlines in abeyance for the actual production of

16   documents from China, you know, our intention would be then to

17   move for a protective order to hold those deadlines in

18   abeyance, and we just wanted to confirm with Your Honor

19   whether from a procedural standpoint Your Honor would

20   entertain that type of motion.

21        JUDGE VANASKIE:  Well, I certainly would entertain

22   that type of motion.  I think it is appropriate, and I'd love

23   to be able to avoid motion practice on your part and a

24   decision on my part by you all reaching some agreement on

25   this.  But absent that, I think the only way to present it is

 1    by way of a motion.  So I would encourage that you confer.

 2    But if you cannot reach agreement on deferring or extending

 3    the deadline for compliance with special master order 54 that

 4    you file an appropriate motion.  I'm not sure it's a motion or

 5    a protective order, but whatever motion is necessary, a motion

 6    to modify the order.  For example, I certainly would entertain

 7    that, and I would try to do it in an expeditious manner.  So I

 8    guess that's the only guidance I can provide to you on that

 9    now.

10        MS. PRISELAC:  Thank you, Your Honor.  That's very

11    helpful.

12        MR. SLATER:  Your Honor, I just want to say that

13    obviously look at what is filed.  From our perspective, if a

14    protective order motion were going to be filed it would've

15    needed to be filed before the deadline for the discovery to be

16    produced, and I just -- I assume, Your Honor, that we also

17    will have the right to either file an appropriate motion or to

18    respond as necessary and potentially cross-move as well.

19        JUDGE VANASKIE:  Yes.  You would have the right to

20    cross-move as well, and you have not waived any argument or

21    position with respect to the fact that the deadlines have

22    passed.  But I know that both sides have been, in my view at

23    least, and you'll correct me if I'm wrong, trying to get a

24    resolution of this and trying to have the documents produced.

25    And we've run into a problem with respect to the data security

1    law.  I mentioned that earlier I thought the problem was the

2    burden of producing the testing records.  Now I'm being told

3    it doesn't matter what the burden is or how that burden could

4    be ameliorated, the Chinese law won't allow it.  And it's

5    going to be a very interesting matter to look at.

6         All right.  Let's move on then to the question of the

7    new named plaintiff updates.  Is this matter -- does this

8    matter require any attention from me?

9         MR. HARKINS:  Good afternoon, Your Honor.  This is

10   Steve Harkins with Greenberg Traurig for the defendants on

11   this issue.  I don't believe that this requires any action

12   from the Court.  Since we submitted this letter we've also

13   scheduled the deposition in the O'Brien case; only three

14   remain outstanding.  We anticipate being able to set the

15   Lawson case during December.  I wanted to advise the Court on

16   the two cases where particular issues may make it difficult to

17   get it scheduled within that time frame, but I don't believe

18   the defendants feel anything is needed from the Court at this

19   time.

20        JUDGE VANASKIE:  All right.  On the plaintiffs' side?

21        MR. STANOCH:  Hello, Your Honor.  David Stanoch for

22   plaintiffs.  That's fine.  Both sides have been working hard

23   and have double-tracking deps to get everything done.  We

24   agree with Mr. Harkins that we have everything scheduled

25   except Mr. Wolf and the Estate of Dutenberg.  The latter is

 1    issue is pending.  And much like we heard as to Mr. Chen's

 2    deposition is beholden to the Chinese government, we are now

 3    beholden to a local county government for probate papers.  And

 4    Mr. Wolf, unfortunately, has since passed away and we're

 5    giving the family sufficient time and then we will assess it

 6    and we'll make a decision one way or the other what we do,

 7    substitution or not, and we'll work with defendants on both.

 8              JUDGE VANASKIE:  Very well.

 9          The next item on the plaintiffs' agenda letter, which

10    is the Teva privilege log issues.

11            MR. STANOCH:  Judge, David Stanoch again for

12    plaintiffs.  When we told this -- we've done this before in

13    the letter -- we simply -- we have been going back and forth

14    for a while.  Parties had another meet and confer yesterday.

15    But there may be some issues that are just going to need a

16    thumbs up or thumbs down from Your Honor.  We were simply

17    asking guidance.  I certainly didn't want to get into a

18    three-page back and forth tit-for-tat like defendants insert.

19    Simply your letter -- would Your Honor like a letter with

20    electronic copy of the log?  Would you like something else in

21    a motion form?  So if it becomes necessary for us to tee up

22    narrow issues of general applicability, we could do it if we

23    can't resolve it soon.

24              JUDGE VANASKIE:  All right.  Who is addressing this

25    issue on behalf of Teva?

1          MS. LOCKARD:  Good afternoon, Judge.  It's Victoria

2     Lockard for Teva.  And, you know, I think that's fine.  We had

3     a meet and confer yesterday, so since the letter was issued

4     there was a productive call.  The plaintiffs, as I understand

5     it, have agreed to go back and to identify specific issues

6     with some specificity as we requested.  And so that's sort of

7     where the posture is at this point.  So I think if the parties

8     continue working together to try to narrow this and that can

9     be done, you know, we'll certainly -- we want to reserve all

10    rights we have with respect to the timeliness of the privilege

11    log issues, but I don't think there's anything for the Court

12    to rule on at this point.

13          JUDGE VANASKIE:  Okay.  And then in terms of the

14    guidance that you're looking for, Mr. Stanoch, I would say

15    that letters on the issue would be sufficient along with -- in

16    electronic format the portions of the log that might be at

17    issue, whatever other documentation that might be at issue,

18    whether there would be the need for any in camera review, I

19    cannot say at this time.  But in terms of do you need to file

20    a motion?  No.  It's sufficient that you present the matter to

21    me by way of letter briefs.  The letter briefs should, of

22    course, be filed as part of the record.  They can be filed

23    under seal, and you can submit to me unredacted or on field

24    documents, but it's appropriate and fine to present the matter

25    by way of letter briefs.

```
 1          MR. STANOCH:  Very good.  Thank you, Judge.
 2          JUDGE VANASKIE:  Thank you, all.
 3      I think the next item deals with the deposition dates
 4  for class certification experts, and my understanding is that
 5  deposition dates have largely been confirmed.  Where does this
 6  matter stand right now?
 7          MR. STANOCH:  Your Honor, David Stanoch for
 8  plaintiffs.  I think since our letters went in, I think we've
 9  agreed to dates for a number of the depositions.  I think
10  there's only two experts for which the defendants came back
11  asking for alternate dates, and we hope to very shortly be
12  able to provide them.  So I think this issue doesn't require
13  any action by Your Honor.
14          JUDGE VANASKIE:  All right.  Certainly.  That's good.
15      Does anybody from the defense side want to be heard on
16  that issue?
17          MS. LOCKARD:  Your Honor, Victoria Lockard again for
18  Teva and the defendants.  No.  I think we're working to get
19  those dates hammered down, so I don't think there's anything
20  for the Court to do at this time.  But if we have any issues
21  with respect to the dates or, you know, the time needed for
22  those depositions, we will approach Your Honor if that occurs.
23          JUDGE VANASKIE:  Okay.  Very well.
24      Now, a supplemental letter was submitted last week
25  dealing with state court litigation, New Jersey state court
```

1   litigation and personal injury actions.  Where does that

2   matter stand?  Mr. Slater.

3           MR. SLATER:  Yes, Your Honor.  I think that's an

4   issue that we wanted to -- I know it's an issue we wanted to

5   make sure the Court was aware of and assumed that Judge Kugler

6   would be interested in the issue.  As far as we know, there

7   has been a change in position on the defense side, and we just

8   need clarity as to how we're going to proceed in state court.

9   And we certainly wanted Judge Kugler to be fully aware because

10  all parties have been proceeding with the understanding that

11  we were litigating this case in the federal courts for this

12  period of time.  And if the defense has determined that

13  they're no longer willing to stay any state court proceedings,

14  we just need to know that so we can start to talk through the

15  process.  There will probably have to be a motion filed in New

16  Jersey to declare an MCL, which is the equivalent of an MDL in

17  New Jersey.  And we'll need to start the process there.  But I

18  think we have to hear from the defense, and I'm certainly

19  interested in Judge Kugler's guidance as well and Your Honor's

20  as well, obviously.

21          JUDGE VANASKIE:  Well, it appears that it is a matter

22  appropriate for Judge Kugler because it had been presented to

23  me as well as Judge Kugler in the supplemental letters or

24  supplemental agenda letters.  I just wanted to make sure it

25  was addressed here today.  Who is addressing this issue for

1    the defense?

2         MS. LOCKARD:  Your Honor, this is Victoria Lockard

3    again on behalf of Teva.  And, you know, I wrote the letter to

4    the Court last week on behalf of Teva, not on behalf of the

5    joint defense, because I think this is really a Teva issue.

6    In the state court actions, I believe Teva is involved in

7    maybe nine of them that Mr. Slater's firm has filed.  There

8    are a number of other actions, including some filed by other

9    law firms.  And we, Teva, my client, had not been served in

10   any of those cases until November 12th of this year.  So Teva

11   has never been a party to any stipulations to hold those cases

12   in abeyance.  We had never agreed to any of the language that

13   was filed previously.  So I don't know that it would be fair

14   to say there's been a change of position.  You know, to be

15   quite frank, we looked at the proposal and we were in

16   agreement with holding the case in abeyance.  We were in

17   agreement that there needs to be some coordination when those

18   get off the ground.  So I don't think we really have a dispute

19   here.  But we did modify some of the language because the way

20   the stay -- the stipulation had been entered previously, it

21   really was open-ended, one-sided, indefinite, and essentially

22   just that, you know, this case will be stayed until plaintiffs

23   decide to move for an MCL.

24         So our client felt that we needed to have some sort of

25   check-in point so we added a date of April 1st, 2022 to say we

1  will agree to hold these cases in abeyance until that time at

2  which point the parties can confer, and if further need to

3  hold them in abeyance is present, you know, we can agree to

4  extend the abeyance.

5      That's not to say that Teva is running to the

6  courthouse to try to litigate these cases.  But, you know, at

7  some point we need to know what's happening.  Some of them

8  have been pending for two years and, you know, if we're

9  coordinating them with the MDL then we're coordinating them.

10  But it appears that the way they're proceeding, they are being

11  litigated sequentially, and that causes us some concern

12  because, you know, at what point can our clients be done with

13  the litigation?  We don't want to get through everything in

14  the MDL and then start all over again.  So if coordination

15  needs to happen, the parties just need to come together to

16  decide how that's going to work.

17      But so, you know, I don't think there's been a change

18  of position.  I don't think that we're really in any

19  disagreement, but I think we need to be, you know,

20  forward-looking in terms of, you know, what's going to happen

21  with these cases.  I don't think the numbers are growing.

22  It's not as if new cases are being filed.  So we don't really

23  have any input from the plaintiffs in terms of when they

24  intend to move for an MCL or if they do.  And really -- I

25  think we just -- the parties just need to be coordinating and

1  discussing these issues a little better than we have been.

