# Exhibit 54

**KeyCite Yellow Flag - Negative Treatment**
Distinguished by [YCB Intern., Inc. v. UCF Trading Co., Ltd.,](#) N.D.Ill., June 12, 2012

2007 WL 2875493
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Hafsat ABIOLA, et al., Plaintiffs,
v.
Abdulsalami ABUBAKAR, Defendant.

No. 02 C 6093.
|
Sept. 28, 2007.

**Attorneys and Law Firms**

Akinwole Ogunlola, Immigration Attorneys, Chicago, IL, Angustine Agomuoh, [Kayode O. Oladele](#), Benjamin Withfield Jr. & Associates, PC, Detroit, MI, for Plaintiffs.

Ayotunde Okesanya, Partners, Attorneys and Counselors, Chicago, IL, [Ephraim C. Ugwuonye](#), ECU Associates, P.C., Washington, DC, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

[MATTHEW F. KENNELLY](#), District Judge.

**\*1** The defendant in this case failed to appear for his deposition as the Court had ordered. The plaintiffs have moved to impose a sanction; among other things, they seek entry of a default judgment. On March 19, 2007, the Court ruled that plaintiffs had established a basis for imposition of sanctions but gave defendant one final opportunity to appear for his deposition before he would be held in default. Defendant failed to appear. He has moved to reconsider the March 19, 2007 order, and plaintiffs have renewed their request to impose a sanction.

For the reasons stated below, the Court denies defendant's motion for reconsideration and imposes a sanction on defendant for his failure to appear for deposition as ordered by the Court.

**Background**

The Court will review the procedural history of the case because it provides the context for the present decision. The following discussion is largely taken from the Court's March 19, 2007 decision in this case. *See* [Abiola v. Abubakar,](#) No. 02 C 6093, 2007 WL 898197 (N.D.Ill. Mar.19, 2007).

The defendant, Abdulsalami Abubakar,[1] is a former member of the military regime that ruled Nigeria from November 1993 to May 1999. The plaintiffs are Nigerian citizens who were allegedly wrongfully detained and tortured, or whose parents were allegedly wrongfully detained and tortured, at Abubakar's behest because they criticized the military regime while it was in power. They have sued Abubakar under the Alien Tort Claims Act, [28 U.S.C. § 1350](#), and the Torture Victim Protection Act (TVPA), [28 U.S.C. § 1350](#) note, § 2(a).

Plaintiffs originally filed the case in the Eastern District of Michigan in February 2001. In early April 2001, plaintiffs asked the clerk of that court to enter Abubakar's default pursuant to Rule 55(a), saying that he had been served with summons and the complaint at Chicago State University in Chicago on February 23, 2001 but had not responded. The clerk entered Abubakar's default.

Later in April 2001, plaintiffs moved for entry of a default judgment against Abubakar. In response, Abubakar moved to set aside the Clerk's earlier entry of default, saying that although he had been in Chicago on February 23, 2001, he "did not receive service of process" but only heard about the case after he returned to Nigeria. *See* Motion to Set Aside the Clerk's Entry of Default (filed Apr. 26, 2001). Abubakar also moved for leave to file a late answer. Judge Bernard Friedman, who was presiding over the case, granted the latter motion in June 2001 and thus denied plaintiffs' motion for a default judgment. In October 2001, the judge entered an order directing the parties to complete discovery by April 15, 2002.

Plaintiffs eventually moved again for entry of a default judgment against Abubakar, saying that he had refused to make himself available for a deposition. Judge Friedman granted this motion on March 1, 2002. His order recited that plaintiffs had first noticed Abubakar's deposition for October 10, 2001, but he failed to appear. Plaintiff then obtained a court order directing Abubakar to appear for deposition on January 23, 2002, but he again failed to appear. At an ensuing hearing, Abubakar's counsel assured Judge Friedman that

Abubakar would appear for deposition on February 11, 2002. Judge Friedman admonished Abubakar's counsel that the court would consider entering a default judgment if Abubakar failed to appear. Despite this, Abubakar again failed to appear. At no time during those proceedings did Abubakar contend, or even hint, that there was any legal impediment to his appearance for or testimony at a deposition.

**\*2** On March 1, 2002, Judge Friedman entered a default judgment against Abubakar pursuant to Rule 37(b)(2)(C) due to his failure to appear for deposition. Abubakar then moved for reconsideration, arguing among other things that personal jurisdiction was lacking over him in Michigan (he had previously filed a motion for summary judgment as well). On April 25, 2002, Judge Friedman granted Abubakar's motion, vacated the default judgment, and dismissed the claims against Abubakar for lack of personal jurisdiction.

Plaintiffs then moved for reconsideration, attaching to their motion, among other things, a color photograph that showed Abubakar reading the complaint at Chicago State University. Judge Friedman granted plaintiffs' motion in part, deciding to transfer the case to this District pursuant to 28 U.S.C. § 1406(a) rather than dismiss it outright. *See* Order of July 17, 2002 at 9 ("the usual procedure should be transfer rather than dismissal").

Following the transfer of the case, this Court held a status hearing in October 2002. At that hearing, Abubakar's counsel said that he intended to move to dismiss the amended complaint. Plaintiffs objected that certain issues that Abubakar might raise had been ruled upon in Michigan or waived. The Court nonetheless set a briefing schedule, saying that it would decide what issues were appropriately raised if and when Abubakar filed his motion to dismiss.

Instead of moving to dismiss, however, Abubakar filed a motion asking the Court to rule that plaintiffs had to re-serve him with summons because the case had been transferred. The Court denied that motion on January 7, 2003. The Court's reasoned that the cases upon which Abubakar relied stood only for "the proposition that if service was not properly obtained or personal jurisdiction is lacking before transfer of a case, transfer does not cure the defect," not for the proposition "that the defendant must always be re-served following a § 1406 transfer irrespective of whether proper service had been obtained when the case was pending in the original forum." Order of Jan. 7, 2003 (docket no. 32) (citations omitted). The Court found that the defendant's argument had "nothing in its favor other than empty formalism," because the purpose of service of process had been satisfied when Abubakar was originally served with summons. *Id.* In addition, the Court noted, there was no defect either in service or personal jurisdiction, "at least not one that the defendant had preserved" at the time of the transfer. *Id.* Indeed, Abubakar did not claim in his motion that he had not been served-and any such claim would have been meritless in any event-and he had waived any objection to personal jurisdiction by answering the complaint without raising the defect via a motion under Rule 12(b) or an affirmative defense. *Id.* (citing Fed.R.Civ.P. 12(h)(1) and *Linc Finance Corp. v. Onwuteaka,* 129 F.3d 917, 921 (7th Cir.1997)).

Abubakar then moved for summary judgment, challenging subject matter jurisdiction and, despite the January 7, 2003 order, personal jurisdiction. The Court deferred discovery pending determination of the subject matter jurisdiction issue. *See* Order of Feb. 16, 2003 (docket no. 39). On June 17, 2003, the Court ruled that Abubakar had sovereign immunity for certain aspects of plaintiffs' claims but not for the claims in their entirety. *See Abiola v. Abubakar,* 267 F.Supp.2d 907 (N.D.Ill.2003). The Court again rejected Abubakar's personal jurisdiction argument for the reasons it had earlier cited. *Id. at 917.* The Court thereafter denied Abubakar's motion for reconsideration, in which he challenged, among other things, the Court's ruling on personal jurisdiction. The Court stated that even if Abubakar had not waived objection to personal jurisdiction, due process was satisfied, and thus personal jurisdiction existed under Illinois law, by reason of the service of summons upon him when he was voluntarily in Chicago. *See* Order of July 8, 2003 (docket no. 54, memorializing a longer oral ruling made on that date).

