Cited

As of: November 30, 2021 12:05 AM Z

# Hoffeditz v. Am

United States District Court for the District of New Jersey

August 4, 2017, Decided; August 4, 2017, Filed

Civil Action No. 09-0257

**Reporter**
2017 U.S. Dist. LEXIS 123493 *; 2017 WL 3332263

JUDITH L. HOFFEDITZ, Individually And As Executrix Ad Prosequendum For The Estate of GERALD L. HOFFEDITZ, Plaintiff, v. AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation, et al., Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

exposure, asbestos, products, causation, reliable, expert testimony, mesothelioma, studies, disease, causative, breath, scientific, exposed, gaskets, brakes, dose

**Counsel:** [*1] For GERALD L. HOFFEDITZ, JUDITH L. HOFFEDITZ, Plaintiffs: MOSHE MAIMON, LEAD ATTORNEY, LEVY, PHILIPS & KONIGSBERG, LLP, LAWRENCEVILLE, NJ; NATHANIEL N. FALDA, LEAD ATTORNEY, LEVY PHILLIPS KONINGSBERG LLP, NEW YORK, NY; ROBERT E. LYTLE, LEAD ATTORNEY, SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, PC, LAWRENCEVILLE, NJ.

For AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation, Defendant, Cross Defendant, Cross Claimant: JAMES J GROSS, LEAD ATTORNEY, DLA PIPER US LLP, PHILADELPHIA, PA; KEVIN W. RETHORE, LEAD ATTORNEY, DLA, PIPER, RUDNICK, GRAY & CARY, US LLP, EDISON, NJ.

For ARVIN-MERITOR, INCORPORATED, as successor-in-interest to Rockwell International Automotive, formerly known as Arvin Industries, Incorporated, Defendant: JOSEPH P. LASALA, LEAD ATTORNEY, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, MORRISTOWN, NJ; PATRICIA M. HENRICH, LEAD ATTORNEY, REILLY JANICZEK & MCDEVITT, MERCHANTVILLE, NJ.

For CUMMINS, INCORPORATED, Defendant: MARY S. COOK, LEAD ATTORNEY, WILBRAHAM, LAWLER & BUBA, WILBRAHAM. LAWLER & BUBA, HADDONFIELD, NJ.

For DETROIT DIESEL CORPORATION, Defendant, Cross Defendant: GERARD CEDRONE, LEAD ATTORNEY, LAVIN, O'NEIL, CEDRONE & DISIPIO, MT. LAUREL, [*2] NJ.

For FORD MOTOR COMPANY, individually, doing business as Ford Motorcraft Parts and Ford Genuine Parts, Defendant: JOSEPH F. LAGROTTERIA, MICHAEL DORON GOLDKLANG, LEAD ATTORNEYS, LECLAIRRYAN, NEWARK, NJ; MICHAEL P. KINKOPF, LEAD ATTORNEY, ECKERT SEAMANS CHERIN & MELLOTT LLC, PHILADELPHIA, PA; ROBYN GNUDI KALOCSAY, LEAD ATTORNEY, LEWIS BRISBOIS BISGAARD & SMITH LLP, NEWARK, NJ; SHARON L. CAFFREY, DUANE MORRIS LLP, PHILADELPHIA, PA.

For HONEYWELL INTERNATIONAL,

INCORPORATED, as successor-in-interest to The Bendix Corporation, Defendant, Cross Defendant: ETHAN D. STEIN, LEAD ATTORNEY, GIBBONS, PC, NEWARK, NJ.

For FORD MOTOR COMPANY, individually, Cross Defendant: MICHAEL P. KINKOPF, LEAD ATTORNEY, ECKERT SEAMANS CHERIN & MELLOTT LLC, PHILADELPHIA, PA.

For ARVIN-MERITOR, INCORPORATED, as successor-in-interest to Rockwell International Automotive, Cross Defendant: PATRICIA M. HENRICH, LEAD ATTORNEY, REILLY JANICZEK & MCDEVITT, MERCHANTVILLE, NJ.

For AM GENERAL, LLC, individually and as successor-in-interest to AM General Corporation, Cross Defendant: ADAM A. DESIPIO, DLA PIPER (US), FLORHAM PARK, NJ.

