**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

CIVIL ACTION NUMBER:
19-md-02875-RBK-KMW
CASE MANAGEMENT CONFERENCE
via ZOOM VIDEOCONFERENCE

---

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
January 18, 2022
Commencing at 4:00 p.m.

**B E F O R E:**          THE HONORABLE THOMAS I. VANASKIE (RET.)
                         SPECIAL MASTER

**A P P E A R A N C E S:**

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
     CHRISTOPHER GEDDIS, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey  07068
For the Plaintiffs

DUANE MORRIS LLP
BY:  SETH A. GOLDBERG, ESQUIRE
     KELLY ANN BONNER, ESQUIRE
30 South 17th Street
Philadelphia, Pennsylvania  19103
For the Defendants, Prinston Pharmaceuticals,
Solco Healthcare U.S. LLC, and
Zhejiang Huahai Pharmaceuticals Ltd.

KANNER & WHITELEY, LLC
BY:  DAVID J. STANOCH, ESQUIRE
     LAYNE HILTON, ESQUIRE
701 Camp Street
New Orleans, Louisiana  70130
For the Plaintiffs

Camille Pedano, Official Court Reporter
camillepedano@gmail.com
609-774-1494

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3        GREENBERG TRAURIG LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
4             STEVEN M. HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
5        Atlanta, Georgia  30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
6        Teva Pharmaceuticals USA, Inc., Actavis LLC,
         and Actavis Pharma, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (PROCEEDINGS held via Zoom videoconference before The Honorable

2  Thomas I. Vanaskie (Ret.), Special Master, at 4:00 p.m.)

3           JUDGE VANASKIE:  All right.  Well, let's get started.

4           Good afternoon, everyone.  Now is the time that's been

5  appointed for us to have our status conference or discovery

6  status conference.  We are going to also hear argument on the

7  question of whether 11 documents in question should be sealed.

8  We're going to talk a little bit about letters I received today

9  dealing with some follow-up discovery.  Specifically, I would

10 like to address the question of the time limits or amount of

11 time to be allotted for that additional discovery, the

12 additional depositions, some logistics with respect to those

13 depositions.  I'd like to address some questions that have been

14 raised with respect to the logistics of some expert witness

15 depositions, so we'll talk about that as well, in terms of who

16 can attend, things of that nature.

17          So we'll proceed with this call in two stages.  The

18 first stage will cover the matters that can be discussed

19 without concerns about confidentiality; and then after we've

20 concluded that part of our conversation, we'll dial in to our

21 normal dial-in number and conduct an *in camera* discussion with

22 respect to the confidentiality issues or the issues that deal

23 with confidentiality.

24          So I take it, Mr. Slater, you'll be the spokesperson

25 for the plaintiffs for the most part?

 1          MR. SLATER:  Only the issues we're going to win, Your

 2   Honor.

 3          JUDGE VANASKIE:  Okay.  All right.  And, Ms. Lockard,

 4   will you be addressing this for the defense on the questions

 5   that you're going to win?

 6          MS. LOCKARD:  I would like to think so, Your Honor,

 7   but I think I'm addressing the deposition logistics and the

 8   expert witness issues.

 9          JUDGE VANASKIE:  Okay.  Very well.

10          All right.  There seems to be agreement -- I'm going

11   to head into the agenda letter.  If you're not being addressed,

12   I will ask you to mute your microphone and we'll proceed from

13   there.  Again, please don't put us on hold because we don't

14   want to listen to that music.

15          The first item I wanted to talk about deals with the

16   dismissal of Rite Aid and Walgreen's from the Medical

17   Monitoring Master Complaint.

18          I take it there's no issue there?  You're going to

19   proceed, Mr. Slater, and have them dismissed?

20          MR. SLATER:  It wasn't one of my issues, Your Honor,

21   but I believe that's already been taken care of and I think

22   maybe a stipulation was filed or it's going to be shortly.

23          JUDGE VANASKIE:  Mr. Stanoch, you showed up on my

24   screen.  Is this your issue?

25          MR. STANOCH:  It is, Your Honor.  Good afternoon.

1  Yes, Your Honor is correct, there is no disagreement.  In fact,

2  we filed the joint stipulation and proposed order about 35, 40

3  minutes ago, so nothing to discuss today, I believe.

4          JUDGE VANASKIE:  All right.  Very well.  Thanks.

5          MR. STANOCH:  You're welcome.

6          JUDGE VANASKIE:  Now let's talk about the deposition

7  logistics for plaintiffs' class certification experts.  And I

8  guess we're talking now in particular about Mr. Najafi and Ms.

9  Craft.  They would like to be deposed remotely.  It doesn't

10  seem to be that there is any dispute that the witness

11  preference shouldn't control, but maybe I'm wrong on that.

12          So who will be addressing this?  Is it you, Ms.

13  Lockard, who will be addressing this?

14          MS. LOCKARD:  Yes, Your Honor.

15          JUDGE VANASKIE:  All right.

16          MS. LOCKARD:  So our position is, you know, obviously,

17  if there is a legitimate need to conduct a remote deposition,

18  you know, we're amenable to that.  We don't want to be

19  unreasonable.  But we don't -- you know, in terms of just

20  simply witness preference, and, you know, I'd like to say these

21  are unprecedented times but they're starting to feel

22  precedented because I feel like we keep coming to this same

23  issue, but given the fluidity with the situation, how this is

24  changing, it's difficult to really say, I think, today what

25  should happen for a deposition that's taking place 30 days from

1  now or even three weeks from now.

2          So our position in response to the request for Ron

3  Najafi and Laura Craft was that let's revisit this closer in

4  time, see if the position has changed.  We do see numbers going

5  down in major cities with Omicron, so it's our hope that we

6  would be able to get past this and proceed with an in-person

7  deposition, which has always been defendants' preference.

8          If there is a strong preference by the witness, you

9  know, with some legitimacy, we will honor that; but we just

10  don't want that to be the default that now because there is

11  another way that we are -- you know, we're having to take all

12  of these remotely, and we certainly don't want it to be the

13  position that we have to take all of plaintiffs' expert

14  depositions via remote Zoom depositions but then they are

15  entitled to come and take all of ours live in person.

16          So we're trying to take it on a case-by-case basis,

17  you know, given the state of the data at the time of the

18  deposition.

19          That's the best way I can present it at this point in

20  time.

21          JUDGE VANASKIE:  Thank you.

22          Ms. Hilton, you are addressing this issue?

23          MS. HILTON:  I am, Your Honor.  Thank you.

24          I think part of our concern, in listening to Ms.

25  Lockard speak, is she references legitimate rational reasons

1    for why the witness should want to proceed with a remote

2    deposition.

3        As we understood from previous guidance from this

4    Court, there should really be no issue if the defending

5    attorney, and we have so agreed in these two instances, is also

6    appearing remotely.  As we stated in our letter, Ms. Craft is

7    taking care of a newborn infant so this is part of the reason

8    why she wishes to proceed remotely to limit her exposure to

9    other people.

10        You know, we're not opposed to revisiting the issue

11   but I guess our question is what happens in two weeks or a week

12   before the deposition if we say, you know, these two witnesses

13   continue to wish to proceed remotely and the defendants say no.

14   I think we sort of wanted to get an issue settled on this so we

15   sort of had guidance for the rest of, you know, both their

16   depositions -- experts' depositions and ours in terms of

17   understanding whether these should be permitted.  We didn't

18   actually think this was a controversial request.

19        JUDGE VANASKIE:  I thought we had laid down a general

20   rule of witness preference, and if the witness expressed a

21   preference to be deposed remotely, we would defer to that

22   without necessarily questioning whether that's a rational

23   decision.

24        I think about I have a 17-year-old stepson, a football

25   player, who won't get vaccinated because he's afraid of

```
 1   needles.  Now, that's irrational but it's legitimate.  And I
 2   don't want to get into these questions about whether it's -- or
 3   I should say it's genuine, it's a genuine fear.  I really don't
 4   want to get into deciding whether somebody's express preference
 5   is rational or genuine.  If it's their preference, given these
 6   still unusual times, although, as you said, Ms. Lockard, not
 7   that much unprecedented now, but these unusual times, we'll
 8   defer to that witness's request.
 9         Now, I don't think there's anything inappropriate
10   about asking the witness one week prior to the deposition what
11   is your preference.  I think you could still proceed with
12   noticing physical presence depositions; but when the witness
13   expresses a preference for a remote deposition, that preference
14   will be honored.
15         In this case, the one witness, Ms. Craft, has a young
16   child, a two-year-old or something like that, she's taking care
17   of, I get that, I understand that problem.  That affects all of
18   us.  I have a three-year-old grandson who was diagnosed with
19   COVID.  It happens.  So I understand all of that.
20         So we are going to go with witness preference.  I
21   think, Ms. Hilton, there's nothing wrong with having these
22   depositions scheduled in person, noticed to be in person,
23   subject to your letting the other side know that the witness
24   prefers that it be remote.  There should be a deadline.  I
25   think one week in advance of letting the defense know is
```

 1   reasonable.  And so we'll proceed along those lines.

