# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Thomas I. Vanaskie (Ret.), Special Discovery Master |

# ZHP'S BRIEF IN OPPOSITION TO
# PLAINTIFFS' MOTION FOR RULE 37 SANCTIONS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................4

    A.    Plaintiffs Knew They Might Need to Depose Witnesses Living In China Pursuant To The Hague Convention And Neglected To Act. ..........................................................................................4

    B.    ZHP's Good Faith Efforts To Facilitate Mr. Chen's Deposition. .........6

    C.    Plaintiffs Deposed Seventeen ZHP Party Witnesses, Including Twelve Witnesses Living In China, Due To The ZHP Parties' Good Faith Efforts. ................................................................11

    D.    ZHP Agreed To Produce The Documents Despite The Risk Of Penalties Under Chinese Law. ........................................................15

III.    ARGUMENT ...............................................................................17

    A.    Sanctions Are Not Appropriate Because ZHP Acted In Good Faith To Provide The Deposition Of Mr. Chen And The PRC Government Made That Deposition An Impossibility. ......................17

    B.    The Extreme Sanctions Sought By Plaintiffs In Connection With Mr. Chen's Deposition Are Disproportionate And Bear No Relationship To The Facts. ...............................................................22

        1.    ZHP Is Not Responsible For The PRC Government's Denial Of Mr. Chen's Travel Permit. .......................................23

        2.    ZHP Has No History Of Dilatoriness Relating to Mr. Chen's Deposition. ............................................................24

        3.    ZHP Has Not Acted In Bad Faith. .............................................24

        4.    Plaintiffs Cannot Use "Sanctions" As An "Alternative" To Proving Their Claims. .........................................................27

        5.    Plaintiffs Have Suffered No Prejudice. .....................................28

6.    Plaintiffs Have Failed To Consider Less Severe Sanctions. ....................................................................29

C.    As To The Documents, Plaintiffs' Motion Is Moot And The Sanctions Requested Are Disproportionate. .......................................30

IV.    CONCLUSION..............................................................................34

# TABLE OF AUTHORITIES

## Cases

*Abiola v. Abubakar*, 2007 WL 2875493 (N.D. Ill. Sept. 28, 2007)..................25-26

*Ali v. Sims*, 788 F.2d 954 (3d Cir. 1986) ...................................................23

*Am. Stock Exch. v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) ..........................24

*Askhinazi v. Sapir*, 2005 WL 545205 (S.D.N.Y. Mar. 8, 2005)..............................21

*Briscoe v. Klaus*, 538 F.3d 252 (3d Cir. 2008) ........................................23

*Castellani v. City of Atl. City*, 2016 WL 7131576 (D.N.J. June 30, 2016) ...........................................................................30

*Chevron Corp. v. Donziger*, 296 F.R.D. 168 (S.D.N.Y. 2013) ................... 24, 26-27

*Chevron Corp. v. Donziger*, 833 F.3d 74 (2d Cir. 2016).........................................26

*Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) ..............22, 30

*Est. of Spear v. Comm'r*, 41 F.3d 103 (3d Cir. 1994).................................................2

*Givaudan Fragrances Corp. v. Krivda*, 2012 WL 12917268 (D.N.J. May 8, 2012)...........................................................................31

*Huertas v. City of Camden*, 2006 WL 8447446 (D.N.J. May 12, 2006)................31

*Huertas v. City of Philadelphia*, 2005 WL 226149 (E.D. Pa. Jan. 26, 2005) ...........................................................................21

*Linde v. Arab Bank, PLC*, 269 F.R.D. 186 (E.D.N.Y. 2010) ..................................25

*New Pacific Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, 2000 WL 377513 (S.D.N.Y. Apr. 12, 2000) ...........................................24

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)..............23, 31

*Richmark Corp. v. Timber Falling Consultants* 959 F.2d 1468 (9th Cir. 1992) ...........................................................................29

*In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019)....................................................34

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) ........................................................................................22, 30

*Sik Gaek, Inc. v. Harris*, 789 F.3d 797 (7th Cir. 2015) ...........................................21

*Societe Internationale Pour Participations Industrielles et Commerciales S. A. v. Rogers*, 357 U.S. 197 (1958)................................ 3, 19-20

*Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Comm. Corp.)*, 392 B.R. 561 (Bankr. D. Del. 2008)...........................................................................25

*United States v. Vetco Inc.,* 691 F.2d 1281 (9th Cir. 1981)....................................29

*In re Westinghouse Electric Corp. Uranium Contracts Litig.*, 563 F.2d 992 (10th Cir. 1977)................................................................................... 20-21

## Other Authorities

Restatement (Fourth) of Foreign Relations Law § 442 (2018) ..........................3, 19

## I.    INTRODUCTION

Plaintiffs are asking the Court to impose against ZHP the most punishing sanctions available solely because ZHP has to date been unable to secure the permission of the government of the People's Republic of China (PRC) for *one* Chinese national to travel out of China to be deposed. The deponent is the Chief Executive Officer of ZHP, Baohua Chen, who is also an active member of several Chinese government bodies and an elected deputy of the national legislature (the National People's Congress) of the PRC.

Plaintiffs seek such sanctions despite knowing full well that: 1) Plaintiffs are not prejudiced by the absence of Mr. Chen's testimony because they have already deposed seventeen ZHP Party witnesses; 2) those seventeen witnesses (twelve of whom reside in China, and for whom ZHP successfully sought and secured PRC government approval for their travel to Macao to be deposed) collectively testified about fifty-nine 30(b)(6) topics identified by Plaintiffs; 3) Plaintiffs' general causation and class certification expert witnesses have all submitted reports on the central issues in the case and specifically relied on the documents and witness testimony that the ZHP Parties provided; 4) Mr. Chen, as the highest ranking executive at the company, has no material information relating to Plaintiffs' claims beyond what the other ZHP Party witnesses have testified to; 5) ZHP diligently sought to secure the permissions necessary for Mr. Chen to travel out of China to be

deposed; and 6) Plaintiffs themselves never made any efforts to avail themselves of the protocols available under the Hague Convention, as the Court itself has noted.

Plaintiffs now grab for victory in this litigation due to factors that are totally out of ZHP's control. Plaintiffs' "futility" argument about the Hague Convention misses the mark. The Hague Convention provides an avenue for U.S. litigants to obtain discovery in China and Plaintiffs made no attempt to pursue it. Here, ZHP sought to accommodate Plaintiffs by seeking permission for thirteen employees to travel out of China to give depositions and were successful for twelve of them, with permission for only one employee—a member of the supreme legislative body of the PRC—being denied. Had Mr. Chen's testimony been necessary, as Plaintiffs now suggest, one would have expected Plaintiffs to have attempted to secure it from every possible angle. They didn't do that. In point of fact, Plaintiffs (and their experts) have obtained the testimony they need from other ZHP Party witnesses, and are now trying to use the denial of Mr. Chen's travel permit, a circumstance totally out of ZHP's control, to be excused from meeting any burden of proof at all.

