**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

IN RE:  VALSARTAN, LOSARTAN, AND          CIVIL ACTION NUMBER:

IRBESARTAN PRODUCTS LIABILITY             1:19-md-02875-RBK

LITIGATION                                CASE MANAGEMENT CONFERENCE

                                          VIA TELEPHONE

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey  08101
Wednesday, February 2, 2022
Commencing at 10:01 a.m.


**B E F O R E:**          THE HONORABLE ROBERT B. KUGLER,
                          UNITED STATES DISTRICT JUDGE, and
                          THE HONORABLE THOMAS I. VANASKIE (RET.),
                          SPECIAL MASTER


**A P P E A R A N C E S:**

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey 07068
Counsel for Plaintiffs

KANNER & WHITELEY, LLC
BY:  DAVID J. STANOCH, ESQUIRE
701 Camp Street
New Orleans, Louisiana 70130
Counsel for Plaintiffs


                John J. Kurz, Official Court Reporter
                     Johnjkurz@gmail.com
                      (267)251-0474

        Proceedings recorded by mechanical stenography; transcript
              produced by computer-aided transcription.

1    **A P P E A R A N C E S:** (Continued)

2

3    DUANE MORRIS LLP
     BY: SETH A. GOLDBERG, ESQUIRE
          REBECCA BAZAN, ESQUIRE
4         ALYSON WALKER LOTMAN, ESQUIRE
     30 South 17th Street
5    Philadelphia, Pennsylvania 19103
     Counsel for Defendants Prinston Pharmaceuticals,
6    Solco Healthcare U.S. LLC, and
     Zhejiang Huahai Pharmaceuticals Ltd.

7

8

9    GREENBERG TRAURIG LLP
     BY: VICTORIA DAVIS LOCKARD, ESQUIRE
          STEVEN M. HARKINS, ESQUIRE
10   3333 Piedmont Road, NE, Suite 2500
     Atlanta, Georgia 30305
11   Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
     Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
12   Inc.

13

14   BARNES & THORNBURG, LLP
     BY: SARAH E. JOHNSTON, ESQUIRE
15        KRISTEN L. RICHER, ESQUIRE
     2029 Century Park East, Suite 300
16   Los Angeles, California 90067
     Counsel for Retailer Defendants and CVS Pharmacy, Inc., and
17   Rite Aid Corporation

18

19   **Also present:**

20   Larry MacStravic, The Courtroom Deputy

21   Loretta Smith, Esquire,
     Judicial Law Clerk to the Honorable Robert B. Kugler

22

23

24

25

1              (PROCEEDINGS, held via teleconference before the

2    Honorable Robert B. Kugler and the Honorable Thomas I. Vanaskie

3    (Ret.), Special Master, at 10:01 a.m. as follows:)

4              JUDGE VANASKIE:  Good morning.

5              MS. LOCKARD:  Good morning.

6              Are others hearing an echo of Judge Vanaskie?

7              MS. BAZAN:  Yes.

8              MS. LOTMAN:  Yes.

9              JUDGE VANASKIE:  Are you still hearing the echo?

10             MS. LOCKARD:  Yes.

11             MS. LOTMAN:  Yes.

12             JUDGE VANASKIE:  All right.  Let me dial back in and

13   see if that's better.  Be right back.

14             (Pause.)

15             JUDGE VANASKIE:  All right.  Are you able to hear me?

16   And we're still getting a feedback.

17             COURT REPORTER:  I can hear you fine, Judge.  It's

18   the court reporter.

19             JUDGE VANASKIE:  All right.  Let's ask everybody to

20   mute their phones unless they are the principal spokesperson

21   for this call.  We'll see if that works.

22             Initially I called in -- I'm getting a feedback --

23   initially I called in on my phone.

24             MR. SLATER:  Yes, Judge, you're getting an echo.

25             JUDGE VANASKIE:  I don't know why.

1          *(Whereupon an off-the-record discussion was held.)*

2          JUDGE VANASKIE:  Let's everybody call back in.  All

3    right.  Thanks.

4          *(Whereupon a brief recess was taken.)*

5          JUDGE VANASKIE:  John, can you hear us?  You're on

6    mute.  We'll assume by your silence you can hear us.  But if

7    you're having a problem hearing us, pick up.  I'm not echoing

8    anymore.

9          Are you able to hear me, Mr. Slater?

10         MR. SLATER:  I don't hear any more echo, Judge.

11         JUDGE VANASKIE:  Yeah.  I think if John stays on

12   mute, but only interrupts us if he has a question, I think

13   we'll be all right.  Let's proceed then with our call, okay?

14         COURT REPORTER:  Yes, Your Honor.

15         JUDGE VANASKIE:  Now, at the outset, there's a couple

16   of things that I wanted to mention.

17         First of all, I don't think we'll have Judge Kugler

18   available until about 11:00.  So it does not look like our call

19   should require an hour, but I've been wrong before.  But I just

20   wanted to give you a heads up on that at the outset.

21         Also, I wanted to raise with you all the question of

22   whether any part of this call needs to be confidential.

23         I guess, Larry, if you can hear us, do we have any

24   members of the public or press on the phone?

25         THE COURTROOM DEPUTY:  None that I'm aware of.

1      JUDGE VANASKIE:  All right.  So can we just conduct

2  the call without having to redial in for a confidential part?

3  I know in the defense letter they thought the issue dealing

4  with outstanding class representative depositions would need to

5  be held confidential.

6      MS. LOTMAN:  Your Honor, this is Alyson Lotman on

7  behalf of defendants.  We put that designation in out of an

8  abundance of caution.  However, the issues that would have

9  needed to have been confidential have already been -- they will

10  not need to be dealt with due to the fact that plaintiffs have

11  filed a voluntary dismissal of Ms. Fatigato's claims.  So I

12  believe as long as plaintiffs' counsel agrees, we can proceed

13  without doing that under seal.

14      JUDGE VANASKIE:  All right.  Mr. Slater.

15      MR. SLATER:  Plaintiffs do not believe anything needs

16  to be confidential.

17      JUDGE VANASKIE:  All right.  Does anybody on the

18  defense side think we need to have something confidential here?

19      *(No response.)*

20      JUDGE VANASKIE:  Silence indicates acquiescence.

21  We'll proceed.

22      Before we get into the agenda letter --

23      *(Court reporter interrupted.)*

24      COURT REPORTER:  Sorry, Your Honor.

25      JUDGE VANASKIE:  Before we get into the matters on

1  the agenda letter, there was one thing I wanted to ask, and I

2  think the question will be to you, Mr. Slater.  The Clerk's

3  Office Quality Control discovered two valsartan cases filed for

4  the same named plaintiff and substantially the same defendants.

5  The plaintiff's name is Lee Ester Smoot, S-M-O-O-T.  And we're

6  trying to find out whether that's a mistake and whether or not

7  one of those cases can be then dismissed.

8          Have you looked into this?

9          MR. SLATER:  I wasn't aware of the issue, I don't

10  think.  But we can look into it and get back to Your Honor or

11  get back to the clerk quickly.

12          JUDGE VANASKIE:  All right.  I appreciate that.

13          Loretta Smith, Judge Kugler's Law Clerk, had sent me

14  a copy of an email she sent to you on January 25th, raising the

15  issue of it appearing that there are two cases by the same

16  plaintiff but with different docket numbers and filing dates

17  and different attorneys and law firms.  So if you go back or

18  maybe I'll ask Loretta to resend that email to you so that can

19  be investigated.

20          MR. SLATER:  Of course.  I must have either

21  overlooked it or it went into the lost email land.

22          JUDGE VANASKIE:  Okay.

23          MR. SLATER:  But we'll take care of it right away.

24          JUDGE VANASKIE:  All right.  Thank you.

25          THE LAW CLERK:  And if I just may speak.  This is

1    Loretta.

2              Don't worry about it, Adam.  I understand how busy

3    all of you are.  It's just the court clerk is driving me crazy.

4    Thanks.

5              MR. SLATER:  No.  We'll find out for you.  It's not a

6    problem.  If there's two firms filing cases for the same

7    plaintiff, they probably also would want to know about one

8    another.

9              *(Laughter.)*

10             JUDGE VANASKIE:  Yes, I think so.  Yeah.  One is from

11   Los Angeles and the other is from Dallas.  So they'll have to

12   straighten that out.

13             MR. SLATER:  Will do.

14             JUDGE VANASKIE:  Okay.  The first item I wanted to

15   talk about that's on the agenda letters deals with the class

16   representative depositions.  And I understand, after having

17   received plaintiffs' letter, that Georgia Fatigato,

18   F-A-T-I-G-A-T-O, is to be dismissed.  So that issue will be

19   resolved.  And that you're working with -- that Raleigh,

20   R-A-L-E-I-G-H, Wolfe, W-O-L-F-E, recently passed away, and

21   you're trying to ascertain whether that matter will continue

22   forward, I take it.

23             Is that correct, Mr. Slater?

24             MR. SLATER:  I think someone else will be addressing

25   that question, Your Honor.

1          JUDGE VANASKIE:  Okay.  Yes.

2          MR. STANOCH:  Good morning, Your Honor.  David

3   Stanoch for plaintiffs.  Your understanding is correct.  We

4   filed the voluntary dismissal for Ms. Fatigato earlier this

5   morning, so that issue is resolved.

6          And you are correct as to the situation with

7   Mr. Wolfe.  He was on hospice and then passed away before the

8   late fall and early winter holidays and during the COVID

9   flare-up, and then we're assessing now which is next of kin;

10  what, if any, additional steps we'll take.  And we'll promptly

11  inform defendants, as we've told them multiple times, once

12  we're in a position to do something definitively.

13         JUDGE VANASKIE:  All right.  Very well.

14         And then there's also the Estate of Eleanora

15  Deutenberg, D-E-U-T-E-N-B-E-R-G.  Where does that stand,

16  Mr. Stanoch?

17         MR. STANOCH:  Your Honor, we finally have the

18  necessary paperwork for the appointment of the estate

19  administrator or representative, and that person will be

20  deposed in the end of February.  And I know defendants did not

21  even identify that in their CMC letter as an issue.  So we

22  believe the issue has been resolved, and the deposition will

23  take place hopefully in a few weeks.

24         JUDGE VANASKIE:  All right.  Who's addressing this

25  issue for the defense?

```
 1              MS. LOTMAN:  Alyson Lotman, Your Honor.

 2              With respect to the last one, the Estate of

 3    Deutenberg, we understand that to be the case; that defense

 4    counsel has been working with plaintiffs' counsel to notice

 5    that deposition.  And plaintiffs' counsel is correct, we did

 6    not raise that in our letter.  That is not one of our issues.

 7              And as I mentioned earlier, Your Honor,

 8    Ms. Fatigato's claims were dismissed.  Actually, it was

 9    dismissed this morning.  Our question remains with Mr. Wolfe.

10    Based upon my correspondence with plaintiffs' counsel,

11    Mr. Wolfe passed away sometime in November, and we have been

12    following up to determine what plaintiff intended to proceed.

13    We were advised in December that they would let us know

14    shortly.  We're now -- I know they mentioned in their letter

15    imminently they'd let us know.  Now they said "promptly."

16              The question I would have, Your Honor, is

17    clarification on when we will have notification of whether they

18    intend to proceed; because if they do intend to proceed with

19    Mr. Wolfe's claims, we need to get his deposition scheduled as

20    we are rapidly -- we are well past the deadlines for

21    depositions and rapidly approaching the deadline for briefing.

22              JUDGE VANASKIE:  All right.  Mr. Stanoch.

23              MR. STANOCH:  Your Honor, Dave Stanoch for

24    plaintiffs.  Your Honor, this is a very delicate situation,

25    Your Honor.  We'd ask for defendants' and the Court's
```

1    indulgence.  We're talking about a potential single deposition

2    of a substitute next of kin for a man who was on hospice with

3    cancer, passed away, was not buried until December, between

4    Thanksgiving and Christmas, in the midst of COVID.  And we're

5    working with the family sensitively to the personal nature of

6    what happened with Mr. Wolfe, unfortunately.  And once we have

7    an answer, I cannot give you a date or defendants a date, but

8    we're working on it in good faith and diligently.

9        And the worst case, Your Honor, is the deadline for

10   defendants' brief in seven and a half weeks comes and goes and

11   there is no representative appointed and they simply say

12   Mr. Wolfe has passed and there's been no deposition of a next

13   of kin who's been substituted, and that's that.

14       So we think there's no prejudice at this point.  And

15   we're happy to address this at the next CMC while we continue

16   to work through it given the very delicate nature for the

17   family of what happened.

18       JUDGE VANASKIE:  Anything else on this issue?

19       MS. LOTMAN:  Your Honor --

20       JUDGE VANASKIE:  Go ahead.  I'm sorry.

21       MS. LOTMAN:  I'm sorry.  I was just letting Your

22   Honor know, nothing else at this point.  Just know that we are

23   sensitive to the issue regarding Mr. Wolfe's passing and tried

24   to give them time.  Originally a deposition was noticed for

25   November, understood he was on hospice and moved it and said

1    that it would be canceled and we would proceed afterwards.  So

2    we are trying to be very sensitive to the family in that

3    situation and have tried to be respectful.  We just need to at

4    some point figure out what is going to be the plan here with

5    respect to his case.

6                Thank you, Your Honor.

7                JUDGE VANASKIE:  Thank you.  And we'll ask for an

8    update at the next conference we have in the case and just go

9    from there.  It is a sensitive matter.  And if worse comes to

10   worse and a representative has not been appointed in a timely

11   manner to allow you to take the deposition, we'll address the

12   consequences of that at that time.  But in the meantime, let's

13   just proceed.

14               MS. LOTMAN:  Thank you, Your Honor.

15               JUDGE VANASKIE:  All right.  Thank you.

16               And is it Ms. Walker Lotman?

17               MS. LOTMAN:  Yes, Your Honor.

18               JUDGE VANASKIE:  Do I have that correct?

19               MS. LOTMAN:  Ms. Lotman is fine.

20               JUDGE VANASKIE:  Okay.  Ms. Lotman.  Okay.  Thank

21   you.  I just wanted to make sure.

22               All right.  Let's proceed to the next issue then,

23   which is the depositions of Defense Experts Bottorff,

24   B-O-T-T-O-R-F-F, Britt, B-R-I-T-T, Chodosh, C-H-O-D-O-S-H, and

25   Flack.

1    I take it there's a dispute here with respect not to

2    the timing of their depositions but the duration of the

3    depositions and the appropriate subject matter areas, or am I

4    wrong on that issue?  And who's addressing this issue for the

5    plaintiffs?

6        MR. SLATER:  Hello, Your Honor.  Adam Slater for the

7    plaintiffs.

