# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Thomas I. Vanaskie (Ret.), Special Discovery Master |

## THE ZHP PARTIES' BRIEF IN OPPOSITION
## TO PLAINTIFFS' REQUEST FOR MONETARY SANCTIONS IN
## RESPONSE TO SPECIAL MASTER ORDER 56

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ..........................................................................................1

II.  PERTINENT FACTUAL AND PROCEDURAL BACKGROUND .............4

    A.  Plaintiffs Deposed Seventeen ZHP Party Witnesses, Including Twelve Witnesses Residing In China. ....................................................4

    B.  This Court Denied Almost One-Half (43%) of the Matters Complained of in Plaintiffs' Underlying Motion for Sanctions. ..........5

III.  ARGUMENT....................................................................................................9

    A.  The Monetary Sanction Plaintiffs Seek in Connection with the "Document Speaks for Itself" Objection is Arbitrary and Excessive, and Not Contemplated by the Court's Order. .....................9

    B.  Plaintiffs Should Be Responsible for Their Own Fees and Costs Related to the Filing of the Sanctions Motion. ...................................14

    C.  Even Were the Court to Grant the Fees and Costs Allocable to the Successful Portions of the Plaintiffs' Motion, Plaintiffs' Fee Request is Vague and Unreasonable. ..................................................16

    D.  The Costs Plaintiffs Seek in Connection with the Re-Deposition of the ZHP Parties' Witnesses Are Unreasonable. ............................20

IV.  CONCLUSION..............................................................................................21

# TABLE OF AUTHORITIES

**Federal Cases**

*Animal Legal Def. Fund v. Lucas,* 2020 WL 7027609 (W.D. Pa. Nov. 30, 2020) ...................................................................................................11

*Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696 (D.N.M. 2017) .......................14

*Brown v. City of Glendale*, 2019 WL 3412585 (D. Ariz. July 29, 2019) ...................................................................................................17

*Clarity Sports International LLC v. Redland Sports*, 2021 WL 2981038 (M.D. Pa. July 15, 2021)...........................................................11

*Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396 (3d Cir. 2018) ............................................................................................... 10-11

*Dunn v. Wal-Mart Stores, Inc.*, 2013 WL 5940099 (D. Nev. Nov. 1, 2013) ...................................................................................................10

*Ecomed, LLC v. Asahi Kasei Med. Co., Ltd.*, 2018 WL 4193642 (S.D. Fla. 2018) ............................................................................................18

*Est. of Spear v. Comm'r,* 41 F.3d 103 (3d Cir. 1994)..........................................10

*Miles v. Elliot*, 2011 WL 5524842 (E.D. Pa. Nov. 14, 2011)..................................17

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595 (D.N.J. 2004), *aff'd in part sub nom*, 348 F. Supp. 2d 332 (D.N.J. 2004) .............. 16-18

*Nalco Chem. Co. v. Hydro Techs., Inc.*, 148 F.R.D. 608 (E.D. Wis. 1993) ...................................................................................................14

*In re Neurontin Antitrust Litig.,* 2011 WL 253434 (D.N.J. Jan. 25, 2011) ...................................................................................................20

*Newill v. Campbell Transp. Co.*, 2013 WL 6002349 (W.D. Pa. Nov. 12, 2013) ...................................................................................................14

*NRA Grp., LLC v. Durenleau*, 2021 WL 5863842 (M.D. Pa. Oct. 12, 2021) ...............................................................................................16, 18

*O'Brien v. Amtrak*, 163 F.R.D. 232 (E.D. Pa. 1995)...............................................20

*Rode v. Dellarciprete*, 892 F.2d 1177 (3d Cir. 1990)...............................................17

*Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211 (S.D.N.Y. 2009).......................14

*Signatours Corp. v. Hartford*, 2016 WL 4533048 (W.D. Wash. 2016).................18

*Sperber v. Elwell*, 2014 WL 12621964 (D.N.J. June 26, 2014).........................10, 12

*Thomas v. Bannum Place of Saginaw*, 421 F. Supp. 3d 494 (E.D. Mich. 2019)............................................................................................................10

**Rules**

Federal Rule of Civil Procedure 26 ..........................................................................14

Federal Rule of Civil Procedure 30 .................................................................... 9-11

