# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Karen Williams Magistrate Judge<br><br>Honorable Thomas Vanaskie (Ret.), Special Discovery Master<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO SEAL PURSUANT TO L.CIV.R. 5.3** |

THIS MATTER is before the Court by way of the Motion of Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP"), Prinston Pharmaceutical Inc. ("Prinston"), Huahai U.S. Inc. ("Huahai U.S.") and Solco Healthcare U.S., LLC ("Solco," and collectively with ZHP, Huahai U.S., and Prinston, "the ZHP Parties"), to seal certain exhibits to Plaintiffs' Motion to Compel Discovery.  (ECF No. 1629[1]).  Specifically, the ZHP Parties seek to seal Exhibits 4 through 10 and 14 through 16 to Plaintiffs' "Motion to Compel ZHP's Supplemental Production," ECF No. 1405.[2] Having carefully considered the question of whether sealing of these documents is warranted given the requirements of the applicable case law and the factors contained in Local Civil Rule 5.3(c)(2); and the standards set forth therein having been found to have been met only as to some documents and some parts of two other documents, the following Findings are made:

## **FINDINGS**

1.    The ZHP Parties have filed motions to seal that have been

---

[1] Throughout this Order, the designation "ECF No. ___" shall refer to the document number of a particular filing in the Court's ECF system.

[2] Plaintiffs' Motion was granted in part by Special Master Order No. 54, filed on November 12, 2021.  (ECF No. 1753.)

decided by Special Master Orders.  (*See, e.g.,* ECF No. 859, decided by ECF No. 1269, and ECF No. 1584, decided by ECF No. 1871.)  As noted in the Order of May 24, 2021 (ECF No. 1269), granting in part the ZHP Parties' motion to seal documents (ECF No. 859), the parties to this Multi District Litigation arising out of the alleged contamination of blood pressure medication negotiated the terms of an agreed-upon order to maintain the confidentiality of any materials so designated by a party. On June 26, 2019, the Honorable Robert B. Kugler entered the agreed-upon self-executing "Confidentiality and Protective Order" (the "Protective Order") (ECF No. 139).  The parties thereafter agreed to an Amended Confidentiality and Protective Order, entered on October 21, 2021 (the "Amended Protective Order") (ECF No. 1661).

2.    The Amended Protective Order permits the producing party to safeguard information by designating a document either "CONFIDENTIAL INFORMATION" or "RESTRICTED CONFIDENTIAL INFORMATION."  If a document does not contain one of these designations, then the information contained therein may be disseminated by any party.

3.    The Protective Order defines the type of information that warrants a confidentiality designation:

The term "CONFIDENTIAL INFORMATION" as used in this Protective Order means all information produced by any party in the course of discovery or other proceedings in this case (electronic or otherwise) which is proprietary, trade secret and/or highly sensitive commercial information, and which is believed in good faith by the Producing Party to have the potential, if disclosed, for causing competitive harm to it or giving a competitive advantage to others, and/or which is not publicly available and which a party believes in good faith to be subject to federal, state, or foreign data protection laws or other similar privacy obligations imposed by law.

\* \* \*

"RESTRICTED CONFIDENTIAL INFORMATION" means Documents that a Party has designated as "RESTRICTED CONFIDENTIAL" in accordance with this Protective Order and includes Documents a Party reasonably believes contain, describe, identify, or refer to highly confidential commercial, business, financial, or competitive information including proprietary manufacturing and production information (including formulation); business and prospective marketing plans; trade secrets; customer lists; pricing, market share, product cost and projected sales data; data relating to mergers and acquisitions; other information of a highly sensitive nature about the Party, which is not publicly available, the disclosure of which could cause the Producing Party competitive harm. . . .

(ECF No. 1661, ¶¶ 9(B), (M).)  The Amended Protective Order further

provides that "[a]ny Documents designated as RESTRICTED

4

CONFIDENTIAL shall only be disclosed to the Party's outside counsel and shall not be disclosed to any Party, a Party's witnesses, or in house counsel unless either a) the designating party explicitly agrees to the disclosure in writing, or b) a successful challenge is made and disclosure is ordered by the Court." *Id.,* ¶9(M).  Information designated as "CONFIDENTIAL INFORMATION" or "RESTRICTED CONFIDENTIAL INFORMATION" is referred to in the Amended Protective Order collectively as "PROTECTED INFORMATION." *Id.,* ¶9(K).

