**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

<table>
<tr><td>

IN RE VALSARTAN, LOSARTAN, AND
IRBESARTAN PRODUCTS LIABILITY
LITIGATION


This document relates to:
*All Actions*

</td><td>

No. 1:19-md-2875-RBK

Hon. Robert B. Kugler
Special Master Thomas I. Vanaskie

</td></tr>
</table>

**PLAINTIFFS' REPLY BRIEF**
**IN SUPPORT OF RULE 37 SANCTIONS AGAINST ZHP**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

LEGAL ARGUMENT.................................................................................................4

I.    THE COURT HAS ALREADY REJECTED ZHP'S ARGUMENTS THAT PLAINTIFFS NEEDED TO RESORT TO THE HAGUE CONVENTION AND THAT RULE 37 SANCTIONS REQUIRE A FINDING OF BAD FAITH.................................................................4

II.    ZHP ACTED IN BAD FAITH IN HALF-HEARTEDLY REQUESTING PERMISSION FOR BAOHUA CHEN'S DEPOSITION AND IN REFUSING TO PRODUCE THE SUPPLEMENTAL PRODUCTION...................................................6

III.    THE REQUESTED SANCTIONS ARE APPROPRIATE .................................9

IV.    THE COURT HAS THE DISCRETION TO ISSUE SANCTIONS IT DEEMS APPROPRIATE ................................................................10

CONCLUSION.........................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Abiola v. Abubakar*,
 No. 02 C 6093, 2007 WL 2875493, (N.D. Ill. Sept. 28, 2007)..................................10

*Aérospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*,
 482 U.S. 522, 539-40 (1987) ......................................................................................4

*In re Activision Blizzard, Inc.*,
 86 A.3d 531 (De. Ch. Ct. 2014)..................................................................................5

*Inventus Power v. Shenzhen Ace Battery*,
 339 F.R.D. 487 (E.D. Ill. 2021) .................................................................................4

*Jacobs v. Floorco Enterprises, LLC*,
 No. 3:17-CV-90-RGJ-CHL, 2020 WL 1290607 (W.D. Ky. Mar. 18, 2020) ............4

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
 MDL No. 2875, 2021 WL 6010575 (D.N.J. Dec. 20, 2021) ...................................*passim*

**Rules**

Federal Rule of Civil Procedure 37 ....................................................................................*passim*

**Other Authorities**

Restatement (Third) of the Foreign Relations Law § 442 .................................................5

Wright & Miller, FED. PRAC. & PROC. CIV. § 2444 Proof of Foreign Law (3d ed.) .....6

## PRELIMINARY STATEMENT

ZHP's opposition brief illustrates its continued disregard for this Court's Orders.  In fact, the Court has rejected most of the arguments in ZHP's opposition, having already ruled Plaintiffs were not obligated to seek discovery under the Hague Convention, and when a party invokes a foreign "blocking" statute to undermine its Orders, Rule 37 sanctions are appropriate, *even without a finding of bad faith*.  And the Court has already rejected ZHP's arguments seeking to minimize the significance of Baohua Chen's role in the ZHP Organization, including its subsidiaries, and the importance of the Supplemental Production, most of which ZHP is still withholding.  Ignored by ZHP, the Court has already entered Orders compelling Mr. Chen's deposition and the production of the documents in question—Orders that ZHP has failed to comply with, leading to the present motion.

In affirming the denial of ZHP's motion for a protective order to shield Mr. Chen from being deposed, this Court found:

> -Mr. Chen is and has been closely involved in ZHP operations and in the decision-making to change the API solvent(s);
>
> -These operational changes appear to have precipitated the contamination of ZHP's API; and
>
> -Mr. Chen was involved in responding to the FDA's recalls.

(ECF 1475, p. 2).  The Court explained, "This information supports plaintiffs' contention that Mr. Chen has specific information to impart concerning his active involvement." (*Id.*).  Moreover, the Court explicitly rejected ZHP's argument that Baohua Chen's deposition would be duplicative of the depositions of its other employees.  (*Id.*).[1]

The Court has similarly rejected ZHP's attempt to minimize the significance of the

---

[1]    The Court has sanctioned ZHP for its employees' non-responsive answers and its counsel's disruptive misconduct in its 30(b)(6) depositions.  (ECF 1811).

