UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE:  VALSARTAN PRODUCTS          CIVIL ACTION NUMBER:
LIABILITY LITIGATION               19-md-02875-RBK-SAK
                                   CASE MANAGEMENT CONFERENCE
                                   via TELEPHONE CONFERENCE

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        February 28, 2022
        Commencing at 10:02 a.m.

B E F O R E:         THE HONORABLE ROBERT B. KUGLER
                     UNITED STATES DISTRICT JUDGE

                     THE HONORABLE THOMAS I. VANASKIE (RET.)
                     SPECIAL MASTER

A P P E A R A N C E S:

        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs

        KANNER & WHITELEY, LLC
        BY:  DAVID J. STANOCH, ESQUIRE
        701 Camp Street
        New Orleans, Louisiana  70130
        For the Plaintiffs

        OLIVER LAW GROUP P.C.
        BY:  ALYSON LOUISE OLIVER, ESQUIRE
        1647 W. Big Beaver Road
        Troy, Michigan 48084
        For the Plaintiffs

            Ann Marie Mitchell, Official Court Reporter
                  AnnMarie@AMreporting.com
                      (856) 906-8171

    Proceedings recorded by mechanical stenography; transcript
          produced by computer-aided transcription.

1   **A P P E A R A N C E S (Continued):**

2

3       DUANE MORRIS LLP
        BY:  SETH A. GOLDBERG, ESQUIRE
4       30 South 17th Street
        Philadelphia, Pennsylvania  19103
5       For the Defendants, Prinston Pharmaceuticals,
        Solco Healthcare U.S. LLC, and
6       Zhejiang Huahai Pharmaceuticals Ltd.

7       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
        BY:  CLEM C. TRISCHLER, ESQUIRE
8       One Oxford Centre, 38th Floor
        Pittsburgh, Pennsylvania  15219
9       For the Defendant, Mylan Pharmaceuticals, Inc.

10      GREENBERG TRAURIG LLP
        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
11      BY:  STEVEN M. HARKINS, ESQUIRE
        3333 Piedmont Road, NE, Suite 2500
12      Atlanta, Georgia  30305
        For the Defendants, Teva Pharmaceutical Industries Ltd.,
13      Teva Pharmaceuticals USA, Inc., Actavis LLC,
        and Actavis Pharma, Inc.

14      BARNES & THORNBURG LLP
        BY:  KARA KAPKE, ESQUIRE
15      11 South Meridian Street
        Indianapolis, Indiana 46204
16      For the Retailer Defendants and CVS Pharmacy, Inc., and
        Rite Aid Corporation

17

18  **ALSO PRESENT:**

19      SPECIAL MASTER GREGORY M. SLEET

20      SPECIAL MASTER LAWRENCE R. STENGEL

21      LORETTA SMITH, ESQUIRE
        Judicial Law Clerk to The Honorable Robert B. Kugler
22
        Larry MacStravic, Courtroom Deputy
23

24

25

 1          (PROCEEDINGS held telephonically before The Honorable

 2   Robert B. Kugler, United States District Judge, and The

 3   Honorable Thomas I. Vanaskie (Ret.), Special Master, at 10:02

 4   a.m.)

 5          JUDGE VANASKIE:  All right.  It's two minutes after

 6   10:00.  And I know things have slowed down.

 7          Do we have a court reporter on the phone?

 8          COURT REPORTER:  Yes, Your Honor.  It's Ann Marie

 9   Mitchell.

10          JUDGE VANASKIE:  Good morning.  Thank you for taking

11   care of this call today.

12          And if we can get started, this part of the call

13   should not last very long.  Again, follow the protocol that we

14   have in place.  If you're not speaking, please mute your

15   phone, and identify yourself when you are speaking.

16          Who will be addressing the matters for today's call

17   for the plaintiffs?

18          MR. SLATER:  Hi, Judge.  It's Adam Slater.  I think

19   it will just be issue by issue.

20          JUDGE VANASKIE:  All right.  Very well.  As in the

21   past.

22          Who will be the principal spokesperson for the

23   defense?

24          MR. GOLDBERG:  Good morning, Your Honor.  This is

25   Seth Goldberg for the defense and the ZHP parties.  And the

1    same is true with defendants.  We will take it issue by issue.

2           JUDGE VANASKIE:  Very well.  Good morning,

3    Mr. Goldberg.

4           MR. GOLDBERG:  Good morning.

5           JUDGE VANASKIE:  All right.  I have received your

6    agenda letters and plaintiff's amended agenda letter.  Thank

7    you for that clarification.

8           I take it that with respect to the scheduling of the

9    Daubert hearing, plaintiffs are of the view that they can have

10   their witnesses all on Wednesday of this week, March 2nd.

11          Is that correct, Mr. Slater?

12          MR. SLATER:  Yes, Your Honor, that's correct.

13          JUDGE VANASKIE:  All right.  Very well.

14          And I think on the question of the schedule and the

15   process, that's really a matter to discuss with Judge Kugler,

16   who will join our call shortly.  So I don't intend to do

17   anything else with respect to the scheduling of the Daubert

18   hearings and the process that is going to be followed in the

19   hearings.

20          I did want to ask, it seems to me -- you've raised

21   this issue with respect to the data breach at Marker Group,

22   but there's really nothing for us to be concerned about at the

23   present time.  Is that correct?

24          MR. STANOCH:  Your Honor, this is David Stanoch for

25   the plaintiffs.  I can address this briefly.

*United States District Court*

1           JUDGE VANASKIE:  Very well.

2           MR. STANOCH:  Your Honor is correct, we're not asking

3    for any ruling from Your Honor at this time.  We did want to

4    alert you to it.  And generally speaking, we did want to

5    discuss it, because we think certainly short of an order, we

6    should be able to agree to a few basic parameters that

7    defendants could take under advisement from Your Honor.

8    Simply, as our letter says, you know, we had to learn about

9    this ourselves for a number of our clients', you know,

10   personal information that was subject to the breach.  It looks

11   like defendants got a notification from their vendor, Marker

12   Group, about this weeks ago, and it wasn't until we started

13   asking questions about it that we even saw the letter or heard

14   from defendants about it three weeks later.

15          So we simply hope going forward that number one,

16   defendants ensure that their vendor, Marker Group, is properly

17   investigating the breach, because we're not the contracting

18   party.  Number two, that they ensure that the breach is fixed,

19   the vulnerability, especially for our clients.  And number

20   three, that they simply promptly inform us, you know, in a day

21   or two, not three plus weeks, about any material updates or

22   developments, again, because they're the contracting party

23   with their vendor.  We can certainly talk to Marker Group, but

24   we cannot really oblige them as a customer and contracting

25   party to do anything.

*United States District Court*

```
 1          JUDGE VANASKIE:  All right.  Who is addressing this
 2   issue for the defense?
 3          MS. LOCKARD:  Good morning, Your Honor, it's Victoria
 4   Lockard from Greenberg Traurig, and I'll be addressing this
 5   for the defendants.
 6          As we stated in our letter, I and Greenberg Traurig
 7   first learned of this on February 2nd.  We do use Marker in a
 8   number of litigations.  Obviously this issue goes far beyond
 9   valsartan.  You know, my understanding is there were
10   approximately 88 individuals in valsartan who were involved
11   and many others in other litigations.  Our firm has been in
12   discussions with Marker.  We're obviously taking it very
13   seriously and evaluating them as a vendor, so I do want to
14   give assurances to both to the plaintiffs and to the Court
15   that that is being done at the highest levels of my firm and
16   through our information security folks.
17          You know, however, the information that I think
18   plaintiffs seek really is better supplied by Marker who knows
19   more about the details of this breach, you know, when and how
20   it occurred.  And I, you know, don't think the best avenue of
21   information is for that information to come through, you know,
22   Marker to my information security team, to me, to plaintiffs.
23   I really think direct communication is best.  And I've offered
24   multiple times to make myself available and to set up a call
25   with Marker, including yesterday.  I emailed plaintiffs that
```

1    Marker is available on Thursday afternoon.

2           So we're working, I think, to try to get the

3    information that plaintiffs need and want.  You know, I also

4    want to say, you know, to the extent that there's any

5    suggestion that we are hiding or keeping information from

6    plaintiffs, you know, I certainly would not agree with that

7    whatsoever.

8           Just as a point of clarity, there was a class action

9    litigation filed against Marker back in January by one of the

10   firms that sits on the plaintiffs' steering committee in this

11   litigation.  So plaintiffs as a whole certainly knew about

12   this, or their leadership did, you know, well before I or my

13   firm did.

14          And likely, to be honest, you know, there -- you

15   know, certainly I can say there was some obligation for

16   plaintiffs to advise us on the defendants when they learned

17   about this.  But, you know, I don't want to stir the pot in

18   that regard.

19          I think at this point the parties just need to work

20   together to get the information.  We'll be happy to be

21   collaborative on that, but I don't think this is proper

22   subject matter for an order that, you know, dictates that the

23   defendants are to do -- you know, to supply or do anything

24   along the lines that Mr. Stanoch has suggested.

25          So I'll stop there.  I think I've made a record on

1    that.  And I'm happy to answer any questions from the Court.

2         JUDGE VANASKIE:  Mr. Stanoch, what is your view with

3    respect to having a direct communication with Marker Group as

4    suggested by Ms. Lockard?

5         MR. STANOCH:  Your Honor, we believe that's

6    appropriate and that's fine.  Mr. Lockard's correct, she

7    emailed us yesterday, Sunday, about a potential call we can

8    have.  We're fine to proceed that route, but of course we

9    think it should proceed in tandem or in parallel with

10    defendants' own efforts.  And it sounds like defendants are

11    taking some efforts on their own.  I would just ask that, you

12    know, that we be kept abreast of their own efforts with their

13    own vendor while we attempt to reach out as well.

14         JUDGE VANASKIE:  All right.  Ms. Lockard?

15         MS. LOCKARD:  Well, Your Honor, we're happy to keep

16    plaintiffs informed generally.  But in terms of my firm's

17    communications with Marker, you know, what types of audits

18    they're doing, this goes well beyond valsartan, you know.  I

19    don't think it's appropriate for, you know, plaintiffs to

20    embed themselves in our discussions with Marker or assurances,

21    you know, requiring us to provide assurances of that nature.

22         I mean, we can certainly pass on, you know, in

23    general terms what we've learned.  And, you know, we have

24    learned that Marker has made strides in terms of beefing up

25    their security, you know, and they've retained a consultant

*United States District Court*

1  and so forth and so on.

2         But, you know, I think those efforts, which are the

3  subject of our discussions to ensure they're doing their job,

4  you know, that is something that needs to be discussed I think

5  with plaintiffs directly as well.  Plaintiffs can ask whatever

6  questions they want.  But I do not think it's appropriate that

7  my firm be required to update plaintiffs with respect to

8  discussions with one of our vendors that we use, you know,

9  beyond this litigation generally.

10        JUDGE VANASKIE:  All right.  Yes.  I will not impose

11 any freestanding obligation on the part of the defense to

12 inform plaintiffs' counsel about their communications with

13 Marker Group that concern matters outside this litigation.

14        I do encourage plaintiffs to have that direct

15 discussion with the Marker Group that has been offered.  And

16 then I would expect that there would be periodically updates

17 on where the investigation stands right now.  But I don't

18 think it's appropriate at this point in time to enter any

19 order imposing any obligation on the part of the defense to

20 keep plaintiffs' counsel abreast of developments with respect

21 to what I imagine is an investigation that extends far beyond

22 this particular case and impacts a number of individuals that

23 are not part of this litigation.

24        So I think all I can indicate right now is that the

25 plaintiffs take advantage of the opportunity to have direct

1    communication with Marker Group and learn for themselves what

2    is being done in terms of the breach having been closed, that

3    the breach is not ongoing, and what steps Marker Group is

4    proposing to take to protect the individuals adversely

5    affected.

6            So I think that's all we can accomplish with respect

7    to that particular matter now.

8            The next issue that I had on the agenda was the

9    request for dismissal of CVS from the medical monitoring

10   master complaint.

11           And who will be addressing this issue on behalf of

12   the plaintiffs?

13           MR. STANOCH:  Your Honor, this is David Stanoch

14   again.  I believe I will.

15           JUDGE VANASKIE:  All right.  Very well.

16           MR. STANOCH:  Judge, you'll recall, we had a very

17   similar conversation about this the last CMC or two ago, about

18   different named plaintiffs and defendants' request for

19   dismissal of their claims.

20           We received CVS's request.  We're evaluating the

21   request.  With all of the prior requests, we've evaluated them

22   thoroughly and in good faith.  And I think in almost every

23   case, if not every case, we have ultimately agreed to dismiss

24   named plaintiffs or claims.

25           We'll approach this request the same way.  There's no

1    reason for defendants or anyone to think we will not,

2    especially given our track record on this.  We have no desire

3    for inefficiency for the parties or the Court either, but we

4    don't think it's appropriate for any action by Your Honor at

5    this time.  As we discussed at the last CMC, you know, we

6    cannot be coerced in a CMC discovery setting to dismiss claims

7    or parties on merits when at worst case, this is a summary

8    judgment or class cert briefing issue which can be evaluated

9    on the purportedly disputed facts at that time.

10           But again, we will continue to look into and we'll

11   get back to them.  So if we can agree to something beforehand,

12   we will, but otherwise, we don't think there is any action

13   that should be taken at this time.

14           JUDGE VANASKIE:  Very well.  Thank you, Mr. Stanoch.

15           Who is addressing this issue for the defense?

16           MS. KAPKE:  Kara Kapke for CVS, Your Honor.

17           JUDGE VANASKIE:  Very well.

18           MS. KAPKE:  I appreciate the opportunity to be heard.

19           I think it goes without saying that being a party to

20   medical monitoring class action is a lot of work.  Above and

21   beyond just being a defendant in the economic loss class

22   action and the personal injury action, there are several

23   experts offering opinions specific to the medical monitoring

24   class.  There will be briefing specific to whether the medical

25   monitoring class can or should be certified.  But there is not

 1   a single plaintiff who alleges that he or she has a medical

 2   monitoring claim against CVS.

 3         So we're left here wondering why should CVS be forced

 4   to defend itself in the medical monitoring cause of action.

 5   We're not trying to make a summary judgment argument, and I

 6   respect and appreciate and understand plaintiffs' concerns

 7   about premature merits arguments.  But that's not why we're

 8   here.

 9         If plaintiffs had ever raised to us in response to my

10   multiple letters a reason why CVS should actually remain in

11   the medical monitoring class action, we might not be here

12   raising this issue.  We don't want to waste the Court's time

13   with these.  But when we raise these issues of efficiency,

14   we're not getting a response from plaintiffs.

15         So simply, you know, once Mr. O'Neill's medical

16   monitoring claim was dismissed, there were simply no

17   plaintiffs who asserted medical monitoring claims against CVS

18   who filled at CVS.

19         We're not trying to raise a difficult issue or an

20   issue that requires full-fledged briefing.  We're not trying

21   to raise merit or fact-based issues, but we would request that

22   plaintiffs be ordered to show cause why CVS should not be

23   dismissed from the medical monitoring complaint consistent

24   with the procedure outlined in Your Honor's prior orders.

