UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN PRODUCTS LIABILITY LITIGATION** | Case No. 19-md-2875-RBK MDL No. 2875 Hon. Robert B. Kugler, District Judge |
| **This Documents Relates to All Actions** | |

**OPPOSITION OF WHOLESALER DEFENDANTS TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF THE CONSUMER AND THIRD PARTY PAYOR ECONOMIC LOSS CLAIMS**[1]

---

[1] This Opposition addresses Consumer Economic Loss and TPP Economic Loss Plaintiffs' (collectively, "Plaintiffs") requests for class certification and adopts and fully incorporates the briefing and evidence of Defendant Manufacturers/Pharmacies. Mfr. Mem. and Mfr. TPP Mem. Wholesalers oppose Plaintiffs' Motion for Class Certification ("Motion"), Dkt. 1747, Dkt. 1747-1 at 60-63; Dkt. 1747-2; Plaintiffs' Consumer Economic Loss Class Certification Memorandum ("Consumer EL Memo"), Dkt. 1748, and TPP Brief in Support of Motion to Certify Class ("TPP Class Cert Memo"), Dkt. 1749 (Dkt. 1748 and 1749, together, "Class Cert Memos").

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

  A.  Summary of Argument ............................................................................................1

  B.  Facts Relevant to This Opposition .........................................................................2

      1.  Plaintiffs' claim and proposed classes as to Wholesalers ........................ 2

      2.  Wholesaler-related experts and testimony ............................................... 3

ARGUMENT .................................................................................................................... 3

  A.  Plaintiffs Fail to Establish Standing.......................................................................3

      1.  Plaintiffs fail to demonstrate, or even allege, an injury in fact, per the District of New Jersey's recent ruling in *In re Metformin*.............................. 4

      2.  Plaintiffs suffered no injury in fact, because the VCDs worked as intended, and Plaintiffs allege no physical injury......................................... 5

      3.  TransUnion requires that Plaintiffs establish each class member's standing. .......... 6

  B.  Plaintiffs Do Not, and Cannot, Satisfy Ascertainability. ....................................7

      1.  NDC tracing—the method proposed by Plaintiffs—is insufficient to identify a class, as this Court has already found. ................................. 7

      2.  Lot level data is required and does not exist............................................. 9

  C.  Courts Routinely Deny Class Certification of UE Claims...............................11

  D.  Conflicts of Law Issues Render Plaintiffs' UE Claim Uncertifiable.............................12

      1.  Legal standard for choice of law analysis................................................ 12

      2.  Actual conflicts exist among the UE laws of the various states. ............................ 13

          a)  Further analysis illustrates actual, insurmountable conflicts among the applicable UE laws. ................................................................. 15

      3.  Application of New Jersey's choice of law principles to Plaintiffs' UE claims demonstrates that the UE laws of numerous states apply. ........................ 15

  E.  Plaintiffs Do Not Satisfy the Rule 23(b)(3) Requirement of Predominance. .................16

      1.  Individual questions of *law* predominate over common questions with regard to Plaintiffs' UE claims........................................................ 16

      2.  Individual questions of *fact* predominate over common issues with regard to Plaintiffs' UE claims....................................................... 18

          a)  Individual questions of fact will necessarily predominate in the UE liability inquiry. ........................................................................... 18

          b)  Plaintiffs' UE damages model ignores the prevalence of individual issues inherent to a UE damages calculation. ........................................ 20

      3.  Dr. Conti's methodology cannot be applied to determine UE damages as to Wholesalers........................................................................... 21

      4.  Individual issues predominate in determining UE damages.................................... 22

i

F.      Plaintiffs Do Not Establish the Rule 23(b)(3) Requirement That Their Proposed Class Action is Superior or Manageable.........................................................................24

G.      Plaintiffs Do Not, and Cannot, Satisfy the Commonality Requirement.........................25

CONCLUSION............................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys Norvir Anti-Trust Litig.*,
  2007 WL 1689899 (N.D. Cal. June 11, 2007) ........................................................................ 12

*In re Actiq Sales & Mktg. Pracs. Litig.*,
  307 F.R.D. 150 (E.D. Pa. 2015) ................................................................................. *passim*

*Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*,
  No. 20-3528, WL 3612155 (3d Cir. Aug. 16, 2021) ...................................................... 16, 17

*Agostino v. Quest Diagnostics Inc.*,
  256 F.R.D. 437 (D.N.J. 2009) .................................................................................................. 14

*In re Amtrak Train Derailment in Philadelphia, Pennsylvania*,
  No. 15-MD-2654, 2016 WL 1359725 (E.D. Pa. Apr. 6, 2016) ............................................. 25

*In re Aqua Dots Prods. Liab. Litig.*,
  270 F.R.D. 377 (N.D. Ill. 2010) ............................................................................................. 14

*Avram v. Samsung Electronics America Inc.*,
  2013 WL 3654090 (D.N.J. July 11, 2013) ............................................................................. 14

*In re Baycol Prods. Litig.*,
  218 F.R.D. 197 (D. Minn. 2003) ............................................................................................. 11

*Bayshore Ford Truck v. Ford Motor Co.*,
  No. CIV. A. 99-741 JLL, 2010 WL 415329 ........................................................................... 22

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
  276 F.R.D. 336 (W.D. Mo. 2011) ........................................................................................... 11

*Brunwasser v. Johns*,
  No. CIV.A. 01-1255, 2002 WL 32775 (W.D. Pa. Jan. 10, 2002) *report and
  recommendation adopted* (Feb. 25, 2002), *subsequently aff'd*, 52 F. App'x 185
  (3d Cir. 2002) ........................................................................................................................... 4

*Byrd v. Aaron's Inc.*,
  784 F.3d 154 (2015) ............................................................................................................. 3, 4

*In re Cendant Corp. Secs. Litig.*,
  404 F.3d 173 (3d Cir. 2005) ................................................................................................... 25

*In re Checking Account Overdraft Litig.*,
  286 F.R.D. 645 (S.D. Fla. 2012) ............................................................................................ 21

*Clavell v. Midland Funding LLC*,
    No. CIV.A. 10-3593, 2011 WL 2462046 (E.D. Pa. June 21, 2011) .......................................10

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) ...........................................................................................7

*Crescimanni v. Trovato*,
    162 A.D.3d 849, 80 N.Y.S.3d 89 (2018) .............................................................................13

*In re Digitek Prods. Liab. Litig.*,
    No. 2:08-md-01968, 2010 WL 2102330 (S.D. W. Va. May 25, 2010) ......................... *passim*

*Emerson Radio Corp. v. Yu*,
    No. 2:20-cv-01618-WJM-MF, 2021 WL 1186824 (D.N.J. Mar. 30, 2021) ............................13

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.*,
    No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550 (D. Kan. Mar. 10, 2020) ............................11

*Estrada v. Johnson & Johnson*,
    No. CV 16-7492 (FLW), 2017 WL 2999026 (D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018).........................................................................6

*Fenwick v. Ranbaxy Pharms., Inc.*,
    353 F.Supp.3d 315 (D.N.J. 2018) .....................................................................................8, 9

*Ferreras v. Am. Airlines, Inc.*,
    946 F.3d 178 (3d Cir. 2019).................................................................................................26

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014).........................................................................................17, 19

*Gray v. BMW of N. Am., LLC*,
    22 F.Supp.3d 373 (D.N.J. 2014) .........................................................................................16

*Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd.*,
    836 F.3d 261 (3d Cir. 2016).............................................................................................3, 4

*Hernandez v. Ashley Furniture Indus., Inc.*,
    No. CIV.A. 10-5459, 2013 WL 2245894 (E.D. Pa. May, 22, 2013) .................................19, 26

*Hernandez v. Wells Fargo Bank, N.A.*,
    No. C 18-07354 WHA, 2020 WL 469893 (N.D. Cal. Jan. 29, 2020)....................................26

*James v. Johnson & Johnson Consumer Companies, Inc.*,
    No. 10-CV-03049 DMC JAD, 2011 WL 198026 (D.N.J. Jan. 20, 2011) .............................5, 6

*Jones v. Monsanto Co.*,
   No. 19-0102-CV-W-BP, 2021 WL 2426126 (W.D. Mo. May 13, 2021)........................22, 23

*Keilholtz v. Lennox Hearth Prods. Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010) ..............................................................................................12

