# APPENDIX 10

# Wholesaler-Specific Expert Opinions

**Wholesaler-Specific Expert Opinions**

| | **Plaintiffs' Experts** |
|---|---|
| **Laura Craft** | - **Background:** Laura Craft is the co-founder of OnPoint Analytics, Inc., an economic and statistical consulting firm. Dkt. 1748-2, Craft Decl., Ex. C.<br><br>- **Key Opinion:** Craft asserts that it is possible to identify the Wholesalers involved in sales of VCDs to the consumer and TPP class/subclass members via National Drug Codes ("NDCs") and the pharmacy and PBM records produced in this case. Craft Decl. ¶¶ 8-12. Craft also opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 44.<br><br>- **Experience with Wholesalers and Preparation as to Wholesaler-Specific Opinions:**<br>  - Craft has never used pharmacy or wholesaler data to identify, in a set of claims data, which consumers bought drugs distributed by a wholesaler. Ex. 49, Craft Dep. at 192:15-24.<br>  - In forming her opinions, Craft did not review any Wholesaler stipulations, declarations, documents, data, contracts, or deposition testimony. Craft Decl., Ex. D, Materials Relied Upon. |
| **Rena Conti, Ph.D.** | - **Background:** Rena Conti, Ph.D. is a health economist. Dkt. 1748-1, Conti Decl. ¶1.<br><br>- **Key Opinion:** Conti asserts that consumer and TPP UE damages are measured as "revenues less costs = profits." Conti does not calculate an alleged damage amount or list specific categories of revenue or costs. Ex. 48, Conti Dep. 115:14-24; 125:15-126:3; 148:14-21 [References to Conti Deposition are to Day 2 unless otherwise noted.]. Conti testified that "[a]ll I'm doing is laying out how I would think about calculating unjust enrichment in this matter for these specific drugs at-issue in this specific period." *Id.* at 115:21-24, 125:19-20. Conti's opinion is also based on the following assumptions:<br>  - There is Wholesaler liability for UE damages. *Id.* at 114:2-115:13, 126:18-127:11.<br>  - Based on the instruction of counsel, profits are the measure of Wholesaler UE damages. *Id.* at 126:18-127:17.<br>  - Differences in applicable state UE laws can be accounted for at a later date, per the instruction of counsel, the court, or the jury. *Id.* at 126:4-16. |

1

|  |  |
|--|--|
| | <ul><li>○ Her UE damages formula with respect to Wholesalers does not consider whether the VCDs were worthless – it only factors in the "amount of money that the wholesalers made off moving products from one place to another." *Id*. at 130:9-12.</li></ul><ul><li>**Experience with Wholesalers and preparation as to Wholesaler-Specific Opinions:**<ul><li>○ Conti has never seen a Wholesaler-Manufacturer supply contract. Conti Dep. 151:13-22.</li><li>○ She has never before in a prior case calculated Wholesaler UE damages. *Id*. at 116:2-6.</li><li>○ She has not spent time writing about distributors and wholesalers. *Id*. at 106:25-107:7.</li><li>○ She has never published on Wholesalers, and has never published with these Defendant Wholesalers. *Id*. at 104:4-14.</li><li>○ Her opinions in this case are informed by: (1) she has spent 20 years thinking about how the system works and how prescription drugs go through the supply chain; and (2) thinking about the importance of Wholesalers in her "academic roles." *Id*. at 106:5-23.</li><li>○ Conti admits that her knowledge of Wholesaler business is lacking: "I actually haven't spent that much time writing about distributors and wholesalers in part because the data is . . . opaque. It's not normally what we – I have access to in my – in the course of my daily research – research." *Id*. at 106:25-107:7.</li><li>○ Conti did not review any Wholesaler contracts with Manufacturers, Wholesaler contracts with Retail Pharmacies, or any Wholesaler documents, electronic data or testimony[1] in this case. *Id*. at 106:25-107:7, 110:16-111:5, 111:17-112:12, 145:18-25, 151:13-22, 152:6-8.</li><li>○ Conti asked Plaintiffs' counsel to see Wholesalers' data produced in this case, and Plaintiffs' counsel inaccurately told her that Wholesalers had not produced any data. *Id*. at 111:17-112:12. Of course, Wholesalers have produced significant data in this case and have provided declarations and 30(b)(6) testimony – none of which was provided to Conti. *Id*. at 106:25-107:7, 110:16-111:5, 111:17-112:12, 145:18-25, 151:13-22, 152:6-8.</li></ul></li></ul> |

---

[1] Conti states she reviewed one declaration by ABC. Conti Dep. 110:1-22.

