# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| This Document Relates to All Actions | |

## WHOLESALER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF RENA CONTI, Ph.D.

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...............................................................................................2

DR. CONTI'S WHOLESALER-RELATED OPINIONS ARE
INADMISSIBLE FOR MULTIPLE REASONS ....................................................5

    I.     Legal Standard..........................................................................5

    II.    Dr. Conti Is Not Qualified To Opine On The Issue Of
          Wholesaler Unjust Enrichment...............................................5

    III.   Dr. Conti's Opinions Are Not Proper Expert Testimony And
          Would Not Be Helpful To The Jury .........................................7

    IV.   Dr. Conti's Wholesaler Unjust Enrichment Opinions Are
          Unreliable ...............................................................................13

CONCLUSION...............................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
   350 F.3d 316 (3d Cir. 2003) ..................................................................................5

*Fellner v. Supreme Corp.*,
   No. CIV. A. 92-3680, 1995 WL 79787 (D.N.J. Feb. 21, 1995).........................10

*Goldberg v. Fla. Int'l Univ. Bd. of Trustees*,
   No. 18-20813-CIV, 2019 WL 692780 (S.D. Fla. Feb. 7, 2019) .........................8

*Higgins v. Koch Dev. Corp.*,
   794 F.3d 697 (7th Cir. 2015) ................................................................................6

*Hook v. Whiting Door Mfg. Corp.*,
   No. CV 3:15-281, 2019 WL 630324 (W.D. Pa. Feb. 14, 2019) ........................11

*ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*,
   198 F. Supp. 2d 598 (E.D. Pa. 2002)..................................................................11

*King v. Tjx Cos., Inc.*,
   No. 15-5642, 2017 WL 11552119 (E.D. Pa. Apr. 10, 2017) ..............................5

*Metil v. Core Distrib., Inc.*,
   No. 2:16-CV-00968, 2018 WL 3707421 (W.D. Pa. Aug. 3, 2018) ....................7

*In re Mirena IUD Prod. Liab. Litig.*,
   169 F. Supp. 3d 396 (S.D.N.Y. 2016).................................................................10

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ...............................................................................12

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
   969 F.2d 410 (7th Cir. 1992) ..............................................................................10

*Sykes v. Napolitano*,
   634 F. Supp. 2d 1 (D.D.C. 2009).........................................................................8

*Weiner v. Snapple Bev. Corp.*,
   No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010).......................12

*Yazujian v. PetSmart*,
    729 F. App'x 213 (3d Cir. 2018) ........................................................................13

**Rules and Statutes**

Fed. R. Evid. 702 ...........................................................................................1, 10

**Other Authorities**

Indeed Editorial Team, *How to Calculate Profit (With Example)*
    (February 22, 2021), https://www.indeed.com/career-
    advice/career-development/how-to-calculate-profit ...........................................8

Robert L. Sexton, Survey of ECON (2016) at 116 (2016) .......................................8

## PRELIMINARY STATEMENT

Wholesaler Defendants ("Wholesalers") submit this memorandum in support of their motion to exclude the opinions of Plaintiffs' unjust enrichment ("UE") damages expert, Dr. Rena Conti. As set forth below, Dr. Conti's opinions fail under Fed. R. Evid. 702 and *Daubert*, as she is unqualified, does not provide proper expert testimony helpful to a jury, and offers opinions that are unreliable.

Dr. Conti's Wholesaler-related opinions also do not pass practical muster. ***First***, her opinions—to the extent they can even be characterized as expert opinions—fail because she has zero expertise or knowledge with respect to the pharmaceutical wholesale industry. ***Second***, she did not undertake any effort to understand Wholesalers' experiences with respect to VCDs. ***Third***, she based all of her opinions as to Wholesalers on a formula handed to her by Plaintiffs' counsel— and then failed to actually apply that formula to any facts or to the realities of the wholesaler industry. ***Fourth***, her simplistic formula and incomplete work cannot hide the reality of Wholesaler accounting issues, which are too complex and involve too many cost factors and data points to enable profit calculations – and thus damages – on a class-wide basis. For all these reasons, Dr. Conti's opinions as to Wholesalers should be excluded.

