# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. ROBERT B. KUGLER CIVIL NO. 19-2875 (RBK) |

## PLAINTIFFS' BRIEF IN SUPPORT OF *DAUBERT* MOTION TO PRECLUDE DEFENSE EXPERT MARK ROBBINS FROM OFFERING CLASS CERTIFICATION OPINIONS

Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr & Mougey, P.A.
316 S. Baylen St., Suite 400
Pensacola, FL  32534
850-435-7082
Fax: 850-436-6082

On the Brief:
Daniel A. Nigh, Esq.
Madeline Pendley, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

I.      THE *DAUBERT* STANDARD .......................................................................... 3

II.     MARK ROBBINS SHOULD BE PRECLUDED FROM OFFERING CLASS
        CERTIFICATION OPINIONS ........................................................................... 5

III.    MARK ROBBINS' SUBSTANTIVE OPINIONS SHOULD BE EXCLUDED ............... 5

  A.    Dr. Robbins are Opinions Are Unreliable, Which Renders Them Inadmissible ................ 5

    1.    Dr. Robbins' Was Not Provided The Relevant Documents He Requested from
          Counsel ....................................................................................... 6

    2.    Dr. Robbins' Opinions are Factually Incorrect ........................................ 8

        a.    Torrent Acted Unreasonably in Delaying the Recall of Its Valsartan Product . 9

        b.    Third-Party Auditor Puts Torrent on Notice of ZHP's Problems................... 11

    3.    Dr. Robbins Failed to Review Important Documents on which his Opinions are
          Supposedly Based.............................................................................. 12

  B.    Dr. Robbins Lack of Involvement of His Report Requires Exclusion Under Federal Rule
        of Civil Procedure 26. ........................................................................... 16

    1.    Analysis Group's Preparation of Expert Report Warrants Exclusion ........................ 17

    2.    Dr. Robbins Did Not Adequately Direct, Supervise, or Participate in the Preparation
          of his Report. .................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191 (3d Cir. 1995) ................................ 12

Bank of New York Mellon *v.* WMC Mortgage, LLC, 2015 WL 4887446
 (S.D.N.Y. Aug. 17, 2015) ......................................................................................... 17, 19, 20

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ...................................... 3

*Crowley v. Chait,* 322 F.Supp.2d 530 (D.N.J.2004)................................................................... 17

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 *U.S.* 579 (1993)..................................... 4, 5

*Doherty v. Allstate Indem. Co.*, 734 F. App'x 817 (3d Cir. 2018)............................................ 12

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002)........................... 17, 18

*Geiss v. Target Corp.,* 2013 *WL* 4675377 (D.N.J. 2013) .......................................................... 3, 6

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997) ................................................................... 5

*Heller v. Shaw Industries, Inc.*, 167 F.3d 146 (3d Cir. 1999)..................................................... 4

*In re M/V MSC Flaminia*, No. 12 Civ. 8892 (KBF), 2017 WL 3208598
 (S.D.N.Y. July 28, 2017)(Ex. 13) ....................................................................................... 17, 18

In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994) .............................................. 4

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) ............................................................................ 4

*Kumho Tire Co. v. Carmichael*, 525 U.S. 137 (1999) ............................................................... 4,6

*Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F.Supp. 2d 587 (D.N.J. 2002).............. 4

*Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558 (S.D.N.Y. 2007)......................... 17, 18

*Manning v. Crockett,* No. 95 C 3117, 1999 WL 342715 (N.D.Ill. May 18, 1999) ..................... 17

*Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009)............... 9

*Mondis Tech. Ltd. v. LG Elecs., Inc.*, 2021 WL 4077563, (D.N.J. Sept. 8, 2021) ....................... 8

*Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3d Cir. 2003) ....................................... 5

*Numatics, Inc. v. Balluff, Inc.*, 2014  66 F.Supp.3d 934 (E.D. Mich. 2014)........................ 17, 18

*Pac. Life Ins. Co. v. Bank of New York Mellon,* 2021 WL 5299193
 (S.D.N.Y. Nov. 15, 2021) (Ex. 14) ......................................................................................... 21

