# EXHIBIT 5

2021 WL 4077563
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

MONDIS TECHNOLOGY LTD. et al., Plaintiffs,

v.

LG ELECTRONICS, INC. et al., Defendants.

Civil Action No. 15-4431 (SRC)

|

Filed 09/08/2021

**Attorneys and Law Firms**

Martin Jay Black, Brian M. Goldberg, Teri-Lynn Allonardo Evans, Dechert LLP, Philadelphia, PA, Robert D. Rhoad, Dechert LLP, Princeton, NJ, for Plaintiff Mondis Technology Ltd.

Martin Jay Black, Brian M. Goldberg, Dechert LLP, Philadelphia, PA, for Plaintiffs Hitachi Maxwell, Ltd., Maxell, Ltd.

Liza M. Walsh, Selina Miriam Ellis, Walsh Pizzi O'Reilly Falanga LLP, Newark, NJ, for Defendants LG Electronics Inc., LG Electronics U.S.A., Inc.

**OPINION & ORDER**

CHESLER, U.S.D.J.

 **\*1**  This matter comes before the Court on the motion to exclude the expert report and testimony of Walter Bratic by LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"). Plaintiffs Hitachi Maxwell, Ltd., n/k/a Maxell Holdings, Ltd., Maxell, Ltd., and Mondis Technology Ltd. (collectively, "Mondis") oppose the motion. For the reasons that follow, this Court will grant the motion.

After this Court vacated the jury's damages verdict, and ordered a retrial on damages, Mondis was permitted to submit a supplemental expert report on reasonable royalty damages. Mondis submitted the Supplemental Expert Report of Walter Bratic, dated June 19, 2020, which, after a course of motion practice that has resulted in the striking of some portions of that report, is now the subject of the instant motion (hereinafter, the "Bratic Report.")

The Bratic Report presents five models of reasonable royalty damages, termed Observations 1 through 4, and the "Hansen Alternative" model. The Report introduces these models with the following:

> I have considered 4 data points that would have impacted the outcome of the hypothetical negotiation: (1) the Innolux Verdict, (2) the Hon Hai TV License, (3) the Mondis/LG Monitor License, and (4) LG's Internal Royalty Assessment. I also considered Mr. Hansen's royalty methodology which requires adjustment to make a proper comparison with the hypothetical negotiation for a license to the '180 patent.

(Bratic Report at 8.)

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

LG moves to exclude the Report and all testimony by Bratic at the damages re-trial, pursuant to Rule 702. This Court will briefly discuss LG's challenges to the models other than Observation 1, followed by a deeper analysis of Observation 1.

LG contends that two of the five models, Observations 2 (based on the Hon Hai License) and 4 (based on the LG Internal Assessment) fail to meet the requirement to apportion: "The essential requirement is that the ultimate

reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." Ericsson, Inc. v. D-Link Sys., 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Bratic begins Observation 2 by recounting the history of the licensing agreement between Mondis and Hon Hai, which was effective on July 1, 2011 and licensed the patents in the '090 family for use in TVs. (Bratic Report at 13.) The agreed royalty rate was $0.70 per TV, which, expressed as a percentage, corresponds to a rate of 0.25%. (Id.) Bratic then acknowledges that the Hon Hai license covered a set of patents, of which the '180 patent was but one, but distinguishes the Hon Hai license from those threshold licenses that cover an entire technical standard; Bratic contends that, because of section 4.4 of the Hon Hai licensing agreement, the full royalty amount was due even if only one claim of one licensed patent remained valid. (Id. at 13-14.)

 **\*2** From the get-go, the debate over whether Observation 2 meets the apportionment requirement seems to this Court to be *déjà vu* all over again. Bratic concedes that this model results in a royalty estimate that does *not* reflect only the incremental value of the '180 patent, and this Court has one more spirited debate before it in which Mondis argues that, nevertheless, the apportionment requirement is met. This Court has already decided this issue in this case:

> a license which is designed so that the underlying patents have no incremental value cannot at the same time be evidence of "the incremental value that the patented invention adds to the end product."

Mondis Tech. Ltd. v. LG Elecs., Inc., 407 F. Supp. 3d 482, 492 (D.N.J. 2019) (quoting Ericsson).

Mondis cites the Federal Circuit's decisions in Vectura Ltd. v. GlaxoSmithKline LLC, 981 F.3d 1030, 1032 (Fed. Cir. 2020), and Bio-Rad Labs., Inc. v. 10X Genomics Inc., 967 F.3d 1353, 1375 (Fed. Cir. 2020), [1] which it offers as support for its argument that distinguishes Bratic's present approach from the use of a "threshold theory," which this Court has previously rejected in this case. Mondis cites these two cases in support of the following general point:

> *Vectura* and *Bio-Rad* confirm that there is nothing wrong per se in an

expert's methodology that reaches a conclusion that the value of a single patent-in-suit may be the same as for a bundle of patents in a comparable license, and that differences between litigants should be decided by the jury after cross-examination rather than by the court.

(Pl.'s Opp. Br. at 7.) This Court does not fault Bratic's Observation 2 because of any *per se* rule, but because this Court has already ruled that the licenses in this case that charge one royalty price for a group of patents fail to satisfy the apportionment requirement and do not have built-in apportionment. The second point about differences between litigants is both general and uncontroversial.

As to Vectura, Mondis cites it because the Federal Circuit affirmed a decision in which an expert's reasonable royalty damages theory used a license for a bundle of 400 patents to value a single patent. 981 F.3d at 1041. Vectura may post-date this Court's 2019 decision in this case, but this Court discussed licenses which have "built-in apportionment" in that decision, and Vectura does not break any new ground: similar issues were raised in Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., 809 F.3d 1295, 1303 (Fed. Cir. 2015) ("CSIRO"). See Mondis, 407 F. Supp. 3d at 490. In Vectura, the expert, the trial judge, and the Federal Circuit all relied on the evidence that the technology disclosed in the patent-in-suit was the "key component," the "centerpiece," of the 400-patent license. 981 F.3d at 1041, 1039. Because of this, the Federal Circuit agreed that apportionment was "built in" to the license, which distinguishes the case. [2] Id. at 1042. Here, as already explained, Mondis has already made the "built in apportionment" argument, this Court has decided the issue, and it is now law of the case:

> None of these licenses can be said to have apportionment built in. None of these licenses reflects the value attributable to the features of the product which infringe claims 14 and 15 of the '180 patent, and no more.

