# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VISTA HEALTHPLAN, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CEPHALON, INC., *et al.*, <br><br> Defendants. | Case No. 2:06-cv-1833 (MSG) <br> Honorable Mitchell S. Goldberg |

I, Eric J. Miller, declare as follows:

1. I am the Senior Vice President of A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"), whose corporate office is located in Milwaukee, Wisconsin. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I submit this declaration to provide the Court and the parties with information about the status of claim processing activities with regard to the Consumer and Third-Party Payor ("TPP") claims submitted to A.B. Data.[1] This declaration is based upon my personal knowledge and upon information provided by counsel, my associates, and staff.

3. Pursuant to the Court's August 8, 2019 Order (the "Preliminary Order"), A.B. Data was responsible to effectuate notice pursuant to the Proposed Class Action Notice Program (the "Notice Program") approved by the Court. A.B. Data's duties include, among other things: (i) disseminating notice to potential Class Members by mail and publication; (ii) establishing and maintaining a dedicated toll-free telephone help line and website dedicated to this Action; and (iii) receiving and processing Claim Forms.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Settlement Agreements, Notice, Plan of Allocation and the Court's orders.

1

4.      In furtherance of these duties, A.B. Data has served as a repository for potential Consumer and TPP claimants' inquiries, communication, and claims in the Action.

## Consumer Claims – Processing Activities

5.      Potential Consumer Class Members had the opportunity to file their claims either through the mail ("paper") or online. As of December 1, 2021, A.B. Data has received and processed a total of 38,731 Consumer claims, consisting of:

   (a)   10,831 paper claims; and

   (b)   27,900 online claims.

6.   A.B. Data's data-entry staff coded the computerized claim records if the corresponding hard-copy claim was in any way "deficient," subject to being corrected such that the claim would become valid and eligible for payment. Of the claims received, A.B. Data initially determined that deficient claims were those for which the claimant:

   (a)   did not provide the total amount paid for Provigil or generic versions of Provigil (modafinil);

   (b)   did not clearly answer the eligibility question in Section B and C;

   (c)   did not sign the Claim Form; or

   (d)   did not provide proof of at least on purchase of Provigil or generic versions of Provigil (modafinil).

7.   A.B. Data made efforts to resolve claims missing documentation by programmatically comparing the subpoena data received from the largest pharmacies, supermarkets and pharmacy benefits managers ("PBMs") prior to notifying claimants of the deficient conditions identified in their claims. As a result of these efforts, A.B. Data resolved over 5,700 claims that were submitted

Case 2:06-cv-01797-MSG Document 1258-2 Filed 03/10/22 Page 4 of 13
Case 2:06-cv-01797-MSG Document 1258 Filed 03/10/22 Page 4 of 12
PageID: 70719

without including the required proof of at least on purchase of Provigil or generic versions of Provigil (modafinil).

8. A.B. Data sent letters to these remaining claimants, whose deficient conditions could not be resolved through the use of the subpoena data, notifying them that their claims were deficient, explaining the reason for the deficiency and giving them an opportunity to resolve it. Examples of these letters are attached hereto as **Exhibit A**. A.B. Data reviewed and processed the responses to the deficiency letters.

9. In addition, A.B. Data sent letters to Consumer claimants whose claims were determined to be ineligible because the claim was duplicative of a previously-filed claim (for example, where a claim was submitted online to A.B. Data and the original hard-copy was sent by mail and received at a later date). A sample of this letter is attached as **Exhibit B**. A.B. Data reviewed and processed the responses to these letters.

10. All claims were subject to review and/or audit by the Settlement Administrator. A.B. Data selected claims for additional audit, in consultation with Class Counsel, where a) the claimed amount appeared high compared to other Consumer claimants; b) the Consumer included information in their claim that appeared the claimant may not be an eligible claimant; and/or c) members of A.B. Data's staff identified a claim that was potentially fraudulent.

11. A.B. Data sent letters by mail to each of these claimants, including 1,738 claims submitted by fraudulent filers that are known to A.B. Data staff, requesting that they provide additional documentation to further support the amount of purchases. The letter advised the claimant that failure to provide the required information would result in the disallowance of their claim. Samples of these letters are attached hereto as **Exhibit C** and **D**, respectively. A.B. Data

3

reviewed and processed the responses to these letters. A.B. Data updated the claim records to the extent sufficient documentation was provided.

