# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| VISTA HEALTHPLAN, INC., et al., | ) | CIVIL ACTION |
| Plaintiffs, | ) | |
| v. | ) | |
|  | ) | No. 2:06-cv-1833 |
| CEPHALON, INC., et al., | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF ERIC MILLER

I, Eric Miller, being duly sworn, certify as follows:

1. I am the Senior Vice President of Case Management with A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data"). I submit this Affidavit at the request of Plaintiffs' Counsel in connection with the above-referenced action (the "Action"). This Affidavit is based upon my personal knowledge and upon information provided by my associates and staff.

2. I have more than 18 years of experience administering class action cases, including experience in more than 25 pharmaceutical indirect purchaser class action settlements involving end-payors such as consumers and third-party payors ("TPPs"), including: : (i) *In re Relafen Antitrust Litigation* ("*Relafen*"), 01-cv122239-WGY (D. Mass.); (ii) *In Re Tricor Indirect Purchaser Antitrust Litigation* ("*Tricor*"), Civ. No. 05-360-SLR (D. Del.); (iii) *State of New York, et al., v. Cephalon, Inc., et al.*, Civ. No. 16-4234-MSG ("*A.G. Provigil*") (E.D. Pa..); and (iv) *Mahoney v. Endo Health Solutions, Inc. et al.*, Case No. 15-cv-9841-DLC ("*Fluoride Tablets*") (S.D.N.Y.). These cases present real-world examples where I, while employed by A.B. Data or Rust Consulting ("Rust"), have overseen methodologies used by End-Payor Plaintiffs to identify class members. A copy of my full resume is attached as Exhibit A.

Page 1 of 11

3. Administering class actions involves a wide range of notice and claim processing services. With regard to notice in cases such as this one, we design and implement a comprehensive, multi-channel and microtargeted notice program that is calculated to reach potential consumer class members and satisfy the requirements of Rule 23. With regard to administering the allocation and distribution of class action settlement recoveries, we provide services critical to implementing a claims process that confirms that those filing claims are in fact class members and that they receive the recovery to which they are entitled under an approved plan of allocation and distribution.

4. More specifically, as is explained in the Proposed Class Action Notice Program developed for this case, when developing and administering a program for notice to the class, A.B. Data looks to both multichannel publication and direct mail notice. In designing a publication strategy, A.B. Data conducts research to determine which internet and print publications, social media newsfeeds and advertising in social media, and other publicity channels are most likely to reach class members who will not receive direct notice based upon the nature of the case. For purposes of direct mail notice in pharmaceutical cases such as this one, A.B. Data utilizes a proprietary database of approximately 42,000 entities that include insurance companies, health maintenance organizations, self-ensured entities such as certain large corporations, labor unions, and employee benefit and pension plans, and certain record keepers, such as pharmacy benefit managers ("PBMs") and third-party administrators ("TPAs") to send notice to potential TPP class members.

5. For purposes of direct mail notice to consumer class members, when available and cost-effective, A.B. Data utilizes data obtained from the prescription transaction records of third parties, such as retail pharmacies and PBMs to identify consumers who may be class

Case 2:06-cv-01797-SRC-CLW Document 580-4 Filed 03/10/22 Page 4 of 12
Case 1:10-md-02173-JBS-KSK Document 5889-3 Filed 05/19/22 Page 4 of 19
PageID: 70740

members. I have been involved in a number of cases where counsel have obtained such records from such retail pharmacies and PBMs to identify class members, including *Relafen, Tricor, A.G.Provigil* and *Fluoride Tablets*. These cases provide real-world examples where pharmacies and PBMs have provided data to A.B. Data or Rust Consulting (where I was previously employed and worked on these matters) that could be used to identify class members in cases that arise in the pharmaceutical context.

6. To effectuate direct notice to both TPP and consumer class members, .A.B. Data sends the Court-approved notices of settlement directly to all entities and consumers identified in the data compiled and produced who may be class members by mail.

7. In addition, in administering a class action Notice Program, A.B. Data frequently also uses news releases via PR Newswire's US1 distribution list to provide notice of class action settlements following preliminary approval by the Court.

8. In connection with administering the allocation and distribution of class action recoveries, A.B. Data is often involved in and has extensive experience in assisting with the design of claim forms and claims-processing requirements and accurately and efficiently processing claims. A.B. Data reviews claims in detail and in accordance with plans of allocation approved by a Court or outlined in an approved stipulation of settlement. A.B. Data calculates and reports payment amounts, provides comprehensive reporting on all aspects of the claims processing, makes recommendations for distribution, implements Court-approved distribution plans and prepares documentation of all aspects of claim processing for oversight by counsel and/or submission to the Court.

