**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

————————————————

CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS        **19-md-02875-RBK-SAK**
LIABILITY LITIGATION

                                 **CASE MANAGEMENT CONFERENCE**
————————————————        **via ZOOM VIDEOCONFERENCE**

       Mitchell H. Cohen Building & U.S. Courthouse
       4th & Cooper Streets
       Camden, New Jersey  08101
       May 11, 2022
       Commencing at 4:02 p.m.

**B E F O R E:**        **THE HONORABLE THOMAS I. VANASKIE (RET.)**
                       **SPECIAL MASTER**

**A P P E A R A N C E S:**

       MAZIE SLATER KATZ & FREEMAN, LLC
       BY:  ADAM M. SLATER, ESQUIRE
       103 Eisenhower Parkway
       Roseland, New Jersey  07068
       For the Plaintiffs


       GREENBERG TRAURIG LLP
       BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
       3333 Piedmont Road, NE, Suite 2500
       Atlanta, Georgia  30305
       For the Defendants, Teva Pharmaceutical Industries Ltd.,
       Teva Pharmaceuticals USA, Inc., Actavis LLC,
       and Actavis Pharma, Inc.




            Ann Marie Mitchell, Official Court Reporter
                 AnnMarie@AMreporting.com
                      (856) 906-8171

     Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3    ULMER & BERNE LLP
     BY:  JEFFREY D. GEOPPINGER, ESQUIRE
     600 Vine Street, Suite 2800
4    Cincinnati, Ohio 45202
     For the Wholesaler Defendants and AmerisourceBergen
5

6    LEWIS BRISBOIS BEASGAARD & SMITH
     BY:  ANDREW F. ALBERO, ESQUIRE
7    550 East Swedesboro Road, Suite 270
     Wayne, Pennsylvania  19087
8    For the Defendants, AvKARE and Camber

9

10   **ALSO PRESENT:**

11   LORETTA SMITH, ESQUIRE
12   Judicial Law Clerk to The Honorable Robert B. Kugler

13   Larry MacStravic, Courtroom Deputy

14

15

16

17

18

19

20

21

22

23

24

25

1          (PROCEEDINGS held in open court before The Honorable

2    Thomas I. Vanaskie (Ret.), Special Master at 4:02 p.m.)

3          SPECIAL MASTER VANASKIE:  Ann Marie Mitchell is our

4    court reporter here today.

5          That was my confirmation that I'm jumping the gun.  I

6    think I may have jumped the gun a couple of times now.

7          But we'll get started with our conference.  Hopefully

8    it will be a relatively brief conference.

9          I did want to ask, who will be addressing the matters

10   on behalf of the plaintiffs?

11         MR. SLATER:  Good afternoon, Your Honor.  Adam Slater

12   for the plaintiffs.

13         SPECIAL MASTER VANASKIE:  All right.  Thank you,

14   Mr. Slater.

15         And who will be addressing the matters on behalf of

16   the defense?

17         MS. LOCKARD:  Your Honor, hello.  It's Victoria

18   Lockard from Greenberg Traurig.  I'll start us off today.  Our

19   office sent in the agenda letter.

20         I believe we'll have other counsel addressing points

21   number 2 and number 3.

22         SPECIAL MASTER VANASKIE:  All right.  And I thought

23   we'd start today with the defense agenda letter.

24         And the point number 1 in the agenda letter is

25   clarification of deadlines in Special Master Order Number 65.

```
 1            So it looks like I missed something when I prepared
 2    that order?
 3            MS. LOCKARD:  Well, I wouldn't say that necessarily,
 4    but I do think clarification may be in order, Your Honor.
 5            I think what was intended by the parties was that we
 6    have a mutual submission on our replies and responses to the
 7    Daubert motions.  And so the order just left off the
 8    defendants' portion of that and just referred to plaintiffs'
 9    briefing.
10            So we just wanted to seek clarification that we will
11    have the same deadlines across the board.
12            SPECIAL MASTER VANASKIE:  Mr. Slater?
13            MR. SLATER:  That makes sense to us.
14            SPECIAL MASTER VANASKIE:  All right.  So we'll
15    clarify that order.  Verbally you have that clarification now.
16    We'll issue an order, though, that makes it clear so that
17    there's no uncertainty.
18            MS. LOCKARD:  Thank you, Judge.
19            SPECIAL MASTER VANASKIE:  And then we'll use the
20    language that you all had proposed of no later than June 2,
21    2022, et cetera, plaintiffs and defendants shall file their
22    responses.  Okay?
23            All right.  Let's move then to item number 2 on the
24    defense agenda letter.  And that's the status update on the
25    meet and confers regarding the defendants' indemnification and
```

 1    defense agreements.

 2            And again, it looks like I jumped the gun a little

 3    bit on this matter in terms of the order that was issued.

 4            Mr. Slater, you want to brief this issue?

 5            MR. SLATER:  Well, only if Your Honor decides it's

 6    necessary.  Frankly, we would like Your Honor just to decide

 7    it all today, because you've already ordered what to do.  We

 8    don't really understand why the process you've put in place

 9    wouldn't apply to all the defendants, most of whom have

10    already complied.

11            So our hope would be that Your Honor could just

12    dispose of the issue today so we can move forward rather than

13    turning this tempest in a teapot into something that it really

14    doesn't need to be.  We just would like to get it done today.

15            SPECIAL MASTER VANASKIE:  All right.  Well, I was

16    hoping maybe we could have a conversation today that I would

17    feel comfortable issuing an appropriate ruling without the

18    need for additional briefing.

19            Who is addressing this issue for the defense?

20            MR. GEOPPINGER:  Good afternoon, Your Honor.  Jeff

21    Geoppinger for the wholesaler defendants.

22            SPECIAL MASTER VANASKIE:  All right, Mr. Geoppinger.

23            MR. GEOPPINGER:  We are the ones who, you know, filed

24    the request for clarification, Your Honor.

25            And it basically boils down to this:  There was

1  discovery.  The wholesalers responded.  They provided

2  information about indemnification.

3       There was not discovery about defense agreements.  We

4  don't think anything about a defense agreement has any

5  relevance to anything.  There's information in there that's

6  privileged.

7       The Court entered Special Master Order 64, which read

8  broadly could require the defendants, wholesaler defendants,

9  to just turn over information about indemnification and

10 defense that goes beyond what was requested in the discovery

11 phase of the case, and in particular, could require -- be read

12 to require the wholesalers to turn over information about

13 defense agreements, which I noted are just completely

14 irrelevant to anything and potentially include privileged

15 information.

16      So certainly we're not trying to make a bigger deal

17 out of anything than need be made.

18      We have met and conferred, each of the wholesalers,

19 with the plaintiffs.  It's my understanding from talking to my

20 colleagues that there's been information that was conveyed

21 regarding indemnification.  That was done in the discovery

22 phase, and that information has been updated.

23      And maybe even perhaps the plaintiffs, if Mr. Slater

24 is willing to agree, maybe we can agree that we've covered

25 what he needs to know about indemnification and where we are

1   on the status of that.

2          However, to the extent that the plaintiffs want to

3   require the wholesaler defendants to disclose information

4   about defense agreements, about who's agreed to pay what

5   percentages, about what kind of monies have been -- have

6   exchanged hands, the wholesalers vehemently object to

7   providing any of that, not only because it's not stuff that

8   was requested in discovery, it's also irrelevant and

9   privileged.

10          And I will point out, Your Honor, when you entered

11   Special Master Order 64, I think it's fair to say that the

12   thought process was it was just requiring the defendants to

13   supplement what had been already provided.  And I think we've

14   done that.

15          But to the extent it requires us to provide some

16   information that was not subject to a discovery request, it

17   was not something that was asked about, talked about, briefed,

18   thought about, we don't want to be in a position where we have

19   to do that and have somebody tell us that Special Master Order

20   64 requires us to provide all this information that, you know,

21   we just haven't -- it wasn't part of the discovery previously.

