**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge |

**DEFENDANTS' (PROPOSED) SURREPLY
IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION OF CONSUMER ECONOMIC LOSS CLAIMS[1]**

---

[1] Unless otherwise indicated, capitalized terms in this brief have the same meaning as in Plaintiffs' Motion for Class Certification [Dkt. 1747], Plaintiffs' Memorandum of Law in Support of Their Motion for Class Certification of Consumer Economic Loss Claims ("Pl. EL Br.") [Dkt. 1748], Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification of Consumer Economic Loss Claims ("Def. EL Opp.") [Dkt. 2008], and Plaintiffs' Reply in Further Support of Their Motion for Class Certification of Consumer Economic Loss Claims (the "Reply" or "Pl. EL Reply") [Dkt. 2057].

## <u>INTRODUCTION</u>

Plaintiffs' Reply effectively abandons their original Trial Plan, which called for a "single trial" before a "single jury" to try "all of the Classes' claims." Plaintiffs fail, however, to describe what they propose in its place. Instead, they urge the Court to certify their Classes now and figure out the rest later through "imaginative solutions" and the unexplained use of various "manageability tools." Plaintiffs further propose an unprecedented new legal standard for state law "groupings," while papering over innumerable variations in state law with the thinnest of analyses and inaccurate citations. As discussed below, Plaintiffs' new arguments and authorities do not hold up to scrutiny, and fail to rescue their incurably deficient class certification motion.[2]

## <u>ARGUMENT</u>

### A.    Plaintiffs Have Abandoned Their Unworkable Trial Plan But Offer No Alternative.

Plaintiffs' opening brief and accompanying Trial Plan explicitly proposed "a ***single*** trial" with "a ***single*** jury" to decide all legal claims for all "state law groupings[.]" (Pl. EL Br. 109, Ex. 193 at 1-3 (emphases added)). Plaintiffs did not mince words, declaring: "***[A]ll of the Classes' claims*** can be ***jointly prosecuted in a single trial*** with a jury making findings on the legal claims, and the Court making findings on the equitable claims." (Pl. EL Br., Ex. 193 at 3 (emphases added)). Having read Defendants' brief, Plaintiffs now effectively concede: (1) the Court lacks jurisdiction over a majority of their subclasses; and (2) there is no way to manageably instruct one jury on the claims of 93 consumer subclasses (and 21 TPP subclasses) under five separate theories and 52 jurisdictions' individual laws and distinct jury instructions. (*See* Def. EL Opp. 64-69, App. K-N). Without a workable trial plan, Plaintiffs pivot in their Reply, accusing Defendants of

---

[2]    This Surreply addresses the most egregious of Plaintiffs' errors in their Reply. Defendants request oral argument to provide the Court with a more complete discussion of the numerous grounds preventing certification of Plaintiffs' proposed consumer economic loss classes.

somehow pushing them to propose an unmanageable trial, throwing out a number of unformed or half-formed ideas for alternative trials, and insisting they need no trial plan at all yet offering no alternative to satisfy their burden of proof. Plaintiffs' arguments should all be rejected.

First, Plaintiffs mischaracterize Defendants' March 9, 2020 submission [Dkt. 393] advocating an "omnibus class certification motion." (Pl. EL Reply 1, 3-4). The only issue before the Court in March 2020 was whether to consider class certification in separate "tracks" by individual Defendant [Dkt. 392] or to address Plaintiffs' claims against all Defendants together for purposes of deciding class certification [Dkt. 393]. The Court ultimately chose the omnibus approach, which remains the more efficient vehicle to address class certification because Plaintiffs fail to satisfy Rule 23 as to the various groups of defendants for essentially the same reasons. Nowhere did Defendants suggest that a joint trial of multiple types of defendants, 93 consumer subclasses and 21 TPP subclasses would be manageable or otherwise satisfy Rule 23.

Second, Plaintiffs urge the Court to "devise imaginative solutions" using "manageability tools" (Pl. EL Reply 5-9), but offer no such solutions. In other words, Plaintiffs suggest that the Court kick the can down the road. But it is Plaintiffs' burden to propose a manageable and administratively feasible plan that comports with Rule 23, and "[s]uch assurances that a party 'intends or plans to meet the requirements' are insufficient to satisfy Rule 23." *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 (3d Cir. 2013) (quoting *In re Hydrogen Peroxide*, 552 F.3d 305, 318 (3d Cir. 2008)). If Plaintiffs had a manageable class action proposal, it should have been included in their opening brief; the fact that they could not even come up with a workable plan in their Reply speaks volumes. Asking the Court "to certify this class on the basis of mere promises that a manageable litigation plan can be designed … as the litigation progresses" does not satisfy Plaintiffs' "burden of designing a workable plan for trial … prior to class certification." *Chin v.*

*Chrysler Corp.*, 182 F.R.D. 448, 458 (D.N.J. 1998).

Third, Plaintiffs' outdated authorities do not support certification. *In re Visa Check/ MasterMoney Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001), involved only federal antitrust claims and disfavored denying certification where, unlike the innumerable problems in this case, the "sole" manageability issue there was "the necessity for individualized damages determinations." *Id.* at 140-41. *In re Copley Pharm., Inc.*, 158 F.R.D. 485 (D. Wyo. 1994), has been repeatedly criticized and limited by courts around the country because the *Copley* court did not sufficiently consider state-law variations, and in any event, that court only certified some elements of the plaintiffs' claims and left the rest for individual trials.[3] *In re School Asbestos Litigation*, 789 F.2d 996 (3d Cir. 1986), affirmed the certification of a narrow class despite expressing "misgivings on manageability" because of "the highly unusual nature of asbestos litigation," *id.* at 999-1001, 1007, 1011, and has been repeatedly rejected in non-asbestos cases.[4] The three *In re Motor Fuel Temperature Sales Practices Litigation* cases involved the diametric

---

[3] *See, e.g.*, *Dent v. Nat'l Football League*, No. C 14-02324 WHA, 2021 WL 3885954, at *10 (N.D. Cal. Aug. 31, 2021) (disagreeing with *Copley* "that 'the standard for ordinary negligence does not significantly differ throughout the country[,]'" and finding that the "trial of plaintiffs' proposed nationwide negligence class implicating the law of at least 23 different states would become a sprawling train-wreck") (citation omitted); *Patton v. Topps Meat Co., LLC*, No. 07-CV-00654 S M, 2010 WL 9432381, at *1 (W.D.N.Y. May 27, 2010) (denying class certification in case involving contaminated meat; *Copley* is "readily distinguishable" because it "predat[ed] *Amchem* and only certif[ied] several common threshold issues, but not causation and damages").

[4] *See, e.g.*, *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 369 & n.2 (N.D. Ill. 1998) (denying class certification of pharmaceutical products class action where "variation in state laws would make it difficult, if not impossible, to craft comprehensible jury instructions," and finding that *In re School Asbestos* "hardly constitutes a ringing endorsement of the practice" given the Third Circuit's misgivings on manageability); *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1304 (7th Cir. 1995) (decertifying a class action and finding *In re School Asbestos* unpersuasive because "[t]he number of asbestos cases was so great as to exert a well-nigh irresistible pressure to bend the normal rules"); *Pryor v. Nat'l Collegiate Athletic Ass'n*, No. CIV.A. 00-3242, 2004 WL 1207642, at *4 (E.D. Pa. Mar. 4, 2004), opinion modified on denial of reconsideration, 2004 WL 1472797 (E.D. Pa. Apr. 6, 2004) (finding *In re School Asbestos* unpersuasive where "[t]he litigation involved in this case is not comparable to the asbestos litigation").

