UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN. LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This Documents Relates to All Actions | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Hon. Robert B. Kugler, District Judge |

**WHOLESALER DEFENDANTS' (PROPOSED) SURREPLY IN FURTHER
OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
OF THE CONSUMER ECONOMIC LOSS CLAIMS[1]**

---

[1] This Opposition addresses Plaintiffs' Reply in Further Support of Their Motion for Class Certification of Consumer Economic Loss Claims ("Reply"), and adopts and fully incorporates the class certification surreply briefing of Defendant Manufacturers and Retailers. Wholesalers also request oral argument to provide the Court with a more complete discussion of the numerous grounds preventing certification of Plaintiffs' proposed UE classes against this Defendant group.

**INTRODUCTION**

In the approximately 3-4 pages of Plaintiffs' Reply that address Wholesaler issues, Plaintiffs do not bolster any basis upon which this Court should certify the unjust enrichment ("UE") claims against Wholesalers. Instead, Plaintiffs' Reply misstates facts, mischaracterizes Wholesalers' arguments, and misrepresents the applicable law, further demonstrating the undeniable – an unjust enrichment class against Wholesalers fails.

First, with regard to their ability to trace putative class members' VCDs to Wholesalers, Plaintiffs suggest for the first time in their Reply—without a shred of evidence—that Defendant Fact Sheets (DFSs) allow them to trace. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Plaintiffs further misrepresent that Wholesalers "concede" that they track lot numbers—which is false and **contrary to all evidence in this case—**and argue for the first time that tracing is a common issue to the class. Tracing a plaintiff's VCDs is an inherently individualized inquiry based on that specific plaintiff's pharmacy records and pharmacy location, and lot information that does not exist.

Next, Plaintiffs make multiple misrepresentations, misstatements, and mischaracterizations in an attempt to salvage Dr. Conti's damages methodology as to Wholesalers. First, Plaintiffs purport to apply Dr. Conti's theory that damages occur at the "point of sale" to Wholesalers, despite the fact that she testified that this theory *does not apply to Wholesalers*. Plaintiffs also misrepresent the applicable case law, incorrectly asserting that *Wholesalers* bear the burden to prove the costs that offset profits. And, Plaintiffs misstate the facts, claiming that Dr. Conti's failure to use cost data is solely due to Wholesalers' failure to produce that same data.

Finally, Plaintiffs mischaracterize Wholesalers' substantive arguments on applicable UE case law as "redundant," and falsely claim that Wholesalers "repeatedly group states." Dkt. 2057 at 35, 38, 39. Both of these mischaracterizations are in direct contrast to Wholesalers' substantive briefing and multiple appendices on the numerous variations in UE case law. *See* Dkt. 2011 at 12-

1

17; Dkts. 2011-5, 2011-6, 2011-7, 2011-8, 2011-9, and 2011-10. Plaintiffs also misrepresent the law, claiming they can cite a myriad of cases that certified multi-state UE classes. Dkt. 2057 at 39. Yet instead of actually citing "two case for every one that Wholesalers cite," Plaintiffs cite to only two cases *total*, of which only one certifies a multi-state UE class—and even that one was not in the context of a mass tort, pharmaceutical product liability case like this one. Despite their puffery, Plaintiffs cannot cite to a single analogous case where a federal court certified a UE class in a pharmaceutical case involving the various levels of the supply chain.

This Court should disregard the Wholesaler-specific arguments in Plaintiffs' Reply, which are merely misstatements, mischaracterizations, and misrepresentations, and deny Plaintiffs' request to certify consumer classes as to the UE claim against Wholesalers.

### A. Plaintiffs Misstate the Facts with Regard to the Ability to Trace Putative Class Members' VCDs to Wholesalers.

Plaintiffs make a series of unsupported—and patently false—statements in an attempt to rebut Wholesalers' argument that it is not administratively feasible to trace putative members' VCDs back to specific Wholesalers.

