**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| **This Document Relates to All Actions** | Oral Argument Requested |

**WHOLESALER DEFENDANTS' MOTION FOR CLARIFICATION AND MODIFICATION OF SPECIAL MASTER ORDER NO. 64 AND <u>MEMORANDUM IN SUPPORT</u>**

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..................................................................... ii

I.   PROCEDURAL HISTORY ............................................................1

II.  ARGUMENT ...................................................................................11

   A.  Neither Rule 26(e) Nor SMO 64 Requires Wholesalers to Supplement Their Discovery Responses Regarding Indemnification and/or Defense Information Beyond That Which Was Properly Requested During the Discovery Phase of the MDL. ..................................................................................................11

   B.  The Defense Information Is Not Discoverable In Any Event Because It Is Not Relevant to the Litigation. ...........................................................14

      1.  The Defense Information is not relevant to Plaintiffs' claims. ..............14

      2.  The Defense Information is not discoverable, as Judge Schneider denied similar requests for Plaintiffs' litigation funding information as irrelevant. 17

      3.  The limits of litigation funding discovery are articulated in Local Rule 7.1.1 and demonstrate that the Defense Information is not relevant.............18

   C.  The Defense Information and/or Other Indemnification Information is Not Discoverable as it is Protected By the Common Interest Doctrine and Other Privilege. ................................................................................................19

III.  CONCLUSION...............................................................................22

CERTIFICATE OF SERVICE ................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
    2021 WL 149841 (E.D. Tenn. Jan. 15, 2021) ...................................................21

*Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*,
    2009 WL 3786210 (E.D.N.Y. Nov. 12, 2009) ..................................................21

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3d Cir. 1999) ..............................................................................14

*Castellani v. City of Atl. City*,
    2015 WL 1578990 (D.N.J. Apr. 9, 2015)...........................................................14

*Cavallaro v. United States*,
    284 F.3d 236 (1st Cir. 2002)..............................................................................21

*In re Skiles*,
    102 S.W.3d 323 (Tex. App. 2003)......................................................................21

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007) .........................................................................20, 22

*In Re Valsartan N-Nitrosodimethylamine (NDMA) Contamination
Products Liab. Litig.*,
    405 F. Supp.3d 612 (D.N.J. 2019).....................................................................17

*In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2010 WL 4715951 (D. Ariz. Nov. 15, 2010) ....................................................16

*Invensas Corp. v. Renesas Elecs. Corp.*,
    2013 WL 12146531 (D. Del. May 8, 2013) .......................................................15

*Keybank Nat'l Ass'n v. Williams*,
    2022 WL 278516 (D. Colo. Jan. 31, 2022) ...................................................21, 22

*Westinghouse Elec. Corp. v. Republic of Philippines*,
    951 F.2d 1414 (3rd Cir. 1991) ...........................................................................19

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...................................................................................14

Fed. R. Civ. P. 26(b)(3)...................................................................................21

Fed. R. Civ. P. 26(b)(3)(A)..............................................................................20

Fed. R. Civ. P. 26(b)(3)(B)..............................................................................20

Fed. R. Evid. 401............................................................................................15

For the reasons set forth herein, Wholesaler Defendants AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation ("Wholesalers") respectfully request that the Court issue an Order that clarifies that SMO 64: (1) only requires Wholesalers to timely supplement their prior discovery responses in accord with Rule 26(e), if necessary; (2) does not impose any new duty on Wholesalers to disclose information regarding indemnification and/or defense beyond that which was requested by Plaintiffs and approved by the Court in Plaintiffs' prior discovery requests; and (3) to the extent that Plaintiffs seek any further indemnification and/or defense discovery beyond that provided by Wholesalers, such request is denied.

