

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA  15219
412.263.2000     FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.: 412.263.1816
DIRECT FAX NO: 412.263.4246
FILE NO.:  MYLAN-112578
EMAIL:  cct@pietragallo.com

May 31, 2022

**Via ECF**

| | |
|---|---|
| The Hon. Robert J. Kugler | Special Master the Hon. Thomas Vanaskie |
| United States District Judge | Stevens & Lee |
| USDC, District of New Jersey | 1500 Market Street, East Tower, 18th Floor |
| Mitchell H. Cohen Building & U.S. Courthouse | Philadelphia, PA 19103 |
| 4th & Cooper Streets, Room 1050 | |
| Camden, NJ 08101 | |

Re:   *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
       USDC, District of New Jersey, No. 1:19-md-2875-RBK-KMW

Dear Judge Kugler and Judge Vanaskie:

I write on behalf of the Defendants' Executive Committee to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on Wednesday, June 1, 2022. Defendants do not anticipate that any of the items on the agenda will require confidentiality. In light of the significance of the topics on this agenda, however, Defendants respectfully request that the Court conduct tomorrow's Conference via Zoom.

**1.   Case Management Plan**

On May 19, Plaintiffs sent defense counsel a letter proposing that the parties exchange expert reports on what they term "liability" issues, followed by *Daubert* briefing with respect to those experts. The letter further proposed that the parties file dispositive motions, apparently with respect to these so-called liability issues, although the letter was not clear on that point. Additionally, Plaintiffs have proposed deadlines for the filings of Answers and Cross-Claims and for discovery with respect to losartan and irbesartan claims.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 2

The parties held a meet-and-confer on Friday, May 27, at which time Plaintiffs confirmed that they are defining "liability" as questions related to Defendants' alleged misconduct, rather than actual liability to a particular plaintiff. Plaintiffs further stated that they intend for the parties to file motions with respect to "all cases" or the three class action "Master Complaints." In response, Defendants expressed concerns that isolating a defendant's alleged misconduct from other elements of Plaintiffs' various causes of action would be improper (and inefficient) and that the Court cannot address the class claims while the scope of any potential classes remains an open question (particularly given Defendants' strong position that certifying a class would be highly improper).

For these reasons, Defendants proposed, in the alternative, that the parties work up 14 personal injury cases and then proceed through expert reports, discovery, and *Daubert* motions in those cases. And because the Court has indicated that it does not intend to try "bellwether" personal injury cases, those cases could then be remanded to their home districts, trial-ready.

Defendants further propose that the parties meet and confer on the timing of a case management schedule after the Court provides guidance regarding the parties' respective proposals.

Below, we discuss these issues in more detail.

A.   **Plaintiffs' Proposal Contravenes Established Law.**

Plaintiffs' proposal is premature and improper because: (1) the parties cannot litigate Defendants' conduct in the abstract, isolated from the other elements that make up a cause of action and isolated from any specific case; (2) the Court cannot enter judgment for or against a class that has not been certified, and entering judgment on named plaintiffs' claims would prompt unfair

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 3

one-way intervention; and (3) without specific cases, any summary judgment briefing would have to be briefed under all 50 states' laws, which would be highly inefficient and would waste the parties' and Court's resources.

*First*, Plaintiffs' proposal to proceed on the narrow question of Defendants' alleged misconduct while ignoring the remaining elements of any substantive cause of action does not make any sense. Plaintiffs apparently propose to brief, and have the Court decide, a question they term "liability." But as Defendants understand it, they do not actually want the parties to address—or the Court to decide—the question whether any actual defendant is liable to any actual plaintiff on any actual cause of action. Instead, they want to seek partial summary judgment on the singular issue of Defendants' conduct—a judgment that by itself would not decide any cause of action.

