# EXHIBIT B

Case 3:09-md-02087-BTM-KSC Document 1074 Filed 04/05/13 PageID.19022 Page 1 of 7
Case 3:09-md-02087-BTM-KSC Document 1107-2 Filed 06/19/13 PageID.19622 Page 2 of 8
71703

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE HYDROXYCUT MARKETING AND SALES PRACTICE LITIGATION | Case No. 3:09-md-2087-BTM-RBB<br><br>**JOINT BELLWETHER PLAN** |
|---|---|

Case 3:09-md-02087-BTM-KSC Document 1107 Filed 03/05/13 PageID.19023 Page 2 of 7
Case 3:09-md-02087-BTM-RBB Document 1074-2 Filed 01/15/13 PageID.18023 Page 2 of 7
71704

1

## BELLWETHER PLAN

**I. SCOPE OF JOINT BELLWETHER PLAN**

This Joint Bellwether Plan shall govern all individual personal injury cases that are presently pending or hereafter filed in this Court or transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordination of pretrial proceedings relating to the *In Re Hydroxycut Marking and Sales Practices Litigation*, MDL No. 2087. This Case Management Order is limited in scope to the discovery addressed herein. Additional discovery will be addressed in subsequent case management orders.

**II. PARTICIPANTS**

This Joint Bellwether Plan is filed on behalf of the Plaintiff Steering Committee ("PSC") and all the Defendants that have appeared in the MDL: the Iovate entitites: HDM Formulations Ltd., Iovate Copyright Ltd., Iovate HC 2005 Formulations Ltd. (n/k/a HDM Formulations Ltd.), Iovate Health Sciences Capital Inc., Iovate Health Sciences Group Inc. (n/k/a Kerr Investment Holding Corp.), Iovate Health Sciences Inc., Iovate Health Sciences International Inc., Iovate Health Sciences Research Inc., Iovate Health Sciences U.S.A., Inc., Kerr Investment Holding Corp. (f/k/a Iovate Health Sciences Group Inc.), Muscletech Research and Development Inc.; the Retailer defendants: BodyBuilding.com, LLC, Costco Wholesale Corporation, CVS Pharmacy, Inc., CVS RX Services, Hook-SupeRx, LLC, General Nutrition Centers, Inc., General Nutrition Corporation, GNC Corporation, Prosource Performance Products, Inc., Rite Aid Corporation, Target Corporation, Vitamin Shoppe Industries, Inc., Wal-Mart Associates, Inc., Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, Wal-Mart Stores, Inc., Wal-Mart Stores, Inc. (d/b/a Sam's Club), Sam's East, Inc., Sam's West, Inc., and Walgreen Co. (d/b/a Walgreens); the Manufacturer defendants: Vitaquest International, LLC, Protein Research, HVL, LLC, erroneously served and sued as HVL, Inc. d/b/a Douglas Laboratories and Douglas Laboratories, Bactolac Pharmaceutical, Inc., Cornerstone Research and Development, Inc.; Parke-Davis Company d/b/a Capsugel, Pfizer, Inc. d/b/a Capsugel, Indfrag, Indfrag Limited d/b/a Indfrag, Interhealth

Nutraceuticals, Inc., Marco Hi-Tech JV, LLC, Marco Hi-Tech JV, LTD, and Marco Hi-Tech, jointly "Defendants".

### III. PLAINTIFF FACT SHEETS

#### A. Plaintiff Fact Sheets

All Plaintiffs shall continue to comply with this Court's previous Case Management Order dated September 13, 2010 (Document 345) as regards to completion of Plaintiff Fact Sheets ("PFS"), and dismissal procedures related to non-compliance with completion of PFS.

#### B. Amendment #1 to Plaintiff's Fact Sheets

Plaintiffs have until **March 30, 2012** to complete and serve Amendment #1 to PFS pursuant to Case Management Order No. 3 dated February 14, 2012. (Document 1063-1). Otherwise they shall be subject to the dismissal procedure established in this Court's previous Case Management Order dated September 13, 2010 (Document 345).

