## UNITED STATES DITRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. ROBERT B. KUGLER CIVIL NO. 19-2875 (RBK) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO WHOLESALER DEFENDANTS' MOTION FOR CLARIFICATION AND MODIFICATION OF SPECIAL MASTER ORDER NO. 64

FARR, FARR, EMERICH,
HACKETT, CARR & HOLMES, P.A.
99 Nesbit Street
Punta Gorda, FL 33950
(941) 639-1158
(941) 639-0028 fax
gwilliamson@farr.com


On the Brief:
George T. Williamson, Esq.

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................. 1

II. PROCEDURAL HISTORY ............................................................................... 1

III. LEGAL STANDARD ...................................................................................... 5

IV. ARGUMENT .................................................................................................... 6

    A. Wholesalers' Newly Raised Arguments are Untimely and Waived under District of New Jersey Local Civil Rule 7.1(i). ...................................................... 6

    B. Wholesalers' Motion Fails to Establish Any of the Three Grounds for Reconsideration. .... 7

    C. Wholesalers' Newly Raised Arguments are Devoid of Merit. .............................................. 8

        1. The Court has the Inherent Power to Order Disclosures. ................................................. 8

        2. Wholesalers' Defense Agreements are Relevant. ......................................................... 10

        3. An Agreement to Pay the Defense of Another is Not Privileged .................................. 12

    V. CONCLUSION ............................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blackmon v. Bracken Constr. Co., Inc.*,
   338 F.R.D. 91 (M.D. La. 2021) ...................................................................... 11

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
   130 F. Supp. 2d 610 (D.N.J. 2001) .................................................................. 7

*Crisdon v. New Jersey Dept. of Educ.*,
   464 Fed. Appx. 47 (3d Cir. 2012) .................................................................... 6

*Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.*,
   825 F. Supp. 1216 (D.N.J. 1993) ..................................................................... 6

*Dietz v. Bouldin*,
   579 U.S. 40 (2016) ............................................................................................. 9

*Fastware, LLC v. Gold Type Business Machines, Inc.*,
   2009 WL 2151753 (D.N.J. July 14, 2009) ...................................................... 5

*Ford Motor Co. v. Edgewood Properties, Inc.*,
   257 F.R.D. 418 (D.N.J. 2009) .......................................................................... 11

*In re Atlantic Pipe Corp.*,
   304 F.3d 135 (3d Cir. 2005) ............................................................................. 9

*In re Complaint of Foss Maritime Co.*,
   2015 WL 1249571 (W.D. Ky. Mar. 18, 2015) ............................................... 13

*Jeld-Wen, Inc. v. Nebula Glasslam Int'l Inc.*,
   2008 WL 756455 (S.D. Fla. Mar. 11, 2008) ............................................ 10, 11

*Knox Trailers, Inc. v. Clark*,
   WL 572704 (E.D. Tenn. Feb. 24, 2022) ......................................................... 13

*Maldonado v. Lucca*,
   636 F.Supp. 621 (D.N.J. 1986) ........................................................................ 6

*Mathis v. Christian Heating & Air Conditioning, Inc.*,
   91 F. Supp. 3d 651 (E.D. Pa. 2015) ................................................................. 5

*Max's Seafood Cafe v. Quinteros*,
   176 F.3d 669 (3d Cir.1999) ....................................................................... 6, 7, 8

*McMullen Lumber Co. v. Strother*,
    136 F. 295 (8th Cir. 1905) ........................................................................... 9

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
    2 F.3d 1397 (5th Cir. 1993) ......................................................................... 9

*NL Indus. Inc. v. Commercial Union Ins. Co.*,
    935 F.Supp. 513 (D.N.J. 1996) ................................................................... 5

*North River Ins. Co. v. CIGNA Reinsurance Co.*,
    52 F.3d 1194 (3d Cir. 1995)........................................................................ 6

*Nye v. Ingersoll Rand Co.*,
    2011 WL 253957 (D.N.J. Jan. 25, 2011) ................................................... 5

*Pac. Coast Steel v. Leany*,
    2011 WL 4572008 (D. Nev. Sept. 30, 2011) ........................................... 13

*Schlafly v. Eagle Forum*,
    2020 WL 2790519 (D.N.J. May 30, 2020) ................................................ 6

