# EXHIBIT 2

Page 1

```
 1              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
 2                    CAMDEN VICINAGE
 3
       IN RE: VALSARTAN,      §   MDL NO. 2875
 4     LOSARTAN, AND          §
       IRBESARTAN PRODUCTS    §   HONORABLE ROBERT B.
 5     LIABILITY LITIGATION   §   KUGLER
                                  DISTRICT COURT JUDGE
 6
 7            ORAL AND VIDEOTAPED DEPOSITION OF
                         JOHN QUICK
 8                   JANUARY 28, 2022
 9
10         ORAL AND VIDEOTAPED DEPOSITION OF JOHN QUICK,
11   produced as a witness at the instance of the Defendants
12   and duly sworn, was taken in the above styled and
13   numbered cause on January 28, 2022 from 8:00 a.m. to
14   12:09 p.m., before JANALYN ELKINS, CSR, in and for the
15   State of Texas, reported by computerized stenotype
16   machine, at the offices of Slack Davis Sanger, LLP, 6001
17   Bold Ruler Way, Suite 100, Austin, Texas, pursuant to
18   the Federal Rules of Civil Procedure and any provisions
19   stated on the record herein.
20
21
22
23
24
25
```

```
                                                              Page 2

 1                      A P P E A R A N C E S
 2
 3     FOR THE PLAINTIFF(S):
           John R. Davis
 4         SLACK DAVIS SANGER, LLP
           6001 Bold Ruler Way, Suite 100
 5         Austin, Texas 78746
           512-795-8686
 6         jdavis@slackdavis.com
 7
           Layne Hilton
 8         Conlee S. Whiteley
           David J. Stanoch
 9         KANNER & WHITELEY, L.L.C.
           701 Camp Street
10         New Orleans, Louisiana 70130
           504-524-5777
11         l.hilton@kanner-law.com
           c.whiteley@kanner-law.com
12         d.stanoch@kanner-law.com
13
           Ruben Honik
14         HONIK LLC
           1515 Market Street, Suite 1100
15         Philadelphia, Pennsylvania 19102
           267-435-1300
16         ruben@honiklaw.co
17
18     FOR PLAINTIFF MSP RECOVERY CLAIMS, SERIES, LLC:
           Charlie Whorton
19         RIVERO MESTRE, LLP
           2525 Ponce De Leon Boulevard, Suite 1000
20         Miami, Florida 33134
           305-445-2500
21         cwhorton@riveromestre.com
22
23
24
25
```

1          (Witness previously sworn)
2              VIDEOGRAPHER:  Here begins the continuation
3      of the deposition of John Quick.  Today's date is
4      January 28, 2022.  We are on the record at 8:12 a.m.
5                          EXAMINATION
6          Q.  (BY MR. GOLDBERG)  Good morning, Mr. Quick.
7          A.  Good morning.
8          Q.  We're going to pick up with the questioning
9      regarding the ZHP portion of your report that we were
10     discussing yesterday.  Just before we get started, we
11     sent your -- we sent plaintiff's counsel some documents
12     earlier this morning.  Did you look at those documents?
13         A.  I have not seen those documents.
14         Q.  Okay.  I want to ask you, in your report from
15     Pages 20 to 25, you've identified five areas that in
16     your opinion ZHP's CGMP's were deficient.  Am I correct?
17         A.  I'm not sure of five.  Probably -- if you say
18     it's five, it probably is five.  I didn't count the
19     number here.
20         Q.  Well, if you just look at the headings there,
21     there are five headings.  These are -- these are five
22     general areas.
23         A.  Okay.
24         Q.  So are these the five -- are these five
25     areas -- I guess are these five areas you are claiming

