**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS           19-md-02875
LIABILITY LITIGATION

CASE MANAGEMENT CONFERENCE

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
June 1, 2022
Commencing at 10:02 a.m.

**B E F O R E:**             **THE HONORABLE ROBERT B. KUGLER**
**UNITED STATES DISTRICT JUDGE**

**THOMAS I. VANASKIE (RET.)**
**SPECIAL MASTER**

**A P P E A R A N C E S:**

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey  07068
For the Plaintiffs

LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
BY:  MADELINE PENDLEY, ESQUIRE
316 S. Baylen, Suite 600
Pensacola, Florida 32502
For the Plaintiffs

Ann Marie Mitchell, Official Court Reporter
AnnMarie_Mitchell@njd.uscourts.gov
(856) 576-7018

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3        FARR LAW FIRM
         BY:  GEORGE T. WILLIAMSON, ESQUIRE
         99 Nesbit Street
4        Punta Gorda, Florida 33950
         For the Plaintiffs

5

6        SERIOUS INJURY LAW GROUP P.C.
         BY:  GERALD CLARK BROOKS, JR., ESQUIRE
7        PO Box 781
         Montgomery, Alabama 36101
8        For the Plaintiffs

9

10       MOORE LAW GROUP PLLC
         BY:  ASHTON R. SMITH, ESQUIRE
11       1473 South 4th Street
         Louisville, Kentucky 40208
         For the Plaintiffs
12

13       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
         BY:  ALLISON BROWN, ESQUIRE
14       Four Times Square
         New York, New York 10036
15       For the Defendants, Prinston Pharmaceuticals,
         Solco Healthcare U.S. LLC, and
16       Zhejiang Huahai Pharmaceuticals Ltd.

17

18       PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
         BY:  CLEM C. TRISCHLER, ESQUIRE
         One Oxford Centre, 38th Floor
19       Pittsburgh, Pennsylvania  15219
         For the Defendant, Mylan Pharmaceuticals, Inc.
20

21       GREENBERG TRAURIG LLP
         BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
22       BY:  STEVEN M. HARKINS, ESQUIRE
         3333 Piedmont Road, NE, Suite 2500
23       Atlanta, Georgia  30305
         For the Defendants, Teva Pharmaceutical Industries Ltd.,
24       Teva Pharmaceuticals USA, Inc., Actavis LLC,
         and Actavis Pharma, Inc.

25

1   **A P P E A R A N C E S (Continued):**

2

3        ULMER & BERNE LLP
         BY:  JEFFREY D. GEOPPINGER, ESQUIRE
4        600 Vine Street, Suite 2800
         Cincinnati, Ohio 445202
5        For the Wholesaler Defendants and AmerisourceBergen

6        BARNES & THORNBURG, LLP
         BY:  KRISTEN L. RICHER, ESQUIRE
7        2029 Century Park East, Suite 300
         Los Angeles, California  90067
8        For the Retailer Defendants and CVS Pharmacy, Inc., and
         Rite Aid Corporation

9

10  **ALSO PRESENT:**

11       LORETTA SMITH, ESQUIRE
         Judicial Law Clerk to The Honorable Robert B. Kugler
12
         Larry MacStravic, Courtroom Deputy
13

14

15

16

17

18

19

20

21

22

23

24

25

1              (PROCEEDINGS held telephonically before The Honorable

2    ROBERT B. KUGLER and SPECIAL MASTER THOMAS I. VANASKIE at

3    10:02 a.m.)

4              SPECIAL MASTER VANASKIE:  Good morning, this is Tom

5    Vanaskie.

6              RESPONSE:  Good morning, Judge.

7              SPECIAL MASTER VANASKIE:  Good morning.

8              Do we have a court reporter present?

9              COURT REPORTER:  Hi, Judge.  It's Ann Marie Mitchell.

10   I'm here.

11             SPECIAL MASTER VANASKIE:  Hi, Ann Marie.  Good to

12   have you here.

13             All right.  I think we should proceed.  I don't think

14   my part of this call is going to require a lot of time, unless

15   I'm missing something.

16             Who will be -- Mr. Slater, will you be speaking on

17   behalf of the plaintiffs?

18             MR. SLATER:  I would say at the outset, Your Honor.

19   And as you know, other people may have more and better things

20   to say than I as we move along.

21             SPECIAL MASTER VANASKIE:  All right.  And who will be

22   the spokesperson for the defense?

23             MS. BROWN:  Good morning, Your Honor.  This is Alli

24   Brown.  I think we'll have a number of folks, just depending

25   on the issue, but I will address one of the issues this

1   morning.

2          SPECIAL MASTER VANASKIE:  All right.  Well, let me

3   start then in asking, in this agenda letter, I did not discern

4   any matters that required my decision or my attention.

5          Am I correct in my understanding?

6          MR. SLATER:  I think that's correct, Your Honor.

7          SPECIAL MASTER VANASKIE:  Does the defense agree?

8          MS. BROWN:  Yes, Your Honor, correct.

9          SPECIAL MASTER VANASKIE:  Okay.  All right.  Well,

10  before I contact Judge Kugler, I wanted to -- and maybe you

11  can just circle back to me on this -- verify the matters that

12  are pending decision from me.

13          And that is the motion for clarification and

14  modification of Special Master Order 64.  As I understand it,

15  the briefing on that will be completed -- is scheduled to be

16  completed on June 6th.

17          Does anybody disagree with that?

18          And I'm hitting you cold with this, so as I said, you

19  can circle back to me as well.

20          MR. SLATER:  That sounds correct, Your Honor.  That's

21  the wholesaler request for clarification?

22          SPECIAL MASTER VANASKIE:  Yes, yes.  Exactly.

23          MR. SLATER:  I think that sounds right.

24          MR. GEOPPINGER:  Yes, that's correct, Your Honor.

25  This is Jeff Geoppinger for the wholesalers.  That is correct,

1    it's the 6th.

2            SPECIAL MASTER VANASKIE:  Then I have a motion for

3    production of Mr. Najafi's testing materials or testing

4    documents, which is ECF Number 2013.  I believe that's still

5    in front of me.

6            MR. SLATER:  Correct.

7            SPECIAL MASTER VANASKIE:  Okay.  And then I have the

8    motion for sanctions that's been pending for some time, ECF

9    Number 1838.

10           And I'll simply ask -- you can simply send an email

11   to me -- is there anything else that's pending a decision from

12   me at this time?  If you know it off the top of your head,

13   please tell me.  If not, you can also circle back with an

14   email.

15           MR. SLATER:  Your Honor, I think that there's a

16   motion still pending on de-designation, confidentiality

17   designations.

18           SPECIAL MASTER VANASKIE:  Oh, there is, there is,

19   there is.  And I started drafting it, that's right.  So let me

20   get the -- that completed.

21           MR. SLATER:  And then I think there was one other

22   motion, which was the motion for Rule 37 sanctions.  I wasn't

23   sure if that went to you or to Judge Kugler, but I think

24   that's -- I know that's still pending as well.

25           SPECIAL MASTER VANASKIE:  Yeah.  I have that down as

1    ECF Document Number 1838.  And that's for me, as I understand

2    it.  And so you're waiting on me on that.  Okay.  We'll get

3    busy.  Busier.

4            All right.  I will drop off the call now, get Judge

5    Kugler, and we'll get to the important stuff for today.

6            As I said, if there's anything else that you think is

7    pending a decision from me, please send me an email.  Thank

8    you.

9            RESPONSE:  Thank you, Judge.

10           (Pause in proceedings.)

11           THE COURT:  Good morning, it's Judge Kugler.

12           RESPONSE:  Good morning, Your Honor.

13           THE COURT:  Ms. Mitchell, are you on board?

14           COURT REPORTER:  Yes, Your Honor, I'm here.

15           THE COURT:  How are you today?

16           COURT REPORTER:  I'm good, Your Honor.  How are you

17   doing today??

18           THE COURT:  I'm good.

19           All right.  I assume everyone we need is on board.

20   You know the ground rules so Ms. Mitchell knows who you are.

21           But the first thing we have to talk about is

22   submitting these agenda reports at 7:00 p.m. the night before

23   the conference is unacceptable and has to stop immediately.

24           We started out with these -- submitting these agenda

25   items at the close of business two days before, which would be

1    5:00 p.m. on Monday.  We sort of let you slip for a while

2    because, you know, you said you had things to talk about,

3    fine.

4            But you've sufficiently abused this that we're going

5    back to the original requirement that we need these things by

6    5:00 p.m. two days before, which would be on a Monday in

7    advance of a Wednesday conference.  All right.

8            Mr. Trischler, are you on?  Are you going to speak

9    today?

10           MR. TRISCHLER:  Good morning, Your Honor.  Yes, I am

11   on.  I think I will speak to some issues.  There will be

12   others in our group who may be addressing other issues on

13   behalf of the defense.

14           THE COURT:  You asked that this be conducted by Zoom.

15           Can you explain to me why we're better off doing

16   these by Zoom than phone conference?

17           MR. TRISCHLER:  Well, Your Honor, I think that simply

18   we had spent some time in meet and confer last week with the

19   plaintiffs on issues related to case management on a

20   going-forward basis.  We have some disagreements with the

21   plaintiffs on those issues as the Court is probably now aware.

22           We thought simply the opportunity to be face to face

23   virtually might be of some help and benefit in setting forth

24   the position of the parties, but obviously, you know, we'll

25   defer to whatever methodology the Court wants to follow.

1  Telephone is fine.  We just thought that Zoom might be of

2  additional benefit.

3         THE COURT:  Well, it's what you stated in your

4  papers.  That's the conclusion.

5         The question I have is, what are the reasons why Zoom

6  is better than phone or -- I mean, I hope someday soon to get

7  back in person for some of this.  But why is Zoom is better

8  than the phone?

9         MS. BROWN:  Your Honor, this is Alli Brown.  I think

10 I can jump in on that if Your Honor would allow me.

11        I'm going to be addressing one of the issues on the

12 agenda.  And it was actually partly my request to ask if the

13 Court would indulge us in Zoom.  I thought it would be easier

14 if I shared some slides with the Court, but I certainly

15 understand the Court's preference for audio conference.  And

16 we're certainly prepared to proceed.

17        So I will take full responsibility for throwing the

18 Zoom wrench in this, and I apologize.

19        THE COURT:  You don't have to apologize.  I'm just

20 curious, that's all.

21        MS. BROWN:  No, it was me.  I thought -- one of the

22 issues is a little complicated.  I thought I might put some

23 case law quotes up there.  But it's not an issue at all.

24 We're happy to do it by phone.

25        THE COURT:  All right.  The first issue that's raised

```
 1   is plaintiff apparently wants to bring some partial summary

 2   judgment motions.

 3            Mr. Trischler, in your letter -- I don't know if

 4   you're prepared to respond.  If you're not, somebody else

 5   will.

 6            Five times in your letter you refer to this -- these

 7   motions as defendants' alleged misconduct.  I frankly don't

 8   know what you're talking about.  You almost sound like the

 9   plaintiffs are bringing intentional tort cases.

10            What's the misconduct that you think the plaintiffs

11   want to raise in their motions based on your conversations

12   with them?

13            MS. BROWN:  And Your Honor, this is Alli Brown.  I'm

14   prepared to address that issue in the letter, if the Court

15   would allow.

16            THE COURT:  Yes, please.  What's the misconduct that

17   you think the plaintiffs are alleging?

18            MS. BROWN:  Sure.  Absolutely, Judge.

19            And one thing to report that I think was very helpful

20   and productive is that we had a meet and confer with

21   plaintiffs the Friday before Memorial Day where I think we had

22   a very professional and productive discussion as we tried to

23   sort of understand what they meant by the liability discovery

24   and liability dispositive motions that they proposed.

25            And the reason we referred to it as limited discovery
```

1  and limited motions on the issues of conduct is really coming

2  out of that meet and confer.  And I think it's confirmed in

3  Mr. Slater's letter from last night, Your Honor, that the

4  limited discovery and the sliver of motion practice that the

5  plaintiffs are proposing here really go to issues of conduct,

6  issues of whether or not the defendants were in compliance

7  with GMP, what the defendants knew and when they knew it.

8       And that's in part -- and I can address it when the

9  Court is ready, but that's in part the objection we have to

10  this limited proposal that is limited in scope and in time, is

11  because in our view, it's not addressing the complete issue of

12  liability but just this sliver of an issue as it relates to,

13  you know, regulatory issues or compliance with GMP.

14       And so the reason our letter referred to alleged

15  misconduct is because that's how we understood how the

16  plaintiffs were defining liability, as opposed to whether or

17  not defendants are liable to a particular plaintiff on a

18  complete cause of action.

19       THE COURT:  Well, Mr. Slater never used the word

20  "misconduct."

21       But I'm going to ask Mr. Slater now, or whoever else

22  on behalf of the plaintiff, to sketch out for me what motions,

23  what summary or partial summary judgment motions you

24  contemplate and the vehicle by which you hope to accomplish

25  it.

```
 1          MR. SLATER:  Hello, Judge.  This is Adam Slater.  I
 2   will address that.
 3          I think that we're certainly not, first of all,
 4   raising a sliver of conduct.  We're seeking -- in accordance,
 5   frankly, with defendants' counsel, who for months and months
 6   has been saying they want to file dispositive motions, and in
 7   order to also move the case towards trial readiness as was
 8   discussed by Your Honor at the last conference, we thought
 9   that it was prudent at this point to try to set up a schedule
10   to get, A, liability experts on both sides laid out on all
11   issues.  It was not a sliver of the case.  It was whatever --
12   whatever issues either side thinks they can move for partial
13   summary judgment on.
14          As far as what motions we contemplated, listed in the
15   letter, for example, to move on breach of express warranty.
16   And we would do that -- and I acknowledge that there are
17   issues because the fact that the class certification motions
18   are pending, but the Court can certainly deal with the timing
19   of when to resolve these motions, but we contemplated filing
20   the motions within the master complaints -- the master class
21   action complaints and to deal with, frankly, all 50 states,
22   because that's what we assumed the Court wanted us to do in
23   accordance with what the motions to dismiss addressed and to
24   file motions where we would probably follow a lot of the --
25   follow the state groupings that we've already offered to the
```

1  Court and at least get these motions on file, because our

2  feelings from what Your Honor had said was you want us to be

3  proactive and move things forward.

4       So we were prepared to start briefing and filing

5  these motions, and if the Court wanted to, for example, wait

6  until class certification was decided on all or some of the

7  classes and then decide the motions in that context, certainly

8  we're open to whatever approach the Court thinks makes sense.

9  But we certainly felt that we should be filing motions that

10 are within those master complaints sooner rather than later.

11      And again, that's why we realized, we don't have

12 liability expert reports on both sides on all liability

13 issues, whatever issues people want to bring motions on.  For

14 all we know, there's defendants who want to cross-claim

15 against one another and have expert reports against one

16 another depending on how they see the case.

17      So we just thought that that needed to get out of the

18 way so that the motions could then be filed and no party could

19 then say, well, you know, it's premature because experts -- we

20 still have the right to bring an expert in who could address

21 the facts that are at issue and address these claims.

22      I hope that helps to explain where we're coming from.

23      THE COURT:  Well, let's get a little more specific.

24 Let's take the example of the economic loss or third-party

25 payor cases.

1     Frankly, folks, I'm not sure why there's such this

2  obsessive focus on these class action motions.  Those cases,

3  the third-party payor economic loss cases, they're going to

4  continue whether there's a class or not.  I mean, there's

5  enough money having been spent by some of those plaintiffs

6  that they're going to continue with the litigation either on

7  their own or as part of a class.  I think the class action

8  certification motions have relevance only and specifically to

9  the medical monitoring cases.

10     But be that as it may, Mr. Slater, let's take one of

11  cases, the economic loss third-party payor case.

