# Exhibit A

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - x

IN RE: VALSARTAN, LOSARTAN, AND   :   MDL NO. 2875

IRBESARTAN PRODUCTS LIABILITY    :

LITIGATION,                       :

                                  :

THIS DOCUMENT RELATES TO          :

ALL ACTIONS                       :

- - - - - - - - - - - - - - - - - x

***RESTRICTED CONFIDENTIAL***

Veritext Virtual Zoom Videotaped deposition of RENA M. CONTI, Ph.D., taken on Thursday, February 10, 2022, in Glenside, Pennsylvania, commencing at 10:17 a.m. Eastern Standard Time, before Jamie I. Moskowitz, a Certified Court Reporter and Certified Livenote Reporter.

RESTRICTED CONFIDENTIAL

Page 155

1      her to answer.
2              THE WITNESS: So I have been aware of
3      this opinion for a while, and the opinion was
4      provided to me by counsel.
5  BY MR. GOLDBERG:
6      Q      When was that?
7      A      When did they -- when did I receive
8  this via text on my phone?
9      Q      Yes.
10     A      Five minutes ago. But I have been
11 aware of this before then.
12     Q      So counsel texted you five minutes ago
13 with the judge's opinion that you just read into the
14 record?
15             MR. HONIK: Without waiving -- excuse
16     me, without waiving the objection and
17     privilege, I'll permit her to answer.
18             THE WITNESS: Yes. It was just texted
19     to me. But again, I have been aware of this
20     opinion for a while.
21 BY MR. GOLDBERG:
22     Q      And which counsel texted that to you?
23             MR. HONIK: Without waiving the
24     objection, I'll permit her to answer.
25             THE WITNESS: John Davis.

RESTRICTED CONFIDENTIAL

Page 156

1  BY MR. GOLDBERG:
2      Q      And did John -- so we talked about the
3  therapeutic benefits that may have -- that -- that
4  consumers who took the at-issue valsartan products
5  may have experienced. You don't dispute that
6  consumers who took valsartan at-issue products may
7  have experienced therapeutic benefits?
8          MR. HONIK: Object to the form, asked
9      and answered, beyond the scope.
10          You may answer.
11          THE WITNESS: Again, the demand curve
12      for these products may exist. From an economic
13      theory perspective, the demand curve represents
14      individual assessments of benefits and costs of
15      prescription drugs. I am not disputing that
16      there may have been a demand curve for these
17      products. That is not my opinion.
18          My opinion is related to the supply
19      curve. In other words, that products that do
20      not meet the evidentiary standard are not
21      allowed into the U.S. products of trade, they
22      are not viewed as being legitimate products.
23      From my perspective, those products are
24      worthless.
25

1  BY MR. GOLDBERG:
2      Q      Your methodology does not take into
3  consideration how consumers might have perceived the
4  value of the at-issue valsartan to them, correct?
5              MR. HONIK:  Object to the form.
6              THE WITNESS:  My analysis presumes
7         there is a demand curve for these products.
8         What my analysis also presumes is that there is
9         no legitimate supply curve for products that do
10        not meet the evidentiary standard of the U.S.
11 BY MR. GOLDBERG:
12     Q      What your analysis does not take into
13 consideration is whether any consumer perceived that
14 they received a therapeutic benefit that provided a
15 value to them, right?
16             MR. HONIK:  Object to the form, asked
17        and answered.
18             You may answer.
19             THE WITNESS:  Again, of course, it
20        does.  There is a demand curve for these
21        products.  That is not -- that is not the issue
22        in this case.  Of course, there's a demand
23        curve, and I -- I describe it in my report.
24        What my report is trying to explain is that
25        there is no legitimate supply curve for

RESTRICTED CONFIDENTIAL

Page 165

1       products that do not meet the evidentiary
2       standard of the U.S. government.
3               I was asked to assume that
4       products -- that these products at issue
5       between 2012 and 2018 did not meet the
6       evidentiary standard.  They were adulterated
7       and misbranded.  Therefore, there was no supply
8       curve, in my analysis.
9  BY MR. GOLDBERG:
10      Q       Are you familiar with what the FDA
11 advised patients to do when the recalls were
12 announced?
13              MR. HONIK:  Object to the form,
14      outside the scope.
15              THE WITNESS:  Specifically, what do
16      you mean?
17 BY MR. GOLDBERG:
18      Q       Are you aware that the FDA advised
19 people that they should not discontinue their use of
20 valsartan until they spoke with their doctor about
21 it?
22              MR. HONIK:  Object to the form, asked
23      and answered, outside the scope.
24              THE WITNESS:  Again, my understanding
25      is that there were multiple FDA communications