# EXHIBIT 14

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 2 of 11
PageID: 74030
Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

2021 WL 5299193
United States District Court, S.D. New York.

PACIFIC LIFE INSURANCE COMPANY and
Pacific Life & Annuity Company, Plaintiffs,
v.
The BANK OF NEW YORK MELLON, Defendant.

17 Civ. 1388 (KPF)
|
Signed 11/15/2021

**Synopsis**
**Background:** Certificateholders of residential mortgage-backed securities (RMBS) trusts brought claims against their common trustee, alleging that trustee breached its contractual, fiduciary, and common-law duties, as well as its duties under the Trust Indenture Act and the Streit Act, and that trustee was negligent in failing to avoid conflicts of interest and to perform ministerial acts with due care. The United States District Court for the Southern District of New York, Robert W. Lehrburger, United States Magistrate Judge, 2021 WL 673479, granted plaintiffs' motion to exclude opinion of defendant's expert. Defendant appealed.

**Holdings:** The District Court, Katherine Polk Failla, J., held that:

[1] expert did not substantially participate in preparation of expert's report rendering its reliability highly suspect, and

[2] expert's report was predicated on a key unfounded assumption which undermined report's reliability and usefulness to the jury.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Exclude Expert Report or Testimony.

West Headnotes (32)

[1]  **United States Magistrate Judges**  Standard of Review

The standard of review that a district court applies to a magistrate judge's order depends on whether the issue decided by the magistrate judge is dispositive or nondispositive.

[2]  **United States Magistrate Judges**  Procedural matters

Magistrate judge's orders involving discovery are considered nondispositive, and thus a district court may only modify or set aside any part of the order that is clearly erroneous or is contrary to law. 28 U.S.C.A. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

1 Cases that cite this headnote

[3]  **United States Magistrate Judges**  Procedural matters

The decision of a magistrate judge to admit or exclude expert testimony is considered nondispositive of an action, and thus a district court may only modify or set aside any part of the decision that is clearly erroneous or is contrary to law. 28 U.S.C.A. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

1 Cases that cite this headnote

[4]  **United States Magistrate Judges**  Discovery
**United States Magistrate Judges**  Deference in general

The standard of review of a magistrate judge's decision is highly deferential, and magistrates are afforded broad discretion in resolving discovery disputes.

[5]  **United States Magistrate Judges**  Clear error, manifest error, or contrary to law in general

A magistrate judge's order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed and is contrary to law if it fails to apply or

misapplies relevant statutes, case law, or rules of procedure.

1 Cases that cite this headnote

**[6]** **United States Magistrate Judges** Presumptive weight of magistrate judge's recommendation

The objector to a magistrate judge's non-dispositive decision carries a heavy burden.

**[7]** **Evidence** Daubert and Frye tests in general

Under *Daubert*, district courts are tasked with a gatekeeping role with respect to expert opinion testimony. Fed. R. Evid. 702.

**[8]** **Evidence** Daubert and Frye tests in general

The district court's gatekeeping function under *Daubert* applies whether the expert testimony is based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 702.

**[9]** **Evidence** Discretion of court in general

Trial judge has broad discretion in the matter of admission or exclusion of expert evidence. Fed. R. Evid. 702.

**[10]** **Evidence** Daubert and Frye tests in general

A court's *Daubert* inquiry focuses on three issues: (i) whether the witness is qualified to be an expert; (ii) whether the opinion is based upon reliable data and methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact. Fed. R. Evid. 702.

**[11]** **Evidence** Presumptions, Burden, and Degree of Proof

The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of rule governing admission of expert testimony are satisfied. Fed. R. Evid. 702.

**[12]** **Evidence** Daubert and Frye tests in general

Under *Daubert*, once a court has determined that a witness is qualified as an expert, it must ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Fed. R. Evid. 702.

**[13]** **Evidence** Disclosure or explanation of basis for opinion

In order to be admissible under *Daubert*, an expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion. Fed. R. Evid. 702.

