UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL CASES | MDL No. 2875<br><br>HON. ROBERT B. KUGLER<br>CIVIL NO. 19-2875 (RBK) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE DEFENSE EXPERT MICHAEL B. BOTTORFF'S NEW AND ALTERED GENERAL CAUSATION OPINIONS**

HOLLIS LAW FIRM
8101 College Blvd, Suite 260
Overland Park, KS 66210
Tel.: 913-385-5400
Fax: 913-385-5402
Brett@HollisLawFirm.com

MARTIN, HARDING & MAZZOTTI, LLP
1 Wall Street, PO Box 15141
Albany, New York, 12212-5141
Tel: 518-862-1200
Fax: 518-389-6697
Ronald.Orlando@1800law1010.com

On the Brief:
C. Brett Vaughn RN, BSN, JD
Ronald B. Orlando, Esq.

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT ...................................................................................................................... 2

    A.  Equating "Minimizing" with "Preventing" is Inconsistent and Imprecise and Results in Opinions that are Scientifically Unreliable ..................................................................... 2

    B.  The New General Causation Opinion on Human DNA Repair Mechanisms Should be Stricken and the Witness Precluded from Testifying to this Opinion .............................. 4

    C.  Inconsistent Expert Findings and Opinions are an "Indicia of Unreliability" in an Expert's Methodology ..................................................................................................... 6

    D.  Defendants' Opposition Brief Cites Inapplicable Case Law Authority ........................... 8

III. CONCLUSION .................................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Bridgestone Sports Co. Ltd. V. Acushnet Co*,
    2007 US Dist. LEXIS 11370 (2007) ............................................................................... 8

*Diawara v. United States*,
    2020 US Dist. LEXIS 197070 (2020) ............................................................................. 8

*Dow Chem. Co. v. Nova Chems. Corp.*,
    2010 US Dist. LEXIS 50101 (2010) ............................................................................... 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (2018) ............................................................................................ 7

*In re Paoli R.R. Yard Pcb Litig.*,
    35 F3d 717 (1994) .......................................................................................................... 7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    585 F. Supp. 2d 568 (2008) ............................................................................................ 8

*United States v. Barrett*,
    117 F.App'x 216 (2004) ................................................................................................. 8

*Vanderbraak v. Alfieri*,
    2005 US Dist. LEXIS 9882 (2005) ................................................................................ 8

**Rules**

Fed. R. Evid. Rule 702 ............................................................................................................. 7

## I.     INTRODUCTION

Defense expert Michael B. Bottorff, Pharm. D. was offered as an expert on general causation via his expert report dated August 2, 2021, (ECF 1712-5, Bottorff General Causation Report). Dr. Bottorff was also offered as a defense expert on class certification, submitting his Class Certification Expert Report on January 12, 2022. (ECF 2043-3, Bottorff Class Cert. Report). The Class Certification Report contains modified and additional general causation opinions as opposed to the General Causation Report, which is improper and in violation of the Court's Order requiring general causation opinions to be provided during that phase of the litigation. Plaintiffs move to strike Dr. Bottorff's new and altered general causation opinions and preclude Dr. Bottorff from offering said opinions at trial. The specific opinions that were new or altered in the January 12, 2022, class certification expert report are as follows:

a.     In his general causation report, Dr. Bottorff opined that NDMA/NDEA in "smaller doses are metabolized in the liver almost completely, *minimizing* exposure to other tissues and organs." (ECF 1712-5, Bottorff General Causation Report at 28:485-486 (emphasis added)). In his subsequent class certification expert report, Dr. Bottorff addressed this same general causation issue by **changing "minimizing" to "preventing"** as follows: "Oral doses at the levels detected in the generic valsartan at issue in this litigation are metabolized in the liver almost completely, *preventing* exposure to other tissues and organs." (ECF 2043-3, Bottorff Class Cert. Report at 48: 761-762 (emphasis added); ECF 2043-4, Bottorff Depo Tr. 19:15-22:3). In parallel, Dr. Bottorff's class certification report also included the general causation opinion that "NDMA/NDEA in valsartan will not reach systemic circulation", which was *absent* in Dr. Bottorff's general causation report. (*Cf.* ECF 2043-3, Bottorff Class Cert. Report at 47:749 with ECF 1712-5, Bottorff General Causation Report at 27; ECF 2043-4, Bottorff Depo Tr. 16:1-17:4).

