

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA 15219
412.263.2000   FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.: 412.263.1816
DIRECT FAX NO: 412.263.4246
FILE NO.: MYLAN-112578
EMAIL: cct@pietragallo.com

July 26, 2022

**Via ECF**

| | |
|---|---|
| The Hon. Robert B. Kugler | Special Master the Hon. Thomas Vanaskie |
| United States District Judge | Stevens & Lee |
| USDC, District of New Jersey | 1500 Market Street, East Tower, 18th Floor |
| Mitchell H. Cohen Building & U.S. Courthouse | Philadelphia, PA 19103 |
| 4th & Cooper Streets, Room 1050 | |
| Camden, NJ 08101 | |

      Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
              USDC, District of New Jersey, No. 1:19-md-2875-RBK-SAK

Dear Judge Kugler and Judge Vanaskie:

I write on behalf of the Defendants' Executive Committee to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on Thursday, July 28, 2022. Defendants do not anticipate that any of the items on the agenda will require confidentiality.

1. **Case Management**

Plaintiffs have taken the position by letter to Defendants' counsel dated July 20, 2022, that the first trial in this matter, and consequently the first round of dispositive motions and merits experts reports, should be a class-wide trial of the claims of the consumer economic loss groups identified as ZHPTORTEVEW1 (the "Express Warranty Consumer Group") and ZHPTORTEVIW1 (the "Implied Warranty Consumer Group").[1] Defendants ZHP, Torrent, and

---

[1] The at-issue Defendants under Plaintiffs' proposal would be limited to ZHP, Torrent, and Teva. All Defendants understand and ask the Court to confirm that the deadlines in CMO 28 apply only to the parties and claims specifically at issue in the first trial in this matter, and not to all claims and parties in all cases in the MDL. All Defendants expressly reserve the right to disclose supplemental experts and/or to file dispositive motions at the appropriate time.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 2

Teva disagree with Plaintiffs' proposal because it is premature and contrary to controlling law. It is further inconsistent with the Court's prior statements regarding case management during the next phase of this litigation, in which the Court clearly said it did not want "piecemeal" proceedings and advised the parties to abandon "this obsessive focus on these class action motions" and instead to concentrate on "the third-party payor economic loss cases[.]" (June 1, 2022 Tr. at 14:1-6, 22:5-6).

Plaintiffs' motion for class certification remains pending. Plaintiffs' proposal nevertheless seeks to proceed to case-specific discovery, dispositive motion practice, and trial on the Express Warranty and Implied Warranty Consumer Groups, which together comprise 12 named Plaintiffs from 10 states purporting to represent 48 consumer subclasses from 28 jurisdictions. Plaintiffs' proposal contemplates a single jury trial on all these consumers' and subclasses' warranty claims against all ZHP, Torrent, and Teva Defendants. Plaintiffs' proposal is legally impermissible and practically unworkable for multiple reasons.

First, because the Court has not yet ruled on Plaintiffs' pending motion to certify the consumer classes, moving forward with dispositive motion practice and trial violates the rule against one-way intervention, which prohibits a compulsory trial before class certification and strongly disfavors summary judgment rulings prior to the determination of class certification. *See In re Citizens Bank*, 15 F.4th 607, 618-19 (3d Cir. 2021) ("We have consistently spurned a *forced* trial-before-certification procedure[.] * * * [N[o Court of Appeal has approved foisting trial-before-certification on an unwilling Rule 23(b)(3) defendant.") (emphasis in original); *Koehler v. USAA Cas. Ins. Co.*, No. 19-cv-715, 2019 U.S. Dist. LEXIS 158154, at *12 (E.D. Pa. Sep. 16, 2019) (denying plaintiff's pre-certification motion for partial summary judgment, stating that

