**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

CIVIL ACTION NUMBER:

19-md-02875

CASE MANAGEMENT CONFERENCE

---

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey  08101
July 28, 2022
Commencing at 10:01 a.m.


B E F O R E:                    THE HONORABLE ROBERT B. KUGLER
                               UNITED STATES DISTRICT JUDGE

                               THOMAS I. VANASKIE (RET.)
                               SPECIAL MASTER

A P P E A R A N C E S:


    MAZIE SLATER KATZ & FREEMAN, LLC
    BY:  ADAM M. SLATER, ESQUIRE
    103 Eisenhower Parkway
    Roseland, New Jersey  07068
    For the Plaintiffs


    HONIK LLC
    BY:  RUBEN HONIK, ESQUIRE
    1515 Market Street, Suite 1100
    Philadelphia, Pennsylvania  191032
    For the Plaintiffs


  Ann Marie Mitchell, CRR, RDR, RMR, Official Court Reporter
            AnnMarie_Mitchell@njd.uscourts.gov
                  (856) 576-7018


  Proceedings recorded by mechanical stenography; transcript
         produced by computer-aided transcription.

*United States District Court*

1    **A P P E A R A N C E S (Continued):**

2

3        SERIOUS INJURY LAW GROUP P.C.
         BY:  JOANNA JONES, ESQUIRE
4        9617 Parkway E
         Birmingham, Alabama 35215
5        For the Plaintiffs

6        LIEFF CABRASER HEIMANN & BERNSTEIN
         BY:  RACHEL GEMAN, ESQUIRE
7        250 Hudson Street, Eighth Floor
         New York, New York 1003
8        For the Plaintiffs

9

10       GREENBERG TRAURIG LLP
         BY:  STEVEN M. HARKINS, ESQUIRE
11       3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia  30305
12       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,
13       and Actavis Pharma, Inc.

14       GREENBERG TRAURIG LLP
         BY:  GREGORY E. OSTFELD,  ESQUIRE
15       77 West Wacker Drive, Suite 3100
         Chicago, Illinois 60601
16       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,
17       and Actavis Pharma, Inc.

18

19       BARNES & THORNBURG, LLP
         BY:  KARA KAPKE, ESQUIRE
20       11 S. Meridian Street
         Indianapolis, Indiana 46204
21       For the Retailer Defendants and CVS Pharmacy, Inc., and
         Rite Aid Corporation

22

23       KENNEY SHELTON LIPTAK NOWAK LLP
         BY:  DANIEL CARTWRIGHT, ESQUIRE
24       4615 North Street
         Jamesville, New York 13087
25       For the Defendant, Tops Test Facility 990

1    **ALSO PRESENT:**

2        LORETTA SMITH, ESQUIRE
         Judicial Law Clerk to The Honorable Robert B. Kugler
3
         Larry MacStravic, Courtroom Deputy
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held telephonically before The Honorable
 2    ROBERT B. KUGLER and SPECIAL MASTER THOMAS I. VANASKIE at
 3    10:01 a.m.)
 4              THE COURT:  Judge Vanaskie, are you on board?
 5              SPECIAL MASTER VANASKIE:  Yes, I am, Judge Kugler.
 6    How are you doing?
 7              THE COURT:  Fine and dandy, enjoying the summer.
 8              Okay.  Look, there's a number of issues that we want
 9    to talk about today.
10              Let's start with the easy part.  Mr. Harkins, are you
11    on the phone?  Mr. Harkins?
12              MR. HARKINS:  Yes, Your Honor, I'm here.  This is
13    Steve Harkins with Greenberg Traurig for Teva and the joint
14    defense group.
15              THE COURT:  Do you want do that paragraph 3 of the
16    defense letter, we'll talk about?
17              You apparently -- on the 12 orders to show cause, you
18    want to dismiss half of them, the other half you want to move
19    to next time; is that correct?
20              MR. HARKINS:  Yes, that's correct, Your Honor.  There
21    was one update.
22              We will also agree to withdraw number 6, William
23    Davis, and then just carry the five others that we noted in
24    our position statement forward for another month.
25              THE COURT:  Okay.  Let's do that then.
```

*United States District Court*

 1             As to the pending orders to show cause, the Payne,

 2    P-A-Y-N-E; Callahan; Anderson; Walker, Williams; and White

 3    cases, those orders to show cause are dismissed.

 4             As to the Shemes, S-H-E-M-E-S; King; Tolley; Peyton;

 5    Branch; Vindigni, V-I-N-D-I-G-N-I, those matters are carried

 6    for a month and would appear on next month's order to show

 7    cause list.

 8             And that leaves five -- four new ones to be listed

 9    for next month, orders to show cause.

10             Estate of Robert Cooper v.  ZHP, that's the Levin

11    firm.

12             Anybody want to speak on that matter?

13             MR. NIGH:  Yes, Your Honor.  We don't have any

14    objection to entering an order to show cause.  I just would

15    say that our missing thing is medical billing.  We don't that

16    really rises to the standard of a core deficiency, but I think

17    we can have that battle next month if for some reason we can't

18    still get that medical billing.

19             THE COURT:  Okay.  Thank you.

20             That will be listed for an order to show cause.

21             Number 2 is Raymond Dais, D-A-I-S.  That's the Dennis

22    F. O'Brien firm.

23             Anybody want to speak on that matter?

24             (No response.)

25             THE COURT:  Nope, okay.  That will be listed for

1    dismissal next month.

2            Third is Elie, E-L-I-E, Greene, G-R-E-E-N-E.  That's
3    the Serious Injury Law Group.

4            Any want to speak on that?

5            MS. JONES:  Yes.  This is Joanna Jones on behalf of
6    Gerald Brooks.  The update is really the same as last week.
7    We've hired an attorney to open up the estate, so we're just
8    kind of waiting on the estate to be opened up so we can
9    proceed.

10           THE COURT:  Okay.  Well, we have another month to try
11   to work that out.  If not, then you can always talk to
12   Mr. Harkins before next month to try to carry it again.  Okay?

13           And then there's Marjorie Smith as administrator of
14   the estate of Erskine Smith.

15           Anybody want to talk on that?

16           MS. JONES:  Yes.  This is Joanna Jones again.

17           The plaintiff fact sheets have been amended to fix
18   the errors.  Also appropriate authorizations were filed this
19   week.  The only things that we're missing is the mental health
20   records that were requested, and we have requested those,
21   we're just waiting for them to come in.

22           THE COURT:  Okay.  Well, you've got another 30 days
23   to try to work that out with Mr. Harkins.  But we'll list that
24   for next month's orders to show cause.  Okay?

25           MS. JONES:  Thank you.

*United States District Court*

1          THE COURT:  Then there are ten cases that Mr.

2   Harkins -- the defense has listed to be relisted.

3          Any updates on those, Mr. Harkins?

4          MR. HARKINS:  Yes, Your Honor, a number of updates.

5   We can remove number 1, Connie Keep; number 2, Sandra Russell;

6   number 7, Frances Cain; and number 10, Carrie Collins.  And

7   the rest of the cases would be just carried forward for

8   another month.

9          THE COURT:  Okay.  Then that will be number 3, Debra

10  Stiles, S-T-I-L-E-S; number 4, Jim Smith; number 5, Frank

11  Trimboli, T-R-I-M-B-O-L-I; number 6, Audrey Dequeant,

12  D-E-Q-U-E-A-N-T; number 8, Walid Elganam, E-L-G-A-N-A-M; and

13  number 9, Richard Wilson.  Richard Williams, I'm sorry.  We'll

14  list those for next month again for another listing.

15          All right.  Let's get right to the case management

16  issues that are raised, the dispute between the plaintiffs and

17  the defendants about trying to figure out the third-party

18  payor, TPP, case to go to trial in this case.

19          And defense has raised a number of issues, some of

20  which need to be discussed.

21          I'm not concerned about the entire controversy

22  doctrine.  That wouldn't prevent me under Rule 21 to sever

23  certain granting parties.

24          Class certification motions, that is an issue because

25  of one-way intervention.

```
 1            We are working on those, folks.  They're a lot of
 2   work, but we are working on them.  And we hope to have them in
 3   the not too distant future resolved.
 4            But that leaves I think a really difficult issue that
 5   we have to talk about, the trials.  And that's the Lexecon
 6   problem.
 7            Now, I haven't seen any waivers from any defendants
 8   that would permit me to try any of these cases, and I think
 9   Lexecon implicates the plaintiffs' proposal here.  So that's
10   an issue that needs to be addressed.
11            And the personal jurisdiction issue that was raised
12   by defense counsel was addressed sort of two days ago by the
13   Third Circuit in that Fischer case, that opt-in FLSA case with
14   the out-of-state plaintiffs.  So that continues to be a bit of
15   an issue.  That has to be resolved.
16            Who's going to speak for the plaintiffs on the
17   Lexecon problem, if anybody?
18            MR. HONIK:  Good morning, Your Honor.  This is Ruben
19   Honik.  I'll be addressing the case management issues.
20            THE COURT:  Okay.  What are we going to do about the
21   Lexecon problem?
22            MR. HONIK:  Your Honor, I understand how the issue
23   has been framed, but the defendants have really cited nothing
24   that prevents the Court from certifying consumer or TPP
25   classes and subclasses, adjudicating summary judgment and
```

*United States District Court*

1   pretrial motions, and then severing and remanding cases to

2   transferee courts.  That's point number one.

3           Point number two, perhaps even more important, is

4   that at least one named plaintiff in each of the two proposed

5   trial groupings have originally filed complaints in the

6   District of New Jersey, meaning that this court already has

7   jurisdiction and venue over an original action that doesn't

8   require transfer.

9           And for the record, that would be the Brian Wineinger

10  case which was filed before you, Judge, against Solco and

11  Prinston.

12          That permits you to proceed at the least as to that

13  case without a waiver, and therefore, I don't believe *Lexecon*

14  is implicated.

15          THE COURT:  Was the Wineinger case, was it filed as a

16  result of a direct filing order, or was it filed independent

17  of your direct filing order?

18          MR. HONIK:  My best --

19          THE COURT:  I mean, should it really be in New

20  Jersey?

21          MR. HONIK:  Yes, Judge, it really should be in New

22  Jersey.  And unless someone can correct me from our team, that

23  was originally filed in New Jersey before you at 19-cv-01070

24  in April of 2019 against defendant subsidiaries in New Jersey.

25          So that case is I think teed up and ready to go with

1    or without a waiver for this Court to proceed.  And in any

2    event, if the Wineinger case was not extant, the Court would

3    still be in a position to certify classes, adjudicate summary

4    judgment and pretrial motions and sever and remand.  And

5    that's precisely what the MDL rules and Rule 23, you know,

6    consider the pathway.

7           MR. SLATER:  Your Honor, it's Adam Slater.  Also, I

8    believe that some of the defendants are actually based in New

9    Jersey as well.

10          MR. HONIK:  Well, that goes without question on the

11   personal jurisdiction side, Judge.  We know that Solco,

12   Prinston, US Huahai, Teva USA, Teva subsidiaries, Actavis, and

13   Torrent USA are in New Jersey in a very profound way.  And to

14   state the obvious, these defendants have been in the

15   litigation for four years.  To whatever extent they think they

16   still have a personal jurisdiction challenge, certainly that

17   can be brought up in a dispositive motion.  And I don't want

18   to get ahead of myself or in front of my skis, but I don't

19   think there's a personal jurisdiction -- meaningful personal

20   jurisdiction challenge in the least.

21          THE COURT:  What you're proposing is at the very

22   least we just keep going and get to the dispositive motions,

23   and then at that point if I don't have jurisdiction over the

24   case, then they'll send it back.

25          Is that what you're saying?

```
 1              MR. HONIK:  That's right, Judge.  And just to take a
 2    half step back and maybe frame the discussion that might be
 3    useful, when the cert briefing was complete, it certainly
 4    occurred to the plaintiffs that we needed the Court to step in
 5    and provide some case management direction for merits and
 6    expert reports and dispositive motions.  And that went
 7    directly to what you conveyed to the parties correctly, which
 8    is we've got to keep this case moving.
 9              And as both Judge Vanaskie and you are aware, we have
10    proposed a schedule.  We conferred with the defendants.  It
11    was somewhat modified and tacked on an additional 60 days
12    because of some protestation by the defendants.
13              And we now have Case Management Order Number 28,
14    which has been docketed.  And we have a timetable for the
15    exchange of expert reports and dispositive motions with the
16    hope that we're going to have an economic trial of some sort
17    in the very near future to move this case along.
18              And the defendants, faced with this case management
19    order and an expression from us that plaintiffs, we in fact
20    were going to pursue dispositive motions, complained that it
21    was untethered, that was the very word they used repeatedly at
22    our last conference, untethered to any particular claim, any
23    particular defendant, any particular plaintiff.
24              And we responded, just as we said we would to Judge
25    Vanaskie over a week ago now.  And we proposed what we think
```

```
 1   is the most sensible management grouping possible in proposing
 2   a first consumer class based on warranty, both implied and
 3   expressed.  The defendants now know precisely which defendants
 4   we'd like to go after first in a trial, namely, ZHP, Teva and
 5   Torrent.
 6          The reason Teva and Torrent are in, because they use
 7   ZHP API.  They're very significant defendants in this
 8   litigation, as everyone well knows.  And in many respects, the
 9   warranty claims and the consumer warranty claims are among the
10   very straightforward, most streamlined of claims possible that
11   can be tried.  They implicate every one of the legal and
12   factual issues that implicate the bodily injury claims.
13          And we were very mindful in proposing it.  We think
14   too that dispositive motions can clearly be filed on warranty,
15   because the Court has shed considerable light in its Rule 12
16   opinions about how the warranty analysis should apply here.
17          And so when it's all said and done, we think because
18   of the alignment between consumer economic claims and consumer
19   BI claims, among all the possible grouping choices, that
20   presents the greatest efficiency.
21          And let me say, Judge -- and we attached this as an
22   exhibit to our reply brief in our cert briefing -- the Federal
23   Judicial Center really provides guidance that is very much in
24   line with what we've proposed.
25          If the Court were to look again or refresh itself on
```

```
 1    an excellent primer that the Judicial Center has authored in

 2    2018 called Managing Related Proposed Class Actions of

 3    Multidistrict Litigation, one would find on page 5 the very

 4    topic that we're talking about today, namely, how to group for

 5    motion practice and discovery and for trial.

 6            And if I may, the guidance from the Judicial Center

 7    says, and I quote:  "Typically cases are split up by plaintiff

 8    type, but judges' creativity in meeting the challenges

 9    presented by multiclass MDL proceedings is unlimited."

10            That's in the text, not my word.

11            "Cases" can "be split up by the nature of the claims

12    brought...or by time of filing.  Plaintiffs" can "be grouped

13    based on whether they have opted out of arbitration or not.

14    In antitrust proceedings, cases" can "be grouped based on

15    which subset of defendants is being sued."

16            And the guidance goes on to give illustrations in

17    both the complexity of the task but how grouping can

18    facilitate litigation.

