IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION

| | |
|---|---|
| IN RE: Valsartan N-Nitrosodimethylamine (NDMA), and Irbesartan Products Liability Litigation<br><br>This Document Relates to All Actions | MDL No. 2875<br>Civil No. 19-02875<br>(RBK/SAK) |

## SPECIAL MASTER ORDER NO. 69

By Special Master Order ("SMO") No. 64 (ECF Doc. No. 2015), *all* Defendants were directed to complete the meet and conferral process with Plaintiffs "regarding the existence and status of any agreements, written or oral, to defend and/or indemnify, and any dispute, litigation, mediation, or arbitration between Defendants, related to contaminated valsartan including the claims in this litigation." That order further directed Defendants to "disclose to Plaintiffs any change in the status quo of such agreements, disputes, litigation, mediation, or arbitration; new demands to defend or indemnify; establishment of any new agreements; or any new dispute, litigation, mediation, or arbitration, without the need for Plaintiffs to make any further request." The purpose of SMO 64 was to assure that all Defendants provide current information with respect to agreements to defend and/or indemnify that had been sought in previously served discovery requests.

It appears that all defendants with the exception of the Wholesaler Defendants – AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation ("Wholesalers") – complied with SMO 64. The Wholesalers, contending that court-approved discovery requests were limited to *indemnification* agreements and did not encompass *defense* agreement, argue that Plaintiffs are seeking to use SMO 64 to require far more than supplementation of prior discovery responses. Consequently, Wholesalers filed objections to SMO 64 pursuant to Fed. R. Civ. P. 53(f)(2). (ECF Doc. No. 2050.) By Order filed on May 10, 2022 (ECF Doc. No. 2054), the Hon. Robert B. Kugler, concluding that the objections essentially sought clarification of SMO 64, denied the objections and remanded the dispute to the Special Master "so that the parties [may] properly place their concerns on additional, supplementary, and/or new discovery requests relating to Defendants' indemnification and defense agreements before the Special Master for resolution." On May 23, 2022, the Wholesalers filed a "Motion for Clarification and Modification of Special Master Order No. 64." (ECF Doc. No. 2071.)[1] Plaintiffs filed an opposition brief to the motion on June 2, 2022 (ECF

---

[1] Characterizing the Wholesalers' Motion as seeking reconsideration of Special Master Order No. 64 and citing District of New Jersey Local Rule 7.1(i), Plaintiffs contend that the Wholesalers waived their right to seek relief with respect to Special Master Order No. 64. Local Rule 7.1(i) requires a motion for reconsideration to be filed within 14 days after entry of the at-issue order, and the Wholesalers' "Rule 53 Objection to and Motion for Clarification of [SMO 64]" (ECF Doc. No. 2050) was not filed until 21days after the docketing of SMO 64,

2

Doc. No. 2078), and the Wholesalers submitted a Reply Brief on June 6, 2022. (ECF Doc. No. 2094.)

The parties have sparred extensively about what information and documentation are actually being sought pursuant to SMO 64. Wholesalers assert that Plaintiffs are demanding production of what the Wholesalers characterize as "Defense Information," which the Wholesalers define as requiring:

> 1) Wholesalers disclose whether an entity from which a Wholesaler purchased VCDs ["Valsartan Containing Drugs"], or some other entity on its behalf, has undertaken that Wholesaler's defense or has agreed to defend that Wholesaler or reimburse it for costs of defense, and if so, the percentage of those costs to be reimbursed and the amounts reimbursed;
> 2) Wholesalers disclose whether any Wholesalers have "disputes" with any Manufacturer with respect to defense;
> 3) Wholesalers disclose whether they have initiated a formal claim or proceeding with respect to a dispute with a Manufacturer including any "public or private litigation, arbitrations, claims, or other proceedings," and if so, identify the forum and status of the dispute;
> 4) Wholesalers identify whether they have agreed to undertake the defense of a Retail Pharmacy Defendant and/or whether they have agreed to reimburse a Retail Pharmacy Defendant's cost of defense, and if so, the amounts reimbursed;

---

thus prompting Plaintiffs' waiver argument. Plaintiffs, however, disregard the fact that the Wholesalers had 21 days within which to object to or seek modification of SMO 64. *See* Fed. R. Civ. P. 53(f)(2). Judge Kugler determined that the Wholesalers' timely-filed objection was more properly considered in the first instance by the Special Master. (ECF Doc. No. 2054.) By Special Master Order No. 67, entered on May 12, 2022 (ECF Doc. No. 2063), a briefing schedule to address the Wholesalers' objections to SMO 64 was established, and the Wholesalers timely submitted their brief and reply brief. Under these circumstances, a finding of waiver is not warranted.

