

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA  15219
412.263.2000     FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.:  412.263.1816
DIRECT FAX NO:  412.263.4246
FILE NO.:  MYLAN-112578
EMAIL:  cct@pietragallo.com

October 4, 2022

**Via ECF**

The Hon. Robert B. Kugler                    Special Master the Hon. Thomas Vanaskie
United States District Judge                 Stevens & Lee
USDC, District of New Jersey                  1500 Market Street, East Tower, 18th Floor
Mitchell H. Cohen Building & U.S. Courthouse  Philadelphia, PA 19103
4th & Cooper Streets, Room 1050
Camden, NJ 08101

     Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
           USDC, District of New Jersey, No. 1:19-md-2875-RBK-KMW

Dear Judge Kugler and Judge Vanaskie:

     I write on behalf of the Defendants' Executive Committee to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on Thursday, October 6, 2022. Defendants do not anticipate that any of the items on the agenda will require confidentiality.

**1.   Update on Motion to Seal re: Class Certification Briefing Exhibits**

     The parties continue to work cooperatively and are actively engaged in the meet-and-confer process to evaluate and negotiate the confidentiality of documents filed in connection with class certification briefing, including the Rule 702 briefs on class certification experts. The parties have made ample progress and have agreed that a large number of materials filed initially with confidentiality treatment can be de-designated and refiled for public disclosure, or filed with redactions where appropriate instead of under seal. Given the large volume of materials, the parties continue to work through those documents and anticipate completing that process within the next

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 2

month. At that point, the parties will have an idea of how many documents remain in dispute and need to be briefed in a motion to seal. The parties anticipate that they will be in a position to propose a briefing schedule by the next case management conference.

## 2. Losartan/Irbesartan Core Discovery Status Report

### A. Aurobindo

The Aurobindo Defendants have conferred with Plaintiffs by email and phone. They have supplemented their existing production of documents with a rolling production of additional production volumes in recent weeks. These production volumes contained the irbesartan DMF, irbesartan ANDAs, responsive nitrosamine test results, and responsive FDA communications. Additional productions are forthcoming.

### B. Hetero

Hetero has satisfied its core discovery production obligations, with the exception of the ANDA documents. Hetero intends to have those documents produced by October 12, 2022, before the October 17, 2022, deadline.

### C. Teva

On September 23, 2022, Teva produced all material responsive to the Core Discovery Order for Losartan and Irbesartan (ECF No. 2132), subparagraph 6.b.i, consisting of Teva's ANDA files for all finished dose formulations marketed or intended to be marketed in the United States at any time prior to the losartan recalls at issue.[1] Teva is finalizing its production of material

---

[1] This production is subject to Teva's Reservation of Rights which was served contemporaneously therewith, and further reservations identified in Teva's accompanying transmittal letter. Production of these ANDAs does not represent any admission that said documents are relevant or admissible.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 3

responsive to subparagraph 6.b.iv and paragraph 8, consisting of all nitrosamine test results for

involved products and sales and pricing data, which will be produced this week. Teva does not

anticipate requiring further time to collect and produce the remaining material responsive to

subparagraph 6.b.ii by the October 17, 2022 deadline, and will meet and confer with Plaintiffs'

counsel promptly should any issues arise.

### D. Torrent

Torrent Pharmaceuticals Ltd. and Torrent Pharma, Inc. (collectively "Torrent") completed

production of Losartan Core Discovery on Monday, September 26, 2022. Torrent does not

anticipate making any further productions in connection with Core Discovery.

### E. ZHP

ZHP and plaintiffs met and conferred last week about testing documents for batches of

non-US grade losartan and irbesartan, and the ZHP Defendants subsequently provided additional

information for plaintiffs to consider. The ZHP Defendants hope to further discuss this information

with plaintiffs next week and, if the parties are unable to reach an agreement, the ZHP Defendants

anticipate briefing this issue with the Court in advance of the next conference. To the extent the

Court requires the ZHP Defendants to produce additional testing material, the ZHP Defendants

will request 60 days from such an order to complete production.

