| | |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| | **FOR THE DISTRICT OF NEW JERSEY** |
| 2 | |

**IN RE: VALSARTAN, LOSARTAN, and**      **CIVIL ACTION NUMBER:**

**IRBESARTAN PRODUCTS LIABILITY**      **1:19-md-02875-RBK**

**LITIGATION**      **CASE MANAGEMENT CONFERENCE**

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey  08101
Thursday, October 6, 2022
Commencing at 1:01 p.m.

**B E F O R E:**      THE HONORABLE ROBERT B. KUGLER,
    UNITED STATES DISTRICT JUDGE, and
    THOMAS I. VANASKIE (RET.), SPECIAL MASTER

**A P P E A R A N C E S:**

MAZIE SLATER KATZ & FREEMAN, LLC
BY:  ADAM M. SLATER, ESQUIRE
    CHRISTOPHER GEDDIS, ESQUIRE
103 Eisenhower Parkway
Roseland, New Jersey 07068
Counsel for Plaintiffs

HONIK LLC
BY:  RUBEN HONIK, ESQUIRE
1515 Market Street, Suite 1100
Philadelphia, Pennsylvania 19102
Counsel for Plaintiffs

KANNER & WHITELEY, LLC
BY:  DAVID J. STANOCH, ESQUIRE
    CONLEE WHITELEY, ESQUIRE
701 Camp Street
New Orleans, Louisiana 70130
Counsel for Plaintiffs

    John J. Kurz, Federal Official Court Reporter
    John_Kurz@njd.uscourts.gov
    (856)576-7094

    Proceedings recorded by mechanical stenography; transcript
    produced by computer-aided transcription.

```
 1  A P P E A R A N C E S:  (Continued)

 2  KIRTLAND & PACKARD LLP
    BY: BEHRAM V. PAREKH, ESQUIRE
 3  1638 South Pacific Coast Highway
    Redondo Beach, California 90277
 4  Counsel for Plaintiffs

 5  PRETI FLAHERTY BELIVEAU & PACHIOS LLP
    BY:  GREGORY PAUL HANSEL, ESQUIRE
 6  One City Center, P.O. BOX 9546
    PORTLAND, ME 04112
 7  Counsel for Plaintiffs

 8  MEYER WILSON
    BY:  LAYNE C. HILTON, ESQUIRE
 9  900 Camp Street, Suite 337
    New Orleans, Louisiana 70130
10  Counsel for Plaintiffs

11  RIVERO MESTRE LLP
    BY:  ANDRES RIVERO, ESQUIRE
12       JORGE A. MESTRE, ESQUIRE
         ZALMAN KASS, ESQUIRE
13  2525 Ponce de Leon Boulevard, Suite 1000
    Miami, Florida 33134
14  Counsel for MSP Recovery Claims, Series LLC

15  SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
    BY:  JESSICA D. MILLER, ESQUIRE
16  1440 New York Avenue, N.W.
    Washington, D.C. 20005
17  Counsel for Defendant ZHP

18  PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
    BY: CLEM C. TRISCHLER, ESQUIRE
19      FRANK STOY, ESQUIRE
        JASON M. REEFER, ESQUIRE
20  One Oxford Centre, 38th Floor
    Pittsburgh, Pennsylvania 15219
21  Counsel for Defendant Mylan Pharmaceuticals, Inc.

22  GREENBERG TRAURIG LLP
    BY: VICTORIA DAVIS LOCKARD, ESQUIRE
23      GREGORY E. OSTFELD, ESQUIRE
        STEVEN M. HARKINS, ESQUIRE
24  3333 Piedmont Road, NE, Suite 2500
    Atlanta, Georgia 30305
25  Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
    Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma
```

1    **A P P E A R A N C E S: (Continued)**

2    WALSH PIZZI O'REILLY FALANGA LLP
      BY:  LIZA M. WALSH, ESQUIRE
3    Three Gateway Center
      100 Mulberry Street, 15th Floor
4    Newark, NJ 07102
      Counsel for Defendant Teva
5

6    HINSHAW & CULBERTSON LLP
      BY: KATHLEEN ERIN KELLY, ESQUIRE
7    53 State Street, 27th Floor
      Boston, MA 02109
8    Counsel for Defendant ScieGen and HJ Harkins

9    HILL WALLACK, LLP
      BY: WILLIAM MURTHA, ESQUIRE
10   21 Roszel Road
      Princeton, New Jersey 08540
11   Counsel for Defendants Hetero Drugs and Hetero Labs

12   CROWELL & MORING LLP
      BY:  DANIEL TODD CAMPBELL, ESQUIRE
13   1001 Pennsylvania Avenue, NW
      WASHINGTON, DC 20004
14   counsel for Defendant Cardinal Health

15   HUSCH BLACKWELL LLP
      MATTHEW D. KNEPPER, ESQUIRE
16   190 CARONDELET PLAZA, SUITE 600
      ST. LOUIS, MO 63105
17   Counsel for Defendant Express Scripts

18   MORGAN, LEWIS & BOCKIUS, LLP
      BY: JOHN P. LAVELLE, JR., ESQUIRE
19       KATHRYN E. DEAL, ESQUIRE
      502 Carnegie Center
20   Princeton, New Jersey 08540
      Counsel for Defendants Aurolife Pharma LLC
21   and Aurobindo Pharma USA, Inc.

22   KIRKLAND & ELLIS LLP
      BY: ALEXIA R. BRANCATO, ESQUIRE
23       BRITTNEY NAGLE, ESQUIRE
      601 Lexington Avenue
24   New York, New York 10022
      Counsel for Defendants Torrent Pharma, Inc.
25   and Torrent Pharmaceuticals Ltd.

1    **A P P E A R A N C E S: (Continued)**

2    ULMER & BERNE LLP
     BY: JEFFREY D. GEOPPINGER, ESQUIRE
3    600 Vine Street, Suite 2800
     Cincinnati, Ohio 45202
4    Counsel for Wholesaler Defendants and AmerisourceBergen

5

6    BARNES & THORNBURG, LLP
     BY:  KARA KAPKE, ESQUIRE
7    2029 Century Park East, Suite 300
     Los Angeles, California 90067
8    Counsel for Retailer Defendants and CVS Pharmacy, Inc., and
     Rite Aid Corporation

9

10   LEWIS BRISBOIS BEASGAARD & SMITH
     BY:  ANDREW F. ALBERO, ESQUIRE
11   550 East Swedesboro Road, Suite 270
     Wayne, Pennsylvania 19087
12   Counsel for Defendants AvKARE and Camber

13

14   NORTON ROSE FULBRIGHT US LLP
     BY:  D'LESLI DAVIS, ESQUIRE
15   2200 ROSS AVENUE
     SUITE 3600
16   DALLAS, TX 75201
     Counsel for Defendant Mckesson Corp.

17

18   POST & SCHELL, P.C.
     BY: MACKENZIE LINDQUIST, ESQUIRE
19   Counsel for Grand Pharmacy, Inc.

20

21   **Also present:**

22   Larry MacStravic, Courtroom Deputy

23   Loretta Smith, Esquire,
     Judicial Law Clerk to the Honorable Robert B. Kugler

24

25

1          (PROCEEDINGS, held in open court before the Honorable

2    Robert B. Kugler and Thomas I. Vanaskie (Ret.), Special Master,

3    at 1:01 p.m. as follows:)

4          JUDGE VANASKIE:  Please be seated.  Thank you very

5    much for the courtesy of standing.  No need to stand for me.

6    Been a long time since I sat up here.

7          (Laughter.)

8          MS. LOCKARD:  It suits you.

9          JUDGE VANASKIE:  That's very kind of you.

10         And it's great to be in person.  And I thank you all

11   for making the effort to be here today.  As you all know, I've

12   been a Special Master in this matter now for over two years,

13   two and a half years, almost three years, and we've never

14   gotten together.  So it is wonderful.  And it's a great feeling

15   for all of us to be together in one room and not have to worry

16   about the phone system working and interruptions and things of

17   that nature; mute your phone; the feedback.  We don't have to

18   worry about feedback today.  And it is wonderful, wonderful to

19   be here.

20         We're going to get into the agenda and then Judge

21   Kugler will take this seat and I'll go where I belong somewhere

22   else in the courtroom.  But it is great to be back in court.

23         We're going to go over the matters that were in the

24   agenda letter.  The first thing I wanted to talk about, though,

25   was this question concerning the scope of Case Management Order

1    29, CMO 29.  Has that been resolved or are we still fencing on

2    that?

3              MR. SLATER:  Fencing, Judge.

4              JUDGE VANASKIE:  Still fencing, okay.

5              Mr. Trischler, good to see you again.  I said, of

6    everybody here, the only one I -- I might just shoot myself in

7    the foot here when I say I didn't meet anybody except

8    Mr. Trischler.  I mediated a case.  Mr. Trischler was on the

9    defense side of the case and a lawyer who grew up in Scranton

10   was on the plaintiff's side, Matt Casey, Governor Casey's

11   younger son, Senator Casey's youngest brother.  And

12   Mr. Trischler was fantastic in terms of the approach to

13   resolution of that matter, and we were able to resolve it.  I

14   was doing that pro bono as part of the Middle District

15   mediation program.  So I do some pro bono work, too.

16             So, Mr. Trischler, you were going to rise and say

17   something about this CMO 29.

18             MR. TRISCHLER:  I was shuffling a little bit, Judge

19   Vanaskie.  It's nice to see you in person as well.

20             I tend to agree with Mr. Slater.  I think we are

21   fencing a bit.  I think there's some understanding, at least as

22   I read the position papers, that the parties agree that CMO 29

23   should only apply to the first trial and to the defendants to

24   that first trial and the claims in that first trial.  I think

25   where the difference is, is what happens after that.  And I

 1    think that's the issue that might need to be resolved.

 2            Our feeling is that Judge Kugler has made it clear

 3    that discussion of second trials and scheduling orders that are

 4    specific to second trials is premature.  But if we're going to

 5    get into that, we can discuss it.  But I think that's the

 6    difference.

 7            JUDGE VANASKIE:  Okay.  Mr. Slater.

 8            MR. SLATER:  Agreed.  We agree that that's the issue.

 9    It's just a question of -- we agree that it should not all be

10    due October 31st for the non-trial cases.  It's just a question

11    of how the Court wants to manage the non-trial manufacturers on

12    a going forward basis, whether we set deadlines now, which we

13    would prefer.  And we suggested 90 days for the next round

14    because we just don't want this to get lost, or whether it's

15    left wide open and for the Court to address at a later date.

16    And, again, we prefer to have at least a date on the calendar

17    so we know we're working towards a conclusion on that process

18    for those other manufacturers as well.

19            JUDGE VANASKIE:  Now, the 90 days that you're talking

20    about, you want deadlines set 90 days from when?

21            MR. SLATER:  It would be to start -- essentially, the

22    way that CMO 29 is lined up, and it starts with plaintiff's

23    liability expert reports, to have a date 90 days after

24    October 31st when that would be the date for us to serve the

25    reports pertaining to the remaining manufacturers and then to

```
 1   start from there.  That's our proposal.
 2           JUDGE VANASKIE:  All right.  And, Mr. Trischler,
 3   that's not acceptable?
 4           MR. TRISCHLER:  No, Your Honor.  I think that would
 5   be a problem and a mistake.  And I think if we look back at the
 6   history of where we are with respect to trying to get the first
 7   case on track and the discovery with respect to the first case
 8   on track, that we're putting the cart before the horse in
 9   setting deadlines before we select a case.  We started down
10   this road for the first trial in June, and here we are in
11   October.  And I think finally today, we're ready to officially
12   set that first trial and who's involved in that first trial and
13   what the claims are and so forth.
14           If we just set deadlines untethered or untied to any
15   case, we're going to run into the same issue of, well, what
16   case do these deadlines apply to?  What are the claims?  What's
17   the law that applies?  And so we think -- Judge Kugler has
18   already said, you know, setting a second trial we think is
19   premature, we ought to wait on that.  But if we're going to
20   revisit that, if the Court's inclined to revisit that, then
21   let's pick what that second case is, let's decide who the
22   parties to it are, let's decide what claims are in, what the
23   law is, and then we can set a discovery schedule that's
24   applicable to that case.  That's the common sense thing to do
25   from our perspective.
```

1    JUDGE VANASKIE:  And it seems to me this is really an

2  issue for Judge Kugler to decide.

3    MR. TRISCHLER:  I would think so.  But, you know,

4  certainly we would welcome discussing it with Your Honor.

5    JUDGE VANASKIE:  Now, he did say, "Vanaskie, take up

6  CMO 29," but I think it might be better if we have a

7  discussion.  It makes sense to me that you've got to pick the

8  case; that you have to know what case you're submitting your

9  expert witness reports for.  Maybe it's not necessary.  But I

10  don't want to make that definitive decision, not without

11  conferring with Judge Kugler.  And if he wants me to issue the

12  order, so be it.  But let's defer on this for now with this one

13  clarification, and that is that CMO 29, as it now applies,

14  concerns only the parties that are going to trial in this first

15  trial, only those defendants and only the plaintiffs in that

16  matter, okay?

17    MR. SLATER:  Yes.  Thank you, Judge.  Fully

18  understood.

19    MR. TRISCHLER:  Thank you, Your Honor.

20    JUDGE VANASKIE:  All right.  The next issue I wanted

21  to address -- and I'm going to utilize the plaintiffs' agenda

22  letter here, I believe -- and that was from Mr. Honik.  No.

23  Mr. Slater.  I'm sorry.  And it concerns the TPP trial plan.

24    Anything else on that, Mr. Slater?

25    MR. SLATER:  I don't believe so.  I thought that was

1  something that Judge Kugler was likely --

2          MR. HONIK:  Your Honor, that is, number one -- excuse

3  me, Adam -- that is an issue that I've addressed in a couple of

4  writings to the Court.

5          JUDGE VANASKIE:  Right.

6          MR. HONIK:  And I think we understood that the trial

7  plan was something that Judge Kugler wanted to consider today.

8          JUDGE VANASKIE:  Okay.

9          MR. HONIK:  We've reached substantial agreement with

10  the defendants about the participating parties.  I think the

11  only remaining question might concern certain conflict of laws

12  issues that the defendants are anxious to have some briefing

13  on, which we think can be deferred.  So a little irony in their

14  wanting to defer discovery on the one hand and wanting to get

15  out of the gate on conflict of laws issues, which we think can

16  be deferred.

17          JUDGE VANASKIE:  Well, is there a conflict of laws

18  issue in connection with this first trial that's coming up?

19          MR. HONIK:  There may need to be certain points of

20  clarification that the Court may wish to weigh in on.  This is

21  to be a TPP trial.

22          JUDGE VANASKIE:  Right.

23          MR. HONIK:  We've agreed on the selection of the

24  assignors of MSP that will be involved.  They have paid claims

25  in the case of Emblem in 16 states; in the case of SummaCare,

1    six states.

2          So there is a question that may require clarification

3    about the specific claims being brought, warranty claims, there

4    are fraud claims, there are CPL claims and the like.  And as to

5    those legal claims asserted and also the subject of our Rule 23

6    motion, the question becomes, we think, which ones are to be

7    certified?  What's the definition of the class?  That will

8    help, I think, to delineate what conflict of laws questions may

9    arise.  And as to those claims, there may need to be some light

10   shed by the Court, we think, closer in time to trial, as to

11   which state's laws are implicated once the conflict of laws

12   analysis is complete.

13         JUDGE VANASKIE:  Okay.  Who will be addressing this

14   issue for the defense?

15         MR. OSTFELD:  Good afternoon, Your Honor.  Greg

16   Ostfeld.  I'll be addressing this issue for the defense.

17         Your Honor, to begin, I'll begin by saying I think I

18   agree, this is probably an issue that will ultimately need to

19   go to Judge Kugler, though I'm happy to begin the conversation

20   with Your Honor.

21         JUDGE VANASKIE:  Okay.

22         MR. OSTFELD:  Because it actually involves an issue

23   that Judge Kugler has previously spoken to, which is the choice

24   of law issue of the claims in this case.  And he addressed that

25   in his MTD Opinion No. 4 --

```
1              JUDGE VANASKIE:  Right.

2              MR. OSTFELD:  -- where he said that the law of the

3   plaintiffs' home states would govern all claims for all

4   plaintiffs, essentially.  He acknowledged the complexity of the

5   conflicts of law analysis.  But where he ultimately came out

6   was for all plaintiffs in all claims, it was very likely going

7   to be the law of their home states that governed.

8              So the issue that we're confronting is we are trying

9   to set a TPP trial.  And to know what is going to be tried, we

10  need to know what claims are at issue.  And if you go by Judge

11  Kugler's reasoning in MTD Opinion 4, we're dealing with the law

12  of two states:  New York for EmblemHealth, which is one of the

13  two assignors; and Ohio for SummaCare, which is the other

14  assignor.

15             The plaintiffs have taken the view that it will be

16  the law of the state where the beneficiary of the plans paid

17  for their medications that is the governing law.  And that's

18  how they came up with 16 states for Emblem and six states for

19  Summa.  And we respectfully disagree with that.  We think the

20  law on TPPs is also quite specific on this.  And we cited case

21  law on this in our letter that it is the law of the TPP's home

22  state because that's where the reimbursements are made.

23  Regardless of where the beneficiaries are located, that's where

24  the reimbursements are made.

25             But for today's purposes, what we're concerned with
```

 1    is getting resolution of this issue, because whether we are

 2    trying a trial with two states' claims or with 22 states'

 3    claims makes an enormous difference in terms of preparing for

 4    this trial and could make a difference in terms of Judge

 5    Kugler's approval of the TPP trial plan, because I don't think

 6    he contemplated a trial of 22 states' laws as the initial trial

 7    in this case.

 8           I would also respectfully submit the issue of class

 9    certification.  And the class certification ruling is entirely

10    immaterial to the issue we're here to discuss today.  Judge

11    Kugler has, over the course of the last several Case Management

12    Conferences, made perfectly clear this trial is going to be a

13    single-plaintiff trial, and it's going to be a non-class trial.

14    He said this will not be a class action.  He said it quite

15    clearly at the last hearing.  So knowing what the Court's

16    ruling is going to be on multistate classes, multistate class

17    issues, what classes may or may not be certified, that's all

18    important information, but not for this trial.

19           For this trial, we need to know what law governs the

20    claims of the two assignors who the one plaintiff is going to

21    be asserting.  Is it just going to be New York and Ohio, or is

22    it going to be 22 different states?

23           So we proposed simultaneous briefing with the

24    briefing due -- we had proposed October 27th, just so we can

25    get resolution of this issue and so that we can appropriately

1  prepare for and have an orderly administration and preparation

2  for trial where everyone knows what claims are going to be at

3  issue from which plaintiffs.

4      JUDGE VANASKIE:  Uh-huh.  What would be the problem

5  with that, Mr. -- I don't know if it's Mr. Honik -- with

6  simultaneous briefs October 27th?  At least get the briefs out

7  on the issue so the matter is in a position to be decided

8  promptly.

9      MR. HONIK:  Well, Your Honor, I don't want to make

10  too fine a point of this, but we're in the middle of doing a

11  great deal in preparation for this.  And it strikes me, given

12  this contemplated trial in 2023, that the urgency of addressing

13  some of these issues is not so great, not least because it has

14  zero impact on preparing for trial.

15      I mean, what I haven't heard from Mr. Ostfeld is in

16  any particular way how that's going to shape the discovery

17  issue -- the additional discovery that we've been negotiating

18  that the parties need in preparation for this.

19      The fact remains that we have grouped the state's

20  laws.  It's convenient to say, well, there's 26 states that are

21  implicated or 22, but the fact remains that it's really driven

22  by the claims that we've asserted in our Complaint.

23      So in order to prepare for trial, for example, the

24  defendants and we have been negotiating about what additional

25  information you need on the warranty claims, what additional

1    information you need on the CPL claims, and so on and so forth,

2    and that's largely agreed to at this point.  There's some

3    remaining disputes.

4            So what I'm trying to convey is that in order for the

5    parties to get ready for this impending TPP trial -- and we

6    disagree about the characterization of it.  And we know the

7    language that Judge Kugler has used to refer to that trial, but

8    he's also confirmed that it's going to be after class

9    certification.

10           And so if the Court is inclined to certify a TPP

11   class and if, for example, MSP is a member of that class by the

12   Court's certified definition, and if they are appointed as a

13   class representative, the implications of trying their rights

14   by due process are significant and implicated.

15           And so what I'm really saying is, you may not want to

16   call it a class trial, but it's going to be a class trial, I

17   think, by definition, if the definition includes MSP.  I don't

18   know if a court can force a class member in a certified class

19   to opt out.  I mean, that would be the effect of calling it a

20   single trial.

21           Now, I don't think we need to answer that academic

22   question today.  I think the narrow question is:  Given the

23   enormity of the preparation work, we've got experts to line up

24   and so on and so forth, when is the right time to address these

25   not insignificant questions about conflicts of law?

1        We think it's certainly after the Court weighs in on

2   what's the class definition, which of the claims in our

3   operative Complaint are being certified, and therefore, we'll

4   have a better handle on what states are implicated.

5        To put the proverbial cart before the horse and have

6   briefing on this in a matter of two or three weeks we think is

7   premature.  It's not a matter of we don't think the questions

8   shouldn't be clarified by the Court.  We're just proposing that

9   we can put this off a bit, and there will still be ample time

10  because it's not implicating any discovery issues at this

11  point.  That's the more nuanced response from us.

12       JUDGE VANASKIE:  All right.  Very well.

13       Yes.  Yes, sir.

14       MR. OSTFELD:  Respectfully, Your Honor, this very

15  much implicates discovery issues.  And, for example, the three

16  discovery issues that we've identified for today that are ripe

17  for consideration are a perfect exemplar of this, where we are

18  having an active discussion over whether we are entitled to

19  data on what the government has paid to the MAO assignors as it

20  pertains to the damages.  That goes directly to the question of

21  the measure of damages and the formula for damages and the

22  methodology for calculating damages and whether plaintiffs'

23  theory of worthlessness is a recognized theory of damages.

24       JUDGE VANASKIE:  How does that affect the choice of

25  law analysis, sir?

1          MR. OSTFELD:  It doesn't affect the choice of law

2     analysis, but the choice of law analysis affects the damages.

