# Exhibit 1

2020 WL 5802419
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Alexander STROSS, an individual, Plaintiff,
v.
NETEASE, INC., a Cayman Islands
Corporation; and Does 1 through 10, Defendants.
Ralph Ledergerber, an individual, Plaintiff,
v.
NetEase, Inc., a Cayman Islands Corporation;
and Does 1 through 10, Defendants.
John Walmsley, an individual, Plaintiff,
v.
NetEase, Inc., a Cayman Islands Corporation;
and Does 1 through 10, Defendants.
Bernard Kühmstedt, an individual, Plaintiff,
v.
NetEase, Inc., a Cayman Islands Corporation;
and Does 1 through 10, Defendants.

No. CV 20-00861-AB (PJWx) Stross, No. CV 20-00862-
AB (PJWx) Ledergerber, No. CV 20-00863-AB (PJWx)
Walmsley, No. CV 20-02044-AB (PJWx) Kühmstedt
|
Signed 08/20/2020

**Attorneys and Law Firms**

Elina Eteri Kharit, Stephen M. Doniger, Justin M. Gomes, Scott A. Burroughs, Doniger Burroughs, Venice, CA, for Plaintiff.

Matthew P. Lewis, White and Case LLP, Los Angeles, CA, Jeremy T. Elman, White and Case LLP, Palo Alto, CA, Daniel Ledesma, Pro Hac Vice, Stefan Mentzer, Pro Hac Vice, Timothy F. Keegan, Pro Hac Vice, White and Case LLP, New York, NY, for Defendants.

**ORDER (1) DENYING PLAINTIFFS' REQUESTS
FOR JUDICIAL NOTICE; (2) DENYING
DEFENDANT'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINTS FOR LACK OF PERSONAL
JURISDICTION, IMPROPER VENUE, *FORUM
NON CONVENIENS*, AND FOR FAILURE
TO STATE A CLAIM; AND (3) DENYING
DEFENDANT'S REQUEST FOR LEAVE TO
FILE A SUPPLEMENTAL DECLARATION**

ANDRÉ BIROTTE JR. UNITED STATES DISTRICT COURT JUDGE

**I. INTRODUCTION**

\*1 Before the Court are Defendant NetEase, Inc.'s ("Defendant") Motions to Dismiss the Complaints of Plaintiffs Alexander Stross ("Plaintiff" or "Stross") ("MTD," Dkt. No. 21-1), Ralph Ledergerber ("Ledergerber") (MTD, Dkt. No. 24-1), John Walmsley ("Walmsley") (MTD, Dkt. No. 21-1), and Bernhard Kühmstedt ("Kühmstedt") (MTD, Dkt. No. 24-1) for lack of personal jurisdiction, improper venue, and *forum non conveniens*. Defendant moves to dismiss only Plaintiff Stross' Complaint for failure to state cognizable copyright infringement claims. Also before the Court are the four plaintiffs' (collectively, "Plaintiffs") three consolidated Requests for Judicial Notice. ("RJN," Dkt. No. 29; "RJN Suppl. 1," Dkt. No. 30; "RJN Suppl. 2," Dkt. No. 31 (collectively, "RJNs")).

Plaintiffs filed a consolidated opposition to Defendant's Motion to Dismiss. ("Opp'n," Dkt. No. 28). Defendant filed a consolidated reply to Plaintiffs' opposition ("Reply," Dkt. No. 32) and consolidated objections to Plaintiffs' Requests for Judicial Notice. ("RJN Opp'n," Dkt. No. 33).[1] The Court held a hearing on August 4, 2020. For the reasons stated below, the Court **DENIES** Plaintiffs' Requests for Judicial Notice and **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint.[2]

**II. BACKGROUND**

\*2 Plaintiffs are four individuals who advance separate actions arising out of Defendant's purported copyright infringement of their photographs. All four Plaintiffs bring separate copyright infringement lawsuits against Defendant that have been consolidated solely for the purpose of this Motion to Dismiss. All Plaintiffs further seek to recover damages for direct copyright infringement and for vicarious or contributory copyright infringement under Section 504(c)(2) of the Copyright Act (17 U.S.C. § 504(c)(2)). The following facts are taken primarily from allegations in Plaintiff Stross' Complaint, with some references to the other Plaintiffs' Complaints, where different. (Complaint ("Compl."), Dkt. No. 1).

Plaintiff Stross from Austin, Texas is a professional architectural photographer. (Compl. ¶¶ 4, 13). Plaintiff Ledergerber from Adelaide, Australia is a travel and nature photographer.[3] Plaintiff Walmsley from the United Kingdom is a documentary filmmaker and photographer.[4] Plaintiff Kühmstedt from Munich, Germany is a commercial photographer known for his celebrity photos.[5] Defendant is a Chinese internet technology company incorporated in the Cayman Islands with its principal place of business in China. (Compl. ¶ 5).

In or around April 2017, sixteen of Stross' photographs, one of Ledergerber's photographs, two of Walmsley's photographs, and three of Kühmstedt's photographs ("the Subject Photographs") were published without Plaintiffs' permission on the for-profit website www.163.com. (*Id.* ¶ 13).[6] Plaintiffs are the sole owners of the exclusive rights to all of the Subject Photographs, and have registered all photographs with the U.S. Copyright Office. (*Id.* ¶¶ 16–46).[7]

Plaintiffs assert that Defendant accessed the Subject Photographs by viewing them on Plaintiff's website, publications, over the internet, or through a third-party source. (*Id.* ¶ 51). Plaintiffs also maintain that Defendant operates or has contracted to operate various servers around the United States through its subsidiary companies. (*Id.* ¶¶ 14–15). Specifically, Plaintiffs allege that Defendant accessed the photographs with assistance of NetEase Information Technology ("NetEase IT"), Defendant's California subsidiary, via an online search-and-copy campaign. (*Id.*). Additionally, Plaintiffs claim that Defendant has directed activities toward the United States by: (1) setting up a California subsidiary, (2) maintaining an investor relations contact in New York, (3) placing itself on a New York-based stock exchange (specifically, the NASDAQ Global Select Market), (4) regularly filing reports with the United States Securities and Exchange Commission, and (5) contracting with Quantil Networks ("Quantil") to deliver content to the market of Chinese-speaking viewers in the United States through U.S.-based servers. (*Id.* ¶¶ 6, 8, 10).

On January 28, 2020, Plaintiffs Stross, Walmsley, and Ledergerber filed Complaints in this Court seeking damages for direct copyright infringement and vicarious or contributory copyright infringement under Section 504(c)(2) of the Copyright Act. Plaintiff Kühmstedt filed his Complaint on March 2, 2020 for the same. On April 17, 2020, Defendant filed this Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(2), arguing that this Court lacks personal jurisdiction over Defendant. (MTD at 1).[8] In the alternative, Defendant moves to dismiss Plaintiffs' four Complaints on improper venue and *forum non conveniens* grounds. (*Id.* at 1). Finally, Defendant moves to dismiss Plaintiff Stross' Complaint on 12(b)(6) grounds. (*Id.*).

**\*3** On June 19, 2020, Plaintiffs filed a consolidated Request for Judicial Notice and a consolidated opposition to Defendant's motion. (RJN; Opp'n). On June 23 and 26, 2020, respectively, Plaintiffs filed second and third supplemental Requests for Judicial Notice. (RJN Suppl. 1–2). On July 2, 2020, Defendant filed a consolidated reply to Plaintiffs' opposition and objections to Plaintiffs' Requests for Judicial Notice. (Reply; RJN Opp'n). On July 8, 2020, Plaintiffs filed a consolidated sur-reply to Defendant's reply. (Dkt. No. 34).

### III. DISCUSSION

The Court now turns to analyze Defendant's four grounds for dismissal: (1) lack of personal jurisdiction, (2) improper venue, (3) *forum non conveniens*, and (4) failure to state cognizable copyright infringement claims. (MTD at 1).

