# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Oral Argument Requested<br><br>Motion Day: November 21, 2022 |

## TPP TRIAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DATA RELEVANT TO PLAINTIFF'S ALLEGED DAMAGES AND TO SET DEADLINES FOR DAMAGES EXPERTS

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND .....................................................................................................5

ARGUMENT ..........................................................................................................9

I.    Legal Standard. ...........................................................................................9

II.    The TPP Defendants' Requests Are Highly Relevant To Plaintiff's
Theory Of Injury And Damages. ...............................................................10

    A.    Information Regarding Government Payments, Benefits, And
Subsidies Is Relevant to MSPRC's Actual Damages. ......................13

    B.    Information Regarding What Impact The Withdrawal Of At-Issue
Valsartan Had On The MAO Assignors' Alleged Losses Is Also
Highly Relevant To Injury And Damages. ........................................17

III.    The TPP Defendants' Requests Are Proportional to the Needs of the
Case. ...........................................................................................................19

    A.    The Issues At Stake In The Litigation Are Important And Likely To
Affect Other Cases In The MDL........................................................20

    B.    There Is a Significant Amount in Controversy. .................................21

    C.    Only MSPRC and Its Assignors Have Access to the Requested
Documents and Data. .........................................................................22

    D.    MSPRC Has Ample Resources............................................................22

    E.    The Requested Discovery Is Important to Resolve the Claims at Issue
in the TPP Trial. .................................................................................23

    F.    The Requested Discovery Involves Minimal Burden or Expense. .....23

IV.    The Court Should Set Deadlines with Respect to Damages Experts..........24

CONCLUSION......................................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aruanno v. Johnson*,
No. 2:14-1954-WJM-MF, 2020 U.S. Dist. LEXIS 71519 (D.N.J.
Apr. 23, 2020) ....................................................................................................9, 10

*Auto Chem Labs., Inc. v. Turtle Wax, Inc.*,
No. 3:07cv156, 2010 U.S. Dist. LEXIS 100677 (S.D. Ohio Sept.
24, 2010) ...................................................................................................................11

*Blum v. Positive Physicians Ins. Co.*,
Civil Action No. 2:20-cv-05423-SRC-CLWZ, 2021 U.S. Dist.
LEXIS 226064 (D.N.J. Aug. 17, 2021) ..............................................................10

*DIRECTV, Inc. v. Richards*,
No. 03-5606 (GEB), 2005 U.S. Dist. LEXIS 43764 (D.N.J. June
22, 2005) ...................................................................................................................10

*In re Eugenia VI Venture Holdings, Ltd. Litigation*,
649 F. Supp. 2d 105 (S.D.N.Y. 2008) ................................................................11

*Felix v. Ganley Chevrolet, Inc.*,
49 N.E.3d 1224 (Ohio 2015) ...............................................................................12

*Gen. Motors Acceptance Corp. v. Grady*,
501 N.E.2d 68 (Ohio Ct. App. 1985)...................................................................11

*Illinois Brick v. Illinois*,
431 U.S. 720 (1977)................................................................................................15

*JLJ Inc. v. Rankin & Houser, Inc.*,
2010-Ohio-3912 (Ohio Ct. App. 2010) ..............................................................12

*Josephs v. Harris Corp.*,
677 F.2d 985 (3d Cir. 1982) .........................................................................10, 19

*United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*,
 No. 3:13-2940, 2017 U.S. Dist. LEXIS 94571 (M.D. Pa. June 20,
 2017) ................................................................................................6

*In re Namenda Indirect Purchaser Antitrust Litig.*,
 No. 1:15-cv-6549 (CM) (RWL), 2022 U.S. Dist. LEXIS 149561
 (S.D.N.Y. Aug. 15, 2022) .............................................................*passim*

*Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*,
 No. 18-11273 (MCA)(JD), 2020 U.S. Dist. LEXIS 72077 (D.N.J.
 Apr. 23, 2020) ................................................................................20

*Ostano Commerzanstalt v. Telewide Sys., Inc.*,
 880 F.2d 642 (2d Cir. 1989) .............................................................11

*Pacini v. Macy's*,
 193 F.3d 766 (3d Cir. 1999) .............................................................10

*Sieger v Louis Zak & Powersystems Int'l, Inc.*,
 No. 19978/05, 35 Misc. 3d 1229(A), 2012 N.Y. Misc. LEXIS 2419
 (Sup. Ct. 2012)................................................................................11

*United States ex rel. Simpson v. Bayer Corp.*,
 No. 05-3895 (JLL)(JAD), 2020 U.S. Dist. LEXIS 263055 (D.N.J.
 Apr. 16, 2020) ................................................................................10

*Sturgeon v. PharMerica Corp.*,
 438 F. Supp. 3d 246 (E.D. Pa. 2020)..................................................6

*Stutman v. Chemical Bank*,
 95 N.Y.2d 24 (N.Y. 2000) .................................................................12

*United States v. Allergan*,
 746 F. App'x 101 (3d Cir. 2018) ........................................................6

*United States v. Kindred Healthcare, Inc.*,
 469 F. Supp. 3d 431 (E.D. Pa. 2020)..................................................6

**Statutes**

New York GBL § 340 ...............................................................................15

New York GBL § 349...........................................................................12, 15

New York GBL § 350 ..........................................................................................12, 15

Ohio Rev. Code Ann. § 1345.09 ............................................................................12

