**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Case No. 1:19-md-02875-RBK-JS<br><br>MDL No. 2875 |
| THIS DOCUMENT RELATES TO:<br><br>*MSP Recovery Claims, Series LLC v. Huahai US, Inc., et al.*,<br>Case No. 1:19-cv-06830 | |

### DECLARATION OF BRANDON RIFF

I, Brandon Riff, under 28 U.S.C. § 1746, declare as follows:

1.     I am an Assistant Vice President and Actuary at EmblemHealth ("Emblem"), I submit this declaration in support of MSPRC's brief to the Court about production of requested data related to CMS bids and internal projections on Part D pharmacy spends. I have personal knowledge of the facts stated here.

2.     Emblem's bids to the Centers for Medicare & Medicaid Services ("CMS") contain highly proprietary and confidential business information, including, for example, projections about inflation in the medical economy, risk assessments for pools of Medicare recipients, health care and pharmaceutical cost projections and other market assumptions relevant to making a successful bid. The very core of Emblem's MAO business is making winning bids for MAO contracts. The bids, the modeling and assumptions underlying the bids and related information are the sources and methods critical to Emblem's MAO business. If a competitor had access to our sources, methods, and projections, they would have an advantage in the marketplace.

3.     A bid to CMS is required to report on numerous categories of information. For

1

example, a bid must contain, among other things, projections of risk scores, total allowed dollars, average allowed amount per member, average amount paid per member, average cost sharing per member, per member per month non-benefit expenses, and per member per month premium revenue. The bids also contain a projection of allowed costs, effective cost sharing, and numerical demonstrations of the methodology used to develop the projected risk scores. In addition, the bids include Emblem's estimate of the national average monthly bid amount, the base beneficiary premium, and the values for prospective low-income cost-sharing. All of these projections involve very sensitive and proprietary sources and methods by which Emblem formulates its bids.

4. Defendants ask for Emblem's "internal reporting analyzing or reflecting projections on Part D prescription drugs." However, any such reports would contain only aggregated projections for all Part D prescriptions and the projections would not contain projections by drug or medical condition. In addition, the reports constitute confidential information about how Emblem develops assumptions for its Part D bids and internal budgets, including, detailed information about prior bids. Disclosure of this confidential information would give competitors a windfall insight into the methods and sources Emblem considers when formulating its bid projections and allow the competitors to gain unfair advantage over Emblem.

5. Moreover, the bids submitted to CMS do not contain cost projections associated with a particular drug or medical condition but rather are aggregated for all drugs and conditions. It is also aggregated for all plan members. There is no way to disaggregate the data to allow a calculation of what is projected to be spent by drug or medical condition.

6. The kinds of bid information I describe in paragraphs 2, 3, and 4, are among the most sensitive proprietary information that Emblem has. Disclosure to competitors exposes

EmblemHealth to serious market and economic harm, particularly because defendants in this case are competitors to Emblem as in the case of Aetna Inc. (a subsidiary of defendant CVS Health Corporation), which provides Medicare Part D benefits. It would be helpful to a competitor to know Emblem's most sensitive sources and methods and to see its bid projections based on those sources and methods because it could use Emblem's bid and budget assumptions to tailor its own bid and budget strategy to more effectively compete against Emblem.

7. Moreover, Emblem is in the open-enrollment period for Medicare, which lasts until December 7, 2022. Much of this time is spent assessing market trends and strategizing for Emblem's 2024 Medicare bid submissions. As the same departments are involved in bid planning and open-enrollment, producing such documents would cause an additional burden to Emblem and could impact the effectiveness of 2024 planning.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Executed this 20th day of October, 2022.

_____
BRANDON RIFF