1        UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW JERSEY
2

3    ──────────────────────────        CIVIL ACTION NUMBER:
     IN RE:  VALSARTAN PRODUCTS
4    LIABILITY LITIGATION              19-md-02875

5    ──────────────────────────        ORAL ARGUMENT

6

7        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
         Camden, New Jersey  08101
8        September 8, 2022
         Commencing at 11:00 a.m.
9    B E F O R E:
     THOMAS I. VANASKIE (RET.)SPECIAL MASTER
10

     A P P E A R A N C E S:
11

         MAZIE SLATER KATZ & FREEMAN, LLC
12       BY:  ADAM M. SLATER, ESQUIRE
         BY:  CHRISTOPHER GEDDIS, ESQUIRE
13       103 Eisenhower Parkway
         Roseland, New Jersey  07068
14       For the Plaintiffs

15       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
         BY:  CHRISTOPHER D. COX, ESQUIRE
16       BY:  RICHARD T. BERNARDO, ESQUIRE
         1440 New York Avenue, N.W.
17       Washington, DC 20005
         For the Defendants, Prinston Pharmaceuticals,
18       Solco Healthcare U.S. LLC, and  Zhejiang Huahai
         Pharmaceuticals Ltd.
19

20
             Megan McKay-Soule, Official Court Reporter
21                  Megansoule430@gmail.com
                        (609) 815-2319
22
       Proceedings recorded by mechanical stenography; transcript
23           produced by computer-aided transcription.

24   ALSO PRESENT:

25       LORETTA SMITH, ESQUIRE
         Judicial Law Clerk to The Honorable Robert B. Kugler

1        (PROCEEDINGS held via remote Zoom videoconference

2   before The Honorable Thomas I. Vanaskie, Special Master, on

3   September 8, 2022, at 11:00 a.m.)

4        THE COURT:  Good morning, everyone.  We'll get

5   started with our arguments on the matters that are pending.

6   There are two matters.  One is in the nature of tying up loose

7   ends that have been loose for a number of months now, and that

8   concerns the request to unseal certain documents.  We heard

9   argument on this on January 18th of this year, and as a

10  Special Master I made a number of rulings during the course of

11  that conference.  There were, according to my notes and my

12  review of that transcript, two documents that had not been

13  addressed, had not been decided, whether they should be sealed

14  or not.  One is the final GMC inspection report, Exhibit CC.

15  And the other is Exhibit 20 to ECF document number 1250, email

16  exchanges with an Italian pharmaceutical company, Menarini.

17        The first question I have -- and I'll ask both sides

18  this question -- is there a need for the Special Master, for

19  me, to issue an order that memorializes the rulings that were

20  made on January 18th?  I think there are 11 documents at

21  issue; definitive decisions were made as to nine documents,

22  whether they should be sealed or unsealed.  Do we need an

23  order that identifies those nine documents?

24        Will you be addressing this, Mr. Slater, since you're

25  on my screen?

```
 1          MR. SLATER:  Hello, Judge.  How are you?  Mr. Geddis
 2   is going to argue this issue for us.
 3          THE COURT:  Okay.
 4          MR. SLATER:  I'll defer to him on this.  Just -- I
 5   would think that if an order could be entered just to avoid
 6   any confusion, it always helps.
 7          THE COURT:  Yes.
 8          MR. SLATER:  That might depend a little on what
 9   happens today, but I'll let Mr. Geddis address it as well.  I
10   would think the answer is yes.
11          THE COURT:  Mr. Geddis.
12          MR. GEDDIS:  Hi, Your Honor.  I think what Adam said
13   is correct.  I think it would be helpful for us, and then for,
14   you know, with the class cert discussion going on with all
15   those documents, I think that group of attorneys would
16   probably like a concise statement of why those documents are
17   or are not confidential.
18          THE COURT:  I wasn't intending to issue any
19   explanation.  I've already made a determination.  The
20   transcript is available.  I could issue an order that says,
21   such-and-such document will remain sealed and such-and-such
22   document will be unsealed.  I take it you would like that?
23          MR. GEDDIS:  I think that would be best.  Thank you.
24          THE COURT:  Who's addressing this issue on the
25   defense side?
```

```
 1        MR. COX:  Good morning, Your Honor.  Christopher Cox.

 2   I will be arguing for the ZHP defendants.  What Mr. Geddis

 3   outlined makes sense to us, if there's an order that

 4   memorializes Your Honor's rulings.

 5        THE COURT:  All right.  We will promptly, hopefully

 6   today, issue that order.

 7        So let's proceed.  We're going to hear arguments then

 8   on what I understand to be the two documents that a

 9   determination has not yet been made as to whether they should

10   remain sealed or not.  One is the final GMC inspection report,

11   and the other is a series of emails involving ZHP and the

12   Italian pharmaceutical company or representatives of the

13   Italian pharmaceutical company Menarini.

14        Going back, and I know it's a number of months now, I

15   asked for letter briefs on the question of whether the final

16   GMC inspection report would be akin to an FDA inspection

17   report that could be requested under the Freedom of

18   Information Act here in the United States, whether there was a

19   European counterpart to FOIA.  You did submit letter briefs,

20   and I'd like to hear brief argument on this issue.

21        Mr. Geddis, I'll turn to you first.

22        MR. GEDDIS:  Thank you, Your Honor.

23        So I think it's clear that there is an equivalent on

24   FOIA -- well, to these documents.  ZHP admits as much in their

25   February 8th, 2022 article -- excuse me, letter.  On page 9
```

1    going on to page 10, they say:  Although the applicable

2    exceptions to public accessibility provide an avenue for

3    disclosure of documents by the EMA where, quote, there's an

4    overriding interest -- overriding public interest in

5    disclosure, end quote.  They argued that we can't meet that

6    standard, but I think it's clear that given the severity of

7    this recall, the worldwide nature of the recall, the public

8    has an exceptional interest in understanding what the EMA had

9    to say about it and understanding the deficiencies that were

10   found in ZHP, what ZHP -- how they responded, and ultimately

11   whether or not EMA thought that those responses were adequate.

12   So I think that exception does apply, and that, therefore, the

13   EU report should be held not confidential.

14        THE COURT:  Regardless of what European law might

15   provide, do I have the authority to, nonetheless, order that

16   it be unsealed?  It hasn't been produced, obviously.

17        MR. GEDDIS:  I mean, the answer is, obviously, yes.

18   We argued, as you know, about whether or not it was just in

19   general subject to public disclosure as a court record, with

20   the public's presumption of a right to access.  I think the

21   same public interests that apply under the EMA are even

22   stronger under our own law.  And you actually asked ZHP to

23   provide a proposed redacted version of the report, and their

24   redactions are extremely overbroad.  If you look at the -- at

25   their proposed redactions, on the third page they redact the

     1    name of Baohua Chen.  They redact the name of Jun Du.  They

     2    redact the name of Min Li.  They redact the name of six other

     3    people who were deposed in this case.  They redact the fact

     4    that there were nine major and eight other deficiencies later

     5    on in the report, which is something that's discussed in the

     6    Fierce Pharma article that we linked to in our February 8th

     7    brief.  And then, more generally, we also attached the FDA's

     8    2018 inspection report to our letter on February 8.  And that

     9    contains extensive discussion of the same issues that all led

    10    to the contamination.  And all that information is public

    11    there.

    12          So the fact that ZHP was offered an opportunity to

    13    provide a redacted version of this report -- and they

    14    essentially redacted the entire thing except for the first

    15    couple pages -- I think they've had a number of bites at the

    16    apple at this point, and the Court should just order that the

    17    report is public.

    18          THE COURT:  Thank you, Mr. Geddis.

    19          Mr. Cox.

    20          MR. COX:  Thank you, Your Honor.  First, we have no

    21    indication that the public has access to this GMP inspection

    22    report.  What we do have is very clear evidence of the agency,

    23    the EMA's intent that documents like this remain nonpublic

    24    and the principles that the EMA considered in forming that

    25    intent.  And the EMA's reasoning and the conclusion are laid

1    out in the two documents that were the first two exhibits to

2    ZHP's February 8th submission to Your Honor.  There's the

3    policy that the plaintiffs also submitted, policy 0043, and

4    the output tables.  And Mr. Geddis writes in the letter and

5    talked about today that in principle all EU government

6    documents are publicly accessible and the EMA has, you know, a

7    policy of openness.  That's true, but he ignores the EMA has

8    already considered those principles, those general principles

9    and specific principles in reaching the opposite conclusion

10   than the one plaintiffs urge and determined that the GMP

11   inspection report -- and this one and others like it -- are

12   presumptively nonpublic and non-releasable.  And we described

13   in our letter the tables that reflect EMA's application of

14   their very principles that Mr. Geddis was talking about that

15   resulted in this 58 page document that explains the EMA's

16   thought process in determining that it's presumptively

17   nonpublic and non-releasable.  And EMA explains the reason for

18   that, which is that it would undermine the purpose of the

19   inspections, investigations, and audits.  It further indicates

20   that redaction is not applicable with respect to this category

21   of documents.

22          When you look at the report, EMA's conclusion makes

23   sense.  It necessarily deep dives into a site's processes, and

24   the EMA can only conduct effective inspections if the sites

25   open their doors, provide information, information that is

1    necessarily specific, technical, private, and often

2    proprietary.  That links up to the idea that redaction isn't a

3    ready-fix here because of the pervasiveness of the nonpublic

4    information that lands in these types of reports.  And the EMA

5    writes these reports all the time and understands what's going

6    to end up in these reports.

7          THE COURT:  I've read the report, Mr. Cox, and I have

8    trouble understanding what information that would be in that

9    report that would require protection of a federal court

10   sealing order.

11         MR. COX:  Your Honor, I would focus on the testing

12   methods and procedures the same way you focus on -- and

13   manufacturing and quality control procedures.  And, look, Your

14   Honor, we took into account your May 2021 order in determining

15   our position with respect to this document, and in the last

16   document that you addressed in that order you focused on the

17   testing methods and procedures that that document contained

18   and distinguished it from a document that included only

19   testing results.  And I would say that this report is replete

20   with discussion not only of testing methods and procedures but

21   of manufacturing and quality control procedures.  I mean, this

22   is the company opening its doors to a public agency to

23   understand what happened at these manufacturing sites.  As Mi

24   Zu declaration states, a disclosure of this nonpublic

25   information that plaintiffs have not shown that the public has

1    would cause harm if disclosed to the public, including ZHP's

2    competitors.

3            THE COURT:  You've proposed redaction -- I'm going to

4    come back to this because I have the report in front of me

5    now.  You've proposed redaction of the major deficiencies that

6    were found.  Why should that be redacted?  I'm looking right

7    now, so the record is somewhat clear, at ZHP 02324740.  It's

8    the fourth page, I believe, of the report, fourth or fifth

9    page.

10           MR. COX:  Right.  You're referring to the summary

11   sections, Your Honor, at the beginning.

12           THE COURT:  You proposed redacting that information.

13   Well, your predecessor counsel did.

14           MR. COX:  Yes, Your Honor.  And I think the

15   description and the level of detail, the generality here, I

16   would agree is different than the discussion later in the

17   document, which really gets into the details of the testing

18   procedures, the manufacturing processes.  I understand Your

19   Honor's point with respect to this summary section on the

20   pages ending 7470 and the first half of 741.

21           THE COURT:  What would be the rationale for redacting

22   the company's response to these various deficiency findings

23   that were made?

24           MR. COX:  I think the rationale is some of these

25   responses include discussions of internal standard operating

1    procedures of the company, internal processes, methods of the

2    company that are not public.  And, again, we submitted a

3    declaration.  The company believes that disclosure of those

4    internal processes would harm ZHP if they were made public,

5    including to its competitors.

6         And, you know, I think Mr. Geddis addressed the public

7    interest in disclosure.  The EMA has issued a press release

8    about this report.  It has made statements about this report.

9    I think that underscores the distinction between what the EMA

10   considers generalized information that, you know, is

11   appropriate for public release and the detailed information

12   that's contained in inspection reports like this, which again

13   the EMA presumptively protects categorically in the output

14   charts.

15        In plaintiff's letter they talk about the public

16   interest in disclosure of the identification of nitrosamine as

17   an API.  I mean, that is available through numerous other

18   sources, the EMA's own press releases, other media reports.

19   We heard about Fierce Pharma: the FDA inspection documents the

20   plaintiffs have obtained through FOIA that were attached to

21   their letter; ZHP's internal documents that don't contain any

22   confidentiality designation and are publicly available.

23        So I think the public interest in disclosure such as it

24   exists has been more than satisfied.

25             THE COURT:  I'm looking now at ZHP 02324745.  I'm

1  looking at paragraph B.  The inspection team reviewed the

2  documentation for complaint CC18004 received on 22 May 2018

3  from customer Novartis, in parenthesis, unknown peak detected

4  on 16 batches of valsartan.

5      In paragraph ii, it says:  After being asked why no

6  direct comparison of the unknown peaks observed by Novartis

7  and their own GC chromatograms had been made, the company

8  stated that they were not in possession of the customer's

9  method at the time of the complaint.  However, after review of

10  GC audit trails, it became evident that the company had

11  already obtained the Novartis method in December 2017.  From

12  further checks on the communications between the company and

13  Novartis, it became evident that Novartis had shared their GCF

14  ID method with Zhuhai already in July 2017 as a means of

15  supporting investigations on unknown peaks.

16      Why should that be redacted?  Why should that be

17  withheld?

18          MR. COX:  Your Honor, I mean --

19          THE COURT:  There's nothing detailed there.  It

20  doesn't appear to be any secret method or testing approach.

21          MR. COX:  Your Honor, I would return to EMA's intent

22  here and I think the principle that Your Honor has

23  acknowledged that there is deference to the agency's

24  application of its own principles.  I mean, at the beginning

25  of the document we talked about sections that I agree with

1  you, you know, are not detailed, but categorically EMA has

2  said to encourage its own processes and to support its own

3  mission of protecting public health, that these documents are

4  categorically non-releasable and nonpublic.

5          THE COURT:  Categorically non-releasable and

6  nonpublic.  It's clear that unless you are a national of one

7  of the European countries, you would not have standing to seek

8  disclosure.  Do we know for a fact that it's categorically

9  unreleasable?  We don't have any declaration of an expert.

10         MR. GEDDIS:  Your Honor, can I address that briefly?

11         THE COURT:  You'll have your chance.

12         MR. GEDDIS:  That's fine.

13         THE COURT:  If I'm misspeaking, you can correct me,

14  but go ahead.

15      I'll hear from Mr. Cox, and then we'll hear from you,

16  Mr. Geddis.

17         MR. COX:  Your Honor, that's true that there isn't

18  any expert declaration before the Court, but I think the

19  output tables are very clear.  I mean, there are definitions

20  that are provided with respect to what non-releasable and

21  nonpublic are.  I mean, there is a process where someone

22  within the EU can make an application for access to materials,

23  but the EMA would have discretion to reject such an

24  application based on the very principles that it used to

25  determine these were categorically nonpublic, including the

1    protection of commercial information and the protection of its

2    own -- the integrity of its own investigations.

3         THE COURT:  Mr. Geddis made reference to the fact

4    that there is a presumption of access to court records, to

5    documents that are filed in a court proceeding and this final

6    GMC inspection report is an exhibit filed in the court in this

7    action.  Why isn't that a controlling presumption here?  That

8    is, that there should be public access to a judicial record.

9         MR. COX:  Well, I mean, I think that is a presumption

10   that Your Honor had laid out in his May 2021 order.  But

11   that's a presumption that could be overcome, and we believe it

12   has been overcome by the provision of Me Zu's declaration

13   stating that this nonpublic information that is contained

14   within the report -- and there clearly is nonpublic

15   information in the report -- would cause harm to ZHP.

16        THE COURT:  Thank you.

17        Mr. Geddis, I'll hear from you now.

18        MR. GEDDIS:  Thank you, Your Honor.

19        So just starting out with this EMA issue, which I think

20   is a bit of a red herring, as you emphasized, but I just want

21   to make the record clear.  The first page of this chart says

22   that the document is, quote, not legally binding.  And then if

23   you look at the pages that they highlight in their letter

24   regarding these investigation reports, it says that the

25   authority for those -- for that information -- excuse me.  Let

1   me get to it.

2          THE COURT:  What document are you referring to now,

3   Mr. Geddis?

4          MR. GEDDIS:  I'm on the -- in the February 8th, 2022,

5   letter.

6          THE COURT:  Okay.

7          MR. GEDDIS:  And their Exhibit B, the first page,

8   says that the chart is not legally binding.

9          THE COURT:  Right.

10         MR. GEDDIS:  And then it says that the authority for

11  the position that the report shouldn't be released is article

12  4.2, third indent.

13         If you go to page 58 of that chart, to note five, this

14  is a quote of that authority.  However, the authority indent

15  is actually an incomplete quote because if you go to the

16  actual EMA article, it also says, quote, unless there is an

17  overriding public interest in disclosure.  And that's why ZHP

18  concedes on page 9 and 10 that it is possible that there could

19  be an overriding public interest in disclosure and that the

20  EMA would, therefore, release it.

21         That's also stated in Exhibit A on page 9 where there's

22  a list of exceptions.  And bullet 2 says -- has the full

23  language where it says, the EMA shall refuse access to a

24  document where it determines that disclosure would likely --

25  would be likely to undermine the protection of subsection C,

1    the purpose of inspections, investigations, and audits unless

2    there's an overriding public interest and disclosure.

3         And that's why this is essentially a red herring

4    because that public interest and public disclosure essentially

5    leads us right back to where you wanted us to be, which is the

6    *Avandia* standard that there is a presumption of public access.

7    I think in the past we focused on the Third Circuit decision,

8    but I think it's also helpful to look at what happened on

9    remand at the trial court.

10         THE COURT:  Right.

11         MR. GEDDIS:  The court unsealed all 55 documents,

12   including clinical studies, GSK submissions to the FDA,

13   internal GSK emails and letters, records of teleconferences

14   between GSK and the FDA, and *Avandia* presentations and plans.

15   This completely contradicts this idea that ZHP is advocating

16   that if it's not public already, it has to be maintained as

17   confidential in this court.  That goes against the presumption

18   of the public's right to access and is not supported by the

19   law at all.  And that's why they had to submit their

20   declaration.  And in this case the declaration is completely

21   conclusory and doesn't explain how they could be harmed.  And

22   I've already said they were given a chance to present

23   redactions and they're extremely overly broad, as you already

24   pointed out.  And even during this oral argument, ZHP hasn't

25   been able to point to anything specifically that should be

 1   redacted in any sort of limited way, and, therefore, I think

 2   the whole report should be held not confidential.

 3           THE COURT:  You concede that any of the proposed

 4   redactions are appropriate?

 5           MR. GEDDIS:  No.  I agree with Your Honor that I

 6   looked at the report, and I didn't see anything that had this

 7   type of specificity that would give any of their competitors

 8   an advantage, especially at this point.

 9           THE COURT:  I may have made that statement, but I'm

10   looking now at starting at -- do you have the report available

11   to you, Mr. Geddis?

12           MR. GEDDIS:  Yes.

13           THE COURT:  I'm looking at ZHP 0234779.  It's at the

14   end, or near the end, and it's a list of API products at the

15   Zhejiang API site.

16           MR. GEDDIS:  I'm looking at it, Your Honor.  I don't

17   think the product codes, which are things that are put in the

18   batch records that are given to customers, is anything that

19   would give some other competitor an advantage.  It's, I think,

20   to most people completely meaningless information.  And given

21   the public's right to access, there's no reason to redact it

22   from the public record.

23           THE COURT:  I'll go a few more pages in at ZHP

24   02324783.  The API structure of various products.

25           MR. GEDDIS:  The API is essentially the -- it's the

1   chemical structure of the product.  These are all generic

2   drugs.  The chemical structure is public knowledge, and so

3   there would be no reason to redact those either.

4        THE COURT:  Mr. Cox, do you want to respond on the

5   questions I was just asking?

6        MR. COX:  Yes.  Thank you, Judge.

7        First, let me say, I think some of the points that Your

8   Honor was asking about, I mean, it may be meaningless to the

9   public, but the point is that it may not be meaningless, would

10  not be meaningless to ZHP's competitors, and that's what we

11  submitted the declaration on in support of.  And there's a 60

12  page report.  There's absolutely information in here that

13  regards internal processes of ZHP manufacturing, quality

14  control.  I understand that Your Honor may disagree with the

15  breadth of the redactions.  I would respectfully request --

16  the redactions were done, as Your Honor acknowledged, by

17  former counsel.  If Your Honor's inclined to release any

18  portion of this report, we respectfully request the

19  opportunity to revisit the proposed redactions made by prior

20  counsel, keeping in mind the many points that Your Honor has

21  been making during this oral argument, to pare those back.

22  But I do believe that there is information here that's not

23  appropriately disclosed to the public and to ZHP's

24  competitors.

25        THE COURT:  Well, I don't think it's any secret that

1    I believe the document, in large measure, should be publicly

2    available as a judicial record.  I'll do it reluctantly, but

3    I'd give you the opportunity to submit proposed redactions

4    that would be more consistent with the discussion I had.  I

5    think the redactions proposed by prior counsel are just

6    overbroad and seek to keep from the public information that

7    would in no way cause any harm to ZHP, but would be essential

8    for someone to understand the context of the document itself.

