UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

————————————————————————

CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS        19-md-02875
LIABILITY LITIGATION

STATUS CONFERENCE VIA
ZOOM VIDEOCONFERENCE

————————————————————————

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        December 14, 2022
        Commencing at 4:04 p.m.


B E F O R E:        THE HONORABLE THOMAS I. VANASKIE (RET.)
                    SPECIAL MASTER


A P P E A R A N C E S:


        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs


        GOLDENBERG LAW, LLC
        BY:  MARLENE J. GOLDENBERG, ESQUIRE
        800 Lasalle Avenue, Suite 2150
        Minneapolis, Minnesota  55402
        For the Plaintiffs



    Ann Marie Mitchell, CRR, RDR, RMR, Official Court Reporter
            AnnMarie_Mitchell@njd.uscourts.gov
                    (856) 576-7018

    Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

```
 1    A P P E A R A N C E S (Continued):

 2

 3         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
           BY:  RICHARD T. BERNARDO, ESQUIRE
 4         1440 New York Avenue, N.W.
           Washington, DC 20005
 5         For the Defendants, Prinston Pharmaceuticals,
           Solco Healthcare U.S. LLC, and  Zhejiang Huahai
 6         Pharmaceuticals Ltd.

 7         GREENBERG TRAURIG LLP
           BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
 8         3333 Piedmont Road, NE, Suite 2500
           Atlanta, Georgia  30305
 9         For the Defendants, Teva Pharmaceutical Industries Ltd.,
           Teva Pharmaceuticals USA, Inc., Actavis LLC,
10         and Actavis Pharma, Inc.

11

12         MORGAN, LEWIS & BOCKIUS, LLP
           BY:  KATHRYN E. DEAL, ESQUIRE
13         1701 Market Street
           Philadelphia, Pennsylvania 19103
14         - and -
           BY:  STEVEN N. HUNCHUCK, ESQUIRE
15         One Oxford Centre, 32nd Floor
           Pittsburgh, Pennsylvania 15219
16         For the Defendants, Aurolife Pharma LLC
           and Aurobindo Pharma USA, Inc.

17

18    ALSO PRESENT:

19         LORETTA SMITH, ESQUIRE
           Judicial Law Clerk to The Honorable Robert B. Kugler
20
           Larry MacStravic, Courtroom Deputy
21

22

23

24

25
```

*United States District Court*

1              (PROCEEDINGS held via Zoom before SPECIAL MASTER

2    THOMAS I. VANASKIE at 4:04 p.m.)

3              SPECIAL MASTER VANASKIE:  Are you going to be the

4    spokesperson for plaintiffs today?

5              MR. SLATER:  Only on the scheduling issue with the

6    experts.  I think the other issues, other people probably will

7    speak to them.

8              SPECIAL MASTER VANASKIE:  Very well.

9              And you know the drill here.  Keep your phones muted,

10   please.  If you need to put us on hold, please make sure we're

11   not going to be listening to elevator music.  And don't put us

12   on hold if you can avoid it.  You can mute us, but don't put

13   us on hold.

14             And I think we're ready to get started.

15             We'll address the question of scheduling first.  And

16   I wanted to see where things stand with respect to the

17   deadlines for defense liability expert reports.

18             Who's addressing this issue for the defense?

19             MR. BERNARDO:  Rich Bernardo, Your Honor, counsel for

20   ZHP.

21             How are you today?

22             SPECIAL MASTER VANASKIE:  I'm well, Mr. Bernardo.

23             MR. BERNARDO:  I'm also in a real office or at least

24   an office.

25             SPECIAL MASTER VANASKIE:  Well, where do we stand on

1     this?

2           MR. BERNARDO:  I think we've been working very

3     cooperatively with Mr. Slater, which I appreciate.

4           As I think we mentioned in our letter, there were a

5     couple of experts who just had some illness issues that have

6     caused us to ask for an extra few days, four days to be

7     specific, for two ZHP experts, and I also understand there was

8     an issue with one Torrent-specific expert asking for two or

9     three days.

10          So the schedule would stand that -- again, subject to

11    plaintiffs' agreement, but this is where I think we are, that

12    the three Teva-specific expert reports and two defense shared

13    reports would go out on Monday as scheduled, and then on

14    Thursday there would be the one Torrent-specific report, and

15    then on Friday there would be the two ZHP-specific reports.

16          And this has also caused a couple of other dates to

17    have to slide, largely to give plaintiffs an opportunity to I

18    guess digest the reports.  So we're trying to move one of the

19    experts.  I know -- I don't know if there's anything to report

20    on that, but trying try to move one of them into early

21    February, taking into account both counsel's schedules with

22    ZHP's responding expert to follow.  And I know -- and Teva can

23    respond, but I know they're also trying to come up with a

24    stipulation to not have to have their experts follow that.

25          So that was a very long answer, Your Honor, but I

 1   think we're coming toward some agreement.  And I'll let Adam

 2   tell the Court where we are in response to what I had sent out

 3   earlier today.

 4          SPECIAL MASTER VANASKIE:  All right.  Mr. Slater.

 5          MR. SLATER:  Yes, Judge, I think that everything

 6   Mr. Bernardo said is correct.

 7          Obviously, if there's issues that hold up the

 8   reports, we understand the Court's view to that, and we want

 9   to work with the defense.

10          We just -- the issue that came up for us is if the

11   reports come right before Christmas, Christmas is already a

12   loss, so it pushes things into the month of January.  And

13   we're waiting to hear back from two experts about pushing

14   their depositions about a week.  And the other expert,

15   Dr. Bain, we've confirmed she can be deposed the very

16   beginning of February.  So that works fine.

17          And then we've agreed that ZHP can then produce their

18   responsive expert after that, which makes a lot of sense.  The

19   plaintiff expert will go first, then the defense expert.

20          And Teva had some concerns that we spoke about, which

21   I can't imagine we're not going to work out, just to give them

22   some comfort on this.

23          The only thing is just figuring out if that affects

24   any other deadlines and how it does, which I don't know that

25   we really have to burden you with that today, because my

1  assumption is that -- we're just waiting to hear back from two

2  of the experts.  They just, for whatever reason, didn't get

3  back to us today after we spoke this morning.

4      Once we get that worked out, I think we'll be able to

5  very quickly provide Your Honor some proposed adjustments that

6  should be pretty minor, by a few weeks for a few things.  And

7  we're okay with that, because we think that obviously over the

8  holidays and with illnesses, we have to do the best we can.

9      SPECIAL MASTER VANASKIE:  Sure.

10      Who's on the phone for Teva?

11      MS. LOCKARD:  Hi, Judge Vanaskie.  It's Victoria

12  Lockard from Greenberg Traurig.  How are you?

13      SPECIAL MASTER VANASKIE:  Good.  How are you?

14      MS. LOCKARD:  Good.  I'm great.

15      So I can tell you what our situation is.  We are

16  planning on behalf of Teva to submit our expert reports by the

17  original deadline.  We're not asking for any extensions.  We

18  have our witnesses gathering dates for us with anticipation

19  that we would be able to provide their depositions by the

20  January 31st deadline or within a day or two after.

21      The issue that we spoke about with Mr. Bernardo and

22  Mr. Slater relates to their witness, plaintiffs' witness,

23  Susan Bain.  And we did not want to have any of plaintiffs'

24  experts be deposed after Teva's experts.  I mean, frankly, our

25  position, and based on the scheduling order, was intended I

*United States District Court*

1  think so that we would get the benefit of plaintiffs' experts

2  deposition testimony before ours are deposed and respond to

3  those criticisms.

4          In speaking with Mr. Slater, it appears that Susan

5  Bain would be the only one who would have to go after Teva's

6  experts.  And he has assured us that she will not have

7  opinions or criticisms that stray beyond her report, and her

8  report on its face does not apply to Teva in terms of opinions

9  or criticisms.  And we wanted to get some sort of stipulation

10  agreed upon in writing so that we both have some clarity on

11  that.

12          What we don't want to do is have our experts be

13  deposed and then have Susan Bain be deposed subsequently and

14  come up with, you know, opinions that pertain to Teva and then

15  have our experts not available to respond to those criticisms.

16          Mr. Slater says that's not going to happen.  I agree.

17  I think we'll be able to work it out.  But, you know, it's

18  always through the devil in the details.

19          So we'll endeavor to try to get that resolved and get

20  that committed to writing so that we can get everything

21  squared away and we'll move on, move forward.

22          SPECIAL MASTER VANASKIE:  It sounds like everything

23  is agreeable.

24          MR. SLATER:  It does, Your Honor.  And as Ms. Lockard

25  said, Dr. Bain wrote a report with CGMP opinions pertaining to

1    ZHP and the ZHP companies.  She offered no opinions regarding

2    Teva or Torrent.

3              SPECIAL MASTER VANASKIE:  Okay.  All right.

4              MR. SLATER:  We have a different expert with regard

5    to Teva and Torrent.

6              SPECIAL MASTER VANASKIE:  So what's our next step

7    here?  Are you going to reduce this to a stipulation or reduce

8    it to a writing?

9              MR. SLATER:  I would think probably just an exchange

10   of a letter or an email or something would be sufficient.  But

11   I've said it on the record now, her report does not set forth

12   opinions blaming Teva or Torrent.  That's not what her report

13   is.  Her report focuses on ZHP and its companies.  So that's

14   what her report says, so I wouldn't anticipate her -- unless

15   somebody wants to ask her questions beyond the opinions in her

16   report, which I can't stop somebody else from asking opinions,

17   but, you know, that's not her intent.  She intends to offer

18   opinions pertaining to ZHP and ZHP companies.

19             SPECIAL MASTER VANASKIE:  All right.

20             Is that satisfactory, Ms. Lockard?

21             MS. LOCKARD:  We had -- based on our discussions, we

22   had begun drafting a stipulation.  We may be able to agree

23   based on the representation on the record.

