## <u>APPENDIX OF UNPUBLISHED AUTHORITIES</u>

*Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*,
   2014 U.S. Dist. LEXIS 172857 (D.N.J. Dec. 15, 2014) .......................................1

*Galloway v. Islands Mech. Contractor, Inc.*,
   2013 U.S. Dist. LEXIS 5232 (D.V.I. Jan. 14, 2013)..............................................2

*Koninklijke Philips N.V. v. Hunt Control Sys.*, Inc.,
   2014 U.S. Dist. LEXIS 52347 (D.N.J. Apr. 16, 2014)...........................................3

*Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*,
   2010 U.S. Dist. LEXIS 112640 (D.N.J. Oct. 21, 2010) .........................................4

*Raritan Baykeeper, Inc. v. NL Industries Inc.,*
   2014 U.S. Dist. LEXIS 89078 (D.N.J. July 1, 2014) .............................................5

*Schmulovich v. 1161 Rt. 9 LLC*,
   2007 U.S. Dist. LEXIS 59705 (D.N.J. Aug.15, 2007) ...........................................6

 Positive
As of: January 13, 2023 8:37 PM Z

## *Aetrex Worldwide, Inc. v. Burten Distrib.*

United States District Court for the District of New Jersey

December 12, 2014, Decided; December 15, 2014, Filed

Civil Action No. 13-1140 (SRC)

**Reporter**
2014 U.S. Dist. LEXIS 172857 *; 2014 WL 7073466

AETREX WORLDWIDE, INC., Plaintiff, v. BURTEN DISTRIBUTION, INC., et al., Defendants.

**Subsequent History:** Affirmed by *Aetrex Worldwide, Inc. v. Burten Distrib., Inc., 2015 U.S. Dist. LEXIS 84361 (D.N.J., June 30, 2015)*

**Prior History:** *Aetrex Worldwide, Inc. v. Burten Distrib., 2013 U.S. Dist. LEXIS 166839 (D.N.J., Nov. 25, 2013)*

**Counsel:** [*1] For AETREX WORLWIDE, INC., Plaintiff: MICHAEL S. GUGIG, LEAD ATTORNEY, Saul Ewing LLP, Newark, NJ; C. MICHAEL ROWAN , JR., SAUL EWING LLP, PRINCETON, NJ.

For BURTEN DISTRIBUTION, INC., Defendant: HEATHER MARIE KUMOR, THOMAS A. CUNNIFF, JAMES DOUGLAS YOUNG, FOX ROTHSCHILD LLP, LAWRENCEVILLE, NJ; KAREN A. CONFOY, FOX ROTHSCHILD LLP, PC, LAWRENCEVILLE, NJ.

For BURTEN DISTRIBUTION, INC., Counter Claimant; HEATHER MARIE KUMOR, THOMAS A. CUNNIFF, JAMES DOUGLAS YOUNG, FOX ROTHSCHILD LLP, LAWRENCEVILLE, NJ; KAREN A. CONFOY, FOX ROTHSCHILD LLP, PC, LAWRENCEVILLE, NJ.

For AETREX WORLWIDE, INC., Counter Defendant: MICHAEL S. GUGIG, LEAD ATTORNEY, Saul Ewing LLP, Newark, NJ; C. MICHAEL ROWAN , JR., SAUL EWING LLP, PRINCETON, NJ.

**Judges:** HONORABLE JAMES B. CLARK, III, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** JAMES B. CLARK, III

## Opinion

### MEMORANDUM OPINION

### CLARK, Magistrate Judge

This matter has been remanded to this Court by Order of the Honorable Stanley R. Chesler, U.S.D.J. for the presentation of additional arguments by counsel on a motion for a protective order and to quash subpoenas. Defendant Burten Leather and Findings, Inc. d/b/a Burten Distribution ("Burten") has filed a motion to request that the Court issue a protective [*2] order on discovery and to quash subpoenas issued by Plaintiff Aetrex Worldwide, Inc. ("Aetrex"). [Docket Entry No. 93]. Plaintiff opposes Defendant's motion. [Docket Entry No. 97]. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Defendant's motion. The Court considers Defendant's motion without oral argument pursuant to *L.Civ.R. 78.1(b)*. For the reasons set forth more fully below, Defendant's Motion is DENIED.

### I. BACKGROUND

Plaintiff Aetrex is a manufacturer and seller of orthotics and comfort footwear. *Am. Compl.* at ¶1; Docket Entry No. 40. Since 1984, Aetrex has been manufacturing and selling its Lynco® brand of orthotics. *Id.* at ¶¶20-21. Defendant Burten is a distributor of footwear products, including Lynco®,

to various retail and commercial entities. *Id.* For several years, Aetrex and Burten maintained a working relationship pursuant to a contract (the "Distribution Agreement") whereby Burten would distribute Aetrex's products to numerous locations in the western United States. *Id.* at ¶31. The parties' most recent Distribution Agreement ended on December 31, 2012. *Id.* at ¶¶32-33.

Aetrex filed the complaint in this action on February 26, 2013, alleging, **[*3]** *inter alia,* breach of contract, trademark infringement, and unfair competition claims. *See generally Compl.* Aetrex alleges that Burten engaged in a comprehensive illegal scheme to confuse customers by selling "knock-off" orthotics, known as "Beats", instead of Aetrex's premium Lynco® product. *Id.* at ¶¶2, 33-34. Burten responded to the complaint and counterclaimed against Aetrex on April 30, 2013. [Docket Entry No. 9].

On March 17, 2014 Aetrex served a total of ten subpoenas to various non-parties seeking testimony and the production of documents. On March 20, 2014, pursuant to *L.Civ.R. 37.1* and this Court's judicial preferences, Burten wrote a letter to the Court objecting to Aetrex's subpoenas and seeking leave to file a motion for a protective order and to quash the subpoenas. Aetrex filed a response urging the Court to deny Burten's request to file a formal motion.

Upon review of the parties' submissions, the Court determined that formal motion practice was "not warranted[,]" finding that "the information sought via the subpoenas is relevant or, in the alternative, is 'reasonably calculated to lead to the discovery of admissible evidence.'" *Letter Order dated April 7, 2014* ("Letter Order") at **[*4]** 5; Docket Entry No. 67. Furthermore, the Court found that Burten's arguments did not "suggest that further briefing on the matter [was] necessary." *Id.* As such, Burten's request to file a formal motion was denied.

Burten appealed this Court's April 7th Order to the District Court, arguing that it was not given an adequate opportunity to fully present its arguments prior to the Court rendering a decision on same. By Order dated September 15, 2014, the Honorable Stanley R. Chesler, U.S.D.J. held that, while the Court's April 7th Order "appear[ed] to be well-reasoned...[n]evertheless, in an excess of caution, the Court will provide Burten with an opportunity to amplify any arguments which it believes were not fully presented to the Court[.]" *See* Docket Entry No. 87. Upon remand, and a telephone conference with the parties, this Court advised that, for the purpose of streamlining matters and avoiding further motion practice, the Court would permit the parties to brief the substance of the would-be formal motion for a protective order and to quash the subpoenas. *See* Docket Entry No. 91.

## II. <u>LEGAL STANDARD</u>

*Federal Rule of Civil Procedure 26* governs the scope of discovery in federal litigation. Pursuant to *Rule 26(b)(1),* the scope of permissible discovery is quite **[*5]** broad. Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1).* While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000).* Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. Notably, *Rule 26* is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981).*

Nevertheless, while undeniably broad, there are limits to the permissible scope of discovery. For example, *Rule 26(b)(2)(C)* specifically requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden **[*6]** or expense

2014 U.S. Dist. LEXIS 172857, *6

of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Rule 26(b)(2)(C)(i)* & *(ii)*. Similarly, pursuant to *Rule 26(c)*, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In moving for a protective order, "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett, 571 F.2d 1323, 1326, n.3 (3d Cir. 1978).* "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the *Rule 26(c)* test." *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986).*

Discovery sought via a subpoena issued pursuant to *Rule 45* must fall within the scope of discovery permissible under *Rule 26(b)*. *OMS Investments, Inc. v. Lebanon Seaboard Corp., Civil Action No. 08-2681 (AET), 2008 U.S. Dist. LEXIS 94165, *2 (D.N.J. Nov. 18, 2008).* In addition, pursuant to *Rule 45(d)(1)*, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the Court **[*7]** has a responsibility to enforce this duty. However, it is the party claiming undue burden that must establish same. *Nye v. Ingersoll Rand Company, Civ. No. 08-3481 (DRD), 2011 U.S. Dist. LEXIS 7383, *6 (D.N.J. Jan. 25, 2011);* *OMS Investments, 2008 U.S. Dist. LEXIS 94165 at *2.* If a subpoena falls outside the scope of permissible discovery, the Court has authority to Quash or modify it upon a timely motion by the party served. *Fed.R.Civ.P. 45(d)(3).* Specifically, four circumstances exist which require the Court to quash or modify a subpoena. *Rule 45(d)(3)(A)* provides that:

(A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow reasonable time for compliance;

(ii) requires a person to comply beyond the geographical limits specified in *Rule 45(c)*;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

*Id.* In contrast, a court *may* quash or modify a subpoena where it requires "disclosing a trade secret or other confidential research, development, or commercial information." *Rule 45(d)(3)(B)(i).*

## III. **DISCUSSION**

Burten argues that the information sought by Aetrex's subpoenas is irrelevant to the claims set forth in Aetrex's complaint and that Burten has standing to move for a protective order **[*8]** on that basis. Specifically, Burten identifies 115 discovery requests in the subpoenas ("Disputed Requests") to which it objects. Burten contends that information sought regarding Beats orthotics is outside the scope of the parties' Distribution Agreement and therefore, does not underlie the basis of this action. *See Burten's Brief in Support* at 2; Docket Entry No. 93. The complaint, Burten argues, contains no "claim that Burten's involvement with Beats is 'illegal' or 'wrongful[,]'" and therefore, "there is no nexus between the Disputed Requests and the claims Aetrex has actually asserted against Burten[].]" *Id.* at 1-2. As such, Burten submits that the subpoenas seek wholly irrelevant information beyond even the contemplation of *Rule 26* and that a protective order be issued. In the alternative, Burten argues that it has standing to challenge the subpoenas because it "has a defined right in maintaining the confidentiality of its confidential business information, which Aetrex seeks to obtain from [the subpoenaed entities.]" *Id.* at 13. In this regard, Burten requests that the subpoenas be quashed.[1]

---

[1] Burten also presents the additional argument that Aetrex waived its right to seek information related to Beats orthotics **[*9]** because Burten objected to several of Aetrex's interrogatories and document requests regarding same and likewise did not provide documents or responses thereto. *See Burten's Br. Supp.* at 6-7. However, in a footnote, Burten states that it "has not objected to discovery related to the

2014 U.S. Dist. LEXIS 172857, *9

Aetrex submits that Burten's motion should be denied, arguing that Burten lacks standing to challenge the subpoenas in any capacity.[2] As to Burten's relevancy objections, Aetrex contends that Burten's "actions with respect to Lynco® orthotics and Beats orthotics are inherently intertwined." *Aetrex's Brief in Opposition* at 12; Docket Entry No. 97. Aetrex maintains that Burten engaged in a "comprehensive scheme" which has been "incorporated in each cause of action because each cause of action represents one aspect of the overall **[*10]** scheme to promote knock-off Beats orthotics at the expense of Aetrex's Lynco® orthotics business." *Id.* at 13. Pointing specifically to Count VII, Aetrex argues that the "scheme to promote Beats orthotics was born out of [Burten's] exploitation of its relationship with Aetrex" and that Burten was therefore unjustly enriched. *Id.* at 14. As such, Aetrex submits that it cannot reasonably be limited to discovery with respect to solely the Lynco® orthotics.

Additionally, Aetrex asserts that Burten has failed to establish its burden that it has standing to quash the subpoenas because of a "personal privilege in the production sought." *Id.* at 6-7 (citing *Schmulovich v. 1161 Rt. 9, LLC, 2007 U.S. Dist. LEXIS 59705 at *2 (D.N.J. Aug. 15, 2007)).* Furthermore, **[*11]** Aetrex argues that no specific confidential information has been identified and, even if identified, such information could be protected by the provisions of the parties' Discovery Confidentiality Order ("DCO"). *Id.* at 8-

10.[3]

## A. Standing

Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed. *See Thomas v. Marina Assocs., 202 F.R.D. 433, 434-435 (E.D. Pa. 2001).* However, "a party has standing to bring a Motion to Quash or modify a subpoena upon a non-party when the party claims a personal privilege in the production sought." *Schmulovich, 2007 U.S. Dist. LEXIS 59705, *2* (internal citations omitted); *see also Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975)* ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."). In this regard, "[a] party lacks standing to challenge **[*12]** subpoenas issued to non-parties on the grounds of relevancy or undue burden." *Universitas Educ., LLC v. Nova Group, Inc., 2013 U.S. Dist. LEXIS 1720 at *16 (S.D.N.Y. Jan. 4, 2013).* If a party lacks standing to move to quash or modify a subpoena, however, a party may utilize another mechanism to challenge a subpoena that seeks irrelevant information. "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under *Rule 26(c)* to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *US EEOC v. United Galaxy, 2011 U.S. Dist. LEXIS 103398 at *5 (D.N.J. Sept. 13, 2011)* (*citing In re Remec, Inc. Sec. Litig., 2008 U.S. Dist. LEXIS 47412 at *1 (S.D.Cal. May 30, 2008)* (internal citations and quotations omitted).

The Court finds that Burten lacks standing to quash or modify the subpoenas based upon a

---

claims made in Counts VII, VIII and IX." *Id.* at n.5. The Court is therefore not persuaded by this argument as it finds that the information sought by the subpoenas is in connection with those very Counts. Moreover, Aetrex has asserted that several third-parties "likely are in exclusive possession of relevant documents related to both Lynco® and Beats orthotics." *Aetrex's Br. Opp.* at 3.

[2] Aetrex argues that Burten has taken the position that the subpoenas "impose an undue burden on the third-parties[.]" *Aetrex's Br. Opp.* at 4. It doesn't appear to the Court that this is the case. It appears that the arguments advanced by counsel for Burten are limited to relevancy and privileged information and indeed, Burten confirms that "[i]t is not the burden placed on the non-parties" that is the basis for its motion. *Burten's Brief in Reply* at 1; Docket Entry No. 98. As such, the Court finds that an undue burden analysis is unnecessary.

---

[3] The Court notes that Burten filed a reply brief on October 27, 2014 which was not permitted by the briefing schedule entered on October 6, 2014. *See* Docket Entry Nos. 91, 98] Aetrex similarly filed a sur-reply requesting that the Court either disregard Burten's reply, or permit consideration of a sur-reply. [Docket Entry No. 99]. In an effort to fully resolve this matter on the merits, the Court has considered both submissions in connection with this motion.

claim of relevancy, or lack thereof. Nevertheless, the Court finds that Burten does have standing under *Rule 26* to move for a protective order to enjoin the production of irrelevant information for subpoenas issued to non-parties. *See United Galaxy, 2011 U.S. Dist. LEXIS 103398 *5*. As such, the Court will turn to the question of whether the information sought is relevant to this action.

## B. Relevancy

Any discovery sought by way of a *Rule 45* subpoena must fall within the scope of discovery allowed by *Rule 26*. *Schmulovich, 2007 U.S. Dist. LEXIS 59705, *2*. In this regard, such information must be "relevant to any **[*13]** party's claim or defense...[but] need not be admissible[.]" *Rule 26*. "Relevancy is defined as 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case[.]'" *Eisai Co. v. Teva Pharms. USA, Inc., 2009 U.S. Dist. LEXIS 114105 at *6 (D.N.J. Dec. 8, 2009)* (citing *Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978))*.

Under the guiding principles that discovery is broad and that *Rule 26* strongly favors disclosure, the Court finds that the information sought by the subpoenas is relevant. Contrary to Burten's assertion that "this case is simply not about Beats[,]" a review of the amended complaint reveals that Burten's involvement with Beats orthotics plays a critical role in Plaintiff's claims. *Burten's Br. Supp.* at 3. Moreover, concluding that Beats orthotics plays no role in this case would be tantamount to finding that one or more of Aetrex's claims fail as a matter of law, something that this Court is not prepared to do. Indeed, the word "Beats" appears no less than 35 times in the amended complaint and is referenced in both Aetrex's general allegations, as well as its specific causes of action. Burten's actions with respect to the Beats orthotics appear to the Court to be central to Aetrex's alleged "comprehensive scheme" and furthermore, as this Court previously found, **[*14]** although no provisions for Beats orthotics were contemplated by the Distribution

Agreement, "Aetrex's allegations stem from conduct arising both pursuant to, and outside the scope of the Distribution Agreement." *Letter Order* at 5. Aetrex's amended complaint not only alleges breach of contract claims, but also violations of *15 U.S.C. §§1114* and *1125*, *N.J.S.A. 56:4-1*, and common law tort claims. *See Am. Compl.* at ¶¶124, 132, 139, 143.

