IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*All Actions* | MDL No. 19-2875 (RBK) |

**SPECIAL MASTER ORDER NO. 73**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

The first trial in this multi-district case will be a single-plaintiff, non-class trial presenting the claims of Plaintiff MSP Recovery Claims, Series LLC ("MSPRC"). The claims at issue were assigned to MSPRC by two Third Party Payors ("TPPs"), Group Health Incorporated and Health Insurance Plan of Greater New York (collectively referred to as "EmblemHealth"), and Summacare, Inc., both Medicare Advantage Organization ("MAO") health plains.

To prepare for trial, Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., Prinston Pharmaceutical Inc. d/b/a Solco Healthcare LLC, Solco Healthcare US, LLC, Teva Pharmaceuticals USA, Inc., Actavis Pharma, Inc., Actavis, LLC, and Torrent Pharma Inc. (collectively, the "TPP Defendants") have moved to compel production of three categories of documents that they assert are

relevant to damages.  (ECF Doc. No. 2178.)  The categories are:

> **Subsidy, Reimbursement, and Rebate Data** . . . reflecting all subsidies, reimbursements, and rebates received by [a] TPP Plaintiff from [the] Center for Medicare and Medicaid Services ("CMS"), including but not limited to all prescription drug event ("PDE") reports and all PDE payment records reflecting reimbursement requests and payments for valsartan drugs, during the time period for which TPP Plaintiff is seeking damages (the "Relevant Time Period").

> **CMS Bids**: [a]ll materials submitted in connection with . . . bid submissions to CMS as a sponsor for Medicare Part D prescription drug plans for each of the contract years corresponding to the Relevant Time Period.

> **Internal Reporting**: any internal reporting analyzing or reflecting projections and actual spend on Part D prescription drugs during the Relevant Time Period.

(MSPRC's Brief on Discovery Issues (ECF Doc. No. 2181) at 1-2.)

MSPRC objects to the requested discovery on three grounds.  First, it argues that the requests are untimely.  Second, it contends that the information sought by the TPP Defendants is not relevant.  And finally, MSPRC asserts that the requests impose an undue burden that is not proportional to the needs of this case.

As to the timeliness objection, MSPRC explicitly "does not argue that timeliness alone is reason enough to deny Defendants' requests."  (*Id.* at 7.) Instead, it observes that the timing of the requests, made months after the close of discovery, is a factor to weigh in considering whether to order production.  The TPP Defendants respond by pointing out that the Court contemplated that "case-

specific" discovery would likely be appropriate once the specific TPP Plaintiff was identified.  (ECF Doc. No. 2184 at 3, citing the Aug. 24, 2022 CMC Hr'g Tr. at 17.)  Because MSPRC does not seek denial of the TPP Defendants' request on timeliness grounds and the fact that case-specific fact discovery was contemplated after the TPP Plaintiff was identified, MSPRC's timeliness objection does not factor into the decision whether to compel production of the documents in question.

The relevance of the documents sought for each of  the specific requests will next be assessed.

**"Subsidy, Reimbursement, and Rebate" Data**

There appears to be no dispute that the starting point for assessing damages sustained by a Third Party Payor, such as MSPRC, is what did MSPRC pay to the TPP Defendants for VCDs and what did they pay for replacement drugs.  As explained in the Brief in Support of the TPP Defendants' Motion, "to assess the damages incurred by any individual TPP . . . you would need information on the price that the actual TPP paid, meaning the actual expenditure or the amount that they actually paid for that at-issue valsartan drugs."  (ECF Doc. No. 2178-1 at 18; internal quotation marks omitted.)  The extent to which such payments were offset by subsidies, reimbursements or rebates from CMS appears clearly relevant to the determination of actual damages sustained by the alleged contamination of the

VCDs.  *See In re Namenda Indirect Purchaser Antitrust Litig*., 115CV6549CMRWL, 2022 WL 3362429, at *11 (S.D.N.Y. Aug. 15, 2022) ("Any benefits, including discounts or subsidies, that flowed to a plaintiff must be used to reduce the amount of damages suffered by that plaintiff. Therefore, as a matter of law, to the extent Class Members receive any form of payment that covers all or part of its . . . prescription costs, those payments must be deducted from damages.")[1]  The fact that the data are aggregated, and not produced on a per product basis, does not defeat the relevance of such data.  Indeed, such data may be important in contesting damage calculations made by Plaintiff's experts. *See Namenda,* 2022 WL 3362429, at *12.  It is also significant that MSPRC "has stated that it was open to producing the aggregated data related to any rebates, reimbursements, or premiums for all Part D prescriptions."  (MSPRC Brief on Discovery Issues (ECF Doc. No. 2181) at 13.)  Accordingly, MSPRC will be directed to produce the documents reflecting the subsidies, reimbursements, and rebates it received from CMS during the time period for which it is seeking damages.[2]

