# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| **This Document Relates to All Actions** | Oral Argument Requested |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS PENDING APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................1

BACKGROUND ...............................................................1

ARGUMENT...................................................................3

I.      DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS. ............4

II.     DEFENDANTS WILL BE IRREPARABLY HARMED ABSENT A
        STAY. ...............................................................9

III.    A STAY WILL NOT PREJUDICE OR HARM PLAINTIFFS. .................15

IV.     A STAY WOULD BE IN THE PUBLIC INTEREST. ...............................17

CONCLUSION .................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Apple & ATTM Antitrust Litigation*,
No. C 07-05152 JW, 2010 WL 11489069
(N.D. Cal. Sept. 15, 2010)................................................................3

*Barnes v. American Tobacco Co.*,
161 F.3d 127 (3d Cir. 1998).........................................................8

*Brown v. Wal-Mart Stores, Inc.*,
No. 5:09-CV-03339-EJD, 2012 WL 5818300
(N.D. Cal. Nov. 15, 2012)......................................................passim

*In re Citizens Bank, N.A.*,
15 F.4th 607 (3d Cir. 2021).........................................................4

*Cruson v. Jackson National Life Insurance Co.*,
No. 4:16-CV-00912, 2018 WL 2937471 (E.D. Tex. June 12, 2018)..............9

*Dukes v. Wal-Mart Stores, Inc.*,
603 F.3d 571 (9th Cir. 2010).........................................................5

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021)....................................................9, 17

*Ewing Industries Corp. v. Bob Wines Nursery, Inc.*,
No. 3:13-cv-931-J-39JBT, 2015 WL 12979096
(M.D. Fla. Feb. 5, 2015) ....................................................9, 15, 17

*Fernandez v. RentGrow, Inc.*,
No. JKB-19-1190, 2022 WL 1782641 (D. Md. May 31, 2022) ............13, 15

*Fosmire v. Progressive Max Insurance Co.*,
277 F.R.D. 625 (W.D. Wash. 2011)..........................................12

*Gates v. Rohm & Haas Co.*,
  655 F.3d 255 (3d Cir. 2011) ................................................................ 5, 8

*Gray v. Golden Gate National Recreational Area*,
  No. C 08-00722 EDL, 2011 WL 6934433
  (N.D. Cal. Dec. 29, 2011) ........................................................ 10, 16, 17

*Heinzl v. Cracker Barrel Old Country Store, Inc.*,
  No. 2:14-cv-1455, 2016 WL 5339410 (W.D. Pa. July 8, 2016) .................. 13

*Johnson v. Geico Casualty Co.*,
  269 F.R.D. 406 (D. Del. 2010) ........................................................ passim

*Laudato v. EQT Corp.*,
  23 F.4th 256 (3d Cir. 2022) ............................................................... 4, 6

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
  299 F. Supp. 3d 430 (S.D.N.Y. 2018) ...................................................... 5

*Logory v. County of Susquehanna*,
  No. 3:09-CV-1448, 2013 WL 5201571 (M.D. Pa. Sept. 13, 2013) ............... 3

*In re Lorazepam & Clorazepate Antitrust Litigation*,
  208 F.R.D. 1 (D.D.C. 2002) ............................................................ passim

*Nafar v. Hollywood Tanning Systems, Inc.*,
  339 F. App'x 216 (3d Cir. 2009) ........................................................... 12

*Nieberding v. Barrette Outdoor Living, Inc.*,
  No. 12-2353-DDC-TJJ, 2014 WL 5817323
  (D. Kan. Nov. 10, 2014) .......................................................... 7, 10, 18

*Otero Savings & Loan Ass'n v. Federal Reserve Bank of Kan. City, Mo.*,
  665 F.2d 275 (10th Cir. 1981) ............................................................... 7

*Romero v. Securus Technologies, Inc.*,
  383 F. Supp. 3d 1069 (S.D. Cal. 2019) ................................................. 14

*In re St. Jude Medical, Inc.*,
  425 F.3d 1116 (8th Cir. 2005) ............................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................5

*Walney v. Swepi LP*,
    No. 1:13-cv-102 (ERIE), 2020 WL 1495755
    (W.D. Pa. Feb. 11, 2020) .............................................................3

*Walton v. Eaton Corp.*,
    563 F.2d 66 (3d Cir. 1977)........................................................12

*Willcox v. Lloyds TSB Bank, PLC*,
    No. 13-00508 ACK-RLP, 2016 WL 917893
    (D. Haw. Mar. 7, 2016).............................................. 7, 11, 14, 16

*Zeno v. Ford Motor Co.*,
    480 F. Supp. 2d 825 (W.D. Pa. 2007) ......................................13

## OTHER AUTHORITIES

Certification Notice Timing, 3 Newberg & Rubenstein on Class Actions §
    8:11 (6th ed. Dec. 2022 update) ................................................14

Manual for Complex Litigation § 21.28 (4th ed. 2004) ........................................14

## **INTRODUCTION**

Defendants respectfully request a stay of proceedings pending the Third Circuit's resolution of defendants' Rule 23(f) petitions for leave to appeal the Court's class certification order.

