# EXHIBIT 2

No. __-_____

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN
PRODUCTS LIABILITY LITIGATION

On Petition for Permission to Appeal from the
United States District Court for the
District of New Jersey
Hon. Robert B. Kugler, District Judge
Case No. 1:19-md-02875-RBK-SAK

**Defendant Pharmacies' Petition for Permission to Appeal
Pursuant to Federal Rule of Civil Procedure 23(f)**

Kristen L. Richer
*Counsel of Record*
Sarah E. Johnston
Kara Kapke
Kian J. Hudson
BARNES & THORNBURG LLP
2029 Century Park East,
Suite 300
Los Angeles, CA 90067
*Counsel for CVS Pharmacy,
Inc., Rite Aid Corporation,
Walgreen Co., and Walmart Inc.*

Matthew D. Knepper
A. James Spung
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
*Counsel for Express Scripts, Inc.*

Jonathan D. Janow
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
*Counsel for Albertson's LLC*

Walter H. Swayze
Andrew F. Albero
LEWIS BRISBOIS
BISGAARD & SMITH LLP
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
*Counsel for Kroger Co.*

Jennifer Coates
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
*Counsel for OptumRX and
Optum, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and L.A.R. 26.1.0, Defendant Pharmacies provide the following corporate disclosure statements:

- Albertson's LLC is a wholly owned subsidiary of Albertson's Safeway LLC, which is wholly owned by Albertsons Companies, Inc. No publicly held corporation owns 10% or more of Albertson's LLC stock.

- CVS Pharmacy, Inc. is a wholly owned subsidiary of CVS Health Corporation. CVS Health Corporation has no parent corporation, and no publicly held corporation owns 10 percent or more of CVS Health Corporation's stock.

- Express Scripts, Inc. is a wholly owned subsidiary of Evernorth Health, Inc. (f/k/a Express Scripts Holding Company). Evernorth Health, Inc. is a wholly owned subsidiary of The Cigna Group (f/k/a Cigna Corporation), a publicly held company that indirectly owns more than 10% of Express Scripts, Inc.'s and Evernorth Health, Inc.'s stock. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

i

- Kroger Co. has no parent corporation, and no publicly held corporation owns 10% or more of Kroger Co.'s stock.

- Optum RX, Inc. and Optum, Inc. are both indirect, 100%-owned subsidiaries of UnitedHealth Group Incorporated. UnitedHealth Group Incorporated is a publicly held corporation that does not have a parent company, nor does any other publicly held corporation own 10% or more of UnitedHealth Group Incorporated's stock.

- Rite Aid Corporation is a publicly traded corporation. Rite Aid Corporation does not have any parent corporation, and no publicly held corporation owns 10 percent or more of Rite Aid Corporation's stock.

- Walgreen Co. is a wholly owned subsidiary of Walgreens Boots Alliance, Inc., a holding company incorporated in Delaware that has issued shares to the public which are listed on NASDAQ (WBA). Walgreens Boots Alliance, Inc. has no parent company, and no publicly held corporation owns more than 10% of its stock.

- Walmart Inc. has no parent corporation, and no publicly held corporation owns 10% or more of Walmart Inc.'s stock.

ii

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF CONTENTS ........................................................iii

TABLE OF AUTHORITIES .....................................................iv

INTRODUCTION................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND............................... 5

QUESTIONS PRESENTED ................................................. 10

RELIEF SOUGHT.............................................................. 11

REASONS FOR GRANTING THE PETITION................................. 11

I.    The District Court Circumvented Individualized *Legal* Issues that Predominate Here By Improperly "Grouping" Together States That Have Significantly Different Substantive Rules ................. 16

II.   The District Court Circumvented Individualized *Factual* Issues that Predominate Here By Improperly Refusing To Decide the Viability of Plaintiffs' "Zero Value" Damages Theory ..................22

CONCLUSION .............................................................. 26

CERTIFICATE OF COMPLIANCE...........................................27

CERTIFICATE OF VIRUS SCAN AND IDENTICAL COPIES ...........28

CERTIFICATE OF BAR MEMBERSHIP .............................. 29

ORDER FROM WHICH APPEAL IS SOUGHT................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, No. 20-
3528, 2021 WL 3612155 (3d Cir. Aug. 16, 2021) ......................... 18, 19

