UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
|  | No. 1:19-md-2875-RBK<br>Hon. Robert Kugler |
| This Document Relates to All Actions |  |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS PENDING
APPEAL <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)</u>**

## TABLE OF CONTENTS

INTRODUCTION…………………………………………….…..…………...1

ARGUMENT……………………………………………….…..………… 2

I.    The Court Should Deny Defendants' Motion Because the Third Circuit Is Not Likely to Review or Reverse the Court's Class Certification Order ………..5

    A.    Defendants Have Not Demonstrated that the Third Circuit is Likely to Grant Their 23(f) Petitions…………………………………….…..… 6

    B.    Defendants Have Not Demonstrated that they are Likely to Succeed in Their Appeal……………………………………………...….….. 11

II.   Defendants Will Not be Irreparably Harmed Absent a Stay……………… 13

III.  Plaintiffs and the Class will be Harmed if They are Forced to Delay Prosecuting Their Claims………………………………………..….... 17

IV.   Defendants Have Not Demonstrated that Public Policy Weighs in Favor of Stay……………………………………………………….……….. 18

CONCLUSION…………………………………………….…..…... 21

CERTIFICATE OF SERVICE …………………………………….…......… 23

## TABLE OF AUTHORITIES

**Cases**

*Ameritox, Ltd. v. Aegis Sciences, Corp.*,
    2009 WL 305874 (N.D. Tex. Feb. 9, 2009) ...................................................15

*Baker v. Sorin Group Duetschland GmbH*,
    No. 1:16-CV-00260, 2018 WL 8188426 (M.D. Pa. Jan. 2, 2018) ......... 18, 20

*Baker v. Sorin Grp. Deutschland GMBH*,
    No. 1:16-cv-00260, 2017 U.S. Dist. LEXIS 235430
    (M.D. Pa. Oct. 23, 2017) ................................................................................9

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) .......................................8

*Boley v. Universal Health Servs., Inc.*,
    No. CV 20-2644, 2021 WL 2186432 (E.D. Pa. May 27, 2021).................3, 5

*Bordeaux v. LTD Financial Services, L.P.*,
    No. 2:16-0243, 2018 WL 1251633 (D.N.J. Mar. 9, 2018)...........................14

*Brown v. Wal-Mart Stores, Inc.*,
    No. 5:09-CV-03339-EJD, 2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ...12

*Charlot v. Ecolab, Inc.*,
    No. 18-10528 (KM)(MAH), 2020 WL 1546439
    (D.N.J. Apr. 1, 2020) ................................................... 5, 14, 17, 19

*Cruson v. Jackson Nat'l Life Ins. Co.*,
    No. 4:16-CV-00912, 2018 WL 2937471 (E.D. Tex. June 12, 2018)...........16

*Earl v. Boeing Co.*, 21 F.4th 895 (5th Cir. 2021) ......................................................5

*Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*,
    No. 3:13-CV-931-J-39JBT, 2015 WL 12979096
    (M.D. Fla. Feb. 5, 2015) ....................................................... 14, 17

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011)........................................8

*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009)........................................................11

*Glatt v. Fox Searchlight Pictures Inc.*,
    No. 11 Civ. 6784(WHP), 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013).....20

*Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068 (3d Cir. 1983)........................2

*Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175 (3d Cir. 2014)........................7

*Grider v. Keystone Health Plan Cent., Inc.*,
    No. 2001-CV-05641, 2007 WL 9734118 (E.D. Pa. Jan. 22, 2007) ...............4

*Heinzl v. Cracker Barrel Old Country Store, In*c.,
    No. 2:14-CV-1455, 2016 WL 5107173 (W.D. Pa. June 8, 2016).............2, 14

*HR Staffing Consultants LLC v. Butts*, 627 Fed. Appx. 168 (3d Cir. 2015) .............3

*Huffman v. Prudential Ins. Co. of Am.*,
    No. 2:10-CV-05135, 2018 WL 1281901 (E.D. Pa. Mar. 12, 2018).........3, 13

*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab.
    Litig.*, No. 98-20626, 1999 WL 673066 (E.D. Pa. Aug. 26, 1999) ................9

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    208 F.R.D. 1 (D.D.C. 2002) ............................................................ 12, 16, 17

*In re Packaged Seafood Prods. Antitrust Litig.*,
    No. 15-MD-2670 JLS (MDD), 2020 WL 2745231
    (S.D. Cal. May 27, 2020)..............................................................................19

*In re Petrobras Sec.*, 193 F. Supp. 3d 313 (S.D.N.Y. 2016) ..................................20

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..........................................................................7

*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) ...........................................7

