# Exhibit D

| Chart of Dr. Panagos's Excluded Class Certification Opinions and their TPP Report Counterparts | |
|---|---|
| Excluded Opinions - Class Certification Report | Corresponding Opinions – TPP Report |
| 47. The "AB" rating in the FDA Orange Book, based as it is on the generic drug manufacturer's ANDA, represents a manufacturer's warranty to TPPs and P&T Committees for placement on a prescription drug formulary. | 80. A drug's "AB" listing in the Orange Book, based as it is on the generic drug manufacturer's ANDA, represents a manufacturer's assurance to TPPs and P&T Committees that the generic drug is equivalent to the brand drug for placement on a prescription drug formulary. |
| 52. Manufacturers are responsible for understanding their processes which includes preventing the presence of unacceptable and impurities. | 96. Manufacturers are responsible for understanding their processes which includes preventing the presence of unacceptable contaminants or impurities, meaning any substance that does not belong in the medication. |
| 53. They are responsible for developing and using suitable methods to detect and limit unacceptable impurities, including any new impurities that may arise when they make changes to their manufacturing processes. | 97. Manufacturers are responsible for developing and using suitable methods to detect and limit unacceptable impurities, including any new impurities that may arise when they make changes to their manufacturing processes. |
| 55. P&T committees and TPPs rely on an Orange Book listing that a manufacturer's compliance means their drugs meet FDA regulations and as such are suitable for formulary placement and reimbursable under a prescription drug benefit plan. | 99. P&T committees and TPPs rely on an Orange Book listing that a manufacturer's compliance means their drugs meet FDA regulations and as such are suitable for formulary placement and reimbursable under a prescription drug benefit plan. |
| 56. When third party payors agree to reimburse for generic drugs such as valsartan including VCDs, they do so based on the warranties made by manufacturers that their drug product is in compliance with the FDA, bioequivalent of the Orange Book reference drug and safe to be sold to consumers. | 102. When third party payors agree to reimburse for generic drugs such as valsartan including VCDs, they do so based on representations made by manufacturers that their drug product is in compliance with the FDA, bioequivalent of the Orange Book reference drug and safe to be sold to consumers. |
| 57. In the case of valsartan, including VCDs, warranties by the manufacturers were false. As such, TPPs paid for medications they should not have paid for. In fact, these VCDs never could have been sold in the United States. | 103. In the case of valsartan, including VCDs, the representations made by the manufacturers were false. As such, TPPs paid for medications they should not have paid for. In fact, these VCDs never could have been sold in the United States. |
| 58. TPPs are entitled to rely on a manufacturer's compliance with Orange Book standards when reimbursing for what was represented as generic valsartan, including VCDs. | 104. TPPs are entitled to rely on a manufacturer's compliance with Orange Book standards when reimbursing for what was represented as generic valsartan, including VCDs. |
| 59. The presence of the contaminant rendered the manufacturer defendants' versions of VCDs **not** equivalent to the branded product as indicated in the Orange Book which serves as the source of truth for bioequivalence. | 105. The presence of the contaminants rendered the manufacturer defendants' versions of VCDs unsafe and not the same as the branded product as indicated in the Orange Book which serves as the source of truth for substitutability. |

1

| | |
|---|---|
| Summary Op. B.  This information serves as the warranty for the medication ensuring that it meets the quality standards outlined by FDA. | Summary Op. I.  The safety of a medication must be proven by the manufacturer to the FDA so that the medication may receive approval. This information serves as an assurance that the medication meets the quality standards outlined by FDA. |
| Summary Op. D.  If the generic manufacturer product changes in any way from the original product on the ANDA approval, then this changed product is not the same as the brand name medication; equivalence is nulled and the generic manufacturer may no longer rely on the brand name drug label. | Summary Op. IV.  If the generic manufacturer product changes in any way from the original product on the ANDA approval, then this changed product is not the same as the brand name medication (RLD).<br>AND<br>Summary Op. V.  The generic drug label, insert, and pamphlets are no longer accurate insofar as the generic manufacturers are not meeting the obligations required by the regulations; the changed product cannot be deemed safe or effective and equivalence is nulled; and the generic manufacturer may no longer rely on the RLD. |
| Summary Op. G.  The TPPs in this matter were all payors at risk for and made payments in connection with their insureds' purchases of VCDs. | Summary Op. VIII.  The TPPs in this matter were all payors at risk for and made payments in connection with their insureds' purchases of VCDs. |
| Summary Op. H.  TPPs reimbursed for these VCDs based on the warranty provided by the manufacturer and PBMs establish formularies of bioequivalence based on the FDA approval process and information within the Orange Book. | Summary Op. IX.  PBMs establish formularies for generics based on the FDA approval process, and the information within the Orange Book tying these generics to their RLDs with the expectation that they are the same and/or therapeutically equivalent to the RLDs. TPPs reimbursed for these VCDs based on the assurances provided by the manufacturer in seeking approval and marketing the generics under the approved ANDA. |
| Summary Op. I.  The warranty from manufacturers for these products turned out to false. TPPs paid for medications that they should not have based on the manufacturer's false representation. | Summary Op. X.  The assurances from the manufacturers of these products turned out to be false. TPPs paid for medications that they should not have based on the manufacturers' false representations. TPPs would not have selected these products for inclusion on their drug formularies or paid for these medications if they were aware of the potential presence of contaminants within the products. |
| Summary Op. J.  In my professional opinion, the manufacturer warranty for these VCDs was false. The TPPs unjustly paid for medications for which they should not have paid. Manufacturers are | Summary Op. XIV.  In my professional opinion, the manufacturers' assurances as to these VCDs were false. The TPPs unjustly paid for medications for which they should not have paid. |

2

| | |
|---|---|
| accountable for the false warranty and representation of their drug products.[1] | Manufacturers are accountable for the false assurances and representation of their drug products as equivalent to their RLDs. |

---

[1] Paragraph J of the Summary of Opinions ("Summary Op. J") in Dr. Panagos's Class Certification Report was not identified in this Court's February 8, 2023 Opinions on Certification of Proposed Classes Under FRCP Rule 23 and on Class Certification Expert Reports Under FRE 702 as either an excluded or considered paragraph. Based on the Court's reasoning as articulated in the February 8, 2023 opinion, we believe Summary Op. J was inadvertently omitted from the list of excluded opinions.