**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. ROBERT B. KUGLER CIVIL NO. 19-2875 (RBK) <br><br> Redacted Version |

## PLAINTIFFS' *DAUBERT* MOTION AND INCORPORATED MEMORANDUM OF LAW TO PRECLUDE OPINIONS OF DEFENSE EXPERT TIMOTHY ANDERSON, M.S., M.B.A.

KANNER & WHITELEY, LLC
701 Camp St.
New Orleans, LA 70130

On the Brief:
David J. Stanoch, Esq.

*Contains Confidential Information*
*Subject to Protective Order*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARD ......................................................................................... 3

  A.  Rule 26 and the Contents of the Expert Report ............................................. 3

  B.  *Daubert* Standard ......................................................................................... 4

III.  ARGUMENT ..................................................................................................... 6

  A.  Mr. Anderson's ▓▓▓▓▓▓▓▓▓▓ Should Be Precluded ...................... 6

    1.  ▓▓▓▓▓▓▓▓▓▓▓▓▓ ..................................................................... 7

    2.  ▓▓▓▓▓▓▓▓▓ ............................................................................... 10

  B.  Mr. Anderson's Various Opinions About ▓▓▓▓▓▓
      ▓▓▓▓▓▓▓▓▓▓▓▓▓ Should Be Precluded ... 13

  C.  Mr. Anderson Is Not ▓▓▓▓▓▓▓ ................................................... 17

IV.   CONCLUSION ............................................................................................... 19

*Contains Confidential Information*
*Subject to Protective Order*

# TABLE OF AUTHORITIES

Page(s)

## Cases

*ABB Air Preheater, Inc. v. Regenerative Env't Equip. Co.*,
   167 F.R.D. 668 (D.N.J. 1996) ..................................................................................4

*Apotex, Inc. v. Cephalon, Inc.*,
   321 F.R.D. 220 (E.D. Pa. 2017) ...............................................................................7

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ................................................................................................17

*Claar v. Burlington, N.R.R,*
   29 F.3d 499 (9th Cir. 1994) ......................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   43 F.3d 1311 (9th Cir. 1995) ....................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..................................................................................................4

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) .....................................................................................5

*General Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) ..................................................................................................5

*GlaxoSmithKline,*
   No. 13-4663, 2019 WL 4751883 (E.D. Pa. Sept. 30, 2019) ...................................11

*In re Paoli R.R. Yard PCB Litigation*,
   35 F.3d 717 (3d Cir. 1994) ...................................................................................4, 5

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..................................................................................................5

*Lipton v. Mountain Creek Resort, Inc.*,
   No. CV134866KMMAH, 2019 WL 4597205 (D.N.J. Sept. 23, 2019) ....................4

*Magistrini v. One Hour Martinizing Dry Cleaning*,
   180 F. Supp. 2d 584 (D.N.J. 2002)..........................................................................5

*Contains Confidential Information
Subject to Protective Order*

*Magistrini v. One Hour Martinizing Dry Cleaning*,
  68 Fed. App'x 356 (3d Cir. 2003)..............................................................5

*Meadows v. Anchor Longwall & Rebuild, Inc.*,
  306 Fed. App'x 781 (3d Cir. 2009)..........................................................16

*Meyers v. Nat'l R.R. Pass. Corp. (Amtrak)*,
  619 F.3d 729 (7th Cir. 2010)....................................................................3

*Mondis Tech. Ltd. v. LG Elecs., Inc.*,
  No. 15-4431, 2021 WL 4077563 (D.N.J. Sept. 8, 2021)......................16

*Padillas v. Stork-Gamco, Inc.*,
  186 F.3d 412 (3d Cir. 1999)......................................................................4

*SEC v. Ambassador Advisors, LLC*,
  576 F. Supp. 3d 250 (E.D. Pa. Dec. 21, 2021).......................................6

*United States ex rel. Penelow v. Janssen Prod., LP*,
  No. CV127758ZNQLHG, 2022 WL 94535 (D.N.J. Jan. 10, 2022)...................16

*United States v. 789 Cases, More or Less, of Latex Surgeons' Gloves,
  an Article of Device*,
  799 F. Supp. 1275 (D.P.R. 1992)...............................................................7

*United States v. Barr Labs., Inc.*,
  812 F. Supp. 458 (D.N.J. 1993)...........................................................6, 12

*United States v. Titan Med. Enterprises, Inc.*,
  No. 2:11-cv-10752, 2013 WL 444034 (C.D. Cal. Feb. 4, 2013).........11

