1            **UNITED STATES DISTRICT COURT**
2            **FOR THE DISTRICT OF NEW JERSEY**

3    ━━━━━━━━━━━━━━━━━━━━━━━

                                    **CIVIL ACTION NUMBER:**
4    **IN RE:  VALSARTAN PRODUCTS**
     **LIABILITY LITIGATION            19-md-02875**
5
                                    **HEARING ON MOTION TO STAY**
6    ━━━━━━━━━━━━━━━━━━━━━━━

         Mitchell H. Cohen Building & U.S. Courthouse
7        4th & Cooper Streets
         Camden, New Jersey  08101
8        March 29, 2023
         Commencing at 1:11 p.m.
9
10   **B E F O R E:**            **THE HONORABLE ROBERT B. KUGLER**
                                **UNITED STATES DISTRICT JUDGE**

11   **A P P E A R A N C E S:**

12

         MAZIE SLATER KATZ & FREEMAN, LLC
13       BY:  ADAM M. SLATER, ESQUIRE
         103 Eisenhower Parkway
14       Roseland, New Jersey  07068
         For the Plaintiffs
15

16       HONIK LLC
         BY:  RUBEN HONIK, ESQUIRE
17       1515 Market Street, Suite 1100
         Philadelphia, Pennsylvania  191032
18       For the Plaintiffs

19

         KANNER & WHITELEY, LLC
20       BY:  CONLEE S. WHITELEY, ESQUIRE
         701 Camp Street
21       New Orleans, Louisiana  70130
         For the Plaintiffs

22
             Ann Marie Mitchell, Official Court Reporter
23              AnnMarie_Mitchell@njd.uscourts.gov
                      (856) 576-7018
24
      Proceedings recorded by mechanical stenography; transcript
25            produced by computer-aided transcription.

 1    **A P P E A R A N C E S (Continued):**

 2        LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
          BY:  DANIEL A. NIGH, ESQUIRE
 3        316 S. Baylen, Suite 600
          Pensacola, Florida 32502
 4        For the Plaintiffs

 5

          KIRTLAND & PACKARD LLP
 6        BY:  BEHRAM V. PAREKH, ESQUIRE
          1638 South Pacific Coast Highway
 7        Redondo Beach, California  90277
          For the Plaintiffs
 8

 9        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
          BY:  JESSICA DAVIDSON, ESQUIRE
10        1440 New York Avenue, N.W.
          Washington, DC 20005
11        For the Defendants, Prinston Pharmaceuticals,
          Solco Healthcare U.S. LLC, and  Zhejiang Huahai
12        Pharmaceuticals Ltd.

13

          GREENBERG TRAURIG LLP
14        BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
          3333 Piedmont Road, NE, Suite 2500
15        Atlanta, Georgia  30305

16        - and-

17        BY:  GREGORY E. OSTFELD,  ESQUIRE
          77 West Wacker Drive, Suite 3100
18        Chicago, Illinois 60601
          For the Defendants, Teva Pharmaceutical Industries Ltd.,
19        Teva Pharmaceuticals USA, Inc., Actavis LLC,
          and Actavis Pharma, Inc.

20

21    **ALSO PRESENT:**

22        LORETTA SMITH, ESQUIRE
23        Judicial Law Clerk to The Honorable Robert B. Kugler

24        Larry MacStravic, Courtroom Deputy

25

*United States District Court*

 1          (PROCEEDINGS held in open court before The Honorable
 2   ROBERT B. KUGLER at 1:11 p.m.)
 3          THE COURT:  Motion to stay.  Who's going to argue
 4   that on behalf -- and who wants to answer some questions on
 5   behalf of the defendants?
 6          MS. DAVIDSON:  That would be me, Your Honor, Jessica
 7   Davidson.
 8          THE COURT:  Come up.
 9          MS. DAVIDSON:  Did you say you have some questions or
10   should I just go ahead?
11          THE COURT:  I do, I do.
12          My first question is, what standard am I supposed to
13   use?  Because your reply brief is all over the place.
14          Page 1, you said that you need to show there's a
15   reasonable -- reasonable possibility.  Page 2, you say you
16   have to show a strong likelihood.  Page 3 you quote a case,
17   again, possibility.
18          MS. DAVIDSON:  So I think, Your Honor, obviously the
19   standard for -- is similar to the injunction, which is
20   likelihood of success on the merits.
21          THE COURT:  That's not a possibility, though, is it?
22          MS. DAVIDSON:  But --
23          THE COURT:  The standard is not possibility.  You're
24   not showing there's a possibility that I was wrong.  You have
25   to show there's a likelihood of success on the merits.

*United States District Court*

1              You agree with that.  Right?

2              MS. DAVIDSON:  So, Your Honor, that is the standard

3    generally for an injunction.  But if you look at what courts

4    have done in the 23(f) category, the reality is, right, that

5    anybody who's filing a motion for stay is filing a motion for

6    stay before a judge that certified a class, and any judge

7    who's certified a class is going to think that the class was

8    properly certified.  So courts have faced this question of,

9    how can I possibly say that there's a reasonable likelihood of

10   success on the merits?  If I really felt that, I wouldn't have

11   certified the class in the first place.

12             THE COURT:  We do make mistakes, and we correct them

13   at times.  I have.

14             MS. DAVIDSON:  Understood.  But -- so I think courts

15   have looked for some kind of comfortable language that is

16   some -- that enables a court to recognize that it believes it

17   made the right decision, the defense or whoever is challenging

18   class certification believes the court made the wrong

19   decision, and that's why courts have used mushier language as

20   you've indicated.  All the language we used in our brief was

21   from cases where courts have applied those standards.

22             THE COURT:  No.  I understand you've quoted the

23   cases, but I want to understand, what's your position as to

24   what the standard is that needs to be applied to this motion

25   for a stay?  Because they're not consistent.

*United States District Court*

1          When you cite the Ninth and Tenth Circuit cases about

2   raising serious legal questions, well, that's not the same of

3   showing a likelihood of success on the merits.  They're not

4   consistent with each other.

5          So which one do you think we should use in this case?

6          MS. DAVIDSON:  I think the standard that should be

7   used is whether there is a likelihood or a strong likelihood

8   or whether defendants have strong arguments.

9          I think courts have --

10         THE COURT:  Strong arguments and strong likelihood

11  are not the same.  Strong likelihood is a lot harder to show

12  than a strong argument.

13         MS. DAVIDSON:  So, Your Honor --

14         THE COURT:  I mean, lawyers wouldn't raise an

15  argument unless they thought it was a strong argument.  You

16  would have Rule 11 problems.  But that's not the same as a

17  likelihood of success on the merits.

18         MS. DAVIDSON:  Right.  So I understand, Your Honor.

19  I guess what I'm trying to say is that the framework of

20  likelihood of success on the merits does not perfectly fit

21  into this scenario, so district courts have each gone

22  different ways.  There is no appellate case law saying when

23  you're looking for a stay pending 23(f) reasonable likelihood

24  or strong likelihood or anything like that.

25         What I will say, Your Honor, is this:  Regardless of

```
 1   which wording is used, we feel that we satisfy it.  Right?  We
 2   think we satisfy all the standards you just listed, because of
 3   two things.  One is that no Court of Appeals in the United
 4   States has ever upheld a medical monitoring class.  That's
 5   number one.  And number two, no -- the Third Circuit and other
 6   courts, we could not find cases upholding such a complicated
 7   Venn diagram of subclasses as exist in economic loss classes.
 8          So I think I'd be --
 9          THE COURT:  Well, you're saying it's unprecedented.
10          MS. DAVIDSON:  Right.  So I think --
11          THE COURT:  But the case -- the facts of the case are
12   unprecedented.  The amount of contaminated medicine that was
13   distributed is unprecedented.  The amount of potential --
14   number of potential plaintiffs who took the medicine is
15   unprecedented.  Correct?
16          MS. DAVIDSON:  Well, I think, Your Honor, there's a
17   lot of mass torts involving medications that --
18          THE COURT:  At this -- at this level?  This many?
19   Involving a complete recall of all this medication throughout
20   the entire country?
21          MS. DAVIDSON:  There are -- there have been many MDL
22   proceedings involving recalled medication.  I don't know if
23   the numbers are exact.  Yes, valsartan was a drug that a lot
24   of people took, but that's not really the test at 23(f), and
25   that's not the test at class certification.  Right?  The test
```

1    at class certification is the Rule 23 standard.

2        And so I think that regardless of which of those

3    district courts Your Honor chooses to follow or to apply a

4    similar standard to, we would satisfy all of them, again,

5    because we think the medical monitoring class is unprecedented

6    in terms of appellate courts saying over and over again, and

7    the Third Circuit saying in -- very strongly that it doesn't

8    know if there's any medical monitoring class that could ever

9    be certified.

10        So that's the *Gates* case.  And that's why I think --

11        THE COURT:  There's no question the Third Circuit has

12    said that it's difficult to certify a medical monitoring

13    class, but it never says it's impossible.

14        MS. DAVIDSON:  It did not say it's impossible.  But

15    if we're talking about --

16        THE COURT:  Because in --

17        MS. DAVIDSON:  I think you and I can both agree that

18    it doesn't have to -- we're not talking about a standard where

19    Your Honor has to say you will definitely succeed on the

20    merits.  But if we have the Third Circuit saying it's very

21    difficult, that strikes me as satisfying any of the standards

22    that Your Honor just laid out.

23        THE COURT:  The Third Circuit never says that you can

24    never do it.  They say there are certain things you have to do

25    in order to do it.  Difficult to do and, you know, they reject

1   it in some cases because the proofs have failed in those

2   cases.  But they -- they have allowed it.  Not in the medical

3   monitoring.  There's never been one that the Third Circuit,

4   they said okay.

5          But you seem to be suggesting in your brief and again

6   today that because of the complexity of this case that it

7   shouldn't be certified as a class.

8          MS. DAVIDSON:  That is not what we're saying, Your

9   Honor.  And I'm not sure if you're talking about the economic

10  loss or the medical monitoring.  I'm happy to address either

11  one.

12         THE COURT:  Either one.

13         MS. DAVIDSON:  With respect to the economic loss, one

14  of the biggest problems with that class, Your Honor, is that

15  the subclasses are so complex that there is no way that there

16  could be a trial.  Right?  Rule 23, you're certifying a case

17  for a trial.  And because of the way the subclasses have been

18  designed, there are plaintiffs who fall into multiple

19  subclasses.  So it is unclear to me how you would have a trial

20  of that plaintiff's case.

21         Like take, for example, a plaintiff from Connecticut.

22  That plaintiff is in multiple subclasses.  So if you were to

23  try a subclass on express warranty, that would not resolve all

24  that person's claims because that person is in a different

25  subclass with different states for implied warranty or for

*United States District Court*

1  consumer fraud.

2          So it's not that the case is complex, it's that there

3  is no -- the lot is complex.  There's -- and that's the reason

4  why you don't see classes that are certified with complex

5  variations among state laws.

6          If you look at the federal jurisprudence, courts

7  really are looking at single-state classes.

8          THE COURT:  Well, how about that, then we just try a

9  case that has only New Jersey causes of action.

10          MS. DAVIDSON:  But that wasn't certified, Your Honor.

11          THE COURT:  Well, maybe we're not done.

12          MS. DAVIDSON:  So I can't really address a

13  certification order that hasn't been issued.  I can only talk

14  about the classes that have been certified.

15          THE COURT:  I'm just asking, if you're suggesting a

16  case involving the claims for only one state at a time would

17  survive the analysis.

18          MS. DAVIDSON:  What I'm saying is that the legal

19  variations is the biggest problem with the economic loss

20  cases.  I'm not saying it's the only problem.

21          THE COURT:  That's why I'm suggesting, let's pick a

22  state, any state.  New Jersey.  I don't care.  We'll try only

23  those claims that implicate New Jersey law.

24          MS. DAVIDSON:  So, Your Honor, that would still raise

25  concerns from our perspective in terms of the certifiability

1    of the claims.  And if -- I don't know if you're talking

2    about, again -- medical monitoring can't be in New Jersey.

3              THE COURT:  No.  How about the economic loss?

4              MS. DAVIDSON:  Okay.  Because of *Sinclair*.

5              So if you talk about economic loss and a New

6    Jersey-only class, what are the problems?

7              And I would say the main problem there is that

8    plaintiffs' entire theory is based on this concept that the

9    drugs were worth zero.  We have the FDA telling plaintiffs,

10   continue taking their drugs.  We have people who continued

11   taking their drugs.  We had a plaintiffs' expert who told us

12   he continued taking his valsartan after the recall.

