

**Via ECF**                                                                                       **April 12, 2023**

Hon. Robert B. Kugler
United States District Court
 for the District of New Jersey
U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

      Re: *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 19-md-2875 (D.N.J.)

Dear Judge Kugler:

Plaintiffs respectfully submit this letter setting forth their trial and scheduling proposal. *See* 3/29/23 Tr. at 34:1 – 36:8.

Per Your Honor's instruction at the March 29 case management conference, the parties conferred via telephone on April 3, 2023, and exchanged letters on April 5, 10, and 11. *See* Exs. A-C hereto. The parties were able to reach agreement in some respects (as set forth more fully below), but not all.

The most significant impasse relates to the proposed trial plan. Defendants claim they cannot fathom any combination of subclasses for trial. Therefore, Defendants have not contributed any input on a proposed trial plan. *See* Exs. A & C.[1]

---

[1] Defendants cite two reasons for their inability to comprehend how *any* class trial could ever proceed (here or anywhere else): claim-splitting and manageability. Claim-splitting is inapplicable. That doctrine only applies to a single plaintiff simultaneously bringing two actions against the same defendant, the remedy for which usually is the dismissal of one action or the consolidation of the two actions. *See Pa. v. Navient Corp.*, 967 F.3d 273, 286 (3d Cir. 2000). Here, the JPML already has consolidated all nationwide actions. The issue here relates to the Court's ability to try distinct claims or issues, consistent with the Federal Rules (*see* Fed. R. Civ. P. 21 & 42(b)), MDL guidance (*see* Managing Related Proposed Class Actions in Multidistrict Litigation (Fed. Jud. Ctr. 2018); Manual for Complex Litig. (Fourth), § 21.23), and Defendants' own prior representations (*see* DEC 3/9/2020 Ltr. to Ct. (ECF 393) ("Any Defendant-specific issues related to certification could still be addressed in this context…[S]hould certification be granted, Plaintiffs could still seek to sever a specific subclass or issue class for a discrete trial.")). As to manageability, this Court has repeatedly indicated it is undaunted by the work posed by a trial. *See, e.g.*, 3/29/23 Tr. at 17:8 – 18:12 ("…I'm not at all concerned about the complexity of this case….").

Page 2 of 6

Plaintiffs set forth their position below, noting the parties' agreement where Plaintiffs believe it exists.

1. **Trial Plan.**  Plaintiffs' position is based on the Court's prior guidance, taking into account the broad discretion, particularly of MDL courts, when it comes to trial management. While Plaintiffs believe that it would be fully appropriate and manageable to try broader sets of claims in accordance with the state law groupings presented at class certification (to be modified per the Court's class certification order), out of deference to the Court's prior guidance, Plaintiffs propose that the first trial be brought on behalf of the same parties that Plaintiffs and Defendants were working up for trial when class certification was granted. That is, the named parties would remain MSP vis-à-vis its two assignors EmblemHealth and SummaCare, and the Defendants would be ZHP, Teva, and Torrent.  The trial would include the following certified TPP subclasses or such fewer subclasses or claims as the Court may direct, each of which include MSP vis-à-vis its assignors EmblemHealth and SummaCare:

   - TPP Breach of Express Warranty Subclass Group b[2]
   - TPP Breach of Implied Warranty Subclass Group d[3]
   - TPP Fraud Subclass Group c[4]
   - TPP State Consumer Protection Laws Subclass Group a[5]

---

[2] A breach of express warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Arkansas, Florida, Georgia, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, Ohio, Oregon, Rhode Island, South Carolina, Texas, Utah, Vermont, Wisconsin, or Wyoming for a valsartan-containing drug (intended for personal or household use) that was manufactured by [ZHP, Teva, or Torrent].

[3] A breach of implied warranty subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Ohio, Oregon, New York, Tennessee, Utah, or Vermont for a valsartan-containing drug (intended for personal or household use) that was manufactured by [ZHP, Teva, or Torrent].

[4] A fraud subclass of all TPPs, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arkansas, Colorado, District of Columbia, Florida, Idaho, Iowa, Louisiana, Massachusetts, Minnesota, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, Washington, Wyoming, or Puerto Rico for a valsartan-containing drug (intended for personal or household use) that was manufactured by [ZHP, Teva, or Torrent].

[5] A violation of state consumer protection laws subclass of all TPPs that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arizona, California, Connecticut, Florida, Hawaii, Illinois, Louisiana, Missouri, Nebraska,

Defendants' rehashed fears about how hard it will be to instruct a jury on various states' laws (*see* Ex. C at 2, lamenting instructions "on the laws of 43 separate jurisdictions") are wholly unsupported (after all, the subclass groupings already go a long way to organizing substantially similar claims) and contrary to this Court's statements at the March 29 conference. Defendants' plea that a subclass trial "against ZHP, Teva, and Torrent only contradicts the certification order," *id.*, makes no sense, as the Court obviously can try certified claims against less than all parties, and on less than all claims, in an initial trial. *See supra* n.1.

Plaintiffs believe a trial date in mid-to-late Fall can be set based on the Court's existing trial calendar, and far enough out to ensure class notice can be disseminated beforehand. Once that is done, the parties can suggest intervening dates leading up to trial for pre-trial motions and submissions, such as proposed jury instructions, motions *in limine*, etc.

