# EXHIBIT C



Gregory E. Ostfeld
Tel 312.476.5056
ostfeldg@gtlaw.com

April 11, 2023

Ruben Honik, Esq.
ruben@honiklaw.com

Adam Slater, Esq.
aslater@mazieslater.com

Daniel Nigh, Esq.
dnigh@nighgoldenberg.com

David Stanoch, Esq.
d.stanoch@kanner-law.com

Conlee Whiteley, Esq.
c.whiteley@kanner-law.com

Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875-RBK-SAK (D.N.J.)

Dear Counsel:

This letter responds to your letter of April 10, 2023. We begin with a response to Plaintiffs' trial proposal (pp. 1-2 of your letter), followed by a discussion of the enumerated items (pp. 2-4 of your letter).

## Response to Plaintiffs' Trial Proposal

You first ask whether Defendants will reconsider their "stated position" that Defendants cannot formulate a specific trial proposal in the absence of Court guidance, citing Judge Kugler's statement that he intends to talk through the "exact case" to be tried. Defendants' position has not changed: the Court's guidance is clearly needed to define the scope of the first trial. To be clear, the problem is not that Defendants are *unwilling* to discuss the case to be tried; it is that Defendants have been *unable* to identify any combination of subclasses for trial that would not involve impermissible claim-splitting, apart from an unmanageable trial of all subclasses applicable to each group of Defendants in a single proceeding. As the Court and all parties now apparently agree that a single trial is not practical or manageable, Defendants are unable to identify a viable trial option that can proceed under the existing class certification orders.

Plaintiffs' trial proposal illustrates the very problem that has prevented Defendants from proposing a trial. Plaintiffs propose a trial of MSP as assignee of EmblemHealth and SummaCare against ZHP, Teva, and Torrent, trying the claims of four certified subclasses: TPP Breach of

**Greenberg Traurig, LLP | Attorneys at Law**

77 West Wacker Drive | Suite 3100 | Chicago, Illinois 60601 | T +1 312.456.8400 | F +1 312.456.8435

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London.* Long Island. Los Angeles. Mexico City⁺. Miami. Milan». Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Francisco. Seoul∞. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv^. Tokyo*. Warsaw¬. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ˜Greenberg Traurig Germany, LLP; *A separate UK registered legal entity; ⁺Greenberg Traurig, S.C.; »Greenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ¬Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

April 11, 2023
Page 2

Express Warranty Subclass Group B, asserting claims under the laws of 20 states; TPP Breach of Implied Warrant Subclass Group B, asserting claims under the laws of 7 states; TPP Fraud Subclass Group C, asserting claims under the laws of 21 states, the District of Columbia, and Puerto Rico; and TPP State Consumer Protection Subclass Group A, asserting claims under the laws of 18 states. But there is only partial and limited overlap of jurisdictions across these four subclasses. Indeed, only one state, New York, appears in all four subclasses. Any class member asserting claims under the laws of any of the other 42 jurisdictions encompassed within the four proposed subclasses would thus be compelled, impermissibly, to split their claims against ZHP, Teva, and Torrent into multiple trials by the same plaintiffs against the same defendants in the same court on the same facts.

In addition to the claim-splitting problem, Plaintiffs' trial proposal is unmanageable. A jury would have to be instructed on the laws of 43 separate jurisdictions, with different permutations of one to four claims per jurisdiction, on behalf of different class members that purchased or reimbursed different valsartan drugs at different times from different defendants in varying amounts. No reasonable jury could be expected to undertake such a determination without confusion and unfair prejudice. Moreover, the four subclasses are not limited to claims against ZHP, Teva, and Torrent, and therefore a trial against ZHP, Teva, and Torrent only contradicts the certification order.

Accordingly, Defendants oppose Plaintiffs' trial proposal, and reiterate that further guidance from the Court is needed to identify the case to be tried.

## Enumerated Items

As to the enumerated items set forth in Defendants' letter of April 5 and Plaintiffs' letter of April 10, Defendants' position is as follows:

1. **Rule 702 Briefing**: The parties agree.

2. **Class Representative Discovery**: The parties agree.

3. **Class Notice Program**: It appears the parties agree on this item, though Plaintiffs' phrasing suggests a possible future adjustment of the target date of submitting a proposed class notice plan and form of notice by May 10, 2023, describing it as a "goal" rather than a deadline. If that date moves, Defendants will seek a corresponding extension of the deadline for Defendants' response, currently proposed for June 7, 2023.

4. **Wholesaler Discovery**: Wholesalers respond here in good faith to issues presented by Plaintiffs. First, Plaintiffs may not use the discovery process as both a sword and shield. In the same correspondence, Plaintiffs both propose engaging in sweeping new custodial discovery of Wholesalers, but then claim that discovery by Wholesalers to Plaintiffs is completely barred. This inconsistent and unfair approach is, frankly, a non-starter to a good-faith discussion of how best to proceed. While reserving all rights and objections to any plan to conduct any class or subclass trial against Wholesalers, it has always been contemplated that once a class trial was set involving Wholesalers, discovery as to Plaintiffs' claims related to that trial would occur. Aug. 24, 2022 CMC Hr'g Tr. 17:9-16 (ECF 2151) ("[O]nce we identify the specific case that we are going to

April 11, 2023
Page 3

kick this thing off with, then we can tackle these issues about specific discovery as to that specific plaintiff. It may well be, as I said, that the defendants do have a need for some more specific discovery as to that specific case … I think Mr. Slater recognizes that they may have to provide further discovery as to a specific plaintiff.").

