**GT** GreenbergTraurig

Gregory E. Ostfeld
Tel 312.476.5056
ostfeldg@gtlaw.com

April 12, 2023

**Via ECF**

The Hon. Robert J. Kugler
United States District Judge
USDC, District of New Jersey
Mitchell H. Cohen Building & U.S.
Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

  **Re:** *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*,
     **No. 1:19-md-02875-RBK-SAK (D.N.J.)**

Dear Judge Kugler:

   I write on behalf of the Defendants' Executive Committee in accordance with this Court's instructions following the March 29, 2023 motion hearing (*see* Transcript of March 29, 2023 Motion Hearing ("March 29 Tr."), ECF 2316, at 35-36), to meet and confer and provide the Court with the parties' consent agreement or competing proposals on the next stages of this multi-district litigation. The parties held a meet-and-confer on April 3, 2023, and exchanged letters on April 5, 2023, April 10, 2023, and April 11, 2023. The parties to the previously scheduled TPP Trial (MSP, ZHP, Teva, and Torrent) have reached agreement on four matters, and Defendants summarize their understanding of the parties' agreements. All parties have discussed but have not reached agreement on four other matters, and Defendants present their proposals with respect to those four matters.

**Matters on Which the TPP Trial Parties Agree**

   1. **Rule 702 Briefing**: The parties agree Rule 702 briefing will continue in accordance with Case Management Order No. 31, under which the "[d]eadline for reply briefs in support of motions to preclude under Rule 702 reports of liability experts" is April 25, 2023. The parties agree rulings on Rule 702 motions should be held in abeyance until the Rule 23(f) petition and any subsequent appeal are decided.

**Greenberg Traurig, LLP | Attorneys at Law**

77 West Wacker Drive | Suite 3100 | Chicago, Illinois 60601 | T +1 312.456.8400 | F +1 312.456.8435

Albany. Amsterdam. Atlanta. Austin. Berlin¬. Boston. Charlotte. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London.˟ Long Island. Los Angeles. Mexico City⁺. Miami. Milan». Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Portland. Sacramento. Salt Lake City. San Francisco. Seoul∞. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv^. Tokyo⁺. Warsaw¬. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ¨Greenberg Traurig Germany, LLP; ˟A separate UK registered legal entity; ˟Greenberg Traurig, S.C.; ⁺Greenberg Traurig Santa Maria; ˟˟Greenberg Traurig LLP Foreign Legal Consultant Office; ^A branch of Greenberg Traurig, P.A., Florida, USA; ∞GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubengoshi Jimusho;  ¨Greenberg Traurig Nowakowska-Zimoch Wysokiński sp.k.

www.gtlaw.com

April 12, 2023
Page 2

2. **Class Representative Discovery**: The parties agree discovery may continue with respect to class representative MSP Recovery Claims, Series LLC ("MSP"). MSP should complete its rolling production of all discovery materials previously requested and/or ordered by the Court on or before May 3, 2023. Defendants also plan to submit any supplemental requests for documents with respect to class representative Maine Automobile Dealers' Association ("MADA") by May 10, 2023. Plaintiffs reserve their objections with respect to whether further discovery is necessary or appropriate from MADA.

3. **Class Notice Program**: The parties agree Plaintiffs may proceed to develop their proposed class notice program, with no actual notice to issue until the Rule 23(f) petition and any subsequent appeal are decided. Plaintiffs may submit their proposed class notice plan and form of notice to the Court, with the goal of doing so by May 10, 2023. If Plaintiffs do so, Defendants will submit their responses and objections by June 7, 2023, and Plaintiffs will submit their reply by June 28, 2023. If Plaintiffs seek to extend their proposed submission date, Defendants request a corresponding extension of their response date.

4. **Losartan and Irbesartan Fact Discovery**: Plaintiffs will provide a separate proposal for their initial discovery requests relating to losartan and irbesartan, and a proposed discovery schedule. Defendants will respond following receipt of Plaintiffs' proposed requests and discovery schedule, and reserve their objections.

## Matters on Which the Parties Do Not Agree

1. **Trial Proposal**: The parties were unable to reach agreement on the case to be tried as the first class trial. Plaintiffs have proposed a trial of MSP as assignee of EmblemHealth and SummaCare against ZHP, Teva, and Torrent, trying the claims of four certified subclasses under the laws of 43 jurisdictions (41 states, the District of Columbia, and Puerto Rico). Defendants have objected that Plaintiffs' proposal involves impermissible claim-splitting, contradicts the Court's class certification order, and would result in a sprawling and unmanageable trial. After diligent review of the Court's class certification order, Defendants have not been able to identify a trial proposal that would involve some discrete set of subclasses and claims and would not result in impermissible claim-splitting. Accordingly, Defendants are unable at this time to propose a class trial and would like to take the Court up on its invitation to commence a discussion "about how we [are] going to handle these trials," the "parameters of the trial," and "the exact case we're going to try as a class case." (March 29 Tr. at 17:8-12, 25:4-9). Defendants believe further guidance from the Court would be of assistance.

