

**Jeffrey D. Geoppinger**
*Partner*

DIRECT 513.698.5038
DIRECT FAX 513.698.5039
EMAIL jgeoppinger@ulmer.com

April 25, 2023

**VIA CM/ECF**
The Hon. J. Robert Kugler
U.S. District Court of the District of New Jersey
Mitchell S. Cohen Building & U.S. Courthouse
1 John F. Gerry Plaza, Courtroom 3C
4th and Cooper Streets
Camden, NJ 08101

Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875-RBK-JS (D.N.J.)

Dear Judge Kugler:

Wholesaler Defendants respectfully submit this letter brief seeking clarification and modification of Case Management Order 32 ("CMO 32"), entered April 21, 2023, with respect to two issues: (1) the partial grant of Plaintiffs' requests for certain discovery from Wholesalers and (2) Wholesalers' requests for discovery of TPP Plaintiffs, which were not addressed in CMO 32.

**Discovery to Wholesalers**

With respect to the discovery now ordered against Wholesalers, as set forth more specifically below, three issues require clarification and/or modification:

(1) CMO 32 does not reflect the parties' extensive briefing and argument regarding the production of Wholesaler profits and pricing data that Judge Schneider deferred ruling on three years ago, including Wholesalers' argument that Wholesalers do not keep in the ordinary course of business "net price" or profit information for VCDs;

(2) The categories of documents to be produced and the terminology employed in CMO 32, as with Plaintiffs' Requests for Production ("RFPs") on which CMO 32 is presumably based, are undefined, as well

CLEVELAND
COLUMBUS
CINCINNATI
CHICAGO
NEW YORK
WASHINGTON DC
BOCA RATON
ULMER.COM



as untethered to any specific VCD transactions at issue, and thus are overly broad and create confusion as to the scope of the information to be produced; and

(3) The timeline for production in CMO 32 does not account for the significant internal and potentially external resources needed to even attempt to approximate the information ordered to be produced with respect to profits and net pricing.[1]

**The History of the RFPs at Issue**

First, the parties extensively briefed and argued issues related to Plaintiffs' requests for production seeking price and profit information before Judge Schneider three years ago. At the time, Judge Schneider voiced concerns with the scope of Plaintiffs' requests and their lack of case law demonstrating their right to this discovery. Judge Schneider specifically tabled the dispute, and his ruling on it, for a later time—until after decisions on the motions to dismiss. But CMO 32 does not now address any of the issues and arguments specifically raised with Judge Schneider years ago. Instead, CMO 32 merely orders, without explanation, that "wholesalers' costs and profits data for VCDs" as well as "the prices wholesalers paid for VCDs" and "the prices wholesalers sold VCDs downstream" be produced. Wholesalers respectfully request that the parties pick up where they left off before Judge Schneider and present these issues to this Court (or to Judge Vanaskie) for full consideration.

[1] Wholesalers further note that the discovery as ordered is overly broad because it is not tailored to a proposed trial against Wholesalers or even to specific transactions actually involving Wholesaler Defendants. Additionally, the terms "costs and profits data" and "prices" as used in CMO 32 are vague and ambiguous, and do not match the similarly vague and ambiguous terms used in Plaintiffs' original RFPs, on which Wholesalers presume CMO 32 was based.



**The Ambiguity in the Discovery as Ordered**

Second, the categories of discovery listed in Section 7.1 of CMO 32 are vague and untethered to the actual requests that were at issue in 2020 when Judge Schneider tabled this dispute and reserved ruling for a later time. At the time, the specific requests that Plaintiffs issued called for "gross price" and "net price" Wholesalers paid to Manufacturers and were paid by Retailers, for specific transactions. Those were the requests that the parties discussed, briefed, and argued at that time. Plaintiffs have served no new requests since 2020 asking for different pricing or profits information. Similarly, Section 7.2 of CMO 32 grants Plaintiffs' request for "further targeted discovery and depositions of wholesaler custodians and FRCP 30(b)(6) deponents," but does not clarify what search terms will apply to that custodial discovery or what it means by "targeted."

