# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>*This relates to: All Actions* | No. 1:19-md-2875-RBK<br>Hon. Robert Kugler |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF *DAUBERT* MOTION TO PRECLUDE OPINIONS OF DEFENSE EXPERT MICHAEL B. BOTTORFF, PHARM.D.

NIGH GOLDENBERG RASO & VAUGHN PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927

On the Brief:
C. Brett Vaughn, RN, BSN, JD
Email: bvaughn@nighgoldenberg.com
Sam Hoefs, Esq.
Email: Shoefs@nighgoldenberg.com

# INTRODUCTION

Dr. Bottorff's focus on bioequivalence does not "fit" this case. Bioequivalence looks to whether the API does what it is supposed to – in this case (in simple terms) the control of high blood pressure. Plaintiffs' claims, on the other hand, are focused on the lack of therapeutic and pharmaceutical equivalence between the contaminated valsartan and the RLD due to the presence of NDMA/NDEA. Thus, Dr. Bottorff's opinions should be precluded.

Moreover, Dr. Bottorff's methodology in opining that valsartan with NDMA or NDEA present was bioequivalent to non-contaminated valsartan was not reliable, as he primarily relied on a large volume of irrelevant bioequivalence studies on valsartan **not contaminated** with NDMA or NDEA. (Def. Br. at 1; ECF 2332). Defendants attempt to direct the Court's attention away from this issue by pointing to Dr. Bottorff's evaluation of the metabolic mechanisms of NDMA and NDEA compared to the metabolism of the active ingredients in valsartan. (*Id.*). But this is yet another irrelevant point that does not "fit" this case. Furthermore, Dr. Bottorff's opinion is contrary to the studies on NDMA and NDEA-contaminated valsartan, all of which found NDMA and NDEA-contaminated valsartan to not be bioequivalent to brand name valsartan (Diovan).

Defendants also fault Plaintiffs for not bringing a *Daubert* motion regarding Dr. Bottorff's opinion that the monetary value of VCDs was not impacted by having nitrosamines present, because he disclosed his opinion during his first deposition in September of 2021. (*Id.*). Dr. Bottorff's first deposition was taken during the general causation phase and it would have been an improper time to argue the reliability of this opinion. It is now the appropriate time.

## ARGUMENT

A. **Bioequivalence Is Irrelevant and Overlapping Metabolic Pathways Between Nitrosamines and Valsartan are Irrelevant to Whether Contaminated Valsartan is Bioequivalent to Name Brand Valsartan in Any Event**

Dr. Bottorff's opinions on bioequivalence address something that is not at issue in this litigation. There is no reason to address bioequivalence since Plaintiffs' claims are predicated on the lack of therapeutic or pharmaceutical equivalence due to the presence of the genotoxic impurities in the drug substance – defeating the requirement that it be the generic equivalent in terms of quality, purity, and identity. Where the expert's opinion is irrelevant to and does not "fit" the case, it must be precluded. *In re Paoli R.R. Yard PCB Litig.*, 3 F.3d 717, 743 (3d Cir. 1994).

In addition, the opinion cannot stand from a methodological standpoint. Dr. Bottorff's left field opinion that nitrosamines and valsartan do not share a common metabolic pathway is not sufficient grounds to reliably opine that the VCDs at issue are bioequivalent to brand name or non-nitrosamine contaminated valsartan. As laid out in the Plaintiffs' initial *Daubert* motion, Dr. Bottorff did not rely on any studies related to the VCDs at issue, but instead bolstered his opinion with studies on non-contaminated VCDs. (ECF 2293-1). Any generic drug can fail bioequivalence testing for a number of reasons, even without nitrosamines or contaminants with overlapping metabolic pathways. While the exact reason the VCDs at issue repeatedly failed bioequivalence testing is not discernible, it is clear that the VCDs at issue repeatedly failed bioequivalence testing. Dr. Bottorff's opinion that nitrosamines and valsartan do not share a metabolic pathway is a red herring and is not a sufficient basis to support his opinion that the VCDs at issue are bioequivalent.

Dr. Bottorff's opinion is also counter to the actual studies conducted by the Defendants. Defendants' test results indicated that their VCDs were not bioequivalent – studies he did not consider. For example, Teva concluded that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌



(Ex. A, emphasis added). Dr. Bottorff admitted in his deposition that he never received this study. (Bottorff Dep. 189:5-12, ECF 2293-5). Prinston Pharmaceutical came to the same conclusion about their VCDs at issue,

(Ex. B, emphasis added). Dr. Bottorff admitted in his deposition that he never received this study as well. (Bottorff Dep. 197:21-198:13).[1]

Dr. Bottorff's opinions and methodology do not "fit" the case, and are not reliable and should be precluded.

**B. Dr. Bottorff Is Not Qualified to Offer His Opinion Regarding the Monetary Value of Contaminated-VCDs Which is Based on His Unreliable Opinion that Contaminated-VCDs are Bioequivalent**

Defendants argue that "Dr. Bottorff's opinion concerning the monetary value of valsartan is a logical extension of his opinion that NDMA and NDEA do not alter the bioequivalence of valsartan and that, therefore, the therapeutic response and efficacy of valsartan is unchanged." (Def. Br. at 2). As discussed above, Dr. Bottorff's bioequivalence opinion does not "fit" this case to begin with, and also lacks reliability. Therefore, any extension of his bioequivalence opinion, such as contaminated VCDs having the same monetary value as non-contaminated VCDs, is also irrelevant and not a "fit", and unreliable, and should be precluded. Dr. Bottorff also did not consider how the presence of carcinogens in the VCDs would impact their value.

Furthermore, Dr. Bottorff is not qualified to offer economics opinions, as recognized by

---

[1] Aurobindo's internal study reached the same conclusion:                                                                                 (Ex. C, emphasis added). Dr. Bottorff admitted in his deposition that he never received this study either. (Bottorff Dep. 157:24-159:20).

-3-

Defendants who state, "Defendants note that they have not designated Dr. Bottorff to address issues related to the monetary value of VCDs, and Dr. Bottorff has testified that he does not plan to discuss monetary value." (Def Br. at 11). Defendants should not be allowed to backdoor a no-change in monetary value opinion under the guise of Dr. Bottorff's irrelevant, unreliable bioequivalence opinion.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiff's opening memorandum, Dr. Bottorff's bioequivalence and monetary value opinions should be precluded.

Respectfully,

ON BEHALF OF PLAINTIFFS

By: /s/ C. Brett Vaughn

C. Brett Vaughn, RN, BSN, JD
NIGH GOLDENBERG RASO & VAUGHN PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927
Email: bvaughn@nighgoldenberg.com

Dated: April 25, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system. In addition, I certify that unredacted versions of the foregoing will be served contemporaneously upon liaison counsel for Defendants as well as the Court.

*/s/ C. Brett Vaughn*
C. Brett Vaughn
