**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| | **CIVIL ACTION NUMBER:** |
| IN RE:  VALSARTAN PRODUCTS LIABILITY LITIGATION | **19-md-02875** |
| | **CASE MANAGEMENT CONFERENCE** |

        Mitchell H. Cohen Building & U.S. Courthouse
        4th & Cooper Streets
        Camden, New Jersey  08101
        April 26, 2023
        Commencing at 1:12 p.m.

**B E F O R E:**          **THE HONORABLE ROBERT B. KUGLER**
                          **UNITED STATES DISTRICT JUDGE**

**A P P E A R A N C E S:**


        MAZIE SLATER KATZ & FREEMAN, LLC
        BY:  ADAM M. SLATER, ESQUIRE
        103 Eisenhower Parkway
        Roseland, New Jersey  07068
        For the Plaintiffs


        HONIK LLC
        BY:  RUBEN HONIK, ESQUIRE
        1515 Market Street, Suite 1100
        Philadelphia, Pennsylvania  191032
        For the Plaintiffs




        Ann Marie Mitchell, Official Court Reporter
              AnnMarie@AMreporting.com
                  (856) 906-8171

  Proceedings recorded by mechanical stenography; transcript
        produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3        **KANNER & WHITELEY, LLC**
         **BY:  CONLEE S. WHITELEY, ESQUIRE**
         **BY:  DAVID J. STANOCH, ESQUIRE**
4        **701 Camp Street**
         **New Orleans, Louisiana  70130**
5        **For the Plaintiffs**

6

7        LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY PROCTOR, P.A.
         BY:  DANIEL A. NIGH, ESQUIRE
         316 S. Baylen, Suite 600
8        Pensacola, Florida 32502
         For the Plaintiffs

9

10       GREENBERG TRAURIG LLP
         BY:  STEVEN M. HARKINS, ESQUIRE
11       3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia  30305

12
         -and -
13
         BY:  GREGORY E. OSTFELD,  ESQUIRE
14       77 West Wacker Drive, Suite 3100
         Chicago, Illinois 60601
15       For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,
16       and Actavis Pharma, Inc.

17

18       ULMER & BERNE LLP
         BY:  JEFFREY D. GEOPPINGER, ESQUIRE
         600 Vine Street, Suite 2800
19       Cincinnati, Ohio 445202
         For the Wholesaler Defendants and AmerisourceBergen

20

21       BARNES & THORNBURG, LLP
         BY:  KARA KAPKE, ESQUIRE
22       11 S. Meridian Street
         Indianapolis, Indiana 46204
23       For the Retailer Defendants and CVS Pharmacy, Inc., and
         Rite Aid Corporation

24

25

*United States District Court*

1   **A P P E A R A N C E S (Continued):**

2

3       HUNCH BLACKWELL LLP
        BY:  ABRAHAM JAMES SPUNG, ESQUIRE
4       1801 Wewatta Street
        Suite 1000
5       Denver, Colorado 80202
        For the Defendants Cigna Corporation, Express Scripts
6       Holding Company, and Express Scripts, Inc.

7   **ALSO PRESENT:**

8

9       THOMAS I. VANASKIE (RET.)
        Special Master

10      LORETTA SMITH, ESQUIRE
        Judicial Law Clerk to The Honorable Robert B. Kugler
11
        Larry MacStravic, Courtroom Deputy
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held in open court before The Honorable
 2    ROBERT B. KUGLER at 1:12 p.m.)
 3              THE COURT:  Good afternoon.  Thank you.  Have a seat.
 4              Thanks for coming back to Camden.  Camden in the
 5    spring is lovely, isn't it?
 6              So we have some things to deal with today.
 7              Let's do the simple things first, the orders to show
 8    cause.
 9              So there's four pending, but according to the
10    letters, there's really only one that needs to be determined,
11    Lalonde?
12              MR. HARKINS:  Your Honor, we've actually resolved the
13    issues in that, so that order to show cause can be withdrawn
14    as well.
15              THE COURT:  So all four of the orders to show cause
16    will be dismissed at this point.
17              So now we have some you want to move to the orders to
18    show cause.
19              You have five.  Any updates on those?
20              MR. HARKINS:  Two updates.  Number 2, Estate of
21    Arlene Cohen, and Number 5, Donald Seifert, have been
22    resolved, and we request the orders to show cause there be
23    withdrawn.
24              So we would request three orders to show cause
25    returnable at the next case management conference:  In case
```

1    number 1, Deborah Bixler; 3, Diane Hardwick; and 4, the Estate

2    of Steven Jiles.

3          THE COURT:  Anybody here on the Deborah Bixler matter

4    want to be heard?

5          (No response.)

6          THE COURT:  Nope.

7          Diane Hardwick matter, anybody want to be heard on

8    that?

9          (No response.)

10          THE COURT:  Or the estate of Steven Jiles, J-I-L-E-S,

11    anybody want to be heard on that?

12          (No response.)

13          THE COURT:  So we'll list those all returnable at the

14    next conference.

15          Then you have 16 you want to relist?

16          MR. HARKINS:  That's correct, Your Honor.  No updates

17    on those.  We simply ask you to relist them for the next case

18    management conference agenda.

19          THE COURT:  Jace, J-A-C-E, Reyes, anybody?

20          (No response.)

21          THE COURT:  David Sheehan; Ricky Young; Jacquelyn

22    Smason, S-M-A-S-O-N; Mina Cole, C-O-L-E; Rafael Feria,

23    F-E-R-I-A; Carol Pottorff, P-O-T-T-O-R-F-F; Estate of Joseph

24    Kreseski, K-R-E-S-E-S-K-I; Charlene Cooney; Phillip Morgan;

25    Thomas Fogarty; Robert Janecek; George Cook; Byron Wrigley;

 1   Terrence Byers; Richards Parks.

 2           All right.  They will all be relisted next time.

 3   Thank you.

 4           MR. HARKINS:  Thank you, Your Honor.

 5           THE COURT:  All right.  I propose now to go through

 6   the -- just point by point in the letter of April 24th.

 7           The letter from plaintiffs' counsel indicated that

 8   you were hoping to meet with them before this conference, so

 9   we'll find out what's going on.

10           Manufacturer defendants, who's going to speak for

11   them?

12           MR. OSTFELD:  Greg Ostfeld, Your Honor.  I'll speak

13   for the manufacturer defendants.

14           THE COURT:  I don't have any problem with moving

15   everything a week.  That's not a big deal.  So we can delay

16   that, because of the scheduling conflicts.  Okay?

17           MR. OSTFELD:  All right.  Thank you, Your Honor.

18           THE COURT:  Anything else you need?

19           MR. OSTFELD:  I think we understand Your Honor's case

20   management order, and with that one caveat, I think we're

21   ready to go forward.

22           THE COURT:  Thank you.

23           Pharmacy defendants in this matter.  There's some

24   question of whether or not the plaintiffs' requests are

25   focused enough.

1           Did you talk about this with the plaintiffs before

2   today?

3           MS. KAPKE:  Yes, we did.  I'm Kara Kapke for the

4   pharmacy defendants.

5           We had a very productive meet and confer yesterday,

6   and I think we can get there.  We're not there yet, but I

7   think we can get there.

8           We're making really good progress in understanding

9   the scope of their requests, the format we may be able to

10  produce them in.

11          But we explained this to them, and I'd like the Court

12  to understand that this data is incredibly complex and very

13  difficult to produce just logistically.  Pricing and profit

14  data may just not be available at the granular level that

15  plaintiffs seek, so we may have to do several iterative runs.

16  The databases have to be queried in very unique ways, and a

17  lot of times the people that we normally talk to don't have

18  access to the pricing data because it's so confidential.

19          So there are really significant confidentiality

20  concerns here.  And I think our meet and confer yesterday with

21  plaintiffs was very productive, and I think we can get there.

22          We would like a written instrument by which we can

23  respond to and explain the productions.  Mr. Stanoch needed to

24  confer with the larger group of plaintiffs' counsel.  But I

25  certainly hope we can get to an agreement on that necessary

1  document.

2        So with Your Honor's indulgence, what we would ask

3  the Court to allow is the parties to continue that meet and

4  confer process and provide proposed orders and/or a set of

5  finalized discovery requests by the next status conference in

6  lieu of complying with Friday's order.

7        If there is a discrete issue on which we have a

8  disagreement, we'd like the opportunity to raise that at the

9  status conference, but that would be something very narrow,

10 very discrete, not the prior objection that we made that

11 general discovery was closed.

12       Our clients, of course, want to stand on their

13 objections, but at the same we understand the Court wants to

14 push forward.  And we're ready and willing to do that.  We

15 just need a little bit more time to gather and compile this

16 data, and we would really like to meet and confer to get that

17 written instrument from plaintiff.

18       So what we're asking the Court to do is to allow us

19 to do that meet and confer and have more time for production,

20 have a written discovery request with more specificity, and

21 then have that opportunity to raise possible discrete issues

22 to the Court's attention, if necessary, with the report to the

23 Court by the next status conference.

24       THE COURT:  Well, of course you can raise anything

25 with the Court.  I mean, that's obvious.

```
1              Anybody want to respond or talk about this?

2              MR. STANOCH:  Yes, Your Honor.  David Stanoch for the

3      plaintiffs.

4              I agree with Ms. Kapke that we had a productive meet

5      and confer yesterday, and I think we would be amenable to some

6      additional time for the parties to confer about things; but

7      when I hear things about a formal written instrument and time

8      to respond to a formal instrument, frankly, Judge, that sounds

9      a lot like document requests, which we're going to get

10     objections and partial responses to, which will really drag

11     the matter out.  We thought our letter to Your Honor about the

12     very discrete things we need and why, it was very clear.  We

13     thought Your Honor's order of Friday was very clear.

