

**Jeffrey D. Geoppinger**
*Partner*

DIRECT   513.698.5038
DIRECT FAX   513.698.5039
EMAIL   jgeoppinger@ulmer.com

May 10, 2023

<u>**VIA ECF**</u>
Special Master The Hon. Thomas I. Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

    Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875-RBK-SAK (D.N.J.)

Dear Judge Vanaskie:

Wholesaler Defendants respectfully submit this report as the Court directed on April 26, 2023 regarding various discovery issues related to Plaintiffs' sole certified class claim against Wholesalers—unjust enrichment ("UE"), including (1) Wholesalers' production of certain pricing and profits-related information; (2) Wholesalers' requests for discovery of TPP Plaintiffs; and (3) Plaintiffs' request for "targeted" custodial discovery from Wholesalers. These matters were the subject of CMO 32, and after discussion at the Case Management Conference on April 26, 2023, the parties were ordered to further meet and confer on these issues and then report progress to your honor within 14 days.

### Pricing and Profits-Related Information from Wholesalers

The discussion about discovery related to profits first began more than three years ago and was extensively briefed and argued before Magistrate Judge Schneider, who in 2020 deferred a decision on these issues for a later time. *See, e.g.*, Dkt. 478 (Wholesalers' Letter Briefing on Macro Discovery Issues); Dkt. 510 (transcript of parties' argument and Judge Schneider's ruling from the bench on profits discovery issues); Dkt. 507 (Order deferring discovery on profits discovery issues).

CLEVELAND

COLUMBUS

CINCINNATI

CHICAGO

NEW YORK

WASHINGTON DC

BOCA RATON

ULMER.COM



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 2

With respect to pricing and profits-related discovery, the Court originally ordered Wholesalers to produce the following by May 30, 2023:

> 7.1.1 wholesalers' costs and profits data for VCDs,
> 7.1.2 the prices wholesalers paid for VCDs, and
> 7.1.3 the prices wholesalers sold VCDs downstream.

*See* CMO 32 at 4. As thoroughly explained in briefing and argument to the Court in 2019 and 2020, by letter brief on April 25, 2023 (Dkt. 2349), and at the April 26, 2023 Case Management Conference, Wholesalers in the ordinary course of business neither calculate nor maintain any sort of profit information on VCDs, either on an NDC product or individual transaction basis. As the Court noted, Wholesalers are not required to create such information for this litigation.[1]

With respect to 7.1.2 and 7.1.3 of CMO 32, there is no dispute currently ripe for resolution by the Court. The parties agree that by May 30, 2023, Wholesalers will produce (1) the invoiced amounts for their VCD purchases from the Manufacturer Defendants for the NDCs at issue during the Relevant Period; and (2) the invoiced amounts with respect to VCD sales to the Retailer Defendants of the NDCs at issue during the Relevant Period. The parties discussed that Wholesalers anticipate completing the production on this timeline, but to the extent there are any complications, Wholesalers will confer with Plaintiffs to discuss a rolling production.

With respect to 7.1.1 of CMO 32, Wholesalers and Plaintiffs met and conferred on April 25, 2023, April 28, 2023, and May 3, 2023. Wholesalers explained again that they do not in the ordinary course of business calculate or maintain "profits" on an NDC product or individual transaction basis. Similarly, reductions to revenue such as rebates, discounts, and returns, as well as costs

---

[1] Wholesalers reserve all rights and objections to the propriety and scope of the discovery ordered by the Court in CMO 32.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 3

and operating expenses, are not kept in the ordinary course of business on an NDC product or individual transaction basis.[2]

Plaintiffs acknowledged the difficulty in compiling the "profits" information they seek, and are open to discussing a "proxy" method to attempt to estimate Wholesalers' profits on the sales of VCDs at issue in the litigation. In order to even begin to create a methodology to approximate the information Plaintiffs seek, however, Wholesalers will need to identify and retain experts to analyze the issue. Wholesalers have been forthright with Plaintiffs that the process will be complicated and lengthy and may not even result in a reliable methodology. Nonetheless, Wholesalers are willing to attempt the process. Accordingly, Plaintiffs and Wholesalers have agreed that while they are preparing the production of the pricing information set forth above, the parties will attempt to outline a roadmap to a proxy calculation for profits information and will meet and confer following that production to attempt to agree on a way forward.

