# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

May 10, 2023

*Via ECF*
The Hon. Thomas I. Vanaskie, Special Master
Stevens & Lee, P.C.
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

      Re: *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
         No. 1:19-md-2875 (D.N.J.)

Dear Special Master Vanaskie:

      Pursuant to Judge Kugler's instructions at the April 26, 2023 case management conference, Plaintiffs respectfully submit this update on Plaintiffs' meet-and-confer efforts with Retail Pharmacy Defendants and Wholesaler Defendants about the supplemental discovery Judge Kugler ordered those defendants to produce.  *See* CMO No. 32 (ECF 2343) at ¶¶ 6.0 & 7.0.

## I.    <u>Retail Pharmacy Defendants</u>

CMO No. 32 ordered four categories of discovery from Retail Pharmacy Defendants:

- Amounts paid for VCDs by TPPs (CMO No. 32 at ¶ 6.1.1)

- Retailers' costs and profits for VCDs (*id.* at ¶ 6.1.2)

- Identifiers for economic loss class members (*id.* at ¶ 6.1.3)

- Custodial discovery and depositions (*id.* at ¶ 6.2)

Honorable Thomas I. Vanaskie (Ret.)
May 10, 2023
Page 2

Plaintiffs and Retail Pharmacy Defendants have had three calls, and Plaintiffs have sent one follow-up letter, about these categories. *See* Ex. A hereto. The current status of the parties' discussions as to each of these categories is set forth below.

**A. Amounts Paid for VCDs by TPPs (CMO No. 32 at ¶ 6.1.1)**

Generally speaking, Retail Pharmacy Defendants' revenues on sales of VCDs are comprised of two components: payments by consumers (e.g., co-pays), and payments by consumers' insureds (i.e., TPP reimbursements). Previously, Retail Pharmacy Defendants only produced half of the total picture. They only produced the amounts paid by consumers for VCDs (e.g., co-pays). Plaintiffs now seek, and the Court has now ordered that Retail Pharmacy Defendants produce, the other half of the total picture, i.e., the amounts paid by TPPs for VCDs dispensed to consumers.

Plaintiffs have explained what it is they seek, and have provided examples showing the data exist. *See* Ex. A at 2-3. In response, Retail Pharmacy Defendants have stated that the amounts showing on their own ordinary-course records as the amounts paid by TPPs might be inaccurate, insofar as aggregated after-the-fact adjustments (e.g., rebates, returns, chargebacks, etc.) may reduce those amounts. Retailers' effort to distract from what was ordered by focusing on purported, and likely unprovable post-transaction adjustments does not negate the ordered production of the amounts shown in Retailers' own records as the amounts TPPs paid for VCDs, which is exactly what CMO No. 32 ordered to be produced.

Thus, Retail Pharmacy Defendants should produce what they were ordered to produce—the amounts paid by TPPs for VCDs. If they wish to use other data to advance reduction/offset arguments, they should produce that data *as well*, not *in lieu* of data showing the amounts paid by TPPs, in accordance with the Order.

Honorable Thomas I. Vanaskie (Ret.)
May 10, 2023
Page 3

### B. Retailers' Costs and Profits for VCDs (CMO No. 32 at ¶ 6.1.2)

Retail Pharmacy Defendants have indicated they will produce cost and profit data for VCDs, but are still investigating what data exist, and how long it will take to produce it. The uncertainty as to this issue is puzzling, and if not definitely resolved in very short order a 30(b)(6) deposition will be needed to provide clarity, and arm the Plaintiffs with the vocabulary to pursue this data over any continued delay.

### C. Identifiers for Economic Loss Class Members (CMO No. 32 at ¶ 6.1.3)

This information relates to the dissemination of class notice to economic loss class members. *See* Ex. A at 4. Plaintiffs have agreed to narrow this information to that necessary to effectuate notice, including: name, address, and email. Plaintiffs do not seek other identifying information (e.g., birth date, SSN, etc.). Retailers have indicated that they will produce this information, but will need time to run data queries to collect it. Plaintiffs are amenable to modifying the May 30 deadline set by CMO No. 32 for this information to be produced, in light of the fact the notice program is not yet ready to be implemented. But any extension must be limited to the extent needed to allow the notice program to roll out without artificial delay.

### D. Custodial Discovery and Depositions (CMO No. 32 at ¶ 6.2)

Based on existing discovery, Plaintiffs have identified the areas or job responsibilities they believe should guide the identification of custodians for custodial document discovery and depositions. *See* Ex. A at 4. Retailers are in the best position to know which of their personnel handle the identified areas during the class period – in fact the Defendants in this litigation have repeatedly made clear that it is their right to select their 30(b)(6) witnesses; therefore, Plaintiffs need Retailers to propose custodians for discussion. They have yet to do so. As to search terms, Plaintiffs believe the terms ordered by Magistrate Judge Schneider for Manufacturer Defendants'

Honorable Thomas I. Vanaskie (Ret.)
May 10, 2023
Page 4

discovery are the logical starting point since they encompass the terminology at the heart of the litigation.  Retailers have not proposed modifications or explained why any would be necessary, and such discussions cannot serve to delay this process.

