# EXHIBIT A



701 Camp Street ■ New Orleans, Louisiana 70130 ■ (504) 524-5777 ■ Fax (504) 524-5763

April 28, 2023

*Via Electronic Mail*              *Restricted Confidential / Confidential –*
                                   *Contains Information Subject*
                                   *to Protective Order*

Kristen Richer                     Kara Kapke
Barnes & Thornburg, LLP            Barnes & Thornburg, LLP
2029 Century Park East, Suite 300  11 S. Meridian St.
Los Angeles, CA 90067              Indianapolis, IN 46204

Re: *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 19-md-2875 (D.N.J.)

Dear Kristen and Kara:

This letter follows-up on our meet-and-confer call on April 24 and the Case Management Conference before Judge Kugler on April 26 concerning the additional discovery from Retail Pharmacy Defendants directed by Case Management Order No. 32 (D.E. 2343).

Both during our meet-and-confer, and in Defendants' pre-conference letter to the Court, Retail Pharmacy Defendants asked for more clarity about what Plaintiffs seek and what the Court ordered these Defendants to produce. We think both Plaintiffs' request and the Court's order were clear, and that our providing a "formal written instrument" specifying again exactly what it is Plaintiffs seek (and, now, what the Court has ordered) is unnecessary and unproductive. It would be much more productive for Retail Pharmacy Defendants to share what information or data they *do* possess that may touch on the clearly defined categories of information at issue, so the parties can confer about the scope and format of the productions. We have asked Retail Pharmacy Defendants before, and ask here again, that they share with us what information and data each of them may possess that would be responsive to the Court-ordered production categories, even if it is not a perfect fit.

That said, and in anticipation of another call between us, Plaintiffs provide some examples and further information in the hope that it will assist the parties to work cooperatively on Retail Pharmacy Defendants' forthcoming supplemental productions.

I.    **Amounts Paid for VCDs by TPPs** (*see* **4/21/23 Order at ¶ 6.1.1**)

Generally speaking, Retail Pharmacy Defendants' revenues on sales of VCDs are comprised of two components: payments by consumers (e.g., co-pays), and payments by consumers' insureds

(i.e., TPP reimbursements). Previously, Retail Pharmacy Defendants only produced half of the total picture. They only produced the amounts paid by consumers for VCDs (e.g., co-pays). Plaintiffs now seek, and the Court has now ordered that Retail Pharmacy Defendants produce, the other half of the total picture, i.e., the amounts paid by TPPs for VCDs dispensed to consumers.

We think Retail Pharmacy Defendants should have at least two data-points in this regard. One, we believe they possess data showing the total amount paid for VCDs. Two, we believe they possess data showing the amounts paid by TPPs which, when added to the amounts paid by consumers, add up to the total amounts paid for VCDs. For conferral purposes only, below are a few examples from the record in this case of what we mean.

Here is an example from Defendant CVS's pharmacy records produced by class representative Jay Meader:



Here is an example from Defendant Walmart's pharmacy records produced by class representative Mary McLean:



Here is an example from Defendant Albertsons' pharmacy records produced by class representative Merilyn Andre:

2



Many other examples exist in the discovery record suggesting all Retail Pharmacy Defendants know the total amounts paid for VCDs, and how consumer and TPP payments add-up to the total amounts paid. We further see many examples in Retail Pharmacy Defendants' own records, some of which are also shown in the above excerpts, that identify (by name and/or unique identifier or code) the TPP that reimbursed for VCDs. Thus, Retail Pharmacy Defendants' production of these data would be responsive to the Court's order.

You mentioned on our last call about the possibility of Retail Pharmacy Defendants' production of some sort of aggregated data for TPPs' payments for VCDs. We are not sure what that exactly means or what it would look like. While we are open to hearing your proposals in this regard, we note that the obvious existence of the data we seek (as illustrated above) means it likely will be more straightforward for Retail Pharmacy Defendants simply to produce that data as it exists in the ordinary course of business.[1]

## II.   Retailers' Costs and Profits for VCDs (*see* 4/21/23 Order at ¶ 6.1.2)

Each Retail Pharmacy Defendant surely maintains data on the prices at which they sold VCDs (*see supra* Part I), and their costs and profits associated with their acquisition and resale of VCDs. We

---

[1] Although you did not raise it with the Court during the April 26 CMC, the answer to your question posed in Defendants' April 24 letter to the Court wondering if "this refer[s] to all VCDs for all time," is no. The request relates to the certified class period, which is the same time period for which Retail Pharmacy Defendants already produced the co-pay data for VCDs.

3

need to hear from you about what data and information each Retail Pharmacy Defendant possesses in this regard.

### III. Identifiers for Economic Loss Class Members (*see* 4/21/23 Order at ¶ 6.1.3)

As discussed, this information relates to the dissemination of class notice to economic loss class members. Plaintiffs do not need all previously-redacted identifiers. They will accept consumers' names, address, and e-mails (if available). Plaintiffs believe the operative Protective Order already addresses any confidentiality concerns, but we will hear you out if Retail Pharmacy Defendants desire a supplemental order. We need Retail Pharmacy Defendants to explain to us what specific data or information exist for us to have a meaningful conferral about it.

### IV. Custodial Discovery and Depositions (*see* 4/21/23 Order at ¶ 6.2)

As stated previously, Plaintiffs are willing to confer with Retail Pharmacy Defendants. Generally, and without prejudice, the appropriate custodians likely include individuals with responsibilities for the areas that were the subject of previous written discovery to Retail Pharmacy Defendants, and these newly ordered productions. Those areas include the sourcing of VCDs, purchase/supply agreements relevant to VCDs, quality oversight of VCD suppliers, the handling of the recalls of VCDs, inventory management, and the relevant purchase, sales, and cost data relating to VCDs. It may be more productive for Retail Pharmacy Defendants to propose custodians than for Plaintiffs to guess who the appropriate custodians might be, based on the limited discovery produced to date. As to search terms, we imagine the terms used with Manufacturer Defendants can be used as a starting point. We may be able to reduce the breadth of those terms given Retail Pharmacy Defendants' role in this litigation, other than terms that might apply to data or policy/practice type matters that transcend VCDs specifically, but would need to agree there is a real need and benefit, as opposed to detriment of doing so.

* * *

We look forward to discussing these matters with you next week.

Truly Yours,

By: _____
David J. Stanoch