# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

May 15, 2023

*Via ECF*
Honorable Thomas I. Vanaskie, Special Master
Stevens & Lee, P.C.
1500 Market Street, East Tower, 18th Floor
Philadelphia, Pennsylvania 19103

      Re:   *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*,
                No. 1:19-md-02875-RBK (D.N.J.)

Dear Judge Vanaskie:

Plaintiffs respectfully submit this letter in advance of the May 17, 2023 status conference.

**1. Rule 702 Motion to Seal Briefing Schedule**

The Parties have begun to meet and confer on the confidentiality designations of the exhibits to their *Daubert* motions. Defendants' current deadline to file any motions to seal is May 25, but the Parties are seeking an extension to June 15 for Defendants to file their motions, with Plaintiffs' oppositions due July 10. This will provide the Parties with a meaningful opportunity to narrow their disputes regarding the numerous exhibits to those motions.

Plaintiffs also note that the Court ordered ZHP to propose redactions to Ex. CC to ECF 1189. (ECF 2157). Plaintiffs opposed those redactions. (ECF 2164). Respectfully, the Parties' meet and confers could benefit from the Court's guidance on those redactions.

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 2

### 2. Discovery Requests Relating to Plaintiffs' Proposed Class Notice Program

After submission of Plaintiffs' motion for approval of class notice, Defendants wrote letters on May 11 asking some questions about the notice proposal and requesting a deposition of Plaintiffs' notice expert, Steven Weisbrot. Plaintiffs met and conferred with Defendants on May 12, answering some of the questions, and explaining that many of their questions dealt with marketing terms that had accepted definitions. Plaintiffs were also informed that Defendants had not retained their own notice expert who, Plaintiffs believe, would have been able to answer many of Defendants' questions. Nevertheless, during that meet and confer, Plaintiffs offered to make Mr. Weisbrot available on an informal basis to answer Defendants' questions, in lieu of a formal deposition, as well as agreeing to provide Defendants a copy of the Third Party Payor notice list, and some of the additional information requested, such as the frequently asked questions. Plaintiffs and Defendants also agreed to continue meeting and conferring on the topic.

Previously in this litigation, when dealing with ESI issues, Plaintiffs had noticed depositions of Defendants regarding questions they had about Defendants computer systems, document retention policies, etc., but after discussions with Magistrate Judge Schneider, the Parties agreed to informal meetings with Defendants' representatives, vendors, and experts, in lieu of depositions. Similarly, later in the litigation, when issues arose regarding the use of TAR by certain Defendants, Plaintiffs agreed to informal meetings and phone calls with Defendants' experts in lieu of formal depositions. This situation is no different, where Defendants have essentially technical questions about the notice process, etc., and Plaintiffs believe a similar informal meeting and/or phone calls where Plaintiffs make their notice expert available, should be sufficient to answer Defendants' questions.

Defendants have also asked for an extension of the current briefing schedule. Plaintiffs had actually intended, and still intend, to submit their reply early, allowing Judge Kugler to hear and rule on Plaintiffs' Motion at the June 7 status conference. Plaintiffs believe any issues Defendants have with the proposed Notice plan are straightforward and can be resolved or briefed within the current schedule. Plaintiffs do not believe an extension is necessary or appropriate, and would only result in further delays in setting a trial date.

3. **Propriety of MSP's Discovery Responses**

Many months ago, MSRPC produced the documents ordered by the Court in SMO 73. Specifically, it produced the PDE data for over thirty thousand SummaCare and Emblem transactions, and it produced data showing any direct subsidies that SummaCare and Emblem received for the relevant health plans, after having been adjusted for any end of year risk adjustments. As such, Defendants now have data relating to any (1) low-income subsidy payments, (2) catastrophic payments, (3) direct subsidy payments, and (4) end of year risk corridor adjustments.

Yet, on May 9, 2023, Defendants sent a letter to MSRPC claiming that its production was incomplete because it did not produce (1) ConnectiCare PDE data, (2) Emblem PDE data for the year of 2014, and (3) specific forms to which defendants believe they are entitled. MSPRC sent a response letter, which Plaintiffs attach as Exhibit A. As specified in that letter, ConnectiCare's claims are not at issue in the upcoming trial, Emblem does not possess the PDE data for 2014, and the specific forms that Defendants request go well beyond what the Court ordered in SMO 73 and contain highly confidential information that the Court found MSPRC did not have to produce, such as the assignors' bids.

