# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| | Oral Argument Requested |
| **This Document Relates to All Actions** | |

## TPP DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR ORDER TO SHOW CAUSE WHY MSP RECOVERY CLAIMS, SERIES LLC SHOULD NOT BE <u>SANCTIONED FOR VIOLATION OF SMO 73 AND CMO 32</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT ........................................................................................................9

I.   MSPRC Has Violated SMO 73 and CMO 32 by Failing to Produce the Responsive Subsidy, Reimbursement, and Rebate Documents and Data It Was Ordered to Produce .................................9

II.  MSPRC's Violations Warrant an Order to Show Cause Why MSPRC Should Not Be Subject to Sanctions and Other Relief .........15

III. The June 7, 2023 Deadline for the TPP Defendants' Damages Expert Reports and Schedule for Deposing Damages Experts Should Be Extended Until 35 Days After MSPRC Complies with SMO 73 ......................................................................................17

CONCLUSION ...................................................................................................19

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai US Inc., Prinston Pharmaceutical Inc. d/b/a Solco Healthcare LLC, Solco Healthcare US, LLC, Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis Pharma, Inc., Actavis, LLC, Torrent Pharmaceuticals Ltd., and Torrent Pharma Inc. (collectively, the "TPP Defendants"), move for an order to show cause why Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") should not be sanctioned under Fed. R. Civ. P. 37(b), for its failure to comply with Special Master Order No. 73 [Dkt. 2249] ("SMO 73"), entered by the Special Master on January 24, 2023, and Case Management Order 32 [Dkt. 2343] ("CMO 32"), entered by the District Court on April 21, 2023.

## **INTRODUCTION**

SMO 73 contains a clear and unambiguous instruction: "MSPRC will be directed to produce ***the documents reflecting the subsidies, reimbursements, and rebates*** it received from CMS during the time period for which it is seeking damages." SMO 73 at 4 (emphasis added). There was no possibility of misunderstanding what documents are responsive to this direction; the TPP Defendants identified 14 specific categories of responsive reports and datasets in their motion to compel, and reiterated those 14 categories of reports and datasets repeatedly at oral argument as responsive to the TPP Defendants' discovery request seeking documents "reflecting subsidies, reimbursements, and rebates that You

received from" the Center for Medicare and Medicaid Services ("CMS"). MSPRC *never disputed* that (1) these 14 reports and datasets are the documents reflecting the subsidies, reimbursements, and rebates it received; (2) it has possession, custody, or control of the reports and datasets through its assignors; and (3) it would not be unduly burdensome for MSPRC to produce them. Thus, MSPRC's compliance with SMO 73 was a simple matter of producing the 14 reports and datasets reflecting the subsidies, reimbursements, and rebates its assignors received from CMS during the time period for which it is seeking damages. Under CMO 32, moreover, MSPRC was ordered to complete its rolling production by May 3, 2023.

MSPRC has failed and refused to comply with SMO 73 and CMO 32. As of May 3, 2023, MSPRC had produced only two groups of documents in response to SMO 73 (the "Produced Documents"): (1) some but not all of its prescription drug event ("PDE") records during the relevant time period; and (2) a handful of Excel spreadsheets purporting to present very limited data reflecting some of the subsidies purportedly paid to MSPRC's assignors at the highest and least useful level of abstraction, with none of the detail contained in the 14 reports and datasets and needed to properly analyze the data and to use it to evaluate the report of Plaintiffs' damages expert. Although the Produced Documents are responsive to SMO 73, they are certainly not *all* of the responsive documents in MSPRC's possession, custody, or control responsive to SMO 73, and fall far short of expressing all of the key data

reflecting the subsidies, reimbursements, and rebates MSPRC's assignors received from CMS. In short, MSPRC has violated SMO 73 and CMO 32, and its violation has materially prejudiced the TPP Defendants' ability to prepare their own damages expert reports responding to Plaintiffs' damages expert. The TPP Defendants have met and conferred with MSPRC's counsel in a diligent attempt to secure compliance with the Court's orders, but MSPRC has refused to provide any additional materials.

