# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Hon. Robert. B. Kugler |
| This Document Relates To:<br>*All Actions* | Civ. No. 19-2875 (RBK/JS) |

**PLAINTIFFS' NOTICE OF VIDEOTAPED DEPOSITION TO RETAIL PHARMACIES REGARDING LOSARTAN AND/OR IRBESARTAN ECONOMIC LOSS CLAIMS PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:

**BETH A. BEHRENS**
BARNES & THORNBURG LLP
11 S. MERIDIAN ST.
INDIANAPOLIS, IN 46204
317-231-6495
Fax: 317-231-7433
Email: Beth.Behrens@btlaw.com

*Counsel for Defendant CVS Pharmacy, Inc. and CVS Health Co.*

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the deposition upon oral examination of one or more designated corporate representatives with regard to the topics set forth on Exhibit A attached hereto. The deposition(s) will commence on a date to be determined, at 9:00 a.m., at a location to be determined, and continue from day to day as needed.

The deposition(s) will be taken upon oral examination before an officer authorized to administer oaths and will continue from day to day, until completed. Testimony given during the deposition will be recorded by sound video recording and stenographic means.

DATED this 22nd day of May, 2023

**PLAINTIFFS' CO-LEAD COUNSEL**

By: /s/ *Adam M. Slater*
    Adam M. Slater
    103 Eisenhower Parkway, Suite 207
    Roseland, New Jersey 07068
    Telephone: 973-228-9898

***Attorneys for Plaintiffs***

# CERTIFICATE OF SERVICE

I, Marlene J. Goldenberg, hereby certify that on May 22, 2023, I caused true and correct copies of the foregoing to be transmitted via ECF to all counsel having registered an appearance on ECF, with courtesy copies served on counsel for Defendants, and Defendants' liaison counsel, via email.

DATED this 22nd day of May, 2023.

**NIGH GOLDENBERG RASO & VAUGHN PLLC**

By: /s/ *Marlene J. Goldenberg*
Marlene J. Goldenberg
14 Ridge Square NW
Third Floor
Washington, DC 20016
Telephone: (202) 792-7927

*Attorneys for Plaintiffs*

EXHIBIT A

**"Active Pharmaceutical Ingredient" ("API")** is defined as any substance that is intended for incorporation into a finished drug product and is intended to furnish pharmacological activity or other direct effect in the diagnosis, cure, mitigation, treatment, or prevention of disease, or to affect the structure or any function of the body. Active pharmaceutical ingredient does not include intermediates used in the synthesis of the substance. 21 C.F.R. § 207.1; see also 21 C.F.R. § 314.3.

**"API Manufacturer"** is defined as any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures the active pharmaceutical ingredient (API) for losartan or irbesartan.

**"Finished Dose Manufacturer"** includes any entity identified as a Defendant in Plaintiffs' Master Complaints that manufactures valsartan in a finished dosage form that is engaged in manufacturing, preparing, propagating, compounding, processing, packaging, repackaging, or labeling of losartan or irbesartan. The term "finished dose manufacturer" also includes entities who hold ANDAs.

**"Manufacturer Defendants"** includes API Manufacturers and Finished Dose Manufacturers including any subsidiaries or affiliated entities.

**"Communication(s)"** means the transmittal of information, in the form of facts, ideas, inquiries, documents or otherwise, and includes all transmissions of information received or transmitted by you, including correspondence, regardless of whether you are an author or addressee of such transmittal.

**"Documents"** includes, without limitations, any written, printed, typed, photostatic, photographic, recorded or otherwise reproduced or reproducible communication or representation (including attachments to mails), whether comprised of letters, words, numbers, pictures, sound or symbols, or any combination thereof, whether intended for internal use, dissemination to outside entities, or any combination thereof.

This definition includes copies or duplicates of documents contemporaneously or subsequently created that have any nonconforming notes or other markings. Without limiting the generality of the foregoing, the term "Document" includes, but is not limited to, correspondence, memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, working papers, summaries, statistical statements, financial statements, presentations, work papers, accounts, invoices, purchase orders, ledgers, journals, book of accounts, local records, reports and/ or summaries of investigation, trade letters, press releases, comparisons, books, calendars, calendar entries or invitations, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, diagrams, instructions, notes or minutes of meeting, or other communications of any type, including inter-office and intra office communication, questionnaires, surveys, charts, graph, photographs, recordings, tapes, back-up tapes, discs, data cells, printouts, all other data compilations from which information can be obtained (translated, if necessary, into usable form). Such reference to documents includes originals and copies, microfilms and transcripts made, recorded, produced or reproduced by any and every means. "Documents" also includes the content of any applicable computer database. For purposes of these discovery requests, "Documents" shall refer only to centrally stored, noncustodial data maintained by the retailer pharmacy in the ordinary course of business and available via reasonable search of available records

and in a reasonably accessible format, and shall not refer to documents or data maintained solely by individual stores or pharmacies, or to emails or custodial data held by individual employees of the Retail Pharmacy Defendants.

**Relevant Time Period:** Unless otherwise specified, the relevant time period applicable to all requests is January 1, 2011 through December 31, 2019.

