# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert R. Kugler, District Court Judge<br><br>Oral Argument Requested |

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPROVAL OF <u>FORM AND MANNER OF CLASS NOTICE</u>

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...............................................................................................1

ARGUMENT ....................................................................................................5

I.    PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE INDIVIDUAL NOTICE TO ALL CLASS MEMBERS WHO CAN BE IDENTIFIED THROUGH REASONABLE EFFORT.......................5

    A.  Plaintiffs Have Represented, and This Court Has Found, That the Individual Class Members of Each Class Are Identifiable...........6

    B.  The Class Notice Plan Fails to Direct Individual Notice to All Reasonably Identifiable Class Members.............................................10

II.   PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE THE BEST NOTICE PRACTICABLE TO THE TPP ECONOMIC LOSS CLASS........................................................................................16

III.  PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE THE BEST NOTICE PRACTICABLE TO THE CONSUMER ECONOMIC LOSS AND MEDICAL MONITORING CLASSES.......22

IV.   PLAINTIFFS' PROPOSED NOTICE IS DEFICIENT IN FORM. ........29

CONCLUSION ................................................................................................36

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Allura Fiber Cement Siding Litig.*,
    MDL No. 2886, 2021 WL 2043531 (D.S.C. May 21, 2021) .............................28

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d. 2015)..............................................................................11, 12

*Carlotti v. Asus Computer Int'l*,
    No. 18-cv-03369, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ......................28

*Carlough v. Amchem Prods., Inc.*,
    158 F.R.D. 314 (E.D. Pa. 1993).......................................................................24

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ............................................................................12

*Clay v. Cytosport, Inc.*,
    No. 3:15-cv-00165, 2020 WL 6361874 (S.D. Cal. Oct. 29, 2020) ...................28

*Cotter v. Checkers Drive-In Restaurants, Inc.*,
    No. 8:19-cv-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) ...................28

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).........................................................................14, 15, 23

*Forst v. Live Nation Entm't Inc.*,
    No. 14-2452, 2015 U.S. Dist. LEXIS 24112 (D.N.J. Feb. 27, 2015)................12

*Greenfield v. Villager Indus., Inc.*,
    483 F.2d 824 (3d Cir. 1973) ...............................................................4, 5, 15, 23

*Larson v. AT&T Mobility LLC*,
    687 F.3d 109 (3d Cir. 2012) ...................................................................*passim*

*In re Niaspan Antitrust Litig.*,
    464 F. Supp. 3d 678 (E.D. Pa. 2020)................................................................12

*In re Niaspan Antitrust Litig.*,
No. 21-2895, 2023 U.S. App. LEXIS 11023 (3d Cir. Apr. 24, 2023) ................................................................................................10

*In re Prudential Ins. Co.*,
148 F.3d 283 (3d Cir. 1998) ...............................................................2

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020)........................................................28

*In re Surescripts Antitrust Litig.*,
No. 1:19-cv-06627 (N.D. Ill.), Doc. <u>175</u> ...................................19, 20

*Thomas v. NCO Fin. Sys.*,
No. 00-5118, 2002 U.S. Dist. LEXIS 14157, 2002 WL 1773035 (E.D. Pa. July 31, 2002)..................................................................11

*In re Wawa Inc. Data Securities Litigation*,
No. 19-6019, 2021 U.S. Dist. LEXIS 142025, 2021 WL 3276148 (E.D. Pa. July 30, 2021)................................................................14, 15

*Wisconsin v. Indivior Inc. (In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.)*,
Case No. 13-MD-2445, 2021 U.S. Dist. LEXIS 166675, 2021 WL 3929698 (E.D. Pa. Sept. 2, 2021) .............................................*passim*

**Other Authorities**

21 C.F.R. § 207.33(a)................................................................34

Fed. R. Civ. P. 23 ................................................................*passim*

Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ......................27

*Manual for Complex Litigation, Fourth* § 21.31 (2004) ..........................................1

U.S. Census Bureau, *Computer and Internet Use in the United States: 2018* (April 2021), available online at <u>https://www.census.gov/content/dam/Census/</u> (last accessed May 21, 2023) ................................................................27

Defendants' Executive Committee, on behalf of the undersigned Defendants, submit this memorandum of law in opposition to Plaintiffs' Motion for Approval of Form and Manner of Class Notice [Doc. 2375] (the "Class Notice Plan").

## INTRODUCTION

Plaintiffs' Class Notice Plan fails to perform its most essential function— giving absent class members notice of their inclusion in a class and an opportunity to participate or to opt out. As the Federal Judicial Center has recognized:

> Notice is a critical part of class action practice. It provides the structural assurance of fairness that permits representative parties to bind absent class members. In a Rule 23(b)(3) class, notice conveys the information absent class members need to decide whether to opt out and the opportunity to do so. In all class actions, notice provides an opportunity for class members to participate in the litigation, to monitor the performance of class representatives and class counsel, and to ensure that the predictions of adequate representation made at the time of certification are fulfilled.

*Manual for Complex Litigation, Fourth* § 21.31 at 285 (2004) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 627 (1997)).

Rule 23(c)(2)(B) imposes strict notice requirements in line with these weighty concerns, requiring that "[f]or any class certified under Rule 23(b)(3) … the court **must direct** to class members the ***best notice that is practicable*** under the circumstances, including ***individual notice to all members who can be identified*** through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (emphases added). Class notice has constitutional implications. This Court "obtains personal jurisdiction over

the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard and the opportunity to exclude themselves from the class." *In re Prudential Ins. Co.*, 148 F.3d 283, 305 (3d Cir. 1998). Thus, to "satisfy the due process requirements of the Fifth Amendment," class notice must afford "reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class[.]" *Id*. at 306.

Plaintiffs' Class Notice Plan does not meet these requirements.

***First***, the Class Notice Plan does not give individual notice to all TPP and consumer class members identifiable through reasonable effort. Quite the opposite, it specifically elects ***not*** to give individual notice to millions of class members that Plaintiffs previously told the Court are identifiable. Plaintiffs represented at the class certification stage that they could identify all or virtually all class members for each class based on readily available electronic records. The Court relied on Plaintiffs' representations and the declaration of their expert, Laura Craft, in granting class certification. Yet, the Class Notice Plan now conspicuously fails to employ Craft's methods to identify class members and to provide them with individual notice.

***Second***, the Class Notice Plan is facially defective with respect to the TPP Economic Loss Class. Rather than employing Craft's methods—which involve using data from pharmacy benefit managers ("PBMs") and retail pharmacies to identify class members—Plaintiffs propose to use a pre-packaged "proprietary"

mailing list purchased by their proposed class administrator, Angeion Group, LLC ("Angeion") and used in separate litigation. That list consists almost entirely of entities and individuals that demonstrably *are not members* of the TPP Economic Loss Class, primarily pharmacies, drug stores, and their employees. Giving notice to these entities and persons does not provide individual notice to the members of the TPP Economic Loss Class. The Class Notice Plan will create confusion among the tens of thousands of *non-class* recipients receiving notice, while failing to afford any *class* members with notice or an opportunity to be heard or opt out.

*Third*, the Class Notice Plan is also facially defective with respect to the Consumer Economic Loss and Medical Monitoring Classes. For these two classes, Plaintiffs forego individual notice altogether in favor of a proposed digital media campaign. *See* Declaration of Steven Weisbrot, Esq. [Doc. 2375-4] ("Weisbrot Decl.") ¶ 23. That is incompatible with Rule 23(c)(2)(B) and Third Circuit precedent, which require individual notice where the class members are reasonably identifiable—as Plaintiffs asserted they are here. Even if notice by publication were an adequate substitute (though it is not), Plaintiffs' omission of print advertising from their proposal is an additional defect, as it ensures notice will not be received by the material percentage of class members who are not online or rarely online.

