# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

June 5, 2023

*VIA ECF*

Honorable Robert Kugler, U.S.D.J.
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
1 John F. Gerry Plaza, Courtroom 4D
4th and Cooper Streets
Camden, New Jersey 08101

Honorable Thomas I. Vanaskie (Ret.)
Special Master
Stevens & Lee
1500 Market St., East Tower, Suite 1800
Philadelphia, Pennsylvania 19103-7360

      Re:    ***In re Valsartan, Losartan, and Irbesartan Liability Litigation*,**
            **Case No. 1:19-md-02875-RBK (D.N.J.)**

Dear Judge Kugler and Judge Vanaskie:

Please accept this letter on behalf of Plaintiffs in advance of the June 7, 2023 case management conference.

**1. Retailer Defendant Discovery**

Plaintiffs believe a narrow set of discrete issues pertaining to Retailers (*see infra* Parts I.A-C) should be addressed at the June 7 CMC because they relate to the time-sensitive class notice deadlines.  The remaining issues (*see infra* Part I.D), which the Parties continue to negotiate, would be addressed in the Parties' agreed-upon briefing schedule submitted to Special Master Vanaskie on June 3, 2023.  The issues on which Plaintiffs seek the Court's guidance during the upcoming CMC are as follows.

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 2

### A. Retailers' Production of Consumer Class Members' Telephone Numbers in Retailers' Dispensing Databases

CMO No. 32 directed Retailers to produce consumer class members' previously-redacted identifiers to effectuate class notice and claims administration. (ECF 2343, at § 6.1.3). The Parties conferred and agreed Retailers would produce the names, addresses, dates of birth, and emails (if available) that are stored in Retailers' dispensing databases. These are the same databases from which Retailers previously produced the dates, NDCs, and co-pays for VCDs sold.

The Parties submitted an agreed-upon proposed "HIPAA Order" on Thursday, May 25. The day after submitting the proposed HIPAA Order, Defendants filed their challenges to Plaintiffs' proposed class notice program. (ECF 2412). Among Defendants' many complaints is that direct notice should be provided to as many class members as possible.

On May 30, the Court entered the parties' agreed-upon "HIPAA Order," which directed the production of the above-mentioned consumer identifiers within 60 days. (ECF 2413). The next day, Plaintiffs reached out to Retailers to request that they pull telephone numbers along with the names, addresses, dates of birth, and emails they already agreed to produce. Plaintiffs also proposed amending the HIPAA Order if necessary to encompass telephone numbers. The Parties discussed this issue on Friday, June 2. Retailers have yet to indicate whether they will provide telephone numbers along with the other consumer identifiers.

Plaintiffs seek consumer class members' telephone numbers because this is another readily available datapoint that will help to effectuate Manufacturer Defendants' insistence on expansive direct notice. Retailers have already suggested their dispensing databases do not capture many emails in the ordinary course, and Mail notice will introduce significant expense. There are

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 3

millions of consumer class members in the economic loss and medical monitoring classes. Even at the cheapest available postage rates, direct mail notice will potentially cost several million dollars, which will not be beneficial to any party, especially if reasonable alternatives exist – which they do.

Telephone numbers are a readily available, cost-effective alternative or supplemental means to facilitate direct notice. Undoubtedly, Retailers maintain telephone numbers for all or nearly all consumers in their dispensing databases. Direct notice via telephone call or text can be accomplished quickly and very cost effectively. Many courts have approved direct notice in this manner. *See, e.g.*, *Dickensheets v. ARC Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("I find that providing notice via text message in addition to other traditional notice methods will almost always be appropriate in modern society"); *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 352 (N.D. Ill. 2010) (approving notice that included class notice accompanying monthly bills sent by defendant, text messages, and publication); *Yates v. Checkers Drive-In Restaurants, Inc.*, 2020 WL 6447196, at *3 (N.D. Ill. Nov. 3, 2020) (ordering supplemental class notice via text message) (Ex. 1 hereto); *see also, e.g.*, *Lawrence v. A-1 Cleaning & Septic System Sys., LLC*, 2020 WL 2042323, at *5 (S.D. Tex. Apr. 28, 2020) ("The reality of modern-day life is that some people never open their first-class mail and others routinely ignore their emails. Most folks, however, check their text messages regularly (or constantly).") (Ex. 2 hetero).

