**NORTON ROSE FULBRIGHT**

June 13, 2023

Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
United States

Direct line +1 214 855 8221
dlesli.davis@nortonrosefulbright.com

**VIA ECF**

Special Master The Hon. Thomas I. Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

Tel +1 214 855 8000
Fax +1 214 855 8200
nortonrosefulbright.com

Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875-RBK-SAK (D.N.J.)

Dear Judge Vanaskie:

Pursuant to SMO 79, Wholesaler Defendants ("Wholesalers")[1] submit this letter brief in support of their request that the Plaintiff TPP Class Representatives and related health insurance entity assignors ("Assignors") (collectively, "TPP Class Reps" or "TPPs")[2] be ordered to respond to Wholesalers' proposed Requests for Production ("RFPs") attached hereto as Exhibit 1. Wholesalers also submitted a proposed 30(b)(6) Notice to TPPs, but in the interests of judicial economy, the parties have agreed to postpone discussion of Wholesalers' 30(b)(6) Notice pending review of the documents ultimately produced by the TPPs to the RFPs discussed herein.

## SUMMARY OF THE DISPUTE

Wholesalers seek limited and basic discovery from the TPP Class Reps on the elements of their only claim against Wholesalers—unjust enrichment ("UE"). Despite multiple meet and confer sessions, the TPP Class Reps have refused to agree to meaningfully respond to most of the RFPs, beyond agreeing to produce a small subset of documents upon which they intend to rely at trial. While the TPP Class Reps have produced certain of their covered claims data in response to discovery from other Defendants, none of that information appears to identify or relate to Wholesalers—and the TPPs have not claimed that it does. Even more critically, the TPPs have not produced *any* information related to their proof (or lack thereof) of the essential elements of their UE claim and Wholesalers' defenses thereto. As a result, Wholesalers' RFPs seeking this information are relevant and proper, and the TPP Class Reps should be ordered to respond in full.

---

[1] Wholesaler Defendants are AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation.
[2] The TPP Class Representatives currently are MSP—as Assignee of health insurer Assignors, Summacare, ConnectiCare, and Emblem Health—and ERISA plan, MADA.

**Wholesalers' RFPs**

The gist of the TPPs' one cause of action for UE is that each TPP payment on an underlying TPP-covered prescription drug insurance transaction (a covered "Claim")[3] resulted in unjustly-earned profit to the specific Wholesaler (if one was involved) that sold that specific VCD to the insured's Pharmacy. The TPPs assert that that the TPPs, rather than the Wholesalers, are entitled to such profits. Incredibly, with six subclasses certified, the TPP Class Reps have refused to answer almost all of Wholesalers' basic RFPs directed to the evidence they possess regarding: (1) Wholesaler involvement in each underlying Claim made the basis of the UE cause of action; and (2) the benefit the TPP Class Rep allegedly conferred on a Wholesaler through payment of each Claim. Specifically, Wholesalers tailored their RFPs to seek:

(1) information connecting a specific Wholesaler to each underlying Claim;
(2) facts that would prove the essential elements of and defenses to the UE cause of action; and
(3) the equities between the parties—in other words, evidence of the circumstances between the parties and whether it would be "unjust" for Wholesalers to retain their own profits.

**Essential Elements of a UE Cause of Action**

This Court has stated that to prevail on a UE claim, a plaintiff must show: "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance/retention by the defendant of the benefit under circumstances that make it inequitable for the defendant to keep the benefit without payment of its value." MTD 6 Op., pg. 26 (ECF 1019). UE law in New Jersey also "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" MTD 6 Op. Pg. 39 (ECF 1019) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 519 (N.J. 1994)); *accord Gant v. Ragone*, No. 1-20-cv-01727-RBK-KMW, 2020 U.S. Dist. LEXIS 216740, at *9 (D.N.J. 2020) (Kugler, J.).

Of course, it is fundamental that the TPP Class Reps bear the burden of proof on the UE cause of action, obligating them under the Federal Rules of Civil Procedure to produce in discovery both the evidence upon which they will rely at trial *and* all other requested evidence relevant to the cause of action. *See* Fed. R. Civ. P. 26(b)(1); *Munoz v. PHH Corp.*, No. 1:08-cv-0759-DAD-BAM, 2016 U.S. Dist. LEXIS 17254, at *14 (E.D. Cal. 2016); *see also Montana v. Cnty. Of Cape May Bd. Of Freeholders*, No. CV 09-755 (NLH/JS), 2013 WL 11233748, at *5 (D.N.J. Sept. 20, 2013) ("Admissibility at the trial is not the limit of discovery, and discovery may properly be had of inadmissible matter.").

---

[3] For purposes of this Brief and Wholesalers' RFPs, the term "Claim" is used in the insurance industry sense—an underlying transaction reflecting a purchase of a prescription medication for an insured submitted to a TPP for insurance coverage (as opposed to the legal usage of "claim" meaning a legal "cause of action"). For instance, the TPPs have produced various excel spreadsheets of such Claims, containing by row individual prescription drug transactions covered by the related TPP and upon which the TPP Class Reps bring suit. As set forth in more detail below, however, these spreadsheets in no way detail any involvement of any specific Wholesaler in any of the Claims and/or do not reflect any payment made to Wholesalers for any portion of such Claims.

