UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CIVIL ACTION NUMBER:

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION              19-md-02875-RBK-TIV

CASE MANAGEMENT CONFERENCE

    Mitchell H. Cohen Building & U.S. Courthouse
    4th & Cooper Streets
    Camden, New Jersey 08101
    Wednesday, June 7, 2023
    Commencing at 1:16 p.m.

B E F O R E:        THE HONORABLE ROBERT B. KUGLER,
                    UNITED STATES DISTRICT JUDGE

                    THE HONORABLE THOMAS I. VANASKIE (Ret.),
                    UNITED STATES SPECIAL MASTER

A P P E A R A N C E S:

    MAZIE SLATER KATZ & FREEMAN, LLC
    BY:  ADAM M. SLATER, ESQUIRE
    103 Eisenhower Parkway
    Roseland, New Jersey 07068
    For the Plaintiffs


    GOLOMB & HONIK, P.C.
    BY:  RUBEN HONIK, ESQUIRE
    1835 Market Street, Suite 2900
    Philadelphia, Pennsylvania 19103
    For the Plaintiffs


        Sharon Ricci, Official Court Reporter
            sharon.ricci.usdcnj@gmail.com
                267-249-8780

    Proceedings recorded by mechanical stenography; transcript
        produced by computer-aided transcription.

**A P P E A R A N C E S (Continued):**

KANNER & WHITELEY, LLC
BY:  CONLEE S. WHITELEY, ESQUIRE
     DAVID J. STANOCH, ESQUIRE
701 Camp Street
New Orleans, Louisiana 70130
For the Plaintiffs


RUEB STOLLER DANIEL LLP
BY:  BEHRAM V. PAREKH, ESQUIRE
515 S. Figueroa Street, Suite 1550
Los Angeles, CA 90071
For the Plaintiffs


GREENBERG TRAURIG LLP
BY:  STEVEN M. HARKINS, ESQUIRE
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
     AND
BY:  GREGORY E. OSTFELD, ESQUIRE
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
For the Defendants, Teva Pharmaceutical Industries, Inc.,
Teva Pharmaceuticals USA, Inc., Actavis LLC,
and Actavis Pharma, Inc.


BARNES & THORNBURG LLP
BY:  KARA KAPKE, ESQUIRE
11 South Meridian Street
Indianapolis, IN 46204
     AND
BY:  KRISTEN L. RICHER, ESQUIRE
2029 Century Park East, Suite 300
Los Angeles, CA 90067
For the Retailer Defendants and CVS Pharmacy, Inc., and
Rite Aid Corporation


**ALSO PRESENT:**

LORETTA SMITH, ESQUIRE
Judicial Law Clerk to The Honorable Robert B. Kugler

Larry MacStravic, Courtroom Deputy

```
 1              (PROCEEDINGS held in open court before The Honorable
 2   Robert B. Kugler and The Honorable Thomas I. Vanaskie, (Ret.)
 3   District Judge, at 1:16 p.m.)
 4              THE COURTROOM DEPUTY:  All rise.
 5              JUDGE KUGLER:  Thanks.  Have a seat, everybody.  Come
 6   back to Camden, don't mind the smoke.  The earth is burning
 7   apparently.  I don't know.
 8              All right.  I believe we want to start, Mr. Slater has
 9   asked for a few minutes to bring up a new matter, so we'll
10   start with you, Mr. Slater.
11              MR. SLATER:  Thank you, Your Honor.  I'm pleased to
12   announce that the plaintiffs and the Hetero defendants have
13   reached a settlement in principle of the Valsartan economic
14   loss claims, Valsartan medical monitoring claims, Valsartan
15   personal injury claims with regards to the contaminated
16   Valsartan, which was on the market for approximately two
17   months; and the Losartan medical monitoring and Losartan
18   personal injury claims.
19              We're still working on just papering the agreement,
20   but we have reached agreement in principle on material terms
21   and there's a few other issues that we're going have to tie up.
22              And the only thing I'll announce, just for the benefit
23   of anyone in the court, is that as to the personal injury
24   settlements, the eligibility cutoff to participate was
25   yesterday at 9:00 a.m. for a case to either have been filed or
```

1  placed on the census that we've been maintaining as a

2  plaintiffs' steering committee.

3        So beyond that, there's really nothing else for me to

4  say, but I thought that it was very important for the Court and

5  the other participants in litigation to know that that's

6  happened, we've reached that point; and to the extent that it

7  impacts any of the arguments today, that information is out

8  there for people participating.

9        JUDGE KUGLER:  All right.  Thank you.

10        MR. SLATER:  Thank you.

11        JUDGE KUGLER:  There's a number of matters that we

12  want to discuss on your agendas.  Let's start with the easy

13  stuff, which is the deficiencies and the pending orders to show

14  cause.

15        MR. HARKINS:  Good afternoon, Your Honor.  Steve

16  Harkins with Greenberg Traurig for the joint defense group.

17        JUDGE KUGLER:  Apparently the Bixler and Jiles,

18  J-I-L-E-S, matters have been resolved; is that correct?

19        MR. HARKINS:  That's correct, Your Honor.

20        JUDGE KUGLER:  We'll dismiss the order to show cause

21  on that.

