# EXHIBIT A

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge |

### Declaration of Amy Tian

I, Amy Tian, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of Walgreen Co. ("Walgreens"), a Defendant in the above-captioned proceeding.

2. I have worked at Walgreens for approximately 21 years. At Walgreens, I am part of the data warehouse team as a systems analyst. In that role, I work with the information technology aspects of Walgreens' Enterprise Data Warehouse ("EDW") and am generally familiar with the types of data Walgreens maintains.

3. Within EDW, Walgreens maintains a pharmacy-specific database from which information relating to pharmacy dispenses may be obtained. This pharmacy-specific database contains patient information linked to the patient's pharmacy transactions, including contact information for the patient.

4. It is my understanding that Walgreens has already produced some information relating to pharmacy transactions involving valsartan at issue in this litigation, but that the

1

production did not include patient name or contact information due to privacy concerns. It is further my understanding that the Court in this case subsequently entered an order regarding protected health information, and Walgreens will be producing additional information from its pharmacy-specific database, otherwise generally known as "dispensing records," relating to the at-issue transactions, including a patient's name, date of birth, and available contact information.

5. I further understand that Plaintiffs in this litigation have asked Walgreens to search within their retail store "loyalty" databases for customers who made purchases of at-issue valsartan to attempt to obtain email addresses for those patients.

6. Walgreens does maintain a loyalty rewards database for customers who have signed up for the loyalty program, though customers need not enter complete or accurate information when signing up for the program. This loyalty database contains information linked to a customer's purchases if the customer provides an identifier at the time of purchase, typically by scanning a code on a physical loyalty card or providing a telephone number linked to the loyalty account. Information within the loyalty rewards database is kept for a shorter period of time than information associated with dispensing records, and only about 25% of loyalty reward numbers have any type of email address associated with them, though those email addresses are not verified and may not be accurately linked to the name on the loyalty account.

7. Walgreens' loyalty rewards database does not track prescription-specific information such as the National Drug Code or drug name associated with a particular prescription. Although a loyalty card transaction may be linked to a particular point-of-sale involving the pharmacy, there is no way to identify what specific drug was dispensed through the use of loyalty card records.

8. Because Walgreens cannot use a list of NDCs to query the loyalty database, or even

search its loyalty database for the word "valsartan," the only way to attempt to query the loyalty database would be by using individual patient identifiers found in the dispensing data.

9. Searching the Walgreens loyalty database by patient identifiers found in the dispensing data would be a complicated and time-consuming process, prone to error and challenges. Using dispensing data—which itself can take several weeks to query and pull—I and my colleagues would need to develop a process for searching the loyalty database with some combination of multiple patient identifiers to gather an initial subset of data that potentially identifies relevant customers. Although it is theoretically possible to create such a process from a technical perspective, the act of developing, testing, and performing quality control on this process would be burdensome for me, my team, and Walgreens generally. Given the tremendous size of the data pull, this process would require multiple, iterative steps and individuals to accomplish. I estimate the entire process could take dozens of hours of active, engaged employee time over the course of several weeks, if not months. This estimate assumes that we encounter no major road blocks, and does not include estimates for performing quality control of the data, which would be performed both by members of my team, and by outside counsel for Walgreens, given the significant privacy concerns associated with release of customer contact and health information. Moreover, the memory and computing power needed to run such a process would adversely affect Walgreens' ability to work on our ongoing projects and daily operations involving databases, including, for example, Walgreens' ability to interface with various state websites for controlled substance reporting.

10. Perhaps most importantly, however, Walgreens cannot verify that the email addresses within the loyalty database belong to the actual patient taking valsartan. This is true even if multiple identifiers in the dispensing and loyalty datasets match, as many households and

3

even unrelated individuals share the use of a loyalty card. Shared loyalty cards may use one person's name but a different person's email address.

11. If a shared account were to be used as the basis for class notification, there is no way to guarantee that the recipient of class notice is the same person who purchased and used at-issue valsartan. Providing information about the pharmacy patient's health history to someone other than the patient—even if a household member or acquaintance—would present significant privacy concerns. Likewise, producing contact information for a loyalty member when that person is *not* a member of the class would similarly present significant privacy concerns for Walgreens. Because customers entrust Walgreens with their medical information, the incorrect disclosure of their identities, medical conditions, or personal information could erode customer relationships and have an impact on Walgreens' business.

Executed June 21, 2023 at Deerfield, Illinois.

_____
Amy Tian