# EXHIBIT B

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge |

  **This Document Relates to All Actions**

### Declaration of Kishore Gannamani

I, Kishore Gannamani, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1.      I am authorized to provide this declaration on behalf of CVS Pharmacy, Inc. ("CVS"), a Defendant in the above-captioned proceeding.

2.      I have worked at CVS for over eight years and am currently employed as a Senior Manager, Architecture (IC).   In my current role, I work with the ExtraCare® loyalty rewards program and database, and other Service Oriented Architecture.

3.      In my capacity as Senior Manager, Architecture, I am familiar with the information contained in CVS's pharmacy dispensing data, and CVS's separate database for its customer loyalty rewards program, ExtraCare®.  I am also responsible for and familiar with the process for querying data from the ExtraCare® database in response to litigation requests.

4.      I understand that Plaintiffs in this litigation are seeking production of customer contact information from CVS's loyalty rewards database.  Because of the structural differences between CVS's database concerning pharmacy customers and its loyalty rewards database—

1

including that they are, in fact, two distinct databases and programs—production of this information imposes a significant burden on CVS.

5.      CVS maintains a pharmacy database for individuals who fill prescriptions through CVS retail pharmacies. The pharmacy database contains available patient information associated with the individuals' pharmacy patient profile, including name, mailing address, birth date, and telephone numbers linked to the patient's pharmacy purchases.

6.      Separately, CVS maintains a loyalty rewards database for customers who enroll in the ExtraCare® loyalty program. Membership is defined by the customer's "loyalty rewards number." The loyalty rewards database contains information linked to purchases if a customer provides an identifier at the point of sale, typically by scanning their loyalty card or providing the telephone number linked to their loyalty account.

7.      The pharmacy database is discrete from the loyalty rewards database, and does not have a field for entry or tracking of the pharmacy customer's ExtraCare® loyalty number.

8.      The loyalty rewards database does not track prescription-specific information such that CVS or its counsel could directly search the database to see which customers filled the relevant prescriptions at a CVS pharmacy. Loyalty rewards data cannot be queried by National Drug Code ("NDC"), nor by drug name. Information concerning these kinds of details about a patient's prescription fills at any CVS pharmacy are walled off from the ExtraCare® loyalty data for privacy purposes.

9.      Searching for patient contact information in the ExtraCare® loyalty database would be a complicated and time-consuming process, prone to error and challenges. To do so, I would need to develop and write a script to query this data in the ExtraCare® database, using personal identifying information for each individual patient queried from the dispensing database. Using

2

dispensing data—which itself can take several weeks to query and pull—I would need to develop a process for searching the ExtraCare® database with some combination of multiple patient identifiers (e.g., RX Patient ID, name, phone number, and address) to gather an initial subset of data that potentially identifies relevant customers. Because multiple people may, and often do, share a loyalty account with CVS (e.g., households, friends, family members), it is essential that any search rely on multiple patient identifiers—rather than just one—to help reduce the risk of inadvertent disclosure of the wrong individual's contact information.

10.     Although it is theoretically possible to write such a script and run those searches, practically speaking, the nature of the data available in the ExtraCare® database will pose significant challenges to any query relying on specific identifiers, or multiple identifiers. This is because many ExtraCare® profiles contain incomplete customer identifying information. For example, ExtraCare® members are not required to provide full name, date of birth, and address when creating ExtraCare® accounts. Prior to 2015, CVS did not require individuals to enter even a *single* identifier—even customer name—when opening a new ExtraCare® account. Although CVS initiated efforts to get either phone numbers or full names from customers applying for new ExtraCare® accounts sometime in 2019, ExtraCare® members are still not compelled to give both, much less their dates of birth, addresses, or email addresses. Furthermore, to date, legacy ExtraCare® accounts have not been required to update their accounts to provide additional personal identifying information to continue to use the program.

11.     Even when a customer does provide some identifying information when opening an ExtraCare® account, historically, CVS employees do not and are not required to independently verify the information that the customer enters. Some customers may use different names, fake names, or initials, and may provide false birth dates, inaccurate or outdated addresses, or

3

abbreviations when inputting this information—presumably because they do not want to receive ExtraCare® text messages, mail or emails from CVS.  Some customers may maintain multiple loyalty accounts with different information entered.  And the reverse can be true as well—multiple customers may share the same loyalty account.  If a shared account were to be used as the basis for class notification, there is no way of guaranteeing that the recipient of class notice is the same person who purchased and used the relevant medication.  Moreover, providing information about the pharmacy patient's health history to someone other than the patient—even if a household member or acquaintance—or providing the ExtraCare® member's contact information when that person is *not* a member of the class could both present significant privacy concerns for CVS.  Further, because customers entrust CVS with their medical information, the incorrect disclosure of their identities based on ExtraCare® loyalty profile, medical conditions, or personal information could erode customer relationships and have significant impacts on CVS's business.

12.     Finally, even assuming a custom script could be prepared, and the above-noted privacy concerns could be minimized, the act of developing, testing, and performing quality control on this process would be incredibly burdensome for me, my team, and CVS generally.  I estimate that writing the script alone, and testing and developing it given the size of this data pull, which concerns millions of customers, would likely take several weeks to perform.  This assumes that I encounter no major road blocks, and does not include estimates to pull the dispensing data, or estimates for performing quality control of the data, which would be performed both by members of my team, and by outside vendors and outside counsel for CVS, given the significant privacy concerns noted above.

4

Executed June 22, 2023 at Woonsocket, RI.

Kishore Gannamani  06/22/2023