# EXHIBIT C

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | Case No. 19-md-2875-RBK<br>MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge |
| **This Document Relates to All Actions** | |

### Declaration of Michael J. Paulk

I, Michael J. Paulk, being competent and over the age of twenty-one (21), state that I have personal knowledge of the following facts and hereby declare under penalty of perjury:

1. I am authorized to provide this declaration on behalf of Rite Aid Corporation, a Defendant in the above-captioned proceeding.

2. I have worked at Rite Aid for approximately 18 months. I am responsible for analyzing customer purchasing behavior for both our loyalty database and our pharmacy information, and am familiar with the limitations and issues with both databases. Additionally, I am familiar with the intersection of the two and the limitations and privacy restrictions of identifying a loyalty customer's information utilizing patient data.

3. In my capacity as Director, Customer Analytics, I am generally familiar with the information contained in Rite Aid's pharmacy dispensing data, as well Rite Aid's separate database for its customer loyalty rewards program, Rite Aid Rewards. I am also familiar with the process for querying data from the rewards database.

4. Rite Aid maintains a pharmacy database for individuals who fill prescriptions

1

through Rite Aid's retail pharmacies. It is my understanding that Rite Aid has already produced some information from this database involving the valsartan at issue in this litigation, but that the initial production did not include patient information. It is further my understanding that the Court in this case subsequently entered an order regarding protected health information, and Rite Aid will be producing additional information from the pharmacy database relating to the at-issue transactions, including a patient's name, date of birth, and available contact information, including email addresses.

5. I further understand that Plaintiffs in this litigation are seeking production of additional customer contact information, beyond what is in the dispensing data found within the pharmacy-specific database, requesting the Retail Pharmacy Defendants to search within their retail store loyalty data for customers who made purchases of at-issue valsartan.

6. Apart from the pharmacy dispensing data, Rite Aid does have a separate database for customers who enroll in its loyalty program, Rite Aid Rewards. This database contains information linked to a customer's purchases, so long as the customer provides his or her loyalty number or phone number at the point of sale. Although many customers do so by scanning their loyalty cards at the register, this is generally for "front-of-store" or non-prescription purchases. More than half of all Rite Aid pharmacy transactions are not associated with a Rite Aid Rewards number.

7. Customer profiles within the Rite Aid Rewards database are often incomplete or inaccurate. Rite Aid Rewards members are not required to provide full name, date of birth, address or email address when enrolling in the Rewards program. Many Rewards members simply showed up in person at a Rite Aid store, requested a loyalty card, and received one. Moreover, even when customers *do* provide their name and contact information to obtain a Rewards numbers, no one

verifies that information to ensure it is correct.

8. Some customers may input different names, fake names, or initials when signing up for the program. Other customers may provide incomplete, inaccurate or outdated postal or email addresses, presumably because they do not want to receive text messages, phone calls, or email messages from Rite Aid. Rite Aid also gives customers the ability to opt out of receiving phone, text or email communications.

9. It may be technically possible for Rite Aid to query its loyalty database where at-issue valsartan was dispensed. However, because of patient privacy concerns, Rite Aid places strict limitations on when, if ever, the Rewards database may be queried for any type of prescription information, and who has access to the databases to perform such queries. If compelled to perform such a query in this case by the Court, querying the loyalty database for transactions where at-issue valsartan was dispensed would identify only a fraction of the at-issue transactions, and an even smaller fraction of contact information (with no guarantee as to the validity of that information) would be available for those transactions.

10. Some customers may maintain multiple loyalty accounts with different information entered. The reverse can be true as well—multiple customers may share the same loyalty account. If a shared account were to be used as the basis for class notification, there is no way of guaranteeing that the recipient of class notice is the same person who purchased and used the relevant medication. Providing information about the pharmacy patient's health history to someone other than the patient—even if a household member or acquaintance—would present significant privacy concerns for Rite Aid. Likewise, producing contact information for a Rite Aid Reward member when that person is *not* a member of the class would similarly present significant privacy concerns for Rite Aid.

3

11. Thus, even if Rite Aid could produce a list of transactions where at-issue valsartan were dispensed from its Rite Aid Rewards database, it would need to cross reference identifiers within the loyalty database and within the dispensing data to attempt to minimize (though not eliminate) the risk of improper disclosure to household members or acquaintances sharing a Rite Aid Rewards card. That process of cross-referencing would be time consuming and fraught with potential error.

12. Moreover, even if a customer provides an email address to Rite Aid Rewards, he may have an expectation that he will not receive *pharmacy-related* emails relating to his personal health information at that email address. For example, a customer may choose to receive Rite Aid coupons at a work email address she provides to Rite Aid Rewards, but purposefully not provide that same email address to the Rite Aid pharmacy because she does not want her work email (which may be read by others besides her) to contain any reference to her prescriptions or protected health information.

13. Because customers entrust Rite Aid with their medical information, the incorrect disclosure of their identities, medical conditions, or personal information could erode customer relationships and have significant impacts on Rite Aid's business.

Executed June 21, 2023 at 5825 S Ashford Way, Ypsilanti, MI.

s/ *[signature]*
Michael J. Paulk

4