# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

June 27, 2023

*Via ECF*

The Hon. Thomas I. Vanaskie, Special Master
Stevens & Lee, P.C.
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

      Re:  *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
          No. 1:19-md-2875 (D.N.J.)

Dear Special Master Vanaskie:

Pursuant to Special Master Order No. 79 (ECF No. 2411), Plaintiffs respectfully submit this letter in opposition to Wholesalers' June 13, 2023 letter brief (ECF No. 2426) seeking additional discovery from named TPP Plaintiffs MSP and MADA.

## I.    Summary of Plaintiffs' Opposition to Wholesalers' Belated Discovery

> *"I'm not going to speak for Judge Vanaskie, but color me skeptical of all this, which I think a lot of it is a bunch of nonsense."*
>
>     -- Judge Kugler, on Wholesalers' proposed
>     discovery requests to MSP and MADA
>     (4/26/23 CMC Tr. at 27)

Nearly five years into this litigation, and over two years after the fact discovery deadline, Wholesalers now seek a variety of data and documents from named TPP plaintiffs MSP and MADA.  The *raison d'être* for Wholesalers' belated requests—to probe "the TPPs' one cause of action for UE," *see* 6/13/2023 Wholesalers' Ltr. (ECF No. 2426) at 2—is breathtakingly insufficient. The Court should deny Wholesalers' belated requests as untimely, unduly burdensome, overly broad, irrelevant, and disproportional.

20660374.1

***Wholesalers' Requests Are Plainly Untimely.*** This litigation is nearly five years old. Fact discovery closed over two years ago. During discovery, MSP and MADA (as well as their three at-issue assignors and one non-party claims administrator) responded to a barrage of discovery requests. Throughout the entire multi-year discovery period, Wholesalers were active participants in all of this discovery. They prepared drafts of discovery to MSP and MADA; they participated in the parties' negotiations about that discovery; they attended the depositions of MSP's and MADA's corporate designees. Quite literally, Wholesalers were there every step of the way during Defendants' years-long discovery of MSP and MADA.

Despite this, Wholesalers waited nearly five years into this litigation, and more than two years after the already-extended fact discovery deadline, to propound their belated requests. Wholesalers offer no explanation for their delay. They merely assert repeatedly they want to probe the "only claim against Wholesalers—unjust enrichment." 6/13/2023 Wholesalers' Ltr. (ECF No. 2426) at 1.

But, here is the thing: unjust enrichment is *not* MSP's and MADA's "only claim" against Wholesalers. It never was. The operative Master Economic Loss Complaint alleges unjust enrichment, breach of implied warranty, and violation of state consumer protection laws against Wholesalers, on behalf of consumers and TPPs. This is consistent with both Judge Kugler's prior motion to dismiss rulings, as well as Your Honor's ruling on Plaintiffs' motion for leave to amend the master complaints. Furthermore, there are another fourteen claims alleged against Wholesalers in the other two Master Complaints. Nor is unjust enrichment a newly added claim; it was among the original claims alleged against Wholesalers in every prior iteration of the Economic Loss Master Complaint, going back almost four years.

Fact discovery of all plaintiffs, including MSP and MADA, proceeded for years on all claims, including unjust enrichment. Wholesalers, who were active participants in that discovery, had ample opportunity to seek information on any claim or defense, unjust enrichment included, during the protracted, multi-year fact discovery period. By sitting on their hands for years, they forfeited their opportunity to seek sprawling discovery they now belatedly seek.

***The Timing of the Wholesalers' Belated Requests is Specious.*** As shown above, the Wholesalers never sought the information they now belatedly seek during the multi-year fact discovery period; they did not seek it in the nearly two years after the close of fact discovery; they did not even seek it after Judge Kugler's February 8, 2023 opinion and order certifying the various subclasses. It was not until CMO No. 32 (ECF No. 2343) issued on April 21, 2023—which ordered Wholesalers to produce additional data and documents—that Wholesalers first raised their belated requests.

What occurred is transparent: Wholesalers sought to gin-up some reciprocal discovery pressure on TPP Plaintiffs. But Wholesalers' desired tit-for-tat rests on a false premise. Unlike Wholesalers, Plaintiffs *did* seek the very same documents and data ordered from Wholesalers by CMO No. 32 during fact discovery. Nearly three years ago, after exhaustive argument and briefing, Magistrate Judge Schneider explicitly denied Plaintiffs' requests for certain data and custodial discovery *without prejudice* pending class certification. Wholesalers, on the other hand, never broached their belated requests earlier, until now. That was Wholesalers' decision. MSP and MADA should not

2

bear the unfair, disproportionate burden for that decision.  This is especially so given that MSP and MADA nonetheless *agree* to produce *all* of the data and many of the documents Wholesalers belatedly seek.

***The Wholesalers' Requests are Unduly Burdensome, Overbroad, not Relevant nor Proportionate.***  MSP and MADA have responded to wave upon wave of discovery for years. Nevertheless, in the context of the present dispute before Your Honor, MSP and MADA agreed as a compromise to respond to *nearly all* of Wholesalers' belated requests for data and have further agreed to respond to a number of Wholesalers' requests for various categories of documents. Wholesalers rejected this compromise in its entirely and refused to narrow their requests in any way.  Wholesalers' all-or-nothing approach to their belated requests is contrary both to the Federal Rules and the longstanding practice in this MDL.

Given MSP's and MADA's agreement to respond to several of Wholesalers' requests, the only remaining dispute (which Wholesalers obfuscate in their June 13 letter) is about a few disputed requests for "all documents" about matters irrelevant to any claim or defense, or disproportionate to the needs in this case.  Wholesalers' "any and all documents" requests are inconsistent with Magistrate Judge Schneider's and Your Honor's repeated refusal to countenance such sweeping requests (for all parties), even when timely (which they aren't).  Plaintiffs address each of these disputed requests below in detail, but note here that Wholesalers seek to impose a document collection burden on MSP and MADA that dwarfs anything that Wholesalers themselves have shouldered in this litigation.

