# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Court Judge |
| **This Document Relates to All Actions** | |

## SPECIAL MASTER ORDER NO. 82

## August 11, 2023

## I.   BACKGROUND

Case Management Order No. 32 ("CMO 32"), issued on April 21, 2023

(ECF No. 2343), required the Wholesaler Defendants ("Wholesalers")[1] to provide

to Plaintiffs (a) cost and profit data for "Valsartan Containing Drugs" ("VCDs");

(b) the prices wholesalers paid for VCDs; and (c) the prices at which Wholesalers

sold VCDs to their customers.[2]  By letter dated April 25, 2023, the Wholesalers

---

[1] The Wholesaler Defendants are AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation

[2] Unless otherwise indicated, the term "Plaintiffs" as used herein refers to the Third Party Payor ("TPP") class representative Plaintiffs: MSP Recovery Claims, Series LLC ("MSP") and Maine Automobile Dealers Association, Inc. Insurance Trust ("MADA"), as well as the Assignors of TPP claims to MSP (Summacare, Connecticare, and Emblem Health).

requested clarification and modification of CMO 32.  Asserting that "CMO 32 makes plain that discovery on Plaintiffs' certified class claim of unjust enrichment is open," (ECF No. 2349 at 4), the Wholesalers' April 25th letter  requested leave to pursue "fact discovery relevant to the elements of Plaintiffs' certified unjust enrichment claim and Plaintiffs' purported damages."  (ECF No. 2349 at 4.)  Accompanying the Wholesalers' April 25, 2023 letter was a draft of a request for production of documents that contained 35 numbered paragraphs, with paragraph 1 containing 27 subparts.  At the April 26, 2023 Case Management Conference the Court directed the parties to meet and confer to attempt to reach agreement and bring any disputes to the Special Master.

By letter dated May 10, 2023 (ECF No. 2372), the Wholesalers reported that the parties had been unable to resolve their disputes concerning the Wholesalers' discovery requests.  The May 10, 2023 letter reported that there were six topics at issue: (1) identification of transactions that involve a particular Wholesaler;[3] (2) communications/contracts between Plaintiffs and Wholesalers; (3) additional "data fields," including amounts paid by TPPs to Wholesalers for VCDs; (4) information related to the elements of an unjust enrichment claim, such as the benefit TPPs

---

[3] The Wholesalers asserted that "it is axiomatic that for any transaction for which they seek to recover, Plaintiffs must prove that a specific Wholesaler sold the VCD and was enriched by the sale."  (ECF No. 2372 at 4.)  It appears that this dispute between the parties has been resolved as the issue has not been briefed by the parties.

*ACTIVE 687757241v2*

received, the entity from whom a particular TPP received the benefit, and any specific acts of wrongdoing by a particular Wholesaler; (5) damages to the TPPs; and (6) the value of the VCDs to both the TPPs and those purchasers of VCDs who were covered by the TPPs.

The Wholesalers' request for discovery was addressed during the May 17, 2023 discovery conference.  (*See* Tr. of May 17, 2023 Discovery Conference (ECF No. 2382) at 76-80.)  In preparation for that conference, Plaintiffs' agenda letter (ECF No. 2376 at 8) contended that CMO 32 did not authorize the Wholesalers to pursue the discovery they were seeking.  While arguing that the Wholesalers should not be allowed to engage in any fact discovery, the TPP Plaintiffs stated that they were "willing to consider a pared down set of supplemental document requests."  (*Id.*)  At the May 17 conference, Plaintiffs requested "one more chance" to discuss the matter with the Wholesalers before setting a briefing schedule on the matter.  (ECF No. 2382 at 79.)  The parties were directed to report back in one week on their efforts to reach agreement.

On May 24, 2023, the parties reported that they had met on May 22, 2023, but had been "unable to agree on most issues" and requested entry of a briefing schedule.  (ECF No. 2407 at 1.)  The briefing schedule was established by Special Master Order No. 79 (ECF No. 2411.)  The Wholesalers timely submitted their brief in support of their requests for discovery on June 13, 2023 (ECF No. 2426);

*ACTIVE 687757241v2*

Plaintiffs filed their opposition brief on June 27, 2023 (ECF No. 2443); and the Wholesalers filed their Reply Brief on June 30, 2023 (ECF No. 2445).  The parties presented oral argument via Zoom on July 6, 2023.  (ECF No. 2451.)

