UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Actions | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge |

## SPECIAL MASTER ORDER NO. 83

## August 11, 2023

### I.   BACKGROUND

Special Master Order No. 80 established a schedule for submission of briefs on discovery disputes pertaining to the production of documents regarding Third Party Payor ("TPP") "payments, costs, profits, and custodial discovery from the Retail Pharmacy Defendants."[1]  (ECF No. 2416 at 1.)  The Retail Pharmacy Defendants submitted the initial letter brief in response to Special Master Order No. 80 on June 13, 2023.  (ECF No. 2427.)  It identified two outstanding discovery disputes.  The first concerns "the form of production of TPP Amounts Paid."  (*Id.*

---

[1] The Retail Pharmacy Defendants are Albertson's LLC, CVS Pharmacy, Inc., Express Scripts, Inc., Humana Pharmacy, Inc., Kroger Co., OptumRX, Rite Aid Corp., Walgreen Co., and Walmart Inc.

*ACTIVE 687757241v2*

at 1.) The second involves whether the Retail Pharmacy Defendants were required to produce information from their "loyalty or membership databases," and specifically whether production of email addresses from those databases should be compelled. Plaintiffs submitted their opposition letter brief on June 19, 2023 (ECF No. 2342); and the Retail Pharmacy Defendants submitted their reply letter brief on June 22, 2023. (ECF No. 2440.) Oral argument via Zoom was heard on June 23, 2023. (ECF No. 2441.)

## II. DISCUSSION

**A. Form of Production of TPP Amounts Paid**

The dispute on this issue concerns whether the data on TPP payments should be submitted on a disaggregated basis, *i.e.*, transaction by transaction, or whether the Retail Pharmacy Defendants have the option of producing the data on an aggregated basis, *i.e.,* by both National Drug Code ("NDC") number as well as by month or quarter. The Retail Pharmacy Defendants contend that production of the disaggregated data raises substantial competitive concerns. In support of this contention, they have presented declarations attesting to the competitive nature of the retail pharmacy business and the measures taken by the retail pharmacies to protect pricing information from disclosure. For instance, the declaration submitted on behalf of Defendant Walgreens asserts that "[o]ther retail pharmacy defendants could gain a significant competitive and economic advantage over

2

Walgreens if they learned this confidential information, and especially what each TPP reimburses Walgreens for dispensing generic drugs to the TPP's beneficiaries and members." (ECF No. 479-10 at ¶10.)

Plaintiffs counter that the protective orders entered in this matter, including the protective order that limits dissemination of sensitive information to outside counsel only, are sufficient to allay any competitive concerns. They also point out that this information is disclosed on a consumer's pharmacy records, so it is not maintained as confidential, proprietary information. Plaintiffs argue that production of the amounts paid on a transaction-by-transaction basis would not impose an undue burden in that the Retail Pharmacy Defendants have already produced "the NDCs, quantities dispensed, dates of sale, and amounts paid by consumers" on a disaggregated basis. (ECF No. 2432 at 3.) Finally, Plaintiffs say that they need the data on a disaggregated basis for their damage models.

Whether to require production of the disaggregated data presents a close question. On the one hand, Plaintiffs have articulated a rational basis for asking for disaggregated data. And on the other hand, the Retailer Pharmacy Defendants have presented persuasive declarations that disclosure of disaggregated data raises competitive concerns. However, the fact that the Retailer Pharmacy Defendants ask only for the *option* to produce aggregated data weighs strongly in favor of requiring production of disaggregated data. Information should be produced in a

3

consistent format, and that consistent format here is disaggregated data. In addition, it is difficult to reconcile the competitive concerns voiced by some Retail Pharmacy Defendants with the position that the Retail Pharmacy Defendants should have the option to produce transaction-by-transaction data. Thus far, the protective orders entered in this MDL have proven sufficient to safeguard sensitive competitive information, and there is no reason to believe that the protective orders would be inadequate here. Accordingly, the Retail Pharmacy Defendants will be required to produce data on TPP amounts paid on a disaggregated basis.

### B. Customer/Loyalty Databases

Plaintiffs seek production of Retailer Pharmacy Defendants' Customer/Loyalty Databases so that they can mine them for the email addresses of those persons who purchased VCDs from them. As explained in Plaintiffs' opposition brief, Plaintiffs "principally seek class members' emails from Retailers' databases beyond the dispensing databases, such as customer/loyalty databases, to reduce the exorbitant cost of postage that would be incurred in lieu of emails (or telephone numbers); costs which even under the most conservative estimates will reduce the class's recovery by millions of dollars." (ECF No. 2432 at 4.) Plaintiffs propose that Retailers be compelled to query their loyalty program databases "by product (*i.e.*, valsartan) to identify names, address, dates of birth, and emails associated with valsartan purchases, and then Plaintiffs themselves or the Notice

4

Administrator can cross-reference those results against the pharmacy dispensing data to match-up and fill-in missing emails that exist in the customer/loyalty data but not in the pharmacy dispensing data." (*Id.*)

