**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| | Honorable Robert B. Kugler, District Judge |
| *This Documents Relates to All Actions* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**WHOLESALER DEFENDANTS' OBJECTIONS TO**
**AND MOTION TO MODIFY SPECIAL MASTER ORDER NO. 82**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE FACTS .........................................................................1

STANDARD OF REVIEW ..................................................................................5

ARGUMENT ........................................................................................................6

    I.    Objection to SMO 82 Section II.B Ruling Regarding Contracts Between TPP Plaintiffs and Wholesalers (RFP 7)...............................7

    II.    Objection to SMO 82 Section II.B. Ruling Regarding Communications Between TPP Plaintiffs and Wholesalers (RFPs 8-9) ........................................................................................7

    III.    Objection to SMO 82 Section II.D. Ruling Regarding Elements of the UE Cause of Action Topic (Requests 11-16) ..........................13

        A.    The RFPs Track the Essential Elements of UE that Plaintiffs *Must* Prove....................................................................13

        B.    Relevant Evidence is Discoverable...........................................14

        C.    The Special Master Misinterpreted TPP Plaintiffs' Representations About Productions.........................................16

        D.    SMO 82 Fails to Order Compliance with Fed. R. Civ. P. 34(b)(2)(C) and 34(b)(2)(E)(1). ...............................................17

    IV.    Objection to SMO 82 Section II.E. Ruling Regarding Damages to TPP Class Representatives Topic (RFPs 17-21)...........................20

    V.    Objection to SMO 82 [Second] Section II.E and II.F. Ruling Regarding Value Received by TPPs and Profits Earned by TPPs (RFPs 22-28) ........................................................................................23

        A.    The Value of the VCDs is Relevant and Discoverable With Respect to TPP Plaintiffs' UE Claim........................................23

        B.    The Profits TPP Plaintiffs Earned By Covering VCDs is Relevant and Discoverable ....................................................26

CONCLUSION ...................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albinger v. Harris*,
    48 P.3d 711 (Mont. 2002) ................................................................................14

*Bally v. First Nat'l Bank Omaha*,
    Civ No. 17-10632, 2018 WL 1558861 (E.D. Mich. Jan. 17, 2018) ..................18

*Bauer v. Pourciau*,
    No. CV 18-5611-WBV-MBN, 2020 WL 5542863 (E.D. La. Sept. 16,
    2020) ...........................................................................................................24, 29

*Bimbo Bakeries USA, Inc. v. Pinckney Molded Plastics, Inc.*,
    No. 4:06-CV-180-A, 2007 WL 836874 (N.D. Tex. Mar. 20, 2007) .................14

*Chow v. SentosaCare, LLC*,
    No. 19-cv-3541-FB-SJB, 2020 WL 559704 (E.D.N.Y. Jan. 23, 2020) ............18

*Cohan v. Minicozzi*
    NNHCV156052856, 2016 WL 5798900 (Conn. Super. Ct. Sept. 2,
    2016) ...........................................................................................................27, 28

*Dryer v. Nat'l Football League*,
    No. 09-CV-2182, 2011 WL 13136546 (D. Minn. Jan. 5, 2011) .................24, 28

*Durst v. Milroy Gen. Contracting, Inc.*,
    2012 PA Super 179, 52 A.3d 357 (2012) .........................................................25

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
    No. CIV. A. 03-4558 (GEB), 2010 WL 2813788 (D.N.J. July 9, 2010),
    *amended*, No. CIV.A. 03-4558 (GEB), 2011 WL 601279 (D.N.J. Feb.
    16, 2011) ...........................................................................................................24

*Forest Guardians v. Kempthorne*,
    No. 06CV2560-L(LSP), 2008 U.S. Dist. LEXIS 128343 (S.D. Cal. Apr.
    1, 2008) .............................................................................................................16

*Fox v. Cheminova, Inc.*,
No. CV 00-5145 (TCP) (ETB), 2006 U.S. Dist. LEXIS 11463 (E.D.N.Y.
Mar. 1, 2006)........................................................................................20, 21

*In re Gerber Probiotic Sales Practices Pracs. Litig.*,
306 F.R.D. 527 (D.N.J. 2015)............................................................24

*Hughes v. Chattem, Inc.*,
818 F.Supp.2d 1112 (S.D. Ind. 2011).................................................14

*Intarome Fragrance & Flavor Corp. v. Zarkades*,
No. 07-973 (DRD) (MAS), 2008 WL 4449629 (D.N.J. Oct. 1, 2008) ...............9

*Johnson v. Microsoft Corp.*,
834 N.E.2d 791 (Ohio 2005) ............................................................14

*Johnston v. Brumlow*,
Nos. S-14275, 14306, 2012 Alas. LEXIS 115, at *15 (Aug. 29, 2012)............21

*Jones v. Monsanto Co.*,
No. 19-0102-CV-W-BP, 2021 WL 2426126 (W.D. Mo. May 13, 2021) .........26

*Kowalski v. Stewart*,
220 F.R.D. 599 (D. Ariz. 2004) .........................................................12

*Love v. N.J. Dep't of Corr.*,
No. 2:15-CV-4404, 2017 U.S. Dist. LEXIS 128905 (D.N.J. Aug. 11,
2017) ...............................................................................................15

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
422 F.Supp.3d 194 (D.D.C. 2019)......................................................26

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*,
265 F.Supp.2d 440 (D. Vt. 2003) ......................................................30

*Microsoft Corp. v. Softicle.com*,
No. 2:16-CV-02762-MCA-SCM, 2017 U.S. Dist. LEXIS 163453
(D.N.J. Oct. 2, 2017)........................................................................18

*Nelson v. Xacta 3000 Inc.*,
Civ. No. 0805426, 2009 U.S. Dist. LEXIS 109580 (D.N.J. Nov. 24,
2009) ...............................................................................................14

*Nippon Steel & Sumitomo Metal Corp. v. POSCO*,
No. 12-2429 (SRC), 2014 U.S. Dist. LEXIS 42444 (D.N.J. Mar. 26,
2014) ................................................................................................................5

*Off. Stanford Invs. Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*,
No. 3:11-CV-0303-N, 2015 WL 13739835 (N.D. Tex. July 22, 2015) .............26

*Paramount Aviation Corp. v. Agusta*,
178 F.3d 132 (3d Cir. 1999) ..........................................................................29

*Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*,
No. 19-cv-513, 2021 U.S. Dist. LEXIS 64382 (E.D. Pa. Apr. 1, 2021) ............18

*Polycarpe v. Seterus, Inc.*,
No. 6:16-cv-1606- Orl-37TBS, 2017 WL 2257571 (M.D. Fla. May 23,
2017) ...............................................................................................................18

