**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

|  |  |
|---|---|
| IN RE:  VALSARTAN PRODUCTS | CIVIL ACTION NUMBER: |
| LIABILITY LITIGATION | 19-md-02875 |
|  | DISCOVERY CONFERENCE VIA |
| _____ | ZOOM |

          Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
          Camden, New Jersey  08101
          September 7, 2023
          Commencing at 2:03 p.m.

**B E F O R E:**          THE HONORABLE THOMAS I. VANASKIE (RET.)
                         SPECIAL MASTER

**A P P E A R A N C E S:**

          KANNER & WHITELEY, LLC
          BY:  DAVID J. STANOCH, ESQUIRE
          701 Camp Street
          New Orleans, Louisiana  70130
          For the Plaintiffs


          NIGH GOLDENBERG RASO & VAUGHN
          BY:  MARLENE J. GOLDENBERG, ESQUIRE
          60 South 6th Street, Suite 2800
          Minneapolis, Minnesota 55402
          For the Plaintiffs


               Ann Marie Mitchell, Official Court Reporter
                 AnnMarie_Mitchell@dnj.uscourts.gov
                         (856) 576-7018

     Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

1    **A P P E A R A N C E S (Continued):**

2

3       FARR, FARR, EMERICH, HACKETT, CARR & HOLMES
        BY:  GEORGE T. WILLIAMSON, ESQUIRE

4       99 Nesbit Street
        Punta Gorda, Florida 33950

5       For the Plaintiffs

6       BARTON and BURROWS, LLC
        BY:  STACY A. BURROWS, ESQUIRE

7       5201 Johnson Drive
        Suite 110

8       Mission, Kansas 66205
        For the Plaintiffs

9

10      ULMER & BERNE LLP
        BY:  JEFFREY D. GEOPPINGER, ESQUIRE

11      600 Vine Street, Suite 2800
        Cincinnati, Ohio 445202

12      For the Wholesaler Defendants and AmerisourceBergen

13   **ALSO PRESENT:**

14          Larry MacStravic, Courtroom Deputy

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held via Zoom before The Honorable
 2    SPECIAL MASTER THOMAS I. VANASKIE at 2:03 p.m.)
 3              SPECIAL MASTER VANASKIE:  Good afternoon, everybody.
 4              RESPONSE:  Good afternoon, Your Honor.
 5              SPECIAL MASTER VANASKIE:  Are we ready to get
 6    started?
 7              MR. STANOCH:  From plaintiffs' perspective, I think
 8    so, Judge.
 9              And before we start, I'll just add -- this is David
10    Stanoch, obviously -- I apologize in advance, Your Honor, I
11    have an oven repair that's happening right now in my home.
12    And if I have to step away to make sure we don't blow up here,
13    I may do so, so I apologize in advance.
14              SPECIAL MASTER VANASKIE:  Yes, step away.
15              MR. STANOCH:  Thank you.
16              SPECIAL MASTER VANASKIE:  All right.  We will start.
17              You know the protocol:  Please mute your mics unless
18    you're speaking, and identify yourself for Ann Marie, our
19    court reporter, so we get everybody correctly identified on
20    the record.
21              And we're ready to get started.
22              I think there are just two issues to address today,
23    but I wasn't certain of that, so I thought I'd ask counsel,
24    what are the issues you want to discuss today?
25              MR. GEOPPINGER:  Your Honor, Jeff Geoppinger from the
```

*United States District Court*

1   wholesalers.  My issue is I thought we had this conference on

2   August 23rd, with all due respect, Your Honor.  We met, we

3   talked, we talked about the scheduling order.  You asked the

4   plaintiffs to submit -- you actually asked me to submit the

5   scheduling order that we had attached to our proposal.  You

6   asked the plaintiffs to submit competing dates for the order.

7   And the plaintiffs ignored that ruling and submitted a

8   counterproposal.  That was not what was asked for.

9       The issues about fact sheets and partnering with

10  defendants, including pharmacies who haven't even been sued by

11  the third-party plaintiffs, was discussed.  The order -- I

12  think the words you used were "we need an order that swings

13  both ways," and that is what we have prepared.

14      The plaintiffs have taken this opportunity to

15  completely revise that and submit it as a counterproposal.

16  They include very few dates that are applicable to them.  They

17  in fact remove a number of things that were applicable to them

18  in the order that I sent to you for your instruction and that

19  was talked about with the plaintiffs before and that was

20  attached to our initial proposal and was discussed on 8/23.

21      So, Your Honor, from the wholesalers' perspective,

22  the order and the text of it I thought was a done deal and we

23  were just talking about dates.

24      The plaintiffs have come up with a new proposal, a

25  proposal that we don't agree with, in large measure because,

*United States District Court*

1   just candidly, to the surprise of no one, it limits their

2   obligations.  First and foremost, they've just removed the

3   whole part about doing any custodial discovery.  They've

4   included the stuff that they argued before about coordinating

5   with other defendants.  As we said, we'd be happy to

6   coordinate where it's applicable and where we're able, but we

7   need to be able to -- the wholesalers have individual issues,

8   as the Court well knows, that we want to take discovery on.

9        The fact sheet situation, if there is a fact sheet,

10  that's fine; but this Court has allowed other requests for

11  production outside of the fact sheet context, both from

12  defendants to third-party plaintiff -- third-party payors and

13  from the plaintiffs to the defendants.

14       So, you know, we talked about this, and I think the

15  order that we came up with originally, the order that you

16  asked me to send to you, that's the order.  And why -- I

17  understand the plaintiffs want to discuss dates, but that's

18  not what's been submitted.

19       And candidly, Your Honor, I think we should just

20  enter that order.  And since they haven't asked for any dates,

21  we'll just include the dates that were already in.  I would

22  request the Court to do that.

23       SPECIAL MASTER VANASKIE:  Thank you, Mr. Geoppinger.

24       Are you addressing this, Mr. Stanoch?

25       MR. STANOCH:  Yes, Your Honor.  This is David

1   Stanoch.  I'll address it for plaintiffs.  And for more

2   granular issues that she handled, Ms. Burrows may join in as

3   well.

4          Suffice it to say, I disagree with Mr. Geoppinger's

5   characterization of what happened before Your Honor.  We asked

6   Your Honor if we can submit a proposed schedule ourselves.

7   Your Honor allowed us to do that.  And we did.  So there's

8   nothing underhanded as he implies happening here at all.

9          In fact, Your Honor, we're the ones who asked for

10  this conference, because there was a number of things in their

11  proposed schedule which didn't come up at the last hearing and

12  that -- because we didn't have both sides' competing proposals

13  at that time.  And we think it's really important for Your

14  Honor to address those before entering any order.

15         And our proposed order has dates.  We took everything

16  you said, Your Honor, to heart.  And we have dates, and we're

17  allowing two-way discovery.  And we're not saying freeze and

18  pause everything for plaintiffs.  We have dates.  It's just

19  we're keying them off different ways.

20         There's three overarching issues, Judge, we want to

21  discuss today.

22         Number one is wholesalers' proposal after five years

23  in this case is overturning and disrupting the fact sheet

24  process that a lot of us, including myself, spent weeks

25  hammering out with Magistrate Judge Schneider.  We're not

1   saying, wholesalers, you can't serve extra discovery.  We have

2   dates in our proposal for that.  All we're saying is the way

3   it has worked so far -- let me back up.  I'll address the

4   three issues and then get into each one, Judge.

5          Number two, after the fact that the fact sheet and

6   the process that's in place already is being ignored by

7   wholesalers, the second issue we have is that they're

8   inserting things into their draft order, Judge, which multiple

9   jurists in this case have repeatedly said neither side gets to

10  do.

11         They throw in at the end of their list -- their

12  schedule, Judge, that they and only they get to serve RFAs and

13  interrogatories.  Judge, it's been briefed numerous times that

14  Judge Kugler and Magistrate Judge Schneider have said many

15  times, no interrogatories.

16         I would have loved to have served interrogatories and

17  RFAs on wholesalers and manufacturers and retailers.  And we

18  couldn't, because the Court -- the prior jurists and other

19  jurists said that the fact sheet is the vehicle, primary

20  vehicle for discovery.

21         So right off the bat they've tried -- if there's

22  anyone trying to pull a fast one, as Mr. Geoppinger is

23  suggesting, which I don't appreciate, I'd suggest it's not us.

24         And third, Your Honor, is that the wholesalers in

25  this schedule of theirs is attempting to do an end run around

1    prior orders of the Court, Judge Kugler and yourself, as

2    recently as Special Master Order 82 from a few days ago, by

3    reinserting into this, as they call it, losartan and

4    irbesartan schedule, putting in another bite at the apple that

5    they get valsartan discovery.  And you'll see repeatedly

6    through their schedule that they want certain discovery and

7    requests as to valsartan and search terms as to valsartan and

8    depositions as to valsartan.

9            We're past that.  We submitted 60 pages of briefing

10   to Your Honor on that.  Your Honor issued a 15-page written

11   opinion.  Right?

12           The fact that they're trying to put in all these

13   opportunities for them to get valsartan discovery, which they

14   didn't ask for in the last five years and we had to brief on a

15   period of two months and argue to Your Honor over the summer,

16   frankly, we think it's a waste of everyone's time and

17   resources.

18           Those are the three major issues, Your Honor:  The

19   fact sheet process and procedure, the interrogatories and

20   RFAs, and their attempt to sneak valsartan discovery back in.

21           Before I stop, Your Honor, if I may, I just want to

22   go back to the fact sheet so you understand what I'm saying

23   about it.

24           We're not saying that there should be nothing else

25   after the fact sheet, not at all.  But Your Honor may recall

*United States District Court*

 1    or may not that there is a lot of dates that waterfall off the

 2    fact sheet process.

 3         The plaintiffs answer one Court-approved plaintiff

 4    fact sheet.  The answer to that triggers the retailers'

 5    fact -- defense fact sheet responses.  The date the retailers

 6    serve triggers the wholesalers' obligations of their DFSs,

 7    which in turn triggers the manufacturers' obligations under

 8    the DFS.  That's why, with our schedule, we are only going to

 9    need -- we have to -- we cannot answer multiple fact sheets,

10    one for wholesalers, one for retailers.  I know Mr. Geoppinger

11    and his colleagues say, oh, we don't need to corral the

12    defendants.

13         I'm not saying you have to corral them, but the way

14    it works is we answer one document -- and the valsartan one

15    was a 94-page document.  We answer that, and then we key other

16    dates, what they want, the wholesalers, off of our answers to

17    that.

18         So, for example, the TPP plaintiffs would answer the

19    new losartan and irbesartan fact sheet.  Right?  And then X

20    days off of that, they would answer any supplemental document

21    requests, similar to those that were allowed and agreed upon

22    for valsartan.  Because what happened there, there's some

23    things, despite the parties' best efforts, that weren't

24    included in the fact sheet.  So Judge Kugler and Judge

25    Schneider said, okay, you can serve some additional document

1    requests for things that were missed by the fact sheet.

2          We're just saying we should follow that same

3    procedure.  Right now we don't know that we're going to have

4    to answer a fact sheet from wholesalers.  We haven't heard

5    from retailers or manufacturers what they're doing with the

6    fact sheet for losartan and irbesartan.  And in the midst of

7    all this, potentially one to three different fact sheet with

8    unknown implications for the defense fact sheets, they want to

9    start serving other RFPs on us.

10         And again, we're not saying they don't get to serve

11   other supplemental RFPs.  We heard you.  We're just saying

12   there's a lot of moving parts here.  There was a tremendous

13   amount of effort that was put in at the beginning of this

14   case, and we think that should be followed here instead of

15   coming up with a schedule, which if this was a new case, TPP

16   v. Mr. Geoppinger's client, sure, maybe this works.

17         But that's not where we are today, Judge.  We have a

18   five-year history in this case.  And it's not just TPPs -- two

19   TPPs who are answering this.  The fact sheet is answered by

20   dozens of other consumer and medical monitoring class reps and

21   all the personal injury reps.  That's all happening at the

22   same time.  So we think there has to be some consideration to

23   that.

24         SPECIAL MASTER VANASKIE:  All right.  Thank you,

25   Mr. Stanoch.

1           Mr. Geoppinger?

2           MR. HARKINS:  So, you know, let me put it in context.

3           We are right now answering RFPs served by the

4    plaintiffs as to losartan and irbesartan unconnected with the

5    fact sheet, completely separate.

6           The requests for production we included in the

7    schedule that I sent to you are to the TPP plaintiffs, not

8    consumers, not individuals, okay.  Just like the plaintiffs,

9    TPP plaintiffs are asking us and we are in the process of

10   answering right now.

11          There has been a history, it has not been tied to the

12   fact sheet all along, and the scheduling order that I prepared

13   or we prepared that we sent that you asked that we send, it's

14   a mirror image of what the plaintiffs are asking of us, a

15   mirror image.

16          For instance, Mr. Stanoch didn't mention it, but

17   there's a requirement for custodial discovery, custodial

18   discovery to us.  And yes, as a matter of fact, the only thing

19   in that proposal I sent you that has anything to do with

20   valsartan, by the way, is custodial discovery to us the

21   defendants, us the wholesaler defendants.  The custodial

22   discovery of plaintiffs is about losartan and irbesartan.

23          But my point, Your Honor, is they're mirror images.

24   It swings both ways.

25          We need a schedule that provides the wholesaler

1    defendants the same opportunity to take discovery from the

2    plaintiffs that the plaintiffs are getting to take from us.

3         And the plaintiffs have brought this case.  They

4    chose to sue us.  They have the burden of proof.  They should

5    be required to engage in the same level of discovery that the

6    wholesalers are.

7         And if they are going to send us things like -- if

8    they're going to go into court and say, Judge, let us serve

9    irbesartan and losartan requests for production right now like

10   they did in April and like Judge Kugler let them do in CMO 32,

11   then why shouldn't we have the same opportunity to do that?

12   And that's what our schedule provides for.  It provides for

13   those RFPs.  It provides for those -- for that custodial

14   discovery.

15        With respect to interrogatories and RFAs, candidly,

16   we would need those because we haven't been able to get

17   straight answers out of RFPs about documents that they don't

18   have, so we're just going to ask them if they have them or

19   not.  But if that's a problem for the Court and they want

20   to -- and we're limited at this point to RFPs, then that's

21   what we'll do.  And then we'll establish that we can't get the

22   information that we need from these TPPs about their lack of

23   dealings with us through an RFP and then perhaps the Court

24   will give us leave to serve proper interrogatories.

25        But the big point here, Your Honor, is the schedule

*United States District Court*

1  that we submitted after this last conference when all of this,

2  by the way, could have been discussed, all of this could have

3  been discussed, the schedule that we sent mirrors what they

4  ask of us, so we are asking to have the same opportunities.

5       SPECIAL MASTER VANASKIE:  You say it mirrors, but I

6  didn't see any requests for admissions from plaintiffs to the

7  wholesalers.

8       MR. GEOPPINGER:  That does not, Your Honor.  And as I

9  mentioned, that was on the issue of getting an answer -- a

10  straight answer on RFP about what they don't have.

11      But if the Court is not going to include that, then

12  fine, we'll operate without it.  I will reserve the right to

13  come back and ask the Court for the ability to do some of that

14  discovery when the RFPs, as they have been in valsartan, are

15  unable to get -- we're unable to get, candidly, the answer we

16  need about whether there's been any dealings or not and

17  whether the TPP plaintiffs could actually positively ever

18  identify any transaction that ever involved the wholesaler

19  that they were engaged in.  But we can -- we'll go through the

20  RFP process on that.

21      But with the exception of what you've identified,

22  Your Honor, it is a mirror image.  We're just asking for the

23  same thing that the plaintiffs get with respect to the

24  wholesalers.

25      And importantly, Your Honor, I mean, custodial

1    discovery, the plaintiffs just took it out.  And these are --

2    the TPPs, the third-party payors, are not individuals.  These

3    are insurance companies, big insurance companies,

4    sophisticated insurance companies.  They -- if the wholesalers

5    need to be doing custodial discovery, I think they do as well.

6    We'd like to ask some custodial discovery requests.

7              SPECIAL MASTER VANASKIE:  Let me hear from

8    Mr. Stanoch on that point.

9              MR. STANOCH:  Yes, Your Honor.

10             In terms of their proposed schedule seeking

11   valsartan, it says what it says.  Your Honor can see they

12   sprinkled valsartan in throughout it.

13             I hear that they're willing to not have anything

14   about RFAs and interrogatories.  I think that makes good

15   sense, given where everyone has been, the number of times.

16             And I can't stress enough, Your Honor, that this is

17   not a case in a vacuum.  We're simultaneously negotiating

18   right now losartan and irbesartan schedules with what, another

19   eight or nine manufacturers, a number of -- maybe even more, a

20   number of which were not original defendants either in this

21   litigation, another eight or nine retailers for

22   losartan/irbesartan discovery.  And there is a lot of

23   challenges on our end about some sort of three-way schedule

24   that we're going to have different tracks and it's not

25   combined.  And in fact, issues regarding losartan and

*United States District Court*

1    irbesartan discovery as I understand it with other defendants

2    will be on the agenda for next week's CMC before Your Honor

3    and Judge Kugler.

4            So, again, we're not trying to say they don't get

5    discovery.  We accommodate for discovery.  That was the same

6    discovery that was had and allowed for valsartan.

7            Mr. Geoppinger makes a point about the custodial

8    discovery of the TPP plaintiffs.  He's right, there was none,

9    because the 94-page fact sheet was decided to be the discovery

10   that would be done of the named TPP plaintiffs.  That's why

11   our schedule mirrors what was done before.  And no one up

12   until August 2023 ever said that they need additional

13   discovery beyond all the fact sheets and three sets of

14   discovery document requests they've served on MSP and MADA to

15   get it.  Right.

16           So that issue could have been briefed over the summer

17   in our prior arguments about custodial discovery.  They didn't

18   raise it, I didn't see it.

19           But to us, that's just one little minor issue on the

20   fringes of the fact that there's so many moving parts here,

21   Your Honor, we can't be -- we need clarity to know this is the

22   fact sheet we're answering, however big it is, and then what's

23   going to follow after that.  It's impossible.  We have, oh,

24   well, there's a wholesaler fact sheet now maybe that we answer

25   that on date X.  Then there's one on date Y for manufacturers

1   and one on date Z for retailers.  It's just untenable.  And

2   it's not what happened before, and the work was put in to

3   smooth that over, and that's why we're just trying to key the

4   dates off of these things.

5           And yes, the losartan and irbesartan discovery is

6   new.  Mr. Geoppinger is right.  Yes, because that's what Judge

7   Kugler's asked us to do in the spring, to start getting going

8   on this.  And so we have teams siloed on our side talking to

9   every distribution level of defendant trying to work on all

10  these things simultaneously.

11          So we're not trying to stymie Mr. Geoppinger and the

12  wholesalers, but I think it has to be appreciated that we have

13  tripartite obligations to deal with all of these parties and

14  to do it in a unified, cohesive way for the benefit of the

15  Court and the overall litigation.

16          SPECIAL MASTER VANASKIE:  All right.  I was hoping we

17  could avoid going item by item through the competing

18  proposals, you know.  I was happy when you said there were

19  three -- divide the matter into three issues, but I don't how

20  I'm going to avoid going through this item by item.

21          I'm looking at the competing proposals now.  And I

22  just want to get this -- get this resolved, make decisions and

23  get you an order so that this can no longer be an impediment

24  to discovery moving forward with respect to losartan and

25  irbesartan.

