**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Thomas I. Vanaskie (Ret.), Special Master |

**PLAINTIFFS' MOTION TO COMPEL WECHAT PRODUCTION FROM ZHP AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Table of Contents** ........ ii

**Table of Authorities** ........ iii

**I. Introduction** ........ 1

**II. Background** ........ 2

A. General WeChat Background ........ 2
B. ZHP's Use of WeChat ........ 3

**III. Argument** ........ 4

A. Overview of Law on Mobile Devices ........ 4
B. ZHP's WeChat Data is Relevant ........ 7
C. ZHP has Possession, Custody, or Control of Mobile Devices ........ 7
D. Chinese Privacy Laws Cannot Shield Production ........ 9

**IV. Conclusion** ........ 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alter v. Rocky Point Sch. Dist.*,
2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) ....................5, 7

*Bright v. Dennis Garberg & Assocs., Inc.*,
2011 WL 13150146 (C.D. Cal. Nov. 15, 2011) ....................7

*Brooks Sports, Inc. v. ANTA (China) Co.*,
2019 WL 969572 (E.D. Va. Jan. 11, 2019) ....................10

*Brooks Sports, Inc. v. Anta (China) Co.*,
2018 WL 7488924 (E.D. Va. Nov. 30, 2018) ....................6, 9, 10

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*,
138 F.R.D. 438 (D.N.J. 1991) ....................6

*Gerling Intern. Ins. Co. v. C.I.R.*,
839 F.2d 131 (3d Cir.1988) ....................6

*Halabu Holdings, LLC v. Old Nat'l Bancorp*,
2020 WL 12676263 (E.D. Mich. June 9, 2020) ....................5, 9

*Ice Corp. v. Hamilton Sundstrand Corp.*,
245 F.R.D. 513 (D. Kan. 2007) ....................8

*In re Asbestos Prod. Liab. Litig.*, No.,
2021 WL 4902338 (E.D. Pa. Oct. 21, 2021) ....................5

*In re Glob. Power Equip. Grp. Inc.*,
418 B.R. 833 (Bankr. D. Del. 2009) ....................6

*Lalumiere v. Willow Springs Care, Inc.*,
2017 WL 6943148 (E.D. Wash. Sept. 18, 2017) ....................5, 6, 7

*Matter of Skanska USA Civ. Se. Inc.*,
2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) ....................6, 8

*McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am.*,
160 F.R.D. 691 (S.D. Ind. 1993) ....................8

*Mercy Cath. Med. Ctr. V. Thompson*,
380 F.3d 142 (3d Cir. 2004) ....................6

*Resol. Tr. Corp. v. Deloitte & Touche*,
145 F.R.D. 108 (D. Colo. 1992) ....................9

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
2019 WL 3291570 (W.D. Mo. July 22, 2019) ....................5

*Sandoz, Inc. v. United Therapeutics Corp.*,
2021 WL 2374349 (D.N.J. June 10, 2021) ....................4

*Scott v. Arex, Inc.*,

124 F.R.D. 39 (D.Conn.1989) ....................6

*Sinclair v. Cambria Cnty.*,
2018 WL 4689111 (W.D. Pa. Sept. 28, 2018) ....................5

*Stewart v. First Transit, Inc.*,
2019 WL 13027112 (E.D. Pa. Sept. 3, 2019) ....................5

*Stinson v. City of New York*,
2016 WL 54684 (S.D.N.Y. Jan. 5, 2016) ....................5, 6, 7

**Rules**

Fed.R.Civ.P. 34(a) ....................4, 5

## I. INTRODUCTION

ZHP regularly uses WeChat, a Chinese instant messaging and social media application, in the ordinary course of its business. WeChat resides on ZHP's employees' mobile devices and by default stores a chat history on the device. Plaintiffs have requested that ZHP search those devices and produce responsive information in accordance with the parties agreed search term protocol for ESI related to Irbesartan and Losartan. ZHP opposes this request. In accordance with the Special Master's request, Plaintiffs file this motion to compel so that the matter may be fully briefed and considered.

