2021 WL 1192664
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

SANDOZ, INC., et ano., Plaintiffs,
v.
UNITED THERAPEUTICS CORP., et ano., Defendants.

Civil Action No. 19-cv-10170
|
Signed 03/29/2021

**Attorneys and Law Firms**

Thomas D. Pease, Quinn Emanuel Urquhart & Sullivan, LLP, Jenny R. Kramer, Alston & Bird LLP, New York, NY, for Plaintiff/Counter Defendant Sandoz Inc.

Kevin Harry Marino, John D. Tortorella, Marino Tortorella & Boyle, PC, Chatham, NJ, Thomas D. Pease, Quinn Emanuel Urquhart & Sullivan, LLP, Jenny R. Kramer, Alston & Bird LLP, New York, NY, for Plaintiff/Counter Defendant RareGen, LLC.

Adrienne C. Rogove, Stephen M. Orlofsky, Michael Ray Darbee, Blank Rome, LLP, Princeton, NJ, for Defendant/Counter Claimant United Therapeutics Corporation.

**OPINION AND ORDER OF THE SPECIAL DISCOVERY MASTER REGARDING PLAINTIFF'S REQUESTS FOR ADDITIONAL DISCOVERY RELATING TO CELL PHONE TEXT MESSAGES OF DEFENDANT**

LINARES, J.

*1 This matter comes before the Special Master by way of a Letter dated February 8, 2021 ("Request") from counsel for Plaintiff Sandoz, Inc. requesting additional discovery relating to cell phone text messages of Defendant United Therapeutics Corporation ("UTC"). The Special Master has reviewed the submissions, including the February 16, 2021 Response from UTC and Plaintiff's March 3, 2021 reply, and the relevant controlling law. For the reasons set forth below, the Special Master hereby **GRANTS IN PART** and **DENIES IN PART** the relief requested by the Plaintiff.

**I. DISCUSSION**

The Special Master presumes that the parties are familiar with the facts surrounding the underlying action and claims. Accordingly, the Special Master will only recite the relevant procedural and factual background necessary to dispose of the dispute at hand.

Sandoz seeks additional discovery with respect to cell phone text messages of UTC custodians. Specifically, Sandoz requests an Order compelling UTC to:

1) Provide a list of custodian phones that UTC has collected and reviewed in the merits phase and, for each device, identify the first in time and last in time text message present in that collection;

2) Review and produce text messages to remedy gaps listed in Exhibit 16;

3) Review and produce specific text messages UTC had with Smiths and Accredo

4) Apply the same methodology that UTC used during the preliminary injunction (PI) phase to identify responsive text messages during the merits phase; and

5) Produce messages from the phones of Beth Rhodes and James Edgemond

Sandoz points to the lack of text messages produced by UTC (only 70 compared to "thousands" that Sandoz has produced) and the recent discovery that one of UTC's custodians, Alejandra Arciniegas, deleted all of his text messages prior to August 2020, as the reason this additional discovery is necessary. Sandoz argues that there are gaps in UTC's production because UTC applied a narrower and more restrictive process for identifying responsive texts in the merits phase than it used during the PI phase, and that UTC failed to provide additional context-related messages, or in some cases, no text messages at all, from custodians who, based on messages produced from other custodians, did send or receive relevant text messages.

In response, UTC argues that "Sandoz cannot point to a single text message that UTC was obligated to preserve yet failed to produce." UTC also argues that there is nothing nefarious about the fact that it made supplemental text message productions or produced additional text messages in

response to specific inquiries from Sandoz, as that is a normal part of discovery and the meet-and-confer process.

As to the first item in the relief requested by Sandoz, UTC has not provided any reason why it should not be ordered to produce a list of custodian phones that UTC has collected and reviewed in the merits phase and, for each device, identify the first in time and last in time text message present in that collection. Sandoz has cited a number of inconsistent statements made by UTC with respect to its production of text message discovery, and when viewed in light of the issue relating to Mr. Arciniegas' text messages, the information requested by Sandoz is reasonable. Accordingly, UTC shall produce a list of custodian phones it has collected and reviewed in the merits phase and, for each device, identify the first in time and last in time text message present in that collection.

