Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 1 of 7 PageID: 87245

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by Raymond v. City of New York, S.D.N.Y., December 2, 2020

2016 WL 54684
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Sharif STINSON, et al., Plaintiffs,
v.
CITY OF NEW YORK, et al., Defendants.

10 Civ. 4228 (RWS)
|
Signed January 2, 2016
|
Filed 01/05/2016

**Attorneys and Law Firms**

Cohen & Fitch LLP, 225 Broadway, Suite 2700, New York, NY 10007, By: Gerald M. Cohen, Esq., Joshua P. Fitch, Esq., The Law Offices of Jon L. Norinsberg, Esq., 225 Broadway, Suite 2700, by: Jon L. Norinsberg, Esq., New York, NY 10007, Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, by: Benjamin J. Gildin, Esq., Christopher T. Cook, Esq., Elinor C. Sutton, Esq., Jennifer D. Bishop, Esq., Kevin A. Janus, Esq., Steig D. Olson, Esq., Stephen R. Neuwirth, Esq., New York, NY 10010, for the Plaintiffs.

Zachary W. Carter, Corporation Counsel of the City of New York, 100 Church Street, by: Qiana C. Smith-Williams, Esq., Joanne M. McLaren, Esq., Lisa M. Richardson, Esq., Sheila Weinstein, Esq., Steven M. Silverberg, Esq., Suzanna P. Mettham, Esq., New York, NY 10007, for the Defendants.

OPINION

Sweet, D.J.

 \*1 The Plaintiffs, a class of individuals who were allegedly issued summonses without probable cause, have filed a letter-motion seeking sanctions for spoliation of evidence against the Defendants, the City of New York, fifty unnamed New York Police Department ("NYPD" or the "Department") officers, and former NYPD Commissioner Raymond W. Kelly (collectively, the "City" or the "Defendants"). Based on the conclusions set forth below, the motion is granted in part and denied in part.

**Prior Proceedings**

This is a strenuously contested class action in which the Plaintiffs have alleged that the City has engaged in a pattern and practice of stopping, seizing, and issuing summonses to individuals without probable cause, in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (See generally Amended Complaint, Dkt. No. 8.) The issues presented are consequential and sensitive. Discovery disputes have been manifold, culminating in the instant motion.

The Plaintiffs' allegations and the factual background of the case are laid out in the Court's April 23, 2012 Opinion on class certification. See 🚩 Stinson v. City of New York, 282 F.R.D. 360, 364-67 (S.D.N.Y. 2012). Background information on the process of discovery in this case can be found in another Opinion dated July 23, 2015, which resolved, among other issues, a motion from the Plaintiffs for the discovery of electronically stored information ("ESI"). See Stinson v. City of New York, No. 10 Civ. 4228, 2015 WL 4610422 (S.D.N.Y. July 23, 2015). That Opinion granted the Plaintiffs most of the relief they asked for, including access to the ESI of several dozen custodians within the NYPD. See id. at \*7.

The instant motion was initiated by a letter from the Plaintiffs, dated June 29, 2015. (Dkt. No. 222.) After receiving an extension of time (Dkt. No. 236), the Defendants filed their opposition papers on September 11, 2015. (Dkt. No. 246.) The Plaintiffs replied on October 3, 2015. (Dkt. No. 249.) Defendants filed a sur-reply on October 9, 2015, (Dkt. No. 254), and the motion was heard on October 14, 2015.

**Applicable Standard**

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." 🚩 West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citing *Black's Law Dictionary* 1401 (6th ed. 1990)). A district court has "broad discretion" in crafting a proper sanction for spoliation, but should focus on three priorities in doing so: to deter parties from engaging in spoliation, to place the risk of an erroneous judgment on the party who wrongfully created the risk, and to restore the prejudiced party to the same position he or she would have been in absent the wrongful

**Stinson v. City of New York, Not Reported in Fed. Supp. (2016)**

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 2 of 7 PageID: 87246

destruction of evidence. Id. Among the permissible sanctions for spoliation is "an inference that the evidence would have been unfavorable to the party responsible for its destruction." Kronisch v. United States, 150 F. 3d 112, 126 (2d Cir. 1998).

**Findings of Fact**

a) The City's Litigation Hold Was Late and Ineffective.

