🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by [In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,](#) S.D.N.Y., April 11, 2022

2014 WL 4966119
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Lisa ALTER, Plaintiff,
v.
The ROCKY POINT SCHOOL DISTRICT,
and Mr. Michael Ring, Defendants.

No. 13–1100 (JS)(AKT).
|
Signed Sept. 30, 2014.

**Attorneys and Law Firms**

Sima Asad Ali, Ali Law Group, P.C., Huntington, NY, for Plaintiff.

Maureen Casey, Ahmuty, Demers & McManus, Esq., Albertson, NY, for Defendants.

### MEMORANDUM AND ORDER

A. KATHLEEN TOMLINSON, United States Magistrate Judge.

### I. PRELIMINARY STATEMENT

**\*1** This is a workplace discrimination action brought by Plaintiff Lisa Alter ("Plaintiff") against her former employer Rocky Point School District (the "School District") and Superintendent Michael Ring ("Superintendent Ring"). Beginning in 1987, Plaintiff commenced employment with School District and held a variety of positions throughout her tenure, including second grade teacher, Principal, and Director of Administration. Most recently, prior to her resignation in August 2010, Plaintiff served as Coordinator of Central Registration/Administrative Assistant within the Human Resource Department. While employed in this capacity, Plaintiff alleges that she was subjected to a hostile work environment on the basis of her gender and was retaliated against for complaining to the School District about her treatment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and New York State Human Rights Law ("NYSHRL"). Specifically, Plaintiff claims that during a meeting held on July 2, 2010, Superintendent Ring made multiple gender-based comments in Plaintiff's presence regarding a prospective job applicant. This incident caused Plaintiff discomfort and she lodged a complaint with the School District. However, Plaintiff asserts that the investigation completed by the school district was less than thorough and was overseen by a personal friend of Superintendent Ring. Following her complaint, Plaintiff states that the terms and conditions of her employment fundamentally changed insofar as many of her prior responsibilities were taken away from her. These circumstances caused Plaintiff severe emotional distress and led her to file a complaint about the perceived workplace discrimination in August 2010 with the Rocky Point Board of Education. When she did not hear back from the Board, Plaintiff says she was compelled to submit her resignation, which the Board promptly accepted in August 2010. Plaintiff also asserts claims for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), as amended, and the NYSHRL, arguing that Defendants failed to provide her with a reasonable accommodation. Plaintiff brings additional claims under the Family and Medical Leave Act ("FMLA") as a result of Defendants' actions. Specifically, Plaintiff claims that despite notifying Defendants about her serious medical condition, Defendants failed to apprise her of her FMLA rights. Finally, Plaintiff has asserted a claim pursuant to 🚩42 U.S.C. § 1983 against Superintendent Ring for First Amendment retaliation and violation of due process.

Pending before the Court is Plaintiff's second motion to compel discovery and for sanctions. *See* DE 32. Plaintiff argues that Defendants have failed (1) to comply with their obligations to preserve electronic discovery, and (2) to issue a litigation hold to inform "key players," including Defendant Superintendent Ring, of their obligation to preserve evidence. As a result of these actions, Plaintiff contends that relevant evidence has been subject to spoliation. Plaintiff requests that the Court impose sanctions by means of an adverse inference charge and also award Plaintiff attorneys' fees. Plaintiff further requests that the Court compel Defendants to retain an independent forensic computer expert to oversee all electronic discovery at the School District. Defendants oppose the motion on the grounds that they have complied with their discovery obligations. *See* DE 39. Additionally, Defendants maintain that Plaintiff's arguments regarding spoliation are speculative and unfounded. *Id.* Further, with the Court's permission, Plaintiff filed a motion to supplement the factual record underlying her discovery motion. *See* DE

53. In that supplemental submission, Plaintiff argues that new testimony revealed that several of the Defendants' depositions in February 2014 demonstrates that relevant evidence has been destroyed in this case. *Id.* Second, Plaintiff alleges that Defendants continue to intentionally withhold relevant evidence. *Id.* Defendants also oppose the supplemental motion, contending that their deposition testimony, contrary to Plaintiffs' assertions, does not support such conclusions. *See* DE 56.

**\*2** For the reasons set forth below, the Court hereby GRANTS, in part, and DENIES, in part, Plaintiff' second motion to compel discovery and for sanctions.