2          MR. GOLDBERG:  Your Honor, this Seth Goldberg.  If I

3  can just put in just one point to give Your Honor a little bit

4  of background here.

5          When these cases were first filed back in 2019 and the

6  issue of holding them in abeyance came up, I think it was

7  probably June, July of 2019, the abeyance, that order was sort

8  of predicated on the notion -- and I believe there was a

9  lawyer not part of the plaintiffs' executive committee -- his

10 name escapes me now -- who was taking the lead in front of

11 Judge Happas at the time.  And he had represented that he was

12 intending to file an MCL application within a few months.  And

13 that's why the language in the original abeyance order says

14 until such time as the MCL application is made or an MCL is

15 determined.  I think the -- that's why it was open-ended at

16 the time, and the parties seemed to have just gotten caught up

17 in the MDL, of course.  But I just wanted to address why there

18 seems to be this open-endedness is because we were expecting

19 an MCL application would have been filed at some point, you

20 know, shortly after those abeyance orders were entered.

21          JUDGE VANASKIE:  I see.  All right.

22          Mr. Slater, did you want to raise this issue with Judge

23 Kugler in a call that will ensue after this one?

24          MR. SLATER:  I certainly want to make sure that we

25 inform the judge of what's happening and the status.  And if

1    there's any guidance that His Honor would like to give us, we

2    certainly welcome that because from the plaintiffs'

3    perspective, when these cases were starting to be filed, and

4    they continued to be filed, we were ready to move forward on

5    them.  And I'm not going to go through the whole history, but

6    if we were prevailed upon and the request from the defense was

7    to not move forward with these cases, I mean, the defense

8    could have filed an MCL application any time they wanted as

9    well if they wanted to do that.  So there's nothing stopping

10   them.

11        I think it's certainly something that at least we want

12   to make sure that we have an understanding of whether Judge

13   Kugler has any input he wants to give us on this because we

14   certainly don't want to do something that would be

15   inconsistent with what Judge Kugler's expectations are.

16        JUDGE VANASKIE:  Understood.

17        So when we have Judge Kugler on the line, I'll expect

18   that you'll raise this matter with him, even if it's just from

19   an awareness standpoint to put it on his radar screen.

20        MR. SLATER:  Thank you.

21        JUDGE VANASKIE:  Is there anything else that we need

22   to discuss now?

23        MR. SLATER:  From the plaintiffs, Your Honor, I'm not

24   aware of anything, unless there's another plaintiff that has

25   an issue.

1          JUDGE VANASKIE:  All right.  Anything else from the
2  defense standpoint?
3          MR. GOLDBERG:  Nothing, Your Honor.
4          JUDGE VANASKIE:  To let you know on at least one
5  issue on the plaintiffs' motion for sanctions that was heard
6  back in September, sometime ago now, I was working on an
7  opinion when I had to go to the ER last week and I'm getting
8  back to it.  And so I hope to have something out on that very
9  shortly.
10         If there's nothing else for this part of the call, I'll
11  drop off and call Judge Kugler and join him on the line for
12  the second part of the call.
13         (A short recess occurred.)
14         (Proceedings held via teleconference before The
15  Honorable Robert B. Kugler, United States District Judge, on
16  December 1, 2021, at 4:00 p.m.)
17         JUDGE KUGLER:  Hello, it's Judge Kugler.  Sorry to
18  keep you waiting.  How is everybody?  Good?
19         MR. SLATER:  Good afternoon, Judge.
20         JUDGE KUGLER:  Everybody have a good thanksgiving, I
21  hope?
22         MR. SLATER:  Yes, Your Honor.  Hopefully you did as
23  well.
24         JUDGE KUGLER:  I did.  It was good.  It's always
25  good.

 1          Let's get right to what you need me to do today.  There
 2     were three orders to show cause, but apparently, according to
 3     your letter, two were resolved so we're just left with the
 4     Martinez matter; is that correct?
 5          MR. HARKINS:  Good afternoon, Your Honor.  This is
 6     Steve Harkins with Greenberg Traurig for the Teva defendant
 7     and joint defense group.  That is correct.  The only remaining
 8     case is Martinez, and at this time we would ask that that be
 9     dismissed.
10          JUDGE KUGLER:  Anybody want to speak on behalf of
11     Shawna Martinez?
12          MR. MCGOWIN:  Your Honor, this is Joseph McGowin on
13     behalf of Shawna Martinez, and we have made extensive efforts
14     to try to contact Ms. Martinez who is the daughter heir to Mr.
15     Edward Kerns who passed away, and, frankly, we would have
16     likely already filed a motion to withdraw from this matter
17     based on our many, many calls and letters that have gone
18     without response.  But for this hearing and the Court's
19     hearing, we didn't want to file a motion kind of, you know,
20     right up next that.  We would request that it be granted
21     without prejudice.  However, we understand how the Court's
22     motions and orders are in that regard.  But we have made
23     extensive efforts to contact Ms. Martinez, without success.  I
24     wanted to show up at the hearing rather than simply file a
25     motion to withdraw, given that it was already set.

1    JUDGE KUGLER:  Well, thank you for that.  I'm going

2  to grant the motion to dismiss.  It will be with prejudice,

3  but of course you have a right under the law to make an

4  application to vacate that if somehow you can cure the problem

5  in a reasonable amount of time.  So the motion to dismiss will

6  be granted.

7    Seeking -- there are nine --

8    MR. MCGOWIN:  Thank you, Your Honor.  If there's

9  anything else -- if that's the totality of what is at issue on

10  the Martinez case, is it permissible for me to be excused from

11  the hearing?

12    JUDGE KUGLER:  Certainly.  Thank you.  Have a great

13  holiday.

14    MR. MCGOWIN:  Thank you, Your Honor.

15    JUDGE KUGLER:  We have nine names you want an order

16  to show cause for.  Mr. Harkins, any changes?

17    MR. HARKINS:  Yes, Your Honor.  We have three updates

18  to the list since this was submitted last week.  We can remove

19  case number three, Georgia Faitgato.  Case number four, Tina

20  Dickinson, and case number eight, Stephanie Jordan.  The

21  issues in those three have been cured so we're only requesting

22  orders to show cause returnable at the December case

23  management conference for the remaining six cases.

24    JUDGE KUGLER:  Let's go through the six then.  Start

25  with Louissaint, L-O-U-I-S-S-A-I-N-T.  Anybody want to speak

1   on behalf of -- Nagle Rice is in this case -- on behalf of

2   that plaintiff?  Hearing nothing, we'll issue an order to show

3   cause.

4          Number 2, Stephanie Cahall, C-A-H-A-L-L.  Stark &

5   Stark, anybody want to speak on behalf of that plaintiff?

6   Okay.  Hearing nothing, that will be listed for an order to

7   show cause why that should not be dismissed.

8          Paulette Vaughn, V-A-U-G-H-N.  Anybody want to speak on

9   behalf of that plaintiff?  Hearing nothing -- go ahead.

10          MR. HERROLD:  Excuse me, Your Honor.  This Greg

11   Herrold from Duane Morris on behalf of defendants.  I believe

12   a joint stipulation of dismissal was entered in this matter.

13   I wanted to advise the Court of that.

14          JUDGE KUGLER:  Okay.  We'll check in to that.  All

15   right.

16          We have Richard Chacon, C-H-A-C-O-N.  The Levin firm,

17   anybody want to speak on behalf of this plaintiff?  Hearing

18   nothing, an order to show cause will be issued for that.

19          Leroy Patrick, P-A-T-R-I-C-K.  The Douglas & London

20   firm, anybody want to speak on behalf of Patrick?  Hearing

21   nothing, that will be listed for an order to show cause.

22          Last but not least, Deborah Harris, H-A-R-R-I-S.  The

23   Arnold & Itkin firm, anybody want to speak on behalf of

24   Deborah Harris?  Hearing nothing, we'll list that order to

25   show cause why that should not be dismissed.

1    Then you have 11 cases.  Mr. Harkins, do you want to

2    re-list, have another listing?  Any changes there?

3         MR. HARKINS:  Yes, Your Honor.  We also have three

4    updates to this list.  Case number six, Alvin Hawkins.  Case

5    number seven, Roy Olaphant.  And case number 11, Thomas

6    Parker.  We have received PFS's to cure the respective issues

7    in those three, so we are only requesting to carry forward the

8    remaining eight cases to the listing for next month.

9         JUDGE KUGLER:  Okay.  Jimmy Thorn, T-H-O-R-N, John

10   Benton, B-E-N-T-O-N, Charlene Mills, M-I-L-L-S, Kenneth

11   Brooks, B-R-O-O-K-S, Judith Duncan, D-U-N-C-A-N, William

12   Burnes, B-U-R-N-E-S, Rick Maedler, M-A-E-D-L-E-R, and Denise

13   Kadish, K-A-D-I-S-H, will be listed for a second listing for

14   the next meeting.

15      Okay.  I think I got them all, Mr. Harkins.  Any

16   others?

17        MR. HARKINS:  No, Your Honor.  I believe that's

18   accurate.  Thank you.

19        JUDGE KUGLER:  All right.  I was alerted that you

20   want to talk about the pending state cases.  Somebody wanted

21   to talk about that; is that correct?

22        MR. SLATER:  Hello, Your Honor.  It's Adam Slater.

23   Not that we have to do anything extensive today.  It really

24   was just to let Your Honor know that there was a development

25   where we've been proceeding and keeping the cases held in

1  abeyance per the discussions a few years ago in terms of

2  focusing on the MDL.  Recently Teva took the position they

3  wanted to, as they came into these cases, not have an ongoing

4  stay and I think they want to reevaluate in April,

5  approximately, and I don't believe the other defendants

6  objected to that.  So I thought that it was important for Your

7  Honor to know just so that Your Honor would have a whole

8  understanding of everything happening both in this MDL and in

9  the related litigation.

10        JUDGE KUGLER:  Okay.  I mean, I think the state court

11  judges are more than happy to let us take the lead, don't you

12  think?

13        MR. SLATER:  Absolutely.  And I don't think there's

14  been a problem with that in state court.  We've been content

15  to follow the path that we've been taking.

16        JUDGE KUGLER:  Okay.  That sounds good.

17        MS. LOCKARD:  Your Honor, if I may speak, this is

18  Victoria Lockard on behalf of Teva, and I don't think there's

19  any dispute Teva agreed to hold the cases in abeyance.  We

20  were just brought into these cases November 12th of this year,

21  so we were not involved in any of the prior negotiations, the

22  stipulations to the stay.  So when we got involved these

23  cases, some of them have been pending now since 2019.  Our

24  client asked that rather than having an open-ended stay that

25  we propose essentially a check-in point sometime next year so

1    that we could discuss with the plaintiffs sort of the ultimate

2    track of these cases.  I don't think anyone is, you know,

3    eager to jump forward on the state court cases.  Everyone is

4    happy to let the MDL proceed.  If we are going to coordinate

5    those cases, at some point we need to discuss that.  But our

6    client just simply wants to know that there will be an end

7    point at some point and that we're not going to get to the end

8    of the MDL and then sequentially tee up another batch of

9    litigation.