**\*3** Plaintiffs then renewed their motion to compel Abubakar to appear for deposition in this country, arguing (as they had previously, and as Judge Friedman had ruled) that Abubakar's counsel had agreed to produce Abubakar in the United States. Abubakar argued that there had been no such agreement. After considering briefs on the issue, the Court ruled that both Abubakar and plaintiffs had made an enforceable agreement to appear in this country for their depositions. Plaintiffs had held up their end of the agreement by traveling here at their own expense to be deposed, but Abubakar had reneged. The Court entered an order directing that the "[d]eposition of Gen. Abubakar is to be taken by 12/31/03 at an agreed upon place in the United States," and that discovery was to be completed

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 4 of 16
                                              PageID: 54935
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

by March 31, 2004. *See* Order of Aug. 12, 2003 (docket no. 67, memorializing a longer oral ruling on that date).

Abubakar then filed an interlocutory appeal of the Court's decision rejecting in part his sovereign immunity defense and then persuaded this Court to stay proceedings in the case pending resolution of the appeal. *See* Order of Dec. 8, 2003 (docket no. 92). The case remained under advisement in the court of appeals until late May 2005, when that court affirmed this Court's decision on the sovereign immunity issue. *See* *Enoharo v. Abubakar,* 408 F.3d 877 (7th Cir.2005). The court of appeals said, however, that plaintiffs' claims were subject to the TVPA, which requires a plaintiff to exhaust available judicial remedies in the place where the underlying conduct occurred, unless there is no such available remedy. *Id.* at 885-86. The court remanded for consideration of whether plaintiffs should be allowed to assert a claim under the TVPA and, if so, for consideration of the issue of exhaustion.

On remand, this Court permitted plaintiffs to pursue a TVPA claim. Order of June 28, 2005 (memorializing a longer oral ruling on that date). Plaintiffs asserted that they were excused from the TVPA's exhaustion requirement because they had no available judicial remedy in Nigeria. The Court held an evidentiary hearing and ruled in plaintiffs' favor on the exhaustion issue. *See* *Abiola v. Abubakar,* 435 F.Supp.2d 830 (N.D.Ill.2006). Abubakar thereafter advised that he had filed a notice of appeal from the Court's ruling. The Court said that it did not believe the order was properly appealable and that the case would proceed unless and until it was stayed. Abubakar's counsel said he intended to file a motion to stay, but he never did so.

On August 16, 2006, Abubakar's counsel said that he intended to ask this Court to certify the TVPA exhaustion issue for interlocutory appeal. The Court set a schedule for briefing that motion but noted that the case had not been stayed and that it would not entertain a stay unless and until it certified the case for appeal or the court of appeals accepted jurisdiction of the attempted interlocutory appeal. At the same August 16 hearing, the Court noted that it had already ruled that Abubakar was required to appear in this country for his deposition, though it asked plaintiffs not to take steps to schedule the deposition until the Court had ruled on whether to allow an interlocutory appeal.

**\*4** On September 20, 2006, the Court denied Abubakar's request to certify the case for an interlocutory appeal. *Abiola v. Abubakar,* No. 02 C 6093, 2060 WL 2714831 (N.D.Ill. Sept. 20, 2006)2060 WL 2714831 (N.D.Ill. Sept. 20, 2006). The Court ordered fact discovery to be completed by June 19, 2007 and also set an expert disclosure and discovery schedule, advising counsel that these were firm deadlines.

On September 23, 2006, plaintiffs' counsel forwarded a notice of deposition to Abubakar's counsel, setting November 15, 2006 as the date for Abubakar's deposition and taking the Court up on an earlier offer to allow the deposition to be conducted in its attorney-witness room. Defendant and his counsel failed to appear on that date. Plaintiffs then filed a motion for sanctions, arguing that Abubakar should be held in contempt or in the alternative "for such other relief as this Court may deem appropriate." Pl. Mot. for Order to Show Cause at 5.

In a written response to the motion, Abubakar's counsel stated that in a conversation on October 3, 2006, plaintiffs' counsel made reference to a notice of deposition. Abubakar's counsel said that he first received the notice on October 10, 2006 and then called plaintiffs' counsel to advise that neither he nor his client could be available on the scheduled date of November 15, 2006. Abubakar argued that once plaintiffs' counsel was told that the date was "not convenient or practicable," plaintiffs' counsel had a duty to arrange for another date. Def. Opp. to Pl. Mot. to Show Cause ¶ 7. Abubakar also referred to issues regarding the proper scope of discovery but did so only in vague and general terms. *Id.* ¶ 8.

In reply, plaintiffs' attorney stated that he "made [a] diligent attempt to confer with the Defendant's attorney before fixing the date of the Defendant's deposition but the Defendant's attorney informed the Plaintiffs['] attorneys that he would not commit himself to any date because he knew that his client will never appear for deposition." Pl. Reply to Def. Resp. to Mot. for Sanctions ¶ 2. Plaintiffs' attorney also stated that Defendants' attorney had advised him that "even if this Honorable Court grants a default judgment as a result of his client['s] failure to attend deposition, he (the Defendant's counsel) would appeal the decision which would further prolong the case for another period of not less than six years." *Id.* ¶ 4. Plaintiffs' counsel said that he sent the notice setting the deposition for November 15, 2006 only after this expression by Abubakar's counsel of refusal to cooperate in scheduling the deposition. *Id.* ¶ 5. Plaintiffs' counsel said that contrary to the claim of defendant's counsel, he had received

no communication from counsel until an e-mail dated October 18, 2006.

Plaintiffs' counsel also advised the Court that Abubakar's counsel had told plaintiff's counsel that he had advised the Nigerian government to take steps in that country to attempt to foreclose the taking of Abubakar's deposition. *See id.* ¶ 18. Consistent with these representations by Abubakar's counsel, plaintiffs advised, the Nigerian government had filed an action in Nigeria on or about February 14, 2007-*after* the filing of plaintiffs' motion for sanctions-naming plaintiffs' counsel and Abubakar as defendants. In that action, the Nigerian government requested a court order to bar or limit Abubakar from giving testimony in the case and an order against plaintiffs' counsel that any effort to procure such testimony would be a crime under Nigeria's Official Secrets Act. *See id.,* attached exhibit.