For FORD MOTOR COMPANY, individually, Cross Claimant, Cross Defendant: JOSEPH F. LAGROTTERIA, [*3] MICHAEL DORON GOLDKLANG, LEAD ATTORNEYS, LECLAIRRYAN, NEWARK, NJ; MICHAEL P. KINKOPF, LEAD ATTORNEY, ECKERT SEAMANS CHERIN & MELLOTT LLC, PHILADELPHIA, PA; ROBYN GNUDI KALOCSAY, LEAD ATTORNEY, LEWIS BRISBOIS BISGAARD & SMITH LLP, NEWARK, NJ.

For ARVIN-MERITOR, INCORPORATED, as successor-in-interest to Rockwell International Automotive, Cross Defendant: JOSEPH P. LASALA, LEAD ATTORNEY, MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, MORRISTOWN, NJ; PATRICIA M. HENRICH, LEAD ATTORNEY, REILLY JANICZEK & MCDEVITT, MERCHANTVILLE, NJ.

For BORG-WARNER MORSE TEC, Cross Defendant: ALAN IRA DUNST, LEAD ATTORNEY, HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP, NEW BRUNSWICK, NJ.

For CUMMINS, INCORPORATED, Cross Defendant: MARY S. COOK, LEAD ATTORNEY, WILBRAHAM, LAWLER & BUBA, WILBRAHAM. LAWLER & BUBA, HADDONFIELD, NJ; MICHAEL JOSEPH BLOCK, WILBRAHAM, LAWLER & BUBA, HADDONFIELD, NJ.

**Judges:** HON. CLAIRE C. CECCHI, United States District Judge.

**Opinion by:** CLAIRE C. CECCHI

## Opinion

**CECCHI, District Judge**.

### I. INTRODUCTION

This matter comes before the Court upon the joint motion of Defendants ArvinMeritor, Inc., Rockwell International Corporation,[1] AM General, LLC, Cummins, Inc., Ford Motor Company, and Honeywell, Inc. to exclude the evidence [*4] and testimony put forth by Plaintiff Judith Hoffeditz's[2] expert, Dr. Jacqueline Moline. ECF No. 113. The Court held a *Daubert* hearing, after which, Defendants filed their joint motion.[3] The Parties have also submitted numerous letters to the Court. Over the course of several rounds of briefing

---

[1] ArvinMeritor is successor-in-interest to the former automotive segment of Rockwell.

[2] Although this action was filed jointly by Gerald and Judith Hoffeditz, Gerald Hoffeditz passed away during the pendency of this action, at which point Judith Hoffeditz was substituted as Plaintiff, individually and as executrix of Mr. Hoffeditz's estate.

[3] This Opinion deals only with the motion to exclude the report and testimony of Dr. Moline, not with the previously filed summary judgment motion.

before multiple judges, it appears that the positions of the Parties have evolved as the case has progressed and the surrounding case law has changed. Accordingly, in considering this motion, the Court will consider the Parties' arguments in light of the representations that they made to the Court during the February 10, 2017 conference and their subsequent letters. In particular, given Defendants' representations that only specific causation is in dispute, the Court will limit its opinion to that issue. *See, e.g.*, ECF Nos. 147, 149, 150.[4]

## II. FACTUAL BACKGROUND

Beginning in 1968, Mr. Hoffeditz worked as a mechanic and heavy equipment repairer at the Letterkenny Army Depot, where he repaired transmissions, brake parts, and gaskets on large military trucks that allegedly contained asbestos. These trucks were assembled by AM General by purportedly using axles, transfer cases, and emergency parking brakes [*5] from Rockwell and engines allegedly supplied by Cummins. Mr. Hoffeditz may have been exposed to asbestos as early as 1962, however, while performing maintenance on his personal automobiles, including several vehicles manufactured by Ford. Mr. Hoffeditz was diagnosed with mesothelioma on April 28, 2008 and subsequently passed away.

## III. LEGAL STANDARD

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008)* (quoting *Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997))*. The admissibility of such expert testimony is governed by *Daubert v. MerrellDow Pharms., Inc., 509 U.S. 579 (1993)* and *Federal Rule of Evidence 702*. For expert testimony to be admitted: "(1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge, *i.e.*, reliability; and (3) the expert's testimony must assist the trier of fact, *i.e.*, fit." *United States v. Schiff, 602 F.3d 152, 172 (3d Cir. 2010)* (internal citation, quotation marks, and brackets omitted).