 2         Now, another question has come up with respect to

 3   these depositions and that is questioning by multiple defense

 4   counsel, that is that some of -- as I understand it, some of

 5   these expert witnesses offer testimony specific to individual

 6   defendants and, obviously, their counsel will want to have the

 7   opportunity to question those persons.

 8         Now, my understanding here, and I'll ask somebody to

 9   weigh in on this so I make sure I'm understanding it correctly,

10   and that is that we'll still limit ourselves to no more than

11   three persons in the deposition room when it's being conducted

12   in person, but there can be counsel moving in and out to adhere

13   to those limits, but giving individual counsel an opportunity

14   to ask questions specific to their respective clients.

15         Are there any questions with respect to that?

16         MS. HILTON:  Your Honor, if I may, on that particular

17   point, I just -- you know, in the interest of raising our

18   concerns about this arrangement of having a rotating group of

19   people who come in and out, I do believe there are some

20   concerns about the exposure, right?  You know, in the previous

21   -- as we understood it, we were limiting the exposure for a

22   witness to an absolute number of people but under the

23   defendants' proposal of having people rotate in the deposition,

24   that exposure, especially once you consider travel and flights

25   and people coming from all across the country to attend the

 1   deposition, that exposure becomes exponentially higher.  So

 2   that is one of our concerns with the idea of having sort of an

 3   at bat of people coming into the room.  And so I just wanted to

 4   raise that because this was a concern that witnesses have

 5   raised with us, so I would be remiss if I didn't raise it with

 6   Your Honor.

 7        JUDGE VANASKIE:  Well, the ground rule, let me repeat

 8   it, just to make sure we're all operating with the same

 9   understanding, is that the inquiring attorneys have to be fully

10   vaccinated.  So that I think mitigates to some degree that

11   concern.  And let me make it clear:  Fully vaccinated means

12   both doses and a booster so that we consider them to have taken

13   all the precautions that they could.

14        I know there are still break-through cases for people

15   who have been boostered up and that happens and I get that

16   concern.  On the other hand, when there are opinions being

17   expressed that are particular to a specific defendant or group

18   of defendants, their lawyer should have the right to be there

19   to question the witness when they're being conducted in person.

20        So I won't limit it to three attorneys asking

21   questions.  I understand the concern but I think we've taken

22   all of the precautions necessary while also respecting the

23   rights of a particular defendant or group of defendants.

24        So we won't have more than three in the room but it

25   can rotate to accomplish that.

```
 1           MS. HILTON:  Thank you, Your Honor.
 2           JUDGE VANASKIE:  Now, there is also a question with
 3   respect to remote depositions, and that is that the defending
 4   counsel must be remote as well, that is, not present with the
 5   deponent.  And that I believe is fair and appropriate.  So we
 6   will make -- if we haven't made that clear before, I'd like to
 7   make it clear now.  If there's some objections, please express
 8   that now.
 9           MS. HILTON:  Your Honor, I do believe of the I think
10   seven depositions that we provided dates for, it's only two
11   where we're seeking to proceed remotely and then those two we
12   have agreed, which was part of why we didn't realize this would
13   be a dispute we would have to bring to Your Honor, but we did
14   agree to also proceed remotely as well in defending.
15           JUDGE VANASKIE:  Right, I have seen that.  Just to
16   make it clear going forward, you know, it's a fluid situation
17   and in case another witness becomes remote, that would be the
18   ground rule for that witness as well.  All right?
19           MS. HILTON:  Thank you, Your Honor.
20           JUDGE VANASKIE:  Anything else on deposition
21   logistics?
22           MS. LOCKARD:  Not that comes to mind.  Thank you,
23   Judge.
24           JUDGE VANASKIE:  Thank you, Ms. Hilton.  Thank you,
25   Ms. Lockard.
```

1              I would like to, at this time, address the question of

2    the deposition or depositions that will be taken as a result of

3    the order that was issued allowing for the re-deposition on

4    certain matters.  And I received the letters today.  I have

5    read the letters.  I know the letters cover things beyond the

6    depositions, and we can touch upon them, but I thought we could

7    resolve today the question of the duration of the deposition,

8    the question of whether exhibits should be provided in advance

9    of those depositions.  I think there was one other issue that

10   was raised with respect to the depositions, but primarily the

11   duration of the depositions or the timing of the depositions,

12   how soon they should occur.

13              Will this be you, Mr. Slater?

14              MR. SLATER:  It will, Your Honor.  And not to try to

15   rush the argument but I didn't realize that that first part

16   would take as long, but I have to probably leave the Zoom in

17   about 15 minutes for a family obligation, which I should have

18   told you in the beginning, but I don't think this should take

19   more than ten minutes anyway.

20              JUDGE VANASKIE:  All right.  Yes, I don't think we

21   need to spend a lot of time on this question.

22              Who will be addressing it for the defense?

23              MR. GOLDBERG:  Your Honor, this is Seth Goldberg.  I

24   am appearing by telephone today, I'm not on camera, and I will

25   be handling this issue.

1      JUDGE VANASKIE:  All right.  Thank you, Mr. Goldberg.

2      My understanding is that the dispute on the duration

3  is whether you should obtain or have the ability for the

4  presumptive time limit of the deposition of seven hours

5  increased by 75 percent I guess it is for translation; and the

6  defense point of view is five hours total time, that would

7  include translation time.  So that would limit you to three and

8  a half hours if you're increasing it for translation time,

9  increasing the duration of the deposition for translation time.

10  And my understanding, as well, is that five hours equates to

11  the amount of time that you've all agreed to for purposes of

12  conducting depositions when the witness is located in Macao.

13      Is my understanding correct?

14      MR. SLATER:  It is.  Yes.  I think generally, I don't

15  know that it was really an agreement, it was more just that was

16  generally how long we would go each evening because we were

17  starting around seven or so at night, and they usually ended

18  around midnight, somewhere between 12, 1:00 in the morning,

19  sometimes a little earlier, sometimes later.

20      JUDGE VANASKIE:  Okay.  All right.  Mr. Goldberg, is

21  my understanding correct?

22      MR. GOLDBERG:  Your understanding as to the state of

23  play, Your Honor, is correct.  ZHP's position is that for this

24  additional testimony, three and a half hours plus 75 percent

25  should be sufficient.

 1          I don't know how much Your Honor wants to get into it.

 2     Obviously we've put it in our letter brief and I know Mr.

 3     Slater's short on time, but given that the original testimony

 4     on these very specific matters only took 40 minutes, at most,

 5     we are proposing three and a half hours, which would give them

 6     the 40 minutes plus another two hours or so to ask follow-up

 7     questions.

 8          This is not, as we understand Your Honor's order, a

 9     re-do of a deposition and, therefore, we don't think that the

10     presumptive seven-hour time limit should apply here.  This is a

11     special circumstance to provide plaintiffs with testimony on

12     specific issues they claim they weren't able to obtain.  And

13     Your Honor circumscribed this testimony in that order to this

14     very narrow playing field.

15          So we certainly think three and a half hours plus the

16     deposition testimony is sufficient.  It allows us to get in

17     there and do this in one deposition session.  The witness is

18     going to have to travel from China to Macao, and while they

19     have to provide the testimony, of course the burden is

20     something to be considered.  And the seven-hour deposition plus

21     75 percent actually results in 12 and a half hours of time.

22     And so instead of a one-day session, the plaintiffs are

23     proposing a three-session deposition, three separate days.

24          JUDGE VANASKIE:  I understand.  I understand that, Mr.

25     Goldberg.

```
 1          Mr. Slater?

 2          MR. SLATER:  Yes, Your Honor.

 3          We were very concerned when we saw the initial

 4  proposal and then when we saw this proposal for one evening

 5  because what we're concerned about is that these depositions

 6  are going to be -- or this deposition -- we've been told now

 7  there is going to be one witness produced, someone named Jucai

 8  Gu, who wasn't designated on any of these topics, is going to

 9  be basically running out the clock or at least that's what we

10  don't want to happen.  We don't want to start having conflict

11  with defense counsel as the deposition goes if the witness is

12  taking too long or the witness says she doesn't understand a

13  question or wants to read a document for 30 minutes or whatever

14  it is.  So what I am trying to do is take away an opportunity

15  for a lot of stress between us and I think that the way we do

16  that is to use the standard amount of time with the

17  understanding that -- you know, I can commit that we are going

18  to try to be reasonable about how we ask the questions but

19  these topics -- you know, counsel says it took 40 minutes to

20  ask those questions.  Well, that's because the witnesses didn't

21  answer them.  That's why we're here.  And ZHP, I think, is

22  almost giddy, and I say this as respectfully as I can,

23  obviously, they seem giddy about the outcome of this motion

24  because their view is, well, we now have to go back into areas

25  of the risk assessment, the change control process, the health
```

1   risks, which Min Li didn't answer any questions on that, which

2   may have been the biggest topic of all.  He just deferred to a

3   toxicologist the whole time.  So who do they bring in to

4   testify on that topic?  Jucai Gu who is at the other end of the

5   spectrum.  So you're talking about major areas, and we don't

6   know what the witness is going to say.