Striking a party's defenses and deeming claims admitted are punishing sanctions that require a showing of bad faith, if not more. *See Est. of Spear v. Comm'r*, 41 F.3d 103, 110 (3d Cir. 1994) (emphasis added). No showing of bad faith has been made or could be made here. The opposite is true. ZHP has been forthcoming with the Court and Plaintiffs from the start that the parties would need

to navigate, as the Court itself noted, "very sticky" and "amazingly complex" issues in securing depositions of Chinese nationals. *See* Sept. 16, 2020 Hr'g Tr. at 14:2-6, 21:10-13 (ECF No. 579). While the Court ultimately determined that Mr. Chen's deposition should take place "upon the parties' agreement of when and where," (ECF No. 1475), it is also true that a court may excuse violations of its directions, as is pertinent here, "on the ground that the violations are compelled by another state's law and where the party has acted in good faith to resolve the conflict," as is clearly the case here. *See* Restatement (Fourth) of Foreign Relations Law § 442 (2018) (the "Restatement"); *see also Societe Internationale Pour Participations Industrielles et Commerciales S. A. v. Rogers*, 357 U.S. 197, 211-213 (1958).

In addition, Plaintiffs ask the Court to sanction ZHP in connection with its production of certain documents (the "Documents") that are the subject of Special Master Order ("SMO") No. 54.[1] This aspect of Plaintiffs' motion is moot because ZHP has agreed to produce the Documents — at the risk of penalty under Chinese law — and has begun to produce them. Even were the Court to consider sanctions

---

[1] Plaintiffs identify these documents as (1) the custodial file of Mr. Chen's chief of staff, Xiaofang ("Maggie") Kong; (2) an internal ZHP report discussed in the July 27, 2017 email sent by Jinsheng Lin, with bates numbering beginning at ZHP02710347; (3) all non-privileged documents bearing the designation "TC-201729"; and (4) responsive and non-privileged documents relating to the batch testing for nitrosamines referenced in PRINSTON0075797. *See* Mot. at 1.

related to these Documents, the extreme sanctions Plaintiffs have requested are wholly disproportionate.

For the reasons set forth below, Plaintiffs' motion should be denied.[2]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs Knew They Might Need to Depose Witnesses Living In China Pursuant To The Hague Convention And Neglected To Act.

Plaintiffs have known from the outset of this litigation that they would pursue depositions of ZHP witnesses residing in China, and would thus likely need permission from the PRC government to do so. *See* Apr. 24, 2019 Hr'g Tr. at 16:3-6 (ECF No. 86) (asking litigants the status of issues related to service of process pursuant to the Hague Convention for foreign defendants); Aug. 26, 2020 Hr'g Tr. at 25:21-26:4 (ECF No. 565) (explaining to the Court there are many "foreign national deponents from a number of different countries, some of which are going to require depositions in different locations, some of which there may be jurisdictional issues, and you know, Hague Convention protocols would apply").

---

[2] Plaintiffs' Notice of Motion for Rule 37 Sanctions Against ZHP, *see* ECF No. 1838, seeks sanctions against ZHP, and Plaintiffs' opening brief in support of that motion does not assert factual or legal arguments involving ZHP's U.S. affiliates, nor asserting that sanctions should be imposed upon them. However, in the "Conclusion" section of their opening brief and in their "Proposed Order," *see* ECF No. 1839, Plaintiffs include those U.S. affiliates in their request for sanctions. ZHP contends such inclusion is improper, as Plaintiffs have not asserted a factual or legal basis to request sanctions against ZHP's U.S. affiliates. Nevertheless, out of an abundance of caution, ZHP's U.S. affiliates join in this Opposition. ZHP and its U.S. affiliates are collectively referred to herein as the "ZHP Parties."

Indeed, ZHP explicitly advised Plaintiffs as early as September 2020 that Chinese law prohibits taking depositions of Chinese citizens in China for use in a foreign proceeding without obtaining permission from the PRC government through the Hague Convention. *See* ECF Nos. 637 at 7-10 and 701 at Ex. 1 ¶ 2 (the "Chinese Witness Addendum"); *see also* Sept. 16, 2020 Hr'g Tr. at 12:3-6 (ECF No. 579) (advising that "certain restrictions as to depositions of Chinese nationals" would affect Plaintiffs' ability to depose certain ZHP Party witnesses). Consequently, it was always known to Plaintiffs that they had the option to proceed under the Hague Convention. *See* Sept. 30, 2020 Letter at 1 (ECF No. 582); Sept. 30, 2020 Hr'g Tr. at 9 (ECF No. 586).[3]

---

[3] As the Court repeatedly acknowledged, the depositions of witnesses living in China presented challenging circumstances, especially in light of COVID-19. *See* Sept. 16, 2020 Hr'g Tr. at 14:3-6 (ECF No. 579) (THE COURT: "I couldn't agree with you more that there are *very, very sticky issues* regarding logistics of deposition scheduling … That's why it's important that we start talking about these issues now sooner, rather than later."); *id.* at 21:10-13 (THE COURT: "[I]t's an *amazingly complex* situation that's complicated by the fact that we have foreign defendants and we're in the midst of this pandemic. So it's a *perfect storm*.") (emphasis added). ZHP's efforts to produce the twelve witnesses in Macao who were already deposed involved enormous logistical hurdles relating to the pandemic, including travel restrictions, minimum isolation and quarantine requirements, time limits for travel out of China, personal hardship for parents of newborn children, coordination with travel officials in China and Macao, internet requirements (which needed adjustment after early failures), and even providing food for witnesses because of hotel restaurant closures.

Nonetheless, Plaintiffs never sought approval from the PRC government through the Hague Convention to depose ZHP employees living in China. *See* Oct. 26, 2020 Letter at 3-4 (ECF No. 604) (cautioning Plaintiffs that additional deposition protocols to safeguard ZHP's China-resident witnesses were "necessary" because "Plaintiffs have not availed themselves of the procedures under the Hague Convention and China's Civil Procedure Law, which could have resulted in their obtaining permission from the Chinese government … to take the depositions of Chinese nationals residing in mainland China"); *see also* Oct. 28, 2020 Hr'g Tr. at 37-38 (ECF No. 610) ("Plaintiffs can—they certainly are permitted, they haven't made any attempt and, in fact, have outright refused to make an attempt to obtain a letter of request to depose a witness in China"). In fact, Plaintiffs expressly refused to even attempt service on ZHP witnesses in China via the Hague Convention protocols. *See* Mot. at 28-29 (ECF No. 1838) (conceding that Plaintiffs have not even attempted to secure Mr. Chen's deposition via the Hague Convention).