8        The issue is -- and part of this, frankly, may start

9    to spill into Judge Kugler's ambit because it overlaps with

10   Daubert questions in terms of the scope of Daubert and the

11   Daubert hearings and the scope of the general causation

12   opinions that are going to be addressed in the upcoming Daubert

13   hearings.

14       But our immediate concern is that we had to wait

15   until, as Your Honor saw, on Monday to finally get dates for

16   these four experts.  And unfortunately, the dates they gave us

17   were at the very end of the process.

18       As Your Honor knows, the deadline is March 10th.  Two

19   of the experts they put on March 8th, which is a day when

20   there's at least one other expert already scheduled.  So

21   they've now triple tracked on that day.

22       Another one is March 10th and another one is

23   March 1st, knowing that we have been told by Judge Kugler he's

24   going to be scheduling Daubert hearings for late February or

25   early March or at some point in March.  So we really, number

1    one, believe that the defense -- and we would request that they

2    provide us other dates in February that are more convenient and

3    are not so likely to overlap with the Daubert hearings.

4            And then the other issue, which they really raised in

5    their papers, I suppose in response to our request for dates,

6    has to do with the scope of the depositions and what these

7    witnesses would be allowed to testify to.  Because as Your

8    Honor knows, the general causation phase of expert reports is

9    long over.  Those reports were exchanged, the depositions were

10   taken, and the briefs were filed, and the hearings are

11   imminent, next month.

12           These experts, some of them have new general

13   causation opinions, new analyses of general causation concepts

14   and opinions.  Some of these experts were general causation

15   experts in the first round and they're now finding and changing

16   and adding to those opinions, et cetera.

17           So as the defense said, they expect that we're going

18   to take no testimony from these witnesses on general causation

19   at this stage.  And frankly, we agree, because as part of the

20   briefing when the time comes, we intend to ask the Court to

21   strike anything in these reports that is a general causation

22   opinion because that was supposed to be done in the general

23   causation phase.

24           So I don't know how much more back-and-forth needs to

25   happen on that issue.  And I don't know if that's something for

1    Your Honor or Judge Kugler.  But the immediate concern is the

2    scheduling, because we don't think it's really reasonable for

3    them to jam us up with these dates during a time when we're

4    either going to be in Daubert hearings or about to start

5    Daubert hearings.

6          JUDGE VANASKIE:  Okay.  So let's see if we can move

7    forward on the scheduling issue.

8          Who's addressing this issue for the defense?

9          MS. LOCKARD:  Your Honor, good morning.  It's

10   Victoria Lockard from Greenberg Traurig for the defendants.

11         First of all, so I think that the experts that we're

12   talking about here, the four experts, they were identified in

13   the general cause phase.  They did give reports.  They were

14   deposed thoroughly and fully for the, you know, almost ten

15   hours that was allowed in each case.

16         And we have now provided additional expert reports,

17   supplements, that address the issues raised by plaintiffs'

18   class certification expert.  So the new reports are limited to

19   class certification issues or to rebut and address issues and

20   opinions that were presented in plaintiffs' class certification

21   expert reports.

22         So we don't agree that they are expanding their

23   general causation opinions.  That phase of the case is done.

24   You know, we would not attempt to work additional opinions

25   there.  I think their prior testimony on that is complete.  So

1    we certainly don't want to open them up to extended depositions

2    where they get into rehashing of the general cause opinions.

3            You know, I think what's in their reports is fair

4    game.  If it's in the class certification report, it's fair

5    game.  It may be a matter of interpretation as to whether it

6    leaches into general cause.  Our position is that it doesn't.

7    But I agree; if it's in the report and it's a new opinion, then

8    they're entitled to ask questions about it.

9            What we don't want is to have a rehashing, and we

10    don't want to have, you know, extended generalized questions

11    about background, credibility, and all that because that was

12    already dealt with.  So that's the scope issue.

13            The second in terms of the timing, just as a

14    reminder, the deadline for putting up defendants' experts on

15    class certification is March 10th.  The dates that we've

16    offered are all plainly within that deadline.  When we offered

17    these dates on these four experts by email, I don't believe

18    we've gotten any email response asking for new dates.

19            You know, we'll be glad to talk about new dates if

20    these don't work for some reason other than the fact that

21    there's potentially a Daubert hearing.

22            You know, when the Judge decided when the Daubert

23    hearing would be, I'm sure Judge Kugler is well aware of the

24    schedule and that we have other matters ongoing through

25    March 10th on the class certification side.  So those are

1    really two tracks, and I don't think that one should influence

2    the other.  We have a deadline of March 10th.  We've complied

3    with it.

4              In terms of the scheduling, if we move these earlier

5    into February, keep in mind, we have 18 -- among all the

6    defendants, there are 18 experts who have been disclosed for

7    class certification purposes.  So we have to get through not

8    only the remainder of the plaintiffs' other class certification

9    experts, which I think we have four left, and we're about, you

10   know, we're well underway there, we also have to fit in all of

11   these 18 experts.  So if we move them earlier in the period,

12   it's going to crunch everybody in February.

13             Again, we're happy to work with them if these dates

14   don't work.  But just to say they're at the end of the period

15   and it's not convenient because folks would be preparing for

16   Daubert, I don't think is a legitimate reason to ask that the

17   dates be moved.

18             JUDGE VANASKIE:  Thank you.

19             Mr. Slater.

20             MR. SLATER:  Yes, Your Honor.

21             You know, you're being put in a situation where I

22   think, to some extent -- I don't think that we're in a position

23   to ask you to rule on anything technical as to the scope of

24   what we're going to ask about qualifications or background or

25   specific opinions because you don't have all this in front of

1    you, and I don't see how we could get all that in front of you

2    quickly enough to get a full record to you.

3         These experts gave opinions and they're part of the

4    class certification process, so we certainly can depose them on

5    their qualifications and backgrounds to give the opinions that

6    they're giving in these reports that are a part of this phase

7    of the case.  And the idea that we can't now depose them with

8    an eye towards their qualifications to give the class-based

9    opinions, we obviously completely disagree.  And I don't see

10   how there could be any legitimate argument the other way.

11        As far as this issue of general causation opinion,

12   it's good to hear that the defense agrees that these witnesses

13   were not allowed to offer any new opinions and that there could

14   be no further general causation opinions offered by them.  We

15   certainly have the right to identify what those opinions are

16   without going into the detail of going through the background

17   because we're certainly not going to do something that allows

18   the defense to supplement general causation opinions at this

19   phase of the case.

20        So that was why I said some of this may have to be

21   addressed by Judge Kugler.  My sense is we're going to need to

22   take the depositions and we're going to make a record, and then

23   motions will be filed at the point in time when the schedule

24   provides for it, and then the Court will decide what opinions

25   are in and what are out, what parts of the report should be

1    stricken and what should not be stricken, et cetera, depending

2    on the testimony in the record we establish.  So that's, I

3    think, where we land on that.

4            As far as scheduling, I get what she's saying.  The

5    schedule is what it is.  That's why we raised the issue to say

6    there's probably overlap now.  And I can tell you that lawyers

7    who are going to depose these witnesses are going to not just

8    be background observers of the Daubert hearings but fully

9    engaged depending on which witnesses are involved.  We expect

10   that at least some or all of us would be involved in those

11   hearings.

12           Again, we don't know the scope of the Daubert

13   hearings that Judge Kugler is going to request.  We don't know

14   how many witnesses are going to be asked to appear.  We don't

15   know what issues the Court is going to want addressed, et

16   cetera.  So who knows, maybe it turns out it's only a couple of

17   witnesses and it's something that's only going to take a day or

18   two and we could just schedule around that.  I just wanted to

19   make sure or we just wanted to make sure these issues were

20   presented and get addressed because we obviously can't do both

21   at the same time.

22           JUDGE VANASKIE:  Anything else, Ms. Lockard?

23           MS. LOCKARD:  Your Honor, I don't think so.  I mean,

24   I would suggest we get through today with Judge Kugler, get

25   some more information about the Daubert process and scheduling,

```
 1  and we can work with plaintiffs on scheduling.

 2          You know, if we're in the middle of a three-day

 3  Daubert hearing, you know, we can work around that.  It doesn't

 4  sound like this is going to be a major issue.

 5          I will say, if they get outside of the scope in these

 6  depositions though, you know, I assume the offer stands as

 7  previous, that if we need to reach out to the Court, you'll be

 8  available.

 9          JUDGE VANASKIE:  Yes.  That still stands in terms of

10  being able to address --

11          MS. LOCKARD:  Okay.  We'll try to avoid that from

12  happening.  But I think that's probably the best way to

13  proceed.

14          JUDGE VANASKIE:  Yes.  I think right now the issue

15  has been raised, so it's on our radar screens.  I think you

16  have to wait and see what Judge Kugler will have to say with

17  respect to the scheduling of the Daubert hearings.  And if

18  there is a conflict, then you're going to have to have

19  discussions among yourselves in terms of coming up with other

20  dates.

21          I do agree with Mr. Slater that you should not be in

22  a position where you have to take depositions of these class

23  certification experts at the same time that the Daubert hearing

24  is being conducted.  So you may have to adjust your dates.

25          And if there are problems that arise or disputes that
```

1    arise with respect to the scope of the deposition, the scope of

2    the questioning, well, we'll address that at that time.  But I

3    think that's about all we can do on this issue at this time.

4              All right.  Let's go to the next issue.  Thank you,

5    Mr. Slater.

6              Let's move to the next issue, and that's the

7    dismissal of claims of Medical Monitoring Class Representatives

8    Daring, D-A-R-I-N-G, and O'Neill, with two Ls.  Where does this

9    stand right now?  And who's addressing it for the plaintiffs?

10             MR. STANOCH:  Good morning again, Your Honor.  David

11   Stanoch for plaintiffs.

12             It's our position, Your Honor, as set forth in our

13   letter, that there's no action to be taken by Your Honor now,

14   or there really could be, quite frankly.  Defendants let us

15   know just last week that they think two of the medical

16   monitoring class representatives do not fit the proposed class

17   definition exposure criteria.  We are assessing that.  We will

18   assess it in good faith.  We always have been professional,

19   reasonable, and acted in good faith with similar requests.  The

20   record shows, when appropriate, we have voluntarily dismissed

21   several class representatives, including Ms. Fatigato, which we

22   just talked about on the "econ loss" side a moment ago, and

23   we've agreed to dismiss a number of defendants when appropriate

24   on certain claims as well.

25             So we will certainly take it under consideration.

1    And if we agree, we can voluntarily dismiss them.  But we don't

2    think it's appropriate now for us to be cajoled into doing this

3    now immediately, certainly within four or five days of getting

4    a letter about this for the first time from defendants when,

5    again, the worst case, Your Honor, is what, that when they file

6    their class certification brief in nearly seven or eight weeks,

7    they simply say in a sentence or two that two class

8    representatives do not meet the criteria, and that is that.

9           So we don't believe -- so while we are aware of the

10   situation, and we'll certainly respond to it in good faith, we

11   do not believe there's anything that we should be compelled to

12   do or that the Court needs to do at this time.

13          JUDGE VANASKIE:  All right.  And who's addressing

14   this issue for the defense?

15          MS. BAZAN:  Rebecca Bazan on behalf of the ZHP

16   parties and the defendants, Your Honor.

17          I think the parties agree on many points here.

18   Defendants agree that we shouldn't have to be before Your Honor

19   on this issue.  And we also agree that plaintiffs and

20   defendants have worked cooperatively to dismiss parties that

21   plaintiffs improperly named in the medical monitoring master

22   complaint after defendants informed plaintiffs' counsel of that

23   fact.

24          Plaintiffs say that they want more time to assess

25   whether to dismiss the claims of Ms. Daring and Mr. O'Neill,

1    but plaintiffs have had nearly three years to identify class

2    representatives and make sure they meet their class definition.

3    So the time for assessing and figuring out whether the putative

4    class representatives meet the class definition should have

5    long expired.

6           Defendants' class certification opposition briefing

7    is underway, and we think that only real substantive issues

8    should be put before the Court for resolution on class

9    certification.  And the parties shouldn't waste the Court's

10   time and resources on briefing about class representatives that

11   no one disputes don't meet the class definition.  So that's why

12   we're seeking prompt resolution of this matter now.

13          MR. STANOCH:  Your Honor, if I may.

14          JUDGE VANASKIE:  You may.

15          MR. STANOCH:  Your Honor, while we conduct our

16   assessment, we do dispute that there is an issue here.

17          Defendants are essentially trying to litigate a

18   summary judgment or class certification issue informally via a

19   discovery dispute and submitting evidence to Your Honor as

20   exhibits with their CMC letter.  Again, we don't think this is

21   the appropriate juncture procedurally or substantively for any

22   action or ruling at this time on this issue.

23          JUDGE VANASKIE:  Is this an issue we can defer until

24   our next conference?

25          MR. STANOCH:  Your Honor, David Stanoch again.  I

1    would certainly agree that, at a minimum, that would be

2    appropriate and would afford us additional time.

3         JUDGE VANASKIE:  All right.  Yeah.  I think that's

4    what we'll do.

5         You know, I'm sure you want to resolve these matters

6    as promptly as possible so you know who's in and who's not in

7    as far as class representatives are concerned.  The plaintiffs

8    have voluntarily dismissed class representatives in the past,

9    and I'm sure they'll take a look at this and then we can

10   address it at the next conference.

11        I agree, too, it may not be an issue that can be

12   resolved and may need motion practice.  I'm not inviting that

13   or suggesting it.  And it would not be a motion for me.  It may

14   be a motion for partial summary judgment.  But in any event, I

15   don't think there's anything more we can do on this issue at

16   this time.

17        Again, it has been placed on our radar screens and

18   it's something that will have to be attended to by the

19   plaintiffs.  They're going to have to make a decision with

20   respect to Ms. Daring and Mr. O'Neill, but it doesn't need to

21   be done right now.  So we'll just defer on this issue.

22        MS. BAZAN:  Thank you, Your Honor.

23        JUDGE VANASKIE:  Thank you very much.

24        I received notice that Judge Kugler is available.

25        Is there anything else you wanted to present to me

1  today?

2          MR. SLATER:  Nothing for plaintiffs, Your Honor.  I

3  think Judge Kugler probably would be the one to address the

4  other issues.

5          JUDGE VANASKIE:  I believe so.

6          Anything else on the part of the defense?

7          MR. GOLDBERG:  Nothing for defendants, Your Honor.

8          JUDGE VANASKIE:  All right.  Thank you, Mr. Goldberg.

9          All right.  So I'm going to hang up, call Judge

10  Kugler, and then dial back in.  And we'll all be back together

11  then, okay?  So we'll be back with you momentarily.