Federal Rule of Civil Procedure 37 ....................................................... 1, 13, 16-17

## I.  INTRODUCTION

Plaintiffs' underlying Motion for Sanctions against the ZHP Parties essentially ended in a "draw," with the Court denying almost one-half (43%) of the matters of which Plaintiffs complained and, most notably, with the Court concluding that Plaintiffs had failed to show that the ZHP Parties engaged in a systematic and concerted effort to disrupt the deposition process. *See* Dkt. 1811 at 26. Nevertheless, overstating such "success" as Plaintiffs had with respect to that Motion, Plaintiffs now seek various monetary sanctions against the ZHP Parties that are arbitrarily calculated, unreasonably excessive, and otherwise outside the parameters of Rule 37.

### A.  Plaintiffs' Request for Sanctions of $68,000 based on the "Document Speaks for Itself" Objection is Arbitrary and Excessive.

Ignoring the fact that they had initially moved for sanctions on only a total of *twelve instances* that arose in some 164.5 hours of depositions where the ZHP Parties' counsel asserted the objection the "document speaks for itself," Plaintiffs now claim they should be awarded $1,000 for each and every one of the sixty-eight times Plaintiffs claim the objection was asserted *even where Plaintiffs never made all such objections the subject of their discovery motion in the first instance*. Moreover, and as is self-evident, that amount is not in any way connected to any time actually spent by Plaintiffs addressing those objections. Instead, Plaintiffs

1

merely argue that each of the alleged sixty-eight objections should somehow automatically result in fees to them of $1,000 in order to "send a message" to the ZHP Parties. Where, as is the case here, the witness in fact went on to respond to the questions that were asked (*see* Dkt. 1811 at 24), Plaintiffs' request for monetary sanctions as to *any* of the objections should be denied outright, but certainly no fees can be awarded for those objections which Plaintiffs never even presented to the Court as part of their original motion. In all events, were any fees to be awarded, such fees should, at the very least, bear some rational relation to the 43 minutes of deposition time that transpired while those twelve objections were asserted, including the related questions and answers, and no more.

**B.**    **Because the Court Denied Almost One-Half (43%) of Plaintiffs' Motion, Each Party Should Bear its Own Fees and Costs.**

Similarly, Plaintiffs' claim for fees they assert were incurred in pursuing their Motion offers virtually no specific information or detail as to what work Plaintiffs' counsel performed, who performed the work, or when it was performed that corresponds to, much less actually supports the 210.5 hours Plaintiffs contend they spent on the Motion. Here, based upon the decidedly mixed results of the Motion, a more appropriate outcome would be for each party to bear its own fees and costs. To do otherwise would produce the anomalous result where Plaintiffs would be awarded fees for pursuing a motion that was only partially successful, but the ZHP Parties

would bear all of their own fees in connection with a motion they partially successfully opposed. Additionally, this Court should reject Plaintiffs *separate* request, not contemplated by the Court's Order, for fees related to "all time spent relative to the motion" considering, by definition, this would include fees related to those portions of the Motion as to which Plaintiffs did not prevail. If any fees for pursuing the Motion are to be awarded, Plaintiffs should be required to provide a detailed analysis of their fee calculation so that the reasonableness of the fees calculated can be assessed.

### C. This Court Should Deny Plaintiffs Request for Fees and Expenses Spent "Preparing for" the Re-Deposition.

Lastly, Plaintiffs not only seek fees for having to re-depose the ZHP Parties on the specific matters at issue, but also request leave to submit a yet *further* fee application with respect to the time and expenses to be spent *preparing for* such additional depositions. Under the Court's ruling providing for the re-deposition and pertinent controlling authorities, the Court should deny this request and only award, at most, the reasonable expense of actually *conducting* any such re-deposition.

For these reasons, and those set forth below, Plaintiffs' requests for monetary sanctions, including in the form of legal fees, should be denied.

## II.    PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiffs Deposed Seventeen ZHP Party Witnesses, Including Twelve Witnesses Residing In China.