4.      Recognizing that liberal designation of documents as confidential is anticipated in a case of this nature, complexity, and business sensitivity, the Amended Protective Order states that "nothing herein shall be construed to prevent a Producing Party from designating documents as 'CONFIDENTIAL INFORMATION' in order to expedite the flow of discovery and to facilitate discovery . . ." (*Id.* ¶ 9(B)).  The Amended Protective Order further provides that "should it be demonstrated to the Court that a Producing Party has abused the discretion contemplated by the language of this paragraph and has unduly burdened their adversary, or that the party objecting to such designations has done so without a good faith basis for opposing

the designations, an application for appropriate sanctions may be made." (*Id.*)

5.      Pursuant to the Amended Protective Order, information designated as "CONFIDENTIAL INFORMATION" or "RESTRICTED CONFIDENTIAL INFORMATION" may only be used for purposes of this litigation and may only be disclosed to designated persons. *Id.* ¶¶ 22, 24.  Unauthorized disclosure of information designated as "CONFIDENTIAL INFORMATION" or "RESTRICTED CONFIDENTIAL INFORMATION" may subject the disclosing person to sanctions. *Id.* ¶ 28.

6.      Exhibits 4 through 10 and 14 through 16 to Plaintiffs' Motion to Compel constitute "PROTECTED INFORMATION."

7.      The Amended Protective Order establishes the procedures to be followed when PROTECTED INFORMATION is submitted as part of a court filing.  Specifically, the Protective Order provides that "[w]here the filing party has not had an opportunity to confer with the Producing Party, in advance of a filing, the filing party shall not attach materials containing 'PROTECTED INFORMATION' to its filing but shall instead designate by Bates number the materials containing 'PROTECTED INFORMATION' that would have been attached or completely redact all

'PROTECTED INFORMATION' from such materials." *Id.* The Protective Order then requires the filing and producing parties to confer "to determine whether they can agree upon non-confidential redacted or excerpted pages of materials containing 'PROTECTED INFORMATION' to attach to the filing in place of the Bates number designations or redacted materials." *Id.* If the parties are unable to agree, "the designating party must file a motion to seal the materials containing 'PROTECTED INFORMATION' pursuant to the requirements for doing so as set forth in Local Rule 5.3(c), and within thirty (30) days of the completion of briefing related to the original motion, or else waive confidentiality as to the materials containing 'PROTECTED INFORMATION' at issue." *Id.*

8.    In accordance with Local Rule 5.3, the ZHP Parties have submitted an index, as required by Local Rule 5.3(c), identifying the material to be sealed, the basis for sealing, the purported injury that may result if sealing is denied, why a less restrictive alternative to sealing is not appropriate, and the bases for Plaintiffs' opposition to sealing. (Ex. C to Atty. Bonner Declaration, ECF No. 1629-7.) Also submitted in support of the Motion to Seal are the Declarations of Mi Xu (ECF No. 1629-5) and Dr. Min Li (ECF No. 1629-6).

9.     As noted in addressing earlier motions to seal, the Third Circuit has identified the following as a non-exhaustive and non-mandatory list of factors to consider when deciding a motion to seal:

    a.  Whether disclosure would violate any privacy interests;

    b.  whether the information is being sought for a legitimate purpose or for an improper purpose;

    c.  whether disclosure would cause a party embarrassment;

    d.  whether confidentiality is being sought over information important to public health and safety;

    e.  whether the sharing of information among litigants will promote fairness and efficiency;

    f.  whether a party benefitting from the order of confidentiality is a public entity or official; and

    g.  whether the case involves issues important to the public.

*In re Avandia Mktg., Sales Practices and Products Liab. Litig.*, 924 F.3d 662, 670 (3d Cir. 2019) (quoting *Glenmede Tr. Co. v. Thompson*, 56 F.3 476, 483 (3d Cir. 1995)).

10.     These factors are applied in the context of materials that are not part of the "court record."  However, a "more rigorous common law

right of access" applies when, as here, the discovery materials are filed with the court. *Avandia*, 924 F.3d at 670. "In addition to recognizing fewer reasons to justify the sealing of court records, the public right of access—unlike a Rule 26 inquiry—begins with a presumption in favor of public access." *Id.* (citing *Goldstein v. Forbes* (*In re Cendant Corp.*), 260 F.3d 183, 192–93 (3d Cir. 2001).