Supplemental Production.    (ECF 303; 11/20/2019 Tr. of Oral Opinion Deciding the Parties'

"Macro" Issues, 6:15 7:22, 21:23-25; ECF 1233; 5/12/2021 Tr. 32:15-33:1; ECF 1753).  Plaintiffs

are entitled to full discovery concerning the circumstances of the July 27, 2017 email, in which

Jinsheng Lin notified numerous other high-level employees that ZHP's valsartan was

contaminated with NDMA and then urged them to address the problem immediately.  This email

will be a significant piece of evidence in any trial against ZHP and its subsidiaries.  Without all

versions of the irbesartan investigation in their native format and all other related documents, such

as those referencing "TC-201729," Plaintiffs will be left at a disadvantage, which would impact

Plaintiffs' ability to present all relevant evidence and to respond to ZHP's ongoing efforts to

explain away this email and the related investigation.  These unproduced documents could also

show that ZHP knew of the contamination significantly earlier than July 27, 2017.    The

significance of these documents also flows from the brazen fact that ZHP never issued a litigation

hold notice to Jinsheng Lin, Ph.D. who authored the email stating that it was known NDMA was

in ZHP's valsartan API and that this was a problem with the manufacture of sartans in general, as

well as the scant custodial production Plaintiffs were given for Dr. Lin after the email came to

light.  (Ex. 55; ZHP 296, Ex. 37).[2]

ZHP's testing results are also crucial to Plaintiffs' case.  These additional test results will

confirm the full scope of contamination levels documented by ZHP's testing, including the levels

in the valsartan sold in other markets.  This is relevant not only to proof of the liability case but

also to understanding the context for epidemiologic studies that have been and potentially will be

conducted using the public health services or other sources of data available in those countries.

---

[2] Exhibits 1-54 are attached to the Certification of Adam M. Slater in Support of Plaintiffs' Motion
for Rule 37 Sanctions Against ZHP, included with Plaintiffs' original motion papers, and Exhibits
55-59 are attached to his Certification in Support of this Reply.

(Pottegård et al., *Use of N-nitrosodimethylamine (NDMA) contaminated valsartan products and risk of cancer: Danish nationwide cohort study*, B.M.J. 12, 362 (Sept. 2018), Ex. 51; Gomm et al., *N-Nitrosodimethylamine-Contaminated Valsartan and the Risk of Cancer: A Longitudinal Cohort Study Based on German Health Insurance Data*, Deutsches Aerzteblatt International 118, 357-62 (2021), Ex. 52).

It has been nearly two months since the Court rejected ZHP's interpretation of China's Data Security Law as a basis for withholding the Supplemental Production. Yet, ZHP has only produced one part of that production, and Plaintiffs are still waiting for the privilege log for that partial production. The history of the Supplemental Production Orders demonstrates that ZHP deliberately waited for the Data Security Law to go into effect, so it could then rely on that law in an attempt to shield itself from producing the documents.

The should also recognize that ZHP's "basis" for refusing to produce Baohua Chen for his deposition is conclusory at best. ZHP provides a thin declaration from a ZHP administrator who initially did not even know she had to file a formal request for Baohua Chen to travel abroad. Moreover, the form attached to the declaration is ████████████████ that the only fair inference is that ZHP never wanted the request granted. This is not enough for ZHP to meet its burden, and supports a finding of bad faith.

Mr. Chen has traveled to the United States when it was beneficial to ZHP's interests, and ZHP now tells the world that the import ban was lifted and it is again permitted to sell drug products into the United States. (Pls.' Br. 16-17; Solco's Press Release *The FDA Has Officially Removed Zhejiang Huahai Pharmaceutical From Import Alert* (Nov. 16, 2021), Ex. 56; Solco's current Product List, bearing Prinston's and ZHP's logo, Ex. 57). Yet, ZHP does not comply with the dictates of the United States judicial system. ZHP's refusal to comply with important Court Orders must finally be definitively addressed through the entry of the requested Rule 37 sanctions.

3

**LEGAL ARGUMENT**

**I.**

**THE COURT HAS ALREADY REJECTED ZHP'S ARGUMENTS THAT PLAINTIFFS NEEDED TO RESORT TO THE HAGUE CONVENTION AND THAT RULE 37 SANCTIONS REQUIRE A FINDING OF BAD FAITH**

"[T]he Hague Convention in no way deprives a District Court of jurisdiction to compel a foreign national party to produce evidence physically located within a Hague Convention signatory nation." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 2021 WL 6010575, at \*4 (D.N.J. Dec. 20, 2021) (citing *Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 539-40 (1987)) (Ex. 53) (ECF 1825).  In fact, "[t]he parties [previously] agree[d] that under Rule 30(b)(1), a witness may be noticed for a deposition to provide testimony on behalf of a corporation if the witness is an officer, director or managing agent of the corporation."  (ECF 1061).