25         MR. STANOCH:  Your Honor, if I may.

```
 1              JUDGE VANASKIE:  You may, Mr. Stanoch.

 2              MR. STANOCH:  Thank you, Judge.

 3              We're only in this position, Your Honor, because we

 4    have assessed in good faith prior requests to dismiss prior

 5    named plaintiffs, which we ultimately did, which now we're

 6    seeing was a potential domino sandbag tactic to end up with

 7    certain other claims and defendants down the road potentially

 8    being dismissed.

 9              Ms. Kapke says she's not arguing the merits.  Well,

10    they submitted a brief arguing law and facts to Your Honor in

11    their CMC letter.  This is not the appropriate time,

12    procedurally or otherwise, to address these issues.

13              They will have over 100 pages of briefing on class

14    cert.  Nothing stops them from taking the two-and-a-half pages

15    in their letter and putting it into their class cert brief, at

16    the very worst.

17              So we don't think it's appropriate to address this

18    now.  There is no show-cause process on the class side.  There

19    never has been a show-cause process on this side.  In fact, we

20    think it's going to be inefficient to inject a side merits

21    argument and discussion now when the parties are working so

22    hard to depose, have Daubert hearings, and submit class

23    certification briefing and everything else going on.

24              We've said we'll look at it.  We are looking at it.

25    We'll get back to Ms. Kapke with a response.
```

*United States District Court*

```
 1            JUDGE VANASKIE:  Anything else on this issue?
 2   Ms. Kapke?
 3            MS. KAPKE:  No, thank you, Your Honor.  I'll just
 4   reiterate that there is a lot of work, like Mr. Stanoch said,
 5   in being a part of a class action.  And when we don't have any
 6   plaintiffs in the class action, it's really unfair, even under
 7   Rule 11, to force us to defend ourselves in the medical
 8   monitoring class action.  And it's not an insignificant or
 9   insubstantial amount of work to be a part of that.
10            And so I think, you know, we appreciate plaintiffs'
11   efforts in being efficient and going down this path of
12   dismissing appropriate parties, but we do think that the order
13   to show cause as was done initially makes sense.
14            Thanks, Your Honor.
15            JUDGE VANASKIE:  Well, so far -- thank you very much.
16            So far it has been my experience, at least, that
17   while it might take some time, but plaintiffs do ultimately
18   make a decision on voluntary dismissal of individual
19   defendants like CVS where there are no named plaintiffs that
20   have asserted a claim against or have asserted a basis for a
21   claim against a party like CVS.
22            Now, I know you'd like it to happen sooner.  And I am
23   sensitive to the fact that you may be incurring expenses and
24   litigation fees as the matter continues to pend.  But I'm not
25   going to start the show-cause process at this time on this
```

1    matter.

2           Let's take it up again in a couple weeks when we have

3    our next conference.  Hopefully plaintiffs will have had

4    enough time to consider the matter and take the appropriate

5    action.

6           I won't rule out issuing a show-cause order, but I

7    won't do it at this time.  All right?

8           MS. KAPKE:  Thank you.  Thank you very much.  I

9    appreciate that.

10          MR. STANOCH:  Thank you, Judge.

11          JUDGE VANASKIE:  Thank you all very much.

12          Now, I think, other than the Daubert scheduling and

13   Daubert process issues, there's nothing else for me to address

14   at this time.  Is that accurate?

15          MR. GOLDBERG:  I think that's right from defendants,

16   Your Honor.

17          MR. SLATER:  I believe so, Your Honor.

18          JUDGE VANASKIE:  All right.  So let's see if we can

19   get Judge Kugler on the phone.

20          Loretta, are you on the call?

21          I hear no response.  I'm going to drop off this call,

22   call Judge Kugler, who will then join us.  All right?

23          Thank you.

24          (Recess at 10:22 a.m. until 10:26 a.m.)

25          JUDGE VANASKIE:  Judge Kugler let me know that he

1   will be dialing in.

2           JUDGE KUGLER:  Good morning, it's Judge Kugler.  How

3   is everybody?

4           RESPONSE:  Good morning, Your Honor.

5           JUDGE SLEET:  This is Judge Sleet.  Could I just

6   interrupt to ask a quick question if it's okay?

7           JUDGE KUGLER:  Yeah.

8           JUDGE SLEET:  Great.  Judge Stengel has to leave the

9   call shortly.  We just wanted to check, Judge Kugler, to see

10  if you expected to talk with us today afterwards or arrange

11  another time.

12          JUDGE KUGLER:  We can talk afterwards, Judge Sleet.

13  If you want to talk this afternoon, that's fine.  Whatever is

14  convenient for you two.

15          JUDGE SLEET:  We'll accommodate your schedule, Judge.

16  You tell me.

17          JUDGE KUGLER:  Well --

18          JUDGE SLEET:  Judge Stengel is getting off to attend

19  a mediation, so I'm not sure that I believe -- a Zoom event, a

20  Zoom mediation all day, so I'm not sure that today would be

21  the best day.

22          JUDGE KUGLER:  Want to do it tomorrow morning?

23          JUDGE STENGEL:  This is Judge Stengel.  Tomorrow

24  morning would be great.  That would be great.

25          JUDGE SLEET:  Let me quickly check, please, Judge,

1   hold on just a second.

2        Good for me as well.

3        JUDGE KUGLER:  Hang on a minute.  Let's see what

4   we've got tomorrow.  March 1st.  Unbelievable.  What the heck

5   happened?

6        I am available -- let's see.  I've got some things in

7   the morning, phone and Zoom.  How about 10:30?  We'll set up

8   something.  Can we do it 10:30 tomorrow?

9        JUDGE SLEET:  Good for me.

10        JUDGE STENGEL:  Perfect.  That's great.

11        JUDGE SLEET:  Could Loretta send us a dial-in number,

12   Judge?

13        JUDGE KUGLER:  We'll get that to you.

14        JUDGE SLEET:  Okay.

15        MS. SMITH:  Would you prefer a Zoom, Judge Sleet and

16   Judge Stengel?  This is Loretta.

17        JUDGE SLEET:  I think a Zoom would be better.

18        MS. SMITH:  I'll be glad to send you -- I'll send you

19   an invite.

20        JUDGE SLEET:  Thank you.  Thanks, Judges.

21        JUDGE KUGLER:  Thank you, everybody.

22        Okay.  We have some things to talk about this

23   morning.

24        First, an update on the court, COVID.  We are

25   starting again back in with trials and all that stuff.

1          I think it looks like maybe in April we can start

2    in-court proceedings if you have anything to schedule.  So

3    let's keep an eye on that.

4          Anyway, there are a number of orders to show cause

5    type of things.

6          And Mr. Harkins, if you are on the phone, do you want

7    to go through that?

8          MR. HARKINS:  Yes.  Good morning, Your Honor.  This

9    is Steve Harkins with Greenberg Traurig for Teva and the joint

10   defense group.

11         Consistent with the first set of cases on our agenda

12   statement, we are not requesting dismissal of any cases at

13   this time.  The issues in the Louissant matter are resolved,

14   and that can be withdrawn.  And we request that the Mills and

15   Thorn matters be continued, returnable at the next case

16   management conference while the parties continue to work on

17   those issues.

18         JUDGE KUGLER:  Okay.  Louissant, that order to show

19   cause will be dismissed.  And the Mills and Thorn matter will

20   be relisted for next time.

21         Now, you're seeking orders to show cause in six more.

22         Any additions or changes on that?

23         MR. HARKINS:  One update, Your Honor.  The issues in

24   the Robert Cook case, number one on our list, are resolved and

25   that request is withdrawn.  At this time we would request

*United States District Court*

1  orders to show cause returnable at the next case management

2  conference for the other five cases:  Martin, Whitfield,

3  McCall, Harris, and Williams.

4          JUDGE KUGLER:  Any plaintiffs' counsel want to be

5  heard on this?

6          MS. OLIVER:  Yes, Your Honor.  This is Alyson Oliver

7  on behalf of Tracy Whitfield.

8          Judge, we are working hard to try to resolve these

9  deficiencies.  We unfortunately have had some communication

10 troubles with our client.  But we're making progress and we

11 would ask for an additional 30 days to get this done.

12         JUDGE KUGLER:  Well, you'll have 30 days because the

13 order to show cause won't be returnable until a month from

14 now.  So if you still have difficulties and you can't work it

15 out with your adversary then I'll hear you at that point.

16 Okay?

17         MS. OLIVER:  All right.  Thank you, Your Honor.

18         JUDGE KUGLER:  Anybody else?

19         (No response.)

20         JUDGE KUGLER:  All right.  We'll issue orders to show

21 cause on those five matters.

22         And then there are quite a few -- quite a few.  28

23 that you find deficiencies in and you want to list again; is

24 that right?

25         MR. HARKINS:  Your Honor, we have two updates on that

```
 1   table.
 2          The issues have been corrected in number 11,
 3   Claudette Pelletier, and number 28, William Webb.  We will not
 4   be relisting those.  The remaining 26 cases, we would intend
 5   to provide a status listing for those at the next case
 6   management conference.
 7          JUDGE KUGLER:  Okay.  Then the other 26 we'll see
 8   next time unless you work it out before then.  Okay?
 9          MR. HARKINS:  Thank you, Your Honor.
10          JUDGE KUGLER:  Any others on the list that you want
11   to talk about, Mr. Harkins?
12          MR. HARKINS:  Nothing further from the defendants.
13          JUDGE KUGLER:  Okay.
14          The next item is the CVS issue, CVS.
15          Reading your papers, Mr. Goldberg, I understand your
16   concerns.  And they're legitimate.  But the plaintiffs say
17   they understand your concerns.  They have voluntarily
18   dismissed in the past and they just need some time to look
19   this over.
20          So why don't we -- if it doesn't get resolved, why
21   don't we talk about it next time.  Okay?
22          MR. HARKINS:  Thank you, Your Honor.  I believe Judge
23   Vanaskie made that ruling in the earlier call.
24          JUDGE KUGLER:  Okay.
25          MR. GOLDBERG:  Kara Kapke from CVS is on the line if
```

1   she has anything to add.

2          MS. KAPKE:  Yes, Your Honor.  We're fine with that

3   procedure.  This is Kara Kapke.

4          JUDGE KUGLER:  All right.  I read with interest the

5   data breach.  I'm not sure there's anything we can do about it

6   at this point.

7          If it's any consolation to the plaintiffs who had

8   their personal information breached, mine has been breached a

9   number of times, including my entire personnel file from

10  government service and all my medical records, credit card

11  information and other breaches.  It's not pleasant to go

12  through, but it happens.

13         But I'm not so sure there's anything I can do.  I

14  imagine these plaintiffs may have a lawsuit.  I don't know.

15         MS. LOCKARD:  Your Honor, it's Victoria Lockard for

16  the defendants in Greenberg Traurig.

17         Judge Vanaskie also addressed this.  I think he was

18  of a similar view.  But in fact there is a lawsuit that has

19  been filed already, so --

20         JUDGE KUGLER:  Of course.

21         MS. LOCKARD:  But we'll work with the plaintiffs.

22  And, you know, Vanaskie had encouraged us to get a call on the

23  books with Marker so that plaintiffs can get the information

24  they're seeking.  So we will work together to make that

25  happen.

1          JUDGE KUGLER:  Okay.  Who wants to talk about the

2     defendants' objections to the hearings that we're going to

3     start this week?

4          MR. TRISCHLER:  Your Honor, good morning, this is

5     Clem Trischler.

6          I think I can speak to that issue on behalf of the

7     defense group.  I represent the Mylan entities.

8          JUDGE KUGLER:  Okay.  I have some questions for you,

9     Mr. Trischler.

10          Do you acknowledge that you're not entitled to a

11     hearing?

12          MR. TRISCHLER:  I think that there is case law in the

13     Third Circuit suggesting that a hearing is advisable and often

14     warranted.  I think that there is some discretion with the

15     Court on that, so I won't sit here and tell the Court that I

16     think in each and every instance, a Daubert -- a full Daubert

17     hearing has to be permitted.

18          JUDGE KUGLER:  Do you want to cite a case to me that

19     says that?

20          MR. TRISCHLER:  I can't cite one off the top of my

21     head, Your Honor, but I'd be happy to look while we -- have

22     someone look while we speak and perhaps by the time we're done

23     provide you with case law.  But I believe there's certainly

24     case law out there that I've seen that indicates that where

25     requested, a hearing is recommended.

1              JUDGE KUGLER:  Well, no case says it's recommended.

2    I'll go through them right now.

3              First of all, we start with Kumho, K-U-M-H-O, Tire,

4    the Supreme Court case which said it's really discretionary

5    with the trial court.

6              The first real Third Circuit case that said anything

7    about this was Padillas, P-A-D-I-L-L-A-S, which is at 186 F.3d

8    417.  It's a Third Circuit case from 1999 which said that a

9    hearing is not required whenever a Daubert objection is raised

10   to proffered expert testimony.  But the Third Circuit reversed

11   and sent that one back, said there should have been more in

12   that case, but those are a little unusual.  That was a product

13   liability machine guarding case in which the defendant moved

14   for summary judgment.  The plaintiff's response consisted of

15   a -- what the Court referred to as a scant and conclusionary

16   expert report.  And the trial judge in that case looked at the

17   expert report and said there was really no methodology to

18   this, chucked the report, granted summary judgment.

19             The Third Circuit said, well, you should have really

20   gotten more -- given the plaintiff more of an opportunity to

21   explain their side of the case before you grant summary

22   judgment.  Okay.

23             But then you had Oddi, O-D-D-I, v. Ford Motor

24   Company, 234 F.3d 136, in which the plaintiff again said they

25   were denied the right to a Daubert hearing.  The Third Circuit

1   noted that the district court already had before it the

2   depositions and affidavits of plaintiffs' experts.  Nothing

3   else was required.  That was Judge McKee.

4          And then in Henry v. St. Croix, 572 F.App'x 114, the

5   court noted that no hearing was necessary in that case because

6   the record in that case was immense.

7          So let's go through what we have here, Mr. Trischler.

8          You received all these expert reports timely.

9   Correct?

10         MR. TRISCHLER:  Yes.  We received expert reports from

11  the five general causation witnesses that the plaintiffs have

12  identified, Your Honor.

13         JUDGE KUGLER:  And you took their depositions.

14  Correct?

15         MR. TRISCHLER:  We did.

16         JUDGE KUGLER:  And no one prevented you, other than

17  the standard objections, from asking any questions you wanted

18  of those five experts, did they?

19         MR. TRISCHLER:  I haven't been through each and every

20  deposition.  I don't recall them all.  I'm sure there were

21  objections to questions, but there was no -- we certainly had

22  an opportunity to raise those objections with the Court if we

23  so desired.

24         JUDGE KUGLER:  Each of those transcripts is hundreds

25  of pages.  Correct?

```
 1              MR. TRISCHLER:  That is true.

 2              JUDGE KUGLER:  So the defendants had a full and fair

 3    opportunity to question each of the plaintiffs' experts.

 4    Correct?

 5              MR. TRISCHLER:  On that issue, Your Honor, I take

 6    some issue with it, because one of the issues that we found

 7    and one of the reasons why I think an evidentiary hearing is

 8    extremely important is that a number of the witness were quite

 9    evasive in their depositions.  We saw a lot of long-winded

10    answers that were designed to evade the questions that were

11    being asked and to prevent the presentation of a clear record.

12              That's why on many occasions, including one witness

13    that I can recall in particular, Dr. Panigraphy, we had to go

14    to court in front of Special Master Vanaskie and ask for more

15    time to depose the witness, because we couldn't get

16    straightforward answers to questions.  And we were given more

17    time.

18              But there's quite a difference between being able to

19    ask questions in deposition in an evidentiary hearing in front

20    of Your Honor, where we can get direct answers to the key

21    questions in this case that need to be answered.  And the key

22    question obviously is whether the small amounts of

23    nitrosamines that were found in valsartan-containing

24    medications are capable of causing cancer.  I think an

25    evidentiary hearing has a great value.  And now that we're
```

1    seeing the declarations, you know, we simply do not believe,

2    with all due respect, that the procedures that have been put

3    in place for the upcoming Daubert hearing are conducive to a

4    full development of the record.