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F.App'x 257 (3d Cir. 2010) ..................................................................................................6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   299 F.Supp.3d 430 (S.D.N.Y. 2018)........................................................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................................4

*In re Magnesium Oxide Antitrust Litig.*,
   No. CIV. 10-5943 DRD, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ........................................4

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ..............................................................................................12, 14

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
   422 F.Supp.3d 194 (D.D.C. 2019) ....................................................................11, 13, 16, 18

*McDonald v. Wells Fargo Bank, N.A.*,
   374 F. Supp. 3d 462 (W.D. Pa. 2019).......................................................................................21

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   257 F.R.D. 46 (D.N.J. 2009)......................................................................................................14

*In re Metformin*,
   No. CV 20-2324, 2022 WL 970281 (D.N.J. Mar. 30, 2022)......................................................4

*In re Modafinil Antitrust Litig.*,
   837 F.3d 238 (3d Cir. 2016).......................................................................................................20

*Muehlbauer v. General Motors Corp.*,
   No. 05 C 2676, 2009 WL 874511 (N.D. Ill. Mar. 31, 2009) ...........................................11, 14

*Neale v. Volvo Cars of N. Am. LLC*,
   794 F.3d 353 (3d Cir. 2015)...................................................................................................6, 21

*Newton v. Merrill Lync, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001)..........................................................................................21, 24, 25

*In re Niaspan Antitrust Litig.*,
   464 F.Supp.3d 678 (E.D. Pa. 2020) .........................................................................................11

*Pistachio v. Apple, Inc.*,
  No. 4:20-CV-07034-YGR, 2021 WL 949422 (N.D. Cal. March 11, 2021).........................12

*Powers v. Lycoming Engines*,
  245 F.R.D. 226 (E.D. Pa. 2007)...............................................................................14

*Powers v. Lycoming Engines*,
  272 F.R.D. 414 (E.D. Pa. 2011)...............................................................................14

*Powers v. Lycoming Engines*,
  328 F.App'x 121 (3d Cir. 2009) ...............................................................................12

*In re Prempro Prods. Liab. Litig.*,
  230 F.R.D. 555 (E.D. Ark. 2005)....................................................................... *passim*

*In re Suboxone (Buprenophrine Hydrochlorine & Naxolene) Antitrust Litig.*,
  967 F.3d 264 (3d Cir. 2020)....................................................................................21

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ..................................................................................21

*Rivera v. Wyeth-Ayerst Lab'ys*,
  283 F.3d 315 (5th Cir. 2002) ....................................................................................6

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
  No. 05 C 2623, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ...................................14

*Singer v. AT&T Corp.*,
  185 F.R.D. 681 (S.D. Fla. 1998) ..............................................................................12

*Thompson v. Bayer Corp.*,
  4:07CV00017 JMM, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009)..................................11, 14

*Thompson v. Jiffy Lube Intern. Inc.*,
  250 F.R.D. 607 (D. Kan. 2008).................................................................................14

*Toll Bros., Inc. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009).................................................................................3, 4

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021)...................................................................................1, 4, 6

*Tyler v. Alltel Corp.*,
  265 F.R.D. 415 (E.D. Ark. 2010)..............................................................................14

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ..............................................................................19

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  No. 2:06-cv-1833, 2015 WL 3623005 (E.D. Pa. June 10, 2015)....................................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..........................................................................................................26

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ......................................................................................13

*Webb v. Clark*,
  274 Or. 387, 546 P.2d 1078 (Or. 1976) ..........................................................................17

*In re Wellbutrin XL Antitrust Litig.*,
  260 F.R.D. 143 (E.D. Pa. 2009)........................................................................................4

*In re Wellbutrin XL Antitrust Litig.*,
  308 F.R.D. 134 (E.D. Pa. 2015)......................................................................................10

**Other Authorities**

21 C.F.R. § 207.33(a)................................................................................................................8

Fed. R. Civ. P. 23 ........................................................................................................*passim*

Fed. R. Civ. P. 23(b)(3)....................................................................................................16, 24

Wholesalers are uniquely situated in this economic loss putative class action, because Consumer and Third Party Payor ("TPP") Plaintiffs seek class certification against them for only *one* cause of action: unjust enrichment ("UE"). Plaintiffs do not point to, nor have Wholesalers identified, a single federal court that has certified a multi-state UE class in an analogous mass tort pharmaceutical case under Rule 23, and all relevant factors warrant against this Court being the first. It is no surprise, then, that Plaintiffs treat Wholesalers as an afterthought, with only a half-hearted attempt to justify their Wholesaler-specific classes—which the Court can now easily reject.

## INTRODUCTION

### A.    Summary of Argument

The Court should deny the request to certify economic loss classes against Wholesalers for numerous reasons, ***any one of which on its own justifies rejection of their request***.

First, Plaintiffs cannot demonstrate ***standing*** as to either Named Plaintiffs or the unnamed class members. Plaintiffs do not establish the requisite injury in fact, and fail to demonstrate standing as to ***all class members*** under *TransUnion LLC v. Ramirez,* 141 S.Ct. 2190, 2208 (2021).

Beyond standing, Plaintiffs cannot meet their burden under Rule 23 to justify certification of the sole claim against Wholesalers.[2] First, Plaintiffs cannot identify any administratively feasible method to ***ascertain*** the proposed class members, as existing data does not indicate whether a putative member's VCDs were distributed by a Wholesaler (and, if so, which one). Second, conflict of law issues and individual inquiries defeat ***predominance and superiority***—in

---

[2] Plaintiffs' brief heading "Consumer Protection Act Claims: Common Questions Will Predominate Over Individual Questions Against Manufacturer, Wholesaler, and Retailer Defendants" misleads, as the brief clarifies certification is actually sought only on the UE claim as to Wholesalers. Dkt. 1748 at 97.

1

part, because the differing UE laws of *48* states[3] apply, and Plaintiffs' proposed subgroupings cannot reconcile these differences. Plaintiffs' trial plan compounds the ***manageability*** disaster by lumping Plaintiffs' *sole* UE claim against Wholesalers into the same three-phase trial where one jury will decide *all* claims against *all* Defendants as to *all* of Plaintiffs' theories of liability—a thoroughly "unmanageable" plan. Last, Plaintiffs cannot demonstrate that a class action is capable of generating ***common "answers"*** to the relevant individualized inquiries inherent in the UE determination, the answers to which vary by state law and by consumer.

Of note, Plaintiffs' fixation on "worthlessness" and injury at the "point of sale" have no bearing on their claims against Wholesalers, as inherent in the nature of the UE claim they assert, and as directly admitted by their sole damages expert. *See* FN 20.

**B.    Facts Relevant to This Opposition**

**1. Plaintiffs' claim and proposed classes as to Wholesalers**

Plaintiffs request 11 Wholesaler subclasses but do not propose individual Wholesaler-specific classes like they do for all other Defendants. Instead, Plaintiffs propose six Consumer subclasses,[4] and five TPP subclasses, all of which are grouped by state.[5] Dkt. 1747-1 at 60-63. Each state subclass applies to all three Wholesalers, with no delineation of Wholesaler involvement by transaction or relationship to Manufacturer.[6] Plaintiffs do not provide sufficient explanation for their state groupings, and provide no conflict or choice of law analysis.[7] Dkt. 1748,

_____

[3] For simplicity, "states" as used in this brief includes D.C. and Puerto Rico.
[4] These proposed UE consumer subclasses include 46 states, as well as D.C. and Puerto Rico. Although in the proposed classes, Louisiana UE claims were already dismissed. Dkt. 839.
[5] These proposed UE TPP subclasses include 45 states, as well as D.C. and Puerto Rico.
[6] Plaintiffs, in their proposed subclasses, group *other* Defendants by *specific* Defendant. Plaintiffs' inability to do so as to Wholesalers demonstrates that *they cannot identify a particular Wholesaler involved in specific transaction*, as discussed more fully below.
[7] Plaintiffs' TPP Class Cert Memo includes no argument as to the UE claim against Wholesalers.

1749, generally; Dkt. 1748-6 at 125-126, 130-138. The Consumer and TPP class definitions specify that a class member must have purchased a VCD that was distributed by a Wholesaler;[8] but a significant, unknown number of putative Plaintiffs cannot demonstrate Wholesaler involvement in any of their VCD purchases to meet those definitions. *See infra* FN 11.