| | |
|---|---|
| | o Conti's work, she says, is a "theoretical exercise," not based on any actual records or documents that she has seen, either from Defendant Wholesalers or from the industry. *Id.* at 147:10-11, 131:13-21. |

| **Defendants' Experts** ||
|---|---|
| **Tim Kosty** | • **Background:** Tim Kosty is an MBA with a degree in Pharmacy, and is the co-founder of Pharmacy Healthcare Solutions, Inc. and TDI Managed Care Services, Inc., a pharmacy benefit manager ("PBM"). Ex. 192, Kosty Rep. ¶¶ 1-3. Kosty has more than 38 years of experience in the pharmacy industry. *Id.* ¶ 5.<br><br>• **Key Opinions:** Lot numbers and VCD expiration dates at the patient-level would be required to trace each class member's VCDs back to a particular Wholesaler. Kosty Rep. ¶¶ 140, 146, 152-53; Kosty Dep. 76:9-77:14. However, "[l]ot number and expiration dates were not available for all levels of the pharmaceutical supply chain during the class period to trace a product from the manufacturer through the supply chain to consumers and TPPs, making it impossible to determine members of the proposed Wholesaler Defendant-specific sub-classes." Kosty Rep. ¶¶142, 144; *see also* Kosty Dep. 77:6-10. In addition, Pharmacies Defendants ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Kosty Rep. ¶ 150 (footnote omitted).<br><br>• **Experience with Wholesalers and Preparation as to Wholesaler-Specific Opinions:**<br>    o In addition to relying on his more than 38 years of experience in the pharmacy industry, Kosty prepared his opinions based on review of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the DSCSA, and form 10K documents from AmerisourceBergen and Cardinal. Kosty Rep. Appendix C, Materials Relied Upon. |
| **Lauren Stiroh, Ph.D.** | • **Background:** Lauren Stiroh, Ph.D. is an economist and Managing Director of NERA Economic Consulting. Ex. 193, Stiroh Rep. ¶1.<br><br>• **Key Opinion:** Determining UE damages would require analysis of individualized issues as to specific plaintiffs, particularly with regard to the therapeutic value they admit was actually provided to and retained by individual class members through the long-ago ingested VCDs. *Id.* ¶¶ 7, 20-27, 40-49, 65; Ex. 211, Stiroh Dep. 57:11-58:2; 228:10-21. Stiroh additionally opines that, from an economic and UE perspective, it makes |

3

| | |
|---|---|
| | no sense to disregard in any damage calculation this therapeutic benefit provided, as the VCDs did what they were intended to do (act as a compound on blood pressure) and Plaintiffs have each retained the benefit provided (therapeutic effect of reduced cardiovascular or renal risk and/or events). An apportionment between the "just" portion of any benefit provided by a Plaintiff to a Wholesaler and any allegedly "unjust" portion would require individualized analysis on a consumer by consumer, or TPP member by TPP member, basis.  Stiroh Rep. ¶¶ 65-67; Stiroh Dep. 57:11-58:2; 228:10-21. Stiroh also criticizes Plaintiffs' expert Conti for her: (1) failure to identify the economic loss for which TPPs should be made whole; (2) purely hypothetical analysis that does not account for relevant realities, such as the insurance reimbursement program and pharmaceutical supply chain, how payments are made, and how consumers evaluate risk; and (3) simplistic, incomplete and unreliable formula to calculate Wholesaler UE damages. Stiroh Rep. ¶¶ 7, 19-20, 24, 30-32, 40-49, 58-59,62-68, 71-72.<br><br>• **Experience with Wholesalers and preparation as to Wholesaler-Specific Opinions:**<br>    o A substantial portion of Stiroh's consulting work and experience includes the calculation of economic damages and analysis of class certification issues. Stiroh Rep. ¶ 1. With regard to her opinions on the typical content and conditions of wholesaler contracts, Stiroh relied on the expert opinion of Kosty. Stiroh Rep. ¶¶ 6, 67. |
| **John F. Flack, M.D., M.P.H.** | • **Background:** John F. Flack, M.D., M.P.H. is a practicing physician and hypertension specialist. Ex. 203, Flack Supp. Rep. at 3.<br><br>• **Key Opinion:** From a medical perspective, the value of VCDs is derived from the intended use and the clinical benefit to the individual patient, particularly the ability to lower blood pressure.  Flack Supp. Rep. at 2. The actual benefit received by a patient varies by patient, depending on specific underlying risk factors and the overall risk for cardiovascular-renal disease. *Id*. at 3. Thus, "the affirmative clinical benefit of the valsartan at issue and taken by patients in this case can be shown by the blood-pressure-lowering effects, which will of course vary by patient". *Id*. at 4.<br><br>• **Experience with Wholesalers and preparation as to Wholesaler-Specific Opinions:** Wholesalers' respective business models, documentation, and data are unrelated to Flack's opinions as a medical doctor; thus any experience he may or may not have as to Wholesalers is irrelevant with respect to his expert report. |

4