## BACKGROUND

Plaintiffs seek to certify only one claim against Wholesalers in their proposed Economic Loss Class Action: unjust enrichment. Rena Conti, Ph.D., a health economist, is Plaintiffs' *only* expert offering UE damages opinions as to Wholesalers, yet her efforts are half-hearted at best. Of her 34-page declaration, she devotes just two pages to discussion of Wholesalers damages. Dkt. 1748-1, Conti Decl. at 32-34. The crux of her opinion is that Wholesaler UE damages can be determined by a "simple equation":

$$\text{Wholesaler Profits}_{d,t} = Revenue_{d,t} - Costs_{d,t}$$

Conti Decl. ¶¶ 81-82.

Dr. Conti did not develop this formula based on her own expertise or experience with Wholesalers' business or damages issues; she arrived at it based solely on Plaintiffs' counsel's instructions as to their view of the "proper" measure of UE damages. Dkt. 2009-7, Ex. 48, Conti Dep. 127:17-22.[1] But while Dr. Conti concedes that the law on proper UE damages varies from state to state, she does not account for those differences in any way. Conti Dep. 123:25-124:25, 126:9-21.

A simple starting "formula" is one thing, but Dr. Conti admits she does not actually perform *any calculations or work*; her formula is merely "*theoretical*."

---

[1] All references to Dr. Conti's deposition are to Day 2 (February 11, 2022), unless otherwise noted. Dkt. 2009-7, Manufacturer Class Cert. Opposition Ex. 48, Conti Dep. Day 2.

Conti Dep. 147:19-20; *see also* Conti Decl. ¶ 86. Dr. Conti explains that "[a]ll I'm doing is laying out how I would think about calculating [UE] in this matter for these specific drugs at-issue in this specific period." Conti Dep. 116:2-7.

Dr. Conti lacks the requisite "specialized expertise" as to Wholesalers to do more than "think about" calculating UE damages in the abstract. She admits to lacking experience with Wholesaler contracts and data, and that she has not previously done any work in the wholesaler industry. Conti Dep. 107:7-14, 151:22-152:17. Nor did she act to remedy her ignorance—Dr. Conti did not review any Wholesaler testimony, data, or contracts produced in this case. Conti Dep. 110:23-112:19, 146:2-6; 151:22-152:17. As a result, Dr. Conti could not disclose, *even by category*, how she would account for *any* relevant, much less Wholesaler-specific, costs such as labor for receipt, put-away, picking and loading; facility expense and warehouse leasing; equipment costs for forklifts and picking; packaging, shipping and transport; insurance; and taxes. Without even categorical descriptions of costs, Dr. Conti cannot be said to have rendered any opinion at all.[2]

---

[2] Plaintiffs may claim that Dr. Conti's failures are because Wholesalers did not produce the actual dollars and cents *pricing* information that accompanied their 2012-2019 purchase and sales data that was produced. That claim is a red herring. *First,* Wholesaler discovery responses were the product of detailed negotiations between Wholesalers and Plaintiffs and subsequently confirmed by the Court, which ruled that the *pricing information* associated with the eight years of Wholesaler purchases and sales was not to be produced. Plaintiffs never sought *cost information,* categorically or by dollar amount, except generally as to one component, "refunds," in their 30(b)(6) notice, discussed below. *Second*, this Wholesaler *pricing*

Moreover, Dr. Conti acknowledges that factoring in those types of cost categories is vital to her analysis. Though she admits she's done nothing, even categorically, to flesh out Plaintiffs' counsel's "formula," Dr. Conti concedes that Wholesaler profits (her purported "expert" task) **cannot be determined** without consideration of those same costs and revenue offsets which she did not even identify, much less evaluate. *See* Conti Dep. 138:14-24, 139:7-140:2, 142:20-143:7, 148:6-18, 149:10-150:15.  At the end of the day, having testified that she did not do the work for which she was designated, Dr. Conti explains she would prefer to sit back and let the jury or the Court tell *her*—the expert—how to work the formula and select cost/revenue factors to include. Conti Decl. FN 75; Conti Dep. 137:15-138:24.