*Padillas v. Stork-Gamco, Inc.,* 186 F.3d 412 (3d Cir. 1999) ....................................................... 5

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008)............................................................. 3

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012)................................................... 3

**Rules**

Fed. R. Evid. 702 ................................................................................................................. 3, 4

Fed.R.Civ.P. 26(a)(2)(B) ....................................................................................................... 17

## PRELIMINARY STATEMENT

Plaintiffs submit this *Daubert* motion against Torrent cGMP (Current Good Manufacturing Practices) expert Mark Robbins with regard to his class certification opinions – or lack thereof. Dr. Robbins acknowledged that he has no opinions on class certification.[1]

In regards to his opinions on the merits of the case, Dr. Robbins' opinions are unreliable and therefore should be excluded. First, Dr. Robbins repeatedly asked Torrent's counsel for documents that he stated would be important to his opinions and ability to answer questions in the deposition, and these documents were not provided to him. Second, Dr. Robbins' opinions are not supported, and are actually refuted by the evidence he relies on. Third, Dr. Robbins failed to review documents that he claims to base his opinions on, and that are cited in his report. Finally, Dr. Robbins pawned off the duty of drafting his report and reviewing materials to staff at Analysis Group to such an extent that it is undiscernible what portions Dr. Robbins wrote, or information he reviewed. For all of these reasons, discussed further below, the Court should exclude Dr. Robbins' opinions in their entirety.

## STATEMENT OF FACTS

Defendant's proffered expert, Mark Robbins, was tasked with rebutting plaintiff expert John Quick. Specifically, Defense counsel asked Dr. Robbins to ██████████████████ ██████████████████████████████████████████████████████████████████ (Robbins Expert Report at 6, Ex. 1.). Dr. Robbins testified that his opinions are ████████ ████████████████████████████████. In order to assess Mr. Quick's opinions, Dr. Robbins ██████████████████████████████████████████████████████

---

[1] Robbins Dep. Tr. 61:17-20. Ex. 1.

██████████████████████████████████████, however, his own testimony demonstrates that he had not actually seen the majority of the documents he claims to have relied upon. Dr. Robbins also indicated ██████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████

The likely explanation for Dr. Robbin's lack of familiarity with documents that he "relied on," is that he did not write the majority of his report. As explained in his report and deposition testimony, ████████████████████████████████████████████ (Robbins Expert Report at 6). However, "assisted" appears is a vast understatement. Despite Dr. Robbins' claim that ████████████████ ██████████████████████ Dr. Robbins is unable to estimate how much of the report Analysis Group prepared, or even which specific parts. (Robbins Expert Report at 6). Further, Dr. Robbins had ███████████████

███████████████████████████████████████████████████ (Robbins Depo Tr. 87-91; Ex. 2). Dr. Robbins had a ██████████████████████████ ████████████████████████████████████ Finally, Dr. Robbins only spent 18.9 hours on this report, while his assistants spent almost 200 hours. Dr. Robbins' minimal time spent on this assignment, as well as his aforementioned testimony, demonstrate an inexcusable lack of familiarity with his own report and the underlying documents he cites to, which indicates that he did not have an active role in preparing the report as is required under Federal Rule of Civil Procedure 26. As a result, his opinions are unreliable and we ask this Court to exclude Dr. Robbins opinions entirely.

# I.    THE *DAUBERT* STANDARD

Federal Rule of Evidence 702, which incorporates the *Daubert* standard, governs the admissibility of expert testimony in Federal Court.  The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  While "Rule 702 has a liberal policy of admissibility," an expert still must meet the minimum standards for admissibility. *Geiss v. Target Corp.,* 2013 *WL* 4675377 at *4 (D.N.J. 2013) (Ex. 3), citing  *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008), other citations omitted.

The District of New Jersey established the following criteria:

> 1) the witness must be an expert (i.e., must be qualified);
> 2) the expert must testify about matters requiring scientific, technical, or specialized knowledge (i.e., must be reliable); and
> 3) the expert's testimony must assist the trier of fact (i.e., must fit the case).
> *Id*.