Case 1:19-md-02875-RMB-SAK    Document 2045-7    Filed 05/03/22    Page 4 of 14
PageID: 69318

**\*3** [Mondis, 407 F. Supp. 3d at 492.](link) Nor does the Bratic Report have something new to say on this issue. Bratic continues to rely on the Lamm testimony that the '180 patent is the "heart" of the '090 family. [3] (Bratic Report at ¶ 8.) This did not constitute sufficient facts or data on which to base a built-in apportionment theory when this Court previously decided this issue, and it is not hearing reargument at this juncture.

Mondis also argues that Observation 2 should be admitted because: "the analysis is being presented here as supportive of the other opinions Bratic intends to render." (Pl.'s Opp. Br. at 14.) This Court does not have Bratic's intentions in the record before it; it has his Report, which says nothing about the use of Observation 2 to support some more comprehensive expert opinion.

Nor does the Federal Circuit's decision in <u>Bio-Rad</u> – another "built-in apportionment" case – help Mondis on this point. [Bio-Rad, 967 F.3d at 1376.](link) As Mondis points out, on appeal, the parties did not dispute the proposition that infringement of a single patent could support the jury's full damages award:

> As Bio-Rad explained during oral argument, affirming the judgment of infringement on the '083 patent— which includes the only asserted apparatus claims—would leave the damages award undisturbed. 10X did not dispute this point either at oral argument or in its briefing to us.

<u>Id.</u> at 1372. In the instant case, that matter is very much a subject of dispute.

Moreover, the <u>Bio-Rad</u> Court, in reviewing both the decision to admit the expert's testimony and the evidentiary basis for the verdict, emphasized the evidentiary basis in the record – the testimony of Sia and Tumolo, and the evidence relied on by Malackowski – for the inferences that the bundled licenses were sufficiently comparable to the patents-in-suit. <u>Id.</u> at 1373-77. At every step of the way, the <u>Bio-Rad</u> Court considered the issue of the differences between the licenses relied on and the subject of the hypothetical negotiation, as well as the adequacy of the evidence supporting inferences which accounted for those differences.

<u>Id.</u> The Court concluded: "This is not a case in which an unsupported conclusory opinion leaves the jury with nothing but speculation." <u>Id.</u> at 1377. In contrast, admitting Bratic's testimony based on the Hon Hai license would leave the jury with nothing but speculation about the incremental value of the '180 patent.

**\*4** Mondis also cites these two cases to argue that the comparability of a license to the hypothetical negotiation is a matter to be explored during cross-examination and goes to the weight of the evidence, not its admissibility. As a statement of a general proposition, <u>Vectura</u> and <u>Bio-Rad</u> support this. This, however, does not mean that an expert has *carte blanche* to rely on any license he or she believes to be comparable, without the Court serving as the gatekeeper for expert testimony. Nor does it relieve the proponent of expert testimony from the burden of demonstrating admissibility under [Rule 702.](link) The <u>Bio-Rad</u> Court stated approvingly: "Here, the district court concluded that Mr. Malackowski had met a showing of 'baseline comparability' and that the 'degree of comparability is a factual issue best addressed through cross examination.' " [Bio-Rad, 967 F.3d at 1374.](link) Here, in regard to the Hon Hai license, this Court finds that Bratic has not made a showing of baseline comparability. Bratic's opinions based on the Hon Hai license fail to meet the requirements for admission under [Rule 702(b)](link) and will be excluded accordingly.

The Federal Circuit's discussion of these issues in <u>Ericsson</u> is helpful:

> Prior licenses, however, are almost never perfectly analogous to the infringement action. *[VirnetX, 767 F.3d at 1330.](link)* For example, allegedly comparable licenses may cover more patents than are at issue in the action, include cross-licensing terms, cover foreign intellectual property rights, or, as here, be calculated as some percentage of the value of a multi-component product. Testimony relying on licenses must account for such distinguishing facts when invoking them to value the patented invention. Recognizing that constraint, however, the fact that a license is not perfectly

*analogous generally goes to the weight of the evidence, not its admissibility.*

Ericsson, 773 F.3d at 1227. The Federal Circuit held that an expert's testimony <u>must</u> account for distinguishing facts when invoking a license to value the patented invention. With the Hon Hai license, Bratic did so only insofar as he has relied on a variant of the threshold theory that this Court has rejected as invalid. This is not a situation in which the expert has provided a colorable explanation of the distinguishing facts – some showing of baseline comparability – that the jury should be allowed to consider and assess. Instead, in Observation 2, Bratic has presented a model which does not apportion, does not make a showing of baseline comparability, and fails to meet the basic requirements for admission.

The analysis of Observation 4, based on a document termed the LG Internal Assessment, which itself was based on the Mondis/LG monitor license, is not much different: Bratic himself observed the similarity between the Hon Hai license and the Mondis/LG monitor license. (Bratic Report at ¶ 38.) For essentially the same reasons, this Court finds that Observation 4 fails to apportion and cannot be admitted. Once again, Bratic relies on a variant of the threshold theory to escape having to account for the difference between the scope of the Mondis/LG monitor license and that of the hypothetical negotiation. This Court decided this exact issue in 2019 and it is the law of the case. Mondis, 407 F. Supp. 3d at 492-95. It will not be relitigated. That the parties themselves, in 2009, may have agreed to a license structured on a threshold basis does not relieve them, at trial in 2021, of the apportionment requirement in Federal Circuit law when they make an infringement damages case in Court.

As to Observation 3, also based on the Mondis/LG monitor license, the operation of the motions to strike has left it as a fragment of a model for reasonable royalty damages. It does not provide any estimate of a reasonable royalty. No helpful expert opinion remains in Observation 3. The opposition brief submitted by Mondis argues that Observation 3 is "legitimate." (Pl.'s Opp. Br. at 15.) The fragment that is Observation 3 presents no expert testimony that "will help the trier of fact to understand the evidence or to determine a fact in issue." Rule 702(a). This fragment will not be admitted.