12. In total, A.B. Data sent over 25,951 initial letters to Consumer claimants. In certain cases, A.B. Data also made telephone calls and sent emails to Consumer claimants in an effort to resolve the problems with the claim that rendered them deficient or ineligible.

13. At the conclusion to processing responses, A.B. Data provided reports to Class Counsel identifying the status of Consumer claims as eligible, ineligible, or that remained deficient. In consultation with Class Counsel, it was decided that additional efforts should be undertaken in an attempt to further resolve claims that remained deficient.

14. On August 18, 2021, A.B. Data sent 9,917 Final Notice of Deficiency letters by First-Class Mail with a response deadline of September 18, 2021 to those claimants that a) did not clearly answer the eligibility question in Section B and C; b) did not sign the Claim Form; and/or c) did not provide proof of at least one purchase of Provigil or generic versions of Provigil (modafinil). A.B. Data also sent a copy of the Final Notice of Deficiency letter via email to 8,711 claimants of the 9,917, where the claimant provided a valid email with their claim submission. A.B. Data processed all responses received from claimants and updated their claim records accordingly. As a result of these efforts an additional 2,265 resolved the deficient condition in their claim.

15. In aggregate, A.B. Data sent over 35,868 letters to Consumer claimants by first-class U.S. mail to the Consumer claimants in an effort to resolve the problem that rendered the claim deficient or ineligible. A.B. Data allowed for many extensions to response deadlines to accommodate claimants with any difficulties related to the pandemic as well as the further efforts described in ¶14, above.

16. Each Authorized Consumer Claimant is identified on the Authorized Consumer Claims Summary, attached hereto as **Exhibit E**. The names of these individuals/entities have been redacted to protect their privacy. Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request. This list encompasses 16,614 Authorized Consumer Claimants with Authorized Claim amounts totaling $48,661,205.59.

17. Included in the Authorized Consumer Claims Summary are 298 Consumer claimants with a total Authorized Claim amounts of $1,067,073.90 whose claims, though received or filed online after the January 15, 2020 filing deadline, are otherwise eligible to receive a distribution. These claimants are separately listed on a Late Authorized Consumer Claims Summary attached hereto as **Exhibit F**. The names of these individuals/entities have been redacted to protect their privacy. Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request.

18. A.B. Data prepared a list of 22,117 Consumer Ineligible Claims attached hereto as **Exhibit G**. The names of these individuals/entities have been redacted to protect their privacy. Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request. Included in this list are:

    (a)     Claimants who filed duplicative claims;

    (b)     Claimants who wrote to A.B. Data advising that they were withdrawing their claims;

    (c)     Claimants whose claims were deficient (*e.g.* lacking necessary information to verify membership in the Class and/or calculate their Qualifying Claim) and who failed to cure the deficiencies despite being contacted by A.B. Data;

    (d)     Claimants that were not Consumers;

  (e)  Claimants who failed to provide a sufficient response to the Audit Letter; and

  (f)  Claimants that submitted fraudulent claims.

 19. To summarize, Consumer claimants have filed a total of 38,731 claims. After A.B. Data's claims administration and auditing processes, including several discussions with Class Counsel, A.B. Data recommends that 22,117 claims be found ineligible. The remaining 16,614 Authorized Consumer Claimants have Authorized Claim amounts totaling $48,661,205.59.

### **Third Party Payor Claims – Processing Activities**

 20. Potential TPP Class Members were afforded the opportunity to file their claims either through the mail ("paper") or online. As of December 1, 2021, A.B. Data has received and processed 1,354 TPP claims, consisting of:

  (a)  224 paper claims; and

  (b)  1,130 online claims from TPP claimants and record-keeping entities or agents ("TPAs") filing on behalf of TPPs.

 21. A.B. Data's data-entry staff coded the computerized claim records if the corresponding hard-copy claim was in any way "deficient," subject to being corrected such that the claim would become valid and eligible for payment. Of the claims received, A.B. Data initially determined that deficient claims were those for which the claimant:

  (a)  did not list the amount of purchases or reimbursements Provigil or generic versions of Provigil (modafinil);

  (b)  omitted the Federal Employer Identification Number ("FEIN") for the claimant;

  (c)  did not sign the Claim Form; or

  (d)  did not include the necessary supporting documentation as required in Part II of the TPP Claim Form.