9. In the context of administering settlements in pharmaceutical antitrust cases, A.B. Data has routinely reviewed information from one or more of the multiple highly standardized,

computerized and electronically stored sources of prescription transactions that are discussed in more detail below and in the reports of Glenn Melnick, Ph.D. (the "Melnick Report") and W. Paul DeBree (the "DeBree Report"), also submitted in support of the Settlements.

10. Further, I have overseen the use of the methodologies described briefly above and discussed in more detail below in pharmaceutical antitrust class actions on behalf of end-payors to identify class members and the damages they have suffered as a result of conduct alleged in the class actions. A representative list of these class actions is attached hereto as Exhibit B. I also provide here a brief summary of real world examples where A.B. Data or Rust Consulting obtained records from pharmacies and PBMs to identify class members:

>(a) In *Relafen*, we worked with End-Payor Plaintiffs' Co-Lead Counsel, some of whom are also Co-Lead Counsel in this case, to issue subpoenas to the ten largest retail pharmacy services in the United States and the five largest PBMs in the United States to obtain electronic files of the consumers' names, addresses, and class-period expenditures. The subpoenas resulted in electronic files that identified each transaction, including the NDC, total purchase amount, co-pay amount, purchase date, and purchase price such that the consumer's inclusion in the class could be confirmed.
>
>(b) Similarly, in *Tricor*, End-Payor Co-Lead Counsel issued subpoenas to seven of the largest providers of retail pharmacy services, including mail-order pharmacies, to obtain electronic files of relevant consumer names, addresses, and drug expenditures during the class period.
>
>(c) In *A.G. Provigil*, A.B. Data identified consumers who purchased Provigil or a generic version of Provigil (Modafinil). With the assistance of the various Attorneys' General offices prosecuting the case, A.B. Data obtained the names and addresses of purchasers from the records maintained by large chain retail pharmacies and PBMs.
>
>(d) Most recently, to identify Class members in the *Fluoride Tablets* case, Class Counsel secured a Court-issued Order to serve subpoenas on the six largest PBMs – Express Scripts, CVS Caremark, OptumRx, Prime, Humana and Medimpact – and nineteen pharmacy chains. Class Counsel also secured a HIPAA compliant protective order. The subpoenas sought electronic files containing certain targeted data fields, including, among other things, Unique Patient ID, Patient Name, Patient Address (including

Street, City, State and Zip Code), Fill Date/Date of Service, Amount Billed (not including dispensing fee), NDC, Amount Paid by Patient, Amount paid by Co-Insurance, Amount Paid by TPP, Plan or Group Name, and Plan or Group FEIN, for each Fluoride Tablet-related transaction

11. Through the experience described above, A.B. Data has developed an administratively feasible methodology utilizing available information that verifies, to the satisfaction of supervising courts, that consumers and TPPs who participate in the settlements are in fact class members. Our methodology and claims process will also allow us to identify and remove claims by those who are not entitled to a recovery.

### Ascertaining and Processing the Claims of TPP Class Members

12. TPPs who purchased or provided reimbursement for any Provigil or generic Provigil (Modafinil) during the Class Period in the relevant states are class members, unless they were not at risk for those purchases. (N.B. United Healthcare Services, Inc. is excluded from the three Settlement Classes and certain TPPs that settled separately with regard to the Cephalon, Barr and Teva Settlement Class are excluded from the class settlement with those defendants).

13. In order to provide notice of the proposed settlements to potential Class Members, A.B. Data developed a Proposed Class Action Notice Program for this case (the "Notice Program") which is included in the submissions filed with the Court in support of certification of the Settlement Classes and preliminary approval of the Settlements. The Notice Program explains the rationale for and nature of the methodologies proposed to effectuate the best notice practicable as required by Rule 23 for purposes of certification of the Settlement Classes and advising Class Members of their rights to participate, opt out or object to the proposed settlement. Copies of the proposed forms of notice are attached to the Declaration of Joseph H. Meltzer ("Meltzer Dec.") submitted in support of the Settlements as Exhibits 4 and 5.