22          SPECIAL MASTER VANASKIE:  Mr. Slater.

23          MR. SLATER:  Thank you.

24          Judge, maybe there's a semantic issue here, I'm not

25   sure.  Clearly Judge Kugler stated on the record when Your

1  Honor also found and put it into your SMO 64 that we should be

2  apprised of any indemnification and defense agreements,

3  demands, rejections, et cetera, as between the various parties

4  on the defense side so we would know entering into this

5  settlement negotiation phase which has been implemented with

6  the special masters for settlement what the relationships are

7  as between the various defendants as we enter into these

8  negotiations.

9       And we for the most part had confirmation as to

10  whether, for example, a manufacturer is indemnifying a

11  retailer or whether a wholesaler is indemnifying a retailer or

12  whether -- we just learned the other day a few retailers

13  requested indemnification from McKesson, and we were told that

14  that remains unresolved.  So we assume McKesson hasn't agreed

15  to indemnify those retailers per that request.

16      The other part of that was -- and all of the other

17  defendants other than the wholesalers have told us whether or

18  not defense costs or defense is also being tendered and

19  provided as part of the indemnification.  They obviously go

20  hand in hand.

21      So, for example, if there's a retailer that requested

22  defense and indemnity from a manufacturer -- and I'm not

23  saying whether this happened or not, but I'm trying to set a

24  context to find out if we're having a semantic discussion with

25  the wholesalers -- that would be within what Your Honor

1    ordered, and we would need to know that.  For example, if ZHP

2    is paying all the defense costs for a retailer, that help us

3    to understand as we enter into negotiations with the retailers

4    who's responsible for these financial liabilities and lets us

5    negotiate with knowledge.

6        When Mr. Geoppinger says -- so to stop there -- I

7    guess I'll steal a phrase from one of my colleagues -- full

8    stop, I don't see why that would be an issue, because

9    everybody else has agreed to it give, Your Honor was well

10   within your discretion to order it, and it makes sense for us

11   to know it.

12       What I heard Mr. Geoppinger saying, and maybe I

13   hadn't realized it until just now, when he's saying we

14   shouldn't be able to be apprised of all defense agreements,

15   I'm wondering if the thing that the wholesalers are worried

16   about is whether they have collectively entered into some sort

17   of agreement to allocate their costs among one another because

18   they're in this MDL together.  And for example, Mr. Geoppinger

19   is lead counsel, per the Court's order, for the group of

20   wholesalers.  He speaks for them at the conferences, et

21   cetera.  Whether or not they have some agreement that his

22   attorney's fees for acting as lead counsel are shared among

23   clients, that's not something we're concerned about.  That's

24   just an administrative step that's been taken as a result of

25   the MDL.  It's not indemnification and defense allocating

1  liabilities or the responsibility to pay the liabilities that

2  may flow from our damages claims in this case.  That's what

3  we're interested in.

4         So maybe through this conversation we've identified

5  the one area that we're not interested in and maybe that can

6  be carved out, but certainly to the extent that, for example,

7  if the retailer has asked one of the wholesalers to pay their

8  defense costs for the litigation itself, that would come

9  within your order, and we think that should be ordered,

10  because, again, we need to know that as we enter into these

11  negotiations now and into these mediations.

12         SPECIAL MASTER VANASKIE:  All right.  Mr. Geoppinger,

13  are we narrowing the issues here?

14         MR. GEOPPINGER:  No.  I mean, I think we're on the

15  same page.  We are talking about the defense, a defense

16  agreement.  For instance, to use Mr. Slater's example, if a

17  wholesaler agreed to defend a retailer and come up with some

18  type of percentages for paying defense costs and pay monies

19  and what those were, all that information is what we're

20  talking about.

21         And it's -- the information, Your Honor, is, first of

22  all, privileged.  I mean, there's a real concern about

23  disclosure of privileged information there, common interest

24  privileged information there.

25         Second, relevance is -- is eluding me completely.  I

1    can't understand why the plaintiffs would need to know

2    anything about defense agreements between the parties.  They

3    have nothing to do with who's paying the liabilities, which is

4    what the plaintiffs are concerned about.

5          I can't -- I haven't heard any articulation of why

6    defense costs have anything to do with anything in terms of

7    settlement negotiations.  The indemnification information

8    provides that information that the plaintiffs need to know.

9          So to the extent -- and then to go back, just not to

10    spend too much time on it, but, you know, to the extent the

11    order, you know, was entered that says, hey, you guys should

12    be turning over this defense information, that's kind of where

13    the rubber meets the road when we say the order is about

14    supplementation.  Had the plaintiffs come to us during

15    discovery and said, hey, we want all this information about

16    defense costs and defense agreements and that kind of stuff

17    and asked our witnesses in depositions about that kind of

18    stuff, we would have had the opportunity to address it with

19    the Court and tell you then we don't think it should be

20    disclosed.

21          But here we are with the order in place and the

22    plaintiffs are saying, well, that order says we need to do it.

23    And this is our first opportunity to say to the Court, we

24    don't think we should be required to do that because of the

25    reasons I've articulated.

```
 1           So if the Court is inclined to, you know, spend
 2    some -- you know, look into this deeper, I would definitely
 3    suggest, Your Honor, that the wholesalers would like the
 4    opportunity to brief the issue, whether that be the plaintiffs
 5    replying to the motion we've already filed or some other
 6    briefing schedule you want to put in place, but we do have
 7    significant concerns about relevance and privilege with
 8    respect to defense information.
 9           MR. SLATER:  So, Judge, if I could, now that I have
10    that clarification, I think I can probably respond to that and
11    I think get us done here.
12           The first thing is, indemnification was a subject of
13    the common discovery requests.  The defense goes hand in hand
14    with the indemnification.  It's part of it.  If you're
15    indemnifying, you're indemnifying for damages, you're
16    indemnifying for defense costs.  So the fact that Your Honor
17    said defense and indemnity I don't think expands it beyond
18    what it was.  I think it was already built into
19    indemnification, and that was part of discovery, number one.
20           Number two, the retailers did not object.  And they
21    have disclosed, or at least told us that they have disclosed,
22    all such indemnification agreements, whether requests have
23    been made, whether they've been agreed to, et cetera.  So I'm
24    not sure if there was any privilege -- I don't think there
25    was.  But if there was, it's been waived, because the
```

1    retailers have disclosed the information to us as to those

2    agreements between the wholesalers and retailers.  They --

3    none of the retailers objected, and they provided us whatever

4    information they provided.  And part of the purpose of this

5    exercise in asking all levels of the supply chain is to

6    cross-check from one to the other to make sure we're getting

7    consistent information.

8         So I don't know where the privilege claim would come

9    from, because the retailers have presumably disclosed whatever

10   exists.  We would expect the wholesalers to provide the same

11   information.

12        So again, coming back to this, it is a subject of

13   discovery.  It's clearly relevant for us to know the

14   allocations of liabilities as between the parties.  And I can

15   tell Mr. Geoppinger, I took a lot of depositions, not of the

16   wholesalers or retailers but of the manufacturers, and asked

17   all these questions on the questions that had to do with

18   indemnification and defense:  Who is paying your defense

19   costs?  Did you agree to pay someone else's defense costs?  I

20   mean, this has all been the subject of the 30(b)(6)

21   depositions.  And the whole purpose now is for everybody to

22   get up to the present and know that we're all fully up to date

23   as we embark on these discussions.

24        Again, it's only the wholesalers that are fighting

25   this.  They want to be treated in a special way, where none of

1    the other parties have objected to this, and they've all

2    agreed to provide this information.  And there's no reason why

3    the wholesalers should be treated differently.  There's

4    nothing compelling that's been argued to Your Honor.  If

5    there's a privilege claim, it's been waived.  And again, I

6    don't think there's a privilege claim anyway.

7         And again, I think that what would be helpful is if

8    the wholesalers would just agree to give this information as

9    expected by Your Honor, as your order requested, as Judge

10   Kugler has stated he expects, so we can get some cooperation

11   as we move into the mediation phase of this litigation.