3

opposite of what Plaintiffs propose here—discrete partial certifications of single-state classes against individual defendants based on state-specific analyses. *See* 271 F.R.D. 221, 237-38 (D. Kan. 2010) (certifying Kansas-only class as to liability and injunctive aspects of plaintiffs' claims); 279 F.R.D. 598 (D. Kan. 2012) (denying decertification of same); 292 F.R.D. 652 (D. Kan. 2013) (certifying California-only classes as to liability and injunctive aspects of plaintiffs' claims).

**B.    Plaintiffs' Revised State-Law "Groupings" Do Not Cure The Material Legal Or Factual Variations Within Their Original Proposed Subclasses.**

Plaintiffs also attempt in their Reply to cobble together a three-part standard for state law "groupings" based on a handful of cherry-picked phrases from two cases approving nationwide ***settlement*** classes, *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 301 (3d Cir. 2011), and *In re Warfarin*, 391 F.3d 516, 529 (3d Cir. 2004), and a third case ***denying*** certification of multi-state groupings, *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175 (3d Cir. 2014). (Pl. EL Reply 20-21). According to Plaintiffs, the Court must decide whether Plaintiffs' groupings: (1) present "insuperable" obstacles that render class litigation unmanageable; (2) present a "workable solution" to state law variations; and (3) are based on a "predictable pattern" within a "broad constellation" of laws. (*Id.*). Again, none of this was addressed in Plaintiffs' opening brief, and these belated arguments are contrary to Third Circuit law.

Between them, *Sullivan*, *In re Warfarin*, and *Grandalski* do contain the words "insuperable," "workable solution," and "predictable pattern,"[5] but all three cases use the phrases to distinguish a ***settlement class*** where state law variations are irrelevant—because there is no need for a manageable trial—from a ***litigation class*** where such variations preclude class certification. *See Sullivan*, 667 F.3d at 303 (quoting *In re Warfarin* and *Amchem* and explaining that variations

---

[5] The quoted phrase "broad constellation" is not found in any of the three decisions, and Defendants have been unable to identify the source of this putative quotation.

4

in state law will not defeat "settlement-only class certification" because the court need not inquire whether the case "would present intractable management problems," a "key" distinction from "'the types of insuperable obstacles' that could render class litigation unmanageable"); *In re Warfarin*, 391 F.3d at 529 (holding that "variations in state laws" are "irrelevant to certification of a settlement class"); *Grandalski*, 767 F.3d at 179 (observing that *Sullivan* "concerned settlement classes, which do not pose the types of management problems that can arise" in litigation classes).

The Third Circuit addressed the actual criteria for state law groupings in *Grandalski*, agreeing with the district court that the proponent must provide an "in-depth treatment" demonstrating, *inter alia*, how the claims could be proven under the "varying elements" of different states' laws, how a given grouping "would apply to the facts and issues presented by this case," and how "the jury could be charged in some coherent manner relative to the proposed grouping." 767 F.3d at 183. Contrary to the Reply (Pl. EL Reply 20), *Grandalski* also expressly adopted *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004), which recognizes that "plaintiffs face a significant burden to demonstrate the grouping is a workable solution." 767 F.3d at 183 (citing *Klay* and recognizing it was abrogated "on other grounds"). As this District has repeatedly found, Plaintiffs must "explain[] how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the 50 states while not overwhelming jurors[.]" *Chin*, 182 F.R.D. at 458 (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 349 (D.N.J. 1997)).

Here, Plaintiffs cannot even satisfy their own invented standard derived from settlement classes, much less any actual legal standard for state law groupings.

First, Plaintiffs' breach of express warranty groupings admittedly intermingle states that have different statutes of limitations, requirements on manifestation of defect, reliance

5

requirements, privity and pre-suit notice requirements, standards to form an express warranty, and views on "zero-value" theories of injury. (Def. EL Opp. 22-29, 41-49, App. F). Plaintiffs' Reply makes little effort to explain how these differences could be overcome in a single trial or coherently explained to a jury. (*See* Pl. EL Reply 27-30). For example, Plaintiffs simply assert that statutes of limitations are a "non-starter" due to "nationwide tolling." (Pl. EL Reply 28). But only one state (Florida) even has a discovery rule for breach of warranty; the rest accrue upon tender, not discovery or recall, and in many instances would have expired long before the filing of any lawsuit. (Def. EL Opp., App. F). Likewise, for manifestation of defect, Plaintiffs assert that "literally all" the VCDs were adulterated. (Pl. EL Reply 28). But that argument ignores enormous variations in impurity levels, including many VCDs with no impurities or impurities within FDA allowances. (Def. EL Opp. 8-10). Plaintiffs simply ignore states requiring individual proof of actual reliance. (Def. EL Opp. 25, App. F). Plaintiffs also accuse Defendants of erring in parsing the law with respect to privity and pre-suit notice, but a comparison of the parties' authorities demonstrates it is Plaintiffs who are misstating the applicable legal standards. *See* Appendix P, attached hereto.

Second, Plaintiffs' breach of implied warranty groupings similarly combine states with different statutes of limitations, definitions of merchantability, requirements on manifestation of defect, privity and pre-suit notice requirements, and views on "zero-value" theories of injury. (Def. EL Opp. 22-29, 41-49, App. G). Plaintiffs' Reply again barely touches on these differences. (*See* Pl. EL Reply 31-32). Instead, they treat merchantability as a *fait accompli* based on Plaintiffs' erroneous insistence that all recalled VCDs "were literally non-merchantable in every state[.]" (Pl. EL Reply 24). But Plaintiffs cannot grant themselves a directed verdict on merchantability, and even if they could, their Reply ignores numerous other legal variations, including several identified by Defendants that Plaintiffs again erroneously criticize. *See* App. P.

Third, Plaintiffs' fraud groupings mix states with different burdens of proof, scienter requirements, reliance requirements, materiality requirements, and measures of damages. (Def. EL Opp. 30-32, 49-55, App. H). Plaintiffs' Reply does not dispute most of these variations;[6] it simply asserts that the jury "can be tasked with sorting out" the differences, without even attempting to explain how the variations can be addressed with common evidence or how a jury "tasked" with unraveling the distinct fraud laws of 52 jurisdictions can be coherently instructed on those differences. Indeed, *Todd v. XOOM Energy Maryland, LLC*, No. GJH-15-154, 2020 WL 4784767 (D. Md. Aug. 18, 2020), cited by Plaintiffs, demonstrates why Plaintiffs' fraud claims cannot be certified; there, the court ***denied*** certification of an 18-state common law fraud class because individualized questions of reliance and causation predominated. *Id*. at *14-15.

Fourth, Plaintiffs' consumer protection groupings mingle states that disallow class actions,[7] as well as states with different notice requirements, scienter requirements, reliance and causation requirements, definitions of prohibited acts, definitions of consumers, and statutes of limitations. (Def. EL Opp. 32-38, 49-55, App. I). Plaintiffs' Reply again breezes past these differences (Pl. EL Reply 33-35), asserting that FTC Guidance overcomes state law differences and that reliance may be proven classwide, without even attempting to discuss the innumerable state-by-state material variations on prohibited acts, reliance, and causation. (*Id*. 33-34; *compare* Def. EL Opp. 32-38,

---

[6] Plaintiffs only discuss the element of scienter. (Pl. EL Reply 32-33). They admit some of their errors on scienter and "reassign" states to different groupings, dismiss others as "different wording," and dispute a handful as "just wrong." Again, it is Plaintiffs that are wrong. *See* App. P.

[7] Plaintiffs urge this Court to follow the minority view expressed in *Amato v. Subaru of America*, No. 18-16118, 2021 WL 2154976, at *7 (D.N.J. May 27, 2021), and to hold that Rule 23 displaces all state law exclusions of class actions. (Pl. EL Reply 33). The majority view holds to the contrary that state law class exclusions are bound up with the states' substantive rights and thus are not supplanted by Rule 23. *See, e.g.*, *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 414-17 (D.N.J. 2018); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 388 (D.N.J. 2018) (noting "the majority of district and circuit courts" have followed Justice Stevens' *Shady Grove* concurrence).