First, Plaintiffs contend that "to complete Defendant Fact Sheets, [Wholesalers] were able to identify whether they merchanted *some* of the VCDs at issue." Dkt. 2057 at 39 (emphasis added). Beyond their admission that this method only works to purportedly identify "some" class members, Plaintiffs fail to proffer *any* evidence that the DFSs actually identify whether a Wholesaler distributed a putative class member's VCDs. In fact, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒. Nor does Plaintiffs' expert Laura Craft suggest how DFSs will allow Plaintiffs to trace VCDs to Wholesalers, as she did not review *any* DFSs in rendering her opinions. Dkt. 1748-2, Craft Decl. Ex. D, Materials Relied Upon. By way

2

of example, ███████████████████████████████████████

███████████████████████████████████████████████. Dkt. 2057-13 at 146. ███

███████████████████████████████████████████████

██████████. Dkt. 2009-14, Ex. 157, ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████.[2] For these class representatives, Plaintiffs offer no method to determine which entity (or combination of entities) distributed their VCDs, rendering their classes unascertainable. *See, e.g., Fenwick v. Ranbaxy Pharms., Inc.*, 353 F.Supp.3d 315, 327 (D.N.J. 2018) ("plaintiffs cannot ascertain all members of its proposed class," because "it is likely impossible to determine which consumers 'are known with certainty to have received pills that were not from the recalled lots[.]'"); *In re Wellbutrin XL Antitrust Litig.*, 308 F.R.D. 134, 150–51 (E.D. Pa. 2015) (finding a class unascertainable where "the Court [wa]s unsure what percentage" of class members the plaintiffs' expert could "successfully ascertain[.]").

Second, contrary to all evidence and Wholesaler testimony in this case, Plaintiffs state that Wholesalers "concede at least some of them maintain some lot level data to track the VCDs they

---

[2] *See, e.g.*, Dkt. 2009-14, Ex. 175 ███████████████████████████████████

███████████████████████████████████████████████

█████████). Numerous class representatives are similarly situated, including ███████

███████████████████████████████████████████████

████████████████████. *See generally* Dkt. 2009-14, Exs. 123-188.

3

merchanted that were ultimately dispensed to certain customers." Dkt. 2057 at 39. Again, Plaintiffs concede that even if this were true it only gets them to "some." Moreover, Plaintiffs cite for support the declaration of Laura Craft, *who reviewed no Wholesaler testimony or declarations in preparing her opinions* (Dkt. 1748-2, Exhibit D), pointing to a paragraph that does not mention Wholesalers **whatsoever**. See Dkt. 1748-2 (Craft Decl.) at ¶ 44. Instead, the undisputed evidence in this case provides that **Wholesalers were not required to and did not transmit lot number data** to Retailers with respect to the VCDs at issue.[3] Dkt. 2011 at 9; *see also* Dkt. 2011-3. Craft herself admits that Wholesalers "weren't required to" transmit lot information to pharmacies. Dkt. 2009-7, Ex. 49, Craft Dep. at 185:21-22.

Finally, Plaintiffs contend that "tracing" is a "common issue to the entire class" that can be addressed at the summary judgment stage. Dkt. 2057 at 40. Not so. Determining whether a putative class member meets the Wholesaler class definitions—which means proving that a Wholesaler sold the particular VCDs that were ultimately sold to that person—requires a highly individualized inquiry that cannot be accomplished on a class-wide basis. Specifically, identifying whether a Wholesaler was involved in the distribution of a putative plaintiff's VCDs requires – at minimum – review of that individual's pharmacy records, and the purchase records of their retail pharmacy location (e.g., the DFS process). Given the lack of lot-level data, it is frequently impossible, even after engaging in this process, to determine whether a Wholesaler distributed that plaintiff's VCDs.