## I.     PROCEDURAL HISTORY

Wholesalers, Manufacturers, and Retail Pharmacies have previously produced to Plaintiffs the Wholesaler Supply Agreements with Manufacturers and Retail Pharmacies that include duty to defend provisions. Now, through untimely letters and a Plaintiff-prepared and objectionable SMO 64, Plaintiffs purport to be entitled to more information than just the defense provisions themselves. However, *none* of the proper discovery requests previously negotiated by Plaintiffs and Wholesalers, approved by the Court, and ultimately served on Wholesalers prior to the close of discovery included *any* request that Wholesalers provide defense-related information, including, specifically, that:

1) Wholesalers disclose whether an entity from which a Wholesaler purchased VCDs, or some other entity on its behalf, has undertaken that

1

Wholesaler's defense or has agreed to defend that Wholesaler or reimburse it for costs of defense, and if so, the percentage of those costs to be reimbursed and the amounts reimbursed;

2)  Wholesalers disclose whether any Wholesalers have "disputes" with any Manufacturer with respect to defense;

3)  Wholesalers disclose whether they have initiated a formal claim or proceeding with respect to a dispute with a Manufacturer including any "public or private litigation, arbitrations, claims, or other proceedings," and if so, identify the forum and status of the dispute;

4)  Wholesalers identify whether they have agreed to undertake the defense of a Retail Pharmacy Defendant and/or whether they have agreed to reimburse a Retail Pharmacy Defendant's cost of defense, and if so, the amounts reimbursed;

5)  Wholesalers identify whether any Wholesalers have "disputes" with a Retail Pharmacy Defendant(s) with respect to defense;

6)  Wholesalers identify whether they have initiated a formal claim or proceeding with respect to a dispute with a Retail Pharmacy Defendant(s), including any "public or private litigation, arbitrations, claims, or other proceedings," and if so, identify the forum and status of the dispute;

7)  By implication, communications between Wholesalers and Manufacturers and/or Retail Pharmacies and their counsel regarding the above.

Dkt. 2007-1, Plaintiffs' March 17, 2022 Letter to Seth Goldberg.[1] Plaintiffs' new requests are so broad that they may even be read to require production of *communications* regarding defense-related information; indeed, when Wholesalers

---

[1] Collectively, these requests and the communications related thereto, as well as the defense-related items made the subject of the Plaintiff-drafted SMO 64 are referred to herein as the "Defense Information."

2

attempted to confirm Plaintiffs did *not* seek such plainly privileged information, Plaintiffs refused to so confirm. *See* Email from George Williamson, Esq. to D'Lesli Davis, Esq. dated May 10, 2022, Ex. A (highlighting added).

Plaintiffs first raised requests for the Defense Information with Wholesalers in correspondence on January 28, 2022, and March 17, 2022, months after the October 4, 2021 date for completion of discovery. Dkt. 2042-2, Plaintiffs' January 28, 2022 email to Jeff Geoppinger; Dkt. 2007-1, Plaintiffs' March 17, 2022 Letter to Seth Goldberg. In sum, the untimeliness of the requests, the lack of relevance of the Defense Information to issues in the instant case, and the privileged nature of the Defense Information require that Wholesalers object to and seek clarification of SMO 64.

Prior to Plaintiffs' *ad hoc* request for the Defense Information, the discovery in this matter was heavily negotiated between the parties before being approved by the Court. Written discovery requests related to indemnification issues[2] were served on Wholesalers in the MDL prior to the October 4, 2021 discovery cut-off, consisting of Plaintiffs' Second Amended Set of Requests for Production of Documents to Wholesaler Defendants (Dkt. No. 509) and Plaintiffs' Second Set of

---

[2] Plaintiffs have acknowledged that Wholesalers have met their obligations under Plaintiffs' interpretation of all discovery requests, timely or otherwise, and their interpretation of SMO 64, with regard to production and disclosure of indemnification—rather than defense—issues. *See* Email from George Williamson, Esq. to D'Lesli Davis, Esq. dated May 10, 2022, Ex. A.

Requests for Production of Documents to Wholesaler Defendants (Dkt. No. 1306). Request for Production No. 21 in Plaintiffs' Second Amended Set of Requests for Production of Documents to Wholesaler Defendants specifically requested production of "final written indemnification agreements applicable to any claims currently pending in MDL 2875 against Wholesaler Defendants." Dkt. No. 509. Additionally, Requests for Production Nos. 3 and 4 in Plaintiffs' Second Set of Requests for Production of Documents to Wholesaler Defendants requested production of "Supply/Distribution Agreements relating to" Wholesalers' purchases of VCDs from Manufacturers and Wholesalers' sales of VCDs to Retail Pharmacies. Dkt. No. 1306.