Courts routinely reject similar efforts to "isolate the issue of potential liability-creating conduct from the issues of causation and damages," often in the context of motions seeking to certify issues classes. *Kohn v. American Housing Found., Inc.*, 178 F.R.D. 536, 542 (D. Colo. 1998); *see also, e.g.*, *Ballew v. Matrixx Initiatives, Inc.*, No. CV-07-267-RHW, 2008 WL 4831481, at *3 (E.D. Wash. Oct. 31, 2018) ("The [c]ourt should not certify a class based on this broad, abstract question. . . . Answering this question resolves no class member's claims and only invites the difficult question of how to proceed once the question is answered."). As these courts have recognized, issues like causation and damages are "integral parts of any cause of action," and "the [so-called] liability issue cannot be decided in the abstract." *Kohn*, 178 F.R.D. at 542-43. Moreover, deciding one discrete issue offers essentially no efficiency benefit. If Defendants were found to have committed misconduct, the parties would still have to prepare for and hold complicated class trials on all the remaining elements of the various causes of action. And any

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 4

minimal efficiency benefits that did exist would be purchased at the price of fairness to Defendants, since any misconduct ruling in Plaintiffs' favor might "constitute an invitation to make claims not previously contemplated." *Id.* at 453.

*Second*, Plaintiffs' proposal is further improper because it calls for the parties to submit to dispositive motion practice on "all the cases" or "the Master Complaints" before any class has been certified. At the risk of stating the obvious, the Court has no authority to enter judgment either for or against a class that has not been certified. The unnamed individuals that make up the overwhelming majority of the putative classes are not parties before the Court—and may never be. Therefore, unless and until a class is certified, they are not bound by this Court's judgments, whether for better or for worse. *See, e.g.*, *Koehler v. USAA Cas. Ins. Co.*, No. 19-715, 2019 WL 4447623, at *3 (E.D. Pa. Sept. 17, 2019) ("until a class is certified, absent members of the class are not bound by a ruling on the merits"); *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1087 (3d Cir. 1980) ("until [a certification] order is filed, the members of the [putative] class are not bound by any judgment").

If what Plaintiffs actually mean is that the Court should rule on the claims advanced by certain individual named plaintiffs prior to a class certification ruling, such an approach is barred by the rule against "one way intervention." That rule protects defendants from precisely this scenario—i.e., "where the members of a class not yet certified can wait for the court's ruling on summary judgment and either opt in to a favorable ruling or avoid being bound by an unfavorable one." *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (citing *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)); *see Koehler*, 2019 WL 4447623, at *7 (if summary judgment were granted for plaintiffs they could "then move for

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 5

certification knowing that the class members w[ould] be able to take advantage of that favorable ruling" but if it were denied "that unfavorable decision w[ould] not bind the currently-absent class members" who could "try again"); *Windber Hosp. v. Travelers Prop. Cas. Co. of Am.*, No. 3:20-CV-80, 2020 WL 4012095, at *1 (W.D. Pa. July 14, 2020) (declining to rule on summary judgment "until after the [c]ourt has ruled on a motion to certify a class" to avoid "potential unfairness to [d]efendant"). That is because, although "absent members of the class are not bound by a ruling on the merits," the defendant may be "bound from the outset."[1] *Koehler*, 2019 WL 4447623, at *3. Put simply, proceeding to summary judgment decisions that could potentially bind Defendants but only a tiny portion of the putative classes would present a profoundly unfair game of "heads I win, tails you lose."

**Third**, even if the Court could proceed to dispositive motion practice while the class certification question is still pending, it would be profoundly impractical and inefficient to do so. Not only is the question whether any class will be certified still open, but so too are questions regarding the scope of any certified class or classes. Plaintiffs have proposed more than 100 economic loss subclasses under the laws of 52 states and territories advancing a variety of legal theories, in addition to two medical monitoring classes under the laws of essentially every state. At this point, pursuant to choice-of-law rules, the parties would have to brief summary judgment under the disparate laws of all these states, resulting in thousands of pages of briefing.

For all of these reasons, Plaintiffs' proposal is premature, inefficient and contrary to law.

---

[1] Defendants do not concede that any summary judgment ruling in favor of any named plaintiffs would bind them as to the claims advanced by absent class members or the putative class as a whole, but the mere possibility of "one-way intervention" strongly counsels against Plaintiffs' proposal.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 6

### B.     Defendants' Proposal Is Straightforward and Fair.

In contrast to Plaintiffs, Defendants offer a straightforward proposal, similar to those followed in other MDL proceedings, that would be fair to both sides and move the litigation forward, while mindful of the Court's desire not to try bellwether, personal injury cases in the MDL proceeding.