### IV. BELLWETHER PLAN

#### A. "Bellwether Process"

Defendants and Plaintiffs' PSC have met and conferred regarding a "bellwether" process, and submit the following:

  1. Following submission of Amendment #1 to the PFS by **March 30, 2012**, the parties shall have until **April 16, 2012** to meet and confer about deficiencies in Amendment #1 to PFS.

**Procedure for PSC Bellwether Choice:**

  2. The PSC shall pick four (4) "bellwether cases" for inclusion in the bellwether program. Given that there are multiple products involved in these cases, the PSC has agreed to choose a total of four (4) cases, with at least one from each of the following two (2) categories:

    a. Category 1- Plaintiff consumed a Hydroxycut Hardcore Product: either Hydroxycut Hardcore Liquid Caplets®, Hydroxycut Hardcore Drink Packets®, or Hydroxycut Hardcore RTDs®.

        **b.**      Category 2 - Plaintiff consumed a Hydroxycut White Box Product: either Hydroxycut Regular Rapid Release Caplets®, or Hydroxycut Caffeine-Free Rapid Release Caplets®.

    **3.**      Under the provisions outlined above, the PSC shall also choose a total of two (2) cases, one case from each category above, for inclusion in the bellwether process as "back up" cases; these cases would be available for substitution in the event that a chosen bellwether case is settled or dismissed.

    **4.**      If a Plaintiff took more than one type of Hydroxycut product they are not eligible for participation in the bellwether program.

    **5.**      Within the two categories, listed above, the PSC may choose Plaintiffs for bellwether selection with any type of category of injury.

    **6.**      The PSC may only choose cases for the bellwether process, if the chosen Plaintiff has completed and submitted both a PFS and Amendment #1 to the PFS to Defendants.

**Procedure for Defense Bellwether Choice**:

    **7.**      The Defendants shall pick four (4) "bellwether cases" for inclusion in the bellwether program. Given that there are multiple products involved in these cases, the Defendants have agreed to choose a total of four (4) cases, with at least one from each of the following two (2) categories:

        **a.**      Category 1- Hydroxycut Hardcore Products: Hydroxycut Hardcore Liquid Caplets®, Hydroxycut Hardcore Drink Packets®, or Hydroxycut Hardcore RTDs®.

        **b.**      Category 2 - Hydroxycut White Box Products: Hydroxycut Regular Rapid Release Caplets®, or Hydroxycut Caffeine-Free Rapid Release Caplets®.

    **8.**      Under the provisions outlined above, the Defendants shall also choose a total of two (2) cases, one case from each category above for inclusion in the bellwether process as "back up" cases; these cases would be available for substitution in the event that a chosen bellwether case is settled or dismissed.

**9.** Product Consumption Limitation

If a Plaintiff took more than one type of Hydroxycut product they are not eligible for participation in the bellwether program.

**10.** Within the two categories, listed above, the Defendants may choose Plaintiffs for bellwether selection with any type of category of injury.

**11.** The Defendants may choose any case for the bellwether process, regardless of whether the chosen Plaintiff has completed and submitted both a PFS and Amendment #1 to the PFS to Defendants. Once a Plaintiff is chosen by the Defendants and Defendants notify Plaintiff of their selection, if that Plaintiff has not completed their PFS or Amendment #1 to the PFS, both shall be due and completed by **June 1, 2012**. The bellwether process contemplates that Defendant Fact Sheets must be produced by **June 1, 2012**. Negotiating the final Defendant Fact Sheet for use in this MDL shall be made a priority by all parties. If a Defendant cannot in good faith finalize or present a completed Fact Sheet by June 1, 2012, a meet and confer process amongst the parties shall commence in good faith. Unresolved issues shall be brought before the Court in a timely matter.