*United States v. Abel*,
    469 U.S. 45 (1984).................................................................................... 11

*United States v. Nolte*,
    39 F.R.D. 359 (N.D. Cal. 1965) ................................................................. 9

*United States v. Taylor*,
    25 F.R.D. 225 (E.D.N.Y.1960) .................................................................. 9

*Warren Distrib. Co. v. InBev USA L.L.C.*,
    2008 WL 4371763 (D.N.J. Sept. 18, 2008) ............................................. 11

**Rules**

D.N.J. L. Civ. R. 301, Appx Q........................................................................ 9

D.N.J. L. Civ. R. 301.1 ..................................................................................... 9

D.N.J. L. Civ. R. 7.1(i).................................................................................. 6, 7

F.R.E. 611(b)................................................................................................. 10

Fed. R. Civ. P. 26 .......................................................................................... 11

iv

# I. INTRODUCTION

After numerous meet and confers between the Parties, briefing, and a hearing on April 13, 2022, this Court ordered Defendants to provide information to Plaintiffs regarding Defendants' defense and indemnification agreements. Specifically, the Court ordered Defendants to meet and confer with Plaintiffs "regarding the existence and status of any agreements, written or oral, to defend and/or indemnify, and any dispute, litigation, mediation, or arbitration between Defendants, related to contaminated valsartan including the claims in this litigation." Special Master Order No. 64, Dkt. 2015 (referred to herein as "SMO 64").

Wholesaler Defendants now object to SMO 64 (improperly styled as a motion for clarification) in an effort to shield information related to their defense agreements. Wholesaler Defs' Mot. for Clarification and Modification of SMO 64, Dkt. 2071. Wholesalers stand alone in their objection. Nearly every other Defendant in this litigation has complied with, or taken appropriate steps to comply with SMO 64.[1] For the reasons stated below, the motion should be denied as the Wholesalers' arguments are waived and without merit, and Wholesalers should be required to comply with SMO 64.

# II. PROCEDURAL HISTORY

In January of 2022, this Court directed Plaintiffs to mediation with Retailer Defendants. In preparation for the mediation, Plaintiffs sent correspondence to Defendants in an attempt to meet and confer regarding Defendants' agreements on defense and indemnification. *See* Email from A. Slater to J. Geoppinger dated Jan. 28, 2022, Dkt. 1897-6. Following receipt of this correspondence, Defendants placed the topic of defense and indemnification agreements on the February 2, 2022

---

[1] Mylan has refused to provide details about its defense agreement with Cardinal Health on account of Cardinal Health's objection to release of the information.

CMC Agenda, and the issue was discussed with the Court. *See* Defendants' CMC Agenda Letter dated February 1, 2022, Dkt. 1897. At that time, the Court directed that Plaintiffs be more specific in their requests for information and directed that the parties continue to meet and confer.

Following the February 2, 2022 CMC, Plaintiffs organized teams of attorneys to review Defendants' productions and 30(b)(6) testimony which culminated in Plaintiffs March 17, 2022 correspondence to Defendants. *See* Letter from G. Williamson to S. Goldberg dated Mar. 17, 2022, Dkt. 2007-1. Plaintiffs' letter sought confirmation of the relationships between the Defendants at each level of the distribution chain by  requesting that Defendants confirm the status of their defense and indemnity agreements with each upstream supplier and/or downstream customer. Following receipt of Plaintiffs' letter, Defendants responded via email on April 5, 2022 that each Defendant would reach out to Plaintiffs separately to set up meet and confers on the items raised in the letter. However, Plaintiffs soon learned that Wholesaler and Retailer Defendants did not intend to participate in substantive meet and confers as it was their position that the information Plaintiffs' sought could be obtained from Manufacturer Defendants. As a result, the issue was added to the April 13, 2022 CMC Agenda letters and briefed by the parties.

Despite Wholesaler's insinuation otherwise, Wholesalers, collectively and individually, were on notice of the fact that Plaintiffs were requesting "*all* defendants be required to meet and confer on the issues raised in Plaintiffs' March 17, 2022 letter." Plaintiffs' CMC Agenda Letter, p.2, Dkt. 2006 (emphasis added). Indeed, Wholesalers included an insert in the Defense agenda suggesting the information Plaintiffs sought was "not directly requested or needed from Wholesaler Defendants at this time" but went on to state they "remain open to further discussions with Plaintiffs if they choose to reach out to counsel for specific Wholesaler Defendants." Defendants' CMC Agenda Letter, p.3, Dkt. 2007. Wholesalers' letter brief did not advance any

2

substantive arguments against the requested disclosures regarding defense or indemnity agreements.