Page 48

1  impurity that was detected in 2018, correct?
2      A.  Well, I don't know, so I can't say correct
3  because I don't know.  I'd have to go back and look at
4  the documents.  Again, as I said I did not do an
5  exhaustive search of documents.  My focus here was to
6  look at the specific examples of CGMP deficiencies that
7  apply to the class.
8      Q.  Is it fair to say, sir, that if the root cause
9  assessment that Mylan conducted in 2018 is not listed on
10  Exhibit A to your report, then you didn't review it in
11  preparing your report, correct?
12      A.  Well --
13          MR. DAVIS:  Object to form.
14          You can answer.
15          THE WITNESS:  So the documents that I
16  reviewed, again as I said, I didn't necessarily review
17  all documents.  I only reviewed examples that I -- as I
18  said in my report, they were examples.  It was not an
19  exhaustive report.  It was not intended to be an
20  exhaustive report.  If there were further work beyond
21  this on merits report, probably would get into that type
22  of thing.
23      Q.  Sure.  I understand that's your testimony.  But
24  I also heard you testify yesterday that if it's not in
25  Exhibit A, I probably haven't reviewed it.  Do you

1    it was not manufactured at that facility.
2                    MR. DAVIS:  Object to form.
3                    THE WITNESS:  So I'm saying the same thing
4    again is that if there's a CGMP deficiency in one
5    operation in one part of the facility or another
6    facility, it should be the responsibility of the
7    pharmaceutical manufacturer to ensure that those
8    deficiencies are corrected across the operations, all
9    the operations.
10                   But that's not -- that's not really the
11   subject of my report.  I didn't get into that kind of
12   detail.  My point is my report identified examples of
13   CGMP deficiencies.  There may be others and if I had
14   additional information at some point, we would review
15   that information in light of this.  This is not a merits
16   report.  It's -- it's an attempt to identify examples of
17   CGMP deficiencies.
18        Q.  (BY MR. STOY)  Sure.  But just to be clear, the
19   document that you are relying on on this page of your
20   report in order to form your opinions is this Unit 7 EIR
21   document, right?
22                   MR. DAVIS:  Object to form.
23        Q.  (BY MR. STOY)  That's the one you're quoting,
24   right?
25        A.  That's -- that is the one I'm referencing.  If

Page 85

1  nitrosamines varied among the manufacturers' products?
2           MR. DAVIS:  Object to form.
3           THE WITNESS:  There may have been some
4  variability, but that's not at all relevant to my report
5  relevant to the CGMP deficiencies.
6      Q.  (BY MR. HUNCHUCK)  Do you have an understanding
7  as to why there was variability in the nitrosamines?
8      A.  I --
9           MR. DAVIS:  Object to form.  Objection,
10 outside the scope.
11          THE WITNESS:  That's not an area I
12 reviewed.  It was not part of the assignment relative to
13 this report relative to the CGMP deficiencies.  We may
14 get into that later on if we go beyond this report to a
15 merits report.  But that has not been the scope of this
16 report.
17     Q.  (BY MR. HUNCHUCK)  Do you know what
18 manufacturer of valsartan products inspected their
19 products for nitrosamines prior to 2018?
20          MR. DAVIS:  Object -- sorry.  No objection.
21          THE WITNESS:  I missed the first part of
22 that.
23          MR. DAVIS:  Can you repeat the question,
24 Steven?
25     Q.  (BY MR. HUNCHUCK)  Yes.  Do you know which