12     Tell me what you think would be the motions in one of

13  those cases.  Forget about class actions for a minute.  Just

14  think an individual payor, paid millions of dollars out, wants

15  their money back.

16     What kind of summary judgment motions do you foresee

17  the plaintiff would bring in that kind of a case?

18     MR. SLATER:  I think that one of the motions would

19  likely be breach of express warranty claim that we'd move for

20  partial summary judgment on that claim.  And I think that

21  you're right, whether it's a class action or whether it's an

22  individual case for the TPP, for the third-party payor, I

23  think that would be among the motions that would be filed.  I

24  think that potentially consumer protection would be a motion

25  that we would move on based on the facts in these cases.

*United States District Court*

1          Those are two that jump to mind right away.  And I'm

2     focus on manufacturers for that purpose.  If we're talking

3     about going further down the supply chain, obviously we would

4     start to implicate the implied warranty with the retailers as

5     a potential motion.

6          THE COURT:  What expert do you think you need to

7     proceed with a summary judgment motion on the warranty case

8     against -- on behalf of a third-party payor?

9          MR. SLATER:  Well, I think that based on the facts

10    and based on the admissions from the 30(b)(6) witnesses, a

11    strong argument -- an argument could be made that we don't

12    need an expert to prevail, but I would assume that if we were

13    to file that motion, the defense would say, well, we are going

14    to bring in experts that are going to dispute our liability.

15    So we would want to have that piece cleaned out.

16         And we had assumed as well from what the defense had

17    been saying that they intended to file motions as well.  I

18    don't know what claims they were contemplating filing on in

19    this context, but, you know, obviously we wouldn't want to

20    have that -- that procedural defense of the motions on either

21    side.

22         But I don't know that we need an expert to prove

23    breach of express warranty on these facts with the admissions

24    that we have and with the settled facts, but I would think the

25    defense might argue that they want to say, well, we did

```
 1   everything right.  We met all the specifications.  We didn't

 2   violate CGMP, and they would potentially try to get an expert

 3   to say that.  I'm not sure that -- so far I don't think they

 4   have an expert to say that, but I would suppose that they

 5   might make an argument, they would have come up with an

 6   expert.

 7           So again, that was the thinking for wanting to get

 8   experts addressed.  Certainly if the Court thinks that it's

 9   not necessary, maybe we need to start filing the motions on a

10   shorter time frame.

11           THE COURT:  Well, I don't know whether it's necessary

12   or not.  It's your case and it's their defense.  I don't want

13   to speak for either you or them, as to what they think they

14   need to defend their case and what you think you need to

15   prosecute your case.  That's your business, not mine.

16           Ms. Brown, did you want to respond to that?

17           MS. BROWN:  Sure.  Absolutely, Judge.  Thanks very

18   much.

19           I think at bottom, there's good news here, which is

20   that we are not completely without agreement.  I mean,

21   certainly the parties all agree that additional discovery in

22   the right time and in the right scope and ultimately

23   dispositive motions are ultimately needed to move these cases

24   to a trial-ready position and of course to ultimately reach

25   resolution here.
```

1          Our objection to the particular proposal put forward
2    by the plaintiffs here is really one of timing and of scope,
3    both as to the proposed discovery and as to the proposed
4    dispositive motions.  And the objections we have, Your Honor,
5    really fall into three categories.
6          Number one, we believe that the proposal to isolate a
7    portion of liability and move on that is contrary to law.  And
8    I'll just cite a case for you in a moment, Judge, and explain
9    that a little more.
10          Number two, Your Honor, we believe that this proposal
11    is extraordinarily premature given that the Court has not
12    ruled on the class certification rulings yet, the briefing
13    yet, and, frankly, given the enormous objections -- and Your
14    Honor knows because you have all the paper in front of you --
15    that the defense have raised that these classes are even
16    certifiable under Third Circuit law.
17          And then finally, Your Honor, we believe that the
18    proposal is inefficient at this point.  The timing of the
19    proposal would lead to enormous inefficiencies, because we
20    don't know -- you know, Mr. Slater just said he envisions
21    moving under consumer protection statutes, but of course,
22    until we know an individual case, an individual plaintiff or
23    plaintiffs, we don't know what state's law would apply to
24    those individual consumer protection statutes.
25          And so putting a dispositive motion schedule in place

1    right now respectfully would lead to enormous inefficiencies

2    in terms of the amount of briefing under various different

3    state laws that would have to happen.  It would be inefficient

4    for the parties and certainly inefficient for the Court.

5              So if Your Honor would just allow me just to expand

6    on those three very briefly, because I don't think this is a

7    matter of complete disagreement with the concept of discovery

8    and the concept of dispositive motions.  I think it's a

9    disagreement with this limited proposal.

10             And so, Your Honor, what's being proposed as we

11   understand it is an effort to move for summary judgment on

12   conduct-type issues, did defendants violate CGMP, did

13   defendants not know of something that was knowable.  And the

14   problem with that is that it ignores the remaining elements of

15   the causes of action that are actually at play here, and it

16   seeks what the courts have termed to decide liability in the

17   abstract.

18             THE COURT:  So what other issues are there other than

19   conduct issues for the plaintiffs?  I don't understand what

20   else there is.

21             MS. BROWN:  Sure, Your Honor.  Well, of course there

22   is causation and damages.  And that's really what the *Kohn*

23   court talks about.  And we cited that case in our letter, Your

24   Honor.  And I think the explanation there is real instructive,

25   because what the courts -- this was an effort to certify an

1   issues class.  And as the Court well knows, this type of

2   proposal, this sort of conduct-related liability issue

3   proposal, has been repeatedly rejected in the context of

4   efforts to certify issues classes.

5           And I would just direct the Court to the *Kohn*

6   decision from the District of Colorado.  Because this is what

7   the court said, and I think it really expresses our argument

8   and objection here.

9           The court says, "plaintiffs' attempt to isolate the

10  issue of potential liability-creating conduct from the issues

11  of causation and damages may be a good tactic for plaintiffs,

12  but I question whether it is conducive of a reasoned and fair

13  process to determine whether defendants are liable to class

14  members."

15          "Causation and damages are integral, indispensable

16  parts of the question of liability."

17          "The liability issue cannot be decided in the

18  abstract without the particularized proof of cause and damage

19  concerning each plaintiff."

20          And that, Your Honor, again is *Kohn v. American*

21  *Housing*.

22          THE COURT:  Ms. Brown -- Ms. Brown, wait a minute,

23  wait a minute.

24          Why do you say that -- I'm not sure why you have

25  concluded that the plaintiffs want to isolate just the conduct

1    issues from the causation issues.  I didn't hear Mr. Slater to

2    say or read his letter to say that they're going to ask the

3    court for a judgment that the -- that the defendants violated

4    some manufacturing standard, period, end of story.  I think

5    they want to move also for causation, but that caused a loss.

6         Damages in those third-party payor cases is

7    relatively straightforward.  I know you have defenses that the

8    product was worth something because it did control blood

9    pressure and the plaintiffs say, no, we wouldn't have ever

10    bought it because it's contaminated.  But that's easy, that

11    issue.

12         But I don't understand why you keep saying that this

13    is an isolated -- there's just one isolated -- one issue out

14    of many when they do these summary judgment motions.

15         MS. BROWN:  Uh-huh.  Yep.  And Your Honor, I will be

16    very happy to have misinterpreted Mr. Slater's letter and our

17    discussion on this point, because that really is what was

18    troubling us the most, is that we understood plaintiffs'

19    proposal to be proposing essentially what the *Kohn* court said

20    cannot be done.

21         And the only thing that gave me a little concern,

22    Judge, is if you look at page 6 of Mr. Slater's letter where

23    he puts forth a list of these contemplated motions, one of

24    them is violation of CGMP.  And so as I understood our

25    discussion with the plaintiffs last Friday and as I understood

1    their letter and their list of issues, they weren't proposing

2    a dispositive motion schedule which would move on complete

3    causes of action that would implicate experts beyond, you

4    know, regulatory or CGMP experts, they were proposing that the

5    Court set a schedule well in advance of class certification,

6    well in advance of law being determined, to move on these very

7    discrete issues of GMP compliance.  And that's what gave us a

8    lot of heartburn, frankly, Judge, because we believe that's

9    inconsistent with the law.

10          THE COURT:  Well, it's not inconsistent with Rule 56.

11   Rule 56 explicitly permits them to move on any claim or any

12   part of any claim.

13          MS. BROWN:  Well, I guess the issue, though, Judge --

14   and plaintiffs recognize it on page 6 of their brief -- is

15   that dispositive motions are premature before expert reports

16   on the impacted issues are exchanged.

17          And our position is that the experts that they're

18   proposing would not be the totality of expert that would opine

19   on these particular issues.  And that's what we perceived to

20   be somewhat unfair, is that they were proposing only sort of

21   their affirmative regulatory conduct, GMP, you know, whatever

22   term we used, proposing sort of only their experts and then

23   seeking a ruling on this discrete issue without allowing

24   defendants the opportunity for their own experts that would

25   touch the complete cause of action.

1          And that's what I think the *Kohn* court is saying you

2    can't do, you can't take potentially liability-creating

3    conduct away from the entire liability cause of action,

4    because that's unfair to defendants.

5          THE COURT:  Well, look, I agree that we don't want to

6    piecemeal these things.  But I'm not sure --

7          MS. BROWN:  Right.

8          THE COURT:  -- that that's where the plaintiffs are

9    going with this anyway.

10         And furthermore, your experts would only have to be

11   in response to their experts.  If they move for summary

12   judgment and they're supported by an expert, then, you know,

13   you get your own expert that says that their expert is full of

14   baloney.

15         I'm not really too concerned.  I'm not as worried as

16   you seem to be about how this sketches out logistically.

17         But anyway, back to Mr. Slater.

18         Mr. Slater, do you understand what I'm trying to say

19   here?  I don't read you to say that your summary judgments are

20   just going to be partial for certain facts.  I mean, am I

21   wrong?  Or what are you contemplating?

22         MR. SLATER:  You're right, Judge.  We're

23   contemplating moving on full causes of action.

24         For example, as I said, breach of express warranty,

25   consumer protection, the other claims that we have that are in

 1   this case.  We're looking to move on full causes of action.

 2   We were listing in our letter the various issues.  And the

 3   fact that we listed the CGMP issues, that's been a large focus

 4   of the litigation lately.  There's certainly a component of

 5   some of the misconduct, but we're certainly not saying that

 6   we're just going to move on isolated points of misconduct.

 7   That's not our intent.

 8         And I can tell you in terms of the scope of experts,

 9   which really -- it just seemed like that's something that

10   needs to be done if these cases are to be trial ready.  If the

11   defendants want to include other liability experts, we invited

12   them on Friday to tell us what experts they'd contemplate.

13   We're still waiting.  But obviously all parties can file

14   whatever expert reports for any discipline they think are

15   relevant.  So that's certainly not something that would

16   hamstring or limit the defendants in any way.

17         THE COURT:  Okay.  Well, I think we better understand

18   where this is going, Ms. Brown.  The plaintiff and presumably

19   the defendants want to move for summary judgment on the entire

20   claims, however you want to term them, express warranty,

21   consumer fraud, whatever it is, it's going to be the entire

22   thing.  Okay?

23         MS. BROWN:  Understood, Your Honor.  And what I

24   understand Mr. Slater is saying is then essentially this

25   expert discovery he's proposing is not necessarily limited to

 1    GMP experts or the examples he gave, it's a bit broader, which

 2    is I think a little more consistent with what we were

 3    proposing, which is that we do, you know, full expert

 4    discovery that would be needed for some of these motions.

 5          But the other issue, though, Judge, that's very

 6    concerning to us is the premature nature of this proposal,

 7    given that we have not identified any cases in which these

 8    motions would be filed.  And we have a lot of concern, Your

 9    Honor, about a dispositive motion schedule that is untethered

10    to a particular case and a particular plaintiff.

11          Certainly Your Honor knows, I don't have to tell the

12    Court, that the Court can't issue a ruling for or against a

13    putative class plaintiff until the class has been certified.

14    And so to the extent that these motions are proposed in the

15    context of a class action, we have enormous concern that that

16    would run afoul of the rule against one-way intervention, of

17    pretty settled case law, Your Honor, that this can't be done

18    in advance of a class cert ruling.

19          And practically, Your Honor, it seems impossible to

20    move on issues of consumer protection statutes and breach of

21    warranty without knowing what state's law would apply.

22          And I heard Mr. Slater say this morning, well, you

23    know, we would propose the state groupings that we briefed.

24    But as Your Honor will see or has seen, there are significant

25    legal deficiencies with those groupings.

1           And I'll just give you an example.  The plaintiffs
2   have proposed subclasses for consumer protection class
3   actions, and at least ten states that are included in those
4   subclasses don't allow class actions for consumer protection
5   statutes.
6           So, you know, in our view saying, well, we could just
7   use the groupings in the briefing doesn't cure the problem,
8   because there are real deficiencies with those proposed
9   groupings.
10          So the other aspect in addition to believing that,
11  you know, a limited proposal is contrary to the law, the
12  concern we have is how premature this is as it relates to
13  classes, which is why -- and I apologize that it came in so
14  late, Judge.  We will do better with our submission next time
15  for sure.
16          But why we proposed, why don't we do this expert
17  discovery in the context of some of the personal injury
18  bellwethers.
19          And certainly we hear the Court loud and clear that
20  the Court does not intend to try those cases, but at least if
21  we picked a subset of those cases, Judge, we would know the
22  plaintiffs, the applicable state law, we could all do what we
23  believe is the necessary discovery to get those cases to a
24  position where they could be, you know, remanded for
25  state-specific, case-specific dispositive motions and then

1    proceed to trial.

2            And so, you know, certainly we want to engage with

3    the plaintiffs and the Court on the best proposition.  But

4    given that no class has been certified, given that the Court

5    can't enter judgment for an uncertified class, we thought

6    perhaps the way to move things forward -- and we hear the

7    Court that we should be doing that -- would be to do it in the

8    context of the personal injury bellwethers.

9            THE COURT:  Well, thank you, but we're not doing

10   personal injury bellwethers.

11           See, I didn't contemplate that the plaintiffs would

12   be filing in the personal injury cases on the basis of

13   consumer fraud statutes.  I mean, the personal injury cases

14   are going to be decided by that state's tort law or product

15   liability law, and nothing -- the consumer protection statutes

16   are going to come into play I think in the third-party payor

17   cases.  And that's an easy vehicle to get to the answer,

18   because, like I said, it's not really dependent on class

19   action status.  There's enough individual plaintiffs that can

20   bring that kind of a motion as they have to counter the

21   lawsuit in their own name as seeking a summary judgment, which

22   is what I contemplate the plaintiffs are going to do anyway,

23   so I'm not really concerned about all that.  I don't think

24   this is really a terrible issue that we have to spend a lot

25   more time on.

1      MS. BROWN:  No, I understand, Judge.  We just had a

2    lot of heartburn that we don't even know the case, you know.

3    And I understand you're saying, listen, these cases can

4    proceed even if I don't certify the class.  And perhaps then

5    we need to wait for those decisions, figure out what pieces

6    are going to remain, and then identify a subset of those so we

7    have a plaintiff, we have an applicable state law, you know,

8    we sort of know the confines of what is necessary for

9    dispositive motion, because, you know, just proposing

10   dispositive motions on consumer protection statutes in the

11   abstract is an impossibility when many states don't recognize

12   it, when there are conflicting applications of those.

13      And the other thing that gave us pause, Judge, is

14   their letter suggests that these dispositive rulings that

15   they're seeking would be applied to the personal injury cases

16   too.  And maybe this was my disconnect, but that's where I

17   became concerned that they were looking for rulings on issues

18   of CGMP or conduct-type ruling.