**[14]** **Evidence** Speculation, guess, or conjecture; probability or possibility

Rule governing admission of expert testimony requires that expert testimony rest on "knowledge," a term that connotes more than subjective belief or unsupported speculation. Fed. R. Evid. 702.

**[15]** **Evidence** Assumptions and hypotheses; assumed facts

**Evidence** Speculation, guess, or conjecture; probability or possibility

Under *Daubert*, a trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith; other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony. Fed. R. Evid. 702.

**[16]** **Evidence** Daubert and Frye tests as to reliability in general

In deciding whether a step in expert's analysis is unreliable under *Daubert*, district court should undertake rigorous examination of facts on which expert relies, method by which expert

draws opinion from those facts, and how expert applies facts and methods to case at hand. Fed. R. Evid. 702.

**[17]** **Evidence** Determination as to basis of expert's opinion and reliability in general

A district court has discretion to determine whether an expert acted reasonably in making assumptions of fact upon which he would base his testimony. Fed. R. Evid. 703.

**[18]** **Evidence** Daubert and Frye tests as to reliability in general

Minor flaw in expert's reasoning or slight modification of otherwise reliable method does not itself require exclusion under *Daubert*; exclusion is only warranted if the flaw is large enough that expert lacks good grounds for his or her conclusions.

**[19]** **Evidence** Means of attacking expert

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence under *Daubert*. Fed. R. Evid. 702.

**[20]** **Evidence** Daubert and Frye tests as to reliability in general

While district court has broad latitude in deciding both how to determine reliability of expert testimony and in reaching its ultimate reliability determination, it may not abandon its gatekeeping function under *Daubert*. Fed. R. Evid. 702.

**[21]** **Evidence** Ipse dixit

Nothing in either *Daubert* or rules governing expert testimony requires a district court to admit expert opinion evidence that is connected to existing data only by the ipse dixit of the expert. Fed. R. Evid. 702.

**[22]** **Evidence** Reliability of Experiments, Tests, and Studies

When an expert opinion is based on data, a methodology, or studies that are inadequate to support the conclusions reached, *Daubert* and rule governing expert testimony mandate the exclusion of that unreliable opinion testimony. Fed. R. Evid. 702.

**[23]** **Evidence** Helpfulness; assisting trier of fact

The inquiry into whether proposed expert testimony will help the trier of fact to understand the evidence or to determine a fact in issue looks primarily to whether the testimony is relevant. Fed. R. Evid. 702.

**[24]** **Evidence** Matters of Common Knowledge or Observation

A court should not admit expert testimony that is directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help. Fed. R. Evid. 702.

**[25]** **Evidence** Tendency to mislead or confuse in general; prejudicial effect in general

Expert testimony must adhere to rule providing that relevant evidence may still be excluded if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403, 702.

**[26]** **Evidence** Breach of contract

Trustee's expert, a specialist in financial economics who provided opinions about extent to which obligor had the wherewithal to

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 5 of 11
PageID: 74033

**Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)**
116 Fed. R. Evid. Serv. 2020

repurchase loans and how that may have affected a damages analysis, did not substantially participate in preparation of expert's report rendering its reliability highly suspect and thus inadmissible under *Daubert* in breach of contract action against trustee brought by certificateholders of residential mortgage-backed securities (RMBS) trusts; expert had a considerable lack of familiarity with report, was unable to describe what any of the individuals he worked with did in connection with preparation of report, could not identify all the people who wrote words that appeared in report, did not know how many such people there were, and could not recall whether he personally wrote initial draft of report. Fed. R. Evid. 702.

[27]  **Evidence** 🗝 Opinions, records, or reports of others

An expert may rely on assistants or the opinions of other experts in formulating his or her own expert opinions. Fed. R. Evid. 702.

[28]  **Evidence** 🗝 Opinions, records, or reports of others

Rule governing expert testimony allows an expert to present the work of others if the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work himself. Fed. R. Evid. 702.

[29]  **Evidence** 🗝 Opinions, records, or reports of others

The court will preclude proffered expert witnesses who simply aggregate or recite the opinions of others. Fed. R. Evid. 702.