1

b.      Dr. Bottorff in his class certification expert report also added a new general causation opinion on human DNA repair by stating, "DNA repair mechanisms in humans can be as much as 10x higher than rats, indicating a more active DNA repair in humans compared to rats". (*Cf.* ECF 2043-3, Bottorff Class Cert. Report at 52:830-831 with ECF 1712-5, Bottorff General Causation Report at 62). As set forth in Plaintiffs' motion to strike, Dr. Bottorff admitted at his deposition that this opinion was NOT stated in his general causation report. (ECF 2043-4, Bottorff Depo Tr. 23:17-23).

Dr. Bottorff's class certification expert report is being used to improperly add new general causation opinions as above and to alter his previous opinion on NDMA/NDEA bioavailability in a material way. Plaintiffs request this Court strike each of the above stated opinions as improper at this stage of expert discovery and as an invalid attempt to add new and alter previous general causation opinions. Defendants in their opposition allege these new and altered opinions are simply the same opinions stated with similar language, however that claim fails to stand up to scrutiny and common legal sense.

## II.     ARGUMENT

### A.     Equating "Minimizing" with "Preventing" is Inconsistent and Imprecise and Results in Opinions that are Scientifically Unreliable

There is a material difference between Dr. Bottorff's later opinion that the liver is **"preventing"** NDMA/NDEA from entering the body's general circulation as this infers the liver *stops* this agent altogether versus his earlier opinion that the liver is **"minimizing"** NDMA/NDEA from entering the body's general circulation. (*Cf.* ECF 2043-3, Bottorff Class Cert. Report at 48: 761-762 with ECF 1712-5, Bottorff General Causation report at 28:485-486). "Minimizing" infers lessening, which means some amount of NDMA/NDEA is entering the body's general circulation. When questioned at his deposition about why "minimizing" in his general causation report became

2

"preventing", Dr. Bottorff offered no explanation, simply claiming that he considered minimizing and preventing to mean the same thing. (ECF 2043-4, Bottorff Depo Tr. 19:15-21:23).  Of course, these are not the same thing and he should be limited to the word he chose during the general causation phase.

For a pharmacist such as Dr. Bottorff to equate "minimizing" with "preventing" demonstrates not only an inconsistency in opinions without explanation or justification, but also demonstrates a lack of reliability in his opinions on bioavailability generally.  If Dr. Bottorff believes that there is no material difference between the liver allowing some NDMA/NDEA to reach the body's general circulation versus stopping the agent from entering the general circulation altogether, then there is no scientific rigor or precision to the opinions on bioavailability of NDMA/NDEA by this defense expert.

For Defendants in their opposition to allege these are the same in meaning and simply a language variation of the same opinion is belied by review of the actual reports.[1]  Even the subheading in the general causation report (ECF 1712-5) at p. 26 reads "**a. Metabolic fate of NDMA/NDEA**" while the class certification report (ECF 2043-3) subheading on p. 47 reads "**b. NDMA/NDEA in valsartan will not reach systemic circulation.**"  The subheading changes on this issue reinforce that the class certification general causation opinion on bioavailability of NDMA/NDEA past the liver changed from "minimizing exposure to other tissues and organs" in a material degree to "will not reach systemic circulation." (*Cf.* ECF 1712-5, Bottorff General Causation Report at 28:485-486 with ECF 2043-3, Bottorff Class Cert. Report at 47:749).

---

[1] Defendants concede in their reply brief that Dr. Bottorff's general causation opinion was that the "liver will ***almost completely*** metabolize the level of NDMA contained in the affected valsartan tablets". (Def. Br. at 2 (emphasis added)).