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 3

"Rule 23 'still disfavor[s] one-way intervention' and counsels against a court 'rul[ing] on motions that encroach on the merits of a final decision before class certification'") (citation omitted). *See also Knepper v. Rite Aid Corp.*, 674 F.3d 349, 255 & n.10 (3d Cir. 2012) (discussing abolition of one-way intervention by 1966 amendments to Rule 23). Meaningful substantive action on any proposed consumer class must therefore await this Court's final decision on Plaintiffs' motion for class certification. Plaintiffs' proposal ignores the possibility that the Court could deny class certification, as well as the likelihood of a Rule 23(f) petition in response to the Court's final ruling on class certification in the event class certification is granted. Proceeding to discovery, summary judgment, and a merits trial before these critical steps are completed invites error and would not materially advance the ultimate termination of any parts of this litigation.

Though Plaintiffs' counsel has disclaimed any intention to complete dispositive motions or trial prior to the Court's ruling on class certification, there are obvious one-way intervention risks with proceeding to discovery, expert discovery, and merits briefing before this Court has decided whether any class is to be certified, and, if so, the applicable class definition(s), class claim(s), issues, and defenses, the appointment of class representatives and counsel, and the completion of class notice and opt-outs. *See* Fed. R. Civ. P. 23(c). Absent a ruling, the parties can at best only conjecture as to whether the Express Warranty or Implied Warranty Consumer Groups, or both, or some subset of either group, may eventually be certified as a class or classes, what claims they will be permitted to pursue, what issues or defenses will be at issue, who will represent the class or classes, who will be included in the class or classes, and who may opt out. "The rule against one-way intervention is implicated whenever a plaintiff seeks a ruling on an issue relevant to the merits of the class claims." *Koehler*, 2019 U.S. Dist. LEXIS 158154, at *14-15. Here,

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 4

proceeding as Plaintiffs propose creates, on the one hand, a risk of entirely wasted effort in the event the Court denies class certification or grants a more limited certification than Plaintiffs contemplate, or in the event the Third Circuit rejects Plaintiffs' proposed classes through the Rule 23(f) review process, and, on the other hand, a risk of prejudicial one-way intervention through merits rulings prior to class certification.

Second, Plaintiffs' plan calls for improper piecemeal proceedings. Plaintiffs propose splitting named consumer Plaintiffs' claims against the same defendants into multiple trials, requiring piecemeal consideration of these claims by different juries. That is not just undesirable, but impermissible. Each of the named Plaintiffs in the Express Warranty and Implied Warranty Consumer Groups is also a putative class representative of no fewer than 5 and as many as 16 subclasses. Plaintiffs' proposal suggests at most hearing their express and implied warranty claims (and perhaps their consumer protection claims) in one trial, while leaving all other claims—including additional claims against the *same* defendants, such as common law fraud—to be heard later. Though claims against different defendant groups can and should be severed, Plaintiffs cannot as a matter of law split up multiple claims against the same defendant arising out of the same events into separate trials.

The flaw in Plaintiffs' proposal is most apparent with respect to the two named Plaintiffs from New Jersey. New Jersey's entire controversy doctrine prohibits separating these Plaintiffs' claims into piecemeal proceedings. "Under the entire controversy doctrine, a party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). The doctrine is "an extremely robust claim preclusion device that requires adversaries to join all

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 5

possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016) (quoting *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132 (3d Cir. 1999)). It "requires a party to bring in one action all affirmative claims that it might have against another party or be forever barred from bringing a subsequent action involving the same underlying facts. The central consideration is whether the claims arise from related facts or the same transaction or series of transactions." *Opdycke v. Stout*, 233 Fed. Appx. 125, 129 (3d Cir. 2007) (internal citations and quotation marks omitted); *see also Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015). Its purposes include "the need for complete and final disposition through the avoidance of piecemeal decisions[.]" *Ditrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995). Federal courts are "bound" to follow the entire controversy doctrine as substantive state law. *Litgo N.J., Inc. v. Comm'r N.J. Dep't of Envtl. Prot.*, 725 F.3d 369, 400 n.2 (3d Cir. 2013) (quoting *Rycoline Products, Inc. v. C W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997)).