19            And it cites, for example, Judge, the Blue Cross Blue

20    Shield Antitrust Litigation.  And it's very instructive here.

21            There in that litigation there were two tracks.

22    There were subscribers and providers, which are roughly

23    analogous to direct and indirect purchasers, and within each

24    track there are multiple alleged classes divided by regional

25    market.
```

1          Now, if we stop for a second, that very example is
2    precisely what we have here.  Completely analogous to indirect
3    and direct purchasers, subscribers and providers is what we
4    have in the form of consumers and TPPs.
5          Here the direct purchaser is really the consumer.
6    They're the ones that got the warranty in their hand.  There's
7    a slight difference in that analysis when we get to the TPPs,
8    because they simply paid for a part of the purchase.  But the
9    consumer stands in the exact position of a direct purchaser in
10   an antitrust case.  And that is among the reasons that we
11   really proposed that as an initial class trial to proceed and
12   to work up in the way of dispositive motions.
13         That really will engender and encompass and implicate
14   the greatest number of common issues, both legal and factual,
15   on both the BI side and the economic side, whereas the TPP has
16   certain wrinkles in it that I think makes it not entirely sui
17   generis, but not as aligned as a consumer economic class, as a
18   BI class.
19         Now, let me conclude by saying the plaintiffs stand
20   absolutely prepared, Judge, to work up for trial or toward
21   trial any grouping that the Court desires.  And in fact, the
22   Court has tremendous flexibility in terms of sequencing and as
23   has been done by, among others, Judge Weinstein in Zyprexa,
24   more recently in the Juul case.
25         You're even at liberty to issue tentative rulings

1  both as to summary judgment, as to class and so forth, to

2  provide guidance to the parties about how to proceed to tee up

3  the issues in this case.

4          And so, you know, we hope and implore the Court to

5  consider our proposal which encompasses major defendants,

6  common facts on both the BI track and the economic track by

7  suggesting a consumer warranty class as the first case to go.

8  But I dare say if the Court decides, for example, that we're

9  not going to do ZHP, we want to do Hetero first, that's fine

10  too.  If the Court directs that we do a TPP class trial first,

11  it's -- after a certification ruling, we're prepared to do

12  that.

13          But we think in the best of all worlds, a consumer

14  class based on warranty is the cleanest.  We can narrow it

15  down even further by dispositive motions.  And I think it will

16  be the biggest, if you will, legal bang for the buck in terms

17  of moving this case forward towards some sort of resolution.

18          THE COURT:  Mr. Trischler, you signed the letter.  Do

19  you want to speak on this, or do you have someone else who is

20  going to speak on this?

21          MR. OSTFELD:  Good morning, Your Honor.  This is Greg

22  Ostfeld.  I'll be speaking on this issue on behalf of the

23  objecting defendants.

24          THE COURT:  Okay.  Great, thank you.

25          MR. OSTFELD:  Your Honor, I certainly appreciate

1    Mr. Honik's presentation on this.  And with due respect to

2    him, it sort of feels like we're going backwards a little bit.

3          The Court already exercised its creativity in

4    accordance with the guidance of the Judicial Center at the

5    June 1st hearing.  And we took the Court's guidance to heart

6    and agree with the Court that the first economic loss trial

7    should be relatively straightforward and should not be

8    piecemeal.

9          And we feel the Court was fairly clear, you indicated

10   that we should for purposes of this first trial -- and we took

11   the goal to be setting a case that could proceed to trial, not

12   towards piecemeal proceedings.  The goal should be to focus on

13   the third-party payor economic loss cases.

14         And as Your Honor prudently noted, the reason for

15   that is because those cases are likely to go forward

16   irrespective of the outcome of the forthcoming class

17   certification ruling.  It doesn't require a predisposition or

18   an assumption as to how the Court is going to rule and what

19   it's going to do with the class certification rulings.  It

20   doesn't require us to go through the Rule 23(f) review

21   process.  It doesn't require us to define the parameters of

22   the classes, you know, what they're going to do, or guess at

23   what they're going to be.  We can simply proceed to work up a

24   third-party payor, which is what the Court indicated it would

25   like to see done, and to advance it towards trial.

 1          Whatever the merits of Mr. Honik's proposal, and we
 2   have a lot of disagreements with them, it is a certainty that
 3   that will be a piecemeal proposal.  It will not be relatively
 4   straightforward.  And it cannot lead to a single trial.
 5          And the reason for that is it involves 12 plaintiffs
 6   from 10 states.  It involves 48 proposed subclasses.  It
 7   involves 28 jurisdictions.
 8          Putting aside the many reasons we have indicated why
 9   that is not workable at all as a class certification proposal,
10   it is certainly not triable before this Court.
11          As Your Honor noted, there are personal jurisdiction
12   and *Lexecon* issues.  Some of the defendants are subject to
13   this Court's general jurisdiction.  Many of them are not.  And
14   Your Honor to this point has declined to hear personal
15   jurisdiction motions.  But if the time comes where we start to
16   work up a case for trial, it will certainly be time to hear
17   those personal jurisdiction issues, which the Court expressly
18   reserved to this point.
19          There are multiple foreign defendants who have never
20   had their personal jurisdiction arguments heard.  There are
21   also a number of plaintiffs who are from out of state who
22   either direct filed into this court or filed in other states.
23   There have been no *Lexecon* waivers.
24          So it is a certainty that the path that Mr. Honik has
25   proposed cannot lead to a single, simple, straightforward

1    trial before this Court.  It can only lead to a jumbling of

2    proceedings, a mélange of proceedings which we take to be

3    inconsistent with the Court's preference.  What the Court

4    wants us to do was set aside, as Your Honor put it, the

5    obsessive focus on these class action motions, proceed to a

6    third-party economic loss case, identify one that can be tried

7    and move that.  Your Honor said that we don't want to

8    piecemeal these things.  And what we're going to be doing here

9    most certainly would be piecemealing them.

10          The plaintiffs have not proposed to just put

11   Mr. Wineinger's case before the Court and put that on a trial

12   track, they proposed to put 12 plaintiffs' cases before the

13   Court.  And it is not possible to do with that what the Court

14   wants to do, which is try to move, to really advance the

15   ultimate termination of this litigation, to get some guidance

16   from a trial that can then inform the parties with respect to

17   settlement, with respect to the course of future classes.

18          It is not a simplifying procedure the plaintiffs are

19   proposing.  They are proposing a complicating procedure, one

20   that is going to spin off in hundreds of different directions,

21   one that may have to be put on pause if there is a Rule 23(f)

22   review by the Third Circuit, one that could be rendered futile

23   if Your Honor denies class certification or moves in a

24   different direction than the parties are conjecturing the

25   Court may go.  And it would just be a guess or a conjecture at

1    this point.  That is really the one-way intervention problem.

2            We understand and appreciate that the Court is

3    working hard on those class certification rulings.  And it's a

4    large task, and we certainly don't begrudge the Court the time

5    it will take to do that.

6            But until it is done, we do have a one-way

7    intervention problem.  We have a problem of cases proceeding

8    on the merits in such a way that would enable class members to

9    wait and see how it goes and then decide whether or not

10    they're going to get involved or not.

11            And, Your Honor, we certainly understand that Your

12    Honor can sever cases, that you can solve the entire

13    controversy and claim preclusion and claim splitting issue by

14    severing cases, but plaintiffs right now are proposing to work

15    up specific claims on behalf of the same named plaintiffs

16    while leaving others on the sidelines.

17            And while Your Honor can certainly solve the entire

18    controversy and claim splitting issue by having all of one

19    plaintiff's claims severed out and tried in one proceeding, we

20    respectfully do not think that Third Circuit precedent would

21    allow an individual plaintiff's claims to be split into

22    multiple proceedings and multiple trials arising -- against

23    the same defendant arising out of the same event.

24            So respectfully, Your Honor, we think the goal should

25    be to get back on track, get back to the mission Your Honor

1    articulated at the June 1st hearing and move towards a single

2    plaintiff/third-party payor trial that can be tried as a

3    discrete, non-piecemeal proceeding and that would materially

4    advance the ultimate termination of this litigation.

5              This is putting the cart before the horse, Your

6    Honor.  To proceed on this before Your Honor has entered a

7    class certification ruling, to proceed on a class claim until

8    Your Honor has ruled on class certification and until the

9    Third Circuit has at least been given the opportunity to say

10   whether it is going to weigh in would be putting the cart

11   before the horse.

12             THE COURT:  Thank you.

13             Mr. Honik, I get where you're going with all this.

14   And it's a good effort, but I still believe that the best way

15   to proceed to the first trial is a single TPP plaintiff, which

16   implicates, you know, only maybe a few states' laws and things

17   of that nature.

18             MR. HONIK:  Your Honor, here's how we see the problem

19   with that approach.

20             The TPP plaintiffs in this case have a fully briefed

21   motion for class certification before you on behalf of a

22   class.  To try either MSP or MADA's individual claims while

23   that motion for certification is pending would bring about

24   ironically the very one-way intervention that defendants claim

25   they are seeking to avoid.

1          The -- respectfully, the MSP and MADA class members

2    are entitled to have a ruling on their cert motion before

3    there's a review of their merits in a trial or other

4    proceeding.  And by doing otherwise I think would violate MSP

5    and MADA's due process rights in the same way that defendants

6    maintain theirs would be violated in the event of some

7    substantive ruling as to their rights.

8          And I want to emphasize that at no time have we ever

9    proposed that we proceed either on summary judgment, as to

10   summary judgment, or a trial before the Court has an

11   opportunity to weigh in on one or more of the proposed

12   classes.  We think the proper sequencing -- and the Court has

13   alluded to it -- is to have at least some ruling, even if it's

14   not a dispositive ruling, can be, you know, an informative

15   ruling to us, but likely a final ruling on one or more

16   classes, followed by a notice period during which the parties

17   have put on your desk, Judge, dispositive motions to narrow

18   the issues as we get closer to trial disposition, motions in

19   limine and the like, and then get ready to proceed.

20         And certainly if after that process Your Honor feels

21   that the TPP class is the first one to go, we're ready to go

22   and we'll do it.

23         The reason we proposed a consumer class is because we

24   believe in the best of all worlds.  Both the legal and factual

25   issues of consumers as the -- essentially the direct

1    purchasers here really implicate the greatest number of issues

2    for a factfinder to determine.

3         That is not entirely true as to TPPs, because as Your

4    Honor knows, they weren't handed this prescription.  They

5    didn't have the label.  They didn't consume this drug, which

6    created an increased risk of an adverse health effect, and as

7    to our BI clients actually created an adverse health effect.

8    So we think in the best of all worlds, a consumer economic

9    class is the one that really implicates the greatest number of

10   issues.

11        And let me just add further that there's a lot of

12   skin in the game with the economic class.  The class that we

13   proposed, strictly the ZHP/Teva/Torrent express warranty and

14   implied warranty groups -- which, by the way, all of the

15   states that we've grouped together have identical law.  So

16   this business, which is really a rehash of their opposition to

17   our cert motion, is really without air.

18        But putting that aside for the moment, we're talking

19   about damages that have been modeled in excess of

20   $100 million.  That's strictly for warranty, strictly for

21   Teva, Torrent and ZHP.  And we think that that would be a very

22   meaningful first trial which would implicate the greatest

23   number of issues, including legal issues for the TPP, but the

24   consumers are the ones that were the direct purchasers here.

25        The guidance from the Federal Judicial Center clearly

*United States District Court*

```
 1   speaks in the MDL and particularly the antitrust setting of
 2   having the lead cases be the direct purchasers, indirect
 3   purchasers, or the providers coming after the subscribers.
 4           The concept there, Judge, is that that's where the
 5   rubber met the road.  Our consumers were the ones that went
 6   into these pharmacies, were told they were buying valsartan
 7   and didn't get valsartan.  And we think that summary judgment
 8   on warranty will further narrow the issues and present the
 9   cleanest, most efficient way to proceed, and frankly, to
10   expose the parties to enough skin in the game that could
11   potentially globally move toward a resolution of the entire
12   litigation.
13           THE COURT:  I'm not sure having a trial with the most
14   possible issues moves us as quickly as we need to to the final
15   resolution of this case, to be honest with you.  I understand
16   what you're saying, because it does put pressure on the
17   defendant to face a consumer case where you have actual people
18   talking about their prescriptions and the stakes being, as you
19   say, $100 million or maybe more.
20           But I still think the question we need to have
21   answered or seem to need to have answered is whether or not
22   this stuff was contaminated and whether it was worth anything,
23   you know, to the purchasers or anyone else who paid for it.
24   And I think the easiest way, the fastest way to get there is a
25   TPP single plaintiff case, to be honest with you.  I continue
```

1    to believe that.

2            MR. HONIK:  Your Honor, I understand that.  I took to

3    heart many of your comments before today about the value of

4    bellwether personal injury cases.  And I happen to share your

5    view about them.  But I think that's what we would be

6    engendering by having an isolated TPP case.

7            So let's say we tee up MADA's individual claim here

8    in order to hopefully tease out some specific issues that

9    really do cut across all the claims here.

10           If MADA were to lose their individual trial, it

11   wouldn't dispose of anything.  MSP would still have claims.

12   And obviously there would be the issue of class certification

13   for TPPs.  There may be any number of individualized reasons

14   why MADA, just to use an example, might not prevail in a sort

15   of bellwether trial.

16           So in my view, in our view, Judge, as we really spent

17   time thinking about this, effectively having a single

18   bellwether isolated trial for one TPP not only I think

19   potentially involves due process issues when there are pending

20   motions, but as a practical matter, it doesn't really move the

21   needle or potentially won't move the needle, because if -- in

22   my hypothetical, if MADA were to lose it, it's just like

23   losing a BI bellwether trial.  We move on to the next one.

24   And I think that that will prolong the litigation.

25           I think in the best of all worlds, respectfully, if

1    the Court is presently honing in on, you know, considering our

2    certification motion, whether as to all of the proposed

3    classes or even just one subclass, namely, warranty for

4    ZHP/Teva/Torrent, to me, that really -- that really produces a

5    big bite.

6          And again, we reiterate that we're prepared to do any

7    combination or any grouping that the Court wants.  If you want

8    a smaller bite with Hetero, just for example, we're happy to

9    do that.  But we think going in the direction of consumer

10   economic class issues really is the way to go, because it's

11   nonspecific.  It has no individualized issues that they

12   pertain to someone paying for a prescription rather than the

13   consumer who really is the direct purchaser here.

14         THE COURT:  Well, what happens if you lose your

15   consumer case, now where are we?

16         MR. HONIK:  Then there's preclusive effect.  We've

17   rolled the dice on a class-wide basis for the economic group,

18   and we've lost on the warranty claim.

19         And if you severed out, which is your right to do,

20   and it's done all the time by transferee judges, if we do just

21   warranty, then the next trial it can be with the same jury, we

22   look at the fraud issue.  But we think that the warranty issue

23   is the first big one to go.  And if we lose it, to answer your

24   question, then it's preclusive as to the economic claims based

25   on warranty.

```
 1          MR. OSTFELD:  Your Honor, this is Greg --

 2          THE COURT:  -- very much, to be honest with you.  If

 3   you lose that one, I don't think it's -- I don't think we're

 4   any worse off if we lose that one than we would be if we lose

 5   the TPP individual case in terms of where we end up down the

 6   road with all these cases.

 7          MR. HONIK:  Well, I take your point, Judge, but I

 8   really do believe that we have a one-way intervention problem,

 9   not with what the defendants are concerned with but by picking

10   out an isolated TPP individual claim when there is already a

11   pending motion to certify a class.

12          And that directly implicates the one-way intervention

13   problem that the defendants are complaining about, which

14   frankly don't exist for them but I think would be a present

15   problem for either MSP or MADA who, you know, have and should

16   have a full and fair opportunity to be heard on their Rule 23

17   motion to certify a class of which they're a member.

18          THE COURT:  They're going to get the opportunity to

19   be heard on class motions.  Like I said, we are endeavoring to

20   get those done and we will get them done.  It just takes time

21   to get this stuff done.

22          Anyway, thank you, but I'm not convinced that we need

23   to go that route that the plaintiffs are suggesting, the

24   consumer route.  I still believe we're going to go through

25   with the TPP individual trial first.  That will be the first
```

```
 1  trial.

 2         I'm not suggesting we want to do this tomorrow,

 3  folks.  There's a lot to be done yet.  But that's -- I

 4  continue to believe that that's the best way to head this case

 5  to final resolution.

 6         I think simple is better, to be honest with you.

 7         Anyhow, that's where we are.  If you want to get

 8  together, folks, and try to find an individual TPP plaintiff

 9  and make a proposal to me at the next meeting, that would be

10  great.  If not, then, you know, I'll do the work and I'll find

11  that and set that up for the first trial.

12         I think that leaves one more issue that were raised

13  in the papers.

14         Judge Vanaskie, were you going to handle this or do

15  you want me to handle this?

16         SPECIAL MASTER VANASKIE:  Are you referring to the

17  CVS matter?

18         THE COURT:  Yes, sir.

19         SPECIAL MASTER VANASKIE:  Yeah.  That was up to you.

20  If you want me to handle it, I'll be happy to handle it, but I

21  wasn't sure.