3

> 5) Wholesalers identify whether any Wholesalers have "disputes" with a Retail Pharmacy Defendant(s) with respect to defense;
> 6) Wholesalers identify whether they have initiated a formal claim or proceeding with respect to a dispute with a Retail Pharmacy Defendant(s), including any "public or private litigation, arbitrations, claims, or other proceedings," and if so, identify the forum and status of the dispute;
> 7) By implication, communications between Wholesalers and Manufacturers and/or Retail Pharmacies and their counsel regarding the above.

(ECF Doc. No. 2071 at 1-2.)

Plaintiffs deny any intention to compel disclosure of such comprehensive information, stating in their Opposition Brief that "Plaintiffs seek information related solely to the existence and status of" any agreement regarding indemnification/defense. (ECF Doc. No. 2078 at 12.) In their Reply Brief, the Wholesalers acknowledge that they now understand that "Plaintiffs want discovery of 'information related solely to the existence and status of an agreement, should one exist [between Wholesalers and Manufacturers and/or Retailers regarding defense.]" (ECF Doc. No. 2094 at 6.) Wholesalers continue:

> Plaintiffs now state that they are not seeking communications about any agreement to defend that are protected by privilege and/or the common interest doctrine, and no issues remain between the parties regarding Plaintiffs' requests for information about indemnification agreements. Rather, at this point, Plaintiffs are asking the Court, per SMO 64, to require Wholesalers to disclose the names of any party with whom Wholesalers have entered into an agreement to defend and the "status" of any such agreement. Wholesalers understand the request for "the status" of any such agreement to include irrelevant details such as who is paying, how much, when,

4

>and how—i.e., the way that multiple parties with defense obligations have chosen to share in those arrangements.

(*Id.* at 6-7.) Wholesalers insist that even this reduced scope of information relating to defense agreements is not discoverable. As relief, they "request that the Court deny Plaintiffs' request to order the production of the Defense Information, if any, pursuant to SMO 64, and clarify that SMO 64 only requires Wholesalers to supplement their prior responses to Plaintiffs' timely-served and Court-approved discovery requests pursuant to Fed. R. Civ. 26(e), if and when necessary." (ECF Doc. No. 2094 at 13.)

Contrary to the Wholesalers' assertions, however, "defense agreements are generally not privileged," *Pacific Coast Steel v. Leany*, 2:09-CV-02190-KJD, 2011 WL 4572008, at *3 (D. Nev. Sept. 30, 2011), and fairly fall within the scope of allowable discovery. As recently stated in *Knox Trailers, Inc. v. Clark*, 3:20-CV-137-TRM-DCP, 2022 WL 572704, at *2 (E.D. Tenn. Feb. 24, 2022), "[i]n almost every situation where one person pays the legal fees of another, the fact of that arrangement is fair game for disclosure and no privilege to withhold that fact exists." (Quoting *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 WL 3928293, at *9 (S.D. Ohio Aug. 12, 2014)). In this regard, it has been recognized that a party "has a right to know which parties are maintaining a common defense against it." *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009). At a minimum, such information may suffice to

5

suggest bias on the part of a party-witness. *See Jeld-Wen, Inc. v. Nebula Glasslam Intl., Inc.*, 07-22326CIV-DIMITROU, 2008 WL 756455, at *9 (S.D. Fla. Mar. 11, 2008) ("that information contained in the June 11th [Defense] Agreement could reasonably be found to demonstrate bias . . . suffices to bring the June 11th Agreement within the definition of 'relevance' dictated by Rule 26, Fed. R. Civ. P., for discovery purposes").

The scope of discovery under the Federal Rules is intended to be broad and inquiries that can unearth a motivation for bias on the part of a witness are generally viewed as "reasonably calculated to lead to the discovery of admissible evidence." *Knox Trailers*, 2022 WL 572704, at *4. One court, in determining that "the existence of an arrangement to defend [parties to the litigation] meets the threshold requirement of relevance for discovery purposes," succinctly explained:

> A party may or may not stand to gain from the outcome of litigation when it pays for another party's costs and attorneys' fees. Nonetheless, the existence of such a relationship may indicate bias, including by revealing further facts demonstrating that the financing party may benefit from the financed party's triumph, either through the recovery of costs or, when applicable, attorneys' fees. Moreover, a relationship between any parties that leads to one financing the other's litigation, regardless of any potential return on the investment, may indicate bias. Therefore discovery to determine that relationship is reasonably calculated to lead to the discovery of admissible evidence.