### 3. Case Management Issues for the Third-Party Payor ("TPP") Trial

The parties have met and conferred multiple times since the last Case Management

Conference and have narrowed their differences with respect to the TPP Trial. The parties agree

the plaintiff in the TPP Trial will be MSPRC as assignee of the claims of one or more of its

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 4

Medicare Advantage Organization ("MAO") assignors, and the defendants will be ZHP, Teva, and

Torrent. The parties have also made progress on case-specific discovery topics.

Two issues are currently ripe for the Court's consideration. First, the parties have reached

an impasse on three case-specific discovery requests relating to the damages claimed by MSPRC,

and Defendants seek the Court's determination of these disputes. Second, MSPRC proposes to try

the claims of two MAO assignors, EmblemHealth and SummaCare, and have taken the position

that the MAO assignors' claims encompass the law of 16 states for EmblemHealth and 6 states for

SummaCare. Defendants disagree with Plaintiffs' analysis of the governing law and have proposed

briefing the issue and obtaining the Court's prompt guidance to finalize the state law claims at

issue for trial. Plaintiffs agree with the need to obtain the Court's guidance, but disagree with

Defendants' proposed timing and seek to defer consideration of the matter until after the Court

rules on class certification—even though the Court has repeatedly made clear the TPP trial will

not be a class trial. We address each issue in turn.

### A.   Case-Specific Fact Discovery

Defendants proposed ten categories of case-specific fact discovery to Plaintiffs by letter

dated September 1, 2022, a copy of which is attached hereto as **Exhibit A**. The parties discussed

the proposed categories during a meet-and-confer call on September 12, 2022. By follow-up letter

to Plaintiffs' counsel dated September 23, 2022, Defendants memorialized the resolutions reached

during the September 12 meet-and-confer with respect to seven of the ten categories, identified

three categories on which the parties are at an impasse, and served a set of nine document requests

based on the parties' discussions. Defendants also asked Plaintiffs to indicate whether any other

case-specific discovery disputes remain outstanding, and to indicate when MSPRC could complete

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 5

production of the documents it had agreed to produce. A copy of Defendants' September 23 letter

and the accompanying document requests is attached hereto as **Exhibit B**.

In follow-up meet-and-confer calls on September 30, 2022 and October 3, 2022,

Defendants again asked Plaintiffs to state when they could complete their production. On the

afternoon of October 4, 2022, shortly before the parties' position statements were due, MSPRC's

counsel sent a letter stating that MSPRC proposes producing responsive documents "on a rolling

basis to be completed by December 6, 2022," which is just 16 days before Defendants' expert

reports are due. MSPRC's letter confirmed the parties are at an impasse on the three requests

discussed below, raised several new issues, and indicated MSPRC is available to meet and confer

on the new issues. Defendants reserve their right to raise additional concerns regarding the

proposed production date and MSPRC's new issues following an opportunity to meet and confer

with MSPRC on these matters.

Defendants further request that the Court resolve the parties' dispute with respect to the

three categories of document requests for which the parties are at an impasse. They are:

2. **Subsidy, Reimbursement, and Rebate Data**: TPP Plaintiff shall produce in Excel format data reflecting all subsidies, reimbursements, and rebates received by TPP Plaintiff from Center for Medicare and Medicaid Services ("CMS"), including but not limited to all prescription drug event ("PDE") reports and all PDE payment records reflecting reimbursement requests and payments for valsartan drugs, during the time period for which TPP Plaintiff is seeking damages (the "Relevant Time Period").

3. **CMS [Centers for Medicare & Medicaid Services] Bids**: TPP Plaintiff shall produce all materials submitted in connection with its bid submissions to CMS as a sponsor for Medicare Part D prescription drug plans for each of the contract years that correspond with the Relevant Time Period.