3          JUDGE VANASKIE:  Okay.

4          MR. OSTFELD:  If we are looking at two states' laws,

5     then we're looking at two measures of damages or, rather, two

6     measures for five claims in each state.  And that can be very

7     different from the measures of damages in 22 states.  The same

8     is true of liability.  You know, typically when you're getting

9     ready for trial, you start by looking at what that state's jury

10    instructions say on each claim so that you can understand how

11    that state frames the elements of each claim so that you can

12    know what your proofs are going to be at trial or, in our case,

13    what our defenses are going to be at trial.  And you can

14    calculate and formulate your discovery, your discovery strategy

15    and your trial strategy to those state-specific elements.

16         And notwithstanding, you know, respectfully, I

17    understand plaintiffs believe that they can group their claims

18    in the way they have.  We have disagreed with them on that.  We

19    have contended that there are very material differences between

20    the laws of each state.  But regardless, even if you accepted

21    the premise that there is similarity between the laws, the

22    expressions of those laws are different and how that affects

23    discovery and how that affects trial strategy matters.

24         And if we're talking about a trial that is going to

25    be approximately a year from now, possibly less, possibly more,

1    but we're talking about a 2023 trial, that's an eye blink away,

2    Your Honor.  For a trial of this scale and this scope, we need

3    an opportunity to take discovery and take depositions that will

4    be customized to the claims that are going to be heard.

5              Now, I also respectfully disagree with the position

6    on class certification.  I understand that plaintiffs view it

7    as an academic view.  I actually don't.  I think, you know, the

8    Judge made clear this is going to be a single-plaintiff trial.

9    It is going to be a non-class trial.  The fact that they have

10   chosen to designate a class representative as their

11   representative, as their plaintiff for that trial, was their

12   choice.  And they did so knowing the implication that for the

13   claims being asserted by that representative in this case, they

14   were going to be asserted by a single plaintiff, not by a class

15   representative.

16             MSPRC still has another assignor, ConnectiCare, and

17   they can be a class representative as to that assignor's

18   claims.  But for these claims, the ones that they have selected

19   and the plaintiff they have selected for this trial, knowing it

20   was going to be a non-class trial, they've made their choice.

21   The Judge can't force them to opt out.  They've made the

22   decision when they said select the plaintiff for a non-class

23   trial, and they selected the plaintiff they did.  They had some

24   nonrepresentative plaintiffs they could have picked.  They

25   didn't.  They chose MSPRC, and that was their choice.

1    But as a consequence of that, regardless of how class

2  certification is resolved, this case is going to be a non-class

3  trial with a single plaintiff.

4    JUDGE VANASKIE:  All right.  Thank you.

5    MR. HONIK:  Your Honor, if I may just very briefly.

6    JUDGE VANASKIE:  Yes.  Certainly, Mr. Honik.

7    MR. HONIK:  There are a couple of astonishing things

8  here.

9    No one in the courtroom gets to decide how Rule 23

10  operates but Judge Kugler.  And the rule is pretty clear that

11  if you have a court certifying a class under that rule, there

12  is a notice program and an opportunity to opt out.  That's the

13  only way you end up with a class member who's a member of the

14  defined class who's outside of the purview of that class and

15  its treatment by the Court.  That can't be done by fiat.  It

16  can't be done through negotiation or otherwise.  MSP has due

17  process rights.  They have filed a lawsuit transferred to this

18  Court properly from the Southern District of Florida saying we

19  wish to proceed on a class basis.  We wish the Court to certify

20  a class and to appoint us as a class representative.  That

21  imbues them with certain due process rights.

22    Now, we don't have to decide what the contours of

23  that looks like, but to be sure, Judge Kugler has made it clear

24  that we are going to avoid one-way intervention as a problem

25  and we're going to have a ruling by the Court on Rule 23.

1           I'm merely pointing out that if the definition of

2    that class includes MSP, as we've asked, and if that class

3    definition and our motion is granted, in whole or in part, and

4    MSP is appointed a class rep, that imbues them with certain

5    rights.  And the rule dictates how those rights are to be heard

6    in court.  And it's really not what Mr. Ostfeld said that

7    implies that we've somehow opted them out by choice or

8    negotiation.  We've done nothing of the sort.  We have filed a

9    formal motion asking that MSP's rights as an absent class

10   member be converted to a certified class, which imparts certain

11   rights to them which are -- I don't want to say inalienable,

12   but go through the process of Rule 23.  That's point number

13   one.

14           Point number two, I think Your Honor asked the

15   salient question of Mr. Ostfeld:  How does getting some light

16   shed on the conflict of laws issue really affect discovery?

17   And the example that Mr. Ostfeld gave which is, well, we've got

18   all these states implicated and we need to know how that's

19   going to affect damages.  Are we to understand that this

20   argument that a Medicare offset is going to be applied by them

21   in some but not all states?  That's not correct.  They intend

22   to apply it to every single state.

23           There is no meaningful impact to getting ready for

24   the one trial we know we're going to have, now that we've

25   identified MSP and their two assignors, from whom substantial

1    discovery has already been obtained.  And the remaining

2    discovery, frankly, narrow as it is, is not going to be changed

3    or altered in any meaningful way by the conflict of laws

4    analysis.

5            And so, respectfully, given the enormity of what we

6    need to do in these coming weeks, certainly we've got an

7    October 31st deadline to produce expert reports and the like

8    just in this trial, we simply think since the case is many

9    months away from being tried, that the more propitious time to

10   address any remaining or lingering conflict of laws issues is,

11   frankly, after the Court's ruled on class cert.  That more than

12   anything is the prism through which the Court will be able to

13   answer some of these conflict questions.  Because as I said

14   earlier, we'll know the class definition.  We'll know what

15   claims have been certified, some of them, all of them.  And so

16   it is putting the cart before the proverbial horse.  And there

17   will be ample time to address the questions which have no

18   meaningful impact today.

19           JUDGE VANASKIE:  Just one more question, and then

20   we'll move on.  And the question I have is:  How will the class

21   certification decision affect the briefing on the conflict of

22   laws question?

23           MR. HONIK:  Because, Your Honor, we will know the

24   very definition of the class, that is to say, will it

25   encompass, you know, the TPP definition as we provided it, but

 1    more importantly, which claims will survive the Rule 23 motion.

 2    Are we going to get a certified class in implied warranty and

 3    express warranty, one or both?  Knowing that is going to tell

 4    us which state's laws are going to be implicated.

 5            Knowing if unjust enrichment is part of the certified

 6    class or not part of the certified class, that more than

 7    anything will impact what the trial will look like.  Because we

 8    are the masters of our own complaint, and, yes, we've asserted

 9    a variety of different legal theories on which we hope to

10    prevail for the TPPs.  But until the Court tells us under Rule

11    23 which of those claims are certified to proceed, that's the

12    macro, sort of, prism through which the secondary question of

13    what laws then apply should apply.

14            JUDGE VANASKIE:  Mr. Ostfeld.

15            MR. OSTFELD:  Respectfully, Your Honor, the answer to

16    your question is none.  The class certification ruling will

17    have no impact on the conflicts of law questions in this case.

18    And the reason for that is the one that Judge Kugler has made

19    clear at the last several Case Management Conferences where he

20    has repeatedly said this trial will be a single-class trial --

21    a single-plaintiff trial, excuse me, a single-plaintiff trial

22    and it will not be a class trial.  Judge Kugler has said that

23    repeatedly.  He was asked at the last Case Management

24    Conference, well, what if you certify a class, can we then

25    proceed with this case as a class case?  And he said this will

1    be a single-plaintiff trial.

2              He said if you want to bring a motion where you are

3    asking me to consider a narrow sub-sub-subclass, I will look at

4    what you file, but this will be a single-plaintiff trial.

5              So Judge Kugler is clearly contemplating class

6    certification is not material to this case.  For this case,

7    class certification does not impact what's going to happen with

8    choice of law in this case.

9              I'm also a little surprised to hear unjust enrichment

10   be raised because my understanding is plaintiffs are only

11   asserting their unjust enrichment claims against the downstream

12   defendants, the wholesalers and the retailers who are not

13   parties to this trial.  This trial is going to be as to three

14   sets of defendants.  They're all manufacturers: ZHP, Teva, and

15   Torrent.

16             So, again, Your Honor, no relevance of class

17   certification to conflicts of law.

18             The only other point I would make is there will

19   probably never be a good time to address this because we're all

20   going to be busy working on trials, this trial, the future

21   trials that are going to be scheduled.  This is an MDL.  It's

22   going to be busy.  It's going to be active.  There will be

23   cadences.  If October 27th is not a particularly good date

24   because of their deadline, I understand that.  November 12th,

25   some date in mid-November, fine.  But let's resolve this.

1    Let's get this issue set aside.  Let's get it resolved so that

2    we can then know what we're going to be trying in this case

3    next year.

4              JUDGE VANASKIE:  All right.  Thank you.

5              Well, if it was up to me, I'd set a briefing

6    schedule.  I'm not sure it's up to me.  But I'd be sensitive to

7    the time demands that you all face.  And that's a refrain I've

8    heard before in this matter.  So I think you'll be discussing

9    this with Judge Kugler.  It's well presented.  I think you both

10   have great points to make.  My view is, let's get it teed up

11   because it has to be decided, and therefore, set a briefing

12   schedule, and I'll confer with Judge Kugler.  If he wants me to

13   issue an order, I think you can expect what it would be.  I'd

14   give more time than October 27th.  But we'd get a schedule in

15   place, at least so that the matter is before the Court when the

16   Court wants and is able to decide it.

17             All right.  Let's talk about the discovery issues --

18   something maybe I can decide.  And as I understand it, there

19   are -- are there three specific disputes dealing with TPP

20   discovery?

21             Mr. Ostfeld, are you addressing this issue?

22             MR. OSTFELD:  Yes, Your Honor.  If you haven't grown

23   tired of my voice yet, I'll be addressing this one as well.

24             So I think the best way to put this is there have

25   been a number of agreements reached regarding case-specific

```
 1    discovery going forward.  I think there are three issues that
 2    are ripe for consideration, because I think it's fair to say as
 3    to those three issues, which are request, I think, 2, 3, and 4,
 4    the parties are at an impasse, and then there is ongoing
 5    discussion as to several other issues, including timing of
 6    production and a few other disagreements that emerged in the
 7    plaintiffs' most recent letter.  So I think there's three
 8    issues that are all related that are ripe for the Court's
 9    consideration today.
10            JUDGE VANASKIE:  And the first issue deals with the
11    subsidy, reimbursement, and rebate data.
12            MR. OSTFELD:  Correct, Your Honor.
13            JUDGE VANASKIE:  All right.  Are these amenable to
14    being discussed at once or do you have to discuss each one
15    separately?
16            MR. OSTFELD:  I think they're amenable to being
17    discussed at once, and then with me at one point breaking them
18    down to explain why each is relevant to the same core set of
19    issues.
20            JUDGE VANASKIE:  Okay.  Why don't you go ahead to
21    proceed to discuss them, because you're the one seeking the
22    discovery.  This is the unusual scenario for me.
23            MR. OSTFELD:  All right.  Thank you, Your Honor.
24            So I think the three issues that we are at an impasse
25    all pertain to the subject of damages.  And I've alluded to
```

1    that issue already, which is the plaintiff here is an assignee,

2    MSPRC.  It is asserting claims on behalf of assignors.  In this

3    instance, plaintiffs are proposing two assignors: EmblemHealth

4    and SummaCare.  And each of those assignors is a Medicare

5    Advantage Organization, also known as an "MAO."  And what makes

6    an MAO a little bit different from your typical third-party

7    payor is that they are administering independent plans with

8    Medicare benefits.

9            So as a consequence of that, the Center for Medicare

10   and Medicaid Services, CMS, pays a considerable amount of the

11   services and products that are paid for or reimbursed under

12   these plans through a combination of subsidies and rebates and

13   other payments.  So we are contending -- and I think the law is

14   pretty clear on this -- that when you have a third-party payor

15   in this situation where it is a Medicare Advantage Organization

16   with a large government subsidy, that the damages have to,

17   essentially, back out the government portion of the payment.

18   They have to come out of damages.  They have to be either

19   calculated out or set off.  But however it's done, the

20   government portion, what the government is paying for the

21   services or products at issue cannot be part of the damages.

22           And I think the Southern District of New York

23   addressed that issue most squarely and very directly in the

24   recent case, in the *In Re Namenda* case, where they said

25   basically these government payments must be used to reduce

1    damages.  And the Court said it's not even a close question.

2            JUDGE VANASKIE:  Right.

3            MR. OSTFELD:  And that's a third-party payor claim.

4    It was an antitrust claim.  But it's a third-party payor claim.

5    And the Court was trying to deal with the measure of damages

6    for prescription drugs that had been paid by the third-party

7    payor.  And it was a very similar issue to what is likely to

8    come up here where the defense was contending that plaintiff's

9    expert had failed to appropriately back out and set off the

10   government subsidies and government payments.  And the

11   plaintiffs were contending you can't itemize them that way.

12   You can't split them up between products and services that way.

13   You can't determine what part of the government's payments go

14   to this particular prescription drug.

15            And what the Court said there -- and this was in the

16   context of a motion in limine -- the Court said that's a fact

17   question for the jury.  The experts are going to disagree.  As

18   long as both experts applied a reliable methodology, their

19   testimony comes in and the jury decides.

20            JUDGE VANASKIE:  Right.

21            MR. OSTFELD:  So what we're seeking here, Your Honor,

22   are the materials that we need in order to assess their damages

23   theory and to assess whether plaintiffs are appropriately

24   accounting for and setting off the government portion of the

25   payments, reimbursements, rebates and so forth in calculating

 1  their damages.  We need that to test their expert's theories.

 2  Our experts are going to need it to test their theories.  And

 3  that's essentially what we're asking for.  And each of the

 4  three requests goes to that.

 5         The first request is for subsidy, reimbursement, and

 6  rebate data.  That's almost self-explanatory.

 7         JUDGE VANASKIE:  Yes.

 8         MR. OSTFELD:  That's the direct data that deals with

 9  government payments to the third-party payor, and includes

10  prescription drug event data.  It's referred to as a "PDE" by

11  CMS.  And that data is directly relevant to figuring out what

12  needs to be set off against plaintiff's damages.

13         We are also seeking the bids that these entities made

14  to the Center for Medicare and Medicaid Services because those

15  bids contain a lot of detail on the entity's anticipated and

16  actual Medicare Part D prescription drug spend.  So it provides

17  a lot of information that we can use to determine what the

18  actual out-of-pocket payments were by these entities versus

19  what they're getting from the government on these prescription

20  drug payments.

21         And finally, Your Honor, we're seeking internal

22  reporting, the internal documentation and internal reporting

23  from each of the entities, which is also likely to contain a

24  lot of information on these entities' actual outlays versus

25  their government receipts, their government returns.  The

```
 1    internal reporting is very likely to provide a lot more

 2    information than anything we could get publicly or anything we

 3    can get on a point of sale basis regarding what these entities

 4    have spent versus what the government has spent on these

 5    prescription drugs.

 6            The plaintiffs had essentially raised three

 7    objections.  They've raised relevance, which I think I've just

 8    addressed.  They've argued that the data they have are only

 9    aggregate data.

10            Now, respectfully, I'm not sure, I think that needs

11    to be tested because at least some of the data we're requesting

12    should be available on an itemized basis.  I think prescription

13    drug event data is usually available on an itemized basis

14    either from CMS or in the submissions that were made to CMS.

15            But even if it is only aggregate data that are

16    available, that just enforces the point that this is an issue

17    the experts are going to have to take a look at.  That means

18    the math is hard.  It means you have to have somebody who knows

19    this area, look at the data, look at what is coming in from the

20    government, what is going out from the third-party payor, and

21    figure out a methodology to allocate what is coming in from the

22    government to the particular prescription drug purchases that

23    are at issue here.  It doesn't make the information

24    undiscoverable.  It just means it needs to be discovered so the

25    experts can look at it and we can develop our theory based on
```

1    it.

2          The other point that I think the plaintiffs have made

3    is that their information is proprietary.  And I feel like

4    that's a bit of a red herring because we have a confidentiality

5    order in this case, we have a protective order.  And each

6    defendant in this room has produced thousands of pages of

7    documents that are proprietary pursuant to the terms of that

8    confidentiality order.  The plaintiffs are obviously held to

9    the same standards of discovery that we are, and they are

10   entitled to the same protections of the protective order that

11   we have.  But claiming that their information is proprietary is

12   not a basis to withhold discovery.  So on that basis, Your

13   Honor, we would respectfully submit all three requests should

14   be granted and they should produce those data.

15          JUDGE VANASKIE:  Thank you.

16          Are you addressing this, Mr. Honik?

17          MR. HONIK:  In small part, Your Honor.

18          JUDGE VANASKIE:  Okay.

19          MR. HONIK:  I'm going to call upon one of the MSP

20   attorneys who have been -- who has been the principal

21   negotiator.

22          But if I may, let me just make a couple of

23   observations.  Mr. Ostfeld may have adequately laid out what

24   they're seeking, but he can't speak to what our objections are

25   and what the basis is.  There are some factual predicates that

1  are complete misstatements of the reality of what the CMS data

2  is, and you'll hear more about that in a minute.

3       But the so-called expert involvement that defendants

4  are speaking to, which is the principal basis for their desire

5  to have this material, they had an opportunity to have their

6  experts comment on it.  And there were extensive depositions

7  taken concerning their reports, and all of the defense experts

8  agreed that this information, if available at all, is on an

9  aggregate basis.  And none of them even deigned to apply a

10 formula.

11      So to kind of reverse engineer it and now claim that

12 you want information that your own experts have conceded under

13 oath that they didn't use, that really isn't applicable and, to

14 the extent available, is only available on an aggregate

15 basis -- and you'll hear more about what that means, what it

16 means to have some enormous number about what is essentially an

17 insurance and risk assessment and has no relationship to

18 valsartan specifically in a moment.  But to now claim that you

19 need that when your experts have conceded -- and we're happy to

20 brief this if need be, to point out where they indicated that

21 they can't make use of anything even if it were to be produced.

22      So with that, Your Honor, I would like to call up

23 Mr. Zalman Kass from Rivero Mestre, whose firm represents MSP

24 and has been the principal architect of negotiating these

25 discovery issues.

1          JUDGE VANASKIE:  All right.  Very well.

2          MR. KASS:  Good afternoon, Your Honor.

3          JUDGE VANASKIE:  Good afternoon.

4          MR. KASS:  Your Honor, I'd like to address the

5    different statements by Mr. Ostfeld.  And first I wanted to

6    start off with, he had started off saying how MSP's assignors

7    are MAOs and that there's some sort of difference between an

8    MAO with respect to the payments they received as opposed to

9    any other typical TPP.  Your Honor, we respectfully disagree

10   with that statement.

11         With respect to the funds that the MAO receives from

12   the government, essentially those are premium payments.  Just

13   like any regular private insurance plan, you have the members

14   that pay their premium for coverage, the same thing happens

15   with Medicare.

16         What happens is CMS determines an amount per patient,

17   per enrollee that they're going to pay, a risk premium.  It's

18   per capita.  And they say we will pay you X dollars to cover

19   this person and then take on the risk of assuming the

20   prescription medications.

21         Now, it could be a particular enrollee is going to

22   need valsartan.  It could be they're not going to need

23   valsartan.  It's really just they're paying for them to assume

24   the risk.  It's not tied to any particular drug.

25         So to be clear, Your Honor, with respect to those

```
 1  premium payments, it is no different than any other private
 2  insurer.  And there is no direct payment for valsartan.  So I
 3  want to lay that out first.
 4       Then, Your Honor, there was a lot of talk about what
 5  the experts -- about how the experts are going to have these
 6  plans to somehow figure out some sort of payment.  But there
 7  was nothing concrete explaining how they believed they're going
 8  to use that data, how they're going to tie it in.
 9       Your Honor, as I just stated, it is a premium
10  payment, no different than any other private plan.  And without
11  anything more detailed about how they're planning to use it, it
12  really seems like this is not proportional to the needs of the
13  case.  And, Your Honor, frankly, it's not relevant.
14       JUDGE VANASKIE:  How burdensome would it be to
15  produce this data?
16       MR. KASS:  Well, Your Honor, there's three different
17  tiers of data.  And I could -- it may be easier if I address
18  each one in particular.  But I do want to mention that these
19  valsartan drugs cover many different particular plans for one
20  MAO.  So, for example, one MAO is Emblem.  Emblem may have many
21  different plans.  For example, you may have the Gold Plan, the
22  Star Plan.  And every plan is going to have their own
23  projections, their own data.  So it encompasses a lot of data.
24  And a lot of that data is also proprietary towards them.  And
25  what I mean by that is when they submit this information to
```

 1   this CMS, they're explaining what they believe their costs are

 2   going to be.  It's going to have their actuary tables.  It

 3   essentially is their entire business wrapped up in a bid.  So

 4   this is pretty sensitive information, and it encompasses a lot

 5   of information.  And we really don't understand how they

 6   propose to use this information to even affect the damages.

 7         Now --

 8         JUDGE VANASKIE:  But don't they have to get the

 9   information before we can get to that question?

10         MR. KASS:  Your Honor, as an initial matter --

11         JUDGE VANASKIE:  I'll just --

12         MR. KASS:  Sure.

13         JUDGE VANASKIE:  I'll say intuitively it seems to me

14   that the data should be discoverable and then whether it can be

15   used or not comes after.

16         MR. KASS:  Your Honor, I understand.  I do want to --

17   I guess our concern is that in order for information to be

18   producible in discovery, right, it has to be potentially

19   relevant and proportionate to the needs of the case.  They have

20   yet to demonstrate how this could be potentially relevant and

21   let alone proportionate to the needs of the case.

22         JUDGE VANASKIE:  Well, I asked you what the burden

23   was.  I'm sorry to interrupt.  I asked you what the burden was,

24   and I didn't hear, you know, how expensive will it be to

25   produce the data.  If it's not expensive, well, that certainly

1    weighs in the proportionality analysis.

2         MR. KASS:  Your Honor, that's a very fair question.

3    I don't have a dollar amount, but I can tell you that it is

4    going to involve many, many documents, probably thousands of

5    documents.  But also there is a very critical issue that right

6    now we're starting the Open Enrollment for the medical -- for

7    the MAO plans.  So right now -- and so it's also costly in the

8    time of getting the documents, getting the attention and having

9    people focus on it to even get the documents.  So it's a

10   resource cost, and it's also just a cost in actually putting

11   them together, reviewing them and producing them and doing any

12   redactions as necessary.