#### A. Lack of Personal Jurisdiction

##### a. Legal Standard

Rule 12(b)(2) provides a basis for moving to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant moves to dismiss, the plaintiff bears the burden of demonstrating the court's jurisdiction over the moving defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, if the defendant's motion is "based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). That is, "the plaintiff need only demonstrate facts [in his Complaint] that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Although the uncontroverted allegations in the plaintiff's complaint must be taken as true, the plaintiff cannot simply rely on the bare allegations of the complaint. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Indeed, "[i]f the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and declarations." *Resnick v. Rowe*, 283 F. Supp. 2d 1128, 1132 (D. Haw. 2003). Absent controverted factual allegations, the Court assumes that the uncontroverted allegations in the plaintiff's complaint are true, and conflicts between the parties' declarations must be resolved in the plaintiff's favor. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

A court may exercise personal jurisdiction over a Defendant under Rule 4(k)(2) if: (1) the claim against Defendant arises under federal law; (2) the Defendant is not "subject to the personal jurisdiction of any state court of general jurisdiction"; and (3) the Court's exercise of personal jurisdiction comports with due process. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007); Fed. R. Civ. P. 4(k)(2). [9]

### b. Offensive Non-mutual Collateral Estoppel

**\*4** In its Motion to Dismiss, Defendant argues that it cannot be subject to personal jurisdiction on two distinct grounds. First, Defendant argues that Plaintiffs have conceded the lack of general jurisdiction in their respective Complaints. (MTD at 2). Second, Defendant argues that the Court cannot properly exercise either specific personal jurisdiction or Rule 4(k)(2) jurisdiction over Defendant because: (1) Defendant did not purposefully direct its activities toward California or the United States; (2) Plaintiffs' claims do not arise out of Defendant's U.S.-or California-based contacts; and (3) the exercise of personal jurisdiction over Defendant would be unreasonable. (*Id.* at 3–19). In sum, Defendant argues that, because the Court lacks personal jurisdiction over Defendant, Plaintiffs' Complaints should be dismissed under Rule 12(b)(2). (*Id.* at 2).

In their opposition, Plaintiffs expressly "concede that [Defendant] lacks sufficient contacts with any individual state to be subject to jurisdiction under traditional rules of jurisdiction." (Opp'n at 5). However, Plaintiffs also contend that Defendant is collaterally estopped from raising *any* jurisdictional defense because another district court in *Michael Grecco Productions, Inc. v. NetEase, Inc.*, No. 19-cv-01852-VC, 2019 WL 3245872 (N.D. Cal. July 3, 2019) ("*Grecco*") expressly ruled on whether, and ultimately found that, Defendant was subject to personal jurisdiction under Rule 4(k)(2). (*Id.* at 2).

Defendant argues that the Northern District's holding in *Grecco* should not bar its jurisdictional defense here because the jurisdictional issues in this proceeding and in *Grecco* are distinct. (Reply at 1–3). Specifically, Defendant contends that the issues are not identical because: (1) Defendant did not raise a *forum non conveniens* defense in *Grecco* (but it has here); (2) Defendant submitted a declaration controverting some of Plaintiff's key jurisdictional facts in this case (but did not do so in *Grecco*); (3) none of the plaintiffs in this action reside in California (but the plaintiff in *Grecco* did); and (4) courts have inconsistently ruled on the issue of whether Defendant is subject to personal jurisdiction in the United States. (*Id.* at 2–3). The Court finds Defendant's arguments unavailing and holds that Defendant is collaterally estopped from raising a personal jurisdictional defense under Rule 4(k)(2).

"Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law if the same issue was determined in prior litigation." *Resolution Tr. Corp. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999). The party claiming estoppel must demonstrate that: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits" of the first case. *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012)).

District courts have broad discretion in determining when offensive non-mutual collateral estoppel applies. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). Thus, in addition to addressing the requisite collateral estoppel elements, the Court may also consider whether: (1) 'the plaintiff had the incentive to adopt a 'wait and

see' attitude in the hope that the first action by another plaintiff would result in a favorable judgment' which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first and 'that could readily cause a different result.' " *Syverson v. Int'l Bus. Mach. Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) (quoting *Parklane*, 439 U.S. at 330–31).

### i. Collateral Estoppel Factor 1: Identical Issues

**\*5** Defendant insists that the jurisdictional issues presented in this Motion and in *Grecco* are distinct, so *Grecco* cannot bar Defendant from raising lack of personal jurisdiction as a defense. (Reply at 1–2). On nearly identical facts and pleadings, a district court in *Grecco* found that Defendant's U.S. contacts were sufficient to establish personal jurisdiction under Rule 4(k)(2). *See Michael Grecco Prods., Inc.*, 2019 WL 3245872 at \*1. Because courts have repeatedly held that jurisdictional determinations are "issues" within the meaning of "issue preclusion," here the Court finds that the relevant *issues* presented in both proceedings—whether Defendant is subject to personal jurisdiction under Rule 4(k)(2)—are identical. *See Hunter Douglas, Inc. v. Nien Made Enter. Co. Ltd.*, No. CV 16-01308-SJO (Kx), 2016 WL 6822310, at \*5–6 (C.D. Cal. May 23, 2016) (finding that a previous jurisdictional determination precluded a plaintiff from bringing a claim against a defendant); *Reddy v. Gilbert Med. Transcription Serv., Inc.*, No. ED CV 15-104-JFW (DTBx), 2015 WL 4507608, at \*4 (C.D. Cal. July 23, 2015) (determining that, "pursuant to the principles of issue preclusion or collateral estoppel, Plaintiff cannot re-litigate the issue of personal jurisdiction" where the Court had previously concluded that it lacked personal jurisdiction over the defendant and where the present action arose out of the same nucleus of facts); *see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that *principles of res judicata apply to jurisdictional determinations*—both subject matter and personal.") (emphasis added); *Segal v. Am. Tel. & Tel. Co., Inc.*, 606 F.2d 842, 845 (9th Cir. 1979) (explaining that a prior determination of subject matter jurisdiction "prevented relitigation" of the same jurisdictional issue in a subsequent action).

Even if the Court evaluated the similarity of both jurisdictional issues using the *Restatement* factors set forth by the Ninth Circuit in *Howard v. City of Coos Bay*, the Court's conclusion would remain unaltered. To determine whether two issues are identical for collateral estoppel purposes, the Court looks at whether: (1) there is "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first"; (2) "the new evidence or argument involve[s] the application of the same rule of law as that involved in the prior proceeding"; (3) "pretrial preparation and discovery related to the matter presented in the first action [could] reasonably be expected to have embraced the matter sought to be presented in the second"; and whether (4) the claims are closely related. *Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 829 (9th Cir. 2018) (quoting *Howard*, 871 F.3d at 1041). "[T]hese factors 'are not applied mechanistically.' " *Id.* (quoting *Howard*, 871 F.3d at 1041). All that is required is that "the issues presented are in substance the same[.]" *Richey v. U.S. I.R.S.*, 9 F.3d 1407, 1410 (9th Cir. 1993). Here, three of the four factors weigh heavily in favor of a finding that the jurisdictional issues presented in both proceedings are identical.

#### 1. *Restatement* Factor 1: Substantial Overlap

The Court first asks whether there is "a substantial overlap between the evidence or argument to be advanced" in the two proceedings. *Sec. & Exch. Comm'n*, 906 F.3d at 829 (quoting *Howard*, 871 F.3d at 1041). As in *Grecco*, here Defendant moved to dismiss Plaintiffs' Complaints on grounds that Defendant is not subject to personal jurisdiction in the United States under Rule 4(k)(2). (*See* MTD at 1); *see also Michael Grecco Prods., Inc.*, 2019 WL 3245872 at \*1. However, unlike in *Grecco*, here Defendant provides evidence in the form of a declaration that directly controverts facts that were " 'essential to the [district court's] judgment' or [were] of controlling significance" in *Grecco*. *Reynaga v. Sun Studs, Inc.*, 97 F. App'x. 729, 730 (9th Cir. 2004) (quoting *Starker v. United States*, 602 F.2d 1341, 1346 (9th Cir. 1979)) (internal quotation marks omitted).