**Other Authorities**

42 C.F.R. § 422.254 ...........................................................................................8, 19

CMS, *Plan Communication User Guide for Medicare Advance Prescription Drug
  Plans* § 6.3 (Aug. 31, 2022), available at
  https://www.cms.gov/files/document/plan-communications-user-guide-august-
  31-2022-v162.pdf (last accessed Oct. 20, 2022) .........................................6, 7, 8

Fed. R. Civ. P. 26 ..........................................................................................9, 19, 20

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., Prinston Pharmaceutical Inc. d/b/a Solco Healthcare LLC, Solco Healthcare US, LLC, Teva Pharmaceuticals USA, Inc., Actavis Pharma, Inc., Actavis, LLC, and Torrent Pharma Inc. (collectively, the "TPP Defendants"),[1] move to compel the production of documents and data directly relevant to the contested question of damages in this case, and to set deadlines with respect to damages experts. At the Case Management Conference on October 6, 2022 (the "October 6 CMC"), the Special Master directed the parties to submit briefs detailing their respective positions. In accordance with the Special Master's instructions, the TPP Defendants have filed their Joint Motion to Compel Production of Documents and Data Relevant to Plaintiff's Alleged Damages and to Set Deadlines for Damages Experts (the "Motion"), and submit this Memorandum of Law in support of their Motion.

## INTRODUCTION

The Court has determined the first trial in this multi-district proceeding (the "TPP Trial") will be a single-plaintiff, non-class trial involving the claims of Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") for breach of warranty, fraud, and consumer protection against the TPP Defendants. The specific claims at

---

[1] Plaintiffs also purport to have sued foreign entities Teva Pharmaceutical Industries Ltd., an Israeli entity, and Torrent Pharmaceuticals Ltd., an Indian entity. These entities deny that this Court, or any U.S. court, has personal jurisdiction over them, and deny that they are proper defendants to the TPP Trial, as hereafter defined. Accordingly, they do not join in the present motion.

issue in the TPP Trial were assigned to MSPRC by two third-party payor ("TPP") assignors operating Medicare Advantage Organization ("MAO") health plans, Group Health Incorporated and Health Insurance Plan of Greater New York ("EmblemHealth") and Summacare, Inc. ("Summacare") (collectively, the "MAO Assignors"). The gravamen of MSPRC's theory of the case is that the TPP Defendants' withdrawal of certain generic valsartan-containing drugs (the "at-issue valsartan drugs") starting in 2018 due to the presence of trace amounts of nitrosamines caused economic injury to the MAO Assignors because they allegedly paid for or reimbursed the purchase of "worthless" drugs. Based on this core allegation, MSPRC seeks a windfall: the full amount paid or reimbursed by the MAO Assignors for the at-issue valsartan drugs at the point of sale going back to 2012.

To adequately evaluate and challenge this sweeping theory of injury, the TPP Defendants seek the following three categories of documents:

Request 2.   **Subsidy, Reimbursement, and Rebate Data**: Data [in Excel format] and reports reflecting subsidies, reimbursements, and rebates that You received from CMS [Center for Medicare and Medicaid Services], including but not limited to prescription drug event ("PDE") reports and all PDE payment records reflecting reimbursements and payments for valsartan-containing drugs, and other standard reports and data available through CMS which reflect payments made or received by You for any prescription drugs for Insureds enrolled in Your Plans during the Relevant Time Period, such as Monthly Membership Summary Reports, Plan Payment Reports, [and] Payment/Interim Plan Payment Records Reports.

Request 3.   **CMS Bids**: All materials submitted in connection with Your bid submissions to CMS as a sponsor for Medicare Part D prescription drug

plans for each of the contract years corresponding to the Relevant Time Period.

Request 4. **Internal Reporting**: Any internal reporting analyzing or reflecting projections and actual spend on prescription drugs under Your Plans during the Relevant Time Period.

Dkt. 2167 at 5; Dkt. 2167-1 at 2; Dkt. 2167-2 at 3, 5.

MSPRC has objected to all three Disputed Requests on grounds of relevance and proportionality, and further objects to Disputed Requests 3 and 4 on the grounds that they seek proprietary documents and data. These objections are meritless.

*First*, the Disputed Requests easily satisfy the liberal standard of relevance at the discovery stage, because they pertain directly to MSPRC's asserted damages and are likely to lead to information probative of whether MSPRC is claiming losses that its MAO Assignors did not in fact incur. Specifically, the Disputed Requests seek documents and data applicable to whether MSPRC is claiming damages for amounts paid by the ***government***, not the MAO Assignors, and whether MSPRC is claiming damages in excess of the amounts actually incurred by the MAO Assignors as a consequence of the TPP Defendants' withdrawal. As other courts overseeing TPP cases have made clear, these materials not only satisfy the broad relevancy standard at the discovery stage, but are also admissible at trial.

*Second*, MSPRC has not come close to carrying its burden of establishing its proportionality challenge, *i.e.*, that the requested information is disproportionate to the needs of this case. After all, the TPP Trial—the very first in this large multi-

district proceeding—is important and will likely have significant implications for other TPP cases pending before the Court. Further, the amount in controversy is high, as reflected by MSPRC's request for a full refund of all amounts paid or reimbursed by the MAO Assignors for the at-issue valsartan drugs for a period of six years—which is likely to be millions of dollars. Moreover, the information is important—indeed, critical—because it goes to the core of MSPRC's theory of injury, which the TPP Defendants have a fundamental right to refute and defend against at trial. And because only MSPRC has access to the requested information, and because MSPRC has ample resources as a well-heeled corporate plaintiff, the burden or expense of the proposed discovery does not outweigh its benefits.