9         So I've indicated I am going to direct that this

10   document be unsealed.  I'm not persuaded by the chart that

11   accompanies the amassed description of documents that are held

12   confidential.  I am persuaded by the presumption of public

13   access to judicial records, but recognize that commercially

14   sensitive and valuable competitive information needs to be

15   protected.  So I'll give you that opportunity to submit

16   proposed redactions to me within seven days.  That will be it

17   then, too.  There won't be another bite at the apple on this

18   one.  I'll make a determination based upon my review.

19        As I said, I went through this.  Really the only thing

20   I came up with was the information starting at ZHP 02324779

21   and going over to 4787.  I thought everything else could be

22   produced.  So I expect what I'll see from you is something

23   that is much more tailored to protecting sensitive information

24   and not this overly broad effort to keep important

25   information, on a matter of great public interest, secret.

```
 1        MR. COX:  It will be more tailored, Your Honor.  One

 2  thing I would point out, and actually Mr. Slater pointed this

 3  out in his letter and he attached the FDA inspection -- or an

 4  FDA inspection report to plaintiff's letter.  There are

 5  pinpoint redactions, but there are redactions at almost every

 6  single page of that document.  So we will absolutely keep in

 7  mind Your Honor's guidance here today and appreciate the

 8  opportunity to have another bite at the redactions.  But

 9  consistent with FDA's own redactions, I think there are

10  redactions that are appropriate in this inspection report.

11        THE COURT:  I think there could be redactions that

12  are appropriate, but they, as you say, need to be pinpointed.

13  The fact that they might appear on each page, that doesn't

14  mean much to me.  The question is, what's being redacted?  An

15  entire page should not be redacted because one line has

16  sensitive information that should be redacted.  All right?

17        MR. COX:  I understand that point, Your Honor.  Thank

18  you.

19        MR. GEDDIS:  Your Honor, for the record, that exhibit

20  was produced under FOIA.  It was not redacted under the

21  standard of *Avandia* for a court record.  So I think that ZHP

22  should not be using that as the standard by which to redact

23  the document.  And if they're going to do that, then

24  plaintiffs would like to have an opportunity to review those

25  redactions and to respond, because I don't think that that
```

 1    would be correct.

 2          THE COURT:  You have the right to review and respond.

 3    So we'll give you seven days after you receive the proposed

 4    redactions to respond.  I will also say that the redactions

 5    made by the FDA are intended to protect commercially sensitive

 6    information or proprietary information, and even under

 7    *Avandia*, that kind of information can be protected.  All

 8    right?  All right.

 9          Let's talk then about the email exchange that's

10    reflected in Exhibit 20 to ECF document number 1250.

11          I'll go to Mr. Cox first.  Why should this remain

12    sealed?

13          MR. COX:  Thank you, Your Honor.  I know you heard

14    argument on this in January, so I will be more than brief on

15    it.  But this is an email chain, as you can see:  A long email

16    chain between ZHP and LCM Trading, who is affiliated with

17    ZHP's customer Menarini, a company in Italy.  There are -- we

18    talked about redaction.  I mean, certainly there are portions

19    of this document that I would absolutely not defend as, you

20    know, needing to remain nonpublic.  There's discussions about

21    travel and logistics like that.  I mean, a good bit of the

22    document is around that.  I'm not here to argue that.

23          But, I mean, there are many discussions about

24    substantive issues related to these meetings that are going to

25    occur.  And there's also --

1    THE COURT:  I'm sorry.  I am interrupting you and I

2    shouldn't.  I was going to ask if you could point to one

3    substantive discussion that warrants redaction.

4    MR. COX:  Sure.  There's discussions on the very

5    first page about financial issues, losses related to certain

6    products, you know, right at the bottom of the first page of

7    the document.  Later in the document there are also

8    discussions around, you know, alleged damages, potential

9    resolutions of those damages.  And, you know, I think one of

10   the points that Your Honor was going to consider further after

11   the argument last time was that these are made pursuant to

12   confidentiality agreements between ZHP and LCM, and that's

13   substantiated by Me Zu's January 17, 2022, declaration.

14   And, Your Honor, in his May 24th, 2021, order,

15   considered the document to raise the very same issue.  The

16   very first document that you address in that order raises this

17   issue.  In the ruling to grant the motion to seal with respect

18   to that document, you were persuaded, as I understand it, by

19   third party privacy interests.  The same third party privacy

20   interests apply certainly to some of the communications.

21   Again, I'm not someone who is going to drive to Florence or

22   fly to Florence.  I'm not here to say that needs to remain

23   nonpublic, but that could be addressed through redactions.

24   THE COURT:  Do you want to submit to me a redacted

25   version of this information that you think should be redacted?

1          MR. COX:  I could do that, Your Honor.  I think we

2     would be left, though, with something that really is talking

3     about logistics and back and forth between the company in

4     which there really is no interest -- public interest in

5     disclosure.  And the substantive communications around

6     valsartan, those are communications that these two companies

7     agreed should remain between the two companies.  So, I mean,

8     well, I'll pause that.

9          THE COURT:  Mr. Geddis?

10          MR. GEDDIS:  Just preliminarily, I am concerned about

11     this back and forth about redactions because this was subject

12     to extensive meet and confer between myself and ZHP.  They

13     were given the opportunity to present me with redactions.

14     They did, in fact, offer redactions for other documents that

15     we were kind of waiting for these to be resolved and then

16     would go on to those.  And they did not present them in this

17     case or for the last document.  And it's just completely

18     inefficient and also contrary to local Rule 5.3 where if

19     you're making a motion to seal, you need to prove that there's

20     no less restrictive means to protect the interest that you're

21     advocating.  And if there are, your motion is denied.

22          But with that said, this is a routine business

23     communication and, you know, this sort of information that ZHP

24     is discussing, such as damages, are not -- don't warrant

25     sealing.  That's just ZHP trying to cover up its wrongdoing

1    and the consequences of its wrongdoing in this case, and the

2    public has an extremely high interest in understanding that,

3    to the extent possible.  Especially, you know, where Baohua

4    Chen on the -- what is it?  The -- on ZHP 01224767, it's

5    expected that Baohua Chen, the CEO of ZHP, is going to express

6    his regret for what happened and the willingness to listen and

7    to make a step towards Menarini's claims for damage.

8         And then finally, with respect to the confidentiality

9    argument, as you noted, Your Honor, at the last oral argument

10   you were reserving argument on that issue because we had

11   briefed it extensively with respect to an earlier motion to

12   seal.  And in your decision on that motion to seal, with

13   respect to that argument on pages 11 through 13, you rejected

14   the argument that a confidentiality agreement between two

15   private entities rendered a document confidential.  And you

16   cited *In Re:  Forest Research Institute* case, which is a Judge

17   Kugler case.  That stood for the same proposition that that is

18   essentially irrelevant.  What matters is the substantive

19   content of the document and is that worth sealing.  In this

20   case it doesn't warrant sealing and so it should be ruled

21   nonconfidential.

22         THE COURT:  What document are you referring to?  My

23   ruling --

24         MR. GEDDIS:  Your ruling is from February 10, 2022,

25   ECF 1911.

1    THE COURT:  Okay.  All right.  I'm not going to

2  receive another round of proposed redactions with respect to

3  this document.  I'll issue a ruling, but I believe this

4  document should not be sealed.  I think Mr. Geddis is correct

5  to point to my February 10, 2022 decision in recognizing that

6  the confidentiality agreements between two parties don't trump

7  the presumption of access accorded to judicial records.  So we

8  will issue a written decision on it, but I don't see any need

9  to seal this document.  All right.

10    I think that covers then the question of sealing of

11  documents.  Is there anything else on this issue?

12    MR. GEDDIS:  Your Honor, I just note, I think there

13  were 14 documents subject to the first oral argument.  Just to

14  -- I would point you to our letter from -- let me find it --

15  January 17th.  I listed them all and numbered them 1 through

16  14.

17    THE COURT:  Are there documents that we have not

18  addressed?

19    MR. GEDDIS:  Everything was handled.  I think the

20  only -- they gave you a proposed redaction to Exhibit 28, and

21  that was the only -- that was by email on February 8th.

22    THE COURT:  Okay.

23    MR. GEDDIS:  Proposed redactions for Exhibit CC.

24    THE COURT:  That's the exhibit we talked about today.

25    MR. GEDDIS:  There was a second one, Exhibit 28, but

1    those redactions were extremely limited.

2              THE COURT:  I have to address that yet, you're

3    saying?

4              MR. GEDDIS:  I don't know if we need to have oral

5    argument on it, but I just wanted to flag it as something --

6              THE COURT:  It's a loose end.

7              MR. GEDDIS:  Yes.  There's a lot of different

8    documents at issue.

9              THE COURT:  Sorry.  Is there anything else other than

10   Exhibit 28?

11             MR. GEDDIS:  No, Your Honor.

12             THE COURT:  All right.  Anything else on your end,

13   Mr. Cox?

14             MR. COX:  We'll submit to the Court and to plaintiffs

15   next Thursday -- or by next Thursday the redacted version of

16   Exhibit CC, and I thank you for that opportunity.

17             THE COURT:  Okay.  And we'll issue an order

18   memorializing that so that you have until next Thursday.

19         And then, Mr. Geddis, you'll have until the following

20   Thursday to give your response to the proposed redactions.

21   All right?  All right.

22         Let's move on then to the motion for sanctions at ECF

23   1838.

24         Will you be arguing this, Mr. Slater?

25             MR. SLATER:  I will, Your Honor.

```
 1              THE COURT:  All right.
 2              MR. SLATER:  Your Honor, I'm going to try to be brief
 3   in my opening comments and then respond as necessary, because
 4   I think that our briefs are very detailed and I think they
 5   make our arguments very clearly.  I'll just highlight a couple
 6   points that I think that are important to set the groundwork
 7   for whatever argument occurs today and whatever decision Your
 8   Honor's going to make.
 9              I really think that one of the logical starting points
10   is to look at what's been happening in this litigation.
11   Plaintiffs have been having their cases attacked and dismissed
12   for now I guess a year or two regarding what we would consider
13   to be technical deficiencies in plaintiff fact sheets, and the
14   defense has had no problem trying to have those cases
15   dismissed based on those discovery issues.
16              Now we have ZHP where -- with the Chairman of the
17   entire company not appearing for a deposition that Your Honor
18   has court ordered and some other issues with some documents
19   that Your Honor felt were important enough that you compelled
20   production of those documents.
21              The company has continued to sell their products in the
22   U.S.  They're off the import alert, and per the document we
23   just talked about, we know that when Baohua Chen wants to
24   travel for business purposes, after the recall that was
25   October 2019, he's able to do it.  So we have all that as a
```

1    background, and then I think that the next place to go really

2    is Judge Kugler's decision on the Chinese state secret

3    documents where Your Honor was affirmed.  Judge Kugler was

4    very, very clear in what he believed the law to be and

5    affirmed Your Honor in that decision.  And I thought a few of

6    the lines that he -- a few of the things he said on page 18 of

7    his decision, which is at 2021 Westlaw 6010575, that's the

8    Westlaw cite to Judge Kugler's decision.

9            THE COURT:  I have it on my screen.

10           MR. SLATER:  Terrific.  I think on page -- asterisk

11   18 is just, I think, very instructive.  I'll let Your Honor

12   get to that, but that's the page I'm looking at.

13           THE COURT:  I'm there.

14           MR. SLATER:  Thank you.  If you look in the

15   right-hand column where asterisk 18 is, if you go down a

16   paragraph or two, the judge does a very detailed -- gives a

17   very detailed treatment of what really what he calls I think a

18   Catch-22 at one point or a legal rock in a hard place that ZHP

19   has basically embedded itself into and said, please, take

20   mercy on us.  This isn't us; it's the government.  And Judge

21   Kugler was very clear in rejecting that entire argument.  He

22   was very clear that -- I'm quoting from him now -- PRC

23   defendants cannot enter the U.S. market expecting a possible

24   shield from unfavorable discovery by PRC blocking statutes.

25   As one judge's decision has implied, if you don't like the

1     rules, then stop doing business in the United States.

2          And the judge then, in the next paragraph said, you

3     risk serious consequences if you fail to obey a U.S. court's

4     order to compel discovery, and then talked about the fact that

5     the sanctions under Rule 37 are clearly enumerated and

6     available.

7          And that really is the roadmap for this motion.  I

8     can't imagine a more clear situation.  And even with the

9     passage of time, there still has been nothing done.  I think

10    that we may hear arguments about whether it was a prior law

11    firm, or whatever, or maybe there will be arguments about how

12    important really is Mr. Chen.  And I just want to foreshadow,

13    Mr. Chen's importance to this case has already been ruled on

14    by this court.  The Court's already found he's an important

15    witness, already found that he has relevance to the specific

16    issues.  And that's already been found in orders and his

17    deposition was court ordered.  So the idea that we are now

18    going to decide whether or not he's an important witness, or

19    had relevant knowledge, I think if ZHP intends to argue that,

20    that's really a train that's left the station a long time ago.

21         So looking at all of the factors here and looking at

22    the law -- and, again, I'll reserve my right to respond,

23    depending on what ZHP says, but there's no reasonable sanction

24    that's going to deal with in this conduct other than what

25    we've asked for, which is a complete striking of ZHP's

1  pleadings and the finding that the allegations against ZHP are

2  proven.  They can't shield their chairman from a deposition

3  under these circumstances and get away with anything less.

4  And this is a company, Your Honor, that we did a little

5  research on last week.  Their market capitalization as of

6  August 25th is 4.2 billion dollars.  So you're going to hear

7  ZHP, I would assume, say, well, you know, if you really feel

8  like you need to do it, give us a little monetary sanction.

9  But what number are you going to have to come up with to

10  impact a company with a market capital of over 4 billion

11  dollars?  I would say we didn't ask for, as our request,

12  monetary sanctions, but if Your Honor were to go that way, the

13  number would have to be very, very substantial and would have

14  to be ongoing and would have to really hurt ZHP in a financial

15  way.  It couldn't be -- a number that would hurt those of us

16  who don't have 4 billion dollars of market cap would be

17  meaningless to this company.  And that's why we think at this

18  point, in light of the passage of time, in light of the clear

19  orders, the clear findings by this court and by Judge Kugler

20  on the state secret motion, which really speaks to the issues

21  here very clearly, we ask Your Honor to enter the sanctions

22  that we've requested and --

23       THE COURT:  I would think an adverse inference

24  sanction along these lines that I'm going to say now would not

25  be appropriate.  The adverse inference would be that the jury

```
 1   would be able to draw an inference that ZHP was aware of the

 2   contamination of valsartan earlier than July of 2017.

 3            MR. SLATER:  I think that there were probably some --

 4   will be some devil-in-the-details-type discussions on what

 5   that would mean.  Obviously the question would be whether ZHP

 6   could try to refute the inference.  I think it would be --

 7   that would be positive.  I think it would be substantive.

 8   It's certainly not what we're asking for.  We are asking,

 9   obviously, to go much further and to end the discussion

10   altogether.  So to the extent Your Honor fashions a sanction

11   along those lines, we would just ask to make sure that it's a

12   bulletproof sanction where we're not going to end up still

13   trying the issue, if it were to come to that.  Obviously, this

14   is highly discretionary with Your Honor, and we recognize

15   that, and we understand you want to try to get to what's the

16   meat of this and what are we really trying to accomplish?  And

17   your point is well taken:  Is there a way to just get right to

18   it?  I would just ask that if Your Honor goes in that

19   direction, that it's a sanction with teeth that can't be

20   pulled off the bone at trial and that we don't end up still

21   litigating this inference.  And more important, I think if

22   Your Honor does go in that direction and does not award the

23   full scale of sanctions we've requested, I think that that

24   litigation sanction in terms of how we would proceed in

25   substantive proceedings, including trial, I think that it
```

1   would also be important to accompany that with a very

2   significant sanction of funding as well -- of funds as well

3   because I think that ZHP needs to feel this now and they need

4   to understand.  We understand how serious the federal courts

5   are, but I think ZHP at this point needs to see something

6   happen where they say, okay, we can't just keep buying time

7   and we can't assume we're going to get away with this.

8   Literally, what Judge Kugler talked to in his decision, and I

9   think we're here.  I think that's where we've reached this

10   point.

11          THE COURT:  Where do things stand with respect to the

12   production of Maggie Kong's custodial file?

13          MR. SLATER:  It's an interesting question.  What the

14   custodial file is, it would depend on whose definition you

15   come up with.  ZHP says they've produced it, and they produced

16   the privilege log, I believe, and they say, we're done.  We

17   will not be placated because that production, as Your Honor

18   knows from our papers -- but I know there's a lot of papers --

19   there were four documents.  This is the specific assistant and

20   right hand to Baohua Chen.  She has four documents in her

21   entire custodial file prior to June 28th, 2018, and we all

22   know that June is when everything broke.  The four documents

23   before June 28th are dated in January and February of 2018.

24   So we're being asked to believe that she didn't have one

25   relevant document between January and February 2018 and June

1  28.  So while this was all happening, she had no documents.  I

2  find that very, very difficult to believe.  There's nothing we

3  can do at this point because no other documents have slipped

4  through yet for us to be able to say, here, we have the

5  smoking gun.  But on its face, it's very hard to understand

6  why that would be.  So that's the status of Maggie Kong's

7  documents, Your Honor.

8       THE COURT:  Is there anything still outstanding with

9  respect to the SMO 54?

10       MR. SLATER:  I'll go through -- there's really the

11  four categories of documents.  You've hit the one.  The second

12  one was ZHP 02710347 in native with the metadata intact and

13  all nonprivileged documents bearing TC-201729.  I'm just

14  trying to get that in for the court reporter a little slowly.

15       THE COURT:  I know she appreciates it.

16       MR. SLATER:  That item, the last that we left it, I

17  believe that they went back and said they're going to resume

18  their search.  They're going to try to find more documents,

19  and to our knowledge we have not gotten a response to whether

20  they did so.  So I don't think that answer has been given.

21       The third category I can hit is all drafts of the

22  irbesartan investigation report, with all the metadata intact,

23  obviously.  We only still have the one version that we had

24  from the beginning that they found.  It's a PDF.  It's not

25  Word.  There's no other drafts and there's nothing else.  So

1  we don't believe that that order has been met, and we have

2  legitimate concerns, I think, at this point that the person

3  who was instrumental on that report and process, Mr. Lin,

4  there was no litigation hold for his files.  So that's

5  something that jumps up as part of potentially the explanation

6  for why we're not getting anything else.  But we don't believe

7  that production has been compliant.

8      The last is the remaining nitrosamine testing results

9  Your Honor ordered to be produced per Prinston 0075797.  ZHP

10 at various times said they were scanning and producing

11 results.  It was a massive amount of results.  If Your Honor

12 recalls, we had a meet and confer on this, and we've never,

13 ever received any confirmation that what we were given is

14 complete.  And we -- so we can't say that that's complete

15 either and we have serious questions about whether it is.  But

16 certainly we would need ZHP to confirm for sure that all of

17 those documents were produced before we could say they were

18 compliant on that.

19     Those are, I think, the four categories of documents,

20 Your Honor.

21         THE COURT:  The last category you were talking about,

22 these were the documents that had to be physically scanned, or

23 I'm trying --

24         MR. SLATER:  Exactly.  Test results that had to be

25 physically scanned.

```
 1          THE COURT:  Okay.  All right.  Thanks.
 2      Anything else?
 3          MR. SLATER:  Not at this time, Your Honor.
 4          THE COURT:  All right.  Who's addressing this issue
 5  for ZHP?
 6          MR. BERNARDO:  I am, Your Honor.  Richard Bernardo,
 7  who renamed his picture there incorrectly spelling his own
 8  name.
 9          THE COURT:  Mr. Bernardo.
10          MR. BERNARDO:  Apparently, I need new contact lenses.
11      Before I get to the core aspect of this motion, Your
12  Honor, which is Mr. Chen, I would like to just address the
13  document issues because it has been --
14          THE COURT:  I don't think that's the only issue.  The
15  document issue is one that troubles me very much.
16          MR. BERNARDO:  Understood, Your Honor, but I want to
17  address that preliminarily, is my point.  My understanding is
18  that each of those document issues has been addressed; that
19  the material that exists has been produced; that good faith
20  searches have been made.  And I'm obviously relying on
21  predecessor counsel, but I'm happy to meet with Mr. Slater to
22  go through that -- and I'll just say prove that out --
23  separately to address issues.  But I come here, Your Honor,
24  with the understanding that ZHP, despite its objection to some
25  of those categories, has, indeed, complied with those
```

1   requests.  The fact that Mr. Slater has raised issues, for

2   example, with his disbelief in whether a certain number of

3   documents exist or don't exist, or whether there should be or

4   shouldn't be a native version of another document, or things

5   that we can address.  But they certainly don't provide the

6   basis for this court addressing them from a sanction's

7   perspective.  And, again, I would welcome the opportunity to

8   dig further into that and to meet with Mr. Slater.  And if

9   there are outstanding issues, to own them and address them

10  with the Court.  But it's my understanding coming to this --

11  and I recognize those are important issues to Your Honor --

12  that those have been addressed by ZHP.  So --

13          THE COURT:  I am troubled by the fact that Maggie

14  Kong's file would only have four documents from January of

15  2018 to June of 2018.  That just doesn't make sense to me.

16          MR. BERNARDO:  Your Honor, I'm happy to look into

17  that.  I apologize for not being prepared to address that

18  particular point.  I was unaware that that was a specific

19  complaint as we've transitioned, but it's something I can

20  certainly look into.  But I do believe, from my understanding,

21  is that due diligence and appropriate efforts were made to

22  locate documents.  And I suspect, like with many things,

23  including my understanding of the memo, there could be an

24  explanation.  I would welcome the opportunity to provide that,

25  if that is an issue.