24             I just want to be absolutely certain that Susan Bain

25   is not going to come back and respond to something that our

1   experts have said in their depositions that take place

2   earlier.

3          As long as the commitment is that she will not stray

4   beyond what is in her expert reports and that those opinions

5   in her expert report will not be used against Teva, then I

6   think we have an agreement.

7          SPECIAL MASTER VANASKIE:  All right.  Mr. Slater, do

8   we have an agreement?

9          MR. SLATER:  Let me look at what's written down.

10  There's some fairly broad language in there.  I mean, I'd have

11  to look at what it says.

12         SPECIAL MASTER VANASKIE:  Understood.

13         MR. SLATER:  I can just again -- I have an expert who

14  wrote a report focusing on ZHP.  Her opinions pertain to ZHP.

15  That's who she focused on.  That's where her criticisms are as

16  to CGMP issues.  She had no CGMP criticisms of Teva or Torrent

17  in her report.

18         SPECIAL MASTER VANASKIE:  Okay.  Very well.

19         All right.  So I'll just put this down in the

20  category of to be continued, but it looks like it's pretty

21  complete.

22         MR. BERNARDO:  Thank you, Your Honor.

23         SPECIAL MASTER VANASKIE:  Thank you.  Let's talk now

24  about the losartan and irbesartan fact sheets.

25         Marlene, are you going to be addressing this issue?

*United States District Court*

```
 1              MS. GOLDENBERG:  That's me, Your Honor.  How are you?
 2              SPECIAL MASTER VANASKIE:  Ms. Goldenberg, I'm sorry.
 3   Yes.
 4              I'm well.  Thank you.
 5              MS. GOLDENBERG:  Marlene is fine.
 6              SPECIAL MASTER VANASKIE:  All right.
 7              MS. GOLDENBERG:  And I'm happy to start.  I don't
 8   know if the defendants are -- who is speaking for them, but I
 9   think you saw from our agenda letter that thankfully we've had
10   some very productive meet and confers.  We're down to really
11   just one subissue that's left.  And it's the question of who
12   has to do this and what do they have to do.
13              So, you know, our position is that the plaintiffs who
14   filed these mixed-use cases of course have already filed very
15   lengthy, I think 40-some pages, plaintiff fact sheets of
16   information.  And, you know, the claims that each client has,
17   their cancer cases and their medical history is the same,
18   their medical records are the same, their medical bills are
19   the same, and everything else is the same, except now they're
20   just, you know, disclosing what is already in their Complaint,
21   which is that they took contaminated losartan or irbesartan.
22              Based on that, you know, I understand that the
23   defendants put in their agenda letter that plaintiffs weren't
24   answering questions with -- with anything other than valsartan
25   in mind, but that really just isn't true, because the injuries
```

*United States District Court*

1    are the same and so is everything else that I just listed.

2           So what we've offered is for those plaintiffs to

3    submit a supplement, which really is just the use section that

4    gives the defendants all the information they would need about

5    the contaminated products that they took, losartan and/or

6    irbesartan, but there really isn't any reason to require

7    plaintiffs to engage in this copy/paste operation that I

8    should add is now more complicated because the defendants --

9    you know, we accommodated many of their requests to reorganize

10   sections in the plaintiff fact sheet.  So what otherwise might

11   have been a simple, you know, select all and paste really

12   isn't going to be that.  We're going to have to compare each

13   and every question and paste in the exact same information

14   that they already have.  So it's really just a pragmatic

15   question.

16          SPECIAL MASTER VANASKIE:  Uh-huh.  Very well.

17          Who is addressing this issue for the defense?

18          MS. DEAL:  Good afternoon, Your Honor.  This Kate

19   Deal of Morgan Lewis.  I'll be addressing this issue on behalf

20   of the defense group.

21          SPECIAL MASTER VANASKIE:  Good afternoon, Ms. Deal.

22          MS. DEAL:  So, Your Honor, you know, I think it is --

23   it's great news that we don't have any disputes left as to the

24   form or substance of the revised PFS.  And as counsel said,

25   the only question that's left for Your Honor's consideration

1    is whether plaintiffs who used multiple products and are

2    asserting claims under multiple sartans and who have completed

3    the valsartan-only PFS, whether they should complete the new

4    PFS that covers the additional products and their additional

5    claims.  And we think for several reasons the answer is yes.

6            And first, obviously for consistency and uniformity

7    purposes, it makes good sense to have one comprehensive fact

8    sheet that covers all three implicated sartans and the claims

9    based upon those different drugs for each plaintiff and

10   particularly for multi-use plaintiffs, rather than trying to

11   do a piecemeal approach where facts and claims from the same

12   plaintiff as to multiple drugs are cobbled together with

13   additional forms or addenda.

14           And second, Your Honor, the plaintiffs' alternative

15   proposal in our view really doesn't work because it doesn't

16   actually provide the parties with the requisite information as

17   to each sartan.

18           As counsel just stated, plaintiffs have suggested

19   using the valsartan-only fact sheet and then appending simply

20   product usage information as to losartan and irbesartan.

21           But the reality is the plaintiffs who have used

22   multiple drugs implicated in the MDL, they have to provide

23   facts pertaining to their claimed damages, their claimed

24   injuries; their alleged advertising exposure as to each drug

25   implicated in their clams; alleged fraud; alleged instructions

1    from their prescribers, which may be different depending upon

2    the drug at issue; discussions with those prescribers;

3    communications with the defendants for each implicated

4    product; their possession of product labeling or packaging

5    among a variety of other claims, including documentation.  And

6    it's not sufficient to simply have that for a valsartan claim

7    and then be left to guess or speculate which, if any, of that

8    information is the same for losartan or irbesartan.  Right?

9    We need that information for all of the sartans that are

10   forming the basis of any particular multi-use plaintiff's

11   claims.  And so the alternative proposal, it just doesn't work

12   because it doesn't provide that information.

13           So what we've done here is taken a more comprehensive

14   and streamlined and hopefully more organized approach, which

15   carries the benefit of the years of experience we've had thus

16   far in the MDL, where these multi-use plaintiffs will

17   simply --  you know, they've already collected the valsartan

18   information, and they will have to fill out a comprehensive

19   form as to irbesartan or losartan in any event.

20           And so we're simple asking them to do one

21   comprehensive form.  We think it makes the most sense.  It

22   provides all the requisite information.  It keeps things

23   organized.  It provides consistency and uniformity.

24           Now, I want to address the concern that plaintiffs

25   have raised in their letter to the Court where they suggested

that they were concerned that for multi-use plaintiffs who had

done a valsartan-only PFS, to the extent they have provided

full and complete information in that PFS as to valsartan,

they were concerned that this would be some kind of gotcha

exercise where defendants would try to dismiss claims based

upon the revised PFS.

And it really isn't that, Your Honor.  If a plaintiff

has already provided full valsartan information, there really

shouldn't be a risk of dismissal of the valsartan claims for

deficiencies in the revised PFS as to the other drugs.

I mean, for one thing, it's sort of unreasonable and

counterfactual to assume that plaintiffs and their counsel

wouldn't provide the same information in the revised form that

they provided in the original form.

But to the extent there is a discrepancy, say there's

an error or something occurs, obviously that can be rectified

in the meet-and-confer process that's already part of the

existing order to show cause protocol.

If in that circumstance the plaintiffs say, oh, you

know what, we provided this information previously, we missed

it in the revised PFS, they can point to that, and we can

easily work that out.  But to assume that that's going to be

an extensive problem I think is sort of unreasonable and

counterfactual in that kind of a circumstance.

So for all of those reasons, Your Honor, the defense

1    group thinks that it's important to have the multi-use

2    plaintiffs provide a comprehensive PFS that covers all of the

3    products upon which they're basing claims.

4            SPECIAL MASTER VANASKIE:  All right.  Do we have an

5    estimate of the number of multi-use plaintiffs there may be?

6            MS. GOLDENBERG:  I think we're probably not

7    talking -- and this is me guessing, Your Honor, so I'll have

8    to go back and check the docket, but I think we're talking

9    under 200 people.

10           I can say the easiest solution to everything that

11   Ms. Deal was just suggesting is that, you know, with all

12   discovery, there's a duty to supplement.  Right?  And so if

13   those answers are different for any plaintiff, and for some

14   reason they had a conversation with their physician that was

15   confined exclusively to irbesartan and not to valsartan, we

16   all understand we have a duty to supplement discovery just the

17   way the defendants do.  But I still don't think that's a

18   reason to make people copy and paste information 40 pages --

19   you know, 40 pages worth of information.

20           We can give them the use information, but the injury

21   claims are all going to be the same.  So are the records and

22   everything there.

23           MS. DEAL:  Your Honor, they're obviously not going to

24   be the same.  Prescribing records for different drugs by

25   different prescribers on different dates of time are not the

1    same.

2          And so the notion that a valsartan fact sheet, we

3    said for valsartan we need these, you know, 40 pages of

4    information.  We need the same information for every

5    implicated drug.  And the notion that you can say, oh, for

6    valsartan, all of these answers are going to be the same for

7    other drugs that could be prescribed different dates of time,

8    the injuries could be different, depending upon what was taken

9    when, their exposure to defendants, who the defendants are,

10   their exposure to advertising, all of the things that we've

11   said have been necessary from the start for valsartan are

12   necessary for all of the implicated drugs.

13         And so the notion that you can just base claims for

14   irbesartan or losartan off of a valsartan-only fact sheet and

15   simply add an addendum that says, here's the product usage

16   data for these other implicated drugs, it just makes no sense.