The Court is not persuaded by Burten's argument that the burden of production outweighs the benefit or that Aetrex is "improperly using this litigation to acquire information about a competitive product[.]" *Burten's Br. Supp.* at 12-13. First, it is undisputed that, prior to the instant issue arising, none of the ten recipients of the subpoenas have moved to quash on any ground.[4] Moreover, all 115 Disputed Requests are not issued to every party, but appear to be tailored to each recipient's knowledge and information. Indeed, in no subpoena does the number of document request categories exceed 23. *See generally Exhibit A to the Certification of Karen Confoy*; Docket Entry No. 94-1. As such, the Court finds that the burden of each subpoena on its respective party does not outweigh the benefit **[*15]** to Aetrex of receiving such relevant information. Second, Aetrex's complaint clearly alleges that Burten "induced Aetrex's distributors and customers to purchase inferior Beats orthotics and deliberately confused them into believing that the Beats knock-offs are superior or equivalent to Lynco® brand orthotics" and further, that Burten manipulated the presentation of the orthotics and shipped Beats to customers who ordered Lyncos®. *Am. Compl.* at ¶130. In this regard, the Court disagrees with Burten that Aetrex is seeking information about a competitive product, and rather finds that the allegations set forth by Aetrex in the amended complaint provide a foundation for the information sought by the subpoenas. Accordingly, Burten's motion for a protective order is DENIED.

## C. Privileged or Confidential Material

---

[4] Aetrex does note that a few of the third-parties asked for additional time to respond to the subpoenas. *See Aetrex's Brief in Sur-Reply* at 2; Docket Entry No. 99.

For purposes of standing, Burten's assertion that it has a privilege in the production sought by the subpoenas will suffice. The question of whether such a claim of privilege constitutes grounds for quashing a subpoena, however, **[*16]** is a separate inquiry. Burten argues that it "has a defined right in maintaining the confidentiality of its confidential business information" and that the subpoenaed entities are not signatories to the DCO in this case. *Burten's Br. Supp.* at 13. Aetrex opposes by arguing that Burten fails to identify with any specificity "the purportedly confidential information that will be revealed in the third-parties' responses to the subpoenas." *Aetrex's Br. Opp.* at 7. Consequently, Aetrex submits that Burten is essentially arguing that "all of the information sought in the third-party subpoenas is confidential[.]" *Id.* at 8 (emphasis omitted). Lastly, Aetrex contends that any confidentiality concerns anticipated by Burten can be easily assuaged by an agreement "that certain information obtained from third-parties would be produced in accordance with the DCO." *Id.* at 10. Burten has replied by stating that specific confidential information could not be initiatlly identified because Burten "does not know what will be produced." *Burten's Br. Reply* at 2, ¶4.

The Court finds that Burten has failed to show that the subpoenas must be quashed because they require disclosure of privileged or other protected matter. *Rule 45(d)(3)(A)*. Moreover, **[*17]** to the extent that the Court, in its discretion, may quash a subpoena for the disclosure of confidential information under *Rule 45(d)(3)(B)*, the Court declines to do so for a number of reasons. First, as Burten tacitly admits in its reply, no attempt has been made to identify the confidential information which is purportedly sought by the subpoenas. Likewise, the Court is persuaded by Aetrex's argument that Burten's initial argument is defeated by the statement that it does not know what will be produced. Certainly, the Court recognizes that information produced by the third-parties may very well be confidential, but the failure of Burten to make any such identification renders the argument vulnerable. Second, the general notion that some not-yet-identified confidential information might be produced is unavailing to Burten, as the Court finds

that such information would be subject to the provisions of the DCO and, at Aetrex's suggestion, it appears that Plaintiff is willing to enter into a separate or supplemental agreement which would protect any such confidential information.[5] The Court finds that quashing subpoenas in this instance for the mere potential disclosure of confidential information is **[*18]** an extreme remedy, especially given the fact that it is not mandatory, but is within the Court's discretion to do so. As such, Burten's motion to quash the subpoenas is DENIED.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for a protective order and to quash the subpoenas is hereby DENIED. An appropriate Order follows.

Dated: December 12, 2014

/s/ James B. Clark, IIIJames B. Clark, III

**HONORABLE JAMES B. CLARK, IIIJAMES B. CLARK, III**

**UNITED STATES MAGISTRATE JUDGE**

## ORDER

## CLARK, Magistrate Judge

This matter having been remanded to this Court by Order of the Honorable Stanley R. Chesler, U.S.D.J. for the presentation of additional arguments by counsel on a motion for a protective order and to quash subpoenas; and Defendant Burten Leather and Findings, d/b/a Burten Distribution ("Defendant") having filed a motion to request that the Court issue **[*19]** a protective order on discovery and to quash the subpoenas issued by Plaintiff Aetrex Worldwide, Inc.'s

_____

[5] Here, Aetrex appears to raise a good faith suggestion to address Burten's confidentiality concerns. Similarly, Burten's reply letter requests that discovery produced under the subpoenas be subject to the DCO. *See Burten's Br. Reply* at ¶4. The Court encourages and indeed, would expect the parties to execute such an agreement, if appropriate.

2014 U.S. Dist. LEXIS 172857, *19

("Plaintiff") [Docket Entry No. 93]; and Plaintiff having opposed Defendant's motion [Docket Entry No. 97]; and the Court having reviewed all of the arguments made in support or and in opposition to Defendant's motion; and the Court having considered Defendant's motion without oral argument pursuant to *L.Civ.R. 78.1(b)*; and for the reasons set forth in the Court's Memorandum Opinion accompanying this Order; and for good cause shown,

IT IS on this 12th day of December, 2014

ORDERED that Defendant's motion to quash or for a protective order is DENIED.

/s/ James B. Clark, IIIJames B. Clark, III

**HONORABLE JAMES B. CLARK, IIIJAMES B. CLARK, III**

**UNITED STATES MAGISTRATE JUDGE**

---

**End of Document**

⚠ Caution
As of: January 13, 2023 8:37 PM Z

## *Galloway v. Islands Mech. Contr., Inc.*

United States District Court for the District of the Virgin Islands, Division of St. Croix

January 14, 2013, Decided; January 14, 2013, Filed

Civil Action No. 2008-071

**Reporter**
2013 U.S. Dist. LEXIS 5232 *

IRA GALLOWAY, Plaintiff v. ISLANDS MECHANICAL CONTRACTOR, INC., Defendant

**Subsequent History:** Summary judgment granted by, Count dismissed at *Galloway v. Islands Mech. Contr., Inc., 2013 U.S. Dist. LEXIS 5234 (D.V.I., Jan. 14, 2013)*

**Prior History:** *Galloway v. Islands Mech. Contr., 2012 U.S. Dist. LEXIS 163858 (D.V.I., Nov. 16, 2012)*

**Counsel:** **[*1]** Lee J. Rohn, Esq., Mary Faith Carpenter, Esq., St. Croix, USVI, *For the Plaintiff.*

Andrew C. Simpson, Esq., Emily A. Shoup, Esq., Rachelle M. Shocklee, Esq., St. Croix, USVI, *For the Defendant.*

**Judges:** LEWIS, *District Judge.*

**Opinion by:** WILMA A. LEWIS

## Opinion

### MEMORANDUM OPINION

(January 14, 2013)

THIS MATTER comes before the Court on the "Objection to and Appeal of Magistrate's Order Granting Defendant Island[s] Mechanical Contractor's Motion to Quash Subpoenas Duces Tecum," filed by Plaintiff Ira Galloway ("Plaintiff") on October 29, 2012. (Dkt. No. 230). Defendant Islands Mechanical Contractor, Inc. ("IMC" or "Defendant") filed a "Response to Objections to Magistrate's Order" on November 10, 2012. (Dkt.

No. 235). For the reasons that follow, the Court will affirm the Magistrate Judge's October 16, 2012 Order quashing the subpoenas duces tecum on the grounds that they violate the Court's May 12, 2011 Scheduling Order. (Dkt. No. 226). Although affirming the Magistrate Judge's ultimate conclusion, the Court will clarify certain legal principles addressed in the litigation of this issue.

### PROCEDURAL HISTORY

This appeal has its genesis in the filing of a motion *in limine* by Defendant in which it sought, **[*2]** *inter alia*, to preclude evidence of any claim that Plaintiff may make at trial concerning loss of his capacity to earn income. (Dkt. No. 137). Defendant asserted that because Plaintiff had provided neither expert testimony regarding his economic damages nor any calculation of his damages as required by *Rule 26(a)(1)(A)(iii)*, he should be precluded from offering evidence on this issue. (*Id.* & Dkt. No. 160 at 1-2). During a September 13, 2012 hearing on this and other motions *in limine*, Plaintiff represented that he had, in fact, provided information concerning his economic damages to Defendant, and that he would file that information with the Court. The next day, the Court issued an Order in which it stated that Plaintiff would have up to and including September 17, 2012 "to file a memorandum identifying the information that Plaintiff has produced to Defendant that addresses the calculation of Plaintiff's economic damages, including the information required by *FED. R. CIV. P. 26(a)(1)(A)(iii)*." (Dkt. No. 208). Defendant was afforded the opportunity to file a response. [1]

---

[1] In a November 16, 2012 Memorandum Opinion and Order

On September 17, 2012, Plaintiff filed a "Memorandum Related to Accrued Loss of Income" which contained numerous calculations concerning his damages. (Dkt. No. 211-1). He attached several exhibits to the Memorandum which allegedly substantiated those calculations, including pages from his April 2011 deposition and his responses to IMC's interrogatories dated October 13, 2010. (Dkt. Nos. 211-2 through 211-6, 211-8). He also submitted an "Updated Response to Island[s] Mechanical Contractors, Inc.'s Interrogatories," dated September 17, 2012, and supporting exhibits. (Dkt. No. 211-12). In its response filed on September 24, 2012, Defendant countered that Plaintiff did not provide adequate information to allow it to "independently assess his economic loss claim or to allow a trier of fact to calculate the damages [*4] without speculating as to both the income plaintiff subsequently earned and the times when he was employed." (Dkt. No. 212 at 1). Defendant identified alleged gaps in Plaintiff's proof and concluded that without this information (such as the dates Plaintiff worked for those employers, his gross wages and benefits), it could only speculate as to Plaintiff's damages. *Id.* at 5.

The next day — September 25, 2012 — Plaintiff filed three Notices of Intent to Serve Subpoena, in which he indicated that he was serving subpoenas duces tecum on the three employers for whom he worked after he was terminated from Defendant: Oxbow Group, located in West Palm Beach, Florida (Dkt. No. 213); Oiltanking L.P., located in Houston, Texas (Dkt. No. 214); and Turner Industries, Inc., located in Baton Rouge, Louisiana (Dkt. No. 215). In these Notices, Plaintiff requested the following documents: (1) his employment records including rate of pay and benefits; (2) income tax records and/or pay stubs; (3) all W-2 forms; (4) employment offer letters; (5) his

personnel file; and (6) all such related documents. (Dkt. No. 213-1 at 1-2). The subpoenas commanded the companies to produce the documents to Plaintiff's counsel [*5] on St. Croix by October 15, 2012, pursuant to *Federal Rules of Civil Procedure 26*, *30*, and *45*. *Id.*

On September 26, 2012, Defendant filed a "Motion to Quash Subpoenas Duces Tecum," arguing that Plaintiff made its request for employment records from Oxbow, Oiltanking, and Turner "on the eve of trial and over a year after factual discovery had closed" on July 29, 2011. (Dkt. No. 216). Defendant objected that Plaintiff should not be allowed, at such a late date, "to attempt to obtain evidence to prove his claims." *Id.* Plaintiff opposed the motion, contending that: (1) Defendant lacked standing to move to quash the subpoenas; and (2) the information sought with the subpoenas would not prejudice Defendant because Plaintiff will "assuredly be allowed to testify as to his rate of pay and employment benefits" at trial. (Dkt. No. 223). In its Reply, Defendant responded that a party bound by a Court Order — *i.e.,* a Scheduling Order which sets a discovery deadline — has standing to object to a similarly-bound party's willful disobedience of that same order. (Dkt. No. 225).

On October 16, 2012, the Magistrate Judge of this Court issued an Order granting Defendant's Motion to Quash. (Dkt. No. 226). He [*6] quoted *Joseph v. Linehaul Logistics, Inc., 2012 U.S. Dist. LEXIS 124594, *9, [WL], at *4 (D. Mont. Aug. 31, 2012),* for the proposition that *Rule 45* subpoenas are "subject to the same scheduling order deadlines as other forms of discovery" and, "[c]onsequently, 'a party may seek a *Rule 26(c)* protective order to preclude another party from obtaining discovery from a non-party[.]'" *Id.* The Magistrate Judge then construed Defendant's motion to quash as a motion for a protective order. Commenting that the Notices of Intent to Serve Subpoenas were filed after the close of discovery, the Magistrate Judge held that they were "untimely and any attempt to obtain discovery by their issuance will not be allowed." *Id.*

Plaintiff filed an "Objection to and Appeal of Magistrate's Order Granting Defendant Island[s] Mechanical Contractor's Motion to Quash

---

memorializing the Court's rulings on all of the motions *in limine,* [*3] the Court "emphasize[d] that none of the accommodations that it has approved with regard to further discovery in this case should be construed by the parties as a general reopening of discovery. Except for those aspects of discovery approved herein, the July 29, 2011 discovery deadline, established in the May 12, 2011 Scheduling Order, remains in effect." (Dkt. No. 238 at 12).

2013 U.S. Dist. LEXIS 5232, *6

Subpoenas Duces Tecum" on October 29, 2012, raising three arguments. (Dkt. No. 230). He first contended that the Magistrate Judge's decision that a protective order was warranted was clearly erroneous and contrary to law because Defendant failed to satisfy the "good cause" requirement for a protective order by demonstrating that the production of the documents sought by the **[\*7]** subpoena would work a clearly defined and serious injury upon it. *Id.* at 3-5. Second, Plaintiff challenged Defendant's assertion that it had no way to calculate Plaintiff's economic losses by arguing that Defendant had received the information from employment authorizations served on Plaintiff's post-IMC employers during the discovery process. Plaintiff characterized Defendant's argument that Plaintiff's loss claim was not supported by any document or testimony in this case as "false" and a "complete fabrication," since Defendant possessed that information. *Id.* at 7, 9. Third, Plaintiff maintained that the Magistrate Judge's decision was clearly erroneous because Defendant lacked standing under *Rule 45* to move to quash the subpoenas. *Id.* at 10-12.

In its "Response to Objections to Magistrate's Order," Defendant reiterated its earlier argument that the subpoenas were issued long after the discovery deadline and were untimely. It added that whether the Magistrate Judge stopped Plaintiff's "abuse" through an order quashing a subpoena, granting a protective order, or enforcing an existing scheduling order was irrelevant because "the Court clearly has the power to stop an ongoing violation **[\*8]** of its Orders." (Dkt. No. 235 at 2). IMC further contended that Plaintiff alleged legal, rather than factual, error and, because Plaintiff did not argue before the Magistrate Judge that IMC already possessed the information concerning Plaintiff's economic loss, it was not necessary to address it. *Id.* at 3.

## DISCUSSION

## I. Standard of Review

Motions to quash and motions for a protective order are non-dispositive matters that are reviewed under a clearly erroneous or contrary to law standard. See *Farmers & Merchants Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997)* ("A magistrate judge's decision in a non-dispositive discovery dispute will be set aside only if it is clearly erroneous or contrary to law."); *see also Fed. R. Civ. P. 72(a)* (providing that on appeal from a ruling of a magistrate judge on a pretrial non-dispositive matter, a district court shall "modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law."). The Supreme Court has held that a finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and **[\*9]** firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)*. "[A] Magistrate Judge's ruling is contrary to law if 'the Magistrate Judge misinterpreted or misapplied the applicable law.'" *Kendricks v. Hertz Corp., 2008 U.S. Dist. LEXIS 62945, \*5, [WL], at \*2 (D.V.I. Aug. 18, 2008)* (citation omitted). "The party who filed the appeal bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law." *Control Screening, LLC v. Integrated Trade Sys., Inc., 2011 U.S. Dist. LEXIS 85202, \*16, [WL], at \*6 (D.N.J. Aug. 3, 2011)*.

## II. Analysis

## A. Motion to Quash/Motion for a Protective Order

*Fed. R. Civ P. 45* provides, in part, that, on timely motion, the issuing court must quash or modify a subpoena that (1) fails to allow a reasonable time to comply; (2) requires a non-party to travel more than 100 miles from where that person resides or is employed; (3) requires disclosure of privileged or other protected matter, if no exception applies; or (4) subjects the person to an undue burden. *Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv)*. "Generally, 'a party does not have standing to quash a subpoena served on a third party.'" *Savant Sys., LLC v.*

*Crestron Elecs., Inc., 2012 U.S. Dist. LEXIS 39871, *7, [WL], at *3 (E.D. Pa. Mar. 22, 2012)* **[\*10]** (quoting *Thomas v. Marina Assocs., 202 F.R.D. 433, 434 (E.D. Pa. 2001))*; *see also Langord v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975)* (opining that a motion to quash may be made only by the party to whom the subpoena is directed). "An exception to this rule permits a party to move to quash when it 'claims some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.'" *Savant Sys., 2012 U.S. Dist. LEXIS 39871, at *7, [WL], at *3* (quoting *Davis v. Gen. Accident Ins. Co. of Am., 1999 U.S. Dist. LEXIS 5344, *6, [WL], at *2 (E.D. Pa. Apr. 15, 1999))*; see also *In re Grand Jury Matter, 770 F.2d 36, 38 (3d Cir. 1985)* (holding that non-party who had no personal property right or privilege at stake had no standing to pursue appeal). The party moving to quash "bears the burden of establishing that a privilege attaches to the subpoenaed documents." *Savant Sys., 2012 U.S. Dist. LEXIS 39871, *9, [WL], at *4* (citing *City of St. Petersburg v. Total Containment, Inc., 2008 U.S. Dist. LEXIS 36735, *4, [WL], at *2 (E.D. Pa. May 5, 2008))*.

Here, the subpoenas at issue were directed at third parties, not the Defendant. Further, Defendant did not assert a claim of privilege or right with regard to the documents being sought from **[\*11]** the third party employers. Thus, Defendant lacks standing to move to quash the subpoena.