---

[1] MSPRC's attempt to distinguish *Namenda* on the ground that it is an antitrust action is without merit.  *Namenda* concerned calculation of actual damages, and that is what is at issue in this case.

[2] MSPRC does not dispute the TPP Defendants' assertion that production of subsidy, reimbursement and rebate data would not be burdensome.

**"CMS Bids"**

As described by MSPRC, "CMS bids . . . are aggregated data that contain historical information, risk assessments, cost projections, and other market assumptions to arrive at an estimated cost of administering pharmacy benefits under Medicare  Part D."  (MSPRC Brief on Discovery Issues (ECF Doc. No. 2181) at 9.)  The bids do not show what MSPRC paid for contaminated VCDs or what Medicare paid MSPRC for contaminated VCDs.  (*Id.* at 10.)  The TPP Defendants argue that "the CMS bids and projections contain a plethora of data concerning expected versus actual drug payments, which can be used to assess whether there was any deviation from MSPRC's assignors' *estimated* drug payments, *estimated* revenue, or *estimated* return on investment as a result of the withdrawal of the at-issue valsartan-containing drugs."  (ECF Doc. No. 2184 at 4; emphasis added.)   But the differences between *estimated* receipts and expenditures does not assist in determining actual damages where the damages claim is premised upon the contention that the VCDs paid for by the MSPRC assignors were worthless.[3]  In this regard, *Namenda*, upon which the TPP Defendants place

---

[3] The TPP Defendants acknowledge that parts of the CMS bids are publicly available but argue that "spend projections" are not public.  (ECF Doc. No. 2184 at 4.)  The TPP Defendants, however, do not explain why projections of aggregated expenditures would assist its experts in evaluating MSPRC's assignors' alleged damages.

principal reliance, did not hold that CMS bids were relevant to damages.  Instead, *Namenda* focused on what actually occurred, as opposed to what was estimated or projected to happen.  Accordingly, MSPRC will not be required to produce the CMS bids.

**"Internal Reporting"**

The final at-issue category is "any internal reporting analyzing or reflecting projections and actual spend on Part D prescription drugs during the Relevant Time Period."  The TPP Defendants do not dispute that MSPRC "has already produced the historical data on the assignors' actual expenditures for VCDs during the relevant time period [and] data on payments made for replacement drugs necessitated by defendants' contaminated VCDs."  (MSPRC Brief on Discovery Issues (ECF Doc. No. 2181) at 13.)  The TPP Defendants moreover have not shown how projections and actual expenditures on *all* Part D prescription drugs covering a ten year period would be relevant to the calculation of actual damages resulting from the sale of contaminated VCDs.[4]  Accordingly, the TPP Defendants demand that MSPRC be ordered to produce its assignors "internal reporting" will

---

[4] As noted above, the TPP Defendants have acknowledged that "to assess the damages incurred by any individual TPP . . . you would need information on the price that the actual TPP paid, meaning the *actual* expenditure or the amount that they *actually* paid for that at-issue valsartan drugs."  (ECF Doc. No. 2178-1 at 18; internal quotation marks omitted; emphasis added.)

be denied.[5]

## NOW, THEREFORE, IT IS HEREBY ODERED THAT:

1. The TPP Defendants' Motion to Compel Production of Documents and Data Relevant to Plaintiff's Alleged Damages (ECF Doc. No. 2178) is **GRANTED IN PART AND DENIED IN PART.**

2. Within ten days from the entry of this Order, MSPRC shall produce the requested subsidy, rebate, and reimbursement data for the Relevant Time Period.

3. In all other respects, the TPP Defendants' Motion (ECF Doc. No. 2178) is **DENIED.**

s/ Thomas I. Vanaskie
Hon. Thomas I. Vanaskie (Ret.)
Special Master

---

[5] Because the CMS Bids and Internal Reporting Data are not relevant, there is no need to address MSPRC's claims concerning burden or confidentiality.