As set forth below, a stay is appropriate because defendants believe there is a significant chance that the Third Circuit will grant review and reverse this Court's class certification rulings. There is also significant class-related work that remains to be done, including notice to potential class members, additional expert workup, evidentiary and dispositive motion practice, and preparation for trial. All of those efforts would be wasted if the Third Circuit ultimately reverses on appeal.

There is also no downside to entering a stay. The class actions do not involve alleged physical injuries, and plaintiffs do not allege that they are facing financial hardships. Indeed, the Court has noted that the consumer claims are low value. By contrast, everyone stands to lose if the parties and the Court invest time, money and energy into a class proceeding that may be reversed or narrowed. Accordingly, a stay is the most efficient path forward for plaintiffs, potential class members, potential jurors and this Court.

## **BACKGROUND**

On February 8, 2023, this Court entered an order certifying a consumer economic-loss class with 93 subclasses, a third-party payor ("TPP") economic-loss

class with 18 subclasses, and two medical-monitoring classes spanning dozens of

jurisdictions.  (Ops. on Certification of Proposed Classes Under FRCP Rule 23 and

on Class Certification Expert Reports Under FRE 702 ("Order") at 9, ECF No.

2261.)  Multiple defendant groups timely filed petitions for permission to appeal

pursuant to Federal Rule of Civil Procedure 23(f) on February 22, 2023.  (Attached

as Exs. 1-4 to Certification of Jessica Davidson ("Davidson Cert.").)

The Court held a remote case management conference with liaison counsel

for plaintiffs and defendants on February 23, 2023, to discuss the implications of

the Order on the anticipated TPP trial.  During that conference, plaintiffs proposed

that the Court should proceed with notice and opt-out as to all class members and

schedule a series of sequential class TPP trials against different defendants

commencing in late September.  Defendants opposed this suggestion and indicated

their intention to seek a stay during the pendency of their Rule 23(f) petitions and

any resulting appeal.  At the conclusion of the conference, the Court set a briefing

schedule for this motion to stay, extended the deadline for the Rule 702/*Daubert*

motions related to liability experts in the TPP trial to March 13, 2023, held all

other deadlines related to the TPP trial in abeyance, and set a hearing for March 29,

2023, to decide the motion to stay and address any related case management issues

and deadlines.

## **ARGUMENT**

Federal courts "routinely grant stays pending decision on Rule 23(f)

petitions." *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL

11489069, at *3-4 & n.11 (N.D. Cal. Sept. 15, 2010) (granting motion to stay

proceedings pending a Rule 23(f) petition to appeal the class certification order);

*Logory v. County of Susquehanna*, No. 3:09-CV-1448, 2013 WL 5201571, at *3

(M.D. Pa. Sept. 13, 2013) (observing that "[a]fter class certification," the district

court "granted a motion to stay proceedings pending appeal to the Third Circuit");

*Walney v. Swepi LP*, No. 1:13-cv-102 (ERIE), 2020 WL 1495755, at *1 (W.D. Pa.

Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 1493601 (W.D. Pa.

Mar. 27, 2020) (noting that after plaintiffs "petitioned the Court of Appeals for the

Third Circuit for permission to appeal the decertification order," the court "granted

[p]laintiffs' stay" of proceedings "pending the Court of Appeals' decision on the

petition").

"[T]he Third Circuit has not yet articulated a standard which district courts

should follow in ruling on a motion to stay pending appeal under Rule 23(f)."

*Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 411 (D. Del. 2010).  But courts within

the Third Circuit "suggest that in determining whether to stay proceedings pending

appeal under Rule 23(f), a court should consider factors similar to those examined

in the context of a preliminary injunction motion." *Id.*  Under that standard, courts

consider four factors:  "(1) a likelihood of success on the merits; (2) that [the moving party] will suffer irreparable harm if the [stay] is denied; (3) that granting [a stay] will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief."  *Id.* at 412 (citation omitted); *see also In re Citizens Bank, N.A.*, 15 F.4th 607, 615 (3d Cir. 2021) (holding that "the standard framework for a stay pending appeal" includes the consideration of likelihood of success, "irreparable injury absent a stay," "whether a stay would substantially injure [p]laintiffs," and "public interest").