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................... 6

*Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970 (5th Cir. 2000) ................. 13

*In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012 (7th Cir.
2002) ........................................................................................... 18, 21

*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) ...................... 3, 18

*City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112
(3d Cir. 1993) ............................................................................... 16, 17

*Cole v. Gen. Motors Corp.*, 484 F.3d 717 (5th Cir. 2007) .......................... 6

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) .............................. *passim*

*Georgine v. Amchem Prod., Inc.*, 83 F.3d 610 (3d Cir. 1996) ................... 6

*Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175
(3d Cir. 2014) ................................................................... 4, 10, 15, 18

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305 (3d
Cir. 2008) ...................................................................................... 24, 25

*Laudato v. EQT Corp.*, No. 22-1224, 2022 WL 3081871 (3d
Cir. Aug. 3, 2022) ............................................................................... 14

*Lexington Nat. Ins. Corp. v. Ranger Ins. Co.*, 326 F.3d 416
(3d Cir. 2003) ...................................................................................... 17

*Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) .................................... 11

*Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467 (3d
Cir. 2018) .............................................................................................. 25

iv

## Cases [cont'd]

*Ortiz v. Fibreboard Corp.,* 527 U.S. 815 (1999) ................................ 17, 18

*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) ........................... 25

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ............. 12, 13

*Taha v. Cnty. of Bucks*, 862 F.3d 292 (3d Cir. 2017) .............................. 22

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .......................... 2, 17

*Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314
    (3d Cir. 2016) ....................................................................... 25

## Statutes

28 U.S.C. § 1292 ................................................................... 11

28 U.S.C. § 2072 ................................................................... 18

## Other Authorities

Federal Rule of Civil Procedure 23 ................................................ 3, 6, 11

v

## INTRODUCTION

This case is about widely prescribed blood-pressure prescription drugs containing valsartan (VCDs) that were recalled several years ago due to trace amounts of certain nitrosamines, chemicals that can increase cancer risk at sufficiently high exposures—though here the FDA found the exposures and risks were low and advised consumers to continue to take these VCDs. *See* ECF 2012 at 1–3. The VCDs were manufactured by different companies using various production methods, sold by different pharmacies in various states, and taken by different consumers in various dosages and durations. *See id.* Following the recalls, Plaintiffs filed lawsuits raising an assortment of state-law claims against three groups of Defendants—Manufacturers, Wholesalers, and Pharmacies.* ECF 2261 (Op.) 9–10. The lawsuits were consolidated in this multidistrict litigation, and the district court issued an Opinion and Order certifying economic-loss and medical-monitoring classes—which it subdivided into more than one hundred subclasses, purportedly "according to the variation in state law standards." Op. 9; *see also* ECF 2262 (Order) 3–4.

---

* Other parties and the district court sometimes refer to Pharmacies as "retailers," but Pharmacies provide the *service* of dispensing prescriptions and are not mere sellers of goods. *See* ECF 523 at 15–18.

1

The present Petition, filed on behalf of Defendant Pharmacies, seeks permission to appeal the district court's class-certification Order. Other Defendants have filed Petitions detailing the district court's numerous errors and why its Opinion and Order should be reviewed. Defendant Pharmacies adopt these points and focus on two issues of particular concern to Pharmacies—the district court's unlawful suppression of state-law differences, and its improper refusal to resolve an issue on which class certification turns. These errors violate precedent and have widespread significance. They thus call for this Court's review.

Because the class action procedure authorized by Federal Rule of Civil Procedure 23 "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," federal law disallows its use unless certain strict requirements are met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation marks and citation omitted). For example, because Rule 23 is a court-prescribed rule of procedure that cannot be used "to 'abridge, enlarge or modify any substantive right,'" class actions must preserve *all* substantive state-law rules. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (quoting 28 U.S.C. § 2072(b)). Further, because Rule 23 "'does not set forth a mere

pleading standard'" but requires the plaintiff to "'affirmatively demonstrate his compliance,'" it obligates trial courts to conduct a "'rigorous analysis'" that "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Comcast*, 569 U.S. at 33–34 (quoting *Wal-Mart*, 564 U.S. at 350–51). The decision below violates both requirements.