*In re Urethane Antitrust Litig.*,
    No. 04-MD-1616-JWL, 2006 WL 3021126 (D. Kan. Oct. 23, 2006)............4

*In re Zantac (Ranitidine) Prod. Liab. Litig.*,
    546 F. Supp. 3d 1152  (S.D. Fla. 2021)..........................................................15

*Johnson v. Geico Cas. Co.*, 269 F.R.D. 406 (D. Del. 2010)........................... 4, 5, 13

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
    2015 WL 9244638 (E.D. Pa. Dec. 17, 2015) .................................................19

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) ...............................2

*LaCour v. Colgate-Palmolive Co.*,
    No. 16-CV-8364 (KMW), 2021 WL 3542295 (S.D.N.Y. Aug. 10, 2021) ...20

*Laudato v. EQT Corp.*, 23 F.4th 256 (3d Cir. 2022) ..........................................7, 10

*Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236 (3d Cir. 2011).................14

*Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353 (3d Cir. 2015)..... 11, 13

*Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266 (11th Cir. 2000) .................3

*Strougo v. Barclays PLC*, 194 F. Supp. 3d 230 (S.D.N.Y. 2016) ................... 20, 21

*Triangle Const. & Maint. Corp. v. Our Virgin Islands Labor Union*,
    425 F.3d 938 (11th Cir. 2005) ......................................................................14

*Weingarten Realty Invs. v. Miller*, 661 F.3d 904 (5th Cir. 2011)...........................20

*Willcox v. Lloyds TSB Bank, PLC*, No. 13-00508, 2016 WL 917893 (D. Haw. Mar.
    7, 2016) ..........................................................................................................12

**Statutes**

Fed. R. Civ. P. 23(f) ................................................................................2

Federal Rule of Civil Procedure 42 .........................................................15

**Other Authorities**

John H. Beisner et al., *Study Reveals US Courts of Appeal Are Less Receptive to Reviewing Class Certification Rulings*, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP (Apr. 29, 2014), http://www.skadden.com/insights/publications/2014/study-reveals-us-courts-of-appeal-are-less-recepti [https://perma.cc/SNJ8-FUKL]. ...........................6

Manual Complex Lit. § 21.6 (4th, 2022 ed.) ..........................................10

# **INTRODUCTION**

Defendants request "extraordinary relief," a stay of all proceedings[1] during the pendency of the Third Circuit's review of Defendants' petition for interlocutory appeal of this Court's Opinion and Order regarding class certification dated February 8, 2023. (Dkt. No. 2261, the "Order"). The request is not supported by the law or the facts, and Defendants fail to demonstrate that they are entitled to the extraordinary relief they seek.

*First*, Defendants have not shown that there is a strong likelihood that the Third Circuit will grant their Rule 23(f) petitions or that, if accepted, Defendants would succeed on the merits. The class certification Order does not meet any of the specific criteria for the Third Circuit to grant a Rule 23(f) petition. Defendants' disagreement with the Court's Order does not equate to showing a likelihood of success on the merits. *Second*, Defendants cannot show they will be irreparably harmed by continuing the proceedings that are applicable to both the individual Plaintiffs' claims and the class claims in this ongoing multi-defendant MDL. More precisely, the costs of litigation are not considered irreparable injury, especially when such costs would also be necessary were the case to proceed on an individual

---

[1] In their motion, Defendants allege they are only seeking to stay "class-related deadlines and proceedings" until their sought-after appeal has been concluded (Dkt. No. 2275, p. 1), however, in their memorandum in support (Dkt. No. 2275-1, the "Memo.")), Defendants fail to identify a single deadline or proceeding that the parties could and should move forward with while their Rule 23(f) petitions and/or appeal are pending. Nor do they define what they mean by "class-related deadlines."

basis. *Third*, Plaintiffs will be indisputably harmed by any delay in adjudicating their claims and their legal rights. *Fourth*, there is a strong public interest to continue towards resolution of this litigation that has been ongoing for nearly five years.

The Court should deny Defendants' motion.

## **ARGUMENT**

The party seeking a stay must "demonstrate a clear case of hardship or inequity, if there is even a fair possibility that the stay would work damage on another party." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-1076 (3d Cir. 1983). A stay pending an adjudication of a Rule 23(f) motion is an "extraordinary relief" and "should not be granted as a matter of course."*Heinzl v. Cracker Barrel Old Country Store, Inc.*, 2016 WL 5107173, at *1 (W.D. Pa. June 8, 2016), *report and recommendation adopted as modified*, 2016 WL 5339410 (W.D. Pa. 2016) (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted)).