**Statutes**
21 U.S.C. § 351(a)(2)(B) ...................................................................6, 9, 12

**Rules**
Fed. R. Civ. P. 26(a)(2)..........................................................................3, 4
Fed. R. Civ. P. 26(a)(2)(B)........................................................................4
Fed. R. Civ. P. 26(a)(2)(B)(i)....................................................................4
Fed. R. Civ. P. 26(a)(2)(B)(ii)...................................................................3
Fed. R. Evid. 702 ......................................................................................4
Fed. R. Evid. 702(b)................................................................................16

*Contains Confidential Information*
*Subject to Protective Order*

## **Regulations**

21 C.F.R. § 210.1 ..................................................................................................8

21 C.F.R. § 210.1(b) ............................................................................................6

21 C.F.R. § 211.1 ..................................................................................................8

*Contains Confidential Information*
*Subject to Protective Order*

## I.  __INTRODUCTION__

Plaintiffs submit this *Daubert* motion against Teva's expert, Timothy Anderson, with regard to his opinions that ████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████.

First, like Teva's other expert Dr. Roger Williams, Mr. Anderson opines that ██████████████████████████████████████████████████. From this faulty premise, Mr. Anderson extrapolates that, ████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████.

Mr. Anderson's ██████████████ are fatally flawed.  For one, the FDA *expressly stated* that ZHP's valsartan API *was adulterated*.  Therefore, Teva's VCDs incorporating that same adulterated API were adulterated as well.

More fundamentally, an adulterated product is one not made in a cGMP-compliant manner, or that lacks appropriate purity, quality, identity, and other characteristics.  Teva's VCDs fell into each of these buckets for years prior to the July 2018 recalls.  Mr. Anderson lacks any basis for ████████████████ ████████████████████████████████.  Were his peculiar view correct,

*Contains Confidential Information*
*Subject to Protective Order*

then a firm could ███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████. This is akin to saying a state-law tort

claim cannot lie against a firm that negligently sold poisoned milk because the

plaintiff already bought and drank the milk before the poison was discovered by the

FDA (or anyone else). Mr. Anderson's ██████████████████████ flow from an

unreliable methodology untethered to law or fact, rendering them unhelpful.

Second, Mr. Anderson proffers a bevy of opinions about ███████████

███████████████████████████████████████████████████

This includes Teva's ██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████.

There is just one problem: Mr. Anderson exclusively looks at ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████. But Mr. Anderson admits ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Contains Confidential Information*
*Subject to Protective Order*

 . Having not looked at any of the pertinent facts

for ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mr. Anderson's opinions lack

sufficient reliability or fit.

Third, Mr. Anderson repeatedly ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

But he lacks any qualifications to go before the jury as such an expert.  His ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓ is not a specialized skill beyond the ken of an average juror.

For these reasons, expressed more fully below, Mr. Anderson's opinions

identified herein should be precluded.

## II.    LEGAL STANDARD

### A.    Rule 26 and the Contents of the Expert Report

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert

testimony and specifically the contents of an expert report.  Relevant to this Motion,

the Rule states the following: "The report must contain: (i) a complete statement of

all opinions the witness will express and the basis and reasons for them; (ii) the facts

or data considered by the witness in forming them …." Fed. R. Civ. P. 26(a)(2)(B)(i)

& (ii).  A failure to submit an expert report that complies with Rule 26 is an

independent basis for the exclusion of the expert's testimony. *See, e.g., Meyers v.*

*Nat'l R.R. Pass. Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) ("The

*Contains Confidential Information*
*Subject to Protective Order*

consequence of non-compliance with Rule 26(a)(2)(B) is exclusion of an expert's testimony[.]" (internal quotations and citations omitted)).

Experts are therefore only permitted to testify at trial in accordance with the contents of their reports. *See* Fed. R. Civ. P. 26(a)(2)(B)(i); *see also Lipton v. Mountain Creek Resort, Inc.*, No. CV134866KMMAH, 2019 WL 4597205, at \*7 (D.N.J. Sept. 23, 2019) ("[T]he court generally will not permit an expert to testify beyond the scope of his or her report."). "Compliance with Rule 26(a)(2) is thus a condition precedent to the use of expert testimony at trial." *ABB Air Preheater, Inc. v. Regenerative Env't Equip. Co.*, 167 F.R.D. 668, 671 (D.N.J. 1996).