13             So then what do you do?  How do you determine who

14   suffered what loss in one trial?  That's the factual

15   variations.  That's the second part of our briefing.

16             THE COURT:  That's why you have a jury.  Isn't that

17   why you have a jury, to determine who wins and who loses and

18   how much if they win?

19             MS. DAVIDSON:  But a jury can't -- a jury can't

20   determine in one fell swoop whether the medicine was worthless

21   for everyone.  The medicine may have had different value for

22   different people.  That's --

23             THE COURT:  I don't know why you say that.

24             MS. DAVIDSON:  Because in order to --

25             THE COURT:  We ask them to do that all the time with

1    multiple plaintiff cases.  We ask them to distinguish the

2    plaintiffs.

3            MS. DAVIDSON:  But how do you distinguish when you're

4    talking about thousands and thousands of plaintiffs?

5            THE COURT:  That's why we have witnesses and experts.

6            MS. DAVIDSON:  But you can't bring each plaintiff

7    into court.

8            THE COURT:  You don't necessarily have to in a trial.

9            MS. DAVIDSON:  So from our perspective, in terms of

10   Rule 23(b)(3) and what predominance means, it means that

11   common factual issues predominate.  Right?

12           THE COURT:  Right.

13           MS. DAVIDSON:  And so if you have different

14   plaintiffs who got different value from a medicine, then

15   common factual issues don't predominate, and you also have a

16   manageability problem because you can't -- the jury can't pass

17   judgment on each of those plaintiffs.  There's just too many.

18           So the -- you would have to have -- unless you

19   completely accept plaintiffs' theory that all the medicine was

20   worth zero and that's why they're -- that's why they're

21   promoting that theory, right, because if it's all worth zero,

22   then everybody can be decided in one fell swoop.

23           THE COURT:  Well, that's not the only reason.

24           MS. DAVIDSON:  But we have a due process right to

25   defend against that.

```
 1            THE COURT:  There's no -- that's not the only reason

 2   they're advancing that theory.  But that is their theory.  And

 3   they're going to have testimony that the drug has no value

 4   because of the contamination.

 5            MS. DAVIDSON:  Correct.

 6            THE COURT:  Or adulteration, whatever term you choose

 7   to use.

 8            MS. DAVIDSON:  Correct.

 9            THE COURT:  The jury can believe that or not,

10   depending on the evidence on the other side.

11            MS. DAVIDSON:  Right.  But under due process and

12   under Rule 23, we have a right to present plaintiff-specific

13   evidence of that, just like we would if there was a

14   two-plaintiff trial.

15            Say there was a two-plaintiff trial and plaintiffs

16   said the drug was worth zero.  We bring in the two plaintiffs

17   and their doctors and, you know, we would present evidence to

18   the jury, here's why the drug had value to person A, here's

19   why the drug had value to person B.

20            When you're talking about thousands of people, we

21   lose the right to do that.  We lose the ability to do that.

22   And that's why Rule 23 was created that way, to protect due

23   process.

24            THE COURT:  What you seem to be suggesting is it's

25   impossible to ever try a class action case because you would
```

1    want -- you as a defendant in any class action case,

2    employment, whatever, you'd want to have -- to require every

3    plaintiff to show up in court and testify about his or her

4    claim.  So you couldn't use experts.  You couldn't use

5    sampling.  You couldn't use summary charts and things of that

6    nature.

7        You'd have to have -- you say due process would

8    require each and every plaintiff to show up and prove his or

9    her case.  Right?

10        MS. DAVIDSON:  Your Honor, it would depend on the

11    elements of the claims.  So because we were talking about New

12    Jersey, I was thinking about like the NJ CFA and ascertainable

13    loss.  Can you prove ascertainable loss on a classwide basis?

14    And lots of courts have said you can't.

15        So I think it depends on what the claims are, what

16    the causes of action are, what the theories are, and whether

17    those causes of action can be proven on a classwide basis or

18    whether they require individualized evidence.

19        THE COURT:  Another point that you make in your brief

20    is that one of the reasons you think the Third Circuit will

21    take this and should take this is because of what you call the

22    pressure from this Court for you to settle the case, the undue

23    pressure.  Correct?

24        MS. DAVIDSON:  Yes, Your Honor.

25        THE COURT:  Name me one case you've ever been

1  involved in in which the judge did not suggest that you and

2  your client consider settling it.

3          MS. DAVIDSON:  Your Honor, my understanding is --

4          THE COURT:  Name me one case, that's my question,

5  that you've ever been involved in in which a judge did not

6  suggest that you and your client participate in settlement

7  discussions.

8          MS. DAVIDSON:  Your Honor, I think that it would be

9  difficult for me to go through all the cases I've ever been

10 in --

11         THE COURT:  Because the answer is none.

12         MS. DAVIDSON:  I don't think that's true, at least

13 from my perspective.  I don't know about the other defense

14 counsel.

15         And I think that the concern that we had there was

16 that there was language, both in the order and there has been

17 this parallel process of settlement discovery masters where

18 there seems to be a focus in this MDL more on settlement than

19 on trial.  And that was the concern.

20         THE COURT:  Settlement counsel is becoming pretty

21 standard in MDLs, isn't it?

22         MS. DAVIDSON:  I have not had any MDLs with separate

23 settlement counsel, Your Honor.

24         THE COURT:  It is.

25         What consequences, adverse consequences, did I

*United States District Court*

1 threaten if you didn't, as the Third Circuit in *Laudato* term

2 it, play along with the settlement suggestions?  What

3 consequences did I threaten?

4          MS. DAVIDSON:  Your Honor, I don't believe that we've

5 submitted briefing that said you threatened consequences.

6          THE COURT:  Because I didn't, did I?

7          MS. DAVIDSON:  I don't believe that was in the

8 briefing, Your Honor.

9          THE COURT:  Is that your answer to my question?  Yes,

10 I didn't threaten any consequences if you didn't settle the

11 case?

12          MS. DAVIDSON:  To my knowledge, I have not been

13 involved in any conversations where that occurred.

14          THE COURT:  You're not aware of any either, are you?

15          MS. DAVIDSON:  I am not aware of any.

16          THE COURT:  Okay.

17          MS. DAVIDSON:  Your Honor, if I may?  May I raise

18 something, Your Honor?

19          THE COURT:  Well, let me also ask you about this.

20          Are you aware of the new proposed Rule 16.1?

21          MS. DAVIDSON:  I would have to look at my federal

22 rules.

23          THE COURT:  Well, it's not -- it's a proposed rule.

24 It's brand new.  They're starting the process.  And it's a

25 rule designed specifically for MDLs.

1          And it lists -- there's sort of a checklist of things

2     that it suggests.  It suggests that the judge and an MDL have

3     early conferences and set up schedules and how to manage the

4     case.

5          But one of the points it suggests that the judge and

6     that litigants talk about is what settlement process they

7     should use.

8          So discussion of settlement will be enshrined in --

9     as it is in Rule 16 for non-MDL cases, will be enshrined in a

10    rule designed right for and specifically for MDLs.  Okay?

11         So why is it improper for the judge managing an MDL

12    to suggest to counsel that perhaps they should be considering

13    settlement of the case?

14         MS. DAVIDSON:  Your Honor, I think what our concern

15    was in the briefing, and I think the briefing makes this

16    clear, is that Rule 23 is meant for trial.  I'm talking about

17    Rule 23 right now, because we're talking about certification.

18         THE COURT:  You raised the point about trying to

19    nudge you into settlement.  That's what I'm addressing.

20         MS. DAVIDSON:  So, Your Honor, I have two things to

21    say, if I may.

22         The first is that Rule 23 is intended for trial.

23    The -- because the Rule 23 order referenced that class

24    certification would promote settlement, that was a concern to

25    defendants.

1          The second thing I want to say, Your Honor, is that

2   the nature of the way the class certification order was, with

3   111 subclasses, to us seemed utterly impossible to try.

4          So the only possible purpose is to have a class

5   settlement, because you can't have 111 trials.  We have --

6   there was no trial plan.  And so there was no indication to us

7   of how class trials would proceed based on this order.

8          THE COURT:  Well, we haven't decided that yet.  Very

9   specifically we said that we would talk about that, how we

10  were going to handle these trials, at a later date, which we'd

11  be starting today.  So we haven't decided exactly the

12  parameters of the trial yet.

13         And I don't know why -- I don't know why you think

14  it's utterly impossible to try these cases.

15         Let's be honest here.  There's some of the best

16  lawyers in the country involved in this case.  I have great

17  confidence that working together we can figure out a way to do

18  this and get it done.

19         The Court's not concerned about complex cases.  Heck,

20  I had a trial where the jury charge was 186 pages.  It took me

21  eight hours to give the jury charge.  There were over 500

22  individual verdicts in that case.  It wasn't easy, but with

23  everybody working together, we figured out how to do it and

24  how to make it make sense for the jury.

25         And I'm confident that we can certainly do that in

1  this case, given the level of competency of the lawyers that

2  we have in this case.  Great lawyers here.  A lot of

3  experience in complicated matters.  We'll figure out how to do

4  it.

5          I'm not at all concerned about the complexity of this

6  case.  All class actions are complex.  If you ever take a

7  course in complex litigation, it's mostly about class actions.

8  That's what we do, for better or for worse.  So I'm not really

9  concerned about that, to be honest with you.

10         And I don't think you -- that counsel should be

11  concerned about that either.  We'll work together and get it

12  figured out how to do this thing.

13         MS. DAVIDSON:  Your Honor, if I may respond.

14         THE COURT:  Sure.

15         MS. DAVIDSON:  So first of all, Rule 23 jurisprudence

16  expects a trial plan as part of the class action ruling so

17  that there's an understanding of what exactly is going to be

18  tried is the first thing I would say.

19         And the second thing I would say is, yes, these are

20  great lawyers, a great Court, but court after court in

21  America, like day after day after day, every court is holding,

22  you can't do this.  You can't have a trial with lots of

23  different law thrown in.  These multi-state trials are not

24  feasible.  Like court after court has said that.  In warranty

25  cases, in consumer fraud cases.  There's nothing unique about

1  this case that would make a jury able to comprehend.  We're

2  talking, right, like 200 different jury instructions.  If you

3  take 50 states, four causes of action, it's just -- it's not

4  feasible.

5        No court has ever found it feasible.  No Court of

6  Appeals has found it feasible.  So the subclassing proposal

7  here didn't come with a viable trial plan.

8        THE COURT:  We're getting there.

9        MS. DAVIDSON:  But if I could get back to the stay

10 issue, because I think there's something really important

11 to --

12        THE COURT:  We're going to get to a trial plan.

13 Okay?  We'll figure it out.  I'm not worried about it.  I'm

14 not dissuaded at all about the complexity of the case.  And I

15 don't think any of you should be either.

16        You know, it's going to be difficult, sure.  There

17 are going to be times when you just want to give up in

18 frustration, sure.  But we'll get through it.  We will.

19        Go ahead.  You wanted to say something.  I

20 interrupted.  I'm sorry.

21        MS. DAVIDSON:  I think the main thing I want to say,

22 Your Honor, is that I looked last night at PACER at Third

23 Circuit precedents.  And the Third Circuit, over the last

24 year, has decided 23(f) petitions within about a month

25 usually.  It takes about a month.  Some of them have been

United States District Court

1 three weeks.  Three to six weeks is the average.

2        Now, we were at five weeks.  As you know, plaintiffs

3 got two extra weeks for their opposition or we'd already know

4 if the Third Circuit was taking this.  But we're going to hear

5 in a week or two.

6        So I feel in a sense like this whole concern about

7 whether or not to say this case will be determined very

8 quickly, because we will know very, very quickly whether the

9 Third Circuit is going to accept 23(f).  And so we may not

10 really even need to be overly concerned as to whether the case

11 should be stayed pending the Third Circuit deciding whether

12 it's going to accept the appeal because we should hear any

13 day.

14        THE COURT:  Well, that works against you too, because

15 what's the harm then in starting back up if in a week from now

16 we'll know for sure?  And if a week from now the Third Circuit

17 says stop, what have we lost?

18        MS. DAVIDSON:  Well, Your Honor, I guess I would say

19 I'm not even sure -- I was thinking about this also -- exactly

20 what we would start up again.

21        Because one of the things that I think is really

22 important to note is that if you look at plaintiffs' cases,

23 the reason a few of those courts -- there are a few courts

24 that denied stays, every court that denied a stay, it was

25 because there was discovery outstanding that would be relevant

1   to individual cases as well.  So like depose the company,

2   depose the plaintiff, because we're going to need that in an

3   individual case as well.