2. **Class Notice Program.** The parties agree that Plaintiffs should submit a proposed class notice plan and form of notice by May 10, 2023; Defendants may submit their responses and objections by June 7, 2023; and Plaintiffs may reply by June 28, 2023. (Plaintiffs are willing for responses and replies to be submitted sooner, *viz.*, by May 24 and June 7).

3. **Rule 702 Briefing.** The parties agree that Rule 702 briefing will continue in accordance with Case Management Order No. 31, under which the "[d]eadline for opposition briefs to the motions to preclude under Rule 702 reports of liability experts" is April 11, 2023, and the "[d]eadline for reply briefs in support of motions to preclude under Rule 702 reports of liability experts" is April 25, 2023. Rulings on Rule 702 motions should be held in abeyance until the Rule 23(f) petition has been decided.

4. **Damages Expert Reports and Depositions.** Plaintiffs already submitted a liability damages report from Dr. Rena Conti to Defendants on February 3, 2023 that already provides specific break-downs for MSP's two assignors, EmblemHealth and SummaCare, and the certified subclasses as a whole, for the claims against ZHP, Teva, and Torrent arising from ZHP contaminated API. Therefore, Plaintiffs do not believe another round of damages expert reports are necessary. Defendants should submit their own damages expert report that responds to Dr. Conti's current report; then depose Dr. Conti on her current report (which Defendants have had for months); Defendants' expert can be deposed; and the parties can file *Daubert* briefing if necessary.

5. **Class Representative Discovery.** The parties agree that MSP will continue its rolling production and complete it on or before May 3, 2023. Plaintiffs are not sure what, if any, discovery is necessary or appropriate from MADA, but Plaintiffs are willing to reserve

---

New Hampshire, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, or Washington that was manufactured by [ZHP, Teva, or Torrent].

their objections until Defendants' submission of supplemental document requests by May 10, 2023, and agree Defendants may serve same at that time.

6. **Retailer Discovery.** Plaintiffs envision two additional areas of discovery of Retailer Defendants, one which should occur immediately, the other which can trail.

    The first area relates to the certified class claims. Retailers should produce forthwith (i) the amounts paid by TPPs for VCDs, (ii) Retailers' cost/profits data for VCDs, and (iii) identifying information for consumer class members. As discussed in the parties' class certification briefing, Magistrate Judge Schneider earlier denied without prejudice (*see* 7/7/2020 Order, ECF 507) these items. Now that subclasses have been certified, it is appropriate for Retailers to produce data showing the amounts paid by TPPs for VCDs dispensed to consumers (Retailers only produced the amounts paid by consumers). Presumably the Manufacturers also want this information. Retailers' cost/profits data is necessary for the certified consumer unjust enrichment claims; recall that Retailers withheld that information but then claimed at class certification that this information was necessary to calculate unjust enrichment damages. Now is the time for Retailers to produce that information. Finally, Retailers should promptly produce previously-redacted identifying information for consumer class members (e.g., name, address, etc.), to facilitate the class notice process.

    The second area relates to targeted fact and expert discovery of Retailers. Plaintiffs will likely require Rule 30(b)(6) depositions with regard to the supplemental data noted above, and the claims that remain against the Retailers. Plaintiffs also believe the parties should confer about custodial discovery (documents and individual depositions) of Retailers, including search terms and custodians, with the parties to set forth their positions on same in joint or simultaneous submissions by May 10, 2023. After this targeted fact discovery, there may need to be limited expert discovery (*viz.*, liability expert reports solely focused on Retailers). However, depending on how the Court intends to phase the subclass trials, it may not be necessary to engage in this discovery until a consumer subclass of claims against Retailers is queued for trial, as long as there is a plan for this to be accomplished without being pushed off too far.

7. **Wholesaler Discovery.** As with Retailers, Plaintiffs envision the same two additional areas of discovery of Wholesaler Defendants. That is, Wholesalers also should produce forthwith their cost/profits data for VCDs (i.e., prices paid by Wholesalers to acquire VCDs, and prices at which Wholesalers sold VCDs downstream), which also was not previously produced but which Wholesalers (like Retailers) claim is necessary to class damages calculations. Plaintiffs also envision limited fact and expert discovery of Wholesalers, similar to that discussed above as to Retailers. Again, depending on how the

Court intends to phase the subclass trials, it may not be necessary to engage in this discovery until the Court queues for trial a consumer or TPP subclass of claims against Wholesalers.

Wholesalers' position appears to be that they wish to fully re-open discovery of Plaintiffs. This makes no sense. Wholesalers fully participated in fact discovery of Plaintiffs, including propounding written discovery and attending depositions. Notably, Retailers (who are in a similar boat to Wholesalers) agree that they do not need or seek any additional fact discovery of Plaintiffs. *See* Ex. C at 4.

8. **Losartan and Irbesartan Discovery.** Plaintiffs propose they propound initial discovery requests relating to losartan and irbesartan, focused initially on discovery needed to support Plaintiffs' filing for class certification on the economic loss claims related to those drugs, by May 17, 2023, and that Defendants substantially complete their productions to same in 60 days, with depositions to follow.

Plaintiffs look forward to discussing these matters with Your Honor.

Respectfully submitted,

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*/s/ Daniel Nigh*
Daniel Nigh
**NIGH, GOLDENBERG, RASO & VAUGHN, PLLC**
712 H Street NE, Dpt 32022
Washington, DC 20002
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

*/s/ Adam Slater*
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

*/s/ Conlee S. Whiteley*
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

*MDL Plaintiffs' Co-Lead Counsel*

Page 6 of 6

Encl.

cc: all counsel (via ECF)