Second, with regard to the overview of the discovery Plaintiffs seek, Wholesalers are simply unable to assess the propriety of the scope of the requests without first understanding the trial Plaintiffs propose to bring against them, including the named plaintiffs, relevant specific jurisdiction(s), applicable law and scope and bases of claims. Any discovery requests made in a vacuum, untethered to these factors, are necessarily vague, potentially premature and not currently relevant and very likely overly broad. In short, Plaintiffs must advise Wholesalers of the case they propose to bring in order to have a productive discussion regarding discovery in that case.

Third, with regard to the discovery Plaintiffs sought from Wholesalers that Judge Schneider denied without prejudice back in July 2020, Judge Schneider's order does *not* state that Plaintiffs are, or would be, entitled to all of the pricing and profits information described by the subject RFPs and that they appear to seek at present. Rather, he deferred any ruling on the relevant issues in dispute until after such time as the Court had ruled on the motion to dismiss. *See* July 7, 2020 Order, Dkt. 507 at 1-2 ("The Court exercises its discretion to decline to decide at this time if the requested discovery is relevant … and, if it is, the scope of responsive discovery to be produced. The Court defers its decision on this discovery dispute until after the defendants' motions to dismiss are decided or an earlier time for good cause shown."). Now, nearly three years after the Court's deferral of this issue, and more than two years after the motion to dismiss rulings, Plaintiffs appear to seek a wide variety of information, despite the fact that the valid objections raised by Wholesalers more than three years ago have yet to be addressed by the Court. Wholesalers request Plaintiffs describe with more specificity exactly what data Plaintiffs seek, so Wholesalers may evaluate the type of information Wholesalers are able to produce — and the expert assistance needed to evaluate the same — in the hope that a compromise can be reached without needing to involve the Court.

Fourth, as to Plaintiffs' request for custodial discovery, Plaintiffs admit that the original discovery as to Wholesalers was limited to core issues — and it is undisputed that Plaintiffs long ago chose to entirely forego custodial discovery of Wholesalers and focus instead on Manufacturers during the class discovery period. While Wholesalers do not agree to the list of search terms that had been previously ordered as to Manufacturers, as Wholesalers were not a part of the process by which those terms were set and many of those terms would be inapplicable to Wholesalers in any event, should the Court rule (or the parties agree) that limited discovery may proceed in both directions in relation to a specific proposed trial, Wholesalers would agree to meet and confer with Plaintiffs about the proper search terms as proposed in Plaintiffs' April 10 letter and the scope of the discovery Wholesalers would require.

As stated above, Wholesalers in no way agree or concede that there is *any trial* (*individual or class*) in this MDL that would be appropriate against Wholesalers or that there is currently any proposed workable trial or scheduling order setting forth the relevant parties, law, and jurisdictions. That said, should the Court identify a specific trial involving Wholesalers for workup, then Wholesalers will participate in discovery for that trial as necessary and appropriate, working with Plaintiffs, as specified in Defendants' April 5 letter.

April 11, 2023
Page 4

Wholesalers reiterate their willingness to confer with Plaintiffs regarding these issues in the hope that a compromise can be reached.

5. **Pharmacy Discovery**: The Pharmacies are extremely puzzled by your letter response regarding the Pharmacies. In our letter, we specifically asked what authority Plaintiffs have to take additional general discovery of the Pharmacy Defendants. You failed to respond to that request, and instead acknowledged (in response to the Wholesalers) that "[g]eneral fact discovery closed over a year ago." The Pharmacy Defendants agree with this statement, and in our letter we did not raise any issue regarding additional fact discovery of Plaintiffs at this time. Thus, your statement that you "disagree that Retailers are entitled to any additional fact discovery" makes no sense or was a mistake. Either way, the time for general fact discovery against the Pharmacy Defendants has long been closed. You are correct that in 2020 Magistrate Judge Schneider denied discovery of profit data without prejudice, but he did so with the understanding that Plaintiffs could revisit the issue after the motions to dismiss were decided. All motion to dismiss issues were decided by early 2021, long before the close of general fact discovery on October 4, 2021. The Pharmacy Defendants strongly disagree with your proposal to re-open what has long been closed, and will oppose any effort to seek general, custodial, or otherwise non-case-specific fact discovery from them.

6. **Losartan and Irbesartan Fact Discovery**: Plaintiffs have indicated they are preparing a separate set of proposed initial discovery requests and proposed schedule. Defendants will evaluate that request and respond upon receipt, reserving their objections until Plaintiffs' submission of the proposed discovery requests and schedule.

7. **Damages Expert Reports and Depositions**: The parties disagree on this item for the reasons discussed in Defendants' April 5 letter and Plaintiffs' April 10 letter. The parties' disagreement on this point may be addressed in Plaintiffs' and Defendants' respective position statements to the Court, which are due on April 12.

Please let me know if there are any remaining points you believe require further discussion ahead of our April 12 submissions.

Very truly yours,

/s/ Gregory E. Ostfeld