Plaintiffs propose a trial of MSP as plaintiff (in its capacity as assignee of EmblemHealth and SummaCare) versus ZHP, Teva, and Torrent as defendants, trying the claims of four certified subclasses: TPP Breach of Express Warranty Subclass Group b, asserting claims under the laws of 20 states; TPP Breach of Implied Warrant Subclass Group b, asserting claims under the laws of 7 states; TPP Fraud Subclass Group c, asserting claims under the laws of 21 states, the District of Columbia, and Puerto Rico; and TPP State Consumer Protection Subclass Group a, asserting claims under the laws of 18 states.

Defendants object to Plaintiffs' proposal because it involves impermissible claim-splitting. There is only partial and limited overlap of jurisdictions across these four subclasses. Indeed, only

April 12, 2023
Page 3

one state, New York, appears in all four subclasses. Any class member asserting claims under the laws of any of the other 42 jurisdictions encompassed within the four proposed subclasses would thus be compelled, impermissibly, to split their claims against ZHP, Teva, and Torrent into multiple trials by the same plaintiffs against the same defendants in the same court on the same facts. Dividing the plaintiffs' claims in this manner violates the rule against claim-splitting. *See Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 16, 224 (3d Cir. 2009) (applying claim-splitting doctrine to class-action context); *see also In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("The plan of the district judge in this case is inconsistent with the principle that the findings of one jury are not to be reexamined by a second, or third, or nth jury."). It also violates state law principles like New Jersey's "entire controversy" doctrine, which reflects the state's "broad policy against claim-splitting" but reaches "more broadly" and requires the "entire controversy" to be tried as one "unit of litigation[.]" *Electro-Miniatures Corp. v. Wendon Co., Inc.*, 889 F.2d 41, 44-45 (3d Cir. 1989) (internal citations and quotations omitted); *see also Nafar*, 339 F. App'x at 224 n.2; *Fornarotto v. Am. Waterworks Co., Inc.*, 144 F.3d 276, 279 (3d Cir. 1998).

Accordingly, setting a trial that involves splitting of class members' claims into multiple trials would introduce error into these proceedings. The parties and the Court agree that a trial of all subclasses' claims in one massive trial would be unmanageable. Accordingly, the challenge is to identify a discrete subclass or set of subclasses that could be tried in one trial without splitting the class members' claims. Defendants have carefully reviewed the Court's class certification order and the composition of each subclass, and have been unable to identify a discrete set of triable claims that would not result in claim-splitting and a violation of state law like New Jersey's entire controversy doctrine.

In addition to the claim-splitting problem, Plaintiffs' trial proposal is unmanageable. A jury would have to be instructed on the laws of 43 separate jurisdictions, with different permutations of one to four claims per jurisdiction, on behalf of different class members that purchased or reimbursed different valsartan drugs at different times from different defendants in varying amounts. No reasonable jury could be expected to undertake such a determination without confusion and unfair prejudice. Moreover, Plaintiffs' proposal does not conform to the four subclasses as certified by the Court, and therefore a trial as proposed by Plaintiffs would contradict the Court's certification order.

The Court advised the parties at the March 29, 2023 Motion Hearing that it may not be "done" with its efforts to identify a candidate case for trial, and indicated it wanted to commence a discussion "about how we [are] going to handle these trials," the "parameters of the trial," and "the exact case we're going to try as a class case." (March 29 Tr. at 17:8-12, 25:4-9). Because Plaintiffs' proposal would violate governing precedent on claim-splitting, the entire controversy doctrine, and similar state-law doctrines, and because Defendants have not been able to identify their own trial proposal that would avoid these problems, Defendants respectfully submit the best path forward is to take the Court up on its invitation and to commence the proposed discussion. With further guidance from the Court, the parties may be able to further discuss a proposed trial plan, identify concrete issues and objections, and meet-and-confer further.

2.    **Damages Expert Reports and Depositions**: The parties were also unable to reach agreement with respect to the next steps for damages expert reports and deposition. Defendants' position, consistent with the Court's original plan for the TPP Trial, is that the Court should

April 12, 2023
Page 4

identify the scope of the first trial, including the subclass or subclasses to be tried and the states involved. Plaintiffs' damages expert should then prepare an amended and updated expert report setting forth Plaintiffs' damages calculation for the trial, Defendants could prepare a responsive report, and the parties' damages experts could be deposed, all on an orderly case management schedule as part of the lead-up to the first trial.