**The Production Timeline Does Not Account for the Fact That Net Pricing and Profit Information is Not Kept in the Ordinary Course of Business and Requires Significant Internal Resources and Potentially External Expert Assistance**

Third, CMO 32 orders that Wholesalers produce this information by May 30, 2023. As demonstrated below, even if the pricing information that must be produced is better defined, and even if it could be produced, it would entail a herculean effort requiring internal resources as well as potential expert assistance that still could not be accomplished within that abbreviated time frame. Wholesalers seek relief from this deadline pending resolution of the other issues mentioned above, as well as the opportunity to explain to the Court how the production cannot be accomplished in such a short window, if at all.

**Wholesalers' Requested Clarification/Modification**

In light of the multiple issues identified above, Wholesalers seek clarification and/or modification of CMO 32 to order that:



(1) Plaintiffs and Wholesalers meet and confer to define "costs and profits data" and "prices", and to discuss the resource requirements to approximate such information, which is not kept in the ordinary course of business, and that due to the above, such information is not required to be produced by May 30, 2023;

(2) Should the Court determine that "costs and profits data" should be produced, the Court will order a hearing on the issues raised with and tabled for consideration by Judge Schneider and herein, including the request to first define a specific trial involving states where profits are the proper measure of unjust enrichment damages, the requirement that Plaintiffs identify the specific transactions related to that trial and to specific Wholesalers, and the necessary timeline given the need for expert assistance and significant internal resources; and

(3) The parties meet and confer on the scope of any custodial discovery and an agreed-to list of Wholesaler-specific search terms.

**Wholesalers' Discovery to Plaintiffs**

With respect to the discovery that Wholesalers have requested of Plaintiffs, CMO 32 makes plain that discovery on Plaintiffs' certified class claim of unjust enrichment is open. Therefore, Wholesaler Defendants request that, like Plaintiffs, they, too, be permitted to collectively serve a tailored set of Requests for Production and Rule 30(b)(6) Notices of Deposition (attached hereto as Exhibit 1 and Exhibit 2) that seek fact discovery relevant to the elements of Plaintiffs' certified unjust enrichment claim and Plaintiffs' purported damages. To put it concisely, in their unjust enrichment cause of action, Plaintiffs purport to seek damages for their coverage of millions of dollars of VCD prescriptions in a scenario they claim leaves them injured and Wholesalers unjustly enriched. Plaintiffs must now provide discovery on what they have consistently claimed was not yet ripe—they must provide Wholesalers proof of the actual prescription coverage claims in issue versus the Wholesaler Defendants; they must demonstrate how Plaintiffs can trace those claims to involvement by an



individual Wholesaler; and they must address where the equities between these parties fall.[2]

Thus, Wholesalers request that the Court clarify CMO 32 to grant the discovery that Wholesalers requested of Plaintiffs.

* * *

**Factual Background and Legal Argument**

**Factual Background: Discovery to Wholesalers**

On November 7, 2019, the Court ordered Plaintiffs to submit proposed Requests for Production to Wholesalers. Dkt. 292. After several months of negotiations regarding these requests, on March 3, 2020 the Court ordered the parties to submit briefing on their "macro" discovery disputes. Dkt. 388. Relevant here, Wholesalers objected to Plaintiffs' proposed RFPs 2 and 4:

---

[2] In the event that Plaintiffs argue that Wholesaler Defendants' request for discovery from Plaintiffs is inappropriate because discovery is somehow closed for Wholesalers (but not Plaintiffs), the Court already has rejected that argument in both the context of the TPP trial case, and now via issuance of CMO 32, which specifically permits discovery related to the certified class claim of unjust enrichment. Plaintiffs' insistence on this position in the meet and confer process resulted in no progress on this front, and Wholesalers intended to take it up at the Case Management Conference. In light of CMO 32, however, which made no mention of the issue, Wholesalers delivered the draft discovery to Plaintiffs and have a meet and confer planned for today, but did not believe they could leave the issue for another time. Thus, Wholesalers have filed this letter brief on the topic, two business days after receipt of CMO 32.



- **RFP 2**: The gross and net price paid by you for VCDs identified in Request No. 1.
- **RFP 4**: The gross and net price paid by purchasers to you for VCD sales identified in Request No. 3.

On April 13, 2020, Plaintiffs filed their letter brief regarding this discovery, Dkt. 413, and on June 29, 2020, Plaintiffs filed a reply (Dkt. 501) and on June 30, 2020, a notice of supplemental authority in support of their letter brief. Dkt. 501. Wholesalers filed their letter brief on June 16, 2020, attaching multiple company declarations in support of their arguments. Dkt. 478.