14             If we informally have to put into a letter or email

15     again what we think it is, if that helps them with their

16     clients, we're happy to do that.  But we just want to make

17     sure that this process does not get dragged out and ultimately

18     we end up before Your Honor arguing the things about

19     overbreadth and burden when I think it sounds like from both

20     sides and Your Honor's intentions is that we should really be

21     getting beyond that at this point and focusing on the data

22     itself and formatting issues of the data and the timing of the

23     data.

24             THE COURT:  I'm encouraged that you had a productive

25     meeting, but I'm also concerned that we need to move this
```

United States District Court

1    thing along.  I don't want to drag this thing out and then I

2    don't want to have to deal with a bunch of objections at the

3    time.

4          But what I'm going to suggest you do is Judge

5    Vanaskie will be available in the next couple of weeks, and I

6    want you to keep working and report back to him within 14

7    days.

8          And I hope that report will indicate that you don't

9    need a whole lot more time to get that resolved.

10          MR. STANOCH:  I think that's acceptable to

11    plaintiffs, Your Honor.

12          THE COURT:  Okay.

13          MS. KAPKE:  Thank you, Your Honor, we appreciate

14    that.

15          THE COURT:  Thank you.

16          Discovery from the pharmacy defendants concerning the

17    amounts TPPs paid for VCDs.

18          Was there any meet and confer about this issue?

19          MS. KAPKE:  Yes, Your Honor.  We met and conferred

20    about everything in the letter that we stated.

21          So I think Your Honor's order giving us 14 days to

22    meet and confer would apply to -- if you're so willing, to

23    every issue in our letter.

24          THE COURT:  That's fine.  Report back to Judge

25    Vanaskie about that.

*United States District Court*

```
 1            MS. KAPKE:  Thank you.

 2            THE COURT:  Retailers' costs and profits for VCDs.

 3            MS. KAPKE:  Same, Your Honor.

 4            THE COURT:  Same, okay.

 5            Production of previously redacted retailer

 6   identifiers of Con, C-O-N, Eco, E-C-O, Loss members?

 7            MS. KAPKE:  Same, Your Honor.  We met and conferred

 8   on that issue.

 9            THE COURT:  Okay.  So that leaves us now with

10   wholesaler defendants.

11            How are you doing?

12            MR. GEOPPINGER:  I'm well.  How are you, Your Honor?

13            Jeff Geoppinger on behalf of AmerisourceBergen and

14   the wholesalers.

15            Your Honor, if I may, we'd like to talk about CME 32,

16   specifically Section 7.1.1.

17            The Court has ordered the production of profits data

18   for VCDs.  Your Honor, we're asking that the Court modify that

19   order to remove the requirement for profits data and the

20   requirement it be produced by May 30th.

21            Your Honor, this issue was addressed with Judge

22   Schneider back in 2020.  We submitted affidavits, a good deal

23   of briefing, and Judge Schneider tabled the issue.  The

24   requests were actually for net price, and they were not

25   served.
```

```
 1          The issue, Judge, besides the fact that Judge
 2   Schneider determined at that time there was no authority for
 3   these requests, the crux of the issue, Your Honor, is really
 4   this:  Wholesalers don't keep, you know, profits by VCDs.
 5   That is not a piece of data that they have that can be
 6   produced.  And we explained that in detail in the declarations
 7   we filed that Judge Schneider reviewed when we had this
 8   hearing back in July 2020.
 9          And as I noted, he tabled the issue and said, you
10   know, bring it up after the motions to dismiss.  And it had
11   not been brought up until, candidly, last week.
12          So, Your Honor, as I said, we don't have the
13   information.  So under Rule 34, just practically speaking,
14   there's nothing for us to produce.
15          Additionally, if we were to try to tease this
16   information out, the profits that are associated with
17   specifically VCDs, which I said we don't keep, that would be,
18   as we described in the declarations, quite frankly a herculean
19   task to try to get that information.  And there's no
20   assurances it can actually be accomplished.
21          Additionally, Your Honor, beyond the fact that we
22   actually don't have the information to produce, there's some
23   other issues with respect to profits data on VCDs.
24          The requests that the plaintiffs originally served as
25   I mentioned back in 2020 were for net price, and they were
```

1  kind of overbroad, and they're generic.  Right?  They're not

2  tied to anything in terms of transactions.  For instance, let

3  me give you an example.

4       The plaintiffs have transactional data for TPPs.

5  That transactional data, in taking a look at it -- and they

6  can correct me if I'm wrong -- but it doesn't tell the

7  wholesalers which transactions they were involved in.  So ABC

8  doesn't know which transaction, McKesson doesn't know which

9  transaction, Cardinal doesn't know which transaction it was

10  involved in.  We don't know which transactions involved other

11  wholesalers who aren't defendants.  We don't know which

12  transactions didn't involve wholesalers at all.

13       So if the parties were -- if the wholesalers were

14  even to attempt to try to come up with a way, if it could be

15  done, to tease out profit data, we would need that information

16  on the front end, right, to figure out which transactions who

17  was involved in, to attempt to find what would candidly be an

18  expert, an expert exercise, to figure out what profits went

19  with those transactions.

20       And that's information we don't have.  And we would

21  propose that that information would need to be provided on the

22  front end before we could even attempt to try to figure out if

23  we could get that profits data.

24       Additionally, Your Honor, the plaintiffs asked last

25  month for and the order we understand requires production of

1  profits data, you know, for eight years.

2           And a lot of that profits data would be associated

3  with states where disgorgement is not a remedy for the only

4  claim they have here against us, which is unjust enrichment.

5  So that profits data is irrelevant.

6           Finally, Your Honor, there are confidentiality

7  issues, significant confidentiality issues and proprietary

8  issues with that data, as you can imagine, between the

9  wholesalers and generally speaking.

10          So to the extent we would be producing eight years

11  worth of profits data, that's not necessarily tethered to any

12  specific plaintiff, specific case, specific transactions, we

13  would be exposing a lot of confidential information that may

14  be of no relevance and of no use to the plaintiffs, and we

15  would ask that the Court rein that in to some degree.  To the

16  extent we could do it, we would want it tied to the case, the

17  plaintiff, and the transactions at issue.

18          So, Your Honor, the question is, where do we go from

19  here.

20          We would suggest that the Court let us pick up

21  basically where we left off in 2020, which is for us to meet

22  and confer about the requests that were not served, that Judge

23  Schneider tabled, to talk about what net price means or

24  whatever terminology that the plaintiffs want to use in those

25  requests; figure out what they're looking for; figure out what

United States District Court

1   the wholesalers can do, which, as I mentioned, is going to end

2   up being some type of expert exercise; and then come back to

3   the Court with an agreement if possible.  And if we have any

4   disagreements, we could take those up with Your Honor or with

5   Judge Vanaskie.

6           THE COURT:  Who is going to talk for the plaintiffs?

7           MR. STANOCH:  David Stanoch again, Your Honor.

8           THE COURT:  What do you want them to do?  What are

9   you looking for?

10          MR. STANOCH:  Your Honor, quite simply, we're looking

11  for the profits data for our unjust enrichment claims, which

12  Your Honor certified.

13          To oversimplify, revenue minus costs, profits.

14  Disgorge ill-gotten gains of those profits.  That's it.

15          They argued vehemently and vigorously at class

16  certification that we can't properly calculate that on a

17  classwide basis because we didn't have their cost data or

18  their profit data.  We only had some of their sales data.

19  Right?  That's because, as we laid forth thoroughly in our

20  briefing at class cert, which I'm sure Your Honor remembers,

21  Magistrate Judge Schneider deferred that discovery and said,

22  we'll do that at another time, we'll get to it.

23          Now is the time to get to it.

24          They say you don't have the costs so you can't

25  calculate profits.  We're saying, okay, give us your cost

1    data.  They're saying, we don't have cost data.  We have no

2    idea what the profits are in these drugs.

3          Well, there's a couple things.  Number one, it may be

4    appropriate for us to take 30(b)(6) discovery of their

5    accountants and financial department.  While I was sitting in

6    the coffee shop, looking at LinkedIn, I see job after job

7    after job for these three wholesalers advertising people who

8    do profitability margins on generic drugs.  So we're a little

9    skeptical, number one.

10          Number two, as Special Master Vanaskie ruled in

11    dealing with the TPP's production of supplemental data just

12    last fall, the fact that the data are aggregated and not

13    produced on a per-product basis does not defeat the relevance

14    of such data.

15          If they say we can't tell you the profit margin on a

16    valsartan pill or drug, okay, if we accept that, you must have

17    some proxy or roll-up by product line or formulary or

18    something else that the biggest three Fortune 50 pharmacy

19    companies in the world would use to look at the profitability

20    margins on their products, in which case they can give us the

21    aggregated or proxy data, and we'll do the work, as we've been

22    doing for years in this case, to come up with what we think is

23    appropriate.

24          So we think that information should be produced in

25    any form that it exists.  We'd prefer not to go on the line of

30(b)(6) testimony, but if they insist they have no idea what
their costs are aside from that being an accounting issue to
me, we think the answer here is what Special Master Vanaskie
did with the TPPs, what's the next best thing, aggregated
data, proxy data, whatever they use in the ordinary course of
business.  There must be something, Judge.

      THE COURT:  You have to have some kind of data.

      MR. GEOPPINGER:  We do.  We do.  We have --

      THE COURT:  I mean, you can't run a business without
that kind of data.

      MR. GEOPPINGER:  We have price paid and we have
invoice prices.  That's not profit data.  That data is
responsive arguably to 7.1.2, 7.1.3.

      And we can -- we expect we could roll that out by May
30th, and we will let the Court know if we had any issue with
getting that done by that day.

      But that is not profits data.  And as Mr. Stanoch
acknowledged, they're looking for a proxy for that.  And that
is what we are proposing, is what will be an expert exercise,
is to come up with some kind of proxy and to have the parties
discuss after, I guess -- after they have our, you know, costs
paid and our invoice data to come up with some -- I guess
based on that information, if that's where they want to start,
come up with some way to discuss what can be done to attempt
to come up with a proxy for, you know, this idea that we just

1  push a button and our profits data for VCDs comes out; because

2  it doesn't, because we don't keep it by product line.

3       THE COURT:  Well, they said they'll do the work.  And

4  you're right, it's going to be experts.

5       MR. GEOPPINGER:  So it will probably be both of us

6  doing the work, yes.

7       THE COURT:  Okay.  You know, I think they're entitled

8  to all that data.  I understand your representation you don't

9  have profit data, you know, per line of drugs.  Fine.  But

10  you've got to give them all the other stuff and let them do

11  the work.  I mean, you've got to tell them what you have so

12  they can decide what they want, what kind of data you keep

13  regarding costs, sales prices, all that kind of stuff.

14       MR. GEOPPINGER:  Right.  We have -- we have price

15  paid, invoice price.

16       THE COURT:  Okay.

17       MR. GEOPPINGER:  That can be provided.  And I would

18  suggest that we do that.  And then if the Court is agreeable,

19  hold in abeyance, remove, however the Court would like to

20  handle it, the requirement that we produce profits data by May

21  30th, and we engage in the meet and confer, and then

22  basically, as I said, pick up where we left off on that issue.

23       THE COURT:  You can't produce something you don't

24  have, but you have to convince them that you don't keep it.  I

25  don't know how -- I mean, I don't know how they propose to go

1    about finding out whether that's true or not, but they have a

2    right to know that.

3         So I think what you need to do is talk to each other,

4    hone in what they say they have and how it meets your

5    requirements, and report back to Judge Vanaskie in 14 days on

6    where you are and what's left to be done.

7         And, you know, we'll get you whatever data we can get

8    that exists, and we'll go from there.

9         MR. STANOCH:  Very good, Your Honor.  If they're

10   forthcoming about what next best data they have in these

11   regards, then I'm optimistic that we can work towards

12   something.

13        THE COURT:  Well, I'm hoping to avoid a 30(b)(6) on

14   those issues.  You know, I've had some success avoiding

15   30(b)(6)s by just getting the people together in a room,

16   talking it out.  I mean the people who know what the data is

17   and talking out, so both sides can figure out informally, no

18   record being made, of what there is.  And hopefully there's a

19   level of trust between both sides that you can accept what

20   their people say and they can accept what it is you say you

21   need and what you think they have.  Okay?

22        MR. STANOCH:  Absolutely.  Yes, Judge.

23        THE COURT:  Maybe we'll try that, just a suggestion.

24        So we'll go from there.

25        MR. GEOPPINGER:  Sounds good, Your Honor.

*United States District Court*