Thus, there is no dispute currently ripe for resolution by the Court with respect to CMO 32 Section 7.1, and the parties will continue to confer and report back to the Court in 45 days on their progress in this regard.

**Wholesalers' Discovery to Plaintiffs**

Despite the referenced meet and confers, the parties have not been able to reach an agreement regarding Wholesalers' discovery requests to Plaintiffs. The requests consist of a set of Requests for Production and a 30(b)(6) notice

---

[2] As fully briefed for Judge Schneider, even if the "costs and profits" granular detail could be identified and extracted from the multiple current and legacy systems, it would entail identifying and retaining outside accounting experts, coupled with a herculean effort that could not be accomplished by May 30, 2023, requiring hundreds, if not thousands, of employee and expert hours to create this information uniquely for this production—all to yield a result that would still likely be inaccurate.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 4

addressed to the TPP Assignor class representatives and MSP. The draft requests have been provided to Plaintiffs.

Because the 30(b)(6) notice in many ways tracks the topics of the Requests for Production, below is a brief summary of the six (6) topics of the discovery sought and the legal justification for the requests, each of which can be further addressed in the briefing requested herein by Wholesalers. Each topic is of core relevance to the essential elements of, damages for, or defenses/affirmative defenses to the sole remaining claim Plaintiffs bring against Wholesalers: the equitable claim of UE. Without this discovery, Wholesalers will be deprived of the opportunity to present a full defense to Plaintiffs' sole remaining claim in their many subclass actions:

1. **Identification of transactions that involve Wholesalers**: Whether analyzed under the rubric of the basic *prima facie* elements of UE, or Article III standing, Plaintiffs bear the burden to demonstrate that a specific Wholesaler was involved in any transaction for which Plaintiffs seek a remedy against such Wholesaler (the "Transactions"). In other words, it is axiomatic that for any transaction for which they seek to recover, Plaintiffs must prove that a specific Wholesaler sold the VCD and was enriched by the sale. Plaintiffs have repeatedly promised the Court that they possess and/or could determine which Wholesaler sold which VCDs, and that they would disclose the information at the appropriate time.[3] Wholesalers submit that, to date, the TPP Plaintiffs

---

[3] *See, e.g.*, Dkt. 1614 at 12, fn. 9 ("Plaintiffs persuasively respond that they have alleged the unique National Drug Code ("NDC") numbers for VCDs that they purchased, that the VCD numbers will enable identification of the wholesalers and retailers, **and that discovery on this aspect of the case is continuing**. Under these circumstances, dismissal of claims . . . simply because there is not a named Plaintiff who alleges buying VCDs from each . . . Wholesaler Defendant in that state would be premature.") (emphasis added); Plaintiffs' Reply Memorandum of Law in Further Support of their Motion for Leave to Amend Master Complaints, Dkt. 1382 at 13-14 ("Plaintiffs reviewed



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 5

have neither alleged nor disclosed any evidence of the involvement of
even one Wholesaler in even one transaction covered by a TPP Class
Representative or other TPP class member.

Whether Plaintiffs' plea for more time at the motion to dismiss and
motion for leave to amend stages carried weight, the time has now come
for Plaintiffs to identify and produce this "traceability" proof that would
support the TPPs essential *prima facie* elements of UE, including sale of
the product at issue, proximate cause, actual damage, and standing, or
instead to respond to the Wholesaler discovery requests and
acknowledge that they simply have no such information.

2.  **Communications/contracts with Wholesalers**: These requests seek a
    fundamental subject of discovery—dealings between the parties.
    Wholesalers are not aware of any such dealings, and it should be simple
    enough for Plaintiffs to respond: "none." In the event there are any such
    documents (including in custodial files), Wholesalers will work with
    Plaintiffs on a reasonable approach to the targeted collection and
    production of those documents.