## II.    Wholesaler Defendants

CMO No. 32 ordered four categories of discovery from Wholesaler Defendants:

- Wholesalers' costs and profits data for VCDs (CMO No. 32 at ¶ 7.1.1)

- The prices Wholesalers paid for VCDs (*id.* at ¶ 7.1.2)

- The prices at which Wholesalers sold VCDs downstream (*id.* at ¶ 7.1.3)

- Custodial discovery and depositions (*id.* at ¶ 7.2)

Plaintiffs and Wholesaler Defendants have had two calls, and Plaintiffs have sent one follow-up letter, about these categories.  *See* Ex. B hereto.  The current status of the parties' discussions as to each of these categories is set forth below.

### A.  Wholesalers' Costs and Profits Data for VCDs (CMO No. 32 at ¶ 7.1.1)

Wholesalers continue to maintain that they cannot identify and produce their costs and profits on VCDs (data which, they continue to represent, are not maintained on the per product level), and that they are working with experts to analyze same.  As discussed at the case management conference, Plaintiffs continue to be quite skeptical of this position.  Wholesalers have indicated that they are investigating what data exist that might be a proxy or next-best indicator of their costs and profits on VCDs, which seems more like an exercise in semantics since the data they were ordered to produce Wholesalers have not provided any additional detail yet, or how much more time they think they need beyond the May 30 deadline to complete the court-ordered production.  Plaintiffs do note that Wholesalers should produce ordinary-course

Honorable Thomas I. Vanaskie (Ret.)
May 10, 2023
Page 5

information about their costs and profits; they should not exclusively produce expert-assisted, or expert-estimated, cost and profit information.

**B. The Prices Wholesalers Paid for VCDs (CMO No. 32 at ¶ 7.1.2) & the Prices at Which Wholesalers Sold VCDs Downstream (CMO No. 32 at ¶ 7.1.3)**

Wholesalers have indicated they will produce the "invoiced amounts" for VCDs they purchased, and in turn sold downstream, and are aiming to do so by May 30.  Plaintiffs have expressed concern that "invoiced amounts" do not reflect actual amounts paid.  *See* Ex. B at 1-2. Plaintiffs need Wholesaler Defendants to explain what additional data they have to show gross prices paid. Wholesalers have yet to respond.

**C. Custodial Discovery and Depositions (CMO No. 32 at ¶ 7.2)**

As with Retailers, Plaintiffs have identified the areas or job responsibilities they believe should guide the identification of Wholesalers' custodians for custodial document discovery and depositions.  *See* Ex. B at 4.  Wholesalers, like Retailers, are in the best position to know which of their personnel can best speak to the identified subjects during the class period; therefore, Plaintiffs need Wholesalers to propose custodians for discussion.  They have yet to do so.  As to search terms, Plaintiffs believe the terms ordered by Magistrate Judge Schneider for Manufacturer Defendants' discovery should be the presumed correct search terms, absent a showing to the contrary.

**D. Wholesalers' Proposed Discovery to Plaintiffs MSP and MADA**

CMO No. 32 does not countenance any discovery to be propounded by Wholesalers to Plaintiffs. Nevertheless, Wholesalers continue to press their belated, voluminous proposed discovery requests to named TPP Plaintiffs, MSP and MADA.  These include enormously burdensome and irrelevant requests, ranging from all medical records of insureds for which MSP's

Honorable Thomas I. Vanaskie (Ret.)
May 10, 2023
Page 6

assignors or MADA reimbursed for VCDs, to Plaintiffs' own profits, to various documents and

data that the defense side have requested before and which MSP and MADA have already

produced.  While Wholesalers claimed they have narrowed their original proposal, their "revised"

requests merely condensed the number of requests while leaving the same overly broad subject

matters, including the medical record and profits requests.  *See* Exs. C-D.  The requests are clearly

designed to harass and burden the Plaintiffs.

Plaintiffs have indicated they are willing to discuss a substantially narrowed set of targeted

requests notwithstanding that CMO No. 32 does not contemplate Wholesalers' propounding any

discovery, if they can demonstrate there is an actual need for something in addition to what has

been produced to date.  *See* Ex. B.  But to date, Wholesalers have not sufficiently narrowed their

proposal, especially in light of the enormous discovery Plaintiffs MSP and MADA have already

provided, and at this point the requests should be stricken.

Sincerely,

ADAM M. SLATER

Encls.

cc:      All Counsel (via ECF)