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 4

Nonetheless, MSPRC is open to meeting and conferring with Defendants to try and better understand what additional data Defendants believe is outstanding and that would be contained on those specific forms, and to see whether this issue can be resolved without burdening the Court. The Parties have a meet and confer call scheduled for May 16, 2023, and MSPRC will be prepared to address any unresolved issues at the CMC.

**4. Retailer Discovery**

Nothing has changed since the Parties' letters to the Special Master on May 10, 2023. Plaintiffs' letter of May 10 remains Plaintiffs' position on where matters stand concerning Retail Pharmacy Defendants' compliance with CMO No. 32. Plaintiffs do highlight the following matters pertaining to Retailers' compliance with CMO No. 32 that are ripe for the upcoming CMC.

CMO No. 32 ordered Retailers to produce three discrete categories of information by May 30: (i) Amounts paid for VCDs by TPPs (CMO No. 32 at ¶ 6.1.1); (ii) Retailers' costs and profits for VCDs (*id.* at ¶ 6.1.2); and (iii) identifiers for consumer economic loss class members (*id.* at ¶ 6.1.3). CMO No. 32 further directed that the schedule for further custodial discovery and depositions from Retailers will be scheduled at the May 31 CMC. *See id.* at ¶ 6.2.

Retailers' May 10 letter to the Special Master proposes the Parties continue to confer on all matters, and then provide a further update on June 7. This proposal essentially is an extension of time of the May 30 and May 31 deadlines. However, as noted in Plaintiffs' May 10 letter to the Special Master, Retailers have yet to provide Plaintiffs with details about what they intend to produce by way of prices paid and costs/profits data (CMO No. 32, at ¶¶ 6.1.1, 6.1.2), and have yet to propose any custodians or modifications to the search terms previously approved by Magistrate Schneider (*id.* at ¶ 6.2).

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 5

More worrisome than Retailers' apparent inability to meet the current May 30 and 31 deadlines, their May 10 letter suggests they are not intending to produce the prices paid by TPPs (CMO No. 32, at ¶ 6.1.1). Instead, they argue a variety of post-transaction adjustments may exist. As explained in Plaintiffs' May 10 letter, the possible existence of post-transaction adjustments does not negate the ordered production of the amounts shown in Retailers' own records as the amounts TPPs paid for VCDs, which is exactly what CMO No. 32 ordered to be produced.

As to profits and cost data (CMO No. 32, at ¶ 6.1.2), Retailers claim they are still investigating what data exist and what they might be willing produce. Given that Plaintiffs have neither sample data nor confirmation that Retailers will meet the May 30 deadline, they hope to address this at the upcoming CMC.

In terms of Retailers' repeated assertion that the data ordered by CMO No. 32 is "highly competitively sensitive," the operative Protective Order addresses such concerns; other parties (on both sides) have already produced equally if not more sensitive information.

As to Retailers' ordered custodial discovery (CMO No. 32, at ¶ 6.2), Retailers have yet to identify any proposed custodians or search terms. Their stated position on this is that they wish to have more time, and in conversations with Plaintiffs they have suggested this targeted supplemental discovery could be completed by the end of this calendar year. Neither of this is acceptable to Plaintiffs. CMO No. 32 set a May 31 deadline to schedule supplemental discovery of Retailers. Plaintiffs have already indicated to Retailers that the scope of this discovery should be much more limited, qualitatively and quantitatively, than the discovery of Manufacturer Defendants. There is no reason why Retailers have yet to propose custodians or search terms ahead of the May 31 deadline. And another seven months for this targeted discovery to occur is untenable. With the May 31 deadline rapidly approaching, Plaintiffs seek the Special Master's

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 6

guidance to set firm intermediate deadlines for Wholesalers' compliance with CMO No. 32 so that the custodians, search terms, and eventual depositions can be set promptly.

Finally, in terms of identifiers for consumer economic loss class plaintiffs (CMO No. 32, at ¶ 6.1.3), the Parties have agreed to narrow this information to that necessary to effectuate, notice, including: name, address, and email. CMO No. 32 ordered Retailers to produce these data by May 30. Retailers' last update to the Special Master did not address their ability to meet this deadline.