For these reasons, the TPP Defendants respectfully request that the Court issue an order to show cause why MSPRC should not be sanctioned under Rule 37(b)(2)(A) for failing to comply with SMO 73 and CMO 32. The orders clearly direct MSPRC to provide specific discovery. MSPRC indisputably violated both orders by failing to timely produce the documents reflecting the subsidies, reimbursements, and rebates its assignors received from CMS during the relevant time period. Its violation has specifically prejudiced the TPP Defendants in rebutting Plaintiffs' damages expert and has directly impacted the progress of this case under the schedule set forth in CMO 32. These circumstances support a variety of potential sanctions, and MSPRC should be ordered to show cause why it should not be subject to such sanctions for its violation of discovery orders.

## **BACKGROUND**

SMO 73 granted in part the TPP Defendants' Joint Motion to Compel Production of Documents and Data Relevant to Plaintiff's Alleged Damages [Dkt.

2178] ("Motion to Compel"). Specifically, the Special Master granted the Motion to

Compel with respect to Request No. 2:

> Request 2. **Subsidy, Reimbursement, and Rebate Data**: Data [in Excel format] and reports reflecting subsidies, reimbursements, and rebates that You received from CMS [Center for Medicare and Medicaid Services], including but not limited to prescription drug event ("PDE") reports and all PDE payment records reflecting reimbursements and payments for valsartan-containing drugs, ***and other standard reports and data available through CMS which reflect payments made or received by You for any prescription drugs for Insureds enrolled in Your Plans during the Relevant Time Period, such as Monthly Membership Summary Reports, Plan Payment Reports, [and] Payment/Interim Plan Payment Records Reports***.

[Dkt. 2178-1 at 2 (emphasis added)]. The TPP Defendants identified with specificity

in their supporting brief a list of the fourteen responsive reports and datasets

encompassed by Request No. 2 (the "14 Reports and Datasets"):

- Monthly Membership Reports (MMR)
- Monthly Membership Summary Data Reports (MMSR)
- Monthly Membership Summary Data Files (MMSD)
- Plan Payment Reports (PPR)
- Plan Payment Report/Interim Payment Data Files (IPPR)
- Payment Records Reports
- Payment Reconciliation System (PRS) annual reports detailing the annual reconciliation based on PDE records
- Risk Adjustment System (RAS) Prescription Drug Hierarchical Condition Category (RxHCC) Model Output Data Files
- RAS RxHCC Model Output Reports
- Medicare Advantage Organization (MAO) 004 Reports – Encounter Data Diagnosis Eligible for Risk Adjustment
- Prescription Drug Event (PDE) Submittal File
- Prescription Drug Event (PDE) PDFS Response Data File
- Prescription Drug Event (PDE) DBC Cumulative Beneficiary Summary Report

4

- COB-OHI files and COB-OHI Supplement Records, which include National Drug Codes (NDCs) submitted by Patient Assistance Programs (PAPs).

[*Id*. at 7-8]. MSPRC opposed this request and filed a brief in opposition. [Dkt. 2181].

The Special Master heard extensive argument from the parties at the October 27, 2022 Case Management Conference. The arguments made during that hearing meaningfully inform the present motion, and specifically the recognition of all parties and the Special Master that Request No. 2 was inclusive of the 14 Reports and Datasets. *See* Transcript of Oct. 27, 20222 Case Management Conference ("Oct. 27 Tr."), attached hereto as **Exhibit A**. Plaintiffs' counsel first acknowledged that it was relevant to the damages calculation under their own "point of sale" measure of damages to identify "what was paid and what was reimbursed," which requires the production of "the historical numbers" and "historical data so that [TPP Defendants] understand what the actual dollars are." Oct. 27 Tr. at 22:14-19. Yet Plaintiffs' counsel also questioned the ability of the TPP Defendants' experts to "disaggregate" the Medicare subsidy, reimbursement, and rebate  data and "[t]o tease out in the aggregate what the assignors got from Medicare and how it did or did not relate to valsartan," which Plaintiffs' counsel insisted was necessary "[f]or the aggregate information to be relevant, they have to have a means to disaggregate." *Id*. at 30:7-15. Plaintiffs then proposed in the "nature of a compromise" that MSPRC produce *all* of the requested reports and data only for "the year of the recall," as well as

5

reports (*i.e.* the PDE reports) relating to subsidies during the "catastrophic and low income" phases of Medicare coverage for two years, and then allow TPP Defendants to "come back" and seek more. *Id*. at 31-21-33:3.