**"Retail Pharmacy Defendants"** refers to any and all entities listed by name as "Retail Pharmacy Defendants" in Plaintiffs' Master Complaints, including any agents or predecessor entities.

**"TPP"** refers to Third Party Payors, including health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third party payors, and any other health benefit provider in the United States of America and its territories.

**"Losartan" or "LCDs"** means any drug with losartan as an active ingredient. For purposes of these Requests, "Losartan" or "LCDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Irbesartan" or "ICDs"** means any drug with irbesartan as an active ingredient. For purposes of these Requests, "Irbesartan" or "ICDs" is limited to only those drugs with a National Drug Code (NDC) associated with any of the Manufacturer Defendants identified in Plaintiffs' Master Complaints.

**"Recalled Product"** means any drug with losartan or irbesartan as an active ingredient, as well as all finished drug formulations of losartan or irbesartan, including any losartan-containing drug or irbesartan-containing drug, that was subject to a voluntary or mandatory recall, to the extent identifiable from Documents kept by the Retail Pharmacy Defendant(s) in the ordinary course of business.

**"You," "your" or "defendant"** shall be used interchangeably and refers to the parties to which these requests are directed.

**"Drug Supply Chain Security Act"** refers to Pub. L. 113-54 and regulations promulgated thereunder.

**"Wholesaler Defendants"** refers to Amerisource Bergen Corporation, Cardinal Health, Inc., or McKesson Corporation, as identified in Plaintiffs' Master Complaints, including any agents, employees, or predecessor entities, to the extent known to the Retail Pharmacy Defendants.

**"FIFO"** means a first-in, first-out inventory method.

**"LIFO"** means a last-in, first-out inventory method.

**"JIT"** means just-in-time inventory method.

**TOPICS**

1. The testing and any other evaluation, of the LCDs and ICDs for impurities, including nitrosamines and/or the results of any such testing or evaluation, whether performed by you or provided or available to you.

2. Your understanding of the reason(s) for the recall of the LCDs and ICDs.

3. Your communications with any Manufacturer, Wholesaler, repackager, or relabeler Defendant relating to the nitrosamine contamination and recall of the LCDs and ICDs.

4. Instructions you received from the Manufacturer, Wholesaler, repackager, or relabeler Defendants regarding the nitrosamine contamination and recall of the LCDs and ICDs, and the contents of communications directed to pharmacy customers regarding the nitrosamine contamination and recalls.

5. Representations, warranties, and other product information you received from any Manufacturer, Wholesaler, repackager, or relabeler Defendants regarding the LCDs and ICDs.

6. Representations, warranties, and other product information you provided to any consumer, TPP, Pharmacy Benefit Manager, or TPP representative, with regard to the LCDs and ICDs.

7. Your retention, sequestration, return or destruction of any LCDs and ICDs as a result of nitrosamine contamination, before or after their recall.

8. Your sourcing of the LCDs and ICDs.

9. The information you have maintained or had access to, regarding NDC, lot, batch, quantity, and expiration date for the LCDs and ICDs sold by you to consumers in the United States.

10. The sales data produced by you in this litigation, including the quantity/units, sale price, and any rebates, reimbursements, or subsidies provided, with regard to the sale of LCDs and ICDs in the United States.

11. The purchase data produced by you in this litigation.

12. Your policies and practices for seeking and issuing refunds or credits for any LCDs or ICDs returned to or returned by you following their recall, including whether you sought any such refunds or credits, whether you issued any such refunds or credits, and whether and how any such refunds or credits were recorded by you, and the substantive data thereof.

13. Your final inventory management policies, procedures, and practices (e.g., FIFO, LIFO, JIT, turnover ratio, replenishment/re-order triggers), if any, pertinent to the LCDs and ICDs.

14. Those provisions in your purchase and/or supply agreements with the Manufacturing, Wholesaler repackager, and relabeler Defendants concerning representations and warranties, quality agreements and standards, auditing and inspection rights, recall and return rights or requirements, and stock life and purchasing triggers, if any.

15. Those indemnity provisions produced by you in response to Plaintiffs' Requests for Production of Documents to Retailer Defendants

16. Indemnification requests made by you, or indemnification requests of you, in connection with the LCDs and ICDs.

17. All applicable insurance policies which provide coverage for part or all of the claims in the above-captioned MDL.

18. Sales information broken down by pill count, price, month and year, state, customer, and NDC code for all ICDs and LCDs sold during the Relevant Time Period.

19. Purchase data broken down by pill count, price, month and year, state, supplier, and NDC code for all ICDs and LCDs purchased during the Relevant Time Period.

20. Pricing information - Purchases: The price You paid for each ICD and LCD, broken down by purchase quantity, price, month and year, state, customer, and NDC code for all ICDs and LCDs purchased during the Relevant Time Period.

21. Pricing information - Sales: The price at which You sold each ICD and LCD, broken down by quantity, price, month and year, state, customer, and NDC code for all ICDs and LCDs sold during the Relevant Time Period.

22. Profit information – Your profits from the sale of ICDs and LCDs, including quantity, sale price, and all related costs and expenses, Profit and Loss statements, and any internal analysis of profits.