*Fourth*, Plaintiffs' proposed notice is deficient in form. Rule 23(c)(2)(B) contains a number of elements that must be clearly and concisely stated in the notice,

including, *inter alia*, the nature of the action, the class definition, the class claims, issues, or defenses, the right to enter an appearance through an attorney, the right to opt out, and the time and manner to opt out. *See* Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs' notice forms do not meet these requirements in a variety of ways. They lump all classes together without differentiating their claims, issues, or defenses. They use capitalized, defined terms without telling the recipients what they mean. They do not provide correct class definitions or inform recipients of the correct classes or subclasses to which they belong. They do not provide an online opt-out mechanism. And they use facially insufficient short-form notices and banner ads.

Because a class action "has a formidable, if not irretrievable, effect on substantive rights," it "can comport with constitutional standards of due process only if there is a ***maximum opportunity*** for notice to the absentee class member"—a principle embodied in the "best notice practicable" standard of Rule 23(c)(2)(B). *Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 831 (3d Cir. 1973) (emphasis added). "*[P]ro forma* gestures will not suffice." *Id*. at 834. Moreover, although "[r]esponsibility for compliance" with class notice requirements rests "especially upon counsel for the class" owing to their "fiduciary obligations to those not before the court," the "ultimate responsibility" is committed to this Court as the "guardian

4

of the rights of the absentees[.]" *Id*. at 832.[1] Defendants respectfully submit the Court should exercise its role as guardian of the rights of absent class members by requiring Plaintiffs to do what they said they could—identify the members of each class and provide them with individual, adequate notice.

## ARGUMENT

### I. PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE INDIVIDUAL NOTICE TO ALL CLASS MEMBERS WHO CAN BE IDENTIFIED THROUGH REASONABLE EFFORT

Plaintiffs' Class Notice Plan is deficient on its face because it does not even attempt to give individual notice to all reasonably identifiable class members. The text of Rule 23(c)(2)(B) is clear: "For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[2] The Third Circuit has

---

[1] Class notice also impacts any class judgment in this case. Under Rule 23(c)(3)(B), for Rule 23(b)(3)-certified classes, the judgment "[w]hether or not favorable to the class … must … include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3)(B).

[2] Plaintiffs moved for certification of the TPP and Consumer Economic Loss Classes under Rule 23(b)(3) and for certification of the Medical Monitoring Class under Rules 23(b)(2) and (b)(3). *See* Doc. 1748 at 1; Doc. 1749 at 1; Doc. 1750 at 2. The Court granted each of Plaintiffs' motions. *See* Doc. 2261 at 5; Doc. 2262 at 4. Because all three classes include a certification ruling under Rule 23(b)(3), the individual notice requirements of Rule 23(c)(2)(B) apply to all three classes. *See Wisconsin v. Indivior Inc. (In re Suboxone (Buprenorphine Hydrochloride &*

5

adopted the "straightforward" rule that "[a]ctual notice must be given to those whose identity could be ascertained with reasonable effort." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 126 (3d Cir. 2012) (quoting *Greenfield*, 483 F.3d at 126). Thus, "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Id.* at 128 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974)).

Plaintiffs' Class Notice Plan indisputably fails to give individual notice to all class members who can be identified through reasonable effort—or even to all class members ***already known*** to Plaintiffs. After persuading this Court at the class certification stage that all or virtually all class members of each class are identifiable, Plaintiffs have now proposed a Class Notice Plan that improperly deprives these identifiable class members of the individual notice to which they are entitled.

### A.    Plaintiffs Have Represented, and This Court Has Found, That the Individual Class Members of Each Class Are Identifiable

Plaintiffs have never argued at any stage of this case that they lack the reasonable ability to identify all or virtually all of the members of all three classes certified by the Court. To the contrary, at the class certification stage, Plaintiffs represented to the Court that all class members of each class are readily identifiable using conveniently available data sources. *See* Doc. 1748 at 56-57 (stating that

---

*Naloxone) Antitrust Litig.)*, Case No. 13-MD-2445, 2021 U.S. Dist. LEXIS 166675, *25-26, 2021 WL 3929698 (E.D. Pa. Sept. 2, 2021).

6

"[p]rescription pharmaceutical class members are ***particularly identifiable*** … because an abundance of business records and data exists to track these purchases" and that patient-level pharmacy data "is ***sufficient to identify virtually all*** Consumer EL Class Members") (emphases added); Doc. 1749 at 15-16 (stating that Plaintiffs "can reliably identify" TPP Economic Loss Class members "[b]y referencing ***readily available***, detailed data sources used in the data-rich pharmaceutical industry" and that "[a]ll or nearly all of the industry data necessary to identify Class membership are ***conveniently concentrated*** among a handful of PBMs" using "standardized fields") (emphases added); Doc. 1750 at 9 (stating that Medical Monitoring Class members "can be determined by examining pharmacy and prescription records").

Plaintiffs supported their representations by citing their ascertainability expert, Laura Craft, who sought to demonstrate that Plaintiffs have or can obtain all the information they need to identify both third-party payor ("TPP") and consumer class members based on the National Drug Codes ("NDCs") associated with each prescription drug at issue, using pharmacy or PBM data. *See* Declaration of Laura Craft [Doc. 1748-2] ("Craft Decl.") ¶¶ 9, 12, 16-32, 36-52, 53-71. Craft opined that "detailed transactional records" maintained by pharmacies and "[e]quivalent data" obtainable "from the major PBMs who are highly concentrated" are adequate "to ***identify TPP and consumer Class Members***." *Id*. ¶ 12 (emphasis added). She further opined that "comprehensive data obtained from IQVIA … ***identifies by name***

7

*thousands of TPPs* that paid for these purchases[.]" *Id.* (emphasis added). She added that "data elements" contained in an "industry standard format" from the National Council for Prescription Drug Programs ("NCPDP") can be used "to *identify consumer and TPP Class Members*" and link individual transactions to them. *Id.* ¶¶ 24-26 (emphasis added). Craft further opined that claims data and pharmacy data *already produced* in this case demonstrate that Plaintiffs can "identify the patient" for every prescription transaction at issue and to identity their names and addresses. *Id.* ¶¶ 43-44, 49-50.

This Court was persuaded by Plaintiffs' arguments and Craft's opinions.[3] It found "of singular importance" the data sets Craft identified, including pharmacy data, PBM data, IQVIA data, and NCPDP standardized data. Doc. 2261 at 25-26. The Court found that, "if the data exist to *reasonably identify class members*," then even "formidable" challenges linking "disparate kinds of data to *more accurately name* all possible, putative members" should not prevent a finding of ascertainability. *Id.* at 26-27 (emphases added). The Court held:

> [Plaintiffs have] identified the records they need, where they are located, and how to use them to verify subclass members. Thus, the takeaway from *RealPage* is that ascertainability for the ConEcoLoss class turns not on if the transaction records can or will "match" up, but on how these records can match up so that plaintiffs may determine with sufficient precision both the included ConEcoLoss class members,

---

[3] Defendants fully reserve, and nothing herein waives any of, Defendants' arguments previously asserted against class certification under Rule 23.

the excluded individual consumers, and the members in subclasses. It is beyond clear that administratively feasible data can come from many sources, in many forms or formats, and containing different fields manipulated by different software. * * * Plaintiffs' expert Laura Craft, PhD, provided in her Class Certification Report an example that certain of these data, particular from Pharmacies, can be matched to identify a set of ConEcoLoss putative class members.