Retailers have yet to articulate any reason for a refusal to produce telephone numbers. There is no undue burden, because they are already producing additional datapoints (names, address, dates of birth, and emails) from their dispensing databases. It makes sense to produce one

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 4

additional datapoint (telephone numbers) at the same time. That 'telephone number' was not among the datapoints in the Parties' proposed HIPAA Order is of no moment. Even assuming telephone numbers are protected health information, Plaintiffs identified this need immediately after Defendants filed their opposition to the proposed class notice program, and less than twenty-four hours after the Court entered the HIPAA Order. Plaintiffs have offered that the HIPAA Order can be amended to add "telephone number" to the other datapoints being produced if necessary and to extend the due date accordingly.

Simply put, there is no good reason why Retailers should not produce telephone numbers along with consumer class members' names, addresses, dates of birth, and emails.

**B.    Retailers' Production of Payor Identities**

CMO No. 32 ordered Retailers to produce, among other things, the amounts TPPs paid for VCDs. ([ECF 2343](), at § 6.1.1). Retailers agree they will be producing this information, but by when they will do so, and whether they will produce this on a transaction-by-transaction basis or on some aggregated basis, will be the subject the Parties' forthcoming letter briefing (*see infra* Part I.D).

As the letter briefing schedule stretches out for the next month, Plaintiffs have asked Retailers to produce in the meantime the names/identities of the TPPs, and their intermediaries that paid for VCDs on their behalf. Retailers can produce the actual amounts paid by each, on a rolling basis moving forward. In this context, transaction by transaction data will need to be produced both for the upcoming TPP trial, and for the consumer class that will need to determine which manufacturers' contaminated pills were sold by each retailer, and in what quantity, and at what price.

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 5

Plaintiffs raised this because, again, Defendants' opposition to the proposed class notice program filed on May 26 insists on expansive direct notice to class members. Retailers' dispensing databases—the same databases from which they are pulling consumers' names, addresses, dates of birth, and emails (and, hopefully, telephone numbers)—include the identity of class-member TPPs and their intermediaries that paid for VCDs, as applicable. Thus, this is another readily available source of information that can and should be used to facilitate direct notice, if necessary.

Retailers have yet to indicate whether they will produce this information on the same 60-day timetable on which they will be producing the consumer identifier datapoints. Retailers have not articulated any reasons against doing so. As with the production of telephone numbers, there is no undue burden, because each Retailer already is pulling data from the exact same databases for the consumer identifiers. There also is no dispute that Retailers will be producing the amounts paid by TPPs per CMO No. 32, which necessarily will disclose entities' identities. The only issue now is whether they should produce payors' identities (or codes used to identify payors) now, to help facilitate the notice program, and there is no logical reason not to maximize the efficiency of this process.

There is no real question that Retailers maintain this data in their dispensing databases. Here are some redacted examples from class representatives' copies of their own print-outs from Retailers' records (which, incidentally, also shows Retailers retain consumers' telephone numbers):

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 6





Retailers' concern that the entity listed as payor in their own records might not always be the TPP end-payor (e.g., it might be an intermediary such as a PBM acting on a TPP class member's behalf) is immaterial. The point here is that data exist in Retailers' possession that identify at least some TPP class members, or their agents, that paid for VCDs. And the PBMs would presumably be duty bound to pass on notice to the TPPs they worked on behalf of in any event. That is enough for notice purposes. These data need not be perfect or all-encompassing.

Retailers should produce the identities of the payor entities in their dispensing records (along with any keys that decipher numeric codes used as proxies for entity names and addresses) on the same 60-day schedule applied to their production of consumers' identifiers.

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 7

### C. Retailers' Production of Consumer Class Member Identifiers in Other Databases

CMO No. 32 ordered Retailers to produce consumer class members' previously-redacted identifiers. ([ECF 2343](#), at § 6.1.3). The "previously-redacted identifiers" were the names, etc., discussed above stored in Retailers' dispensing databases. In addition to dispensing databases, Plaintiffs are aware that some or all Retailers also maintain consumer identifiers (name, address, email, telephone number) in *other* databases, too. These include loyalty rewards program databases, customer membership databases, and similar databases.