**The TPP Class Reps' Wholly Inadequate Response**

In response to the RFPs, the TPPs have asserted—without any factual explanation and without any supporting affidavit or other testimony—that Wholesalers' Discovery Requests are "voluminous," "enormously burdensome," and "irrelevant." *See* Pl.'s May 10, 23 Letter re Status of the Parties' meet and confer Concerning Wholesaler Discovery Pg. 5-6 (ECF 2374). The meet and confers yielded no more specific objections by the TPPs to the RFPs.

Instead, the TPP Class Reps proposed a "compromise" consisting of their redlined revisions to the RFPs, which are attached hereto as Exhibit 2. These redlines demonstrate the TPPs are willing to "respond" to just six of the 28 RFPs Wholesalers propounded, and Plaintiffs' proposed revisions to those six RFPs improperly seek to limit their responsive information.

Wholesalers have three high level concerns about the TPP Class Reps' attempts to resist their fundamental discovery obligations:

*(1) The TPP Class Reps refuse to answer any request that seeks documents related to their prima facie case that they are unlikely to have.* As set forth more particularly below, Wholesalers and TPPs do not in the ordinary course of business engage in communications or transfer inter-company payments. Additionally, Wholesalers do not believe that TPPs have any knowledge of whether a Wholesaler (much less *which* specific Wholesaler) sold a specific VCD that is the basis of a Claim to the Pharmacy filling the prescription. Wholesalers' proposed RFPs 7-9, 11-16, and 17-21 seek to confirm this believed lack of information.[4] The TPPs have entirely stricken these Requests, presumably because they do not want to admit that they do not have evidence of the essential elements of their UE cause of action—i.e., that a *specific Wholesaler* was demonstrably unjustly enriched as a result of a specific TPP's payment. Ex. 2, TPPs' Redlined RFPs. The Federal Rules recognize no such "We don't want to" objection.

*(2) The TPP Class Reps refuse to answer any request that might demonstrate that they actually received value from the VCDs they claim Wholesalers sold.* In basic terms, the TPP Class Reps claim that Wholesalers unknowingly provided to the public impure VCDs for profit. Conti Dep. 114:14-18. To prevail, the TPP Class Reps must prove that Wholesalers' retention of profits from their VCD sales would be "unjust." RFPs 22-28 are specifically directed to this evidence: facts that would show any benefits *TPPs* obtained from the VCDs (e.g., TPPs' profits for administering Claims).[5] Wholesalers believe the TPP Class Reps *do* have this information—it simply does not help their case, as Wholesalers will use it: (1) to argue equity does not allow the TPPs *further*

---

[4] Specifically, RFPs 7-9 request Wholesaler-TPP communications regarding any underlying Claim; RFPs 11-16 seek proof of the elements of the UE cause of action (benefit conferred by TPP on specific Wholesaler, unjust portion of benefit, misleading acts of Wholesaler related to a Claim, expectation by the TPP Class Rep of remuneration from specific Wholesaler, specific Wholesaler action causing damage to the TPP); and RFPs 17-21 seek damage documents related to type, amount, methodology of calculation, and from *which* Wholesaler the TPP Class Rep seeks damages for each Claim.

[5] RFPs 22-28 seek information related to whether Wholesalers' VCDs provided value/benefit to the TPPs: (1) in any manner recognized internally by the TPPs, (2) through provision of therapeutic value to insureds, allowing the TPPs to fulfill their insurance contract obligations, gain company goodwill and extend insurance contracts for pleased customers; and (3) through actual revenue earned by the TPP Class Reps through coverage and processing of each underlying Claim.

enrichment or windfall through access to the Wholesalers' profits; and (2) to prove the affirmative defense of unclean hands, as the TPPs accuse Wholesalers of profiting off the sale of impure VCDs and Wholesalers assert the *TPP Class Reps engaged in the same conduct*. Plaintiffs flatly refuse to answer RFPs 22-28 and will not even discuss those requests.

(3) *The TPP Class Reps are willing to produce mostly documents "on which [they] intend to rely" at trial.* The tactic is most obvious in the category of "Elements of Unjust Enrichment Cause of Action," in which the Wholesalers in RFPs 11-16 seek *all documents relevant to the individual factual elements of the UE claim*. In response, the TPP Class Reps instead propose they will only provide information in one category on one element: *documents on which they intend to rely at trial concerning Wholesalers' alleged wrongdoing*. The TPP Class Reps' attempts to produce only information helpful to TPPs directly contradicts the Federal Rules requirements.