22        And the Hardwick case you want another month; is that

23  correct?

24        MR. HARKINS:  That's correct, Your Honor.  We'd ask

25  that that be continued to the next case management conference.

1          JUDGE KUGLER:  All right.  We'll continue the Hardwick

2     until the next month's meeting.

3          Then we have five cases you want to list for an order

4     to show cause.  Any changes in that?

5          MR. HARKINS:  One update, Your Honor.  Number 4 on the

6     list, Thomas Fogarty, that has resolved and the request for an

7     order to show cause can be withdrawn.  And we would ask for

8     orders to show cause returnable at the next case management

9     conference in the other four cases.

10          JUDGE KUGLER:  Anybody here on the matter of Ricky

11     Young that want to be heard?

12          (No response.)

13          JUDGE KUGLER:  How about Jacquelyn Smason,

14     S-M-A-S-O-N, anybody want to be heard on that?

15          (No response.)

16          JUDGE KUGLER:  Rafael Feria, F-E-R-I-A, anyone want to

17     be heard on that matter?

18          (No response.)

19          JUDGE KUGLER:  And Robert Janecek, J-A-N-E-C-E-K,

20     anyone want to be heard on that matter?

21          (No response.)

22          JUDGE KUGLER:  All right.  They will be listed for

23     orders to show cause why they shouldn't be dismissed,

24     returnable at the next meeting.

25          And then you have 31 you want to list.  Any changes on

1    that?

2         MR. HARKINS:  That's correct, Your Honor, and no

3    changes.  These cases are being listed for the first time, so

4    we'll simply list them again on the next agenda going forward.

5         JUDGE KUGLER:  Michael Goss, G-O-S-S.

6         (No response.)

7         JUDGE KUGLER:  Cynthia Earney, E-A-R-N-E-Y.

8         (No response.)

9         JUDGE KUGLER:  Regina Johnson.

10        (No response.)

11        JUDGE KUGLER:  Leslie Sturgill, S-T-U-R-G-I-L-L.

12        (No response.)

13        JUDGE KUGLER:  Russell Christian.

14        (No response.)

15        JUDGE KUGLER:  Taffnie, T-A-F-F-N-I-E, Williams.

16        (No response.)

17        JUDGE KUGLER:  The Estate of John Faragi, F-A-R-A-G-I.

18        (No response.)

19        JUDGE KUGLER:  Richard Parks.

20        (No response.)

21        JUDGE KUGLER:  George Cook.

22        (No response.)

23        JUDGE KUGLER:  Lawrence Addison.

24        (No response.)

25        JUDGE KUGLER:  Sharon Thomas.

```
 1              (No response.)

 2              JUDGE KUGLER:  Joseph George.

 3              (No response.)

 4              JUDGE KUGLER:  Michelle Worms.

 5              (No response.)

 6              JUDGE KUGLER:  Robert Lee.

 7              (No response.)

 8              JUDGE KUGLER:  Karl Bartels, B-A-R-T-E-L-S.

 9              (No response.)

10              JUDGE KUGLER:  Seifert, S-E-I-F-E-R-T.

11              (No response.)

12              JUDGE KUGLER:  Tom Lemen, L-E-M-E-N.

13              (No response.)

14              JUDGE KUGLER:  James Magee.

15              (No response.)

16              JUDGE KUGLER:  Phyllis Axt, A-X-T.

17              (No response.)

18              JUDGE KUGLER:  William Garewal, G-A-R-E-W-A-L.

19              (No response.)

20              JUDGE KUGLER:  Beatrice Meza, M-E-Z-A.

21              (No response.)

22              JUDGE KUGLER:  Jane Davis.

23              (No response.)

24              JUDGE KUGLER:  Stacey Thomas.

25              (No response.)
```

```
1              JUDGE KUGLER:  Arnold Vander.

2              (No response.)

3              JUDGE KUGLER:  Estate of Barbara Lipscomb.

4              (No response.)

5              JUDGE KUGLER:  Benjamin Andrews.

6              (No response.)

7              JUDGE KUGLER:  James Polk.

8              (No response.)

9              JUDGE KUGLER:  Phillip Quinn.

10             (No response.)

11             JUDGE KUGLER:  Estate of Tina Schram, S-C-H-R-A-M.

12             (No response.)

13             JUDGE KUGLER:  Boyko, B-O-Y-K-O; Achkova,

14   A-C-H-K-O-V-A.

15             (No response.)

16             JUDGE KUGLER:  And Dean Tasman, T-A-S-M-A-N.

17             (No response.)

18             JUDGE KUGLER:  Having heard no objection, they will be

19   relisted for the next meeting.

20             MR. HARKINS:  Thank you, Your Honor.

21             JUDGE KUGLER:  Thank you, sir.

22             All right.  The class notice proposal in this matter,

23   I'm not sure I understand why there's such a dispute about

24   this, to be honest with you.  Apparently you want more time to

25   brief this; is that right, everybody wants more time?
```

```
 1          MR. OSTFELD:  Your Honor, Greg Ostfeld on behalf of
 2   Teva.  Your Honor, plaintiffs have filed an initial class
 3   notice proposal, we filed an opposition.  It's my understanding
 4   that plaintiffs are -- haven taken consideration our
 5   opposition, wish to revise their class notice proposal, so I
 6   believe what they need is time to develop their revised class
 7   notice proposal, and then we just set a briefing schedule on
 8   the revised proposal.
 9          JUDGE KUGLER:  I'm not sure why this is that
10   complicated that we need all this briefing done.  I mean, the
11   class notice just has to be reasonably designed to reach the
12   maximum number of potential parties under the circumstances.
13   And we can't get perfection obviously, so I'm not sure why we
14   can't just sit down the two sides across the table and work
15   this out?  This is not the first time there's been class
16   notices sent out.
17          MR. PAREKH:  Your Honor, we think we can resolve most
18   of --
19          (Court reporter interruption.)
20          JUDGE KUGLER:  Your name, please.
21          MR. PAREKH:  Oh, I'm sorry.  Behram Parekh on behalf
22   of plaintiffs.
23          JUDGE KUGLER:  Thank you.
24          MR. PAREKH:  We believe we can probably work out all
25   of this in a relatively short period of time and present any
```