Much of what remains in dispute simply is not relevant to any party's claims or defenses.  MSP's and MADA's own "profits," or medical records of their assignors' insureds, have nothing to do with the certified unjust enrichment claim against Wholesalers, which will be the claim to proceed to trial if and when a TPP subclass against Wholesalers is scheduled by Judge Kugler for trial (and, at this point, no such trial is set).  Wholesalers cite no case law suggesting otherwise.

## II.    Wholesalers Rejected Every Single Compromise Offered by MSP and MADA

Far from being "targeted" to seek only "a small subset of documents," *see* 6/13/2023 Wholesalers' Ltr. (ECF No. 2426) at 1, 4, Wholesalers' belated requests span 28 separate requests—two with 26 sub-parts between them.  Notwithstanding this and other objectionable reasons (*see infra* Parts IV-V), MSP and MADA offered to respond to *all* of Wholesalers' data requests and several of Wholesalers document requests. Wholesalers rejected Plaintiffs' proposal entirely and ask this Court to countenance all 28 of their belated requests as originally drafted.

Courts reject similarly uncompromising strong-arm discovery tactics.  *See, e.g.*, *Pippins v. KPMG LLP*, 279 F.R.D. 245, 251 (S.D.N.Y. 2012) (denying motion for protective order where defendant "made a series of 'take it or leave it' offers, and sought to have Plaintiffs agree that KPMG only had to preserve a smaller sample of the hard drives without giving Plaintiffs the opportunity to review the contents of any hard drive(s) first"); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 414-15 (S.D.N.Y. 2009) (disapproving of SEC's unilateral limitation on search terms and finding that the SEC's "blanket refusal to negotiate a workable search protocol responsive to these requests is patently unreasonable").  So, too, should this Court not countenance Wholesalers' attempt to

force through the entirety of their belated (and otherwise objectionable) requests. Nor should the Court entertain a "split the baby" approach, which simply would reward Wholesalers for refusing to narrow their 28 belated, otherwise objectionable requests.

## III.     Plaintiffs MSP and MADA Already Answered Many Rounds of Discovery

MSP and MADA, as well as MSP's three at-issue assignors and MADA's non-party claims administrator, have already responded to set after set of discovery requests from Defendants, including Wholesalers. The specific requests and notices are interspersed *infra* Part IV in the pertinent timeline of events. This bears on the untimeliness and burden of Wholesalers' belated requests.

## IV.     Wholesalers' Proposed Document Requests Are Untimely

A "court **must** limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action[.]" Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). Courts in this Circuit will disallow untimely discovery, especially when the propounding party did not seek the sought information during fact discovery. *See, e.g.*, *Bowers v. NCAA*, No. 97-2600, 2008 WL 1757929, at *4 (D.N.J. Feb. 27, 2008) (collecting cases). Indeed, courts in this Circuit do not hesitate to disallow discovery that was served within the discovery period but answers would not be due until after the close of the discovery period. *See, e.g.*, *DelPalazzo v. Horizon Group Holdings, LLC*, No. 19-5682, 2021 WL 1546229, at *2 (E.D. Pa. Apr. 20, 2021) (disallowing discovery served on the last day of fact discovery); *Alexiou v. Moshos*, No. 08-5491, 2009 WL 2913960, at *3 (E.D. Sept. 9, 2009) (refusing to extend discovery deadline to allow defendant to serve additional requests where defendant never timely served requests, nor previously warned the court additional discovery might be needed).

Here, there is no question that Wholesalers did not serve their requests until many years after the fact discovery period. In fact, Wholesalers fronted what they called "discovery implications" of TPPs' claims back in 2020 (essentially, an informal list of nascent document requests) that were similar to their instant belated requests, but they affirmatively chose *not* to pursue them during fact discovery. *See* ECF No. 582-2.

While lengthy, the following condensed chronology of pertinent procedural events in this years-long litigation shows that Wholesalers had ample opportunity to seek additional discovery from MSP and MADA, but never did so until years later, and only after Judge Kugler ordered Wholesalers recently to produce the discrete data and documents that Magistrate Judge Schneider previously *deferred* until after class certification (as opposed to Wholesalers, who not once earlier ever sought the discovery they now seek from MSP and MADA):

- **Prior to Fall 2019** – Parties negotiate the TPP Plaintiff Fact Sheet ("PFS") to be answered by MSP and MADA.

- **October 16, 2019** – Defense Counsel inform Magistrate Judge Schneider that the parties have agreed to all but two issues about the TPP PFS but hope to reach agreement soon (*see* 10/16/2019 CMC Tr. at 6).

4

- **October 28, 2019** – CMO No. 17 entered, approving agreed-upon TPP PFS (*see* ECF No. 283).

- **January 14, 2020** – Wholesalers email Co-Lead Plaintiffs' Counsel with a lengthy list of the "discovery implications" for TPPs' claims, as a sort of nascent set of informal proposed data and document requests Wholesalers might seek on top of MSP's and MADA's production obligations under the TPP PFS.  ECF No. 582-2.  Subsequently, Wholesalers never formalize their lengthy list "discovery implications" into formal proposed document requests.

- **March 2, 2020** – MADA answers TPP PFS and begins rolling production of documents responsive to TPP PFS's document demands.

- **March 3, 2020** – MSP answers TPP PFS and begins rolling production of documents responsive to TPP PFS's document demands.

- **March 9, 2020** – Parties submit their proposed trial plans.  *See* ECF Nos. 392, 393.  Defendants' plan, submitted by all Defendants, does not include any proposed deadlines for additional discovery of MSP or MADA (or any other plaintiff, for that matter).  *See* ECF No. 393.