## II.    DISCUSSION

The Wholesalers have now presented 28 numbered requests for production of documents, with Request No. 1 having 6 subparts and Request No. 5 having 20 subparts.  (ECF No. 2426-1.)  Plaintiffs have submitted in redline format the Requests for which they will produce documents.  During oral argument on July 6, 2023, the Wholesalers stated that they were "willing to table" Requests 3, 4, 5(q) through 5(t), and 6.  As a result, the pending dispute concerns Requests numbered 7 through 28, which can be categorized as follows: (A) Communications and Contracts between TPP Plaintiffs and Wholesaler Defendants (Requests 7 through 9); (B) Communications between Plaintiff MSP and the party making the assignment to MSP (Request 10); (C) elements of the unjust enrichment cause of action (Requests 11 through 16); (D) damages sustained by TPP Plaintiffs (Requests 17-21); (E) the value and safety of VCDs to TPP Plaintiffs and insureds/consumers (Requests 22-27); and (F) profits of TPP Plaintiffs from covering the VCDs in issue (Request 28).  Each of these categories will be addressed in turn, but before doing so there is a threshold issue presented by Plaintiffs that must be resolved.

4

**A. Timeliness of Wholesalers' Discovery Requests**

Observing that CMO 23 (ECF No. 863) established the deadline for fact
discovery as June 1, 2021, more than two years ago, Plaintiffs contend that the
Wholesalers' belated request for extensive document production should be
summarily rejected as untimely.  Plaintiffs provide a comprehensive timeline of
events relevant to the timeliness of the Wholesalers' current effort to engage in
discovery in their opposition brief (ECF No. 2443).  Some of the more salient
events are: (1) the October 28, 2019 Court approval of the TPP fact sheets as the
primary mechanism for gathering information, with the Court-approved fact sheets
including 16 numbered document demands to be answered by TPP Plaintiffs (ECF
No. 283 at 10-12); (2) the November 17, 2020 Court approval of requests for
production of documents addressed to MSP (ECF No. 633-1 at 25-32) and to
MADA (ECF No. 633-1 at 35-41); (3) the request and approval of a 90-day
extension of the fact discovery deadline to June 1, 2021 (ECF Nos. 835 and 863);
(4) the disallowance of defense discovery requests, including contention
interrogatories and requests for production of documents, as "inconsistent with the
approach that has been laid out and carefully followed in this case thus far" (June
3,  2021 Tr. (ECF No. 1299) at 94; SMO 23 (ECF No. 1304)); (5) the August 9,
2021 Court Order denying the request to modify SMO 23, with the court noting

*ACTIVE 687757241v2*

that "document production requests this close to the end of discovery emerge as an

unthought-out afterthought" (ECF No. 1471 at 2); and (6) the January 24, 2023

Order granting in part the Manufacturer Defendants' motion to compel production

of three categories of documents from MSP, with the Wholesaler Defendants not

seeking any discovery relief from MSP, MADA, or any other party at that time

(ECF No. 2249).

It was not until April 12, 2023 that the Wholesalers expressed a need for broad

discovery.  (*See* ECF No. 2339 at 5.)  Wholesalers' April 24, 2023 letter (ECF No.

2348 at 5-6) elaborated on their justification for pursuing discovery long after the

deadline for doing so:

> CMO 32 makes apparent that discovery with respect to the TPP
> Plaintiffs' certified class claim of unjust enrichment is permitted
> and not foreclosed. While Wholesaler Defendants continue to
> believe that any discovery should be tethered to a defined trial that
> Plaintiffs propose to bring against them, CMO 32 currently permits
> TPP Plaintiffs to undertake certain discovery of Wholesaler
> Defendants, including custodial discovery and additional Rule
> 30(b)(6) depositions, in the absence of a specific case identified for
> trial. As such, Wholesaler Defendants request that the Court
> provide them the same opportunity to take discovery from TPP
> Plaintiffs on their unjust enrichment claim. Specifically, Wholesaler
> Defendants request that the Court permit them to collectively serve
> TPP Plaintiffs with requests for production and Rule 30(b)(6)
> Notices of Deposition that seek (1) fact discovery regarding the
> value of the VCD drugs to relevant TPP Plaintiffs, including in
> contract fulfillment and contract and plan renewals; and (2) fact
> discovery regarding the profits to the relevant TPP Plaintiffs from
> fulfillment of all claims in issue. Should the Court later determine
> that merits and damages-based expert discovery may proceed,
> Wholesaler Defendants will seek to serve such discovery on the