The Retailer Pharmacy Defendants argue that there are a number of problems with the approach proffered by Plaintiffs. First, three of the Retailer Pharmacy Defendants (Express Scripts, OptumRx, and Humana) do not have customer loyalty databases. Second, many of the Retailer Pharmacy Defendants do not have the ability to query their customer loyalty databases by National Drug Code number of by drug name. For instance, "Walgreens' loyalty rewards database does not track prescription-specific information such as the National Drug Code or drug name associated with a particular prescription." (Decl. of A. Tian, (ECF No. 2440-1) at ¶7.) CVS, similarly, does not link its customer loyalty program to its pharmacy sales so that "[t]he loyalty rewards database does not track prescription-specific information such that CVS or its counsel could directly search the database to see which customers filled the relevant prescriptions at a CVS pharmacy." (Decl. of K. Gannamani (ECF No. 2440-2) at ¶ 8.) Third, any attempt to "match up" information from a customer loyalty database with information in the dispensing database is time-consuming, burdensome, and filled with inaccuracies. As explained in the Declaration submitted on behalf of Rite Aid:

5

> even if Rite Aid could produce a list of transactions where at-issue valsartan were dispensed from its Rite Aid Rewards database, it would need to cross reference identifiers within the loyalty database and within the dispensing data to attempt to minimize (though not eliminate) the risk of improper disclosure to household members or acquaintances sharing a Rite Aid Rewards card. That process of cross-referencing would be time consuming and fraught with potential error.

(Decl. of M. Paulk (ECF No. 2440-3 at ¶ 11; *see also* Decl. of M. Rando (ECF No. 2440-5) at ¶ 8 ("any attempt to connect [Albertson's] loyalty program data and the pharmacy patient dispensing database would be a voluminous and time-consuming manual process that is likely prone to substantial errors with little likelihood of a viable end-product"). And fourth, there are substantial privacy concerns involving sensitive, personal health care information in using loyalty program email addresses to attempt to give notice to those who purchased valsartan at a particular pharmacy.

Significantly, Plaintiffs do not contend that the Retail Pharmacy Defendants' dispensing databases are insufficient to identify the members of the classes for purposes of satisfying the obligation to provide the "best notice that is practicable under the circumstance, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Nor do Plaintiffs contest the Retail Pharmacy Defendants' assertion that Plaintiffs' class notice provider, the Angeion Group LLC, has demonstrated the ability to ascertain email addresses from the type of information in the Retail Pharmacy Defendants'

6

dispensing databases. For instance, in *Corcoran v. CVS Health,* 15-CV-03504-YGR, 2019 WL 6250972 (N.D. Cal. Nov. 22, 2019), the court was persuaded by a presentation of Angeion's ability to ascertain email addresses from existing information provided by the defendants. The court in that case approved a notice program consisting of (a) emailing a "short-form notice to all class members whose email addresses defendants have provided or *Angeion Group LLC has located*, and (b) sending via United States Postal Service mail the short-form notice to all class members for whom there are no email addresses or for whom an email address resulted in a bounce-back message." *Id.* at *9 (emphasis added). Plaintiffs have not presented any evidence explaining why such an approach here would be too expensive.

Although Plaintiffs speculate that there may be millions of class members for whom email addresses are not found in the dispensing databases, they have not presented evidence to substantiate this fear. Nor have they provided a declaration from Angeion Group that it will be unable to ascertain email addresses for many of the class members from the information available from the dispensing databases.

*Larson v. AT&T Mobility LLC,* 687 F.3d 109 (3d Cir. 2012), upon which Plaintiffs place principal reliance, does not compel requiring the Retailer Pharmacy Defendants to produce their loyalty program databases. *Larson* concerned requiring a search of billing records to *identify* class members. *Id* at 122. It did not

7

involve a search of records to ascertain email addresses for already-identified class members.

Undoubtedly, notification via email is considerably less expensive than notification through the United States Postal Service.  But the magnitude of that difference has not been substantiated by declaration or other evidence.  Nor is it clear how many more class members' email addresses will be revealed by production of customer loyalty program databases.  It may be that this issue can be revisited after production of the dispensing databases and Plaintiffs are able to provide more concrete data on the cost of a notice program based upon the information provided from the dispensing databases as supplemented by the efforts of Angeion Group, LLC.  For now, however, the Retailer Pharmacy Defendants will not be required to produce their customer loyalty program databases.

**ACCORDINGLY, IT IS HEREBY ORDERED this 14th Day of August, 2023, THAT:**

1. Retailer Pharmacy Defendants shall produce data on TPP amounts paid on a transaction-by-transaction, i.e., disaggregated basis, and the request of the Retailer Pharmacy Defendants to have the option to produce that data on an aggregated basis is **DENIED.**  Specifically, the following interrogatory proposed by Plaintiffs is approved:

    > For the Relevant Time Period, identify payments made to You by TPPs for VCDs dispensed by You during the relevant time

period, as reflected in previously produced dispensing data. For purposes of this Interrogatory, each Retail Pharmacy Defendant shall identify transactional amounts received from TPPs for each individual fill of VCDs.

2. Plaintiffs' request that the Retailer Pharmacy Defendants be compelled to produce their customer loyalty program databases for purposes of ascertaining email addresses for class notification purposes is **DENIED, WITHOUT PREJUDICE.**

s/ Thomas I. Vanaskie
Hon. Thomas I. Vanaskie (Ret.)
Special Master

ACTIVE 687757241v2