*Ramos v. Banner Health*,
No. 15-cv-2556-WJM-MJW, 2018 U.S. Dist. LEXIS 138101 (D. Colo.
Aug. 8, 2018) ...............................................................................................5, 6

*Rawnsley v. Superior Court*,
183 Cal. App. 3d 86, 227 Cal. Rptr. 806 (1986) ..............................................21

*Sierra Club v. Angelle*,
No. 19-13966, 2021 U.S. Dist. LEXIS 261428 (E.D. La. Mar. 4, 2021)...........16

*Snyder v. Farnam Cos.*,
792 F.Supp.2d 712 (D.N.J. 2011)....................................................................14

*Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*,
479 F.Supp.3d 1247 (N.D. Fla. 2020) .............................................................14

*Thieme v. Aucoin-Thieme*,
227 N.J. 269, 151 A.3d 545 (2016) .................................................................25

*Trask v. Olin Corp.*,
298 F.R.D. 244 (W.D. Pa. 2014) .....................................................................15

*Vichi v. Koninklijke Philips Elecs. N.V.*,
62 A.3d 26 (Del. Ch. 2012) .............................................................................14

*Watkins v. Trans Union, LLC*,
   2:14-cv-00135 WTJ-MJD, 2018 WL 3008639 (S.D. Ind. June 15, 2018).........18

**Statutes**

28 U.S.C. 1407 ...........................................................................................8

**Other Authorities**

C. Wright, Handbook on the Law of Federal Courts § 81 (3d ed. 1976) .................6

Fed. R. Civ. P. 23 ......................................................................................1

Fed. R. Civ. P. 26(b) .........................................................................*passim*

Fed. R. Civ. P. 34(b) .........................................................................*passim*

Fed. R. Civ. P. 53 ................................................................................1, 5

Wright & Miller, 8 Federal Practice and Procedure § 2001 (3d ed. 2010) .......13, 14

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 34 and 53, and applicable case law, Wholesaler Defendants respectfully object to the Special Master's findings in Special Master Order ("SMO") 82 and ask the Court to modify those findings and to require the Third-Party Payor ("TPP") Plaintiffs to properly respond to Requests For Production ("RFPs") 7, 8, 9, and 11-28. The RFPs properly exercise Wholesalers' fundamental rights to seek relevant information on the elements of the TPP Plaintiffs' certified UE claim against them, and should be permitted. Conversely, TPP Plaintiffs should not be permitted to avoid their most basic discovery obligations under the Federal Rules.

## STATEMENT OF THE FACTS

On February 8, 2023, the Court issued its Opinion on Certification of Plaintiffs' Proposed Classes under Fed. R. Civ. P. 23 and certified one claim against Wholesalers—Economic Loss Plaintiffs' unjust enrichment ("UE") claim.[1] On April 12, 2023, following the March Case Management Conference in which the Court asked Plaintiffs how they would like to proceed after the class certification rulings, Plaintiffs filed a letter with the Court proposing a "trial plan" for the first class trial, involving TPP class representatives and three Manufacturer Defendants (ZHP, Teva,

---

[1] The original Economic Loss Plaintiffs' consolidated second amended class action complaint (ECF No. 398) asserted 18 claims against Wholesalers, but Economic Loss Plaintiffs only sought certification of one claim—UE—against Wholesalers.

1

and Torrent). Although Plaintiffs' proposed plan for the first TPP trial did not include any downstream defendants, Plaintiffs still requested discovery from Retail Pharmacy Defendants and Wholesalers. Specifically, Plaintiffs requested that Wholesalers produce "cost/profits data for VCDs" and participate in "targeted fact and expert discovery," including "targeted" custodial discovery and Rule 30(b)(6) depositions. ECF No. 2338, pp. 4-5.[2]

In response to Plaintiffs' April 12 letter, the Court entered CMO 32 on April 21, 2023. ECF No. 2343. CMO 32 granted Plaintiffs' request for "additional discovery" from Wholesalers in part, and required Wholesalers to provide Plaintiffs *"information that relates to the certified class claims." Id*. (emphasis added). That information included Wholesalers' (1) "costs and profits data for VCDs," (2) "prices Wholesalers paid for VCDs," (3) "prices Wholesalers sold VCDs downstream," and (4) "targeted discovery and depositions of wholesaler custodians and FRCP 30(b)(6) deponents." *Id.*

In the midst of all of these discovery demands to Wholesalers, Plaintiffs have claimed that discovery in this case goes one way only, and Wholesalers are not

---

[2] Since that time, in meet and confer sessions, TPP Plaintiffs have additionally advised Wholesalers that their discovery of Wholesalers intends to include discovery on not just the certified UE claim—the only claim that the TPP class has against Wholesalers—but *all* of the claims asserted by *all* types of plaintiffs that remain after the motions to dismiss in *all* master complaints (economic loss, medical monitoring, and personal injury). This would include numerous causes of action not at issue in the certified TPP class.

entitled to any discovery from Plaintiffs. Contrary to Plaintiffs' representations to the Court in their June 27, 2023, letter (ECF No. 2443 at 2) and the Special Master's statement in SMO 82 (ECF 2469 at 7-8), the Court never issued any order or made any statement "tabling" the categories of discovery in (1) through (3) until after class certification. In fact, Magistrate Judge Schneider's 2020 ruling deferred Plaintiffs' "price and profit" discovery relevant to Plaintiffs' UE claim "until after the defendants' motions to dismiss are decided or an earlier time for good cause shown." ECF 507 at 1-2. The motions to dismiss were decided two years before Plaintiffs sought to revisit this discovery. As for category (4), there was *never a single mention by the Court or the Magistrate Judge* that the types of custodial discovery to Wholesalers permitted by CMO 32 were in any way "deferred," "tabled," or held in abeyance "pending class certification." Despite TPP Plaintiffs' inaccurate statement otherwise (ECF 2443 at 4), there were no record citations to support this claim in either Plaintiffs' letter or SMO 82.[3]

---

[3] The Special Master also incorrectly stated, "The Wholesalers asserted that 'it is axiomatic that for any transaction for which they seek to recover, Plaintiffs must prove that a specific Wholesaler sold the VCD and was enriched by the sale.' (ECF 2372 at 4.) It appears that this dispute between the parties has been resolved as the issue has not been briefed by the parties." ECF 2469, p. 2 n.3. To the contrary, this dispute was repeatedly briefed by Wholesalers. *See* ECF 2426, p. 2-3, 5, 7-9; ECF 2445, p. 2. Furthermore, at oral argument, Wholesalers *again* argued that TPP Plaintiffs must prove that a specific Wholesaler sold the VCD and was enriched by the sale. ECF 2451, p. 5:15-7:6. Therefore, to the extent the Special Master believes and/or Plaintiffs argue SMO 82 holds that: (1) Plaintiffs need not prove that a specific Wholesaler sold the VCD and was enriched by the sale; (2) that issue was