```
 1          So having said that, I think what I'm going to do
 2   is -- hopefully it will go quickly or we'll make progress and
 3   we can resolve things.  Based upon determinations I make, we
 4   can agree that certain other dates can be set.
 5          But I'd like to go through where there are
 6   differences between the proposals that were submitted to me to
 7   see if we can resolve them.  Or if we can't resolve them in an
 8   agreement, then I'll make decisions.  It's not rocket science
 9   here.  It's just setting deadlines and deciding the scope of
10   discovery.
11          So the first area of discrepancy I see deals with the
12   wholesalers' proposal.  It's the second item on the first
13   page, that wholesalers shall serve RFPs and Rule 30(b)(6)
14   notices to TPP class representatives and assignors.  There's a
15   date of August 4th that's long since passed.
16          So has that been taken care of?
17          MR. GEOPPINGER:  We served them.
18          SPECIAL MASTER VANASKIE:  Okay.  So they're out
19   there.
20          So what needs to be done on that, Mr. Geoppinger?
21          MR. GEOPPINGER:  I believe there's a date in our
22   proposal for the plaintiffs to meet and confer with us about
23   those and to work through those and see if we can have
24   agreement.  And if that doesn't work, then we make our
25   submissions to the Court on what we can't agree to.
```

1          I think that date was -- sorry, I'm looking at it

2     here.

3          Okay.  So we have plaintiffs serving a response to

4     those on September 27th.

5          And then we had deadline of 10/9, I believe, to --

6     for us to file anything with respect to any disputes we have

7     after we met and conferred.

8          SPECIAL MASTER VANASKIE:  Now, I do like having dates

9     certain.  I like that approach rather than keying off events

10    and running deadlines from those events.

11         So let me ask Mr. Stanoch, why not have your

12    responses due on the 27th of September with motions filed by

13    October 6th, if I have those dates right?

14         MR. STANOCH:  For the record, Your Honor, I will just

15    say that it's been the process in this case that parties don't

16    just serve discovery as they wish, that the parties provide

17    draft discovery and then they talk, and then disputes are

18    brought to the Court, Your Honor and Magistrate Judge

19    Schneider.  And then the final set is answered, not so much

20    serving objections.  But that's form over function.  But I did

21    want to note it, that we were trying to hew to what's been

22    done for years.

23         But the issue with that, Judge, is, so we're going to

24    be objecting and responding to what's supposed to be

25    supplemental document requests in addition to the fact sheet

*United States District Court*

1  before we have a finalized losartan and irbesartan fact sheet

2  under their schedule.  And that doesn't make any sense to us.

3  Right?  Because a lot of what's in the fact sheet, right, is

4  going to be responsive potentially to other requests.  So

5  that's why we say the supplemental requests should in fact be

6  served and handled supplementally to the fact sheets, because

7  if there's anything not incorporated by the fact sheet, that

8  was the idea behind them.  Otherwise, right now we're going to

9  have an argument in about a month on a set of RFPs, and I

10 don't even -- before we answer a fact sheet.  And, frankly, I

11 don't even know if we'll have a losartan and irbesartan fact

12 sheet answered.

13       So it's sort of -- in the rush to get us to answer

14 these RFPs, we're bypassing all of the work, all of the data,

15 all of the document requests, all of the written questions and

16 written answers we'll be providing in the fact sheets.  And

17 it's inverted.  You answer the fact --

18       SPECIAL MASTER VANASKIE:  What you're saying makes

19 sense to me, but what's the deadline for you to respond on the

20 fact sheet?  So what is the deadline for there to be agreement

21 about what the components of the fact sheet are?

22       MR. STANOCH:  I think that that's a key issue, Your

23 Honor, that we in our schedule had a deadline, which has since

24 passed, for wholesalers to propose amendments to the TPP

25 valsartan fact sheet -- for losartan/irbesartan.  Right?  On

*United States District Court*

1    the first page of ours, we said September 5th, give us what

2    you think the new losartan and irbesartan fact sheet for TPP

3    should look like.  I may be mistaken, I don't think we got

4    anything from them.  In fact, no defendant to my knowledge --

5    I could be wrong for our side, but to my knowledge, no

6    defendant had said, here's a redline of the valsartan fact

7    sheet for TPPs or any plaintiff, this -- this is what we think

8    you should add for losartan and irbesartan or change it.

9         We're just waiting for that.  And we're happy to

10   address it and do it quickly.  I mean, we said we'd have it --

11   you know, we'd start doing that in our schedule -- we said we

12   would get through that, you know, in the first couple weeks of

13   September we were hoping.  But their schedule doesn't even

14   have anything about their proposals to the fact sheet, I

15   think, when the fact sheet would be entered.  So that's why

16   we're so confused.

17        And I feel bad making this such a ball of yarn,

18   Judge, but that's why, you know, Mr. Geoppinger says, just

19   serve the RFPs and we'll argue it and then October 3rd Judge

20   will make a decision.

21        We don't even have the first basic document set or

22   any defendant's proposed edits to it for losartan and

23   irbesartan.  We're happy to hit the ground running right after

24   that is all figured out.  And we say, let's do it quickly.

25   Let's do it now, in September.  But there's nothing about the

```
 1   PFS in their schedule, and that's our fundamental problem.
 2            SPECIAL MASTER VANASKIE:  All right.  Let's hear from
 3   Mr. Geoppinger.
 4            Mr. Geoppinger --
 5            MR. GEOPPINGER:  I mean, I think we've talked about
 6   that quite a bit.  We talked about it on 8/23.  And there's
 7   nothing -- we're answering RFPs right now, the defendants
 8   right now, the wholesalers.  No fact sheet, we're answering
 9   the RFPs, just like the plaintiffs asked for and which was
10   inputted in CMO 32.
11            I don't understand why the plaintiffs insist that
12   they can't be held to the same standards that we are.  I just
13   don't understand it.
14            MR. STANOCH:  May I, Your Honor?
15            SPECIAL MASTER VANASKIE:  Yes, you may, Mr. Stanoch.
16            MR. STANOCH:  The requests that they're answering now
17   are the Court-ordered requests where we changed the word
18   "valsartan" to "losartan and irbesartan," more or less.  We're
19   not trying to hold anyone to different standards.  And
20   they're the -- and that's why Magistrate Judge Schneider also
21   let us get certain discovery from defendants sufficient to
22   show the data on the sales and which -- who had what drugs and
23   sold to whom, because that was what Magistrate Judge Schneider
24   said is core discovery.  He never said an email search of
25   assignor number 1's custodian number 2 is core discovery.
```

1   That's why we're moving on these other issues.  And that's

2   what Judge Kugler told us to do in the spring.

3         MR. GEOPPINGER:  Core discover for us, Your Honor, is

4   getting the TPP plaintiffs to tell us if they have any

5   information that ties any of the transactions that they paid

6   for to any of the wholesalers.  That's core discovery.

7         And by the way, again I'll mention, they sued us and

8   they have the burden of proof on that.  That's as core as it

9   gets.  We've been chasing that in valsartan.  Mr. Stanoch, as

10  you know, agreed to provide some of that to us.  We lost on

11  all the other requests.  I'm still waiting to get that

12  information.  But that's about as core as it gets I think in

13  terms of the case, and that's exactly what our RFPs ask for,

14  the very first one.

15        MR. STANOCH:  If it was so core, they could have

16  asked for it five years ago.  We argued this already, Judge.

17        I apologize.  I apologize.

18        MR. GEOPPINGER:  I'm asking for it with losartan and

19  irbesartan right now.

20        SPECIAL MASTER VANASKIE:  This shouldn't be this

21  difficult.  I'm having trouble finding -- trying to --

22        MR. GEOPPINGER:  Your Honor, it's because the

23  plaintiffs are insistent upon the fact sheet process.  We're

24  not opposed to the fact sheet process, but we have -- we have

25  been subjected to RFPs outside the fact sheet process.