The Court previously considered production from ZHP employees' mobile devices in response to a prior motion to compel. (ECF No. 1405.) In that instance, Plaintiffs had learned that certain ZHP custodians failed to preserve their mobile devices. As part of a larger motion, Plaintiffs requested that all ZHP custodians' mobile devices be searched, and relevant documents produced per the ESI protocol. The Court ultimately denied that request, reasoning that "mere inclusion of a data source in the protocol did not constitute a representation that 'such ESI exists within the parties' data sources *or that it will be produced*.'" (ECF No. 1753 at 6) (emphasis in original). That scenario was far different than the one at hand. Here, Plaintiffs have identified specific responsive information that exists on ZHP employees' mobile devices (the WeChat data) and can demonstrate that the devices are within the control of ZHP. The instant motion is not based solely on a violation (whether perceived or real) of the ESI Protocol, but also ZHP's obligations under the Federal Rules of Civil Procedure to produce responsive information within its possession, custody, or control. Accordingly, the WeChat data should have been preserved at the time ZHP sent litigation hold letters to its employees, it should have been collected from custodians, and should now be produced, the same as any other ESI.

## II. Background

### A. General WeChat Background

WeChat is a Chinese instant messaging service and social media app.[1] Similar to applications like Microsoft Teams and Whatsapp, it allows individuals and groups to communicate and share information via text, video, and image.[2] "WeChat has been properly described as a digital Swiss Army knife for modern life for Chinese users."[3] In addition to its multimedia sharing servings, it also offers services like mobile payment services and bookings.[4] In China, WeChat is used extensively by businesses, exceeding email in popularity.[5]

WeChat primarily runs on Android and IOS mobile devices.[6] However it also features Windows and Mac support.[7] WeChat stores a chat history on the user's device, which remains there so long as the device has sufficient storage, WeChat is not removed from the device, and the chat history is not intentionally deleted.[8] The chat history can also be backed up and stored on a Windows or Mac computer.[9]

---

[1] *See generally,* https://en.wikipedia.org/wiki/WeChat

[2] *See* https://help.wechat.com/cgi-bin/micromsg-bin/oshelpcenter?opcode=2&lang=en&plat=android&pid=1003364&id=120813euejvf141023eumfzy&Channel=WeChatOfficialWebsite

[3] *Moffa et al*., "Exploring the use of WeChat for qualitative social research: The case of Italian digital diaspora in Shanghai," Front Sociol. 2023; 8: 1144507; https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9998670/

[4] *Id*.

[5] *See e.g.,* https://www.bbc.com/worklife/article/20200707-why-email-loses-out-to-popular-apps-in-china ("almost 88% of 20,000 people surveyed used WeChat in their daily work communication. Phones, SMS and fax were used by 59.5%. Email was a distant third on 22.6%"); https://www.usatoday.com/story/tech/2020/09/18/wechat-connects-business-family-everything-china/5826467002/ ("WeChat has largely replaced work emails. . .")

[6] https://help.wechat.com/cgi-bin/micromsg-bin/oshelpcenter?opcode=2&lang=en&plat=android&pid=1003364&id=120813euejvf141023aa36rm&Channel=WeChatOfficialWebsite

[7] https://www.wechat.com/en/

[8] https://help.wechat.com/cgi-bin/micromsg-bin/oshelpcenter?opcode=2&lang=en&plat=android&pid=1001146&id=150915vvruve15091522e3eu&Channel=helpcenter

[9] https://help.wechat.com/cgi-bin/micromsg-

**B. ZHP's Use of WeChat**

ZHP utilized WeChat as a core part of its internal communications. [redacted]

In addition to internal communication, ZHP also utilized WeChat when communicating with its supply chain partners, [redacted]

WeChat is also referenced within metadata and technical files. [redacted]

bin/oshelpcenter?opcode=2&lang=en&plat=android&pid=1001146&id=120813euejvf141023ej3e2i&Channel=helpcenter



## III. ARGUMENT

Parties may be required to produce any documentation that is relevant and within their possession, custody, or control. Fed.R.Civ.P. 34(a). WeChat history and files located on ZHP's employees' and agents' mobile devices are not only highly relevant, but given its extensive reliance on WeChat, likely contains information not otherwise available. As discussed below, ZHP has possession or control over that information, either through direct ownership of the devices or through control of its agents.

### A. Overview of Law on Mobile Devices

Courts regularly require the production of information on mobile devices when in the possession, custody, or control of a party. *E.g., Sandoz, Inc. v. United Therapeutics Corp.*, No.