 *2  Next, Sandoz is seeking an order that UTC apply the same methodology and criteria that UTC used during the preliminary injunction (PI) phase to identify responsive text messages during the merits phase. In the Special Master's November 16, 2020 Order, the Special Master ordered that UTC run the parties' previously agreed upon PI search terms across all custodians for the merits-phase of the action. The Special Master assumes UTC has complied with this Order, as Sandoz has not specially alleged that UTC has failed to do so. Instead, the chief complaint of Sandoz appears to be that UTC has failed to produce additional messages that supply the surrounding context for produced messages identified in Exhibit 16, because, as UTC reasons, those context-related messages did not hit on search terms.

The Special Master is convinced that Sandoz has established gaps in the UTC production with respect to surrounding context-related text messages. Accordingly, for each of the text messages identified in Exhibit 16, UTC must produce the related context-surrounding text messages, including the preceding text message or responding text message if they exist. If they do not exist, UTC must so state, and provide an explanation based on information available to it why they do not exist.

With respect to the text messages of Beth Rhodes and James Edgemond, to the extent Sandoz has identified missing context-related text messages from these two custodians, UTC is ordered to produce them.

With respect to UTC's text-message exchanges with Smiths and Accredo respectively, Sandoz has identified specific text-message discussions in Exhibits 17, 18 and 19 that it asserts lack the surrounding context messages, which UTC either has withheld and refused to produced or do not exist. The Special Master agrees with Sandoz that UTC should be ordered to produce these text messages. If they do not exist, UTC should provide an explanation based on information reasonably available to it, why they do not exist.

To the extent Sandoz requests that the Special Master order UTC to "apply the same criteria and methodology that UTC used to identify responsive text messages during the PI-phase against all of the text messages that UTC collected", this request is too vague as written and is denied without prejudice. In any event, the more specific relief granted by the Special Master with respect to the production of surrounding context-related text messages should address Sandoz's concern for messages it has identified.

The Special Master acknowledges that both parties have accused the other of applying one set of rules to itself while seeking to impose another set of rules against the other. To a certain extent, both parties may be equally guilty. For example, UTC argues that while Sandoz is now requesting context-related messages during the merits phase, during the PI phase, Sandoz refused to produce context related text messages during the PI phase when requested by UTC. Conversely, Sandoz argues that during the merits phase, it has been producing context related text messages when requested by UTC, but when Sandoz made the same request to UTC, UTC refused.

The matter presently before the Special Master relates to text message production during the merits phase. Sandoz has produced context-related messages during the merits phase (although UTC argues it has done so "selectively"), and the Special Master is convinced that Sandoz has identified gaps in UTC's production relating to specific text message discussions. The response by UTC that those additional messages that provide surrounding context "don't hit on specific search terms" is not sufficient. If the context-related messages exist, they must be produced. UTC may be correct that it had no duty to preserve text messages during a certain period of time for certain custodians, but that is not an issue to be decided now, and the first question that must be answered is whether or not those text messages exist. The Special Master is not convinced that UTC has provided sufficient information

to Sandoz as to whether those messages exist and if not, why not.

## II. ORDER

*3 For the foregoing reasons, it is on this 29th day of March 2020,

**ORDERED** that UTC produce a list of custodian phones that UTC has collected and reviewed in the merits phase and, for each device, identify the first in time and last in time text message present in that collection; and it is further

**ORDERED** that UTC produce additional text messages that provide surrounding context for produced messages identified in Exhibit 16, including text messages that provide such surrounding context from the phones of Beth Rhodes and James Edgmond. If surrounding context-related messages do not exist, UTC must so state, and provide an explanation based on information available to it why they do not exist; and it is further

**ORDERED** that UTC produce additional text messages with Smiths and Accredo, respectively, that provide surrounding context for messages/discussions identified in Exhibits 17, 18 and 19.

**SO ORDERED**.

**All Citations**

Slip Copy, 2021 WL 1192664

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.