**\*2** The City did not issue any litigation hold until August 8, 2013, more than three years after the filing of the Complaint in this case. (Decl. of Richard Lovina, Dkt. No. 246, Ex. C, ¶ 29.) A preservation notice to NYPD members of service was distributed via a FINEST message on August 20, 2013, which was to be read to all commands. (Dkt. No. 222 Ex. N.) The evidence indicates that the litigation hold was not effectively communicated, and none of the officers who were named in the City's initial disclosures acknowledged receiving it. (See, e.g., Dkt. No. 222 Ex. O at 37-38; id. Ex. P at 330.)

b) The City's Policies Provided for the Destruction of Evidence.

At the time of the litigation hold, the NYPD's document destruction processes were governed by Operations Order 44, which specified the length of time the Department would be required to retain various categories of documents. (See Dkt. No. 222 Ex. AN.) Notably, Order 44 authorized the destruction of most bureau chief memos after three years, police officers' monthly performance reports after four years, and criminal court summonses after four years. (Id. at 3-4.) It also included information on how to utilize an industrial shredding truck to destroy documents en masse. (See id. at 1.)

The NYPD's system for handling ESI similarly provided for the destruction of evidence. As explained by the City's Fed. R. Civ. P. 30(b)(6) witness, Lieutenant Paul Scott, although the NYPD did not have a specific policy with regards to the destruction of email communications, it did impose a hard size limit on officers' inboxes, and that when officers hit that limit, "they delete." (See Scott Dep. Tr., Dkt. No. 22 Ex. J at 157-58.) As with Operations Order 44, these email policies provided that unless specific steps were taken, relevant NYPD documents would be destroyed.

c) The City Destroyed Materials Related to CompStat Meetings.

Certain hard-copy materials relating to CompStat meetings – gatherings of senior police personnel at which crime- and performance-related data is analyzed and major policy priorities are set – have been shredded, a fact acknowledged by Lieutenant Scott at his deposition. (Id. at 105-06.) These packets contained data on enforcement activity. (Id. at 102, 104.) Lieutenant Scott also destroyed his own handwritten notes from the meetings. (Id. at 141.)

d) The City Destroyed Activity Reports.

Similarly, testimony by several officers indicates that there is a general practice of regularly destroying individual officers' monthly activity reports. (See, e.g., Gonzalez Dep. Tr., Dkt. No. 222 Ex. Z at 30-31.) The Plaintiffs argue that these reports are relevant to their case because each officer's supervisor is required to provide written comments about his or her performance; if there is an unofficial summons quota policy within the NYPD, it might be reflected in those comments. (See Letter, Dkt. No. 222, at 8-9; Activity Report, Dkt. No. 222 Ex. AD.)

e) Text Messages Sent and Received by Key Personnel Were Not Preserved.

The Plaintiffs allege (Dkt. No. 222 at 7-8) and the Defendants do not dispute (Dkt. No. 246 at 6-7) that the City has not made any effort to preserve or produce text messages between NYPD officers. Lieutenant Scott testified that senior NYPD officers text each other on Department-issued smartphones, which are issued to all officers ranked Captain and above, and to lower-ranking officers as needed. (Dkt. No. 222 Ex. J at 158-59.) Scott also testified that there is no Department policy regarding the preservation or destruction of text messages. (Id. at 159.)

f) Few Responsive Documents Were Produced.

**\*3** Defendants produced few or no documents from the accounts of several key custodians, which the Plaintiffs argue is indicative of spoliation. For example, no emails were produced from the files of former Commissioner Raymond

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 3 of 7 PageID: 87247

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

Kelly, former Chief of Department Joseph Esposito, former Chief of Patrol Robert Gianelli, and former Chiefs of Transit James Tuller and Raymond Diaz. Fewer than five emails were produced from the files of former Manhattan Borough Commander Thomas Purtell and former First Deputy Commissioners George Grasso and Rafael Pineiro. Fewer than 20 emails were produced from the files of William Morris, former Commander of the Criminal Justice Bureau. These numbers of responsive documents from key NYPD officials are minute given the breadth of the search terms employed, which included common terms like "activity," "performance," and "record," as well as common names such as "Miller" and "Rodriguez."

The City explains that the relative paucity of ESI produced is a result of the fact that "the Police Department on the whole did not operate via email." (D.'s Opp., Dkt. No. 246 at 6.) This contention is supported by signed declarations from former Commissioner Kelly and former Chief Esposito, each of whom stated that he did not use email to communicate regarding summons policy or officer performance. (See id. Ex. A. ¶¶ 7-9; id. Ex. B ¶ 3.)