## II. BACKGROUND

### A. Relevant Procedural History

#### *1. Plaintiff's First Motion to Compel Discovery*

Plaintiff filed her first motion to compel discovery on October 1, 2013. *See* DE 17. In that first letter motion, Plaintiff raised objections to the Defendants' responses to her document requests and interrogatories. *Id.* Specifically, Plaintiff sought to compel discovery of Electronically Stored Information ("ESI") in the custody of Defendants, such as e-mails from and between employees of the School District which are relevant to her claims. *Id.*

#### *2. November 4, 2013 Motion Hearing/Status Conference*

The parties appeared for a combined motion hearing and status conference on November 4, 2013 at which time the Court addressed Plaintiff's motion. *See* DE 25. The Court issued a number of rulings pertaining to the instant motion at that conference as well. *Id.* For example, the Court advised the parties that "each side has an obligation to supervise its client's discovery efforts" with respect to the "search for ESI." *Id.* ¶ 2. Defendants' counsel advised the Court that she consulted with Assistant Superintendent for Educational Services Susan Wilson regarding the production of ESI in this matter. *Id.* Ms. Wilson was an information technology manager before joining the School District as an Assistant Superintendent. *Id.* Ms. Wilson oversaw ESI searches for the School District. *Id.* The Court, however, expressed concern with the level of consultation between Defendants' counsel and Ms. Wilson:

While [Defendants' counsel] communicated with Ms. Wilson via telephone and email, she held only one in-person meeting with her client regarding ESI discovery, and she did not directly supervise the discovery. The Court emphasized to [Defendants' counsel] that all counsel in the case are responsible for directly overseeing, supervising and reviewing the discovery efforts taken by the clients. The ultimate responsibility is the attorney's, not the client and there is substantial case law in the Second Circuit confirming counsel's obligations in this regard. Failing to personally oversee searches for relevant discovery leaves an attorney open to sanctions for inadequately supervising such discovery. The clients' representative here, Susan Wilson, conducted the searches, with little direct supervision from [Defendants' counsel] by her own admission.

*Id.* Thus, in view of this finding, the Court directed Defendants' counsel to "meet immediately with the clients and to review the methodology of the search and the results of the search with her clients to confirm whether all necessary areas have been properly searched and all responsive documents as well as ESI have been produced." *Id.* Further, the Court held that Plaintiff's counsel would be permitted to depose Susan Wilson, if she elected to do so, with the expense to be borne by the Defendants. *Id.*

**\*3** The Court also directed Defendants to "produce an affidavit from Ms. Wilson within ten days setting forth the particulars of how she conducted the search(es) for relevant documents and ESI responsive to the discovery demands served by the [P]laintiff." *Id.* In particular, the Court directed Ms. Wilson to provide information about "what she turned up in completing those searches." *Id.*

Regarding Plaintiff's request for minutes from the Rocky Point Board of Education meetings, Defendants' counsel

reported that the Board meets "publicly and in executive session." *Id.* ¶ 4. According to Defendants' counsel, the Board does not record minutes during these executive sessions. *Id.* The Court thus directed Defendants' counsel to

> provide an affidavit regarding the District's policy or general custom regarding minutes or records of resolutions being taken/reviewed in executive session. The affidavit must also provide information whether there are agendas for the executive sessions and whether those agendas are in writing. If the affidavit does not sufficiently explain the Board's procedures regarding executive sessions, the Court will allow Plaintiff to take depositions of the Board members to obtain the necessary information. The minutes of any public sessions must be produced.

*Id.* Thus, Plaintiff's October 1, 2013 letter motion to compel was granted, to the extent set forth in the Court's November 4, 2013 Civil Conference Minute Order ("CCMO"). *See generally id.*

### B. Plaintiff's Second Motion to Compel Discovery and for Sanctions

Taking the position that Defendants violated the Court's directives, Plaintiff's counsel filed a second motion to compel discovery and for sanctions. *See* Pl.'s Notice of Second Mot. to Compel Disc. and for Sanctions ("Notice of Mot.") [DE 32]. In her supporting memorandum, Plaintiff argues that: (1) sanctions should be imposed against Defendants for their failure to properly institute a litigation hold, complete a good faith search of ESI, and sufficiently oversee ESI searches conducted by Assistant Superintendent Susan Wilson; (2) sanctions should be imposed against Defendants for the spoliation of evidence; (3) an adverse inference charge should be granted against the Defendants in light of their spoliation of relevant evidence; (4) an independent forensic computer expert should conduct electronic discovery of Defendants' systems, computers, emails and devices, with the costs to be borne by Defendants' counsel; and (5) the Court should award Plaintiff's counsel the attorneys' fees and costs associated with bringing this motion. *See* Mem. in Supp. of Pl.'s Second Mot. to Compel Disc. and Mot. for Sanctions ("Pl.'s Mem.") [DE 32–2].