10        So, again, I don't think there's a dispute.  When we

11   came into the cases last month we agreed to the abeyance, and

12   I don't think there's a problem there.  We're not running to

13   try to litigate these cases, but I just think we need to have

14   some end point in mind for these cases and where we intend to

15   go and that they are going to be coordinated, you know, how

16   and when is that going to happen.

17        JUDGE KUGLER:  Okay.  Well, that sounds logical and

18   reasonable.  I would expect that if we are able to come to

19   some kind of a global settlement that those cases would

20   somehow get forwarded to the end of that ultimately anyway.

21        Speaking of that, I want your position on whether or

22   not the Court should appoint separate settlement counsel for

23   some or all of the parties.  I don't want it now.  I want it

24   in writing.  I'm considering doing that.  I have had great

25   success with that.  Other judges in other MDL's have had great

1    success with that.  It's a little more cumbersome in this case

2    because there's so many defendants, but I can foresee ways

3    around that problem.  I'd like you to submit to me your

4    position on this in 14 days in a letter no more than five

5    pages on the way your position is on the Court appointing

6    separate settlement counsel for purposes of trying to make

7    some progress towards a settlement of some or all the claims,

8    some or all the defendants, some or all the plaintiffs in the

9    case.  It's been my experience for those of you who are

10   vigorously litigating -- and I don't mean that as a criticism.

11   Trust me.  I'm very impressed with the work that you're doing.

12   But it's been my experience and my observation, and others, I

13   believe, that sometimes it's very helpful to have someone who

14   is not so close to the daily grind and the daily back and

15   forth in the discovery issues and the motions and things like

16   that to take a look at it with a client and to maybe see

17   things a little differently.  Perhaps you need to pursue other

18   ways of resolution of this case because the expenses, I

19   assume, are enormous on both sides and they're not going to

20   get any better.  You're still in the process of briefing the

21   Daubert motions and all that kind of stuff.

22          So 14 days from now.  Letters no more than five pages,

23   and we'll discuss it at the December meeting.  Okay?