### The Court's March 19, 2007 order

**\*5** In an order dated March 19, 2007, the Court discussed the history of the case as recited above and discussed the appropriateness of sanctioning Abubakar for failing to appear as ordered for deposition. Among other things, the Court noted that the Rules of Civil Procedure specifically permit imposition of a variety of sanctions for failure to appear at a deposition. *Abiola,* 2007 WL 898197, at \*5 (citing Fed. Civ. Civ. P. 37(b)(2)(A-C) & (d)). The Court also noted that Abubakar had made no prior request for a protective order, even though the Court had invited him to do so on August 16, 2006. *Id.*

The Court stated that it was not "writ[ing] on a clean slate," given Abubakar's failure to appear for his deposition on multiple occasions when the case was pending in the Eastern District of Michigan, and Judge Friedman's earlier decision to enter a default judgment against Abubakar due to his non-appearance. *Id.* at \*6. The Court stated that Abubakar's counsel had made it clear that Abubakar would not appear for a deposition, "despite his earlier commitments and the Court's orders." *Id.* The Court suggested that the then-pending effort in Nigeria to bar Abubakar's appearance had come too late in the day to preclude imposition of sanctions on Abubakar, noting that "on the [multiple] occasions when Abubakar's deposition was scheduled while the case was still pending in Michigan ... neither Abubakar nor the Nigerian government interposed any claim that Abubakar's testimony would be in the least bit improper." *Id.* Having made a binding commitment to come to this country to give a deposition, the Court stated, Abubakar was "not now entitled simply to wave [it] away with his hand." *Id.*

The Court opined that it would be acting within its discretion were it to enter a default judgment, noting that several "warning shots" had been given throughout the case making it clear to Abubakar and his counsel that Abubakar faced a severe sanction. *Id.* The Court also noted that there had been "a clear pattern of knowing, indeed studied, noncompliance with the orders of this Court and Judge Friedman regarding the taking of Abubakar's deposition," making entry of judgment an appropriate sanction. *Id.* at \*7. The Court stated, however, that it was hesitant to impose a default judgment as a sanction, due to a "slight ambiguity concerning the setting of the actual date for Abubakar's deposition." *Id.* On the other hand, the Court rejected Abubakar's contention that plaintiffs' counsel was required to get the okay of or consult with defense counsel before scheduling the deposition, *see id.* (citing Fed.R.Civ.P. 30(b)(1)), noting that if Abubakar had a problem with the date plaintiffs had set, it was "incumbent on [his] counsel to move for a protective order ...." *Id.*

The Court determined, however, that before entering a default judgment, it wanted to make it crystal clear what Abubakar's obligations were and what consequences he would face for noncompliance. *Id.* It set "a final date" for Abubakar and his counsel to appear for deposition-April 13, 2007 at 9:00 a m.-and stated that if either of them failed to appear, the Court would, "on that date, enter Abubakar's default and ... set the matter for a prove-up of plaintiffs' damages." *Id.* The Court also stated (for reasons that it explained) that it would not entertain any motions to move the date of the deposition, and that it likewise would not entertain any belated motions for protective order or to alter the scope of the deposition, stating that "[t]he time for such motions came and went long ago (both in 2001, when the deposition was originally scheduled to take place in Detroit, and in late November 2006, when it was scheduled to take place here)." *Id.* at 8 footnote omitted).

**\*6** There followed a flurry of filings by Abubakar. The next day, March 20, 2007, Abubakar filed a supplemental brief that he had not sought or obtained leave to file, challenging certain statements in plaintiffs' reply memorandum. *See* docket no. 206. On March 22, 2007, Abubakar filed a motion to strike plaintiffs' reply memorandum, *see* docket no. 209, a motion for reconsideration of the Court's March 19 order, *see* docket no. 210, and a motion for continuance of the deposition date. *See* docket no. 211.

On April 6, 2007, the Court denied Abubakar's motion for continuance of the deposition date, primarily because Abubakar's counsel reported that his client would not appear for the deposition in light of the fact that a Nigerian court had barred him from doing so. *See* Order of Apr. 6, 2007. The Court stated, however, that it would defer entry of Abubakar's default pending briefing of the motion for reconsideration. It gave Abubakar the opportunity to file a supplemental brief in support of that motion by April 13, 2007. Abubakar then sought and obtained an extension of time, through May 1, 2007.

Abubakar filed his supplemental memorandum on May 1. The next day, after reviewing the memorandum, the Court entered an order directing Abubakar to respond to certain questions prompted by statements or suggestions in his supplemental memorandum, including whether he would appear in Nigeria for a deposition if the Court determined that to be appropriate and whether he would testify on the subjects likely to be raised, and whether he would answer written deposition questions pursuant to Federal Rule of Civil Procedure 32 if the Court was willing to consider that approach. *See* Order of May 2, 2007 (docket no. 221). The Court thereafter granted Abubakar's request for an extension of time to respond to those questions, reinforcing that it wanted to know not just whether Abubakar would appear in Nigeria or would accept written questions, but whether he "is willing and able to *testify*-not to decline to testify-regarding the subjects that are likely to come up given the issues involved in this case." Order of May 6, 2007 (docket no. 223) (emphasis in original).

Following further briefing, the Court is now prepared to rule on Abubakar's motion for reconsideration and to make a final ruling on plaintiffs' motion for sanctions.

### Abubakar's post-March 19, 2007 filings

The Court will discuss in sequence the issues raised in each of the motions and memoranda filed by Abubakar since the March 19, 2007 order.

### 1. Defendant's supplemental opposition to motion for sanctions (docket no. 206)

Abubakar argues that there was never an agreement to hold a deposition on a particular date. Def. Suppl. Opp. ¶ 2. As the Court stated in its March 19 order, no such agreement was required. Rather, plaintiffs were required only to give reasonable notice of the deposition date. *See* Fed.R.Civ.P. 30(b)(1). If Abubakar had a problem with that date, it was incumbent upon him to secure an agreement to a different date or, failing that, to seek a protective order. He did neither.

**\*7** Abubakar challenges the motives of plaintiffs' counsel, saying that he has sought to generate support for plaintiffs in Nigeria as well as opposition to the Nigerian government and has filed motions for "propaganda value." Def. Suppl. Opp. ¶¶ 3, 7. The motives of plaintiffs' counsel are of little concern to the Court. In any event, Abubakar has failed to substantiate his accusations about plaintiffs' counsel.

Abubakar says that his counsel had "no detailed knowledge of the proceedings in Nigerian courts regarding an injunction against Abubakar's availability for deposition" and that he only "saw these documents" (the written request for an injunction) when plaintiffs filed them. *Id.* ¶¶ 4-5. The Court will address later the effect of the Nigerian court order. The Court notes, however, that the statement by Abubakar and his counsel is something less than a denial of prior knowledge or involvement in the injunction request.

The Court did not rely in its March 19 order on the possibility that a Nigerian court would impose a sanction on plaintiff's counsel if he sought to pursue Abubakar's deposition. *See id.* ¶ 6. The Court likewise did not take into account the contention that settlement efforts had failed or why those efforts failed. *See id.* ¶ 8.

Abubakar's contentions that plaintiffs have not completed certain discovery sought by Abubakar are immaterial to the claim regarding Abubakar's own non-compliance. *See id.* ¶ 9. Nothing in the Federal Rules of Civil Procedure allows a party to refuse to participate in discovery, let alone to ignore a court order to appear for a deposition, because of discovery allegedly outstanding from the other side. If Abubakar wanted to obtain compliance with certain discovery requests before appearing for deposition, his remedy was to seek an appropriate order. He did not do so.

### 2. Defendant's motion to strike plaintiff's reply (docket no. 209)

The Court rejects Abubakar's claim that it was inappropriate for plaintiffs to raise in their reply on the motion for sanctions the matter of the injunction sought from a Nigerian court. *See* Def. Mot. to Strike ¶ 1. This was an event that had taken place after plaintiffs had filed their motion for sanctions, and

thus they could not have discussed it in their original motion papers.