To be qualified, the witness must possess specialized expertise. A broad range of knowledge, skills, and training qualify as specialized expertise. *Schneider ex rel. Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003)*; see also Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782-83 (3d Cir. 1995) (finding, in a mesothelioma case, that "it is an abuse of discretion to exclude [*6] testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate").

In evaluating the reliability of a proffered expert's testimony, the Third Circuit has emphasized that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994)* (internal citation omitted). An expert must base his opinion "on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Id.* (quoting *Daubert, 509 U.S. at 590*). "The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best

---

[4] Although ArvinMeritor's March 3, 2017 letter states the Court must determine whether Dr. Moline may testify as to "general causation," ECF No. 146 at 3, the substance of the letter addresses questions of specific causation.

methodology or unassailable research." *In re TMI Litig., 193 F.3d 613, 665 (3d Cir. 1999)*, amended, *199 F.3d 158 (3d Cir. 2000)*. "Recognizing that the 'inquiry as to whether a particular scientific technique or method is reliable is a flexible one,' the [Third Circuit] has identified a nonexhaustive list of eight factors that courts may address in determining whether an expert's methodology is reliable." *Steele v. Aramark Corp.*, No. CIV. 09-*4340 JBS/JS, 2012 WL 1067879, at \*15 (D.N.J. Mar. 29, 2012)* (quoting *Paoli, 35 F.3d at 742*).[5]

With respect to fit, the expert's [*7] testimony must be relevant for the purposes of the case and must assist the trier of fact by establishing a valid scientific connection to the pertinent inquiry. *Schneider, 320 F.3d at 404*; *Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 595 (D.N.J. 2002)*. Although the admissibility of expert testimony is a procedural question governed by *Rule 702* and federal law, this Court may also consider state substantive law governing Plaintiff's burden of proof in establishing causation. See *Paoli, 35 F.3d at 750-52, n.31*

---

[5] Those factors are: (1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; (4) whether the technique has been generally accepted in the proper scientific commumty; (5) the existence and maintenance of standards controlling the technique's operation; (6) the relationship of the technique to methods that have been established to be reliable; (7) the degree to which the expert is qualified; and (8) the non-judicial uses to which the technique has been put. *Paoli, 35 F.3d at 742*. However, as the Supreme Court noted in *Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999)*, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."

(explaining that, in making admissibility determinations, a federal court may consider state substantive law relating to a plaintiff's burden of proof). The Parties agree that Pennsylvania law rather than New Jersey law applies to this case. *See, e.g.*, ECF Nos. 113-5, 146, 147, 149, 150. The Pennsylvania Supreme Court recently clarified the relevant substantive law in *Rost v. Ford Motor Co., 151 A.3d 1032 (Pa. 2016)*. It explained that in the context of asbestos liability litigation, "to create a jury question [as to proximate (or substantial factor) causation], a plaintiff must adduce evidence that exposure to defendant's asbestos-containing product was sufficiently 'frequent, regular, and proximate' to support a jury's finding that defendant's product was substantially causative of the disease." *Id. at 1044*. The court also explained that while "expert testimony [*8] based upon the notion that 'each and every breath' of asbestos is substantially causative of mesothelioma will not suffice to create a jury question on the issue of substantial factor causation," *id.*, the law does not preclude experts from testifying "that every exposure [to asbestos] cumulatively contributes to the total dose," *id. at 1045*.

## IV. DISCUSSION

### A. Qualification

To the extent Defendants contend Dr. Moline is not qualified to testify as an expert in this case,[6] the Court rejects that argument. Given Dr. Moline's extensive qualifications in the fields of Occupational and

---

[6] While Defendants have previously suggested Dr. Moline is not qualified, *see* ECF No. 47 at 6, ECF No. 55 at 4, they do not appear to advance this argument in the instant motion. Nevertheless, the Court addresses this issue for the sake of completeness.

Environmental Medicine (including a medical degree from the University of Chicago, a residency at Yale University, a residency in Occupational and Environmental Medicine at Mount Sinai School of Medicine, and a professorship at the Hofstra University School of Medicine), her study of asbestos (including research at Mount Sinai Medical Center with Dr. Irving Selikoff, one of the leading experts in the field of Occupational Medicine), and her work with "hundreds" of mesothelioma patients, the Court finds Dr. Moline is qualified to testify as an expert in this case.