7           Your Honor, I think, assumed that when you entered

8   your order that ZHP was probably going to say, fine, we can

9   deem the following questions admitted because it seems so

10  obvious that the answer should be yes, but here we are.  And I

11  think it's very telling that they don't agree to any of the

12  questions as being admitted.  They won't give us any idea of

13  what the witnesses are going to say.

14          So if you put yourself in our shoes, how do we agree

15  to a truncated timeframe when the subject matter is so

16  significant and we don't know what the witnesses are going to

17  say, we don't know how direct their answers are going to be.

18          So what we would like is to use the default time limit

19  and I am sure that if the defense thinks that we abuse that or

20  take too long, they will come to tell Your Honor.  But the

21  alternative of us starting a fight within minutes, potentially,

22  of getting into the deposition or hours as to whether the time

23  is being wasted, I'm just trying to avoid stress in all of our

24  lives.  I think that just opens the door to a real solid source

25  of stress if we do that.

```
 1            JUDGE VANASKIE:  All right.  Mr. Goldberg?
 2            MR. GOLDBERG:  Your Honor, I am comfortable standing
 3    on the position that I expressed.  Your Honor's order was
 4    circumscribed to five specific matters.  There were 24
 5    excerpts, and if you look at those excerpts, most of the
 6    questions were redundant.  So the 40 minutes of testimony time
 7    was actually generous.  We're proposing to give that back plus
 8    permit plaintiffs another two and a half hours of time for
 9    follow-up questions.  This is -- this is more than sufficient
10    given Your Honor's order that the questions should be
11    straightforward and the responses should be direct.  If
12    plaintiffs find that they need more time, they can ask Your
13    Honor for more time.  But three and a half hours is a
14    reasonable compromise to getting this deposition done and it's
15    a fair amount of time for both the parties and the witness to
16    get in there and do this deposition in one deposition day and
17    be done with it.
18            JUDGE VANASKIE:  All right.  Here's my concern:  And
19    I'm going to tell you, I'm going to use the default time of
20    seven hours for the deposition, inclusive of or plus the 75
21    percent for translation time.  I'm only doing that to assure
22    that the deposition can be taken and complete.  I don't expect
23    you're going to require all that time if the questions are
24    straightforward, as I said repeatedly in the order, and the
25    witness gives direct answers and responsive answers.  It
```

1   shouldn't take that amount of time.  But I want to get it done.

2   And by doing this, you'll have to schedule that witness for two

3   days to enable it to be done under the rules as you're

4   following them now about five hours of time and --

5           MR. GOLDBERG:  Your Honor, Your Honor, I'm sorry to

6   interrupt but I think we're missing something here.

7           Judge Schneider issued an order for a seven-hour

8   deposition, a 30(b)(6) deposition, on seven 30(b)(6) topics,

9   entire topics.  That was a seven-hour deposition.  Plaintiffs

10  were able to complete all of the questioning for those seven

11  topics in seven hours.

12          Your order is focused on specific facts, specific

13  questions, for five lines of questioning, and you're proposing

14  now to provide the same amount of time as that seven-30(b)(6)

15  topic seven-hour deposition.

16          If plaintiffs can complete the questioning on seven

17  30(b)(6) topics in seven hours, surely they can complete the

18  questioning on five lines of questions, five lines of

19  questioning, five fact areas, which Your Honor ordered needed

20  to be specific, in three and a half hours.

21          This is not, Your Honor, two days of deposition; this

22  is three days.  The first day will be five hours, the second

23  day will be five hours, the witness will have to come back for

24  another two and a half hours.

25          JUDGE VANASKIE:  I don't expect that will happen.  Go

1   ahead, please complete.

2       MR. GOLDBERG:  The way to get this deposition done,

3   Your Honor, is to limit the amount of time because this is just

4   going to be a -- this is going to become a fishing expedition

5   far beyond the specific matters that Your Honor has ordered to

6   be covered.

7       It seems as though there's nothing that ZHP can do to

8   have a balance here.  But the reality is this deposition is

9   going to go far beyond what Your Honor's explicit -- the

10  explicit terms of this order seemed to envision.

11      JUDGE VANASKIE:  This deposition should not need to be

12  taken.  This deposition is being ordered as a sanction because

13  witnesses were evasive, were nonresponsive to questions that I

14  thought could have been answered much more directly.

15      I fully expect that this deposition can be completed

16  within one day; but I am not going to allow a witness to

17  filibuster, to be evasive, to run out the clock and then you

18  come back and I'm getting a request for another day of

19  deposition.  This is intended to enable a deposition to be

20  completed, period.  I don't expect that it's going to take this

21  amount of time.  I haven't seen anything that would warrant my

22  suspicion that the plaintiffs would now move beyond those five

23  areas.  I think it should be completed, as I said, within one

24  evening, one night of questioning, but I'm not going to

25  artificially limit it to that to provide an incentive to

1   filibuster.

2          So this is how we will proceed with this deposition

3   that's being taken as a sanction.  And I've thought about this

4   a lot and that's how we will proceed with this.

5          Plaintiffs will not be required to provide in advance

6   of the deposition exhibits that they intend to use during the

7   deposition.  They're certainly free to do that to expedite the

8   process, but I recognize the work product implications of such

9   a directive and will not require it.

10          In terms of when the depositions are to be completed,

11  I understand that you have a tremendous amount of work on your

12  plates.  I'm hopeful that it can be done by mid-April.  I think

13  you've asked for late April or early May.  I haven't seen

14  anything from the plaintiffs that has indicated that any of the

15  testimony is required in connection with the briefing that is

16  occurring now.  So if it takes till late April, early May, so

17  be it, but they need to get scheduled and need to be completed.

18          I expect we can talk about scheduling of the

19  deposition at a future status conference to get a schedule, but

20  I ask you now to start working on getting the deposition

21  scheduled.  All right?

22          MR. SLATER:  Thank you very much, Your Honor.

23          JUDGE VANASKIE:  Anything else?

24          MR. GOLDBERG:  Your Honor, yes, there is just one

25  issue in terms of the exhibits.  As you'll see in our letter,

1  during these excerpts of testimony, the plaintiffs introduced

2  maybe ten exhibits and asked about some of them, based their

3  questions on some of them.  They never -- they were never

4  prevented from introducing any other exhibits.  And our request

5  is that for this follow-up testimony on these specific matters,

6  plaintiffs be limited to using those deposition exhibits that

7  were previously introduced so that we are staying within these

8  specific matters.

9          JUDGE VANASKIE:  All right.  Mr. Slater?

10         MR. SLATER:  I don't know what the answers were going

11 to be to the questions if they actually answered them.  I

12 certainly know that I had follow-up questions and to limit us

13 to the exhibits that were used -- I'll give you an example.

14 How do we do that with Min Li who wouldn't answer any

15 questions?  How do I limit myself to the exhibits I used, I'm

16 speaking rhetorically, obviously, when I didn't even get into

17 the lines of questions.  The same happened with subjects of

18 risk assessment, change control.  What if someone says

19 something and then I have to pull out a document to say, well,

20 what you just said, let's look at the document you just

21 implicated with that and so on and so forth.  Again, it's an

22 attempt to put us in a straightjacket over testimony that we

23 don't know what they're going to say.  So I don't think that

24 would be equitable or reasonable.