### B.    ZHP's Good Faith Efforts To Facilitate Mr. Chen's Deposition.

Plaintiffs first sought the deposition of Mr. Chen in December 2020. *See* Plaintiffs' Dec. 21, 2020 Letter at 5-6 (ECF No. 685). ZHP's motion to preclude that

deposition under the "apex witness doctrine"[4] (ECF No. 1247) was denied on June 22, 2021, *see* SMO 28 (ECF No. 1330), and Judge Kugler affirmed SMO 28 on August 10, 2021, ordering "Mr. Chen's deposition to take place upon the parties' agreement of when and where." *See* ECF No. 1475. Judge Kugler did not set a date certain for Mr. Chen's deposition, nor did the Court speak to, much less direct ***where*** Mr. Chen's deposition would take place, or ***how*** Mr. Chen's deposition would be secured. However, ZHP understood the Court's Order and made every effort to follow it by accommodating Plaintiffs and attempting to secure permission for Mr. Chen to travel out of China to be deposed, as ZHP had done for the twelve other ZHP witnesses residing in China.

Even before Judge Kugler's affirmance of SMO 28, while ZHP's motion to preclude Mr. Chen's deposition was pending before Judge Vanaskie, ZHP initiated the process of seeking permission from the PRC government to allow Mr. Chen to travel out of China for his deposition. *See* Declaration of Sihan Lu at ¶ 3 (the "Lu Decl."). Given Mr. Chen's status as an active and participating member of several PRC governmental bodies, *see id.* at ¶¶ 3-5; *see also* ECF No. 1244-10 (chart identifying Mr. Chen's various roles within the PRC government), he was required

---

[4] With the Court's permission, ZHP filed a supplemental brief in support of their motion on June 3, 2021, which Plaintiffs opposed on June 7, 2021. *See* ECF No. 1295; ECF No. 1298.

to submit an Approval Form for Leading Cadres to Leave China (border) for Private Purposes in order to obtain approval from the Party Committee within ZHP, the Taizhou Federation of Industry and Commerce, and the Taizhou Exit-Entry Administration of the Public Security Bureau to travel out of China. ZHP submitted such application seeking permission for Mr. Chen to travel out of China to be deposed. *See id.* at ¶¶ 3-4, 6-9. By contrast, the twelve other ZHP witnesses who received permission to travel for their depositions are not members of the PRC government, and did not require the same levels of additional governmental clearances; eight of the ZHP witnesses residing in China are Chinese nationals who obtained travel permission from the Taizhou Exit-Entry Administration of the Public Security Bureau, and four of the ZHP witnesses residing in China are not Chinese citizens and required pre-approval from Health Bureau of Macao SAR of PRC. *See* Lu Decl. at ¶ 14.

The Communist Party Committee within ZHP granted the request for Mr. Chen to travel out of the country to be deposed on June 10, 2021. *See* Lu Decl. at ¶ 7. However, on October 21, 2021, ZHP was informed that the Taizhou Exit-Entry Administration of the Public Security Bureau, and the Taizhou Federation of Industry and Commerce would not grant Mr. Chen's request for a permit to travel out of the country to be deposed. *See id.* at ¶ 10. ZHP promptly notified Plaintiffs and the Court accordingly on October 26, 2021. *See* Oct. 26, 2021 Letter at 1 (ECF

No. 1673). ZHP further advised the Court that it was "still working with the Chinese government to determine whether its restriction on Mr. Chen's travel to appear for a deposition may be lifted or modified, and are also considering whether there are other alternatives for Mr. Chen to provide deposition testimony in this case." *See id.* at 1-2; *see also* Lu Decl. at ¶ 11.

During the next Case Management Conference on October 27, 2021, ZHP again advised the Court that the PRC government would not grant Mr. Chen's request for a travel permit, but that ZHP was nonetheless still attempting to work with the Chinese authorities to determine whether the decision could be reversed or modified. *See* Oct. 27, 2021 Hr'g Tr. at 4:8-11, 5:18-6:11 (ECF No. 1696). On November 22, 2021, ZHP advised the Court that although ZHP and Mr. Chen had "made the necessary and required request to travel outside of mainland China … the [Chinese government] denied Mr. Chen's request to travel outside of mainland China to be deposed in this action." *See* Nov. 22, 2021 Letter at 3-4 (ECF No. 1766). Specifically, ZHP explained:

> [d]ue to his roles at various levels of Chinese official organizations … Mr. Chen was required to obtain the permission of the Communist Party Committee within ZHP to travel outside of mainland China to be deposed in this action, and he was also required to obtain similar permission from the Taizhou Public Security Bureau, Exit-Entry Administration and the Taizhou Federation of Industry and Commerce. We understand that the Communist Party Committee within ZHP granted Mr. Chen's request on June 10, 2021. However, both the

9

Taizhou Public Security Bureau, Exit-Entry Administration and the Taizhou Federation of Industry and Commerce denied Mr. Chen's travel request on October 27, 2021, and, as counsel for ZHP we learned last week that, after further discussions between ZHP and the PRC government, those denials were confirmed to ZHP on November 11, 2021.

*See id.*[5]

Despite ZHP's efforts to accommodate Plaintiffs by facilitating Mr. Chen's deposition, Plaintiffs advised that they would nonetheless seek sanctions based on Mr. Chen's failure to appear for deposition. *See* Dec. 1, 2021 Hr'g Tr. at 4:20-5:1 (ECF No. 1828). ZHP reminded the Court that it was Plaintiffs who chose to proceed

---

[5] ZHP received the written denial of Mr. Chen's travel permit on November 12, 2021. On January 19, 2022, ZHP requested permission from Taizhou Federation of Industry and Commerce to produce it in this litigation. *See* Lu Decl. at ¶ 13. However, Taizhou Federation of Industry and Commerce denied such request, informing ZHP that the written denial may only be disclosed to the Court, and not to the general public. *See id*. Accordingly, in connection with the filing of this Opposition, ZHP is providing the Court with a copy of the written denial of Mr. Chen's travel permit (and a certified translation) on an *ex parte* basis, which are referred to as Exhibits 1 and 2 to the Declaration of Sihan Lu. ZHP is agreeable to the disclosure of such documents to Plaintiffs' counsel pursuant to the terms of the Court's decision affirming SMO 35, wherein Judge Kugler established strict limitations on the disclosure of 23 documents ZHP had designated as being protected under China's state secret laws, and ZHP will provide copies to Plaintiffs' counsel upon their agreement accordingly. *See* ECF No. 1825 at 2, 32-33 (Judge Kugler prescribing detailed process for restricted disclosure of documents implicating Chinese state secrets to ensure limited access by Plaintiffs' counsel and to prohibit public disclosure); *see also* SMO 35, ECF No. 1482 at 16, 18 (Judge Vanaskie concluding that "interests of China preponderate and weigh against compelling disclosure" of documents created by an organ of the Chinese government, and denying Plaintiffs' motion to compel three such documents).

at their own risk by failing to take such action as it was within their power to secure Mr. Chen's deposition through the Hague Convention. *See id.* at 7:3-10.