12          COURT REPORTER:  Yes, Your Honor.  Thank you.

13          *(Pause.)*

14          *(Whereupon a recess was taken.)*

15          JUDGE VANASKIE:  All right.  Judge Kugler should be

16  joining us momentarily.

17          JUDGE KUGLER:  Hello.  Good morning.  It's Judge

18  Kugler.

19          MR. SLATER:  Good morning, Your Honor.

20          MR. GOLDBERG:  Good morning, Your Honor.

21          JUDGE KUGLER:  I hope everyone's doing well.  You

22  know the ground rules.  When you speak, please identify

23  yourself so our court reporter can make sure he [sic] gets it

24  down, although he apparently knows most of you by now, I think,

25  anyway.  So let's get right to it.

*United States District Court*
*District of New Jersey*

1          I don't know, Mr. Harkins, are you going to speak on

2     these orders to show cause?

3          MR. HARKINS:  Yes, Your Honor.  Good morning.  This

4     is Steve Harkins from Greenberg Traurig for Teva defendants in

5     the joint defense group.

6          And we do have one update on the orders to show cause

7     that we've listed in the PFS deficiency section of our letter.

8          JUDGE KUGLER:  Okay.  Go ahead.

9          MR. HARKINS:  The two cases, the *Byrnes* and *Maedler*

10    cases, are resolved, and we would like to withdraw those orders

11    to show cause.

12         JUDGE KUGLER:  Okay.

13         MR. HARKINS:  However, the *Mills* matter we are

14    similarly asking to defer that order to show cause until next

15    month's CMC.

16         So the *Mills, Louissant*, and *Thorn* matters, we would

17    ask the Court to relist for the next scheduled Case Management

18    Conference.

19         JUDGE KUGLER:  Okay.  We'll take care of those next

20    month then, hopefully.

21         And you're apparently going to next month also, at

22    the next meeting, talk about other first and second listings;

23    is that correct?

24         MR. HARKINS:  Yes, Your Honor.  And we agreed with

25    plaintiffs, given the scheduling around the holidays and the

1  last two CMCs, to defer listing any further cases.  But we will

2  resume that, and just wanted to advise the Court that we will

3  continue that prior practice at the next CMC.

4              JUDGE KUGLER:  Okay.  We also at the last meeting

5  raised, I talked about the Daubert hearings coming up.  They'll

6  start March 1st.  March 1st, 2nd, 3rd and 4th.  We'll have

7  those by Zoom.

8              And there's been some questions and some of you have

9  written in and asked about the format, how this is all going to

10 work.  I indicated the last time and I'll maybe flesh it out a

11 little bit now.

12             First of all, you're going to have to decide whether

13 or not you want to take advantage of the opportunity to present

14 your expert at a Daubert hearing.  There's no requirement that

15 you do so.  You can rely on your reports and the deposition

16 testimony if you so choose.

17             The purpose of the Daubert is for you to have your

18 expert respond to your adversary's motion to disqualify your

19 expert, and respond point by point, if you want, if you think

20 you need to do that, if you don't think it's adequately

21 addressed in the report or in the deposition testimony that you

22 have.

23             And the way to do it, the way we're going to do it is

24 that if you think you need to respond, have your expert respond

25 with the Daubert points being raised by your adversary who's

1  brought the motion and take the form of an affidavit or

2  declaration by your expert addressing the points.  Your expert

3  will be bound obviously by the affidavit or declaration at that

4  point.

5          The person bringing the motion then would have the

6  opportunity to cross-examine this expert on the points raised

7  in the affidavit or the declaration.  We're not going to be

8  varying from these affidavits or declarations.  That's sort of

9  going to be set in stone what your experts say at that point.

10 Again, we'll do this live by Zoom.  Again, I don't want any

11 evidence by affidavit, declaration or testimony as to

12 qualifications.  It's neither necessary nor desired.  You all

13 understand the Circuit law on qualifications.  Very minimal

14 qualifications is all you need.  And the experts in this case

15 have demonstrated that.

16         I really don't care how many degrees your expert has

17 from various academic institutions; what other credentials he

18 or she has; how many symposiums he or she has participated in;

19 how many good deeds they've done.  This is not the opportunity

20 to put on a dog-and-pony show so that I'm impressed with one

21 side's experts over the other.  That's not what the point of

22 Daubert is.

23         If you get to that stage, then, you know, you're

24 welcome to do it to a respective juror so they can make any

25 decisions they want based on that.  But I'm not impressed by

1   that stuff.

2        The point of Daubert in this case is for me as a

3   gatekeeper to determine the science and whether it's valid

4   methodology.  I only care how and why the experts arrived at

5   the opinion.

6        An example I can give you, I can give you a

7   hypothetical.  And I'll use New Jersey because that's what I

8   am.  And you may know, if you're from New Jersey, that you

9   can't pump your own gas in New Jersey.  It's crazy, but it's

10   true.  So you have these gas station attendants coming out and

11   stick gas in your car.

12        Well, let's think, let's suppose -- and this is

13   purely hypothetical -- that some doctor or scientist thinks

14   that the exposure to those fumes to those gas station

15   attendants, it may be from the ethanol, that that is causing

16   cancer in gas station attendants.  So let's assume the

17   government wants to find out if the exposure to these gas

18   station attendants actually causes cancer.  So it decides to

19   award a grant to -- I don't know.  Just pick anybody.  Sloan

20   Kettering, somebody like that who everybody knows is in the

21   cancer treatment business.

22        So it decides to give a $10 million grant to Sloan

23   Kettering to decide the question of whether exposure by these

24   gas station attendants to this ethanol causes any cancers,

25   completely divorced from any litigation, completely divorced

1    from any considerations of compensation, just pure science at

2    this point.

3            And I think there would be wide agreement in the

4    scientific community how someone like Sloan Kettering would

5    structure such a study, completely, again, divorced from

6    litigation or the possibility of compensation.  And that's

7    really, I think, what gatekeepers are looking for.  How did you

8    arrive at your opinion?  And why did you arrive at that

9    opinion?

10            And if there was no litigation here, if there was no

11   considerations or compensation, would the scientists arrive at

12   the same opinion the same way?  That's what I'm looking for.

13   That's all I care about.

14            And I don't expect that these experts, if you choose

15   to have a hearing for them, I don't expect that to take longer

16   than about two hours each, because there will be no direct

17   testimony.  So I think the four days will be sufficient.

18            What I'm going to ask counsel to do -- and you have

19   not quite four weeks to do it -- is to get together on both

20   sides and propose the dates when your specific expert will be

21   available for a Zoom hearing.  And then we'll just -- we'll fix

22   those dates, March 1st, 2nd, 3rd or 4th, and get these things

23   done at that time.

24            So any questions about the Daubert hearing?

25            MR. SLATER:  Hello, Your Honor.  It's Adam Slater for

1    the plaintiffs.

2            One question is a scheduling question.  And, again, I

3    thank you for your guidance.  It helps us a lot to understand

4    what's expected.

5            I don't know which of the experts the plaintiffs may

6    propose to actually produce.  I am aware that at least one of

7    the plaintiffs' experts has already told me that he would not

8    be available before March 5 because of a grant that's being

9    worked on and it has to be finalized on that day.

10           I don't know if any other experts would have that

11   issue.  And I understand that Your Honor's given us the

12   scheduling.  But I felt that I would be not doing my job if I

13   didn't at least raise the question of if there's a real

14   conflict that an expert has with being able to do it that week,

15   is there any possibility of having another day or so, maybe the

16   following week or something, just so that we can accommodate if

17   someone has a legitimate professional conflict that's already

18   longstanding or something of that nature.

19           JUDGE KUGLER:  Sure.  We could do it the 14th, the

20   week of the 14th, or the 14th, 15th, something like that, if

21   there's a legitimate conflict.

22           MR. SLATER:  All right.

23           JUDGE KUGLER:  And, you know, if there's health

24   issues, too, I get it.  People, you know, if there's a health

25   issue and they can't make it that week, I get it.  We'll do it

1    the week of the 14th, okay?

2            MR. SLATER:  Thank you.  I appreciate that.

3            THE COURT:  Anybody else have any questions?

4            MS. LOCKARD:  Your Honor, it's Victoria Lockard from

5    Greenberg Traurig.  Just a couple of questions and

6    clarification.

7            So I very much understand there will be no direct

8    testimony of these experts, but after there is a

9    cross-examination, say, will the other side then get an

10   opportunity to do what would be rebuttal or a redirect

11   examination of their own witness in response to the cross?

12           JUDGE KUGLER:  Yes, in response to the cross.  It has

13   to be confined to the questions raised on the cross, but, yes,

14   of course.

15           MS. LOCKARD:  Understood.

16           Okay.  Second question, and I apologize if you gave

17   this, but when would you want to see the affidavits or the

18   declarations?

19           JUDGE KUGLER:  Well, that's a good question.  Can I

20   get them -- how about February 24th?  That's a Thursday, I

21   believe.  Can we have them by then?

22           MS. LOCKARD:  That should be doable, I would think.

23           MR. SLATER:  That makes sense, Your Honor.  This is

24   Adam Slater.  I think that makes sense.

25           JUDGE KUGLER:  Any other questions about Daubert

1    hearings?

2           (No response.)

3           JUDGE KUGLER:  Okay.  Settlement counsel, I've gotten

4    some letters.  The manufacturers, by letter of January 27th,

5    asked me to extend their deadline to February 23rd.  Anybody

6    want to speak about that?

7           MR. GOLDBERG:  Your Honor, this is Seth Goldberg on

8    behalf of the manufacturer defendants.  And as set forth in

9    that letter requesting that extension, all of the manufacturer

10   defendants are hard at work trying to vet their candidates and

11   finalize their selections.  It is taking time given the number

12   of parties on both sides, the need for these candidates to

13   clear conflicts, the need for the manufacturer defendants to do

14   a full vetting.  Obviously, this is going to be a significant

15   undertaking.  And each of the parties, each of the manufacturer

16   defendants wants to make sure they're comfortable with their

17   selection.  And the additional time is really necessary to make

18   sure that all of that vetting is completed.

19           In addition, as we noted for the ZHP parties, there's

20   this additional issue of the Chinese New Year, which has

21   required them to close their offices for this entire week

22   starting last week, and they'll be back in next week.

23           JUDGE KUGLER:  Okay.  Your request is granted then.

24           MR. GOLDBERG:  Thank you, Your Honor.

25           JUDGE KUGLER:  Now, I have also a request from the

1  wholesalers and retailers, or what they call themselves, the

2  "downstream defendants."  And thank you for that moment of

3  levity.

4          I want to disabuse you of the notion that somehow you

5  can sit back and let this case roll on without you because you

6  have indemnity agreements apparently.  And I know there were

7  some issues about those and the plaintiff wants them and all

8  that.  And I know Judge Vanaskie is addressing that issue.

9          Counsel, there's no reason why you cannot

10  participate, counsel for downstream defendants, cannot

11  participate in settlement discussions.  If you really have a

12  contract of indemnity, you can certainly settle the claim.  And

13  if the plaintiffs are smart -- and I think they are -- they

14  would be more than happy to accept some reasonable settlement.

15  And given the size of some of the defendants, it may not even

16  be material to your bottom line.

17          I mean, you, the settling defendant, based under New

18  Jersey law, they're on notice, but the manufacturers or whoever

19  you have the indemnity with is on notice and the settlement is

20  reasonable, you can chase them all you want after that.  It's

21  not a bar to participating in settlement discussions.

22          So I'm not sure why you think you should be excused

23  from appointing independent settlement counsel, and your

24  application for excuse from that is denied.

25          Anything else we want to talk about today?

```
 1            MR. SLATER:  Your Honor, it's Adam --
 2            MS. RICHER:  Good morning, Your Honor.  This is
 3   Kristen Richer on behalf of the retail pharmacy defendants.  I
 4   understand the Court's ruling.  I do want to say it was not our
 5   intent to sit back.  We had simply suggested that we could
 6   continue to participate through liaison channels as we have
 7   been in other parts of the litigation.  I understand that the
 8   Court wants us to retain separate settlement counsel.
 9            Separate from that, we had said in the event that the
10   Court intends for us to retain separate counsel, that we also
11   be afforded the same three weeks the manufacturers have sought
12   so that we can attempt to do that.  It is presenting some
13   logistical challenges on our end as well.  So we would
14   appreciate the same extension, and we'll go from there.
15            JUDGE KUGLER:  Sure.  No problem.
16            MS. RICHER:  Thank you.
17            JUDGE KUGLER:  Mr. Slater, you wanted to speak?
18            MR. SLATER:  Yes, Your Honor.
19            JUDGE KUGLER:  Go ahead.
20            MR. SLATER:  One thing.  We had asked for only a
21   week.  But if you're going to allow the other -- the defendants
22   to take till the 23rd, we would ask just for the same extension
23   just to keep everything coordinated.
24            And the other request we had made was if we can make
25   these submissions to Your Honor ex parte or in camera because
```

1    I'm not sure what the defendants intend to submit.  But we

2    thought maybe because this goes to work product and some

3    decisions about who we would be willing to work with or under,

4    you know, what we're going to put in our letter to Your Honor,

5    we thought maybe this would be the type of thing that all

6    parties should be able to submit to Your Honor ex parte so that

7    we can say things that we otherwise wouldn't say knowing that

8    the other parties would see the letters.

9            JUDGE KUGLER:  Mr. Goldberg, do you have any problem

10   with that or anybody on the defense have any problem with that?

11           MR. GOLDBERG:  I don't believe so, Your Honor.  But I

12   guess we would appreciate having the opportunity to discuss

13   that and then come back to Your Honor if we do.  But I don't

14   believe we would.

15           JUDGE KUGLER:  Okay.  Well, why don't we just assume

16   it will be ex parte unless you object; and you'll let me know

17   promptly about that, okay?

18           MR. GOLDBERG:  Thank you, Your Honor.

19           JUDGE KUGLER:  Any other questions about this issue?

20           MR. SLATER:  Nothing for plaintiffs.

21           MR. GOLDBERG:  Nothing for defendants.

22           JUDGE KUGLER:  Any other issues you'd like to raise

23   today?

24           MR. GOLDBERG:  Nothing from defendants, Your Honor.

25           MR. SLATER:  I don't think anything for plaintiffs,

1    Your Honor.  We had not discussed the indemnification agreement

2    issue with Judge Vanaskie.  I think maybe we all assumed Your

3    Honor might address it because it related to the settlement

4    discussions.  But I can just say for the plaintiffs, and based

5    on the letters and some email exchanges we've had even this

6    morning, it's our hope to engage in a meet-and-confer for the

7    purpose of making sure that the plaintiffs fully understand and

8    can confirm at the current time what indemnification agreements

9    are in place and what activity is had on them.