Plaintiffs deposed seventeen ZHP Party witnesses, including ten 30(b)(6) witnesses and another seven in their individual capacities.[1] Together, these witnesses answered thousands of questions and provided over 164.5 hours of deposition testimony (not including 75% more time for the seven depositions requiring translators). The ZHP Party witnesses testified fully and completely as to every one of the fifty-nine different topics that Plaintiffs identified in their 30(b)(6) notices as critical to Plaintiffs' claims. *See* Dkt. 651-1 (identifying seven topics with fifty-nine subtopics). Plaintiffs also conducted another seven depositions of ZHP Party witnesses in their individual capacities. The fact that Plaintiffs were able to create

---

[1] The ZHP Parties and their counsel undertook significant efforts to attend and participate in good faith in each deposition. Because the Chinese government prohibits depositions in mainland China, twelve of the seventeen ZHP Party witnesses voluntarily traveled from mainland China to Macau during a global pandemic. ZHP's efforts to produce those twelve witnesses involved enormous logistical hurdles relating to the pandemic, including travel restrictions, minimum isolation and quarantine requirements, time limits for travel out of China, personal hardship for parents of newborn children, coordination with travel officials in China and Macao, internet requirements (which needed adjustment after early failures), and even providing food for witnesses because of hotel restaurant closures. And further, given the 75% increased time for depositions requiring translation, seven of these witnesses were deposed for periods of 2 to 5 days.

this extensive record speaks to the cooperation and good faith efforts of the ZHP Parties' witnesses and their counsel.

**B.    This Court Denied Almost One-Half (43%) of the Matters Complained of in Plaintiffs' Underlying Motion for Sanctions.**

Despite eliciting thousands of pages of responsive deposition testimony, Plaintiffs filed a Motion, largely unsupported by any legal authority, alleging that the ZHP Parties' counsel and witnesses "systematically obstructed Plaintiffs' efforts to obtain responsive deposition testimony." *See* Mot. at 1. In that Motion, Plaintiffs complained of forty-four instances from five different depositions and "request[ed] the entry of an Order striking nonresponsive answers, deeming the deposition questions admitted, and striking and sanctioning improper objections." *Id.* at 6. Of these forty-four excerpts, *only eight excerpts* actually related to the ZHP Parties' counsel objecting on the basis that the document at issue "speaks for itself." *Id.* at 36-43 (Linda Lin Excerpts 1, 2, 3, 4, 5, 6, 7, 9). Although Plaintiffs' allege in their Motion that this "objection was made at least 68 times," Plaintiffs actually put at issue in their Motion only twelve such objections in those eight excerpts. *Id.* at 37, 36-43.

In its brief opposing Plaintiffs' Motion, the ZHP Parties highlighted the many instances where Plaintiffs' counsel asked imprecise questions which often led to the ZHP Parties' counsel appropriately asserting an objection. *See* Dkt. 1367,

5

Attachment A. The ZHP Parties also noted the extensive record created in March and April 2021, during the earlier of the depositions of the ZHP Party witnesses, where Plaintiffs' counsel was admonished for inappropriate conduct in their questioning of ZHP Party witnesses. *See Id.* at 7-8; *see also* 4-1-21 Hrg. Tr. at 11:19-12:2; *see generally* Dkt. 1102. In Plaintiffs' reply brief, much like in their opening brief, Plaintiffs mischaracterized much of the deposition testimony at issue. *See* Dkt. 1443 at 6-19.

Following oral argument, this Court granted in part and denied in part Plaintiffs' Motion, finding that only twenty-five of the forty-four excerpts warranted granting Plaintiffs any form of relief. *See* Dkt. 1811 at 26. Importantly, in connection with the present Motion, this Court recognized that "[t]his is *not* the kind of showing that supports a conclusion that there was a systematic effort to obstruct the deposition process." *Id.* at 26. (emphasis added). Instead, this Court found it "notable that all of the instances that warrant some relief involved the same counsel for Plaintiffs, although depositions of ZHP 30(b)(6) witnesses were taken by a number of lawyers representing the Plaintiffs." *Id.* at 26. Where the Court did grant in part Plaintiffs' Motion, the ZHP Parties will now make available one or more witnesses to provide testimony on the specific matters addressed in the Court's Order. *See generally* Dkt. 1876.