11.    "Analytically distinct from the District Court's ability to protect discovery materials under Rule 26(c), the common law presumes that the public has a right of access to judicial materials. In both criminal and civil cases, a common law right of access attaches 'to judicial proceedings and records.'" *In re Avandia*, 924 F.3d at 672.

12.    The common law right of access applies to a "judicial record." A "judicial record" is a document that "has been filed with the court . . . or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *Avandia*, 924 F.3d at 672. "Once a document becomes a judicial record, a presumption of access attaches." *Id.* The ZHP Parties do not dispute that the Exhibits to Plaintiffs' Motion to Compel are "judicial records" in that they are "relevant to the performance of the judicial function," *i.e.*, resolving discovery disputes, and "useful in the judicial process." *In re Avandia Mktg., Sales Practices and Products*

*Liab. Litig.*, 484 F. Supp. 3d 249, 259 (E.D. Pa. 2020).

13.    "The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.' The movant must show 'that the material is the kind of information that courts will protect and that disclosure will work *a clearly defined and serious injury* to the party seeking disclosure.'" *Id* (emphasis added).

14.    As explained in *Avandia*, 924 F.3d at 672-73 (cleaned up and emphasis added):

> To overcome that strong presumption, the District Court must articulate the compelling, countervailing interests to be protected, make specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard. In delineating the injury to be prevented, specificity is essential. *Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient*. Careful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants. To that end, the District Court must conduct a document-by-document review of the contents of the challenged documents.

15.    "[C]oncern about a company's public image, embarrassment, or reputational injury, without more, is insufficient to rebut the presumption of public access." *Id*. at 676. Furthermore, "a person's motive for inspecting or copying judicial records is irrelevant under the common law right of access." *Id*. at 677.

16.    With respect to access to judicial records in the context of litigation concerning the safety of prescription medication, the Third Circuit has observed:

> [T]he public's right of access must be the starting point, not just one of multiple factors. *The scale is tipped at the outset in favor of access.* And the right of access is not a mere formality – it promotes public confidence in the judicial system; diminishes possibilities for injustice, incompetence, perjury, and fraud; and provide[s] the public with a more complete understanding of the judicial system and a better perception of its fairness. *These interests are particularly important in a case such as this one, which implicates the public's trust in a well-known and (formerly) widely-used drug. Id.* (emphasis supplied).

17.    The at-issue Exhibits to Plaintiffs' Motion to Compel have been reviewed with these principles in mind.  Each of the documents will be discussed in turn.

### A.  Exhibits 4 and 5 to Plaintiffs' Motion to Compel

18.    As described in the proposed sealing order submitted by the ZHP Parties as a publicly accessible document (ECF No. 1629-3), Exhibit 4 to Plaintiffs' Motion to Compel is "[a] letter from one of the ZHP Parties' customers, Novartis International Pharmaceuticals Ltd., Branch Ireland ("NIPBI"), to ZHP employees dated July 19, 2018, regarding the return of valsartan API," and Exhibit 5 is a duplicate of Exhibit 4.  The Declaration of Mi Xu ((ECF No. 1629-5) states that

"[t]hese documents summarize a management meeting between NIPBI and the ZHP Parties that took place on July 6, 2018, and describe in detail the product to be returned, including the delivery date, the quantity delivered, and the quantity consumed by NIPBI." The ZHP Parties claim that disclosure of these documents would violate a "Confidential Disclosure Agreement" between Novartis and ZHP, but have not provided the agreement itself. The Xu Declaration states that disclosure of the two documents, "*without a court order or prior authorization*, would subject the ZHP Parties to legal liability for breach of the CDA, resulting in significant financial harm to the ZHP Parties in the form of litigation costs, contract damages, and equitable relief, including injunction and specific performance for any breach." (ECF No. 1629-5 at 2; emphasis added.) The ZHP Parties, however, have not stated that they conferred with Novartis on the matter of disclosure or that Novartis objects to the disclosure of the letter. Furthermore, ZHP acknowledges that the Confidential Disclosure Agreement exempts a judicially-compelled release of the documents, which would seem to preclude any liability for disclosure of the letters as a result of a court order. In any event, the information in the letters is not commercially sensitive or proprietary and the ZHP Parties have not shown "the clearly defined and

serious injury" that would result if the judicial records in question are not sealed. *See In re Forest Research Institute Cases,* No. 13-1832, 2014 WL 12618100, at *2 (D.N.J., June 16, 2014.). Accordingly, the motion to seal Exhibits 4 and 5 to Plaintiffs' Motion to Compel will be denied.