ZHP inexplicably dismisses this authority and continues to point to the Hague despite the fact that "**in more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has granted permission for a deposition on only one occasion**." *Inventus Power v. Shenzhen Ace Battery*, 339 F.R.D. 487, 509 (E.D. Ill. 2021) (emphasis added); *see also Jacobs v. Floorco Enterprises, LLC*, 2020 WL 1290607, at \*15-16 (W.D. Ky. Mar. 18, 2020) (Ex. 46).  This is why Chinese nationals routinely leave mainland China for depositions under the F.R.C.P., including in this case.  *See Inventus*, 339 F.R.D. at 508-09 ("Wenhua Li's deposition shall also proceed in Macau"); *Jacobs*, 2020 WL 1290607, at \*16 ("the Court will grant Jacobs's Motion to Compel Tu to appear for a deposition in Kentucky").  (*See also* ECF 701, Ex. 1 ("Unless otherwise agreed, a Chinese national residing in mainland China will travel from mainland China to Hong Kong for the deposition, including for a deposition taken via videoconference")).

ZHP also ignores the Court's prior ruling on the standard for Rule 37 sanctions:

4

Any expectation that a PRC law will successfully shield discovery in a U.S. litigation needs a tempering of realism. That is, PRC defendants must know from the outset they risk serious consequences if and when they fail to obey a U.S. court's order to compel discovery. These consequences arise from the clearly enumerated authority under Rule 37, which U.S. courts wield as needed.

An example of a court imposing such a tempering realism is found *In re Activision Blizzard, Inc.*, []86 A.3d 531, 552 (De. Ch. Ct. 2014). There, the court required French defendants to make a good faith effort to obtain promptly the assistance of the appropriate French authority in deciding the disclosable nature of documents at issue. This good faith effort is similar to what I see ZHP has done. However, the Activision court's patience was not infinite in that the French defendants were given a deadline by which the blocked French documents had to be produced, with or without the French authority assistance. The court stated:

> "*If [document] production has not been authorized [by the French authority] by March 31, 2014, when substantial completion of document production is due, then the [French] Defendants shall produce on that date the documents called for by the plaintiff's discovery requests or face the prospect of sanctions in this court. In considering sanctions, the court will be guided by the factors cited in Section 442 of the Restatement [Third of the Foreign Relations Law] and will take into account the recommendation in Section 442(2)(c) of the Restatement that the **appropriate sanctions involve making 'findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.'** Restatement § 442(2)(c).*"

Importantly, the non-compliance of a Court Order risks the imposition of Rule 37 sanctions.

5

*Valsartan,* 2021 WL 6010575, at *18-19.  Thus, it is black-letter law that the Court can grant Rule 37 sanctions without a finding of bad faith in the circumstances found in this motion.

## II.

### ZHP ACTED IN BAD FAITH IN HALF-HEARTEDLY REQUESTING PERMISSION FOR BAOHUA CHEN'S DEPOSITION AND IN REFUSING TO PRODUCE THE SUPPLEMENTAL PRODUCTION

Baohua Chen was ordered to be produced for a deposition and that Order has been flouted. As set forth above, Chinese government interference is not an adequate excuse.  In fact, ZHP has failed to comply with the Court's Orders while announcing that it is off the import ban and once again selling drugs into the United States.  ZHP cannot have it both ways, and this saga needs to be brought to a definitive end.

Preliminarily, the party invoking a foreign blocking statute restriction "must prove in accordance with Rule 44.1 that the foreign law applies to the discovery sought, and conflicts with U.S. law." *Valsartan,* 2021 WL 6010575, at *10 (footnote omitted).  In support of its prior mostly unsuccessful withholding of documents as "state secrets," ZHP provided a declaration from a Chinese attorney explaining the legal basis for the withholding and attaching the relevant laws. (ECF 1550).  ZHP even wrote, **"[J]udges expect adequate expert testimony on foreign law and the failure to produce it may be quite damaging to a litigant's case."**  (ECF 1550-1, p. 26 (quoting Wright & Miller, FED. PRAC. & PROC. CIV. § 2444 Proof of Foreign Law (3d ed.)). However, ZHP has not provided any expert testimony on its inability to obtain permission for Baohua Chen to leave mainland China for his deposition.  Instead, it provides a declaration from an administrative employee at ZHP.  This declaration is insufficient to meet ZHP's burden on this issue and no further efforts to do so should be permitted.