5            JUDGE KUGLER:  Mr. Trischler, let's go back to the

6    question I asked.  How about that?

7            MR. TRISCHLER:  Sure thing, Your Honor.

8            JUDGE KUGLER:  You had a full and fair opportunity to

9    ask these experts whatever you wanted to ask them.  And if you

10   needed the assistance of the Court, that was available.

11   Correct?

12           MR. TRISCHLER:  That's correct.  And we availed

13   ourselves of that assistance when necessary.

14           JUDGE KUGLER:  Now, then you collectively filed

15   timely your motions to bar their testimony of these experts.

16   Correct?

17           MR. TRISCHLER:  Yes.

18           JUDGE KUGLER:  And no one prevented you, in filing

19   your motions, from raising any issue you thought this Court

20   should be aware of regarding the testimony of these experts.

21   Correct?

22           MR. TRISCHLER:  We raised challenges to each of the

23   general causation experts asserting the legal bases upon which

24   we believe their testimony to be inadmissible.  Yes, sir.

25           JUDGE KUGLER:  So you selected the grounds upon which

*United States District Court*

```
 1    your motions rest.  Isn't that right?
 2              MR. TRISCHLER:  Yes.  No one else selected them for
 3    us.
 4              JUDGE KUGLER:  And collectively, the opening briefs,
 5    the reply brief, the exhibits, attachments, thousands and
 6    thousands of pages.  Correct?
 7              MR. TRISCHLER:  I've not counted, Your Honor, but
 8    that's -- I don't take issue with the page count.  And that's
 9    because of the significance -- the undeniable significance and
10    importance of this issue to this litigation.  Each of these
11    experts filed reports that are hundreds of pages long, that
12    purport to assert various reasons why their general causation
13    testimony is reliable and supported by good scientific
14    grounds.  There's a lot of work that goes into evaluating that
15    issue, a lot of questions that need to be answered.
16              So yes, there was a lot of paper.  And we certainly
17    believe that an evidentiary hearing and argument on these
18    issues will further help the Court in working its way through
19    these -- this somewhat complicated issue that has been briefed
20    in thousands and thousands of pages.
21              JUDGE KUGLER:  Then you had the opportunity to
22    present declarations on behalf of each of your experts.
23    Correct?
24              MR. TRISCHLER:  The Court did provide that
25    opportunity.  I don't think that goes necessarily to the issue
```

```
 1    of what methodologies the plaintiffs' experts relied upon and
 2    whether their experts have a good scientific basis for their
 3    opinions, but the Court did allow an opportunity to supplement
 4    the record through depositions, absolutely.  Or through
 5    declarations.
 6            JUDGE KUGLER:  Having read all these declarations
 7    that you and the plaintiffs did precisely what the opportunity
 8    presented you with, which was to clear up what might have been
 9    some lingering questions as a result of the briefing and the
10    fact that the depositions were done before the briefing was
11    done.  But nobody restricted anybody's ability to exempt any
12    declaration from any expert on any subject.  Correct?
13            MR. TRISCHLER:  Well, Your Honor, the issue -- the
14    issue that I see with the supplemental declarations, in
15    listening to what Your Honor has suggested as far as how you
16    foresee the hearings proceeding later this week, is that the
17    experts are going to be -- any examination of the experts is
18    going to be limited to what's in their supplemental
19    declarations.
20            So in the case of the five plaintiffs' witnesses,
21    there have been -- there's two who submitted no declaration.
22    So in effect, there's -- two of the five general causation
23    witnesses relied upon by the plaintiffs are shielded from any
24    hearing --
25            JUDGE KUGLER:  Well, that's not true.  That's not
```

```
 1   correct at all.  You had hundreds of pages of deposition
 2   testimony of those too.  If you had any other questions to ask
 3   them, you certainly could have done so.  You had the
 4   opportunity, didn't you?
 5           MR. TRISCHLER:  We had the opportunity to depose
 6   them, Your Honor.  I simply disagree that the deposition ought
 7   to be the sole basis upon which to evaluate the reliability of
 8   expert testimony.
 9           JUDGE KUGLER:  Well, it's not the sole basis.  I also
10   have the reports and the extensive briefing.  So how can that
11   be the full basis for me to make a decision?
12           MR. TRISCHLER:  I don't see the harm in -- on an
13   important issue like this in compelling the proponent of the
14   expert testimony to bring the witness in so that that witness
15   can be cross-examined in front of the Court so that we can
16   present other evidence beyond just cross-examination,
17   including testimony from other witnesses, to talk about why
18   that testimony is not relevant, doesn't meet the standards for
19   admissibility under Rules 702 and 703.
20           I don't see -- I don't see the harm in that, Your
21   Honor.  Certainly, yes, we've had an opportunity to take a
22   deposition and to ask any question that we wanted.  But I
23   don't believe the deposition should be -- should preclude
24   further analysis or further scrutiny of the testimony of these
25   witnesses.
```

```
 1              JUDGE KUGLER:  Mr. Trischler, right now, in some of

 2     the letters that were submitted to the Court, you say that you

 3     want the opportunity to present other evidence.  But you've

 4     done that, haven't you?  Your experts have commented

 5     extensively on the plaintiffs' experts, haven't they?

 6              MR. TRISCHLER:  Yes, they do in their reports, Your

 7     Honor.

 8              JUDGE KUGLER:  Have any material facts changed since

 9     you submitted these briefs?

10              MR. TRISCHLER:  Well, I would say no, because there

11     was no scientific basis for the opinion testimony to begin

12     with and there hasn't been any offered since, so in that

13     sense, no.

14              JUDGE KUGLER:  Has there been any change in the law

15     since you submitted these thousands of pages of briefing and

16     exhibits?

17              MR. TRISCHLER:  No.  The Court is -- the Court's

18     gatekeeping responsibility hasn't changed, and the standard

19     for the admissibility of that testimony has not changed.

20              JUDGE KUGLER:  Are you somehow claiming that you or

21     any of the defendants were deprived of an opportunity to

22     present to this Court whatever you wanted this Court to know

23     regarding these experts?

24              MR. TRISCHLER:  What I'm suggesting -- what I'm

25     trying to suggest, Your Honor --
```

1          JUDGE KUGLER:  Mr. Trischler, is that a no or a yes?

2          MR. TRISCHLER:  What I'm trying to suggest, Your

3  Honor --

4          JUDGE KUGLER:  Mr. Trischler, is that a no or a yes?

5          MR. TRISCHLER:  It's a "no" in the sense that I

6  believe a hearing with an opportunity to further develop the

7  record would be -- would be the fairest approach to -- for the

8  Court to follow and provide an opportunity to more fully

9  develop the record on this important...

10         JUDGE KUGLER:  So all I've heard and all I've read,

11 two letters, was that defendants want an opportunity to

12 develop the record when they spent months and thousands of

13 pages doing so, and cannot tell me what it is that they missed

14 that isn't there.  There seems to be this theory that if they

15 put on this theatrical production with these witnesses,

16 somehow I'm going to come to like one side's witnesses over

17 the other.  That's not my job.  That's not what the Supreme

18 Court or Third Circuit have told me to do.

19         I think there's a tremendous misunderstanding here of

20 the purpose of Daubert hearings on these Daubert motions.

21         They've become ubiquitous in the practice of law.

22 And I see them now in every case that I have.

23         I think this goes well beyond -- this practice goes

24 well beyond the contemplation of the Supreme Court or the

25 rules committee when they drafted 702 and amended 702.

 1            And I've got to tell you, having read and considered

 2    hundreds of these motions, the vast majority of them are not

 3    well thought out.  In fact, I question why some of these

 4    motions are even brought.

 5            Some of these experts are so weak that tactically I

 6    think counsel who are opposing these experts would be better

 7    off just letting them testify and then cross-examining them

 8    into oblivion.

 9            But I get it.  No one takes a civil case to a jury

10    trial anymore so all the action now are in these pretrial

11    skirmishes.  I get it.

12            But let's talk about Daubert.  I've talked about this

13    a little bit before.  I want to talk about it and tell you a

14    little bit more where we're going with this.  I don't want

15    there to be any surprises where we're going with this.

16            Now, I'm old enough to have practiced law under the

17    old Frye, F-R-Y-E, standard in which the proponent had to show

18    that the opinion was generally accepted in the relevant

19    scientific community.

20            And that didn't work out so well, because, you

21    know -- I don't want to go into the history of this, but you

22    had all these cancer cluster cases around landfills and

23    Superfund sites and industrial sites.  And there were no

24    studies whatsoever that would make the linkage.  So the people

25    who claimed to be injured as a result of those exposures had

1    no ability to seek compensation.

2         So they changed the rules.  The Supreme Court came

3    out with Daubert, which would permit novel scientific

4    testimony on three conditions.  One was qualifications.  Well,

5    that's really never an issue.  It's not an issue in this case.

6         Another one was what the former Chief Judge and the

7    late Ed Becker used to call fit or relevance.  Don't see much

8    of those anymore.

9         But there's this intense focus on methodology now, to

10   make sure that these opinions being generated, given by these

11   so-called experts are arrived at the same way good scientists

12   would arrive at their opinions.

13        But you got to understand that Daubert is not --

14   Daubert is not a dress rehearsal for trial.  And the Court, as

15   I've said previously, has an extremely limited role.  And my

16   role is not to pick which side has the better witnesses.

17        MR. TRISCHLER:  Your Honor --

18        JUDGE KUGLER:  The gatekeeper function that I have

19   and district courts have is very circumscribed by the Supreme

20   Court and the Third Circuit.  It's not to weed out weak

21   science, it's to weed out what some people have called junk

22   science, that is, science which no reasonable scientist could

23   ever support.

24        And I'll remind you what the Supreme Court wrote in

25   Daubert.  This is at page 152.

 1          Vigorous cross-examination, presentation of contrary

 2    evidence and careful instruction in the burden of proof are

 3    the traditional and appropriate means of attacking shaky but

 4    admissible evidence.

 5          Notice the use of the word "shaky."

 6          What Judge McKee wrote in the Oddi, O-D-D-I, v. Ford

 7    Motor case:  That the analysis of the conclusions themselves

 8    is for the trier of fact where the expert is subject to

 9    cross-examination.  And the evidentiary requirement of

10    reliability is lower than the merits standard of correctness.

11    The standard for determining scientific reliability of a

12    proffered expert is not that high.  The test is not whether

13    the expert might have done a better job.  That's at 234 F.3d

14    155.

15          Now, look, I get it.  Here almost all the experts on

16    both sides have some weaknesses.  The fact remains that pretty

17    much all of them use the same general methodology, which is

18    review of the relevant literature.  They went over it in the

19    beginning of their reports.  It's all there.  And you

20    questioned them extensively about it.

21          All of them agree that human clinical trials are not

22    possible.  It's unethical.  But they all looked at animal

23    studies and observational studies, statistical analyses and

24    all that kind of stuff.  And this is what scientists do.  Then

25    they chose which of the data they felt is most important and

1  which is less so, which everyone on both sides refers to as

2  cherry-picking, you know.  And the defendants rely on the

3  Pottegard, P-O-T-T-E-G-A-R-D; and Goom, G-O-O-M; Yoon,

4  Y-O-O-N; and other studies.  The plaintiffs place a lot of

5  stock in Hidajat, H-I-D-A-J-A-T.

6          But the point is they all use the same methodology.

7  They just gave different emphasis to different things.  And

8  this is a methodology that is clearly accepted by all the

9  scientists in the field.

10          Now, look, I know, and you've cited the cases where

11  there are some judges around the country who have done a deep

12  dive and drilled down into all these studies to look at the

13  underlying data.  And then they pick which size and which

14  studies they think are the more reliable and the consequences

15  that has for an expert's opinion.  That is not my job, folks,

16  and I'm not doing that.  That's not what the Supreme Court and

17  the Third Circuit have told me that I have to do.

18          All these expert reports have weaknesses which you,

19  all of you, have done a great job pointing out.

20          But again, as the Supreme Court and the Third Circuit

21  have said, my concern is not weak opinions or opinions that

22  might be better.  I'm not going to make any determination.

23  This is not a dress rehearsal, which side has the better

24  witnesses.  I'm not going to make any determination as to the

25  relative strengths of the witnesses or the underlying data.

1          Take, for example, that these animal studies that

2     everybody talks about.  No question they're fraught with

3     danger when you're trying to extrapolate into humans.

4     Everybody knows that.

5          But those scientists I'm aware of who completely

6     disregard an animal study, that's not what they do.  They all

7     look at them and draw whatever conclusions they think are

8     appropriate for the reasons that they give.

9          And the Hidajat study we just talked about,

10    defendants are right.  There are some problems with that

11    study.  It's inhalation, it's not ingestion.  It doesn't

12    control for other factors that can cause cancer, like smoking.

13    Pointing out their strengths, it's a lot of people over a long

14    time, 47 years or something.  It's not up to me to determine

15    whether or not these studies are appropriately considered,

16    because I'm focusing on the way they came to their opinions.

17    And scientists come to their opinions by looking at studies.

18         So I'm not going to be focusing on that.  I'll be

19    focusing on the methodology.  I don't care what the

20    conclusions are.  I don't care whose side it benefits.  I just

21    want to know -- and it's laid out in the depositions.  It's

22    laid out in the reports.  It's laid out, I think, for the most

23    part in these declarations as to how they got where they got.

24         So on Wednesday, that's all we're going to talk

25    about.

```
 1              All right.  Now, what time are we starting Wednesday?
 2              MR. SLATER:  Hello, Your Honor.  This is Adam Slater.
 3    We thought we would seek Your Honor's guidance on that.
 4              We're ready to start, if you want to start at 9:00,
 5    9:30, 10:00, whatever you want to do.  We'll be ready to begin
 6    at that time.
 7              JUDGE KUGLER:  9:30.  Who is first?
 8              MR. SLATER:  First will be Dr. Lagana.
 9              JUDGE KUGLER:  Lagana.  Then what's the order?
10              MR. SLATER:  Our plan is for Dr. Lagana, then
11    Dr. Panigraphy, and then Dr. Etminan.  And the reasoning
12    behind that was because Dr. Etminan is in British Columbia, so
13    we thought it would be harder for him to testify first in the
14    morning.
15              JUDGE KUGLER:  I don't really care.
16              MR. GOLDBERG:  Your Honor, this is Seth Goldberg for
17    the defendants.
18              In terms of Dr. Etminan, we may have a scheduling
19    conference or a scheduling conflict -- in fact, we do -- that
20    afternoon.  The lawyer who is going to be doing the
21    cross-examination has a hearing in another matter.  We've
22    raised that with plaintiffs this morning.  We're hoping we can
23    work it out with plaintiffs, that we either get Etminan on in
24    a different order or if Your Honor would indulge us to have a
25    half hour break that afternoon so that hearing can be
```

*United States District Court*

1  attended, that would be appreciated.  But we're hoping we can

2  work this out with plaintiffs.