### 2. Wholesaler-related experts and testimony

Out of Plaintiffs' seven class certification experts and hundreds of pages of expert reports, only two experts and a handful of pages address Wholesaler-specific issues; they offer cursory opinions, at best. Three defense experts counter these Wholesaler-specific opinions.[9]

## <u>ARGUMENT</u>

### A.    Plaintiffs Fail to Establish Standing.

This Court must determine whether absent class members and Named Plaintiffs have standing **before** the Court proceeds to the merits of the Rule 23 analysis. *Hartig Drug Co., Inc. v. Senju Pharm. Co. Ltd*., 836 F.3d 261 (3d Cir. 2016); *Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (2015); *Toll Bros., Inc. v. Twp. of Readington,* 555 F.3d 131, 137 (3d Cir. 2009).[10] Only if standing

---

[8] Specifically, Plaintiffs define their proposed Consumer UE subclasses as:

*All individuals in [state(s) within subclass], who, since at least January 1, 2012, and through the date of the final recall (as of November 10, 2021), paid any amount of money for a valsartan-containing drug (intended for personal or household use) that was distributed in whole or in part by Defendants Cardinal Health, McKesson Corporation, and/or AmerisourceBergen Corporation and manufactured in whole or in part by any of the Manufacturer Defendants.*

Dkt. 1747-1 at 61-63. Plaintiffs define their proposed TPP UE subclasses as:

*[A]ll TPPs that, from at least January 1, 2012 though the date of final recall as of November 10, 2021, paid any amount of money in [state(s) within subclass] for a valsartan-containing drug (intended for personal or household use) that was distributed or sold by any Wholesaler Defendant.*

Dkt. 1747-2 at 4-5.

[9] A description of the expert opinions relevant to Wholesaler issues is attached hereto as W.App. 10.

[10] This Court has cautioned that deferring the standing decision until after certification would allow a plaintiff to "bring a class action complaint under the laws of nearly every state in the Union

3

can be established should the Court consider whether Plaintiffs—as the party proposing class certification—have demonstrated by a preponderance of the evidence their compliance with the requirements of Rule 23. *Byrd,* 784 F.3d at 163; *Toll Bros.,* 555 F.3d at 137; *Hartig Drug Co.*, 836 F.3d at 269.

At the outset, to establish standing, Plaintiffs must demonstrate: (1) they have suffered an "injury in fact" that is concrete and particularized, and actual or imminent; (2) their injury is fairly traceable to at least one particular Wholesaler's conduct; and (3) it is likely that the injury will be redressed by a favorable decision from the court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). If the Court finds Plaintiffs fail to demonstrate standing for each claim asserted, the Court should refuse to certify and dismiss those claims. *See Brunwasser v. Johns*, No. CIV.A. 01-1255, 2002 WL 32775, at *9, n.11 (W.D. Pa. Jan. 10, 2002), *report and recommendation adopted* (Feb. 25, 2002), *subsequently aff'd,* 52 F. App'x 185 (3d Cir. 2002).

Here, Plaintiffs have neither alleged nor demonstrated an injury in fact sufficient to confer standing under this Court's recent ruling in *In re Metformin*. Further, Plaintiffs do not demonstrate class member standing in contravention of the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, which holds that *all class members* must demonstrate standing.

1. **Plaintiffs fail to demonstrate, or even allege, an injury in fact, per the District of New Jersey's recent ruling in *In re Metformin*.**

This Court recently found allegations nearly identical to those in the instant case to be insufficient to confer standing, and dismissed consumers' claims. *In re Metformin*, No. CV 20-2324, 2022 WL 970281, at *3 (D.N.J. Mar. 30, 2022) (rejecting the plaintiffs' allegations of injury

---

without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith basis." *In re Magnesium Oxide Antitrust Litig.,* No. CIV. 10-5943 DRD, 2011 WL 5008090, at *10 (D.N.J. Oct. 20, 2011) (citing *In re Wellbutrin XL Antitrust Litig.,* 260 F.R.D. 143, 154-56 (E.D. Pa. 2009)).

where plaintiffs "allege[d] only that they purchased 'a product that was not the same as the [reference listed drug]'"). "[W]ithout any allegations that the Consumer Plaintiffs actually purchased [drugs] that were contaminated with NDMA," the plaintiffs "lack[ed] standing to bring such a class action." *Id*. Here, Plaintiffs fail to demonstrate, or even allege in the first place, that they *actually purchased* VCDs contaminated with NDMA. *See* Dkt. 1708, ELMC. Thus, Plaintiffs have not established injury sufficient to confer standing.

**2. Plaintiffs suffered no injury in fact, because the VCDs worked as intended, and Plaintiffs allege no physical injury.**

Plaintiffs consumed VCDs effective for their intended purpose—treating hypertension. *E.g.*, Conti Dep. at 159:3-11; Stiroh Rep. ¶ 29. Plaintiffs do not allege physical injury or the fear of future physical injury from consuming VCDs. *See generally*, ELMC. Instead, Plaintiffs allege "economic damages" because the VCDs allegedly contained impurities. *Id*. ¶ 4. These allegations do not establish an injury in fact. In an analogous case from the District of New Jersey, plaintiffs brought a putative class action, including a claim for UE, against a shampoo manufacturer, alleging that the product contained a toxic ingredient. *James v. Johnson & Johnson Consumer Companies, Inc.*, No. 10-CV-03049 DMC JAD, 2011 WL 198026, at *1-2 (D.N.J. Jan. 20, 2011). On standing, the court found that "[o]nce the product had been consumed … there was no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing." *Id*. The plaintiffs "received the benefit of their bargain so long as there were no adverse health consequences, and the product worked as intended." *Id*. The alleged adulteration of the product did not impact the standing inquiry. *Id*. ("To the extent that there is no injury-in-fact, either economic or otherwise, **the 'per se' adulteration of the product is simply irrelevant to these Plaintiffs**...") (emphasis added).

5

Numerous courts, including the Third Circuit, follow the same reasoning in *James*, which is fatal to Plaintiffs' alleged standing. *See, e.g., Estrada v. Johnson & Johnson*, No. CV 16-7492 (FLW), 2017 WL 2999026, at *9 (D.N.J. July 14, 2017), *aff'd sub nom. In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278 (3d Cir. 2018) ("Absent an allegation of adverse health consequences" or "fail[ure] to perform satisfactorily for its intended use, Plaintiff cannot claim that she was denied the benefit of her bargain."); *Koronthaly v. L'Oreal USA, Inc.*, 374 F.App'x 257, 258 (3d Cir. 2010) (no injury where the plaintiff "concedes that she has suffered no adverse health effects … ."); *Rivera v. Wyeth-Ayerst Lab'ys*, 283 F.3d 315, 319 (5th Cir. 2002) ("The plaintiffs do not claim Duract caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users. … Merely asking for money does not establish an injury in fact."). The same is true here—there is no standing.

**3.  TransUnion requires that Plaintiffs establish each class member's standing.**

The Supreme Court in its recent decision, *TransUnion LLC v. Ramirez*, held that "[e]very class member must have Article III standing… ." 141 S. Ct. at 2208. *TransUnion* necessarily overrules the holding in *Neale v. Volvo Cars of N. Am. LLC,* that "the cases or controversies requirement is satisfied so long as a class representative has standing." 794 F.3d 353, 362 (3d Cir. 2015). "As the party invoking federal jurisdiction," plaintiffs bear the burden of putting forth evidence that *all* class members have suffered an injury-in-fact that is traceable to the defendant's conduct. *See* 141 S. Ct. at 2212. Yet Plaintiffs here make no effort to allege facts showing ***any*** class member's standing, and in particular, that class members will be able to ***trace*** their VCD purchases to a Wholesaler.

This failure compounds the issues of standing and predominance, because to ultimately establish standing, putative class members must submit individualized proof that they can trace VCD purchases to a Wholesaler—a requirement courts have found to defeat both standing *and*

predominance. *Cordoba v. DIRECTV, LLC,* 942 F.3d 1259, 1275 (11th Cir. 2019). And, as detailed in Sec. B *infra* (ascertainability), Plaintiffs will not be able to proffer such individualized proof. *See* Ex. 192**,** Kosty Rep. ¶¶ 142, 146, 151, 152-53. Indeed, the hurdles and proof requirements underlying standing reappear throughout the Rule 23 analysis; Plaintiffs' ability to efficiently demonstrate which Wholesaler distributed each Plaintiffs' VCDs is critical to the ascertainability, predominance, and commonality analyses. *See, e.g.,* Sec. B, E, G.