---

information that was never required to be produced would have done nothing to assist Dr. Conti in the critical part of her assignment: *determination of appropriate costs and credits to be deducted from revenue to equal profits*. *Third,* any competent economist would have identified *cost categories at play in the industry* that could later be populated with actual cost amounts should a class be certified; Dr. Conti's failure in this regard demonstrates she has insufficient knowledge of the industry and Wholesaler business to qualify as an expert. *Fourth*, Wholesalers *did* produce 30(b)(6) witnesses on the cost factor of "refunds or credits in connection with the return of VCDs purchased or recalled . . . including whether and how any such refunds or credits would be recorded," but Plaintiffs asked no meaningful questions on the subject. *Fifth,* a further document production related to costs would not have mattered: Plaintiffs decided not to provide Wholesaler documents to Dr. Conti—and *incorrectly told her Wholesalers had not produced any documents*—thus denying her the opportunity to see: (a) numerous Manufacturer/Wholesaler and Wholesaler/Pharmacy agreements; (b) eight years of Wholesaler VCD sales and purchase data; and (c) Wholesalers' 30(b)(6) and other testimony. *See* Dkt. 478-5, Renner Decl. ¶¶ 2, 5, 7-8, 10; Dkt. 478-2, Abraham Decl. ¶¶ 9-12; Dkt. 478-3, Harrop Decl. ¶¶ 7, 10; Dkt. 478-6, Sample Decl. ¶¶ 8-11, 16-17; Wholesaler 30(b)(6) 12 & 13, Dkt. 1547, 1548, and 1549.

## DR. CONTI'S WHOLESALER-RELATED OPINIONS ARE INADMISSIBLE FOR MULTIPLE REASONS

## I.    LEGAL STANDARD

The standards governing the admissibility of expert testimony at the class certification stage of litigation are set forth in Defendants' Memorandum of Law in Support of Motion to Exclude Opinions of Dr. Edward H. Kaplan, M.D., incorporated fully herein. Dr. Conti's failures implicate this Court's primary focus on methodology, specifically, whether an expert *applied* an *accepted methodology*, not whether that expert could have done a better job or the "relative strengths of the witnesses or the underlying data." Feb 28, 2022 CMC Transcript 31:10-35:25. Dr. Conti makes no application of any, much less an accepted, methodology.

## II.    DR. CONTI IS NOT QUALIFIED TO OPINE ON THE ISSUE OF WHOLESALER UNJUST ENRICHMENT

*First*, Dr. Conti does not have the requisite "specialized expertise" to offer opinions on Wholesaler UE damages. *See Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003) (excluding expert opinions for lack of "more specific knowledge"; "[a]n expert may be generally qualified but may lack qualifications to testify outside his area of expertise"); *King v. Tjx Cos., Inc.*, No. 15-5642, 2017 WL 11552119, at *2 (E.D. Pa. Apr. 10, 2017) (similar). Dr. Conti has no academic background in the drug supply chain with respect to Wholesalers' business. She has never calculated Wholesaler UE damages. Conti Dep. 116:9-13.

5

She has not spent time writing about Wholesalers. *Id.* 107:7-14. She has never published work on any wholesaler and has never published with or about Defendant Wholesalers. Conti Decl., Att. A: CV; Conti Dep. 104:4-19. She has never seen a Wholesaler-Manufacturer supply contract. Conti Dep. 151:22-152:6. Dr. Conti has not "really thought about" whether Wholesaler contracts differ by Retail Pharmacy, or by Manufacturer, although she speculates that she does not expect those differences to be significant. Conti Dep. 145:4-146:15, 151:5-21.

**Second**, in the absence of actual Wholesaler experience, Dr. Conti relies on **thought** alone to support her opinions—specifically, that she: (1) has spent 20 years "thinking about how the system works" and how prescription drugs go through the supply chain; and (2) has "thought about" the "important" "role of Wholesalers" in her "academic roles." Conti Dep. 106:25-107:5. But thinking about something does not an expert make. Even Dr. Conti admits that her Wholesaler knowledge is lacking:

> I actually haven't spent that much time writing about distributors and wholesalers in part because . . . [t]he data is opaque. It's not normally what we—I have access to in my—in the course of my daily research—research.

*Id.* 107:7-14. Plainly, Dr. Conti's experience and knowledge with respect to Wholesalers is in no way "specialized," and simply having a "knowledge base superior to a layperson" is insufficient to qualify her as an expert. *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015).