In short, the Third Circuit, when applying that Rule 702, imposes three imperative restrictions on expert testimony: "qualification, reliability, and fit." *Calhoun v. Yamaha Motor Corp., U.S.A*., 350 F.3d 316, 321 (3d Cir. 2003) (internal quotations omitted). A reliable opinion is based on the 'methods and procedures of science rather than on 'subjective belief or unsupported speculation. *Geiss v. Target Corp.*, at *4-5, citations omitted.  "The reliability prong 'applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion.'") (quoting *ZF Meritor, LLC v. Eaton Corp*., 696 F.3d 254, 291 (3d Cir. 2012)). A suggestion or assertion put forth as an

opinion based on nothing other than "subject belief and unsupported speculation" makes an opinion unreliable. *See In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 742-743 (3d Cir. 1994)* "[I]t is the burden of the party offering the expert scientific testimony to demonstrate reliability by a preponderance of the evidence." *In re TMI Litig.*, 193 F.3d 613, 705 (3d Cir. 1999)(citing *Paoli II*, 35 F.3d at 744). "An opinion fits a particular case (and thus helps the trier of fact) when there is a connection between the scientific research or test result to be presented and particular disputed factual issues in the case…. Fit is an issue of relevance and simply means that scientific validity of the method or principles applies to the issues at hand…." *Geiss v. Target Corp.*, at *4-5, citations omitted.

The Court emphasizes the principles and methodology of the proffered expert over the actual conclusion reached or opinion provided. . *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 *U.S.* 579, 595 (1993); *Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). However, the amendments to Rule 702 make clear that the trial court must evaluate not only the principles and the methodology employed by the expert, but also whether the expert has properly applied those principles and methods to the facts of the case. *See Fed. R. Evid. 702.* The Court must "examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 (3d Cir. 1999). This is a critical part of the Court's expert analysis, and it is imperative to note that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F.Supp. 2d 587, 595-596 (D.N.J. 2002) citing to *General Elec. Co. v. Joiner*, 522 U.S. at 145–46 (1997). See

also *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (because "conclusions and methodology are not entirely distinct from one another ...a 'court may conclude that there is simply too great a gap between the data and the opinion proffered.'") (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146(1997)).

The party offering the proposed expert testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.,* 186 F.3d 412, 417-18 (3d Cir. 1999). If the Court finds that the proponent fails to establish the prerequisites, the exclusion of the expert is warranted. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997).

## II.  MARK ROBBINS SHOULD BE PRECLUDED FROM OFFERING CLASS CERTIFICATION OPINIONS

Dr. Robbins unequivocally testified that he ███████████████████████████ ████████, therefore, there is no opinion to "fit" this case. Thus, he cannot provide such opinions.

## III.  MARK ROBBINS' SUBSTANTIVE OPINIONS SHOULD BE EXCLUDED

Although Dr. Robbins did not offer any class certification opinions, he does attempt to offer opinions as to whether or not Torrent Pharmaceuticals complied with Current Good Manufacturing Practices (cGMP). Dr. Robbins opinions should be excluded as they are unhelpful, unreliable, and unreliably applied to the facts of this case.

### A.  Dr. Robbins Opinions Are Unreliable, Which Renders Them Inadmissible

An expert's scientific or technical opinion must be reliable. See *Daubert*, 509 U.S. at 591-92. Expert witnesses must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. To

be deemed reliable, an expert opinion must be based on scientific, technical or other specialized knowledge and **not on belief or speculation**. *Geiss v. Target Corp.*, at *4-5, citations omitted. Dr. Robbins' opinions are not reliable for the reasons discussed below.

### 1.  Dr. Robbins' Was Not Provided The Relevant Documents He Requested from Counsel

Throughout his deposition, Dr. Robbins claimed that ███████████████████ ███████████████████████████████. On at least five separate occasions, Dr. Robbins stated ███████████████████████████ ████████████; that he ████████████████████████████████ and, that ███████████████. (See Robbins Depo. Tr. 192:21-24; 214:14-215:10; 215:12-216:3; 216:4-15).