**\*5** In the "Hansen Alternative" model, Bratic modifies a model presented by LG's expert Hansen at trial. In short, Hansen had started with the royalty rate from the Mondis/

LG monitor license and apportioned by dividing that rate by 6. In the "Hansen Alternative," Bratic contends that the royalty rate from the Mondis/LG monitor license should be apportioned by dividing that rate by 3, not 6, because the Innolux verdict concerned 3 patents. Bratic's Report does not explain the reasoning for this, except to suggest that the fact of the Innolux verdict shows that only 3 patents out of the 16 covered by the Mondis/LG monitor license had any value. (Bratic Report at ¶ 44.) LG objects that this method is arbitrary, and, given the absence of any attempt to justify it in the Bratic Report, this Court agrees: what does the fact that there was a litigation against a different manufacturer concerning the infringement of three patents by televisions have to do with establishing which patents covered by the Mondis/LG monitor license had what value? It does not make sense, and there is not even an attempt by Bratic to explain it.

Mondis, in its opposition brief, seems to lump together "Hansen Alternative" and Observation 3, both of which rely on the Mondis/LG monitor license. In response to LG's challenge to the application of the number of patents in the Innolux trial to the Mondis/LG monitor license, Mondis says only this: "As to the second question (number of patents), the point has now been made repeatedly that the Innolux verdict was the last and most definitive event in the Book of Wisdom, and the hypothetical negotiators would have focused on the three Innolux basis patents." (Pl.'s Opp. Br. at 16.) Setting aside the fact that Bratic did not write that in the Report, and that it is Plaintiff's attempt at post-hoc justification, it still makes no sense. Bratic's method of estimating a reasonable royalty, based on the Mondis/LG monitor license, is arbitrary. It is not the product of reliable principles and methods, as required by Rule 702(c), and it will not be admitted.

This leaves only Bratic's Observation 1. The basis of this model is the television royalty rate set by the jury in the Innolux verdict, divided by three to apportion to only the incremental value of the '180 patent, because the Innolux litigation concerned the infringement by televisions of three patents, and the '180 patent was one of the three. LG argues that Bratic's testimony as to Observation 1 should be excluded on three grounds: 1) Bratic's focus on three patents from the Innolux case is problematic, and the use of three as the divisor in Observation 1 is invalid; 2) Bratic did not show that the Innolux jury verdict was sufficiently comparable to the hypothetical negotiation; and 3) a jury verdict is a "flawed tool for determining a baseline royalty rate in a hypothetical negotiation." (Defs.' Br. at 22-23, quoting Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1315 (Fed. Cir. 2011).

Mondis Technology Ltd. v. LG Electronics, Inc., Slip Copy (2021)

This Court finds that LG has persuaded that the motion to exclude Bratic's testimony should be granted, but not on the basis of every point. The Court need not reach the first point to decide this motion, which challenges Bratic's selection of the number three as the apportioning divisor for the Innolux jury's rate of .25%, but notes that it takes judicial notice under Rule 201 of the public record from that litigation, Mondis v. Innolux et al., Civil Action No. 07-565 JRG (E.D. Tx. January 15, 2010), specifically the Third Amended Complaint filed on that date, which states that Mondis asserted that Innolux televisions infringed five specific patents, and the jury verdict form shows that the jury found only three of those five to be both valid and infringed. This supports the accuracy of Spiro's testimony that the jury verdict covered three patents for technology in televisions.

While this Court generally finds LG to be persuasive that Bratic's use of the Innolux jury verdict in Observation 1 is very problematic, the key problem is not, as LG argues, that the jury verdict is the starting point, but that it is the only data point in the analysis. This Court bases its decision to grant the motion to exclude Bratic's testimony about Observation 1 on three problems with that reasonable royalty theory. First, the Innolux jury verdict post-dates the date of the hypothetical negotiation, and Mondis has not demonstrated that Observation 1 is a permissible application of the doctrine of the book of wisdom. Second, the theory of Observation 1 is presented as if the Innolux jury verdict was a comparable negotiated license, which it is not; Mondis has failed to demonstrate that Bratic's use of the jury verdict as the sole data point in his reasonable royalty estimate meets the sufficiency and reliability requirements of Rule 702, as well as the comparability requirements of Federal Circuit law. Third, Mondis has failed to demonstrate that the apportionment method used in Observation 1 is reliable. Mondis, as the proponent of the expert testimony, bears the burden of demonstrating that it is admissible, and has failed to do so. See Fed. R. Evid. 702, advisory committee's note on the 2000 amendments (citing Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

 **\*6** In Observation 1, Bratic relies on evidence of a jury verdict to determine a reasonable royalty. Two Federal Circuit cases form the foundation to this discussion of admissibility and relevance of a jury verdict to the hypothetical negotiation/ reasonable royalty analysis: Sprint Communs. Co., L.P. v. Time Warner Cable, Inc., 760 F. App'x 977, 980 (Fed. Cir. 2018), and the precedential case that the Sprint Court relied

on, Applied Med. Res. Corp. v. United States Surgical Corp., 435 F.3d 1356, 1366 (Fed. Cir. 2006). These cases are necessary to resolve one threshold dispute: LG argues that the Innolux jury verdict does not fit any of the Georgia-Pacific factors and, in rebuttal, Mondis cites Sprint in support of the proposition that there is no *per se* rule against admitting evidence of a jury verdict for consideration in the reasonable royalty analysis. These cases continue to inform this Court's analysis after that threshold issue is resolved.