22. A.B. Data sent letters to these claimants notifying them that their claims were deficient, explaining the reason for the deficiency and giving them an opportunity to resolve the deficiency. Examples of these letters are attached as **Exhibit H**. A.B. Data reviewed and processed the responses from claimants to the deficiency letters.

23. In addition, A.B. Data sent letters to TPP claimants whose claims were determined to be ineligible because the claim was duplicative of a previously-filed claim (for example, where a claim was submitted online to A.B. Data and the original hard-copy was sent by mail and received at a later date). A sample of this letter is attached as **Exhibit I**. A.B. Data reviewed and processed the responses to these letters.

24. A.B. Data audited all TPP claims listing purchases over $300,000 by reviewing the documentation included with each claim to verify the amount claimed and that the purchases were made during the period from June 24, 2006 through August 8, 2019, for Provigil or generic versions of Provigil (modafinil) in eligible states. A.B. Data also reviewed documentation for claims under $300,000 that provided documentation although they were not required to furnish such documentation. As a result of the audit and based on the documentation submitted, A.B. Data adjusted some TPPs' claim amounts upward or downward. A.B. Data notified the claimants, in writing, of any adjustment to their claim and provided them with an opportunity to dispute the findings by responding with any additional documentation to support their position.

25. All claims were subject to review and/or audit by the Claims Administrator. A.B. Data selected claims for additional audit, in consultation with Class Counsel, where a) the claimant submitted a claim just below the $300,000 required documentation threshold; b) the claimed amount appeared high compared to similar sized entities; and/or c) members of A.B. Data's staff identified a claim that was potentially fraudulent.

7

26. A.B. Data sent letters to each of these claimants requesting that they provide additional documentation to further support the amount of purchases. The letter advised the claimant that failure to provide the required information would result in the disallowance of their claim. A sample of this letter is attached hereto as **Exhibit J**. A.B. Data reviewed and processed the responses to these letters. A.B. Data updated the claim records to the extent sufficient documentation was provided.

27. In aggregate, A.B. Data sent over 391 letters to TPP claimants by First-Class U.S. Mail and, in many cases, also sent emails and placed telephone calls to the TPP claimants in an effort to resolve the problem that rendered the claim deficient or ineligible. In typical TPP cases, A.B. Data follows this practice however in this particular instance these efforts were increased due to the pandemic. A.B. Data also allowed for many extensions and multiple follow-up contact with TPP claimants.

28. Each Authorized TPP Claimant is identified on the Authorized TPP Claims Summary, attached hereto as **Exhibit K**. The names of these individuals/entities have been redacted to protect their privacy. Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request. This list encompasses 1,102 Authorized TPP Claimants with Authorized Claim amounts totaling $2,962,748,630.22.

29. Included in the Authorized TPP Claims Summary are 11 TPP claimants with a total Authorized Claim amounts of $1,137,685.75 whose claims, though received or filed online after the January 15, 2020 filing deadline, are otherwise eligible to receive a distribution. These claimants are separately listed on a Late Authorized TPP Claims Summary attached hereto as **Exhibit L**. The names of these individuals/entities have been redacted to protect their privacy.

8

Case 1:19-md-02875-RMB-SAK  Document 2058-2  Filed 05/10/22  Page 10 of 13
Case 2:06-cv-05513-JSAC  Document 6358-2  Filed 05/11/22  Page 11 of 12
PageID: 70725

Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request.

30.   A.B. Data prepared a list of 252 TPP Ineligible Claims attached hereto as **Exhibit M**. The names of these individuals/entities have been redacted to protect their privacy. Unredacted copies have been provided to Class Counsel and are available to be filed with the Court upon request.  Included in this list are:

    (g)   Claimants who filed duplicative claims;

    (h)   Claimants who wrote to A.B. Data advising that they were withdrawing their claims;

    (i)   Claimants whose claims were deficient (*e.g.* lacking necessary information to verify membership in the Class and/or calculate their Qualifying Claim) and who failed to cure the deficiencies despite being contacted by A.B. Data;

    (j)   Claimants that were not TPPs;

    (k)   Claimants who failed to provide a sufficient response to the Audit Letter; and

    (l)   Claimants that submitted fraudulent claims.

31.   To summarize, TPP claimants have filed a total of 1,354 claims.  After A.B. Data's claims administration and auditing processes, including several discussions with Class Counsel, A.B. Data recommends that 252 claims be found ineligible.  The remaining 1,102 Authorized TPP Claimants have Authorized Claim amounts totaling $2,962,748,630.22.