14. Under the Notice Program, notice of the Settlements to TPP Class Members will be made by direct-mail to TPPs using the names and addresses in A.B. Data's proprietary database of over 42,000 TPPs. A.B. Data compiled this list using membership listings and existing databases from publically available sources, including U.S. Department of Labor Form 5500 filings and the Pharmacy Benefits Management Institute, and prior pharmaceutical litigations that A.B. Data has administered. A.B. Data continually updates this proprietary list and it has been an important tool for providing names and addresses to effectuate direct mail notice to TPPs in numerous court-approved pharmaceutical class action settlements, including *In re Solodyn Antitrust Litigation*, 14-md-02503 (D.Mass), *In re Aggrenox Antitrust Litigation*, 3:13-md-02516(SRU)(D.Conn.), and *Flouride Tablets*.

15. In addition to administering the Notice Program, A.B. Data is also prepared to administer the claims process of any approved settlement utilizing information that is readily accessible to TPPs (and consumers as discussed below). The information collected in the claims process will further ensure that only those TPPs that qualify as Class Members recover from the proceeds of the Settlements.

16. More specifically, in the claim process, TPPs will be asked to state the total of their unreimbursed payments for purchases and/or reimbursements for Provigil and and/or its generic equivalent ("Modafinil") during the period of June 1, 2006 to September 30, 2013, and to submit documentation for claims of more $300,000. In particular, for claims totaling more than $300,000, TPPs will be required to provide documentation sufficient to show the amounts paid for purchases and/or reimbursements for Provigil and/or Modafinil and data reflecting for each such payment: the patient identifier, NDC, fill/service date, state of service, amount billed, and amount paid by the TPP. TPPs regularly maintain paid claim databases within their IT systems

that contain these data fields in a readily available, standardized and well-documented manner as explained in greater detail in the Melnick Report. A copy of the proposed TPP Claim Form, which must be signed with a certification that the information is true and correct to the best of the claimant's knowledge and which confirms that the claimant was at risk for the amounts claimed, is attached to the Meltzer Dec. as Exhibit 6(b).

17. Claimants will be provided the option to submit their claim by mail or through a secure website. Any Claimant that submits an incomplete claim will be notified by A.B. Data and allowed an opportunity to cure any deficient conditions existing within their claim.

18. As for any Pharmacy Benefit Manager ("PBM") that files a claim, they will be required just like any other claiming entity, to certify that they paid or were reimbursed for the claimed amounts and were at risk. Moreover, as explained in the "DeBree Report," PBMs do not generally bear the risk of payment for prescription drugs. Instead, Mr. DeBree explains, only those PBMs with capitation agreements—which he explains are very rare—would bear any risk of payment for Provigil and/or its generic equivalent.

19. Using the above-outlined methodologies for providing notice to potential TPP class members and gathering the data necessary to verify and process TPP claims, A.B. Data will be able to verify which claiming TPPs are in the Settlement Classes and eliminate those that fall outside the Settlement Class definitions from participation in the Settlements. Once A.B. Data has received, reviewed and processed all of the timely claims, it will generate an approved claims list, provide the list to Counsel and make the distribution to TPP Class Members with approved claims in accordance with the Plan of Allocation approved by the Court.

**Ascertaining and Processing the Claims of Consumer Class Members**

20. All consumers (other than employees of Defendants) who purchased any Provigil or generic Provigil (Modafinil) during the Class Period in the relevant states are class members, unless they are flat dollar co-pay purchasers or purchased only generic modafinil pursuant to a fixed co-pay.

21. Under the Notice Program, notice of the Settlements to Consumer Class Members will be made using both direct mailed notice and case specific strategic, microtargeted notices placed in social media, digital media, national print media and earned media. The rationale for the print and digital placement strategy proposed to provide notice to consumers who are members of the Settlement Classes is fully described in the Notice Program submitted with the Motion for Preliminary Approval of Class Action Settlements.

22. To effectuate direct notice to consumers, in addition to utilizing name and address data contained in the claims records from administering the *A.G. Provigil* settlement, A.B. Data will use names and addresses of those who purchased Provigil or generic Provigil (Modafinal) that will be obtained from the records of the major chain retail pharmacies and PBMs. As explained in the Melnick Report, these entities maintain standardized, computerized and electronically stored data concerning virtually all prescription related pharmacy transactions for billing, payment, reporting and record keeping purposes. We used these same sources—i.e., records of major retail pharmacies and PBMs—for collecting the names and addresses of those who paid or were reimbursed for purchases of Provigil or Modafinil to send mailed notice to over 800,000 consumers in the *AG Provigil* Settlement approved by this Court last year. As explained by Class Counsel in their Motion for Preliminary Approval of the Class Action

Settlements, Class Counsel anticipate seeking these names and addresses for use in administering this settlement *via* subpoena, if necessary, upon entry of a preliminary approval order.