12        SPECIAL MASTER VANASKIE:  Mr. Geoppinger.

13        MR. GEOPPINGER:  Your Honor, just a couple points.

14        One, defense and indemnity are very different things.

15   And, you know, as I said when we negotiated discovery, we

16   talked about indemnification, not defense.  Had we done that,

17   we would have had the opportunity to bring this to the Court's

18   attention earlier.  We don't consider an agreement to tell the

19   plaintiffs whether we've asked somebody for indemnity or not,

20   an agreement to tell them whether they've agreed to subsume

21   our defense, how much percentage of the cost they're going to

22   pay and how much they paid.  I think those are two very, very

23   different things.

24        Secondly, you know, everybody else is doing it

25   doesn't make that information any more relevant or any less

1   privileged.  We haven't waived our privilege, none of the

2   wholesalers.  And candidly, I'm not aware of anybody who has.

3   If Mr. Slater can share somebody -- some defendant -- he has a

4   name of a defendant who has told him that they're defending a

5   wholesaler and what percentages they're paying and what money

6   they paid, I'd be interested in knowing that.  I don't think

7   that's the case, but I haven't taken those depositions he

8   referred to.

9          But in any event, like I said, the fact that somebody

10  else may have made that decision does not make the information

11  any more relevant or any less privileged from the wholesalers'

12  perspective.

13         SPECIAL MASTER VANASKIE:  Well, this issue is

14  beginning to get more complicated than I thought it was going

15  to be.

16         I did understand at the time that SMO 64 was issued

17  that we were simply dealing with supplementation of existing

18  discovery responses and not broadening discovery, but perhaps

19  I did not understand exactly what plaintiffs were seeking and

20  what they may be entitled to.

21         And I'm not prepared to rule during this call on

22  relevance and privilege issues certainly, certainly not on

23  privilege issues.  And I think I will have to set up a

24  briefing schedule.  I'm reluctant to do that.  I'd like to

25  resolve this.

1           But from what I understand, Mr. Geoppinger, you're

2    telling me that there is information that the wholesaler

3    defendants believe is not discoverable either because it's

4    outside the scope of relevance or because it's privileged, and

5    that requiring the supplementation or requiring you to respond

6    to plaintiffs' -- I'll say -- not revised requests but more

7    nuanced requests would be problematic from the wholesaler

8    defendants' perspective.

9           And I think, Mr. Slater, I'm going to need to see

10   briefs on this issue in order to reach an appropriate ruling.

11          And I think, if it's all right, I'd like to do it in

12   the context of getting a response from plaintiffs to the

13   existing brief that has been filed and then give the

14   wholesaler defendants an opportunity to reply.

15          And I think it's an issue that should be resolved

16   promptly.  And what I suggest is that either at our next

17   conference call or even sooner, I'll schedule oral argument

18   for purposes of issuing a ruling and hopefully being prepared

19   to rule during that conference at the conclusion of that

20   conference so that this matter can move forward.

21          One of the reasons I issued the order so promptly is

22   I didn't think it was controversial at the time, and I've

23   endeavored to try to move this matter along.  And so that's

24   why I would try to issue a ruling.

25          If I couldn't do it after hearing arguments and a

 1    brief recess, then I would issue something in writing shortly

 2    thereafter.

 3         So I guess I'll throw it back to you, Mr. Slater, and

 4    ask how much time would you like to file an opposition brief

 5    on this issue?

 6         MR. SLATER:  I think the only problem is, unless I

 7    missed it, I don't think that the wholesalers have actually

 8    briefed what they're explaining to Your Honor now.  I don't

 9    think they've briefed relevance.  They haven't briefed the

10    privilege claim.  So we don't really know -- other than what

11    Mr. Geoppinger said here and what they said in their letter,

12    unless they're resting on what they put in that agenda letter,

13    we'd really be briefing against something that is just some

14    broad claims of privilege and relevance problems without

15    actually having their brief, unless I missed it.

16         SPECIAL MASTER VANASKIE:  Mr. Geoppinger.

17         MR. GEOPPINGER:  Well, the brief I was referring to

18    is the one that was filed under Rule 53 on May the 5th.

19         I will -- you know, thinking about it, Your Honor,

20    the Court, Judge Kugler did deny that technically in his order

21    yesterday and sent it back to you for this discussion.

22         SPECIAL MASTER VANASKIE:  Uh-huh.

23         MR. GEOPPINGER:  So I guess it may be appropriate for

24    us to file an opening brief and then --

25         SPECIAL MASTER VANASKIE:  All right.  Yes.  I think

```
 1   then that is appropriate.

 2          So how much time do you need, Mr. Geoppinger?

 3          MR. GEOPPINGER:  Looking at the calendar, I don't

 4   know if the Court knows off the top of its head when the next

 5   conference is.  I know you mentioned trying to get it done by

 6   then.

 7          SPECIAL MASTER VANASKIE:  Well, that was just a

 8   suggestion.

 9          MR. GEOPPINGER:  Oh.  It would be -- Your Honor, I

10   would be -- obviously, you know, I'm here without my

11   colleagues, but I would say, you know, if we could file the

12   next brief -- we've obviously already done some of the work on

13   this, but if we could have till the 23rd.

14          SPECIAL MASTER VANASKIE:  Loretta, do you have the

15   date when we next have our --

16          THE LAW CLERK:  I do, Judge.

17          Mr. Geoppinger, it's going to be Wednesday, June the

18   1st will be the May CMC.

19          SPECIAL MASTER VANASKIE:  And you're asking for when,

20   till when, Mr. Geoppinger?

21          MR. GEOPPINGER:  Your Honor, I had suggested the

22   23rd.  Candidly, that's probably too late, if we want to have

23   argument, for the plaintiffs to respond and us to reply and

24   then have argument by the 1st.

25          SPECIAL MASTER VANASKIE:  Let's get your brief on the
```

```
 1   23rd.

 2              MR. GEOPPINGER:  Okay.

 3              MR. SLATER:  The problem is going to be that we're

 4   going to then be running into Memorial Day Weekend.

 5              SPECIAL MASTER VANASKIE:  I know, I know.

 6              MR. SLATER:  I thought Mr. Geoppinger --

 7              SPECIAL MASTER VANASKIE:  We're not going to hear

 8   argument on the 1st.

 9              MR. SLATER:  Maybe if Mr. Geoppinger can agree to

10   file his brief next week at some point, we can get our brief

11   in by Friday the 27th or even by Tuesday -- yeah, by Friday,

12   the 27th.  So if we have at least seven or eight days, we'll

13   respond to whatever they file.

14              SPECIAL MASTER VANASKIE:  Can you get your brief in

15   by the 20th, Mr. Geoppinger?

16              MR. GEOPPINGER:  The issue then becomes the reply,

17   Your Honor, because we'd certainly like to have the

18   opportunity to have one if we're going to do the initial

19   briefing.  And that is the Memorial Day Weekend, I believe.

20              MR. SLATER:  I would think over something this

21   straightforward, maybe we could just -- they could file, we

22   could oppose, and then the Court could just decide it.

23              I mean, that would be our request, just to get this

24   done.

25              SPECIAL MASTER VANASKIE:  We'll take the brief from
```

 1    the wholesaler defendants, deadline of May 23rd.

 2            I have my dates right.

 3            I'm sensitive to the fact it's Memorial Day Weekend,

 4    and so I give plaintiffs until June 2nd to reply.

 5            MR. SLATER:  That will be after the next conference.

 6            SPECIAL MASTER VANASKIE:  I understand.

 7            MR. SLATER:  Okay.

 8            SPECIAL MASTER VANASKIE:  And then I'd want a reply

 9    brief by June 6th.

10            MR. SLATER:  Got it.

11            SPECIAL MASTER VANASKIE:  And with all that briefing,

12    I don't think I'm going to need oral argument.

13            MR. SLATER:  That would be fine with us, Your Honor,

14    unless you want it.  Whatever --

15            SPECIAL MASTER VANASKIE:  Well, let me read the

16    briefs and see if I think I still have questions that need to

17    be answered.