49-55, App. I). The only topic on which Plaintiffs attempt a substantive discussion is scienter, where they assert Defendants are "flat wrong." (Pl. EL Reply 34-35). Again, however, it is Plaintiffs that take liberties with state law. *See* App. P.

Finally, with respect to unjust enrichment, Plaintiffs' groupings ignore widespread state-by-state variations on whether wrongful acts are required, whether the enrichment must have come directly from the plaintiff to the defendant, and whether an adequate remedy at law bars the claim. (Def. EL Opp. 38-40, 56, App. J). Plaintiffs do not grapple with these differences at all; they simply dismiss them as "linguistic judo" and insist that the groupings must be correct because all involve the same ultimate responsibility "to weigh all of the circumstances." (Pl. EL Reply 35). That is a boundaryless grouping; it is akin to saying variations do not matter because the jury must ultimately determine facts under each state's law.

In short, Plaintiffs' Reply runs away from the arguments in their opening brief, instead of defending them—and their new arguments are no more persuasive than their original ones. For all of these reasons, their motion should be denied.

Dated: May 20, 2022                         Respectfully Submitted:

                                            By: */s/ Gregory E. Ostfeld*
                                                Gregory E. Ostfeld

                                            GREENBERG TRAURIG, LLP
                                            Gregory E. Ostfeld
                                            Tiffany M. Andras
                                            77 West Wacker Dr., Ste. 3100
                                            Chicago, Illinois 60601
                                            Tel.: (312) 456-8400
                                            Fax: (312) 456-8435
                                            OstfeldG@gtlaw.com
                                            AndrasT@gtlaw.com

                                            GREENBERG TRAURIG, LLP
                                            Lori G. Cohen
                                            Victoria Davis Lockard

Steven M. Harkins
Terminus 200
3333 Piedmont Road, N.E., Ste. 2500
Atlanta, Georgia 30305
Tel.: (678) 553-2100
Fax: (678) 553-2386
CohenL@gtlaw.com
LockardV@gtlaw.com
HarkinsS@gtlaw.com

GREENBERG TRAURIG, LLP
Brian H. Rubenstein
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania
Tel: (215) 988-7864
Fax: (214) 689-4419
rubensteinb@gtlaw.com

> *Attorneys for Teva Pharmaceuticals*
> *USA, Inc., Teva Pharmaceutical Industries*
> *Ltd., Actavis Pharma, Inc., and Actavis LLC*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Jessica D. Miller, *Liaison Counsel for Manufacturer Defendants*
Nina R. Rose
1440 New York Ave., N.W.
Washington, D.C. 20005
Tel.: (202) 371-7000
Fax: (202) 661-0525
jessica.miller@skadden.com
nina.rose@skadden.com

> *Attorneys for Zhejiang Huahai Pharmaceutical*
> *Co, Ltd., Huahai U.S., Inc., Prinston*
> *Pharmaceutical Inc., and Solco*
> *Healthcare US, LLC*

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
Clem C. Trischler
Jason M. Reefer
Frank H. Stoy
38th Floor, One Oxford Centre Pittsburgh,
Pennsylvania 15219
Tel.: (412) 263-2000

9

Fax: (412) 263-2001
cct@pietragallo.com
jmr@pietragallo.com
fhs@pietragallo.com

*Attorneys for Mylan Laboratories, Ltd. and
Mylan Pharmaceuticals, Inc.*

KIRKLAND & ELLIS LLP
Devora W. Allon
Alexia R. Brancato
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-5967
Fax: (212) 446-6460 devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals Ltd.
and Torrent Pharma Inc.*

MORGAN, LEWIS & BOCKIUS LLP
John P. Lavelle, Jr.
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
John.lavelle@morganlewis.com

John K. Gisleson
One Oxford Centre, Thirty-second Floor
Pittsburgh, Pennsylvania 15219
Tel.: (412) 560-3300
Fax: (412) 560-7001
John.gisleson@morganlewis.com

*Attorneys for Aurobindo Pharma Ltd.,
Aurobindo Pharma USA, Inc., and Aurolife
Pharma LLC*

LEWIS BRISBOIS BISGAARD & SMITH LLP
Walter H. Swayze, III
Andrew F. Albero
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Tel.: (215) 977-4100
Fax: (215) 977-4101

Pete.Swayze@lewisbrisbois.com
Andrew.Albero@lewisbrisbois.com

*Attorneys for Camber Pharmaceuticals, Inc.*
*and The Kroger Co.*

HILL WALLACK LLP
Eric I. Abraham
William P. Murtha
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
Tel..: (609) 734-6358
Fax: (609) 452-1888
eabraham@hillwallack.com
wmurtha@hillwallack.com

*Attorneys for Hetero Drugs, Ltd. and*
*Hetero Labs Ltd.*

HARDIN KUNDLA MCKEON & POLETTO
Janet L. Poletto, Esq.
Robert E. Blanton, Jr., Esq.
673 Morris Ave.
Springfield, New Jersey 07081
Tel.: (973) 912-5222
Fax: (973) 912-9212
jpoletto@hkmpp.com
rblanton@hkmpp.com

*Attorneys for Hetero USA Inc.*

BARNES & THORNBURG LLP
Sarah E. Johnston, *Liaison Counsel for Retail*
*Pharmacy Defendants*
Kristen L. Richer
2029 Century Park East
Suite 300
Los Angeles, California 90067
Tel.: (310) 284-3880
Fax: (310) 284-3894
sarah.johnston@btlaw.com
kristen.richer@btlaw.com

11

Kara Kapke
11 S Meridian St.
Indianapolis, Indiana 46204
Tel. (317) 236-1313
Fax (317) 231-7433
kara.kapke@btlaw.com

*Attorneys for CVS Pharmacy, Inc. (incorrectly named as CVS Health Corporation), Rite Aid Corporation, Walgreen Co. (incorrectly named as Walgreens Co.), and Walmart Inc. (incorrectly named as Walmart Stores, Inc.)*

HUSCH BLACKWELL LLP
Matt Knepper
James Spung
190 Carondelet Plaza
Suite 600
St. Louis, Missouri 63105
Tel.: (314) 480-1500
Fax: (314) 480-1505
Matt.knepper@huschblackwell.com
James.spung@huschblackwell.com

*Attorneys for Express Scripts, Inc.*

DORSEY & WHITNEY LLP
Shevon D.B. Rockett
Roxanna Gonzalez
51 West 52nd Street
New York, New York 10019
Tel.: (212) 415-9357
Fax: (212) 953-7201
rockett.shevon@dorsey.com
gonzalez.roxanna@dorsey.com

*Attorneys for Optum, Inc. and Optum Rx*

BUCHANAN INGERSOLL & ROONEY PC
Jonathan D. Janow
Jason R. Parish
1700 K Street NW
Suite 300
Washington, DC 20006
Tel.: (202) 452-7940
Fax: (202) 452-7989

Jonathan.Janow@bipc.com
Jason.Parish@bipc.com

*Attorneys for Albertson's LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2022, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all

CM/ECF participants in this matter.