---

[3] Plaintiffs also falsely claim that Wholesalers are "obligated . . . to maintain detailed transactional data that can be used to trace movements of drugs against Retail Pharmacy Defendants' inventory turnover." Dkt. 2057 at 39-40. But Plaintiffs do not—and cannot—point to any provision of the Drug Supply Chain Security Act ("DSCSA") imposing such a requirement, nor do they state how such "detailed transactional data" would identify Wholesaler involvement in a particular VCD transaction. Wholesalers met their DCSCA obligations by transmitting the required information to Retailers, including the NDC *but not the lot number*. Dkt. 2011-3. Without *lot* numbers, this information is insufficient to identify class members. Dkt. 2011 at 7-10.

4

Such individualized inquiry defeats ascertainability. *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding … will be required to prove class membership.").

> **B.    Plaintiffs' Argument with Regard to Dr. Conti and Plaintiffs' Damages Calculation is Replete with Misstatements, Misrepresentations, and Mischaracterizations.**

With regard to Dr. Conti's damages methodology, Plaintiffs again mislead. First, Plaintiffs' Reply states—without support—that their expert, Dr. Rena Conti, "reliably estimates" UE damages. But Plaintiffs cannot hide the fact that Dr. Conti calculates *nothing* with respect to Wholesalers. Dkt. 2057 at 18-20. Plaintiffs' misrepresentations of the facts do not stop there. They repeatedly ignore or misstate Wholesalers' unique role in the supply chain—and this litigation.

Plaintiffs also mischaracterize Wholesalers' arguments by claiming that "Defendants' own experts agree [that Dr. Conti's model] is an appropriate measure [of damages] *if injury occurs at the point of sale*." Dkt. 2057 at 19 (emphasis added). With respect to Wholesalers, however, the economic harm *does not* occur at the "point of sale"—Wholesalers sell only to Pharmacies *in advance of* Consumer/TPP purchases. Dr. Conti specifically testified that this theory applies to other Defendants, *but not Wholesalers*. Conti Dep. 128:21-130:12. The point of sale thus has no applicability to Wholesalers, and Dr. Conti's point of sale model is therefore irrelevant.

Third, Plaintiffs misrepresent the applicable case law, claiming—without merit—that Defendants bear the burden to prove their costs to offset their profits. Dkt. 2057 at 19. This is simply not true, and the cases cited by Plaintiffs are not on point.[4]

---

[4] *Rexall Sundown, Inc. v. Perrigo Co.* stands for the proposition that the "plain text" of the Lanham Act requires a defendant to prove apportionment of damages in a false advertising case. 707 F.Supp.2d 357, 358 (E.D.N.Y. 2010). And *Lockheed Martin Corp. v. L-3 Comm's Integrated Sys., L.P.*, is a motion *in limine* opinion relating to expert testimony in a Georgia Trade Secret Act case relying on the standard for trade secret-related unjust enrichment cases set out in the Restatement

5

Finally, Plaintiffs misstate the facts with their argument that Dr. Conti's failure to use *cost* data is due to Wholesalers' failure to produce that same data.[5] Convenient though this blame may be, it is a red herring. Dr. Conti—though explicitly aware of the existence *and relevance* of chargebacks, discounts, coupons and the like—never refers to those items in her profit calculation in even the most theoretical, general terms, or even identifies them by categories. Conti Dep. at 138:9-19, 139:2-18, 140:17-24, 147:17-148:9, 149:1-8, 149:9-17. Instead, Conti ignores those factors altogether. Plaintiffs cannot now blame Wholesalers for the fact that their expert ignored admittedly relevant factors in her analysis.

C. **Plaintiffs Misrepresent the Applicable UE Case Law, and Mischaracterize Wholesalers' UE Analysis.**

Plaintiffs' misrepresentations and mischaracterizations extend to their half-baked summary of the UE case law as well. First, Plaintiffs claim that "for every case Wholesalers cite where an unjust enrichment class was not certified ... Plaintiffs can cite two more cases that" certified multi-state UE classes. Dkt. 2057 at 39. If that were true they would have done it; instead Plaintiffs cite to only two cases *total*. *Id*. at n.112. Only *one* of these two cases actually certified a UE class, and it involved facts wholly different from those presented here. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 674 (S.D. Fl. 2015) (certifying UE class that alleged *one* defendant was unjustly enriched by retaining excess overdraft fees). Plaintiffs still have not identified, nor have

---

(Third) of Unfair Competition. No. 1:05-CV-902-CAP, 2009 WL 8435667, at *3 (N.D. Ga. Apr. 9, 2009). But this is neither a Georgia Trade Secret case nor a Lanham Act matter, so neither case is relevant here.