Each Wholesaler served written responses to both sets of Plaintiffs' Rule 34 Requests for Production, and Wholesalers, Manufacturers, and Retail Pharmacies collectively produced the responsive documents. Specifically, with respect to Plaintiffs' Request for Production No. 21 regarding "final written indemnification agreements," each Wholesaler produced responsive documents. Each Wholesaler and/or Retail Pharmacy also produced redacted copies of "Supply/Distribution Agreements" entered into with Manufacturer and Retail Pharmacy Defendants that were applicable to Wholesalers' purchases and/or sales of VCDs during the relevant time period. Those "Supply/Distribution Agreements" contained provisions regarding indemnification and defense obligations between Wholesalers and

Manufacturers and/or Retail Pharmacy Defendants.  And, those agreements included any relevant "duty to defend" provision.

Plaintiffs also served each Wholesaler with a Rule 30(b)(6) Notice of Deposition. Dkt. Nos. 1548, 1574, and 1593. That Notice was also the product of negotiation between the parties, and it, too, was ultimately approved by the Court. Dkt. No. 1465. Topic 16 in the Rule 30(b)(6) Notice to each Wholesaler requested testimony about "[t]he existence and general status (whether resolved or still pending) of indemnification requests made by you or to you, to or from Manufacturer Defendants or Retail Pharmacy Defendants in this litigation." *Id.* Each Wholesaler designated multiple individuals to appear for depositions to testify regarding all of the topics identified in Plaintiffs' Rule 30(b)(6) Notices, including Topic 16. At no time did Plaintiffs take issue with any of the discovery provided by the Wholesalers, including their written discovery responses, document productions, or Rule 30(b)(6) witnesses' testimony.

Then, on January 28, 2022 and March 17, 2022, months after the October 4, 2021 close of discovery in this matter (Dkt. No. 863), Plaintiffs for the first time informally requested additional discovery from Wholesalers about the particulars of their defense and indemnification arrangements in this litigation. Dkt. 2042-2; Dkt. 2007-1. In particular, Plaintiffs' counsel Mr. George Williamson sent a letter to Defendants' then-liaison counsel, Mr. Seth Goldberg, dated March 17, 2022, seeking

information about the existence and status of agreements among and between Defendants regarding defense and indemnification issues. Dkt. 2007-1. While some of the information requested from Wholesalers in Plaintiffs' March 17, 2022 letter had previously been provided in Wholesalers' documents produced in responses to Plaintiffs' Requests for Production and in the 30(b)(6) depositions, other information requested was *not* the subject of any prior discovery request to Wholesalers. For example, Plaintiffs' March 17, 2022 letter for the first time requested that Wholesalers "disclose" whether any entity "has undertaken your defense [in this litigation] or reimbursed your costs of defense, and where reimbursements made, state the amount." *Id*. None of those requests, as well as several other requests enumerated in Plaintiffs' March 17, 2022 letter—for example, any disputes regarding defense and/or indemnification—were the subject of any prior discovery requests served on Wholesalers. Consequently, prior to Wholesalers' receipt of Plaintiffs' March 17, 2022 letter, they never had an opportunity to object to Plaintiffs' new requests included in that letter—including on relevance and privilege grounds—because the requests had never before been made. Similarly, the Court was never given the opportunity to rule on the propriety of many of the types of requests in Plaintiffs' March 17, 2022 letter or any objections by Wholesalers to the requests.

On April 12, 2022, Plaintiffs served their agenda letter for the April 13, 2022 bi-weekly status conference with all liaison counsel. It included only one topic: "Status of Indemnification Meet and Confers." Plaintiffs' agenda letter specifically requested that the Court mandate "all defendants be required to meet and confer on the issues raised in Plaintiffs' March 17, 2022 letter." Dkt. No. 2006.

On April 13, 2022, the Court held the routine bi-weekly status conference with liaison counsel for Plaintiffs and liaison counsel for Defendants—and, as is customary, with no other defense counsel in attendance. At the limited attendance status conference, Plaintiffs' counsel asked the Court to set a deadline of April 30, 2022 for all Defendants to meet and confer with Plaintiffs' counsel about the discovery requests in the March 17, 2022, letter. *See* Transcript of April 13, 2022 Status Conference, p. 4. The Court agreed to enter such an order over Defendants' objections, including that a simple requirement of a meet and confer did not warrant a full order. *Id*., pp. 5-9. Plaintiffs' counsel was directed to submit a proposed order "reflecting the fact that the meet and confer on these agreements is to be completed." *Id*., pp. 9-10.