Specifically, Defendants propose that the parties work up to 14 individual cases through expert discovery, after which this Court can remand those cases to their transferor courts for pretrial motions (summary judgment and motions in limine), while retaining other cases, or simply terminate the MDL proceeding.

Defendants understand that the Court has previously indicated that it does not intend to try bellwether cases. Nonetheless, by fully working up certain bellwether cases in the MDL short of trial, the parties and the court system can enjoy the benefits of coordination with respect to issues such as overlapping experts. When the cases are remanded to their home districts, they will be ready for case-specific, state-law-specific dispositive motion and trial, providing timely resolution of those cases and guidance toward potential global resolution of the litigation. Other MDL courts have taken this approach. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, ECF No. 2941 (N.D. Ohio Nov. 19, 2019) (attached as Ex. A) (suggesting remand in certain bellwether cases and stating that "the global discovery, pretrial rulings, and other litigation matters [in the MDL] provide a good base upon which the transferor courts can build"), *remand granted*, 2020 WL 582151, at *2 (J.P.M.L. Feb. 5, 2020) (approving "strategic" "bellwether remand plan"); *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-CV-17000, 2007 WL 1702953, at *1 (N.D. Ohio 2007) (discussing bellwether case to be "remanded to the . . . transferor court for trial"); *see also*

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 7

Jonathan Steinberg, *The False Promise Of MDL Reform: How Mandatory Bellwether Trial Consent Would Further Mire Multidistrict Litig.*, 96 N.Y.U. L. Rev. 809, 844 (2021) (discussing option of "remanding the desired bellwether case and requesting a judge in the transferor jurisdiction take up the case").

  The parties have already narrowed the personal injury plaintiff pool to selected 28 potential bellwethers. Now that initial discovery has been taken on each of these 28 potential bellwethers, the parties are equipped to further reduce the bellwether set to a number that can be manageably worked up for trial. To that end, Defendants propose to reduce the bellwethers by half. To prevent parties from gaming the case-selection process and to avoid preparing only the "strongest" and/or "weakest" cases, which would provide little useful information about the value of more typical ones, Defendants propose that the Plaintiffs' Executive Committee choose seven cases from the Defendant-selected pool and that the Defendants' Executive Committee choose seven from the Plaintiff-selected pool. Similar procedures have been regularly adopted in other MDLs. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 791 (E.D. La. 2007) (explaining that plaintiffs and defendants "were each permitted to designate for trial five bellwether cases" and then each "given two veto strikes" from the opposing party's pool); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM(RBB), ECF No. 1110 (S.D. Cal. Mar. 19, 2012) (attached as Ex. B) (providing that each party will pick an equal number of trial candidates, subject to veto from the other side).

  Defendants' proposal avoids all the challenges associated with the proposal that Plaintiffs advance. For starters, unlike the class cases, the scope of the individual personal injury cases is relatively well defined. Each personal injury plaintiff advances claims on his or her own behalf

(perhaps with a limited derivative claim for loss of consortium), and advances those claims under the laws of an easily ascertainable state, probably the one in which he or she was prescribed and ingested valsartan. Thus, the scope of the personal injury bellwether cases and the law that will govern them is not contingent on some future court ruling, as the class cases are. Moreover, because they are comparatively discrete, the personal injury cases can each be worked up in their entirety. Thus, the parties can address the ultimate question in each case—i.e., whether the Defendants are liable for causing injuries to Plaintiffs—rather than artificially isolating one portion of that question for advisory opinions that cannot actually dispose of any cause of action.

In short, Defendants offer a straightforward proposal that addresses cases as a whole and avoids speculating about how the class cases may look months down the line.