**General Provisions:**

**12.** Once the parties have chosen their bellwether cases, they shall exchange the lists of the bellwether cases by **April 20, 2012**, and provide a joint status update to the Court by **April 27, 2012**, which shall include a list of the parties' eight (8) designated bellwether cases.

**13.** Veto Power

If either side chooses more than three (3) cases from any product category, those cases are subject to veto from the bellwether program by the opposing party. The opposing party may veto any of the proposed cases within that product category; once vetoed that case may not be re-proposed for participation in the bellwether process.

**14.** Discovery related to Plaintiff Fact Sheets and product identification for all Plaintiffs and Defendant Fact Sheets shall not be limited and shall be allowed to continue during the bellwether process.

Case 3:09-md-02087-BTM-KSC Document 1107 Filed 04/05/13 PageID.19027 Page 7 of 8
Case 3:09-md-02087-BTM-KSC Document 1120-1 Filed 04/23/13 PageID.19277 Page 6 of 7
71708

15. Discovery other than that related to Plaintiff Fact Sheets and product identification and Defendant Fact Sheets, shall be limited to discovery in the eight (8) designated bellwether cases and the four (4) designated bellwether "back up" cases.

16. If one of the designated bellwether cases settles or is dismissed, the side that designated that case may designate a new case from the designated "back up" category, if the case is from the same product category. If a back-up case has already been substituted and no remaining back-ups remain from that product category, the parties shall meet and confer to identify a process for selecting, or they may select, one or more alternative back up cases. If the selection issue cannot be resolved through the meet-and-confer process, the parties may contact the Court and request a conference to discuss further back up cases and the status of the bellwether plan.

17. Discovery to Non-named Defendants

At this time, if a Defendant is not named in any of the eight (8) designated bellwether cases or the four (4) designated bellwether "back up" cases, discovery can proceed against those Defendants. It is premature to determine whether a complete ban on all discovery from non-named Defendants is appropriate. This provision does not preclude a Defendant from applying for a protective order if circumstances warrant.

18. Nothing in this Case Management Order shall prevent Defendants from moving for early summary judgment or partial summary judgment in any case or category of cases for lack of general or specific causation, lack of compliance with the Court's Plaintiff Fact Sheet Order (Document 345), failure to prosecute, statute of limitations, or any other procedural or substantive bar to any claim.

**B. Bellwether Case Deadlines**

1. Fact Discovery Plan

    a. The parties shall submit fact discovery plans for <u>each</u> of the eight (8) designated bellwether cases and four (4) "back up" cases by **May 4, 2012**.

    b. The discovery plans shall include proposals for fact discovery deadlines, including but not limited to deposition schedules of all fact witnesses, and proposals

for dates of all of Plaintiffs' treating physicians. The plans shall also include a designated counsel from each side to coordinate discovery schedules.

   2. Expert Discovery Plan

      a. The parties shall submit one expert discovery plan by **June 1, 2012** limited to the eight (8) designated bellwether cases and the four (4) "back up" cases.

      b. The discovery plans shall include a proposal for exchange of all expert disclosures. This plan may include a bifurcated discovery plan, with Plaintiffs disclosing their experts' identity and required disclosures first, followed by the defense expert disclosures. The discovery plan shall also include a proposal for expert discovery deadlines, including the deposition schedule for Plaintiffs' experts, followed by depositions of Defendants' experts.

   3. Trial Plan

      a. The parties shall submit a joint bellwether trial plan by **July 1, 2012**.

      b. The trial plan shall include deadlines for filing all bellwether *Daubert* motions, motions *in limine*, proposed jury instructions, voir dire questions, settlement conference plan, as well as proposals for the order by which the bellwether cases shall be selected for trial.

      c. Trial of Bellwether Cases:

         **(i)** Plaintiffs and Defendants may present a joint or separate trial plans by July 1, 2012.

**IT IS HEREBY ORDERED.**

Dated: March 19, 2012

_____
Honorable Ruben B. Brooks
United States Magistrate Judge