Wholesalers were then represented at the April 13, 2022 CMC by at least two separate counsel, including Mr. Jason Reefer, and Wholesaler liaison counsel, Mr. Jeoffrey Geoppinger. *See* Transcript of Apr. 13, 2022 CMC. During the hearing, the Court indicated its inclination to enter an order in Plaintiffs' favor, but asked if any parties had a strong objection to such an order. Wholesalers liaison counsel, Mr. Jeoffrey Geoppinger, then addressed the Court as follows:

> I wouldn't say I have a strong objection, but to echo Mr. Reefer's comments, you know, it seems that the process is proceeding with the manufacturers. I looked at the dates in the letter. It looks like it will get done with them by the 30th. A lot of the information that the plaintiffs would be -- it would be a lot easier for us if they finish with the manufacturers first so they can, you know, have pointed questions for us for what they don't have as opposed to us regurgitating information that they already got, especially if we're dealing with, you know, different -- obviously I know the plaintiffs, they have a lot of ground to cover, so they have different teams and whatnot.

> So the extent, you know, the Court is thinking about a deadline, I would perhaps suggest that we make that for completion of the manufacturers meet and confers, which seem to be already on the schedule, by the end of the month, and then we can bring out -- we can deal with the downstream defendants after that.

Yet again, absent from Wholesalers' statement to the Court is any objection to the substance of the requested disclosures. Rather, Wholesalers quibbled with the procedure that required Wholesalers to meet and confer before the conclusion of the Manufacturers' meet and confers. After hearing all arguments from the parties, and asking on multiple occasions if any other parties wanted to be heard on the issue, the Court granted Plaintiffs' request and stated:

> I'd ask, Mr. Slater, if you would submit to me a proposed order to issue in the matter reflecting the fact that the meet and confer on these agreements is to be completed. And the other aspect of it, whatever disputes there may be out there. There was a second component, a question of litigation, arbitration, mediations between and among any defendants concerning contaminated Valsartan, those meet and confers should be completed by April 30th.

Transcript of Apr. 13, 2022 CMC, p. 9-10. On the following day, Plaintiffs submitted an order reflecting the Court's ruling, which stated, in pertinent part

> By April 30, 2022, all Defendants shall complete their meet and confers with Plaintiffs, regarding the existence and status of any agreements, written or oral, to defend and/or indemnify, and any dispute, litigation, mediation, or arbitration between Defendants, related to contaminated valsartan including the claims in this litigation. Thereafter, Defendants shall disclose to Plaintiffs any change in the status quo of such agreements, disputes, litigation, mediation, or arbitration; new demands to defend or indemnify; establishment of any new agreements; or any new dispute, litigation, mediation, or arbitration, without the need for Plaintiffs to make any further request.

Counsel for Defendants objected to the entry of the proposed order on the basis that there was no discussion in the briefs or at the hearing of Defendants continued obligation to supplement their disclosures.[2] Email from J. Reefer Dated April 14, 2022, Dkt. 2071-3. The Court entered the order, SMO 64, requiring a duty of supplementation and stating in an email to the parties "such a duty exists under the law, and requiring supplementation as a matter of course should facilitate the exchange of relevant information and avoid discovery disputes." *Id*.

This was the third opportunity—after briefing and oral argument—for Wholesalers to lodge an objection to the substance or the nature of information sought by the Plaintiffs regarding defense and indemnity agreements. Wholesalers made no such objection. In fact, Wholesalers failed to advance any substantive arguments against disclosure of information regarding their defense and indemnification agreements until their improper, jumbled filing styled "Notice of Wholesaler Defendants' Rule 53 Objection to and Motion for Clarification of Special Master Order No. 64," Dkt. 2050, which the Court, *sua sponte*, denied and remanded to the Special Master.

---

[2] Counsel for Defendants also suggested that the use of the phrase "contaminated valsartan" was improper and that the April 30 deadline to meet and confer was not appropriate. Neither of these issues are material or relevant to the instant dispute.