Page 141

1    were provided?
2                MR. DAVIS:  Object to form.  Same
3    instruction.
4                THE WITNESS:  Well, my --
5                MR. DAVIS:  You can answer.
6                THE WITNESS:  Okay.  So I -- the documents
7    that I relied on for my report are the documents that I
8    reviewed and are Exhibit A.  That's -- those are the
9    documents I relied on for my report.  So there may have
10   been other documents that I didn't rely on these for my
11   report.
12        Q.   (BY MS. NAGLE)  Okay.  And I'm just trying to
13   understand why -- why you excluded these 34 documents is
14   all.
15        A.   Well, okay.  So I cannot answer that question
16   without actually looking at those documents.  But I'll
17   go back to the comments I made before.  My report only
18   list examples.  So there may be other examples that
19   would be in these documents which might be in a report
20   later, a merits report or something beyond that.  But
21   the documents that I relied on for my report are the
22   documents that are in Exhibit A.  So I'm not sure
23   specifically why these additional documents were not
24   relied on other than the fact I didn't need them
25   relative to providing the examples that I have in my

```
                                                          Page 142
 1    report.
 2         Q.  Okay.  So the additional documents found on --
 3    on this Exhibit 33 do not serve as a basis for any of
 4    the opinions contained in your report, correct?
 5              MR. DAVIS:  Object to form.
 6              THE WITNESS:  What I -- what I said was is
 7    that the documents that I relied on for my report are
 8    the ones that are Exhibit A.
 9         Q.  (BY MS. NAGLE)  Okay.  So you're not relying on
10    any of these additional documents found in this exhibit?
11         A.  If they're not in that Exhibit A, the answer is
12    no.
13              MS. NAGLE:  Okay.  I have no further
14    questions for you, Mr. Quick.  Thank you.  I think one
15    of my colleagues has some clean-up questions, but
16    appreciate your time today.  Thank you.
17              THE WITNESS:  All right.  Thank you.
18              MS. ISIDRO:  I have just a few questions
19    briefly.
20              MR. DAVIS:  Are you going to retread any
21    ground or -- I don't think our protocol --
22              MS. ISIDRO:  It's just -- just some
23    follow-up based on the question today.
24              MR. DAVIS:  I don't think our protocol is
25    to have another bite at the apple here.
```

```
                                                              Page 151
 1    defendants are adulterated?
 2         A.   Yes.
 3         Q.   Okay.  Okay.  Your -- your report has a number
 4    of exemplary sort of what you describe as examples of
 5    corporate level CGMP failures, in your words, that you
 6    provide as to each of the manufacture defendants; is
 7    that right?
 8         A.   That's right.
 9         Q.   Okay.  How long have you been in the
10    pharmaceutical and -- and general sort of FDA medical
11    device industry, sir?
12                    MS. ISIDRO:  Objection.
13                    THE WITNESS:  Over 55 years.
14         Q.   (BY MR. DAVIS)  Okay.  And your -- your
15    observations in this declaration, are they based only on
16    the documents and other materials or are they also based
17    on those 55 years of experience that you have?
18                    MS. ISIDRO:  Objection, form.
19                    THE WITNESS:  They are based on my
20    experience in addition to the documents.
21                    MR. DAVIS:  Thank you.  No further
22    questions.
23                    Okay.  Hearing nothing else, I think we can
24    wrap it up and go off the record.
25                    VIDEOGRAPHER:  Okay.  This concludes the
```

Page 152

1  deposition of John Quick.  Off the record at 12:08 p.m.
2              (Proceedings concluded at 12:09 p.m.)

Page 153

REPORTER'S CERTIFICATION

DEPOSITION OF JOHN QUICK

VOLUME 2 OF 2

TAKEN JANUARY 28, 2022

    I, Janalyn Elkins, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

    That the witness, JOHN QUICK, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

    That the original deposition was delivered to MS. NILDA ISIDRO;

    That a copy of this certificate was served on all parties and/or the witness shown herein on _____.

    I further certify that pursuant to FRCP No. 30(f)(i) that the signature of the deponent was requested by the deponent or a party before the completion of the deposition and that the signature is to be returned within 30 days from date of receipt of the transcript.  If returned, the attached Changes and Signature Page contains any changes and the reasons therefor.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties in

Page 154

1  the action in which this proceeding was taken, and
2  further that I am not financially or otherwise
3  interested in the outcome of the action.
4        Certified to by me this 6th day of February
5   2022.

            *[signature: Janalyn Elkins]*

            JANALYN ELKINS
8           Texas CSR 3631
            Expiration Date 1/31/2023
9           Veritext Legal Solutions
            300 Throckmorton Street, Suite 1600
10          Fort Worth, Texas  76102
            Firm Registration No. 571
11          PH:  (817) 336-3042