19      THE COURT:  Well, clearly the plaintiffs in their

20   motions for summary judgment are going to have to identify the

21   exact claim they're seeking judgment on and the statutes in

22   that particular jurisdiction that are implicated.

23      MS. BROWN:  Yes.  We --

24      THE COURT:  And you'll have sufficient opportunity to

25   respond.

1          And I think also when you get the plaintiffs' expert

2    reports, you'll get some pretty good idea of where this is

3    going, aren't you?

4          MS. BROWN:  Well, that would be our hope, Judge, that

5    we could get to a place where the schedule contemplates a

6    plaintiff and a state law and so we all know sort of what

7    we're working with in -- we're making motions in the confines

8    of a case, in the confines of a particular state's law and in

9    the confines of a complete, you know, cause of action or a

10   complete liability claim, not, you know, a liability in the

11   abstract.

12         THE COURT:  Well, I think that's what's going to

13   happen.  And obviously, if it doesn't, you know, we'll fix it.

14         MS. BROWN:  Understood, Judge.

15         THE COURT:  I think the plaintiffs understand where

16   I'm heading with this.  I think we won't have any problems

17   with it.  You can always talk to them.  And if you get some

18   papers and you say, geez, I don't know what they heck you're

19   talking about, I think you know how to get a hold of them.

20         MS. BROWN:  Yes, we do, Your Honor.  We do.  Yeah.  I

21   mean, if we can continue to work towards identifying cases,

22   identifying plaintiffs, identifying state laws, I think we're

23   going to have far less disagreement if this ultimate motion

24   practice happens in the confines of something that will later

25   be determined.

```
 1            THE COURT:  I tell you, I'm looking at the
 2   plaintiffs' proposed schedule for these things.  And
 3   essentially what I'm going to do is I'm going to move all
 4   those plus 60 days.  Okay?
 5            MS. BROWN:  And Your Honor, can we make a
 6   defendant -- can we view this sort of in the confines -- once
 7   the class cert rulings come down, to the extent they're moving
 8   on class cert issues, can we sort of hold the entry of any
 9   schedule until we at least get those rulings so we know what
10   the landscape looks like?
11            THE COURT:  If the Court's rulings change the
12   landscape, we will revisit the dates.  Okay?
13            MS. BROWN:  Understood, Your Honor.  I guess then,
14   sorry to keep coming back to it, but my concern is the state
15   law issue.  I mean, if we don't know what the case is, how
16   will we know what law applies?
17            THE COURT:  Plaintiff is going to have to identify
18   the state law that applies when they move for summary
19   judgment.  I don't know how else they can move for summary
20   judgment --
21            MS. BROWN:  Right.  With --
22            THE COURT:  -- without identifying the states that
23   are involved.
24            MR. SLATER:  And Your Honor, we would assume that the
25   defense likewise, to the extent they want to move to dismiss
```

*United States District Court*

1   particular claims that they did with the motion to dismiss,

2   will define what they're seeking to dismiss as well.  I would

3   think we're all going to file our motions at the same time

4   anyway.

5           THE COURT:  Yeah, I know.  You're all really good

6   lawyers.  You're not trying to hide the ball from anybody

7   here.  You're going to have to be up front about these things.

8           All right.  The next issue that's raised --

9           MS. LOCKARD:  Your Honor, if I may just jump in, this

10  is Victoria Lockard for Teva and the joint defense.

11          On -- and I understand the Judge's moving of the

12  deadlines.  The one specific deadline I wanted to bring to the

13  Court's attention is with respect to disclosures and expert

14  reports.

15          Previously the Court did not allow rebuttal experts,

16  finding that it wasn't necessary for our class experts and our

17  causation, and plaintiffs have now proposed rebuttal experts

18  on the, quote, liability piece of this.

19          And so we would request on behalf of defendants, we

20  don't believe these are necessary at this point.  I think both

21  sides would know what they would put in a report.  It

22  shouldn't be any surprise.  And so we would request that the

23  rebuttal expert provision be struck from that proposed

24  schedule.

25          THE COURT:  Thank you for pointing that out.  And I

1    agree with you, we don't need that.  If there's good cause why

2    there needs to be a rebuttal, then plaintiffs can make an

3    application at that time.

4           MS. LOCKARD:  Thank you, Judge.

5           THE COURT:  Now, the next issue that's raised is the

6    answers to be filed by defense counsel.

7           Mr. Slater, I'm at a loss to understand why they need

8    to file an answer at this time.  Can you explain that?

9           MR. SLATER:  Sure, Judge.  We frankly figured from a

10   procedural posture standpoint that since the motions to

11   dismiss have all been decided, the motions to amended have

12   been decided, that if we're going to at some point be moving

13   forward to dispositive motions, that it would be important for

14   us to know the scope of what the answers are, what the

15   defenses are, what the cross-claims are, so we'd know exactly

16   what the positions of the defendants are.  And it was our

17   understanding that at some point answers would be required so

18   that -- so again, so all parties would know what everybody's

19   position was.  And we figured this was the right time.

20          That was our entire thinking on it, Your Honor.  And

21   just to flesh it out a little more, in terms of cross-claims,

22   these deadlines for liability expert reports and for

23   dispositive motions, we contemplate this to encompass all

24   claims, all parties.  So to the extent that somebody in the

25   supply chain on the defense side has a cross-claim that they

```
 1   would want to bring against another defendant and would want
 2   to have an expert in case that case goes to trial, our
 3   position is that's all contemplated by this schedule so that
 4   we all know the full lay of the land and we all know exactly
 5   what claims each party is holding against one another.
 6           THE COURT:  I think you're right.  This is for all
 7   potential dispositive motions.
 8           As to cross-claims, I mean, I don't know what the lay
 9   of that land is, given all the indemnity agreements out there.
10   Who knows who is going to be serious about a cross-claim at
11   this point.
12           But I got to tell you, I don't think that having to
13   file an answer is going to add a whole lot to what we know in
14   this case and what we need to do in this case, so I'm not
15   going to require any answers to be filed yet at this time.
16           Losartan and irbesartan.  Plaintiff wants some
17   documents at least to get started figuring out what that's all
18   about.
19           I guess we need to start figuring out what that's all
20   about, don't we?
21           Who is going to speak for the defendants?
22           MS. LOCKARD:  Your Honor, it is Victoria Lockard on
23   behalf of Teva and the defendants on this issue.
24           We did meet and confer on this as well.  I do think
25   there's some additional discussions to be had among the
```

```
 1   parties.  You know, we do recognize at some point there will
 2   come a time where we'll need to go through full discovery on
 3   losartan and irbesartan.  At this point, however, we strongly
 4   feel that to do that and to engage in full discovery on those
 5   claims is going to divert necessary resources from readying
 6   the cases for trial, from the settlement efforts, and will
 7   just complicate what is currently already a complex situation.
 8            We are willing to talk with plaintiffs about what
 9   sort of information we can provide that they think they would
10   need in the short term for losartan and irbesartan, but it is
11   not simply a matter of just, you know, having the same type of
12   discovery that we've culled through and can just turn over.
13   It's not the same supply arrangements.  It's not necessarily
14   the same defendants.  And so there are a lot of complexities
15   beyond just, okay, let's, you know, crank up the discovery
16   machine and start turning over documents and taking
17   depositions of witnesses on these issues.
18            So we certainly know there will be a time for it, but
19   it does not seem, given all the additional work that we're
20   talking about here today, that this is something that needs to
21   happen imminently.
22            THE COURT:  Well, I'm sympathetic to your position,
23   but let me remind you, from the beginning of this case I have
24   told everyone that it's going to take armies of lawyers,
25   because we're going to be moving in a lot of tracks at the
```

1    same time.  And I think I estimated back then that I thought

2    the defense costs would exceed $100 million eventually in this

3    case, and I still think that.  So, you know, we all have to

4    step up our game and get this done.

5           On the other hand, you don't need full discovery.  I

6    think your proposal is a sound one, that you speak with

7    plaintiffs' counsel as to what they really need at this point

8    to start thinking about losartan and irbesartan and numbers

9    that are involved, how many prescriptions and all that kind of

10   stuff.  All right.

11          So I think you should continue those discussions

12   and -- but I do think the plaintiffs are entitled to start

13   getting some information about those two drugs.  And we'll get

14   that process started now.  Okay?

15          MS. LOCKARD:  Understood.  Thanks, Judge.

16          THE COURT:  We have this application by the

17   defendants for a surreply.  Plaintiff says no, no, no.

18          I give the plaintiffs leave to file no more than

19   three pages within seven days in opposition to the application

20   to file the surreply.  Okay?  It's not that complicated,

21   folks.

22          Silberman.  Mr. Slater, I'm not sure what you're

23   saying.  It seems to me like you're saying, well, we'll

24   dismiss the Silberman claim when and if they have to.

25          What is the status of this?

1        MR. SLATER:  Essentially you're right, Judge.  In our

2   brief a statement was made that the claim is going to be

3   dismissed.  The defendants then came to us and said, dismiss

4   the claim.  Not disputing that.

5        We -- when they came to us, we looked at it and said,

6   that's not really what was intended to be stated.  That's the

7   truth.

8        So we can handle it two ways.  One is if it -- and

9   the facts are that Ms. Silberman bought her drugs from

10  QuickChek and then CVS bought QuickChek and bought their --

11  our understanding, their liabilities.  So it's a funky fact,

12  I'll use that technical legal term, but we certainly don't

13  want to dismiss that claim with prejudice outright.

14       So we would prefer to just leave it, and if it

15  becomes an issue on class cert, then it certainly can be

16  dismissed at that point if that were to become an actual

17  impediment to class certification.  Obviously we would address

18  what we needed to do.  The alternative would be to dismiss it

19  without prejudice and see where things go.  But it would seem

20  to make more sense to just leave it for the time being and see

21  where things go and see if it's necessary to dismiss it.

22       MS. RICHER:  Good morning, Your Honor --

23       (Court reporter clarification.)

24       MS. RICHER:  Good morning.  Sorry.  It's Kristen

25  Richer from Barnes and Thornburg on behalf of CVS.

```
 1            THE COURT:  Okay.  Go ahead.
 2            MS. RICHER:  Your Honor, to respond to that, I'm
 3   still scratching my head why plaintiff -- I saw plaintiffs'
 4   letter brief that was filed yesterday.  And, you know, it was
 5   disappointing to see them walk back from what seemed to us a
 6   very clear statement and unequivocal in Footnote 19 of
 7   plaintiffs' reply brief in support of the proposed medical
 8   monitoring class, which said, plaintiffs consent to dismiss
 9   Plaintiff Silberman without prejudice and in doing so address
10   defendants' concerns on the subject.
11            So they saw the evidence that we pointed to in the
12   brief that Ms. Silberman did not purchase from a CVS.  And
13   rather than engage with that, they sidestepped and said, fine,
14   we'll dismiss it.  And to now see them walk back from that is
15   surprising.  That's quite a doozy.  It's a doozy that ended up
16   in their brief and shouldn't have been there.
17            You know, but I think to the meat of the matter,
18   plaintiffs keep saying that CVS acquired QuickBuy (sic) and
19   that simply isn't the case.  CVS has specifically denied
20   having done so and offered evidence to plaintiffs showing just
21   that in opposing plaintiffs' motion to certify the medical
22   monitoring class, including by submitting a declaration from a
23   CVS employee that it was a file buy, F-I-L-E buy, not an
24   acquisition, and that liabilities were not assumed.
25            And Your Honor, a file buy is essentially a process
```

 1    where a pharmacy acquires the customer rolls and fill history

 2    for patients of a closing pharmacy so that the patient history

 3    can be transferred over to the buyer in the event the patient

 4    elects to start filling at the buyer's pharmacy instead going

 5    forward.  It is not an acquisition of the pharmacy's

 6    operations.

 7            There are public news articles indicating that CVS

 8    agreed to a file buy with QuickChek.  Ms. Silberman's own

 9    testimony from her deposition is that her prior pharmacy does

10    not operate as a CVS today and that she never interacted with

11    anyone from CVS, and that when her pharmacy closed, she didn't

12    actually switch to CVS, she went to a different pharmacy.

13            You know, to me it's worth noting that even the fact

14    that Ms. Silberman fills at a different pharmacy that was not

15    owned and operated by CVS at the time of her fills makes her

16    uniquely situated to others in the class that she purports to

17    represent.

18            But I think, you know, at minimum, plaintiffs seem to

19    just keep assuming that we acquired all liabilities.  We've

20    endeavored to show them that's not the case.  We've pointed

21    them to information showing that's not the case.  And it seems

22    to us a waste of the Court's energies and, frankly, of CVS's

23    energies in continuing to have to defend against a medical

24    monitoring class, particularly if we're contemplating activity

25    in the form of additional expert reports or MSJs, which is

1    what we've been discussing today.  Why continue to drag CVS

2    along and keep them as a defendant here when there's no basis

3    to do so?

4          You know, we would encourage that the plaintiffs not

5    kick the can down the road, and we would appreciate any

6    guidance the Court can give on it.  But we think that the path

7    forward here is already clear enough and that this could be

8    cleaned up very easily with the dismissal that plaintiffs

9    promised.

10         THE COURT:  Well, it would be an easy way to clean it

11   up.  But when a lawyer tells me that he or she made a mistake

12   in a filing, I take him or her at his or her word.  He says he

13   made a mistake, it shouldn't have been in the brief, sorry and

14   all that.

15         And frankly, there's no way I can compel them to

16   voluntarily dismiss the case.  But I agree with everything you

17   say.  I think they ought to take a hard look at that, you

18   know.  And if they do, maybe they'll come to a different

19   feeling about this particular plaintiff.  But it would make

20   sense for them to take a long, hard look as to whether this is

21   an appropriate plaintiff in that case.

22         MR. SLATER:  Understood.

23         THE COURT:  All right.  We get now to the fact sheet

24   deficiencies, orders to show cause.

25         According to defense counsel's letter, the Charlene

*United States District Court*

 1    Mills matter has been dismissed, so that order to show cause

 2    can be dismissed.

 3            The Robert Sanford and James Larsen matters have been

 4    resolved, so those orders to show cause are dismissed.

 5            Deborah Harris and Ulysses Payne, P-A-Y-N-E, they

 6    requested they be relisted next month, so they'll be relisted

 7    next month.

 8            Defense counsel says Jimmie Thorn, Betty Hall and

 9    Marion Dennis, that plaintiffs' counsel has agreed to dismiss

10    those cases, therefore, those orders to show cause will be

11    dismissed.

12            But that leaves the Chadwick Wilson and Eric Thompson

13    cases.

14            Anybody on the plaintiffs' side want to speak on

15    behalf of those two plaintiffs?

16            MR. WILLIAMSON:  Your Honor, this is George

17    Williamson on behalf of the plaintiffs.

18            And my understanding is that there was a conference

19    on Friday.  And if there is any individual plaintiffs' counsel

20    on here that wants to speak for that, I would just ask that

21    the Court allow that to happen.

22            THE COURT:  That's fine.  That why I said any

23    plaintiffs' counsel want to speak on behalf of Chadwick Wilson

24    or Erick Thompson.

25            MS. PENDLEY:  This is Madeline Pendley from Levin

 1    Papantonio Rafferty on behalf of Eric Thompson.

 2              THE COURT:  Okay.

 3              MS. PENDLEY:  The situation with Mr. Thompson is we

 4    did get an extension last month to get his PFS completed.

 5              We heard from him during the extension time on May

 6    16th.  He sounded terrible.  He had been in the hospital.  He

 7    still isn't feeling well.  The medication he's on makes him

 8    incoherent.  To put it candidly, it sounds like he is dying.

 9    He said he needs his kids' help to fill out the PFS.

10              We have tried following up with him but don't want to

11    pester him as well as he is dealing with something a little

12    bit more important right now.