[30]  **Evidence** 🗝 Opinions, records, or reports of others

An expert witness must in the end be giving his own opinion; he cannot simply be a conduit for the opinion of an unproduced expert. Fed. R. Evid. 702.

[31]  **Evidence** 🗝 Opinions, records, or reports of others

An expert may not merely adopt another expert's opinions as his or her own reflexively and without understanding the materials or methods underlying the other expert's opinions. Fed. R. Evid. 702.

[32]  **Evidence** 🗝 Breach of contract
     **Evidence** 🗝 Breach of contract

Report by trustee's expert, a specialist in financial economics who provided opinions about extent to which obligor had the wherewithal to repurchase loans and how that may have affected a damages analysis, was predicated on a key unfounded assumption with respect to other trusts that were not at issue and which undermined report's reliability and usefulness to the jury, and thus expert's report was inadmissible under *Daubert* in breach of contract action brought against trustee by certificateholders of residential mortgage-backed securities (RMBS) trusts. Fed. R. Evid. 702.

**Attorneys and Law Firms**

Christopher Jon Lucht, Jennifer Carnovale, Joseph J. Saladino, Nicole Marie Clark, Philip Ransom Schatz, Scott C. Ferrier, Steven Sanford Fitzgerald, Timothy Alan DeLange, William Hagan, III, David H. Wollmuth, Ashley Ann Cardenas, Ryan Anthony Kane, C/O Wollmuth Maher & Deutsch LLP, Elizabeth Courtney Roache, Willkie Farr & Gallagher LLP, New York, NY, Jay Stuart Handlin, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Los Angeles, CA, for Plaintiffs.

Alexander Colen Robinson, Mayer Brown LLP, Los Angeles, CA, Allison Joan Zolot, Christopher James Houpt, Jarman Douglas Russell, Mark Hanchet, Niketa Kishorkumar Patel, Silvia Araxie Babikian Pacia, Christopher J. Mikesh, Matthew D. Ingber, Mayer Brown LLP, Rory Keith

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 6 of 11 PageID: 74034

Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

Schneider, Davis Polk & Wardwell LLP, New York, NY, for Defendant.

## OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

**\*1** Pending before the Court is a challenge to one portion of the February 2, 2021 Decision and Order issued by United States Magistrate Judge Robert W. Lehrburger (the "February 2021 Order"), addressing the motions of Pacific Life Insurance Company ("PacLife") and Pacific Life & Annuity Company (together, "Plaintiffs") and the Bank of New York Mellon ("Defendant" or "BNYM") to exclude expert opinion testimony pursuant to Federal Rule of Evidence 702 and cases including *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In particular, Defendant has filed objections pursuant to Federal Rule of Civil Procedure 72 to Judge Lehrburger's exclusion of opinion testimony from defense expert Thomas Lys. After careful review of the underlying materials and the parties' arguments, the Court rejects Defendant's objections and affirms the February 2021 Order.

## BACKGROUND [1]

The Court presumes familiarity with the factual and procedural backgrounds of this case, both of which are detailed in the Court's March 16, 2018 Opinion and Order on Defendant's motion to dismiss. (Dkt. #53 (the "March 2018 Order")). A brief overview is set forth herein, drawing in part from the recitation of the facts in the March 2018 Order.

### A. Factual Background

The instant action is one of several cases in this District in which certificateholders of residential mortgage-backed securities ("RMBS") trusts brought claims against their common trustees. Plaintiffs here are certificateholders of 13 securitization trusts who claim that Defendant BNYM breached its contractual, fiduciary, and common-law duties, as well as its duties under the Trust Indenture Act of 1939 (the "TIA"), 15 U.S.C. § 77aaa, and the Streit Act, N.Y. Real Property Law § 124. Plaintiffs further claim that Defendant was negligent in failing to avoid conflicts of interest and to perform ministerial acts with due care.