3

In short, Dr. Bottorff's expressed opinion on the ability of NDMA/NDEA to be metabolized by the liver before it reaches the body's general circulation changed from some amount exposing other tissues and organs to no amount exposing other tissues and organs. It is notable that neither opinion on bioavailability contains a cited authority for this specific opinion regardless, if "minimizing" or "preventing". These material changes on a key general causation opinion in the class certification report should be stricken by the Court and this expert precluded from offering an opinion that NDMA/NDEA is prevented by the liver from entering the general circulation of the body to expose other tissues and organs and on bioavailability generally.

**B.    The New General Causation Opinion on Human DNA Repair Mechanisms Should be Stricken and the Witness Precluded from Testifying to this Opinion**

As Dr. Bottorff admitted during deposition, his class certification report included the general causation opinion that "DNA repair mechanisms in humans can be as much as 10x higher than rats," but that opinion is *absent* from his general causation expert report. (ECF 2043-4, Bottorff Depo Tr. 23:17-23; ECF 2043-3, Bottorff Class Cert. Report at 52:830-831). This opinion is thus untimely and an improper attempt to supplement his general causation report opinions via the class certification expert report. This opinion has no purpose in this class certification expert report other than to add to a general causation opinion that was not provided in the general causation report.

Specifically adding a previously absent opinion that human DNA repair is 10x higher than rats is clearly more than the so-called "reasonable synthesis and/or elaboration" of this expert's original opinions in his general causation report, as alleged by Defendants in their opposition. (Def. Br. at 2, 8). Dr. Bottorff only once vaguely mentioned DNA repair[2] in passing in his general

---

[2] Dr. Bottorff, a pharmacist, was and still is unqualified to discuss DNA repair. This issue would have been attacked during general causation if the opinion had been offered.

4


causation report while discussing NDMA metabolism, noting that the liver's capacity to metabolize NDMA "*may* be due to the presence *in the liver* of a carcinogenic "surveillance" system that removes $O^6$-methyl-guanine from DNA prior to carcinogenesis."[3] (ECF 1712-5, Bottorff General Causation Report at 33:570-572 (emphasis added)). Dr. Bottorff was questioned on this line of his expert report and repeatedly disclaimed opinions on DNA repair (protective mechanisms) and deferred to a toxicologist and oncologist, admitting this was not something he was addressing:



(ECF 1712-3, Bottorff Depo Tr. 221:5-15, 224:15-225:12 (emphasis added)). Furthermore, Defense counsel repeatedly obstructed when Plaintiffs attempted to further explore Dr. Bottorff's DNA related opinions:



---

[3] Metabolism of NDMA and DNA repair are two completely unrelated processes.



    Mr. Vaughn: *I'd appreciate if you quit laughing, Counsel*.

    Ms. Thompson: *Sorry. This is a really funny <u>line</u> of questioning.*

(ECF 1712-3, Bottorff Depo Tr. 118:22-119:21 (emphasis added)).[4]

    Dr. Bottorff's new and previously disclaimed opinion than human DNA repair (not even specific to the liver) is 10x higher than in rats is not a reasonable synthesis or elaboration of his prior opinion – and in fact the Court's Order setting deadlines for general causation opinions did not provide for later reports to provide further general causation opinions.  Dr. Bottorff's new opinion on the magnitude that humans are able to repair their DNA, an opinion he previously disclaimed, is procedurally improper and untimely.

    C.   **Inconsistent Expert Findings and Opinions are an "Indicia of Unreliability" in an Expert's Methodology**

    Dr. Bottorff's altered general causation opinions on the bioavailability of NDMA/NDEA in contaminated valsartan from "minimized" to "prevented" by the liver from exposing other tissues and organs in the body is not an "elaboration" but a total change in degree of possible exposure.  Altering his opinion from the liver "minimizing" to "preventing" systemic exposure of NDMA/NDEA creates an inconsistent finding and opinion by Dr. Bottorff on the bioavailability of the same agents, in the same drug, via the same route of administration, and with the same

---

[4] While not apparent on the transcript, the video of Dr. Bottorff's deposition reveals that Defense counsel audibly laughed at length following every question in this line of questioning.

information and research available to the witness. (*See* ECF 2043-4, Bottorff Depo Tr. 21:12-23 testifying "I – I sat down and wrote it de novo with the ***same knowledge base and information***." (emphasis added)).