For all Plaintiffs, moreover, federal claim preclusion principles similarly disallow splitting up named Plaintiffs' claims among multiple classes and trials based on the same underlying events. "Claim preclusion bars suit when three elements are present: '(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Davis v. Fargo*, 824 F.3d 333, 341-42 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). "In evaluating whether those elements exist, we do not proceed mechanically, 'but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources.'" *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)). "A determination of whether two lawsuits are based

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 6

on the same cause of action 'turn[s] on the essential similarity of the underlying events giving rise to the various legal claims.'" *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999) (quoting *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992)). Plaintiffs' proposal violates these principles by dividing up individual named Plaintiffs' claims among multiple groupings, multiple trials, and multiple judgments.

Third, Plaintiffs' proposal highlights the serious deficiencies in their motion for class certification and in any trial plan that contemplates trying the claims of dozens of Plaintiffs, subclasses, and jurisdictions together in a single trial before one jury. As detailed in Defendants' Opposition to Plaintiffs' class certification motion and accompanying Appendices, Plaintiffs' proposal simply ignores innumerable legal and factual variances among the state laws and individual named Plaintiffs. Among other deficiencies, Plaintiffs' groupings ignore material state-law variations with respect to privity, notice, reliance, merchantability, and statutes of limitations. Plaintiffs' groupings also ignore individual factual and legal variations with respect to existence of the warranty, basis of the bargain, existence or manifestation of defect in each Plaintiff's VCDs, reliance, causation, injury, and notice. (*See* Dkt. 2008 to 2008-11). The variances with respect to the consumer protection claims are, if anything, even more pronounced. (*See id.*). Attempting to advance towards trial on these claims prior to the Court's ruling on class certification, and any subsequent Rule 23(f) petition, thus invites a disordered proceeding.

Even aside from the many insuperable obstacles these variations raise with respect to Plaintiffs' request for class certification, Plaintiffs' proposal is also unworkable as a stand-alone trial plan. It would require this Court, in the immediate wake of whatever it may decide on class certification, to confront a multi-Plaintiff, multi-state set of motions for summary judgment

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 7

involving up to 28 states' distinct laws. The motions for summary judgment would, in turn, be followed by the possibility of a multi-Plaintiff, multi-state trial. Each state has its own individualized jury instructions and verdict forms for each claim. (*See* Dkt. 2008-12 to 2008-15). Thus, each of Plaintiffs' proposed trials would require a jury to be instructed on the differing laws of up to 28 jurisdictions, and to make individualized determinations of liability as to each named Plaintiff's claims against each Defendant based on a different state's laws and instructions, with further determinations as to any unrepresented states the Court permits to be presented to the jury. These obstacles render the cases unsuitable for class certification at all, but even if they did not, Plaintiffs' proposal certainly runs contrary to the Court's expressed preference for a "relatively straightforward" proceeding, as discussed below.

Fourth, this Court lacks personal jurisdiction over the claims of multiple named Plaintiffs against multiple Defendants in the two proposed groupings. Plaintiffs Charlie Johnston, Brian Wineinger, Glenda Cooper, Marlin Anderson, Jennifer Johnson, Billy Joe Bruner, Lawrence Semmel, Cheryl Mullins, Miranda Dudley, and Mary McLean all reside outside of New Jersey, purchased their VCDs outside of New Jersey, and claim no specific jurisdictional tie to New Jersey. (*See* Dkt. 2008-16 at O-1 to O-2). Defendants Teva Pharmaceutical Industries Ltd., Torrent Pharmaceuticals, Ltd., and Zhejiang Huahai Pharmaceutical Co., Ltd., are all foreign entities with no jurisdictional connection to New Jersey. Consequently, Plaintiffs' proposal would require the Court to sever the claims of all but two named Plaintiffs against the three foreign Defendants from the case.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 8

Fifth, because Defendants have not granted *Lexecon* waivers, the Court is barred from assigning the claims of out-of-state Plaintiffs against foreign Defendants to itself for trial. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998).