22         THE COURT:  If you want to do it, go ahead.

23         SPECIAL MASTER VANASKIE:  Well --

24         THE COURT:  Why don't do you it.

25         SPECIAL MASTER VANASKIE:  Let's hear from counsel
```

1    then on CVS.

2            MR. KAPKE:  Sure, Your Honor.  I think this is an

3    issue for the Court for both --

4            SPECIAL MASTER VANASKIE:  Hold on.

5            (Court reporter clarification.)

6            MS. KAPKE:  Sure.  This is Kara Kapke for CVS.

7            And we're here today again seeking clarity on the

8    scope of the pleadings against CVS.

9            I want to make very clear that we're bringing this

10   issue before the Court not in a premature effort to seek

11   summary judgment.  This is not a merits issue.  This is not a

12   substantive dispositive motion.  But this is a procedural

13   issue that has come up in the context of there being no

14   plaintiffs left with medical monitoring claims against CVS.

15   There are simply no plaintiffs who have pleaded claims against

16   CVS in the medical monitoring complaint.  There aren't any.

17           Three of the plaintiffs who initially named CVS have

18   since dismissed their claims.  Celeste Daring is the only

19   non-dismissed plaintiff who mentions CVS in her individual

20   paragraph in the medical monitoring complaint, but she's a

21   Maryland resident and did not plead claims against CVS, did

22   not plead a cause of action against CVS, because the only

23   claims asserted against the pharmacy defendants and the

24   operative medical monitoring complaint, breach of warranty and

25   an independent medical monitoring cause of action were not

1    allowed under Maryland law under this Court's prior ruling.

2             So there's no Maryland claim against pharmacies.  So

3    Celeste Daring doesn't have any claims and hasn't pleaded any

4    claims.

5             By the way, as an aside, for the first time ever,

6    plaintiffs mention Robert Fields in their CMC statement,

7    although they didn't quite explain why.  And we were quite

8    confused, because Robert Fields filled his valsartan scripts

9    at ShopRite and Giant, not CVS.

10            But regardless, like Celeste Daring, Robert Fields is

11   a Maryland resident.  And Maryland residents don't have claims

12   against pharmacy defendants.

13            So there are no plaintiffs with claims against CVS

14   who actually named CVS in the paragraph where they discuss

15   where they filled their prescriptions.

16            And likewise, again, later in the medical monitoring

17   complaint, when plaintiffs specifically discuss CVS, they do

18   not identify any plaintiffs with current claims against CVS.

19   They identify the three plaintiffs who have since dismissed

20   their claims against CVS.  And they identify Daring, the

21   Maryland resident who does not assert any causes of action

22   against CVS.

23            And I don't think plaintiffs dispute any of that.

24   Instead, they're grasping at straws and they're relying on an

25   unasserted claim.  And that's a claim belonging to Sarah Zher.

1  It's not asserted and it's not pleaded, and that's the issue

2  that I think is really important here, is what's the scope of

3  the pleadings.

4         In the paragraph of the medical monitoring complaint

5  discussing Zher, plaintiffs identify ZHP as having

6  manufactured the valsartan she took.  They identify Aurobindo

7  as having facilitated the regulatory approval of that ZHP

8  product.  They allege that at least some of the products --

9  some of the ZHP product Zher purchased was purchased from ZHP

10  by McKesson who in turn distributed this ZHP product to

11  defendant Walmart and other retail pharmacy defendants.

12         That's it.  That's all they say.  There are no

13  allegations relating to other manufacturers, no allegations

14  relating to other wholesalers, no allegations relating to

15  other pharmacies.

16         Plaintiffs are correct that CVS knew that Zher filled

17  one 18-day script at CVS.  Zher identified that script in her

18  plaintiff fact sheet.  She discussed it at her deposition.

19  But that script was manufactured by Hetero as plaintiffs state

20  on the fact sheet and as identified by the NDC code.

21         And I think it's interesting, in their position

22  statement plaintiffs point to the language that a wholesaler

23  sold this ZHP product to defendant Walmart among other retail

24  pharmacy defendants as indicative that CVS was on notice of

25  Zher's claims.

1     But that 18-day fill plaintiffs are talking about
2  involves Hetero valsartan, not ZHP valsartan.  CVS didn't
3  prepare a DFS for Zher, a fact, by the way, that plaintiffs
4  never complained about.
5     So at this point, I don't know what role, if any, a
6  wholesaler played with respect to that 18-day fill, but it is
7  completely illogical to suggest that because, according to
8  plaintiffs, McKesson sold ZHP valsartan to Walmart and other
9  retail defendants, that CVS knew that plaintiff had claims
10 relating to a Hetero product that was filled at CVS.
11    The paragraphs in the complaint relate solely to ZHP
12 and the stream relating to ZHP.  It never mentions Hetero.  It
13 never mentions Camber.  It has never mentioned CVS.  And it's
14 precisely because CVS knew that they're filled at CVS and
15 plaintiffs didn't name it in the complaint that we were
16 prejudiced here.
17    Were we supposed to call plaintiffs up and ask did
18 they really mean to include CVS in the paragraphs about Zher?
19    We didn't because it was entirely logical to us that
20 plaintiffs would not rely on the de minimis use of one 18-day
21 fill to name CVS and Hetero and Camber in light of their own
22 arguments regarding the lifetime cumulative threshold
23 plaintiffs proposed in their complaint and attempted to
24 establish through expert reports.
25    I don't want to get too much into the merits of the

1  LCT, but we would have asked questions of plaintiffs' experts,

2  potentially hired our own experts just to discuss de minimis

3  usage, and we would have breached the issue at class

4  certification differently had we known that Zher was bringing

5  claims against CVS.

6        And to give you just a brief overview of why this

7  matters, remember here that we're talking about medical

8  monitoring.  The claims here are that the dose of valsartan

9  with the NDMA impurity is sufficient to put a plaintiff at an

10 increased risk of cancer.  And to do that, plaintiffs

11 themselves say you need to have taken a sufficient quantity of

12 valsartan.

13       Zher filled one 18-day script of Hetero-manufactured

14 valsartan at CVS.  That comes nowhere close to the LCT that

15 plaintiffs themselves proposed.  To meet that LCT sufficient

16 to warrant inclusion in the class according to the inclusion

17 criteria proposed by plaintiffs, a plaintiff would have needed

18 to take 32 months, nearly 1,000 days, of Hetero active

19 ingredient.  Zher took 18 days.  That's less than 2 percent of

20 the LCT plaintiffs themselves would have proposed as being

21 sufficient to establish a lifetime cumulative exposure to

22 valsartan.  Or to put it another way, it's 54 times the amount

23 of Hetero valsartan she filled from CVS needed to meet the

24 LCT.

25       In contrast, plaintiffs have proposed an LCT

1    requiring only six month ZHP API at the dosage that Zher took.

2           Zher easily crossed the threshold for ZHP's API,

3    having filled more than two years of valsartan with ZHP's API

4    at Walmart.

5           That's presumably why they named ZHP/Walmart/McKesson

6    in her paragraph in the complaint.  Again, that's also why she

7    didn't name CVS, didn't name Hetero, didn't name Camber.

8           You know, plaintiffs may have some substantive

9    arguments about whether those 18 days of NDMA contribute

10   enough to warrant inclusion in the medical monitoring as

11   contrasted to the two years of ZHP valsartan Zher took, but

12   that is not the issue here.

13          We didn't get to brief that issue.  We didn't get to

14   ask plaintiffs' experts questions about that issue.  We didn't

15   get to discuss it in our brief, at our depositions, because we

16   didn't know plaintiffs were planning on relying on claims

17   brought by Zher for CVS because they never pleaded them.

18          And I suspect this is not a one-off issue, Your

19   Honor.  And that further exacerbates the prejudice here.

20          Again, in their CMC statement for the first time,

21   despite multiple efforts from me to meet and confer with

22   plaintiffs about this, they again grasp at straws and mention

23   Robert Fields.

24          Again, I mentioned earlier, Robert Fields did not

25   fill at CVS, he filled at ShopRite and Giant.  And in any

1    event, as a Maryland plaintiff, he has no claims against any

2    pharmacy defendant.

3         The CVS Records Service Center did produce records

4    from ShopRite to Marker, the third-party record collection

5    agent in this litigation.  But CVS never filled a DFS and

6    never produced records as a defendant in the Fields

7    litigation.

8         Even the Records Service Center records produced to

9    Marker specifically referenced ShopRite.  And the proof of use

10   that Fields submitted with his PFS is a ShopRite bottle.

11        File buys are very common in the pharmacy industry,

12   where records are transferred from one pharmacy to another.

13   That's what occurred here.  That's likely why plaintiffs never

14   questioned why CVS did not fill out a DFS for Fields and why

15   plaintiffs never mentioned Fields to me in my repeated

16   requests for a meet and confer.

17        But just to give this a little bit more clarity, I

18   looked at the paragraph mentioning Robert Fields specifically.

19        The complaint paragraph in the medical monitoring

20   complaint specifically mentions ZHP API sold the United States

21   with the assistance of Huahai, Teva, and Actavis.  Those are

22   the only defendants mentioned in that paragraph.  CVS

23   certainly is not mentioned in that paragraph.

24        But the Fields PFS references CVS as well as other

25   APIs other than ZHP.  So there's a discrepancy between the

1  fact sheet and the complaint.

2          But how is a defendant supposed to know that

3  plaintiffs are pursuing claims against other entities

4  mentioned in the fact sheet when there are very logical

5  reasons why those defendants are not named in the Complaint?

6  Maybe it's because of the de minimis issue with respect to a

7  different API.  Maybe it's because the fill was at ShopRite,

8  not CVS.  I don't know.  But I do know that there is no way

9  that I would know Robert Fields potentially intended to pursue

10 a claim against CVS.  I still don't know that.  He's not.

11         I haven't gone through and compared every fact sheet

12 to the complaint paragraph.  And I don't think that's our

13 burden.  It's not something we should be doing.  But I think

14 plaintiffs are suggesting now that we and every other

15 defendant should have done that.

16         Are we supposed to do that?  How are we supposed to

17 know if plaintiffs are targeting a defendant with respect to a

18 plaintiff's claims if it is not mentioned in the complaint,

19 especially when there are very real de minimis issues

20 associated with the medical monitoring claims in light of the

21 lifetime cumulative threshold that plaintiffs themselves

22 proposed, and especially when plaintiffs have never explained

23 how the LCT concept works in the combination of -- the context

24 of a combination of active ingredients?

25         I think there are very serious due process issues

1    here, and that makes this issue one that goes well beyond

2    Sarah Zher's individual claims because it relates to the scope

3    of the complaint.

4         Is every defendant supposed to scour the PFS and

5    deposition transcripts for every putative class representative

6    for mention of that defendant and then reach out to plaintiff

7    and say, did you really mean not to include us in the

8    complaint paragraph about this plaintiff?

9         If there's an individual medical monitoring claim,

10   even if the class actions for a limited subclass were remanded

11   to its home court, how would defendants know if they were

12   involved in that particular suit other than through the

13   complaint reference?

14        We did not press plaintiffs' experts regarding the de

15   minimis issue relating to the LCT because we were not

16   mentioned in the complaint for plaintiffs like Sarah Zher.

17        So at bottom, if the plaintiffs are -- if the parties

18   are intending to engage in settlement negotiations, how could

19   they do so if they don't know which individual claims are

20   brought against which defendants?

21        You know, I'm going to wrap this up and emphasize

22   that this is not a dispositive motion issue.  I'm not arguing

23   the merits.  I'm not trying to.  But the defendants, CVS in

24   particular, do need to know, indeed, we're entitled to know,

25   which individuals plaintiffs are bringing claims against which

```
 1    individual defendants and what remains of those claims.

 2           It's not a merits issue but an issue about what

 3    claims are being asserted and the prejudice of what plaintiffs

 4    are trying to assert through functionally an amended complaint

 5    but not really an amended complaint and never seeking leave to

 6    amend.

 7           That's a huge problem.  There's real prejudice to the

 8    parties.  And respectfully, Your Honor, we believe CVS is

 9    entitled to dismissal from the medical monitoring complaint.

10           SPECIAL MASTER VANASKIE:  The end of your argument

11    there certainly makes it sound like this is a dispositive

12    motion issue.

13           But let's hear from -- who's addressing this issue

14    for the plaintiffs?

15           MS. GEMAN:  I am, Your Honor.  Good morning.  My name

16    is Rachel Geman, and I am with Lieff Cabraser Heimann &

17    Bernstein speaking for the plaintiffs on this matter.

18           SPECIAL MASTER VANASKIE:  Very well.

19           MS. GEMAN:  Thank you.

20           Your Honor, I do agree essentially that CVS is

21    seeking a rather drastic remedy of dismissal despite being on

22    clear notice of claims against it and the absence of

23    prejudice.

24           I would like, if I could, to begin with a couple of

25    rather dispositive admissions made by Ms. Kapke.
```

1          She acknowledged both that she was on notice of
2    claims against it, claims against CVS.  And just to take a
3    quick pause there, of course CVS has been in every complaint.
4    We have pages of allegations about CVS in the operative
5    complaint, including paragraphs 68 through 76, 488 through
6    497.

7          But the point is, you know, they knew that there were
8    claims.  And she also acknowledged that Ms. Sarah Zher, a
9    Florida rep who is entitled to bring an independent claim for
10   medical monitoring, is indeed an adequate class rep in that
11   she has met the threshold, meaning she took enough bad
12   valsartan to be at, you know, a seriously enhanced risk.

13         So that almost could -- we could almost end with
14   that, but I would like to address all the points if I could
15   very briefly.

16         SPECIAL MASTER VANASKIE:  Just briefly.

17         MS. GEMAN:  I beg your pardon, sir?

18         SPECIAL MASTER VANASKIE:  Briefly, please.

19         MS. GEMAN:  Yeah, yeah.  Okay.

20         So the bottom line is that, you know, CVS knew that
21   Sarah Zher, as addressed in paragraph 13, took contaminated
22   valsartan and that -- and she got some from CVS.  CVS was at
23   her deposition.

24         The quick background process was that we just -- as
25   we honed the class definition, we agreed for certain other

1    plaintiffs that they wouldn't be class reps, but it doesn't

2    mean for purposes of a complaint that they were, you know, not

3    properly in the complaint or not properly noticed.

4         I want to speak about the prejudice.  It seems that

5    we're trying to combine or conflate notice issues with Rule 23

6    issues.

7         The complaint and the class cert motion were

8    100 percent clear that if some took a combination of

9    valsartan, contaminated valsartan, it doesn't have to be one

10   manufacturer, the point is, the relevance is if you have

11   enough to be at the enhanced risk.  So this notion that

12   the so-called de minimis nature of her having taken CVS

13   somehow detracts from the notice of the claim against them is

14   without merit.

15        CVS -- none of the defendants opposed -- in their

16   brief, CVS said we would have ask the expert questions and we

17   would have challenged her adequacy.

18        First of all, none of the class cert defendants could

19   or would have attacked the adequacy in our case.

20        If Your Honor looks at the class cert opp, they don't

21   even mention Rule (a)(4), not at all, because these adequacies

22   are relatively low threshold.  These folks don't have

23   conflicts and they took the medicine and their claims and it's

24   tied up with typicality.  There's no question that she's

25   typical.  The fact that she took a little or a lot via CVS

1    doesn't matter.  The point is CVS was alleged to engage in the

2    misconduct we've alleged, and we have at least one plaintiff

3    that ties it to it.  I don't believe there would have been a

4    separate adequacy brief about this one plaintiff when this was

5    not an argument for anyone else.

6            With respect to the experts, as you know, there

7    was -- the experts spoke about the feasibility of a monitoring

8    program and the pricing of it.  Not one of them on either side

9    went into specific issues about, you know, if somebody took

10   like, you know, 80 percent to get them to the threshold of X

11   and 20 percent of Y.  It doesn't matter for what the experts

12   did.  It's irrelevant.

13           So, you know, respectfully, I don't think there's any

14   prejudice here.  I think the stated prejudice seems to be an

15   after-the-fact attempt perhaps to inject new arguments that

16   weren't in the record, even though there are plenty of class

17   reps, not just Ms. Zher, who like Ms. Zher took, you know --

18   essentially satisfied the class definition through long-term

19   use of valsartan, which foreseeably means you might be at a

20   couple different pharmacies, there might be a couple different

21   APIs.

22           In short, we respectfully believe that the drastic

23   remedy of dismissal is inappropriate given that we have this

24   plaintiff.

25           You know, ideally would there be another clause or

1   sentence in paragraph 13, Sarah Zher, you know, also got

2   valsartan from CVS?  100 percent.  I regret that it's not

3   there.

4          But it seems very tactical for CVS, which has been

5   able to defend this case and has not been able to make any new

6   arguments based on this fact, and taking the complaint as a

7   whole, that they should be dismissed.

8          I'd be happy to answer any questions.

9          SPECIAL MASTER VANASKIE:  All right.  Let me ask a

10  question.

11         MS. GEMAN:  Uh-huh.

12         SPECIAL MASTER VANASKIE:  Yes.  I have one question,

13  because your letter or the letter that was submitted for

14  today's conference also mentions Robert Fields.

15         And do you concede that Mr. Fields is not a proper

16  class representative for a medical monitoring claim against

17  CVS?

18         MS. GEMAN:  We do, only because of the business with

19  the -- you know, being in Maryland against retailers.  But we

20  think he's relevant, though -- I mean, certainly he is an

21  adequate class representative for -- you know, for other types

22  of defendants.  However --

23         SPECIAL MASTER VANASKIE:  Not to CVS?

24         MS. GEMAN:  But not against CVS.

25         But the point -- you know, I think we want to be

1    really -- especially given Ms. Kapke kept mentioning sort of

2    due process.  I mean, we just want to underscore that the

3    extent to which CVS at large knows that there are claims

4    against it in its capacity as a retailer and these claims are

5    by both the independent monitoring class and the remedy class,

6    and so there's just no surprise here.  There's no surprise,

7    there's no prejudice.

8         SPECIAL MASTER VANASKIE:  Anything else on this issue

9    on behalf of CVS?

10        MS. KAPKE:  I just want to follow up and say the

11   reason that the experts were not asked about the -- as

12   Ms. Geman put it, the 80/20 percent de minimis issue is

13   because it didn't come up in the complaint.

14        I would have asked those questions of the experts.

15   We had several experts related to the LCT specifically, none

16   of whom had claims against CVS where there was a CVS plaintiff

17   who had less than 1 percent of the LCT compared to another

18   fill.  And that's what we're talking about.

19        There really is significant prejudice here, because

20   there's not an issue -- the LCT issue and the de minimis issue

21   was not teed up.  We never got the opportunity to tee that up.

22        And I do think that there is a significant typicality

23   and adequacy issue when you have a plaintiff who is going to

24   have to litigate whether there is a de minimis issue.

25        Nobody has briefed that because it never came up with

*United States District Court*

```
 1    any of the prior plaintiffs, because all of the prior
 2    plaintiffs have, at least with respect to CVS, had a
 3    significant enough chunk that the de minimis issue didn't
 4    arose.
 5           But how are we supposed to know that if it's not in
 6    the complaint?  The complaint has to mean something.  And
 7    that's really the issue that I'm looking to get finality on is
 8    where -- what's the scope of the complaint, what's the scope
 9    of the claim, is it limited to the complaint or is it
10    something broader than that?  And if it's something broader
11    than that, how are we supposed to know what that is?
12           SPECIAL MASTER VANASKIE:  All right.  Well, thank
13    you.
14           MS. GEMAN:  Your Honor, would you like me to respond
15    or -- oh, okay.
16           SPECIAL MASTER VANASKIE:  Go ahead, please.  Briefly,
17    please.
18           MS. GEMAN:  I just want to -- you know, again, the
19    class definition has always been clear and transparent that
20    it's a combination of usage.  This is not a surprise.  There's
21    other plaintiffs who had combinations of usages.  It would
22    have been entirely irrelevant and beyond the scope of our
23    experts to opine on legal issues about an ascertainable class
24    definition as distinct from other issues.
25           And finally, this is the first I'm hearing about
```

1  typicality for Ms. Zher.  But again, her claims arise under

2  the same facts, and they arise under the same legal and

3  remedial theories.  There is certainly nothing atypical about

4  Ms. Zher who acquired, consumed dangerous amounts of

5  contaminated medicine over many years.  She's entirely

6  typical, and there's no surprise to our class definition.  And

7  defendants indeed had plenty of opportunity to address that in

8  their papers.

9         SPECIAL MASTER VANASKIE:  All right.  Very well.

10 Thank you.

11        MS. GEMAN:  Thank you.

12        SPECIAL MASTER VANASKIE:  I would not order at this

13 time that CVS -- that plaintiffs be directed to dismiss CVS

14 from the medical monitoring complaint, nor do I think it's

15 appropriate to grant leave to file a motion to dismiss on this

16 ground.  The matter has been presented now in a couple of

17 letter briefs, and it's clear to me that there is standing on

18 the part of Ms. Zher with respect to a claim against CVS.

19 Whether that holds up in more of a summary judgment type

20 proceeding, I'm not sure, but I don't think it's appropriate

21 at this time to start ticking off individual claims against

22 retail defendants based upon what has been disclosed or not

23 disclosed in the complaint and in the fact sheets, the PFS or

24 in discovery.  I think enough has been presented here to at

25 least have a colorable claim on behalf of Ms. Zher against

1  CVS.

2       All right.  Anything else?

3       (No response.)

4       SPECIAL MASTER VANASKIE:  Judge Kugler?

5       THE COURT:  I'm here.  I'm here.

6       SPECIAL MASTER VANASKIE:  I don't know that we have

7  anything else for today.

8       THE COURT:  I think we're done.

9       MS. KAPKE:  Your Honor --

10      THE COURT:  Yes.

11      SPECIAL MASTER VANASKIE:  Go ahead.

12      MS. KAPKE:  I would just -- I think, you know,

13  plaintiffs said that they would like to -- they wish they

14  would have amended the complaint.

15      At some point, I think the complaint does need to be

16  final.  And I hear what you're saying, that you think that

17  there's enough in the fact sheet.

18      I guess -- I think there should be an amended

19  complaint here.  At some point we have to rely on the

20  complaint itself.  And so I wonder what the next step is.

21  When's the next claimant going to assert claims based on the

22  fact sheet as opposed to the complaint?  And I do have

23  overarching concerns, not just about Sarah Zher, that the

24  complaint is not final here.  And I think that's a significant

25  problem.

1          SPECIAL MASTER VANASKIE:  I understand the concern

2     that you're articulating, but complaints can be amended in a

3     number of ways and even informally and even at trial.

4          I'm reluctant to open up pleadings.  It seems to me

5     that what has happened here is essentially the -- in the

6     briefs that have been submitted to me, the letter briefs that

7     have been submitted on this issue, the plaintiffs have

8     essentially said that they're amending their complaint to

9     identify Sarah Zher as a class representative for claims

10    against CVS because she purchased contaminated valsartan at

11    CVS.  I think in effect you have that.  But I can't go beyond

12    that right now.

13         MS. KAPKE:  So is this the last amended complaint

14    that plaintiffs are -- are they going to continue to get

15    opportunities to amend the complaint?

16         I think that's -- that's what we're searching for

17    here, is a stop to plaintiffs amending the complaints

18    informally.

19         You know, at some point we are entitled to know the

20    scope of the claims.  And that's what I'm trying to get

21    through this procedural issue is some finality to what claims

22    are being asserted.

23         And so I understand the Court's ruling with respect

24    to Sarah Zher, but I think -- I think we need to figure out if

25    there are any other unasserted, unpleaded claims.