*In re Compl. of Foss Mar. Co.*, 5:12-CV-21-TBR-LLK, 2015 WL 1249571, at *2 (W.D. Ky. Mar. 18, 2015).

Although court-approved discovery requests in this case may have been limited to *indemnification* arrangements, defense agreements are sufficiently related to the concept of indemnification to require their production. The Wholesalers' overly myopic view of previously approved discovery requests cannot obscure the fact that defense agreements are a close cousin to indemnification agreements.[2] Significantly, no other defendants have resisted production of defense agreements on the ground that they fall outside the parameters of court-approved discovery requests.

To the extent that the Wholesalers are concerned that the discovery of defense agreements may require the production of privileged or otherwise protected information, their concerns are unfounded. First, Plaintiffs are "entitled to information supporting the privilege – *i.e.*, the date an agreement was entered, the parties to the agreement, and its general scope." *Blackmon v. Bracken Constr. Co., Inc.*, 338 F.R.D. 91, 96 (M.D. La. 2021); *see also Warren Distrib. Co. v. InBev USA L.L.C.,* 2008 WL 4371763, at *3 (D.N.J. Sept. 18, 2008). And second, any privilege concerns can be allayed by the Wholesalers submitting to the Court through the Special Master any defense agreements or other documents for *in camera* review to assure that only non-privileged information is produced.

---

[2] It is generally recognized in the insurance context that there can be no duty to indemnify absent a duty to defend. *See, e.g., Ramara, Inc. v. Westfield Ins. Co.,* 814 F.3d 660, 673 (3d Cir. 2016).

Plaintiffs have specifically suggested that option, stating that "[t]o the extent that Wholesalers refuse to comply with SMO 64, Plaintiffs request that each and every defense agreement, however named, be provided to the Court for *in camera* review. This review should include Cardinal Health's defense agreement with Mylan which Cardinal Health continues to shield from disclosure." (ECF Doc. No. 2078 at 11.)[3]

So that there is no confusion on the scope of SMO 64, the Wholesalers' request for clarification will be granted to this extent: Wholesalers, in addition to supplementing their disclosures with respect to indemnification agreements, are to disclose to Plaintiffs the identity of the parties to *any* joint defense agreement or arrangement, the date the agreement or arrangement was reached, and the general scope of the agreement, including who is paying, how much, when, and how.[4]

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. The Wholesaler Defendants' Motion for Clarification and Modification of SMO 64 (ECF Doc. No. 2071) is **GRANTED IN PART.**

---

[3] For instances of courts conducting *in camera* review of joint defense agreements to assure that protected information is not divulged *see Blackmon*, 338 F.R.D. at 94); *Ford Motor Co.*, 257 F.R.D. at 428-29; *Pacific Coast Steel*, 2011 WL 4572008, at *3; and *Warren Distrib. Co.*. 2008 WL 4371763, at *3.

[4] Such details are plainly relevant to the issue of bias. To the extent that there is uncertainty on the part of Plaintiffs or Wholesalers with respect to the obligations imposed by this Order, they are to request a conference call with the Special Master to address their concerns.

2. The Wholesaler Defendants shall, within 14 days, supplement their disclosures with respect to indemnification agreements to the extent supplementation is warranted, and produce to Plaintiffs (or to the Special Master for *in camera* review) any defense agreements to which any Wholesaler Defendant is a party and disclose to Plaintiffs the identity of the parties to *any* joint defense agreement or arrangement to which they are parties or in which they are involved, the date the agreement or arrangement was reached, and the general scope of the agreement, including who is paying, how much, when, and how, as well as disclose any dispute, litigation, mediation, or arbitration between Defendants, related to Valsartan including the claims in this litigation..

3. In all other respects, the Wholesaler Defendants' Motion for Clarification and Modification of SMO 64 (ECF Doc. No. 2071) is **DENIED.**

s/ Thomas I. Vanaskie  
Hon. Thomas I. Vanaskie (Ret.)  
Special Master