4. **Internal Reporting**: TPP Plaintiff shall produce any internal reporting analyzing or reflecting projections and actual spend on Part D prescription drugs during the Relevant Time Period.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 6

(Ex. A at 2.) Plaintiffs object to all three categories in their entirety as irrelevant and have indicated that MSPRC will not produce any documents responsive to the corresponding requests.

Defendants are entitled to production of the requested documents, which are highly relevant to the TPP Trial. Each of these categories pertains to the same issues—the calculation of MSPRC's alleged damages and Defendants' refutation of MSPRC's damages calculation. Plaintiffs have previously asserted, primarily through the declaration of their economist, Dr. Rena Conti, that TPPs like MSPRC's assignors, EmblemHealth and SummaCare, are entitled to recover the **_full purchase price_** of each valsartan-containing drug paid at the point of sale, excluding only the copay/coinsurance amount paid by consumers. (*See* ECF No. 1749-2 [Conti Dec.] ¶ 61.) Defendants disagree. EmblemHealth and SummaCare are MAOs, meaning they receive substantial government subsidies paying for or reimbursing significant portions of the amounts paid on behalf of plan beneficiaries for prescription drug purchases. Applicable authority establishes that a TPP is **_not_** entitled to recover amounts it did not pay or for which it was reimbursed, and that government subsidies and reimbursements must be set off against the TPP's asserted damages. As the Southern District of New York recently explained in the context of a TPP claim seeking economic loss damages for amounts paid or reimbursed by the TPP plaintiff for a prescription drug at allegedly anticompetitive prices:

> Any benefits, including discounts or subsidies, that flowed to a plaintiff must be used to reduce the amount of damages suffered by that plaintiff. Therefore, as a matter of law, to the extent [TPP] Class Members receive any form of payment that covers all of part of its memantine prescription costs, those payments must be deducted from damages. **_This is not even a close question_** - subsidies, of all forms, are a damages set off and the jury (assuming we have a jury trial on damages) will be so instructed.

*In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549 (CM) (RWL), 2022 U.S. Dist. LEXIS 149561, at *37 (S.D.N.Y. Aug. 15, 2022) (emphasis added). The question of whether

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 7

MSPRC is seeking recovery for damages beyond its assignors' actual losses by failing to set off

subsidies, reimbursements, and rebates is thus fair game for discovery and trial.

All three of the disputed categories of discovery requests are necessary to evaluate and

challenge Plaintiffs' damages methodology. Defendants contend that MSPRC is seeking damages

on behalf of its MAO assignors in excess of the amounts EmblemHealth and SummaCare actually

paid for the valsartan-containing drugs at issue, and has not properly accounted for or set off

payments and subsidies that flowed to EmblemHealth and SummaCare from the government for

their prescription drug purchases. To test Plaintiffs' damages methodology and to develop their

defense, Defendants are entitled to conduct discovery into the MAOs' subsidy, reimbursement,

and rebate data, their bids to CMS (which contain information regarding the MAOs' expected

versus actual prescription drug expenditures during the relevant time period under Medicare Part

D), and their internal reporting analyzing their actual spend on Part D prescription drugs—all of

which are reasonably likely to provide insight into the MAOs' actual out-of-pocket expenditures

on the at-issue valsartan-containing drugs, versus the amounts incurred or reimbursed by the

government, for which MSPRC cannot recover damages.

In addition to their unsupportable relevance objections, Plaintiffs further object to Category

2 on the grounds that MSPRC has only "aggregate data" available regarding EmblemHealth's and

SummaCare's payments, reimbursements, and rebates, and that CMS does not make direct

payments for valsartan-containing drugs. At the outset, it is unclear why that is so. MSPRC or its

assignors should have access to itemized Prescription Drug Event ("PDE") data, reports, and file

submissions, in addition to aggregate reconciliations of PDE data. Regardless, even if only

aggregate data are available and assuming CMS does not make direct payments for valsartan-

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 8

containing drugs, that is of no consequence to Defendants' right to discovery of these materials.