13        JUDGE VANASKIE:  All right.

14        MR. KASS:  Your Honor, then I do want to address the

15   case that opposing counsel cited to, the one from the

16   Southern --

17        JUDGE VANASKIE:  The *Namenda* case?

18        MR. KASS:  Yes.

19        So, first of all, Your Honor, as an initial matter,

20   that was a different procedural posture.  That was a motion in

21   limine.  Now we're talking about the production of documents.

22   But I think the bigger issue is, in that case, the Court was

23   analyzing a specific state statute which had the exact words

24   that it had to be actual damages, right.  So that analysis was

25   limited to specific state statute.

|     |                                                                      |
|-----|----------------------------------------------------------------------|
| 1   | And additionally, Your Honor, I would say we                          |
| 2   | respectfully disagree with the conclusion of the Court, even if       |
| 3   | it were analogous -- which we believe it isn't -- Your Honor,         |
| 4   | the Court didn't do any real analysis.  It didn't cite to any         |
| 5   | case law.                                                             |
| 6   | JUDGE VANASKIE:  Said it wasn't even a close                          |
| 7   | question.  So usually you don't do much analysis when it's not        |
| 8   | close.                                                                |
| 9   | MR. KASS:  I understand, Your Honor.  But at the end                  |
| 10  | of the day, there is no additional -- there's no case law.            |
| 11  | It's simply the Court decided.  And respectfully, Your Honor,         |
| 12  | if this matter is going to be decided, at a minimum, we would         |
| 13  | like the chance to properly brief it and cite some case law so        |
| 14  | it would be a complete record in front of the Court rather than       |
| 15  | simply relying on a case in another circuit and another               |
| 16  | district which simply does not have any additional information        |
| 17  | backing it up.                                                        |
| 18  | JUDGE VANASKIE:  You know, I thought this was going                   |
| 19  | to be a fairly straightforward issue, and perhaps it's more           |
| 20  | nuanced than I realized.                                              |
| 21  | And, Mr. Ostfeld, maybe I should ask for some                         |
| 22  | briefing on this question.  I know you've given me the *Namenda*      |
| 23  | case.  There might be some other cases in your letter, but --         |
| 24  | MR. HONIK:  We would welcome an opportunity to brief                  |
| 25  | it, Your Honor.  We also think the threshold question that I          |

```
 1   brought up and Mr. Kass mentioned, which is, what are they

 2   proposing to do with this?  Because we are in the unusual

 3   position having obtained class experts and we've done extensive

 4   briefing, we've asked the defense experts -- the very experts

 5   they propose to give this data to -- what would you do with it?

 6   Because all they would be getting is aggregate data.  And the

 7   answer emphatically was:  We have no idea.

 8            And the truth is, there's nothing to be gained by

 9   this production.  That's where our relevancy argument goes.

10   And we'd like to be able to brief that issue to the Court,

11   produce cases which we think more aptly address the question.

12   And so with the Court's permission, we would like to address it

13   at some length.

14            THE COURT:  Mr. Ostfeld.

15            MR. OSTFELD:  Your Honor, we're, of course, happy to

16   brief it if Your Honor wants it briefed.  I actually don't

17   think this is a close issue or a complicated issue.  I think

18   it's a straightforward issue.

19            In the context of the previous round of discovery, we

20   were dealing with a very discrete issue in the context of class

21   certification, which is whether plaintiff's worthlessness

22   theory of damages stands up, whether it is a methodologically

23   sound method of damages.  We were not dealing with a particular

24   set of claims or a particular case that was being prepared for

25   trial, and we were not dealing with a damages calculation for
```

1    that trial, which is what we will be dealing with here, nor

2    were we dealing with experts in Medicare Advantage

3    Organizations, which is what we will be dealing with here,

4    who's an expert who deals with Medicare Advantage

5    Organizations, who deals with the economics of Medicare

6    Advantage Organizations, like the expert that was used in the

7    *Namenda* case, who will be able to speak to and critique

8    plaintiff's theory of damages based on their failure to, if

9    they do not -- and it sounds like they're not planning to --

10   offset or back out the government payments from their damages

11   calculation, that is clearly relevant.

12           There's no way -- it's not -- as the Court said in

13   *Namenda*, it's not even a close question.  This is very clearly

14   a relevance issue.  This is very clearly a relevant set of

15   data.

16           I also didn't hear anything about this being overly

17   burdensome.  These are standardized data.  They're standardized

18   reports within CMS.  And in the context of this case where

19   millions of pages of documents have been produced by the

20   defendants, where thousands of pages of confidential and

21   proprietary documents have been produced by the defendants, it

22   is not asking too much for the plaintiffs to produce their

23   share -- for the plaintiffs to produce the government data that

24   the *Namenda* case squarely holds under New York law, which will

25   be the law for EmblemHealth, are relevant here.

1     The issue of actual damages, there is a statute that

2   said actual damages in *Namenda*.  Here we're dealing with fraud

3   claims.  In New York, the standard for fraud is actual damages.

4   It's the out-of-pocket rule.  It's the out-of-pocket measure of

5   damages.  Depending on what other state's laws are at issue,

6   there will be other claims and other states that are using an

7   out-of-pocket rule.

8     So it is very clear that the issue of whether or not

9   these government subsidies, these government payments can be

10  factored into part of damages or must be backed out of damages

11  is going to be a triable issue in this case and that our

12  experts must be given the opportunity to get the data and to

13  conduct their analysis.

14    And if we're going to brief this, Your Honor, my only

15  concern is we have these carefully negotiated CMO 29 deadlines.

16  The defendants are going to have our report due in early

17  December.  The plaintiffs' report is due on October 29th.  If

18  there is going to be clarity on whether these government

19  subsidies and government payments are going to be at issue and

20  whether we're going to get discovery on them, our experts are

21  going to need a fair opportunity to assess those data after we

22  get them.

23    And if Your Honor needs a month to review -- if we

24  need a month to brief this, Your Honor needs time to review it,

25  and then say you rule in our favor, in whole or in part, and we

1  get the data, you know, a day before our expert reports are

2  due, we're not going to be able to do our job.  We're not going

3  to be able to make fulsome disclosure.  So this could also

4  impact the CMO 29 deadline.

5       JUDGE VANASKIE:  Well, I would not defer the matter

6  for a month, that's for sure.  We have another conference

7  coming up, I think, in about two weeks.

8       MR. HONIK:  Your Honor, I believe the damages reports

9  are excepted from CMO 29.  These are liability --

10      MR. SLATER:  It's listed in the Order.  It says it

11  right in the Order that the damages experts like... and it

12  lists them.  That's not part of CMO 29.

13      JUDGE VANASKIE:  Okay.  I have that on my computer.

14  I could pull it up.

15      MR. OSTFELD:  I thought, Your Honor, one of the

16  agreements we had reached, because we had sought information on

17  the damages calculation as part of our case-specific discovery,

18  was that we were going to get those case-specific damages

19  reports from plaintiffs along with their other case-specific

20  expert reports at the end of October.

21      If that is not the understanding, we probably need to

22  confer on that.  But that was my understanding of what we had

23  reached agreement on.

24      MR. HONIK:  Your Honor, providing a seven- or ten-day

25  period for us to brief this very important issue.  You know,

```
 1   after all, MSP is entitled, just as the defendants have been,

 2   to withhold certain highly proprietary information that has

 3   dubious relevance.  And we'd like to be able to argue that and

 4   create a record.  This is not an empty exercise.  And we think

 5   it's appropriate to allow us to protect one of our client's

 6   rights.

 7            MR. RIVERO:  Your Honor, if I may.  Andres Rivero,

 8   I'm Mr. Kass's partner.  I just want to say, Judge, the case is

 9   not -- the case referred to is not all as clear as stated by

10   counsel.  And, in fact, Judge, that case turns on

11   interpretation of an Illinois statute.

12            So I think the statement on the record has made this

13   appear way too clear.  And I believe the briefing is absolutely

14   required.

15            JUDGE VANASKIE:  All right.  I will direct that

16   briefs be filed on the issue of the question of whether

17   discovery should be allowed with respect to those three items:

18   the subsidy, reimbursement, and rebate data; the CMS bids; and

19   what's been labeled as "internal reporting."  I would like the

20   briefs one week from today.

21            MR. HONIK:  Thank you, Your Honor.

22            JUDGE VANASKIE:  And we will take up the matter --

23   simultaneous briefing -- and I will take up the matter and

24   expect a ruling during our next conference.

25            MR. HONIK:  Thank you, Your Honor.
```

```
 1            JUDGE VANASKIE:  All right.  Anything else on that
 2   issue?
 3            MR. HONIK:  Not from us, Your Honor.
 4            JUDGE VANASKIE:  Okay.  Thank you.
 5            MR. OSTFELD:  No, Your Honor.  And I think all other
 6   discovery issues are still subject to meet-and-confers.  So I
 7   don't think we have anything else for Your Honor ripe today for
 8   discovery.
 9            JUDGE VANASKIE:  All right.
10            On the motions to seal, have you all agreed on a
11   briefing schedule for that?
12            MS. HILTON:  Good afternoon, Your Honor.  Layne
13   Hilton on behalf of plaintiffs.
14            JUDGE VANASKIE:  Good afternoon.
15            MS. HILTON:  We have not.  As the totality and the
16   scope of the documents at issue, we haven't arrived at that
17   number yet.  And I think -- I don't see my colleague who I have
18   been negotiating with on these issues here.  But, you know, I
19   think defendants' preference was to understand the total number
20   of documents at issue that we would be disputing and want to
21   bring forward to Your Honor before setting the actual schedule,
22   because I understand they have to potentially get affidavits
23   from their clients regarding the proprietary nature of those
24   documents.
25            JUDGE VANASKIE:  So we're just in --
```

1      MS. HILTON:  I think our intention -- you know,

2  plaintiffs' intention is to have a discovery schedule or a

3  briefing schedule by the next discovery conference.

4      JUDGE VANASKIE:  Okay.  All right.  That's fine.

5  We'll handle it on that basis.

6      MS. HILTON:  Yes.

7      MS. LOCKARD:  And, Your Honor, it's Victoria Lockard

8  for the defendants on this issue.  We're in agreement with

9  that.  I think the parties are making good progress already,

10  and there have been numerous meet-and-confers.  So I think we

11  can comply with that goal to get a briefing schedule agreed on

12  by the next conference.

13      JUDGE VANASKIE:  Okay.  Great.  Thanks, Ms. Lockard.

14      And core discovery on Irbesartan and losartan, that's

15  moving forward?  Where are we at on that?

16      MR. SLATER:  I can say from the plaintiffs'

17  perspective, our understanding is the discovery is being

18  produced.  We've had some discussions with ZHP, none of which

19  need to be brought to the Court's attention at this point.

20  We're talking about certain issues.  There's no dispute for the

21  Court.

22      JUDGE VANASKIE:  All right.  Anything else then for

23  today?

24      MR. HONIK:  I think that covers it, Judge.

25      JUDGE VANASKIE:  And we'll get Judge Kugler, all

1    right?  Okay.  Thanks.

2             It may be a few minutes, but hang tight.

3             (Pause.)

4             (Recess was taken.)

5             (Judge Kugler entered the courtroom.)

6             THE COURTROOM DEPUTY:  All rise.

7             JUDGE KUGLER:  Hello, everybody.  Have a seat.  Thank

8    you.

9             Well, I hope everybody's happy to be back in court.

10   I don't know what you're doing in your home jurisdictions, but

11   I hope some of you are getting back to courthouses and all

12   that.  We're pretty much open here in New Jersey, but, you

13   know, that can change in a second with this pandemic that's

14   going on.

15            But I personally prefer to be in a courtroom, and

16   we'll try to do some more of these things in the courtroom in

17   the future.

18            Anyway, so why don't we start at the end with the

19   dismissals and get those done.  Who's going to speak for the

20   defendants?

21            MR. HARKINS:  Afternoon, Your Honor.  Steve Harkins

22   with Greenberg Traurig, for the Teva defendants and joint

23   defense counsel.

24            JUDGE KUGLER:  Mr. Harkins, how are you?

25            So we had -- this is paragraph 5 of your letter.

1    And you had Shemes, Tolley, Branch, Vindigni, Dais,

2    Stiles, and Ross, we're going to take off.  We'll dismiss those

3    orders to show cause.

4    You asked us to carry the Greene, Smith and Thompson

5    matters to the next listing, leaving the Elganam,

6    E-L-G-A-N-A-M, and Richard Williams matters.  Any update on

7    those?

8    MR. HARKINS:  No update on those two, Your Honor.  At

9    this time defendants would move for dismissal of both those

10   actions.

11   JUDGE KUGLER:  Anybody here to speak on behalf of

12   those two plaintiffs?

13   MR. PAREKH:  Your Honor, this is Behram Parekh.  We

14   have not received any plaintiffs' counsels saying that they

15   wish to speak.

16   JUDGE KUGLER:  All right.  They'll be dismissed.

17   Next are Benita King, Estate of Charles Bernhardt,

18   B-E-R-N-H-A-R-D-T, Carrie Collins, Jacqueline Wallaert,

19   W-A-L-L-A-E-R-T.  Any update on those?

20   MR. HARKINS:  One update, Your Honor.  The Jacqueline

21   Wallaert case has had a PFS filed, so we can withdraw the

22   request there.  We would request orders to show cause

23   returnable at the next Case Management Conference in the other

24   three matters.

25   JUDGE KUGLER:  Okay.  We'll shift the King, Estate of

```
 1    Charles Bernhardt, and Carrie Collins to the order to show

 2    cause returnable at the next conference.

 3            And then we have ten more at the end of your letter,

 4    16 to 17, any updates on those?

 5            MR. HARKINS:  No updates on those, Your Honor.  We

 6    would just ask that they be carried forward to the next Case

 7    Management Conference.

 8            JUDGE KUGLER:  We'll list the Estate of Rita Chikhi,

 9    C-H-I-K-H-I, Yvonne Baker, Carl Mirabile, M-I-R-A-B-I-L-E,

10    Gracie Ellis, Rose McCarty, Bobby Yount, Robert Parker, Howard

11    Engel, E-N-G-E-L, Genita, G-E-N-I-T-A, Johnson, and Anthony

12    Long.  Unless there's any objection, we'll relist those next

13    time.

14            MR. PAREKH:  No objection, Your Honor.

15            MR. HARKINS:  Thank you, Your Honor.

16            JUDGE KUGLER:  We'll relist them.

17            Thank you, Mr. Harkins.

18            All right.  Apparently you have an agreement as to

19    who your plaintiff is going to be, correct?

20            MR. HONIK:  That's correct, Your Honor.

21            JUDGE KUGLER:  And who your defendants are going to

22    be?

23            MR. HONIK:  That's correct as well.

24            JUDGE KUGLER:  All right.  But there's still an issue

25    apparently about choice of law, apparently.  We don't have an
```

1   agreement on that; is that right?

2           MR. OSTFELD:  We do not have agreement on that, Your

3   Honor.

4           JUDGE KUGLER:  And the plaintiff thinks there should

5   be how many states?  Sixteen for EmblemHealth and six for

6   SummaCare?

7           MR. HONIK:  That's how many states they have

8   beneficiaries for whom they made reimbursements, Your Honor.

9           JUDGE KUGLER:  Okay.  Have you made any preliminary

10  analysis to see if there's a difference in the laws of all

11  those states such that we need to make a decision?

12          MR. HONIK:  We have.  And I would say the short

13  answer to that is that there isn't.  And there isn't a material

14  difference in any preparation that would be required on either

15  party's side to get the case ready, whether it's one or 16.

16          JUDGE KUGLER:  So if there's no difference in the

17  state's laws, then why can't we agree on what states we should

18  use?  I don't get it.  I don't know what the --

19          MR. HONIK:  Well, Judge, I think we can in the sense

20  that we've grouped them in our cert motion, and we've done that

21  because of the similarities in them.

22          JUDGE KUGLER:  Right.

23          MR. HONIK:  So I think that we can and should arrive

24  at some agreement about what state's laws will apply as to each

25  of the claims being asserted.

1    JUDGE KUGLER:  I think the defendants are asserting

2    it should be the home states of the two, right?

3        MR. OSTFELD:  Yes, Your Honor.  Consistent with

4    Motion to Dismiss Opinion 4, we think Your Honor got it right

5    there.  It should be the home states of these two entities that

6    govern.

7        JUDGE KUGLER:  Well, how is that any different from

8    what the plaintiffs are saying?  I mean, have you talked to

9    them and said, hey, why don't we just use these two states?  I

10   don't understand.

11       MR. OSTFELD:  We have, Your Honor.  We presented our

12   position that it should just be these two states.  And the

13   plaintiffs are of a view that there should be a grouping in the

14   same format of class certification, which is a little baffling,

15   Your Honor.  Because I think Your Honor has made clear, this is

16   not going to be a class trial, so we're not dealing with

17   groupings.  We're not dealing with multi states.  We're dealing

18   with the claims of one plaintiff on behalf of two assignors.

19   And those two assignors are a New York and an Ohio entity.  So

20   from our point of view, this should be a New York and an Ohio

21   state law case.

22       JUDGE KUGLER:  Is there any law different than New

23   York and Ohio that we should be applying in this case?

24       MR. HONIK:  There is, Your Honor.  And, look, to be

25   clear, this is a nuanced area.  We both agree.  I think that

1    Mr. Ostfeld in his letter to the Court referred to the

2    complexity here.  So in some respects, it is a simple matter

3    and others it's not.  And let me say what I mean about that.

4            Your Honor correctly decided conflict of laws in the

5    context of the initial pleadings and the motion to dismiss.  It

6    is absolutely meaningful that MSP, a Florida citizen, filed

7    suit in the Southern District of Florida, and their choice of

8    law or conflict of laws rules apply.  However, the inquiry

9    doesn't end there.

10           So in that respect, we agree with Mr. Ostfeld and the

11   defendants that at some point Your Honor may need to clarify a

12   second level of analysis.  And the reason for that is, what are

13   the claims that we're bringing and when did the harm occur?

14   The harm occurred in every instance at the point of sale where

15   there's a patient standing in a pharmacy and the pharmacist

16   inputs Emblem.  And only because Emblem relied on a warrant

17   that this is valsartan, as did the patient, then there was

18   money exchanged.  So that impacts the warranty analysis.  And

19   that occurs not in every instance in New York, because Emblem

20   paid for somebody in New Jersey, in Connecticut, and in 14

21   other states.

22           JUDGE KUGLER:  But the question is, is the law of New

23   York so much different than these other states that we need to

24   even worry about it?

25           MR. HONIK:  So we would say, no, we're not worried

1   about it.  We think the laws are sufficiently similar.  So as a

2   practical matter, I think Your Honor is correct.  But I think

3   the reason we're here, and the issue has come up, is

4   Mr. Ostfeld -- and I don't want to speak for him, you'll

5   correct me if I'm in any way wrong -- that something about

6   knowing from you, Your Honor, which state's laws apply is going

7   to impact their preparation for trial.  And we think that issue

8   is a nonstarter.  We don't think there's a material difference

9   at all.  We're hard-pressed.  We've been talking about it for a

10   couple of weeks amongst ourselves.  We can't discern a

11   difference.

12          They're going to assert the same damages defenses.

13   They're going to assert the same liability defenses, whether

14   it's one state or 16 states.  And the example that we presented

15   to Judge Vanaskie about damages is particularly perplexing,

16   because they want to have an offset, certain subsidies they

17   claim should be offset.  Well, they're not going to argue that

18   only applies in one state.  They're going to say it applies in

19   all states.  So we don't think there's a material difference.

20          But to whatever extent there may be, we would say

21   let's brief the issue a little closer to trial, and that may

22   affect things potentially in terms of jury instructions and so

23   forth.  But for purposes of today, we don't see any reason to

24   really engage in it.

25          JUDGE KUGLER:  Why can't we just go forward assuming

```
 1   it is going to be New York and Ohio and as we get closer to
 2   trial, if you come up with something different, we'll talk
 3   about it then?
 4           MR. HONIK:  That's fine for us.
 5           JUDGE KUGLER:  Okay.
 6           MR. OSTFELD:  Your Honor, I think we would like
 7   clarity on it.
 8           JUDGE KUGLER:  You just had it.  New York and Ohio,
 9   unless they convince me otherwise.
10           MR. OSTFELD:  Your Honor, I certainly understand that
11   point.  I am concerned about the "convincing otherwise"
12   language because I think it does make a difference from a
13   discovery standpoint.  It does make a difference from a trial
14   preparation standpoint.
15           I think if they're going to try to convince Your
16   Honor otherwise, if they're going to try to convince Your Honor
17   that MTD Opinion 4 is wrong as to these plaintiffs and contrary
18   to the *In Re Actiq* case and the *In Re K-Dur* cases, which
19   specifically deal with the same principles in the TPP context,
20   it's incumbent on them to do it now so that we can prepare for
21   trial.
22           I don't have a problem with them trying to persuade
23   Your Honor that you were mistaken in MTD Opinion 4.  I don't
24   think you were.  I think you did specifically apply the choice
25   of law rules that are applicable in Florida, which is a
```

1    combination of lex loci delicti and Second Restatement,

2    depending on which claim you're dealing with.  Your Honor found

3    it was the home state.  Here we're dealing with the same

4    principle, the home states of Ohio and New York.  That's also

5    where they made the reimbursements.  It's where they made the

6    payments.  We think it's fairly clear that that should be the

7    applicable law here.

8            If they're going to try to persuade Your Honor

9    otherwise, let's not postpone that.  Let's not kick it down the

10   road.  Let's decide it now so that we know what we're going to

11   be trying and so we know how to get ready for trial.

12           JUDGE KUGLER:  I can't stop them a couple of months

13   from now saying, oh, Judge, you're wrong and here's why, just

14   like I can't stop your side.  We're going with New York and

15   Ohio, unless I change my mind and they convince me otherwise,

16   okay?

17           MR. OSTFELD:  Thank you, Your Honor.

18           JUDGE KUGLER:  So you won.

19           (Laughter.)

20           JUDGE KUGLER:  I was just curious about one thing

21   that was in the letter, though.  You talk about the measure --

22   because it's going to affect the measure of damages to be

23   evaluated by damages experts.  I'm curious what you're talking

24   about.  What damages experts?