The *Grecco* Court found that the following factual allegations were sufficient to establish personal jurisdiction under Rule 4(k)(2):

- Millions of users in the United States access [Defendant's] websites;

**\*6** - [Defendant] contracted with a California-based company [Quantil] that operates servers throughout the United States to enable U.S. users to access the sites;

- [Defendant] employs a California-based wholly owned subsidiary, Netease IT, to conduct U.S. market research and curate content for its websites;

- [Defendant] is registered to conduct business in the State of Delaware;

- [Defendant] is listed on the NASDAQ Global Select Market in New York; and

- [Defendant] maintains an investor relations contact in New York.

*Michael Grecco Prods., Inc.*, 2019 WL 3245872 at *1.

Now, in its instant Motion, Defendant offers several new factual allegations, supported by a declaration of Defendant's Legal Coordinator (SEC and Corporate), that directly controvert some of the factual allegations that were essential to the *Grecco* Court's jurisdictional finding. Defendant declares that: (1) it does not maintain, own, or operate 163.com; (2) it has never maintained any servers for 163.com; (3) it does not oversee the daily operations of 163.com or direct or contribute to the content posted on 163.com; including Plaintiffs' images; and (4) it was unaware of Plaintiffs' images until the filing of Plaintiffs' Complaints. (MTD at 5–6); (Declaration of Yang Liu ("Liu Decl.") (Dkt. No. 21-2) ¶ 9). Defendant also attests that:

- [N]either [Defendant] nor NetEase IT ever engaged in a "search-and-copy" campaign, including finding or providing content, such as the accused images at issue, to Defendant (Liu Decl. ¶ 16);

- [Defendant] never accessed or posted the accused images (*id.*);

- NetEase IT is not a direct subsidiary wholly owned by [Defendant] (*id.* ¶ 14);

- NetEase IT does not provide market research or information collection for [Defendant] (*id.* ¶ 16);

- [Defendant] is not, and never has been, registered to do business in the State of Delaware, or in any other U.S. state (*id.* ¶ 8);

- NetEase IT does not work with [Defendant] to upload media to 163.com (*id.* ¶ 15);

- [Defendant] does not use, and has never used, Guangzhou NetEase Computer System Co., Ltd. ("Guangzhou") or Hangzhou Yaolu Technology Co., Ltd. ("Hangzhou Yaolu") as a data center, for web hosting, or for transit of information and content for 163.com, netease.com, or lofter.com (*id.* ¶ 19); and

- [Defendant] has never contracted with Quantil to serve U.S. users with access to 163.com (*id.* ¶ 12).

Defendant's declaration thus directly controverts key facts used by the *Grecco* Court to determine whether Defendant was subject to personal jurisdiction under Rule 4(k)(2). These facts include: (1) whether Defendant contracted with a California-based company that operates servers throughout the United States to enable U.S. users to access the sites; (2) whether Defendant employs a California-based wholly owned subsidiary, Netease IT, to conduct U.S. market research and curate content for its websites; and (3) whether Defendant is registered to conduct business in the State of Delaware. *See Michael Grecco Prods., Inc.*, 2019 WL 3245872 at *1.

Plaintiffs fail to supply the Court with any additional facts that might challenge the veracity of Defendant's allegations. Therefore, taking only Plaintiffs' remaining allegations as true, Defendant's allegations clearly controvert facts that were essential to the *Grecco* Court's jurisdictional analysis. *See Resnick*, 283 F. Supp. 2d at 1132. Thus, the Court finds that there is not a substantial overlap between the evidence and argument advanced in the two cases. *Cf. Reynaga*, 97 F. App'x. at 730 (finding that collateral estoppel was "applicable even though some facts differed in the two cases at issue, because the differing facts were not 'essential to the judgment' or 'of controlling significance' in the first case.") (quoting *Starker*, 602 F.2d at 1346); *Physicians for Integrity in Med. Research, Inc. v. Hamburg*, No. LA CV14–00755 JAK (JCx), 2014 WL 12591629, at *6 (C.D. Cal. Oct. 23, 2014) (finding substantial overlap between the

issues litigated in the first and second actions only where the arguments made in both proceedings were "largely identical" and where both actions arose from "substantially similar circumstances").

### 2. *Restatement* Factor 2: Same Rule of Law

**\*7** Notwithstanding the Court's finding on the first *Restatement* factor, the remaining three factors weigh heavily in favor of a finding that the issues presented in both cases are identical. Turning to the second factor, Defendant's present Motion clearly requires the Court to apply Rule 4(k)(2), the same legal rule disputed and adjudicated in *Grecco*. *See Michael Grecco Prods., Inc.*, 2019 WL 3245872 at \*1. Thus, this factor weighs in favor of a determination that that jurisdictional issues presented in *Grecco* and in this case are identical. *See Furnace v. Giurbino*, No. 1:11-cv-00012-LJO-DLB PC, 2013 WL 2190086, at \*3 (E.D. Cal. May 20, 2013) (finding that the "rule of law" factor weighed in favor of a finding that the issues presented in the first and second actions were identical where the court in the second action would have been required to apply the same jurisprudential underpinnings of the legal rule applied in the first action); *Cartmill v. Sea World, Inc.*, No. 10-cv-361-CAB (DHB), 2012 WL 13175846, at \*6 (S.D. Cal. July 25, 2012) (finding the "same rule of law" factor satisfied where Plaintiff's claims of constitutional violation in the prior and present action were both based on 42 U.S.C. section 1983).

Despite this similarity in the law to be applied in both cases, Defendant correctly notes that it did not raise a *forum non conveniens* defense in *Grecco*. (Reply at 2). Indeed, the *Grecco* Court only determined that personal jurisdiction existed under Rule 4(k)(2). *See Michael Grecco Prods., Inc.*, 2019 WL 3245872 at \*1. Therefore, Plaintiff overstates the issue at bar by claiming that Defendant is precluded from raising *any* jurisdictional defense. (Opp'n at 2). Because Defendant's *forum non conveniens* defense does not fall within the scope of *Grecco* Court's jurisdictional holding, as it was not raised in that prior action, Defendant cannot be collaterally estopped from raising it here. *See Kamilche Co. v. United States*, 53 F.3d 1059, 1063 (9th Cir. 1995) (holding that the defendant was collaterally estopped from arguing any legal theory *inconsistent* with the first court's holding); *see also* Restatement (Second) of Judgments § 27 ("[I]f the party against whom preclusion is sought did in fact litigate an issue ... and suffered an adverse determination, ...

new arguments may not be presented to obtain a different determination of *that issue.*"); 1B Moore's Federal Practice ¶ 0.443[2] ("Any contention that is necessarily *inconsistent* with a prior adjudication of a material and litigated issue ... is subsumed in *that issue* and precluded by the effect of the prior judgment as collateral estoppel.").

### 3. *Restatement* Factor 3: Pre-Trial Preparation & Discovery

Moving to the third factor, the Court determines that "pretrial preparation and discovery related to the matter presented in the first action," or *Grecco*, could "reasonably be expected to have embraced the matter sought to be presented" in this second action. *Sec. & Exch. Comm'n*, 906 F.3d at 829 (quoting *Howard*, 871 F.3d at 1041). Specifically, whether Defendant had established sufficient U.S. contacts for personal jurisdiction in *Grecco* could have addressed the issue Defendant now presents in this Motion. In *Reynaga v. Sun Studs*, the Ninth Circuit reasoned that because a plaintiff's new claim-related evidence *could reasonably have been discovered* at the time of the first case, plaintiff was collaterally estopped from bringing his employment discrimination claim. *See Reynaga*, 97 F. App'x. at 730 ("Reynaga's 'new' evidence of disparate treatment and the Company's sponsorship of the apprenticeship program could just as easily have been discovered at the time of *Sun Studs I*."); *see also id.* ("Litigants may not have a second opportunity to prove a fact or make an argument relating to an issue previously decided."). As in *Reynaga*, here Defendant had ample opportunity to present a declaration and additional evidence to contest personal jurisdiction in *Grecco*. Thus, the third *Restatement* factor weighs heavily in favor of a finding that the issues presented in both proceedings are identical. *See id.*; *see also XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 17-cv-03848, 2018 WL 2585436, at \*4 (N.D. Cal. May 8, 2018) ("It would defeat the principles of collateral estoppel for a party to avoid preclusion by simply offering facts and arguments it could have presented in an earlier case but chose not to."); *Cartmill*, 2012 WL 13175846 at \*6 ("The fact Plaintiffs may not have discovered all pre-existing facts in [the first action] does not evade the doctrine of collateral estoppel."); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254–55 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 1078 (1993) ("Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first.").