*Third*, MSPRC's objection that the requested documents and data are proprietary is a red herring. Even assuming the information qualified as trade secret material, there is a protective order in place to protect its confidentiality, obviating any concerns regarding the sensitive nature of the materials.

In short, the TPP Defendants are seeking basic discovery to prepare for trial. Accordingly, the Court should grant the TPP Defendants' Motion and compel MSPRC to produce all documents and data responsive to the Disputed Requests.

Additionally, the TPP Defendants ask the Court to set deadlines with respect to the parties' respective damages experts for the TPP Trial. Case Management Order 29 ("CMO 29") [ECF No. 2154] does not set deadlines for damages experts.

Plaintiffs have taken the position that no deadlines should be set for damages experts until the Court rules on the pending motions for class certification. But the Court has repeatedly made clear that the TPP Trial will not be a class trial, and as such it is both pointless and inefficient to await a ruling on class certification before setting deadlines for damages experts in the TPP Trial, needlessly delaying the trial proceedings. The TPP Defendants propose a schedule for disclosure of damages experts and Rule 702/Daubert motions for damages experts running approximately seven weeks after the corresponding deadlines for other case-specific experts.

## BACKGROUND

The TPP Defendants' Motion seeks documents and data responsive to three Disputed Requests.

***Disputed Request 2*** seeks documents and data disclosing the amounts of the MAO Assignors' Medicare Part D payments from the government, the components of the payments, and the information needed to allocate and set off these government payments, subsidies, and reimbursements from the MAOs' payments for at-issue valsartan drugs. Specifically, Disputed Request 2 seeks data reflecting all subsidies, reimbursements, and rebates received by the MAO Assignors from CMS, including but not limited to all PDE reports and PDE payment records reflecting reimbursement requests and payments for valsartan drugs.

MAO Plans receive discrete "Part D payments in exchange for providing Medicare Part D coverage to Medicare beneficiaries." *See* CMS, *Plan Communication User Guide for Medicare Advance Prescription Drug Plans* § 6.3 (Aug. 31, 2022), available at https://www.cms.gov/files/document/plan-communications-user-guide-august-31-2022-v162.pdf (last accessed Oct. 20, 2022) ("*CMS Guide*").[2] Part D payments are comprised of 13 components reflecting discrete benefits, payments, subsidies, reimbursements, add-ons, and discounts paid by the government *specifically for prescription drug coverage*:

*Table 6-10:  Part D Payment Calculation Fields*

| Monthly Membership Detail Data File Field Names for Part D Payment Calculations | | | | |
|---|---|---|---|---|
| Item | Field | Size | Position | Description |
| 35 | Part D Low-Income Premium Subsidy (LIPS) Amount | 8 | 144-151 | Format -9999.99 |
| 37 | Medication Therapy Management (MTM) Add-On | 10 | 153-162 | Format -999999.99 |
| 66 | Part D RA Factor | 7 | 310-316 | Format NN.DDDD |
| 71 | MA Rebate Part D Basic Premium Reduction | 8 | 333-340 | Format -9999.99 |
| 72 | Part D Basic Premium Amount | 8 | 341-348 | Format -9999.99 |
| 73 | Part D Direct Subsidy Amount | 10 | 349-358 | Format -999999.99 |
| 74 | Part D Reinsurance Subsidy Amount | 10 | 359-368 | Format -999999.99 |

---

[2] The Court may take judicial notice of the *CMS Guide*. *See United States v. Allergan*, 746 F. App'x 101, 108 (3d Cir. 2018) (taking judicial notice of CMS administrative guidance); *United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 439 n.3 (E.D. Pa. 2020) ("Judicial notice of these documents is proper as the Court may take judicial notice of public records such as those issued by CMS[.]"); *United States ex rel. Lord v. NAPA Mgmt. Servs. Corp.*, No. 3:13-2940, 2017 U.S. Dist. LEXIS 94571, at *19 n.4 (M.D. Pa. June 20, 2017) (taking judicial notice of CMS manual. "[I]nformation found on government websites is widely considered both self-authenticating and subject to judicial notice. *Sturgeon v. PharMerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020).

| 75 | Part D LICS Subsidy | 10 | 369-378 | Format -999999.99 |
|---|---|---|---|---|
| 76 | Total Part D Payment | 11 | 379-389 | Format -9999999.99 |
| 78 | PACE Part D Premium Add-on | 10 | 392-401 | Format -999999.99 |
| 79 | PACE Part D Cost Sharing Add-on | 10 | 402-411 | Format -999999.99 |
| 85 | Part D Coverage Gap Discount Amount | 8 | 448-455 | Format -9999.99 |
| 90 | Part D Monthly Payment Rate | 9 | 477-485 | Format -99999.99 |

*CMS Guide* § 6.3, Table 6-10.