1      THE COURT:  Mr. Slater, are you open to meeting with

2   Mr. Bernardo on that?

3      MR. SLATER:  Well, I'm certainly open to whatever

4   Your Honor wants me to do.  I can say that I'm concerned --

5   and I foreshadowed this in my argument -- that we're not

6   getting definitive statements.  We're getting quote-unquote

7   understandings, references to predecessor counsel, this

8   question about whether this issue was raised.  It was clearly

9   in the papers.  We've laid this issue out.  There's no

10  surprise that we've been concerned about this -- about this

11  suspicious lack of documents.

12      Certainly, if they want to explain, they can try to

13  explain, but here we are at the argument date.  This motion

14  and these issues have been pending now for a really long time,

15  and I'm concerned about ZHP just saying, well, let us keep

16  just trying to explain this.  If they can't come in right now

17  and say, we definitively have confirmed that all of these

18  documents that were court ordered to be produced, including

19  the irbesartan draft report where we can't get anything with

20  actual metadata on it, an actual Word document, which harkens

21  back to the July 27th email.  It just happened to be a PDF

22  without the metadata, and it just happened to be in one

23  person's file.  The fact that these are patterns that have

24  repeated, I think that that should inform the Court's

25  consideration as well.

1          So I guess the short answer after the long answer is I

2     would prefer not to be in a situation where we have to now go

3     through ZHP, figuring out what they did or didn't do, when

4     they have never confirmed to the Court that they have complied

5     with that order.  I think that the determination should be

6     they haven't complied.  I think that -- because that's the

7     facts on the ground right now and that's all that's being

8     confirmed.

9          THE COURT:  Mr. Bernardo.

10          MR. BERNARDO:  Your Honor, I would disagree with

11     that, and I would say that the responding papers to this

12     motion did confirm, in fact, that the document issues were

13     being addressed and have been addressed.  I -- again, I

14     apologize if it's perceived that I'm not prepared to address

15     them, but my preparation to address them was to investigate

16     whether or not all of those had been dealt with.  And I take

17     Mr. Slater's point that I did preface my statement with "I

18     understand that," but, of course, that's really all I can do,

19     Your Honor, is to consult with prior counsel and to make a

20     confirmation.  I can now do more, now that Mr. Slater has

21     raised that, and get a more definitive confirmation for the

22     Court, but I would appreciate the opportunity and fairness to

23     address that because I don't want to represent things on the

24     record.  But I will say that I do have some understanding of

25     some of the issues, and I do believe that there are some

1    explanations for those just because I do understand that

2    they've been looked into.  I was under the impression that

3    when the productions were made it was communicated that these

4    had completed the efforts, and I will check into that as well.

5         But, again, my point, Your Honor, is it's my

6    understanding that the document issues have been addressed

7    reasonably and appropriately, some over ZHP's objections, some

8    being made at risk of failure to comply with Chinese law in a

9    good faith effort.  Some even made, Your Honor, when Your

10   Honor gave ZHP a chance to object to burden and substantiate

11   that objection.  In good faith, ZHP, under the circumstances,

12   said, no, we're not going to come back and revisit that.

13   We'll absorb the burden and we'll produce these.  And what I'm

14   referring to specifically are what you're describing as those

15   manually created nitrosamine testing documents.  So I don't

16   think it is fair or appropriate to use those as a basis of

17   sanctions here when, in fact, it's my understanding coming to

18   this Court that they have been addressed.

19        Again, I would be happy to meet with Mr. Slater and

20   provide him with whatever he needs to certify or demonstrate

21   that.  I acknowledge, Your Honor, that doesn't necessarily

22   mean that's the end of the scenario.  In other words, once we

23   confirm that something certainly exists, there's a completely

24   separate and different issue that plaintiffs may raise with

25   the Court as to why certain things don't exist.  But that's

1    different from not complying with a court order, Your Honor, I

2    would submit.

3        THE COURT:  I think, Mr. Bernardo, it would be

4    appropriate to ask that your counsel for ZHP certify that they

5    have complied with Special Master Order 54, SMO 54.  I think

6    the record should reflect that there's this certification that

7    conducted a diligence search and produced everything that you

8    ordered to be produced that we could find.

9        MR. BERNARDO:  I think that's fair and appropriate,

10   Your Honor.  I will embark to provide that.

11       THE COURT:  All right.  Thanks.

12       Let's talk about sanctions based upon the inability to

13   depose Mr. Chen.

14       MR. BERNARDO:  Yes.  Your Honor, I want to set the

15   table a little bit and focus on one particular word that Mr.

16   Slater used in his argument, which is the word "they."  I

17   think he said, "they cannot shield a Chairman."  I agree with

18   they cannot; ZHP cannot.  But this is not a circumstance like

19   the risk that they would be at for failure to comply with a

20   state secret law where they could be fined or punished.  This

21   is a circumstance where the Chinese government, not "they,"

22   not ZHP, prohibited Mr. Chen's travel, number one.  Number

23   two, it would almost be like Your Honor going to the airport

24   without a passport, without a driver's license, or any form of

25   identification.  There literally would be no way for him to

 1    travel out of the country without being provided by the

 2    Taizhou Exit-Entry Organization the appropriate documentation,

 3    which they didn't provide.  And I'll address all of that, but

 4    I just want to start by making it clear that this is not

 5    something where ZHP said, nope, we're not going to do it

 6    because Chinese law tells us this.  This is something where

 7    Mr. Chen literally was without ability to travel out of the

 8    country.

 9          Your Honor, because of those circumstances, plaintiffs

10    are essentially asking this Court to give them a directed

11    verdict against ZHP in the entire valsartan litigation, and we

12    would say that that request is beyond the pale for several

13    reasons.  First, throughout this, ZHP has acted in good faith,

14    particularly with respect to depositions in general, and Mr.

15    Chen's deposition in particular.  Second, there is no

16    prejudice here sufficient to justify the severe sanctions that

17    plaintiffs are requesting.  And, finally, any type of relief,

18    including with all respect, Your Honor, the type of adverse

19    inference that you were describing, I would argue would be

20    directly disproportionate to the circumstances here.

21          I don't think it's appropriate somehow.  First, it's

22    not a tit-for-tat.  But, second, to compare a plaintiff's

23    willful failure to abide by the most basic piece of discovery

24    that they have to abide by, to do it PFS, which I'm sure in

25    advance of not doing that they understood the consequences.

1   So I don't think that's quite the background or context in

2   which to evaluate this.

3        But I wanted to talk about -- because it's very

4   important -- that ZHP here, Your Honor, has at all times acted

5   in good faith to facilitate Mr. Chen's appearance at a

6   deposition.  Plaintiffs suggest in their papers, with zero

7   evidence, that Mr. Chen somehow could have used his position

8   as Chairman of the Taizhou Federation to obtain permission to

9   leave the country.  That's, first and foremost, completely

10  speculative and, equally important, absolutely wrong.  And it

11  fails to take into account significant differences between the

12  structure and operation of the Chinese government and the

13  structure and operation of the U.S. government with which we

14  are all familiar.  While Mr. Chen is the Chairman of that

15  federation, that is an honorary title that doesn't give him

16  power to make unilateral decisions.  Just looking at the

17  various websites that are relevant to these organizations, you

18  see that that organization is led by the communist party of

19  China and there's a representative of the communist party of

20  China in that organization.  And that organization, not Mr.

21  Chen as some honorary chair of that layer of the government,

22  has the authority to decide -- I'm sorry -- to permit or not

23  permit.

24        THE COURT:  You've given me a lot of information

25  here.

1          MR. BERNARDO:  Fair enough.

2          THE COURT:  Is it appropriate that you're saying

3   this?  Should there be a declaration of a witness, or

4   something that is evidentiary in nature?  Go to websites to

5   look at information?  That's something you get judicial notice

6   of or --

7          MR. BERNARDO:  Your Honor, first, if that's a

8   deciding factor, we'd be happy to provide that, but I was

9   merely providing it to state what I think is obvious and to

10  refute what really is just rank speculation that plaintiffs'

11  counsel made in their papers in reply to ours.

12         I think, Your Honor, you need not look farther than the

13  fact that the organization that you would expect Mr. Chen to

14  have some influence over, which is the -- I'll call it the

15  lower level communist party committee within ZHP.  In that

16  instance, they did, in fact, grant Mr. Chen's request.  So if

17  you're going to look at the ability to influence, you have to

18  look at where that ability logically could stand.

19         But to your point, Your Honor, I would be happy to

20  submit some declaration to support that, because we are

21  talking about some very serious sanctions.  We're talking

22  about basically ending the litigation against ZHP because

23  plaintiffs are speculating that given his numerous roles in

24  the Chinese government, he should have been able to influence

25  this decision.  I simply am pointing out as a matter of common

1    sense and understanding and respect to the differences in the

2    way we understand government to operate in the United States.

3    And the way we all know the government operates in other

4    countries, including China, which is vastly different.  We see

5    evidence of that on the news every day.

6        Your Honor, even while ZHP's motion was pending, the

7    apex motion, ZHP acted in good faith and started the process

8    of obtaining the government's permission.  The communist party

9    that I spoke about initially granted the request in June, and

10   right after that ZHP, as it was required to do, went to the

11   next layer it was required to.  And ZHP promptly notified the

12   court October 26th of the development that that organization,

13   the Taizhou Federation, denied the request.

14       But even more, Your Honor, after that -- and that's in

15   Ms. Lu's declaration -- ZHP continued to try and work with the

16   Chinese government to obtain authority, to see if they could

17   make an exception.  And that's an evidence not of trying to

18   prevent this, but that's an evidence of trying to work with

19   the government.

20       Now, from the very beginning, plaintiffs have known

21   there's a risk of this happening and chose not to avail

22   themselves of the Hague Convention.  I'm sure what we're going

23   to hear -- which is in their papers -- is, you know, that's

24   like playing the lottery.  I mean, one in, you know, 30 years

25   has been granted.  But that's not the point.  The point was

1    there was no effort even made.  It was determined that I don't

2    want to deal with that, or I don't like the restriction that

3    imposes.  But if you're evaluating sanctions, Your Honor,

4    litigation-ending sanctions, you have to consider the fact

5    that there was an alternative path.  Even the Court in its

6    December 21st hearing raised this other matter of the Hague

7    Convention, and Judge Kugler acknowledged that the root under

8    the Hague Convention might preclude -- quote, "might preclude

9    the imposition of sanctions."

10          Now, plaintiffs appear to suggest that he previously

11    found somehow that the Hague Convention is irrelevant to all

12    discovery disputes in the litigation.  They cite to the

13    lengthy December 20th -- 21st decision In re:  Valsartan.

14    But, Your Honor, they're misreading or misstating that Court's

15    decision.  Judge Kugler only found that the Hague Convention

16    rules are not the, quote, "exclusive consideration" in a

17    court's decision to compel discovery, to order it, to produce

18    discovery, which is what that case was all about.  That case

19    was all about producing documents and whether or not the Court

20    could order their production.  That's a fundamentally

21    different question, Your Honor, from whether the parties'

22    failure to use the procedures prescribed by the Hague

23    Convention are a relevant factor for Your Honor to consider in

24    a determination of whether it's going to punish ZHP.  In fact,

25    this distinction that I'm making is not made up.  It's well

1    born in the case law.  We cite to the Tenth Circuit case in

2    *Westinghouse* distinguishing between the power of court to

3    order discovery and the factors relevant there, and the

4    imposition of sanctions for failure to comply.

5           So, again, Your Honor, no bad faith.  We have good

6    faith.  And even after the PRC agencies denied Mr. Chen's

7    permission to travel, as I said, they continued to work with

8    him.  And as further evidence of good faith, in demonstration

9    that they were trying to provide information, you'll note that

10   in their papers ZHP offered the possibility of providing a

11   written declaration setting forth responses to questions.

12          I say all that, Your Honor, because what we're really

13   talking about here is did ZHP do something wrong, or were they

14   basically the victim of -- poor word -- but were they

15   basically subject to a government that denied a request to be

16   deposed?  As Your Honor knows, these deposition efforts were

17   quite difficult, and ZHP, as further demonstration of the good

18   faith it's acted in during this litigation, sought permission

19   and obtained permission from 12 other witnesses to travel from

20   China to outside the country at ZHP's expense.

21          THE COURT:  I'm aware of that.

22          MR. BERNARDO:  Your Honor, I will tell you,

23   obviously, I didn't represent ZHP at that time, but since I've

24   represented ZHP I've had to work to obtain clearance for

25   another witness to be able to testify.  And I can personally

1  attest to the challenges presented there and the great efforts

2  ZHP made to facilitate that process.  In fact, Your Honor may

3  recall, the company was concerned that notwithstanding their

4  clearance that they obtained because of the pandemic

5  restrictions at the time, they were concerned that Ms. Guo

6  could end up at the airport wouldn't let her go.  So we sought

7  from Your Honor an order so she could have that in her purse

8  just in case -- notwithstanding the permission she was

9  granted -- there was a problem.  And, of course, there wasn't

10  and she was deposed.

11      I say all that, Your Honor, because I think Mr. Slater

12  talks about context, but I want to talk about the context here

13  with respect to ZHP because what we're talking about is

14  punishing ZHP.  As Mr. Slater said, give them a sanction so

15  they can understand the seriousness of this.  But no sanction

16  is going to change a decision of the Chinese government to

17  permit or prohibit a deposition to occur.

18      Foreign law, as I said, not ZHP's conduct, is really

19  what has resulted in this outcome.  And we cited to -- which

20  is an important case -- the *Rogers* case, the United States

21  Supreme Court case, because that shows that the United States

22  Supreme Court concluded it's inappropriate to sanction a

23  company by dismissing its lawsuit because a blocking statute

24  prohibits its compliance with the discovery order.  It's the

25  exact same situation we had here.  And the Court made it clear

 1    that, quote, the inability to comply with foreign law is a

 2    weedy reason for non-production of discovery materials.  And

 3    that was documents, not even compelling the witness.  And the

 4    notion that courts in the U.S. have discretion to exercise --

 5    to excuse violations is also set out in the restatement which

 6    we cite to.

 7         The only case that plaintiffs cite to, Your Honor, we

 8    would suggest and we pointed out, is this *Abiola* case, which

 9    is really inapposite.  This was a case where the single

10    individual who was accused of all -- directing all of these

11    atrocities on Nigerian citizens basically told them that he

12    would agree to be deposed.  Never mentioned any issues with

13    respect to the possibility of the government prohibiting him,

14    and then all of a sudden reneged on that and used the

15    government as an excuse.  That is not what is going on here.

16    That is bad faith.  This is not bad faith.

17         Your Honor, even if somehow you're inclined to think

18    that the bad faith -- I'm sorry -- that the government's

19    decision could somehow be construed as bad faith on ZHP,

20    plaintiffs can't demonstrate prejudice here, which is another

21    requisite element to the type of sanctions that they're

22    seeking.  To Mr. Slater's point, I'm not here to re-litigate

23    the apex motion.  We understand the Court's decision.

24    However, that decision to order his deposition doesn't mean

25    that the absence of it necessarily prejudices plaintiff to the

1    point of basically a directed verdict against ZHP.

2         As the Third Circuit has explained in the *Spirit* case

3    we cite, the thrust of Supreme Court juris prudence is that

4    sanctions that affect the outcome of a trial should only be

5    imposed in order to compensate for violations that may

6    plausibly be thought to likely affect the outcome of the

7    trial.  And here, with the number of depositions that have

8    been taken in this case, including a deposition that lasted

9    over two days to address other issues that were raised, it

10   can't plausibly be stated that the absence of the deposition

11   of Mr. Chen will affect the outcome of this trial.

12   Particularly, Your Honor, when you look at the expert reports,

13   none of which, you know, were hampered in any way by the

14   absence of this testimony so there's no prejudice.  The 17 ZHP

15   witnesses have been deposed on a multitude of topics.

16        And, again, I want to go to the prejudice and to the

17   point that I raised earlier.  Your Honor has to consider the

18   fact that not even trying to get information from Mr. Chen

19   through another means that ZHP offered.  That is, trying to

20   work together to come up with a declaration, as we did with

21   Ms. Guo's deposition, to negotiate stipulations, or something,

22   evidences the fact that they really don't need this because if

23   they really did and really believed this was outcome

24   determinative, they at least would have explored that

25   opportunity.  Instead, they basically want a windfall.

1          Finally, Your Honor, the most important thing is

2    there's absolutely no relationship, no proportionality between

3    what resulted -- in other words, the Chinese government's

4    prohibition on his testimony -- and the requested sanction,

5    which is striking defenses.  ZHP, as I pointed out, has gone

6    through great lengths, and imposing these sanctions would --

7    or any kind of sanctions effectively result in a windfall.

8          Your Honor, while we strongly disagree that any

9    sanctions are warranted, at best, monetary sanctions, and

10   certainly not of the type that Mr. Slater is requesting that

11   appears to be some portion of their net worth.  Maybe it's the

12   cost of bringing this motion.  But, Your Honor, again, I want

13   to go back to the first point I started with in conclusion,

14   which is you need to look at this in terms of what is really

15   going on, which is, you know, another government is making a

16   decision to withhold documentation for someone to travel.

17   That is not something that ZHP has control of.  They made

18   efforts to try and get the government to change its mind and

19   failed, and it's totally inappropriate to punish ZHP through

20   striking its defenses, or even worse, through an adverse

21   inference that discusses a particular document or a particular

22   piece of evidence for which there's absolutely no evidence

23   that Mr. Chen could contribute additional information.

24          So in conclusion, Your Honor --

25             THE COURT:  Let me see if I can phrase this

1   correctly.  They look to the fact that ZHP has elected to do

2   business in the United States.  United States has opened

3   discovery laws.  It's been suggested by some that discovery in

4   civil litigation in the United States may have risen to the

5   stature of a right protected by the due process clause and ZHP

6   has chosen to do business here, that it has assumed the risk

7   that its government would preclude it from presenting or

8   making available a witness, or witnesses, the consequence of

9   which would be sanctions that cause it to lose the case.

10  Isn't that a risk that ZHP assumed by deciding to do business

11  in the United States?

12          MR. BERNARDO:  No, Your Honor.  I disagree with that.

13  I think it's a risk that they would assume if they would

14  actively choose to take a position.  If they would actively

15  not provide something.  But it should not be a consequence to

16  ZHP if the Chinese government does something because that's so

17  purely speculative as to whether that could occur.  That

18  essentially would be telling any foreign corporation you

19  should not do business in the United States, which cannot

20  possibly be the public policy or outcome that would be

21  appropriate.

22          Again, while that's not the circumstance here, Your

23  Honor, I could see that argument being made -- and, in fact, I

24  believe it was made by plaintiffs -- if ZHP was choosing not

25  to do something.  Because then you could weigh their two

1    choices.  You chose to do business here, but now you're

2    choosing not to play by the rules.  But that's not at all what

3    we're talking about.  We're talking about them being precluded

4    from doing something.

5         So in conclusion, Your Honor, again, I think plaintiffs

6    have to show bad faith here for this type of sanction and for

7    any of the type that we're talking about.  And they cannot

8    show it.  They can speculate, but they cannot show it.

9    Plaintiffs cannot legitimately argue that they're prejudiced,

10   because if they were, then they would have done whatever they

11   could possibly do to secure his presence, or at the very

12   least, say, let's see what we could do about doing written

13   questions.  That would be a plaintiff who felt as if they were

14   prejudiced.  And then, of course, Your Honor, under these

15   circumstances, the types of sanctions being sought here are

16   just wildly disproportionate to the circumstance.

17        Thank you, Your Honor.

18         THE COURT:  Thank you, Mr. Bernardo.

19        Mr. Slater.

20         MR. SLATER:  Thank you, Judge.

21        I'll try to take in buckets a little bit of what Mr.

22   Bernardo talked about.  The entire discussion about whether or

23   not ZHP acted in good faith or bad faith actually isn't even a

24   factor.  I'm looking at Judge Kugler's decision where he cited

25   to the *Activision* case that said even if the party has made a

```
 1   good faith effort to secure permission from the foreign
 2   authorities to make -- the information available in that
 3   effort has been unsuccessful, that the significant sanctions
 4   are appropriate.  So all these discussions -- all those
 5   arguments really are red herrings.  And we also know that
 6   we've seen the form that was submitted.  And I took a lot of
 7   note when Mr. Bernardo talked about the fact that, well, with
 8   this other deposition we got an order from you, Judge, and we
 9   got that to make sure she can get out of the country.  Well,
10   Judge, they got an order from you, too, about Baohua Chen.
11   You ordered him to be deposed and to appear for his
12   deposition.  And their disclosure to the Chinese government,
13   to the organization or the committee or whatever it is that
14   Mr. Chen is, I think, the Chairman of, the part of the
15   government that refused to let him leave the country, doesn't
16   mention the order.  Doesn't attach the order.  Doesn't submit
17   it.  It just says he has litigation issues he needs to address
18   as opposed to a federal court has ordered me to be deposed by
19   court order and this could end up in very significant
20   sanctions for my company.  Please let me do this.  There's
21   nothing like that.  And they left the section for his
22   quote-unquote opinion as to why this was important blank.  So
23   even if we did go to the good faith/bad faith, there are
24   things that on their face show a lack of good faith and a lack
25   of openness to try to get him to be deposed.  Judge, we know
```

1    that ZHP doesn't want him deposed.  I mean, the idea that

2    they're doing everything they can -- were they doing

3    everything they could when they blocked -- when they tried to

4    block the custodial file from being produced and objected to

5    his deposition to the point where they took these issues up to

6    Judge Kugler?  I mean, so they've never wanted him to be

7    deposed.  And I think that where we really come down to is --

8    before I get to the final upshot I want to say one other

9    thing.  Counsel mentioned that there's no important evidence

10   that's going to come from Mr. Chen.  There's no expert reports

11   that would say his evidence matters.  Mr. Bernardo should read

12   the deposition testimony of David Chesney, ZHP's good

13   manufacturing practices expert who I deposed, who wrote an

14   article about the fact that the top executive in the

15   company -- in this case Baohua Chen -- is responsible

16   personally for everything the company does.  And we know from

17   the papers we've submitted to Your Honor he was the head of

18   all their quality organizations, which are the ones who were

19   supposed to prevent this from slipping through and happening.