17         SPECIAL MASTER VANASKIE:  But it does appear to me

18   that there are questions on the fact sheet that aren't -- the

19   answers to which aren't dependent upon which drug you took,

20   what sartan you took, you know, things about the personal

21   history of the claimant, educational history, employment

22   history, that all will stay the same.  Exposure to cadmium,

23   coal industry, whether your diet includes red or processed

24   meats, all of that would stay the same.

25         Are you suggesting it would not be appropriate for a

1    mixed-use plaintiff to respond by referencing the already

2    adequate fact statement that has been submitted?  Because I

3    think we can presume these will be plaintiffs whose fact

4    statements have survived the initial review.

5            MS. DEAL:  I mean, to the extent that the underlying

6    facts about who they are and where they live and where they've

7    worked are the same and continue to be the same, I assume that

8    they would be the same.

9            But my point, Your Honor, is that the drug

10   information and all of the categories of information about

11   drug use, drug history, prescriber information, claimed

12   injuries, defendant advertising, all of that is going to be --

13   or potentially could be different.  And so we want to make

14   sure we had all of that information for every implicated

15   product.

16           And the way we've done this form, which has been

17   agreed upon by both sides.  Right?

18           SPECIAL MASTER VANASKIE:  Right.

19           MS. DEAL:  We all this think this makes sense and is

20   an organized way to do this.  And maybe particularly for

21   multi-use plaintiffs who have multiple products that they've

22   used that are implicated and form the basis of their claims.

23   Right?  Our concern is simply for all of that information,

24   which is the heart of the plaintiff fact sheet, we can't

25   simply rely on what was said as to valsartan and then look

1  simply to an addendum that says, I took losartan and

2  irbesartan at these periods of time as well.  Right?  I mean,

3  that leaves out huge swaths of information about those other

4  drugs that are potentially equally implicated in those

5  plaintiffs' claims.

6       SPECIAL MASTER VANASKIE:  It would be helpful for me,

7  I suppose, if I knew exactly what questions would need to be

8  answered for the mixed-use plaintiffs.

9       As I said, you know, going through this, it seemed to

10 me that some of the questions would not be

11 substance-dependent.  It wouldn't be dependent upon which drug

12 they took.  Others would be.

13      And I guess you're suggesting it would be too

14 difficult to just -- it would be easier to say, complete the

15 whole fact statement.

16      MS. DEAL:  That's correct, Your Honor.  We're trying

17 to be conscious on both sides of the fence here.

18      It wouldn't be a burden, but these are people -- with

19 respect to their valsartan information, it's all been

20 collected.  And especially for the valsartan folks who have

21 full and accurate and complete information, they're

22 represented by counsel.  And it just seems collectively a

23 better idea to try to have one comprehensive document, carry

24 that information over.

25      If there's an error, if there's some sort of

1    discrepancy, we can work that out.  If the plaintiff counsel

2    points back to the original fact sheet and says, oh, here it

3    is, you know, I overlooked it, then that's resolved and it

4    never gets to the Court.

5           My concern is that for consistency, for uniformity,

6    and also to make sure we have all of the information we need

7    for all of these different drugs for each claimant, it just

8    makes sense to have it organized in this fashion, given that

9    we've now expanded the MDL to include these products and these

10   claims.

11          And I think it's going to be harder for everyone to

12   try to create a special process for this set of plaintiffs and

13   have people referring back and forth to different documents or

14   an addendum that's incomplete and have a totally different

15   process for those people than the one that will be used for

16   every other plaintiff going forward in the MDL.

17          MS. GOLDENBERG:  Your Honor, I think where you might

18   have been going was what I was going to suggest, which is, you

19   know, if the defendants can find questions that aren't

20   duplicative, we're willing to consider those.  But in looking

21   at the first half of the plaintiff fact sheet, there's not a

22   single question that hasn't been answered where the answer

23   would change.

24          And going through the second half of it, most of it's

25   not going to change.

1          And, you know, obviously counsel disagrees with me,

2    and that's fine.  But if they can narrow the set of issues

3    that they want people answering twice, we're willing to take

4    another look.  But otherwise, our position stands.

5          MS. DEAL:  And Your Honor, I would say with respect

6    to -- I mean, it really is just filling out the form.  Right?

7    And you'd have to fill out the form anyway to add losartan or

8    irbesartan.  It's really, like, what is the burden and what

9    makes the most sense.

10          I mean, so we're going to have these people have half

11    of this sheet and then refer back to the first half of the

12    other sheet?  I mean, what is the real burden to just fill out

13    the complete form when you're represented by counsel and this

14    stuff is duplicative, you're telling us you already have and

15    you've already submitted.

16          You know, I really -- I think it creates more

17    problems to try and piecemeal things out in that fashion.

18    It's going to be messier.

19          MS. GOLDENBERG:  The burden is that a lot of it's

20    being reorganized, and that again -- I mean, we've already

21    answered these questions.  And if this were standard

22    discovery, I mean, we would insert an objection that this is

23    duplicative and we wouldn't answer it.  And I think there

24    would be pretty good grounds for it, because we have.

25          MS. DEAL:  And Your Honor, the other piece of it is,

1  you know, obviously, to the extent there's medical records

2  that have already been, you know, produced, they've been

3  uploaded, that doesn't have to occur again.  It's literally

4  filling out the form in a comprehensive fashion so that

5  everyone doesn't have to refer back or use a different

6  addendum for a special set of claims and have fights about is

7  this complete, do we have what we need, this is inconsistent

8  with how we're taking an approach with every other plaintiff.

9  You know, what makes the most sense.

10          SPECIAL MASTER VANASKIE:  Would it make sense to just

11  have these mixed-use plaintiffs complete the claim information

12  section of the form, section III?

13          Some of it would be duplicative, I understand that.

14          I guess, Ms. Goldenberg, my question to you would be,

15  which question or questions on this plaintiff's fact statement

16  would be completed by those plaintiffs who already submitted a

17  valsartan PFS?

18          MS. GOLDENBERG:  Certainly everything before the

19  claim information section which you just flagged, Your Honor,

20  so pages 1 through 15, it's all going to be identical, from

21  what I can tell.  I'm just skimming it again to make sure.

22  But I didn't see anything that would change from pages 1

23  through 15.

24          And then once we get to the claim information, it's

25  about 50/50.  Questions about the cancer, not going to change.

1   Questions about advertisements, I mean, they're there, but I'd

2   be hard pressed to find a plaintiff who's actually seen an

3   advertisement from a generic drug manufacturer.

4        All the injury stuff should be the same, because it's

5   the same injury that they're claiming.  So anything about

6   that.  Anything about medical history is going to be the same.

7   Their educational history, their lost wages are going to be

8   the same.  Their medical expenses are going to be the same.

9        I mean, I can go through the whole thing.  What I --

10  I'd rather not waste Your Honor's time, but suffice it to say,

11  the vast majority is not going to be different.

12       But again, if defendants feel that they need more, I

13  would like to hear what that is, maybe in a meet and confer.

14  And then we can come back to you if we still have a dispute.

15  But I just don't see the reason to redo this whole thing.  And

16  I know that the defendants would never agree to do the same if

17  the tables were turned.

18       MS. DEAL:  Your Honor, with all due respect, the

19  defendants have just gone through pretty extensive discovery,

20  producing a lot of things that have been duplicative of

21  valsartan discovery.  We're simply asking the plaintiffs to

22  fill out a fact sheet and do it in an organized fashion that

23  consolidates multi-use plaintiffs claims in one document.

24       The notion that they have to put their name and their

25  educational history twice, with the assistance of counsel, and

1  the -- you know, we're going to cut this up in that fashion

2  and have four different forms and you have to refer back and

3  forth because that's too burdensome is I think sort of a

4  remarkable position to take.

5          And certainly given the amount of discovery that the

6  defendants have produced in terms of the burden of discovery,

7  you know, I don't think that's an argument that carries water

8  in this context.

9          SPECIAL MASTER VANASKIE:  Why wouldn't it be

10  appropriate, Ms. Deal, for a plaintiff, when he gets to the

11  question that asks for, list all major hospitalizations,

12  surgeries and/or procedures undergone in the last ten years,

13  to simply refer back to the valsartan PFS?

14          MS. DEAL:  I guess we could do that, and we could go

15  through and piecemeal it that way, but then we don't have one

16  comprehensive PFS.  We have to go back and forth.  And there

17  will be more disputes I'm sure about that process than if we

18  asked them to just copy and paste their medical history to

19  both forms.

20          You know, if we want to Frankenstein it and, you

21  know, do it, I guess we can, but I just don't see the value of

22  it.  And I don't see -- you know, with all due respect, I

23  don't think this is an unreasonable burden for less than 200

24  plaintiffs who are now expanding their claims to include

25  additional drugs and additional claims based on those drugs.

1          It really is very basic information, and we are

2    trying to do it -- take an approach here that keeps it simple,

3    consistent, organized and efficient for everyone involved so

4    we don't have to come back six times to the Court and try to

5    do a process that is inconsistent with the process we're using

6    for everyone else because plaintiffs don't want to put their

7    employment history twice into two different forms.

8          SPECIAL MASTER VANASKIE:  Could you come up with -- I

9    don't want to belabor this, but couldn't you come up with a

10   mixed-use plaintiff form?  We're only talking -- we're talking

11   about those who have submitted an acceptable PFS already, so

12   they're going to have their claim proceed no matter what as to

13   valsartan.  Why not have -- why not put your heads together

14   and come up with a mixed-use claimant form where you can have

15   it all in one place for the mixed-use plaintiffs?

16         Well, you have it in two places.  You have it in the

17   valsartan PFS and the mixed-use PFS.

18         MS. GOLDENBERG:  I think that's fine, Your Honor.  I

19   mean, it's really no different than any other case where you

20   supplement your discovery and you've got two documents.  I

21   mean, that's fine with us.