With regard to a motion for a protective order:

> *Rule 26(c)(1)* provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including the following: (A) forbidding the disclosure of discovery; and (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. FED. R. CIV. P. 26(c)(1).

*Id. 2012 U.S. Dist. LEXIS 39871, at *9, [WL], at *3.* In demonstrating "good cause" for the issuance of a protective order under *Rule 26(c)(1)*, the moving party must demonstrate "that disclosure [of the discovery materials] will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice." *Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)* (citing *Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994))*.

In construing Defendant's motion to quash as a motion for a protective order, the Magistrate Judge did not articulate the factual basis necessary to support a finding of good cause for the issuance of a protective order. **[\*12]** Further, the quote from *Linehaul Logistics* upon which the Magistrate Judge relied to support his conclusion that a party may seek a "protective order to preclude another party from obtaining discovery from a non-party…" simply provides that such relief may be available; it does not allow a court to ignore the requirements that must be met for a protective order to issue.

## B. *Sua Sponte* Review

Notwithstanding these clarifications of the foregoing legal principles, the Court affirms the Magistrate Judge's ultimate conclusion that the subpoenas should be quashed as untimely. Even if a party does not have standing to quash a subpoena or has not asserted sufficient standing to quash a subpoena, a court still has the authority to quash the subpoena on grounds of untimeliness. *See Jefferson v. Biogen IDEC Inc., 2012 U.S. Dist. LEXIS 48139, *5, [WL], at *2 (E.D.N.C. Apr. 5, 2012)* (ruling that defendant had not asserted sufficient standing to quash subpoenas issued to non-party; nonetheless, the court quashed the subpoenas upon its own motion because, *inter alia*, the subpoenas were served weeks after the completion of discovery and thus untimely); *Peterbilt of Great Bend, LLC v. Doonan, 2006 U.S. Dist. LEXIS 80038, *4, [WL], at *2 (D. Kan. Nov. 1, 2006)* **[\*13]** (holding that although a party did not have standing to move to quash a subpoena directed to a non-party, court would nevertheless quash the subpoena because it was issued outside the discovery period established by the court); *Revander v. Denman, 2004 U.S. Dist. LEXIS 628, *4, [WL], at *1 (S.D.N.Y. Jan. 21, 2004)* ("Although a party generally does not have standing to challenge a subpoena issued to a third-

party witness unless a personal privacy right or privilege is implicated, the Court, in the exercise of its discretion, may deny a subpoena request when it finds that there is no reason why the subpoena could not have been brought during the discovery period."); *McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 588 (W.D.N.Y. 1995)* (opining that even if a party does not have standing to object to a subpoena issued to a third-party witness, a more "fundamental problem[]" with the subpoena arises when the opposing party "is seeking to conduct discovery after the deadline for completing discovery has passed" and, under those circumstances, "the subpoenas and discovery requests should be denied."). In addition, *Fed. R. Civ. P. 16(f)* "authorizes a district court to issue, *sua sponte*, 'any just orders **[*14]** … if a party or its attorney … fails to obey a scheduling or other pretrial order.'" *Mulero-Abreu v. P.R. Police Dep't, 675 F.3d 88, 91 (1st Cir. 2012)* (citing *Fed. R. Civ. P. 16(f)(1)(C)*). [2]

Many courts **[*15]** have found that *Rule 45* subpoenas fall within the confines of *Rule 26* discovery and are subject to *Rule 26* discovery limitations:

> *Rule 45* subpoenas, which are intended to secure pretrial production of documents and things, are encompassed within the definition of 'discovery' as enunciated in *Rule 26*[] and, therefore, are subject to the same time constraints that apply to all of the other

methods of formal discovery … To allow a party to continue with formal discovery … that is, discovery which invokes the authority of the court… whether in [the] guise of *Rule 45*, or any of the other discovery methods recognized by *Rule 26*[], after the discovery deadline unnecessarily lengthens [the] discovery process, and diverts the parties' attention from the post-discovery aspects of preparing a case for trial[.]

*Nicholas v. Wyndham Int'l, Inc., 2003 U.S. Dist. LEXIS 24085, *4, [WL], at *2 (D.V.I. Oct. 1, 2003)* (citing cases) (internal citations omitted). [3] In this regard, courts have held that "*Rule 45* subpoenas are … subject to the same scheduling order deadlines as other forms of discovery." *Linehaul Logistics, 2012 U.S. Dist. LEXIS 124594, at *9, [WL], at *2*; *see also Vilma v. Goodell, 2012 U.S. Dist. LEXIS 148504, *8, [WL], at *3 (E.D. La. Oct. 16, 2012)*; **[*16]** *New Life Homecare, Inc. v. Blue Cross Ne. Pa., 2012 U.S. Dist. LEXIS 22006, *7, [WL] at *3 (M.D. Pa. Feb. 22, 2012)*; *Dreyer v. GACS, Inc., 204 F.R.D. 120, 122 (N.D. Ind. 2011)*; *Garvin v. S. States Ins. Exch. Co., 2007 U.S. Dist. LEXIS 63664, *7-8, [WL], at *3 (N.D. W.Va. Aug. 28, 2007)*; *Mortg. Info. Servs., Inc. v. Kitchens, 210 F.R.D. 562, 566 (W.D.N.C. 2002)*; *Integra Lifesciences I, Ltd. v. Merck KGaA, 190 F.R.D. 556, 561 (S.D. Cal. 1999)*; *Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 177 F.R.D. 443, 444 (D. Minn. 1997)*; *McNerney, 164 F.R.D. at 588*. This Court agrees.

Plaintiff asserts in his September 17, 2012 filing with the Court that he had produced some evidence during the discovery period concerning his wages and benefits at the three companies by which he was employed after he left IMC. However, Plaintiff did not seek further discovery from those **[*17]** employers concerning his

---

[2] As discussed above, the Court deems it appropriate to affirm the Magistrate Judge's ultimate conclusion based on his authority to quash the subpoena on the grounds of untimeliness cited in his Order. Alternatively, this Court can review the matter *sua sponte*. In this latter regard, although the motion to quash was addressed by the Magistrate Judge under the authority granted by *28 U.S.C. § 636* and *Fed. R. Civ. P. 72*, and came before this Court on appeal, "the case itself remains the district judge's case throughout." *Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London Subscribing to Policy No. NB043060b, 2012 U.S. Dist. LEXIS 40894, *6, [WL], at *2 (D.V.I. Mar. 26, 2012)* (citation omitted). "As such 'the district judge remains the final authority in the case, and [s]he may reconsider *sua sponte* any matter determined by a magistrate judge.'" *Id.* (citing *Schur v. L.A. Weight Loss Ctrs., Inc., 577 F.3d 752, 760 (7th Cir. 2009)*). By either method of review, the outcome is the same.

[3] The *Nicholas* Court rejected the holding in *O'Boyle v. Jensen, 150 F.R.D. 519, 520 (M.D. Pa. 1993)* which held, "without discussion or cited precedent" that a court's discovery deadline did not preclude parties from gathering additional information via subpoena. *Id. 2003 U.S. Dist. LEXIS 24085, at *3, [WL], at *1*. *O'Boyle* represents the "minority view." *Dent v. Siegelbaum, 2012 U.S. Dist. LEXIS 28506, *33, [WL], at *12 (D. Md. Mar. 5, 2012)*.

potential damages, and factual discovery closed on July 29, 2011. (Dkt. No. 76). It was not until Defendant pointed out alleged gaps in Plaintiff's proof concerning damages that Plaintiff filed the "Notices of Deposition Duces Tecum."

Through the subpoenas, Plaintiff sought basic discovery material, including pay stubs and W-2s. However, as noted earlier, subpoenas are subject to the same deadlines as other discovery methods, and thus can be quashed as untimely if served after the discovery deadline. *See* cases cited, *supra; see also Dees v. Hyundai Motor Mfg. Ala., LLC, 2008 U.S. Dist. LEXIS 23710, *3, [WL], at *1 (M.D. Ala. Mar. 25, 2008)* (subpoena seeking employment records from third party was considered a discovery device and, as such, was quashed as untimely because it was served after the discovery deadline).

Plaintiff never moved to modify the Scheduling Order, and never offered any reason why he did not seek the evidence sought via subpoena during the discovery period — in a case that began in 2008, and for which the discovery period was approximately fifteen months. *See Dow Chem. Canada, Inc. v. HRD Corp., 2009 U.S. Dist. LEXIS 108802, *2-3, [WL], at *2 (D. Del. Sept. 24, 2009)* (ruling that, in order **[*18]** to properly obtain discovery that defendant was pursuing through its subpoenas, after discovery period closed, it was required to make a 'good cause' application to the Court, and to demonstrate that the discovery sought could not have been obtained within the allowed discovery period). Instead, to obtain this material, Plaintiff filed subpoenas fourteen months after discovery closed.

By issuing the subpoenas on September 25, 2012, Plaintiff disregarded the Court's scheduling order which set a July 29, 2011 deadline for discovery.

A Scheduling Order is "intended to serve as 'the unalterable road map (absent good cause) for the remainder of the case.'" *Olgyay v. Soc. for Envtl. Graphic Design, Inc., 169 F.R.D. 219, 220 (D.D.C.1996)* (quoting *Final Report of the Civil Justice Reform Act Advisory Group of the United States District Court for the District of Columbia* at 39 (Aug.1993)). "A scheduling

order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir.1992)* (quoting *Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me.1985))*. Indeed, "[d]isregard of **[*19]** the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier." *Id.* As such, *Rule 16 of the Federal Rules of Civil Procedure* makes plain that a scheduling order entered by a district judge "shall not be modified except upon a showing of good cause and by leave of the district judge … ." *Fed.R.Civ.P. 16(b); see also* LCVR 16.4 ("The court may modify the scheduling order at any time upon a showing of good cause.").

*Dag Enters., Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 104 (D.D.C. 2005).*

Accordingly, the Magistrate Judge properly concluded that the subpoenas violated the May 12, 2011 Scheduling Order in this case because they were filed after the close of discovery and were therefore untimely.

## CONCLUSION

For the reasons set forth above, the Court affirms the Magistrate Judge's Order quashing the subpoenas on the grounds that they violate the Scheduling Order issued on May 12, 2011, which set a July 29, 2011 deadline for discovery. An appropriate Order accompanies this Memorandum Opinion.

 Neutral

As of: January 13, 2023 8:39 PM Z

## *Koninklijke Philips N.V. v. Hunt Control Sys., Inc.*

United States District Court for the District of New Jersey

April 16, 2014, Decided; April 16, 2014, Filed

Civil Action No. 11-3684 (DMC)

**Reporter**

2014 U.S. Dist. LEXIS 52347 *; 2014 WL 1494517

KONINKLIJKE PHILIPS N.V., Plaintiff, v. HUNT CONTROL SYSTEMS, INC., AN ASSUMED TRADE NAME FOR CARIBE CORPORATION, Defendant.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Motion denied by *Koninklijke Philips Elecs. N.V. v. Hunt Control Sys., 2014 U.S. Dist. LEXIS 157793 (D.N.J., Nov. 7, 2014)*

Motion denied by, Summary judgment denied by, Summary judgment granted, in part, summary judgment denied, in part by *Koninkijke Philips Elecs. N. V. v. Hunt Control Sys., 2016 U.S. Dist. LEXIS 84299 (D.N.J., June 29, 2016)*

Motion granted by *Koninklijke Philips N.V. v. Hunt Control Sys., 2016 U.S. Dist. LEXIS 161521 (D.N.J., Nov. 21, 2016)*

Findings of fact/conclusions of law at, Motion granted by *Koninklijke Philips N.V. v. Hunt Control Sys., 2017 U.S. Dist. LEXIS 119675 (D.N.J., July 31, 2017)*

Decision reached on appeal by, Injunction denied by *Koninklijke Philips Elecs. N.V. v. Hunt Control Sys., 2017 U.S. Dist. LEXIS 138374 (D.N.J., Aug. 29, 2017)*

**Counsel:** **[*1]** For KONINKLIJKE PHILIPS N.V., Plaintiff: BRIAN J. MCMAHON, LEAD ATTORNEY, GIBBONS, PC, NEWARK, NJ; J. BRUGH LOWER, LEAD ATTORNEY, GIBBONS PC, NEWARK, NJ.

For HUNT CONTROL SYSTEMS, INC., AN ASSUMED TRADE NAME FOR CARIBE

CORPORATION, Defendant: GERALD KROVATIN, LEAD ATTORNEY, KROVATIN KLINGEMAN LLC, NEWARK, NJ.

For KONINKLIJKE PHILIPS N.V., Counter Defendant: BRIAN J. MCMAHON, LEAD ATTORNEY, GIBBONS, PC, NEWARK, NJ; J. BRUGH LOWER, LEAD ATTORNEY, GIBBONS PC, NEWARK, NJ.

For HUNT CONTROL SYSTEMS, INC., AN ASSUMED TRADE NAME FOR CARIBE CORPORATION, Counter Claimant: GERALD KROVATIN, LEAD ATTORNEY, KROVATIN KLINGEMAN LLC, NEWARK, NJ.

**Judges:** HONORABLE JAMES B. CLARK, III, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** JAMES B. CLARK, III

## Opinion

### MEMORANDUM OPINION

### CLARK, Magistrate Judge

This matter comes before the Court upon Plaintiff Koninklijke Philips N.V.'s ("Philips") motion for a protective order. [Docket Entry No. 93]. Defendant Hunt Control Systems, Inc., An Assumed Trade Name for Caribe Corporation ("Caribe" or "Hunt") has filed opposition to Philips' motion. [Docket Entry No. 95]. The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Philips' motion. The Court considers **[*2]** Philips' motion without oral argument pursuant to *L.Civ.R. 78.1(b)*. For the

2014 U.S. Dist. LEXIS 52347, *2

reasons set forth more fully below, Philips' motion for a protective order is GRANTED.

## I. BACKGROUND

Philips filed the instant action on June 27, 2011 pursuant to _15 U.S.C. §1071(b)(1)_ seeking relief from a decision of the Trademark Trial and Appeal Board ("Board") of the United States Patent and Trademark Office ("PTO"). _See Compl.;_ Docket Entry No. 1. Philips alleges that "[t]he Board erred in sustaining [Hunt's] Opposition" to Philips' registration of the tagline "Sense and Simplicity." _Id._ at ¶17. As such, Philips seeks reversal of the Board's decision by this Court and requests that the registration of their mark be allowed to proceed.

In March 2012, Hunt interviewed one Phil Fedele, "a Philips IT/ESI discovery professional" regarding Philips' ESI (electronically stored information) practices. _Philips' Brief in Support_ at 1; Docket Entry No. 93-1. Months later, Hunt noticed a deposition for an IT witness, which was objected to by Philips. By Order dated February 25, 2013, the deposition was stayed by the Hon. Joseph A. Dickson, U.S.M.J. to allow Hunt to request from Philips responses for eight questions "that **[\*3]** Hunt alleges were not adequately answered by Philips' IT representative, Phil Fedele[.]" _See_ Docket Entry No. 53 at 4. Judge Dickson further gave leave to Hunt to "re-apply once the parties have met and conferred in good faith." _Id._ In November 2013, Hunt reissued its notice of deposition and again, Philips objected. _Hunt's Brief in Opposition_ at 6; Docket Entry No. 95. The issue was brought to the attention of the undersigned by letter dated December 9, 2013 and, after receiving several additional letters and declarations concerning the issue, an in-person was scheduled for January 27, 2014 to discuss same. During the conference, the Court granted Philips leave to file a motion for a protective order with respect to Hunt's requested deposition of an IT witness pursuant to _Fed.R.Civ.P. 30(b)(6)_. In so ordering, the Court directed that Hunt "explain why there are material deficiencies" in the discovery already produced. _Transcript of 1/27/14 Hearing_ at 28:4-5; Docket

Entry No. 90. The instant motion followed.

## II. LEGAL STANDARD

_Federal Rule of Civil Procedure 26_ governs the scope of discovery in federal litigation. Pursuant to _Rule 26(b)(1)_, the scope of permissible discovery is quite **[\*4]** broad. Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." _Rule 26(b)(1)_. While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." _Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000)_. Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. Notably, _Rule 26_ is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. _Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc., 92 F.R.D. 371, 375 (D.N.J. 1981)_.

Nevertheless, while undeniably broad, there are limits to the permissible scope of discovery. For example, _Rule 26(b)(2)(C)_ specifically requires courts to limit discovery where "the **[\*5]** discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." _Rule 26(b)(2)(C)(i)_ & _(ii)_. Similarly, pursuant to _Rule 26(c)_, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In moving for a protective order, "[t]he burden is upon the movant

2014 U.S. Dist. LEXIS 52347, *5

to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett, 571 F.2d 1323, 1326, n.3 (3d Cir. 1978)*. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the *Rule 26(c)* test." *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)*.

## III. DISCUSSION

The Court shall first **[*6]** address Hunt's arguments in support of the 30(b)(6) deposition. Hunt maintains that an IT deposition is needed in order to discover whether Philips is using the appropriate search tools for ESI discovery. Along with its opposition, Hunt has submitted the declarations of its expert, Sean McNeill, "an Information Technology (IT) professional with Catapult Systems, The Microsoft Consulting Company." *Declaration of Sean McNeill* at ¶1; Docket Entry No. 95-2. Mr. McNeill has surmised that "due to its cloud-based IT structure, Philips has available to it some of most (*sic*) sophisticated and comprehensive state-of-the-art document search and location tools" but alleges that "Philips refuses to use these tools to satisfy its obligations." *Hunt's Br. Opp.* at 4. As such, Hunt submits that it "is entitled to the deposition to understand why and how these sophisticated tools are somehow inappropriate in spite of their clear design to accommodate eDiscovery." *Id.* at 5. Additionally, Hunt outlines seven categories of documents that it claims are materially deficient, which are as follows:

1. Significant Philips Documents not produced by Philips, but located by Hunt.

2. Production synopsis indicating **[*7]** low portion of factually important documents located.
3. Missing custodian identifications.
4. Missing actual use documents.
5. Missing documents indicating awareness of Defendant.
6. Missing documents indicating likely confusion.