All four factors weigh in favor of a stay here.

## I.    **<u>DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS.</u>**

A stay is proper during the pendency of defendants' Rule 23(f) petitions because there is a strong likelihood that the Third Circuit will:  (1) grant defendants' Rule 23(f) petitions; and (2) agree with defendants' arguments for reversal.  *Johnson*, 269 F.R.D. at 412.

The Third Circuit grants review more liberally than other circuits, and it will do so on a number of grounds, including where the "class certification determination was erroneous," "the appeal might facilitate development of the law on class certification," or certification "risks placing inordinate . . . pressure on defendants to settle."  *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022) (citation omitted).

All of those grounds amply support a likelihood of review here. Defendants are aware of no other decision that has certified classes of this magnitude or complexity—with economic-loss classes comprising more than 100 subclasses and a medical-monitoring class that covers dozens of jurisdictions' laws. The unprecedented nature of the ruling alone indicates a likelihood that an appellate court would grant review. *Cf. Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 628 (9th Cir. 2010) (en banc) (Ikuta, J., dissenting) ("No court has ever certified a class like this one, until now."), *rev'd*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In addition, defendants' petitions highlight a number of specific errors in the certification ruling, all of which support reversal and thus support the grant of review as well.

Review is also likely because it would facilitate development of the law on class certification. No prior Third Circuit ruling has approved certification of a medical-monitoring class, and multiple courts have denied certification in cases involving far fewer subclasses. *See, e.g.*, *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 268 (3d Cir. 2011) (questioning whether certification of a medical-monitoring class could ever be proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 547-48 (S.D.N.Y. 2018) (finding that seven subclasses was "surely beyond the point at which [subclassing] must end") (alteration in original) (citation omitted). Thus, review would be justified at the very least to determine

whether this Court's ruling was correct even though it conflicts with Third Circuit precedent and class certification opinions by other courts. For this reason, too, the Third Circuit is likely to grant the petitions. *See, e.g.*, *Johnson*, 269 F.R.D. at 412 (noting that where the "case may facilitate the development of class certification case law," "the Third Circuit is likely to grant [d]efendants' [p]etition[s]").

Settlement pressure is another factor that makes review likely. This Court has frequently prioritized and encouraged settlement, going so far as to mandate retention of separate settlement counsel, over defendants' objections. (ECF No. 1821.) It also explicitly invoked the prospect of settlement in the class certification ruling. (*See* Order at 41 (noting that massive nationwide class structure "concentrates litigation efforts for both parties into fewer trials as well as promoting Class Action settlement").) The Third Circuit has made clear that when district courts expressly "nudge [the parties] toward[] settlement" in connection with class certification orders, appellate review is especially proper. *Laudato*, 23 F.4th at 261. Review is therefore supported on this ground as well.

If the Third Circuit accepts review, there is also a reasonable likelihood that it will reverse. Importantly, this Court need not believe it committed error to find that this factor is satisfied; if that were the standard, no stay would ever be granted. As one court explained, "[o]n a motion to stay pending the resolution of a Rule 23(f) petition, the movant need not demonstrate that it is more likely than not that

6

it will win on the merits"; "[i]nstead 'serious legal questions' raised in the petition

can satisfy this first prong." *Brown v. Wal-Mart Stores, Inc.*, No. 5:09-CV-03339-

EJD, 2012 WL 5818300, at *2 (N.D. Cal. Nov. 15, 2012); *see also Willcox v.*

*Lloyds TSB Bank, PLC*, No. 13-00508 ACK-RLP, 2016 WL 917893, at *6 (D.

Haw. Mar. 7, 2016) (noting that "[t]he first factor . . . weighs in favor of granting a

stay" where the defendant "has raised a serious legal question in its Rule 23(f)

[p]etition").  Other courts have noted that a stay was appropriate where defendants'

appeal "has raised questions going to the merits so serious, substantial, difficult

and doubtful, as to make them a fair ground . . . for more deliberate investigation,"

*Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-2353-DDC-TJJ, 2014 WL

5817323, at *1-5 (D. Kan. Nov. 10, 2014) (quoting *Otero Sav. & Loan Ass'n v.*

*Fed. Reserve Bank of Kan. City, Mo.*, 665 F.2d 275, 278 (10th Cir. 1981)).