First, it contravenes this Court's instruction that "the dictates of state law may not be buried under the vast expanse of a federal class action." *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1007 (3d Cir. 1986). Because Plaintiffs have brought claims under dozens of states' varying laws, common questions cannot "predominate" over individualized ones. Fed. R. Civ. P. 23(b)(3). Plaintiffs, employing a labyrinthine series of tables, attempted to salvage certification by identifying for each claim a few issues on which state law varies (e.g., pre-suit notice) and sorting states into a handful of groups that purportedly take similar positions. Yet these groupings disregard state-law nuances on these issues and ignore additional issues (e.g., limitations periods) on which states also differ. For its part, the district court did not even attempt to evaluate these groups' *validity*—i.e., whether they indeed capture all the relevant

state-law differences. Instead, it simply "'cite-check[ed]'" the parties to "confirm[] or correct[]" the states' *assignment* to each group. Op. 12, 40. The district court's groupings thus do not accurately reflect "the various states' laws," *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) (quotation marks and citation omitted). This Court should therefore review and reverse the district court's decision, lest it encourage other courts to unlawfully suppress state-law differences to streamline—and impose settlement pressure on—complex litigation.

Second, even though Defendants explained that Plaintiffs failed to establish the validity of the *only* damages theory under which damages would be "capable of measurement on a classwide basis," the district court simply refused to resolve that dispositive issue. *Comcast*, 569 U.S. at 34. It explained that it did "NOT decide[] the predominance requirement … based on its acceptance of either of the proposed economic loss theories," on the ground that "choosing one theory over the other drives a decision as to predominance that bounds too deeply into the province of the factfinder." Op. 23. The district court thus committed the very same error the Supreme Court corrected in *Comcast*: "By refusing to entertain arguments against [Plaintiffs'] damages model that bore on

4

the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, [it] ran afoul of [the Court's] precedents requiring precisely that inquiry." *Comcast*, 569 U.S. at 34. This error threatens to unsettle well-established law on courts' obligations to rigorously analyze issues under Rule 23. It too warrants review and reversal.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs sought certification of three broad classes of claims—consumer claims for medical monitoring, third-party payor claims for economic loss, and consumer claims for economic loss. Op. 9–10. The medical monitoring and consumer economic loss classes include claims against Defendant Pharmacies, but the Opinion here somehow entirely disregards pharmacy-specific issues—including the national near-consensus that pharmacies are not strictly liable for dispensing defective prescription drugs because pharmacies provide the *service* of dispensing prescriptions and are not mere sellers of goods. *See* ECF 523 at 15–18. The other Defendants' Petitions correctly identify the numerous problems with the district court's certification of medical monitoring classes, which, again, this Petition expressly adopts. This Petition

focuses on the consumer economic loss class, which encompasses three
types of causes of action against Defendant Pharmacies (implied
warranty, state consumer protection statutes, and unjust enrichment),
arising under the laws of dozens of jurisdictions, for economic losses
purportedly caused by Plaintiffs' purchases of VCDs containing trace
amounts of nitrosamines. Op. 9–10.

Plaintiffs sought certification of the consumer economic loss class
under Rule 23(b)(3), which among other things requires showing that
"questions of law or fact common to class members predominate over any
questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); *see*
Op. 18. And given the "different rules governing the whole range of issues
raised by the plaintiffs' claims," Plaintiffs "cannot conceivably meet" Rule
23's "predominance requirement." *Georgine v. Amchem Prod., Inc.*, 83
F.3d 610, 627 (3d Cir. 1996) (rejecting class certification in part on these
grounds), *aff'd sub nom. Amchem Prod., Inc. v. Windsor*, 521 U.S. 591,
624 (1997) ("Differences in state law ... compound the[] disparities"
among plaintiffs.); *see also, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717,
724–25 (5th Cir. 2007).

6

To sidestep this obvious problem, Plaintiffs subdivided the consumer economic loss class into *93 separate subclasses* defined and explained by a dizzying array of tables running well over one hundred pages. *See* ECF 1748 at 55; ECF 1748-5; ECF 1748-6. These subclasses reflected Plaintiffs' efforts to group states "according to the variation in state law standards for each of" their causes of action. Op. 9. With respect to their implied warranty claims, for example, Plaintiffs sorted states along two dimensions (creating four discrete groups)—whether the state requires privity and whether it requires pre-suit notice. *See* ECF 1748 at 86–92; ECF 1748-6 at 17–29. Similarly, Plaintiffs subclassed their unjust enrichment claims by sorting states along three dimensions (creating six discrete groups)—whether the state makes unjust enrichment available only as an alternative form of relief, whether it requires the plaintiff to show that it directly provided the defendant a benefit, and whether it requires the plaintiff to show a so-called "normal" level of unjust conduct on the part of the defendant or instead imposes a "higher" burden on the plaintiff. *See* ECF 1748 at 104–06; ECF 1748-6 at 125–38.