There is nothing "routine" about staying an entire case pending a Rule 23(f) appeal, much less an MDL containing a number of separate class actions. Rule 23(f) provides that an appeal of an order granting or denying class-action certification "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. P. 23(f). Consistent with the principle that preliminary injunctions are considered to be "extraordinary

relief," a stay pending appeal under Rule 23(f) should not be granted as a matter of course. *Huffman v. Prudential Ins. Co. of Am.*, No. 2:10-CV-05135, 2018 WL 1281901, at *1 (E.D. Pa. Mar. 12, 2018) (citing *Prado–Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 n.8 (11th Cir. 2000) ("Rule 23(f) contemplates that in most cases discovery (at the very least, merits discovery) will continue notwithstanding the pendency of an appeal of the class certification order."). Thus, in order to succeed on their motion, Defendants have to establish that their appeal "(1) is likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of [a stay], (3) that the balance of equities tips in their favor, and (4) that [a stay] is in the public interest." *Id*. (citing *HR Staffing Consultants LLC v. Butts*, 627 Fed. Appx. 168, 171 (3d Cir. 2015)). After all, a stay is an exercise of judicial discretion and the party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Boley v. Universal Health Servs., Inc*., No. CV 20-2644, 2021 WL 2186432, at *2 (E.D. Pa. May 27, 2021).

Defendants rely on unsupported conclusory arguments that there are "serious legal questions" for the Third Circuit to resolve. (Memo. at 7). But none of the so-called serious legal questions relate to novel or unsettled law, which is the standard Defendants must demonstrate. Defendants also have failed to articulate why they believe the Third Circuit would reverse the Court's Order, should it even accept Defendants' Rule 23(f) petitions.

Plaintiffs do agree that class specific deadlines regarding class certification notice and the opt out period should be put on hold pending the outcome of Defendants' Rule 23(f) appeal; however, the work needed to set the groundwork for notice should proceed. In addition, the parties should continue to move forward with fact and expert discovery and continue the other ongoing work, including the briefing and other work related to the initial three defendant trial set in this MDL. So should class and liability expert discovery proceed as to the remaining manufacturing Defendants, Hetero Pharmaceuticals, Ltd., Mylan Pharmaceuticals, Ltd., and Aurobindo Pharmaceuticals, Ltd. *See e.g. Grider v. Keystone Health Plan Cent., Inc.*, No. 2001-CV-05641, 2007 WL 9734118, at *1-2 (E.D. Pa. Jan. 22, 2007) (court denied defendants' motion to stay all deadlines, but agreed to stay the class certification notice deadline); *Johnson v. Geico Cas. Co.*, 269 F.R.D. 406, 412 (D. Del. 2010) (motion to stay granted to the extent that discovery concerning class membership will be stayed, however a stay of all proceedings pending defendants' appeal is not warranted, and therefore, denied in all other respects); *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2006 WL 3021126, at *3 (D. Kan. Oct. 23, 2006) (the public interest is best served by moving forward with discovery, and avoiding unnecessary delay, but also by withholding dissemination of class notice until the Rule 23(f) petition is resolved thereby avoiding any confusion amongst the class members); *Boley v. Universal Health Servs., Inc*., No. CV 20-2644, 2021 WL

4

2186432, at *4 (E.D. Pa. May 27, 2021) (denying motion to stay and allowing for fact and liability expert discovery to proceed).

Defendants have not met their burden regarding any of the four factors this Court must consider.

## I.   The Court Should Deny Defendants' Motion Because the Third Circuit Is Not Likely to Review or Reverse the Court's Class Certification Order.

In deciding a request for a stay, the District Court must predict both the likelihood that the Third Circuit will grant Defendants' petition, and the likelihood that the Third Circuit will agree with Defendants on the substantive merits. *Charlot v. Ecolab, Inc*., No. 18-10528 (KM)(MAH), 2020 WL 1546439, at *2 (D.N.J. Apr. 1, 2020) (citing *Johnson v. Geico Cas. Co*., 269 F.R.D. 406, 412 (D. Del. 2010)). Rule 23(f)—together with the standard for stays pending appeal—provides that District Court proceedings presumptively proceed. *Earl v. Boeing Co*., 21 F.4th 895, 901 (5th Cir. 2021) (Elrod, J., concurring).

Defendants' argument that there is "no downside to entering a stay," if accepted, would establish that a stay should be entered in all cases where a Rule 23(f) petition is filed. Of course, that is factually incorrect, there is a serious downside in further delay, and it is not the law. As this Court recognized in its Order on class certification, Plaintiffs meet all of the requirements for obtaining class certification. Defendants present no basis for this Court to doubt the propriety of its decisions, and to find that Defendants have a likelihood of success on the merits.