## B.    *Daubert* Standard

The admissibility of expert testimony is determined pursuant to Federal Rule of Evidence 702. The party offering the proposed expert testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.,* 186 F.3d 412, 417-18 (3d Cir. 1999). An "expert's opinions must be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994) (citations and internal quotations omitted).

Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

*Contains Confidential Information*
*Subject to Protective Order*

590 (1993)). These good grounds must support each step of the analysis and, "*any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *Id.* at 745. Judges within this Circuit also consider how and when the methodology is used outside of litigation. *Paoli*, 35 F.3d at 742 (discussing reliability factors under *Daubert* and Third Circuit case law).

Furthermore, "*Daubert*'s gatekeeping requirement .... make[s] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *see also Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 594 (D.N.J. 2002*), aff'd,* 68 Fed. App'x 356 (3d Cir. 2003). In addition, the following factors are relevant when determining reliability:

> (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation (*see Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir. 1995)); (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (*see General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997)); (iii) whether the expert has adequately accounted for alternative explanations (*see Claar v. Burlington, N.R.R.,* 29 F.3d 499 (9th Cir. 1994)).

*Magistrini*, 180 F. Supp. 2d at 594–95.

*Contains Confidential Information*
*Subject to Protective Order*

## III.  <u>ARGUMENT</u>

### A.  <u>Mr. Anderson's ███████████ Should Be Precluded</u>[1]

A product is adulterated

> if it is a drug and the methods used in, or the facilities or controls used
> for, its manufacture, processing, packing, or holding do not conform to
> or are not operated or administered in conformity with current good
> manufacturing practice to assure that such drug meets the requirements
> of this chapter as to safety and has the identity and strength, and meets
> the quality and purity characteristics, which it purports or is represented
> to possess.

21 U.S.C. § 351(a)(2)(B).[2]  Contamination renders a drug adulterated, as does failure

to comply with any cGMP regulation concerning the manufacture, processing,

packing or holding of a drug (even in the absence of contamination).  *See id.*; *see*

*also* 21 C.F.R. § 210.1(b). Both past and future cGMP violations may result in

adulteration.  *See, e.g.*, *United States v. Barr Labs., Inc.*, 812 F. Supp. 458, 487

(D.N.J. 1993) (discussing both past and future cGMP violations resulting in

adulteration).

Expert testimony that is contrary to law or fact, or that seeks to misstate the

applicable law to the jury, is unhelpful.  *See, e.g.*, *SEC v. Ambassador Advisors,*

---

[1] Because Teva's experts, Dr. Williams and Mr. Anderson, share the same flawed
███████████, this section largely appears verbatim in this Motion as well as
the contemporaneously filed motion to preclude Dr. Williams' opinions.

[2] For ease, this Motion refers to federal law, but of course Plaintiffs' claims arise
under parallel, non-preempted state laws that impose identical state requirements.

6

*Contains Confidential Information*
*Subject to Protective Order*

*LLC*, 576 F. Supp. 3d 250 (E.D. Pa. Dec. 21, 2021).   An expert's opinion is

inadmissible if it "is both contrary to the record . . . [and] is contrary to the law."

*See, e.g.*, *Apotex, Inc. v. Cephalon, Inc.*, 321 F.R.D. 220, 236 (E.D. Pa. 2017).   Mr.

Anderson's adulteration opinions should be precluded they unreliably run contrary

to law and fact, as discussed more fully below.



1. [redacted]

[redacted]

[redacted]

[redacted]. *See* Ex. 1 (Anderson Rpt.) at ¶¶ 27, 190,

221; Ex. 2 (Anderson 2/9/23 Tr.) at 291:24 – 292:8; Ex. 3 (Anderson 3/9/22 Tr.) at

122:7 – 124:-124:20, 129:12-18.[3]  The second is that [redacted]

[redacted] *See*

Ex. 1 at ¶ 190. [redacted]

[redacted]

[redacted].

Mr. Anderson's belief that, [redacted]

[redacted] simply is incorrect.

---

[3] Mr. Anderson submitted a declaration and gave testimony at the class certification
stage that included the [redacted]. He confirmed his
prior testimony during his liability-stage deposition last month. *See* Ex. 2 (Anderson
2/9/23 Tr.) at 12:16 – 13:2.

*Contains Confidential Information
Subject to Protective Order*

██████████████████████████. *See, e.g.*, *United States v. 789 Cases, More or Less, of Latex Surgeons' Gloves, an Article of Device*, 799 F. Supp. 1275, 1296 (D.P.R. 1992).