4        Here, we've really done everything.  Right?  We -- if

5   you look at the whole lead-up to the TPP trial, what's coming

6   next is damages.  That's a completely different analysis

7   depending on whether there is a class, whether there's no

8   class and the scope of the class.

9        So when we say start up again, there's nothing to

10  start up again that would be useful, that would not be

11  wasteful if class cert were reversed.

12       THE COURT:  Let me confirm with you that what you're

13  seeking is a stay of everything.  Correct?

14       MS. DAVIDSON:  A stay of class matters.

15       THE COURT:  What else is there at the moment?

16       MS. DAVIDSON:  In this litigation?

17       THE COURT:  Yeah.

18       MS. DAVIDSON:  Well, there are the personal injury

19  cases, but my understanding from before I got involved is that

20  those are not being advanced.

21       THE COURT:  No, they're not at this point.

22       But other than that, what else is there?  So you want

23  everything -- you just want this to come to a halt now until

24  we hear definitively from the Third Circuit?

25       MS. DAVIDSON:  We are asking --

1          THE COURT:  And we do nothing.

2          MS. DAVIDSON:  We are asking for anything related to

3   class issues to be stayed, because everything -- unless there

4   are things that are relevant to individual cases, but there

5   apparently are none outstanding at this point.  Right?

6   Because we did the liability experts and next came damages.

7          If you look at the Court's scheduling order, the next

8   thing in line was damages, which is completely dependent on if

9   there's a class, if there's not a class, what the scope of the

10  class is.

11         For example, Your Honor was just saying something

12  about a New Jersey-only class.

13         If that were -- if the Third Circuit were to remand

14  and Your Honor were to do a new certification order for New

15  Jersey only, let's just say, that would be a whole different

16  damages analysis.

17         So we don't even know what we're dealing with.  And

18  the next thing in line was doing damages.  We did a lot of

19  work this year.

20         THE COURT:  We know -- we know something about the

21  economic loss claims.  Right?  It's what they paid out for

22  these prescriptions.  And they want their money back.

23         That's the claim.  Right?

24         MS. DAVIDSON:  But in order for us, for example, to

25  present damages experts, we need to know who the plaintiffs

1    are, what's the size, what's the scope.

2         THE COURT:  Okay.  If they serve an expert report in

3    those cases, wouldn't that lay out what their claims are?

4         MS. DAVIDSON:  But their expert report would be

5    tied -- what would it be tied to?  To the current

6    certification order?  So we would be doing expert discovery on

7    a certification order that the Third Circuit may decide that

8    it wants to review.  That's why I'm saying it makes sense to

9    wait.

10        THE COURT:  You know that the third-party payer cases

11   are going to go on whether there's a class or not.  Right?

12   There's just too much money.  They're in to it too deep, and

13   they want their money back.  They're going to -- even if they

14   have to pursue it individually, they will.  Correct?

15        MS. DAVIDSON:  And we have done a lot of workup on

16   those third-party cases.

17        THE COURT:  So if we've already done all that work on

18   the third-party payer cases, I assume you have some idea how

19   much money they think they're owed.

20        MS. DAVIDSON:  For the individual cases?

21        THE COURT:  For the individual -- the individual

22   claimants, yes.

23        MS. DAVIDSON:  So when we were going down this path

24   right before you issued your class cert order, we were going

25   to do damages, experts, for what we thought was a named

*United States District Court*

1    plaintiff only trial this summer with, you know, the two

2    assignors I think it was.  And we were going to do damages

3    reports on that.

4          But then, right before we were starting to talk to

5    our experts, right, this order came down.  And then we no

6    longer knew whether we -- what the target was.  Was the target

7    a class, or was the target these named plaintiffs?

8          So we could do damages discovery on the named

9    plaintiffs.  That's single -- but that's not class discovery.

10          THE COURT:  No, I get that.  I'm just trying to

11   figure out -- I'm trying to understand how much more would be

12   involved if it proceeded as a class than what you've already

13   done.

14          You're telling me that it's just a lot, but I'm

15   trying to get some more details as to what do you mean,

16   there's a lot that needs to be done and we shouldn't do it

17   until we know for sure.

18          MS. DAVIDSON:  What I'm saying is it's a completely

19   different expert opinion from these experts.  We'd be paying

20   experts to do a damages opinion on a class when we don't even

21   know, first of all, what the class is.  We don't know which

22   subclass the Court is considering trying.

23          There's no -- we don't -- our experts wouldn't have a

24   clear target of what they are writing a report about.  Whereas

25   if we determined -- if the Court denies 23(f), then we know.

1  If the Court grants 23(f), then when we know that it's not --

2  you know, we need to wait and see what the Third Circuit says

3  about these classes.  But we're not --

4          THE COURT:  Well, if the Third Circuit denies --

5  which, frankly, I think it will.  But if they do, then the

6  experts -- well, we're going to have to focus -- and I wanted

7  to start that today -- on the exact case we're going to try

8  and the parameters of the exact case we're going to try as a

9  class case.

10         You know, when we focus on that, then the plaintiffs

11 will know what their expert has to address and you'll know

12 what your experts have to address.  Correct?

13         MS. DAVIDSON:  So, Your Honor, I'm afraid I don't

14 really understand what you mean by what's the exact case

15 we're going to try, because right now we have a certification

16 order --

17         THE COURT:  We're not trying all the cases at the

18 same time.  We're not going to be in some mega trial where

19 every claim and every claimant is tried under every potential

20 law.  We're just not going to do that.  I don't think anybody

21 wants to do that.

22         MS. DAVIDSON:  But that's what a class certification

23 order is, so I'm just confused.  Unless the Court is going to

24 issue a new certification order that certifies smaller or

25 different classes, I'm not sure I understand.

1          THE COURT:  The understanding that I thought we all

2    had was that we were going to focus now on getting something

3    ready for trial.  And we were going to figure out among all of

4    us what that something was.

5          MS. DAVIDSON:  And we understood that as well, but

6    then the class cert order came down and changed the whole

7    equation.

8          THE COURT:  Well, it's not the case that -- you're

9    right.  It's not the case we originally were teeing up.

10         But -- I mean, I'm sorry that the opinion and order

11   came down, but, I mean, that's -- the rule says I have to do

12   that as soon as I can.  And that was as soon as we can.  That

13   was -- you know, it's pretty complicated stuff.

14         MS. DAVIDSON:  But if we're talking about a

15   third-party payer class, and what state of third-party payers

16   are involved?  Which third-party payers against which

17   defendants?  Like the class was certified against all

18   defendants.

19         THE COURT:  I understand that.

20         MS. DAVIDSON:  So the trial has to be consistent with

21   the class certification ruling.

22         THE COURT:  That can be amended.

23         MS. DAVIDSON:  That's the case law.

24         THE COURT:  That can be amended.  That can be

25   changed.

1          That's -- I thought that was our understanding.  But
2   apparently it's not your understanding?
3          MS. DAVIDSON:  It was not my understanding that the
4   Court intended to amend its class certification order, no.
5          THE COURT:  Okay.  Okay.  Sorry I wasn't clear about
6   that.  I thought we were.
7          I think that's the plaintiffs' understanding, but
8   we'll see.  They'll get to talk soon.
9          Anything else you wanted to say about this motion to
10  stay?
11         MS. DAVIDSON:  No, Your Honor.  Just that I think
12  that we are going to have an answer very soon, and so this may
13  be a bit of an academic discussion.
14         THE COURT:  I hope so.
15         MS. DAVIDSON:  Thank you, Your Honor.
16         THE COURT:  Thank you.
17         Who wants to speak for plaintiffs?
18         MR. HONIK:  Your Honor, Ruben Honik.  Good afternoon.
19  I will principally.
20         May I remain seated with my notes?
21         THE COURT:  Sure.
22         MR. HONIK:  Thank you, Judge.
23         THE COURT:  So what was your understanding about what
24  we're going to try classwide?
25         MR. HONIK:  Your Honor, let me take a half step back

1    if I may.

2         And I say this respectfully.  I think Ms. Davidson is

3    just completely wrong about the implication of a class ruling.

4    It does not oblige any judge, let alone an MDL judge, to try

5    the entire class case.

6         You as an MDL judge have trial and management tools

7    at your disposal that allows you to try such fewer claims,

8    such fewer defendants, as is practical.

9         And our understanding was that you had selected MSP

10   or we had selected and the Court had approved that MSP and two

11   assignors would be a specific plaintiff whose individual

12   claims would be tried as to three defendants.

13        That can still occur even if it has classwide

14   implications.  In other words, we can still try that.  Your

15   Honor can elect to continue to do that once we have clarity

16   from the Third Circuit.  And then it has class implications.

17   There may be res judicata as to certain claims that Your Honor

18   directs us to try.

19        So I'm merely suggesting that Your Honor has at his

20   disposal the ability to try such fewer claims as to such

21   number of defendants as is practicable.  And that's not only

22   permissible, but that's I think envisioned in your role as an

23   MDL judge.

24        The alternative is to complete discovery and for you

25   to send literally thousands of cases back to their respective

1   courts, which is something that, you know, we don't want to

2   do.  That's why we have MDLs, and that's why we have class

3   cases.

4           The other thing I wanted to point out, because I'm

5   not sure that the record reflects accurately what the standard

6   is that Your Honor should be applying to the stay request.

7           That's a request for extraordinary relief that should

8   not be given as a matter of course.  And the standard, quite

9   clearly, is that there has to be a strong likelihood, not

10  merely a likelihood, a strong likelihood that the 23(f)

11  petition will be granted and will succeed on the merits.  It's

12  two steps.  The court -- the Third Circuit has to agree to

13  hear it jurisdictionally in the first instance, and then there

14  has to be a demonstration on the merits that they will

15  succeed, meaning that you'll be reversed.  And the standard

16  there, Judge, is an abuse of discretion.  The defense has to

17  point out that the ruling was clearly erroneous, so that it's

18  an exceptionally high bar.

19          We've proffered to the Court our opposition to the

20  23(f) so you see the basis on which we defend your ruling.

21          And we share the view that the Third Circuit is

22  highly unlikely to entertain this appeal.

23          But for purposes of the stay and meeting the first

24  prong of demonstrating a strong likelihood of success, it's

25  just not there.

1          And that's not the only standard.  They have to show

2   that there's -- they're likely going to suffer irreparable

3   harm absent a stay.  And there's been no showing and -- no

4   meaningful showing that that prong will be satisfied.  That

5   there's a public interest at stake.  None of those prongs have

6   been met here.

7          And, respectfully, Judge, there's a great deal that

8   we can and should be doing for the very reason that

9   Ms. Davidson suggested, namely that whether we proceed on a

10  classwide basis or not, we have to complete certain elements

11  in this case to get going.  And whether the trial is for one

12  TPP or a class of TPPs, there's more work to be done.

13         And what do I mean by that?

14         We have already proffered, under the Court's

15  direction, a damage report from Dr. Conti which does two

16  things.  It gave classwide damages.  It identified all the TPP

17  losses related to the sale of contaminated valsartan, and it

18  specifically identified the losses suffered by MSP's two

19  assignors.

20         We've proffered that.  We're now at a stage where the

21  defendant should be doing the same.  I mean, they have

22  economists lined up that -- they weighed in on the class

23  certification months ago.  What needs to happen now is they

24  need to go and have a similar report which addresses on the

25  one hand specific TPP damages, say, for MSP and address

1    classwide damages.

2           And that's not the only thing that remains to be

3    done, Judge.  We're in the middle of Daubert briefing.  It's

4    been partially done as to ZHP/Torrent/Teva, but that briefing

5    needs to be completed.  And the Court should, until the Third

6    Circuit weighs in, simply hold off on issuing a ruling.  But

7    the Court should have our completed Daubert briefing.

8           We should, as I've already mentioned, complete the

9    damage expert reports.  We've tendered ours as to the

10   MSP/ZHP/Torrent/Teva, which was our anticipated first trial,

11   and may still be our first trial.  The defendants should now

12   depose Dr. Conti.  They in turn file should their damage

13   reports.

14          We should prepare -- the plaintiffs should prepare a

15   class notice program and have that at the ready and submitted

16   to Your Honor so that when the Third Circuit does weigh in,

17   and if it declines to accept jurisdiction, that Your Honor can

18   review and approve the notice program.