Plaintiffs propose that Defendants should instead submit a damages expert report responding to the damages report submitted by Plaintiffs' damages expert, Dr. Rena Conti, for the original TPP Trial prior to the Court's entry of its class certification order. Defendants oppose Plaintiffs' proposal because it would not assist the parties or the Court in preparing for a trial— which is the ultimate goal of these proceedings. Dr. Conti's damages report calculates two categories of damages: (1) a plaintiff-specific damages calculation for MSP only against ZHP, Teva, and Torrent; and (2) a putative *nationwide* damages calculation for all TPP class members nationwide against ZHP, Teva, and Torrent. The first calculation would be of only limited assistance in a class trial, as it calculates only the named plaintiff's damages and not the damages of any class or subclass. The second calculation would not be useful in any class trial limited to any discrete subclass or set of subclasses confined to some specific set of states, because it is a nationwide calculation. In short, the first calculation is underinclusive, whereas the second calculation is grossly overinclusive. Neither calculation could be presented to a jury as plaintiffs' calculation of damages in a specific class trial encompassing claims limited to a narrower subset of class members and states.

Plaintiffs have taken the position that this is not a fatal obstacle, because Defendants could go back to the raw data and attachments accompanying Dr. Conti's class certification expert report, identify all of the possible permutations of damages from Dr. Conti's data and attachments, and prepare a report rebutting the entire data set and all attachments. That also is unworkable. First, Dr. Conti's class certification expert report and attachments are built around Plaintiffs' then-contemplated subclass structure. This Court certified different subclasses from those addressed in Dr. Conti's class certification expert report. Second, Dr. Conti's class certification expert report does not actually set forth her opinion as to the calculation of damages for any discrete class or subclass; it simply contains data and tables that she indicated she would use to calculate and formulate such an opinion. Dr. Conti should be required to disclose and commit to a specific damages opinion, and Defendants are entitled to respond to a disclosed damages opinion, not just raw data and tables from which such an opinion might be constructed. Third, until there is an understanding of what claims and states will actually be the subject of the first trial, any attempt to formulate a rebuttal damages report would be an exercise in speculation and guesswork likely to be rendered obsolete when the Court defines the parameters of the trial.

Accordingly, Defendants propose that this Court identify the scope of the first trial and set an orderly scheduled for Plaintiffs to disclose their amended and restated damages expert report(s), for Defendants to disclose their responsive report(s), and for damages expert depositions.

3.      **Wholesaler Discovery**: The parties were unable to come to an agreement on the proposed discovery to be served either on or by Wholesalers. First, Plaintiffs take the position that they need not identify the trial they propose against Wholesalers in order to conduct broad-based, sweeping discovery of those Defendants. While Wholesalers do not concede that there is *any trial* (*individual or class*) in this MDL that would be appropriate against Wholesalers or that there is

April 12, 2023
Page 5

currently any proposed workable trial or scheduling order setting forth the relevant parties, law, and jurisdictions, or subclass trial against Wholesalers, Wholesalers disagree with Plaintiffs' position: Wholesalers are unable to assess the propriety of the scope of Plaintiffs' proposed discovery requests without first understanding the trial Plaintiffs propose to bring against them, including the named Plaintiffs, relevant specific jurisdiction(s), applicable law and scope and bases of claims. It would be a waste of the parties'—and the Court's—time and resources to attempt to blindly negotiate discovery requests without this necessary information.

Next, Plaintiffs take the position that while **they** may serve sweeping discovery on Wholesalers, *Wholesalers* are not entitled to any discovery of Plaintiffs, including with respect to the specific plaintiff(s) identified in any potential trial against Wholesalers. Wholesalers strenuously disagree with this position. As this Court has made clear, it has always been contemplated that once a class trial was set, discovery as to Plaintiffs' claims ***related to that trial*** would occur. Aug. 24, 2022 CMC Hr'g Tr. 17:9-16 (ECF 2151) ("[O]nce we identify the specific case that we are going to kick this thing off with, then we can tackle these issues about specific discovery as to that specific plaintiff. It may well be, as I said, that the defendants do have a need for some more specific discovery as to that specific case … I think Mr. Slater recognizes that they may have to provide further discovery as to a specific plaintiff."). As the Court explicitly recognizes, this discovery goes both ways, and Plaintiffs' position that Wholesalers alone are somehow now barred from engaging in discovery related to a defined trial is without basis, and unfair.