The Court held oral argument on the macro discovery disputes on July 6, 2020. Dkt. 510. Judge Schneider expressed skepticism about the law Plaintiffs cited in support of their request for pricing and profit discovery, noting that Plaintiffs were unable to identify any support for their wide-reaching requests:

> (Judge Schneider) We read the cases that the plaintiff cited where the Court has ordered the production of pricing and profit information. We're not dealing with the punitive damage issue right now. We're not dealing with an antitrust case. We're not dealing with a patent case. … **But have you cited one case in the product liability context where a Court has said that the plaintiffs are entitled, in discovery, to this type of profit information, pricing information? One case?**
> …
> (Stanoch) I think, though **we probably did not.**

Dkt. 510 at 56 (emphasis added). After hearing argument from both parties, Judge Schneider ruled from the bench as follows:

> Plaintiffs want to know the gross and net prices paid for the valsartan the wholesalers bought and the gross and net prices they sold the valsartan to downstream purchasers. Plaintiffs argue this discovery is relevant to their disgorgement and unjust enrichment



> claims. They also argue the discovery is relevant to motive and intent, which the Court completely discounts. The wholesalers argue the requested discovery is irrelevant, would be unduly burdensome to produce, and involves extremely confidential and trade secret information. As to this discovery request, the Court declines to decide at this time if the requested discovery is relevant within the meaning of Rule 26. **Instead, the Court finds that since the requested discovery is not relevant to a core issue in the case, and the viability of plaintiffs' profit and disgorgement claims will be decided when the Court rules on defendants' motions to dismiss, there is no pressing need for the wholesaler defendants to produce the requested sales and profit information now.** From the beginning of the case, the Court has said it wants the parties to focus on the core issues. For example, was defendants' valsartan contaminated? With what? How much? When did this occur? Did plaintiffs ingest contaminated valsartan? Plaintiffs' request for profit and sales discovery, while ultimately may be important and relevant, is not directed to these core issues. **The Court, therefore, defers this discovery for a later time in the case. The Court and parties can revisit plaintiffs' request after defendants' motions to dismiss are decided.**

*Id*. at 85-86 (emphasis added). On July 7, 2020, the Court issued an order denying Plaintiffs' RFPs 2 and 4 without prejudice. Dkt. 507.

Pursuant to agreement between Plaintiffs and Wholesalers, as to all RFPs in Plaintiffs' final set, "'[d]ocuments' shall refer only to centrally stored, **non-custodial data** maintained by Wholesaler Defendants in the ordinary course of business, and **shall not refer to emails or custodial data** held by individual employees of the Wholesaler Defendants." Dkt. 508-2 at 3 (emphasis added). *See also* Dkt. 413 ("Plaintiffs have agreed to forego custodial discovery (i.e. email searches and electronic search terms), the most expensive and time-



consuming collection efforts required in litigations of this magnitude, for now.").

**Legal Argument: Pricing and Profit Discovery**

Wholesalers object to the Court's Order granting discovery as to "wholesalers' costs and profits data for VCDs" for several reasons. First, as noted by Judge Schneider almost three years ago, Plaintiffs provide no authority for their broad request. Second, Wholesalers do not keep net pricing and profit information in the ordinary course of business, and are not required to create such information for this litigation. Third, this discovery is overly broad and not tethered to specific purchases or transactions actually involving Wholesalers. Fourth, because of the overly broad nature of the requests, this discovery encompasses transactions in states where profits or disgorgement are unavailable as a remedy for UE claims, such that Wholesaler pricing and profit information is entirely irrelevant. Finally, Wholesaler pricing and profits information requires heightened protection due to the commercial sensitivity and trade secret nature of this information.

**a. Plaintiffs provide no authority in support of their request for pricing and profit information.**

As Wholesalers argued in their 2020 brief on macro discovery issues, Plaintiffs have not identified any on-point case law that would support their request for the burdensome production of highly sensitive Wholesaler pricing or profit information. Dkt. 478 at 11. At oral argument, Judge Schneider questioned Plaintiffs about their lack of on-point authority and inapposite cases, inquiring: "have you cited one case in the product liability context where a Court has said that the plaintiffs are entitled, in discovery, to this type of profit information, pricing information? One case?" Dkt. 510 at 56. Plaintiffs' response was: "we probably did not." Dkt. 510 at 56. Nearly three years later, Plaintiffs still fail to provide **any** authority for their entitlement to this broad pricing or profit discovery.