```
 1              I have one other issue I'd like to address, if I may.
 2         THE COURT:  Sure.
 3         MR. GEOPPINGER:  And that is the wholesaler
 4    defendants' request for discovery from the plaintiffs.  And
 5    I've already alluded to some of it.
 6              What -- you know, we believe the CMO clearly opens
 7    discovery with respect to the unjust enrichment claim that's
 8    been certified.  That's essentially what it says.
 9              And we think we need some discovery from the
10    plaintiffs on that -- on that issue.  Specifically what we are
11    looking for is the ability to serve some requests for
12    production, potentially 30(b)(6) topics on the issues we've
13    identified and some proposed discovery we've provided to them,
14    which, of course consistent with how we've handled this, we
15    would, you know, negotiate and I would assume ultimately
16    submit to Special Master Vanaskie for -- Judge Vanaskie for
17    approval.
18              In terms of exactly what we're looking for, I
19    mentioned the transactional data.  That's a big one.  We're
20    looking for transactional data from the TPPs that identifies
21    which wholesaler was involved in which transaction.
22              We are also looking for information about the value
23    of the VCDs to the TPP plaintiffs.  And a big piece of that
24    information is their profits.
25              These companies ostensibly profited by filling -- by
```

*United States District Court*

1  reimbursing for these prescriptions.  So the wholesaler

2  defendants are interested in taking discovery, as they are of

3  our profits, of taking discovery of the TPP defendant --

4  plaintiffs' profits.

5          THE COURT:  What does their profits have to do with

6  the unjust enrichment claim?

7          MR. GEOPPINGER:  Well, Your Honor, the unjust

8  enrichment claim is based upon their theory that the VCDs that

9  they reimbursed for were worthless, and them making a profit

10  on doing so would tend to dispute that.

11          Additionally, there's an unclean hands defense.

12          THE COURT:  I'm not sure how that -- I'm not

13  following you.

14          How does their profit dispute what you made on this?

15          MR. GEOPPINGER:  It doesn't dispute what we made,

16  Your Honor, but their profit tends to disprove that they

17  were -- that these VCDs were worthless to the TPPs.

18          THE COURT:  How does it disprove that the pills were

19  worthless?  I don't get it.

20          MR. GEOPPINGER:  The TPPs made profit by reimbursing

21  for them.

22          THE COURT:  Okay.

23          MR. GEOPPINGER:  So if they're asking for our -- to

24  disgorge our profits that we ostensibly garnered from

25  distributing them --

1          THE COURT:  Right.

2          MR. GEOPPINGER:  -- we would like to take discovery

3   of what their profits were --

4          THE COURT:  But I don't understand what that has to

5   do with whether or not you need to disgorge the profits you

6   made.  Just because they made profit -- I'm sure they did.  So

7   what?

8          MR. GEOPPINGER:  It would be -- I would contend they

9   would not be able to prove the elements of their unjust

10  enrichment claim if they made a profit off of the

11  reimbursement of these drugs such that they would then be able

12  to require us to disgorge our profits.

13         THE COURT:  How does their profit become a material

14  element of what they need to prove for unjust enrichment?

15         MR. GEOPPINGER:  They have to prove, Your Honor,

16  although the elements are different across the different

17  states, but generally speaking, Your Honor, they would have to

18  prove that it would be unjust for us to keep our profit in a

19  situation where that would be -- it would be unfair for us to

20  keep our profit.  And I would contend that it would not be

21  unfair for us to keep our profit or it's a defense to us to

22  keep our profit if the plaintiff itself profited from the

23  drugs.

24         THE COURT:  Well, I'm not seeing it.  Maybe -- I

25  guess I'm missing it, but okay.

1        What else?

2        MR. GEOPPINGER:  So those are the two main items,

3   Your Honor.  There's also a number of requests that we've

4   asked for that explore the elements of the unjust enrichment

5   claim, and they're targeted to exactly that.

6        So we would like the Court just to order that we have

7   the ability to also take discovery on the unjust enrichment

8   claim in the form of requests for production, potential

9   30(b)(6) topics.

10       THE COURT:  Have you told the plaintiffs exactly what

11  it is you're looking for?

12       MR. GEOPPINGER:  Your Honor, we served them with a

13  set of the discovery requests that we propose, albeit it was

14  recently, so I'm not trying to jam anybody up here.  But yes,

15  we have given them the proposed discovery requests.

16       THE COURT:  Okay.  What do the plaintiffs say about

17  that?

18       MR. SLATER:  Your Honor, I'm going to speak very

19  briefly.  Adam Slater for the record.

20       We looked at their requests.  I don't know if the

21  Court has had a chance to see it.  These are among the most --

22  and I'm using the word, taking it from the rules, abusive

23  discovery requests I've ever seen.  It's as if somebody was

24  sent into a room and told to come up with literally every

25  single thing you could think of.

1          And if I'm reading these correctly, they have a

2    claim-by-claim request for documents and 30(b)(6).  And if I'm

3    understanding the request, every claim is every single pill

4    that was sold.  I assume they're defining that as a claim.

5    And they want to take discovery on every single pill, 41

6    different categories of information, down to -- and they want

7    to do this in both the document production and the

8    depositions, the medical records of every person who is

9    involved in each claim.  So they're expecting that the TPPs

10   are going to go and find the person who took the pill, get

11   their medical records.

12         I'm just giving those as a couple examples.  They're

13   so massively harassing, these requests, and so far beyond what

14   we're hearing that, frankly, we think the whole thing should

15   be stricken on its face because it's so far beyond what you

16   just heard or what is reasonable in this litigation.

17         And I'll add one thing.  They were at all the

18   depositions, participated with the defense group on all the

19   discovery taken of the TPPs, including when the last request

20   was made for the fill-in discovery.  So we really think that

21   they should be able to live with what's already been done.

22         MR. GEOPPINGER:  Your Honor, I disagree with

23   Mr. Slater's characterization, obviously.  The discovery has

24   gone in this case, it's been to submit your discovery and to

25   negotiate it and discuss it with the special master.  If we

1  have issues on that front, that's certainly a way to work it

2  out.

3          However, very plainly, Your Honor, they have not

4  produced claims data that identifies any wholesaler involved

5  in any transaction, not just a one-pill transaction.  If they

6  reimbursed for 30 pills, 90 pills, 120 pills, whatever the

7  reimbursement was for, there is data associated with each

8  transaction, and none of it identifies any wholesalers.  We

9  need that data to understand whether they have a claim against

10  us, and if they do, what the extent of it is.

11          THE COURT:  You seem anxious to say something.

12          MR. STANOCH:  I'm not, Your Honor.  I'm pleased to

13  say I agreed with Your Honor completely before about how this

14  is at all relevant to the unjust enrichment claims we have

15  that by definition focuses on the defendants' conduct and what

16  they did.  You don't need to lose money to prove you were

17  cheated, Judge.  That's how you do an unjust enrichment claim.

18  It's focused on defense conduct.

19          The history of the discovery, I'm not going to

20  belabor it.  All I'll say is highlights, Judge, to refresh

21  your and Special Master Vanaskie's memories is that we've been

22  doing this for years.  Discovery closed over a year ago.  The

23  TPPs answered a 100-plus-page fact sheet.  They produced all

24  their claims data.

25          Wholesalers, along with other defendants, then

1   served, asked for, and were given permission to serve more

2   document requests and data requests on the TPPs.  They

3   answered those.

4           Then after discovery closed in the fall, there was a

5   third request that went to Special Master Vanaskie.  Again,

6   they were part of that group.  They wanted more data.  They

7   wanted subsidy data, reimbursement data, rebate data, et

8   cetera.  Special Master Vanaskie ordered some of that

9   production.  It's been produced or is almost completely

10  produced.

11          And I understand a lawyer inclination of a tit for

12  dat, oh, if we have to produce our cost data, let's put some

13  burden on them too.  I get that as a lawyer.  But there's no

14  basis in the rules of law to do that now.

15          MR. GEOPPINGER:  I'll point out, Your Honor, if I

16  may, the last round of discovery was in the TPP trial case.

17  We weren't defendants in that, so putting us in that group I

18  think is inaccurate.

19          Your Honor, discovery is -- if discovery were closed,

20  then CMO 32 wouldn't have allowed them to do what they asked

21  for just last month, which is to get 30(b)(6) depositions, do

22  custodial discovery, ask for all this other information, which

23  the Court has allowed.  And we understand that.  We would

24  think it's fair that the defendants would also have the

25  opportunity to take discovery on the same claim, the