3.  **Additional data fields for the Transactions**: Wholesalers' review of
    the claims/transaction data spreadsheets produced by the TPPs to date
    demonstrates that no data fields regarding Wholesalers have been
    produced, including, importantly, no field for ***amounts paid by TPPs to
    Wholesalers***. Wholesalers, again, are not aware of any such payments,

---

pharmacy records and the Defendant Fact Sheets provided by Wholesaler
Defendants and have confirmed that each Wholesaler Defendant was
responsible for distributing the batch of contaminated valsartan ultimately
consumed by at least one named Plaintiff . . . . The Wholesaler Defendants'
only dispute is that not *every* named Plaintiff identified the exact contaminated
VCD unit that each Wholesaler Defendant distributed. **This argument
sidesteps the reality that the Plaintiffs' allegations at this stage need not
establish proof of proximate causation**.") (emphasis added).



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 6

and it should be simple enough for Plaintiffs to respond: "none." In the event such data exists, however, it should not be burdensome to produce. Wholesalers will work with Plaintiffs on a reasonable approach to the collection and production of that data, should it be necessary.

4. **Proof of elements of UE**: The requests under this topic seek information related to certain core essential elements of the UE claim—what Wholesalers actually did wrong, or what benefit they inappropriately retained, including: (1) the benefit Plaintiffs claim Wholesalers received (the retention of which would be unjust); (2) the entity from whom Wholesalers received such benefit; and (3) any specific actions by Wholesalers that misled Plaintiffs or constituted wrongdoing as to Plaintiffs. Wholesalers understand that Plaintiffs seek discovery of all of Wholesalers' profits from all sales of the VCDs to downstream Defendants. But in order to carry their burden of proof on the equitable claim of UE, Plaintiffs must identify the Transactions in which they were involved, that involved a VCD sold by a particular Wholesaler (No. 1 above), and then specify what portion of that transaction went from the TPPs to Wholesalers (presumably the benefit the TPPs provided that it would be unjust for Wholesalers to retain).[4]

Additionally, because the applicable UE law of several states requires proof of some sort of misleading conduct or wrongdoing by Wholesalers as to the TPPs, the TPPs must identify whatever wrongdoing by Wholesalers misled or harmed them. In these states, it is not enough that Wholesalers sold the VCDs at issue. This request, too, may be easily answered "none." For example, Plaintiffs' expert Dr. Conti acknowledged that the Wholesalers sold the VCDs without knowledge

---

[4] TPPs cannot seek whatever portion of Wholesalers' profits other parties provided, or the Wholesalers' profits from sales that did not involve a TPP. Thus, it is critical that the TPPs describe what Transactions involved which Wholesaler, and what portion of that Wholesaler's profits the TPP did provide and does seek.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 7

of any alleged impurities or contamination. *See* Conti Deposition, February 11, 2022, Tr. 114:10-18. As such, Wholesalers are entitled to either any documents reflecting their alleged wrongdoing, if any, or a firm answer of "none" from the TPP Plaintiffs themselves.

5. **Damages to the TPPs**: UE, as an equitable claim, inherently requires the jury to assess the equities between the parties—e.g., what amount is unjust for the Wholesalers to retain. Under some state laws, the analysis is couched as what amount would be just to award to Plaintiffs versus what would constitute a windfall to Plaintiffs. These requests seek to: (1) confirm that Wholesalers' profits are the only damages/damage model Plaintiffs seek; and (2) request that Plaintiffs produce documents that reflect any expense/cost they would have incurred regardless of the type of blood pressure medication provided to their insureds.

6. **Value of VCDs to TPPs and Insureds**: As UE is a purely equitable claim, the jury will be evaluating the equities between the parties. Thus, the value of what Wholesalers provided to the TPPs is critical to the assessment of what portion of Wholesalers' profits it is allegedly unjust for the Wholesalers to retain. TPP Plaintiffs claim in the UE action the VCDs were worthless.[5] The Court has left that determination to the jury. Dkt. 2261 at 22-23; 91.