5. **Wholesaler Discovery**

As with Retailers' compliance with CMO No. 32, nothing has changed with respect to Wholesaler Defendants' compliance with CMO No. 32, either, since the parties' May 10 letters to the Special Master. Plaintiff highlight the following matters pertaining to Wholesalers' compliance with CMO No. 32 that are ripe for the upcoming CMC.

**Wholesalers' Profits and Costs (CMO No. 32 ¶ 7.1.1.).** Wholesalers' May 10 letter to the Special Master contained two troubling statements ripe for the upcoming CMC about this item of CMO No. 32.

First, Wholesalers reported last week that they "will need to identify and retain experts to analyze" their profits and costs. The future tense of this statement suggests Wholesalers have not yet taken any of the steps they think they need to take to obtain the data ordered by CMO No. 32, which is worrisome given CMO No. 32's May 30 deadline. Additionally, as noted in Plaintiffs' May 10 letter, Plaintiffs are entitled to Wholesalers' ordinary-course documents and information about their costs and profits, not exclusively post hoc analyses performed by Wholesalers yet-to-obtained litigation experts. Wholesalers should produce the underlying information and data as ordered, for Plaintiffs' own review and analysis.

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 7

Second, Wholesalers' May 10 letter asked, for the first time, for an additional 45 days for the parties to confer and report back "on their progress." Plaintiffs do not believe another 45 days, on top of the time already provided by CMO No. 32, is appropriate for a mere progress report. Wholesalers were ordered to produce profits and cost data by May 30. To date, Wholesalers have not indicated what if any ordinary-course data they will produce or when; and they apparently have not even retained experts they claim they need to analyze the issue.

**Prices Wholesalers Paid For VCDs, and Prices at Which Wholesalers Sold VCDs Downstream (CMO No. 32, ¶¶ 7.1.2, 7.1.3).** The Parties agree that Wholesalers have committed to produce by May 30 the "invoiced amounts" for VCDs purchased and sold by Wholesalers. Plaintiffs' May 10 letter to the Special Master noted the concern that "invoiced amounts" might not reflect actual amounts paid. For example, did each Wholesaler actually pay in full the amounts for which they were invoiced? Plaintiffs believe Wholesalers should produce "invoiced amounts" by May 30 as they plan to do, but Wholesalers also should produce what they were ordered to produce, i.e., the actual "prices paid" by them and their own customers for VCDs.

**Custodial Discovery and Depositions (CMO No. 32 at ¶ 7.2).** CMO No. 32 ordered that the additional custodial discovery and depositions of Wholesalers will be scheduled at the May 31 CMC. Plaintiffs have told Wholesalers the areas of responsibility for the custodians they seek, and have proposed to use the search terms approved by Magistrate Judge Schneider as a starting point for the terms Wholesalers should use. Wholesalers have yet to identify any proposed custodians or search terms to Plaintiffs. With the May 31 deadline rapidly approaching, Plaintiffs seek the Special Master's guidance to set firm intermediate deadlines for Wholesalers' compliance with CMO No. 32 so that the custodians, search terms, and eventual depositions can be set promptly.

Hon. Thomas I. Vanaskie, Special Master
May 15, 2023
Page 8

**Wholesalers' Proposed Discovery to TPP Plaintiffs.** Majority of Wholesalers' May 10 letter dealt with discovery they wish to propound on TPP Plaintiffs, rather than the discovery CMO No. 32 ordered Wholesalers themselves to produce. As stated in Plaintiffs' May 10 letter, Plaintiffs are willing to consider a pared down set of supplemental document requests. But to date, Wholesalers have repeatedly insisted that TPP Plaintiffs answer their overly burdensome, redundant, and irrelevant draft requests (all of this is especially so, in light of the significant discovery requests these plaintiffs have already responded to). Given that CMO No. 32 did not provide for any supplemental discovery to be propounded by Wholesalers, Plaintiffs believe the Special Master should decline Wholesalers' invitation to consider supplemental discovery from TPP Plaintiffs at this time. The focus firstly should be on what CMO No. 32 did order—supplemental discovery from Wholesalers—and only after those matters are resolved should the Special Master or Court even entertain Wholesalers' desire to propound additional discovery.

Thank you for your courtesies and consideration.

Respectfully,

ADAM M. SLATER

cc:   All Counsel (via CM/ECF)