The TPP Defendants opposed the proposed "compromise," arguing that the Medicare reports and data were demonstrably relevant, and "[t]he opportunity to look at government expenditures, the opportunity to determine whether those can be disaggregated, whether those can be subtracted from plaintiffs' assessed damages calculation … is directly relevant to what is at issue in this case." *Id*. at 36:24-38:2. The TPP Defendants expressly referenced the 14 Reports and Datasets as "the specific reports and specific datasets we believe are responsive to request number 2" listed in the TPP Defendants' motion, and noted that these 14 Reports and Datasets are all "pre-baked" and accessible and Plaintiffs had made no showing that it would be burdensome to produce them. *Id*. at 38:20-39:22. Plaintiffs' counsel then spoke for several more minutes reiterating their arguments regarding the disaggregation of data, but never disputed that MSPRC could produce all of the 14 Reports and Datasets, never argued that it would be burdensome to do so, and repeated the proposed compromise to produce all of the materials requested for one year and certain categories for two years. *Id*. at 39:23-43:1.

The Special Master then asked the TPP Defendants' counsel to further address Plaintiffs' proposal to produce "limited data," and the TPP Defendants' counsel

again noted that the request was seeking "14 specific data reports and 14 specific datasets over a limited period of time," and producing those 14 Reports and Datasets "over the full period of time versus producing it over a year or two, you're talking about essentially the same amount of efforts. So it is a limited amount of data, but it will enable our experts to undertake a comprehensive analysis." *Id*. at 45:16-22.

Following briefing and argument, the Special Master entered SMO 73 granting the TPP Defendants' Motion to Compel with respect to Request No. 2. The Special Master found, "The extent to which such payments [by third-party payors ("TPPs") for at-issue valsartan drugs] were offset by subsidies, reimbursements or rebates from CMS appears clearly relevant to the determination of actual damages sustained by the alleged contamination of the VCDs." SMO 73 at 3-4 (citing *In re Namenda Indirect Purchaser Antitrust Litig*., 115CV6549CMRWL, 2022 WL 3362429, at *11 (S.D.N.Y. Aug. 15, 2022)). The Special Master also specifically rejected MSPRC's argument that "aggregate" data are not relevant, holding: "The fact that the data are aggregated, and not produced on a per product basis, does not defeat the relevance of such data. Indeed, such data may be important in contesting damage calculations made by Plaintiff's experts." *Id*. at 4. Thus, the Special Master concluded: "Accordingly, MSPRC will be directed to produce **the documents reflecting the subsidies, reimbursements, and rebates** it received from CMS during the time period for which it is seeking damages." *Id*. (emphasis added).

After certifying classes, including a TPP Economic Loss Class and subclasses, the District Court entered CMO 32 on April 21, 2023, setting out a trial plan with MSPRC as plaintiff on behalf of four subclasses of the TPP Economic Loss Class, to hear claims of breach of express and implied warranty, fraud, and consumer protection against the TPP Defendants under various groupings encompassing the laws of 43 jurisdictions. CMO 32 § 1.0. CMO 32 ordered that MSPRC was to complete its rolling production by May 3, 2023. *See id*. § 3.0. CMO 32 also set a deadline of May 27, 2023 for the TPP Defendants to disclose their damages experts responding to the report of Plaintiffs' damages expert, Dr. Rena Conti. *Id*. § 8.1. The District Court subsequently modified that deadline to June 7, 2023 under CMO 32A, entered on April 27, 2023 [Dkt 2368]. CMO 32A § 8.1. The parties are also to "submit a schedule for deposing the damages experts" by June 7, 2023. *Id*. § 8.2.