Doc. 2261 at 28 (emphases in original).

The Court made similar findings for the other two classes. With respect to the

TPP Economic Loss Class, the Court found:

[I]t appears relatively uncomplicated for plaintiffs to have arrived at a methodology that identifies a ***definitive list of TPPs who paid for U.S. prescriptions*** during the relevant time period. Most of these data are available from the records of the TPPs or their agents who managed TPP drug reimbursements, and/or from the Pharmacies, and/or from the [PBM] who worked with the TPPs and/or their PBM agents, all of which worked individually or separately to establish drug formularies and reimbursement calculi. Such formularies ***coupled with Pharmacy records of VCD transactions coupled with Iqvia data*** (discussed supra) go a considerable way in developing a reliably and reasonably objective methodology of ascertaining TPPEcoLoss class members.

*Id*. at 41 (emphases added).

As to the Medical Monitoring Class, the Court accepted Plaintiffs' reliance on "the pharmacy and prescription records of filled VCD prescriptions, especially on the unique 10-digit NDC code presented in those records which tags a specific drug product," and Craft's report "which showed how to use such data to identify ConEcoLoss members." *Id*. at 67-68. The Court also found the lifetime cumulative threshold criterion sufficiently objective to ascertain class members. *Id*. at 68-69.

9

Thus, Plaintiffs themselves have affirmatively represented—and this Court has agreed—that the class members in all three certified classes "can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs' Class Notice Plan does not argue otherwise; it does not even assert, much less attempt to show, that Plaintiffs lack the ability to identify all or virtually all class members in all three classes through reasonable effort. Nor could Plaintiffs do so without jeopardizing the Court's determination of ascertainability and necessitating a reevaluation of the class certification order.[4] The necessary starting point in evaluating the sufficiency of the Class Notice Plan, therefore, is Plaintiffs' position that the class members in all three classes are reasonably identifiable.

## B. The Class Notice Plan Fails to Direct Individual Notice to All Reasonably Identifiable Class Members

Having represented to the Court that they can reasonably identify the class members and having secured the Court's agreement on that point in granting class certification, Plaintiffs cannot bait-and-switch now by proposing something less

---

[4] Notably, the Third Circuit recently affirmed denial of class certification for lack of ascertainability with respect to a putative TPP class in an antitrust suit in which Craft proposed a similar methodology to ascertain class members, holding, *inter alia*, that Craft's methods failed to identify end-payors for purchases and employed unreliable data matching techniques. *In re Niaspan Antitrust Litig.*, No. 21-2895, 2023 U.S. App. LEXIS 11023, at *40-49 (3d Cir. Apr. 24, 2023). If Plaintiffs are now saying they cannot employ Craft's methodology to identify class members, that raises serious questions regarding the veracity of Craft's submission to the Court, and thus Plaintiffs' showing of ascertainability in reliance on Craft's opinions.

than individual notice. "The requirement that individual notice be sent to all class members whose names and addresses may be ascertained with reasonable efforts is ***mandatory***." *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 U.S. Dist. LEXIS 14157, *19-20, 2002 WL 1773035 (E.D. Pa. July 31, 2002) (emphasis added) (citing *Eisen*, 417 U.S. at 175-76) (rejecting notice by publication to class of 2,250,000 despite cost of providing individual notice to ascertainable class members)). The Third Circuit is "stringent in enforcing the individual notice requirement." *Larson*, 687 F.3d at 126 (3d. Cir. 2012) (citing *Greenfield*, 483 F.2d at 832); *see also Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d. 2015) (same).

Plaintiffs' Class Notice Plan proposes to do exactly what the text of Rule 23(c)(2)(B) and five decades of governing precedent disallow—bypass mandatory individual notice to identifiable class members in favor of notice by publication. Plaintiffs assert in conclusory fashion that they "do not have access to information sufficient to be able to give individual mailed notice" to the Consumer Economic Loss and Medical Monitoring Classes. Class Notice Plan at 4. Plaintiffs' own past words and submissions belie this assertion. *See* § I.A, supra.

Plaintiffs already told the Court that the class members are "particularly identifiable," that they can identify "virtually all" class members, and that the necessary data sources are "readily available" and "conveniently concentrated." 1748 at 56-57; Doc. 1749 at 15-16. Through Craft, Plaintiffs pointed this Court to

11

pharmacy data, PBM data, IQVIA data, and NCPDP-standard data, including data already produced and in Plaintiffs' possession, as detailed, comprehensive, standardized, and concentrated datasets Plaintiffs already have or can readily obtain and use to identify TPP and consumer class members. Craft Decl. ¶¶ 12, 16, 24-26, 43-44, 49-50. This Court agreed, finding that the data sets identified by Craft would allow Plaintiffs to "reasonably identify" and "more accurately name" the class members, and that Plaintiffs had identified "the records they need, where they are located, and how to use them to verify" class membership. Doc. 2261 at 25-28.

Plaintiffs cannot simply ignore their position or this Court's holding on the ascertainability of class members now that the time has come to provide class notice. The "ascertainability requirement serves several important objectives," including "protect[ing] absent class members by facilitating the **best notice practicable** under Rule 23(c)(2) in a Rule 23(b)(3) action." *Carrera v. Bayer Corp.*, 727 F.3d 300, 305-06 (3d Cir. 2013) (emphasis added) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d. Cir. 2012)); *see also Byrd*, 784 F.3d at 162 n. 5 (same); *Forst v. Live Nation Entm't Inc.*, No. 14-2452, 2015 U.S. Dist. LEXIS 24112, at *14 (D.N.J. Feb. 27, 2015) (similar); *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 707 & n.5 (E.D. Pa. 2020) (rejecting plaintiff's assertion that ascertainability "is not required for facilitating the best notice practicable pursuant to Rule 23(c)(2)"). After forcefully and successfully insisting they can identify the members of the Consumer

Economic Loss and Medical Monitoring Classes, Plaintiffs must now fulfill their commitment to the Court and the classes by completing the identification of absent class members and providing individual notice to them.

Not only have Plaintiffs failed to carry out the methods they proposed at the ascertainability stage to identify class members, their Class Notice Plan does not even incorporate individual notices to class members **already known** to Plaintiffs, or those whose identities Plaintiffs are **currently seeking** to obtain. Class representatives MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Association ("MADA") have both already produced claims data disclosing tens of thousands of consumer class members by name. MSPRC is in possession of similar claims data for dozens of other assignors. Plaintiffs are also already in possession of IQVIA data, which, according to Craft, identifies "thousands of TPPs" by name. Craft Decl. ¶ 12. Moreover, the Pharmacy Defendants have already produced dispensing data for all of their at-issue valsartan transactions, and have agreed to produce the readily available names and addresses of the consumers corresponding to the dispensing data within 60 days of entry of a HIPAA-qualified protective order. *See* Doc. 2408. Given the volume of class member names and addresses already in Plaintiffs' possession or soon to be delivered, the claim that Plaintiffs "do not have access" to information sufficient to give individual notice to most class members is implausible.

13

Plaintiffs' Class Notice Plan cannot satisfy due process where, as Plaintiffs' prior submissions attest, the class members can be reasonably identified. Publication notice "fail[s] to satisfy due process requirements" and is "not reasonably calculated to reach those who could be informed by other means at hand" where "names and addresses of members of the class are easily ascertainable." *Larson*, 687 F.3d at 126 (quoting *Greenfield*, 483 F.2d at 832; *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950)). "[E]ach class member who can be identified through reasonable effort ***must be notified***[.]"" *Eisen*, 417 U.S. at 176 (emphasis added); *see also Wisconsin v. Indivior Inc. (In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.)*, No. 13-MD-2445, 2021 U.S. Dist. LEXIS 166675, *25-26, 2021 WL 3929698 (E.D. Pa. Sept. 2, 2021) ("Where class members' identities and addresses are known or reasonably ascertainable, however, notice by publication alone—even if far reaching—fails to satisfy due process requirements since it is 'not reasonably calculated to reach those who could be informed by other means at hand.'") (quoting *Mullane,* 339 U.S. at 319).