Retailers have already suggested their dispensing records may not contain many consumer emails because that datapoint might not have been consistently collected or maintained in those systems. Retailers' other databases likely contain many more emails for consumer class members. Therefore, to address Manufacturer Defendants' prognostications about direct notice, Plaintiffs asked Retailers to produce consumer class member identifiers (principally emails, which apparently might be largely missing from Retailers' dispensing databases) from their other loyalty/member/etc. databases as well, to further facilitate direct notice. The same would apply to telephone numbers as well.

Retailers refuse to produce consumer class member identifiers (again, principally emails) from their other databases, arguing burden. They claim it will be laborious to query these other databases. Yet, if direct notice is ultimately required as Manufacturer Defendants argue, then certainly it is incumbent upon party-defendants such as Retailers to produce the very information that would assist with direct notice. This data will also be needed for the pursuit of the claims against the Retailers as well. And, again, direct notice via mail will be very expensive, and should not be unnecessarily costly when information in the Retailers' possession, custody, and control

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 8

can alleviate those costs. Retailers should not withhold discoverable data which would allow direct notice to be accomplished more expansively and cost effectively.

### D. Remaining Retailer Issues

The only remaining matter between Plaintiffs and Retailers relates to the timing and scope of Retailers' production of: (i) the amounts TPPs paid for VCDs; (ii) Retailers' costs and profits, and (iii) custodial discovery. The Parties agree that production of the foregoing were ordered by CMO No. 32. The Parties continue to negotiate the timing and specific contours of these productions. Lingering impasses will be addressed in the parties' forthcoming letter briefing.

### 2. Plaintiffs' Class Notice Proposal

At the time Plaintiffs' filed their Class Notice Proposal, Plaintiffs did not have access to the individual class member identifying information and while this had been previously ordered by the Court, each of the Retailer Defendants could not, at that time, indicate the extent to which this information could be produced, or when it could be produced, i.e. with sufficient time to use it in the class notice program. Subsequent to the submission of Plaintiffs' Class Notice Proposal, after several meet and confers on an expedited basis, the Retailer Defendants were able to come to an agreement that they could produce this information within 60 days of the Court's order memorializing the agreement between the Parties. This order has now been entered. (ECF 2413).

As indicated above, while the Parties have made substantial progress, a few more issues must be resolved before Plaintiffs and their notice vendor can completely evaluate the information available and adjust their recommendations as needed, including specifically whether individualized notice will be given to class members and the method of providing that notice. Plaintiffs will need more information from the Retailer Defendants regarding the structure of the

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 9

data being produced, the ability to map fields to the currently produced data, etc. before Plaintiffs can put such a revised proposed notice program together.

Similarly, with regard to Third Party Payors, although Plaintiffs had originally proposed direct notice based upon a list provided by Plaintiffs' notice vendor, Defendants criticized that list in their opposition briefing. Thus, in addition to supplementing that list based upon other publicly available sources, as discussed above, Plaintiffs believe information related to the identity of Third Party Payors in the possession of Defendants will help ensure that such notice is more robust and targeted and are seeking that information.

Finally, with regard to the subclass issues raised by Defendants, Plaintiffs believe this could have been resolved through meet & confers, have begun to meet with Defendants to resolve those issues and have begun to make progress.

Given these issues raised by Defendants in their brief, Plaintiffs asked Defendants whether they would be willing to jointly ask the Court to revise the schedule for class notice briefing to account for Plaintiffs submitting a revised class notice proposal that would include an analysis of the practicability of providing individual notice to the Consumer Economic Loss class members based on current information, and the likelihood that Defendants will want an opportunity to respond to Plaintiffs' revised class notice proposal. Defendants have agreed that an extension is warranted and the Parties are working together on a proposed schedule with the goal of presenting a revised briefing schedule that would allow the Court to hear any remaining issues at the status conference at the end of July. Given that Plaintiffs will not have access to individual class member identifying information until shortly before that date, Plaintiffs believe that would be the earliest

Honorable Robert Kugler, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
June 5, 2023
Page 10

date by which there will be sufficient concrete information for the Court to properly evaluate the proposed revised notice program.

    **3. PFS Deficiencies and Orders to Show Cause**

    Plaintiffs will be prepared to address this issue during the conference.

Respectfully,

ADAM M. SLATER

Cc: All counsel of record (via ECF)