### **Wholesalers' Need for TPP Class Rep Discovery**

The TPP Class Reps' proposed revisions are unacceptable and would prohibit robust discovery by Wholesalers of the TPPs' UE cause of action, as well as Wholesalers' UE defenses, in violation of the Federal Rules of Civil Procedure. As demonstrated below, Wholesalers' RFPs are targeted requests for relevant information, and the TPP Class Reps should be ordered to respond fully. Indeed, without the requested discovery—including not only the documents on which Plaintiffs intend to rely but *all* relevant evidence—Wholesalers will be prohibited from a full and fair defense of the TPPs' UE cause of action and deprived of the opportunity for a full and fair trial. *In re Gerber Probiotic Sales Practices Litig.*, 306 F.R.D. 527, 529 (D.N.J. 2015).

**FACTUAL AND LEGAL BACKGROUND RELEVANT TO THE EVIDENCE THE RFPS SEEK**

### **The Realities of the "Dealings" Between the TPPs and the Wholesalers: There Are None**

The US has a complex insurance system, a significant portion of which relates to prescription drug coverage. However, TPPs and Wholesalers do not directly interact within this system.

On the one hand, Wholesalers buy drugs from Finished Dose Manufacturers as inventory. Retail Pharmacies, in turn, buy drugs from *either* Finished Dose Manufacturers *or* Wholesalers (or non-defendant wholesalers) as inventory. *It is undisputed that a Wholesaler is not involved in every sale of a drug to a Retail Pharmacy*. Regardless of Wholesaler involvement, nothing about those inventory-based purchases and sales involves insurance coverage.

On the other hand, when an insured is written a prescription by his physician, the insurance claims network is invoked. The TPP/Insurer handles thousands of such claims, presumably charging a fee on each. The insured also pays the Insurer a premium to be included in the TPP/Insurer's prescription drug insurance contract. The TPP/Insurer's "coverage" of the Claim is the Insurer's fulfillment of its obligations under that contract. The insured benefits from the TPPs/Insurer's

coverage of the prescription by not having to pay full price and by receipt of therapeutic benefit from the drug.[6]

The identity of which Wholesaler, if any, that sold a particular VCD made the basis of a TPP Claim in this case is not tracked by any entity.[7] Wholesalers believe the TPP/Insurer, its agents, and its insureds have no knowledge of: (1) whether *any* Wholesaler was involved in the sale of the subject VCD to the Pharmacy; or (2) whether, if a Wholesaler was involved, *which* Wholesaler made the sale to the Pharmacy. To date, no party in this litigation has provided any evidence that would identify a Wholesaler in any specific TPP-related transaction, or any benefit—be it payment or otherwise—conferred on a specific Wholesaler by a specific TPP Class Rep.

**Additional State Law UE Elements and Defenses Requiring Discovery**

The three elements of a UE cause of action seem simple, but depending on the state laws invoked, discovery of a variety of underlying facts may be appropriate. For example, certain states—such as Indiana, Texas, and Montana—require the plaintiff to prove the defendant engaged in wrongdoing. *Hughes v. Chattem, Inc.,* 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011); *Bimbo Bakeries USA, Inc. v. Pinckney Molded Plastics, Inc.*, No. 4:06-CV-180-A, 2007 WL 836874, at *6 (N.D. Tex. Mar. 20, 2007); *Albinger v. Harris*, 48 P.3d 711, 716 (Mont. 2002). Other states—such as Delaware, Florida, and Ohio—permit UE recovery only if the plaintiff conferred a "direct benefit" on the defendant. *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59–60 (Del. Ch. 2012); S*port & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1255 (N.D. Fla. 2020); *Johnson v. Microsoft Corp*., 834 N.E.2d 791, 799 (Ohio 2005).

Moreover, the UE element of a "benefit unjust for the defendant to retain," in particular, requires discovery of the *equities between the parties under the circumstances* of the underlying events. *See* Mot. Dismiss 6 Op., pg. 26 (ECF 1019) ("(3) the acceptance/retention by the defendant of the benefit *under circumstances that make it inequitable* for defendant to keep the benefit…") (emphasis added). Thus, UE discovery is appropriate to investigate the benefits and detriments of the events as to *both* parties.

Other state law variations justify additional discovery. In New Jersey, for example, the UE element that a plaintiff "must confer a benefit on the defendant" has been interpreted to require that the plaintiff must have "a sufficiently direct relationship with the defendant to support the claim." *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (citing *Nelson v. Xacta 3000 Inc.*, Civ. No. 0805426, 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009).

---

[6] In reality, of course, the system is even more complex, with the TPPs contracting with Claims Administrators and Pharmacy Benefit Managers to handle portions of the transactions and to procure the most favorable prices from the Pharmacies.

[7] *See* Wholesalers' extensive briefing and evidence with regard to the inability to track Wholesaler involvement, if any, included in Wholesalers' Letter Brief on Macro Discovery Issues (ECF 478); McKesson DSCSA Declaration of Scott Mooney (ECF 478-1); Cardinal DSCSA Declaration of Douglas Redinger (ECF 478-4); AmerisourceBergen Declaration of Matthew Sample (ECF 478-6); Wholesalers' Response in Opposition to Plaintiffs' Motion for Leave to Amend the Master Complaints, pg. 5-14 (ECF 1281); Wholesalers' Response in Opposition to Plaintiffs' Motion for Class Certification of EL Claims, pg. 6-7 (ECF 2011).