1  proposal.  The main wrinkle at this point is because of the

2  Hetero settlement, our idea would be to combine notice for both

3  settlement purposes and for the class purposes, and so we need

4  to work out the details of that and -- you know, so to try and

5  minimize cost to the class.  And so it's just a matter of

6  getting all of our ducks in a row for that.

7          JUDGE KUGLER:  I just don't want this to drag out into

8  the fall.

9          MR. PAREKH:  Absolutely not, Your Honor.

10          JUDGE KUGLER:  I want to move this thing along now.

11          MR. PAREKH:  Absolutely.

12          JUDGE KUGLER:  All right.  Well, I'm hoping then at

13  the next meeting you'll have news that you've got this

14  resolved.  If that means you have to sit down with each other

15  and talk to each other, I want you to do it, okay.  I want you

16  to get this done.

17          MR. PAREKH:  That's our goal.

18          JUDGE KUGLER:  All right?

19          MR. PAREKH:  Thank you, Your Honor.

20          JUDGE KUGLER:  All right.  You have some issues about

21  Case Management Order 32, correct?  That's why Judge Vanaskie

22  is here?

23          MR. STANOCH:  Yes, Your Honor.  David Stanoch for the

24  plaintiffs.  There will be some issues that we're still

25  negotiating with the retailers, that if there's any lingering

1  impasse, we'll submit them to Special Master Vanaskie next

2  week, but there's three issues we wanted to raise today.

3        One is the issue of telephone numbers.  And I'm hoping

4  this isn't rocket science for the Court or anyone else.

5  Retailers have agreed to produce the names, addresses, and if

6  available in their pharmacy dispensing records, emails for the

7  consumer class members.

8        After we reached that agreement, we got the

9  defendants' opposition to our notice plan.  There was a lot of

10 emphasis on direct notice.  We went back within 24 hours of the

11 HIPAA order that the retailers wanted to say we should add a

12 telephone number.  It's a readily identifiable data point that

13 will allow more effectively and less expensively contact to

14 class members.  We get -- everyone gets texts all the time.

15 It's in the same database they're going to.

16       JUDGE KUGLER:  That's the proposal, you're going to

17 text or robocall all of these people?

18       MR. STANOCH:  It will be part of the revised plan,

19 will be a proposal.  Probably text, Your Honor, but the final

20 decision has not been made yet.

21       JUDGE KUGLER:  Just because it's very cost effective?

22       MR. STANOCH:  Two reasons.  One is it's cost effective

23 and will save the class a substantial amount of money.  Even at

24 the cheapest postage rates, we're talking about millions of

25 people getting a postcard, which, you know, we all get

1   postcards in the mail, Judge; and then number two is, we've

2   been told by retailers that they don't believe they will have

3   many email addresses for consumers in their pharmacy database.

4        But we have reason to believe they'll certainly have

5   many more phone numbers because we all get texts from our

6   pharmacies all the time.  I got one yesterday from CVS for

7   myself at 5:47 p.m. that I have a prescription that's still

8   sitting there.

9        So yes, we think that -- given that they have the

10  data, it would be efficient for the class on expenses.  They're

11  going to the database anyway for the names, addresses, and

12  birth dates for claims eligibility.  That makes sense just to

13  pull just this one additional data point at this time.

14        JUDGE KUGLER:  But apparently we can't get agreement

15  from the defense side; is that correct?

16        MS. KAPKE:  Kara Kapke for the pharmacy defendants,

17  Your Honor.

18        We got this request last week and, honestly, it's not

19  an issue of burden, it's an issue of what the notice plan is

20  going to use these for.  We do have some privacy concerns.  I

21  think with this particular class, text messages may be an

22  intrusion of privacy, but ultimately I think that's up to the

23  Court.  And if the Court thinks that under HIPAA providing

24  telephone numbers is the minimum necessary disclosure for the

25  purposes of litigation, I think we can probably go ahead and

1  provide them if that's the guidance we're getting from the

2  Court.

3          We haven't seen the notice plan.  I certainly do think

4  that, you know, robocalls would be very intrusive, particularly

5  for this elderly population.  I don't know that this population

6  of people is actually going to get text messages.  I don't

7  know.  I haven't seen the notice plan, I don't know what the

8  numbers are.