- **September 29, 2020** – Defendants' CMC agenda letter states they seek to serve additional document requests on TPPs (and consumers), attaching their proposed requests to MSP and MADA.  *See* ECF No. 582 at 3.  These formalized proposed requests track neither the informal list emailed by Wholesalers on January 14, 2020, nor Wholesalers' belated requests at issue now. *Compare* ECF No. 582-2 *with* ECF No. 582-4, 582-5.

- **September 30, 2020** – At the CMC, Magistrate Judge Schneider tells the parties to negotiate Defendants' proposed document requests to MSP and MADA (and consumers).  *See* 9/30/2020 CMC Tr. at 28-33.

- **October 14, 2020** – During the CMC, Magistrate Judge Schneider directs the parties to continue to negotiate Defendants' proposed document requests to MSP and MADA (and consumers), and to submit disputes on October 26, 2020.  *See* 10/14/2020 CMC Tr. at 36-37.  Defendants state their new proposed document requests "are truly essential to the questions about . . . [plaintiffs'] damages calculation," *Id.* at 27, and also note that they had provided Plaintiffs with a list on January 4, 2020 "identifying just about every one of these documents and letting them know, we expected them to be produced."  *Id.* at 36.  Wholesalers do not raise their belated requests at issue now.

- **October 26, 2020** – Defendants' CMC agenda letter reports "substantial progress in reaching agreement on the Rule 34 requests to be served on [MSP and MADA]," and asks for until the next CMC to finalize the requests because "Defendants believe an

20660374.1

agreement on these requests is possible in the coming days" on their proposed requests "for eleven (11) categories of information." *See* ECF No. 604 at 5, 10.[1] Defendants' letter also states they have conferred with Plaintiffs four times already on the proposed requests. No mention is made of any of the belated requests Wholesalers now seek to propound.

- **November 17, 2020** – CMO No. 21 entered, attaching agreed-upon document requests to MSP and MADA (as well as to consumers). *See* 11/17/2020 Order (ECF No. 633). Each set of requests, including those to MSP and MADA, are signed by Wholesaler Liaison Counsel "on behalf of all defendants." None contain any document demand found in Wholesalers' belated requests at issue now.

- **November 25, 2020** – CMO No. 22 entered, setting fact discovery deadline of April 1, 2021 (*see* ECF No. 640). This deadline was later extended to June 1, 2021 by CMO No. 32 (see below).

- **December 2020 through February 2021** – the parties engage in protracted negotiations about discovery deadlines and scheduling issues. Wholesalers do not mention the need to serve additional requests on MSP or MADA.

- **February 2, 2021** – Defendants write the Court requesting a 90-day extension of the April 1, 2021 fact discovery deadline set by CMO No. 22. *See* ECF No. 835. Nothing in Defendants' "requested relief" includes any deadline or extension for Defendants to serve additional document requests on MSP and MADA (or any other plaintiff, for that matter). *Id.* at 8-9.

- **February 11, 2021** – CMO No. 23 entered, amending the fact discovery deadline to June 1, 2021 (*see* ECF No. 863).

- **March 24, 2021** – Defendants subpoena Anthem, MADA's claims administrator, for documents.

- **April 1, 2021** – Original fact discovery deadline per CMO No. 22 (*see* ECF No. 640).

- **April 12, 2021** – Plaintiffs file motion for leave to amend the Master Complaints to conform to Judge Kugler's motion to dismiss rulings. *See* ECF No. 1148. The proposed Third Amended Economic Loss Master Complaint includes the following claims against Wholesalers (consistent with Judge Kugler's rulings): breach of implied warranty, violation of state consumer protection laws, and unjust enrichment. The other two proposed Master Complaints include another 14 claims against

---

[1] Defendants specifically stated at the time, nearly three years ago, that their proposed document requests at this time would let them "understand how, under what circumstances, and to what extent, MADA and MSP's assignor's covered and/or paid for [VCDs] and other blood pressure medications." *See* ECF No. 604 at 6. "Collectively, the categories of documents Defendants seek will allow them to determine the rights created by the plans themselves as well as the different machinations of [MSP's and MADA's] coverage of VCDs (or, in the case of MSP, its assignees' coverages of VCDs) and the alternative drugs each would have had to purchase if no VCD were available." *Id.* at 7.

20660374.1

Wholesalers.  Wholesalers never assert they need additional discovery regarding any of these claims.

- **April 29, 2021** – Defendants depose MSP's two corporate representatives. Wholesalers attend.

- **May 12, 2021** – Defendants send letter to MSP requesting additional documents and data purportedly identified during the depositions of MSP's two corporate representatives. None of Wholesalers' belated requests were among the purported deficiencies.

- **May 24, 2021** – Manufacturer Defendants propound "global interrogatories and requests for production" to Plaintiffs.  Notably, Wholesalers did not join in requests, nor issue their own.

- **May 27, 2021** – Defendants file responses in opposition to Plaintiffs' motion for leave to amend the Master Complaints to conform to Judge Kugler's motion to dismiss rulings.  *See* ECF Nos. 1277, 1280, 1281.

- **May 28, 2021** – Defendants depose MADA's corporate representative.  Wholesalers attend. Defendants make additional document requests to MADA on the record. None of Wholesalers' belated new requests were among the additional documents requested.

- **June 1, 2021** – Amended fact discovery deadline per CMO No. 23 (*see* ECF No. 863)

- **June 9, 2021** – Special Master Order No. 23 entered, disallowing Defendants' global document requests and interrogatories as untimely.  *See* ECF No. 1304.

- **July 22, 2021** – Defendants depose MSP assignor SummaCare's corporate representative.  Wholesalers did not even bother to attend.

- **July 30, 2021** – Defendants depose MSP assignors Emblem's and ConnectiCare's corporate representative.  Wholesalers attend.