TPP Plaintiffs as well. As noted in the above-referenced submission, Wholesaler Defendants propose the parties meet and confer on the language of these discovery requests, and, as has been customary in this litigation, submit the proposed requests for production and Rule 30(b)(6) Notices of Deposition to the Special Master for discussion and approval.

Plaintiffs' counsel has previously taken the position that Wholesaler Defendants' request for discovery from TPP Plaintiffs is inappropriate because "general fact discovery" is closed. The Court first rejected that argument in the context of the TPP trial case, and now the Court has eliminated that argument via issuance of CMO 32, which specifically permits discovery related to the certified class claim of unjust enrichment. Moreover, the Court permitted the discovery of Wholesaler Defendants listed in CMO 32 at Plaintiffs' request. (ECF No. 2338.) Therefore, Wholesaler Defendants request that the Court order that Wholesaler Defendants may serve requests for production and Rule 30(b)(6) Notices of Deposition related to Plaintiffs' unjust enrichment claim.

There are several problems with the Wholesalers' argument to open up broad discovery from TPP Plaintiffs. First, the Wholesalers provide no explanation for why they did not pursue such discovery before the close of fact discovery in June of 2021. They had ample opportunity to do so. Their reliance on the Court's statement that it has "never forced a lawyer to go to trial when they don't have the discovery they need in a case," (Aug. 24, 2022 CMC Tr. (ECF No. 2151) at 26), disregards the fact that the discovery sought by the Wholesalers could have and should have been pursued long before now. The Wholesalers' contention that the Court recently allowed Plaintiffs to pursue discovery on their unjust enrichment claim fails to acknowledge that the discovery ordered in CMO 32 had been requested years ago by Plaintiffs but consideration of those requests had been

7

tabled pending class certification rulings.  Wholesalers, by way of contrast, cannot point to earlier efforts to pursue the discovery they now contend is "critical" to their defense.

The Wholesalers' discovery requests, made almost two years after the close of discovery, are clearly untimely.  Despite the patent untimeliness of the requests, Plaintiffs have offered to respond to some production requests.  Their willingness to do so despite the lateness of the requests compels rejection of their contention that the other requests should be dismissed summarily as untimely.  Instead, the merits of each category of the at issue requests will be assessed.

## B. Communications and Contracts between TPP Plaintiffs and Wholesaler Defendants (Requests 7 through 9)

Request 7 asks for "[a]ny and all documents which refer to, relate to and/or reflect any contracts and/or agreements between you and any Wholesaler Defendant."  Request 8 seeks "[a]ny and all documents which refer to, relate to and/or reflect any communications between you and any Wholesaler Defendant regarding any Claim, individually, or the Claims, collectively."[4]  Request 9 demands "[a]ny and all documents which refer to, relate to and/or reflect any and

---

[4] Wholesalers have explained that in the context of this discovery dispute, "the term 'Claim' is used in the insurance industry sense – an underlying transaction reflecting a purchase of a prescription medication for an insured submitted to a TPP for insurance coverage (as opposed to the legal usage of 'claim' meaning a legal 'cause of action'."  (ECF No. 2426 at 2, n.3.)  Thus, the requests seek production of documents for literally thousands of transactions.

all communications between you and any Wholesaler Defendants regarding the VCDs made the subject of the Claims."

These requests are patently overbroad and practically impossible to answer with any precision.  "Any and all documents which refer to, relate to and/or reflect" *any* contract or communication with Wholesaler Defendants regarding any of the thousands if not millions of Claims is certainly not narrowly tailored to discover relevant facts.  Moreover, Wholesaler Defendants would already have the actual contracts and communications with TPP Plaintiffs.  There is no need to require Plaintiffs to produce documents the Wholesalers should already have in their possession.  *See  Kowalski v. Stewart*, 220 F.R.D. 599, 602 (D. Ariz. 2004).  Accordingly, Requests 7 through 9 are disallowed.