3

While in opposition to Wholesalers' discovery requests Plaintiffs—and, in SMO 82, the Special Master—assert that Wholesalers' 2023 discovery to the TPP Plaintiffs was "untimely," in fact, all discovery exchanged between the parties before the spring of 2023 was "core discovery" geared toward class certification, with no bar on more fulsome merits discovery between the parties (other than the parties to the first TPP trial) following the Court's clarification of what would be certified and tried. On April 25, 2023, as it seemed apparent to Wholesalers that merits discovery was then open with respect to the certified claims (*see* ECF 2343 at 3-4), Wholesalers filed a letter with the Court requesting leave to take fact discovery from TPP Plaintiffs relevant to the elements of the sole claim certified against them (UE). Wholesalers asserted that because CMO 32 specifically allowed *Plaintiffs* to take discovery anew on their recently certified UE class claim against Wholesalers, due process mandated that Wholesalers *also* be permitted to take discovery from TPP Plaintiffs regarding evidence relevant to the elements of the UE claim. TPP Plaintiffs balked at Wholesalers' request, even as they informed Wholesalers that they would seek further discovery from Wholesalers on uncertified

---

not briefed and argued; (3) that the parties have resolved that issue; and/or (4) that Wholesalers have somehow waived their argument that Plaintiffs must produce responsive information demonstrating—and ultimately prove—that a specific Wholesaler sold the VCD and was enriched by the sale, Wholesalers object on the grounds that the Special Master misrepresented the facts and, therefore, drew incorrect, factually unsupported conclusions.

4

claims they believe remain pending in the economic loss case. After several meet and confers and entry of a briefing schedule, the parties submitted competing briefs regarding the propriety of certain requests for production made by Wholesalers to TPP Plaintiffs.[4] ECF 2426, 2443, and 2445. The parties argued the issues to the Special Master on July 6, 2023. The Special Master issued SMO 82 on August 11, 2023, which disallowed on the merits all of Wholesalers' RFPs (7-28) before him. Wholesalers now object to SMO 82 and request that the Court modify SMO 82 as described herein.

## **STANDARD OF REVIEW**

The Court's appointment of a special master, and the review of a special master's decisions, are governed by Federal Rule of Civil Procedure 53. *See, e.g.*, *Nippon Steel & Sumitomo Metal Corp. v. POSCO*, No. 12-2429 (SRC), 2014 U.S. Dist. LEXIS 42444, *1 (D.N.J. Mar. 26, 2014). Under Rule 53, unless the court sets a different time, a party may object and move to modify a special master's order no later than 21 days after a copy of the order is served. *See* Fed. R. Civ. P. 53(f)(2). All objections to the findings of fact made by the special master must be decided de novo, unless the parties stipulate that the findings will be reviewed for clear error. *See* Fed. R. Civ. P. 53(f)(3). Here, there is no stipulation for a clear error review.

---

[4] In the process of the meet and confers, TPP Plaintiffs agreed to respond to Wholesalers RFPs 1, 2, and 5(a)-(p).

Indeed, "[e]ven where a party does not object to a recommendation, a court may elect to review a special master recommendation de novo." *Ramos v. Banner Health*, No. 15-cv-2556-WJM-MJW, 2018 U.S. Dist. LEXIS 138101, *6 (D. Colo. Aug. 8, 2018). "Upon review, the Court may 'adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions.'" *Id*. (citation omitted).

## ARGUMENT

The Federal Rules of Civil Procedure regarding discovery are intended to give each party the information it needs to fully and effectively present its respective side of the case, to inform each party of the basis of its adversary's claim or defense, and to provide access to all relevant information. C. Wright, Handbook on the Law of Federal Courts § 81 (3d ed. 1976). In this case, Judge Kugler has specifically said: "I have never forced a lawyer to go to trial when they don't have the discovery they need in a case. I think we have been very receptive to all sides in this case to meet the needs of you and your clients to prepare these cases for trial, and I think that will continue." *See* ECF 2151, Aug. 24, 2022 CMC Hr'g Tr. 26:14-18. Denying Wholesalers the opportunity to seek discovery relevant to the basic elements of the one claim certified against them, as discussed more fully below, flies in the face of these basic due process principles and as a result, Wholesalers cannot present a full and effective defense.

6

## I.     Objection to SMO 82 Section II.B Ruling Regarding Contracts Between TPP Plaintiffs and Wholesalers (RFP 7)

Wholesalers object to the Special Master's denial of RFP 7 seeking production of contracts or agreements between the parties. While the TPP Plaintiffs objected to RFP 7 to the extent they interpreted it to seek documents beyond the contracts themselves and contracts about subject-matters unrelated to valsartan-containing drugs, the TPP Plaintiffs still agreed to produce contracts that "might exist" that "may relate" to valsartan-containing drugs ("VCDs"). Those are the same documents that Wholesalers seek via RFP 7. As such, Wholesalers request that the Court modify SMO 82 to provide for TPP Plaintiffs' production of the contracts they stated they have no objection to producing—i.e., those contracts between the TPP Plaintiffs and Wholesalers that related to VCDs, if any exist.

## II.    Objection to SMO 82 Section II.B. Ruling Regarding Communications Between TPP Plaintiffs and Wholesalers (RFPs 8-9)

Wholesalers object to the denial of RFPs 8 and 9 seeking production of the TPP Plaintiffs' communications with Wholesalers regarding (1) the Claims, individually or collectively, at issue (RFP No. 8) and (2) the VCDs made the subject of the Claims (RFP No. 9). The Special Master disallowed Wholesalers' RFPs 8 and 9 as "patently overbroad and practically impossible to answer with any precision" and "not narrowly tailored to discover relevant facts." As a second basis for his denial of RFPs 8 and 9, the Special Master concluded, contrary to the record, that

"[t]here is no need to require Plaintiffs to produce documents the Wholesalers should already have in their possession."

There are multiple errors in the ruling. Wholesalers object to the disallowance of RFPs 8 and 9 and request that the Court modify SMO 82 to correct those errors and provide Wholesalers the opportunity to obtain discovery on the communications that exist (or do not exist) between Wholesalers and TPP Plaintiffs.