```
1   Mr. Stanoch acknowledged this Court has required the
2   plaintiffs themselves, the TPP plaintiffs, to answer RFPs
3   outside of the fact sheet process.  So our schedule provides
4   for us answering their RFPs and them answering our RFPs.
5              SPECIAL MASTER VANASKIE:  What does your schedule,
6   Mr. Geoppinger, provide with respect to the fact sheets?
7              MR. HARKINS:  It doesn't provide anything with
8   respect to the fact sheets, Your Honor.  If there's going to
9   be a fact sheet negotiated, as Mr. Stanoch noted, they
10  negotiate that with the manufacturers, we'll participate in
11  that.
12             But the specific RFPs that the wholesalers need that
13  we're looking to get answered don't need -- we don't need to
14  wait on the fact sheet to have them begin answering them.
15  They didn't ask us -- we didn't ask them to wait on their fact
16  sheet to us.
17             And by the way, there is no fact sheet approved
18  current, so -- on losartan and irbesartan.
19             MR. STANOCH:  That's right.
20             MR. GEOPPINGER:  But the RFPs have been consistently
21  answered without any connection to the fact sheet on both
22  sides of the fence.
23             SPECIAL MASTER VANASKIE:  Mr. Stanoch.
24             MR. STANOCH:  I strongly disagree with that, Your
25  Honor.  We just heard Mr. Geoppinger say his schedule has
```

1   nothing at all with the plaintiff fact sheet.  I think I heard
2   him suggest that there's been no discussion amongst his
3   defendants and the other defendants about what may happen
4   there on the fact sheet.
5          People have not served RFPs willy-nilly in this case.
6   That's never happened in five years.  We tried to do that,
7   plaintiffs, in the beginning.  They were stricken.  They were
8   removed.  And we were told, you're going to go through the
9   fact sheet and then you have draft requests that you propose
10  to the defendants, and then you talk about it, and you bring
11  those draft disagreements to the magistrate judge.
12         I don't understand why we're firing from the hip to
13  let wholesalers serve a set of RFPs, which we're saying they
14  could do -- they'll be able to do, but why is this cart going
15  before the plaintiff fact sheet horse?  I haven't heard an
16  answer for that, other than them to say, oh, it's information
17  we want.  Sure, we're going to give you the data with the fact
18  sheet.  That's what happened in valsartan.  All the data.  And
19  then you said you want more.
20         We'll give you -- the other data we've agreed in
21  three separate sets of requests after the fact sheets in
22  valsartan to all the data the defendants wanted as recently as
23  two weeks ago.
24         SPECIAL MASTER VANASKIE:  All right.  Well, it seems
25  to me that a process had been established in this matter to

1    use these fact sheets as opposed to standard discovery

2    requests to get through initial discovery, and it seems to me

3    that that process should again be followed here.

4         Supplemental requests for production of documents

5    certainly can be allowed, will be allowed.  But let's -- I

6    think we should stick with what had worked in the past, and

7    that was the fact sheet process.  And then we go from there.

8    There will not be interrogatories.  There will not be requests

9    for admissions.  Things will be handled through the fact sheet

10   process.

11        Now, the problem I'm confronting is that you haven't

12   agreed on what constitutes the fact sheets, what has to be

13   provided now based upon these fact sheets.  And I'm struggling

14   to understand why that cannot be hammered out.  And then, as

15   you did before, if there are any disputes, you submit them for

16   resolution.

17        I don't see what's unfair about that or why that

18   handicaps the wholesalers, but maybe, Mr. Geoppinger, you can

19   persuade me otherwise.

20        MR. GEOPPINGER:  Well, the fact sheet, Your Honor,

21   process is, you know, as I've said, is separate and apart from

22   us serving our own requests for production, just like the

23   plaintiffs have kept it separate and apart from them serving

24   us.  I think that that swings both ways, like you said.

25        And, sure, there can be a fact sheet.  That's going

1    to be a fact sheet that has to be negotiated between -- you

2    know, I'm sure the plaintiffs are going to want the

3    manufacturers and the wholesalers and everybody to get

4    together and put all their requests in there and all these

5    questions in there and serve them on the TPP plaintiffs and

6    with whatever -- you know, I guess there will be requests for

7    production attached to them.  And they'll want that.

8            As they told you -- I mean, they said it last time on

9    August 23rd, they say it again here in their proposal, and

10   they acknowledge it, that's a process that the defendants are

11   going to have to get together and do and serve upon them.

12           Our position as wholesalers has been, fine, that will

13   happen, okay, but it doesn't mean that the wholesalers can't

14   serve requests for production on very -- issues very unique to

15   them, just like the plaintiffs have done to us.

16           And so I hear what you're saying, Your Honor, but I

17   don't think we should be prohibited from moving forward with

18   some requests for production on the TPP plaintiffs from the

19   wholesalers right now.  I just don't see that it needs to wait

20   on the fact sheet process.  And candidly, I'd be concerned

21   that I'm going to hear something about a waiver argument

22   later, because that's what I've heard a lot about lately.  And

23   that's what -- I'm trying to get out in front of it, Your

24   Honor.

25           And also I will mention -- and this is very

```
 1   important -- custodial discovery was not part of what happened
 2   before.  The plaintiffs -- as to the wholesalers either.
 3   There was no custodial discovery from us until very recently.
 4   Till CMO 32 there was nothing to the wholesalers.
 5          Well, we're in -- now there is.  And it has to do
 6   with losartan and irbesartan and in valsartan even.  And we
 7   are asking for custodial discovery as to the plaintiffs.  And
 8   Mr. Stanoch, as he mentioned, that never happened.
 9          So this fact sheet process, that doesn't even begin
10   to address that issue.
11          And we need -- we need an acknowledgement that
12   it's -- you know, if they're going to be able to take
13   custodial discovery from us, we think the scheduling order
14   should give us the opportunity to take custodial discovery
15   from insurance companies who sued us.
16          SPECIAL MASTER VANASKIE:  Why shouldn't that be the
17   case, Mr. Stanoch?
18          MR. STANOCH:  Your Honor, again, the fact sheet
19   issue, I think we're getting to where we need to be.  Again,
20   just -- we're not saying Mr. Geoppinger's clients can't serve
21   RFPs, we're just talking about the timing of it.  I think
22   everyone on this call understands what's going on with that.
23          On the custodial discovery issue, we're really
24   meshing some different discovery histories in this case.  And
25   I hate to belabor it, but years ago we sought custodial
```

1    discovery of both sets of downstream defendants.  We were told

2    no, don't do it yet, do it later, focus -- these are --

3    manufacturers first for custodians.  I'm paraphrasing, of

4    course.

5            And the defendants have put on the record how they

6    view this.  And they said, just focus on noncustodial

7    requests.  And the requests entered by Magistrate Judge

8    Schneider specifically said they're noncustodial, because

9    that's what he asked us to do.  And when we argued that to him

10   in the summer of 2020 when I argued it, I said, okay, we're

11   deferring our custodial discovery.  Right?

12           Waited until after class certification, CMO 32 comes

13   down.  We said, okay, these are the CMO 32 items, as Your

14   Honor will remember, for valsartan.

15           So once we start talking valsartan custodial

16   discovery of wholesalers, it arose that said, hey, Judge

17   Kugler also wants us to be talking about all losartan and

18   irbesartan discovery, so we started talking about all three at

19   once.

20           But I think it's important to remember, Judge, that

21   there was never some recognition or -- actually, there was

22   never even a request from wholesalers or anyone else for

23   additional custodial valsartan discovery of the TPPs.  They

24   got a little miffed that they had to do it.  And then we

25   briefed that, Your Honor.  And now they want to put reciprocal

1    discovery pressure on the TPPs.

2            So I'm not saying our position is no to it, but it's

3    sort of an end run around what happened in valsartan, where it

4    was never ordered or allowed, because the idea was the fact

5    sheet was going to allow for that, for all the questions you'd

6    ask and things of that nature.

7            No one, Mr. Geoppinger or anyone else, ever said we

8    want, you know, TPP custodians for five years on valsartan,

9    and now all of a sudden here we are in September 2023, they

10   not only want custodians for the TPP plaintiffs but they

11   actually want it for all three drugs, including valsartan.

12           So I would suggest that that issue, no waiver from

13   Mr. Geoppinger. He put it on the record. I'll say it right

14   now, I'm not going to argue it was a waiver of that. We can

15   hammer that out. But let's get -- let's get the fact sheet

16   and RFP schedule set. And then in the context of the RFPs, we

17   can figure out the custodial situation.

18           That's what I would say. I don't know if we need to

19   decide that right now. I think it's more important for

20   everyone to know where we're starting from so then we can know

21   where we're going.

22           THE COURT: All right. Mr. Stanoch, I appreciate

23   your arguments.

24           Mr. Geoppinger, why don't we proceed in that manner,

25   where you hammer out the fact sheet and you'll get your

1   discovery?  I know you feel it's unfair, but --

2            MR. GEOPPINGER:  Is -- I'm sorry.

3            SPECIAL MASTER VANASKIE:  No, go ahead.

4            MR. GEOPPINGER:  Well, you know, I hear what you're

5   saying, Your Honor.  And then I would propose that -- you

6   know, we can do this.  We've talked with Ms. Burrows.  And we

7   came up with dates, and we're doing things.  You know, we've

8   been doing things now.

9            And now the plaintiffs come in and say, we don't have

10  to do anything.  Let's have a fact sheet.  We'll negotiate

11  that.  And we'll have some RFPs, and maybe later we'll talk

12  about custodial discovery later after that.  But you didn't

13  ask about it five years ago, so we might argue my waiver

14  somewhere.  We've heard that before.

15           Here's what we should do, Your Honor.  If Your Honor

16  is going to require us to not be able to get any RFPs served

17  before a fact sheet, then I would propose that the discussions

18  we have where the wholesalers are going through all this

19  process now, which was my scheduling order that I submitted

20  that has dates for us to do things in it, I would suggest

21  that -- the Court hasn't entered that, that we all agree that

22  we're putting that to the side, and we're just going to go

23  back with your directive here about a fact sheet, and we'll

24  negotiate -- we'll kind of have to start from scratch and come

25  up with a proposal about how we should move through discovery

1   with respect to both the wholesalers and the plaintiffs in

2   this respect.

3          And it's going to involve -- a fact sheet process is

4   going to involve the other defendants.  There's no way around

5   that.  That has to -- I'm sure the plaintiffs wouldn't want it

6   to be.  They don't want three fact sheets.  Mr. Stanoch said

7   that very thing.  And I don't think we want to have to put

8   three fact sheets together.

9          But I think -- you know, one of my concerns now is

10  hearing the plaintiffs' arguments and the Court's inclination

11  now to not let us serve RFPs absent the fact sheet process

12  going forward, that the defendants shouldn't be in the

13  position where we're doing custodial discovery and the

14  plaintiffs come here and say, we'll talk about that in a

15  couple months.

16         I think we should remove the order -- there isn't an

17  order in place, actually, but the -- we were hoping to get

18  one, having agreed to a bunch of stuff, but that we should be

19  now put in a position where we're having to move forward with

20  all of this while we're wondering what the plaintiffs'

21  discovery is going to look like.

22         So I would suggest I guess at this point the

23  parties -- I guess the defendants will have to get together,

24  and I'll have to contact the manufacturers and make sure

25  everybody is on the same page.  And candidly, there's been a