19-CV-10170, 2021 WL 2374349, at *2 (D.N.J. June 10, 2021) (requiring collection, search, review, and production of text messages from cell phone) (Ex. V1 hereto); *Stewart v. First Transit, Inc.*, No. CV 18-3768, 2019 WL 13027112, at *2 (E.D. Pa. Sept. 3, 2019) (ordering production of GSP and cellphone data) (Ex. V2 hereto); *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 4:18-CV-06037-DGK, 2019 WL 3291570, at *2 (W.D. Mo. July 22, 2019) (compelling production of text messages from senior employees' business phones) (Ex. V3 hereto); *Lalumiere v. Willow Springs Care, Inc.*, No. 1:16-CV-3133-RMP, 2017 WL 6943148, at *2 (E.D. Wash. Sept. 18, 2017) (compelling production of text messages and emails from workphones) (Ex. V4 hereto). *See also Stinson v. City of New York*, No. 10 CIV. 4228 (RWS), 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016) (personal devices issued to employees by party employer were subject to preservation obligation) (Ex. V5 hereto); *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 JS AKT, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (requiring preservation of information contained on cellphones and personal digital devices) (Ex. V6 hereto). Like any other production request, propriety of mobile/personal device production is determined by whether the information is relevant and within the possession, custody, or control of the party. *See Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at *1 (E.D. Mich. June 9, 2020) (analyzing request to produce mobile devices under Rule 34) (Ex. V7 hereto).

Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." *In re Asbestos Prod. Liab. Litig.*, No. CV 21-420, 2021 WL 4902338, at *2 (E.D. Pa. Oct. 21, 2021) (Ex. V8 hereto). Various types of information on mobile devices have been found relevant, including text messages, emails, and social media applications like WeChat. *See e.g., Sinclair v. Cambria Cnty.*, No. 3:17-CV-149, 2018 WL 4689111, at *2 (W.D. Pa. Sept. 28, 2018) (text

messages regarding employee's job performance relevant to employment-discrimination claim and "of at least some importance to the litigation") (Ex. V9 hereto); *Lalumiere*, 2017 WL 6943148 at * (compelling production of text messages and emails from workphones); *Brooks Sports, Inc. v. Anta (China) Co.*, No. 117CV1458LOTCB, 2018 WL 7488924, at *13 (E.D. Va. Nov. 30, 2018), *report and recommendation adopted*, No. 1:17-CV-1458, 2019 WL 969572 (E.D. Va. Jan. 11, 2019), *order clarified*, No. 1:17-CV-1458, 2019 WL 969569 (E.D. Va. Feb. 5, 2019) (sanctioning party to a business dispute for failing to preserve WeChat communications used for substantive business communications) (Ex. V10 hereto).

Federal courts construe "control" very broadly. *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991) (citing *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989)). "So long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Cath. Med. Ctr. V. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004). And control includes information "reasonably available to the responding [party] from his employees, agents, or others subject to his control." *In re Glob. Power Equip. Grp. Inc.*, 418 B.R. 833, 841 (Bankr. D. Del. 2009). *See also Gerling Intern. Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir.1988) (litigating parent corporation has control over documents in the physical possession of its wholly owned subsidiary). Accordingly, courts have found that employers have possession, custody or control employee's mobile devices when the employer provided the device. *Stinson*, 2016 WL 54684 at *5 (police department issued smartphones within possession, custody, or control of city). And courts have found that business information maintained on an employee's personal device is still within the control of the employer. *Matter of Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) ("an employer has 'control' of a current employee and the legal right to obtain business communications from a current employee

regardless of whether the communication is located on a personal cell phone") (Ex. V11 hereto). *See also Alter*, 2014 WL 4966119 at *10.

### B. ZHP's WeChat Data is Relevant

As demonstrated in the numerous examples provided, *supra*, there can be no serious dispute about whether the WeChat data is relevant. [redacted]

### C. ZHP has Possession, Custody, or Control of Mobile Devices

As to the second prong, evidence of ZHP's possession, custody, and control of the WeChat information abounds.

First, at least some ZHP employees had company provided mobile devices. *E.g.,* Ex. O, (Excerpt from Deposition of Yuelin Hu) at 30:09 – 31:10 ("The company did provide a cell phone."). Those devices are clearly within the possession, custody, or control of ZHP. *Lalumiere*, 2017 WL 6943148 at *2 ("[a] company controls the text messages of its employees on work phones, as well as the emails of its employees via company email accounts"); *Stinson,* 2016 WL 54684 at *5 (police department issued smartphones within possession, custody, or control of city); *Bright v. Dennis Garberg & Assocs., Inc.*, No. CV 10-7933 AHM(JCX), 2011 WL 13150146, at *5 (C.D. Cal. Nov. 15, 2011) (responsive documents are on the work laptops of defendants' employees are within defendants' possession, custody or control) (Ex. V12 hereto). As those devices are owned and/or paid for by ZHP and subject to its control, they

should be searched, and responsive information produced.