However, these assertions are contradicted by emails that the Plaintiffs have obtained through other means. For instance, the Plaintiffs attached a copy of a September 27, 2010 email from Commissioner Kelly's BlackBerry in which he approves the transfer of a police officer from a precinct in Queens to one in the Bronx, based in part on her having told two officers to stop writing summonses. (Dkt. No. 22, Ex. AF.) [1] Similarly, the Plaintiffs point to three emails sent to Chief Esposito regarding CompStat meetings which, although not as directly relevant as the email from Commissioner Kelly, do touch on summons and performance issues and contain requested search terms. (Dkt. No. 249 Exs. 4-6.) None of these emails were obtained from Commissioner Kelly or Chief Esposito's email files; the September 2010 email from Commissioner Kelly was discovered in a hard-copy grievance file kept by the NYPD's Office of Labor Relations, while the emails sent to Chief Esposito were obtained from the files of other members of service. (See Pl's. Reply, Dkt, No. 249 at 6.) [2]

*4 The fact that relevant and responsive emails existed at one time in these officers' email accounts, yet no such emails were ultimately produced from those accounts, further indicates that relevant documents were deleted.

**The Motion for Sanctions is Granted**

In order to merit an adverse inference, the party seeking sanctions must establish 1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed, 2) that the records were destroyed with a culpable state of mind, and 3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Chin v. Port Auth. of N.Y. & N.J., 685 F. 3d 135, 162 (2d Cir. 2012).

**A. The City Was Obligated to Preserve Evidence Relating to its Handling of Summonses.**

The obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation. Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). In this case, the latest point at which that duty would have arisen would be May 25, 2010, the day the Plaintiffs filed their Complaint. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). However, the Plaintiffs point out that summons quotas were a major issue in Floyd v. City of New York, an earlier challenge to the NYPD's "stop and frisk" program. See Floyd v. City of New York, 283 F.R.D. 153, 164-66 (S.D.N.Y. 2012). Since the existence of an alleged quota was a "[h]otly contested" issue in Floyd, id. at 164, and that case continued up to and beyond the filing of the Complaint in the instant litigation, the City has been on notice that evidence relating to an alleged summons quota is relevant to litigation since at least January 31, 2008, the date of the filing of the Complaint in Floyd, which contained significant quota-related allegations. (See Dkt. No. 222 Ex. G. ¶¶ 44, 83(b) (iii).) The duty to preserve evidence therefore arose on that date. See M & T Mortg. Corp. v. Miller, No. 02 Civ. 5410, 2007 WL 2403565, at *5 (E.D.N.Y. Aug. 17, 2007) (duty to preserve documents dated from the filing of an earlier case where the allegations in the two complaints were "strikingly similar"). [3]

At multiple points in its briefing, the City argues that because it would be unreasonable to require it to preserve any and all documents indefinitely, it should be held to no preservation obligations at all. It notes that due to the size and scope of the NYPD's work, and the frequency of litigation involving the Department, a rule that any labor grievance or tangentially-related lawsuit triggers a broad duty to preserve would amount to a "perpetual litigation hold." (D.'s Opp., Dkt. No,

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 4 of 7 PageID: 87248

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

246 at 2.) That statement is inarguable, but it does not justify a three-year failure to issue a litigation hold in this action, or a failure to preserve documents while the Floyd case – in which the issue of an alleged quota was "[h]otly contested," 283 F.R.D. at 164 – remained pending. Similarly, the Defendants argue that the motion for sanctions should be denied because Plaintiffs demanded that the City preserve "every arguably relevant document within the NYPD." (D.'s Opp., Dkt. No. 246 at 2.) While the Plaintiffs have made overbroad discovery requests before, see, e.g., Stinson v. City of New York, No. 10 Civ. 4228, 2015 WL 4610422, at *4 (S.D.N.Y. July 23, 2015), the reasonableness or unreasonableness of one party's demands does not determine the scope of the other party's obligation to preserve documents. The Plaintiffs' putative overbroad demands do not excuse the City's failure to issue a litigation hold, to properly supervise its implementation, or to suspend document retention policies that would foreseeably lead to the spoliation of evidence.