Defendants filed opposition to Plaintiff's motion. *See* Defs.' Mem. in Opp'n to Pl.'s Second Mot. to Compel Disc. and for Sanctions ("Defs.' Opp'n") [DE 39]. They contend that: (1) Plaintiff's arguments rest on a misrepresentation of the factual record; (2) Plaintiff has not demonstrated an entitlement to sanctions under the spoliation doctrine; (3) an adverse inference charge is not warranted given the absence of spoliation; (4) Defendants complied with the Court's November 4, 2013 CCMO and, in any event, no additional ESI search terms were proposed by Plaintiff's counsel at that conference; (5) Plaintiff is not entitled to the appointment of an independent computer forensic expert or attorneys' fees in light of Defendants' compliance with their discovery obligations. *Id.*

 **\*4**  Plaintiff's counsel filed a reply brief in further support of her motion asserting that she has demonstrated sufficient evidence to impose sanctions under Rule 37 on the basis of Defendants' failure to preserve relevant ESI. *See* Pl.'s Mem. in Further Supp. of Pl.'s Second Mot. to Compel Disc. and Mot. for Sanctions ("Pl.'s Reply.") [DE 42]. Plaintiff argues that, on the basis of the record in this case, she is entitled to all the relief requested in her motion (*e.g.* adverse inference charge, appointment of neutral forensic computer expert, and attorneys' fees). *Id.*

### C. Plaintiff's Motion to Supplement the Factual Record

With leave of Court, on April 2, 2014, Plaintiff filed a motion to supplement the factual record in support of her second motion to compel and for sanctions. *See* Mot. to Supplement Facts in Supp. of Pl.'s Second Mot. to Compel Disc. and Mot. for Sanctions ("Pl.'s Supp. Mot.") [DE 53]. After taking several depositions of the Defendants on February 26, 27, and 28, 2014, Plaintiff claims to have discovered new testimony relevant to her pending motion to compel. *Id.* at 1. According to Plaintiff's counsel, depositions revealed that: (1) Defendants both failed to preserve and willfully destroyed relevant and material evidence, and (2) Defendants continue to intentionally withhold relevant evidence despite repeated demands for production. *Id.* at 1–6.

Defendants oppose the supplemental motion and dispute the assertions raised by Plaintiff in that motion. *See* Defs.' Mem. in Opp'n to Supplemental Facts in Supp. of Pl.'s

Second Mot. to Compel Disc. and for Sanctions ("Defs.' Supp. Opp.") [DE 56]. In particular, Defendants argue that their deposition testimony does not indicate that Defendants failed to preserve or willfully destroyed relevant evidence. *Id.* at 1–4. In addition, Defendants contend that they are not withholding any relevant evidence. *Id.* at 5. With the arguments of counsel delineated, the Court now turns to a review of the law governing relevance of discovery materials and spoliation of such materials.

## III. THE APPLICABLE LEGAL STANDARDS

### A. General Principles of Relevance

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, nonprivileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b). " 'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.' " *Oppenheimer Fund, Inc.,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York,* No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York,* 269 F.R.D. 267, 282 (S.D.N.Y.2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case); *Barrett v. City of New York,* 237 F.R.D. 39, 40 (E.D.N.Y.2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

 *5 Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.,* No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ.1924, 2009 WL 585430, at *5 (D.Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir.2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir.2008)); *Barbara,* 2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery disputes."); *Coggins v. Cnty. of Nassau,* No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014) (A district court has "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential.") (internal quotation omitted).

### B. The Doctrine of Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999); *accord Byrnie v. Town of Cromwell,* 243 F.3d 93, 107 (2d Cir.2001). A court may impose sanctions against a party who spoliates evidence pursuant to Rule 37(b) of the Federal Rules of Civil Procedure as well as through the Court's inherent powers to control the judicial process and the litigation before it. *See Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 106–07 (2d Cir.2002); *West,* 167 F.3d at 779. In situations where sanctions are warranted, district courts have broad discretion in "crafting an appropriate sanction for spoliation." *West,* 167 F.3d at 779; *see Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir.2001) ("The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge...."); *Reilly v. Natwest Mkts. Grp. Inc.,* 181 F.3d 253, 267 (2d Cir.1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."). The applicable sanction "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West,* 167 F.3d at 779. Stated another way, the selected sanction should be designed to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (internal quotation marks omitted); *accord Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135, 162 (2d Cir.2012).