24          Anything else you'd like to talk about?

25              MR. SLATER:  I don't think anything for the

```
 1   plaintiffs on the subject of this litigation.  Thank you.
 2          JUDGE KUGLER:  Everybody have a great holiday.
 3   Hopefully, I will talk to you before Christmas, for those of
 4   you who celebrate Christmas.  If for some reason you don't
 5   make it to the phone conference, happy new year and happy
 6   holidays everybody.  Thank you.  Take care.
 7          MR. SLATER:  Thank you, Your Honor.
 8          MR. GOLDBERG:  Thank you, Judge.
 9          (Court concludes at 4:16 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE.

2          - - - - - - - - - - - - - - - - - - - - -

3

4     I certify that the foregoing is a correct transcript from

5 the record of proceedings in the above-entitled matter.

6

7

8     I

9

10

11 **/S/ Megan McKay-Soule, RMR, CRR**     **December 7, 2021**

12          Court Reporter                          Date

13

14

15

16

17

18

19

20

21

22

23

24

25

**/**

/S [1] - 38:11

**0**

07069 [1] - 1:16
08101 [1] - 1:9

**1**

1 [7] - 1:9, 3:2, 11:12, 12:4, 12:5, 29:16
10 [4] - 5:13, 5:14, 5:15, 5:17
103 [1] - 1:16
11 [4] - 5:14, 5:18, 33:1, 33:5
12th [2] - 25:10, 34:20
14 [2] - 36:4, 36:22
15th [6] - 7:13, 8:10, 8:25, 9:4, 10:5, 10:9
1753 [1] - 11:9
17th [1] - 2:3
19-md-02875-RBK [1] - 1:4
19103 [1] - 2:4
1st [2] - 12:1, 25:25

**2**

2 [1] - 32:4
2019 [3] - 27:5, 27:7, 34:23
2021 [6] - 1:9, 3:2, 5:5, 11:14, 29:16, 38:11
2022 [1] - 25:25
215 [1] - 1:24
22 [2] - 11:9, 11:18
2500 [1] - 2:8
27 [1] - 5:5
27th [1] - 6:13

**3**

30 [1] - 2:3
30305 [1] - 2:8
3333 [1] - 2:8
3:00 [1] - 1:10, 3:3

**4**

4:00 [1] - 29:16
4:16 [1] - 37:9
4th [1] - 1:8

**5**

54 [5] - 10:22, 11:2, 13:11, 18:10, 19:3

**7**

7 [3] - 12:25, 13:8, 38:11
701 [1] - 1:19
70130 [1] - 1:19
779-6437 [1] - 1:24

**8**

8 [2] - 11:12, 11:14

**9**

9 [1] - 11:8

**A**

abeyance [17] - 14:16, 14:22, 14:25, 18:15, 18:18, 25:12, 25:16, 26:1, 26:3, 26:4, 27:6, 27:7, 27:13, 27:20, 34:1, 34:19, 35:11
ability [2] - 15:22, 16:5
able [12] - 3:10, 8:3, 8:4, 8:6, 10:6, 11:21, 16:1, 18:14, 18:23, 20:14, 23:12, 35:18
above-entitled [1] - 38:5
abreast [1] - 6:19
absent [2] - 15:3, 18:25
absolutely [1] - 34:13
accept [3] - 12:17, 15:4, 17:22
accommodate [1] - 3:10
according [1] - 30:2
accurate [1] - 33:18
Actavis [2] - 2:9
action [2] - 20:11, 23:13
ACTION [1] - 1:3
actions [3] - 24:1, 25:6, 25:8
actual [4] - 12:16, 12:20, 17:2, 18:15
Adam [3] - 3:15, 11:3, 33:22
ADAM [1] - 1:15
added [1] - 25:25
address [4] - 8:13, 10:25, 12:12, 27:17
addressed [1] - 24:25
addressing [3] - 13:17, 21:24, 24:25
advantage [1] - 16:3

advise [2] - 20:15, 32:13
advised [2] - 5:8, 5:20
affidavit [1] - 11:10, 13:1
afternoon [5] - 3:23, 20:9, 22:1, 29:19, 30:5
afterwards [1] - 12:2
agenda [5] - 4:4, 5:20, 10:21, 21:9, 24:24
ago [2] - 29:6, 34:1
agree [6] - 13:7, 16:9, 16:11, 20:24, 26:1, 26:3
agreed [6] - 13:24, 22:5, 23:9, 25:12, 34:19, 35:11
agreeing [4] - 12:17, 12:22, 17:18, 17:22
agreement [6] - 15:3, 18:14, 18:24, 19:2, 25:16, 25:17
ahead [4] - 8:22, 8:23, 32:9
aided [1] - 1:25
alerted [1] - 33:19
allow [1] - 20:4
alternate [1] - 23:11
Alvin [1] - 33:4
ameliorated [1] - 20:4
amenable [2] - 14:18, 17:6
amount [1] - 31:5
anticipate [1] - 20:14
anticipated [1] - 10:9
anyway [1] - 35:20
apologize [2] - 3:4, 8:22
appear [4] - 4:22, 4:23, 4:25, 6:8
applicability [1] - 21:22
application [5] - 27:12, 27:14, 27:19, 28:8, 31:4
appoint [1] - 35:22
appointing [1] - 36:5
appreciate [1] - 13:25
approach [1] - 23:22
approached [1] - 12:13
appropriate [7] - 4:25, 6:7, 18:22, 19:4, 19:17, 22:24, 24:22
April [2] - 25:25, 34:4
argument [3] - 7:20, 13:3, 19:20
Arnold [1] - 32:23
ascension [1] - 7:11

assess [1] - 21:5
assume [2] - 19:16, 36:19
assumed [1] - 24:5
Atlanta [1] - 2:8
attempt [2] - 7:8, 9:14
attempted [1] - 7:8
attempting [1] - 4:15
attend [1] - 6:21
attention [1] - 20:8
authorization [1] - 16:10
avoid [1] - 18:23
await [1] - 10:17
aware [3] - 24:5, 24:9, 28:24
awareness [1] - 28:19

**B**

background [1] - 27:4
ban [2] - 14:7, 16:17
based [2] - 6:7, 30:17
basis [2] - 6:5, 7:24
batch [1] - 35:8
becomes [1] - 21:21
behalf [16] - 13:17, 21:25, 25:3, 25:4, 30:10, 30:13, 32:1, 32:5, 32:9, 32:11, 32:17, 32:20, 32:23, 34:18
beholden [2] - 21:2, 21:3
Benton [1] - 33:10
BENTON [1] - 33:10
best [1] - 13:10
better [4] - 3:16, 9:8, 27:1, 36:20
bit [2] - 3:12, 27:3
blame [1] - 9:14
block [1] - 15:22
blood [1] - 3:8
bride [1] - 3:19
brief [2] - 9:18, 13:8
briefing [1] - 36:20
briefs [3] - 22:21, 22:25
brings [1] - 17:24
broad [1] - 17:12
broad-brushed [1] - 17:12
Brooks [1] - 33:11
BROOKS [1] - 33:11
brought [1] - 34:20
brushed [1] - 17:12
Building [1] - 1:8
bunch [1] - 3:24
burden [7] - 13:1,

13:2, 17:20, 20:2, 20:3
Burnes [1] - 33:12
BURNES [1] - 33:12
BY [4] - 1:15, 1:18, 2:2, 2:7

**C**

C-A-H-A-L-L [1] - 32:4
C-H-A-C-O-N [1] - 32:16
Cahall [1] - 32:4
Camden [1] - 1:9
camera [1] - 22:18
Camp [1] - 1:19
cannot [5] - 8:19, 10:14, 14:21, 19:2, 22:19
care [1] - 37:6
carry [1] - 33:7
case [23] - 5:12, 7:23, 9:5, 15:14, 16:6, 20:13, 20:15, 24:11, 25:16, 25:22, 30:8, 31:10, 31:19, 31:20, 31:22, 32:1, 33:4, 33:5, 36:1, 36:9, 36:18
cases [26] - 20:16, 25:10, 25:11, 26:1, 26:6, 26:21, 26:22, 27:5, 28:3, 28:7, 31:23, 33:1, 33:8, 33:20, 33:25, 34:3, 34:19, 34:20, 34:23, 35:2, 35:3, 35:5, 35:11, 35:13, 35:14, 35:19
cast [1] - 9:14
caught [1] - 27:16
causes [1] - 26:11
celebrate [1] - 37:4
certain [1] - 14:17
certainly [20] - 3:18, 8:12, 12:16, 12:17, 12:22, 13:11, 13:13, 17:18, 18:21, 19:6, 21:17, 22:9, 23:14, 24:9, 24:18, 27:24, 28:2, 28:11, 28:14, 31:12
CERTIFICATE [1] - 38:1
certification [1] - 23:4
certify [1] - 38:4
cetera [1] - 12:21
Chacon [1] - 32:16
Chairman [1] - 4:22
chairman [1] - 6:8

change [4] - 12:6, 24:7, 25:14, 26:17
changes [2] - 31:16, 33:2
Charlene [1] - 33:10
check [3] - 25:25, 32:14, 34:25
check-in [2] - 25:25, 34:25
checked [1] - 12:3
Chen [6] - 4:9, 4:11, 6:21, 7:2, 7:13, 9:1
Chen's [6] - 6:15, 7:6, 9:7, 9:12, 10:20, 21:1
chime [1] - 13:15
China [13] - 5:18, 7:7, 7:10, 7:15, 7:23, 10:6, 11:23, 11:25, 12:16, 14:7, 14:12, 15:21, 18:16
Chinese [12] - 5:4, 6:15, 7:1, 9:7, 9:24, 14:17, 14:22, 16:4, 16:10, 16:16, 20:4, 21:2
Christmas [2] - 37:3, 37:4
chromatograms [1] - 12:20
circumstances [1] - 8:12
citizens [1] - 9:7
CIVIL [1] - 1:3
Civil [1] - 9:11
claims [1] - 36:7
clarification [1] - 18:12
clarify [1] - 15:7
clarity [1] - 24:8
class [1] - 23:4
clear [3] - 8:18, 12:14, 14:12
client [8] - 14:2, 14:22, 15:8, 25:9, 25:24, 34:24, 35:6, 36:16
clients [1] - 26:12
close [1] - 36:14
CMC [1] - 5:6
Cohen [1] - 1:8
color [2] - 5:2, 5:22
commence [1] - 9:9
Commencing [1] - 1:10
committee [1] - 27:9
communications [1] - 11:20
companies [1] - 16:2
company [3] - 6:8, 7:25, 8:2

complete [1] - 16:17
compliance [2] - 11:1, 19:3
computer [1] - 1:25
computer-aided [1] - 1:25
concern [1] - 26:11
concludes [1] - 37:9
conduct [2] - 3:18, 8:2
conducting [1] - 3:20
confer [7] - 14:14, 16:24, 17:1, 19:1, 21:14, 22:3, 26:2
CONFERENCE [1] - 1:6
conference [8] - 4:4, 5:6, 5:9, 5:12, 5:21, 6:14, 31:23, 37:5
conferences [1] - 6:20
confers [1] - 13:3
confirm [1] - 18:18
confirmation [1] - 4:17
confirmed [2] - 9:25, 23:5
confused [1] - 15:3
confusing [1] - 5:7
consented [1] - 11:12
consideration [2] - 5:2, 5:23
considering [2] - 14:2, 35:24
contact [2] - 30:14, 30:23
content [1] - 34:14
continue [1] - 22:8
continued [1] - 28:4
Continued [1] - 2:1
control [2] - 6:23
convention [2] - 10:2, 10:16
conversation [1] - 13:5
Cooper [1] - 1:8
coordinate [1] - 35:4
coordinated [1] - 35:15
coordinating [3] - 26:9, 26:25
coordination [2] - 25:17, 26:14
copy [2] - 17:7, 21:20
correct [10] - 4:13, 6:12, 8:16, 9:21, 13:23, 19:23, 30:4, 30:7, 33:21, 38:4
counsel [4] - 3:25, 5:14, 35:22, 36:6
country [1] - 15:18
county [1] - 21:3

course [3] - 22:22, 27:17, 31:3