As stated in the previous section, the Court did not take into account in its March 19 order the possibility that plaintiffs' counsel would be subjecting himself to sanctions in Nigeria if he pursued taking Abubakar's deposition. *See id.* ¶¶ 2-4. The Court will, however, discuss that point later in this decision.

Finally, now that defendants have had multiple opportunities to respond to the arguments in plaintiffs' reply, there is no reason to strike the reply as Abubakar has requested.

**3. Defendant's motion to reconsider (docket no. 210)**
Abubakar is obviously correct that the Court did not review his March 20, 2007 supplemental brief before issuing its March 19, 2007 order-the supplemental brief had yet to be filed at that point. *See* Def. Mot. to Reconsider ¶ 6. The Court notes, however, that plaintiffs' reply on the motion for sanctions was filed on March 7, 2007 and that Abubakar did not seek to strike the reply or file a supplemental memorandum until nearly two weeks later, after the Court had already issued its initial ruling on the motion for sanctions. In any event, the Court has now considered all of the arguments made by Abubakar in his post-March 19 filings.

 *8  There is no need for the Court to re-explain the basis for its determination that it had become clear, as the Court stated in its March 19 order, that Abubakar had no intention of appearing in this country for his deposition as Judge Friedman and this Court long ago ordered. *See id.* ¶¶ 7-8. The history of the case speaks for itself in this regard.

The Court will not retract its comment that Abubakar did not have to appear and defend the case, but having done so, he must comply with the Court's orders and his own binding commitments. *See id.* ¶¶ 9-13. Failure to respond to a summons does not subject one to a contempt finding, and a defendant's failure to appear does not, as Abubakar's counsel rather oddly suggests, "render[ ] the court unable to perform its function." *Id.* ¶ 10. Rather, when a defendant does not appear after service of summons, the court presiding over the case typically enters a default judgment. When a party chooses to appear but does not comply with appropriate court orders or his obligations under the Federal Rules of Civil Procedure, that party faces the possibility of a similar outcome; he cannot expect the court to overlook his non-compliance.

In his motion for reconsideration, Abubakar again suggests that he "was not properly served" with summons, *id.* ¶ 12, an argument that the Court has previously rejected. In a supplemental memorandum, however, Abubakar specifically acknowledges that he was handed the summons and complaint in Chicago on February 20, 2001, *see* Def. Suppl. Mem. (docket no. 219) ¶ 21, he read it, *see id.* ¶ 22, and he recognized at the time that it had to do with a lawsuit, *see id.* ("Abubakar mentioned the document to the then Nigerian Ambassador ..., and the question was whether it could be true that someone actually did file a lawsuit"). In the same memorandum, Abubakar specifically acknowledges that within three days after being handed the summons, he realized that it represented an actual lawsuit that had been filed by him in the Eastern District of Michigan. *See id.* ¶¶ 24-25. These admissions undercut any claim that Abubakar might have had a good faith basis to challenge the adequacy of service of summons in this case (personal jurisdiction is a separate matter, which the Court has previously addressed).

The Court rejects Abubakar's argument that the Court, in its March 19 order, misunderstood the sequence of events when the case was pending in the Eastern District of Michigan. *See* Def. Mot. to Reconsider ¶¶ 14-17. The Court accurately stated that Judge Friedman granted plaintiffs' motion for entry of default judgment on March 1, 2002; that Abubakar thereafter moved for reconsideration; and that on April 25, 2002, Judge Friedman granted the motion for reconsideration. *See [Abiola,](https://...) [2007 WL 898197, at \*1-2](https://...).* The Court never suggested, as Abubakar seems to think, that it believed that Abubakar did not move for summary judgment until after the default judgment had been entered.

 *9  Abubakar also seems to contest Judge Friedman's decision to deal with the issue of personal jurisdiction before dealing with the issue of subject matter jurisdiction. *See* Def. Mot. to Reconsider ¶ 15. The Supreme Court has, however, expressly approved this approach. *See [Ruhrgas AG v. Marathon Oil Co.,](https://...) 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).* The law also allowed Judge Friedman to determine to transfer the case to this District rather than dismissing it outright. *See [Goldlawr, Inc. v. Heiman,](https://...) 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); [28 U.S.C. § 1406](https://...)(a).*

Abubakar takes issue with the Court's reference to the fact that he did not seek a protective order after plaintiffs served notice setting his deposition for November 15, 2006. *See* Def.

Mot. to Reconsider ¶¶ 21-22. According to Abubakar, this is attributable to the fact that the parties were engaged in settlement negotiations from sometime in November 2006 through February 2007 (the exact dates are not given); he says "[t]hat was an agreed period of truce and no pleadings were allowed." *Id.* ¶ 21.

The Court finds that Abubakar forfeited this argument. Plaintiffs' motion seeking sanctions for Abubakar's failure to appear for his deposition was filed on January 23, 2007. In that motion, plaintiffs argued that on September 23, 2006, they sent Abubakar's counsel a notice of deposition, setting the date for the deposition as November 15, 2006. As noted earlier, Abubakar's counsel has conceded that he became aware of the notice of deposition on October 3, 2006 and received a copy of the notice on October 10, 2006. Both of these events too place weeks before the purported "truce" intervened. Abubakar could have sought a protective order then, but he did not. In addition, Abubakar does not say exactly when in November the settlement discussions occurred and the alleged "truce" was entered into-specifically, he does not say this occurred before the scheduled deposition date of November 15, 2006.

Abubakar forfeited the "truce" argument a second time by failing to assert it in response to plaintiffs' motion for sanctions. After plaintiffs filed the motion on January 23, 2007, Abubakar had nearly a month, until February 21, 2007, to respond. In his response, he made no mention of any agreement or understanding, either express or tacit, to put matters on hold during the period when the deposition was scheduled.

In short, Abubakar passed up two distinct opportunities to assert the alleged understanding to defer matters as a defense to the taking of the deposition and to the imposition of sanctions. His counsel's belated reference to this point is unavailing; even if Abubakar did not forfeit the point, his counsel's contentions are unsupported and, given his failure to mention the issue earlier, cannot be taken at face value.

The remainder of Abubakar's motion for reconsideration concerns the effect of the Nigerian court order. *See* Def. Mot. to Reconsider ¶¶ 18-19, 23-32. The Court will address that issue later in this decision.

### The Nigerian court order

**\*10** On February 14, 2007, an attorney acting on behalf of the Nigerian Federal Ministry of Justice filed in Nigerian federal court an action seeking declaratory and injunctive relief. Named as defendants were Abubakar and the three attorneys representing plaintiffs in this case, Kayode Oladele, Augustine Agomuoh, and Akinwole Ogunlola. Pl. Reply to Def. Opp. to Mot. for Sanctions, attached exhibit.