## B. Reliability and Fit

Having reviewed Dr. Moline's affidavit [*9] and observed her testimony at the *Daubert* hearing, the Court concludes that the methodology Dr. Moline applied was reliable and would assist the trier of fact. In reaching her conclusion on issues of causation, Dr. Moline considered a variety of methodologies established in the literature for determining whether exposure to a chemical compound has caused a particular disease. Dr. Moline explained that four questions should be asked in order to establish causation: (1) does the substance cause the disease? (2) was the patient exposed to a dose of the substance that has been shown to cause the disease? (3) is there an appropriate latency between the exposure and the disease? and (4) does the patient have the disease? Dr. Moline then assessed each of these questions, considering a variety of publications, including peer-reviewed articles, and factual evidence relating to Mr. Hoffeditz's exposures to Defendants products and his medical history. Dr. Moline also considered alternative known causes of mesothelioma and excluded them based on Mr. Hoffeditz's medical and occupational history.

The primary dispute between the Parties involves Dr. Moline's answer to the second question, in which [*10] she concluded that through his exposure to Defendants' products, Mr. Hoffeditz was exposed to a dose of asbestos that has been shown to cause mesothelioma. Specifically, Defendants assert that in reaching this conclusion, Dr. Moline relies on an impermissible "each and every breath" theory of causation, which has been held insufficient to establish substantial factor causation under Pennsylvania law. Because, as explained below, Dr. Moline did not rely on an "each and every breath" theory of causation, but instead considered Mr. Hoffeditz's specific exposure to Defendants' products and the work he did with those products, the Court concludes that Dr. Moline's testimony is sufficiently reliable.

As Defendants acknowledge, Dr. Moline has not expressly stated that "each and every breath" of asbestos is substantially causative. Instead, Defendants point to statements by Dr. Moline that, *inter alia*, "there is no safe level of asbestos," ECF No. 113-11 at ¶ 56(c) ("Moline Aff"), and that "[t]he inhalation of *all* asbestos fibers . . . increases the risk of developing an asbestos-related disease," Moline Aff. ¶ 36, and argue that "[t]he 'cumulative exposure' theory [relied upon by Dr. Moline] is just [*11] another semantic way of describing the same inadmissible 'every exposure' theory." ECF No. 113-1 at 4 n.3. Therefore, Defendants argue that under Pennsylvania state law, Dr. Moline's testimony cannot establish causation, and under *Daubert* should not be admitted. Defendant Ford made a nearly identical argument regarding Pennsylvania law in *Rost*. The Pennsylvania Supreme Court rejected Ford's argument and made clear that while reliance on an argument that asserts that "'each and every breath' of asbestos is substantially causative" is impermissible, that does not bar an expert from testifying to the underlying fact "that every exposure [to asbestos] cumulatively contributes to

the total dose," id. at 1045.[7]

Rather than relying on the theory that "each and every breath" of asbestos was a proximate cause of Mr. Hoffeditz's mesothelioma, Dr. Moline considered Mr. Hoffeditz's actual exposure to Defendants' products and his occupational history generally, Moline Aff. ¶¶ 61-65, and his lack of exposure to other causes of mesothelioma. She then concluded that these exposures were significant. In doing so, she looked at Mr. Hoffeditz's answers to interrogatories, his deposition transcript, and his [*12] medical records, to determine his exposure. 12/11/13 Tr. 82:1-14. To determine Mr. Hoffeditz's exposures from different Defendants' products were "significant," Dr. Moline considered the amount and type of work performed with different products and compared them to studies considering individuals working in similar capacities or analysis of similar products.[8] See, e.g., 12/11/13 Tr. 91:1-94:8 (discussing other studies and case reports finding that the type of asbestos in Defendants' products could give rise to mesothelioma); 12/11/13 Tr. 12 104:2-110:15 (discussing case studies, articles, and government reports concluding that exposure to asbestos containing brakes can give rise to disease, including after the brakes have been used and comparing that literature to the types of work Mr. Hoffeditz did); 12/11/13 Tr. 120:21-122:1 (discussing her review of Mr. Hoffeditz's occupation history and her determination that he would not have had asbestos exposures from other activities); 12/11/13 Tr. 124:24-125:22 (comparing the time between Mr. Hoffeditz's exposure to Defendant's products and his development of mesothelioma to typical latency periods); 12/13/13 Tr. 64:19-65:8 (considering the [*13] number of Ford vehicles Mr. Hoffeditz had worked on); 12/13/13 Tr. 102:11-108:5 (discussing the types of activities Mr. Hoffedtiz testified were performed on gaskets and comparing to other studies on different types of asbestos containing gaskets); 12/13/13 Tr. 112:1-113:6 (discussing the types of activities Mr. Hoffeditz testified that he performed on brakes). This is precisely the type of analysis that at least one defendant has suggested should be performed. See ECF No. 146 at 3 (explaining that a "'more conventional route of using the scientific method to establish specific causation" is "by presenting a reasonably complete occupational history and providing some reasonable address of potential sources of exposure other than a particular defendant's product" (quoting Betz v. Pneumo Abex, LLC, 44 A.3d 27, 54 (Pa. 2012)).