25         JUDGE VANASKIE:  Anything else, Mr. Goldberg?

```
 1          MR. GOLDBERG:  No, Your Honor, except it seems that it
 2   is consistent with Your Honor's order to have this deposition
 3   limited to those specific inquiries, to have the exhibits that
 4   were previously asked about, the answers weren't obtained as to
 5   those documents, that the purpose of this is for them to get
 6   those answers, not to have an entire re-do on a new deposition.
 7          JUDGE VANASKIE:  I agree it shouldn't be a re-do or an
 8   entirely new deposition.  The plaintiffs are limited to the
 9   subject matters of the areas of questioning that are indicated
10   in those excerpts.  I expect they will stay to those subject
11   matter areas or you can instruct your witness not to answer a
12   question because it's gone beyond the areas for which we've
13   allowed a re-deposition or a deposition of a witness.
14   Certainly you can do that, Mr. Goldberg, but I'm not going to
15   artificially limit at this time what exhibits can be used at
16   the deposition.  It may be that there's some document that
17   takes on greater significance in light of other developments in
18   the case that is relevant to the subject matter areas in
19   question, it may be that a witness's answer leads to another
20   document related to that matter.  So I won't artificially limit
21   it at this time.  All right?
22          Anything else on the question of the re-deposition of
23   the witnesses?
24          MR. SLATER:  No, Your Honor.  And I think that if the
25   next topic I think might be the one we are going confidential
```

```
 1  on, I am going to excuse myself.  I am going to call in on that
 2  but I'm not arguing that issue.  And I appreciate it, Your
 3  Honor.  I'm sorry I didn't say something at the outset.  I just
 4  forgot to and didn't think we'd go that long, but thank you
 5  very much.
 6       JUDGE VANASKIE:  All right.  I think that's all I can
 7  address at this time with respect to the re-deposition of
 8  witnesses at this time.
 9       Is there anything else from the perspective of the
10  defense or the perspective of the plaintiffs with respect to
11  our call today other than the confidentiality issues?
12       MR. HARKINS:  Your Honor, this is Steve Harkins with
13  Greenberg Traurig for the Teva defendants.
14       I don't believe this requires any argument but we did
15  just want to confirm that last week the parties submitted
16  briefing on the motion for expansion of time and just ask if
17  the Court required anything further.  I believe defendants are
18  comfortable standing on the brief but just wanted to make sure
19  that the Court had received that and that Your Honor didn't
20  require anything further to render a decision there.
21       JUDGE VANASKIE:  Mr. Harkins, I did receive letters
22  from both sides.  I had anticipated being able to discuss them
23  at this time but the agenda letters for today took more time
24  than I anticipated they would.  So I'm not prepared to discuss
25  it.
```

```
 1           If I think that I will require additional argument, I
 2    will let you all know; but I fully anticipate being able to
 3    decide that question on the basis of the briefs that have been
 4    submitted.
 5           MR. HARKINS:  Understood.  Thank you, Your Honor.
 6           JUDGE VANASKIE:  Thank you.  All right.  So we will
 7    conclude -- Ms. Bonner, is there something you wanted to say?
 8           MS. BONNER:  Yes, Your Honor.  I just wanted to
 9    confirm what the confidential number was that we would be
10    dialing into for the confidentiality argument.  I wasn't sure
11    if it's the one on the docket or a different number.
12           JUDGE VANASKIE:  Larry, are you still there?
13           THE COURTROOM DEPUTY:  I am, Judge.  Just the one on
14    the docket.
15           JUDGE VANASKIE:  Okay.  So it's the one on the docket.
16    So we will end this aspect of the call and ask you to dial in
17    and we will have our in camera discussion.  I intend to limit
18    that discussion to the 11 documents that are at issue that are
19    before me now.  Okay?
20           MS. BONNER:  Okay.  Thank you, Your Honor.
21           JUDGE VANASKIE:  Thanks.
22           (These proceedings concluded at 4:40 p.m.)
23
24
25
```

*United States District Court*
*District of New Jersey*



- - - - - - - - - - - - - - - -

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

- - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/S/ Camille Pedano, CCR, RMR, CRR, CRC, RPR*
*Court Reporter/Transcriber*

*January 20, 2022*
*Date*

*United States District Court*
*District of New Jersey*

## /

/S [1] - 25:6

## 0

07068 [1] - 1:13
08101 [1] - 1:7

## 1

103 [1] - 1:13
11 [2] - 3:7, 24:18
12 [2] - 13:18, 14:21
15 [1] - 12:17
17-year-old [1] - 7:24
17th [1] - 1:16
18 [1] - 1:7
19-md-02875-RBK-KMW [1] - 1:4
19103 [1] - 1:17
1:00 [1] - 13:18

## 2

20 [1] - 25:10
2022 [2] - 1:7, 25:10
24 [1] - 17:4
2500 [1] - 2:4

## 3

30 [3] - 1:16, 5:25, 15:13
30(b)(6 [3] - 18:8, 18:17
30305 [1] - 2:4
3333 [1] - 2:4
35 [1] - 5:2

## 4

40 [5] - 5:2, 14:4, 14:6, 15:19, 17:6
4:00 [2] - 1:8, 3:2
4:40 [1] - 24:22
4th [1] - 1:6

## 6

609-774-1494 [1] - 1:24

## 7

701 [1] - 1:21
70130 [1] - 1:21
75 [4] - 13:5, 13:24, 14:21, 17:20

## A

ability [1] - 13:3
able [5] - 6:6, 14:12,

18:10, 23:22, 24:2
above-entitled [1] - 25:6
absolute [1] - 9:22
abuse [1] - 16:19
accomplish [1] - 10:25
Actavis [2] - 2:5, 2:6
ACTION [1] - 1:3
ADAM [1] - 1:12
additional [4] - 3:11, 3:12, 13:24, 24:1
address [3] - 3:10, 3:13, 12:1, 23:7
addressed [1] - 4:11
addressing [6] - 4:4, 4:7, 5:12, 5:13, 6:22, 12:22
adhere [1] - 9:12
admitted [2] - 16:9, 16:12
advance [3] - 8:25, 12:8, 20:5
affects [1] - 8:17
afraid [1] - 7:25
afternoon [2] - 3:4, 4:25
agenda [2] - 4:11, 23:23
ago [1] - 5:3
agree [4] - 11:14, 16:11, 16:14, 22:7
agreed [3] - 7:5, 11:12, 13:11
agreement [2] - 4:10, 13:15
ahead [1] - 19:1
Aid [1] - 4:16
aided [1] - 1:25
allotted [1] - 3:11
allow [1] - 19:16
allowed [2] - 22:13
allowing [1] - 12:3
allows [1] - 14:16
almost [1] - 15:22
alternative [1] - 16:21
amenable [1] - 5:18
amount [9] - 3:10, 13:11, 15:16, 17:15, 18:1, 18:14, 19:3, 19:21, 20:11
ANN [1] - 1:16
answer [6] - 15:21, 16:1, 16:10, 21:14, 22:11, 22:19
answered [2] - 19:14, 21:11
answers [6] - 16:17, 17:25, 21:10, 22:4, 22:6

## anticipate

anticipate [1] - 24:2
anticipated [2] - 23:22, 23:24
anyway [1] - 12:19
appearing [2] - 7:6, 12:24
apply [1] - 14:10
appointed [1] - 3:5
appreciate [1] - 23:2
appropriate [1] - 11:5
April [3] - 20:12, 20:13, 20:16
areas [8] - 15:24, 16:5, 18:19, 19:23, 22:9, 22:11, 22:12, 22:18
arguing [1] - 23:2
argument [5] - 3:6, 12:15, 23:14, 24:1, 24:10
arrangement [1] - 9:18
artificially [3] - 19:25, 22:15, 22:20
aspect [1] - 24:16
assessment [2] - 15:25, 21:18
assumed [1] - 16:7
assure [1] - 17:21
Atlanta [1] - 2:4
attempt [1] - 21:22
attend [2] - 3:16, 9:25
attorney [1] - 7:5
attorneys [2] - 10:9, 10:20
avoid [1] - 16:23

## B

balance [1] - 19:8
based [1] - 21:2
basis [2] - 6:16, 24:3
bat [1] - 10:3
become [1] - 19:4
becomes [2] - 10:1, 11:17
beginning [1] - 12:18
best [1] - 6:19
between [2] - 13:18, 15:15
beyond [5] - 12:5, 19:5, 19:9, 19:22, 22:12
biggest [1] - 16:2
bit [1] - 3:8
BONNER [3] - 1:16, 24:8, 24:20
Bonner [1] - 24:7
booster [1] - 10:12
boostered [1] - 10:15
break [1] - 10:14
break-through [1] -

10:14
brief [2] - 14:2, 23:18
briefing [2] - 20:15, 23:16
briefs [1] - 24:3
bring [2] - 11:13, 16:3
Building [1] - 1:6
burden [1] - 14:19
BY [4] - 1:12, 1:15, 1:20, 2:3

## C

Camden [1] - 1:7
camera [3] - 3:21, 12:24, 24:17
Camille [2] - 1:23, 25:8
camillepedano@ gmail.com [1] - 1:23
Camp [1] - 1:21
care [3] - 4:21, 7:7, 8:16
case [5] - 6:16, 8:15, 11:17, 22:18
CASE [1] - 1:4
case-by-case [1] - 6:16
cases [1] - 10:14
CCR [1] - 25:8
certain [1] - 12:4
certainly [5] - 6:12, 14:15, 20:7, 21:12, 22:14
CERTIFICATE [1] - 25:2
certification [1] - 5:7
certify [1] - 25:5
change [2] - 15:25, 21:18
changed [1] - 6:4
changing [1] - 5:24
child [1] - 8:16
China [1] - 14:18
CHRISTOPHER [1] - 1:12
circumscribed [2] - 14:13, 17:4
circumstance [1] - 14:11
cities [1] - 6:5
CIVIL [1] - 1:3
claim [1] - 14:12
class [1] - 5:7
clear [4] - 10:11, 11:6, 11:7, 11:16
clients [1] - 9:14
clock [2] - 15:9, 19:17
closer [1] - 6:3
Cohen [1] - 1:6
comfortable [2] -