Significantly, the Court acknowledged that Plaintiffs' own failure to attempt to secure Mr. Chen's deposition through the Hague Convention protocols could prevent any sanctions against ZHP. As the Court cautioned: "And, yes, there is this other matter, other route of a – the route under the Hague [C]onvention, and that might preclude imposition of sanctions." *See id.* at 10:1-3. Plaintiffs then filed the instant motion without first attempting to meet and confer with ZHP in violation of Rule 37. *See* ECF No. 1838.

### C.    Plaintiffs Deposed Seventeen ZHP Party Witnesses, Including Twelve Witnesses Living In China, Due To The ZHP Parties' Good Faith Efforts.

Between January and May 2021, Plaintiffs deposed seventeen ZHP Party witnesses, including ten 30(b)(6) witnesses and another seven in their individual capacities. These witnesses provided more than 164.5 hours of deposition testimony (not including 75% more time for those depositions requiring translation) amounting to thousands of pages of transcripts. The fact that Plaintiffs were able to create this extensive record is evidence of the good faith efforts on the part of the ZHP Parties' witnesses and counsel.

The Court has recognized that the ZHP Parties have acted in good faith with respect to their discovery obligations throughout multiple phases of this litigation.

11

*See, e.g.*, Dec. 22, 2020 Hr'g Tr. (ECF No. 694) (THE COURT: "I think it's refreshing and appropriate that there seems to be a dedication to meeting and conferring about these issues … I understand that there could be good faith differing mindsets, even though the parties act in utmost good faith," (at 22:17-25) … "it's a tremendous benefit to ZHP and the Court appreciates its good faith efforts to work with plaintiff[s]," (at 32:21-23) … "I believe that [counsel] is acting in good faith when he represents that right now, these are the earliest practical dates these witnesses could be available. I don't see evidence that there was any strategic reason to push them back," (at 38:12-16) … "ZHP is going to use good faith efforts to use -- to move these depositions up earlier … [w]e have no reason to doubt anyone in this case is not acting in good faith. There's been no evidence of that throughout the case" (at 39:18-21); *see also* Mar. 16, 2021 Hr'g Tr. at 38:12-18 (ECF No. 1042) (THE COURT: "I am favorably impressed by the level of review that the documents went through," … "it shows that you're [the ZHP Parties] really operating in good faith here and I did want to note that") (discussing the ZHP Parties' withholding of a minimal number of documents based on Chinese State Secrecy laws); *see also* ECF No. 1482 (SMO 35) at 17 (THE COURT: "In this case, ZHP has demonstrated good faith").

To accommodate Plaintiffs, ZHP obtained permission from the PRC government for twelve ZHP witnesses residing in China to travel, at ZHP's expense,

to Macao to be deposed. These witnesses did so despite the global pandemic, risking their health and that of their families to testify at their first-ever depositions, which were conducted from a hotel room in Macao and without the ZHP Parties' legal counsel physically present. Seven of these witnesses' depositions lasted 2-5 days due to the additional time needed for translation between Mandarin and English, and to accommodate the 12-hour time difference between Macao and the United States.

The ZHP Party witnesses addressed each of the fifty-nine different topics that Plaintiffs identified in their 30(b)(6) notices as critical to Plaintiffs' claims. *See* ECF No. 651-1 (identifying seven topics encompassing fifty-nine different subtopics).

(1)    "Testing of Valsartan API" was testified to by the heads of ZHP's analytical operations, analysis, quality assurance, and quality control departments;

(2)    "Quality Assurance and Quality Control Activities" was testified to by the heads of ZHP's quality assurance and quality control departments;

(3)    "Process Development" was testified to by the head of ZHP's technology department and the President of ZHP's research and development subsidiary;

(4)    "Communications with Regulatory Agencies" was testified to by the heads of the regulatory affairs departments at ZHP and Prinston;

(5)    "ZHP's Communications with API and Finished Dose Customers and Downstream Customers" was testified to by the head of ZHP's API sales department and the head of Solco's finished dose sales department, and the heads of ZHP's quality assurance and quality control departments;

(6)    "Compliance with cGMPs" was testified to by the heads of ZHP's quality assurance and quality control departments; and

(7)    "Product Tracing" was testified to by the head of ZHP's API sales department and the head of Solco's finished dose sales department.[6]

*See* ECF No. 703-1.

Plaintiffs also deposed another seven ZHP Party witnesses in their individual capacities.[7] Through those witnesses, Plaintiffs obtained testimony on communications with API customers and API marketing; finished dose quality assurance activities and API quality assurance activities; valsartan research and process development; and detailed information regarding ZHP's U.S. subsidiaries from Jun Du, the former Vice Chairman at ZHP and former CEO of ZHP's U.S. subsidiaries, Solco, Huahai U.S., and Prinston.

Although Plaintiffs have speculated otherwise, those ZHP Party witnesses explained that Mr. Chen ***had no material involvement*** in any of the valsartan manufacturing, testing, quality control, quality assurance, recall, regulatory and sales functions at issue in this litigation. *See, e.g.*, Jucai Ge Tr. at 364:5-14, attached as Exhibit A ("I don't think [Mr. Chen] is involved in the day-to-day activities of the API or finished dose product manufacturing. Simply put, I don't think he has any time for that"), and 368:2-5 ("For the NDMA impurity investigation [in 2018], Mr.

---

[6] Each of the 30(b)(6) witnesses was also deposed as a fact witness.

[7] The ZHP Parties have produced approximately 390,000 documents, totaling more than 3,600,000 pages drawn from more than ninety custodians and based on more than 400 search terms identified by Plaintiffs.

Chen never got involved in the root cause analysis, root cause investigation or creation of the deviation report. He never got involved.").

**D.    ZHP Agreed To Produce The Documents Despite The Risk Of Penalties Under Chinese Law.**

In addition to ZHP's efforts to facilitate Plaintiffs' depositions of ZHP employees residing in China (including Mr. Chen), without resort to the Hague Convention, ZHP has worked to comply with discovery orders related to the production of documents—a fact the Court has acknowledged, as noted above. Even after fulfilling its Court-ordered document production obligations, ZHP voluntarily agreed to additional discovery requests from Plaintiffs in an effort to work cooperatively rather than burden this Court with disputes and additional motions. *See* May 7, 2021 Letter (ECF No. 1228). ZHP did so even though these additional requests for documents and custodial files exceeded the scope of discovery ordered by the Court. *See* Dec. 23, 2019 Order (ECF No. 328**).**

Despite its efforts, ZHP was confronted with extraordinary circumstances when the PRC's new Data Security Law went into effect on September 1, 2021. *See* ECF No. 1550-3 at ¶¶ 14-18 (Yang Declaration). As a result of the new law, ZHP was required to obtain permission from the PRC government to produce documents located in China. *Id*. at ¶ 17. Furthermore, the new law prohibits ZHP from exporting to the United States for production the Documents that are the subject of SMO 54 (which encompasses the entirety of the documents at issue in Plaintiffs' motion),

which was issued on November 12, 2021—*after* the Data Security Law went into effect.