10           For example, does a party say they're to be

11   indemnified by another party and the one party says, well, no,

12   we're not indemnifying you, or is there any dispute, so at

13   least we're fully up-to-date on the status of the

14   indemnification process as well so that we can negotiate in a

15   knowledgeable way.

16           If we could do it through a meet-and-confer and we

17   don't have to bother the Court further, that would be our

18   preference.

19           JUDGE KUGLER:  Well, you're not bothering the Court.

20   But I did read in the defense submission that they say that the

21   30(b)(6) witnesses gave you all the information.  I mean, I

22   don't know.  I wasn't there.  So maybe you ought to meet and

23   confer with them on that issue of what it is that you don't

24   think you have that you need.

25           I mean, I agree that you should have this

```
 1   information, but the defense says they think you already have

 2   it.

 3           But maybe you could be more specific with them as to

 4   what you think you need, okay?

 5           MR. SLATER:  Will do.  Thank you.

 6           JUDGE KUGLER:  The courthouse has surely reopened.

 7   But I want to do these hearings by Zoom anyway.  I think people

 8   are probably still uncomfortable about getting together,

 9   particularly coming some distance to the courthouse to do this.

10   So we'll continue -- we'll have these hearings by Zoom, the

11   Daubert hearings by Zoom, and we'll continue to do phone

12   conferences for the near future.

13           But hopefully at some point, not too long from now,

14   we can all get together.  And I look forward to that date.

15           All right, everybody.  Stay well.  Stay safe.  And

16   we'll talk to you soon.

17           Thank you.

18           MR. GOLDBERG:  Thank you, Your Honor.

19           MR. SLATER:  Thank you, Your Honor.

20           MS. LOCKARD:  Thank you, Your Honor.

21           JUDGE KUGLER:  And Loretta, if you're on the line,

22   Loretta, would you please send me the link for the next

23   conference?

24           THE LAW CLERK:  Yes.  Of course, Judge.

25           JUDGE KUGLER:  Thank you.
```