6

In issuing its Order, the Court directed Plaintiffs to submit a request for an "appropriate monetary sanction" in connection with the "document speaks for itself" objections asserted during the Linda Lin[2] deposition. Dkt. 1811 at 24, 27. The Court also ordered Plaintiffs to "submit their request for fees and expenses incurred in pursuing their motion along with a statement setting forth their position with respect to the amount of fees properly allocable to the parts of the motion on which Plaintiffs prevailed[.]" *Id*. at 27. Finally, the Court ordered that "[t]he cost of any new deposition, including Plaintiffs' counsel fees, will be imposed upon ZHP." *Id*. at 8.

On January 18, 2022, Plaintiffs submitted a letter pursuant to the instructions set forth in the Court's Order. *See* Dkt. 1877. Although Plaintiffs cited only twelve instances in its Motion where the ZHP Parties' counsel asserted an objection that the "document speaks for itself," Plaintiffs nonetheless requested monetary sanctions in the amount of $1,000 for each of what were claimed to be sixty-eight instances in which Plaintiffs contend the objection was asserted, for a total of $68,000. *See Id*. at 4-5. Offering no legal basis for why this amount is warranted, Plaintiffs instead argue no more than that they "consider[] the amount necessary to ensure that the sanctions are not perceived by ZHP to be a symbolic slap on the wrist, which would defeat the

---

[2] The Court's Order incorrectly attributes the "speaks for itself" objections to the deposition of Min Li, but Plaintiffs have sought in their Motion sanctions for this objection only in connection with the deposition of Linda Lin. *See* Dkt. 1811 at 27.

entire rationale for assessing the sanctions[.]" *Id.* at 4-5. Clearly, that is not a proper basis for sanctions, and it is not in line with this Court's underlying Order or even with the specific instances Plaintiffs themselves previously put before the Court.

As for the fees and expenses expended by Plaintiffs on the underlying Motion, Plaintiffs claim that the total amount of time spent on the Motion by all attorneys was 210.5 hours. *See Id.* at 5. Since the Court ruled that Plaintiffs prevailed on twenty-five of the forty-four excerpts, Plaintiffs request a fee award in that same proportion, *i.e.*, an award of approximately 57% of the total fees Plaintiffs claim to have been incurred. *See Id.* However, Plaintiffs fail to provide any detail as to how they arrived at the total of 210.5 hours. Instead, Plaintiffs' merely assert that the Motion involved "the analysis of 16 days of depositions . . . [and] extensive research and writing, with Plaintiffs filing briefs of 46 pages and 20 pages supported by extensive exhibits, and Defendants filing a 32 page brief along with a 40 page appendix[.]" *Id.* Plaintiffs assert that the time is not detailed because it constitutes "work product" and request leave to submit more details *in camera* should the Court require it. *See Id.* at 5, n.2. Plaintiffs also failed to provide an hourly rate or rates applicable to its request for fees and costs.

Separately, and in a manner not contemplated by the Court's Order, Plaintiffs have requested yet additional fees related to "*all time spent relative to the motion,*

8

including in preparing this submission and participating in the ongoing meet and confer." *Id.* at 5-6 (emphasis added). Plaintiffs have requested leave to submit this amount within 30 days after the re-deposition occurs. *Id.* Plaintiffs also request compensation for the expense of having to take the re-deposition, including "the time and expenses (primarily court reporting and videographer related expenses, and expenses of translators) to be spent *preparing for* and conducting the re-deposition, as all of that time is due to the improper objections and non-responsive testimony." *Id.* at 6 (emphasis added). In point of fact, since the stated rationale for any re-deposition was for the witness to address questions which Plaintiffs believed had been asked but not addressed, it is certainly at best unclear what Plaintiffs' "preparation" for such a re-deposition would actually entail. Again, Plaintiffs have requested leave to submit this amount within 30 days after the re-deposition occurs.

## III.   ARGUMENT

### A.   The Monetary Sanction Plaintiffs Seek in Connection with the "Document Speaks for Itself" Objection is Arbitrary and Excessive, and Not Contemplated by the Court's Order.

Plaintiffs' request that this Court impose sanctions of $68,000 based on the assertion of a "document speaks for itself" objection is both arbitrary and excessive. According to Federal Rule of Civil Procedure 30(d)(2), "[t]he court *may* impose an appropriate sanction—including the *reasonable* expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair

examination of the deponent." (emphasis added). What Plaintiffs seek here is not reasonable.