### B. Exhibits 6 and 7 to Plaintiffs' Motion to Compel

19.    The ZHP Parties describe Exhibit 6 to Plaintiffs' Motion to Compel as "[a] letter from Sandoz AG and Sandoz Pvt. Ltd. to ZHP employees dated January 15, 2019 regarding a notification of claims and actions involving the affiliates of Sandoz Pvt. Ltd. and Sandoz AG (collectively, "Sandoz") related to the ZHP Parties' product, which was not intended for the U.S. market, and is subject to a confidentiality provision in the API supply agreement between Sandoz and the ZHP Parties." Exhibit 7 is a duplicate of Exhibit 6. As with Exhibits 4 and 5, ZHP contends that disclosure of Exhibits 6 and 7 would violate the confidentiality provisions of an agreement between Sandoz and ZHP, but the ZHP Parties did not provide a copy of that agreement. The Xu Declaration asserts that "disclosure of the letters, *without a court order or prior authorization*, would subject the ZHP Parties to legal liability for breach of the Supply Agreement, resulting in significant financial

13

harm to the ZHP Parties in the form of litigation costs and contract damages." (ECF No. 1629-5 at 3; emphasis added.) The ZHP Parties, however, have not stated that they conferred with Sandoz on the matter of disclosure or that Sandoz objects to disclosure of the letter. The Xu Declaration implies that a judicially compelled disclosure of the letters would relieve ZHP of any liability for the court-sanctioned release of the documents, thereby defeating its assertion of harm from disclosure ordered by the court. In any event, the letters discuss matters in the public domain, *i.e.,* claims and actions asserted against Sandoz arising out of NDMA contamination of valsartan. Such information has no competitive significance and the ZHP Parties have not established "the clearly defined and serious injury" that would result if Exhibits 6 and 7 are not sealed. *See In re Forest Research Institute Cases,* No. 13-1832, 2014 WL 12618100, at *2 (D.N.J., June 16, 2014.). Accordingly, the ZHP Parties' motion to seal Exhibits 6 and 7 to Plaintiffs' Motion to Compel will be denied.

### C.  Exhibit 8 to Plaintiffs' Motion to Compel

20.    Exhibit 8 is a January 13, 2018 email communication involving only ZHP personnel. The communication is only 4 sentences long.  As described in the publicly accessible index submitted with the

14

motion to seal, ECF No. 1269-7 at p. 3, the communication concerns "testing of the ZHP Parties' irbesartan intermediate compounds, and describes non-public, proprietary testing practices and procedures unrelated to the claims at issue in this litigation." ZHP contends that disclosure of this email would reveal its "testing practices and procedures to the ZHP Parties' direct competitors," resulting in "significant competitive harm. . .." Dr. Li's Declaration has similarly broad assertions of harm, but provides no insight into what testing practices and procedures are described in this short email. "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient" to rebut the presumption of public access. *Avandia*, 924 F.3d at 672-73. Accordingly, ZHP's request to seal Exhibit 8 will be denied.

### D.   Exhibit 9 to Plaintiffs' Motion to Compel

21.    Exhibit 9 to Plaintiffs' Motion to Compel consists of emails spanning the period April 28 through May 3, 2017, involving ZHP and one of its customers. The Declaration of Mi Xu states that the emails concern chromatography testing of valsartan and are subject to "an extremely robust mutual confidential disclosure agreement" between ZHP and its customer. (ECF No. 1629-5 at 3.) The Xu Declaration notes that the disclosure agreement expired in December of 2017, but that the

confidentiality obligation persists.  He asserts that "[d]eliberate disclosure of the emails, *without a court order or prior authorization,*" would expose the ZHP Parties to "legal liability for breach of Section 11 of the Terms and Conditions, resulting in significant financial harm to the ZHP Parties in the form of litigation costs and contract damages, as well as possible injunctive relief."  (*Id.* at 4; emphasis added.)  The ZHP Parties, however, did not produce the agreement with its customer or otherwise substantiate the assertion that disclosure of the emails nearly 5 years after they were generated would prompt its customer to seek relief under the confidentiality agreement.  Indeed, ZHP has not shown that it even conferred with its customer about the disclosure of the emails.  As suggested above, production under the compulsion of a court order would seem to preclude liability.  It is also noteworthy that similar documents were not deemed worthy of judicially mandated sealing.  *See* May 24, 2021 Order in this matter, ECF No. 1269, at 11-13, 22-23.  Accordingly, the ZHP Parties' request to seal Exhibit 9 will be denied.