ZHP professes its "good faith," pointing to what it has done, ignoring the fact that it is currently in violation of Court Orders, and has previously been sanctioned for its 30(b)(6)

6

witnesses' failures to provide responsive testimony. Against this backdrop, ZHP's meager proffer establishes its bad faith. First, this Court originally ordered Baohua Chen's deposition on December 31, 2020, and the Parties scheduled his deposition for May 31, 2021. (ECF 704). However, Sihan Lu's declaration states that ZHP first contacted the Taizhou Federation of Industry and Commerce to obtain permission for the deposition in early June 2021, after his deposition was originally scheduled to take place. This delay is inexcusable.

Second, the declaration implies that Sihan Lu was previously unaware that she would need to submit an application for Baohua Chen to leave mainland China. If true, why did ZHP task this inexperienced and uninformed administrator with this important application? This is superimposed on the fact that Baohua Chen has traveled out of China on ZHP business, including to New Jersey, when it has served ZHP's interests. (Pls.' Br. 16-17).

Third, the form is ███████████████████████████
████████████████████████████████████████████
████████████████████████████████

Fourth, ███████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

Fifth, █████████████████████████████████████
███████████████████████████████████████████.

Thus, ZHP is claiming that Baohua Chen truly wants to appear for his deposition, but █████████
████████████████████████████████. Mr. Chen is a billionaire with significant government connections, and presumably could obtain approval if he truly wanted

it.  *See Valsartan*, 2021 WL 6010575, at \*13 ("Mr. Chen's, ZHP's CEO, membership in the Communist Party … may modulate ZHP's overall liability.").

ZHP's continued failure to produce its Court-ordered Supplemental Production is also unjustified.  As the Court knows, the Supplemental Production consists of (1) the custodial file of Xiaofang (Maggie) Kong, (2) the report investigating the contamination of irbesartan with a nitrosamine, discussed in the July 27, 2017 email by Jinsheng Lin, Ph.D., admitting ZHP's valsartan contained NDMA and that sartans were commonly contaminated with such nitrosamines, (3) all documents referencing "TC-201729," the code for this investigation, and (4) all documents relating to the batch testing for nitrosamines referenced in PRINSTON0075797.

The Court ordered production of most of the documents on April 27, 2021, and then ordered the production of Xiaofang (Maggie) Kong's custodial file on May 12, 2021.  ZHP then waited until after China's new Data Security Law went into effect on September 1, 2021, and ZHP advised that it was precluded from producing any of these documents.  This delay was clearly calculated to obstruct rather than facilitate discovery.  In addition, these items are relevant and never should have been the subject of an Order since they were owed as part of the primary productions.  These facts all support a finding of bad faith.

ZHP takes issue with Plaintiffs noting that Baohua Chen is a member of the National People's Congress, which promulgated this law.  (Opp. Br. 31 n.12).  However,  Mr. Chen had to know of the impending passage of the law long before September 10, 2021, and if his company had wanted to comply with the Court's April 27 and May 12, 2021 Orders, it would have done so before the law became effective on September 1, 2021.

Nonetheless, the Court ultimately held that the Data Security Law did not even apply to the discovery in this case.  *Valsartan,* 2021 WL 6010575, at \*10 ("That injunction is inapplicable to these documents or indeed to any information produced in response to an FRCP discovery

request."). After receiving this decision and the above-quoted discussion of Rule 37 sanctions as well as this motion, ZHP told Plaintiffs that it would produce the Supplemental Production. The same day it filed its opposition, ZHP sent a production of documents to Plaintiffs. On February 8, 2022, ZHP confirmed that the production included Xiaofang (Maggie) Kong's complete custodial file, although it is still preparing the related privilege log. (Ex. 58). ZHP implied that the production did not include any other parts of the Supplemental Production, but they "hope[d] to be able to provide you with a timeframe for [rest of the] production later this week." (*Id.*). This halting production of bits and pieces of a long overdue, Court-ordered production of documents is not in good faith.