3          JUDGE KUGLER:  Well, if the plaintiffs want to shift

4  the order, that's fine.  If you need a half an hour break,

5  that's fine too.  We can work that out.  I'm not worried about

6  that.

7          MR. GOLDBERG:  Thank you, Your Honor.

8          JUDGE KUGLER:  We'll get them all done on Wednesday.

9          Now, the defendants have told me -- I don't

10 understand this, to be honest with you -- that they are going

11 to have Bottoroff, B-O-T-T-O-R-O-F-F, on March 15th and

12 Johnson on March 29th.  That's rejected.  Nobody is testifying

13 on March 29th.  You've known for months when these dates are.

14 That your witnesses can't figure it out is not my problem.  I

15 don't adjust my schedule for witnesses.  I don't care who he

16 thinks he is.  He thinks he's a pretty hot shot too, reading

17 his deposition.

18         But here's what I'm going to let you do.  I don't

19 care when he testifies.  You can work that out.  I don't have

20 to attend this.  I don't know what this big thing is that

21 somehow I need to see these people and hear what they say

22 live.

23         I've been a judge a long time and a lawyer even

24 longer.  In the course of my life and career, I've probably

25 read thousands of expert reports.  I can pretty much figure

1   out who's testifying for plaintiff and who's testifying for

2   the defendant.  So this skirmishing about who went first and

3   when, this is pure, utter nonsense to me and was an affront to

4   me that somehow unless we had the schedule in place, I would

5   be confused.

6        Folks, I know who is the plaintiff's side, and I know

7   who the defendants' side is.

8        So it's rejected.  So long as I have a transcript of

9   Johnson by March 14th, that's fine.  I'll read the transcript,

10  if in fact the plaintiffs still want to question the guy.  I'm

11  not sure they will, but that's up to them.  That's the deal.

12  Okay?

13       I mean, there's an order in place.  I've told you

14  repeatedly what the dates are.  Figure it out, folks.  You're

15  all very accomplished lawyers.

16       All right.  Anything else on the agenda we want to

17  talk about today?

18       MR. SLATER:  I don't believe so for plaintiffs, Your

19  Honor.

20       MR. GOLDBERG:  Nothing for defendants, Your Honor.

21       JUDGE KUGLER:  All right.  Let me spend a few minutes

22  with you then talking about where I foresee we're going with

23  this.

24       These motions will be decided, these Daubert motions

25  are all going to be decided by the middle of March.  They will

1    be all done.

2           Where do we go from here?  I guess the next thing up

3    are the class certification motions.  And we'll do those,

4    according to the schedule, in May.  That's fine.

5           But I don't see, frankly, that anything else should

6    be dependent on the outcome of those class action motions.  I

7    mean, those individuals or organizations either have a claim

8    individually or a claim as part of a class.  So they're not

9    going to go away depending on the outcome of the motions.  But

10   I understand they're important, and we'll take care of them.

11          Then I foresee that there might be some summary

12   judgment motions.  There's still some legal issues out there,

13   because some of these state laws are at play here and, you

14   know, some states don't support certain causes of action and

15   all that stuff.  We dealt with some of that in the motions to

16   dismiss, but there's probably some cleanup to do there.

17          But I will urge that the parties talk to each other,

18   because, I mean, some of those legal issues are pretty clear

19   and perhaps you can come to some kind of stipulation and not

20   have to file a lot of papers.

21          Okay.  So they're going to come.  And there's no

22   reason we have to wait for those to be filed.

23          And then we've talked about bellwether cases.  Not my

24   favorite things to do in the world, but there are.  I'm not a

25   big fan of them.  I don't think they do much good, but, you

1    know, we'll try them.  But, you know, they can be the best of

2    a lot of bad options in a case.

3         But I want to repeat something I said at the

4    beginning of all this.  I am not going to be trying any

5    personal injury bellwether weather cases.

6         The personal injury cases are just too idiosyncratic

7    for us to get the answer to the first and most important

8    questions here, which is general causation.  So we'll pick a

9    case if we have to, probably a third-party payor case because

10   the damages are relatively easy to calculate in those cases,

11   and just to get a jury to say yes or no on the question of

12   general causation and get that done.

13        I think the bottom line I'm trying to tell you,

14   lawyers, is that I expect that my role in this will be done by

15   the end of this year.  And the logistics of that are that once

16   I'm done what I can do is I notify the MDL panel that I'm done

17   and request that they send the cases back where they came from

18   or where they should have been originally filed but for the

19   direct filing order.  And they generally do that.

20        But that means, of course, that we lose one of the

21   benefits of this being an MDL, that is, all of us together,

22   all of you together in this case.

23        And you're going to be faced with the prospect now of

24   simultaneous litigation in dozens and dozens of jurisdictions.

25   There will be some cases remaining in the District of New

1   Jersey.  Well, they'll be distributed around the district

2   also.

3        Of course, once the MDL part of this is done, what

4   you're going to see -- because we've seen this in all these

5   cases around the country, is you're going to find some hot

6   shot plaintiff's lawyer convincing some state court judge to

7   try some case, one of these cases, because he or she thinks

8   they're going to get a big, broad -- big number and make a

9   name for themselves.  And there's no way that can be stopped.

10  We've been lucky that the state courts have been deferring to

11  us, the federal system, while we manage this mess.  But once

12  I'm done, all bets are off for that.

13       So, you know, the MDL process has problems.  And I

14  understand the defendants' complaints about this.  And I

15  agree, frankly, and I've said this publicly, that the MDL

16  process benefits well prepared plaintiffs.  And in this case

17  you have well prepared plaintiffs.

18       But I didn't invent this system.  I didn't pass these

19  laws or rules.  I just have to enforce it.

20       And here's an observation I've made many times in

21  public.  I think the plaintiffs' bar is much better organized

22  in these MDL cases than the defense bar.  We don't have to

23  talk about the reasons.  But they just are.  I think they

24  figured it out a lot sooner than the defense bar has.  So the

25  MDL process surely benefits them.  There's no doubt about it.

```
 1   But that's the way it is and that's what we have to deal with.
 2            So I guess what I'm saying is once these Daubert
 3   motions are decided in a couple weeks, there's really no
 4   impediment to people starting to get serious to try to resolve
 5   these cases.  You know, the cert, class cert motions and
 6   things like that are no impediment to resolution because
 7   people will still have the claims whether they're an
 8   individual or part of a class.
 9            So as long as we have this economy of scale, this
10   mass of people together, I think you really need to start
11   focusing on resolution of this.
12            And I'm going to tell Chief Judges Sleet and Stengel
13   to begin aggressively scheduling some sessions.
14            I'm going to suggest to him, to them, that perhaps
15   they want to focus on the retailers as the group.
16            Now, I know -- look, I know, you retailers have
17   defenses, unique defenses.  You've got the innocent seller
18   defenses.  And I'm sure that there are indemnity agreements
19   all over the place here.
20            But you see, the plaintiffs know that too.  And I've
21   got to think the plaintiffs are going to be pretty reasonable,
22   given that.  And the indemnity agreements, well, you can
23   settle the case and still chase your indemnitors.  I mean, I
24   don't know, I haven't looked at the law lately, but it used to
25   be that so long as you put you indemnitor on notice and the
```

1  number was reasonable, they would be stuck with the number and

2  you get the money back from them.

3          So I'm going to tell them -- and I'll talk to them

4  tomorrow as you know, because you heard, that that's what I'd

5  like them to start doing.  And then maybe they can move on to

6  the wholesalers, because there's only a few of them.

7          But my feeling is that, you know, you spend some -- I

8  would think the retailers would want to get out from under

9  this, because it's going to take some time and a lot of effort

10 to assert these defenses and succeed on them.

11         And if the plaintiffs are reasonable, as they should

12 be with that class of people, then perhaps some of these

13 settlements wouldn't even be so significant that they're

14 material enough to be brought to the SEC in the quarterly and

15 annual reporting.  But we'll see how they make out.

16         I know some of you are saying, oh, the end of the

17 year, that's crazy.

18         Well, if you doubt that can happen, talk about the

19 lawyers who went through Benicar.  They had very aggressive

20 scheduling in Benicar.  And they stepped up to the plate, and

21 they got it done.  And I expect and I anticipate, given the

22 quality of lawyers we have in this case, that you'll step up

23 to the plate and we're going to get this thing done, this MDL

24 done by the end of the year.  And we'll see what happens after

25 that.

```
 1          Okay.  I've spoken enough today.  I want to wish you

 2  all well, stay healthy, and hopefully we will see you in April

 3  in the courthouse if we need to do it.  It may not be enough

 4  on the agenda to justify April or May, but we'll see how it

 5  is.  And I'll talk to you soon.

 6          Thank you, everybody.

 7          (Proceedings concluded at 11:10 a.m.)

 8

 9                            -   -   -

10          I certify that the foregoing is a correct transcript

11  from the record of proceedings in the above-entitled matter.

12

13  /S/ Ann Marie Mitchell, CCR, CRR, RDR, RMR
    Court Reporter/Transcriber
14

15  28th day of February, 2022
         Date
16

17

18

19

20

21

22

23

24

25
```

*United States District Court*

**/S** [1] - 45:13
**100** [1] - 13:13
**10:00** [2] - 3:6, 37:5
**10:02** [1] - 3:3
**10:22** [1] - 15:24
**10:26** [1] - 15:24
**10:30** [2] - 17:7, 17:8
**11** [2] - 14:7, 20:2
**114** [1] - 24:4
**11:10** [1] - 45:7
**136** [1] - 23:24
**14th** [1] - 39:9
**152** [1] - 33:25
**155** [1] - 34:14
**15th** [1] - 38:11
**186** [1] - 23:7
**1999** [1] - 23:8
**1st** [1] - 17:4
**2022** [1] - 45:15
**234** [2] - 23:24, 34:13
**26** [2] - 20:4, 20:7
**28** [2] - 19:22, 20:3
**28th** [1] - 45:15
**29th** [2] - 38:12, 38:13
**2nd** [2] - 4:10, 6:7
**30** [2] - 19:11, 19:12
**417** [1] - 23:8
**47** [1] - 36:14
**572** [1] - 24:4
**702** [3] - 29:19, 31:25
**703** [1] - 29:19
**88** [1] - 6:10
**9:00** [1] - 37:4
**9:30** [2] - 37:5, 37:7
**a.m** [4] - 3:4, 15:24, 45:7
**ability** [2] - 28:11, 33:1
**able** [2] - 5:6, 25:18
**above-entitled** [1] - 45:11
**abreast** [2] - 8:12, 9:20
**absolutely** [1] - 28:4
**accepted** [2] - 32:18, 35:8
**accommodate** [1] - 16:15
**accomplish** [1] - 10:6
**accomplished** [1] - 39:15
**according** [1] - 40:4
**accurate** [1] - 15:14
**acknowledge** [1] - 22:10
**action** [15] - 7:8, 11:4, 11:12, 11:20, 11:22, 12:4, 12:11, 14:5, 14:6, 14:8, 15:5, 32:10, 40:6, 40:14
**Adam** [2] - 3:18, 37:2
**add** [1] - 21:1
**additional** [1] - 19:11
**additions** [1] - 18:22
**address** [4] - 4:25, 13:12, 13:17, 15:13
**addressed** [1] - 21:17
**addressing** [5] - 3:16, 6:1, 6:4,

10:11, 11:15
**adjust** [1] - 38:15
**admissibility** [2] - 29:19, 30:19
**admissible** [1] - 34:4
**advantage** [1] - 9:25
**adversary** [1] - 19:15
**adversely** [1] - 10:4
**advisable** [1] - 22:13
**advise** [1] - 7:16
**advisement** [1] - 5:7
**affected** [1] - 10:5
**affidavits** [1] - 24:2
**affront** [1] - 39:3
**afternoon** [4] - 7:1, 16:13, 37:20, 37:25
**afterwards** [2] - 16:10, 16:12
**agenda** [6] - 4:6, 10:8, 18:11, 39:16, 45:4
**aggressive** [1] - 44:19
**aggressively** [1] - 43:13
**ago** [2] - 5:12, 10:17
**agree** [5] - 5:6, 7:6, 11:11, 34:21, 42:15
**agreed** [1] - 10:23
**agreements** [2] - 43:18, 43:22
**alert** [1] - 5:4
**alleges** [1] - 12:1
**allow** [1] - 28:3
**almost** [2] - 10:22, 34:15
**Alyson** [1] - 19:6
**amended** [2] - 4:6, 31:25
**amount** [1] - 14:9
**amounts** [1] - 25:22
**analyses** [1] - 34:23
**analysis** [2] - 29:24, 34:7
**animal** [3] - 34:22, 36:1, 36:6
**Ann** [2] - 3:8, 45:13
**annual** [1] - 44:15
**answer** [2] - 8:1, 41:7
**answered** [2] - 25:21, 27:15
**answers** [3] - 25:10, 25:16, 25:20
**anticipate** [1] - 44:21
**anyway** [1] - 18:4
**appreciate** [4] - 11:18, 12:6, 14:10, 15:9
**appreciated** [1] - 38:1
**approach** [2] - 10:25, 31:7
**appropriate** [11] - 8:6, 8:19, 9:6, 9:18, 11:4, 13:11, 13:17, 14:12, 15:4, 34:3, 36:8
**appropriately** [1] - 36:15
**April** [3] - 18:1, 45:2, 45:4
**arguing** [2] - 13:9, 13:10
**argument** [3] - 12:5, 13:21, 27:17
**arguments** [1] - 12:7
**arrange** [1] - 16:10
**arrive** [1] - 33:12

**arrived** [1] - 33:11
**assert** [2] - 27:12, 44:10
**asserted** [3] - 12:17, 14:20
**asserting** [1] - 26:23
**assessed** [1] - 13:4
**assistance** [2] - 26:10, 26:13
**assurances** [3] - 6:14, 8:20, 8:21
**attachments** [1] - 27:5
**attacking** [1] - 34:3
**attempt** [1] - 8:13
**attend** [2] - 16:18, 38:20
**attended** [1] - 38:1
**audits** [1] - 8:17
**available** [4] - 6:24, 7:1, 17:6, 26:10
**availed** [1] - 26:12
**avenue** [1] - 6:20
**aware** [2] - 26:20, 36:5
**bad** [1] - 41:2
**bar** [4] - 26:15, 42:21, 42:22, 42:24
**based** [1] - 12:21
**bases** [1] - 26:23
**basic** [1] - 5:6
**basis** [6] - 14:20, 28:2, 29:7, 29:9, 29:11, 30:11
**Becker** [1] - 33:7
**become** [1] - 31:21
**beefing** [1] - 8:24
**beforehand** [1] - 11:11
**begin** [3] - 30:11, 37:5, 43:13
**beginning** [2] - 34:19, 41:4
**behalf** [4] - 10:11, 19:7, 22:6, 27:22
**behind** [1] - 37:12
**bellwether** [2] - 40:23, 41:5
**benefits** [4] - 36:20, 41:21, 42:16, 42:25
**Benicar** [2] - 44:19, 44:20
**best** [4] - 6:20, 6:23, 16:21, 41:1
**bets** [1] - 42:12
**better** [8] - 6:18, 17:17, 32:6, 33:16, 34:13, 35:22, 35:23, 42:21
**between** [1] - 25:18
**beyond** [8] - 6:8, 8:18, 9:9, 9:21, 11:21, 29:16, 31:23, 31:24
**big** [4] - 38:20, 40:25, 42:8
**bit** [2] - 32:13, 32:14
**books** [1] - 21:23
**bottom** [1] - 41:13
**BOTTOROFF** [1] - 38:11
**Bottoroff** [1] - 38:11
**breach** [8] - 4:21, 5:10, 5:17, 5:18, 6:19, 10:2, 10:3, 21:5
**breached** [2] - 21:8