**B.      Plaintiffs Do Not, and Cannot, Satisfy Ascertainability.**

As discussed in Mfr. Mem. at III, ascertainability is an essential prerequisite to class certification. Plaintiffs cannot satisfy this requirement with respect to their Wholesaler-specific classes because there is no administratively feasible mechanism to identify class members.

**1.    NDC tracing—the method proposed by Plaintiffs—is insufficient to identify a class, as this Court has already found.**

Plaintiffs' proposed Wholesaler-specific class definitions require that the putative members have purchased VCDs *distributed by a Wholesaler*. Dkt. 1747-1, Ex. A at 60-63, Dkt. 1747-2, Ex. B at 3-4; Ex. 49, Craft Dep. at 203:13-205:13. Plaintiffs must therefore be able to identify transactions that involve a Wholesaler. However, ████████████████████████████████████ ████████████████████████████████████████████████[11] Discovery further shows that ████████████████████████████████████████████████████████████████

_____

[11] Plaintiffs' class certification briefing plainly admits ██████████████████████████████ ████████████████████████ *See, e.g.,* Dkt. 1748 at 41 ████████████████████████████████ 43 ████████████████████████████████████ Thus, the fact that an individual Plaintiff purchased her VCDs from a Pharmacy does not indicate whether her prescription was filled with product distributed by a Wholesaler. Plaintiffs' Expert Dr. Conti even admitted that the percentage of VCDs sold through Wholesalers in this case is unknown. Conti Dep. at 118:19-24.

████████████████ [12] Plaintiffs contend they can identify transactions involving a Wholesaler based on the misplaced notion that the NDC can be used to trace VCDs to a particular Wholesaler. Dkt. 1748 at 59-60; *see also* Dkt. 1749 at 16. This is flat wrong. An NDC only identifies a product's "labeler, product, and package size and type." 21 C.F.R. § 207.33(a). It does *not* identify whether a product was distributed by a given Wholesaler or through any particular distribution channel. *Id.* Thus, an NDC does not provide the requisite information to determine whether a *Wholesaler* distributed the VCDs used to fill a consumer's prescription. As discussed *infra*, Sec. B.2, lot numbers are required to make such a determination.

Indeed, this Court has held that an NDC cannot be used as a proxy for lot-level product tracing to identify class members in an action based on alleged pharmaceutical contamination. *See Fenwick v. Ranbaxy Pharms., Inc.*, 353 F.Supp.3d 315, 318–20, 324–28 (D.N.J. 2018) (denying certification because the proposed class definition identified putative members by NDC, but not all lots within the NDCs were contaminated, making it impossible to determine whether or not the putative member received contaminated product). Here, too, Plaintiffs rely "primarily on NDC numbers...to identify potential class members that may have purchased pills from inventory pools" that were distributed by a Wholesaler. *Id.* at 325. This is insufficient; the NDC does "not contain any information or means to identify" whether the VCDs were from a lot distributed by a

---

[12] ████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
█████████ For example, the ████████████████████████████████
███████████████████████████████████████████████████████████
█████████████ Ex. 175, CVS RFS for Gerald Nelson. Plaintiffs have identified no way to determine whether ████████████████████████████████████████████████████.

Wholesaler. *Id.* Instead, as the Court in *Fenwick* opines, "[i]dentifying potential class members by lot number is far more reliable, because lot numbers identify exactly what batch the pills came from." *Id.* at 325. The reasoning in *Fenwick* is fatal to Plaintiffs' ascertainability argument.

### 2. Lot level data is required and does not exist.

Lot numbers, as opposed to NDCs, "identify exactly what batch the pills came from." *Fenwick*, 353 F.Supp.3d at 325. *See also* Kosty Rep. ¶ 140 ("To determine if an at-issue VCD acquired from a Wholesaler Defendant was then sold to a consumer class member or reimbursed by a TPP class member, lot numbers and expiration dates at the patient level are required."). However, as in *Fenwick*, lot-level data at the patient level does not exist; in fact, "[l]ot number and expiration dates were not available for all levels of the … supply chain during the class period …, making it impossible to determine members of the proposed [Wholesaler]-specific sub-classes." Kosty Rep. ¶¶ 142, 144; *see also* Ex. 210, Kosty Dep. at 77:8-10 ("The ability to track a … lot to a patient is not available in the industry today."). Plaintiffs' own expert agrees. Craft Dep. at 185:21-22, 186:20-187:6 (Wholesalers "weren't required to" transmit lot information to pharmacies, and that the majority of pharmacy data she reviewed did not contain lot numbers); Wholesaler Ex. 1, ██████████████████

Plaintiffs' expert Laura Craft theorizes that ███████████████████████████ ████████████████████████████████. [Dkt. 1748-2](), Craft Decl. ¶ 44. She supports this theory by stating that ████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████████ *Id.* ¶ 46. Mr. Kosty, however, explains that this is simply not the case: ███████████████████████████████████████████████ ████████████████████████████████ Kosty Rep. ¶ 148 and Table 4. Furthermore, ████

████████████████████████████████████████████████████████

███████████████████████████████████████████ *Id*.

Ms. Craft next suggests that the Wholesaler identification issue can be circumvented because ██████████████████████████████████████████████████████

██████████████████████████ Craft Decl. ¶ 46. Again, not so. In fact, the record demonstrates that ████████████████████████████████████████████

██████████████████████████ Kosty Rep. ¶ 150 (footnote omitted).[13]

Ms. Craft finally asserts that pharmacy records, along with TPP and Pharmacy Benefit Manager ("PBM") data repositories, will identify class members without explaining *how* they will do so in an administratively feasible manner, or how the data would link a putative member's VCDs to a given Wholesaler. *See* Craft Decl. ¶¶ 9, 15. Such conclusory expert opinions do not satisfy ascertainability. *In re Wellbutrin XL Antitrust Litig.*, 308 F.R.D. 134, 151 (E.D. Pa. 2015).

Lot number data at the patient level is required to ascertain members of Plaintiffs' Wholesaler-specific classes, and that data does not exist. *Even if* the necessary data were available, however, individualized fact finding would still be required to identify class members; each of the alleged millions of potential class members would have to engage in the multi-tiered Fact Sheet process, requiring input from all members of the supply chain, to attempt to identify Wholesaler involvement. *See Clavell v. Midland Funding LLC*, 2011 WL 2462046, at *4–5 (E.D. Pa. June 21, 2011) (class unascertainable because while "records *could* show whether" an individual fell within

---

[13] *See also supra* FN 11. At her deposition, Ms. Craft admitted that █████████████████████ ██████████████████████ Craft Dep. 191:5-13, and also conceded that ██████████████████████████ *id*. at 191:14-15. She further admitted that she had never actually used pharmacy or wholesaler information to identify consumer purchases that were distributed via a wholesaler. *Id*. 192:15-24.

the class definition, "this cannot be done without an independent evaluation of each potential class member").

C.      **Courts Routinely Deny Class Certification of UE Claims.**

The overwhelming majority of courts across the country—including within the Third Circuit—have refused to certify both nationwide classes and multi-state subclasses of UE claims. These courts reason that the variations between applicable state UE laws as well as individualized questions of fact defeat the twin Rule 23 requirements of predominance and superiority. *See, e.g., Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 WL 3623005, at *25-35 (E.D. Pa. June 10, 2015) (denying certification of multi-state UE classes where variations in state law and individualized inquiry defeated predominance and superiority); *In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 163-73 (E.D. Pa. 2015) (same); *In re Digitek Prods. Liab. Litig.*, No. 2:08-md-01968, 2010 WL 2102330, at *8 (S.D. W. Va. May 25, 2010) (same); *Muehlbauer v. General Motors Corp.,* No. 05 C 2676, 2009 WL 874511, at *5 (N.D. Ill. Mar. 31, 2009) (same); *In re Prempro Prods. Liab. Litig.*, 230 F.R.D. 555, 566-68 (E.D. Ark. 2005) (same); *In re Niaspan Antitrust Litig.,* 464 F.Supp.3d 678, 725 (E.D. Pa. 2020) (same); *Thompson v. Bayer Corp.,* 4:07CV00017 JMM, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009) (same); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. and Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2020 WL 1180550, at *57-58 (D. Kan. Mar. 10, 2020) (same); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.,* 276 F.R.D. 336, 343 (W.D. Mo. 2011) (same).[14] *See also* Wholesaler Appendix ("W.App.") 1 (exemplar cases denying certification of UE classes).