*Third*, even were it enough for an expert to bolster inadequate expertise through industry study, Dr. Conti did not do that here either. In particular, she did not review any Wholesaler contracts with Manufacturers or Retail Pharmacies. Nor did she review the Wholesaler electronic data, other materials, or Wholesaler testimony (save for a single declaration) produced in this case.[3] Conti Dep. 110:23-112:19, 146:2-6; 151:22-152:17. Her failure to rely on any actual data or testimony similarly requires exclusion of her testimony. *Metil v. Core Distrib., Inc.*, No. 2:16-CV-00968, 2018 WL 3707421, at *8 (W.D. Pa. Aug. 3, 2018) (excluding expert opinions where there was "no indication from the expert report that [expert] relied on any data or literature to support his theory").

## III.   DR. CONTI'S OPINIONS ARE NOT PROPER EXPERT TESTIMONY AND WOULD NOT BE HELPFUL TO THE JURY

Dr. Conti's Wholesaler damages model does not constitute proper expert testimony and is not helpful to jurors because she: (1) simply regurgitates a commonly known and widely available formula provided to her by counsel; and then (2) fails to actually apply it.

---

[3] Notably, Dr. Conti's failure to review Wholesaler data reflects a strategic decision by Plaintiffs' counsel: Dr. Conti asked Plaintiffs' counsel to see the Wholesalers' data produced in this case, and Plaintiffs' counsel inaccurately told her that the Wholesalers had not produced any data. Conti Dep. 111:24-112:19. In fact, Wholesalers produced significant materials, including the contracts that govern the relationships core to Dr. Conti's "opinion," (*see supra* n.2)—none of which Dr. Conti considered. Conti Decl. Attachment B, Materials Relied Upon ("Att. B, Materials").

*First*, Dr. Conti's opinions do not constitute expert opinion because the formula she provides—*i.e.*, that profits = revenues minus costs—is straight out of an introductory economics textbook,[4] is readily found by a quick Google search,[5] and was given to her by Plaintiffs' counsel:

> Q  So is counsel's instruction that the proper calculation of damages for UE is revenues minus cost?
> A. …Yes.

Conti Dep. 127:17-22. Because Dr. Conti has provided none of her own "expertise" for Wholesaler damages, and instead acts only as a mouthpiece for counsel, her opinion must be excluded. *See, e.g., Goldberg v. Fla. Int'l Univ. Bd. of Trustees*, No. 18-20813-CIV, 2019 WL 692780, at *2-3 (S.D. Fla. Feb. 7, 2019) (expert opinion did not satisfy reliability where "Plaintiff was the source of the data used" in calculations and the expert "conducted no independent research, nor any verification or critical assessment of the data provided to him"); *Sykes v. Napolitano*, 634 F. Supp. 2d 1, 8 (D.D.C. 2009) (expert testimony that "advocates for the Plaintiff rather than providing expertise to the fact-finder" is inadmissible).

---

[4] *E.g.*, Robert L. Sexton, Survey of ECON (2016) at 116 ("economic profits: total revenues minus explicit and implicit costs").

[5] Indeed Editorial Team, *How to Calculate Profit (With Example)* (February 22, 2021), https://www.indeed.com/career-advice/career-development/how-to-calculate-profit ("The formula to calculate profit is: Total Revenue - Total Expenses = Profit.").

8

*Second*, Dr. Conti's testimony would provide no benefit to the trier of fact because she simply did not perform any damages *calculation* as to Wholesalers at all. Conti Dep. 147:19-20; *see also supra* n.2; Conti Decl. ¶ 86.

*Third,* Dr. Conti testified that she was "*laying out how I would think about calculating [UE],*" (Conti Dep. 116:2-7 (emphasis added)), but, in fact, did not even lay out any thoughts. She fails to identify any categories of costs or credits to be deducted from revenue to equal profits and fails to provide a methodology for doing so. For an opinion to be informed by expertise and to help the jury, a competent financial expert must at least identify cost categories at play in the industry that could later be populated with actual cost amounts should a class be certified.[6] Dr. Conti makes no pretense about it: she did not identify any categories of costs or describe how she would apply them to her formula to reach profits.