For example, Plaintiff's counsel asked Dr. Robbins about a document marked as ████████ (which Dr. Robbins cited to, although he did not seem to be aware of that[2]). This document is an FDA Establishment Inspection Report (EIR) that details the finding of an inspection of Torrent's Indrad facility in May 2016. The FDA's findings at Torrent's Indrad facility are particularly relevant as it is where Valsartan is manufactured. In this inspection, the FDA noted ████████ █████████████████████████████ and that ████████ ███████████████████████ (Torrent 9/Robbins 11 Ex. 4). This was a problematic finding, as it demonstrated ████████████████ █████████████████████████████ (Torrent 9/Robbins 11 at 13). Upon reviewing the document, Dr. Robbins stated he was ████████████ ███████████████████ (Robbins Depo. Tr. 207:25-208:1). After further



---

[2] Robbins Depo. Tr. 216:4-15.

questioning, Dr. Robbins stated that ████████████████████████████

████████████████████████

     Q:     ████████████████████████████████████

                           ████████████████████████████

     A:     ████████████████████████████████████

                           ████████████████████████████████████

                           ███████████████████████████████

     Q:     ████████████████████████████████████

                           ████████████████████████████████████

                           ███████████████████

     A:     ████████████████████████████████████

                           ██████████████████████[3]

Dr. Robbins went on to state ██████████████████████████

███████████████████████████████████████████.[4] A

similar exchange ensued regarding an audit report that Dr. Robbins ████████████

███████████████████████████████████████████

███████████

     Q:     ███████████████?



---

[3] Robbins Depo. Tr. 214:14-215:10.
[4] Robbins Depo. Tr. 215:12-216:3.



A: ████████████████████████████████████

████████████████████ [5]

After some confusing back and forth ensued:

Q: ████████████████████████████████████

████████████████████████

A: ████████████████████████████████████

████████████████████.

Q: ████████████████████████

A: ████████ [6]

Additionally, Dr. Robbins indicated that he ██████████████████████

████████████████████████████████████████████████████████

(Robbins Depo. Tr. 281:4-16). As Dr. Robbins stated himself, ████████████

████████████████████████████████████████████████████████

Despite asking counsel for this information, it was not provided to him. Therefore, the opinions

provided in his report are not fully developed, and not reliably formulated. For this reason, they

should be excluded.

### 2. Dr. Robbins' Opinions are Factually Incorrect

Expert testimony that is contrary to law or fact, or that seeks to misstate the applicable

law to the jury, is unhelpful. Expert analysis also must have sufficient support in facts or data for

the conclusions reached. *See, e.g.*, *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2021 WL

4077563, at *3 (D.N.J. Sept. 8, 2021) (Ex. 5). Opinions that rest on "assumptions and

conclusions that are not supported by the factual record" have been excluded on the basis that

---

[5] Robbins Depo. Tr. 192:21-24.
[6] Robbins Depo. Tr. 194: 3-11.

they would not "aid the jury in resolving a factual dispute" because they do not "fit under the facts of the case." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (internal citations and quotations omitted). Dr. Robbins' general position is Torrent did not violate cGMPs, despite numerous documents that suggest the opposite; many of which are in his own report. (Robbins Expert Rep. at 7). For the reasons discussed below, Dr. Robbins opinions are not supported by even the limited factual record his Counsel provided to him therefore, his opinion is unhelpful, does not fit the case, and is inadmissible.

   a. **Torrent Acted Unreasonably in Delaying the Recall of Its Valsartan Product**

Dr. Robbins stated that Torrent responded ██████████████████████████████ ██████████████████████████████ He gives a brief summary of what Torrent did, ██████ ██████████████████████████████████████ However, he failed to mention that Torrent ██████████████████████████████ ██████ (Torrent 23/Robbins 16; Ex. 6). He also failed to mention that Torrent ██████████ ██████████████████████████████████████ ██████████████████████████████████████ ██████ .

Torrent initially learned its Valsartan product could contain NDMA on ██████████ ██████████████████ At this time, Torrent was told ██████████████ ██████████████████ . Torrent does not issue a recall at this time. Even after Torrent is notified that ██████████████████████████ which Dr. Robbins did not realize he had cited to), Torrent does not recall. Rather, a few days later, Torrent's Chief Operating Officer (COO), ██████████████████████████████████████

9

████████████████████████████████████████████████████ The

same that ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████ . ██████████████████████████████████████████

████████████████████████████████████████████████████

Dr. Robbins does not address any of these actions taken by Torrent.