In Sprint, the district court had admitted evidence of a jury verdict in a prior case involving a party and a non-party, on the ground that it "was relevant to the jury's assessment of reasonable royalty damages under a hypothetical negotiation theory;" Time Warner appealed, contending that introduction of a jury verdict from another case was invariably improper. 760 F. App'x at 980. The Federal Circuit disagreed with Time Warner and stated that such was not the rule applied by the Federal Circuit, and that "the court has held that such evidence can be admissible if it is relevant for some legitimate purpose." Id. The Sprint Court relied on the Federal Circuit's precedential decision in Applied Med. Res. Corp. v. United States Surgical Corp., 435 F.3d 1356, 1366 (Fed. Cir. 2006), in which the Court held that evidence of a jury verdict of willful infringement from just prior to the date of the hypothetical negotiation was admissible as probative of a party's state of mind, and relevant to the hypothetical negotiation. These cases persuade this Court that, as Mondis contends, there is no *per se* rule that bars admitting evidence of a jury verdict, and that such evidence may be admitted if it is relevant to the hypothetical negotiation. Setting aside for the moment the question of whether the doctrine of the book of wisdom allows consideration of the later-occurring Innolux verdict, if the doctrine allows it, the verdict could possibly be relevant to the state of mind of both Mondis and LG at the hypothetical negotiation. That is, if the Innolux jury verdict is considered to be an event prior to the hypothetical negotiation, it might be relevant to the state of mind of both parties, and evidence of it would be admissible for that purpose. Given that the Federal Circuit found a jury verdict to be relevant to the hypothetical negotiation in both the Sprint and Applied Med. decisions, LG's objection that the jury verdict does not fit any Georgia-Pacific factor cannot carry any weight. [4]

The decision that the Innolux verdict is admissible as relevant to the reasonable royalty analysis is nothing new in this case. This Court decided before trial to admit the Innolux jury verdict into evidence, and it is in the record. The question before this Court on this motion is not whether to admit the

verdict itself, but whether expert testimony that derives a reasonable royalty estimate largely from only that evidence is admissible under Rule 702 and Federal Circuit law. Although Sprint and Applied Med. are not cases which deal with expert testimony and Rule 702, they are cases in which the Federal Circuit explained its thinking about how a jury uses evidence of a jury verdict when considering questions about the hypothetical negotiation, which is quite useful in considering other issues presented by the instant motion.

### I. The Innolux verdict post-dates the date of the hypothetical negotiation

**\*7** LG vaguely argues that Mondis cannot rely on the doctrine of the book of wisdom to allow consideration of this later event. In support, LG only quotes from Aqua Shield v. Inter Pool Cover Team, 774 F.3d 766, 772 (Fed. Cir. 2014): "That treatment incorrectly replaces the hypothetical inquiry into what the parties would have anticipated, looking forward when negotiating, with a backward-looking inquiry into what turned out to have happened." Mondis, in opposition, provides an even more terse response, merely citing the Supreme Court case of Sinclair and asserting that the Innolux jury verdict is contained within the book of wisdom. Neither party has developed an argument. The Court acknowledges that the Sinclair decision is controlling authority, and that it states:

> But the absence of market value does not mean that the offender shall go quit of liability altogether. The law will make the best appraisal that it can, summoning to its service whatever aids it can command. At times the only evidence available may be that supplied by testimony of experts as to the state of the art, the character of the improvement, and the probable increase of efficiency or saving of expense. This will generally be the case if the trial follows quickly after the issue of the patent. But a different situation is presented if years have gone by before the evidence is offered. Experience is then available to correct uncertain prophecy. Here is a book of wisdom that courts may not neglect.

Sinclair Ref. Co. v. Jenkins Petroleum Process Co., 289 U.S. 689, 697-98, 53 S.Ct. 736, 77 L.Ed. 1449 (1933) (citations omitted). These case citations leave this Court with food for thought on the question of the application of the book of wisdom to this motion, but not more. Since Mondis, as the proponent of Bratic's testimony, bears the burden of persuading this Court that it is admissible, and that Mondis has not persuasively demonstrated the applicability of the doctrine of the book of wisdom here, Mondis has failed to demonstrate that there is a legal basis for even considering a theory based on the later-occurring Innolux verdict. The issue of timing here is particularly concerning in view of the Federal Circuit's decisions in Sprint and Applied. Med., in both of which the Federal Circuit emphasized that the hypothetical negotiators would have had actual knowledge of the prior-occurring jury verdict and that the timing of the two events (the verdict and the negotiation) was relevant to the deliberations of the jury on specific issues.

In Sprint, the trial court had admitted the prior verdict as relevant on the theory that the parties to the hypothetical negotiation would have known about it and it would have therefore informed their expectations as to a reasonable royalty, as well as been relevant to the determination of willfulness. 760 F. App'x at 981. In Applied Med. at trial, the jury heard evidence of the history of the prior litigation leading to the prior jury verdict, which was relevant to the state of mind of the accused infringer during that prior historical period, and therefore relevant to the Applied. Med. jury's determination of willfulness. 435 F.3d at 1366.

In both cases, the actual historical fact of the timing of the jury verdict was essential to the theory of relevance and admissibility. In the instant case, in contrast, Mondis has offered too little to persuade this Court that there is both a theory of relevance and controlling legal authority to support Bratic's use of the later-occurring Innolux jury verdict in Observation 1. This alone is a fatal defect that precludes admission of that testimony.

### II. Observation 1: the Innolux jury verdict and the sufficiency, reliability, and comparability requirements

**\*8** LG argues that a jury verdict is a fundamentally flawed starting point for a reasonable royalty analysis. As already stated, this Court declines to consider what may be used as a starting point, because the more obvious problem here is that, in Observation 1, Bratic uses the Innolux jury verdict as the *only* data point in the analysis. In brief, Bratic proposes

to estimate the outcome of the hypothetical negotiation by taking only the Innolux jury verdict and then applying an apportionment method, division by three.

Rule 702 states that expert testimony may be admitted if:

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

This Court therefore must determine whether Bratic's proposed testimony about Observation 1 meets these requirements, as well as the requirements of Federal Circuit law.

Bratic provides no justification or reasoning for this use of the Innolux jury verdict, offering it as if it were a comparable licensing agreement that required no special explanation. The obvious problem is that a jury verdict is not a licensing agreement, and Bratic and Mondis have failed to demonstrate that the reasonable royalty analysis in Observation 1 – derived solely from a jury verdict – meets both the Federal Circuit's requirements for a reasonable royalty analysis and the Rule 702 requirements that the expert apply a reliable method to sufficient facts. Because Bratic and Mondis have failed to justify the use of a jury verdict alone to estimate a reasonable royalty, this Court finds that the theory of Observation 1 is fundamentally flawed and inadmissible both under Federal Circuit law and under Rule 702.