### Fees and Disbursements

32.   A.B. Data agreed to be the Settlement Administrator in exchange for payment of its fees and expenses.  Class Counsel received reports on and invoices for all of the work A.B. Data performed with respect to the administration of the Settlements.  A.B. Data has incurred fees

Case 2:06-cv-02751-BMS Document 623-1 Filed 12/05/21 Page 11 of 13
Case 2:06-cv-02751-BMS Document 658-2 Filed 03/10/22 Page 12 of 13
PageID: 70726

and expenses in the amount of $2,519,318.31 through November 2021. To date, A.B. Data has been paid a total of $2,200,132.43 from the Settlement Funds in accordance with Court's prior approval orders, leaving an outstanding balance of $319,185.88. A.B. Data estimates that it will incur, in connection with the distribution of the net proceeds of the settlement funds, an additional $104,760.58 to finalize the distribution. Copies of the Consumer and TPP invoices for the period March 1, 2020 through November 30, 2021 are attached hereto as **Exhibit N** and **O**, respectively. If at the completion of the administration the total fees and expenses are less than the estimated amount of $104,760.58, the difference shall be included in any potential second distribution to Authorized Consumer and TPP Claimants.

        33.     A.B. Data has not rejected any claims received through December 1, 2021, solely based on its late submission, and A.B. Data believes no delay has resulted from the provisional acceptance of these late claims. However, there must be a final cut-off date after which no more claims will be accepted so that there may be a proportional allocation of the Settlement Funds. Acceptance of additional claims or responses to notices of deficiency received during the finalization of the administration and the preparation of this application would necessarily require a delay in distribution. Accordingly, A.B. Data also respectfully requests that this Court order that no received or rejected claim adjusted after December 1, 2021, be eligible for payment.

        34.     Should the Court concur with A.B. Data's determinations concerning provisionally accepted and rejected claims, including the late claims, A.B. Data recommends the following distribution plan:

        (a)    establishment of a reserve of 2% of the Settlement Funds to allow for any necessary adjustments in payments upon sufficient proof and/or to pay additional taxes, costs, and administration fees. Any funds remaining from the

            reserve after the initial distribution will be included as part of any potential second distribution to the members of the Class who or which received an initial distribution;

(b)    the remaining net proceeds of the settlement funds will be allocated on a *pro rata* basis to Eligible Claimants in accordance with the Plan of Allocation approved by the Court;

(c)    A.B. Data will promptly mail Eligible Claimants their appropriate share of the net proceeds of the settlement funds. These checks will have a stale date of 90 days to encourage Eligible Claimants to promptly cash their distribution checks and to avoid or reduce future expenses related to unpaid distributions. For any checks returned as undeliverable or not cashed, A.B. Data will make reasonable and diligent efforts to have Eligible Claimants cash their checks. At such time that Class Counsel and A.B. Data have determined that reasonable and diligent efforts have been exhausted, but no earlier than one hundred twenty days from the issue of the checks, the payments to Eligible Claimants that have been not been cashed will revert back to the Settlement Fund;

(d)    if there is a balance remaining in the Settlement Fund after reasonable and diligent efforts to have Eligible Claimants negotiate their initial payment, and at least 120 days from the date of the initial distribution, and after any necessary adjustments in payments upon sufficient proof and/or to pay additional taxes, costs, and administration fees, A.B. Data will, with Court approval, consult with Class Counsel and conduct a second distribution if feasible and economical. A.B. Data will redistribute the remaining funds, along with any remaining

11

        balance of the reserve, on a *pro rata* basis after reserving any additional taxes, costs, and administration fees to the Eligible Claimants who cashed their initial distribution checks and who would receive at least $25.00 from such redistribution; and

    (e)    at such time as Class Counsel, in consultation with A.B. Data, determines that further distribution of the funds remaining in the Settlement Fund is not cost-effective, Lead Counsel shall petition the Court to disburse the remaining funds *cy pres*.

35.    Unless otherwise ordered by the Court, one (1) year after final distribution of the net proceeds of the settlement funds, A.B. Data will destroy the paper and electronic copies of the claims and all supporting documentation.

## Conclusion

36.    A.B. Data respectfully requests that the Court enter an Order approving its administrative determinations accepting and rejecting the claims submitted herein and approving the proposed distribution plan.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed this 3rd day of December 2021 in Palm Beach Gardens, Florida.

_____
Eric J. Miller