23. Just as with TPP Class Members, the information to be collected from consumers in the claims process will further ensure that only those consumers that qualify as Class Members recover from the proceeds of the Settlements.

24. In the claim process, consumers will be asked to state the total amount they paid out of pocket for Provigil or generic Provigil (Modafinil) during the class period. Consumers will also be required to provide proof of purchase for at least one of the purchases they are claiming for either in the form of pharmacy records reflecting their purchase information or insurance plan records (such as an Explanation of Benefits). Additionally, consumers will be required to check a box affirmatively confirming that they do not fall within the exclusions from the Settlements and so qualify to participate in the Settlements. The exclusions are listed on the claim form are: (1) Employees of the Defendants; (2) Insured individuals covered by plans imposing a flat dollar co-pay that was the same dollar amount for generic as for brand drug prices; and (3) Insured individuals who purchased only generic modafinil pursuant to a fixed co-pay applicable to generic drugs. Finally, consumers must sign a "Sworn Statement" declaring under penalty of perjury that: (1) all of the information provided in their Claim Form is true and correct to the best of their knowledge; (2) that they paid the amounts as indicated in the Claim Form for Provigil or generic versions of Provigil (Modafinil) for their own use (or for the Claimant's family or household) at some time during the Relevant Time Period; and (3) that if not submitting the claim on their own behalf, they are authorized to submit this form on behalf of the Claimant identified in the form. Consumer Class Members will have the option to submit their claims by mail or through a secure website. A.B. Data will process and review each claim

Case Case 2:06-cv-01797-MSG Document 580-4 Filed 03/25/19 Page 11 of 12
Case 2:06-cv-01833-MSG Document 680-3 Filed 10/19/22 Page 11 of 11
PageID: 70747

for eligibility. Any claims that are determined to be deficient will be notified of such condition and provided an opportunity to resolve the condition. Once A.B. Data has received, reviewed and processed all of the timely claims, it will generate an approved claims list, provide the list to Counsel and make the distribution to Consumer Class Members with approved claims in accordance with the Plan of Allocation approved by the Court. A copy of the proposed Consumer Claim Form is attached to the Meltzer Dec. as Exhibit 6(a).

25. A copy of the named consumer plaintiff's pharmacy records, which I have reviewed, is attached to the Meltzer Dec. as Exhibit 17. These pharmacy records that are typical of the type of documentation that consumers can obtain and submit. The records show how much she paid for Provigil and Modafinil. The combination of the claim form and proof of purchase will allow the claims administrator to verify that claiming consumers are Class Members.

26. Moreover, as explained in the Melnick Report, the Point of Service (POS) systems of retail pharmacies also capture detailed information concerning every consumer purchase of prescription drugs, providing all elements needed to ascertain class members and their eligible purchases. Such information gathered by consumers to provide the single purchase documentation required to file a claim can also be used by the Claim Administrator to confirm class membership for consumers.

27. In my experience, the information that consumers are asked to provide to confirm their class membership and support their claim is easily obtained from retail pharmacies and/or insurer records. Further, while we expect, consistent with our experience, that most consumers filing claims will be able to gather the needed information and documentation on their own, we can and will provide guidance to consumers who are not familiar with how to do so. A toll-free

telephone number will be provided in the mailed Notice and website listed/linked to published notice for requesting such help.

28. I have firsthand knowledge and experience managing a number of pharmaceutical antitrust class action settlements where we successfully administered a Notice Program and claim process like that contemplated here utilizing a combination of the information provided in claim forms and corresponding documentation gathered from standardized prescription transaction records available from multiple sources. The methodologies we utilize have enabled us to verify class membership and efficiently and accurately process the claims of participating class members.

### Conclusion

29. Ultimately, the data provided by claimants, pharmacies, TPPs, and other third parties can be used to provide effective notice to potential class members, to verify that claiming consumers and TPPs purchased the drug in question during the relevant time period, and, thereafter, to process Class Member claims in accordance with the Plan of Allocation approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2018.

_____
Eric J. Miller
Senior Vice-President, A.B. Data, Ltd.

SUBCRIBED AND SWORN before me on this 20 day of December, 2018.

My commission expires  5/18/2020  .

[Notary seal: STEVEN STRAUB, NOTARY PUBLIC, STATE OF WISCONSIN]