18            So that will be the schedule.  All right?  And we'll

19    issue an order to that effect.

20            MR. SLATER:  Thank you, Judge.

21            MR. GEOPPINGER:  Thank you, Your Honor.

22            SPECIAL MASTER VANASKIE:  Now, the other item on the

23    agenda letters concerns the filing of a motion for summary

24    judgment by a pro se plaintiff.

25            I don't think this is an issue for me, unless you

```
 1   want to correct me, or is there something I can do on it?
 2           MR. SLATER:  You're probably right, understanding how
 3   you've been dividing things with Judge Kugler.  I don't think
 4   anyone is going to assert that we think that that motion is
 5   ripe.
 6           SPECIAL MASTER VANASKIE:  Right.  So, you know, but
 7   you've got a deadline to respond?  The defense has a deadline
 8   to respond to that motion?
 9           MR. ALBERO:  Yes, Your Honor.  This is Andrew Albero
10   from Lewis Brisbois.  I represent Camber Pharmaceuticals.
11           We had -- the motion was -- I think it was filed --
12   it was filed in April, and then our initial response date, it
13   was returnable I think in early May, May 2nd.  And we pushed
14   it -- we pushed it for the -- to the next motion date.
15           We were hoping that the Court could strike it or just
16   dismiss it as premature, because under the MDL, it's -- under
17   the rules, under the case management orders, we're not ripe
18   for summary judgment, especially in losartan cases, yet.  And
19   the pro se plaintiff might not be aware of that.
20           I was just sort of hoping if the Court could write a
21   letter to him and dispose of it.
22           I mean, we'll file a formal response if we have to.
23   I just was -- you know, I was hoping to avoid that.
24           And if it's something I should take up with Judge
25   Kugler -- we did write to Judge Kugler and we attached the
```

1    letter to our -- I wrote to you and Judge Kugler.  We attached

2    the letter to our letter brief for this conference.

3             SPECIAL MASTER VANASKIE:  Well, I will confer with

4    Judge Kugler to make sure that this matter gets addressed in a

5    way that is satisfactory to Judge Kugler and get you a

6    response so hopefully you can hopefully avoid having to reply

7    to this motion, because it does appear to me to premature.

8    All right?

9             MR. ALBERO:  Thank you.

10            SPECIAL MASTER VANASKIE:  So we'll get something back

11   to you on that.  And it may be, oh, no, you have to reply, but

12   you'll at least know one way or another.

13            MR. ALBERO:  I appreciate that, Judge.  Thank you.

14            SPECIAL MASTER VANASKIE:  Yep.

15            THE LAW CLERK:  Judge Vanaskie, may I ask Mr. Albero

16   a question?

17            SPECIAL MASTER VANASKIE:  Certainly.

18            THE LAW CLERK:  Mr. Albero, can you please just tell

19   me the document number of the motion in April and -- so we can

20   start taking that into consideration.

21            MR. ALBERO:  Let me take a look at that.

22            I believe it's filed under -- okay.  It's

23   Document 38, and I think it's a related case, 1:20-cv-15720.

24   And it's Document 38.

25            LAW CLERK:  Thank you so much.

1          There is -- thank you so much.  There can be a blind

2    spot in the MDL for individual filings, so I really appreciate

3    it.

4          MR. ALBERO:  I'm sorry, it would be Document 37.  My

5    letter to the judge is 38.

6          LAW CLERK:  Thank you.

7          SPECIAL MASTER VANASKIE:  Okay, great.  Thank you,

8    Mr. Albero.

9          Is there anything else we should be discussing today?

10         MR. SLATER:  Nothing I'm aware of for plaintiffs,

11   Your Honor.

12         MS. LOCKARD:  Nothing else I'm aware of for

13   defendants.

14         SPECIAL MASTER VANASKIE:  All right.  Thank you.

15         Thanks, Ann Marie.

16         We are concluded for today.  Thank you.

17         (Proceedings concluded at 4:31 p.m.)

18                              -  -  -

19         I certify that the foregoing is a correct transcript

20   from the record of proceedings in the above-entitled matter.

21

22   */S/ Ann Marie Mitchell, CCR, CRR, RDR, RMR*
     *Court Reporter/Transcriber*

23

24   *13th day of May, 2022*
          *Date*

25

*United States District Court*

**/**

/S [1] - 23:22

**0**

07068 [1] - 1:14
08101 [1] - 1:8

**1**

1 [1] - 3:24
103 [1] - 1:13
11 [1] - 1:8
13th [1] - 23:24
19-md-02875-RBK-KMW [1] - 1:4
19087 [1] - 2:7
1:20-cv-15720 [1] - 22:23
1st [3] - 18:18, 18:24, 19:8

**2**

2 [3] - 3:21, 4:20, 4:23
2022 [3] - 1:8, 4:21, 23:24
20th [1] - 19:15
23rd [4] - 18:13, 18:22, 19:1, 20:1
2500 [1] - 1:17
270 [1] - 2:7
27th [2] - 19:11, 19:12
2800 [1] - 2:3
2nd [2] - 20:4, 21:13

**3**

3 [1] - 3:21
30(b)(6 [1] - 13:20
30305 [1] - 1:17
3333 [1] - 1:17
37 [1] - 23:4
38 [3] - 22:23, 22:24, 23:5

**4**

445202 [1] - 2:4
4:02 [2] - 1:9, 3:2
4:31 [1] - 23:17
4th [1] - 1:7

**5**

53 [1] - 17:18
550 [1] - 2:7
5th [1] - 17:18

**6**

600 [1] - 2:3

64 [5] - 6:7, 7:11, 7:20, 8:1, 15:16
65 [1] - 3:25
6th [1] - 20:9

**8**

856 [1] - 1:22

**9**

906-8171 [1] - 1:22

**A**

able [1] - 9:14
above-entitled [1] - 23:20
Actavis [2] - 1:18, 1:19
acting [1] - 9:22
ACTION [1] - 1:3
Adam [1] - 3:11
ADAM [1] - 1:13
additional [1] - 5:18
address [1] - 11:18
addressed [1] - 22:4
addressing [4] - 3:9, 3:15, 3:20, 5:19
administrative [1] - 9:24
afternoon [2] - 3:11, 5:20
agenda [6] - 3:19, 3:23, 3:24, 4:24, 17:12, 20:23
agree [6] - 6:24, 13:19, 14:8, 19:9
agreed [7] - 7:4, 8:14, 9:9, 10:17, 12:23, 14:2, 14:24
agreement [6] - 6:4, 9:17, 9:21, 10:16, 14:18, 14:20
agreements [10] - 5:1, 6:3, 6:13, 7:4, 8:2, 9:14, 11:2, 11:16, 12:22, 13:2
aided [1] - 1:24
Albero [4] - 21:9, 22:15, 22:18, 23:8
ALBERO [6] - 2:6, 21:9, 22:9, 22:13, 22:21, 23:4
allocate [1] - 9:17
allocating [1] - 9:25
allocations [1] - 13:14
ALSO [1] - 2:10
AmerisourceBergen [1] - 2:4
Andrew [1] - 21:9

ANDREW [1] - 2:6
Ann [3] - 3:3, 23:15, 23:22
ann [1] - 1:21
AnnMarie@AMreporting.com [1] - 1:22
answered [1] - 20:17
anyway [1] - 14:6
appear [1] - 22:7
apply [1] - 5:9
appreciate [2] - 22:13, 23:2
apprised [2] - 8:2, 9:14
appropriate [4] - 5:17, 16:10, 17:23, 18:1
April [2] - 21:12, 22:19
area [1] - 10:5
argued [1] - 14:4
argument [5] - 16:17, 18:23, 18:24, 19:8, 20:12
arguments [1] - 16:25
articulated [1] - 11:25
articulation [1] - 11:5
assert [1] - 21:4
assume [1] - 8:14
Atlanta [1] - 1:17
attached [2] - 21:25, 22:1
attention [1] - 14:18
attorney's [1] - 9:22
AvKARE [1] - 2:8
avoid [4] - 21:23, 22:6, 21:19, 23:10, 23:12
aware [3] - 15:2, 21:19, 23:10, 23:12