*/s/ Gerond J. Lawrence*
Gerond J. Lawrence,
Greenberg Traurig, LLP

## APPENDIX P – COMPETING POSITIONS ON STATE LAW VARIATIONS

### BREACH OF EXPRESS WARRANTY – PRIVITY

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|-------|---------------------|---------------------|------------|
| Arizona | Privity is required to state a claim of breach of express warranty in Arizona. *See Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 578 (1981). The portion of this opinion that plaintiffs cite only applies to ***non***-UCC express warranties. *See Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601 (1981) (the "opinion in *Flory* . . . precludes a U.C.C. warranty claim" where plaintiff "is not in privity with" the defendant). | *Flory v. Silvercrest Indus., Inc.*, 129 Ariz. 574, 580, 633 P.2d 383, 389 (1981) (holding under Arizona law that "[n]o privity of contract [is] required…where the seller is a remote manufacturer). | As discussed in Defendants' prior submission, the portion of *Flory* that plaintiffs cite only applies to ***non***-UCC express warranties. *See Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 601 (1981) (the "opinion in *Flory* . . . precludes a U.C.C. warranty claim" where plaintiff "is not in privity with" the defendant). |

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|-------|---------------------|---------------------|------------|
| Florida | "Florida law is not clear on whether privity is required for express warranty claims." *Badawi v. Brunswick Corp.*, No. 8:21-CV-1825-TPB-AAS, 2022 WL 613807, at *2 (M.D. Fla. Mar. 2, 2022). Some courts have imposed a privity requirement. *Baker v. Brunswick Corp.*, No. 2:17-cv-572-FtM-99MRM, 2018 WL 1947433, at *3-4 (M.D. Fla. Apr. 25, 2018) ("general rule requires privity"). | *Karhu v. Vital Pharm., Inc.*, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9, 2013) (finding that privity was not required because "express warranties … were contained on the packaging [of the pharmaceutical product]… directed toward the end-purchaser"). | Florida courts are **split** as to whether privity is required in cases involving economic losses, with "[t]he general rule requir[ing] privity in order to state an express warranty claim." *Baker v. Brunswick Corp.*, No. 217CV572FTM99MRM, 2018 WL 1947433, at *3 (M.D. Fla. Apr. 25, 2018) ("The Court agrees that it is not clear that privity is always required under Florida law to state a claim for breach of express warranty."); *see also Badawi v. Brunswick Corp.*, No. 8:21-CV-1825-TPB-AAS, 2022 WL 613807, at *2 (M.D. Fla. Mar. 2, 2022) ("Florida law is not clear on whether privity is required for express warranty claims.")  Further, *Karhu* expressly limited its holding to the particular facts of that case.  *See Karhu*, 2013 WL 4047016, at *6 ("Accordingly, ***based on the particular facts of this case***, privity is not required to state a claim for breach of express warranty.") (emphasis added). |

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|---|---|---|---|
| Kentucky | Privity is required in cases alleging economic loss. *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 965-66 (E.D. Ky. 2019).<br><br>Plaintiffs' own authority acknowledges privity is generally required in claims for breach of express warranty and that Kentucky courts have not considered cases involving direct representations to consumers. *See Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 738-740 (W.D. Ky. 2013). | *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 739-40 (W.D. Ky. 2013) ("...an express warranty action can be maintained where alleged written, express warranties were clearly intended for the product's consumers."). | *Simpson* is the more recent decision and recognizes a privity requirement for economic loss. Additionally, as discussed in Defendants' prior submission, *Naiser* acknowledges privity is generally required in claims for breach of express warranty and that Kentucky courts have not considered cases involving direct representations to consumers. *See Naiser*, 975 F. Supp. 2d at 738-740. |
| New York | Privity is not required for **personal injury-based** express warranty claims, but New York courts are split as to whether privity is required for economic loss-based claims. *See Brady v. Anker Innovations Ltd.*, No. 18-CV-11396 (NSR), 2020 WL 158760, at *10 (S.D.N.Y. Jan. 13, 2020). | *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 207 (W.D.N.Y. 2020) ("New York dispensed with the privity requirement for express warranty claims seeking economic damages"). | Plaintiffs are simply citing a case from the other side of the split without acknowledging that New York courts are split on the issue of privity for economic loss-based claims. The *Mancuso* decision acknowledges the split, and only specifically holds privity is not required to sustain an express warranty cause of action "based on product advertising or labeling," while stating it is "not convinced" privity is required for other express warranty claims. 454 F. Supp. 3d at 207. |

3

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|-------|---------------------|---------------------|------------|
| North Dakota | Plaintiffs cite no authority in support of their argument that privity is not required for economic loss claims, and, as one federal court has noted, North Dakota has not yet decided whether to abolish the privity requirement for express warranty claims based on economic losses. *See Falcon for Imp. & Trade Co. v. N. Cent. Commodities, Inc.*, No. CIV. A2-01-138, 2004 WL 224676, at *2 (D.N.D. Jan. 30, 2004). | *Haugen v. Ford Motor Co.*, 219 N.W.2d 462, 466 (N.D. 1974) (holding that under North Dakota law "the lack of privity between a buyer and manufacturer is no defense where … product was sold under its trade name, and…placed the product in the stream of trade"). | Plaintiffs are relying on a 48-year-old case that deals with products liability claims asserting personal injury for products sold under a trade name and advertising "designed to cultivate the ultimate consumer." *Haugen*, 219 N.W.2d at 466. Additionally, the defendant in that case "does not defend on the claim that there is a lack of privity." *Id. Haugen* does not address whether North Dakota has abolished the privity requirement for express warranty claims based on economic losses. |
| Tennessee | Privity is required in the economic loss context. *See Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. Ct. App. 2003); *Memphis-Shelby Cnty. Airport Auth. v. Ill. Valley Paving Co.*, No. 01-3041 B, 2006 WL 3041492, at *2-3 (W.D. Tenn. Oct. 26, 2006). | *First Nat. Bank of Louisville v. Brooks Farms*, 821 S.W.2d 925, 929 (Tenn. 1991) (holding under Tennessee law that the "manufacturer should be liable in this situation" of express warranty claims arising from "commercial losses resulting from a defectively manufactured product."). | Plaintiffs are relying on a commercial loss case in which the manufacturer "carried on an extensive advertising program promoting the sale of its products" to ultimate purchasers, and the purchaser had "relied on the manufacturer's booklets and trade name in making the purchase." *First Nat. Bank of Louisville*, 821 S.W.2d at 928-29. The more recent authority cited by Defendants holds that privity is required in the consumer economic loss context. |

**BREACH OF EXPRESS WARRANTY – PRE-SUIT NOTICE**

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|---|---|---|---|
| District of Columbia | At least one D.C. federal court has held that "separate notice" – besides the filing of a complaint – *is* required" under D.C. Code Ann. § 28:2-607(3)(a). *Wesley Theological Seminary of the United Methodist Church v. U.S. Gypsum Co.*, No. 85-1606, 1988 WL 288978, at *5 (D.D.C. Jan. 5, 1988), *rev'd sub nom. on other grounds Wesley Theological Seminary of the United Methodist Church v. U.S. Gypsum Co.*, 876 F.2d 119 (D.C. Cir. 1989). | *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 464-65 (D.D.C. 1997) (constructive notice satisfies pre-suit notice requirement under D.C. law). | *Witherspoon* simply acknowledged *Wesley Theological Seminary*'s holding that "constructive notice" in the form of "numerous inquiries" to the manufacturer "as to potential health hazards of its asbestos-containing products" coupled with willful failure "to disclose a defect" may suffice to satisfy notice requirement without requiring the plaintiff "to threaten litigation in order to provide notice." *Witherspoon*, 964 F. Supp. at 464. Thus, it still requires some form of notice, just not an affirmative threat of litigation. |
| Florida | Pre-suit notice is required under Florida law. *Lamb v. Graco Children's Prods., Inc.*, No. 4:11-cv-477, 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012). | *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2014 WL 12640371, at *3–4 (M.D. Fla. Aug. 14, 2014) ("Plaintiffs are correct in their assertion that notice is required to be given to the seller, not the manufacturer, under Florida law."). | In *PB Prop. Mgmt.*, the plaintiffs had in fact given notice to the third-party sellers. 2014 WL 12640371, at *4. Thus, it does not dispense with the requirement for individualized notice by each buyer to each seller. |