[5] Plaintiffs mischaracterize Wholesalers' argument with respect to Dr. Conti's failure to consider cost data, claiming that Wholesalers "fault Plaintiffs for not using Defendants' actual cost data … ." Dkt. 2057 at 19. Wholesalers have not withheld any discovery from Plaintiffs, nor would any additional production by Wholesalers (whether as to cost or pricing information) have assisted Dr. Conti in the critical part of her assignment. *See* Dkt. 2037-1 at 3 n.2.

Wholesalers found, a single case in which a federal court certified a UE class in an analogous mass tort, pharmaceutical product liability case.

Second, Plaintiffs ignore Wholesalers' argument regarding the material variations in state UE laws, mischaracterizing Wholesalers' arguments as redundant "nitpicks" and "quibbles" that "track those in Defendants' main brief." Dkt. 2057 at 39. Wholesalers' in-depth analysis regarding the variations among UE laws includes seven appendices, each addressing substantive aspects of the varying UE laws.[6] *See* Dkts. 2011-5, 2011-6, 2011-7, 2011-8, 2011-9, 2011-10, and 2011-12.

Plaintiffs also mischaracterize Wholesalers' state law groupings, claiming that Wholesalers "repeatedly group states by references to the trier of fact's obligation to holistically view all facts … ." Dkt. 2057 at 35.[7] *Wholesalers* do not group states together for any purpose. To the contrary, Wholesalers attach six appendices to their Opposition outlining the myriad differences in UE state laws, all of which demonstrate why the states *cannot* be grouped in any comprehensive manner. *See* Dkts. 2011-5, 2011-6, 2011-7, 2011-8, 2011-9, and 2011-10. Wholesalers also include Appendix 9, which further supports the argument against certification by demonstrating the *one* aspect of UE law upon which jurisdictions generally agree: "**what is "unjust" is inherently fact-specific and requires individualized [inquiries]."** Dkt. 2011-12 (emphasis added).

## CONCLUSION

For all of the foregoing reasons, and for those set forth in Wholesalers' Opposition, Plaintiffs' motion for class certification as to Wholesalers should be denied.

---

[6] This in-depth analysis is unique to Wholesalers' Opposition. *See* Dkt. 2008 at 50-52 (briefly addressing UE laws at a high level); Dkt. 2008-11 (Manufacturers' *sole* appendix related to UE).
[7] Notably, although Plaintiffs represent that they have "amend[ed] their state law groupings per Defendants' critiques[,]" Dkt. 2057 at 22, they make no attempt to substantively amend the UE state law groupings or legal authorities. Compare Dkt. 2057-13 at 146-48, 153-62 *with* Dkt. 1748-6 at 125-26, 130-38.

7

Dated: May 20, 2022                                          Respectfully submitted,

  s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger, Esq.
Liaison Counsel for Wholesalers
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

*Counsel for AmerisourceBergen Corporation*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Emily G. Tucker
Luke J. Bresnahan
CROWELL & MORING
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Tel.: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com
Email: etucker@crowell.com
Email: lbresnahan@crowell.com

*Counsel for Cardinal Health, Inc.*


D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
Email: dlesli.davis@nortonrosefulbright.com
Email: ellie.norris@nortonrosefulbright.com

*Counsel for McKesson Corporation*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May, 2022, I filed the foregoing electronically through the CM/ECF system, which will send notice of filing to all CM/ECF participants.

                                             *s/ Jeffrey D. Geoppinger*
                                             Jeffrey D. Geoppinger