The next day, on April 14, 2022, Plaintiffs' counsel submitted a letter and a proposed Special Master Order ("SMO") that went much further than Plaintiffs' original agenda letter, much further than Plaintiffs' argument at the status conference, and much further than their representations to the Court about the order

7

being submitted. Dkt. No. 2014. Plaintiffs' counsel did not seek approval of Defendants' counsel of the proposed SMO prior to submission, let alone share the proposed SMO with Defendants' counsel prior to submission.

Plaintiffs' April 14, 2022 cover letter stated that the proposed SMO was submitted "as directed at the April 13, 2022 status hearing." Dkt. No. 2014. However, it is undisputed that Plaintiffs' proposed SMO went well beyond what was discussed, decided, and directed at the April 13, 2022, status conference. The proposed SMO first ordered a deadline of April 30, 2022, for the parties to meet and confer "regarding the existence and status of any agreements, written or oral, to defend and/or indemnify, and any dispute, litigation, mediation, or arbitration between Defendants, related to contaminated valsartan including the claims in this litigation." This list included information not previously agreed to in discovery, and potentially included information about communications regarding defense and indemnification "disputes" and "status." *Id.* Plaintiffs' proposed SMO went even further, however, and also included a substantive mandate that turned an order to meet and confer into an order to potentially "disclose" substantive information, including possibly privileged information:

> Defendants shall disclose to Plaintiffs any change in the status quo of such agreements, disputes, litigation, mediation, or arbitration; new demands to defend or indemnify; establishment of any new agreements; or any new dispute, litigation, mediation, or arbitration, without the need for Plaintiffs to make any further request." *Id.*

8

No such mandate to disclose information or produce materials was discussed, requested, or ruled upon at the April 13, 2022 status conference, which as noted, was not attended by all Defendants and their counsel. As such, Wholesalers were not provided with the requisite opportunity to address in any fashion the scope, propriety, and grounds for objection to the new and broad disclosures mandated by Plaintiffs' proposed SMO.

Fifty minutes after Plaintiffs' counsel's *ex parte* submission of the proposed SMO, Defendants' counsel emailed the Court to note Defendants' objection to the entry of the proposed SMO based on concerns about the scope. *See* Email from Jason Reefer, Esq. to Hon. Thomas Vanaskie (Ret.) dated April 14, 2022, Ex. B. The Court responded and acknowledged Defendants' objections. *See* Email from Hon. Thomas Vanaskie (Ret.) to Jason Reefer, Esq. dated April 14, 2022, Ex. C. The Court confirmed that Plaintiffs' proposed SMO, which included a new mandate for certain disclosures by all Defendants, went beyond that which was discussed—and therefore, beyond which was ruled on—at the status conference. *Id.* Nevertheless, the Court entered Plaintiffs' proposed SMO, with just one modification regarding the filing of a status report. Dkt. No. 2015. However, the Court stated that its rationale for entering Plaintiffs' proposed SMO—despite the fact it was submitted without consultation and exceeded what was discussed at the status conference— was the belief that "it is appropriate to impose *a duty of supplementation* as requested

9

by Plaintiffs" as parties have a duty to supplement prior discovery responses pursuant to Fed. R. Civ. P. 26(e). *Id.* (emphasis added). The Court's explanation for entry of SMO 64 thus suggested that it intended the Order to *only* require that which the Rules already require: supplementation of prior information produced in discovery in response to proper discovery requests. The Court confirmed that intention at the May 11, 2022, status conference. *See* 5/11/22 Trans., p. 15:16-18.