## C. Proposed Deadline for Filing Answers and Cross-Claims related to Valsartan

With respect to Plaintiffs' proposal that the Defendants be required to file answers and cross-claims related to valsartan by June 30, 2022, Defendants disagree that such pleadings should be required at this time. As an initial matter, in "discharging Defendants" of the requirement to file answers under the Federal Rules in CMO 2 the Court "acknowledge[d] each defendant would have pleaded they denied and/or lacked knowledge or information regarding the allegations in each complaint." (ECF No. 72). This remains as true today as it did when the Court discharged Defendants of this obligation. Moreover, the Court's anticipated rulings on the pending class certification motions will likely require filing of one or more amended complaints, and it would be inefficient to require Answers prior to resolution of the class certification motions and filing of any attendant amended complaints.

### D. Losartan and Irbesartan Discovery

During the May 27th meet and confer, Defendants also informed Plaintiffs that they do not believe engaging in discovery on the losartan and irbesartan matters is an efficient use of the parties' resources at this juncture. The next phase of this litigation – regardless of how the Court chooses to proceed in light of the competing proposals submitted above – will require significant, focused efforts from all parties to ready the valsartan cases for trial, whether on remand or before this Court. Defendants feel strongly that engaging in a second and third track of discovery will hamper those efforts.

Plaintiffs have suggested that discovery is needed to engage in settlement discussions pertaining to the losartan and irbesartan matters, but in fact to do so would require Defendants to divert their focus and resources away from the ongoing settlement efforts and would further complicate and delay an already complex settlement process. Following a similar discovery path in the losartan and irbesartan matters will not put those cases in a similar posture for potential settlement resolution at any time in the near future. Even assuming the discovery process can be streamlined for these products, the valsartan matters have only arrived at this stage after more than three years of focused litigation. Furthermore, the losartan and irbesartan supply chains do not mirror the valsartan supply chain. Thus, it is not the case that the same parties can simply "ramp up" the discovery for these products using the same document databases and sets of corporate witnesses.

Defendants will discuss internally to determine how they might more efficiently provide information on the losartan and irbesartan matters. However, such discovery should not shift focus away from the valsartan cases at this critical stage, and at a minimum the parties should meet and

confer further about this issue after the Court sets out the schedule for the next phase of the valsartan litigation.

   2. **Motion for Clarification re: NDEA**

Plaintiffs have indicated that they intend to raise Defendants' Joint Motion for Clarification regarding *Daubert* Hearing Order 1 [Dkt. 1976], as well as a potential cross motion by Plaintiffs, at the CMC. Defendants are uncertain as to what specific issues Plaintiffs intend to raise. As indicated at the April 29, 2022 CMC, Defendants agree with Plaintiffs that the issue raised in Defendants' Motion can be deferred until after the resolution of Rule 23 Motions. (*See* Letter from A. Slater, Dkt. 2026 ["The Court directed the Parties to meet and confer about whether these motions are necessary at this time, and the Plaintiffs agree that determination of the motions is not currently necessary."].) Defendants will be prepared to address any questions that the Court might have regarding this topic.

   3. **Defendants' Motion for Leave to File Class Certification Surreplies and Request for Class Certification Hearing**

Defendants filed a motion on May 20, 2022 [Dkt. 2069] (the "Surreply Motion"), seeking leave to file *instanter* four short surreply briefs narrowly focused on new arguments, new authorities, and new expert and factual matters raised in Plaintiffs' reply briefs in support of Plaintiffs' Motions for Class Certification, and requesting the Court set Plaintiffs' Motions for Class Certification for a hearing. Plaintiffs filed a letter on May 23, 2022 [Dkt. 2070], opposing Defendants' request to file surreply briefs and taking no position on the request for a hearing.

The filing of surreply briefs is well-justified in light of Plaintiffs' reply briefs. Local Civil Rule 7.1(d)(6) requires leave of the Court to file a surreply. There is ample authority supporting the filing of surreplies where, as in this case, Plaintiffs have submitted significant new exhibits,

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 11

new legal argument, and new authorities in their reply briefs, and have thereby introduced new issues into the class certification debate. *See, e.g.*, *Laurens v. Volvo Car USA, LLC*, No. 218CV08798JMVCLW, 2020 WL 10223641, at *6 & n.9 (D.N.J. Dec. 8, 2020); *Morgan v. Rohr, Inc.*, No. 320CV00574GPCAHG, 2021 WL 4806472, at *2–3 (S.D. Cal. Oct. 14, 2021); *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).