Finally, on May 16, 2022, after the Special Master heard *for the first time* that Wholesalers were prepared to make substantive arguments against the entry of SMO 64, the Court entered a briefing schedule from which the instant brief flows.

As is set forth below, the new arguments contained in Wholesalers' Motion—now styled a "Motion for Clarification"—are untimely and waived. Even if the Court were to reach the merits, Wholesalers' arguments should be denied as they fail to consider the Court's inherent powers and well settled case law regarding the discoverability of defense and indemnity agreements.

### III. LEGAL STANDARD

Wholesalers have styled their instant Motion as one for clarification. The purpose of a motion for clarification "is to explain or clarify something ambiguous or vague, *not to alter or amend*." *Mathis v. Christian Heating & Air Conditioning, Inc.*, 91 F. Supp. 3d 651, 655–56 (E.D. Pa. 2015) (emphasis added). There is nothing ambiguous or vague about SMO 64 or its requirements. Certainly, none of the other parties in this case found SMO 64 to be ambiguous or vague, as they were all able to comply with its directives. Wholesalers' Motion, in fact, seeks the Court's reconsideration of SMO 64, as Wholesalers advance new arguments in an attempt to prevent disclosure of information regarding their defense agreements with other Defendants which SMO 64 requires. *Id.* at 656. This distinction, however, is not material. In the District of New Jersey, motions for clarification are often evaluated under the standard for a motion for reconsideration. *See, e.g. Fastware, LLC v. Gold Type Business Machines, Inc.,* 2009 WL 2151753, at *2 (D.N.J. July 14, 2009); *see also Nye v. Ingersoll Rand Co.,* 2011 WL 253957, at *3 (D.N.J. Jan. 25, 2011).

Reconsideration is "an extraordinary remedy" that is to be granted "very sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.,* 935 F.Supp. 513, 516 (D.N.J. 1996) (citing *Maldonado*

*v. Lucca,* 636 F.Supp. 621, 630 (D.N.J. 1986)). A motion for reconsideration may be granted only if (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir.1999); *Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.,* 825 F. Supp. 1216, 1220 (D.N.J. 1993); *see also North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir. 1995). The Local Rules in this jurisdiction require that a motion for reconsideration be filed *within 14 days* after the entry of the order or judgment on the original motion, along with a brief setting forth the matter or controlling decisions which the party believes the Court has overlooked. D.N.J. L. Civ. R. 7.1(i).

## IV. ARGUMENT

### A. Wholesalers' Newly Raised Arguments are Untimely and Waived under District of New Jersey Local Civil Rule 7.1(i).

Wholesalers completely failed to raise the arguments contained in their present Motion regarding discovery phases, relevance, or confidentiality, at any time prior to their improperly filed Rule 53 Objection to and Motion for Clarification of SMO 64. That filing occurred on May 5, 2022, *twenty-one (21) days* after SMO 64 was entered by the Court. Local Rule 7.1(i) requires that a motion for reconsideration be filed within 14 days. It was not. "Significantly, courts within this district routinely deny untimely [] Local Rule 7.1(i) motions. And the Third Circuit has upheld the denial of untimely [] Local Civil Rule 7.1(i) motions." *Schlafly v. Eagle Forum*, 2020 WL 2790519 at *6 (D.N.J. May 30, 2020) (string citations omitted); *accord Crisdon v. New Jersey Dept. of Educ.*, 464 Fed. Appx. 47, 48 (3d Cir. 2012) (affirming district court's denial of motion as untimely under Local Rule 7.1(i)). Therefore, Wholesalers' motion fails as a procedural matter as it is untimely.

Further though, Local Rule 7.1(i) requires that a party set forth the matter or controlling decisions it believes the court overlooked. "The word 'overlooked' is the operative term in the Rule." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001). The *Bowers* Court went on to state

> Not only are such motions not a substitute for the appellate process, such motions are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers. Similarly, such motions are not an opportunity for the parties to avail themselves of additional briefing, that is, to circumvent the Local Civil Rules governing the size and length of briefs. In short, the initial motion is the "main event," not a "tryout on the road" to a motion for reargument.