13              We asked the defense for just one more 30-day

14    extension to see if we could get his kids more involved.  They

15    didn't give it to us, but we would like to ask the Court for

16    that extension as well.

17              THE COURT:  Any real objection by defense counsel for

18    another 30 days on this one?

19              MR. HARKINS:  Good morning, Your Honor.  This is

20    Steve Harkins from Greenberg Traurig for Teva and the drug

21    defense group.

22              No.  And I'll just note, that is more information

23    than we were provided on the Friday meet and confer regarding

24    his status.

25              We'll just note, this is a case with no PFS filed, so

 1    truly any PFS, regardless of how deficient, will reset the

 2    deficiency clock for this plaintiff.  But with that said,

 3    we're willing to grant with that additional information for

 4    the 30 days in that case.

 5            THE COURT:  That will be listed next month.

 6            So that leaves Chadwick Wilson.  The defense motion

 7    will be granted.  That case will be dismissed.

 8            All right.  I think I've gone through all my list of

 9    things that you wanted to talk about.

10            Did I miss anything for anybody?

11            MR. HARKINS:  Apologies, Your Honor.  This is Steve

12    Harkins for the joint defense group once more.

13            Just a note.  In the Thorn, Hall, and Dennis matters,

14    we've received indication that they would be voluntarily

15    dismissed prior to today, but as of the start of the call, at

16    least, no dismissals had in fact been filed in those matters

17    that are up for orders to show cause and dismissal today.  In

18    light of that, we would ask that the Court also enter

19    voluntary dismissals in Thorn, Hall and Dennis.

20            MR. BROOKS:  This is Gerald Brooks on behalf of

21    Plaintiffs Thorn, Hall and Dennis.  There is no objection.

22            THE COURT:  All right.  Those matters will be

23    dismissed then.

24            All right.  Mr. Harkins, do you have any other

25    information on any of these other ones you want listed?

1        MR. HARKINS:  No, Your Honor, we have no further

2    updates on the remaining cases.  We would simply ask to move

3    forward the orders to show cause and then relistings in

4    accordance with the rest of our position statement.

5        THE COURT:  All right.  There are nine cases:  Tommy

6    Benton, B-E-N-T-O-N; Annie Pace, P-A-C-E; Michael Shemes,

7    S-H-E-M-E-S; King, K-I-N-G; Mary Richards; Gali, G-A-L-I --

8    that's how it's spelled in this paper -- Callahan; Margaret

9    Tolley, T-O-L-L-E-Y; Katherine Peyton, P-E-Y-T-O-N; and Wayne

10   Grubb, G-R-U-B-B, will be listed for an order to show cause,

11   returnable at the next meeting.

12       MS. SMITH:  This is Ashton Smith for Plaintiff Wayne

13   Grubb.

14       THE COURT:  Yep.

15       MS. SMITH:  That is one where we informed defendants

16   that it would be -- subsequent pharmacy records showed us that

17   it was a losartan-only case, so there would not be a PFS due.

18   And we've agreed to amend the complaint to remove any

19   allegations regarding valsartan.

20       So we would just ask the Court not include that one,

21   given our agreement to amend and that making no fact sheet

22   due.

23       THE COURT:  Mr. Harkins, any position on that?

24       MR. HARKINS:  Your Honor, we have no objection to

25   that as long as plaintiff files an amended short form

1  complaint indicating the claim is losartan only.  But subject

2  to that, there's no objection.  And we don't need that listed

3  on next month's.

4          THE COURT:  Why don't we just keep it listed.  That

5  will give you 30 days to file your amended complaint.  Okay?

6          MS. SMITH:  Okay.  Thank you, Your Honor.

7          THE COURT:  All right.  Then we have 18 more we want

8  to move to a listing, Leona Branch; Vincent Anderson; Richard

9  Vindigni, V-I-N-D-I-G-N-I; Sheldon Walker; Angela Rue, R-U-E;

10  Elie, E-L-I-E, Greene, G-R-E-E-N-E; Michael Robinette; Estate

11  of Christopher Gallagher; Mario Sherber, S-H-E-R-B-E-R;

12  Marjorie Smith as Administrator of the Estate of Erskine

13  Smith; William Davis as Administrator of the Estate of Leila,

14  L-E-I-L-A, Davis; the Estate of Nancy Mastbergen,

15  M-A-S-T-B-E-R-G-E-N; Ernestine Williams; Jeremy Darabaris,

16  D-A-R-A-B-A-R-I-S; Marilyn White; Barbara McCullough; Benita

17  King; and the Estate of Robert Cooper.

18          Any objections to relisting them next month?

19          (No response.)

20          THE COURT:  All right.  They'll be relisted next

21  month.

22          Anything else that we want to talk about today?

23          (No response.)

24          THE COURT:  All right.  Well, I hope to get you all

25  back in Camden one of these days, a beautiful spring in Camden

```
 1   and all that good stuff.

 2           But stay well and stay safe, and we'll hopefully talk

 3   to you soon.

 4           Thank you, everybody.

 5           RESPONSE:  Thank you, Judge.

 6           (Proceedings concluded at 11:00 a.m.)

 7

 8                            -  -  -

 9           I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11

12   /S/ Ann Marie Mitchell, CCR, CRR, RDR, RMR
     Court Reporter/Transcriber
13

14   2nd day of June, 2022
          Date
15

16

17

18

19

20

21

22

23

24

25
```

*United States District Court*

**$**

**$100** [1] - 34:2

**/**

**/S** [1] - 44:12

**0**

**07068** [1] - 1:16
**08101** [1] - 1:7

**1**

**1** [1] - 1:8
**10036** [1] - 2:14
**103** [1] - 1:15
**10:02** [2] - 1:8, 4:3
**11:00** [1] - 44:6
**1473** [1] - 2:10
**15219** [1] - 2:19
**16th** [1] - 40:6
**18** [1] - 43:7
**1838** [2] - 6:9, 7:1
**19** [1] - 36:6
**19-md-02875** [1] - 1:4

**2**

**2013** [1] - 6:4
**2022** [2] - 1:8, 44:14
**2029** [1] - 3:7
**2500** [1] - 2:22
**2800** [1] - 3:3
**2nd** [1] - 44:14

**3**

**30** [3] - 40:18, 41:4, 43:5
**30(b)(6** [1] - 15:10
**30-day** [1] - 40:13
**300** [1] - 3:7
**30305** [1] - 2:23
**316** [1] - 1:18
**32502** [1] - 1:19
**3333** [1] - 2:22
**33950** [1] - 2:4
**36101** [1] - 2:7
**37** [1] - 6:22
**38th** [1] - 2:18

**4**

**40208** [1] - 2:11
**445202** [1] - 3:4
**4th** [2] - 1:7, 2:10

**5**

**50** [1] - 12:21
**56** [2] - 21:10, 21:11

**576-7018** [1] - 1:23
**5:00** [2] - 8:1, 8:6

**6**

**6** [2] - 20:22, 21:14
**60** [1] - 29:4
**600** [2] - 1:18, 3:3
**64** [1] - 5:14
**6th** [2] - 5:16, 6:1

**7**

**781** [1] - 2:7
**7:00** [1] - 7:22

**8**

**856** [1] - 1:23

**9**

**90067** [1] - 3:7
**99** [1] - 2:3

**A**

**a.m** [3] - 1:8, 4:3, 44:6
**above-entitled** [1] - 44:10
**absolutely** [2] - 10:18, 16:17
**abstract** [4] - 18:17, 19:18, 27:11, 28:11
**abused** [1] - 8:4
**accomplish** [1] - 11:24
**accordance** [3] - 12:4, 12:23, 42:4
**according** [1] - 38:25
**acknowledge** [1] - 12:16
**acquired** [2] - 36:18, 37:19
**acquires** [1] - 37:1
**acquisition** [2] - 36:24, 37:5
**Actavis** [2] - 2:24, 2:24
**ACTION** [1] - 1:3
**action** [14] - 11:18, 12:21, 14:2, 14:7, 14:21, 18:15, 21:3, 21:25, 22:3, 22:23, 23:1, 24:15, 26:19, 28:9
**actions** [3] - 14:13, 25:3, 25:4
**activity** [1] - 37:24
**actual** [1] - 35:16
**Adam** [1] - 12:1
**ADAM** [1] - 1:15

**add** [1] - 32:13
**addition** [1] - 25:10
**additional** [6] - 9:2, 16:21, 32:25, 33:19, 37:25, 41:3
**address** [8] - 4:25, 10:14, 11:8, 12:2, 13:20, 13:21, 35:17, 36:9
**addressed** [1] - 12:23, 16:8
**addressing** [3] - 8:12, 9:11, 11:11
**Administrator** [2] - 43:12, 43:13
**admissions** [2] - 15:10, 15:23
**advance** [4] - 8:7, 21:5, 21:6, 24:18
**afoul** [1] - 24:16
**agenda** [5] - 5:3, 7:22, 7:24, 9:12
**agree** [5] - 5:7, 16:21, 22:5, 31:1, 38:16
**agreed** [3] - 37:8, 39:9, 42:18
**agreement** [2] - 16:20, 42:21
**agreements** [1] - 32:9
**ahead** [1] - 36:1
**Aid** [1] - 3:8
**aided** [1] - 1:24
**Alabama** [1] - 2:7
**ALFANO** [1] - 2:17
**allegations** [1] - 42:19
**alleged** [2] - 10:7, 11:14
**alleging** [1] - 10:17
**Alli** [3] - 4:23, 9:9, 10:13
**ALLISON** [1] - 2:13
**allow** [6] - 9:10, 10:15, 18:5, 25:4, 30:15, 39:21
**allowing** [1] - 21:23
**almost** [1] - 10:8
**ALSO** [1] - 3:10
**alternative** [1] - 35:18
**amend** [2] - 42:18, 42:21
**amended** [3] - 31:11, 42:25, 43:5
**American** [1] - 19:20
**AmerisourceBergen** [1] - 3:4
**amount** [1] - 18:2
**Anderson** [1] - 43:8
**Angela** [1] - 43:9
**Angeles** [1] - 3:7
**ann** [1] - 1:22

**Ann** [3] - 4:9, 4:11, 44:12
**Annie** [1] - 42:6
**AnnMarie_Mitchell@ njd.uscourts.gov** [1] - 1:22
**answer** [3] - 26:17, 31:8, 32:13
**answers** [4] - 31:6, 31:14, 31:17, 32:15
**anyway** [4] - 22:9, 22:17, 26:22, 30:4
**apologies** [1] - 41:11
**apologize** [3] - 9:18, 9:19, 25:13
**applicable** [2] - 25:22, 27:7
**application** [3] - 31:3, 34:16, 34:19
**applications** [1] - 27:12
**applied** [1] - 27:15
**applies** [2] - 29:16, 29:18
**apply** [2] - 17:23, 24:21
**appreciate** [1] - 38:5
**approach** [1] - 13:8
**appropriate** [1] - 38:21
**argue** [1] - 15:25
**argument** [4] - 15:11, 16:5, 19:7
**armies** [1] - 33:24
**ARPS** [1] - 2:13
**arrangements** [1] - 33:13
**articles** [1] - 37:7
**Ashton** [1] - 42:12
**ASHTON** [1] - 2:10
**aspect** [1] - 25:10
**assume** [3] - 7:19, 15:12, 29:24
**assumed** [3] - 12:22, 15:16, 36:24
**assuming** [1] - 37:19
**Atlanta** [1] - 2:23
**attempt** [1] - 19:9
**attention** [2] - 5:4, 30:13
**audio** [1] - 9:15
**aware** [1] - 8:21

**B**

**ball** [1] - 30:6
**baloney** [1] - 22:14
**Barbara** [1] - 44:8
**BARNES** [1] - 3:6
**Barnes** [1] - 35:25

**based** [4] - 10:11, 14:25, 15:9, 15:10
**basis** [3] - 8:20, 26:12, 38:2
**Baylen** [1] - 1:18
**beautiful** [1] - 43:25
**became** [1] - 27:17
**become** [1] - 35:16
**becomes** [1] - 35:15
**beginning** [1] - 33:23
**behalf** [12] - 4:17, 8:13, 11:22, 15:8, 30:19, 32:23, 35:25, 39:15, 39:17, 39:23, 40:1, 41:20
**bellwethers** [3] - 25:18, 26:8, 26:10
**benefit** [2] - 8:23, 9:2
**Benita** [1] - 43:16
**Benton** [1] - 42:6
**BENTON** [1] - 42:6
**BERNE** [1] - 3:2
**best** [1] - 26:3
**better** [6] - 4:19, 8:15, 9:6, 9:7, 23:17, 25:14
**Betty** [1] - 39:8
**beyond** [2] - 21:3, 33:15
**bit** [2] - 24:1, 40:12
**blood** [1] - 20:8
**board** [2] - 7:13, 7:19
**BOSICK** [1] - 2:17
**bottom** [1] - 16:19
**bought** [4] - 20:10, 35:9, 35:10
**Box** [1] - 2:7
**Branch** [1] - 43:8
**breach** [5] - 12:15, 14:19, 15:23, 22:24, 24:20
**brief** [7] - 21:14, 35:2, 36:4, 36:7, 36:12, 36:16, 38:13
**briefed** [1] - 24:23
**briefing** [5] - 5:15, 13:4, 17:12, 18:2, 25:7
**briefly** [1] - 18:6
**bring** [8] - 10:1, 13:13, 13:20, 14:17, 15:14, 26:20, 30:12, 32:1
**bringing** [1] - 10:9
**broader** [1] - 24:1
**Brooks** [1] - 41:20
**BROOKS** [2] - 2:6, 41:20
**BROWN** [21] - 2:13, 4:23, 5:8, 9:9, 9:21, 10:13, 10:18, 16:17,

18:21, 20:15, 21:13, 22:7, 23:23, 27:1, 27:23, 28:4, 28:14, 28:20, 29:5, 29:13, 29:21
**Brown** [7] - 4:24, 9:9, 10:13, 16:16, 19:22, 23:18
**Building** [1] - 1:6
**busier** - 7:3
**business** [2] - 7:25, 16:15
**busy** - 7:3
**buy** [4] - 36:23, 36:25, 37:8
**buyer** [1] - 37:3
**buyer's** [1] - 37:4

## C

**California** [1] - 3:7
**Callahan** [1] - 42:8
**Camden** [3] - 1:7, 43:25
**candidly** [1] - 40:8
**cannot** [2] - 19:17, 20:20
**case** [37] - 8:19, 9:23, 12:7, 12:11, 13:16, 14:11, 14:17, 14:22, 15:7, 16:12, 16:14, 16:15, 17:8, 17:22, 18:23, 23:1, 24:10, 24:17, 25:25, 27:2, 28:8, 29:15, 32:2, 32:14, 33:23, 34:3, 36:19, 37:20, 37:21, 38:16, 38:21, 40:25, 41:4, 41:7, 42:17
**CASE** [1] - 1:5
**case-specific** [1] - 25:25
**cases** [26] - 10:9, 13:25, 14:2, 14:3, 14:9, 14:11, 14:13, 14:25, 16:23, 20:6, 23:10, 24:7, 25:20, 25:21, 25:23, 26:12, 26:13, 26:17, 27:3, 27:15, 28:21, 33:6, 39:10, 39:13, 42:2, 42:5
**categories** [1] - 17:5
**causation** [6] - 18:22, 19:11, 19:15, 20:1, 20:5, 30:17
**caused** [1] - 20:5
**causes** [4] - 18:15, 21:3, 22:23, 23:1
**CCR** [1] - 44:12