### B. Relevant Procedural Background

On October 2, 2020, Plaintiffs and Defendant filed motions *in limine* to exclude the testimony of the other side's expert witnesses, resulting in challenges to thirteen experts in total. (Dkt. #150-165). On December 8, 2020, the Court referred these motions to Magistrate Judge Robert W. Lehrburger for resolution. (Dkt. #213). On February 22, 2021, Judge Lehrburger issued a Decision and Order on the parties' respective motions *in limine*, granting them in part and denying them in part. (Dkt. #216 (the "February 2021 Order")). As relevant here, Judge Lehrburger excluded in full the testimony of one of Defendant's expert witnesses, economics professor Thomas Lys, whom Defendant had retained to assess "whether, from an economic perspective, the ability of Countrywide [the obligor under the governing agreements] to pay put-back claims as alleged by Plaintiffs could be relevant for a damages calculation as a stand-alone entity." (Dkt. #165-25, ¶ 19 ("Lys Report")). Citing numerous deficiencies, Judge Lehrburger found Lys's testimony to be "unreliable, speculative, indefinite, and unhelpful to the jury." (February 2021 Order at 42).

**\*2** On March 8, 2021, Defendant filed objections to the February 2021 Order, asking this Court to set aside Judge Lehrburger's decision with respect to the exclusion of Lys's testimony. (Dkt. #218). On March 22, 2021, Plaintiffs opposed Defendant's objections (Dkt. #220, 224-225), and on March 29, 2021, Defendant replied to Plaintiffs' opposition (Dkt. #228-229). Neither side objected to Judge Lehrburger's rulings as to any of the remaining twelve expert witnesses.

## DISCUSSION

### A. Applicable Law

#### 1. Standard of Review of a Magistrate Judge's Order

**[1]** The standard of review that a district court applies to a magistrate judge's order "depends on whether the issue decided by the magistrate judge is dispositive or nondispositive." *Blackrock Allocation Target Shares: Series S. Portfolio* v. *Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 10067 (KPF), 2018 WL 3863447, at \*3 (S.D.N.Y. Aug. 13, 2018) (internal citation omitted); *see generally Kiobel* v. *Millson*, 592 F.3d 78, 106 (2d Cir. 2010) (Jacobs, J., concurring). Whereas dispositive orders are subject to *de novo* review, if a party timely objects to a magistrate judge's nondispositive order, a district court may only "modify or

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 7 of 11
PageID: 74035

Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).

 **[2]**   **[3]**   Orders involving discovery are considered nondispositive. *Blackrock*, 2018 WL 3863447, at *3. In particular, "the decision to admit or exclude expert testimony is considered nondispositive of an action." *Sansalone* v. *Bon Secours Charity Health Sys.*, No. 05 Civ. 8606 (BSJ), 2009 WL 1649597, at *2 (S.D.N.Y. June 9, 2009) (collecting cases). Accordingly, a district court must affirm such orders unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Blackrock*, 2018 WL 3863447, at *3.

 **[4]**   **[5]**   **[6]**   This standard of review is "highly deferential," and "magistrates are afforded broad discretion in resolving discovery disputes." *Sec. & Exch. Comm'n* v. *Contrarian Press*, No. 16 Civ. 6964 (VSB), 2020 WL 7079484, at *1 (S.D.N.Y. Dec. 2, 2020) (internal citations omitted). "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" and is "contrary to law if 'it fails to apply or misapplies relevant statutes, case law or rules of procedure.' " *Blackrock*, 2018 WL 3863447, at *3 (quoting *Khaldei* v. *Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013)). "[T]he objector thus carries a heavy burden." *Khaldei*, 961 F. Supp. 2d at 575.

### 2. Admissibility of Expert Opinion Testimony

 **[7]**   **[8]**   **[9]**   Judge Lehrburger's February 2021 Order addressed the admissibility of expert testimony, and this Court accordingly proceeds to consider the legal standards on that issue. The Supreme Court has tasked district courts with a "gatekeeping" role with respect to expert opinion testimony. *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786 (holding that it is the district court's responsibility to ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand"). This "gatekeeping" function applies whether the expert testimony is based on scientific, technical, or "other specialized" knowledge. *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). "It is well-established that the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence[.]" *Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation and quotation marks omitted).