If, as Dr. Bottorff explained at his deposition, he considers "minimizing" and "preventing" to conceptually mean the same thing, then Dr. Bottorff's analysis and methodology lack scientific rigor. (ECF 2043-4, Bottorff Depo Tr. 21:7-14).[5] Dr. Bottorff's dueling opinions are based on his professed subjective belief instead of good grounds, as he's given competing answers as to the bioavailability of orally consumed NDMA/NDEA without explanation or new supporting materials.

Inconsistent findings and opinions by the same expert on the same issue, leading to different results and conclusions to be drawn are an "indicia of unreliability" in a *Daubert* evaluation. Unreliable opinions and testimony are often excluded by district courts in their *Daubert* analysis when faced with inexplicably inconsistent findings and opinions by an expert. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430 (2018) at 468.

Inconsistent opinions are not sufficiently grounded to permit the trier of fact to reach accurate results in this matter, as this witness is saying that NDMA/NDEA may expose other tissues and organs, while also saying that the agent is prevented from such exposure. If an expert cannot assist the trier of fact to reach accurate results, the testimony and opinions are unreliable under Fed. R. Evid. Rule 702. *In re Paoli R.R. Yard Pcb Litig.*, 35 F3d 717 (1994) FN12.

---

[5] Defendants misleading cite a definition to support their argument that in the context of reducing risk, "minimize" and "prevent" mean the same thing. The definition actually equates "minimize" to "prevent it from ***increasing beyond that level***." (Def. Br. at 6 (emphasis added)). Dr. Bottorff equates "minimizing" to preventing any level at all, which their definition does not support.

### D. Defendants' Opposition Brief Cites Inapplicable Case Law Authority

The Defendants' opposition cites case law that is not suited to this *Daubert* analysis or to the actual relief sought by Plaintiffs in this motion.

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.,* 585 F. Supp. 2d 568 (2008) is a patent infringement case involving a post-verdict motion for judgment as a matter of law applying a standard of whether the trial evidence reasonably supported the verdict. The cited language for similarity of expert's testimony versus expert report is not the issue presented here. *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 US Dist. LEXIS 11370 (2007) involved patent law and whether there was a violation of a discovery court order and if exclusion of additional patent references should be granted by the Court. *United States v. Barrett*, 117 F. App'x 216 (2004) was a criminal appeal with an alleged violation of Fed. R. Crim. P. 16 and whether challenged testimony by a fire marshal was the same as identified in the expert report. *Diawara v. United States*, 2020 US Dist. LEXIS 197070 (2020) involved a motion *in limine* analysis, not *Daubert,* in which the Court deferred on a motion to exclude an expert opinion as exceeding the scope of the report, until trial. *Vanderbraak v. Alfieri*, 2005 US Dist. LEXIS 9882 (2005) was a medical malpractice action in which plaintiffs sought to read a defendant expert's deposition transcript into the record. *Dow Chem. Co. v. Nova Chems. Corp.,* 2010 US Dist. LEXIS 50101 (2010) was a patent infringement case applying patent case law principles. These cases don't speak to the issue here, including the Court's Orders setting the timing for service of general causation opinions.

### III. CONCLUSION

For all of the above reasons as well as those set forth in the Motion to Strike, Dr. Bottorff's new and altered general causation opinions challenged herein should be stricken and this expert witness should be precluded from offering such opinions at trial.

Dated:   June 16, 2022

                                       Respectfully submitted,

                                       By: /s/ C. Brett Vaughn
                                       C. Brett Vaughn RN, BSN, JD
                                       PEC COUNSEL FOR THE PLAINTIFFS
                                       Hollis Law Firm
                                       8101 College Blvd, Suite 260
                                       Overland Park, KS 66210
                                       Phone: 913-385-5400
                                       Fax: 913-385-5402
                                       Email: Brett@HollisLawFirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of June 2022, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system. In addition, I certify that unredacted copies of foregoing document will be served contemporaneous to filing via email on the Court, Special Master, and the Defense Executive Committee at DECValsartan@btlaw.com.

/s/ C. Brett Vaughn
C. Brett Vaughn