Because it is not legally permissible or feasible for the parties to work up claims tied to Plaintiffs' proposed class actions prior to a final decision on class certification, Defendants previously proposed that the next phase of case management should focus on the personal injury bellwethers. While Defendants understand that the Court is not inclined to proceed in this manner, Plaintiffs' proposal, which focuses on the consumer class action cases, is also at odds with the Court's prior direction. Specifically, the Court has previously expressed its preference for a single-plaintiff TPP trial as the first economic loss case to proceed in this matter. (*See* June 1, 2022 Tr. at 14:1-6 ("I'm not sure why there's such this obsessive focus on these class action motions. Those cases, the third-party payor economic loss cases, they're going to continue whether there's a class or not. I mean, there's enough money having been spent by some of those plaintiffs that they're going to continue with the litigation either on their own or as part of a class.")). The Court also expressed its view that a trial on TPP claims could be conducted, and dispositive motions could be considered without improperly isolating the issue of liability-creating conduct from the causation and damages. (*Id*. at 18:18-20:14 (discussing *Kohn v. American Housing Found., Inc.*, 178 F.R.D. 536, 542 (D. Color. 1998); *see also id*. at 26:9-25 (similar)). Indeed, the Court specifically stated, "I agree that we don't want to piecemeal these things." (*Id*. at 22:5-6).[2]  Yet, the approach that

---

[2] Based on the Court's stated preference for a single-plaintiff TPP trial, coupled with the entry of CMO 28 (Dkt. 2131), which contains deadlines beginning in September for merits experts and dispositive motions, Defendants served supplemental fact discovery requests on the two TPP Plaintiffs who have previously been subject to initial Rule 23 discovery—Maine Automobile Dealers Association, Inc. Insurance Trust ("MADA") or MSP Recover Claims, Series LLC

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 9

Plaintiffs have proposed would inevitably result in piecemeal rulings. In light of the foregoing, Defendants ZHP, Torrent, and Teva respectfully request the Court reject Plaintiffs' proposal to designate the claims of the Express Warranty and Implied Warranty Consumer Groups as the first claims to be tried, and instruct the parties to develop a proposal consistent with the law and this Court's expectations.

### 2. Dismissal of CVS from the Medical Monitoring Complaint

Following additional attempts to meet and confer with Plaintiffs, CVS again seeks relief from the Court in its effort to confer with Plaintiffs regarding the dismissal of CVS from the Consolidated Third Amended Medical Monitoring Complaint (Dkt. 1709) (the "Medical Monitoring Complaint" or "Complaint"). Although there remains no Medical Monitoring Plaintiff who actually pleads claims against CVS in the Complaint, Plaintiffs now refuse to dismiss CVS from that Complaint on the grounds that another Plaintiff—one who did not actually identify or plead CVS as a target defendant in that Complaint—nevertheless provides a basis for standing against CVS through her unasserted claims. For the reasons set forth below, CVS seeks confirmation from the Court that (i) Plaintiffs' late reliance on these new claims is improper, and (ii) dismissal from that Complaint.

#### A. No Medical Monitoring Plaintiff Currently Pleads a Claim Against CVS

Although there previously were four putative class representatives who pleaded claims against CVS in the Medical Monitoring Complaint, none of those Plaintiffs' claims against CVS

---

("MSPRC"). To the extent the Court orders the parties to proceed with a single-plaintiff TPP case involving one of these Plaintiffs in their individual capacity, this discovery will be necessary to prepare that case for dispositive motions and trial.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 10

remain. Plaintiffs Celeste Daring and Richard O'Neill dismissed their claims in full on February 14, 2022. (Dkts. 1913, 1914.)