```
 1           I don't want this to come up with another plaintiff
 2    down the road that brings up claims against another defendant
 3    or other unasserted claims.  At some point we have to have
 4    finality here.
 5           SPECIAL MASTER VANASKIE:  Well, I understand that you
 6    have to have finality, and I think you basically do have
 7    finality.  You did raise an issue.  And the plaintiffs did
 8    respond to say that you were on notice of the fact that Sarah
 9    Zher purchased contaminated or allegedly contaminated
10    valsartan at CVS.  I think it's fair.
11           MS. KAPKE:  Thank you, Your Honor.
12           SPECIAL MASTER VANASKIE:  I think that's all we can
13    say on that.
14           Anything else?
15           Go ahead, Judge Kugler.
16           THE COURT:  Is there anything else?
17           I just want to ask if anybody has any other issues
18    they want to raise at this time with either of us.
19           MR. SLATER:  Nothing I'm aware of for the plaintiffs,
20    Your Honor.
21           MR. CARTWRIGHT:  Your Honor, I may have one.
22           My name is Daniel Cartwright.  I'm with Kenney
23    Shelton Liptak Nowak and I represent the Tops defendants in
24    the Vindigni matter.  It originally came out of the Northern
25    District of New York.
```

```
 1              THE COURT:  Okay.

 2              MR. CARTWRIGHT:  I just wanted to quickly raise

 3    similar issues to the one previous, but we were removed as a

 4    defendant in the amended complaint that the Vindignis put in

 5    in February.  We were just looking for dismissal.  I thought

 6    we were on for that today, but it appears we may not be.  I

 7    just wanted to see how we could go about getting ourselves

 8    removed from this case and formally dismissed.

 9              I believe we formally either made an application to

10    the Court or requested it, and we were told it would come in

11    the form of an order to show cause.

12              THE COURT:  Well, I -- you have to bring me up to

13    speed.

14              Why do you think you should be dismissed?

15              MR. CARTWRIGHT:  We were removed as a defendant from

16    the amended complaint.

17              THE COURT:  What do you mean, you were removed as a

18    defendant from?  I don't understand what you're talking about,

19    I'm sorry.

20              MR. CARTWRIGHT:  We were not -- meaning that we were

21    named as a defendant, Tops was named as a defendant in the

22    original complaint.  And then there was an amended complaint

23    filed February 8, and we were removed as a defendant.  We were

24    not named.

25              THE COURT:  You weren't included as a defendant in
```

1  the amended complaint.  Correct?

2          MR. CARTWRIGHT:  Correct.

3          THE COURT:  So I don't understand what the issue is.

4  If you're not a defendant, then you're not a defendant, are

5  you?

6          MR. CARTWRIGHT:  I believe we had either conferred

7  with plaintiffs' counsel or with the Court about being

8  formally removed from the multidistrict litigation.  I believe

9  we had to make some sort of appearance in order to be removed

10 as a defendant.  So I'm not sure either, so I'm raising the

11 question.

12         If there's nothing to do, then great.  But if there's

13 any sort of application, petition, order to show cause or

14 anything like that that we need to make, then I would just ask

15 what that is so that we can do it and be formally dismissed.

16         THE COURT:  Who represented the plaintiff in your

17 case?

18         MR. CARTWRIGHT:  It is represented by Robert Julian

19 in Utica.

20         THE COURT:  Have you talked to Mr. Julian in Utica

21 about dismissal?

22         MR. CARTWRIGHT:  Yes.  And I believe in order to have

23 us dismissed, it's sort of a blessing from the Court.

24         THE COURT:  You could do a stipulation of dismissal

25 from both sides.  Just file a stipulation of dismissal signed

```
 1    by plaintiffs' counsel and by you, and that's the end of if.

 2            MR. CARTWRIGHT:  Okay, great.  We'll do that.  Thank

 3    you, Judge.

 4            THE COURT:  Okay.  Anything else?

 5            (No response.)

 6            THE COURT:  All right.  Thank you, everybody.  We'll

 7    see you in a month if not sooner.

 8            (Proceedings concluded at 11:08 a.m.)

 9                             -   -   -

10            I certify that the foregoing is a correct transcript

11    from the record of proceedings in the above-entitled matter.

12

13    /S/ Ann Marie Mitchell, CCR, CRR, RDR, RMR
      Court Reporter/Transcriber
14