Evaluating the TPPs' aggregate data and determining the portion of the aggregate payments and

reimbursements allocable to the purchase or reimbursement of valsartan-containing drugs is a

matter for expert inquiry and, ultimately, a question of fact for the jury. As the court explained in

*In re Namenda*, the "complex set of coverages and reimbursements" to be taken into account in

performing a TPP's damages calculation, including "how much of the cost" of the prescription

drug "ends up being borne by the Government" rather than the plaintiff, is a matter on which

experts may disagree and—if their methods are reliable—is "a question of fact for the trier of

fact[.]" 2022 U.S. Dist. LEXIS 149561, at *38-39. The subsidy, reimbursement, and rebate data

Defendants seek are available in standardized data, reports, and submissions generated by or

available to all MAOs through CMS. Accordingly, Plaintiffs should be compelled to produce the

requested data.

Plaintiffs object to Categories 3 and 4 on the grounds that the MAOs' expected drug

expenditures have no bearing on whether the valsartan-containing drugs they paid for were

"adulterated and worthless." That self-serving reference to Plaintiffs' own theory of liability

misses the point. The requested CMS bids and internal reporting are relevant to damages,

specifically, the amounts actually expended by the MAOs on valsartan-containing drugs versus

the amounts paid for or reimbursed by CMS for which Plaintiffs cannot recover. Plaintiffs further

object to Categories 3 and 4 on the grounds that the requested CMS bids and internal reporting are

proprietary. That is not a proper basis for withholding discovery under Rule 26(b)(1); the

Confidentiality and Protective Order in this case permits proprietary information to be designated

as confidential in order to prevent improper disclosure. Defendants have produced numerous

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 9

proprietary documents in accordance with the Confidentiality and Protective Order, and Plaintiffs

can certainly do the same.

Because Defendants' discovery requests are clearly relevant, and MSPRC has presented

no valid basis to withhold production, the Court should compel MSPRC to produce data, reports,

and other documents responsive to each of Defendants' requests, corresponding to Defendants'

Requests for Production 2, 3, and 4.

### B.  Determination of Governing Law for TPP Trial

During the parties' meet-and-confer call on September 30, 2022, Plaintiffs proposed to try

the assigned claims of both EmblemHealth and Summacare at the TPP Trial, and further expressed

their view that a trial of EmblemHealth's and Summacare's claims would involve applying the

separate laws of each state where the plan beneficiaries made their valsartan purchases, which

(according to Plaintiffs) would be 16 states for EmblemHealth and 6 states for Summacare. After

evaluating Plaintiffs' position, Defendants responded by letter on October 2, 2022, a copy of which

is attached hereto as **Exhibit C**. Defendants disagreed with Plaintiffs' position that the law of the

state of each plan beneficiary's purchase governs the TPP Plaintiffs' claims. Defendants indicated

that, although each claim by each assignor must be analyzed separately under governing conflicts

of law principles, and the analyses are multi-factorial and complex, Defendants believe most if not

all of the TPP Plaintiffs' claims are ultimately likely to be governed by the law of each TPP

Plaintiff's home state and the state where each TPP Plaintiff paid for and/or reimbursed each

valsartan purchase, *i.e.*, New York for EmblemHealth and Ohio for Summacare. *See In re Actiq*

*Sales & Mktg. Practices Litig.,* 307 F.R.D. 150, 167 (E.D. Pa. 2015) (concluding unjust enrichment

laws of TPPs' home states apply because "the parties' relationship was centered there" and

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 10

"payments for Actiq prescriptions originated in TPPs' home states"); *In re K-Dur Antitrust Litig.,*

Civil Action No. 01-1652 (JAG), 2008 U.S. Dist. LEXIS 113310, at *27-28 (D.N.J. Mar. 19, 2008)

(finding the "state with the greatest interest in a TPP's claims brought on its own behalf is the state

where the TPP has its principal place of business and from which it presumably paid").