25           This is a book case, really.  They say they want all

1    the money back.  They paid X number of dollars.  They want it

2    all back.

3              MR. OSTFELD:  Your Honor, I respectfully disagree

4    with this being a book case.  We just spent a fair amount of

5    time in front of Judge Vanaskie arguing about the relatively

6    complex role of government payments and how that plays in to

7    plaintiff's damages theory, because these are Medicare

8    Advantage Organizations.  And we have a case --

9              JUDGE KUGLER:  I get all that.  But what is a damages

10   expert going to tell us?  The numbers are what the numbers are.

11   They paid X number of dollars.  It's what it is.

12             MR. OSTFELD:  Your Honor, the dollars that they are

13   going to try to rely upon are the point of sale dollars.

14   They're going to say this is what was paid at the pharmacy for

15   these products.  The problem is, that's not what the

16   third-party payor entities paid because they get government

17   subsidies, they get government rebates, they get government

18   reimbursements.

19             JUDGE KUGLER:  But we know what those numbers are.

20             MR. OSTFELD:  No, Your Honor, we don't.  They haven't

21   produced the documents for that.

22             JUDGE KUGLER:  We will know what those numbers are.

23             MR. OSTFELD:  Well, our view is we will.  Their

24   position and the position they've taken is these are too

25   complex.  We only have aggregate data.  You can't know what

1   those numbers are, and that's why experts are going to need to

2   get involved in this.

3        JUDGE KUGLER:  But I don't understand what an expert

4   would do.  What kind of an expert are you talking about?  I'm

5   just curious.  I'm not saying yes or no.  I'm just curious as

6   to what kind of an expert would do this and what's the bottom

7   line for that expert?

8        MR. OSTFELD:  Sure.  So in our instance, Your Honor,

9   what we are contemplating is -- I think plaintiffs are going to

10   come in with a damages model very similar to what Your Honor

11   has just described.  I think they're going to say this is a

12   book exercise, here's what was paid at the point of sale.  I

13   don't want to put words in their mouths.  And I'm sure they

14   will correct me if I'm getting it wrong.  They'll say this is

15   what was paid at the point of sale, you aggregate that, you

16   take out the copay and the coinsurance, and what you're left

17   with is what the TPP paid.  That's what their expert, Rena

18   Conti, basically described.

19       Our position is going to be that is an overpayment

20   because it is not taking into account the reimbursements, the

21   subsidies, the payments that these entities got from the

22   government which they are not entitled to recover as part of

23   their damages.  That was the issue that came up in the *In Re*

24   *Namenda* case in front of the Southern District of New York,

25   which I think is directly on point on this.

1   And it basically -- it essentially says that it's not
2   even a close question; that you can't be paid as a private
3   entity for what the government is paying towards these drugs.
4   So what an expert is going to do is going to critique their
5   damages model by saying that they failed to back out, to set
6   off, to take out the government share of what was paid for
7   these drugs and they're going to indicate how you go about
8   doing that, because they're contending you can't do that.
9   They're trying to equate the government's payments to insurance
10  premiums, which they're not.

11          It's a very complicated regulatory structure.  We
12  need an expert who understands Medicare Advantage Organizations
13  and can explain to the jury why they're seeking an overpayment,
14  why they're seeking over-reimbursement, why they're seeking
15  money that they never paid that they got from the government
16  through the CMS, through the Medicare program.

17          JUDGE KUGLER:  Okay.  I understand.  Thank you.

18          Okay.  Any other issues that you want to raise today
19  with me?

20          MR. HONIK:  Your Honor, I don't know if you've heard
21  enough on this issue, and I don't want --

22          (Laughter.)

23          MR. HONIK:  Well --

24          JUDGE KUGLER:  No.  Look, I'm not making any
25  decisions on this issue.  I was just curious as to where this

1    is going.  If you don't agree with him, there will be

2    opportunities to brief this issue, okay?

3            MR. HONIK:  Yeah.  Suffice it to say, we don't agree.

4            JUDGE KUGLER:  Of course not.

5            MR. HONIK:  And the factual predicate beyond just the

6    legal reliance on this isolated antitrust case applying an

7    Illinois statute has no bearing on this.  And there's more to

8    be said.  So I'm satisfied that if we'll have an opportunity to

9    more adequately address the points made by Mr. Ostfeld at some

10   other point, that's fine.

11           JUDGE KUGLER:  Okay.  What else do the plaintiffs

12   have?

13           MR. HONIK:  I don't -- Your Honor, I don't think

14   there are any other issues.

15           MR. SLATER:  I don't think we have any other issues,

16   Your Honor.

17           JUDGE KUGLER:  How about the defense side?

18           Everybody wants to get a plane home, right?

19           MR. TRISCHLER:  I think so, Your Honor.

20           JUDGE KUGLER:  That's fine.  I get it.

21           MR. TRISCHLER:  Although it was nice to be here.  I

22   don't think there's any other issues that we need to raise at

23   this point in time.

24           MR. HONIK:  Well, I can't imagine a hearing without

25   recognizing that the Phillies are back in the playoffs.

```
 1              JUDGE KUGLER:  Yeah.  Did you catch the ball, number
 2   62?
 3              (Laughter.)
 4              MR. SLATER:  No.
 5              JUDGE KUGLER:  $2 million.
 6              (Discussion was held off the record in open court.)
 7              JUDGE KUGLER:  The next meeting before me will have
 8   to be by phone because I will not be in Camden for a while.
 9              So we normally do it the fourth Wednesday.  I am not
10   going to be able to do it the 26th of October.  I can do a
11   phone conference on the 27th of October, which is Thursday.
12              Judge Vanaskie, how is your availability that day?
13              JUDGE VANASKIE:  That would be fine for me.
14              JUDGE KUGLER:  Can we do it the 27th?  Or we can kick
15   it into the following week also as a phone conference if you
16   want.  Whatever you think you're available to do.
17              MR. SLATER:  Your Honor, you said that you're looking
18   at which day?
19              JUDGE KUGLER:  Thursday, the 27th of October.
20              MR. SLATER:  Oh, October.  Got it.  Okay.
21              JUDGE KUGLER:  We kind of got a little off our
22   schedule.
23              MR. SLATER:  That's great.
24              MS. LOCKARD:  At your convenience, Judge, whenever
25   works for you.
```

```
 1            JUDGE KUGLER:  27th it will be.  You'll schedule
 2    something in the morning.
 3            JUDGE VANASKIE:  Yes.
 4            JUDGE KUGLER:  And I'll follow you as we're doing it,
 5    okay?
 6            JUDGE VANASKIE:  That's fine.
 7            JUDGE KUGLER:  Okay.  Everybody, thank you much.
 8    Have a safe trip home.
 9            THE COURTROOM DEPUTY:  All rise.
10            (Proceedings concluded at 2:30 p.m.)
11            - - - - - - - - - - - - - - - - - - - - -
              FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE
12            - - - - - - - - - - - - - - - - - - - - -
13        I certify that the foregoing is a correct transcript
14    from the record of proceedings in the above-entitled matter.
15
16
17    /S/John J. Kurz, RDR-RMR-CRR-CRC          October 9, 2022
18    Court Reporter/Transcriber
19
20
21
22
23
24
25
```

**JUDGE KUGLER: [42]** 44/7 44/24 45/11 45/16 45/25 46/8 46/16 46/21 46/24 47/4 47/9 47/16 47/22 48/1 48/7 48/22 49/22 50/25 51/5 51/8 52/12 52/18 52/20 53/9 53/19 53/22 54/3 55/17 55/24 56/4 56/11 56/17 56/20 57/1 57/5 57/7 57/14 57/19 57/21 58/1 58/4 58/7

**JUDGE VANASKIE: [60]**

**MR. HARKINS: [5]** 44/21 45/8 45/20 46/5 46/15

**MR. HONIK: [33]** 10/2 10/6 10/9 10/19 10/23 14/9 19/5 19/7 21/23 30/17 30/19 36/24 40/8 40/24 41/21 41/25 42/3 43/24 46/20 46/23 47/7 47/12 47/19 47/23 48/24 49/25 51/4 55/20 55/23 56/3 56/5 56/13 56/24

**MR. KASS: [10]** 32/2 32/4 33/16 34/10 34/12 34/16 35/2 35/14 35/18 36/9

**MR. OSTFELD: [28]** 11/15 11/22 12/2 16/14 17/1 17/4 22/15 24/22 25/12 25/16 25/23 27/3 27/21 28/8 37/15 40/15 42/5 47/2 48/3 48/11 51/6 51/10 52/17 53/3 53/12 53/20 53/23 54/8

**MR. PAREKH: [2]** 45/13 46/14

**MR. RIVERO: [1]** 41/7

**MR. SLATER: [12]** 6/3 7/8 7/21 9/17 9/25 40/10 43/16 56/15 57/4 57/17 57/20 57/23

**MR. TRISCHLER: [6]** 6/18 8/4 9/3 9/19 56/19 56/21

**MS. HILTON: [4]** 42/12 42/15 43/1 43/6

**MS. LOCKARD: [3]** 5/8 43/7 57/24

**THE COURT: [1]** 37/14

**THE COURTROOM DEPUTY: [2]** 44/6 58/9

**$**

**$2 [1]** 57/5

**/**

**/S/John [1]** 58/17

**0**

**02109 [1]** 3/7
**04112 [1]** 2/6
**07068 [1]** 1/15

**07102 [1]** 3/4
**08101 [1]** 1/8
**08540 [2]** 3/10 3/20

**1**

**100 [1]** 3/3
**1000 [1]** 2/13
**1001 [1]** 3/13
**10022 [1]** 3/24
**103 [1]** 1/14
**1100 [1]** 1/7
**12th [1]** 23/24
**14 [1]** 49/20
**1440 [1]** 2/16
**1515 [1]** 1/17
**15219 [1]** 2/20
**15th [1]** 3/3
**16 [5]** 10/25 12/18 46/4 47/15 50/14
**1638 [1]** 2/3
**17 [1]** 46/4
**190 [1]** 3/16
**19087 [1]** 4/11
**19102 [1]** 1/18
**1:01 [2]** 1/9 5/3
**1:19-md-02875-RBK [1]** 1/4

**2**

**20004 [1]** 3/13
**20005 [1]** 2/16
**2022 [2]** 1/8 58/17
**2023 [2]** 14/12 18/1
**2029 [1]** 4/7
**21 [1]** 3/10
**22 [5]** 13/2 13/6 13/22 14/21 17/7
**2200 [1]** 4/15
**23 [6]** 11/5 19/9 19/25 20/12 22/1 22/11
**2500 [1]** 2/24
**2525 [1]** 2/13
**26 [1]** 14/20
**26th of [1]** 57/10
**270 [1]** 4/11
**27th [5]** 3/7 13/24 14/6 24/14 57/14
**27th it [1]** 58/1
**27th of [2]** 57/11 57/19
**2800 [1]** 4/3
**29 [11]** 6/1 6/1 6/17 6/22 7/22 9/6 9/13 39/15 40/4 40/9 40/12
**29th [1]** 39/17
**2:30 p.m [1]** 58/10

**3**

**300 [1]** 4/7
**30305 [1]** 2/24
**31st [3]** 7/10 7/24 21/7
**33134 [1]** 2/13
**3333 [1]** 2/24
**337 [1]** 2/9
**3600 [1]** 4/15
**38th [1]** 2/20

**4**

**45202 [1]** 4/3
**4th [1]** 1/7

**5**

**502 [1]** 3/19
**53 [1]** 3/7
**550 [1]** 4/11
**576-7094 [1]** 1/24

**6**

**600 [2]** 3/16 4/3
**601 [1]** 3/23
**62 [1]** 57/2
**63105 [1]** 3/16

**7**

**701 [1]** 1/21
**70130 [2]** 1/21 2/9
**7094 [1]** 1/24
**75201 [1]** 4/16

**8**

**856 [1]** 1/24

**9**

**90 [4]** 7/13 7/19 7/20 7/23
**900 [1]** 2/9
**90067 [1]** 4/9
**90277 [1]** 2/3
**9546 [1]** 2/6

**A**

**able [9]** 6/13 21/12 24/16 37/10 38/7 40/2 40/3 41/3 57/10
**above [1]** 58/14
**above-entitled [1]** 58/14
**absent [1]** 20/9
**absolutely [2]** 41/13 49/6
**academic [2]** 15/21 18/7
**acceptable [1]** 8/3
**accepted [1]** 17/20
**account [1]** 54/20
**accounting [1]** 27/24
**acknowledged [1]** 12/4
**Actavis [2]** 2/25 2/25
**action [2]** 1/3 13/14
**actions [1]** 45/10
**Actiq [1]** 51/18
**active [2]** 16/18 23/22
**actual [8]** 28/16 28/18 28/24 35/24 39/1 39/2 39/3 42/21
**actually [4]** 11/22 18/7 35/10 37/16
**actuary [1]** 34/2
**ADAM [2]** 1/13 10/3
**additional [5]** 14/17 14/24 14/25 36/10 36/16
**additionally [1]** 36/1
**address [12]** 7/15 9/21 15/24 21/10 21/17 23/19 32/4 33/17 35/14 37/11 37/12 56/9
**addressed [4]** 10/3 11/24 26/23 29/8

**addressing [6]** 11/13 11/16 14/12 24/21 24/23 30/16
**adequately [2]** 30/23 56/9
**administering [1]** 26/7
**administration [1]** 14/1
**Advantage [7]** 26/5 26/15 38/2 38/4 38/6 53/8 55/12
**affect [8]** 16/24 17/1 20/16 20/19 21/21 34/6 50/22 52/22
**affects [3]** 17/2 17/22 17/23
**affidavits [1]** 42/22
**after [8]** 6/25 7/23 15/8 16/1 21/11 34/15 39/21 41/1
**afternoon [6]** 11/15 32/2 32/3 42/12 42/14 44/21
**again [3]** 6/5 7/16 23/16
**against [2]** 23/11 28/12
**agenda [3]** 5/20 5/24 9/21
**aggregate [7]** 29/9 29/15 31/9 31/14 37/6 53/25 54/15
**agree [10]** 6/20 6/22 7/8 7/9 11/18 47/17 48/25 49/10 56/1 56/3
**agreed [6]** 7/8 10/23 15/2 31/8 42/10 43/11
**agreement [7]** 10/9 40/23 43/8 46/18 47/1 47/2 47/24
**agreements [2]** 24/25 40/16
**ahead [1]** 25/20
**Aid [1]** 4/9
**aided [1]** 1/25
**ALBERO [1]** 4/10
**ALEXIA [1]** 3/22
**ALFANO [1]** 2/18
**all [54]** 5/10 5/11 5/15 7/9 8/2 9/20 12/3 12/3 12/6 12/6 13/17 16/12 19/4 20/18 20/21 21/15 23/14 23/19 24/4 24/7 24/17 25/8 25/13 25/23 25/25 30/13 31/7 31/8 32/1 35/13 35/19 37/6 41/1 41/9 41/15 42/1 42/5 42/9 42/10 43/4 43/22 43/25 44/6 44/11 45/16 46/18 46/24 47/10 50/9 50/19 52/25 53/2 53/9 58/9
**allocate [1]** 29/21
**allow [1]** 41/5
**allowed [1]** 41/17
**alluded [1]** 25/25
**almost [2]** 5/13 28/6
**alone [1]** 34/21
**along [1]** 40/19
**already [6]** 8/18 21/1 26/1 43/9
**also [19]** 4/21 11/5 12/20 13/8 15/8 18/5 23/9 26/5

**28/13 28/23 33/24 35/5 35/7 35/10 36/25 38/16 40/3 52/4 57/15
**altered [1]** 21/3
**Although [1]** 56/21
**am [2]** 51/11 57/9
**amenable [2]** 25/13 25/16
**AmerisourceBergen [1]** 4/4
**amongst [1]** 50/10
**amount [4]** 26/10 32/16 35/3 53/4
**ample [2]** 16/9 21/17
**analogous [1]** 36/3
**analysis [14]** 11/12 12/5 16/25 17/2 17/22 21/4 35/1 35/24 36/4 36/7 39/13 47/10 49/12 49/18
**analyzing [1]** 35/23
**ANDRES [2]** 2/11 41/7
**ANDREW [1]** 4/10
**Angeles [1]** 4/7
**another [4]** 18/16 36/15 36/15 40/6
**answer [5]** 15/21 21/13 22/15 37/7 47/13
**Anthony [1]** 46/11
**anticipated [1]** 28/15
**antitrust [2]** 27/4 56/6
**anxious [1]** 10/12
**any [30]** 8/14 14/16 16/10 21/3 21/10 32/9 32/13 32/24 33/1 33/10 35/11 36/4 36/4 36/16 45/6 45/14 45/19 46/4 46/12 47/9 47/14 48/7 48/22 50/5 50/23 55/18 55/24 56/14 56/15 56/22
**anybody [2]** 6/7 45/11
**anything [14]** 9/24 21/12 22/7 29/2 29/2 31/21 33/11 38/16 42/1 42/7 43/22
**Anyway [1]** 44/18
**apparently [3]** 46/18 46/25 46/25
**appear [1]** 41/13
**applicable [8]** 8/24 31/13 51/25 52/7
**applied [2]** 20/20 27/18
**applies [4]** 8/17 9/13 50/18 50/18
**apply [10]** 6/23 8/16 20/22 22/13 22/13 31/9 47/24 49/8 50/6 51/24
**applying [2]** 48/23 56/6
**appoint [1]** 19/20
**appointed [2]** 15/12 20/4
**approach [1]** 6/12
**appropriate [1]** 41/5
**appropriately [3]** 13/25 27/9 27/23
**approval [1]** 13/5
**approximately [1]** 17/25
**aptly [1]** 37/11
**architect [1]** 31/24
**are [129]**

**A**

area **[2]** 29/19 48/25
argue **[2]** 41/3 50/17
argued **[1]** 29/8
arguing **[1]** 53/5
argument **[2]** 20/20 37/9
arise **[1]** 11/9
ARPS **[1]** 2/15
arrive **[1]** 47/23
arrived **[1]** 42/16
aside **[1]** 24/1
ask **[2]** 36/21 46/6
asked **[7]** 20/2 20/14 22/23 34/22 34/23 37/4 45/4
asking **[4]** 20/9 23/3 28/3 38/22
assert **[2]** 50/12 50/13
asserted **[6]** 11/5 14/22 18/13 18/14 22/8 47/25
asserting **[4]** 13/21 23/11 26/2 48/1
assess **[3]** 27/22 27/23 39/21
assessment **[1]** 31/17
assignee **[1]** 26/1
assignor **[2]** 12/14 18/16
assignor's **[1]** 18/17
assignors **[11]** 10/24 12/13 13/20 16/19 20/25 26/2 26/3 26/4 32/6 48/18 48/19
assume **[1]** 32/23
assuming **[2]** 32/19 50/25
astonishing **[1]** 19/7
Atlanta **[1]** 2/24
attention **[2]** 35/8 43/19
attorneys **[1]** 30/20
Aurobindo **[1]** 3/21
Aurolife **[1]** 3/20
availability **[1]** 57/12
available **[7]** 29/12 29/13 29/16 31/8 31/14 31/14 57/16
Avenue **[4]** 2/16 3/13 3/23 4/15
AvKARE **[1]** 4/12
avoid **[1]** 19/24
away **[1]** 18/1 21/9

**B**

B-E-R-N-H-A-R-D-T **[1]** 45/18
back **[11]** 5/22 8/5 26/17 27/9 38/10 44/9 44/11 53/1 53/2 55/5 56/25
backed **[1]** 39/10
backing **[1]** 36/17
baffling **[1]** 48/14
Baker **[1]** 46/9
ball **[1]** 57/1
BARNES **[1]** 4/6
based **[2]** 29/25 38/8
basically **[2]** 26/25 54/18 55/1
basis **[12]** 7/12 19/19 29/3 29/12 29/13 30/12

Beach **[1]** 2/3
bearing **[1]** 56/7
BEASGAARD **[1]** 4/10
because **[35]** 7/11 11/22 12/22 13/1 13/5 14/13 16/10 21/13 21/23 22/7 23/10 23/19 23/24 24/11 25/2 25/21 28/14 29/11 30/4 37/2 37/6 40/16 42/22 47/21 48/15 49/16 49/19 50/16 51/12 52/22 53/7 53/16 54/20 55/8 57/8
becomes **[1]** 11/6
been **[19]** 5/6 5/12 6/1 14/17 14/24 21/1 21/15 24/25 27/6 30/20 30/20 31/24 38/19 38/21 41/1 41/19 42/18 43/10 50/9
before **[11]** 5/1 8/8 8/9 16/5 21/16 24/8 24/15 34/9 40/1 42/21 57/7
begin **[3]** 11/17 11/17 11/19
behalf **[4]** 26/2 42/13 45/11 48/18
BEHRAM **[2]** 2/2 45/13
being **[11]** 11/3 16/3 18/13 21/9 25/14 25/16 37/24 38/16 43/17 47/25 53/4
believe **[9]** 9/22 9/25 17/17 34/1 36/3 40/8 41/13
believed **[1]** 33/7
BELIVEAU **[1]** 2/5
belong **[1]** 5/21
beneficiaries **[2]** 12/23 47/8
beneficiary **[1]** 12/16
benefits **[1]** 26/8
Benita **[1]** 45/17
BERNE **[1]** 4/2
Bernhardt **[2]** 45/17 46/1
best **[1]** 24/24
better **[2]** 9/6 16/4
between **[4]** 17/19 17/21 27/12 32/7
beyond **[1]** 56/5
bid **[1]** 34/3
bids **[3]** 28/13 28/15 41/18
bigger **[1]** 35/22
bit **[5]** 6/18 6/21 16/9 26/6 30/4
BLACKWELL **[1]** 3/15
blink **[1]** 18/1
Bobby **[1]** 46/10
BOCKIUS **[1]** 3/18
bono **[2]** 6/14 6/15
book **[3]** 52/25 53/4 54/12
BOSICK **[1]** 2/18
Boston **[1]** 3/7
both **[5]** 22/3 24/9 27/18