#### 4. *Restatement* Factor 4: Similarity of Overall Claim

**\*8** Finally, the fourth factor weighs in favor of a finding that the issues raised in both proceedings are identical because Defendant's overall claim that it is not subject to personal jurisdiction under Rule 4(k)(2) is identical to its overall claim raised in *Grecco*. See *Physicians for Integrity*, 2014 WL 12591629 at \*6 (finding that the claims made in the first and second actions were identical where the non-moving party's overall allegations "parallel[ed]" each other); *Cartmill*, 2012 WL 13175846 at \*6 (applying collateral estoppel where the "claims [were] not only closely related" but "[were] the same").

Therefore, the Court finds that, in light of the *Restatement* factors, the jurisdictional issues are identical in both this case and in *Grecco*. See *Reese v. Verizon Cal., Inc.*, No. CV 11–01934 SJO (JEMx), 2011 WL 13193421, at \*3 (C.D. Cal. Aug. 21, 2011) (finding that the plaintiff had alleged the same claim in both proceedings where the first and second actions "involve[d] the same rule of law, similar evidence and overlapping arguments").

#### ii. Collateral Estoppel Factor 2: Issue Was Actually Litigated

Defendant does not and cannot dispute whether the remaining three collateral estoppel elements are satisfied. First, the Court finds that the jurisdictional issue was actually litigated in *Grecco* because both the plaintiff there and Defendant submitted documents raising and contesting the issue.[10] See *Janjua v. Neufeld*, 933 F.3d 1061, 1067 (9th Cir. 2019) (finding that the issue was actually litigated where "it was raised, contested, and submitted for determination by the parties" in the prior proceeding); *cf.* *Mugomoke v. Hazuda*, No. 13-cv-00984-KJM-KJN, 2014 WL 4472743, at \*8 (E.D. Cal. Sept. 11, 2014) ("[I]t must be shown that the prior proceeding was adjudicative and adversarial in nature.").

#### iii. Collateral Estoppel Factor 3: Full & Fair Opportunity to Litigate

Second, the Court is unable to locate any due process defects or other procedural issues that might suggest Defendant was afforded anything but a full and fair opportunity to litigate the jurisdictional issue in *Grecco*. The Ninth Circuit has explained that:

> [i]n deciding whether an opportunity to litigate is 'full and fair,' a court must make a practical judgment based on at least two considerations. First, the court must compare the procedures in the prior and subsequent actions. If 'procedural opportunities unavailable in the first action ... could readily cause a different result' in the second action, then the results of the first action generally should not be given preclusive effect. Second, the court must consider the parties' incentives to litigate in the two actions. If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action.

*Maciel v. Comm'r of Internal Revenue*, 489 F.3d 1018, 1023 (9th Cir. 2007) (citations and parentheticals omitted).

**\*9** The procedural opportunities available to Defendant in the instant action are no different than those presented to Defendant in *Grecco*. Both the present and the prior actions are civil proceedings held in federal court. Further, "there is no reason to doubt the quality or fairness of the procedures employed by the U.S. District Court for the Northern District of California" in *Grecco*. *Robinson v. Brown*, No. 2:12–cv–1776 MCE DAD P, 2014 WL 1779460, at \*9 (E.D. Cal. May 5, 2014). Also, Defendant was unquestionably represented by counsel in *Grecco*.[11] Thus, procedural opportunities do not now exist that were previously unavailable.

Moreover, Defendant undoubtedly had an incentive to vigorously litigate its personal jurisdiction defense in the prior action, knowing that an adverse determination would subject itself to jurisdiction in U.S. courts. Therefore, the Court finds that Defendant had a full and fair opportunity to litigate the jurisdictional issue in *Grecco*. See *Robinson*, 2014 WL 1779460 at \*9 (finding that the party defending against estoppel had a full and fair opportunity to litigate the issue in the prior action where both proceedings were civil actions in federal court, the record in the first action lacked any indication of unfairness to the non-moving party, and where the non-moving party had an opportunity to vigorously litigate the issue in the first action); *Ross v. Alaska*, 189 F.3d 1107, 1112–13 (9th Cir. 1999) (finding that the plaintiff received a full and fair opportunity to litigate an issue in a

prior state court proceeding where the plaintiff was able to raise, fully brief, and argue the issue).

### iv. Collateral Estoppel Factor 4: Necessary to Decide on the Merits

Turning to the fourth and final collateral estoppel element, the jurisdictional issue was necessary because the district court needed to adjudicate it to decide the merits of the *Grecco* case. The Supreme Court has stated that "[a] determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009). In other words, but for the *Grecco* Court's finding that jurisdiction was proper, no merits judgment could have been reached. Cf. *Small v. Commanding Gen., Marine Corps Base, Camp Pendleton, Cal.*, 320 F. Supp. 1044, 1047 (S.D. Cal. 1970) (declining to decide the merits of the petitioner's constitutional claims where the petitioner had failed to establish that the court had jurisdiction over the dispute). Therefore, the Court finds that all of the requisite collateral estoppel elements have been met.

### v. Other Collateral Estoppel Considerations

Finally, the Court addresses Defendant's assertion that precluding Defendant's defense would be unfair as Defendant and its affiliate have prevailed in other lawsuits filed by the *Grecco* plaintiff. (Reply at 3 n.2). Defendant cites to the following cases to support its proposition:

- *Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp.*, 2:18-cv-03119-DSF-(RAOx), 2018 WL 6443082 (C.D. Cal. Sept. 24, 2018); and

- *Michael Grecco Prods., Inc. v. NetEase, Inc.*, No. 1:18-cv-10500 (S.D.N.Y. June. 12, 2018) ("NY Grecco Action").

*Id.*

Defendant's argument is unpersuasive for at least two reasons. First, Defendant's first-cited case was brought against NetEase IT, Defendant's purported subsidiary, *not* Defendant. Second, neither of the two cases Defendant cites expressly address the issue of whether Defendant is subject to personal jurisdiction under Rule 4(k)(2). Notably, Defendant's second-cited case concluded with Plaintiff's *voluntary dismissal* of the action *without prejudice*; there was no judicial merits determination on the issue of personal jurisdiction, or any other substantive issue for that matter, and the Court finds Defendant's representation that it "prevailed" as misleading. (*See* NY Grecco Action, Notice of Voluntary Dismissal (Dkt. No. 17)).

**\*10** Therefore, for the foregoing reasons, the Court finds Defendant's arguments unavailing and holds that Defendant is collaterally estopped from raising the lack of personal jurisdiction as a defense. *See Kamilche*, 53 F.3d at 1063 (finding that "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.") (quoting *Yamaha Corp. of Am.*, 961 F.2d at 254) (internal quotation marks omitted) (emphasis in original).

### B. Improper Venue

Defendant also moves to dismiss this case for improper venue pursuant to Rule 12(b)(3). (Opp'n at 2, n.1); Fed. R. Civ. P. 12(b)(3). Under 28 U.S.C. § 1391(c)(3), "a defendant not resident in the United States may be sued in any judicial district[.]" Because Defendant is a foreign corporation that is not domiciled in the United States, venue is proper in any judicial district. *See* Report of the Comm. on the Judiciary on H.R. 394, p.22 (Feb. 11, 2011) (explaining that 28 U.S.C. § 1391(c) "means that for a party resident abroad, whether a natural person or a corporation, any venue privilege against suit in a particular Federal district court would be eliminated, and the protection of the defendant from being sued in an inappropriate forum would be dependent upon whether the defendant was subject to personal jurisdiction in that district and to potential transfer under subsection 1404(a) of title 28."). Therefore, venue is proper in *this* district and, accordingly, the Court **DENIES** Defendant's Motion to Dismiss on 12(b)(3) grounds. *See Tatung Co., Ltd. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1051 (C.D. Cal. 2014) (finding that 28 U.S.C. § 1391(c)(3) precluded a foreign, non-resident defendant from raising improper venue as a defense); 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3810 (4th ed. 2020) (observing that the effect of 28 U.S.C. § 1391(c)(3) is that "non-residents of the United States simply may not object to venue."). [12]

### C. *Forum Non Conveniens*

Defendant argues that this case should be dismissed on *forum non conveniens* grounds because China serves as an adequate alternative forum and that the balance of private and public interest factors weighs in favor of dismissal. (MTD at 19). The Court strongly disagrees.