Notably, the documents and data requested by Disputed Request 2 are standardized materials that CMS requires as part of the calculation and reconciliation of annual Part D payments, and as part of the risk adjustment system for categorizing prescription drug conditions. The *CMS Guide* itemizes these materials. *See CMS Guide* §§ 3.7.4, 6.3.1-6.3.2, 6.4, 6.5, 6.6.1-6.6.11, 7.2. Relevant data and reports that MSPRC should be able to produce readily include, but are not limited to:

- Monthly Membership Reports (MMR)

- Monthly Membership Summary Data Reports (MMSR)

- Monthly Membership Summary Data Files (MMSD)

- Plan Payment Reports (PPR)

- Plan Payment Report/Interim Payment Data Files (IPPR)

- Payment Records Reports

- Payment Reconciliation System (PRS) annual reports detailing the annual reconciliation based on PDE records

- Risk Adjustment System (RAS) Prescription Drug Hierarchical Condition Category (RxHCC) Model Output Data Files

- RAS RxHCC Model Output Reports

- Medicare Advantage Organization (MAO) 004 Reports – Encounter

7

Data Diagnosis Eligible for Risk Adjustment

- Prescription Drug Event (PDE) Submittal File

- Prescription Drug Event (PDE) PDFS Response Data File

- Prescription Drug Event (PDE) DBC Cumulative Beneficiary Summary Report

- COB-OHI files and COB-OHI Supplement Records, which include National Drug Codes (NDCs) submitted by Patient Assistance Programs (PAPs).

*See CMS Guide* §§ 3.7.4, 6.4.3, 6.6, 7.2-7.4, 7.11. Transaction-level data for valsartan purchases may also be available through the Medicare Advantage Prescription Drug User Interface (MARx UI) annual or monthly reports. *See id.* § 6.

**Disputed Requests 3 and 4** seek information regarding MSPRC's "losses." Disputed Request 3 seeks the MAO Assignors' CMS bids as a sponsor for Medicare Part D prescription drug plans. These CMS bids are a key part of the enrollment process with CMS and are a prerequisite to initiate the Part D payment calculation process. *See CMS Guide* § 6.3. MAO Plans submit considerable data concerning their anticipated prescription drug payments as part of their bids, including estimated monthly amounts to provide prescription drug coverage, amounts to provide supplemental benefits, actuarial valuation, and estimated revenue, including administrative costs and return on investment. *See* 42 C.F.R. § 422.254.

Request 4 seeks the MAO Assignors' internal reporting analyzing or reflecting projections and actual spend on Part D prescription drugs. These

8

documents reflect the MAO Assignors' tracking of their own prescription drug spend, including whether they have allocated their spend and/or the accompanying government payments and reimbursements by drug.

Thus, disclosure of the CMS bids and internal reporting is likely to disclose the MAO Assignors' expectations with respect to prescription drug spending prior to the withdrawal of the at-issue valsartan drugs, and whether the MAO Assignors' actual spend corresponded to their expectations following the withdrawal.

## ARGUMENT

### I.    Legal Standard.

Federal Rule of Civil Procedure 26 governs the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense and ***proportional*** to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1) (emphases added).

The party seeking discovery has the burden of establishing the "relevance of the material requested." *Aruanno v. Johnson*, No. 2:14-1954-WJM-MF, 2020 U.S. Dist. LEXIS 71519, *5 (D.N.J. Apr. 23, 2020). If the movant "meets this initial burden, the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate." *Id.* (citation omitted). "The person

9

resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient." *Id*. (citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982)); *see also United States ex rel. Simpson v. Bayer Corp.*, No. 05-3895 (JLL)(JAD), 2020 U.S. Dist. LEXIS 263055, at *21 (D.N.J. Apr. 16, 2020) ("[a] party resisting discovery on the grounds of burden or expense 'bears the burden of showing specifically how the request is burdensome.'") (quoting *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2010 U.S. Dist. LEXIS 125252, at *10 (W.D. Pa. Nov. 29, 2010) (internal citation omitted)). Here, the balance of relevance and proportionality tips decisively in favor of production.

## II.   The TPP Defendants' Requests Are Highly Relevant To Plaintiff's Theory Of Injury And Damages.

The TPP Defendants seek documents and data directly relevant to the contested question of injury and damages at the TPP Trial. It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). "Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage." *Blum v. Positive Physicians Ins. Co.*, Civil Action No. 2:20-cv-05423-SRC-CLWZ, 2021 U.S. Dist. LEXIS 226064, at *8 (D.N.J. Aug. 17, 2021) (collecting cases). The goal is "to ensure mutual knowledge of all relevant facts." *DIRECTV, Inc. v. Richards*, No. 03-5606 (GEB), 2005 U.S. Dist. LEXIS 43764, at *7-8 (D.N.J. June 22, 2005).

Here, the Disputed Requests satisfy this standard because each seeks documents and data pertaining to the determination and calculation of MSPRC's injury and damages—which are limited to the MAO Assignors' actual, out-of-pocket damages. *See Sieger v. Louis Zak & Powersystems Int'l, Inc.*, No. 19978/05, 35 Misc. 3d 1229(A), 2012 N.Y. Misc. LEXIS 2419, at *1 (Sup. Ct. 2012) ("Damages for breach of warranty are generally measured on an 'out-of-pocket basis.'"); *Gen. Motors Acceptance Corp. v. Grady*, 501 N.E.2d 68, 72-73 (Ohio Ct. App. 1985) (stating measure of damages for breach of warranty is "loss resulting from the breach" and applying "monies expended" by the buyer as the appropriate measure); *In re Eugenia VI Venture Holdings, Ltd. Litigation*, 649 F. Supp. 2d 105, 121 (S.D.N.Y. 2008) (citing *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (N.Y. 1996) ("In New York, damages for claims of fraud and fraudulent inducement are subject to the 'out-of-pocket rule,' which confines plaintiffs to recovering actual losses sustained as the direct result of the wrong alleged, and excludes expected profits."); *Auto Chem Labs., Inc. v. Turtle Wax, Inc.*, No. 3:07cv156, 2010 U.S. Dist. LEXIS 100677, *21 (S.D. Ohio Sept. 24, 2010) (quoting *Restatement (Second) of Torts* § 549) (applying out-of-pocket measure of damages to fraud claims and allowing recovery of "the pecuniary loss to [plaintiff] of which the misrepresentation is a legal cause")); *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 880 F.2d 642, 649 (2d Cir. 1989) (noting that "benefit-of-the-bargain damages for breach of