20           And -- one second, Your Honor.  So he's -- so Mr.

21   Chesney says not only is Mr. Chen as the top executive the

22   primary person responsible for everything that happened, but

23   he even talks in the article about criminal penalties and that

24   it would flow up to someone in Mr. Chen's position and confirm

25   that that could apply here.  He didn't make a final opinion

1    that it did because there was a lot of facts he was not

2    provided.  But his testimony was devastating on that point.

3    He laid everything at the feet of Mr. Chen.  That's their own

4    GMP expert, David Chesney.

5         I think that where we come back to is really where we

6    started, and it's a very straight forward situation.  The

7    government of China doesn't dictate to the United States

8    judicial system how litigation will proceed in the United

9    States.  And this entire argument of, well, what do you want

10   us to do?  We're just a company in China.  Your Honor hit it

11   right on the head.  They chose to do business in the U.S. to

12   make billions of dollars on these drugs.  Billions.  This

13   company is up and running with a multibillion dollar cap.

14   They are selling the products in the U.S. again, but they just

15   want a pass because their government won't let them give

16   discovery that they've been ordered by federal judges.  Well,

17   that's why Judge Kugler's decision says what it says.  That's

18   why the decisions he relied on say what they say because,

19   otherwise, if Your Honor were to say, well, you know what?

20   You're right.  It's really not ZHP.  It's really the Chinese

21   government.  That means that every single Chinese company

22   doing business in the U.S. could do whatever they want.  And

23   then if they do something wrong, and now the justice system

24   comes down on them, they say, well, sorry.  China won't let us

25   participate in that, but thank you for the FDA approval.

1   Thank you for the sale of billions of dollars, et cetera.  We

2   all know that could never be permitted.  In fact, taking this

3   transcript, I think Your Honor can make a very compelling

4   decision on this to say, here's the arguments we're getting,

5   which are, we're sorry.  Nothing I can do about this.  And

6   that's exactly why these very significant sanctions should be

7   entered here because everybody needs to know, in this

8   litigation and beyond, the U.S. judicial system is not up for

9   grabs because a country like China decides we're going block

10  people from leaving the country to be deposed.  And by the

11  way, one person is going to be blocked.  All these other

12  witnesses who were deposed, but he wasn't because they won't

13  let him go, he's special, all of this smacks of being

14  suspicious.  But ultimately it doesn't matter how many other

15  witnesses we deposed.  He's the guy who we've proven had

16  significant direct involvement.  Their own expert, Mr.

17  Chesney, says he is the person who is ultimately responsible

18  for everything.  And these violations are so significant in

19  not allowing the chairman of the company to be deposed, I

20  think at this point we can move on from this.

21       The last thing I want to say is counsel is talking

22  about the Hague Convention again.  I thought that was already

23  taken care of.  The law that we've cited says we don't have to

24  resort to the Hague.  We already understand why.  We have the

25  Federal Rule of Civil Procedure.  ZHP is before this Court.

1   So we did everything appropriately.  When counsel says, well,

2   if they really wanted his information, they would've done

3   something more.  Well, what else could we do?  We fought

4   motions.  We had to fight motions on the custodial file.  We

5   had to fight protective order on the deposition.  We had to go

6   up to Judge Kugler.  We're now here seeking the sanctions.

7   We've done everything possible other than going to the defense

8   and saying, well, yeah, we'll take something far less than

9   what we actually need because we want to make life easy.  No.

10  We have the right to the discovery that's ordered and

11  appropriate.  We're not getting it.  There should be no more,

12  you know, come back in another week or two, or month or two

13  and let us know how you feel.  This has gone on long enough,

14  and we really believe that the sanctions -- if there's not a

15  case -- if this is a case where it's not appropriate to enter

16  these sanctions, I don't know what case would be based on the

17  law that we have in front of us, and especially on Judge

18  Kugler's decision.  So we ask you to award the sanctions we

19  have requested, please.

20      THE COURT:  Why would a deposition on written

21  interrogatories be inadequate?

22      MR. SLATER:  Well, first of all, you're assuming that

23  we could get him, because remember -- and by the way, I'm glad

24  you asked the question.  The so-called law that's blocking him

25  from leaving the country, which has never been actually cited

1   in the briefs and never been laid out and explained to the

2   Court why he really can't leave, why he has to ask for

3   permission, et cetera.  All we know is there's some

4   administrative requirement.  We have nobody who's actually

5   been knowledgeable, other than the administrative person who

6   said, this is what I submitted, who's actually explained

7   legally why they have the right to flout this Court's

8   discovery order.  So that's number one.

9       Number two, why should we be limited to something that

10  Your Honor's already ordered we don't have to be placated

11  with?  Even if we could get China to say, fine, submit your

12  written questions, your four written questions.  They ask him

13  the questions.  We get back whatever we get.  There's no

14  follow-up.  There's no going through documents.  So that would

15  really be inefficient and a waste of time, I think.

16          THE COURT:  Mr. Bernardo, brief rebuttal.

17          MR. BERNARDO:  First of all, with all respect,

18  plaintiffs' counsel's philosophy of how intercountry juris

19  prudence should work flies in the face of established United

20  States Supreme Court precedence that's been cited by federal

21  courts of appeal.  I've already made my argument.  I won't

22  repeat it.  I disagree with the reading of the opinion that

23  Judge Kugler had and its relevance here.

24          As to the form, Your Honor, first of all, the word

25  "requirements" is in there.  Secondly, none of us here are

1   experts or understand the cultural issues and how best to fill

2   out a form in China to try and ensure that it would be

3   granted.  And I would suspect that the way in which Mr. Slater

4   described it could almost ensure its rejection by the Chinese

5   government.  But, again, my only point here is I don't think

6   there's any deficiency in the form.  The fact that we objected

7   to the apex -- on the basis of apex to the deposition going

8   forward, which, as you know, Your Honor, virtually every

9   defendant does when a plaintiff seeks to take the senior most

10  executive.  That's an appropriate thing to do.  Again, I'm not

11  going to re-litigate that.  But because we're exercising our

12  right to make that objection doesn't mean that somehow they

13  didn't act in good faith by way of follow-up in response to

14  the order.

15          And as to Mr. Chesney's report, well, I disagree with

16  the characterization of that testimony in his article.  The

17  fact that the buck stops there and that Mr. Chen is

18  responsible doesn't mean that plaintiffs are prejudiced

19  because he somehow has detailed information that they would

20  need.  And, in fact, the record establishes and shows the

21  other from the testimony of other witnesses.

22          And, again, you know, these overly broad statements.

23  So this means every Chinese company can do whatever it wants.

24  That's not what we're talking about here.  We're not talking

25  about somebody who's flouting this process or procedure here.

1    They're talking about somebody who's trying appropriately to

2    satisfy its discovery obligations while satisfying its own

3    country's obligations.  And I think -- and that's even been

4    commented on by Judge Kugler, and perhaps even yourself, the

5    demonstration throughout this process and some of the foreign

6    companies in good faith.  So I think for one deposition, to

7    make that statement that a company can do whatever they want,

8    that's not what's going on here and that's not what is at

9    issue.

10        So, again, while -- with respect to the Hague, well, I

11   agree.  Plaintiffs don't have to, and Judge Kugler said as

12   much.  I was very clear.  I'm not disputing that.  What I'm

13   saying is when they're up here asking for these extreme

14   sanctions to basically end the case against ZHP, not having

15   tried to do that is a factor for consideration, and Judge

16   Kugler did say that.

17        So, again, Your Honor, the sanctions that are being

18   sought are extreme, are inappropriate, and basically are

19   punishing ZHP, who's otherwise acted in good faith, because of

20   a decision on a single deposition by the Chinese government.

21        THE COURT:  Thank you.

22        All right.  We'll take the matter under advisement,

23   obviously.  It's an extremely important matter.  It's a

24   serious matter.  I certainly want to explore the question of

25   whether there are lesser sanctions that would be adequate,

1   because I think the inability to take Mr. Chen's deposition

2   is, with all due respect, a serious impediment to plaintiffs'

3   preparation of their case.  The particular prejudice, I'm not

4   sure I can articulate right now.  I mean, obviously you've

5   been waiting a long time for a ruling on this matter, and I

6   know where things stand.  Right now we're at the end at least

7   this part of the case in terms of discovery.  I know there's a

8   lot more to be done, and the relief being requested here is,

9   indeed, most serious.  So I'm going to take my time to work

10  through this, but it is troubling.  I am troubled by the fact

11  that a witness I would regard as an important witness cannot

12  be deposed.  I'm not attributing any fault right now to

13  anyone.  I'm not saying that anybody's blameless on this

14  matter, but there has to be something that a U.S. litigant can

15  do when they seek testimony from a very significant witness

16  and are precluded from obtaining it.

17        All right.  Thank you very much.  Anything else for

18  today?

19        MR. SLATER:  No, Your Honor.  Thank you very much.  I

20  appreciate you moving this by a week.  Thank you very much.

21        THE COURT:  Thank you.

22        MR. BERNARDO:  Thank you for taking the time to hear

23  this, Your Honor.  I appreciate that.

24        THE COURT:  Take care.  Bye bye.

25        (Court concludes at 12:41 p.m.)

1          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE.

2               - - - - - - - - - - - - - - - - - - - - - - -

3

4        I certify that the foregoing is a correct transcript from

5    the record of proceedings in the above-entitled matter.

6

7

8        I

9

10

11    **/S/ Megan McKay-Soule, RDR, CRR**      **September 12, 2022**

12              Court Reporter                          Date

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*District of New Jersey*

**/**

**/S** [1] - 61:11

**0**

**0043** [1] - 7:3
**0075797** [1] - 33:9
**01224767** [1] - 23:4
**02324740** [1] - 9:7
**02324745** [1] - 10:25
**02324779** [1] - 18:20
**02324783** [1] - 16:24
**0234779** [1] - 16:13
**02710347** [1] - 32:12
**07068** [1] - 1:13
**08101** [1] - 1:7

**1**

**1** [1] - 24:15
**10** [4] - 5:1, 14:18, 23:24, 24:5
**103** [1] - 1:13
**11** [2] - 2:20, 23:13
**11:00** [2] - 1:8, 2:3
**12** [2] - 45:19, 61:11
**1250** [2] - 2:15, 20:10
**12:41** [1] - 60:25
**13** [1] - 23:13
**14** [2] - 24:13, 24:16
**1440** [1] - 1:16
**16** [1] - 11:4
**17** [2] - 21:13, 48:14
**17th** [1] - 24:15
**18** [3] - 27:6, 27:11, 27:15
**1838** [1] - 25:23
**18th** [2] - 2:9, 2:20
**19-md-02875** [1] - 1:4
**1911** [1] - 23:25

**2**

**2** [1] - 14:22
**20** [2] - 2:15, 20:10
**20005** [1] - 1:17
**2017** [3] - 11:11, 11:14, 30:2
**2018** [7] - 6:8, 11:2, 31:21, 31:23, 31:25, 35:15
**2019** [1] - 26:25
**2021** [4] - 8:14, 13:10, 21:14, 27:7
**2022** [8] - 1:8, 2:3, 4:25, 14:4, 21:13, 23:24, 24:5, 61:11
**20th** [1] - 44:13
**21st** [2] - 44:6, 44:13

**22** [1] - 11:2
**24th** [1] - 21:14
**25th** [1] - 29:6
**26th** [1] - 43:12
**27th** [1] - 36:21
**28** [4] - 24:20, 24:25, 25:10, 32:1
**28th** [2] - 31:21, 31:23

**3**

**30** [1] - 43:24
**37** [1] - 28:5

**4**

**4** [2] - 29:10, 29:16
**4.2** [2] - 14:12, 29:6
**4787** [1] - 18:21
**4th** [1] - 1:7

**5**

**5.3** [1] - 22:18
**54** [3] - 32:9, 39:5
**55** [1] - 15:11
**58** [2] - 7:15, 14:13

**6**

**60** [1] - 17:11
**6010575** [1] - 27:7
**609** [1] - 1:21

**7**

**741** [1] - 9:20
**7470** [1] - 9:20

**8**

**8** [3] - 1:8, 2:3, 6:8
**815-2319** [1] - 1:21
**8th** [5] - 4:25, 6:6, 7:2, 14:4, 24:21

**9**

**9** [3] - 4:25, 14:18, 14:21

**A**

**a.m** [2] - 1:8, 2:3
**abide** [2] - 40:23, 40:24
**ability** [3] - 40:7, 42:17, 42:18
**Abiola** [1] - 47:8
**able** [6] - 15:25, 26:25, 30:1, 32:4, 42:24,

45:25
**above-entitled** [1] - 61:5
**absence** [3] - 47:25, 48:10, 48:14
**absolutely** [6] - 17:12, 19:6, 20:19, 41:10, 49:2, 49:22
**absorb** [1] - 38:13
**access** [11] - 5:20, 6:21, 12:22, 13:4, 13:8, 14:23, 15:6, 15:18, 16:21, 18:13, 24:7
**accessibility** [1] - 5:2
**accessible** [1] - 7:6
**accompanies** [1] - 18:11
**accompany** [1] - 31:1
**accomplish** [1] - 30:16
**accorded** [1] - 24:7
**according** [1] - 2:11
**account** [2] - 8:14, 41:11
**accused** [1] - 47:10
**acknowledge** [1] - 38:21
**acknowledged** [3] - 11:23, 17:16, 44:7
**Act** [1] - 4:18
**act** [1] - 58:13
**acted** [6] - 40:13, 41:4, 43:7, 45:18, 51:23, 59:19
**ACTION** [1] - 1:3
**action** [1] - 13:7
**actively** [2] - 50:14
**Activision** [1] - 51:25
**actual** [3] - 14:16, 36:20
**ADAM** [1] - 1:12
**Adam** [1] - 3:12
**additional** [1] - 49:23
**address** [16] - 3:9, 12:10, 21:16, 25:2, 34:12, 34:17, 34:23, 35:5, 35:9, 35:17, 37:14, 37:15, 37:23, 40:3, 48:9, 52:17
**addressed** [11] - 2:13, 8:16, 10:6, 21:23, 24:18, 34:18, 35:12, 37:13, 38:6, 38:18
**addressing** [4] - 2:24, 3:24, 34:4, 35:6
**adequate** [5] - 5:11, 59:25
**administrative** [2] - 57:4, 57:5

**admits** [1] - 4:24
**advance** [1] - 40:25
**advantage** [2] - 16:8, 16:19
**adverse** [4] - 29:23, 29:25, 40:18, 49:20
**advisement** [1] - 59:22
**advocating** [2] - 15:15, 22:21
**affect** [3] - 48:4, 48:6, 48:11
**affiliated** [1] - 20:16
**affirmed** [2] - 27:3, 27:5
**agencies** [1] - 45:6
**agency** [2] - 6:22, 8:22
**agency's** [1] - 11:23
**ago** [1] - 28:20
**agree** [6] - 9:16, 11:25, 16:5, 39:17, 47:12, 59:11
**agreed** [1] - 22:7
**agreement** [1] - 23:14
**agreements** [2] - 21:12, 24:6
**ahead** [1] - 12:14
**aided** [1] - 1:23
**airport** [2] - 39:23, 46:6
**akin** [1] - 4:16
**alert** [1] - 26:22
**allegations** [1] - 29:1
**alleged** [1] - 21:8
**allowing** [1] - 55:19
**almost** [3] - 19:5, 39:23, 58:4
**ALSO** [1] - 1:24
**alternative** [1] - 44:5
**altogether** [1] - 30:10
**amassed** [1] - 18:11
**amount** [1] - 33:11
**answer** [5] - 3:10, 5:17, 32:20, 37:1
**apex** [4] - 43:7, 47:23, 58:7
**API** [5] - 10:17, 16:14, 16:15, 16:24, 16:25
**apologize** [2] - 35:17, 37:14
**appeal** [1] - 57:21
**appear** [4] - 11:20, 19:13, 44:10, 52:11
**appearance** [1] - 41:5
**appearing** [1] - 26:17
**apple** [2] - 6:16, 18:17
**applicable** [2] - 5:1, 7:20
**application** [4] - 7:13,

11:24, 12:22, 12:24
**apply** [4] - 5:12, 5:21, 21:20, 53:25
**appreciate** [4] - 19:7, 37:22, 60:20, 60:23
**appreciates** [1] - 32:15
**approach** [1] - 11:20
**appropriate** [17] - 10:11, 16:4, 19:10, 19:12, 29:25, 35:21, 38:16, 39:4, 39:9, 40:2, 40:21, 42:2, 50:21, 52:4, 56:11, 56:15, 58:10
**appropriately** [4] - 17:23, 38:7, 56:1, 59:1
**approval** [1] - 54:25
**argue** [5] - 3:2, 20:22, 28:19, 40:19, 51:9
**argued** [2] - 5:5, 5:18
**arguing** [2] - 4:2, 25:24
**argument** [21] - 2:9, 4:20, 15:24, 17:21, 20:14, 21:11, 23:9, 23:10, 23:13, 23:14, 24:13, 25:5, 26:7, 27:21, 36:5, 36:13, 39:16, 50:23, 54:9, 57:21
**ARGUMENT** [1] - 1:5
**arguments** [7] - 2:5, 4:7, 26:5, 28:10, 28:11, 52:5, 55:4
**ARPS** [1] - 1:15
**article** [7] - 4:25, 6:6, 14:11, 14:16, 53:14, 53:23, 58:16
**articulate** [1] - 60:4
**aspect** [1] - 34:11
**assistant** [1] - 31:19
**assume** [3] - 29:7, 31:7, 50:13
**assumed** [2] - 50:6, 50:10
**assuming** [1] - 56:22
**asterisk** [2] - 27:10, 27:15
**atrocities** [1] - 47:11
**attach** [1] - 52:16
**attached** [3] - 6:7, 10:20, 19:3
**attacked** [1] - 26:11
**attest** [1] - 46:1
**attorneys** [1] - 3:15
**attributing** [1] - 60:12
**audit** [1] - 11:10
**audits** [2] - 7:19, 15:1

August [1] - 29:6
authorities [1] - 52:2
authority [7] - 5:15, 13:25, 14:10, 14:14, 41:22, 43:16
avail [1] - 43:21
available [8] - 3:20, 10:17, 10:22, 16:10, 18:2, 28:6, 50:8, 52:2
Avandia [4] - 15:6, 15:14, 19:21, 20:7
Avenue [1] - 1:16
avenue [1] - 5:2
avoid [1] - 3:5
award [2] - 30:22, 56:18
aware [2] - 30:1, 45:21

**B**

background [2] - 27:1, 41:1
bad [7] - 45:5, 47:16, 47:18, 47:19, 51:6, 51:23
Baohua [7] - 6:1, 23:3, 23:5, 26:23, 31:20, 52:10, 53:15
based [5] - 12:24, 18:18, 26:15, 39:12, 56:16
basic [1] - 40:23
basis [3] - 35:6, 38:16, 58:7
batch [1] - 16:18
batches [1] - 11:4
bearing [1] - 32:13
became [2] - 11:10, 11:13
beginning [4] - 9:11, 11:24, 32:24, 43:20
believes [1] - 10:3
BERNARDO [14] - 1:16, 34:6, 34:10, 34:16, 35:16, 37:10, 39:9, 39:14, 42:1, 42:7, 45:22, 50:12, 57:17, 60:22
Bernardo [10] - 34:6, 34:9, 36:2, 37:9, 39:3, 51:18, 51:22, 52:7, 53:11, 57:16
best [3] - 3:23, 49:9, 58:1
between [14] - 10:9, 11:12, 15:14, 20:16, 21:12, 22:3, 22:7, 22:12, 23:14, 24:6, 31:25, 41:11, 45:2, 49:2
beyond [2] - 40:12, 55:8
billion [3] - 29:6, 29:10, 29:16
billions [3] - 54:12, 55:1
binding [2] - 13:22, 14:8
bit [4] - 13:20, 20:21, 39:15, 51:21
bite [2] - 18:17, 19:8
bites [1] - 6:15
blameless [1] - 60:13
blank [1] - 52:22
block [2] - 53:4, 55:9
blocked [1] - 53:3, 55:11
blocking [3] - 27:24, 46:23, 56:24
bone [1] - 30:20
born [1] - 45:1
bottom [1] - 21:6
breadth [1] - 17:15
brief [5] - 4:20, 6:7, 20:14, 26:2, 57:16
briefed [1] - 23:11
briefly [1] - 12:10
briefs [4] - 4:15, 4:19, 26:4, 57:1
bringing [1] - 49:12
broad [3] - 15:23, 18:24, 58:22
broke [1] - 31:22
buck [1] - 58:17
buckets [1] - 51:21
Building [1] - 1:6
bullet [1] - 14:22
bulletproof [1] - 30:12
burden [2] - 38:10, 38:13
business [10] - 22:22, 26:24, 28:1, 50:2, 50:6, 50:10, 50:19, 51:1, 54:11, 54:22
buying [1] - 31:6
BY [4] - 1:12, 1:12, 1:15, 1:16
bye [2] - 60:24