22         SPECIAL MASTER VANASKIE:  Uh-huh.  Ms. Deal?

23         MS. DEAL:  I mean, we'll follow the Court's

24   instructions.

25         SPECIAL MASTER VANASKIE:  Fine.

 1          MS. DEAL:  You know, we'll also have separate PFSs

 2    for medical monitoring claims and the other claims.  This is

 3    really just the personal injury PFS that we've presented to

 4    the Court.

 5          SPECIAL MASTER VANASKIE:  All right.  Well, I'm going

 6    to suggest that you get together and come up with a mixed-use

 7    plaintiff PFS so that we can avoid some of the duplication

 8    that would occur by having a new PFS completed by those who

 9    already completed an acceptable PFS.  All right?

10          MS. GOLDENBERG:  Understood.  Thanks, Your Honor.

11          MS. DEAL:  Thank you, Your Honor.

12          SPECIAL MASTER VANASKIE:  Is there anything else for

13    today?

14          MR. SLATER:  I don't believe so, Judge.

15          SPECIAL MASTER VANASKIE:  All right.  Anything else

16    from the defense perspective?

17          MR. HUNCHUCK:  Your Honor, this is -- let me turn my

18    camera on.  This is Steven Hunchuck from Morgan Lewis.

19          Is the Court intending to enter this fact sheet for

20    the remaining defendants today?

21          MR. SLATER:  What?

22          SPECIAL MASTER VANASKIE:  Oh, I hadn't thought about

23    that.

24          I don't see why we couldn't have it entered for the

25    remaining defendants --

1          MR. HUNCHUCK:  I'm sorry, I meant plaintiffs.  Sorry.

2          SPECIAL MASTER VANASKIE:  Oh, for the remaining

3    plaintiffs.

4          Yeah, I don't see why it couldn't be entered for the

5    remaining plaintiffs and get that on the record.

6          Do you, Ms. Goldenberg?

7          MS. GOLDENBERG:  No.  I think that's fine, as long as

8    the order entering it is clear that it only applies to

9    plaintiffs with newly filed cases after I suppose it would be

10   today or cases that are purely losartan or irbesartan and not

11   to plaintiffs who have previously filed a fact sheet.

12         SPECIAL MASTER VANASKIE:  Yeah.

13         MS. GOLDENBERG:  If you'd like a proposed order, we

14   can --

15         SPECIAL MASTER VANASKIE:  It does get a little

16   complicated.

17         MS. GOLDENBERG:  -- put our heads together and get

18   that to you too.

19         SPECIAL MASTER VANASKIE:  Yes.  Why don't you do

20   that, because I did have notes there in terms of who would

21   have to complete the PFS.  And I think it would be helpful if

22   you all could agree on what the order says and submit it to

23   me.

24         MS. GOLDENBERG:  Sure thing.

25         SPECIAL MASTER VANASKIE:  All right.  Anything else?

*United States District Court*

1          (No response.)

2          SPECIAL MASTER VANASKIE:  All right.  Thank you all

3   very much.

4          I probably won't get a chance to talk to you again

5   before the new year, so I wish you all happy holidays and a

6   healthy and happy new year and a prosperous new year for you

7   all.

8          RESPONSE:  Thank you.  Same to you, Judge.

9          SPECIAL MASTER VANASKIE:  Take care.  Bye-bye.

10          (Proceedings concluded at 4:37 p.m.)

11                          -  -  -

12          I certify that the foregoing is a correct transcript
    from the record of proceedings in the above-entitled matter.

13
    */S/ Ann Marie Mitchell*
14  *CRR, RDR, RMR, CCR-NJ*
    *Official Court Reporter*
15

16  *16th day of December, 2022*
        *Date*
17

18

19

20

21

22

23

24

25

## /

**/S** [1] - 27:13

## 0

**07068** [1] - 1:15
**08101** [1] - 1:8

## 1

**1** [2] - 21:20, 21:22
**103** [1] - 1:15
**14** [1] - 1:8
**1440** [1] - 2:3
**15** [2] - 21:20, 21:23
**15219** [1] - 2:15
**16th** [1] - 27:16
**1701** [1] - 2:12
**19-md-02875** [1] - 1:4
**19103** [1] - 2:13

## 2

**200** [2] - 15:9, 23:23
**20005** [1] - 2:14
**2022** [2] - 1:8, 27:16
**2150** [1] - 1:18
**2500** [1] - 2:8

## 3

**30305** [1] - 2:8
**31st** [1] - 6:20
**32nd** [1] - 2:14
**3333** [1] - 2:8

## 4

**40** [3] - 15:18, 15:19, 16:3
**40-some** [1] - 10:15
**4:04** [2] - 1:9, 3:2
**4:37** [1] - 27:10
**4th** [1] - 1:7

## 5

**50/50** [1] - 21:25
**55402** [1] - 1:19
**576-7018** [1] - 1:22

## 8

**800** [1] - 1:18
**856** [1] - 1:22

## A

**able** [4] - 6:4, 6:19, 7:17, 8:22
**above-entitled** [1] - 27:12
**absolutely** [1] - 8:24

**acceptable** [2] - 24:11, 25:9
**accommodated** [1] - 11:9
**account** [1] - 4:21
**accurate** [1] - 18:21
**Actavis** [2] - 2:9, 2:10
**ACTION** [1] - 1:3
**Adam** [1] - 5:1
**ADAM** [1] - 1:14
**add** [3] - 11:8, 16:15, 20:7
**addenda** [1] - 12:13
**addendum** [4] - 16:15, 18:1, 19:14, 21:6
**additional** [5] - 12:4, 12:13, 23:25
**address** [2] - 3:15, 13:24
**addressing** [4] - 3:18, 9:25, 11:17, 11:19
**adequate** [1] - 17:2
**adjustments** [1] - 6:5
**advertisement** [1] - 22:3
**advertisements** [1] - 22:1
**advertising** [3] - 12:24, 16:10, 17:12
**affects** [1] - 5:23
**afternoon** [2] - 11:18, 11:21
**agenda** [2] - 10:9, 10:23
**agree** [4] - 7:16, 8:22, 22:16, 26:22
**agreeable** [1] - 7:23
**agreed** [3] - 5:17, 7:10, 17:17
**agreement** [4] - 4:11, 5:1, 9:6, 9:8
**aided** [1] - 1:24
**alleged** [3] - 12:24, 12:25
**ALSO** [1] - 2:18
**alternative** [2] - 12:14, 13:11
**amount** [1] - 23:5
**Ann** [1] - 27:13
**ann** [1] - 1:21
**AnnMarie_Mitchell@ njd.uscourts.gov** [1] - 1:22
**answer** [4] - 4:25, 12:5, 19:22, 20:23
**answered** [3] - 18:8, 19:22, 20:21
**answering** [2] - 10:24, 20:3
**answers** [3] - 15:13,

16:6, 16:19
**anticipate** [1] - 8:14
**anticipation** [1] - 6:18
**anyway** [1] - 20:7
**appear** [1] - 16:17
**appending** [1] - 12:19
**applies** [1] - 26:8
**apply** [1] - 7:8
**appreciate** [1] - 4:3
**approach** [4] - 12:11, 13:14, 21:8, 24:2
**appropriate** [2] - 16:25, 23:10
**argument** [1] - 23:7
**ARPS** [1] - 2:2
**asserting** [1] - 12:2
**assistance** [1] - 22:25
**assume** [3] - 14:12, 14:22, 17:7
**assumption** [1] - 6:1
**assured** [1] - 7:6
**Atlanta** [1] - 2:8
**Aurobindo** [1] - 2:16
**Aurolife** [1] - 2:15
**available** [1] - 7:15
**Avenue** [2] - 1:18, 2:3
**avoid** [2] - 3:12, 25:7

## B

**Bain** [6] - 5:15, 6:23, 7:5, 7:13, 7:25, 8:24
**base** [1] - 16:13
**based** [7] - 6:25, 8:21, 8:23, 10:22, 12:9, 14:5, 23:25
**basic** [1] - 24:1
**basing** [1] - 15:3
**basis** [2] - 13:10, 17:22
**beginning** [1] - 5:16
**begun** [1] - 8:22
**behalf** [2] - 6:16, 11:19
**belabor** [1] - 24:9
**benefit** [2] - 7:1, 13:15
**BERNARDO** [5] - 2:3, 3:19, 3:23, 4:2, 9:22
**Bernardo** [4] - 3:19, 3:22, 5:6, 6:21
**best** [1] - 6:8
**better** [1] - 18:23
**beyond** [3] - 7:7, 8:15, 9:4
**bills** [1] - 11:6
**blaming** [1] - 8:12
**BOCKIUS** [1] - 2:11
**broad** [1] - 9:10
**Building** [1] - 1:7
**burden** [7] - 5:25,

18:18, 20:8, 20:12, 20:19, 23:6, 23:23
**burdensome** [1] - 23:3
**bye** [2] - 27:9
**bye-bye** [1] - 27:9

## C

**cadmium** [1] - 16:22
**Camden** [1] - 1:8
**camera** [1] - 25:18
**cancer** [2] - 10:17, 21:25
**care** [1] - 27:9
**carries** [2] - 13:15, 23:7
**carry** [1] - 18:23
**case** [1] - 24:19
**cases** [4] - 10:14, 10:17, 26:9, 26:10
**categories** [1] - 17:10
**category** [1] - 9:20
**caused** [2] - 4:6, 4:16
**CCR** [1] - 27:14
**CCR-NJ** [1] - 27:14
**Centre** [1] - 2:14
**certain** [1] - 8:24
**certainly** [2] - 21:18, 23:5
**certify** [1] - 27:12
**CGMP** [3] - 7:25, 9:16
**chance** [1] - 27:4
**change** [4] - 19:23, 19:25, 21:22, 21:25
**check** [1] - 15:8
**Christmas** [2] - 5:11
**circumstance** [2] - 14:19, 14:24
**CIVIL** [1] - 1:3
**claim** [5] - 13:6, 21:11, 21:19, 21:24, 24:12
**claimant** [2] - 16:21, 19:7, 24:14
**claimed** [3] - 12:23, 17:11
**claiming** [1] - 22:5
**claims** [21] - 10:16, 12:2, 12:5, 12:8, 12:11, 13:5, 13:11, 14:5, 14:9, 15:3, 15:21, 16:13, 17:22, 18:5, 19:10, 21:6, 22:23, 23:24, 23:25, 25:2
**clams** [1] - 12:25
**clarity** [1] - 7:10
**clear** [1] - 26:8
**Clerk** [1] - 2:19
**client** [1] - 10:16