7. Production synopsis suggesting that only a low percentage of apparent emails are being located.

*See generally id.*

Lastly, Hunt maintains that a deposition is not burdensome and indeed, "is the proper way to resolve disputes over ESI capabilities such as those in the instant matter." *Id.* at 14. Hunt contends that under *Rule 26(b)(2)(C)*, the Court must balance whether the burden of the proposed discovery outweighs its potential benefit, and argues that the "deposition is simply not so burdensome as to outweigh the likely benefits[.]" *Id.* at 15-16.

Philips seeks a protective order "to prevent Hunt from proceeding with its *Rule 30(b)(6)* 'IT Deposition'." *Philips' Br. Supp.* at 1. As a procedural matter, Philips contends that Judge Dickson did not stay the deposition pending a review of Philips' initial production, but only pending Philips' responses to the eight IT questions. *Id.* at 5. Philips maintains that Hunt did not "reapply" for the deposition, as Judge Dickson's **[*8]** Order permitted, but instead simply re-noticed the deposition again in late November 2013. *Id.* at 5-6. Further, Philips responds to Mr. McNeill's declaration by submitting a declaration from Mr. Fedele, who confirmed that Philips' answers to the eight additional questions were accurate, that Philips has always used "a custodian-based approach to collecting ESI[]." *Id.* at 8. In addition, Mr. Fedele notes that Philips outsources its ESI collection to Microsoft Online Services ("MOS") and that the "contract with MOS neither includes, contemplates, nor currently permits the type of searching and collection that Hunt and its expert suggest[.]" *Id.* at 9 (quotations omitted). Philips also submitted two additional declarations (that of Mr. Thomas F. Matzen and Mr. Eric Friedberg) attesting to the reasonableness of Philips' approach to ESI discovery and also certifying that the approach proposed by Mr. McNeill is burdensome. *See id.* at 9-11.

As to Hunt's claimed material deficiencies, Philips argues that these documents have already been produced and are in Hunt's possession. *Id.* at 16.

2014 U.S. Dist. LEXIS 52347, *8

Further, Philips states that its "document production sufficiently responds to Hunt's document requests as **[*9]** appropriately circumscribed by Philips' objections and/or Hunt's own requests." *Id.* at 17.

The Court finds that Philips' request for a protective order is warranted and that Hunt's requested 30(b)(6) deposition of an IT witness should be denied. First, the Court notes with some skepticism the propriety of Hunt's reissuing of the deposition notice in November 2013. It appears to the Court that Judge Dickson's Order, in directing Hunt to "re-apply" once the parties met and conferred, did not contemplate a new notice of deposition, but instead directed the Hunt to re-raise the issue before the Court if it felt that the meet and confer and answers to the additional eight questions were insufficient. Nevertheless, there has been substantial briefing and conferences in connection with the requested deposition and as such, the Court shall address the arguments made by counsel in support and in opposition thereto.

First, the Court finds that Philips has made adequate representations to this Court that its approach to conducting and gathering ESI discovery materials is reasonable. Likewise, the Court finds that Hunt has failed to make the requisite showing that Philips' production has been materially **[*10]** deficient. Many of Hunt's categories of deficient production are speculative and suggestive in nature and, indeed, have been addressed and explained adequately by Philips. Hunt's alleged dissatisfaction with the result of Philips' production is not enough to reopen the door to the collection of ESI discovery under an entirely different method. Moreover, these proposed methods have been supported only by Mr. McNeill, who merely states that alternative tools are available to Philips and that Philips has failed to utilize them. Mr. Fedele has certified that the answers to Hunt's questions are true and accurate and therefore, there is simply no compelling reason proffered by Hunt to permit a 30(b)(6) deposition of an IT witness and the possible re-opening of document discovery.

Second, even if the Court was persuaded that an alternative approach to ESI collection was more

appropriate than the custodian-based search used in this matter, there is still not enough evidence to show that conducting another search under a new method would substantially alter the production already made. As noted above, Hunt's proffered deficiencies do not rise to such a level as to disquiet the Court that production **[*11]** is materially deficient. In this regard, another approach to collect ESI discovery would be duplicative and an inefficient use of time a resources.

Lastly, the Court is not persuaded by Hunt's argument that the benefits of the deposition would likely outweigh the burden associated with it. Indeed, during the January 27th hearing, the Court remarked as follows:

> THE COURT: And, you know, I could take a seat-of-the-pants approach. I mean, I asked you the question that is the deposition itself particularly burdensome, and you candidly said, well, it's not really the deposition, it's what would happen after the deposition. I could order that the deposition go forward, and then we could all get together after the deposition and figure out, you know, whether it resulted in any basis for them — or for you producing any — any additional documents. I'd rather not do that, though. I'd rather — I'd rather have you brief this a little more fully and try to decide right now whether we go forward with more discovery or whether document discovery is at an end.

*Transcript of 1/27/14 Hearing* at 25:23-25 — 26:1-9; Docket Entry No. 90.

As such, the Court realized that it was not the deposition itself that **[*12]** was likely to cause a substantial burden, but rather the possibility of opening the door to more (and likely unproductive) discovery with no apparent end in sight. As the Court found above, it is clear that the proposed deposition has the potential to cause tremendous burden to Philips, as it would essentially put all ESI discovery already conducted in jeopardy. As such, the Court candidly finds that the marginal benefit that would emanate to Hunt is heavily outweighed by the burden that would be sustained by Philips.

2014 U.S. Dist. LEXIS 52347, *12

## IV. CONCLUSION

For the reasons set forth above, Philips' motion is GRANTED. An appropriate Order accompanies this Opinion.

Dated: April 16, 2014

/s/ James B. Clark, III

**HONORABLE JAMES B. CLARK, III**

**UNITED STATES MAGISTRATE JUDGE**


## ORDER

This matter having been opened to the Court upon Plaintiff Koninklijke Philips N.V.'s ("Philips") motion for a protective order [Docket Entry No. 93]; and Defendant Hunt Control Systems, Inc., An Assumed Name for Caribe Corporation ("Caribe" or "Hunt") having opposed Philip's motion [Docket Entry No. 95]; and the Court having reviewed all of the arguments made in support of and in opposition to Philips' motion; and the Court having considered Philips' **[*13]** motion without oral argument pursuant to _L.Civ.R. 78.1(b)_; and for the reasons set forth in the Court's Memorandum Opinion accompanying this Order; and for good cause shown,

IT IS on this 16th day of April, 2014,

ORDERED that Philips' motion for a protective order is GRANTED; and it is further

ORDERED that the Clerk of the Court terminate the aforementioned motion [Docket Entry No. 93] accordingly.

/s/ James B. Clark, III

**HONORABLE JAMES B. CLARK, III**

**UNITED STATES MAGISTRATE JUDGE**

 Neutral

As of: January 13, 2023 8:39 PM Z

## *Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc.*

United States District Court for the District of New Jersey

October 21, 2010, Decided; October 21, 2010, Filed

Civil Action No. 09-1512 (FLW)

**Reporter**

2010 U.S. Dist. LEXIS 112640 *; 2010 WL 4292175

RARITAN BAY FEDERAL CREDIT UNION, Plaintiff, v. CUMIS INSURANCE SOCIETY, INC., Defendant.

**Notice:** NOT FOR PUBLICATION

**Prior History:** *Raritan Bay Fed. Credit Union v. CUMIS Ins. Soc'y, Inc., 2009 U.S. Dist. LEXIS 63216 (D.N.J., July 22, 2009)*

**Counsel:** [*1] For **RARITAN BAY FEDERAL CREDIT UNION,Plaintiff:**BRIAN WILLIAM MCALINDIN,*LEAD ATTORNEY,* BATHGATE, WEGENER & WOLF, P.C., LAKEWOOD, NJ.

For **CUMIS INSURANCE SOCIETY, INC.,**d/b/a CUNA MUTUAL GROUP,**Defendant:**CONCEPCION A. MONTOYA, PHILIP TOUITOU,*LEAD ATTORNEYS,* HINSHAW & CULBERTSON LLP, NEW YORK, NY.

**Judges:** TONIANNE J. BONGIOVANNI, United States Magistrate Judge.

**Opinion by:** TONIANNE J. BONGIOVANNI

## Opinion

### MEMORANDUM OPINION

### BONGIOVANNI, United States Magistrate Judge

This matter comes before the Court upon motion by Defendant CUMIS Insurance Society, Inc. ("CUMIS") for a protective order pursuant to *FED.R.CIV.P. 26(c)* and *45(c)(3)* and upon cross-

motion by Plaintiff Raritan Bay Federal Credit Union ("Raritan Bay") for an Order permitting it to file an Amended Complaint. Both CUMIS's motion and Raritan Bay's cross-motion have been opposed. The Court has reviewed all arguments made in support of and in opposition to both motions and considers same without oral argument pursuant to *Fed.R.Civ.P. 78*. For the reasons set forth more fully below, CUMIS's motion is granted in part and denied in part, and Raritan Bay's cross-motion is granted in part and denied in part.

## I. Background

This matter involves a contract dispute regarding [*2] a Credit Union Bond (the "Bond") issued by CUMIS to Raritan Bay. The Bond protected Raritan Bay against, *inter alia*, employee dishonesty and faithful performance on the part of its employees and directors. (Compl. PP 5, 20). At issue in this lawsuit are the following two provisions of the Bond, which state:

A. Employee or Director Dishonesty

We will pay you for your loss resulting directly from dishonest acts committed by an "employee" or "director," acting alone or in collusion with others.

Such dishonest acts must be committed by the "employee" or "director" with the manifest intent to:

a. Cause you to sustain such loss; or

b. Obtain an improper financial benefit for the "employee," "director," or for any other person or entity.

However, if some or all of your loss resulted directly or indirectly from a "loan" or "trade," that portion of the loss is not

covered unless you establish that the portion of the loss involving a "loan" or "trade" resulted directly from dishonest acts committed by the "employee" or "director," acting alone or in collusion with others, with the manifest intent to:

1) Cause you to sustain such loss; and

2) Obtain an improper financial benefit for the "employee" or **[*3]** "director," or a financial benefit for any other person or entity.

As used in this coverage, an improper financial benefit does not include any employment benefits received in the course of employment including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions.

***

J. Faithful Performance - Enhanced

We will pay you for your loss resulting directly from a named "employee's" "failure to faithfully perform his/her trust."

The Application Of Realized Earning In Loan Losses Condition does not apply to this coverage.

"Failure to faithfully perform his/her trust" is defined as:

"Failure to faithfully perform his/her trust" means acting in conscious disregard of your established and enforced shared, deposit or lending policies.

"Failure to faithfully perform his/her trust" does not mean:

a. Negligence, mistakes or oversights; or

b. Acts or omissions resulting from inadequate training; or

c. Unintentional violation of laws or regulations; or

d. Unintentional violation of your polices or procedures; or

e. Acts or omissions known to, acquiesced in, or ratified by your Board of Directors; or

f. Acts of an "employee" for which you could have made claim **[*4]** under Employee or Director Dishonesty Coverage.

In or about 2005, Raritan Bay initiated a program known as an "Indirect Lending Policy" (the "Program"), the stated purposed of which was to "supply the same sensible and sound loan opportunities ... as we do for our established members and to create commerce that allows the credit union to remain competitive in the market place." (Compl. at PP 6, 7 (internal quotation marks omitted)). The Program was made available to qualified automotive dealerships. (*Id.* P 8) Approval of loans under the Program was based on Raritan Bay's Federal Credit Union Consumer Loan Policy (the "Consumer Loan Policy"), a document incorporated into the Indirect Loan Program and overseen by Raritan Bay's management and board of directors. (*Id.* P9, 10).

Renee Cicero ("Cicero"), a former employee of Raritan Bay became "Indirect Loan Manager" for Raritan Bay on February 12, 2005. (*Id.* P 13). As Indirect Loan Manager, Cicero had the authority to approve loans in accordance with the Consumer Loan Policy and Program. (*Id.* P 14). Raritan Bay alleges that Cicero both (1) consciously disregarded the Consumer Loan Policy and Program, causing Raritan Bay to suffer losses as **[*5]** a result of loan defaults; and (2) purposefully engaged in dishonest acts, including, but not limited to, obtaining improper benefits in the approval of loans, while knowing and intending that Raritan Bay would suffer losses as a result of loan defaults. (*Id.* PP 15, 16).

Raritan Bay claims that Cicero's alleged acts and the losses suffered therefrom are covered by Section A (Employee or Director Dishonesty) and Section J (Faithful Performance -Enhanced) of the Bond. (*Id.* P 21). CUMIS, however, has denied coverage under the Bond. In light of this denial, Raritan Bay initiated the instant lawsuit against CUMIS. In its original Complaint, Raritan Bay sought a declaration that it was entitled to insurance coverage under the Bond as well as damages for breach of contract and breach of the duty of good faith and fair dealing. (*Id.* PP 23-28, 30-33, 35-40).

On July 22, 2009, the District Court dismissed Raritan Bay's claim that CUMIS breached its duty of good faith and fair dealing in denying coverage

under the Bond. [1] In so doing, the District Court found that Raritan Bay's allegations of bad faith did not raise its right to relief above the speculative level as required by *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)* [*6] because Raritan Bay failed to allege sufficient facts to establish that CUMIS was recklessly indifferent in denying Raritan Bay's claim. (July 22, 2009 Op. at 6-7). This dismissal was specifically made without prejudice and the District Court noted that Raritan Bay could "move to amend its Complaint at any time during discovery if it discovers facts sufficient to allege bad faith." (*Id.* at 7).

After Raritan Bay's bad faith allegations were dismissed and before any motion to amend was made, Raritan Bay sought to obtain certain discovery from CUMIS. CUMIS objected [*7] claiming that the discovery sought by Raritan Bay was not relevant to Raritan Bay's breach of contract claim but instead represented a fishing expedition by which Raritan Bay sought to impermissibly obtain discovery related to its dismissed bad faith claim so that that claim could be restored. CUMIS also argued that certain of the discovery sought by Raritan Bay was protected by the attorney-client privilege and work product doctrine. As a result, CUMIS filed the instant motion for a protective order:

- precluding [Raritan Bay] from conducting discovery concerning: (i) the sales and marketing of the Bond; (ii) general risk management and 'best practices' advice offered by CUMIS to credit unions; or (iii) interpretations of the Bond through discovery of other unrelated claim files;
- precluding [Raritan Bay] from taking the deposition[] of Francis, a present employee of CUNA Mutual Insurance Society, by striking the notice of his deposition;
- precluding [Raritan Bay] from taking the deposition[] of Hendery, a former employee of CUNA Mutual Insurance Society, by quashing his subpoena;

- limiting the scope of the depositions of third parties, the Benton Investigators, to the areas of their [*8] investigation which are not subject to the attorney-client privilege or work product doctrine; and
- quashing the portion of the subpoena to the Benton Investigators which seeks the production of the sections of their files which are subject to claims of attorney-client privilege or work product doctrine including its communications with CUMIS' counsel and its notes and summaries of their interviews of former [Raritan Bay] employees, Renee Cicero ("Cicero"), Edward Sweeney ("Sweeney"), Thomas O'Shea ("O'Shea") and Donna Dwyer ("Dwyer").

(CUMIS Br. at 2). In response, Raritan Bay both opposed CUMIS's motion and filed a cross-motion to amend its Complaint in order to reassert its claim that CUMIS violated its duty of good faith and fair dealing in denying coverage under the Bond.

## II. Analysis

Because a decision on Raritan Bay's cross-motion to amend its Complaint may affect the scope of permissible discovery, the Court shall first consider whether Raritan Bay should be permitted to amend its Complaint to reassert a bad faith claim. The Court shall then consider whether a protective order is warranted with respect to any of the challenged categories of information.

## A. Motions to Amend the [*9] Pleadings

According to *Fed.R.Civ.P. 15(a)*, leave to amend the pleadings is generally given freely. *See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*; *Alvin v. Suzuki, 227 F.3d 107, 121*

---

[1] The District Court also struck Raritan Bay's requests for punitive damages and attorneys fees in Counts One (Declaratory Judgment) and Two (Breach of Contract) of the Complaint. (*Id.* at 7, 10). The Court notes that despite the fact that these requests have been stricken, Raritan Bay includes requests for punitive damages and attorneys fees in Counts One (Declaratory Judgment) and Two (Breach of Contract) of its proposed Amended Complaint. To the extent Raritan Bay's cross-motion to amend is granted the requests for punitive damages and attorneys fees found in Counts One and Two of the proposed Amended Complaint are stricken.

*(3d Cir. 2000)*. Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004)*. Here, CUMIS opposes Raritan Bay's proposed amendments on futility grounds and for undue delay and bad faith. The Court examines these arguments in turn below.

## 1. Futility

A proposed amendment is appropriately denied where it is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc., 133 F.R.D. 463, 468 (D.N.J. 1990)* (internal quotation marks and citations omitted). **[*10]** In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin, 227 F.3d at 121*) and considers only the pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*.