    As detailed in defendants' Rule 23(f) petitions, there are multiple legal and

factual issues raised by the Court's order as to which "reasonable minds could

differ"; such issues "weigh[] in favor of a stay largely for the sake of preserving

the resources of the parties and th[e] [c]ourt." *In re Lorazepam & Clorazepate*

*Antitrust Litig.*, 208 F.R.D. 1, 5-6 (D.D.C. 2002) (noting "partial reversal is a

plausible outcome and the impact of such a reversal is potentially dispositive").

    For example, this Court's certification of two multistate medical-monitoring

classes overlooked individualized factual questions concerning causation and

7

medical necessity—two issues the Third Circuit has repeatedly held preclude class treatment of medical-monitoring claims.  (*See* Davidson Cert. Ex. 1 at 5-9; Davidson Cert. Ex. 3 at 7-12.)  As noted above, the Third Circuit has expressed skepticism that medical-monitoring classes could *ever* be certified in light of the individualized issues implicated by medical testing protocols.  *See Gates*, 655 F.3d at 268 (affirming denial of certification of medical-monitoring class under Rules 23(b)(2) and 23(b)(3)); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143, 146 (3d Cir. 1998) (affirming denial of certification of Rule 23(b)(2) medical-monitoring class).  Furthermore, this Court's medical-monitoring certification decision discounted legal variations within the certified medical-monitoring classes, despite widespread judicial recognition that there are fundamental "[d]ifferences in state laws on medical monitoring."  *See, e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (reversing certification).  (*See also* Davidson Cert. Ex. 1 at 9-11.)

This Court's certification of two nationwide economic-loss classes was also erroneous due to, among other reasons:  (1) the presence of individualized legal issues arising out of 52 jurisdictions' laws governing five separate causes of action (i.e., 260 legal frameworks) that swamp any common legal issues; (2) this Court's failure to evaluate and credit fact and expert evidence highlighting the individualized nature of issues such as reliance, causation, injury and damages; and

(3) the impossibility and impracticability of holding a trial involving so many

defendants, products and varying legal regimes.  (*See* Davidson Cert. Ex. 1 at 12-

23; Davidson Cert. Ex. 3 at 12-21.)

In short, defendants have identified serious legal questions that suggest they

have a "significant likelihood of success on appeal."  *See Earl v. Boeing Co.*, 21

F.4th 895, 899 (5th Cir. 2021) ("The substantial predominance questions raised by

[defendants'] Rule 23(f) petitions thus give [defendants] a significant likelihood of

success on appeal.").  For this reason, too, a stay would be appropriate.

## II.    <u>DEFENDANTS WILL BE IRREPARABLY HARMED ABSENT A STAY.</u>

A stay in proceedings is also warranted during the pendency of defendants'

Rule 23(f) petitions because if the proceedings continue on their current course,

defendants (and plaintiffs, too) will be irreparably harmed.  *See In re Lorazepam*,

208 F.R.D. at 6 ("proceeding headlong" while a Rule 23(f) appeal is pending "has

the very real potential of unnecessarily wasting significant resources of all parties

(potentially even those of absent class members)").

"Courts have recognized that the cost of pretrial litigation and discovery for

defending a class action lawsuit with numerous plaintiffs can amount to irreparable

hardship" because there is no way to recoup the money spent on litigation

expenses.  *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-00912, 2018 WL

2937471, at *5 (E.D. Tex. June 12, 2018); *see also Ewing Indus. Corp. v. Bob*

*Wines Nursery, Inc.*, No. 3:13-cv-931-J-39JBT, 2015 WL 12979096, at *3 (M.D.

Fla. Feb. 5, 2015) ("[C]ourts balancing the factors in the contexts of stays during

the pendency of Rule 23(f) petitions have found that wasteful, unrecoverable, and

possibly duplicative costs are proper considerations."); *Nieberding*, 2014 WL

5817323, at *4 ("Monetary losses that are not recoverable can constitute

irreparable harm.").  Here, absent a stay, defendants would be irreparably injured

for several reasons.