Defendants pointed out to the district court that Plaintiffs' proposed subclasses gloss over key differences among the various states' laws, and

7

that courts confronting similarly diverse state-law claims have consistently denied class certification. *See* ECF 2008 at 21–40; ECF 2011 at 16–17; ECF 2069-3 at 4–8. Plaintiffs' implied warranty groupings, for example, mix states with different statutes of limitations and different definitions of merchantability. *See* ECF 2008 at 22–29; ECF 2069-3 at 6. Plaintiffs' unjust enrichment groupings likewise disregard key state-law variations, such as by sorting states' standards for unjust conduct into two coarse groups ("regular" and "higher") despite the many different—and nuanced—approaches states take to this issue. *See* ECF 2008 at 38–40; ECF 2011 at 16–17.

Beyond these individualized *legal* issues, Plaintiffs' consumer economic loss class suffers from individualized *factual* issues that further defeat predominance and thus separately preclude class certification. These individualized issues include damages: The degree to which the trace nitrosamines reduced the value of the VCDs a particular Plaintiff purchased—and thus the existence and extent of "economic loss"—depends among other things on the type, dosage, and duration of the VCDs at issue. Plaintiffs again sought to evade the obvious problem by mischaracterizing state law. Relying on a single expert, they argued that

"[p]roof of damages is no impediment to class certification," on the theory that *all* of the VCDs Plaintiffs purchased had *zero value*. ECF 1748 at 66–69. And Defendants again pointed out Plaintiffs' error: Plaintiffs "made no effort to demonstrate that any state, much less every state, has adopted [this] measure of damages." ECF 2008 at 59.

Despite these and many other problems foreclosing class certification under Rule 23, the district court certified dozens of subclasses against Defendant Pharmacies—all without specifically discussing Defendant Pharmacies at all. Nor did it acknowledge the variances in state law that Plaintiffs ignored, or address the numerous decisions denying class certification in similar circumstances. It instead confined itself to "scrutinizing the caselaw in each jurisdiction … and then confirming or correcting plaintiffs' proposed subclasses" as to the handful of issues Plaintiffs addressed. Op. 12; *see also* Op. 40 ("The Court views its 'legal cite-checking' initiative as a key pathway to confirm that predominance has been deconstructed properly."). And the district court sidestepped the zero-value issue as well: It expressly refused to decide the validity of Plaintiffs' damages theory, insisting that to do so would intrude "too deeply into the province of the factfinder." Op. 23.

# QUESTIONS PRESENTED

Along with the questions raised in the Petitions filed by the other Defendants, the decision below presents the following questions of law for which this Court should grant appellate review:

1. When a plaintiff seeks to establish predominance by "grouping" state-law claims from different jurisdictions, does Rule 23 require—as, for example, this Court held in *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) (quotation marks and citations omitted)—that the plaintiff show that its proposed groupings faithfully and completely reflect "the various states' laws"?

2. When a question of state law bears "on the propriety of class certification," does Rule 23 require—as, for example, the U.S. Supreme Court held in *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)—that the district court resolve that question even though it would "also be pertinent to the merits determination"?

## RELIEF SOUGHT

Defendant Pharmacies petition for permission to appeal from the district court's class-certification Order under Federal Rule of Civil Procedure 23(f) and 28 U.S.C. § 1292(e). The Court should accept this appeal and reverse the Order.

## REASONS FOR GRANTING THE PETITION

Congress has authorized the Supreme Court to promulgate rules "to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for," 28 U.S.C. § 1292(e), and in 1998 the Court exercised this authority to promulgate Rule 23(f), which authorizes a court of appeals to "permit an appeal from an order granting or denying class-action certification," Fed. R. Civ. P. 23(f); *see also Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1709 (2017) (describing history). As compared to discretionary interlocutory appeals under Section 1292(b), Rule 23(f) removes "the power of the district court to defeat any opportunity to appeal," and thereby "provide[s] significantly greater protection against improvident certification decisions than § 1292(b) alone." *Id.* at 1709–10 (quotation marks and citation omitted).