Defendants simply argue in a conclusory fashion that a stay of this entire MDL is appropriate since there is a "strong likelihood that the Third Circuit will: (1) grant defendants' Rule 23(f) petitions; and (2) agree with defendants' arguments for reversal." (Memo. at 3-4). Nothing in Defendants' motion supports their contention that a reversal of this Court's well thought-out class certification Order is imminent or likely.

### A.   Defendants Have Not Demonstrated that the Third Circuit is Likely to Grant Their 23(f) Petitions.

It is far from certain that the Third Circuit will grant Defendants' Rule 23(f) petition. In fact, the percentage of cases in which the Third Circuit has granted Rule 23(f) petitions has dramatically declined over the years.[2] Nonplussed, Defendants argue that the Third Circuit will grant their Rule 23(f) petition because: (1) the class certification ruling was "unprecedented;" (2) the review would "facilitate development of the law on class certification;" and (3) the ruling places "settlement pressure" on them. (Memo. at 5-6). Defendants' hyperbole simply recycles arguments made in opposition to the Plaintiffs' class certification motions, and is primarily focused on the medical monitoring class action when closely analyzed.

---

[2] In a 2014 study, the number of 23(f) appeals that the Third Circuit granted dropped from 86 percent in October 31, 2006 to only 35.8 percent in December 31, 2013.  *See* John H. Beisner et al., *Study Reveals US Courts of Appeal Are Less Receptive to Reviewing Class Certification Rulings*, SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP (Apr. 29, 2014), http://www.skadden.com/insights/publications/2014/study-reveals-us-courts-of-appeal-are-less-recepti [https://perma.cc/SNJ8-FUKL].

6

First, contrary to Defendants' arguments, there is nothing "unprecedented" about the Court's class certification ruling.[3] The number of classes and subclasses certified is not a true concern. The Third Circuit has repeatedly held that a District Court may craft subclasses as necessary, provided that there is "enough information or analysis to justify the certification of the classes [] proposed," such as creating a "series of charts setting forth comprehensive analyses of the various states' laws potentially applicable to their common law claims." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183 (3d Cir. 2014) (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)); *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1000 (3d Cir. 1986). That is exactly what the Court did here. The Order contains a series of charts analyzing and categorizing the state laws as they apply to each of the subclasses. (Order at 30-35, 43-48, 56, 71-73). Moreover, the supposed "unprecedented" nature of a ruling is not a basis for the Third Circuit to grant a Rule 23(f) certification. *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022) (listing circumstances where the Third Circuit is likely to grant a Rule 23(f) petition).

---

[3] Defendants cite to *Dukes v. Wal-Mart Stores, Inc.*, for the purported proposition that the Order is "unprecedented" because of the number of subclasses. 603 F.3d 571, 651 (9th Cir. 2010), *rev'd*, 564 U.S. 338, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011). However, Defendants selectively quote from the dissenting opinion, which believed the majority's opinion to be unprecedented because "it conflicts with the statutory language of Title VII, see 42 U.S.C. § 2000e–5(g)(2)(B), and with the Supreme Court's reasoning regarding punitive damages." *Id. Dukes* has nothing to do with the issues before the Court.

Second, granting immediate review would not "facilitate the development of the law on class certification" related to medical monitoring, as Defendants claim, not truly pointing this issue at the economic loss class actions. (Memo. at 5). Notwithstanding, the applicable law deciding when a medical monitoring claim is appropriate for certification has been well-settled in the Third Circuit, and the circumstances under which such a class has been successfully reviewed on appeal do not exist here. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 268 (3d Cir. 2011) (medical monitoring class found to be improperly certified because the classes did not meet the cohesiveness requirement of Rule 23(b)(2) or predominance requirement of Rule 23(b)(3)); *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998) (medical monitoring class did not meet the cohesiveness requirements under 23(b)(2)).

In *Gates,* the medical monitoring class was undercut because plaintiffs' expansive class definition included all residents of the town located near the waste site over a 34-year period, and plaintiffs' sole theory of exposure was that the wastewater evaporated and dispersed into the air. *Gates*, 655 F.3d at 259-269. And in *Barnes*, the individual issues predominated due to the unique issues surrounding nicotine addiction, such as the need to cross examine each individual plaintiff about his individual smoking history. *Barnes*, 161 F.3d at 146. None of those concerns exist in this case.