Adulteration does not turn on whether the FDA, with its limited resources, catches a firm violating cGMPs and issues a formal statement about it. Rather, each firm engaged in the manufacture and distribution of drugs has self-executing obligations to ensure its products and practices comply with cGMPs at all times. As the FDA puts it: "If a company is not complying with CGMP regulations, any drug it makes is considered 'adulterated' under the law. This kind of adulteration means that the drug was not manufactured under conditions that comply with CGMP."[4]

Despite being contrary to law, fact, and common sense, Mr. Anderson's

███████████████████████████████████████████

██. Here, ██████████████████████████████████

██████████████████████████████ *See* Ex. 4. ████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████:

---

[4] Facts About the Current Good Manufacturing Practices (CGMPSs), *at* https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practices-cgmps (last visited Feb. 17, 2023); *see also* 21 C.F.R. §§ 210.1, 211.1.

*Contains Confidential Information*
*Subject to Protective Order*



*Id.*

That same ZHP valsartan API had been incorporated into each and every one of Teva's VCDs at issue at this stage of the case.  Teva's own corporate designees confirmed, one after the other, ████████████████████████████████

███ .[5] ████████████████████████████████████

██████████████████████████████████████████████

█████████████████████. Ex. 3 (Anderson 3/9/22 Tr.) at 141:8-17.[6] ██████

████████████████████████████████████████████████

---

[5] *See, e.g.*, Ex. 5 (Lyons Tr.) at 285:3-12 (" ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ .

[6] ( ████████████████████████████████████████████

██████████████ .

*Contains Confidential Information
Subject to Protective Order*

████████████████████████████████████████████████████

███████████████████████████████████████████ .[7]

As ZHP's valsartan API was contaminated and made in violation of cGMP, so too, were Teva's VCDs incorporating same.   It is baseless, illogical, counterfactual, and certainly unhelpful to the jury for ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████ .

**2.** ██████████████████████████████

Mr. Anderson also erroneously contends ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[7] Ex. 5 (Lyons Tr.) at 130:3 – 132:2 ██████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████ ); *see also id.* at 275:24 – 276:5.

*Contains Confidential Information*
*Subject to Protective Order*

. *See* Ex. 1 at ¶¶ 21, 190.

As a threshold matter, the FDA's December 2018 interim limits are immaterial. As Mr. Anderson concedes,

More to the key point, the record and caselaw belies Mr. Anderson's dubious position that

. *See, e.g.*, *BCBS v. GlaxoSmithKline*, No. 13-4663, 2019 WL 4751883, at *1 (E.D. Pa. Sept. 30, 2019) (seeking economic damages years later for drugs purchased between 2000 to 2005 that were later considered to be adulterated due to cGMP violations); *United States v. Titan Med. Enterprises, Inc.*, No. 2:11-cv-10752, 2013 WL 444034, at *1 (C.D. Cal. Feb. 4, 2013) (noting, in 2013, that "[f]rom 2001 through 2012, Defendants' drug manufacturing operations

---

[8] Ex. 3 (Anderson 3/9/22 Tr.) at 45:22 – 46:1.

*Contains Confidential Information*
*Subject to Protective Order*

did not comply with current good manufacturing practice regulations for drugs . . . Defendants' drugs are therefore adulterated under 21 U.S.C. § 351(a)(2)(B)."); *Barr*, 812 F. Supp. at 487 ("no dispute" about firm's "past violations" of cGMP).

ZHP's expert, Mr. David Chesney, also confirmed that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Ex. 7 (Chesney Tr.) at 189:24-190:3, 195:16-23.

Teva's head of quality and Rule 30(b)(6) designee recognized that ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

12

*Contains Confidential Information*
*Subject to Protective Order*

███████████████████████████████████████

████████████████████████████████

Mr. Anderson's strained position further lacks common sense. According to

him, ████████████████████████████████████████

███████████████████████████████████████

████████████████████████ Unsurprisingly, Mr. Anderson cites no legal,

regulatory, or factual support for his astonishing position.

Absent any credible basis in law or fact, Mr. Anderson's ███████████████

are unreliable, the product of unreliable methods, and unhelpful.