19          We need to obtain additional fact discovery of the

20   retailers and wholesalers.  You'll recall in this case, Judge,

21   that that was largely deferred by Judge Schneider's rulings,

22   and we're now at the point, knowing where we are on the class

23   side, that we need to obtain additional fact discovery from

24   the retailers and wholesalers.  Certainly we could limit it

25   potentially to such items as profit, revenue and cost, which

```
 1    goes to our UE damages.  And that can be done for a single
 2    plaintiff or a class.  And we need to do some targeted
 3    custodial discovery.
 4           Finally, we need some expert discovery as to the
 5    retailers and wholesalers as well.
 6           We think this is the range of things that we ought to
 7    be doing at this point to try to wrap this four-year-old MDL
 8    up.
 9           And, Your Honor, I also took careful note that
10    Ms. Davidson kept suggesting that the complexity of these
11    subclasses was either somehow a problem or never approved by
12    the Third Circuit.
13           And while you have our papers, that the case that
14    stands out particularly in my head is the en banc Third
15    Circuit decision in In re School Asbestos cases, which
16    involved 14,000 schools, over 50 defendants, all up and down
17    the supply chain, a great -- a number much greater than the
18    ones involved in our supply chain, and an en banc panel of the
19    Third Circuit affirmed that 23(b)(3) class certification.
20           So the idea that the mere number of subclasses is
21    somehow insuperable, that it can't be managed, is simply not
22    the case.  And while I think we can all agree these are
23    complex cases and there are a lot of moving parts, that
24    doesn't make trial management of it insuperable.
25           THE COURT:  I'm not worried about trial management.
```

1          Did you want to respond?  It's your motion.  Do you

2    want to respond to his arguments?

3          MS. DAVIDSON:  Your Honor, I think we're mostly

4    debating the merits of a class certification ruling as opposed

5    to talking about the stay.

6          I just want to say from, like, a practical

7    perspective, I think in a few days we'll know if the Third

8    Circuit hears this.  And so I think that is the most prudent

9    course to take, is to just wait and see what the Third Circuit

10   says in a couple days.

11         THE COURT:  Well, we don't know when the Third

12   Circuit's going to act.  I mean, it's a -- it is a little more

13   complex than other class actions that are -- I'm sure have

14   been considered by the Third Circuit, but we don't know.

15         MS. DAVIDSON:  Weeks instead of days.  It should be a

16   few weeks.

17         THE COURT:  I mean -- yeah.

18         MS. DAVIDSON:  If we sort of turn the engines back on

19   and start working on damages experts, right, we're going to

20   need some time to do that, but -- so we would start doing

21   that.  And we'll hear very shortly.

22         But you're right, Your Honor, it could be a few

23   weeks.  A few days to a few weeks would be my estimate.

24         THE COURT:  We hope.

25         MS. DAVIDSON:  Thank you.

*United States District Court*

1          THE COURT:  We don't know.  Thank you.

2          All right.  I'm going to deny the application for a

3    stay in this matter.  I don't think defendants have met the

4    standard, the likelihood of success on the merits.

5          I mean, this has been a reargument of the Court's

6    decision in the certification motions.  I still believe that

7    we are correct.

8          I get it.  This is -- this is an unusual case.  There

9    aren't many cases like this that the Courts of Appeals have

10   considered.  But I think we were very careful in our analysis

11   of the various classes and subclasses and the grouping that we

12   tried to do, and I don't think the defendants have shown a

13   likelihood of success on the merits in this case, so I'm going

14   to deny it.

15         Plus I don't -- you know, if -- as we hope we have a

16   decision soon, there isn't going to be a whole lot of work

17   that gets done before that anyway.  And if they -- the Third

18   Circuit grants the petition and we have to crawl to a stop,

19   we'll have not done a whole lot of work before that happens.

20   So let's get on what we need to do.

21         So that's the next issue, is now what do we need to

22   do.

23         Mr. Golomb, you've indicated some things you think we

24   need to do.

25         Do the defendants have any ideas as to what they

1   would like to do?

2           MR. OSTFELD:  Your Honor, Greg Ostfeld.

3           I believe it would probably be prudent for us to do

4   what we've been doing throughout the MDL, which is plaintiffs

5   and defendants should meet and confer and we can get back to

6   Your Honor on short order with a proposal.

7           We understand you're denying the stay, and we

8   understand that means we need to get moving.  So I think it

9   would be prudent for us to meet, discuss Mr. Honik's ideas,

10  discuss defendants' ideas we can bring to the table, and put a

11  proposal in front of Your Honor for what can get started now.

12          THE COURT:  I assume that plaintiffs are agreeable to

13  trying to work that out.  Correct?

14          MR. HONIK:  Yes, Your Honor.

15          THE COURT:  How much time do you need to present a

16  proposal?

17          MR. OSTFELD:  Your Honor, my experience has been

18  we're usually able to schedule a meeting within a week or so

19  and hash things out over the course of another week or so.  So

20  if we could report back to the Court in about 21 days, I think

21  that would be a good amount of time for us to put either a

22  joint proposal or competing proposals together for the Court.

23          MR. HONIK:  It feels like a stay.  I think we --

24          THE COURT:  How about 14 days?

25          MR. HONIK:  How about 14 days?

```
 1              THE COURT:  Let's do 14 days.

 2              MR. OSTFELD:  Understood.

 3              THE COURT:  I'll hear from you in 14 days either you

 4   have an agreement that you -- a consent agreement you submit

 5   to me or you have competing proposals, and then we'll figure

 6   it out from there.  Okay?

 7              MR. HONIK:  Very good, Judge.

 8              THE COURT:  Thank you.

 9              MR. OSTFELD:  Thank you, Your Honor.

10              THE COURT:  Anything else we need to talk about

11   today?  It's a beautiful day out there.  Amazing.

12              MS. LOCKARD:  Nothing I'm aware of, Your Honor.

13              THE COURT:  And baseball season opens.  I mean, we're

14   ready to go.  Right?

15         All right.  Thank you, everybody.  It's good to see

16   everybody.  I hope you all stay well.

17              RESPONSE:  Thank you, Your Honor.

18              THE DEPUTY CLERK:  All rise.

19         (Proceedings concluded at 1:52 p.m.)

20                             -  -  -

21         I certify that the foregoing is a correct transcript

22   from the record of proceedings in the above-entitled matter.

23

24   /S/ Ann Marie Mitchell        30th day of March, 2023
     Court Reporter/Transcriber    Date
25
```

*United States District Court*

## /

**/S** [1] - 36:24

## 0

**07068** [1] - 1:14
**08101** [1] - 1:7

## 1

**1** [1] - 3:14
**103** [1] - 1:13
**11** [1] - 5:16
**1100** [1] - 1:17
**111** [2] - 17:3, 17:5
**14** [4] - 35:24, 35:25, 36:1, 36:3
**14,000** [1] - 32:16
**1440** [1] - 2:10
**1515** [1] - 1:17
**16** [1] - 16:9
**16.1** [1] - 15:20
**1638** [1] - 2:6
**186** [1] - 17:20
**19-md-02875** [1] - 1:4
**191032** [1] - 1:22
**1:11** [2] - 1:8, 3:2
**1:52** [1] - 36:19

## 2

**2** [1] - 3:15
**200** [1] - 19:2
**20005** [1] - 2:10
**2023** [2] - 1:8, 36:24
**21** [1] - 35:20
**23** [9] - 7:1, 8:16, 12:12, 12:22, 16:16, 16:17, 16:22, 16:23, 18:15
**23(b)(3** [2] - 11:10, 32:19
**23(f** [8] - 4:4, 5:23, 6:24, 19:24, 24:25, 25:1, 29:10, 29:20
**23(f)** [1] - 20:9
**2500** [1] - 2:14
**29** [1] - 1:8

## 3

**3** [1] - 3:16
**30305** [2] - 2:15
**30th** [1] - 36:24
**3100** [1] - 2:17
**316** [1] - 2:3
**32502** [1] - 2:3
**3333** [1] - 2:14

## 4

**4th** [1] - 1:7

## 5

**50** [2] - 19:3, 32:16
**500** [1] - 17:21
**576-7018** [1] - 1:23

## 6

**600** [1] - 2:3
**60601** [1] - 2:18

## 7

**701** [1] - 1:20
**70130** [1] - 1:21
**77** [1] - 2:17

## 8

**856** [1] - 1:23

## 9

**90277** [1] - 2:7

## A

**ability** [2] - 12:21, 28:20
**able** [2] - 19:1, 35:18
**above-entitled** [1] - 36:22
**absent** [1] - 30:3
**abuse** [1] - 29:16
**academic** [1] - 27:13
**accept** [4] - 11:19, 20:9, 20:12, 31:17
**accurately** [1] - 29:5
**act** [1] - 33:12
**Actavis** [2] - 2:19, 2:19
**ACTION** [1] - 1:3
**action** [7] - 9:9, 12:25, 13:1, 13:16, 13:17, 18:16, 19:3
**actions** [3] - 18:6, 18:7, 33:13
**ADAM** [1] - 1:13
**additional** [2] - 31:19, 31:23
**address** [5] - 8:10, 9:12, 25:11, 25:12, 30:25
**addresses** [1] - 30:24
**addressing** [1] - 16:19
**adulteration** [1] - 12:6
**advanced** [1] - 21:20
**advancing** [1] - 12:2
**adverse** [1] - 14:25

**affirmed** [1] - 32:19
**afraid** [1] - 25:13
**afternoon** [1] - 27:18
**ago** [1] - 30:23
**agree** [4] - 4:1, 7:17, 29:12, 32:22
**agreeable** [1] - 35:12
**agreement** [1] - 36:4
**ahead** [2] - 3:10, 19:19
**aided** [1] - 1:25
**allowed** [1] - 8:2
**allows** [1] - 28:7
**alone** [1] - 28:4
**ALSO** [1] - 2:21
**alternative** [1] - 28:24
**amazing** [1] - 36:11
**amend** [1] - 27:4
**amended** [2] - 26:22, 26:24
**America** [1] - 18:21
**amount** [2] - 6:12, 6:13, 35:21
**analysis** [4] - 9:17, 21:6, 22:16, 34:10
**Ann** [1] - 36:24
**ann** [1] - 1:22
**AnnMarie_Mitchell@ njd.uscourts.gov** [1] - 1:23
**answer** [4] - 3:4, 14:11, 15:9, 27:12
**anticipated** [1] - 31:10
**anyway** [1] - 34:17
**appeal** [2] - 20:12, 29:22
**Appeals** [3] - 6:3, 19:6, 34:9
**appellate** [2] - 5:22, 7:6
**application** [1] - 34:2
**applied** [2] - 4:21, 4:24
**apply** [1] - 7:3
**applying** [1] - 29:6
**approve** [1] - 31:18
**approved** [2] - 28:10, 32:11
**argue** [1] - 3:3
**argument** [3] - 5:12, 5:15
**arguments** [5] - 5:8, 5:10, 33:2
**ARPS** [1] - 2:9
**Asbestos** [2] - 32:15
**ascertainable** [2] - 13:12, 13:13
**assignors** [3] - 24:2, 28:11, 30:19
**assume** [2] - 23:18,

35:12
**Atlanta** [1] - 2:15
**Avenue** [1] - 2:10
**average** [1] - 20:1
**aware** [4] - 15:14, 15:15, 15:20, 36:12

## B

**banc** [2] - 34:14, 32:18
**bar** [1] - 29:18
**baseball** [1] - 36:13
**based** [2] - 10:8, 17:7
**basis** [4] - 13:13, 13:17, 29:20, 30:10
**Baylen** [1] - 2:3
**Beach** [1] - 2:7
**beautiful** [1] - 36:11
**becoming** [1] - 14:20
**behalf** [2] - 3:4, 3:5
**BEHRAM** [1] - 2:6
**believes** [2] - 4:16, 4:18
**best** [1] - 17:15
**better** [1] - 18:8
**biggest** [2] - 8:14, 9:19
**bit** [1] - 27:13
**brand** [1] - 15:24
**brief** [4] - 3:13, 4:20, 8:5, 13:19
**briefing** [8] - 10:15, 15:5, 15:8, 16:15, 31:3, 31:4, 31:7
**bring** [3] - 11:6, 12:16, 35:10
**Building** [1] - 1:6

## C

**California** [1] - 2:7
**Camden** [1] - 1:7
**Camp** [1] - 1:20
**care** [1] - 9:22
**careful** [2] - 32:9, 34:10
**case** [45] - 3:16, 5:5, 5:22, 6:11, 7:10, 8:6, 8:16, 8:20, 9:2, 9:9, 9:16, 12:25, 13:1, 13:9, 13:22, 13:25, 14:4, 15:11, 16:4, 16:13, 17:16, 17:22, 18:1, 18:2, 18:6, 19:1, 19:14, 20:7, 20:10, 21:3, 25:7, 25:8, 25:9, 25:14, 26:8, 26:9, 26:23, 28:5, 30:11, 31:20, 32:13, 32:22, 34:8, 34:13