Third, Plaintiffs take the position that they are entitled to the pricing and profits discovery they originally sought from Wholesalers in 2020. However, Judge Schneider **never** ordered that discovery, and in fact deferred any ruling on the relevant issues in dispute until after such time as the Court had ruled on the motions to dismiss. *See* July 7, 2020 Order, ECF 507 at 1-2 ("The Court exercises its discretion to decline to decide at this time if the requested discovery is relevant … and, if it is, the scope of responsive discovery to be produced. The Court defers its decision on this dispute until after the defendants' motions to dismiss are decided or an earlier time for good cause shown."). Now, nearly three years after the Court's deferral of this issue, and more than two years after the motion to dismiss rulings, Plaintiffs appear to seek a wide variety of information, despite the fact that the detailed and valid objections that Wholesalers raised more than three years ago have yet to be addressed by the Court. Wholesalers request that the Court permit briefing on the propriety and scope of those requests, including proposals for cost-shifting associated with the significant burden the requests entail, such as the expert assistance required to isolate the type of data that Plaintiffs request.

Fourth, Plaintiffs take the position that they are now entitled to custodial discovery from Wholesalers, despite willingly foregoing custodial discovery of Wholesalers years ago with no efforts to revisit the issue in the intervening years (until two weeks ago). Plaintiffs also inexplicably propose applying the extensive list of search terms applied to searches of **Manufacturers'** custodians to any searches of Wholesalers' custodians—despite the fact that Plaintiffs' only certified claim against Wholesalers is for unjust enrichment. The search terms drafted for Manufacturers' custodians bear no relevance to Plaintiffs' unjust enrichment claim against Wholesalers, and to order application of those terms as to Wholesalers would be to impose an undue burden of cost, effort, and time on Wholesalers with no apparent benefit. Wholesalers are

April 12, 2023
Page 6

willing to discuss this issue with Plaintiffs to determine if the parties can reach a compromise on this topic.

Wholesalers suggest that the parties continue to meet and confer in an effort to resolve these issues, and that if necessary briefing be permitted on the pricing and profits discovery that Plaintiffs seek.

4.      **Pharmacy Discovery**: Given Plaintiffs' TPP trial proposal (which does not include the Pharmacy Defendants, as the TPP Plaintiffs did not sue them), the Pharmacy Defendants do not believe discovery relating to Pharmacies is appropriate at this point, despite Plaintiffs' belated and newfound request for general fact discovery of the Pharmacy Defendants. In Monday's meet and confer correspondence, Plaintiffs responded to Wholesalers that "[g]eneral fact discovery closed over a year ago." The Pharmacy Defendants agree. *See* Case Management Order No. 23 (ECF No. 863) (providing that the deadline to complete "[f]urther discovery, if any, of wholesaler and retailer/pharmacy defendants" is October 4, 2021); ECF No. 1304 (extending other deadlines in CMO 23 but not the deadline for discovery of pharmacy defendants). Moreover, although Plaintiffs are correct that Magistrate Judge Schneider denied discovery of profit data without prejudice, he did so on the basis that Plaintiffs could revisit the issue after the motions to dismiss were decided. *See* ECF No. 507 (Order); July 6, 2020 Transcript at 86:22-23 ("The Court and parties can revisit plaintiffs' request after defendants' motions to dismiss are decided."). All motion to dismiss issues were decided by early 2021, *more than six months before the close of general fact discovery on October 4, 2021*. *See* MTD Order No. 6 (ECF No. 1020, dated March 12, 2021). Plaintiffs could have renewed their request for this information at the time the motions to dismiss were resolved more than two years ago, when they propounded a second round of Requests for Production in June 2021, during or immediately after the 30(b)(6) depositions of Pharmacy Defendants, or at any other time before fact discovery of the Pharmacy Defendants closed 18 months ago. They did not. Just as the Court denied Defendants' request to modify the Special Master's Order denying the Defendants' request to seek additional discovery of Plaintiffs, finding Defendants "could have raised their discovery requests earlier when the parties were conferring actively" (ECF No. 1471), Plaintiffs here could have requested the discovery now sought long ago. Again, they did not. There is simply no basis to reopen what is already closed— general fact discovery of the Pharmacy Defendants. Plaintiffs' proposal for the first class trial does not involve any claims against the Pharmacies. Although there may be something to meet and confer about regarding discovery requests (both expert-related and a limited basis for "targeted" fact discovery) relating to a class trial involving the Pharmacies, no such trial has been proposed or scheduled at this time. Further, any such "targeted" discovery likely involves extremely sensitive information subject to significant confidentiality concerns (*see, e.g.*, ECF No. 479), such that it makes eminent sense from both a practical and commercial sensitivity perspective to wait until there is an active class trial involving the Pharmacy Defendants before additional fact discovery, if any, is permitted. It is the Pharmacy Defendants' position, therefore, that any discussion of additional discovery of the Pharmacies is inappropriate at this time, particularly on the broad basis Plaintiffs proposed.

April 12, 2023
Page 7

       Thank you for your attention to these proposals. We look forward to discussing these matters further with the Court.

                            Very truly yours,

                            /s/ Gregory E. Ostfeld