**b. Net pricing and profit information is not kept in the ordinary course of business.**

As Wholesalers have explained to Plaintiffs and the Court in the past, Wholesalers do not keep "net price" or profit information in the ordinary course of business. There is no single database or spreadsheet that Wholesalers can consult to retrieve this information. Instead, Wholesaler pricing methods involve a complex system including, among other factors, discounts, chargebacks, and rebates calculated and imposed on a transaction-by-transaction basis, with differing standards and prices applied to varying "baskets" of products sold to numerous customers. *See* Dkt. 478. Wholesalers neither calculate nor maintain net pricing (or profits) information on VCDs on either a product or individual transaction basis in the ordinary course of business. Dkt. 478-3, McKesson Profit Decl. ¶¶ 6–8, 21; 478-5, Cardinal Profit Decl. ¶¶ 2, 8–9, 12; 478-6, ABC Decl. ¶ 16. As Wholesalers previously articulated, the effort to even attempt to create and produce the requested information for the recalled NDCs would be extremely burdensome, requiring hundreds, if not thousands, of employee and expert hours to create this information uniquely for this discovery, if it is even possible to do at all. Dkt. 478-3, McKesson Profit Decl. ¶¶ 6–11, 21–23; 478-5, Cardinal Profit Decl. ¶¶ 2, 9–10, 12.

Wholesalers should not be required to attempt to create new documents or information to respond to Plaintiffs' discovery requests. *Wilson v. Wash. Metro. Area Transit Auth.*, No. 05-2146 (GK)(AK), 2008 WL 11408470, at *2 (D.D.C. Mar. 4, 2008) ("The Court cannot order Plaintiff to produce documents that do not exist."); *see Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV-DJW, 2013 WL 6185690, at *6 (D. Kan. Nov. 26, 2013) (denying motion to compel where responding party represented that a responsive data dictionary did not exist).[3]

---

[3] In the context of productions of structured data, the parties "must consider the database as it is, not as it could be." *The Sedona Conference Database Principles Addressing the Preservation and Production of Databases and Database Information in Civil Litigation*, 15 Sedona Conf. J. 171, 193 (2014).



And even if the underlying information required for such calculations *could* be extracted and teased out of the mix of other factors that drive pricing on a customer level, which Wholesalers doubt, the process to determine Wholesalers' profits for requested transactions would be highly burdensome and would require expert assistance. Dkt. 478-3, McKesson Profit Decl. ¶¶ 9–11, 14–15, 18, 22–23; 478-5, Cardinal Profit Decl. ¶¶ 3, 8–24; 478-6, ABC Decl. ¶¶ 17, 19–22. Plaintiffs' requests implicate eight years of data on individualized and constantly changing chargebacks, rebates, discounts, expenses, overhead, and taxes for each purchase and sale to and from the many Retailer and Manufacturer Defendants. *See, e.g.*, Dkt. 478-3, McKesson Profit Decl. ¶¶ 10, 14–15, 18, 22–23; 478-5, Cardinal Profit Decl. ¶¶ 5–11, 20–22, 24; 478-6, ABC Decl. ¶¶ 8–12, 17, 20–22.

Compliance with the Order would require Wholesalers to identify, disinter, and export a staggering amount of uncoordinated contractual and transactional information in various formats from various locations in varying states of completeness and usability; to integrate and normalize these information streams in a customized database; and then to calculate and validate the demanded pricing data. *See, e.g.*, Dkt. 478-5, Cardinal Profit Decl. ¶¶ 4–24. Such information would need to be individually sourced from a variety of active, archived, and legacy systems, some of which were decommissioned and whose administrators had long since departed the scene before this litigation ever started. *Id.* ¶¶ 8, 12–24. A veritable army of experts, internal and external IT, programming, accounting, sales, business units, managerial, and consulting resources would be required to even try to calculate such information—with little likelihood of obtaining reliable figures. *Id.*

In contrast to Wholesalers' concrete evidentiary showing of burden to create and collect the net pricing and profit information sought, Plaintiffs simply state that this information "is necessary to class damages calculations." Dkt. 2338 at 4. However, as discussed in more detail below, Plaintiffs do not identify the trial or even a subclass involving the "damages calculations" in question. Plaintiffs' failure to appropriately tailor their requests imposing this significant

burden on Wholesalers demonstrates the lack of justification for such discovery. *See Capetillo v. Primecare Med., Inc.*, No. 14-2715, 2016 WL 3551625, at *2 n.2 (E.D. Pa. June 28, 2016) (discovery request for medical complaints over 5 to 10-year period unduly burdensome and therefore limited to fractional time period and by subject matter because it triggered onerous manual review of database).