```
 1   wholesaler defendants.

 2           THE COURT:  I'm not going to speak for Judge

 3   Vanaskie, but color me skeptical of all this, which I think a

 4   lot of it is a bunch of nonsense.

 5           But you can bring it before him after you've had a

 6   chance to talk.  Maybe they'll agree to some of this stuff;

 7   maybe they won't.  But you can talk for 14 days and bring it

 8   before Judge Vanaskie.  Okay?

 9           MR. GEOPPINGER:  All right, Your Honor.

10           MR. STANOCH:  Thank you, Judge.

11           THE COURT:  Anything else?

12           (No response.)

13           THE COURT:  Okay.  Because of the request for moving

14   the next date -- June 7th I think was the suggestion, is that

15   what you said, the week after?

16           MR. OSTFELD:  Yes, Your Honor.  Well, we specifically

17   requested June 7th to exchange proposals for the damages

18   expert depositions, but that would also align with Your

19   Honor's proposal of a May 31st CMC.  If you want to have the

20   CMC after those two deadlines, then June 7th would be the

21   earliest.  But obviously we're at the Court's convenience as

22   to what date works for the Court.

23           THE COURT:  Does that work for everybody, or mostly

24   everybody?

25           MR. HONIK:  Yes, sir.
```

United States District Court

```
 1              MR. SLATER:  Sure.

 2              THE COURT:  Okay.  We'll move the May meeting to June

 3   7th then in the afternoon, same time.  Okay?  We'll go from

 4   there.

 5              Anything else?

 6              (No response.)

 7              THE COURT:  Hearing nothing, we're adjourned.  Thank

 8   you.

 9              (Proceedings concluded at 1:43 p.m.)

10                             -   -   -

11              I certify that the foregoing is a correct transcript

12   from the record of proceedings in the above-entitled matter.