---

[5] Worthlessness, in the sense of damages for breach of warranty or other contract claims, might be considered in terms of whether the buyer would have purchased the goods at all had he known of the alleged impurity. In the equitable claim of UE, however, the TPPs and Consumer Plaintiffs have already received and retained a benefit from the VCDs despite any alleged impurity, and that consumption and retention of benefit must be included in the determination of what profit it is "just" for Wholesalers to retain. Plaintiffs are free to continue to argue worthlessness, but Wholesalers must be permitted to argue the value consumed, retained, and from which TPPs have benefitted from the Wholesaler-provided VCDs in order to justify their retention of any portion of profits provided by the TPPs, as sought in these requests.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 8

There are a variety of ways to value the VCDs to the TPPs: (1) the VCDs allowed the TPPs to fulfill their contractual obligations to their insureds; (2) the VCDs provided therapeutic benefit to the TPP insureds, thus enhancing the value of the TPPs' business; and (3) the VCDs allowed the TPPs to earn profits from each transaction in which a VCD was covered for an insured. Any TPP documents reflecting the value of these VCDs to the TPPs are critical to the UE defense of the Wholesalers. Wholesalers need to be able to demonstrate the profits earned by the TPPs to enable a fair assessment of the equities and the appropriate parties entitled to the profits made by Wholesalers.

This discovery is also important for the **unclean hands affirmative defense.** The crux of the Plaintiffs' case is that Wholesalers unknowingly sold allegedly impure VCDs to the TPP insureds, which the TPPs paid for and from which Wholesalers in turn profited. **It is one of Wholesalers' core defenses that the TPPs did exactly the same thing:** the TPPs unknowingly provided and paid for through their contractual arrangements allegedly impure VCDs from which the TPPs profited both by individual transaction and through overall contractual dealings and payments between the TPPs and the Plans and insureds. Whether that fact is called unclean hands, lack of damage, or lack of causation, it forms the basis of a Wholesaler defense to the case.

Unfortunately, despite Wholesalers' efforts in the meet and confers to explain the above relevance of their requests to Plaintiffs, **Plaintiffs have taken the position they will not answer a single request**:

Putting aside that the Court did not order any supplemental discovery of Plaintiffs, a number of the proposed requests or topics are redundant of prior data and information produced by Plaintiffs or are too far afield to the issues remaining in this case.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 9

Ex. A, 5/2/2023 D. Stanoch Letter to Wholesalers regarding Plaintiffs' Position on Discovery, at 2.

To help bridge the gap, Wholesalers have told Plaintiffs that if they identify purportedly redundant requests by reference to Bates numbers of responsive documents already produced, Wholesalers will withdraw those requests. Plaintiffs still refuse. As the Court is well aware, Judge Schneider deferred financial discovery from Wholesalers at the time Plaintiffs first sought it because it was premature in light of the "core" discovery being conducted to support/oppose class certification. Plaintiffs have now chosen UE, the one claim out of the **nine** originally pled, on which they wish to proceed against Wholesalers in numerous subclass trials. And Plaintiffs have now begun their requests for substantial additional discovery from Wholesalers, including financial information, transactional data, and custodial discovery discussed *infra*. But Plaintiffs have yet to produce the promised foundational traceability information for their claims—which Wholesaler sold the VCDs at issue in each transaction for which they seek to recover—and for which they bear the burden of proof. Wholesalers' discovery requests go to the heart of the *prima facie* elements of and defenses to the UE cause of action, but Plaintiffs categorically refuse to provide any discovery to Wholesalers on their UE claim. Wholesalers have fundamental due process rights to the discovery that will assist them in their defense. This Wholesaler discovery to Plaintiffs should be ordered.

To that end, the parties have agreed to request from Judge Vanaskie a briefing schedule related to the Wholesalers' discovery. Wholesalers propose the following: within 30 days of the May 17, 2023, discovery conference, the parties shall file opening letter briefs on any written discovery that remains in dispute at that time. The parties may file responsive letter briefs within 14 days of the filing of opening briefs. Each side may file a reply brief limited to two pages no later than three days after the responsive briefs are filed.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 10

## Plaintiffs' Request for "Targeted" Custodial Discovery

In response to Plaintiffs' request for "some targeted custodial discovery" of Wholesalers (3/29/23 Tr. at 32:2-3) at the March 29, 2023 hearing and Plaintiffs' April 12, 2023 letter requesting "limited fact and expert discovery of Wholesalers" (Dkt. 2338 at p. 4), the Court issued CMO 32 and ordered "further targeted discovery and depositions of wholesaler custodians." Dkt. 2343, section 7.2. Pursuant to the directive of the Court at the April 26, 2023 status conference, Wholesalers met and conferred with Plaintiffs' counsel to discuss the parameters of any such custodial discovery, including appropriate search terms and custodians. There is no dispute related to custodial discovery currently ripe for resolution by the Court, as the parties continue to work together on this issue.