As of May 3, 2023, MSPRC had produced only the two categories of Produced Documents in response to SMO 73. The TPP Defendants wrote to MSPRC's counsel and the Plaintiffs' Executive Committee ("PEC") on May 9, 2023, demanding production of the missing documents by Friday, May 12, 2023, and offering dates and time to meet and confer. *See* Letter from G. Ostfeld dated May 9, 2023, attached hereto as **Exhibit B**. MSPRC responded on May 12, 2023, refusing to producing any additional documents. *See* Letter from J. Mestre dated May 12, 2023, attached hereto as **Exhibit C**. The parties conducted a meet-and-

confer on May 16, 2023, during which Plaintiffs would not commit to produce the additional reports and datasets responsive to SMO 73. Accordingly, the TPP Defendants' counsel has in good faith conferred with MSPRC in an effort to obtain its compliance with SMO 73 and CMO 32 without court action, and those efforts have not been successful.

## **ARGUMENT**

### I.    **MSPRC Has Violated SMO 73 and CMO 32 by Failing to Timely Produce the Responsive Subsidy, Reimbursement, and Rebate Documents and Data It Was Ordered to Produce**

MSPRC has failed and refused to comply with SMO 73 and CMO 32. The May 3 deadline set by CMO 32 has passed, and MSPRC has not produced the substantial majority of the documents reflecting the subsidies, reimbursements, and rebates its assignors received from CMS during the time period for which it is seeking damages. Indeed, of the 14 Reports and Datasets, MSPRC had produced only the Produced Documents, consisting of a portion of its PDE data (but omitting PDE claims data for EmblemHealth for date of service year 2014 and all PDE data for ConnectiCare claims) and a handful of Excel spreadsheets reporting certain subsidies at the highest level of abstraction, while omitting all of the other 14 Reports and Datasets encompassed by Request No. 2. The following data and reports (the "Missing Production Materials") remain outstanding:

- Prescription Drug Event (PDE) data files for EmblemHealth for date of service year 2014

- PDE data files for ConnectiCare
- Monthly Membership Reports (MMR)
- Monthly Membership Summary Data Reports (MMSR)
- Monthly Membership Summary Data Files (MMSD)
- Plan Payment Reports (PPR)
- Plan Payment Report/Interim Payment Data Files (IPPR)
- Payment Records Reports
- Payment Reconciliation System (PRS) annual reports detailing the annual reconciliation based on PDE records
- Risk Adjustment System (RAS) Prescription Drug Hierarchical Condition Category (RxHCC) Model Output Data Files
- RAS RxHCC Model Output Reports
- Medicare Advantage Organization (MAO) 004 Reports – Encounter Data Diagnosis Eligible for Risk Adjustment
- COB-OHI files and COB-OHI Supplement Records, which include National Drug Codes (NDCs) submitted by Patient Assistance Programs (PAPs).

MSPRC has never disputed that the 14 Reports and Datasets, including all of the Missing Production Materials, are documents "reflecting the subsidies, reimbursements, and rebates" its assignors "received from CMS during the time period for which it is seeking damages." SMO 73 at 4. Thus, the Missing Production Materials fall within the plain language of SMO 73's mandate, and MSPRC's failure and refusal to produce the Missing Production Materials are a direct violation of SMO 73 and CMO 32.

The TPP Defendants sent a deficiency letter to MSPRC's counsel and the PEC on May 9, 2023, demanding production of the Missing Production Materials by May 12. *See* Ex. B. Prompt compliance is essential, because the TPP Defendants' damages expert reports are due on June 7, 2023, and the defense experts need time

to analyze the Missing Production Materials. Doing so is likely to require multiple weeks, as reflected by the 35-day period between the completion of MSPRC's rolling production (May 3) and the deadline for the TPP Defendants' damages expert reports (June 7). MSPRC's delinquent production is thus directly impeding expert discovery and progress towards the depositions of damages experts as ordered by CMO 32. The TPP Defendants also offered dates to meet-and-confer.

MSPRC responded on May 12, 2023. *See* Ex. C. It refused to produce any of the Missing Production Materials. Disregarding the plain language of SMO 73, as well as Request No. 2, the parties' briefs, and the arguments made by Plaintiffs' counsel at oral argument, MSPRC now asserts it has complied with SMO 73, insists it is not required to produce data "in the format that Defendants would have liked or the precise form to which Defendants believe they are entitled," and states that SMO 73 "didn't order the data to be produced on a specific form[.]" Ex. C at 1-2.