Plaintiffs' reliance on *In re Wawa Inc. Data Securities Litigation*, No. 19-6019, 2021 U.S. Dist. LEXIS 142025, 2021 WL 3276148 (E.D. Pa. July 30, 2021), is misplaced. *See* Class Notice Plan at 4. Plaintiffs cite that case to argue that courts must "strike a balance" between "protecting the rights of absent class members and making Rule 23 workable." *Id*. Notably, however, *In re Wawa* involved various

14

methods of notice to a settlement class "chosen during the parties' negotiations ***to remedy the fact that Wawa has no other available means to identify or contact potential class members***[.]" 2021 U.S. Dist. LEXIS 142025, at *43-44 (emphases added). The court concluded it was "not necessary to send individual notices to an overinclusive group of people simply because the group contains some additional class members ***whose identities are unknown***." *Id*. at *46 (emphasis added). Thus, it applies only to circumstances where class members have been found ***not*** to be identifiable.

Nothing in that decision overrides the mandatory language of Rule 23(c)(2)(B) or allows the Court to adopt a purportedly "workable" solution in lieu of individual notice where, as here, Plaintiffs maintain the class members can be reasonably identified. Indeed, all precedent is to the contrary. *See, e.g., Eisen*, 417 U.S. at 175-76 (rejecting notice by publication to class of 2.25 million ascertainable individuals); *Greenfield*, 483 F.2d at 830-32 (holding notice by publication was insufficient where names and addresses of class members were identifiable); *In re Suboxone*, 2021 U.S. Dist. LEXIS 166675, at *16-24 (rejecting proposed publication notice plan that would have reached 80% of the class because class members were identifiable and individualized notice to identifiable class members is mandatory).

Because Plaintiffs' Class Notice Plan does not fulfill the straightforward and mandatory requirement of directing individual notice to all reasonably identifiable

class members, it fails under the plain text of Rule 23(c)(2)(B). The Court should reject the Class Notice Plan and order Plaintiffs to amend the plan to carry out their methodologies to identify the class members of each class and to direct individual notice to each class member identifiable through these methods.

## II.    PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE THE BEST NOTICE PRACTICABLE TO THE TPP ECONOMIC LOSS CLASS

Turning to the specifics of the Class Notice Plan with respect to each class, Plaintiffs' plan to provide individual notice to the TPP Economic Loss Class fails because Plaintiffs propose to use a patently unsuitable mailing list that would result in notice going to tens of thousands of entities and persons that are not members of the class—hundreds of whom are Defendants or their employees—and to few if any class members. Plaintiffs' Class Notice Plan does not use any of the data sources identified by Craft and approved by this Court to identify and provide individual notice to the TPP Economic Loss Class members. In lieu of the "definitive list of TPPs" contemplated by this Court's certification order, Doc. 2261 at 41, Plaintiffs propose to use a "proprietary third-party payor list" prepared by Angeion, which they say consists of "approximately 28,500 mailing addresses" of "drug stores, pharmacies, insurance companies, and health, welfare, and pension funds" (the "Mailing List").[5] Weisbrot Decl. ¶ 16. Plaintiffs propose to supplement this list "to

---

[5] Plaintiffs have provided a copy of the Mailing List to Defendants for analysis, designated "Attorneys' Eyes Only," and subsequently consented to sharing the

the extent Plaintiffs are able to obtain contact information for [TPPs] from Defendants," including through "discovery requests by class counsel[.]" Class Notice Plan at 4; Weisbrot Decl. ¶ 16. Neither the Mailing List nor Plaintiffs' proposed supplementation, however, conforms to Rule 23(c)(2)(B)'s requirement of individual notice to all reasonably identifiable class members.

The Mailing List is ill-suited to provide individual notice to the members of the TPP Economic Loss Class, because it contains no TPPs, but is instead populated with pharmacies, drug stores, and employees of pharmacies and drug stores. *See* Fish Decl. ¶¶ 7-21. These are not members of the TPP Economic Loss Class. As this Court made clear in its class certification order, the TPP Economic Loss Class members are "*insurers* who paid for/reimbursed the [Consumer Economic Loss Class] members for their [valsartan-containing drugs] according to the *health care insurance policy* of the [Consumer Economic Loss Class] member[.]" Doc. 2261 at 36 (emphases added). That comports with Plaintiffs' definition of TPPs as "*health care benefit providers*, such as an employer's *insurance company* or a *health and welfare benefit plan* providing health care benefit to employees or beneficiaries." Doc. 1749 at 2 (emphases added). Plaintiffs excluded from their class definition

_____

Mailing List with an expert, Mark A. Fish of FTI Consulting. Because the Mailing List has been designated "proprietary" and "Attorneys' Eyes Only," Defendants have not included it as an exhibit to this opposition, and have instead provided the Declaration of Mark A. Fish ("Fish Decl."), attached hereto as **Exhibit A**, analyzing its contents. The Mailing List will be made available at the Court's request.

"Defendants and affiliated entities" and PBMs. Doc. 1747-2 at 4. The TPP Economic Loss Class members, in short, are health care benefit providers, insurance plans, and benefit plans that pay for or reimburse part or all of the costs of consumers' prescription drug purchases. The class does not include pharmacies, drug stores, or intermediary entities like PBMs.

In stark contrast to this class definition, the Mailing List comprises pharmacies and drug stores and their employees. The Mailing List contains two tabs, the first of which contains the names and mailing addresses of 28,592 entities, and the second of which contains the names and email addresses of 8,685 individuals. Fish Decl. ¶¶ 9-11. Mark A. Fish, a Senior Managing Director of FTI Consulting with nearly 30 years of healthcare industry experience focusing on health plans, compared the Mailing List to a representative sampling of publicly available databases of TPPs both during the relevant class period and more recently, to test whether the Mailing Last captures TPPs likely to be members of the TPP Economic Loss Class. *Id*. ¶¶ 9-16. His findings demonstrate a total absence of such TPPs in Plaintiffs' proposed Mailing List:

- Zero matches for TPPs were found on the Mailing List. Instead, the Mailing List appears to be comprised entirely of pharmacies and drug stores and their employees *Id*. ¶¶ 8, 19.

- Of the 28,592 entities listed in the first tab of the Mailing List, nearly 23,000 contain variations of "pharm," "drug," "Rx," "apothecary," "store," or "prescriptions" in their names. Another 400+ have the names of excluded Defendants or affiliates, like Walgreens, CVS, and Rite-Aid.

18

Only one entity name contains any variation of "insure" or "insurance," and it is an insurance agency and brokerage, not an insurer. *Id*. ¶ 19.

- Of the 8,685 email addresses in the second tab of the Mailing List, nearly 4,000 are associated with businesses containing variations of "pharm," "shop," or "store" in their names. Another 1,300 are specifically associated with excluded Defendants or affiliates, like Walgreens, CVS, and Rite-Aid. Further, all 8,685 entries on the "Email Data" tab list "Drug stores and proprietary stores" as the Line of Business. *Id*. ¶ 20.