Defenses to the UE cause of action raise additional areas for discovery, including: (1) unclean hands (*see, e.g.*, *Am. Dream. At Marlboro, L.L.C. v. Plan. Bd. Of Marlboro*, 35 A. 3d 1198, 1204 (N.J. 2012); *Rose v. Nat'l Auction Grp.*, 646 N.W.2d 455, 462-3 (Mich. 2002); *Progressive Techs., Inc. v. Shupe*, No. A04-1110, 2005 Minn. App. Lexis 381, at *11-12 (Minn. Ct. App. 2005)); (2) the innocent seller defense (*see, e.g.*, Ga. Code Ann. § 51-1-11.1; Neb. Rev. Stat. Ann. § 25-21,181); (3) estoppel (*see, e.g.*, *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 717 (Ca. 2000); *Fla. Dep't of Health & Rehab. Servs. v. S.A.P.*, 835 So. 2d 1091, 1096-98 (Fla. 2002)); (4) statute of limitations (*see, e.g.*, *Domke v. Alyeska Pipeline Serv. Co.*, 137 P.3d 295, 302 n.18 (Alaska 2006) (3-year SOL); *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004) (6-year SOL)); and (5) laches (*see, e.g.*, *Fox v. Millman*, 45 A.3d 332, 341-42 (N.J. 2012); *Thompson v. Cent. of Ga. R.R.*, 646 S.E.2d 669, 672 (Ga. 2007)).[8]

Finally, discovery on the Article III standing of a class representative is also appropriate—the representative must be able to prove that its injury is fairly traceable to the defendant's allegedly unlawful conduct. *See* U.S. Const. Art. III, § 2, cl. 1; *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)) ("The [alleged] injury must be fairly traceable to the challenged action of the defendant…"); *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003) ("[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."); *Nw. Envtl. Advocates v. United States DOC*, No. C16-1866-JCC, 2019 U.S. Dist. LEXIS 1799, at *5 (W.D. Wash. Jan. 4, 2019) (granting leave to conduct discovery on standing).

### WHOLESALERS' RFPS SEEK BASIC, RELEVANT INFORMATION THAT TPPS SHOULD BE ORDERED TO PRODUCE

While each of the above elements and defenses would be an independently appropriate area of full discovery, Wholesalers created a limited set of 28 RFPs to target only the most relevant and critical information. Because Wholesalers' RFPs may be easily grouped by topic, Wholesalers below brief these issues by category of discovery sought, including:

(1) identification of Claims that involve Wholesalers, and which Wholesaler is implicated in each of those Claims;
(2) proof of elements of UE;
(3) value of the VCDs to the TPPs and their insureds;
(4) damages to TPPs;
(5) communications/contracts with Wholesalers;
(6) negotiation of Assignments; and
(7) additional data fields for the Transactions.

---

[8] Courts routinely allow discovery of not only the elements of, but also defenses to, a UE cause of action. *See, e.g.*, *Ohio Cas. Ins. Co. v. Eagle Mist Corp.*, No. 4:19-CV-2974-MTS, 2022 WL 2045917 at *1 (E.D. Mo. June 7, 2022) (The Court found Defendants sought relevant information to their defenses based on Defendants' contention that Plaintiffs acted in bad faith"); *N.K. Collins, LLC v. William Grant & Sons, Inc.*, 472 F. Supp. 3d 806, 844-45 (D. Haw. 2020) (denying summary judgment on unjust enrichment claim because opposing party did not have the opportunity to conduct discovery on the defense of unclean hands "the Court finds that Collins LLC is entitled to an opportunity to conduct the discovery necessary to make its case.")

**(1)    Identification of Claims that Involve Wholesalers (RFPs 1-4):** It is unclear how the TPP Class Reps are able to prove a UE claim against Wholesalers when there is no way to determine if any specific Wholesaler sold any particular VCD that was "covered" by the TPP. It is axiomatic that for a specific Wholesaler to have been *unjustly enriched* by a TPP Class Rep's coverage of a specific VCD prescription, *the specific Wholesaler must have actually sold the specific VCD "covered" by the TPP*. In response, the TPP Class Reps have repeatedly represented to this Court that they are (or will be) able to determine which Wholesaler sold a particular VCD made the subject of a Claim.[9] Despite these representations, to date, the TPPs have not provided any evidence to prove a specific Wholesaler sold any particular VCD made the subject of a specific Claim upon which a TPP Class Rep brings suit.