9          But in terms of what we're willing to do, if the Court

10  thinks that this is truly compliant under HIPAA and this is the

11  minimum necessary disclosure to protect the class members'

12  privacy interest, I think the pharmacy defendants are willing

13  to do this.

14          JUDGE KUGLER:  What do you think the privacy interests

15  are?

16          MS. KAPKE:  Well, this is protected health

17  information.  It's -- you know, there is a privacy interest in

18  getting a phone call or a text message that is not necessarily

19  tied to the individual who received the prescription.  It's

20  also possible that these phone numbers are not linked to the

21  actual consumer who received the medication.  You know, these

22  are 12-year-old pharmacy records in some instances, and so it's

23  possible that some of those numbers, those telephone numbers

24  have been relinquished, it's possible that they've been -- the

25  person is deceased.  It's really -- I think it's up to the

1  Court to articulate if this is going to be part of the notice

2  plan.  And if it is and if there's not a finding that this

3  is -- if the Court thinks that this is necessary, we'll provide

4  it.

5           JUDGE KUGLER:  Well, almost by definition the phone

6  numbers are tied to people who have a prescription relationship

7  with the pharmacies, right?

8           MS. KAPKE:  As long as that phone number doesn't go to

9  a person who has since passed away or they've relinquished

10 their phone number, I think you're right, Your Honor.  Because

11 we're talking about phone numbers in the dispensing data.

12          So, you know, as long as there is some proposal on

13 plaintiffs' part to figure out how to make sure that those

14 numbers aren't part of a relinquishment or some other plan to

15 go through and make sure that those numbers actually have

16 stayed the same, which I think that they can do, I think we're

17 okay with doing this.

18          But we got this request last week and we haven't

19 talked to our clients.  Our clients do have, you know, privacy

20 concerns.  They're very protective of their protected health

21 information.  You know, they don't like to get calls from their

22 customers saying why did you give out my phone number and why

23 am I getting all these spam calls.

24          We don't know what the notice plan is going to say.  I

25 think if they robocalled everyone every night for two weeks,

1  that would be very intrusive.  So it depends on what they do,

2  and we just don't know what it is.

3         JUDGE KUGLER:  I can't imagine they're going to

4  robocall everyone for two weeks every night.  I just --

5         MS. KAPKE:  I hope not.  Although, I don't know.

6         JUDGE KUGLER:  Well, they're not going to, I can tell

7  you that, okay.  That isn't going to happen.

8         MR. STANOCH:  Judge, I'm looking at Mr. Slater, but I

9  think we'd even stipulate to that right now, that we will not

10 robocall all of these people every day for six weeks.

11        JUDGE KUGLER:  Well, it sounds like you're really not

12 that far apart.  Judge Vanaskie will enter whatever order you

13 need.

14        MR. STANOCH:  Thank you, Judge.

15        JUDGE VANASKIE:  You need to amend the HIPAA order?

16        MR. STANOCH:  Yes.

17        MS. KAPKE:  Yes.

18        JUDGE VANASKIE:  Okay.

19        MR. STANOCH:  Just two other items that we were hoping

20 to address today in this similar vein.  One is the third-party

21 payer identities.  There's no dispute with the retailers that

22 they're going to be producing something later about the amounts

23 paid that was ordered in CMO 302, but now we're on this topic

24 of notice.  And again, it came up when we got the opposition

25 from defendants about the prognostications about direct notice.

1  And he said, okay, well, we have party defendants, eight or

2  nine of them, who have the names or codes for entities where

3  they're intermediaries, the reported payers, give that to us

4  now too.  You're giving us the consumer names, addresses,

5  emails, and hopefully telephone numbers.  At the same time

6  you're doing that data pull, just give us the TPP insurer plan

7  paid name, we'll figured the dollars later, but give us these

8  names so we can include it in our revised plan.  It doesn't

9  have to be perfect, but this is another sort of information of

10  TPP class member.

11       So we would like to include that information in this

12  first-wave date pull so we get as much possible to have a

13  robust notice program.

14       JUDGE KUGLER:  You want to speak on that, please?

15       MS. KAPKE:  Yes, Your Honor.  Again, Kara Kapke.

16       I just want to say, we're not party defendants in the

17  TPP class.  I think that's worth mentioning.  And I also think

18  it's worth mentioning that this is not really something that

19  can be said in response to the opposition to class notice

20  because what we're talking about is in the class notice plan

21  for the TPPs, plaintiffs proposed using a list that they

22  purchased from an outside vendor that consisted entirely of

23  pharmacies and didn't contain a single TPP.

24       That was their proposal to provide notice to TPPs.  It

25  wasn't a matter of direct notice.  They were planning on giving

1   direct notice to these individuals who weren't themselves TPPs.