- **August 9, 2021** – Judge Kugler enters order denying Defendants' motion to modify Special Master Order No. 23 (ECF 1304), which disallowed Defendants' global document requests and interrogatories. *See* ECF No. 1471.[2]

---

[2] Specifically, Judge Kugler stated in pertinent part:

"As for Ds interrogatories and document production requests, plaintiffs assert these should have been served in February when the parties, the Special Master, and this Court engaged in considerable back and forth to amend the MDL Discovery Schedule. They argue the case management process itself has also rooted the parties' discovery expectations, which are exemplified by the parties' hammering out

- **August 30, 2021** – Defendants request additional documents from MADA following the deposition of MADA's corporate representative. None of Wholesalers' belated new requests were among the additional documents requested.

- **August 31, 2023** – Defendants continue the deposition of MSP assignor SummaCare's corporate representative. Wholesalers attend.

- **September 10, 2021** – Defendants served MSP's assignors Emblem, ConnectiCare, and SummaCare with subpoenas to produce documents. The bulk of Wholesalers' belated requests were not among the requests in the subpoenas.

- **October 8, 2021** – Special Master Order No. 46 entered, which largely grants Plaintiffs' leave to amend the Master Complaints, allowing the ~14 different claims against Wholesalers to proceed across all three Master Complaints (including the economic loss class claims against Wholesalers for breach of implied warranty, violation of state consumer protection laws, and unjust enrichment).  *See* ECF No. 1615.  Wholesalers do not request any additional discovery on any of these claims, which were all asserted in the original Master Complaints.

- **October 21, 2021** – Defendants depose the corporate representative of MADA's claims administrator.

- **November 10, 2021** – Plaintiffs filed their motion for class certification.  *See* ECF No. 1748.  The motion seeks to certify, *inter alia*, economic loss consumers' and TPPs' unjust enrichment claims against Wholesalers.  Wholesalers do not ask for additional discovery at this time.

- **March 31, 2022** – Plaintiffs produce supplemental class damages report for Dr. Rena Conti, which again includes opinion on unjust enrichment damages.  Wholesalers do not ask for additional discovery at this time.

---

plaintiffs' document production requests propounded in December 2019 for several months in early 2020. This process received regular court oversight and forged the parties' expectations for the execution of document requests.  Plaintiffs also argue the surprise springing of defendants' document production requests was done during the last throes of document production in this MDL, is unjustified, done without notice or a meet and  confer process, and therefore prejudices them.
…

*The Court has also reviewed the context of this MDL in its entirety to find that document production requests this close to the end of discovery emerge as an unthought-out afterthought.* The Court has considered the parties' and the Special Master's efforts to hammer out and amend discovery schedules, not once, but twice, earlier this year as well as the parties' active engagement throughout this year to work through the scheduling of depositions, expert reports and other key discovery. *The Court finds the defendants could have raised their discovery requests earlier when the parties were conferring actively*."  8/9/2021 Order (**ECF No. 1471**) (emphasis added).

- **April 5, 2022** – Order affirming Special Master No. 46 on leave to amend Master Complaints entered. *See* ECF No. 1994. Order also modifies Special Master Order No. 46 to allow breach of implied warranty claims to be alleged against all Defendants (including Wholesalers) under a broader set of states' laws. *Id.* Wholesalers do not ask for additional discovery at this time.

- **April 12, 2022** – Wholesalers (and other Defendants) file oppositions to motion for class certification. *See* ECF No. 2011. Neither in their brief nor in the five months in which they had Plaintiffs' class certification papers in hand did they express any need for additional discovery of MSP and MADA (or any other Plaintiff, for that matter).

- **June 2022** – *Daubert* briefing on parties' class certification is completed. Neither during the class expert depositions, nor the *Daubert* briefing, nor in the months thereafter do Wholesalers ask for additional discovery, including any as to the unjust enrichment claims the economic loss consumers and TPPs sought to certify.

- **July 13, 2022** – Special Master Vanaskie notes during CMC: "Discovery is supposed to have been closed except for expert discovery." 7/13/2022 CMC Tr. at 16.

- **July 19, 2022** – Defendants serve their purported second sets of document requests directed to MSP and MADA. Each set of requests, including those to MSP and MADA, are signed by Wholesaler Liaison Counsel "on behalf of all defendants." *See* Ex. A hereto (7/19/22 Ltr. from C. Trischler to A. Slater, and exhibits thereto). None of the proposed requests track Wholesalers' belated requests now at issue.

- **September 9, 2022** – Certain Manufacturer Defendants serve document requests on MSP, in conjunction with TPP trial as directed by Judge Kugler. Wholesalers do not ask for additional discovery at this time.

- **October 19, 2022** – Certain Manufacturer Defendants move to compel MSP to respond to document requests. Wholesalers do not ask for additional discovery at this time.

- **January 24, 2023** – Special Master Order No. 73 entered, directing MSP to produce certain data and documents. *See* ECF No. 2249. Wholesalers do not ask for additional discovery at this time.

- **February 2, 2023** – Plaintiffs produce revised damages report for MSP. Wholesalers do not ask for additional discovery at this time.

- **February 8, 2023** – Judge Kugler issues order certifying various subclasses, including the economic loss consumers' and TPPs' unjust enrichment claims against Wholesalers. *See* ECF No. 2262. Wholesalers do not ask for additional discovery at this time.

- **February 22, 2023** – Defendants, including Wholesalers file petitions for permission to appeal pursuant to Rule 23(f).  *See* ECF No. 2275-3, 4, 5, 6.  Wholesalers do not ask either the Court or the Third Circuit for additional discovery at this time.

- **February 27, 2023** – Defendants, including Wholesalers, move to stay proceedings pending their Rule 23(f) petition.  *See* ECF No. 2275.  Wholesalers do not ask for additional discovery at this time.

- **March 8, 2023** – During lengthy CMC before Judge Kugler and Special Master Vanaskie, Plaintiffs note they would be seeking the additional discrete data and custodial discovery from Retailers and Wholesalers that Magistrate Judge Schneider had deferred earlier pending class certification.  *See* 3/29/2023 CMC Tr. (Part II) at 31.  Wholesalers do not ask for additional discovery at this time.