### C. Assignments to MSP from Assignors (Request 10)

Request 10 provides: "For each Claim that you obtained through an assignment, [produce] any and all communications between you and the party making the assignment reflecting the negotiation of the assignment."  While acknowledging that Plaintiffs have produced the at-issue Assignments, Wholesalers argue that they need the negotiation documents and communications between MSP and the assignors to obtain "insight with regard to the actual scope of the Assignments, whether Wholesalers were ever discussed as a potential defendant with regard to the Assignments, and the inner workings of MSP – critical given MSP's role as a

9

TPP Class Representative."  The Wholesalers cite *MAO-MSO Recovery II, LLC v. Mercury Gen.,* 21-56395, 2023 WL 1793469, at *2 (9th Cir. Feb. 7, 2023), where the assignor of a litigation claim had earlier assigned the claim to another entity as justification for its request for all communications between MSP and its assignors, speculating that their request may uncover evidence that undermines MSP's standing in this litigation.

Plaintiffs assert, without contradiction, that MSP and its assignors' corporate representatives were already deposed on the topic of the assignments.  Wholesalers have not pointed to *any* evidence to suggest that there is something amiss with respect to the at-issue assignments.  Plaintiffs correctly characterize Request 10 as an impermissible fishing expedition, and Request 10 will be disallowed.

### D. Elements of the Unjust Enrichment Claim (Requests 11-16)

Requests 11 through 16 seek "[a]ny and all documents which refer to, relate to and/or reflect" the benefit each Wholesaler received "with regard to each Claim"; the amount of each specific benefit for each Claim that it would be unjust for the relevant Wholesaler to retain; any documents that relate to and/or reflect any action by a Wholesaler that misled MSP with regard to a Claim; documents referring to each Claim for which MSP expected remuneration from a Wholesaler; any and all documents referring to each Claim for which MSP alleges that a Wholesaler "engaged in any wrongdoing and/or unjust or improper conduct with regard to the

10

VCDs made the subject of the Claims"; and any and all documents that refer to any action of a Wholesaler that directly or indirectly caused damage to MSP "with regard to any specific Claim."

In addition to being untimely, Plaintiffs object to these requests as "overly broad, burdensome, unreasonably cumulative, and disproportionate" to the needs of this case.  Plaintiffs point out that they have already produced the documents required by the TPP fact sheets and other timely requests for production of documents, as well as transactional claims data and expert witness reports. Wholesalers assert that Plaintiffs have produced only those documents upon which they intend to rely to prove their unjust enrichment claims, but have not produced all documents that "refer to, relate to, or reflect" the specific elements of an unjust enrichment claim.  Wholesalers speculate that Plaintiffs have no documents to support the unjust enrichment claim, and should be compelled to admit as much.

Plaintiffs' objections are meritorious.  They have represented that they have produced all relevant documents.  Wholesalers have not contended that the production requests that have been allowed by the Court in this matter were insufficient.  Nor have they explained why the TPP Class Representative should be required to respond anew to the requests concerning the elements of an unjust enrichment claim.  Accordingly, Wholesalers' requests 11 through 16 will be disallowed.

11

### E.  Damages to TPP Class Representatives (Requests 17-21)

Asserting that whether the TPP Class Representatives sustained harm as a result of the Wholesalers' sale of VCDs "is a critical part of the trier of fact's weighing of the elements of the [unjust enrichment] claim and the determination of which party is most entitled to Wholesalers' profits," (ECF No. 2426 at 10), Wholesalers seek any and all documents that refer to, relate to, and/or reflect the type and amount of damages sought for each Claim as to each Wholesaler Defendant as well as the methodology used to calculate the amount of damages being sought.  The Wholesaler Defendants then state that it is their position that the TPP Class Representatives have not incurred any damages and want to compel the TPP Class Representatives to say so.