**First**, the Special Master applied an improper standard to deny Wholesalers' RFPs 8 and 9, rather than the standard under Federal Rule of Civil Procedure 26(b), which provides that Wholesalers:

> "[M]ay obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The text of SMO 82 makes plain that the Special Master did not evaluate RFPs 8 and 9 using the required Rule 26(b) standard. The fact that the cases have been consolidated for pretrial proceedings under 28 U.S.C. §1407 does not vitiate the Federal Rules of Civil Procedure. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). If RFPs 8 and 9 are properly evaluated under Rule 26(b), those RFPs are plainly permissible.

8

There is no question that communications between the TPP Plaintiffs and Wholesalers, if any exist, are both non-privileged and relevant. *See, e.g.*, *Intarome Fragrance & Flavor Corp. v. Zarkades*, No. 07-973 (DRD) (MAS), 2008 WL 4449629, at *1-2 (D.N.J. Oct. 1, 2008) (finding discovery related to any communications, business transactions, or agreements between the parties relevant to various claims, including conversion, misappropriation, unfair competition, tortious interference, and unjust enrichment). Indeed, the Special Master made no finding on relevance. The only proper evaluation should be whether RFPs 8 and 9 are proportional to the needs of this case considering the factors set out in Rule 26, and the fact that TPP Plaintiffs filed no evidence challenging proportionality. That answer is yes.

This litigation involves personal injury claims of cancer allegedly caused by contaminated products, along with certified nationwide and multistate classes asserting claims for: (1) consumer economic loss; (2) TPP economic loss; and (3) medical monitoring. The Court has certified 18 subclasses with respect to the TPP Plaintiffs alone. Just the class economic loss damages alleged by Plaintiffs' expert Dr. Rena Conti total over a billion dollars. There is no question that RFPs 8 and 9 are, therefore, proportional to the needs of the case considering the important issues at stake and the substantial amount in controversy. Further, the TPP class representative Assignors to whom RFPs 8 and 9 are directed are sophisticated

insurance companies with ready access to the documents requested as well as significant resources, including numerous employees and systems, that can be deployed to respond to Wholesalers' discovery—just as Wholesalers have been required to respond to Plaintiffs' discovery. Indeed, if these TPPs do not have the resources to produce communications with the defendants they have sued, they are not appropriate class representatives.

Finally, and perhaps most importantly, the TPP Plaintiff class representatives have neither claimed nor shown that the burden and expense of producing their communications with Wholesalers—if any even exist—outweigh the benefit of this discovery to the litigation.[5] In fact, TPP Plaintiffs have made no showing of burden—as to this request or any of the others. Similarly, the Special Master made no finding of burdensomeness with respect to RFPs 8 and 9. Therefore, when evaluating the propriety of RFPs 8 and 9 using Rule 26(b)'s scope of discovery standard, there is no question that those requests are proper in the context of this litigation, they are not burdensome, and they should have been allowed.

**Second**, the Special Master erred by adopting without question TPP Plaintiffs' claim that RFPs 8 and 9 are unnecessary because "Wholesalers would already have the actual . . . communications with TPP Plaintiffs." ECF No. 2469 at 9. As

---

[5] If TPP Plaintiffs have no communications with Wholesalers, then there is no burden on TPP Plaintiffs to state as much in response to RFPs 8 and 9.

Wholesalers have repeatedly represented, Wholesalers do not communicate with TPP Plaintiffs, and Wholesalers do not possess communications with TPP Plaintiffs. *See* ECF. No. 2426 at 3 ("Wholesalers and TPPs do not in the ordinary course of business engage in communications . . . ."); *see also* ECF. No. 2451, July 6, 2023, Hrg. Tr. at 37 ("Ms. Davis: There are none (communications). We don't have any."). Judge Vanaskie ignored those undisputed facts, and instead simply accepted Plaintiffs' qualified claim that "*to the extent those communications exist*, the Wholesalers would naturally also be in possession of those documents." ECF No. 2443 at 13 (emphasis added).

TPP Plaintiffs dodged any statement about whether they in fact possess any communications with Wholesalers by employing this equivocal "to the extent those communications exist" language. In contrast, Wholesalers affirmatively represented that they possess no such communications. This should have resulted in approval of RFPs 8 and 9 to determine whether any communications exist in the possession of TPP Plaintiffs. Instead, the Special Master erred by merely accepting the TPP Plaintiffs' contradicted speculation about what Wholesalers might possess, and then using that speculation to deny Wholesalers discovery of the communications *the TPP Plaintiffs* may possess. If such communications exist, Wholesalers do not have

them. Thus, Wholesalers have a right to serve RFPs on TPP Plaintiffs to determine the specific communications in their possession, if any.[6]

**Third**, even accepting the Special Master's denial of RFPs 8 and 9 on the non-Rule 26 grounds that the scope of the RFPs are "patently overbroad" and "not narrowly tailored," the Special Master's holding in SMO 82 violates Federal Rule of Civ. P. 34(b)(2)(C). Rule 34(b)(2)(C) requires that a party objecting to a request for production "must state whether any responsive materials are being withheld on the basis of [the] objection." Simply objecting to requests for production, as TPP Plaintiffs have done here with respect to Wholesalers' RFPs 8 and 9 (ECF 2443), does not obviate the requirement of Rule 34 that Plaintiffs state whether they are withholding responsive documents. Therefore, Wholesalers further object to SMO 82 to the extent it improperly relieves Plaintiffs of this obligation, and respectfully request that the Court modify SMO 82 to require Plaintiffs to state whether or not they are withholding responsive documents subject to their objections. As discussed below, this is particularly important here because Wholesalers believe the TPP Plaintiffs have no such responsive documents. The Special Master's denial of RFPs

---

[6] The Special Master's citation to *Kowalski v. Stewart*, 220 F.R.D. 599, 602 (D. Ariz. 2004), is inapposite to this situation. In *Kowalski*, the Court denied the requests for production to the defendant because the plaintiff "failed to explain why he needs documents he already has in his possession." In this case, Wholesalers have explained that they *do not* possess the documents requested in RFPs 8 and 9. Therefore, RFPs 8 and 9 are appropriate because, unlike in *Kowalski*, Wholesalers do not have possession of the communications they seek via those RFPs.

8 and 9 permits the TPP Plaintiffs to continue the charade that they *may* have documents while avoiding going on record to confirm that they, in fact, possess no such documents—a circumstance Plaintiffs know is detrimental to their UE claim.

### III.   Objection to SMO 82 Section II.D. Ruling Regarding Elements of the UE Cause of Action Topic (RFPs 11-16)

As demonstrated below, Wholesalers' RFPs 11-16 are targeted requests for relevant evidence related to the elements of the TPP Plaintiffs' UE cause of action. Wholesalers object to SMO 82's Section II.D., ordering that TPP Plaintiffs need not respond to those RFPs on the grounds that the Special Master: (1) misinterpreted the TPP Plaintiffs' representations about what they have actually produced; and (2) did not enforce the further requirements of the Federal Rules of Civil Procedure 34(b)(2)(C) and 34(b)(2)(E)(1).