```
 1   lot of -- I think there's been a lot of work done on the fact
 2   sheet actually already.  And we'll coordinate in that respect
 3   and move forward from there with respect to the plaintiffs.
 4   And with respect to the defendants, I think we have to --
 5   wholesaler defendants, I think we need to circle back with the
 6   plaintiffs and put that schedule together.
 7        I don't think the schedule we have right now that we
 8   previously agreed to on the understanding that they were going
 9   to basically be doing a mirrored schedule with us is really
10   tenable for us or candidly fair for us to be engaged in.
11        SPECIAL MASTER VANASKIE:  Well, it doesn't seem fair,
12   I agree with you on that.
13        MR. STANOCH:  May I, Your Honor?
14        SPECIAL MASTER VANASKIE:  Yes.
15        MR. STANOCH:  I think what I'm hearing is
16   Mr. Geoppinger saying the wholesalers should not have to do
17   losartan and irbesartan custodial discovery if we have to do a
18   fact sheet and there's sort of going to be some reciprocal
19   deadlines for plaintiffs to be determined.
20        I think I'm okay with that.  I mean, I would confer
21   on my side, but that doesn't strike me as patently
22   unreasonable.  I'd just say, you know, a couple things.
23        I'd say, number one, again, this is
24   losartan/irbesartan.  There's also the CMO 32 valsartan
25   discovery ordered months ago which has been part of the
```

1  discussion because it overlaps, but it's a separate track.

2  And that should continue still, regardless of what happens

3  with losartan/irbesartan, number one.

4          And number two, I'd want to think about in the

5  interim, while the parties negotiate the fact sheet, if

6  there's certain things reciprocally, such as data, both

7  wholesalers' data and TPPs' data, that the parties could

8  informally or otherwise exchange to help them get their hands

9  around things while the nitty-gritty of the fact sheets are

10 being changed.

11         And again, I haven't seen any proposal from any

12 defendant, and that might just be me, on what the fact sheet

13 for losartan/irbesartan should look like other than changing

14 the word "valsartan" to "losartan and irbesartan," which

15 hopefully it will be something that quick the parties can

16 agree to.

17         MR. GEOPPINGER:  Your Honor, if I might clarify, I'm

18 not suggesting we wouldn't do custodial discovery.  And by

19 that, I'm just saying, at the pace at which we had

20 contemplated it on a swings-both-ways scheduling order, I

21 think we need to go back and revisit that.

22         And it will be our position, I don't think this is

23 controversial at all, that to the extent, you know, we're

24 doing custodial discovery of valsartan, we should just do

25 losartan and irbesartan at the same time.  That's -- you know,

 1   e-discovery is an expense.  We certainly want to do all of

 2   that together.  We don't want to be in two tracks or having to

 3   run -- if we can have a set of search terms that covers all of

 4   that, we'd certainly want to do that as opposed to two

 5   separate search -- set of search terms run at different times

 6   and all that kind of stuff.

 7          So that's -- you know, it's not a substantive issue,

 8   that's just a timing issue with respect to where we are at and

 9   where we contemplated being at in a swings-both-ways

10   scheduling order as opposed to the let's get the fact sheet

11   done and go from there.

12          So I guess at this point, my -- my proposal would be

13   for the parties to -- and as I said, there will be others

14   involved, to get the fact sheet in place.  And us and

15   Ms. Burrows and Mr. Stanoch can go back and kind of start -- I

16   guess it won't be completely starting from scratch, but really

17   talk about how the schedule looks when it's, you know, for all

18   of us, not just for the wholesalers.

19          SPECIAL MASTER VANASKIE:  Right.

20          MR. STANOCH:  And, Your Honor, most of us will be

21   together next week too.  And it's only a few days, but

22   hopefully that will give time to coalesce ideas and thoughts

23   and views on both sides.  And maybe we can surprise ourselves

24   and even have some ideas proactively when we come in.

25          SPECIAL MASTER VANASKIE:  Well, I'd like to see you

1   hammer out the fact sheets, get that accomplished.

2         I'd like to get a report on that -- on the status of

3   that at our call next week, because you've been down this road

4   before, so I'm hoping that lessons learned will inform the

5   results here.

6         Certainly Mr. Geoppinger is not going to be precluded

7   from engaging in custodial discovery of the TPPs.  He's going

8   to get that.

9         But let's get through the fact sheets, let's get that

10  set up.  And then we can set up a schedule for the rest of the

11  matter, service of RFPs or draft RFPs, and what you can hammer

12  out in negotiations, submit to me whatever remains in dispute,

13  and that's all fine.  But we have to get over this hump right

14  now that -- and I understand why you're frustrated,

15  Mr. Geoppinger, because you are engaging in that discovery or

16  that production.  I'm not sure what to do about that.  We

17  could defer that or stay that until we get the fact sheet

18  process completed.

19        My understanding was that you get these fact sheets

20  and then you fill in the gaps with RFPs and maybe 30(b)(6)

21  depositions.  That seems to me the process we should stay

22  with.  Maybe things got off track a little bit with CMO 32.  I

23  don't know.  But let's try to get it back on track in terms of

24  this process of getting the fact sheets negotiated and

25  responded to, and then we'll fill in the gaps with other

1   discovery.

2         I don't want anybody to be -- I understand the

3   spectre of waiver, and I've made that decision a couple of

4   times now.  And I understand the -- I understand the problem

5   and the dilemma perhaps faced by the wholesalers.  And I don't

6   want to have anybody waive anything, but I do want to move

7   forward.  And I think we're not moving forward right now.

8         So if we can hammer out what the components of the

9   fact sheets will be, you know, I know for irbesartan and

10  losartan you're going to have to involve the other categories

11  of defendants and get them on board with this too so we can

12  move forward.

13        Now, if I'm misunderstanding something in that

14  respect, please let me know, but it seems to me that they all

15  should be at this table.

16        MR. STANOCH:  I think you're -- I have nothing to add

17  to that, Your Honor.  And we're certainly committed to move

18  promptly with any and all defendants to keep this going

19  quickly.  We're not looking, you know, to stall it.  We just

20  want to make sure it proceeds in an orderly, unified fashion,

21  the way we've been doing it for a while.  But we're committed

22  to working as quickly as we need to.

23        SPECIAL MASTER VANASKIE:  All right.  So is there

24  anything else, Mr. Geoppinger?

25        MR. GEOPPINGER:  No.  I'll report back to the other

1  defendants what's been discussed, and we'll try to get that

2  coordinated and move forward on that so all the

3  defendants are --

4          SPECIAL MASTER VANASKIE:  We'll get a report in our

5  call next week on where things stand.

6          MR. GEOPPINGER:  I believe we have a conference with

7  the Court in person next week.

8          SPECIAL MASTER VANASKIE:  Yeah, okay.

9          MR. STANOCH:  Yes.

10          SPECIAL MASTER VANASKIE:  With the conference.  I

11  didn't realize it's in person.  So I'll have to get on the

12  Turnpike.

13          MR. GEOPPINGER:  Yes.  We'll be there on Tuesday.

14          SPECIAL MASTER VANASKIE:  On Tuesday, okay.

15          MR. GEOPPINGER:  And I will do my best to get

16  everyone corralled.

17          I'll tell you, Your Honor, just historically

18  speaking, the fact sheets actually were -- that were done in

19  valsartan were done even before the wholesalers -- I think

20  very shortly before the wholesalers even got in the case.

21          SPECIAL MASTER VANASKIE:  Yes.

22          MR. GEOPPINGER:  So, you know, I wasn't the point

23  person on those back then, but I will communicate with all the

24  defendants, let them know what we discussed today, and we'll

25  make as much progress and report where we're at as soon as --

1  you know, on Tuesday, as soon as we can.

2          SPECIAL MASTER VANASKIE:  All right.

3          MR. GEOPPINGER:  And I think with respect to the

4  plaintiffs and our discovery, we have -- we already have a

5  meet and confer set up on Monday, so we can talk amongst

6  ourselves about what all that looks like and what it might

7  look like going forward.

8          But it's my understanding that the orders we

9  submitted, I sent previously, is not going to be entered by

10  the Court, so that we're sort of back to working on a schedule

11  for us as well, along with the fact sheet schedule.

12          SPECIAL MASTER VANASKIE:  Yes, you are.

13          I mean, there were items that were agreed to or were

14  consistent on the two proposals, so there is some

15  understanding.  So, for example, my notes indicate that

16  there's agreement that the wholesalers shall substantially

17  complete their document production for losartan, irbesartan

18  and valsartan custodial discovery by March 11th of 2024.

19  So --

20          MR. GEOPPINGER:  I think the plaintiffs' date was

21  agreed to as well, Your Honor, on that point.

22          SPECIAL MASTER VANASKIE:  Exactly, yeah.

23          MR. GEOPPINGER:  So we've got those two down.

24          SPECIAL MASTER VANASKIE:  And then you also have the

25  dates of March 25th, April 2nd, April 11th.  Those were all