Further, since the WeChat material itself was created as part of a regular practice of ZHP and for the purpose of carrying out ZHP's business, that information would be property of ZHP and subject to its control. *Matter of Skanska USA Civ. Se. Inc.*, 2021 WL 4953239 at *3 ("an employer has 'control' of a current employee and the legal right to obtain business communications from a current employee regardless of whether the communication is located on a personal cell phone"). *See also Ice Corp. v. Hamilton Sundstrand Corp.,* 245 F.R.D. 513, 521 (D. Kan. 2007) (if a party does have legal ownership, as here, the court finds a strong indication that defendants possess the very definition of "control" over these documents). Factors courts have looked at in distinguishing corporate documents over which an entity would have control and personal documents include whether it was a regular practice to generate the documents and the purpose for which the documents were generated. *McBryar v. Int'l Union of United Auto. Aerospace & Agr. Implement Workers of Am*., 160 F.R.D. 691, 696 (S.D. Ind. 1993). Here, ZHP's use of WeChat was not an irregular event by a few low-level employees, but rather a regular and mandated practice, utilized by all levels of ZHP's organization. [redacted]

And it is indisputable that this WeChat material was

generated for ZHP's business purposes.

Finally, [REDACTED] This policy confirms ZHP's "right to access upon demand" and thus further demonstrates its control over its employees' WeChat material. *Resol. Tr. Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110 (D. Colo. 1992) (party with right to obtain on demand has control); *see also Halabu Holdings*, 2020 WL 12676263 at * (noting that workplace practice and agreements regarding right of access are entitled to judicial respect when determining control).

**D. Chinese Privacy Laws Cannot Shield Production**

US Courts attempt to strike a balance between the employer's right to control against the privacy rights of the individual employee. As to Chinese employee privacy, that exact issue was considered in *Brooks Sports, Inc.*. 2018 WL 7488924 at *13. There, as here, a Chinese entity was subject to a motion to compel WeChat communications on its employees' personal devices. *Id.* There, as here, the evidence was that WeChat was "used extensively by [defendant's] employees to conduct business[,]" including by high-level executives. *Id.* The Chinese entity contended that it did not violate its discovery obligations because its employees refused to allow their devices to be searched and that under Chinese privacy law it could not produce them. *Id*. at *9 and 13. The magistrate judge in *Brooks Sports* rejected that argument and recommended sanctions and default judgment against Anta:

> **Anta may not avoid penalties for their claimed inability to produce those communications. Anta clearly knowingly allowed its employees to use WeChat for substantive business communications through only their personal accounts and devices**.

* * *

> **Anta should not be able to conveniently use Chinese law to shield production of communications responsive to discovery requests when it could have set up Anta-controlled WeChat accounts for its employees' use which would not have the same issues regarding Chinese privacy laws.**

*Id*. (emphasis added). And that recommendation was ultimately adopted. *Brooks Sports, Inc. v. ANTA (China) Co.*, No. 1:17-CV-1458, 2019 WL 969572, at *1 (E.D. Va. Jan. 11, 2019), *order clarified*, No. 1:17-CV-1458, 2019 WL 969569 (E.D. Va. Feb. 5, 2019) (clarifying non-related matter) (Ex. V13 hereto).

## IV. CONCLUSION

ZHP regularly and frequently used WeChat for internal and external communications about all aspects of its business, including highly relevant and core issues in this litigation. Further, ZHP's documents demonstrate that its employees can obtain their WeChat histories, and in fact do so on a regular basis. And ZHP's own documents indicate that using WeChat was part of company policy and that the company had control over its employees' and agents' WeChat use, including the information stored on their devices. Accordingly, those communications should have been subject to preservation and collection, and should now be produced, just like all other relevant ESI sources.

WHEREFORE, Plaintiffs respectfully request an Order from this Court directing ZHP to include WeChat data in its custodial sources, and to produce any responsive documents identified therein pursuant to the ESI protocol.

Dated: September 15, 2023

Respectfully submitted,

/s/ George T. Williamson
George T. Williamson
FARR, FARR, EMERICH,
HACKETT, CARR & HOLMES,

/s/ David Hobbs
David Hobbs
FLEMING, NOLEN & JEZ,
L.L.P.

P.A.
99 Nesbit Street
Punta Gorda, FL 33950
Phone: (941) 639-1159
gwilliamson@farr.com

2800 Poast Oak Blvd.
Suite 4000
Houston, Texas 77056
Phone: (713) 621-7944
david_hobbs@fleming-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system. In addition, I certify that unredacted versions of the foregoing will be served contemporaneously upon liaison counsel for Defendants as well as the Court.

/s/ George T. Williamson
George T. Williamson