*5 The City has similarly failed to make any effort to preserve text messages sent between NYPD personnel using department-issue smartphones. In its briefing, the City argues that it was under no obligation to preserve messages kept on officers' personal electronic devices, without discussing any preservation obligation regarding texts sent on Department-issued devices. (See D.'s Opp., Dkt. No. 246 at 6.) While the federal courts are divided on when and how a party seeking discovery can access ESI stored on an employee's personal device, compare Alter v. Rocky Point Sch. Dist., No. 13 Civ. 1100, 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) ("However, to the extent that the School District employees had documents related to this matter, the information should have been preserved on whatever devices contained the information (e.g. laptops, cellphones, and any personal digital devices capable of ESI storage).")

with Cotton v. Costco Wholesale Corp., No. 12-2731, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013) (rejecting document request for text messages on employees' personal phones), the City does not adequately consider its obligations with respect to information stored on officers' Department-issued devices. Lieutenant Scott acknowledged in his 30(b)(6) deposition that all officers above the rank of Captain, and some below it, were issued such devices, and that they could use those devices to text each other. (Dkt. No, 222 Ex. J. at 158-59.) As such, those devices were within the possession, custody, or control of the City, and were subject to the same preservation obligation as the City's other ESI. See Congregation Rabbinical Coll. Of Tartikov, Inc. v. Village of Pomona, No. 07 Civ. 6304, 2015 WL 5729783, at *17 (S.D.N.Y. Sept. 29, 2015). [4]

B. The City Was Grossly Negligent in Destroying Evidence.

The "culpable state of mind" required for the imposition of an adverse inference is determined via a case-by-case approach, and may be satisfied where the party destroying evidence acted in bad faith, with gross negligence, or even with simple negligence. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002). [5]

As an initial note, there is no basis to conclude that the City acted in bad faith. The Plaintiffs cite to Arista Records LLC v. Usenet.com, Inc., 608 F. Supp. 2d 409, 438-39 (S.D.N.Y. 2009) for the proposition that a repeated failure to produce relevant documents or a credible story regarding their whereabouts can support a finding of bad faith. That case is distinguishable on the facts, however. In Arista, a defendant personally removed incriminating webpages and ESI after the commencement of the litigation; the Court noted that the Defendants "took affirmative steps" to destroy potentially harmful data and to produce "sanitized" versions in discovery. Id. This case lacks any indicia of the sort of intentional deception that was present in Arista; the City's conduct shows a broad failure to take its preservation obligations seriously rather than any deliberate attempt to lie or mislead.

The City's conduct does, however, support a finding of gross negligence. Due to the lack of a clear standard, that determination is more art than science:

> *6 Neither negligence or gross negligence has been clearly defined in the context of discovery misconduct, such as spoliation. These terms simply describe a continuum. Conduct is either acceptable or unacceptable. Once it is unacceptable the only question is how bad is the conduct. That said, it is well established that negligence involves unreasonable conduct in that it creates a risk of harm to others.

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 5 of 7 PageID: 87249

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

F.D.I.C. v. Horn, No. 12 Civ. 5958, 2015 WL 1529824, at *12 (E.D.N.Y. Mar. 31, 2015) (quoting Williams v. N.Y. City Transit Auth., No. 10 Civ. 0882, 2011 WL 5024280, at *7 (S.D.N.Y. Oct. 19, 2011)). Judge Scheindlin, citing Prosser and Keaton's treatise on torts, describes gross negligence as "a failure to exercise even that care which a careless person would use." Pension Comm. Of Univ. of Montreal Pension Plan v. Banc of Am. Sees., 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010), *abrogated in part on other grounds by* Chin, 685 F.3d at 162. The Defendants argue that despite "an admitted lack of diligence," the NYPD's various failures to preserve documents "do[ ] not rise in any way to the level of gross negligence." (Decl. of Richard Lovina, Dkt. No. 246, Ex. C, ¶ 33.) However, the totality of the spoliation constitutes gross negligence on the part of the City.

The first and most egregious instance of gross negligence was the City's failure to issue any litigation hold during the first three years of this litigation. Although the failure to issue a litigation hold does not necessitate a finding of gross negligence, it is a factor in determining whether sanctions should issue. Chin, 685 F.3d at 162. While the Second Circuit's decision in Chin leaves open the question of whether a sufficiently indefensible failure to issue a litigation hold could justify an adverse inference on its own, the question need not be addressed here because there are additional factors supporting such a finding.