 *6 In some instances, the spoliation of evidence "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction."

Case 1:19-md-02875-RMB-SAK   Document 2490-7   Filed 09/15/23   Page 5 of 10
                                                         PageID: 87256
Alter v. Rocky Point School Dist., Not Reported in F.Supp.3d (2014)

*Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y.2004) (*"Zubulake V"*) (quoting *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)). A sanction in the form of an adverse inference instruction is, however, "an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 120 (S.D.N.Y.2008); *see Sekisui American Corp. v. Hart,* 945 F.Supp.2d 494, 497 n. 2 (S.D.N.Y.2003) ("The imposition of sanctions for the spoliation of evidence is a relatively rare occurrence."); *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 219 (S.D.N.Y.2003) (*"Zubulake IV"*) ("In practice, an adverse inference instruction often ends litigation—it is too difficult a hurdle for the spoliator to overcome.").

A party seeking sanctions has the burden of establishing "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.,* 306 F.3d at 107 (quoting *Byrnie,* 243 F.3d at 107–12); *accord Centrifugal Force, Inc. v. Softnet Commc'n, Inc.,* 783 F.Supp.2d 736, 741 (S.D.N.Y.2011); *Zubulake V,* 229 F.R.D. at 430. With these principles in mind, the Court now addresses the specific circumstances of this case.

**IV. DISCUSSION**

**A. Withholding of Relevant Evidence**

The Court is not convinced that, as Plaintiff asserts, Defendants are withholding relevant ESI which is purportedly in their custody. Defendants provided evidence that a system known as "Gaggle" retains all of the School District employee e-mails. Although Plaintiff claims that this system can produce e-mails which include metadata, the e-mails provided to Plaintiff lack such data. Defendants have provided in native format three Word documents, a number of e-mails in .pst format and electronic copies of the Board of Education minutes and agendas for May 2010 to September 2010. *See* Pl.'s Mem. at 6; Def.'s Opp'n at 7. Plaintiff's counsel has provided no factual support from which to draw an inference that the metadata at issue will hold relevant evidence. Because counsel's argument is speculative, it is unavailing.

Plaintiff contends that Defendants' lack of compliance with the Court's November 4, 2013 CCMO is reflected in the lack of discovery exchanged by Defendants since that conference. However, Plaintiffs arguments are not supported by any details or specific reasons why that is the case. In her supplemental motion, Plaintiff states that, despite calling for the production of relevant documents and ESI at the February 2014 depositions, Defendants have not served responses. *See* Pl.'s Supp. Mot at 4–5. On that basis, Plaintiff concludes that Defendants are intentionally withholding relevant evidence. *Id.* Further, as counsel for both sides have repeatedly been instructed in this case, the parties have an obligation to meet and confer regarding these requests before anyone seeks Court intervention, pursuant to Local Civil Rule 37.3. To the extent that Defendants have not responded to the set of discovery requests identified in the Plaintiff's Supplemental Motion, the Court is directing Defendants to answer and to provide substantive information within fourteen (14) days. *See Alexander Interactive, Inc. v. Adorama, Inc.,* No. 12 Civ. 6608, 2014 WL 61472, at *5 n. 2 (S.D.N.Y. Jan.6, 2014) ("While Rule 34 contemplates only written document requests, it is common practice in this District for lawyers to make oral requests during depositions.") (citing *Jackson v. Novell, Inc.,* No. 94 Civ. 3593, 1995 WL 144802, at *1 (S.D.N.Y. April 3, 1995)). Oral requests for documents made during depositions may be enforced in motions to compel. *Id.* (citing same). Lawyers often "follow up oral requests for documents made at a deposition with a confirming letter." *Id.* (quoting *Employers Ins. Co. of Wausau v. Nationwide Mutual Fire Ins. Co.,* No. 05 Civ. 0620, 2006 WL 1120632, at *2 (E.D.N.Y. Apr. 26, 2006)). Plaintiff's right to address those responses with the Court, if necessary, is preserved.