court [14] - 4:21, 7:20, 8:2, 8:9, 15:23, 23:25, 24:8, 24:13, 25:6, 34:10, 34:14, 35:3
COURT [2] - 1:1, 38:1
Court [22] - 1:23, 5:8, 5:11, 6:14, 6:18, 8:24, 10:13, 11:21, 15:16, 15:25, 20:12, 20:15, 20:18, 22:11, 23:20, 24:5, 25:4, 32:13, 35:22, 36:5, 37:9, 38:12
Court's [4] - 5:2, 5:22, 30:18, 30:21
courthouse [1] - 26:6
Courthouse [1] - 1:8
courts [2] - 16:2, 24:11
covers [1] - 10:20
criticism [1] - 36:10
cross [2] - 19:18, 19:20
cross-move [2] - 19:18, 19:20
CRR [1] - 38:11
cumbersome [1] - 36:1
cure [2] - 31:4, 33:6
cured [1] - 31:21
current [1] - 11:13

**D**

daily [2] - 36:14
data [13] - 10:25, 11:22, 11:25, 12:13, 14:6, 14:10, 14:20, 16:10, 17:3, 17:7, 17:10, 17:11, 19:25
Date [1] - 38:12
date [1] - 25:25
dates [6] - 23:3, 23:5, 23:9, 23:11, 23:19, 23:21
Daubert [1] - 36:21
daughter [1] - 30:14
David [3] - 20:21, 21:11, 23:7
DAVID [1] - 1:18
DAVIS [1] - 2:7
days [2] - 36:4, 36:22
deadline [7] - 11:9, 11:13, 13:1, 13:9, 13:24, 19:3, 19:15
deadlines [6] - 14:15, 14:21, 14:25, 18:15,

18:17, 19:21
dealing [1] - 23:25
deals [3] - 4:9, 10:22, 23:3
Deborah [2] - 32:22, 32:24
December [18] - 1:9, 3:2, 7:13, 8:10, 8:25, 9:4, 10:5, 10:8, 11:12, 11:14, 12:25, 13:8, 20:15, 29:16, 31:22, 36:23, 38:11
decide [2] - 25:23, 26:16
decision [2] - 18:24, 21:6
declaration [1] - 13:22
declare [1] - 24:16
defendant [1] - 30:6
defendant's [1] - 5:3
defendants [10] - 20:10, 21:18, 21:7, 21:18, 23:10, 23:18, 32:11, 34:5, 36:2, 36:8
Defendants [2] - 2:4, 2:9
defense [15] - 3:22, 3:24, 5:13, 6:2, 13:17, 23:15, 24:7, 24:12, 24:18, 25:1, 25:5, 28:6, 28:7, 29:2, 30:7
deferring [1] - 19:2
definitive [4] - 4:12, 4:17, 9:25, 10:1
denial [4] - 4:12, 4:16, 4:17, 6:18
denied [3] - 4:12, 5:4, 6:15
Denise [1] - 33:12
deposed [2] - 10:9, 10:10
deposition [29] - 4:9, 4:11, 4:22, 5:1, 6:8, 6:22, 7:2, 7:7, 7:10, 7:13, 7:14, 7:15, 7:21, 7:22, 8:10, 8:19, 8:25, 9:2, 9:3, 9:8, 9:12, 9:22, 10:7, 10:8, 10:21, 20:13, 21:2, 23:3, 23:5
depositions [3] - 9:7, 23:9, 23:22
deps [1] - 20:23
detailed [2] - 12:11
determination [1] - 7:1
determine [2] - 15:8, 17:25

determined [2] - 24:12, 27:15
development [1] - 33:24
device [1] - 4:3
Dickinson [1] - 31:20
dies [1] - 3:7
differently [1] - 36:17
difficult [1] - 20:16
direction [1] - 11:16
disagreement [1] - 26:19
discovery [3] - 7:25, 19:15, 36:15
discuss [4] - 28:22, 35:1, 35:5, 36:23
discussed [2] - 5:24, 9:11
discussing [1] - 27:1
discussion [1] - 12:11
discussions [1] - 34:1
dismiss [2] - 31:2, 31:5
dismissal [1] - 32:12
dismissed [3] - 30:9, 32:7, 32:25
dispute [2] - 25:18, 34:19, 35:10
DISTRICT [3] - 1:1, 1:1, 1:13
District [1] - 29:15
doctor [1] - 3:7
document [3] - 11:9, 11:11, 11:17
documentation [1] - 22:17
documented [1] - 15:20
documents [24] - 11:17, 11:18, 11:22, 12:7, 12:16, 12:18, 12:20, 12:23, 14:5, 14:7, 14:11, 14:18, 14:23, 14:24, 16:13, 16:18, 16:22, 17:7, 17:17, 17:19, 17:22, 18:16, 19:24, 22:24
done [8] - 6:21, 7:7, 7:14, 15:5, 20:23, 21:12, 22:9, 26:12
double [2] - 12:3, 20:23
double-checked [1] - 12:3
double-tracking [1] - 20:23
Douglas [1] - 32:19
down [2] - 21:16, 23:19
drop [1] - 29:11

DUANE [1] - 2:2
Duane [2] - 13:19, 32:11
Duncan [1] - 33:11
DUNCAN [1] - 33:11
during [1] - 20:15
Dutenberg [1] - 20:25

E

eager [1] - 35:3
early [1] - 18:4
educated [1] - 3:12
Edward [1] - 30:15
effect [5] - 11:25, 12:3, 12:4, 12:5, 14:4
efforts [2] - 30:13, 30:23
eight [2] - 31:20, 33:8
Eisenhower [1] - 1:16
either [3] - 6:17, 12:7, 19:17
electronic [2] - 21:20, 22:16
emergency [1] - 3:20
enactment [1] - 14:20
encourage [1] - 19:1
encouraging [1] - 18:6
end [5] - 11:5, 35:6, 35:7, 35:14, 35:20
ended [3] - 25:21, 27:15, 34:24
endedness [1] - 27:18
enormous [1] - 36:19
ensue [1] - 27:23
entered [4] - 11:4, 25:20, 27:20, 32:12
entertain [3] - 18:20, 18:21, 19:6
entitled [1] - 38:5
equivalent [1] - 24:16
ER [1] - 29:7
escapes [1] - 27:10
ESQUIRE [6] - 1:15, 1:18, 2:2, 2:3, 2:7, 2:7
essentially [2] - 25:21, 34:25
Estate [1] - 20:25
et [1] - 12:20
evaluated [1] - 4:24
events [1] - 6:12
example [1] - 19:6
except [1] - 20:25
excuse [1] - 32:10
excused [1] - 31:10
executive [1] - 27:9
expect [2] - 28:17,

35:18
expectations [1] - 28:15
expecting [1] - 27:18
expeditious [1] - 19:7
expenses [1] - 36:18
experience [2] - 36:9, 36:12
experts [2] - 23:4, 23:10
explicitly [1] - 9:11
export [2] - 14:17, 16:18
exporting [1] - 14:7
extend [2] - 13:24, 26:4
extending [1] - 19:2
extensions [2] - 11:11, 11:13
extensive [3] - 30:13, 30:23, 33:23

F

facing [1] - 14:13
fact [3] - 7:4, 12:6, 19:21
failure [3] - 4:25, 6:7, 9:15
fair [3] - 8:20, 8:21, 25:13
fairly [1] - 13:5
Faitgato [1] - 31:19
family [1] - 21:5
far [1] - 24:6
fascinating [1] - 8:13
FEDERAL [1] - 38:1
federal [2] - 15:23, 24:11
Federal [1] - 9:11
felt [1] - 25:24
few [2] - 27:12, 34:1
field [1] - 22:23
file [6] - 6:6, 10:5, 11:16, 19:4, 19:17, 22:19, 27:12, 30:19, 30:24
filed [17] - 13:8, 19:13, 19:14, 19:15, 22:22, 24:15, 25:7, 25:8, 25:13, 26:22, 27:5, 27:19, 28:3, 28:4, 28:8, 30:16
filing [1] - 11:8
finally [1] - 5:20
fine [3] - 20:22, 22:2, 22:24
firm [4] - 25:7, 32:16, 32:20, 32:23
firms [1] - 25:9

First [1] - 3:4
first [3] - 4:8, 5:5, 27:5
five [3] - 12:9, 36:4, 36:22
focus [1] - 14:12
focused [2] - 16:15, 16:20
focusing [1] - 34:2
follow [3] - 7:9, 9:15, 34:15
followed [1] - 9:3
FOR [1] - 1:1
forces [1] - 6:24
foreclosed [1] - 17:21
foregoing [1] - 38:4
foresee [1] - 36:2
form [1] - 21:21
format [1] - 22:16
forth [4] - 6:24, 21:13, 21:18, 36:15
forward [11] - 5:3, 8:4, 8:14, 8:19, 9:18, 16:7, 26:20, 28:4, 28:7, 33:7, 35:3
forward-looking [1] - 26:20
forwarded [1] - 35:20
four [1] - 31:19
frame [1] - 20:17
frank [1] - 25:15
frankly [1] - 30:15
FREEMAN [1] - 1:15
front [1] - 27:10
fully [1] - 24:9
future [1] - 16:20

G

general [2] - 12:12, 21:22
George [1] - 12:11
Georgia [2] - 2:8, 31:19
given [5] - 14:6, 14:19, 17:6, 18:13, 30:25
glad [2] - 3:10, 3:15
global [1] - 35:19
goal [1] - 17:9
goldberg [1] - 6:10
GOLDBERG [9] - 2:2, 3:23, 4:14, 6:11, 8:16, 8:24, 27:2, 29:3, 37:8
Goldberg [7] - 3:24, 4:13, 8:22, 9:21, 10:14, 13:16, 27:2
govern [1] - 7:22
government [5] - 5:4, 6:15, 7:1, 7:24, 9:24, 12:15, 14:17, 14:23,

15:21, 16:5, 21:2, 21:3
graciously [1] - 13:24
grant [1] - 31:2
granted [3] - 9:23, 30:20, 31:6
great [5] - 4:2, 31:12, 35:24, 35:25, 37:2
greatest [1] - 12:19
Greenberg [2] - 20:10, 20:16
GREENBERG [1] - 2:6
Greg [1] - 32:10
grind [1] - 36:14
ground [1] - 25:18
group [1] - 30:7
growing [1] - 26:21
guess [2] - 4:16, 19:8
guidance [6] - 8:14, 19:8, 21:17, 22:14, 24:19, 28:1

H

H-A-R-R-I-S [1] - 32:22
Hague [7] - 7:6, 7:9, 9:3, 9:9, 9:10, 10:2, 10:16
hammered [1] - 23:19
Happas [1] - 27:11
happy [4] - 34:11, 35:4, 37:5
hard [3] - 3:8, 17:6, 20:22
HARKINS [6] - 2:7, 20:9, 30:5, 31:17, 33:3, 33:17
Harkins [4] - 20:10, 20:24, 30:6, 31:16, 33:1, 33:15
harmed [1] - 8:2
Harris [2] - 32:22, 32:24
Hawkins [1] - 33:4
Healthcare [1] - 2:9
hear [2] - 3:16, 24:18
heard [4] - 15:11, 21:1, 23:15, 29:5
hearing [10] - 30:18, 30:19, 30:24, 31:11, 32:2, 32:6, 32:9, 32:17, 32:20, 32:24
heir [1] - 30:14
held [3] - 3:1, 29:14, 33:25
hello [2] - 29:17, 33:22
Hello [2] - 3:15, 20:21
helpful [3] - 17:14, 19:11, 36:13

HERROLD [1] - 32:10
Herrold [1] - 32:11
history [1] - 28:5
hold [9] - 11:10, 14:15, 14:21, 14:25, 18:17, 25:11, 26:1, 26:3, 34:19
holding [3] - 18:14, 35:16, 27:6
holiday [2] - 31:13, 37:2
holidays [1] - 37:6
Hong [1] - 10:10
Honor [55] - 4:14, 6:11, 8:16, 8:18, 9:18, 11:3, 11:4, 12:18, 13:18, 13:21, 14:2, 14:14, 14:19, 15:7, 15:13, 16:14, 18:2, 18:8, 18:11, 18:12, 18:18, 18:19, 19:10, 19:12, 19:16, 20:9, 20:21, 21:16, 21:19, 23:7, 23:13, 23:17, 23:22, 24:3, 25:2, 27:2, 27:3, 28:1, 28:23, 29:3, 29:22, 30:5, 30:12, 31:8, 31:14, 31:17, 32:10, 33:3, 33:17, 33:22, 33:24, 34:7, 34:17, 37:7
Honor's [3] - 13:22, 16:24, 24:19
Honorable [2] - 3:1, 29:15
HONORABLE [2] - 1:11, 1:12
hope [4] - 14:6, 23:11, 29:8, 29:21
hopefully [4] - 16:24, 17:5, 29:22, 37:3