In the lawsuit, the Nigerian government sought a finding that Abubakar was barred by Nigeria's Official Secrets Act from "transmitting any details and/or information relating to his involvement in, membership of, participation in or information discovered, received, gathered, disclosed or obtained from, during or at any meetings, minutes of meeting, discussions and events or occurrences of the Provisional Ruling Council ... or Armed Forces Fuling Council" for the period from 1992 through May 29, 1999. *Id.* ¶ 1. Specifically, the Nigerian government sought a bar on disclosure of information regarding

> federal security initiatives including but not limited to arrests, warrants issued, persons arrested, detained and or interrogated, the subject of such arrest, detention of disposition of such detention and interrogation or the nature of information secured, location of such arrest and or detention and any methods used by the Nigerian Military and Security Forces to establish or secure relevant information and or compliance with local laws or submit to the authority of the organs and persons of or in government.

*Id.*

In addition, the Nigerian government sought a finding that the attorneys for plaintiffs in the present case-all of whom, evidently, are Nigerian expatriates [2] -are likewise barred by the Official Secrets Act "from aiding, abetting, counseling, inciting, procuring or commanding" a violation of the Act, and specifically whether they are barred from attempting to procure the violation of the Act "by seeking to compel the divulgence [sic] of information that is the subject of coverage by the Official Secrets Act" by Abubakar. *Id.* ¶¶ 4 & 7. An affidavit submitted in support of the lawsuit made specific

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 9 of 16
                                          PageID: 54940
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

reference to this case, the deposition of Abubakar noticed for November 15, 2006, and plaintiffs' motion seeking sanctions against Abubakar. *Id.,* Affid. of Yemi Akinseye-George.

On March 5, 2007, the Nigerian court entered an order "restraining the attendance of Court by [Abubakar] in the United State [sic]" and adjourning the case to April 17, 2007. Def. Suppl. Mem., Ex. A at 2. Neither party has provided any information regarding any further proceedings that have taken place in the case since that date.

Abubakar argues that the Court should not sanction him for his failure to appear at the deposition; he says that he should not be penalized for complying with the order of the Nigerian court. The Court will first summarize each of the points Abubakar has made in his various filings directed to this issue.

**\*11** In his supplemental opposition to plaintiffs' motion for sanctions, filed on March 20, 2007, Abubakar's counsel stated that he had "no detailed knowledge" of the Nigerian lawsuit and saw the legal papers relating to that case for the first time when they were attached to plaintiffs' reply memorandum. Def. Suppl. Opp. to Pl. Mot. for Sanctions ¶ 4. Counsel stated that he did not yet know the intentions of the Nigerian government but had planned a trip to Nigeria in late March to attempt to find out. *Id.* ¶ 5. Abubakar characterized as "absolutely ludicrous" the claim of plaintiffs' counsel that they faced potential arrest in Nigeria due to the government's lawsuit, and Abubakar's lawyer denied that he had suggested any such thing to plaintiffs' counsel. *Id.* ¶ 6.

In his motion for reconsideration, filed on March 22, 2007, after the Nigerian lawsuit was filed but before the Nigerian court had ruled, Abubakar argued that the Court should defer to the Nigerian court and should stay the case until the Nigerian court ruled. Def. Mot. to Reconsider ¶ 25. He argued that he should not be put in the position of choosing whether to disobey this Court's order to appear or disregard the authority of the Nigerian court and face criminal sanction there. *Id.* ¶¶ 25-26. Abubakar's counsel denied plaintiffs' contention that he procured the filing of the Nigerian government's lawsuit. *Id.* ¶¶ 18-19. He argued that the Court should reconsider its order requiring him to appear for the deposition, *id.* ¶ 27, and should stay further proceedings until the effect of the Nigerian court case could be determined. *Id.* ¶¶ 28-31.

In his supplemental memorandum in support of his motion to reconsider, filed on May 1, 2007 after the Nigerian court had ruled, Abubakar recited the history of the Nigerian lawsuit, pointing out that Nigeria's Official Secrets Act "carries severe penalties including a long jail term" for anyone who violates it. Def. Suppl. Mem. ¶¶ 2-5. He made legal arguments regarding the standard for determining the effect of the Nigerian court order in this case; the Court will address those points later. *Id.* ¶¶ 6-14. Abubakar stated that the Nigerian court order made it absolutely clear that he faced criminal penalties as well as the possibility of contempt were he to travel to Chicago for his deposition. *Id.* ¶ 15. He claimed that he had asserted arguments based on the Nigerian statute in good faith, and to support his claim of good faith, he discussed the history of his earlier challenges to service of summons, which the Court has already addressed. *Id.* ¶¶ 16-26. Abubakar argued that he had responded to plaintiffs' written discovery requests and participated, by telephone, in a settlement conference when the case was on appeal, *id.* ¶ 27; he contended that he was citing the Nigerian court order in good faith and not out of a refusal to cooperate in the case. *Id.* ¶ 28.

**\*12** Abubakar also stated, for the first time, that when he prepared to submit to deposition back in 2002 (when the present case was pending in Michigan), he advised the Nigerian government of this and that unnamed authorities in Nigeria "ordered defendant not to submit to deposition." *Id.* ¶ 29. Abubakar submitted no evidence, however, to support this assertion, and this filing, in May 2007 represented the first time he had ever advised the Court that he had been ordered by foreign authorities not to appear. He stated that the Nigerian government later had attempted to obtain the support of the United States government to defend the case; the U.S. government filed an *amicus* brief during the earlier appeal on the issue of subject matter jurisdiction; and the "Nigerian Government and defendant assumed that the intervention of the U.S. Government [in the appeal] was going to lead to a smoother resolution of the case." *Id.* ¶ 30.

Abubakar contended that he advised the Nigerian government *"in December of 2006* of his intention to submit to deposition, if this Court was to order him," and that it was due to this that the Nigerian government filed its lawsuit. *Id.* ¶ 31 (emphasis added). (The Court notes that it had *already* ordered Abubakar to appear in the United States at that point, and that Abubakar's communication with the Nigerian government came long after his deposition had been noticed and was supposed to have taken place.) Abubakar stated that he would face severe penalties were he to disobey the Nigerian court order and that he should not be sanctioned for failing to appear. *Id.* ¶¶ 32-33. Finally, noting that

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 10 of 16
                                            PageID: 54941
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

both plaintiffs' and defendant's counsel are members of the Nigerian bar, he suggested that plaintiffs could file the suit in Nigeria and that he would concede the jurisdiction of the Nigerian courts and waive any statute of limitations defense. *Id.* ¶¶ 34-36.

Finally, in his second supplemental memorandum, filed on May 15, 2007 in response to the Court's order of May 2, 2007, Abubakar's counsel reported that he had met with Nigerian government officials to ascertain their position. He reported that "the position of the Nigerian Government regarding these matters" was the following:

- Any testimony by Abubakar could not violate the Nigerian Official Secrets Act.

- If a deposition were taken in Nigeria, Nigerian government officials would have to be present and given the opportunity to raise objections under the Official Secrets Act, which would have to be submitted "conclusively" to a Nigerian court for ruling in an *in camera* proceeding. The parties would have to agree in advance to be bound by any such ruling. Abubakar agreed to appear for a deposition under those conditions.

- If a deposition were taken by written questions, the Nigerian government would have to be given thirty days in which to object, and Abubakar would have to submit his written answers to the Nigerian government to determine whether to object.

 **\*13**  Def.2d Suppl. Mem. ¶¶ 1, 2(A-E) & 3. Abubakar did not suggest what subjects, if any, might not be considered to be off limits.