While Defendants have pointed to specific cases in which they believe Dr. Moline has improperly relied on studies and reports that are improper or contradicted by other studies, Dr. Moline offered competent criticisms of the studies Defendants cite in opposition to her opinion. Thus, the Court finds these contradictions are best addressed through cross-examination. Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary [*14] evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Similarly, to the extent Defendants argue Dr. Moline should not have relied studies and reports considering related products to reach conclusions about Defendants' products, (e.g., considering studies on steam gaskets in

---

[7] Instead, as Defendants have repeatedly acknowledged "mesothelioma is a dose-response disease," ECF No. 115 at 5; see, e.g., ECF No. 113-3 at 17, so increases in exposure increase the likelihood of getting the disease.

[8] The Court notes that Judge Robreno, who handled this case as part of the multi-district litigation, has already found that there was sufficient factual evidence in the record as to Ford and Cummins to support a conclusion that Mr. Hoffeditz's exposure to their products had sufficient "frequency, regularity and proximity." ECF No. 113-5; ECF No. 114 Ex. E.

assessing Mr. Hoffeditz's exposures to engine gaskets), this is best addressed through cross-examination and the presentation of contrary evidence.

Finally, to the extent Defendants argue Dr. Moline's testimony should not be admitted because she did not quantify Mr. Hoffeditz's exposure from each Defendant's products, they have failed to articulate how this indicates a lack of reliability or fit. As other courts have noted, in personal injury cases, "[a] quantitative dose calculation . . . may in fact be far more speculative than a qualitative analysis," because as a practical matter, the specific data needed to establish precise quantitative values for exposure are not tracked or maintained in many cases. *McMunn v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 2:10CV143, 2014 WL 814878, at *14 (W.D. Pa. Feb. 27, 2014); *accord Bonner v. ISP Techs., Inc., 259 F.3d 924, 931 (8th Cir. 2001)* ("[I]t was not necessary that Bonner's experts [*15] quantify the amount of FoamFlush to which she was exposed in order to demonstrate that she was exposed to a toxic level of BLO." (citation omitted)). Here, as set forth above, Dr. Moline has assessed Mr. Hoffeditz's exposure from Defendants' products based on his reports of the types of activities that he engaged in. The Court concludes that Dr. Moline's testimony may be considered.

## V. CONCLUSION

Having determined that Dr. Moline is qualified to testify as to the relevant matters and that her testimony is sufficiently reliably and will assist the trier of fact, the Court concludes that Defendants' Motion is DENIED. An appropriate ORDER will accompany this opinion.

DATED: August 4, 2017

/s/ Claire C. Cecchi

CLAIRE C. CECCHI, U.S.D.J.

ORDER

CECCHI, District Judge.

This matter comes before the Court upon the joint motion of Defendants ArvinMeritor, Inc., Rockwell International Corporation,[1] AM General, LLC, Cummins, Inc., Ford Motor Company, and Honeywell, Inc. to exclude the evidence and testimony put forth by Plaintiff Judith Hoffeditz's expert, Dr. Jacqueline Moline. ECF No. 113. For the reasons set forth in this Court's accompanying Opinion,

IT IS on the 4 day of August, 2017,

ORDERED that Defendants' [*16] Motion to Exclude the Expert Testimony of Jacqueline Moline, M.D., is DENIED.

SO ORDERED

/s/ Claire C. Cecchi

HON. CLAIRE C. CECCHI

United States District Judge

End of Document

---

[1] ArvinMeritor is successor-in-interest to the former automotive segment of Rockwell.