17:2, 23:18
coming [3] - 5:22, 9:25, 10:3
Commencing [1] - 1:8
commit [1] - 15:17
Complaint [1] - 4:17
complete [5] - 17:22, 18:10, 18:16, 18:17, 19:1
completed [5] - 19:15, 19:20, 19:23, 20:10, 20:17
compromise [1] - 17:14
computer [1] - 1:25
computer-aided [1] - 1:25
concern [6] - 6:24, 10:4, 10:11, 10:16, 10:21, 17:18
concerned [2] - 15:3, 15:5
concerns [4] - 3:19, 9:18, 9:20, 10:2
conclude [1] - 24:7
concluded [2] - 3:20, 24:22
conduct [2] - 3:21, 5:17
conducted [2] - 9:11, 10:19
conducting [1] - 13:12
conference [3] - 3:5, 3:6, 20:19
CONFERENCE [1] - 1:4
confidential [2] - 22:25, 24:9
confidentiality [5] - 3:19, 3:22, 3:23, 23:11, 24:10
confirm [2] - 23:15, 24:9
conflict [1] - 15:10
connection [1] - 20:15
consider [2] - 9:24, 10:12
considered [1] - 14:20
consistent [1] - 22:2
continue [1] - 7:13
Continued [1] - 2:1
control [3] - 5:11, 15:25, 21:18
controversial [1] - 7:18
conversation [1] - 3:20
Cooper [1] - 1:6
correct [5] - 5:1, 13:13, 13:21, 13:23,

25:5
**correctly** [1] - 9:9
**counsel** [7] - 9:4, 9:6, 9:12, 9:13, 11:4, 15:11, 15:19
**country** [1] - 9:25
**course** - 14:19
**Court** [5] - 1:23, 7:4, 23:17, 23:19, 25:8
**COURT** [2] - 1:1, 25:2
**Courthouse** [1] - 1:6
**COURTROOM** [1] - 24:13
**cover** [2] - 3:18, 12:5
**covered** [1] - 19:6
**COVID** [1] - 8:19
**craft** [3] - 5:9, 7:6, 8:15
**Craft** [1] - 6:3
**CRC** [1] - 25:8
**CRR** [1] - 25:8

### D

**data** [1] - 6:17
**Date** [1] - 25:10
**dates** [1] - 11:10
**DAVID** [1] - 1:20
**DAVIS** [1] - 2:3
**days** [5] - 5:25, 14:23, 18:3, 18:21, 18:22
**deadline** - 8:24
**deal** [1] - 3:22
**dealing** - 3:9
**deals** [1] - 4:15
**decide** - 24:3
**deciding** [1] - 8:4
**decision** [2] - 7:23, 23:20
**deem** [1] - 16:9
**default** [3] - 6:10, 16:18, 17:19
**defendant** [2] - 10:17, 10:23
**Defendants** [2] - 1:17, 2:5
**defendants** [6] - 7:13, 9:6, 10:18, 10:23, 23:13, 23:17
**defendants'** [2] - 6:7, 9:23
**defending** [3] - 7:4, 11:3, 11:14
**defense** [8] - 4:4, 8:25, 9:3, 12:22, 13:6, 15:11, 16:19, 23:10
**defer** [2] - 7:21, 8:8
**deferred** [1] - 16:2
**degree** [1] - 10:10
**deponent** [1] - 11:5

**deposed** [2] - 5:9, 7:21
**deposition** [58] - 4:7, 5:6, 5:17, 5:25, 6:7, 6:18, 7:2, 7:12, 8:10, 8:13, 9:11, 9:23, 10:1, 11:20, 12:2, 12:3, 12:7, 13:4, 13:9, 14:9, 14:16, 14:17, 14:20, 14:23, 15:6, 15:11, 16:22, 17:14, 17:16, 17:20, 17:22, 18:8, 18:9, 18:15, 18:21, 19:2, 19:8, 19:11, 19:12, 19:15, 19:19, 20:2, 20:6, 20:7, 20:19, 20:20, 21:6, 22:2, 22:6, 22:8, 22:13, 22:16, 22:22, 23:7
**depositions** [21] - 3:12, 3:13, 3:15, 6:14, 7:16, 8:12, 8:22, 9:3, 11:3, 11:10, 12:2, 12:6, 12:9, 12:10, 12:11, 13:12, 15:5, 20:10
**DEPUTY** [1] - 24:13
**designated** [1] - 15:8
**developments** [1] - 22:17
**diagnosed** [1] - 8:18
**dial** [3] - 3:20, 3:21, 24:16
**dial-in** [1] - 3:21
**dialing** [1] - 24:10
**different** [1] - 24:11
**difficult** [1] - 5:24
**direct** [3] - 16:17, 17:11, 17:25
**directive** [1] - 20:9
**directly** [1] - 19:14
**disagreement** [1] - 5:1
**discovery** [3] - 3:5, 3:9, 3:11
**discuss** [3] - 5:3, 23:22, 23:24
**discussed** [1] - 3:18
**discussion** [3] - 3:21, 24:17, 24:18
**dismissal** [1] - 4:16
**dismissed** [1] - 4:19
**dispute** [3] - 5:10, 11:13, 13:2
**DISTRICT** [2] - 1:1, 1:1
**docket** [3] - 24:11, 24:14, 24:15
**document** [5] - 15:13, 21:19, 21:20, 22:16,

22:20
**documents** [3] - 3:7, 22:5, 24:18
**done** [6] - 17:14, 17:17, 18:1, 18:3, 19:2, 20:12
**door** [1] - 16:24
**doses** [1] - 10:12
**down** [2] - 6:5, 7:19
**DUANE** [1] - 1:15
**duration** [4] - 12:7, 12:11, 13:2, 13:9
**during** [2] - 20:6, 21:1

### E

**early** [2] - 20:13, 20:16
**Eisenhower** [1] - 1:13
**enable** [2] - 18:3, 19:19
**end** [2] - 16:4, 24:16
**ended** [1] - 13:17
**entered** [1] - 16:7
**entire** [2] - 18:9, 22:6
**entirely** [1] - 22:8
**entitled** [2] - 6:15, 25:6
**envision** [1] - 19:10
**equates** [1] - 13:10
**equitable** [1] - 21:24
**especially** [1] - 9:24
**ESQUIRE** [8] - 1:12, 1:12, 1:15, 1:16, 1:20, 1:20, 2:3, 2:3
**evasive** [2] - 19:13, 19:17
**evening** [3] - 13:16, 15:4, 19:24
**example** [1] - 21:13
**except** [1] - 22:1
**excerpts** [4] - 17:5, 21:1, 22:10
**excuse** [1] - 23:1
**exhibits** [10] - 12:8, 20:6, 20:25, 21:2, 21:4, 21:6, 21:13, 21:15, 22:3, 22:15
**expansion** [1] - 23:16
**expect** [6] - 17:22, 18:25, 19:15, 19:20, 20:18, 22:10
**expedite** [1] - 20:7
**expedition** [1] - 19:4
**expert** [4] - 3:14, 4:8, 6:13, 9:5
**experts** [1] - 5:7
**experts'** [1] - 7:16
**explicit** [2] - 19:9, 19:10
**exponentially** [1] - 10:1

**exposure** [5] - 7:8, 9:20, 9:21, 9:24, 10:1
**express** [2] - 8:4, 11:7
**expressed** [3] - 7:20, 10:17, 17:3
**expresses** [1] - 8:13

### F

**fact** [2] - 5:1, 18:19
**facts** [1] - 18:12
**fair** [2] - 11:5, 17:15
**family** [1] - 12:17
**far** [2] - 19:5, 19:9
**fear** [1] - 8:3
**FEDERAL** [1] - 25:2
**field** [1] - 14:14
**fight** [1] - 16:21
**filed** [2] - 4:22, 5:2
**filibuster** [2] - 19:17, 20:1
**fine** [1] - 16:8
**first** [4] - 3:18, 4:15, 12:15, 18:22
**fishing** [1] - 19:4
**five** [11] - 13:6, 13:10, 17:4, 18:4, 18:13, 18:18, 18:19, 18:22, 18:23, 19:22
**flights** [1] - 9:24
**fluid** [1] - 11:16
**fluidity** [1] - 5:23
**focused** [1] - 18:12
**follow** [5] - 3:9, 14:6, 17:9, 21:5, 21:12
**follow-up** [5] - 3:9, 14:6, 17:9, 21:5, 21:12
**following** [2] - 16:9, 18:4
**football** [1] - 7:24
**FOR** [1] - 1:1
**foregoing** [1] - 25:5
**forgot** [1] - 23:4
**forth** [1] - 21:21
**forward** [1] - 11:16
**free** [1] - 20:7
**FREEMAN** [1] - 1:11
**fully** [4] - 10:9, 10:11, 19:15, 24:2
**future** [1] - 20:19

### G

**GEDDIS** [1] - 1:12
**general** [1] - 7:19
**generally** [2] - 13:14, 13:16
**generous** [1] - 17:7
**genuine** [3] - 8:3, 8:5