Nevertheless, as discussed *infra,* ZHP made numerous good faith efforts to comply with SMO 54 including: (1) collecting and reviewing documents from Ms. Kong's custodial file; (2) conducting additional searches for documents related to "TC-201729"; (3) searching for and collecting additional electronic versions of the document ZHP02710347 from the Court-ordered custodians; (4) meeting and conferring with Plaintiffs in an effort to identify the most expeditious method of providing Plaintiffs with the nitrosamine batch testing results encompassed by SMO 54 that would enable ZHP to comply with the PRC's Data Privacy Law; and (5) agreeing to produce the nitrosamine batch testing results encompassed by SMO 54 when Plaintiffs rejected ZHP's proposed compromise.

Following numerous unsuccessful attempts to obtain permission from the PRC government to produce the relatively small number of Documents not previously produced, ZHP informed Plaintiffs that ZHP would produce all of the remaining Documents, despite risking penalties under Chinese law, and thereby rendering this issue moot.[8] *See* letter from Jessica Priselac to Adam Slater dated

---

[8] The implementation of China's new data security and data privacy laws, and the severe penalties for their violation, have been extensively covered by U.S. news outlets. *See, e.g.*, Eva Xiao, *China Set to Pass One of the World's Strictest Data-Privacy Laws*, Wall St. J. (August 17, 2021, 8:05 AM),

January 19, 2022, attached as Exhibit B (advising Plaintiffs that "[d]espite the penalties that might be imposed under Chinese law … ***ZHP will be producing the documents that are the subject of Special Master Order No. 54***.") (emphasis added). ZHP further advised Plaintiffs that ***"[t]he documents that are the subject of Plaintiffs' pending motion for sanctions are among those that ZHP is in the process of exporting***, ***and will be produced on a rolling basis***" *See id.* (emphasis added). On that basis, ZHP requested that Plaintiffs withdraw the portion of the motion that relates to the Documents. *See id.* Plaintiffs refused to do so, but agreed to address the issue "[i]f and when documents are produced." *See* email from Adam Slater to Jessica Priselac dated January 20, 2022, attached as Exhibit C.

## III.   ARGUMENT

### A.   Sanctions Are Not Appropriate Because ZHP Acted In Good Faith To Provide The Deposition Of Mr. Chen And The PRC Government Made That Deposition An Impossibility.

Plaintiffs understood that the PRC government could, as it has now done in writing, deny Mr. Chen's *voluntary* efforts to travel out of China for his deposition. *See, e.g.*, Sept. 30, 2020 CMC Letter at 1 (ECF No. 582); Sept. 30, 2020 Hr'g Tr. at 9; Oct. 26, 2020 CMC Letter at 3-4 (ECF No. 604)). Plaintiffs knew that the Hague Convention prescribed the alternative protocols for obtaining approval from the PRC

---

https://www.wsj.com/articles/china-set-to-pass-one-of-the-worlds-strictest-data-privacy-laws-11629201927.

government to depose Mr. Chen in China. *Id.* Nevertheless, Plaintiffs have refused to attempt to obtain Mr. Chen's deposition via the Hague Convention. *See, e.g.*, ECF No. 1244 at 6; ECF No. 1244-10.

Plaintiffs have not alleged any undue burden that they would face by proceeding via the Hague Convention, nor could they. Rather, Plaintiffs simply speculate that it would have been "fruitless" to seek Mr. Chen's deposition via the Hague Convention. *See* Mot. at 28. This argument ignores that the United States, China, and sixty other countries are parties to an agreement that was intended to facilitate discovery amongst those countries. To be sure, ZHP does not believe sanctions would be warranted had the PRC government denied an application for Mr. Chen's deposition under the Hague Convention, but Plaintiffs' refusal to even make such an attempt eviscerates their assertion that ZHP should receive the most severe sanctions for it not securing Mr. Chen's travel out of China. As the Court has already acknowledged, Plaintiffs' failure to proceed under the Hague Convention "might preclude imposition of sanctions" against ZHP. *See* Dec. 1, 2021 Hr'g Tr. at 10 (ECF No. 1828).

Even were this Court to deem the impossibility on ZHP's part to produce Mr. Chen for a deposition to be a violation of a court order, the Court has "discretion to excuse violations of law, or moderate the sanctions imposed for such violations, on the ground that the violations are compelled by another state's law" where the party

has acted in good faith to resolve the conflict. *See* Restatement § 442; *see also id.* at cmt. D ("When a court is exercising powers that are inherently discretionary, such as ordering discovery or compelling the production of information … the court has more room to recognize the [Foreign-State Compulsion] defense and to moderate the sanctions that otherwise might apply for noncompliance with federal law.").

The Restatement follows the U.S. Supreme Court's decision in *Societe Internationale Pour Participations Industrielles et Commerciales S. A. v. Rogers*, in which the Supreme Court refused to sanction a Swiss company by dismissing its complaint because a Swiss blocking statute prohibited its compliance with a discovery order. *See* 357 U.S. at 211-13. As the Supreme Court explained:

> [P]etitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control. It is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign ... It does not claim that Swiss laws protecting banking records should here be enforced. It explicitly recognizes that it is subject to procedural rules of United States courts in this litigation and has made full efforts to follow these rules. It asserts no immunity from them. It asserts only its inability to comply because of foreign law ... [*W*]e think that Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

*Id.* (emphasis added). The Supreme Court made clear that a party's "inability to comply because of foreign law" is a "weighty" reason for its non-production of discovery materials — one that must be carefully considered in fashioning any remedy. *Id.* at 211-13.

The Tenth Circuit's decision in *In re Westinghouse Electric Corp. Uranium Contracts Litig.*, 563 F.2d 992 (10th Cir. 1977) further acknowledged, following the Supreme Court's decision in *Rogers,* that foreign laws may preclude the imposition of sanctions for failure to comply with discovery orders where the party has acted in good faith:

> [T]hough a local court has the power to order a party to produce foreign documents despite the fact that such production may subject the party to criminal sanctions in the foreign country, *still the fact of foreign illegality may prevent the imposition of sanctions for subsequent disobedience to the discovery order*. ...

*See* 563 F.2d at 997 (emphasis added) (vacating the district court's contempt order and imposition of monetary sanctions as "not justified" where Canadian nondisclosure regulations prevented compliance with a discovery order).