*United States District Court*
*District of New Jersey*

```
 1              COURT REPORTER:  Thank you, Your Honor.

 2              (Telephonic proceedings concluded at 11:01 a.m.)

 3         - - - - - - - - - - - - - - - - - - - - -
           FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE
 4         - - - - - - - - - - - - - - - - - - - - -

 5         I certify that the foregoing is a correct transcript

 6    from the record of proceedings in the above-entitled matter.

 7

 8

 9    /S/John J. Kurz, RMR-CRR-CRC              2/3/2022

10    Court Reporter/Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**COURT REPORTER:**
**[5]** 3/17 4/14 5/24 24/12 38/1
**JUDGE KUGLER: [85]** 24/17 24/21 25/8 25/12 25/19 26/4 30/19 30/23 31/12 31/19 31/25 32/3 32/23 32/25 34/15 34/17 34/19 35/9 35/15 35/19 35/22 36/19 37/6 37/21 37/25
**JUDGE VANASKIE: [43]**
**MR. GOLDBERG: [9]** 24/7 24/20 32/7 32/24 35/11 35/18 35/21 35/24 37/18
**MR. HARKINS: [4]** 25/3 25/9 25/13 25/24
**MR. SLATER: [24]** 3/24 4/10 5/15 6/9 6/20 6/23 7/5 7/13 7/24 12/6 16/20 24/2 24/19 29/25 30/22 31/2 31/23 34/1 34/18 34/20 35/20 35/25 37/5 37/19
**MR. STANOCH: [7]** 8/2 8/17 9/23 20/10 22/13 22/15 22/25
**MS. BAZAN: [3]** 3/7 21/15 23/22
**MS. LOCKARD: [9]** 3/5 3/10 14/9 18/23 19/11 31/4 31/15 31/22 37/20
**MS. LOTMAN: [9]** 3/8 3/11 5/6 9/1 10/19 10/21 11/14 11/17 11/19
**MS. RICHER: [2]** 34/2 34/16
**THE COURT: [1]** 31/3
**THE COURTROOM DEPUTY: [1]** 4/25
**THE LAW CLERK: [2]** 6/25 37/24

**$**
**$10 [1]** 28/22
**$10 million [1]** 28/22

**/**
**/S/John [1]** 38/9

**0**
**0474 [1]** 1/22
**07068 [1]** 1/16
**08101 [1]** 1/8

**1**
**103 [1]** 1/15
**10:01 [2]** 1/9 3/3
**10th [3]** 12/18 15/15 16/2
**11:00 [1]** 4/18
**11:01 a.m [1]** 38/2
**14th [4]** 30/19 30/20 30/20 31/1
**15th [1]** 30/20

**17th [1]** 2/4
**18 [3]** 16/5 16/6 16/11
**19103 [1]** 2/5
**1:19-md-02875-RBK [1]** 1/4
**1st [4]** 12/23 26/6 26/6 29/22

**2**
**2/3/2022 [1]** 38/9
**2022 [2]** 1/8 38/9
**2029 [1]** 2/15
**23rd [2]** 32/5 34/22
**24th [1]** 31/20
**2500 [1]** 2/10
**251-0474 [1]** 1/22
**25th [1]** 6/14
**267 [1]** 1/22
**27th [1]** 32/4
**2nd [2]** 26/6 29/22

**3**
**30 [2]** 2/4 36/21
**300 [1]** 2/15
**30305 [1]** 2/10
**3333 [1]** 2/10
**3rd [2]** 26/6 29/22

**4**
**4th [3]** 1/7 26/6 29/22

**7**
**701 [1]** 1/18
**70130 [1]** 1/19

**8**
**8th [1]** 12/19

**9**
**90067 [1]** 2/16

**A**
**a.m [3]** 1/9 3/3 38/2
**able [5]** 3/15 4/9 19/10 30/14 35/6
**about [32]** 4/18 7/2 7/7 7/15 10/1 14/4 14/12 15/8 15/11 15/19 16/9 16/24 18/25 20/3 20/22 21/4 22/10 25/22 26/5 26/9 29/13 29/16 29/24 31/20 31/25 32/6 33/7 33/25 35/3 35/17 35/19 37/8
**above [1]** 38/6
**above-entitled [1]** 38/6
**abundance [1]** 5/8
**academic [1]** 27/17
**accept [1]** 33/14
**accommodate [1]** 30/16
**acquiescence [1]** 5/20
**Actavis [2]** 2/11 2/11
**acted [1]** 20/19
**action [3]** 1/3 20/13 22/22
**activity [1]** 36/9
**actually [1]** 9/8 28/18 30/6

**ADAM [6]** 1/15 7/2 12/6 29/25 31/24 34/1
**adding [1]** 13/16
**addition [1]** 32/19
**additional [6]** 8/10 14/16 14/24 23/2 32/17 32/20
**address [9]** 10/15 11/11 14/17 14/19 19/10 20/2 23/10 24/3 36/3
**addressed [5]** 12/12 17/21 18/15 18/20 26/21
**addressing [8]** 7/24 8/24 12/4 14/8 20/9 21/13 27/2 33/8
**adequately [1]** 26/20
**adjust [1]** 19/24
**administrator [1]** 8/19
**advantage [1]** 26/13
**adversary [1]** 26/25
**adversary's [1]** 26/18
**advise [1]** 26/2
**advised [1]** 9/13
**affidavit [4]** 27/1 27/3 27/7 27/11
**affidavits [2]** 27/8 31/17
**afford [1]** 23/2
**afforded [1]** 34/11
**after [4]** 7/16 21/22 31/8 33/20
**afterwards [1]** 11/1
**again [1]** 16/13 18/12 20/10 21/5 22/20 22/25 23/17 27/10 27/10 29/5 30/2
**agenda [5]** 5/22 6/1 7/15
**ago [1]** 20/22
**agree [11]** 13/19 14/22 15/7 19/21 21/1 21/17 21/18 21/19 23/1 23/11 36/25
**agreed [2]** 20/23 25/24
**agreement [2]** 29/3 36/1
**agreements [2]** 33/6 36/8
**agrees [2]** 5/12 17/12
**ahead [3]** 10/20 25/8 34/19
**Aid [1]** 2/17
**aided [1]** 1/24
**all [49]**
**allow [2]** 11/11 34/21
**allowed [3]** 13/7 14/15 17/13
**allows [1]** 17/17
**almost [1]** 14/14
**already [6]** 5/9 12/20 15/12 30/7 30/17 37/1
**also [10]** 2/19 4/21 7/7 8/14 16/10 21/19 25/21 26/4 32/25 34/10
**although [1]** 24/24
**always [1]** 20/18
**ALYSON [3]** 2/4 5/6 9/1
**am [3]** 12/3 28/8 30/6
**ambit [1]** 12/9
**among [1]** 16/5 19/19
**analyses [1]** 13/13
**Angeles [2]** 2/16 7/11

**another [5]** 7/8 12/22 12/22 30/15 36/11
**answer [1]** 10/7
**any [25]** 4/10 4/22 4/23 8/10 15/18 17/10 17/13 22/21 23/14 26/1 27/10 27/24 28/24 28/25 29/1 29/24 30/10 30/15 31/3 31/25 35/9 35/10 35/19 35/22 36/12
**anybody [5]** 5/17 28/19 31/3 32/5 35/10
**anymore [1]** 4/8
**anything [1]** 5/15 10/18 13/21 16/23 18/22 21/11 23/15 23/25 24/6 33/25 35/25
**anyway [2]** 24/25 37/7
**apologize [1]** 31/16
**apparently [3]** 24/24 25/21 33/6
**appear [1]** 18/14
**appearing [1]** 6/15
**application [1]** 33/24
**appointed [2]** 10/11 11/10
**appointing [1]** 33/23
**appointment [1]** 8/18
**appreciate [4]** 6/12 31/2 34/14 35/12
**approaching [1]** 9/21
**appropriate [6]** 12/3 20/20 20/23 21/2 22/21 23/2
**are [43]**
**are rapidly [1]** 9/20
**areas [1]** 12/3
**argument [1]** 17/10
**arise [2]** 19/25 20/1
**around [3]** 18/18 19/3 25/25
**arrive [3]** 29/8 29/8 29/11
**arrived [1]** 28/4
**as [36]** 3/3 5/12 5/12 8/6 8/11 8/21 9/7 9/19 12/15 12/18 13/7 13/17 13/19 15/5 15/13 16/23 17/11 17/11 18/4 18/4 19/6 20/12 20/24 22/9 23/6 23/6 23/7 23/7 27/11 28/2 32/8 32/19 34/6 34/13 36/14 37/3
**ascertain [1]** 7/21
**ask [13]** 3/19 6/1 6/18 9/25 11/7 13/20 15/8 16/16 16/23 16/24 25/17 29/18 34/22
**asked [4]** 18/14 26/9 32/5 34/20
**asking [2]** 15/18 25/14
**assess [2]** 20/18 21/24
**assessing [3]** 8/9 20/17 22/3
**assessment [1]** 22/16
**assume [4]** 4/6 19/6 28/16 35/15

**assumed [1]** 36/2
**Atlanta [1]** 2/10
**attempt [2]** 14/24 34/12
**attendants [5]** 28/10 28/15 28/16 28/18 28/24
**attended [1]** 23/18
**attorneys [1]** 6/17
**available [5]** 4/18 19/8 23/24 29/21 30/8
**avoid [1]** 19/11
**award [1]** 2/19
**aware [5]** 4/25 6/9 15/23 21/9 30/6
**away [5]** 6/23 7/20 8/7 9/11 10/3

**B**
**B-O-T-T-O-R-F-F [1]** 11/24
**B-R-I-T-T [1]** 11/24
**back [14]** 3/12 3/13 4/2 6/10 6/11 6/17 13/24 24/10 24/10 24/11 32/22 33/5 34/5 35/13
**background [4]** 15/11 16/24 17/16 18/8
**backgrounds [1]** 17/5
**bar [1]** 33/21
**BARNES [1]** 2/14
**based [5]** 9/10 17/8 27/25 33/17 36/4
**BAZAN [2]** 2/3 21/15
**be [85]**
**because [18]** 9/18 12/9 13/7 13/19 13/22 14/2 15/11 16/15 16/25 17/17 18/20 28/7 29/16 30/8 33/5 34/25 35/2 36/3
**been [16]** 4/19 5/9 5/9 8/22 9/4 9/11 10/11 10/12 10/13 11/10 12/23 16/6 19/15 20/18 23/17 26/8 34/7
**before [8]** 3/1 4/19 5/22 5/25 8/7 21/18 22/8 30/8
**behalf [4]** 5/7 21/15 32/8 34/3
**being [6]** 16/21 19/10 19/24 26/25 30/8 30/14
**believe [11]** 5/12 5/15 8/22 13/1 15/17 21/9 21/11 24/5 31/21 35/11 35/14
**best [1]** 19/12
**better [1]** 3/13
**between [1]** 10/3
**bit [1]** 26/11
**both [3]** 18/20 29/19 32/12
**bother [1]** 36/17
**bothering [1]** 36/19
**bottom [1]** 33/16
**Bottorff [1]** 11/23
**bound [1]** 27/3
**brief [3]** 4/4 10/10 21/6
**briefing [4]** 9/21 13/20 22/6 22/10
**briefs [1]** 13/10

**B**

**bringing [1]** 27/5
**Britt [1]** 11/24
**brought [1]** 27/1
**Building [1]** 1/7
**buried [1]** 10/3
**business [1]** 28/21
**busy [1]** 7/2
**Byrnes [1]** 25/9

**C**

**C-H-O-D-O-S-H [1]** 11/24
**cajoled [1]** 21/2
**California [1]** 2/16
**call [8]** 3/21 4/2 4/13 4/18 4/22 5/2 24/9 33/1
**called [2]** 3/22 3/23
**Camden [1]** 1/8
**camera [1]** 34/25
**Camp [1]** 1/18
**can [38]** 3/17 4/5 4/6 4/23 5/1 5/12 6/7 6/10 6/18 14/6 17/4 18/6 19/1 19/3 20/3 21/1 22/23 23/9 23/11 23/15 24/23 26/15 27/24 28/6 28/6 30/16 31/19 31/21 33/5 33/12 33/20 34/12 34/24 35/7 36/4 36/8 36/14 37/14
**can't [4]** 17/7 18/20 28/9 30/25
**canceled [1]** 11/1
**cancer [4]** 10/3 28/16 28/18 28/21
**cancers [1]** 28/24
**candidates [2]** 32/10 32/12
**cannot [3]** 10/7 33/9 33/10
**car [1]** 28/11
**care [5]** 6/23 25/19 27/16 28/4 29/13
**case [14]** 1/5 9/3 10/9 11/5 11/8 14/15 14/23 17/7 17/19 21/5 25/17 27/14 28/2 33/5
**cases [7]** 6/3 6/7 6/15 7/6 25/9 25/10 26/1
**causation [12]** 12/11 13/8 13/13 13/13 13/14 13/18 13/21 13/23 14/23 17/11 17/14 17/18
**cause [7]** 14/13 15/2 15/6 25/2 25/6 25/11 25/14
**causes [2]** 28/18 28/24
**causing [1]** 28/15
**caution [1]** 5/8
**Century [1]** 2/15
**certain [1]** 20/20
**certainly [9]** 15/1 17/4 17/15 17/17 17/17 20/25 21/3 21/10 23/1 33/12
**CERTIFICATE [1]** 38/3
**certification [14]** 14/18 14/19 14/20 15/4 15/15 15/25 16/7 16/8 17/4

19/23 21/6 22/6 22/9 22/18
**certify [1]** 38/5
**cetera [3]** 13/16 18/1 18/16
**challenges [1]** 34/13
**changing [1]** 13/15
**channels [1]** 34/6
**chase [1]** 33/20
**Chinese [1]** 32/20
**Chodosh [1]** 11/24
**choose [2]** 26/16 29/14
**Christmas [1]** 10/4
**Circuit [1]** 27/13
**CIVIL [1]** 1/3
**claim [1]** 33/12
**claims [6]** 5/11 9/8 9/19 20/7 20/24 21/25
**clarification [2]** 9/17 31/6
**class [30]** 5/4 7/15 14/18 14/19 14/20 15/4 15/15 15/25 16/7 16/8 17/4 17/8 19/22 20/7 20/16 20/16 20/21 21/6 21/7 22/1 22/2 22/4 22/4 22/6 22/8 22/10 22/11 22/18 23/7 23/8
**class-based [1]** 17/8
**clear [1]** 32/13
**clerk [4]** 2/21 6/11 6/13 7/3
**Clerk's [1]** 6/2
**close [1]** 32/21
**CMC [5]** 8/21 10/15 22/20 25/15 26/3
**CMCs [1]** 26/1
**Cohen [1]** 1/7
**come [1]** 35/13
**comes [3]** 10/10 11/9 13/20
**comfortable [1]** 32/16
**coming [4]** 19/19 26/5 28/10 37/9
**Commencing [1]** 1/9
**community [1]** 29/4
**compelled [1]** 21/11
**compensation [3]** 29/1 29/6 29/11
**complaint [1]** 21/22
**complete [1]** 14/25
**completed [1]** 32/18
**completely [4]** 17/9 28/25 28/25 29/5
**complied [1]** 16/2
**computer [1]** 1/24
**computer-aided [1]** 1/24
**concepts [1]** 13/13
**concern [2]** 12/14 14/1
**concerned [1]** 23/7
**concluded [1]** 38/2
**conduct [2]** 5/1 22/15
**conducted [1]** 19/24
**confer [3]** 36/6 36/16 36/23
**conference [6]** 1/5 11/8 22/24 23/10 25/18 37/23
**conferences [1]** 37/12

**confidential [6]** 4/22 5/2 5/5 5/9 5/16 5/18
**confined [1]** 31/13
**confirm [1]** 36/8
**conflict [4]** 19/18 30/14 30/17 30/21
**conflicts [1]** 32/13
**consequences [1]** 11/12
**consideration [1]** 20/25
**considerations [2]** 29/1 29/11
**continue [6]** 7/21 10/15 26/3 34/6 37/10 37/11
**Continued [1]** 2/1
**contract [1]** 33/12
**Control [1]** 6/3
**convenient [2]** 13/2 16/15
**Cooper [1]** 1/7
**cooperatively [1]** 21/20
**coordinated [1]** 34/23
**copy [1]** 6/14
**Corporation [2]** 2/17
**correct [7]** 7/23 8/3 8/6 9/5 11/18 25/23 38/5
**correspondence [1]** 9/10
**could [9]** 17/1 17/10 17/13 18/10 18/14 30/19 34/5 36/16 37/3
**counsel [18]** 1/16 1/19 2/5 2/11 2/16 5/12 9/4 9/4 9/5 9/10 21/22 29/18 32/3 33/9 33/10 33/23 34/8 34/10
**couple [3]** 4/15 18/16 31/5
**course [3]** 6/20 31/14 37/24
**court [20]** 1/1 1/21 3/18 5/23 7/3 13/20 17/24 18/15 19/7 21/12 22/8 24/23 25/17 26/2 34/8 34/10 36/17 36/19 38/3 38/10
**Court's [1]** 9/25 22/9 34/4
**courthouse [3]** 1/7 37/6 37/9
**Courtroom [1]** 2/20