Rule 30(d)(2) does not define "appropriate sanction" or "reasonable expenses and attorney's fees." However, it is axiomatic that the sanction must be proportional to any alleged violation. *See Sperber v. Elwell*, 2014 WL 12621964, at *12 (D.N.J. June 26, 2014) (citing *Est. of Spear v. Comm'r,* 41 F.3d 103, 111 (3d Cir. 1994) ("The severity of the sanctions must be on par with the party's misconduct."); *see also Dunn v. Wal-Mart Stores, Inc.*, 2013 WL 5940099, at *6 (D. Nev. Nov. 1, 2013) ("[T]he sanction must be proportional to the claimed violation."). Clearly, it is the movant's burden to establish that the sanction sought is reasonable and appropriate. *See Dunn*, 2013 WL 5940099, at *6 (denying sanctions where counsel "failed to identify proportional or narrowly tailored sanctions.").

For example, "where a fee-shifting statute provides a court discretion to award attorney's fees, such discretion includes the ability to deny a fee request altogether when, under the circumstances, the amount requested is 'outrageously excessive.'" *Clemens v. New York Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398 (3d Cir. 2018); *see also Thomas v. Bannum Place of Saginaw*, 421 F. Supp. 3d 494, 498 (E.D. Mich. 2019) ("There is good reason for refusing to award any fees where an unreasonable request has been made."). Where legal fees may be awarded as sanctions relating to

10

a deposition, such legal fees should be limited to the costs and reasonable attorneys' fees relating strictly to the deposition testimony specifically at issue and/or the fees incurred in bringing the motion for sanctions. *See Animal Legal Def. Fund v. Lucas,* 2020 WL 7027609, at *3-4 (W.D. Pa. Nov. 30, 2020) (holding plaintiff was entitled to monetary sanctions limited to reasonable fees associated with its motion for sanctions where the conduct of defense counsel failed to comport with Rule 30(c)(2)).

In *Clarity Sports International LLC*, the court issued sanctions in an amount specifically related to counsel's objections and commentary made during the deposition. *See Clarity Sports International LLC v. Redland Sports*, 2021 WL 2981038, at *4 (M.D. Pa. July 15, 2021). There, plaintiffs argued that defense counsel's conduct during the deposition prevented plaintiffs from having a fair opportunity to depose the witness and plaintiffs thus sought costs and reasonable attorneys' fees for the deposition and for bringing the motion. *Id*. After reviewing the transcript, the court found that defense counsel had, in pertinent parts, raised valid objections. *Id*. at *4-5. Thus, the court awarded plaintiffs only 20% of their costs and fees for the deposition along with the expenses incurred in bringing the motion. *Id*.

11

Here, the Court should deny outright Plaintiffs' request for $68,000 for the "document speaks for itself" objection. *See Clemens*, 903 F.3d at 398. Plaintiffs do not even attempt to argue that the $68,000 reflects the actual time spent addressing any of these objections, let alone just the twelve objections which were put at issue by Plaintiffs' Motion. Offering no legal basis as to why $1,000 per objection is warranted (as there is none), Plaintiffs simply claim this amount would be more than "a symbolic slap on the wrist" and would thus send a message to the ZHP Parties. *See* Dkt. 1877 at 4-5. This "rationale" has no support in the applicable case law. Sanctions must be *proportional* to the alleged violation. *See Sperber*, 2014 WL 12621964, at *12. Additionally, here Plaintiffs' request is even more unreasonable, where the Court has already found that the objection did *not* actually interfere with the witness's answers to the questions propounded. *See* Dkt. 1811 at 24. Because Plaintiffs' counsel has failed to seek a proportionate sanction, this Court should deny all requested fees sought by Plaintiffs in this regard.