### E.  Exhibit 10 to Plaintiffs' Motion to Compel

22.    Exhibit 10 to Plaintiffs' Motion to Compel, designated "Confidential Information," consists of email communications in November and December of 2017 between the ZHP Parties and a

potential business partner pertaining to "a draft valsartan synthesis development project."  (Xu Declaration, ECF No. 1269-5, at 4.) Plaintiffs characterize the email exchanges as routine business communications that do not warrant sealing.  The ZHP Parties respond by asserting that the communications disclose "material costs and product specifications," and include a discussion as to whether to expand the agreement to products unrelated to valsartan.  The concern with respect to disclosure of communications pertaining to expansion of the draft agreement can be allayed by redactions.[3]  As to the matter of "material costs and product specifications," they are not disclosed in the emails.  Accordingly, the ZHP Parties may redact from the November 16, 2017 email the content from the phrase "In the first phase" to the end of that email.  In all other respects, the request to seal Exhibit 10 will be denied.

### F.  Exhibit 14 to Plaintiffs' Motion to Compel

23.    Exhibit 14 to Plaintiffs' Motion to Compel, designated "Restricted Confidential Information," is an undated "Investigation Report prepared by the ZHP Parties related to contamination of

---

[3] The draft agreement is not included with the emails that comprise Exhibit 10.

irbesartan.[4]  The ZHP Parties proffer the Declaration of Dr. Min Li, ECF No. 1629-6, to support their argument that sealing is required to protect the ZHP Parties' confidential and proprietary information and to avoid significant competitive harm.

24.    By Order filed on January 14, 2022, ECF No. 1871, the ZHP Parties' motion to seal a July 27, 2017 email related to the Investigation Report was largely denied as much of the information in the email relating to the investigation of the irbesartan contamination was in the public domain.  Specifically, the NDEA contamination of irbesartan was disclosed in an FDA Recall Announcement dated January 18, 2019 and available at https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/prinston-pharmaceutical-inc-issues-voluntary-nationwide-recall-irbesartan-and-irbesartan-hctz (last visited Feb. 10, 2022).  The January 14th Order found that the assertions of Dr. Li, which are materially indistinguishable from those he advances to justify sealing the Investigation Report, were undermined by the widespread dissemination of information concerning the recall of valsartan, its causes, and the

---

[4] Plaintiffs have unsuccessfully sought the metadata for the Investigation Report, and its origination date is not presently ascertainable.  Plaintiffs, however, do point to evidence suggesting that the report was prepared before the irbesartan and valsartan recalls.  The specific evidence has been redacted from the publicly available copy of Plaintiffs' Opposition to the Motion to Seal, ECF No. 1736.

methods to test for the contamination.  The January 14th Order observed that "[t]he ZHP Parties do not reconcile their claims of competitive harm from disclosure of the July 27, 2017 email with the publicly available information concerning the process for making valsartan and testing methodologies for detection of the suspected carcinogens of NDMA and NDEA."  The same observation is applicable here.  In large measure, the ZHP Parties have not rebutted the presumption of public access to the investigation report.

25.    The only information in the July 27, 2017 email that warranted sealing concerned "the chemical structure and molecular weight of the observed impurity, as well as the possible formation route for the contaminant."  Similar information may be redacted from Exhibit 14.  Specifically, the ZHP Parties may redact the graphical depiction of the chemical structure of irbesartan and the suspected structure of the impurity along with the molecular weights of the two substances on page 1 of the Report and redact the entirety of pages 5 through 9 of the Report.[5]

---

[5] The ZHP Parties may propose additional redactions to the extent that they believe there are other instances of disclosure of the chemical structure and molecular weight of the observed impurity and information concerning the possible formation route for the contaminant not covered by the redactions authorized by this decision. Additional redactions must be proposed by the ZHP Parties no later than February