When ZHP made another production on February 9, 2022, Plaintiffs asked if the production contained anything for the Supplemental Production, but ZHP has not replied. (Ex. 59). A review of that production does not reveal any documents that appear to be related to the Supplemental Production. As a result, Plaintiffs' motion related to the Supplemental Production is not moot. ZHP's continued failure to produce the documents on top of this history of obstruction further establishes its bad faith.

**III.**

**THE REQUESTED SANCTIONS ARE APPROPRIATE**

Contrary to ZHP's efforts to deflect, Plaintiffs are not seeking sanctions as an alternative to proving their claims. (Opp. Br. 27). Rather, Plaintiffs are seeking sanctions in response to ZHP's continued refusal to comply with Court Orders directing important discovery so that Plaintiffs can develop the full record necessary to prepare expert reports and question experts including on liability, brief dispositive motions, and to try their case. The Court has already explained: "**PRC defendants must know from the outset they risk serious consequences if and when they fail to obey a U.S. court's order to compel discovery. These consequences arise**

9

**from the clearly enumerated authority under Rule 37, which U.S. courts wield as needed.**"

*Valsartan,* 2021 WL 6010575, at \*18 (emphasis added).  The time has come for ZHP to face the consequences of its repeated refusal to comply with this Court's Orders.  Given the significant nature of the unproduced witness and documents, this means the Court should strike and suppress ZHP and its subsidiaries' Answer and Defenses, deem the allegations in Plaintiffs' Master Complaints admitted with respect to ZHP and its subsidiaries for all purposes, and preclude ZHP and its subsidiaries from defending Plaintiffs' claims.  *See Abiola v. Abubakar*, 2007 WL 2875493, at \*20 (N.D. Ill. Sept. 28, 2007) (analyzing the defendant's failure to appear for a deposition due to a foreign court's order, and concluding that "the appropriate sanction is to enter a[n] order, as permitted by Federal Rule of Civil Procedure 37(b)(2)(A), that the allegations in plaintiffs' second amended complaint relevant to Abubakar's liability are to be taken as established for the purposes of this suit") (Ex 54).[3]

## IV.

### THE COURT HAS THE DISCRETION TO ISSUE SANCTIONS IT DEEMS APPROPRIATE

This Court has "broad discretion" in tailoring sanctions under Rule 37.  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1482 (9th Cir. 1992).  The Court could impose the litigation sanctions requested as well as monetary sanctions.  If the Court declines to issue the requested sanctions, any lesser sanctions must be severe enough to match the violations, and to significantly affect the finances of a billionaire and his multibillion-dollar company.  The sanctions must also be significant enough that ZHP does not say the outcome was a "draw."  (ECF 1908, p. 1).

---

[3] ZHP tries to distinguish this case by highlighting the following language: "[I]t is fair to infer that Abubakar never intended to comply with his side of the agreement, but only to take the benefits that he obtained from the other side." (Opp. Br. 25 n.10).  However, Plaintiffs have demonstrated ZHP's bad faith in its inadequate "attempt" to produce Baohua Chen for his deposition.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that this Court grant Plaintiffs'

motion for Rule 37 sanctions against ZHP and its subsidiaries.

Dated: February 18, 2022                                  Respectfully Submitted,

*/s/ Ruben Honik*                                          */s/ Daniel Nigh*
Ruben Honik                                                Daniel Nigh
HONIK LLC                                                  LEVIN, PAPANTONIO, THOMAS, MITCHELL
1515 Market Street                                           RAFFERTY & PROCTOR, P.A.
Suite 1100                                                 316 South Baylen Street
Philadelphia, PA 19102                                     Pensacola, FL 32502
PHONE: 267 435 1300                                        Phone: (850) 435-7013
ruben@honiklaw.com                                         dnigh@levinlaw.com


*/s/ Adam Slater*                                          */s/ Conlee S. Whiteley*
Adam Slater                                                Conlee S. Whiteley
MAZIE, SLATER, KATZ & FREEMAN, LLC                         KANNER & WHITELEY, LLC
103 Eisenhower Pkwy, 2nd Flr.                              701 Camp Street
Roseland, NJ 07068                                         New Orleans, LA 70130
Phone: (973) 228-9898                                      Phone: (504)-524-5777
aslater@mazieslater.com                                    c.whiteley@kanner-law.com

11