**breaches** [1] - 21:11
**break** [2] - 37:25, 38:4
**brief** [3] - 13:10, 13:15, 27:5
**briefed** [1] - 27:19
**briefing** [9] - 11:8, 11:24, 12:20, 13:13, 13:23, 28:9, 28:10, 29:10, 30:15
**briefly** [1] - 4:25
**briefs** [2] - 27:4, 30:9
**bring** [1] - 29:14
**British** [1] - 37:12
**broad** [1] - 42:8
**brought** [2] - 32:4, 44:14
**burden** [1] - 34:2
**calculate** [1] - 41:10
**cancer** [3] - 25:24, 32:22, 36:12
**cannot** [3] - 5:24, 11:6, 31:13
**capable** [1] - 25:24
**card** [1] - 21:10
**care** [7] - 3:11, 36:19, 36:20, 37:15, 38:15, 38:19, 40:10
**career** [1] - 38:24
**careful** [1] - 34:2
**case** [36] - 9:22, 10:23, 11:7, 18:15, 18:24, 19:1, 20:5, 22:12, 22:18, 22:23, 22:24, 23:1, 23:4, 23:6, 23:8, 23:12, 23:13, 23:16, 23:21, 24:5, 24:6, 25:21, 28:20, 31:22, 32:9, 33:5, 34:7, 41:2, 41:9, 41:22, 42:7, 42:16, 43:23, 44:22
**cases** [16] - 18:11, 18:12, 19:2, 20:4, 32:22, 35:10, 40:23, 41:5, 41:6, 41:10, 41:17, 41:25, 42:5, 42:7, 42:22, 43:5
**causation** [6] - 24:11, 26:23, 27:12, 28:22, 41:8, 41:12
**causes** [1] - 40:14
**causing** [1] - 25:24
**CCR** [1] - 45:13
**cert** [5] - 11:8, 13:14, 13:15, 43:5
**certain** [2] - 13:7, 40:14
**certainly** [11] - 5:5, 5:23, 7:6, 7:11, 7:15, 8:22, 22:23, 24:21, 27:16, 29:3, 29:21
**certification** [1] - 13:23, 40:3
**certified** [1] - 11:25
**certify** [1] - 45:10
**challenges** [1] - 26:22
**change** [1] - 30:14
**changed** [3] - 30:8, 30:18, 30:19, 33:2
**changes** [1] - 18:22
**chase** [1] - 43:23
**check** [2] - 16:9, 16:25
**cherry** [1] - 35:2
**cherry-picking** [1] - 35:2
**Chief** [2] - 33:6, 43:12

**chose** [1] - 34:25
**chucked** [1] - 23:18
**Circuit** [10] - 22:13, 23:6, 23:8, 23:10, 23:19, 23:25, 31:18, 33:20, 35:17, 35:20
**circumscribed** [1] - 33:19
**cite** [2] - 22:18, 22:20
**cited** [1] - 35:10
**civil** [1] - 32:9
**claim** [6] - 12:2, 12:16, 14:20, 14:21, 40:7, 40:8
**claimed** [1] - 32:25
**claiming** [1] - 30:20
**claims** [6] - 10:19, 10:24, 11:6, 12:17, 13:7, 43:7
**clarification** [1] - 4:7
**clarity** [1] - 7:8
**class** [20] - 7:8, 11:8, 11:20, 11:21, 11:24, 11:25, 12:11, 13:13, 13:15, 13:18, 13:22, 14:5, 14:6, 14:8, 40:3, 40:6, 40:8, 43:5, 43:8, 44:12
**Claudette** [1] - 20:3
**cleanup** [1] - 40:16
**clear** [3] - 25:11, 28:8, 40:18
**clearly** [1] - 35:8
**Clem** [1] - 22:5
**client** [1] - 19:10
**clients** [1] - 5:19
**clients'** [1] - 5:9
**clinical** [1] - 34:21
**closed** [1] - 10:2
**cluster** [1] - 32:22
**CMC** [4] - 10:17, 11:5, 11:6, 13:11
**coerced** [1] - 11:6
**collaborative** [1] - 7:21
**collectively** [2] - 26:14, 27:4
**Columbia** [1] - 37:12
**commented** [1] - 30:4
**committee** [2] - 7:10, 31:25
**communication** [4] - 6:23, 8:3, 10:1, 19:9
**communications** [2] - 8:17, 9:12
**community** [1] - 32:19
**Company** [1] - 23:24
**compelling** [1] - 29:13
**compensation** [1] - 33:1
**complaint** [2] - 10:10, 12:23
**complaints** [1] - 42:14
**completely** [1] - 36:5
**complicated** [1] - 27:19
**concern** [2] - 9:13, 35:21
**concerned** [1] - 4:22
**concerns** [3] - 12:6, 20:16, 20:17
**concluded** [1] - 45:7
**conclusionary** [1] - 23:15

**conclusions** [3] - 34:7, 36:7, 36:20
**conditions** [1] - 33:4
**conducive** [1] - 26:3
**conference** [5] - 15:3, 18:16, 19:2, 20:6, 37:19
**conflict** [1] - 37:19
**confused** [1] - 39:5
**consequences** [1] - 35:14
**consider** [1] - 15:4
**considered** [2] - 32:1, 36:15
**consisted** [1] - 23:14
**consistent** [2] - 12:23, 18:11
**consolation** [1] - 21:7
**consultant** [1] - 8:25
**containing** [1] - 25:23
**contemplation** [1] - 31:24
**continue** [2] - 11:10, 18:16
**continued** [1] - 18:15
**continues** [1] - 14:24
**contracting** [3] - 5:17, 5:22, 5:24
**contrary** [1] - 34:1
**control** [1] - 36:11
**convenient** [1] - 16:14
**conversation** [1] - 10:17
**convincing** [1] - 42:6
**Cook** [1] - 18:24
**correct** [18] - 4:11, 4:12, 4:23, 5:2, 8:6, 24:9, 24:14, 24:25, 25:4, 26:11, 26:12, 26:16, 26:21, 27:6, 27:23, 28:12, 29:1, 45:10
**corrected** [1] - 20:2
**correctness** [1] - 34:10
**counsel** [4] - 9:12, 9:20, 19:4, 32:6
**count** [1] - 27:8
**counted** [1] - 27:7
**country** [2] - 35:11, 42:5
**couple** [2] - 15:2, 43:3
**course** [5] - 8:8, 21:20, 38:24, 41:20, 42:3
**court** [6] - 3:7, 18:2, 23:5, 24:1, 25:14, 42:6
**Court** [12] - 23:4, 26:19, 30:22, 31:18, 31:24, 33:2, 33:20, 33:24, 35:16, 35:20, 45:13
**COURT** [1] - 3:8
**Court's** [2] - 12:12, 30:17
**courthouse** [1] - 45:3
**courts** [2] - 33:19, 42:10
**COVID** [1] - 17:24
**crazy** [1] - 44:17
**credit** [1] - 21:10
**Croix** [1] - 24:4
**cross** [6] - 29:15, 29:16, 32:7, 34:1, 34:9, 37:21
**cross-examination** [4] - 29:16,

34:1, 34:9, 37:21
**cross-examined** [1] - 29:15
**cross-examining** [1] - 32:7
**CRR** [1] - 45:13
**customer** [1] - 5:24
**CVS** [13] - 10:9, 11:16, 12:2, 12:3, 12:10, 12:17, 12:18, 12:22, 14:19, 14:21, 20:14, 20:25
**CVS's** [1] - 10:20

**damages** [1] - 41:10
**danger** [1] - 36:3
**data** [5] - 4:21, 21:5, 34:25, 35:13, 35:25
**Date** [1] - 45:15
**dates** [2] - 38:13, 39:14
**Daubert** [19] - 4:9, 4:17, 13:22, 15:12, 15:13, 22:16, 23:9, 23:25, 26:3, 31:20, 32:12, 33:3, 33:13, 33:14, 33:25, 39:24, 43:2
**David** [2] - 4:24, 10:13
**days** [2] - 19:11, 19:12
**deal** [2] - 39:11, 43:1
**dealt** [1] - 40:15
**decided** [3] - 39:24, 39:25, 43:3
**decision** [2] - 14:18, 29:11
**declaration** [2] - 28:12, 28:21
**declarations** [7] - 26:1, 27:22, 28:5, 28:6, 28:14, 28:19, 36:23
**deep** [1] - 35:11
**defend** [2] - 12:4, 14:7
**defendant** [3] - 11:21, 23:13, 39:2
**defendants** [23] - 4:1, 5:7, 5:11, 5:14, 5:16, 6:5, 7:16, 7:23, 8:10, 11:1, 13:7, 14:19, 15:15, 20:12, 21:16, 25:2, 30:21, 31:11, 35:2, 36:10, 37:17, 38:9, 39:20
**defendants'** [5] - 8:10, 10:18, 22:2, 39:7, 42:14
**defense** [10] - 3:23, 3:25, 6:2, 9:11, 9:19, 11:15, 18:10, 22:7, 42:22, 42:24
**defenses** [4] - 43:17, 43:18, 44:10
**deferring** [1] - 42:10
**deficiencies** [2] - 19:9, 19:23
**denied** [1] - 23:25
**dependent** [1] - 40:6
**depose** [3] - 13:22, 25:15, 29:5
**deposition** [7] - 24:20, 25:19, 29:1, 29:6, 29:22, 29:23, 38:17
**depositions** [6] - 24:2, 24:13, 25:9, 28:4, 28:10, 36:21
**deprived** [1] - 30:21
**designed** [1] - 25:10
**desire** [1] - 11:2
**desired** [1] - 24:23

**details** [1] - 6:19
**determination** [2] - 35:22, 35:24
**determine** [1] - 36:14
**determining** [1] - 34:11
**develop** [3] - 31:6, 31:9, 31:12
**development** [1] - 26:4
**developments** [2] - 5:22, 9:20
**dial** [1] - 17:11
**dial-in** [1] - 17:11
**dialing** [1] - 16:1
**dictates** [1] - 7:22
**difference** [1] - 25:18
**different** [4] - 10:18, 35:7, 37:24
**difficult** [1] - 12:19
**difficulties** [1] - 19:14
**direct** [6] - 6:23, 8:3, 9:14, 9:25, 25:20, 41:19
**directly** [1] - 9:5
**disagree** [1] - 29:6
**discovery** [1] - 11:6
**discretion** [1] - 22:14
**discretionary** [1] - 23:4
**discuss** [2] - 4:15, 5:5
**discussed** [2] - 9:4, 11:5
**discussion** [2] - 9:15, 13:21
**discussions** [4] - 6:12, 8:20, 9:3, 9:8
**dismiss** [4] - 10:23, 11:6, 13:4, 40:16
**dismissal** [4] - 10:9, 10:19, 14:18, 18:12
**dismissed** [5] - 12:16, 12:23, 13:8, 18:19, 20:18
**dismissing** [1] - 14:12
**disputed** [1] - 11:9
**disregard** [1] - 36:6
**distributed** [1] - 42:1
**district** [3] - 24:1, 33:19, 42:1
**District** [2] - 3:2, 41:25
**dive** [1] - 35:12
**domino** [1] - 13:6
**done** [23] - 6:15, 10:2, 14:13, 19:11, 22:22, 28:10, 28:11, 29:3, 30:4, 34:13, 35:11, 35:19, 38:8, 40:1, 41:12, 41:14, 41:16, 42:3, 42:12, 44:21, 44:23, 44:24
**doubt** [2] - 42:25, 44:18
**down** [4] - 3:6, 13:7, 14:11, 35:12
**dozens** [1] - 41:24
**Dr** [7] - 25:13, 37:8, 37:10, 37:11, 37:12, 37:18
**drafted** [1] - 31:25
**draw** [1] - 36:7
**dress** [2] - 33:14, 35:23
**drilled** [1] - 35:12

**drop** [1] - 15:21
**due** [1] - 26:2
**easy** [1] - 41:10
**economic** [1] - 11:21
**economy** [1] - 43:9
**Ed** [1] - 33:7
**effect** [1] - 28:22
**efficiency** [1] - 12:13
**efficient** [1] - 14:11
**effort** [1] - 44:9
**efforts** [5] - 8:10, 8:11, 8:12, 9:2, 14:11
**either** [3] - 11:3, 37:23, 40:7
**emailed** [2] - 6:25, 8:7
**embed** [1] - 8:20
**emphasis** [1] - 35:7
**encourage** [1] - 9:14
**encouraged** [1] - 21:22
**end** [4] - 13:6, 41:15, 44:16, 44:24
**enforce** [1] - 42:19
**ensure** [3] - 5:16, 5:18, 9:3
**enter** [1] - 9:18
**entire** [1] - 21:9
**entities** [1] - 22:7
**entitled** [2] - 22:10, 45:11
**especially** [2] - 5:19, 11:2
**Etminan** [4] - 37:11, 37:12, 37:18, 37:23
**evade** [1] - 25:10
**evaluate** [1] - 29:7
**evaluated** [2] - 10:21, 11:8
**evaluating** [3] - 6:13, 10:20, 27:14
**evasive** [1] - 25:9
**event** [1] - 16:19
**evidence** [4] - 29:16, 30:3, 34:2, 34:4
**evidentiary** [5] - 25:7, 25:19, 25:25, 27:17, 34:9
**examination** - 28:17, 29:16, 34:1, 34:9, 37:21
**examined** [1] - 29:15
**examining** [1] - 32:7
**example** [1] - 36:1
**exempt** [1] - 28:11
**exhibits** [2] - 27:5, 30:16
**expect** [3] - 9:16, 41:14, 44:21
**expected** [1] - 16:10
**expenses** [1] - 14:23
**experience** [1] - 14:16
**expert** [13] - 23:10, 23:16, 23:17, 24:8, 24:10, 28:12, 29:8, 29:14, 34:8, 34:12, 34:13, 35:18, 38:25
**expert's** [1] - 35:15
**experts** [21] - 11:23, 24:2, 24:18, 25:3, 26:9, 26:15, 26:20, 26:23, 27:11, 27:22, 28:1, 28:2,