---

[14] *See also McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 227 (D.D.C. 2019) (denying certification of multi-state and single-state UE claims); *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 214 (D. Minn. 2003) (denying certification where Plaintiffs

Plaintiffs do not point to, nor have Wholesalers found, a single analogous UE case where a federal court certified a UE class under Rule 23.[15] While in some instances, a court has certified a nationwide/multi-state UE class, *none* involved pharmaceutical mass tort claims like this one, implicating every level of the pharmaceutical supply chain, with scores of potential Plaintiffs, each with a unique medical history.[16] This Court should similarly reject certification of the only claim against Wholesalers.

**D.    Conflicts of Law Issues Render Plaintiffs' UE Claim Uncertifiable.**

For the sole cause of action against Wholesalers, UE, the Court must apply the law of Plaintiffs' 48 different home states. For this reason alone, class certification should be denied.

**1.   Legal standard for choice of law analysis.**

The law of multiple jurisdictions impacts the class certification analysis, and thus the court must first determine which state's law will apply to the UE claim. *Powers v. Lycoming Engines*, 328 F.App'x 121, 124 (3d Cir. 2009); *In re Actiq*, 307 F.R.D. at 163 (E.D. Pa. 2015). Although Plaintiffs fail to address choice of law, a thorough analysis demonstrates that: (1) an actual conflict

---

did "not provid[e] the Court sufficient information for it to conclude that the laws concerning [UE]...are not significantly or materially different.").

[15] Only one found opinion certified a nationwide UE class under Rule 23 in a prescription drug case, and that was in an antitrust matter. *See In re Abbott Lab'ys Norvir Anti-Trust Litig.*, 2007 WL 1689899, at *9-10 (N.D. Cal. June 11, 2007). Five years after *In re Abbott Lab'ys*, the Ninth Circuit declined to certify a nationwide UE class, holding that "[b]ecause the law of multiple jurisdictions applies here to any nationwide class…, variances in state law overwhelm common issues and preclude predominance." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012). Following this unequivocal holding on UE claims, <u>every</u> court in the Ninth Circuit has denied certification of a nationwide UE class. *See, e.g., Pistachio v. Apple, Inc.*, No. 4:20-CV-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. March 11, 2021) ("Plaintiffs [ ] cannot point to a single case in this Circuit to certify a nationwide unjust enrichment class since the Ninth Circuit addressed the issue in *Mazza* … It is hard to imagine a clearer directive from our Circuit on this issue.") (citation omitted).

[16] *See, e.g., Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010) (improper sale of single-paned glass fireplace); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) (overbilling by telephone service provider).

exists among the UE laws of the various states; and (2) the UE law of each Plaintiff's home state applies. Plaintiffs concede as much. They fail, however, to demonstrate that such conflicts do not present insurmountable obstacles. See *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (plaintiffs must carry the burden of "demonstrat[ing], through an extensive analysis of state law variances, that class certification does not present insuperable obstacles.").

### 2. Actual conflicts exist among the UE laws of the various states.

The UE laws of the 48 home states are in conflict, an undisputed fact. Indeed, Plaintiffs state the purpose of their "State Groupings" is to "[a]ccount for [s]tate [l]aw [d]ifferences..."[17] Dkt. 1748, 105-106; Dkt. 1747-1, 60-63 (grouping Plaintiffs' proposed UE subclasses by state).

However, even **within** Plaintiffs' subgroups, there are variations in state laws that result in actual conflicts. Take New York and California, lumped together in "Wholesaler Defendants Unjust Enrichment State Grouping No. 5". Under New York law, a class member must establish that the relationship between the class member and Wholesaler "could have caused reliance or inducement." *See Crescimanni v. Trovato*, 162 A.D.3d 849, 851, 80 N.Y.S.3d 89, 92 (2018). This relationship is not required under California UE law. Similar state law differences exist throughout Plaintiffs' groupings, and are demonstrated in W.Apps. 2-7. Even the most nuanced of these differences is fatal. *See In re McCormick*, 422 F.Supp.3d at 231 ("...the Court must decide whether the...[states] have 'materially identical' legal standards.").

Furthermore, overwhelming precedent demonstrates that there are numerous actual conflicts among state UE laws. *Emerson Radio Corp. v. Yu*, No. 2:20-cv-01618-WJM-MF, 2021 WL 1186824, at *3 (D.N.J. Mar. 30, 2021) (the UE laws of New Jersey and Delaware "conflict in

---

[17] Plaintiffs' damages expert, Dr. Conti, also acknowledged that states have different rules for UE and for UE calculations of damages, although she ***is not aware of what those differences are and did not take them into account.*** Conti Dep. 123:13-124:14.

two distinct ways… ."); *In re Actiq*, 307 F.R.D. at 166-168 ("true conflict" exists amongst the [various] [UE] laws); *Vista*, 2015 WL 3623005, at *30 (same); *see also Mazza*, 666 F. 3d at 591 (UE laws "vary materially from state to state"); *Thompson v. Bayer Corp.*, 2009 WL 362982, at *4 (E.D. Ark. Feb 12, 2009) ("[S]tates' different approaches to, or elements of, [UE] are significant."); *In re Prempro*, 230 F.R.D. at 563 ("[UE] … laws cannot reasonably be grouped in a comprehensive manner… ."); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010) ("[T]he law of [UE] varies too much from state to state to be amenable to … class treatment."); *Thompson v. Jiffy Lube Intern. Inc*., 250 F.R.D. 607, 626 (D. Kan. 2008) ("Because of such variations [in UE law], federal courts have generally refused to certify a nationwide class… ."); *In re Digitek*, 2010 WL 2102330, at *9 ("…the laws of the 50 states conflict" on the UE claims); *Tyler v. Alltel Corp*., 265 F.R.D. 415, 422 (E.D. Ark. 2010) (noting differences in UE laws); *Muehlbauer*, 2009 WL 874511, at *6 ("[T]here are differences among the states with regard to [UE] that preclude class treatment... ."); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, No. 05 C 2623, 2007 WL 4287511, at *8-10 & n.7 (N.D. Ill. Dec. 4, 2007) ("[UE] is a tricky type of claim that can have varying interpretations even by courts within the same state… .").[18]

---

[18] Though some courts in this circuit have found no actual conflict between state UE laws, they are not controlling. *See In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 58 (D.N.J. 2009); *Agostino v. Quest Diagnostics Inc.,* 256 F.R.D. 437, 464 (D.N.J. 2009); *Avram v. Samsung Electronics America Inc.,* 2013 WL 3654090, *20 (D.N.J. July 11, 2013). These choice of law analyses relied on *Powers v. Lycoming Engines,* 245 F.R.D. 226 (E.D. Pa. 2007), later vacated by the Third Circuit, which noted that it was "doubtful that the first step in the [choice of law] analysis was fully explored by the Court in the unjust enrichment claim... ." *Id*. at 125 n.1 On remand, the plaintiffs voluntarily dismissed their UE claims, *Powers v. Lycoming Engines,* 272 F.R.D. 414, 419 (E.D. Pa. 2011).

### a) Further analysis illustrates actual, insurmountable conflicts among the applicable UE laws.

The applicable state UE laws conflict in numerous, insurmountable aspects, as reflected in the attached comparison-of-law charts. W.Apps. 2-7.; *see also* App. J. These differences include, but are not limited to:

- **When UE Claims May Be Asserted:** Some states view UE as an independent cause of action, while other states see UE merely as a remedy. W.App. 2.

- **Directness of Relationship between Plaintiff and Defendant, or of Benefit Conferred:** Certain states require privity between the Plaintiff and Defendant. W.App. 3. Some states require the benefit to be obtained at the direct expense of the plaintiff, or require the plaintiff to have knowledge of the benefit conferred. *Id.*

- **Wrongdoing by Defendant:** States fall all over the spectrum regarding the level of "wrongdoing" required to assert a UE claim. W.App. 4.

- **What is "Unjust":** States differ as to what constitutes "unjust" conduct. W.App. 4. However, the one thing the states largely agree on is that what is "unjust" is an inherently fact-specific, individualized inquiry. W.App. 9.