---

[6] The undisputed evidence is that Wholesalers' revenues and costs are "driven by individualized contracts with upstream manufacturers and downstream pharmacies." Dkt. 2009-18, Ex. 192, Kosty Rep. ¶ 192, Manufacturer Class Cert. Opposition Ex. 192. The terms in these contracts "vary from entity to entity over time" such that a "review of individualized contracts" is required to correctly calculate revenues and costs. *Id.* ¶¶ 191, 194. But Dr. Conti, who acknowledges these very facts—that: (1) "contracts probably dictate a variety of different terms," including chargebacks, aggregate volume discounts, and wholesaler rebates, and those terms "might differ over time" (Conti Dep. 145:4-24); (2) rebates are "generally paid in aggregate and are contracted to an [sic] advance of any specific transaction" (Conti Dep. 142:20-143:7); and (3) rebates, chargebacks, discounts, logistics fees, service fees and other costs may well be relevant to calculating Wholesalers' profits (Conti Dep. 138:14-24, 139:7-140:2, 142:20-143:7, 148:6-18, 149:10-150:15)—does nothing with this critical information. Conti Dep. 146:2-6; 151:22-152:17; Conti Decl. Att. B, Materials.

In truth, Dr. Conti is unable to identify the costs without outside assistance. She testified that the Court or jury should tell *her*—the expert—which costs are relevant to calculating Wholesaler profits. Conti Dep. 138:14-24 (rebates and net prices would be considered "if counsel or the court or the jury find that they should be included"), 137:15-138:10 (similar); *see also* Conti Decl. FN 75. Yet, Dr. Conti concedes that Wholesaler profits (her "expert" task) **cannot be determined** without consideration of these numerous costs and revenue offsets. *See* Conti Dep. 138:14-24, 139:7-140:2, 142:20-143:7, 148:6-18, 149:10-150:15. Because Dr. Conti has not used any expertise to render her opinions and hopes instead that the fact finder can help her figure things out, her opinions would provide no assistance to the finder of fact and are therefore inadmissible. *See Fellner v. Supreme Corp.*, No. CIV. A. 92-3680, 1995 WL 79787, at *9 (D.N.J. Feb. 21, 1995) ("[I]f a jury is capable of understanding the subject matter through its own knowledge and experience, expert testimony is not admissible because it will not assist the trier of fact."); *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (expert damages testimony must consist of more than "simplistic extrapolation and childish arithmetic"); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 484 (S.D.N.Y. 2016) ("[Expert] is not basing her opinions on an analysis of data or studies, but rather on what she describes as a 'logical concept,' which does not pass muster under Rule 702 or *Daubert*. If her opinion is based on simple common sense,

10

it is not helpful; the jury does not need expert opinion because its common sense will suffice.").

**Fourth**, Dr. Conti admits that her two Declaration pages discussing Wholesaler damages do not provide a viable equation. Instead, she admits, "[a]ll I'm doing is laying out how I would think about calculating [UE]." Conti Dep. 116:2-7. Her work is a purely "theoretical exercise." *Id.* 147:19-21. Third Circuit courts have consistently recognized that unsubstantiated, theoretical opinions cannot withstand *Daubert* scrutiny. *See Hook v. Whiting Door Mfg. Corp.*, No. CV 3:15-281, 2019 WL 630324, at *9 (W.D. Pa. Feb. 14, 2019) (excluding expert testimony as unreliable where expert "does not provide any data that supports his assertions" and opinions were based on "intuition" and "thinking logically"); *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 614 (E.D. Pa. 2002) (excluding lost profits expert who provided no rationale for damages theory "other than noting that it is 'common sense economics'").

**Fifth,** while the assumption that the VCDs are "worthless" pervades her damages calculations as to the **other** Defendants, even Dr. Conti agrees that the concept of "worthlessness" of the VCDs has nothing to do with her damages calculation as to Wholesalers:

> Q:       And so your calculation as to the wholesalers for UE damages, it doesn't matter if the products are—are worthless or not?

> THE WITNESS:    For my purposes, I am—I was asked to—so for my purposes, it's just the amount of money that the wholesalers made off moving products from one place to another.