Additionally, on August 3, 2018, ZHP notifies Torrent ████████████████████

█████████████████████████ Torrent still did not initiate a recall, or even quarantine.

Despite his initial opinion that Torrent acted reasonably in this situation, when asked whether or

not he believed it was appropriate for ██████████████████████████████████████

████████████████████████████████████████████████████

      Q:    ████████████████████████████████████████

              █████████████████████ █ ███████████████████████████

              ██████████

      A:    ████████████████████████████████████████████

              ██████████████████████████████

      Q:    ████████████████

      A:    ████████████████████████████████████████████

              ███████████████████████████████████

      Q:    ███████████████████████████████

              ████████████████

10



The question was asked and vaguely answered three more times, and Dr. Robbins finally

stated ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ ).[9]

### b. Third-Party Auditor Puts Torrent on Notice of ZHP's Problems

Dr. Robbins states that Torrent used ████████████████████████

(Robbins Report at 24). The only document that Dr. Robbins relied on to demonstrate that

████████████████████████ As discussed in more detail in the following sections,

when Dr. Robbins was initially shown ████████████████████████

he claimed he had never seen them before (even though the document was cited to in Dr.

Robbins' Materials Relied Upon). In this document, ████████████████████

████████████████████████████████████████████████████

[7] Robbins Depo. Tr. 270:11-271:11.
[8] Robbins Depo. Tr. 271:24-272:10.
[9] Robbins Depo. Tr. 273:19-274:2.

11



Dr. Robbins was not able to explain this document, or answer additional questions about it, despite the fact it is directly relevant to his opinion that ████████████████████████████

Because Dr. Robbins opinions are contradictory to the factual record in this case, his opinions should be excluded. *See, e.g.*, *Doherty v. Allstate Indem. Co.*, 734 F. App'x 817, 823 (3d Cir. 2018) (affirming summary judgment and exclusion of expert testimony where the "record is clear" that expert testimony was inconsistent with the factual record); *Advo, Inc. v. Philadelphia Newspapers, Inc.*, 51 F.3d 1191, 1198 (3d Cir. 1995) (same).

### 3. Dr. Robbins Failed to Review Important Documents on which his Opinions are Supposedly Based

Dr. Robbins provided Plaintiffs with a list of Materials Relied Upon along with his expert report. (Robbins Expert Report, Appendix B at 40). During his deposition, Dr. Robbins ████████████████████████████████████████████. He took the time to clarify ████████████████████████████████



(Robbins Depo. Tr. 216:16 – 217:7). However, there were several documents that Dr. Robbins had apparently relied upon, but, interestingly, had never seen.

The first of many examples involves ████████████████████████████

████████ In Dr. Robbins' Materials Relied Upon list, he claims to have relied upon ████



In fact,

However, when asked about

Q:

A:

Q:

A:

Q:

A:

A:

Perhaps the name ▮▮▮▮▮ just slipped Dr. Robbins' mind. However, Dr. Robbins consistently had the same memory issue when presented with documents. Even when the document was put on the screen for him to examine, Dr. Robbins often stated ▮▮▮▮▮

▮▮▮▮▮

▮▮▮▮▮ For example, when asked if he had seen an ▮▮▮▮▮ and listed as such in Dr. Robbins' report), Dr. Robbins stated:

A:

Q:

A: ▮▮▮▮▮[1]

---

[10] Robbins Dep. Tr. 225:1-10.
[11] Robbins Dep. Tr. 223:9-12.

13



Even after being told this document was on his Materials Relied Upon, Dr. Robbins

---

[12] Robbins Dep. Tr. 223:17-22.
[13] Robbins Dep. Tr. 224: 19-25.
[14] Robbins Dep. Tr. 226: 2-5.
[15] Robbins Dep. Tr. 226: 18-24.