LG argues that jury verdicts are not evidence of arms-length negotiations – a point that Mondis does not dispute. In support, LG cites three district court decisions which, though not controlling, do demonstrate judicial skepticism that about the relevance of a jury verdict to the hypothetical negotiation. In Acceleration Bay LLC v. Activision Blizzard, Inc., 324 F. Supp. 3d 470, 488 (D. Del. 2018), District Judge Andrews decided a Daubert challenge to testimony in which the expert used a jury verdict as the starting point in a reasonable royalty calculation. Judge Andrews excluded the testimony on the ground that a jury verdict was not sufficiently comparable to the circumstances of the hypothetical negotiation to serve as the basis for a reliable determination of a reasonable royalty, and that the proponent of the testimony had shown no authority to the contrary. Id. See also Flexuspine, Inc. v. Globus Med., Inc., 2016 WL 9282314, at *3 (E.D. Tex.

Aug. 5, 2016) (excluding under Daubert similar testimony on ground that jury verdict was far removed from circumstances of hypothetical negotiation, and technological and economic comparability had not been established); Atlas IP, LLC v. Medtronic, Inc., 2014 WL 5741870, at *6 (S.D. Fla. Oct. 6, 2014) ("it is self-evident jury-determined damages are not evidence of arm's-length negotiations between parties.") While these cases are not controlling authority, they highlight what should be a threshold question here: how is the Innolux jury verdict evidence that is informative about the outcome of the hypothetical negotiation? To cut to the chase, Mondis and Bratic have no answer to it.

This Court begins with the observation that Bratic does not at all explain the reasoning by which he connects the Innolux jury verdict to the hypothetical negotiation. The Bratic Report lays the foundation generally for the Observations in paragraph 2, citing the first and second Georgia-Pacific factors, which deal with royalties for licenses for the patent-in-suit, and rates paid by the patentee for other comparable patents. [5] See Ga.-Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). The Innolux jury verdict fits into neither of these categories.

**\*9** The only statement in the Bratic Report that lays a foundation for the use of a jury verdict instead of a license is this one: "This is a very instructive comparable data point that can be used to inform the result of the hypothetical negotiation." (Bratic Report at ¶ 18.) Bratic then writes: "In order to adjust the circumstances of the Innolux Verdict to the circumstances of the hypothetical negotiation, in which only the '180 patent would have been at issue, I have adjusted the Innolux Verdict royalty rate for the relative values of the '180, the '090 and the '342 patents." (Bratic Report at ¶ 19.) Bratic then states that he disagrees with the use of patent counting to apportion, which Hansen did, but proceeds to do a calculation of a reasonable royalty estimate by applying a method he attributes to Hansen. (Bratic Report at ¶ 21.)

This summarizes Bratic's explanation for his use of the Innolux jury verdict in Observation 1; it leaves out nothing that he stated about the reasoning by which he connected the Innolux jury verdict to the hypothetical negotiation. It is apparent that Bratic offers nothing to justify or explain his use of the Innolux jury verdict in Observation 1. Bratic has laid a foundation for the use of licenses in a reasonable royalty analysis, but a jury verdict is not a license. Nor does Bratic even attempt to articulate a rationale to persuade that the Innolux jury verdict is evidence informative of the

outcome of the hypothetical negotiation, or relevant to it. Instead, Bratic merely drops the jury verdict into the analysis with a conclusory assertion that it is comparable, instructive, and can be used to inform the result of the hypothetical negotiation. This is entirely unsupported. There is nothing there to persuade this Court that the Innolux jury verdict has a proper role as the sole data point in this reasonable royalty analysis.

The Court now considers Bratic's use of the Innolux verdict in Observation 1 in view of the relevant Federal Circuit cases. In Sprint, the Court summarized the rationale underlying the district court's decision to admit evidence of the verdict as follows:

> In this case, the court admitted the prior verdict evidence as relevant to willfulness, to Time Warner's equitable defenses, and "to the extent that it informs Sprint's executives concerning what [they] might expect as a reasonable royalty." Thus, as the court explained, the verdict would be a factor of which the parties would have been aware at the time of their hypothetical negotiation in 2010, and a reasonable jury could well conclude that the verdict and the amount of damages awarded in a similar prior litigation would have influenced the outcome of a hypothetical negotiation in the case at bar.

760 F. App'x at 981. The Federal Circuit concluded that the district court had not committed reversible error in admitting the evidence. Id. at 982.

As already stated, the Sprint Court relied on its previous precedential decision in Applied Med. In that case, the Federal Circuit reviewed the district court's decision that a prior jury verdict was admissible because it was relevant to the state of mind of a party to the hypothetical negotiation: the Federal Circuit agreed that it "was relevant to the reasonable royalty analysis because the hypothetical negotiation in 1997 took place on the heels of the Applied I jury verdict." Applied Med., 435 F.3d at 1366. Thus, the theory of relevance was that the parties would have been aware of the verdict and that it could have impacted their thinking in the hypothetical negotiation. The theory of relevance in Sprint was similar but more specific, adding that the awareness of the verdict might have impacted one party's expectations about a reasonable royalty.

In view of the fact that this Court has already admitted the Innolux jury verdict, and that its relevance is not at issue, Sprint and Applied. Med. are more problematic than

helpful to Mondis on this motion. In both of those cases, the offered jury verdict had occurred prior to the date of the hypothetical negotiation, and the Federal Circuit stated a theory of relevance based on the likelihood that the parties to the hypothetical negotiation would have had actual knowledge of that verdict. Moreover, in both cases, the Federal Circuit's theory of relevance provided a rationale that supported the likelihood that the parties to the hypothetical negotiation would have found the jury verdict relevant to their hypothetical task. In Sprint, the Federal Circuit observed that the district court had found the verdict relevant to damages "to the extent that it informs Sprint's executives concerning what [they] might expect as a reasonable royalty." 760 F. App'x at 981. The Federal Circuit agreed that "a reasonable jury could well conclude that the verdict and the amount of damages awarded in a similar prior litigation would have influenced the outcome of a hypothetical negotiation in the case at bar." Id. In the instant case, neither Mondis nor Bratic have even suggested a basis to conceive that the Innolux jury verdict could have impacted the royalty expectations of the parties to the hypothetical negotiation, nor influenced the outcome. In Applied Med., the Federal Circuit concluded that evidence of the prior jury verdict was relevant to the reasonable royalty analysis on the issue of willfulness, that it related to one party's state of mind in regard to the willfulness of infringement. 435 F.3d at 1366. The Federal Circuit noted that there was evidence at trial that both the filing of the litigation as well as the jury verdict had been known by the accused infringer and had influenced it to alter its relevant conduct. Id.