**B**

BEASGAARD [1] - 2:6
becomes [1] - 19:16
beginning [1] - 15:14
behalf [2] - 3:10, 3:15
BERNE [1] - 2:2
between [5] - 8:3, 8:7, 11:2, 13:2, 13:14
beyond [2] - 6:10, 12:17
bigger [1] - 6:16
bit [1] - 5:3
blind [1] - 23:1
board [1] - 4:11
boils [1] - 5:25
brief [17] - 3:8, 5:4, 12:4, 16:13, 17:1, 17:4, 17:15, 17:17, 17:24, 18:12, 18:25, 19:10, 19:14, 19:25, 20:9, 22:2

briefed [4] - 7:17, 17:8, 17:9
briefing [7] - 4:9, 5:18, 12:6, 15:24, 17:13, 19:19, 20:11
briefs [2] - 16:10, 20:16
bring [1] - 14:17
BRISBOIS [1] - 2:6
Brisbois [1] - 21:10
broad [1] - 17:14
broadening [1] - 15:18
broadly [1] - 6:8
Building [1] - 1:7
built [1] - 12:18

**C**

calendar [1] - 18:3
Camber [2] - 2:8, 21:10
Camden [1] - 1:8
candidly [2] - 15:2, 18:22
carved [1] - 10:6
case [5] - 6:11, 10:2, 15:7, 21:17, 22:23
CASE [1] - 1:5
cases [1] - 21:18
CCR [1] - 23:22
certainly [6] - 6:16, 10:6, 15:22, 19:17, 22:17
certify [1] - 23:19
cetera [4] - 4:21, 8:3, 9:21, 12:23
chain [1] - 13:5
check [1] - 13:6
Cincinnati [1] - 2:4
CIVIL [1] - 1:3
claim [4] - 13:8, 14:5, 14:6, 17:10
claims [2] - 10:2, 17:14
clarification [6] - 3:25, 4:4, 4:10, 4:15, 5:24, 12:10
clarify [1] - 4:15
clear [1] - 4:16
clearly [2] - 7:25, 13:13
Clerk [1] - 2:12
CLERK [5] - 18:16, 22:15, 22:18, 22:25, 23:6
clients [1] - 9:23
CMC [1] - 18:18
Cohen [1] - 1:7
colleagues [3] - 6:20,

9:7, 18:11
collectively [1] - 9:16
comfortable [1] - 5:17
coming [1] - 13:12
Commencing [1] - 1:9
common [2] - 10:23, 12:13
compelling [1] - 14:4
completely [2] - 6:13, 10:25
complicated [1] - 15:14
complied [1] - 5:10
computer [1] - 1:24
computer-aided [1] - 1:24
concern [1] - 10:22
concerned [2] - 9:23, 11:4
concerns [2] - 12:7, 20:23
concluded [2] - 23:16, 23:17
conclusion [1] - 16:19
confer [1] - 22:3
conference [8] - 3:7, 3:8, 16:17, 16:19, 16:20, 18:5, 20:5, 22:2
CONFERENCE [1] - 1:5
conferences [1] - 9:20
conferred [1] - 6:18
confers [1] - 4:25
confirmation [2] - 3:5, 8:9
consider [1] - 14:18
consideration [1] - 22:20
consistent [1] - 13:7
context [2] - 8:24, 16:12
Continued [1] - 2:1
controversial [1] - 16:22
conversation [2] - 5:16, 10:4
conveyed [1] - 6:20
Cooper [1] - 1:7
cooperation [1] - 14:10
correct [2] - 21:1, 23:19
cost [1] - 14:21
costs [10] - 8:18, 9:2, 9:17, 10:8, 10:18, 11:6, 11:16, 12:16, 13:19
counsel [3] - 3:20, 9:19, 9:22

**couple** [2] - 3:6, 14:13
**Court** [2] - 1:21, 23:22
**COURT** [1] - 1:1
**court** [2] - 3:1, 3:4
**Court's** [2] - 9:19, 14:17
**Courthouse** [1] - 1:7
**Courtroom** [1] - 2:13
**covered** [1] - 6:24
**cross** [1] - 13:6
**cross-check** [1] - 13:6
**CRR** [1] - 23:22

## D

**damages** [2] - 10:2, 12:15
**date** [4] - 13:22, 18:15, 21:12, 21:14
**Date** [1] - 23:24
**dates** [1] - 20:2
**Daubert** [1] - 4:7
**DAVIS** [1] - 1:16
**days** [1] - 19:12
**deadline** [3] - 20:1, 21:7
**deadlines** [2] - 3:25, 4:11
**deal** [1] - 6:16
**dealing** [1] - 15:17
**decide** [2] - 5:6, 19:22
**decides** [1] - 5:5
**decision** [1] - 15:10
**deeper** [1] - 12:2
**defend** [1] - 10:17
**defendant** [2] - 15:3, 15:4
**defendants** [13] - 4:21, 5:9, 5:21, 6:8, 7:3, 7:12, 8:7, 8:17, 16:3, 16:14, 20:1, 23:13
**Defendants** [3] - 1:18, 2:4, 2:8
**defendants'** [3] - 4:8, 4:25, 16:8
**defending** [1] - 15:4
**defense** [38] - 3:16, 3:23, 4:24, 5:1, 5:19, 6:3, 6:4, 6:10, 6:13, 7:4, 8:2, 8:4, 8:18, 8:22, 9:2, 9:14, 9:25, 10:8, 10:15, 10:18, 11:2, 11:6, 11:12, 11:16, 12:8, 12:13, 12:16, 12:17, 13:18, 13:19, 14:14, 14:16, 14:21, 21:7
**definitely** [1] - 12:2
**demands** [1] - 8:3

**deny** [1] - 17:20
**depositions** [4] - 11:17, 13:15, 13:21, 15:7
**Deputy** [1] - 2:13
**different** [2] - 14:14, 14:23
**differently** [1] - 14:3
**disclose** [1] - 7:3
**disclosed** [5] - 11:20, 12:21, 13:1, 13:9
**disclosure** [1] - 10:23
**discoverable** [1] - 16:3
**discovery** [14] - 6:1, 6:3, 6:10, 6:21, 7:8, 7:16, 7:21, 11:15, 12:13, 12:19, 13:13, 14:15, 15:18
**discretion** [1] - 9:10
**discussing** [1] - 23:9
**discussion** [2] - 8:24, 17:21
**discussions** [1] - 13:23
**dismiss** [1] - 21:16
**dispose** [2] - 5:12, 21:21
**DISTRICT** [2] - 1:1, 1:1
**dividing** [1] - 21:3
**document** [1] - 22:19
**Document** [3] - 22:23, 22:24, 23:4
**done** [8] - 5:14, 6:21, 7:14, 12:11, 14:16, 18:5, 18:12, 19:24
**down** [1] - 5:25
**during** [3] - 11:14, 15:21, 16:19

## E

**early** [1] - 21:13
**East** [1] - 2:7
**effect** [1] - 20:19
**eight** [1] - 19:12
**Eisenhower** [1] - 1:13
**either** [2] - 16:3, 16:16
**eluding** [1] - 10:25
**embark** [1] - 13:23
**endeavored** [1] - 16:23
**enter** [3] - 8:7, 9:3, 10:10
**entered** [4] - 6:7, 7:10, 9:16, 11:11
**entering** [1] - 8:4
**entitled** [2] - 15:20, 23:20