5

| Hawaii | Relevant authority suggests that pre-suit notice is required under Hawaii law. *See Hawaiian Fishing Co. v. M.D.R. Inc.*, No. 94–15993, 1996 WL 280068, at *1 (9th Cir. May 24, 1996) (interpreting Hawaii law and affirming dismissal where plaintiff "did not provide adequate notice to [defendant] or afford [defendant] the opportunity to repair or replace the defective engine"). | Haw. Rev. Stat. § 490:2-607 (pre-litigation notice of defect only required to "seller" under Hawaii law). | In *Hawaiian Fishing Co.*, the court concluded adequate notice under § 490:2-607 "is a question of fact." 1996 WL 280068, at *1. Thus, it does not dispense with the requirement for individualized notice by each buyer to each seller. |

| Illinois | Under Illinois law, "*[o]nly* a consumer plaintiff *who suffers a personal injury* may satisfy the section 2-607 notice requirement by filing a complaint." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 495 (1996) (emphases added). Plaintiffs' own authority implicitly recognizes this fact, stating that one "exception[]" to the pre-suit notice requirement exists when "a consumer plaintiff suffers a personal injury, in which case the notice requirement could be satisfied *by filing a lawsuit* against the seller." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (emphasis added). | *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494 (Il. 1996.) (under Illinois law, notice not required when there is "actual knowledge"). | *Connick* held "generalized knowledge" is insufficient; "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the *particular product purchased by a particular buyer*." 174 Ill. 2d at 494 (emphasis added). Additionally, as discussed in Defendants' opening submission, *Connick* only finds notice requirement satisfied by the filing of a complaint by a plaintiff "who suffers a personal injury." 174 Ill. 2d at 495. |
|---|---|---|---|
| Indiana | Plaintiffs' own authority states that "Indiana law . . . requires that the buyer give notice to the seller *before* bringing suit for breach of warranty." *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 913 (N.D. Cal. 2018) (emphasis added). | *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 782 (7th Cir. 2011) (under Indiana law, the notice requirement is satisfied where the defendant has actual knowledge of the defects). | In *Anderson*, the court found the "actual knowledge" requirement was satisfied because the plaintiffs sent the defendant a letter prior to filing suit advising the manufacturer of the specific problems they were having with their specific vehicle, and the dealer had also forward over sixty pages of warranty claims to the manufacturer. 662 F.3d at 782. Thus, "actual knowledge" is specific to the individual product at issue. |

| Minnesota | Plaintiffs must provide notice to **some** party in the chain of distribution. *See Drobnak v. Andersen Corp.*, No. CIV 07-2249 PAM/JSM, 2008 WL 80632, at *6 (D. Minn. Jan. 8, 2008), *aff'd*, 561 F.3d 778 (8th Cir. 2009).<br><br>Plaintiffs' own authority recognizes that so long as notice is provided to the seller, the seller "can be expected to notify the manufacturer . . . ." *Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 610 (Minn. Ct. App. 1991), *aff'd*, 491 N.W.2d 1 (Minn. 1992). | *Church of the Nativity v. Watpro, Inc.*, 474 N.W.2d 605, 609–610 (Minn.App.1991) (notice need go only to immediate seller under Minnesota law). | *Church of the Nativity* made clear that pre-suit notice must be provided to **some** entity in the chain of distribution, even when a case is brought against a remote manufacturer.  474 N.W.2d 605 at 610 (plaintiff met notice requirement in suit against remote manufacturer because buyer provided notice to the immediate seller; noting that such a requirement makes sense because the "immediate seller can be expected to notify the manufacturer and parties further up the chain of distribution"), *aff'd*, 491 N.W.2d 1 (Minn. 1992).  As one court noted in interpreting this ruling, "even under *WatPro*, a claim ultimately fails where plaintiffs 'did not provide specific notice of their complaints to anyone.'"  *Drobnak v. Andersen Corp.*, No. CIV 07-2249 PAM/JSM, 2008 WL 80632, at *6 (D. Minn. Jan. 8, 2008), *aff'd*, 561 F.3d 778 (8th Cir. 2009). |

| Missouri | "Missouri courts have not directly addressed the issue" of pre-suit notice, and federal courts have predicted that Missouri would require it. *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2019 WL 4888910, at *11 (W.D. Mo. Aug. 12, 2019), *on reconsideration*, No. 15-00020-CV-W-JTM, 2019 WL 8223599 (W.D. Mo. Oct. 20, 2019).<br><br>Plaintiffs' own case requires notice to an immediate seller. *Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 361 (Mo. Ct. App. 1989) ("The plaintiff cannot escape the notice requirement even though it chose to sue only the manufacturer."). | *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. Ct. App. 1989) (in general, buyer required to give notice only to immediate seller under Missouri law). | *Ragland Mills* made clear that pre-suit notice must be provided to ***some*** entity in the chain of distribution, even when a case is brought against a remote manufacturer. *See* 763 S.W.2d at 361 ("[P]laintiff cannot escape the notice requirement even though it chose to sue only the manufacturer."). And more recent authority from Missouri has similarly found pre-suit notice to be a requirement under Missouri law. *See, e.g.*, *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2019 WL 4888910, at *12 (W.D. Mo. Aug. 12, 2019), *on reconsideration*, No. 15-00020-CV-W-JTM, 2019 WL 8223599 (W.D. Mo. Oct. 20, 2019) (holding that the filing of a lawsuit before the statute of limitations had run "does not satisfy the law" on pre-suit notice). |

| New Mexico | State law suggests filing a complaint is not sufficient notice. *See Badilla v. Wal-Mart Stores E., Inc.*, 2017-NMCA-021, ¶ 11 (dismissing claims for lack of "adequate or timely notice"); *Thornton v. Tyson Foods, Inc.*, 482 F. Supp. 3d 1147, 1161-62 (D.N.M. 2020) ("lack of pre-suit notice was unreasonable" where plaintiff "had capable and experienced counsel"), *aff'd*, No. 20-2124, 2022 WL 727628 (10th Cir. Mar. 11, 2022); *but see Thornton v. Kroger Co.*, No. CIV 20-1040 JB/JFR, 2022 WL 488932, at *104 (D.N.M. Feb. 17, 2022) ("Thornton's failure to provide the Defendants with pre-suit notice does not bar her claims."). | *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1272 (D.N.M. 2017) (finding "that notice should not be required in these suits"). | *In re Santa Fe Nat. Tobacco* predicted the New Mexico Supreme Court would follow California in holding that it "would not occur" to injured consumers who did not have the benefit of "legal advice" and are not steeped in "business practice" to give notice "to one with whom he has had no dealings," and thus the filing of a complaint would satisfy notice as to such consumers. 288 F. Supp. 3d at 1272. The more recent decision in *Thornton v. Tyson Foods* found failure to give pre-suit notice was "unreasonable" where, as here, the plaintiff "had capable and experience counsel," and "deprived Defendants of the opportunity to respond to Plaintiff's concerns and explore settlement." 482 F. Supp. 3d at 1161-62. |
| --- | --- | --- | --- |

| Pennsylvania | State law regarding whether filing a complaint is sufficient notice is in conflict. *Compare Precision Towers, Inc. v. Nat-Com, Inc.*, No. 2143, 2002 WL 31247992, at *5 (Pa. Com. Pl. Sept. 23, 2002) ("The filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim."), *with Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 330-31 (W.D. Pa. 2020), *on reconsideration in part*, No. CV 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021) (neither constructive notice nor the filing of the lawsuit satisfied the pre-suit notice requirement). | *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 914 (N.D. Cal. 2018) ("Pennsylvania state courts have held that the filing of a complaint may satisfy the notice requirement for a breach of warranty claim). | *In re Nexus* simply held the filing of a complaint was sufficient notice to "preclude dismissal" of an express warranty claim for failure to provide notice, while also finding "the timeliness of the notice is a factual issue better resolved at a later stage of the litigation[.]" 293 F. Supp. 3d at 914. Thus, timeliness of notice remains an individualized issue under *In re Nexus*. Moreover, the more recent Pennsylvania federal decision in *Lisowski* found the filing of a lawsuit insufficient to satisfy pre-suit notice. 501 F. Supp. 3d at 330-31. |