Now, despite the Court's explicit confirmation that SMO 64 was only intended to require basic *supplementation* of past discovery responses, Plaintiffs want more. Plaintiffs now request that the Court order, via SMO 64, disclosure of information from Wholesalers regarding defense and indemnification issues that was never the subject of any discovery served on Wholesalers and for which Wholesalers have sound objections. *See* 5/11/22 Trans., pp. 5:6-7; 7:24-9:11; 14:7-11 (Plaintiffs' counsel's repeated requests that the Court simply enforce SMO 64 as written to require disclosure of indemnification and Defense Information). In particular, to the extent Plaintiffs seek to enforce SMO 64's requirement that "Defendants shall disclose to Plaintiffs any change in the status quo of such agreements, disputes, litigation, mediation, or arbitration; new demands to defend or indemnify; establishment of any new agreements; or any new dispute, litigation, mediation, or arbitration, without the need for Plaintiffs to make any further request," that requirement encompasses several matters that are *not* subject to supplementation

10

under Fed. R. Civ. P. 26(e) because *there were no prior discovery requests to Wholesalers about those matters.*[3]

Therefore, for the reasons that follow, Wholesalers request that the Court issue an Order to clarify that SMO 64 requires only that Wholesalers timely supplement their prior discovery responses in accord with Rule 26(e), if necessary, and does not impose any new duty on Wholesalers to provide information regarding production or disclosure of Defense Information or indemnification information beyond that which was timely requested by Plaintiffs and approved by the Court in Plaintiffs' prior discovery requests.

## II.   ARGUMENT

### A.   Neither Rule 26(e) Nor SMO 64 Requires Wholesalers to Supplement Their Discovery Responses Regarding Indemnification and/or Defense Information Beyond That Which Was Properly Requested During the Discovery Phase of the MDL.

As described above, Plaintiffs' written discovery served on Wholesalers prior to the October 4, 2021 deadline for discovery consisted of two sets of Requests for Production containing a total of 29 Requests. Among those 29 Requests, one requested production of "final written indemnification agreements" and two

---

[3] The following *have never been the subject of a properly-served discovery request to Wholesalers,* are not relevant to the claims in the litigation, and are protected by privilege: information about existence of defense agreements, communications regarding defense and/or indemnification agreements, and dollar amounts and percentages of reimbursed defense costs and payments Wholesalers have received or paid as a result of indemnification obligations.

11

requested production of "Supply/Distribution Agreements" that contained provisions regarding indemnification. Plaintiffs' Rule 30(b)(6) Notice also sought testimony from a representative of each Wholesaler on the issue of "[t]he existence and general status (whether resolved or still pending) of indemnification requests made by you or to you, to or from Manufacturer Defendants or Retail Pharmacy Defendants in this litigation." That is the entire scope of prior discovery to Wholesalers regarding indemnification issues. Wholesalers responded to all of those requests, and Plaintiffs raised no objections to those responses.

There also is no dispute that the Court entered SMO 64 with the intention that it only required Wholesalers to *supplement* prior discovery responses pursuant to Rule 26(e). SMO 64 was not intended to broaden the discovery to Wholesalers on any issue, including issues regarding defense and indemnification agreements. And the language of Rule 26(e)(1) is clear:

> A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

Plaintiffs' Defense Information requests were first made well after the close of discovery via an email and a letter. Plaintiffs did not make those requests in any

12

Rule 33 Interrogatory or Rule 34 Request for Production served on Wholesalers in the MDL. Further, none of the new requests seek information that is required to be included in a Rule 26(a)(1) initial disclosure. Therefore, Plaintiffs are not entitled to Rule 26(e) supplementation regarding the information sought by the new requests, as the new requests were never the subject of prior discovery served on Wholesalers.

Finally, while deposition testimony provided by Wholesalers' representatives in response to Plaintiffs' Rule 30(b)(6) Notices of Deposition is not subject to supplementation under Rule 26(e), in an effort to resolve Plaintiffs' requests through the meet and confer process, Wholesalers informally supplemented the information previously provided in deposition regarding the existence and general status (whether resolved or still pending) of indemnification requests made by and to Wholesalers. That updated information was provided to Plaintiffs' counsel George Williamson via phone conferences with counsel for the individual Wholesalers on May 3, 2022 (AmerisourceBergen) and May 9, 2022 (Cardinal Health and McKesson). Pursuant to those conversations and follow-up correspondence from Mr. Williamson (Ex. A), as well as Plaintiffs' letter filed with the Court on May 10, 2022 regarding the status of meet and confers on Plaintiffs' inquiries regarding indemnification (Dkt. No. 2055), it is Wholesalers' understanding that Plaintiffs now have received all of the updated information on indemnification issues that they were

13

seeking from Wholesalers, and *no issues remain between the parties regarding Plaintiffs' requests for information about indemnification agreements*.