Here, Plaintiffs' reply briefs have introduced numerous new arguments, authorities, and exhibits in support of Plaintiffs' efforts to certify more than 120 multi-state subclasses seeking billions of dollars of damages—many of which represent large departures from the positions Plaintiffs took in their opening briefs. The proposed surreplies (Exhibits 1 through 4 to the Surreply Motion) are short, narrow, and targeted specifically to the most critical errors, misstatements, and omissions contained in Plaintiffs' replies:

First, the Consumer Reply[2] abandons Plaintiffs' original Trial Plan and asserts no new plan is required, asks the Court to devise unspecified "imaginative solutions" to manageability using various previously unreferenced tools, proposes an entirely new and erroneous three-part standard to judge proposed state law groupings, relies heavily on new arguments and new authorities never raised in Plaintiffs' opening brief, misstates various state laws in an attempt to challenge Defendants' state-law variation appendices, misstates the facts with regard to the information available to trace putative class members' VCDs to Wholesalers, and contains nearly 80 new exhibits, including a new supplemental expert report, a new and revised list of state law "groupings," and new sample trial plans and jury instructions.

Second, the Medical Monitoring Reply abandons Plaintiffs' initial state law groupings and

---

[2] This position statement uses the same capitalized terms as the Surreply Motion.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 12

proposes entirely new groupings based on whether states require "present physical injury," "subcellular injury," or "no injury at all," abandons the medical monitoring plan proposed by Plaintiffs' oncology expert and proposes the Court should devise unspecified new remedies after classes are certified, attempts to undertake a new and separate analysis of state law variations while mischaracterizing numerous authorities and relying on previously uncited authorities, seeks to bolster Plaintiffs' defective "Lifetime Cumulative Thresholds" by relying on previously uncited general causation experts, and presents 15 new exhibits.

Third, the TPP Reply asserts a new and novel position that the Court may certify classes based solely on its rulings at the motion to dismiss stage and urges the Court to use Rule 23 to abridge, enlarge, or modify substantive state law rights and to erase state law variations in contravention of the Rules Enabling Act.

A hearing on Plaintiffs' Motions for Class Certification is also appropriate under the circumstances. The Court has received hundreds of pages of briefing and thousands of pages of appendices and exhibits, and the Court's ruling on class certification has important implications for the future course of this litigation. A one-day oral argument will afford the parties an opportunity to present their positions, will afford the Court an opportunity to further conduct its rigorous analysis by having the parties address specific controversies and questions, and will create a more complete record on which the Court may decide class certification.

Plaintiffs contend Defendants did not undertake sufficient meet-and-confer efforts prior to filing the motion, and assert Defendants have provided insufficient justification to file surreplies. With respect to the first objection, Defendants' counsel conferred twice with Plaintiffs' counsel by email correspondence on May 20 prior to filing the Surreply Motion, first advising Plaintiffs'

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 13

counsel of Defendants' intention to file the motion and asking if it could be filed unopposed, and then providing a draft of the Surreply Motion when Plaintiffs' counsel responded that they had been given insufficient information regarding the basis for the request. Plaintiffs' counsel did not respond to the second communication. Regardless, Plaintiffs' objection is misplaced because a motion for leave to file surreplies is not a discovery motion and is not subject to any duty to meet and confer. *See* Fed. R. Civ. P. 37(a)(1) (requiring meet-and-confer prior to motion to compel disclosure or discovery); Local Civ. R. 26.1(d)(3) (listing other discovery disputes for which there is a duty to meet and confer). As to the second objection, both the Surreply Motion and the accompanying proposed surreplies provide ample justification for Defendants' request, as detailed in the above summary of Defendants' grounds.