*Id.* Wholesalers had ample opportunity to raise the arguments in their Motion prior to the entry of SMO 64, and yet, they did not.[3] As such, the Court could not have overlooked any controlling decisions in deciding SMO 64 because none were presented by the Wholesalers. This fact is undisputed. Therefore, Wholesalers' motion fails to comply with Local Rule 7.1(i) and the inquiry ends.

**B. Wholesalers' Motion Fails to Establish Any of the Three Grounds for Reconsideration.**

Should the Court find a basis to depart from its Local Rules and to consider the motion on the merits, the law is clear that a movant must establish (1) an intervening change in the controlling law; (2) evidence not previously available has become available; or (3) the need to correct a clear error of law or fact or to prevent "manifest injustice." *Max's Seafood Cafe*, 176 F.3d 669 at 677.

---

[3] Since January of this year, the parties have exchanged emails and letters (*e.g.*, Email from A. Slater to J. Geoppinger dated January 28, 2022, Dkt. 1897-6, Letter from G. Williamson to S. Goldberg dated March 17, 2022, Dkt. 2007-1), have been through multiples rounds of briefing (*e.g.*, Defendants' CMC Agenda Letter dated February 1, 2022, Dkt. 1897; Defendants' CMC Agenda Letter dated April 12, 2022, Dkt. 2007), have argued the issues at multiple case management conferences (*e.g.*, February 22, 2022 and April 13, 2022 Case Management Conferences) and the Defendants have sent email correspondence to the Court regarding the entry of Plaintiffs' proposed SMO 64.

Wholesalers cannot carry their burden here. On the first and second points, there has been no change in the law or evidence since SMO 64 was entered. The only change in the law are the arguments Wholesalers are now raising, which that they had never advanced prior to May 5, 2022. Thus, points one and two offer no relief to Wholesalers. On the third point, there is certainly no "manifest injustice" that would work upon Wholesalers should they be required to comply with SMO 64, and more importantly, there is no clear error of law. Courts interpreting clear error in this context, have stated that the error must be "so fundamental" that it is not "consistent with the wise exercise of the of the discretion" for a Court to overlook it. *Id.* at 678. There is nothing of the sort in this case. Wholesalers merely wish to prevent Plaintiffs from learning about the existence and nature of their defense agreements with other Defendants in this case.

### C. Wholesalers' Newly Raised Arguments are Devoid of Merit.

In the context of a motion for reconsideration, "courts often take a dim view of issues raised for the first time." *Max's Seafood Cafe*, 176 F.3d 669 at 677. However, even if the Court were to take each of the waived arguments raised by the Wholesalers in turn, each fails on its own merits.

### 1. The Court has the Inherent Power to Order Disclosures.

Defendants make much of the fact that prior to SMO 64, Wholesalers had not been ordered to produce their defense agreements. They argue the "discovery phase" of this case closed October 4, 2021, and that somehow, prevents Plaintiffs from receiving any further information from Wholesalers. Such a myopic view of the bounds of discovery is inconsistent with the current needs of the case. As noted, Plaintiffs have been ordered to mediation with Retailers. In order to effectuate the Court's order, Plaintiffs must have the information necessary to conduct meaningful

and intensive settlement negotiations.[4] Plaintiffs have requested via email, letter, and briefing that Wholesalers meet and confer to provide the information set forth in SMO 64. To the extent that Wholesalers object to the production of this information as being outside the discovery phase, or not served via a Rule 33 Interrogatory or a Rule 34 Request for Production, Wholesalers overlook the Court's inherent powers to order such an exchange of information.

It has long been recognized that a district court possesses inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016). This includes inherent discovery powers to order and compel discovery, "owing to the equitable power of Chancery courts to issue bills of discovery." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1409 (5th Cir. 1993) (citing *McMullen Lumber Co. v. Strother*, 136 F. 295, 301 (8th Cir. 1905)); *see also*, *United States v. Nolte*, 39 F.R.D. 359, 362 (N.D. Cal. 1965) (discussing the history of the Court's inherent power to order discovery); *United States v. Taylor*, 25 F.R.D. 225, 228 (E.D.N.Y.1960) ("In my view, to the extent [a Rule] does not express a policy prohibiting discovery not explicitly authorized by the Rules, the court is free, either by local rule or by adjudication, to permit discovery on the basis of its inherent power."). Likewise, a district court may also use its inherent power to compel represented clients to attend pretrial settlement conferences, even though such a practice is not specifically authorized in the Civil Rules. *In re Atlantic Pipe Corp.*, 304 F.3d 135, 143 (3d Cir. 2005). In the District of New Jersey, this inherent power is also codified at Local Rule 301.1 and Appendix Q. The Appendix states that

---

[4] Aside from being relevant to settlement discussions, defense agreements are plainly relevant to the issues of the case, as discussed in section IV(C)(2), *infra*.