**Centre** [1] - 2:18
**Century** [1] - 3:7
**cert** [4] - 24:18, 29:7, 29:8, 35:15
**certain** [1] - 22:20
**certainly** [18] - 9:14, 9:16, 12:3, 12:18, 13:7, 13:9, 16:8, 16:21, 18:4, 23:4, 23:5, 23:15, 24:11, 25:19, 26:2, 33:18, 35:12, 35:15
**certifiable** [1] - 17:16
**certification** [6] - 12:17, 13:6, 14:8, 17:12, 21:5, 35:17
**certified** [2] - 24:13, 26:4
**certify** [5] - 18:25, 19:4, 27:4, 36:21, 44:9
**CGMP** [6] - 16:2, 18:12, 20:24, 21:4, 23:3, 27:18
**Chadwick** [3] - 39:12, 39:23, 41:6
**chain** [2] - 15:3, 31:25
**change** [1] - 29:11
**Charlene** [1] - 38:25
**Christopher** [1] - 43:11
**Cincinnati** [1] - 3:4
**circle** [3] - 5:11, 5:19, 6:13
**Circuit** [1] - 17:16
**cite** [1] - 17:8
**cited** [1] - 18:23
**CIVIL** [1] - 1:3
**claim** [14] - 13:14, 14:19, 14:20, 21:11, 21:12, 27:21, 28:10, 31:25, 32:10, 34:24, 35:2, 35:4, 35:13, 43:1
**claims** [11] - 13:21, 15:18, 22:25, 23:20, 30:1, 31:15, 31:21, 31:24, 32:5, 32:8, 33:5
**clarification** [3] - 5:13, 5:21, 35:23
**CLARK** [1] - 2:6
**class** [32] - 12:17, 12:20, 13:6, 14:2, 14:4, 14:7, 14:13, 14:21, 17:12, 19:1, 19:13, 21:5, 24:13, 24:15, 24:18, 25:2, 25:4, 26:4, 26:5, 26:18, 27:4, 29:7,

29:8, 30:16, 35:15, 35:17, 36:8, 36:22, 37:16, 37:24
**classes** [4] - 13:7, 17:15, 19:4, 25:13
**clean** [1] - 38:10
**cleaned** [2] - 15:15, 38:8
**clear** [3] - 25:19, 36:6, 38:7
**clearly** [1] - 27:19
**CLEM** [1] - 2:18
**Clerk** [1] - 3:11
**clock** [1] - 41:2
**close** [1] - 7:25
**closed** [1] - 37:11
**closing** [1] - 37:2
**Cohen** [1] - 1:6
**cold** [1] - 5:18
**Colorado** [1] - 19:6
**coming** [2] - 11:1, 13:22, 29:14
**Commencing** [1] - 1:8
**compel** [1] - 38:15
**complaint** [2] - 42:18, 43:1, 43:5
**complaints** [3] - 12:20, 12:21, 13:10
**complete** [7] - 11:11, 11:18, 18:7, 21:2, 21:25, 28:9, 28:10
**completed** [4] - 5:15, 5:16, 6:20, 40:4
**complex** [1] - 16:20
**complex** [1] - 33:7
**complexities** [1] - 33:14
**compliance** [3] - 11:6, 11:13, 21:7
**complicate** [1] - 33:7
**complicated** [2] - 9:22, 34:20
**component** [1] - 23:4
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concept** [2] - 18:7, 18:8
**concern** [5] - 20:21, 24:8, 24:15, 25:12, 29:14
**concerned** [2] - 22:15, 26:23, 27:17
**concerning** [2] - 19:19, 24:6
**concerns** [1] - 36:10
**concluded** [2] - 19:25, 44:6
**conclusion** [1] - 9:4
**conducive** [1] - 19:12

**conduct** [11] - 11:1, 11:5, 12:4, 18:12, 18:19, 19:2, 19:10, 19:25, 21:21, 22:3, 27:18
**conduct-related** [1] - 19:2
**conduct-type** [2] - 18:12, 27:18
**conducted** [1] - 8:14
**confer** [5] - 8:18, 10:20, 11:2, 32:24, 40:23
**CONFERENCE** [1] - 1:5
**conference** [6] - 7:23, 8:7, 8:16, 9:15, 12:8, 39:18
**confidentiality** [1] - 6:16
**confines** [6] - 27:8, 28:7, 28:8, 28:9, 28:24, 29:6
**confirmed** [1] - 11:2
**conflicting** [1] - 27:12
**consent** [1] - 36:8
**consistent** [1] - 24:2
**consumer** [11] - 14:24, 17:21, 17:24, 22:25, 23:21, 24:20, 25:2, 25:4, 26:13, 26:15, 27:10
**contact** [1] - 5:10
**contaminated** [1] - 20:10
**contemplate** [5] - 11:24, 23:12, 26:11, 26:22, 31:23
**contemplated** [4] - 12:14, 12:19, 20:23, 32:3
**contemplates** [1] - 28:5
**contemplating** [4] - 15:18, 22:21, 22:23, 37:24
**context** [6] - 13:7, 15:19, 19:3, 24:15, 25:17, 26:8
**continue** [5] - 14:4, 14:6, 28:21, 34:11, 38:1
**Continued** [2] - 2:1, 3:1
**continuing** [1] - 37:23
**contrary** [2] - 17:7, 25:11
**control** [1] - 20:8
**conversations** [1] - 10:11

**Cooper** [2] - 1:7, 43:17
**Corporation** [1] - 3:8
**correct** [8] - 5:5, 5:6, 5:8, 5:20, 5:24, 5:25, 6:6, 44:9
**costs** [1] - 34:2
**counsel** [8] - 12:5, 31:6, 34:7, 39:8, 39:9, 39:19, 39:23, 40:17
**counsel's** [1] - 38:25
**counter** [1] - 26:20
**course** [3] - 16:24, 17:21, 18:21
**COURT** [4] - 1:1, 4:9, 7:14, 7:16
**Court** [3] - 1:22, 35:23, 44:12
**court** [4] - 4:8, 18:23, 20:19, 22:1
**Court's** [4] - 9:15, 29:11, 30:13, 37:22
**Courthouse** [1] - 1:6
**Courtroom** [1] - 3:12
**courts** [2] - 18:16, 18:25
**crank** [1] - 33:15
**creating** [2] - 19:10, 22:2
**cross** [6] - 13:14, 31:15, 31:21, 31:25, 32:8, 32:10
**cross-claim** [3] - 13:14, 31:25, 32:10
**cross-claims** [3] - 31:15, 31:21, 32:8
**CRR** [1] - 44:12
**culled** [1] - 33:12
**cure** [1] - 25:7
**curious** [1] - 9:20
**customer** [1] - 37:1
**CVS** [13] - 3:8, 35:10, 35:25, 36:12, 36:18, 36:19, 36:23, 37:7, 37:10, 37:11, 37:12, 37:15, 38:1
**CVS's** [1] - 37:22

## D

**damage** [1] - 19:18
**damages** [4] - 18:22, 19:11, 19:15, 20:6
**Darabaris** [1] - 43:15
**DARABARIS** [1] - 43:16
**Date** [1] - 44:14
**dates** [1] - 29:12
**DAVIS** [1] - 2:21

**Davis** [2] - 43:13, 43:14
**days** [8] - 7:25, 8:6, 29:4, 34:19, 40:18, 41:4, 43:5, 43:25
**de** [1] - 6:16
**de-designation** [1] - 6:16
**deadline** [1] - 30:12
**deadlines** [2] - 30:12, 31:22
**deal** [2] - 12:18, 12:21
**dealing** [1] - 40:11
**Deborah** [1] - 39:5
**decide** [2] - 13:7, 18:16
**decided** [5] - 13:6, 19:17, 26:14, 31:11, 31:12
**decision** [5] - 5:4, 5:12, 6:11, 7:7, 19:6
**decisions** [1] - 27:5
**declaration** [1] - 36:22
**defend** [2] - 16:14, 37:23
**defendant** [3] - 29:6, 32:1, 38:2
**Defendant** [1] - 2:19
**defendants** [21] - 11:6, 11:7, 11:17, 13:14, 18:12, 18:13, 19:13, 20:3, 21:24, 22:4, 23:11, 23:16, 23:19, 30:19, 31:16, 32:21, 32:23, 33:14, 34:17, 35:3, 42:15
**Defendants** [4] - 2:15, 2:23, 3:4, 3:8
**defendants'** [3] - 10:7, 12:5, 36:10
**defense** [21] - 4:22, 5:7, 8:13, 15:13, 15:16, 15:20, 15:25, 16:12, 17:15, 29:25, 30:10, 31:6, 31:25, 34:2, 38:25, 39:8, 40:13, 40:17, 40:21, 41:6, 41:12
**defenses** [2] - 20:7, 31:15
**defer** [1] - 8:25
**deficiencies** [3] - 24:25, 25:8, 38:24
**deficiency** [1] - 41:2
**deficient** [1] - 41:1
**define** [1] - 30:2
**defining** [1] - 11:16
**denied** [1] - 36:19
**Dennis** [4] - 39:9, 41:13, 41:19, 41:21

**dependent** [1] - 26:18
**deposition** [1] - 37:9
**depositions** [1] - 33:17
**Deputy** [1] - 3:12
**designation** [1] - 6:16
**designations** [1] - 6:17
**determine** [1] - 19:13
**determined** [2] - 21:6, 28:25
**different** [4] - 18:2, 37:12, 37:14, 38:18
**direct** [1] - 19:5
**disagree** [1] - 5:17
**disagreement** [3] - 18:7, 18:9, 28:23
**disagreements** [1] - 8:20
**disappointing** [1] - 36:5
**discern** [1] - 5:3
**discipline** [1] - 23:14
**disclosures** [1] - 30:13
**disconnect** [1] - 27:16
**discovery** [15] - 10:23, 10:25, 11:4, 16:21, 17:3, 18:7, 23:25, 24:4, 25:17, 25:23, 33:2, 33:4, 33:12, 33:15, 34:5
**discrete** [2] - 21:7, 21:23
**discussed** [1] - 12:8
**discussing** [1] - 38:1
**discussion** [3] - 10:22, 20:17, 20:25
**discussions** [2] - 32:25, 34:11
**dismiss** [14] - 12:23, 29:25, 30:1, 30:2, 31:11, 34:24, 35:3, 35:13, 35:18, 35:21, 36:8, 36:14, 38:16, 39:9
**dismissal** [2] - 38:8, 41:17
**dismissals** [2] - 41:16, 41:19
**dismissed** [9] - 35:3, 35:16, 39:1, 39:2, 39:4, 39:11, 41:7, 41:15, 41:23
**dispositive** [16] - 10:24, 12:6, 16:23, 17:4, 17:25, 18:8, 21:2, 21:15, 24:9, 25:25, 27:9, 27:10, 27:14, 31:13, 31:23,

32:7
**dispute** [1] - 15:14
**disputing** [1] - 35:4
**District** [1] - 19:6
**DISTRICT** [3] - 1:1, 1:1, 1:16
**divert** [1] - 33:5
**Document** [1] - 7:1
**documents** [3] - 6:4, 32:17, 33:16
**dollars** [1] - 14:14
**done** [5] - 20:20, 23:10, 24:17, 34:4, 36:20
**doozy** [1] - 36:15
**down** [4] - 6:25, 15:3, 29:7, 38:5
**drafting** [1] - 6:19
**drag** [1] - 38:1
**drop** [1] - 7:4
**drug** [1] - 40:20
**drugs** [2] - 34:13, 35:9
**due** [2] - 42:17, 42:22
**during** [1] - 40:5
**dying** [1] - 40:8

**E**

**easier** [1] - 9:13
**easily** [1] - 38:8
**East** [1] - 3:7
**easy** [3] - 20:10, 26:17, 38:10
**ECF** [3] - 6:4, 6:8, 7:1
**economic** [3] - 13:24, 14:3, 14:11
**effort** [2] - 18:11, 18:25
**efforts** [2] - 19:4, 33:6
**Eisenhower** [1] - 1:15
**either** [4] - 12:12, 14:6, 15:20, 16:13
**elects** [1] - 37:4
**elements** [1] - 18:14
**Elie** [1] - 43:10
**ELIE** [1] - 43:10
**email** [3] - 6:10, 6:14, 7:7
**employee** [1] - 36:23
**encompass** [1] - 31:23
**encourage** [1] - 38:4
**end** [1] - 20:4
**endeavored** [1] - 37:20
**ended** [1] - 36:15
**energies** [2] - 37:22, 37:23
**engage** [3] - 26:2, 33:4, 36:13

**enormous** [4] - 17:13, 17:19, 18:1, 24:15
**enter** [2] - 26:5, 41:18
**entire** [4] - 22:3, 23:19, 23:21, 31:20
**entitled** [2] - 34:12, 44:10
**entry** [1] - 29:8
**envisions** [1] - 17:20
**Eric** [2] - 39:12, 40:1
**Erick** [1] - 39:24
**Ernestine** [1] - 43:15
**Erskine** [1] - 43:12
**ESQUIRE** [12] - 1:15, 1:18, 2:3, 2:6, 2:10, 2:13, 2:18, 2:21, 2:22, 3:3, 3:6, 3:11
**essentially** [5] - 20:19, 23:24, 29:3, 35:1, 36:25
**Estate** [5] - 43:10, 43:12, 43:13, 43:14, 43:17
**estimated** [1] - 34:1
**event** [1] - 37:3
**eventually** [1] - 34:2
**evidence** [2] - 36:11, 36:20
**exact** [1] - 27:21
**exactly** [3] - 5:22, 31:15, 32:4
**example** [5] - 12:15, 13:5, 13:24, 22:24, 25:1
**examples** [1] - 24:1
**exceed** [1] - 34:2
**exchanged** [1] - 21:16
**expand** [1] - 18:5
**expert** [24] - 13:12, 13:15, 13:20, 15:6, 15:12, 15:22, 16:2, 16:4, 16:6, 21:15, 21:18, 22:12, 22:13, 23:14, 23:25, 24:3, 25:16, 28:1, 30:13, 30:23, 31:22, 32:2, 37:25
**experts** [18] - 12:10, 13:19, 15:14, 16:8, 21:3, 21:4, 21:17, 21:22, 21:24, 22:10, 22:11, 23:8, 23:11, 23:12, 24:1, 30:15, 30:16, 30:17
**explain** [4] - 8:15, 13:22, 17:8, 31:8
**explanation** [1] - 18:24
**explicitly** [1] - 21:11
**express** [5] - 12:15,

14:19, 15:23, 22:24, 23:20
**expresses** [1] - 19:7
**extension** [4] - 40:4, 40:5, 40:14, 40:16
**extent** [4] - 24:14, 29:7, 29:25, 31:24
**extraordinarily** [1] - 17:11

**F**

**face** [2] - 8:22
**fact** [7] - 12:17, 23:3, 35:11, 37:13, 38:23, 41:16, 42:21
**facts** [7] - 13:21, 14:25, 15:9, 15:23, 15:24, 22:20, 35:9
**fair** [1] - 19:12
**fall** [1] - 17:5
**far** [3] - 12:14, 16:3, 28:23
**FARR** [1] - 2:2
**feelings** [1] - 13:2
**felt** [1] - 13:9
**figure** [1] - 27:5
**figured** [2] - 31:9, 31:19
**figuring** [2] - 32:17, 32:19
**FILE** [1] - 36:23
**file** [15] - 12:6, 12:24, 13:1, 15:13, 15:17, 23:13, 30:3, 31:8, 32:13, 34:18, 34:20, 36:23, 36:25, 37:8, 43:5
**filed** [8] - 13:18, 14:23, 24:8, 31:6, 32:15, 36:4, 40:25, 41:16
**files** [1] - 42:25
**filing** [7] - 12:19, 13:4, 13:9, 15:18, 16:9, 26:12, 38:12
**fill** [2] - 37:1, 40:9
**filling** [1] - 37:4
**fills** [2] - 37:14, 37:15
**finally** [1] - 17:17
**fine** [4] - 8:3, 9:1, 36:13, 39:22
**FIRM** [1] - 2:2
**first** [3] - 7:21, 9:25, 12:3
**five** [1] - 10:6
**fix** [1] - 28:13
**flesh** [1] - 31:21
**FLOM** [1] - 2:13
**Floor** [1] - 2:18
**Florida** [2] - 1:19, 2:4