**\*3**  **[10]**   **[11]**   Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>>
>> (b) the testimony is based on sufficient facts or data;
>>
>> (c) the testimony is the product of reliable principles and methods; and
>>
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A court's inquiry thus focuses on three issues: (i) whether the witness is qualified to be an expert; (ii) whether the opinion is based upon reliable data and methodology; and (iii) whether the expert's testimony on a particular issue will assist the trier of fact. *Nimely* v. *City of New York,* 414 F.3d 381, 396-97 (2d Cir. 2005). "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied[.]" *United States* v. *Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

In the instant case, item one is obviated by the absence of any challenge to Lys's qualifications as an expert. Accordingly, the Court focuses on the reliability of Lys's testimony and its helpfulness to the jury.

#### a. Reliability of Expert Testimony

 **[12]**   **[13]**   Once a court has determined that a witness is qualified as an expert, it must ensure that the expert's testimony both "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786. In order to be admissible, "[a]n expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel* v. *Medtronic, Inc.*, 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008).

 **[14]**   **[15]**   Rule 702 requires that "expert testimony rest on 'knowledge,' a term that 'connotes more than subjective belief or unsupported speculation.' " *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004)

Case 1:19-md-02875-RMB-SAK    Document 2108-7    Filed 06/16/22    Page 8 of 11
                                            PageID: 74036
Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

(quoting *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786). "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith." *Zerega Ave. Realty Corp.* v. *Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213-14 (2d Cir. 2009) (citation and quotation marks omitted). "[O]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Id.* (alteration in original) (citation omitted).

[16] [17] [18] [19] "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "A district court has discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Boucher*, 73 F.3d at 21 (internal quotation marks and citations omitted). "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method" does not itself require exclusion; exclusion is only warranted "if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Amorgianos*, 303 F.3d at 267 (citation and internal quotation marks omitted). This is because "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596, 113 S.Ct. 2786).

*4 [20] [21] [22] While a district court has "broad latitude" in deciding both "how to determine reliability" and in reaching "its ultimate reliability determination," it may not abandon its "gatekeeping function." *Williams*, 506 F.3d at 160-61 (citation omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire*, 526 U.S. at 157, 119 S.Ct. 1167 (internal citation omitted). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero* v. *Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005) (citing *Amorgianos*, 303 F.3d at 266).

**b. Helpfulness or Relevance of Testimony**

[23] Separately, the Court must determine whether the proposed expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This inquiry looks primarily to whether the testimony is relevant. *See In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007) (citing *Daubert*, 509 U.S. at 591-92, 113 S.Ct. 2786). Under the Federal Rules of Evidence, evidence is relevant if it has a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also Daubert*, 509 U.S. at 591-92, 113 S.Ct. 2786 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.").

[24] A court should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *United States* v. *Mulder*, 273 F.3d 91, 104 (2d Cir. 2001) (quoting *United States* v. *Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)); *see also Atlantic Specialty Ins.* v. *AE Outfitters Retail Co.*, 970 F. Supp. 2d 278, 291-92 (S.D.N.Y. 2013) (excluding expert's "opinion on the extent of fire damage resulting from [fire department's] response time," where expert's opinion was essentially that "a fire causes increasing damage the longer it burns," because "a lay person is entirely capable of reaching this conclusion without the help of an expert").

[25] Expert testimony must also adhere to the other Federal Rules of Evidence, including Rule 403, which provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Rule 403 inquiry is particularly important in the context of expert testimony, "given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397; *see also Daubert*, 509 U.S. at 595, 113 S.Ct. 2786 (" 'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.' " (quoting Jack B. Weinstein,

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 9 of 11
PageID: 74037

Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

*Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991))).