Plaintiff Sylvia Cotton, a Texas resident, previously asserted medical monitoring and implied warranty claims against various pharmacy defendants, but those claims were dismissed by the Court under Texas law in its prior rulings on Defendants' motions to dismiss. Although Plaintiffs initially refused to concede that Ms. Cotton's claims were no longer viable under the Court's prior orders (*see* March 11, 2022 Stanoch Email, attached as Ex. A), citing their then-pending objections (Dkt. 1694) to Judge Vanaskie's October 7, 2021 Order denying leave to assert Texas implied warranty claims (Dkt. 1614 at 26-27), the Court's April 5, 2022 decision (Dkt. 1994 at 23) overruling those objections resolved all outstanding issues as to Ms. Cotton, who no longer pleads a viable claim against CVS or any other pharmacy under Texas law.

Finally, and most recently, on June 1, 2022, CVS sought the Court's guidance regarding Plaintiffs' refusal to dismiss claims asserted by Plaintiff Linda Silberman against CVS, despite Plaintiffs' agreeing to do so in their class certification reply, on grounds that Ms. Silberman had not actually filled her prescriptions at a CVS store, and that CVS was not liable for purchases made from another pharmacy, unaffiliated with CVS. (*See* June 1 Hr'g Tr. 35:24 – 38:21.) After further back and forth with Plaintiffs' counsel, Ms. Silberman agreed to dismiss her claims against CVS, and did so on June 6, 2022. (Dkt. 2095.)

Plaintiffs do not have any putative class representatives who have specifically identified and traced product to CVS in the Medical Monitoring Complaint.

**B. Plaintiffs' New Basis for Refusing to Dismiss CVS from the Medical Monitoring Complaint**

    **i.    Plaintiff Sarah Zehr's Newly Identified Claims Against CVS**

Concurrent with and following the dismissal of Ms. Silberman's claims against CVS, CVS approached Plaintiffs seeking a dismissal in full of CVS from the Medical Monitoring Complaint, on the grounds that there remains no putative class representative who pleads and specifically traces his or her purchase of valsartan to CVS in the Complaint. (*See* June 13, 2022 Kapke email, attached as Ex. B.) After some prodding, Plaintiffs' counsel refused, claiming now—for the first time since CVS raised this issue months ago—that Plaintiffs are now relying on a *new, different* claimant to assert claims against CVS.

Specifically, Plaintiffs now claim that they can establish standing and can maintain CVS as a defendant by relying on the claims of Sarah Zehr, a Florida resident who alleges in the Medical Monitoring Complaint that she consumed a Lifetime Cumulative Threshold of valsartan manufactured by ZHP, with regulatory approval facilitated by Aurobindo, as distributed by McKesson, and filled at Walmart. (Medical Monitoring Compl., ¶ 13.) Although records produced by Zehr reflect that she also filled a single, 18-day prescription of Hetero-manufactured valsartan at CVS, Plaintiffs' pleadings have *never* identified CVS (or Hetero, for that matter) as a defendant against whom Zehr was asserting claims. No Master Complaint (proposed or filed) has never referenced CVS as a seller or distributor of Zehr's at-issue valsartan, and no prior briefing submitted by Plaintiffs, whether in support of Plaintiffs' oppositions to prior motions to dismiss or Plaintiffs' motion for class certification, has ever pleaded that Zehr was attempting to serve as a putative representative for claimants who purchased from CVS. Indeed, Zehr was deposed on May 20, 2021 and repeatedly discussed her 18-day fill at CVS. Despite this, in their next round of amendments to the pleadings, Plaintiffs solely identified ZHP, Aurobindo, Walmart, and McKesson in their November 2021 medical monitoring complaint paragraph relating to Zehr.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 12

(Medical Monitoring Compl., ¶ 13; *see also id.* at ¶ 76 (failing to mention Zehr in the list of four plaintiffs to whom CVS "made sales.".) It was only after the dismissal of Silberman's medical monitoring claims against CVS, that Plaintiffs ever articulated this new basis for keeping CVS in the Medical Monitoring Complaint: that Zehr was, suddenly, someone who was asserting a medical monitoring claim against CVS.