15    29th day of July, 2022
              Date
16

17

18

19

20

21

22

23

24

25
```

*United States District Court*

**$**

**$100** [2] - 22:20, 23:19

**/**

**/S** [1] - 50:13

**0**

**07068** [1] - 1:16
**08101** [1] - 1:8

**1**

**1** [2] - 7:5, 42:17
**1,000** [1] - 32:18
**10** [2] - 7:6, 17:6
**100** [1] - 39:8, 41:2
**1003** [1] - 2:7
**103** [1] - 1:16
**10:01** [2] - 1:9, 4:3
**11** [1] - 2:19
**1100** [1] - 1:19
**11:08** [1] - 50:8
**12** [4] - 4:17, 12:15, 17:5, 18:12
**13** [2] - 38:21, 41:1
**13087** [1] - 2:24
**1515** [1] - 1:19
**18** [2] - 32:19, 33:9
**18-day** [5] - 30:17, 31:1, 31:6, 31:20, 32:13
**19-cv-01070** [1] - 9:23
**19-md-02875** [1] - 1:4
**191032** [1] - 1:20
**1st** [2] - 16:5, 20:1

**2**

**2** [3] - 5:21, 7:5, 32:19
**20** [1] - 40:11
**2018** [1] - 13:2
**2019** [1] - 9:24
**2022** [2] - 1:8, 50:15
**21** [1] - 7:22
**23** [3] - 10:5, 26:16, 39:5
**23(f** [2] - 16:20, 18:21
**250** [1] - 2:7
**2500** [1] - 2:10
**28** [3] - 1:8, 11:13, 17:7
**29th** [1] - 50:15

**3**

**3** [2] - 4:15, 7:9
**30** [1] - 6:22
**30305** [1] - 2:11
**3100** [1] - 2:15

**32** [1] - 32:18
**3333** [1] - 2:10
**35215** [1] - 2:4

**4**

**4** [1] - 7:10
**4615** [1] - 2:23
**46204** [1] - 2:20
**48** [1] - 17:6
**488** [1] - 38:5
**497** [1] - 38:6
**4th** [1] - 1:7

**5**

**5** [2] - 7:10, 13:3
**54** [1] - 32:22
**576-7018** [1] - 1:23

**6**

**6** [2] - 4:22, 7:11
**60** [1] - 11:11
**60601** [2] - 2:15
**68** [1] - 38:5

**7**

**7** [1] - 7:6
**76** [1] - 38:5
**77** [1] - 2:15

**8**

**8** [2] - 7:12, 48:23
**80** [1] - 40:10
**80/20** [1] - 42:12
**856** [1] - 1:23

**9**

**9** [1] - 7:13
**9617** [1] - 2:3
**990** [1] - 2:24

**A**

**a)(4** [1] - 39:21
**a.m** [3] - 1:9, 4:3, 50:8
**able** [1] - 41:5
**above-entitled** [1] - 50:11
**absence** [1] - 37:22
**absolutely** [1] - 14:20
**accordance** [1] - 16:4
**according** [2] - 31:7, 32:16
**acknowledged** [2] - 38:1, 38:8
**acquired** [1] - 44:4
**Actavis** [6] - 2:12, 2:12, 2:16, 2:17,

10:12, 34:21
**action** [5] - 9:7, 18:5, 28:22, 28:25, 29:21
**ACTION** [1] - 1:3
**actions** [1] - 36:10
**Actions** [1] - 13:2
**active** [2] - 32:18, 35:24
**actual** [1] - 23:17
**ADAM** [1] - 1:15
**Adam** [1] - 10:7
**add** [1] - 22:11
**additional** [1] - 11:11
**address** [2] - 38:14, 44:7
**addressed** [4] - 8:10, 8:12, 38:21
**addressing** [2] - 8:19, 37:13
**adequacies** [1] - 39:21
**adequacy** [4] - 39:17, 39:19, 40:4, 42:23
**adequate** [2] - 38:10, 41:21
**adjudicate** [1] - 10:3
**adjudicating** [1] - 8:25
**administrator** [1] - 6:13
**admissions** [1] - 37:25
**advance** [3] - 16:25, 18:14, 20:4
**adverse** [2] - 22:6, 22:7
**after-the-fact** [1] - 40:15
**agent** [1] - 34:5
**ago** [2] - 8:12, 11:25
**agree** [3] - 4:22, 16:6, 37:20
**agreed** [1] - 38:25
**ahead** [5] - 10:18, 27:22, 43:16, 45:11, 47:15
**Aid** [1] - 2:21
**aided** [1] - 1:25
**air** [1] - 22:17
**Alabama** [1] - 2:4
**aligned** [1] - 14:17
**alignment** [1] - 12:18
**allegations** [4] - 30:13, 30:14, 38:4
**allege** [1] - 13:24
**alleged** [3] - 13:24, 40:1, 40:2
**allegedly** [1] - 47:9
**allow** [1] - 19:21
**allowed** [1] - 29:1

**alluded** [1] - 21:13
**almost** [2] - 38:13
**ALSO** [1] - 3:1
**amend** [2] - 37:6, 46:15
**amended** [11] - 6:17, 37:4, 37:5, 45:14, 45:18, 46:2, 46:13, 48:4, 48:16, 48:22, 49:1
**amending** [2] - 46:8, 46:17
**amount** [1] - 32:22
**amounts** [1] - 44:4
**analogous** [2] - 13:23, 14:2
**analysis** [2] - 12:16, 14:7
**Anderson** [1] - 5:2
**Ann** [1] - 50:13
**ann** [1] - 1:22
**AnnMarie_Mitchell@ njd.uscourts.gov** [1] - 1:22
**answer** [2] - 25:23, 41:8
**answered** [1] - 23:21
**antitrust** [3] - 13:14, 14:10, 23:1
**Antitrust** [1] - 13:20
**anyhow** [1] - 27:7
**anyway** [1] - 26:22
**API** [6] - 12:7, 33:1, 33:2, 33:3, 34:20, 35:7
**APIs** [2] - 34:25, 40:21
**appear** [1] - 5:6
**appearance** [1] - 49:9
**application** [2] - 48:9, 49:13
**apply** [1] - 12:16
**appreciate** [2] - 15:25, 19:2
**approach** [1] - 20:19
**appropriate** [3] - 6:18, 44:15, 44:20
**approval** [1] - 30:7
**April** [1] - 9:24
**arbitration** [1] - 13:13
**arguing** [1] - 36:22
**argument** [2] - 37:10, 40:5
**arguments** [5] - 17:20, 31:22, 33:9, 40:15, 41:6
**arise** [2] - 44:1, 44:2
**arising** [2] - 19:22, 19:23
**arose** [1] - 43:4
**articulated** [1] - 20:1

**articulating** [1] - 46:2
**ascertainable** [1] - 43:23
**aside** [4] - 17:8, 18:4, 22:18, 29:5
**assert** [3] - 29:21, 37:4, 45:21
**asserted** [4] - 28:23, 30:1, 37:3, 46:22
**assistance** [1] - 34:21
**associated** [1] - 35:20
**assumption** [1] - 16:18
**Atlanta** [1] - 2:11
**attached** [1] - 12:21
**attacked** [1] - 39:19
**attempt** [1] - 40:15
**attempted** [1] - 31:23
**attorney** [1] - 6:7
**atypical** [1] - 44:3
**Audrey** [1] - 7:11
**Aurobindo** [1] - 30:6
**authored** [1] - 13:1
**authorizations** [1] - 6:18
**avoid** [1] - 20:25
**aware** [2] - 11:9, 47:19

**B**

**background** [1] - 38:24
**backwards** [1] - 16:2
**bad** [1] - 38:11
**bang** [1] - 15:16
**BARNES** [1] - 2:18
**based** [9] - 10:8, 12:2, 13:13, 13:14, 15:14, 25:24, 41:6, 44:22, 45:21
**basis** [1] - 25:17
**battle** [1] - 5:17
**beg** [1] - 38:17
**begin** [1] - 37:24
**begrudge** [1] - 19:4
**behalf** [6] - 6:5, 15:22, 19:15, 20:21, 42:9, 44:25
**bellwether** [4] - 24:4, 24:15, 24:18, 24:23
**belonging** [1] - 29:25
**Bernstein** [1] - 37:17
**BERNSTEIN** [1] - 2:6
**best** [7] - 9:18, 15:13, 20:14, 21:24, 22:8, 24:25, 27:4
**better** [1] - 27:6
**between** [3] - 7:16, 12:18, 34:25
**beyond** [3] - 36:1,

43:22, 46:11
**BI** [6] - 12:19, 14:15, 14:18, 15:6, 22:7, 24:23
**big** [2] - 25:5, 25:23
**biggest** [1] - 15:16
**billing** [2] - 5:15, 5:18
**Birmingham** [1] - 2:4
**bit** [3] - 8:14, 16:2, 34:17
**bite** [2] - 25:5, 25:8
**blessing** [1] - 49:23
**Blue** [2] - 13:19
**board** [1] - 4:4
**bodily** [1] - 12:12
**bottle** [1] - 34:10
**bottom** [2] - 36:17, 38:20
**Branch** [1] - 5:5
**breach** [1] - 28:24
**breached** [1] - 32:3
**Brian** [1] - 9:9
**brief** [6] - 12:22, 32:6, 33:13, 33:15, 39:16, 40:4
**briefed** [2] - 20:20, 42:25
**briefing** [2] - 11:3, 12:22
**briefly** [4] - 38:15, 38:16, 38:18, 43:16
**briefs** [3] - 44:17, 46:6
**bring** [3] - 20:23, 38:9, 48:12
**bringing** [3] - 28:9, 32:4, 36:25
**brings** [1] - 47:2
**broader** [1] - 43:10
**Brooks** [1] - 6:6
**brought** [3] - 10:17, 33:17, 36:20
**brought...or** [1] - 13:12
**buck** [1] - 15:16
**Building** [1] - 1:7
**burden** [1] - 35:13
**business** [2] - 22:16, 41:18
**buying** [1] - 23:6
**buys** [1] - 34:11

---

**C**

**Cabraser** [1] - 37:16
**CABRASER** [1] - 2:6
**Cain** [1] - 7:6
**Callahan** [1] - 5:2
**Camber** [3] - 31:13, 31:21, 33:7
**Camden** [1] - 1:8

cancer [1] - 32:10
**cannot** [2] - 17:4, 17:25
**capacity** [1] - 42:4
**Carrie** [1] - 7:6
**carried** [2] - 5:5, 7:7
**carry** [2] - 4:23, 6:12
**cart** [2] - 20:5, 20:10
**Cartwright** [1] - 47:22
**CARTWRIGHT** [10] - 2:23, 47:21, 48:2, 48:15, 48:20, 49:2, 49:6, 49:18, 49:22, 50:2
**CASE** [1] - 1:5
**case** [37] - 7:15, 7:18, 8:13, 8:19, 9:10, 9:13, 9:15, 9:25, 10:2, 10:24, 11:5, 11:8, 11:17, 11:18, 14:10, 14:24, 15:3, 15:7, 15:17, 16:11, 17:16, 18:6, 18:11, 20:20, 23:15, 23:17, 23:25, 24:6, 25:15, 26:5, 27:4, 39:19, 41:5, 48:8, 49:17
**Case** [1] - 11:13
**cases** [17] - 5:3, 7:1, 7:7, 8:8, 9:1, 13:7, 13:11, 13:14, 16:13, 16:15, 18:12, 19:7, 19:12, 19:14, 23:2, 24:4, 26:6
**causes** [1] - 29:21
**CCR** [1] - 50:13
**Celeste** [3] - 28:18, 29:3, 29:10
**Center** [7] - 12:23, 13:1, 13:6, 16:4, 22:25, 34:3, 34:8
**cert** [7] - 11:3, 12:22, 21:2, 22:17, 39:7, 39:18, 39:20
**certain** [3] - 7:23, 14:16, 38:25
**certainly** [14] - 10:16, 11:3, 15:25, 17:10, 17:16, 18:9, 19:4, 19:11, 19:17, 21:20, 34:23, 37:11, 41:20, 44:3
**certainty** [2] - 17:2, 17:24
**certification** [14] - 7:24, 15:11, 16:17, 16:19, 17:9, 18:23, 19:3, 20:7, 20:8, 20:21, 20:23, 24:12, 25:2, 32:4

certify [4] - 10:3, 26:11, 26:17, 50:10
**certifying** [1] - 8:24
**challenge** [2] - 10:16, 10:20
**challenged** [1] - 39:17
**challenges** [1] - 13:8
**Chicago** [1] - 2:15
**choices** [1] - 12:19
**chunk** [1] - 43:3
**Circuit** [4] - 8:13, 18:22, 19:20, 20:9
**cited** [1] - 8:23
**cites** [1] - 13:19
**CIVIL** [1] - 1:3
**claim** [20] - 11:22, 19:13, 19:18, 20:7, 20:24, 24:7, 25:18, 26:10, 29:2, 29:25, 35:10, 36:9, 38:9, 39:13, 41:16, 43:9, 44:18, 44:25
**claimant** [1] - 45:21
**claims** [56] - 12:9, 12:10, 12:12, 12:18, 12:19, 13:11, 19:15, 19:19, 19:21, 20:22, 24:9, 24:11, 25:24, 28:14, 28:15, 28:18, 28:21, 28:23, 29:3, 29:4, 29:11, 29:13, 29:18, 29:20, 30:25, 31:9, 32:5, 32:8, 33:16, 34:1, 35:3, 35:18, 35:20, 36:2, 36:19, 36:25, 37:1, 37:3, 37:22, 38:2, 38:8, 39:23, 42:3, 42:4, 42:16, 44:1, 44:21, 45:21, 46:9, 46:20, 46:21, 46:25, 47:2, 47:3
**clarification** [1] - 28:5
**clarity** [2] - 28:7, 34:17
**class** [53] - 7:24, 12:2, 14:11, 14:17, 14:18, 15:1, 15:7, 15:10, 15:14, 16:16, 16:19, 17:9, 18:5, 18:23, 19:3, 19:8, 20:7, 20:8, 20:21, 20:22, 21:1, 21:21, 21:23, 22:9, 22:12, 24:12, 25:10, 25:17, 26:11, 26:17, 26:19, 32:3, 32:16, 36:5, 36:10, 38:10, 38:25, 39:1, 39:7, 39:18, 39:20, 40:16, 40:18, 41:16, 41:21, 42:5, 43:19,

43:23, 44:6, 46:9
**Class** [1] - 13:2
**class-wide** [1] - 25:17
**classes** [8] - 8:25, 10:3, 13:24, 16:22, 18:17, 21:12, 21:16, 25:3
**clause** [1] - 40:25
**cleanest** [2] - 15:14, 23:9
**clear** [6] - 16:9, 28:9, 37:22, 39:8, 43:19, 44:17
**clearly** [2] - 12:14, 22:25
**Clerk** [1] - 3:2
**clients** [1] - 22:7
**close** [1] - 32:14
**closer** [1] - 21:18
**CMC** [2] - 29:6, 33:20
**code** [1] - 30:20
**Cohen** [1] - 1:7
**collection** [1] - 34:4
**Collins** [1] - 7:6
**colorable** [1] - 44:25
**combination** [5] - 25:7, 35:23, 35:24, 39:8, 43:20
**combinations** [1] - 43:21
**combine** [1] - 39:5
**coming** [1] - 23:3
**Commencing** [1] - 1:9
**comments** [1] - 24:3
**common** [3] - 14:14, 15:6, 34:11
**compared** [2] - 35:11, 42:17
**complained** [2] - 11:20, 31:4
**complaining** [1] - 26:13
**complaint** [48] - 28:16, 28:20, 28:24, 29:17, 30:4, 31:11, 31:15, 31:23, 33:6, 34:19, 34:20, 35:1, 35:12, 35:18, 36:3, 36:8, 36:13, 36:16, 37:4, 37:5, 37:9, 38:3, 38:5, 39:2, 39:3, 39:7, 41:6, 42:13, 43:6, 43:8, 43:9, 44:14, 44:23, 45:14, 45:15, 45:19, 45:20, 45:22, 45:24, 46:8, 46:13, 46:15, 48:4, 48:16, 48:22, 49:1
**Complaint** [1] - 35:5
**complaints** [3] - 9:5,

46:2, 46:17
**complete** [1] - 11:3
**completely** [2] - 14:2, 31:7
**complexity** [1] - 13:17
**complicating** [1] - 18:19
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concede** [1] - 41:15
**concept** [2] - 23:4, 35:23
**concern** [1] - 46:1
**concerned** [2] - 7:21, 26:9
**concerns** [1] - 45:23
**conclude** [1] - 14:19
**concluded** [1] - 50:8
**confer** [2] - 33:21, 34:16
**CONFERENCE** [1] - 1:5
**conference** [2] - 11:22, 41:14
**conferred** [2] - 11:10, 49:6
**conflate** [1] - 39:5
**conflicts** [1] - 39:23
**confused** [1] - 29:8
**conjecture** [1] - 18:25
**conjecturing** [1] - 18:24
**Connie** [1] - 7:5
**consider** [2] - 10:6, 15:5
**considerable** [1] - 12:15
**considering** [1] - 25:1
**consume** [1] - 22:5
**consumed** [1] - 44:4
**consumer** [17] - 8:24, 12:2, 12:9, 12:18, 14:5, 14:9, 14:17, 15:7, 15:13, 21:23, 22:8, 23:17, 25:9, 25:13, 25:15, 26:24
**consumers** [4] - 14:4, 21:25, 22:24, 23:5
**contaminated** [7] - 23:22, 38:21, 39:9, 44:5, 46:10, 47:9
**context** [2] - 28:13, 35:23
**continue** [3] - 23:25, 27:4, 46:14
**Continued** [1] - 2:1
**continues** [1] - 8:14
**contrast** [1] - 32:25
**contrasted** [1] - 33:11

contribute [1] - 33:9
controversy [3] - 7:21, 19:13, 19:18
conveyed [1] - 11:7
convinced [1] - 26:22
Cooper [2] - 1:7, 5:10
core [1] - 5:16
Corporation [1] - 2:21
correct [7] - 4:19, 4:20, 9:22, 30:16, 49:1, 49:2, 50:10
correctly [1] - 11:7
counsel [4] - 8:12, 27:25, 49:7, 50:1
couple [4] - 37:24, 40:20, 44:16
course [2] - 18:17, 38:3
Court [5] - 1:22, 10:1, 17:10, 18:1, 50:13
court [4] - 9:6, 17:22, 28:5, 36:11
COURT [1] - 1:1
Court's [5] - 16:5, 17:13, 18:3, 29:1, 46:23
Courthouse [1] - 1:7
Courtroom [1] - 3:3
courts [1] - 9:2
created [2] - 22:6, 22:7
creativity [2] - 13:8, 16:3
criteria [1] - 32:17
Cross [1] - 13:19
crossed [1] - 33:2
CRR [2] - 1:22, 50:13
cumulative [1] - 31:22, 32:21, 35:21
current [1] - 29:18
cut [1] - 24:9
CVS [73] - 2:20, 27:17, 28:1, 28:6, 28:8, 28:14, 28:16, 28:17, 28:19, 28:21, 28:22, 29:9, 29:13, 29:14, 29:17, 29:18, 29:20, 29:22, 30:16, 30:17, 30:24, 31:2, 31:9, 31:10, 31:13, 31:14, 31:18, 31:21, 32:5, 32:14, 32:23, 33:7, 33:17, 33:25, 34:3, 34:5, 34:14, 34:22, 34:24, 35:8, 35:10, 36:23, 37:8, 37:20, 38:2, 38:3, 38:4, 38:20, 38:22, 39:12, 39:15, 39:16, 39:25, 40:1, 41:2, 41:4,

41:17, 41:23, 41:24, 42:3, 42:9, 42:16, 43:2, 44:13, 44:18, 45:1, 46:10, 46:11, 47:10

## D

D-A-I-S [1] - 5:21
Dais [1] - 5:21
damages [1] - 22:19
dandy [1] - 4:7
dangerous [1] - 44:4
Daniel [1] - 47:22
DANIEL [1] - 2:23
dare [1] - 15:8
Daring [4] - 28:18, 29:3, 29:10, 29:20
Date [1] - 50:15
Davis [1] - 4:23
days [6] - 6:22, 8:12, 11:11, 32:18, 32:19, 33:9
de [10] - 31:20, 32:2, 35:6, 35:19, 36:14, 39:12, 42:12, 42:20, 42:24, 43:3
Debra [1] - 7:9
decide [1] - 19:9
decides [1] - 15:8
declined [1] - 17:14
defend [1] - 41:5
defendant [24] - 9:24, 11:23, 19:23, 23:17, 30:11, 30:23, 34:2, 34:6, 35:2, 35:15, 35:17, 36:4, 36:6, 47:2, 48:4, 48:15, 48:18, 48:21, 48:23, 48:25, 49:4, 49:10
Defendant [1] - 2:24
Defendants [3] - 2:11, 2:16, 2:20
defendants [37] - 7:17, 8:7, 8:23, 10:8, 10:14, 11:10, 11:12, 11:18, 12:3, 12:7, 13:15, 15:5, 15:23, 17:12, 17:19, 20:24, 21:5, 26:9, 26:13, 28:23, 29:12, 30:11, 30:24, 31:9, 34:22, 35:5, 36:11, 36:20, 36:23, 37:1, 39:15, 39:18, 41:22, 44:7, 44:22, 47:23