Given the importance of this issue, Defendants proposed that the parties obtain a

simultaneous briefing schedule from the Court to determine: (1) which state's or states' laws

govern the TPP Plaintiffs' substantive claims; and (2) which of these state law claims will be heard

and decided at the first TPP Trial. Defendants proposed the parties file simultaneous briefs on

these issues by October 27, 2022. At the parties' follow-up meet-and-confer call on October 3,

2022, Plaintiffs agreed that the conflicts of law issues are multi-factorial and complex, and agreed

it will ultimately be necessary to obtain the Court's guidance. They disagreed with Defendants'

proposed timing, however, and asserted the Court's pending class certification ruling may provide

guidance on this issue. Plaintiffs proposed to postpone briefing the questions of governing law and

which states' laws will be heard and decided at the TPP Trial until after the Court rules on class

certification.

Defendants respectfully submit that prompt resolution of all conflicts of law questions for

the TPP Trial is necessary and desirable. At the outset, Plaintiffs' position is at odds with this

Court's prior choice of law analysis in MTD Opinion 4. (*See* ECF No. 818 at 9-12.) There, the

Court ultimately concluded that irrespective of the specific conflicts of law test applied, for all

plaintiffs and all claims "the answer remains the same: the law of the plaintiffs' home state should

apply." (*Id*. at 11.) Thus, by this Court's prior ruling, the law of each MAO assignor's home state

(New York for EmblemHealth and Ohio for SummaCare) governs its claims. To the extent

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 11

Plaintiffs assert that this Court's prior determination is inapplicable to MSPRC or the TPP Trial, it is incumbent upon Plaintiffs to justify their departure from the law of the case. And the disagreement is best brought to a prompt resolution so that time and resources are not consumed preparing for state law claims that are not at issue in the TPP Trial and Defendants are not prejudiced by Plaintiffs' efforts to expand the scope of the TPP Trial to claims outside of the assignors' home states.

Moreover, whether the TPP Trial will encompass claims under the laws of 2 states or 22 states is a question of significant consequence with respect to the claims at issue, the elements of liability to be assessed through fact and expert discovery, the measures of damages to be evaluated by damages experts, and the jury instructions to be given. Orderly preparation for and administration of the TPP Trial requires an answer to the question of which state's or states' laws govern the claims to be tried, and which state law claims will be heard at trial.

Plaintiffs' proposal to postpone resolution of this important question until after the Court's class certification ruling continues a pattern of ignoring the Court's clear dictates regarding the scope of the TPP Trial. The Court has explained at each of the last three Case Management Conferences that the TPP Trial will not be a class trial. The Court was clear on this point at the most recent conference, stating: "It will be a single plaintiff. The problem is, of course, as has been noted by counsel, is the one-way intervention problem and now the class representative problem. ***So it's going to be a one-plaintiff trial, not a class trial that we do***." Aug. 24, 2022 CMC Tr. at 19:2-6 (emphases added). *See also id*. at 24:7-11 (reiterating "[i]t's going to be one plaintiff" and "we are just going to have one plaintiff" and stating that even if the Court grants class certification, the most it would entertain for the TPP Trial is a motion for "some kind of very limited sub, sub,

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 12

sub-class"). Nothing in the Court's repeated statements regarding the TPP Trial, therefore, indicates that the class certification ruling will bear materially on the conduct of the TPP Trial, much less that the Court would consider expanding the TPP Trial into a multi-state TPP class trial under the laws of 22 states. Defendants respectfully submit the TPP Trial is on a separate track from the class certification question, and it behooves the Court and the parties to obtain guidance now on the state law governing the claims at the non-class TPP Trial.

Accordingly, Defendants request the Court set a simultaneous briefing schedule to determine (1) which state's or states' laws govern the TPP Plaintiffs' substantive claims, and (2) which of these state law claims will be heard and decided at the first TPP Trial, with simultaneous briefs on these issues due on October 27, 2022.