45/9 48/25
bottom **[1]** 54/6
Boulevard **[1]** 2/13
BOX **[1]** 2/6
BRANCATO **[1]** 3/22
Branch **[1]** 45/1
breaking **[1]** 25/17
brief **[10]** 31/20 36/13 36/24 37/10 37/16 39/14 39/24 40/25 50/21 56/2
briefed **[1]** 37/16
briefing **[14]** 10/12 13/23 13/24 16/6 21/21 24/5 24/11 36/22 37/4 41/13 41/23 42/11 43/3 43/11
briefly **[1]** 19/5
briefs **[4]** 14/6 14/6 41/16 41/20
bring **[2]** 23/2 42/21
bringing **[1]** 49/13
BRISBOIS **[1]** 4/10
BRITTNEY **[1]** 3/23
brother **[1]** 6/11
brought **[1]** 11/3 37/1 43/19
Building **[1]** 1/7
burden **[2]** 34/22 34/23
burdensome **[2]** 33/14 38/17
business **[1]** 34/3
busy **[2]** 23/20 23/22

**C**

C-H-I-K-H-I **[1]** 46/9
cadences **[1]** 23/23
calculate **[1]** 17/14
calculated **[1]** 26/19
calculating **[2]** 16/22 27/25
calculation **[3]** 37/25 38/11 40/17
calendar **[1]** 7/16
California **[2]** 2/3 4/7
call **[3]** 15/16 30/19 31/22
called **[1]** 31/3
calling **[1]** 15/19
Camber **[1]** 4/12
Camden **[2]** 1/8 57/8
came **[3]** 12/5 12/18 54/23
Camp **[2]** 1/21 2/9
CAMPBELL **[1]** 3/12
can **[37]** 7/5 8/23 10/13 10/15 13/24 13/25 15/18 16/9 17/6 17/10 17/11 17/13 17/17 18/17 22/24 24/2 24/13 24/18 28/17 29/3 29/25 29/25 34/9 34/14 35/3 39/9 43/11 43/16 44/13 45/21 47/19 47/23 51/20 55/13 57/10 57/14 57/14
can't **[17]** 18/21 19/15 19/16 27/11 27/12 27/13 30/24 31/21 47/17 50/10 50/25 52/12 52/14 53/25 55/5 55/8 56/24

cannot **[1]** 26/21
capita **[1]** 32/18
Cardinal **[1]** 3/14
carefully **[1]** 39/15
Carl **[1]** 46/9
Carnegie **[1]** 3/19
CARONDELET **[1]** 3/16
Carrie **[2]** 45/18 46/1
carried **[1]** 46/6
carry **[1]** 45/4
cart **[3]** 8/8 16/5 21/16
case **[70]**
case-specific **[4]** 24/25 40/17 40/18 40/19
cases **[4]** 7/10 36/23 37/11 51/18
Casey **[1]** 6/10
Casey's **[2]** 6/10 6/11
catch **[1]** 57/1
cause **[3]** 45/3 45/22 46/2
Center **[5]** 2/6 3/3 3/19 26/9 28/14
Centre **[1]** 2/20
Century **[1]** 4/7
cert **[2]** 21/11 47/20
certain **[8]** 10/11 10/19 19/21 20/4 20/10 41/2 43/20 50/16
certainly **[6]** 9/4 16/1 19/6 21/6 34/25 51/10
CERTIFICATE **[1]** 58/11
certification **[12]** 13/9 13/9 15/9 18/6 19/2 21/21 22/16 23/6 23/7 23/17 37/21 48/14
certified **[11]** 11/7 13/17 15/12 15/18 16/3 20/10 21/15 22/2 22/5 22/6 22/11
certify **[4]** 15/10 19/19 22/24 58/13
certifying **[1]** 19/11
chance **[1]** 36/13
change **[2]** 44/13 52/15
changed **[1]** 21/2
characterization **[1]** 15/6
Charles **[2]** 45/17 46/1
Chikhi **[1]** 46/8
choice **[12]** 11/23 16/24 17/1 17/2 18/12 18/20 18/25 20/7 23/8 46/25 49/7 51/24
chose **[1]** 18/25
chosen **[1]** 18/10
CHRISTOPHER **[1]** 1/14
Cincinnati **[1]** 4/3
circuit **[1]** 36/15
cite **[2]** 36/4 36/13
cited **[2]** 12/20 35/15
citizen **[1]** 49/6
City **[1]** 2/6
CIVIL **[1]** 1/3
claim **[9]** 17/10 17/11 27/3 27/4 27/4 31/11 31/18 50/17 52/2

claiming **[1]** 30/11
claims **[41]** 2/14 6/24 8/13 8/16 8/22 10/24 11/3 11/3 11/4 11/4 11/5 11/9 11/24 12/3 12/6 12/10 13/2 13/3 13/20 14/2 14/22 14/25 15/1 16/2 17/6 17/17 18/4 18/13 18/18 18/18 21/15 22/1 22/11 23/11 26/2 37/24 39/3 39/6 47/25 48/18 49/13
clarification **[3]** 9/13 10/20 11/2
clarified **[1]** 16/8
clarify **[1]** 49/11
clarity **[2]** 39/18 51/7
class **[55]** 11/7 13/8 13/9 13/13 13/14 13/16 15/8 15/11 15/11 15/13 15/16 15/16 15/18 15/18 16/2 18/6 18/9 18/10 18/14 18/17 18/20 18/22 19/1 19/2 19/11 19/13 19/14 19/14 19/19 19/20 19/20 20/2 20/2 20/4 20/9 20/10 21/11 21/14 21/20 21/24 22/2 22/6 22/6 22/16 22/20 22/22 22/24 22/25 23/5 23/7 23/16 37/3 37/20 48/14 48/16
classes **[2]** 13/16 13/17
clear **[14]** 7/2 13/12 18/8 19/10 19/23 22/19 26/14 32/25 39/8 41/9 41/13 48/15 48/25 52/6
clearly **[5]** 13/15 23/5 38/11 38/13 38/14
CLEM **[1]** 2/18
Clerk **[1]** 4/23
client's **[1]** 41/5
clients **[1]** 42/23
close **[6]** 27/1 36/6 36/8 37/17 38/13 55/2
closer **[3]** 11/10 50/21 51/1
CMO **[10]** 6/1 6/17 6/22 7/22 9/6 9/13 39/15 40/4 40/9 40/12
CMS **[10]** 26/10 28/11 29/14 29/14 31/1 32/16 34/1 38/18 41/18 55/16
Coast **[1]** 2/3
Cohen **[1]** 1/7
coinsurance **[1]** 54/16
colleague **[1]** 42/17
Collins **[2]** 45/18 46/1
combination **[2]** 26/12 52/1
come **[5]** 26/18 27/8 50/3 51/2 54/10
comes **[2]** 27/19 34/15
coming **[5]** 10/18 21/6 29/19 29/21 40/7
Commencing **[1]** 1/9
comment **[1]** 31/6
common **[1]** 8/24

## C

**complaint [3]** 14/22 16/3 22/8
**complete [3]** 11/12 31/1 36/14
**complex [2]** 53/6 53/25
**complexity [2]** 12/4 49/2
**complicated [2]** 37/17 55/11
**comply [1]** 43/11
**computer [2]** 1/25 40/13
**computer-aided [1]** 1/25
**conceded [2]** 31/12 31/19
**concern [3]** 10/11 34/17 39/15
**concerned [2]** 12/25 51/11
**concerning [2]** 5/25 31/7
**concerns [2]** 9/14 9/23
**concluded [1]** 58/10
**conclusion [2]** 7/17 36/2
**concrete [1]** 33/7
**conduct [1]** 39/13
**confer [2]** 24/12 40/22
**conference [11]** 1/5 22/24 40/6 41/24 43/3 43/12 45/23 46/2 46/7 57/11 57/15
**Conferences [2]** 13/12 22/19
**conferring [1]** 9/11
**confers [2]** 42/6 43/10
**confidential [1]** 38/20
**confidentiality [2]** 30/4 30/8
**confirmed [1]** 15/8
**conflict [12]** 10/11 10/15 10/17 11/8 11/11 20/16 21/3 21/10 21/13 21/21 49/4 49/8
**conflicts [4]** 12/5 15/25 22/17 23/17
**confronting [1]** 12/8
**CONLEE [1]** 1/20
**ConnectiCare [1]** 18/16
**Connecticut [1]** 49/20
**connection [1]** 10/18
**consequence [2]** 19/1 26/9
**consider [2]** 10/7 23/3
**considerable [1]** 26/10
**consideration [3]** 16/17 25/2 25/9
**Consistent [1]** 48/3
**contain [2]** 28/15 28/23
**contemplated [2]** 13/6 14/12
**contemplating [2]** 23/5 54/9
**contended [1]** 17/19
**contending [4]** 26/13 27/8 27/11 55/8
**context [6]** 27/16 37/19 37/20 38/18 49/5 51/19
**Conti [1]** 54/18
**Continued [2]** 2/1 3/1 4/1
**contours [1]** 19/22

**contrary [1]** 51/17
**convenience [1]** 57/24
**convenient [1]** 14/20
**conversation [1]** 11/19
**converted [1]** 20/10
**convey [1]** 15/4
**convince [4]** 51/9 51/15 51/16 52/15
**convincing [1]** 51/11
**Cooper [1]** 1/7
**copay [1]** 54/16
**core [2]** 25/18 43/14
**Corp [1]** 4/16
**Corporation [1]** 4/8
**correct [9]** 20/21 25/12 46/19 46/20 46/23 50/2 50/5 54/14 58/13
**correctly [1]** 49/4
**cost [2]** 35/10 35/10
**costly [1]** 35/7
**costs [1]** 34/1
**could [9]** 13/4 18/24 29/2 32/21 32/22 33/17 34/20 40/3 40/14
**counsel [25]** 1/15 1/18 1/22 2/4 2/7 2/10 2/14 2/17 2/21 2/25 3/4 3/8 3/11 3/14 3/17 3/20 3/24 4/4 4/8 4/12 4/16 4/19 35/15 41/10 44/23
**counsels [1]** 45/14
**couple [5]** 10/3 19/7 30/22 50/10 52/12
**course [3]** 13/11 37/15 56/4
**court [40]** 1/1 1/23 5/1 5/22 7/11 7/15 10/4 10/20 11/10 15/10 15/18 16/1 16/8 19/11 19/15 19/18 19/19 19/25 20/6 21/12 22/10 24/15 24/16 27/1 27/5 27/15 27/16 35/22 36/2 36/4 36/11 36/14 37/10 38/12 43/21 44/9 49/1 57/6 58/11 58/18
**Court's [7]** 8/20 13/15 15/12 21/11 25/8 37/12 43/19
**courtesy [1]** 5/5
**Courthouse [1]** 1/7
**courthouses [1]** 44/11
**courtroom [6]** 4/22 5/22 19/9 44/5 44/15 44/16
**cover [2]** 32/18 33/19
**coverage [1]** 32/14
**covers [1]** 43/24
**CPL [2]** 11/4 15/1
**CRC [1]** 58/17
**create [1]** 41/4
**critical [1]** 35/5
**critique [2]** 38/7 55/4
**CROWELL [1]** 3/12
**CRR [1]** 58/17
**CULBERTSON [1]** 3/16
**curious [5]** 52/20 52/23 54/5 54/5 55/25
**customized [1]** 18/4

## CVS [1] 4/8

## D

**D'LESLI [1]** 4/14
**D.C [1]** 2/16
**Dais [1]** 45/1
**DALLAS [1]** 4/16
**damages [45]** 16/20 16/21 16/21 16/22 16/23 17/2 17/5 17/7 20/19 25/25 26/16 26/18 26/21 27/1 27/5 27/22 28/1 28/12 34/6 35/24 37/22 37/23 37/25 38/8 38/10 39/1 39/2 39/3 39/5 39/10 39/10 40/8 40/11 40/17 40/18 50/12 50/15 52/22 52/23 52/24 53/7 53/9 54/10 54/23 55/5 55/5
**DANIEL [1]** 3/12
**data [32]** 16/19 25/11 28/6 28/8 28/10 28/11 29/8 29/9 29/11 29/13 29/15 29/19 30/14 31/1 33/8 33/15 33/17 33/23 33/23 33/24 34/14 34/25 37/5 37/6 38/15 38/17 38/23 39/12 39/21 40/1 41/18 53/25
**date [6]** 7/15 7/16 7/23 7/24 23/23 23/25
**DAVID [1]** 1/20
**DAVIS [2]** 2/12 4/14
**day [5]** 36/10 40/1 40/24 57/12 57/18
**days [4]** 7/13 7/19 7/20 7/23
**DC [1]** 3/13
**de [1]** 2/13
**deadline [3]** 21/7 23/24 40/4
**deadlines [6]** 7/12 7/20 8/9 8/14 8/16 39/15
**deal [4]** 3/19 14/11 27/5 51/19
**dealing [14]** 12/11 24/19 37/20 37/23 37/25 38/1 38/2 38/3 39/2 48/16 48/17 48/17 52/2 52/3
**deals [4]** 25/10 28/8 38/4 38/5
**December [1]** 39/17
**decide [8]** 8/21 8/22 9/2 19/9 19/22 24/16 24/18 52/10
**decided [5]** 14/7 24/11 36/11 36/12 49/4
**decides [1]** 27/19
**decision [4]** 9/10 18/22 21/21 47/11
**decisions [1]** 55/25
**defendant [8]** 2/17 2/21 3/4 3/8 3/14 3/17 4/16 30/6
**defendants [26]** 2/25 3/11 3/20 3/24 4/4 4/8 4/12 6/23 9/15 10/10

10/12 14/24 23/12 23/14 31/3 38/20 38/21 39/16 41/1 43/8 44/20 44/22 45/9 46/21 48/1 49/11
**defendants' [1]** 42/19
**defense [8]** 6/9 11/14 11/16 27/8 31/7 37/4 44/23 56/17
**defenses [3]** 17/13 50/12 50/13
**defer [3]** 9/12 10/14 40/5
**deferred [2]** 10/13 10/16
**defined [1]** 19/14
**definition [10]** 11/7 15/12 15/17 15/17 16/2 20/1 20/3 21/14 21/24 21/25
**definitive [1]** 9/10
**deigned [1]** 31/9
**delicti [1]** 52/1
**delineate [1]** 11/8
**demands [1]** 24/7
**demonstrate [1]** 34/20
**depending [2]** 39/5 52/2
**depositions [2]** 18/3 31/6
**Deputy [1]** 4/22
**described [2]** 54/11 54/18
**designate [1]** 18/10
**desire [1]** 31/4
**detail [1]** 28/15
**detailed [1]** 33/11
**determine [2]** 27/13 28/17
**determines [1]** 32/16
**develop [1]** 29/25
**dictates [1]** 20/5
**did [7]** 9/5 18/12 18/23 49/13 49/17 51/24 57/1
**didn't [7]** 6/7 18/25 31/13 34/24 36/4 36/4 38/16
**difference [18]** 6/25 7/6 13/3 13/4 32/7 47/10 47/14 47/16 50/8 50/11 50/19 51/12 51/13
**differences [1]** 17/19
**different [16]** 13/22 17/7 17/22 22/9 26/6 32/5 33/1 33/10 33/16 33/19 33/21 35/20 48/7 48/22 49/23 51/2
**direct [3]** 28/8 33/2 41/15
**directly [4]** 16/20 26/23 28/11 54/25
**disagree [7]** 12/19 15/6 18/5 27/17 32/9 36/2 53/3
**disagreed [1]** 17/18
**disagreements [1]** 25/6
**discern [1]** 50/10
**disclosure [1]** 40/3
**discoverable [1]** 34/14
**discovered [1]** 29/24
**discovery [34]** 8/7 8/23 10/14 14/16 14/17 16/10 16/15 16/16 17/14 17/14 17/23 18/3 20/16 21/1 21/2 24/17 24/20 25/1 25/22 30/9 30/12 31/25 34/18 37/19 39/20 40/17

41/17 42/6 42/8 43/2 43/3 43/14 43/17 51/13
**discrete [1]** 37/20
**discuss [4]** 7/5 13/10 25/14 25/21
**discussed [2]** 25/14 25/17
**discussing [1]** 9/4 24/8
**discussion [5]** 7/3 9/7 16/18 25/5 57/6
**discussions [1]** 43/18
**dismiss [3]** 45/2 48/4 49/5
**dismissal [1]** 45/9
**dismissals [1]** 44/19
**dismissed [1]** 45/16
**dispute [1]** 43/20
**disputes [2]** 15/3 24/19
**disputing [1]** 42/20
**district [9]** 1/1 1/1 1/10 6/14 19/18 26/22 36/16 49/7 54/24
**do [27]** 6/15 8/16 8/24 21/6 25/14 33/18 34/16 35/14 36/4 36/7 37/2 37/5 38/9 40/2 44/16 47/2 51/20 54/4 54/6 55/4 55/8 56/11 57/9 57/10 57/10 57/14 57/16
**documentation [1]** 28/22
**documents [12]** 30/7 35/4 35/5 35/8 35/9 35/21 38/19 38/21 42/16 42/20 42/24 53/21
**does [6]** 16/24 20/15 23/7 36/16 51/12 51/13
**doesn't [3]** 17/1 29/23 49/9
**doing [6]** 6/14 14/10 35/11 44/10 55/8 58/4
**dollar [1]** 35/3
**dollars [5]** 32/18 53/1 53/11 53/12 53/13
**done [7]** 19/15 19/16 20/8 26/19 37/3 44/19 47/20
**down [3]** 8/9 25/18 52/9
**downstream [1]** 23/11
**driven [1]** 14/21
**drug [7]** 27/14 28/10 28/16 28/20 29/13 29/22 32/24
**drugs [6]** 3/11 27/6 29/5 33/19 55/3 55/7
**dubious [1]** 41/3
**due [8]** 7/10 13/24 15/14 19/16 19/21 39/16 39/17 40/2
**Dur [1]** 51/18
**during [1]** 41/24

## E

**E-N-G-E-L [1]** 46/11
**each [12]** 17/6 17/10 17/11 17/20 25/14 25/18 26/4 28/3 28/23 30/5 33/18 47/24
**earlier [1]** 21/14
**early [1]** 39/16
**easier [1]** 33/17

**E**

East [2]  4/7 4/11
economics [1]  38/5
effect [1]  15/19
effort [1]  5/11
Eisenhower [1]  1/14
either [3]  26/18 29/14 47/14
elements [2]  17/11 17/15
Elganam [1]  45/5
ELLIS [2]  3/22 46/10
else [6]  5/22 9/24 42/1 42/7 43/22 56/11
Emblem [7]  10/25 12/18 33/20 33/20 49/16 49/16 49/19
EmblemHealth [4]  12/12 26/3 38/25 47/5
emerged [1]  25/6
emphatically [1]  37/7
empty [1]  41/4
encompass [1]  21/25
encompasses [2]  33/23 34/4
end [6]  19/13 36/9 40/20 44/18 46/3 49/9
enforces [1]  29/16
engage [1]  50/24
Engel [1]  46/11
engineer [1]  31/11
enormity [2]  15/23 21/5
enormous [2]  13/3 31/16
enough [1]  55/21
enrichment [3]  22/5 23/9 23/11
enrollee [2]  32/17 32/21
Enrollment [1]  35/6
entered [1]  44/5
entire [1]  34/3
entirely [1]  13/9
entities [7]  28/13 28/18 28/23 29/3 48/5 53/16 54/21
entities' [1]  28/24
entitled [5]  16/18 30/10 41/1 54/22 58/14
entity [2]  48/19 55/3
entity's [1]  28/15
equate [1]  55/9
ERIN [1]  3/6
ESQUIRE [33]  1/13 1/14 1/17 1/20 1/20 2/2 2/5 2/8 2/11 2/12 2/12 2/15 2/18 2/19 2/19 2/22 2/23 2/23 3/2 3/6 3/9 3/12 3/15 3/18 3/19 3/22 3/23 4/2 4/6 4/10 4/14 4/18 4/23
essentially [9]  7/21 12/4 26/17 28/3 29/6 31/16 32/12 34/3 55/1
Estate [3]  45/17 45/25 46/8
evaluated [1]  52/23
even [12]  17/20 27/1 29/15 31/9 31/21 34/6 35/9 36/2 36/6 38/13 49/24 55/2

event [2]  28/10 29/13
every [4]  20/22 33/22 49/14 49/19
everybody [4]  6/6 44/7 56/18 58/7
everybody's [1]  44/9
everyone [1]  14/2
exact [1]  35/23
example [7]  14/23 15/11 16/15 20/17 33/20 33/21 50/14
except [1]  6/7
excepted [1]  40/9
exchanged [1]  49/18
excuse [2]  10/2 22/21
exemplar [1]  16/17
exercise [2]  41/4 54/12
expect [2]  24/13 41/24
expensive [5]  34/24 34/25
expert [17]  7/23 9/9 21/7 27/9 31/3 38/4 38/6 40/1 40/20 53/10 54/3 54/4 54/6 54/7 54/17 55/4 55/12
expert's [1]  28/1
experts [22]  15/23 27/17 27/18 28/2 29/17 29/25 31/6 31/7 31/12 31/19 33/5 33/5 37/3 37/4 37/4 38/2 39/12 39/20 40/11 52/23 52/24 54/1
explain [2]  25/18 55/13
explaining [2]  33/7 34/1
explanatory [1]  28/6
express [2]  3/17 22/3
expressions [1]  17/22
extensive [2]  31/6 37/3
extent [2]  31/14 50/20
eye [1]  18/1