### a. Legal Standard

"The doctrine of *forum non conveniens* applies where a party argues that a suit filed in federal court would be more properly heard in a state or foreign forum." *Finsa Portafolios, S.A. DE C.V. v. OpenGate Capital, LLC*, 769 F. App'x. 429, 430 (9th Cir. 2019). "*Forum non conveniens* is an exceptional tool to be employed sparingly, not a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Boston Telecomms. Grp., Inc. v. Wood*, 588 F.3d 1201, 1206 (9th Cir. 2009) (quoting *Dole Food Co.*, 303 F.3d at 1118). "[T]he plaintiff's choice of forum is entitled to deference." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1177 (9th Cir. 2006). Accordingly, "[t]o prevail on a motion to dismiss based upon *forum non conveniens*, a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

**\*11**  The Ninth Circuit has "held that the mere 'presence of American plaintiffs ... is not in and of itself sufficient to bar a district court from dismissing a case on the ground of *forum non conveniens*.' " *Boston Telecomms. Grp.*, 588 F.3d at 1207 (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983)). Conversely, "[a] U.S. citizen plaintiff is entitled to less deference in his choice of forum if he does not reside in that forum." *Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950 (9th Cir. 2017). Still, "[f]or a U.S. citizen's choice of forum to be rejected, the private and public interest factors must *strongly* favor trial in a foreign country." *Id.* (quoting *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001)) (emphasis added).

### b. Adequate Alternative Forum

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225. "[A] plaintiff need not select the optimal forum for his claim, but only a forum that is not so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's convenience.' " *Tuazon*, 433 F.3d at 1180 (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000)). "[A]n alternate forum offering a 'clearly unsatisfactory' remedy is inadequate." *Carijano*, 643 F.3d at 1225 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 254 n.22 (1981)); *see also Lueck*, 236 F.3d at 1144 ("The effect of *Piper Aircraft* is that a foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").

Defendant contends that China serves as an adequate alternative forum because (1) Defendant "would be amenable to service in a case brought in China, under Chinese copyright law, alleging infringement of Plaintiffs' images" and (2) "China would provide some practical remedy for Plaintiffs' copyright infringement claims." (Reply at 12) (internal quotations and citation omitted). However, nowhere in its Motion to Dismiss or Reply does Defendant attempt to demonstrate *how* China would provide Plaintiffs with a sufficient remedy for their copyright infringement claims. Moreover, Defendant fails to "offer any proof as to the existence of the contract, copyright, trademark, and patent laws in China which would provide" Plaintiffs a sufficient remedy for their claims. *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co., Ltd.*, No. C 06-7541 PJH, 2007 WL 2403395, at \*8 (N.D. Cal. Aug. 20, 2007).

Instead of alleging specific facts that might permit the Court to further evaluate China's adequacy as an alternative forum, Defendant cites to several cases wherein courts found that China served as an adequate alternative forum to support Defendant's case that China might offer Plaintiffs a sufficient remedy for their copyright claims. (MTD 20–21; Reply at 12). But all of the cases Defendant cites are clearly distinguishable from the instant action. [13] Therefore, Defendant has not adequately shown that China offers Plaintiffs a sufficient remedy for Defendant's alleged wrongs and has thus failed to meet its burden of showing that China is an adequate alternative forum. *See Mintel Learning Tech., Inc.*, 2007 WL 2403395 at \*8 (finding that the defendant had not

adequately demonstrated that China provided an adequate alternative forum for the plaintiff's intellectual property claims, even where the defendant had pointed out that China had intellectual property laws that might govern the plaintiff's claims and where the plaintiff's trademark was registered with the Chinese trademark and copyright offices); *see also Beijing iQIYI Sci. & Tech. Co., Ltd. v. iTalk Global Comms., Inc.*, No. 6-19-CV-00272-ADA, 2019 WL 6876493, at *5 (W.D. Tex. Dec. 17, 2019) (finding that China was an *inadequate* alternative forum for a copyright and trademark dispute even where the defendant had demonstrated that China had intellectual property laws that might govern the plaintiff's claim).

### c. Private Interest Factors

**\*12** In addition to showing that an adequate alternative forum exists, Defendant must also demonstrate that balance of private and public interest factors favors dismissal. See *Ayco Farms, Inc.*, 862 F.3d at 950. "Unless the balance of both 'private interest' and 'public interest' factors *strongly favors* trial in the foreign country, a plaintiff's choice of forum will not be disturbed." *Mintel Learning Tech., Inc.*, 2007 WL 2403395 at *8 (emphasis in original). The private interest factors are:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'

*Ayco Farms, Inc.*, 862 F.3d at 950 (quoting *Lueck*, 236 F.3d at 1145).

Defendant contends that the private interest factors warrant dismissal here because: (1) this dispute concerns only foreign parties; (2) litigation will require both parties and their counsel to travel overseas; (3) the need to translate documents into English will impose significant cost burdens on both parties; (4) significant legal impediments exist with respect to taking discovery of Defendant in China; and (5) the U.S. forum risks the health and safety of the parties and their counsel in light of the COVID-19 pandemic. (MTD at 21–22).

In their opposition, Plaintiffs argue that the private interest factors weigh against dismissal because: (1) counsel for both parties are located in the United States; (2) depositions can be conducted remotely, "particularly in the face of the current public health crisis"; (3) the burden of translating documents counsels against litigating in China, as the four Plaintiffs each have documents that would otherwise need to be translated into Chinese; and (4) discovery challenges created by Chinese law would be merely replaced with the unavailability of comparable causes of action, damage remedies, and evidentiary rules. (Opp'n at 20).

The Court finds that the private interest factors, evaluated individually and in the aggregate, weigh heavily against dismissal on *forum non conveniens* grounds.

### vi. Factor 1: Residence of the Parties and the Witnesses

The first private interest factor—the residence of the parties and witnesses—weighs against dismissal. In a conclusory and sweeping manner, Defendant vaguely addresses this factor by claiming that this dispute only concerns foreign parties. (MTD at 21). Although only one of the four plaintiffs (Stross) is a U.S. resident, Plaintiffs' claims principally concern Defendant's U.S. contacts through Defendant's U.S. subsidiaries and internet servers. Therefore, it is fair for the Court to assume that some of the potential parties and witnesses likely reside in both the United States and in China. Further, "[t]his is a case in which witnesses are scattered around the globe" and "whether the case is tried in [China] or California, [the] parties will likely be forced to depend on deposition testimony in lieu of live testimony for at least some witnesses." *Boston Telecomms. Grp.*, 588 F.3d at 1210.

Thus, for the foregoing reasons, the Court finds that the residence of the parties and witnesses factor weighs against dismissal. See *King.com Ltd. v. 6 Waves LLC*, No. C–13–3977 MMC, 2014 WL 1340574, at *5 (N.D. Cal. Mar. 31, 2014) (finding that this factor weighed against dismissal where relevant witnesses might be located in the United States, despite the defendant's showing that it, and numerous witnesses, reside overseas); *cf. Boston Telecomms. Grp.*, 588 F.3d at 1210 ("A defendant need not specify in great detail the contents of each witness's testimony, but 'must provide enough information to enable the District Court to balance the parties' interests.' ") (quoting *Piper Aircraft Co.*, 454 U.S.

at 258); *Lueck*, 236 F.3d at 1143 ("[W]here the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof" because a "plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum.").