11

contract and warranty" and "out-of-pocket expenses for fraud" are equivalent measures of damages under New York law and recovery of both would constitute a "double recovery"); N.Y. GBL § 349(h) (applying "actual damages" standard for New York consumer protection violations); N.Y. GBL § 350-e(3) (same); *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000) ("[A] plaintiff must prove 'actual' injury to recover under [section 349], though not necessarily pecuniary harm."); Ohio Rev. Code Ann. § 1345.09(A) & (B) (applying "actual economic damages" standard for Ohio consumer protection violations); *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224, 1231 (Ohio 2015) (requiring claim under Ohio Consumer Sales Practices Act to plead and prove "actual damages" that "were proximately caused by the defendant's conduct").

Because MSPRC's purported injuries are limited to the MAO Assignors' actual losses, their claimed damages must exclude government benefits and reimbursements, among other non-recoverable amounts—information that is sought in Disputed Request 2. In addition, the TPP Defendants are entitled to information regarding the purported impact of the withdrawal of the at-issue valsartan drugs had on the MAO Assignors' actual losses, including actual loss relative to their expectations, which is the crux of Disputed Requests 3 and 4. *See JLJ Inc. v. Rankin & Houser, Inc.*, 2010-Ohio-3912, ¶ 21 (Ohio Ct. App. 2010) (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261

12

(Ohio Ct. App. 1996)) (holding that "expectation damages" for breach of contract "are limited to actual loss, which loss must be established with reasonable certainty").

### A. Information Regarding Government Payments, Benefits, And Subsidies Is Relevant to MSPRC's Actual Damages.

Disputed Request 2 seeks relevant documents and data relating to amounts received by the MAO Assignors from the government, which must be excluded from MSPRC's asserted losses. The Southern District of New York directly addressed the relevance of materials like those sought by Defendants here two months ago in *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 1:15-cv-6549 (CM) (RWL), 2022 U.S. Dist. LEXIS 149561 (S.D.N.Y. Aug. 15, 2022). There, the state antitrust statutes on which the plaintiffs based their claims, like the state consumer protection statutes at issue here, "limit[ed] recovery to 'actual damages' or 'actual damages sustained.'" *Id.* at *37. Applying that measure in the context of a motion *in limine*, the court explained that "*[a]ny* benefits, including discounts or subsidies, that flowed to a [TPP] plaintiff must be used to reduce the amount of damages suffered by that plaintiff." *Id.* (emphasis added). Thus, to the extent a TPP "receive[d] any form of payment that covers all of part of its memantine prescription costs, those payments must be deducted from damages." *Id*. As the court put it, "*[t]his is not even a close question* - subsidies, of all forms, are a damages set off and the jury (assuming we have a jury trial on damages) will be so instructed." *Id.* (emphasis added).

13

That analysis is equally applicable here. It is "not even a close question" that MSPRC must deduct from its damages the amounts its MAO Assignors received from government benefits, subsidies, reimbursements, discounts, or other payments allocable to its purchase of at-issue valsartan drugs. And because Disputed Request 2 seeks documents and data disclosing those amounts, the information the TPP Defendants seek is relevant.

MSPRC's counsel nevertheless sought to distinguish *In re Namenda* at the October 6 CMC by arguing that: (1) it involved a motion *in limine*; (2) it involved damages only under an Illinois statute; and (3) government payments are not allocated to specific prescription drug purchases. [Dkt. 2172, Transcript, October 6, 2022 Case Management Conference ("CMC Tr."), at 35:19-36:5, 41:7-11]. These distinctions lack merit.

***First***, counsel's first argument only reinforces the need for discovery. In *In re Namenda*, the court found that the issue of government payments and reimbursements as an offset to damages was not only relevant, but ***admissible at trial***. It follows perforce that such matters are certainly relevant for purposes of ***discovery***, which is governed by an even broader standard. In short, MSPRC counsel's argument regarding the *in limine* posture of *In re Namenda* is backwards.

***Second***, MSPRC's counsel appears to have confused the opinion's reference to "*Illinois Brick*-repealer state statutes," *In re Namenda*, 2022 U.S. Dist. LEXIS

149561, at *37, as meaning that it was limited solely to Illinois law. However, the court was not referring to one Illinois statute, but rather to the approximately 35 states (including New York) that have passed uniform state antitrust laws rejecting the ruling in *Illinois Brick v. Illinois*, 431 U.S. 720 (1977), and allowing indirect purchasers to recover "actual damages" arising from state antitrust violations. *See, e.g.,* N.Y. GBL § 340 (allowing "any person who shall sustain damages" by a violation of state antitrust statute to recover "three-fold the actual damages sustained"). Needless to say, limiting recovery to "actual damages" is hardly unique to state antitrust law. Rather, as previously discussed, all of MSPRC's state law claims in this case involve an actual damages restriction. Indeed, the New York consumer protection statutes use language very similar to the state antitrust statute to define recoverable damages in consumer protection cases, confirming that the logic of *In re Namenda* applies to this case. *See* N.Y. GBL § 349(h) (allowing "any person who has been injured" by a violation to recover "actual damages" subject to discretionary tripling up to $1,000 for willful or knowing violations); N.Y. GBL § 350-e(3) (same for violations of New York GBL § 350).