**C**

Camden [1] - 1:7
cannot [9] - 27:23, 39:17, 39:18, 50:19, 51:7, 51:8, 51:9, 60:11
cap [2] - 29:16, 54:13
capital [1] - 29:10
capitalization [1] - 29:5
care [2] - 55:23, 60:24
case [30] - 6:3, 15:20, 22:17, 23:1, 23:16, 23:17, 23:20, 28:13, 44:18, 45:1, 46:8, 46:20, 46:21, 47:7, 47:8, 47:9, 48:2, 48:8, 50:9, 51:25, 53:15, 56:15, 56:16, 59:14, 60:3, 60:7
cases [2] - 26:11, 26:14
Catch-22 [1] - 27:18
categorically [6] - 10:13, 12:1, 12:4, 12:5, 12:8, 12:25
categories [3] - 32:11, 33:19, 34:25
category [3] - 7:20, 32:21, 33:21
CC [3] - 2:14, 24:23, 25:16
CC18004 [1] - 11:2
CEO [1] - 23:5
cert [1] - 3:14
certain [4] - 2:8, 21:5, 35:2, 38:25
certainly [11] - 20:18, 21:20, 30:8, 33:16, 35:5, 35:20, 36:3, 36:12, 38:23, 49:10, 59:24
CERTIFICATE [1] - 61:1
certification [1] - 39:6
certify [3] - 38:20, 39:4, 61:4
cetera [2] - 55:1, 57:3
chain [2] - 20:15, 20:16
chair [1] - 41:21
Chairman [5] - 26:16, 39:17, 41:8, 41:14, 52:14
chairman [2] - 29:2, 55:19
challenges [1] - 46:1
chance [3] - 12:11, 15:22, 38:10
change [2] - 46:16, 49:18
characterization [1] - 58:16
chart [4] - 13:21, 14:8, 14:13, 18:10
charts [1] - 10:14
check [1] - 38:4
checks [1] - 11:12
chemical [2] - 17:1, 29:5
Chen [23] - 6:1, 23:4, 23:5, 26:23, 28:12, 31:20, 34:12, 39:13, 40:7, 41:7, 41:14, 41:21, 42:13, 48:11, 48:18, 49:23, 52:10, 52:14, 53:10, 53:15, 53:21, 54:3, 58:17
Chen's [8] - 28:13, 39:22, 40:15, 41:5, 42:16, 45:6, 53:24, 60:1
Chesney [4] - 53:12, 53:21, 54:4, 55:17
Chesney's [1] - 58:15
China [4] - 41:19, 41:20, 43:4, 45:20, 54:7, 54:10, 55:9, 57:11, 58:2
china [1] - 54:24
Chinese [16] - 27:2, 38:8, 39:21, 40:6, 41:12, 42:24, 43:16, 46:16, 49:3, 50:16, 52:12, 54:20, 54:21, 58:4, 58:23, 59:20
choices [1] - 51:1
choose [1] - 50:14
choosing [2] - 50:24, 51:2
chose [3] - 43:21, 51:1, 54:11
chosen [1] - 50:6
CHRISTOPHER [2] - 1:12, 1:15
Christopher [1] - 4:1
chromatograms [1] - 11:7
Circuit [3] - 15:7, 45:1, 48:2
circumstance [4] - 39:18, 39:21, 50:22, 51:16
circumstances [5] - 29:3, 38:11, 40:9, 40:20, 51:15
cite [6] - 27:8, 44:12, 45:1, 47:6, 47:7, 48:3
cited [6] - 23:16, 46:19, 51:24, 55:23, 56:25, 57:20
citizens [1] - 47:11
civil [1] - 50:4
Civil [1] - 55:25
CIVIL [1] - 1:3
claims [1] - 23:7
class [1] - 3:14
clause [1] - 50:5
17:2
clear [16] - 4:23, 5:6, 6:22, 9:7, 12:6, 12:19, 13:21, 27:4, 27:21, 27:22, 28:8, 29:18, 29:19, 40:4, 46:25, 59:12
clearance [2] - 45:24, 46:4
clearly [5] - 13:14, 26:5, 28:5, 29:21, 36:8
Clerk [1] - 1:25
clinical [1] - 15:12
codes [1] - 16:17
Cohen [1] - 1:6
column [1] - 27:15
coming [5] - 35:10, 38:17
Commencing [1] - 1:8
commented [1] - 59:4
comments [1] - 26:3
commercial [1] - 13:1
commercially [2] - 18:13, 20:5
committee [2] - 42:15, 52:13
common [1] - 42:25
communicated [1] - 38:3
communication [1] - 22:23
communications [4] - 11:12, 21:20, 22:5, 22:6
communist [4] - 41:18, 41:19, 42:15, 43:8
companies [3] - 22:6, 22:7, 59:6
company [28] - 2:16, 4:12, 4:13, 8:22, 10:1, 10:2, 10:3, 11:7, 11:10, 11:12, 20:17, 22:3, 26:17, 26:21, 29:4, 29:10, 29:17, 46:3, 46:23, 52:20, 53:15, 53:16, 54:10, 54:13, 54:21, 55:19, 58:23, 59:7
company's [1] - 9:22
compare [1] - 40:22
comparison [1] - 11:6
compel [2] - 28:4, 44:17
compelled [1] - 26:19
compelling [2] - 47:3, 55:3
compensate [1] - 48:5
competitive [1] - 18:14

**competitor** [1] - 16:19
**competitors** [5] - 9:2, 10:5, 16:7, 17:10, 17:24
**complaint** [3] - 11:2, 11:9, 35:19
**complete** [3] - 28:25, 33:14
**completed** [1] - 38:4
**completely** [6] - 15:15, 15:20, 16:20, 22:17, 38:23, 41:9
**compliance** [1] - 46:24
**compliant** [2] - 33:7, 33:18
**complied** [4] - 34:25, 37:4, 37:6, 39:5
**comply** [4] - 38:8, 39:19, 45:4, 47:1
**complying** [1] - 39:1
**computer** [1] - 1:23
**computer-aided** [1] - 1:23
**concede** [1] - 16:3
**concedes** [1] - 14:18
**concerned** [6] - 22:10, 36:4, 36:10, 36:15, 46:3, 46:5
**concerns** [2] - 2:8, 33:2
**concise** [1] - 3:16
**concluded** [1] - 46:22
**concludes** [1] - 60:25
**conclusion** [6] - 6:25, 7:9, 7:22, 49:13, 49:24, 51:5
**conclusory** [1] - 15:21
**conduct** [3] - 7:24, 28:24, 46:18
**conducted** [1] - 39:7
**confer** [2] - 22:12, 33:12
**conference** [1] - 2:11
**confidential** [6] - 3:17, 5:13, 15:17, 16:2, 18:12, 23:15
**confidentiality** [5] - 10:22, 21:12, 23:8, 23:14, 24:6
**confirm** [4] - 33:16, 37:12, 38:23, 53:24
**confirmation** [1] - 33:13, 37:20, 37:21
**confirmed** [3] - 36:17, 37:4, 37:8
**confusion** [1] - 3:6
**consequence** [2] - 50:8, 50:15
**consequences** [3] -

23:1, 28:3, 40:25
**consider** [5] - 21:10, 26:12, 44:4, 44:23, 48:17
**consideration** [3] - 36:25, 44:16, 56:15
**considered** [3] - 6:24, 7:8, 21:15
**considers** [1] - 10:10
**consistent** [2] - 18:4, 19:9
**construed** [1] - 47:19
**consult** [1] - 37:19
**contact** [1] - 34:10
**contain** [1] - 10:21
**contained** [3] - 8:17, 10:12, 13:13
**contains** [1] - 6:9
**contamination** [2] - 6:10, 30:2
**content** [1] - 23:19
**context** [4] - 18:8, 41:1, 46:12
**continued** [3] - 26:21, 43:15, 45:7
**contradicts** [1] - 15:15
**contrary** [1] - 22:18
**contribute** [1] - 49:23
**control** [4] - 8:13, 8:21, 17:14, 49:17
**controlling** [1] - 13:7
**Convention** [7] - 43:22, 44:7, 44:8, 44:11, 44:15, 44:23, 55:22
**Cooper** [1] - 1:7
**core** [1] - 34:11
**corporation** [1] - 50:18
**correct** [5] - 3:13, 12:13, 20:1, 24:4, 61:4
**correctly** [1] - 50:1
**cost** [1] - 49:12
**counsel** [12] - 9:13, 17:17, 17:20, 18:5, 34:21, 36:7, 37:19, 39:4, 42:11, 53:9, 55:21, 56:1
**counsel's** [1] - 57:18
**counterpart** [1] - 4:19
**countries** [2] - 12:7, 43:4
**country** [9] - 40:1, 40:8, 41:9, 45:20, 52:9, 52:15, 55:9, 55:10, 56:25
**country's** [1] - 59:3
**couple** [2] - 6:15, 26:5
**course** [4] - 2:10,

37:18, 46:9, 51:14
**COURT** [74] - 1:1, 2:4, 3:3, 3:7, 3:11, 3:18, 3:24, 4:5, 5:14, 6:18, 8:7, 9:3, 9:12, 9:21, 10:25, 11:19, 12:5, 12:11, 12:13, 13:3, 13:16, 14:2, 14:6, 14:9, 15:10, 16:3, 16:9, 16:13, 16:23, 17:4, 17:25, 19:11, 20:2, 21:1, 21:24, 22:9, 23:22, 24:1, 24:17, 24:22, 24:24, 25:2, 25:6, 25:9, 25:12, 25:17, 26:1, 27:9, 27:13, 29:23, 31:11, 32:8, 32:15, 33:21, 34:1, 34:4, 34:9, 34:14, 35:13, 36:1, 37:9, 39:3, 39:11, 41:24, 42:2, 45:21, 49:25, 51:18, 56:20, 57:16, 59:21, 60:21, 60:24, 61:1
**court** [21] - 5:19, 8:9, 13:4, 13:5, 13:6, 15:9, 15:11, 15:17, 19:21, 26:18, 28:14, 28:17, 29:19, 32:14, 35:6, 36:18, 39:1, 43:12, 45:2, 52:18, 52:19
**Court** [21] - 1:20, 6:16, 12:18, 25:14, 35:10, 37:4, 37:22, 38:18, 38:25, 40:10, 44:5, 44:19, 46:21, 46:22, 46:25, 48:3, 55:25, 57:2, 57:20, 60:25, 61:12
**court's** [2] - 28:3, 44:17
**Court's** [5] - 28:14, 36:24, 44:14, 47:23, 57:7
**Courthouse** [1] - 1:6
**courts** [3] - 31:4, 47:4, 57:21
**cover** [1] - 22:25
**covers** [1] - 24:10
**Cox** [7] - 4:1, 6:19, 8:7, 12:15, 17:4, 20:11, 25:13
**COX** [18] - 1:15, 4:1, 6:20, 8:11, 9:10, 9:14, 9:24, 11:18, 11:21, 12:17, 13:9, 17:6, 19:1, 19:17, 20:13, 21:4, 22:1,

25:14
**created** [1] - 38:15
**criminal** [1] - 53:23
**CRR** [1] - 61:11
**cultural** [1] - 58:1
**custodial** [5] - 31:12, 31:14, 31:21, 53:4, 56:4
**customer** [2] - 11:3, 20:17
**customer's** [1] - 11:8
**customers** [1] - 16:18

## D

**damage** [1] - 23:7
**damages** [3] - 21:8, 21:9, 22:24
**Date** [1] - 61:12
**date** [1] - 36:13
**dated** [1] - 31:23
**David** [2] - 53:12, 54:4
**days** [3] - 18:16, 20:3, 48:9
**DC** [1] - 1:17
**deal** [2] - 28:24, 44:2
**dealt** [1] - 37:16
**December** [3] - 11:11, 44:6, 44:13
**decide** [2] - 28:18, 41:22
**decided** [1] - 2:13
**decides** [1] - 55:9
**deciding** [2] - 42:8, 50:10
**decision** [25] - 15:7, 23:12, 24:5, 24:8, 26:7, 27:2, 27:5, 27:7, 27:8, 27:25, 31:8, 42:25, 44:13, 44:15, 44:17, 46:16, 47:19, 47:23, 47:24, 49:16, 51:24, 54:17, 55:4, 56:18, 59:20
**decisions** [3] - 2:21, 41:16, 54:18
**declaration** [14] - 8:24, 10:3, 12:9, 12:18, 13:12, 15:20, 17:11, 21:13, 42:3, 42:20, 43:15, 45:11, 48:20
**deep** [1] - 7:23
**defend** [1] - 20:19
**defendant** [1] - 58:9
**Defendants** [1] - 1:17
**defendants** [2] - 4:2, 27:23
**defense** [3] - 3:25, 26:14, 56:7

**defenses** [2] - 49:5, 49:20
**defer** [1] - 3:4
**deference** [1] - 11:23
**deficiencies** [4] - 5:9, 6:4, 9:5, 26:13
**deficiency** [2] - 9:22, 58:6
**definition** [1] - 31:14
**definitions** [1] - 12:19
**definitive** [3] - 2:21, 36:6, 37:21
**definitively** [1] - 36:17
**demonstrate** [2] - 38:20, 47:20
**demonstration** [3] - 45:8, 45:17, 59:5
**denied** [4] - 22:21, 43:13, 45:6, 45:15
**depose** [1] - 39:13
**deposed** [16] - 6:3, 45:16, 46:10, 47:12, 48:15, 52:11, 52:18, 52:25, 53:1, 53:7, 53:13, 55:10, 55:12, 55:15, 55:19, 60:12
**deposition** [21] - 26:17, 28:17, 29:2, 40:15, 41:6, 45:16, 46:17, 47:24, 48:8, 48:10, 48:21, 52:8, 52:12, 53:5, 53:12, 56:5, 56:20, 58:7, 59:6, 59:20, 60:1
**depositions** [2] - 40:14, 48:7
**described** [2] - 7:12, 58:4
**describing** [2] - 38:14, 40:19
**description** [2] - 9:15, 18:11
**designation** [1] - 10:22
**despite** [1] - 34:24
**detail** [1] - 9:15
**detailed** [7] - 10:11, 11:19, 12:1, 26:4, 27:16, 27:17, 58:19
**details** [2] - 9:17, 30:4
**detected** [1] - 11:3
**determination** [5] - 3:19, 4:9, 18:18, 37:5, 44:24
**determinative** [1] - 48:24
**determine** [1] - 12:25
**determined** [2] - 7:10, 44:1
**determines** [1] - 14:24

determining [2] - 7:16, 8:14
devastating [1] - 54:2
development [1] - 43:12
devil [1] - 30:4
devil-in-the-details-type [1] - 30:4
dictate [1] - 54:7
differences [2] - 41:11, 43:1
different [6] - 9:16, 25:7, 38:24, 39:1, 43:4, 44:21
difficult [2] - 32:2, 45:17
dig [1] - 35:8
diligence [2] - 35:21, 39:7
direct [3] - 11:6, 18:9, 55:16
directed [2] - 40:10, 48:1
directing [1] - 47:10
direction [2] - 30:19, 30:22
directly [1] - 40:20
disagree [6] - 17:14, 37:10, 49:8, 50:12, 57:22, 58:15
disbelief [1] - 35:2
disclosed [2] - 9:1, 17:23
disclosure [16] - 5:3, 5:5, 5:19, 8:24, 10:3, 10:7, 10:16, 10:23, 12:8, 14:17, 14:19, 14:24, 15:2, 15:4, 22:5, 52:12
discovery [17] - 26:15, 27:24, 28:4, 40:23, 44:12, 44:17, 44:18, 45:3, 46:24, 47:2, 50:3, 54:16, 56:10, 57:8, 59:2, 60:7
discretion [2] - 12:23, 47:4
discretionary [1] - 30:14
discussed [1] - 6:5
discusses [1] - 49:21
discussing [1] - 22:24
discussion [8] - 3:14, 6:9, 8:20, 9:16, 18:4, 21:3, 30:9, 51:22
discussions [7] - 9:25, 20:20, 20:23, 21:4, 21:8, 30:4, 52:4
dismissed [2] - 26:11,
26:15
dismissing [1] - 46:23
disproportionate [2] - 40:20, 51:16
disputes [1] - 44:12
disputing [1] - 59:12
distinction [1] - 10:9, 44:25
distinguished [1] - 8:18
distinguishing [1] - 45:2
DISTRICT [2] - 1:1, 1:1
dives [1] - 7:23
document [43] - 2:15, 3:21, 3:22, 7:15, 8:15, 8:16, 8:17, 8:18, 9:17, 11:25, 13:22, 14:2, 14:24, 18:1, 18:8, 18:10, 19:6, 19:23, 20:10, 20:19, 20:22, 21:7, 21:15, 21:16, 21:18, 22:17, 23:15, 23:19, 23:22, 24:3, 24:4, 24:9, 26:22, 31:25, 34:13, 34:15, 34:18, 35:4, 36:20, 37:12, 38:6, 49:21
documentation [3] - 11:2, 40:2, 49:16
documents [49] - 2:8, 2:12, 2:20, 2:21, 2:23, 3:15, 3:16, 4:8, 4:24, 5:3, 6:23, 7:1, 7:6, 7:21, 10:19, 10:21, 12:3, 13:5, 15:11, 18:11, 22:14, 24:11, 24:13, 24:17, 25:8, 26:18, 26:20, 27:3, 31:19, 31:20, 31:22, 32:1, 32:3, 32:7, 32:11, 32:13, 32:18, 33:17, 33:19, 33:22, 35:3, 35:14, 35:22, 36:11, 36:18, 38:15, 44:19, 47:3, 57:14
dollar [1] - 54:13
dollars [5] - 29:6, 29:11, 29:16, 54:12, 55:1
done [7] - 17:16, 28:9, 31:16, 51:10, 56:2, 56:7, 60:8
doors [2] - 7:25, 8:22
down [3] - 27:15, 53:7, 54:24
draft [1] - 36:19
drafts [2] - 32:21,
32:25
draw [1] - 30:1
drive [1] - 21:21
driver's [1] - 39:24
drugs [2] - 17:2, 54:12
Du [2] - 6:1
due [3] - 35:21, 50:5, 60:2
during [4] - 2:10, 15:24, 17:21, 45:18

**E**

easy [1] - 56:9
ECF [4] - 2:15, 20:10, 23:25, 25:22
effective [1] - 7:24
effectively [1] - 49:7
effort [5] - 18:24, 38:9, 44:1, 52:1, 52:3
efforts [5] - 35:21, 38:4, 45:16, 46:1, 49:18
eight [1] - 6:4
Eisenhower [1] - 1:13
either [2] - 17:3, 33:15
elected [1] - 50:1
element [1] - 47:21
EMA [19] - 5:3, 5:8, 5:11, 5:21, 6:24, 7:6, 7:7, 7:17, 7:24, 8:4, 10:7, 10:9, 10:13, 12:1, 12:23, 13:19, 14:16, 14:20, 14:23
EMA's [7] - 6:23, 6:25, 7:13, 7:15, 7:22, 10:18, 11:21
email [1] - 2:15, 20:9, 20:15, 24:21, 36:21
emails [2] - 4:11, 15:13
embark [1] - 39:10
embedded [1] - 27:19
emphasized [1] - 13:20
encourage [1] - 12:2
end [4] - 5:5, 8:6, 16:14, 25:6, 25:12, 30:9, 30:12, 30:20, 38:22, 46:6, 52:19, 59:14, 60:6
ending [1] - 9:20, 42:22, 44:4
ends [1] - 2:7
ensure [2] - 58:2, 58:4
enter [3] - 27:23, 29:21, 56:15
entered [2] - 3:5, 55:7
entire [8] - 6:14, 19:15, 26:17, 27:21,
31:21, 40:11, 51:22, 54:9
entities [1] - 23:15
entitled [1] - 61:5
Entry [1] - 40:2
enumerated [1] - 28:5
equally [1] - 41:10
equivalent [1] - 4:23
especially [3] - 16:8, 23:3, 56:17
ESQUIRE [4] - 1:12, 1:12, 1:15, 1:25
essential [1] - 18:7
essentially [7] - 6:14, 15:3, 15:4, 16:25, 23:18, 40:10, 50:18
established [1] - 57:19
establishes [1] - 58:20
et [2] - 55:1, 57:3
EU [3] - 5:13, 7:5, 12:22
European [3] - 4:19, 5:14, 12:7
evaluate [1] - 41:2
evaluating [1] - 44:3
evidence [6] - 6:22, 41:7, 43:5, 43:17, 43:18, 45:8, 49:22, 53:9, 53:11
evidences [1] - 48:22
evident [2] - 11:10, 11:13
evidentiary [1] - 42:4
exact [1] - 46:25
exactly [2] - 33:24, 55:6
example [1] - 35:2
except [1] - 6:14
exception [2] - 5:12, 43:17
exceptional [1] - 5:8
exceptions [2] - 5:2, 14:22
exchange [1] - 20:9
exchanges [1] - 2:16
exclusive [1] - 44:16
excuse [4] - 4:25, 13:25, 47:5, 47:15
executive [3] - 53:14, 53:21, 58:10
exercise [1] - 47:4
exercising [1] - 58:11
Exhibit [10] - 2:14, 2:15, 14:7, 14:21, 20:10, 24:20, 24:23, 24:25, 25:10, 25:16
exhibit [3] - 13:6, 19:19, 24:24
exhibits [1] - 7:1
exist [3] - 35:3, 38:25
exists [3] - 10:24, 34:19, 38:23
Exit [1] - 40:2
Exit-Entry [1] - 40:2
expect [2] - 18:22, 42:13
expected [1] - 23:5
expecting [1] - 27:23
expense [1] - 45:20
expert [7] - 12:9, 12:18, 48:12, 53:10, 53:13, 54:4, 55:16
experts [1] - 58:1
explain [4] - 15:21, 36:12, 36:13, 36:16
explained [3] - 48:2, 57:1, 57:6
explains [2] - 7:15, 7:17
explanation [3] - 3:19, 33:5, 35:24
explanations [1] - 38:1
explore [1] - 59:24
explored [1] - 48:24
express [1] - 23:5
extensive [2] - 6:9, 22:12
extensively [1] - 23:11
extent [2] - 23:3, 30:10
extreme [2] - 59:13, 59:18
extremely [5] - 5:24, 15:23, 23:2, 25:1, 59:23