**coal** [1] - 16:23
**cobbled** [1] - 12:12
**Cohen** [1] - 1:7
**collected** [2] - 13:17, 18:20
**collectively** [1] - 18:22
**comfort** [1] - 5:22
**coming** [1] - 5:1
**Commencing** [1] - 1:9
**commitment** [1] - 9:3
**committed** [1] - 7:20
**communications** [1] - 13:3
**companies** [3] - 8:1, 8:13, 8:18
**compare** [1] - 11:12
**Complaint** [1] - 10:20
**complete** [9] - 9:21, 12:3, 14:3, 18:14, 18:21, 20:13, 21:7, 21:11, 26:21
**completed** [4] - 12:2, 21:16, 25:8, 25:9
**complicated** [2] - 11:8, 26:16
**comprehensive** [8] - 12:7, 13:13, 13:18, 13:21, 15:2, 18:23, 21:4, 23:16
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concern** [3] - 13:24, 17:23, 19:5
**concerned** [2] - 14:1, 14:4
**concerns** [1] - 5:20
**concluded** [1] - 27:10
**confer** [2] - 14:17, 22:13
**CONFERENCE** [1] - 1:5
**confers** [1] - 10:10
**confined** [1] - 15:15
**confirmed** [1] - 5:15
**conscious** [1] - 18:17
**consider** [1] - 19:20
**consideration** [1] - 11:25
**consistency** [3] - 12:6, 13:23, 19:5
**consistent** [1] - 24:3
**consolidates** [1] - 22:23
**contaminated** [2] - 10:21, 11:5
**context** [1] - 23:8
**continue** [1] - 17:7
**continued** [1] - 9:20
**Continued** [1] - 2:1

conversation [1] - 15:14
Cooper [1] - 1:7
cooperatively [1] - 4:3
copy [2] - 15:18, 23:18
copy/paste [1] - 11:7
correct [3] - 5:6, 18:16, 27:12
counsel [9] - 3:19, 11:24, 12:18, 14:12, 18:22, 19:1, 20:1, 20:13, 22:25
counsel's [1] - 4:21
counterfactual [2] - 14:12, 14:24
couple [2] - 4:5, 4:16
course [1] - 10:14
Court [2] - 1:21, 27:14
COURT [1] - 1:1
Court's [2] - 5:8, 24:23
Courthouse [1] - 1:7
Courtroom [1] - 2:20
covers [3] - 12:4, 12:8, 15:2
create [1] - 19:12
creates [1] - 20:16
criticisms [6] - 7:3, 7:7, 7:9, 7:15, 9:15, 9:16
CRR [2] - 1:21, 27:14
cut [1] - 23:1

**D**

damages [1] - 12:23
data [1] - 16:16
Date [1] - 27:16
dates [4] - 4:16, 6:18, 15:25, 16:7
DAVIS [1] - 2:7
days [3] - 4:6, 4:9
DC [1] - 2:4
deadline [2] - 6:17, 6:20
deadlines [2] - 3:17, 5:24
Deal [5] - 11:19, 11:21, 15:11, 23:10, 24:22
DEAL [14] - 2:12, 11:18, 11:22, 15:23, 17:5, 17:19, 18:16, 20:5, 20:25, 22:18, 23:14, 24:23, 25:1, 25:11
December [2] - 1:8, 27:16
defendant [1] - 17:12
Defendants [3] - 2:4, 2:9, 2:15

defendants [16] - 10:8, 10:23, 11:4, 11:8, 13:3, 14:5, 15:17, 16:9, 19:19, 22:12, 22:16, 22:19, 23:6, 25:20, 25:25
defense [3] - 3:17, 3:18, 4:12, 5:9, 5:19, 11:17, 11:20, 14:25, 25:16
deficiencies [1] - 14:10
dependent [3] - 16:19, 18:11
deposed [5] - 5:15, 6:24, 7:2, 7:13
deposition [1] - 7:2
depositions [3] - 5:14, 6:19, 9:1
Deputy [1] - 2:20
details [1] - 7:18
devil [1] - 7:18
diet [1] - 16:23
different [18] - 8:4, 12:9, 13:1, 15:13, 15:24, 15:25, 16:7, 16:8, 17:13, 19:7, 19:13, 19:14, 21:5, 22:11, 23:2, 24:7, 24:19
difficult [1] - 18:14
digest [1] - 4:18
disagrees [1] - 20:1
disclosing [1] - 10:20
discovery [8] - 15:12, 15:16, 20:22, 22:19, 22:21, 23:5, 23:6, 24:20
discrepancy [2] - 14:15, 19:1
discussions [2] - 8:21, 13:2
dismiss [1] - 14:5
dismissal [1] - 14:9
dispute [1] - 22:14
disputes [2] - 11:23, 23:17
DISTRICT [2] - 1:1, 1:1
docket [1] - 15:8
document [2] - 18:23, 22:23
documentation [1] - 13:5
documents [2] - 19:13, 24:20
done [3] - 13:13, 14:2, 17:16
down [3] - 9:9, 9:19, 10:10

Dr [2] - 5:15, 7:25
drafting [1] - 8:22
drill [1] - 3:9
drug [9] - 12:24, 13:2, 16:5, 16:19, 17:9, 17:11, 18:11, 22:3
drugs [12] - 12:9, 12:12, 12:22, 16:14, 15:24, 16:7, 16:12, 16:16, 18:4, 19:7, 23:25
due [2] - 22:18, 23:22
duplication [1] - 25:7
duplicative [5] - 19:20, 20:14, 20:23, 21:13, 22:20
duty [2] - 15:12, 15:16

**E**

early [1] - 4:20
easier [1] - 18:14
easiest [1] - 15:10
easily [1] - 14:22
educational [3] - 16:21, 22:7, 22:25
efficient [1] - 24:3
Eisenhower [1] - 1:15
elevator [1] - 3:11
email [1] - 8:10
employment [2] - 16:21, 24:7
endeavor [1] - 7:19
engage [1] - 11:7
enter [1] - 25:19
entered [2] - 25:24, 26:4
entering [1] - 26:8
entitled [1] - 27:12
equally [1] - 18:4
error [2] - 14:16, 18:25
especially [1] - 18:20
ESQUIRE [7] - 1:14, 1:18, 2:3, 2:7, 2:12, 2:14, 2:19
estimate [1] - 15:5
event [1] - 13:19
exact [1] - 11:13
exactly [1] - 18:7
except [1] - 10:19
exchange [1] - 8:9
exclusively [1] - 15:15
exercise [1] - 14:5
existing [1] - 14:18
expanded [1] - 19:9
expanding [1] - 23:24
expenses [1] - 22:8
experience [1] - 13:15
expert [13] - 3:17, 4:8, 4:12, 4:22, 5:14,

5:18, 5:19, 6:16, 8:4, 9:4, 9:5, 9:13
experts [14] - 3:6, 4:5, 4:7, 4:19, 4:24, 5:13, 6:2, 6:24, 7:1, 7:6, 7:12, 7:15, 9:1
exposure [4] - 12:24, 16:9, 16:10, 16:22
extensions [1] - 6:17
extensive [2] - 14:23, 22:19
extent [4] - 14:2, 14:15, 17:5, 21:1
extra [1] - 4:6

**F**

face [1] - 7:8
fact [18] - 9:24, 10:15, 11:10, 12:7, 12:19, 16:2, 16:14, 16:18, 17:2, 17:3, 17:24, 18:15, 19:2, 19:21, 21:15, 22:22, 25:19, 26:11
facts [3] - 12:11, 12:23, 17:6
fairly [1] - 9:10
far [1] - 13:16
fashion [5] - 19:8, 20:17, 21:4, 22:22, 23:1
February [2] - 4:21, 5:16
fence [1] - 18:17
few [3] - 4:6, 6:6
fights [1] - 21:6
figuring [1] - 5:23
filed [4] - 10:14, 26:9, 26:11
fill [4] - 13:18, 20:7, 20:12, 22:22
filling [2] - 20:6, 21:4
fine [7] - 5:16, 10:5, 20:2, 24:18, 24:21, 24:25, 26:7
first [5] - 3:15, 5:19, 12:6, 19:21, 20:11
flagged [1] - 21:19
FLOM [1] - 2:2
Floor [1] - 2:14
focused [1] - 9:15
focuses [1] - 8:13
focusing [1] - 9:14
folks [1] - 18:20
follow [3] - 4:22, 4:24, 24:23
foregoing [1] - 27:12
form [14] - 11:24, 13:19, 13:21, 14:13,

14:14, 17:16, 17:22, 20:6, 20:7, 20:13, 21:4, 21:12, 24:10, 24:14
forming [1] - 13:10
forms [4] - 12:13, 23:2, 23:19, 24:7
forth [4] - 8:11, 19:13, 23:3, 23:16
forward [2] - 7:21, 19:16
four [2] - 4:6, 23:2
Frankenstein [1] - 23:20
frankly [1] - 6:24
fraud [1] - 12:25
FREEMAN [1] - 1:14
Friday [1] - 4:15
full [3] - 14:3, 14:8, 18:21