When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)*. "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp., Civil Action No. 2:09-cv-03856, 2010 U.S. Dist. LEXIS 22903, 2010 WL 918444, *2 (D.N.J. March 12, 2010)* (quoting *Twombly, 550 U.S. at 570*). In other words, the facts alleged must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S.Ct. at 1949*. **[*11]** While a pleading does not need to contain "detailed factual allegations," a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly, 550 U.S. at 555* (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

As the District Court previously noted, "[p]ursuant to New Jersey law, to maintain a claim for bad faith a Plaintiff must 'show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.' *Pickett v. Lloyd's, 131 N.J. 457, 473, 621 A.2d 445 (1993)*. Further, while 'the lack of a reasonable basis may be inferred and imputed to an insurance company,' there must be allegations of reckless indifference to facts or to proofs submitted by the insured. Id." (July 22, 2009 Op. at 6). Raritan Bay's original bad faith claim was dismissed because Raritan Bay did not allege sufficient facts to establish that CUMIS was recklessly indifferent in denying coverage under Sections **[*12]** A and J of the Bond. In its proposed Amended Complaint, Raritan Bay seeks to add twenty-nine allegations to support its claim that CUMIS acted in bad faith. (*See* Proposed Amended Compl. PP 22-50). The essence of these allegations is that CUMIS acted in bad faith for the following three reasons: First, CUMIS, after deciding in the summer of 2008 to deny Raritan Bay coverage under the Bond and without informing Raritan Bay of this decision, engaged in a sham investigation, the purpose of which was not to obtain information to enable it to make a good faith coverage decision regarding Raritan Bay's claim, but instead was to enable it to obtain information to use against Raritan Bay in future litigation. Second, CUMIS, which helped create Raritan Bay's lending policies and the resulting business climate within which Raritan Bay operated, improperly relied on the vagueness of the same lending policies it helped to create in

denying coverage. Third, CUMIS never advised Raritan Bay regarding why Raritan Bay's Section A claim was denied but has inappropriately left Raritan Bay to speculate as to the reasons for the denial of coverage.

CUMIS argues that Raritan Bay's proposed amendments are **[*13]** futile. With respect to Raritan Bay's allegations that CUMIS engaged in a sham investigation, CUMIS argues that Raritan Bay's claim is meritless as the law does not require an insurer investigating an insured's claim for coverage to advise the insured if facts weighing against coverage emerge or to cease its investigation after such facts emerge even if the investigation is incomplete. Instead, CUMIS argues that the opposite is true and that "the case law is replete with claims for breach of the duty of good faith arising from an insurer's failure to adequately conduct a complete investigation into all of the relevant information." (CUMIS Reply Br. at 14). In addition, CUMIS claims that according to the terms of the Bond, it had the right to "examine and audit" Raritan Bay's materials and interview Raritan Bay's employees and directors "*at any time.*" (*Id.* at 15 (internal quotation marks and citations omitted). As such, CUMIS argues that Raritan Bay cannot claim that it was obligated to cease its investigations as soon as it discovered facts that weighed against coverage. Moreover, CUMIS contends that Raritan Bay has not established facts showing that CUMIS's interviews of Cicero, O'Shea **[*14]** and Sweeney were "unrelated to and irrelevant to CUMIS making a decision on its claim." (*Id.* at 16). Consequently, CUMIS argues that Raritan Bay's bad faith allegations concerning CUMIS's alleged sham investigation do not raise Raritan Bay's right to relief above the speculative level.

CUMIS similarly takes issue with Raritan Bay's allegations that CUMIS acted in bad faith when it relied on the vagueness of Raritan Bay's lending policies as a reason for denying coverage under the Bond. In this regard, CUMIS claims that "how and why [Raritan Bay] adopted the lending policies at issue in this case" is a "collateral" matter that is "irrelevant to the issue of whether there is coverage under the Bond." (*Id.* at 12-13). Indeed, CUMIS claims that "[t]he source of [Raritan Bay's]

lending policies is simply irrelevant to the question of whether Cicero 'consciously disregarded' [Raritan Bay's] policies and procedures[.]" (*Id.* at 17). CUMIS also argues that "this theory of bad faith is ... factually infirm" because even if CUMIS helped to create the lending policies adopted by Raritan Bay, which CUMIS disputes, "[c]ontrary to [Raritan Bay's] argument, CUMIS did not deny the claim solely solely **[*15]** [sic] because of [Raritan Bay's] vague lending policies[.]" (*Id.* at 13). Instead, CUMIS contends that it denied coverage because Raritan Bay "failed to provide any support to establish any [sic] the three coverage requirements: (1) an established policy; (2) an enforced policy; and (3) consciously disregarded by Cicero." (*Id.*) CUMIS argues that Raritan Bay's theory of bad faith is thus futile because the failure to establish any one of the aforementioned requirements provides CUMIS with a basis to deny coverage.

Further, CUMIS argues that Raritan Bay's allegations that CUMIS acted in bad faith by failing to provide a denial letter regarding Raritan Bay's Section A claim are specious. In this regard, CUMIS notes that Raritan Bay initiated the instant lawsuit prior to submitting its Amended Proof of Loss in which it for the first time sought coverage under Section A of the Bond. Moreover, CUMIS argues that counsel for both Raritan Bay and CUMIS specifically agreed that the Amended Proof of Loss would be handled as part of this litigation. As a result, CUMIS argues that Raritan Bay "cannot now claim that CUMIS deliberately ignored or otherwise failed to conduct a timely investigation into **[*16]** its Amended Proof of Claim given the express agreement among counsel." (*Id.* at 17).

As stated above, in considering whether Raritan Bay's proposed amendments are futile, the Court applies the Rule 12(b)(6) motion to dismiss standard (*see Alvin, 227 F.3d at 121*). As such, the Court accepts as true all facts alleged by Raritan Bay and limits its review to the factual allegations contained in Raritan Bay's proposed Amended Complaint, any exhibits attached thereto, matters of public record and undisputedly authentic documents that form the basis of Raritan Bay's claim. *See Pension Benefit Guar. Corp., 998 F.2d*

*at 1196*. Under this standard, the Court finds that Raritan Bay should be permitted to amend its Complaint to allege certain bad faith allegations. Specifically, the Court finds that Raritan Bay's allegations that CUMIS acted in bad faith when it conducted a sham investigation and failed to advise Raritan Bay why its Section A claim was denied are not futile.

While the Court agrees with CUMIS that an insurer is not obligated to cease its investigation or inform an insured immediately upon learning any facts that weigh against providing coverage of an insured's claim, the Court finds **[*17]** that Raritan Bay's claim that CUMIS acted in bad faith by engaging in a sham investigation is not premised on such a theory. Instead, Raritan Bay alleges that CUMIS acted in bad faith because it conducted a sham investigation after it had already decided that it would deny Raritan Bay's claim: "CUNA had decided in the Summer of 2008 that it would deny the claim and thereafter, conducted a sham investigation of the claim which was undertaken for the improper purpose of obtaining information from Raritan Bay to be used against Raritan Bay in litigation which might ensue." (Proposed Amended Compl. P 31). Thus, Raritan Bay is not alleging that CUMIS conducted a sham investigation because it continued to investigate Raritan Bay's claim for coverage after it learned of facts that favored denying Raritan Bay's claim, but instead is alleging that CUMIS engaged in a sham investigation because it continued to "investigate" Raritan Bay's claim after it had already decided that it would deny same. Whether CUMIS had actually decided to deny Raritan Bay's claim for coverage in the Summer of 2008 is a fact question that the Court does not resolve at this time. Instead, at this juncture, the Court **[*18]** assumes that the facts alleged by Raritan Bay in its proposed Amended Complaint are true. Further, the Court finds that if CUMIS had in fact decided to deny coverage in the Summer of 2008 and then, despite having made this decision, continued to "investigate" Raritan Bay's claim, then CUMIS's investigation would support a bad faith claim. Consequently, the Court finds that Raritan Bay's allegations regarding the sham investigation allegedly conducted by CUMIS (*see* Proposed

Amended Compl. PP 22-37), [2] if true, support a claim for bad faith and are not futile.

Similarly, the Court finds that Raritan Bay's allegations that CUMIS acted in bad faith when it failed to advise Raritan Bay as to the basis for its denial of Raritan Bay's Section A -Employee Dishonesty claim (*see* Proposed Amended Compl. PP 47-50), when taken as true, are not futile. While CUMIS argues that there was an agreement between counsel that Raritan Bay's Section A claim would be handled as part of this litigation and that, as a result, CUMIS's failure to provide Raritan Bay with a letter explaining the reasons why CUMIS was denying coverage under Section A cannot support Raritan Bay's claim of bad faith, the Court finds that at this stage of proceedings consideration of counsel's alleged agreement and the exact substance of same would be inappropriate; instead, the Court must accept as true the facts alleged by Raritan Bay. *See Pension Benefit Guar. Corp., 998 F.2d at 1196*. Furthermore, the Court finds that, if true, Raritan Bay's allegations support a claim of bad faith.

In contrast to Raritan Bay's allegations concerning CUMIS's alleged sham investigation and CUMIS's failure to provide Raritan **[*20]** Bay with the reasons for its denial of coverage under Section A of the Bond, the Court finds that Raritan Bay's allegations that CUMIS cannot in good faith rely on the vagueness of Raritan Bay's lending policies as a basis for denying coverage (*see* Proposed Amended Compl. PP 38-46) do not support a claim that CUMIS acted in bad faith. As such, the Court finds that permitting Raritan Bay to amend its

---

[2] As with the fact issue of whether CUMIS had made a decision to deny coverage in the Summer of 2008, the Court assumes that the other facts alleged by Raritan Bay in support of this claim are true. Thus, for example, the Court does not actually decide whether Raritan Bay knew that CUMIS was interviewing Raritan Bay's former employees. The Court notes that while Raritan Bay alleges that it had no knowledge of these interviews, emails exist which suggest otherwise. Nevertheless, in the context of Raritan Bay's cross-motion to amend, the Court does not consider the emails but, instead, accepts the facts as alleged by Raritan Bay to **[*19]** be true. *See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d at 1196*.

Complaint to add such allegations would be futile.

In order to state a claim for bad faith based on the denial of benefits under an insurance policy, a plaintiff must "show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett v. Lloyd's, 131 N.J. at 473*. Here, even assuming that it would be unreasonable for CUMIS to rely on the vagueness of Raritan Bay's lending policies as a basis for denying coverage, Raritan Bay's bad faith allegations fail because CUMIS did not rely solely on the vagueness of Raritan Bay's lending policies in denying Raritan Bay's claim for coverage. Instead, CUMIS determined that:

> Given the vagueness of [Raritan Bay's] policies, the discretion **[*21]** given to loan officers, and the lack of any meaningful enforcement of its lending policies, [Raritan Bay] has not established that Renee Cicero consciously disregarded [Raritan Bay's] lending policies. As such, [Raritan Bay] has not supported its claim that its loss resulted directly from Renee Cicero's failure to faithfully perform her trust.

(Proposed Amended Compl. P 30 (quoting Oct. 7, 2008 Denial Letter) (internal quotation marks omitted). As is clear, the vagueness of Raritan Bay's lending policies was only one of several bases relied upon by CUMIS in denying coverage. Because a bad faith claim based on CUMIS's denial of coverage can only be successful if Raritan Bay establishes the absence of a reasonable basis for the denial as well as CUMIS's knowledge or reckless disregard of the lack of a reasonable basis for the denial, the fact that other bases for the denial exist is fatal to Raritan Bay's claim. Raritan Bay's proposed Amended Complaint contains no allegations regarding CUMIS's denial of coverage based on the discretion given to Raritan Bay's loan officers or Raritan Bay's lack of any meaningful enforcement of its lending policies. Absent any allegations suggesting otherwise, **[*22]** both of these represent reasonable bases for CUMIS's denial of coverage under the Bond. Further, because reasonable bases for the denial

exist, Raritan Bay's bad faith allegations regarding the alleged vagueness of its loan policies do not raise its right to relief above the speculative level. As a result, Raritan Bay's proposed amendments concerning same are denied as futile.

## 2. Undue Delay and Bad Faith

While delay alone does not justify a motion to amend the pleadings, a motion seeking leave to amend should be denied when the delay is undue. *Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001)*. Delay becomes undue when it places an unwarranted and unfair burden on the court or non-moving party. *Id.* A determination of undue delay focuses "on the moving party's reasons for not amending sooner. *Lyon v. Goldstein, Civil Action No. 04-3458 (MLC), 2006 U.S. Dist. LEXIS 60522, 2006 WL 2352595, *4 (D.N.J. Aug. 15, 2006)* (citing *USX Corp. v. Barnhart, 395 F.3d 161, 168 (3d Cir. 2004)).* However, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir. 1981).* **[*23]** Further, in examining bad faith, like undue delay, the Court looks at the moving party's reasons for not amending sooner. *Lyon, 2006 U.S. Dist. LEXIS 60522, 2006 WL 2352595 at *4.*

CUMIS argues that Raritan Bay's proposed Amendment is the product of undue delay and bad faith because it "contains facts known to [Raritan Bay] for at least ten years but which were not pled in [Raritan Bay's] original Complaint that was filed on February 27, 2009." (CUMIS Reply Br. at 18). For example, CUMIS argues that the October 7, 2008 Denial Letter, which forms the basis of some of Rartian Bay's bad faith allegations, was known to Raritan Bay before Raritan Bay filed its original Complaint. As a result, CUMIS argues that Raritan Bay's attempt to raise these "stale allegation[s]' now "smacks of undue delay[.]" (*Id.* at 19). Similarly, CUMIS argues that Raritan Bay knew as early as 2007 and certainly by July 2008 that the Benton Investigators would be interviewing Raritan Bay's former employees and was also aware "that

2010 U.S. Dist. LEXIS 112640, *23

these interviews were part of the information considered by CUMIS" in denying Raritan Bay's claim. (*Id.* at 20). Consequently, CUMIS claims that Raritan Bay's decision to wait and not raise allegations concerning said **[*24]** interviews as a basis for its claim of bad faith in its original Complaint "is another example of its blatant delay and disregard." (*Id.*) Further, CUMIS argues that Raritan Bay's bad faith allegations arising out of CUMIS's alleged failure to decision Raritan Bay's Section A - Employee Dishonesty claim are not only "disingenuous" given "the explicit agreement between counsel that this claim would be handled in this litigation" but are also the product of undue delay because "the facts which form the basis of this claim are the same facts which underlie [Raritan Bay's] claim for faithless performance" and, as such, this claim "creates no new basis for alleging a bad faith claim." (*Id.*)

With respect to the timing of the instant motion to amend, Raritan Bay claims that "[s]ince the Court's dismissal of the bad faith claim, without prejudice, the facts supporting bad faith have been learned or crystallized" and are included in the proposed Amended Complaint. (Raritan Bay Opp. Br. and Cross-Motion at 17). For example, Raritan Bay notes that "[s]ince the date of the dismissal, CUNA has not explained why the claim based on employee dishonesty was denied" and, in fact, as part of its motion **[*25]** for a protective order, has "admitted that it conducted an investigation of the claim not to decide the issue of coverage under the Bond but to prepare for 'the possibility of litigation.'" (*Id.* at 18). Indeed, Raritan Bay claims that only in reviewing CUMIS's motion for a protective order did it learn that CUMIS had determined in the Summer of 2008, that Raritan Bay's claim may not be covered. As such, Raritan Bay claims that its motion to amend is timely and brought in good faith. Raritan Bay also argues that CUMIS will not be prejudiced by its proposed amendments because fact discovery is "far from complete" and "[m]any of the facts are relevant to both the claim under the Bond and the claim for bad faith." (*Id.* at 17).

The Court finds that Raritan Bay's proposed amendments based on the alleged sham

investigation conducted by CUMIS and CUMIS's failure to decision the Section A — Employee Dishonesty claim are not the product of bad faith and do not result from undue delay. [3] While over a year passed before Raritan Bay sought to reassert claims of bad faith, the Court finds that permitting Raritan Bay to amend at this time will not unfairly burden either CUMIS or the Court. In this **[*26]** regard, the Court notes that fact discovery is not complete and CUMIS will have the opportunity to fully defend against Raritan Bay's bad faith allegations. While the Court acknowledges that by permitting the bad faith amendment, the scope of permissible discovery will undeniably be broadened, the Court finds that such an expansion will not prejudice or otherwise unfairly burden Raritan Bay. Further, the Court notes that Raritan Bay claims that certain of the facts that form the basis of its bad faith claim, such as facts indicating that CUMIS had decided in the Summer of 2008 to deny Raritan Bay's claim, were not learned until CUMIS filed the instant motion for a protective order. Under these circumstances, the Court finds no bad faith or undue delay. [4]

## B. Protective Order

Pursuant to *FED.R.CIV.P. 26(c)*, "[t]he court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Similarly, according to *Fed.R.Civ.P. 45(c)* the Court must protect a subpoenaed person from "undue burden or expense" and, upon timely motion, must

---

[3] The Court notes that there appears to be an agreement between counsel that Raritan Bay's Section A claim would be handled as part of this litigation. Whether said agreement relieved CUMIS of its obligation to provide Raritan Bay with a denial letter similar to the October 7, 2008 Denial Letter is a fact question that the Court does not resolve at this time.