**First**, class-wide discovery and expert work, evidentiary and dispositive

motion practice and trial preparations will impose significant, unnecessary and

non-recoupable costs on defendants.  *See, e.g.*, *Nieberding*, 2014 WL 5817323, at

*4 ("[Defendants] will be harmed if they are required to incur significant costs in

proceedings that may result in duplicative and wasteful litigation if the Tenth

Circuit decertifies or alters the class."); *Brown*, 2012 WL 5818300, at *4

(defendants would be irreparably harmed if "[f]orc[ed] . . . to incur potentially

substantial fees and engage in discovery that may ultimately be unnecessary"; "The

sheer size of the class [of more than 22,000 individuals] makes it likely that

[d]efendant will incur significant discovery and other litigation expenses while its

appeal to the Ninth Circuit is pending."); *Gray v. Golden Gate Nat'l Recreational

Area*, No. C 08-00722 EDL, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011)

("Defendants have shown that they would suffer substantial harm if this action is

not stayed pending appeal and the [c]ourt is later reversed on the issue of class certification, resulting in substantial time and resources being spent on the litigation, particularly expert discovery, dispositive motions and trial preparation on class claims.").

The potential for waste is especially significant because every discovery effort, motion and trial preparation step will be undertaken with an eye toward a *class-wide trial* with no understanding of what that trial would look like. *See, e.g.*, *Willcox*, 2016 WL 917893, at *6 ("Because a decision by the Ninth Circuit to modify or decertify the putative class could require [defendant] to overhaul its trial strategy, failure to issue a stay could result in a significant waste of litigation costs and resources [and so] the potential for irreparable harm to [defendant] weighs in favor of a stay.").

Plaintiffs suggested on the February 23 call with the Court that trial preparation would not be wasteful because the parties can simply prepare for the previously scheduled TPP trial and convert it to a class trial. But plaintiffs have not indicated what class or subclass would have its claims resolved by such a trial. Nor could they. The MSP trial is intended to try the claims of TPPs based in Connecticut, New York, and Ohio, a proposal that implicates multiple subclasses. With respect to express warranty, for example, Connecticut law falls into subclass c (comprising 2 states' laws), while New York and Ohio fall into subclass b

11

(comprising 22 states' laws).  (*See* ECF No. 1747-2 at 1; *see also* Order at 43

(revising the TPP express warranty subclasses).  For implied warranty, by contrast,

Connecticut falls in subclass c (comprising 10 states' laws), and Ohio and New

York fall in subclass d (comprising 7 states' laws).)  (ECF No. 1747-2 at 2; Order

at 44-45.)  Of course, the states in these subclasses are not the same.  Trying

MSP's express warranty claims would also sweep up the express warranty claims

of TPPs in Arkansas, Georgia, Mississippi, Montana, Nebraska, Nevada, New

Hampshire, North Dakota, and Texas, but trying MSP's implied warranty claims

would not.  And adding plaintiffs' fraud and/or consumer-protection or other

claims to the pile would only complicate matters further, creating a complex,

unworkable Venn diagram of states and subclasses.  The result is that there would

be improper claim splitting unless the Court tries all the subclasses at once or tries

single states in isolation.  *See Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir.

1977) (claim-splitting doctrine prohibits plaintiffs from "maintain[ing] two

separate actions involving the same subject matter at the same time in the same

court and against the same defendant"); *Nafar v. Hollywood Tanning Sys., Inc.*,

339 F. App'x 216, 224 (3d Cir. 2009) (applying claim-splitting doctrine to class-

action context in which class representative proposed to drop some claims to

facilitate class treatment); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625,

634 (W.D. Wash. 2011) (plaintiff's decision to proceed in a manner that would

advance only one of two claims available to class members from other states was improper claim-splitting).  In short, plaintiffs' suggestion that a trial of MSP's individual claims could easily be converted to some sort of class or sub-class trial is not realistic.

*Second*, the costs of notice would also cause irreparable harm to defendants unless stayed.  Requiring the parties to issue notices to "millions of consumers" and "hundreds, if not thousands, of" TPPs (Order at 23) "risks compelling both parties to expend significant time, effort, and resources identifying class members as well as preparing and disseminating notice when doing so may not be necessary."  *Fernandez v. RentGrow, Inc.*, No. JKB-19-1190, 2022 WL 1782641, at *3-4 (D. Md. May 31, 2022) (surveying cases).  Indeed, due to the irreparable harm that would result from the exorbitant costs associated with notice-related matters, "[d]ecisions refusing to stay issuance of class notice in the face of a petition for permission to appeal under Rule 23(f) are '*rare*'" and "generally involve classes significantly smaller in size."  *Id.* at *3 (emphasis added) (citation omitted).  Notably, even when courts in this Circuit have denied blanket motions for stay, they have stayed class notice pending Rule 23(f) review.  *See, e.g.*, *Heinzl v. Cracker Barrel Old Country Store, Inc.*, No. 2:14-cv-1455, 2016 WL 5339410, at *1 (W.D. Pa. July 8, 2016) (ordering "that the delivery of any class action notice is" stayed pending resolution of defendants' Rule 23(f) petition); *Zeno v. Ford*