Applying Rule 23(f), this Court has "identified several circumstances in which appellate review is appropriate, including" (1) "when class certification risks placing 'inordinate … pressure on defendants to settle,'" (2) "when the appeal might 'facilitate development of the law on class certification,'" and (3) "when the district court's class certification determination was erroneous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 376–77 (3d Cir. 2013) (ellipsis in original; quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 164–65 (3d Cir. 2001)).

As the other Defendants' Petitions explain, the certification decision here risks placing significant settlement pressure on Defendants. Given the district court's failure to grapple with the nigh-impossibility of trying this case—particularly as to Defendant Pharmacies, who are largely ignored in the district court's certification decision—it is apparent that the district court expects its Order will impose sufficient pressure to settle. *See, e.g.*, Op. 41 (insisting that class certification would "promot[e] Class Action settlement"); ECF 1848, Jan. 5, 2022 Hr'g Tr. 20:12–22:20 (requiring parties to retain separate counsel to discuss settlement). Indeed, at one point when discussing Defendant

12

Pharmacies specifically, the district court suggested that "given the size of some of the defendants, it [settlement] may not even be material to your bottom line." ECF 1903, Feb. 2, 2022 Hr'g Tr. 33:14–16. As this Court has recognized, such settlement pressure alone justifies appellate review. *Rodriguez*, 726 F.3d at 376.

Appellate review is also justified by the district court's complete failure to conduct a "'rigorous analysis'" of the propriety of certifying classes of claims against Defendant Pharmacies. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)); *see also, e.g.*, *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000) ("[A] court should certify a class on a claim-by-claim basis, treating each claim individually…."). Even while certifying dozens of subclasses against Defendant Pharmacies, the district court's Opinion scarcely mentions Defendant Pharmacies and repeatedly conflates them with other Defendants. *See, e.g.*, Op. 22 (holding that, even though Defendant Pharmacies are not responsible for any contamination, and even though it dismissed all negligence claims against them, the "predominance standard has been met" on the theory that "there is a singular pleaded conduct—defendants' contamination of

13

VCDs"). Because its Opinion lacks any analysis—much less rigorous analysis—as to Defendant Pharmacies, the district court's certification of the classes against Defendant Pharmacies is erroneous. It thus warrants appellate review and summary reversal on this ground alone. *See Laudato v. EQT Corp.*, No. 22-1224, 2022 WL 3081871, at *2 (3d Cir. Aug. 3, 2022) (summarily vacating class-certification order "[b]ecause the District Court did not conduct a sufficiently rigorous analysis to determine whether [the plaintiff] satisfied Rule 23 and was thus entitled to class certification").

Appellate review is especially important here because the district court's decision threatens to seriously disrupt settled class-action law. To certify subclasses of claims against Defendant Pharmacies, the district court relied on two notions: (1) that claims arising under different states' laws can be grouped together for certification despite important differences in the governing state-law rules; and (2) that district courts may decline to resolve legal questions on which class certification turns when answering such questions would intrude "too deeply into the province of the factfinder." Op. 23. This Court should confirm that binding precedent forecloses each of these notions.

14

First, the district court's artificial "groupings" of states—which are essential to its predominance determination and unworkable even on their own terms—disregard significant variations in state rules and thus fail to faithfully reflect "'the various states' laws.'" *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) (quoting *In re Prudential*, 148 F.3d 283, 315 (3d Cir. 1998)). If this decision is permitted to stand, future putative class plaintiffs will employ it to argue that different state law rules can be improperly blended for the sake of class certification. This Court should make clear that state law must be respected in class certification just as in other contexts.