Here, in the context of the medical monitoring class action, the Plaintiffs' exposure was caused by direct and involuntary ingestion of NDMA/NDEA-contaminated valsartan, and each class member's individual exposure to NDMA or NDEA can be ascertained by examining the class member's prescription records that identify the specific Valsartan drug by NDC code. Further, the effect of continuing exposure to these carcinogens is cumulative, so that a class member's degree of potential prior exposure to NDMA or NDEA is not an individual issue that will predominate.  Based on similar facts, courts around the country have granted class certification to medical monitoring cases. *See e.g., In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig*., No. 98-20626, 1999 WL 673066 (E.D. Pa. Aug. 26, 1999) (certifying medical monitoring classes under Rule 23(b)(2) based on the duration and amount of the drug each class member took); *see also, Baker v. Sorin Grp. Deutschland GMBH*, No. 1:16-cv-00260, 2017 U.S. Dist. LEXIS 235430 (M.D. Pa. Oct. 23, 2017) (certifying medical monitoring class under Rule 23(b)(2)). There is no need for the Third Circuit to revisit this issue again.

Third, the Order does not place inordinate "settlement pressure" on Defendants. Defendants seek to magnify one line in the Court's 97-page Order, wherein the Court stated the unremarkable proposition that a class action is superior under Rule 23(b)(3) because it "promotes fewer inconsistent verdicts and concentrates litigation efforts for both parties into fewer trials as well as promoting

Class Action settlement." (Order at 41). That recitation of the law is hardly controversial, especially in the context of an MDL consolidating separate class actions. Manual Complex Lit. § 21.6 (4th, 2022 ed.). The Order here is a far cry from the inordinate settlement pressure that a defendant must show for the Third Circuit to grant a Rule 23(f) petition. In *Laudato v. EQT Corp.*, a case which Defendants selectively quote and rely on heavily,[4] the Third Circuit found there to be inordinate settlement pressure because the district court "repeatedly suggested that it knew [the defendants] interests better than [the defendant]" and "hinted at the consequences of not playing along." 23 F.4th 256, 261 (3d Cir. 2022). The court also left the class definition "unresolved," which "may even create more pressure to settle." *Id*. None of those facts are present here.

---

[4] The Third Circuit was clear. Appellate review may be proper "when class certification risks placing ***inordinate*** ... pressure on defendants to settle." *Laudato v. EQT Corp.*, 23 F.4th 256, 260 (3d Cir. 2022) (emphasis added). The actual quote from the class certification order is as follows:

> In sum, it would seem in everyone's best interests to resolve this case on a class basis, Defendants for the purpose of manageably resolving their land-use rights and liabilities, and for the putative plaintiffs, to receive just compensation." (emphasis in original)); *id.* at 4 ("Assuming Defendants are, true to their words, desirous of resolving the potential liabilities flowing from their use of the FERC-sanctioned gas fields, it would appear in their interests to agree upon a crafted, rational class-definition, for the purposes of finality and for obtaining, to a reasonable degree of certainty, preclusive effect.").

*Laudato v. EQT Corp.*, 23 F.4th 256, 261 (3d Cir. 2022).

**B.     Defendants Have Not Demonstrated that they are Likely to Succeed in Their Appeal.**

Appellate courts review class certification orders for "abuse of discretion" which only occurs if "the district court's decision rests upon clearly erroneous findings of fact, an errant conclusion of law, or an improper application of the law." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 358 (3d Cir. 2015). Under the "clearly erroneous" standard, the appellate court must "accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).  At the end of the day, after years of briefing, which included dozens of briefs and hundreds of exhibits resulting from years of discovery, this Court, as required, conducted a thorough-going, rigorous class certification analysis.

Hoping to sidestep the stringent showing, Defendants argue that the Court need not consider whether they are likely to prevail on their appeal on the theory that their Rule 23(f) petition "raises serious questions." (Memo. at 7). As the Defendants see it, "there are multiple legal and factual issues raised by the Court's order as to which 'reasonable minds could differ.'" (*Id.*) But that is not the law.

The out-of-circuit cases that Defendants rely on add nothing, as they make clear that a question is only deemed "serious" if it "presents an unsettled question of

law." *Willcox v. Lloyds TSB Bank, PLC*, No. 13-00508, 2016 WL 917893, at *5 (D. Haw. Mar. 7, 2016) (appellant "raised a serious legal question in its Rule 23(f) Petition" when it implicated "novel areas of law."); *Brown v. Wal-Mart Stores, Inc*., No. 5:09-CV-03339-EJD, 2012 WL 5818300, at *2 (N.D. Cal. Nov. 15, 2012) ("Because the Ninth Circuit has not considered the propriety of certifying a class under California's suitable seating laws. . . Defendant has presented a 'serious legal question.'"); *In re Lorazepam & Clorazepate Antitrust Litig*., 208 F.R.D. 1, 5 (D.D.C. 2002) ("Court acknowledges the fact that the *Illinois Brick*/section 13(b) issue is one of first impression, and reasonable minds could differ on its proper resolution."). Here, there is no novel or unsettled question of first impression for the Third Circuit to opine on.