**B.     Mr. Anderson's Various Opinions About** ███████████████████
**███████████████████████████ Should Be**
**Precluded**

████████████████████████████████████████

███████████████████████████████████████

████████████████████ *See* Ex. 1 at ¶¶ 46-47. ████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

*Contains Confidential Information
Subject to Protective Order*

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████

During the entire relevant time period, the API for these VCDs were sourced

from ████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████.

Mr. Anderson proffers a litany of opinions about ██████████████████████

██████████████████████████████████████

- ████████████████████████████████████████
████████

█ ████████████████████████████████████████
██████████████████

█ ████████████████████████████████████████
██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ *Id.* ¶ 32.

14

*Contains Confidential Information*
*Subject to Protective Order*

The problem is that Mr. Anderson ███████████████████

█████████████████████████████████████████████████

███████████████████████

For instance, Mr. Anderson's report does not discuss, let alone cite, ██████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████. [10]

Finally, Mr. Anderson testified ███████████████████████

███████████████████████████████████████  Ex. 2 (2/9/23



[9] ███████████████████████████████████████████

[10] ██████████████████████████████████████████

*Contains Confidential Information*
*Subject to Protective Order*

Dep.) at 38:5 – 39:24.[11]  This is especially important for ████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████

Because Mr. Anderson admittedly ████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████ and are therefore unreliable.[13]  *See* Fed. R. Evid.

---

[11] ████████████████████████████████
████████████████████████

[12] ████████████████████████████████
████████████████████████████████
████████████████████████████████

[13] Mr. Anderson testified ████████████████
████████████████████████████████
████████████████  Ex. 3 (3/9/22 Dep.) at 77-78, 81-95, 401.  One would assume that, had Mr. Anderson, Teva, or Teva's counsel located such documents in intervening year between Mr. Anderson's two reports and depositions, they would have cited them in his current liability report.

16

*Contains Confidential Information*
*Subject to Protective Order*

702(b); *United States ex rel. Penelow v. Janssen Prod., LP*, No. CV127758ZNQLHG, 2022 WL 94535, at *3 (D.N.J. Jan. 10, 2022) ("The purported expert's testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2021 WL 4077563, at *3 (D.N.J. Sept. 8, 2021) (experts must have sufficient support in facts or data for conclusions reached); *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 Fed. App'x 781, 790 (3d Cir. 2009) (opinions resting on "assumptions and conclusions that are not supported by the factual record" should be excluded as they would not "aid the jury in resolving a factual dispute" because they do not "fit under the facts of the case.") (internal citations and quotations omitted).[14]

### C.   Mr. Anderson Is Not ▓▓▓▓▓▓▓▓▓▓▓▓

At his first deposition, Mr. Anderson repeatedly ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ex. 3 (3/9/22 Dep.) at 180:8-9 ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓); *id.* at 186:23-24 ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ *id.* at 322:7-18 ▓▓▓▓▓▓▓▓▓▓▓▓

---

[14] "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) (disregarding unsupported facts put forth by expert at summary judgment stage).

*Contains Confidential Information
Subject to Protective Order*

███████████ *See* Ex. 2 (2/9/23 Dep.) at 175:2-5 (███████

███████, 228:18-21 ████████████████

███████).

Mr. Anderson is unqualified to hold himself out as ████████████

█████████████████████████ A. *See* Ex. 1 at ¶ 7. ██████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████ . *Id.*

Certainly, a single remark about being ████████████ might be written off as nothing more than witty deposition repartee. But Mr. Anderson's repeated insistence that he is such an expert, across two separate full-day depositions, warrants this request to preclude Mr. Anderson from describing himself as ██ ████████████ before the jury. He lacks any pertinent qualifications. ██████

████████████████████████████

██████████████████████████ would be unfair, misleading, unhelpful, and prejudicial.

*Contains Confidential Information*
*Subject to Protective Order*

## IV.    **CONCLUSION**

For the foregoing reasons, Mr. Anderson should be precluded from offering

his ███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████

Respectfully,

ON BEHALF OF PLAINTIFFS

By:  */s/ David J. Stanoch*
David J. Stanoch
KANNER & WHITELEY, L.L.C.
701 Camp St.
New Orleans, LA 70130
(504) 524-5777 (t)
(504) 524-5763 (f)
d.stanoch@kanner-law.com

Dated:  March 13, 2023

*Contains Confidential Information*
*Subject to Protective Order*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 13, 2023, a true and correct redacted copy of the foregoing was filed and served via the court's CM/ECF system, and an unredacted version was served on the court and the Defense Executive Committee via email.


*/s/ David J. Stanoch*
David J. Stanoch