**cases** [29] - 4:21, 4:23, 5:1, 6:6, 8:1, 8:2, 9:20, 11:1, 14:9, 16:9, 17:14, 17:19, 18:25, 20:22, 21:1, 21:19, 22:4, 23:3, 23:10, 23:16, 23:18, 23:20, 25:17, 28:25, 29:3, 32:15, 32:23, 34:9
**category** [1] - 4:4
**causes** [4] - 9:9, 13:16, 13:17, 19:3
**cert** [3] - 21:11, 23:24, 26:6
**certain** [3] - 7:24, 28:17, 30:10
**certainly** [2] - 17:25, 31:24
**certifiability** [1] - 9:25
**certification** [19] - 4:18, 6:25, 7:1, 9:13, 16:17, 16:24, 17:2, 22:14, 23:6, 23:7, 25:15, 25:22, 25:24, 26:21, 27:4, 30:23, 32:19, 33:4, 34:6
**certified** [10] - 4:6, 4:7, 4:8, 4:11, 7:9, 8:7, 9:4, 9:10, 9:14, 26:17
**certifies** [1] - 25:24
**certify** [2] - 7:12, 36:21
**certifying** [1] - 8:16
**CFA** [1] - 13:12
**chain** [2] - 32:17, 32:18
**challenging** [1] - 4:17
**changed** [2] - 26:6, 26:25
**charge** [2] - 17:20, 17:21
**charts** [1] - 13:5
**checklist** [1] - 16:1
**Chicago** [1] - 2:18
**choose** [1] - 12:6
**chooses** [1] - 7:3
**Circuit** [32] - 5:1, 6:5, 7:7, 7:11, 7:20, 7:23, 8:3, 13:20, 15:1, 19:23, 20:4, 20:9, 20:11, 20:16, 21:24, 22:13, 23:7, 25:2, 25:4, 28:16, 29:12, 29:21, 31:6, 31:16, 32:12, 32:15, 32:19, 33:8, 33:9, 33:14, 34:18
**Circuit's** [1] - 33:12

**cite** [1] - 5:1
**CIVIL** [1] - 1:3
**claim** [3] - 13:4, 22:23, 25:19
**claimant** [1] - 25:19
**claimants** [1] - 23:22
**claims** [12] - 8:24, 9:16, 9:23, 10:1, 13:11, 13:15, 22:21, 23:3, 28:7, 28:12, 28:17, 28:20
**clarity** [1] - 28:15
**class** [59] - 4:6, 4:7, 4:11, 4:18, 6:4, 6:25, 7:1, 7:5, 7:8, 7:13, 8:7, 8:14, 10:6, 12:25, 13:1, 16:23, 17:2, 17:4, 17:7, 18:6, 18:7, 18:16, 21:7, 21:8, 21:11, 21:14, 22:3, 22:9, 22:10, 22:12, 23:11, 23:24, 24:7, 24:9, 24:12, 24:20, 24:21, 25:9, 25:22, 26:6, 26:15, 26:17, 26:21, 27:4, 28:3, 28:5, 28:16, 29:2, 30:12, 30:22, 31:15, 31:22, 32:2, 32:19, 33:4, 33:13
**classes** [7] - 6:7, 9:4, 9:7, 9:14, 25:3, 25:25, 34:11
**classwide** [7] - 13:13, 13:17, 27:24, 28:13, 30:10, 30:16, 31:1
**clear** [3] - 16:16, 24:24, 27:5
**clearly** [2] - 29:9, 29:17
**Clerk** [1] - 2:23
**client** [2] - 14:2, 14:6
**Coast** [1] - 2:6
**Cohen** [1] - 1:6
**comfortable** [1] - 4:15
**coming** [1] - 21:5
**Commencing** [1] - 1:8
**common** [2] - 11:11, 11:15
**company** [1] - 21:1
**competency** [1] - 18:1
**competing** [2] - 35:22, 36:5
**complete** [4] - 6:19, 28:24, 30:10, 31:8
**completed** [2] - 31:5, 31:7
**completely** [5] - 11:19, 21:6, 22:8,

24:18, 28:3
**complex** [9] - 8:15, 9:2, 9:3, 9:4, 17:19, 18:6, 18:7, 32:23, 33:13
**complexity** [4] - 8:6, 18:5, 19:14, 32:10
**complicated** [3] - 6:6, 18:3, 26:13
**comprehend** [1] - 19:1
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concept** [1] - 10:8
**concern** [5] - 14:15, 14:19, 16:14, 16:24, 20:6
**concerned** [5] - 17:19, 18:5, 18:9, 18:11, 20:10
**concerns** [1] - 9:25
**concluded** [1] - 36:19
**confer** [1] - 35:5
**conferences** [1] - 16:3
**confidence** [1] - 17:17
**confident** [1] - 17:25
**confirm** [1] - 21:12
**confused** [1] - 25:23
**CONLEE** [1] - 1:20
**Connecticut** [1] - 8:21
**consent** [1] - 36:4
**consequences** [5] - 14:25, 15:3, 15:5, 15:10
**consider** [1] - 14:2
**considered** [2] - 33:14, 34:10
**considering** [2] - 16:12, 24:22
**consistent** [3] - 4:25, 5:4, 26:20
**consumer** [2] - 9:1, 18:25
**contaminated** [2] - 6:12, 30:17
**contamination** [1] - 12:4
**Conti** [2] - 30:15, 31:12
**continue** [2] - 10:10, 28:15
**Continued** [1] - 2:1
**continued** [2] - 10:10, 10:12
**conversations** [1] - 15:13
**Cooper** [1] - 1:7
**correct** [11] - 4:12, 6:15, 12:5, 12:8,

13:23, 21:13, 23:14, 25:12, 34:7, 35:13, 36:21
**cost** [1] - 31:25
**counsel** [5] - 14:14, 14:20, 14:23, 16:12, 18:10
**country** [2] - 6:20, 17:16
**couple** [1] - 33:10
**course** [4] - 18:7, 29:8, 33:9, 35:19
**court** [11] - 3:1, 4:16, 11:7, 13:3, 18:20, 18:21, 18:24, 19:5, 20:24
**COURT** [1] - 1:1
**Court** [6] - 1:22, 6:3, 13:22, 18:20, 19:5, 36:24
**Court's** [4] - 17:19, 22:7, 30:14, 34:5
**Courthouse** [1] - 1:6
**Courtroom** [1] - 2:24
**Courts** [1] - 34:9
**courts** [16] - 4:3, 4:8, 4:14, 4:19, 4:21, 5:9, 5:21, 6:6, 7:3, 7:6, 9:6, 13:14, 20:23, 29:1
**crawl** [1] - 34:18
**created** [1] - 12:22
**current** [1] - 23:5
**custodial** [1] - 32:3

## D

**damage** [3] - 30:15, 31:9, 31:12
**damages** [15] - 21:6, 22:6, 22:8, 22:16, 22:18, 22:25, 23:25, 24:2, 24:8, 24:20, 30:16, 30:25, 31:1, 32:1, 33:19
**DANIEL** [1] - 2:2
**date** [1] - 17:10
**Date** [1] - 36:24
**Daubert** [2] - 31:3, 31:7
**Davidson** [4] - 3:7, 28:2, 30:9, 32:10
**DAVIDSON** [75] - 2:9, 3:6, 3:9, 3:18, 3:22, 4:2, 4:14, 5:6, 5:13, 5:18, 6:10, 6:16, 6:21, 7:14, 7:17, 8:8, 8:13, 9:10, 9:12, 9:18, 9:24, 10:4, 10:19, 10:24, 11:3,

11:6, 11:9, 11:13, 11:24, 12:5, 12:8, 12:11, 13:10, 13:24, 14:3, 14:8, 14:12, 14:22, 15:4, 15:7, 15:12, 15:15, 15:17, 15:21, 16:14, 16:20, 18:13, 18:15, 19:9, 19:21, 20:18, 21:14, 21:16, 21:18, 21:25, 22:2, 22:24, 23:4, 23:15, 23:20, 23:23, 24:18, 25:13, 25:22, 26:5, 26:14, 26:20, 26:23, 27:3, 27:11, 27:15, 33:3, 33:15, 33:18, 33:25
**DAVIS** [1] - 2:14
**days** [9] - 33:7, 33:10, 33:15, 33:23, 35:20, 35:24, 35:25, 36:1, 36:3
**DC** [1] - 2:10
**deal** [1] - 30:7
**dealing** [1] - 22:17
**debating** [1] - 33:4
**decide** [1] - 23:7
**decided** [4] - 11:22, 17:8, 17:11, 19:24
**deciding** [1] - 20:11
**decision** [5] - 4:17, 4:19, 32:15, 34:6, 34:16
**declines** [1] - 31:17
**deep** [1] - 23:12
**defend** [2] - 11:25, 29:20
**defendant** [2] - 13:1, 30:21
**Defendants** [2] - 2:11, 2:18
**defendants** [14] - 3:5, 5:8, 16:25, 26:17, 26:18, 28:8, 28:12, 28:21, 31:11, 32:16, 34:3, 34:12, 34:25, 35:5
**defendants'** [1] - 35:10
**defense** [4] - 4:17, 14:13, 29:16
**deferred** [1] - 31:21
**definitely** [1] - 7:19
**definitively** [1] - 21:24
**demonstrating** [1] - 29:24
**demonstration** [1] - 29:14
**denied** [2] - 20:24
**denies** [2] - 24:25,

25:4
**deny** [2] - 34:2, 34:14
**denying** [1] - 35:7
**dependent** [1] - 22:8
**depose** [3] - 21:1, 21:2, 31:12
**Deputy** [1] - 2:24
**DEPUTY CLERK** [1] - 36:18
**designed** [3] - 8:18, 15:25, 16:10
**details** [1] - 24:15
**determine** [3] - 10:13, 10:17, 10:20
**determined** [2] - 20:7, 24:25
**diagram** [1] - 6:7
**different** [13] - 5:22, 8:24, 8:25, 10:21, 10:22, 11:13, 11:14, 18:23, 19:2, 21:6, 22:15, 24:19, 25:25
**difficult** [5] - 7:12, 7:21, 7:25, 14:9, 19:16
**direction** [1] - 30:15
**directs** [1] - 28:18
**discovery** [10] - 14:17, 20:25, 23:6, 24:8, 24:9, 28:24, 31:19, 31:23, 32:3, 32:4
**discretion** [1] - 29:16
**discuss** [2] - 35:9, 35:10
**discussion** [2] - 16:8, 27:13
**discussions** [1] - 14:7
**disposal** [1] - 28:7, 28:20
**dissuaded** [1] - 19:14
**distinguish** [2] - 11:1, 11:3
**distributed** [1] - 6:13
**district** [2] - 5:21, 7:3
**DISTRICT** [3] - 1:1, 1:1, 1:10
**doctors** [1] - 12:17
**done** [14] - 4:4, 9:11, 17:18, 21:4, 23:15, 23:17, 24:13, 24:16, 30:12, 31:3, 31:4, 32:1, 34:17, 34:19
**down** [5] - 23:23, 24:5, 26:6, 26:11, 32:16
**Dr** [2] - 30:15, 31:12
**Drive** [1] - 2:17
**drug** [5] - 6:23, 12:3, 12:16, 12:18, 12:19
**drugs** [3] - 10:9, 10:10, 10:11

**due** [4] - 11:24, 12:11, 12:22, 13:7

**E**

**early** [1] - 16:3
**easy** [1] - 17:22
**economic** [7] - 6:7, 8:9, 8:13, 9:19, 10:3, 10:5, 22:21
**economists** [1] - 30:22
**eight** [1] - 17:21
**Eisenhower** [1] - 1:13
**either** [8] - 8:10, 8:12, 15:14, 18:11, 19:15, 32:11, 35:21, 36:3
**elect** [1] - 28:15
**elements** [2] - 13:11, 30:10
**employment** [1] - 13:2
**en** [2] - 32:14, 32:18
**enables** [1] - 4:16
**engines** [1] - 33:18
**enshrined** [2] - 16:8, 16:9
**entertain** [1] - 29:22
**entire** [3] - 6:20, 10:8, 28:5
**entitled** [1] - 36:22
**envisioned** [1] - 28:22
**equation** [1] - 26:7
**erroneous** [1] - 29:17
**ESQUIRE** [9] - 1:13, 1:16, 1:20, 2:2, 2:6, 2:9, 2:14, 2:17, 2:22
**estimate** [1] - 33:23
**evidence** [4] - 12:10, 12:13, 12:17, 13:18
**exact** [4] - 6:23, 25:7, 25:8, 25:14
**exactly** [3] - 17:11, 18:17, 20:19
**example** [3] - 8:21, 22:11, 22:24
**exceptionally** [1] - 29:18
**exist** [1] - 6:7
**expects** [1] - 18:16
**experience** [2] - 18:3, 35:17
**expert** [8] - 10:11, 23:2, 23:4, 23:6, 24:19, 25:11, 31:9, 32:4
**experts** [12] - 11:5, 13:4, 22:6, 22:25, 23:25, 24:5, 24:19, 24:20, 24:23, 25:6, 25:12, 33:19