Wholesalers request that the Court permit and consider briefing on the propriety and scope of those requests, including proposals for cost-shifting associated with the significant burden the requests entail, such as the expert assistance required to isolate the type of data that Plaintiffs request.

**c. Plaintiffs' requests are overbroad and untethered to specific claims or transactions.**

Plaintiffs have the burden of creating tailored discovery requests that relate to the claims of the specific Plaintiffs (e.g., consumers and TPPs) at issue, and their specific VCD transactions. *E.g., Campbell v. Sedgwick, Detert, Moran & Arnold*, No. 2:11-CV-0642(ES-CLW), 2012 WL 12898345, at *3 (D.N.J. Oct. 9, 2012) (instructing plaintiff who submitted overbroad requests to "appropriately tailor his requests to relevant discovery as it relates to his operative Complaint."); *Salamone v. Carter's Retail, Inc.*, No. CIV.A. 09-5856 GEB, 2011 WL 1458063, at *3 (D.N.J. Apr. 14, 2011) (affirming magistrate's decision to narrow[] the scope of Plaintiff's discovery requests, 'tailor[ing them] to the specifics of the case.") (internal quotations omitted).

Here, Wholesalers have no information tying the discovery requests to a particular case or set of transactions. Plaintiffs do not propose a trial they intend to bring against Wholesalers, and do not identify the named Plaintiffs, relevant specific jurisdiction(s), applicable law and scope and bases of claims for which they seek this discovery. Instead, Plaintiffs seek **all** revenues and **all** profits for **all** VCDs Wholesalers purchased from Manufacturer Defendants and sold to Retail Pharmacy Defendants over a period of eight years. This far-reaching request is undoubtedly overbroad and includes revenues and profits on VCDs

paid for by consumers and TPPs in states where disgorgement is unavailable as a remedy. Plaintiffs do not even identify the specific VCD transactions they contend involved a Wholesaler Defendant. Logically, Wholesalers will not have any information for transactions that did not involve Wholesalers—for example, where the relevant Pharmacy Defendant purchased the VCDs directly from the Manufacturer or from a non-defendant wholesaler. Plaintiffs must identify the transactions involving Wholesaler Defendants—especially because Plaintiffs contend they have the data to do so—before demanding Wholesalers produce pricing or profit information related to those transactions.

**d. Pricing and profit information is entirely irrelevant to Plaintiffs and transactions in states where disgorgement is unavailable.**

"[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Plaintiffs contend they need Wholesalers' pricing and profits information for "class damages calculations." Dkt. 2338 at 4. But this request ignores the fact that disgorgement of profits is not available as a remedy for Plaintiffs' UE claims in all states. For example, states such as Arizona, New Jersey, and New York, among others, hold that the appropriate measure of damages for a UE claim is the reasonable value of the goods—not the defendant's profits. *See* Dkt. 2011-9; *Beauchamp L. Off. PC v. Gust Rosenfeld PLC*, 2018 WL 1868033, at *2–4 (Ariz. Ct. App. Apr. 19, 2018); *Rauch v. Rauch*, 2017 WL 3722545 at *8 (N.J. Super. Ct. App. Div. Aug. 30, 2017); *Community Care Physicians, P.C. v. Domagalski*, 2016 WL 1735501 at *3 (N.Y. City Ct. May 2, 2016). Wholesalers' profits are therefore entirely irrelevant to Plaintiffs' claims arising out of the laws of states where profits or disgorgement is not an appropriate remedy, and Wholesalers should not be required to produce profits information related to the transactions involving Plaintiffs from those states.