13

14   /S/ Ann Marie Mitchell          28th day of April, 2023

15   Court Reporter/Transcriber      Date

16

17

18

19

20

21

22

23

24

25
```

*United States District Court*

## /

/S [1] - 28:14

## 0

07068 [1] - 1:14
08101 [1] - 1:8

## 1

1 [1] - 5:1
100-plus-page [1] - 25:23
1000 [1] - 3:5
103 [1] - 1:14
11 [1] - 2:23
1100 [1] - 1:17
120 [1] - 25:6
14 [4] - 10:6, 10:21, 19:5, 27:7
1515 [1] - 1:17
16 [1] - 5:15
1801 [1] - 3:4
19-md-02875 [1] - 1:4
191032 [1] - 1:18
1:12 [2] - 1:9, 4:2
1:43 [1] - 28:9

## 2

2 [1] - 4:20
2020 [4] - 11:22, 12:8, 12:25, 14:21
2023 [2] - 1:8, 28:14
24th [1] - 6:6
2500 [1] - 2:12
26 [1] - 1:8
2800 [1] - 2:19
28th [1] - 28:14

## 3

3 [1] - 5:1
30 [1] - 25:6
30(b)(6 [6] - 16:4, 17:1, 19:13, 20:12, 23:9, 26:21
30(b)(6) [1] - 24:2
30(b)(6)s [1] - 19:15
30305 [1] - 2:12
30th [3] - 11:20, 17:15, 18:21
3100 [1] - 2:15
316 [1] - 2:8
31st [1] - 27:19
32 [2] - 11:15, 26:20
32502 [1] - 2:9
3333 [1] - 2:12
34 [1] - 12:13

## 4

4 [1] - 5:1
41 [1] - 24:5
445202 [1] - 2:20
46204 [1] - 2:23
4th [1] - 1:7

## 5

5 [1] - 4:21
50 [1] - 16:18

## 6

600 [2] - 2:8, 2:19
60601 [1] - 2:15

## 7

7.1.1 [1] - 11:16
7.1.2 [1] - 17:13
7.1.3 [1] - 17:13
701 [1] - 2:5
70130 [1] - 2:5
77 [1] - 2:15
7th [4] - 27:14, 27:17, 27:20, 28:3

## 8

80202 [1] - 3:5
856 [1] - 1:23

## 9

90 [1] - 25:6
906-8171 [1] - 1:23

## A

ABC [1] - 13:7
abeyance [1] - 18:19
ability [2] - 20:11, 23:7
able [4] - 7:9, 22:9, 22:11, 24:21
above-entitled [1] - 28:12
ABRAHAM [1] - 3:4
absolutely [1] - 19:22
abusive [1] - 23:22
accept [3] - 16:16, 19:19, 19:20
acceptable [1] - 10:10
access [1] - 7:18
accomplished [1] - 12:20
according [1] - 4:9
accountants [1] - 16:5
accounting [1] - 17:2
acknowledged [1] - 17:18
Actavis [2] - 2:16,

2:17
ACTION [1] - 1:3
Adam [1] - 23:19
ADAM [1] - 1:13
add [1] - 24:17
additional [1] - 9:6
additionally [4] - 12:15, 12:21, 13:24, 21:11
address [1] - 20:1
addressed [1] - 11:21
adjourned [1] - 28:7
advertising [1] - 16:7
affidavits [1] - 11:22
afternoon [2] - 4:3, 28:3
agenda [1] - 5:18
aggregated [3] - 16:12, 16:21, 17:4
ago [1] - 25:22
agree [2] - 9:4, 27:6
agreeable [1] - 18:18
agreed [1] - 25:13
agreement [2] - 7:25, 15:3
Aid [1] - 2:24
aided [1] - 1:24
albeit [1] - 23:13
align [1] - 27:18
allow [2] - 8:3, 8:18
allowed [2] - 26:20, 26:23
alluded [1] - 20:5
almost [1] - 26:9
ALSO [1] - 3:8
amenable [1] - 9:5
AmerisourceBergen [2] - 2:20, 11:13
amounts [1] - 10:17
Ann [1] - 28:14
ann [1] - 1:22
AnnMarie@ AMreporting.com [1] - 1:22
answer [1] - 17:3
answered [2] - 25:23, 26:3
anxious [1] - 25:11
apply [1] - 10:22
appreciate [1] - 10:13
appropriate [2] - 16:4, 16:23
approval [1] - 20:17
April [3] - 1:8, 6:6, 28:14
arguably [1] - 17:13
argued [1] - 15:15
arguing [1] - 9:18
Arlene [1] - 4:21

aside [1] - 17:2
associated [3] - 12:16, 14:2, 25:7
assume [2] - 20:15, 24:4
assurances [1] - 12:20
Atlanta [1] - 2:12
attempt [4] - 13:14, 13:17, 13:22, 17:24
attention [1] - 8:22
authority [1] - 12:2
available [2] - 7:14, 10:5
avoid [1] - 19:13
avoiding [1] - 19:14

## B

BARNES [1] - 2:22
based [2] - 17:23, 21:8
basis [3] - 15:17, 16:13, 26:14
Baylen [1] - 2:8
become [1] - 22:13
behalf [1] - 11:13
belabor [1] - 25:20
BERNE [1] - 2:18
best [2] - 17:4, 19:10
between [2] - 14:8, 19:19
beyond [4] - 9:21, 12:21, 24:13, 24:15
big [3] - 6:15, 20:19, 20:23
biggest [1] - 16:18
bit [1] - 8:15
Bixler [2] - 5:1, 5:3
BLACKWELL [1] - 3:3
briefing [2] - 11:23, 15:20
briefly [1] - 23:19
bring [3] - 12:10, 27:5, 27:7
brought [1] - 12:11
Building [1] - 1:7
bunch [2] - 10:2, 27:4
burden [2] - 9:19, 26:13
business [2] - 17:6, 17:9
button [1] - 18:1
Byers [1] - 6:1
Byron [1] - 5:25

## C

calculate [2] - 15:16, 15:25
Camden [3] - 1:8, 4:4

Camp [1] - 2:5
candidly [2] - 12:11, 13:17
Cardinal [1] - 13:9
Carol [1] - 5:23
case [10] - 4:25, 5:17, 6:19, 14:12, 14:16, 16:20, 16:22, 24:24, 26:16
CASE [1] - 1:5
categories [1] - 24:6
caveat [1] - 6:20
cert [1] - 15:20
certainly [2] - 7:25, 25:1
certification [1] - 15:16
certified [2] - 15:12, 20:8
certify [1] - 28:11
cetera [1] - 26:8
chance [2] - 23:21, 27:6
characterization [1] - 24:23
Charlene [1] - 5:24
cheated [1] - 25:17
Chicago [1] - 2:15
Cigna [1] - 3:6
Cincinnati [1] - 2:20
CIVIL [1] - 1:3
claim [15] - 14:4, 20:7, 21:6, 21:8, 22:10, 23:5, 23:8, 24:2, 24:3, 24:4, 24:9, 25:9, 25:17, 26:25
claim-by-claim [1] - 24:2
claims [4] - 15:11, 25:4, 25:14, 25:24
class [2] - 15:15, 15:20
classwide [1] - 15:17
clear [2] - 9:12, 9:13
clearly [1] - 20:6
Clerk [1] - 3:11
clients [2] - 8:12, 9:16
closed [4] - 8:11, 25:22, 26:4, 26:19
CMC [2] - 27:19, 27:20
CME [1] - 11:15
CMO [2] - 20:6, 26:20
coffee [1] - 16:6
Cohen [2] - 1:7, 4:21
Cole [1] - 5:22
COLE [1] - 5:22
color [1] - 27:3
Colorado [1] - 3:5
coming [1] - 4:4

**Commencing** [1] - 1:9
**companies** [2] - 16:19, 20:25
**Company** [1] - 3:6
**compile** [1] - 8:15
**completely** [2] - 25:13, 26:9
**complex** [1] - 7:12
**complying** [1] - 8:6
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**Con** [1] - 11:6
**CON** [1] - 11:6
**concerned** [1] - 9:25
**concerning** [1] - 10:16
**concerns** [1] - 7:20
**concluded** [1] - 28:9
**conduct** [2] - 25:15, 25:18
**confer** [12] - 7:5, 7:20, 7:24, 8:4, 8:16, 8:19, 9:5, 9:6, 10:18, 10:22, 14:22, 18:21
**conference** [7] - 4:25, 5:14, 5:18, 6:8, 8:5, 8:9, 8:23
**CONFERENCE** [1] - 1:5
**conferred** [2] - 10:19, 11:7
**confidential** [2] - 7:18, 14:13
**confidentiality** [3] - 7:19, 14:6, 14:7
**conflicts** [1] - 6:16
**CONLEE** [1] - 2:4
**consistent** [1] - 20:14
**contend** [2] - 22:8, 22:20
**continue** [1] - 8:3
**Continued** [2] - 2:2, 3:2
**convenience** [1] - 27:21
**convince** [1] - 18:24
**Cook** [1] - 5:25
**Cooney** [1] - 5:24
**Cooper** [1] - 1:7
**Corporation** [2] - 2:24, 3:6
**correct** [3] - 5:16, 13:6, 28:11
**correctly** [1] - 24:1
**cost** [4] - 15:17, 15:25, 16:1, 26:12
**costs** [6] - 11:2, 15:13, 15:24, 17:2, 17:21, 18:13
**counsel** [2] - 6:7, 7:24

**couple** [3] - 10:5, 16:3, 24:12
**course** [4] - 8:12, 8:24, 17:5, 20:14
**Court** [2] - 1:22, 28:15
**COURT** [1] - 1:1
**court** [1] - 4:1
**Court's** [2] - 8:22, 27:21
**Courthouse** [1] - 1:7
**Courtroom** [1] - 3:12
**crux** [1] - 12:3
**custodial** [1] - 26:22
**CVS** [1] - 2:24

## D

**damages** [1] - 27:17
**DANIEL** [1] - 2:8
**dat** [1] - 26:12
**data** [58] - 7:12, 7:14, 7:18, 8:16, 9:21, 9:22, 9:23, 11:17, 11:19, 12:5, 12:23, 13:4, 13:5, 13:15, 13:23, 14:1, 14:2, 14:5, 14:8, 14:11, 15:11, 15:17, 15:18, 16:1, 16:11, 16:12, 16:14, 16:21, 17:5, 17:7, 17:10, 17:12, 17:17, 17:22, 18:1, 18:8, 18:9, 18:12, 18:20, 19:7, 19:10, 19:16, 20:19, 20:20, 25:4, 25:7, 25:9, 25:24, 26:2, 26:6, 26:7, 26:12
**databases** [1] - 7:16
**date** [2] - 27:14, 27:22
**Date** [1] - 28:15
**David** [3] - 5:21, 9:2, 15:7
**DAVID** [1] - 2:4
**days** [4] - 10:7, 10:21, 19:5, 27:7
**deadlines** [1] - 27:20
**deal** [4] - 4:6, 6:15, 10:2, 11:22
**dealing** [1] - 16:11
**Deborah** [2] - 5:1, 5:3
**decide** [1] - 18:12
**declarations** [2] - 12:6, 12:18
**defeat** [1] - 16:13
**defendant** [1] - 21:3
**defendants** [12] - 6:10, 6:13, 6:23, 7:4, 10:16, 11:10, 13:11, 21:2, 25:25, 26:17,

26:24, 27:1