So far, Plaintiffs' discovery requests have not been "targeted." **First**, Plaintiffs requested that Wholesalers conduct custodial searches using the search terms previously agreed upon with the Manufacturer Defendants. The search terms previously negotiated with Manufacturer Defendants are improper for Wholesalers' custodial collections and productions. Many of those search terms are directed to the *manufacture* of VCDs and the procedures and processes associated with the *manufacture* of VCDs. This is particularly true for the specific sets of search terms that Wholesalers understand Plaintiffs negotiated with individual Manufacturer Defendants. Wholesalers do not manufacture VCDs, nor do they engage in testing the content of any pharmaceutical medications they distribute, including VCDs. As such, Wholesalers' use of all of the search terms negotiated with the Manufacturer Defendants collectively and/or individually is not targeted to Wholesalers and will result in the unnecessary collection of documents that are irrelevant and unrelated to Wholesalers' distribution of VCDs.

Plaintiffs invited Wholesalers to propose a list of Wholesaler-specific proposed terms for consideration. Ex. A, 5/2/2023 D. Stanoch Letter to Wholesalers Regarding Plaintiffs' Position on Discovery, at 2. Thus, Wholesalers are in the



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 11

process of formulating a proposal on search terms, and the parties will be prepared to update the Court as to progress at the next status conference.

**Second**, Plaintiffs made a non-targeted proposal with respect to categories of individuals that they suggest would be "the appropriate custodians" for custodial document collections. Plaintiffs' proposal includes persons responsible for alleged functions such as "sourcing of VCDs," "quality oversight of VCD suppliers," the handling of recalls of VCDs," and "inventory management." However, to the extent those functions exist, they do not have anything to do with Plaintiffs' sole remaining claim against the Wholesalers for UE. For example, a request to collect custodial documents of persons involved in executing the recall issued for VCDs by the Manufacturer Defendants is not "targeted" to Plaintiffs' claim that Wholesalers were unjustly enriched before any products were recalled. The same is true for custodians in the broad category of "inventory management."

Wholesalers continue to evaluate Plaintiffs' proposed categories of individuals, and Wholesalers will continue to meet and confer with Plaintiffs to attempt to target individual custodians who would potentially possess documents relevant to Plaintiffs' UE claim. The parties will be prepared to update the Court as to progress at the next status conference.

\* \* \*

In light of the foregoing, Wholesalers respectfully request that the Court enter a briefing schedule such that within 30 days of the May 17, 2023 discovery conference, the parties shall file opening letter briefs on any written discovery issue that remains in dispute at that time. The parties may file responsive letter briefs within 14 days of the filing of opening briefs. Each side may file a reply brief limited to two pages no later than three days after the responsive briefs are filed.



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 12

In addition, by May 30, 2023, Wholesalers will produce the invoiced amounts for their VCD purchases at issue in this litigation from the Manufacturer Defendants during the Relevant Period, and the invoiced amounts with respect to VCD sales to the Retailer Defendants of the NDCs at issue during the Relevant Period.

The parties will continue to confer with respect to the idea of a "proxy" method to estimate "profits" on sales of VCDs at issue to the Retailer Defendants within the Relevant Period, and will report back to the Court in 45 days on their progress in this regard.

Finally, the parties will continue to confer to discuss the parameters of any such custodial discovery, including appropriate search terms and custodians, and will update the Court as to progress at the next status conference.

Very truly yours,

*/s/ Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
ULMER & BERNE LLP
Liaison Counsel for Wholesalers
*Counsel for AmerisourceBergen Corporation*

Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Emily G. Tucker
Luke J. Bresnahan
CROWELL & MORING
*Counsel for Cardinal Health, Inc.*

D'Lesli M. Davis
Ellie K. Norris



Special Master The Hon. Thomas I. Vanaskie
May 10, 2023
Page 13

NORTON ROSE FULBRIGHT US LLP
*Counsel for McKesson Corporation*

*cc:* Plaintiffs' Executive Committee