These contentions are simply false. SMO 73 is not ambiguous. It directs MSPRC to produce "the documents reflecting the subsidies, reimbursements, and rebates" its assignors received from CMS during the relevant time period. SMO 73 at 4. The Missing Production Materials indisputably fit this description. Nor was there ever any question as to their inclusion in Request No. 2. The request itself specifically sought all data and reports "reflecting subsidies, reimbursements, and rebates" received from CMS, including "standard reports and data available through

CMS … such as ***Monthly Membership Summary Reports, Plan Payment Reports, [and] Payment/Interim Plan Payment Records Reports***." [Dkt. 2178-1 at 2 (emphasis added)]. More than that, the TPP Defendants specifically listed the 14 Reports and Datasets in their Motion to Compel as the list of "standard reports and data" responsive to Request No. 2. [*Id*. at 7-8]. Further, the TPP Defendants repeatedly referenced these 14 Reports and Datasets as responsive at oral argument, without contradiction by MSPRC when it proposed its rejected "compromise" of one year of responsive reports and data. Rule 34 requires MSPRC to produce the responsive materials in its "possession, custody, or control," not the cherry-picked items it deems sufficient after being ordered to comply with Request No. 2. Fed. R. Civ. P. 34(a)(1). This is not a matter of failing to produce responsive documents or data in the format the TPP Defendants "would have liked," but rather a direct violation of the clear and unambiguous mandate of SMO 73.

MSPRC's excuses for its violations of SMO 73 have no merit. First, MSPRC points to the "excel sheets" it produced as part of its Produced Documents, which it claims "show[] all the payments that it received from CMS that could relate to the claims at issue." Ex. C at 2. MSPRC further asserts that the TPP Defendants "fail to identify what additional data they hope to glean from the fourteen specific forms that they identify in their letter" or "how that data would be any different from the data that MSPRC has already produced[.]" Ex. C at 2. The TPP Defendants are not

required, of course, to make yet another showing that the 14 Reports and Datasets are relevant; SMO 73 already decided that issue and ordered them produced.

Regardless, MSPRC's position is deeply disingenuous. As MSPRC is well aware, its "excel sheets" contain nowhere close to the same level of detail available in the 14 Reports and Datasets. The Excel sheets (which are designated confidential and therefore are not attached to this motion, but will be made available to the Special Master on request), present data at the highest and least useful level of abstraction. They contain only contract-level summaries of direct subsidies and certain other amounts at the broadest level of aggregation. They contain *no* beneficiary-level detail at all, such as hierarchical condition categories ("HCCs"), diagnosis codes, or beneficiary-specific direct subsidy payment amounts. These are the essential details necessary to perform the "disaggregation" that Plaintiffs themselves argued must be undertaken in order to render the subsidy, reimbursement, and rebate data relevant to damages. Oct. 27 Tr. at 30:7-15.

Plaintiffs' motives for violating SMO 73 are clear: they seek to protect their damages expert from criticism by depriving the TPP Defendants' damages experts of the very beneficiary-level data and detail necessary to demonstrate the relevance of the Medicare subsidies, reimbursements, and rebates to Plaintiffs' damages calculations, and the errors of Plaintiffs' damages expert in failing to account for them. That is invalid. MSPRC's obligation is to produce the responsive documents

"in the responding party's possession, custody, or control," not just the least useful and least informative iteration of responsive data that MSPRC is able to identify and is willing to supply in defiance of a court order. Fed. R. Civ. P. 34(a)(1).

Second, MSPRC asserts that "many" of the Missing Production Materials "would include data that the Court expressly held that MSPRC did not have to produce, such as highly confidential information related to the assignors' bids." Ex. C at 2. MSPRC never previously objected to producing any of the 14 Reports and Datasets on this basis and offers no explanation for it now. It is non-sensical. What SMO 73 held MSPRC did not have to produce was "CMS bids," comprised of all materials "submitted in connection with … bid submissions to CMS" for each contract year. SMO 73 at 2, 5. The Special Master specifically distinguished bid submissions, which deal with "*estimated* receipts and expenditures," from "what actually occurred, as opposed to what was estimated or projected to happen." *Id*. at 5-6 (emphasis in original). None of the Missing Production Materials deal with "estimated" or "projected" receipts or expenditures; they are all historical reports of "what actually occurred." The Missing Production Materials are the very records of "what was paid and what was reimbursed" that Plaintiffs' counsel has acknowledged to be relevant as "historical numbers" and "historical data." Oct. 27 Tr. at 22:14-19.