- Of the 8,685 email addresses in the second tab of the Mailing List, nearly 3,000 have titles indicating employment at a pharmacy or drug store or in a health care setting, such as "pharmacist," "technician," "owner," "nurse," or "physician." There are other titles even further removed from an insurance setting, like "certified specialist of wine" and "liquor establishment manager." *Id*. ¶ 21.

Thus, using Plaintiffs' proposed Mailing List would give notice of the TPP Economic Loss Class to tens of thousands of entities and individuals that are ***not*** class members, while depriving all or nearly all actual class members of notice.

It is not difficult to discover how this error occurred. Plaintiffs' declarant, Mr. Weisbrot, describes the Mailing List as a "third-party payor list" but states that it includes "drug stores" and "pharmacies," and adds in a footnote that "[t]his notice method" was "utilized in the Surescripts Litigation." Weisbrot Decl. ¶ 16 & n.1. The referenced litigation, *In re Surescripts Antitrust Litigation*, specifically involved a settlement class of ***pharmacies***, not health care benefit providers, insurance plans, or benefit plans. The same *Surescripts* order cited by Mr. Weisbrot in his declaration defined the Settlement Class as, "All ***pharmacies*** in the United States and its territories who paid for e-prescriptions routed through the Surescripts network"

during the class period. *In re Surescripts Antitrust Litig.*, No. 1:19-cv-06627 (N.D. Ill.), Doc. 175 at 3 (emphasis added). As Angeion's declarant in that case confirmed, the "proprietary list of third-party payors" and email addresses used to give notice to the Settlement Class "primarily consist[s] of ***drug stores and pharmacies*** in the United States and its territories." *Id.*, Doc. 199 at 2, ¶ 4 (emphasis added).

In short, the Mailing List that Plaintiffs and their class administrator propose to use here was previously approved for use in a different case involving a markedly distinct class of pharmacies, which ***are not members*** of the TPP Economic Loss Class. Indeed, it appears Plaintiffs' proposed Mailing List in this case is nearly identical to the one used in the *Surescripts* case, which comprised "28,592 mailing addresses" (same number as here) and "8,684 email addresses" (compared to 8,685 here). *Id*. It is self-evident that giving notice to tens of thousands of pharmacies and drug stores, and their employees, none of whom are class members, while failing to give notice to the health care benefit providers, insurance plans, and benefit plans that are members of the TPP Economic Loss Class, does not fulfill the obligation to give individual notice to all reasonably identifiable class members.

Plaintiffs' proposal to "supplement" notice to the TPP Economic Loss Class with unspecified "contact information" for TPPs to be "obtain[ed] … from Defendants" via "discovery requests by class counsel," fails to cure the deficient Mailing List. First, there is nothing to "supplement"; for the reasons stated above,

the Mailing List contains few if any class members, and thus does not provide a meaningful starting point for individual notice.

Second, Plaintiffs have not propounded any "discovery requests" seeking "contact information" for TPPs. Plaintiffs' counsel acknowledged in a meet-and-confer on May 12, 2023, that Mr. Weisbrot was mistaken in his belief that there were discovery requests pending for TPP contact information, and clarified that Plaintiffs were only offering to add direct notice to any TPPs Defendants may voluntarily disclose for inclusion in the Class Notice Plan. But informal voluntary disclosure of contact information that Plaintiffs have never requested—and which Defendants cannot provide because they do not have knowledge of the TPPs that paid for the at-issue valsartan drugs, much less their contact information—does not conform to the requirement of "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Hoping for Defendants to supply TPP names and contact information they do not have is not "reasonable effort."

Third, Plaintiffs' hypothesized "supplement" does not conform to the methodology described by Craft and approved by this Court. Plaintiffs already told the Court how they would go about properly identifying the members of the TPP Economic Loss Class. Craft said this could be done using "electronic data," specifically, claims data, pharmacy data, PBM data, and, most notably, IQVIA data, which "identifies by name thousands of TPPs that paid for these purchases" and

reported them. Craft Decl. ¶¶ 8, 12-13, 17, 25-26, 29 n.30, 38, 45. Plaintiffs already have, at a minimum, the IQVIA data, as reflected in the declaration submitted by Plaintiffs' damages expert, Rena Conti, who has used the IQVIA data as the basis for her class-wide damages methodology. *See* Expert Declaration of Rena Conti, Ph.D. [Doc. 1748-1] ("Conti Decl.") ¶¶ 9, 55, 71 (describing Dr. Conti's use of IQVIA data "purchased by Plaintiffs' Counsel, requested at my behalf and with my direction"). When this Court certified the TPP Economic Loss Class, it specifically pointed to Plaintiffs' putative ability to use these data sources to compile "a definitive list of TPPs who paid for U.S. prescriptions." Doc. 2261 at 41.

What Rule 23(c)(2)(B) requires, therefore, is for Plaintiffs to execute Craft's methods, to compile their "definitive list" of TPP class members, and to give individual notice to these class members. The Court should reject the Class Notice Plan as to the TPP Economic Loss Class and order Plaintiffs to carry out this work.

## III.   PLAINTIFFS' CLASS NOTICE PLAN DOES NOT GIVE THE BEST NOTICE PRACTICABLE TO THE CONSUMER ECONOMIC LOSS AND MEDICAL MONITORING CLASSES

Plaintiffs' plan to give notice to the members of the Consumer Economic Loss and Medical Monitoring Classes by publication notice through digital advertising is not even minimally compliant with Rule 23. At the outset, as already discussed, the Class Notice Plan is insufficient on its face because it does not give individual notice to the reasonably identifiable members of the Consumer Economic Loss and

Medical Monitoring Classes, despite Plaintiffs' representations to this Court that they could identify "virtually all" of the class members from "readily available" and "conveniently concentrated" data. *See* § I, *supra*. That violates the mandatory individual notice requirement of Rule 23(c)(2)(B). *See Eisen*, 417 U.S. at 176; *Larson*, 687 F.3d at 126; *Greenfield*, 483 F.2d at 832.

The ruling of the Eastern District of Pennsylvania in *In re Suboxone* is instructive here. There, as here, the end-party payor ("EPP") plaintiffs proposed to give notice to consumer class members solely via a "publication campaign comprised of digital media and earned media." 2021 U.S. Dist. LEXIS 166675, at *14-15. There, as here, the EPPs had averred as part of their ascertainability showing in their motion for class certification that "they had a sufficient method to ascertain the identities of almost all class members" through the use of PBM and pharmacy data. *Id*. at *16. And there, as here, the EPPs subsequently proposed at the class notice phase not to employ their ascertainability method, but "to notify the consumer portion of the class solely by publication rather than by individual notice." *Id*.

The district court held that the digital media notice plan was facially insufficient and violated Rule 23(c)(2)(B)'s requirement of individual notice to all reasonably identifiable class members, notwithstanding the EPPs' suggestion "that their proposed digital publication plan will reach 80% of the class[.]" *Id*. at *32. The court observed that the requirement of individual notice to identifiable class

23

members "is mandatory." *Id*. at \*18 (quoting *Thomas*, 2002 U.S. Dist. LEXIS 14157, at \*19-20); *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993)). "Thus, '[w]here a potential class member's address is known or available through reasonable efforts, individual or actual notice is required; constructive notice by publication in that circumstance would not satisfy the requirements of Rule 23(c)(2).'" *Id*. at \*19 (quoting *Carlough*, 158 F.R.D. at 325).