Thus, RFP Nos. 1-4, specifically seek documents and information that would identify the Wholesaler, if any, involved in each Claim, and the nature of the parties' relationship and expectations in relation thereto. For example, RFP No. 1 seeks with regard to each Claim:

RFP 1a:    identification of Wholesaler who sold VCD;
RFP 1b:    whether TPP purchased the VCD directly from Wholesaler;
RFP 1c:    any direct relationship between TPP/Wholesaler;
RFP 1d:    amount billed TPP by Wholesaler;
RFP 1e:    amount paid Wholesaler by TPP; and
RFP 1f:    any adjusted amount paid to Wholesaler by TPP.

Ex. 1, RFP No. 1. RFPs 2-4 merely seek the documents that relate to the information produced in response to RFP No. 1.

In UE parlance, Wholesalers need the requested discovery on the issues of whether: (1) the specific Wholesaler received a benefit; (2) it would be "unjust" for the Wholesaler to retain the profit and more equitable for that profit to go to the TPP; and, in states where required, whether: (3) the TPP expected remuneration from that specific Wholesaler; (4) the TPP-Wholesaler relationship on the Claim was sufficiently direct; (5) the conduct of that specific Wholesaler regarding the specific Claim constituted wrongdoing; and/or (6) the TPP Class Rep had standing to bring the Claim against a specific Wholesaler.

In their proposed RFP revisions, Exhibit 2, Plaintiffs agree only to produce "documents on which [they] intend to rely to show damages and/or equitable or legal relief from Wholesalers." Wholesalers need *all* documents related to identification (or lack thereof) of a specific Wholesaler involved in a specific Claim and any benefit conferred. If there is evidence linking a specific

---

[9] *See, e.g.*, Special Master Rep. Pg. 12, fn. 9 (ECF 1614) ("Plaintiffs persuasively respond they have alleged the unique National Drug Code ("NDC") numbers for VCD that they purchased, that the VCD numbers will enable identification of the wholesalers and retailers, and that *discovery on this aspect of the case is continuing*.") Plaintiffs have even acknowledged that establishing standing and traceability of injuries are part of their burden when they state, "*Plaintiffs Have Standing and Their Injuries Are Traceable to Defendants*" Pl.'s Reply Mem. Pg. 6, 14 (ECF 1382). Moreover, the TPPs begged off having to produce such evidence of proximate causation at the time they sought leave to amend their Complaint: "The Wholesaler Defendants' only dispute is that not every named Plaintiff identified the exact contaminated VCD unit that each Wholesaler Defendant distributed. This argument sidesteps the reality that the *Plaintiffs' allegations at this stage need not establish proof of proximate causation*." Pl.'s Reply Mem. Pg 13-14 (ECF 1382).

Wholesaler to a specific Claim, the TPP Class Reps must produce it; if there is not, the TPP Class Reps must admit it. It is also likely the TPP Class Reps have no such documents, but their attempt to change the question to avoid admission of their lack of proof should be taken for what it is: an improper dodge. These RFPs relate to the identification of specific Wholesalers involved in the specific Claims and any direct benefit conferred. They are appropriate and answers should be ordered.

**(2)   Elements of the UE Cause of Action (RFPs 11-16):** The Requests under the "Elements of Unjust Enrichment Cause of Action" category track the essential elements of a typical UE claim nearly to the letter, seeking with regard to each Claim, the:

| | |
|---|---|
| RFP 11: | benefit conferred by TPP on Wholesaler; |
| RFP 12: | portion of benefit unjust for Wholesalers to retain; |
| RFP 13: | misleading action by Wholesaler; |
| RFP 14: | expectation of remuneration from Wholesaler; |
| RFP 15: | wrongdoing/improper conduct by Wholesaler; and |
| RFP 16: | action by Wholesaler that caused direct or indirect damage. |

The TPP Class Reps either have the factual evidence to prove their case or they do not. These non-objectionable, elemental requests are appropriate, and the TPP Class Reps should be compelled to respond.

**(3)   Value/Benefit of the VCDs to the TPPs (RFPs 22-28):** Wholesalers' "value/benefit" Requests are directed to a determination of the equities and actual circumstances vis-à-vis the parties; particularly, any benefit provided by the Wholesalers, or the VCDs they allegedly sold, to a TPP Class Rep. The Requests seek, for each Claim, documents regarding:

| | |
|---|---|
| RFP 22: | any value provided to insured; |
| RFP 23: | any value provided to the TPP Class Rep; |
| RFP 24: | lack of full value provided to insured; |
| RFP 25: | lack of full value provided to the TPP Class Rep; |
| RFP 26: | VCD safety and inclusion on the TPP's formulary; |
| RFP 27: | underlying medical records reflecting therapeutic effect of the VCD; and |
| RFP 28: | revenue, expense, cost and profit. |

Of course, there are numerous ways a trier of fact could assess the equities of the circumstances of the underlying events and the appropriate party entitled to Wholesalers' profits. All will require proof, however, of the **value or benefit of the VCDs, if any, to the TPP Class Reps**. Wholesalers intend to argue that the VCDs they allegedly sold to the TPPs allowed the TPP Class Reps to fulfill their contractual obligations to their insureds. *See*, *MHA, LLC v. Amerigroup Corp.*, 539 F. Supp. 3d 349, 361 (D. N.J. 2021). Those same VCDs provided therapeutic benefit to the TPP Class Reps' insureds, who did not have heart attacks or strokes thanks to the medication they ingested. Customer satisfaction due to the TPPs' coverage of the VCDs may have in turn enhanced the value of the TPPs' businesses.