2   In fact, they were often employees of the pharmacy defendants.

3   There was a certified line specialist on that list.  It had no

4   relationships to TPPs themselves.

5         In terms of what we're being asked to do, I think it

6   boils down to what's in the data.  The examples that plaintiff

7   gave reflected two examples.  One from Cosco, which is not a

8   defendant, and the redacted information for the TPP plan was

9   just a numerical code, 4005; the other one had some letters

10  that, frankly, mean nothing to me, HNBND.  I don't know what

11  those numbers mean.  I don't know how plaintiffs can take

12  that and convert them into some sort of identification of a

13  TPP.

14        You know, if they want us to do that -- we haven't had

15  a chance to talk to our clients about what that is, what that

16  means.  We got this request on Friday.  But I think our bigger

17  concern is the secondary request that we're getting from

18  plaintiffs to give us the code to this, because I don't think

19  we have the code.  Again, we got this request on Friday, so I'm

20  not -- you know, everything I say is a little bit preliminary

21  here.

22        But from my understanding, our clients are not all

23  going to have any type of information that can make sense of

24  this.  That's a code that is used by other intermediaries.  So

25  I don't know what plaintiffs are going to do with this

1    information necessarily, and so I think it behooves us to say

2    that, you know, these new requests are something we really

3    haven't had a chance to investigate and the data is the

4    data.

5              And if all we're asking -- if all of the plaintiffs

6    are asking us to do is to provide some code that we don't know

7    what means and they can make sense of, then, you know, we might

8    be able to reach an agreement on that.  We need to run that by

9    our clients.  But I think we might be able to reach an

10   agreement on it.  It's the secondary comments in the letter

11   that gives us a little bit of a pause.

12             And separately, we have heard some concern from some

13   pharmacy defendants that there may be some contractual

14   restrictions about producing this en masse.  I don't know if

15   that's an issue here.  But if there is an identification of a

16   plan or a PBM or some type of thing and we disclose that en

17   masse, I don't know if there are contractual limitations such

18   that we have to provide notice.  That's something we need to

19   investigate before we can just readily agree to produce this.

20   We're certainly willing to do this.

21             And I think what I would propose as the next step on

22   this, finish running this down and if, you know, Mr. Stanoch

23   and the pharmacy defendants cannot work something out, we can

24   brief it in our next briefing submission to Special Master

25   Vanaskie, but I think we might be able to work something out

1  here.

2         JUDGE KUGLER:  Judge Vanaskie, how do you want to

3  proceed on that?

4         JUDGE VANASKIE:  Well, I think I'd like you to see if

5  you can figure a way to work this out, and if not, then include

6  it in the briefing.

7         Does that pose a timing problem from the plaintiffs'

8  perspective with respect to class notification?

9         MR. STANOCH:  No, Your Honor.

10         JUDGE VANASKIE:  Okay.  Then let's handle it on that

11  basis.

12         MR. STANOCH:  Very good, Your Honor.

13         MS. KAPKE:  Thank you.

14         MR. STANOCH:  And the last scintillating data issue is

15  about again the retailers.  And I'm sorry to pick on the

16  retailer, but they're the ones who have the data in these

17  instances.

18         We've been talking about their pharmacy dispensing

19  database.  That's the one when you go to the pharmacy counter

20  and you get a drug, they scan your card, et cetera.

21         We believe they also have additional customer

22  databases, loyalty program, rewards program, membership

23  program, what have you.  We've been told by them that they

24  think they do not have many emails in their pharmacy dispensing

25  data.  And again, email is important because it's a form of

 1   direct notice and we'll save a lot of money for the class.

 2        Our proposal was that -- once we heard this, is how

 3   about your other databases, the ones I listed?  Go get the

 4   emails for these folks from there so we could use that as well.

 5   You have those emails.  There's other cases that you've been

 6   ordered as third parties to produce it, you should produce it

 7   here.

 8        And their response is -- I won't rephrase it, but just

 9   as is in their letter, that there's issues of searching and

10   things of that nature.  But we think that this should be

11   ordered ahead of the revised notice program because, again,

12   this will be information to address defendants own concerns to

13   have a robust notice program, we should get these contact

14   information and other databases to include in it.

15        JUDGE VANASKIE:  Well, what's the burden to search

16   these other databases?

17        MS. RICHER:  Your Honor, the burden is quite

18   substantial actually.  So I want to flag -- sorry, Kristen

19   Richer, Your Honor.

20        This came up in the -- again recently, we're still

21   investigating, but we have done as best we could to track down

22   information to answer that question for Your Honor because we

23   knew you would be asking about that today.

24        You know, first I'll just flag that this is largely

25   duplicative information of the information that's coming from

1    the dispensing records, and I think that's part of the concern,

2    although not the entire concern.

3          But frankly, Your Honor, when it comes to actually

4    running these kinds of searches and the way that plaintiffs are

5    contemplating and given what this litigation is about, these

6    are difficult, costly, and, frankly, unreliable searches to

7    run.