- **April 12, 2023** – Defendants' trial plan letter indicates that they expect MSP will complete its supplemental production ordered by Special Master Order No. 73 in January 2023, and that they intend to serve supplemental document requests on MADA by May 10, 2023.  *See* ECF No. 2339. Wholesalers do not ask for additional discovery at this time.  Plaintiffs identify the discrete data and custodial discovery they need from Retailers and Wholesalers, which Magistrate Judge Schneider earlier denied without prejudice pending class certification.  *See* ECF No. 2338.

- **April 21, 2023** – CMO No. 32 entered, ordering Wholesalers to produce discrete data and custodial discovery, *viz.*, the same items Magistrate Judge Schneider had denied without prejudice pending class certification.  *See* ECF No. 2343.  CMO No. 32 makes no mention of any additional discovery Wholesalers might seek from any Plaintiff (because they had yet to suggest they might ask for any additional discovery).

- **April 24, 2023** – Wholesalers note in a defense letter to the Court, for the first time, that they may seek additional discovery from MSP and MADA "on their unjust enrichment claim."  ECF No. 2348 at 5.

- **April 25, 2023** – The day before the next CMC, and ahead of a previously scheduled meet and confer call later this same day, Wholesalers email proposed document requests and deposition notices to MSP and MADA.  *See* Ex. B, C, D hereto.  Rather than discuss the discovery CMO No. 32 ordered Wholesalers to produce, Wholesalers write that they "anticipate the first issue for our call today will be plaintiffs' position regarding participation in such discovery," i.e., the proposed requests and deposition notices they just provided for the very first time.  *Id.*

- **April 26, 2023** – During CMC, Wholesalers note they may seek additional discovery from Plaintiffs.  *See* CMC Tr. at 20-27.  Judge Kugler repeatedly asked Wholesaler Liaison Counsel why MSP's and MADA's profits were relevant; ultimately the Court noted "I'm not seeing it."  *Id.* at 22.  After Wholesaler Liaison Counsel finished, Judge Kugler directed the parties to confer, and then to bring any issues (i.e., those

currently before Your Honor) to Special Master Vanaskie.  Judge Kugler added: "I'm not going to speak for Judge Vanaskie, but color me skeptical of all this, which I think a lot of it is a bunch of nonsense."  *Id.* at 27.

- **May 31, 2023** – CMO No. 32 deadline for Wholesalers' production of (i) costs and profits, (ii) prices paid for VCDs, and (iii) prices at which Wholesalers sold VCDs. *See* ECF No. 2343. Also, the deadline to schedule targeted custodial discovery of Wholesalers.  *Id.*  To date, Wholesalers have yet to produce any data on costs and profits, or custodial discovery, despite not seeking an extension of the CMO No. 32 deadline.

- **June 13, 2023** – Wholesalers file their letter brief at issue here.  *See* ECF No. 2427.

The above makes clear that Wholesalers knew from the beginning what claims were at issue, including unjust enrichment. *See, e.g.*, 7/6/2020 CMC Tr. at 65 (Wholesaler Counsel stating: "And if there is one thing that plaintiffs have done, it is that they have invoked every other possible type of relief available, both in tort, and then the UCC damages too."); *see also, e.g.*, 6/16/2020 Wholesaler Ltr. (ECF No. 478) (extensively arguing against Wholesalers' production of discovery relevant to Plaintiffs' unjust enrichment claims).

## V.    The Specific Wholesaler Belated Requests – Plaintiffs Have Agreed to Much of the Requests, and What Remains is Overly Burdensome, Overly Broad, Irrelevant, and Disproportionate

### A.    Request Nos. 1-4

MSP and MADA previously indicated a willingness to produce the transactional claims datapoints sought by Request Nos. 1-2, to the extent not previously produced and to the extent it exists.  They agree to respond to Request Nos. 1-2 as worded by Wholesalers.  Thus, there is no dispute as to Requests No. 1-2.

That leaves Request Nos. 3-4, which seek "[a]ny and all documents" which in anyway "relate" to the voluminous transactional claims data MSP and MADA has produced or will produce. It is entirely unclear what additional information Wholesalers are fishing for, when both MSP and MADA have produced, or will produce, all the transactional claims data requested.  Demanding, on top of that, "any and all documents" about every single transactional claim it is unduly burdensome, unreasonably cumulative, overly broad, and disproportionate to the needs of the case. Wholesalers have made absolutely no showing why they should be entitled to this additional information generally, let alone years after the discovery deadline.  Moreover, years ago, when Plaintiffs initially sought "all documents" from Defendants (including from Wholesalers), Defendants balked, and Magistrate Judge Schneider directed Plaintiffs to hone their requests. Plaintiffs dutifully did so, as illustrated by the very targeted or sufficient-to-show requests to Wholesalers which Magistrate Judge Schneider ultimately entered.  *See, e.g.*, 7/10/2020 Order (ECF No. 509) at Ex. B.  Given that Wholesalers fail to "describe with reasonable particularity each item or category of items" sought Fed. R. Civ. P. 34(b)(1)(A), Wholesalers' untimely "any and all documents" requests, Nos. 3-4, should be disallowed.

### B.    Request No. 5-6

Request No. 5 seeks 17[3] different transactional datapoints in MSP's and MADA's claims data. MSP and MADA *already agreed* to produce 5(a)-(b), 5(g)-(n), and 5(p) to the extent the data exists, if not already produced.[4]  They now agree to produce the sub-parts 5(c)-(f) and 5(o) to the extent the data exists.

As for 5(q), MSP already produced reimbursement and rebate data when responding to the Manufacturers' more recent requests and after extensive briefing and argument by this Court.[5]  The Wholesaler Defendants were copied on those productions, making this request duplicative and cumulative with respect to MSP. As for MADA, it will produce any such data that is in their possession, custody, or control.

Finally, Request 6 seeks "any and all supporting contemporaneous records from each Assignor(s) that support each Claim." That overly broad request is clearly improper, and Plaintiffs incorporate their response to Requests 3 and 4 *supra*.