Plaintiffs respond by stating that they have already produced the relevant documents, including documents showing the cost of replacement drugs, as well as expert witness reports that explain their damage theories and estimate their damages.  Wholesalers do not refute this statement but insist that they are entitled to a response to their requests.  What Wholesalers are entitled to, however, are the relevant documents, not a reply to a "gotcha" request.   Having failed to contest Plaintiffs' statement that all relevant documents have been produced, Wholesalers have not presented justification for compelling Plaintiffs to respond to Requests 17 through 21.  Accordingly, Requests 17 through 21 will be disallowed.

12

**E. The Value/Benefit of the VCDs to the TPPs (Requests 22 through 27)**

Wholesalers' Requests 22 through 25 seek production of any and all documents that refer to, relate to, and/or reflect the value provided to the insureds of the TPPs and the TPPs for each Claim, i.e., transaction, by a covered VCD prescription. Request 26 seeks any and all documents that relate to the safety and efficacy of the VCDs or discussions on whether and how the VCDs "should be included on the formulary." Request 27 requests "[t]he underlying medical records in your possession, custody and/or control regarding the VCDs prescribed and/or their therapeutic effect for *each patient who is a subject of the Claims*." (Emphasis added.)

In response to these requests, Plaintiffs point out that the Court has already determined that the VCDs contaminated with carcinogenic substances are economically worthless, "regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure." (Jan. 22, 2021 Opinion, ECF No. 775, at 20.) This determination makes irrelevant the value provided to the TPPs and their insureds from the contaminated VCDs. Furthermore, the "underlying medical records . . . for each patient who is a subject of the Claims" is plainly outside the bounds of permissibly discovery. Accordingly, Requests 22 through 27 will be disallowed.

*ACTIVE 687757241v2*

## F.  Profits of TPPs from Covering the VCDs in Issue (Request 28)

Request 28 asks for "[d]ocuments sufficient to determine the gross revenue, expenses and/or costs, and net profits to you on *each Claim* and the documents upon which you base your calculations of same."  The Wholesalers assert that the information sought in this request "is critical" for their defense.  (ECF No. 2426 at 9.)  They explain that whether TPPs profited from their purchases of VCDs is pertinent to (a) the unjust enrichment "elements of 'justness' and 'equity of circumstances'"; (b) whether the TPPs have "unclean hands" in that they too may have profited from the sale of VCDs; and (c) whether the contaminated VCDs were indeed worthless to the TPPs.  (*Id.*)

The Wholesalers efforts to place the spotlight on the TPPs are misguided.  As Plaintiffs argue, the focus of an unjust enrichment claim is on the defendant's conduct, here, the Wholesalers' conduct.  Whether TPPs profited by fulfilling their contractual obligations to their insureds by paying for worthless VCDs is irrelevant to whether the Wholesalers were unjustly enriched.  The measure of damages in an unjust enrichment action is the wrongdoer's gain, not the plaintiff's losses.  *Cohan v. Minicozzi*, 2016 WL 5798900, at *3 (Conn. Super. Sept. 2, 2016).  As noted above, the focus is on the alleged wrongdoer's conduct.  Here, the Wholesalers are alleged to have sold VCDs that were worthless because they were contaminated by carcinogenic substances.  The TPPs, by way of contrast, simply fulfilled their

14

contractual obligations to their insureds.  The Wholesalers, albeit perhaps otherwise innocent intermediaries, may be responsible for the safety and integrity of the substances they sold.  The TPPs by paying for the contaminated VCDs to fulfill their duties to their insureds are not sellers of a contaminated product and any profits from honoring their contractual obligations are simply irrelevant to a claim for unjust enrichment against the seller of the contaminated product.

## CONCLUSION

To their credit, Plaintiffs have indicated a willingness to produce some documents notwithstanding the untimeliness of the Wholesalers' demands, and they should produce the documents they are willing to produce promptly.  A careful review of Requests 7 through 28 to which objections have been asserted compels the conclusion that, even if the Requests had been submitted timely, Plaintiffs need not respond to any of them.

**ACCORDINGLY, IT IS HEREBY ORDERED this 11th Day of August, 2023**, that Wholesaler Defendants' request that the Plaintiff TPP Class Representatives and related health insurance entity assignors be ordered to respond to Wholesalers' proposed Requests for Production numbered 7 through 28 is **DENIED.**

s/ Thomas I. Vanaskie
Hon. Thomas I. Vanaskie (Ret.)
Special Master

*ACTIVE 687757241v2*