### A.   <u>The RFPs Track the Essential Elements of UE that Plaintiffs *Must* Prove</u>

This Court has stated that to prevail on a UE cause of action, a plaintiff must show: "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance/retention by the defendant of the benefit under circumstances that make it inequitable for the defendant to keep the benefit without payment of its value." ECF No. 1019, MTD Op. 6 at p. 26. Further, in New Jersey, the UE element that a plaintiff "must confer a benefit on the defendant" has been interpreted to require that the plaintiff must

have "a sufficiently direct relationship with the defendant to support the claim." *Snyder v. Farnam Cos*., 792 F.Supp.2d 712, 724 (D.N.J. 2011) (citing *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426 (MLC), 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009)).[7]

With these elements in mind, Wholesalers drafted RFPs 11-16, each of which tracks an element of UE that the TPP Plaintiffs *must* prove in some relevant state to win their case as to Wholesalers:

RFP 11:     **benefit** conferred by TPP on Wholesaler;
RFP 12:     **portion** of benefit **unjust** for Wholesalers to retain;
RFP 13:     **misleading action** by Wholesaler;
RFP 14:     **expectation of remuneration** from Wholesaler;
RFP 15:     **wrongdoing/improper conduct** by Wholesaler; and
RFP 16:     **action by Wholesaler** that caused direct or indirect damage.

## B.     Relevant Evidence is Discoverable

It is fundamental that the TPP Class Representatives bear the burden of proof on the UE cause of action, which obligates the TPP Plaintiffs under the Federal Rules of Civil Procedure to produce in discovery both the evidence on which they will rely

---

[7] Other relevant states require additional elements, such as (1) plaintiff must confer a "direct benefit" on the defendant (*Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59–60 (Del. Ch. 2012); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F.Supp.3d 1247, 1255 (N.D. Fla. 2020); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005)); or (2) proof of some sort of misleading conduct or wrongdoing (*Hughes v. Chattem, Inc.*, 818 F.Supp.2d 1112, 1124 (S.D. Ind. 2011); *Bimbo Bakeries USA, Inc. v. Pinckney Molded Plastics, Inc.*, No. 4:06-CV-180-A, 2007 WL 836874, at *6 (N.D. Tex. Mar. 20, 2007); *Albinger v. Harris*, 48 P.3d 711, 716 (Mont. 2002)).

at trial *and* all other requested evidence relevant to the cause of action. *See* Fed. R. Civ. P. 26(b)(1); *Love v. N.J. Dep't of Corr.*, No. 2:15-CV-4404-SDW-SCM, 2017 U.S. Dist. LEXIS 128905, at *8 (D.N.J. Aug. 11, 2017) (noting that, when a party serves RFPs, the responding party "*must produce all relevant documents* in his possession, custody, or control") (internal quotations and citations omitted) (emphasis added). Indeed, "[d]iscovery rules are construed liberally, underscoring the basic philosophy of the discovery procedure: 'prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged.'"[8] *Trask v. Olin Corp.*, 298 F.R.D. 244, 257 (W.D. Pa. 2014) (quoting Wright & Miller, 8 Federal Practice and Procedure § 2001, 18 (3d ed. 2010)). A plaintiff may not choose what evidence *it* wants to produce, which would obviously include only evidence favorable to the plaintiff, but must instead produce *all* relevant evidence, including evidence harmful to the

---

[8] The *Trask* court further noted these liberal discovery rules serve several key purposes: "'to avoid surprise and the possible miscarriage of justice, to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain the information needed to prepare for trial.'" *Trask v. Olin Corp.*, 298 F.R.D. 244, 257 (W.D. Pa. 2014) (quoting Wright & Miller, 8 Federal Practice and Procedure § 2001, 22-23 (3d ed. 2010)). Each of these purposes applies here and underscores the prejudice Wholesalers will face if the TPP Plaintiffs are allowed to produce only the documents on which they intend to rely (which ostensibly means Plaintiffs will produce only documents that benefit Plaintiffs). This proposed slanted production—which is inequitable, unjust, and contrary to the Federal Rules of Civil Procedure—is insufficient and conflicts with the purposes underlying the liberal discovery rules. *See id.*

15

plaintiff's case. *Forest Guardians v. Kempthorne*, No. 06CV2560-L(LSP), 2008 U.S. Dist. LEXIS 128343, at *8-9 (S.D. Cal. Apr. 1, 2008) (holding that an administrative agency needed to include in the record both favorable and unfavorable information, because it would be improper to let it "cherry pick" information); *Sierra Club v. Angelle*, No. 19-13966, 2021 U.S. Dist. LEXIS 261428, at *6 (E.D. La. Mar. 4, 2021) (holding same).

## C. The Special Master Misinterpreted TPP Plaintiffs' Representations About Productions

The Special Master ruled that TPP Plaintiffs need not answer any of RFPs 11 through 16 because Plaintiffs had represented that they had produced all "relevant" documents. ECF No. 2469, SMO 82 at 11. Wholesalers object to that ruling because the Special Master incorrectly interpreted the TPP Plaintiffs' representation to the Court. SMO 82 states that TPP Plaintiffs represented that they had produced *all relevant evidence* related to these RFPs. In fact, the TPP Plaintiffs instead repeatedly said they had produced or would produce merely "*all evidence on which they intend to rely*", including in response to RFPs 11-16. For example, in TPP Plaintiffs' June 27, 2023, letter brief, they represented that, with respect to the "Elements of UE Cause of Action" Topic RFPs 11-16:

> [MSP and MADA] have produced all of the information *on which they intend to rely* to prove the liability and damages aspects of their unjust enrichment claims against Wholesalers. Lest there was any doubt, MSP and MADA

> agreed to produce other documents, if any, *on which they*
> *may rely* to prove their unjust enrichment claims.

ECF No. 2443, June 27, 2023 Letter Brief from Adam Slater to Special Master Vanaskie at 15 (emphasis added); *see also* ECF No. 2426-2, Ex. B to June 13, 2023, Letter Brief from Wholesalers to Special Master Vanaskie (indicating in tracked changes to RFPs 11-16 that Plaintiffs would agree to produce only relevant information on which they intend to rely); *see generally* ECF No. 2451, July 6, 2023, Hrg. Tr. at 20:24-23:25.