1   agreed to as well, were the same.

2          MR. STANOCH:  Your Honor, we can talk about that.  We

3   have a call scheduled with Mr. Geoppinger and my team on

4   Monday.  We can work through that, and if there's dates.

5          SPECIAL MASTER VANASKIE:  Okay, okay.

6          MR. STANOCH:  And hopefully some of what -- I have no

7   problem saying this.  Some of what wholesalers want by way of

8   supplemental RFPs, maybe that can find its way into the

9   losartan and irbesartan fact sheet.  So I think we can work

10  through this, and we'll work through the dates.

11         And I'm going to make sure my oven doesn't blow up

12  right now, Judge, and Ms. Burrows is going to take over.

13         SPECIAL MASTER VANASKIE:  All right.  Go check on

14  your oven.

15         MR. GEOPPINGER:  I think working those into the fact

16  sheet -- the fact sheet up front would be certainly something

17  the wholesalers are going to be very interested in doing.

18         SPECIAL MASTER VANASKIE:  Okay.  I think that would

19  be great.  I think why make it supplemental.  Let's get it

20  right in the fact sheet and get that information to you.

21         The other issue I have -- I guess that's it on that

22  issue.  Report next week on this.

23         And then we have the issue that's been raised with

24  respect to smartphone app discovery.

25         This is not your issue.  And that's from the

1    manufacturers.  I don't know if I have anybody on the phone to

2    address that, on the Zoom.

3           MS. GOLDENBERG:  This is Marlene Goldenberg.  I --

4    oh, good, George is here.  Never mind.

5           MR. WILLIAMSON:  Yeah, Your Honor, my understanding

6    was that we were going to brief this issue.  It would be in

7    our submission I believe tomorrow.  And then to the extent

8    Your Honor wanted to hear further argument or further briefing

9    on it, we could do that at some later point.

10          SPECIAL MASTER VANASKIE:  Yeah.  I thought what we

11   could do is simply set up a schedule of a date by which a

12   motion to compel should be filed and set up the briefing issue

13   as whether or not you're entitled to discovery.

14          I know it involves WeChat.  It involves discovery of

15   information that would be on smartphones of individuals at

16   ZHP.

17          MR. WILLIAMSON:  That's right, Your Honor.  And if

18   Your Honor is asking for a briefing schedule, then we can put

19   our heads together with defense counsel and work that out,

20   unless Your Honor has something you want to propose today.

21          SPECIAL MASTER VANASKIE:  No.  Why don't you work it

22   out.  I'd rather you work it out rather than me imposing

23   something.  I'm prepared to.  But we're getting together next

24   Tuesday, I guess it is.

25          MR. WILLIAMSON:  Okay.

*United States District Court*

1          SPECIAL MASTER VANASKIE:  So I would hope that you'd

2    have a schedule proposed by then.

3          MR. WILLIAMSON:  Yeah, I think we can do that.

4          SPECIAL MASTER VANASKIE:  All right.

5          MR. WILLIAMSON:  Thank you, Your Honor.

6          SPECIAL MASTER VANASKIE:  Is there anything else to

7    discuss today?

8          MR. GEOPPINGER:  Nothing from the wholesalers, Your

9    Honor.

10          MS. BURROWS:  Nothing from the plaintiffs regarding

11    these issues, Your Honor.  Thank you for your time today.

12          SPECIAL MASTER VANASKIE:  All right.  Thank you all

13    very much.  We'll see you next week.

14          (Proceedings concluded at 2:56 p.m.)
                              -  -  -
15          I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17    */S/ Ann Marie Mitchell*          *8th day of September, 2023*
     *Court Reporter/Transcriber     Date*

18

19

20

21

22

23

24

25

*United States District Court*

## /

**/S** [1] - 41:16

## 0

**08101** [1] - 1:8

## 1

**1's** [1] - 21:25
**10/9** [1] - 18:5
**110** [1] - 2:7
**11th** [2] - 38:18, 38:25
**15-page** [1] - 8:10
**19-md-02875** [1] - 1:4

## 2

**2** [1] - 21:25
**2020** [1] - 28:10
**2023** [4] - 1:9, 15:12, 29:9, 41:16
**2024** [1] - 38:18
**23rd** [2] - 4:2, 26:9
**25th** [1] - 38:25
**27th** [2] - 18:4, 18:12
**2800** [2] - 1:19, 2:11
**2:03** [2] - 1:9, 3:2
**2:56** [1] - 41:14
**2nd** [1] - 38:25

## 3

**30(b)(6** [2] - 17:13, 35:20
**32** [7] - 12:10, 21:10, 27:4, 28:12, 28:13, 32:24, 35:22
**33950** [1] - 2:4
**3rd** [1] - 20:19

## 4

**445202** [1] - 2:11
**4th** [2] - 1:8, 17:15

## 5

**5201** [1] - 2:7
**55402** [1] - 1:19
**576-7018** [1] - 1:23
**5th** [1] - 20:1

## 6

**60** [2] - 1:19, 8:9
**600** [1] - 2:11
**66205** [1] - 2:8
**6th** [2] - 1:19, 18:13

## 7

**7** [1] - 1:9

## 701

**701** [1] - 1:15
**70130** [1] - 1:16

## 8

**8/23** [2] - 4:20, 21:6
**82** [1] - 8:2
**856** [1] - 1:23
**8th** [1] - 41:16

## 9

**94-page** [2] - 9:15, 15:9
**99** [1] - 2:3

## A

**ability** [1] - 13:13
**able** [6] - 5:6, 5:7, 12:16, 24:14, 27:12, 30:16
**above-entitled** [1] - 41:15
**absent** [1] - 31:11
**accommodate** [1] - 15:5
**accomplished** [1] - 35:1
**acknowledge** [1] - 26:10
**acknowledged** [1] - 23:1
**acknowledgement** [1] - 27:11
**ACTION** [1] - 1:3
**add** [3] - 3:9, 20:8, 36:16
**addition** [1] - 18:25
**additional** [3] - 9:25, 15:12, 28:23
**address** [7] - 3:22, 6:1, 6:14, 7:3, 20:10, 27:10, 40:2
**addressing** [1] - 5:24
**admissions** [2] - 13:6, 25:9
**advance** [2] - 3:10, 3:13
**afternoon** [2] - 3:3, 3:4
**agenda** [1] - 15:2
**ago** [6] - 8:2, 22:16, 24:23, 27:25, 30:13, 32:25
**agree** [6] - 4:25, 17:4, 17:25, 30:21, 32:12, 33:16
**agreed** [9] - 9:21, 22:10, 24:20, 25:12, 31:18, 32:8, 38:13,
38:21, 39:1
**agreement** [4] - 17:8, 17:24, 19:20, 38:16
**ahead** [1] - 30:3
**aided** [1] - 1:24
**allow** [1] - 29:5
**allowed** [7] - 5:10, 6:7, 9:21, 15:6, 25:5, 29:4
**allowing** [1] - 6:17
**ALSO** [1] - 2:13
**amendments** [1] - 19:24
**AmerisourceBergen** [1] - 2:12
**amount** [1] - 10:13
**ann** [1] - 1:22
**Ann** [2] - 3:18, 41:16
**AnnMarie_Mitchell@ dnj.uscourts.gov** [1] - 1:22
**answer** [17] - 9:3, 9:4, 9:9, 9:14, 9:15, 9:18, 9:20, 10:4, 13:9, 13:10, 13:15, 15:24, 19:10, 19:13, 19:17, 23:2, 24:16
**answered** [5] - 10:19, 18:19, 19:12, 23:13, 23:21
**answering** [10] - 10:19, 11:3, 11:10, 15:22, 21:7, 21:8, 21:16, 23:4, 23:14
**answers** [3] - 9:16, 12:17, 19:16
**apart** [2] - 25:21, 25:23
**apologize** [4] - 3:10, 3:13, 22:17
**app** [1] - 39:24
**apple** [1] - 8:4
**applicable** [3] - 4:16, 4:17, 5:6
**appreciate** [2] - 7:23, 29:22
**appreciated** [1] - 16:12
**approach** [1] - 18:9
**approved** [2] - 9:3, 23:17
**April** [3] - 12:10, 38:25
**area** [1] - 17:11
**argue** [4] - 8:15, 20:19, 29:14, 30:13
**argued** [4] - 5:4, 22:16, 28:9, 28:10
**argument** [3] - 19:9, 26:21, 40:8
**arguments** [3] - 15:17,

38:21, 39:1
**arose** [1] - 28:16
**assignor** [1] - 21:25
**assignors** [1] - 17:14
**attached** [3] - 4:5, 4:20, 26:7
**attempt** [1] - 8:20
**attempting** [1] - 7:25
**August** [4] - 4:2, 15:12, 17:15, 26:9
**avoid** [2] - 16:17, 16:20

## B

**bad** [1] - 20:17
**ball** [1] - 20:17
**BARTON** [1] - 2:6
**based** [2] - 17:3, 25:13
**basic** [1] - 20:21
**bat** [1] - 7:21
**begin** [2] - 23:14, 27:9
**beginning** [2] - 10:13, 24:7
**behind** [1] - 19:8
**belabor** [1] - 27:25
**benefit** [1] - 16:14
**BERNE** [1] - 2:10
**best** [2] - 9:23, 37:15
**between** [2] - 17:6, 26:1
**beyond** [1] - 15:13
**big** [3] - 12:25, 14:3, 15:22
**bit** [2] - 21:6, 35:22
**bite** [1] - 8:4
**blow** [2] - 3:12, 39:11
**board** [1] - 36:11
**brief** [2] - 8:14, 40:6
**briefed** [3] - 7:13, 15:16, 28:25
**briefing** [4] - 8:9, 40:8, 40:12, 40:18
**bring** [1] - 24:10
**brought** [2] - 12:3, 18:18
**Building** [1] - 1:7
**bunch** [1] - 31:18
**burden** [2] - 12:4, 22:8
**BURROWS** [3] - 2:6, 2:6, 41:10
**Burrows** [4] - 6:2, 30:6, 34:15, 39:12
**bypassing** [1] - 19:14

## C

**Camden** [1] - 1:8
**Camp** [1] - 1:15
**candidly** [7] - 5:1,

**29:23, 31:10
**arose** [1] - 28:16

**5:19, 12:15, 13:15, 26:20, 31:25, 32:10
**cannot** [2] - 9:9, 25:14
**care** [1] - 17:16
**CARR** [1] - 2:2
**cart** [1] - 24:14
**case** [13] - 6:23, 7:9, 10:14, 10:15, 10:18, 12:3, 14:17, 18:15, 22:13, 24:5, 27:17, 27:24, 37:20
**categories** [1] - 36:10
**certain** [6] - 3:23, 8:6, 17:4, 18:9, 21:21, 33:6
**certainly** [6] - 25:5, 34:1, 34:4, 35:6, 36:17, 39:16
**certification** [1] - 28:12
**certify** [1] - 41:15
**challenges** [1] - 14:23
**change** [1] - 20:8
**changed** [2] - 21:17, 33:10
**changing** [1] - 33:13
**characterization** [1] - 6:5
**chasing** [1] - 22:9
**check** [1] - 39:13
**chose** [1] - 12:4
**Cincinnati** [1] - 2:11
**circle** [1] - 32:5
**CIVIL** [1] - 1:3
**clarify** [1] - 33:17
**clarity** [1] - 15:21
**class** [3] - 10:20, 17:14, 28:12
**client** [1] - 10:16
**clients** [1] - 27:20
**CMC** [1] - 15:2
**CMO** [7] - 12:10, 21:10, 27:4, 28:12, 28:13, 32:24, 35:22
**coalesce** [1] - 34:22
**Cohen** [1] - 1:7
**cohesive** [1] - 16:14
**colleagues** [1] - 39:11
**combined** [1] - 14:25
**coming** [1] - 10:15
**Commencing** [1] - 1:9
**committed** [2] - 36:17, 36:21
**communicate** [1] - 37:23
**companies** [4] - 14:3, 14:4, 27:15
**compel** [1] - 40:12
**competing** [4] - 4:6, 6:12, 16:17, 16:21

complete [1] - 38:17
completed [1] - 35:18
completely [3] - 4:15, 11:5, 34:16
components [2] - 19:21, 36:8
computer [1] - 1:24
computer-aided [1] - 1:24
concerned [1] - 26:20
concerns [1] - 31:9
concluded [1] - 41:14
confer [3] - 17:22, 32:20, 38:5
CONFERENCE [1] - 1:5
conference [5] - 4:1, 6:10, 13:1, 37:6, 37:10
conferred [1] - 18:7
confronting [1] - 25:11
confused [1] - 20:16
connection [1] - 23:21
consideration [1] - 10:22
consistent [1] - 38:14
consistently [1] - 23:20
constitutes [1] - 25:12
consumer [1] - 10:20
consumers [1] - 11:8
contact [1] - 31:24
contemplated [2] - 33:20, 34:9
context [3] - 5:11, 11:2, 29:16
continue [1] - 33:2
Continued [1] - 2:1
controversial [1] - 33:23
Cooper [1] - 1:8
coordinate [2] - 5:6, 32:2
coordinated [1] - 37:2