One such factor is the failure to properly implement the litigation hold even after it was issued. "[A] litigation hold is not, alone, sufficient; instead compliance must be monitored." Mastr Adjustable Rate Mtgs. Trust 2006-OA2 v. UBS Real Estate Sec. Inc., 295 F.R.D. 77, 85 (S.D.N.Y. 2013). Here, the communication of the litigation hold was inconsistent at best; although the hold was to be read to all commands via a FINEST message, none of the police officers named in the City's initial disclosures acknowledged receiving it. The Plaintiffs also cite to instances of NYPD personnel destroying relevant hard copy documents, from junior officers like Deidre Gonzalez throwing away her monthly activity reports (Dkt. No. 222 Ex. Z at 30-31) to senior officers like Lieutenant Scott shredding materials from CompStat meetings. (Dkt. No. 22 Ex. J at 105-06.) In addition to these incidents, the City has not submitted evidence that, even after the message regarding document preservation was ultimately sent, efforts were made to ensure that it was effectively received throughout the Department.

The failure to circulate a litigation hold, and to ensure that it was properly implemented, was particularly damaging in the context of the NYPD's standing document retention policies, which ensured that inaction on the part of the City would result in the destruction of evidence. The Defendants point out that Operations Order 44, which provides for the destruction of hard-copy documents, is permissive and not mandatory. (D.'s Opp., Dkt. No. 246, at 9.) However, the fact that Order 44 was on the books made document destruction foreseeable. The NYPD cannot credibly argue that, despite setting guidelines for document destruction and providing an industrial shredding truck for that purpose, it did not know or intend that documents would be destroyed. Similarly, Lieutenant Scott's Rule 30(b)(6) testimony amounts to an admission that the Department knew that officers' email inboxes would hit their space limits – and that those officers would delete potentially relevant ESI when they did.[6] Although the paucity of relevant emails produced from the inboxes of key decisionmakers does not establish that ESI was deleted, it is consistent with such spoliation and with Lieutenant Scott's acknowledgement that deletion of emails was a foreseeable consequence of the NYPD's storage policy.

**C. The Destroyed Evidence Was Likely Relevant to the Plaintiffs' Claims.**

*7 The Plaintiffs are also required to establish that the spoliated evidence was relevant to their claims or defenses, Residential Funding, 306 F. 3d at 108-09. In order to justify an adverse inference, there must be "sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." Id. at 109. However, courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence; instead, the Court is simply required to insure "that the party seeking the inference had adduced enough evidence of the contents of the missing materials such that a reasonable jury could find in its favor." Id. at 109, 109 n.4.

In cases such as this one where there is sufficient evidence to sustain a finding of gross negligence, that showing "will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Id. (citing Reilly v. Natwest Markets Grp. Inc., 181 F.3d 253, 267-68 (2d Cir. 1999)). Therefore, the

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 6 of 7 PageID: 87250

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

evidence satisfying the culpable state of mind factor will "frequently" also satisfy the relevance factor. Id.

The evidence adduced thus far indicates that at least some of the destroyed documents will be relevant to the Plaintiffs' claims. For instance, Commissioner Kelly's September 2010 email, while of only minute probative value in itself, is at least one instance of a senior NYPD official making a negative personnel decision after being presented with information about an officer's summons-related performance. Lieutenant Scott's handwritten notes might also have relevance; given the data-driven nature of CompStat meetings, summons activity may have been discussed. Additionally, a handful of emails from Captain Andrew Benjamin, produced via a third party, show his concern with the lack of arrests and summonses coming from junior officers and indicate that other documents from lower-level NYPD members might potentially support the Plaintiffs' claims. (See Dkt. No. 222 Exs. C-E.) These documents constitute some evidence of the Plaintiffs' putative quota, and taken together indicate that some portion of the documents that were lost could be relevant to that showing. See Byrnie v. Town of Cromwell Bd. of Educ, 243 F.3d 93, 109-10 (2d Cir. 2001). Recognizing the imperative that Courts "must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence," Residential Funding, 306 F.3d at 109, and the difficulty of establishing the nature of absent evidence, the Plaintiffs' showing is sufficient to satisfy the third prong.

### D. The Terms of the Adverse Inference

As sanctions for Defendants' spoliation, the Plaintiffs request a set of sixteen adverse inferences touching on almost every aspect of their case, including requests that the Court instruct the jury that a summons quota was in place and that Commissioner Kelly, Chief Esposito, and other senior NYPD officials made a conscious decision to implement it. (See Dkt. No. 222 at 13-15.) While the City's failure to preserve documents merits sanctions, the relief requested by the Plaintiffs would dictate success on seriously contested issues. Such an outcome would be out of proportion to the City's culpability and inappropriate given the litigation position of the Plaintiffs, who still face a steep evidentiary burden to establish the existence of an official policy, pattern, or practice sufficient to satisfy Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). The Plaintiffs are entitled to an inference that helpful evidence may have been lost, not relief from their obligation to prove their case.