**\*7** Further, Plaintiff claims Defendants are flouting their discovery obligations because Defendants' counsel identified 113 Word documents and 52 Excel files related to Plaintiff and never produced these documents. *See* Pl.'s Reply at 2; *see also* Defs.' Opp'n at 11. Defendants dispute this characterization and assert that Assistant Superintendent Wilson testified that "113 Word documents and 52 Excel files were recovered from Lisa Alters' [*sic*] computer through the use of recovery software called Active Uneraser." *Id.* According to Defendants, however, "Wilson never identified 113 Word documents and 52 Excel files *related* to Lisa Alter." *Id.* (emphasis supplied). A review of the relevant testimony supports Defendants' interpretation. As to the consultant from

Core BTS who was retained by the School District to review Plaintiff's computer, Wilson testified as follows:

Q. What did you tell him then?

A. I wanted to understand where Lisa had left off since I had to assume her job responsibilities and I wanted to look at the files and correspondence and have access to information. At that time I discovered that there were only three files on the network since 2008. Everything else predated that.

I had him come over and take a look at the actual machine. *This was unrelated to the cases.* And he had a product called Active Uneraser and it was his own personal product, from what he told me, and he had a license for it and he ran it on the machine, recovered 150—113 Word documents and 52 Excel files. That's an approximation.

See Jan. 15, 2014 Dep. of Susan Wilson annexed to Defs.' Opp'n as Ex. B [DE 39–2] at 16:6–23 (emphasis supplied). Defendants argue that that Plaintiff "fails to understand" that although these documents were identified, none of them were responsive to Plaintiff's discovery demands. *See* Defs.' Opp'n at 11. Plaintiff contends that the mere existence of these documents necessarily indicates that they are relevant to her claims. *See* Pl.'s Reply at 2. In reviewing Wilson's testimony, the Court does not necessarily draw the same conclusion. However, to resolve this issue once and for all, the Court is directing Defendants' counsel to submit the 113 Word documents and 52 Excel files for an *in camera* inspection. These materials are to be delivered to the Court within fourteen (14) days.

In addition, to the extent Plaintiff argues that the Defendants are performing inadequate keyword searches in order to withhold evidence, the Court disagrees. Defendants have produced to Plaintiff three supplemental discovery responses and two CDs which contain ESI materials. Moreover, during her deposition, Susan Wilson testified, in detail, about the number of keyword searches which were conducted to locate relevant ESI materials. These efforts, the Court finds at this time, were sufficient and consistent with the directives in the Court's November 4, 2013 CCMO. If Plaintiff proposes that Defendants are obligated to employ additional search terms in their review of ESI, Plaintiff is directed to confer with Defendants' counsel to arrange for such searches to be made. Again, the Court will not entertain further motion practice concerning this issue until the parties can certify their compliance with Local Civil Rule 37.3.

**B. Duty to Preserve**

**\*8** The first element a party must show when seeking sanctions for the destruction of evidence is "that the party having control over the evidence had an obligation to preserve it at the time it was destroyed." *Chin,* 685 F.3d at 162; *Residential Funding Corp.,* 306 F.3d at 107. The Second Circuit has determined that "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu,* 247 F.3d at 436 (citing *Kronisch,* 150 F.3d at 126). Pursuant to this obligation, "anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Zubulake IV,* 220 F.R.D. at 217; *accord Curcio v. Roosevelt Union Free Sch. Dist.,* 283 F.R.D. 102, 108 (E.D.N.Y.2012). "In this respect, 'relevance' means relevance for purposes of discovery, which is 'an extremely broad concept.' " *Orbit One Commc'ns, Inc.,* 271 F.R.D. at 436 (quoting *Condit v. Dunne,* 225 F.R.D. 100, 105 (S.D.N.Y.2004)). Therefore, "[w]hile a litigant is under no duty to keep or retain every document in its possession [,] it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake IV,* 220 F.R.D. at 217 (internal quotations and alterations omitted); *see Scalera v. Electrograph Sys., Inc.,* 262 F.R.D. 162, 171 (E.D.N.Y.2009).

The duty to preserve arises, not when litigation is certain, but rather when it is "reasonably foreseeable." *Byrnie,* 243 F.3d at 107; *see In re Vitamin C Antitrust Litig.,* No. 05 Civ. 453, 2013 WL 504257, at \*9 (E.D.N.Y. Feb. 8, 2013) ("[T]he law is clear that the obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation, and that this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated.") (quotations omitted); *Toussie v. Cnty. of Suffolk,* No. 01 Civ. 6716, 2007 WL 4565160, at \*6 (E.D.N.Y. Dec.21, 2007); *F.D.I.C. v. Malik,* No. 09 Civ. 4805, 2012 WL 1019978, at \*1 n. 1 (E.D.N.Y. Mar. 26, 2012) (holding that duty to preserve