hoping [2] - 16:23, 18:2
Huahai [1] - 2:5

I

identify [1] - 22:5
ignoring [1] - 7:3
imagine [1] - 17:3
important [3] - 7:21, 15:16, 34:6
imposition [1] - 10:3
impressed [1] - 36:11
IN [1] - 1:3
inappropriate [1] - 10:15
Inc [2] - 2:9, 2:10
including [2] - 6:19,

25:8
**inconsistent** [1] - 28:15
**incorporated** [1] - 9:10
**indefinite** [1] - 25:21
**indicate** [4] - 9:20, 10:4, 10:12, 10:14
**indicating** [1] - 8:8
**Industires** [1] - 2:9
**inform** [2] - 6:14, 27:25
**information** [10] - 4:15, 5:10, 5:16, 10:24, 12:1, 12:10, 12:21, 14:10, 15:4, 18:3
**informed** [2] - 5:13, 12:2
**initial** [1] - 4:7
**injury** [1] - 24:1
**input** [2] - 26:23, 28:13
**insert** [1] - 21:18
**intend** [2] - 26:24, 35:14
**intending** [1] - 27:12
**intention** [2] - 13:8, 18:16
**interest** [1] - 12:19
**interested** [2] - 24:6, 24:19
**interesting** [3] - 15:15, 16:6, 20:5
**interfere** [1] - 15:22
**interfering** [1] - 16:5
**interim** [6] - 12:15, 12:21, 14:8, 15:6, 16:16, 17:22
**interrupted** [1] - 8:22
**invite** [1] - 13:13
**involved** [4] - 15:14, 25:6, 34:21, 34:22
**issue** [41] - 6:25, 7:5, 7:16, 7:18, 8:5, 8:13, 9:1, 9:7, 9:19, 9:25, 10:25, 12:25, 13:17, 14:13, 15:12, 15:17, 15:19, 15:24, 16:6, 16:9, 17:20, 18:7, 20:11, 21:1, 21:25, 22:15, 22:17, 23:12, 23:16, 24:4, 24:6, 24:25, 25:5, 27:6, 27:22, 28:25, 29:5, 31:9, 32:2
**issued** [4] - 7:1, 10:8, 22:3, 32:18
**issues** [15] - 7:23, 13:4, 13:6, 13:11,

20:16, 21:10, 21:15, 21:22, 22:5, 22:11, 23:20, 27:1, 31:21, 33:6, 36:15
**item** [5] - 4:9, 10:21, 11:15, 21:9, 23:3
**Itkin** [1] - 32:23

**J**

**JERSEY** [1] - 1:1
**Jersey** [5] - 1:9, 1:16, 23:25, 24:16, 24:17
**Jessica** [1] - 13:18
**JESSICA** [1] - 2:3
**Jimmy** [1] - 33:9
**JOHN** [1] - 1:18
**John** [1] - 33:9
**join** [2] - 4:4, 29:11
**joint** [3] - 25:5, 30:7, 32:12
**Jordan** [1] - 31:20
**Joseph** [1] - 30:12
**judge** [2] - 21:11, 27:25
**JUDGE** [49] - 1:13, 3:4, 3:17, 4:1, 4:18, 6:9, 7:17, 8:6, 8:21, 9:16, 9:20, 13:14, 13:20, 15:2, 15:11, 16:8, 17:13, 18:5, 18:9, 18:21, 19:19, 20:20, 21:8, 21:24, 22:13, 23:2, 23:14, 23:23, 24:21, 27:21, 28:16, 28:21, 29:1, 29:4, 29:17, 29:20, 29:24, 30:10, 31:1, 31:12, 31:15, 31:24, 32:14, 33:9, 33:19, 34:10, 34:16, 35:17, 37:2
**Judge** [20] - 3:15, 3:23, 5:2, 22:1, 23:1, 24:5, 24:9, 24:19, 24:22, 24:23, 27:11, 27:22, 28:12, 28:15, 28:17, 29:11, 29:15, 29:17, 29:19, 37:8
**judges** [2] - 34:11, 35:25
**Judith** [1] - 33:11
**July** [1] - 27:7
**jump** [1] - 35:3
**June** [1] - 27:7

**K**

**Kadish** [1] - 33:13
**KADISH** [1] - 33:13

**KANNER** [1] - 1:18
**KATZ** [1] - 1:15
**keep** [1] - 29:18
**keeping** [2] - 6:18, 33:25
**Kenneth** [1] - 33:10
**kept** [1] - 5:24
**Kerns** [1] - 30:15
**kind** [5] - 8:14, 11:6, 30:19, 35:19, 36:21
**knowing** [1] - 16:18
**known** [2] - 6:2, 9:6
**knows** [1] - 12:19
**Kong** [2] - 10:11, 11:16
**KONG** [1] - 11:16
**KUGLER** [16] - 1:12, 29:17, 29:20, 29:24, 30:10, 31:1, 31:12, 31:15, 31:24, 32:14, 33:9, 33:19, 34:16, 35:17, 37:2
**Kugler** [10] - 24:5, 24:9, 24:22, 24:23, 27:23, 28:13, 28:17, 29:11, 29:15, 29:17
**Kugler's** [2] - 24:19, 28:15

**L**

**L-O-U-I-S-S-A-I-N-T** [1] - 31:25
**LA** [1] - 1:19
**language** [3] - 25:12, 25:19, 27:13
**large** [1] - 16:18
**largely** [1] - 23:5
**larger** [1] - 6:25
**last** [11] - 3:5, 3:11, 4:5, 12:24, 14:2, 23:24, 25:4, 29:7, 31:18, 32:22, 35:11
**latter** [1] - 20:25
**law** [19] - 9:10, 11:22, 11:25, 12:3, 12:4, 12:5, 13:4, 14:3, 14:6, 14:10, 14:20, 15:9, 15:20, 16:11, 16:16, 20:1, 20:4, 25:9, 31:3
**laws** [1] - 16:3
**Lawson** [1] - 20:15
**lawsuit** [1] - 7:25
**lawyer** [1] - 27:9
**lead** [3] - 16:24, 27:10, 34:11
**least** [6] - 5:8, 8:11, 19:23, 28:11, 29:4, 32:22

**left** [1] - 30:3
**legitimate** [1] - 7:25
**Leroy** [1] - 32:19
**letter** [19] - 4:8, 4:9, 5:4, 6:24, 10:22, 11:24, 20:12, 21:9, 21:13, 21:19, 22:3, 22:21, 22:25, 23:24, 25:3, 30:3, 36:4
**letters** [10] - 4:5, 4:6, 4:10, 5:21, 22:15, 23:8, 24:23, 24:24, 30:17, 36:22
**Levin** [1] - 32:16
**LIABILITY** [1] - 1:4
**lieu** [1] - 12:18
**likely** [1] - 30:16
**line** [4] - 3:14, 3:25, 28:17, 29:11
**list** [4] - 31:18, 32:24, 33:2, 33:4
**listed** [3] - 32:6, 32:21, 33:13
**listing** [3] - 33:2, 33:8, 33:13
**litigate** [2] - 26:6, 35:13
**litigated** [1] - 26:11
**litigating** [2] - 24:11, 36:10
**litigation** [8] - 6:25, 11:10, 23:25, 24:1, 26:13, 34:9, 35:9, 37:1
**LITIGATION** [1] - 1:4
**LLC** [4] - 1:15, 1:18, 2:5, 2:9
**LLP** [2] - 2:2, 2:6
**local** [1] - 21:3
**Lockard** [4] - 22:2, 23:17, 25:2, 34:18
**LOCKARD** [5] - 2:7, 22:1, 23:17, 25:2, 34:17
**log** [4] - 21:10, 21:20, 22:11, 22:16
**logical** [1] - 35:17
**London** [1] - 32:19
**look** [7] - 8:14, 12:22, 16:6, 17:2, 19:13, 20:5, 36:16
**looked** [1] - 25:15
**looking** [5] - 5:3, 22:14, 26:20
**Louissaint** [1] - 31:25
**love** [1] - 18:22
**Ltd** [2] - 2:5, 2:9

**M**

**Macau** [1] - 10:10
**Maedler** [1] - 33:12
**MAEDLER** [1] - 33:12
**Maggie** [1] - 11:15
**main** [1] - 13:4
**management** [2] - 5:12, 31:23
**manner** [1] - 19:7
**Martinez** [7] - 30:4, 30:8, 30:11, 30:13, 30:14, 30:23, 31:10
**massive** [1] - 16:3
**Master** [1] - 3:2
**master** [5] - 10:22, 11:2, 13:11, 18:10, 19:3
**MASTER** [1] - 1:11
**matter** [18] - 4:19, 8:15, 10:1, 10:12, 20:3, 20:5, 20:7, 20:8, 22:20, 22:24, 23:6, 24:2, 24:21, 28:18, 30:4, 30:16, 32:12, 38:5
**matters** [1] - 11:20
**MAZIE** [1] - 1:15
**MCGOWIN** [3] - 30:12, 31:8, 31:14
**McGowin** [1] - 30:12
**McKay** [2] - 1:23, 38:11
**McKay-Soule** [2] - 1:23, 38:11
**MCL** [8] - 24:16, 25:23, 26:24, 27:12, 27:14, 27:19, 28:8
**MDL** [8] - 24:16, 26:9, 26:14, 27:17, 34:2, 34:8, 35:4, 35:8
**MDL's** [1] - 35:25
**mean** [4] - 9:2, 28:7, 34:10, 36:10
**measure** [2] - 14:8, 16:16
**mechanical** [1] - 1:25
**meet** [6] - 13:3, 14:14, 16:24, 17:1, 21:14, 22:3
**meeting** [2] - 33:14, 36:23
**Megan** [2] - 1:23, 38:11
**megansoule430@gmail.com** [1] - 1:23
**memory** [1] - 6:13
**mentioned** [1] - 20:1
**merits** [1] - 9:17
**mid** [1] - 6:14

**might** [3] - 10:2, 22:16, 22:17
**Mills** [1] - 33:10
**MILLS** [1] - 33:10
**mind** [1] - 35:14
**minute** [1] - 3:11
**mischaracterization** [1] - 9:13
**Mitchell** [1] - 1:8
**modification** [1] - 6:17
**modified** [1] - 4:16
**modify** [2] - 19:6, 25:19
**moment** [1] - 15:10
**month** [4] - 5:6, 6:1, 33:8, 35:11
**months** [1] - 27:12
**MORRIS** [1] - 2:2
**Morris** [2] - 13:19, 32:11
**most** [1] - 11:6
**motion** [24] - 6:5, 6:6, 8:12, 10:5, 10:17, 18:20, 18:22, 18:23, 19:1, 19:4, 19:5, 19:14, 19:17, 21:21, 22:20, 24:15, 29:5, 30:16, 30:19, 30:25, 31:2, 31:5
**motions** [3] - 30:22, 36:15, 36:21
**move** [18] - 6:3, 8:4, 8:7, 9:18, 10:19, 10:21, 14:23, 15:5, 16:22, 18:17, 19:18, 19:20, 20:6, 25:23, 26:24, 28:4, 28:7
**MR** [39] - 3:15, 3:23, 4:14, 4:20, 6:11, 7:19, 8:16, 8:24, 9:17, 11:3, 15:13, 18:8, 19:12, 20:9, 20:21, 21:11, 23:1, 23:7, 24:3, 27:2, 27:24, 28:20, 28:23, 29:3, 29:19, 29:22, 30:5, 30:12, 31:8, 31:14, 31:17, 32:10, 33:3, 33:17, 33:22, 34:13, 36:25, 37:7, 37:8
**MS** [11] - 13:18, 13:21, 15:7, 16:14, 18:2, 18:11, 19:10, 22:1, 23:17, 25:2, 34:17
**mute** [1] - 4:3

**N**

**Nagle** [1] - 32:1

**name** [1] - 27:10
**named** [1] - 20:7
**names** [1] - 31:15
**narrow** [3] - 17:11, 21:22, 22:8
**NE** [1] - 2:8
**near** [1] - 16:19
**necessarily** [1] - 8:7
**necessary** [3] - 19:5, 19:18, 21:21
**need** [19] - 4:24, 10:4, 17:4, 21:15, 22:18, 22:19, 24:8, 24:14, 24:17, 26:2, 26:7, 26:15, 26:19, 26:25, 28:21, 30:1, 35:5, 35:13, 36:17
**needed** [4] - 19:15, 20:18, 23:21, 25:24
**needs** [2] - 25:17, 26:15
**negotiations** [1] - 34:21
**never** [5] - 7:7, 7:24, 14:24, 25:11, 25:12
**NEW** [1] - 1:1
**new** [5] - 11:22, 15:9, 20:7, 26:22, 37:5
**New** [6] - 1:9, 1:16, 1:19, 23:25, 24:15, 24:17
**next** [11] - 5:8, 5:12, 10:21, 17:24, 18:4, 21:9, 23:3, 30:20, 33:8, 33:14, 34:25
**night** [1] - 14:2
**nine** [3] - 25:7, 31:7, 31:15
**nobody** [1] - 3:7
**none** [1] - 11:18
**nonetheless** [1] - 6:16
**nose** [1] - 3:9
**nosebleed** [2] - 3:6, 3:8
**nothing** [13] - 5:10, 7:14, 15:5, 18:8, 28:9, 29:3, 29:10, 32:2, 32:6, 32:9, 32:18, 32:21, 32:24
**notices** [1] - 11:10
**notion** [1] - 27:8
**November** [11] - 5:12, 5:15, 5:17, 5:18, 6:14, 11:9, 11:18, 12:1, 12:5, 25:10, 34:20
**number** [13] - 10:22, 11:15, 11:16, 12:9, 23:9, 25:8, 31:19, 31:20, 32:4, 33:4,

33:5