In response, plaintiffs argue that reconsideration of the Court's order requiring Abubakar to appear for deposition or face default is inappropriate, because Abubakar could have and should have made the same arguments in opposition to the motion for sanctions but failed to do so. Pl. Resp. in Opp. to Def. Mot. for Reconsideration at 2-4. They also argue that it is inappropriate for Abubakar to make a blanket claim that he cannot respond to questions, and they state that a Nigerian government commission has conducted an inquiry into the actions of the country's former military regime without any contention that it cannot do so by reason of the Official Secrets Act. *Id.* at 4-8, 10-12. Plaintiffs repeat their allegation that Abubakar instigated the filing of the Nigerian government's lawsuit in an effort to obtain what amounts to immunity from liability in the present suit. *Id.* at 9. They also point out that Abubakar obtained the benefit of the agreement that all parties would appear for deposition here because plaintiffs complied, and he has now reneged by refusing to appear. *Id.* at 12.

In their reply to defendant's supplemental memoranda, plaintiffs argue that because the Nigerian government is not a party to the case, the conditions it wishes to impose on any deposition should not be considered, and they contend that allowing attorneys for the Nigerian government to intervene at a deposition likely would lead to chaos. Pl. Resp. to Def. Suppl. Mem. at 4-5. Plaintiffs argue that Abubakar's proposal for written questions is not a viable alternative in light of his alleged earlier refusal to provide responsive answers to written interrogatories served upon him. *Id.* at 6. Finally, they repeat their argument that Abubakar's objection to the deposition has come too late and amounts to reneging on his earlier agreement to appear after he received the benefit of plaintiff's appearance in this country. *Id.*

### Discussion

To the extent Abubakar requests reconsideration of the order directing him to appear for deposition, the Court denies his request. The Court made that order in 2003, well over three years before plaintiffs filed their motion for sanctions. As discussed earlier, the order was premised on the Court's finding that Abubakar and plaintiffs made mutually binding commitments to appear in this country for deposition and that plaintiffs had lived up to their end of the deal. Abubakar does not challenge that finding in any of his current submissions.

If Abubakar believed that some provision of Nigerian law imposed an impediment to his appearance for a deposition,[3] as he now contends, he should not have made the agreement in the first place. At a minimum, he should have brought the matter to the attention of both plaintiffs' counsel and the Court after he supposedly was told not to appear. But as the Court has already noted, Abubakar did not do so; he did not so much as hint that there was any reason why he could not appear and respond to the questions of plaintiffs' counsel. Under the circumstances, Abubakar has provided no basis for reconsideration of the Court's 2003 order requiring him to appear for a deposition.

 **\*14**  Abubakar himself proposed no alternative way for plaintiffs to obtain the information he seeks. Rather, his only proposal was to require the plaintiffs to refile their suit in Nigeria and to commit to waive a statute of limitations

defense. That is not a viable alternative. First, the Court has already ruled that Nigeria does not provide plaintiffs with a remedy for the wrongs they allege. Second, there is no way to guarantee that a Nigerian court would accept the case and would allow it to proceed even if Abubakar conceded jurisdiction and timeliness.

After the Court made particularized requests about alternative means of obtaining sworn testimony by Abubakar, Abubakar still proposed nothing on his own behalf but rather only advanced certain proposals he said had come from the Nigerian government. None of these is adequate. First of all, contrary to Abubakar's attempt to minimize the issue, the text of the Nigerian government's lawsuit makes it clear that plaintiffs' counsel *do* face the possibility of sanction in Nigeria if they attempt to obtain from Abubakar information that is claimed to be covered by that country's Official Secrets Act. Specifically, the Nigerian government sought a finding that the Act barred plaintiffs' counsel from "aiding, abetting, counseling, inciting, procuring or commanding" a violation of the Act. Pl. Reply to Def. Opp. to Mot. for Sanctions, attached exhibit ¶¶ 4 & 7. The Court has no intention of effectively requiring plaintiffs' counsel to place themselves in harm's way by forcing them to proceed with the deposition in Nigeria or not at all.

In addition, the conditions insisted upon by the Nigerian government have the effect of making entirely illusory an order by this Court requiring Abubakar to give a deposition there. Those conditions include subjecting any disputed matters to a Nigerian court and requiring plaintiffs to agree in advance to be bound by that court's rulings. This effectively would preclude plaintiffs from seeking sanctions in this Court if Abubakar did not testify on some significant point. Perhaps more importantly, it is rather clear that Abubakar *would not* be permitted to testify on the critical issues raised by plaintiffs in this case, as the Nigerian government has made it clear that it will not permit the Official Secrets Act to be violated, and that Act (at least as discussed in the Nigerian court filing) entirely precludes Abubakar from giving any information about arrests, detentions, interrogations, and so on during the period in which the military was in control of the Nigerian government.

The Court also agrees with plaintiffs that the alternative of requiring written questions would not solve these problems. Abubakar's answers on critical points still would be precluded by the Nigerian government's interpretation of the Official Secrets Act, and with written questions, counsel would be precluded from attempting to adjust their questions based on the responses they received.

**\*15** The Court therefore proceeds to consider the appropriateness of the imposition of a sanction for Abubakar's failure to appear as ordered for his deposition. As the Court stated in its March 19, 2007 Federal Rule of Civil Procedure 37(d) expressly authorizes a court to sanction a party for failing to appear for a deposition.

In this case, of course, the twist is that the defendant is a citizen and resident of another country. Conflicts between discovery requirements imposed by United States law and prohibitions imposed by the law of the country of which a party is a citizen gives rise to concerns regarding international comity, requiring an analysis of the competing interests in the particular case. See Reinsurance Co. of Amer., Inc. v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1280 (7th Cir.1990). "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." Société Nationale Industrielle Aérospatiale v. United States District Court, 482 U.S. 522, 544, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987).

The fact that Nigeria's laws may subject Abubakar to criminal sanctions there does not automatically bar a court in the United States from compelling him to provide discovery or from sanctioning him if he fails to do so. United States v. First National Bank of Chicago, 699 F.2d 341, 345 (7th Cir.1983); *see generally, Société Internationale pour Participations Industrielles et Commerciales v. Rogers,* 357 U.S. 198, 205-206 (1958). The Supreme Court has made clear that such issues are to be determined on a case by case basis in which "the exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments." *Id.* at 546.

The Supreme Court and the Seventh Circuit have adopted a multiple-factor balancing test for courts to employ when determining whether to order discovery despite a foreign law impediment and whether to sanction a party that has refused to provide discovery due to a claimed impediment imposed by foreign law. See Société Nationale, 482 U.S. at 544 n. 28; Reinsurance Co., 902 F.2d at 1279-80, 1281-82. In this case, the Court-both this Court and Judge Friedman-

previously ordered Abubakar to submit to a deposition in this country, and Abubakar made no contention at the time of those orders that Nigerian law prevented him from complying. As a result, Abubakar long ago forfeited any contention that the Court could not order him to appear as a result of prohibitions imposed by Nigerian law. The only live issue before the Court is whether Abubakar may be sanctioned for his noncompliance with the Court's earlier order.

The relevant factors identified by the Supreme Court in the *Société Nationale* case are derived from the Restatement of Foreign Relations Law. They include the importance to the litigation of the information requested; the degree of specificity of the discovery request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the United States or compliance with the request would undermine important interests of the country where the information is located. *Id. (citing* Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft No. 7, 1986) (approved May 14, 1986)).