**Georgia** [1] - 2:4
**giddy** [2] - 15:22, 15:23
**given** [5] - 5:23, 6:17, 8:5, 14:3, 17:10
**GOLDBERG** [8] - 1:15, 12:23, 13:22, 17:2, 18:5, 19:2, 20:24, 22:1
**Goldberg** [7] - 12:23, 13:1, 13:20, 14:25, 17:1, 21:25, 22:14
**grandson** [1] - 8:18
**greater** [1] - 22:17
**GREENBERG** [1] - 2:2
**Greenberg** [1] - 23:13
**ground** [2] - 10:7, 11:18
**group** [3] - 9:18, 10:17, 10:23
**Gu** [2] - 15:8, 16:4
**guess** [3] - 5:8, 7:11, 13:5
**guidance** [2] - 7:3, 7:15

### H

**half** [9] - 13:8, 13:24, 14:5, 14:15, 14:21, 17:8, 17:13, 18:20, 18:24
**hand** [1] - 10:16
**handling** [1] - 12:25
**Harkins** [2] - 23:12, 23:21
**HARKINS** [3] - 2:3, 23:12, 24:5
**head** [1] - 4:11
**health** [1] - 15:25
**Healthcare** [1] - 1:18
**hear** [1] - 3:6
**held** [1] - 3:1
**higher** [1] - 10:1
**HILTON** [6] - 1:20, 6:23, 9:16, 11:1, 11:9, 11:19
**Hilton** [3] - 6:22, 8:21, 11:24
**hold** [1] - 4:13
**honor** [1] - 6:9
**Honor** [39] - 4:2, 4:6, 4:20, 4:25, 5:1, 5:14, 6:23, 9:16, 10:6, 11:1, 11:9, 11:13, 11:19, 12:14, 12:23, 13:23, 14:1, 14:13, 15:2, 16:7, 16:20, 17:2, 17:13, 18:5, 18:19, 18:21, 19:3, 19:5, 20:22, 20:24,

22:1, 22:24, 23:3, 23:12, 23:19, 24:5, 24:8, 24:20
**Honor's** [5] - 14:8, 17:3, 17:10, 19:9, 22:2
**HONORABLE** [1] - 1:9
**Honorable** [5] - 3:1
**honored** [1] - 8:14
**hope** [1] - 6:5
**hopeful** [1] - 20:12
**hour** [5] - 14:10, 14:20, 18:7, 18:9, 18:15
**hours** [20] - 13:4, 13:6, 13:8, 13:10, 13:24, 14:5, 14:6, 14:15, 14:21, 16:22, 17:8, 17:13, 17:20, 18:4, 18:11, 18:17, 18:20, 18:22, 18:23, 18:24
**Huahai** [1] - 1:18

**I**

**idea** [2] - 10:2, 16:12
**implicated** [1] - 21:21
**implications** [1] - 20:8
**IN** [1] - 1:4
**in-person** [1] - 6:6
**inappropriate** [1] - 8:9
**Inc** [2] - 2:5, 2:6
**incentive** [1] - 19:25
**include** [1] - 13:7
**inclusive** [1] - 17:20
**increased** [1] - 13:5
**increasing** [2] - 13:8, 13:9
**indicated** [2] - 20:14, 22:9
**individual** [2] - 9:5, 9:13
**Industries** [1] - 2:5
**infant** [1] - 7:7
**initial** [1] - 15:3
**inquiries** [1] - 22:3
**inquiring** [1] - 10:9
**instances** [1] - 7:5
**instead** [1] - 14:22
**instruct** [1] - 22:11
**intend** [2] - 20:6, 24:17
**intended** [1] - 19:19
**interest** [1] - 9:17
**interrupt** [1] - 18:6
**introduced** [2] - 21:1, 21:7
**introducing** [1] - 21:4
**irrational** [1] - 4:7
**issue** [12] - 4:18, 4:24, 5:23, 6:22, 7:4, 7:10,

7:14, 12:9, 12:25, 20:25, 23:2, 24:18
**issued** [2] - 12:3, 18:7
**issues** [7] - 3:22, 4:1, 4:8, 4:20, 14:12, 23:11
**item** [1] - 4:15

**J**

**January** [2] - 1:7, 25:10
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:7, 1:13
**joint** [1] - 5:2
**Jucai** [2] - 15:7, 16:4
**JUDGE** [32] - 3:3, 4:3, 4:9, 4:23, 5:4, 5:6, 5:15, 6:21, 7:19, 10:7, 11:2, 11:15, 11:20, 11:24, 12:20, 13:1, 13:20, 14:24, 17:1, 17:18, 18:25, 19:11, 20:23, 21:9, 21:25, 22:7, 23:6, 23:21, 24:6, 24:12, 24:15, 24:21
**Judge** [3] - 11:23, 18:7, 24:13

**K**

**KANNER** [1] - 1:19
**KATZ** [1] - 1:11
**keep** [1] - 5:22
**KELLY** [1] - 1:16

**L**

**laid** [1] - 7:19
**Larry** [1] - 24:12
**last** [1] - 23:15
**late** [2] - 20:13, 20:16
**Laura** [1] - 6:3
**lawyer** [1] - 10:18
**LAYNE** [1] - 1:20
**leads** [1] - 22:19
**least** [1] - 15:9
**leave** [1] - 12:16
**legitimacy** [1] - 6:9
**legitimate** [3] - 5:17, 6:25, 8:1
**letter** [4] - 4:11, 7:6, 14:2, 20:25
**letters** [6] - 3:8, 12:4, 12:5, 23:21, 23:23
**letting** [2] - 8:23, 8:25
**Li** [2] - 16:1, 21:14
**LIABILITY** [1] - 1:4
**light** [1] - 22:17
**limit** [14] - 7:8, 9:10, 10:20, 13:4, 13:7,

14:10, 16:18, 19:3, 19:25, 21:12, 21:15, 22:15, 22:20, 24:17
**limited** [3] - 21:6, 22:3, 22:8
**limiting** [1] - 9:21
**limits** [2] - 3:10, 9:13
**lines** [5] - 9:1, 18:13, 18:18, 21:17
**listen** [1] - 4:14
**listening** [1] - 6:24
**LITIGATION** [1] - 1:4
**live** [1] - 6:15
**lives** [1] - 16:24
**LLC** [4] - 1:11, 1:18, 1:19, 2:5
**LLP** [2] - 1:15, 2:2
**located** [1] - 13:12
**Lockard** [5] - 4:3, 5:13, 6:25, 8:6, 11:25
**LOCKARD** [5] - 2:3, 4:6, 5:14, 5:16, 11:22
**logistics** [5] - 3:12, 3:14, 4:7, 5:7, 11:21
**look** [2] - 17:5, 21:20
**Louisiana** [1] - 1:21
**Ltd** [2] - 1:18, 2:5

**M**

**Macao** [2] - 13:12, 14:18
**major** [2] - 6:5, 16:5
**MANAGEMENT** [1] - 1:4
**Master** [2] - 3:2, 4:17
**MASTER** [1] - 1:9
**matter** [5] - 16:15, 22:11, 22:18, 22:20, 25:6
**matters** [8] - 3:18, 12:4, 14:4, 17:4, 19:5, 21:5, 21:8, 22:9
**MAZIE** [1] - 1:11
**means** [1] - 10:11
**mechanical** [1] - 1:25
**Medical** [1] - 4:16
**microphone** [1] - 4:12
**mid** [1] - 20:12
**mid-April** [1] - 20:12
**midnight** [1] - 13:18
**might** [1] - 22:25
**Min** [2] - 16:1, 21:14
**mind** [1] - 11:22
**minutes** [9] - 5:3, 12:17, 12:19, 14:4, 14:6, 15:13, 15:19, 16:21, 17:6

**missing** [1] - 18:6
**Mitchell** [1] - 1:6
**mitigates** [1] - 10:10
**Monitoring** [1] - 4:17
**morning** [1] - 13:18
**MORRIS** [1] - 1:15
**most** [3] - 3:25, 14:4, 17:5
**motion** [2] - 15:23, 23:16
**move** [1] - 19:22
**moving** [1] - 9:12
**MR** [19] - 4:1, 4:20, 4:25, 5:5, 12:14, 12:23, 13:14, 13:22, 15:2, 17:2, 18:5, 19:2, 20:22, 20:24, 21:10, 22:1, 22:24, 23:12, 24:5
**MS** [11] - 4:6, 5:14, 5:16, 6:23, 9:16, 11:1, 11:9, 11:19, 11:22, 24:8, 24:20
**multiple** [1] - 9:3
**music** [1] - 4:14
**must** [1] - 11:4
**mute** [1] - 4:12