Here, there can be no question that ZHP acted in good faith in seeking permission not only for Mr. Chen, but for twelve other Chinese witnesses as well, to travel out of China for the purpose of complying with discovery in this litigation. The fact that the PRC government denied ZHP's application for <u>one</u> travel permit out of twelve, a matter clearly entirely outside the control of ZHP, does not support

20

the imposition of sanctions based on lack of good faith. *Compare, e.g., Sik Gaek, Inc. v. Harris*, 789 F.3d 797 (7th Cir. 2015) (affirming the district court's order denying a motion for sanctions where deponent missed two depositions and violated a court order, but made subsequent good-faith efforts to reschedule) *with Askhinazi v. Sapir*, 2005 WL 545205 (S.D.N.Y. Mar. 8, 2005) (awarding sanctions where defendant "engaged in a pattern of misconduct," including willful failure to appear for multiple depositions in order to attend to "pressing" and "complicated" international businesses matters) *and Huertas v. City of Philadelphia,* 2005 WL 226149, at *6 (E.D. Pa. Jan. 26, 2005) (imposing sanctions after plaintiff failed to appear for his own deposition five times while abusing the discovery process by filing "countless motions to compel while providing nothing in return").

ZHP does not have the option of contravening Chinese law (nor can they be expected to) to produce Mr. Chen for his deposition, as Mr. Chen's travel permit has been denied, and he is, at present, prohibited from leaving China. *See* Lu Decl. at ¶¶ 10-12. Consequently, there is no way for the ZHP Parties to produce Mr. Chen for deposition without the permission of the PRC government.[9]

---

[9] Although the parties have never discussed such an alternative, given that Mr. Chen has been, to date, prohibited by the PRC government from traveling out of China to be deposed, as a further showing of ZHP's good faith efforts to provide discovery in this action, Mr. Chen could possibly provide a written declaration setting forth responses to questions that might be asked of him by Plaintiffs.

**B.    The Extreme Sanctions Sought By Plaintiffs In Connection With Mr. Chen's Deposition Are Disproportionate And Bear No Relationship To The Facts.**

Even if the Court were to conclude that some form of sanction were appropriate under Rule 37, which ZHP strongly argues would be inappropriate, Plaintiffs have offered no justification for what they now seek: which is striking ZHP's defenses, deeming all allegations admitted, and precluding ZHP from mounting any defense against its claims. Plaintiffs' inability to depose one witness due to circumstances totally beyond ZHP's control does not justify what amounts to a default judgment against ZHP on all issues of liability in this litigation.

Rule 37 permits only the imposition of "just" sanctions, which must be related to the particular claim to which the discovery order was addressed, and in all events commensurate with a party's willfulness or bad faith. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (concluding that dismissal was not an appropriate sanction where there was no finding that the party acted in bad faith by refusing to comply with the discovery order on the basis of potential Russian sanctions, and the lower court failed to consider the efficacy of lesser sanctions under Rule 37); *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) ("Severe sanctions are justified … when the failure to comply with a court order is due to willfulness or bad faith").

In determining whether to impose sanctions that might effectively establish a party's liability, courts in the Third Circuit must balance six factors: "1) the extent of the party's personal responsibility; 2) a history of dilatoriness; 3) whether the attorney's or party's conduct was willful or in bad faith; 4) meritoriousness of the claim; 5) prejudice to the other party; and 6) appropriateness of alternative sanctions." *See Ali v. Sims*, 788 F.2d 954, 957 (3d Cir. 1986) (citing *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) and *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984)). These factors are to be "weighed by the district courts in order to assure that the 'extreme' sanction of ... default is reserved for the instances in which it is justly merited." *See Poulis*, 747 F.2d at 870. Here, none of these six *Poulis* factors support the imposition of sanctions.

### 1. ZHP Is Not Responsible For The PRC Government's Denial Of Mr. Chen's Travel Permit.

ZHP is not responsible for the PRC government's denial of Mr. Chen's travel permit (*see supra* Sections II.B and III.A-B). *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008) (reversing sanctions based on a plaintiffs' failure to attend a conference where plaintiff asserted that prison officials refused to transport him). No credible argument can be made to the contrary.

23

## 2.    ZHP Has No History Of Dilatoriness Relating to Mr. Chen's Deposition.

As noted above, ZHP immediately sought permission from the Chinese authorities for Mr. Chen to travel for his deposition in late spring of 2021, and ZHP continued to coordinate with multiple levels of Chinese authorities throughout the summer and fall in an effort to secure such permission. *See* Lu Decl. at ¶¶ 4, 6-11. When the Chinese authorities denied Mr. Chen's travel permit on October 21, ZHP's counsel promptly notified the Court on October 26, 2021. *See* Oct. 26, 2021 Letter at 1 (ECF No. 1673).

## 3.    ZHP Has Not Acted In Bad Faith.

Plaintiffs have demonstrated no bad faith conduct by ZHP that would justify the imposition of sanctions, much less the punishing sanctions sought by Plaintiffs. *See, e.g.*, *Chevron Corp. v. Donziger,* 296 F.R.D. 168, 223-24 (S.D.N.Y. 2013) (holding sanctions forfeiting a party's rights to support or oppose claims or defenses are available "only where the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable") (citing *Daval Steel Prods.,* 951 F.2d at 1367); *Am. Stock Exch. v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (regarding the imposition of preclusion sanctions as a "harsh" and generally "disfavored action" that is justified only by a party's "flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure"); s*ee also New Pacific Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*, 2000 WL 377513, at *6 (S.D.N.Y. Apr.

12, 2000) ("orders granting dismissal, default or preclusion are severe sanctions," justified when a failure to comply is due to "willfulness or bad faith"); *Teleglobe USA, Inc. v. BCE Inc. (In re Teleglobe Comm. Corp.)*, 392 B.R. 561, 579 (Bankr. D. Del. 2008) (sanction precluding evidence is harsh punishment to be imposed in only the most extreme circumstances).

ZHP acted throughout in good faith to successfully facilitate twelve other China-resident witnesses' testimony and to attempt to facilitate the deposition of Mr. Chen.[10] The government of the PRC was the sole arbiter as to whether to grant Mr. Chen permission to travel out of the country for a deposition. That permission was denied.

ZHP's conduct stands in stark contrast to those cases in which courts have imposed severe sanctions as a result of a party's bad faith conduct. For example, in *Linde v. Arab Bank, PLC*, the court imposed an adverse inference and preclusion sanctions, and deemed admitted a number of plaintiff's requests for admissions, where it concluded that the bank did not act in good faith in complying with its

---

[10] Plaintiffs rely on only one non-precedential case to justify their extreme sanctions: *Abiola v. Abubakar*, 2007 WL 2875493, at *20 (N.D. Ill. Sept. 28, 2007). But *Abiola* is inapplicable because the court concluded that the witness personally reneged on his agreement to appear for his deposition. *See Abiola*, 2007 WL 2875493, at *18 ("[I]t is fair to infer that Abubakar never intended to comply with his side of the agreement, but only to take the benefits that he obtained from the other side."). Nor did he ask the Nigerian government to permit him to appear for his deposition. *See id.* at *14, 18.

discovery order. *See* 269 F.R.D. 186 (E.D.N.Y. 2010). Although the bank alleged that it acted in "the utmost good faith" by submitting a letter requesting permission from Lebanese banking authorities to disclose the requested information, the court discredited the bank's efforts as "calculated to fail" where the bank represented that plaintiffs' allegations had no basis in reality and mischaracterized the status of the lawsuit. *Id.* at 199-200 ("Its false or exaggerated assertions hardly support a finding of good faith."). The court also pointed to the bank's years of delay as indicating that the bank "never intended to produce certain documents, regardless of this court's rulings on the Bank's foreign secrecy objections." *See id.* at 200.