**COVID [2]** 8/8 10/4
**crazy [2]** 7/3 28/9
**CRC [1]** 38/9
**credentials [1]** 27/17
**credibility [1]** 15/11
**criteria [2]** 20/17 21/8
**cross [5]** 27/6 31/9 31/11 31/12 31/13
**cross-examination [1]** 31/9
**cross-examine [1]** 27/6
**CRR [1]** 38/9
**crunch [1]** 16/12
**current [1]** 36/8
**CVS [1]** 2/16

**D**

**D-A-R-I-N-G [1]** 20/8
**D-E-U-T-E-N-B-E-R-G [1]** 8/15

**Dallas [1]** 7/11
**Daring [3]** 20/8 21/25 23/20
**date [4]** 10/7 10/7 36/13 37/14
**dates [16]** 6/16 12/15 12/16 13/2 13/5 14/3 15/15 15/17 15/18 15/19 16/13 16/17 19/20 19/24 29/20 29/22
**Daubert [26]** 12/10 12/10 12/11 12/12 12/24 13/3 14/4 14/5 15/21 15/22 16/16 18/8 18/12 18/25 19/3 19/17 19/23 26/5 26/14 26/17 26/25 27/22 28/2 29/24 31/25 37/11
**Dave [1]** 9/23
**DAVID [4]** 1/18 8/2 20/10 22/25
**DAVIS [1]** 2/9
**day [6]** 12/19 12/21 18/17 19/2 30/9 30/15
**days [2]** 21/3 29/17
**deadline [7]** 9/21 10/9 12/18 15/14 15/16 16/2 32/5
**deadlines [1]** 9/20
**dealing [1]** 5/3
**deals [1]** 7/15
**dealt [2]** 5/10 15/12
**December [2]** 9/13 10/3
**decide [3]** 17/24 26/12 28/23
**decided [1]** 15/22
**decides [2]** 28/18 28/22
**decision [1]** 23/19
**decisions [2]** 27/25 35/3
**declaration [4]** 27/2 27/3 27/7 27/11
**declarations [2]** 27/8 31/18
**deeds [1]** 27/19
**defendant [1]** 33/17
**defendants [32]** 2/5 2/11 2/16 5/7 6/4 8/11 8/20 10/7 14/10 16/6 20/14 20/23 21/4 21/16 21/18 21/20 21/22 22/17 24/7 25/4 32/8 32/10 32/13 32/16 33/2 33/10 33/15 34/3 34/21 35/1 35/21 35/24
**defendants' [4]** 9/25 10/10 15/14 22/6
**defense [16]** 5/3 5/18 8/25 9/3 11/23 13/1 13/17 14/8 17/12 17/18 21/14 24/6 25/5 35/10 36/20 37/1
**defer [4]** 22/23 23/21 25/14 26/1
**deficiency [1]** 25/7
**definition [4]** 20/17 22/2 22/4 22/11
**definitively [1]** 8/12
**degrees [1]** 27/16

**delicate [2]** 9/24 10/16
**demonstrated [1]** 27/15
**denied [1]** 33/24
**depending [2]** 18/1 18/9
**depose [3]** 17/4 17/7 18/7
**deposed [2]** 8/20 14/14
**deposition [10]** 8/22 9/5 9/19 10/1 10/12 10/24 11/11 20/1 26/15 26/22
**depositions [12]** 5/4 7/16 9/21 11/23 12/2 12/3 13/6 13/9 15/11 17/22 19/6 19/22
**Deputy [1]** 2/20
**designation [1]** 5/7
**desired [1]** 12/12
**detail [1]** 17/16
**determine [2]** 9/12 28/3
**Deutenberg [2]** 8/15 9/3
**dial [2]** 3/12 24/10
**did [6]** 8/20 9/5 14/13 29/7 29/8 36/20
**didn't [1]** 30/13
**different [2]** 6/16 6/17
**diligently [1]** 10/8
**direct [2]** 29/16 31/7
**disabuse [1]** 33/4
**disagree [1]** 17/9
**disclosed [1]** 16/6
**discovered [1]** 6/3
**discovery [1]** 22/19
**discuss [1]** 35/12
**discussed [1]** 36/1
**discussion [1]** 4/1
**discussions [4]** 19/19 33/11 33/21 36/4
**dismiss [4]** 20/23 21/1 21/20 21/25
**dismissal [3]** 5/11 8/4 20/7
**dismissed [6]** 6/7 7/18 9/8 9/9 20/20 23/8
**dispute [4]** 12/1 22/16 22/19 36/12
**disputes [2]** 19/25 22/11
**disqualify [1]** 26/18
**distance [1]** 37/9
**DISTRICT [3]** 1/1 1/1 1/11
**divorced [3]** 28/25 28/25 29/5
**do [42]**
**doable [1]** 31/22
**docket [1]** 6/16
**doctor [1]** 28/13
**does [5]** 4/18 5/17 8/15 20/8 36/10
**doesn't [3]** 15/6 19/3 23/20
**dog [1]** 27/20
**doing [4]** 5/13 21/2 24/21 30/12
**don't [46]**
**done [5]** 13/22 14/23 23/21 27/19 29/23
**down [1]** 24/24
**downstream [2]** 33/2

**D**

downstream... [1] 33/10
driving [1] 7/3
DUANE [1] 2/2
due [1] 5/10
duration [1] 12/2
during [2] 8/8 14/3

**E**

each [4] 14/15 29/16
32/15 32/15
earlier [4] 8/4 9/7 16/4
16/11
early [2] 8/8 12/25
East [1] 2/15
echo [4] 3/6 3/9 3/24 4/10
echoing [1] 4/7
econ [1] 20/22
eight [1] 21/6
Eisenhower [1] 1/15
either [2] 6/20 14/4
Eleanora [1] 8/14
else [8] 7/24 10/18 10/22
18/22 23/25 24/6 31/3
33/25
email [6] 6/14 6/18 6/21
15/17 15/18 36/5
end [4] 8/20 12/17 16/14
34/13
engage [1] 36/6
engaged [1] 18/9
enough [1] 17/2
entire [1] 32/21
entitled [2] 15/8 38/6
ESQUIRE [10] 1/15 1/18
2/3 2/3 2/4 2/9 2/9 2/14
2/15 2/21
essentially [1] 22/17
establish [1] 18/2
estate [3] 8/14 8/18 9/2
Ester [1] 6/5
et [3] 13/16 18/1 18/15
ethanol [2] 28/15 28/24
even [3] 8/21 33/15 36/5
event [2] 23/14 34/9
everybody [5] 3/19 4/2
16/12 28/20 37/15
everyone's [1] 24/21
everything [1] 34/23
evidence [2] 22/19 27/11
ex [3] 34/25 35/6 35/16
examination [2] 31/9
31/11
examine [1] 27/6
example [2] 28/6 36/10
exchanged [1] 13/9
exchanges [1] 36/5
excuse [1] 33/24
excused [1] 33/22
exhibits [1] 22/20
expanding [1] 14/22
expect [4] 13/17 18/9
29/14 29/15
expected [1] 30/4
expert [15] 12/20 13/8
14/16 14/18 14/21 26/14
26/18 26/19 26/24 27/2

27/2 27/6 27/16 29/20
30/14
experts [24] 11/23 12/16
12/19 13/12 13/14 13/15
14/11 14/12 15/14 15/17
16/6 16/9 16/11 17/3
19/23 27/9 27/14 27/21
28/4 29/14 30/5 30/7
30/10 31/8
expired [1] 22/5
exposure [4] 20/17 28/14
28/17 28/23
extend [1] 32/5
extended [2] 15/1 15/10
extension [3] 32/9 34/14
34/22
extent [1] 16/22
eye [1] 17/8

**F**

F-A-T-I-G-A-T-O [1]
7/18
fact [3] 5/10 15/20 21/23
fair [2] 15/3 15/4
faith [4] 10/8 20/18 20/19
21/10
fall [1] 8/8
family [3] 10/5 10/17
11/2
far [3] 17/11 18/4 23/7
Fatigato [3] 7/17 8/4
20/21
Fatigato's [2] 5/11 9/8
February [8] 1/8 8/20
12/24 13/2 16/5 16/12
31/20 32/5
February 23rd [1] 32/5
February 24th [1] 31/20
FEDERAL [1] 38/3
feedback [2] 3/16 3/22
felt [1] 30/12
few [1] 8/23
figure [1] 11/4
figuring [1] 22/3
file [1] 21/5
filed [5] 5/11 6/3 8/4
13/10 17/23
filing [2] 6/16 7/6
finalize [1] 32/11
finalized [1] 30/9
finally [2] 8/17 12/15
find [3] 6/6 7/5 28/17
finding [1] 13/15
fine [2] 3/17 11/19
firms [2] 6/17 7/6
first [7] 4/17 7/14 13/15
14/11 21/4 25/22 26/12
fit [2] 16/10 20/16
five [1] 21/3
fix [1] 29/21
Flack [1] 11/25
flare [1] 8/9
flare-up [1] 8/9
flesh [1] 26/10
folks [1] 16/15
following [2] 9/12 30/16
follows [1] 3/3

foregoing [1] 38/5
form [1] 27/1
format [1] 26/9
forth [3] 13/24 20/12
32/8
forward [3] 7/22 14/7
37/14
four [7] 12/16 14/12
15/17 16/9 21/3 29/17
29/19
frankly [2] 12/8 13/19
20/14
FREEMAN [1] 1/14
front [2] 16/25 17/1
full [2] 17/2 32/14
fully [4] 14/14 18/8 36/7
36/13
fumes [1] 28/14
further [3] 17/14 26/1
36/17
future [1] 37/12

**G**

game [2] 15/4 15/5
gas [7] 28/9 28/10 28/11
28/14 28/16 28/17 28/24
gatekeeper [1] 28/3
gatekeepers [1] 28/7
gave [4] 12/16 17/3 31/16
36/21
general [15] 12/11 13/8
13/12 13/13 13/14 13/18
13/21 13/22 14/13 14/23
15/2 15/6 17/11 17/14
17/18
generalized [1] 15/10
Georgia [2] 2/10 7/17
get [24] 5/22 5/25 6/10
6/11 9/19 12/15 15/2 16/7
17/1 17/2 18/4 18/20
18/24 18/24 19/5 24/25
27/23 29/19 29/22 30/24
30/25 31/9 31/20 37/14
gets [1] 24/23
getting [5] 3/16 3/22 3/24
21/3 37/8
give [9] 4/20 10/7 10/24
14/13 17/5 17/8 28/6 28/6
28/22
given [5] 10/16 25/25
30/11 32/11 33/15
giving [1] 17/6
glad [1] 15/19
gmail.com [1] 1/22
go [7] 6/17 10/20 11/8
20/4 25/8 34/14 34/19
goes [2] 10/10 35/2
going [33] 11/4 12/12
12/24 13/17 14/4 16/12
16/24 17/16 17/16 17/17
17/21 17/22 18/7 18/7
18/13 18/14 18/15 18/17
19/4 19/18 23/19 24/9
25/1 25/21 26/9 26/12
26/23 27/7 27/9 29/18
32/14 34/21 35/4
GOLDBERG [4] 2/3

24/8 32/7 35/9
good [17] 3/4 3/5 8/2 10/8
14/9 17/12 20/10 20/18
20/19 21/10 24/17 24/19
24/20 25/3 27/19 31/19
34/2
gotten [2] 15/18 32/3
government [1] 28/17
grant [3] 28/19 28/22
30/8
granted [1] 32/23
GREENBERG [4] 2/8
14/10 25/4 31/5
ground [1] 24/22
group [1] 25/5
guess [2] 4/23 35/12
guidance [1] 30/3

**H**

had [10] 6/13 12/14 22/1
34/5 34/9 34/20 34/24
36/1 36/5 36/9
half [1] 10/10
hang [1] 24/9
happen [1] 13/25
happened [2] 10/6 10/17
happening [1] 19/12
happy [3] 10/15 16/13
33/14
hard [1] 32/10
HARKINS [3] 2/9 25/1
25/4
has [18] 4/12 8/22 9/4
10/12 11/10 13/6 19/15
23/17 27/16 27/18 28/18
30/7 30/9 30/14 30/17
31/12 32/20 37/6
have [76]
having [5] 4/7 5/2 7/16
30/15 35/12
he [8] 4/12 8/7 10/25
24/23 24/24 27/17 27/18
30/7
he's [1] 12/23
heads [1] 4/20
health [2] 30/23 30/24
Healthcare [1] 2/6
hear [8] 3/15 3/17 4/5 4/6
4/9 4/10 4/23 17/12
hearing [1] 3/6 3/9 4/7
15/21 15/23 19/3 19/23
26/14 29/15 29/21 29/24
hearings [16] 12/11
12/13 12/24 13/3 13/10
14/4 14/5 18/8 18/11
18/13 19/17 26/5 32/1
37/7 37/10 37/11
held [3] 3/1 4/1 5/5
Hello [3] 12/6 24/17
29/25
helps [1] 30/3
here [7] 5/18 11/4 12/1
14/12 21/17 22/16 29/10
his [2] 9/19 11/5
holidays [2] 8/8 25/25
Honor [66]
Honor's [1] 30/11

HONORABLE [5] 1/10
1/11 2/21 3/2 3/2
hope [2] 24/21 36/6
hopefully [3] 8/23 25/20
37/13
hospice [3] 8/7 10/2
10/25
hour [1] 4/19
hours [2] 14/15 29/16
how [13] 7/2 13/24 17/1
17/10 18/14 26/9 27/16
27/18 27/19 28/4 29/4
29/7 31/20
However [2] 5/8 25/13
Huahai [1] 2/6
hypothetical [2] 28/7
28/13

**I**

I'll [3] 6/18 26/10 28/7
I'm [16] 3/22 4/7 4/25
10/20 10/21 15/23 23/5
23/9 23/12 24/9 27/20
27/25 29/12 29/18 33/22
35/1
I've [2] 4/19 32/3
idea [1] 17/7
identified [1] 14/12
identify [4] 8/21 17/15
22/1 24/22
immediate [2] 12/14 14/1
immediately [1] 21/3
imminent [1] 13/11
imminently [1] 9/15
impressed [2] 27/20
27/25
improperly [1] 21/21
Inc [3] 2/11 2/12 2/16
including [1] 20/21
indemnification [3] 36/1
36/8 36/14
indemnified [1] 36/11
indemnifying [1] 36/14
indemnity [3] 33/6 33/12
33/19
independent [1] 33/23
indicated [1] 26/10
indicates [1] 5/20
indulgence [1] 10/1
Industries [1] 2/11
influence [1] 16/1
inform [1] 8/11
informally [1] 22/18
information [3] 18/25
36/21 37/1
informed [1] 21/22
initially [2] 3/22 3/23
institutions [1] 27/17
intend [4] 9/18 9/18
13/20 35/11
intended [1] 9/12
intends [1] 34/10
intent [1] 34/5
interpretation [1] 15/5
interrupted [1] 5/23
interrupts [1] 4/12
investigated [1] 6/19

## I

**inviting [1]** 23/12
**involved [2]** 18/9 18/10
**IRBESARTAN [1]** 1/4
**issue [42]**
**issues [12]** 5/8 9/6 14/17 14/19 14/19 18/15 18/19 22/7 24/4 30/24 33/7 35/22
**it's [29]** 3/17 7/3 7/5 14/2 14/9 15/4 15/4 15/7 15/7 16/12 16/15 17/12 18/16 18/17 19/15 20/12 21/2 23/18 24/17 26/20 27/12 28/3 28/9 28/9 29/25 31/4 33/20 34/1 36/6
**item [1]** 7/14

## J

**jam [1]** 14/3
**January [2]** 6/14 32/4
**January 25th [1]** 6/14
**January 27th [1]** 32/4
**JERSEY [7]** 1/1 1/8 1/16 28/7 28/8 28/9 33/18
**job [1]** 30/12
**John [4]** 1/21 4/5 4/11 38/9
**Johnjkurz [1]** 1/22
**JOHNSTON [1]** 2/14
**joining [1]** 24/16
**joint [1]** 25/5
**JUDGE [24]** 1/11 3/6 3/17 3/24 4/10 4/17 6/13 12/9 12/23 14/1 15/22 15/23 17/21 18/13 18/24 19/16 23/24 24/3 24/9 24/15 24/17 33/8 36/2 37/24
**judgment [2]** 22/18 23/14
**Judicial [1]** 2/21
**juncture [1]** 22/21
**juror [1]** 27/24
**just [29]** 4/19 5/1 6/25 7/3 10/21 10/22 11/3 11/8 11/13 11/21 15/13 16/14 18/7 18/18 18/18 18/19 20/15 20/22 23/21 26/2 28/19 29/1 29/21 30/16 31/5 34/22 34/23 35/15 36/4

## K

**KANNER [1]** 1/17
**KATZ [1]** 1/14
**keep [2]** 16/5 34/23
**Kettering [3]** 28/20 28/23 29/4
**kin [3]** 8/9 10/2 10/13
**know [42]**
**knowing [2]** 12/23 35/7
**knowledgeable [1]** 36/15
**knows [5]** 12/18 13/8 18/16 24/24 28/20
**KRISTEN [2]** 2/15 34/3
**KUGLER [16]** 1/10 2/21 3/2 4/17 12/23 14/1 15/23

17/21 18/13 18/24 19/16 23/24 24/3 24/10 24/15 24/18