However, even should the Court not reject in full Plaintiffs' request for monetary sanctions in connection with the "document speaks for itself" objections, the Court cannot adopt and accept the plainly arbitrary amount Plaintiffs propose. As explained above, *supra* at II.B, the full sixty-eight objections on which Plaintiffs now base their requested fees are not now and never were at issue. Instead, Plaintiffs

12

moved for sanctions in regard to only *twelve such instances* where ZHP Parties' counsel asserted the "document speaks for itself" objection. Moreover, in none of these instances did ZHP Parties' counsel actually instruct the witness not to answer and no sanctions were ordered in respect of the answers actually provided. Instead, and as this Court noted in its Opinion, the witness (Ms. Lin) responded to the questions that were asked. *See* Dkt. 1811 at 24 ("Ms. Lin, however, did respond to the questions that were asked."). The amount of testimony time actually related to those twelve objections, questions and answers was, at most, approximately 43 minutes.[3] In contrast, the total time of Ms. Lin's deposition, inclusive of translation time, was approximately 18 hours and 50 minutes. *See* Attachment A. Accordingly, these twelve objections only accounted for, at most, approximately 3.8% of the total deposition time. As such, if the Court imposes monetary sanctions, any such sanctions should only compensate Plaintiffs an amount that correlates to the very limited amount of time (43 minutes) that was actually expended for the twelve objections and related questions and answers given.

---

[3] The 43 minutes also includes the time spent translating those questions, answers, objections. *See* Attachment A.

**B.    Plaintiffs Should Be Responsible for Their Own Fees and Costs Related to the Filing of the Sanctions Motion.**

Because Plaintiffs' original Motion was granted in part and denied in part (*see* Dkt. 1811 at 27), Federal Rule of Civil Procedure 37(a)(5)(C) is applicable, as opposed to Rule 37(a)(5)(A). Under Rule 37(a)(5)(C), "[i]f the motion is granted in part and denied in part, the court *may* issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the *reasonable* expenses for the motion." (emphasis added).

Although this Court previously determined that "Plaintiffs are entitled to recover the reasonable fees and costs allocable to the successful parts of this sanctions motion[,]" *see* Dkt. 1811 at 26, where, as is the case here, the parties have each taken legitimate positions, and the court has granted in part and denied in part a discovery motion, "courts generally conclude that justice requires that each party be responsible for their own fees and costs." *Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 720 (D.N.M. 2017); *see also Newill v. Campbell Transp. Co.*, 2013 WL 6002349, at *8 (W.D. Pa. Nov. 12, 2013) ("[B]ecause the Court has granted in part and denied in part Plaintiff's motion . . . the Court finds that an award of expenses to Plaintiff is not warranted."); *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 217 (S.D.N.Y. 2009) (making no apportionment of attorney's fees and costs "given the mixed results of the motion and the history of discovery disputes in which neither

14

side has consistently prevailed"); *Nalco Chem. Co. v. Hydro Techs., Inc.*, 148 F.R.D. 608, 617 (E.D. Wis. 1993) ("In light of the fact the defendants' motion to compel will be dismissed in part as moot and granted in part [the court] order[ed] the parties to bear their own costs and attorneys' fees related to the defendants' motion to compel.").

Here, put very simply, there was no clear "winner" of Plaintiffs' underlying Motion. Of the forty-four deposition excerpts cited by Plaintiffs, only twenty-five were found to warrant some type of relief and, in all events, the relief as had been sought by Plaintiffs, such as the striking of answers and/or the matters being inquired into simply being deemed admitted, was not ordered. *See* Dkt. 1811 at 26. As recognized by this Court, "[t]his is not the kind of showing that supports a conclusion that there was a systematic effort to obstruct the deposition process" especially where "all of the instances that warrant some relief involved the same counsel for Plaintiffs[.]" *See* Dkt. 1811 at 26. As discussed above, to do otherwise would create an anomalous result as Plaintiffs would be compensated for successfully prosecuting its Motion in part, but the ZHP Parties would get nothing for successfully defending against the Motion in part. Accordingly, the most appropriate and equitable result under the facts and circumstances here would be for each side to bear its own fees and costs in connection with the Motion.

15

**C.    Even Were the Court to Grant the Fees and Costs Allocable to the Successful Portions of the Plaintiffs' Motion, Plaintiffs' Fee Request is Vague and Unreasonable.**

Even were this Court to find that Plaintiffs were entitled to the fees and costs allocable to the successful parts of its Motion, Plaintiffs have failed to advance a reasonable request for fees.