### G. Exhibits 15 and 16 to Plaintiffs' Motion to Compel

26.    Exhibit 15 to Plaintiffs' Motion to Compel, designated "Restricted Confidential Information," is described by Dr. Li as containing "internal, non-public *pilot* test results from May 2, 2017 to August 10, 2017 that detail the ZHP Parties' proprietary specifications and testing methods for impurities in irbesartan."  (ECF No. 1629-6 at 2.) Exhibit 16 to Plaintiffs' Motion to Compel, also designated "Restricted Confidential Information," is described by Dr. Li as containing "internal, non-public *experiment results* regarding the testing and validation of irbesartan samples from August 21, 2017 to December 29, 2017 that detail the ZHP Parties' proprietary specifications and testing methods for impurities in irbesartan."  (*Id.* at 3.)  Plaintiffs have withdrawn their challenges to the designation of these documents as "Restricted Confidential Information," (ECF No. 1736 at 5), and do not oppose the ZHP Parties' request that the documents be sealed. No other party has opposed the request to seal these documents.  While the absence of an adversarial presentation on the issue of sealing is not controlling, s*ee In re Forest Research Institute Cases,* No. 13-1832, 2014 WL 12618100, at *2 (D.N.J., June 16, 2014), no information has been presenting rebutting

_____

22, 2022.

20

the showing made by the ZHP Parties with respect to Exhibits 15 and 16.

Given the ZHP Parties' uncontested description of the two exhibits as

concerning "pilot" and "non-public experiment results," and the ZHP

Parties' uncontradicted assertion that the notes reveal "proprietary

specifications and testing methods," the ZHP Parties' motion to seal

Exhibits 15 and 16 will be granted.

### H.   Plaintiffs' Request for De-Designation of Documents

27.    Contending that there has been massive over-designation of

documents as "PROTECTED INFORMATION" under the Protective

Orders issued in this matter, Plaintiffs ask that the ZHP Parties be

ordered "to re-evaluate its production, affirmatively de-designate across

the board, and thus vastly narrow the field of documents potentially

requiring challenges." (ECF No. 1736 at 4.)  Specifically, the order

proposed by Plaintiffs provides:

> ZHP shall apply the Court's rulings as to its documents to all of its
> confidentiality designations, including deposition transcripts, and
> to the extent similar documents are designated confidential, the
> designations shall be removed, and (3) within thirty days of this
> order, ZHP shall produce an overlay to amend its confidentiality
> designations of its production in accordance with the Court's prior
> orders and the review ordered herein, and for deposition
> transcripts, it must provide revised designations in the same form it
> originally made them.

(ECF No. 1736-4 at 21.)  The ZHP Parties respond to this request by

asserting that it has produced millions of pages of documents that would have to be re-examined for confidentiality purposes.

28.    Contrary to Plaintiffs' contentions, the record is not sufficient to draw any conclusion that there has been a massive over-designation of documents as "PROTECTED INFORMATION" under the Protective Orders issued in this matter.  While Plaintiffs have been largely successful in opposing motions to seal, those motions have involved only a very small part of the ZHP Parties' document production and deposition testimony presented by their witnesses.  In this regard, the motions to seal have concerned documents that have attained the status of "judicial records," to which a presumption of public access attaches. There is no right of public access to discovery materials.  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984).  It is only when the discovery materials become "judicial records" that a right of access arises.  This presumption of access was a significant factor in declining to seal certain materials.  The appropriate way to handle the presumption of access is on a document-by-document basis, *see In re Avandia*, 924 F.3d at 673, and not by requiring a mass reexamination of the documents produced in this litigation.  Accordingly, Plaintiffs' request for an order requiring en masse reexamination and re-designation will be denied.

22

## ORDER

Pursuant to the foregoing Findings and for good cause shown it is on this 10th day of February, 2022, **HEREBY ORDERED AS FOLLOWS**:

1. The ZHP Parties motion to seal Exhibits 4 through 9 of Plaintiffs' Motion to Compel is **DENIED**.

2. The ZHP Parties motion to seal Exhibit 10 of Plaintiffs' Motion to Compel is **GRANTED IN PART**. Exhibit 10 may be redacted consistent with paragraph 22 above.

3. The ZHP Parties motion to seal Exhibit 14 of Plaintiffs' Motion to Compel is **GRANTED IN PART**. Exhibit 14 may be redacted consistent with paragraph 25 above. Additional redactions to Exhibit 14 may be requested by the ZHP Parties no later than February 22, 2022.

4. The ZHP Parties motion to seal Exhibits 15 and 16 of Plaintiffs' Motion to Compel is **GRANTED**.

5. This Order disposes of ECF No. 1629.

6. Any objection to this Order shall be filed no later than twenty-one (21) days after entry of this Order.

**s/ Thomas I. Vanaskie**
Hon. Thomas I. Vanaskie (Ret.)
Special Master