28:17, 30:4, 30:5, 30:23, 32:5, 32:6, 33:11, 34:15
**explain** [1] - 23:21
**exposures** [1] - 32:25
**extends** [1] - 9:21
**extensive** [1] - 29:10
**extensively** [2] - 30:5, 34:20
**extent** [1] - 7:4
**extrapolate** [1] - 36:3
**extremely** [2] - 25:8, 33:15
**eye** [1] - 18:3
**F.3d** [3] - 23:7, 23:24, 34:13
**F.App'x** [1] - 24:4
**faced** [1] - 41:23
**fact** [10] - 12:21, 13:19, 14:23, 21:18, 28:10, 32:3, 34:8, 34:16, 37:19, 39:10
**fact-based** [1] - 12:21
**factors** [1] - 36:12
**facts** [3] - 11:9, 13:10, 30:8
**fair** [2] - 25:2, 26:8
**fairest** [1] - 31:7
**faith** [2] - 10:22, 13:4
**fan** [1] - 41:20
**far** [5] - 6:8, 9:21, 14:15, 14:16, 28:15
**favorite** [1] - 40:24
**February** [2] - 6:7, 45:15
**federal** [1] - 42:11
**fees** [1] - 14:24
**felt** [1] - 34:25
**few** [5] - 5:6, 19:22, 39:21, 44:6
**field** [1] - 35:9
**figure** [3] - 38:14, 38:25, 39:14
**figured** [1] - 42:24
**file** [2] - 21:9, 40:20
**filed** [4] - 7:9, 21:19, 26:14, 27:11, 40:22, 41:18
**filing** [2] - 26:18, 41:19
**filled** [1] - 12:18
**fine** [8] - 8:6, 8:8, 16:13, 21:2, 38:4, 38:5, 39:9, 40:4
**firm** [4] - 6:11, 6:15, 7:13, 9:7
**firm's** [1] - 8:16
**firms** [1] - 7:10
**first** [10] - 6:7, 17:24, 18:11, 23:3, 23:6, 37:7, 37:8, 37:13, 39:2, 41:7
**fit** [1] - 33:7
**five** [6] - 19:2, 19:21, 24:11, 24:18, 28:20, 28:22
**fixed** [1] - 5:18
**fledged** [1] - 12:20
**focus** [2] - 33:9, 43:15
**focusing** [4] - 36:16, 36:18, 36:19, 43:11
**folks** [4] - 6:16, 35:15, 39:6, 39:14
**follow** [2] - 3:13, 31:8

**followed** [1] - 4:18
**force** [1] - 14:7
**forced** [1] - 12:3
**Ford** [2] - 23:23, 34:6
**foregoing** [1] - 45:10
**foresee** [3] - 28:16, 39:22, 40:11
**former** [1] - 33:6
**forth** [1] - 9:1
**forward** [1] - 5:15
**frankly** [2] - 40:5, 42:15
**fraught** [1] - 36:2
**freestanding** [1] - 9:11
**front** [3] - 25:14, 25:19, 29:15
**Frye** [1] - 32:17
**FRYE** [1] - 32:17
**full** [6] - 12:20, 22:16, 25:2, 26:4, 26:8, 29:11
**full-fledged** [1] - 12:20
**fully** [1] - 31:8
**function** [1] - 33:18
**gatekeeper** [1] - 33:18
**gatekeeping** [1] - 30:18
**general** [8] - 8:23, 24:11, 26:23, 27:12, 28:22, 34:17, 41:8, 41:12
**generally** [5] - 5:4, 8:16, 9:9, 32:18, 41:19
**generated** [1] - 33:10
**given** [6] - 11:2, 23:20, 25:16, 33:10, 43:22, 44:21
**glad** [1] - 17:18
**GOLDBERG** [7] - 3:24, 4:4, 15:15, 20:25, 37:16, 38:7, 39:20
**Goldberg** [4] - 3:25, 4:3, 20:15, 37:16
**Goom** [1] - 35:3
**GOOM** [1] - 35:3
**government** [1] - 21:10
**grant** [1] - 23:21
**granted** [1] - 23:18
**great** [6] - 16:8, 16:24, 17:10, 25:25, 35:19
**Greenberg** [4] - 6:4, 6:6, 18:9, 21:16
**grounds** [2] - 26:25, 27:14
**Group** [9] - 4:21, 5:12, 5:16, 5:23, 8:3, 9:13, 9:15, 10:1, 10:3
**group** [3] - 18:10, 22:7, 43:15
**guarding** [1] - 23:13
**guess** [2] - 40:2, 43:2
**guidance** [1] - 37:3
**guy** [1] - 39:10
**H-I-D-A-J-A-T** [1] - 35:5
**half** [3] - 14:3, 37:25, 38:4
**hang** [1] - 17:3
**happy** [4] - 7:20, 8:1, 8:15, 22:21

**hard** [2] - 13:22, 19:8
**harder** [1] - 37:13
**Harkins** [3] - 18:6, 18:9, 20:11
**HARKINS** [6] - 18:8, 18:23, 19:25, 20:9, 20:12, 20:22
**harm** [2] - 29:12, 29:20
**Harris** [1] - 19:3
**head** [1] - 22:21
**healthy** [1] - 45:2
**hear** [3] - 15:21, 19:15, 38:21
**heard** [5] - 5:13, 11:18, 19:5, 31:10, 44:4
**hearing** [17] - 4:9, 22:11, 22:13, 22:17, 22:25, 23:9, 23:25, 24:5, 25:7, 25:19, 25:25, 26:3, 27:17, 28:24, 31:6, 37:21, 37:25
**hearings** [4] - 4:18, 4:19, 13:22, 22:2, 28:16, 31:20
**heck** [1] - 17:4
**held** [1] - 3:1
**hello** [1] - 37:2
**help** [1] - 27:18
**Henry** [1] - 24:4
**hi** [1] - 3:18
**Hidajat** [2] - 35:5, 36:9
**hiding** [1] - 7:5
**high** [1] - 34:12
**highest** [1] - 6:15
**history** [1] - 32:21
**hold** [1] - 17:1
**honest** [2] - 7:14, 38:10
**Honor** [51] - 3:8, 3:24, 4:12, 4:24, 5:2, 5:3, 5:7, 6:3, 8:5, 8:15, 10:13, 11:4, 11:16, 12:25, 13:3, 13:10, 14:3, 14:14, 15:16, 15:17, 16:4, 18:8, 18:23, 19:6, 19:17, 19:25, 20:9, 20:22, 21:2, 21:15, 22:4, 22:21, 24:12, 25:5, 25:20, 26:7, 27:7, 28:13, 28:15, 29:6, 29:21, 30:7, 30:25, 31:3, 33:17, 37:2, 37:16, 37:24, 38:7, 39:19, 39:20
**Honor's** [2] - 12:24, 37:3
**Honorable** [2] - 3:1, 3:3
**hope** [1] - 5:15
**hopefully** [2] - 15:13, 45:2
**hoping** [2] - 37:22, 38:1
**hot** [2] - 38:16, 42:5
**hour** [2] - 37:25, 38:4
**human** [1] - 34:21
**humans** [1] - 36:3
**hundreds** [4] - 24:24, 27:11, 29:1, 32:2
**identified** [1] - 24:12
**identify** [1] - 3:15
**idiosyncratic** [1] - 41:6
**imagine** [2] - 9:21, 21:14
**immense** [1] - 24:6
**impacts** [1] - 9:22

**impediment** [2] - 43:4, 43:6
**importance** [1] - 27:10
**important** [5] - 25:8, 29:13, 34:25, 40:10, 41:7
**important..** [1] - 31:9
**impose** [1] - 9:10
**imposing** [1] - 9:19
**in-court** [1] - 18:2
**inadmissible** [1] - 26:24
**including** [4] - 6:25, 21:9, 25:12, 29:17
**incurring** [1] - 14:23
**indemnitor** [1] - 43:25
**indemnitors** [1] - 43:23
**indemnity** [2] - 43:18, 43:22
**indicate** [1] - 9:24
**indicates** [1] - 22:24
**individual** [2] - 14:18, 43:8
**individually** [1] - 40:8
**individuals** [4] - 6:10, 9:22, 10:4, 40:7
**indulge** [1] - 37:24
**industrial** [1] - 32:23
**inefficiency** [1] - 11:3
**inefficient** [1] - 13:20
**inform** [2] - 5:20, 9:12
**information** [12] - 5:10, 6:16, 6:17, 6:21, 6:22, 7:3, 7:5, 7:20, 21:8, 21:11, 21:23
**informed** [1] - 8:16
**ingestion** [1] - 36:11
**inhalation** [1] - 36:11
**inject** [1] - 13:20
**injured** [1] - 32:25
**injury** [3] - 11:22, 41:5, 41:6
**innocent** [1] - 43:17
**insignificant** [1] - 14:8
**instance** [1] - 22:16
**instruction** [1] - 34:2
**insubstantial** [1] - 14:9
**intend** [2] - 4:16, 20:4
**intense** [1] - 33:9
**interest** [1] - 21:4
**interrupt** [1] - 16:6
**invent** [1] - 42:18
**investigating** [1] - 5:17
**investigation** [2] - 9:17, 9:21
**invite** [1] - 17:19
**involved** [1] - 6:10
**issue** [31] - 3:19, 4:1, 4:21, 6:2, 6:8, 10:8, 10:11, 11:8, 11:15, 12:12, 12:19, 12:20, 14:1, 19:20, 20:14, 22:6, 25:5, 25:6, 26:19, 27:8, 27:10, 27:15, 27:19, 27:25, 28:13, 28:14, 29:13, 33:5
**issues** [12] - 12:13, 12:21, 13:12, 15:13, 18:13, 18:17, 18:23, 20:2, 25:6, 27:18, 40:12,

40:18
**issuing** [1] - 15:6
**item** [1] - 20:14
**itself** [1] - 12:4
**January** [1] - 7:9
**Jersey** [1] - 42:1
**job** [5] - 9:3, 31:17, 34:13, 35:15, 35:19
**Johnson** [2] - 38:12, 39:9
**join** [2] - 4:16, 15:22
**joint** [1] - 18:9
**Judge** [27] - 3:2, 3:18, 4:15, 10:16, 13:2, 15:10, 15:19, 15:22, 15:25, 16:2, 16:5, 16:8, 16:9, 16:12, 16:15, 16:18, 16:23, 16:25, 17:12, 17:15, 17:16, 19:8, 20:22, 21:17, 24:3, 33:6, 34:6
**judge** [2] - 23:16, 38:23, 42:6
**JUDGE** [83] - 3:5, 3:10, 3:20, 4:2, 4:5, 4:13, 5:1, 6:1, 8:2, 8:14, 9:10, 10:15, 11:14, 11:17, 13:1, 14:1, 14:15, 15:11, 15:18, 15:25, 16:2, 16:5, 16:7, 16:8, 16:12, 16:15, 16:17, 16:18, 16:22, 16:23, 16:25, 17:3, 17:9, 17:10, 17:11, 17:13, 17:14, 17:17, 17:20, 17:21, 18:18, 19:4, 19:12, 19:18, 19:20, 20:7, 20:10, 20:13, 20:24, 21:4, 21:20, 22:1, 22:8, 22:18, 23:1, 24:13, 24:16, 24:24, 25:2, 26:5, 26:8, 26:14, 26:18, 26:25, 27:4, 27:21, 28:6, 28:25, 29:9, 30:1, 30:8, 30:14, 30:20, 31:1, 31:4, 31:10, 33:18, 37:7, 37:9, 37:15, 38:3, 38:8, 39:21
**judges** [1] - 35:11
**Judges** [2] - 17:20, 43:12
**judgment** [6] - 11:8, 12:5, 23:14, 23:18, 23:22, 40:12
**junk** [1] - 33:21
**jurisdictions** [1] - 41:24
**jury** [2] - 32:9, 41:11
**justify** [1] - 45:4
**KAPKE** [5] - 11:16, 11:18, 14:3, 15:8, 21:2
**Kapke** [6] - 11:16, 13:9, 13:25, 14:2, 20:25, 21:3
**Kara** [3] - 11:16, 20:25, 21:3
**keep** [3] - 8:15, 9:20, 18:3
**keeping** [1] - 7:5
**kept** [1] - 8:12
**key** [2] - 25:20, 25:21
**kind** [2] - 34:24, 40:19
**known** [1] - 38:13
**knows** [2] - 6:18, 36:4
**KUGLER** [51] - 16:2, 16:7, 16:12, 16:17, 16:22, 17:3, 17:13, 17:21, 18:18, 19:4,

19:12, 19:18, 19:20, 20:7, 20:10, 20:13, 20:24, 21:4, 21:20, 22:1, 22:8, 22:18, 23:1, 24:13, 24:16, 24:24, 25:2, 26:5, 26:8, 26:14, 26:18, 26:25, 27:4, 27:21, 28:6, 28:25, 29:9, 30:1, 30:8, 30:14, 30:20, 31:1, 31:4, 31:10, 33:18, 37:7, 37:9, 37:15, 38:3, 38:8, 39:21
**Kugler** [7] - 3:2, 4:15, 15:19, 15:22, 15:25, 16:2, 16:9
**Kumho** [1] - 23:3
**KUMHO** [1] - 23:3
**Lagana** [3] - 37:8, 37:9, 37:10
**laid** [3] - 36:21, 36:22
**landfills** [1] - 32:22
**last** [3] - 3:13, 10:17, 11:5
**late** [1] - 33:7
**lately** [1] - 43:24
**law** [8] - 13:10, 22:12, 22:23, 22:24, 30:14, 31:21, 32:16, 43:24
**laws** [2] - 40:13, 42:19
**lawsuit** [2] - 21:14, 21:18
**lawyer** [3] - 37:20, 38:23, 42:6
**lawyers** [4] - 39:15, 41:14, 44:19, 44:22
**leadership** [1] - 7:12
**learn** [2] - 5:8, 10:1
**learned** [4] - 6:7, 7:16, 8:23, 8:24
**least** [1] - 14:16
**leave** [1] - 16:8
**left** [1] - 12:3
**legal** [3] - 26:23, 40:12, 40:18
**legitimate** [1] - 20:16
**less** [1] - 35:1
**letter** [6] - 4:6, 5:8, 5:13, 6:6, 13:11, 13:15
**letters** [4] - 4:6, 12:10, 30:2, 31:11
**letting** [1] - 32:7
**levels** [1] - 6:15
**liability** [1] - 23:13
**life** [1] - 38:24
**likely** [1] - 7:14
**limited** [2] - 28:18, 33:15
**line** [2] - 20:25, 41:13
**lines** [1] - 7:24
**lingering** [1] - 28:9
**linkage** [1] - 32:24
**list** [3] - 18:24, 19:23, 20:10
**listening** [1] - 28:15
**listing** [1] - 20:5
**literature** [1] - 34:18
**litigation** [2] - 7:9, 7:11, 9:9, 9:13, 9:23, 14:24, 27:10, 41:24
**litigations** [2] - 6:8, 6:11
**live** [1] - 38:22

**LOCKARD** [4] - 6:3, 8:15, 21:15, 21:21
**Lockard** [4] - 6:4, 8:4, 8:14, 21:15
**Lockard's** [1] - 8:6
**logistics** [1] - 41:15
**long-winded** [1] - 25:9
**look** [10] - 11:10, 13:24, 20:18, 22:21, 22:22, 34:15, 35:10, 35:12, 36:7, 43:16
**looked** [3] - 23:16, 34:22, 43:24
**looking** [2] - 13:24, 36:17
**looks** [2] - 5:10, 18:1
**Loretta** [3] - 15:20, 17:11, 17:16
**lose** [1] - 41:20
**loss** [1] - 11:21
**Louissant** [2] - 18:13, 18:18
**lower** [1] - 34:10
**lucky** [1] - 42:10
**machine** [1] - 23:13
**majority** [1] - 32:2
**manage** [1] - 42:11
**management** [3] - 18:16, 19:1, 20:6
**March** [7] - 4:10, 17:4, 38:11, 38:12, 38:13, 39:9, 39:25
**Marie** [2] - 3:8, 45:13
**Marker** [20] - 4:21, 5:11, 5:16, 5:23, 6:7, 6:12, 6:18, 6:22, 6:25, 7:1, 7:9, 8:3, 8:17, 8:20, 8:24, 9:13, 9:15, 10:1, 10:3, 21:23
**Martin** [1] - 19:2
**mass** [1] - 43:10
**master** [1] - 10:10
**Master** [2] - 3:3, 25:14
**material** [3] - 5:21, 30:8, 44:14
**matter** [10] - 4:15, 7:22, 10:7, 14:24, 15:1, 15:4, 18:13, 18:19, 37:21, 45:11
**matters** [4] - 3:16, 9:13, 18:15, 19:21
**McCall** [1] - 19:3
**McKee** [2] - 24:3, 34:6
**MDL** [8] - 41:16, 41:21, 42:3, 42:13, 42:15, 42:22, 42:25, 44:23
**mean** [5] - 8:22, 39:13, 40:7, 40:18, 43:23
**means** [2] - 34:3, 41:20
**mediation** [2] - 16:19, 16:20
**medical** [12] - 10:9, 11:20, 11:23, 11:24, 12:1, 12:4, 12:11, 12:15, 12:17, 12:23, 14:7, 21:10
**medications** [1] - 25:24
**meet** [1] - 29:18
**merit** [1] - 12:21
**merits** [5] - 11:7, 12:7, 13:9, 13:20, 34:10