- **Statutes of Limitations:** Statutes of limitations for UE claims differ. W.App. 5.

- **Available remedies:** States differ as to the proper measure of damages, including how to calculate the portion of benefit that is unjust to retain. W.App. 6. Some states also offer statutory protections, such as Innocent Seller Statutes. W.App. 7.

As demonstrated in these charts, there are multiple permutations even within the categories listed above. For example, of those states that recognize UE as an equitable remedy, some preclude UE claims where there is an adequate remedy at law, while others permit UE claims in certain circumstances regardless of the availability of a remedy at law. *See* W.App. 2.

### 3. Application of New Jersey's choice of law principles to Plaintiffs' UE claims demonstrates that the UE laws of numerous states apply.

Here, there is no dispute between the Parties that the law of each Plaintiff's home state applies. Even if there were, the factors the Court must consider in determining which state has the "most significant relationship" to the plaintiffs' claims warrant applying the law of each Plaintiff's

15

home state. *See* W.App. 8. *See also Gray v. BMW of N. Am., LLC*, 22 F.Supp.3d 373, 381 (D.N.J. 2014) (listing factors for determining "most significant relationship" in UE cases). The application of 48 state laws defeats the twin requirements of predominance and superiority.

**E.    Plaintiffs Do Not Satisfy the Rule 23(b)(3) Requirement of Predominance.**

Individual issues of law and fact predominate due to the conflicts among the applicable 48 state laws, and the inherently fact-specific nature of UE claims. Further, individual issues will predominate in the Article III standing inquiry. *See supra* Sec. A.3.

**1.    Individual questions of *law* predominate over common questions with regard to Plaintiffs' UE claims.**

Courts consistently decline to certify UE claims on predominance grounds where the application of numerous state laws would swamp common issues of law. *See supra* Sec. C; *see also Vista*, 2015 WL 3623005, at *25-35 (variances in UE state law defeated predominance); *In re Prempro*, 230 F.R.D at 566 ("state-by-state variations in law trump the common issues of law or fact"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F.Supp.3d 430, 601-02 (S.D.N.Y. 2018) ("[v]ariations in substantive law" of unjust enrichment "defeat predominance"). Given that each Plaintiff's UE claim must be analyzed under the law of her home state, individual issues of law predominate "for the same reasons…an actual conflict exists among the unjust enrichment laws of the" 48 applicable state laws. *In re Actiq,* 307 F.R.D. at 168.

Plaintiffs do not meet their burden to "overcome predominance obstacles" by "show[ing] that the applicable state laws are substantially similar such that they can be grouped together and applied as a unit…." *Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, No. 20-3528, WL 3612155, at *4 (3d Cir. Aug. 16, 2021); *see also In re McCormick*, 422 F.Supp.3d at 224 (denying certification where plaintiffs failed to adequately analyze the variation in state UE laws). Indeed, Plaintiffs have a "significant burden to demonstrate that grouping is a workable solution" and to

provide thorough analysis comparing the relevant state laws. *Adams Pointe*, 2021 WL 3612155, at *4; *see also In re Prempro*, 230 F.R.D. at 562-63; *Vista*, 2015 WL 3623005, at *33.

There is no such analysis in Plaintiffs' pleadings, and Plaintiffs' barebones state grouping charts contain insufficient explanation.[19] *See* Dkt. 1747-1 at 60-63; Dkt. 1747-2 at 3-4; Dkt. 1748-6 at 125-126, 130-138. Instead, Plaintiffs' cursory charts are "at best, [ ] generic assessment[s] of state laws that [are] insufficient to meet their burden of showing that grouping is workable." *Adams Pointe,* 2021 WL 3612155, at *4.* (internal quotations omitted). Plaintiffs do not provide proposed jury instructions addressing the variations of state law, nor does their proposed Trial Plan substantively address this challenge. Dkt. 1748-23; *see also In re Prempro*, 230 F.R.D at 568 ("The absence of an adequate trial plan and proper jury instructions supports [that] there is no way that the claims of these multi-state plaintiffs can be adequately addressed in a single class action trial."). Plaintiffs here fail to "provide…virtually any[] analysis[.]" *Grandalski v. Quest Diagnostics Inc.,* 767 F.3d 175, 184 (3d Cir. 2014). Indeed, Plaintiffs admit that the parties disagree as to the elements of the laws of various states, and their charts reflect the same unworkability. *See, e.g.,* Dkt. 1748 at 104-106. *See also In re Prempro*, 230 F.R.D at 565 n.75 (disagreement "is additional proof of the improbability of a workable trial plan …."). The differences between the states' UE laws are so numerous that they are not susceptible to accurate grouping. *See* W.Apps. 2-7. Because of these variations in applicable state laws, and Plaintiffs' failure to provide a workable solution, *common issues of law do not predominate.* [20]

---

[19] The grouping tables are also incorrect. For example, Plaintiffs cite to *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (Or. 1976), Dkt. 1748-6 at 136, to explain the scienter element of UE under Oregon law, but instead describe the scienter element for fraud.

[20] In depositions, Plaintiffs have claimed this Court's Motion to Dismiss Opinion ("MTD Op.") 3, Dkt. 775 at 20, is a law of the case ruling that the VCDs were categorically worthless, suggesting there is not much left to decide but damages. However, Plaintiffs' expert Conti admits that the

**2. Individual questions of *fact* predominate over common issues with regard to Plaintiffs' UE claims.**

Individual questions of fact will necessarily predominate in UE liability and damages inquiries. Moreover, Plaintiffs' proposed damages model cannot be applied to determine damages.

**a) Individual questions of fact will necessarily predominate in the UE liability inquiry.**

Proof of the essential elements of Plaintiffs' UE claim inherently involves fact-sensitive, individualized inquiries. *See In re McCormick*, 422 F.Supp.3d at 232 (UE requires "a fact-intensive inquiry that focuses on the totality of the circumstances, not just defendant's conduct.");

_____

concept of worthlessness has nothing to do with the Plaintiffs' UE claim against Wholesalers. Conti Dep. 130:9-18. And, of course, on a motion to dismiss, the Court views evidence in the light most favorable to the non-movant and does not make findings of fact or conclusions of law. Indeed, the entire class certification expert exercise is to assist the Court in assessing the very issues Plaintiffs claim the Court has already decided. More specifically, MTD Op. 3 addresses worthlessness specifically in the context of *contract-based* breach of warranty claims, not in the context of the only claim against Wholesalers here—UE. Critically, it is undisputed Wholesalers never met Plaintiffs, never contracted with them, never discussed warranties, and were in no way involved in the insurance reimbursement scheme made the basis of this Consumer/TPP suit. Dkt. 1748-1, Conti Decl. ¶ 80; Conti Dep. 119:20-120:5; Kosty Dep. 84:10-85:11, 113:15-114:3, 172:3-174:12; Kosty Rep. ¶¶ 29-31, 34-87; Ex. 211, Stiroh Dep. 140:6-141:7; Stiroh Rep. ¶¶ 58-59, 63-64; Craft Dep. 155:15-156:23. Certainly, Wholesalers were never paid by Plaintiffs, as Wholesalers sold VCDs to Pharmacies as inventory, separate and distinct from any individual Consumer/TPP purchase or coverage. Conti Dep. 122:21-24; Conti Dep. 129:10-13. MTD Op. 3 is simply inapposite as to Wholesalers and the sole UE claim against them. Similarly, MTD Op. 6, Dkt. 1019 at 39, which does address UE, does so as to Retailers, not Wholesalers, and is not law of the case. Though Plaintiffs take no position in briefing or through expert opinion on the characterization of UE in their Economic Loss Complaints, regardless of whether the claim is viewed through a tortious or a quasi-contractual lens, any attempt to stitch together the inapplicable concepts of worthlessness or point of sale assessment to the UE claim against Wholesalers does not get Plaintiffs to certification because: (1) there is no way for Plaintiffs to *ascertain* which class members purchased a specific VCD distributed by any specific Wholesaler; (2) even if there were, it would not be administratively feasible to make that determination as to millions of class members; (3) the point of sale concept has nothing to do with Wholesalers, who sell only to Pharmacies *in advance of* Consumer/TPP purchases; and (4) even if deemed relevant, worthlessness is a fact-based question, particularly as to therapeutic value to Plaintiffs. MTD Op. 3 and MTD Op. 6; Consumer EL Memo, Dkt. 1748 at 104, 107; TPP EL Memo, Dkt. 1749 at 19; Conti Dep. 128:21-130:12.