Conti Dep. 130:9-18. This admission means that Plaintiffs' sole UE damages expert does not believe a worthlessness question appropriate for class consideration.[7]

**Sixth**, and finally, to the extent Plaintiffs argue that Dr. Conti's "formula" is sufficient at the class certification stage and need not be fully developed and applied until after a trial, that argument should also be rejected. Dkt. 1748 at 67, Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification of Consumer Economic Loss Claims. Dr. Conti plainly admits that she **does not have** a complete method for calculating UE damages, and she lacks the ability to construct one at this time. It is well-recognized that incomplete damages theories are inadmissible even at the class-certification stage. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187-88 (3d Cir. 2001) (damages formula is not viable where expert "projected that he could devise a formula that would measure damages among the class"); *see also Weiner v. Snapple Bev. Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *7-9 (S.D.N.Y. Aug. 5, 2010) (excluding class

---

[7] Even if, *arguendo*, worthlessness is relevant to the Wholesaler UE assessment, inherent in any worthlessness inquiry are so many individualized issues of fact—particularly, therapeutic value—that a class could not be certified as to Wholesalers. Wholesalers incorporate herein as if set forth fully Manufacturers' and Retailers' Motion to Exclude the Opinions of Dr. Conti.

damages expert who did "not demonstrate in adequate detail how his proposed 'approaches' would be used").

## IV. DR. CONTI'S WHOLESALER UNJUST ENRICHMENT OPINIONS ARE UNRELIABLE

To the extent that Dr. Conti offers any Wholesaler opinions beyond recitation of Plaintiffs' counsel's elementary formula, those opinions should also be excluded because they are unreliable and not "accepted, or used by other experts in the field." *Yazujian v. PetSmart*, 729 F. App'x 213, 216 (3d Cir. 2018). Specifically, as noted above, Dr. Conti failed to review Wholesalers' documents (*see supra* n.2 & n.3) and failed to in any way account for complexities in the prescription drug wholesale market—complexities that makes it impossible to reliably measure either factor (revenues or costs). *See supra* n.6. Critically, Dr. Conti fails to consider that Wholesalers do not track profits, or the component parts of revenues and costs, on a drug-by-drug basis, so it is virtually impossible[8] to determine the Wholesaler profit associated with a particular VCD sale, or VCD sales generally, as distinct from the sale of other medications. Renner Decl. ¶¶ 2, 8; Harrop Decl. ¶ 7; Sample Decl. ¶ 16. Dr. Conti offers no expert solution to this inherent and insurmountable difficulty.

---

[8] Dr. Conti suggests AmerisourceBergen "admit[s] that the data required is available and/or can be collected." Conti Decl. ¶ 86 n.76 (citing Sample Decl. ¶¶ 15-20). In fact, Mr. Sample stated that such information is not ordinarily retained and that "*[i]f it could be done*," calculating VCD profits would require "significant expenditure of time or resources." Sample Decl. ¶¶ 16-17 (emphasis added).

## <u>CONCLUSION</u>

Dr. Conti is unqualified to opine as to Wholesalers, their industry, and VCDs. Her testimony does not rely on expertise or any underlying Wholesaler data. Her testimony neither suggests nor applies any viable methodology and would not be helpful to the jury. Her opinions are unreliable with respect to Wholesaler-specific profits issues. Therefore, for any one or all of those reasons, the Court should exclude Dr. Conti's opinions as to Wholesaler Defendants in their entirety.

Dated: May 3, 2022

Respectfully submitted,

*/s/ Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
Liaison Counsel for Wholesalers
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

*Counsel for AmerisourceBergen
Corporation*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Emily G. Tucker
Luke J. Bresnahan
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington, D.C. 20004

Tel.: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com
Email: etucker@crowell.com
Email: lbresnahan@crowell.com

*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com

*Counsel for McKesson Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of May, 2022, I filed the foregoing

**WHOLESALER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**

**OF MOTION TO EXCLUDE THE OPINIONS OF RENA CONTI, Ph.D.**

electronically through the CM/ECF system, which will send notice of filing to all

CM/ECF participants.

<u>     s/ *Jeffrey D. Geoppinger*          </u>
Jeffrey D. Geoppinger