This happened multiple times throughout the deposition. When shown ███████████

another document that Dr. Robbins "relied on," he once again, █████████████████████

Q:     ████████████████████████████████████████████

       █████████

A:     ████████████████████████████████████████████████

       ███

Q:     ████████████████████████████████████████████████

A:     ████████████████████████████.[17]

Dr. Robbins did in fact have access to the actual document, as it was listed in his

'Materials Relied Upon.' However, when counsel tried to question Dr. Robbins on the document,

███████████████████████

Q:     ████████████████████████████████████████████

       ████████████████████████████████████

A:     █████████████████████.

Q:     █████████████████████████

█      ██████████████████████████████[18]

                          *   *   *

Q:     ████████████████████████████████████████████

       ████████████████████████



---

[16] Robbins Dep. Tr. 231: 17-21.
[17] Robbins Dep. Tr.183: 17 – 184:2.
[18] Robbins Dep. Tr. 185:15-24.

15

A:



Q:

A:

.[19]

As the deposition went on, Dr. Robbins eventually became savvy to the premise that he should be aware of what he has cited to. To address this, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (See Robbins Dep. Tr. 207:22 – 208:5). However, he still was not familiar with the details of the documents, or even sections of his report. Dr. Robbins ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Robbins Dep. Tr. 217:11-14).

### B. Dr. Robbins Lack of Involvement of His Report Requires Exclusion Under Federal Rule of Civil Procedure 26.

There is a simple explanation for Dr. Robbins' lack of familiarity with his own report - he did not write it. To shed some light on this assertion, we need look no further than the single invoice that Dr. Robbins provided Plaintiffs prior to his deposition. (Robbins 8; Ex. 10). This invoice demonstrates that Dr. Robbins spent just 18.90 hours on his twenty-six page report. In order for Dr. Robbins to have drafted this report in just under 19 hours, he would have to complete almost one and a half pages per hour. This would not include time he would almost certainly need to spend looking for relevant documents, time spent meeting with Torrent's counsel, time spent

---

[19] Robbins Dep. Tr. 190:8-21

meeting with Analysis Group, or the time needed to review the materials he supposedly relies upon. It is impossible that Dr. Robbins adequately participated in all relevant aspects of preparing his report, and since we are unable to discern which portions he was involved in preparing, the entire report should be excluded.

### 1. Analysis Group's Preparation of Expert Report Warrants Exclusion

Mark Robbins did not furnish a report of his own that even approximated his original work in this case. Rule 26 of the Federal Rules of Civil Procedure states that expert testimony "must be accompanied by a written report—*prepared* and signed *by the witness*." Fed.R.Civ.P. 26(a)(2)(B) (emphasis added). *Manning v. Crockett,* No. 95 C 3117, 1999 WL 342715, at *6 (N.D.Ill. May 18, 1999) ("Preparation implies involvement other than perusing a report drafted by someone else and signing one's name at the bottom to signify agreement."). "Allowing an expert to sign a report drafted entirely by counsel without prior substantive input from an expert would read the word 'prepared' completely out of the rule." *Manning v. Crockett,* No. 95–C3117, 1999 WL 342715, at *3 (N.D.Ill. May 18, 1999)(Ex. 11). The same logic applies to "assistant groups" preparing the expert reports as well. *Bank of New York Mellon v. WMC Mortgage, LLC*, No. 12 Civ. 7096 (DLC), 2015 WL 4887446, at *6 (S.D.N.Y. Aug. 17, 2015)(Ex. 12). Courts have excluded the testimony of experts when they have reached the conclusion that these reports failed the Rule 26(a)(2)(B) preparation requirement (*Crowley v. Chait*, 322 F.Supp.2d 530 (D.N.J. 2004)), and the same should be done in this case.

"The *Daubert* test must be applied with due regard for the specialization of modern science. A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). In this case, Dr. Robbins is the

mouthpiece for four individuals who are not scientists at all. The rules of evidence "allow an expert to present the work of others only if the expert **supervised, directed, or participated** in that work, and if the expert is qualified in the field and could perform the work themselves." *In re M/V MSC Flaminia*, No. 12 Civ. 8892 (KBF), 2017 WL 3208598, at *2 (S.D.N.Y. July 28, 2017)(Ex. 13). By contrast, "[t]he Court will preclude proffered witnesses who simply aggregate or recite the opinions of others." *Id.* In other words, "[t]he expert witness must in the end be giving his *own* opinion." *Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (excluding testimony of expert witness who purported to rely on another expert over whom he "exercised little if any supervision").