 **\*10**  In both Sprint and Applied. Med., then, the Federal Circuit found that the prior jury verdict would likely have been relevant evidence for the jury in the case at bar in their consideration of the hypothetical negotiation, supported by a fairly specific rationale. In the instant case, in contrast, neither Mondis nor Bratic have offered any theory of relevance: setting aside the problem of the timing, Bratic has offered no rationale to explain how and why the Innolux jury verdict, if known, might impact the thinking of the parties to the hypothetical negotiation.

This Court will not fill in the blank in Bratic's model and Mondis' case. Bratic's passive phrasing – "can be used to inform the result" – says nothing substantive about who would use knowledge of the jury verdict, and how it might be used, to affect the result of the hypothetical negotiation. Bratic's introductory assertion that the Innolux verdict is a data point which "would have impacted the outcome of the

Mondis Technology Ltd. v. LG Electronics, Inc., Slip Copy (2021)

hypothetical negotiation" is conclusory and devoid of any justifying explanation. (Bratic Report at 8.) Bratic's assertion that he is attempting "to adjust the circumstances of the Innolux Verdict to the circumstances of the hypothetical negotiation" is uninformative. The Court has no idea what this means and neither Bratic nor Mondis makes any attempt to explain it. Moreover, this Court suspects that Bratic – who was not short for words and explanations in his original report – did not provide a theory of relevance because he does not have one. [6]

In short, Bratic and Mondis have given this Court barely the veneer of an explanation of how the Innolux jury verdict, even with the help of the doctrine of the book of wisdom, could have impacted the hypothetical negotiation, or could be evidence of its outcome. No attempt has been made to make any connection between them, nor to show that Bratic has applied a reliable method to sufficient data.

LG raises similar issues in arguing that the Innolux jury verdict is not comparable to the hypothetical negotiation. Plaintiff's opposition brief does not even dispute LG's comparability challenge, and it would be difficult to do so, again for the reason that a jury verdict is not a license. A key case on comparability to the hypothetical negotiation is Lucent.

In Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1327 (Fed. Cir. 2009), the trial court jury had awarded a lump-sum reasonable royalty payment, and the issue on appeal was, *inter alia*, whether the jury verdict was supported by substantial evidence; unlike this case, there was no dispute over the admission of any of the evidence or expert testimony. The Federal Circuit reviewed the evidence at trial in light of the Georgia-Pacific factors and, based on a number of considerations, concluded that the verdict was not supported by substantial evidence, but merely by speculation, and the Court vacated it. Id. at 1335. In considering the evidence with regard to Georgia-Pacific factor 2, "whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit," the Federal Circuit found that none of the evidence was sufficient, for various reasons. Id. at 1325. The Court stated first: "some of the license agreements are radically different from the hypothetical agreement under consideration," while, for others, the evidence did not make clear the subject matter of the licenses. Id. at 1327-28. The Court observed that the expert's testimony provided no analysis of the comparability of the licenses:

> **\*11** Lucent had the burden to prove that the licenses were sufficiently comparable to support the lump-sum damages award. The law does not require an expert to convey all his knowledge to the jury about each license agreement in evidence, but a lump-sum damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here.

Id. at 1329. This quote is particularly on point here: Bratic's Observation 1 is fairly described as little more than a recitation of royalty numbers, with no analysis of comparability nor rationale for considering the verdict as relevant and meaningful to the hypothetical negotiation.

The Lucent Court also observed that four of the licenses covered running royalties and not lump-sum royalties:

> As we noted above, certain fundamental differences exist between lump-sum agreements and running-royalty agreements. This is not to say that a running-royalty license agreement cannot be relevant to a lump-sum damages award, and vice versa. For a jury to use a running-royalty agreement as a basis to award lump-sum damages, however, some basis for comparison must exist in the evidence presented to the jury. In the present case, the jury had almost no testimony with which to recalculate in a meaningful way the value of any of the running royalty agreements

Mondis Technology Ltd. v. LG Electronics, Inc., Slip Copy (2021)

to arrive at the lump-sum damages award.

Id. at 1330. Again, this point is quite applicable to the instant case: a jury verdict can be relevant to a reasonable royalty determined by the hypothetical negotiation analysis, but *some basis for comparison must exist in the evidence presented to the jury.* Bratic's Report offers no basis upon which the jury could "recalculate in a meaningful way" the valuation of the '180 patent implied by the jury verdict to arrive at a reasonable royalty based on a hypothetical negotiation. Id.

Furthermore – as if Lucent isn't adverse enough to Mondis already –, the Lucent Court then examined in detail the differences between the running royalty licenses and the jury award. Id. at 1330-31. The similarities and differences between the circumstances of the licenses and those of the hypothetical negotiation were scrutinized. Id. In the instant case, the analysis in Bratic's Observation 1 and Plaintiff's opposition brief, if presented at the damages re-trial, would not be adequate to inform the jury about how to connect the verdict to the reasonable royalty analysis. Rather, in Observation 1, Bratic merely states:

> In order to adjust the circumstances of the Innolux Verdict to the circumstances of the hypothetical negotiation, in which only the '180 patent would have been at issue, I have adjusted the Innolux Verdict royalty rate for the relative values of the '180, the '090 and the '342 patents.

(Bratic Report ¶ 19.) This is entirely insufficient as an analysis of the similarities and differences between the circumstances of the Innolux jury verdict and those of the hypothetical negotiation.

The Lucent Court next reviewed the infringer's case and, in conclusion, found that there was too little evidentiary basis for the jury's award of a lump sum three to four times greater than the average of royalties in the lump sum licenses in evidence, and that "no reasonable jury could have found that Lucent carried its burden of proving that the evidence" supported the jury award. Id. at 1332, 1335.