## F

**fact** [3] - 12:16, 15:9, 20:3
**fair** [1] - 7:11
**fees** [1] - 9:22
**few** [1] - 8:12
**fighting** [1] - 13:24
**file** [8] - 4:21, 17:4, 17:24, 18:11, 19:10, 19:13, 19:21, 21:22
**filed** [7] - 5:23, 12:5, 16:13, 17:18, 21:11, 21:12, 22:22
**filing** [1] - 20:23
**filings** [1] - 23:2
**financial** [1] - 9:4
**fine** [1] - 20:13
**first** [3] - 10:21, 11:23, 12:12
**flow** [1] - 10:2
**foregoing** [1] - 23:19
**formal** [1] - 21:22
**forward** [2] - 5:12, 16:20
**frankly** [1] - 5:6
**FREEMAN** [1] - 1:12
**Friday** [2] - 19:11
**full** [1] - 9:7
**fully** [1] - 13:22

## G

**Geoppinger** [17] - 5:21, 5:22, 9:6, 9:12, 9:18, 10:12, 13:15, 14:12, 16:1, 17:11, 17:16, 18:2, 18:17,

18:20, 19:6, 19:9, 19:15
**GEOPPINGER** [13] - 2:3, 5:20, 5:23, 10:14, 14:13, 17:17, 17:23, 18:3, 18:9, 18:21, 19:2, 19:16, 20:21
**Georgia** [1] - 1:17
**great** [1] - 23:7
**Greenberg** [1] - 3:18
**GREENBERG** [1] - 1:16
**group** [1] - 9:19
**guess** [3] - 9:7, 17:3, 17:23
**gun** [3] - 3:5, 3:6, 5:2
**guys** [1] - 11:11

## H

**hand** [4] - 8:20, 12:13
**hands** [1] - 7:6
**head** [1] - 18:4
**hear** [1] - 19:7
**heard** [2] - 9:12, 11:5
**hearing** [1] - 16:25
**held** [1] - 3:1
**hello** [1] - 3:17
**help** [1] - 9:2
**helpful** [1] - 14:7
**Honor** [27] - 3:11, 3:17, 4:4, 5:5, 5:6, 5:11, 5:20, 5:24, 7:10, 8:1, 8:25, 9:9, 10:21, 12:3, 12:16, 14:4, 14:9, 14:13, 17:8, 17:19, 18:9, 18:21, 19:17, 20:13, 20:21, 21:9, 23:11
**HONORABLE** [1] - 1:10
**Honorable** [2] - 2:12, 3:1
**hope** [1] - 5:11
**hopefully** [4] - 3:7, 16:18, 22:6
**hoping** [4] - 5:16, 21:15, 21:20, 21:23

## I

**identified** [1] - 10:4
**implemented** [1] - 8:5
**Inc** [2] - 1:18, 1:19
**inclined** [1] - 12:1
**include** [1] - 6:14
**indemnification** [16] - 4:25, 6:2, 6:9, 6:21, 6:25, 8:2, 8:13, 8:19, 9:25, 11:7, 12:12,

12:14, 12:19, 12:22, 13:18, 14:16
**indemnify** [1] - 8:15
**indemnifying** [5] - 8:10, 8:11, 12:15, 12:16
**indemnity** [4] - 8:22, 12:17, 14:14, 14:19
**individual** [1] - 23:2
**Industries** [1] - 1:18
**information** [28] - 6:2, 6:5, 6:9, 6:12, 6:15, 6:20, 6:22, 7:3, 7:16, 7:20, 10:19, 10:21, 10:23, 10:24, 11:7, 11:8, 11:12, 11:15, 12:8, 13:1, 13:4, 13:7, 13:11, 14:2, 14:8, 14:25, 15:10, 16:2
**initial** [2] - 19:18, 21:12
**instance** [1] - 10:16
**intended** [1] - 4:5
**interest** [1] - 10:23
**interested** [3] - 10:3, 10:5, 15:6
**irrelevant** [2] - 6:14, 7:8
**issue** [16] - 4:16, 5:4, 5:12, 5:19, 7:24, 9:8, 12:4, 15:13, 16:10, 16:15, 16:24, 17:1, 17:5, 19:16, 20:19, 20:25
**issued** [3] - 5:3, 15:16, 16:21
**issues** [3] - 10:13, 15:22, 15:23
**issuing** [2] - 5:17, 16:18
**item** [2] - 4:23, 20:22
**itself** [1] - 10:8

## J

**Jeff** [1] - 5:20
**JEFFREY** [1] - 2:3
**JERSEY** [2] - 1:1
**Jersey** [2] - 1:8, 1:14
**judge** [1] - 23:5
**Judge** [16] - 4:18, 7:24, 7:25, 12:9, 14:9, 17:20, 18:16, 20:20, 21:3, 21:24, 21:25, 22:1, 22:4, 22:5, 22:13, 22:15
**judgment** [2] - 20:24, 21:18
**Judicial** [1] - 2:12

**jumped** [2] - 3:6, 5:2
**jumping** [1] - 3:5
**June** [4] - 4:20, 18:17, 20:4, 20:9

# K

**KATZ** [1] - 1:12
**kind** [4] - 7:5, 11:12, 11:16, 11:17
**knowing** [1] - 15:6
**knowledge** [1] - 9:5
**knows** [1] - 18:4
**Kugler** [10] - 2:12, 7:25, 14:10, 17:20, 21:3, 21:25, 22:1, 22:4, 22:5

# L

**language** [1] - 4:20
**larry** [1] - 2:13
**late** [1] - 18:22
**Law** [1] - 2:12
**LAW** [5] - 18:16, 22:15, 22:18, 22:25, 23:6
**lead** [2] - 9:19, 9:22
**learned** [1] - 8:12
**least** [3] - 12:21, 19:12, 22:12
**left** [1] - 4:7
**less** [2] - 14:25, 15:11
**letter** [11] - 3:19, 3:23, 3:24, 4:24, 17:11, 17:12, 21:21, 22:1, 22:2, 23:5
**letters** [1] - 20:23
**levels** [1] - 13:5
**LEWIS** [1] - 2:6
**Lewis** [1] - 21:10
**liabilities** [5] - 9:4, 10:1, 11:3, 13:14
**LIABILITY** [1] - 1:4
**litigation** [2] - 10:8, 14:11
**LITIGATION** [1] - 1:4
**LLC** [2] - 1:12, 1:18
**LLLP** [1] - 2:2
**LLP** [1] - 1:16
**Lockard** [1] - 3:18
**LOCKARD** [5] - 1:16, 3:17, 4:3, 4:18, 23:12
**look** [2] - 12:2, 22:21
**looking** [1] - 18:3
**looks** [2] - 4:1, 5:2
**LORETTA** [1] - 2:11
**Loretta** [1] - 18:14
**losartan** [1] - 21:18

**Ltd** [1] - 1:18

# M

**MacStravic** [1] - 2:13
**MANAGEMENT** [1] - 1:5
**management** [1] - 21:17
**manufacturer** [2] - 8:10, 8:22
**manufacturers** [1] - 13:16
**Marie** [4] - 1:21, 3:3, 23:15, 23:22
**Master** [5] - 3:2, 3:25, 6:7, 7:11, 7:19
**MASTER** [36] - 1:10, 3:3, 3:13, 3:22, 4:12, 4:14, 4:19, 5:15, 5:22, 7:22, 10:12, 14:12, 15:13, 17:16, 17:22, 17:25, 18:7, 18:14, 18:19, 18:25, 19:5, 19:7, 19:14, 19:25, 20:6, 20:8, 20:11, 20:15, 20:22, 21:6, 22:3, 22:10, 22:14, 22:17, 23:7, 23:14
**masters** [1] - 8:6
**matter** [5] - 5:3, 16:20, 16:23, 22:4, 23:20
**matters** [2] - 3:9, 3:15
**MAZIE** [1] - 1:12
**McKesson** [2] - 8:13, 8:14
**MDL** [4] - 9:18, 9:25, 21:16, 23:2
**mean** [5] - 10:14, 10:22, 13:20, 19:23, 21:22
**mechanical** [1] - 1:23
**mediation** [1] - 14:11
**mediations** [1] - 10:11
**meet** [1] - 4:25
**meets** [1] - 11:13
**Memorial** [3] - 19:4, 19:19, 20:3
**mentioned** [1] - 18:5
**met** [1] - 6:18
**might** [1] - 21:19
**missed** [3] - 4:1, 17:7, 17:15
**Mitchell** [4] - 1:7, 1:21, 3:3, 23:22
**money** [1] - 15:5
**monies** [2] - 7:5, 10:18
**most** [2] - 5:9, 8:9