| Rhode Island | Pre-suit notice is required. *See Saber v. Dan Angelone Chevrolet*, 811 A.2d 644, 653 (R.I. 2002); *Hyde v. Philip Morris, Inc.*, No. C.A. 97-0359ML, 1998 WL 656074, at *7 (D.R.I. May 1, 1998). Plaintiffs' authority regarding notice is inapposite because it does not involve a claim for breach of express warranty. *See DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677, 683 (R.I. 1999). | *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2021 WL 1041017, at *5 (N.D. Fla. Feb. 10, 2021) (Rhode Island "the filing of the complaint constituted sufficient notice of the breach of the implied warranty."). | Plaintiffs assert that pre-suit notice is not required in Rhode Island, but do not cite a single case holding that this is the case with respect to claims for breach of ***express*** warranty. *In re Abilify* simply quotes *DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677, 683 (R.I. 1999), which found only that "the filing of the complaint constituted sufficient notice of the breach of the ***implied*** warranty.") (emphasis added). 2021 WL 1041017, at *5. Conversely, as discussed in Defendants' initial submission, pre-suit notice is required for claims for breach of ***express*** warranty. *Hyde v. Philip Morris, Inc.*, No. C.A. 97-0359ML, 1998 WL 656074, at *7 (D.R.I. May 1, 1998) ("At no time did plaintiff provide defendant with notice that defendant breached any express warranty and thus, plaintiff's claim for breach of express warranty should be dismissed."). |

| South Carolina | Pre-suit notice is required. *Sandviks v. PhD Fitness, LLC*, No. 1:17-CV-00744-JMC, 2018 WL 1393745, at *2-3 (D.S.C. Mar. 20, 2018) ("After the acceptance of goods, 'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'"); *Dilly v. Pella Corp.*, No. 2:14-CV-03307-DCN, 2016 WL 53828, at *11 (D.S.C. Jan. 4, 2016). <br><br> The case Plaintiffs cite is governed by **North** Carolina substantive law. *See Seaside Resorts Inc. v. Club Car, Inc.*, 308 S.C. 47, 416 S.E.2d 655, 663 (S.C. Ct. App. 1992). | *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017) (finding that under South Carolina law, the buyer of a product is only required to provide notice to the seller, and not "the remote manufacturer" of product) (Linares, J.). | Although the court in *In re Volkswagen Timing Chain Prod. Liab. Litig.* did mention that some of the plaintiffs in the multi-state class at issue were asserting claims under South Carolina law, it did not cite a single case from South Carolina when discussing notice, and based its finding that pre-suit notice was not required against a "remote manufacturer" on a case interpreting New Jersey law. *Id.* at *13. By contrast, as discussed in Defendants' initial submission, the District of South Carolina has made clear that pre-suit notice *is* required under South Carolina law. *See Sandviks v. PhD Fitness, LLC*, No. 1:17-CV-00744-JMC, 2018 WL 1393745, at *3 (D.S.C. Mar. 20, 2018) (dismissing express warranty claim where the complaint was "devoid of any allegations that Plaintiff provided Defendants with reasonable notice of their alleged warranty breaches"). |

| Virginia | Pre-suit notice is required from buyers. *See Stockinger v. Toyota Motor Sales USA Inc*, No. LACV1700035VAPKLSX, 2017 WL 10574372, at *9 (C.D. Cal. July 7, 2017); *Banh v. Am. Honda Motor Co.*, No. 2:19-CV-05984-RGK-AS, 2019 WL 8683361 (C.D. Cal. Dec. 17, 2019); *Kerr v. Hunter Div.*, 32 Va. Cir. 497 (1981).<br><br>Plaintiffs' own case states that notice is required where the plaintiff was the purchaser of the product. *See Yates v. Pitman Mfg., Inc.*, 257 Va. 601, 605 (1999). | *Yates v. Pitman Mfg., Inc.*, 257 Va. 601, 605, 514 S.E.2d 605, 607 (1999) ("We hold, therefore, that only buyers; i.e., those who buy or contract to buy goods from a seller… must give notice."). | *Yates* clearly and expressly holds that, "accepting the statute's plain meaning, it is apparent that the notice of breach is required from the 'buyer' of the goods." 257 Va. at 605. Plaintiffs purport to represent classes of buyers, and thus must give pre-suit notice under Virginia law. |

14

| Washington | Notice may be required to an immediate seller. *See* Wash. Rev. Code Ann. § 62A.2-607(3); *Cats v. Monaco RV, LLC*, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016).<br><br>Federal courts have noted that it is not clear whether pre-suit notice is an absolute requirement. *See Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012); *Stockinger v. Toyota Motor Sales USA Inc*, No. LACV 17-00035-VAP (KLSx), 2017 WL 10574372, at *11 (C.D. Cal. July 7, 2017). | Washington has a downstream purchaser exception wherein the notice requirement applies only to a buyer's "knowledge of a defect prior to acceptance, and does not apply to downstream purchasers." *Cats v. Monaco RV, LLC*, 2016 WL 5253204, at *4 (W.D. Wash. Sept. 22, 2016). | There is no disagreement between the parties' authorities on this point. Defendants' initial submission acknowledged the notice requirement may be limited to an immediate seller and may not be an absolute requirement under Washington law. |

**BREACH OF IMPLIED WARRANTY – PRIVITY**

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|---|---|---|---|
| California | Privity is required in economic loss cases. *See Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058 (2008) ("Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.") (citation omitted). | California law recognizes an exception to privity in implied warranty claims for pharmaceutical drugs intended for human consumption, which applies both to bodily injury and economic loss claims. *See, e.g., Haley v. Bayer Healthcare Pharms. Inc.*, 2016 WL 10966426, at *3–4 (C.D. Cal. June 9, 2016) (cataloguing cases). | Plaintiffs assert that California recognizes an exception to the privity requirement in cases involving pharmaceutical drugs intended for human consumption. However, the case Plaintiffs cite for this proposition, *Haley*, involves allegations of personal injury, as do the cases on which it relies. 2016 WL 10966426, at *1, *3-4. Plaintiffs fail to cite any authority suggesting that privity is not required in cases involving purely economic loss. Indeed, the law is to the contrary. *See, e.g., Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 (1988) (noting in the context of a class action for economic loss that "privity is required" in California); *see also Blanco*, 158 Cal. App. 4th at 1058 ("Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.") (citations omitted). |

16

| Georgia | Privity is required. *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1288 (S.D. Ga. 2010) ("Georgia law generally requires direct privity between the seller and buyer of goods for the implied warranty of merchantability to apply."). | Georgia law allows implied warranty claims for economic loss damages where the remote manufacturer has made express warranties to the ultimate consumer. *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1325–26 (M.D. Ga. 2011). | *Lee* relies on Georgia authority holding that no privity is required where the manufacturer issues an ***express warranty*** "running to the purchaser" or "to the ultimate consumer." 806 F. Supp. 2d at 1326. It does not recognize a privity exception for ***implied warranties***. |
| Virginia | Privity is required. *See Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 319 (4th Cir. 1998) (privity is still required for economic loss claims for breach of the implied warranty of merchantability, notwithstanding the language of Va. Code § 8.2-318). | Virginia has legislatively abolished privity for claims seeking direct (as opposed to consequential) economic damages. *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 162, 313 S.E.2d 384, 390 (Va. 1984). | Plaintiffs argue that Virginia's privity requirement was legislatively abolished, citing *Gasque*. However, the Virginia Supreme later found that, notwithstanding the statute, privity ***is*** still required to bring an implied-warranty claim seeking only economic loss. *See Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 319-321 (4th Cir. 1998). |