At bottom, Rule 26(e) cannot impose a duty on Wholesalers to supplement discovery that was never served. To the extent Plaintiffs rely upon SMO 64 to attempt to require Wholesalers to provide information about defense and/or indemnification agreements that was not the subject of a prior discovery request to Wholesalers, the Court should clarify that SMO 64 does not require such disclosures, and only requires supplementation of prior discovery responses, if necessary, in accordance with Rule 26(e).

**B.    The Defense Information Is Not Discoverable In Any Event Because It Is Not Relevant to the Litigation.**

**1.    The Defense Information is not relevant to Plaintiffs' claims.**

Even if Plaintiffs had requested the Defense Information prior to the close of discovery on October 4, 2021, that information would not have been discoverable (and remains non-discoverable) because it is not relevant to any of Plaintiffs' claims. The scope of discovery is measured against the complaint and its claims. *See Castellani v. City of Atl. City,* 2015 WL 1578990, at *2 (D.N.J. Apr. 9, 2015). "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999). Specifically, Federal Rule of Civil Procedure 26(b)(1) provides:

14

> Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense and proportional to the needs of the case** . . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable.

(emphasis added). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "When a party objects to discovery requests, the burden falls on the party seeking the discovery to show the relevance of the information requested." *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *2 (D. Del. May 8, 2013).

It is indisputable that the Defense Information Plaintiffs now seek is not relevant to any of Plaintiffs' *claims* in this litigation. Plaintiffs' counsel has repeatedly admitted as much and concedes the true purpose of these belated requests is for the purpose of enhancing Plaintiffs' settlement discussions. In Plaintiffs' counsel's letter of March 17, 2022, to Defendants' liaison counsel, Mr. Williamson clearly stated:

> As discussed at the February 2, 2022, Case Management Conference, Plaintiffs lack material information regarding Defendants' defense and indemnity agreements and obligations, including what if any payments have been made, and whether there are any ongoing disputes. **Plaintiffs require this information to engage in the fulsome settlement negotiations contemplated by the Court.**

(emphasis added). At the April 13, 2022, status conference, Plaintiffs' counsel Mr. Slater reiterated that the information requested in Plaintiffs' March 17, 2022, letter was "critical for [Plaintiffs] to understand as [they] embark on the resolution process." *See* 4/13/22 Trans., p. 6:4-5. Further, at the May 11, 2022, status conference, Plaintiffs' counsel Mr. Slater again advised the Court that Plaintiffs are seeking the Defense Information "so [Plaintiffs] would know entering into this settlement negotiation phase . . . what the relationships are as between the various defendants as we enter into these negotiations." *See* 5/11/22 Trans., p. 8:4-8.

There is no mystery about why Plaintiffs are requesting Wholesalers disclose the Defense Information. Plaintiffs want this information for the purposes of conducting settlement negotiations, and for no other reason. They are *not* requesting information because it tends to make the existence of any fact that is of consequence to the determination of any claim against Wholesalers more or less probable. Therefore, information about the existence of and/or details regarding defense agreements, if any, is irrelevant on its face. The information has nothing to do with any claim made by Plaintiffs against Wholesalers. Plaintiffs' request that the Court require Wholesalers to disclose this information for settlement negotiation purposes should be denied. *See, e.g.*, *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2010 WL 4715951, at *1 (D. Ariz. Nov. 15, 2010) (Plaintiffs' claim that they needed disclosure of defendant's indemnification agreement to fully understand

16

defendants' settlement position did not make that agreement relevant and discoverable).

### 2. The Defense Information is not discoverable, as Judge Schneider denied similar requests for Plaintiffs' litigation funding information as irrelevant.

Further, Wholesalers note that the Court is not writing on a blank slate with respect to this issue. On September 18, 2019, Judge Schneider issued an Opinion and Order in this case addressing Defendants' request for discovery of "Plaintiffs' agreements and communications with any third-party funders of the litigation . . ." *See In Re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Products Liab. Litig.*, 405 F. Supp.3d 612, 614 (D.N.J. 2019). The Court found that the information requested by Defendants regarding Plaintiffs' litigation funding was irrelevant to the claims and defenses in the case, and therefore not discoverable. *Id.* at 615. Judge Schneider determined that "Plaintiffs' litigation funding is a 'side issue' that has nothing to do with addressing the key issues in the case . . ." *Id.* at 616.