4. **Update Regarding Defendants' Request for Dismissal of Paulette Silberman's Medical Monitoring Claims**

Plaintiffs' Reply Memorandum of Law in Support of the Medical Monitoring Plaintiffs' Motion for Class Certification [Dkt. 2059] indicated that Plaintiffs intend to dismiss Paulette Silberman's medical monitoring claims. Accordingly, counsel for the Defendants prepared a notice of voluntary dismissal without prejudice and provided it to Plaintiffs' counsel on May 16, 2022. (*See* Email from F. Stoy to D. Stanoch, attached as Ex. C.) Defendants request an update regarding the status of this dismissal.

5. **Plaintiff Fact Sheet Deficiencies and Orders to Show Cause**

**Cases Addressed at the April 27, 2022 Case Management Conference:**

The Court issued 10 show cause orders returnable at the June 1, 2022 Case Management Conference:

1. *Charlene Mills v. Actavis, et al.* – 21-cv-13611

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 14

2. *Robert Sanford v. Aurobindo, et al.* – 21-cv-20674
3. *James Larsen v. Actavis, et al.* – 21-cv-18313
4. *Deborah Harris v. Aurobindo, et al.* – 21-cv-6395
5. *Ulysses Payne v. Camber et al.* – 21-cv-15129
6. *Jimmie Thorn v. Mylan, et al.* – 20-cv-20603
7. *Betty Hall v. Torrent Inc., et al.* – 21-cv-20447
8. *Marion Dennis v. Solco U.S. LLC, et al.* – 20-cv-11163
9. *Chadwick Wilson v. Aurobindo Pharma, et al.* – 21-cv-20624
10. *Eric Thompson v. Aurobindo Pharma, et al.* – 21-cv-19973

The *Mills* matter has been dismissed and that order to show cause may be withdrawn as moot.

The issues in the *Sanford* and *Larsen* matters are resolved, and the show cause orders may be withdrawn.

The issues in the *Harris* and *Payne* matters remain unresolved, but the parties are working towards a resolution and request a one-month extension of the order to show cause until the June 29, 2022 Case Management Conference.

Counsel in the *Thorn, Hall*, and *Dennis* matters[3] have indicated that they will voluntarily dismiss these cases, but as of this filing have not yet done so. Defendants will provide an update at the case management conference, but if these cases are still not voluntarily dismissed by that time, Defendants will request the Court do so at the case management conference.

The issues in the *Wilson* and *Thompson* matters remain unresolved, and Defendants wish to proceed with their dismissal at the CMC.

---

[3] All plaintiffs are represented by the Serious Injury Law Group.

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 15

**Second Listing Cases – Order to Show Cause Requested:**

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these cases were previously listed on the agenda for a prior CMC. This list was provided to Plaintiffs' leadership on May 24, 2022, and a global meet and confer was held on May 27, 2022. Defendants have also been available for further discussion as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why these cases should not be dismissed.

Defense counsel will be prepared to address the individual issues with respect to each of these cases, to the extent necessary, during the June 1, 2022 Case Management Conference:

|  | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 1. | Tommy Benton v. Teva et al | 21-cv-13858 | Serious Injury Law Group | Largely deficient PFS | 4/13/22 |
| 2. | Annie Pace v. Major Pharmaceuticals, et al | 20-cv-19170 | Serious Injury Law Group | Largely deficient PFS | 4/13/22 |
| 3. | Michael Shemes v. Aurobindo et al. | 21-cv-20204 | Law Offices of Sadaka Associates | No response to deficiency notice, including no records or authorizations uploaded and declaration not signed | 3/14/22 |
| 4. | King v. Doe et al | 20-cv-08814 | Parafinczuk Wolf, P.A | No pharmacy records | 3/19/22 |

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 16

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 5. | Mary Richards v. ZHP et al | 21-cv-17150 | Hollis Law Firm | Need Medical Expenses | 3/19/22 |
| 6. | Gali Callahan v. Aurobindo Pharm, Ltd., et al. | 21-cv-20203 | Law Offices of Sadaka Associates | Substantially deficient PFS, no authorizations, medical records, medical expenses, pharmacy records | 3/22/22 |
| 7. | Margaret Tolley v. Mylan Laboratories et al | 21-cv-10130 | DeGaris Wright McCall | Substantially deficient PFS, no authorizations, medical records, medical expenses, pharmacy records | 3/21/22 |
| 8. | Katherine Peyton v. Mylan et al | 21-cv-09063 | DeGaris Wright McCall | Substantially deficient PFS, no authorizations, medical records, medical expenses, pharmacy records | 3/21/22 |
| 9. | Wayne Grubb v. Aurobindo et al | 22-cv-918 | Moore Law | No PFS Filed | 4/22/22 |