Mediation is intended to afford litigants a less expensive alternative to traditional litigation. L.Civ.R. 301.1, which provides for both compulsory and voluntary mediation, is expected to conserve the resources of litigants which would otherwise be expended in discovery and to concentrate those resources on meaningful and intensive settlement negotiation.

It follows then that Federal Courts have the inherent power to order disclosures to effectuate meaningful and intensive settlement negotiations, especially where, as in this case, the disclosures are relevant to the underlying case. As such, it is well within the Court's inherent powers to order Wholesalers to comply with SMO 64.

## 2. Wholesalers' Defense Agreements are Relevant.

Wholesalers next argue that their defense agreements with other Defendants in this case are not relevant, and therefore not discoverable. Wholesalers, however, ignore the plainly relevant fact that a joint defense agreement can demonstrate bias of the parties and witnesses involved, where provisions such as settlement, tolling, or other financial arrangements reside in the agreement. *E.g.*, *Jeld-Wen, Inc. v. Nebula Glasslam Int'l Inc.*, 2008 WL 756455, at *5 (S.D. Fla. Mar. 11, 2008). In this case, Retailers have the legal right to seek a defense and indemnification from Wholesalers on account of the various supplier agreements entered into between the parties. Wholesalers admitted this in their January 28, 2022 letter to the Court[5], and discussed the matter with the Court at the February 2, 2022 CMC. Transcript of Feb. 2, 2022 CMC, (33:9-16). As such, the existence of the defense and indemnity agreements between Retailers and Wholesalers could reasonably be found to demonstrate bias on the part of the Retailers in providing testimony and

---

[5] The relevant portion of that letter stated as follows: "Downstream Defendants are each parties to various indemnification agreements between Downstream Defendants and Manufacturer Defendants from whom they sourced VCDs over the relevant time period. Those indemnification agreements must be taken into account during any settlement negotiations, and Downstream Defendants anticipate that the negotiation of any potential settlement by settlement counsel for Manufacturer Defendants will also resolve Plaintiffs' claims against Downstream Defendants."

evidence in favor of Wholesalers. Likewise, where these agreements exist between Wholesalers and Manufacturers, the same bias could be shown. A demonstration of bias, an interest in the outcome of the litigation, or a motive to testify in a certain way all constitute potentially fertile and permissible areas of impeachment. *Jeld-Wen, Inc.* at *9 (citing F.R.E. 611(b) and *United States v. Abel*, 469 U.S. 45, 49-52 (1984)). Thus, a showing that information contained in a defense agreement "could reasonably be found to demonstrate bias" suffices to bring that agreement "within the definition of 'relevance' dictated by Rule 26 Fed. R. Civ. P., for discovery purposes." *Id.*

This Court has previously determined that a party moving for disclosure of a defense agreement is entitled to an *in camera* review of the agreement. *Warren Distrib. Co. v. InBev USA L.L.C.*, 2008 WL 4371763, at *3 (D.N.J. Sept. 18, 2008) ("[t]he relevancy of a joint defense agreement depends upon the language in the agreement. For this reason, it was necessary for the Court to review the Agreement in camera before it ruled on plaintiffs' motion."). To the extent that Wholesalers refuse to comply with SMO 64, Plaintiffs request that each and every defense agreement, however named, be provided to the Court for *in camera* review. This review should include Cardinal Health's defense agreement with Mylan which Cardinal Health continues to shield from disclosure. Regardless of the outcome of that review, however, as Judge Schneider found in *Warren* and numerous district courts around the county have determined, the identity of the parties to a defense agreement, the date the agreement was entered into, and the scope of any such agreement is relevant. *Id.* at 3;  *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) (finding Plaintiffs' have "a right to know which parties are maintaining a common defense" against them);  *Blackmon v. Bracken Constr. Co., Inc.*, 338 F.R.D. 91, 94–95 (M.D. La. 2021) ("Defendants are correct that other courts have found joint defense agreements

11

were not relevant to a party's claim of defense, and therefore not discoverable. But in each of those opinions, the proponent of the privilege had disclosed the parties to the agreement, the date the agreement was reached, and its general scope seemed to be understood."). Therefore, *at a bare minimum*, Plaintiffs are entitled to the information ordered under SMO 64.