**focus** [3] - 14:2, 15:2, 23:3
**folks** [3] - 4:24, 14:1, 34:21
**follow** [3] - 8:25, 12:24, 12:25
**following** [1] - 40:10
**Footnote** [1] - 36:6
**foregoing** [1] - 44:9
**foresee** [1] - 14:16
**forget** [1] - 14:13
**form** [2] - 37:25, 42:25
**forth** [2] - 8:23, 20:23
**forward** [8] - 8:20, 13:3, 17:1, 26:6, 31:13, 37:5, 38:7, 42:3
**Four** [1] - 2:14
**frame** [1] - 16:10
**frankly** [9] - 10:7, 12:5, 12:21, 14:1, 17:13, 21:8, 31:9, 37:22, 38:15
**fraud** [2] - 23:21, 26:13
**FREEMAN** [1] - 1:14
**Friday** [5] - 10:21, 20:25, 23:12, 39:19, 40:23
**front** [3] - 6:5, 17:14, 30:7
**full** [9] - 9:17, 22:13, 22:23, 23:1, 24:3, 32:4, 33:2, 33:4, 34:5
**funky** [1] - 35:11
**furthermore** [1] - 22:10

**G**

**Gali** [1] - 42:7
**GALI** [1] - 42:7
**Gallagher** [1] - 43:11
**game** [1] - 34:4
**geez** [1] - 28:18
**GEOPPINGER** [2] - 3:3, 5:24
**Geoppinger** [1] - 5:25
**George** [1] - 39:16
**GEORGE** [1] - 2:3
**Georgia** [1] - 2:23
**Gerald** [1] - 41:20
**GERALD** [1] - 2:6
**given** [8] - 17:11, 17:13, 24:7, 26:4, 32:9, 33:19, 42:21
**GMP** [5] - 11:7, 11:13, 21:7, 21:21, 24:1
**going-forward** [1] -

8:20
**Gorda** [1] - 2:4
**GORDON** [1] - 2:17
**grant** [1] - 41:3
**granted** [1] - 41:7
**GREENBERG** [1] - 2:21
**Greenberg** [1] - 40:20
**Greene** [1] - 43:10
**GREENE** [1] - 43:10
**ground** [1] - 7:20
**GROUP** [2] - 2:6, 2:9
**group** [3] - 8:12, 40:21, 41:12
**groupings** [5] - 12:25, 24:23, 24:25, 25:7, 25:9
**Grubb** [2] - 42:10, 42:13
**GRUBB** [1] - 42:10
**guess** [3] - 21:13, 29:13, 32:19
**guidance** [1] - 38:6

**H**

**Hall** [4] - 39:8, 41:13, 41:19, 41:21
**hamstring** [1] - 23:16
**hand** [1] - 34:5
**handle** [1] - 35:8
**happy** [2] - 9:24, 20:16
**hard** [2] - 38:17, 38:20
**Harkins** [4] - 40:20, 41:12, 41:24, 42:23
**HARKINS** [5] - 2:22, 40:19, 41:11, 42:1, 42:24
**Harris** [1] - 39:5
**head** [2] - 6:12, 36:3
**heading** [1] - 28:16
**Healthcare** [1] - 2:5
**hear** [3] - 20:1, 25:19, 26:6
**heard** [2] - 24:22, 40:5
**heartburn** [2] - 21:8, 27:2
**heck** [1] - 28:18
**held** [1] - 4:1
**hello** [1] - 12:1
**help** [2] - 8:23, 40:9
**helpful** [1] - 10:19
**helps** [1] - 13:22
**hi** [2] - 4:9, 4:11
**hide** [1] - 30:6
**history** [2] - 37:1, 37:2
**hitting** [1] - 5:18
**hold** [2] - 28:19, 29:8
**holding** [1] - 32:5

**Honor** [50] - 4:18, 4:23, 5:6, 5:8, 5:20, 5:24, 6:15, 7:12, 7:14, 7:16, 8:10, 8:17, 9:9, 9:10, 10:13, 11:3, 12:8, 13:2, 17:4, 17:10, 17:14, 17:17, 18:5, 18:10, 18:21, 18:24, 19:20, 20:15, 23:23, 24:9, 24:11, 24:17, 24:19, 24:24, 28:20, 29:5, 29:13, 29:24, 30:9, 31:20, 32:22, 35:22, 36:2, 36:25, 39:16, 40:19, 41:11, 42:1, 42:24, 43:6
**HONORABLE** [1] - 1:9
**Honorable** [2] - 3:11, 4:1
**hope** [5] - 9:6, 11:24, 13:22, 28:4, 43:24
**hopefully** [1] - 44:2
**hospital** [1] - 40:6
**Housing** [1] - 19:21
**Huahai** [1] - 2:16

**I**

**idea** [1] - 28:2
**identified** [1] - 24:7
**identify** [3] - 27:6, 27:20, 29:17
**identifying** [4] - 28:21, 28:22, 29:22
**ignores** [1] - 18:14
**immediately** [1] - 7:23
**imminently** [1] - 33:21
**impacted** [1] - 21:16
**impediment** [1] - 35:17
**implicate** [2] - 15:4, 21:3
**implicated** [1] - 27:22
**implied** [1] - 15:4
**important** [3] - 7:5, 31:13, 40:12
**impossibility** [1] - 27:11
**impossible** [1] - 24:19
**Inc** [4] - 2:19, 2:24, 2:24, 3:8
**include** [2] - 23:11, 42:20
**included** [1] - 25:3
**including** [1] - 36:22
**incoherent** [1] - 40:8
**inconsistent** [2] - 21:9, 21:10
**indemnity** [1] - 32:9

**indicating** [2] - 37:7, 43:1
**indication** [1] - 41:14
**indispensable** [1] - 19:15
**individual** [7] - 14:14, 14:22, 17:22, 17:24, 26:19, 39:19
**indulge** [1] - 9:13
**Industries** [1] - 2:23
**inefficiencies** [2] - 17:19, 18:1
**inefficient** [3] - 17:18, 18:3, 18:4
**information** [6] - 33:9, 34:13, 37:21, 40:22, 41:3, 41:25
**informed** [1] - 42:15
**INJURY** [1] - 2:6
**injury** [6] - 25:17, 26:8, 26:10, 26:12, 26:13, 27:15
**instead** [1] - 37:4
**instructive** [1] - 18:24
**integral** [1] - 19:15
**intend** [1] - 25:20
**intended** [2] - 15:17, 35:6
**intent** [1] - 23:7
**intentional** [1] - 10:9
**interacted** [1] - 37:10
**intervention** [1] - 24:16
**invited** [1] - 23:11
**involved** [3] - 29:23, 34:9, 40:14
**irbesartan** [4] - 32:16, 33:3, 33:10, 34:8
**isolate** [3] - 17:6, 19:9, 19:25
**isolated** [3] - 20:13, 23:6
**issue** [4] - 4:25, 9:23, 9:25, 10:14, 11:11, 11:12, 13:21, 19:2, 19:10, 19:17, 20:11, 20:13, 21:13, 21:23, 24:5, 24:12, 26:24, 29:15, 30:8, 31:5, 32:23, 35:15
**issues** [34] - 4:25, 8:11, 8:12, 8:19, 8:21, 9:11, 9:22, 11:1, 11:5, 11:6, 11:13, 12:11, 12:12, 12:17, 13:13, 18:12, 18:18, 18:19, 19:1, 19:4, 19:10, 20:1, 21:1, 21:7, 21:16, 21:19, 23:2, 23:3,

24:20, 27:17, 29:8, 33:17
**items** [1] - 7:25

**J**

**James** [1] - 39:3
**Jeff** [1] - 5:25
**JEFFREY** [1] - 3:3
**Jeremy** [1] - 43:15
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:7, 1:16
**Jimmie** [1] - 39:8
**joint** [2] - 30:10, 41:12
**JR** [1] - 2:6
**Judge** [27] - 4:6, 4:9, 5:10, 6:23, 7:4, 7:9, 7:11, 10:18, 12:1, 16:17, 17:8, 20:22, 21:8, 21:13, 22:22, 24:5, 25:14, 25:21, 27:1, 27:13, 28:4, 28:14, 31:4, 31:9, 34:15, 35:1, 44:5
**JUDGE** [1] - 1:10
**Judge's** [1] - 30:11
**judgment** [17] - 10:2, 11:23, 12:13, 14:16, 14:20, 15:7, 18:11, 20:3, 20:14, 22:12, 23:19, 26:5, 26:21, 27:20, 27:21, 29:19, 29:20
**judgments** [1] - 22:19
**Judicial** [1] - 3:11
**jump** [3] - 9:10, 15:1, 30:9
**June** [3] - 1:8, 5:16, 44:14
**jurisdiction** [1] - 27:22

**K**

**Katherine** [1] - 42:9
**KATZ** [1] - 1:14
**keep** [6] - 20:12, 29:14, 36:18, 37:19, 38:2, 43:4
**Kentucky** [1] - 2:11
**kick** [1] - 38:5
**kids** [1] - 40:14
**kids'** [1] - 40:9
**kind** [4] - 14:16, 14:17, 26:20, 34:9
**King** [2] - 42:7, 43:17
**KING** [1] - 42:7
**knowable** [1] - 18:13
**knowing** [1] - 24:21
**knows** [5] - 7:20, 17:14, 19:1, 24:11, 32:10

**Kohn** [5] - 18:22, 19:5, 19:20, 20:19, 22:1
**KRISTEN** [1] - 3:6
**Kristen** [1] - 35:24
**Kugler** [5] - 3:11, 5:10, 6:23, 7:5, 7:11
**KUGLER** [2] - 1:9, 4:2

**L**

**laid** [1] - 12:10
**land** [2] - 32:4, 32:9
**landscape** [2] - 29:10, 29:12
**large** [1] - 23:3
**larry** [1] - 3:12
**Larsen** [1] - 39:3
**last** [5] - 8:18, 11:3, 12:8, 20:25, 40:4
**late** [1] - 25:14
**lately** [1] - 23:4
**LAW** [3] - 2:2, 2:6, 2:9
**Law** [1] - 3:11
**law** [18] - 9:23, 17:7, 17:16, 17:23, 21:6, 21:9, 24:17, 24:21, 25:11, 25:22, 26:14, 26:15, 27:7, 28:6, 28:8, 29:15, 29:16, 29:18
**laws** [2] - 18:3, 28:22
**lawsuit** [1] - 26:21
**lawyer** [1] - 38:11
**lawyers** [2] - 30:6, 33:24
**lay** [2] - 32:4, 32:8
**lead** [2] - 17:19, 18:1
**least** [6] - 13:1, 25:3, 25:20, 29:9, 32:17, 41:16
**leave** [3] - 34:18, 35:14, 35:20
**leaves** [2] - 39:12, 41:6
**legal** [2] - 24:25, 35:12
**Leila** [1] - 43:13
**LEILA** [1] - 43:14
**Leona** [1] - 43:8
**less** [1] - 28:23
**letter** [16] - 5:3, 10:3, 10:6, 10:14, 11:3, 11:14, 12:15, 18:23, 20:2, 20:16, 20:22, 21:1, 23:2, 27:14, 36:4, 38:25
**LEVIN** [1] - 1:17
**Levin** [1] - 39:25
**liabilities** [3] - 35:11, 36:24, 37:19
**liability** [22] - 10:23,

10:24, 11:12, 11:16, 12:10, 13:12, 15:14, 17:7, 18:16, 19:2, 19:10, 19:16, 19:17, 22:2, 22:3, 23:11, 26:15, 28:10, 30:18, 31:22
**LIABILITY** [1] - 1:4
**liability-creating** [2] - 19:10, 22:2
**liable** [2] - 11:17, 19:13
**light** [1] - 41:18
**likely** [1] - 14:19
**likewise** [1] - 29:25
**limit** [1] - 23:16
**limited** [8] - 10:25, 11:1, 11:4, 11:10, 18:9, 23:25, 25:11
**list** [3] - 20:23, 21:1, 41:8
**listed** [7] - 12:14, 23:3, 41:5, 41:25, 42:10, 43:2, 43:4
**listen** [1] - 27:3
**listing** [2] - 23:2, 43:8
**LITIGATION** [1] - 1:4
**litigation** [2] - 14:6, 23:4
**LLC** [3] - 1:14, 2:15, 2:24
**LLP** [5] - 2:13, 2:17, 2:21, 3:2, 3:6
**Lockard** [2] - 30:10, 32:22
**LOCKARD** [5] - 2:21, 30:9, 31:4, 32:22, 34:15
**logistically** [1] - 22:16
**look** [4] - 20:22, 22:5, 38:17, 38:20
**looked** [1] - 35:5
**looking** [2] - 23:1, 27:17, 29:1
**looks** [1] - 29:10
**LORETTA** [1] - 3:11
**Los** [1] - 3:7
**losartan** [6] - 32:16, 33:3, 33:10, 34:8, 42:17, 43:1
**losartan-only** [1] - 42:17
**loss** [5] - 13:24, 14:3, 14:11, 20:5, 31:7
**loud** [1] - 25:19
**Louisville** [1] - 2:11
**Ltd** [2] - 2:16, 2:23

**M**

**machine** [1] - 33:16
**MacStravic** [1] - 3:12
**MADELINE** [1] - 1:18
**Madeline** [1] - 39:25
**MANAGEMENT** [1] - 1:5
**management** [1] - 8:19
**manufacturers** [1] - 15:2
**manufacturing** [1] - 20:4
**Margaret** [1] - 42:8
**Marie** [4] - 1:22, 4:9, 4:11, 44:12
**Marilyn** [1] - 43:16
**Mario** [1] - 43:11
**Marion** [1] - 39:9
**Marjorie** [1] - 43:12
**Mary** [1] - 42:7
**Mastbergen** [1] - 43:14
**MASTBERGEN** [1] - 43:15
**Master** [1] - 5:14
**MASTER** [14] - 1:11, 4:2, 4:4, 4:7, 4:11, 4:21, 5:2, 5:7, 5:9, 5:22, 6:2, 6:7, 6:18, 6:25
**master** [3] - 12:20, 13:10
**materials** [1] - 6:3
**matter** [5] - 18:7, 33:11, 36:17, 39:1, 44:10
**matters** [6] - 5:4, 5:11, 39:3, 41:13, 41:16, 41:22
**MAZIE** [1] - 1:14
**McCullough** [1] - 43:16
**MEAGHER** [1] - 2:13
**mean** [8] - 9:6, 14:4, 16:20, 22:20, 26:13, 28:21, 29:15, 32:8
**meant** [1] - 10:23
**meat** [1] - 36:17
**mechanical** [1] - 1:24
**medical** [4] - 14:9, 36:7, 36:21, 37:23
**medication** [1] - 40:7
**meet** [5] - 8:18, 10:20, 11:2, 32:24, 40:23
**meeting** [1] - 42:11
**members** [1] - 19:14
**Memorial** [1] - 10:21
**met** [1] - 16:1