**B. Analysis**

[26] At the outset, the Court observes that it is a testament to Judge Lehrburger's thoughtful analysis that only one of his decisions is challenged. That challenge is to his decision to exclude the opinion of defense expert Thomas Lys, a specialist in financial economics working with Analysis Group, who provided opinions about the extent to which Countrywide had the wherewithal to repurchase loans and how that may affect a damages analysis. (February 2021 Order at 41). In brief, Judge Lehrburger found problems with Lys's involvement in the preparation of his report; certain of the factual underpinnings of his expert opinions; and the helpfulness *vel non* of his opinions to a jury. (*Id.* at 41-44).

**\*5** Defendant advances four arguments in its Rule 72 objections. *First*, Defendant argues that the wholesale exclusion of Lys's opinions based on his own deposition testimony about the ostensibly flawed process used to generate the report is clearly erroneous and contrary to law, because (i) *Daubert* does not preclude the use of assistants in forming expert opinions; (ii) Lys's deposition testimony reflected close involvement in the preparation of the report and intimate familiarity with its contents; and (iii) Judge Lehrburger erroneously concluded that Lys did not understand why certain statements were included in his report. (Def. Br. 5-13). *Second*, Defendant asserts that challenges to an expert's assumptions go to weight, not admissibility. (*Id.* at 13-20). *Third*, Defendant argues that the February 2021 Order impermissibly faulted Lys for failing to quantify Plaintiffs damages. (*Id.* at 21-22). *Fourth*, Defendant claims that Judge Lehrburger improperly excluded Lys's opinions because of mere disagreement with their implications. (*Id.* at 23-24). Ultimately, this Court agrees with Judge Lehrburger's finding that Lys's report was unreliable. Because this is a sufficient basis on which to exclude Lys's testimony, the Court need only address Defendant's first two arguments.

**1. Lys Did Not Substantially Participate in the Preparation of the Report**

Judge Lehrburger found that "Lys's lack of involvement and familiarity with his own report renders its reliability highly suspect." (February 2021 Order at 42). Defendant disagrees with Judge Lehrburger's characterization of Lys's involvement in the drafting of the report, arguing that "it is well settled that assistants may help experts research and draft their reports," and, further, that "[t]here is no authority for the proposition that merely failing to recall who wrote what is grounds for exclusion." (Def. Br. 7-8). Defendant is correct on the law, but Judge Lehrburger was equally correct in applying that law to the facts of this case.

[27] [28] [29] [30] To begin, Defendant is correct that "an expert may rely on assistants or the opinions of other experts in formulating their own expert opinions." *Faulkner* v. *Arista Recs. LLC*, 46 F. Supp. 3d 365, 385 (S.D.N.Y. 2014). The rules of evidence "allow an expert to present the work of others if the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work themselves." *In re M/V MSC Flaminia*, No. 12 Civ. 8892 (KBF), 2017 WL 3208598, at \*2 (S.D.N.Y. July 28, 2017). By contrast, "[t]he Court will preclude proffered witnesses who simply aggregate or recite the opinions of others." *Id.* In other words, "[t]he expert witness must in the end be giving his *own* opinion. He cannot simply be a conduit for the opinion of an unproduced expert." *Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) (excluding testimony of expert witness who purported to rely on another expert over whom he "exercised little if any supervision").

In the February 2021 Order, Judge Lehrburger did not take issue with Lys's use of assistants, but rather with Lys's "considerable lack of familiarity with his report." (February 2021 Order at 42). And despite Defendant's present contention that Lys claims "ownership of everything in his report" (Def. Br. 9), it is clear from Lys's deposition testimony that he did not substantially participate in the preparation of his report. Judge Lehrburger found that, at his deposition,

> Lys conceded that he could not identify in his report anything specific that he wrote; could not recall how much time he spent editing the report or any details of directions he gave for its preparation; could not identify which Analysis Group individuals performed what tasks or even describe the supervision he purportedly provided other than to say "they did what I told them to do," which he could not specify; and "rel[ied] on their hours to collect data, to analyze data, and to, you know, produce the product."

(February 2021 Order at 42 (quoting Dkt. #165-24 ("Lys Dep.") at 21-25, 28-29)).