### ii.   Prejudicial Effect of Plaintiffs' Tactic

CVS has attempted to confer with Plaintiffs about the lack of notice afforded by their new position. In response, Plaintiffs have argued that the generic "catch all" language they have added in their complaint, which states that they do not waive claims not raised in the Master Medical Monitoring Complaint (Medical Monitoring Compl., n.1), or that individual Plaintiffs consumed "one or more of Defendants' VCDs" (*id.* at, *e.g.*, ¶¶ 12-17, 23) is somehow sufficient to plead standing against CVS and to put CVS on notice that Zehr was specifically bringing medical monitoring claims against it. But Plaintiffs' new justification for refusing to dismiss CVS from the Medical Monitoring Complaint is improper in at least two ways.

*First*, to establish standing as to CVS, Plaintiffs must identify CVS *in the operative complaint*. Generic references to unnamed, but so-called "preserved" claims are insufficient. If Plaintiffs intended to rely on Zehr to assert claims against CVS, they should have pleaded those claims in the actual complaint. But despite multiple revisions to the pleadings, and despite CVS's repeated attempts to confer with Plaintiffs about the lack of plaintiffs with actual claims against CVS in the Medical Monitoring Complaint, Plaintiffs have never done so.[3]

---

[3] CVS would oppose any attempt by Plaintiffs to seek leave to amend their Complaint to assert claims against CVS now, at this late stage in the proceedings, given the concerns regarding prejudice set forth herein.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 13

*Second*, and relatedly, given the lack of any real notice in the pleadings, CVS and other defendants implicated by Plaintiffs' tactics would be highly prejudiced by a late amendment of the medical monitoring complaint and late introduction of Zehr as a potential plaintiff with claims against CVS. Expert discovery on issues of class certification was extensive and has now closed, and the parties have already briefed class certification of the Medical Monitoring Complaint. With respect to Zehr, in particular, had CVS known that Zehr was asserting claims against it, CVS would have raised a number of issues in expert discovery and in opposing class certification, including that Zehr's use of the Hetero valsartan she filled at CVS was *de minimis* compared to the other valsartan she consumed, making her an inadequate class representative as to CVS. CVS also would have had the opportunity to ask Plaintiffs' medical monitoring experts questions about Zehr's usage relative to the other fills in her medical history. Plaintiffs' failure to plead actual claims by Zehr against CVS in the Master Medical Monitoring Complaint, however, misled CVS to believe there was no need for it to do so. CVS would now be unfairly and extremely prejudiced by Plaintiffs being permitted to assert new, unpleaded claims against it in a last ditch attempt to avoid dismissing CVS from the Medical Monitoring Complaint.

### C. CVS Should be Dismissed from the Medical Monitoring Complaint

In view of the foregoing, CVS requests the Court's guidance on resolving this issue. This litigation has been pending for years, and the work-up of the Medical Monitoring Complaint has been extensive. At a certain point, now long past, defendants such as CVS have a right to know which class representatives are asserting claims against them. The Master Medical Monitoring Complaint is the vehicle for providing that notice, and does not do so here, with respect to Ms. Zehr.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 14

Accordingly, CVS submits that Plaintiffs should be ordered to dismiss CVS from the Medical Monitoring Complaint in full. Alternatively, at minimum, CVS requests that the Court issue an Order to Show Cause why Plaintiffs' claims against CVS in the Medical Monitoring Complaint should not be dismissed for lack of standing, or that it grant CVS leave to file a motion to dismiss on this issue.