defense [5] - 4:14, 4:16, 7:2, 7:19, 8:12
deficiency [1] - 5:16
define [1] - 16:21

definition [5] - 38:25, 40:18, 43:19, 43:24, 44:6
denies [1] - 18:23
Dennis [1] - 5:21
deposition [3] - 30:18, 36:5, 38:23
depositions [1] - 33:15
Deputy [1] - 3:3
Dequeant [1] - 7:11
DEQUEANT [1] - 7:12
desires [1] - 14:21
desk [1] - 21:17
despite [2] - 33:21, 37:21
determine [1] - 22:2
detracts [1] - 39:13
DFS [3] - 31:3, 34:5, 34:14
dice [1] - 25:17
difference [1] - 14:7
different [5] - 18:20, 18:24, 35:7, 40:20
differently [1] - 32:4
difficult [1] - 8:4
direct [11] - 9:16, 9:17, 13:23, 14:3, 14:5, 14:9, 17:22, 21:25, 22:24, 23:2, 25:13
directed [1] - 44:13
direction [3] - 11:5, 18:24, 25:9
directions [1] - 18:20
directly [2] - 11:7, 26:12
directs [1] - 15:10
disagreements [1] - 17:2
disclosed [2] - 44:22, 44:23
discovery [2] - 13:5, 44:24
discrepancy [1] - 34:25
discrete [1] - 20:3
discuss [4] - 29:14, 29:17, 32:2, 33:15
discussed [2] - 7:20, 30:18
discussing [1] - 30:5
discussion [1] - 11:2
dismiss [3] - 4:18, 44:13, 44:15
dismissal [8] - 6:1, 37:9, 37:21, 40:23, 48:5, 49:21, 49:24, 49:25
dismissed [9] - 5:3, 28:18, 28:19, 29:19,

41:7, 48:8, 48:14, 49:15, 49:23
dispose [1] - 24:11
disposition [1] - 21:18
dispositive [14] - 10:17, 10:22, 11:6, 11:15, 11:20, 12:14, 14:12, 15:15, 21:14, 21:17, 28:12, 36:22, 37:11, 37:25
dispute [2] - 7:16, 29:23
distant [1] - 8:3
distinct [1] - 43:24
distributed [1] - 30:10
District [2] - 9:6, 47:25
DISTRICT [3] - 1:1, 1:1, 1:11
divided [1] - 13:24
docketed [1] - 11:14
doctrine [1] - 7:22
done [1] - 12:17, 14:23, 16:25, 19:6, 25:20, 26:20, 26:21, 27:3, 35:15, 45:8
dosage [1] - 33:1
dose [1] - 32:8
down [3] - 15:15, 26:5, 47:2
drastic [2] - 37:21, 40:22
Drive [1] - 2:15
drug [1] - 22:5
due [5] - 16:1, 21:5, 24:19, 35:25, 42:2
during [1] - 21:16

## E

easiest [1] - 23:24
easily [1] - 33:2
easy [1] - 4:10
economic [13] - 11:16, 12:18, 14:15, 14:17, 15:6, 16:6, 16:13, 18:6, 22:8, 22:12, 25:10, 25:17, 25:24
effect [4] - 22:6, 22:7, 25:16, 46:11
effectively [1] - 24:17
efficiency [1] - 12:20
efficient [1] - 23:9
effort [2] - 20:14, 28:10
efforts [1] - 33:21
Eighth [1] - 2:7
Eisenhower [1] - 1:16
either [9] - 17:22, 20:22, 21:9, 26:15, 40:8, 47:18, 48:9,

49:6, 49:10
Elganam [1] - 7:12
ELGANAM [1] - 7:12
Elie [1] - 6:2
ELIE [1] - 6:2
emphasize [2] - 21:8, 36:21
enable [1] - 19:8
encompass [1] - 14:13
encompasses [1] - 15:5
end [4] - 26:5, 37:10, 38:13, 50:1
endeavoring [1] - 26:19
engage [2] - 36:18, 40:1
engender [1] - 14:13
engendering [1] - 24:6
enhanced [2] - 38:12, 39:11
enjoying [1] - 4:7
entered [1] - 20:6
entering [1] - 5:14
entire [4] - 7:21, 19:12, 19:17, 23:11
entirely [4] - 14:16, 22:3, 31:19, 43:22, 44:5
entities [1] - 35:3
entitled [6] - 21:2, 36:24, 37:9, 38:9, 46:19, 50:11
errors [1] - 6:18
Erskine [1] - 6:14
especially [3] - 35:19, 35:22, 42:1
ESQUIRE [9] - 1:15, 1:19, 2:3, 2:6, 2:10, 2:14, 2:19, 2:23, 3:2
essentially [5] - 21:25, 37:20, 40:18, 46:5, 46:8
establish [2] - 31:24, 32:21
estate [4] - 5:10, 6:7, 6:8, 6:14
event [4] - 10:2, 19:23, 21:6, 34:1
exacerbates [1] - 33:19
exact [1] - 14:9
example [5] - 13:19, 14:1, 15:8, 24:14, 25:8
excellent [1] - 13:1
excess [1] - 22:19
exchange [1] - 11:15

**exercised** [1] - 16:3
**exhibit** [1] - 12:22
**exist** [1] - 26:14
**expert** [4] - 11:6, 11:15, 31:24, 39:16
**experts** [11] - 32:1, 32:2, 33:14, 36:14, 40:6, 40:7, 40:11, 42:11, 42:14, 42:15, 43:23
**explain** [1] - 29:7
**explained** [1] - 35:22
**expose** [1] - 23:10
**exposure** [1] - 32:21
**express** [1] - 22:13
**expressed** [1] - 12:3
**expression** [1] - 11:19
**expressly** [1] - 17:17
**extant** [1] - 10:2
**extent** [2] - 10:15, 42:3

**F**

**face** [1] - 23:17
**faced** [1] - 11:18
**facilitate** [1] - 13:18
**facilitated** [1] - 30:7
**Facility** [1] - 2:24
**fact** [16] - 6:17, 11:19, 14:21, 30:18, 30:20, 31:3, 35:1, 35:4, 35:11, 39:25, 40:15, 41:6, 44:23, 45:17, 45:22, 47:8
**factfinder** [1] - 22:2
**facts** [2] - 15:6, 44:2
**factual** [3] - 12:12, 14:14, 21:24
**fair** [2] - 26:16, 47:10
**fairly** [1] - 16:9
**fastest** [1] - 23:24
**feasibility** [1] - 40:7
**February** [2] - 48:5, 48:23
**Federal** [2] - 12:22, 22:25
**few** [1] - 20:16
**Fields** [14] - 29:6, 29:8, 29:10, 33:23, 33:24, 34:6, 34:10, 34:14, 34:15, 34:18, 34:24, 35:9, 41:14, 41:15
**figure** [2] - 7:17, 46:24
**file** [3] - 34:11, 44:15, 49:25
**filed** [10] - 6:18, 9:5, 9:10, 9:15, 9:16, 9:23, 12:14, 17:22,
48:23
**filing** [3] - 9:16, 9:17, 13:12
**fill** [7] - 31:1, 31:6, 31:21, 33:25, 34:14, 35:7, 42:18
**filled** [10] - 29:8, 29:15, 30:16, 31:10, 31:14, 32:13, 32:23, 33:3, 33:25, 34:5
**final** [5] - 21:15, 23:14, 27:5, 45:16, 45:24
**finality** [5] - 43:7, 46:21, 47:4, 47:6, 47:7
**finally** [1] - 43:25
**fine** [1] - 15:9
**Fine** [1] - 4:7
**firm** [2] - 5:11, 5:22
**first** [18] - 12:2, 12:4, 15:7, 15:9, 15:10, 16:6, 16:10, 20:15, 21:21, 22:22, 25:23, 26:25, 27:11, 29:5, 33:20, 39:18, 43:25
**Fischer** [1] - 8:13
**five** [2] - 4:23, 5:8
**fix** [1] - 6:17
**flexibility** [1] - 14:22
**Floor** [1] - 2:7
**Florida** [1] - 38:9
**FLSA** [1] - 8:13
**focus** [2] - 16:12, 18:5
**folks** [4] - 8:1, 27:3, 27:8, 39:22
**follow** [1] - 42:10
**followed** [1] - 21:16
**foregoing** [1] - 50:10
**foreign** [1] - 17:19
**foreseeably** [1] - 40:19
**form** [2] - 14:4, 48:11
**formally** [4] - 48:8, 48:9, 49:8, 49:15
**forth** [1] - 15:1
**forthcoming** [1] - 16:16
**forward** [4] - 4:24, 7:7, 15:17, 16:15
**four** [2] - 5:8, 10:15
**frame** [1] - 11:2
**framed** [1] - 8:23
**Frances** [1] - 7:6
**Frank** [1] - 7:10
**frankly** [2] - 23:9, 26:14
**fraud** [1] - 25:22
**FREEMAN** [1] - 1:15
**front** [1] - 10:18
**full** [1] - 26:16

**fully** [1] - 20:20
**functionally** [1] - 37:4
**futile** [1] - 18:22
**future** [3] - 8:3, 11:17, 18:17

**G**

**G-R-E-E-N-E** [1] - 6:2
**game** [2] - 22:12, 23:10
**GEMAN** [11] - 2:6, 37:15, 37:19, 38:17, 38:19, 41:11, 41:18, 41:24, 43:14, 43:18, 44:11
**Geman** [2] - 37:16, 42:12
**general** [1] - 17:13
**generis** [1] - 14:17
**Georgia** [1] - 2:11
**Gerald** [1] - 6:6
**Giant** [2] - 29:9, 33:25
**given** [3] - 20:9, 40:23, 42:1
**globally** [1] - 23:11
**goal** [3] - 16:11, 16:12, 19:24
**grant** [1] - 44:15
**granting** [1] - 7:23
**grasp** [1] - 33:22
**grasping** [1] - 29:24
**great** [4] - 15:24, 27:10, 49:12, 50:2
**greatest** [1] - 12:20
**GREENBERG** [2] - 2:9, 2:14
**Greenberg** [1] - 4:13
**Greene** [1] - 6:2
**Greg** [2] - 15:21, 26:1
**GREGORY** [1] - 2:14
**ground** [1] - 44:16
**Group** [1] - 6:3
**GROUP** [1] - 2:2
**group** [3] - 4:14, 13:4, 25:17
**grouped** [1] - 13:12, 13:14, 22:15
**grouping** [5] - 12:1, 12:19, 13:17, 14:21, 25:7
**groupings** [1] - 9:5
**groups** [1] - 22:14
**guess** [3] - 16:22, 18:25, 45:18
**guidance** [8] - 12:23, 13:6, 13:16, 15:2, 16:4, 16:5, 18:15,

22:25

**H**

**half** [3] - 4:18, 11:2
**hand** [1] - 14:6
**handed** [1] - 22:4
**handle** [4] - 27:14, 27:15, 27:20
**happy** [3] - 25:8, 27:20, 41:8
**hard** [1] - 19:3
**Harkins** [7] - 4:10, 4:11, 4:13, 6:12, 6:23, 7:2, 7:3
**HARKINS** [4] - 2:10, 4:12, 4:20, 7:4
**head** [1] - 27:4
**health** [3] - 6:19, 22:6, 22:7
**hear** [5] - 17:14, 17:16, 27:25, 37:13, 45:16
**heard** [3] - 17:20, 26:16, 26:19
**hearing** [3] - 16:5, 20:1, 43:25
**heart** [2] - 16:5, 24:3
**Heimann** [1] - 37:16
**HEIMANN** [1] - 2:6
**held** [1] - 4:1
**Hetero** [11] - 15:9, 25:8, 30:19, 31:2, 31:10, 31:12, 31:21, 32:13, 32:18, 32:23, 33:7
**Hetero-manufactured** [1] - 32:13
**hired** [2] - 6:7, 32:2
**Hold** [1] - 28:4
**holds** [1] - 44:19
**home** [1] - 36:11
**honed** [1] - 38:25
**honest** [4] - 23:15, 23:25, 26:2, 27:6
**Honik** [3] - 8:19, 17:24, 20:13
**HONIK** [12] - 1:18, 1:19, 8:18, 8:22, 9:18, 9:21, 10:10, 11:1, 20:18, 24:2, 25:16, 26:7
**Honik's** [2] - 16:1, 17:1
**honing** [1] - 25:1
**Honor** [39] - 4:12, 4:20, 5:13, 7:4, 8:18, 8:22, 10:7, 15:21, 15:25, 16:14, 17:11,

17:14, 18:4, 18:7, 18:23, 19:11, 19:12, 19:17, 19:24, 19:25, 20:6, 20:8, 20:18, 21:20, 22:4, 24:2, 26:1, 28:2, 33:19, 37:8, 37:15, 37:20, 39:20, 43:14, 45:9, 47:11, 47:20, 47:21
**Honorable** [2] - 3:2, 4:1
**HONORABLE** [1] - 1:10
**hope** [3] - 8:2, 11:16, 15:4
**hopefully** [1] - 24:8
**horse** [2] - 20:5, 20:11
**Huahai** [2] - 10:12, 34:21
**Hudson** [1] - 2:7
**huge** [1] - 37:7
**hundreds** [1] - 18:20
**hypothetical** [1] - 24:22

**I**

**ideally** [1] - 40:25
**identical** [1] - 22:15
**identified** [2] - 30:17, 30:20
**identify** [7] - 18:6, 29:18, 29:19, 29:20, 30:5, 30:6, 46:9
**Illinois** [1] - 2:15
**illogical** [1] - 31:7
**illustrations** [1] - 13:16
**implicate** [5] - 12:11, 12:12, 14:13, 22:1, 22:22
**implicated** [1] - 9:14
**implicates** [4] - 8:9, 20:16, 22:9, 26:12
**implied** [2] - 12:2, 22:14
**implore** [1] - 15:4
**important** [2] - 9:3, 30:2
**impurity** [1] - 32:9
**inappropriate** [1] - 40:23
**Inc** [5] - 2:12, 2:12, 2:16, 2:17, 2:20
**include** [2] - 31:18, 36:7
**included** [1] - 48:25
**including** [2] - 22:23, 38:5
**inclusion** [3] - 32:16,

33:10
**inconsistent** [1] - 18:3
**increased** [2] - 22:6, 32:10
**indeed** [3] - 36:24, 38:10, 44:7
**independent** [4] - 9:16, 28:25, 38:9, 42:5
**Indiana** [1] - 2:20
**Indianapolis** [1] - 2:20
**indicated** [3] - 16:9, 16:24, 17:8
**indicative** [1] - 30:24
**indirect** [3] - 13:23, 14:2, 23:2
**individual** [14] - 19:21, 20:22, 24:7, 24:10, 26:5, 26:10, 26:25, 27:8, 28:19, 36:2, 36:9, 36:19, 37:1, 44:21
**individualized** [2] - 24:13, 25:11
**individuals** [1] - 36:25
**Industries** [2] - 2:11, 2:16
**industry** [1] - 34:11
**inform** [1] - 18:16
**informally** [2] - 46:3, 46:18
**informative** [1] - 21:14
**ingredient** [1] - 32:19
**ingredients** [1] - 35:24
**initial** [1] - 14:11
**inject** [1] - 40:15
**Injury** [1] - 6:3
**injury** [2] - 12:12, 24:4
**INJURY** [1] - 2:2
**instead** [1] - 29:24
**instructive** [1] - 13:20
**intended** [1] - 35:9
**intending** [1] - 36:18
**interesting** [1] - 30:21
**intervention** [6] - 7:25, 19:1, 19:7, 20:24, 26:8, 26:12
**involved** [2] - 19:10, 36:12
**involves** [5] - 17:5, 17:6, 17:7, 24:19, 31:2
**ironically** [1] - 20:24
**irrelevant** [2] - 40:12, 43:22
**irrespective** [1] - 16:16
**isolated** [3] - 24:6, 24:18, 26:10
**issue** [45] - 7:24, 8:4,

8:10, 8:11, 8:15, 8:22, 14:25, 15:22, 19:13, 19:18, 24:12, 25:22, 27:12, 28:3, 28:10, 28:11, 28:13, 30:1, 32:3, 33:12, 33:13, 33:14, 33:18, 35:6, 36:1, 36:15, 36:22, 37:2, 37:12, 37:13, 42:8, 42:12, 42:20, 42:23, 42:24, 43:3, 43:7, 46:7, 46:21, 47:7, 49:3
**issues** [30] - 4:8, 7:16, 7:19, 8:19, 12:12, 14:14, 15:3, 17:12, 17:17, 21:18, 21:25, 22:1, 22:10, 22:23, 23:8, 23:14, 24:8, 24:19, 25:10, 25:11, 35:19, 35:25, 39:5, 39:6, 40:9, 43:23, 43:24, 47:17, 48:3
**itself** [2] - 12:25, 45:20

**J**

**Jamesville** [1] - 2:24
**JERSEY** [1] - 1:1
**Jersey** [9] - 1:8, 1:16, 9:6, 9:20, 9:22, 9:23, 9:24, 10:9, 10:13
**Jim** [1] - 7:10
**Joanna** [2] - 6:5, 6:16
**JOANNA** [1] - 2:3
**joint** [1] - 4:13
**Jones** [2] - 6:5, 6:16
**JONES** [4] - 2:3, 6:5, 6:16, 6:25
**Judge** [20] - 4:4, 4:5, 9:10, 9:21, 10:11, 11:1, 11:9, 11:24, 12:21, 13:19, 14:20, 14:23, 21:17, 23:4, 24:16, 26:7, 27:14, 45:4, 47:15, 50:3
**JUDGE** [1] - 1:11
**judges** [1] - 25:20
**judges'** [1] - 13:8
**judgment** [8] - 8:25, 10:4, 15:1, 21:9, 21:10, 23:7, 28:11, 44:19
**Judicial** [6] - 3:2, 12:23, 13:1, 13:6, 16:4, 22:25
**Julian** [2] - 49:18, 49:20
**July** [2] - 1:8, 50:15
**jumbling** [1] - 18:1
**June** [2] - 16:5, 20:1

**jurisdiction** [12] - 8:11, 9:7, 10:11, 10:16, 10:19, 10:20, 10:23, 17:11, 17:13, 17:15, 17:17, 17:20
**jurisdictions** [1] - 17:7
**jury** [1] - 25:21
**Juul** [1] - 14:24

**K**

**KAPKE** [8] - 2:19, 28:2, 28:6, 42:10, 45:9, 45:12, 46:13, 47:11
**Kapke** [3] - 28:6, 37:25, 42:1
**KARA** [1] - 2:19
**Kara** [1] - 28:6
**KATZ** [1] - 1:15
**Keep** [1] - 7:5
**keep** [2] - 10:22, 11:8
**Kenney** [1] - 47:22
**KENNEY** [1] - 2:22
**kept** [1] - 42:1
**kind** [1] - 6:8
**King** [1] - 5:4
**known** [1] - 32:4
**knows** [3] - 12:8, 22:4, 42:3
**KUGLER** [2] - 1:10, 4:2
**Kugler** [4] - 3:2, 4:5, 45:4, 47:15

**L**

**label** [1] - 22:5
**language** [1] - 30:22
**large** [2] - 19:4, 42:3
**larry** [1] - 3:3
**last** [3] - 6:6, 11:22, 46:13
**LAW** [1] - 2:2
**law** [2] - 22:15, 29:1
**Law** [2] - 3:2, 6:3
**laws** [1] - 20:16
**LCT** [11] - 32:1, 32:14, 32:15, 32:20, 32:24, 32:25, 35:23, 36:15, 42:15, 42:17, 42:20
**lead** [4] - 17:4, 17:25, 18:1, 23:2
**least** [10] - 9:4, 9:12, 10:20, 10:22, 20:9, 21:13, 30:8, 40:2, 43:2, 44:25
**leave** [2] - 37:5, 44:15
**leaves** [3] - 5:8, 8:4, 27:12
**leaving** [1] - 19:16

**left** [1] - 28:14
**legal** [7] - 12:11, 14:14, 15:16, 21:24, 22:23, 43:23, 44:2
**less** [2] - 32:19, 42:17
**letter** [4] - 4:16, 15:18, 41:13, 44:17, 46:6
**Levin** [1] - 5:10
**Lexecon** [7] - 8:5, 8:9, 8:17, 8:21, 9:13, 17:12, 17:23
**LIABILITY** [1] - 1:4
**liberty** [1] - 14:25
**Lieff** [1] - 37:16
**LIEFF** [1] - 2:6
**lifetime** [3] - 31:22, 32:21, 35:21
**light** [3] - 12:15, 31:21, 35:20
**likely** [3] - 16:15, 21:15, 34:13
**likewise** [1] - 29:16
**limine** [1] - 21:19
**limited** [2] - 36:10, 43:9
**line** [2] - 12:24, 38:20
**LIPTAK** [1] - 2:22
**Liptak** [1] - 47:23
**list** [3] - 5:7, 6:23, 7:14
**listed** [4] - 5:8, 5:20, 5:25, 7:2
**listing** [1] - 7:14
**litigate** [1] - 42:24
**Litigation** [2] - 13:3, 13:20
**litigation** [11] - 10:15, 12:8, 13:18, 13:21, 18:15, 20:4, 23:12, 24:24, 34:5, 34:7, 49:8
**LITIGATION** [1] - 1:4
**LLC** [4] - 1:15, 1:18, 2:12, 2:16
**LLP** [4] - 2:9, 2:14, 2:18, 2:22
**logical** [2] - 31:19, 35:4
**long-term** [1] - 40:18
**look** [3] - 4:8, 12:25, 25:22
**looked** [1] - 34:18
**looking** [1] - 43:7, 48:5
**looks** [1] - 39:20
**LORETTA** [1] - 3:2
**lose** [7] - 24:10, 24:22, 25:14, 25:23, 26:3, 26:4
**losing** [1] - 24:23
**loss** [3] - 16:6, 16:13,

18:6