**4. Scope and Applicability of CMO 29**

At the most recent Case Management Conference, Plaintiffs asked the Court to set up staggered case management deadlines related to subsequent trials with respect to the Manufacturer Defendants—Mylan, Hetero, and Aurobindo—who are not party to the initial TPP trial. The Court rejected Plaintiffs' request: "[t]he proposal about *sequencing other trials after that trial I think is premature, we don't need to get into that*. The trial that we are going to do, I think the plaintiff is correct, and I believe they indicate that the defendant has sort of bought into this too, it ought to involve ZHP and then the finished dose manufacturers." (August 24, 2022 CMC Tr. 16:2-7. [emphasis added].)

Notwithstanding this clear guidance from the Court, during a subsequent meet and confer to discuss case management issues related to the first trial, Plaintiffs adopted the contrary position

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 13

that the deadlines in CMO 29 pertained to *all* Manufacturer Defendants.[2] Thereafter, Defendants

wrote to the Court to confirm that Plaintiffs' position did not reflect the Court's intent and, indeed,

would defy common sense given there have been no discussions regarding the parties, claims, and

law to be involved in a second trial (ECF No. 2165.) Plaintiffs have now tacitly retreated from

their original position that CMO 29 applies to all of the Manufacturer Defendants, stating in a letter

to the Court that Plaintiffs are "sensitive to the fact that the first TPP trial will involve ZHP, Teva

and Torrent, and not other Defendants," and that Plaintiffs are therefore open to "staggered" case

management deadlines. (ECF No. 2166.)

      Defendants oppose the establishment of additional case management deadlines at this time

for two primary reasons. *First*, the Court has already indicated that it is premature to set deadlines

for subsequent trials. Nothing has happened over the past month to indicate that the status quo has

changed. *Second*, if and when the Court is inclined to revisit this issue, no case management

schedule can be established for subsequent trials until the identity of the plaintiff(s)—and the

governing law of any claims at issue—is set by the Court with respect to any such trial. Absent

this basic, foundational information, Defendants cannot assess an appropriate case management

schedule because the identity of the plaintiff(s), the type of trial, and the claims at issue, could

drastically influence the scope of any supplemental fact and expert discovery necessary for trial.

Indeed, the Court has stated in no uncertain terms that Defendants cannot and will not be forced

to litigate so-called "liability" issues in a vacuum and without a fair opportunity to take discovery.

Notably, it has taken the parties to the *initial* TPP trial months to reach agreement on these issues,

---

[2] All parties agree that the deadlines in CMO 29 do not apply to Retail Pharmacy or Wholesaler
Defendants.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 14

and as discussed above, that process remains ongoing. And unlike with respect to the initial trial,

Defendants do not have ***any*** guidance as to what a subsequent trial would entail.

The Court should reject Plaintiffs' proposal, which essentially aims to establish deadlines

first and then figure out to what case those deadlines will apply second.  Accordingly, Defendants

object to the establishment of a case management schedule as to any subsequent trial as premature,

particularly insofar as the identity of the plaintiff(s) and the claims at issue in any such trial is

unknown. Defendants respectfully request the Court's guidance on this issue, and will be prepared

to discuss it at the Conference later this week.

### 5. <u>Plaintiff Fact Sheet Deficiencies and Orders to Show Cause</u>

<u>Cases Addressed at the August 24, 2022, Case Management Conference:</u>

The Court issued 12 show cause orders returnable at the October 6, 2022 Case Management

Conference:

1. *Michael Shemes v. Aurobindo, et al.* – 21-cv-20204
2. *Margaret Tolley v. Mylan Laboratories, et al*. – 21-cv-10130
3. *Leona Branch v. Mylan, et al.* – 22-cv-582
4. *Richard Vindigni v. Prinston, et al.* – 21-cv-2361
5. *Robert Dais v. Mylan, et al.* – 22-cv-518
6. *Elie Greene v. Aurobindo, et al.* – 21-cv-3214
7. *Debra Stiles v. ZHP, et al.* – 22-cv-01987
8. *Jim Smith v. ZHP, et al.* – 22-cv-01245
9. *Walid Elganam v. ZHP, et al.* – 22-cv-02873
10. *Richard Williams v. ZHP, et al.* – 20-cv-20602
11. *Eric Thompson v. ZHP, et al.* – 21-cv-19973
12. *Judith Ross v. ZHP, et al.* – 22-cv-02387

The issues in the *Shemes*, *Tolley*, *Branch*, *Vindigni*, *Dais*, *Stiles*, and *Ross* matters are

resolved, and the show cause orders may be withdrawn.