**F**

face [1]  24/7
fact [5]  14/19 14/21 18/9 27/16 41/10
factored [1]  39/10
factual [2]  30/25 56/5
failed [2]  27/9 55/5
failure [1]  38/8
fair [4]  25/2 35/2 39/21 53/4
fairly [2]  36/19 52/6
FALANGA [1]  3/2
fantastic [1]  6/12
favor [1]  39/25
Federal [2]  1/23 58/11
feedback [2]  5/17 5/18
feel [1]  30/3
feeling [2]  5/14 7/2
fencing [4]  6/1 6/3 6/4 6/21
few [2]  25/6 44/2
fiat [1]  19/15
figure [2]  29/21 33/6
figuring [1]  28/11
file [1]  23/4
filed [5]  19/17 20/8 41/16 45/21 49/6

finally [2]  8/11 28/21
fine [8]  14/10 23/25 43/4 51/4 56/10 56/20 57/13 58/6
firm [1]  31/23
first [16]  5/24 6/23 6/24 6/24 8/6 8/7 8/10 8/12 8/12 9/14 10/18 25/10 28/5 32/5 33/3 35/19
five [1]  17/6
FLAHERTY [1]  2/5
FLOM [2]  2/15
Floor [3]  2/20 3/3 3/7
Florida [5]  2/13 19/18 49/6 49/7 51/25
focus [1]  35/9
follow [1]  58/4
following [1]  57/15
follows [1]  5/3
foot [1]  6/7
force [2]  15/18 18/21
foregoing [1]  58/13
formal [1]  20/9
format [1]  48/14
formula [2]  16/21 31/10
formulate [1]  17/14
forth [5]  8/13 15/1 15/24 27/25 50/23
forward [6]  7/12 25/1 42/21 43/15 46/6 50/25
found [1]  52/2
fourth [1]  57/9
frames [1]  17/11
FRANK [1]  2/19
frankly [3]  21/2 21/11 33/13
fraud [3]  11/4 39/2 39/3
FREEMAN [1]  1/13
front [3]  36/14 53/5 54/24
FULBRIGHT [1]  4/14
Fully [1]  9/17
fulsome [1]  40/3
funds [1]  32/11
future [2]  23/20 44/17

**G**

G-E-N-I-T-A [1]  46/11
gained [1]  37/8
gate [1]  10/15
Gateway [1]  3/3
gave [1]  20/17
GEDDIS [1]  1/14
Genita [1]  46/11
GEOPPINGER [1]  4/2
Georgia [1]  2/24
get [38]  5/20 7/5 7/14 8/6 10/14 13/25 14/6 15/5 22/2 24/1 24/1 24/10 24/14 29/2 29/3 34/8 34/9 35/9 39/12 39/20 39/22 40/1 40/18 42/22 43/11 43/25 44/19 47/15 47/18 51/1 52/11 53/9 53/16 53/17 53/17 54/2 56/18 56/20
gets [1]  19/9

getting [10]  13/1 17/8 20/15 20/23 28/19 35/8 35/8 37/6 44/11 54/14
give [2]  24/14 37/5
given [5]  14/11 15/22 21/5 36/22 39/12
goal [1]  43/11
goes [3]  16/20 28/4 37/9
Gold [1]  33/21
good [9]  6/5 11/15 23/19 23/23 32/2 32/3 42/12 42/14 43/9
GORDON [1]  2/18
got [9]  9/7 15/23 20/17 21/6 48/4 54/21 55/15 57/20 57/21
gotten [1]  5/14
govern [2]  12/3 48/6
governed [1]  12/7
governing [1]  12/17
government [31]  16/19 26/16 26/17 26/20 26/20 26/25 27/10 27/10 27/24 28/9 28/19 28/25 28/25 29/4 29/20 29/22 32/12 38/10 38/23 39/9 39/9 39/18 39/19 53/6 53/16 53/17 53/17 54/22 55/3 55/6 55/15
government's [2]  27/13 55/9
Governor [1]  6/10
governs [1]  13/19
Gracie [1]  46/10
Grand [1]  4/19
granted [2]  20/3 30/14
great [8]  5/10 5/14 5/22 14/11 14/13 24/10 43/13 57/23
GREENBERG [2]  2/22 44/22
Greene [1]  45/4
Greg [1]  11/15
GREGORY [2]  2/5 2/23
grew [1]  6/9
group [1]  17/17
grouped [2]  14/19 47/20
grouping [1]  48/13
groupings [1]  48/17
grown [1]  24/22
guess [1]  34/17

**H**

half [1]  5/13
hand [1]  10/14
handle [2]  16/4 43/5
hang [1]  44/2
HANSEL [1]  2/5
happen [1]  23/7
happens [3]  6/25 32/14 32/16
happy [4]  11/19 31/19 37/15 44/9
hard [2]  29/18 50/9
hard-pressed [1]  50/9
HARKINS [5]  2/23 3/8 44/21 44/24 46/17

harm [2]  49/13 49/14
has [29]  6/1 7/2 8/17 11/23 13/11 14/13 15/7 16/19 18/16 19/16 19/23 21/21 22/18 22/20 22/22 24/11 29/4 30/6 30/20 31/17 31/24 34/18 41/2 41/12 45/21 48/15 50/3 54/11 56/7
have [99]
haven't [4]  14/15 24/22 42/16 53/20
having [3]  16/18 35/8 37/3
he [16]  9/5 9/11 11/24 12/2 12/14 12/5 13/6 13/14 13/14 22/19 22/23 22/25 23/2 24/12 30/24 32/6
he's [1]  15/8
Health [1]  3/14
hear [5]  23/9 31/2 31/15 34/24 38/16
heard [5]  14/15 18/4 20/5 24/8 55/20
hearing [2]  13/15 56/24
held [3]  5/1 30/8 57/6
Hello [1]  44/7
help [1]  11/8
here [25]  5/6 5/11 5/19 6/6 6/7 8/10 9/22 13/10 19/8 26/1 27/8 27/21 29/23 38/1 38/3 38/25 39/2 42/18 44/12 45/11 49/2 50/3 52/3 52/7 56/21
here's [2]  52/13 54/12
herring [1]  30/4
Hetero [2]  3/11 3/11
hey [1]  48/9
highly [1]  41/2
Highway [1]  2/3
HILL [1]  3/9
HILTON [2]  2/8 42/13
him [2]  50/4 56/11
HINSHAW [1]  3/6
his [2]  11/25 49/1
history [1]  8/6
HJ [1]  3/8
holds [1]  38/24
home [10]  12/3 12/7 12/21 44/10 48/2 48/5 52/3 52/4 56/18 58/8
HONIK [6]  1/16 1/17 9/22 14/5 19/6 30/16
Honor [96]
HONORABLE [3]  1/10 4/23 5/1
hope [3]  22/9 44/9 44/11
horse [3]  8/8 16/5 21/16
Howard [1]  46/10
however [2]  26/19 49/8
huh [1]  14/4
HUSCH [1]  3/15

**I**

I'd [4]  24/5 24/6 24/13 32/4
I'll [8]  5/21 11/16 11/17

**I**

**I'll... [5]** 24/12 24/23 34/11 34/13 58/4
**I'm [21]** 9/21 9/23 11/19 15/4 15/15 20/1 23/9 24/6 29/10 30/19 34/23 41/8 50/5 52/23 54/4 54/5 54/5 54/13 54/14 55/24 56/8
**I've [5]** 5/11 10/3 24/7 25/25 29/7
**idea [1]** 37/7
**identified [2]** 16/16 20/25
**Illinois [2]** 41/11 56/7
**imagine [1]** 56/24
**imbues [2]** 19/21 20/4
**immaterial [1]** 13/10
**impact [8]** 14/14 20/23 21/18 22/7 22/17 23/7 40/4 50/7
**impacts [1]** 49/18
**imparts [1]** 20/10
**impasse [2]** 25/4 25/24
**impending [1]** 15/5
**implicated [6]** 11/11 14/21 15/14 16/4 20/18 22/4
**implicates [1]** 16/15
**implicating [1]** 16/10
**implication [1]** 18/12
**implications [1]** 15/13
**implied [1]** 22/2
**implies [1]** 20/7
**important [2]** 13/18 40/25
**importantly [1]** 22/1
**inalienable [1]** 20/11
**Inc [6]** 2/21 2/25 3/21 3/24 4/8 4/19
**inclined [2]** 8/20 15/10
**includes [3]** 15/17 20/2 28/9
**including [1]** 25/5
**incumbent [1]** 51/20
**independent [1]** 26/7
**indicate [1]** 55/7
**indicated [1]** 31/20
**Industries [1]** 2/25
**information [20]** 13/18 14/25 15/1 28/17 28/24 29/2 29/23 30/3 30/11 31/8 31/12 33/25 34/4 34/5 34/6 34/9 34/17 36/16 40/16 41/2
**initial [4]** 13/6 34/10 35/19 49/5
**inputs [1]** 49/16
**inquiry [1]** 49/8
**insignificant [1]** 15/25
**instance [4]** 26/3 49/14 49/19 54/8
**instructions [2]** 17/10 50/22
**insurance [3]** 31/17 32/13 55/9
**insurer [1]** 33/2
**intend [1]** 20/21
**intention [2]** 43/1 43/2

**internal [5]** 28/21 28/22 28/22 29/1 41/19
**interpretation [1]** 41/11
**interrupt [1]** 34/23
**interruptions [1]** 5/16
**intervention [1]** 19/24
**intuitively [1]** 34/13
**involve [1]** 35/4
**involved [3]** 8/12 10/24 54/2
**involvement [1]** 31/3
**involves [1]** 11/22
**IRBESARTAN [2]** 1/4 43/14
**irony [1]** 10/13
**isn't [4]** 31/13 36/3 47/13 47/13
**isolated [1]** 56/6
**issue [61]**
**issues [23]** 10/12 10/15 13/17 14/13 16/10 16/15 16/16 21/10 24/17 25/1 25/3 25/5 25/8 25/19 25/24 31/25 42/6 42/18 43/20 55/18 56/14 56/15 56/22
**itemize [1]** 27/11
**itemized [2]** 29/12 29/13
**items [1]** 41/17
**its [1]** 19/15

**J**

**Jacqueline [2]** 45/18 45/20
**JASON [1]** 2/19
**JEFFREY [1]** 4/2
**JERSEY [7]** 1/1 1/8 1/15 3/10 3/20 44/12 49/20
**JESSICA [1]** 2/15
**job [1]** 40/2
**John [4]** 1/23 1/23 3/18 58/17
**Johnson [1]** 46/11
**joint [1]** 44/22
**JORGE [1]** 2/12
**JR [1]** 3/18
**JUDGE [37]** 1/10 5/20 6/3 6/18 7/2 8/17 9/2 9/11 9/17 10/1 10/7 11/19 11/23 12/10 13/4 13/10 15/7 18/8 18/21 19/10 19/23 22/18 22/22 23/9 24/9 24/12 41/8 41/10 43/24 43/25 44/5 47/19 50/15 52/13 53/5 57/12 57/24
**Judicial [1]** 4/23
**June [1]** 8/10
**jurisdictions [1]** 44/10
**jury [5]** 17/9 27/17 27/19 50/22 55/13
**just [36]** 6/6 7/9 7/10 7/14 8/14 13/21 13/24 16/8 19/5 21/8 21/19 29/7 29/16 29/24 30/22 32/12 32/23 33/9 34/11 35/10 41/1 41/8 42/25 46/6 48/9

**K**

**K-Dur [1]** 51/18
**KANNER [1]** 1/19
**KAPKE [1]** 4/6
**KARA [1]** 4/6
**KASS [3]** 2/12 31/23 37/1
**Kass's [1]** 41/8
**KATHLEEN [1]** 3/6
**KATHRYN [1]** 3/19
**KATZ [1]** 1/13
**KELLY [1]** 3/6
**kick [2]** 52/9 57/14
**kind [5]** 5/9 31/11 54/4 54/6 57/21
**King [2]** 45/17 45/25
**KIRKLAND [1]** 3/22
**KIRTLAND [1]** 2/2
**KNEPPER [1]** 3/15
**know [38]** 5/11 7/17 8/18 9/3 9/8 12/9 12/10 13/19 14/5 15/6 15/18 17/8 17/12 17/16 18/7 20/18 20/24 21/14 21/14 21/23 21/25 24/2 34/24 36/18 36/22 40/1 40/25 42/18 43/1 44/10 44/13 47/18 52/10 52/11 53/19 53/22 53/25 55/20
**knowing [6]** 13/15 18/12 18/19 22/3 22/5 50/6
**known [1]** 26/5
**knows [2]** 14/2 29/18
**KUGLER [23]** 1/10 4/23 5/2 5/21 7/2 8/17 9/2 9/11 10/1 10/7 11/19 11/23 13/11 15/7 19/10 19/23 22/18 22/22 23/5 24/9 24/12 43/25 44/5
**Kugler's [2]** 12/11 13/5
**Kurz [3]** 1/23 1/23 58/17

**L**

**labeled [1]** 41/19
**Labs [1]** 3/11
**laid [1]** 30/23
**language [2]** 15/7 51/12
**large [1]** 26/16
**largely [1]** 15/2
**Larry [1]** 4/22
**last [4]** 13/11 13/15 22/19 22/23
**later [1]** 57/1
**Laughter [4]** 5/7 52/19 55/22 57/3
**LAVELLE [1]** 3/18
**law [34]** 4/23 8/17 8/23 11/24 12/2 12/5 12/7 12/11 12/16 12/17 12/20 12/21 12/21 13/19 15/25 16/25 17/1 17/2 22/17 23/8 23/17 26/13 36/5 36/10 36/13 38/24 38/25

46/25 48/21 48/22 49/8 49/22 51/25 52/7
**laws [26]** 10/11 10/15 10/17 11/8 11/11 11/11 13/6 14/20 17/4 17/20 17/21 17/22 20/16 21/3 21/10 21/22 22/4 22/13 39/5 47/10 47/17 47/24 49/4 49/8 50/1 50/6
**lawsuit [1]** 19/17
**lawyer [1]** 6/9
**lay [1]** 33/3
**LAYNE [2]** 2/8 42/12
**least [6]** 6/21 7/16 14/6 14/13 24/15 29/11
**leaving [1]** 45/5
**left [2]** 7/15 54/16
**legal [3]** 11/5 22/9 56/6
**length [1]** 37/13
**Leon [1]** 2/13
**less [1]** 17/25
**let [3]** 30/22 34/21 49/3
**let's [13]** 8/21 8/21 8/22 9/12 23/25 24/1 24/1 24/10 24/17 50/21 52/9 52/9 52/10
**letter [9]** 5/24 9/22 12/21 25/7 36/23 44/25 46/3 49/1 52/21
**level [1]** 49/12
**LEWIS [2]** 3/18 4/10
**lex [1]** 52/1
**Lexington [1]** 3/23
**liability [5]** 1/4 7/23 17/8 40/9 50/13
**light [2]** 11/9 20/15
**like [19]** 11/4 19/23 21/7 22/7 30/3 31/22 32/4 32/13 33/12 36/13 37/10 37/12 38/6 38/9 40/11 41/3 41/19 51/6 52/14
**likely [5]** 10/1 12/6 27/7 28/23 29/1
**limine [2]** 27/16 35/21
**limited [1]** 35/25
**LINDQUIST [1]** 4/18
**line [2]** 15/23 54/7
**lined [1]** 7/22
**lingering [1]** 21/10
**list [1]** 46/8
**listed [1]** 40/10
**listing [1]** 45/5
**lists [1]** 40/12
**LITIGATION [1]** 1/5
**little [7]** 6/18 10/13 23/9 26/6 48/14 50/21 57/21
**LIZA [1]** 3/2
**LLC [6]** 1/13 1/16 1/19 2/14 2/25 3/20
**LLP [16]** 2/2 2/5 2/11 2/15 2/18 2/22 3/2 3/6 3/9 3/12 3/15 3/18 3/22 4/2 4/6 4/14
**located [1]** 12/23
**loci [1]** 52/1
**LOCKARD [3]** 2/22 43/7 43/13

**long [3]** 5/6 27/18 46/12
**look [9]** 8/5 22/7 23/3 29/17 29/19 29/19 29/25 48/24 55/24
**looking [4]** 17/4 17/5 17/9 57/17
**looks [1]** 19/23
**Loretta [1]** 4/23
**Los [1]** 4/7
**losartan [2]** 1/3 43/14
**lost [1]** 7/14
**lot [8]** 28/15 28/17 28/24 29/1 33/4 33/23 33/24 54/4
**LOUIS [1]** 3/16
**Louisiana [2]** 1/21 2/9
**Ltd [2]** 2/25 3/25

**M**

**M-I-R-A-B-I-L-E [1]** 46/9
**MA [1]** 3/7
**MACKENZIE [1]** 4/18
**macro [1]** 22/12
**MacStravic [1]** 4/22
**made [7]** 7/2 12/22 12/24 13/12 18/8 18/20 18/21 19/23 22/18 28/13 29/14 30/2 41/12 47/8 47/9 48/15 52/5 52/5 56/9
**make [12]** 9/10 13/4 14/9 23/18 24/10 29/23 30/22 31/21 40/3 47/11 51/12 51/13
**makes [3]** 9/7 13/3 26/5
**making [3]** 5/11 43/9 55/24
**manage [1]** 7/11
**MANAGEMENT [7]** 1/5 5/25 13/11 22/19 22/23 45/23 46/7
**manufacturers [4]** 7/11 7/18 7/25 23/14
**many [7]** 21/8 33/19 33/20 35/4 35/4 47/5 47/7
**MAO [8]** 16/19 26/5 26/6 32/8 32/11 33/20 33/20 35/7
**MAOs [1]** 32/7
**Market [1]** 1/17
**MASTER [3]** 1/11 5/2 5/12
**masters [1]** 22/8
**material [6]** 17/19 23/6 31/5 47/13 50/8 50/19
**materials [1]** 27/22
**math [1]** 29/18
**Matt [1]** 6/10
**matter [17]** 5/12 6/13 9/16 14/7 16/6 16/7 24/8 24/15 34/10 35/19 36/12 40/5 41/22 41/23 49/2 50/2 58/14
**matters [5]** 5/23 17/23 45/5 45/6 45/24
**MATTHEW [1]** 3/15
**may [19]** 10/19 10/20

**M**

**may... [17]** 11/2 11/8 11/9 13/17 13/17 15/15 19/5 30/22 30/23 33/17 33/20 33/21 41/7 44/2 49/11 50/20 50/21
**maybe [3]** 9/9 24/18 36/21
**MAZIE [1]** 1/13
**McCarty [1]** 46/10
**Mckesson [1]** 4/16
**md [1]** 1/4
**MDL [1]** 23/21
**me [25]** 2/6 5/5 9/1 9/7 9/11 10/3 14/11 22/21 23/3 24/5 24/6 24/12 25/17 25/22 30/22 34/13 36/22 49/3 50/5 51/9 52/15 54/14 55/19 57/7 57/13
**MEAGHER [1]** 2/15
**mean [5]** 14/15 15/19 33/25 48/8 49/3
**meaningful [4]** 20/23 21/3 21/18 49/6
**means [5]** 29/17 29/18 29/24 31/15 31/16
**measure [5]** 16/21 27/5 39/4 52/21 52/22
**measures [3]** 17/5 17/6 17/7
**mechanical [1]** 1/25
**mediated [1]** 6/8
**mediation [1]** 6/15
**Medicaid [2]** 26/10 28/14
**medical [1]** 35/6
**Medicare [14]** 20/20 26/4 26/8 26/9 26/15 28/14 28/16 32/15 38/2 38/4 38/5 53/7 55/12 55/16
**medications [2]** 12/17 32/20
**meet [3]** 6/7 42/6 43/10
**meeting [1]** 57/7
**member [5]** 15/11 15/18 19/13 19/13 20/10
**members [1]** 32/13
**mention [1]** 33/18
**mentioned [1]** 37/1
**merely [1]** 20/1
**MESTRE [3]** 2/11 2/12 31/23
**method [1]** 37/23
**methodologically [1]** 37/22
**methodology [3]** 16/22 27/18 29/21
**MEYER [1]** 2/8
**Miami [1]** 2/13
**mid [1]** 23/25
**mid-November [1]** 23/25
**middle [2]** 6/14 14/10
**might [5]** 6/6 7/1 9/6 10/11 36/23
**MILLER [1]** 2/15
**million [1]** 57/5
**millions [1]** 38/19

**mind [1]** 52/15
**minimum [1]** 36/12
**minute [1]** 31/2
**minutes [1]** 44/2
**Mirabile [1]** 46/9
**misstatements [1]** 31/1
**mistake [1]** 8/5
**mistaken [1]** 51/23
**Mitchell [1]** 1/7
**MO [1]** 3/16
**model [2]** 54/10 55/5
**moment [1]** 31/18
**money [3]** 49/18 53/1 55/15
**month [3]** 39/23 39/24 40/6
**months [2]** 21/9 52/12
**more [18]** 16/11 17/25 21/9 21/11 21/19 22/1 22/6 24/14 29/1 31/2 31/15 33/11 36/19 37/11 44/16 46/3 56/7 56/9
**MORGAN [1]** 3/18
**MORING [1]** 3/12
**morning [1]** 58/2
**most [2]** 25/7 26/23
**motion [10]** 11/6 20/3 20/9 22/1 23/2 27/16 35/20 47/20 48/4 49/5
**motions [1]** 42/10
**mouths [1]** 54/13
**move [2]** 21/20 45/9
**moving [1]** 43/15
**Mr [2]** 14/5 32/5
**Mr. [32]** 6/5 6/8 6/8 6/12 6/16 6/20 7/7 8/2 9/22 9/23 9/24 14/5 14/15 19/6 20/6 20/15 20/17 22/14 24/21 30/16 30/23 31/23 36/21 37/1 37/14 41/8 44/24 46/17 49/1 49/10 50/4 56/9
**Mr. Harkins [2]** 44/24 46/17
**Mr. Honik [4]** 9/22 14/5 19/6 30/16
**Mr. Kass [1]** 37/1
**Mr. Kass's [1]** 41/8
**Mr. Ostfeld [13]** 14/15 20/6 20/15 20/17 22/14 24/21 30/23 36/21 37/14 49/1 49/10 50/4 56/9
**Mr. Slater [4]** 6/20 7/7 9/23 9/24
**Mr. Trischler [6]** 6/5 6/8 6/8 6/12 6/16 8/2
**Mr. Zalman [1]** 31/23
**Ms. [1]** 43/13
**Ms. Lockard [1]** 43/13
**MSP [12]** 2/14 10/24 15/11 15/17 19/16 20/2 20/4 20/25 30/19 31/23 41/1 49/6
**MSP's [2]** 20/9 32/6
**MSPRC [3]** 18/16 18/25 26/2
**MTD [4]** 11/25 12/11

51/17 51/23
**much [7]** 5/5 16/15 36/7 38/22 44/12 49/23 58/7
**Mulberry [1]** 3/3
**multi [1]** 48/17
**multistate [2]** 13/16 13/16
**MURTHA [1]** 3/9
**must [2]** 26/25 39/10 39/12
**mute [1]** 5/17
**my [8]** 23/10 24/10 24/23 39/14 40/13 40/22 42/17 52/15
**Mylan [1]** 2/21
**myself [1]** 6/6