### vii. Factor 2: Convenience to the Litigants

**\*13** The second private interest factor—the forum's convenience to the litigants—also weighs against dismissal. Since Plaintiffs chose this forum, the Court assumes that the Central District of California is convenient for them. Thus, as Plaintiffs point out in their opposition, litigating this dispute in China would simply shift the inconveniences accompanying travel onto them. (*See* Opp'n at 20 ("[A]ny burden that a massive NASDAQ-listed media company would have litigating in the United States would pale in comparison to the burden Plaintiffs would have navigating the complex legal system in China, retaining Chinese counsel to pursue their claims, and securing foreign evidence to present in that tribunal.")) And again, as Plaintiffs state, counsel for both parties are located in the United States. (*Id.*). Therefore, the Court finds that the convenience factor weighs against dismissal. *See King.com Ltd.*, 2014 WL 1340574 at \*5 (finding that the convenience factor weighed against dismissal where "requir[ing] [Plaintiff] to bring its case in Beijing would simply shift the burden of appearing in court from defendants to [Plaintiff]," and where both parties were represented by attorneys located in the United States) (citations omitted).

### viii. Factor 3: Access to Physical Evidence

The third private interest factor—access to physical evidence —appears to weigh neutrally. Defendant argues that dismissal is appropriate here because there are significant legal impediments to taking discovery of Defendant in China. (MTD at 22). Defendant contends that China has a policy prohibiting the taking of depositions or other evidence for use in foreign courts absent approval from its Central Authority under the Hague Evidence Convention. (*Id.*). Thus, Defendant concludes that discovery of parties, non-parties, and witnesses "may be impossible" due to China's strict policing governing discovery. (*Id.*).

Notwithstanding the discovery challenges Plaintiffs may face if this case remains in the Central District of California, it is highly unlikely that Plaintiffs would be afforded any greater access to physical evidence if this case were dismissed and litigated in China. *See Beijing iQIYI*, 2019 WL 6876493 at \*4 ("Chinese courts permit only very limited discovery and rely almost exclusively on documentary evidence, rather than the testimony of witnesses."). Thus, this factor appears to weigh neutrally because both parties are likely to face evidentiary access issues, regardless of the chosen forum.

### ix. Factor 4: Whether Unwilling Witnesses Can Be Compelled to Testify

Because Defendant does not identify any witnesses who would be unwilling to testify at trial in the United States, this factor weighs against dismissal. *See CYBERsitter, LLC v. People's Republic of China*, No. CV 10-38-JST (SHx), 2010 WL 4909958, at \*7 (C.D. Cal. Nov. 18, 2010).

### x. Factor 5: Cost of Bringing Witnesses to Trial

The fifth private interest factor—the cost of bringing witnesses to trial—weighs against dismissal. Defendant states that "discovery concerning Plaintiff's allegations of infringement will require both parties and their counsel to travel overseas, at significant expense, for depositions and trial." (MTD at 21–22). However, Defendant fails to identify which witnesses it might *potentially* rely on at trial, "the substance of such witnesses' testimony[,] [or] why [said substance] is material to the case." *CYBERsitter, LLC*, 2010 WL 4909958 at \*7. Further and again, Defendant would simply shift the cost of transporting witnesses onto Plaintiff as "the cost of transporting friendly witnesses would be generally the same for [each] part[y], whether the trial took place in California or China." *Mintel Learning Tech., Inc.*, 2007 WL 2403395 at \*10. Finally, Defendant wholly fails to address whether the cost of transporting *any* potential witnesses from China to the United States would amount to "oppressiveness and vexation" to Defendant "out of all proportion to [Plaintiffs'] convenience." *Piper Aircraft Co.*, 454 U.S. at 241. Thus, for these reasons, this factor weighs against dismissal.

### xi. Factor 6: Enforceability of the Judgment

Because Defendant fails to address the enforceability of the judgment factor, it weighs against dismissal. *See* [CYBERsitter, LLC,](https://...) 2010 WL 4909958 at *7 (finding that the factor weighed against dismissal where the defendant did not address whether the alternative forum could impact the enforceability of the judgment).

### xii. Factor 7: All Other Problems

*14 The seventh private interest factor, addressing all other practical problems that may affect the ease and efficiency of trial, appears to weigh neutrally. Both parties will likely incur translation-related costs, regardless of the chosen forum. Moreover, both parties are equally disadvantaged by the various travel, health, and safety impediments brought by the COVID-19 pandemic, although Plaintiffs correctly note that different discovery and litigation tools can be conducted remotely in light of the current pandemic. (Opp'n at 20). Therefore, the Court finds that this factor weighs neutrally.

For the foregoing reasons, the Court finds that the balance of private interest factors weighs against dismissal.

### d. Public Interest Factors

"Public interest factors include (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (quoting *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703–04 (9th Cir. 1995) (internal quotation marks omitted).

Although inexplicit, Defendant appears to argue that the public interest factors support dismissal here because: (1) the Central District of California has a busy docket; (2) California generally and the local community specifically lacks a relation to or interest in this dispute; and (3) the People's Republic of China has an interest in "resolving this dispute concerning its residents." (MTD at 22–23).

The Court finds that four of the five public interest factors weigh heavily against dismissal on *forum non conveniens* grounds.

### i. Factor 1: Administrative Difficulties

In its Motion to Dismiss, Defendant emphasizes the widely known fact that the Central District of California has a "crowded docket." (*Id.* at 22). However, Defendant fails to show that Chinese courts might be any more efficient or less congested. Therefore, the Court finds that this factor weighs neutrally. *See BCS Bus. Consulting Servs. Pte. Ltd. v. Baker*, No. CV 19-6914-DMG (JPRx), 2020 WL 3643486, at *4 (C.D. Cal. Apr. 17, 2020) (finding that this factor weighed neutrally where the defendant identified that the existing forum was congested without showing that the alternative forum would be any less congested); *Mintel Learning Tech., Inc.*, 2007 WL 2403395 at *10 (same, and noting that "[t]he issue is not whether dismissal will reduce congestion in California, but whether a trial will be quicker in China because its docket is less crowded.").

### ii. Factors 2 & 3: Imposition of Jury Duty & Local Interest

As for the second and third factors, there is a significant local interest in resolving this controversy in the Central District of California because the events central to this litigation took place in California. Plaintiffs expressly allege that the infringing photos were filtered through an intricate network of servers and subsidiaries located specifically in California and in the United States more generally. (Compl. ¶¶ 8, 10, 14–15). Critically, "[a] forum has a significant interest in protecting the intellectual property of its citizens and businesses from infringement by foreign defendants." *Mintel Learning Tech., Inc.*, 2007 WL 2403395 at *11. Moreover, as Plaintiffs rightly underscored in their opposition, "the United States ... has an interest in the protection of its certificate of registration for copyright." *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662, 680 (C.D. Cal. 1993), *overruled on other grounds by Sun v. Taiwan*, 201 F.3d 1105 (9th Cir. 2000). Therefore, the second and third public interest factors weigh against dismissal. *See Mintel Learning*

*Tech., Inc.*, 2007 WL 2403395 at *11 (finding that these factors weighed against dismissal where the parties' dispute concerned intellectual property).

### iii. Factors 4 & 5: Forum Familiar with the Law & Avoidance of Unnecessary Problems

**\*15** Finally, the fourth and fifth factors weigh heavily against dismissal because the United States has well-established copyright laws that clearly govern in this case. Because a violation of U.S. copyright law would "necessarily be out of the purview of a Chinese court," this Court finds that the United States has a strong interest in having this dispute litigated in this forum. *Id.*.

Because the balance of public interest factors here weighs against dismissal, Plaintiffs' choice of forum should remain undisturbed. *Id.* at 8. Overall, Defendant has failed to show that China would provide an adequate alternative forum and that any of the private or public interest factors weigh in favor of dismissal. Since Defendant has not made "a clear factual showing that indicates oppression and vexation out of proportion with [Plaintiffs'] convenience, this [C]ourt should adjudicate this matter to protect the interests of its citizens." *Id.* at \*11. For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss on *forum non conveniens* grounds.

### D. Failure to State a Claim

Defendant argues that Plaintiff Stross alone has failed to state cognizable copyright infringement claims because he cannot plausibly allege that Defendant infringed on his copyrighted photographs, either directly or secondarily. (MTD at 24). [14] Specifically, Defendant argues that: (1) Defendant does not own, operate, or direct the operations of 163.com; (2) Defendant does not oversee the daily operations of 163.com or direct or contribute to the content posted on 163.com, including the alleged posting or display of Plaintiff's images; (3) Defendant was unaware of Plaintiff's images until he filed the complaint in this action; and (4) Plaintiff's other allegations of infringement, including participation with California-based NetEase IT in a "search-and-copy" campaign, are false. (*Id.* at 23–24). According to Defendant, because Plaintiff cannot demonstrate that Defendant directly or secondarily infringed on Plaintiff's copyrighted photos, Plaintiff's copyright infringement claims should be dismissed. (*Id.* at 23).