**Third**, MSPRC counsel's third argument—that government payments are not allocated to specific prescription drug purchases—is both wrong and beside the point. The gist of this argument is that government payments to the MAO Assignors for prescription drugs are analogous to private insurance premiums that flow to a

TPP as a lump sum and are not allocated for specific outlays like prescription drug purchases. [CMC Tr. at 32:11-15.] However, as previously discussed, Part D payments are comprised of 13 components reflecting *discrete* benefits, payments, subsidies and discounts paid by the government *specifically for prescription drug coverage*. Thus, unlike lump private insurance premiums received from private plan beneficiaries, the MAO Assignors received discrete Part D benefits and the like specifically applied to prescription drug purchases.

In any event, as *In re Namenda* teaches, whether government payments are properly classified as a "reimbursement" and are allocable to a specific drug purchase is a matter for the trier of fact based on the parties' competing expert evidence. *See In re Namenda*, 2022 U.S. Dist. LEXIS 149561, at *38-39 (concluding that the "complex set of coverages and reimbursements," including "how much of the cost" of the prescription drug "ends up being borne by the Government" rather than the plaintiff, was a matter of legitimate disagreement among the experts and, therefore, ultimately "a question of fact for the trier of fact[.]"). As a result, it is critical that the TPP Defendants obtain the documents and data pertaining to the government's Part D payments so that they can determine how to calculate and allocate the portion of such benefits attributable to the particular drugs at issue here. At most, MSPRC's argument is "fair game for cross examination," *id.* at *39-40, not a basis for excluding evidence, much less precluding discovery.

Notably, although case-specific discovery has only just begun for the TPP Trial, the record developed in connection with class certification confirms the relevance of the information sought in Disputed Request 2. After all, as Defendants' various experts explained, a fundamental flaw in the class damages model proffered by Dr. Rena Conti is that it fails to "take into account those expenditures for these [valsartan] prescriptions that are government funded," and only eliminates certain specific government assistance programs. Dkt. 2009-29, at Ex. 210 [Kosty Dep.] 164:4-165:16; *see also* Dkt. 2009-29, at Ex. 211 [Stiroh Dep.] at 104:19-105:7 (aggregate damages amounts may fail "to include things like discounts or rebates that were given at a time and collected in a different database and cannot be accurately tied back to the initial purchase."). According to Defendants' pharmaceutical industry expert, Timothy Kosty, "determining the cost of an at-issue prescription, if any, borne by" the MAO Assignors "requires a significant amount of information on the subsidies paid by the government entities[.]" Dkt. 2009-18 [Kosty Rep.] ¶ 85. That is exactly what Disputed Request 2 seeks and what is essential to the TPP Defendants' ability to fairly and adequately refute MSPRC's theory of injury and damages at trial.

**B.   Information Regarding What Impact The Withdrawal Of At-Issue Valsartan Had On The MAO Assignors' Alleged Losses Is Also Highly Relevant To Injury And Damages.**

Disputed Requests 3 and 4 also seek documents and data that are highly

relevant to the fundamental question of injury and damages. As defense expert Dr. Lauren Stiroh explained in connection with Defendants' opposition to class certification, determining any particular TPP's actual damages would require additional information regarding "the costs to TPPs" for the at-issue valsartan drugs and replacement medications, and a "fact-intensive inquiry." *Id*. ¶ 7(vii). In particular, to assess "the damages incurred by any individual [TPP]," therefore, "you would need information on the price that that actual [TPP] paid," meaning "the actual expenditure" or "the amount that they actually paid" for the at-issue valsartan drugs. Stiroh Dep. at 105:11-19, 107:16-22. Dr. Kosty similarly explained that determining what entity "actually incurred the cost of a prescription—in whole or in part—is highly complex and requires a significant amount of information specific to the purchase, the pharmacy benefit design, the transactions that occurred prior to the dispensing of the prescription to the consumer, and any reconciliations that occurred subsequently." Kosty Rep. ¶ 83.

The information sought by Disputed Requests 3 and 4 would help the TPP Defendants and their experts perform this "fact-intensive inquiry." Request 3 seeks the MAO Assignor's CMS bids for Part D prescription drug benefits, which contain a plethora of data concerning expected versus actual drug payments, including estimated monthly amounts to provide prescription drug coverage, amounts to provide supplemental benefits, actuarial valuation, and estimated revenue, including

administrative costs and return on investment. *See* 42 C.F.R. § 422.254. In short, Disputed Request 3 is probative of the MAO Assignors' expectations with respect to their prescription drug spend, prior to the withdrawal. Disputed Request 4 seeks the MAO Assignors' internal reporting analyzing or reflecting projections and actual spend on Part D prescription drugs. All of this information can be used to assess whether there was any deviation from the MAO Assignors' estimated drug payments, estimated revenue, or estimated return on investment as a result of the withdrawal of the at-issue valsartan drugs—that is, whether the withdrawal of the medications caused the MAO Assignors' any actual damages or losses.