**F**

face [3] - 32:5, 52:24, 57:19
facilitate [2] - 41:5, 46:2
fact [29] - 6:3, 6:12, 12:8, 13:3, 19:13, 22:14, 26:13, 28:4, 35:1, 35:13, 36:23, 37:12, 38:17, 42:13, 42:16, 44:4, 44:24, 46:2, 48:18, 48:22, 50:1, 50:23, 52:7, 53:14, 55:2, 58:6, 58:17, 58:20, 60:10
factor [4] - 42:8, 44:23, 51:24, 59:15
factors [2] - 28:21, 45:3
facts [2] - 37:7, 54:1

**fail** [1] - 28:3
**failed** [1] - 49:19
**fails** [1] - 41:11
**failure** [5] - 38:8, 39:19, 40:23, 44:22, 45:4
**fair** [3] - 38:16, 39:9, 42:1
**fairness** [1] - 37:22
**faith** [23] - 34:19, 38:9, 38:11, 40:13, 41:5, 43:7, 45:5, 45:6, 45:8, 45:18, 47:16, 47:18, 47:19, 51:6, 51:23, 52:1, 52:23, 52:24, 58:13, 59:6, 59:19
**faith/bad** [1] - 52:23
**familiar** [1] - 41:14
**far** [1] - 56:8
**fashions** [1] - 30:10
**fault** [1] - 60:12
**FDA** [8] - 4:16, 10:19, 15:12, 15:14, 19:3, 19:4, 20:5, 54:25
**FDA's** [2] - 6:7, 19:9
**February** [10] - 4:25, 6:6, 6:8, 7:2, 14:4, 23:24, 24:5, 24:21, 31:23, 31:25
**federal** [5] - 8:9, 31:4, 52:18, 54:16, 57:20
**Federal** [1] - 55:25
**FEDERAL** [1] - 61:1
**Federation** [2] - 41:8, 43:13
**federation** [1] - 41:15
**feet** [1] - 54:3
**felt** [2] - 26:19, 51:13
**few** [3] - 16:23, 27:5, 27:6
**Fierce** [2] - 6:6, 10:19
**fifth** [1] - 9:8
**fight** [2] - 56:4, 56:5
**figuring** [1] - 37:3
**file** [7] - 31:12, 31:14, 31:21, 35:14, 36:23, 53:4, 56:4
**filed** [2] - 13:5, 13:6
**files** [1] - 33:4
**fill** [1] - 58:1
**final** [6] - 2:14, 4:10, 4:15, 13:5, 53:8, 53:25
**finally** [3] - 23:8, 40:17, 49:1
**financial** [2] - 21:5, 29:14
**findings** [2] - 9:22, 29:19

**fine** [2] - 12:12, 57:11
**fined** [1] - 39:20
**firm** [1] - 28:11
**first** [22] - 2:17, 4:21, 6:14, 6:20, 7:1, 9:20, 13:21, 14:7, 17:7, 20:11, 21:5, 21:6, 21:16, 24:13, 40:13, 40:21, 41:9, 42:7, 49:13, 56:22, 57:17, 57:24
**five** [1] - 14:13
**fix** [1] - 8:3
**flag** [1] - 25:5
**flies** [1] - 57:19
**FLOM** [1] - 1:15
**Florence** [2] - 21:21, 21:22
**flout** [1] - 57:7
**flouting** [1] - 58:25
**flow** [1] - 53:24
**fly** [1] - 21:22
**focus** [3] - 8:11, 8:12, 39:15
**focused** [2] - 8:16, 15:7
**FOIA** [4] - 4:19, 4:24, 10:20, 19:20
**follow** [2] - 57:14, 58:13
**follow-up** [2] - 57:14, 58:13
**following** [1] - 25:19
**FOR** [1] - 1:1
**foregoing** [1] - 61:4
**foreign** [5] - 46:18, 47:1, 50:18, 52:1, 59:5
**foremost** [1] - 41:9
**foreshadow** [1] - 28:12
**foreshadowed** [1] - 36:5
**Forest** [2] - 23:16
**form** [5] - 39:24, 52:6, 57:24, 58:2, 58:6
**former** [1] - 17:17
**forming** [1] - 6:24
**forth** [3] - 22:3, 22:11, 45:11
**forward** [2] - 54:6, 58:8
**fought** [1] - 56:3
**four** [7] - 31:19, 31:20, 31:22, 32:11, 33:19, 35:14, 57:12
**fourth** [2] - 9:8
**Freedom** [1] - 4:17
**FREEMAN** [1] - 1:11
**front** [2] - 9:4, 56:17

**full** [2] - 14:22, 30:23
**fundamentally** [1] - 44:20
**funding** [1] - 31:2
**funds** [1] - 31:2

**G**

**GC** [2] - 11:7, 11:10
**GCF** [1] - 11:13
**Geddis** [7] - 3:1, 3:9, 3:11, 4:2, 4:21, 6:18, 7:4, 7:14, 10:6, 12:16, 13:3, 13:17, 14:3, 16:11, 22:9, 24:4, 25:19
**GEDDIS** [26] - 1:12, 3:12, 3:23, 4:22, 5:17, 12:10, 12:12, 13:18, 14:4, 14:7, 14:10, 15:11, 16:5, 16:12, 16:16, 16:25, 19:19, 22:10, 23:24, 24:12, 24:19, 24:23, 24:25, 25:4, 25:7, 25:11
**general** [3] - 5:19, 7:8, 40:14
**generality** [1] - 9:15
**generalized** [1] - 10:10
**generally** [1] - 6:7
**generic** [1] - 17:1
**given** [9] - 5:6, 15:22, 16:18, 16:20, 22:13, 32:20, 33:13, 41:24, 42:23
**glad** [1] - 56:23
**GMC** [4] - 2:14, 4:10, 4:16, 13:6
**GMP** [3] - 6:21, 7:10, 54:4
**government** [26] - 7:5, 27:20, 39:21, 41:12, 41:13, 41:21, 42:24, 43:2, 43:3, 43:16, 43:19, 45:15, 46:16, 47:13, 47:15, 49:15, 49:18, 50:7, 50:16, 52:12, 52:15, 54:7, 54:15, 54:21, 58:5, 59:20
**government's** [2] - 43:8, 47:18, 49:3
**grabs** [1] - 55:9
**grant** [2] - 21:17, 42:16
**granted** [4] - 43:9, 43:25, 46:9, 58:3
**great** [3] - 18:25, 46:1,

49:6
**ground** [2] - 37:7
**groundwork** [1] - 26:6
**group** [1] - 3:15
**GSK** [3] - 15:12, 15:13, 15:14
**guess** [2] - 26:12, 37:1
**guidance** [1] - 19:7
**gun** [1] - 32:5
**Guo** [1] - 46:5
**Guo's** [1] - 48:21
**guy** [1] - 55:15

**H**

**Hague** [9] - 43:22, 44:6, 44:8, 44:11, 44:15, 44:22, 55:22, 55:24, 59:10
**half** [1] - 9:20
**hampered** [1] - 48:13
**hand** [2] - 27:15, 31:20
**handled** [1] - 24:19
**happy** [5] - 34:21, 35:16, 38:19, 42:8, 42:19
**hard** [2] - 27:18, 32:5
**harkens** [1] - 36:20
**harm** [4] - 9:1, 10:4, 13:15, 18:7
**harmed** [1] - 15:21
**head** [2] - 53:17, 54:11
**health** [1] - 12:3
**Healthcare** [1] - 1:18
**hear** [9] - 4:7, 4:20, 12:15, 13:17, 28:10, 29:6, 43:23, 60:22
**heard** [2] - 2:8, 10:19, 20:13
**hearing** [1] - 44:6
**held** [4] - 2:1, 5:13, 16:2, 18:11
**hello** [1] - 3:1
**helpful** [2] - 3:13, 15:8
**helps** [1] - 3:2
**herring** [2] - 13:20, 15:3
**herrings** [1] - 52:5
**hi** [1] - 3:12
**high** [1] - 23:2
**highlight** [2] - 13:23, 26:5
**highly** [1] - 30:14
**hit** [3] - 32:11, 32:21, 54:10
**hold** [1] - 33:4
**Honor** [111] - 3:12, 4:1, 4:22, 6:20, 7:2, 8:11, 8:14, 9:11,

9:14, 11:18, 11:21, 11:22, 12:10, 12:17, 13:10, 13:18, 16:5, 16:16, 17:8, 17:14, 17:16, 17:20, 19:1, 19:17, 19:19, 20:13, 21:10, 21:14, 22:1, 23:9, 24:12, 25:11, 25:25, 26:2, 26:17, 26:19, 27:3, 27:5, 27:11, 29:4, 29:12, 29:21, 30:10, 30:14, 30:18, 30:22, 31:17, 32:7, 33:9, 33:11, 33:20, 34:3, 34:6, 34:12, 34:16, 34:23, 35:11, 35:16, 36:4, 37:10, 37:19, 38:5, 38:9, 38:10, 38:21, 39:1, 39:10, 39:14, 39:23, 40:9, 40:18, 41:4, 42:7, 42:12, 42:19, 43:6, 43:14, 44:3, 44:14, 44:21, 44:23, 45:5, 45:12, 45:16, 45:22, 46:2, 46:7, 46:11, 47:7, 47:17, 48:12, 48:17, 49:1, 49:8, 49:12, 49:24, 50:12, 50:23, 51:5, 51:14, 51:17, 53:17, 53:20, 54:10, 54:19, 55:3, 57:24, 58:8, 59:17, 60:19, 60:23
**Honor's** [6] - 4:4, 9:19, 17:17, 19:7, 26:8, 57:10
**Honorable** [2] - 1:25, 2:2
**honorary** [2] - 41:15, 41:21
**Huahai** [1] - 1:18
**hurt** [2] - 29:14, 29:15

**I**

**ID** [1] - 11:14
**idea** [4] - 8:2, 15:15, 28:17, 53:1
**identification** [2] - 10:16, 39:25
**identifies** [1] - 2:23
**ignores** [1] - 7:7
**ii** [1] - 11:5
**imagine** [1] - 28:8
**impact** [1] - 29:10
**impediment** [1] - 60:2
**implied** [1] - 27:25

import [1] - 26:22
importance [1] - 28:13
important [17] - 18:24, 26:6, 26:19, 28:12, 28:14, 28:18, 30:21, 31:1, 35:11, 41:4, 41:10, 46:20, 49:1, 52:22, 53:9, 59:23, 60:11
imposed [1] - 48:5
imposes [1] - 44:3
imposing [1] - 49:6
imposition [2] - 44:9, 45:4
impression [1] - 38:2
IN [1] - 1:3
inability [3] - 39:12, 47:1, 60:1
inadequate [1] - 56:21
inapposite [1] - 47:9
inappropriate [3] - 46:22, 49:19, 59:18
inclined [2] - 17:17, 47:17
include [1] - 9:25
included [1] - 8:18
including [10] - 9:1, 10:5, 12:25, 15:12, 30:25, 35:23, 36:18, 40:18, 43:4, 48:8
incomplete [1] - 14:15
incorrectly [1] - 34:7
indeed [2] - 34:25, 60:9
indent [2] - 14:12, 14:14
indicated [1] - 18:9
indicates [1] - 7:19
indication [1] - 6:21
individual [1] - 47:10
inefficient [2] - 22:18, 57:15
inference [7] - 29:23, 29:25, 30:1, 30:6, 30:21, 40:19, 49:21
influence [3] - 42:14, 42:17, 42:24
inform [1] - 36:24
Information [1] - 4:18
information [35] - 6:10, 7:25, 8:4, 8:8, 8:25, 9:12, 10:10, 10:11, 13:1, 13:13, 13:15, 13:25, 16:20, 17:12, 17:22, 18:6, 18:14, 18:20, 18:23, 18:25, 19:16, 20:6, 20:7, 21:25, 22:23, 41:24, 42:5, 45:9, 48:18, 49:23, 52:2,

56:2, 58:19
inspection [14] - 2:14, 4:10, 4:16, 6:8, 6:21, 7:11, 10:12, 10:19, 11:1, 13:6, 19:3, 19:4, 19:10
inspections [3] - 7:19, 7:24, 15:1
instance [1] - 42:16
instead [1] - 48:25
Institute [1] - 23:16
instructive [1] - 27:11
instrumental [1] - 33:3
intact [2] - 32:12, 32:22
integrity [1] - 13:2
intended [1] - 20:5
intending [1] - 3:18
intends [1] - 28:19
intent [3] - 6:23, 6:25, 11:21
intercountry [1] - 57:18
interest [15] - 5:4, 5:8, 10:7, 10:16, 10:23, 14:17, 14:19, 15:2, 15:4, 18:25, 22:4, 22:20, 23:2
interesting [1] - 31:13
interests [3] - 5:21, 21:19, 21:20
internal [6] - 9:25, 10:1, 10:4, 10:21, 15:13, 17:13
interrogatories [1] - 56:21
interrupting [1] - 21:1
investigate [1] - 37:15
investigation [2] - 13:24, 32:22
investigations [4] - 7:19, 11:15, 13:2, 15:1
involvement [1] - 55:16
involving [1] - 4:11
irbesartan [2] - 32:22, 36:19
irrelevant [2] - 23:18, 44:11
issue [26] - 2:19, 2:21, 3:2, 3:18, 3:20, 3:24, 4:6, 4:20, 13:19, 21:15, 21:17, 23:10, 24:3, 24:8, 24:11, 25:8, 25:17, 30:13, 34:4, 34:14, 34:15, 35:25, 36:8, 36:9, 38:24, 59:9

issued [1] - 10:7
issues [22] - 6:9, 20:24, 21:5, 26:15, 26:18, 28:16, 29:20, 34:13, 34:18, 34:23, 35:1, 35:9, 35:11, 36:14, 37:12, 37:25, 38:6, 47:12, 48:9, 52:17, 53:5, 58:1
Italian [3] - 2:16, 4:12, 4:13
Italy [1] - 20:17
item [1] - 32:16
itself [2] - 18:8, 27:19

## J

January [8] - 2:9, 2:20, 20:14, 21:13, 24:15, 31:23, 31:25, 35:14
JERSEY [1] - 1:1
Jersey [2] - 1:7, 1:13
Judge [23] - 3:1, 17:6, 23:16, 27:2, 27:3, 27:8, 27:20, 29:19, 31:8, 44:7, 44:15, 51:20, 51:24, 52:8, 52:10, 53:6, 54:17, 56:6, 56:17, 57:23, 59:4, 59:11, 59:15
judge [3] - 27:16, 28:2, 52:25
judge's [1] - 27:25
judges [1] - 54:16
judicial [7] - 13:8, 18:2, 18:13, 24:7, 42:5, 54:8, 55:8
Judicial [1] - 1:25
July [3] - 11:14, 30:2, 36:21
jumps [1] - 33:5
Jun [1] - 6:1
June [6] - 31:21, 31:22, 31:23, 31:25, 35:15, 43:9
juris [2] - 48:3, 57:18
jury [1] - 29:25
justice [1] - 54:23
justify [1] - 40:16

## K

KATZ [1] - 1:11
keep [5] - 18:6, 18:24, 19:6, 31:6, 36:15
keeping [1] - 17:20
kind [3] - 20:7, 22:15, 49:7
knowledge [3] - 17:2,

28:19, 32:19
knowledgeable [1] - 57:5
known [1] - 43:20
knows [2] - 31:18, 45:16
Kong's [1] - 31:12, 32:6, 35:14
Kugler [14] - 1:25, 23:17, 27:3, 27:21, 29:19, 31:8, 44:7, 44:15, 53:6, 56:6, 57:23, 59:4, 59:11, 59:16
Kugler's [5] - 27:2, 27:8, 51:24, 54:17, 56:18

## L

lack [3] - 36:11, 52:24
laid [5] - 6:25, 13:10, 36:9, 54:3, 57:1
lands [1] - 8:4
language [1] - 14:23
large [1] - 18:1
last [9] - 8:15, 21:11, 22:17, 23:9, 29:5, 32:16, 33:8, 33:21, 55:21
lasted [1] - 48:8
Law [1] - 1:25
law [15] - 5:14, 5:22, 15:19, 27:4, 28:10, 28:22, 38:8, 39:20, 40:6, 45:1, 46:18, 47:1, 55:23, 56:17, 56:24
laws [1] - 50:3
lawsuit [1] - 46:23
layer [2] - 41:21, 43:11
LCM [2] - 20:16, 21:12
leads [1] - 15:5
least [3] - 48:24, 51:12, 60:6
leave [3] - 41:9, 52:15, 57:2
leaving [2] - 55:10, 56:25
led [2] - 6:9, 41:18
left [4] - 22:2, 28:20, 32:16, 52:21
legal [1] - 27:18
legally [1] - 13:22, 14:8, 57:7
legitimate [1] - 33:2
legitimately [1] - 51:9
lengths [1] - 49:6
lengthy [1] - 44:13
lenses [1] - 34:10

less [3] - 22:20, 29:3, 56:8
lesser [1] - 59:25
letter [13] - 4:15, 4:19, 4:25, 6:8, 7:4, 7:13, 10:15, 10:21, 13:23, 14:5, 19:3, 19:4, 24:14
letters [1] - 15:13
level [2] - 9:15, 42:15
Li [1] - 6:2
LIABILITY [1] - 1:4
license [1] - 39:24
life [1] - 56:9
light [2] - 29:18
likely [3] - 14:24, 14:25, 48:6
limited [3] - 16:1, 25:1, 57:9
Lin [1] - 33:3
line [1] - 19:15
lines [3] - 27:6, 29:24, 30:11
linked [1] - 6:6
links [1] - 8:2
list [2] - 14:22, 16:14
listed [1] - 24:15
listen [1] - 23:6
literally [3] - 31:8, 39:25, 40:7
litigant [1] - 60:14
litigate [2] - 47:22, 58:11
litigating [1] - 30:21
LITIGATION [1] - 1:4
litigation [12] - 26:10, 30:24, 33:4, 40:11, 42:22, 44:4, 44:12, 45:18, 50:4, 52:17, 54:8, 55:8
litigation-ending [1] - 44:4
LLC [2] - 1:11, 1:18
LLP [1] - 1:15
local [1] - 22:18
locate [1] - 35:22
log [1] - 31:16
logical [1] - 26:9
logically [1] - 42:18
logistics [2] - 20:21, 22:3
look [16] - 5:24, 7:22, 8:13, 13:23, 15:8, 26:10, 27:14, 35:16, 35:20, 42:5, 42:12, 42:17, 42:18, 48:12, 49:14, 50:1
looked [2] - 16:6, 38:2
looking [11] - 9:6, 10:25, 11:1, 16:10,

16:13, 16:16, 27:12, 28:21, 41:16, 51:24
**loose** [3] - 2:6, 2:7, 25:6
**LORETTA** [1] - 1:25
**lose** [1] - 50:9
**losses** [1] - 21:5
**lottery** [1] - 43:24
**lower** [1] - 42:15
**Ltd** [1] - 1:18
**Lu's** [1] - 43:15

## M

**Maggie** [3] - 31:12, 32:6, 35:13
**maintained** [1] - 15:16
**major** [2] - 6:4, 9:5
**manually** [1] - 38:15
**manufacturing** [6] - 8:13, 8:21, 8:23, 9:18, 17:13, 53:13
**market** [4] - 27:23, 29:5, 29:10, 29:16
**massive** [1] - 33:11
**Master** [4] - 2:2, 2:10, 2:18, 39:5
**MASTER** [1] - 1:9
**material** [1] - 34:19
**materials** [2] - 12:22, 47:2
**matter** [10] - 18:25, 42:25, 44:6, 55:14, 59:22, 59:23, 59:24, 60:5, 60:14, 61:5
**matters** [4] - 2:5, 2:6, 23:18, 53:11
**MAZIE** [1] - 1:11
**McKay** [2] - 1:20, 61:11
**McKay-Soule** [2] - 1:20, 61:11
**MEAGHER** [1] - 1:15
**mean** [23] - 5:17, 8:21, 10:17, 11:18, 11:24, 12:19, 12:21, 13:9, 17:8, 19:14, 20:18, 20:21, 20:23, 22:7, 30:5, 38:22, 43:24, 47:24, 53:1, 53:6, 58:12, 58:18, 60:4
**meaningless** [5] - 16:20, 17:8, 17:9, 17:10, 29:17
**means** [5] - 11:14, 22:20, 48:19, 54:21, 58:23
**measure** [1] - 18:1
**meat** [1] - 30:16
**mechanical** [1] - 1:22