**G**

gathering [1] - 6:18
generic [1] - 22:3
Georgia [1] - 2:8
given [2] - 19:8, 23:5
Goldenberg [3] - 10:2, 21:14, 26:6
GOLDENBERG [15] - 1:17, 1:18, 10:1, 10:5, 10:7, 15:6, 19:17, 20:19, 21:18, 24:18, 25:10, 26:7, 26:13, 26:17, 26:24
gotcha [1] - 14:4
great [2] - 6:14, 11:23
GREENBERG [1] - 2:7
Greenberg [1] - 6:12
grounds [1] - 20:24
group [2] - 11:20, 15:1
guess [6] - 4:18, 13:7, 18:13, 21:14, 23:14, 23:21
guessing [1] - 15:7

**H**

half [4] - 19:21, 19:24, 20:10, 20:11
happy [3] - 10:7, 27:5, 27:6
hard [1] - 22:2
harder [1] - 19:11
heads [2] - 24:13, 26:17
Healthcare [1] - 2:5
healthy [1] - 27:6
hear [3] - 5:13, 6:1, 22:13
heart [1] - 17:24

**held** [1] - 3:1
**helpful** [2] - 18:6, 26:21
**Hi** [1] - 6:11
**history** [10] - 10:17, 16:21, 16:22, 17:11, 22:6, 22:7, 22:25, 23:18, 24:7
**hold** [4] - 3:10, 3:12, 3:13, 5:7
**holidays** [2] - 6:8, 27:5
**Honor** [24] - 3:19, 4:25, 6:5, 7:24, 9:22, 10:1, 11:18, 11:22, 12:14, 14:7, 14:25, 15:7, 15:23, 17:9, 18:16, 19:17, 20:5, 20:25, 21:19, 22:18, 24:18, 25:10, 25:11, 25:17
**Honor's** [2] - 11:25, 22:10
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:19
**hopefully** [1] - 13:14
**hospitalizations** [1] - 23:11
**Huahai** [1] - 2:5
**huge** [1] - 18:3
**HUNCHUCK** [3] - 2:14, 25:17, 26:1
**Hunchuck** [1] - 25:18

**I**

**idea** [1] - 18:23
**identical** [1] - 21:20
**Ill** [1] - 21:12
**illness** [1] - 4:5
**illnesses** [1] - 6:8
**imagine** [1] - 5:21
**implicated** [10] - 12:8, 12:22, 12:25, 13:3, 16:5, 16:12, 16:16, 17:14, 17:22, 18:4
**important** [1] - 15:1
**Inc** [3] - 2:9, 2:10, 2:16
**include** [2] - 19:9, 23:24
**includes** [1] - 16:23
**including** [1] - 13:5
**incomplete** [1] - 19:14
**inconsistent** [2] - 21:7, 24:5
**Industries** [1] - 2:9
**industry** [1] - 16:23
**information** [33] - 10:16, 11:4, 11:13,

12:16, 12:20, 13:8, 13:9, 13:12, 13:18, 13:22, 14:3, 14:8, 14:13, 14:20, 15:18, 15:19, 15:20, 16:4, 17:10, 17:11, 17:14, 17:23, 18:3, 18:19, 18:21, 18:24, 19:6, 21:11, 21:19, 21:24, 24:1
**initial** [1] - 17:4
**injuries** [4] - 10:25, 12:24, 16:8, 17:12
**injury** [4] - 15:20, 22:4, 22:5, 25:3
**insert** [1] - 20:22
**instructions** [2] - 12:25, 24:24
**intended** [1] - 6:25
**intending** [1] - 25:19
**intends** [1] - 8:17
**intent** [1] - 8:17
**involved** [1] - 24:3
**irbesartan** [11] - 9:24, 10:21, 11:6, 12:20, 13:8, 13:19, 15:15, 16:14, 18:2, 20:8, 26:10
**issue** [9] - 3:5, 3:18, 4:8, 5:10, 6:21, 9:25, 11:17, 11:19, 13:2
**issues** [5] - 3:6, 4:5, 5:7, 9:16, 20:2

**J**

**January** [2] - 5:12, 6:20
**JERSEY** [1] - 1:1
**Jersey** [2] - 1:8, 1:15
**Judge** [4] - 5:5, 6:11, 25:14, 27:8
**Judicial** [1] - 2:19

**K**

**Kate** [1] - 11:18
**KATHRYN** [1] - 2:12
**KATZ** [1] - 1:14
**keep** [1] - 3:9
**keeps** [2] - 13:22, 24:2
**kind** [2] - 14:4, 14:24
**Kugler** [1] - 2:19

**L**

**labeling** [1] - 13:4
**language** [1] - 9:10
**largely** [1] - 4:17
**larry** [1] - 2:20
**Lasalle** [1] - 1:18

**last** [1] - 23:12
**Law** [1] - 2:19
**LAW** [1] - 1:17
**least** [1] - 3:23
**leaves** [1] - 18:3
**left** [4] - 10:11, 11:23, 11:25, 13:7
**lengthy** [1] - 10:15
**less** [1] - 23:23
**letter** [5] - 4:4, 8:10, 10:9, 10:23, 13:25
**Lewis** [2] - 11:19, 25:18
**LEWIS** [1] - 2:11
**LIABILITY** [1] - 1:4
**liability** [1] - 3:17
**list** [1] - 23:11
**listed** [1] - 11:1
**listening** [1] - 3:11
**literally** [1] - 21:3
**LITIGATION** [1] - 1:4
**live** [1] - 17:6
**LLC** [5] - 1:14, 1:17, 2:5, 2:9, 2:15
**LLP** [3] - 2:2, 2:7, 2:11
**Lockard** [3] - 6:12, 7:24, 8:20
**LOCKARD** [4] - 2:7, 6:11, 6:14, 8:21
**look** [4] - 9:9, 9:11, 17:25, 20:4
**looking** [1] - 19:20
**looks** [1] - 9:20
**LORETTA** [1] - 2:19
**losartan** [9] - 9:24, 10:21, 11:5, 12:20, 13:8, 13:19, 16:14, 18:1, 20:7, 26:10
**loss** [1] - 5:12
**lost** [1] - 22:7
**Ltd** [2] - 2:5, 2:9

**M**

**MacStravic** [1] - 22:20
**major** [1] - 23:11
**majority** [1] - 22:11
**manufacturer** [1] - 22:3
**Marie** [2] - 1:21, 27:13
**Market** [1] - 2:12
**MARLENE** [1] - 1:18
**Marlene** [2] - 9:25, 10:5
**MASTER** [41] - 1:11, 3:1, 3:3, 3:8, 3:22, 3:25, 5:4, 6:9, 6:13, 7:22, 8:3, 8:6, 8:19, 9:7, 9:12, 9:18, 9:23, 10:2, 10:6, 11:16,

11:21, 15:4, 16:17, 17:18, 18:6, 21:10, 23:9, 24:8, 24:22, 24:25, 25:5, 25:12, 25:15, 25:22, 26:2, 26:12, 26:15, 26:19, 26:25, 27:2, 27:9
**matter** [2] - 24:12, 27:12
**MAZIE** [1] - 1:14
**MDL** [4] - 12:22, 13:16, 19:9, 19:16
**MEAGHER** [1] - 2:2
**mean** [15] - 6:24, 9:10, 14:11, 17:5, 18:2, 20:6, 20:10, 20:12, 20:20, 20:22, 22:1, 22:9, 24:19, 24:21, 24:23
**meant** [1] - 26:1
**meats** [1] - 16:24
**mechanical** [1] - 1:23
**medical** [8] - 10:17, 10:18, 21:1, 22:6, 22:8, 23:18, 25:2
**meet** [3] - 10:10, 14:17, 22:13
**meet-and-confer** [1] - 14:17
**mentioned** [1] - 4:4
**messier** [1] - 20:18
**might** [2] - 11:10, 19:17
**mind** [1] - 10:25
**Minneapolis** [1] - 1:19
**Minnesota** [1] - 1:19
**minor** [1] - 6:6
**missed** [1] - 14:20
**Mitchell** [3] - 1:7, 1:21, 27:13
**mixed** [9] - 10:14, 17:1, 18:8, 21:11, 24:10, 24:14, 24:15, 24:17, 25:6
**mixed-use** [9] - 10:14, 17:1, 18:8, 21:11, 24:10, 24:14, 24:15, 24:17, 25:6
**Monday** [1] - 4:13
**monitoring** [1] - 25:2
**month** [1] - 5:12
**Morgan** [2] - 11:19, 25:18
**MORGAN** [1] - 2:11
**morning** [1] - 6:3
**most** [4] - 13:21, 19:24, 20:9, 21:9
**move** [4] - 4:18, 4:20, 7:21
**MR** [15] - 3:5, 3:19,

3:23, 4:2, 5:5, 7:24, 8:4, 8:9, 9:9, 9:13, 9:22, 25:14, 25:17, 25:21, 26:1
**MS** [29] - 6:11, 6:14, 8:21, 10:1, 10:5, 10:7, 11:18, 11:22, 15:6, 15:23, 17:5, 17:19, 18:16, 19:17, 20:5, 20:19, 20:25, 21:18, 22:18, 23:14, 24:18, 24:23, 25:1, 25:10, 25:11, 26:7, 26:13, 26:17, 26:24
**multi** [8] - 12:10, 13:10, 13:16, 14:1, 15:1, 15:5, 17:21, 22:23
**multi-use** [8] - 12:10, 13:10, 13:16, 14:1, 15:1, 15:5, 17:21, 22:23
**multiple** [5] - 12:1, 12:2, 12:12, 12:22, 17:21
**music** [1] - 3:11
**mute** [1] - 3:12
**muted** [1] - 3:9