[4] In reaching this conclusion, the Court has not considered whether Raritan Bay's **[*27]** proposed bad faith allegations concerning the appropriateness of CUMIS relying on the vagueness of Raritan Bay's lending policies in denying Raritan Bay's claims under the Bond were made in bad faith or were the product of undue delay. The Court has already determined that such allegations are futile and thus does not reach this issue.

quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." *Rule 45(c)(3)(A)(iii)* and *(iv)*. Here, as previously stated, CUMIS seeks a protective order:

• precluding [Raritan Bay] from conducting discovery concerning: (i) the sales and marketing of the Bond; (ii) general risk management and 'best practices' advice offered by CUMIS to credit unions; or (iii) interpretations of the Bond through discovery of **[*28]** other unrelated claim files;
• precluding [Raritan Bay] from taking the deposition[] of Francis, a present employee of CUNA Mutual Insurance Society, by striking the notice of his deposition;
• precluding [Raritan Bay] from taking the deposition[] of Hendery, a former employee of CUNA Mutual Insurance Society, by quashing his subpoena;
• limiting the scope of the depositions of third parties, the Benton Investigators, to the areas of their investigation which are not subject to the attorney-client privilege or work product doctrine; and
• quashing the portion of the subpoena to the Benton Investigators which seeks the production of the sections of their files which are subject to claims of attorney-client privilege or work product doctrine including its communications with CUMIS' counsel and its notes and summaries of their interviews of former [Raritan Bay] employees, Renee Cicero ("Cicero"), Edward Sweeney ("Sweeney"), Thomas O'Shea ("O'Shea") and Donna Dwyer ("Dwyer").

(CUMIS Br. at 2). CUMIS seeks protection from compliance with the first three topics of discovery, arguing that they are irrelevant to Raritan Bay's breach of contract claim and hence it would be unduly burdensome if CUMIS **[*29]** was forced to respond to same. In addition, CUMIS claims that discovery related to the Benton Investigators (i.e. the last two topics identified above) should be limited to protect documents and testimony subject to the attorney-client privilege and work product

doctrine. Each of these arguments is considered below in turn.

## 1. Undue Burden

CUMIS objects to the first three areas of inquiry arguing that they are irrelevant to the "narrow issue . . . [of] whether [Raritan Bay's] claim under the Bond is covered under insuring clause A, the Bond's Employee Dishonesty coverage and/or under [i]nsuring clause J, the Bond's Faithful Performance coverage." (*Id.* at 8). CUMIS claims that "discovery on the parties' coverage dispute is necessarily more limited than the discovery associated with a tort-like claim for bad faith." (*Id.* at 9). CUMIS further notes that Raritan Bay's bad faith theory has been dismissed by the District Court and argues that it would be "unnecessarily burdensome and contrary to the letter and spirit of the Federal Rules of Civil Procedure" to permit Raritan Bay to pursue discovery on the dismissed bad faith claim. (*Id.* at 10). Raritan Bay disagrees that the information it **[*30]** seeks is irrelevant to its breach of contract claim. However, Raritan Bay also argues that because it should be permitted to amend its Complaint to reassert a bad faith claim and because the discovery it seeks to obtain is relevant to said claim, the discovery should be permitted and CUMIS's motion for a protective order should be denied.

The Court agrees with CUMIS that information, whether in the form of documents or testimony, related to how the Bond was sold, marketed or advertised and the risk management and "best practices" advice offered by CUMIS to credit unions is not relevant to Raritan Bay's breach of contract claims. The Court also finds that discovery related to how CUMIS investigated and/or decisioned other claims is at best marginally relevant to Raritan Bay's breach of contract claims. The Court further finds that this marginal relevance is outweighed by the burden that would be imposed on CUMIS if it were required to produce even limited discovery in this regard. (*See* Pitek Aff., P 7). While the scope of discovery in federal litigation is undeniably broad - "[p]arties may obtain discovery regarding any nonprivileged matter that

2010 U.S. Dist. LEXIS 112640, *30

is relevant to any party's claim or defense [*31] .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" — it does have its limits. *FED.R.CIV.P. 26(b)*. The Court finds that absent a viable bad faith claim based on FED.R.CIV.P. CUMIS's actual denial of coverage, the discovery sought by Raritan Bay falls outside of these limits.

The Court has determined that Raritan Bay should be permitted to amend its Complaint to assert bad faith claims based on CUMIS's alleged sham investigation and failure to decision Raritan Bay's Section A — Employee Dishonesty claim. The Court, however, has denied Raritan Bay's motion to amend its Complaint to add a bad faith claim based on CUMIS's alleged improper reliance on the vagueness of Raritan Bay's lending policies in denying coverage under Section J of the Bond. While the discovery sought by Raritan Bay may arguably be relevant to the latter bad faith claim, which the Court has determined is futile, the Court finds that it is not relevant to the first two. As a result because the information sought by Raritan Bay is either not relevant or only marginally relevant to Raritan Bay's breach of contract [*32] and viable bad faith claims, the Court shall grant CUMIS's motion for a protective order and preclude Raritan Bay from obtaining discovery related to (1) how the Bond was sold, marketed or advertised; (2) the risk management and "best practices" advice offered by CUMIS to credit unions; and (3) how CUMIS investigated and/or decisioned other claims. Further because Raritan Bay seeks to depose Francis and Hendery in order to obtain similar information, the Court shall preclude their depositions and strike the notice of deposition served on Francis and quash the subpoena issued to Hendery.

## 2. Attorney-Client Privilege/Work Product

CUMIS seeks to prevent Raritan Bay from obtaining discovery, both oral and written, from the Benton Investigators that CUMIS claims is protected by the attorney-client privilege and work product doctrine. For example, CUMIS seeks to protect the Benton Investigators communications with CUMIS' counsel as well as their notes and summaries of their interviews of Cicero, Sweeney, O'Shea and Dwyer. As the party asserting the attorney-client privilege and the work product doctrine, CUMIS bears the burden of proving that the materials at issue qualify for protection from [*33] disclosure. *Conoco, Inc. v. U.S. Dept. of Justice, 687 F.2d 724, 730 (3d Cir. 1982)*; *In re Grand Jury Investigation, 599 F.2d 1224, 1235 (3d Cir. 1979)*.

The attorney-client privilege protects confidential communications between a client and his attorney and is one of the "oldest privileges . . . known to the common law." *Upjohn Co. v. U.S., 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)*. Communications between an attorney and third parties such as a client's agent or representative are also protected by the attorney-client privilege where said communications are made in confidence for the purpose of obtaining legal advice. *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp., 253 F.R.D. 300, 311 (D.N.J. 2008)* (citing *United States v. Kovel, 296 F.2d 918 (2d Cir. 1961))*.

Like the attorney-client privilege, the work product doctrine protects certain material from discovery. The work product doctrine, however, is "distinct from and broader than the attorney-client privilege." *U.S. v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)*. It protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another [*34] party or its representative[.]" *FED.R.CIV.P. 26(b)(3)*. In the Third Circuit, courts employ a two-part test to determine whether particular documents are protected by the work product doctrine. First, courts examine whether the documents at issue were prepared in reasonable anticipation of litigation. Second, courts determine whether the documents in question were prepared with the primary purpose of litigation. *In re Gabapentin Patent Litig., 214 F.R.D. 178, 183-184 (D.N.J. 2003)*.

"The first prong of the inquiry is the 'reasonable anticipation' test[,]" which requires a party to "show

that there existed 'an identifiable specific claim of impending litigation when the materials were prepared." *Id. at 183* (citations omitted). "A 'remote prospect,' an 'inchoate possibility,' or a 'likely chance of litigation'" will not do. *Id.* (quoting *Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 660 (S.D. Ind. 1991))*. Further, "[t]he mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.'" *Id.* (citations omitted). Nor does "the mere fact that litigation actually occurred." *Id.* The second prong requires the Court to determine **[*35]** whether "'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Id. at 184* (quoting *In re Grand Jury Proceedings, 604 F.2d 798, 803 (3d Cir. 1979)*. "Documents created for other purposes that prove useful in subsequent litigation are not attorney work product; similarly, documents that are routinely prepared in the ordinary course of business are outside the scope of work product protection." *Id.*

With respect to the Benton Investigators' notes and summaries of their interviews with Cicero, Sweeney, O'Shea and Dwyer, the Court finds that these documents are not protected by the attorney-client privilege or work product doctrine. In this regard, the Court finds that the Benton Investigators' notes and summaries of their interviews were not prepared with the primary purpose of litigation, but instead were prepared by CUMIS's representatives in the ordinary course of CUMIS's business as part of CUMIS's investigation of Raritan Bay's claim to coverage. As such, they are not entitled to protection. *American Home Assurance Co. v. United States of America, 09-258 (DMC), 2009 U.S. Dist. LEXIS 93597, 2009 WL 3245445, *2 (D.N.J. Oct. 7, 2009)* **[*36]** . Raritan Bay may therefore obtain copies of the Benton Investigators' notes and summaries of their interviews with Cicero, Sweeney, O'Shea and Dwyer, and may also question the Benton Investigators regarding same.

To the extent CUMIS seeks to protect additional communications between CUMIS and the Benton

Investigators, the Court cannot evaluate CUMIS's requests without a proper privilege log or a specific objection to a specific question. Without knowing what specific documents are being withheld, who created the documents, to whom the documents were sent and/or copied, and the subject of the documents, the Court simply cannot determine whether a protective order is warranted. CUMIS is therefore instructed to provide Raritan Bay with a proper privilege log no later than **November 22, 2010.** If necessary, Raritan Bay may then raise specific objections to particular documents being withheld by CUMIS.

## III. Conclusion

For **[*37]** the reasons stated above, CUMIS's motion for a protective order is granted in part and denied in part and Raritan Bay's cross-motion to amend its Complaint is granted in part and denied in part. An appropriate Order follows.

Dated: October 21, 2010

/s/ Tonianne J. Bongiovanni

TONIANNE J. BONGIOVANNI

United States Magistrate Judge

**End of Document**

 Positive
As of: January 13, 2023 8:41 PM Z

## *Raritan Baykeeper, Inc. v. NL Indus.*

United States District Court for the District of New Jersey

June 30, 2014, Decided; July 1, 2014, Filed

Civil Action No.: 09-4117 (JAP)(DEA)

**Reporter**
2014 U.S. Dist. LEXIS 89078 *; 2014 WL 2965881

RARITAN BAYKEEPER, INC., et al., Plaintiffs, v.
NL INDUSTRIES, INC., et al., Defendants.

**Subsequent History:** Motion denied by, Motion denied by, As moot *Raritan Baykeeper, Inc. v. NL Indus., 2014 U.S. Dist. LEXIS 137702 (D.N.J., Sept. 30, 2014)*

Affirmed by *Raritan Baykeeper, Inc. v. NL Indus., 2015 U.S. Dist. LEXIS 41166 (D.N.J., Mar. 31, 2015)*

**Prior History:** *Raritan Baykeeper, Inc. v. NL Indus., 2014 U.S. Dist. LEXIS 294 (D.N.J., Jan. 2, 2014)*

**Counsel:** **[*1]** For RARITAN BAYKEEPER, INC., doing business as NY/NJ BAYKEEPER, EDISON WETLANDS ASSOCIATION, INC., Plaintiffs: EDWARD LLOYD, LEAD ATTORNEY, COLUMBIA LAW SCHOOL, NEW YORK, NY; MICHELLE WEAVER, TERRIS, PRAVLIK & MILLIAN, LLP, WASHINGTON, DC.

For NL INDUSTRIES, INC., NL MANAGEMENT SERVICES, INC., Defendants, Cross Defendants: CHRISTOPHER R. GIBSON, LEAD ATTORNEY, ARCHER & GREINER, PC, HADDONFIELD, NJ.

For SAYREVILLE ECONOMIC AND REDEVELOPMENT AGENCY, Defendant, Cross Defendant: ROBERT GEORGE KENNY, LEAD ATTORNEY, HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, ESQS., NEW BRUNSWICK, NJ.

For SAYREVILLE SEAPORT ASSOCIATES, L.P., Defendant, Cross Defendant: JAMES L. BEAUSOLEIL , JR., LEAD ATTORNEY, RYAN E. BORNEMAN, DUANE MORRIS, LLP,

PHILADELPHIA, PA.

For COUNTY OF MIDDLESEX, Defendant, Cross Claimant: PATRICK J. BRADSHAW, LEAD ATTORNEY, KELSO & BRADSHAW, ESQS., NEW BRUNSWICK, NJ.

For NEW JERSEY TURNPIKE AUTHORITY, VERONIQUE HAKIM, Defendants: THOMAS A. ABBATE, LEAD ATTORNEY, DECOTIIS, FITZPATRICK & COLE, LLP, TEANECK, NJ.

For NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Defendant, Cross Defendant: JOHN F. DICKINSON , JR., LEAD ATTORNEY, OFFICE OF THE NJ ATTORNEY GENERAL, DIVISION OF LAW, TRENTON, **[*2]** NJ; EDWARD DEVINE, OFFICE OF THE NJ ATTORNEY GENERAL, TRENTON, NJ.

For MARK MAURIELLO, Defendant, Cross Defendant: EDWARD DEVINE, LEAD ATTORNEY, OFFICE OF THE NJ ATTORNEY GENERAL, TRENTON, NJ; JOHN F. DICKINSON , JR., LEAD ATTORNEY, OFFICE OF THE NJ ATTORNEY GENERAL, DIVISION OF LAW, TRENTON, NJ.

For JAMES S. SIMPSON, in his official capacity as Commissioner of STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, MICHAEL DAVIS, in his official capacity as Regional Director of Operations for the Central Region of STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, Defendants: AMY CHUNG, STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL, TRANEON, NJ.

For VERONIQUE HAKIM, Cross Defendant:

2014 U.S. Dist. LEXIS 89078, *2

THOMAS A. ABBATE, LEAD ATTORNEY, DECOTIIS, FITZPATRICK & COLE, LLP, TEANECK, NJ.

For MICHAEL DAVIS, in his official capacity as Regional Director of Operations for the Central Region of STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, Cross Defendant: AMY CHUNG, LEAD ATTORNEY, STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL, TRENTON, NJ.

For MICHAEL DAVIS, in his official capacity as Regional Director of Operations for the Central Region of STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, JAMES S. SIMPSON, **[*3]** in his official capacity as Commissioner of STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION, Cross Defendant: AMY CHUNG, STATE OF NEW JERSEY, OFFICE OF THE ATTORNEY GENERAL, TRENTON, NJ.

For NEW JERSEY TURNPIKE AUTHORITY, Cross Defendant: THOMAS A. ABBATE, LEAD ATTORNEY, DECOTIIS, FITZPATRICK & COLE, LLP, TEANECK, NJ.

For O'NEILL PROPERTIES GROUP, L.P., Cross Defendant: JAMES L. BEAUSOLEIL , JR., LEAD ATTORNEY, RYAN E. BORNEMAN, DUANE MORRIS, LLP, PHILADELPHIA, PA.

**Judges:** DOUGLAS E. ARPERT, U.S.M.J.

**Opinion by:** DOUGLAS E. ARPERT

# Opinion

## MEMORANDUM OPINION AND ORDER

### ARPERT, U.S.M.J.:

This matter comes before the Court on a Motion by Plaintiffs Raritan Baykeeper, Inc., et. al. (collectively, "Raritan") [dkt. no. 293], to compel NL Industries, Inc. and NL Environmental Management Services, Inc. (collectively, "NL") to (1) clarify whether it has withheld documents or failed to search for certain categories of documents

on the basis of NL's objections [1]; (2) produce documents responsive to 25 requests which NL contends are not relevant and/or are outside the scope of discovery; and (3) produce e-mails which have not been included in its production, pursuant to *Fed. R. Civ. P. 37(a)(4)*. NL opposed Raritan's Motion [dkt. **[*4]** no. 294] and Raritan filed a reply brief [dkt. no. 296]. In addition, NL filed a Cross-Motion for a Protective Order [dkt. no. 294], which Raritan opposed [dkt. no. 296]. Oral Argument was heard on June 16, 2014 [dkt. no. 299]. For the reasons specified below, Raritan's Motion to Compel [dkt. no. 293] is **DENIED;** NL's Cross-Motion for a Protective Order [dkt. no. 294] is **GRANTED;** and the Court will **STRIKE** Raritan's Supplemental Brief in Support of its Motion to Compel [dkt. no. 298].

## I. BACKGROUND

Since the parties are familiar with the facts and procedural history of this dispute, the Court need not recite them at length. Of relevance to the present Motion, NL operated a titanium dioxide pigment manufacturing facility on a portion of a 440-acre site in Sayreville, New Jersey from approximately 1935 to 1982. See Def.'s Br. at p. 5, dkt. no. 294. In 1988, NL commenced an environmental investigation at the site under what is known as the Industrial Site Recovery Act ("ISRA"), *N.J.S.A § 13:1K-11.4, et seq.* Id. NL worked with the New Jersey Department of Environmental Protection ("NJDEP") to identify and remediate **[*5]** most of the environmental issues throughout the site. See Def.'s Br. at p. 6.

On June 24, 2004, NJDEP issued an opinion letter stating that NL should refrain from performing any remedial action concerning the contaminated river sediment at that time because "any remedial efforts targeted adjacent to the [site] would be short lived and of little ecological significance as recontamination, due to sedimentation, would occur within a relatively short period of time." Id. While the ISRA proceedings were continuing, the

---

[1] Raritan has withdrawn part (1). See Pl.'s Reply Br. at p. 33, dkt. no. 296.

2014 U.S. Dist. LEXIS 89078, *5

Sayreville Economic and Redevelopment Agency ("SERA") initiated eminent domain proceedings and took legal title to the site in March 2005. Id. SERA entered into a Memorandum of Understanding with the NJDEP which required SERA to take over responsibility for completing the cleanup of the remaining areas of concern at the site (the Tertiary Lagoon System, the North Ditch, and the groundwater). Id at p. 7. Sayreville Seaport Associates, L.P. ("SSA") agreed by private contract with SERA to perform the cleanup activities required of SERA. Id.