13

*Motor Co.*, 480 F. Supp. 2d 825, 828 n.1 (W.D. Pa. 2007) (noting that the court granted "a stay of the proceedings in connection with defendant seeking Rule 23(f) appellate review of the court's certification order" "with respect to sending out notice to potential class members"); *Johnson*, 269 F.R.D. at 411 (granting a stay of discovery to ascertain class membership for notice).

**Third**, allowing class notice to proceed would create significant confusion among proposed class members in the event of reversal. Certification Notice Timing, 3 Newberg & Rubenstein on Class Actions § 8:11 (6th ed. Dec. 2022 update) (reversing class certification results in "a situation that is likely to cause confusion"). For this reason, the Manual for Complex Litigation urges that "the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination." Manual for Complex Litigation § 21.28 (4th ed. 2004); *see also Johnson*, 269 F.R.D. at 413 (granting a stay of discovery related to class membership in order to avoid "any confusion of notice"); *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1077 (S.D. Cal. 2019) (observing that a stay would "avoid any confusion caused by issuing a class notice that may later need to be revised or withdrawn"); *Willcox*, 2016 WL 917893, at *7 ("[I]f the parties are obligated to disseminate class notice prior to . . . a [23(f)] decision, significant confusion could result to potential class

14

members who would be uncertain whether they needed to opt out of the class or

whether they were still included in the class action at all."); *Fernandez*, 2022 WL

1782641, at *3 ("[A] stay is supported by . . . the widespread confusion that could

be caused by a subsequently retracted or modified class notice.").

     For all of these reasons, considerations of irreparable harm also weigh

heavily in favor of a stay.

## III.   <u>A STAY WILL NOT PREJUDICE OR HARM PLAINTIFFS.</u>

     A stay is also appropriate because it would not cause any material prejudice

or harm to plaintiffs.

     Courts recognize that delay—the only conceivable harm plaintiffs could

claim here—does not suffice to deny a stay where the other factors weigh in its

favor. *See, e.g.*, *Ewing*, 2015 WL 12979096, at *3 ("Staying these proceedings

would merely maintain the status quo while the parties await a decision from the

[Third] Circuit that could possibly reshape this litigation," and "[a]ny harm from a

brief stay while the Court of Appeals considers a decision 'when juxtaposed to the

potential magnitude of a decision by the Court of Appeals on the issues before it, is

simply *de minimis*.'") (quoting *In re Lorazepam*, 208 F.R.D. at 6).  That is

particularly true here because this is not a case where "time is of the essence" in

obtaining the relief plaintiffs seek.  *Brown*, 2012 WL 5818300, at *4.  The class

actions do not involve alleged physical injuries, and no one is alleged to be facing

a financial hardship.  Instead, plaintiffs seek to "collect[] damages for past harms,"

a delay that does not cause "substantial injury."  *Id.*[1]

      If anything, plaintiffs, too, would benefit from a stay because they would be

spared the cost of further litigation proceedings that could be rendered moot by

defendants' appellate arguments.  *See Gray*, 2011 WL 6934433, at *3 ("Even if the

class certification issue is decided adversely to [p]laintiffs on appeal, [p]laintiffs

would be able to proceed directly to the merits of their individual claims.");

*Willcox*, 2016 WL 917893, at *7 ("issuance of a stay will not substantially injure

[p]laintiffs" where "a decision not to stay the case could cause harm to [p]laintiffs

in the same way that it does [defendant], by forcing [p]laintiffs to expend time and

resources preparing for an impending trial that may look vastly different depending

on the outcome of the Ninth Circuit's Rule 23(f) decision"); *In re Lorazepam*, 208

F.R.D. at 6 (recognizing that "proceeding headlong" while a Rule 23(f) appeal is

pending "has the very real potential of unnecessarily wasting significant resources

of all parties (potentially even those of absent class members)").