Second, the district court refused to confront Defendants' argument that Plaintiffs have failed to show predominance because they lack any legally permissible damages model "capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34; *see* ECF 2008 at 56–62. Neither Plaintiffs nor the district court dispute that Plaintiffs have a classwide damages theory *only* if state law were to assign *zero value* to the drugs they purchased. *See id.*; Op. 23 (acknowledging Defendants' argument "that if VCDs did have consumer value, then plaintiffs' legal claims of breach of warranty, fraud, etc. cannot possibly dominate across all

15

consumers' … demand for full purchase price damages"). Defendants explained why Plaintiffs' "zero value" damages theory is not legally permissible under state law, *see* ECF 2008 at 56–62, but rather than address Defendants' contention, the district court declined to resolve the issue, on the ground that doing so "bounds too deeply into the province of the factfinder," Op. 23. By "refusing to entertain arguments against [a] damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination," the district court again directly violated binding precedent. *Comcast*, 569 U.S. at 34. Its decision thus threatens to undermine the "rigorous analysis" requirement and suggest that class certification can be based on unlawful damages theories—which, as the Supreme Court has noted, would "reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Comcast*, 569 U.S. at 36. This Court should therefore grant appellate review and reverse on this ground as well.

## I. The District Court Circumvented Individualized *Legal* Issues that Predominate Here By Improperly "Grouping" Together States That Have Significantly Different Substantive Rules

The federalism principles underlying our Constitution require that "federal courts presiding over diversity cases must apply the substantive

16

law of the state whose laws govern the action." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 122 (3d Cir. 1993) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938)). This means federal courts are "not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court," but must "permit state courts to decide whether and to what extent they will expand state common law." *Id.* at 123 (quotation marks and citations omitted). The federal court's "role is to apply the current law of the appropriate jurisdiction, and leave it undisturbed." *Id.*; *see also, e.g.*, *Lexington Nat. Ins. Corp. v. Ranger Ins. Co.*, 326 F.3d 416, 420 (3d Cir. 2003) ("[A] federal court in a diversity case should be reluctant to expand the common law.").

"Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,'" these *Erie* principles apply with equal force to the class-certification context. *Wal-Mart*, 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845 (1999) ("'...Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law.'"

(quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945)). A federal

court that disregards substantive state law to certify a class violates *Erie*

and unlawfully "abridge[s] … substantive right[s]." 28 U.S.C. § 2072(b).

In short, variation in state law is a "fundamental aspect of our

federal republic and must not be overridden in a quest to clear the queue

in court." *In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1020 (7th Cir.

2002); *see also id.* at 1015 (reversing class certification and noting state-

law "differences have led us to hold that other warranty, fraud, or

products-liability suits may not proceed as nationwide classes"). For this

reason, any "grouping" of states for class-certification purposes must be

based on "'comprehensive analyses of the various states' laws'" to ensure

the groupings faithfully reflect *every* relevant difference in state law.

*Grandalski*, 767 F.3d at 183 (quoting *In re Prudential*, 148 F.3d at 315);

*see also In re Sch. Asbestos Litig.*, 789 F.2d 996, 1007 (3d Cir. 1986) ("The

parties' rights under state substantive law must be respected, and if that

is not possible in a class action, then that procedure may not be used.");

*Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, No. 20-3528, 2021 WL

3612155, at *4 (3d Cir. Aug. 16, 2021) (mem. decision) (affirming class-

certification denial because "Plaintiffs have not shown how various

18

'elements of these common law claims are substantially similar and
[that] any differences fall into a limited number of predictable patterns'"
(quoting *In re Prudential*, 148 F.3d at 315)).

Here, the district court acknowledged "the variability of the legal
standards for each claim," Op. 22, and cited no decision granting class-
certification in similar circumstances. It even conducted its analysis
using Defendants' appendices, which show that courts similarly
confronting numerous and varied state-law claims have denied class
certification on this basis. *See* Op. Appendix G-1–G-2 (noting that
"variations" in state law "have led numerous courts to deny certification
of proposed multi-state implied warranty classes"); Op. Appendix J-1–J-
4 (collecting numerous cases holding that "unjust enrichment nuances …
are the very sorts of variations that have led to the denial of class
certification in other cases").

Denying certification is precisely what the district court should
have done here. Instead, it attempted to "reduce the overall variability of
individualized plaintiffs' legal issues," Op. 22, by accepting Plaintiffs'
"groupings"—adjusted for the district court's "'legal cite-checking,'" Op.
40. And its cite-checking simply sought to "confirm[] or correct[]," Op. 12,

19

to *which* groups the various states were assigned; it did *not* evaluate whether the groupings themselves were valid in the first place. That is, it did not consider whether the handful of groups created for each cause of action accurately capture *all* of the various ways state law differs.