Instead, Defendants complain about run-of-the-mill issues and argue that the medical monitoring class was improper on the theory that (1) "the Third Circuit has repeatedly held [that individualized questions] preclude treatment of medical-monitoring claims" and that (2) the Order "discounted legal variations within the certified medical-monitoring classes." (Memo. at 8-9). They also argue that the economic loss class was improper on the notion that (3) the "individualized legal issues . . . swamped any common legal issues," (4) the Court failed to "evaluate and credit fact and expert evidence highlighting the individualized nature" of the issues, and (5) the "impossibility and impracticability of holding a trial involving so many

12

defendants, products and varying legal regimes." (*Id*. at 8-9).

But those "issues do not so much represent novel legal questions as they do disagreements with the determinations the Court made" in its Order on class certification. *Johnson v. Geico Cas. Co*., 269 F.R.D. 406, 412–13 (D. Del. 2010). "[S]how[ing] only that [one] disagrees with [a class certification] ruling, [] does not establish likelihood of success on the merits." *Huffman v. Prudential Ins. Co. of Am*., 2018 WL 1281901, at *2 (E.D. Pa. 2018) (citing *Johnson*, 269 F.R.D. at 413). In fact, Defendants raised each of those purported "issues" in opposing Plaintiffs' motion for class certification, but these very arguments were rejected by the Court. They are no more valid at this posture.

In short, Defendants cannot demonstrate some "clearly erroneous findings of fact, an errant conclusion of law, or an improper application of the law." *Neale*, 794 at 358.

## II.   **Defendants Will Not be Irreparably Harmed Absent a Stay.**

Defendants argue they will be irreparably harmed on the theory that they will continue to expend resources and there is no way to recoup the money spent on the litigation. (Memo. at 9-12). But Defendants have failed to cite to any Third Circuit precedent that would support their contentions that litigation expenses alone constitute "irreparable harm," and Defendants' argument has been rejected by numerous courts in this circuit, as declining a stay (the default rule) always results

13

in additional litigation expenses. If Defendants were correct, then a stay would be mandatory in every case.

In every case, a party may have to expend money on discovery that could later be deemed unnecessary if the case is reversed on appeal, but that does not transform such expenses into irreparable harm. *Heinzl v. Cracker Barrel Old Country Store, In*c., No. 2:14-CV-1455, 2016 WL 5107173, at *2 (W.D. Pa. June 8, 2016), *report and recommendation adopted as modified*, No. 2:14-CV-1455, 2016 WL 5339410 (W.D. Pa. July 8, 2016); *Charlot*, 2020 WL 1546439 at *3; *see also, Bordeaux v. LTD Financial Services, L.P.*, No. 2:16-0243, 2018 WL 1251633, at *2 (D.N.J. Mar. 9, 2018). "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Ewing Indus. Corp. v. Bob Wines Nursery, Inc.*, No. 3:13-CV-931-J-39JBT, 2015 WL 12979096, at *3 (M.D. Fla. Feb. 5, 2015); *see also Triangle Const. & Maint. Corp. v. Our Virgin Islands Labor Union*, 425 F.3d 938, 947 n.8 (11th Cir. 2005). As the Circuit has found, purported waste of resources is not irreparable harm unless the amount of loss would be so significant as to force the moving party out of business entirely. *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) ("a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement... but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business."). That clearly is not the case here.

Moreover, continuing the litigation will not waste the resources of the parties given that the remaining fact and expert discovery will be necessary regardless of the Third Circuit's determinations.

Defendants suggest the stay is appropriate because here "every discovery effort, motion, and trial preparation step will be undertaken with an eye toward class-wide trial." (Memo. at 12). Even if this were true (it is not), and even if the proposed trial encompassed all classes and subclasses (it likely does not), that would still not be a reason to impose a stay. To the extent necessary at any point, the Court can exercise its discretion to manage the litigation as necessary.