**express** [1] - 8:23
**extra** [1] - 20:3
**extraordinary** [1] - 29:7

**F**

**faced** [1] - 4:8
**fact** [2] - 31:19, 31:23
**facts** [1] - 6:11
**factual** [3] - 10:14, 11:11, 11:15
**failed** [1] - 8:1
**fall** [1] - 8:18
**FDA** [1] - 10:9
**feasible** [4] - 18:24, 19:4, 19:5, 19:6
**federal** [2] - 9:6, 15:21
**fell** [2] - 10:20, 11:22
**felt** [1] - 4:10
**few** [7] - 20:23, 33:7, 33:16, 33:22, 33:23
**fewer** [3] - 28:7, 28:8, 28:20
**figure** [6] - 17:17, 18:3, 19:13, 24:11, 26:3, 36:5
**figured** [2] - 17:23, 18:12
**file** [1] - 31:12
**filing** [2] - 4:5
**finally** [1] - 32:4
**first** [10] - 3:12, 4:11, 16:22, 18:15, 18:18, 24:21, 29:13, 29:23, 31:10, 31:11
**fit** [1] - 5:20
**five** [1] - 20:2
**FLOM** [1] - 2:9
**Florida** [1] - 2:3
**focus** [4] - 14:18, 25:6, 25:10, 26:2
**follow** [1] - 7:3
**foregoing** [1] - 36:21
**four** [2] - 19:3, 32:7
**four-year-old** [1] - 32:7
**framework** [1] - 5:19
**frankly** [1] - 25:5
**fraud** [2] - 9:1, 18:25
**FREEMAN** [1] - 1:12
**front** [1] - 35:11
**frustration** [1] - 19:18

**G**

**Gates** [1] - 7:10
**generally** [1] - 4:3
**Georgia** [1] - 2:15
**given** [2] - 18:1, 29:8

**Golomb** [1] - 34:23
**granted** [1] - 29:11
**grants** [2] - 25:1, 34:18
**great** [6] - 17:16, 18:2, 18:20, 30:7, 32:17
**greater** [1] - 32:17
**GREENBERG** [1] - 2:13
**Greg** [1] - 35:2
**GREGORY** [1] - 2:17
**grouping** [1] - 34:11
**guess** [3] - 5:19, 20:18

**H**

**half** [1] - 27:25
**halt** [1] - 21:23
**hand** [1] - 30:25
**handle** [1] - 17:10
**happy** [1] - 8:10
**harder** [1] - 5:11
**harm** [2] - 20:15, 30:3
**hash** [1] - 35:19
**head** [1] - 32:14
**Healthcare** [1] - 2:11
**hear** [6] - 20:4, 20:12, 21:24, 29:13, 33:21, 36:3
**HEARING** [1] - 1:5
**hears** [1] - 33:8
**heck** [1] - 17:19
**held** [1] - 3:1
**high** [1] - 29:18
**highly** [1] - 29:22
**Highway** [1] - 2:6
**hold** [1] - 31:6
**holding** [1] - 18:21
**honest** [2] - 17:15, 18:9
**HONIK** [9] - 1:16, 1:16, 27:18, 27:22, 27:25, 35:14, 35:23, 35:25, 36:7
**Honik** [1] - 27:18
**Honik's** [1] - 35:9
**Honor** [53] - 3:6, 3:18, 4:2, 5:13, 5:18, 5:25, 6:16, 7:3, 7:19, 7:22, 8:9, 8:14, 9:10, 9:24, 13:10, 13:24, 14:3, 14:8, 14:23, 15:4, 15:8, 15:17, 15:18, 16:14, 16:20, 17:1, 18:13, 19:22, 20:18, 22:11, 22:14, 25:13, 27:11, 27:15, 27:18, 27:25, 28:15, 28:17, 28:19, 29:6, 31:16, 31:17, 32:9, 33:3,

33:22, 35:2, 35:6, 35:11, 35:14, 35:17, 36:9, 36:12, 36:17
**Honorable** [2] - 2:23, 3:1
**HONORABLE** [1] - 1:9
**hope** [4] - 27:14, 33:24, 34:15, 36:16
**hours** [1] - 17:21
**Huahai** [1] - 2:11

**I**

**idea** [2] - 23:18, 32:20
**ideas** [3] - 34:25, 35:9, 35:10
**identified** [2] - 30:16, 30:18
**Illinois** [1] - 2:18
**implicate** [1] - 9:23
**implication** [1] - 28:3
**implications** [2] - 28:14, 28:16
**implied** [1] - 8:25
**important** [2] - 19:10, 20:22
**impossible** [5] - 7:13, 7:14, 12:25, 17:3, 17:14
**improper** [1] - 16:11
**Inc** [2] - 2:19, 2:19
**indicated** [2] - 4:20, 34:23
**indication** [1] - 17:6
**individual** [8] - 17:22, 21:1, 21:3, 22:4, 23:20, 23:21, 28:11
**individualized** [1] - 13:18
**individually** [1] - 23:14
**Industries** [1] - 2:18
**injunction** [2] - 3:19, 4:3
**injury** [1] - 21:18
**instance** [1] - 29:13
**instead** [1] - 33:15
**instructions** [1] - 19:2
**insuperable** [2] - 32:21, 32:24
**intended** [2] - 16:22, 27:4
**interest** [1] - 30:5
**interrupted** [1] - 19:20
**involved** [9] - 14:1, 14:5, 15:13, 17:16, 21:19, 24:12, 26:16, 32:16, 32:18
**involving** [4] - 6:17, 6:19, 6:22, 9:16

**irreparable** [1] - 30:2
**issue** [3] - 19:10, 25:24, 34:21
**issued** [2] - 9:13, 23:24
**issues** [3] - 11:11, 11:15, 22:3
**issuing** [1] - 31:6
**items** [1] - 31:25

**J**

**JERSEY** [1] - 1:1
**Jersey** [10] - 1:7, 1:14, 9:9, 9:22, 9:23, 10:2, 10:6, 13:12, 22:12, 22:15
**Jersey-only** [2] - 10:6, 22:12
**Jessica** [1] - 3:6
**JESSICA** [1] - 2:9
**joint** [1] - 35:22
**Judge** [7] - 27:22, 29:16, 30:7, 31:3, 31:20, 31:21, 36:7
**judge** [11] - 4:6, 14:1, 14:5, 16:2, 16:5, 16:11, 28:4, 28:6, 28:23
**JUDGE** [1] - 1:10
**judgment** [1] - 11:17
**judicata** [1] - 28:17
**Judicial** [1] - 2:23
**jurisdiction** [1] - 31:17
**jurisdictionally** [1] - 29:13
**jurisprudence** [2] - 9:6, 18:15
**jury** [12] - 10:16, 10:17, 10:19, 11:16, 12:9, 12:18, 17:20, 17:21, 17:24, 19:1, 19:2

**K**

**KANNER** [1] - 1:19
**KATZ** [1] - 1:12
**kept** [1] - 32:10
**kind** [1] - 4:15
**KIRTLAND** [1] - 2:5
**knowing** [1] - 31:22
**knowledge** [1] - 15:12
**Kugler** [1] - 2:23
**KUGLER** [2] - 1:9, 3:2

**L**

**laid** [1] - 7:22
**language** [4] - 4:15, 4:19, 4:20, 14:16

**largely** [1] - 31:21
**larry** [1] - 2:24
**last** [2] - 19:22, 19:23
**Laudato** [1] - 15:1
**Law** [1] - 2:23
**law** [5] - 5:22, 9:23, 18:23, 25:20, 26:23
**laws** [1] - 9:5
**lawyers** [5] - 5:14, 17:16, 18:1, 18:2, 18:20
**lay** [1] - 23:3
**lead** [1] - 21:5
**lead-up** [1] - 21:5
**least** [1] - 14:12
**legal** [2] - 5:2, 9:18
**level** [2] - 6:18, 18:1
**LEVIN** [1] - 2:2
**liability** [1] - 22:6
**LIABILITY** [1] - 1:4
**likelihood** [19] - 3:16, 3:20, 3:25, 4:9, 5:3, 5:7, 5:10, 5:11, 5:17, 5:20, 5:23, 5:24, 29:9, 29:10, 29:24, 34:4, 34:13
**likely** [1] - 30:2
**limit** [1] - 31:24
**line** [2] - 22:8, 22:18
**lined** [1] - 30:22
**listed** [1] - 6:2
**lists** [1] - 16:1
**literally** [1] - 28:25
**litigants** [1] - 16:6
**litigation** [2] - 18:7, 21:16
**LITIGATION** [1] - 1:4
**LLC** [5] - 1:12, 1:16, 1:19, 2:11, 2:19
**LLP** [3] - 2:5, 2:9, 2:13
**LOCKARD** [2] - 2:14, 36:12
**look** [6] - 4:3, 9:6, 15:21, 10:22, 21:5, 22:7
**looked** [2] - 4:15, 19:22
**looking** [2] - 5:23, 9:7
**LORETTA** [1] - 2:22
**lose** [1] - 12:21
**loses** [1] - 10:17
**loss** [10] - 6:7, 8:10, 8:13, 9:19, 10:3, 10:5, 10:14, 13:13, 22:21
**losses** [2] - 30:17, 30:18
**lost** [1] - 20:17
**Louisiana** [1] - 1:21

**Ltd** [2] - 2:12, 2:18

**M**

**MacStravic** [1] - 2:24
**main** [2] - 10:7, 19:21
**manage** [1] - 16:3
**manageability** [1] - 11:16
**managed** [1] - 32:21
**management** [3] - 28:6, 32:24, 32:25
**managing** [1] - 16:11
**March** [2] - 1:8, 36:24
**Marie** [2] - 1:22, 36:24
**Market** [1] - 1:17
**mass** [1] - 6:17
**masters** [1] - 14:17
**matter** [3] - 29:8, 34:3, 36:22
**matters** [2] - 18:3, 21:14
**MAZIE** [1] - 1:12
**MDL** [10] - 6:21, 14:18, 16:2, 16:9, 16:11, 28:4, 28:6, 28:23, 32:7, 35:4
**MDLs** [5] - 14:21, 14:22, 15:25, 16:10, 29:2
**MEAGHER** [1] - 2:9
**mean** [11] - 5:14, 24:15, 25:14, 26:10, 26:11, 30:13, 30:21, 33:12, 33:17, 34:5, 36:13
**meaning** [1] - 29:15
**meaningful** [1] - 30:4
**means** [3] - 11:10, 35:8
**meant** [1] - 16:16
**mechanical** [1] - 1:24
**medical** [7] - 6:4, 7:5, 7:8, 7:12, 8:2, 8:10, 10:2
**medication** [2] - 6:19, 6:22
**medications** [1] - 6:17
**medicine** [6] - 6:12, 6:14, 10:20, 10:21, 11:14, 11:19
**meet** [2] - 35:5, 35:9
**meeting** [2] - 29:23, 35:18
**mega** [1] - 25:18
**mentioned** [1] - 31:8
**mere** [1] - 32:20
**merely** [2] - 28:19, 29:10
**merits** [12] - 3:20,

3:25, 4:10, 5:3, 5:17, 5:20, 7:20, 29:11, 29:14, 33:4, 34:4, 34:13
**met** [2] - 30:6, 34:3
**middle** [1] - 31:3
**mistakes** [1] - 4:12
**MITCHELL** [1] - 2:2
**Mitchell** [3] - 1:6, 1:22, 36:24
**moment** [1] - 21:15
**money** [4] - 22:22, 23:12, 23:13, 23:19
**monitoring** [7] - 6:4, 7:5, 7:8, 7:12, 8:3, 8:10, 10:2
**month** [2] - 19:24, 19:25
**months** [1] - 30:23
**most** [1] - 33:8
**mostly** [2] - 18:7, 33:3
**MOTION** [1] - 1:5
**motion** [6] - 3:3, 4:5, 4:24, 27:9, 33:1
**motions** [1] - 34:6
**moving** [2] - 32:23, 35:8
**MR** [11] - 27:18, 27:22, 27:25, 35:2, 35:14, 35:17, 35:23, 35:25, 36:3, 36:7, 36:9
**MS** [75] - 3:6, 3:9, 3:18, 3:22, 4:2, 4:14, 5:6, 5:13, 5:18, 6:10, 6:16, 6:21, 7:14, 7:17, 8:8, 8:13, 9:10, 9:12, 9:18, 9:24, 10:4, 10:19, 10:24, 11:3, 11:6, 11:9, 11:13, 11:24, 12:5, 12:8, 12:11, 13:10, 13:24, 14:3, 14:8, 14:12, 14:22, 15:4, 15:7, 15:12, 15:15, 15:17, 15:21, 16:14, 16:20, 18:13, 18:15, 19:9, 19:21, 20:18, 21:14, 21:16, 21:18, 21:25, 22:2, 22:24, 23:4, 23:15, 23:20, 23:23, 24:18, 25:13, 25:22, 26:5, 26:14, 26:20, 26:23, 27:3, 27:11, 27:15, 33:3, 33:15, 33:18, 33:25, 36:12
**MSP** [3] - 28:9, 28:10, 30:25
**MSP's** [1] - 30:18
**MSP/ZHP/Torrent/**