**e. Wholesaler pricing and profits information requires heightened protection.**

Generally, confidential pricing information can qualify as a trade secret. *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1189 (10th Cir. 2009); *see also Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 298–99 (N.J. 2001). The U.S. Supreme Court has held that trade secrets are property and thus are protected by the 5th Amendment Takings Clause. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–1004 (1984). Pricing data is extremely valuable because of its confidentiality, and production would irreversibly destroy that value. *See id.* at 1011–12 ("The economic value of [trade secrets] lies in the competitive advantage over others that [their owner] enjoys by virtue of its exclusive access to the data, and disclosure or use by others of the data would destroy that competitive edge."); *DTM Research, L.L.C. v. AT&T Corp.*, 245 F.3d 327, 332 (4th Cir. 2001) ("'proprietary aspect' of a trade secret flows, not from the knowledge itself, but from its secrecy."); *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 952 (10th Cir. 1978) ("ability to predict a competitor's bid with reasonable accuracy would give a distinct advantage to the possessor of that information.").

As Wholesalers previously informed the Court, Wholesaler Profit Information is proprietary to Wholesalers and constitutes trade secrets. 478-5, Cardinal Profit Decl. ¶¶ 25–30; 478-6, ABC Decl. ¶¶ 18, 20–23. Plaintiffs have made no showing to justify production of such protected information.

**<u>Legal Argument: Custodial Discovery</u>**

Wholesalers object to the Court's Order granting "further targeted discovery and depositions of wholesaler custodians" because (1) to the extent Plaintiffs even request this discovery, Plaintiffs' request is vague and ambiguous; and (2) this discovery is overly broad. Wholesalers request that the Court direct the parties to meet and confer on the scope of the "targeted" custodial discovery and the list of mutually-acceptable Wholesaler-specific search terms.



**a. To the extent Plaintiffs seek discovery from Wholesaler custodians, their request is vague and ambiguous.**

First, it is unclear from Plaintiffs' trial and scheduling proposal what, if any, custodial discovery they seek from Wholesalers, more than three years after the parties agreed to forego custodial discovery. In their April 12, 2023 letter to the court, Plaintiffs simply state that they "envision limited fact and expert discovery of Wholesalers, similar to that discussed above as to Retailers." Dkt. 2338 at 4. Plaintiffs' counsel's only statement regarding custodial discovery during the March 29, 2023 hearing is similarly vague: "…we need to do **some** targeted custodial discovery." 3/29/23 Tr. at 32:2-3 (emphasis added). To the extent Plaintiffs seek custodial discovery from Wholesalers, no specifics or parameters have been contemplated, and it is entirely unclear what Plaintiffs actually seek. Plaintiffs' proposal to apply some or all of the search terms relevant to *Manufacturers* is similarly vague. Such vague and ambiguous requests are not permissible.

**b. Plaintiffs' request is overly broad.**

For the same reason Plaintiffs' request for custodial discovery is vague and ambiguous, their request is also overly broad. Plaintiffs' request for custodial discovery is currently unbounded by any parameters, and Plaintiffs' promise that such requests will be "targeted" is insufficient to satisfy the requirement that they tailor their requests. *See Campbell*, 2012 WL 12898345, at *3; *Salamone*, 2011 WL 1458063, at *3.

**<u>Legal Argument: Affirmative Discovery</u>**

Wholesaler Defendants should be permitted to obtain additional discovery from Plaintiffs about their unjust enrichment claim. CMO 32 makes apparent that discovery with respect to the Plaintiffs' certified class claim of unjust enrichment is permitted and not foreclosed. While Wholesaler Defendants continue to believe that any discovery should be tethered to a defined trial that Plaintiffs propose to bring against them, CMO 32 currently permits Plaintiffs



to undertake certain discovery of Wholesaler Defendants, including custodial discovery and additional Rule 30(b)(6) depositions, in the absence of a specific case identified for trial. As such, Wholesaler Defendants request that the Court provide them the same opportunity to take discovery from Plaintiffs on their unjust enrichment claim. Specifically, at this time, Wholesaler Defendants request that the Court permit them to collectively serve TPP Plaintiffs with Requests for Production and Rule 30(b)(6) Notices of Deposition that seek (1) fact discovery regarding the value of the VCD drugs to relevant TPP Plaintiffs, including in contract fulfillment and contract and plan renewals; and (2) fact discovery regarding the profits to the relevant TPP Plaintiffs from fulfillment of all claims in issue. Should the Court later determine that damages-based expert discovery may proceed, Wholesaler Defendants will seek to serve such discovery on the TPP Plaintiffs as well. As noted in their April 12, 2023 submission (Dkt. 2339), Wholesaler Defendants propose the parties meet and confer on the language of these discovery requests, and, as has been customary in this litigation, submit the proposed Requests for Production and Rule 30(b)(6) Notices of Deposition to the Special Master for discussion and approval. A copy of Wholesaler Defendants' proposed Requests for Production and Rule 30(b)(6) Notices of Deposition are attached.