**Defendants** [4] - 2:16, 2:20, 2:24, 3:6
**defendants'** [2] - 20:4, 25:15
**defense** [4] - 21:11, 22:21, 24:18, 25:18
**deferred** [1] - 15:21
**defining** [1] - 24:4
**definition** [1] - 25:15
**degree** [1] - 14:15
**delay** [1] - 6:15
**Denver** [1] - 3:5
**department** [1] - 16:5
**depositions** [4] - 24:8, 24:18, 26:21, 27:18
**Deputy** [1] - 3:12
**described** [1] - 12:18
**detail** [1] - 12:6
**determined** [2] - 4:10, 12:2
**Diane** [2] - 5:1, 5:7
**different** [3] - 22:16, 24:6
**difficult** [1] - 7:13
**disagree** [1] - 24:22
**disagreement** [1] - 8:8
**disagreements** [1] - 15:4
**discovery** [30] - 8:5, 8:11, 8:20, 10:16, 15:21, 16:4, 20:4, 20:7, 20:9, 20:13, 21:2, 21:3, 22:2, 23:7, 23:13, 23:15, 23:23, 24:5, 24:19, 24:20, 24:23, 24:24, 25:19, 25:22, 26:4, 26:16, 26:19, 26:22, 26:25
**discrete** [4] - 8:7, 8:10, 8:21, 9:12
**discuss** [3] - 17:21, 17:24, 24:25
**disgorge** [4] - 15:14, 21:24, 22:25, 22:12
**disgorgement** [1] - 14:3
**dismiss** [1] - 12:10
**dismissed** [1] - 4:16
**disprove** [2] - 21:16, 21:18
**dispute** [3] - 21:10, 21:14, 21:15
**distributing** [1] - 21:25
**DISTRICT** [3] - 1:1, 1:1, 1:10
**document** [4] - 8:1, 9:9, 24:7, 26:2

**documents** [1] - 24:2
**Donald** [1] - 4:21
**done** [5] - 13:15, 17:16, 17:24, 19:6, 24:21
**down** [1] - 24:6
**drag** [2] - 9:10, 10:1
**dragged** [1] - 9:17
**Drive** [1] - 2:15
**drug** [1] - 16:16
**drugs** [5] - 16:2, 16:8, 18:9, 22:11, 22:23

## E

**earliest** [1] - 27:21
**Eco** [1] - 11:6
**ECO** [1] - 11:6
**eight** [2] - 14:1, 14:10
**Eisenhower** [1] - 1:14
**element** [1] - 22:14
**elements** [3] - 22:9, 22:16, 23:4
**email** [1] - 9:14
**encouraged** [1] - 9:24
**end** [4] - 9:18, 13:16, 13:22, 15:1
**engage** [1] - 18:21
**enrichment** [11] - 14:4, 15:11, 20:7, 21:6, 21:8, 22:10, 22:14, 23:4, 23:7, 25:14, 25:17
**entitled** [2] - 18:7, 28:12
**ESQUIRE** [11] - 1:13, 1:17, 2:4, 2:4, 2:8, 2:11, 2:14, 2:19, 2:22, 3:4, 3:11
**essentially** [1] - 20:8
**estate** [1] - 5:10
**Estate** [3] - 4:20, 5:1, 5:23
**et** [1] - 26:7
**exactly** [3] - 20:18, 23:5, 23:10
**example** [1] - 13:3
**examples** [1] - 24:12
**exchange** [1] - 27:17
**exercise** [3] - 13:18, 15:2, 17:19
**exists** [2] - 16:25, 19:8
**expect** [1] - 17:14
**expecting** [1] - 24:9
**expert** [3] - 15:18, 15:2, 17:19, 27:18
**experts** [1] - 18:4
**explain** [1] - 7:23
**explained** [2] - 7:11, 12:6

**explore** [1] - 23:4
**exposing** [1] - 14:13
**Express** [2] - 3:6, 3:6
**extent** [3] - 14:10, 14:16, 25:10

## F

**face** [1] - 24:15
**fact** [4] - 12:1, 12:21, 16:12, 25:23
**fair** [1] - 26:24
**fall** [2] - 16:12, 26:4
**far** [2] - 24:13, 24:15
**Feria** [1] - 5:22
**FERIA** [1] - 5:23
**figure** [6] - 13:16, 13:18, 13:22, 14:25, 19:17
**filed** [1] - 12:7
**fill** [1] - 24:20
**fill-in** [1] - 24:20
**filling** [1] - 20:25
**finalized** [1] - 8:5
**finally** [1] - 14:6
**financial** [1] - 16:5
**fine** [2] - 10:24, 18:9
**first** [1] - 4:7
**five** [1] - 4:19
**Florida** [1] - 2:9
**focused** [2] - 6:25, 25:18
**focuses** [1] - 25:15
**focusing** [1] - 9:21
**Fogarty** [1] - 5:25
**following** [1] - 21:13
**foregoing** [1] - 28:11
**form** [2] - 16:25, 23:8
**formal** [2] - 9:7, 9:8
**format** [1] - 7:9
**formatting** [1] - 9:22
**formulary** [1] - 16:17
**forth** [1] - 15:19
**forthcoming** [1] - 19:10
**Fortune** [1] - 16:18
**forward** [2] - 6:21, 8:14
**four** [2] - 4:9, 4:15
**frankly** [3] - 9:8, 12:18, 24:14
**FREEMAN** [1] - 1:13
**Friday** [1] - 9:13
**Friday's** [1] - 8:6
**front** [3] - 13:16, 13:22, 25:1

## G

**gains** [1] - 15:14

garnered [1] - 21:24
gather [1] - 8:15
general [1] - 8:11
generally [2] - 14:9, 22:17
generic [2] - 13:1, 16:8
Geoppinger [1] - 11:13
GEOPPINGER [21] - 2:19, 11:12, 17:8, 17:11, 18:5, 18:14, 18:17, 19:25, 20:3, 21:7, 21:15, 21:20, 21:23, 22:2, 22:8, 22:15, 23:2, 23:12, 24:22, 26:15, 27:9
George [1] - 5:24
Georgia [1] - 2:12
given [2] - 23:15, 26:1
granular [1] - 7:14
GREENBERG [1] - 2:11
Greg [1] - 6:12
GREGORY [1] - 2:14
group [4] - 7:24, 24:18, 26:6, 26:17
guess [3] - 17:21, 17:22, 22:25

**H**

handle [1] - 18:20
handled [1] - 20:14
hands [1] - 21:11
happy [1] - 9:16
harassing [1] - 24:13
Hardwick [2] - 5:1, 5:7
HARKINS [5] - 2:11, 4:12, 4:20, 5:16, 6:4
hear [1] - 9:7
heard [4] - 5:4, 5:7, 5:11, 24:16
hearing [3] - 12:8, 24:14, 28:7
held [1] - 4:1
helps [1] - 9:15
herculean [1] - 12:18
highlights [1] - 25:20
history [1] - 25:19
hold [1] - 18:19
Holding [1] - 3:6
hone [1] - 19:4
HONIK [3] - 1:16, 1:17, 27:25
Honor [45] - 4:12, 5:16, 6:4, 6:12, 6:17, 9:2, 9:11, 9:18, 10:11, 10:13, 10:19, 11:3, 11:7, 11:12,

11:15, 11:18, 11:21, 12:3, 12:12, 12:21, 13:24, 14:6, 14:18, 15:4, 15:7, 15:10, 15:12, 15:20, 19:9, 19:25, 21:7, 21:16, 22:15, 22:17, 23:3, 23:12, 23:18, 24:22, 25:3, 25:12, 25:13, 26:15, 26:19, 27:9, 27:16
Honor's [6] - 6:19, 8:2, 9:13, 9:20, 10:21, 27:19
HONORABLE [1] - 1:10
Honorable [2] - 3:11, 4:1
hope [2] - 7:25, 10:8
hopefully [1] - 19:18
hoping [2] - 6:8, 19:13
HUNCH [1] - 3:3

**I**

idea [3] - 16:2, 17:1, 17:25
identified [1] - 20:13
identifiers [1] - 11:6
identifies [3] - 20:20, 25:4, 25:8
ill [1] - 15:14
ill-gotten [1] - 15:14
Illinois [1] - 2:15
imagine [1] - 14:8
inaccurate [1] - 26:18
Inc [4] - 2:16, 2:17, 2:24, 3:6
inclination [1] - 26:11
including [1] - 24:19
incredibly [1] - 7:12
Indiana [1] - 2:23
Indianapolis [1] - 2:23
indicate [1] - 10:8
indicated [1] - 6:7
indulgence [1] - 8:2
Industries [1] - 2:16
informally [2] - 9:14, 19:17
information [14] - 12:13, 12:16, 12:19, 12:22, 13:15, 13:20, 13:21, 14:13, 16:24, 17:23, 20:22, 20:24, 24:6, 26:22
insist [1] - 17:1
instance [1] - 13:2
instrument [4] - 7:22, 8:17, 9:7, 9:8
intentions [1] - 9:20

interested [1] - 21:2
invoice [3] - 17:12, 17:22, 18:15
involve [1] - 13:12
involved [7] - 13:7, 13:10, 13:17, 20:21, 24:9, 25:4
irrelevant [1] - 5:24
issue [15] - 8:7, 10:18, 10:23, 11:8, 11:21, 11:23, 12:1, 12:3, 12:9, 14:17, 17:2, 17:15, 18:22, 20:1, 20:10
issues [10] - 4:13, 8:21, 9:22, 12:23, 14:7, 14:8, 19:14, 20:12, 25:1
items [1] - 23:2
iterative [1] - 7:15
itself [2] - 9:22, 22:22

**J**

Jace [1] - 5:19
JACE [1] - 5:19
Jacquelyn [1] - 5:21
jam [1] - 23:14
JAMES [1] - 3:4
Janecek [1] - 5:25
Jeff [1] - 11:13
JEFFREY [1] - 2:19
JERSEY [1] - 1:1
Jersey [2] - 1:8, 1:14
Jiles [2] - 5:2, 5:10
JILES [1] - 5:10
job [3] - 16:6, 16:7
Joseph [1] - 5:23
Judge [20] - 9:8, 10:4, 10:24, 11:21, 11:23, 12:1, 12:7, 14:22, 15:5, 15:21, 17:6, 19:5, 19:22, 20:16, 25:17, 25:20, 27:2, 27:8, 27:10
JUDGE [1] - 1:10
Judicial [1] - 3:11
July [1] - 4:8
June [4] - 27:14, 27:17, 27:20, 28:2

**K**

KANNER [1] - 2:3
Kapke [2] - 7:3, 9:4
KAPKE [7] - 2:22, 7:3, 10:13, 10:19, 11:1, 11:3, 11:7
Kara [1] - 7:3
KARA [1] - 2:22
KATZ [1] - 1:13

keep [10] - 10:6, 12:4, 12:17, 18:2, 18:12, 18:24, 22:18, 22:20, 22:21, 22:22
kind [6] - 13:1, 17:7, 17:10, 17:20, 18:12, 18:13
Kreseski [1] - 5:24
KRESESKI [1] - 5:24
Kugler [1] - 3:11
KUGLER [2] - 1:10, 4:2

**L**

laid [1] - 15:19
Lalonde [1] - 4:11
larger [1] - 5:24
larry [1] - 3:12
last [6] - 12:11, 13:24, 16:12, 24:19, 26:16, 26:21
law [1] - 26:14
Law [1] - 3:11
lawyer [2] - 26:11, 26:13
leaves [1] - 11:9