Third, MSPRC acknowledges it has not produced EmblemHealth PDE data for 2014, but asserts only that EmblemHealth "has provided all the PDE data that it

14

possesses for the claims at issue," and states "MSPRC cannot produce what does not exist." Ex. C at 1. Although that is undoubtedly true, it raises significant concerns as to why EmblemHealth retained and produced PDE data for 2013 and 2015 to 2017, but not 2014. EmblemHealth's failure to retain and produce relevant data requires more explanation to the TPP Defendants and the Court than a bare denial that the data and records exist.

Fourth, MSPRC misleadingly asserts that it is not required to produce PDE data for ConnectiCare, because SMO 73 relates to the claims "assigned to MSPRC" by two TPPs, EmblemHealth and Summacare. What MSPRC omits is the fact that ConnectiCare is a subsidiary of EmblemHealth, and Plaintiffs' own damages expert has *included* ConnectiCare's claims data and a calculation for ConnectiCare's damages as part of her damages calculation for the claims assigned to MSPRC by EmblemHealth. Plaintiffs cannot have it both ways. If ConnectiCare's claims are part of EmblemHealth's claims for purposes of calculating MSPRC's damages, then ConnectiCare's reports and data must be produced as part of EmblemHealth's production for purposes of evaluating EmblemHealth's damages calculation.

## II.    MSPRC's Violations Warrant an Order to Show Cause Why MSPRC Should Not Be Subject to Sanctions and Other Relief

MSPRC's violations of SMO 73 and CMO 32 support sanctions under Rule 37(b)(2)(A), which authorizes the Court to impose sanctions if a party "fails to obey an order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). Here, SMO

73 ordered MSPRC to provide discovery and CMO 32 set a deadline for MSPRC to do so. MSPRC violated both orders. Sanctions at the Court's disposal include, but are not limited to, "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "striking pleadings in whole or in part," "staying further proceedings until the order is obeyed," "dismissing the action or proceeding in whole or in part," or "treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." *Id*. Instead of or in addition to the foregoing sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Rule 37 sanctions "are available to the district court 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent[.]'" *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 84 (D.N.J. 2006) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). The Court "has broad discretion regarding the type and degree of sanctions it can impose," so long as the sanctions are "just and related to the claims at issue." *Id*. (citing *Estate of Spear v. Comm'r of*

16

*Internal Revenue Serv.*, 41 F.3d 103, 109 (3d Cir. 1994)). *See also Harris v. City of Philadelphia*, 47 F.3d 1311, 1330 (3d Cir. 1995).

Appropriate sanctions for MSPRC's violations of SMO 73 and CMO 32 include: (1) striking Plaintiffs' damages report and prohibiting Plaintiffs from presenting a damages calculation in reliance upon that report; (2) disqualifying MSPRC from serving as a class representative; (3) staying proceedings until MSPRC complies with SMO 73; (4) holding MSPRC in contempt for its failure to comply with SMO 73 and CMO 32; and (5) ordering MSPRC to pay the reasonable expenses, including attorney's fees, caused by its failure to comply with SMO 73 and CMO 32. Any or all of these sanctions are just and related to the claims at issue, insofar as MSPRC's failure to comply with SMO 73 has substantially prejudiced the TPP Defendants' ability to evaluate Plaintiffs' damages report, to prepare their responsive expert damages reports, and to comply with the deadlines set forth in CMO 32 for expert disclosures and depositions. In the first instance, however, MSPRC should be ordered to show cause why it should not be sanctioned for its violations of SMO 73 and CMO 32, the TPP Defendants can reply, and the Special Master and/or the Court may then take the issue up for resolution.