The inconsistency between the EPPs' ascertainability submissions at the class certification stage and their digital notice plan was an important consideration in *In re Suboxone*. The EPPs there had provided a declaration in support of ascertainability indicating that PBMs and pharmacies "maintain data that could be used to identify both TPPs and consumers by names and addresses," and that OnPoint Analytics (Craft's company) could "analyze the data" and "determine the identities of those who fit the class definition." *Id*. at \*22-23. The EPPs' class notice plan, by contrast, proposed a "publication plan" using digital banner advertisements, and "[n]otably absent" was "any reasonable effort to determine the identities of the individual consumer class members and provide them with individualized notice." *Id*. at \*23-24. The EPPs offered "no rationale for why subpoenas and individual notice that were feasible as part of a 'reasonable effort' when they originally sought class certification are no longer feasible or reasonable now when such notice actually must be provided." *Id*. at \*31-32. Because "such individualized notice to identifiable

24

class members is mandatory, and 'not a discretionary consideration to be waived in a particular case,'" the court found "that the EPPs' proposed Notice Program is deficient and below the standards required by due process." *Id*. at *24 (quoting *Eisen*, 417 U.S. at 176).

The same reasoning applies here. Plaintiffs' proposed media campaign is the ***only*** mechanism by which Plaintiffs intend to provide class notice to members of the Consumer Economic Loss and Medical Monitoring Classes. Plaintiffs propose their media campaign in lieu of individual notice to identifiable class members, despite previously asserting to the Court's satisfaction that "virtually all" members of the Consumer Economic Loss and Medical Monitoring Classes are in fact reasonably identifiable. Plaintiffs offer no rationale for their assertion that they now lack access to information sufficient to provide individual notice, particularly where they already have the names and addresses of tens of thousands of class members in their own claims data, and are soon to receive hundreds of thousands or millions more from the Pharmacy Defendants. *See* § I.A, *supra*. Regardless of Plaintiffs' unsubstantiated assertion that their Class Notice Plan would reach 80% of the so-called Target Audience, Plaintiffs cannot evade the mandatory, non-discretionary requirement of individual notice to identifiable class members.

Even if Rule 23 and due process allowed for notice by publication in lieu of individual notice to identifiable class members (though they do not), Plaintiffs'

media campaign also is not designed to provide the "best notice that is practicable" under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs propose a layered media campaign for the Consumer Economic Loss and Medical Monitoring Classes that includes: (1) programmatic display advertising, (2) social media, and (3) a paid search campaign. *See* Weisbrot Decl. ¶¶ 23-34. The media campaign is designed to reach an "overinclusive proxy audience" that comprises "approximately 29,227,000" individuals, which Plaintiffs' proposed class administrator contends "maximizes the efficacy of the Notice Plan[.]" *Id.* ¶ 24-25. The "Target Audience" was determined from unspecified "syndicated data[.]" *Id.* ¶ 26. The declaration of Plaintiffs' class administrator is laden with digital advertising terminology—"Look-a-Like Modeling," "Predictive Targeting," "Geotargeting," and "Conquesting"—but is sparse on details informing the Court how these terms translate into the "best notice that is practicable" under the circumstances. Weisbrot Decl. ¶¶ 29-33. Plaintiffs' administrator predicts an "80.12% reach," an "average frequency of 3.04 times," and "71.2 million impressions," and offers his *ipse dixit* opinion that these reflect best practices. *Id.* ¶¶ 13, 33, 39-40.

Plaintiffs' description of their digital media plan and their statements as to its efficacy, even if accepted as true, cannot conceal the unavoidable limits of digital advertising. Most notably, Plaintiffs offer ***no plan whatsoever*** to reach members of the Consumer Economic Loss and Medical Monitoring Classes who are not online.

26

As the Advisory Committee Notes to the 2018 Amendment to Rule 23(c)(2) caution, "[a]lthough it may sometimes be true that electronic methods of notice, for example email, are the most promising, it is important to keep in mind that a significant portion of class members in certain cases may have limited or no access to email or the Internet." Fed. R. Civ. P. 23 Adv. Comm. Notes on Rules—2018 Amendment. Citing this cautionary note, the district court in *In re Suboxone* viewed skeptically a similar claim that the "proposed digital publication plan will reach 80% of the class," noting that the EPPs "fail to address the fact that a significant portion of the class members—consumers of an opioid-addiction treatment drug—may have limited or no access to email or the Internet." 2021 U.S. Dist. LEXIS 166675, at *32.

A similar problem exists here. Plaintiffs' "reach" estimate of 80.12% necessarily reflects that digital media cannot reach offline users. *See* Weisbrot Decl. ¶¶ 13-14, 40. The most recent Census Bureau survey reflects that 8% of households still have no computers or smart devices, and 15% have no broadband Internet access. *See* U.S. Census Bureau, *Computer and Internet Use in the United States: 2018* (April 2021), available online at https://www.census.gov/content/dam/Census/library/publications/2021/acs/acs-49.pdf (last accessed May 21, 2023). Plaintiffs offer no mechanism to provide notice to these offline class members.

Indeed, the vast majority of publication notice plans approved and administered by the ***same administrator*** Plaintiffs propose to use here include a ***print***

27

*notice* component alongside digital media tactics, as well as ***individual notice*** to identifiable class members. *See, e.g., Cotter v. Checkers Drive-In Restaurants, Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *7 (M.D. Fla. Aug. 25, 2021) (approved plan included "digital banner ads, Facebook ads, a printed publication in USA Today, and direct notice via email" to "more than 700,000" individual class members); *Carlotti v. Asus Computer Int'l*, No. 18-cv-03369, 2020 WL 3414653, at *2 (N.D. Cal. June 22, 2020) (approved plan included "by email to class members for whom an email address is available; by postcard for those whom a physical mailing address is available; by both email and postcard if possible; published notice in People magazine and USA Today; [and] publication of an online notice on Internet websites and social media platforms"); *In re: Allura Fiber Cement Siding Litig.*, MDL No. 2886, 2021 WL 2043531, at *1 (D.S.C. May 21, 2021) (approved plan included "2,067 notices via first-class mail and 42 notices via email," "direct notice to dealers, builders, and retailers," a "comprehensive media program" with digital banner ad and social media components, and "publication via People Magazine").[6]

---

[6] *See also Clay v. Cytosport, Inc.*, No. 3:15-cv-00165, 2020 WL 6361874, at *2 (S.D. Cal. Oct. 29, 2020) (approved notice plan included "targeted online ads, in print (Sports Illustrated and People), press releases, and sponsored notice on two class action websites"); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595-96 (N.D. Cal. 2020) (approved notice plan included "a digital media campaign" and "publication notice in *People* magazine and the *East Bay Times* newspaper").

Here, because Plaintiffs claimed they could identify individual members of the Consumer Economic Loss and Medical Monitoring Classes—and therefore must do so under Rule 23 and governing precedent to satisfy due process—their proposed Class Notice Plan by publication is deficient and should be denied. Separately, because Plaintiffs' digital media plan has not been shown to be the "best notice that is practicable under the circumstances," and omits important components like print notice to class members who are not online, it falls short as a publication notice plan. The Court should reject the Class Notice Plan as to the Consumer Economic Loss and Medical Monitoring Classes and order Plaintiffs to cure these defects.

## IV.    PLAINTIFFS' PROPOSED NOTICE IS DEFICIENT IN FORM.

The form of Plaintiffs' Class Notice Plan is also insufficient. Plaintiffs have included long-form and short-form notices with their Class Notice Plan. *See* Weisbrot Decl. ¶ 12, Exs. B-C. Since filing their Class Notice Plan, at Defendants' request, Plaintiffs have also provided a draft website illustration, attached hereto as **Exhibit B**, and draft banner ads, attached hereto as **Exhibit C**. Plaintiffs propose mailing the short-form/post-card notice to the entities on the deficient Mailing List, and making the long-form notice available on a website and also via mail or email when requested. *See* Weisbrot Decl. ¶ 12.