Even more concretely, the VCDs allowed the TPPs to earn fees—and likely a profit—on each Claim transaction. This **profits information** (RFP 28) is critical for the Wholesalers' defense for three reasons. *First*, that the TPP Class Reps may have made a profit on VCDs is a critical area for discovery on the UE elements of "justness" and "equity of circumstances." A trier of fact should not be asked to award Wholesalers' profits to the TPPs without any evidence of whether the TPPs were actually injured by the Wholesalers—or instead, whether TPPs actually profited from their purchases of VCDs allegedly involving Wholesalers.

*Second*, the TPPs' profits from coverage of the VCDs they allegedly obtained from Wholesalers are relevant to the question of whether the TPP Class Reps come to this Court with unclean hands. Wholesalers assert that the TPP Class Reps have engaged in the same behavior of which they accuse the Wholesalers: unknowingly profiting off the sale of impure VCDs. The clean hands doctrine demands that "a suitor in equity must come to the court with clean hands and must keep them clean after his entry and throughout the proceedings." *Hageman v. 28 Glen Park Assoc., L.L.C.*, 952 A.2d 533, 536 (N.J. Super. Ct. Ch. Div. 2008) (citing *Hollander & Son, Inc. v. Imperial Fur Blending Corp.*, 66 A.2d 319 (N.J. 1949)). Indeed, a plaintiff shall be denied relief if he himself is guilty of the same inequitable conduct that forms the basis of the suit. *Id.*; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*, 265 F. Supp. 2d 440, 444 (D. Vt. 2003) (denying, under the doctrine of unclean hands, a preliminary injunction on the grounds that "Merrill Lynch seeks to enjoin the same behavior in which it engages as a matter of company policy"). Wholesalers are entitled to prove the amount of profits the TPPs generated for themselves by virtue of the same behavior upon which the TPP Reps sue Wholesalers.

*Third*, it is undisputed that, from the start of this case, the TPP Class Reps have declared that the VCDs they purchased were "worthless." See Op. Certification of Proposed Classes Pg. 22, 23, 91 (ECF 2261). Having directly placed the worthlessness (or lack thereof) of the VCDs in issue in this case, the TPP Class Reps may not now avoid discovery on their profits from VCD-related transactions, i.e., whether the VCDs they allege the Wholesalers sold were worthless to them.

In response to these well-founded value/benefit Requests, the TPP Class Reps, though seeking discovery of *Wholesalers'* profits, balk at production of their *own* profits, without reason other than "we're the plaintiffs." The TPP Class Reps also oppose production of the medical records related to the Claims, arguing that it would require them to collect the records. RFP 27 is narrow on this point. Wholesalers seek only medical records currently in the possession of the TPP Class Reps that relate to the therapeutic effect (or lack thereof) of the VCD covered in a specific Claim to a particular insured. Wholesalers will work with the TPP Class Reps to appropriately safeguard those records under the Protective Order and otherwise. The value/benefit RFPs are directly relevant to the elements of UE and issues the TPP Class Reps have themselves raised.

**(4)    Damages to TPP Class Reps (RFPs 17-21):** These RFPs are basic requests to produce the documents that relate to the type, amount, and method of calculation of TPP Class Rep damages for each Claim. These Requests specifically seek, with regard to each Claim:

    RFP 17:    type of damages sought;
    RFP 18:    documents related to damages claimed;
    RFP 19:    specific Wholesaler from whom damage for Claim is sought;

>   RFP 20:   methodology used to calculate damage; and
>   RFP 21:   any direct expense that would not have been incurred regardless of drug covered.

Wholesalers are entitled to discovery of these fundamental damage calculations, and also to an answer as to whether the TPP Class Reps have incurred any expense they would not have incurred regardless of the medication covered under a specific Claim. It is Wholesalers' position that the TPP Class Reps have *not*: they have not paid medical bills for any personal injury; they have not had to refund premiums, deductibles or co-pays for the coverage of the VCDs; they have not paid fees for coverage of the VCDs they would not have had to pay regardless of the drug covered; and they have not had to order "replacement" drugs. This potential reality—that the TPPs were not "harmed" in any financial sense by the alleged sale of the VCDs by Wholesalers—is a critical part of the trier of fact's weighing of the elements of the UE claim and the determination of which party is most entitled to Wholesalers' profits.