8          Here we have prescription drugs that are at issue, so

9    we're not talking about front-of-store, over-the-counter

10   product, which is the example that was given to us by

11   plaintiffs' counsel when they mentioned that you had done this

12   in other litigations.  It was referenced to the Zantac

13   litigation, as I understand it, which those loyalty searches

14   really concerned over-the-counter Ranitidine that was sold not

15   by -- not behind the counter, not by the pharmacist.

16         For prescription drugs, a pharmacy's dispensing

17   records and patient profiles are the one true source of

18   accurate information about the patient filling their

19   prescription, it's how the pharmacy figures out who has filled

20   what, and it's how the pharmacy knows how to contact people.

21   And so if what we're talking about is accuracy in identifying

22   class members, the dispensing data that we're already searching

23   under the HIPAA order, that's the source for that information.

24         When we're talking about loyalty data, there are a

25   number of problems.  And I'll just run through some of them for

1   Your Honor.  This is somewhat general because we've talked to

2   numerous clients and tried to pull together what we could for

3   this.  Very often loyalty reward information, the sorts of

4   loyalty identifiers that plaintiffs are seeking or that we

5   would need to run these searches is not linked to a customer's

6   pharmacy profile.  They aren't required to use that number to

7   purchase things from the pharmacy and often -- unless they're

8   making front-of-store purchases at the same time, there's no

9   need for them to do so.

10       Some pharmacy systems don't have the ability to put

11  that information in at all, and for others what we're told is

12  it's very inconsistent whether th loyalty reward number is in

13  the pharmacy dispensing data.

14       For most pharmacies, loyalty rewards records generally

15  are not searchable by NDC, so the pharmacies can't run, for

16  example, an all-customer query for loyalty records to identify

17  who filled the NDCs at issue in this case.  That's just not how

18  the system is programmed.

19       They have to be searched on a consumer-specific basis,

20  which is troubling because we're not talking about a cluster of

21  unfiled personal injury claims here where plaintiff's counsel

22  is identifying people for us; we're talking about a class of, I

23  think Mr. Stanoch said earlier, millions and millions of

24  consumers.  So if we're the ones who are having to put the data

25  in to find these people's patient profiles, it becomes a lot of

1    searching.

2           In some instances those searches cannot be run en

3    masse.  So they have to be run either individually, customer by

4    customer, which many of the pharmacies had to go through the

5    expense of doing in Zantac and we're told that it was quite

6    burdensome and time consuming.

7           (Court reporter interruption.)

8           MS. RICHER:  In some instances the clients may be able

9    to search in batches, but there's a real concern about how big

10   that batch is and whether it can basically lock out the system

11   or cause problems.  So again, millions and millions of

12   consumers, we're not sure that it's even feasible to search

13   that way.

14          We generally need the consumer's information, two to

15   three identifiers to run these searches, and the results have

16   to be QCed because you end up with false hits, duplicative

17   profiles, weird stuff that comes back in and someone has to

18   mine through that data.  Again, with millions and millions of

19   consumers, you can imagine the time and expense there.

20          And the really tricky part is the identifier that you

21   really need is the loyalty number.  That's the best way to run

22   the search if you're going to do it.  But again, that's

23   generally not in the dispensing data.  Names can yield false

24   hits, DOBs often -- dates of birth often aren't entered because

25   you don't need to enter your date of birth to set up a loyalty

1  account.  That's actually true to email addresses themselves,

2  Your Honor.  Like, not everyone puts their email address in.

3  Addresses can yield false hits and people don't always put

4  their full address information in.

5       So what you need is a loyalty number, which is the

6  thing we don't have, and this isn't a circumstance where

7  plaintiffs' counsel is giving us the loyalty numbers.  We're

8  being told take this list of millions and millions of people

9  who filled out your pharmacies and go run these searches.  All

10  in all, we're not sure that this is even feasible.

11       It may -- to even try to do it, we would need to first

12  have the dispensing data that we're already pulling, which is

13  going to take some amount of time, as we told the Court, and

14  then we'd need to figure out if there's some way that we can

15  piece together information to query one or multiple databases

16  to look for emails.

17       And I think our real concern here is that that's all

18  being -- Judge Kugler, you said it earlier, there's no

19  100 percent perfect outcome when you're trying to identify

20  people for class notice purposes, but that's sort of what

21  plaintiffs are asking us to do here as we understand the

22  letter.  They're saying search all the databases where you

23  might have consumer's information, search all of those using

24  this huge data set of millions and millions of consumers, and

25  give us the stuff that's in there in case we need another way

1    to contact these people.

2          It may not be feasible, it would take an extraordinary

3    amount of time if it is feasible, and it certainly is very,

4    very burdensome.  So for those reasons, you know, we -- we're

5    still investigating this, but I can tell you that early

6    investigations suggest what we already told Mr. Stanoch, which

7    is that this is not something that's workable and we don't

8    think we should have to do it.

9          JUDGE VANASKIE:  Mr. Stanoch?

10          MR. STANOCH:  I won't get into the nitty-gritty, Your

11    Honor, and if you think this is something you want to hear more

12    on, later we would be happy to do it.  I would just say, I

13    heard a lot of "ifs," Your Honor.  If the data is inconsistent,

14    if we can't do this, if we can't do that, if it might not be

15    perfect.  That's not our touchstone here.