### C.    Request Nos. 7-9

Request No. 7 seeks "any and all documents" that "relate" to any contract MSP's at-issue assignors or MADA may have with Wholesalers about any subject-matter. MSP and MADA proposed narrowing this request to contracts that might exist that may relate to VCDs.  This should be more than sufficient.  Indeed, this is exactly what Wholesalers themselves produced.  Each of them, for example, only produced "Supply/Distribution Agreements relating to your purchase of VCDs,"

---

[3] The wholesalers withdrew datapoints 5(r)-(t) in their letter motion. ECF No. 2426 n.10.

[4] Plaintiffs disagree with Wholesalers' accusations that their prior data productions did not include various datapoints.  For instance, contrary to Wholesalers' assertions, MADA has already produced the group plan IDs and the amounts paid to any non-Wholesaler on the Claim. *See* MADA000901 (columns B and AG). Similarly, MSP has produced insurance carrier IDs, member IDs, and amount paid to any non-Wholesaler on the Claim. *See* MSP0005945 (columns C, E, and X).  *See, e.g.*, *In re Haney*, 238 B.R. 430, 431–32 (Bankr. E.D. Ark. 1999) ("[T]he subject of a discovery request may not be compelled to repeat its answers to discovery requests.").  But this is neither here nor there given MSP's and MADA's agreeing to produce responsive data to the extent it exists and is not already produced.

[5] The parties filed six letters (ECF Nos. 2167, 2168, 2183, 2184, 2376, 2377), briefed a motion to compel (ECF No. 2170, 2185, 2382), the Court issued an opinion and scheduling order on these issues (ECF Nos. 2249, 2343, 2368), Manufacturer Defendants filed a motion for sanctions (ECF No. 2378) which they later withdrew (ECF No.  2380), and the parties submitted a final letter on May 25, 2023 informing the Court they had reached agreement and the issues had been resolved (ECF No. 2409) by virtue of MSP's production of multiple Excel spreadsheets with tens of thousands of entries on subsidies, reimbursements, and rebates.  *See e.g.,* MSP0005926-MSP0005933; MSP0005942-MSP0005944.

*see* ECF No. 1306 at Ex. A, or "final written indemnification agreements applicable to any claims currently pending in MDL 2875 against Wholesaler Defendants," *see* ECF No. 509 at Ex. B. They never produced "any and all documents" about contracts, or *all* contracts about subject-matters unrelated to VCDs or the issues in this litigation.

Request No. 8 seeks "any and all documents" that "relate" to the foregoing contracts. This should be disallowed for the same reasons as Request Nos. 3-4, and 6.

Request No. 9 seeks "any and all documents" about "any and all communications" between the TPPs and Wholesalers. As an initial matter, to the extent those communications exist, the Wholesalers would naturally also be in possession of those documents. There is no need for the Plaintiffs to assume the costs and burden of production. *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 2023 WL 2467738, at *2 (D.D.C. 2023) ("Factors courts consider in determining whether there is an undue burden include: . . . . whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."); *Kowalski v. Stewart*, 220 F.R.D. 599, 602 (D. Ariz. 2004) ("Since Plaintiff has failed to explain why he needs documents he already has in his possession, the Court will not require Defendant [] to produce these documents.").

Further, even if Wholesalers were not already in possession of those documents, there simply is no basis for such a broad and expansive document request, which is not limited to VCDs in any way. Wholesalers cite to three cases for the supposed proposition that "dealings between the parties are a fundamental subject of discovery regardless of the cause of action." ECF No. 2426 at 10. But those cases say nothing of the sort. Rather in those cases, there was a specific reason to consider the parties' dealings.[6] There is no such reason over here.

Defendants further claim they need the communications to show "the nature and the extent of the dealings," the "benefits provided to the wholesalers," the "directness" of the relationships, TPP Class Representatives' "expectations," and "equities" between MSP and MADA and Wholesalers. But none of that has any bearing on Plaintiffs' unjust enrichment claims, which as more fully discussed *infra* considers the following elements: "(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without

---

[6] In *Lama* and *Ho*, the court found prior communications between the parties relevant because the plaintiff made specific allegations regarding the prior relationship between the parties in the complaint. *Molinos Valle Del Cibao v. Lama*, 2008 WL 3850807, at *3 (S.D. Fla. 2008); *Ho v. Marathon Pat. Grp., Inc.*, 2021 WL 10862800, at *6 (C.D. Cal. 2021). Here, Plaintiffs make no specific allegations in the Amended Complaint regarding the prior relationship between the TPPs and Wholesalers and, therefore, the Wholesalers' request for all "inter-company communications" is not relevant. Additionally, in *Intarome*, the court granted defendant's motion to compel plaintiff to produce all communications between the parties but noted that plaintiff never raised any opposition to the information requested in defendant's subpoena. *Intarome Fragrance & Flavor, Corp. v. Zarkades*, 2008 WL 4449620, at *2 (D.N.J. 2008). That is not the case here, where the TPPs have objected to the Wholesalers' overbroad request for all inter-company communications between the TPPs and Wholesalers.

20660374.1

paying for it." *Katz v. Ambit Ne., LLC*, 2020 WL 5542780, at *3 (D.N.J. 2020) (internal citations and quotations omitted).

At bottom, MSP and MADA reasonably agreed to produce any contracts or agreements with Wholesalers relating to VCDs.  There is no need for anything more, especially absent any showing by Wholesalers to overcome MSP's and MADA's legitimate objections of untimeliness, relevance, burden, overbreadth, and proportionality.

### D.     Request No. 10

MSP already produced the assignments for the three at-issue assignors, Emblem, ConnectiCare, and SummaCare.  MSP's and its assignors' corporate representatives were deposed pursuant to notices that specifically include a topic about the assignments.  Defendants asked questions about the assignments.  Wholesalers attended the depositions.  Not a single defendant has raised any issue whatsoever about the assignments for years.