As demonstrated *supra*, the requested evidence is relevant. The Special Master's mistake in assuming that the TPP Plaintiffs have produced all relevant information—when they never made that representation—resulted in the Order that the TPP Plaintiffs need not respond to further discovery. Because that ruling was in error, Wholesalers' objection should be sustained and the TPP Plaintiffs ordered to fully respond to RFPs 11-16.

### D.   SMO 82 Fails to Order Compliance with Fed. R. Civ. P. 34(b)(2)(C) and 34(b)(2)(E)(1).

Moreover, under the Federal Rules of Civil Procedure 34(b)(2)(C), effective December 1, 2015, subsection (b)(2)(C) was amended to require that "an objection to a . . . request must state whether anything is being withheld on the basis of the objection." Advisory Committee Notes, 2015 Amendments. The amendment to the rule created a mechanism for the requesting party to receive notice of "the fact that

17

documents have been withheld and thereby facilitate an informed discussion of the objection." *Id*. Yet, the TPP Plaintiffs did not, with their objections, reveal whether they are either withholding responsive documents or instead have none.[9] Throughout their letter brief and the hearing on the issue, Wholesalers repeatedly requested that the TPP Plaintiffs answer—or that the Court make them answer—whether they possess relevant, responsive documents. *See Microsoft Corp. v. Softicle.com*, No. 2:16-CV-02762-MCA-SCM, 2017 U.S. Dist. LEXIS 163453, at *20 (D.N.J. Oct. 2, 2017) (citations omitted) (when there are no documents responsive to an RFP, a responder "must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information"). In fact, SMO 82 notes, "Wholesalers speculate that Plaintiffs have no documents to support the [UE] claim, and should be compelled to admit as much." ECF No. 2469, SMO at 11. Given the Special Master's error about whether TPP Plaintiffs have produced all documents

---

[9] Courts have taken seriously the failure to follow subsection (b)(2)(C). *See, e.g.*, *Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, 2021 U.S. Dist. LEXIS 64382, at *7 (E.D. Pa. Apr. 1, 2021) (granting motion to compel discovery responses for failure to state whether the responding party had withheld any documents); *Chow v. SentosaCare, LLC*, No. 19-cv-3541-FB-SJB, 2020 WL 559704, at *3 (E.D.N.Y. Jan. 23, 2020) (threatening sanctions); *Bally v. First Nat'l Bank Omaha*, Civ No. 17-10632, 2018 WL 1558861, at *1 (E.D. Mich. Jan. 17, 2018) (compelling production of withheld documents for failure to disclose); *Polycarpe v. Seterus, Inc.*, No. 6:16-cv-1606-Orl-37TBS, 2017 WL 2257571, at *4 (M.D. Fla. May 23, 2017) (overruling objections); *Watkins v. Trans Union, LLC*, 2:14-cv-00135-WTJ-MJD, 2018 WL 3008639, at *2 (S.D. Ind. June 15, 2018) (overruling objections).

*on which they intend to rely* versus all *relevant* documents, it is understandable that the Special Master did not order the TPP Plaintiffs to reveal whether they are withholding responsive documents or instead simply have none. But TPP Plaintiffs have not complied with 34(b)(2)(C) and New Jersey precedent requiring an admission that no responsive documents are being withheld, leaving Wholesalers knowing at best only that the TPP Plaintiffs have produced everything they intend to rely on—meaning, everything favorable to their case.

Similarly, the Federal Rules dictate that responding parties are required to identify the Bates numbers of relevant and responsive documents produced previously. *See* Fed. R. Civ. P. 34(b)(2)(E)(1). Plaintiffs do not even provide this information.[10] And the Special Master articulated no reason why the TPP Plaintiffs may be exempt from this obligation. *See* ECF No. 2469, SMO at 11.

TPP Plaintiffs do not demonstrate any cause for the special treatment and deviation from the obligations of the Federal Rules of Civil Procedure that SMO 82 improperly allows them. Therefore, the Court should sustain the Wholesalers' objections and order that Plaintiffs must fully respond to RFPs 11-16, and under Federal Rules 34(b)(2)(C) and 34(b)(2)(E)(1) and New Jersey precedent must produce all relevant requested evidence, state where they have no responsive,

---

[10] Plaintiffs have demanded that practice from Wholesalers, and Wholesalers have complied with that process in their previous written discovery responses to Plaintiffs.

relevant evidence, and state the Bates numbers of responsive documents produced with regard to all requests.

## IV.   Objection to SMO 82 Section II.E. Ruling Regarding Damages to TPP Class Representatives Topic (RFPs 17-21)

For these same reasons, Wholesalers object to SMO 82, Section II.E,[11] regarding RFPs 17-21, addressing damages to the TPP Plaintiff Class Representatives. The Special Master ruled that the TPP Plaintiffs need not respond to these RFPs on the grounds that the TPP Plaintiffs (1) purportedly represented that they have already produced all relevant documents; and (2) are not required to state that responsive documents are being withheld or no responsive documents exist, or to provide the Bates number references to the allegedly produced documents. The RFPs seek:

RFP 17:     **type of damages** sought;
RFP 18:     documents related to **damages claimed**;
RFP 19:     **specific Wholesaler** from whom damage for Claim is sought;
RFP 20:     **methodology used to calculate** damage; and
RFP 21:     any **direct expense** that would not have been incurred regardless of drug covered.

Damage and harm-related discovery is fundamental, routinely ordered in relevant jurisdictions, and should be so ordered here. *See, e.g., Fox v. Cheminova,*

---

[11] To clarify, SMO 82 has two Section II.E.'s, the first being "Damages to TPP Class Representatives (Requests 17-21)", and the second being "The Value/Benefit of the VCDs to the TPPs (Requests 22-27)." This section only addresses the first Section II.E. regarding Damages to TPP Class Representatives.

*Inc.*, No. CV 00-5145 (TCP) (ETB), 2006 U.S. Dist. LEXIS 11463, at *25-27 (E.D.N.Y. Mar. 1, 2006); *Rawnsley v. Superior Court*, 183 Cal. App. 3d 86, 91, 227 Cal. Rptr. 806, 808-09 (1986); *Johnston v. Brumlow*, Nos. S-14275, 14306, 2012 Alas. LEXIS 115, at *15 (Aug. 29, 2012).

As discussed above with respect to RFPs 11-16, the Special Master again incorrectly believed that the TPP Plaintiffs had produced all relevant responsive documents, when instead the TPP Plaintiffs stated they have produced or would produce only documents *on which they intend to rely*. Once again, with respect to the specific RFPs 17-21, TPP Plaintiffs specifically "offered to produce other documents, if any, *they may rely on at trial*." ECF No. 2443, June 27, 2023, Letter Brief from Adam Slater to Special Master Vanaskie, at 16 (emphasis added). Likewise, TPP Plaintiffs, in their tracked proposed changes to RFPs 17-21, specifically limit their responses to this improper "rely on at trial" standard. ECF No. 2426-2, Ex. B to June 13, 2023, Letter Brief from Wholesalers to Special Master Vanaskie.