coordinating [1] - 5:4
core [7] - 21:24, 21:25, 22:3, 22:6, 22:8, 22:12, 22:15
corral [2] - 9:11, 9:13
corralled [1] - 37:16
correct [1] - 41:15
correctly [1] - 3:19
counsel [2] - 3:23, 40:19
counterproposal [2] - 4:8, 4:15
couple [4] - 20:12, 31:15, 32:22, 36:3

course [1] - 28:4
Court [6] - 1:22, 5:10, 9:3, 21:17, 23:1, 41:17
COURT [1] - 1:1
court [2] - 3:19, 12:8
Court's [1] - 31:10
Court-approved [1] - 9:3
Court-ordered [1] - 21:17
Courthouse [1] - 1:7
Courtroom [1] - 2:14
covers [1] - 34:3
current [1] - 23:18
custodial [29] - 5:3, 11:17, 11:20, 11:21, 12:13, 13:25, 14:5, 14:6, 15:7, 15:17, 27:1, 27:3, 27:7, 27:13, 27:14, 27:23, 27:25, 28:11, 28:15, 28:23, 29:17, 30:12, 31:13, 32:17, 33:18, 33:24, 35:7, 38:18
custodian [1] - 21:25
custodians [3] - 28:3, 29:8, 29:10

**D**

data [9] - 19:14, 21:22, 24:17, 24:18, 24:20, 24:22, 33:6, 33:7
date [9] - 9:5, 15:25, 16:1, 17:15, 17:21, 18:1, 38:20, 40:11
Date [1] - 41:17
dates [21] - 4:6, 4:16, 4:23, 5:17, 5:20, 5:21, 6:15, 6:16, 6:18, 7:2, 9:1, 9:16, 16:4, 17:4, 18:8, 18:13, 30:7, 30:20, 38:25, 39:4, 39:10
DAVID [1] - 1:15
David [2] - 3:9, 5:25
days [3] - 8:2, 9:20, 34:21
deadline [4] - 18:5, 19:19, 19:20, 19:23
deadlines [3] - 17:9, 18:10, 32:19
deal [2] - 4:22, 16:13
dealings [2] - 12:23, 13:16
deals [1] - 17:11
decide [1] - 29:19
decided [1] - 15:9
deciding [1] - 17:9

decision [2] - 20:20, 36:3
decisions [2] - 16:22, 17:8
defendant [4] - 16:9, 20:4, 20:6, 33:12
defendant's [1] - 20:22
defendants [29] - 4:10, 5:5, 5:12, 5:13, 9:12, 11:21, 12:1, 14:20, 15:1, 21:7, 21:21, 24:3, 24:10, 24:22, 26:10, 28:1, 28:5, 31:4, 31:12, 31:23, 32:4, 32:5, 36:11, 36:18, 37:1, 37:3, 37:24
Defendants [1] - 2:12
defense [3] - 9:5, 10:8, 40:19
defer [1] - 35:17
deferring [1] - 28:11
depositions [2] - 8:8, 35:21
Deputy [1] - 2:14
despite [1] - 9:23
determinations [1] - 17:3
determined [2] - 32:19
DFSs [2] - 9:6, 9:8
differences [1] - 17:6
different [6] - 6:19, 10:7, 14:24, 21:19, 27:24, 34:5
difficult [1] - 22:21
dilemma [1] - 36:5
directive [1] - 30:23
disagree [2] - 6:4, 23:24
disagreements [1] - 24:11
discover [1] - 22:3
DISCOVERY [1] - 1:5
discovery [72] - 5:3, 5:8, 6:17, 7:1, 7:20, 8:5, 8:6, 8:13, 8:20, 11:17, 11:18, 11:20, 11:22, 12:1, 12:5, 12:14, 13:14, 14:1, 14:5, 14:6, 14:22, 15:1, 15:5, 15:6, 15:8, 15:9, 15:13, 15:14, 15:17, 16:5, 16:24, 17:10, 18:16, 18:17, 21:21, 21:24, 21:25, 22:6, 25:1, 25:2, 27:1, 27:3, 27:7, 27:13, 27:14, 27:23, 27:24, 28:1,

28:11, 28:16, 28:18, 28:23, 29:1, 30:1, 30:12, 30:25, 31:13, 31:21, 32:17, 32:25, 33:18, 33:24, 34:1, 35:7, 35:15, 36:1, 38:4, 38:18, 39:24, 40:13, 40:14
discrepancy [1] - 17:11
discuss [4] - 3:24, 5:17, 6:21, 41:7
discussed [6] - 4:11, 4:20, 13:2, 13:3, 37:1, 37:24
discussion [2] - 24:2, 33:1
discussions [1] - 30:17
dispute [1] - 35:12
disputes [3] - 18:6, 18:17, 25:15
disrupting [1] - 6:23
distribution [1] - 16:9
DISTRICT [2] - 1:1, 1:1
divide [1] - 16:19
document [9] - 9:14, 9:15, 9:20, 9:25, 15:14, 18:25, 19:15, 20:21, 38:17
documents [2] - 12:17, 25:4
done [10] - 4:22, 15:10, 15:11, 17:20, 18:22, 26:15, 32:1, 34:11, 37:18, 37:19
down [3] - 28:13, 35:3, 38:23
downstream [1] - 28:1
dozens [1] - 10:20
draft [5] - 7:8, 18:17, 24:9, 24:11, 35:11
Drive [1] - 2:7
drugs [2] - 21:22, 29:11
due [2] - 4:2, 18:12

**E**

e-discovery [1] - 34:1
edits [1] - 20:22
effort [1] - 10:13
efforts [1] - 9:23
eight [2] - 14:19, 14:21
either [2] - 14:20, 27:2
email [1] - 21:24
EMERICH [1] - 2:2
end [4] - 7:11, 7:25,

14:23, 29:3
engage [1] - 12:5
engaged [2] - 13:19, 32:10
engaging [2] - 35:7, 35:15
enter [1] - 5:20
entered [4] - 20:15, 28:7, 30:21, 38:9
entering [1] - 6:14
entitled [2] - 40:13, 41:15
ESQUIRE [5] - 1:15, 1:18, 2:3, 2:6, 2:10
establish [1] - 12:21
established [1] - 24:25
events [2] - 18:9, 18:10
exactly [2] - 22:13, 38:22
example [2] - 9:18, 38:15
exception [1] - 13:21
exchange [1] - 33:8
expense [1] - 34:1
extent [2] - 33:23, 40:7
extra [1] - 7:1

**F**

faced [1] - 36:5
fact [112] - 4:9, 4:17, 5:9, 5:11, 6:9, 6:23, 7:5, 7:19, 8:12, 8:19, 8:22, 8:25, 9:2, 9:4, 9:5, 9:9, 9:19, 9:24, 10:1, 10:4, 10:6, 10:7, 10:8, 10:19, 11:5, 11:12, 11:18, 14:25, 15:9, 15:13, 15:20, 15:22, 15:24, 18:25, 19:1, 19:3, 19:5, 19:6, 19:7, 19:10, 19:11, 19:16, 19:17, 19:20, 19:21, 19:25, 20:2, 20:4, 20:6, 20:14, 20:15, 21:8, 22:23, 22:24, 22:25, 23:3, 23:6, 23:8, 23:9, 23:14, 23:15, 23:17, 23:21, 24:1, 24:4, 24:9, 24:15, 24:17, 24:21, 25:1, 25:7, 25:9, 25:12, 25:13, 25:20, 25:25, 26:1, 26:20, 27:9, 27:18, 29:4, 29:15, 29:25, 30:10, 30:17, 30:23, 31:3,

31:6, 31:8, 31:11, 32:1, 32:18, 33:5, 33:9, 33:12, 34:10, 34:14, 35:1, 35:9, 35:17, 35:19, 35:24, 36:9, 37:18, 38:11, 39:9, 39:15, 39:16, 39:20
**fair** [2] - 32:10, 32:11
**far** [1] - 7:3
**FARR** [2] - 2:2
**fashion** [1] - 36:20
**fast** [1] - 7:22
**fence** [1] - 23:22
**few** [3] - 4:16, 8:2, 34:21
**figure** [1] - 29:17
**figured** [1] - 20:24
**file** [1] - 18:6
**filed** [2] - 18:12, 40:12
**fill** [2] - 35:20, 35:25
**final** [1] - 18:19
**finalized** [1] - 19:1
**fine** [4] - 5:10, 13:12, 26:12, 35:13
**firing** [1] - 24:12
**first** [8] - 5:2, 17:11, 17:12, 20:1, 20:12, 20:21, 22:14, 28:3
**five** [7] - 6:22, 8:14, 10:18, 22:16, 24:6, 29:8, 30:13
**five-year** [1] - 10:18
**Florida** [1] - 2:4
**focus** [2] - 28:2, 28:6
**follow** [2] - 10:2, 15:23
**followed** [2] - 10:14, 25:3
**foregoing** [1] - 41:15
**foremost** [1] - 5:2
**form** [1] - 18:20
**forward** [10] - 16:24, 26:17, 31:12, 31:19, 32:3, 36:7, 36:12, 37:2, 38:7
**frankly** [2] - 8:16, 19:10
**freeze** [1] - 6:17
**fringes** [1] - 15:20
**front** [2] - 26:23, 39:16
**frustrated** [1] - 35:14
**function** [1] - 18:20
**fundamental** [1] - 21:1

### G

**gaps** [2] - 35:20, 35:25
**Geoppinger** [23] - 3:25, 5:23, 7:22, 9:10, 11:1, 15:7,

16:6, 16:11, 17:20, 20:18, 21:3, 21:4, 23:6, 23:25, 25:18, 29:7, 29:13, 29:24, 32:16, 35:6, 35:15, 36:24, 39:3
**GEOPPINGER** [24] - 2:10, 3:25, 13:8, 17:17, 17:21, 21:5, 22:3, 22:18, 22:22, 23:20, 25:20, 30:2, 30:4, 33:17, 36:25, 37:6, 37:13, 37:15, 37:22, 38:3, 38:20, 38:23, 39:15, 41:8
**Geoppinger's** [3] - 6:4, 10:16, 27:20
**George** [1] - 40:4
**GEORGE** [1] - 2:3
**given** [1] - 14:15
**Goldenberg** [1] - 40:3
**GOLDENBERG** [3] - 1:18, 1:18, 40:3
**Gorda** [1] - 2:4
**granular** [1] - 6:2
**great** [1] - 39:19
**gritty** [1] - 33:9
**ground** [1] - 20:23
**guess** [7] - 26:6, 31:22, 31:23, 34:12, 34:16, 39:21, 40:24

### H

**HACKETT** [2] - 2:2
**hammer** [5] - 29:15, 29:25, 35:1, 35:11, 36:8
**hammered** [1] - 25:14
**hammering** [1] - 6:25
**handicaps** [1] - 25:18
**handled** [3] - 6:2, 19:6, 25:9
**hands** [1] - 33:8
**happy** [4] - 5:5, 16:18, 20:9, 20:23
**HARKINS** [2] - 11:2, 23:7
**hate** [1] - 27:25
**heads** [1] - 40:19
**hear** [7] - 14:7, 14:13, 21:2, 26:16, 26:21, 30:4, 40:8
**heard** [7] - 10:4, 10:11, 23:25, 24:1, 24:15, 26:22, 30:14
**hearing** [3] - 6:11, 31:10, 32:15
**heart** [1] - 6:16
**held** [2] - 3:1, 21:12

**help** [1] - 33:8
**hew** [1] - 18:21
**hip** [1] - 24:12
**historically** [1] - 37:17
**histories** [1] - 27:24
**history** [2] - 10:18, 11:11
**hit** [1] - 20:23
**hold** [1] - 21:19
**HOLMES** [1] - 2:2
**home** [1] - 3:11
**Honor** [62] - 3:4, 3:10, 3:25, 4:2, 4:21, 5:19, 5:25, 6:5, 6:6, 6:7, 6:9, 6:14, 6:16, 7:24, 8:10, 8:15, 8:18, 8:21, 8:25, 11:23, 12:25, 13:8, 13:22, 13:25, 14:9, 14:11, 14:16, 15:2, 15:21, 18:14, 18:18, 19:23, 21:14, 22:3, 22:22, 23:8, 23:25, 25:20, 26:16, 26:24, 27:18, 28:14, 28:25, 30:5, 30:15, 32:13, 33:17, 34:20, 36:17, 37:17, 38:21, 39:2, 40:5, 40:8, 40:17, 40:18, 40:20, 41:5, 41:9, 41:11
**HONORABLE** [1] - 1:11
**Honorable** [1] - 3:1
**hope** [1] - 41:1
**hopefully** [4] - 17:2, 33:15, 34:22, 39:6
**hoping** [4] - 16:16, 20:13, 31:17, 35:4
**horse** [1] - 24:15
**hump** [1] - 35:13

### I

**idea** [2] - 19:8, 29:4
**ideas** [2] - 34:22, 34:24
**identified** [2] - 3:19, 13:21
**identify** [2] - 3:18, 13:18
**ignored** [2] - 4:7, 7:6
**image** [3] - 11:14, 11:15, 13:22
**images** [1] - 11:23
**impediment** [1] - 16:23
**implications** [1] - 10:8
**implies** [1] - 6:8
**important** [4] - 6:13,

27:1, 28:20, 29:19
**importantly** [1] - 13:25
**imposing** [1] - 40:22
**impossible** [1] - 15:23
**inclination** [1] - 31:10
**include** [3] - 4:16, 5:21, 13:11
**included** [3] - 5:4, 9:24, 11:6
**including** [3] - 4:10, 6:24, 29:11
**incorporated** [1] - 19:7
**indicate** [1] - 38:15
**individual** [1] - 5:7
**individuals** [3] - 11:8, 14:2, 40:15
**inform** [1] - 35:4
**informally** [1] - 33:8
**information** [6] - 12:22, 22:5, 22:12, 24:16, 39:20, 40:15
**initial** [2] - 4:20, 25:2
**injury** [1] - 10:21
**inputted** [1] - 21:10
**inserting** [1] - 7:8
**insist** [1] - 21:11
**insistent** [1] - 22:23
**instance** [1] - 11:16
**instead** [1] - 10:14
**instruction** [1] - 4:18
**insurance** [4] - 14:3, 14:4, 27:15
**interested** [1] - 39:17
**interim** [1] - 33:5
**interrogatories** [8] - 7:13, 7:15, 7:16, 8:19, 12:15, 12:24, 14:14, 25:8
**inverted** [1] - 19:17
**involve** [3] - 31:3, 31:4, 36:10
**involved** [2] - 13:18, 34:14
**involves** [2] - 40:14
**irbesartan** [26] - 8:4, 9:19, 10:6, 11:4, 11:22, 12:9, 14:18, 15:1, 16:5, 16:25, 19:1, 19:11, 20:2, 20:8, 20:23, 21:18, 22:19, 23:18, 27:6, 28:18, 32:17, 33:14, 33:25, 36:9, 38:17, 39:9
**issue** [19] - 4:1, 7:7, 13:9, 15:16, 15:19, 18:23, 19:22, 27:10, 27:19, 27:23, 29:12, 34:7, 34:8, 39:21,

39:22, 39:23, 39:25, 40:6, 40:12