*8 Given the City's lack of bad faith in its spoliation of evidence and the relatively limited showing of relevance made by the Plaintiffs, a permissive, rather than a mandatory adverse inference is warranted. See Quraishi v. Port Auth. of N.Y. and N.J., No. 13 Civ. 2706, 2015 WL 3815011, at *8 (S.D.N.Y. June 16, 2015). A permissive inference will ensure that the City faces consequences for its failure to take its preservation obligations seriously, but will not result in an unwarranted windfall for the Plaintiffs. The jury will be instructed that the absence of documentary evidence does not in this case establish the absence of a summons quota policy. Because this instruction is sufficient to advance "the prophylactic, punitive, and remedial remedies underlying the spoliation doctrine," no additional sanctions are required and the Plaintiffs' request for attorney's fees is denied. See Quraishi, 2015 WL 3815011, at *9.

### Conclusion

The Plaintiffs' motion for an adverse inference is granted in part and denied in part, as set forth above. The parties shall meet and confer regarding a schedule for completing all outstanding discovery and submitting a pretrial order; in the event that they are unable to come to an agreement, they are directed to appear for a conference at 4:00pm on Thursday, January 28 in Courtroom 18C, United States Courthouse, 500 Pearl

It is so ordered.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 54684

**Footnotes**

Case 1:19-md-02875-RMB-SAK   Document 2490-6   Filed 09/15/23   Page 7 of 7 PageID: 87251

Stinson v. City of New York, Not Reported in Fed. Supp. (2016)

1     The contents of the email and the related grievance are sealed due to concern for the officer's privacy. (See Dkt. No. 259.)

2     In their letter-briefs, the parties have exchanged inflammatory language regarding whether the existence of these emails establishes that these former senior NYPD officers committed perjury. (Compare, e.g., Pl.'s Reply, Dkt. No. 249 at 3 ("Commissioner Kelly's declaration, made under the penalty of perjury, contains demonstrably false information.") with D.'s Sur-reply, Dkt. No. 254, at 1 ("[Plaintiffs' counsel's] cavalier characterization of former NYPD Commissioner Raymond Kelly as committing perjury ... is astounding, not to mention professionally irresponsible.").) Any allegation of perjury, in addition to being outside the scope of the instant motion, is unsupported.

The September 2010 email from Commissioner Kelly contains only the word "Yes," in response to a one paragraph email suggesting the officer's transfer. Meanwhile, the emails to Chief Esposito, which also date from 2010 and 2011, were sent to a dozen or more recipients and did not elicit a reply from him. There is little reason to expect either man to recall these specific emails half a decade later. While the existence, relevance, and responsiveness of the emails may establish that they should have been produced in discovery, they come nowhere close to establishing perjury, which requires that a declarant state something that he does not believe to be true. See 18 U.S.C. § 1621.

3     Although the Plaintiffs argue that the duty to preserve evidence arose earlier, with the filing of a 2004 grievance alleging that NYPD supervisors were enforcing summons quotas, they acknowledge that the grievance culminated m an arbitration in 2006. When the arbitration process ended, any duty of preservation would have ended with it. Cf. Rabenstein v. Sealift, Inc., 18 F. Supp. 3d 343, 362-63 (E.D.N.Y. 2014).

4     This Opinion need not define the scope of the City's preservation obligations with respect to NYPD officers' personal devices, since i t s failure to preserve ESI on Department-issued devices is sufficient to establish negligence.

5     New revisions to Fed. R. Civ. P. 37(e) went into effect on December 1, 2015, after the motion was heard but before this Opinion was filed, setting new standards for federal courts considering the imposition of sanctions for the destruction of ESI. See 2015 U.S. Order 00017. Application of the new Rule would raise at least two thorny issues, including whether it must apply retroactively, see id. (declaring that the amendments "shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, *insofar as just and practicable*, all proceedings then pending." (emphasis added)), and whether it would apply to a situation such as this one where a party failed to preserve both ESI and hard-copy evidence. Since the motion was fully submitted prior to the effective date of the new Rule, and because the parties have not briefed these issues, it would not be "just and practicable" to apply the new Rule here.

6     The same is true of text messages sent and received on department-issued devices for senior personnel, on which Scott also acknowledged that there was no NYPD-issued preservation policy.

---

**End of Document**      © 2023 Thomson Reuters. No claim to original U.S. Government Works.