arose when attorneys who allegedly destroyed documents represented the plaintiff in the underlying transaction at issue); *In re Semrow,* No. 03 Civ. 1142, 2011 WL 1304448, at *3 (D.Conn. Mar. 31, 2011) (holding that duty to preserve vessel arose prior to commencement of suit because the fact that fatalities occurred should have put party on notice of future litigation); *Siani v. State Univ. of New York at Farmingdale,* No. 09 Civ. 407, 2010 WL 3170664, at *6 (E.D.N.Y. Aug. 10, 2010) (holding that receipt of letter informing defendants of alleged discrimination and intent to pursue claim triggered duty to preserve); *Creative Res. Gr. of New Jersey, Inc. v. Creative Res. Grp.,* 212 F.R.D. 94, 106 (E.D.N.Y.2002) (concluding that the duty to preserve arose months prior to the commencement of the lawsuit when the problems that eventually led to the filing of the lawsuit first surfaced).

**\*9** Plaintiff argues that Defendants have breached their duty to preserve ESI including, *inter alia,* e-mails, data kept on backup drives, text messages, and voicemails. With respect to the ESI that *was* produced, Plaintiff contends that Defendants have failed to provide it in native format, thereby depriving Plaintiff from accessing any associated metadata. According to Plaintiff, the failure of Defendants' counsel to timely and comprehensively advise the key custodians of discovery in this action regarding their preservation obligations has resulted in what Plaintiff claims is spoliation of relevant evidence.

Critically, according to Plaintiff's counsel, Defendants failed to issue a litigation hold until April 2013, more than two years after the Plaintiff filed her Notice of Claim in November 2010. Plaintiff correctly points out that Defendants were obligated to issue litigation holds as soon as the Notice of Claim was filed in November 2010—at which point litigation was or should have been reasonably anticipated by the Defendants. *See Sekisui American Corp.,* 945 F.Supp.2d 494 (finding gross negligence where plaintiff delayed instituting litigation hold until fifteen months after notice of claim and failed to notify IT vendor responsible for preserving ESI for an additional six months). The Court finds it especially troubling that Defendants did not communicate the necessity for a litigation hold to named Defendant Michael Ring until April 29, 2013.

More pointedly, Plaintiff's counsel states that Defendants' counsel "completely failed to discuss a litigation hold with key players." *See* Pl.'s Reply at 2. These "key players" include District Business Manager Greg Hilton, School District Attorney David Pearl, School Board President Michael Nofi, Superintendent Dr. Carla D'Ambrosio, District Clerk Patricia Jones, and Administrative Assistant Loretta Sanchez. *Id.* The Court finds that Defendants had a duty to preserve relevant discovery from these custodians. First, Greg Hilton was specifically mentioned in Plaintiff's Complaint as the other individual present at the meeting held on June 2, 2010. *See* Compl. ¶ 23. Hilton was also in the same room when Superintendent Ring purportedly made the sexist remarks alleged by Plaintiff. *Id.* ¶¶ 23–24. Thus, Mr. Hilton should have been apprised of his duty to preserve relevant evidence as a potential witness in this matter. Similarly, any discovery in the possession of Attorney Pearl would be highly relevant given his role in overseeing the investigation of Plaintiff's allegations against Superintendent Ring. *Id.* ¶ 40. David Pearl was the School District Attorney who issued the report finding that Plaintiff's complaint was not supported by the evidence. *Id.* ¶ 43. Defendants argue that they were under no obligation to preserve any potential discovery by non-parties such as Attorney Pearl. Nonetheless, as an employee or contractor of the School District, Defendants' counsel should have communicated to Attorney Pearl that he may be a custodian of documents and/or information which goes directly to the claims in this case, especially in light of his role in the events alleged. As an attorney, the Court assumes David Pearl was aware of his preservation obligations in these circumstances.