**NUMBER** [1] - 1:3
**numbered** [1] - 11:5
**numbers** [1] - 26:21

**O**

**O'Brien** [1] - 20:13
**objected** [1] - 34:6
**observation** [1] - 36:12
**obtain** [2] - 6:16, 7:10
**obvious** [1] - 7:4
**obviously** [6] - 11:4, 15:13, 15:21, 15:25, 19:13, 24:20
**occur** [2] - 8:10
**occurred** [1] - 29:13
**occurs** [1] - 23:22
**October** [2] - 5:5, 6:13
**OF** [1] - 1:1
**Official** [1] - 1:23
**OFFICIAL** [1] - 38:1
**Olaphant** [1] - 33:5
**one** [8] - 5:1, 7:3, 11:8, 21:6, 25:21, 27:3, 27:23, 29:4
**one-sided** [1] - 25:21
**ongoing** [1] - 34:3
**open** [4] - 25:21, 27:15, 27:18, 34:24
**open-ended** [3] - 25:21, 27:15, 34:24
**open-endedness** [1] - 27:18
**opinion** [1] - 29:7
**opportunity** [1] - 9:5
**order** [35] - 4:21, 6:3, 7:12, 7:20, 8:2, 8:9, 10:8, 10:22, 11:2, 11:4, 11:8, 11:15, 11:19, 12:8, 12:9, 12:24, 13:11, 13:22, 14:24, 15:5, 16:24, 18:10, 18:17, 19:3, 19:5, 19:6, 19:14, 27:7, 27:13, 31:15, 32:2, 32:6, 32:18, 32:21, 32:24
**ordered** [5] - 6:8, 7:13, 8:25, 10:14, 10:15
**orderly** [2] - 11:7, 15:22
**orders** [5] - 15:23, 27:20, 30:2, 30:22, 31:22
**original** [2] - 4:6, 27:13
**Orleans** [1] - 1:19
**outside** [2] - 6:22,

10:6
**outstanding** [1] - 20:14
**own** [1] - 9:15

**P**

**P-A-T-R-I-C-K** [1] - 32:19
**p.m** [4] - 1:10, 3:3, 29:16, 37:9
**page** [2] - 11:8, 21:18
**pages** [5] - 5:14, 36:5, 36:22
**papers** [3] - 10:17, 10:18, 21:3
**paraphrase** [1] - 5:16
**parenthetically** [1] - 11:24
**Parker** [1] - 33:6
**Parkway** [1] - 1:16
**part** [9] - 9:8, 12:24, 15:4, 18:23, 18:24, 22:22, 27:9, 29:10, 29:12
**particular** [2] - 8:15, 20:16
**parties** [11] - 6:23, 13:19, 16:25, 21:14, 22:7, 24:10, 26:2, 26:15, 26:25, 27:16, 35:23
**parts** [2] - 12:3, 12:4
**party** [1] - 25:11
**passed** [5] - 6:4, 11:22, 19:22, 21:4, 30:15
**path** [1] - 34:15
**Patrick** [2] - 32:19, 32:20
**Paulette** [1] - 32:8
**pausing** [1] - 13:14
**pending** [4] - 21:1, 26:8, 33:20, 34:23
**Pennsylvania** [1] - 2:4
**per** [2] - 16:23, 34:1
**perhaps** [2] - 17:10, 36:17
**period** [1] - 24:12
**permissible** [1] - 31:10
**permission** [9] - 4:11, 7:6, 7:10, 9:22, 12:15, 14:11, 14:17, 14:22, 14:25
**permit** [4] - 5:5, 5:19, 6:5, 6:15
**permitted** [2] - 6:6, 7:2
**perplexing** [1] - 3:6
**personal** [1] - 24:1

**perspective** [4] - 11:2, 15:21, 19:13, 28:3
**PFS's** [1] - 33:6
**Pharma** [1] - 2:10
**Pharmaceutical** [1] - 2:9
**Pharmaceuticals** [3] - 2:4, 2:5, 2:9
**Philadelphia** [1] - 2:4
**phone** [2] - 4:3, 37:5
**Piedmont** [1] - 2:8
**plaintiff** [7] - 5:7, 20:7, 28:24, 32:2, 32:5, 32:9, 32:17
**Plaintiffs** [2] - 1:17, 1:20
**plaintiffs** [30] - 3:14, 4:21, 5:11, 6:6, 7:3, 7:14, 8:1, 9:4, 9:14, 10:16, 10:18, 10:25, 13:24, 14:14, 15:4, 16:12, 16:21, 16:25, 17:21, 18:14, 20:22, 21:12, 22:4, 23:8, 25:22, 26:23, 28:23, 35:1, 36:8, 37:1
**plaintiffs'** [10] - 4:8, 11:2, 13:12, 13:15, 17:9, 20:20, 21:9, 27:9, 28:2, 29:5
**plate** [1] - 16:7
**point** [21] - 6:5, 11:8, 11:19, 12:9, 14:13, 14:19, 16:18, 18:12, 22:7, 22:12, 25:25, 26:2, 26:7, 26:12, 27:3, 27:19, 34:25, 35:5, 35:7, 35:14
**points** [1] - 12:9
**portions** [1] - 22:16
**position** [14] - 4:19, 4:20, 9:24, 16:12, 17:9, 19:21, 24:7, 25:14, 26:18, 34:2, 35:21, 36:4, 36:5
**positions** [2] - 10:19, 17:16
**positive** [1] - 13:5
**possible** [1] - 5:25
**possibly** [1] - 4:15
**posture** [1] - 22:7
**potentially** [3] - 14:7, 17:1, 19:18
**practice** [1] - 18:23
**preclude** [1] - 10:3
**precludes** [1] - 11:23
**predicated** [1] - 27:8
**prejudice** [2] - 30:21, 31:2
**prepare** [1] - 14:3

**present** [5] - 11:7, 18:25, 22:20, 22:24, 26:3
**presentation** [1] - 10:17
**presented** [1] - 24:22
**presenting** [1] - 8:1
**presently** [1] - 8:11
**preservation** [1] - 11:11
**preserve** [1] - 16:12
**preserved** [1] - 10:19
**preserving** [1] - 17:16
**presuming** [1] - 6:2
**prevailed** [1] - 28:6
**prevented** [1] - 7:5
**previously** [3] - 17:20, 25:13, 25:20
**Prinston** [1] - 2:4
**Priselac** [3] - 13:18, 16:9, 17:25
**PRISELAC** [8] - 2:3, 13:18, 13:21, 15:7, 16:14, 18:2, 18:11, 19:10
**privilege** [2] - 21:10, 22:10
**probate** [1] - 21:3
**problem** [6] - 19:25, 20:1, 31:4, 34:14, 35:12, 36:3
**procedural** [2] - 18:13, 18:19
**procedure** [1] - 4:2
**Procedure** [1] - 9:11
**proceed** [6] - 3:11, 15:22, 16:1, 16:5, 24:8, 35:4
**proceeding** [4] - 15:24, 24:10, 26:10, 33:25
**proceedings** [2] - 24:13, 38:5
**Proceedings** [2] - 1:25, 29:14
**PROCEEDINGS** [1] - 3:1
**process** [6] - 7:9, 13:23, 16:25, 24:15, 24:17, 36:20
**produce** [9] - 11:15, 11:17, 11:22, 14:11, 14:23, 14:24, 15:1, 15:8, 17:18
**produced** [11] - 1:25, 11:18, 15:6, 16:16, 17:2, 17:15, 17:23, 18:1, 18:4, 19:16, 19:24
**producing** [1] - 20:2

**production** [5] - 11:13, 14:16, 14:21, 17:17, 18:15
**productive** [1] - 22:4
**products** [1] - 16:2
**PRODUCTS** [1] - 1:3
**profit** [1] - 16:3
**progress** [1] - 36:7
**prohibited** [1] - 9:1
**proposal** [1] - 25:15
**propose** [1] - 34:25
**proposing** [1] - 14:6
**protective** [7] - 6:3, 7:11, 14:24, 15:5, 18:17, 19:5, 19:14
**protocols** [5] - 7:6, 9:3, 9:9, 9:10, 9:15
**provide** [8] - 8:14, 12:14, 12:21, 13:1, 14:9, 16:11, 19:8, 23:12
**provided** [4] - 11:9, 11:10, 12:1, 12:7
**provides** [1] - 17:10
**provisions** [2] - 11:5, 14:11
**purpose** [1] - 10:7
**purposes** [1] - 36:6
**pursuant** [1] - 15:23
**pursue** [2] - 8:12, 36:17
**pursued** [1] - 7:6
**put** [2] - 27:3, 28:19
**putting** [1] - 16:7

**Q**

**quite** [2] - 17:12, 25:15
**quoting** [1] - 5:14

**R**

**radar** [1] - 28:19
**raise** [2] - 27:22, 28:18
**raised** [1] - 17:20
**rather** [3] - 17:12, 30:24, 34:24
**RE** [1] - 1:3
**re** [1] - 33:2
**re-list** [1] - 33:2
**reach** [1] - 19:2
**reaching** [1] - 18:24
**read** [1] - 4:10
**ready** [1] - 28:4
**realizes** [1] - 15:15
**really** [16] - 6:22, 6:24, 7:4, 9:13, 9:14, 12:6, 12:25, 13:2, 16:17, 25:5, 25:18, 25:21,

26:18, 26:22, 26:24, 33:23
**reaped** [1] - 16:3
**reason** [3] - 5:24, 16:4, 37:4
**reasonable** [2] - 31:5, 35:18
**receive** [2] - 4:16, 16:22
**received** [3] - 3:13, 10:23, 33:6
**recent** [1] - 14:20
**recently** [1] - 34:2
**recess** [1] - 29:13
**recision** [1] - 6:17
**record** [3] - 8:17, 22:22, 38:5
**recorded** [1] - 1:25
**records** [2] - 17:2, 20:2
**reevaluate** [1] - 34:4
**reflection** [1] - 6:24
**refusal** [1] - 6:7
**regard** [1] - 30:22
**regarding** [1] - 11:10
**related** [1] - 34:9
**relatively** [1] - 14:20
**release** [1] - 12:16
**relevant** [1] - 14:10
**remain** [1] - 20:14
**remaining** [3] - 30:7, 31:23, 33:8
**remove** [1] - 31:18
**report** [2] - 10:24, 14:1
**Reporter** [2] - 1:23, 38:12
**REPORTER'S** [1] - 38:1
**reports** [1] - 3:13
**represented** [1] - 27:11
**request** [4] - 3:11, 17:11, 28:6, 30:20
**requested** [2] - 14:15, 22:6
**requesting** [2] - 31:21, 33:7
**require** [2] - 20:8, 23:12
**requires** [1] - 20:11
**reschedule** [1] - 3:5
**reserve** [2] - 16:21, 22:9
**resolution** [2] - 19:24, 36:18
**resolve** [1] - 21:23
**resolved** [1] - 30:3
**respect** [10] - 4:19, 10:24, 11:1, 13:21, 13:22, 17:16, 19:21,

19:25, 22:10, 23:21