**\*16** In *Reinsurance Co.,* the Seventh Circuit used a slightly different formulation of the relevant factors, adding considerations that were added to the Restatement shortly after the *Société Nationale* decision. The court relied on section 442 of the Restatement (Third) of Foreign Relations Law, which deals specifically with the issue of conflicting jurisdiction over discovery. *Reinsurance Co.,* 902 F.3d at 1281. Section 442 states:

Requests for Disclosure: Law of the United States

(1) (a) A court or agency in the United States, when authorized by statute or rule of court, may order a person subject to its jurisdiction to produce documents, objects, or other information relevant to an action or investigation, even if the information or the person in possession of the information is outside the United States.

(b) Failure to comply with an order to produce information may subject a person to whom the order is directed to sanctions, including finding of contempt, dismissal of a claim of defense or default judgment, or may lead to a determination that the facts to which the order was addressed are as asserted by the opposing party.

(c) In deciding whether to issue an order directing production of information located abroad, and in framing such an order, a court or agency of the United States should take into account the importance to the investigation or litigation of the documents or other information requested; the degree of specificity of the request; whether the information originated in the United States; the availability of alternative means of securing the information; and the extent to which noncompliance with the request would undermine important interests of the state where the information is located.

(2) If disclosure of information located outside the United States is prohibited by law, regulation, regulation, or order of a court or other authority of the state in which the information or prospective witness is located, or of the state of which a prospective witness is a national,

(a) a court or agency of the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available;

(b) a court of agency should not ordinarily impose sanctions of contempt, dismissal, or default on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort in accordance with paragraph (a);

(c) a court or agency may, in appropriate cases, make findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.

Restatement (3d) of Foreign Relations § 442 (1987), *quoted in part in Reinsurance Co.,* 902 F.2d at 1281-82. [4]

**\*17** The information sought by plaintiffs-the deposition of the defendant in the case-is unquestionably important to the litigation; Abubakar does not suggest otherwise. In addition, there is no indication that there is *any* viable "alternative means of securing the information." As discussed earlier, the proposal apparently suggested by the Nigerian government, and communicated to this Court by Abubakar's counsel, is not, with all due respect, a viable alternative means of securing the information sought. As the Court has indicated,

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 13 of 16
                                  PageID: 54944
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

even were the Court to adopt that proposal, it is clear that Abubakar would be prevented from testifying about anything having to do with matters relating to wrongful detention and torture, the core subjects at issue in this case.

The request for deposition is, under the circumstances, reasonably specific. That aspect of the Restatement test is geared to the more common type of situation involving foreign prohibitions, which typically involves objections to production of documents. In contrast, when a party seeks the deposition of an opposing party, the Federal Rules of Civil Procedure do not require him to lay out in advance what he plans to ask. In any event, Abubakar knows the subjects on which he will be questioned; they are laid out, in detail, in plaintiffs' second amended complaint. Finally, the blanket nature of the prohibition imposed by the Nigerian court-precluding Abubakar from submitting to a deposition *at all*-renders this particular factor in the Restatement test relatively insignificant.

The information in question-Abubakar's knowledge of the matters that led to the alleged wrongful detention and torture at issue in this case-did not originate in the United States. Ordinarily this would be a factor weighing against enforcement of a request for discovery. However, the United States Congress enacted legislation, namely the TVPA, whose self-evident intent is to give victims of foreign torture a forum in this country's courts if, like plaintiffs, they are unable to obtain relief in the country where the torture occurred. For that reason, and given Abubakar's earlier agreement to sit for a deposition in the United States, the fact that the information originated in Nigeria is of somewhat diminished significance.

Based on the ruling of the Nigerian court, this Court assumes that Abubakar's compliance with the order to submit to a deposition is believed by the Nigerian authorities to undermine important interests of that state. Exactly how important, however, is difficult to say: Abubakar's counsel has repeatedly promised to provide the Court with a copy of the Nigerian Official Secrets Act, but he has never followed through. *See* Def. Suppl. Mem. at 2 n. 2; Def.2d Suppl. Mem. ¶ 7.

At first blush, one might think that Abubakar's noncompliance with the discovery order does not implicate any important interest of the United States. But as suggested above, when our national legislature adopted the Torture Victim Protection Act, it expressly chose to provide a forum in this country to persons subjected to torture or extrajudicial killing "under actual apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 note, § 2(a). Though the Court acknowledges that legislative history is often a less-than-clear guide to the meaning of a statute, the history of the TVPA makes it clear that Congress knew exactly what it was doing when it opened our country's courts to alien victims of foreign torture and that it intended to enable such persons to seek relief in this country when they could not do so in their own country. *See* H.R. Rep. 102-367(I), 102nd Cong., 1st Sess.1991, *reprinted in* 1992 U.S.C.C.A.N. 84, 85-88, 1991 WL 255964, at *2-5; S. Rep. 102-249, 102nd Cong., 1st Sess.1991, 1991 WL 258662, at *3-6. For this reason, allowing a person claimed to have ordered torture or extrajudicial killing to escape scrutiny by claiming that inquiry into what he did or did not do involves an "official secret" of his country would undermine a significant Congressionally-declared policy of the United States.

 **\*18** Abubakar has made no good faith effort-in fact, based on the extensive materials submitted, he has made no effort at all-to secure permission to testify. Rather, he now says that back in 2002, the Nigerian government "ordered" him not to appear. Def. Suppl. Mem. ¶ 29. As discussed earlier, Abubakar makes it clear that he always intended to comply with that directive, and he does not suggest that he did anything to seek permission to testify.

More recently, in November 2006, Abubakar simply chose not to show up for his deposition. Based on his own recounting of the sequence of events, it was only later, in December 2006, that he advised the Nigerian government that he might be ordered to appear-even though the Court had, years earlier, already ordered him to come to this country to give a deposition. It is fairly obvious from the circumstances that Abubakar acted as he did because he expected the Nigerian government to take him off the hook. Just as importantly for present purposes, Abubakar does not suggest that he made any sort of request to be allowed to testify, either when he advised the Nigerian government of the possibility he would have to appear, or thereafter.

Even more recently, in early May 2007, the Court made specific inquiries of Abubakar to determine whether some alternative could be adopted to permit plaintiffs to gather the information to which they are entitled in order to pursue the case. *See* Order of May 2, 2007 (docket no. 221). Abubakar's counsel came back and reported what representatives of the Nigerian government said they would accept as a supposed alternative. Neither Abubakar nor his

counsel have given any indication that they attempted at that time to secure permission for him to testify. Rather, it appears that Abubakar's counsel has simply acted as the channel for communicating the Nigerian government's position on the subject.

In addition, in addressing the issue of Abubakar's good faith, the Court cannot overlook the less than forthright manner in which Abubakar and his counsel have dealt with this Court and Judge Friedman on the issue of Abubakar's wililngness and ability to appear for deposition. First, as the Court has previously found, Abubakar long ago agreed to appear in this country for a deposition. If there was something in Nigerian law that imposed an impediment to this, it would strain credulity to believe that Abubakar, given his former status in the Nigerian government, was unaware of it. Yet he nonetheless made the agreement. In light of later developments, it is fair to infer that Abubakar never intended to comply with his side of the agreement, but only to take the benefits that he obtained from the other side.