**N**

**Najafi** [2] - 5:8, 6:3
**named** [1] - 15:7
**narrow** [1] - 14:14
**nature** [1] - 3:16
**NE** [1] - 2:4
**necessarily** [1] - 7:22
**necessary** [1] - 10:22
**need** [6] - 5:17, 12:21, 17:12, 19:11, 20:17
**needed** [1] - 18:19
**needles** [1] - 8:1
**never** [2] - 21:3
**new** [2] - 22:6, 22:8
**NEW** [1] - 1:1
**New** [3] - 1:7, 1:13, 1:21
**newborn** [1] - 7:7
**next** [1] - 22:25
**night** [2] - 13:17, 19:24
**nonresponsive** [1] - 19:13
**normal** [1] - 3:21
**nothing** [3] - 5:3, 8:21, 19:7
**noticed** [1] - 8:22
**noticing** [1] - 8:12
**NUMBER** [1] - 1:3
**number** [4] - 3:21, 9:22, 24:9, 24:11
**numbers** [1] - 6:4

**O**

**objections** [1] - 11:7
**obligation** [1] - 12:17
**obtain** [2] - 13:3, 14:12
**obtained** [1] - 22:4
**obvious** [1] - 16:10
**obviously** [5] - 5:16, 9:6, 14:2, 15:23, 21:16
**occur** [1] - 12:12
**occurring** [1] - 20:16
**OF** [1] - 1:1
**offer** [1] - 9:5
**OFFICIAL** [1] - 25:2
**Official** [1] - 1:23
**old** [2] - 8:16, 8:18
**Omicron** [1] - 6:5
**once** [1] - 9:24
**one** [19] - 4:20, 8:10, 8:15, 8:25, 10:2, 12:9, 14:17, 14:22, 15:4, 15:7, 17:16, 19:16, 19:23, 19:24, 20:24, 22:25, 24:11, 24:13, 24:15
**one-day** [1] - 14:22
**opens** [1] - 16:24
**operating** [1] - 10:8
**opinions** [1] - 10:16
**opportunity** [3] - 9:7, 9:13, 15:14
**opposed** [1] - 7:10
**order** [12] - 5:2, 12:3, 14:8, 14:13, 16:8, 17:3, 17:10, 17:24, 18:7, 18:12, 19:10, 22:2
**ordered** [3] - 18:19, 19:5, 19:12
**original** [1] - 14:3
**Orleans** [1] - 1:21
**ourselves** [1] - 9:10
**outcome** [1] - 15:23
**outset** [1] - 23:3

**P**

**p.m** [3] - 1:8, 3:2, 24:22
**Parkway** [1] - 1:13
**part** [6] - 3:20, 3:25, 6:24, 7:7, 11:12, 12:15
**particular** [4] - 5:8, 9:16, 10:17, 10:23
**parties** [2] - 17:15, 23:15
**past** [1] - 6:6
**Pedano** [2] - 1:23,

25:8
**Pennsylvania** [1] - 1:17
**people** [7] - 7:9, 9:19, 9:22, 9:23, 9:25, 10:3, 10:14
**percent** [4] - 13:5, 13:24, 14:21, 17:21
**period** [1] - 19:20
**permit** [1] - 17:8
**permitted** [1] - 7:17
**person** [6] - 6:6, 6:15, 8:22, 9:12, 10:19
**persons** [2] - 9:7, 9:11
**perspective** - 23:9, 23:10
**Pharma** [1] - 2:6
**Pharmaceutical** [1] - 2:5
**Pharmaceuticals** [3] - 1:17, 1:18, 2:5
**Philadelphia** [1] - 1:17
**physical** [1] - 8:12
**Piedmont** [1] - 2:4
**place** [1] - 5:25
**plaintiffs** [14] - 3:25, 14:11, 14:22, 17:8, 17:12, 18:9, 18:16, 19:22, 20:5, 20:14, 21:1, 21:6, 22:8, 23:10
**Plaintiffs** [2] - 1:14, 1:22
**plaintiffs'** [5] - 5:7, 6:13
**plates** [1] - 20:12
**play** [1] - 13:23
**player** [1] - 7:25
**playing** [1] - 14:14
**plus** [6] - 13:24, 14:6, 14:15, 14:20, 17:7, 17:20
**point** [3] - 6:19, 9:17, 13:6
**position** [6] - 5:16, 6:2, 6:4, 6:13, 13:23, 17:3
**potentially** [1] - 16:21
**precautions** [2] - 10:13, 10:22
**precedented** [1] - 5:22
**preference** [12] - 5:11, 5:20, 6:7, 6:8, 7:20, 7:21, 8:4, 8:5, 8:11, 8:13, 8:20
**prefers** [1] - 8:24
**prepared** [1] - 23:24
**presence** [1] - 8:12
**present** [2] - 6:19, 11:4

**presumptive** [2] - 13:4, 14:10
**prevented** [1] - 21:4
**previous** [2] - 7:3, 9:20
**previously** [2] - 21:7, 22:4
**primarily** [1] - 12:10
**Prinston** [1] - 1:17
**problem** [1] - 8:17
**proceed** [13] - 3:17, 4:12, 4:19, 6:6, 7:1, 7:8, 7:13, 8:11, 9:1, 11:11, 11:14, 20:2, 20:4
**proceedings** [2] - 24:22, 25:6
**PROCEEDINGS** [1] - 3:1
**Proceedings** [1] - 1:25
**process** [2] - 15:25, 20:8
**produced** [2] - 1:25, 15:7
**product** [1] - 20:8
**PRODUCTS** [1] - 1:4
**proposal** [3] - 9:23, 15:4
**proposed** [1] - 5:2
**proposing** [4] - 14:5, 14:23, 17:7, 18:13
**provide** [5] - 14:11, 14:19, 18:14, 19:25, 20:5
**provided** [2] - 11:10, 12:8
**pull** [1] - 21:19
**purpose** [1] - 22:5
**purposes** [1] - 13:11
**put** [4] - 4:13, 14:2, 16:14, 21:22

### Q

**questioning** [9] - 7:22, 9:3, 18:10, 18:13, 18:16, 18:18, 18:19, 19:24, 22:9
**questions** [24] - 3:13, 4:4, 8:2, 9:14, 9:15, 10:21, 14:7, 15:18, 15:20, 16:1, 16:9, 16:12, 17:6, 17:9, 17:10, 17:23, 18:13, 18:18, 19:13, 21:3, 21:11, 21:12, 21:15, 21:17

### R

**raise** [2] - 10:4, 10:5
**raised** [3] - 3:14, 10:5, 12:10
**raising** [1] - 9:17
**rational** [3] - 6:25, 7:22, 8:5
**RE** [1] - 1:4
**re** [7] - 12:3, 14:9, 22:6, 22:7, 22:13, 22:22, 23:7
**re-deposition** [4] - 12:3, 22:13, 22:22, 23:7
**re-do** [3] - 14:9, 22:6, 22:7
**read** [2] - 12:5, 15:13
**real** [1] - 16:24
**reality** [1] - 19:8
**realize** [2] - 11:12, 12:15
**really** [4] - 5:24, 7:4, 8:3, 13:15
**reason** [1] - 7:7
**reasonable** [4] - 9:1, 15:18, 17:14, 21:24
**reasons** [1] - 6:25
**receive** [1] - 23:21
**received** [3] - 3:8, 12:4, 23:19
**recognize** [1] - 20:8
**record** [1] - 25:6
**recorded** [1] - 1:25
**redundant** [1] - 17:6
**references** [1] - 6:25
**related** [1] - 22:20
**relevant** [2] - 22:18
**remiss** [1] - 10:5
**remote** [8] - 5:17, 6:14, 7:1, 8:13, 8:24, 11:3, 11:4, 11:17
**remotely** [8] - 5:9, 6:12, 7:6, 7:8, 7:13, 7:21, 11:11, 11:14
**render** [1] - 23:20
**repeat** [1] - 10:7
**repeatedly** [1] - 17:24
**Reporter** [1] - 1:23
**REPORTER'S** [1] - 25:2
**Reporter/ Transcriber** [1] - 25:8
**request** [5] - 6:2, 7:18, 8:8, 19:18, 21:4
**require** [4] - 17:23, 20:9, 23:20, 24:1
**required** [3] - 20:5, 20:15, 23:17

**requires** [1] - 23:14
**resolve** [1] - 12:7
**respect** [9] - 3:12, 3:14, 3:22, 9:2, 9:15, 11:3, 12:10, 23:7, 23:10
**respectfully** [1] - 15:22
**respecting** [1] - 10:22
**respective** [1] - 9:14
**response** [1] - 6:2
**responses** [1] - 17:11
**responsive** [1] - 17:25
**rest** [1] - 7:15
**result** [1] - 12:2
**results** [1] - 14:21
**Ret** [1] - 3:2
**RET** [1] - 1:9
**revisit** [1] - 6:3
**revisiting** [1] - 7:10
**rhetorically** [1] - 21:16
**rights** [1] - 10:23
**risk** [2] - 15:25, 21:18
**risks** [1] - 16:1
**Rite** [1] - 4:16
**RMR** [1] - 25:8
**Road** [1] - 2:4
**Ron** [1] - 6:2
**room** [3] - 9:11, 10:3, 10:24
**Roseland** [1] - 1:13
**rotate** [2] - 9:23, 10:25
**rotating** [1] - 9:18
**RPR** [1] - 25:8
**rule** [3] - 7:20, 10:7, 11:18
**rules** [1] - 18:3
**run** [1] - 19:17
**running** [1] - 15:9
**rush** [1] - 12:15