Likewise, in *Chevron Corp. v. Donziger*, the Second Circuit upheld the striking of the defendants' jurisdictional defenses as an appropriate discovery sanction where it determined that the defendants acted in bad faith by not only refusing to comply with an order compelling the production of documents, but seeking a secretive and "collusive" order in Ecuador to prohibit their disclosure on the basis of Ecuadorian constitutional law. 833 F.3d 74, 216-17, 221 (2d Cir. 2016). Yet even in the *Chevron* case, wherein the lower court noted "defendants' obdurate and quite possibly contemptuous refusal to comply with their discovery obligations," *see Chevron Corp. v. Donziger*, 296 F.R.D. at 222, the Second Circuit refused to prohibit defendants from offering evidence in opposition to the plaintiffs' claims where "[t]he effect of such a sanction essentially would be to enter default judgments

26

against the defendants." *See id.* at 222 ("Although defendants willfully and knowingly have disobeyed the … order, the Court determines that such a harsh course of action is inappropriate in this case and that more narrowly tailored sanctions are available").

### 4. Plaintiffs Cannot Use "Sanctions" As An "Alternative" To Proving Their Claims.

The merits of Plaintiffs' claims are far from being before the Court, much less determined, as the parties have just completed briefing on Rule 702 motions related to Plaintiffs' burden of establishing general causation, and Plaintiffs' class certification motion will not be fully briefed and *sub judice* until sometime in May 2022. No trial date has been set as to any plaintiff on any claim. Nevertheless, the sanctions sought here would result in what Plaintiffs would likely argue is a *de facto* default judgment against ZHP notwithstanding the possibility that Plaintiffs would ultimately be unable to establish the required elements of their claims. If Plaintiffs are successful in the relief they seek here, Plaintiffs will most certainly argue that ZHP is without defenses, legal or factual, to Plaintiffs' claims. And yet, as the Court well understands, the merits of Plaintiffs' claims – or the lack thereof – would still be the subject of active litigation involving other defendants. Such an anomalous result, all based on Plaintiffs' inability to date to take one single witness's deposition, would be patently unfair.

27

### 5.    Plaintiffs Have Suffered No Prejudice.

Plaintiffs have not been prejudiced by the absence of Mr. Chen's deposition. The ZHP Parties have provided, over the course of the past year, no fewer than 164.5 hours and thousands of pages of deposition testimony from seventeen witnesses, on fifty-nine topics identified by Plaintiffs as most crucial to their claims. By contrast, the ZHP Party witnesses established that Mr. Chen had no material involvement in any of the issues Plaintiffs identified as material to their case that Plaintiffs did not or could not obtain from another witness.

Plaintiffs fail to identify a single material issue pertaining to general causation or economic loss on which Mr. Chen's testimony would be determinative. Plaintiffs have provided five general causation expert reports, and seven economic loss and medical monitoring expert reports, and not one of them was prevented from completion due to the absence of Mr. Chen's testimony. To the contrary, many of these experts relied upon the ZHP Parties' documents that have been produced from some of the other more than ninety-seven ZHP Party custodial files, and quoted from portions of the testimony of some of the seventeen other ZHP Party witnesses who have been deposed. *See* Expert Report of Dr. Stephen Lagana, M.D. at 30-31 (citing Min Li Dep. Tr. at 4/22/21, 683:4-9, 685:11-687:4), attached hereto as Exhibit D; Expert Report of Dr. Stephen Hecht, M.D. at 12, 23-25 (citing Min Li Dep. Tr. at 4/22/21, 683:4-9), attached hereto as Exhibit E; Expert Report of John L. Quick at

22 (citing Jucai Ge Dep. Tr. 227:5-23, 170:11-18; Min Li Dep. Tr. at 107:12-14), 24 (citing Remonda Gergis Dep. Tr. at 241:15-24; Jucai Ge Dep. Tr. at 230:7-23), 25 (citing Eric Tsai Dep. Tr. at 173:4-175:6; Minli Zhang Dep. Tr. at 436:13-22; Jucai Ge Dep. Tr. at 313:10-317:16), attached hereto as Exhibit F.  Plaintiffs' written submission seeking sanctions certainly identifies a wish list of conjecture about why Mr. Chen's testimony is so important, but Plaintiffs' experts seem to have had no trouble offering their opinions based on the ZHP witnesses who actually testified in this case.

### 6.    Plaintiffs Have Failed To Consider Less Severe Sanctions.

Even were sanctions warranted, which they are not, Plaintiffs made in effect a tactical decision neither to identify nor seek less severe or more practicable sanctions. Even so, in numerous cases involving sanctions for noncompliance due to foreign law, courts have found monetary penalties, where the conduct in question warranted sanctions, sufficient to address compliance issues. *See, e.g., Richmark Corp. v. Timber Falling Consultants* 959 F.2d 1468, 1471, 1476 (9th Cir. 1992) (affirming monetary sanctions against a Chinese company for refusing to comply with a discovery order due to Chinese state secrecy laws); *United States v. Vetco Inc.,* 691 F.2d 1281, 1291 (9th Cir. 1981) (affirming monetary sanctions against a Swiss company for failure to produce documents in response to an IRS summons pursuant to Swiss law).

29

Here, ZHP has gone to great lengths to facilitate Mr. Chen's deposition – as well as the testimony of the twelve other residents of China who, unlike Mr. Chen, were granted permission to travel. The basic underlying problem with any sanction here, monetary or otherwise, is that there is simply no conduct on the part of ZHP that can be pointed to that has resulted in Mr. Chen not testifying – the PRC government made that decision, and Plaintiffs refused to even plead their case for a deposition through the Hague Convention.

### C.    As To The Documents, Plaintiffs' Motion Is Moot And The Sanctions Requested Are Disproportionate.

Plaintiffs' motion for sanctions as it relates to the Documents is moot because ZHP has agreed to produce, and has begun producing, all outstanding documents responsive to SMO 54. Therefore, there is no basis to impose sanctions at all, let alone the disproportionate sanctions proposed by Plaintiffs.[11]

Courts in the Third Circuit have routinely refused to impose sanctions where, as here, the party to be sanctioned has produced the requested discovery or otherwise complied with the discovery order at issue. *See, e.g.*, *Castellani v. City of Atl. City*, 2016 WL 7131576, at *5 (D.N.J. June 30, 2016) (denying motion for sanctions as

---

[11] *See Shcherbakovskiy*, 490 F.3d 130 at 140 (concluding that dismissal was not an appropriate sanction where there was no showing of bad faith noncompliance, and the lower court failed to consider the efficacy of lesser sanctions); *Daval Steel Prods.*, 951 F.2d at 1367 ("Severe sanctions are justified … when the failure to comply with a court order is due to willfulness or bad faith").