**Kugler's [2]** 6/13 12/9
**Kurz [2]** 1/21 38/9

## L

**land [2]** 6/21 18/3
**Larry [2]** 2/20 4/23
**last [6]** 9/2 20/15 26/1 26/4 26/10 32/22
**late [2]** 8/8 12/24
**Laughter [1]** 7/9
**law [5]** 2/21 6/13 6/17 27/13 33/18
**lawyers [1]** 18/6
**leaches [1]** 15/6
**least [5]** 12/20 18/10 30/6 30/13 36/13
**Lee [1]** 6/5
**left [1]** 16/9
**legitimate [4]** 16/16 17/10 30/17 30/21
**let [6]** 3/12 9/13 9/15 20/14 33/5 35/16
**let's [12]** 3/19 4/2 4/13 11/12 11/22 14/6 20/4 20/6 24/25 28/12 28/12 28/16
**letter [14]** 5/3 5/22 6/1 7/17 8/21 9/6 9/14 20/13 21/4 22/20 25/7 32/4 32/9 35/4
**letters [4]** 7/15 32/4 35/8 36/5
**letting [1]** 10/21
**levity [1]** 33/3
**LIABILITY [1]** 1/4
**liaison [1]** 34/6
**like [7]** 4/18 19/4 25/10 28/20 29/4 30/24 35/22
**likely [1]** 13/3
**limited [1]** 14/18
**line [2]** 33/16 37/21
**link [1]** 37/22
**listed [1]** 25/7
**listing [1]** 26/1
**listings [1]** 25/22
**litigate [1]** 22/17
**litigation [5]** 1/5 28/25 29/6 29/10 34/7
**little [1]** 26/11
**live [1]** 27/10
**LLC [4]** 1/14 1/17 2/6 2/11
**LLP [3]** 2/2 2/8 2/14
**LOCKARD [4]** 2/9 14/10 18/22 31/4
**logistical [1]** 34/13
**long [4]** 5/12 13/9 22/5 37/13
**longer [1]** 29/15
**longstanding [1]** 30/18
**look [4]** 4/18 6/10 23/9 37/14
**looked [1]** 6/8
**looking [2]** 29/7 29/12

**Loretta [6]** 2/1 6/13 6/18 7/1 37/21 37/22
**Los [2]** 2/16 7/11
**LOSARTAN [1]** 1/3
**loss [1]** 10/22
**lost [1]** 6/21
**lot [1]** 30/3
**LOTMAN [6]** 2/4 5/6 9/1 11/16 11/19 11/20
**Louisiana [1]** 1/19
**Louissant [1]** 25/16
**Ls [1]** 20/8
**Ltd [2]** 2/6 2/11

## M

**MacStravic [1]** 2/20
**made [1]** 34/24
**Maedler [1]** 25/9
**major [1]** 19/4
**make [12]** 11/21 17/22 18/19 18/19 22/2 23/19 24/23 27/24 30/25 32/16 32/17 34/24
**makes [2]** 31/23 31/24
**making [1]** 36/7
**man [1]** 10/2
**MANAGEMENT [2]** 1/5 25/17
**manner [1]** 11/11
**manufacturer [4]** 32/8 32/9 32/13 32/15
**manufacturers [3]** 32/4 33/18 34/11
**many [5]** 18/14 21/17 27/16 27/18 27/19
**March [13]** 12/18 12/19 12/22 12/23 12/25 12/25 15/15 15/25 16/2 26/6 26/6 29/22 30/8
**March 10th [3]** 12/18 15/15 16/2
**March 10th and [1]** 12/22
**March 10th on [1]** 15/25
**March 1st [3]** 12/23 26/6 29/22
**March 5 [1]** 30/8
**March 8th [1]** 12/19
**master [3]** 1/12 3/3 21/21
**material [1]** 33/16
**matter [7]** 7/21 11/9 12/3 15/5 22/12 25/13 38/6
**matters [4]** 5/25 15/24 25/5 25/16
**may [14]** 6/25 12/8 15/5 17/20 19/24 22/13 22/14 23/11 23/12 23/13 28/8 28/15 30/5 33/15
**maybe [9]** 6/18 18/16 26/10 30/15 35/2 35/5 36/2 36/22 37/3
**MAZIE [1]** 1/14
**md [1]** 1/4
**me [12]** 3/12 3/15 4/9 6/13 7/3 23/13 23/25 28/2 30/7 32/5 35/16 37/22
**mean [4]** 18/23 33/17

36/21 36/25
**meantime [1]** 11/12
**mechanical [1]** 1/23
**medical [3]** 20/7 20/15 21/21
**meet [7]** 21/8 22/2 22/4 22/11 36/6 36/16 36/22
**meeting [2]** 25/22 26/4
**members [1]** 4/24
**mention [1]** 4/16
**mentioned [2]** 9/7 9/14
**methodology [1]** 28/4
**middle [1]** 19/2
**midst [1]** 10/4
**might [1]** 36/3
**million [1]** 28/22
**Mills [2]** 25/13 25/16
**mind [1]** 16/5
**minimal [1]** 27/13
**minimum [1]** 23/1
**mistake [1]** 6/6
**Mitchell [1]** 1/7
**moment [2]** 20/22 33/2
**momentarily [2]** 24/11 24/16
**Monday [1]** 12/15
**monitoring [3]** 20/7 20/16 21/21
**month [3]** 13/11 25/20 25/21
**month's [1]** 25/15
**more [8]** 4/10 13/2 13/24 18/25 21/24 23/15 33/14 37/3
**morning [13]** 3/4 3/5 8/2 8/5 9/9 14/9 20/10 24/17 24/19 24/20 25/3 34/2 35/9
**MORRIS [1]** 2/2
**most [1]** 24/24
**motion [6]** 23/12 23/13 23/14 26/18 27/1 27/5
**motions [1]** 17/23
**move [4]** 14/6 16/4 16/11 20/6
**moved [2]** 10/25 16/17
**Mr. [22]** 4/9 5/14 6/2 7/23 8/7 8/16 9/9 9/11 9/19 9/22 10/6 10/12 10/23 16/19 19/21 20/5 21/25 23/20 24/8 25/1 34/17 35/9
**Mr. Goldberg [2]** 24/8 35/9
**Mr. Harkins [1]** 25/1
**Mr. O'Neill [2]** 21/25 23/20
**Mr. Slater [8]** 4/9 5/14 6/2 7/23 16/19 19/21 20/5 34/17
**Mr. Stanoch [2]** 8/16 9/22
**Mr. Wolfe [5]** 8/7 9/9 9/11 10/6 10/12
**Mr. Wolfe's [2]** 9/19 10/23
**Ms. [10]** 5/11 8/4 9/8

11/16 11/19 11/20 18/22 20/21 21/25 23/20
**Ms. Daring [2]** 21/25 23/20
**Ms. Fatigato [2]** 8/4 20/21
**Ms. Fatigato's [2]** 5/11 9/8
**Ms. Lockard [1]** 18/22
**Ms. Lotman [2]** 11/19 11/20
**Ms. Walker [1]** 11/16
**much [3]** 13/24 23/23 31/7
**multiple [1]** 8/11
**must [1]** 6/20
**mute [3]** 3/20 4/6 4/12
**my [4]** 3/23 9/10 17/21 30/12

## N

**name [1]** 6/5
**named [2]** 6/4 21/21
**nature [3]** 10/5 10/16 30/18
**NE [1]** 2/10
**near [1]** 37/12
**nearly [2]** 21/6 22/1
**necessary [3]** 8/18 27/12 32/17
**need [16]** 5/4 5/10 5/18 9/19 11/3 17/21 19/7 23/12 23/20 26/20 26/24 27/14 32/12 32/13 36/24 37/4
**needed [1]** 5/9
**needs [4]** 4/22 5/15 13/24 21/12
**negotiate [1]** 36/14
**neither [1]** 27/12
**new [16]** 1/1 1/8 1/16 1/19 13/12 13/13 14/18 15/7 15/18 15/19 17/13 28/7 28/8 28/9 32/20 33/17
**next [19]** 8/9 10/2 10/12 10/15 11/8 11/22 13/11 20/4 20/6 22/24 23/10 25/14 25/17 25/19 25/21 25/22 26/3 32/22 37/22
**no [18]** 5/19 7/5 10/11 10/12 10/14 11/8 11/22 13/14 20/13 22/11 26/14 29/10 29/10 29/16 31/7 32/2 33/9 34/15 36/11
**None [1]** 4/25
**not [45]**
**noted [1]** 32/19
**nothing [6]** 10/22 24/2 24/7 35/20 35/25 36/16
**notice [4]** 9/4 23/24 33/18 33/19
**noticed [1]** 10/24
**notification [1]** 9/17
**notion [1]** 33/4
**November [2]** 9/11 10/25
**now [20]** 4/15 8/9 9/14

**N**

now... [17] 9/15 12/21 13/15 14/16 17/7 18/6 19/14 20/9 20/13 21/2 21/3 22/12 23/21 24/24 26/11 32/25 37/13
number [4] 1/3 12/25 20/23 32/11
numbers [1] 6/16

**O**

O'Neill [3] 20/8 21/25 23/20
object [1] 35/16
observers [1] 18/8
obviously [4] 17/9 18/20 27/3 32/14
off [1] 4/1
offer [2] 17/13 19/6
offered [3] 15/16 15/16 17/14
Office [1] 6/3
offices [1] 32/21
Official [2] 1/21 38/3
okay [20] 4/13 6/22 7/14 8/1 11/20 11/20 14/6 19/11 24/11 25/8 25/12 25/19 26/4 31/1 31/16 32/3 32/23 35/15 35/17 37/4
once [2] 8/11 10/6
one [19] 6/1 6/7 7/7 7/10 9/2 9/6 12/20 12/22 12/22 13/1 16/1 22/11 24/3 25/6 27/20 30/2 30/6 34/20 36/11
ongoing [1] 15/24
only [7] 4/12 16/8 18/16 18/17 22/7 28/4 34/20
open [1] 15/1
opinion [7] 13/22 15/7 17/11 28/5 29/8 29/9 29/12
opinions [17] 12/12 13/13 13/14 13/16 14/20 14/23 14/24 15/2 16/25 17/3 17/5 17/9 17/13 17/14 17/15 17/18 17/24
opportunity [5] 26/13 27/6 27/19 31/10 35/12
opposition [1] 22/6
order [1] 25/14
orders [3] 25/2 25/6 25/10
Originally [1] 10/24
Orleans [1] 1/19
other [23] 7/11 12/20 13/2 13/4 15/20 15/24 16/2 16/8 17/10 19/19 24/4 25/22 27/17 27/21 30/10 31/9 31/25 34/7 34/21 34/24 35/8 35/19 35/22
others [1] 3/6
otherwise [1] 35/7
ought [1] 36/22
our [21] 4/13 4/18 9/6 9/6

9/9 12/14 13/5 15/6 19/15 20/12 20/12 22/15 22/24 23/17 24/23 25/7 34/4 34/13 35/4 36/6 36/17
out [12] 5/7 6/6 7/5 7/12 11/4 17/25 18/16 19/7 22/3 26/10 28/10 28/17
outset [2] 4/15 4/20
outside [1] 19/5
outstanding [1] 5/4
over [2] 13/9 27/21
overlap [1] 13/3 18/6
overlaps [1] 12/9
overlooked [1] 6/21
own [2] 28/9 31/11

**P**

papers [1] 13/5
paperwork [1] 8/18
Park [1] 2/15
Parkway [1] 1/15
part [7] 4/22 5/2 12/8 13/19 17/3 17/6 24/6
parte [3] 34/25 35/6 35/16
partial [1] 23/14
participate [3] 33/10 33/11 34/6
participated [1] 27/18
participating [1] 33/21
particularly [1] 37/9
parties [9] 21/16 21/17 21/20 22/9 32/12 32/15 32/19 35/6 35/8
parts [2] 17/25 34/7
party [3] 36/10 36/11 36/11
passed [5] 7/20 8/7 9/11 10/3 10/12
passing [1] 10/23
past [2] 9/20 23/8
Pause [2] 3/14 24/13
Pennsylvania [1] 2/5
people [2] 30/24 37/7
period [2] 16/11 16/14
person [2] 8/19 27/5
personal [1] 10/5
PFS [1] 25/7
Pharma [1] 2/11
Pharmaceutical [1] 2/11
Pharmaceuticals [3] 2/5 2/6 2/11
pharmacy [2] 2/16 34/3
phase [6] 13/8 13/23 14/13 14/23 17/6 17/19
Philadelphia [1] 2/5
phone [3] 3/23 4/24 37/11
phones [1] 3/20
pick [2] 4/7 28/19
Piedmont [1] 2/10
place [2] 8/23 36/9
placed [1] 23/17
plainly [1] 15/16
plaintiff [5] 6/4 6/16 7/7 9/12 33/7
plaintiff's [1] 6/5

plaintiffs [26] 1/16 1/19 5/10 5/15 8/3 9/24 12/5 12/7 19/1 20/9 20/11 21/19 21/21 21/24 22/1 23/7 23/19 24/2 25/25 30/1 30/5 33/13 35/20 35/25 36/4 36/7
plaintiffs' [10] 5/12 7/17 9/4 9/5 9/10 14/17 14/20 16/8 21/22 30/7
plan [1] 11/4
please [2] 24/22 37/22
point [13] 10/14 10/22 11/4 12/25 17/23 26/19 26/19 27/4 27/9 27/21 28/2 29/2 37/13
points [4] 21/17 26/25 27/2 27/6
pony [1] 27/20
position [5] 8/12 15/6 16/22 19/22 20/12
possibility [2] 29/6 30/15
possible [1] 23/6
potential [1] 10/1
potentially [1] 15/21
practice [2] 23/12 26/3
preference [1] 36/18
prejudice [1] 10/14
preparing [1] 16/15
present [3] 2/19 23/25 26/13
presented [2] 14/20 18/20
presenting [1] 34/12
press [1] 4/24
previous [1] 19/7
principal [1] 3/20
Prinston [1] 2/5
prior [2] 14/25 26/3
probably [5] 7/7 18/6 19/12 24/3 37/8
problem [5] 4/7 7/6 34/15 35/9 35/10
problems [1] 19/25
procedurally [1] 22/21
proceed [10] 4/13 5/12 5/21 9/12 9/18 9/18 11/1 11/13 11/22 19/13
proceedings [4] 1/23 3/1 38/2 38/6
process [4] 12/17 17/4 18/25 36/14
produce [1] 30/6
produced [1] 1/24
product [1] 35/2
PRODUCTS [1] 1/4
professional [2] 20/18 30/17
prompt [1] 22/12
promptly [4] 8/10 9/15 23/6 35/17
propose [2] 29/20 30/6
proposed [1] 20/16
provide [1] 13/2
provided [1] 14/16
provides [1] 17/24
public [1] 4/24

pump [1] 28/9
pure [1] 29/1
purely [1] 28/13
purpose [2] 26/17 36/7
purposes [1] 16/7
put [6] 5/7 12/19 16/21 22/8 27/20 35/4
putative [1] 22/3
putting [1] 15/14

**Q**

qualifications [6] 16/24 17/5 17/8 27/12 27/13 27/14
Quality [1] 6/3
question [12] 4/12 4/21 6/2 7/25 9/9 9/16 28/23 30/2 30/2 30/13 31/16 31/19
questioning [1] 20/2
questions [10] 12/10 15/8 15/10 26/8 29/24 31/3 31/5 31/13 31/25 35/19
quickly [2] 6/11 17/22
quite [2] 20/14 29/19

**R**

R-A-L-E-I-G-H [1] 7/20
radar [2] 19/15 23/17
raise [4] 4/21 9/6 30/13 35/22
raised [8] 13/4 14/17 18/5 19/15 26/5 26/25 27/6 31/13
raising [1] 6/14
Raleigh [1] 7/19
rapidly [2] 9/20 9/21
RBK [1] 1/4
RE [1] 1/3
reach [1] 19/7
read [1] 36/20
real [2] 22/7 30/13
really [9] 12/25 13/4 14/2 16/1 20/14 27/16 29/7 32/17 33/11
reason [3] 15/20 16/16 33/9
reasonable [4] 14/2 20/19 33/14 33/20
REBECCA [2] 3/21 21/15
rebut [1] 14/19
rebuttal [1] 31/10
received [2] 7/17 23/24
recently [1] 7/20
recess [2] 4/4 24/14
record [6] 4/1 17/2 17/22 18/2 20/20 38/6
recorded [1] 1/23
redial [1] 5/2
redirect [1] 31/10
regarding [1] 10/23
rehashing [2] 15/2 15/9
related [1] 36/3
relist [1] 25/17
rely [2] 26/15
remainder [1] 16/8
remains [1] 9/9

reminder [1] 15/14
reopened [1] 37/6
report [4] 15/4 15/7 17/25 26/21
reporter [5] 1/21 3/18 5/23 24/23 38/10
REPORTER'S [1] 38/3
Reporter/Transcriber [1] 38/10
reports [10] 13/8 13/9 13/21 14/13 14/16 14/18 14/21 15/3 17/6 26/15
representative [5] 5/4 7/16 8/19 10/11 11/10
representatives [9] 20/7 20/16 20/21 21/8 22/2 22/4 22/10 23/7 23/8
request [6] 13/1 13/5 18/13 32/23 32/25 34/24
requesting [1] 32/9
requests [1] 20/19
require [1] 4/19
required [1] 32/21
requirement [1] 26/14
resend [1] 6/18
resolution [2] 22/8 22/12
resolve [1] 23/5
resolved [5] 7/19 8/5 8/22 23/12 25/10
resources [1] 22/10
respect [6] 9/2 11/5 12/1 19/17 20/1 23/20
respectful [1] 11/3
respective [1] 27/24
respond [5] 21/10 26/18 26/19 26/24 26/24
response [6] 5/19 13/5 15/18 31/11 31/12 32/2
resume [1] 26/2
RET [2] 1/11 3/3
retail [1] 34/3
Retailer [1] 2/16
retailers [1] 33/1
retain [2] 34/8 34/10
RICHER [2] 2/15 34/3
right [30] 3/12 3/13 3/15 3/19 4/3 4/13 5/1 5/14 5/17 6/12 6/23 6/24 8/13 8/24 9/22 11/15 11/22 17/15 19/14 20/4 20/9 21/13 23/3 23/21 24/8 24/9 24/15 24/25 30/22 37/15