As discussed more fully above, *supra* at III.B, Rule 37(a)(5)(C) allows courts to apportion only the *reasonable* expenses incurred by a party in connection with a successful motion. "Plaintiff bears the burden of demonstrating the reasonableness of its hours and fees." *See Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 224 F.R.D. 595, 596 (D.N.J. 2004), *aff'd in part sub nom*, 348 F. Supp. 2d 332 (D.N.J. 2004). Accordingly, in all events, Plaintiffs were required to provide enough details about the time spent in connection with its Motion so that the reasonableness of their fee request may be assessed by the Court. *See NRA Grp., LLC v. Durenleau*, 2021 WL 5863842, at *5 (M.D. Pa. Oct. 12, 2021) (noting that, as here, "where Plaintiff has not provided the Court with a detailed record of attorney time spent in connection with various tasks related to its motion . . . the Court cannot possibly assess the reasonableness of its fee request . . . [and] Defendants cannot challenge the reasonableness of the fee request[.]").

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended multiplied by a reasonable hourly rate." *See Mosaid Techs. Inc.*, 224 F.R.D. at 596 (internal quotations omitted). To determine the reasonable rate, the court looks at "the prevailing market rates in the relevant community." *Id*. at 597. Importantly, "*[t]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.*" *Miles v. Elliot*, 2011 WL 5524842, at *2 (E.D. Pa. Nov. 14, 2011) (emphasis added). After the fee applicant establishes the reasonable hourly rate, the opposing party can then "dispute the rate with the appropriate evidence." *Id*. "After determining the reasonable hours and rates, the court multiplies the numbers to arrive at the 'lodestar.'" *See Mosaid Techs. Inc.*, 224 F.R.D. at 597 (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

As is pertinent here, the cases establish that, "a movant can't request reimbursement under Rule 37(a)(5) for all of the time spent reviewing deficient discovery responses and meeting-and-conferring with opposing counsel over the course of a case . . . such a request should be limited to the time spent '*making*'— that is, drafting and arguing—the motion to compel." *Brown v. City of Glendale*,

17

2019 WL 3412585, at *4 (D. Ariz. July 29, 2019) (emphasis added); *see also Ecomed, LLC v. Asahi Kasei Med. Co., Ltd.*, 2018 WL 4193642, *1 (S.D. Fla. 2018); *Signatours Corp. v. Hartford*, 2016 WL 4533048, *2 (W.D. Wash. 2016). Additionally, "[t]he court is within its discretion to reduce an award for 'overstaffing' and the like . . . and it can deduct hours spent litigating distinct claims on which a party did not prevail[.]" *See Mosaid Techs. Inc.*, 224 F.R.D. at 597.

Here, without furnishing any actual details, as Plaintiffs were required to do to substantiate their fee request, Plaintiffs contend that "the total amount of time spent on the motion by all attorneys was 210.5 hours." *See* Dkt. 1877 at 5. From this, Plaintiffs claim they should be awarded 57% of the fees incurred for the successful portion of their motion—which results in approximately 120 hours of attorney time. However, without Plaintiffs having first established how these hours were spent, who conducted this work, when the work was conducted, or an applicable rate that is reasonable, it is impossible for the Court to assess whether this is a reasonable fee request.[4] Accordingly, in all events, the Court should require Plaintiffs to provide a

---

[4] Although Plaintiffs request leave to submit more details about their time records *in camera* should the Court require it "to avoid disclosure of work product" (*see* Dkt. 1877 at 5, n.2), additional details as to the time spent on the Motion will not necessarily reveal privileged information. *See NRA Grp., LLC v. Durenleau,* 2021 WL 5863842, at *5 (M.D. Pa. Oct. 12, 2021) (holding that "[i]nformation as to the time spent by Plaintiff's attorneys in connection with various tasks associated with

more detailed explanation of and justification for their fee calculations, with the ZHP Parties then having an opportunity to respond. Only then would the Court be able to fully assess the reasonableness of Plaintiffs' fee request attributable to their partial success in litigating their Motion.