**mess** [1] - 42:11
**methodologies** [1] - 28:1
**methodology** [6] - 23:17, 33:9, 34:17, 35:6, 35:8, 36:19
**middle** [1] - 39:25
**might** [6] - 12:11, 14:17, 28:8, 34:13, 35:22, 40:11
**Mills** [2] - 18:14, 18:19
**mine** [1] - 21:8
**minute** [1] - 17:3
**minutes** [2] - 3:5, 39:21
**missed** [1] - 31:13
**misunderstanding** [1] - 31:19
**Mitchell** [2] - 3:9, 45:13
**money** [1] - 44:2
**monitoring** [11] - 10:9, 11:20, 11:23, 11:25, 12:2, 12:4, 12:11, 12:16, 12:17, 12:23, 14:8
**month** [1] - 19:13
**months** [2] - 31:12, 38:13
**morning** [15] - 3:10, 3:24, 4:2, 4:4, 6:3, 16:2, 16:4, 16:22, 16:24, 17:7, 17:23, 18:8, 22:4, 37:14, 37:22
**most** [3] - 34:25, 36:22, 41:7
**motions** [15] - 26:15, 26:19, 27:1, 31:20, 32:2, 32:4, 39:24, 40:3, 40:6, 40:9, 40:12, 40:15, 43:3, 43:5
**Motor** [2] - 23:23, 34:7
**move** [1] - 44:5
**moved** [1] - 23:13
**MR** [53] - 3:18, 3:24, 4:4, 4:12, 4:24, 5:2, 8:5, 10:13, 10:16, 12:25, 13:2, 15:10, 15:15, 15:17, 18:8, 18:23, 19:25, 20:9, 20:12, 20:22, 20:25, 22:4, 22:12, 22:20, 24:10, 24:15, 24:19, 25:1, 25:5, 26:7, 26:12, 26:17, 26:22, 27:2, 27:7, 27:24, 28:13, 29:5, 29:12, 30:6, 30:10, 30:17, 30:24, 31:2, 31:5, 33:17, 37:2, 37:8, 37:10, 37:16, 38:7, 39:18, 39:20
**MS** [13] - 6:3, 8:15, 11:16, 11:18, 14:3, 15:8, 17:15, 17:18, 19:6, 19:17, 21:2, 21:15, 21:21
**multiple** [1] - 6:24, 12:10
**mute** [1] - 3:14
**Mylan** [1] - 22:7
**name** [1] - 42:9
**named** [4] - 10:18, 10:24, 13:5, 14:19
**nature** [1] - 8:21
**necessarily** [1] - 27:25
**necessary** [2] - 24:5, 26:13
**need** [9] - 7:3, 7:19, 20:18, 25:21, 27:15, 38:4, 38:21, 43:10, 45:3
**needed** [1] - 26:10

**needs** [1] - 9:4
**never** [2] - 13:19, 33:5
**New** [1] - 41:25
**next** [10] - 10:8, 15:3, 18:15, 18:20, 19:1, 20:5, 20:8, 20:14, 20:21, 40:2
**nitrosamines** [1] - 25:23
**nobody** [2] - 28:11, 38:12
**nonsense** [1] - 39:3
**noted** [2] - 24:1, 24:5
**nothing** [6] - 4:22, 13:14, 15:13, 20:12, 24:2, 39:20
**notice** [2] - 34:5, 43:25
**notification** [1] - 5:11
**notify** [1] - 41:16
**novel** [1] - 33:3
**number** [14] - 5:9, 5:15, 5:18, 5:19, 6:8, 9:22, 17:11, 18:4, 18:24, 20:2, 20:3, 21:9, 25:8, 42:8, 44:1
**O'Neill's** [1] - 12:15
**objection** [1] - 23:9
**objections** [4] - 22:2, 24:17, 24:21, 24:22
**obligation** [3] - 7:15, 9:11, 9:19
**oblige** [1] - 5:24
**oblivion** [1] - 32:8
**observation** [1] - 42:20
**observational** [1] - 34:23
**obviously** [3] - 6:8, 6:12, 25:22
**occasions** [1] - 25:12
**occurred** [1] - 6:20
**Oddi** [2] - 23:23, 34:6
**ODDI** [2] - 23:23, 34:6
**offered** [3] - 6:23, 9:15, 30:12
**offering** [1] - 11:23
**often** [1] - 22:13
**old** [2] - 32:16, 32:17
**OLIVER** [2] - 19:6, 19:17
**Oliver** [1] - 19:6
**once** [5] - 12:15, 41:15, 42:3, 42:11, 43:2
**one** [19] - 5:15, 7:9, 9:8, 18:23, 18:24, 22:20, 23:11, 24:16, 25:6, 25:7, 25:12, 26:18, 27:2, 31:16, 32:9, 33:4, 33:6, 41:20, 42:7
**ongoing** [1] - 10:3
**opening** [1] - 27:4
**opinion** [3] - 30:11, 32:18, 35:15
**opinions** [8] - 11:23, 28:3, 33:10, 33:12, 35:21, 36:16, 36:17
**opportunity** [18] - 9:25, 11:18, 23:20, 24:22, 25:3, 26:8, 27:21, 27:25, 28:3, 28:7, 29:4, 29:5, 29:21, 30:3, 30:21, 31:6, 31:8, 31:11

**opposing** [1] - 32:6
**options** [1] - 41:2
**order** [12] - 5:5, 7:22, 9:19, 14:12, 15:6, 18:18, 19:13, 37:9, 37:24, 38:4, 39:13, 41:19
**ordered** [1] - 12:22
**orders** [5] - 12:24, 18:4, 18:21, 19:1, 19:20
**organizations** [1] - 40:7
**organized** [1] - 42:21
**originally** [1] - 41:18
**otherwise** [2] - 11:12, 13:12
**ought** [1] - 29:6
**ourselves** [3] - 5:9, 14:7, 26:13
**outcome** [2] - 40:6, 40:9
**outlined** [1] - 12:24
**outside** [1] - 9:13
**own** [4] - 8:10, 8:11, 8:12, 8:13
**Padillas** [1] - 23:7
**PADILLAS** [1] - 23:7
**page** [2] - 27:8, 33:25
**pages** [9] - 13:13, 13:14, 24:25, 27:6, 27:11, 27:20, 29:1, 30:15, 31:13
**panel** [1] - 41:16
**Panigraphy** [2] - 25:13, 37:11
**paper** [1] - 27:16
**papers** [2] - 20:15, 40:20
**parallel** [1] - 8:9
**parameters** [1] - 5:6
**part** [10] - 3:12, 9:11, 9:19, 9:23, 14:5, 14:9, 36:23, 40:8, 42:3, 43:8
**particular** [3] - 9:22, 10:7, 25:13
**parties** [8] - 3:25, 7:19, 11:3, 11:7, 13:21, 14:12, 18:16, 40:17
**party** [6] - 5:18, 5:22, 5:25, 11:19, 14:21, 41:9
**pass** [2] - 8:22, 42:18
**past** [2] - 3:21, 20:18
**path** [1] - 14:11
**payor** [1] - 41:9
**Pelletier** [1] - 20:3
**pend** [1] - 14:24
**people** [8] - 32:24, 33:21, 36:13, 38:21, 43:4, 43:7, 43:10, 44:12
**perfect** [1] - 17:10
**perhaps** [4] - 22:22, 40:19, 43:14, 44:12
**periodically** [1] - 9:16
**permit** [1] - 33:3
**permitted** [1] - 22:17
**personal** [5] - 5:10, 11:22, 21:8, 41:5, 41:6
**personnel** [1] - 21:9
**phone** [5] - 3:7, 3:15, 15:19,

17:7, 18:6
**pick** [3] - 33:16, 35:13, 41:8
**picking** [1] - 35:2
**place** [6] - 3:14, 26:3, 35:4, 39:4, 39:13, 43:19
**plaintiff** [4] - 12:1, 23:20, 23:24, 39:1
**plaintiff's** [4] - 4:6, 23:14, 39:6, 42:6
**plaintiffs** [50] - 3:17, 4:9, 4:25, 6:14, 6:18, 6:22, 6:25, 7:3, 7:6, 7:11, 7:16, 8:16, 8:19, 9:5, 9:7, 9:14, 9:25, 10:12, 10:18, 10:24, 12:9, 12:14, 12:17, 12:22, 13:5, 14:6, 14:17, 14:19, 15:3, 20:16, 21:7, 21:14, 21:21, 21:23, 24:11, 28:7, 28:23, 35:4, 37:22, 37:23, 38:2, 38:3, 39:10, 39:18, 42:16, 42:17, 43:20, 43:21, 44:11
**plaintiffs'** [12] - 7:10, 9:12, 9:20, 12:6, 14:10, 19:4, 24:2, 25:3, 28:1, 28:20, 30:5, 42:21
**plan** [1] - 37:10
**plate** [2] - 44:20, 44:23
**play** [1] - 40:13
**pleasant** [1] - 21:11
**plus** [1] - 5:21
**point** [6] - 7:8, 7:19, 9:18, 19:15, 21:6, 35:6
**pointing** [2] - 35:19, 36:13
**position** [1] - 13:3
**possible** [1] - 34:22
**pot** [1] - 7:17
**potential** [2] - 8:7, 13:6
**potentially** [1] - 13:7
**Pottegard** [1] - 35:3
**POTTEGARD** [1] - 35:3
**practice** [2] - 31:21, 31:23
**practiced** [1] - 32:16
**precisely** [1] - 28:7
**preclude** [1] - 29:23
**prefer** [1] - 17:15
**premature** [1] - 12:7
**prepared** [2] - 42:16, 42:17
**present** [5] - 4:23, 27:22, 29:16, 30:3, 30:22
**presentation** [2] - 25:11, 34:1
**presented** [1] - 28:8
**pretrial** [1] - 32:10
**pretty** [5] - 34:16, 38:16, 38:25, 40:18, 43:21
**prevent** [1] - 25:11
**prevented** [2] - 24:16, 26:18
**previously** [1] - 33:15
**principal** [1] - 3:22
**problem** [1] - 38:14
**problems** [2] - 36:10, 42:13
**procedurally** [1] - 13:12

**procedure** [2] - 12:24, 21:3
**procedures** [1] - 26:2
**proceed** [2] - 8:8, 8:9
**proceeding** [1] - 28:16
**PROCEEDINGS** [1] - 3:1
**Proceedings** [1] - 45:7
**proceedings** [2] - 18:2, 45:11
**process** [9] - 4:15, 4:18, 13:18, 13:19, 14:25, 15:13, 42:13, 42:16, 42:25
**product** [1] - 23:12
**production** [1] - 31:15
**proffered** [2] - 23:10, 34:12
**progress** [1] - 19:10
**promptly** [1] - 5:20
**proof** [1] - 34:2
**proper** [1] - 7:21
**properly** [1] - 5:16
**proponent** [2] - 29:13, 32:17
**proposing** [1] - 10:4
**prospect** [1] - 41:23
**protect** [1] - 10:4
**protocol** [1] - 3:13
**provide** [5] - 8:21, 20:5, 22:23, 27:24, 31:8
**public** [1] - 42:21
**publicly** [1] - 42:15
**pure** [1] - 39:3
**purport** [1] - 27:12
**purportedly** [1] - 11:9
**purpose** [1] - 31:20
**put** [3] - 26:2, 31:15, 43:25
**putting** [1] - 13:15
**qualifications** [1] - 33:4
**quality** [1] - 44:22
**quarterly** [1] - 44:14
**questioned** [1] - 34:20
**questions** [14] - 5:13, 8:1, 9:6, 22:8, 24:17, 24:21, 25:10, 25:16, 25:19, 25:21, 27:15, 28:9, 29:2, 41:8
**quick** [1] - 16:6
**quickly** [1] - 16:25
**quite** [4] - 19:22, 25:8, 25:18
**raise** [4] - 12:13, 12:19, 12:21, 24:22
**raised** [5] - 4:20, 12:9, 23:9, 26:22, 37:22
**raising** [2] - 12:12, 26:19
**RDR** [1] - 45:13
**reach** [1] - 8:13
**read** [6] - 21:4, 28:6, 31:10, 32:1, 38:25, 39:9
**reading** [2] - 20:15, 38:16
**ready** [2] - 37:4, 37:5
**real** [1] - 23:6
**really** [13] - 4:15, 4:22, 5:24, 6:18, 6:23, 14:6, 23:4, 23:17, 23:19, 33:5, 37:15, 43:3, 43:10

**reason** [3] - 11:1, 12:10, 40:22
**reasonable** [4] - 33:22, 43:21, 44:1, 44:11
**reasoning** [1] - 37:11
**reasons** [4] - 25:7, 27:12, 36:8, 42:23
**received** [4] - 4:5, 10:20, 24:8, 24:10
**recess** [1] - 15:24
**recommended** [2] - 22:25, 23:1
**record** [10] - 7:25, 11:2, 24:6, 25:11, 26:4, 28:4, 31:7, 31:9, 31:12, 45:11
**records** [1] - 21:10
**referred** [1] - 23:15
**refers** [1] - 35:1
**regard** [1] - 7:18
**regarding** [2] - 26:20, 30:23
**rehearsal** [2] - 33:14, 35:23
**reiterate** [1] - 14:4
**rejected** [2] - 38:12, 39:8
**relative** [1] - 35:25
**relatively** [1] - 41:10
**relevance** [1] - 33:7
**relevant** [3] - 29:18, 32:18, 34:18
**reliability** [3] - 29:7, 34:10, 34:11
**reliable** [2] - 27:13, 35:14
**relied** [2] - 28:1, 28:23
**relisted** [1] - 18:20
**relisting** [1] - 20:4
**rely** [1] - 35:2
**remain** [1] - 12:10
**remaining** [2] - 20:4, 41:25
**remains** [1] - 34:16
**remind** [1] - 33:24
**repeat** [1] - 41:3
**repeatedly** [1] - 39:14
**reply** [1] - 27:5
**report** [3] - 23:16, 23:17, 23:18
**reporter** [1] - 3:7
**REPORTER** [1] - 3:8
**Reporter/Transcriber** [1] - 45:13
**reporting** [1] - 44:15
**reports** [9] - 24:8, 24:10, 27:11, 29:10, 30:6, 34:19, 35:18, 36:22, 38:25
**represent** [1] - 22:7
**request** [10] - 10:9, 10:18, 10:20, 10:21, 10:25, 12:21, 18:14, 18:25, 41:17
**requested** [1] - 22:25
**requesting** [1] - 18:12
**requests** [2] - 10:21, 13:4
**required** [3] - 9:7, 23:9, 24:3
**requirement** [1] - 34:9
**requires** [1] - 12:20