*Grandalski,* 767 F.3d at 185 (UE claims require individual inquiries into each class member's alleged injury); *In re Actiq*, 307 F.R.D. at 169 ("whether the defendant has been *unjustly* enriched ...is, by nature, fact-sensitive.") (emphasis in original); *see also Hernandez v. Ashley Furniture Indus., Inc.*, No. CIV.A. 10-5459, 2013 WL 2245894, at *9 (E.D. Pa. May, 22, 2013) ("...the unjust enrichment claim essentially *demands* an individualized inquiry... .") (citation omitted) (emphasis in original); *Newton v. Merrill Lync, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 190 (3d Cir. 2001) ("...ascertaining which class members have sustained injury means individual issues predominate over common ones."). As resolution of UE claims "turn[ ] on individualized facts[,]" "common questions will rarely, if ever, predominate an unjust enrichment claim." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1274 (11th Cir. 2009). *See also* W.Apps. 1, 9.

There are several critically on-point decisions. The *Actiq* court found that individual factual issues regarding whether a drug manufacturer's enrichment was unjust would outnumber common questions as to TPP plaintiffs. *In re Actiq*, 307 F.R.D. at 168. Because "[w]hat may be unjust for one TPP [plaintiff] may not be unjust for another depending on individual facts[,]" determining whether payments were "unjust" required examination into the circumstances of individual TPP plaintiff purchases. 307 F.R.D. at 171. *See also Grandalski*, 767 F.3d at 185 ("...individual inquiries would be required to determine whether an alleged overbilling constituted unjust enrichment for each class member."). Similarly, in *Digitek*, the MDL court denied certification in an MDL involving alleged toxicity of a cardiac drug based in part on the myriad individualized inquiries that would destroy predominance, including:

(1)    "product identification";
(2)    "existence and extent of the economic losses";
(3)    determination of whether class members "were already fully compensated by the Stericycle refund process"; and
(4)    the "nature and extent of third-party involvement in the process" (*i.e.*, third-party guidance received by druggists and doctors about the recall).

19

*In re Digitek*, 2010 WL 2102330, at *17-18. The court found these individual issues would destroy predominance even where the court "confine[d] certification to multiple *single-state* class actions using only the law of the particular state certified"—New Jersey. *Id.* at *18. (emphasis added).

Here, Plaintiffs' UE claim similarly requires numerous individual inquiries to determine liability. And here, unlike in *Actiq*, it is not even "clear that [Wholesalers] w[ere] enriched by monetary payments from putative class members." *In re Actiq*, 307 F.R.D. at 169. This foundational hurdle alone requires individualized analyses to determine the following issues regarding Wholesalers as to each Plaintiff: (1) Whether any Wholesaler distributed the purchased product; (2) the date(s) of VCD consumption; (3) each Plaintiff's knowledge of VCD recall at time of consumption; (4) amount of NDMA/NDEA exposure, if any; (5) therapeutic value of drug; (6) physical harm to Plaintiff, if any; (7) insurance coverage; (8) which entities paid for all/portion of the drug; and (9) manner in which individual TPP administered the drug benefit program. The answers will vary by Plaintiff and by transaction. *See, e.g.,* Kosty Rep. ¶ 36 ("The use of multiple purchasing channels … complicates the ability to identify members of the proposed sub-classes that require determining whether a specific wholesaler was part of the distribution chain."). For these reasons, individual questions of fact overwhelm common ones.

> **b) Plaintiffs' UE damages model ignores the prevalence of individual issues inherent to a UE damages calculation.**

As discussed in Mfr. Mem. at I.B.4, the proposed subclasses fail because Plaintiffs do not demonstrate that damages are capable of class-wide measurement. Furthermore, Plaintiffs' proposed damages model is not only unworkable for Wholesalers, it ignores the individualized inquiries necessary to determine UE damages. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016) ("predominance requirement applies to damages…because the efficiencies…would

be negated if [q]uestions of individual damages calculations … overwhelm questions common to the class.") (internal quotations omitted).

### 3. Dr. Conti's methodology cannot be applied to determine UE damages as to Wholesalers.

Plaintiffs assert that "common proof" can establish UE damages, relying solely on the aggregate damages "methodology" proposed by their expert, Dr. Rena Conti. *See, e.g.,* Dkt. 1748 at 105. But Dr. Conti's rudimentary formula for Wholesalers cannot be considered a legitimate method of determining damages—aggregate or individual—as it consists of a simple equation that can be found on Google: Wholesaler Profits = Revenues – Costs. Conti Decl. ¶ 82.

Though Dr. Conti claims that she "can calculate [UE] damages for each Defendant Wholesaler and aggregated [sic] across all Defendant Wholesalers", (Conti Decl. ¶ 85), she does not demonstrate how her "theoretical exercise" could be performed on a class-wide basis, nor does she attempt to "make any meaningful calculation of Wholesaler Damages." Stiroh Rep. at ¶¶ 19, 71; Conti Dep. at 115:14-24; 125:19-20; 147:11; *see also Newton*, 259 F.3d at 187-88 (damages formula is not viable where "expert provided no model formula, but instead projected that he could devise a formula that would measure damages among the class.").[21] Dr. Conti further does not account for differences in applicable state law in her formula. Conti Dep. at 124:8-19; 126:4-16.

---

[21] Plaintiffs' cases cited to claim that Dr. Conti's aggregate damages model is sufficient at this time are readily distinguishable. *In re Suboxone (Buprenophrine Hydrochlorine & Naxolene) Antitrust Litig.,* was specific to aggregate damages for antitrust injuries. 967 F.3d 264, 271-72 (3d Cir. 2020). Plaintiffs' references to *Rikos v. Procter & Gamble Co.,* 799 F.3d 497 (6th Cir. 2015) and *In re Checking Account Overdraft Litig.,* 286 F.R.D. 645 (S.D. Fla. 2012) are inapposite because none of these decisions analyzed the sufficiency of aggregate damages. Finally, in *Neale*, the court confirmed that individual damages calculations alone do not preclude class certification. 794 F.3d at 375. They do, however, "weigh against a finding of predominance." *McDonald v. Wells Fargo Bank, N.A.*, 374 F. Supp. 3d 462, 513 (W.D. Pa. 2019). The issue here is not simply that individual damages calculations would be required (although they would), but also that Dr. Conti's model *cannot* be applied to calculate either aggregate *or* individual damages.

Critically, Dr. Conti fails to consider that Wholesalers ███████████████████

████████████████████████████████████████████████████████████████

███████████████  For this reason alone, Dr. Conti's overly simplistic method cannot be

applied, nor should the Court consider it workable. *See, e.g., Bayshore Ford Truck v. Ford Motor

Co.*, No. CIV. A. 99-741 JLL, 2010 WL 415329, at \*11 (common damages "proof methodology

may not be used to mask the prevalence of individual issues, or as a short cut to the damage proof

process.") (internal quotations omitted). Dr. Conti's formula ignores Wholesalers' role in the

supply chain, as well as the individual factors that must be considered to accurately calculate both

costs and revenues. Stiroh Rep. at ¶¶ 65-67; Kosty Rep. at ¶¶ 190-94. Moreover, her method is

faulty, as she fails to consider the value of the VCDs purchased and consumed by each class

member. *See* Stiroh Dep. at 139:14-23, 228:10-21; Mfr. Mem. at I.B.4 (citing *In re Rezulin Prod.*

*Liab. Litig.*, 210 F.R.D. 61, 68–69 (S.D.N.Y. 2002)); *see also Jones v. Monsanto Co.*, No. 19-

0102-CV-W-BP, 2021 WL 2426126, at \*6 (W.D. Mo. May 13, 2021) ("[t]he measure of damages"

for UE "requires consideration of the fact that the consumers … received some value from their

purchase.").

### 4.  Individual issues predominate in determining UE damages.

Individualized questions will predominate in determining UE damages as to Wholesalers.[22]

Because Wholesalers generally █████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  Kosty Rep.

at ¶ 192. █████████████████████████████████████████████

---

[22] Calculating TPP class members' UE damages also involves individual questions that predominate over any common issues; Wholesalers hereby incorporate Mfr. TPP Mem. I.B.3 regarding PBM formularies and individualized TPP pricing contracts.