### 2. Dr. Robbins Did Not Adequately Direct, Supervise, or Participate in the Preparation of his Report.

As mentioned, Dr. Robbins affirmatively states that he used employees from Analysis Group in this report. While an expert is permitted to utilize these types of assistants, these assistants are expected to be "merely gofers or data gatherers," and are not intended to "exercise professional judgment that is beyond the expert's ken." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002)( holding that a key assessment regarding the proper use of assistants is whether the expert supervised the assistants carefully). In this case, in order for Dr. Robbins to have appropriately utilized such assistants in the preparation of his report, the Court must find that Dr. Robbins adequately supervised, directed, or participated in the preparation of his report. *In re M/V MSC Flaminia*, No. 12 Civ. 8892 (KBF), 2017 WL 3208598, at *2 (S.D.N.Y. July 28, 2017).

In *Numatics, Inc. v. Balluff, Inc.,* 2014  66 F.Supp.3d 934 (E.D. Mich. 2014), the defendant's expert was precluded from testifying because he did not furnish a report that approximated his original work. The court criticized the expert for the minimal amount of time actually spent on

18

the case. Evidence was presented that the expert implausibly reviewed 2,600 pages of depositions transcripts in two to three hours and spent less than thirty hours total developing his opinions on the case, the majority of which was spent traveling. Also troubling to the court was that when pressed the expert admitted to having a "complete lack of knowledge about the factors relevant to assessing" his ultimate opinion in the case.

Dr. Robbins spent event less time on his report than the expert in *Numatics*, as he devoted an abysmal 18.9 hours. (Robbins 8). In this 18.9 hours, Dr. Robbins claims ██████████ ████████████████████████████████████ including the eighty-three documents provided by Torrent's counsel, the ███████████████████ which is over 1,100 pages, the ████████████████ which is an additional 441 pages, and the ████████████████████ he cites to, which totals roughly 2,000 pages of material. Just as in the aforementioned case, it is highly implausible that Dr. Robbins reviewed the material. His lack of time expended formulating his opinions, combined with Dr. Robbins "complete lack of knowledge" about the facts of the case suggest he did not meaningfully participate in the preparation of his report.

It is evident that the lion's-share of the work was done by four analysts, as each of them spent significantly more time on this report than Dr. Robbins: The Managing Principal of Analysis Group (T. Davis) spent 44.5 hours; the Vice President (L.Antras) spent 46.5 hours; a Senior Analyst (M. Somma) spent 75.2 hours; and an additional Senior Analyst spent 26.2 hours. (Robbins 8). Combined, these assistants worked 192.4 hours on this report, which more than ten-times the amount of hours Dr. Robbins contributed. (Robbins 8). Perhaps more troubling, Dr. Robbins was ████████████████████████████████████████████████t, and

19

stated that he has ███████████████████████████████[20] or even ████████
█████████████████████████. Dr. Robbins affirmatively stated ██████████████
██████████████████████████.[21]

    The Southern District of New York addressed the issue of adequate "supervision, direction or participation," several times. In *Bank of New York Mellon v. WMC Mortgage*, an expert also utilized assistants in the preparation of his report. Although the expert claimed that his report contained his own analysis and was prepared at his direction, the Court found the "expert "[did] not know the experience of any of [the reunderwriters] who worked on this project, [and] he [was] unaware of the instructions they were given or the extent to which their work was subject to quality control." *Bank of New York Mellon* v. *WMC Mortgage, LLC*, No. 12 Civ. 7096 (DLC), 2015 WL 4887446, at *6 (S.D.N.Y. Aug. 17, 2015). As a result, the expert was ultimately excluded due to his inadequate supervision, direction and participation of assistants.

    Similar to the expert in *Bank of New York Mellon*, Dr. Robbins ████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████[22] He did not know L. Andras' educational background, and was not aware
████████████ if she even had a college degree.[23] For M. Somma, the assistant who billed the highest number of hours on the report, Dr. Robbins had ██████████████████████████████████

---

[20] Robbins Depo. Tr. 88:19-20.
[21] Robbins Depo. Tr. 86:7-8.
[22] Robbins Depo. Tr. 87:10-20.
[23] Robbins Depo. Tr. 88:3-12.