 **\*12**  In the instant case, Bratic's Observation 1 does not provide an adequate evidentiary basis to sustain a jury award in agreement with it. Bratic and Mondis have offered nothing more than some numbers, with no information that could help a jury sensibly use those numbers to determine the outcome of the hypothetical negotiation. See also Wordtech Sys. v. Integrated Networks Sols., Inc., 609 F.3d 1308, 1319, 1322 (Fed. Cir. 2010) (evidence presented to the jury about eleven other more dissimilar licenses provided no basis for comparison to the hypothetical negotiation; the Federal Circuit concluded that the jury verdict was "based only on speculation or guesswork" and vacated it); ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 870 (Fed. Cir. 2010) (expert gave unconvincing reasons for even considering certain licenses).

In Lucent, Wordtech, and ResqNet, the Federal Circuit did not review decisions on Daubert motions, but two newer cases are in that procedural context, Bio-Rad and MLC. In Bio-Rad, the Federal Circuit reviewed both the trial court's decision to admit the testimony of the expert, as well as the issue of whether the jury verdict was supported by substantial evidence, as appellant 10X challenged both. 967 F.3d at 1372. As to the expert testimony, 10X argued that the testimony should not have been admitted "because it was based on evidence that was 'both inadmissible and insufficient.' " Id. at 1373. At issue was the comparability of the licenses to the hypothetical negotiation and, as already discussed, the Federal Circuit held that the expert's demonstration of "baseline comparability" was sufficient to support the decision to admit the testimony. Id. at 1374. Bio-Rad, therefore, deals with the same argument LG has raised here, in a parallel procedural context, a motion to exclude expert testimony. Because this Court finds that, in Observation 1, Bratic has offered nothing to demonstrate baseline comparability of the Innolux jury verdict to the hypothetical negotiation, pursuant to Bio-Rad, his testimony cannot be admitted. [7]

The appellant in Bio-Rad also raised the issue of comparability of licenses in arguing that the jury verdict was not supported by substantial evidence. Id. The Federal Circuit concluded that the evidence of comparability at trial supported the jury verdict. Id. at 1376. In conclusion, the Federal Circuit stated:

> [W]e conclude that substantial evidence supports Mr. Malackowski's reasonable royalty opinions and the jury's verdict ...

This is not a case in which an unsupported conclusory opinion leaves the jury with nothing but speculation. We thus agree with the district court that Mr. Malackowski's testimony was properly admitted. We therefore affirm the damages award.

Id. at 1376, 1377. Here the circumstances are the inverse of Bio-Rad: this *is* a case in which an unsupported conclusory opinion would leave the jury with nothing but speculation. Bio-Rad teaches clearly that admission of such an opinion is improper. See also MLC, 2021 U.S. App. LEXIS 25710 at *15, 2021 WL 3778405 (affirming grant of motion to exclude where expert's reasonable royalty testimony failed to meet the requirements of Rule 702).

In Observation 1, Bratic treats the Innolux jury verdict as if it were a license, based on nothing more than the conclusory assertion that it is "a very instructive comparable data point." (Bratic Report ¶ 18.) The Federal Circuit has held: "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice." LaserDynamics, Inc. v. Quanta Comput., Inc., 694 F.3d 51, 79 (Fed. Cir. 2012). In Observation 1, Bratic does no more than allege a vague comparability of something that is not a license. Mondis and Bratic have not established the necessary comparability.

 **\*13**  At best, the Innolux jury verdict reflects the lay opinion about the appropriate reasonable royalty award in a different case with different defendants and a different mix of products. Mondis has given this Court to basis to find that it is equivalent to a negotiated license between those litigants. At most, Sprint and Applied. Med. teach that such evidence may be a factor that the hypothetical negotiators might consider. In Observation 1, Bratic does not articulate any similar theory or use of the Innolux verdict. The Federal Circuit recently held: "prior licenses or settlements need to be sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for." MLC, 2021 U.S. App. LEXIS 25710 at *37, 2021 WL 3778405 (quoting Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC, 927 F.3d 1292, 1299 (Fed. Cir. 2019)). Mondis has given this Court no basis to find that the Innolux jury verdict *is* evidence that is informative about the outcome of the hypothetical negotiation. Instead, Observation 1 is little more than a recitation of royalty numbers. Because Mondis has established no connection between the Innolux verdict and the hypothetical negotiation, this Court arrives at two interrelated conclusions: 1) the theory in Observation 1 does not meet

the comparability requirements in Federal Circuit law; and 2) Observation 1 fails to meet the requirements of Rule 702.

The determination that, in Observation 1, Bratic has provided virtually no support for his conclusions has a domino effect on the Court's findings on the elements of Rule 702. This Court finds that the proposed testimony is not based on sufficient facts or data, as required by Rule 702(b). The proposed testimony is not the product of reliable principles and methods, as required by Rule 702(c), and therefore has not met the requirement of Rule 702(d). See ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 523 (Fed. Cir. 2012) (affirming trial court's exclusion of expert's testimony on the ground that it was "flawed and unreliable"). Because Bratic's proposed testimony has insufficient support for his conclusions, such testimony can only mislead or confuse the jury: the danger is that the jury would be swayed by the fact that the Court has admitted Bratic as an expert and will accept his conclusions as correct for that reason alone. Bratic's proposed testimony would not help the jury to understand the evidence, [8] as required by Rule 702(a). [9]

### III. Is the apportionment method reliable?

In Observation 1, Bratic apportions the Innolux verdict by dividing by 3, derived from the three patents for which the jury made the award for infringement by televisions. In Observation 1, the Bratic Report states:

> 20. The core issue regarding apportionment of value among the '180, the '090 and '342 patents is whether such apportionment should be based on quantitative and qualitative analysis, as I believe should be done, or based on mechanical patent counting, which was the methodology Mr. Hansen adopted. I disagree with mechanical patent counting generally, and in this case it understates the apportioned value of the '180 patent in this case significantly.