**motion** [8] - 12:5, 20:23, 21:4, 21:8, 21:11, 21:14, 22:7, 22:19
**motions** [1] - 4:7
**move** [5] - 4:23, 5:12, 14:11, 16:20, 16:23
**MR** [34] - 3:11, 4:13, 5:5, 5:20, 5:23, 7:23, 10:14, 12:9, 14:13, 17:6, 17:17, 17:23, 18:3, 18:9, 18:21, 19:2, 19:3, 19:6, 19:9, 19:16, 19:20, 20:5, 20:7, 20:10, 20:13, 20:20, 20:21, 21:2, 21:9, 22:9, 22:13, 22:21, 23:4, 23:10
**MS** [4] - 3:17, 4:3, 4:18, 23:12
**mutual** [1] - 4:6

# N

**name** [1] - 15:4
**narrowing** [1] - 10:13
**NE** [1] - 1:17
**necessarily** [1] - 4:3
**necessary** [1] - 5:6
**need** [12] - 5:14, 5:18, 6:17, 9:1, 10:10, 11:1, 11:8, 11:22, 16:9, 18:2, 20:12, 20:16
**needs** [1] - 6:25
**negotiate** [1] - 9:5
**negotiated** [1] - 14:15
**negotiation** [1] - 8:5
**negotiations** [4] - 8:8, 9:3, 10:11, 11:7
**NEW** [1] - 1:1
**New** [2] - 1:8, 1:14
**next** [7] - 16:16, 18:4, 18:12, 18:15, 19:10, 20:5, 21:14
**none** [3] - 13:3, 13:25, 15:1
**noted** [1] - 6:13
**nothing** [4] - 11:3, 14:4, 23:10, 23:12
**nuanced** [1] - 16:7
**NUMBER** [1] - 1:3
**number** [7] - 3:21, 3:24, 4:23, 12:19, 12:20, 22:19
**Number** [1] - 3:25

# O

**object** [2] - 7:6, 12:20

**objected** [2] - 13:3, 14:1
**obviously** [3] - 8:19, 18:10, 18:12
**office** [1] - 3:19
**Official** [1] - 1:21
**Ohio** [1] - 2:4
**one** [11] - 9:7, 9:17, 10:5, 10:7, 12:19, 13:6, 14:14, 16:21, 17:18, 19:18, 22:12
**ones** [1] - 5:23
**open** [1] - 3:1
**opening** [1] - 17:24
**opportunity** [6] - 11:18, 11:23, 12:4, 14:17, 16:14, 19:18
**oppose** [1] - 19:22
**opposition** [1] - 17:4
**oral** [2] - 16:17, 20:12
**Order** [4] - 3:25, 6:7, 7:11, 7:19
**order** [18] - 4:2, 4:4, 4:7, 4:15, 4:16, 5:3, 9:10, 9:19, 10:9, 11:11, 11:13, 11:21, 11:22, 14:9, 16:10, 16:21, 17:20, 20:19
**ordered** [3] - 5:7, 9:1, 10:9
**orders** [1] - 21:17
**outside** [1] - 16:4

# P

**p.m** [3] - 1:9, 3:2, 23:17
**page** [1] - 10:15
**paid** [2] - 14:22, 15:6
**Parkway** [1] - 1:13
**part** [7] - 7:21, 8:9, 8:16, 8:19, 12:14, 12:19, 13:4
**particular** [1] - 6:11
**parties** [5] - 4:5, 8:3, 11:2, 13:14, 14:1
**pay** [6] - 7:4, 10:1, 10:7, 10:18, 13:19, 14:22
**paying** [5] - 9:2, 10:18, 11:3, 13:18, 15:5
**Pennsylvania** [1] - 2:7
**per** [2] - 8:15, 9:19
**percentage** [1] - 14:21
**percentages** [3] - 7:5, 10:18, 15:5
**perhaps** [2] - 6:23, 15:18
**perspective** [2] -

15:12, 16:8
**Pharma** [1] - 1:19
**Pharmaceutical** [1] - 1:18
**Pharmaceuticals** [2] - 1:18, 21:10
**phase** [4] - 6:11, 6:22, 8:5, 14:11
**phrase** [1] - 9:7
**Piedmont** [1] - 1:17
**place** [3] - 5:8, 11:21, 12:6
**plaintiff** [2] - 20:24, 21:19
**plaintiffs** [18] - 3:10, 3:12, 4:21, 6:19, 6:23, 7:2, 11:1, 11:4, 11:8, 11:14, 11:22, 12:4, 14:19, 15:19, 16:12, 18:23, 20:4, 23:10
**Plaintiffs** [1] - 1:14
**plaintiffs'** [2] - 4:8, 16:6
**point** [3] - 3:24, 7:10, 19:10
**points** [2] - 3:20, 14:13
**portion** [1] - 4:8
**position** [1] - 7:18
**potentially** [1] - 6:14
**premature** [2] - 21:16, 22:7
**prepared** [3] - 4:1, 15:21, 16:18
**present** [1] - 13:22
**PRESENT** [1] - 2:10
**presumably** [1] - 13:9
**previously** [1] - 7:21
**privilege** [10] - 12:7, 12:24, 13:8, 14:5, 14:6, 15:1, 15:22, 15:23, 17:10, 17:14
**privileged** [9] - 6:6, 6:14, 7:9, 10:22, 10:23, 10:24, 15:1, 15:11, 16:4
**pro** [2] - 20:24, 21:19
**problem** [2] - 17:6, 19:3
**problematic** [1] - 16:7
**problems** [1] - 17:14
**proceedings** [1] - 23:20
**PROCEEDINGS** [1] - 3:1
**Proceedings** [2] - 1:23, 23:17
**process** [2] - 5:8, 7:12
**produced** [1] - 1:24

PRODUCTS [1] - 1:4
promptly [2] - 16:16, 16:21
proposed [1] - 4:20
provide [4] - 7:15, 7:20, 13:10, 14:2
provided [5] - 6:1, 7:13, 8:19, 13:3, 13:4
provides [1] - 11:8
providing [1] - 7:7
purpose [2] - 13:4, 13:21
purposes [1] - 16:18
pushed [2] - 21:13, 21:14
put [4] - 5:8, 8:1, 12:6, 17:12

**Q**

questions [3] - 13:17, 20:16

**R**

rather [1] - 5:12
RDR [1] - 23:22
RE [1] - 1:4
reach [1] - 16:10
read [3] - 6:7, 6:11, 20:15
real [1] - 10:22
realized [1] - 9:13
really [5] - 5:8, 5:13, 17:10, 17:13, 23:2
reason [1] - 14:2
reasons [2] - 11:25, 16:21
recess [1] - 17:1
record [2] - 7:25, 23:20
recorded [1] - 1:23
referred [2] - 4:8, 15:8
referring [1] - 17:17
regarding [2] - 4:25, 6:21
rejections [1] - 8:3
related [1] - 22:23
relationships [1] - 8:6
relatively [1] - 3:8
relevance [7] - 6:5, 10:25, 12:7, 15:22, 16:4, 17:9, 17:14
relevant [3] - 13:13, 14:25, 15:11
reluctant [1] - 15:24
remains [1] - 8:14
replies [1] - 4:6
reply [7] - 16:14, 18:23, 19:16, 20:4,