17

**BREACH OF IMPLIED WARRANTY – PRE-SUIT NOTICE**

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|---|---|---|---|
| Iowa | It is unclear whether pre-suit notice is required in implied warranty suits against remote manufacturers. *Compare Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 909-10 (Iowa Ct. App. 1982) (stating that notice is a prerequisite to recovery in an action for alleged breach of warranty of merchantability), *with In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014). | *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 977 (N.D. Cal. 2014) ("Under Iowa law, notice to the manufacturer is not required."). | Plaintiffs argue that notice to manufacturers is not required to state a claim for breach of implied warranty under Iowa law. But the Iowa Supreme Court has held that the state ***does*** require pre-suit notice. *See Randa v. U.S. Homes, Inc.*, 325 N.W.2d 905, 909-10 (Iowa Ct. App. 1982). While plaintiffs cite a federal case, *In re MyFord Touch Consumer Litig.*, holding that Iowa does not require notice in cases involving personal injuries, Plaintiffs do not cite – and Defendants have been unable to locate – any authority suggesting that such an exception to the notice requirement applies in an economic loss case like this one. |

| Maine | Unclear as to pre-suit notice. The only relevant case Defendants have identified that discusses pre-suit notice is an out-of-state federal case. *Muehlbauer v. Gen. Motors Corp.*, No. 05-C-2676, 2008 WL 4542650, at *4-5 (N.D. Ill. July 22, 2008) (noting Maine's generally liberal notice requirements, finding "§ 2-607(3)(a) has not been subject to extensive analysis by the Maine courts," and stating that it previously held that a "specific pre-suit complaint" to defendants was not required). | Decisions interpreting Maine law have found that pre-suit notice is not necessary when the defendant has constructive notice of the product defect. *Muehlbauer v. Gen. Motors Corp.*, 2008 WL 4542650, at *4 (N.D. Ill. July 22, 2008) (compiling and discussing authorities). | Plaintiffs cite *Muehlbauer* for the proposition that pre-suit notice is not required under Maine law where defendants have constructive notice of a claim for breach of implied warranty. But that case specifically notes that notice requirements have not been extensively analyzed by Maine courts and are therefore unsettled. 2008 WL 4542650, at *4-5. |

| Massachusetts | Failure to provide pre-suit notice precludes recovery if the defendant proves prejudice as a result. Mass. Gen. Laws Ann. ch. 106, § 2-318 ("Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby."); *Smith v. Robertshaw Controls Co.*, 410 F.3d 29, 36 (1st Cir. 2005) (applying Massachusetts law) (plaintiff failed to give notice since he "has not suggested that he gave [defendant] any notice of his claim other than the filing of the complaint"). | Under Massachusetts law, the filing or joining of a complaint is sufficient. *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2010 WL 2813788, at *78 (D.N.J. July 9, 2010), amended, 2011 WL 601279 (D.N.J. Feb. 16, 2011). | The court in *In re Ford Motor Co.* reiterated the prejudice standard to dismiss for failure to give pre-suit notice, and acknowledged that prejudice would have to be proven on the factual record. 2010 WL 2813788, at *78-79. That simply confirms that prejudicial lack of pre-suit notice is an individualized issue. |

| New York | Pre-suit notice is required. *See Valcarcel v. Ahold U.S.A., Inc.*, No. 21-cv-07821, 2021 WL 6106209, at *9 (S.D.N.Y. Dec. 22, 2021) (applying New York law) (pre-suit notice is a prerequisite to a claim for breach of implied warranty, absent allegations of physical injuries); *Brown v. Kerry Inc.*, No. 20 Civ. 9730 (PGG) (JLC), 2022 WL 669880, at *6 (S.D.N.Y. Mar. 7, 2022) (dismissing an economic loss breach of implied warranty claim due to "Plaintiff's failure to allege pre-suit knowledge"). | New York courts and courts interpreting New York law have found that pre-suit notice is not necessary when the product defect is for products intended for human consumption. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 2010 WL 2839480, at *3 (S.D. Cal. July 20, 2010). | Plaintiffs assert that pre-suit notice is not required to state a claim for breach of implied warranty under New York law if the product at issue was intended for human consumption, citing a federal case. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, 2010 WL 2839480, at *3 (S.D. Cal. July 20, 2010). However, that case merely notes that notice is not required in cases involving allegations of personal injury. *Id.* at *4. Here, plaintiffs allege only economic losses. As a result, the pre-suit notice requirement applies. *See Valcarcel v. Ahold U.S.A., Inc.*, No. 21-cv-07821, 2021 WL 6106209, at *9 (S.D.N.Y. Dec. 22, 2021) (applying New York Law); *Brown v. Kerry Inc.*, No. 20 Civ. 9730 (PGG) (JLC), 2022 WL 669880, at *6 (S.D.N.Y. Mar. 7, 2022). |

21

**COMMON LAW FRAUD – SCIENTER**

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|---|---|---|---|
| Alaska | Actual knowledge of falsity. *See City of Fairbanks v. Amoco Chem. Co.*, 952 P.2d 1173, 1176 (Alaska 1998) ("The scienter element requires that the defendant know the falsity of the representation. The tort of fraudulent misrepresentation requires proof that the maker knew of the untrue character of his or her representation."); *see also Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010) (common law fraud requires "knowledge of the falsity of the representation"). | Defendants are "just wrong." (citing *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1285 (Alaska 1985)). | *Zeman* affirmed summary judgment against the plaintiff on a fraud claim asserting reckless indifference, and cited Wisconsin law regarding what may constitute reckless indifference in the context of a promise made without care whether it will be kept. 699 P.2d at 1285. Notwithstanding the language from *Zeman* and Plaintiffs' previously-cited case, *Larson v. Hugill*, 15 Alaska 348, 356 (D. Alaska 1954), subsequent decisions from the Alaska Supreme Court have indicated that scienter for common law fraud requires actual knowledge of falsity.  *See Shehata*, 225 P.3d at 1114 ("Common law fraud claims require a showing of . . .  knowledge of the falsity of the representation."); *City of Fairbanks*, 952 P.2d at 1176 n.4 ("The scienter element requires that the defendant know the falsity of the representation. The tort of fraudulent misrepresentation 'requires proof that the maker knew of the untrue character of his or her representation.'") (citation omitted). |

| Illinois | Knowledge or belief in the falsity of the representation. *See DeHart v. DeHart*, 986 N.E.2d 85, 97 (Ill. 2013) ("To constitute fraud in the inducement, the defendant must have made a false representation of material fact, knowing or believing it to be false and doing it for the purpose of inducing one to act."). | *Duran v. Leslie Oldsmobile, Inc.*, 594 N.E.2d 1355 (Ill. App. 1992) (Illinois scienter element "that was known or believed by the speaker to be untrue or made in *culpable ignorance of its truth or falsity*" (emphasis added)). | Plaintiffs cannot override a decision of the Illinois Supreme Court regarding the correct standard of intent by citing an appellate court decision issued more than two decades earlier. Even if "culpable ignorance" is still a cognizable standard in Illinois, Plaintiffs offer no information indicating what makes ignorance "culpable" or differentiating it from knowledge or belief in falsity. |
|---|---|---|---|
| Massachusetts | Actual knowledge of falsity. *See Nemirovsky v. Daikin N. Am., LLC*, 177 N.E.3d 901, 913 (Mass. 2021) (fraud plaintiff must show that the defendant made a "false representation of a material fact with knowledge of its falsity"). | Under Massachusetts law, the claims of common law fraud (which requires actual knowledge) and intentional misrepresentation are merged. (citing Ex. 269, Massachusetts jury instructions). | Plaintiffs' assertion that fraud and misrepresentation "merge" is a *non sequitur*, and their citation of the Massachusetts pattern instruction is irrelevant. *Nemirovsky* accurately recites the most current version of the scienter requirement in Massachusetts, and requires "knowledge of [the representation's] falsity." 177 N.E.3d at 913. |
| Minnesota | Actual knowledge of falsity or reckless disregard as to truthfulness. *See Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 810-11 (Minn. Ct. App. 2010). | *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011) (Minnesota *scienter* element articulated as "made with knowledge of the falsity of the representation or *made without knowing whether it was true or false*" (emphasis added)). | The parties' cases do not conflict. "Without knowing whether it was true or false" is simply a different articulation of the "reckless disregard as to truthfulness" standard. |