If the existence of and details regarding Plaintiffs' agreements and communications with third-party funders of this litigation is irrelevant and not discoverable, then the same is true with respect to Wholesalers' Defense Information, if any. The existence of any such defense agreements, their details, and/or communications about those agreements are equally irrelevant to Plaintiffs'

17

claims and have nothing to do with addressing the key issues in the case. Therefore, Plaintiffs' extra-judicial requests for this information should be denied on relevance grounds.

      **3.**      **The limits of litigation funding discovery are articulated in Local Rule 7.1.1 and demonstrate that the Defense Information is not relevant.**

Finally, Wholesalers note that on June 21, 2021, this Court enacted Local Rule 7.1.1. That Rule requires a party that receives litigation funding from a third-party on a non-recourse basis in return for a financial interest in the litigation to file a statement with the Court that makes certain disclosures about the funder, the party's relationship with the funder, and the nature of the funder's financial interest in the litigation. While Local Rule 7.1.1 is not applicable to any arrangements between Defendants (all of whom are parties) regarding agreements to indemnify or to defend, the scope of the rule is instructive in this instance. Local Rule 7.1.1 does not require the level of detailed information, including about communications, disputes, and amounts paid, that Plaintiffs now seek from Wholesalers concerning their defense agreements with Manufacturers and/or Retail Pharmacies, if any. As such, it is incongruent to permit Plaintiffs to seek more extensive information about Wholesalers' defense agreements than Plaintiffs are required to provide about their own third-party litigation funders per Local Rule 7.1.1.

**C.**   **The Defense Information and/or Other Indemnification Information is Not Discoverable as it is Protected By the Common Interest Doctrine and Other Privilege.**

At present, SMO 64 requires Wholesalers to meet and confer with Plaintiffs about the "existence and status of any agreements, both written and oral, to defend and/or indemnify" and then subsequently requires Wholesalers to "disclose to Plaintiffs," among other things, "changes in the status quo of such agreements," "new demands to defend or indemnify," or "establishment of any new agreements . . . without the need for Plaintiffs to make any further request." While Plaintiffs admit that Wholesalers have fulfilled even their interpretation of the discovery requests and SMO 64 as to indemnification (but not defense)[4], and SMO 64 does not directly require production of communications about agreements to indemnify or defend, Plaintiffs' extra-judicial discovery requests coupled with Plaintiffs' broad interpretation of the language of SMO 64 could be read to include disclosure of the following information (all of which has *no relevance to the litigation* as described *supra*): (1) communications between defendants and their own counsel regarding defense, which is clearly subject to the attorney-client and/or work product privileges (*see Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-24, 1428 (3rd Cir. 1991)); (2) documents prepared in anticipation of litigation

---

[4] *See* Email from George Williamson, Esq. to D'Lesli Davis, Esq. dated May 10, 2022, Ex. A.

19

or for trial, which are clearly protected by Fed. R. Civ. P. 26(b)(3)(A); (3) defendants' attorneys' or other representatives' mental impressions, conclusions, opinions, or legal theories, which are clearly protected by Fed. R. Civ. P. 26(b)(3)(B); and (4) communications between co-defendants and/or co-defendants' counsel regarding indemnification and defense agreements, all of which are subject to the protection of the common interest doctrine.

*In re Teleglobe Commc'ns Corp.,* 493 F.3d 345 (3d Cir. 2007), is the leading Third Circuit case on the common interest doctrine. The doctrine allows "attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *Id*. at 364. If applicable, the doctrine protects communications "made between attorneys when all members of the community share a common legal interest' in the shared communication." *Id*. The doctrine "enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." As noted by the Restatement (Third) of the Law Governing Lawyers, § 76(1), cited with approval in *Teleglobe*, "[i]f two or more clients with a common interest in a litigated or non-litigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client ... is privileged as against third persons." *Teleglobe*, 493 F.3d at 366. The common-interest doctrine is not an

20

independent privilege, but rather, an exception to the general rule that disclosure of a privileged communication to a third-party waives the privilege. *See, e.g., Cavallaro v. United States,* 284 F.3d 236, 250 (1st Cir. 2002).