**First Listing Cases – Remaining Core Deficiencies:**

The following Plaintiff Fact Sheets contain core deficiencies which remain unresolved. This list was provided to Plaintiffs' leadership on May 24, 2022, and a global meet and confer was held on May 27, 2022. Defendants have also been available for further discussion as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 17

| | | | | | |
|---|---|---|---|---|---|
| 1. | Leona Branch v. Mylan, et al | 22-cv-582 | Levin Papantonio | Need billing records | 4/22/22 |
| 2. | Vincent Anderson v. ZHP, et al | 22-cv-449 | Levin Papantonio | Need billing records | 4/22/22 |
| 3. | Richard Vindigni v. Prinston, et al. | 21-cv-2361 | Robert F. Julian | Largely deficient PFS | 5/16/22 |
| 4. | Sheldon Walker v. Aurobindo Pharma, et al. | 22-cv-1372 | Levin Papantonio | Need billing records | 5/16/22 |
| 5. | Angela Rue | 22-cv-1222 | Cochran Firm | Need losartan info removed from PFS | 4/11/22 |
| 6. | Elie Greene | 21-cv-2875 | Serious Injury Law Group | Largely deficient PFS | 5/9/22 |
| 7. | Michael Robinette | 22-cv-01148 | Fleming, Nolen & Jez LLP | VII.A. clarity around radiation & chemotherapy treatment, amended PFS needs to be uploaded with medical expenses listed | 4/25/22 |
| 8. | E.O. Christopher Gallagher, et al. v. Hetero Labs, Ltd., et al. | 22-cv-930 | Stark & Stark | Multiple deficiencies | 5/17/22 |
| 9. | Mario Sherber v. Zhejiang Huahai Pharmaceutical, Co., Ltd., et al | 22-cv-208 | Morgan & Morgan | Multiple deficiencies | 4/19/22 |

The Honorable Robert J. Kugler
Special Master the Honorable Thomas Vanaskie
May 31, 2022
Page 18

| | | | | | |
|---|---|---|---|---|---|
| 10. | Majorie Smith, as Administrator of E.O. Erskine Smith v. Camber Pharmaceuticals, Inc., et al. | 21-cv-12740 | Serious Injury Law Group | No Amended PFS Filed. | 4/19/22 |
| 11. | William Davis, as Administrator of E.O. Leila Davis v. Hetero Labs, Ltd., et al. | 21-cv-10767 | Serious Injury Law Group | Multiple deficiencies | 4/19/22 |
| 12. | E.O. Nancy Mastbergen v. Hetero Drugs, Ltd. | 22-cv-38 | Oliver Law Group | Multiple deficiencies | 5/12/22 |
| 13. | Ernestine Williams v. Mylan Laboratories Ltd., et al | 21-cv-6946 | Douglas and London | Need billing records | 04/12/22 |
| 14. | Jeremy Darabaris v. Mylan et al | 22-cv-1048 | Levin Papantonio | No PFS Filed | PFS Due - 4/28/22 |
| 15. | Marilyn White v. Solco et al | 22-cv-1251 | Parafinczuk Wolf | No PFS Filed | PFS Due - 5/8/22 |
| 16. | Barbara McCullough v. ZHP, et al | 22-cv-1574 | Levin Papantonio | No PFS Filed | PFS Due - 5/21/22 |
| 17. | Benita King v. ZHP, et al | 22-cv-1628 | Levin Papantonio | No PFS Filed | PFS Due - 5/23/22 |
| 18. | Estate of Robert Cooper v. ZHP, et al | 22-cv-1635 | Levin Papantonio | No PFS Filed | PFS Due - 5/23/22 |

Respectfully submitted,

Clem C. Trischler

c: All counsel of record (via ECF)