### 3. An Agreement to Pay the Defense of Another is Not Privileged.

SMO 64 requires disclosure of "the *existence* and *status* of any agreements, written or oral, to defend and/or indemnify. . . ." (emphasis added). Wholesalers' brief suggests that the Order's disclosure requirement "*could be read*" to include disclosure of privileged communications about those agreements. Wholesalers' argument here is purely hypothetical. None of the other Defendants who complied with SMO 64, nor the Plaintiffs, have taken this position. In fact, Plaintiffs attempted to clarify their understanding of the scope of SMO 64 in an email to Wholesalers

> This exercise was intended to identify "the existence and status of any agreements, written or oral" between the parties regarding indemnification/defense. We understand this to include requests, agreements to indemnify/defend, refusals to indemnify/defend, and agreements that relate to those subjects (i.e. an agreement to defer the issue). If that information is contained within a communication, oral or written, *we believe we are entitled to the facts underlying the communication*.

Exhibit A to Wholesaler Defs' Mot. for Clarification and Modification of SMO, Dkt. 2071-1 (emphasis added). Plaintiffs seek information related solely to the existence and status of an agreement, should one exist. With respect to the confidentiality of such agreements themselves

> Joint defense agreements are generally not privileged. They serve only to formalize the invocation of the joint defense or common interest. Plaintiffs concede that if Defendants offer some basis upon which to conclude their joint defense agreement contains substantive legal advice that might render it privileged. If so, the court should review it *in camera*, and if it does not contain legal advice, it should be produced.

*Pac. Coast Steel v. Leany*, 2011 WL 4572008, at *3 (D. Nev. Sept. 30, 2011). This is in accord with the long line of cases holding that the identity of a party defending or paying the legal fees of another is not protected by the attorney-client privilege. *See Knox Trailers, Inc. v. Clark*, WL 572704 at *2 (E.D. Tenn. Feb. 24, 2022) ("In almost every situation where one person pays the legal fees of another, the fact of that arrangement is fair game for disclosure and no privilege to withhold that fact exists."); *see also In re Complaint of Foss Maritime Co.*, 2015 WL 1249571, at *3 (W.D. Ky. Mar. 18, 2015) ("[A]ttorney-client privilege protects the contents of communications with counsel, not facts transmitted to counsel during the communication," and an agreement "to pay costs and fees cannot constitute a privileged, confidential communication.").

SMO 64 is clear in its directives. Wholesalers' hypothetical that it "*could be read*" to include disclosure of communications protected by the attorney client privilege is an attempt to broaden the Order for the self-serving purpose of objecting to its scope. Wholesalers' arguments here are nothing more than a distraction the Court should not entertain.

## V. CONCLUSION

Wholesalers' January 28, 2022 letter to the Court acknowledged they have enjoyed a "more limited involvement in the case." It appears as though this limited involvement has bolstered Wholesalers' hubris in refusing to provide Plaintiffs with even the most basic information regarding their defense and indemnification agreements. However, the law is clear that Wholesalers' Motion is untimely and the arguments contained therein are devoid of merit.

For the foregoing reasons, Plaintiffs request that Wholesalers' Motion is denied and that Wholesalers are ordered to comply with SMO 64.

Dated: June 2, 2022                    Respectfully Submitted,


                                       /s/ George T. Williamson
                                       George T. Williamson
                                       Farr, Farr, Emerich,
                                       Hackett, Carr & Holmes, P.A.
                                       99 Nesbit Street
                                       Punta Gorda, FL 33950
                                       (941) 639-1158
                                       (941) 639-0028 (fax)
                                       gwilliamson@farr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of June 2022, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system. In addition, I certify that unredacted versions of the foregoing will be served contemporaneously upon liaison counsel for Defendants as well as the Court.


/s/ George T. Williamson
George T. Williamson