**methodology** [1] - 8:25
**Michael** [2] - 42:6, 43:10
**might** [5] - 8:23, 9:1, 9:22, 15:25, 16:5
**million** [1] - 34:2
**millions** [1] - 14:14
**Mills** [1] - 39:1
**mind** [1] - 15:1
**mine** [1] - 16:15
**minimum** [1] - 37:18
**minute** [3] - 14:13, 19:22, 19:23
**misconduct** [7] - 10:7, 10:10, 10:16, 11:15, 11:20, 23:5, 23:6
**misinterpreted** [1] - 20:16
**miss** [1] - 41:10
**missing** [1] - 4:15
**mistake** [2] - 38:11, 38:13
**Mitchell** [6] - 1:6, 1:22, 4:9, 7:13, 7:20, 44:12
**MITCHELL** [1] - 1:17
**modification** [1] - 5:14
**moment** [1] - 17:8
**Monday** [2] - 8:1, 8:6
**money** [2] - 14:5, 14:15
**monitoring** [4] - 14:9, 36:8, 36:22, 37:24
**Montgomery** [1] - 2:7
**month** [6] - 39:6, 39:7, 40:4, 41:5, 43:18, 43:21
**month's** [1] - 43:3
**months** [2] - 12:5
**MOORE** [1] - 2:9
**morning** [12] - 4:4, 4:6, 4:7, 4:23, 5:1, 7:11, 7:12, 8:10, 24:22, 35:22, 35:24, 40:19
**most** [1] - 20:18
**motion** [20] - 5:13, 6:2, 6:8, 6:16, 6:22, 11:4, 14:24, 15:5, 15:7, 15:13, 17:25, 21:2, 24:9, 26:20, 27:9, 28:23, 30:1, 36:21, 41:6
**motions** [48] - 10:2, 10:7, 10:11, 10:24, 11:1, 11:22, 11:23, 12:6, 12:14, 12:17, 12:19, 12:20, 12:23, 12:24, 13:1, 13:5,

13:7, 13:9, 13:13, 13:18, 14:2, 14:8, 14:12, 14:16, 14:18, 14:23, 15:17, 15:20, 16:9, 16:23, 17:4, 18:8, 20:14, 20:23, 21:15, 24:4, 24:8, 24:14, 25:25, 27:10, 27:20, 28:7, 30:3, 31:10, 31:11, 31:13, 31:23, 32:7
**move** [26] - 4:20, 12:7, 12:12, 12:15, 13:3, 14:19, 14:25, 16:23, 17:7, 18:11, 20:5, 21:2, 21:6, 21:11, 22:11, 23:1, 23:6, 23:19, 24:20, 26:6, 29:3, 29:18, 29:19, 29:25, 42:2, 43:8
**moving** [6] - 17:21, 22:23, 29:7, 30:11, 31:12, 33:25
**MR** [24] - 4:18, 5:6, 5:20, 5:23, 5:24, 6:6, 6:15, 6:21, 8:10, 8:17, 12:1, 14:18, 15:9, 22:22, 29:24, 31:9, 35:1, 38:22, 39:16, 40:19, 41:11, 41:20, 42:1, 42:24
**MS** [32] - 4:23, 5:8, 9:9, 9:21, 10:13, 10:18, 16:17, 18:21, 20:15, 21:13, 22:7, 23:23, 27:1, 27:23, 28:4, 28:14, 28:20, 29:5, 29:13, 29:21, 30:9, 31:4, 32:22, 34:15, 35:22, 35:24, 36:2, 39:25, 40:3, 42:12, 42:15, 43:6
**MSJs** [1] - 37:25
**Mylan** [1] - 2:19

**N**

**Najafi's** [1] - 6:3
**name** [1] - 26:21
**Nancy** [1] - 43:14
**nature** [1] - 24:6
**NE** [1] - 2:22
**necessarily** [2] - 23:25, 33:13
**necessary** [8] - 16:9, 16:11, 25:23, 27:8, 30:16, 30:20, 33:5, 35:21
**need** [18] - 7:19, 8:5, 15:6, 15:12, 15:22, 16:9, 16:14, 27:5,

31:1, 31:7, 32:14, 32:19, 33:2, 33:10, 34:5, 34:7, 43:2
**needed** [4] - 13:17, 16:23, 24:4, 35:18
**needs** [4] - 23:10, 31:2, 33:20, 40:9
**Nesbit** [1] - 2:3
**never** [2] - 11:19, 37:10
**NEW** [1] - 1:1
**New** [4] - 1:7, 1:16, 2:14
**news** [2] - 16:19, 37:7
**next** [10] - 25:14, 30:8, 31:5, 39:6, 39:7, 41:5, 42:11, 43:3, 43:18, 43:20
**night** [2] - 7:22, 11:3
**nine** [1] - 42:5
**note** [3] - 40:22, 40:25, 41:13
**nothing** [1] - 26:15
**noting** [1] - 37:13
**NUMBER** [1] - 1:3
**number** [3] - 4:24, 17:6, 17:10
**Number** [3] - 6:4, 6:9, 7:1
**numbers** [1] - 34:8

## O

**objection** [7] - 11:9, 17:1, 19:8, 40:17, 41:21, 42:24, 43:2
**objections** [3] - 17:4, 17:13, 43:18
**obsessive** [1] - 14:2
**obviously** [6] - 8:24, 15:3, 15:19, 23:13, 28:13, 35:17
**offered** [2] - 12:25, 36:20
**Official** [1] - 1:22
**Ohio** [1] - 3:4
**once** [2] - 29:6, 41:12
**one** [25] - 4:25, 6:21, 9:11, 9:21, 10:19, 13:15, 14:10, 14:12, 14:18, 17:2, 17:6, 20:13, 20:23, 24:16, 30:12, 32:5, 34:6, 35:8, 40:13, 40:18, 42:15, 42:20, 43:25
**One** [1] - 2:18
**one-way** [1] - 24:16
**ones** [1] - 41:25
**open** [1] - 13:8
**operate** [1] - 37:10

**operated** [1] - 37:15
**operations** [1] - 37:6
**opine** [1] - 21:18
**opportunity** [3] - 8:22, 21:24, 27:24
**opposed** [1] - 11:16
**opposing** [1] - 36:21
**opposition** [1] - 34:19
**Order** [1] - 5:14
**order** [3] - 12:7, 39:1, 42:10
**orders** [5] - 38:24, 39:4, 39:10, 41:17, 42:3
**original** [1] - 8:5
**ought** [1] - 38:17
**outright** [1] - 35:13
**outset** [1] - 4:18
**own** [5] - 14:7, 21:24, 22:13, 26:21, 37:8
**owned** [1] - 37:15
**Oxford** [1] - 2:18

## P

**P.A** [1] - 1:17
**P.C** [1] - 2:6
**p.m** [3] - 7:22, 8:1, 8:6
**Pace** [1] - 42:6
**PACE** [1] - 42:6
**page** [2] - 20:22, 21:14
**pages** [1] - 34:19
**paid** [1] - 14:14
**Papantonio** [1] - 40:1
**PAPANTONIO** [1] - 1:17
**paper** [2] - 17:14, 42:8
**papers** [2] - 9:4, 28:18
**Park** [1] - 3:7
**Parkway** [1] - 1:15
**part** [5] - 4:14, 11:8, 11:9, 14:7, 21:12
**partial** [5] - 10:1, 11:23, 12:12, 14:20, 22:20
**particular** [9] - 11:17, 17:1, 21:19, 24:10, 27:22, 28:8, 30:1, 38:19
**particularized** [1] - 19:18
**particularly** [1] - 37:24
**parties** [7] - 8:24, 16:21, 18:4, 23:13, 31:18, 31:24, 33:1
**partly** [1] - 9:12
**parts** [1] - 19:16
**party** [9] - 13:18, 13:24, 14:3, 14:11, 14:22, 15:8, 20:6,

26:16, 32:5
**path** [1] - 38:6
**patient** [2] - 37:2, 37:3
**patients** [1] - 37:2
**Pause** [1] - 7:10
**pause** [1] - 27:13
**Payne** [1] - 39:5
**PAYNE** [1] - 39:5
**payor** [8] - 13:25, 14:3, 14:11, 14:14, 14:22, 15:8, 20:6, 26:16
**pending** [7] - 5:12, 6:8, 6:11, 6:16, 6:24, 7:7, 12:18
**PENDLEY** [1] - 1:18, 39:25, 40:3
**Pendley** [1] - 39:25
**Pennsylvania** [1] - 2:19
**Pensacola** [1] - 1:19
**people** [2] - 4:19, 13:13
**perceived** [1] - 21:19
**perhaps** [2] - 26:6, 27:4
**period** [1] - 20:4
**permits** [1] - 21:11
**person** [1] - 9:7
**personal** [6] - 25:17, 26:8, 26:10, 26:12, 26:13, 27:15
**pester** [1] - 40:11
**Peyton** [1] - 42:9
**PEYTON** [1] - 42:9
**PFS** [5] - 40:4, 40:9, 40:25, 41:1, 42:17
**Pharma** [1] - 2:24
**Pharmaceutical** [1] - 2:23
**Pharmaceuticals** [4] - 2:15, 2:16, 2:19, 2:24
**pharmacy** [8] - 37:1, 37:2, 37:4, 37:9, 37:11, 37:12, 37:14, 42:16
**Pharmacy** [1] - 3:8
**pharmacy's** [1] - 37:5
**phone** [4] - 8:16, 9:6, 9:8, 9:24
**picked** [1] - 25:21
**piece** [2] - 15:15, 30:18
**piecemeal** [1] - 22:6
**pieces** [1] - 27:5
**Piedmont** [1] - 2:22
**PIETRAGALLO** [1] - 2:17
**Pittsburgh** [1] - 2:19

**place** [2] - 17:25, 28:5
**Plaintiff** [2] - 36:9, 42:12
**plaintiff** [19] - 10:1, 11:17, 11:22, 14:17, 17:22, 19:19, 23:18, 24:10, 24:13, 27:7, 28:6, 29:17, 32:16, 34:17, 36:3, 38:19, 38:21, 41:2, 42:25
**Plaintiffs** [6] - 1:16, 1:19, 2:4, 2:8, 2:11, 41:21
**plaintiffs** [41] - 4:17, 8:19, 8:21, 10:9, 10:10, 10:17, 10:21, 11:5, 11:16, 14:5, 17:2, 17:23, 18:19, 19:11, 19:25, 20:9, 20:25, 21:14, 22:8, 25:1, 25:22, 26:3, 26:11, 26:19, 26:22, 27:19, 28:15, 28:22, 30:17, 31:2, 33:8, 34:12, 34:18, 36:8, 36:18, 36:20, 37:18, 38:4, 38:8, 39:15, 39:17
**plaintiffs'** [12] - 19:9, 20:18, 28:1, 29:2, 34:7, 36:3, 36:7, 36:21, 39:9, 39:14, 39:19, 39:23
**play** [2] - 18:15, 26:16
**PLLC** [1] - 2:9
**plus** [1] - 29:4
**PO** [1] - 2:7
**point** [11] - 12:9, 17:18, 20:17, 30:20, 31:12, 31:17, 32:11, 33:1, 33:3, 34:7, 35:16
**pointed** [2] - 36:11, 37:20
**pointing** [1] - 30:25
**points** [1] - 23:6
**portion** [1] - 17:7
**position** [9] - 8:24, 16:24, 21:17, 25:24, 31:19, 32:3, 33:22, 42:4, 42:23
**positions** [1] - 31:16
**posture** [1] - 31:10
**potential** [3] - 15:5, 19:10, 32:7
**potentially** [3] - 14:24, 16:2, 22:2
**practically** [1] - 24:19
**practice** [2] - 11:4, 28:24

**prefer** [1] - 35:14
**preference** [1] - 9:15
**prejudice** [3] - 35:13, 35:19, 36:9
**premature** [5] - 13:19, 17:11, 21:15, 24:6, 25:12
**prepared** [4] - 9:16, 10:4, 10:14, 13:4
**prescriptions** [1] - 34:9
**PRESENT** [1] - 3:10
**present** [1] - 4:8
**pressure** [1] - 20:9
**presumably** [1] - 23:18
**pretty** [2] - 24:17, 28:2
**prevail** [1] - 15:12
**previously** [1] - 30:15
**Prinston** [1] - 2:15
**proactive** [1] - 13:3
**problem** [2] - 18:14, 25:7
**problems** [1] - 28:16
**procedural** [2] - 15:20, 31:10
**proceed** [5] - 4:13, 9:16, 15:7, 26:1, 27:4
**proceedings** [2] - 7:10, 44:10
**PROCEEDINGS** [1] - 4:1
**Proceedings** [2] - 1:24, 44:6
**process** [3] - 19:13, 34:14, 36:25
**PROCTOR** [1] - 1:17
**produced** [1] - 1:24
**product** [2] - 20:8, 26:14
**production** [1] - 6:3
**productive** [2] - 10:20, 10:22
**PRODUCTS** [1] - 1:4
**professional** [1] - 10:22
**promised** [1] - 38:9
**proof** [1] - 19:18
**proposal** [13] - 11:10, 17:1, 17:6, 17:10, 17:18, 17:19, 18:9, 19:2, 19:3, 20:19, 24:6, 25:11, 34:6
**propose** [1] - 24:23
**proposed** [12] - 10:24, 17:3, 18:10, 24:14, 25:2, 25:8, 25:16, 29:2, 30:17, 30:23, 36:7

**proposing** [10] - 11:5, 20:19, 21:1, 21:4, 21:18, 21:20, 21:22, 23:25, 24:3, 27:9
**proposition** [1] - 26:3
**prosecute** [1] - 16:15
**protection** [9] - 14:24, 17:21, 17:24, 22:25, 24:20, 25:2, 25:4, 26:15, 27:10
**prove** [1] - 15:22
**provide** [1] - 33:9
**provided** [1] - 40:23
**provision** [1] - 30:23
**prudent** [1] - 12:9
**public** [1] - 37:7
**Punta** [1] - 2:4
**purchase** [1] - 36:12
**purports** [1] - 37:16
**purpose** [1] - 15:2
**put** [4] - 9:22, 17:1, 30:21, 40:8
**putative** [1] - 24:13
**puts** [1] - 20:23
**putting** [1] - 17:25

**Q**

**QuickBuy** [1] - 36:18
**QuickChek** [3] - 35:10, 37:8
**quite** [1] - 36:15
**quote** [1] - 30:18
**quotes** [1] - 9:23

**R**

**RAFFERTY** [1] - 1:17
**Rafferty** [1] - 40:1
**raise** [1] - 10:11
**raised** [4] - 9:25, 17:15, 30:8, 31:5
**raising** [1] - 12:4
**RASPANTI** [1] - 2:17
**rather** [2] - 13:10, 36:13
**RDR** [1] - 44:12
**RE** [1] - 1:4
**reach** [1] - 16:24
**read** [2] - 20:2, 22:19
**readiness** [1] - 12:7
**ready** [3] - 11:9, 16:24, 23:10
**readying** [1] - 33:5
**real** [3] - 18:24, 25:8, 40:17
**realized** [1] - 13:11
**really** [15] - 11:1, 11:5, 17:2, 17:5, 18:22, 19:7, 20:17, 22:15,

23:9, 26:18, 26:23, 26:24, 30:5, 34:7, 35:6
**reason** [2] - 10:25, 11:14
**reasoned** [1] - 19:12
**reasons** [1] - 9:5
**rebuttal** [4] - 30:15, 30:17, 30:23, 31:2
**received** [1] - 41:14
**recognize** [3] - 21:14, 27:11, 33:1
**record** [1] - 44:10
**recorded** [1] - 1:24
**records** [1] - 42:16
**refer** [1] - 10:6
**referred** [2] - 10:25, 11:14
**regarding** [2] - 40:23, 42:19
**regardless** [1] - 41:1
**regulatory** [3] - 11:13, 21:4, 21:21
**rejected** [1] - 19:3
**related** [2] - 8:19, 19:2
**relates** [2] - 11:12, 25:12
**relatively** [1] - 20:7
**relevance** [1] - 14:8
**relevant** [1] - 23:15
**relisted** [3] - 39:6, 43:20
**relisting** [1] - 43:18
**relistings** [1] - 42:3
**remain** [1] - 27:6
**remaining** [2] - 18:14, 42:2
**remanded** [1] - 25:24
**remind** [1] - 33:23
**remove** [1] - 42:18
**repeatedly** [1] - 19:3
**reply** [1] - 36:7
**report** [2] - 10:19, 30:21
**Reporter** [1] - 1:22
**reporter** [2] - 4:8, 35:23
**REPORTER** [3] - 4:9, 7:14, 7:16
**Reporter/ Transcriber** [1] - 44:12
**reports** [9] - 7:22, 13:12, 13:15, 21:15, 23:14, 28:2, 30:14, 31:22, 37:25
**represent** [1] - 37:17
**request** [4] - 5:21, 9:12, 30:19, 30:22
**requested** [1] - 39:6