Indeed, Lys's deposition testimony reveals that while Lys was able to identify the names of four individuals at Analysis

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 10 of 11
                                   PageID: 74038
Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

Group with whom he worked, he was unable to describe what any of them did in connection with the preparation of the report. (Lys Dep. 21-22). Lys could not identify "all the people who wrote words that appear in the report," nor did he know how many such people there were. (*Id.* at 23). Lys could not even recall whether he personally wrote an initial draft of the report or whether the draft had been sent to him by someone else. (*Id.* at 24-25).

**\*6** In *Bank of New York Mellon* v. *WMC Mortgage, LLC*, which Judge Lehrburger cited in the February 2021 Order, a sister court in this District excluded an expert's opinion even though the expert claimed his report contained his analysis and was "prepared at my direction or adopted by me based on my review and analysis of the quality and integrity of the ... analysis performed by others." No. 12 Civ. 7096 (DLC), 2015 WL 4887446, at \*3 (S.D.N.Y. Aug. 17, 2015). The court found that the expert "[did] not know the experience of any of [the reunderwriters] who worked on this project, [and] he [was] unaware of the instructions they were given or the extent to which their work was subject to quality control." *Id.* at \*6. Lys's deposition testimony confirms that his level of involvement in the preparation of his report was similarly deficient. It was thus not clear error for Judge Lehrburger to find Lys's participation in developing the report to be fatally lacking.

### 2. Lys's Report Is Predicated on a Key Assumption That Undermines Its Reliability and Usefulness to the Jury

 **[31]**  Lys's lack of involvement in the preparation of the report begets a second problem: an expert may not "merely adopt another expert's opinions as his or her own reflexively and without understanding the materials or methods underlying the other expert's opinions." *U.S. Bank N.A.* v. *PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 131 (S.D.N.Y. 2015); *see also Mason* v. *AmTrust Fin. Servs., Inc.*, No. 19 Civ. 8364 (DLC), 2020 WL 7425254, at \*5 (S.D.N.Y. Dec. 18, 2020) (excluding opinion of expert who relied in part on figures provided by plaintiff, with "no explanation of their source" or "any reason to believe that they rest on a reliable foundation"); *Arista Recs. LLC* v. *Usenet.com, Inc.*, 608 F. Supp. 2d 409, 428 (S.D.N.Y. 2009) (excluding expert's opinions that were "merely a restatement of Defendant[']s views and [were] not the product of independent analysis"); *In re Zyprexa*, 489 F. Supp. 2d at 288 (excluding expert's testimony as to the specifics of how Zyprexa's regulatory issues were processed by the FDA, because the expert had not conducted independent analysis of the issues and lacked specific knowledge of the matter); *Gary Price Studios, Inc.* v. *Randolph Rose Collection, Inc.*, No. 03 Civ. 969 (CSH), 2006 WL 1319543, at \*8 (S.D.N.Y. May 11, 2006) (granting motion to exclude expert testimony where court found expert was, in large measure, parroting the testimony of the plaintiff); *Rowe Entm't, Inc.* v. *William Morris Agency, Inc.*, No. 98 Civ. 8272 (RPP), 2003 WL 22124991, at \*6 (S.D.N.Y. Sept. 15, 2003) (excluding expert's damages calculation under *Daubert*, in part, for failing to perform any independent analysis to validate information provided by the plaintiff).

Lys's report is predicated on a key assumption related to Countrywide's exposure to hypothetical put-back claims, an assumption that ultimately limits the report's reliability and usefulness to the jury. As explained in that report,

> [t]o determine Countrywide's ability to pay the put-back claims BNYM would have pursued in the but-for world, it is necessary to know: [i] the amount of the alleged put-back claims; [ii] when such claims would allegedly have been paid; [iii] other potential claims Countrywide faced at the same time; and [iv] the assets available to Countrywide at the time to pay such claims.