### 3. Plaintiff Fact Sheet Deficiencies and Orders to Show Cause

**Cases Addressed at the June 29, 2022 Case Management Conference:**

The Court issued 12 show cause orders returnable at the July 28, 2022 Case Management Conference:

1. *Ulysses Payne v. Camber et al.* – 21-cv-15129
2. *Donna King v. Doe et al.* – 20-cv-8814
3. *Gail Callahan v. Aurobindo Pharm, Ltd., et al.* – 21-cv-20203
4. *Margaret Tolley v. Mylan Laboratories et al.* – 21-cv-10130
5. *Katherine Peyton v. Mylan et al.* – 21-cv-09063
6. *Michael Shemes v. Aurobindo et al.* – 21-cv-20204
7. *Leona Branch v. Mylan, et al.* – 22-cv-582
8. *Vincent Anderson v. ZHP, et al.* – 22-cv-449
9. *Richard Vindigni v. Prinston, et al.* – 21-cv-2361
10. *Sheldon Walker v. Aurobindo Pharma, et al.* – 22-cv-1372
11. *Ernestine Williams v. Mylan Laboratories Ltd., et al.* – 21-cv-6946
12. *Marilyn White v. Solco, et al.* – 22-cv-1251

The issues in the *Payne*, *Callahan*, *Anderson*, *Walker*, *Williams*, and *White* matters are resolved, and the show cause orders may be withdrawn.

The issues in the *Shemes*, *King*, *Tolley, Peyton*, *Branch*, and *Vindigni* matters remain unresolved, but the parties are working towards a resolution and request a one-month extension of the order to show cause until the August 31 Case Management Conference.

Accordingly, Defendants do not request dismissal of any cases at this time.

**Second Listing Cases – Order to Show Cause Requested:**

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 15

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these cases were previously listed on the agenda for a prior CMC. This list was provided to Plaintiffs' leadership on July 19, 2022, and a global meet and confer was held on July 22, 2022. Defendants have also been available for further discussion as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why these cases should not be dismissed.

Defense counsel will be prepared to address the individual issues with respect to each of these cases, to the extent necessary, during the July 28, 2022 Case Management Conference:

|    | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|----|-----------|------------------|----------|--------------|-----------------|
| 1. | Estate of Robert Cooper v. ZHP, et al. | 22-cv-1635 | Levin Papantonio | Need medical expenses | 6/7/22 |
| 2. | Raymond Dais v. Mylan et al. | 22-cv-00518 | Dennis F. O'Brien PA | Please provide undated authorizations; please provide complete medical expenses | 6/15/22 |

| | | | | | |
|---|---|---|---|---|---|
| 3. | Elie Greene v. Aurobindo Pharma USA, Inc., et al. | 21-cv-3214 | Serious Injury Law Group | No records or authorizations, sections I.E. & X. are in conflict regarding who completed PFS, plaintiff's purported signature on declaration postdates death by more than a year | 5/9/22 |
| 4. | Majorie Smith, as Administrator of E.O. Erskine Smith v. Camber Pharmaceuticals, Inc., et al. | 21-cv-12740 | Serious Injury Law Group | III.B.5.a – Still have not produced photographs of the referenced Valsartan container/packaging that is in Plaintiff's possession.<br><br>XI.A.1 – Failed to produce an individual signature page for each of the health care authorizations produced with the Second Amended PFS. Also, no health care authorizations were produced for: Maria Bennett, MD; CVS Pharmacy; Urology Centers of Alabama; Brookwood Health; Kirkland Clinic; Birmingham Pain & Management & Rehab; or Dr. Joelle Hamilton.<br><br>XI.A.5 – One disability records authorization was produced for an unspecified entity. Please produce an authorization for respective entity.<br><br>XI.A.6 – No signature page provide for the produced | 4/19/22 |