**lost** [1] - 25:18
**low** [1] - 39:22
**Ltd** [2] - 2:11, 2:16

**M**

**MacStravic** [1] - 3:3
**MADA** [5] - 21:1, 24:10, 24:14, 24:22, 26:15
**MADA's** [3] - 20:22, 21:5, 24:7
**maintain** [1] - 21:6
**major** [1] - 15:5
**Management** [1] - 11:13
**MANAGEMENT** [1] - 1:5
**management** [5] - 7:15, 8:19, 11:5, 11:18, 12:1
**Managing** [1] - 13:2
**manufactured** [3] - 30:6, 30:19, 32:13
**manufacturer** [1] - 39:10
**manufacturers** [1] - 30:13
**Marie** [2] - 1:22, 50:13
**Marjorie** [1] - 6:13
**Marker** [2] - 34:4, 34:9
**market** [1] - 13:25
**Market** [1] - 1:19
**Maryland** [8] - 28:21, 29:1, 29:2, 29:11, 29:21, 34:1, 41:19
**MASTER** [26] - 1:12, 4:2, 4:5, 27:16, 27:19, 27:23, 27:25, 28:4, 37:10, 37:18, 38:16, 38:18, 41:9, 41:12, 41:23, 42:8, 43:12, 43:16, 44:9, 44:12, 45:4, 45:6, 45:11, 46:1, 47:5, 47:12
**materially** [1] - 20:3
**matter** [10] - 5:12, 5:23, 24:20, 27:17, 37:17, 40:1, 40:11, 44:16, 47:24, 50:11
**matters** [2] - 5:5, 32:7
**MAZIE** [1] - 1:15
**McKesson** [2] - 30:10, 31:8
**MDL** [3] - 10:5, 13:9, 23:1
**mean** [8] - 9:19, 31:18, 36:7, 39:2, 41:20,

42:2, 43:6, 48:17
**meaning** [3] - 9:6, 38:11, 48:20
**meaningful** [2] - 10:19, 22:22
**means** [1] - 40:19
**mechanical** - 1:24
**medical** [18] - 5:15, 5:18, 28:14, 28:16, 28:20, 28:24, 28:25, 29:16, 30:4, 32:7, 33:10, 34:19, 35:20, 36:9, 37:9, 38:10, 41:16, 44:14
**medicine** [2] - 39:23, 44:5
**meet** [4] - 32:15, 32:23, 33:21, 34:16
**meeting** [2] - 13:8, 27:9
**member** [1] - 26:17
**members** [2] - 19:8, 21:1
**mental** [1] - 6:19
**mention** [4] - 29:6, 33:22, 36:6, 39:21
**mentioned** [8] - 31:13, 33:24, 34:15, 34:22, 34:23, 35:4, 35:18, 36:16
**mentioning** [2] - 34:18, 42:1
**mentions** [5] - 28:19, 31:12, 31:13, 34:20, 41:14
**Meridian** [1] - 2:19
**merit** [1] - 39:14
**merits** [8] - 11:5, 17:1, 19:8, 21:3, 28:11, 31:25, 36:23, 37:2
**met** [2] - 23:5, 38:11
**might** [4] - 11:2, 24:14, 40:19, 40:20
**million** [2] - 22:20, 23:19
**mindful** [1] - 12:13
**minimis** [10] - 31:20, 32:2, 35:6, 35:19, 36:15, 39:12, 42:12, 42:20, 42:24, 43:3
**misconduct** [1] - 40:2
**missing** [2] - 5:15, 6:19
**mission** [1] - 19:25
**Mitchell** [3] - 1:7, 1:22, 50:13
**modeled** [1] - 22:19
**modified** [1] - 11:11
**moment** [1] - 22:18
**monitoring** [18] -

28:14, 28:16, 28:20, 28:24, 28:25, 29:16, 30:4, 32:8, 33:10, 34:19, 35:20, 36:9, 37:9, 38:10, 40:7, 41:16, 42:5, 44:14
**month** [11] - 4:24, 5:6, 5:9, 5:17, 6:1, 6:10, 6:12, 7:8, 7:14, 33:1, 50:7
**month's** [2] - 5:6, 6:24
**months** [1] - 32:18
**morning** [3] - 8:18, 15:21, 37:15
**most** [5] - 12:1, 12:10, 18:9, 23:9, 23:13
**motion** [14] - 10:17, 13:5, 20:21, 20:23, 21:2, 22:17, 25:2, 26:11, 26:17, 28:12, 36:22, 37:12, 39:7, 44:15
**motions** [16] - 7:24, 9:1, 10:4, 10:22, 11:6, 11:15, 11:20, 12:14, 14:12, 15:15, 17:15, 18:5, 21:17, 21:18, 24:20, 26:19
**move** [9] - 4:18, 11:17, 18:7, 18:14, 20:1, 23:11, 24:20, 24:21, 24:23
**moves** [2] - 18:23, 23:14
**moving** [2] - 11:8, 15:17
**MR** [29] - 4:12, 4:20, 5:13, 7:4, 8:18, 8:22, 9:18, 9:21, 10:7, 10:10, 11:1, 15:21, 15:25, 20:18, 24:2, 25:16, 26:1, 26:7, 28:2, 47:19, 47:21, 48:2, 48:15, 48:20, 49:2, 49:6, 49:18, 49:22, 50:2
**MS** [19] - 6:5, 6:16, 6:25, 28:6, 37:15, 37:19, 38:17, 38:19, 41:11, 41:18, 41:24, 42:10, 43:14, 43:18, 44:11, 45:9, 45:12, 46:13, 47:11
**MSP** [5] - 20:22, 21:1, 21:4, 24:11, 26:15
**multiclass** [1] - 13:9
**multidistrict** [1] - 49:8
**Multidistrict** [1] - 3:13
**multiple** [5] - 13:24, 17:19, 19:22, 33:21

**mélange** [1] - 18:2

**N**

**name** [7] - 31:15, 31:21, 33:7, 37:15, 47:22
**named** [9] - 9:4, 19:15, 28:17, 29:14, 33:5, 35:5, 48:21, 48:24
**namely** [3] - 12:4, 13:4, 25:3
**narrow** [3] - 15:14, 21:17, 23:8
**nature** [3] - 13:11, 20:17, 39:12
**NDC** [1] - 30:20
**NDMA** [2] - 32:9, 33:9
**NE** [1] - 2:10
**near** [1] - 11:17
**nearly** [1] - 32:18
**need** [10] - 7:20, 23:14, 23:20, 23:21, 26:22, 32:11, 36:24, 45:15, 46:24, 49:14
**needed** [3] - 11:4, 32:17, 32:23
**needle** [2] - 4:21
**needs** [1] - 8:10
**negotiations** [1] - 36:18
**never** [14] - 17:19, 31:4, 31:12, 31:13, 33:17, 34:5, 34:6, 34:13, 34:15, 35:22, 37:5, 42:21, 42:25
**NEW** [1] - 1:1
**new** [3] - 5:8, 40:15, 41:5
**New** [13] - 1:8, 1:16, 2:7, 2:24, 9:6, 9:19, 9:21, 9:23, 9:24, 10:8, 10:13, 47:25
**next** [13] - 4:19, 5:6, 5:9, 5:17, 6:1, 6:12, 6:24, 7:14, 24:23, 25:21, 27:9, 45:20, 45:21
**NIGH** [1] - 5:13
**nobody** [1] - 42:25
**non** [2] - 20:3, 28:19
**non-dismissed** [1] - 28:19
**non-piecemeal** [1] - 20:3
**none** [3] - 39:15, 39:18, 42:15
**nonspecific** [1] - 25:11

**North** [1] - 2:23
**Northern** [1] - 47:24
**noted** [3] - 4:23, 16:14, 17:11
**nothing** [4] - 8:23, 44:3, 47:19, 49:12
**notice** [7] - 21:16, 30:24, 37:22, 38:1, 39:5, 39:13, 47:8
**noticed** [1] - 39:3
**notion** [1] - 39:11
**NOWAK** [1] - 2:22
**Nowak** [1] - 47:23
**nowhere** [1] - 32:14
**number** [24] - 4:8, 4:22, 5:21, 7:4, 7:5, 7:6, 7:9, 7:10, 7:11, 7:12, 7:13, 7:19, 9:2, 9:3, 14:14, 17:21, 22:1, 22:9, 22:23, 24:13, 46:3
**Number** [1] - 11:13
**NUMBER** [1] - 1:3

**O**

**O'Brien** [1] - 5:22
**objecting** [1] - 15:23
**objection** [1] - 5:14
**obsessive** [1] - 18:5
**obvious** [1] - 10:14
**obviously** [1] - 24:12
**occurred** [2] - 11:4, 34:13
**Official** [1] - 1:22
**one** [41] - 4:21, 7:25, 9:2, 9:4, 12:11, 13:3, 18:6, 18:19, 18:21, 18:22, 19:1, 19:6, 19:18, 19:19, 20:24, 21:11, 21:15, 21:21, 22:9, 24:18, 24:23, 25:3, 25:23, 26:3, 26:4, 26:8, 26:12, 27:12, 30:17, 31:20, 32:13, 33:18, 34:12, 36:1, 39:9, 40:2, 40:4, 40:8, 41:12, 47:21, 48:3
**one-off** [1] - 33:18
**one-way** [6] - 7:25, 19:1, 19:6, 20:24, 26:8, 26:12
**ones** [4] - 5:8, 14:6, 22:24, 23:5
**open** [2] - 6:7, 46:4
**opened** [1] - 6:8
**operative** [2] - 28:24, 38:4
**opine** [1] - 43:23

**opinions** [1] - 12:16
**opp** [1] - 39:20
**opportunities** [1] - 46:15
**opportunity** [6] - 20:9, 21:11, 26:16, 26:18, 42:21, 44:7
**opposed** [2] - 39:15, 45:22
**opposition** [1] - 22:16
**opt** [1] - 8:13
**opt-in** [1] - 8:13
**opted** [1] - 13:13
**order** [12] - 5:6, 5:14, 5:20, 9:16, 9:17, 11:19, 24:8, 44:12, 48:11, 49:9, 49:13, 49:22
**Order** [1] - 11:13
**orders** [5] - 4:17, 5:1, 5:3, 5:9, 6:24
**original** [2] - 9:7, 48:22
**originally** [3] - 9:5, 9:23, 47:24
**Ostfeld** [1] - 15:22
**OSTFELD** [4] - 2:14, 15:21, 15:25, 26:1
**otherwise** [1] - 21:4
**ourselves** [1] - 48:7
**out-of-state** [1] - 8:14
**outcome** [1] - 16:16
**overarching** [1] - 45:23
**overview** [1] - 32:6
**own** [2] - 31:21, 32:2

**P**

**P.C** [1] - 2:2
**page** [1] - 13:3
**pages** [1] - 38:4
**paid** [2] - 14:8, 23:23
**papers** [2] - 27:13, 44:8
**paragraph** [13] - 4:15, 28:20, 29:14, 30:4, 33:6, 34:18, 34:19, 34:22, 34:23, 35:12, 36:8, 38:21, 41:1
**paragraphs** [3] - 31:11, 31:18, 38:5
**parameters** [1] - 16:21
**pardon** [1] - 38:17
**Parkway** [2] - 1:16, 2:3
**part** [3] - 4:10, 14:8, 44:18
**particular** [5] - 11:22, 11:23, 36:12, 36:24
**particularly** [1] - 23:1

**parties** [9] - 7:23, 11:7, 15:2, 18:16, 18:24, 21:16, 23:10, 36:17, 37:8
**party** [6] - 7:17, 16:13, 16:24, 18:6, 20:2, 34:4
**path** [1] - 17:24
**pathway** [1] - 10:6
**pause** [2] - 18:21, 38:3
**paying** [1] - 25:12
**Payne** [1] - 5:1
**PAYNE** [1] - 5:2
**payor** [4] - 7:18, 16:13, 16:24, 20:2
**pending** [4] - 5:1, 20:23, 24:19, 26:11
**Pennsylvania** [1] - 1:20
**people** [1] - 23:17
**percent** [7] - 32:19, 39:8, 40:10, 40:11, 41:2, 42:12, 42:17
**perhaps** [2] - 9:3, 40:15
**period** [1] - 21:16
**permit** [1] - 8:8
**permits** [1] - 9:12
**personal** [10] - 8:11, 10:11, 10:16, 10:19, 17:11, 17:14, 17:17, 17:20, 24:4
**pertain** [1] - 25:12
**petition** [1] - 49:13
**Peyton** [1] - 5:4
**PFS** [4] - 34:10, 34:24, 36:4, 44:23
**Pharma** [2] - 2:12, 2:17
**Pharmaceutical** [2] - 2:11, 2:16
**Pharmaceuticals** [2] - 2:12, 2:16
**pharmacies** [4] - 23:6, 29:2, 30:15, 40:20
**Pharmacy** [1] - 2:20
**pharmacy** [7] - 28:23, 29:12, 30:11, 30:24, 34:2, 34:11, 34:12
**Philadelphia** [1] - 1:20
**phone** [1] - 4:11
**picking** [1] - 26:9
**piecemeal** [5] - 16:8, 16:12, 17:3, 18:8, 20:3
**piecemealing** [1] - 18:9
**Piedmont** [1] - 2:10
**plaintiff** [22] - 6:17, 9:4, 11:23, 13:7,

20:15, 23:25, 27:8, 28:19, 30:18, 31:9, 32:9, 32:17, 34:1, 36:6, 36:8, 40:2, 40:4, 40:24, 42:16, 42:23, 47:1, 49:16
**plaintiff's** [3] - 19:19, 19:21, 35:18
**plaintiff/third** [1] - 20:2
**plaintiff/third-party** [1] - 20:2
**plaintiffs** [67] - 7:16, 8:14, 8:16, 11:4, 11:19, 13:12, 14:19, 17:5, 17:21, 18:10, 18:18, 19:14, 19:15, 20:20, 26:23, 28:14, 28:15, 28:17, 29:6, 29:13, 29:17, 29:18, 29:19, 29:23, 30:5, 30:16, 30:19, 30:22, 31:1, 31:3, 31:8, 31:15, 31:17, 31:20, 31:23, 32:10, 32:15, 32:17, 32:20, 32:25, 33:8, 33:16, 33:22, 34:13, 34:15, 35:3, 35:14, 35:17, 35:21, 35:22, 36:16, 36:17, 36:25, 37:3, 37:14, 37:17, 39:1, 43:1, 43:2, 43:21, 44:13, 45:13, 46:7, 46:14, 46:17, 47:7, 47:19
**Plaintiffs** [4] - 1:17, 1:20, 2:4, 2:8
**plaintiffs'** [7] - 8:9, 18:12, 32:1, 33:14, 36:14, 49:7, 50:1
**planning** [1] - 33:16
**played** [1] - 31:6
**plead** [2] - 28:21, 28:22
**pleaded** [4] - 28:15, 29:3, 30:1, 33:17
**pleadings** [3] - 28:8, 30:3, 46:4
**plenty** [2] - 40:16, 44:7
**point** [17] - 9:2, 9:3, 10:23, 17:14, 17:18, 19:1, 26:7, 30:22, 31:5, 38:7, 39:10, 40:1, 41:25, 45:15, 45:19, 46:19, 47:3
**points** [1] - 38:14
**position** [4] - 4:24, 10:3, 14:9, 30:21
**possible** [5] - 12:1,

12:10, 12:19, 18:13, 23:14
**potentially** [5] - 23:11, 24:19, 24:21, 32:2, 35:9
**practical** [1] - 24:20
**practice** [1] - 13:5
**precedent** [1] - 19:20
**precisely** [4] - 10:5, 12:3, 14:2, 31:14
**preclusion** [1] - 19:13
**preclusive** [2] - 25:16, 25:24
**predisposition** [1] - 16:17
**preference** [1] - 18:3
**prejudice** [9] - 33:19, 37:3, 37:7, 37:23, 39:4, 40:14, 42:7, 42:19
**prejudiced** [1] - 31:16
**premature** [1] - 28:10
**prepare** [1] - 31:3
**prepared** [4] - 14:20, 15:11, 25:6
**prescription** [2] - 22:4, 25:12
**prescriptions** [2] - 23:18, 29:15
**PRESENT** [1] - 3:1
**present** [2] - 23:8, 26:14
**presentation** [1] - 16:1
**presented** [3] - 13:9, 44:16, 44:24
**presently** [1] - 25:1
**presents** [1] - 12:20
**press** [1] - 36:14
**pressure** [1] - 23:16
**presumably** [1] - 33:5
**pretrial** [2] - 9:1, 10:4
**prevail** [1] - 24:14
**prevent** [1] - 7:22
**prevents** [1] - 8:24
**previous** [1] - 48:3
**pricing** [1] - 40:8
**primer** [1] - 13:1
**Prinston** [2] - 9:11, 10:12
**problem** [12] - 8:6, 8:17, 8:21, 19:1, 19:7, 20:18, 26:8, 26:13, 26:15, 37:7, 45:25
**procedural** [2] - 28:12, 46:21
**procedure** [2] - 18:18, 18:19
**proceed** [14] - 6:9,

9:12, 10:1, 14:11, 15:2, 16:11, 16:23, 18:5, 20:6, 20:7, 20:15, 21:9, 21:19, 23:9
**proceeding** [5] - 19:7, 19:19, 20:3, 21:4, 44:20
**Proceedings** [2] - 1:24, 50:8
**proceedings** [7] - 13:9, 13:14, 16:12, 18:2, 19:22, 50:11
**PROCEEDINGS** [1] - 4:1
**process** [7] - 16:21, 21:5, 21:20, 24:19, 35:25, 38:24, 42:2
**produce** [1] - 34:3
**produced** [3] - 1:25, 34:6, 34:8
**produces** [1] - 25:4
**product** [5] - 30:8, 30:9, 30:10, 30:23, 31:10
**PRODUCTS** [1] - 1:4
**products** [1] - 30:8
**profound** [1] - 10:13
**program** [1] - 40:8
**prolong** [1] - 24:24
**proof** [1] - 34:9
**proper** [2] - 21:12, 41:15
**properly** [2] - 39:3
**proposal** [6] - 8:9, 15:5, 17:1, 17:3, 17:9, 27:9
**proposed** [20] - 9:4, 11:10, 11:25, 12:24, 14:11, 17:6, 17:25, 18:10, 18:12, 21:9, 21:11, 21:23, 22:13, 25:2, 31:23, 32:15, 32:17, 32:20, 32:25, 35:22
**Proposed** [1] - 13:2
**proposing** [6] - 10:21, 12:1, 12:13, 18:19, 19:14
**protestation** [1] - 11:12
**provide** [2] - 11:5, 15:2
**providers** [3] - 13:22, 14:3, 23:3
**provides** [1] - 12:23
**prudently** [1] - 16:14
**purchase** [1] - 14:8
**purchased** [4] - 30:9, 46:10, 47:9

**purchaser** [3] - 14:5, 14:9, 25:13
**purchasers** [7] - 13:23, 14:3, 22:1, 22:24, 23:2, 23:3, 23:23
**purposes** [2] - 16:10, 39:2
**pursue** [2] - 11:20, 35:9
**pursuing** [1] - 35:3
**put** [11] - 18:4, 18:10, 18:11, 18:12, 18:21, 21:17, 23:16, 32:9, 32:22, 42:12, 48:4
**putative** [1] - 36:5
**putting** [4] - 17:8, 20:5, 20:10, 22:18

**Q**
**quantity** [1] - 32:11
**questioned** [1] - 34:14
**questions** [5] - 32:1, 33:14, 39:16, 41:8, 42:14
**quick** [2] - 38:3, 38:24
**quickly** [2] - 23:14, 48:2
**quite** [2] - 29:7
**quote** [1] - 13:7

**R**
**Rachel** [1] - 37:16
**RACHEL** [1] - 2:6
**raise** [3] - 47:7, 47:18, 48:2
**raised** [4] - 7:16, 7:19, 8:11, 27:12
**raising** [1] - 49:10
**rather** [3] - 25:12, 37:21, 37:25
**Raymond** [1] - 5:21
**RDR** [2] - 1:22, 50:13
**RE** [1] - 1:4
**reach** [1] - 36:6
**ready** [3] - 9:25, 21:19, 21:21
**real** [2] - 35:19, 37:7
**really** [31] - 5:16, 6:6, 8:4, 8:23, 9:19, 9:21, 12:23, 14:5, 14:11, 14:13, 18:14, 19:1, 22:1, 22:9, 22:16, 22:17, 24:9, 24:16, 24:20, 25:4, 25:10, 25:13, 26:8, 30:2, 31:18, 36:7, 37:5, 42:1, 42:19, 43:7
**reason** [6] - 5:17,

12:6, 16:14, 17:5, 21:23, 42:11