The issues in the *Greene*, *Smith*, and *Thompson* matters remain unresolved, but the parties

are working towards a resolution and request a one-month extension of the order to show cause.

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 15

The issues in the *Elganam* and *Williams* matters remain unresolved, and Defendants request their dismissals.

<u>Second Listing Cases – Order to Show Cause Requested:</u>

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these cases were previously listed on the agenda for a prior CMC. This list was provided to Plaintiffs' leadership on September 20, 2022, and a global meet and confer was held on September 23, 2022. Defendants have also been available for further discussion as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why these cases should not be dismissed.

Defense counsel will be prepared to address the individual issues with respect to each of these cases, to the extent necessary, during the October 6, 2022 Case Management Conference:

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 1. | Benita King v. ZHP et al | 22-cv-1628 | Levin Papantonio | Need medical expenses | 7/18/22 |
| 2. | Estate of Charles Bernhardt v. Walgreens, et al. | 22-cv-4330 | Parafinczuk Wolf, P.A. | Multiple deficiencies; need authorizations | 8/2/22 |
| 3. | Carrie Collins v. Aurobindo Pharma, et al. | 19-cv-16386 | Haffner Law PC | No PFS Filed | 7/27/22 |
| 4. | Jacqueline Wallaert v. Aurobindo, et al | 22-cv-1526 | Nabers Law | No PFS Filed | 8/1/22 |

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 16

First Listing Cases – Remaining Core Deficiencies:

The following Plaintiff Fact Sheets contain core deficiencies which remain unresolved. This list was provided to Plaintiff leadership on September 20, 2022, and a global meet and confer was held on September 23, 2022. Defendants have also been available for further discussion as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 1. | Estate of Rita Chikhi v. Mylan, et al | 22-cv-4533 | Parafinczuk Wolf, P.A. | Need authorizations; need clarification of cancer diagnosis sections | 8/17/22 |
| 2. | Yvonne Baker v. Doe | 22-cv-4532 | Parafinczuk Wolf, P.A. | Need authorizations; need clarification of cancer diagnosis sections | 8/17/22 |
| 3. | Carl Mirabile v. ZHP, et al | 22-cv-4254 | Levin Papantonio | Need billing records | 9/12/22 |
| 4. | Gracie Ellis v. ZHP, et al | 22-cv-3382 | Levin Papantonio | Need billing records | 9/12/22 |
| 5. | Rose McCarty v. ZHP, et al | 22-cv-4164 | Nabers Law | Need billing expenses; need authorizations | 9/15/22 |
| 6. | Bobby Yount v. ZHP, et al | 22-cv-4155 | Nabers Law | Need billing expenses; need authorizations | 9/15/22 |

The Honorable Robert B. Kugler
Special Master the Honorable Thomas Vanaskie
October 4, 2022
Page 17

| 7. | Robert Parker v. Hetero, et al | 22-cv-4155 | Nabers Law | Need billing expenses; need authorizations | 9/15/22 |
|---|---|---|---|---|---|
| 8. | Howard Engel v. Aurobindo, et al. | 22-cv-4536 | Parafinczuk Wolf, P.A. | Missing medical records for all but one provider; lot numbers cut off | 9/2/22 |
| 9. | Genita Johnson v. ZHP, et al | 20-cv-20602 | Law Offices of Alvin Pittman | No PFS Filed | 9/22/22 |
| 10. | Anthony Long v. ZHP, et al | 21-cv-13189 | Carlson Law Firm | No PFS Filed | 9/27/22 |

Respectfully submitted,

Clem C. Trischler

c:      All counsel of record (via ECF)