**N**

**N.W [1]** 2/16
**NAGLE [1]** 3/23
**Namenda [8]** 26/24 35/17 36/22 38/7 38/13 38/24 39/2 54/24
**narrow [3]** 15/22 21/2 23/3
**nature [2]** 5/17 42/23
**NE [1]** 2/24
**necessary [2]** 9/9 35/12
**need [31]** 5/5 7/1 10/19 11/9 11/18 12/10 13/19 14/18 14/25 15/1 15/21 18/2 20/18 21/6 27/22 28/1 28/2 31/19 31/20 32/22 32/22 39/21 39/24 40/21 43/19 47/11 49/11 49/23 54/1 55/12 56/22
**needs [8]** 28/12 29/10 29/24 33/12 34/19 34/21 39/23 39/24
**negotiated [1]** 19/15
**negotiating [4]** 14/17 14/24 31/24 42/18
**negotiation [2]** 19/16 20/8
**negotiator [1]** 32/6
**never [3]** 5/13 23/19 55/15
**NEW [27]** 1/1 1/8 1/15 1/21 2/9 2/16 3/10 3/20 3/24 3/24 12/12 13/21 26/22 38/24 39/3 44/12 48/19 48/20 48/22 49/19 49/20 49/22 51/1 51/8 52/4 52/14 54/24
**Newark [1]** 3/4
**next [13]** 7/13 9/20 24/3 41/24 43/3 43/12 45/5 45/17 45/23 46/2 46/6 46/12 57/7
**nice [2]** 6/19 56/21
**NJ [1]** 3/4
**njd.uscourts.gov [1]** 1/23
**no [29]** 5/5 8/4 9/22 11/25 19/9 20/23 21/17 22/17 23/16 31/17 33/1 33/2 33/10 36/10 36/10 37/7 38/12 42/5 43/20 45/8

46/5 46/14 47/16 49/25 53/20 54/5 55/24 56/7 57/4
**non [7]** 7/10 7/11 13/13 18/9 18/20 18/22 19/2
**non-class [5]** 13/13 18/9 18/20 18/22 19/2
**non-trial [2]** 7/10 7/11
**none [3]** 22/16 31/9 43/18
**nonrepresentative [1]** 18/24
**nonstarter [1]** 50/8
**normally [1]** 57/9
**NORTON [1]** 4/14
**not [76]**
**nothing [3]** 20/8 33/7 37/8
**notice [1]** 19/12
**notwithstanding [1]** 17/16
**November [2]** 23/24 23/25
**November 12th [1]** 23/24
**now [22]** 5/12 7/12 7/19 9/5 9/12 9/13 15/21 17/25 18/5 19/22 20/24 29/10 31/11 31/18 32/21 34/7 35/6 35/7 35/21 51/20 52/10 52/13
**nuanced [3]** 16/11 36/20 48/25
**number [11]** 1/3 10/2 20/12 20/14 24/25 31/16 42/17 42/19 53/1 53/11 57/1
**numbers [5]** 53/10 53/10 53/19 53/22 54/1
**numerous [1]** 43/10
**NW [1]** 3/13

**O**

**O'REILLY [1]** 3/2
**oath [1]** 31/13
**objection [2]** 46/12 46/14
**objections [2]** 29/7 30/24
**observations [1]** 30/23
**obtained [2]** 21/1 37/3
**obviously [1]** 30/8
**occur [1]** 49/13
**occurred [1]** 49/14
**occurs [1]** 49/19
**October [16]** 1/8 7/10 7/24 8/11 13/24 14/6 21/7 23/23 24/14 39/17 40/20 57/10 57/11 57/19 57/20 58/17
**October 27th [3]** 13/24 14/6 24/14
**October 27th is [1]** 23/23
**October 29th [1]** 39/17
**October 31st [2]** 7/10 7/24 21/7
**off [11]** 16/9 26/19 27/9 27/24 28/12 32/6 32/6 45/2 55/6 57/6 57/21
**Official [2]** 1/23 58/11
**officially [1]** 8/11

**offset [4]** 20/20 38/10 50/16 50/17
**oh [2]** 52/13 57/20
**Ohio [10]** 4/3 12/13 13/21 48/19 48/20 48/23 51/1 51/8 52/4 52/15
**okay [25]** 6/4 7/7 9/16 10/8 11/13 11/21 17/3 25/20 30/18 40/13 42/4 43/4 43/13 44/1 45/25 47/9 51/5 52/6 55/17 55/18 56/2 56/11 57/20 58/5 58/7
**once [3]** 11/11 25/14 25/17
**one [34]** 2/6 2/20 5/15 6/6 9/12 10/2 10/14 12/12 13/20 19/9 19/24 20/13 20/24 21/19 22/3 22/18 24/23 25/14 25/17 25/21 30/19 33/18 33/19 33/20 35/15 40/15 41/5 41/20 45/20 47/15 48/18 50/14 50/18 52/20
**one-way [1]** 19/24
**ones [2]** 11/6 18/18
**ongoing [1]** 25/4
**only [16]** 6/6 6/23 9/14 9/15 9/15 10/11 19/13 23/10 23/18 29/8 29/15 31/14 39/14 49/16 50/18 53/25
**open [5]** 5/1 7/15 35/6 44/12 57/6
**operates [1]** 19/10
**operative [1]** 16/3
**Opinion [5]** 11/25 12/11 48/4 51/17 51/23
**opportunities [1]** 56/2
**opportunity [7]** 18/3 19/12 31/5 36/24 39/12 39/21 56/8
**opposed [1]** 32/8
**opposing [1]** 35/15
**opt [3]** 15/19 18/21 19/12
**opted [1]** 20/7
**order [14]** 5/25 9/12 14/23 15/4 24/13 27/22 30/5 30/5 30/8 30/10 34/17 40/10 40/11 46/1
**orderly [1]** 14/1
**orders [3]** 7/3 45/3 45/22
**Organization [2]** 26/5 26/15
**Organizations [5]** 38/3 38/5 38/6 53/8 55/12
**Orleans [2]** 1/21 2/9
**OSTFELD [16]** 2/23 11/16 14/15 20/6 20/15 20/17 22/14 24/21 30/23 32/5 36/21 37/14 49/1 49/10 50/4 56/9
**other [24]** 7/18 12/13 23/18 25/5 25/6 26/13 30/2 32/9 33/1 33/10 36/23 39/5 39/6 39/6 40/19 42/5 45/23 49/21

**O**

other... [6] 49/23 55/18 56/10 56/14 56/15 56/22
others [1] 49/3
otherwise [6] 19/16 51/9 51/11 51/16 52/9 52/15
ought [1] 8/19
our [34] 7/2 8/1 8/25 11/5 12/21 14/22 16/2 17/12 17/13 20/3 22/8 28/2 29/25 30/24 34/17 37/9 39/11 39/16 39/20 39/25 40/1 40/2 40/17 41/5 41/24 43/1 43/17 47/20 48/11 48/20 53/23 54/8 54/19 57/21
ourselves [1] 50/10
out [28] 10/15 12/5 14/6 15/19 18/21 19/12 20/1 20/7 26/17 26/18 26/19 27/9 28/11 28/18 29/20 29/21 30/23 31/20 33/3 33/6 38/10 39/4 39/4 39/7 39/10 54/16 55/5 55/6
outlays [1] 28/24
outside [1] 19/14
over [5] 5/12 5/23 13/11 16/18 55/14
over-reimbursement [1] 55/14
overly [1] 38/16
overpayment [2] 54/19 55/13
own [4] 22/8 31/12 33/22 33/23
Oxford [1] 2/20

**P**

P.C [1] 4/18
p.m [3] 1/9 5/3 58/10
P.O [1] 2/6
PACHIOS [1] 2/5
Pacific [1] 2/3
PACKARD [1] 2/2
pages [3] 30/6 38/19 38/20
paid [16] 10/24 12/16 16/19 26/11 27/6 49/20 53/1 53/11 53/14 53/16 54/12 54/15 54/17 55/2 55/6 55/15
pandemic [1] 44/13
papers [1] 6/22
paragraph [1] 44/25
PAREKH [2] 2/2 45/13
Park [1] 4/7
Parker [1] 46/10
Parkway [1] 1/14
part [13] 6/14 20/3 22/5 22/6 26/21 27/13 28/16 30/17 39/10 39/25 40/12 40/17 54/22
participating [1] 10/10
particular [9] 14/16 27/14 29/22 32/21 32/24 33/18 33/19 37/23 37/24
particularly [2] 23/23

50/15
parties [9] 6/22 8/22 9/14 10/10 14/18 15/5 23/13 25/4 43/9
partner [1] 41/8
party [8] 26/6 26/14 27/3 27/4 27/6 28/9 29/20 53/16
party's [1] 47/15
patient [3] 32/16 49/15 49/17
PAUL [1] 2/5
Pause [1] 44/3
pay [3] 32/14 32/17 32/18
paying [3] 26/20 32/23 55/3
payment [4] 26/17 33/2 33/6 33/10
payments [18] 26/13 26/25 27/10 27/13 27/25 28/9 28/18 28/20 32/8 32/12 33/1 38/10 39/9 39/19 52/6 53/6 54/21 55/9
payor [8] 26/7 26/14 27/3 27/4 27/7 28/9 29/20 53/16
pays [1] 26/10
PDE [1] 28/10
Pennsylvania [4] 1/18 2/20 3/13 4/11
people [1] 35/9
per [3] 32/16 32/17 32/18
perfect [1] 16/17
perfectly [1] 13/12
perhaps [1] 36/19
period [1] 40/25
permission [1] 37/12
perplexing [1] 50/15
person [3] 5/10 6/19 32/19
personally [1] 44/15
perspective [2] 8/25 43/17
persuade [2] 51/22 52/8
pertain [1] 25/25
pertaining [1] 7/25
pertains [1] 16/20
PFS [1] 45/21
Pharma [2] 2/25 3/20 3/21 3/24
Pharmaceutical [1] 2/25
Pharmaceuticals [3] 2/21 2/25 3/25
pharmacist [1] 49/15
pharmacy [4] 4/8 4/19 49/15 53/14
Philadelphia [1] 1/18
Phillies [1] 56/25
phone [5] 5/16 5/17 57/8 57/11 57/15
pick [2] 8/21 9/7
picked [1] 18/24
Piedmont [1] 2/24
PIETRAGALLO [1] 2/18
Pittsburgh [1] 2/20

PIZZI [1] 3/2
place [1] 24/15
plaintiff [17] 13/13 13/20 18/8 18/11 18/14 18/19 18/22 18/23 19/3 22/21 22/21 23/1 23/4 26/1 46/19 47/4 48/18
plaintiff's [7] 6/10 7/22 27/8 28/12 37/21 38/8 53/7
plaintiffs [31] 1/15 1/18 1/22 2/4 2/7 2/10 9/13 12/4 12/6 12/15 14/3 17/17 18/6 18/24 23/10 26/3 27/11 27/23 29/6 30/2 30/8 38/22 38/23 40/19 42/13 45/12 48/8 48/13 51/17 54/9 56/11
plaintiffs' [8] 9/21 12/3 16/22 25/7 39/17 43/2 43/16 45/14
plan [8] 9/23 10/7 13/5 32/13 33/10 33/21 33/22 33/22
plane [1] 56/18
planning [2] 33/11 38/9
plans [7] 12/16 26/7 26/12 33/6 33/19 33/21 35/7
playoffs [1] 56/25
plays [1] 53/6
PLAZA [1] 3/16
pleadings [1] 49/5
Please [1] 5/4
pocket [4] 28/18 39/4 39/4 39/7
point [22] 14/10 15/2 16/11 20/12 20/14 23/18 25/17 29/3 29/16 30/2 31/20 43/19 48/20 49/11 49/14 51/11 53/13 54/12 54/15 54/25 56/10 56/23
pointing [1] 20/1
points [3] 10/19 24/10 56/9
Ponce [1] 2/13
portion [3] 26/17 26/20 27/24
PORTLAND [1] 2/6
position [8] 6/22 14/7 18/5 37/3 48/12 53/24 53/24 54/19
possibly [2] 17/25 17/25
POST [1] 4/18
postpone [1] 52/9
posture [1] 35/20
potentially [4] 34/18 34/20 42/22 50/22
practical [1] 50/2
predicate [1] 56/5
predicates [1] 30/25
prefer [3] 7/13 7/16 44/15
preference [1] 42/19
preliminary [1] 47/9
premature [3] 7/4 8/19 16/7

premise [1] 17/21
premium [5] 32/12 32/14 32/17 33/1 33/9
premiums [1] 55/10
preparation [7] 14/1 14/11 14/18 15/23 47/14 50/7 51/14
prepare [3] 14/1 14/23 51/20
prepared [1] 37/24
preparing [2] 13/3 14/18
prescription [9] 27/6 27/14 28/10 28/16 28/19 29/5 29/12 29/22 32/20
present [1] 4/21
presented [2] 24/9 48/11 50/14
pressed [1] 50/9
PRETI [1] 2/5
pretty [4] 19/10 26/14 34/4 44/12
prevail [1] 22/10
previous [1] 37/19
previously [1] 11/23
Princeton [1] 3/10 3/20
principal [3] 30/20 31/4 31/24
principle [1] 52/4
principles [1] 51/19
prism [2] 21/12 22/12
private [4] 32/13 33/1 33/10 55/2
pro [2] 6/14 6/15
probably [4] 11/18 23/19 35/4 40/21
problem [5] 8/5 14/4 19/24 51/22 53/15
procedural [1] 35/20
proceed [4] 19/19 22/11 22/25 25/21
proceedings [4] 1/25 5/1 58/10 58/14
process [5] 7/17 15/14 19/17 19/21 20/12
produce [7] 21/7 30/14 33/15 34/25 37/11 38/22 38/23
produced [7] 1/25 30/6 31/21 38/19 38/21 43/18 53/21
producible [1] 34/18
producing [1] 35/21
production [3] 25/6 35/21 37/9
products [5] 1/4 26/11 26/21 27/12 53/15
program [3] 6/15 19/12 55/16
progress [1] 43/9
projections [1] 33/23
promptly [1] 14/8
proofs [1] 17/12
properly [2] 19/18 36/13
propitious [1] 21/9
proportional [3] 33/12
proportionality [1] 35/1
proportionate [2] 34/19

34/21
proposal [1] 8/1
propose [2] 34/6 37/5
proposed [2] 13/23 13/24
proposing [1] 16/8 26/3 37/2
proprietary [7] 30/3 30/7 30/11 33/24 38/21 41/2 42/23
protect [1] 41/5
protections [1] 30/10
protective [2] 30/5 30/10
proverbial [2] 16/5 21/16
provide [1] 29/1
provided [1] 21/25
provides [1] 28/16
providing [1] 40/24
publicly [1] 29/2
pull [1] 40/14
purchases [1] 29/22
purposes [2] 12/25 50/23
pursuant [1] 30/7
purview [1] 19/14
put [4] 16/5 16/9 24/24 54/13
putting [3] 8/8 21/16 35/10

**Q**

question [27] 5/25 7/9 7/10 10/11 11/2 11/6 15/22 15/22 16/20 20/15 21/19 21/20 21/22 22/12 22/16 27/1 27/17 34/9 35/2 36/7 36/22 36/25 37/11 38/13 41/16 49/22 55/2
questions [6] 11/8 15/25 16/7 21/13 21/17 22/17
quite [2] 12/20 13/14

**R**

raise [2] 55/18 56/22
raised [3] 23/10 29/6 29/7
RASPANTI [1] 2/18
rather [2] 17/5 36/14
RBK [1] 1/4
RDR [1] 58/17
RDR-RMR-CRR-CRC [1] 58/17
RE [5] 1/3 26/24 51/18 51/18 54/23
reached [4] 10/9 24/25 40/16 40/23
read [1] 6/22
ready [6] 8/11 15/5 17/9 20/23 47/15 52/11
real [1] 36/4
reality [1] 31/1
realized [1] 36/20
really [11] 9/1 14/21 15/15 20/6 20/16 31/13 32/23 33/12 34/5 50/24 52/25
reason [4] 22/18 49/12 50/3 50/23

# R

**reasoning [1]** 12/11
**rebate [3]** 25/11 28/6 41/18
**rebates [3]** 26/12 27/25 53/17
**receipts [1]** 28/25
**received [2]** 32/8 45/14
**receives [1]** 32/11
**recent [2]** 25/7 26/24
**Recess [1]** 44/4
**recognized [1]** 16/23
**recognizing [1]** 56/25
**record [5]** 36/14 41/4 41/12 57/6 58/14
**recorded [1]** 1/25
**recover [1]** 54/22
**Recovery [1]** 2/14
**red [1]** 30/4
**redactions [1]** 35/12
**Redondo [1]** 2/3
**reduce [1]** 26/12
**REEFER [1]** 2/19
**refer [1]** 15/7
**referred [3]** 28/10 41/9 49/1
**refrain [1]** 24/7
**regarding [3]** 24/25 29/3 42/23
**regardless [3]** 12/23 17/20 19/1
**regular [1]** 32/13
**regulatory [1]** 55/11
**reimbursed [1]** 26/11
**reimbursement [4]** 25/11 28/5 41/18 55/14
**reimbursements [7]** 12/22 12/24 27/25 47/8 52/5 53/18 54/20
**related [1]** 25/8
**relationship [1]** 31/17
**relatively [1]** 53/5
**relevance [4]** 23/16 29/7 38/14 41/3
**relevancy [1]** 37/9
**relevant [8]** 25/18 28/11 33/13 34/19 34/20 38/11 38/14 38/25
**reliable [1]** 27/18
**reliance [1]** 56/6
**relied [1]** 49/16
**relist [2]** 46/12 46/16
**rely [1]** 53/13
**relying [1]** 36/15
**remaining [5]** 7/25 10/11 15/3 21/1 21/10
**remains [2]** 14/19 14/21
**Rena [1]** 54/17
**rep [1]** 20/4
**repeatedly [2]** 22/20 22/23
**report [2]** 39/16 39/17
**Reporter [2]** 1/23 58/18
**REPORTER'S [1]** 58/11
**Reporter/Transcriber [1]** 58/18
**reporting [4]** 28/22 28/22

29/1 41/19
**reports [10]** 7/23 7/25 9/9 21/7 31/7 38/18 40/1 40/8 40/19 40/20
**representative [7]** 15/13 18/10 18/11 18/13 18/15 18/17 19/20
**represents [1]** 31/23
**request [4]** 25/3 28/5 45/22 45/22
**requesting [1]** 29/11
**requests [2]** 28/4 30/13
**require [1]** 11/2
**required [2]** 41/14 47/14
**resolution [3]** 6/13 13/1 13/25
**resolve [2]** 6/13 23/25
**resolved [4]** 6/1 7/1 19/2 24/1
**resource [1]** 35/10
**respect [7]** 8/6 8/7 32/8 32/11 32/25 41/17 49/10
**respectfully [13]** 12/19 13/8 16/14 17/16 18/5 21/5 22/15 29/10 30/13 32/9 36/2 36/11 53/3
**respects [1]** 49/2
**response [1]** 16/11
**Restatement [1]** 52/1
**RET [2]** 1/11 5/2
**Retailer [1]** 4/8
**retailers [1]** 23/12
**returnable [2]** 45/23 46/2
**returns [1]** 28/25
**reverse [1]** 31/11
**review [2]** 39/23 39/24
**reviewing [1]** 35/11
**revisit [2]** 8/20 8/20
**Richard [1]** 45/6
**right [35]** 8/2 9/20 10/5 10/22 12/1 15/24 16/12 19/4 24/4 24/17 25/13 25/23 27/2 27/20 32/1 34/18 35/5 35/7 35/13 35/24 40/11 41/15 42/1 42/9 43/4 43/22 44/1 45/16 46/18 46/24 47/1 47/22 48/2 48/4 56/18
**rights [8]** 15/13 19/17 19/21 20/5 20/5 20/9 20/11 41/6
**ripe [4]** 16/16 25/2 25/8 42/7
**rise [3]** 6/16 44/6 58/9
**risk [4]** 31/17 32/17 32/19 32/24
**Rita [1]** 46/8
**Rite [1]** 4/8
**RIVERO [4]** 2/11 2/11 31/23 41/7
**RMR [1]** 58/17
**road [5]** 2/24 3/10 4/11 8/10 52/10
**ROBERT [4]** 1/10 4/23 5/2 46/10
**role [1]** 53/6
**room [2]** 5/15 30/6

**ROSE [2]** 4/14 46/10
**Roseland [1]** 1/15
**ROSS [2]** 4/15 45/2
**Roszel [1]** 3/10
**round [2]** 7/13 37/19
**RUBEN [1]** 1/17
**rule [12]** 11/5 19/9 19/10 19/11 19/25 20/5 20/12 22/1 22/10 39/4 39/7 39/25
**ruled [1]** 21/11
**rules [2]** 49/8 51/25
**ruling [5]** 13/9 13/16 19/25 22/16 41/24
**run [1]** 8/15

# S

**safe [1]** 58/8
**said [22]** 6/5 8/18 12/2 13/14 13/14 18/22 20/6 21/13 22/20 22/22 22/25 23/2 26/24 27/1 27/15 27/16 36/6 38/12 39/2 48/9 56/8 57/17
**sale [5]** 29/3 49/14 53/13 54/12 54/15
**salient [1]** 20/15
**same [11]** 8/15 17/7 25/18 30/9 30/10 32/14 48/14 50/12 50/13 51/19 52/3
**sat [1]** 5/6
**satisfied [1]** 56/8
**say [24]** 6/7 6/16 9/5 14/20 17/10 20/11 21/24 25/2 32/18 34/13 36/1 39/25 41/8 43/16 47/12 49/3 49/25 50/18 50/20 52/25 53/14 54/11 54/14 56/3
**saying [9]** 11/17 15/15 19/18 32/6 45/14 48/8 52/13 54/5 55/5
**says [2]** 40/10 55/1
**scale [1]** 18/2
**scenario [1]** 25/22
**schedule [11]** 8/23 24/6 24/12 24/14 42/11 42/21 43/2 43/3 43/11 57/22 58/1
**scheduled [1]** 23/21
**scheduling [1]** 7/3
**SCHELL [1]** 4/18
**ScieGen [1]** 3/8
**scope [3]** 5/25 18/2 42/16
**Scranton [1]** 6/9
**Scripts [1]** 3/17
**seal [1]** 42/10
**seat [2]** 5/21 44/7
**seated [1]** 5/4
**second [7]** 7/3 7/4 8/18 8/21 44/13 49/12 52/1
**secondary [1]** 22/12
**see [5]** 6/5 6/19 42/17 47/10 50/23
**seeking [8]** 25/21 27/21 28/13 28/21 30/24 55/13