#### a. Legal Standard

Rule 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**\*16** A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

The court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on

the materials. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted). The court may also take judicial notice of matters of public record outside the pleadings and consider them in resolving a motion to dismiss. *Id.* at 689–90.

Typically, when a district court considers evidence outside the pleadings while ruling on a Rule 12(b)(6) motion to dismiss, it must convert that motion into a Rule 56 motion for summary judgment and allow both parties the opportunity to "present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998)). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908. [15]

### b. Plaintiff Stross Has Stated Plausible Copyright Infringement Claims

The Copyright Act of 1976 provides that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; ... (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106. " 'Anyone who violates any of the exclusive rights of the copyright owner,' that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work ... 'is an infringer of the copyright.' " *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (quoting 17 U.S.C. § 501(a)).

To prevail on a claim for copyright infringement, a plaintiff must establish that: (1) he owns a valid copyright, and (2) the defendant violated at least one exclusive right owed to him as a copyright holder under 17 U.S.C. § 106. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). In this action, Plaintiff Stross alleges ownership of valid copyrights for all sixteen of his photographs by providing a U.S. Copyright Office registration number for each photograph he purportedly owns. (Compl. ¶¶ 16–46). Because copyright registration certificates constitute *prima facie* evidence of a copyright's validity, the Court finds that Plaintiff has sufficiently plead ownership of his copyrighted photographs. *See Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1161 (C.D. Cal. 2018) (finding that a plaintiff had sufficiently plead ownership of its copyrights where it identified copyright registration numbers in its complaint). Thus, the question before this Court is whether Plaintiff alleged sufficient facts to demonstrate that Defendant plausibly violated at least one right owed to Plaintiff under 17 U.S.C. § 106.

#### i. Claim 1: Direct Copyright Infringement

**\*17** United States copyright law gives the owner of a valid copyright "the exclusive right to ... reproduce the copyrighted work in copies[.]" 17 U.S.C. § 106. Copies, in turn, are "material objects ... in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 101; *CoStar Realty Info., Inc. v. Field*, 737 F. Supp. 2d 496, 507 (D. Md. 2010). "Because, in most cases, direct evidence of copying is not available, a plaintiff may establish copying by showing that the infringer had access to the work and that the two works are substantially similar." *Shaw v. Lindheim*, 919 F.2d 1353, 1356 (9th Cir. 1990); *see Three Boys Music Corp v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000) (observing that "[p]roof of copyright infringement is often highly circumstantial"). In the Ninth Circuit,

> [d]etermining whether works are substantially similar involves a two-part analysis consisting of the 'extrinsic test' and the 'intrinsic test.' The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression. Before that comparison can be made, the court must 'filter out' the unprotectable elements of

the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject). The protectable elements that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works. The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.' To prevail, a plaintiff must prove substantial similarity under both tests. Only the extrinsic test's application may be decided by the court as a matter of law, so that is the only test relevant in reviewing the district court's ruling on a motion to dismiss.

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018) (citations omitted).

In his Complaint, Plaintiff Stross alleges that Defendant "accessed the Subject Photographs with the assistance of its California subsidiary NETEASE IT via an online search-and-copy campaign and then in or around April of 2017[.]" (Compl. ¶ 14). Plaintiff Stross also alleges that Defendant accessed the sixteen Subject Photographs via his website, publications, profiles, exhibitions, over the internet, including without limitation as accessed via a search engine, or through a third-party source. (*Id.* ¶ 51). Because Plaintiff Stross' Complaint "reflects the uses of and addresses (URLs) at which Defendant published the Subject Photographs without authorization," Plaintiff plausibly alleges that Defendant accessed his photographs. *McGucken v. Chive Media Group, LLC*, CV 18-01612-RSWL-KS, 2018 WL 3410095, at *3 (C.D. Cal. July 11, 2018) (finding that the plaintiff had demonstrated that the defendant had reasonably accessed the plaintiff's photographs where he had alleged that the photographs were available online and on his website, and where his complaint provided the websites and URLs where the infringing photographs were posted).

Nowhere in its Opposition or Reply does Defendant argue that the original photographs and their allegedly infringing copies are *not* substantially similar. Notwithstanding Defendant's apparent waiver of this issue, Plaintiff Stross clearly demonstrates that the infringing copies were substantially similar to the original photographs by providing visual comparisons of the infringing copies and of Plaintiff's original photographs in his Complaint. The Court finds that Plaintiff Stross has adequately demonstrated that all sixteen of his photographs are *objectively* identical to the allegedly infringing photographs posted on 163.com. *See id.* (finding that the plaintiff had properly alleged his original photographs were substantially similar to the infringing copies where he alleged that the defendant had identically copied the subject photographs without the plaintiff's authorization); *cf. Rentmeester*, 883 F.3d at 1119 ("What *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements. If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone.") (emphasis in original). Accordingly, the Court has stated a claim for direct copyright infringement.

### i. Secondary Liability – Vicarious and Contributory Infringement

**\*18** "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002). "A defendant is vicariously liable for copyright infringement if he (1) "enjoys a direct financial benefit from another's infringing activity" and (2) " 'has the right and ability to supervise' the infringing activity." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (emphasis omitted) (quoting *Napster*, 239 F.3d at 1022). " 'One who, [1] with knowledge of the infringing activity, [2] induces, causes or materially contributes to the infringing conduct *of another* may be liable as a contributory [copyright] infringer.' " *Ellison*, 357 F.3d at 1076 (emphasis and brackets in original) (quoting *Gershwin Pub. Corp. v.*

*Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).

The Court finds that the following facts set forth in Plaintiff Stross' Complaint support a finding that Plaintiff plausibly states a secondary copyright liability claim:

- Defendants "obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in the Subject Photographs." (Compl. ¶ 54).

- Guangzhou "is an Internet service provider ('ISP') which is either a subsidiary or affiliate of Defendant NETEASE and is used by NETEASE as a data center, for web hosting and for transit of information and content for the websites http://163.com and http://netease.com." (*Id.* ¶ 58)

- Hangzhou Yaolu "is an ISP which is used by Defendant NETEASE as a data center, for web hosting and for transit of information and content for the website http://lofter.com." (*Id.* ¶ 59)

- "The infringing images "are hosted by the above named ISP data centers and transmitted by these ISPs to servers in the United States through an agreement between Defendant NETEASE and Quantil Networks' delivery network ('Quantil'), making the infringing images at issue in this case available to viewers in the United States, including in New York, New York." (*Id.* ¶ 60)

- "Plaintiff is informed and believes and thereon alleges that Defendant NETEASE, through its agreements with the above-named ISPs and with Quantil, knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Photographs as alleged hereinabove." (*Id.* ¶ 61)

- "Plaintiff is informed and believes and thereon alleges that NETEASE had the right and ability to supervise the infringing conduct and had a direct financial interest in the infringing conduct. Specifically, it had the ability to oversee the development, publication, and distribution of the infringing imagery at issue and realized profits through the distribution and publication of the Subject Photographs." (*Id.* ¶ 62).

First, Plaintiff clearly states a plausible vicarious infringement claim by alleging facts suggesting that Defendant (1) enjoyed a direct financial benefit from its affiliates' infringing activities and (2) had the right and ability to supervise its affiliates' activities. (*Id.* ¶¶ 54, 58–59, 62). Alternatively, Plaintiff also states a plausible contributory liability claim by alleging facts suggesting that (1) Defendant knew about the infringing activity, and (2) plausibly induced, caused, or materially contributed to the infringing conduct of Defendant's affiliates. (*Id.* ¶¶ 58–62). Thus, the Court finds that the facts set forth in Plaintiff Stross' Complaint are sufficient to plausibly demonstrate contributory and vicarious copyright infringement liability.