In sum, each of the Disputed Requests seeks information that is essential to resolving the fundamental injury and damages questions in this case, easily satisfying the relevance standard that governs discovery.

## III. The TPP Defendants' Requests Are Proportional to the Needs of the Case.

MSPRC cannot meet its burden of demonstrating with specificity that producing the requested information would be unduly burdensome and disproportionate to the needs of the case. *See Josephs*, 677 F. 2d at 991-92 ("the party resisting discovery must show specifically how … each question is overly broad, burdensome or oppressive.") (internal quotation marks and citation omitted). Rule 26 sets forth six factors for assessing proportionality: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative

access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "Proportionality determinations are made on a case-by-case basis." *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-11273 (MCA)(JD), 2020 U.S. Dist. LEXIS 72077, at *146 (D.N.J. Apr. 23, 2020). "No single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional." *Id*. (quoting *Employers Ins. Co. of Wausau v. Daybreak Express, Inc.*, 2017 U.S. Dist. LEXIS 86224, at *5 (D.N.J. June 5, 2017)). In this instance, all six factors support production of the requested documents and data.

### A.   The Issues At Stake In The Litigation Are Important And Likely To Affect Other Cases In The MDL.

The importance of the issues at stake in this case is beyond dispute, as is the importance of the requested discovery to the resolution of such issues. The TPP Defendants have propounded the Disputed Requests to aid their defense in the first trial in this large multi-district proceeding, the outcome of which is likely to have significant implications for the broader litigation. Indeed, the upcoming trial will be the first case to test both Plaintiffs' liability and damages theories on each of the economic loss claims (breach of express and implied warranty, common law fraud, and consumer protection), and the TPP Defendants' defenses to Plaintiffs' claims and damages. The Disputed Requests pertain to MSPRC's  damages and injury

theory for all claims, and the consequences could be considerable. Mr. Kosty estimates, for example, that government payments are expected to cover 74.5 percent of MAO Plans' costs for prescription drug benefits. Dkt. 2009-18 [Kosty Rep.] ¶ 50. Thus, discovery on these issues could implicate three-quarters or more of MSPRC's asserted damages in this test case, providing a significant basis for challenging MSPRC's theory of injury and loss. While prior discovery leading up to the parties' class certification briefing focused on whether the TPP Plaintiffs' damages model was susceptible to class treatment, the Disputed Requests are tailored towards collecting information directly relevant to damages for a non-class, single plaintiff TPP trial of the MAO Assignors' specific claims.

### B. There Is a Significant Amount in Controversy.

The requested discovery is also proportional in light of the substantial amount in controversy, totaling potentially millions of dollars in alleged damages. MSPRC has produced data indicating that, at the point of sale and without accounting for government subsidies, reimbursements, and payments, ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████. *See* Ex. A: Dep. of C. Miranda at 99:9-23, Ex. 9 (under seal).

### C.      Only MSPRC and Its Assignors Have Access to the Requested Documents and Data.

The requested discovery is also proportional because the TPP Defendants have no other means for obtaining the information they seek. The documents and data sought by the Disputed Requests are not publicly available; rather, only MSPRC and the MAO Assignors have access to the materials sought. MSPRC has already collected substantial data from the MAO Assignors. Moreover, ███████████

████████████████████████████████████████████

████████████████████████████████████████████

See Dkt. 2009-3, at Ex. 30 [Dep. of J. Lopez] at 64:21-65:11, 82:24-84:8; Ex. B (Lopez Deposition Exhibit 2) (under seal).

### D.      MSPRC Has Ample Resources.

The discovery is also proportional given MSPRC's significant resources that distinguish it from an ordinary individual plaintiff. MSPRC is a publicly-traded company, trading on the NASDAQ exchange under the symbol MSPR, with total assets according to its most recently filed Form 10-K exceeding $230 million. According to MSPRC's most recently announced quarterly results, the company has seen substantial growth of assets from $104 million as of December 31, 2021 to $6.6 billion as of June 30, 2022, with cash and cash equivalent liquidity as of June 30, 2022 of $25 million, and $36.5 million prepaid for MSP Law Firm expenses.

22

### E.     The Requested Discovery Is Important to Resolve the Claims at Issue in the TPP Trial.

The requested discovery also satisfies the proportionality requirement because it is important to resolve MSPRC's claims at trial. As discussed in § III.A, *supra*, the TPP Trial itself will be a highly consequential proceeding, as the first trial in this large multi-district proceeding.  In addition, the Disputed Requests are important to the resolution of that proceeding, because they are likely to play a critical  role in evaluating and contesting MSPRC's theory of injury and damages. Indeed, as previously discussed, recent authority indicates that the ***admissibility*** of the requested information regarding government payments "is not even a close question," *In re Namenda*, 2022 U.S. Dist. LEXIS 149561, at *37, reflecting a level of importance that necessarily applies with even greater force in the context of discovery. And the expert evidence developed in connection with class certification briefing only confirms that such information is integral to refuting Plaintiff's flawed theory of loss. In short, the requested discovery is not peripheral; it goes to the core of the claims and defenses in this case, further demonstrating proportionality.