**media** [1] - 10:18
**meet** [6] - 5:5, 22:12, 33:12, 34:21, 35:8, 38:19
**meeting** [1] - 36:1
**meetings** [1] - 20:24
**Megan** [2] - 1:20, 61:11
**Megansoule430@ gmail.com** [1] - 1:21
**memo** [1] - 35:23
**memorializes** [2] - 2:19, 4:4
**memorializing** [1] - 25:18
**Menarini** [3] - 2:16, 4:13, 20:17
**Menarini's** [1] - 23:7
**mention** [1] - 52:16
**mentioned** [2] - 47:12, 53:9
**mercy** [1] - 27:20
**merely** [1] - 42:9
**met** [1] - 33:1
**metadata** [4] - 32:12, 32:22, 36:20, 36:22
**method** [4] - 11:9, 11:11, 11:14, 11:20
**methods** [4] - 8:12, 8:17, 8:20, 10:1
**Mi** [1] - 8:23
**might** [5] - 3:8, 5:14, 19:13, 44:8
**Min** [1] - 6:2
**mind** [3] - 17:20, 19:7, 49:18
**misreading** [1] - 44:14
**mission** [1] - 12:3
**misspeaking** [1] - 12:13
**misstating** [1] - 44:14
**Mitchell** [1] - 1:6
**monetary** [3] - 29:8, 29:12, 49:9
**month** [1] - 56:12
**months** [2] - 2:7, 4:14
**morning** [2] - 2:4, 4:1
**most** [5] - 16:20, 40:23, 49:1, 58:9, 60:9
**motion** [15] - 21:17, 22:19, 22:21, 23:11, 23:12, 25:22, 28:7, 29:20, 34:11, 36:13, 37:12, 43:6, 43:7, 47:23, 49:12
**motions** [2] - 56:4
**move** [2] - 25:22, 55:20
**moving** [1] - 60:20

**MR** [72] - 3:1, 3:4, 3:8, 3:12, 3:23, 4:1, 4:22, 5:17, 6:20, 8:11, 9:10, 9:14, 9:24, 11:18, 11:21, 12:10, 12:12, 12:17, 13:9, 13:18, 14:4, 14:7, 14:10, 15:11, 16:5, 16:12, 16:16, 16:25, 17:6, 19:1, 19:17, 19:19, 20:13, 21:4, 22:1, 22:10, 23:24, 24:12, 24:19, 24:23, 24:25, 25:4, 25:7, 25:11, 25:14, 25:25, 26:2, 27:10, 27:14, 30:3, 31:13, 32:10, 32:16, 33:24, 34:3, 34:6, 34:10, 34:16, 35:16, 36:3, 37:10, 39:9, 39:14, 42:1, 42:7, 45:22, 50:12, 51:20, 56:22, 57:17, 60:19, 60:22
**multibillion** [1] - 54:13
**multitude** [1] - 48:15

## N

**N.W** [1] - 1:16
**name** [5] - 6:1, 6:2, 34:8
**national** [1] - 12:6
**native** [2] - 32:12, 35:4
**nature** [3] - 2:6, 5:7, 42:4
**near** [1] - 16:14
**necessarily** [4] - 7:23, 8:1, 38:21, 47:25
**necessary** [1] - 26:3
**need** [15] - 2:18, 2:22, 19:12, 22:19, 24:8, 25:4, 29:8, 31:3, 33:16, 34:10, 42:12, 48:22, 49:14, 56:9, 58:20
**needing** [1] - 20:20
**needs** [7] - 18:14, 21:22, 31:3, 31:5, 38:20, 52:17, 55:7
**negotiate** [1] - 48:21
**net** [1] - 49:11
**never** [7] - 33:12, 37:4, 47:12, 53:6, 55:2, 56:25, 57:1
**NEW** [1] - 1:1
**new** [1] - 34:10
**New** [3] - 1:7, 1:13, 1:16
**news** [1] - 43:5

**next** [6] - 25:15, 25:18, 27:1, 28:2, 43:11
**Nigerian** [1] - 47:11
**nine** [3] - 2:21, 2:23, 6:4
**nitrosamine** [3] - 10:16, 33:8, 38:15
**nobody** [1] - 57:4
**non** [6] - 7:12, 7:17, 12:4, 12:5, 12:20, 47:2
**non-production** [1] - 47:2
**non-releasable** [5] - 7:12, 7:17, 12:4, 12:5, 12:20
**nonconfidential** [1] - 23:21
**none** [2] - 48:13, 57:25
**nonetheless** [1] - 5:15
**nonprivileged** [1] - 32:13
**nonpublic** [13] - 6:23, 7:12, 7:17, 8:3, 8:24, 12:4, 12:6, 12:21, 12:25, 13:13, 13:14, 20:20, 21:23
**note** [4] - 14:13, 24:12, 45:9, 52:7
**noted** [1] - 23:9
**notes** [1] - 2:11
**nothing** [6] - 11:19, 28:9, 32:2, 32:25, 52:21, 55:5
**notice** [1] - 42:5
**notified** [1] - 43:11
**notion** [1] - 47:4
**notwithstanding** [2] - 46:3, 46:8
**Novartis** [5] - 11:3, 11:6, 11:11, 11:13
**NUMBER** [1] - 1:3
**number** [15] - 2:7, 2:10, 2:15, 4:14, 6:15, 20:10, 29:9, 29:13, 29:15, 35:2, 39:22, 48:7, 57:8, 57:9
**numbered** [1] - 24:15
**numerous** [2] - 10:17, 42:23

## O

**obey** [1] - 28:3
**object** [1] - 38:10
**objected** [2] - 53:4, 58:6
**objection** [3] - 34:24,

38:11, 58:12
**objections** [1] - 38:7
**obligations** [2] - 59:2, 59:3
**observed** [1] - 11:6
**obtain** [3] - 41:8, 43:16, 45:24
**obtained** [4] - 10:20, 11:11, 45:19, 46:4
**obtaining** [2] - 43:8, 60:16
**obvious** [1] - 42:9
**obviously** [10] - 5:16, 5:17, 30:5, 30:9, 30:13, 32:23, 34:20, 45:23, 59:23, 60:4
**occur** [3] - 20:25, 46:17, 50:17
**occurs** [1] - 26:7
**October** [2] - 26:25, 43:12
**OF** [1] - 1:1
**offer** [1] - 22:14
**offered** [3] - 6:12, 45:10, 48:19
**Official** [1] - 1:20
**OFFICIAL** [1] - 61:1
**often** [1] - 8:1
**once** [1] - 38:22
**one** [29] - 2:6, 2:14, 4:10, 7:10, 7:11, 12:6, 18:18, 19:1, 19:15, 21:2, 21:9, 24:25, 26:9, 27:18, 27:25, 31:24, 32:11, 32:12, 32:23, 34:15, 36:22, 39:15, 39:22, 43:24, 53:8, 53:20, 55:11, 57:8, 59:6
**ones** [1] - 53:18
**ongoing** [1] - 29:14
**open** [3] - 7:25, 36:1, 36:3
**opened** [1] - 50:2
**opening** [2] - 8:22, 26:3
**openness** [2] - 7:7, 52:25
**operate** [1] - 43:2
**operates** [1] - 43:3
**operating** [1] - 9:25
**operation** [2] - 41:12, 41:13
**opinion** [3] - 52:22, 53:25, 57:22
**opportunity** [12] - 6:12, 17:19, 18:3, 18:15, 19:8, 19:24, 22:13, 25:16, 35:7, 35:24, 37:22, 48:25

opposed [1] - 52:18
opposite [1] - 7:9
oral [5] - 15:24, 17:21, 23:9, 24:13, 25:4
ORAL [1] - 1:5
order [34] - 2:19, 2:23, 3:5, 3:20, 4:3, 4:6, 5:15, 6:16, 8:10, 8:14, 8:16, 13:10, 21:14, 21:16, 25:17, 28:4, 33:1, 37:5, 39:1, 44:17, 44:20, 45:3, 46:7, 46:24, 47:24, 48:5, 52:8, 52:10, 52:16, 52:19, 56:5, 57:8, 58:14
Order [1] - 39:5
ordered [10] - 26:18, 28:17, 33:9, 36:18, 39:8, 52:11, 52:18, 54:16, 56:10, 57:10
orders [2] - 28:16, 29:19
organization [6] - 41:18, 41:20, 42:13, 43:12, 52:13
Organization [1] - 40:2
organizations [2] - 41:17, 53:18
otherwise [2] - 54:19, 59:19
outcome [6] - 46:19, 48:4, 48:6, 48:11, 48:23, 50:20
outlined [1] - 4:3
output [3] - 7:4, 10:13, 12:19
outside [1] - 45:20
outstanding [2] - 32:8, 35:9
overbroad [2] - 5:24, 18:6
overcome [2] - 13:11, 13:12
overly [3] - 15:23, 18:24, 58:22
overriding [5] - 5:4, 14:17, 14:19, 15:2
own [14] - 5:22, 10:18, 11:7, 11:24, 12:2, 13:2, 19:9, 34:7, 35:9, 54:3, 55:16, 59:2

**P**

p.m [1] - 60:25
page [20] - 4:25, 5:1, 5:25, 7:15, 9:8, 9:9, 13:21, 14:7, 14:13, 14:18, 14:21, 17:12, 19:6, 19:13, 19:15, 21:5, 21:6, 27:6, 27:10, 27:12
pages [5] - 6:15, 9:20, 13:23, 16:23, 23:13
pale [1] - 40:12
pandemic [1] - 46:4
papers [9] - 31:18, 36:9, 37:11, 41:6, 42:11, 43:23, 45:10, 53:17
paragraph [4] - 11:1, 11:5, 27:16, 28:2
pare [1] - 17:21
parenthesis [1] - 11:3
Parkway [1] - 1:13
part [3] - 33:5, 52:14, 60:7
participate [1] - 54:25
particular [6] - 35:18, 39:15, 40:15, 49:21, 60:3
particularly [2] - 40:14, 48:12
parties [1] - 24:6
parties' [1] - 44:21
party [7] - 21:19, 41:18, 41:19, 42:15, 43:8, 51:25
pass [1] - 54:15
passage [2] - 28:9, 29:18
passport [1] - 39:24
past [1] - 15:7
path [1] - 44:5
patterns [1] - 36:23
pause [1] - 22:8
PDF [2] - 32:24, 36:21
peak [1] - 11:3
peaks [2] - 11:6, 11:15
penalties [1] - 53:23
pending [3] - 2:5, 36:14, 43:6
people [3] - 6:3, 16:20, 55:10
per [2] - 26:22, 33:9
perceived [1] - 37:14
perhaps [1] - 59:4
permission [8] - 41:8, 43:8, 45:7, 45:18, 45:19, 46:8, 52:1, 57:3
permit [3] - 41:22, 41:23, 46:17
permitted [1] - 55:2
person [5] - 33:2, 53:22, 55:11, 55:17, 57:5

person's [1] - 36:23
personally [2] - 45:25, 53:16
perspective [1] - 35:7
persuaded [3] - 18:10, 18:12, 21:18
pervasiveness [1] - 8:3
PFS [1] - 40:24
Pharma [2] - 6:6, 10:19
pharmaceutical [3] - 2:16, 4:12, 4:13
Pharmaceuticals [2] - 1:17, 1:18
philosophy [1] - 57:18
phrase [1] - 49:25
physically [2] - 33:22, 33:25
picture [1] - 34:7
piece [2] - 40:23, 49:22
pinpoint [1] - 19:5
pinpointed [1] - 19:12
placated [2] - 31:17, 57:10
place [2] - 27:1, 27:18
plaintiff [4] - 26:13, 47:25, 51:13, 58:9
plaintiff's [3] - 10:15, 19:4, 40:22
Plaintiffs [1] - 1:14
plaintiffs [21] - 7:3, 7:10, 8:25, 10:20, 19:24, 25:14, 26:11, 38:24, 40:9, 40:17, 41:6, 42:23, 43:20, 44:10, 47:7, 47:20, 50:24, 51:5, 51:9, 58:18, 59:11
plaintiffs' [3] - 42:10, 57:18, 60:2
plans [1] - 15:14
plausibly [2] - 48:6, 48:10
play [1] - 51:2
playing [1] - 43:24
pleadings [1] - 29:1
point [32] - 6:16, 9:19, 15:25, 16:8, 17:9, 19:2, 19:17, 21:2, 24:5, 24:14, 27:18, 29:18, 30:17, 31:5, 31:10, 32:3, 33:2, 34:17, 35:18, 37:17, 38:5, 42:19, 43:25, 47:22, 48:1, 48:17, 49:13, 53:5, 54:2, 55:20, 58:5
pointed [4] - 15:24,

19:2, 47:8, 49:5
pointing [1] - 42:25
points [5] - 17:7, 17:20, 21:10, 26:6, 26:9
policy [4] - 7:3, 7:7, 50:20
poor [1] - 45:14
portion [2] - 17:18, 49:11
portions [1] - 20:18
position [5] - 8:15, 14:11, 41:7, 50:14, 53:24
positive [1] - 30:7
possession [1] - 17:17
possibility [2] - 45:10, 47:13
possible [4] - 14:18, 23:3, 27:23, 56:7
possibly [2] - 50:20, 51:11
potential [1] - 21:8
potentially [1] - 33:5
power [2] - 41:16, 45:2
practices [1] - 53:13
PRC [3] - 27:22, 27:24, 45:6
precedence [1] - 57:20
preclude [1] - 44:8, 50:7
precluded [2] - 51:3, 60:16
predecessor [3] - 9:13, 34:21, 36:7
preface [1] - 37:17
prefer [1] - 37:2
prejudice [5] - 40:16, 47:20, 48:14, 48:16, 60:3
prejudiced [2] - 51:9, 51:14, 58:18
prejudices [1] - 47:25
preliminarily [2] - 22:10, 34:17
preparation [2] - 37:15, 60:3
prepared [2] - 35:17, 37:14
prescribed [1] - 44:22
presence [1] - 51:11
present [3] - 15:22, 22:13, 22:16
PRESENT [1] - 1:24
presentations [1] - 15:14
presented [1] - 46:1
presenting [1] - 50:7

press [2] - 10:7, 10:18
presumption [9] - 5:20, 13:4, 13:7, 13:9, 13:11, 15:6, 15:17, 18:12, 24:7
presumptively [3] - 7:12, 7:16, 10:13
prevent [2] - 43:18, 53:19
previously [1] - 44:10
primary [1] - 53:22
principle [2] - 7:5, 11:22
principles [7] - 6:24, 7:8, 7:9, 7:14, 11:24, 12:24
Prinston [2] - 1:17, 33:9
privacy [2] - 21:19
private [2] - 8:1, 23:15
privilege [1] - 31:16
problem [2] - 26:14, 46:9
procedure [1] - 58:25
Procedure [1] - 55:25
procedures [8] - 8:12, 8:13, 8:17, 8:20, 8:21, 9:18, 10:1, 44:22
proceed [3] - 4:7, 30:24, 54:8
proceeding [1] - 13:5
Proceedings [1] - 1:22
proceedings [2] - 30:25, 61:5
PROCEEDINGS [1] - 2:1
process [8] - 7:16, 12:21, 33:3, 43:7, 46:2, 50:5, 58:25, 59:5
processes [6] - 7:23, 9:18, 10:1, 10:4, 12:2, 17:13
produce [2] - 38:13, 44:17
produced [13] - 1:23, 5:16, 18:22, 19:20, 31:15, 33:9, 33:17, 34:19, 36:18, 39:7, 39:8, 53:4
producing [2] - 33:10, 44:19
product [2] - 16:17, 17:1
production [6] - 26:20, 31:12, 31:17, 33:7, 44:20, 47:2
productions [1] - 38:3

products [5] - 16:14, 16:24, 21:6, 26:21, 54:14
PRODUCTS [1] - 1:3
prohibit [1] - 46:17
prohibited [1] - 39:22
prohibiting [1] - 47:13
prohibition [1] - 49:4
prohibits [1] - 46:24
promptly [2] - 4:5, 43:11
proportionality [1] - 49:2
proposed [15] - 5:23, 5:25, 9:3, 9:5, 9:12, 16:3, 17:19, 18:3, 18:5, 18:16, 20:3, 24:2, 24:20, 24:23, 25:20
proposition [1] - 23:17
proprietary [1] - 8:2, 20:6
protect [2] - 20:5, 22:20
protected [3] - 18:15, 20:7, 50:5
protecting [2] - 12:3, 18:23
protection [4] - 8:9, 13:1, 14:25
protective [1] - 56:5
protects [1] - 10:13
prove [2] - 22:19, 34:22
proven [2] - 29:2, 55:15
provide [13] - 5:2, 5:15, 5:23, 6:13, 7:25, 35:5, 35:24, 38:20, 39:10, 40:3, 42:8, 45:9, 50:15
provided [3] - 12:20, 40:1, 54:2
providing [2] - 42:9, 45:10
provision [1] - 13:12
prudence [2] - 48:3, 57:19
public [36] - 5:2, 5:4, 5:7, 5:19, 5:21, 6:10, 6:17, 6:21, 8:22, 8:25, 9:1, 10:2, 10:4, 10:6, 10:11, 10:15, 10:23, 12:3, 13:8, 14:17, 14:19, 15:2, 15:4, 15:6, 15:16, 16:22, 17:2, 17:9, 17:23, 18:6, 18:12, 18:25, 22:4, 23:2,

50:20
public's [3] - 5:20, 15:18, 16:21
publicly [3] - 7:6, 10:22, 18:1
pulled [1] - 30:20
punish [2] - 44:24, 49:19
punished [1] - 39:20
punishing [2] - 46:14, 59:19
purely [1] - 50:17
purpose [2] - 7:18, 15:1
purposes [1] - 26:24
purse [1] - 46:7
pursuant [1] - 21:11
put [1] - 16:17

Q

quality [4] - 8:13, 8:21, 17:13, 53:18
questions [7] - 17:5, 33:15, 45:11, 51:13, 57:12, 57:13
quite [2] - 41:1, 45:17
quote [11] - 5:3, 5:5, 13:22, 14:14, 14:15, 14:16, 36:6, 44:8, 44:16, 47:1, 52:22
quote-unquote [2] - 36:6, 52:22
quoting [1] - 27:22

R

raise [2] - 21:15, 38:24
raised [6] - 35:1, 36:8, 37:21, 44:6, 48:9, 48:17
raises [1] - 21:16
rank [1] - 42:10
rationale [1] - 9:21, 9:24
RDR [1] - 61:11
re [3] - 44:13, 47:22, 58:11
RE [1] - 1:3
Re [1] - 23:16
re-litigate [1] - 47:22, 58:11
reached [1] - 31:9
reaching [1] - 7:9
read [2] - 8:7, 53:11
reading [1] - 57:22
ready [1] - 8:3
ready-fix [1] - 8:3
really [34] - 9:17, 18:19, 22:2, 22:4,

26:9, 27:1, 27:17, 28:7, 28:12, 28:20, 29:7, 29:14, 29:20, 30:16, 32:10, 36:14, 37:18, 42:10, 45:12, 46:18, 47:9, 48:22, 48:23, 49:14, 52:5, 53:7, 54:5, 54:20, 56:2, 56:14, 57:2, 57:15
reason [4] - 7:17, 16:21, 17:3, 47:2
reasonable [1] - 28:23
reasonably [1] - 38:7
reasoning [1] - 6:25
reasons [1] - 40:13
rebuttal [1] - 57:16
receive [2] - 20:3, 24:2
received [2] - 11:2, 33:13
recognize [3] - 18:13, 30:14, 35:11
recognizing [1] - 24:5
record [12] - 5:19, 9:7, 13:8, 13:21, 16:22, 18:2, 19:19, 19:21, 37:24, 39:6, 58:20, 61:5
recorded [1] - 1:22
records [5] - 13:4, 15:13, 16:18, 18:13, 24:7
red [3] - 13:20, 15:3, 52:5
redact [8] - 5:25, 6:1, 6:2, 6:3, 16:21, 17:3, 19:22
redacted [5] - 5:23, 6:13, 6:14, 9:6, 11:16, 16:1, 19:14, 19:15, 19:16, 19:20, 21:24, 21:25, 25:15
redacting [2] - 9:12, 9:21
redaction [7] - 7:20, 8:2, 9:3, 9:5, 20:18, 21:3, 24:20
redactions [27] - 5:24, 5:25, 15:23, 16:4, 17:15, 17:16, 17:19, 18:3, 18:5, 18:16, 19:5, 19:8, 19:9, 19:10, 19:11, 19:25, 20:4, 21:23, 22:11, 22:13, 22:14, 24:2, 24:23, 25:1, 25:20
reference [1] - 13:3
references [1] - 36:7
referring [4] - 9:10, 14:2, 23:22, 38:14

reflect [2] - 7:13, 39:6
reflected [1] - 20:10
refuse [1] - 14:23
refused [1] - 52:15
refute [2] - 30:6, 42:10
regard [1] - 60:11
regarding [1] - 13:24, 26:12
regardless [1] - 5:14
regards [1] - 17:13
regret [1] - 23:6
reject [1] - 12:23
rejected [1] - 23:13
rejecting [1] - 27:21
rejection [1] - 58:4
related [2] - 20:24, 21:5
relationship [1] - 49:2
releasable [5] - 7:12, 7:17, 12:4, 12:5, 12:20
release [4] - 10:7, 10:11, 14:20, 17:17
released [1] - 14:11
releases [1] - 10:18
relevance [2] - 28:15, 57:23
relevant [5] - 28:19, 31:25, 41:17, 44:23, 45:3
relied [1] - 54:18
relief [2] - 40:17, 60:8
reluctantly [1] - 18:2
relying [1] - 34:20
remain [7] - 3:21, 4:10, 6:23, 20:11, 20:20, 21:22, 22:7
remaining [1] - 33:8
remand [1] - 15:9
remember [1] - 56:23
remote [1] - 2:1
renamed [1] - 34:7
rendered [1] - 23:15
reneged [1] - 47:14
repeat [1] - 57:22
repeated [1] - 36:24
replete [1] - 8:19
reply [1] - 42:11
report [1] - 2:14, 4:10, 4:16, 4:17, 5:13, 5:23, 6:5, 6:8, 6:13, 6:17, 6:22, 7:11, 7:22, 8:7, 8:9, 8:19, 9:4, 9:8, 10:8, 13:6, 13:14, 13:15, 14:11, 16:2, 16:6, 16:10, 17:12, 17:18, 19:4, 19:10, 32:22, 33:3, 36:19, 58:15
Reporter [2] - 1:20,