**N**

**N.W** [1] - 2:3
**name** [1] - 22:24
**narrow** [1] - 20:2
**NE** [1] - 2:8
**necessary** [2] - 16:11, 16:12
**need** [9] - 3:10, 11:4, 13:9, 16:3, 16:4, 18:7, 19:6, 21:7, 22:12
**never** [2] - 19:4, 22:16
**new** [5] - 12:3, 25:8, 27:5, 27:6
**NEW** [1] - 1:1
**New** [3] - 1:8, 1:15, 2:3
**newly** [1] - 26:9
**news** [1] - 11:23
**next** [1] - 8:6
**NJ** [1] - 27:14
**notes** [1] - 26:20
**notion** [4] - 16:2, 16:5, 16:13, 22:24
**NUMBER** [1] - 1:3
**number** [1] - 15:5

**O**

**objection** [1] - 20:22
**obviously** [7] - 5:7, 6:7, 12:6, 14:16,

15:23, 20:1, 21:1
**occur** [2] - 21:3, 25:8
**occurs** [1] - 14:16
**offer** [1] - 8:17
**offered** [2] - 8:1, 11:2
**office** [2] - 3:23, 3:24
**Official** [2] - 1:21, 27:14
**once** [2] - 6:4, 21:24
**One** [1] - 2:14
**one** [14] - 4:8, 4:14, 4:18, 4:20, 7:5, 10:11, 12:7, 13:20, 14:11, 18:23, 19:15, 22:23, 23:15, 24:15
**operation** [1] - 11:7
**opinions** [11] - 7:7, 7:8, 7:14, 7:25, 8:1, 8:12, 8:15, 8:16, 8:18, 9:4, 9:14
**opportunity** [1] - 4:17
**order** [5] - 6:25, 14:18, 26:8, 26:13, 26:22
**organized** [6] - 13:14, 13:23, 17:20, 19:8, 22:22, 24:3
**original** [3] - 6:17, 14:14, 19:2
**otherwise** [2] - 11:10, 20:4
**overlooked** [1] - 19:3
**Oxford** [1] - 2:14

**P**

**p.m** [3] - 1:9, 3:2, 27:10
**packaging** [1] - 13:4
**pages** [6] - 10:15, 15:18, 15:19, 16:3, 21:20, 21:22
**Parkway** [1] - 1:15
**part** [1] - 14:17
**particular** [1] - 13:10
**particularly** [2] - 12:10, 17:20
**parties** [1] - 12:16
**paste** [4] - 11:11, 11:13, 15:18, 23:18
**Pennsylvania** [2] - 2:13, 2:15
**people** [8] - 3:6, 15:9, 15:18, 18:18, 19:13, 19:15, 20:3, 20:10
**periods** [1] - 18:2
**personal** [2] - 16:20, 25:3
**perspective** [1] - 25:16
**pertain** [2] - 7:14, 9:14

pertaining [3] - 7:25, 8:18, 12:23
**PFS** [20] - 11:24, 12:3, 12:4, 14:2, 14:3, 14:6, 14:10, 14:21, 15:2, 21:17, 23:13, 23:16, 24:11, 24:17, 25:3, 25:7, 25:8, 25:9, 26:21
**PFSs** [1] - 25:1
**Pharma** [2] - 2:10, 2:15, 2:16
**Pharmaceutical** [1] - 2:9
**Pharmaceuticals** [3] - 2:4, 2:5, 2:9
**Philadelphia** [1] - 2:13
**phone** [1] - 6:10
**phones** [1] - 3:9
**physician** [1] - 15:14
**piece** [1] - 20:25
**piecemeal** [2] - 12:11, 20:17, 23:15
**Piedmont** [1] - 2:8
**Pittsburgh** [1] - 2:15
**place** [2] - 9:1, 24:15
**places** [1] - 24:16
**plaintiff** [17] - 5:19, 10:15, 11:10, 12:9, 12:12, 14:7, 15:13, 17:1, 17:24, 19:1, 19:16, 19:21, 21:8, 22:2, 23:10, 24:10, 25:7
**plaintiff's** [2] - 13:10, 21:15
**plaintiffs** [33] - 3:4, 4:17, 10:13, 10:23, 11:2, 11:7, 12:1, 12:10, 12:18, 12:21, 13:16, 13:24, 14:1, 14:12, 14:19, 15:2, 15:5, 17:3, 17:21, 18:8, 19:12, 21:11, 21:16, 22:21, 22:23, 23:24, 24:6, 24:15, 26:1, 26:3, 26:5, 26:9, 26:11
**Plaintiffs** [2] - 1:16, 1:19
**plaintiffs'** [6] - 4:11, 6:22, 6:23, 7:1, 12:14, 18:5
**planning** [1] - 6:16
**point** [2] - 14:21, 17:9
**points** [1] - 19:2
**position** [4] - 6:25, 10:13, 20:4, 23:4
**possession** [1] - 13:4
**potentially** [2] - 17:13,

18:4
**pragmatic** [1] - 11:14
**prescribed** [1] - 16:7
**prescriber** [1] - 17:11
**prescribers** [3] - 13:1, 13:2, 15:25
**prescribing** [1] - 15:24
**PRESENT** [1] - 2:18
**presented** [1] - 25:3
**pressed** [1] - 22:2
**presume** [1] - 17:3
**pretty** [4] - 6:6, 9:20, 20:24, 22:19
**previously** [2] - 14:20, 26:11
**Prinston** [1] - 2:4
**problem** [1] - 14:23
**problems** [1] - 20:17
**procedures** [1] - 23:12
**proceed** [1] - 24:12
**PROCEEDINGS** [1] - 3:1
**Proceedings** [2] - 1:23, 27:10
**proceedings** [1] - 27:12
**process** [6] - 14:17, 19:12, 19:15, 23:17, 24:5
**processed** [1] - 16:23
**produce** [1] - 5:17
**produced** [3] - 1:24, 21:2, 23:6
**producing** [1] - 22:20
**product** [5] - 12:20, 13:4, 16:15, 17:15
**productive** [1] - 10:10
**products** [6] - 11:5, 12:1, 12:4, 15:3, 17:21, 19:9
**PRODUCTS** [1] - 1:4
**proposal** [2] - 12:15, 13:11
**proposed** [2] - 6:5, 26:13
**prosperous** [1] - 27:6
**protocol** [1] - 14:18
**provide** [7] - 6:5, 6:19, 12:16, 12:22, 13:12, 14:13, 15:2
**provided** [4] - 14:2, 14:8, 14:14, 14:20
**provides** [2] - 13:22, 13:23
**purely** [1] - 26:10
**purposes** [1] - 12:7
**pushes** [1] - 5:12
**pushing** [1] - 5:13

**put** [9] - 3:10, 3:11, 3:12, 9:19, 10:23, 22:24, 24:6, 24:13, 26:17

**Q**

**questions** [10] - 8:15, 10:24, 16:18, 18:7, 18:10, 19:19, 20:21, 21:15, 21:25, 22:1
**quickly** [1] - 6:5

**R**

**raised** [1] - 13:25
**rather** [2] - 12:10, 22:10
**RDR** [2] - 1:21, 27:14
**RE** [1] - 1:4
**ready** [1] - 3:14
**real** [2] - 3:23, 20:12
**reality** [1] - 12:21
**really** [16] - 5:25, 10:10, 10:25, 11:3, 11:6, 11:11, 11:14, 12:15, 14:7, 14:8, 20:6, 20:8, 20:16, 24:1, 24:19, 25:3
**reason** [5] - 6:2, 11:6, 15:14, 15:18, 22:15
**reasons** [2] - 12:5, 14:25
**record** [4] - 8:11, 8:23, 26:5, 27:12
**recorded** [1] - 1:23
**records** [4] - 10:18, 15:21, 15:24, 21:1
**rectified** [1] - 14:16
**red** [1] - 16:23
**redo** [1] - 22:15
**reduce** [2] - 8:7
**refer** [4] - 20:11, 21:5, 23:2, 23:13
**referencing** [1] - 17:1
**referring** [1] - 19:13
**regard** [1] - 8:4
**regarding** [1] - 8:1
**relates** [1] - 6:22
**rely** [1] - 17:25
**remaining** [4] - 25:20, 25:25, 26:2, 26:5
**remarkable** [1] - 23:4
**reorganize** [1] - 11:9
**reorganized** [1] - 20:20
**report** [13] - 4:14, 4:19, 7:7, 7:8, 7:25, 8:11, 8:12, 8:13, 8:14, 8:16, 9:5, 9:14, 9:17

**Reporter** [2] - 1:21, 27:14
**reports** [9] - 3:17, 4:12, 4:13, 4:15, 4:18, 5:8, 5:11, 6:16, 9:4
**representation** [1] - 8:23
**represented** [2] - 18:22, 20:13
**requests** [1] - 11:9
**require** [1] - 11:6
**requisite** [2] - 12:16, 13:22
**resolved** [2] - 7:19, 19:3
**respect** [5] - 3:16, 18:19, 20:5, 22:18, 23:22
**respond** [5] - 4:23, 7:2, 7:15, 8:25, 17:1
**responding** [1] - 4:22
**RESPONSE** [1] - 27:8
**response** [2] - 5:2, 27:1
**responsive** [1] - 5:18
**RET** [1] - 1:10
**review** [1] - 17:4
**revised** [5] - 11:24, 14:6, 14:10, 14:13, 14:21
**rich** [1] - 3:19
**RICHARD** [1] - 2:3
**risk** [1] - 14:9
**RMR** [2] - 1:21, 27:14
**Road** [1] - 2:8
**Robert** [1] - 2:19
**Roseland** [1] - 1:15