On August 11, 2009, Raritan brought this citizens' suit seeking declarations that NL violated provisions of the Resource Conservation and **[*6]** Recovery Act ("RCRA") and the Clean Water Act ("CWA"). See Plaintiffs' Complaint, dkt. no. 1. In addition, Raritan seeks mandatory injunctions directing remediation of sediments in the river and cessation of alleged unpermitted discharges into the river from the three "source" areas on-site. Id. On July 15, 2013, U.S. District Judge Joel A. Pisano granted a stay as to Raritan's claims related to the alleged on-site source areas and denied the stay as to Raritan's claims seeking injunctive relief with respect to Raritan River sediments adjacent to the site. See dkt. no. 268.

Early in the case, the Court ordered SSA and SERA to produce documents to Raritan related to the contamination at the site and the historical and ongoing environmental investigation and remediation efforts. See Def.'s Br. at p. 9. SSA and SERA had these historical documents because when it assumed responsibility for remediation of the site, SSA conducted a comprehensive review and copying of the documents generated and maintained by NL's environmental consultants in connection with the investigation and remediation of the site. See dkt. no. 233 at p. 5. Raritan then served NL with 129 separate Document Requests covering **[*7]** the river sediments, the alleged on-site "source" areas, and other areas of the site that Raritan has not alleged are impacting the river. See Pl.'s Br. at p. 1. NL produced documents related to (1) NL's historical operation at the site, (2) NL's investigation of Raritan River sediments, (3) any discharges from the site into the Raritan

River, and (4) permits for outfalls from the site into the river. See Def.'s Br. at p. 13. However, NL objected to twenty-five of Raritan's Document Requests. See Pl.'s Br. at p. 10. In addition, NL moves for the Court to issue a Protective Order precluding Raritan from seeking further document production from NL. See Def.'s Br. at p. 28.

## II. LEGAL STANDARD

It is well established that the scope of discovery in federal litigation is broad. See *FED. R. CIV. P. 26(b)(1)*. Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Id.; see also *Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000)*. Moreover, information sought by the parties need not be admissible at trial if it is "reasonably calculated" to lead to discovery of admissible evidence. *FED. R. CIV. P. 26*.

During the course of discovery, "[a] party **[*8]** may serve on any other party a request within the scope of *Rule 26(b)*" to produce documents "in the responding party's possession, custody, or control." *Fed. R. Civ. P. 34(a)(1)*. Of course, the responding party is not obliged to produce documents that it does not possess or cannot obtain. See *Bumgarner v. Hart, Civ. No. 05-3900, 2007 U.S. Dist. LEXIS 214, 2007 WL 38700, at *5 (D.N.J. 2007)* (holding that the Court cannot order production of documents that are not in the responding party's possession or control); see also *Societe Internationale Pour Participations Industrielles Et Commercielles, S.A. v. Rogers, 357 U.S. 197, 204, 78 S. Ct. 1087, 2 L. Ed. 2d 1255 (1958)* (acknowledging that *Rule 34* requires inquiry into whether a party has control over documents). Not only must the requested documents be in the responding party's possession or control, they must also be relevant. The precise boundaries of the *Rule 26* relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. See *Barnes Found. v. Twp. of Lower Merion, 1996 U.S. Dist. LEXIS 16402, 1996 WL 653114, at *1 (E.D. Pa. 1996)*.

While the scope of discovery is undoubtedly broad, the Federal Rules also provide that a Court "must **[\*9]** limit the frequency or extent of discovery otherwise allowed" if it concludes that: (1) the discovery sought is cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *FED. R. CIV. P. 26*. Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible . . . while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." *Schmulovich v. 1161 Rt. 9 LLC, 2007 U.S. Dist. LEXIS 59705, at \*3-4 (D.N.J. 2007)*; see also *Pearson, 211 F.3d at 65*; Fed. R. Civ. P. 26(c).

*Rule 37(a)* allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a document request propounded pursuant to *Rule 34*. *Fed. R. Civ. P. 37(a)(3)(B)(iv)*. Ultimately, it is within the discretion of the Court to grant **[\*10]** a motion to compel disclosure for good cause shown. *In re Cendant Corp. Sec. Litig., 343 F. 3d 658, 661 (3d Cir. 2003)*.

*Rule 26(c)* allows the Court to issue, for good cause, an order that protects a party from undue burden or expense by forbidding the disclosures or forbidding the inquiry into certain matters. *FED. R. CIV. P. 26(c)(1)*. *Rule 26(c)* places the burden of persuasion on the party seeking a protective order to show good cause by demonstrating a particular need for the order. See *Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)*.


## III. DISCUSSION

### A. Raritan's Motion to Compel

In the present Motion, Raritan moves under *Fed. R. Civ. P. 37(a)* to compel discovery responses from NL to the Document Requests as to which NL has asserted objections. See dkt. no. 293. At the outset, the Court notes that Raritan has withdrawn its request to compel further clarification as to the documents NL has withheld inasmuch as NL asserts it has produced all non-privileged documents in response to the Document Requests. See Pl.'s Reply Br. at p. 33, dkt. no. 296. In addition, Raritan has withdrawn its Document Request 2 inasmuch as the indemnification agreements would not divest responsible **[\*11]** parties of liability and, therefore, the documents are not necessary to proving Raritan's claim. Id at p. 11. At the outset, the Court notes generally that Raritan's Document Requests are overbroad and that it appears many of the requested documents have already been produced. The Court will address Raritan's specific Requests in turn.

### 1. Raritan's Specific Requests

Raritan's Motion to Compel includes 25 specifically enumerated Requests. The Court has categorized the Requests for ease of reference.

### Request Nos. 1, 12, 13, 14, 20 and 22

The Court will address the Document Requests concerning the possession, control and/or use of the Sayreville Site in tandem. These Requests state:

> Request 1: All documents that refer or relate to the sale or transfer of any portion of or interest in the NL site, including easements, leaseholds, and fee simple interests in the site, to and/or from defendant or any other person or entity. See Pl.'s Br. at p. 19.

> Request 12: All documents that refer or relate to defendant or any other person or entity's status as a "generator" of contaminants, solid waste, or hazardous waste at the NL site. Id at 23.

> Request 13: All documents that refer or relate

2014 U.S. Dist. LEXIS 89078, *11

to the chemicals, **[*12]** compounds, or contaminants that were generated at any facilities operated at the NL site and disposed of at any site where the presence or migration of such chemicals, compounds, or contaminants is known or suspected to influence the NL site and/or the Raritan River. Id at 24.

Request 14: All documents that refer or relate to defendant or any other person or entity's status as an "owner or operator" of the NL site, including defendant or any other person or entity's ownership or operation of the NL site and its liability for the acts of any predecessor "owner or operator. Id at 25.

Request 20: All documents that refer or relate to any person's entry onto, authorized use, or unauthorized use of the portions of the NL site adjacent to the Raritan River or to the Raritan River near the NL site for any purpose. Id.

Request 22: all documents that refer or relate to any agreements, settlements, orders, consent decrees or other documents apportioning or assigning responsibility for any remedial action at the NL site, including but not limited to, the North Ditch, the Tertiary Lagoon System, the groundwater, or the Raritan River whether or not defendant(s) is a party. Id.

Raritan claims, inter **[*13]** alia, that these Requests are relevant to the question of which parties bear legal responsibility for placing contaminants in the Raritan River. See dkt. no. 293. In addition, Raritan asserts that the Requests are relevant inasmuch as they would help establish that NL caused contaminants to enter the River and establish a pathway for human harm by showing access to the River. Id.

In its initial objections, NL argued, inter alia, that these Requests are improper because they seek information that does not involve the Raritan River sediments. See dkt. no. 294. NL contends that it is undisputed that NL is a past owner of the site; therefore, it would cause an undue burden to require NL to produce documents concerning an undisputed fact. Id. In addition, NL maintains that it

has not owned the site since 2005 and thus does not have information regarding current access to the River. Id.

The Court finds that Raritan's Requests bear no relevance to the un-stayed claims in the Complaint. Previously, the Court stayed Raritan's claims relating to the alleged on-site sources of sediment contamination pending the completion of the on-going NJDEP remediation. See dkt. no. 268. The Court ordered that **[*14]** the claim relating to the allegedly contaminated sediments in the Raritan River was un-stayed. Id. The Court also finds that the Requests are overly broad inasmuch as they bear no relevance to the to the river sediments. Production of the documents concerning the stayed claims would cause undue burden on NL, especially since Raritan already possesses the relevant material concerning the river sediment contamination.

## Request Nos. 3, 6, 7, 8, 9, 10, 11 and 39

The Court will address the Document Requests concerning the physical characteristics and/or levels of contamination at the site in tandem. These Requests state:

Request 3: All documents that refer or relate to the physical conditions and characteristics of the NL site, including but not limited to, the quantity and nature of the contaminants present at the NL site, or which may have originated at the NL Site. See Pl.'s Br. at p. 20.

Request 6: All documents that refer or relate to the past or present impact of the groundwater at the NL site on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination **[*15]** in the Raritan River, the levels of contamination in the groundwater, and any hydrological connection between the groundwater and the Raritan River. Id.

Request 7: All documents that refer or relate to the past or present impact of the Tertiary

2014 U.S. Dist. LEXIS 89078, *15

Lagoon System on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination in the Raritan River, the levels of contamination in the Tertiary Lagoon System, and any hydrological connection between the groundwater and the Tertiary Lagoon System. Id at p. 21.

Request 8: All documents that refer or relate to the past or present impact of the North Ditch on the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the sources and impact of sediment contamination in the Raritan River, the levels of contamination in the Tertiary Lagoon System, and any hydrological connection between the North Ditch and the Raritan River. Id.

Request 9: All documents that refer or relate to any determination or opinion by defendant or any other **[*16]** person or entity that groundwater is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id at p. 22.

Request 10: All documents that refer or relate to any determination or opinion by defendant or any other person or entity that the Tertiary Lagoon System is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site, including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id.

Request 11: All documents that refer or relate to any determination or opinion by defendant or any other person or entity that the North Ditch is not currently and has not in the past contributed to the sediment contamination in the Raritan River in the vicinity of the NL site,

including, but not limited to, all documents that refer or relate to the information, data, analysis, and assumptions underlying such conclusions. Id.

Request **[*17]** 39: All documents that refer or relate to the underground interconnected sheet-pile wall on the landward side of the dock area on the NL site, including, but not limited to: (a) the 1949 drawing(s) that shows dock construction details; (b) all documents that refer or relate to the 1949 inspection of the wall; and (c) all documents that refer or relate to any other inspection(s) and/or repairs of the wall. Id at p. 36.

Raritan claims that the documents sought in these Requests would establish how the contaminants entered the Raritan River sediments. See dkt. no. 293. NL initially "objected to each of these Requests based on Judge Pisano's decision to stay [Raritan's] claims alleging that the three supposed 'source' areas contribute to sediment contamination in the Raritan River and that a cleanup of the alleged 'source' areas should be compelled." See Def.'s Br. at p. 22. NL maintains that it produced all documents relating to investigation of any impact the three alleged source areas had on the River and that Raritan is not entitled to these broad Document Requests relating to the entire source areas. Id. The Court agrees with NL that these Requests are overly broad and beyond the scope **[*18]** of the un-stayed claims. Raritan already has the documents relating to the impact of the three sites areas on the River sediments. These Requests would require NL to produce documents which are irrelevant to the un-stayed claim and the Court finds that the burden of the proposed discovery outweighs any likely benefit. *FED. R. CIV. P. 26(a)(3).*

## Request Nos. 28, 29, 30, 31 and 35

The Court will address the Document Requests concerning the issue of permit compliance in tandem. These Requests state:

Request 28: all NPDES/NJPDES permit(s) for

any portion of the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the ground water. See Pl.'s Br. at p. 27.

Request 29: All documents that refer or relate to all NPDES/NJPDES permit(s) for any portion of the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the groundwater from 1972 to present. Id.

Request 30: All documents that refer or relate to discharge monitoring in compliance with the NPDES/NJPDES permit(s) issued for the NL site from 1972 to present. Id. at p. 28.

Request 31: All documents that refer or relate to compliance or noncompliance with NPDES/NJPDES permit(s) issued **[*19]** for the NL site, including, but not limited to, the North Ditch, the Tertiary Lagoon System, and the groundwater from 1972 to the present. Id at p. 29.

Request 35: All documents that refer or relate to any action(s) that has been implemented, is planned to be implemented, considered, or is currently being considered to address compliance with NPDES/NJDES permit(s) and/or the Clean Water Act at the NL site from 1972 to the present. Id at p. 33.

Raritan argues, inter alia, that NL's compliance with NPDES/NJPDES permits is relevant to the Clean Water Act claim. See dkt. no. 293. Raritan maintains that the Clean Water Act claim requires proof that NL discharged contaminants into the Raritan River without a permit or against the terms of the permit. Id. Raritan asserts that these Requests will assist in establishing the Clean Water Act claim. Id. NL initially objected to these Requests because Raritan failed to limit the Requests to information relevant to: (1) the contaminants identified in the Complaint and (2) permits relating to discharges to the river as opposed to elsewhere on the site. See Def.'s Br. at p. 25. NL maintains that only discharges of the alleged contaminants into the Raritan **[*20]** River are relevant and that Raritan already received

copies of the permits from NJDEP and EPA. Id. In addition, NL asserts that it already produced all non-privileged documents in its possession concerning the NPDES/NJPDES permits issued for the site that concerned the Raritan River. Id at p. 26. The Court finds that Raritan's Requests concerning permit compliance on the site to be overly broad. Raritan's Requests are not limited to the five contaminants identified in the Complaint, or for permits that concerned the Raritan River. Therefore, the Court finds that NL's objections to Request Nos. 28, 29, 30, 31 and 35 are valid.

## Request Nos. 25, 32-35

The Court will address the Document Requests concerning the issue of possible defenses in tandem. These Requests state:

Request 25: all documents that refer or relate to New Jersey and or NJDEP's policy of redeveloping brownfield sites in New Jersey...including, but not limited to, any formal explanation of the policy, and any memoranda, drafts, and/or other communications regarding the application and/or implementation of the policy by New Jersey and/or NJDEP at the NL site. See Pl.'s Br. at p. 26.

Request 32: All documents that refer or relate **[*21]** to any action initiated by NJDEP against defendant(s) under New Jersey's Spill Compensation and Control Act, _N.J.S.A. 58:10-23.11, et seq._, related to the NL Site or the Raritan River. Id at p. 31.

Request 33: All documents that refer or relate to the Settlement Agreement between NJDEP, the Administrator of the New Jersey Spill Compensation Fund, and SSA, executed on or about September 30, 2008. Id at p. 32.

Request 34: All documents that refer or relate to the Natural Resource Damages Settlement Agreement between NJDEP, the Administrator of the New Jersey Spill Compensation Fund, NL, and SSA, executed on or about September 30, 2008. Id at p. 32-33.

Raritan asserts that Request Nos. 25, 32, 33 and

34 are relevant because these documents were put at issue in NL's first motion to dismiss and, therefore, could potentially be related to a defense. See dkt. no. 293. NL initially objected, inter alia, to these Requests inasmuch as the Requests have no relevance to any elements that Raritan must prove to establish liability under the Clean Water Act or the Resource Conservation and Recovery Act. See dkt. no. 295. In addition, NL argues that Raritan already possesses the responsive documents **[*22]** and requests would be unnecessarily cumulative. Id. The Court agrees with NL that these Document Requests are overly broad. The Requests have no relevance to any element of the claim that Raritan must prove for the un-stayed claim in this action. As such, the Court finds NL's objections to Raritan's Requests are valid.

## 2. Raritan's Request to Produce E-mails

Raritan also seeks to compel NL to produce e-mails pertaining to the contamination at the site and the historical and ongoing environmental investigation and remediation efforts. See Pl.'s Br. at 38. NL has stated that e-mails from before the year 2000 do not exist and that NL has already produced all non-privileged, responsive e-mail communications from after 2000. Id. Raritan argues that it "is highly implausible that a search of NL's e-mail systems would produce no responsive, non-privileged e-mails." Id at p. 39. Raritan also moves the Court to require NL to explain in detail its efforts to search for responsive e-mails and include privileged e-mails in a supplemental privilege log. Id at p. 40.

NL maintains that Raritan's Motion to compel the production of additional emails should be denied. See Def.'s Br. at p. 29. NL argues **[*23]** that e-mail communications did not exist during the time when NL operated the Site. The environmental investigation at the site began in 1988 and was active through the early 2000s. E-mail communication became common during the late 1990s; however, unless e-mails were printed out, most e-mails from that period were likely deleted due to limited storage space on hard drives. Id. In

addition, NL asserts that the document review identified extremely few responsive e-mails because most of the interactions between NL's consultant and NJDEP occurred through more formal methods. Id. Ultimately, NL concluded that it had produced all responsive, non-privileged e-mails to Raritan. Id at 30. Indeed, NL certifies that it provided Raritan with all of the e-mails that it possesses even though there were only three e-mails. Accordingly, the Court declines to compel NL to produce the e-mails or to require NL to explain in detail its efforts to search for responsive e-mails.

## B. NL's Cross-Motion for a Protective Order

NL seeks a Protective Order that would preclude Raritan from seeking any further document production from NL. See Def.'s Br. at p. 28. As an initial matter, NL contends that good cause **[*24]** exists to preclude additional document discovery due to the amount of information already in Raritan's possession. Id. In addition, NL maintains that a Protective Order is appropriate inasmuch as responding to Raritan's Requests would cause an extreme burden and expense, especially since much of the material is cumulative and/or irrelevant. Id. at p. 27.