---

[1]    To the extent plaintiffs contend that the medical-monitoring class needs medical-monitoring relief as soon as possible, any such argument would lack support.  In urging consumers to continue taking their recalled medications in 2018, the FDA made it clear that any cancer risk posed by exposure to NDMA impurities in valsartan-containing drugs ("VCDs") would be, at most, de minimis—a theoretical risk of 1 in 8,000, at the highest dose, for the entire period of time the medications were being sold.  (ECF No. 2008 at 3 n.3; ECF No. 2009-12, Ex. 104.)  The risk is even lower for drugs containing only NDEA.  (ECF No. 2009-12, Ex. 105.)

Accordingly, the third factor also supports a stay pending Third Circuit review.

## IV.    A STAY WOULD BE IN THE PUBLIC INTEREST.

Finally, granting a stay would be in the public interest for multiple reasons.

*First*, as courts have recognized, "the public interest really is rooted in the *proper* resolution of the important issues raised in this case," and staying a matter "in order to ensure the proper legal result in this case is best aligned with that interest." *In re Lorazepam*, 208 F.R.D. at 6; *Gray*, 2011 WL 6934433, at *3. That is the case here. The public interest does not benefit from class proceedings that charge ahead when there is good ground to believe an appellate court will review and potentially reverse the order certifying the class.

*Second*, a stay would promote judicial economy by avoiding potentially unnecessary litigation costs as discussed above and by preserving the time and resources of the Court and potential jurors. *See, e.g.*, *Earl*, 21 F.4th at 900 ("[T]he public interest supports staying district court proceedings to avoid potentially wasteful and unnecessary litigation costs where, as here, the appellant has shown a substantial likelihood of success on appeal."); *Ewing*, 2015 WL 12979096, at *2 ("Denying a stay does not save resources—in fact, it may squander them."); *Brown*, 2012 WL 5818300, at *5 (noting the public "has an interest in the efficient use of judicial resources" and granting motion to stay because a stay would "ensure

17

the 'proper resolution of the important issues raised in this case' by preventing
potentially wasteful work on the part of the court and the parties while the Ninth
Circuit considers the serious legal question raised by [d]efendant's Rule 23(f)
petition") (citation omitted); *Nieberding*, 2014 WL 5817323, at \*5 ("[T]he public
interest is best served by not requiring [d]efendants to incur significant costs that
may in the end be unnecessary and duplicative.").

    ***Third***, a stay is also in the public interest because (as noted above)
proceeding with class notice at this time could unnecessarily confuse putative class
members by advising them that they are members of a certified class, only to have
certification potentially reversed in the near future.

    For all of these reasons, the fourth prong weighs in favor of a stay as well.

## **CONCLUSION**

    For the reasons set forth above and in defendants' 23(f) petitions, the Court
should stay all remaining class-related deadlines and proceedings until the Third
Circuit resolves the petitions and (if it grants them) rules on the merits of the
appeal.

Dated: February 27, 2023          Respectfully submitted,

                           By: */s/ Jessica Davidson*
                           Jessica Davidson (DC Bar No. 457021)
                           (Admitted to Practice in Maryland and the
                           District of Columbia; Not Admitted in New
                           York)
                           *Liaison Counsel for Manufacturer*

*Defendants*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-2588
jessica.davidson@skadden.com

*Attorney for Zhejiang Huahai
Pharmaceutical Co., Ltd., Huahai U.S.,
Inc., Prinston Pharmaceutical Inc., and
Solco Healthcare U.S., LLC*

Lori G. Cohen, Esq.
GREENBERG TRAURIG, LLP
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE,
Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

Gregory E. Ostfeld
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Brian H. Rubenstein
1717 Arch Street, Suite 400
Philadelphia, Pennsylvania
Tel: (215) 988-7864

19

Fax: (214) 689-4419
rubensteinb@gtlaw.com

*Attorneys for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Actavis Pharma, Inc.,
and Actavis LLC*

BUCHANAN INGERSOLL
& ROONEY PC
Jonathan D. Janow
Jason R. Parish
1700 K Street NW
Suite 300
Washington, DC 20006
Tel.: (202) 452-7940
Fax: (202) 452-7989
Jonathan.Janow@bipc.com
Jason.Parish@bipc.com

*Counsel for Albertson's LLC*

/s/ Devora W. Allon, P.C.
KIRKLAND & ELLIS LLP
Devora W. Allon, P.C.
Jay P. Lefkowitz, P.C.
Alexia R. Brancato
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-4970
Fax: (212) 446-6460
Devora.allon@kirkland.com
Lefkowitz@kirkland.com
Alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals
Ltd. and Torrent Pharma Inc.*