As Defendants explained, these groupings fail to reflect the nuance and diversity of state law. With respect to Plaintiffs' implied warranty claims, for example, the district court accepted Plaintiffs' proposal to group states by privity and pre-suit notice, ignoring that states also vary in terms of the definition of merchantability and the rules governing limitations periods. *See generally* Op. Appendix G-1–G-56.

Similarly, the district court accepted Plaintiffs' unsupported contention that "there are only two different levels of burden for unjust enrichment claims," despite its apparent acknowledgment of "the wide variance in how states consider a defendant's conduct in unjust enrichment claims"—including the "additional unjust enrichment nuances identified" by Defendants. Op. Appendix J-1; *see also* ECF 2008 at 38–40; ECF 2011 at 16–17. The district court, for example, placed the District of Columbia in the "normal" burden group even while acknowledging "conflicting cases" and "the *unique factual nature* of

20

unjust enrichment claim[s]," and placed Idaho and Missouri into the "normal" burden group even though these states have different standards: In Idaho "[a]ll that need be shown is that the defendant obtained something of value to which he was not entitled, to the detriment of another," while Missouri requires that "*injustice results* from the retention of the benefit." Op. Appendix J-7, J-8, J-14 (emphasis added; quotation marks and citations omitted)). Rather than cram the unjust enrichment standards of dozens of different states into two artificial categories ("normal" and "higher"), the district court should have followed other courts in simply denying class certification.

The district court presumably sought to simplify this extremely complex litigation. But respect for the principles of federalism—and the rights of the parties—requires federal courts to enforce the various substantive rules state law imposes, whatever they are. "Tempting as it is to alter doctrine in order to facilitate class treatment, judges must resist so that all parties' legal rights may be respected." *In re Bridgestone*, 288 F.3d at 1020–21 (citing *Amchem*, 521 U.S. at 613). This Court should grant this Petition and reiterate that Rule 23 is not a license to force state law into a procrustean bed.

## II. The District Court Circumvented Individualized *Factual* Issues that Predominate Here By Improperly Refusing To Decide the Viability of Plaintiffs' "Zero Value" Damages Theory

This Court and the Supreme Court have been clear that courts considering class-certification motions must determine whether "damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34. After all, the "'predominance requirement applies to damages as well, because the efficiencies of the class action mechanism would be negated if [q]uestions of individual damage calculations ... overwhelm questions common to the class.'" *Taha v. Cnty. of Bucks*, 862 F.3d 292, 308–09 (3d Cir. 2017) (alteration and ellipsis in original; quoting *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016)). So where, as here, damages are measurable on a classwide basis *only* if Plaintiffs' damages theory is legally viable, Rule 23 requires that "courts *must* conduct a 'rigorous analysis' to determine whether that is so." *Comcast*, 569 U.S. at 35 (emphasis added).

The faults with Plaintiffs' damages theory are many, as the other Defendants' Petitions explain. Further, with respect to the unjust enrichment claims brought against Defendant Pharmacies, the district court allowed Plaintiffs to offer the nonsensical expert testimony that

22

pharmacy *profits* from dispensing VCDs are the equivalent of the *purchase price* consumers paid—even though it acknowledged that model is "possibly flawed because the data [regarding Defendant Pharmacies' cost of the drug and reimbursements from third parties] are not available or forthcoming." Op. 88. Fundamentally, Plaintiffs' overarching damages theory is that the VCDs they purchased all had *zero value* as a matter of law. And as Defendants have pointed out, some courts have expressly *rejected* such a theory. *See* ECF 2008 at 58–60 (citing, *inter alia, Andren v. Alere, Inc.*, No. 16cv1255, 2018 WL 1920179, at *6 (S.D. Cal. Apr. 24, 2018), and *In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 68–69 (S.D.N.Y. 2002)).

Plaintiffs' inherently flawed zero-value damages theory is essential to their class-certification arguments, for it is the *only* way Plaintiffs can contend that damages are measurable on a classwide basis. The district court, however, categorically refused to decide whether Plaintiffs could, in fact, proceed with a zero-value economic-loss theory. It explained that it "has "NOT decided the predominance requirement of any *Rule 23(b)(3)* class based on its acceptance of either of the proposed economic loss theories," on the ground that "choosing one theory over the other drives

23

a decision as to predominance that bounds too deeply into the province of the factfinder." Op. 23.