Defendants further argue that it would be impossible to "prepare for the previously scheduled TPP trial and convert it to a class trial" on the theory that such a trial would result in "improper claim splitting." (Memo. at 11-12). But claim splitting could only be an issue when a plaintiff brings its claims in separate actions, and here there is one action—this MDL. *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 546 F. Supp. 3d 1152, 1182 (S.D. Fla. 2021) ("there is no 'duplicative litigation,' because there is but one case pending before the Court—this MDL. . . .). *Ameritox, Ltd. v. Aegis Sciences, Corp.*, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009) ("claim-splitting is concerned with the principals of comity and sound judicial administration, which are primarily a concern when cases are filed in separate courts."). Further, Federal Rule of Civil Procedure 42 specifically provides the Court

with broad authority to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims," and that is all the Court would be doing here.

Notably, none of the cases Defendants cite support their contention that they will be irreparably harmed absent a stay. The District Courts in the cases Defendants cite only found irreparable harm weighed in favor of a stay because at least one issue on appeal would likely resolve the entire case. For example, in *In re Lorazepam*, the court found a complete stay of all deadlines was appropriate because the court of appeals was analyzing not only class certification issues but defendant's standing arguments. *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) ("if the Court of Appeals disagrees with this Court about the *Illinois Brick/*section 13(b) issue, this case will be over."). Similarly, in *Cruson*, the District Court agreed that if on appeal the First Circuit found that the District Court lacked sufficient jurisdiction over the defendant, it could be irreparably harmed. *Cruson v. Jackson Nat'l Life Ins. Co.*, No. 4:16-CV-00912, 2018 WL 2937471, at *5 (E.D. Tex. June 12, 2018) (Extensive discovery and motion practice may be rendered unnecessary if this court lacks jurisdiction). There is no claim here, on appeal, that this Court lacks jurisdiction or that the Plaintiffs lack standing to prosecute their claims.

Defendants go on to argue they will suffer irreparable harm if a stay is not

16

issued on the theory that the parties would have to expend significant time, effort and resources identifying the class members and disseminating the notice and, that allowing class notice to proceed would create significant confusion among the proposed class members. (Memo. at 13-15). Since Plaintiffs are not seeking the dissemination of the class certification notice at this time, Defendants arguments regarding their irreparable harm associated with the class notice are moot.

**III.   Plaintiffs and the Class will be Harmed if They are Forced to Delay Prosecuting Their Claims.**

This MDL was created years ago. Any stay will delay final resolution and prejudice Plaintiffs ability to adequately prosecute their claims. *Charlot*, 2020 WL 1546439, at *4 (denying motion to stay pending Rule 23(f) appeal). Indeed, in most cases where a court found a stay would not harm the responding party, the parties had already completed the appellate briefing, and thus the stay would only result in a minor additional delay in prosecution. *See e.g. Ewing*, 2015 WL 12979096, at *3 (the Rule 23 petition has been fully briefed and the parties are simply waiting on oral argument or a final decision); *see also*, *In re Lorazepam & Clorazepate Antitrust Litig.*, 208 F.R.D. 1, 6 (D.D.C. 2002) ("Given that the parties argued the case on March 12, 2002, a decision from the Court of Appeals can be expected in the very near future, likely in a couple of months.") In contrast, here the parties have not even completed briefing the Defendants' Rule 23(f) petitions, let alone an appeal.

In this case, a stay of all proceedings would be particularly harmful to

Plaintiffs because it will delay the relief sought, including reimbursement of damages and the medical monitoring class members' access to medical monitoring, which could result in necessary treatment, which may have serious health consequences.[5] *Baker v. Sorin Group Duetschland GmbH*, No. 1:16-CV-00260, 2018 WL 8188426, at *2 (M.D. Pa. Jan. 2, 2018) (finding plaintiffs would be harmed if the matter were stayed in a medical monitoring class action particularly when one of the named plaintiffs had already become ill).

Because a stay of the entire proceeding, potentially up to more than a year (should the Third Circuit accept Defendants' Rule 23(f) petitions) would cause significant harm to Plaintiffs, this factor clearly weighs in favor of denying Defendants' motion for a stay.

## IV.    Defendants Have Not Demonstrated that Public Policy Weighs in Favor of Stay.

Public interest cautions against granting the sweeping stay Defendants' request. The public has an interest in the efficient prosecution of class actions and seeking to hold corporate wrongdoers accountable, especially in the area of consumer products. *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-

---

[5] Defendants try to downplay this reality by arguing that the contaminated and adulterated VCDs are "only" expected to cause cancer in 1 of every 8,000 people. (Memo. n.1). Even assuming those odds are correct (they aren't), *even one* cancer diagnosis is one too many—and there are well more than 8,000 people that ingested the VCDs.

2670 JLS (MDD), 2020 WL 2745231, at *10 (S.D. Cal. May 27, 2020). The requested stay of this litigation regarding contamination of the generic drug supply with carcinogenic impurities would unnecessarily delay final resolution of these proceedings and no judicial efficiencies would be promoted by waiting.