**Teva** [1] - 31:10
**multi** [1] - 18:23
**multi-state** [1] - 18:23
**multiple** [3] - 8:18, 8:22, 11:1
**mushier** [1] - 4:19

**N**

**N.W** [1] - 2:10
**name** [2] - 13:25, 14:4
**named** [3] - 23:25, 24:7, 24:8
**namely** [1] - 30:9
**nature** [2] - 13:6, 17:2
**NE** [1] - 2:14
**necessarily** [1] - 11:8
**need** [9] - 3:14, 20:10, 21:2, 22:25, 25:2, 30:24, 31:19, 31:23, 32:2, 32:4, 33:20, 34:20, 34:21, 34:24, 35:8, 35:15, 36:10
**needs** [4] - 4:24, 24:16, 30:23, 31:5
**never** [5] - 7:13, 7:23, 7:24, 8:3, 32:11
**new** [4] - 15:20, 15:24, 22:14, 25:24
**NEW** [1] - 1:1
**New** [12] - 1:7, 1:14, 1:21, 2:10, 9:9, 9:22, 9:23, 10:2, 10:5, 13:11, 22:12, 22:14
**next** [5] - 21:6, 22:6, 22:7, 22:18, 34:21
**NIGH** [1] - 2:2
**night** [1] - 19:22
**Ninth** [1] - 5:1
**NJ** [1] - 13:12
**non** [1] - 16:9
**non-MDL** [1] - 16:9
**none** [3] - 14:11, 22:5, 30:5
**note** [2] - 20:22, 32:9
**notes** [1] - 27:20
**nothing** [4] - 18:25, 21:9, 22:1, 36:12
**notice** [2] - 31:15, 31:18
**nudge** [1] - 16:19
**number** [6] - 6:5, 6:14, 28:21, 32:17, 32:20
**NUMBER** [1] - 1:3
**numbers** [1] - 6:23

**O**

**oblige** [1] - 28:4
**obtain** [2] - 31:19,

31:23
**obviously** [1] - 3:18
**occur** [1] - 28:13
**occurred** [1] - 15:13
**Official** [1] - 1:22
**old** [1] - 32:7
**ON** [1] - 1:5
**once** [1] - 28:15
**one** [18] - 5:5, 6:3, 6:5, 8:3, 8:11, 8:12, 8:13, 9:16, 10:14, 10:20, 11:22, 13:20, 13:25, 14:4, 16:5, 20:21, 30:11, 30:25
**ones** [1] - 32:18
**open** [1] - 3:1
**opens** [1] - 36:13
**opinion** [3] - 24:19, 24:20, 26:10
**opposed** [1] - 33:4
**opposition** [2] - 20:3, 29:19
**order** [17] - 7:25, 9:13, 10:24, 14:16, 16:23, 17:2, 17:7, 22:7, 22:14, 22:24, 23:6, 23:7, 23:24, 24:5, 25:16, 25:23, 25:24, 26:6, 26:10, 27:4, 35:6
**originally** [1] - 26:9
**Orleans** [1] - 1:21
**Ostfeld** [1] - 35:2
**OSTFELD** [5] - 2:17, 35:2, 35:17, 36:2, 36:9
**ought** [1] - 32:6
**outstanding** [2] - 20:25, 22:5
**overly** [1] - 20:10
**owed** [1] - 23:19

**P**

**P.A** [1] - 2:2
**p.m** [3] - 1:8, 3:2, 36:19
**PACER** [1] - 19:22
**Pacific** [1] - 2:6
**PACKARD** [1] - 2:5
**page** [3] - 3:14, 3:15, 3:16
**pages** [1] - 17:20
**paid** [1] - 22:21
**panel** [1] - 32:18
**PAPANTONIO** [1] - 2:2
**papers** [1] - 32:13
**parallel** [1] - 14:17
**parameters** [2] -

(index page)

17:12, 25:8
**PAREKH** [1] - 2:6
**Parkway** [1] - 1:13
**part** [2] - 10:15, 18:16
**partially** [1] - 31:4
**participate** [1] - 14:6
**particularly** [1] - 32:14
**parts** [1] - 32:23
**party** [6] - 23:10, 23:16, 23:18, 26:15, 26:16
**pass** [1] - 11:16
**path** [1] - 23:23
**payer** [3] - 23:10, 23:18, 26:15
**payers** [2] - 26:15, 26:16
**paying** [1] - 24:19
**pending** [2] - 5:23, 20:11
**Pennsylvania** [1] - 1:17
**Pensacola** [1] - 2:3
**people** [4] - 6:24, 10:10, 10:22, 12:20
**perfectly** [1] - 5:20
**perhaps** [1] - 16:12
**permissible** [1] - 28:22
**person** [3] - 8:24, 12:18, 12:19
**person's** [1] - 8:24
**personal** [1] - 21:18
**perspective** [4] - 9:25, 11:9, 14:13, 33:7
**petition** [2] - 29:11, 34:18
**petitions** [1] - 19:24
**Pharma** [1] - 2:19
**Pharmaceutical** [1] - 2:18
**Pharmaceuticals** [3] - 2:11, 2:12, 2:19
**Philadelphia** [1] - 1:17
**pick** [1] - 9:21
**Piedmont** [1] - 2:14
**place** [2] - 3:13, 4:11
**plaintiff** [13] - 8:21, 8:22, 11:1, 11:6, 12:12, 12:14, 12:15, 13:3, 13:8, 21:2, 24:1, 28:11, 32:2
**plaintiff's** [1] - 8:20
**plaintiff-specific** [1] - 12:12
**Plaintiffs** [5] - 1:14, 1:18, 1:21, 2:4, 2:7
**plaintiffs** [18] - 6:14, 8:18, 10:9, 11:2, 11:4, 11:14, 11:17,

12:15, 12:16, 20:2, 22:25, 24:7, 24:9, 25:10, 27:17, 31:14, 35:4, 35:12
**plaintiffs'** [5] - 10:8, 10:11, 11:19, 20:22, 27:7
**plan** [4] - 17:6, 18:16, 19:7, 19:12
**play** [1] - 15:2
**plus** [1] - 34:15
**point** [8] - 13:19, 16:18, 21:21, 22:5, 29:4, 29:17, 31:22, 32:7
**points** [1] - 16:5
**position** [1] - 4:23
**possibility** [5] - 3:15, 3:17, 3:21, 3:23, 3:24
**possible** [1] - 17:4
**possibly** [1] - 4:9
**potential** [2] - 6:13, 6:14, 25:19
**potentially** [1] - 31:25
**practicable** [1] - 28:21
**practical** [2] - 28:8, 33:6
**precedents** [1] - 19:23
**predominance** [1] - 11:10
**predominate** [2] - 11:11, 11:15
**prepare** [1] - 31:14
**prescriptions** [1] - 22:22
**PRESENT** [1] - 2:21
**present** [4] - 12:12, 12:17, 22:25, 35:15
**pressure** [2] - 13:22, 13:23
**pretty** [2] - 14:20, 26:13
**principally** [1] - 27:19
**Prinston** [1] - 2:11
**problem** [5] - 9:19, 9:20, 10:7, 11:16, 32:11
**problems** [3] - 5:16, 8:14, 10:6
**proceed** [2] - 17:7, 30:9
**proceeded** [1] - 24:12
**PROCEEDINGS** [1] - 3:1
**Proceedings** [2] - 1:24, 36:19
**proceedings** [2] - 6:22, 36:22
**process** [7] - 11:24,

12:11, 12:23, 13:7, 14:17, 15:24, 16:6
**PROCTOR** [1] - 2:2
**produced** [1] - 1:25
**PRODUCTS** [1] - 1:4
**proffered** [3] - 29:19, 30:14, 30:20
**profit** [1] - 31:25
**program** [2] - 31:15, 31:18
**promote** [1] - 16:24
**promoting** [1] - 11:21
**prong** [2] - 29:24, 30:4
**prongs** [1] - 30:5
**proofs** [1] - 8:1
**properly** [1] - 4:8
**proposal** [5] - 19:6, 35:6, 35:11, 35:16, 35:22
**proposals** [2] - 35:22, 36:5
**proposed** [2] - 15:20, 15:23
**protect** [1] - 12:22
**prove** [2] - 13:8, 13:13
**proven** [1] - 13:17
**prudent** [3] - 33:8, 35:3, 35:9
**public** [1] - 30:5
**purpose** [1] - 17:4
**purposes** [1] - 29:23
**pursue** [1] - 23:14
**put** [2] - 35:10, 35:21

**Q**

**questions** [3] - 3:4, 3:9, 5:2
**quickly** [2] - 20:8
**quite** [1] - 29:8
**quote** [1] - 3:16
**quoted** [1] - 4:22

**R**

**RAFFERTY** [1] - 2:2
**raise** [3] - 5:14, 9:24, 15:17
**raised** [1] - 16:18
**raising** [1] - 5:2
**range** [1] - 32:6
**RE** [1] - 1:4
**re** [1] - 32:15
**ready** [3] - 26:3, 31:15, 36:14
**reality** [1] - 4:4
**really** [10] - 4:10, 6:24, 9:7, 9:12, 18:8, 19:10, 20:10, 20:21, 21:4, 25:14

**reargument** [1] - 34:5
**reason** [5] - 9:3, 11:23, 12:1, 20:23, 30:8
**reasonable** [4] - 3:15, 4:9, 5:23
**reasons** [1] - 13:20
**recalled** [1] - 6:22
**recognize** [1] - 4:16
**record** [2] - 29:5, 36:22
**recorded** [1] - 1:24
**Redondo** [1] - 2:7
**referenced** [1] - 16:23
**reflects** [1] - 29:5
**regardless** [2] - 5:25, 7:2
**reject** [1] - 7:25
**related** [2] - 22:2, 30:17
**relevant** [2] - 20:25, 22:4
**relief** [1] - 29:7
**remain** [1] - 27:20
**remains** [1] - 31:2
**remand** [2] - 22:13
**reply** [1] - 3:13
**report** [6] - 23:2, 23:4, 24:24, 30:15, 30:24, 35:20
**Reporter** [1] - 1:22
**Reporter/ Transcriber** [1] - 36:24
**reports** [3] - 24:3, 31:9, 31:13
**request** [2] - 29:6, 29:7
**require** [3] - 13:2, 13:8, 13:18
**res** [1] - 28:17
**resolve** [1] - 8:23
**respect** [1] - 8:13
**respectfully** [2] - 28:2, 30:7
**respective** [1] - 28:25
**respond** [3] - 18:13, 33:1, 33:2
**RESPONSE** [1] - 36:17
**retailers** [3] - 31:20, 31:24, 32:5
**revenue** [1] - 31:25
**reversed** [2] - 21:11, 29:15
**review** [2] - 23:8, 31:18
**rise** [1] - 36:18
**Road** [1] - 2:14

**ROBERT** [2] - 1:9, 3:2
**Robert** [1] - 2:23
**role** [1] - 28:22
**Roseland** [1] - 1:14
**Ruben** [1] - 27:18
**RUBEN** [1] - 1:16
**rule** [4] - 15:23, 15:25, 16:10, 26:11
**Rule** [13] - 5:16, 7:1, 8:16, 11:10, 12:12, 12:22, 15:20, 16:9, 16:16, 16:17, 16:22, 16:23, 18:15
**rules** [1] - 15:22
**ruling** [7] - 18:16, 26:21, 28:3, 29:17, 29:20, 31:6, 33:4
**rulings** [1] - 31:21