Plaintiffs' counsel has previously taken the position that Wholesaler Defendants' request for discovery from Plaintiffs is inappropriate because "general fact discovery" is closed. That is incorrect, as demonstrated by CMO 32 and the Court's prior rejection of that argument in the TPP trial case. As CMO 32 itself recognizes, the specific fact discovery on the certified class claim of unjust enrichment is separate and distinct from the general fact discovery of prior phases. The first phase of discovery focused on document and deposition discovery of Manufacturer Defendants, depositions of economic loss and medical monitoring putative class representatives, and depositions of personal injury bellwether Plaintiffs. (*See* CMO 23, Dkt. 863.) The second phase focused on document and deposition discovery of Wholesaler and Pharmacy Defendants. (*Id.*) The limited discovery that Defendants were permitted to take related to the TPP class representatives pertained directly and



narrowly to class certification—specifically, whether the TPP Plaintiffs' damages model is susceptible to class treatment. (Dkt. 650.)

The Court now has certified Plaintiffs' unjust enrichment claim against Wholesaler Defendants and issued CMO 32 permitting discovery of Wholesaler Defendants specifically on that claim. By the same token, and as a matter of due process, Wholesaler Defendants should be permitted to take fact discovery on the elements of that unjust enrichment claim, including discovery of evidence in Plaintiffs' possession supporting or contradicting their purported damages. For instance, a TPP Plaintiff cannot establish a Wholesaler Defendant was unjustly enriched without any data linking a particular Wholesaler Defendant to a specific VCD transaction. Thus, Wholesaler Defendants require, among other things, discovery of data in Plaintiffs' possession showing which VCD transactions involved which Wholesaler Defendant, if any. Also, Wholesaler Defendants require discovery of the TPP Plaintiffs' revenues and profits associated with each of their VCD transactions. Plaintiffs' expert Dr. Rena Conti claims that the VCDs TPP Plaintiffs reimbursed for were "worthless." Evidence showing that the TPP Plaintiffs profited from their agreements to reimburse for VCDs would demonstrate otherwise. And, there are other subjects on which Wholesaler Defendants require discovery in order to defend against Plaintiffs' unjust enrichment claim, all of which are addressed in the attached proposed Requests for Production and Rule 30(b)(6) Notices of Deposition.

At the August 24, 2022, Case Management Conference, the Court told the parties that it "ha[s] never forced a lawyer to go to trial when they don't have the discovery they need in a case." (Aug. 24, 2022 CMC Hr'g Tr. 26:14-15 (Dkt. 2151).) At this stage of the proceedings, Wholesaler Defendants need discovery on the certified class claim of unjust enrichment. And, just as CMO 32 authorized Plaintiffs to take discovery of Wholesaler Defendants on their unjust enrichment claim, Wholesaler Defendants request similar authorization to take discovery from Plaintiffs on that same claim. Wholesaler Defendants respectfully request that the Court enter an order permitting them to serve

negotiated Requests for Production and Rule 30(b)(6) Notices of Deposition regarding Plaintiffs' unjust enrichment

* * *

In light of the foregoing, Wholesaler Defendants respectfully request modification and clarification of CMO 32 with respect to the information to be produced by Wholesalers and the date by which any such production must be made; as well as the extent of any custodial discovery and the search terms to be applied in conducting any searches thereof. Wholesalers also respectfully request an Order permitting Wholesalers to serve discovery on Plaintiffs with respect to the Plaintiffs' certified class claim of unjust enrichment.

Very truly yours,

*/s/ Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
Liaison Counsel for Wholesalers
*Counsel for AmerisourceBergen Corporation*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Emily G. Tucker
Luke J. Bresnahan
CROWELL & MORING
*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris
NORTON ROSE FULBRIGHT US LLP
*Counsel for McKesson Corporation*