left [3] - 14:21, 18:22, 19:6
letter [6] - 6:6, 6:7, 9:11, 9:14, 10:20, 10:23
letters [1] - 4:10
level [2] - 7:14, 19:19
LEVIN [1] - 2:7
LIABILITY [1] - 1:4
lieu [1] - 8:6
line [4] - 16:17, 16:25, 18:2, 18:9
LinkedIn [1] - 16:6
list [1] - 5:13
literally [1] - 23:24
litigation [1] - 24:16
LITIGATION [1] - 1:4
live [1] - 24:21
LLC [4] - 1:13, 1:16, 2:3, 2:16
LLP [4] - 2:11, 2:18, 2:22, 3:3
logistically [1] - 7:13
look [2] - 13:5, 16:19
looked [1] - 23:20
looking [10] - 14:25, 15:9, 15:10, 16:6, 17:18, 20:11, 20:18, 20:20, 20:22, 23:11
LORETTA [1] - 3:11
lose [1] - 25:16
Loss [1] - 11:6
Louisiana [1] - 2:5

lovely [1] - 4:5
Ltd [1] - 2:16

**M**

MacStravic [1] - 3:12
Magistrate [1] - 15:21
main [1] - 23:2
MANAGEMENT [1] - 1:5
management [3] - 4:25, 5:18, 6:20
manufacturer [2] - 6:10, 6:13
margin [1] - 16:15
margins [2] - 16:8, 16:20
Marie [1] - 1:22, 28:14
Market [1] - 1:17
massively [1] - 24:13
Master [7] - 3:10, 16:10, 17:3, 20:16, 25:21, 26:5, 26:8
master [1] - 24:25
material [2] - 22:13
matter [5] - 5:3, 5:7, 6:23, 9:11, 28:12
MAZIE [1] - 1:13
McKesson [1] - 13:8
mean [5] - 8:25, 17:9, 18:11, 18:25, 19:16
means [1] - 14:23
mechanical [1] - 1:24
medical [2] - 24:8, 24:11
meet [11] - 6:8, 7:5, 7:20, 8:3, 8:16, 8:19, 9:4, 10:18, 10:22, 14:21, 18:21
meeting [2] - 9:25, 28:2
meets [1] - 19:4
members [1] - 11:6
memories [1] - 25:21
mentioned [3] - 12:25, 15:1, 20:19
Meridian [1] - 2:23
met [2] - 10:19, 11:7
Mina [1] - 5:22
minus [1] - 15:13
missing [1] - 22:25
MITCHELL [1] - 2:7
Mitchell [3] - 1:7, 1:22, 28:14
modify [1] - 11:18
money [1] - 25:16
month [2] - 13:25, 26:21
Morgan [1] - 5:24
most [1] - 23:21

**mostly** [1] - 27:23
**motions** [1] - 12:10
**move** [3] - 4:17, 9:25, 28:2
**moving** [2] - 6:14, 27:13
**MR** [39] - 4:12, 4:20, 5:16, 6:4, 6:12, 6:17, 6:19, 9:2, 10:10, 11:12, 15:7, 15:10, 17:8, 17:11, 18:5, 18:14, 18:17, 19:9, 19:22, 19:25, 20:3, 21:7, 21:15, 21:20, 21:23, 22:2, 22:8, 22:15, 23:2, 23:12, 23:18, 24:22, 25:12, 26:15, 27:9, 27:10, 27:16, 27:25, 28:1
**MS** [6] - 7:3, 10:13, 10:19, 11:1, 11:3, 11:7
**must** [2] - 16:16, 17:6

### N

**narrow** [1] - 8:9
**NE** [1] - 2:12
**necessarily** [1] - 14:11
**necessary** [2] - 7:25, 8:22
**need** [14] - 6:18, 8:15, 9:12, 9:25, 10:9, 13:15, 13:21, 19:3, 19:21, 20:9, 22:5, 22:14, 25:9, 25:16
**needed** [1] - 7:23
**needs** [1] - 4:10
**negotiate** [2] - 20:15, 24:25
**net** [3] - 11:24, 12:25, 14:23
**NEW** [1] - 1:1
**New** [3] - 1:8, 1:14, 2:5
**next** [10] - 4:25, 5:14, 5:17, 6:2, 8:5, 8:23, 10:5, 17:4, 19:10, 27:14
**NIGH** [1] - 2:8
**none** [1] - 25:8
**nonsense** [1] - 27:4
**normally** [1] - 7:17
**noted** [1] - 12:9
**nothing** [2] - 12:14, 28:7
**number** [6] - 4:20, 5:1, 16:3, 16:9, 16:10, 23:3
**NUMBER** [1] - 1:3
**Number** [1] - 4:21

### O

**objection** [1] - 8:10
**objections** [3] - 8:13, 9:10, 10:2
**obvious** [1] - 8:25
**obviously** [2] - 24:23, 27:21
**Official** [1] - 1:22
**Ohio** [1] - 2:20
**one** [8] - 4:10, 6:20, 16:3, 16:9, 20:1, 20:19, 24:17, 25:5
**one-pill** [1] - 25:5
**open** [1] - 4:1
**opens** [1] - 20:6
**opportunity** [3] - 8:8, 8:21, 26:25
**optimistic** [1] - 19:11
**order** [8] - 4:13, 6:20, 8:6, 9:13, 10:21, 11:19, 13:25, 23:6
**ordered** [2] - 11:17, 26:8
**orders** [6] - 4:7, 4:15, 4:17, 4:22, 4:24, 8:4
**ordinary** [1] - 17:5
**originally** [1] - 12:24
**Orleans** [1] - 2:5
**ostensibly** [2] - 20:25, 21:24
**OSTFELD** [5] - 2:14, 6:12, 6:17, 6:19, 27:16
**Ostfeld** [1] - 6:12
**overbreadth** [1] - 9:19
**overbroad** [1] - 13:1
**oversimplify** [1] - 15:13

### P

**P.A** [1] - 2:7
**p.m** [3] - 1:9, 4:2, 28:9
**paid** [4] - 10:17, 17:11, 17:22, 18:15
**PAPANTONIO** [1] - 2:7
**Parks** [1] - 6:1
**Parkway** [1] - 1:14
**part** [1] - 26:6
**partial** [1] - 9:10
**participated** [1] - 24:18
**parties** [4] - 8:3, 9:6, 13:13, 17:20
**pending** [1] - 4:9
**Pennsylvania** [1] - 1:18
**Pensacola** [1] - 2:9

**people** [5] - 7:17, 16:7, 19:15, 19:16, 19:20
**per** [2] - 16:13, 18:9
**per-product** [1] - 16:13
**permission** [1] - 26:1
**person** [2] - 24:8, 24:10
**Pharma** [1] - 2:17
**Pharmaceutical** [1] - 2:16
**Pharmaceuticals** [1] - 2:16
**pharmacy** [4] - 6:23, 7:4, 10:16, 16:18
**Pharmacy** [1] - 2:24
**Philadelphia** [1] - 1:18
**Phillip** [1] - 5:24
**pick** [2] - 14:20, 18:22
**piece** [2] - 12:5, 20:23
**Piedmont** [1] - 2:12
**pill** [5] - 16:16, 24:3, 24:5, 24:10, 25:5
**pills** [4] - 21:18, 25:6
**plainly** [1] - 25:3
**plaintiff** [4] - 8:17, 14:12, 14:17, 22:22
**plaintiffs** [16] - 7:1, 7:15, 7:21, 9:3, 10:11, 12:24, 13:4, 13:24, 14:14, 14:24, 15:6, 20:4, 20:10, 20:23, 23:10, 23:16
**Plaintiffs** [4] - 1:15, 1:18, 2:6, 2:9
**plaintiffs'** [4] - 6:7, 6:24, 7:24, 21:4
**pleased** [1] - 25:12
**point** [5] - 4:16, 6:6, 9:21, 26:15
**possible** [2] - 8:21, 15:3
**potential** [1] - 23:8
**potentially** [1] - 20:12
**Pottorff** [1] - 5:23
**POTTORFF** [1] - 5:23
**practically** [1] - 12:13
**prefer** [1] - 16:25
**prescriptions** [1] - 21:1
**PRESENT** [1] - 3:8
**previously** [1] - 11:5
**price** [6] - 11:24, 12:25, 14:23, 17:11, 18:14, 18:15
**prices** [2] - 17:12, 18:13
**pricing** [2] - 7:13, 7:18
**problem** [1] - 6:14

**Proceedings** [2] - 1:24, 28:9
**proceedings** [1] - 28:12
**PROCEEDINGS** [1] - 4:1
**process** [2] - 8:4, 9:17
**PROCTOR** [1] - 2:17
**produce** [7] - 7:10, 7:13, 12:14, 12:22, 18:20, 18:23, 26:12
**produced** [9] - 1:24, 11:20, 12:6, 16:13, 16:24, 25:4, 25:23, 26:9, 26:10
**producing** [1] - 14:10
**product** [3] - 16:13, 16:17, 18:2
**production** [9] - 8:19, 11:5, 11:17, 13:25, 16:11, 20:12, 23:8, 24:7, 26:9
**productions** [1] - 7:23
**productive** [4] - 7:5, 7:21, 9:4, 9:24
**PRODUCTS** [1] - 1:4
**products** [1] - 16:20
**profit** [17] - 7:13, 13:15, 15:18, 16:15, 17:12, 18:9, 21:9, 21:14, 21:16, 21:20, 22:6, 22:10, 22:13, 22:18, 22:20, 22:21, 22:22
**profitability** [2] - 16:8, 16:19
**profited** [2] - 20:25, 22:22
**profits** [28] - 11:2, 11:17, 11:19, 12:4, 12:16, 12:23, 13:18, 13:23, 14:1, 14:2, 14:5, 14:11, 15:11, 15:13, 15:14, 15:25, 16:2, 17:17, 18:1, 18:20, 20:24, 21:3, 21:4, 21:5, 21:24, 22:3, 22:5, 22:12
**progress** [1] - 7:8
**properly** [1] - 15:16
**proposal** [1] - 27:19
**proposals** [1] - 27:17
**propose** [4] - 6:5, 13:21, 18:25, 23:13
**proposed** [3] - 8:4, 20:13, 23:15
**proposing** [1] - 17:19
**proprietary** [1] - 14:7
**prove** [5] - 22:9, 22:14, 22:15, 22:18,

25:16