### III. The June 7, 2023 Deadline for the TPP Defendants' Damages Expert Reports and Schedule for Deposing Damages Experts Should Be Extended Until 35 Days After MSPRC Complies with SMO 73

MSPRC's violations of SMO 73 and CMO 32 also directly impact the

schedule set out by the District Court in CMO 32. As discussed above, under CMO 32, as modified by CMO 32A on April 27, 2023 [Dkt 2368], the TPP Defendants are required to "submit their response to the report of plaintiffs' damages expert Dr. Rena Conti" by June 7, 2023. CMO 32A § 8.1. The parties are also to "submit a schedule for deposing the damages experts" by June 7, 2023. *Id*. § 8.2.

For the reasons described above, MSPRC's failure to produce the Missing Production Materials has directly impacted the ability of the TPP Defendants' damages experts to complete their responses to Dr. Conti's damages report. In particular, the TPP Defendants' experts cannot complete their analysis regarding the impact of Medicare subsidies, reimbursements, and rebates upon Dr. Conti's damages calculations, because MSPRC's violation of SMO 73 and CMO 32 has deprived them of timely access to the reports and datasets necessary to this analysis.

If MSPRC had timely produced the Missing Production Materials by May 3, 2023, as directed by CMO 32, the TPP Defendants' experts would have had 35 days to analyze the materials and to incorporate them into their expert reports. Accordingly, to mitigate the prejudice created by MSPRC's violations, the TPP Defendants' deadline of June 7 to submit their responsive reports and to submit a schedule for deposing the damages experts should be extended until 35 days after MSPRC complies in full with SMO 73.

18

## CONCLUSION

For these reasons, and those discussed in the Motion, Defendants respectfully request that the Court enter an order requiring MSPRC to show cause why it should not be sanctioned under Rule 37(b)(2)(C) for its violations of SMO 73 and CMO 32, awarding the TPP Defendants their costs, including reasonable attorneys' fees, of bringing this motion, and granting such other and further relief as the Court deems necessary or appropriate.

Dated: May 16, 2023

Respectfully Submitted:

By: */s/ Gregory E. Ostfeld*
Victoria Davis Lockard
GREENBERG TRAURIG, LLP
Lori G. Cohen
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Road, N.E.,
Suite 2500
Atlanta, Georgia 30305
(678) 553-2100
(678) 553-2386 (facsimile)
CohenL@gtlaw.com
LockardV@gtlaw.com
HarkinsS@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com

Liza M. Walsh
Christine Intromasso Gannon

Walsh Pizzi O'Reilly Falanga LLP
Three Gateway Center
100 Mulberry Street
15th Floor
Newark, NJ 07102
Tel.: (973) 757-1100
Fax: (973) 757-1090
lwalsh@walsh.law
cgannon@walsh.law

*Attorneys for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Actavis Pharma, Inc.,
and Actavis LLC*

Jessica Davidson (DC Bar No. 457021) (Admitted to Practice in Maryland and the District of Columbia; Not Admitted in New York)
*Liaison Counsel for Manufacturer Defendants*
Allison M. Brown
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2588
Facsimile: (917) 777-2588
jessica.davidson@skadden.com
allison.brown@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Nina R. Rose
1440 New York Ave., N.W.
Washington, D.C. 20005
Tel.: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

20

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC*

KIRKLAND & ELLIS LLP
Devora W. Allon
Alexia R. Brancato
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
Devora.allon@kirkland.com
Alexia.brancato@kirkland.com
*Attorneys for Torrent Pharmaceuticals Ltd. and Torrent Pharma Inc.*

## <u>AFFIDAVIT OF COMPLIANCE WITH LOCAL RULE 37.1(b)(1)</u>

Pursuant to Local Rule 37.1(b)(1), I hereby certify that on May 16, 2023, the TPP Defendants met and conferred with counsel for MSPRC in a good faith effort to resolve by agreement the issues raised in the instant motion without the intervention of the Court, and the parties have been unable to reach agreement. I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 16, 2023                                   Respectfully Submitted:

By: */s/ Gregory E. Ostfeld*
Gregory E. Ostfeld

## <u>CERTIFICATE OF SERVICE</u>

I, Steven M. Harkins, an attorney, hereby certify that on May 16, 2023, I caused a copy of the foregoing document to be served on all counsel of record via CM/ECF.

*/s/ Steven M. Harkins*
Steven M. Harkins