Rule 23 spells out the mandatory form of notice to be given. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the

action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). Moreover, when a class is divided into subclasses, they "are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5).

Plaintiffs' proposed form of notice does not comply with these requirements.

First, Plaintiffs have lumped all three classes—the TPP Economic Loss Class, the Consumer Economic Loss Class, and the Medical Monitoring Class—into a single notice and a single website. *See* Ex. B; Weisbrot Decl., Ex. B-C. These group notices do not describe the "nature of the action" or the "class claims, issues, or defenses" for each class action. To the contrary, Plaintiffs refer to the separate "class action lawsuits" in passing, but then collectively define them all as a single "Lawsuit," which they are not. Ex. B at 1; Weisbrot Decl., Ex. B at 1. Likewise, the "Basic Information" section of the long-form notice and the "Frequently Asked Questions" page of the website both describe "the Lawsuit" in singular terms in answering "What is the Lawsuit about?" and make no effort to differentiate the

30

claims, issues, defenses, or relief sought in each class action.[7] Ex. B at 15; Weisbrot Decl., Ex. B at 5. That does not satisfy Rule 23(c). Plaintiffs must provide separate notices and separate websites for each class action.

Second, Plaintiffs use defined terms in their descriptions of the "nature of the action," the "definition of the class certified," and the "class claims, issues, or defenses" without telling the recipients what they mean. The notice and website use the terms "Valsartan," "Valsartan Containing Drugs," and "VCDs" but never tell the recipients what drugs are at issue or their NDCs. *See* Ex. B at 1; Weisbrot Decl., Ex. B at 1. Thus, recipients cannot review the notice, check their pharmacy records, and determine whether they are class members. Likewise, the notice and website use the capitalized phrase "Third Party Payor," but never tell the recipients what a "Third Party Payor" is. *See* Ex. B at 2; Weisbrot Decl., Ex. B at 2. As discussed in § II, *supra*, that is an important clarification, as it appears even Plaintiffs' class administrator is confused by the term "Third Party Payor" and plans to give notice to tens of thousands of pharmacies and drugs stores that are not class members. Plaintiffs' notice also references an over-inclusive and generalized timeframe of "January 1, 2012 through the date of final recall as of November 10, 2021." Weisbrot Decl., Ex. B at 1, 2, 7, 8, Ex. C at 1. But some of the Manufacturer Defendants'

---

[7] The notice also uses needlessly inflammatory language in describing the "nature of the action," stating, for example, that Defendants are alleged to have "violated numerous state laws" instead of "state law." Weisbrot Decl., Ex. B at 1, Ex. C at 1.

valsartan drugs were back on the U.S. market, post-recall, as early as 2019. These post-recall products bear the same NDCs, but there is no claim that they contained a nitrosamine impurity, and therefore they are not at issue in this litigation.

Third, Plaintiffs do not correctly provide "the definition of the class certified." Plaintiffs attach revised class and subclass definitions as Exhibits 1 to 3 to their Class Notice Plan, but the revised definitions do not conform to this Court's class certification order. *Compare* Doc. 2261 (requiring edits to Plaintiffs' class and subclass definitions) *with* Class Notice Plan, Exs. 1-3. Attached hereto as **Exhibit D** is a listing of the errors in Plaintiffs' revised class and subclass definitions. The errors include missing exclusions from classes and subclasses, placement of named plaintiffs in the wrong subclasses, and placement of states in the wrong subclasses. Some of these errors carry over to the class notice and website. For example, Plaintiffs do not list exclusions in the "definition of the class certified," but rather address exclusions in lump fashion later in the notice (or in separate sections of the website) by answering the question, "Are there exceptions to being a Class Member?" by listing various persons and entities "[e]xcluded from some or all" of the classes, and even then, doing so somewhat inaccurately, as employees of Defendants are not on this exclusion list but are among the listed exclusions for the Consumer Economic Loss Class. Ex. B at 2, 5-6, 10-11, 16-18. Plaintiffs also improperly name Rite-Aid as a Medical Monitoring Class Defendant, but Rite-Aid

was dismissed from the Medical Monitoring Class on January 18, 2022 [Doc. No. 1880]. And Plaintiffs improperly name Express Scripts as a Wholesaler Defendant, when Express Scripts should be listed as a Retail Pharmacy Defendant.

Fourth, Plaintiffs do not treat each subclass as a separate class, as required by Rule 23(c)(5), and in particular do not correctly inform recipients of the subclasses to which they belong. Plaintiffs' long-form notice uses only "summary class definitions" and refers the recipient to the website to view "[m]ore detailed information regarding the various classes and subclasses certified by the Court[.]" Weisbrot Decl., Ex. B at 1. The website, in turn, proposes to inform recipients of their subclass membership through a labyrinthine and inaccurate navigation process. The recipients must first click whether they are a "Consumer" or a "Third-Party Payor" (which is not defined). Ex. B at 3. If "Consumer" is clicked, the recipient is then asked to enter information regarding the general category of drug purchased (*i.e.* generic valsartan, non-valsartan, brand, or do not know), the state or territory purchased, and the date range, which is then used to tell them whether they are class members and to identify subclasses. *Id*. at 4-5. Critically, however, the recipient is not asked the most essential question to determine class membership in the Consumer Economic Loss Class—the manufacturer and/or NDC of the generic

33

valsartan purchased.[8] *See id*. The recipient is also not asked questions regarding quantity consumed, which is essential to evaluate lifetime cumulative threshold and to determine membership in the Medical Monitoring Class. *See id*. Thus, individuals who are not class members are likely to receive erroneous notifications that they belong to one or more subclasses when they do not.

Fifth, Plaintiffs do not provide an online opt-out mechanism. The notice directs recipients who wish to opt out from one or more classes to mail notice to the class administrator, and does not offer an online opt-out option. Weisbrot Decl., Ex. B at 8-9. The website contains the same instructions and does not include an online opt-out form even though it has other interactive elements where recipients can check their class eligibility or register their names and email addresses for future updates. Ex. B at 18; *compare id*. at 4-5, 13. It is unclear why a Class Notice Plan that seeks to employ digital media as its primary mechanism for notice balks at a digital opt-out form. Plaintiffs also do not identify their proposed "Exclusion Deadline" for opt-outs, either by date or by number of days after the Court approves

---

[8] At a minimum, recipients should be provided with a list of the at-issue valsartan drugs, their manufacturers, and their NDCs, and asked to answer "yes" or "no" to whether they purchased at-issue valsartan drugs during the applicable time period. As Defendants have previously shown, that information is the minimum. For instance, the NDC identifies only a product's "labeler, product, and package size and type." 21 C.F.R. § 207.33(a). An NDC does not contain information to identify whether a product was distributed by a given Wholesaler or through any particular distribution channel. *Id*.

a notice plan. Based on interviews with Plaintiffs' class administrator, it is Defendants' position the Exclusion Deadline should be no earlier than 60 days after the date the class administrator has sent the individual notice to all members of the classes receiving individual notice.