In response, the TPP Class Reps suggest they would produce only damage documents upon which they intend to rely at trial. Damage and harm-related discovery is fundamental, routinely ordered, and should be so ordered here. *See, e.g.*, *Fox v. Cheminova, Inc.*, No. CV 00-5145 (TCP) (ETB), 2006 U.S. Dist. LEXIS 11463, at *25-27 (E.D.N.Y. Mar. 1, 2006); *Rawnsley v. Superior Court*, 183 Cal. App. 3d 86, 91, 227 Cal. Rptr. 806, 808-09 (1986); *Johnston v. Brumlow*, Nos. S-14275, 14306, 2012 Alas. LEXIS 115, at *15 (Aug. 29, 2012).

**(5)   Communications/Contracts with Wholesalers (RFPs 7-9):** These RFPs are simple requests to produce documents that relate to communications and agreements between the parties. These Requests specifically seek documents relating to:

>   RFP 7: contracts or agreements between the parties;
>   RFP 8: communications between the parties regarding any Claim(s); and
>   RFP 9: communications between the parties regarding the VCDs covered by the Claim(s).

Dealings between parties are a fundamental subject of discovery regardless of the cause of action. *See, e.g., Intarome Fragrance & Flavor, Corp. v. Zarkades*, No. CIV A 07-873 DRD MAS, 2008 WL 4449629, at *1-2 (D.N.J. Oct. 1, 2008) (finding discovery related to any communications, business transactions, or agreements between the parties relevant to various claims, including conversion, misappropriation, unfair competition, tortious interference, and unjust enrichment); *Molinos Valle Del Cibao v. Lama*, No. 07-23066-CIV-UNGARO/SIMONTON, 2008 U.S. Dist. LEXIS 62111, at *10 (S.D. Fla. Aug. 14, 2008) (noting, in a discovery dispute, that there is no question that parties' prior dealings are relevant); *Ho v. Marathon Patent Grp., Inc.*, No. 5:21-cv-339-PSG (SPx), 2021 U.S. Dist. LEXIS 118462, at *18 (C.D. Cal. June 23, 2021) (holding parties' prior business communications were sufficiently relevant to plaintiff's implied contract claims). The TPP Class Reps, however, are only willing to produce contracts, not communications. Ex. 3, Plaintiffs RFP Redline at p. 2.

Wholesalers do not believe that the TPP Class Representatives have had any interaction with Wholesalers, in the normal course of their business, or with regard to the TPPs' Claims or coverage of the VCDs in issue. However, if the TPP Class Representatives *do* have documents reflecting

contractual relationships or inter-company communications, Wholesalers are entitled to that information. The evidence relates, of course, to: (1) the nature and extent of the dealings between the parties; (2) any benefits provided to Wholesalers or to the TPP Class Reps from those relationships; (3) detail on the "directness" of such relationships, which is an important element of UE under some states' laws; (4) detail regarding the TPP Class Representatives' expectations with regard to the Wholesalers; and (5) the equities between the TPP Class Representatives and Wholesalers. The TPP Class Representatives should thus be ordered to respond to these contract/communications Discovery Requests.

**(6) Communications Regarding Assignments (RFP 10):** This Request is directed at MSP and the health insurance Assignors that purportedly executed the assignments that assigned to MSP the subject UE cause of action for prosecution (the "Assignments"). Specifically, RFP 10 states:

> RFP 10: For each Claim that you obtained through an assignment, any and all communications between you and the party making the assignment reflecting the negotiation of the assignment.

Other federal courts have recognized that MSP, an entity that exists only to pursue lawsuits on behalf of health insurers in return for a portion of the spoils, is a new and unique entity that has raised judicial concerns. *See MSP Recovery Claims, Series LLC v. Takeda Pharms. Am., Inc.*, No. 19 CIV. 5610 (NRB), 2021 WL 4461773, at *1 (S.D.N.Y. Sept. 29, 2021) (describing the MSP plaintiffs there as "not themselves the third-party payors; rather, they are limited liability companies that purchased the claims of the 56 organizations … and essentially serve as litigation vehicles"); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 872, 878 (7th Cir. 2021) (referring to the MSP entities as litigation "debt collectors" whose "approach" in other cases "is not sitting well with many judges"). As a result, courts have recognized that it is appropriate for defendants to obtain discovery to fully understand the nature of MSP's business, MSP's assignors, and the scope and intended targets of MSP's assignments. *See MSP Recovery Claims Series, LLC v. Sanofi-Aventis U.S. LLC*, No. 218CV2211BRMCLW, 2021 WL 4306866, at *6 (D.N.J. Sept. 22, 2021) (affirming the special master's grant of the defendants' motion to compel against MSP entities which "ordered Plaintiffs to produce the same documents and information from each assignor that Defendants would have been entitled had the assignors brought the lawsuit themselves"); *MSP Recovery Claims, Series LLC v. Mallinckrodt ARD, Inc.*, No. 20 CV 50056, 2020 WL 3618679, at *4 (N.D. Ill. July 2, 2020) ("Because the Assignment Agreements confer upon [the MSP] Plaintiffs the contractual right to obtain documents from assignors necessary to pursue the assigned claims, Plaintiffs have 'control' of such documents and must produce documents responsive to Defendants First Request for Production of Documents that are in the possession of the assignors.").