16          Defendants in their opposition to class notice said

17    you have to take reasonable efforts to do direct notice.  We

18    have party defendants who have emails that will give us direct

19    notice, they're just in a different database.  If the answer --

20    to address their concerns, that's the data we would use, one of

21    the multiple sets, to address that concern.

22          If they're going to say it's unreasonable and

23    burdensome, then they can't turn around and then say our class

24    notice program is insufficient for that reason.

25          And I'd also just say it's not just Zantac, Your

1  Honor.  There's multiple cases -- and I won't list them all

2  now -- these very same defendants, retailers, have produced as

3  third parties this same information from these systems before.

4  This isn't something new.  There's -- we can cite case after

5  case from Brooklyn to Washington to Kansas to Arkansas and

6  everywhere in between where we're finding that this information

7  is being provided for purposes of notice specifically from

8  retailers such as Wal-Mart, CVS, Target, even though it's not a

9  defendant, and others.

10         JUDGE VANASKIE:  The premise for the request is the

11  understanding or view that the information in the dispensing

12  databases will not have email addresses, you'll get it from a

13  different database?

14         MR. STANOCH:  That's right, Your Honor.

15         And I'm sure Ms. Richer or Ms. Kapke will correct me

16  if I'm wrong, but they've suggested to us that in the ordinary

17  course not all and probably many of the retailers pharmacy

18  dispensing databases maintain email.

19         And we put a few samples from our clients on records

20  in our letters to show -- you know, it doesn't show email

21  fields.  So we're worried that the pharmacy data, even though

22  they've agreed to produce email to the extent it exists in the

23  pharmacy dispensing records, that's going to be very

24  underinclusive.

25         MS. RICHER:  And, Your Honor, if I could just respond

1    to Mr. Stanoch's points just now?

2            JUDGE VANASKIE:  You may.

3            MS. RICHER:  So I just want to flag -- you know,

4    Mr. Stanoch has come back to the notice plan and to the

5    defendants' objections to the originally filed notice plan.  I

6    think we just have to flag that there's a huge delta between

7    what was originally proposed in that plan, which contemplated

8    no direct notice to consumers at all, essentially using social

9    media and pushed advertising to get to consumers, versus what

10   they're getting now and what they're contemplating using, which

11   includes from the dispensing data the one true source, names,

12   addresses, dates of birth, phone numbers, if the Court orders

13   it -- and it sounds like we may be able to get        there

14   with plaintiffs -- and email addresses if they're available.

15   That's drastically different than what was originally proposed.

16           So this -- the hand-wringing about, well, they

17   objected before so now we need them to take a scorched-earth

18   approach to find every possible contact point, to me that

19   shouldn't really carry the weight that the plaintiffs are

20   trying to put on it.

21           The other thing I do want to say is Mr. Stanoch hasn't

22   sent me the cases he has in front of him.  There's a huge

23   difference between the ability to search in some instances for

24   front-of-store products in someone's loyalty records and to use

25   that to pull together a dataset of people who use their loyalty

1    numbers to purchase those products, versus searching

2    back-of-store or pharmacy fills in loyalty products.  Because

3    like I said, those are not always linked accounts.

4         And even where a pharmacy purchase shows up in the

5    dispensing data, what we've heard from numerous clients is it

6    won't show up at -- you won't get the NDC information.  So it

7    may say that something was filled, but you won't know that it

8    was an admin issue NDC.

9         JUDGE VANASKIE:  Well, I suppose I should ask you to

10   submit some letter briefs on this issue.  I'd hate to make that

11   suggestion, but there's a -- you've referenced you've got

12   plenty of case law that says this data is routinely provided in

13   these types of matters, and opposing counsel has said not

14   familiar with that case law, that this is distinguishable.

15        I can certainly understand why it would be viewed as

16   distinguishable.  I can certainly understand the burden that

17   would be imposed to provide this information.  Perfect notice

18   or notice system designed for perfection is impossible.

19        So it seems to me that maybe it's a bit of an

20   overreaction on the part of the plaintiffs, the objections to

21   the original notice plan to now be seeking all this

22   information, but why don't you submit it in letter briefs and

23   we'll get it resolved as promptly as possible.

24        MR. STANOCH:  Yes, Your Honor.  Thank you.

25        MS. RICHER:  Your Honor, may I just raise one concern

 1    about letter briefing on this?

 2              JUDGE VANASKIE:  Yes.

 3              MS. RICHER:  So as originally contemplated when we

 4    submitted the proposed schedule for briefing to Your Honor, we

 5    have briefs due next Tuesday, our opening briefs.  I have some

 6    concern that we're not exactly sure, based on plaintiffs'

 7    letter, about what it is that they're asking, and we're still

 8    trying to pin down some information from our clients.

 9              So I'm a little bit worried that for this specific

10    issue that deadline is a little short on our end and that we

11    may need a slightly pushed-out briefing schedule on this.  I

12    certainly could brief for Your Honor everything that I just

13    talked about so that you have it in front of you.  And I would

14    really appreciate seeing Mr. Stanoch's cases that he's citing

15    because I think if there's room to meet and confer on this,

16    fine, let's meet and confer.  We have a call set for Friday,

17    maybe we'll talk about it then.