Until now, nearly two years after the close of fact discovery, Request No. 10 seeks "any and all communications between [MSP] and the party making the assignment reflecting the negotiation of the assignment." Defendants claim they need that documentation on the notion that MSP isn't a TPP and that "courts have recognized that it is appropriate for defendants to obtain discovery to fully understand the nature of MSP's business."  ECF No. 2426 at 11.  But whether MSP is a TPP or an assignee of a TPP is simply irrelevant,[7] and none of the cases Defendants cite support the broad fishing expedition on which Defendants seek to embark.  *Sanofi* and *Mallinckrodt* dealt with a relatively mundane issue of whether certain documents were in MSP's possession, custody, or control—which is not at issue here. The opinions say nothing about permitting discovery into the "nature of MSP's business."

Defendants next argue that they need the additional discovery to gain "insight with regard to the actual scope of the assignments," "whether Wholesalers were ever discussed as a potential defendant," and "the inner workings of MSP"—but all that does is confirm that Defendants seek to embark on an impermissible fishing expedition.  *Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 30 (Tex. App. 2004) ("Discovery may not be used as a fishing expedition or to impose unreasonable expenses on the opposing party"); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) ("[The] discovery rules do not allow a requesting party 'to engage in the proverbial fishing expedition, in the hope that there *might* be something of relevance . . . .'") (internal citations omitted).  One need not pry into the inner workings of MSP to ascertain the scope of the assignment. All one needs to do is read the assignments—which MSP has already produced. Wholesalers and the other Defendants have had ample opportunity to probe the assignments—and in fact Defendants did probe the assignments in discovery—but unearthed nothing.  Wholesalers do not get a mulligan.

---

[7] Further, the Court already rejected those arguments when it found MSPRC a typical and adequate class representative (ECF No. 2261 at 38-39), despite Defendants' arguments to the contrary (ECF No. 2010 at 21-22).

20660374.1

Further, aside from being requested out of time and being completely irrelevant, documents reflecting MSP's negotiations with the assignors regarding purchasing their claims is plainly highly confidential and proprietary information. Wholesalers have not (and cannot) meet their burden to show that they would be entitled to such information. *See e.g.*, *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003) (discussing trade secrets, "for the plaintiffs to obtain discovery they were required to establish that the information was necessary or essential to the fair adjudication of the case, weighing the requesting party's need for the information against the potential of harm to the resisting party from disclosure."); *Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 29–30 (Tex. App. 2004) ("Although the scope of discovery is broad, it is limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information."); *Lightsey v. Potter*, 2006 WL 2938715, at *2 (N.D. Ga. 2006) ("A court may limit discovery where a party seeks confidential information.") (internal citations omitted); *Eagle Indus., Inc. v. Ransburg Corp.*, 124 F.R.D. 197 (S.D. Ind. 1989) (Plaintiffs were not entitled to discovery of confidential information because the information sought was neither relevant nor necessary to proof of plaintiff's claims, and was not reasonably calculated to lead to the discovery of admissible evidence.).

Finally, despite Wholesalers' asserting more than 10 times in their Letter that all they seek is "narrow" discovery related to the unjust enrichment theory only, they fail to make any showing as to how the assignments have *anything* to do with unjust enrichment. The Court should deny this untimely, overly broad, burdensome, irrelevant, and disproportionate request.

### E.    Request Nos. 11-16

These requests seek "any and all documents" that relate to MSP's and MADA's unjust enrichment claims against Wholesalers, including the "benefit you allege each Wholesaler Defendant(s) received," "the portion of each specific benefit that [is unjust]," how Wholesalers "misled" TPPs, and "any wrongdoing [or] improper conduct" by Wholesalers that "directly or indirectly caused damage to you." *See* Request Nos. 11-16.

As an initial matter, MSP and MADA already produced (i) documents called for by the TPP PFS and other (timely) requests propounded upon them, (ii) transactional claims data, and (iii) expert reports detailing the damages theory against Wholesalers and calculating MSP's and MADA's (and the TPP subclasses') damages. In other words, they have produced all of the information on which they intend to rely to prove the liability and damages aspects of their unjust enrichment claims against Wholesalers. Lest there was any doubt, MSP and MADA agreed to produce other documents, if any, on which they may rely to prove their unjust enrichment claims.

Wholesalers rejected Plaintiffs' offer. But they have not explained why Plaintiffs' offer is insufficient. If Wholesalers' point here is they want to know what MSP and MADA intend to show the jury to prove liability, and what they intend to use to calculate damages, then Wholesalers already have all of that; and if they do not, MSP and MADA already agreed to produce it.

Wholesalers do not explain why this is not enough, or what else they expect to exist. For all of these requests, Wholesalers' letter merely states MSP and MADA "either have the factual evidence to prove their case or they do not." ECF No. 2426. If MSP and MADA already produced (or will

produce) the evidence "to prove their case," then there is no dispute here and nothing for the Court to do.

Further, these "any and all documents" requests should be disallowed as untimely, overly broad, burdensome, unreasonably cumulative, and disproportionate for the same reasons as Request Nos. 3-4, and 6.

### F.     Request Nos. 17-21

These requests seek "any and all documents" which "relate" to MSP's and MADA's damages, including documents about the "type of damages sought," from whom they seek damages, and the "methodology used to calculate damages."  As noted *supra*, MSP and MADA already produced (i) documents called for by the TPP PFS and other (timely) requested propounded upon them, (ii) transactional claims data, and (iii) expert reports detailing the damages theory against Wholesalers and calculating MSP's and MADA's (and the TPP subclasses') damages.  MSP and MADA asked for more detail about what Wholesalers really sought here.  They received no real answer.  Despite no actual explanation from Wholesalers themselves, MSP and MADA nevertheless offered to produce other documents, if any, they may rely on at trial.  Wholesalers rebuffed this.