The Special Master was also incorrect that the Wholesalers did not contest the TPP Plaintiffs' assertion that they had produced all *relevant* information. To the contrary, in both their Letter Brief and Reply on this issue, Wholesalers informed the Court that the TPP Plaintiffs had improperly offered to produce only the documents *on which they intend to rely*, not the *relevant* documents Wholesalers

21

sought. ECF No. 2426, June 13, 2023, Letter Brief from Wholesalers to Special Master Vanaskie; ECF No. 2445, June 30, 2023, Wholesaler Reply. Similarly, at the hearing on the issue, Wholesalers' counsel told the Court several times that the TPP Plaintiffs had agreed to produce the materials on which they intend to rely at trial, *not all relevant documents*. ECF No. 2451, July 6, 2023, Hrg. Tr. at 8:14-9:7, 11:25-12:5, 20:20-21:3. And TPP Plaintiffs did not dispute at the hearing that all they had produced or would produce are documents on which *they intend to rely. See generally* ECF No. 2451, July 6, 2023, Hrg. Tr.

TPP Plaintiffs also declined to specify as part of their objections whether they were withholding any responsive documents or whether none existed. FRCP 34(b)(2)(C). As explained above, Wholesalers repeatedly sought an order that TPP Plaintiffs must state whether they have responsive documents. ECF No. 2426, June 13, 2023, Letter Brief from Wholesalers to Special Master Vanaskie; ECF No. 2445, June 30, 2023, Wholesaler Reply; ECF No. 2382, May 19, 2023, Hrg. Tr. at 78:4-14; ECF No. 2451, July 6, 2023, Hrg. Tr. at 7:7-19. TPP Plaintiffs also declined to cite the relevant Bates numbers regarding documents that have been produced. *See* Fed. R. Civ. P. 34(b)(2)(E)(1).

Because the Special Master erred in finding that the TPP Plaintiffs have produced *all relevant documents* responsive to these RFPs, the Court should sustain the Wholesalers' objection and order that the TPP Plaintiffs fully respond to RFPs

22

17-21, if there are no responsive documents so state, and provide the applicable Bates numbers for previously-produced responsive documents.

## V.   Objection to SMO 82 [Second] Section II.E and II.F. Ruling Regarding Value Received by TPPs and Profits Earned by TPPs (RFPs 22-28)

Wholesalers object to the Special Master's denial of Wholesalers' RFPs 22-28 seeking documents related to (1) the value of the VCDs to the TPPs (SMO 82 [second] Section E); and (2) the profits earned by the TPPs from covering the VCDs (SMO 82 Section F). ECF No. 2469 at 13-15. Evidence of the value that a plaintiff receives relative to the conduct alleged to constitute UE is critical to evaluating (1) whether the plaintiff can prove the basic prima facie elements of UE; and (2) the proper measure of damages. SMO 82 overlooks the basic elements of UE and the case law discussing the relevance of the topics sought in Wholesalers' RFPs. Instead, SMO 82 relies on only one case from one of the relevant jurisdictions. This case is readily distinguishable because it focuses on discovery about damages (not liability) and addresses only the issue of profits (not value more broadly). Wholesalers ask the Court to modify SMO 82 and allow the discovery sought in RFPs 22 through 28.

### A.   The Value of the VCDs is Relevant and Discoverable With Respect to TPP Plaintiffs' UE Claim

First, as to the RFPs seeking documents related to the value that the TPPs received for the VCDs at issue (Nos. 22-27), SMO 82 does not address the case law cited by Wholesalers in their briefing, *see* Wholesalers' June 13, 2023 Letter to Court

at 3-4, 12, Dkt. 2426, citing *In re Gerber Probiotic Sales Practices Pracs. Litig.*, 306 F.R.D. 527, 529 (D.N.J. 2015); *Bauer v. Pourciau*, No. CV 18-5611-WBV-MBN, 2020 WL 5542863 (E.D. La. Sept. 16, 2020); *Dryer v. Nat'l Football League*, No. 09-CV-2182 (PAM/XXX), 2011 WL 13136546 (D. Minn. Jan. 5, 2011), and cites no contrary legal authority showing that the value of the VCDs to the TPPs is irrelevant.[12]

As the Wholesalers' briefing explained, the value of the VCDs to the TPPs is relevant to the essential elements of the TPPs' UE claim. "To determine whether a defendant in an unjust enrichment claim enjoyed an appreciation of the benefits which were conferred ... *the issue is whether the value of the benefit conferred exceeds the value of the consideration he paid for the benefits*." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. CIV. A. 03-4558 (GEB), 2010 WL 2813788, at *44 (D.N.J. July 9, 2010), *amended*, No. CIV.A. 03-4558 (GEB), 2011 WL 601279 (D.N.J. Feb. 16, 2011) (quotations omitted) (emphasis added). Thus, to

---

[12] SMO 82 premises the determination that value of the VCDs to the TPPs is irrelevant to the UE equities between the parties in these circumstances on the Court's statement in its motion to dismiss rulings regarding contractual warranty claims that the VCDs are economically worthless. ECF No. 2469 at 13 (citing Jan. 22, 2021, Opinion, ECF No. 775 at 20). In addition to the cited language being inapposite, SMO 82 ignores that the Court, in its ruling on class certification and related motions to exclude expert testimony, explicitly found that at the merits stage (where plaintiffs' allegations are not given the same presumption of accuracy as at the motion to dismiss stage), whether the VCDs are economically worthless is a question reserved for the factfinder. ECF No. 2261 at 22-23, 85-89.

determine whether Wholesalers' retention of profits on the VCDs was "unjust," the factfinder must consider whether the value of the benefit TPPs conferred upon Wholesalers—i.e., Wholesalers' profits—exceeded the value of the VCDs to the TPPs. To evaluate this question requires evidence of value to the TPPs, which the RFPs at issue seek.