**issued** [1] - 8:10
**issues** [13] - 3:22, 3:24, 4:9, 5:7, 6:2, 6:20, 7:4, 8:18, 14:25, 16:19, 22:1, 26:14, 41:11
**item** [5] - 16:17, 16:20, 17:12
**items** [2] - 28:13, 38:13

### J

**Jeff** [1] - 3:25
**JEFFREY** [1] - 2:10
**JERSEY** [1] - 1:1
**Jersey** [1] - 1:8
**Johnson** [1] - 2:7
**join** [1] - 6:2
**Judge** [29] - 3:8, 6:20, 6:25, 7:4, 7:8, 7:12, 7:13, 7:14, 8:1, 9:24, 10:17, 12:8, 12:10, 15:3, 16:6, 18:18, 18:23, 20:18, 20:19, 21:20, 21:23, 22:2, 22:16, 28:7, 28:16, 28:20, 39:12
**judge** [1] - 24:11
**jurists** [3] - 7:9, 7:18, 7:19

### K

**KANNER** [1] - 1:14
**Kansas** [1] - 2:8
**keep** [1] - 36:18
**kept** [1] - 25:23
**key** [3] - 9:15, 16:3, 19:22
**keying** [2] - 6:19, 18:9
**kind** [3] - 30:24, 34:6, 34:15
**knowledge** [2] - 20:4, 20:5
**knows** [1] - 5:8
**Kugler** [7] - 7:14, 8:1, 9:24, 12:10, 15:3, 22:2, 28:17
**Kugler's** [1] - 16:7

### L

**lack** [1] - 12:22
**large** [1] - 4:25
**larry** [1] - 2:14
**last** [4] - 6:11, 8:14, 13:1, 26:8
**lately** [1] - 26:22

**learned** [1] - 35:4
**leave** [1] - 12:24
**less** [1] - 21:18
**lessons** [1] - 35:4
**level** [2] - 12:5, 16:9
**LIABILITY** [1] - 1:4
**limited** [1] - 12:20
**limits** [1] - 5:1
**list** [1] - 7:11
**LITIGATION** [1] - 1:4
**litigation** [2] - 14:21, 16:15
**LLC** [2] - 1:14, 2:6
**LLP** [1] - 2:10
**look** [4] - 20:3, 31:21, 33:13, 38:7
**looking** [4] - 16:21, 18:1, 23:13, 36:19
**looks** [2] - 34:17, 38:6
**losartan** [26] - 8:3, 9:19, 10:6, 11:4, 11:22, 12:9, 14:18, 14:25, 16:5, 16:24, 19:1, 19:11, 20:2, 20:8, 20:22, 21:18, 22:18, 23:18, 27:6, 28:17, 32:17, 33:14, 33:25, 36:10, 38:17, 39:9
**losartan/irbesartan** [5] - 14:22, 19:25, 32:24, 33:3, 33:13
**lost** [1] - 22:10
**Louisiana** [1] - 1:16
**loved** [1] - 7:16

**M**

**MacStravic** [1] - 2:14
**MADA** [1] - 15:14
**Magistrate** [6] - 6:25, 7:14, 18:18, 21:20, 21:23, 28:7
**magistrate** [1] - 24:11
**major** [1] - 8:18
**manner** [1] - 29:24
**manufacturers** [9] - 7:17, 10:5, 14:19, 15:25, 23:10, 26:3, 28:3, 31:24, 40:1
**manufacturers'** [1] - 9:7
**March** [2] - 38:18, 38:25
**Marie** [3] - 1:22, 3:18, 41:16
**MARLENE** [1] - 1:18
**Marlene** [1] - 40:3
**Master** [1] - 8:2
**MASTER** [45] - 1:11,

3:2, 3:3, 3:5, 3:14, 3:16, 5:23, 10:24, 13:5, 14:7, 16:16, 17:18, 18:8, 19:18, 21:2, 21:15, 22:20, 23:5, 23:23, 24:24, 27:16, 30:3, 32:11, 32:14, 34:19, 34:25, 36:23, 37:4, 37:8, 37:10, 37:14, 37:21, 38:2, 38:12, 38:22, 38:24, 39:5, 39:13, 39:18, 40:10, 40:21, 41:1, 41:4, 41:6, 41:12
**matter** [5] - 11:18, 16:19, 24:25, 35:11, 41:15
**mean** [7] - 13:25, 20:10, 21:5, 26:8, 26:13, 32:20, 38:13
**measure** [1] - 4:25
**mechanical** [1] - 1:24
**medical** [1] - 10:20
**meet** [2] - 17:22, 38:5
**mention** [3] - 11:16, 22:7, 26:25
**mentioned** [2] - 13:9, 27:8
**meshing** [1] - 27:24
**met** [2] - 4:2, 18:7
**mics** [1] - 3:17
**midst** [1] - 10:6
**miffed** [1] - 28:24
**might** [4] - 30:13, 33:12, 33:17, 38:6
**mind** [1] - 40:4
**Minneapolis** [1] - 1:19
**Minnesota** [1] - 1:19
**minor** [1] - 15:19
**mirror** [4] - 11:14, 11:15, 11:23, 13:22
**mirrored** [1] - 32:9
**mirrors** [3] - 13:3, 13:5, 15:11
**missed** [1] - 10:1
**Mission** [1] - 2:8
**mistaken** [1] - 20:3
**misunderstanding** [1] - 36:13
**Mitchell** [3] - 1:7, 1:22, 41:16
**Monday** [2] - 38:5, 39:4
**monitoring** [1] - 10:20
**month** [1] - 19:9
**months** [3] - 8:15, 31:15, 32:25
**most** [1] - 34:20
**motion** [1] - 40:12

**motions** [1] - 18:12
**move** [7] - 30:25, 31:19, 32:3, 36:6, 36:12, 36:17, 37:2
**moving** [6] - 10:12, 15:20, 16:24, 22:1, 26:17, 36:7
**MR** [49] - 3:7, 3:15, 3:25, 5:25, 11:2, 13:8, 14:9, 17:17, 17:21, 18:14, 19:22, 21:5, 21:14, 21:16, 22:3, 22:15, 22:18, 22:22, 23:7, 23:19, 23:20, 23:24, 25:20, 27:18, 30:2, 30:4, 32:13, 32:15, 33:17, 34:20, 36:16, 36:25, 37:6, 37:9, 37:13, 37:15, 37:22, 38:3, 38:20, 38:23, 39:2, 39:6, 39:15, 40:5, 40:17, 40:25, 41:3, 41:5, 41:8
**MS** [2] - 40:3, 41:10
**MSP** [1] - 15:14
**multiple** [2] - 7:8, 9:9
**mute** [1] - 3:17

**N**

**named** [1] - 15:10
**nature** [1] - 29:6
**need** [21] - 4:12, 5:7, 9:9, 9:11, 11:25, 12:16, 12:22, 13:16, 14:5, 15:12, 15:21, 23:12, 23:13, 27:11, 27:19, 29:18, 32:5, 33:21, 36:22
**needs** [2] - 17:20, 26:19
**negotiate** [4] - 23:10, 30:10, 30:24, 33:5
**negotiated** [3] - 23:9, 26:1, 35:24
**negotiating** [1] - 14:17
**negotiations** [1] - 35:12
**Nesbit** [1] - 2:3
**never** [7] - 21:24, 24:6, 27:8, 28:21, 28:22, 29:4, 40:4
**NEW** [1] - 1:1
**new** [5] - 4:24, 9:19, 10:15, 16:6, 20:2
**New** [2] - 1:8, 1:16
**next** [8] - 15:2, 34:21, 35:3, 37:5, 37:7, 39:22, 40:23, 41:13

**NIGH** [1] - 1:18
**nilly** [1] - 24:5
**nine** [2] - 14:19, 14:21
**nitty** [1] - 33:9
**nitty-gritty** [1] - 33:9
**noncustodial** [2] - 28:6, 28:8
**none** [1] - 15:8
**note** [1] - 18:21
**noted** [1] - 23:9
**notes** [1] - 38:15
**nothing** [9] - 6:8, 8:24, 20:25, 21:7, 24:1, 27:4, 36:16, 41:8, 41:10
**notices** [1] - 17:14
**NUMBER** [1] - 1:3
**number** [12] - 4:17, 6:10, 6:22, 7:5, 14:15, 14:19, 14:20, 21:25, 32:23, 33:3, 33:4
**numerous** [1] - 7:13

**O**

**objecting** [1] - 18:24
**objections** [1] - 18:20
**obligations** [4] - 5:2, 9:6, 9:7, 16:13
**obviously** [1] - 3:10
**October** [2] - 18:13, 20:19
**Official** [1] - 1:22
**Ohio** [1] - 2:11
**once** [2] - 28:15, 28:19
**one** [20] - 5:1, 6:22, 7:4, 7:22, 9:3, 9:10, 9:14, 10:7, 15:11, 15:19, 15:25, 16:1, 22:14, 29:7, 31:9, 31:18, 32:23, 33:3
**ones** [1] - 6:9
**operate** [1] - 13:12
**opinion** [1] - 8:11
**opportunities** [2] - 8:13, 13:4
**opportunity** [4] - 4:14, 12:1, 12:11, 27:14
**opposed** [4] - 22:24, 25:1, 34:4, 34:10
**order** [22] - 4:3, 4:5, 4:6, 4:11, 4:12, 4:18, 4:22, 5:15, 5:16, 5:20, 6:14, 6:15, 7:8, 11:12, 16:23, 27:13, 30:19, 31:16, 31:17, 33:20, 34:10
**Order** [1] - 8:2
**ordered** [3] - 21:17,

29:4, 32:25
**orderly** [1] - 36:20
**orders** [2] - 8:1, 38:8
**original** [1] - 14:20
**originally** [1] - 5:15
**Orleans** [1] - 1:16
**otherwise** [3] - 19:8, 25:19, 33:8
**ourselves** [3] - 6:6, 34:23, 38:6
**outside** [3] - 5:11, 22:25, 23:3
**oven** [3] - 3:11, 39:11, 39:14
**overall** [1] - 16:15
**overarching** [1] - 6:20
**overlaps** [1] - 33:1
**overturning** [1] - 6:23
**own** [1] - 25:22

**P**

**p.m** [3] - 1:9, 3:2, 41:14
**pace** [1] - 33:19
**page** [3] - 17:13, 20:1, 31:25
**pages** [1] - 8:9
**paid** [1] - 22:5
**paraphrasing** [1] - 28:3
**part** [3] - 5:3, 27:1, 32:25
**participate** [1] - 23:10
**parties** [8] - 6:13, 18:15, 18:16, 31:23, 33:5, 33:7, 33:15, 34:13
**parties'** [1] - 9:23
**partnering** [1] - 4:9
**parts** [2] - 10:12, 15:20
**party** [4] - 4:11, 5:12, 14:2
**passed** [2] - 17:15, 19:24
**past** [2] - 8:9, 25:6
**patently** [1] - 32:21
**pause** [1] - 6:18
**payors** [2] - 5:12, 14:2
**people** [1] - 24:5
**perhaps** [2] - 12:23, 36:5
**period** [1] - 8:15
**person** [3] - 37:7, 37:11, 37:23
**personal** [1] - 10:21
**perspective** [2] - 3:7, 4:21
**persuade** [1] - 25:19

**PFS** [1] - 21:1
**pharmacies** [1] - 4:10
**phone** [1] - 40:1
**place** [3] - 7:6, 31:17, 34:14
**plaintiff** [5] - 5:12, 9:3, 20:7, 24:1, 24:15
**Plaintiffs** [4] - 1:16, 1:20, 2:4, 2:8
**plaintiffs** [54] - 4:4, 4:6, 4:7, 4:11, 4:14, 4:19, 4:24, 5:13, 5:17, 6:1, 6:18, 9:3, 9:18, 11:4, 11:7, 11:8, 11:9, 11:14, 11:22, 12:2, 12:3, 13:6, 13:17, 13:23, 14:1, 15:8, 15:10, 17:22, 18:3, 21:9, 21:11, 22:4, 22:23, 23:2, 24:7, 25:23, 26:2, 26:5, 26:15, 26:18, 27:2, 27:7, 29:10, 30:9, 31:1, 31:5, 31:14, 32:3, 32:6, 32:19, 38:4, 41:10
**plaintiffs'** [4] - 3:7, 31:10, 31:20, 38:20
**point** [10] - 11:23, 12:20, 12:25, 14:8, 15:7, 31:22, 34:12, 37:22, 38:21, 40:9
**position** [5] - 26:12, 29:2, 31:13, 31:19, 33:22
**positively** [1] - 13:17
**potentially** [2] - 10:7, 19:4
**precluded** [1] - 35:6
**prepared** [4] - 4:13, 11:12, 11:13, 40:23
**PRESENT** [1] - 2:13
**pressure** [1] - 29:1
**previously** [2] - 32:8, 38:9
**primary** [1] - 7:19
**proactively** [1] - 34:24
**problem** [5] - 12:19, 21:1, 25:11, 36:4, 39:7
**procedure** [2] - 8:19, 10:3
**proceed** [1] - 29:24
**Proceedings** [2] - 1:24, 41:14
**PROCEEDINGS** [1] - 3:1
**proceedings** [1] - 41:15

**proceeds** [1] - 36:20
**process** [25] - 6:24, 7:6, 8:19, 9:2, 11:9, 13:20, 18:15, 22:23, 22:24, 22:25, 23:3, 24:25, 25:3, 25:7, 25:10, 25:21, 26:10, 26:20, 27:9, 30:19, 31:3, 31:11, 35:18, 35:21, 35:24
**produced** [1] - 1:24
**production** [10] - 5:11, 11:6, 12:9, 25:4, 25:22, 26:7, 26:14, 26:18, 35:16, 38:17
**PRODUCTS** [1] - 1:4
**progress** [2] - 17:2, 37:25
**prohibited** [1] - 26:17
**promptly** [1] - 36:18
**proof** [2] - 12:4, 22:8
**proper** [1] - 12:24
**proposal** [13] - 4:5, 4:20, 4:24, 4:25, 6:22, 7:2, 11:19, 17:12, 17:22, 26:9, 30:25, 33:11, 34:12
**proposals** [6] - 6:12, 16:18, 16:21, 17:6, 20:14, 38:14
**propose** [5] - 19:24, 24:9, 30:5, 30:17, 40:20
**proposed** [6] - 6:6, 6:11, 6:15, 14:10, 20:22, 41:2
**protocol** [1] - 3:17
**provide** [4] - 18:16, 22:10, 23:6, 23:7
**provided** [1] - 25:13
**provides** [5] - 11:25, 12:12, 12:13, 23:3
**providing** [1] - 19:16
**pull** [1] - 7:22
**Punta** [1] - 2:4
**put** [12] - 8:12, 10:13, 11:2, 16:2, 26:4, 28:5, 28:25, 29:13, 31:7, 31:19, 32:6, 40:18
**putting** [2] - 8:4, 30:22

**Q**

**questions** [3] - 19:15, 26:5, 29:5
**quick** [1] - 33:15
**quickly** [5] - 17:2, 20:10, 20:24, 36:19, 36:22

**quite** [1] - 21:6

**R**

**raise** [1] - 15:18
**raised** [1] - 39:23
**RASO** [1] - 1:18
**rather** [3] - 18:9, 40:22
**RE** [1] - 1:4
**ready** [2] - 3:5, 3:21
**realize** [1] - 37:11
**really** [4] - 6:13, 27:23, 32:9, 34:16
**recently** [3] - 8:2, 24:22, 27:3
**reciprocal** [2] - 28:25, 32:18
**reciprocally** [1] - 33:6
**recognition** [1] - 28:21
**record** [5] - 3:20, 18:14, 28:5, 29:13, 41:15
**recorded** [1] - 1:24
**redline** [1] - 20:6
**regarding** [4] - 14:25, 41:10
**regardless** [1] - 33:2
**reinserting** [1] - 8:3
**remains** [1] - 35:12
**remember** [2] - 28:14, 28:20
**remove** [2] - 4:17, 31:16
**removed** [2] - 5:2, 24:8
**repair** [1] - 3:11
**repeatedly** [2] - 7:9, 8:5
**report** [5] - 35:2, 36:25, 37:4, 37:25, 39:22
**Reporter** [1] - 1:22
**reporter** [1] - 3:19
**Reporter/**
**Transcriber** [1] - 41:17
**representatives** [1] - 17:14
**reps** [2] - 10:20, 10:21
**request** [2] - 5:22, 28:22
**requests** [28] - 5:10, 8:7, 9:21, 10:1, 11:6, 12:9, 13:6, 14:6, 15:14, 18:25, 19:4, 19:5, 19:15, 21:16, 21:17, 22:11, 24:9, 24:21, 25:2, 25:4, 25:8, 25:22, 26:4,

26:6, 26:14, 26:18, 28:7