**\*10** Further, Defendants failed to discuss a "litigation hold" with School Board President Michael Nofi. Just one day following the June 2, 2010 incident, Plaintiff met with Mr. Nofi to provide him with details of her sexual harassment claim. Compl. ¶ 35. To the extent that any materials and/or relevant notes were created as a result of that meeting, those materials would be relevant to Plaintiff's claims. Plaintiff also had discussions about the sexual harassment incident with Superintendent D'Ambrosio and explained her aversion to hiring School District Pearl to investigate the matter. Defendants had an obligation to ensure that any relevant materials in the possession of these custodians was preserved for the period at issue

Plaintiff also contends that Defendants' failure to stop the overwriting of backup drives constitutes a breach of Defendants' preservation obligations. According to Plaintiff's counsel, these drives could have contained relevant materials regarding Plaintiff's claims. Defendants contend that "[w]hile [they] did not place a hold on the backup drive ... this

was because the backup drive is of limited capacity, and cessation of overwriting would cause all subsequently deleted documents to not even reach the back-up drive in the first place." See Defs.' Opp'n at 18. Notwithstanding the technical argument asserted by Defendants, at the latest by November 2010, Defendants should have preserved all ESI regarding the Plaintiff from Superintendent Ring and all key custodians in separate backup tapes or in some other medium. Moreover, Defendants assure the Court that all School District e-mails are archived in the Gaggle system. However, ESI does not consist solely of e-mail production.

Finally, Defendants claim that they were not obliged to preserve work-related ESI which employees such as Defendant Superintendent Ring utilized on their personal computers. However, to the extent that the School District employees had documents related to this matter, the information should have been preserved on whatever devices contained the information (*e.g.* laptops, cellphones, and any personal digital devices capable of ESI storage).

### C. Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." *In re WRT Energy Sec. Litig.,* 246 F.R.D. 185, 195 (S.D.N.Y.2007); *see Residential Funding,* 306 F.3d at 107–08. Failures to preserve relevant evidence occur " 'along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality." *Reilly,* 181 F.3d at 267 (quoting *Welsh v. United States,* 844 F.2d 1239, 1246 (6th Cir.1988)). In this Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp.,* 306 F.3d at 108 (quoting *Byrnie,* 243 F.3d at 109) (internal alterations and emphasis omitted); *Curcio,* 283 F.R.D. at 111. "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Secs. Litig.,* 288 F.R.D. 297, 2013 WL 76134, at * 14 (S.D.N.Y.2013).

**\*11** Although the failure to institute a "litigation hold" is not gross negligence *per se,* whether the party implemented good document or evidence preservation practices is a factor that courts should consider. *Chin,* 685 F.3d at 162; *see Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 441 (S.D.N.Y.2010). The Court notes further that "[t]he preservation obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Orbit One Commc'ns,* 271 F.R.D. at 437 (quoting *In re NTL, Inc. Secs. Litig.,* 244 F.R.D. 179, 197–98 (S.D.N.Y.2007)); *Neverson–Young v. BlackRock, Inc.,* No. 09 Civ. 6716, 2011 WL 3585961, at *3 (S.D.N.Y. Aug. 11, 2011) (finding plaintiff who donated her laptop "merely negligent" based on the fact that "[i]n contrast to corporate actors ... [plaintiff] is unsophisticated and unaccustomed to the preservation requirements of litigation.").

The Defendants in this case were negligent with respect to satisfying their obligations to preserve relevant discovery by the key individuals identified in Plaintiff's Complaint, including a named Defendant. *See Cohalan v. Genie Industries, Inc.,* No. 10 Civ. 2415, 2013 WL829150, at *9 (S.DN.Y. Mar. 1, 2013) (finding "evidence in the record that might support a finding of negligence" but not bad faith, where a personnel lift that tipped over and injured the plaintiff was destroyed after two years after the accident during which time numerous photographs, surveillance video, depositions, and inspection of the lift was afforded prior to its destruction). The Court, however, does not conclude that these actions were intentional. In light of Susan Wilson's testimony regarding the School District's ESI storage and review processes, the Court finds that Defendants made an attempt to comply with their discovery obligations once this lawsuit was initiated. However, as pointed out, the fact a litigation hold was not initiated until well over two years after the Notice of Claim was filed is troubling. Defendants' failure to find alternatives for the auto-delete functions of their shared network drive is also problematic. Also of concern to the Court is the earlier acknowledgment by Defendants' counsel that counsel did not directly oversee or engage in the School District's discovery/ESI collection efforts from the beginning. Notwithstanding those facts, the Court does not find an intent to spoliate material evidence here on the basis of the arguments made by Plaintiff's counsel, including the lack of specific (rather than speculative) evidence supporting the spoliation contention.