**respective** [2] - 17:16, 33:6
**respond** [3] - 6:9, 13:16, 19:18
**response** [3] - 9:17, 10:17, 30:18
**Ret** [1] - 3:2
**RET** [1] - 1:11
**returnable** [1] - 31:22
**review** [2] - 17:4, 22:18
**Rice** [1] - 32:1
**Richard** [1] - 32:16
**Rick** [1] - 33:12
**rights** [1] - 22:10
**ripe** [1] - 10:13
**RMR** [1] - 38:11
**Road** [1] - 2:8
**Robert** [1] - 29:15
**ROBERT** [1] - 1:12
**room** [1] - 3:20
**Roseland** [1] - 1:16
**route** [3] - 10:1, 10:2, 10:16
**Roy** [1] - 33:5
**rule** [1] - 22:12
**rules** [2] - 7:22, 16:1
**Rules** [1] - 9:11
**run** [1] - 19:25
**running** [2] - 26:5, 35:12

**S**

**sanction** [2] - 4:24, 4:25
**sanctions** [9] - 6:7, 8:4, 8:7, 10:3, 10:5, 10:14, 10:19, 29:5
**scheduled** [3] - 20:13, 20:17, 20:24
**screen** [1] - 28:19
**seal** [1] - 22:23
**second** [3] - 5:19, 29:12, 33:13
**section** [1] - 12:24
**security** [8] - 11:22, 11:25, 14:3, 14:6, 14:10, 14:20, 16:11, 19:25
**see** [4] - 13:14, 14:9, 27:21, 36:16
**seeing** [2] - 8:14, 12:20
**seeking** [2] - 17:21, 31:7
**sense** [2] - 13:5, 17:24
**sent** [1] - 4:5
**separate** [2] - 35:22,

36:6
**September** [4] - 12:4, 12:5, 14:21, 29:6
**sequence** [1] - 6:12
**sequentially** [2] - 26:11, 35:8
**serious** [2] - 3:7, 3:17
**served** [1] - 25:9
**set** [3] - 6:23, 20:14, 30:25
**SETH** [1] - 2:2
**Seth** [2] - 3:23, 27:2
**settlement** [4] - 35:19, 35:22, 36:6, 36:7
**seven** [1] - 33:5
**several** [2] - 11:5, 11:17
**Shawna** [2] - 30:11, 30:13
**shield** [1] - 7:25
**shielding** [1] - 9:12
**short** [1] - 29:13
**shortly** [3] - 23:11, 27:20, 29:9
**show** [9] - 30:2, 30:24, 31:16, 31:22, 32:2, 32:7, 32:18, 32:21, 32:25
**showing** [1] - 13:1
**side** [7] - 12:12, 13:13, 13:15, 17:15, 20:20, 23:15, 24:7
**sided** [1] - 25:21
**sides** [4] - 13:6, 19:22, 20:22, 36:19
**simply** [5] - 21:13, 21:16, 21:19, 30:24, 35:6
**single** [1] - 17:4
**situation** [2] - 6:19, 15:15
**six** [3] - 31:23, 31:24, 33:4
**slater** [1] - 24:2
**SLATER** [20] - 1:15, 1:15, 3:15, 4:20, 7:19, 9:17, 11:3, 15:13, 18:8, 19:12, 24:3, 27:24, 28:20, 28:23, 29:19, 29:22, 33:22, 34:13, 36:25, 37:7
**Slater** [12] - 3:15, 4:18, 6:12, 7:18, 9:16, 11:3, 13:23, 14:4, 15:12, 18:7, 27:22, 33:22
**Slater's** [1] - 25:7
**Solco** [1] - 2:4
**sold** [1] - 16:2

**solution** [2] - 15:6, 17:23
**someone** [1] - 36:13
**sometime** [2] - 29:6, 34:25
**sometimes** [1] - 36:13
**somewhat** [1] - 15:24
**soon** [2] - 5:25, 21:23
**sorry** [2] - 18:11, 29:17
**sort** [4] - 22:6, 25:24, 27:7, 35:1
**sought** [1] - 9:9
**Soule** [2] - 1:23, 38:11
**sounds** [2] - 34:16, 35:17
**South** [1] - 2:3
**speaking** [3] - 4:2, 4:3, 35:21
**special** [5] - 10:22, 11:1, 13:11, 18:10, 19:3
**Special** [1] - 3:2
**SPECIAL** [1] - 1:11
**specific** [1] - 22:5
**specificity** [1] - 22:6
**spreadsheet** [20] - 12:13, 12:17, 14:3, 14:6, 15:4, 15:6, 15:9, 16:9, 16:15, 16:20, 16:23, 17:3, 17:5, 17:8, 17:10, 17:15, 17:23, 18:1, 18:3
**stand** [4] - 8:11, 11:1, 23:6, 24:2
**standpoint** [4] - 18:13, 18:19, 28:19, 29:2
**stands** [1] - 8:3
**Stanoch** [4] - 20:21, 21:11, 22:14, 23:7
**STANOCH** [5] - 1:18, 20:21, 21:11, 23:1, 23:7
**stark** [1] - 32:4
**Stark** [1] - 32:5
**start** [5] - 4:8, 24:14, 24:17, 26:14, 31:24
**starting** [1] - 28:3
**state** [9] - 23:25, 24:8, 24:13, 25:6, 33:20, 34:10, 34:14, 35:3
**statement** [1] - 8:20
**STATES** [2] - 1:1, 1:13
**States** [5] - 8:1, 15:23, 16:3, 16:4, 29:15
**STATUS** [1] - 1:5
**status** [6] - 3:13, 10:24, 11:7, 13:11, 14:1, 27:25

**stay** [5] - 24:13, 25:20, 34:4, 34:22, 34:24
**stayed** [1] - 25:22
**stenography** [1] - 1:25
**Stephanie** [2] - 31:20, 32:4
**Steve** [2] - 20:10, 30:6
**STEVEN** [1] - 2:7
**still** [7] - 5:13, 5:14, 5:19, 14:5, 15:8, 16:22, 36:20
**stipulation** [2] - 25:20, 32:12
**stipulations** [2] - 25:11, 34:22
**stop** [1] - 3:10
**stopping** [1] - 28:9
**streaming** [1] - 3:9
**Street** [2] - 1:19, 2:3
**Streets** [1] - 1:8
**strictly** [1] - 16:15
**strongly** [1] - 15:25
**stuff** [1] - 36:21
**subject** [1] - 37:1
**submission** [1] - 11:21
**submissions** [4] - 4:6, 4:7, 10:13, 12:19
**submit** [2] - 22:23, 36:3
**submitted** [4] - 14:1, 20:12, 23:24, 31:18
**subset** [2] - 17:1, 17:5
**substitution** [1] - 21:7
**success** [3] - 30:23, 35:25, 36:1
**sufficient** [3] - 21:5, 22:15, 22:20
**suggested** [1] - 12:13
**Suite** [1] - 2:8
**supplement** [1] - 13:12
**supplemental** [3] - 23:24, 24:23, 24:24
**supplemented** [1] - 4:5
**supposed** [1] - 4:22

## T

**table** [1] - 9:8
**tailored** [1] - 17:12
**tat** [1] - 21:18
**tee** [2] - 21:21, 35:8
**teleconference** [2] - 3:1, 29:14
**TELEPHONIC** [1] - 1:5
**terms** [6] - 14:1, 22:13, 22:19, 26:20, 26:23, 34:1

**test** [1] - 17:4
**testing** [7] - 10:24, 12:10, 17:1, 17:3, 17:7, 20:2
**Teva** [17] - 2:9, 2:9, 21:10, 21:25, 22:2, 23:18, 25:3, 25:4, 25:5, 25:6, 25:9, 25:10, 26:5, 30:6, 34:2, 34:18, 34:19
**thanksgiving** [1] - 29:20
**THE** [3] - 1:1, 1:11, 1:12
**they've** [2] - 7:7, 9:6
**Thomas** [2] - 3:2, 33:5
**THOMAS** [1] - 1:11
**Thorn** [1] - 33:9
**THORN** [1] - 33:9
**three** [10] - 9:5, 11:16, 20:13, 21:18, 30:2, 31:17, 31:19, 31:21, 33:3, 33:7
**three-page** [1] - 21:18
**throughout** [1] - 6:19
**thumbs** [2] - 21:16
**timeliness** [1] - 22:10
**Tina** [1] - 31:19
**tit** [1] - 21:18
**tit-for-tat** [1] - 21:18
**today** [4] - 10:23, 24:25, 30:1, 33:23
**together** [2] - 22:8, 26:15
**took** [4] - 3:9, 10:16, 16:3, 34:2
**totality** [1] - 31:9
**towards** [1] - 36:7
**track** [1] - 35:2
**tracking** [1] - 20:23
**transcript** [3] - 1:25, 5:15, 38:4
**transcription** [1] - 1:25
**Traurig** [2] - 20:10, 30:6
**TRAURIG** [1] - 2:6
**travel** [5] - 4:11, 5:4, 7:2, 7:14, 10:6
**traveling** [2] - 9:2, 10:10
**tried** [1] - 13:4
**trust** [1] - 16:7
**try** [8] - 3:18, 6:21, 14:8, 19:7, 22:8, 26:6, 30:14, 35:13
**trying** [8] - 6:16, 9:20, 10:4, 10:12, 15:8, 19:23, 19:24, 36:6
**two** [6] - 6:19, 11:15,

20:16, 23:10, 26:8, 30:3
**type** [3] - 14:9, 18:20, 18:22

## U

**U.S** [3] - 1:8, 2:5, 9:10
**ultimate** [1] - 35:1
**ultimately** [1] - 35:20
**uncontrollable** [1] - 3:6
**under** [10] - 7:22, 8:11, 10:2, 14:3, 15:9, 16:1, 16:10, 16:16, 22:23, 31:3
**underlie** [1] - 17:7
**underlying** [7] - 14:5, 16:13, 16:22, 17:11, 17:17, 17:18, 17:22
**understood** [1] - 28:16
**unequivocal** [2] - 8:18, 9:22
**unequivocally** [1] - 8:9
**unfair** [1] - 9:13
**unfortunately** [3] - 3:17, 14:19, 21:4
**United** [5] - 8:1, 15:23, 16:2, 16:4, 29:15
**UNITED** [2] - 1:1, 1:13
**unless** [1] - 28:24
**unredacted** [1] - 22:23
**up** [7] - 21:16, 21:21, 27:6, 27:16, 30:20, 30:24, 35:8
**update** [1] - 5:9
**updated** [1] - 10:23
**updates** [5] - 5:15, 5:25, 20:7, 31:17, 33:4
**USA** [1] - 2:9

## V

**V-A-U-G-H-N** [1] - 32:8
**vacate** [1] - 31:4
**validity** [1] - 7:20
**VALSARTAN** [1] - 1:3
**Vanaskie** [1] - 3:2
**VANASKIE** [34] - 1:11, 3:4, 3:17, 4:1, 4:18, 6:9, 7:17, 8:6, 8:21, 9:16, 9:20, 13:14, 13:20, 15:2, 15:11, 16:8, 17:13, 18:5, 18:9, 18:21, 19:19, 20:20, 21:8, 21:24, 22:13, 23:2, 23:14,

23:23, 24:21, 27:21, 28:16, 28:21, 29:1, 29:4
**Vaughn** [1] - 32:8
**verbally** [1] - 6:15
**via** [2] - 3:1, 29:14
**VICTORIA** [1] - 2:7
**Victoria** [4] - 22:1, 23:17, 25:2, 34:18
**view** [1] - 19:22
**vigorously** [1] - 36:10
**violation** [2] - 11:19, 12:8

## W

**wait** [2] - 9:18, 10:4
**waiting** [1] - 29:18
**waived** [1] - 19:20
**walk** [1] - 11:6
**wants** [4] - 12:21, 13:12, 28:13, 35:6
**warranted** [1] - 8:8
**ways** [3] - 36:2, 36:18
**week** [7] - 3:5, 4:5, 18:4, 23:24, 25:4, 29:7, 31:18
**welcome** [1] - 28:2
**whereby** [1] - 16:25
**WHITELEY** [1] - 1:18
**whole** [2] - 28:5, 34:7
**William** [1] - 33:11
**Williamson** [2] - 12:11
**willing** [2] - 12:22, 24:13
**withdraw** [2] - 30:16, 30:25
**witness** [1] - 7:21
**witnesses** [1] - 10:10
**Wolf** [1] - 20:25
**wolf** [1] - 21:4
**words** [1] - 17:17
**would've** [1] - 19:14
**writing** [1] - 35:24
**wrote** [1] - 25:3

## Y

**year** [5] - 9:9, 25:10, 34:20, 34:25, 37:5
**years** [3] - 9:5, 26:8, 34:1
**yesterday** [3] - 10:23, 21:14, 22:3

## Z

**Zhejiang** [1] - 2:5
**ZHP** [21] - 4:16, 4:22, 6:16, 6:23, 9:14,

10:10, 11:11, 11:19, 11:20, 12:2, 12:13, 12:21, 13:1, 13:19, 15:17, 16:9, 16:10, 16:11, 16:25, 17:18

**ZHP's** [1] - 13:8

*United States District Court*
*District of New Jersey*