Second, in August 2003, after Abubakar refused to live up to his agreement, this Court ordered him to appear in this country and face a deposition. As discussed earlier, the Court premised its order on a finding that Abubakar and plaintiffs had made mutually binding commitments to appear in this country for deposition and that plaintiffs had lived up to their end of the deal. At the time, Abubakar's only arguments were that he had made no such agreement and that traveling here would impose a hardship, *see* Affids. in Resp. to Pl. Mot. to Compel Dep. (docket no. 63), arguments that the Court rejected after considering the contentions by both sides. Abubakar now contends, however, that many months earlier, in 2002, the Nigerian government had ordered him not to submit to a deposition. *See* Def. Suppl. Mem. ¶ 29. Abubakar does not suggest that he intended to do anything other than follow that directive: he states that "[a]s [he] prepared to submit to deposition in 2002, [he] had to notify the Government of Nigeria *and obtain clearance." Id.* (emphasis added). If all of this actually occurred, it was incumbent Abubakar to bring it to the attention of both plaintiffs' counsel and the Court at the time it was considering the motion to compel. But Abubakar did not do so; he did not so much as hint that there was any legal or other reason why he could not appear and respond to the questions of plaintiffs' counsel.

 **\*19**  Third, when plaintiffs noticed Abubakar's deposition for November 2006, Abubakar simply refused to show up. This was long before the Nigerian government filed suit, and it was also, by Abubakar's own admission, several weeks before he claims to have told the Nigerian government of the possibility that he might be required to appear.

Fourth, when plaintiffs filed their motion for sanctions in January 2007, Abubakar did not suggest in response that there was any legal or other impediment to his ability to appear-despite the fact that he now contends that years earlier, he had been ordered by the Nigerian government not to appear, and despite the fact that he claims to have told the Nigerian government in December 2006 that he might be required to appear.

It is impossible to escape the conclusion that in dealing with the Court on this matter-not to mention with plaintiffs' counsel-Abubakar has failed to act in good faith. It is clear, based on Abubakar's admissions in his written submissions, that he never intended to live up to his agreement with plaintiffs, and it is equally apparent that he never intended to comply with this Court's order directing him to appear in this country for deposition. Yet Abubakar and his counsel allowed events in the case to unfold without ever advising the Court that he did not intend to appear. Rather, he concealed that critical piece of information from the Court until the eleventh hour-indeed, until well after the eleventh hour-in the apparent hope that he would be able to come up with some other basis to avoid appearing. It was only after all else had failed, and he had no other line of defense, that the matter of the Nigerian government's wishes was brought to the Court's attention.

Abubakar is not a third party witness in the case; he is the defendant and a critical witness if the plaintiffs are to be able to attempt to prove their claims. As the Court has previously discussed, rather than simply refusing to respond to the suit, Abubakar appeared and has fought over every inch of ground since he was served with summons. There is, of course, no question that he had the right to appear and deny the plaintiffs' allegations and to raise legitimate legal and factual issues in his own defense. What Abubakar cannot appropriately do, however, is to appear in the case, do his best to stymie plaintiffs' ability to proceed, and then, when backed against a wall, claim that the Court is powerless to impose a sanction.

At the present juncture, plaintiffs are in effectively the same spot where they would have been had Abubakar refused to defend the case to begin with-indeed, they are worse off, with over six years having gone by since they first filed the case in Michigan. As a defendant who has chosen to defend the case, Abubakar must face the possibility of sanction, just as

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 15 of 16
                                                    PageID: 54946
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

any other party would if he refused to comply with legitimate discovery requests.

There is no question that given the order of the Nigerian court, Abubakar would face a significant sanction in that country were he to submit to a deposition. The Court has considered this, and it has also considered the national interest claimed by Nigeria when it sought and obtained the order barring Abubakar from appearing for a deposition. But given all the circumstances, those factors do not outweigh the plaintiffs' need for his testimony, the severe prejudice they face if they are unable to obtain his testimony, and the interest of this country in allowing the plaintiffs to seek relief via the TVPA. By refusing to comply with this Court's order to appear for a deposition, Abubakar has subjected himself to the imposition of a significant sanction.

*20 After considering all the circumstances, as well as the approach of Restatement section 442, the Court concludes that the appropriate sanction is to enter a order, as permitted by Federal Rule of Civil Procedure 37(b)(2)(A), that the allegations in plaintiffs' second amended complaint relevant to Abubakar's liability are to be taken as established for the purposes of this suit. These allegations concern, by way of subject matter, the history of the Nigerian military regime and Abubakar's role in it. the regime's suppression of pro-democracy advocates; its use of abitrary detention without trial, torture, extrajudicial killing, and restrictions of civil liberties in order to silence opponents; the wrongful detention and torture of Chief M.K.O. Abiola and his death in custody; the extrajudicial killing of Alhaja Kudirat Abiola at the direction of the military regime; the wrongful detention, mistreatment in custody, and exiling of Anthony Enoharo; the wrongful detention and torture of Arthur Nwankwo; and Abubakar's responsibility for the directives that caused those events. *See* 2d Am. Compl. ¶¶ 2-41, 43-92, 94-97, 101-03, 106-08, 111-12, 115-16, 119-24, 127-33.

### Conclusion

For the reasons stated above, the Court grants in part plaintiffs' motion for order to show cause [docket no. 195] and imposes a sanction as stated in the text of this decision. The Court denies defendant's motion to strike plaintiffs' reply [docket no. 209] and his motion for reconsideration [docket no. 210]. The case is set for a status hearing on October 11, 2007 at 10:00 a.m. for the purpose of addressing what remains to be determined in the case. Principal counsel for both sides are ordered to appear at the status hearing.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 2875493

---

### Footnotes

1   The Court is not confident that it is spelling defendant's first name correctly. The Court has taken its spelling from the appearance form defendant's principal counsel filed in this Court. *See* docket no. 25.

2   In a later filing, Abubakar's counsel states that plaintiffs' attorneys are members of the Nigerian bar. *See* Def. Suppl. Mem. ¶ 35.

3   As noted earlier, Abubakar says that in December 2002, he was "ordered" by the Nigerian government not to appear.

4   The Court has some sympathy for the approach advocated by Judge Easterbrook in his dissent in *Reinsurance Co.,* in which he expressed concern that the multiple-factor balancing test of the Restatement is unclear and permits courts to "use a different recipe for each meal." *Reinsurance Co.,* 902 F.3d at 1283 (Easterbrook, J., dissenting). The Court would, however, arrive the same conclusion that it reaches below even under the statute and rule-based approach advocated by Judge Easterbrook. The Congress, via the TVPA, has decided that victims of foreign torture are to be given a forum in the United States if they lack one in their own country. The upshot is that if (as the Court has previously concluded) subject matter and personal jurisdiction exists, the Court has authority to sanction a foreign defendant in a TVPA just as it would a domestic defendant in any other sort of case. If any domestic party to a lawsuit refused to appear at a deposition after being ordered to do so, he unquestionably would face a severe sanction.

Case 1:19-md-02875-RMB-SAK   Document 1838-29   Filed 12/30/21   Page 16 of 16
                                  PageID: 54947
Abiola v. Abubakar, Not Reported in F.Supp.2d (2007)

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.