### S

**sanction** [2] - 19:12, 20:3
**saw** [2] - 15:3, 15:4
**schedule** [2] - 18:2, 20:19
**scheduled** [3] - 8:22, 20:17, 20:21
**scheduling** [1] - 20:18
**Schneider** [1] - 18:7
**screen** [1] - 4:24
**sealed** [1] - 3:7
**second** [1] - 18:22
**see** [3] - 6:4, 20:25
**seeking** [1] - 11:11
**seem** [2] - 5:10, 15:23
**separate** [1] - 14:23
**session** [3] - 14:17,

14:22, 14:23
**SETH** [1] - 1:15
**Seth** [1] - 12:23
**settled** [1] - 7:14
**seven** [14] - 11:10, 13:4, 13:17, 14:10, 14:20, 17:20, 18:7, 18:8, 18:9, 18:10, 18:11, 18:15, 18:16, 18:17
**seven-30(b)(6** [1] - 18:14
**seven-hour** [5] - 14:10, 14:20, 18:7, 18:9, 18:15
**shoes** [1] - 16:14
**short** [1] - 14:3
**shortly** [1] - 4:22
**showed** [1] - 4:23
**side** [1] - 8:23
**sides** [1] - 23:22
**significance** [1] - 22:17
**significant** [1] - 16:16
**simply** [1] - 5:20
**situation** [2] - 5:23, 11:16
**SLATER** [10] - 1:11, 1:12, 4:1, 4:20, 12:14, 13:14, 15:2, 20:22, 21:10, 22:24
**Slater** [5] - 3:24, 4:19, 12:13, 15:1, 21:9
**Slater's** [1] - 14:3
**Solco** [1] - 1:18
**solid** [1] - 16:24
**someone** [2] - 15:7, 21:18
**sometimes** [2] - 13:19
**somewhere** [1] - 13:18
**soon** [1] - 12:12
**sorry** [2] - 18:5, 23:3
**sort** [3] - 7:14, 7:15, 10:2
**source** [1] - 16:24
**South** [1] - 1:16
**speaking** [1] - 21:16
**SPECIAL** [1] - 1:9
**Special** [1] - 3:2
**special** [1] - 14:11
**specific** [13] - 9:5, 9:14, 10:17, 14:4, 14:12, 17:4, 18:12, 18:20, 19:5, 21:5, 21:8, 22:3
**specifically** [1] - 3:9
**spectrum** [1] - 16:5
**spend** [1] - 12:21
**spokesperson** [1] -

*3:24*

**stage** [1] - 3:18
**stages** [1] - 3:17
**standard** [1] - 15:16
**standing** [2] - 17:2, 23:18
**STANOCH** [3] - 1:20, 4:25, 5:5
**Stanoch** [1] - 4:23
**start** [2] - 15:10, 20:20
**started** [1] - 3:3
**starting** [3] - 5:21, 13:17, 16:21
**state** [2] - 6:17, 13:22
**STATES** [1] - 1:1
**status** [3] - 3:5, 3:6, 20:19
**stay** [1] - 22:10
**staying** [1] - 21:7
**stenography** [1] - 1:25
**stepson** [1] - 7:24
**Steve** [1] - 23:12
**STEVEN** [1] - 2:3
**still** [5] - 8:6, 8:11, 9:10, 10:14, 24:12
**stipulation** [2] - 4:22, 5:2
**straightforward** [2] - 17:11, 17:24
**straightjacket** [1] - 21:22
**Street** [2] - 1:16, 1:21
**Streets** [1] - 1:6
**stress** [3] - 15:15, 16:23, 16:25
**strong** [1] - 6:8
**subject** [5] - 8:23, 16:15, 22:9, 22:10, 22:18
**subjects** [1] - 21:17
**submitted** [2] - 23:15, 24:4
**sufficient** [3] - 13:25, 14:16, 17:9
**Suite** [1] - 2:4
**surely** [1] - 18:17
**suspicion** [1] - 19:22

### T

**telephone** [1] - 12:24
**ten** [2] - 12:19, 21:2
**terms** [6] - 3:15, 5:19, 7:16, 19:10, 20:10, 20:25
**testify** [1] - 16:4
**testimony** [12] - 9:5, 13:24, 14:3, 14:11, 14:13, 14:16, 14:19, 17:6, 20:15, 21:1,

*21:5, 21:22*
**Teva** [3] - 2:5, 2:5, 23:13
**THE** [3] - 1:1, 1:9, 24:13
**therefore** [1] - 14:9
**thinks** [1] - 16:19
**THOMAS** [1] - 1:9
**Thomas** [1] - 3:2
**three** [14] - 6:1, 8:18, 9:11, 10:20, 10:24, 13:7, 13:24, 14:5, 14:15, 14:23, 17:13, 18:20, 18:22
**three-session** [1] - 14:23
**three-year-old** [1] - 8:18
**timeframe** [1] - 16:15
**timing** [1] - 12:11
**today** [8] - 3:8, 5:3, 5:24, 12:4, 12:7, 12:24, 23:11, 23:23
**took** [3] - 14:4, 15:19, 23:23
**topic** [4] - 16:2, 16:4, 18:15, 22:25
**topics** [6] - 15:8, 15:19, 18:8, 18:9, 18:11, 18:17
**total** [1] - 13:6
**touch** [1] - 12:6
**toxicologist** [1] - 16:3
**transcript** [2] - 1:25, 25:5
**transcription** [1] - 1:25
**translation** [5] - 13:5, 13:7, 13:8, 13:9, 17:21
**Traurig** [1] - 23:13
**TRAURIG** [1] - 2:2
**travel** [2] - 9:24, 14:18
**tremendous** [1] - 20:11
**truncated** [1] - 16:15
**try** [2] - 12:14, 15:18
**trying** [3] - 6:16, 15:14, 16:23
**two** [12] - 3:17, 7:5, 7:11, 7:12, 8:16, 11:10, 11:11, 14:6, 17:8, 18:2, 18:21, 18:24
**two-year-old** [1] - 8:16

### U

**U.S** [2] - 1:6, 1:18
**under** [2] - 9:22, 18:3
**understood** [3] - 7:3,

*9:21, 24:5*
**UNITED** [1] - 1:1
**unprecedented** [2] - 5:21, 8:7
**unreasonable** [1] - 5:19
**unusual** [2] - 8:6, 8:7
**up** [8] - 3:9, 4:23, 9:2, 10:15, 14:6, 17:9, 21:5, 21:12
**USA** [1] - 2:5

### V

**vaccinated** [3] - 7:25, 10:10, 10:11
**VALSARTAN** [1] - 1:4
**Vanaskie** [1] - 3:2
**VANASKIE** [33] - 1:9, 3:3, 4:3, 4:9, 4:23, 5:4, 5:6, 5:15, 6:21, 7:19, 10:7, 11:2, 11:15, 11:20, 11:24, 12:20, 13:1, 13:20, 14:24, 17:1, 17:18, 18:25, 19:11, 20:23, 21:9, 21:25, 22:7, 23:6, 23:21, 24:6, 24:12, 24:15, 24:21
**via** [3] - 1:5, 3:1, 6:14
**VICTORIA** [1] - 2:3
**VIDEOCONFERENCE** [1] - 1:5
**videoconference** [1] - 3:1
**view** [2] - 13:6, 15:24

### W

**Walgreen's** [1] - 4:16
**wants** [2] - 14:1, 15:13
**warrant** [1] - 19:21
**wasted** [1] - 16:23
**week** [4] - 7:11, 8:10, 8:25, 23:15
**weeks** [2] - 6:1, 7:11
**weigh** [1] - 9:9
**welcome** [1] - 5:5
**WHITELEY** [1] - 1:19
**whole** [1] - 16:3
**win** [2] - 4:1, 4:5
**wish** [1] - 7:13
**wishes** [1] - 7:8
**witness** [30] - 3:14, 4:8, 5:10, 5:20, 6:8, 7:1, 7:20, 8:10, 8:12, 8:15, 8:20, 8:23, 9:22, 10:19, 11:17, 11:18, 13:12, 14:17, 15:7, 15:11, 15:12, 16:6, 17:15, 17:25,

*18:2, 18:23, 19:16, 22:11, 22:13*
**witness's** [2] - 8:8, 22:19
**witnesses** [9] - 7:12, 9:5, 10:4, 15:20, 16:13, 16:16, 19:13, 22:23, 23:8

### Y

**year** [2] - 8:16, 8:18
**young** [1] - 8:15
**yourself** [1] - 16:14

### Z

**Zhejiang** [1] - 1:18
**ZHP** [3] - 15:21, 16:8, 19:7
**ZHP's** [1] - 13:23
**Zoom** [2] - 3:1, 6:14, 12:16
**ZOOM** [1] - 1:5