"not warranted" where defendant made a production, "albeit after the deadline imposed by the court's … [o]rder," in a form that defendant believed to be sufficient"); *Givaudan Fragrances Corp. v. Krivda*, 2012 WL 12917268, at *16 (D.N.J. May 8, 2012) (denying plaintiffs' motion for sanctions as "moot" where plaintiffs conceded that by the date of the parties' sanctions hearing, defendants' production was adequate); *Huertas v. City of Camden*, 2006 WL 8447446, at *4 (D.N.J. May 12, 2006) (denying motion for sanctions where defendant's delay in responding to interrogatories "has not caused great prejudice to the plaintiff" and because defendants did not have a history of dilatoriness).

Here, all six *Poulis* factors weigh heavily against imposing liability on ZHP in connection with the Documents. *See* 747 F.2d 863.

***First***, ZHP is not "personally responsible" for any noncompliance with SMO 54 that resulted from the PRC's Data Security Law coming into effect on September 1, 2021[12], and prohibiting ZHP from exporting to the United States for production the Documents that are the subject of SMO 54. Nor can Plaintiffs allege that there

---

[12] In their Brief, Plaintiffs encourage the Court to "note that the National People's Congress, of which Baohua Chen is a member, promulgated this law." Mot. at 26. There are approximately 3,000 members of the National People's Congress, and it is simply preposterous to imply that a country the size of China would enact such a broad and sweeping law in response to this litigation or a request by Mr. Chen.

has been ***any*** noncompliance where ZHP has either produced, agreed to produce, or is in the process of producing all of the documents subject to SMO 54.

***Second***, any accusation that ZHP intentionally delayed is belied by its tireless efforts to comply with SMO 54, despite the obstacles presented by the new Data Security Law. For example:

(1)   ZHP collected and reviewed documents from the custodial file of Xiaofang (Maggie) Kong, and will be producing these documents to Plaintiffs on a rolling basis.[13] *See* Ex. B;

(2)   ZHP previously produced the documents requested by Plaintiffs related to "TC-201729," and is in the process of searching for and collecting all electronic versions of ZHP02710347, as ordered by SMO 54. *See* ECF No. 1753 at 10 (requiring ZHP to produce "[n]o later than November 22, 2021 … the document bearing bates number ZHP02710347, et seq., in its native format with metadata."); *see also* Ex. B;

(3)   Consistent with SMO 54, which instructed ZHP to "search again for documents bearing the designation, 'TC-201729,'" ZHP is conducting an additional search for documents responsive to this instruction. *See* ECF No. 1753 at 6; *see also* Ex. B;

(4)   Consistent with SMO 54, (ECF No. 1753 at 10), the parties met and conferred, and ZHP proposed compiling a spreadsheet of ZHP's nitrosamine batch testing results contemplated by SMO 54. Plaintiffs rejected that proposal, and insisted that ZHP produce all of the

---

[13] Plaintiffs have repeatedly and falsely asserted that Ms. Kong's file was ordered to be produced in May 2021. *See* Mot. at 4-5 (ECF No. 1838). However, the Court's own order refutes this assertion. Ms. Kong's custodial file was not ordered to be produced until ***November 12, 2021***. *See* SMO 54 (ECF No. 1753 at 5) ("ZHP will be ordered to produce the relevant, non-privileged parts of Ms. Kong's custodial file, and the impact of China's recently-adopted privacy law will be addressed if raised as a ground for withholding from discovery this potentially significant source of discovery.").

underlying data for such testing, even though those products were never sold in the United States. ZHP disputes that such non-USDMF batch testing records should have been produced, but nonetheless has agreed to, and is now in the process of, making such production in compliance with SMO 54. S*ee* Ex. B.

ZHP also made repeated efforts to seek permission from the PRC government to produce the Documents. *See, e.g.* Yang Decl., ECF No. 1550-3 at ¶ 26. When those efforts failed, ZHP advised Plaintiffs ***no later than January 19, 2022*** that it would produce the Documents, despite the risk of penalties under Chinese law. Did ZHP's efforts to satisfy its conflicting legal obligations result in delays? Yes. But ZHP's ongoing efforts to obtain permission to produce the Documents are evidence of good faith, not dilatory behavior.

***Third***, Plaintiffs have not demonstrated any bad faith or unwillingness by ZHP to comply with their discovery obligations. On the contrary, the fact that ZHP is voluntarily producing the Documents, despite the risk of potential sanctions under Chinese law, demonstrates ZHP's willingness to fulfill its discovery obligations in this litigation.

***Fourth***, as established *supra* III.B.4, Plaintiffs have not come close to demonstrating the merits of their claims where the parties have just completed briefing on Rule 702 motions related to Plaintiffs' burden of establishing general causation, and Plaintiffs' class certification motion will not be fully briefed and *sub judice* until sometime in May 2022.

33

***Fifth***, Plaintiffs cannot genuinely claim that they have been prejudiced given the substantial record that has been developed in this case versus the comparatively small amount of Documents at issue. Plaintiffs have not demonstrated any unfairness or surprise as a result of ZHP's supplemental production, nor claimed that they are unable to prosecute their claims pending ZHP's supplemental production. Nor have Plaintiffs alleged any facts demonstrating that they have been harmed in any way by any perceived delay in obtaining the Documents.

***Lastly***, Plaintiffs have refused to consider less severe sanctions despite courts imposing only monetary sanctions in response to conduct actually warranting sanctions. *See, e.g., In re Sealed Case,* 932 F.3d 915 at 932, 939-40 (D.C. Cir. 2019) (affirming civil contempt sanctions, including a daily fine of $50,000, against Chinese banks for refusing to produce documents in compliance with a discovery order."). By making a tactical decision to seek nothing less than the most severe sanctions, Plaintiffs have forfeited any right to seek anything else in relief.

For these reasons, Plaintiffs' proposed sanctions as to the Documents are disproportionate, and should be denied.

## IV.    CONCLUSION

WHEREFORE, for all of the foregoing reasons, ZHP respectfully requests that the Court deny Plaintiffs' motion for sanctions in connection with the deposition of Mr. Chen and ZHP's supplemental production of the Documents.

Dated: February 2, 2022

Respectfully submitted,

By: /s/ Seth A. Goldberg

DUANE MORRIS LLP
Seth A. Goldberg
30 South 17th Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 979-1000
Fax: (215) 979-1020
SAGoldberg@duanemorris.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co, Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 2, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

*/s/ Seth A. Goldberg*

Seth A. Goldberg