Rite [1] 2/17
RMR [1] 38/9
RMR-CRR-CRC [1] 38/9
Road [1] 2/10
ROBERT [3] 1/10 2/21 3/2
roll [1] 33/5
Roseland [1] 1/16
round [1] 13/15
rule [1] 16/23
rules [1] 24/22
ruling [2] 22/22 34/4

United States District Court

**S**

safe [1] 37/15
said [5] 9/15 10/25 13/17 17/20 34/9
same [11] 6/4 6/4 6/15 7/6 18/21 19/23 29/12 29/12 34/11 34/14 34/22
SARAH [1] 2/14
saw [1] 12/15
say [15] 10/11 16/14 18/5 19/5 19/16 21/7 21/24 27/9 31/9 34/4 35/7 35/7 36/4 36/10 36/20
saying [1] 18/4
says [2] 36/11 37/1
schedule [4] 15/24 17/23 18/5 18/18
scheduled [3] 9/19 12/20 25/17
scheduling [11] 12/24 14/2 14/7 16/4 18/4 18/25 19/11 19/17 25/25 30/2 30/12
science [2] 28/3 29/1
scientific [1] 29/4
scientist [1] 28/13
scientists [1] 29/11
scope [9] 12/10 12/11 13/6 15/12 16/23 18/12 19/5 20/1 20/1
screens [2] 19/15 23/17
seal [1] 5/13
second [3] 15/13 25/22 31/16
section [1] 25/7
see [8] 3/13 3/21 14/6 17/1 17/9 19/16 31/17 35/8
seeking [1] 22/12
selection [1] 32/17
selections [1] 32/11
send [1] 37/22
sense [3] 17/21 31/23 31/24
sensitive [3] 10/23 11/2 11/9
sensitively [1] 10/5
sent [2] 6/13 6/14
sentence [1] 21/7
separate [3] 34/8 34/9 34/10
set [3] 20/12 27/9 32/8
SETH [2] 2/3 32/7
settle [1] 33/12
settlement [8] 32/3 33/11 33/14 33/19 33/21 33/23 34/8 36/3
settling [1] 33/17
seven [2] 10/10 21/6
several [1] 20/21
she [3] 6/14 27/18 27/18
she's [1] 18/4
shortly [1] 9/14
should [13] 4/19 16/1 17/25 18/1 19/21 21/11 22/4 22/8 24/15 31/22 33/22 35/6 36/25

shouldn't [2] 21/18 22/9
show [5] 25/2 25/6 25/11 25/14 27/20
shows [1] 20/20
sic [1] 24/23
side [4] 5/18 15/25 20/22 31/9
side's [1] 27/21
sides [2] 29/20 32/12
significant [1] 32/14
silence [2] 4/6 5/20
similar [1] 20/19
similarly [1] 25/14
simply [3] 10/11 21/7 34/5
single [1] 10/1
sit [2] 33/5 34/5
situation [5] 8/6 9/24 11/3 16/21 21/10
size [1] 33/15
SLATER [13] 1/14 1/15 4/9 5/14 6/2 7/23 12/6 16/19 19/21 20/5 29/25 31/24 34/17
Sloan [3] 28/19 28/22 29/4
smart [1] 33/13
Smith [2] 2/21 6/13
Smoot [1] 6/5
so [68]
Solco [1] 2/6
some [21] 11/4 12/25 13/12 13/14 15/20 16/22 17/20 18/10 18/25 26/8 26/8 28/13 32/4 33/7 33/14 33/15 34/12 35/2 36/5 37/9 37/13
somebody [1] 28/20
somehow [1] 33/4
someone [3] 7/24 29/4 30/17
something [9] 5/18 8/12 13/25 17/17 18/17 23/18 30/16 30/18 30/20
sometime [1] 9/11
soon [1] 37/16
sorry [3] 5/24 10/20 10/21
sort [1] 27/8
sought [1] 34/11
sound [1] 19/4
South [1] 2/4
speak [5] 6/25 24/22 25/1 32/6 34/17
SPECIAL [2] 1/12 3/3
specific [3] 16/25 29/20 37/3
spill [1] 12/9
spokesperson [1] 3/20
stage [2] 13/19 27/23
stand [2] 8/15 20/9
stands [2] 19/6 19/9
STANOCH [7] 1/18 8/3 8/16 9/22 9/23 20/11 22/25
start [3] 12/8 14/4 26/6
starting [1] 32/22

STATES [2] 1/1 1/11
station [5] 28/10 28/14 28/16 28/18 28/24
status [1] 36/13
Stay [2] 37/15 37/15
stays [1] 4/11
stenography [1] 1/23
steps [1] 8/10
Steve [1] 25/4
STEVEN [1] 2/9
stick [1] 28/11
still [4] 3/9 3/16 19/9 37/8
stone [1] 27/9
straighten [1] 7/12
Street [2] 1/18 2/4
Streets [1] 1/7
stricken [2] 18/1 18/1
strike [1] 13/21
structure [1] 29/5
study [1] 29/5
stuff [1] 28/1
subject [1] 12/3
submission [1] 36/20
submissions [1] 34/25
submit [2] 35/1 35/6
submitting [1] 22/19
substantially [1] 6/4
substantive [1] 22/7
substantively [1] 22/21
substitute [1] 10/2
substituted [1] 10/13
such [1] 29/5
sufficient [1] 29/17
suggest [1] 18/24
suggested [1] 34/5
suggesting [1] 23/13
Suite [2] 2/10 2/15
summary [2] 22/18 23/14
supplement [1] 17/18
supplements [1] 14/17
suppose [2] 13/5 28/12
supposed [1] 13/22
sure [15] 11/21 15/23 18/19 18/19 22/2 23/5 23/9 24/23 30/19 32/16 32/18 33/22 34/15 35/1 36/7
surely [1] 37/6
symposiums [1] 27/18

**T**

take [17] 6/23 7/22 8/10 8/23 11/11 12/1 13/18 17/22 18/17 19/22 20/25 23/9 25/19 26/13 27/1 29/15 34/22
taken [4] 4/4 13/10 20/13 24/14
taking [1] 32/11
talk [5] 7/15 15/19 25/22 33/25 37/16
talked [2] 20/22 26/5
talking [2] 10/1 14/12
technical [1] 16/23
teleconference [1] 3/1
TELEPHONE [1] 1/6

Telephonic [1] 38/2
tell [1] 18/6
ten [1] 14/14
terms [5] 12/10 15/13 16/4 19/9 19/19
testify [1] 13/7
testimony [8] 13/18 14/25 18/2 26/16 26/21 27/11 29/17 33/6
Teva [3] 2/11 2/11 25/4
than [3] 15/20 29/16 33/14
thank [25] 6/24 11/6 11/7 11/14 11/15 11/20 16/18 20/4 23/22 23/23 24/8 24/12 30/3 31/2 32/24 33/2 34/16 35/18 37/5 37/17 37/18 37/19 37/20 37/25 38/1
Thanks [2] 4/3 7/4
Thanksgiving [1] 10/4
that's [24] 3/13 6/6 7/15 10/13 13/25 15/12 18/2 18/5 18/17 19/12 20/3 20/6 22/11 23/3 27/8 27/21 28/7 29/6 29/12 29/13 30/8 30/17 31/19 31/20
their [19] 3/20 8/21 9/14 12/2 13/5 14/22 14/25 15/3 17/5 17/8 21/6 22/2 22/20 31/11 32/5 32/10 32/11 32/16 32/21
them [20] 8/11 10/24 13/12 14/3 15/1 16/11 16/13 17/4 17/7 17/14 21/1 29/15 31/20 31/21 32/21 33/7 33/20 36/9 36/23 37/3
themselves [1] 33/1
then [22] 4/13 6/7 8/7 8/9 8/14 11/22 13/4 15/7 17/22 17/24 19/8 23/9 24/10 24/11 25/20 27/5 27/23 29/21 31/9 31/21 32/23 35/13
there [25] 6/1 6/15 10/11 11/9 14/25 16/6 16/10 17/10 17/13 19/10 19/25 20/14 22/16 23/25 29/3 29/10 29/10 29/10 30/15 31/7 31/8 33/6 34/14 36/12 36/22
there's [20] 4/15 7/6 8/14 10/12 10/14 12/1 12/20 15/21 18/6 20/13 21/11 23/15 26/8 26/14 30/13 30/21 30/23 30/24 32/19 33/9
these [33] 12/16 13/6 13/12 13/14 13/18 13/21 14/3 15/17 15/17 15/20 16/4 16/11 16/13 17/3 17/6 17/12 18/7 18/19 19/5 19/22 23/5 25/2 27/8 28/10 28/17 28/23 29/14 29/22 31/8 32/12 34/25

they [34] 3/20 5/3 5/9 7/7 9/13 9/14 9/15 9/17 9/18 10/11 12/16 12/19 13/1 13/4 13/17 14/12 14/13 14/13 14/22 15/2 15/9 20/15 21/5 21/7 21/24 22/7 27/24 27/25 30/25 33/1 33/13 33/13 36/20 37/1
they'd [1] 9/15
they'll [4] 7/11 23/9 26/5 32/22
they're [9] 13/15 15/8 16/14 17/3 17/6 23/19 32/16 33/18 36/10
they've [2] 12/21 27/19
thing [3] 6/1 34/20 35/5
things [3] 4/16 29/22 35/7
think [50]
thinks [1] 28/13
this [64]
THOMAS [2] 1/11 3/2
Thorn [1] 25/16
THORNBURG [1] 2/14
thoroughly [1] 14/14
those [13] 6/7 13/9 13/16 15/25 17/15 18/10 25/10 25/19 26/7 28/14 28/14 29/22 33/7
though [1] 19/6
thought [3] 5/3 35/2 35/5
three [3] 19/2 22/1 34/11
three-day [1] 19/2
through [7] 10/16 15/24 16/7 17/16 18/24 34/6 36/16
Thursday [1] 31/20
till [1] 34/22
time [22] 10/24 11/12 13/20 14/3 17/23 18/21 19/23 20/2 20/3 21/4 21/12 21/24 22/3 22/10 22/22 23/2 23/16 26/10 29/23 32/11 32/17 36/8
timely [1] 11/10
times [1] 8/11
timing [2] 12/2 15/13
today [4] 18/24 24/1 33/25 35/23
together [4] 24/10 29/19 37/8 37/14
told [3] 8/11 12/23 30/7
too [3] 23/11 30/24 37/13
towards [1] 17/8
tracked [1] 12/21
tracks [1] 16/1
Transcriber [1] 38/10
transcript [2] 1/23 38/5
transcription [1] 1/24
TRAURIG [4] 2/8 14/10 23/4 31/5
treatment [1] 28/21
tried [2] 10/23 11/3
triple [1] 12/21
true [1] 28/10

**T**

**try [1]** 19/11
**trying [5]** 6/6 7/21 11/2 22/17 32/10
**turns [1]** 18/16
**two [13]** 6/3 6/15 7/6 12/18 16/1 18/18 20/8 20/15 21/7 21/7 25/9 26/1 29/16
**type [1]** 35/5

**U**

**U.S [2]** 1/7 2/6
**uncomfortable [1]** 37/8
**under [4]** 5/13 20/25 33/17 35/3
**understand [10]** 7/2 7/16 9/3 27/13 30/3 30/11 31/7 34/4 34/7 36/7
**understanding [1]** 8/3
**understood [2]** 10/25 31/15
**undertaking [1]** 32/15
**underway [2]** 16/10 22/7
**unfortunately [2]** 10/6 12/16
**UNITED [2]** 1/1 1/11
**unless [2]** 3/20 35/16
**until [5]** 4/18 10/3 12/15 22/23 25/14
**up [11]** 4/7 4/20 8/9 9/12 14/3 15/1 15/14 19/19 24/9 26/5 36/13
**upcoming [1]** 12/12
**update [2]** 11/8 25/6
**upon [1]** 9/10
**us [19]** 4/5 4/6 4/7 4/12 4/23 9/13 9/15 12/16 13/2 14/3 18/10 20/14 21/2 23/2 24/16 30/3 30/11 34/8 34/10
**USA [1]** 2/11
**use [1]** 28/7

**V**

**valid [1]** 28/3
**valsartan [2]** 1/3 6/3
**VANASKIE [5]** 1/11 3/2 3/6 33/8 36/2
**various [1]** 27/17
**varying [1]** 27/8
**very [8]** 8/13 9/24 10/16 11/2 12/17 23/23 27/13 31/7
**vet [1]** 32/10
**vetting [2]** 32/14 32/18
**via [3]** 1/6 3/1 22/18
**VICTORIA [3]** 2/9 14/10 31/4
**voluntarily [3]** 20/20 21/1 23/8
**voluntary [2]** 5/11 8/4

**W**

**W-O-L-F-E [1]** 7/20
**wait [2]** 12/14 19/16
**WALKER [2]** 2/4 11/16

**want [18]** 7/7 15/1 15/9 15/10 18/15 21/24 23/5 26/13 26/19 27/10 27/25 31/17 32/6 33/4 33/20 33/25 34/4 37/7
**wanted [11]** 4/16 4/20 4/21 6/1 7/14 11/21 18/18 18/19 23/25 26/2 34/17
**wants [4]** 28/17 32/16 33/7 34/8
**wasn't [2]** 6/9 36/22
**waste [1]** 22/9
**way [6]** 17/10 19/12 26/23 26/23 29/12 36/15
**we [131]**
**We'd [1]** 9/25
**we'll [30]** 3/21 4/6 4/13 4/17 5/21 6/23 7/5 8/10 8/10 11/7 11/11 15/19 19/11 20/2 21/10 23/4 23/21 24/10 24/11 25/19 26/6 27/10 29/21 29/21 30/25 34/14 37/10 37/10 37/11 37/16
**we're [27]** 3/16 6/5 8/9 8/12 9/14 10/1 10/4 10/8 10/15 13/17 14/3 14/11 16/9 16/10 16/13 16/22 16/24 17/17 17/21 17/22 19/2 22/12 26/23 27/7 35/4 36/12 36/13
**we've [7]** 8/11 15/15 15/18 16/2 20/23 25/7 36/5
**Wednesday [1]** 1/8
**week [10]** 20/15 30/14 30/16 30/20 30/25 31/1 32/21 32/22 32/22 34/21
**weeks [5]** 8/23 10/10 21/6 29/19 34/11
**welcome [1]** 27/24
**well [15]** 8/13 9/20 15/23 16/10 20/2 20/24 24/21 28/12 31/19 34/13 35/15 36/11 36/14 36/19 37/15
**went [1]** 6/21
**were [13]** 9/8 9/13 12/17 13/9 13/9 13/10 13/14 14/12 14/13 14/20 17/13 18/19 33/6
**what [34]** 8/10 9/12 10/6 10/17 11/4 13/6 15/9 16/24 17/15 17/24 17/25 17/25 18/1 18/4 18/5 18/15 19/16 21/5 23/4 27/9 27/17 27/21 28/7 29/7 29/12 29/18 31/10 33/1 35/1 35/4 36/8 36/9 36/23 37/4
**what's [2]** 15/3 30/4
**when [15]** 9/17 12/19 13/20 14/3 15/16 15/22 15/22 17/23 20/20 20/23 21/4 21/5 24/22 29/20 31/17
**where [6]** 8/15 15/2 16/21 18/3 19/22 20/8

**Whereupon [3]** 4/1 4/4 24/14
**whether [11]** 4/22 6/6 6/6 7/21 9/17 15/5 21/25 22/3 26/12 28/3 28/23
**which [9]** 8/9 11/23 12/19 13/4 16/9 18/9 20/21 30/5 32/20
**while [3]** 10/15 21/9 22/15
**WHITELEY [1]** 1/17
**who [6]** 10/2 16/6 18/7 18/16 28/20 35/3
**who's [9]** 8/24 10/13 12/4 14/8 20/9 21/13 23/6 23/6 26/25
**whoever [1]** 33/18
**wholesalers [1]** 33/1
**why [9]** 3/25 17/20 18/5 22/11 28/4 29/8 33/9 33/22 35/15
**wide [1]** 29/3
**will [26]** 5/9 6/2 7/13 7/18 7/21 7/24 8/19 8/22 9/17 17/23 17/24 19/5 19/16 20/17 20/25 23/18 26/1 26/2 27/3 29/16 29/17 29/20 31/7 31/9 35/16 37/5
**willing [1]** 35/3
**winter [1]** 8/8
**withdraw [1]** 25/10
**within [2]** 15/16 21/3
**without [4]** 5/2 5/13 17/16 33/5
**witness [1]** 31/11
**witnesses [8]** 13/7 13/18 17/12 18/7 18/9 18/14 18/17 36/21
**Wolfe [6]** 7/20 8/7 9/9 9/11 10/6 10/12
**Wolfe's [2]** 9/19 10/23
**work [11]** 10/16 14/24 15/20 16/13 16/14 19/1 19/3 26/10 32/10 35/2 35/3
**worked [2]** 21/20 30/9
**working [4]** 7/19 9/4 10/5 10/8
**works [1]** 3/21
**worry [1]** 7/2
**worse [2]** 11/9 11/10
**worst [2]** 10/9 21/5
**would [41]**
**wouldn't [1]** 35/7
**written [1]** 26/9
**wrong [2]** 4/19 12/4

**Y**

**Yeah [3]** 4/11 7/10 23/3
**Year [1]** 32/20
**years [1]** 22/1
**yes [19]** 3/7 3/8 3/10 3/11 3/24 4/14 7/10 8/1 11/17 16/20 19/9 19/24 24/12 25/3 25/24 31/12 31/13 34/18 37/24

**you [135]**
**you'd [1]** 35/22
**you'll [2]** 19/7 35/16
**you're [14]** 3/24 4/5 4/7 7/19 7/21 16/21 19/18 25/21 26/12 27/23 28/8 34/21 36/19 37/21
**your [89]**
**yourself [1]** 24/23
**yourselves [1]** 19/19

**Z**

**Zhejiang [1]** 2/6
**ZHP [2]** 21/15 32/19
**Zoom [6]** 26/7 27/10 29/21 37/7 37/10 37/11