Although not contemplated by the Court's Order, and separate from Plaintiffs' request for costs and fees related to the time spent "making" the underlying Motion, Plaintiffs also request fees related to "*all time spent relative to the motion*, including in preparing this submission and participating in the ongoing meet and confer." *See* Dkt. 1877 at 5-6. (emphasis added). Not only is this request not supported by the controlling legal authorities, including such as are cited above, but given that Plaintiffs prevailed at the very most as to only 57% of their Motion (*i.e.,* as per the calculation of total instances complained of by Plaintiffs compared to such relief as was granted), Plaintiffs' request for fees related to "all time spent relative to the motion[,]" includes by definition those portions of the Motion that were, in fact, unsuccessful. As such, Plaintiffs' request is on its face unreasonable. Were the Court to grant Plaintiffs' fees and costs related to their Motion, any such fees and costs must be limited to the actual time "making" only, at most, the successful portions of

_____

the motion for protective order will not necessarily reveal attorney-client privileged communications.").

19

the Motion, which necessarily does not include, as claimed by Plaintiffs, "all time spent relative to the motion."

### D. The Costs Plaintiffs Seek in Connection with the Re-Deposition of the ZHP Parties' Witnesses Are Unreasonable.

In its Order, this Court held that "the costs of any new depositions, including Plaintiffs' counsel fees, will be imposed upon ZHP." *See* Dkt. 1811 at 8, n.2. Consistent with this Court's Order, when a witness must be re-deposed due to the conduct of one party, often that party bears the costs and fees "*for conducting* the new deposition." *See In re Neurontin Antitrust Litig.,* 2011 WL 253434, at *19 (D.N.J. Jan. 25, 2011) (holding defense counsel responsible for the fees and costs "for conducting the new deposition" of the witness) (emphasis added)*; O'Brien v. Amtrak*, 163 F.R.D. 232, 236 (E.D. Pa. 1995) ("As a result of Defense Counsel's conduct, we find it necessary to order second depositions of the deponents . . . [t]he costs of those depositions will be borne by Defendants, because it is their counsel's conduct that necessitates them.").

However, Plaintiffs here seek not only their fees and costs for conducting the supplemental deposition, but they also request fees and costs "spent preparing for" such deposition. *See* Dkt. 1877 at 6. This is entirely inappropriate because, as per the Court's Order, the ZHP Parties can be responsible only for the costs and fees for conducting, but not for preparing for, any re-depositions. Again, Plaintiffs have also

failed to provide their hourly rate or an approximate number of hours, requesting instead leave to submit such information within 30 days after the re-deposition occurs. Should the Court permit Plaintiffs to proceed in that manner, then the ZHP Parties request the opportunity to respond to any such future submission by Plaintiffs regarding their fees, hours, and/or rates.

## IV.    CONCLUSION

For all of the foregoing reasons, the ZHP Parties respectfully request that the Court deny Plaintiffs' request for monetary sanctions related to the "document speaks for itself" objection, or in the alternative, enter only an appropriate sanction that is limited to the twelve "document speaks for itself" objections that Plaintiffs put at issue in their Motion. The ZHP Parties also request that this Court deny Plaintiffs request for fees and costs in bringing the Motion. If this Court finds that Plaintiffs are entitled to fees and costs allocable to the successful parts of their Motion, then Plaintiffs should be required to provide appropriately detailed information as to the actual time spent in connection with those portions of the Motion such that the Court may properly assess whether the hourly rates, the amount of time and associated fees of the attorneys involved are reasonable, and with the opportunity for the ZHP Parties to be further heard on such issue. Finally, the ZHP Parties request that any sanction award in connection with the re-depositions of the

ZHP Parties be limited only to the costs and fees for actually conducting those new depositions, and that the ZHP Parties be permitted to respond to any further fee application, as might be allowed by the Court, if any, following such re-depositions.

Dated: February 9, 2022                    Respectfully submitted,

                                           By: /s/ *Seth A. Goldberg*

                                           DUANE MORRIS LLP
                                           Seth A. Goldberg
                                           30 South 17th Street
                                           Philadelphia, Pennsylvania 19103
                                           Tel.: (215) 979-1000
                                           Fax: (215) 979-1020
                                           SAGoldberg@duanemorris.com

                                           *Attorneys for Zhejiang Huahai*
                                           *Pharmaceutical Co, Ltd., Huahai*
                                           *U.S., Inc., Prinston Pharmaceutical*
                                           *Inc., and Solco Healthcare US, LLC*