**requiring** [1] - 8:21
**resolution** [2] - 43:6, 43:11
**resolve** [2] - 19:8, 43:4
**resolved** [3] - 18:13, 18:24, 20:20
**respect** [9] - 4:8, 4:17, 4:21, 8:3, 9:7, 9:20, 10:6, 12:6, 26:2
**response** [6] - 12:9, 12:14, 13:25, 15:21, 19:19, 23:14
**RESPONSE** [1] - 16:4
**responsibility** [1] - 30:18
**rest** [1] - 27:1
**restricted** [1] - 28:11
**result** [2] - 28:9, 32:25
**Ret** [1] - 3:3
**retailers** [3] - 43:15, 43:16, 44:8
**retained** [1] - 8:25
**returnable** [3] - 18:15, 19:1, 19:13
**reversed** [1] - 23:10
**review** [1] - 34:18
**RMR** [1] - 45:13
**road** [1] - 13:7
**Robert** [2] - 3:2, 18:24
**role** [3] - 33:15, 33:16, 41:14
**route** [1] - 8:8
**Rule** [1] - 14:7
**rule** [1] - 15:6
**Rules** [1] - 29:19
**rules** [3] - 31:25, 33:2, 42:19
**ruling** [2] - 5:3, 20:23
**sandbag** [1] - 13:6
**saw** [2] - 5:13, 25:9
**scale** [1] - 43:9
**scant** [1] - 23:15
**schedule** [6] - 4:14, 16:15, 18:2, 38:15, 39:4, 40:4
**scheduling** [7] - 4:8, 4:17, 15:12, 37:18, 37:19, 43:13, 44:20
**science** [3] - 33:21, 33:22
**scientific** [6] - 27:13, 28:2, 30:11, 32:19, 33:3, 34:11
**scientist** [1] - 33:22
**scientists** [5] - 33:11, 34:24, 35:9, 36:5, 36:17
**scrutiny** [1] - 29:24
**SEC** [1] - 44:14
**second** [1] - 17:1
**security** [3] - 6:16, 6:22, 8:25
**see** [19] - 15:18, 16:9, 17:3, 17:6, 20:7, 28:14, 29:12, 29:20, 31:22, 33:7, 38:21, 40:5, 42:4, 43:20, 44:15, 44:24, 45:2, 45:4
**seeing** [2] - 13:6, 26:1
**seek** [3] - 6:18, 33:1, 37:3
**seeking** [2] - 18:21, 21:24
**selected** [2] - 26:25, 27:2
**seller** [1] - 43:17

**send** [4] - 17:11, 17:18, 41:17
**sense** [3] - 14:13, 30:13, 31:5
**sensitive** [1] - 14:23
**sent** [1] - 23:11
**serious** [1] - 43:4
**seriously** [1] - 6:13
**service** [1] - 21:10
**sessions** [1] - 43:13
**set** [3] - 6:24, 17:7, 18:11
**Seth** [3] - 3:25, 37:16
**setting** [1] - 11:6
**settle** [1] - 43:23
**settlements** [1] - 44:13
**several** [1] - 11:22
**shaky** [2] - 34:3, 34:5
**shielded** [1] - 28:23
**shift** [1] - 38:3
**short** [1] - 5:5
**shortly** [2] - 4:16, 16:9
**shot** [2] - 38:16, 42:6
**show** [13] - 12:22, 13:18, 13:19, 14:13, 14:25, 15:6, 18:4, 18:18, 18:21, 19:1, 19:13, 19:20, 32:17
**show-cause** [4] - 13:18, 13:19, 14:25, 15:6
**side** [9] - 13:18, 13:19, 13:20, 23:21, 33:16, 35:23, 36:20, 39:6, 39:7
**side's** [1] - 31:16
**sides** [2] - 34:16, 35:1
**significance** [2] - 27:9
**significant** [1] - 44:13
**similar** [2] - 10:17, 21:18
**simply** [7] - 5:8, 5:15, 5:20, 12:15, 12:16, 26:1, 29:6
**simultaneous** [1] - 41:24
**single** [1] - 12:1
**sit** [1] - 22:15
**sites** [2] - 32:23
**sits** [1] - 7:10
**six** [1] - 18:21
**size** [1] - 35:13
**skirmishes** [1] - 32:11
**skirmishing** [1] - 39:2
**SLATER** [7] - 3:18, 4:12, 15:17, 37:2, 37:8, 37:10, 39:18
**Slater** [3] - 3:18, 4:11, 37:2
**SLEET** [10] - 16:5, 16:8, 16:15, 16:18, 16:25, 17:9, 17:11, 17:14, 17:17, 17:20
**Sleet** [4] - 16:5, 16:12, 17:15, 43:12
**slowed** [1] - 3:6
**small** [1] - 25:22
**SMITH** [2] - 17:15, 17:18
**smoking** [1] - 36:12
**so-called** [1] - 33:11
**sole** [2] - 29:7, 29:9

**someone** [1] - 22:22
**somewhat** [1] - 27:19
**soon** [1] - 45:5
**sooner** [2] - 14:22, 42:24
**sounds** [1] - 8:10
**speaking** [3] - 3:14, 3:15, 5:4
**Special** [2] - 3:3, 25:14
**specific** [2] - 11:23, 11:24
**spend** [2] - 39:21, 44:7
**spent** [1] - 31:12
**spoken** [1] - 45:1
**spokesperson** [1] - 3:22
**St** [1] - 24:4
**standard** [5] - 24:17, 30:18, 32:17, 34:10, 34:11
**standards** [1] - 29:18
**stands** [1] - 9:17
**STANOCH** [8] - 4:24, 5:2, 8:5, 10:13, 10:16, 12:25, 13:2, 15:10
**Stanoch** [7] - 4:24, 7:24, 8:2, 10:13, 11:14, 13:1, 14:4
**start** [8] - 14:25, 18:1, 22:3, 23:3, 37:4, 43:10, 44:5
**started** [2] - 3:12, 5:12
**starting** [3] - 17:25, 37:1, 43:4
**state** [3] - 40:13, 42:6, 42:10
**statement** [1] - 18:12
**States** [1] - 3:2
**states** [1] - 40:14
**statistical** [1] - 34:23
**status** [1] - 20:5
**stay** [1] - 45:2
**steering** [1] - 7:10
**Stengel** [5] - 16:8, 16:18, 16:23, 17:16, 43:12
**STENGEL** [2] - 16:23, 17:10
**step** [1] - 44:22
**stepped** [1] - 44:20
**steps** [1] - 10:3
**Steve** [1] - 18:9
**still** [5] - 19:14, 39:10, 40:12, 43:7, 43:23
**stipulation** [1] - 40:19
**stir** [1] - 7:17
**stock** [1] - 35:5
**stop** [1] - 7:25
**stopped** [1] - 42:9
**stops** [1] - 13:14
**straightforward** [1] - 25:16
**strengths** [2] - 35:25, 36:13
**strides** [1] - 8:24
**stuck** [1] - 44:1
**studies** [9] - 32:24, 34:23, 35:4, 35:12, 35:14, 36:1, 36:15, 36:17
**study** [3] - 36:6, 36:9, 36:11
**stuff** [3] - 17:25, 34:24, 40:15
**subject** [5] - 5:10, 7:22, 9:3,

28:12, 34:8
**submit** [1] - 13:22
**submitted** [5] - 13:10, 28:21, 30:2, 30:9, 30:15
**succeed** [1] - 44:10
**suggest** [3] - 30:25, 31:2, 43:14
**suggested** [3] - 7:24, 8:4, 28:15
**suggesting** [2] - 22:13, 30:24
**suggestion** [1] - 7:5
**summary** [6] - 11:7, 12:5, 23:14, 23:18, 23:21, 40:11
**Sunday** [1] - 8:7
**Superfund** [1] - 32:23
**supplement** [1] - 28:3
**supplemental** [2] - 28:14, 28:18
**supplied** [1] - 6:18
**supply** [1] - 7:23
**support** [2] - 33:23, 40:14
**supported** [1] - 27:13
**Supreme** [6] - 23:4, 31:17, 31:24, 33:2, 33:19, 33:24, 35:16, 35:20
**surely** [1] - 42:25
**surprises** [1] - 32:15
**system** [2] - 42:11, 42:18
**table** [1] - 20:1
**tactic** [1] - 13:6
**tactically** [1] - 32:5
**talks** [1] - 36:2
**tandem** [1] - 8:9
**team** [1] - 6:22
**telephonically** [1] - 3:1
**terms** [5] - 8:16, 8:23, 8:24, 10:2, 37:18
**test** [1] - 34:12
**testifies** [1] - 38:19
**testify** [2] - 32:7, 37:13
**testifying** [3] - 38:12, 39:1
**testimony** [14] - 23:10, 26:15, 26:20, 26:24, 27:13, 29:2, 29:8, 29:14, 29:17, 29:18, 29:24, 30:11, 30:19, 33:4
**Teva** [1] - 18:9
**the court** [18] - 6:14, 8:1, 11:3, 17:24, 22:14, 22:15, 23:15, 24:4, 24:22, 26:10, 27:18, 27:24, 28:3, 29:15, 30:2, 30:17, 31:7, 33:14
**the witness** [3] - 25:8, 25:15, 29:14
**theatrical** [1] - 31:15
**themselves** [4] - 8:20, 10:1, 34:7, 42:9
**theory** [1] - 31:14
**they've** [2] - 8:25, 31:21
**thinks** [3] - 38:16, 42:7
**Third** [10] - 22:13, 23:6, 23:8, 23:10, 23:19, 23:25, 31:18,

33:20, 35:17, 35:20
**third** [1] - 41:9
**third-party** [1] - 41:9
**Thomas** [1] - 3:3
**Thorn** [2] - 18:15, 18:19
**thoroughly** [1] - 10:22
**thousands** [7] - 27:5, 27:6, 27:20, 30:15, 31:12, 38:25
**three** [4] - 5:14, 5:20, 5:21, 33:4
**Thursday** [1] - 7:1
**timely** [2] - 24:8, 26:15
**Tire** [1] - 23:3
**today** [5] - 3:11, 16:10, 16:20, 39:17, 45:1
**today's** [1] - 3:16
**together** [5] - 7:20, 21:24, 41:21, 41:22, 43:10
**tomorrow** [5] - 16:22, 16:23, 17:4, 17:8, 44:4
**took** [1] - 24:13
**top** [1] - 22:20
**track** [1] - 11:2
**Tracy** [1] - 19:7
**traditional** [1] - 34:3
**transcript** [3] - 39:8, 39:9, 45:10
**transcripts** [1] - 24:24
**Traurig** [4] - 6:4, 6:6, 18:9, 21:16
**tremendous** [1] - 31:19
**trial** [4] - 23:5, 23:16, 32:10, 33:14
**trials** [2] - 17:25, 34:21
**trier** [1] - 34:8
**TRISCHLER** [25] - 22:4, 22:12, 22:20, 24:10, 24:15, 24:19, 25:1, 25:5, 26:7, 26:12, 26:17, 26:22, 27:2, 27:7, 27:24, 28:13, 29:5, 29:12, 30:6, 30:10, 30:17, 30:24, 31:2, 31:5, 33:17
**Trischler** [7] - 22:5, 22:9, 24:7, 26:5, 30:1, 31:1, 31:4
**troubles** [1] - 19:10
**true** [3] - 4:1, 25:1, 28:25
**try** [5] - 7:2, 19:8, 41:1, 42:7, 43:4
**trying** [8] - 12:5, 12:19, 12:20, 30:25, 31:2, 36:3, 41:4, 41:13
**two** [10] - 3:5, 5:18, 5:21, 10:17, 13:14, 16:14, 19:25, 28:21, 28:22, 31:11
**two-and-a-half** [1] - 13:14
**type** [1] - 18:5
**types** [1] - 8:17
**ubiquitous** [1] - 31:21
**ultimately** [3] - 10:23, 13:5, 14:17
**unbelievable** [1] - 17:4
**undeniable** [1] - 27:9

**under** [5] - 5:7, 14:6, 29:19, 32:16, 44:8
**underlying** [2] - 35:13, 35:25
**unethical** [1] - 34:12
**unfair** [1] - 14:6
**unfortunately** [1] - 19:9
**unique** [1] - 43:17
**United** [1] - 3:2
**unless** [2] - 20:8, 39:4
**unusual** [1] - 23:12
**up** [11] - 6:24, 8:24, 13:6, 15:2, 17:7, 28:8, 36:14, 39:11, 40:2, 44:20, 44:22
**upcoming** [1] - 26:3
**update** [3] - 9:7, 17:24, 18:23
**updates** [3] - 5:21, 9:16, 19:25
**urge** [1] - 40:17
**utter** [1] - 39:3
**valsartan** [4] - 6:9, 6:10, 8:18, 25:23
**valsartan-containing** [1] - 25:23
**value** [1] - 25:25
**Vanaskie** [5] - 3:3, 20:23, 21:17, 21:22, 25:14
**VANASKIE** [20] - 3:5, 3:10, 3:20, 4:2, 4:5, 4:13, 5:1, 6:1, 8:2, 8:14, 9:10, 10:15, 11:14, 11:17, 13:1, 14:1, 14:15, 15:11, 15:18, 15:25
**various** [1] - 27:12
**vast** [1] - 32:2
**vendor** [5] - 5:11, 5:16, 5:23, 6:13, 8:13
**vendors** [1] - 9:8
**Victoria** [2] - 6:3, 21:15
**view** [3] - 4:9, 8:2, 21:18
**vigorous** [1] - 34:1
**voluntarily** [1] - 20:17
**voluntary** [1] - 14:18
**vulnerability** [1] - 5:19
**wait** [1] - 40:22
**wants** [1] - 22:1
**warranted** [1] - 22:14
**waste** [1] - 12:12
**weak** [3] - 32:5, 33:20, 35:21
**weaknesses** [2] - 34:16, 35:18
**weather** [1] - 41:5
**Webb** [1] - 20:3
**Wednesday** [4] - 4:10, 36:24, 37:1, 38:8
**weed** [2] - 33:20, 33:21
**week** [3] - 4:10, 22:3, 28:16
**weeks** [5] - 5:12, 5:14, 5:21, 15:2, 43:3
**whatsoever** [2] - 7:7, 32:24
**Whitfield** [2] - 19:2, 19:7
**whole** [1] - 7:11
**wholesalers** [1] - 44:6

**William** [1] - 20:3
**Williams** [1] - 19:3
**winded** [1] - 25:9
**wish** [1] - 45:1
**withdrawn** [2] - 18:14, 18:25
**witness** [2] - 25:12, 29:14
**witnesses** [13] - 4:10, 24:11, 28:20, 28:23, 29:17, 29:25, 31:15, 31:16, 33:16, 35:24, 35:25, 38:14, 38:15
**wondering** [1] - 12:3
**word** [1] - 34:5
**world** [1] - 40:24
**worried** [1] - 38:5
**worst** [2] - 11:7, 13:16
**wrote** [2] - 33:24, 34:6
**year** [3] - 41:15, 44:17, 44:24
**years** [1] - 36:14
**yesterday** [2] - 6:25, 8:7
**Yoon** [1] - 35:3
**YOON** [1] - 35:4
**yourself** [1] - 3:15
**ZHP** [1] - 3:25
**Zoom** [5] - 16:19, 16:20, 17:7, 17:15, 17:17