███████████████████████████████████████████████████████████

██████████████████ *Id.* ¶¶ 191, 194; *see also* Conti Dep. at 142:12-143:2; 144:21-145:16; 152:9-19. And even Dr. Conti concedes that ███████████████████████████████████ ██████████████ may be relevant to calculating Wholesalers' profits. Conti Dep. at 138:9-19, 139:2-18, 140:17-24, 147:17-148:9, 149:1-8, 149:9-17.

Furthermore, the measure of damages (if any) for Plaintiffs' UE claims differs by consumer and "requires consideration of the fact that the consumers received and used [VCDs]; that is, they received some value from their purchase." *Jones*, 2021 WL 2426126, at *6. "Thus, even if they were to contend they would not have purchased [VCDs, had they known of the alleged contamination] … the class members' damages would not be 100% of the purchase price because the value they received …would have to be accounted for in the damage calculation." *Id.*

The varying value that each Plaintiff received from the VCDs must be considered in the analysis. Ex. 203, Flack Supp. Rep. at 2-4; Stiroh Dep. at 228:10-21 ("The portion" of damages that would be "just" for the Defendants to retain is the "benefit that the plaintiffs received from the therapeutic benefits of the drugs."). The UE (if any) as to Wholesalers cannot be assessed on a class-wide basis; instead, the value of VCDs *to a particular consumer* necessarily depends on individualized factors including the therapeutic benefits to each consumer, the consumer's risk tolerance, the consumer's purchase history, the consumer's actual perceived value of the VCDs, and the NDMA levels in the lot(s) consumed by each individual class member. Stiroh Rep. ¶¶ 7, 23-26, 28-29, 33-35, 40-43. The individualized value of VCDs includes assessment of risks, which necessarily vary according to consumption—in fact, pharmacy claims data ████████████████████ ████████████████████████████████████████████████████ *Id.* ¶ 41. FDA testing revealed similar variation with different levels of NDMA present across lots, including

some lots below the level of detection. *Id.* ¶ 43. This variation "demonstrates that, without lot level tracking, there is no way to reliably estimate class-wide risk." *Id.*

Defendants' expert Dr. Stiroh opines that "value must reflect the benefits received, including therapeutic benefits, and accordingly, products that provide effective therapeutic benefits but that also may confer risk on the user can still have economic value." Stiroh Rep. ¶ 23; *see also* Stiroh Dep. at 228:10-21. The VCDs' therapeutic value is supported by the FDA, "which recommended at the time of the recalls that patients continue taking their VCDs until they could receive a replacement product." Stiroh Rep. ¶ 29; *see also* Kosty Dep. at 59:17-19. Indeed, even after learning of the recall, many class representatives continued to take VCDs until they could find alternative treatment.[23] In sum, because the value of VCDs is particular to each class member, individual questions will predominate in the damages inquiry.

## F.    Plaintiffs Do Not Establish the Rule 23(b)(3) Requirement That Their Proposed Class Action is Superior or Manageable.

Plaintiffs cannot prove that their proposed classes are the "best 'available method'" to resolve their UE claims against Wholesalers. *Newton*, 259 F.3d at 191 (requiring consideration of "the difficulties likely to be encountered in the management of a class action."). The significant variations in applicable state laws, as detailed *supra* in Sec. E.1*,* render Plaintiffs' multi-state UE classes <u>unmanageable</u> and <u>defeat superiority</u>. *See, e.g., Vista Healthplan*, 2015 WL 3623005, at

---

[23] Plaintiff Gildner, for example, testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ Stiroh Rep. ¶ 34; Ex. 11, Gildner Dep. at 75:22-76:6; *see also* Ex. 6, Cisneros Dep. 100:5-10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Indeed, the factual record indicates that consumers assigned varying value to the VCDs in spite of any health risks, including the 21 named Plaintiffs who acknowledged that the VCDs were effective at managing their hypertension, with many testifying that VCDs were more effective than other medications. Stiroh Rep. ¶ 29; *see also* Flack Supp. Rep. at 4; Kosty Dep. at 58:7-23 (VCDs prevented heart attacks and strokes in the patient population).

*35 ("variations in state law also render class litigation unmanageable."); *see also Yarger v. ING Bank fsb*, 285 F.R.D. 308, 329 (D. Del. 2012) ("[I]t is unfeasible to have a jury apply sixteen state laws to the [UE] … claims, as the elements of each of these claims varies state to state."); *In re Actiq*, 307 F.R.D. at 172 ("[T]he largest impediment to a finding of superiority is the difficulty of managing a class action in which the [UE] laws of TPPs' various home states apply and individual questions of fact predominate."); *In re Prempro*, 230 F.R.D at 568 ("Here, because the law varies in material ways from state to state … a class action trial is not the superior method for resolving these cases."). Relatedly, as detailed in Mfr. Mem. at II, Plaintiffs have not demonstrated a manageable trial plan—they have not even provided sample jury instructions or verdict forms.

Finally, Plaintiffs do not establish that a class action is superior to *other* methods to resolve their UE claims against Wholesalers. In fact, Plaintiffs' 11 state subclasses obviate the benefit of a class action. *See In re Cendant Corp. Secs. Litig.,* 404 F.3d 173, 202 (3d Cir. 2005) ("[A] class action containing a multitude of subclasses loses many of the benefits of the class action format."). Plaintiffs are already reaping the benefits of consolidated case management via the MDL, so further efficiencies will not be gained from the class action vehicle. *See, e.g., In re Amtrak Train Derailment in Philadelphia, Pennsylvania*, No. 15-MD-2654, 2016 WL 1359725, at *8 (E.D. Pa. Apr. 6, 2016) ("existing MDL procedures … are the superior method."); *In re Digitek*, 2010 WL 2102330, at *18 ("Adding a … certified class to these already complicated state and federal proceedings makes little sense. … From a practical perspective, defendants' fault is being litigated aggressively already within this MDL."). Patently, the superiority requirement is not met.

**G.    Plaintiffs Do Not, and Cannot, Satisfy the Commonality Requirement.**

Plaintiffs' proposed Wholesaler classes fail the commonality requirement as there is no common answer to whether an individual Wholesaler has unjustly retained benefit from the specific Plaintiff beyond the value provided. These answers necessarily vary by state law, by

consumer, and by TPP. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-51 (2011) ("[w]hat matters...is not the raising of common 'questions'…but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (citation omitted) (emphasis in original); *see also Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (same).

Commonality is not satisfied where, as here, different applicable state laws, including within Plaintiffs' proposed subclasses, produce different outcomes. *See supra* Sec. E.1; *Hernandez v. Wells Fargo Bank, N.A.*, No. C 18-07354 WHA, 2020 WL 469893, at *5 (N.D. Cal. Jan. 29, 2020) (claims "dependent on each state's laws (which vary widely)"…"undermine commonality and defeat class certification."). Similarly, as discussed *supra*, Sec. E.2, determining whether Wholesalers were unjustly enriched, and if so, to what extent, requires an individualized fact assessment for each consumer, yielding different answers based on myriad factors, such as a consumer's purchase history and perceived benefit (or lack of benefit) obtained from the VCDs. *See Hernandez v. Ashley Furniture Indus., Inc.*, 2013 WL 2245894, at *9 ("Whether the doctrine applies depends on the unique factual circumstances of each case. Thus, the [UE] claim … demands an individualized inquiry[.]") (citations and internal quotations omitted). For these reasons, Plaintiffs cannot satisfy the commonality requirement.

## <u>CONCLUSION</u>

For all of the foregoing reasons, *or for any one of them*, the Court should deny Plaintiffs' request to certify consumer and TPP classes as to the UE claim against Wholesalers.

Dated: April 12, 2022

Respectfully submitted,

  s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
Liaison Counsel for Wholesalers
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

*Counsel for AmerisourceBergen Corporation*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Emily G. Tucker
Luke J. Bresnahan
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel.: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com
Email: etucker@crowell.com
Email: lbresnahan@crowell.com

*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com

*Counsel for McKesson Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2022, I filed the foregoing **OPPOSITION OF WHOLESALER DEFENDANTS TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION OF THE CONSUMER AND THIRD PARTY PAYOR ECONOMIC LOSS CLAIMS** electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