███████████████████████████ [24] Lastly, for A. Zhu, Dr. Robbins stated ███████████████████

███████████████████████████  and  also  ████████████████████████████

██████.[25]  Dr. Robbins' lack of knowledge regarding the assistant's education or

experience demonstrates a lack of participation and supervision of the assistants which

warrants exclusion as in *Bank of New York Mellon* v. *WMC Mortgage, LLC*.

Just last year, the Southern District of New York again addressed this issue. In a case that

also involved Analysis Group assistants, the expert  "could not identify in his report anything

specific that he wrote; could not recall how much time he spent editing the report or any details

of directions he gave for its preparation; could not identify which Analysis Group individuals

performed what tasks or even describe the supervision he purportedly provided other than to say

"they did what I told them to do," which he could not specify; and "rel[ied] on their hours to

collect data, to analyze data, and to, you know, produce the product." *Pac. Life Ins. Co. v. Bank

of New York Mellon,* 2021 WL 5299193, at *5 (S.D.N.Y. Nov. 15, 2021)(Ex. 14). Based on the

aforementioned testimony, the Court determined that the expert's level of involvement in the

preparation of his report was deficient and was excluded.

During his deposition, Dr. Robbins did not ████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████

    Q:   ████████████████████████

    A:   ██████████

██   ████████████████████████████

---

[24] Robbins Depo. Tr. 90:6-18.
[25] Robbins Depo. Tr. 90:22-91:21.

21

A:    ███████████ [26]

Also troubling, the invoice provided from Analysis Group does not specify what Dr. Robbins did

during the nineteen hours he billed. The billing entry simply states "January hours" under the

Narrative heading, so we have no idea what exactly Dr. Robbins contributed to this report.[27]

When asked how he drafts his reports, Dr. Robbins stated that he ████████████████████

██████████████████████████████████████████████████████████████████

████████████████ ██████████████████████████ ████████████████████

████████.[28] This method of report drafting suggests that Dr. Robbins starts by drafting the report

and then finds documents that support his opinion; rather than reviewing documents to come to

his opinions. Analysis Group's "help" with citations explains why Dr. Robbins is unfamiliar with

documents contained in the citations, and suggests that Dr. Robbins had no part in finding or

reviewing the documents that his opinions should be based on. Finally, Dr. Robbins ██████

██████████████████████████████████████████████████████████████████

████████████████████████████.[29]

   The single invoice combined with Dr. Robbins lack of knowledge regarding all aspects of his

report demonstrates that Analysis Group prepared the vast majority of this report. Dr. Robbins is

a quintessential expert-for-hire who is serving as a mouthpiece for his unqualified assistants.

Even if his opinions were his own, the opinions Dr. Robbins intends to give will mislead and

confuse the jury as they are not supported by the factual record. Because Dr. Robbins'

---

[26] Robbins Depo. Tr. 203: 4-8.
[27] The earliest of his assistant's entries is January 3, 2022; just nine days before the final expert report was filed on January 12, 2022.
[28] Robbins Depo. Tr. 90:12-23.
[29] Robbins Depo. Tr. 61:5-16.

overbroad, unreliable opinions lack any methodology, let alone scientifically sound methodology admissible under Daubert and its progeny, the Court must exclude his testimony.

### CONCLUSION

For the foregoing reasons, Dr. Robbins should be precluded from offering any opinions related to whether the claims are appropriate for class treatment, nor should Torrent be permitted to rely on Dr. Robbins' opinions in an effort to oppose class certification.

Respectfully,

PLAINTIFFS' COUNSEL

By*:___/s/ Daniel Nigh_____*
DANIEL A. NIGH, ESQ.
MADELINE E. PENDLEY, ESQ.
Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr & Mougey, P.A.
316 S. Baylen St., Suite 400
Pensacola, FL 32534
850-435-7003
Fax: 850-436-6013
dnigh@levinlaw.com
mpendley@levinlaw.com

Dated: May 3. 2022

23