> 21. Mr. Hansen's approach to apportionment involved dividing the royalty rate in the Mondis / LG Monitor License by the number of relevant patents. As noted above, the jury found 3 patents infringed in the Innolux Verdict. Applying Mr. Hansen's apportionment methodology (dividing by 3), the royalty rate for the '180 patent alone would be 0.25%.

 **\*14**  In laying the foundation for the Observations, the Bratic Report stated: "I note that merely counting the number of patents and dividing is not enough." (Bratic Report ¶ 5.) In

Mondis Technology Ltd. v. LG Electronics, Inc., Slip Copy (2021)

the footnote, to that statement, the Report states: "raw patent counting is inappropriate." (Bratic Report ¶ 5 n.4.) Bratic explains: "In order to determine the relative value of the '180 patent, compared to the other licensed patents and thereby make the necessary adjustment, the pertinent features of the patents in question for which a particular royalty was paid need to be identified and compared." (Bratic Report ¶ 5.)

Mondis thus asks this Court to admit expert testimony under Rule 702, which requires that the testimony be based on sufficient facts or data, and the product of reliable principles and methods, when the expert himself has stated his opinion that he disagrees with that method, thinks it inappropriate and insufficient, and recommends an entirely different approach. Here, Bratic states that it understates the value "significantly." On what basis *could* this Court find that this testimony is the product of reliable principles and methods, when Bratic himself states the contrary?

Then, in paragraph 21, Bratic takes the method (mechanical patent counting) that he disparages, from an example in which Hansen used a license, and, without any explanation or justification, applies it to a jury verdict. Neither Mondis nor Bratic have provided any justification for treating a jury verdict as equivalent to a license. Mondis has failed to provide any basis for this Court to conclude that this is a reliable method of apportionment. Mondis cannot convince this Court that expert testimony that discredits a method, but then relies on that discredited method, is helpful to the trier of fact.

**IV. Conclusion**

None of the five reasonable royalty theories in the Bratic Report are admissible. Observations 2 and 4 fail to apportion under the law of this case. Observation 3 is a fragment. "Hansen Alternative" relies on principles that are unsupported and not reliable. Observation 1 cannot be admitted for three reasons: 1) Mondis has failed to persuade that the later-occurring Innolux jury verdict would be relevant under the doctrine of the book of wisdom; 2) Bratic's use of the Innolux jury verdict does not apply reliable principles to sufficient facts, as required by Rule 702, nor does it comply with the comparability requirements in Federal Circuit law; and 3) Bratic's disparagement of his apportionment method precludes finding it sufficiently reliable.

This Court agrees with LG that "Mr. Bratic has squandered his second opportunity to present a legally permissible damages theory." (Def.'s Br. at 39.) LG's motion to exclude the Report and testimony of Walter Bratic is granted in its entirety.

For these reasons,

**IT IS** on this 8th day of September, 2021

**ORDERED** that LG's motion to exclude the expert report and testimony of Walter Bratic (Docket Entry No. 695) is **GRANTED**, and the Report and testimony of Walter Bratic are excluded in their entirety.

**All Citations**

Slip Copy, 2021 WL 4077563

## Footnotes

1    In this Opinion, this Court will discuss these two more recent, precedential cases, but that does not change the fact that Mondis offers them solely to reargue an issue that was already decided in LG's favor, and which is now the law of this case.

2    Moreover, the Vectura panel noted and relied on the fact that the district court found that the opponent had waived its objections to the expert's "built-in apportionment" theory by failing to make a pre-trial Daubert motion – *not* the case here. Id. at 1042-43. For an even more recent discussion of CSIRO and other cases on these issues, see MLC Intellectual Prop., LLC v. Micron Tech., Inc., 2021 U.S. App. LEXIS 25710, at *34-*37, 2021 WL 3778405 (Fed. Cir. Aug. 26, 2021).

3    Mondis tried and failed to remedy its failure at trial to provide an evidentiary basis for Lamm's conclusory "heart" assertion when it improperly submitted a revised Lamm report, which this Court rejected. Nor does Bratic here acknowledge Lamm's other trial testimony that the '180 patent was one of a group of four patents

**Mondis Technology Ltd. v. LG Electronics, Inc., Slip Copy (2021)**

in the '090 family which could block a manufacturer's use of the Plug and Play standard, and that an additional patent was "half standard essential." See Mondis, 407 F. Supp. 3d at 493 n.4.

4    As will be discussed further, while Sprint and Applied Med. show that a jury verdict *can have* a valid place in a Georgia-Pacific analysis, neither Mondis nor Bratic ever explains what valid place the Innolux jury verdict *does have* in Bratic's analysis in Observation 1.

5    The word "rates" in the Georgia-Pacific decision does not obviously exclude a rate set by a jury verdict, but the Federal Circuit has understood factor 2 to apply to rates in licenses: "This factor examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit." Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1325 (Fed. Cir. 2009).

6    Nor did Bratic clearly make a case for the verdict's relevance in his original report, contrary to LG's contention that, in Bratic's 2018 report, he used the Innolux verdict as a reasonableness check on his estimate. (LG's Br. at 22.) While the 2018 report does propose a reasonableness check, it both distinguishes and blurs together the jury verdict and the ensuing settlement. (Bratic 2018 Report, Walsh 11/28/18 Dec. Ex. A at ¶¶ 229-30.) In the 2018 Report, Bratic distinguished the verdict and the ensuing settlement as different in scope and patents covered, and it is not clear which he thought confirmed his estimate based on the licenses. In any case, an observation that a piece of evidence is "confirmatory" is not a theory that the evidence, if known at the time of the hypothetical negotiation, might have impacted it. (Id. at ¶ 230.)

7    Because Bratic made no demonstration of baseline comparability, this Court need not reach LG's argument that the Innolux verdict itself was based on a threshold theory and is therefore not comparable.

8    Moreover, this Court is not persuaded that Observation 1 exhibits the use of any scientific, technical or other specialized knowledge, as required by Rule 702(a). Observation 1 says very little more than that one can divide the .75% rate in the Innolux jury verdict by 3 for the three patents, and there is a royalty rate.

9    The Supreme Court made this point in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), when it approvingly quoted the Third Circuit's decision in United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985): "An additional consideration under Rule 702 -- and another aspect of relevancy -- is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."

---

**End of Document**                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.