20:8, 22:6, 22:11
replying [1] - 12:5
reporter [1] - 3:4
Reporter [1] - 1:21
Reporter/ Transcriber [1] - 23:22
represent [1] - 21:10
request [4] - 5:24, 7:16, 8:15, 19:23
requested [5] - 6:10, 7:8, 8:13, 8:21, 14:9
requests [4] - 12:13, 12:22, 16:6, 16:7
require [4] - 6:8, 6:11, 6:12, 7:3
required [1] - 11:24
requires [2] - 7:15, 7:20
requiring [3] - 7:12, 16:5
resolve [1] - 15:25
resolved [1] - 16:15
respect [1] - 12:8
respond [6] - 12:10, 16:5, 18:23, 19:13, 21:7, 21:8
responded [1] - 6:1
response [4] - 16:12, 21:12, 21:22, 22:6
responses [3] - 4:6, 4:22, 15:18
responsibility [1] - 10:1
responsible [1] - 9:4
resting [1] - 17:12
result [1] - 9:24
RET [1] - 1:10
Ret [1] - 3:2
retailer [6] - 8:11, 8:21, 9:2, 10:7, 10:17
retailers [8] - 8:12, 8:15, 9:3, 12:20, 13:1, 13:2, 13:3, 13:9, 13:16
returnable [1] - 21:13
revised [1] - 16:6
ripe [2] - 21:5, 21:17
RMR [1] - 23:22
Road [2] - 1:17, 2:7
road [1] - 11:13
Robert [1] - 2:12
Roseland [1] - 1:14
rubber [1] - 11:13
rule [2] - 15:21, 16:19
Rule [1] - 17:18
rules [1] - 21:17
ruling [4] - 5:17,

16:10, 16:18, 16:24
running [1] - 19:4

**S**

satisfactory [1] - 22:5
schedule [4] - 12:6, 15:24, 16:17, 20:18
scope [1] - 16:4
se [2] - 20:24, 21:19
second [1] - 10:25
secondly [1] - 14:24
see [3] - 9:8, 16:9, 20:16
seek [1] - 4:10
seeking [1] - 15:19
semantic [2] - 7:24, 8:24
sense [2] - 4:13, 9:10
sensitive [1] - 20:3
sent [2] - 3:19, 17:21
set [2] - 8:23, 15:23
settlement [3] - 8:5, 8:6, 11:7
seven [1] - 19:12
shall [1] - 4:21
share [1] - 15:3
shared [1] - 9:22
shortly [1] - 17:1
side [1] - 8:4
significant [1] - 12:7
simply [1] - 15:17
SLATER [19] - 1:12, 1:13, 3:11, 4:13, 5:5, 7:23, 12:9, 17:6, 19:3, 19:6, 19:9, 19:20, 20:5, 20:7, 20:10, 20:13, 20:20, 21:2, 23:10
Slater [3] - 3:11, 3:14, 4:12, 5:4, 6:23, 7:22, 15:3, 16:9, 17:3
Slater's [1] - 10:16
SMITH [2] - 2:6, 2:11
SMO [2] - 8:1, 15:16
someone [1] - 13:19
sooner [1] - 16:17
sorry [1] - 23:4
sort [2] - 9:16, 21:20
speaks [1] - 9:20
special [2] - 8:6, 13:25
SPECIAL [36] - 1:10, 3:3, 3:13, 3:22, 4:12, 4:14, 4:19, 5:15, 5:22, 7:22, 10:12, 14:12, 15:13, 17:16, 17:22, 17:25, 18:7, 18:14, 18:19, 18:25, 19:5, 19:7, 19:14, 19:25, 20:6, 20:8,

20:11, 20:15, 20:22, 21:6, 22:3, 22:10, 22:14, 22:17, 23:7, 23:14
Special [5] - 3:2, 3:25, 6:7, 7:11, 7:19
spend [2] - 11:10, 12:1
spot [1] - 23:2
start [3] - 3:18, 3:23, 22:20
started [1] - 3:7
STATES [1] - 1:1
status [2] - 4:24, 7:1
steal [1] - 9:7
stenography [1] - 1:23
step [1] - 9:24
still [1] - 20:16
stop [2] - 9:6, 9:8
straightforward [1] - 19:21
Street [1] - 2:3
Streets [1] - 1:7
strike [1] - 21:15
stuff [3] - 7:7, 11:16, 11:18
subject [4] - 7:16, 12:12, 13:12, 13:20
submission [1] - 4:6
subsume [1] - 14:20
suggest [2] - 12:3, 16:16
suggested [1] - 18:21
suggestion [1] - 18:8
Suite [3] - 1:17, 2:3, 2:7
summary [2] - 20:23, 21:18
supplement [1] - 7:13
supplementation [3] - 11:14, 15:17, 16:5
supply [1] - 13:5
Swedesboro [1] - 2:7

**T**

teapot [1] - 5:13
technically [1] - 17:20
tempest [1] - 5:13
tendered [1] - 8:18
terms [2] - 5:3, 11:6
Teva [2] - 1:18, 1:18
the Court [9] - 6:7, 11:19, 11:23, 12:1, 17:20, 18:4, 19:22, 21:15, 21:20
thereafter [1] - 17:2
they've [4] - 12:23, 14:1, 14:20, 17:9
thinking [1] - 17:19

Thomas [1] - 3:2
THOMAS [1] - 1:10
throw [1] - 17:3
today [9] - 3:4, 3:18, 3:23, 5:7, 5:12, 5:14, 5:16, 23:9, 23:16
together [1] - 9:18
took [1] - 13:15
top [1] - 18:4
transcript [2] - 1:23, 23:19
transcription [1] - 1:24
Traurig [1] - 3:18
TRAURIG [1] - 1:16
treated [2] - 13:25, 14:3
try [2] - 16:23, 16:24
trying [3] - 6:16, 8:23, 18:5
Tuesday [1] - 19:11
turn [2] - 6:9, 6:12
turning [2] - 5:13, 11:12
two [2] - 12:20, 14:22
type [1] - 10:18

**U**

U.S [1] - 1:7
ULMER [1] - 2:2
uncertainty [1] - 4:17
under [5] - 17:18, 21:16, 21:17, 22:22
UNITED [1] - 1:1
unless [5] - 17:6, 17:12, 17:15, 20:14, 20:25
unresolved [1] - 8:14
up [5] - 10:17, 13:22, 15:23, 21:24
update [1] - 4:24
updated [1] - 6:22
USA [1] - 1:18

**V**

VALSARTAN [1] - 1:4
Vanaskie [2] - 3:2, 22:15
VANASKIE [36] - 1:10, 3:3, 3:13, 3:22, 4:12, 4:14, 4:19, 5:15, 5:22, 7:22, 10:12, 14:12, 15:13, 17:16, 17:22, 17:25, 18:7, 18:14, 18:19, 18:25, 19:5, 19:7, 19:14, 19:25, 20:6, 20:8, 20:11, 20:15, 20:22, 21:6, 22:3, 22:10,

22:14, 22:17, 23:7, 23:14

**various** [2] - 8:3, 8:7
**vehemently** [1] - 7:6
**verbally** [1] - 4:15
**via** [1] - 1:5
**Victoria** [1] - 3:17
**VICTORIA** [1] - 1:16
**VIDEOCONFERENC
E** [1] - 1:5
**Vine** [1] - 2:3

## W

**waived** [3] - 12:25, 14:5, 15:1
**Wayne** [1] - 2:7
**Wednesday** [1] - 18:17
**week** [1] - 19:10
**Weekend** [3] - 19:4, 19:19, 20:3
**whole** [1] - 13:21
**Wholesaler** [1] - 2:4
**wholesaler** [10] - 5:21, 6:8, 7:3, 8:11, 10:17, 15:5, 16:2, 16:7, 16:14, 20:1
**wholesalers** [18] - 6:1, 6:12, 6:18, 7:6, 8:17, 8:25, 9:15, 9:20, 10:7, 12:3, 13:2, 13:10, 13:16, 13:24, 14:3, 14:8, 15:2, 17:7
**wholesalers'** [1] - 15:11
**willing** [1] - 6:24
**witnesses** [1] - 11:17
**wondering** [1] - 9:15
**worried** [1] - 9:15
**write** [2] - 21:20, 21:25
**writing** [1] - 17:1
**wrote** [1] - 22:1

## Y

**yesterday** [1] - 17:21

## Z

**ZHP** [1] - 9:1
**ZOOM** [1] - 1:5