**CONSUMER PROTECTION – SCIENTER**

| State | Defendants' Position | Plaintiffs' Position | Discussion |
|-------|---------------------|---------------------|------------|
| District of Columbia | A "knowing and deliberate misrepresentation of goods and services." *In re Dawson*, 411 B.R. 1, 54 (Bankr. D.D.C. 2008). | *Beck v. Test Masters Educ. Servs. Inc.*, 994 F. Supp. 2d 90, 93–94 (D.D.C. 2013) (finding that under D.C. CPPA, a plaintiff does not have to allege or prove intentional misrepresentation or failure to disclose in order to prevail on the claim). | Plaintiffs' authority indicates a plaintiff need not prove "intentional misrepresentation" to prevail, but "must, however, allege a material fact that tends to mislead." 994 F. Supp. 2d at 94. Thus, it confirms the requirement of materiality and tendency to mislead, both of which are individualized questions. |

| Illinois | Intent that consumers rely upon misrepresentation or omission is required. *See Totz v. Cont'l DuPage Acura*, 602 N.E.2d 1374 (Ill. App. Ct. 1992) (intent that consumer rely on nondisclosure must be shown); *see also People ex rel. Madigan v. United Constr. of Am., Inc.*, 981 N.E.2d 404 (Ill. App. Ct. 2012) (intent that others rely must be shown for alleged affirmative misrepresentations). | *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003) (find that the "deceptive act and intent requirements can be satisfied by innocent misrepresentations of a defendant."). | *Chow* confirms Defendants' position that Illinois requires a showing of intent to induce reliance to establish a claim under Illinois consumer protection statute. 286 F. Supp. 2d at 963 (to satisfy intent requirement, plaintiff must show "that the defendant intended the plaintiff to rely on the (intentionally or unintentionally) deceptive information given"). |

| Kansas | The required level of knowledge/intent varies depending on which statutory provision was allegedly violated. *See, e.g.*, Kan. Stat. §§ 50-626(b)(1), (4), (7), (8), (9), (10) (plaintiff alleging various types of alleged misrepresentations must prove defendant acted "knowingly or with reason to know"); *id.* §§ (b)(2), (3) (imposing liability for "willful" for omission of or an "exaggeration, falsehood, innuendo or ambiguity" as to a material fact); *see also Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 298 Kan. 503, 521, 314 P.3d 852, 865 (2013) ("the 'knowingly or with reason to know' standard of K.S.A. 50-626(b)(1) is a more forgiving one . . . when compared with the willfulness standard of K.S.A. 50-626(b)(2) and (b)(3)"). | Defendants' own Appendix I concedes that for the deceptive acts prong of Kansas CPA, the standard is "knowingly or with reason to know." | Plaintiffs are expressing agreement with Defendants' position on the intent requirement. It is unclear what Plaintiffs consider "flat wrong" about a standard they agree governs. |

| Minnesota | Plaintiff must prove that the defendant had an "intent that others rely" on the alleged misstatement at issue. *See* Minn. Stat. § 325F.69 ("intent that others rely"). The Minnesota Supreme Court has interpreted this requirement "to have imposed on [the plaintiff] the additional requirements of proving that any misleading statements or deceptive practices were knowingly made or employed." *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 727 (Minn. 1983) (superseded on other grounds). | *301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n*, 783 N.W.2d 551, 563 (Minn. Ct. App. 2010) ("Liability does not require that the false statement be intentional. *Meyer v. Dygert,* 156 F. Supp. 2d 1081, 1086 (D. Minn. 2001)). | *301 Clifton Place* confirms Defendants' position that Minnesota law requires a showing of "intent that others rely" to establish a claim under Minnesota consumer protection statute. *See* 783 N.W.2d at 563 ("The MCFA penalizes fraud or misrepresentation 'with the intent that others rely' on the false promise in purchasing 'any merchandise.'") (quoting Minn. Stat. § 325F.69, subd. 1). |

| New Hampshire | Plaintiffs must show some level of "rascality," and a misrepresentation made without knowledge or any reason to suspect that it is untrue is not a violation. *Kelton v. Hollis Ranch, LLC*, 927 A.2d 1242 (N.H. 2007). However, intent to deceive or actual knowledge is not a requirement.<br><br>Intent, however, is required to obtain multiple damages (double, treble). *See Unit Owners Ass'n of Summit Vista Lot 8 Condo. v. Miller*, 677 A.2d 138, 141-42 (N.H. 1996). | *Beer v. Bennett*, 993 A.2d 765, 769 (N.H. 2010) ("We conclude that [in New Hampshire] the defendant's reckless disregard for the truth of his statements satisfies the degree of knowledge or intent required by *Kelton*."). | *Beer* confirms Defendants' position that New Hampshire law employs the "rascality" test to determine which practices "are covered by" the New Hampshire consumer protection statute. 993 A.2d at 769 (citations omitted) (stating that rascality test "requires the plaintiff to show 'that the defendant's acts attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'"). |

| North Dakota | Intent that others rely on the defendant's deception is required. N.D. Cent. Code § 51-15-02.<br><br>Plaintiffs seeking double or treble damages must prove a "knowing violation." N.D. Cent. Code § 51-15-09 (multiple damages for "knowing" violations); *DJ Coleman, Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055, 1076-77 (D.N.D. 2010). | Under North Dakota's Consumer Fraud Act, a plaintiff need only prove that the defendant intended the plaintiff to rely on the statement contended to be deceptive. N.D.C.C. § 51-15-02; *see also DJ Coleman, Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055 (D.N.D. 2010). | Plaintiffs' authorities are in full agreement with Defendants' position on the intent requirement. It is unclear what Plaintiffs consider "flat wrong" about a standard they agree governs. |
| Oregon | Conduct must be willful to be actionable. *Luedeman v. Tri-West Const. Co.*, 592 P.2d 281, 282 (Or. Ct. App. 1979). | *Gilberto v. Walgreen Co.*, 2020 WL 1890538, at *2 (D. Or. Apr. 16, 2020) (finding that you only need show that a "Defendant was reckless as required to maintain a class action under Oregon's UTPA."). | Plaintiffs' authority addresses a separate question and further demonstrates that Oregon law varies from every other state. In *Luedeman*, the court held that willfulness is required under O.R.S. 646.638(1), "which creates the private right of action for unlawful trade practices[.]" 592 P.2d at 282. In *Gilberto*, the court addressed the intent standard to maintain a class action under O.R.S. 646.638(8)(a), which requires a showing that the defendant's act was reckless or knowing to maintain a class action. Thus, unlike any other state, there are two distinct intent requirements in Oregon—a willfulness requirement for a private action, and a reckless or knowing requirement for a class action. |

| Wisconsin | Certain prohibited acts require that the misrepresentation be made with intent to induce the purchase of the property at issue. *See* Wis. Stat. § 100.18(1) (prohibiting deceptive conduct made "with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase" of an item or property); *Reuben v. Koppen*, 784 N.W.2d 703 (Wis. Ct. App. 2010) (noting that proof of "intent to induce the purchase" at issue "is necessary for the WIS. STAT. § 100.18 cause of action"). | Defendants' own Appendix I concedes that under Wisconsin's CPA, the plaintiff need only prove that the defendant's misrepresentation was made with the intent to induce the purchase at issue. | Plaintiffs are expressing agreement with Defendants' position on the intent requirement. It is unclear what Plaintiffs consider "flat wrong" about a standard they agree governs. |