Communications regarding indemnification and defense fall squarely within the common interest doctrine. *See* Fed. R. Civ. P. 26(b)(3); *Am. Eagle Outfitters, Inc. v. Payless ShoeSource, Inc.*, 2009 WL 3786210 at *3-5 (E.D.N.Y. Nov. 12, 2009) (communications relating to the scope of the indemnification provision, even when interests diverge, are protected under the common interest rule and the work product doctrine); *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2021 WL 149841 at *9-10 (E.D. Tenn. Jan. 15, 2021) (communications between the non-party indemnitor and the defendant indemnitee were subject to the common interest privilege and should not be produced); *In re Skiles*, 102 S.W.3d 323, 324, 326-27 (Tex. App. 2003) (where insureds were sued and insurer denied coverage, causing insureds to sue insurer for coverage and defense, insureds' counsels' communications with insurer were privileged).

For example, in *Keybank Nat'l Ass'n v. Williams*, 2022 WL 278516 at *1 (D. Colo. Jan. 31, 2022), KeyBank sought "joint defense, indemnification and common interest agreements entered into . . . between Defendants and [co-defendant] Newmark," as well as "communications between Defendants (or their legal counsel) and Newmark." Defendants objected on the ground that such communications were

protected by the common interest rule and the Magistrate agreed. *Id.* On KeyBank's appeal, the district court entered an order upholding the Magistrate Judge's rulings in their entirety. *Id.* at *3-4.

Here, all Defendants, including the three Wholesalers, are all represented by different attorneys. There is no debate that Defendants in this MDL are facing common litigation opponents and all Defendants share a similar legal interest in the outcome of this litigation. Therefore, communications exchanged among counsel for Defendants in the course of preparing and executing a defense, including those related to the funding of the attorneys' fees and costs of the litigation, which necessarily contain privileged information or attorney work product, are protected from disclosure by the common interest doctrine as set forth in *Teleglobe*. To the extent Plaintiffs attempt to obtain production of those communications or disclosure of the contents of those communications, in any form, Plaintiffs' requests must be denied.

## III.   CONCLUSION

For all of the reasons stated above, Wholesalers respectfully request that the Court issue an Order that clarifies that SMO 64: (1) only requires Wholesalers to timely supplement their prior discovery responses in accord with Rule 26(e), if necessary; (2) does not impose any new duty on Wholesalers to disclose information regarding indemnification and/or Defense Information beyond that which was

requested by Plaintiffs and approved by the Court in Plaintiffs' prior discovery requests; and (3) to the extent that Plaintiffs seek any further indemnification and/or Defense Information beyond that provided by Wholesalers, such request is denied.

Dated: May 23, 2022                Respectfully submitted,

                                   By: /s/ *Jeffrey D. Geoppinger*
                                           Jeffrey D. Geoppinger
                                           Liaison Counsel for Wholesaler
                                           Defendants

                                           ULMER & BERNE LLP
                                           Jeffrey D. Geoppinger
                                           Liaison Counsel for Wholesalers
                                           312 Walnut Street, Suite 1400
                                           Cincinnati, OH 45202
                                           Tel: (513) 698-5038
                                           Fax: (513) 698-5039
                                           jgeoppinger@ulmer.com

                                           *Counsel for AmerisourceBergen*
                                           *Corporation*

                                           CROWELL & MORING
                                           Andrew D. Kaplan
                                           Daniel T. Campbell
                                           Marie S. Dennis
                                           Emily G. Tucker
                                           Luke J. Bresnahan
                                           1001 Pennsylvania Avenue NW
                                           Washington, D.C. 20004
                                           Tel: (202) 624-1000
                                           Fax: (202) 628-5116
                                           akaplan@crowell.com
                                           dcampbell@crowell.com
                                           mdennis@crowell.com
                                           etucker@crowell.com
                                           lbresnahan@crowell.com

                                           *Counsel for Cardinal Health, Inc.*

24

NORTON ROSE FULBRIGHT US LLP
D'Lesli M. Davis
Ellie K. Norris
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
dlesli.davis@nortonrosefulbright.com
ellie.norris@nortonrosefulbright.com

***Counsel for McKesson Corporation***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 23, 2022, a copy of the foregoing document was

served on all counsel of record via CM/ECF.


By: _/s/ Jeffrey D. Geoppinger_____
Jeffrey D. Geoppinger
Liaison Counsel for Wholesaler Defendants

26