**require** [2] - 4:14, 32:15
**required** [2] - 5:4, 31:17
**requirement** [1] - 8:5
**reset** [1] - 41:1
**resolution** [1] - 16:25
**resolve** [1] - 12:19
**resolved** [1] - 39:4
**resources** [1] - 33:5
**respect** [1] - 30:13
**respectfully** [1] - 18:1
**respond** [6] - 10:4, 16:16, 27:25, 36:2
**RESPONSE** [4] - 4:6, 7:9, 7:12, 44:5
**response** [3] - 22:11, 43:19, 43:23
**responsibility** [1] - 9:17
**rest** [1] - 42:4
**RET** [1] - 1:11
**Retailer** [1] - 3:8
**retailers** [1] - 15:4
**returnable** [1] - 42:11
**revisit** [1] - 29:12
**Richard** [1] - 43:8
**Richards** [1] - 42:7
**RICHER** [3] - 3:6, 35:22, 35:24, 36:2
**Richer** [1] - 35:25
**Rite** [1] - 3:8
**RMR** [1] - 44:12
**Road** [1] - 2:22
**road** [1] - 38:5
**Robert** [3] - 3:11, 39:3, 43:17
**ROBERT** [2] - 1:9, 4:2
**Robinette** [1] - 43:10
**rolls** [1] - 37:1
**Roseland** [1] - 1:16
**Rue** [1] - 43:9
**RUE** [1] - 43:9
**Rule** [3] - 6:22, 21:10, 21:11
**rule** [1] - 24:16
**ruled** [1] - 17:12
**rules** [1] - 7:20
**ruling** [4] - 21:23, 24:12, 24:18, 27:18
**rulings** [6] - 17:12, 27:14, 27:17, 29:7, 29:9, 29:11
**run** [1] - 24:16

**S**

**safe** [1] - 44:2
**sanctions** [2] - 6:8, 6:22

**Sanford** [1] - 39:3
**saw** [2] - 36:3, 36:11
**schedule** [10] - 12:9, 17:25, 21:2, 21:5, 24:9, 28:5, 29:2, 29:9, 30:24, 32:3
**scheduled** [1] - 5:15
**scope** [5] - 11:10, 16:22, 17:2, 23:8, 31:14
**scratching** [1] - 36:3
**see** [9] - 13:16, 24:24, 26:11, 35:19, 35:20, 35:21, 36:5, 36:14, 40:14
**seeking** [6] - 12:4, 21:23, 26:21, 27:15, 27:21, 30:2
**seeks** [1] - 18:16
**seem** [4] - 22:16, 33:19, 35:19, 37:18
**send** [2] - 6:10, 7:7
**sense** [3] - 13:8, 35:20, 38:20
**serious** [1] - 32:10
**SERIOUS** [1] - 29:12
**set** [2] - 12:9, 21:5
**setting** [1] - 8:23
**settled** [2] - 15:24, 24:17
**settlement** [1] - 33:6
**seven** [1] - 34:19
**shared** [1] - 9:14
**sheet** [2] - 38:23, 42:21
**Sheldon** [1] - 43:9
**Shemes** [1] - 42:6
**SHEMES** [1] - 42:6
**Sherber** [1] - 43:11
**SHERBER** [1] - 43:11
**short** [2] - 33:10, 42:25
**shorter** [1] - 16:10
**show** [8] - 37:20, 38:24, 39:1, 39:4, 39:10, 41:17, 42:3, 42:10
**showed** [1] - 42:16
**showing** [2] - 36:20, 37:21
**sic** [1] - 36:18
**side** [4] - 12:12, 15:21, 31:25, 39:14
**sides** [3] - 12:10, 13:12, 30:21
**sidestepped** [1] - 36:13
**significant** [1] - 24:24
**Silberman** [6] - 34:22, 34:24, 35:9, 36:9,

36:12, 37:14
**Silberman's** [1] - 37:8
**simply** [7] - 6:10, 8:17, 8:22, 33:11, 36:19, 42:2
**situated** [1] - 37:16
**situation** [2] - 33:7, 40:3
**SKADDEN** [1] - 2:13
**sketch** [1] - 11:22
**sketches** [1] - 22:16
**SLATE** [1] - 2:13
**SLATER** [17] - 1:14, 1:15, 4:18, 5:6, 5:20, 5:23, 6:6, 6:15, 6:21, 12:1, 14:18, 15:9, 22:22, 29:24, 31:9, 35:1, 38:22
**Slater** [13] - 4:16, 11:19, 11:21, 12:1, 14:10, 17:20, 20:1, 22:17, 22:18, 23:24, 24:22, 31:7, 34:22
**Slater's** [3] - 11:3, 20:16, 20:22
**slides** [1] - 9:14
**slip** [1] - 8:1
**sliver** [4] - 11:4, 11:12, 12:4, 12:11
**Smith** [3] - 42:12, 43:12, 43:13
**SMITH** [5] - 2:10, 3:11, 42:12, 42:15, 43:6
**Solco** [1] - 2:15
**someday** [1] - 9:6
**somewhat** [1] - 21:20
**soon** [2] - 9:6, 44:3
**sooner** [1] - 13:10
**sorry** [3] - 29:14, 35:24, 38:13
**sort** [10] - 8:1, 10:23, 19:2, 21:20, 21:22, 27:8, 28:6, 29:6, 29:8, 33:9
**sound** [2] - 10:8, 34:6
**sounded** [1] - 40:6
**sounds** [3] - 5:20, 5:23, 40:8
**South** [1] - 2:10
**speaking** [1] - 4:16
**SPECIAL** [14] - 1:11, 4:2, 4:4, 4:7, 4:11, 4:21, 5:2, 5:7, 5:9, 5:22, 6:2, 6:7, 6:18, 6:25
**Special** [1] - 5:14
**specific** [4] - 13:23, 25:25, 30:12
**specifically** [2] - 14:8, 36:19

specifications [1] - 16:1
spelled [1] - 42:8
spend [1] - 26:24
spent [2] - 8:18, 14:5
spokesperson [1] - 4:22
spring [1] - 43:25
Square [1] - 2:14
standard [1] - 20:4
standpoint [1] - 31:10
start [10] - 5:3, 13:4, 15:4, 16:9, 32:19, 33:16, 34:8, 34:12, 37:4, 41:15
started [4] - 6:19, 7:24, 32:17, 34:14
state [10] - 12:25, 18:3, 24:23, 25:22, 25:25, 27:7, 28:6, 28:22, 29:14, 29:18
state's [4] - 17:23, 24:21, 26:14, 28:8
state-specific [1] - 25:25
statement [3] - 35:2, 36:6, 42:4
states [4] - 12:21, 25:3, 27:11, 29:22
STATES [2] - 1:1, 1:10
status [3] - 26:19, 34:25, 40:24
statutes [8] - 17:21, 17:24, 24:20, 25:5, 26:13, 26:15, 27:10, 27:21
stay [2] - 44:2
stenography [1] - 1:24
step [1] - 34:4
Steve [2] - 40:20, 41:11
STEVEN [1] - 2:22
still [8] - 6:4, 6:16, 6:24, 13:20, 23:13, 34:3, 36:3, 40:7
stop [1] - 7:23
story [1] - 20:4
straightforward [1] - 20:7
Street [3] - 2:3, 2:10, 3:3
Streets [1] - 1:7
strong [1] - 15:11
strongly [1] - 33:3
struck [1] - 30:23
stuff [3] - 7:5, 34:10, 44:1
subclasses [2] - 25:2, 25:4
subject [2] - 36:10,

43:1
submission [1] - 25:14
submitting [3] - 7:22, 7:24, 36:22
subsequent [1] - 42:16
subset [2] - 25:21, 27:6
sufficient [1] - 27:24
sufficiently [1] - 8:4
suggests [1] - 27:14
Suite [4] - 1:18, 2:22, 3:3, 3:7
summary [16] - 10:1, 11:23, 12:13, 14:16, 14:20, 15:7, 18:11, 20:14, 22:11, 22:19, 23:19, 26:21, 27:20, 29:18, 29:19
supply [3] - 15:3, 31:25, 33:13
support [1] - 36:7
supported [1] - 22:12
suppose [1] - 16:4
surprise [1] - 30:22
surprising [1] - 36:15
surreply [2] - 34:17, 34:20
switch [1] - 37:12
sympathetic [1] - 33:22

T

tactic [1] - 19:11
talks [1] - 18:23
technical [1] - 35:12
telephone [1] - 9:1
telephonically [1] - 4:1
ten [1] - 25:3
term [4] - 21:22, 23:20, 33:10, 35:12
termed [1] - 18:16
terms [3] - 18:2, 23:8, 31:21
terrible [2] - 26:24, 40:6
testimony [1] - 37:9
testing [2] - 6:3
Teva [5] - 2:23, 2:24, 30:10, 32:23, 40:20
The court [82] - 7:11, 7:13, 7:15, 7:18, 8:14, 8:21, 8:25, 9:3, 9:12, 9:14, 9:19, 9:25, 10:14, 10:16, 11:8, 11:19, 12:18, 12:22, 12:25, 13:5,

13:8, 13:23, 15:6, 16:8, 16:11, 17:11, 18:4, 18:18, 19:1, 19:5, 19:7, 19:9, 19:22, 20:2, 21:4, 21:10, 22:5, 22:8, 23:17, 24:11, 24:12, 25:19, 25:20, 26:3, 26:4, 26:6, 26:9, 27:19, 27:24, 28:12, 28:15, 29:1, 29:11, 29:17, 29:22, 30:5, 30:15, 30:25, 31:5, 32:6, 33:22, 34:16, 36:1, 38:6, 38:10, 38:23, 39:21, 39:22, 40:2, 40:15, 40:17, 41:5, 41:18, 41:22, 42:5, 42:14, 42:20, 42:23, 43:4, 43:7, 43:20, 43:24
therefore [1] - 39:10
thinking [3] - 16:7, 31:20, 34:8
thinks [3] - 12:12, 13:8, 16:8
third [7] - 13:24, 14:3, 14:11, 14:22, 15:8, 20:6, 26:16
Third [1] - 17:16
third-party [7] - 13:24, 14:3, 14:11, 14:22, 15:8, 20:6, 26:16
THOMAS [3] - 1:11, 1:17, 4:2
Thompson [4] - 39:12, 39:24, 40:1, 40:3
Thorn [4] - 39:8, 41:13, 41:19, 41:21
Thornburg [1] - 35:25
THORNBURG [1] - 3:6
three [3] - 17:5, 18:6, 34:19
throwing [1] - 9:17
timing [2] - 12:18, 17:2, 17:18
today [10] - 7:5, 7:15, 7:17, 8:9, 33:20, 37:10, 38:1, 41:15, 41:17, 43:22
Tolley [1] - 42:9
TOLLEY [1] - 42:9
Tom [1] - 4:4
Tommy [1] - 42:5
top [1] - 6:12
tort [2] - 10:9, 26:14
totality [1] - 21:18
touch [1] - 21:25
towards [2] - 12:7, 28:21

TPP [1] - 14:22
tracks [1] - 33:25
transcript [2] - 1:24, 44:9
transcription [1] - 1:24
transferred [1] - 37:3
TRAURIG [1] - 2:21
Traurig [1] - 40:20
trial [6] - 12:7, 16:24, 23:10, 26:1, 32:2, 33:6
trial-ready [1] - 16:24
tried [1] - 10:22, 40:10
TRISCHLER [3] - 2:18, 8:10, 10:3
Trischler [2] - 8:8, 10:3
troubling [1] - 20:18
truly [1] - 41:1
truth [1] - 35:7
try [3] - 12:9, 16:2, 25:20
trying [2] - 22:18, 30:6
turn [1] - 33:12
turning [1] - 33:16
two [7] - 7:25, 8:6, 15:1, 17:10, 34:13, 35:8, 39:15
type [4] - 18:12, 19:1, 27:18, 33:11

U

U.S [2] - 1:6, 2:15
ULMER [1] - 3:2
ultimate [1] - 28:23
ultimately [3] - 16:22, 16:23, 16:24
Ulysses [1] - 39:5
unacceptable [1] - 7:23
uncertified [1] - 26:5
under [3] - 17:16, 17:21, 18:2
understood [9] - 11:15, 20:18, 20:24, 20:25, 23:23, 28:14, 29:13, 34:15, 38:22
unequivocal [1] - 36:6
unfair [2] - 21:20, 22:4
uniquely [1] - 37:16
UNITED [2] - 1:1, 1:10
unless [1] - 4:14
untethered [1] - 24:9
up [1] - 9:23, 12:9, 16:5, 30:7, 33:15, 34:4, 36:15, 38:8, 38:11, 40:10, 41:17
updates [1] - 42:2

USA [1] - 2:24

V

valsartan [1] - 42:19
VALSARTAN [1] - 1:4
Vanaskie [1] - 4:5
VANASKIE [14] - 1:11, 4:2, 4:4, 4:7, 4:11, 4:21, 5:2, 5:7, 5:9, 5:22, 6:2, 6:7, 6:18, 6:25
various [2] - 18:2, 23:2
vehicle [2] - 11:24, 26:17
verify [1] - 5:11
Victoria [2] - 30:10, 32:22
VICTORIA [1] - 2:21
view [3] - 11:11, 25:6, 29:6
Vincent [1] - 43:8
Vindigni [1] - 43:9
VINDIGNI [1] - 43:9
Vine [1] - 3:3
violate [2] - 16:2, 18:12
violated [1] - 20:3
violation [1] - 20:24
virtually [1] - 8:23
voluntarily [2] - 38:16, 41:14
voluntary [1] - 41:19

W

wait [4] - 13:5, 19:22, 19:23, 27:5
waiting [2] - 7:2, 23:13
walk [2] - 36:5, 36:14
Walker [1] - 43:9
wants [5] - 8:25, 10:1, 14:14, 32:16, 39:20
warranty [8] - 12:15, 14:19, 15:4, 15:7, 15:23, 22:24, 23:20, 24:21
waste [1] - 37:22
Wayne [2] - 42:9, 42:12
ways [1] - 35:8
Wednesday [1] - 8:7
week [1] - 8:18
White [1] - 43:16
whole [1] - 32:13
Wholesaler [1] - 3:4
wholesaler [1] - 5:21
wholesalers [1] - 5:25
William [1] - 43:13

**Williams** [1] - 43:15
**Williamson** [1] - 39:17
**WILLIAMSON** [2] - 2:3, 39:16
**willing** [2] - 33:8, 41:3
**Wilson** [3] - 39:12, 39:23, 41:6
**witnesses** [2] - 15:10, 33:17
**word** [2] - 11:19, 38:12
**worried** [1] - 22:15
**worth** [2] - 20:8, 37:13
**wrench** [1] - 9:18

## Y

**yesterday** [1] - 36:4
**York** [2] - 2:14

## Z

**Zhejiang** [1] - 2:16
**Zoom** [7] - 8:14, 8:16, 9:1, 9:5, 9:7, 9:13, 9:18