(Lys Report ¶ 23). Because he claimed that Plaintiffs had not yet identified the specific loans that allegedly should have been repurchased or the precise timing of payments on these loans, Lys focused his analysis on his third-listed factor, that is, the other potential claims against Countrywide. In this regard, Lys noted that in addition to the thirteen trusts at issue in this case, Defendant was the trustee for at least 518 other trusts with Countrywide loans. (*Id.* at ¶ 50). According to the report, had Defendant pursued put-back claims with respect to all 531 of these trusts, and had each trust experienced similar losses, then those losses would have totaled over $18.7 billion — a number significantly in excess of Countrywide's $6.1 billion in adjusted assets. (*Id.* at ¶¶ 52, 55). This extrapolation is key to Lys's conclusion that "Countrywide's ability to pay the alleged put-back claims ... is a matter of real economic significance that must be considered in assessing Plaintiffs' damages claims" (*id.* at ¶ 55), because it relies on the assumption that the 531 trusts are similarly situated. Indeed, the report recites, "I understand that the contracts that

Case 1:19-md-02875-RMB-SAK   Document 2108-7   Filed 06/16/22   Page 11 of 11
                                         PageID: 74039
Pacific Life Insurance Company v. Bank of New York Mellon, --- F.Supp.3d ---- (2021)
116 Fed. R. Evid. Serv. 2020

Plaintiffs allege obligated BNYM to pursue put-back claims related to the At-Issue Trusts are similar to BNYM's contracts related to other trusts with Countrywide loans." (*Id.* at ¶ 50). Critically, nowhere was Lys able articulate a valid basis for this assumption.

**\*7**  At his deposition, Lys was asked to explain the basis for his understanding that the at-issue trusts were similar to the not-at-issue trusts. Lys responded in part, "I believe my understanding came from counsel, but as I sit here today, I don't know where it came from." (Lys Dep. 110:16-18). When asked whether he himself looked at the pooling and servicing agreements ("PSAs") in the trusts to determine what was similar and what was not, Lys stated, "I myself did not — it is quite possible that somebody on my team did" (*id.* at 110:22-23), before hastening to add, "I don't recall whether they did or didn't" (*id.* at 111:1). Similarly, when asked, "Whoever it is who conveyed that the contracts were similar as described in [your report], do you know what criteria they used to assess similarity," Lys responded, "I don't. I certainly don't recall." (*Id.* at 111:7-11).

 **[32]**  Lys's testimony makes plain that his report is "not the product of independent analysis." *Arista Recs. LLC*, 608 F. Supp. 2d at 428. Separate and apart from significant concerns about the preparation of the report, Judge Lehrburger and this Court remain appropriately concerned about its factual underpinnings. Not only do these issues render Lys's testimony unreliable, but they also render it unhelpful to the jury. *See id.* at 429 ("An expert who simply repeats the hearsay of the client who retained him, without any independent investigation or analysis, does not assist the trier of fact in understanding matters that require specialized knowledge."). It was thus not clearly erroneous for Judge Lehrburger to find Lys's report to be predicated on an unfounded assumption, and to exclude it on that basis.

## CONCLUSION

For the foregoing reasons, the Court finds that it was not clearly erroneous for Judge Lehrburger to exclude Lys's testimony. Accordingly, Defendant's Rule 72 objections are OVERRULED and DENIED.

SO ORDERED.

**All Citations**

--- F.Supp.3d ----, 2021 WL 5299193, 116 Fed. R. Evid. Serv. 2020

## Footnotes

| | |
|---|---|
| 1 | The facts in this Opinion are drawn from Plaintiffs' complaint ("Complaint" or "Compl." (Dkt. #1)). The Court presumes all well-pleaded allegations in the Complaint as true, as it must at this stage. *See, e.g.*, *Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at \*1 n.1 (S.D.N.Y. June 26, 2015). For ease of reference, the Court will refer to Defendant's memorandum of law in support of its Rule 72 objections as "Def. Br." (Dkt. #218); Plaintiffs' response to Defendant's Rule 72 objections as "Pl. Resp." (Dkt. #224); and Defendant's reply brief in further support of its Rule 72 objections as "Def. Reply" (Dkt. #228). The Court refers to the declarations in support of the parties' briefing and the exhibits attached thereto using the convention "[Name] Decl., Ex. [ ]." |

**End of Document**                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.