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 17

| | | | | | |
|---|---|---|---|---|---|
| | | | | insurance records authorization for AARP.<br><br>XI.A.7 – No mental health records was produced for Western Mental Health Clinic.<br><br>XI.B.9 – Plaintiff identified that there is a Valsartan container/packaging in Plaintiff's possession in Section III.B.5 of the PFS, however no photographs of said Valsartan container/packaging were produced.<br><br>XI.B.18 – Still no billing records were produced. XII – No executed declaration produced with Second Amended PFS. | |
| 5. | William Davis, as Administrator of E.O. Leila Davis v. Camber Pharmaceuticals, et al. | 21-cv-10767 | Serious Injury Law Group | I.E.4 – Still failed to produced supporting documentation demonstrating appointment of answering Plaintiff's authority to act as a representative on behalf of the deceased Plaintiff with the Second Amended PFS.<br><br>II.D.4.c-II.D.4.d – Still failed to provide approximate dates of exposure in the Third Amended PFS for: Plaintiff's diet including red and/or processed meats, or Plaintiff's diet including smoked foods, salted meat | 4/19/22 |

|  |  |  |  | and fish, and/or pickled vegetables.<br><br>III.A.1.b – Still failed to identify how decedent Plaintiff managed or treated her hypertension after discontinuing usage of Valsartan products prior to the date she passed away (4/5/2019).<br><br>XI.A.1 – Failed to produce an individual signature page for each of the health care authorizations produced with the Second Amended PFS. Also, no health care authorizations were produced for: Wynne Crawford, MD; Walmart Pharmacy; Palliative and Comfort Care Unit; Montgomery Cancer Center; Scott McDaniel; Capital City Gastroenterology, P.C.; Pamela Tuck Family Practice; UAB Medicine; or UAB Liver Tumor Clinic.<br><br>XI.A.7 – Still failed to produce any insurance records authorizations with the Amended PFS. |  |
|---|---|---|---|---|---|

**First Listing Cases – Remaining Core Deficiencies:**

The following Plaintiff Fact Sheets contain core deficiencies which remain unresolved. This list was provided to Plaintiff leadership on July 21, 2022, and a global meet and confer was held on July 22, 2022. Defendants have also been available for further discussion as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 19

requesting orders to show cause with respect to any of the below cases at this time and will continue

to meet and confer to resolve these deficiencies.

|    | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|----|-----------|------------------|----------|--------------|-----------------|
| 1. | Estate of Connie Keep v. Aurobindo Pharma, et al. | 22-cv-02461 | Ogborn Mihm LLP | Need to amend authorizations; need billing records; need prescription info in Section VI. | 7/6/22 |
| 2. | Sandra Russell v. ZHP, et al. | 22-cv-2389 | Levin Papantonio | Need billing records; identify dates of colon polyps; identify dates of Diovan use | 7/6/22 |
| 3. | Debra Stiles v. Aurobindo, et al. | 22-cv-01987 | Pittman, Dutton, Hellums, Bradley & Mann P.C. | Missing medical expense records | 6/22/22 |
| 4. | Jim Smith v. ZHP, et al. | 22-cv-01245 | Hollis Law | No PFS Filed | PFS DUE - 7/2/22 |
| 5. | Frank Trimboli v. Torrent, et al. | 20-cv-01601 | Carlson Law | No PFS Filed | PFS DUE - 7/4/22 |
| 6. | Audrey Dequeant v. Aurobindo Pharma, et al. | 22-cv-2779 | Morgan & Morgan | No PFS Filed | PFS DUE - 7/12/22 |
| 7. | Estate of Frances Cain v. ZHP et al. | 22-cv-02835 | Levin Papantonio | No PFS Filed | PFS DUE - 7/13/22 |
| 8. | Walid Elganam v. ZHP et al. | 22-cv-02873 | Carlson Law Firm | No PFS Filed | PFS DUE - 7/17/22 |

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
July 26, 2022
Page 20

| | | | | | |
|---|---|---|---|---|---|
| 9. | Richard Williams v. ZHP et al. | 20-cv-20602 | Alvin Pittman | No PFS Filed | PFS DUE - 7/27/22 |
| 10. | Carrie Collins v. Aurobindo Pharma, et al. | 19-cv-16386/ 19-cv-16387 | Haffner Law PC | No PFS Filed | PFS DUE - 7/27/22 |

Respectfully submitted,

Clem C. Trischler

c:   All counsel of record (via ECF)