**reasons** [4] - 14:10, 17:8, 24:13, 35:5
**recently** [1] - 14:24
**record** [4] - 9:9, 34:4, 40:16, 50:11
**recorded** [1] - 1:24
**Records** [2] - 34:3, 34:8
**records** [5] - 6:20, 34:3, 34:6, 34:8, 34:12
**reference** [1] - 36:13
**referenced** [1] - 34:9
**references** [1] - 34:24
**referring** [1] - 27:16
**refresh** [1] - 12:25
**regarding** [2] - 31:22, 36:14
**regardless** [1] - 29:10
**regional** [1] - 13:24
**regret** [1] - 41:2
**regulatory** [1] - 30:7
**rehash** [1] - 22:16
**reiterate** [1] - 25:6
**relate** [1] - 31:11
**Related** [1] - 13:2
**related** [1] - 42:15
**relates** [1] - 36:2
**relating** [6] - 30:13, 30:14, 31:10, 31:12, 36:15
**relatively** [3] - 16:7, 17:3, 39:22
**relevance** [1] - 39:10
**relevant** [1] - 41:20
**relisted** [1] - 7:2
**reluctant** [1] - 46:4
**rely** [2] - 31:20, 45:19
**relying** [2] - 29:24, 33:16
**remains** [1] - 37:1
**remand** [1] - 10:4
**remanded** [1] - 36:10
**remanding** [1] - 9:1
**remedial** [1] - 44:3
**remedy** [3] - 37:21, 40:23, 42:5
**remember** [1] - 32:7
**remove** [1] - 7:5
**removed** [7] - 48:3, 48:8, 48:15, 48:17, 48:23, 49:8, 49:9
**rendered** [1] - 18:22
**rep** [2] - 38:9, 38:10
**repeated** [1] - 34:15
**repeatedly** [1] - 11:21
**reply** [1] - 12:22

**Reporter** [1] - 1:22
**reporter** [1] - 28:5
**Reporter/ Transcriber** [1] - 50:13
**reports** [3] - 11:6, 11:15, 31:24
**represent** [1] - 47:23
**representative** [4] - 36:5, 41:16, 41:21, 46:9
**represented** [2] - 49:16, 49:18
**reps** [2] - 39:1, 40:17
**requested** [3] - 6:20, 48:10
**requests** [1] - 34:16
**require** [4] - 9:8, 16:17, 16:20, 16:21
**requiring** [1] - 33:1
**reserved** [1] - 17:18
**resident** [3] - 28:21, 29:11, 29:21
**residents** [1] - 29:11
**resolution** [4] - 15:17, 23:11, 23:15, 27:5
**resolved** [2] - 8:3, 8:15
**respect** [10] - 16:1, 18:16, 18:17, 31:6, 35:6, 35:17, 40:6, 43:2, 44:18, 46:23
**respectfully** [7] - 19:20, 19:24, 21:1, 24:25, 37:8, 40:13, 40:22
**respects** [1] - 12:8
**respond** [2] - 43:14, 47:8
**responded** [1] - 11:24
**response** [3] - 5:24, 45:3, 50:5
**rest** [1] - 7:7
**result** [1] - 9:16
**RET** [1] - 1:12
**retail** [4] - 30:11, 30:23, 31:9, 44:22
**Retailer** [1] - 2:20
**retailer** [1] - 42:4
**retailers** [1] - 41:19
**review** [3] - 16:20, 18:22, 21:3
**Richard** [2] - 7:13
**rights** [2] - 21:5, 21:7
**rises** [1] - 5:16
**risk** [4] - 22:6, 32:10, 38:12, 39:11
**Rite** [1] - 2:21
**RMR** [2] - 1:22, 50:13
**road** [3] - 23:5, 26:6,

47:2
**Road** [1] - 2:10
**ROBERT** [2] - 1:10, 4:2
**Robert** [11] - 3:2, 5:10, 29:6, 29:8, 29:10, 33:23, 33:24, 34:18, 35:9, 41:14, 49:18
**role** [1] - 31:5
**rolled** [1] - 25:17
**Roseland** [1] - 1:16
**roughly** [1] - 13:22
**route** [2] - 26:23, 26:24
**rubber** [1] - 23:5
**Ruben** [1] - 8:18
**RUBEN** [1] - 1:19
**rule** [1] - 16:18
**Rule** [8] - 7:22, 10:5, 12:15, 16:20, 18:21, 26:16, 39:5, 39:21
**ruled** [1] - 20:8
**rules** [1] - 10:5
**ruling** [1] - 15:11, 16:17, 20:7, 21:2, 21:7, 21:13, 21:14, 21:15, 29:1, 46:23
**rulings** [3] - 14:25, 16:19, 19:3
**Russell** [1] - 7:5

## S

**Sandra** [1] - 7:5
**Sarah** [10] - 29:25, 36:2, 36:16, 38:8, 38:21, 41:1, 45:23, 46:9, 46:24, 47:8
**satisfied** [1] - 40:18
**schedule** [1] - 11:10
**scope** [7] - 28:8, 30:2, 36:2, 43:8, 43:22, 46:20
**scour** [1] - 36:4
**script** [4] - 30:17, 30:19, 32:13
**scripts** [1] - 29:8
**searching** [1] - 46:16
**second** [1] - 14:1
**see** [5] - 16:25, 19:9, 20:18, 48:7, 50:7
**seek** [1] - 28:10
**seeking** [4] - 20:25, 28:7, 37:5, 37:21
**seem** [1] - 23:21
**send** [1] - 10:24
**sensible** [1] - 12:1
**sentence** [1] - 41:1
**separate** [1] - 40:4
**sequencing** [2] -

14:22, 21:12
**Serious** [1] - 6:3
**serious** [1] - 35:25
**SERIOUS** [1] - 2:2
**seriously** [1] - 38:12
**Service** [2] - 34:3, 34:8
**set** [2] - 18:4, 27:11
**setting** [2] - 16:11, 23:1
**settlement** [2] - 18:17, 36:18
**sever** [3] - 7:22, 10:4, 19:12
**several** [1] - 42:15
**severed** [2] - 19:19, 25:19
**severing** [2] - 9:1, 19:14
**share** [1] - 24:4
**shed** [1] - 12:15
**sheet** [7] - 30:18, 30:20, 35:1, 35:4, 35:11, 45:17, 45:22
**sheets** [2] - 6:17, 44:23
**Shelton** [1] - 47:23
**SHELTON** [1] - 2:22
**Shemes** [1] - 5:4
**SHEMES** [1] - 5:4
**Shield** [1] - 13:20
**ShopRite** [6] - 29:9, 33:25, 34:4, 34:9, 34:10, 35:7
**short** [1] - 40:22
**show** [10] - 4:17, 5:1, 5:3, 5:6, 5:9, 5:14, 5:20, 6:24, 48:11, 49:13
**side** [4] - 10:11, 14:15, 40:8
**sidelines** [1] - 19:16
**sides** [1] - 49:25
**signed** [2] - 15:18, 49:25
**significant** [5] - 12:7, 42:19, 42:22, 43:3, 45:24
**similar** [1] - 48:3
**simple** [2] - 17:25, 27:6
**simplifying** [1] - 18:18
**simply** [3] - 14:8, 16:23, 28:15
**single** [6] - 17:4, 17:25, 20:1, 20:15, 23:25, 24:17
**six** [1] - 33:1
**skin** [2] - 22:12, 23:10
**skis** [1] - 10:18

**SLATER** [4] - 1:15, 1:15, 10:7, 47:19
**Slater** [1] - 10:7
**slight** [1] - 14:7
**smaller** [1] - 25:8
**SMITH** [1] - 3:2
**Smith** [3] - 6:13, 6:14, 7:10
**so-called** [1] - 39:12
**Solco** [2] - 9:10, 10:11
**sold** [3] - 30:23, 31:8, 34:20
**solely** [1] - 31:11
**solve** [2] - 19:12, 19:17
**someone** [2] - 9:22, 15:19, 25:12
**somewhat** [1] - 11:11
**sooner** [1] - 50:7
**sorry** [2] - 7:13, 48:19
**sort** [9] - 8:12, 11:16, 15:17, 16:2, 24:14, 42:1, 49:9, 49:13, 49:23
**sound** [1] - 37:11
**speaking** [2] - 15:22, 37:17
**speaks** [1] - 23:1
**SPECIAL** [26] - 1:12, 4:2, 4:5, 27:16, 27:19, 27:23, 27:25, 28:4, 37:10, 37:18, 38:16, 38:18, 41:9, 41:12, 41:23, 42:8, 43:12, 43:16, 44:9, 44:12, 45:4, 45:6, 45:11, 46:1, 47:5, 47:12
**specific** [3] - 19:15, 24:8, 40:9
**specifically** [5] - 29:17, 34:9, 34:18, 34:20, 42:15
**speed** [1] - 48:13
**spent** [1] - 24:16
**spin** [1] - 18:20
**split** [3] - 13:7, 13:11, 19:21
**splitting** [2] - 19:13, 19:18
**stakes** [1] - 23:18
**stand** [1] - 14:19
**standard** [1] - 5:16
**standing** [1] - 44:17
**stands** [1] - 14:9
**start** [3] - 4:10, 17:15, 44:21
**state** [4] - 8:14, 10:14, 17:21, 30:19
**statement** [4] - 4:24,

29:6, 30:22, 33:20
**States** [1] - 34:20
**STATES** [2] - 1:1, 1:11
**states** [3] - 17:6, 17:22, 22:15
**states'** [1] - 20:16
**stenography** [1] - 1:24
**step** [3] - 11:2, 11:4, 45:20
**Steve** [1] - 4:13
**STEVEN** [1] - 2:10
**Stiles** [1] - 7:10
**STILES** [1] - 7:10
**still** [8] - 5:18, 10:3, 10:16, 20:14, 23:20, 24:11, 26:24, 35:10
**stipulation** [2] - 49:24, 49:25
**stop** [2] - 14:1, 46:17
**straightforward** [4] - 12:10, 16:7, 17:4, 17:25
**straws** [2] - 29:24, 33:22
**stream** [1] - 31:12
**streamlined** [1] - 12:10
**Street** [4] - 1:19, 2:7, 2:19, 2:23
**Streets** [1] - 1:7
**strictly** [3] - 22:13, 22:20
**stuff** [2] - 23:22, 26:21
**subclass** [2] - 25:3, 36:10
**subclasses** [2] - 8:25, 17:6
**subject** [1] - 17:12
**submitted** [4] - 34:10, 41:13, 46:6, 46:7
**subscribers** [3] - 13:22, 14:3, 23:3
**subset** [1] - 13:15
**subsidiaries** [2] - 9:24, 10:12
**substantive** [3] - 21:7, 28:12, 33:8
**sued** [1] - 13:15
**sufficient** [4] - 32:9, 32:11, 32:15, 32:21
**suggest** [1] - 31:7
**suggesting** [4] - 15:7, 26:23, 27:2, 35:14
**sui** [1] - 14:16
**suit** [1] - 36:12
**Suite** [3] - 1:19, 2:10, 2:15
**summary** [8] - 8:25, 10:3, 15:1, 21:9, 21:10, 23:7, 28:11,

44:19
**summer** [1] - 4:7
**supposed** [7] - 31:17, 35:2, 35:16, 36:4, 43:5, 43:11
**surprise** [4] - 42:6, 43:20, 44:6
**suspect** [1] - 33:18

---

**T**

**tacked** [1] - 11:11
**tactical** [1] - 41:4
**targeting** [1] - 35:17
**task** [2] - 13:17, 19:4
**team** [1] - 9:22
**tease** [1] - 24:8
**tee** [3] - 15:2, 24:7, 42:21
**teed** [2] - 9:25, 42:21
**telephonically** [1] - 4:1
**ten** [1] - 7:1
**tentative** [1] - 14:25
**term** [1] - 40:18
**termination** [2] - 18:15, 20:4
**terms** [3] - 14:22, 15:16, 26:5
**Test** [1] - 2:24
**Teva** [11] - 2:11, 2:12, 2:16, 2:16, 4:13, 10:12, 12:4, 12:6, 22:21, 34:21
**text** [1] - 13:10
**The Court** [70] - 4:4, 4:7, 4:15, 4:25, 5:19, 5:25, 6:10, 6:22, 7:1, 7:9, 8:20, 8:24, 9:15, 9:19, 10:2, 10:21, 11:4, 12:15, 12:25, 14:21, 15:4, 15:8, 15:10, 15:18, 15:24, 16:3, 16:6, 16:9, 16:18, 16:24, 17:17, 18:3, 18:11, 18:12, 18:13, 18:24, 19:2, 19:4, 20:12, 21:10, 21:12, 23:13, 25:1, 25:7, 25:14, 26:2, 26:18, 27:18, 27:22, 27:24, 28:3, 28:10, 45:5, 45:8, 45:10, 47:16, 48:1, 48:10, 48:12, 48:17, 48:25, 49:3, 49:7, 49:16, 49:20, 49:23, 49:24, 50:4, 50:6
**theirs** [1] - 21:6
**themselves** [4] -

32:11, 32:15, 32:20, 35:21
**theories** [1] - 44:3
**therefore** [1] - 9:13
**thinking** [1] - 24:17
**Third** [4] - 8:13, 18:22, 19:20, 20:9
**third** [6] - 6:2, 7:17, 16:13, 16:24, 18:6, 34:4
**third-party** [5] - 7:17, 16:13, 16:24, 18:6, 34:4
**THOMAS** [2] - 1:12, 4:2
**THORNBURG** [1] - 2:18
**three** [2] - 28:17, 29:19
**threshold** [6] - 31:22, 33:2, 35:21, 38:11, 39:22, 40:10
**ticking** [1] - 44:21
**tied** [1] - 39:24
**ties** [1] - 40:3
**timetable** [1] - 11:14
**today** [6] - 4:9, 13:4, 24:3, 28:7, 45:7, 48:6
**today's** [1] - 41:14
**together** [2] - 22:15, 27:8
**Tolley** [1] - 5:4
**tomorrow** [1] - 27:2
**took** [14] - 16:5, 16:10, 24:2, 30:6, 32:19, 33:1, 33:11, 38:11, 38:21, 39:8, 39:23, 39:25, 40:9, 40:17
**topic** [1] - 13:4
**Tops** [3] - 2:24, 47:23, 48:21
**Torrent** [4] - 10:13, 12:5, 12:6, 22:21
**toward** [2] - 14:20, 23:11
**towards** [4] - 15:17, 16:12, 16:25, 20:1
**TPP** [15] - 7:18, 8:24, 14:15, 15:10, 20:15, 20:20, 21:21, 22:23, 23:25, 24:6, 24:18, 26:5, 26:10, 26:25, 27:8
**TPPs** [4] - 14:4, 14:7, 22:3, 24:13
**track** [5] - 13:24, 15:6, 18:12, 19:25
**tracks** [1] - 13:21
**transcript** [2] - 1:24,

50:10
**transcription** [1] - 1:25
**transcripts** [1] - 36:5
**transfer** [1] - 9:8
**transferee** [2] - 9:2, 25:20
**transferred** [1] - 34:12
**transparent** [1] - 43:19
**Traurig** [1] - 4:13
**TRAURIG** [2] - 2:9, 2:14
**tremendous** [1] - 14:22
**triable** [1] - 17:10
**trial** [34] - 7:18, 9:5, 11:16, 12:4, 13:5, 14:11, 14:20, 14:21, 15:10, 16:6, 16:10, 16:11, 16:25, 17:4, 17:16, 18:1, 18:11, 18:16, 20:2, 20:15, 21:3, 21:10, 21:18, 22:22, 23:13, 24:10, 24:15, 24:18, 24:23, 25:21, 26:25, 27:1, 27:11, 46:3
**trials** [2] - 8:5, 19:22
**tried** [4] - 12:11, 18:6, 19:19, 20:2
**Trimboli** [1] - 7:11
**TRIMBOLI** [1] - 7:11
**Trischler** [1] - 15:18
**true** [1] - 22:3
**try** [7] - 6:10, 6:12, 6:23, 8:8, 18:14, 20:22, 27:8
**trying** [5] - 7:17, 36:23, 37:4, 39:5, 46:20
**turn** [1] - 30:10
**two** [6] - 8:12, 9:3, 9:4, 13:21, 33:3, 33:11
**type** [2] - 13:8, 44:19
**types** [1] - 41:21
**typical** [2] - 39:25, 44:6
**typicality** [3] - 39:24, 42:22, 44:1
**typically** [1] - 13:7

---

**U**

**U.S** [1] - 1:7
**ultimate** [2] - 18:15, 20:4
**unasserted** [3] - 29:25, 46:25, 47:3
**under** [5] - 7:22, 29:1,

44:1, 44:2
**underscore** [1] - 42:2
**United** [1] - 34:20
**UNITED** [2] - 1:1, 1:11
**unless** [1] - 9:22
**unlimited** [1] - 13:9
**unpleaded** [1] - 46:25
**untethered** [2] - 11:21, 11:22
**up** [30] - 6:7, 6:8, 9:25, 10:17, 13:7, 13:11, 14:12, 14:20, 15:2, 16:23, 17:16, 19:15, 24:7, 26:5, 27:11, 27:19, 28:13, 31:17, 36:21, 39:24, 42:10, 42:13, 42:21, 42:25, 44:19, 46:4, 47:1, 47:2, 48:12
**update** [2] - 4:21, 6:6
**updates** [2] - 7:3, 7:4
**US** [1] - 10:12
**USA** [4] - 2:12, 2:16, 10:12, 10:13
**usage** [2] - 32:3, 43:20
**usages** [1] - 43:21
**useful** [1] - 11:3
**Utica** [2] - 49:19, 49:20

---

**V**

**valsartan** [22] - 23:6, 23:7, 29:8, 30:6, 31:2, 31:8, 32:8, 32:12, 32:14, 32:22, 32:23, 33:3, 33:11, 38:12, 38:22, 39:9, 40:19, 41:2, 46:10, 47:12
**VALSARTAN** [1] - 1:4
**value** [1] - 24:3
**Vanaskie** [4] - 4:4, 11:9, 11:25, 27:14
**VANASKIE** [26] - 1:12, 4:2, 4:5, 27:16, 27:19, 27:23, 27:25, 28:4, 37:10, 37:18, 38:16, 38:18, 41:9, 41:12, 41:23, 42:8, 43:12, 43:16, 44:9, 44:12, 45:4, 45:6, 45:11, 46:1, 47:5, 47:12
**venue** [1] - 9:7
**via** [1] - 39:25
**view** [2] - 24:5, 24:16
**Vindigni** [2] - 5:5, 47:24
**VINDIGNI** [1] - 5:5

*60*

| | |
|---|---|
| **Vindignis** [1] - 48:4<br>**violate** [1] - 21:4<br>**violated** [1] - 21:6 | **worth** [1] - 23:22<br>**wrap** [1] - 36:21<br>**wrinkles** [1] - 14:16 |

<table>
<tr><td colspan="2" align="center"><b>W</b></td></tr>
</table>

<table>
<tr><td colspan="2" align="center"><b>Y</b></td></tr>
</table>

| | |
|---|---|
| **Wacker** [1] - 2:15<br>**wait** [1] - 19:9<br>**waiting** [2] - 6:8, 6:21<br>**waiver** [2] - 9:13, 10:1<br>**waivers** [2] - 8:7, 17:23<br>**Walid** [1] - 7:12<br>**Walker** [1] - 5:2<br>**Walmart** [4] - 30:11, 30:23, 31:8, 33:4<br>**wants** [3] - 18:4, 18:14, 25:7<br>**warrant** [2] - 32:16, 33:10<br>**warranty** [18] - 12:2, 12:9, 12:14, 12:16, 14:6, 15:7, 15:14, 22:13, 22:14, 22:20, 23:8, 25:3, 25:18, 25:21, 25:22, 25:25, 28:24<br>**ways** [1] - 46:3<br>**week** [3] - 6:6, 6:19, 11:25<br>**weigh** [2] - 20:10, 21:11<br>**Weinstein** [1] - 14:23<br>**West** [1] - 2:15<br>**whereas** [1] - 14:15<br>**White** [1] - 5:2<br>**whole** [1] - 41:7<br>**wholesaler** [2] - 30:22, 31:6<br>**wholesalers** [1] - 30:14<br>**wide** [1] - 25:17<br>**William** [1] - 4:22<br>**Williams** [2] - 5:2, 7:13<br>**Wilson** [1] - 7:13<br>**Wineinger** [3] - 9:9, 9:15, 10:2<br>**Wineinger's** [1] - 18:11<br>**wish** [1] - 45:13<br>**withdraw** [1] - 4:22<br>**wonder** [1] - 45:20<br>**word** [2] - 11:21, 13:10<br>**workable** [1] - 17:9<br>**works** [1] - 35:23<br>**worlds** [4] - 15:13, 21:24, 22:8, 24:25<br>**worse** [1] - 26:4 | **years** [4] - 10:15, 33:3, 33:11, 44:5<br>**York** [4] - 2:7, 2:24, 47:25<br><br>**Z**<br><br>**Zher** [28] - 29:25, 30:5, 30:9, 30:16, 30:17, 31:3, 31:18, 32:4, 32:13, 32:19, 33:1, 33:2, 33:11, 33:17, 36:16, 38:8, 38:21, 40:17, 41:1, 44:1, 44:4, 44:18, 44:25, 45:23, 46:9, 46:24, 47:9<br>**Zher's** [2] - 30:25, 36:2<br>**ZHP** [19] - 5:10, 12:4, 12:7, 15:9, 22:21, 30:5, 30:7, 30:9, 30:10, 30:23, 31:2, 31:8, 31:11, 31:12, 33:1, 33:11, 34:20, 34:25<br>**ZHP's** [2] - 33:2, 33:3<br>**ZHP/Teva/Torrent** [2] - 22:13, 25:4<br>**ZHP/Walmart/ McKesson** [1] - 33:5<br>**Zyprexa** [1] - 14:23 |

*United States District Court*