55/14 55/14
**seems [3]** 9/1 33/12 34/13
**select [2]** 8/9 18/22
**selected [3]** 18/18 18/19 18/23
**selection [1]** 10/23
**self [1]** 28/6
**self-explanatory [1]** 28/6
**Senator [1]** 6/11
**sense [3]** 8/24 9/7 47/19
**sensitive [2]** 24/6 34/4
**separately [1]** 25/15
**Series [1]** 2/14
**serve [1]** 7/2
**services [5]** 26/10 26/11 26/21 27/12 28/14
**set [16]** 7/12 7/20 8/12 8/14 8/23 12/9 24/1 24/5 24/11 25/18 26/19 27/9 28/12 37/24 38/14 55/5
**sets [1]** 23/14
**setting [4]** 8/9 8/18 27/24 42/21
**seven [1]** 40/24
**several [3]** 13/11 22/19 25/5
**shape [1]** 14/16
**share [2]** 38/23 55/6
**shed [2]** 11/10 20/16
**Shemes [1]** 45/1
**shift [1]** 45/25
**shoot [1]** 6/6
**short [1]** 47/12
**should [20]** 6/23 7/9 22/13 29/12 30/13 30/14 34/14 36/21 41/17 47/4 47/17 47/23 48/2 48/5 48/12 48/13 48/20 48/23 50/17 52/6
**shouldn't [1]** 16/8
**show [3]** 45/3 45/22 46/1
**shuffling [1]** 6/18
**side [5]** 6/9 6/10 47/15 52/14 56/17
**significant [1]** 15/14
**similar [3]** 27/7 50/1 54/10
**similarities [1]** 47/21
**similarity [1]** 17/21
**simple [1]** 49/2
**simply [4]** 21/8 36/11 36/15 36/16
**simultaneous [3]** 13/23 14/6 41/23
**since [2]** 5/6 21/8
**single [11]** 13/15 15/20 18/8 18/14 19/3 20/22 22/20 22/21 22/21 23/1 23/4
**single-class [1]** 22/20
**single-plaintiff [6]** 13/13 18/8 22/21 22/21 23/1 23/4
**sir [2]** 16/13 16/25
**situation [1]** 26/15
**six [3]** 11/1 12/18 47/5
**Sixteen [1]** 47/5

**SKADDEN [1]** 2/15
**SLATE [1]** 2/15
**SLATER [6]** 1/13 1/13 6/20 7/7 9/23 9/24
**small [1]** 30/17
**SMITH [3]** 4/10 4/23 45/4
**so [92]**
**so-called [1]** 31/3
**some [28]** 6/15 6/21 10/12 11/9 14/13 15/2 18/23 20/15 20/21 21/13 21/15 23/25 29/11 30/25 31/16 32/7 33/6 36/13 36/21 36/23 37/13 43/18 44/11 44/16 47/24 49/2 49/11 56/9
**somebody [2]** 29/18 49/20
**somehow [2]** 20/7 33/6
**something [7]** 6/17 10/1 10/7 24/18 50/5 51/2 58/2
**somewhere [1]** 5/21
**son [1]** 6/11
**sorry [2]** 9/23 34/23
**sort [4]** 20/8 22/12 32/7 33/6
**sought [1]** 40/16
**sound [1]** 37/23
**sounds [1]** 38/9
**South [1]** 2/3
**Southern [5]** 19/18 26/22 35/16 49/7 54/24
**speak [6]** 30/24 38/7 44/19 45/11 45/15 50/4
**speaking [1]** 31/4
**SPECIAL [3]** 1/11 5/2 5/12
**specific [11]** 7/4 11/3 12/20 17/15 24/19 24/25 35/23 35/25 40/17 40/18 40/19
**specifically [3]** 31/18 51/19 51/24
**spend [1]** 28/16
**spent [3]** 29/4 29/4 53/4
**split [1]** 27/12
**spoken [1]** 11/23
**squarely [2]** 26/23 38/24
**ST [1]** 3/16
**stand [1]** 5/5
**standard [1]** 39/3
**standardized [2]** 38/17 38/17
**standards [1]** 30/9
**standing [2]** 5/5 49/15
**standpoint [2]** 51/13 51/14
**stands [1]** 37/22
**STANOCH [1]** 1/20
**Star [1]** 33/22
**start [5]** 7/21 8/1 17/9 32/6 44/18
**started [2]** 8/9 32/6
**starting [1]** 35/6
**starts [1]** 7/22
**state [14]** 3/7 12/16 12/22

**S**

**state...** [11]  17/6 17/11 17/15 17/20 20/22 35/23 35/25 48/21 50/14 50/18 52/3

**state's** [8]  11/11 14/19 17/9 22/4 39/5 47/17 47/24 50/6

**state-specific** [1]  17/15

**stated** [2]  33/9 41/9

**statement** [2]  32/10 41/12

**statements** [1]  32/5

**states** [30]  1/1 1/10 10/25 11/1 12/3 12/7 12/12 12/18 12/18 13/22 14/20 16/4 17/7 20/18 20/21 39/6 47/5 47/7 47/11 47/17 48/2 48/5 48/9 48/12 48/17 49/21 49/23 50/14 50/19 52/4

**states'** [4]  13/2 13/2 13/6 17/4

**statute** [5]  35/23 35/25 39/1 41/11 56/7

**stenography** [1]  1/25

**Steve** [1]  44/21

**STEVEN** [1]  2/23

**Stiles** [1]  45/2

**still** [6]  6/1 6/4 16/9 18/16 42/6 46/24

**stop** [2]  52/12 52/14

**STOY** [1]  2/19

**straightforward** [2]  36/19 37/18

**strategy** [3]  17/14 17/15 17/23

**Street** [6]  1/17 1/21 2/9 3/3 3/7 4/3

**Streets** [1]  1/7

**strikes** [1]  14/11

**structure** [1]  55/11

**sub** [2]  23/3 23/3

**sub-sub-subclass** [1]  23/3

**subclass** [1]  23/3

**subject** [3]  11/5 25/25 42/6

**submissions** [1]  29/14

**submit** [3]  13/8 30/13 33/25

**submitting** [1]  9/8

**subsidies** [7]  26/12 27/10 39/9 39/19 50/16 53/17 54/21

**subsidy** [4]  25/11 26/16 28/5 41/18

**substantial** [2]  10/9 20/25

**such** [1]  47/11

**Suffice** [1]  56/3

**sufficiently** [1]  50/1

**suggested** [1]  7/13

**suit** [1]  49/7

**Suite** [9]  1/17 2/9 2/13 2/24 3/16 4/3 4/7 4/11 4/15

**suits** [1]  5/8

**Summa** [1]  12/19

**SummaCare** [4]  10/25 12/13 26/4 47/6

**sure** [7]  19/23 24/6 29/10 34/12 40/6 54/8 54/13

**surprised** [1]  23/9

**survive** [1]  22/1

**Swedesboro** [1]  4/11

**system** [1]  5/16

**T**

**tables** [1]  34/2

**take** [11]  5/21 9/5 18/3 18/3 29/17 32/19 41/22 41/23 45/2 54/16 55/6

**taken** [4]  12/15 31/7 44/4 53/24

**taking** [1]  54/20

**talk** [5]  5/24 24/17 33/4 51/2 52/21

**talked** [1]  48/8

**talking** [8]  7/19 17/24 18/1 35/21 43/20 50/9 52/23 54/4

**teed** [1]  24/10

**tell** [3]  22/3 35/3 53/10

**tells** [1]  22/10

**ten** [2]  40/24 46/3

**ten-day** [1]  40/24

**tend** [1]  6/20

**terms** [5]  6/12 13/3 13/4 30/7 50/22

**test** [2]  28/1 28/2

**tested** [1]  29/11

**testimony** [1]  27/19

**Teva** [5]  2/25 2/25 3/4 23/14 44/22

**than** [10]  21/11 22/6 24/14 29/2 33/1 33/10 36/14 36/20 48/22 49/23

**thank** [17]  5/4 5/10 9/17 9/19 19/4 24/4 25/23 30/15 41/21 41/25 42/4 44/7 46/15 46/17 52/17 55/17 58/7

**Thanks** [2]  43/13 44/1

**their** [44]  10/13 12/7 12/17 15/13 17/17 18/10 18/11 18/11 18/20 18/25 20/25 23/11 23/24 27/18 27/22 28/1 28/1 28/2 28/25 28/25 30/3 30/11 31/4 31/5 31/7 32/14 33/22 33/23 34/1 34/2 34/3 38/8 38/10 38/22 39/13 40/19 42/23 49/7 50/7 53/23 54/13 54/17 54/23 55/4

**them** [29]  17/18 18/21 19/21 20/4 20/7 20/11 20/20 21/15 21/15 25/17 25/21 27/11 27/12 31/9 32/23 33/24 35/11 35/11 35/11 39/20 39/22 40/12 46/16 47/20 47/21 48/9 51/20 51/22 52/12

**then** [21]  5/20 7/25 8/20

8/23 17/5 21/19 22/13 22/24 24/2 25/4 25/17 32/19 33/4 34/14 35/14 39/25 43/22 46/3 47/17 49/17 51/3

**theories** [3]  22/9 28/1 28/2

**theory** [7]  16/23 16/23 27/23 29/25 37/22 38/8 53/7

**therefore** [2]  16/3 24/11

**these** [38]  8/16 14/13 15/24 18/18 20/18 21/6 21/13 25/13 26/12 26/25 28/13 28/18 28/19 28/24 29/3 29/4 31/24 33/5 33/18 38/17 39/9 39/9 39/15 39/18 40/9 42/18 44/16 48/5 48/9 48/12 49/23 51/17 53/7 53/15 53/24 54/21 55/3 55/7

**They'll** [2]  45/16 54/14

**they're** [29]  23/14 25/16 28/19 30/24 32/17 32/22 32/23 33/7 33/8 33/11 34/1 38/9 38/17 50/12 50/13 50/17 50/18 51/15 51/16 52/8 53/14 54/11 55/7 55/8 55/9 55/10 55/13 55/14 55/14

**they've** [5]  18/20 18/21 29/7 29/8 53/24

**thing** [4]  5/24 8/24 32/14 52/20

**things** [4]  5/16 19/7 44/16 50/22

**think** [89]

**thinks** [1]  47/4

**third** [8]  26/6 26/14 27/3 27/4 27/6 28/9 29/20 53/16

**third-party** [8]  26/6 26/14 27/3 27/4 27/6 28/9 29/20 53/16

**this** [133]

**THOMAS** [2]  1/11 5/2

**Thompson** [1]  45/4

**THORNBURG** [1]  4/6

**those** [33]  7/18 9/15 11/5 11/9 17/15 17/22 20/5 22/11 25/3 26/4 28/14 30/14 32/12 32/25 39/21 40/18 41/17 42/23 44/19 45/2 45/7 45/8 45/9 45/12 45/19 46/4 46/5 46/12 47/11 48/19 53/19 53/22 54/1

**though** [3]  5/24 11/19 52/21

**thought** [3]  9/25 36/18 40/15

**thousands** [3]  30/6 35/4 38/20

**three** [16]  3/3 5/13 16/6 16/15 23/13 24/19 25/1 25/3 25/7 25/24 28/4 29/6 30/13 33/16 41/17 45/24

**threshold** [1]  36/25

**through** [7]  19/16 20/12 21/12 22/12 26/12 55/16 55/16

**Thursday** [3]  1/8 57/11 57/19

**tie** [1]  33/8

**tied** [1]  32/24

**tiers** [1]  33/17

**tight** [1]  44/2

**time** [15]  5/6 11/10 15/24 16/9 21/9 21/17 23/19 24/7 24/14 35/8 39/24 45/9 46/13 53/5 56/23

**timing** [1]  25/5

**tired** [1]  24/23

**today** [14]  5/11 5/18 8/11 10/7 13/10 15/22 16/16 21/18 25/9 41/20 42/7 43/23 50/23 55/18

**today's** [1]  12/25

**TODD** [1]  3/12

**together** [3]  5/14 5/15 35/11

**Tolley** [1]  45/1

**too** [5]  6/15 14/10 38/22 41/13 53/24

**Torrent** [3]  3/24 3/25 23/15

**total** [1]  42/19

**totality** [1]  42/15

**towards** [3]  7/17 33/24 55/3

**TPP** [11]  9/23 10/21 12/9 13/5 15/5 15/10 21/25 24/19 32/9 51/19 54/17

**TPP's** [1]  12/21

**TPPs** [2]  12/20 22/10

**track** [2]  8/7 8/8

**Transcriber** [1]  58/18

**transcript** [2]  1/25 58/13

**transcription** [1]  1/25

**transferred** [1]  19/17

**TRAURIG** [2]  2/22 44/22

**treatment** [1]  19/15

**triable** [1]  39/11

**trial** [73]

**trials** [4]  7/3 7/4 23/20 23/21

**tried** [2]  12/9 21/9

**trip** [1]  58/8

**TRISCHLER** [7]  2/18 6/5 6/8 6/8 6/12 6/16 8/2

**true** [1]  17/8

**truth** [1]  37/8

**try** [5]  44/16 51/15 51/16 52/8 53/13

**trying** [10]  8/6 12/8 13/2 15/4 15/13 24/2 27/5 51/22 52/11 55/9

**turns** [1]  41/10

**two** [22]  5/12 5/13 12/12 12/13 13/2 13/20 16/6 17/4 17/5 17/5 20/14 20/25 26/3 40/7 45/8 45/12 48/2 48/5 48/9

**U**

**U.S** [1]  1/7

**Uh** [1]  14/4

**Uh-huh** [1]  14/4

**ULMER** [1]  4/2

**ultimately** [2]  11/18 12/5

**under** [5]  19/11 22/10 26/11 31/12 38/24

**understand** [15]  17/10 17/17 18/6 20/19 23/24 24/18 34/5 34/16 36/9 42/19 42/22 48/10 51/10 54/3 55/17

**understanding** [5]  6/21 23/10 40/21 40/22 43/17

**understands** [1]  55/12

**understood** [2]  9/18 10/6

**undiscoverable** [1]  29/24

**UNITED** [2]  1/1 1/10

**unjust** [3]  22/5 23/9 23/11

**unless** [3]  46/12 51/9 52/15

**untethered** [1]  8/14

**untied** [1]  8/14

**until** [1]  22/10

**unusual** [2]  25/22 37/2

**up** [25]  5/6 6/9 7/22 9/5 10/18 12/18 15/23 19/13 24/5 24/6 24/10 27/8 27/12 31/22 34/3 36/17 37/1 37/22 40/7 40/14 41/22 41/23 50/3 51/2 54/23

**update** [2]  45/6 45/8 45/19 45/20

**updates** [2]  46/4 46/5

**upon** [2]  30/19 53/13

**urgency** [1]  14/12

**us** [13]  4/14 5/15 7/24 16/11 19/20 22/4 22/10 40/25 41/5 42/3 45/4 51/4 53/10

**USA** [2]  2/25 3/21

**use** [8]  28/17 31/13 31/21 33/8 33/11 34/6 47/18 48/9

**used** [4]  15/7 26/25 34/15 38/6

**using** [1]  39/6

**usually** [2]  29/13 36/7

**utilize** [1]  9/21

**V**

**valsartan** [7]  1/3 31/18 32/22 32/23 33/2 33/19 49/17

**VANASKIE** [7]  1/11 5/2 6/19 9/5 50/15 53/5 57/12

**variety** [1]  22/9

**versus** [3]  28/18 28/24 29/4

**TX** [1]  4/16

**typical** [2]  26/6 32/9

**typically** [1]  17/8

**48/12 48/18 48/19

## V

**very [23]** 5/4 5/9 12/6 16/12 16/14 17/6 17/19 19/5 21/24 26/23 27/7 29/1 32/1 35/2 35/5 37/4 37/20 38/13 38/14 39/8 40/25 54/10 55/11
**VICTORIA [2]** 2/22 43/7
**view [7]** 12/15 18/6 18/7 24/10 48/13 48/20 53/23
**Vindigni [1]** 45/1
**Vine [1]** 4/3
**voice [1]** 24/23

## W

**W-A-L-L-A-E-R-T [1]** 45/19
**wait [1]** 8/19
**WALLACK [1]** 3/9
**Wallaert [2]** 45/18 45/21
**WALSH [2]** 3/2 3/2
**want [22]** 7/14 7/20 9/10 14/9 15/15 20/11 23/2 31/12 33/3 33/18 34/16 35/14 41/8 42/20 50/4 50/16 52/25 53/1 54/13 55/18 55/21 57/16
**wanted [4]** 5/24 9/20 10/7 32/5
**wanting [2]** 10/14 10/14
**wants [6]** 7/11 9/11 24/12 24/16 37/16 56/18
**warrant [1]** 49/16
**warranty [5]** 11/3 14/25 22/2 22/3 49/18
**Washington [2]** 2/16 3/13
**wasn't [1]** 36/6
**way [12]** 7/22 14/16 17/18 19/13 19/24 21/3 24/24 27/11 27/12 38/12 41/13 50/5
**Wayne [1]** 4/11
**we'd [3]** 24/14 37/10 41/3
**we'll [14]** 16/3 21/14 21/14 21/20 43/5 43/25 44/16 45/2 45/25 46/8 46/12 46/16 51/2 56/8
**we're [50]** 5/20 5/23 7/4 7/17 8/8 8/11 8/15 8/19 12/8 12/11 12/25 13/10 14/10 16/8 17/5 17/24 18/1 19/25 20/24 23/19 24/2 27/21 28/3 28/21 29/11 31/19 35/6 35/21 37/15 39/2 39/14 39/20 40/2 40/2 42/25 43/8 43/20 44/12 45/2 48/16 48/17 48/17 49/13 49/25 50/3 50/9 52/3 52/10 52/14 58/4
**we've [20]** 5/13 10/9 10/23 14/17 14/22 15/23 16/16 20/2 20/7 20/8 20/17 20/24 21/6 22/8 37/3 37/4 43/18 47/20 47/20 50/9

**Wednesday [1]** 57/9
**week [2]** 41/20 57/15
**weeks [4]** 16/6 21/6 40/7 50/10
**weigh [1]** 10/20
**weighs [2]** 16/1 35/1
**welcome [2]** 9/4 36/24
**well [25]** 6/19 7/18 8/15 10/17 14/9 14/20 16/12 20/17 22/24 24/5 24/9 24/23 32/1 33/16 34/22 34/25 40/5 44/9 46/23 47/19 48/7 50/17 53/23 55/23 56/24
**whatever [2]** 50/20 57/16
**whenever [1]** 57/24
**whether [15]** 7/12 7/14 13/1 16/18 16/22 27/23 34/14 37/21 37/22 39/8 39/18 39/20 41/16 47/15 50/13
**which [45]** 7/12 10/13 10/15 11/6 11/11 11/23 12/12 12/13 14/3 16/2 20/10 20/11 20/17 21/12 21/17 22/1 22/4 22/9 22/11 22/12 25/3 26/1 28/23 29/7 31/4 35/23 36/3 36/16 37/1 37/11 37/21 38/1 38/3 38/24 43/18 48/14 50/6 51/18 51/25 52/2 54/22 54/25 55/10 57/11 57/18
**while [1]** 57/8
**WHITELEY [2]** 1/19 1/20
**who [15]** 6/9 8/21 11/13 13/20 23/12 29/18 30/20 30/20 38/4 38/5 38/7 42/17 46/19 46/21 55/12
**who's [5]** 8/12 19/13 19/14 38/4 44/19
**whole [2]** 20/3 39/25
**Wholesaler [1]** 4/4
**wholesalers [1]** 23/12
**whom [2]** 20/25 47/8
**whose [1]** 31/23
**why [11]** 25/18 25/20 44/18 47/17 48/9 50/25 52/13 54/1 55/13 55/14 55/14
**wide [1]** 7/15
**will [43]** 5/21 10/24 11/7 11/13 11/18 12/15 13/14 16/9 18/3 21/12 21/17 21/20 21/23 21/24 22/1 22/7 22/7 22/16 22/20 22/22 22/25 23/3 23/4 23/18 23/22 32/18 34/24 38/1 38/3 38/7 38/24 39/6 41/15 41/22 41/23 47/24 53/22 53/23 54/14 56/1 57/7 57/8 58/1
**WILLIAM [1]** 3/9
**Williams [1]** 45/6
**WILSON [1]** 2/8
**wish [4]** 10/20 19/19

19/19 45/15
**withdraw [1]** 45/21
**withhold [2]** 30/12 41/2
**within [1]** 38/18
**without [3]** 9/10 33/10 56/24
**witness [1]** 9/9
**won [1]** 52/18
**wonderful [3]** 5/14 5/18 5/18
**words [2]** 35/23 54/13
**work [2]** 6/15 15/23
**working [3]** 5/16 7/17 23/20
**works [1]** 57/25
**worried [1]** 49/25
**worry [3]** 5/15 5/18 49/24
**worthlessness [2]** 16/23 37/21
**wrapped [1]** 34/3
**writings [1]** 10/4
**wrong [4]** 50/5 51/17 52/13 54/14

## Y

**Yeah [2]** 56/3 57/1
**year [2]** 17/25 24/3
**years [3]** 5/12 5/13 5/13
**yes [12]** 9/17 16/13 16/13 19/6 22/8 24/22 28/7 35/18 43/6 48/3 54/5 58/3
**yet [3]** 24/23 34/20 42/17
**York [18]** 2/16 3/24 3/24 12/12 13/21 26/22 38/24 39/3 48/19 48/20 48/23 49/19 49/23 51/1 51/8 52/4 52/14 54/24
**you [108]**
**you'll [5]** 24/8 31/2 31/15 50/4 58/1
**you're [11]** 7/19 9/8 17/8 25/21 44/10 52/2 52/13 52/23 54/16 57/16 57/17
**you've [3]** 9/7 36/22 55/20
**younger [1]** 6/11
**youngest [1]** 6/11
**Yount [1]** 46/10
**your [115]**
**Yvonne [1]** 46/9

## Z

**ZALMAN [2]** 2/12 31/23
**zero [1]** 14/14
**ZHP [3]** 2/17 23/14 43/18