**\*19** Thus, for the foregoing reasons, the Court finds that Plaintiff Stross has properly stated cognizable copyright infringement claims and **DENIES** Defendant's Motion to Dismiss on 12(b)(6) grounds.

### E. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss the Complaints of Plaintiffs Stross, Ledergerber, Walmsley, and Kühmstedt for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2), improper venue under Rule 12(b)(3), and *forum non conveniens*. The Court also **DENIES** Defendant's Motion to Dismiss Plaintiff Stross' Complaint for failure to state a claim under Rule 12(b)(6). The Court also **DENIES** Plaintiffs' Requests for Judicial Notice and **DENIES** Defendant's untimely Request for Leave to file Supplemental Declaration of Jacques Delisle.

**All Citations**

Slip Copy, 2020 WL 5802419

---

### Footnotes

| | |
|---|---|
| 1 | For clarity and convenience, the Court refers to Plaintiffs' consolidated opposition (Dkt. No. 28), Defendant's consolidated reply (Dkt. No. 32), Plaintiffs' consolidated RJNs, and Defendant's consolidated Objections to |

Plaintiffs' RJNs (Dkt. No. 33) from the *Stross* docket (No. 20-00861). Herein the Court also refers primarily to Plaintiff Stross' Complaint, which contains nearly identical allegations to those set forth in the other three plaintiffs' Complaints. (Dkt. No. 1).

2  The Court **DENIES** Plaintiffs' Requests for Judicial Notice because the documents sought to be noticed are unnecessary to resolve this motion. See *[Flores v. County of Los Angeles](https://...)*, 758 F.3d 1154, 1159 n.11 (9th Cir. 2014) (denying request for judicial notice where such notice "would not change [the Court's] analysis"); *[Santa Monica Nativity Scenes Cmte. v. City of Santa Monica](https://...)*, 784 F.3d 1286, 1298 n.6 (9th Cir. 2015) (denying requests for judicial notice "on the grounds that the documents to be noticed are irrelevant"). Further, for untimeliness, prejudice to Plaintiffs, fundamental unfairness, and the failure to articulate any reasonable excuse for the delay in filing, the Court also **DENIES** Defendant's Request for Leave to File Supplemental Declaration of Jacques Delisle, submitted on August 17, 2020, nearly two weeks after oral argument and more than four months after Defendant filed its Motions to Dismiss to supplement its *forum non conveniens* argument. (*See Stross* Dkt. No. 45, *Ledergerber* Dkt. No. 51, *Walmsley* Dkt. No. 47, and *Kühmstedt* Dkt. No. 48). Plaintiffs have objected to Defendant's request, appropriately explaining, among other things, that they did not have an opportunity to address Defendant's new 56-page expert declaration. (*See Stross* Dkt. No. 46, *Ledergerber* Dkt. No. 52, *Walmsley* Dkt. No. 48, and *Kühmstedt* Dkt. No. 49). Courts may exercise their discretion in declining to consider late-filed declarations, and the Court does so here. See *[Lujan v. Nat'l Wildlife Fed'n](https://...)*, 497 U.S. 871, 895–97 (1990) (finding that appellate court erred in ruling that the district court was compelled to accept late filed affidavits opposing summary judgment motion).

3  *Ralph Ledergerber v. NetEase, Inc. et al.*, CV 20-00862-AB (PJWx), (Compl., Dkt. No. 1, ¶¶ 4, 13).

4  *John Walmsley v. NetEase, Inc. et al.*, CV 20-00863-AB (PJWx), (Compl., Dkt. No. 1, ¶¶ 4, 13).

5  *Bernhard Kühmstedt v. NetEase, Inc. et al.*, CV 20-02044-AB (PJWx), (Compl., Dkt. No. 1, ¶¶ 4, 13).

6  Only the *Kühmstedt* Complaint lacks reference to the purported publication occurring in April 2017; no publication date is alleged.

7  Only the *Kühmstedt* Complaint alleges that, because all three of his purportedly infringed photographs do not qualify as a "United States work" within the meaning of [17 U.S.C. § 101](https://...), Kühmstedt is exempt from the registration requirements set forth at [17 U.S.C. § 411(a)](https://...). (*Kühmstedt* Compl. ¶¶ 17–19, 21–23, 25–27).

8  The *Ledergerber* MTD was filed on April 20, 2020 (Dkt. No. 24), the *Walmsley* MTD was filed on April 17, 2020 (Dkt. No. 21), and the *Kühmstedt* MTD was filed on April 29, 2020. (Dkt. No. 24).

9  [Rule 4(k)(2)](https://...) provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." [Fed. R. Civ. P. 4(k)(2)](https://...).

10  *See generally* Defendant Netease Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint; Memorandum of Points and Authorities in [Support Thereof, No. 3:19-cv-01852-VC, 2019 WL 4732690 (N.D. Cal. May 8, 2019)](https://...); Plaintiff Michael Grecco Productions, Inc's Opposition to Defendant Netease Inc.'s [Motion to Dismiss Plaintiff's Complaint, No. 3:19-cv-01852-VC, 2019 WL 4732689 (N.D. Cal. May 16, 2019)](https://...); Defendant Netease, Inc.'s Reply in [Support of its Motion to Dismiss Plaintiff's Complaint, No. 3:19-cv-01852-VC, 2019 WL 4732698 (N.D. Cal. June 18, 2019)](https://...).

| | |
|---|---|
| 11 | *See* Defendant Netease Inc.'s Notice of Motion and Motion to Dismiss Plaintiff's Complaint; Memorandum of Points and Authorities in Support Thereof, No. 3:19-cv-01852-VC, 2019 WL 4732690 (N.D. Cal. May 8, 2019). |
| 12 | Although 28 U.S.C. § 1400(a) controls venue for copyright infringement actions, the Supreme Court has held that "suits against aliens are wholly outside the operation of all the federal venue law, general and special." *Brunette Mach. Works Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 714 (1972). Therefore, venue is proper over a foreign corporate defendant in any judicial district, even in copyright infringement actions. *Id.*; *see Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. CV 318-055, 2019 WL 2407504, at *3 (S.D. Ga. June 6, 2019). |
| 13 | *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435–36 (2007) (finding that China was an adequate alternative forum to address a dispute between a Malaysian shipping company and a Chinese state-owned importer over alleged fraud which occurred overseas where (1) the physical evidence (the vessel and cargo) had been detained in China subject to a Chinese admiralty court order, and (2) a legal proceeding was first initiated in China before it was brought in the Eastern District of Pennsylvania); *CYBERsitter, LLC v. People's Republic of China*, No. CV 10-38-JST (SHx), 2010 WL 4909958, at *4–5 (C.D. Cal. Nov. 18, 2010) (finding that China was an adequate alternative forum for a trademark infringement dispute only where the moving party offered specific facts supported by a declaration showing that China could provide the plaintiffs a sufficient remedy); *King.com Ltd. v. 6 Waves LLC*, No. C-13-3977 MMC, 2014 WL 1340574, at *2 (C.D. Cal. Mar. 31, 2014) (finding that China was an adequate alternative forum only where Defendant had cited to Chinese case law suggesting that Chinese courts could provide the plaintiff with an adequate remedy); *New Classic Home Furnishings, Inc. v. Haining Nice Link Furnishings Co. Ltd.*, No., No. EDC 12-0125 JVS (OPx), 2012 WL 13015017, at *2 (C.D. Cal. June 4, 2012) (finding that China was an adequate alternative forum for contract disputes, not intellectual property disputes). |
| 14 | The Court again emphasizes that Defendant only moves to dismiss Plaintiff Stross' Complaint for failure to state a claim; the Complaints of Plaintiffs Ledergerber, Walmsley, and Kühmstedt face no 12(b)(6) challenges. |
| 15 | Defendant has not asked this Court to take judicial notice of any of facts that Defendant relies on to support its Motion to Dismiss on 12(b)(6) grounds. Thus, in light of the foregoing standards, the Court must look only at Plaintiff Stross' Complaint and supporting documents to evaluate the merits of Defendant's 12(b)(6) claim. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). |

**End of Document**                                           © 2022 Thomson Reuters. No claim to original U.S. Government Works.