### F.     The Requested Discovery Involves Minimal Burden or Expense.

Finally, the discovery is proportional because the burden and expense of responding to the Disputed Requests should be minimal. As previously discussed, the substantial majority of the documents and data requested by the TPP Defendants in Disputed Request 2 are comprised of standardized materials required by CMS.

Thus, MSPRC need only assemble and produce materials CMS already requires, in the format CMS requires. The remaining materials sought by Disputed Requests 3 and 4 consist of CMS bids and specific internal reports. Given the relevance and importance of these documents and data to damages, the benefits and importance of the requested discovery clearly outweigh any burden or expense entailed in responding to the Disputed Requests.

**IV.     The Court Should Set Deadlines with Respect to Damages Experts.**

CMO 29 does not contain case management deadlines for the parties' respective damages experts for the TPP Trial, and the parties have been unable to reach agreement on proposed deadlines for damages experts. Following a meet-and-confer on September 12, 2022, counsel for TPP Defendants understood the parties had reached agreement that MSPRC's damages calculations and supporting documentation would be produced in conjunction with Plaintiffs' expert disclosures pursuant to CMO 29, and memorialized this understanding by letter to Plaintiffs' counsel dated September 23, 2022. [Dkt. 2167-2, at 3]. At the October 6 CMC, however, Plaintiffs' counsel took a contrary position that MSPRC would not be making its damages expert disclosures in accordance with the CMO 29 deadlines. After multiple meet-and-confer discussions, Plaintiffs have taken the positions that: (1) the deadlines in CMO 29 do not apply to damages experts; and (2) no deadlines should be set with respect to damages experts for the TPP Trial until the Court rules

on the pending class certification motions.

Defendants agree with the first point but disagree with the second. The deadlines set forth in CMO 29 do not, on their face, apply to damages experts, necessitating the entry of case management deadlines with respect to damages experts. It makes no sense, however, to await a ruling on class certification before setting such deadlines. The Court has repeatedly made clear that the TPP Trial will not be a class trial. As the Court reiterated at the August 24, 2022 Case Management Conference ("Aug. 24, 2022 CMC"): "It will be a single plaintiff. The problem is, of course, as has been noted by counsel, is the one-way intervention problem and now the class representative problem. ***So it's going to be a one-plaintiff trial, not a class trial that we do***." Aug. 24, 2022 CMC Tr. at 19:2-6 (emphasis added). *See also id*. at 24:7-11 (reiterating "[i]t's going to be one plaintiff" and "we are just going to have one plaintiff" and stating that even if the Court grants class certification, the most it would entertain for the TPP Trial is a motion for "some kind of very limited sub, sub, sub-class"). The TPP Trial and the Court's ruling on the pending motions for class certification are separate matters. Waiting for a ruling on class certification (and any appeal of such a ruling) before even setting deadlines for damages experts just needlessly delays the TPP Trial.

Accordingly, TPP Defendants request that the Court set case management deadlines with respect to damages experts, and propose that the Court set such

deadlines approximately seven weeks behind the corresponding deadlines for other case-specific experts under CMO 29, as follows:

- MSPRC to serve damages expert report(s): <u>December 19, 2022</u>
- TPP Defendants to serve damages expert report(s): <u>February 6, 2023</u>
- Deadline to complete damages expert depositions: <u>March 31, 2023</u>
- Deadline for Rule 702/*Daubert* motions on damages experts: <u>April 3, 2023</u>
- Deadline for responsive briefs on Rule 702/*Daubert* motions on damages experts: <u>April 24, 2023</u>
- Deadline for reply briefs on Rule 702/*Daubert* motions on damages experts: <u>May 8, 2023</u>

The proposed deadlines are reasonable, afford the parties sufficient time to prepare their respective reports and to conduct discovery, and avoid undue delay of the TPP Trial schedule.

## CONCLUSION

For the foregoing reasons, the TPP Defendants respectfully request that this Court enter an Order: (1) compelling MSPRC to produce documents and data responsive to Disputed Requests 2 through 4, including documents and data in the possession of EmblemHealth or Summacare and accessible to MSPRC in accordance with its assignments; (2) setting case management deadlines for damages experts as proposed above; and (3) granting such other and further relief as the Court deems necessary or appropriate.

Dated: October 20, 2022    By: */s/ Gregory E. Ostfeld*

                                         GREENBERG TRAURIG, LLP
Lori G. Cohen, Esq.
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE,
Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

Gregory E. Ostfeld
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Brian H. Rubenstein
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania
Tel: (215) 988-7864
Fax: (214) 689-4419
rubensteinb@gtlaw.com
*Attorneys for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Actavis LLC, and Actavis
Pharma, Inc.*

Jessica Davidson Miller
Nina R. Rose
Skadden, Arps, Slate, Meagher & Flom
LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-0525
jessica.miller@skadden.com
nina.rose@skadden.com
*Attorneys for Zhejiang Huahai*
*Pharmaceutical Co., Ltd., Huahai U.S.,*
*Inc., Prinston Pharmaceutical Inc., and*
*Solco Healthcare U.S., LLC*

KIRKLAND & ELLIS LLP
Devora W. Allon
Alexia R. Brancato
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
devora.allon@kirkland.com
alexia.brancato@kirkland.com
*Attorneys for Torrent Pharmaceuticals*
*Ltd. and Torrent Pharma Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 20, 2022, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to all CM/ECF participants in this matter.

*/s/ Gregory E. Ostfeld*

Gregory E. Ostfeld