61:12
reporter [1] - 32:14
REPORTER'S [1] - 61:1
reports [8] - 8:4, 8:5, 8:6, 10:12, 10:18, 13:24, 48:12, 53:10
represent [2] - 37:23, 45:23
representative [1] - 41:19
representatives [1] - 4:12
represented [1] - 45:24
request [9] - 2:8, 17:15, 17:18, 29:11, 40:12, 42:16, 43:9, 43:13, 45:15
requested [6] - 4:17, 29:22, 30:23, 49:4, 56:19, 60:8
requesting [2] - 40:17, 49:10
requests [1] - 35:1
require [1] - 8:9
required [2] - 43:10, 43:11
requirement [1] - 57:4
requirements [1] - 57:25
requisite [1] - 47:21
research [1] - 29:5
Research [1] - 23:16
reserve [1] - 28:22
reserving [1] - 23:10
resolutions [1] - 21:9
resolved [2] - 22:15
resort [1] - 55:24
respect [19] - 7:20, 8:15, 9:19, 12:20, 21:17, 23:8, 23:11, 23:13, 24:2, 31:11, 32:9, 40:14, 40:18, 43:1, 46:13, 47:13, 57:17, 59:10, 60:2
respectfully [2] - 17:15, 17:18
respond [6] - 17:4, 19:25, 20:2, 20:4, 26:3, 28:22
responded [1] - 5:10
responding [1] - 37:11
response [4] - 9:22, 25:20, 32:19, 58:13
responses [3] - 5:11, 9:25, 45:11
responsible [4] - 53:15, 53:22, 55:17,

58:18
**restatement** [1] - 47:5
**restriction** [1] - 44:2
**restrictions** [1] - 46:5
**restrictive** [1] - 22:20
**result** [1] - 49:7
**resulted** [3] - 7:15, 46:19, 49:3
**results** [5] - 8:19, 33:8, 33:11, 33:24
**resume** [1] - 32:17
**RET.)SPECIAL** [1] - 1:9
**return** [1] - 11:21
**review** [5] - 2:12, 11:9, 18:18, 19:24, 20:2
**reviewed** [1] - 11:1
**revisit** [2] - 17:19, 38:12
**Richard** [1] - 34:6
**RICHARD** [1] - 1:16
**right-hand** [1] - 27:15
**risen** [1] - 50:4
**risk** [7] - 28:3, 38:8, 39:19, 43:21, 50:6, 50:10, 50:13
**roadmap** [1] - 28:7
**Robert** [1] - 1:25
**rock** [1] - 27:18
**Rogers** [1] - 46:20
**roles** [1] - 42:23
**root** [1] - 44:7
**Roseland** [1] - 1:13
**round** [1] - 24:2
**routine** [1] - 22:22
**Rule** [3] - 22:18, 28:5, 55:25
**ruled** [2] - 23:20, 28:13
**rules** [3] - 28:1, 44:16, 51:2
**ruling** [5] - 21:17, 23:23, 23:24, 24:3, 60:5
**rulings** [3] - 2:10, 2:19, 4:4
**running** [1] - 54:13

# S

**sale** [1] - 55:1
**sanction** [13] - 28:23, 29:8, 29:24, 30:10, 30:12, 30:19, 30:24, 31:2, 46:14, 46:15, 46:22, 49:4, 51:6
**sanction's** [1] - 35:6
**sanctions** [31] - 25:22, 28:5, 29:12, 29:21, 30:23, 38:17, 39:12,

40:16, 42:21, 44:3, 44:4, 44:9, 45:4, 47:21, 48:4, 49:6, 49:7, 49:9, 50:9, 51:15, 52:3, 52:20, 55:6, 56:6, 56:14, 56:16, 56:18, 59:14, 59:17, 59:25
**satisfied** [1] - 10:24
**satisfy** [1] - 59:2
**satisfying** [1] - 59:2
**scale** [1] - 30:23
**scanned** [2] - 33:22, 33:25
**scanning** [1] - 33:10
**scenario** [1] - 38:22
**screen** [2] - 2:25, 27:9
**seal** [5] - 21:17, 22:19, 23:12, 24:9
**sealed** [6] - 2:13, 2:22, 3:21, 4:10, 20:12, 24:4
**sealing** [5] - 8:10, 22:25, 23:19, 23:20, 24:10
**search** [2] - 32:18, 39:7
**searches** [1] - 34:20
**second** [5] - 24:25, 32:11, 40:15, 40:22, 53:20
**secondly** [1] - 57:25
**secret** [6] - 11:20, 17:25, 18:25, 27:2, 29:20, 39:20
**section** [2] - 9:19, 52:21
**sections** [2] - 9:11, 11:25
**secure** [2] - 51:11, 52:1
**see** [11] - 16:6, 18:22, 20:15, 24:8, 31:5, 41:18, 43:4, 43:16, 49:25, 50:23, 51:12
**seek** [3] - 12:7, 18:6, 60:15
**seeking** [2] - 47:22, 56:6
**seeks** [1] - 58:9
**sell** [1] - 26:21
**selling** [1] - 54:14
**senior** [1] - 58:9
**sense** [4] - 4:3, 7:23, 35:15, 43:1
**sensitive** [4] - 18:14, 18:23, 19:16, 20:5
**separate** [1] - 38:24
**separately** [1] - 34:23
**September** [3] - 1:8,

2:3, 61:11
**series** [1] - 4:11
**serious** [7] - 28:3, 31:4, 33:15, 42:21, 59:24, 60:2, 60:9
**seriousness** [1] - 46:15
**set** [3] - 26:6, 39:14, 47:5
**setting** [1] - 45:11
**seven** [2] - 18:16, 20:3
**several** [1] - 40:12
**severe** [1] - 40:16
**severity** [1] - 5:6
**shall** [1] - 14:23
**shared** [1] - 11:13
**sheets** [1] - 26:13
**shield** [3] - 27:24, 29:2, 39:17
**short** [1] - 37:1
**show** [4] - 51:6, 51:8, 52:24
**shown** [1] - 8:25
**shows** [2] - 46:21, 58:20
**side** [1] - 3:25
**sides** [1] - 2:17
**significant** [8] - 31:2, 41:11, 52:3, 52:19, 55:6, 55:16, 55:18, 60:15
**simply** [1] - 42:25
**single** [4] - 19:6, 47:9, 54:21, 59:20
**site** [1] - 16:15
**site's** [1] - 7:23
**sites** [2] - 7:24, 8:23
**situation** [4] - 28:8, 37:2, 46:25, 54:6
**six** [1] - 6:2
**SKADDEN** [1] - 1:15
**SLATE** [1] - 1:15
**Slater** [15] - 2:24, 19:2, 25:24, 34:21, 35:1, 35:8, 36:1, 37:20, 38:19, 39:16, 46:11, 46:14, 49:10, 51:19, 58:3
**SLATER** [19] - 1:11, 1:12, 3:1, 3:4, 3:8, 25:25, 26:2, 27:10, 27:14, 30:3, 31:13, 32:10, 32:16, 33:24, 34:3, 36:3, 51:20, 56:22, 60:19
**Slater's** [2] - 37:17, 47:22
**slipped** [1] - 32:3
**slipping** [1] - 53:19
**slowly** [1] - 32:14

**smacks** [1] - 55:13
**SMITH** [1] - 1:25
**SMO** [2] - 32:9, 39:5
**smoking** [1] - 32:5
**so-called** [1] - 56:24
**Solco** [1] - 1:18
**someone** [5] - 12:21, 18:8, 21:21, 49:16, 53:24
**somewhat** [1] - 9:7
**sorry** [6] - 21:1, 25:9, 41:22, 47:18, 54:24, 55:5
**sort** [2] - 16:1, 22:23
**sought** [4] - 45:18, 46:6, 51:15, 59:18
**Soule** [1] - 1:20, 61:11
**sources** [1] - 10:18
**speaks** [1] - 29:20
**special** [1] - 55:13
**Special** [4] - 2:2, 2:10, 2:18, 39:5
**specific** [5] - 7:9, 8:1, 28:15, 31:19, 35:18
**specifically** [2] - 15:25, 38:14
**specificity** [1] - 16:7
**speculate** [1] - 51:8
**speculating** [1] - 42:23
**speculation** [1] - 42:10
**speculative** [2] - 41:10, 50:17
**spelling** [1] - 34:7
**Spirit** [1] - 48:2
**stand** [3] - 31:11, 42:18, 60:6
**standard** [5] - 5:6, 9:25, 15:6, 19:21, 19:22
**standing** [1] - 12:7
**start** [1] - 40:4
**started** [4] - 2:5, 43:7, 49:13, 54:6
**starting** [4] - 13:19, 16:10, 18:20, 26:9
**state** [4] - 27:2, 29:20, 39:20, 42:9
**statement** [4] - 3:16, 16:9, 37:17, 59:7
**statements** [3] - 10:8, 36:6, 58:22
**states** [1] - 8:24
**States** [13] - 4:18, 28:1, 43:2, 46:20, 46:21, 50:2, 50:4, 50:11, 50:19, 54:7, 54:9, 57:20
**STATES** [1] - 1:1

**stating** [1] - 13:13
**station** [1] - 28:20
**stature** [1] - 50:5
**status** [1] - 32:6
**statute** [1] - 46:23
**statutes** [1] - 27:24
**stenography** [1] - 1:22
**step** [1] - 23:7
**still** [5] - 28:9, 30:12, 30:20, 32:8, 32:23
**stipulations** [1] - 48:21
**stood** [1] - 23:17
**stop** [1] - 28:1
**stops** [1] - 58:17
**straight** [1] - 54:6
**Streets** [1] - 1:7
**striking** [3] - 28:25, 49:5, 49:20
**stronger** [1] - 5:22
**strongly** [1] - 49:8
**structure** [5] - 16:24, 17:1, 17:2, 41:12, 41:13
**studies** [1] - 15:12
**subject** [4] - 5:19, 22:11, 24:13, 45:15
**submission** [1] - 7:2
**submissions** [1] - 15:12
**submit** [10] - 4:19, 15:19, 18:3, 18:15, 21:24, 25:14, 39:2, 42:20, 52:16, 57:11
**submitted** [6] - 7:3, 10:2, 17:11, 52:6, 53:17, 57:6
**subsection** [1] - 14:25
**substantial** [1] - 29:13
**substantiate** [1] - 38:10
**substantiated** [1] - 21:13
**substantive** [6] - 20:24, 21:3, 22:5, 23:18, 30:7, 30:25
**such-and-such** [1] - 3:21
**sudden** [1] - 47:14
**sufficient** [1] - 40:16
**suggest** [3] - 41:6, 44:10, 47:8
**suggested** [1] - 50:3
**summary** [2] - 9:10, 9:19
**support** [3] - 12:2, 17:11, 42:20
**supported** [1] - 15:18
**supporting** [1] - 11:15
**supposed** [1] - 53:19

**Supreme** [4] - 46:21, 46:22, 48:3, 57:20
**surprise** [1] - 36:10
**suspect** [2] - 35:22, 58:3
**suspicious** [2] - 36:11, 55:14
**system** [3] - 54:8, 54:23, 55:8

# T

**table** [1] - 39:15
**tables** [3] - 7:4, 7:13, 12:19
**tailored** [2] - 18:23, 19:1
**Taizhou** [3] - 40:2, 41:8, 43:13
**talks** [2] - 46:12, 53:23
**tat** [1] - 40:22
**TC-201729** [1] - 32:13
**team** [1] - 11:1
**technical** [2] - 8:1, 26:13
**teeth** [1] - 30:19
**teleconferences** [1] - 15:13
**Tenth** [1] - 45:1
**terms** [3] - 30:24, 49:14, 60:7
**terrific** [1] - 27:10
**test** [1] - 33:24
**testify** [1] - 45:25
**testimony** [7] - 48:14, 49:4, 53:12, 54:2, 58:16, 58:21, 60:15
**testing** [8] - 8:11, 8:17, 8:19, 8:20, 9:17, 11:20, 33:8, 38:15
**THE** [73] - 1:1, 2:4, 3:3, 3:7, 3:11, 3:18, 3:24, 4:5, 5:14, 6:18, 8:7, 9:3, 9:12, 9:21, 10:25, 11:19, 12:5, 12:11, 12:13, 13:3, 13:16, 14:2, 14:6, 14:9, 15:10, 16:3, 16:9, 16:13, 16:23, 17:4, 17:25, 19:11, 20:2, 21:1, 21:24, 22:9, 23:22, 24:1, 24:17, 24:22, 24:24, 25:2, 25:6, 25:9, 25:12, 25:17, 26:1, 27:9, 27:13, 29:23, 31:11, 32:8, 32:15, 33:21, 34:1, 34:4, 34:9, 34:14, 35:13,

36:1, 37:9, 39:3, 39:11, 41:24, 42:2, 45:21, 49:25, 51:18, 56:20, 57:16, 59:21, 60:21, 60:24
**themselves** [1] - 43:22
**therefore** [3] - 5:12, 14:20, 16:1
**they've** [5] - 6:15, 31:15, 38:2, 53:6, 54:16
**Third** [2] - 15:7, 48:2
**third** [5] - 5:25, 14:12, 21:19, 32:21
**Thomas** [1] - 2:2
**THOMAS** [1] - 1:9
**throughout** [2] - 40:13, 59:5
**thrust** [1] - 48:3
**Thursday** [4] - 25:15, 25:18, 25:20
**tit** [1] - 40:22
**tit-for-tat** [1] - 40:22
**title** [1] - 41:15
**today** [7] - 3:9, 4:6, 7:5, 19:7, 24:24, 26:7, 60:18
**together** [1] - 48:20
**took** [3] - 8:14, 52:6, 53:5
**top** [2] - 53:14, 53:21
**topics** [1] - 48:15
**totally** [1] - 49:19
**towards** [1] - 23:7
**Trading** [1] - 20:16
**trails** [1] - 11:10
**train** [1] - 28:20
**transcript** [5] - 1:22, 2:12, 3:20, 55:3, 61:4
**transcription** [1] - 1:23
**transitioned** [1] - 35:19
**travel** [8] - 20:21, 26:24, 39:22, 40:1, 40:7, 45:7, 45:19, 49:16
**treatment** [1] - 27:17
**trial** [6] - 15:9, 30:20, 30:25, 48:4, 48:7, 48:11
**tried** [2] - 53:3, 59:15
**trouble** [1] - 8:8
**troubled** [2] - 35:13, 60:10
**troubles** [1] - 34:15
**troubling** [1] - 60:10
**true** [2] - 7:7, 12:17
**trump** [1] - 24:6

**try** [10] - 26:2, 30:6, 30:15, 32:18, 36:12, 43:15, 49:18, 51:21, 52:25, 58:2
**trying** [13] - 22:25, 26:14, 30:13, 30:16, 32:14, 33:23, 36:16, 43:17, 43:18, 45:9, 48:18, 48:19, 59:1
**turn** [1] - 4:21
**two** [17] - 2:6, 2:12, 4:8, 7:1, 22:6, 22:7, 23:14, 24:6, 26:12, 27:16, 39:23, 48:9, 50:25, 56:12, 57:9
**tying** [1] - 2:6
**type** [8] - 16:7, 30:4, 40:17, 40:18, 47:21, 49:10, 51:6, 51:7
**types** [2] - 8:4, 51:15

# U

**U.S** [12] - 1:6, 1:18, 26:22, 27:23, 28:3, 41:13, 47:4, 54:11, 54:14, 54:22, 55:8, 60:14
**ultimately** [3] - 5:10, 55:14, 55:17
**unaware** [1] - 35:18
**under** [13] - 4:17, 5:21, 5:22, 19:20, 20:6, 28:5, 29:3, 38:2, 38:11, 44:7, 51:14, 59:22
**undermine** [2] - 7:18, 14:25
**underscores** [1] - 10:9
**understandings** [1] - 36:7
**understood** [2] - 34:16, 40:25
**unfavorable** [1] - 27:24
**unilateral** [1] - 41:16
**United** [13] - 4:18, 28:1, 43:2, 46:20, 46:21, 50:2, 50:4, 50:11, 50:19, 54:7, 54:8, 57:19
**UNITED** [1] - 1:1
**unknown** [1] - 11:3, 11:6, 11:15
**unless** [3] - 12:6, 14:16, 15:1
**unquote** [2] - 36:6, 52:22
**unreleasable** [1] - 12:9

**unseal** [1] - 2:8
**unsealed** [5] - 2:22, 3:22, 5:16, 15:11, 18:10
**unsuccessful** [1] - 52:3
**up** [22] - 2:6, 8:2, 8:6, 18:20, 22:25, 29:9, 30:12, 30:20, 31:15, 33:5, 44:25, 46:6, 48:20, 52:19, 53:5, 53:24, 54:13, 55:8, 56:6, 57:14, 58:13, 59:13
**upshot** [1] - 53:8
**urge** [1] - 7:10

# V

**VALSARTAN** [1] - 1:3
**valsartan** [5] - 11:4, 22:6, 30:2, 40:11, 44:13
**valuable** [1] - 18:14
**Vanaskie** [1] - 2:2
**VANASKIE** [1] - 1:9
**various** [4] - 9:22, 16:24, 33:10, 41:17
**vastly** [1] - 43:4
**verdict** [2] - 40:11, 48:1
**version** [6] - 5:23, 6:13, 21:25, 25:15, 32:23, 35:4
**via** [1] - 2:1
**victim** [1] - 45:14
**videoconference** [1] - 2:1
**violations** [3] - 47:5, 48:5, 55:18
**virtually** [1] - 58:8

# W

**waiting** [2] - 22:15, 60:5
**wants** [3] - 26:23, 36:4, 58:23
**warrant** [2] - 22:24, 23:20
**warranted** [1] - 49:9
**warrants** [1] - 21:3
**Washington** [1] - 1:17
**waste** [1] - 57:15
**websites** [2] - 41:17, 42:4
**weedy** [1] - 47:2
**week** [3] - 29:5, 56:12, 60:20
**weigh** [1] - 50:25

**welcome** [2] - 35:7, 35:24
**Westinghouse** [1] - 45:2
**Westlaw** [2] - 27:7, 27:8
**whole** [1] - 16:2
**wildly** [1] - 51:16
**willful** [1] - 40:23
**willingness** [1] - 23:6
**windfall** [2] - 48:25, 49:7
**withheld** [1] - 11:17
**withhold** [1] - 49:16
**witness** [9] - 28:15, 28:18, 42:3, 45:25, 47:3, 50:8, 60:11, 60:15
**witnesses** [6] - 45:19, 48:15, 50:8, 55:12, 55:15, 58:21
**word** [4] - 39:15, 39:16, 45:14, 57:24
**Word** [2] - 32:25, 36:20
**words** [2] - 38:22, 49:3
**worldwide** [1] - 5:7
**worse** [1] - 49:20
**worth** [2] - 23:19, 49:11
**would've** [1] - 56:2
**writes** [2] - 7:4, 8:5
**written** [6] - 24:8, 45:11, 51:12, 56:20, 57:12
**wrongdoing** [2] - 22:25, 23:1
**wrote** [1] - 53:13

# Y

**year** [2] - 2:9, 26:12
**years** [1] - 43:24
**York** [1] - 1:16
**yourself** [1] - 59:4

# Z

**zero** [1] - 41:6
**Zhejiang** [2] - 1:18, 16:15
**ZHP** [89] - 4:2, 4:11, 4:24, 5:10, 5:22, 6:12, 9:7, 10:4, 10:25, 13:15, 14:17, 15:15, 15:24, 16:13, 16:23, 17:13, 18:7, 18:20, 19:21, 20:16, 21:12, 22:12, 22:23,

22:25, 23:4, 23:5,
26:16, 27:18, 28:19,
28:23, 29:1, 29:7,
29:14, 30:1, 30:5,
31:3, 31:5, 31:15,
32:12, 33:9, 33:16,
34:5, 34:24, 35:12,
36:15, 37:3, 38:10,
38:11, 39:4, 39:18,
39:22, 40:5, 40:11,
40:13, 41:4, 42:15,
42:22, 43:7, 43:10,
43:11, 43:15, 44:24,
45:10, 45:13, 45:17,
45:23, 45:24, 46:2,
46:13, 46:14, 47:19,
48:1, 48:14, 48:19,
49:5, 49:17, 49:19,
50:1, 50:5, 50:10,
50:16, 50:24, 51:23,
53:1, 54:20, 55:25,
59:14, 59:19

**ZHP's** [12] - 7:2, 9:1,
10:21, 17:10, 17:23,
20:17, 28:25, 38:7,
43:6, 45:20, 46:18,
53:12
**Zhuhai** [1] - 11:14
**Zoom** [1] - 2:1
**Zu** [1] - 8:24
**Zu's** [2] - 13:12, 21:13