**S**

**sartan** [2] - 12:17, 16:20
**sartans** [3] - 12:2, 12:8, 13:9
**satisfactory** [1] - 8:20
**saw** [1] - 10:9
**schedule** [1] - 4:10
**scheduled** [1] - 4:13
**schedules** [1] - 4:21
**scheduling** [3] - 3:5, 3:15, 6:25
**second** [2] - 12:14, 19:24
**section** [4] - 11:3, 21:12, 21:19
**sections** [1] - 11:10
**see** [7] - 3:16, 21:22, 22:15, 23:21, 23:22, 25:24, 26:4

**select** [1] - 11:11
**sense** [9] - 5:18, 12:7, 13:21, 16:16, 17:19, 19:8, 20:9, 21:9, 21:10
**sent** [1] - 5:2
**separate** [1] - 25:1
**set** [4] - 8:11, 19:12, 20:2, 21:6
**several** [1] - 12:5
**shared** [1] - 4:12
**sheet** [14] - 11:10, 12:8, 12:19, 16:2, 16:14, 16:18, 17:24, 19:2, 19:21, 20:11, 20:12, 22:22, 25:19, 26:11
**sheets** [2] - 9:24, 10:15
**show** [1] - 14:18
**sides** [2] - 17:17, 18:17
**simple** [3] - 11:11, 13:20, 24:2
**simply** [9] - 12:19, 13:6, 13:17, 16:15, 17:23, 17:25, 18:1, 22:21, 23:13
**single** [1] - 19:22
**situation** [1] - 6:15
**six** [1] - 24:4
**SKADDEN** [1] - 2:2
**skimming** [1] - 21:21
**SLATE** [1] - 2:2
**SLATER** [11] - 1:14, 1:14, 3:5, 5:5, 7:24, 8:4, 8:9, 9:9, 9:13, 25:14, 25:21
**Slater** [6] - 4:3, 5:4, 6:22, 7:4, 7:16, 9:7
**slide** [1] - 4:17
**SMITH** [1] - 2:19
**Solco** [1] - 2:5
**solution** [1] - 15:10
**sorry** [3] - 10:2, 26:1
**sort** [5] - 7:9, 14:11, 14:23, 18:25, 23:3
**sounds** [1] - 7:22
**speaking** [2] - 7:4, 10:8
**special** [2] - 19:12, 21:6
**SPECIAL** [41] - 1:11, 3:1, 3:3, 3:8, 3:22, 3:25, 5:4, 6:9, 6:13, 7:22, 8:3, 8:6, 8:19, 9:7, 9:12, 9:18, 9:23, 10:2, 10:6, 11:16, 11:21, 15:4, 16:17, 17:18, 18:6, 21:10,

23:9, 24:8, 24:22, 24:25, 25:5, 25:12, 25:15, 25:22, 26:2, 26:12, 26:15, 26:19, 26:25, 27:2, 27:9
**specific** [5] - 4:7, 4:8, 4:12, 4:14, 4:15
**speculate** [1] - 13:7
**spokesperson** [1] - 3:4
**squared** [1] - 7:21
**stand** [3] - 3:16, 3:25, 4:10
**standard** [1] - 20:21
**stands** [1] - 20:4
**start** [2] - 10:7, 16:11
**started** [1] - 3:14
**statement** [3] - 17:2, 18:15, 21:15
**statements** [1] - 17:4
**STATES** [1] - 1:1
**STATUS** [1] - 1:5
**stay** [2] - 16:22, 16:24
**stenography** [1] - 1:23
**step** [1] - 8:6
**Steven** [1] - 25:18
**STEVEN** [1] - 2:14
**still** [2] - 15:17, 22:14
**stipulation** [4] - 4:24, 7:9, 8:7, 8:22
**stop** [1] - 8:16
**stray** [2] - 7:7, 9:3
**streamlined** [1] - 13:14
**Street** [1] - 2:12
**Streets** [1] - 1:7
**stuff** [2] - 20:14, 22:4
**subissue** [1] - 10:11
**subject** [1] - 4:10
**submit** [3] - 6:16, 11:3, 26:22
**submitted** [4] - 17:2, 20:15, 21:16, 24:11
**subsequently** [1] - 7:13
**substance** [2] - 11:24, 18:11
**substance-dependent** [1] - 18:11
**suffice** [1] - 22:10
**sufficient** [2] - 8:10, 13:6
**suggest** [2] - 19:18, 25:6
**suggested** [2] - 12:18, 13:25
**suggesting** [3] - 15:11, 16:25, 18:13
**Suite** [2] - 1:18, 2:8

**supplement** [4] - 11:3, 15:12, 15:16, 14:20
**suppose** [2] - 18:7, 26:9
**surgeries** [1] - 23:12
**survived** [1] - 17:4
**Susan** [4] - 6:23, 7:4, 7:13, 8:24
**swaths** [1] - 18:3

## T

**tables** [1] - 22:17
**ten** [1] - 23:12
**terms** [3] - 7:8, 23:6, 26:20
**testimony** [1] - 7:2
**Teva** [14] - 2:9, 2:9, 4:12, 4:22, 5:20, 6:10, 6:16, 7:8, 7:14, 8:2, 8:5, 8:12, 9:5, 9:16
**Teva's** [2] - 6:24, 7:5
**Teva-specific** [1] - 4:12
**thankfully** [1] - 10:9
**the Court** [6] - 5:2, 13:25, 19:4, 24:4, 25:4, 25:19
**they've** [4] - 13:17, 17:6, 17:21, 21:2
**thinks** [1] - 15:1
**THOMAS** [2] - 1:10, 3:2
**three** [3] - 4:9, 4:12, 12:8
**Thursday** [1] - 4:14
**today** [8] - 3:4, 3:21, 5:3, 5:25, 6:3, 25:13, 25:20, 26:10
**together** [4] - 12:12, 24:13, 25:6, 26:17
**took** [6] - 10:21, 11:5, 16:19, 16:20, 18:1, 18:12
**Torrent** [6] - 4:8, 4:14, 8:2, 8:5, 8:12, 9:16
**Torrent-specific** [2] - 4:8, 4:14
**totally** [1] - 19:14
**toward** [1] - 5:1
**transcript** [2] - 1:23, 27:12
**transcription** [1] - 1:24
**Traurig** [1] - 6:12
**TRAURIG** [1] - 2:7
**true** [1] - 10:25
**try** [7] - 4:20, 7:19, 14:5, 18:23, 19:12,

20:17, 24:4
**trying** [6] - 4:18, 4:20, 4:23, 12:10, 18:16, 24:2
**turn** [1] - 15:17
**turned** [1] - 22:17
**twice** [3] - 20:3, 22:25, 24:7
**two** [10] - 4:7, 4:8, 4:12, 4:15, 5:13, 6:1, 6:20, 24:7, 24:16, 24:20

## U

**U.S** [2] - 1:7, 2:5
**under** [2] - 12:2, 15:9
**undergone** [1] - 23:12
**underlying** [1] - 17:5
**understood** [2] - 9:12, 25:10
**uniformity** [3] - 12:6, 13:23, 19:5
**UNITED** [1] - 1:1
**unless** [1] - 8:14
**unreasonable** [3] - 14:11, 14:23, 23:23
**up** [9] - 4:23, 5:7, 5:10, 7:14, 23:1, 24:8, 24:9, 24:14, 25:6
**uploaded** [1] - 21:3
**USA** [2] - 2:9, 2:16
**usage** [2] - 12:20, 16:15

## V

**valsartan** [23] - 10:24, 12:3, 12:19, 13:6, 13:17, 14:2, 14:3, 14:8, 14:9, 15:15, 16:2, 16:3, 16:6, 16:11, 16:14, 17:25, 18:19, 18:20, 21:17, 22:21, 23:13, 24:13, 24:17
**VALSARTAN** [1] - 1:4
**valsartan-only** [4] - 12:3, 12:19, 14:2, 16:14
**value** [1] - 23:21
**VANASKIE** [41] - 1:10, 3:2, 3:3, 3:8, 3:22, 3:25, 5:4, 6:9, 6:13, 7:22, 8:3, 8:6, 8:19, 9:7, 9:12, 9:18, 9:23, 10:2, 10:6, 11:16, 11:21, 15:4, 16:17, 17:18, 18:6, 21:10, 23:9, 24:8, 24:22, 24:25, 25:5, 25:12,

25:15, 25:22, 26:2, 26:12, 26:15, 26:19, 26:25, 27:2, 27:9
**Vanaskie** [1] - 6:11
**variety** [1] - 13:5
**vast** [1] - 22:11
**via** [1] - 3:1
**VIA** [1] - 1:5
**VICTORIA** [1] - 2:7
**Victoria** [1] - 6:11
**VIDEOCONFERENCE** [1] - 1:5
**view** [2] - 5:8, 12:15

## W

**wages** [1] - 22:7
**waiting** [2] - 5:13, 6:1
**wants** [1] - 8:15
**Washington** [1] - 2:4
**waste** [1] - 22:10
**water** [1] - 23:7
**week** [1] - 5:14
**weeks** [1] - 6:6
**whole** [3] - 18:15, 22:9, 22:15
**willing** [2] - 19:20, 20:3
**wish** [1] - 27:5
**witness** [1] - 6:22
**witnesses** [1] - 6:18
**works** [1] - 5:16
**worth** [1] - 15:19
**writing** [3] - 7:10, 7:20, 8:8
**written** [1] - 9:9
**wrote** [2] - 7:25, 9:14

## Y

**year** [3] - 27:5, 27:6
**years** [2] - 13:15, 23:12
**York** [1] - 2:3

## Z

**Zhejiang** [1] - 2:5
**ZHP** [11] - 3:20, 4:7, 4:15, 5:17, 8:1, 8:13, 8:18, 9:14
**ZHP's** [1] - 4:22
**ZHP-specific** [1] - 4:15
**Zoom** [1] - 3:1
**ZOOM** [1] - 1:5