Raritan maintains that NL's argument for the Protective Order is meritless inasmuch as the Requests concern documents relevant to the un-stayed claims and argues that the documents would not be cumulative to material already in Raritan's possession. See Pl.'s Br. at p. 2. Raritan argues that NL's motion for a Protective Order is an attempt to dictate the scope of discovery contrary to the broad rule that parties are entitled to all relevant discovery. FED. R. CIV. P. 26(b)(1). See Pl.'s Br. at p. 2. In addition, Raritan claims that NL has made no showing that it would bear an undue burden and expense by producing the documents. See Pl.'s Br. at p. 27. Raritan also maintains that the Protective Order shielding NL from further discovery is premature inasmuch as Raritan has only propounded one set of document requests. Id. at p. 28.

The **[*25]** Court finds that NL has established

good cause to warrant the issuance of a Protective Order barring Raritan from further discovery. *FED. R. CIV. P. 26(c)(1)(A)*. As stated above, the Court finds that Raritan's Requests are irrelevant to the un-stayed claims inasmuch as the Requests are beyond the scope of the river sediment contamination claim and that Raritan already possesses the relevant material concerning the river sediment contamination. Moreover, NL has stated it has already produced over 10,000 pages of documents concerning the investigation of any impact the three alleged source areas had on the river sediment and that the remaining requests concern documents that Raritan already has in its possession. The Court agrees that compliance with the Document Requests would place an undue burden on NL and would lead to the production of cumulative materials. Therefore, the Court grants NL's cross-motion for a Protective Order pursuant to *FED. R. CIV. P. 26(c)(1)(A)*.

## IV. CONCLUSION AND ORDER

The Court has considered the papers submitted and oral arguments before the Court and, for the reasons set forth above;

**IT IS** this 30th day of June, 2014,

**ORDERED** that Raritan's Motion to Compel Discovery **[*26]** [dkt. no. 293] is **DENIED;** and it is further

**ORDERED** that NL's Cross-Motion for a Protective Order [dkt. no. 296] is **GRANTED;** and it is further

**ORDERED** that, for the reasons stated on the record on June 16, 2014, the Court **STRIKES** Raritan's Memorandum in Support of Motion to Compel [dkt. no. 298].

**/s/ Douglas E. Arpert**

**DOUGLAS E. ARPERT, U.S.M.J.**

 Caution
As of: January 13, 2023 8:41 PM Z

# *Schmulovich v. 1161 Rt. 9 LLC*

United States District Court for the District of New Jersey

August 13, 2007, Decided; August 15, 2007, Filed

Civil Action No. 07-597 (FLW)

**Reporter**
2007 U.S. Dist. LEXIS 59705 *; 2007 WL 2362598

MENACHEM SCHMULOVICH and TOVA SCHMULOVICH, Plaintiffs, v. 1161 Rt. 9 LLC, et al., Defendants.

**Notice:** NOT FOR PUBLICATION

**Subsequent History:** Motion granted by *Schmulovich v. 1161 RT. 9 LLC, 2007 U.S. Dist. LEXIS 107455 (D.N.J., Sept. 28, 2007)*

Motion granted by *Schmulovich v. 1161 Rt. 9 LLC, 2008 U.S. Dist. LEXIS 81317 (D.N.J., Oct. 10, 2008)*

**Counsel:** **[*1]** For MENACHEM SCHMULOVICH, TOVA SCHMULOVICH, Plaintiffs: JED L. MARCUS, LEAD ATTORNEY, BRESSLER, AMERY & ROSS, PC, FLORHAM PARK, NJ.

For 1161 RT. 9 LLC, A New Jersey Limited Liability Corporation, OVADI MALCHI, ZICHRONI MALCHI, OFER MALCHI, Defendants: ANTHONY TULLIO BETTA, LEAD ATTORNEY, BOWE & FERNICOLA LLC, RED BANK, NJ.

**Judges:** HON. TONIANNE J. BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** TONIANNE J. BONGIOVANNI

# Opinion

OPINION AND ORDER

I. INTRODUCTION

Currently before the Court is a Motion filed by Defendants, 1161 Rt. 9 LLC, Ovadi Malchi, Zichroni Malchi, and Ofer Malchi (hereinafter "Defendants") to Quash subpoenas served upon Fleet Bank, Independence Bank, Community Bank, Hudson City Savings Bank, Commerce Bank, and Sovereign Bank by Plaintiffs, Menachem Schmulovich and Tova Schmulovich (hereinafter "Plaintiffs") [Docket Entry No. 26]. In the underlying case, Plaintiffs assert various causes of action arising out of the Defendants' alleged breach of the 1161 Rt. 9 LLC partnership agreement. This motion was considered without oral argument pursuant to *FED.R.Civ.P. 78*. For the following reasons and for good cause shown, Defendants' Motion to Quash is DENIED.

II. STATEMENT OF FACTS

Plaintiff Menachem **[*2]** Schmulovich and Defendants Ovadi Malchi and Zichroni Malchi formed the business entity 1161 Route 9 LLC ("LLC") in order to jointly purchase property located at 1161, Route 9, Lakewood, New Jersey ("property"). Brief in Support of Defendants' Motion to Quash Subpoenas at 1 (hereinafter "Supporting Brief"). Plaintiffs seek to establish that Defendants breached the LLC partnership agreement, and as a result, cheated Menachem Schmulovich out of a substantial sum of money. *Id.* Specifically, they assert that Defendants secretly removed Schmulovich's name from the LLC, fraudulently obtained mortgages on the property while retaining the proceeds for themselves, and attempted to sell the property in their own name to a third party for $ 1.2 million. Plaintiffs' Brief in Opposition to Defendants' Motion to Quash Subpoenas at 1 (hereinafter "Opposition Brief"). Moreover, Plaintiffs oppose Defendants' contentions that Menachem Schmulovich neither contributed to the LLC, nor the purchase of the property, as well as other

2007 U.S. Dist. LEXIS 59705, *2

costs, expenses and improvements related to the property. *Id.*

Accordingly, on May 15 and 21, 2007, Plaintiffs served subpoenas upon various individuals, businesses and banks, seeking **[*3]** the location of the contested funds exchanged between the parties in transactions concerning the LLC and property. Supporting Brief at 2. The subpoenas issued to the banks requested all documents associated with any business and personal bank accounts held by defendants Ovadi Malchi, Ofer Malchi, and Zichroni Malchi at those institutions. *Id.*

Defendants now move to Quash the subpoenas served on these financial institutions requiring the production of documents pertaining to the personal bank accounts of the Defendants, their family members, or any of their business entities other than the LLC at issue. *Id.* at 1. Defendants argue that these subpoenas do not seek information relevant to the LLC and property in question, and further invades their reasonable expectation of privacy. *Id.*

III. LEGAL ANALYSIS

A. Legal Standard

The scope of discovery in federal litigation is broad. *FED.R.CIV.P. 26(b)(1).* "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." *Id.* However, the Court has a responsibility to protect privacy and confidentiality interests. *Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).* Hence, the Court has authority **[*4]** to "fashion a set of limitations that allow as much relevant material to be discovered as possible, while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." *Id.* For instance, the Court has discretion to issue protective orders that impose limitations on the extent and matter of discovery where required "to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense." *FED.R.CIV.P. 26(c).* Any information sought by the parties need not be admissible at trial, but is discoverable if it appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

A *Rule 45* subpoena served in conjunction with discovery must fall within the scope of proper discovery under *FED.R.CIV.P. 26(b)(1).* *Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003).* If a subpoena falls outside the scope of permissible discovery, the Court has authority to Quash or modify it upon a timely motion by the party served. *FED.R.CIV.P. 45(c)(3).* Specifically, four circumstances exist which require the Court to quash or modify a subpoena. *Rule 45(c)(3)(A)* provides that:

> (A) On timely motion, **[*5]** the court by which a subpoena was issued shall quash or modify the subpoena if it
> (i) fails to allow reasonable time for compliance;
> (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides…,
> (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
> (iv) subjects a person to undue burden.

Generally, any motion to Quash or modify a subpoena directed towards a non-party, must be brought by the non-party itself. *Thomas v. Marina Assocs., 202 F.R.D. 433, 434-435 (E.D. Pa. 2001).* However, a party to the action will have standing to quash or modify a non-party subpoena when it claims a privilege or privacy interest in the information sought from the non-party. *Id.*

In determining whether to grant the Defendants' Motion to Quash subpoenas, the Court will examine whether the Defendants have standing to bring this motion, the relevancy of the production sought, whether any privilege or protection applies to the production, and whether the subpoena subjects Defendants to undue burden.

B. Standing

A party has standing to bring a Motion to Quash or modify a subpoena **[*6]** upon a non-party when the party claims a personal privilege in the production sought. *DIRECTV, Inc. v. Richards, 2005 U.S. Dist. LEXIS 43764, 2005 WL 1514187*

2007 U.S. Dist. LEXIS 59705, *6

at *1 (D.N.J. June 27, 2005) (citing *Catskill Development, LLC v. Park Place Entertainment Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002)).* Personal rights claimed with respect to bank account records give a party sufficient standing to challenge a third party subpoena served upon financial institutions holding such information. *Id.; Transcor, Inc., 212 F.R.D. at 590-591*. Here, Defendants assert a personal privilege with respect to their bank account records. Therefore, the Court finds that Defendants have proper standing to move to Quash subpoenas on their bank accounts.

C. Plaintiffs' Subpoenas Will Likely Disclose or Lead to Relevant Facts.

The Court finds the information sought by the subpoenas to be relevant to the allegations made by the Plaintiffs. The Court cannot quash a subpoena that leads to unprivileged, relevant or admissible evidence. *Transcor, Inc., 212 F.R.D. at 588; See DIRECTV, Inc., 2005 U.S. Dist. LEXIS 43764, 2005 WL 1514187 at *3*; 9 JAMES WM. MOORE, ET AL., Moore's Federal Practice P 45.03 (3d ed. 2006).

Defendants argue that the documents requested bear no relation to the [*7] LLC, and simply detail Defendants' day to day personal monetary activities. Supporting Brief at 1. However, Plaintiffs have referenced over ten transactions involving the LLC where money allegedly exchanged hands between the parties or a third party. Opposition Brief at 2-7. Plaintiffs cannot locate records of these transactions in the accounts belonging to the LLC, and deduce that other accounts must have been used to conduct LLC business. *Id.* at 1-2.

For instance, the Defendants acquired the property through an all cash transaction to which the Plaintiffs claim to have contributed. *Id.* at 2. However, the LLC bank records do not reflect the source of the funds for the purchase of the property. *Id.* Plaintiffs further assert that they cannot locate money borrowed by Defendants through a one year mortgage on the property, or which LLC account supplied the monthly mortgage payments. *Id.* at 3.

In light of the factual circumstances surrounding

the numerous financial transactions involved in this matter, the Court finds that the subpoenas may result in information that could verify or disprove the existence of transactions through accounts other than those belonging to the LLC, and consequently [*8] whether any breach of the partnership agreement occurred. As such, the subpoenas seek documents relevant to the issues in this litigation, and the Court will not grant Defendants' Motion to Quash on the basis that they do not fall under the framework of allowable discovery under *FED.R.CIV.P. 26(b)(1)*.

D. Plaintiffs' Third-Party Subpoena Does Not Uncover Privileged Material.

The Court must Quash or modify a subpoena that seeks the disclosure of privileged or other protected material when no waiver or exception applies. *FED.R.CIV.P. 45(c)(3)(A)(iii)*. Defendants contend that the subpoenas served on the banks require the disclosure of fiscal records, and that New Jersey law protects personal financial information through a right of privacy. Supporting Brief at 9-10.

*Federal Rule of Evidence 501* governs privileges asserted in federal cases. *First Atlantic Leasing Corp. v. Tracey, 128 F.R.D. 51, 54 (D.N.J. 1989)*. However, state law will govern privileges in federal cases where state law supplies the rule of decision for an element of a claim or defense. *Id. at 54-55*. Therefore, the Court must first examine whether New Jersey law considers customer bank records as privileged, or otherwise apply [*9] federal law.

New Jersey's state courts recognize a reasonable expectation of privacy in one's account records to prevent against unreasonable governmental searches under the New Jersey Constitution. *State v. McAllister, 184 N.J. 17, 875 A.2d 866 (N.J. 2005)*. Still, this protection does not "rise to the level of an evidentiary privilege--since the material would be freely obtainable through the use of lawful process." *First Atlantic Leasing Corp., 128 F.R.D. at 51-56*. Thus, financial account records are not privileged under New Jersey state law. *Id.*

Additionally, under federal law, the Constitution does not recognize a citizen's expectation of

2007 U.S. Dist. LEXIS 59705, *9

privacy in bank records. *State v. McAllister, 184 N.J. at 26* (citing *United States v. Payner, 447 U.S. 727, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980))*. Consequently, the Defendants may rely simply upon a expectation of privacy interest in financial records to strike down Plaintiffs' Motion to Quash the subpoenas.

Furthermore, Defendants' reliance on *DeMasi v. Weiss, 669 F.2d 114 (3d Cir. 1982)*, and *Berrie v. Berrie, 188 N.J. Super. 274, 457 A.2d 76 (App Div. 1983)* is misplaced. Neither of these cases hold that an individual possesses an absolute privilege with respect to his or her personal financial records. **[*10]** *See DeMasi, 669 F.2d at 120-21*; *Berrie, 188 N.J. Super. at 274*. Instead, these courts acknowledge that financial information could be disclosed when its relevancy to the case outweighs the intrusion to the producing party's privacy. *Id.*

In the instant matter, Defendants do not have an absolute privilege to their financial records under state or federal law. Furthermore, the Defendants' bank records are relevant within the discovery context, to the issues in this matter. Therefore, the court will not Quash the Plaintiffs' subpoenas on the basis that they seek privileged or protected material.

E. The Third-Party Subpoena Does Not Subject Defendants to an Undue Burden.

Defendants also classify the subpoenas served upon the financial institutions as unduly burdensome under *FED.R.CIV.P. 45(c)(3)(A)(iv)*. Brief in Reply to Plaintiffs' Opposition to Defendants' Motion to Quash Subpoenas at 14 (hereinafter "Reply Brief"). A subpoena is considered unduly burdensome when the Court finds that it "is unreasonable or oppressive." *DIRECTV, Inc., 2005 U.S. Dist. LEXIS 43764, 2005 WL 1514187 at *1* (citing *Northrop Corp. v. McDonnell Douglas Corp., 243 U.S. App. D.C. 19, 751 F.2d 395, 403 (D.C. Cir. 1984))*. The party moving to quash has the heavy burden **[*11]** of demonstrating the unreasonableness or oppressiveness of the subpoena. *Id.*

A strict definition does not exist for "unreasonable

or oppressive" requests, rather the Court must decide what meets this criteria on a case by case basis. *Williams v. City of Dallas, 178 F.R.D. 103, 109 (N.D. Tex. 1998)*. Courts have utilized the following factors in evaluating the reasonableness of a subpoena: (1) the party's need for the production; (2) the nature and importance of the litigation; (3) relevance; (4) the breadth of the request for the production; (5) the time period covered by the request; (6) the particularity with which the documents are described; and (7) the burden imposed on the subpoenaed entity. 9 JAMES WM. MOORE, ET AL., Moore's Federal Practice P 45.32 (3d ed. 2006); *In re Auto. Refinishing Paint Antitrust Litig., 229 F.R.D. 482, 495 (E.D. Pa. 2005)*.

Plaintiffs have asserted a significant need for the subpoenaed information as it will assist them in tracking and establishing the trail of money to support their claims regarding the LLC. Moreover, the Court has already established that within discovery the documents are relevant to this litigation. While the Court acknowledges the broad **[*12]** scope of Plaintiffs' subpoena to obtain all documents associated with Defendants' business and personal accounts, the necessity of such a request stems from Plaintiffs inability to locate evidence of alleged transactions involving the property within the LLC accounts. Moreover, any burden to produce would be borne by the financial institutions and not Defendants themselves. The Court finds that Plaintiffs only impose a slight burden upon the financial institutions who must produce these records, and the Court notes that some have already indicated that they would comply with the subpoenas.

Therefore, the Defendants have not convinced the Court of the unreasonableness or oppressiveness of Plaintiffs' request. Therefore, the Court will not Quash Plaintiffs' subpoenas on the basis that it proves unduly burdensome to the Defendants.

F. Defendants May Seek a Protective Order.

Plaintiffs' subpoenas seek relevant information, to which to no privilege or protection apply, and do not subject Defendants to an undue burden. As a result, Defendants Motion to Quash the subpoenas

2007 U.S. Dist. LEXIS 59705, *12

served on various financial institutes must be denied.

Defendants have set forth concerns that Plaintiffs' subpoena qualifies **[*13]** as a fishing expedition designed to harass and elicit personal financial information of Defendants and their family members. Defendants concerns may be cured if the parties were willing to enter into a confidentiality protective order pursuant to *L.Civ.R. 5.3* to ensure that the produced materials will remain confidential. The parties are encouraged to discuss an agreement to ensure the proper maintenance of confidential person information pursuant to the Rules of the Court and relevant case law.

IV. CONCLUSION

For the aforementioned reasons, IT IS on this 13th day of August 2007,

ORDERED that Defendants' Motion to Quash subpoenas issued to Fleet Bank, Independence Bank, Community Bank, Hudson City Savings Bank, Commerce Bank, and Sovereign Bank is DENIED; and it is further

ORDERED that Plaintiffs advise the financial institutions of the Court's decision; and it is further

ORDERED that the Clerk of the Court terminate this Motion accordingly. [Docket Entry No. 26].

s/ HON. TONIANNE J. BONGIOVANNI

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**