20

**HARDIN KUNDLA MCKEON & POLETTO**

*/s/ Janet L. Poletto, Esq.*
Janet L. Poletto, Esq.
NJ Attorney ID 024871980
Robert E. Blanton Jr., Esq.
NJ Attorney ID 028392012
673 Morris Ave.
Springfield, New Jersey 07081
Tel: (973) 912-5222
Fax: (973) 912-9212
Email: jpoletto@hkmpp.com
Email: rblanton@hkmpp.com

*Attorneys for Hetero USA Inc.*

**DORSEY & WHITNEY LLP**

By   */s/ Jennifer Coates*
    Jennifer Coates (MN #0388959)
    coates.jennifer@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

*Attorneys for Defendant
OptumRX and Optum, Inc.*

*/s/ Clem C. Trischler*
Clem C. Trischler
Jason M. Reefer
Frank H. Stoy
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP

One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
Tel: (412) 263-2000
cct@pietragallo.com
jmr@pietragallo.com
fhs@pietragallo.com

*Member of Defendants' Executive
Committee and Counsel for Mylan
Laboratories Ltd., Mylan
Pharmaceuticals Inc., and Mylan N.V.*

BARNES & THORNBURG LLP
Sarah E. Johnston, *Liaison Counsel for
Retailer Defendants*
Kristen L. Richer
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
Fax: (310) 284-3894
sarah.johnston@btlaw.com
Kristen.Richer@btlaw.com

Kara M. Kapke
11 S Meridian St.
Indianapolis, Indiana 46204
Tel: (317) 236-1313
Fax (317) 231-7433
kara.kapke@btlaw.com

*Attorneys for CVS Pharmacy, Inc.
(incorrectly named as CVS Health
Corporation), Rite Aid Corporation,
Walgreen Co. (incorrectly named as
Walgreens Co.), and Walmart Inc.
(incorrectly named as Walmart Stores,
Inc.)*

Matthew D. Knepper
A. James Spung
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500
Matt.knepper@huschblackwell.com
James.spung@huschblackwell.com

*Counsel for Express Scripts, Inc.*

D'Lesli Davis
Ellie Norris
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Tel.: (214) 855-8000
dlesli.davis@nortonrosefulbright.com
ellie.norris@nortonrosefulbright.com

*Counsel for McKesson Corporation*

*/s/ John P. Lavelle, Jr.*
John P. Lavelle, Jr.
NJ Attorney ID 004891989
502 Carnegie Center
Princeton, New Jersey 08540
Tel.: (609) 919-6688
Fax: (609) 919-6701
Email: John.lavelle@morganlewis.com

*/s/ John K. Gisleson*
John K. Gisleson
One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA  15219-6401
(412) 560-3300 (telephone)
(412) 560-7001 (facsimile)
john.gisleson@morganlewis.com

*Attorneys for Aurobindo Pharma Ltd.,*
*Aurobindo Pharma USA, Inc., and*
*Aurolife Pharma LLC*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Luke J. Bresnahan
Emily G. Tucker
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel.: (202) 624-2500
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com
Email: lbresnahan@crowell.com
Email: etucker@crowell.com

*Counsel for Cardinal Health, Inc.*

**LEWIS BRISBOIS BISGAARD &**
**SMITH LLP**
/s/ Walter H. Swayze, Esq.
Walter H. Swayze, Esq.
Andrew F. Albero, Esq.
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Tel: (215) 977-4100
Fax: (215) 977-4101
Email: Pete.Swayze@lewisbrisbois.com
Email: andrew.albero@lewisbrisbois.com

*Attorneys for Camber Pharmaceuticals,*
*Inc., and The Kroger Co.*

HILL WALLACK LLP
/s/ Eric Abraham
Eric I. Abraham, Esq.

24

William P. Murtha, Esq.
HILL WALLACK, LLP
21 Roszel Road,
Princeton, NJ 08543-5226
(609) 734-6395
eabraham@hillwallack.com
wmurtha@hillwallack.com

*Attorneys for Hetero Drugs Ltd. and*
*Hetero Labs Ltd.*

ULMER & BERNE LLP
/s/ Jeffrey D. Geoppinger
Jeffrey D. Geoppinger
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-2409
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

*Counsel for AmerisourceBergen*
*Corporation*

25

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 27, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system, which will

send a notice of electronic filing to all CM/ECF participants in this matter.

*/s/ Jessica Davidson*
Jessica Davidson (DC Bar No. 457021)
(Admitted to Practice in Maryland and the
District of Columbia; Not Admitted in New
York)