That reasoning violates *Comcast*—which the Opinion never even cites—and "flatly contradicts [the Supreme Court's] cases requiring a determination that Rule 23 is satisfied, *even when that requires inquiry into the merits of the claim*." *Comcast*, 569 U.S. at 35 (emphasis added; citing *Wal–Mart*, 564 U.S. at 351–52 & n.6). Under the "certify now, decide later" approach the district court took here, "at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id.* at 36. "Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity," and this Court should firmly reject it. *Id.*

Indeed, review here is necessary to ensure compliance with this Court's own decisions, which have likewise repeatedly held that "[a]n overlap between a class certification requirement and the merits of a claim *is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met*." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008)

24

(emphasis added). As this Court has explained, the "district court 'cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—*including disputes touching on elements of the cause of action.*'" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484 (3d Cir. 2015) (emphasis added; quoting *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 591 (3d Cir. 2012)); *see also, e.g.*, *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 482 (3d Cir. 2018) (explaining that Rule 23 "calls for a rigorous analysis that usually requires courts to make factual findings and legal conclusions that overlap the underlying merits of the suit"); *Williams v. Jani-King of Philadelphia Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (noting that "addressing predominance '[f]requently ... entail[s] some overlap with the merits of the plaintiff's underlying claim'" (alterations in original; quoting *Wal–Mart*, 131 S.Ct. at 2551).

The Supreme Court and this Court have been clear that when class-certification turns on a legal question, district courts *must* answer it. This rule ensures that classes are certified only where they satisfy Rule 23's requirements. Because the district court avowedly failed to do so here, its decision should be reversed.

25

# CONCLUSION

Defendant Pharmacies respectfully request that this Court grant the Petition to appeal from the district court's class-certification Order and that it reverse the decision below.

Respectfully submitted,

Dated: February 22, 2023

<u>s/ Kristen L. Richer</u>

*Counsel of Record*

Kristen L. Richer
*Counsel of Record*
Sarah E. Johnston
Kara Kapke
Kian J. Hudson
BARNES & THORNBURG LLP
2029 Century Park East,
Suite 300
Los Angeles, CA 90067
*Counsel for CVS Pharmacy,*
*Inc., Rite Aid Corporation,*
*Walgreen Co., and*
*Walmart Inc.*

Matthew D. Knepper
A. James Spung
HUSCH BLACKWELL LLP
190 Carondelet Plaza,
Suite 600
St. Louis, MO 63105
*Counsel for*
*Express Scripts, Inc.*

Jonathan D. Janow
Jason R. Parish
BUCHANAN INGERSOLL & ROONEY PC
1700 K Street NW, Suite 300
Washington, DC 20006
*Counsel for Albertson's LLC*

Walter H. Swayze
Andrew F. Albero
LEWIS BRISBOIS
BISGAARD & SMITH LLP
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
*Counsel for Kroger Co.*

Jennifer Coates
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
*Counsel for OptumRX and*
*Optum, Inc.*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(g), I hereby certify that this Petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c) because, excluding the material exempted by Federal Rules of Appellate Procedure 5(c) and 32(f), it contains 4,938 words, as counted by Microsoft Word, the word processing software used to prepare this brief.

This petition also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) & (6) and Third Circuit Local Rule 32.1 because it has been set in a 14-point, proportionately spaced typeface (Century Schoolbook).

Dated: February 22, 2023        <u>s/ Kristen L. Richer</u>

                                     *Counsel of Record*

**CERTIFICATE OF VIRUS SCAN AND IDENTICAL COPIES**

In accordance with Third Circuit Local Rule 31.1(c), I hereby certify that a virus protection program, CrowdStrike Falcon Antivirus, has been run on the electronic version of the petition, and no virus was detected.

I further certify that the text of the petition filed with the Court via CM/ECF is identical to the text in the paper copies filed with the Court.

Dated: February 22, 2023                     s/ Kristen L. Richer

                                            *Counsel of Record*

# CERTIFICATE OF BAR MEMBERSHIP

In accordance with Third Circuit Local Rule 46.1(e), I hereby certify that I am a member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.


Dated: February 22, 2023                 s/ Kristen L. Richer

                                          *Counsel of Record*