Defendants argue that a stay would be in the public's interest on the theories: (1) that "public interest does not benefit from class proceedings . . .when there is good ground to believe that an appellate court will review and potentially reverse the order," (2) a "stay would promote judicial economy," and (3) "class notice at this time could unnecessarily confuse a putative class." (Memo. at 17-18). Defendants are wrong.

*First*, as shown in Section I above, Defendants have not provided any grounds, let alone "good grounds," to establish that the appellate court is likely to take up the Rule 23(f) appeal and that Defendants are likely to prevail on such an appeal. That aside, the public has a strong interest in resolving this five-year-old litigation. *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 9244638, at *10 (E.D. Pa. Dec. 17, 2015) (denying motion to stay where 23(f) petition was pending, because of the "strong public interest in resolution of this nearly decade old [] matter . . . . After nine years, Plaintiffs are entitled to their day in court."); *Charlot*, 2020 WL 1546439, at *4 ("[f]urther delays of an adjudication in this case will hinder Plaintiffs' ability to prove their claims and could prejudice their ability to adequately represent

19

their interests" and thus are against the "public's interests").[6] This is especially true here, where the Court granted two medical monitoring classes and there is the additional "risk that class members may not be aware of the extent of the alleged product defect and need for medical monitoring." *Baker v. Sorin Grp. Duetschland GmbH*, No. 1:16-cv-00260, 2018 WL 8188426, at *3 (M.D. Pa. Jan. 2, 2018).

*Second*, freeing up judicial resources is not a good basis to stay a case. *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784(WHP), 2013 WL 5405696, at *4 (S.D.N.Y. Sept. 17, 2013) ("Defendants argue a stay would free up this Court's resources, but that is true of every case. And it would do so at the expense of delaying Plaintiffs' rights to pursue this action."). This is especially true here, where defendants have not shown "a likelihood on success of the merits." *Weingarten Realty Invs. v. Miller*, 661 F.3d 904, 913 (5th Cir. 2011) ("[Defendant] does not present a likelihood of success on the merits, so there is little reason to invoke the general public policy of preserving judicial resources from the risk of reversal. Rather, the public interest in speedy resolution of disputes prevails. Public interest favors denying the stay."); *Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 235

---

[6] Courts in other circuits have reached the same conclusion. *In re Petrobras Sec.*, 193 F. Supp. 3d 313, 318 (S.D.N.Y. 2016) (finding the "public interest is served by the speedy and effective administration of justice" and not by a stay pending appeal); *LaCour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (KMW), 2021 WL 3542295, at *2 (S.D.N.Y. Aug. 10, 2021) (it is "in the consumers' interests and the public interest to resolve the claims at issue efficiently and, if damages are owed, to compensate consumers for any losses they may have suffered.").

(S.D.N.Y. 2016) ("[T]here is no guarantee that the appeal will result in a reversal, weakening Defendants' argument that judicial efficiency would favor a stay.").

*Third*, as noted above, Plaintiffs are not seeking to disseminate the class notice at this time. As such, this is not a basis to enter a stay.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Joint Motion to Stay Proceedings Pending Appeal Pursuant to Federal Rule of Civil Procedure 23(f).

Dated: March 13, 2023                    Respectfully submitted,


/s/ Ruben Honik                          /s/ Daniel Nigh
Ruben Honik                              Daniel Nigh
**HONIK LLC**                            **NIGH, GOLDENBERG, RASO &**
1515 Market Street, Suite 1100           **VAUGHN, PLLC**
Philadelphia, PA 19102                   712 H Street NE, Dpt 32022
Phone: (267) 435-1300                    Washington, DC 20002
ruben@honiklaw.com                       Phone: (850) 600-8090
                                         dnigh@nighgoldenberg.com


/s/ Adam Slater                          /s/ Conlee S. Whiteley
Adam Slater                              Conlee S. Whiteley
**MAZIE, SLATER, KATZ &**                **KANNER & WHITELEY, LLC**
**FREEMAN, LLC**                         701 Camp Street
103 Eisenhower Pkwy, 2nd Flr.            New Orleans, LA 70130
Roseland, NJ 07068                       Phone: (504)-524-5777
Phone: (973) 228-9898                    c.whiteley@kanner-law.com
aslater@mazieslater.com

   ***MDL Plaintiffs' Co-Lead Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day March 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system. In addition, I certify that unredacted versions of the foregoing will be served contemporaneously upon liaison counsel for Defendants as well as the Court.

*/s/ David J. Stanoch*
David J. Stanoch

23