**S**

**sale** [1] - 30:17
**sampling** [1] - 13:5
**satisfied** [1] - 30:4
**satisfy** [5] - 6:1, 6:2, 7:4
**satisfying** [1] - 7:21
**scenario** [1] - 5:21
**schedule** [1] - 35:18
**schedules** [1] - 16:3
**scheduling** [1] - 22:7
**Schneider's** [1] - 31:21
**School** [1] - 32:15
**schools** [1] - 32:16
**scope** [3] - 21:8, 22:9, 23:1
**season** [1] - 36:13
**seated** [1] - 27:20
**second** [3] - 10:15, 17:1, 18:19
**see** [6] - 9:4, 25:2, 27:8, 29:20, 33:9, 36:15
**seeking** [1] - 21:13
**seem** [2] - 8:5, 12:24
**selected** [2] - 28:9, 28:10
**send** [1] - 28:25
**sense** [3] - 17:24, 20:6, 23:8
**separate** [1] - 14:22
**serious** [1] - 5:2
**serve** [1] - 23:2
**set** [1] - 16:3
**settle** [2] - 13:22, 15:10
**settlement** [12] - 14:6, 14:17, 14:18, 14:20, 14:23, 15:2, 16:6,

*United States District Court*

16:8, 16:13, 16:19, 16:24, 17:5
**settling** [1] - 14:2
**share** [1] - 29:21
**short** [1] - 35:6
**shortly** [1] - 33:21
**show** [7] - 3:14, 3:16, 3:25, 5:11, 13:3, 13:8, 30:1
**showing** [4] - 3:24, 5:3, 30:3, 30:4
**shown** [1] - 34:12
**side** [2] - 12:10, 31:23
**similar** [3] - 3:19, 7:4, 30:24
**simply** [2] - 31:6, 32:21
**Sinclair** [1] - 10:4
**single** [3] - 9:7, 24:9, 32:1
**single-state** [1] - 9:7
**six** [1] - 20:1
**size** [1] - 23:1
**SKADDEN** [1] - 2:9
**SLATE** [1] - 2:9
**SLATER** [2] - 1:12, 1:13
**smaller** [1] - 25:24
**SMITH** [1] - 2:22
**Solco** [1] - 2:11
**soon** [5] - 26:12, 27:8, 27:12, 34:16
**sorry** [3] - 19:20, 26:10, 27:5
**sort** [2] - 16:1, 33:18
**South** [1] - 2:6
**specific** [3] - 12:12, 28:11, 30:25
**specifically** [4] - 15:25, 16:10, 17:9, 30:18
**stage** [1] - 30:20
**stake** [1] - 30:5
**standard** [15] - 3:12, 3:19, 3:23, 4:2, 4:24, 5:6, 7:1, 7:4, 7:18, 14:21, 29:5, 29:8, 29:15, 30:1, 34:4
**standards** [3] - 4:21, 6:2, 7:21
**stands** [1] - 32:14
**start** [6] - 20:20, 21:9, 21:10, 25:7, 33:19, 33:20
**started** [1] - 35:11
**starting** [4] - 15:24, 17:11, 20:15, 24:4
**state** [7] - 9:5, 9:7, 9:16, 9:22, 18:23, 26:15

**States** [1] - 6:4
**states** [2] - 8:25, 19:3
**STATES** [2] - 1:1, 1:10
**stay** [18] - 3:3, 4:5, 4:6, 4:25, 5:23, 19:9, 20:24, 21:13, 21:14, 27:10, 29:6, 29:23, 30:3, 33:5, 34:3, 35:7, 35:23, 36:16
**STAY** [1] - 1:5
**stayed** [2] - 20:11, 22:3
**stays** [1] - 20:24
**stenography** [1] - 1:24
**step** [1] - 27:25
**steps** [1] - 29:12
**still** [5] - 9:24, 28:13, 28:14, 31:11, 34:6
**stop** [2] - 20:17, 34:18
**Street** [2] - 1:17, 1:20
**Streets** [1] - 1:7
**strikes** [1] - 7:21
**strong** [12] - 3:16, 5:7, 5:8, 5:10, 5:11, 5:12, 5:15, 5:24, 29:9, 29:10, 29:24
**strongly** [1] - 7:7
**stuff** [1] - 26:13
**subclass** [3] - 8:23, 8:25, 24:22
**subclasses** [9] - 6:7, 8:15, 8:17, 8:19, 8:22, 17:3, 32:11, 32:20, 34:11
**subclassing** [1] - 19:6
**submit** [1] - 36:4
**submitted** [2] - 15:5, 31:15
**succeed** [3] - 7:19, 29:11, 29:15
**success** [9] - 3:20, 3:25, 4:10, 5:3, 5:17, 5:20, 29:24, 34:4, 34:13
**suffer** [1] - 30:2
**suffered** [2] - 10:14, 30:18
**suggest** [3] - 14:1, 14:6, 16:12
**suggested** [1] - 30:9
**suggesting** [6] - 8:5, 9:15, 9:21, 12:24, 28:19, 32:10
**suggestions** [1] - 15:2
**suggests** [3] - 16:2, 16:5
**Suite** [4] - 1:17, 2:3, 2:14, 2:17
**summary** [1] - 13:5
**summer** [1] - 24:1

**supply** [2] - 32:17, 32:18
**supposed** [1] - 3:12
**survive** [1] - 9:17
**swoop** [2] - 10:20, 11:22

## T

**table** [1] - 35:10
**target** [4] - 24:6, 24:7, 24:24
**targeted** [1] - 32:2
**teeing** [1] - 26:9
**tendered** [1] - 31:9
**Tenth** [1] - 5:1
**term** [2] - 12:6, 15:1
**terms** [3] - 7:6, 9:25, 11:9
**test** [3] - 6:24, 6:25
**testify** [1] - 13:3
**testimony** [1] - 12:3
**Teva** [2] - 2:18, 2:19
**The court** [99] - 3:3, 3:8, 3:11, 3:21, 3:23, 4:12, 4:18, 4:22, 5:10, 5:14, 6:9, 6:11, 6:18, 7:11, 7:16, 7:23, 8:12, 9:8, 9:11, 9:15, 9:21, 10:3, 10:16, 10:23, 10:25, 11:5, 11:8, 11:12, 11:23, 12:1, 12:6, 12:9, 12:24, 13:19, 13:25, 14:4, 14:11, 14:20, 14:24, 15:6, 15:9, 15:14, 15:16, 15:19, 15:23, 16:18, 17:8, 18:14, 19:8, 19:12, 20:14, 21:12, 21:15, 21:17, 21:21, 22:1, 22:20, 23:2, 23:10, 23:17, 23:21, 24:10, 24:22, 24:25, 25:1, 25:4, 25:17, 25:23, 26:1, 26:8, 26:19, 26:22, 26:24, 27:3, 27:5, 27:14, 27:16, 27:21, 27:23, 28:10, 29:12, 29:19, 31:5, 31:7, 32:25, 33:11, 33:17, 33:24, 34:1, 35:12, 35:15, 35:20, 35:22, 35:24, 36:1, 36:3, 36:8, 36:10, 36:13
**theories** [1] - 13:16
**theory** [5] - 10:8, 11:19, 11:21, 12:2
**thinking** [2] - 13:12, 20:19

**Third** [32] - 6:5, 7:7, 7:11, 7:20, 7:23, 8:3, 13:20, 15:1, 19:22, 19:23, 20:4, 20:9, 20:11, 20:16, 21:24, 22:13, 23:7, 25:2, 25:4, 28:16, 29:12, 29:21, 31:5, 31:16, 32:12, 32:14, 32:19, 33:7, 33:9, 33:11, 33:14, 34:17
**third** [6] - 23:10, 23:16, 23:18, 26:15, 26:16
**third-party** [6] - 23:10, 23:16, 23:18, 26:15, 26:16
**THOMAS** [1] - 2:2
**thousands** [4] - 11:4, 12:20, 28:25
**threaten** [3] - 15:1, 15:3, 15:10
**threatened** [1] - 15:5
**three** [3] - 20:1, 28:12
**throughout** [2] - 6:19, 35:4
**thrown** [1] - 18:23
**tied** [2] - 23:5
**today** [4] - 8:6, 17:11, 25:7, 36:11
**together** [4] - 17:17, 17:23, 18:11, 35:22
**took** [4] - 6:14, 6:24, 17:20, 32:9
**tools** [1] - 28:6
**torts** [1] - 6:17
**TPP** [4] - 21:5, 30:12, 30:16, 30:25
**TPPs** [1] - 30:12
**transcript** [2] - 1:24, 36:21
**transcription** [1] - 1:25
**TRAURIG** [1] - 2:13
**trial** [28] - 8:16, 8:17, 8:19, 10:14, 11:8, 12:14, 12:15, 14:19, 16:16, 16:22, 17:6, 17:12, 17:20, 18:16, 18:22, 19:7, 19:12, 21:5, 24:1, 25:18, 26:3, 26:20, 28:6, 30:11, 31:10, 31:11, 32:24, 32:25
**trials** [4] - 17:5, 17:7, 17:10, 18:23
**tried** [4] - 18:18, 25:19, 28:12, 34:12
**true** [1] - 14:12
**try** [16] - 8:23, 9:8,

9:22, 12:25, 17:3, 17:14, 25:7, 25:8, 25:15, 27:24, 28:4, 28:7, 28:14, 28:18, 28:20, 32:7
**trying** [8] - 5:19, 16:18, 24:10, 24:11, 24:15, 24:22, 25:17, 35:13
**turn** [2] - 31:12, 33:18
**two** [13] - 6:3, 6:5, 12:14, 12:15, 12:16, 16:20, 20:3, 20:5, 24:1, 28:10, 29:12, 30:15, 30:18
**two-plaintiff** [2] - 12:14, 12:15

## U

**U.S** [2] - 1:6, 2:11
**UE** [1] - 32:1
**unclear** [1] - 8:19
**under** [4] - 12:11, 12:12, 25:19, 30:14
**understood** [3] - 4:14, 26:5, 36:2
**undue** [1] - 13:22
**unique** [1] - 18:25
**UNITED** [2] - 1:1, 1:10
**United** [1] - 6:3
**unless** [4] - 5:15, 11:18, 22:3, 25:23
**unlikely** [1] - 29:22
**unprecedented** [5] - 6:9, 6:12, 6:13, 6:15, 7:5
**unusual** [1] - 34:8
**up** [14] - 3:8, 13:3, 13:8, 16:3, 19:17, 20:15, 20:20, 21:5, 21:9, 21:10, 26:9, 30:22, 32:8, 32:16
**upheld** [1] - 6:4
**upholding** [1] - 6:6
**USA** [1] - 2:19
**useful** [1] - 21:10
**utterly** [2] - 17:3, 17:14

## V

**valsartan** [3] - 6:23, 10:12, 30:17
**VALSARTAN** [1] - 1:4
**value** [5] - 10:21, 11:14, 12:3, 12:18, 12:19
**variations** [3] - 9:5, 9:19, 10:15
**various** [1] - 34:11

**Venn** [1] - 6:7
**verdicts** [1] - 17:22
**viable** [1] - 19:7
**VICTORIA** [1] - 2:14
**view** [1] - 29:21

## W

**Wacker** [1] - 2:17
**wait** [3] - 23:9, 25:2, 33:9
**wants** [4] - 3:4, 23:8, 25:21, 27:17
**warranty** [3] - 8:23, 8:25, 18:24
**Washington** [1] - 2:10
**wasteful** [1] - 21:11
**ways** [1] - 5:22
**week** [5] - 20:5, 20:15, 20:16, 35:18, 35:19
**weeks** [8] - 20:1, 20:2, 20:3, 33:15, 33:16, 33:23
**weigh** [1] - 31:16
**weighed** [1] - 30:22
**weighs** [1] - 31:6
**West** [1] - 2:17
**whereas** [1] - 24:24
**WHITELEY** [2] - 1:19, 1:20
**whole** [6] - 20:6, 21:5, 22:15, 26:6, 34:16, 34:19
**wholesalers** [3] - 31:20, 31:24, 32:5
**win** [1] - 10:18
**wins** [1] - 10:17
**witnesses** [1] - 11:5
**wording** [1] - 6:1
**words** [1] - 28:14
**works** [1] - 20:14
**workup** [1] - 23:15
**worried** [2] - 19:13, 32:25
**worse** [1] - 18:8
**worth** [4] - 10:9, 11:20, 11:21, 12:16
**worthless** [1] - 10:20
**wrap** [1] - 32:7
**writing** [1] - 24:24

## Y

**year** [3] - 19:24, 22:19, 32:7
**York** [1] - 2:10

## Z

**zero** [4] - 10:9, 11:20, 11:21, 12:16

**Zhejiang** [1] - 2:11
**ZHP/Torrent/Teva** [1] - 31:4