**provide** [1] - 8:4
**provided** [3] - 13:21, 18:17, 20:13
**proxy** [6] - 16:17, 16:21, 17:5, 17:18, 17:20, 17:25
**push** [2] - 8:14, 18:1
**put** [2] - 9:14, 26:12
**putting** [1] - 26:17

### Q

**queried** [1] - 7:16
**quite** [2] - 12:18, 15:10

### R

**Rafael** [1] - 5:22
**RAFFERTY** [1] - 2:7
**raise** [3] - 8:8, 8:21, 8:24
**RE** [1] - 1:4
**reading** [1] - 24:1
**ready** [2] - 6:21, 8:14
**really** [4] - 4:10, 7:8, 7:19, 8:16, 9:10, 9:20, 12:3, 24:20
**reasonable** [1] - 24:16
**rebate** [1] - 26:7
**recently** [1] - 23:14
**record** [3] - 19:18, 23:19, 28:12
**recorded** [1] - 1:24
**records** [2] - 24:8, 24:11
**redacted** [1] - 11:5
**refresh** [1] - 15:20
**regarding** [1] - 18:13
**regards** [1] - 19:11
**reimbursed** [2] - 21:9, 25:6
**reimbursement** [3] - 22:11, 25:7, 26:7
**reimbursing** [2] - 21:1, 21:20
**rein** [1] - 14:15
**relevance** [2] - 14:14, 16:13
**relevant** [1] - 25:14
**relist** [2] - 5:15, 5:17
**relisted** [1] - 6:2
**remedy** [1] - 14:3
**remembers** [1] - 15:20
**remove** [2] - 11:19, 18:19
**report** [5] - 8:22, 10:6, 10:8, 10:24, 19:5
**Reporter** [1] - 1:22

**Reporter/ Transcriber** [1] - 28:15

**representation** [1] - 18:8

**request** [9] - 4:22, 4:24, 8:20, 20:4, 24:2, 24:3, 24:19, 26:5, 27:13

**requested** [1] - 27:17

**requests** [19] - 6:24, 7:9, 8:5, 9:9, 11:24, 12:3, 12:24, 14:22, 14:25, 20:11, 23:3, 23:8, 23:13, 23:15, 23:20, 23:23, 24:13, 26:2

**require** [1] - 22:12

**requirement** [3] - 11:19, 11:20, 18:20

**requirements** [1] - 19:5

**requires** [1] - 13:25

**resolved** [3] - 4:12, 4:22, 10:9

**respect** [2] - 12:23, 20:7

**respond** [3] - 7:23, 9:1, 9:8

**response** [6] - 5:5, 5:9, 5:12, 5:20, 27:12, 28:6

**responses** [1] - 9:10

**responsive** [1] - 17:13

**RET** [1] - 3:9

**retailer** [1] - 11:5

**Retailer** [1] - 2:24

**retailers'** [1] - 11:2

**returnable** [2] - 4:25, 5:13

**revenue** [1] - 15:13

**reviewed** [1] - 12:7

**Reyes** [1] - 5:19

**Richards** [1] - 6:1

**Ricky** [1] - 5:21

**Rite** [1] - 2:24

**Road** [1] - 2:12

**ROBERT** [2] - 1:10, 4:2

**Robert** [2] - 3:11, 5:25

**roll** [2] - 16:17, 17:14

**roll-up** [1] - 16:17

**room** [2] - 19:15, 23:24

**Roseland** [1] - 1:14

**round** [1] - 26:16

**RUBEN** [1] - 1:17

**Rule** [1] - 12:13

**ruled** [1] - 16:10

**rules** [2] - 23:22,

26:14

**run** [1] - 17:9

**runs** [1] - 7:15

---
## S
---

**sales** [2] - 15:18, 18:13

**scheduling** [1] - 6:16

**Schneider** [6] - 11:22, 11:23, 12:2, 12:7, 14:23, 15:21

**scope** [1] - 7:9

**Scripts** [2] - 3:6, 3:6

**seat** [1] - 4:3

**Section** [1] - 11:16

**see** [2] - 16:6, 23:21

**seeing** [1] - 22:24

**seek** [1] - 7:15

**seem** [1] - 25:11

**Seifert** [1] - 4:21

**sent** [1] - 23:24

**serve** [2] - 20:11, 26:1

**served** [5] - 11:25, 12:24, 14:22, 23:12, 26:1

**set** [2] - 8:4, 23:13

**several** [1] - 7:15

**Sheehan** [1] - 5:21

**sheet** [1] - 25:23

**shop** [1] - 16:6

**show** [6] - 4:7, 4:13, 4:15, 4:18, 4:22, 4:24

**sides** [3] - 9:20, 19:17, 19:19

**significant** [2] - 7:19, 14:7

**simple** [1] - 4:7

**simply** [2] - 5:17, 15:10

**single** [3] - 23:25, 24:3, 24:5

**sitting** [1] - 16:5

**situation** [1] - 22:19

**skeptical** [2] - 16:9, 27:3

**SLATER** [4] - 1:13, 1:13, 23:18, 28:1

**Slater** [1] - 23:19

**Slater's** [1] - 24:23

**Smason** [1] - 5:22

**SMASON** [1] - 5:22

**SMITH** [1] - 3:11

**sold** [1] - 24:4

**sounds** [3] - 9:8, 9:19, 19:25

**speaking** [3] - 12:13, 14:9, 22:17

**special** [1] - 24:25

**Special** [7] - 3:10, 16:10, 17:3, 20:16, 25:21, 26:5, 26:8

**specific** [3] - 14:12

**specifically** [4] - 11:16, 12:17, 20:10, 27:16

**specificity** [1] - 8:20

**spring** [1] - 4:5

**SPUNG** [1] - 3:4

**stand** [1] - 8:12

**Stanoch** [4] - 7:23, 9:2, 15:7, 17:17

**STANOCH** [7] - 2:4, 9:2, 10:10, 15:7, 15:10, 19:9, 19:22, 25:12, 27:10

**start** [1] - 17:23

**STATES** [2] - 1:1, 1:10

**states** [2] - 14:3, 22:17

**status** [3] - 8:5, 8:9, 8:23

**stenography** [1] - 28:2

**Steven** [2] - 5:2, 5:10

**STEVEN** [1] - 2:11

**Street** [5] - 1:17, 2:5, 2:19, 2:23, 3:4

**Streets** [1] - 1:7

**stricken** [1] - 24:15

**stuff** [3] - 18:10, 18:13, 27:6

**submit** [2] - 20:16, 24:24

**submitted** [1] - 11:22

**subsidy** [1] - 26:7

**success** [1] - 19:14

**suggest** [3] - 10:4, 14:20, 18:18

**suggestion** [2] - 19:23, 27:14

**Suite** [6] - 1:17, 2:8, 2:12, 2:15, 2:19, 3:5

**supplemental** [1] - 16:11

---
## T
---

**tabled** [3] - 11:23, 12:9, 14:23

**targeted** [1] - 23:5

**task** [1] - 12:19

**tease** [2] - 12:15, 13:15

**tend** [1] - 21:10

**tends** [1] - 21:16

**terminology** [1] - 14:24

**terms** [2] - 13:2, 20:18

**Terrence** [1] - 6:1

**testimony** [1] - 17:1

**tethered** [1] - 14:11

**Teva** [2] - 2:16, 2:16

**The Court** [66] - 4:3, 4:15, 5:3, 5:6, 5:10, 5:13, 5:19, 5:21, 6:5, 6:14, 6:18, 6:22, 7:11, 8:3, 8:13, 8:18, 8:22, 8:24, 8:25, 9:24, 10:12, 10:15, 10:24, 11:2, 11:4, 11:9, 11:17, 11:18, 14:15, 14:20, 15:3, 15:6, 15:8, 17:7, 17:9, 17:15, 18:3, 18:7, 18:16, 18:18, 18:19, 18:23, 19:13, 19:23, 20:2, 21:5, 21:12, 21:18, 21:22, 22:1, 22:4, 22:13, 22:24, 23:6, 23:10, 23:16, 23:20, 25:11, 26:23, 27:2, 27:11, 27:13, 27:22, 27:23, 28:2, 28:7

**theory** [1] - 21:8

**third** [1] - 26:5

**THOMAS** [2] - 2:7, 3:9

**Thomas** [1] - 5:25

**THORNBURG** [1] - 2:22

**thoroughly** [1] - 15:19

**three** [3] - 4:24, 16:7, 16:18

**tied** [2] - 13:2, 14:16

**timing** [1] - 9:22

**tit** [1] - 26:11

**today** [2] - 4:6, 7:2

**together** [1] - 19:15

**took** [1] - 24:10

**topics** [2] - 20:12, 23:9

**towards** [1] - 19:11

**TPP** [3] - 20:23, 21:3, 26:16

**TPP's** [1] - 16:11

**TPPs** [10] - 10:17, 13:4, 17:4, 20:20, 21:17, 21:20, 24:9, 24:19, 25:23, 26:2

**transaction** [7] - 13:8, 13:9, 20:21, 25:5, 25:8

**transactional** [4] - 13:4, 13:5, 20:19, 20:20

**transactions** [8] - 13:2, 13:7, 13:10, 13:12, 13:16, 13:19, 14:12, 14:17

**transcript** [2] - 1:24,

28:11

**transcription** [1] - 1:24

**TRAURIG** [1] - 2:11

**trial** [1] - 26:16

**true** [1] - 19:1

**trust** [1] - 19:19

**try** [5] - 12:15, 12:19, 13:14, 13:22, 19:23

**trying** [1] - 23:14

**two** [4] - 4:20, 16:10, 23:2, 27:20

**type** [1] - 15:2

---
## U
---

**U.S** [1] - 1:7

**ULMER** [1] - 2:18

**ultimately** [2] - 9:17, 20:15

**unclean** [1] - 21:11

**under** [1] - 12:13

**unfair** [2] - 22:19, 22:21

**unique** [1] - 7:16

**UNITED** [2] - 1:1, 1:10

**unjust** [12] - 14:4, 15:11, 20:7, 21:6, 21:7, 22:9, 22:14, 22:18, 23:4, 23:7, 25:14, 25:17

**up** [16] - 9:18, 12:10, 12:11, 13:14, 14:20, 15:2, 15:4, 16:17, 16:22, 17:20, 17:22, 17:24, 17:25, 18:22, 23:14, 23:24

**updates** [3] - 4:19, 4:20, 5:16

**USA** [1] - 2:16

---
## V
---

**valsartan** [1] - 16:16

**VALSARTAN** [1] - 1:4

**value** [1] - 20:22

**Vanaskie** [12] - 10:5, 10:25, 15:5, 16:10, 17:3, 19:5, 20:16, 26:5, 26:8, 27:3, 27:8

**VANASKIE** [1] - 3:9

**Vanaskie's** [1] - 25:21

**VCDs** [10] - 10:17, 11:2, 11:18, 12:4, 12:17, 12:23, 18:1, 20:23, 21:8, 21:17

**vehemently** [1] - 15:15

**vigorously** [1] - 15:15

**Vine** [1] - 2:19

## W

**Wacker** [1] - 2:15
**wants** [1] - 8:13
**ways** [1] - 7:16
**week** [3] - 6:15, 12:11, 27:15
**weeks** [1] - 10:5
**West** [1] - 2:15
**Wewatta** [1] - 3:4
**WHITELEY** [2] - 2:3, 2:4
**whole** [2] - 10:9, 24:14
**Wholesaler** [1] - 2:20
**wholesaler** [6] - 11:10, 20:3, 20:21, 21:1, 25:4, 27:1
**wholesalers** [11] - 11:14, 12:4, 13:7, 13:11, 13:12, 13:13, 14:9, 15:1, 16:7, 25:8, 25:25
**willing** [2] - 8:14, 10:22
**withdrawn** [2] - 4:13, 4:23
**word** [1] - 23:22
**works** [1] - 27:22
**world** [1] - 16:19
**worth** [1] - 14:11
**worthless** [3] - 21:9, 21:17, 21:19
**Wrigley** [1] - 5:25
**written** [4] - 7:22, 8:17, 8:20, 9:7

## Y

**year** [1] - 25:22
**years** [4] - 14:1, 14:10, 16:22, 25:22
**yesterday** [3] - 7:5, 7:20, 9:5
**Young** [1] - 5:21