Sixth, the postcard/short-form notice and banner ads do not fulfill the content requirements of Rule 23(c)(2)(B). The short-form notice to the TPP Economic Loss Class omits "the class claims, issues, or defenses," "that a class member may enter an appearance through an attorney if the member so desires," and "the time and manner for requesting exclusion."[9] Fed. R. Civ. P. 23(c)(2)(B). The banner ads contain none of the mandatory elements of class notice; they simply state, "If you consumed or paid money for a blood pressure medication containing Valsartan, a class action lawsuit could affect your rights," and invite the user to "CLICK HERE for more information." Ex. C. Although both the short-form notice and the banner ads invite the recipient to visit the website for more information, Plaintiffs provide no analysis of the anticipated percentage of recipients of the short-form notice or

---

[9] To the contrary, rather than telling class members they may enter an appearance through an attorney, the short-form notice states, "**Do I have a lawyer in this case?** Yes. The Court has appointed the law firms of Rivero Mestre LLP and Preti Flaherty Beliveau & Pachios Chartered LLP to represent the Third Party Payor Class." Weisbrot Decl., Ex. C at 1. And instead of telling class members "the time and manner for requesting exclusion," the short-form notice directs class members to visit a website "to obtain more complete information about the lawsuit and your rights and options, including how to exclude yourself from the lawsuit." *Id.*

banner ads that will click-through and ultimately see the long-form notice. A digital "reach" of 80.12% means little from the standpoint of giving notice of the required elements of Rule 23(c)(2)(B) if the vast majority of users never see anything beyond the banner advertisement and do not click through to the content.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Approval of Form and Manner of Class Notice. Plaintiffs' proposed Class Notice Plan is deficient in both design and form and does not meet the mandatory requirements of Rule 23. The Court should direct Plaintiffs to redesign their Class Notice Plan: (1) with respect to the TPP Economic Loss Class, to identify and provide individual mailed or email notice to the class members using the methods identified by Plaintiffs' class expert Craft, and not Angeion's insufficient Mailing List; (2) with respect to the Consumer Economic Loss and Medical Monitoring Classes, to identify and provide individual mailed or email notice to the class members using the methods identified by Craft, and not the proposed digital media campaign; and (3) with respect to all classes, to cure the six form defects identified in this opposition.

Dated: May 26, 2023

Respectfully Submitted:


By: */s/ Gregory E. Ostfeld*

GREENBERG TRAURIG, LLP
Lori G. Cohen
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Road, N.E.,
Suite 2500
Atlanta, Georgia 30305
Tel. (678) 553-2100
Fax. (678) 553-2386
CohenL@gtlaw.com
LockardV@gtlaw.com
HarkinsS@gtlaw.com

Gregory E. Ostfeld
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
OstfeldG@gtlaw.com

*Counsel for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Actavis Pharma, Inc.,
and Actavis LLC*

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Jessica Davidson
*Liaison Counsel for Manufacturer*
*Defendants*
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
Facsimile: (917) 777-2588
jessica.davidson@skadden.com

Nina R. Rose
1440 New York Ave., N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-0525
nina.rose@skadden.com

*Attorneys for Zhejiang Huahai*
*Pharmaceutical Co., Ltd., Huahai U.S., Inc.,*
*Prinston Pharmaceutical Inc., and Solco*
*Healthcare U.S., LLC*

PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
Clem C. Trischler
Jason M. Reefer
Frank H. Stoy
38th Floor, One Oxford Centre
Pittsburgh, Pennsylvania 15219
Tel: (412) 263-2000
Fax: (412) 263-2001
cct@pietragallo.com
jmr@pietragallo.com
fhs@pietragallo.com

*Counsel for Mylan Laboratories, Ltd.*
*and Mylan Pharmaceuticals, Inc.*

38

KIRKLAND & ELLIS LLP
Devora W. Allon
Alexia R. Brancato
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals Ltd.*
*and Torrent Pharma Inc.*

MORGAN, LEWIS & BOCKIUS LLP
John P. Lavelle, Jr.
1701 Market Street
Philadelphia, Pennsylvania 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
john.lavelle@morganlewis.com

John K. Gisleson
One Oxford Centre, Thirty-Second Floor
Pittsburgh, Pennsylvania 15219
Tel: (412) 560-3300
Fax: (412) 560-7001
john.gisleson@morganlewis.com

*Attorneys for Aurobindo Pharma Ltd.,*
*Aurobindo Pharma USA, Inc., and*
*Aurolife Pharma LLC*

LEWIS BRISBOIS BISGAARD &
SMITH LLP
Walter H. Swayze, III
Andrew F. Albero
550 E. Swedesford Road, Suite 270
Wayne, Pennsylvania 19087
Tel: (215) 977-4100
Fax: (215) 977-4101
pete.swayze@lewisbrisbois.com
andrew.albero@lewisbrisbois.com

*Attorneys for Camber Pharmaceuticals, Inc.*
*and The Kroger Co.*

HILL WALLACK LLP
Eric I. Abraham
William P. Murtha
21 Roszel Road
P.O. Box 5226
Princeton, New Jersey 08543-5226
Tel: (609) 734-6358
Fax: (609) 452-1888
eabraham@hillwallack.com
wmurtha@hillwallack.com

*Attorneys for Hetero Drugs, Ltd.*
*and Hetero Labs Ltd.*

HARDIN KUNDLA MCKEON &
POLETTO
Janet L. Poletto, Esq.
Robert E. Blanton, Jr., Esq.
673 Morris Ave.
Springfield, New Jersey 07081
Tel: (973) 912-5222
Fax: (973) 912-9212
jpoletto@hkmpp.com
rblanton@hkmpp.com

*Attorneys for Hetero USA Inc.*

40

BARNES & THORNBURG LLP
Sarah E. Johnston, *Liaison Counsel for Retailer Defendants*
Kristen L. Richer
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Tel: (310) 284-3798
Fax: (310) 284-3894
sarah.johnston@btlaw.com
Kristen.Richer@btlaw.com

Kara M. Kapke
11 S Meridian St.
Indianapolis, Indiana 46204
Tel: (317) 236-1313
Fax (317) 231-7433
kara.kapke@btlaw.com

*Attorneys for CVS Pharmacy, Inc. (incorrectly named as CVS Health Corporation), Rite Aid Corporation, Walgreen Co. (incorrectly named as Walgreens Co.), and Walmart Inc. (incorrectly named as Walmart Stores, Inc.)*

HUSCH BLACKWELL LLP
Matt Knepper
James Spung
8001 Forsyth Blvd.
Suite 1500
St. Louis, Missouri 63105
Tel: (314) 480-1500
Fax: (314) 480-1505
matt.knepper@huschblackwell.com
james.spung@huschblackwell.com

*Attorneys for Express Scripts, Inc.*

41

DORSEY & WHITNEY LLP
Roxanna Gonzalez
51 West 52nd Street
New York, New York 10019
Tel: (212) 415-9357
Fax: (212) 953-7201
gonzalez.roxanna@dorsey.com

*Attorneys for Optum, Inc. and Optum Rx*

BUCHANAN INGERSOLL & ROONEY PC
Jonathan D. Janow
Jason R. Parish
1700 K Street NW
Suite 300
Washington, DC 20006
Tel: (202) 452-7940
Fax: (202) 452-7989
jonathan.janow@bipc.com
jason.parish@bipc.com

*Attorneys for Albertson's LLC*

ULMER & BERNE LLP
Jeffrey D. Geoppinger
*Liaison Counsel for Wholesalers*
312 Walnut Street, Suite 1400
Cincinnati, OH 45202-2409
Tel: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

*Counsel for AmerisourceBergen Corporation*

CROWELL & MORING
Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com
Email: dcampbell@crowell.com
Email: mdennis@crowell.com

*Counsel for Cardinal Health, Inc.*

NORTON ROSE FULBRIGHT US LLP
D'Lesli M. Davis
Ellie K. Norris
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel: (214) 855-8221
Fax: (214) 855-8200
dlesli.davis@nortonrosefulbright.com
ellie.norris@nortonrosefulbrigth.com

*Counsel for McKesson Corporation*

43

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 26, 2023, I caused a copy of the foregoing document to be served on all counsel of record via CM/ECF.

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
Greenberg Traurig, LLP