Moreover, on numerous occasions, MSP has misrepresented the scope of the rights obtained from Assignors, which, once demonstrated, has resulted in dismissal of MSP's causes of action. *See MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. 21-56395, 2023 WL 1793469, at *2 (9th Cir. Feb. 7, 2023) (affirming the district court's dismissal of MSP and related entities' claims because other records showed that the assignor had already assigned the rights of recovery to another entity prior to entering its assignments with the MSP-related entities); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 217CV02559CASPLAX, 2022 WL 1690150, at *7-9 (C.D. Cal. May 25,

2022) (granting summary judgment to dismiss MSP entities' claims because, in part, documentation showed that the MSP plaintiffs did not own the claims at issue at all, when the suit was filed, or without further proof from "extrinsic items" not produced by the plaintiffs). In this case, MSP and Assignors have produced the subject Assignments, but have refused to produce the unprivileged negotiations leading up to execution of those Assignments. Wholesalers submit that the requested communications will provide insight with regard to the actual scope of the Assignments, whether Wholesalers were ever discussed as a potential defendant with regard to the Assignments, and the inner workings of MSP – critical given MSP's role as a TPP Class Representative.

**(7) Additional Claims Data Not Previously Produced (RFPs 5 and 6):** In these Requests, Wholesalers seek fundamental information regarding each Claim that appears not to have been previously produced, including for each covered Claim:

| | |
|---|---|
| RFP 5(c): | the insurance carrier ID; |
| RFP 5(d): | the group plan ID; |
| RFP 5(e): | the plan code; |
| RFP 5(f): | the member/patient identifier; |
| RFP 5(p): | the amount paid to any non-Wholesaler on the Claim; |
| RFP 5(q): | the adjusted amount paid to any non-Wholesaler on the Claim; and |
| RFP 6: | Assignor records regarding each Claim made contemporaneously with the processing of the Claim.[10] |

The **carrier ID, group plan ID and plan code fields (RFP 5(c)-(e)** are necessary for Wholesalers to track each Claim to the related insurance policy and formulary. The member/patient identifier will allow Wholesalers to determine the number of Claims that relate to a single insured, so that all issues and arguments may be marshaled for those Claims and only made once.

The **amounts paid by the TPP Class Reps to non-Wholesaler entities** reflect the detriment/costs of the VCD to the TPP Class Reps and will provide important evidence regarding the equities between the parties under the circumstances of the underlying transactions. Other courts have recognized the propriety of discovery from the plaintiff of the value of alleged benefit conferred. *See, e.g.*, *Bauer v. Pourciau*, No. CV 18-5611-WBV-MBN, 2020 WL 5542863 (E.D. La. Sept 16, 2020) (in baseball player's unjust enrichment suit against defendants he claimed were unjustly profiting off plaintiff's persona, the court granted defendants' request for discovery from plaintiff of the *value* of plaintiff's intellectual property rights); *Dryer v. Nat'l Football League*, No. 09-CV-2182 (PAM/XXX) 2011 WL 13136546 at *1 (D. Minn. Jan 5, 2011) (NFL players sued for unjust enrichment by the NFL for violation of players' publicity rights and the court ordered the players to produce documents related to the value of those rights as relevant to the UE claim and defenses thereto). Here, the TPP Class Reps have claimed that Wholesalers have unjustly retained a benefit they conferred, presumably money. Wholesalers must have access to the value/amount paid in order to determine the justness of retention of all or part of that payment by Wholesalers.

---

[10] The TPP Class Reps have agreed to produce 5 (a, b, g-o) and Wholesalers drop their request for 5(r-t). Additionally, if any of the disputed fields have been previously produced in a form not recognizable by Wholesalers due to nomenclature, it would be sufficient for the TPP Class Reps to indicate by field and bates number the correlative information.

Finally, the **records of the Claim coverage and processing**, generated contemporaneously by the TPP Class Rep, will reflect real time assessment of the value and safety of the VCDs and knowledge (or lack thereof) of Wholesaler involvement.

## CONCLUSION

Despite the demonstrated relevance of the RFPs, the TPP Class Reps continue to oppose full and fair discovery of their UE claim. Without responses to the requested RFPs, Wholesalers will be denied discovery of the TPPs' cause of action, and their ability to prepare a full and complete defense of the case will be prejudiced. Wholesalers therefore request that this Court order the TPP Class Reps to respond to the submitted RFPs in their entirety, and for all other relief in law and in equity to which Wholesalers may be entitled.

Very truly yours,

| | |
|---|---|
| */s/ D'Lesli M. Davis* | */s/ Daniel Campbell* |
| D'Lesli M. Davis | Daniel T. Campbell |
| Ellie K. Norris | Marie S. Dennis |
| Norton Rose Fulbright | Crowell & Moring LLP |
| Counsel for McKesson Corporation | Counsel for Cardinal Health, Inc. |

*/s/ Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
Ulmer & Berne LLP
Counsel for AmerisourceBergen Corporation