18              But if Your Honor is going to want something more from

19    us on burden, like affidavits, for example, I think that's not

20    realistic on this timeline and so we're really looking for the

21    Court's guidance on that.  We're not trying to delay getting to

22    this, just the way that the issue has come up has left us with

23    very little time to actually get things ready for that opening

24    brief if this is something that's going to end up...

25              JUDGE VANASKIE:  Mr. Stanoch?

```
 1          MR. STANOCH:  We prefer to keep the original schedule
 2    as-is, Your Honor, given how many other sensitive deadlines
 3    there are.  And I would suggest that if Your Honor believes
 4    there's more than whatever initial submission retailers submit,
 5    they have time to do a reply already in the existing schedule
 6    by the end of June, before the July 6th, I believe, hearing.
 7    And they could supplement it and we will not object if they
 8    come up with a burden affidavit at that reply because they
 9    don't have time to get it in time for next week with their
10    opening submission.
11          JUDGE VANASKIE:  I think that would be sufficient.
12    And so your burden affidavit could come in with your reply.
13          MS. RICHER:  Understood, Your Honor.
14          Could I just make one more point here, because I think
15    it's relevant to our discussion about timing and I don't want
16    it --
17          JUDGE VANASKIE:  Yes.
18          MS. RICHER:  Because this is duplicative information
19    or largely duplicative information, as we understand it, I
20    don't think we view that whatever happens with this -- I mean,
21    we mentioned this in our letter.  This is premature in many
22    ways.  I don't think we think it needs to interfere with what's
23    happening on the HIPAA order data pull.  Certainly if this data
24    were also eventually -- if we're told to pull this data,
25    eventually we would need some sort of order that governed that
```

1    and directed us to do it.

2            But I think that -- you know, plaintiffs are concerned

3    about class notice and needing to get this resolved as quickly

4    as possible.  This seems to be a very complicated issue.  And

5    Ms. Kapke and I are both of the view that we're going to be

6    moving forward on the HIPAA data pull no matter what from the

7    dispensing data, so I just want to flag for the Court that I

8    think some of those concerns are a little bit over-amplified as

9    well.

10            JUDGE KUGLER:  You have three more issues?

11            MR. STANOCH:  I think we're --

12            JUDGE KUGLER:  On page 8 you mention three more

13    things, but you're working them out?

14            MR. STANOCH:  Yes, Your Honor.  That was more by way

15    of update, where we're meeting, conferring numerous times,

16    we're going to continue to meet and confer on these issues.

17    We're hoping to narrow the issues.

18            We were originally planning for Special Master

19    Vanaskie with a letter briefing next week, and whatever's left

20    with those issues -- and a lot of it I think might just be

21    hopefully timing and contours of things specifically and it may

22    just be more of a thumbs up, thumbs down on which choice,

23    column A and column B, to choose from, Special Master Vanaskie,

24    versus something deeper, just for your own planning.

25            JUDGE VANASKIE:  All right.  Very well.

```
 1        MR. STANOCH:  And I'm sure Ms. Richer or Kapke will
 2   correct me if they disagree.
 3        MS. RICHER:  We hope that's true, Your Honor.
 4        MR. STANOCH:  Thank you, Judges.
 5        JUDGE KUGLER:  Anything else from the plaintiffs?
 6        MR. SLATER:  Nothing, Your Honor.
 7        JUDGE KUGLER:  How about from defense?
 8        MR. HARKINS:  Nothing, Your Honor.
 9        JUDGE KUGLER:  Well, that was certainly interesting
10   news we started the meeting with today.  Obviously we have
11   people in place to help you discuss settlement, but the
12   defendants may want to get on this train before it leaves the
13   station.
14        I get the sense that the plaintiffs are moving full
15   speed ahead on this and they're happy to talk to anybody who
16   wants to talk.  But I'm going to keep moving full speed ahead,
17   we are going to get to a trial on this case, and my
18   anticipation is it's going to be within this calendar year.
19        So anyway, with that, thank you, everybody.  We'll see
20   you -- we're still scheduled in July?  How about Thursday, the
21   27th of July?  Can we do that?
22        MR. OSTFELD:  Your Honor, I'm so sorry, I -- if we're
23   going to be discussing class notice, it will probably be me,
24   and I have a class certification hearing that morning.
25        JUDGE KUGLER:  Tuesday, the 25th?
```

```
1            MR. OSTFELD:  We can do that.

2            JUDGE KUGLER:  Tuesday, the 25th of July.

3            MR. SLATER:  That works.

4            JUDGE KUGLER:  Okay.  We'll see you then.  Enjoy the

5    summer.

6            (Matter adjourned at 1:55 p.m.)

7

8            - - - - - - - - - - - - - - - -

9

10           I certify that the foregoing is a correct transcript

11    from the record of proceedings in the above-entitled matter.

12

13    /S/ Sharon Ricci, RMR, CRR
      Official Court Reporter

14

15    June 7, 2023
           Date

16

17

18

19

20

21

22

23

24

25
```