These requests should be disallowed for being untimely, burdensome, overbroad, and disproportionate for the same reasons as Request Nos. 3-4, and 6.

Wholesalers' professed need "to discovery of these fundamental damages calculations," *see* ECF No. 2426 at 10, falls flat.  As noted above, MSP and MADA *already produced* expert reports explaining their damages theory and estimating their (and the TPP subclasses') damages.  They also produced all of the transactional data on which those calculations relied.  They have since produced even more data regarding subsidies, rebates, and the like.  They even already produced costs for replacement drugs in place of recalled VCDs, which is something Wholesalers wrongly claim they need (*see* ECF No. 2426 at 10); they have it already.

Finally, the cases Wholesalers' cite simply stand for unremarkable propositions about general damages-related discovery.  They are inapposite here, where MSP and MADA already produced all the fact and expert discovery pertinent to their damages during the discovery periods, which are now closed.  Defendants already deposed MSP, MSP's at-issue assignors, MADA, MADA's claims administrator, and their damages expert Dr. Rena Conti.

### G.     Request Nos. 22-27

These additional "any and all documents" requests breathtakingly seek all documents about "the value" or "therapeutic benefit" VCDs provided to MSP's and MADA's insureds, the "safety of VCDs, the efficacy of VCDs…," "how VCDs should be included on the formulary," and perhaps the most overreaching, all "underlying medical records" for Plaintiffs' insureds who ingested VCDs.

The "value" or "therapeutic benefit" of VCDs has been litigated *ad nauseum* in this litigation for years during the fact and expert discovery periods.  There is no need for this Court to revisit the

matter now, years after the close of fact and expert discovery.  In short, Judge Kugler ruled as follows years ago: "This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for." 1/22/21 Order (ECF No. 775) at 20.  In certifying the subclasses, Judge Kugler found Dr. Conti's damages model of economic worthlessness, which does not depend on level of "value" or "therapeutic benefit," sufficient reliable. *See* ECF No. 2261 at 88-89.

Moreover, "value" or "therapeutic benefit" are irrelevant when TPPs' unjust enrichment claims turn on *Wholesalers' conduct*, as discussed *supra* Part IV.C.  To the extent Wholesalers seek information about MSP's and MADA's formularies and Pharmacy & Therapeutics Committee meeting minutes about qualifying the VCDs for formulary placement, MSP and MADA already produced those documents.  On top of that, MSP has already produced subsidies, rebate, and other data.

Finally, these requests should be disallowed for the same reasons as Request Nos. 3-4, and 6.  That is, these requests are untimely, overly broad, unduly burdensome, irrelevant, and disproportionate. This is especially so for Wholesalers' outlandish request for all "medical records" about the TPP Plaintiffs' insureds.

### H.      Request No. 28

This request seeks MSP's and MADA's own "gross revenue, expenses and/or costs, and net profits" for an "unclean hands defense."  Judge Kugler repeatedly inquired at the April 26, 2023 CMC why any of this was remotely relevant given that unjust enrichment focuses on the *Defendants'* conduct.  Further, this request is illogical because neither MSP nor MADA are sellers of a VCD distribution chain, so they never "profit" off a sale of VCDs.  This is doubly so for MADA, which does not make a profit as a health plan because it is a non-profit multi-employer welfare arrangement ("MEWA") pursuant to 24-A M.S.R.A. Chapter 81.

Procedurally, it bears noting that Wholesalers have never pleaded *any* actual affirmative defense in this action, let alone unclean hands.  As such, discovery relating to an unpled affirmative defense would be premature because Plaintiff have never had an opportunity to contest the legal sufficiency of such a defense.  But more pointedly, Wholesalers do not provide any basis in fact or law why an unclean hands defense might lie in the circumstances here.  Their smattering of cases stand for completely different propositions involving entirely different factual circumstances.  It also goes without saying that MSP's, its assignors', and MADA's financials are highly commercially sensitive, confidential, and burdensome to produce—especially at this late stage of the litigation, years after the close of fact and expert discovery.

Finally, a TPP plaintiff's own profits or losses are irrelevant to whether a defendant has been unjustly enriched. Courts consistently make the distinction that "[b]ecause the doctrine of unjust enrichment is grounded in restitution, the measure of damages for an unjust enrichment claim is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss." *Swan*

17

20660374.1

*Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012) (citing 3 D. Dobbs, Law of Remedies § 12.1(1), at 9); *see also Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782, 788 (N.D. Ill. 2006) ("Damages in unjust enrichment cases are measured by the defendant's gains, not plaintiff's losses."); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, No. CV063459ABCPLAX, 2011 WL 13127211, at *3 (C.D. Cal. Oct. 13, 2011) ("[D]isgorgement of an infringing defendant's profits based on a theory of unjust enrichment is not concerned with approximating a plaintiff's losses, but with divesting the defendant of gains resulting from infringement."); *Miller v. Bank of Am., N.A.*, 352 P.3d 1162, 1169 (N.M. 2015) ("Damages for unjust enrichment differ from compensatory damages in that '[t]he measure [and limit] of compensatory damages is the plaintiff's loss or injury, while the measure of restitution is the defendant's gain or benefit.'"); *Cohan v. Minicozzi*, No. NNHCV156052856, 2016 WL 5798900, at *3 (Conn. Super. Ct. Sept. 2, 2016) ("[A] plaintiff's recovery for unjust enrichment is based, not on plaintiff's loss, but defendant's gain"). Accordingly, TPP Plaintiffs' profits are not related to the parties' claims or defenses and are therefore outside the scope of permissible discovery.

The Court should summarily disallow this request.

**VI.    Conclusion**

For the foregoing reasons, the Court should deny Wholesalers' belated and otherwise objectionable requests to MSP and MADA and enter Plaintiffs' proposed compromise requests that they have agreed to answer.

Respectfully,

ADAM M. SLATER

Encl.

cc:     All Counsel (via ECF)

18

20660374.1