As explained in jurisdictions whose law will be applied to the certified UE claims, "[t]he elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits *under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.* The application of the doctrine depends on the particular factual circumstances of the case at issue." *See, e.g.*, *Durst v. Milroy Gen. Contracting, Inc.*, 2012 PA Super 179, 52 A.3d 357, 360 (2012) (citation omitted) (emphasis added); *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288, 151 A.3d 545, 557 (2016) ("To prove a claim for unjust enrichment, a party must demonstrate that the opposing party 'received a benefit and that retention of that benefit without payment would be unjust.'") (internal citations omitted). As an equitable remedy, UE requires analyzing the extent of unjustness of any "enrichment," which will vary depending on the specific circumstances of each claim. Because a plaintiff asserting a UE claim is entitled only to the portion of profits that would be inequitable to retain in light of all the

25

circumstances, the conduct of the defendant from whom the plaintiff seeks to recover is not the only consideration. *See, e.g.*, *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F.Supp.3d 194, 232 (D.D.C. 2019) (UE requires "a fact-intensive inquiry that focuses on the totality of the circumstances, *not just defendants' conduct*.") (emphasis added).

Case law from relevant jurisdictions confirms that the value of the VCDs to the TPPS is also relevant to the appropriate measure of UE damages. *Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2021 WL 2426126, at *6 (W.D. Mo. May 13, 2021) ("[t]he measure of damages" for UE "*requires consideration of the fact that the consumers … received some value from their purchase*.") (emphasis added); *see also Off. Stanford Invs. Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 3:11-CV-0303-N, 2015 WL 13739835, at *13 (N.D. Tex. July 22, 2015) (denying plaintiff's motion for summary judgment because "a fact question remains as to whether Stanford received some value in exchange for the transfers, and thus whether Le Bonheur is entitled to a corresponding reduction in [UE] damages.").

## B.   The Profits TPP Plaintiffs Earned By Covering VCDs is Relevant and Discoverable

As to the specific issue of the profits that the TPPs received from covering the VCDs (RFP 28), SMO 82 relies on a single inapposite case from just one of the many jurisdictions at issue to conclude that the TPPs' profits are irrelevant and thus not appropriate for discovery. In *Cohan v. Minicozzi*, an attorney sued his former

client demanding payment for legal services rendered. No. NNHCV156052856, 2016 WL 5798900 (Conn. Super. Ct. Sept. 2, 2016). There, unlike in this case, liability for unjust enrichment was not at issue. Instead, the only dispute was the amount of damages—the measure of exactly how much benefit was conferred as a result of the legal services for which the defendant refused to pay. *Id.* In *dicta*, the court said that "plaintiff's recovery for unjust enrichment is based, not on plaintiff's loss, but defendant's gain." *Id.* at *3. The court noted it was "impossible to quantify, in dollars, the benefit conferred by plaintiff" on the defendant through the legal work, such that the court could rely *only* on the measure of contractual damages. *Id.* Because the attorney's work gave rise to the favorable legal outcome, the court posited that "the best measure of the benefit" to the defendant was the "reasonable value" of the "services giving rise to that result." *Id.*

The *Cohan* court had no reason to evaluate the particular circumstances of the parties' conduct. Nor was there any argument made, or discussion by the court, about the benefits that the attorney may have enjoyed from the favorable legal outcome beyond payment for his services. The court was interested only in determining an appropriate amount of damages. The questions of whether it was "unjust" for the defendant to not pay for the services, and whether the specific circumstances affected that determination of unjustness, were not raised and not at issue. *Cohan* is inapplicable for multiple reasons: (1) it does not address whether the benefit to the

plaintiff is relevant to *liability* under a UE claim; (2) it relates solely to profits (one measure of value), not value more broadly; (3) it is *dicta* in only one of the relevant jurisdictions; and (4) it does not provide contrary authority to the law of the multiple relevant jurisdictions cited by Wholesalers.

By contrast, in analogous cases in which a plaintiff seeks disgorgement of profits from a defendant, multiple other courts have found that *if the plaintiff also profited or received value from the defendant's alleged misconduct, such profits or value are discoverable.* For example, in *Dryer v. Nat'l Football League*, NFL players sued the NFL for unjustly profiting off their publicity rights. 2011 WL 13136546, at *1. The NFL argued that "to the extent Plaintiffs have profited commercially, the NFL is entitled to discovery regarding the players' publicity rights." *Id*. The court agreed and granted the NFL's requested discovery: "[b]ased on the allegations in the Amended Complaint regarding the use of Plaintiffs' identities and claims of unjust enrichment, and Defendant's asserted defenses … the Court finds that *to the extent that Plaintiffs have used their identity rights commercially … such documents are relevant*" and "[t]o the extent that documents *reflect the value of those identity rights, such documents are likewise relevant*." *Id*. at *2.

Similarly, in *Bauer v. Pourciau*, the plaintiff "contend[ed] that the Defendants are unjustly enriched in the amount of their profits" from appropriation of the

plaintiff's intellectual property rights. 2020 WL 5542863, at *2. The court rejected the plaintiff's argument that "he need not produce documents related to the value of [his] intellectual property" because the value "is not related solely to the damages of an unjust enrichment claim, but rather *is an essential element of the claim*." *Id.* (emphasis added).

Moreover, as argued in their briefing and at oral argument on RFP 28, evidence of TPP profits earned on covering the VCDs at issue is also relevant to Wholesalers' unclean hands defense. As generally described, the unclean hands defense applies "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n. 12 (3d Cir. 1999). Wholesalers allege that they are no different from the TPPs, as both groups transferred VCDs without knowing that they were contaminated—thus if Wholesalers are liable for bad conduct then so, too, are the TPPs—or neither are. SMO 82 attempts to distinguish the positions of the parties, but that decision is up to the factfinder, and the evidence of TPP profits is thus relevant and discoverable.

If TPPs received value in relation to the VCDs at issue, or if they directly profited from their coverage of the VCDs, those benefits are relevant to the essential elements of the TPPs' UE claim, the TPPs' UE damages, and Wholesalers' unclean

29

hands defense. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Callahan*, 265 F.Supp.2d 440, 444 (D. Vt. 2003).

## CONCLUSION

For the reasons discussed above, Wholesalers respectfully object to the Special Master's findings in SMO 82 and ask the Court to modify SMO 82 to require TPP Plaintiffs to properly respond to RFPs 7 through 28.

Dated: September 1, 2023                     Respectfully submitted,


/s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
*Liaison Counsel for Wholesalers*

Jeffrey D. Geoppinger, *Liaison Counsel for Wholesalers*
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

**Counsel for AmerisourceBergen Corp.**

Andrew D. Kaplan
CROWELL & MORING LLP
1000 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel.: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com

**Counsel for Cardinal Health Inc.**

30

D'Lesli M. Davis
NORTON ROSE FULBRIGHT US
LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel.: (214) 855-8221
Fax: (214) 855-8200
Email:
dlesli.davis@nortonrosefulbright.com

**Counsel for McKesson Corporation**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 1, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to all CM/ECF participants in this matter.

*/s/ Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger

31