**require** [1] - 30:16
**required** [2] - 12:5, 23:1
**requirement** [1] - 11:17
**reserve** [1] - 13:12
**resolution** [1] - 25:16
**resolve** [3] - 17:3, 17:7
**resolved** [1] - 16:22
**resources** [1] - 8:17
**respect** [16] - 4:2, 12:15, 13:23, 16:24, 18:6, 23:6, 23:8, 31:1, 31:2, 32:2, 32:3, 32:4, 34:8, 36:14, 38:3, 39:24
**respond** [1] - 19:19
**responded** [1] - 35:25
**responding** [1] - 18:24
**RESPONSE** [1] - 3:4
**response** [1] - 18:3
**responses** [2] - 9:5, 18:12
**responsive** [1] - 19:4
**rest** [1] - 35:10
**results** [1] - 35:5
**RET** [1] - 1:11
**retailers** [6] - 7:17, 9:5, 9:10, 10:5, 14:21, 16:1
**retailers'** [1] - 9:4
**revise** [1] - 4:15
**revisit** [1] - 33:21
**RFAs** [5] - 7:12, 7:17, 8:20, 12:15, 14:14
**RFP** [4] - 12:23, 13:10, 13:20, 29:16
**RFPs** [31] - 10:9, 10:11, 11:3, 12:13, 12:17, 12:20, 13:14, 17:13, 19:9, 19:14, 20:19, 21:7, 21:9, 22:13, 22:25, 23:2, 23:4, 23:12, 23:20, 24:5, 24:13, 27:21, 29:16, 30:11, 30:16, 31:11, 35:11, 35:20, 39:8
**road** [1] - 35:3
**rocket** [1] - 17:8
**Rule** [1] - 17:13
**ruling** [1] - 4:7
**run** [4] - 7:25, 29:3, 34:3, 34:5
**running** [2] - 18:10, 20:23
**rush** [1] - 19:13

**S**

**sales** [1] - 21:22
**schedule** [35] - 6:6, 6:11, 7:12, 7:25, 8:4, 8:6, 9:8, 10:15, 11:7, 11:25, 12:12, 12:25, 13:3, 14:10, 14:23, 15:11, 19:2, 19:23, 20:11, 20:13, 21:1, 23:3, 23:5, 23:25, 29:16, 32:6, 32:7, 32:9, 34:17, 35:10, 38:10, 38:11, 40:11, 40:18, 41:2
**scheduled** [1] - 39:3
**schedules** [1] - 14:18
**scheduling** [7] - 4:3, 4:5, 11:12, 27:13, 30:19, 33:20, 34:10
**Schneider** [7] - 6:25, 7:14, 9:25, 18:19, 21:20, 21:23, 28:8
**science** [1] - 17:8
**scope** [1] - 17:9
**scratch** [2] - 30:24, 34:16
**search** [5] - 8:7, 21:24, 34:3, 34:5
**second** [2] - 7:7, 17:12
**see** [11] - 8:5, 13:6, 14:11, 15:18, 17:7, 17:11, 17:23, 25:17, 26:19, 34:25, 41:13
**seeking** [1] - 14:10
**seem** [1] - 32:11
**send** [3] - 5:16, 11:13, 12:7
**sense** [3] - 14:15, 19:2, 19:19
**sent** [6] - 4:18, 11:7, 11:13, 11:19, 13:3, 38:9
**separate** [6] - 11:5, 24:21, 25:21, 25:23, 33:1, 34:5
**September** [8] - 1:9, 18:4, 18:12, 20:1, 20:13, 20:25, 29:9, 41:16
**serve** [16] - 7:1, 7:12, 9:6, 9:25, 10:10, 12:8, 12:24, 17:13, 18:16, 20:19, 24:13, 26:5, 26:11, 26:14, 27:20, 31:11
**served** [7] - 7:16, 11:3, 15:14, 17:17, 19:6, 24:5, 30:16

**service** [1] - 35:11
**serving** [5] - 10:9, 18:3, 18:20, 25:22, 25:23
**set** [13] - 17:4, 18:19, 19:9, 20:21, 24:13, 29:16, 34:3, 34:5, 35:10, 38:5, 40:11, 40:12
**sets** [3] - 15:13, 24:21, 28:1
**setting** [1] - 17:9
**shall** [2] - 17:13, 38:16
**sheet** [80] - 5:9, 5:11, 6:23, 7:5, 7:19, 8:19, 8:22, 8:25, 9:2, 9:4, 9:5, 9:19, 9:24, 10:1, 10:4, 10:6, 10:7, 10:19, 11:5, 11:12, 15:9, 15:22, 15:24, 18:25, 19:1, 19:3, 19:7, 19:10, 19:12, 19:20, 19:21, 19:25, 20:2, 20:7, 20:14, 20:15, 21:8, 22:23, 22:24, 22:25, 23:3, 23:9, 23:14, 23:16, 23:17, 23:21, 24:1, 24:4, 24:9, 24:15, 24:18, 25:7, 25:9, 25:20, 25:25, 26:1, 26:20, 27:9, 27:18, 29:5, 29:15, 29:25, 30:10, 30:17, 30:23, 31:3, 31:11, 32:2, 32:18, 33:5, 33:12, 34:10, 34:14, 35:17, 38:11, 39:9, 39:16, 39:20
**sheets** [21] - 4:9, 9:9, 10:8, 15:13, 19:6, 19:16, 23:6, 23:8, 24:21, 25:1, 25:12, 25:13, 31:6, 31:8, 33:9, 35:1, 35:9, 35:19, 35:24, 36:9, 37:18
**shortly** [1] - 37:20
**show** [1] - 21:22
**side** [5] - 7:9, 16:8, 20:5, 30:22, 32:21
**sides** [2] - 23:22, 34:23
**sides'** [1] - 6:12
**siloed** [1] - 16:8
**similar** [1] - 9:21
**simply** [1] - 40:11
**simultaneously** [2] - 14:17, 16:10
**situation** [2] - 5:9,

29:17
**smartphone** [1] - 39:24
**smartphones** [1] - 40:15
**smooth** [1] - 16:3
**sneak** [1] - 8:20
**sold** [1] - 21:23
**somewhere** [1] - 30:14
**soon** [2] - 37:25, 38:1
**sophisticated** [1] - 14:4
**sorry** [2] - 18:1, 30:2
**sort** [5] - 14:23, 19:13, 29:3, 32:18, 38:10
**sought** [1] - 27:25
**South** [1] - 1:19
**speaking** [2] - 3:18, 37:18
**Special** [1] - 8:2
**SPECIAL** [45] - 1:11, 3:2, 3:3, 3:5, 3:14, 3:16, 5:23, 10:24, 13:5, 14:7, 16:16, 17:18, 18:8, 19:18, 21:2, 21:15, 22:20, 23:5, 23:23, 24:24, 27:16, 30:3, 32:11, 32:14, 34:19, 34:25, 36:23, 37:4, 37:8, 37:10, 37:14, 37:21, 38:2, 38:12, 38:22, 38:24, 39:5, 39:13, 39:18, 40:10, 40:21, 41:1, 41:4, 41:6, 41:12
**specific** [1] - 23:12
**specifically** [1] - 28:8
**spectre** [1] - 36:3
**spent** [1] - 6:24
**spring** [2] - 16:7, 22:2
**sprinkled** [1] - 14:12
**STACY** [1] - 2:6
**stall** [1] - 36:19
**stand** [1] - 37:5
**standard** [1] - 25:1
**standards** [2] - 21:12, 21:19
**STANOCH** [20] - 1:15, 3:7, 3:15, 5:25, 14:9, 18:14, 19:22, 21:14, 21:16, 22:15, 23:19, 23:24, 27:18, 32:13, 32:15, 34:20, 36:16, 37:9, 39:2, 39:6
**Stanoch** [17] - 3:10, 5:24, 6:1, 10:25, 11:16, 14:8, 18:11, 21:15, 22:9, 23:1,

23:9, 23:23, 27:8, 27:17, 29:22, 31:6, 34:15
**start** [8] - 3:9, 3:16, 10:9, 16:7, 20:11, 28:15, 30:24, 34:15
**started** [3] - 3:6, 3:21, 28:18
**starting** [2] - 29:20, 34:16
**STATES** [1] - 1:1
**status** [1] - 35:2
**stay** [2] - 35:17, 35:21
**stenography** [1] - 1:24
**step** [2] - 3:12, 3:14
**stick** [1] - 25:6
**still** [2] - 22:11, 33:2
**stop** [1] - 8:21
**straight** [2] - 12:17, 13:10
**Street** [4] - 1:15, 1:19, 2:3, 2:11
**Streets** [1] - 2:11
**stress** [1] - 14:16
**stricken** [1] - 24:7
**strike** [1] - 32:21
**strongly** [1] - 23:24
**struggling** [1] - 25:13
**stuff** [3] - 5:4, 31:18, 34:6
**stymie** [1] - 16:11
**subjected** [1] - 22:25
**submission** [1] - 40:7
**submissions** [1] - 17:25
**submit** [7] - 4:4, 4:6, 4:15, 6:6, 25:15, 35:12
**submitted** [7] - 4:7, 5:18, 8:9, 13:1, 17:6, 30:19, 38:9
**substantially** [1] - 38:16
**substantive** [1] - 34:7
**sudden** [1] - 29:9
**sue** [1] - 12:4
**sued** [3] - 4:10, 22:7, 27:15
**suffice** [1] - 6:4
**sufficient** [1] - 21:21
**suggest** [5] - 7:23, 24:2, 29:12, 30:20, 31:22
**suggesting** [2] - 7:23, 33:18
**Suite** [3] - 1:19, 2:7, 2:11
**summer** [3] - 8:15, 15:16, 28:10
**supplemental** [7] -

9:20, 10:11, 18:25, 19:5, 25:4, 39:8, 39:19
**supplementally** [1] - 19:6
**supposed** [1] - 18:24
**surprise** [2] - 5:1, 34:23
**swings** [5] - 4:12, 11:24, 25:24, 33:20, 34:9
**swings-both-ways** [2] - 33:20, 34:9

**T**

**table** [1] - 36:15
**team** [1] - 39:3
**teams** [1] - 16:8
**tenable** [1] - 32:10
**terms** [6] - 8:7, 14:10, 22:13, 34:3, 34:5, 35:23
**text** [1] - 4:22
**the Court** [15] - 5:8, 5:22, 7:18, 8:1, 12:19, 12:23, 13:11, 13:13, 16:14, 17:25, 18:18, 29:22, 30:21, 37:7, 38:10
**theirs** [1] - 7:25
**themselves** [1] - 23:2
**they've** [4] - 5:2, 5:3, 7:21, 15:14
**third** [5] - 4:11, 5:12, 7:24, 14:2
**third-party** [4] - 4:11, 5:12, 14:2
**THOMAS** [2] - 1:11, 3:2
**thoughts** [1] - 34:22
**three** [13] - 6:20, 7:4, 8:18, 10:7, 14:23, 15:13, 16:19, 24:21, 28:18, 29:11, 31:6, 31:8
**three-way** [1] - 14:23
**throughout** [1] - 14:12
**throw** [1] - 7:11
**tied** [1] - 11:11
**ties** [1] - 22:5
**timing** [2] - 27:21, 34:8
**today** [8] - 3:22, 3:24, 6:21, 10:17, 37:24, 40:20, 41:7, 41:11
**together** [9] - 26:4, 26:11, 31:8, 31:23, 32:6, 34:2, 34:21, 40:19, 40:23

**tomorrow** [1] - 40:7
**took** [2] - 6:15, 14:1
**TPP** [16] - 9:18, 10:15, 11:7, 11:9, 13:17, 15:8, 15:10, 17:14, 19:24, 20:2, 22:4, 23:2, 26:5, 26:18, 29:8, 29:10
**TPPs** [8] - 10:18, 10:19, 12:22, 14:2, 20:7, 28:23, 29:1, 35:7
**TPPs'** [1] - 33:7
**track** [3] - 33:1, 35:22, 35:23
**tracks** [2] - 14:24, 34:2
**transaction** [1] - 13:18
**transactions** [1] - 22:5
**transcript** [2] - 1:24, 41:15
**transcription** [1] - 1:24
**tremendous** [1] - 10:12
**tried** [2] - 7:21, 24:6
**triggers** [2] - 9:4, 9:6, 9:7
**tripartite** [1] - 16:13
**trouble** [1] - 22:21
**try** [2] - 35:23, 37:1
**trying** [10] - 7:22, 8:12, 15:4, 16:3, 16:9, 16:11, 18:21, 21:19, 22:21, 26:23
**Tuesday** [4] - 37:13, 37:14, 38:1, 40:24
**turn** [1] - 9:7
**Turnpike** [1] - 37:12
**two** [13] - 3:22, 6:17, 7:5, 8:15, 10:18, 24:23, 33:4, 34:2, 34:4, 38:14, 38:23
**two-way** [1] - 6:17

**U**

**U.S** [1] - 1:7
**ULMER** [1] - 2:10
**unable** [2] - 13:15
**unconnected** [1] - 11:4
**under** [2] - 9:7, 19:2
**underhanded** [1] - 6:8
**unfair** [2] - 25:17, 30:1
**unified** [2] - 16:14, 36:20
**unique** [1] - 26:14
**UNITED** [1] - 1:1
**unknown** [1] - 10:8
**unless** [2] - 3:17,

40:20
**unreasonable** [1] - 32:22
**untenable** [1] - 16:1
**up** [16] - 3:12, 4:24, 5:15, 6:11, 7:3, 10:15, 15:11, 30:7, 30:25, 35:10, 38:5, 39:11, 39:16, 40:11, 40:12

### V

**vacuum** [1] - 14:17
**VALSARTAN** [1] - 1:4
**valsartan** [31] - 8:5, 8:7, 8:8, 8:13, 8:20, 9:14, 9:22, 11:20, 13:14, 14:11, 14:12, 15:6, 19:25, 20:6, 21:18, 22:9, 24:18, 24:22, 27:6, 28:14, 28:15, 28:23, 29:3, 29:8, 29:11, 32:24, 33:14, 33:24, 37:19, 38:18
**VANASKIE** [45] - 1:11, 3:2, 3:3, 3:5, 3:14, 3:16, 5:23, 10:24, 13:5, 14:7, 16:16, 17:18, 18:8, 19:18, 21:2, 21:15, 22:20, 23:5, 23:23, 24:24, 27:16, 30:3, 32:11, 32:14, 34:19, 34:25, 36:23, 37:4, 37:8, 37:10, 37:14, 37:21, 38:2, 38:12, 38:22, 38:24, 39:5, 39:13, 39:18, 40:10, 40:21, 41:1, 41:4, 41:6, 41:12
**VAUGHN** [1] - 1:18
**vehicle** [2] - 7:19, 7:20
**via** [1] - 3:1
**VIA** [1] - 1:5
**view** [1] - 28:6
**views** [1] - 34:23
**Vine** [1] - 2:11

### W

**wait** [3] - 23:14, 23:15, 26:19
**waited** [1] - 28:12
**waiting** [2] - 20:9, 22:11
**waive** [1] - 36:6
**waiver** [5] - 26:21, 29:12, 29:14, 30:13, 36:3

**wants** [1] - 28:17
**waste** [1] - 8:16
**waterfall** [1] - 9:1
**ways** [6] - 4:13, 6:19, 11:24, 25:24, 33:20, 34:9
**WeChat** [1] - 40:14
**week** [6] - 34:21, 35:3, 37:5, 37:7, 39:22, 41:13
**week's** [1] - 15:2
**weeks** [3] - 6:24, 20:12, 24:23
**WHITELEY** [1] - 1:14
**whole** [1] - 5:3
**wholesaler** [5] - 11:21, 11:25, 13:18, 15:24, 32:5
**Wholesaler** [1] - 2:12
**wholesalers** [40] - 4:1, 5:7, 7:1, 7:7, 7:17, 7:24, 9:10, 9:16, 10:4, 12:6, 13:7, 13:24, 14:4, 16:12, 17:13, 19:24, 21:8, 22:6, 23:12, 24:13, 25:18, 26:3, 26:12, 26:13, 26:19, 27:2, 27:4, 28:16, 28:22, 30:18, 31:1, 32:16, 34:18, 36:5, 37:19, 37:20, 38:16, 39:7, 39:17, 41:8
**wholesalers'** [5] - 4:21, 6:22, 9:6, 17:12, 33:7
**WILLIAMSON** [6] - 2:3, 40:5, 40:17, 40:25, 41:3, 41:5
**willing** [1] - 14:13
**willy** [1] - 24:5
**willy-nilly** [1] - 24:5
**wish** [1] - 18:16
**wondering** [1] - 31:20
**word** [2] - 21:17, 33:14
**words** [1] - 4:12
**works** [2] - 9:14, 10:16
**written** [3] - 8:10, 19:15, 19:16

### Y

**yarn** [1] - 20:17
**year** [1] - 10:18
**years** [8] - 6:22, 8:14, 18:22, 22:16, 24:6, 27:25, 29:8, 30:13
**yourself** [2] - 3:18, 8:1

### Z

**ZHP** [1] - 40:16
**Zoom** [2] - 3:1, 40:2
**ZOOM** [1] - 1:6