### D. Relevance

Relevance may be assumed where the breaching party acted in bad faith or with gross negligence. *Neverson–Young,* 2011

Case 1:19-md-02875-RMB-SAK   Document 2490-7   Filed 09/15/23   Page 9 of 10
                                         PageID: 87260
Alter v. Rocky Point School Dist., Not Reported in F.Supp.3d (2014)

WL 3585961 at *2; *Orbit One Comm'cns,* 271 F.R.D. at 441 (refusing to presume relevance where the evidence was merely destroyed due to the party's failure to abide by recommended preservation practices). However, where the spoliating party has acted only negligently, the moving party must make a showing that the lost materials were relevant. *In re Pfizer,* 288 F.R.D. 297, 2013 WL 76134, at * 15; *Harkabi,* 275 F.R.D. at 419–20. A party may establish relevance by " 'adducing sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction.' " *Harkabi,* 275 F.R.D. at 420 (quoting *Residential Funding Corp.,* 306 F.3d at 109) (internal alterations omitted). "Courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction." *Residential Funding Corp.,* 306 F.3d at 109 (internal alterations and citations omitted); accord *Slovin v. Target Corp.,* No. 12 Civ. 863, 2013 WL 840865, at *5 (S.D.N.Y. March 7, 2013).

 *12  Since the Court has found that Defendants here have lost materials (*e.g.,* a capture of the shared network drive from 2010 and ESI on personal employee devices) due to their negligence, Plaintiff must next demonstrate that the materials were relevant. See *Simoes v. Target Corp.,* No. 11 Civ.2032, 2013 WL 2948083, at *7 (E.D.N.Y. Jun. 14, 2013) (since destruction of evidence was negligent, moving party faced a higher threshold to prove relevance).

Plaintiff has failed to meet this burden. Apart from speculation that Defendants have intentionally destroyed material evidence, the Court does not find that Plaintiff has set forth, with any degree of specificity, the materials which would have been helpful in prosecuting her claims. Relevance cannot be established solely on the basis of conjecture. Nor can a finding of relevance be grounded solely on the basis that *some* evidence in the custody of key witnesses no longer exists. Plaintiff has the burden of articulating what that evidence is with some degree of factual detail. See *Simoes,* 2013 WL 2948083, at *7 ("Because the present record does not satisfy the relevance element, plaintiff's motion for spoliation sanctions in the form of an adverse inference must fail."). That factual detail is not present here.

The Court finds that an adverse inference is not warranted in these circumstances. However, the actions (or lack of action) of the Defendants require accountability and necessitate a response. Among other things, the Defendants placed the Plaintiff in the position of having to make this motion. The Court found merit to some of the arguments asserted here and although the Court ultimately has not made a finding of spoliation, some form of sanction is appropriate here. Therefore, the Court is imposing a monetary sanction of $1,500, to be borne equally by the School District and the law firm which represented the School District at the time of Plaintiff's November 2010 Notice of Claim filing. See *Wells Fargo Bank, N.A. v. National Gasoline, Inc.,* No. 10 Civ. 1762, 2011 WL 2490808, at *3 (E.D.N.Y. Jun. 22, 2011) (imposing sanctions, pursuant to Rules 37(a)(5), 37(d)(3), and court's inherent powers, in the amount of $10,446.50 to reimburse plaintiff for expenses in bringing motion to compel); *Dee v. Metro. Transp. Auth.,* No. 08 Civ. 3493, 2008 WL 5253090, at *2 (S.D.N.Y. Dec. 12, 2008) (imposing sanction of $1,500, pursuant to Rule 16(f)(1)(c), on plaintiff's counsel for time expended by defendants' counsel on reporting his failures to the Court and causing defendants' counsel to attend a "substantively useless conference"); *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC,* No. 06 Civ. 3893, 2009 WL 2495802, at *1, 5 (denying motion for reconsideration of court's order imposing sanctions in the amount of $250 upon plaintiff's counsel for failing to certify compliance with Local Civil Rule 37.3 in connection with plaintiff's cross-motion to compel). The Court assumes that the law firm of Ahmuty, Demers & McManus, Esqs. was counsel of record for the School District in November 2010. If that is not the case, counsel should advise the Court immediately. The Court further directs that this sanction be paid to Plaintiff within thirty (30) days.

**V. CONCLUSION**

 *13  For the foregoing reasons, Plaintiff's second motion to compel discovery and for sanctions is GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order. In addition, the Court DENIES Plaintiff's request for the appointment of an independent forensic computer expert.

The Court further imposes upon the School District and counsel of record for the School District during the time of Plaintiff's November 2010 Notice of Claim a $1,500 sanction,

to be borne equally by counsel and the School District. This sanction is to be paid over to the Plaintiff within thirty (30) days.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4966119

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.