**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | No. 1:19-md-2875-RBK<br>Hon. Robert Kugler |
| *This relates to:  All Actions* | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO WHOLESALER DEFENDANTS' OBJECTION TO AND MOTION TO MODIFY SPECIAL MASTER ORDER NO. 82

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

I.     INTRODUCTION ...........................................................................1

II.    PERTINENT PROCEDURAL BACKGROUND .......................................3

III.   STANDARD OF REVIEW ...........................................................11

IV.    ARGUMENT.................................................................................12

       A.    All of Wholesalers' Belated Requests Were Untimely......................12

       B.    The Special Master Correctly Disallowed Certain of
             Wholesalers' Proposed Requests .......................................13

             1.    The Special Master Correctly Disallowed Proposed
                   Request
                   No. 7 ...................................................................13

             2.    The Special Master Correctly Disallowed Proposed
                   Request
                   Nos. 8-9 ...............................................................14

             3.    The Special Master Correctly Disallowed Proposed
                   Requests
                   Nos. 11-16 ............................................................17

             4.    The Special Master Correctly Disallowed Proposes
                   Request
                   Nos. 17-21 ............................................................20

             5.    The Special Master Correctly Disallowed Proposed
                   Request
                   Nos. 22-27 ............................................................22

             6.    The Special Master Correctly Disallowed Proposed
                   Request
                   No. 28 ..................................................................25

V.     CONCLUSION.............................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bauer v. Pourciau*,
  No. CV 18-5611, 2020 WL 5542863 (E.D. La. Sept, 16, 2020).........................24

*Cohan v. Minicozzi*,
  2016 WL 5798900 (Conn. Super. Ct. Sept. 2, 2016) ..........................................26

*Dryer v. NFL*,
  No. 09-cv-2182, 2011 WL 13136546 (D. Minn. Jan. 5, 2011)............................24

*Ellis v. Allstate Ins. Co.*,
  479 F. Supp. 2d 782 (N.D. Ill. 2006).....................................................................26

*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
  No. 19-md-02921, 2022 WL 3211421 (D.N.J. Aug. 9, 2022) .............................12

*In re Gerber Probiotic Sales Pracs. Litig.*,
  306 F.R.D. 527 (D.N.J. 2015) ...............................................................................24

*Kowalski v. Stewart*,
  220 F.R.D. 599 (D. Ariz. 2004)..............................................................................14

*Miller v. Bank of Am., N.A.*,
  352 P.3d 1162 (N.M. 2015)....................................................................................26

*Spin Master, Ltd. v. Zobmondo Ent., LLC*,
  2011 WL 13127211 (C.D. Cal. Oct. 13, 2011) .....................................................26

*Swan Media Grp., Inc. v. Staub*,
  841 F. Supp. 2d 804 (S.D.N.Y. 2012).....................................................................26

*Valeant Pharms. Int'l Inc. v. AIG Ins. Co. of Canada*,
  No. 18-493, 2020 WL 7768405 (D.N.J. Dec. 30, 2020) .......................................12

**Rules**

Fed. R. Civ. P. 26 ................................................................................................15

Fed. R. Civ. P. 26(b) ..........................................................................................16

Fed. R. Civ. P. 34 ............................................................................................ 15, 16

Fed. R. Civ. P. 53(a)(1)(C) ....................................................................................12

## I.     __INTRODUCTION__

> *"I'm not going to speak for Judge Vanaskie, but color me*
> *skeptical of all this, which I think a lot of it is a bunch of*
> *nonsense."*
>
> -- Judge Kugler, on Wholesalers' proposed
> discovery requests to MSP and MADA
> (4/26/23 CMC Tr. at 27)

Nearly five years into this litigation, and over two years after the fact-discovery deadline, Wholesalers sought a variety of data and documents from named TPP plaintiffs MSP and MADA. The *raison d'être* for Wholesalers' belated requests—to probe "the TPPs' one cause of action for UE [unjust enrichment]," *see* 6/13/2023 Wholesalers' Ltr. (ECF No. 2426) at 2—was breathtakingly insufficient. The requests themselves also were untimely, overbroad, irrelevant, unreasonably cumulative, disproportionate, and unduly burdensome.  Wholesalers further rejected *in toto* every single compromise offered by TPP Plaintiffs MADA and MSP.

Nevertheless, Special Master Vanaskie afforded Wholesalers every opportunity to plead their position.  The parties submitted over 30 pages of single-spaced letter briefs, plus exhibits.  The Special Master held oral argument on July 6, 2023.  He issued a thorough opinion on August 11, 2023 (Special Master Number No. 82, ECF No. 2469) ("SMO No. 82") disallowing Wholesalers' belated requests.

-1-

Wholesalers now object to SMO No. 82 (ECF No. 2480).  Their objections are as sweeping as their disallowed discovery requests.  They seek to overturn SMO No. 82 in almost every respect but one.[1]

Wholesalers' objections are even more tenuous than their arguments before the Special Master.  Wholesalers claim errors of fact where none exist.  They cavalierly accuse the Special Master of completely ignoring the Federal Rules of Civil Procedure. Wholesalers also concoct new arguments they never made before the Special Master; aside from being waived, these arguments are simply incorrect. Along the way, Wholesalers cite no intervening change in law or fact suggesting SMO No. 82 was clearly erroneous, let alone an abuse of discretion.

To be clear, Wholesalers have not been denied discovery of TPP Plaintiffs. Far from it.  TPP Plaintiffs have answered questions and produced documents in response to a lengthy Plaintiff Fact Sheet; they have answered multiple sets of supplemental document and data requests; their corporate designees were deposed; and MADA's third-party administrator and MSP's at-issue assignors were subpoenaed, produced documents, and were deposed.  TPP Plaintiffs have already produced liability and damages expert reports detailing their theories and the

---

[1] Wholesalers' objection does not seek to overturn or modify SMO No. 82 insofar as it disallowed Request 10.

-2-

evidence. As the Special Master aptly observed, Wholesalers are entitled to the relevant documents, "not a reply to 'gotcha' request." SMO No. 82 at 12. Wholesalers have the relevant documents. TPP Plaintiffs have been subject to wave upon wave of discovery for years. It would be improper, as the Special Master correctly found, to force TPP Plaintiffs to respond yet again, this time to Wholesalers' untimely, overbroad, unduly burdensome, disproportionate, and unreasonably cumulative belated requests.

For these reasons, discussed more fully below, the Court should deny Wholesalers' objections to SMO No. 82 in their entirety.

## II.   **PROCEDURAL BACKGROUND**

Plaintiffs' letter brief to the Special Master (ECF 2443) set forth a thorough chronology demonstrating how out-of-time Wholesalers' proposed requests were. *See* Pls.' 6/27/23 Ltr. (ECF 2443) (Ex. A hereto). For completeness, Plaintiffs restate that chronology below. While lengthy, the chronology shows that Wholesalers had ample opportunity to seek additional discovery from MSP and MADA, but never did so until years later, and only after this Court ordered Wholesalers to produce the discrete data and documents that Magistrate Judge Schneider previously *deferred* until after class certification (Plaintiffs' earlier seeking

but deferring discovery is in stark contrast to Wholesalers, who not once earlier ever

sought the discovery they now seek from MSP and MADA):[2]

- **Prior to Fall 2019** – Parties negotiate the TPP Plaintiff Fact Sheet ("PFS") to be answered by MSP and MADA.
- **October 16, 2019** – Defense Counsel inform Magistrate Judge Schneider that the parties have agreed to all but two issues about the TPP PFS but hope to reach agreement soon (*see* 10/16/2019 CMC Tr. at 6).
- **October 28, 2019** – CMO No. 17 entered, approving agreed-upon TPP PFS (*see* ECF No. 283).
- **January 14, 2020** – Wholesalers email Co-Lead Plaintiffs' Counsel with a lengthy list of the "discovery implications" for TPPs' claims, as a sort of nascent set of informal proposed data and document requests Wholesalers might seek on top of MSP's and MADA's production obligations under the TPP PFS. ECF No. 582-2. Subsequently, Wholesalers never formalize their lengthy list "discovery implications" into formal proposed document requests.
- **March 2, 2020** – MADA answers TPP PFS and begins rolling production of documents responsive to TPP PFS's document demands.
- **March 3, 2020** – MSP answers TPP PFS and begins rolling production of documents responsive to TPP PFS's document demands.
- **March 9, 2020** – Parties submit their proposed trial plans. *See* ECF Nos. 392, 393. Defendants' plan, submitted by all Defendants, does not include any proposed deadlines for additional discovery of MSP or MADA (or any other plaintiff, for that matter). *See* ECF No. 393.
- **September 29, 2020** – Defendants' CMC agenda letter states they seek to serve additional document requests on named TPPs (and consumers),

---

[2] Wholesalers are wrong that the CMO No. 32 discovery ordered by this Court had not been deferred previously. *See* Obj. at 3. Plaintiffs explicitly sought all the CMO No. 32 discovery from Wholesalers (and Retailers) years ago, in 2019, but were told by Magistrate Judge Schneider to scale that back and focus on Manufacturers first. That is why the court-approved discovery requests to Wholesalers (and Retailers) specifically say they only seek "non-custodial" documents, *see* 7/9/2020 Order (ECF No. 509), and why it was repeatedly said that the CMO No. 32 discovery was deferred. *See, e.g.*, Pls.' 4/13/2020 Ltr. to Court (ECF No. 413) at 3. In any event, CMO No. 32 was never before the Special Master and is not before this Court now. Wholesalers' Objections now are about SMO No. 82 only. This is not a referendum on CMO No. 32 discovery ordered by the Court many months ago, something which Wholesalers have never challenged.

attaching their proposed requests to MSP and MADA. *See* ECF No. 582 at 3. These formalized proposed requests track neither the informal list emailed by Wholesalers on January 14, 2020, nor Wholesalers' belated requests at issue now. *Compare* ECF No. 582-2 *with* ECF No. 582-4, 582-5.

- **September 30, 2020** – At the CMC, Magistrate Judge Schneider tells the parties to negotiate Defendants' proposed document requests to MSP and MADA (and consumers). *See* 9/30/2020 CMC Tr. at 28-33.

- **October 14, 2020** – During the CMC, Magistrate Judge Schneider directs the parties to continue to negotiate Defendants' proposed document requests to MSP and MADA (and consumers), and to submit disputes on October 26, 2020. *See* 10/14/2020 CMC Tr. at 36-37. Defendants state their new proposed document requests "are truly essential to the questions about . . . [plaintiffs'] damages calculation," *Id.* at 27, and also note that they had provided Plaintiffs with a list on January 4, 2020 "identifying just about every one of these documents and letting them know, we expected them to be produced." *Id.* at 36. Wholesalers do not raise their belated requests at issue now.

- **October 26, 2020** – Defendants' CMC agenda letter reports "substantial progress in reaching agreement on the Rule 34 requests to be served on [MSP and MADA]," and asks for until the next CMC to finalize the requests because "Defendants believe an agreement on these requests is possible in the coming days" on their proposed requests "for eleven (11) categories of information." *See* ECF No. 604 at 5, 10.[1] Defendants' letter also states they have conferred with Plaintiffs four times already on the proposed requests. No mention is made of any of the belated requests Wholesalers now seek to propound.

- **November 17, 2020** – CMO No. 21 entered, attaching agreed-upon document requests to MSP and MADA (as well as to consumers). *See* 11/17/2020 Order (ECF No. 633). Each set of requests, including those to MSP and MADA, are signed by Wholesaler Liaison Counsel "on behalf of all defendants." None contain any document demand found in Wholesalers' belated requests at issue now.[3]

---

[3] Defendants specifically stated at the time, nearly three years ago, that their proposed document requests at this time would let them "understand how, under what circumstances, and to what extent, MADA and MSP's assignor's covered and/or paid for [VCDs] and other

-5-

- **November 25, 2020** – CMO No. 22 entered, setting fact discovery deadline of April 1, 2021 (*see* ECF No. 640). This deadline was later extended to June 1, 2021 by CMO No. 32 (see below).
- **December 2020 through February 2021** – the parties engage in protracted negotiations about discovery deadlines and scheduling issues. Wholesalers do not mention the need to serve additional requests on MSP or MADA.
- **February 2, 2021** – Defendants write the Court requesting a 90-day extension of the April 1, 2021 fact discovery deadline set by CMO No. 22. *See* ECF No. 835. Nothing in Defendants' "requested relief" includes any deadline or extension for Defendants to serve additional document requests on MSP and MADA (or any other plaintiff, for that matter). *Id.* at 8-9.
- **February 11, 2021** – CMO No. 23 entered, amending the fact discovery deadline to June 1, 2021 (*see* ECF No. 863).
- **March 24, 2021** – Defendants subpoena Anthem, MADA's claims administrator, for documents.
- **April 1, 2021** – Original fact discovery deadline per CMO No. 22 (*see* ECF No. 640).
- **April 12, 2021** – Plaintiffs file motion for leave to amend the Master Complaints to conform to Judge Kugler's motion to dismiss rulings. *See* ECF No. 1148. The proposed Third Amended Economic Loss Master Complaint includes the following claims against Wholesalers (consistent with Judge Kugler's rulings): breach of implied warranty, violation of state consumer protection laws, and unjust enrichment. The other two proposed Master Complaints include another 14 claims against Wholesalers. Wholesalers never assert they need additional discovery regarding any of these claims.
- **April 29, 2021** – Defendants depose MSP's two corporate representatives. Wholesalers attend.
- **May 12, 2021** – Defendants send letter to MSP requesting additional documents and data purportedly identified during the depositions of MSP's two corporate representatives. None of Wholesalers' belated requests were

---

blood pressure medications." *See* ECF No. 604 at 6. "Collectively, the categories of documents Defendants seek will allow them to determine the rights created by the plans themselves as well as the different machinations of [MSP's and MADA's] coverage of VCDs (or, in the case of MSP, its assignees' coverages of VCDs) and the alternative drugs each would have had to purchase if no VCD were available." *Id.* at 7.

among the purported deficiencies.

- **May 24, 2021** – Manufacturer Defendants propound "global interrogatories and requests for production" to Plaintiffs. Notably, Wholesalers did not join in requests, nor issue their own.
- **May 27, 2021** – Defendants file responses in opposition to Plaintiffs' motion for leave to amend the Master Complaints to conform to Judge Kugler's motion to dismiss rulings. *See* ECF Nos. 1277, 1280, 1281.
- **May 28, 2021** – Defendants depose MADA's corporate representative. Wholesalers attend. Defendants make additional document requests to MADA on the record. None of Wholesalers' belated new requests were among the additional documents requested.
- **June 1, 2021** – Amended fact discovery deadline per CMO No. 23 (*see* ECF No. 863)
- **June 9, 2021** – Special Master Order No. 23 entered, disallowing Defendants' global document requests and interrogatories as untimely. *See* ECF No. 1304.
- **July 22, 2021** – Defendants depose MSP assignor SummaCare's corporate representative. Wholesalers did not even bother to attend.
- **July 30, 2021** – Defendants depose MSP assignors Emblem's and ConnectiCare's corporate representative. Wholesalers attend.
- **August 9, 2021** – Judge Kugler enters order denying Defendants' motion to modify Special Master Order No. 23 (ECF No. 1304), which disallowed Defendants' global document requests and interrogatories. *See* ECF No. 1471.[4]

---

[4] Specifically, Judge Kugler stated in pertinent part:

"As for Ds interrogatories and document production requests, plaintiffs assert these should have been served in February when the parties, the Special Master, and this Court engaged in considerable back and forth to amend the MDL Discovery Schedule. They argue the case management process itself has also rooted the parties' discovery expectations, which are exemplified by the parties' hammering out plaintiffs' document production requests propounded in December 2019 for several months in early 2020. This process received regular court oversight and forged the parties' expectations for the execution of document requests. Plaintiffs also argue the surprise springing of defendants' document production requests was done during the last throes of document production in this MDL, is unjustified, done without notice or a meet and confer process, and therefore prejudices them.

…

***The Court has also reviewed the context of this MDL in its entirety to find that***

- **August 30, 2021** – Defendants request additional documents from MADA following the deposition of MADA's corporate representative. None of Wholesalers' belated new requests were among the additional documents requested.
- **August 31, 2023** – Defendants continue the deposition of MSP assignor SummaCare's corporate representative. Wholesalers attend.
- **September 10, 2021** – Defendants served MSP's assignors Emblem, ConnectiCare, and SummaCare with subpoenas to produce documents. The bulk of Wholesalers' belated requests were not among the requests in the subpoenas.
- **October 8, 2021** – Special Master Order No. 46 entered, which largely grants Plaintiffs' leave to amend the Master Complaints, allowing the ~14 different claims against Wholesalers to proceed across all three Master Complaints (including the economic loss class claims against Wholesalers for breach of implied warranty, violation of state consumer protection laws, and unjust enrichment). *See* ECF No. 1615. Wholesalers do not request any additional discovery on any of these claims, which were all asserted in the original Master Complaints.
- **October 21, 2021** – Defendants depose the corporate representative of MADA's claims administrator.
- **November 10, 2021** – Plaintiffs filed their motion for class certification. *See* ECF No. 1748. The motion seeks to certify, *inter alia*, economic loss consumers' and TPPs' unjust enrichment claims against Wholesalers. Wholesalers do not ask for additional discovery at this time.
- **March 31, 2022** – Plaintiffs produce supplemental class damages report for Dr. Rena Conti, which again includes opinion on unjust enrichment damages. Wholesalers do not ask for additional discovery at this time.
- **April 5, 2022** – Order affirming Special Master No. 46 on leave to amend Master Complaints entered. *See* ECF No. 1994. Order also modifies

---

*document production requests this close to the end of discovery emerge as an unthought-out afterthought.* The Court has considered the parties' and the Special Master's efforts to hammer out and amend discovery schedules, not once, but twice, earlier this year as well as the parties' active engagement throughout this year to work through the scheduling of depositions, expert reports and other key discovery. *The Court finds the defendants could have raised their discovery requests earlier when the parties were conferring actively.*" 8/9/2021 Order (ECF No. 1471) (emphasis added).

-8-

Special Master Order No. 46 to allow breach of implied warranty claims to be alleged against all Defendants (including Wholesalers) under a broader set of states' laws. *Id.* Wholesalers do not ask for additional discovery at this time.

- **April 12, 2022** – Wholesalers (and other Defendants) file oppositions to motion for class certification. *See* ECF No. 2011. Neither in their brief nor in the five months in which they had Plaintiffs' class certification papers in hand did they express any need for additional discovery of MSP and MADA (or any other Plaintiff, for that matter).

- **June 2022** – *Daubert* briefing on parties' class certification is completed. Neither during the class expert depositions, nor the *Daubert* briefing, nor in the months thereafter do Wholesalers ask for additional discovery, including any as to the unjust enrichment claims the economic loss consumers and TPPs sought to certify.

- **July 13, 2022** – Special Master Vanaskie notes during CMC: "Discovery is supposed to have been closed except for expert discovery." 7/13/2022 CMC Tr. at 16.

- **July 19, 2022** – Defendants serve their purported second sets of document requests directed to MSP and MADA. Each set of requests, including those to MSP and MADA, are signed by Wholesaler Liaison Counsel "on behalf of all defendants." *See* Ex. A hereto (7/19/22 Ltr. from C. Trischler to A. Slater, and exhibits thereto). None of the proposed requests track Wholesalers' belated requests now at issue.

- **September 9, 2022** – Certain Manufacturer Defendants serve document requests on MSP, in conjunction with TPP trial as directed by Judge Kugler. Wholesalers do not ask for additional discovery at this time.

- **October 19, 2022** – Certain Manufacturer Defendants move to compel MSP to respond to document requests. Wholesalers do not ask for additional discovery at this time.

- **January 24, 2023** – Special Master Order No. 73 entered, directing MSP to produce certain data and documents. *See* ECF No. 2249. Wholesalers do not ask for additional discovery at this time.

- **February 2, 2023** – Plaintiffs produce revised damages report for MSP. Wholesalers do not ask for additional discovery at this time.

- **February 8, 2023** – Judge Kugler issues order certifying various subclasses, including the economic loss consumers' and TPPs' unjust enrichment claims against Wholesalers. *See* ECF No. 2262. Wholesalers do not ask for additional discovery at this time.

- **February 22, 2023** – Defendants, including Wholesalers file petitions for permission to appeal pursuant to Rule 23(f). *See* ECF No. 2275-3, 4, 5, 6. Wholesalers do not ask either the Court or the Third Circuit for additional discovery at this time.
- **February 27, 2023** – Defendants, including Wholesalers, move to stay proceedings pending their Rule 23(f) petition. *See* ECF No. 2275. Wholesalers do not ask for additional discovery at this time.
- **March 8, 2023** – During lengthy CMC before Judge Kugler and Special Master Vanaskie, Plaintiffs note they would be seeking the additional discrete data and custodial discovery from Retailers and Wholesalers that Magistrate Judge Schneider had deferred earlier pending class certification. *See* 3/29/2023 CMC Tr. (Part II) at 31. Wholesalers do not ask for additional discovery at this time.
- **April 12, 2023** – Defendants' trial plan letter indicates that they expect MSP will complete its supplemental production ordered by Special Master Order No. 73 in January 2023, and that they intend to serve supplemental document requests on MADA by May 10, 2023. *See* ECF No. 2339. Wholesalers do not ask for additional discovery at this time. Plaintiffs identify the discrete data and custodial discovery they need from Retailers and Wholesalers, which Magistrate Judge Schneider earlier denied without prejudice pending class certification. *See* ECF No. 2338.
- **April 21, 2023** – CMO No. 32 entered, ordering Wholesalers to produce discrete data and custodial discovery, *viz.*, the same items Magistrate Judge Schneider had denied without prejudice pending class certification. *See* ECF No. 2343. CMO No. 32 makes no mention of any additional discovery Wholesalers might seek from any Plaintiff (because they had yet to suggest they might ask for any additional discovery).
- **April 24, 2023** – Wholesalers note in a defense letter to the Court, for the first time, that they may seek additional discovery from MSP and MADA "on their unjust enrichment claim." ECF No. 2348 at 5.
- **April 25, 2023** – The day before the next CMC, and ahead of a previously scheduled meet and confer call later this same day, Wholesalers email proposed document requests and deposition notices to MSP and MADA. *See* Ex. B, C, D hereto. Rather than discuss the discovery CMO No. 32 ordered Wholesalers to produce, Wholesalers write that they "anticipate the first issue for our call today will be plaintiffs' position regarding participation in such discovery," i.e., the proposed requests and deposition notices they just provided for the very first time. *Id.*

- **April 26, 2023** – During CMC, Wholesalers note they may seek additional discovery from Plaintiffs. *See* CMC Tr. at 20-27. Judge Kugler repeatedly asked Wholesaler Liaison Counsel why MSP's and MADA's profits were relevant; ultimately the Court noted "I'm not seeing it." *Id.* at 22. After Wholesaler Liaison Counsel finished, Judge Kugler directed the parties to confer, and then to bring any issues (i.e., those currently before Your Honor) to Special Master Vanaskie. Judge Kugler added: "I'm not going to speak for Judge Vanaskie, but color me skeptical of all this, which I think a lot of it is a bunch of nonsense." *Id.* at 27.
- **May 31, 2023** – CMO No. 32 deadline for Wholesalers' production of (i) costs and profits, (ii) prices paid for VCDs, and (iii) prices at which Wholesalers sold VCDs. *See* ECF No. 2343. Also, the deadline to schedule targeted custodial discovery of Wholesalers. *Id.* To date, Wholesalers have yet to produce any data on costs and profits, or custodial discovery, despite not seeking an extension of the CMO No. 32 deadline.
- **June 13, 2023** – Wholesalers file their letter brief at issue here. *See* ECF No. 2427.

The above makes clear that Wholesalers knew from the beginning what claims were at issue, including unjust enrichment. *See, e.g.*, 7/6/2020 CMC Tr. at 65 (Wholesaler Counsel stating: "And if there is one thing that plaintiffs have done, it is that they have invoked every other possible type of relief available, both in tort, and then the UCC damages too."); *see also, e.g.*, 6/16/2020 Wholesaler Ltr. (ECF No. 478) (extensively arguing against Wholesalers' production of discovery relevant to Plaintiffs' unjust enrichment claims).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 53 permits the Court to appoint a Special Master "to address pretrial and posttrial matters." Fed. R. Civ. P. 53(a)(1)(C). The

-11-

Court's appointment order of December 22, 2020 (ECF No. 692) in this matter authorizes the Special Master to "oversee the schedule for completion of discovery and all discovery disputes and motions….The authority of the Special Master hereunder shall be coextensive with that of a United States Magistrate Judge." *See* 12/22/20 Order (ECF No. 692).   While an abuse of discretion generally applies to procedural or non-dispositive issues decided by a special master, *Valeant Pharms. Int'l Inc. v. AIG Ins. Co. of Canada*, No. 18-493, 2020 WL 7768405, at *4 (D.N.J. Dec. 30, 2020), courts often apply the clearly erroneous or contrary to law standard they would follow in reviewing objections to a magistrate judge's order. *See In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, No. 19-md-02921, 2022 WL 3211421, at *3 (D.N.J. Aug. 9, 2022).

## IV.   **ARGUMENT**

### A. All of Wholesalers' Belated Requests Were Untimely

The above chronology (*see supra* Part II) makes clear that all of Wholesalers' belated document requests were untimely.  The Special Master agreed.  *See* SMO No. 82, at 8 ("The Wholesalers' discovery requests, made almost two years after the close of discovery, are clearly untimely.").  Nevertheless, the Special Master opted not to disallow the requests based on untimeliness alone, and instead proceeded to consider "the merits of each category of that at issue requests." *Id.*  While the Special

Master correctly disallowed Wholesalers' Proposed Requests on the merits, which

Plaintiffs discuss *infra* Part IV.B, it is important to note that untimeliness is an

additional basis on which this Court may overrule Wholesalers' objections and

affirm Special Master Order No. 82.

### B. The Special Master Correctly Disallowed Certain of Wholesalers' Proposed Requests

#### 1. The Special Master Correctly Disallowed Proposed Request No. 7

Request No. 7 seeks "any and all documents" that "relate" to any contract

MSP's at-issue assignors or MADA may have with Wholesalers about any subject-

matter. MSP and MADA proposed narrowing this request to contracts that might

exist that may relate to VCDs.  Wholesalers rejected Plaintiffs' compromise offer.[5]

The Special Master then rightly disallowed Request No. 7 because it is "patently

overbroad" (*see* ECF No. 2469 at 9), and also because Wholesalers would have in

their own possession contracts, if there are any, with MSP's assignors or MADA

(*id.*).  Additionally, Wholesalers never explained why they do not already possess

any of their own contracts with TPP Plaintiffs.  *See, e.g.*, *Kowalski v. Stewart*, 220

F.R.D. 599, 602 (D. Ariz. 2004) ("Since Plaintiff has failed to explain why he needs

---

[5] 7/6/23 Hr'g Tr. at 35-36 ("Mr. Stanoch: Your Honor, I just think in Ms. Davis's rendition of the different requests, I think she might have overlooked the one about contracts with wholesalers, or did we reach agreement then today, Ms. Davis?  Ms. Davis: No….that's a non-starter.").

documents he already has in his possession, the Court will not require Defendant []
to produce these documents.").

Wholesalers now ask this Court to overrule and modify Special Master Order
No. 82 to permit Wholesalers to belatedly accept the compromise Plaintiffs
previously offered and Wholesalers rejected.  But objections are appropriate to
correct clear errors of law or fact; they are not intended to give a party a mulligan to
undo an unfavorable result after their own staked litigation position did not pan out.
As Wholesalers do not identify any clear error of law or fact here, let alone an abuse
of discretion, the Court should overrule their objection as to proposed Request No.
7.

### 2. The Special Master Correctly Disallowed Proposed Request Nos. 8-9

Request No. 8 seeks "[a]ny and all" documents or communications that "relate"
to the foregoing disallowed contracts.  Request No. 9 seeks "any and all documents"
about "any and all communications" between TPP Plaintiffs and Wholesalers.  SMO
No. 82 disallowed both of these requests because they "are patently overbroad and
practically impossible to answer."  ECF No. 2469 at 9.  As the Special Master rightly
observed, a request for *any* document about *any* communication or contract with
Wholesalers and the "thousands if not millions of [reimbursement insurance] Claims
is certainly not narrowly tailored to discover relevant facts."  *Id.*  Wholesalers

-14-

maintained their all-or-nothing approach here as well, insisting that these overly broad requests be answered as written, i.e., without any tether to the subject-matter of this litigation.

Wholesalers' objection to the disallowance of Request Nos. 8-9 is just nothing more than a hodgepodge of civil procedure truisms (*see* Obj. at 8-10) that have nothing to do with what these requests actually seek, and what the Special Master actually said in SMO No. 82.

First, Wholesalers claim the Special Master ignored the Rule 26(b) and Rule 34 standard and "made no finding on relevance." Obj. at 14-15. In fact, the Special Master explicitly stated that both requests were facially overbroad, and not properly tailored to seek relevant information, as required by the Federal Rules. SMO No.. 82 at 9; *see also* Fed. R. Civ. P. 26, 34.

Second, Wholesalers improperly try to re-litigate this Court's class certification opinion by arguing the TPP Plaintiffs are "not appropriate class representatives" if they "do not have the resources to produce communications." Obj. at 16. Putting aside that this Court has already found that both TPP Plaintiffs are adequate class representatives, whether Plaintiffs have "resources" to answer proposed requests was not and is not the issue. Rather, the issue is whether Wholesalers' proposed requests, untimely as they are, comport with Rule 26(b). The

-15-

Special Master rightly found Request Nos. 8-9 did not, and therefore disallowed them.

Third, Wholesalers ask this Court to modify Special Master Order No. 82 to require TPP Plaintiffs to affirmatively "state whether they are withholding responsive documents." Obj. at 12. Wholesalers never argued this to the Special Master, so it is waived. In any event, as the Special Master observed, it is inconsistent with the Federal Rules to require a party to state it is withholding documents in response to patently overbroad requests that are not narrowly tailored and "practically impossible to answer" in the first place. SMO No. 82 at 9.[6]

Finally, and relatedly, Wholesalers' statement that the Special Master "erred by merely accepting Plaintiffs' contradicted speculation about what Wholesalers might possess" (Obj. at 11) is untrue. Nothing in Special Master Order No. 82 says or suggests that the Special Master "accepted" anything proffered by Plaintiffs here. Wholesalers never argued in their submissions to the Special Master that they do not have any communications themselves with TPP Plaintiffs. In fact, to date, they have only produced non-custodial documents in this litigation, as they have yet to produce any custodial documents per CMO No. 32.

---

[6] Additionally, because the practice in this litigation since inception is for the parties to negotiate and raise disputes concerning *draft* requests before serving them as approved by the Court, the strictures of Rule 34 arguably do not fully apply here to Wholesalers' belated *proposed* requests.

### 3. The Special Master Correctly Disallowed Proposed Requests Nos. 11-16

Request Nos. 11-16 seek "any and all documents" that relate to MSP's and MADA's unjust enrichment claims against Wholesalers, including documents about the "benefit you allege each Wholesaler Defendant(s) received," "the portion of each specific benefit that [is unjust]," how Wholesalers "misled" TPPs, and "any wrongdoing [or] improper conduct" by Wholesalers that "directly or indirectly caused damage to you."

As Plaintiffs explained to the Special Master, MSP and MADA already produced (i) documents called for by the Plaintiff Fact Sheet and other (timely) requests propounded upon them, (ii) transactional claims data, and (iii) expert reports detailing the damages theory against Wholesalers and calculating MSP's and MADA's (and the TPP subclasses') damages. In other words, they have produced all of the information relating to the liability and damages aspects of their unjust enrichment claims against Wholesalers.  As the Special Master rightly observed, "[t]hey have represented that they have produced all relevant documents."  SMO No. 82, at 11.  Accordingly, Special Master Order No. 82 rightly disallowed Request Nos. 11-16 because, "[]in addition to being untimely," they are "overly broad, burdensome, unreasonably cumulative, and disproportionate to the needs of the case." *Id.* at 11 (cleaned up).

-17-

Wholesalers object because they say the Special Master was duped, arguing TPP Plaintiffs have not produced all documents that are responsive to these requests. Defs.' Obj. at 16-18. Wholesalers are wrong. The Special Master was not misled. As Plaintiffs stated at the July 6 hearing, TPP Plaintiffs previously responded three years ago to a heavily negotiated supplemental document request, which Wholesalers explicitly joined in issuing with Manufacturer Defendants, that sought "***[a]ll documents*** not previously produced that reflect, relate, or refer to any amount including wholesalers, all documents not previously produced that reflect, relate, or refer to any amount for which you seek reimbursement on, including the amounts sought, the amounts of alleged diminution in value of the VCDs as warranted, and as received and/or covered by you or each assignor or its agent and/or any alleged loss of benefit of any alleged bargain you claim herein specified by specific VCD product." 7/6/2023 Hr'g Tr. at 14 (emphasis added); *see* 11/17/2020 Order (CMO No. 21) (ECF No. 633) (attaching court-approved supplemental requests, see Req. No. 10 thereof).

Thus, MSP and MADA have already answered, and produced any documents responsive to a catch-all damages request that encompasses the exact same documents Wholesalers purport to seek again through disallowed Request Nos. 11-16. And, of course, much of the information "relating" to TPP Plaintiffs' claims has

-18-

been produced in this litigation by Wholesalers and other Defendants themselves, such as documents about the nitrosamine contamination and Defendants' data on the amounts of VCDs sold and at what prices, etc.

Notably, before the Special Master, Wholesalers could not articulate why they need to re-ask duplicative requests. Their letter to the Special Master merely stated that MSP and MADA "either have the factual evidence to prove their case or they do not." Wholesalers' 6/13/2023 Ltr. (ECF No. 2426). As MSP and MADA have already produced the evidence "to prove their case," there is no dispute and there was nothing further for the Special Master to do.

The Special Master rightly disallowed Request Nos. 11-16. Wholesalers are not entitled to serve yet another set of requests, years after the close of discovery, that seek the same documents TPP Plaintiffs already produced years ago. TPP Plaintiffs do not need to answer in writing now, three years later, that they do not have any other documents to produce; that is not how discovery works. Nothing Wholesalers cited to the Special Master before, or cite now to this Court, countenances such a repetitive, burdensome, disproportionate, and unnecessary procedure.

### 4. The Special Master Correctly Disallowed Proposes Request Nos. 17-21

Whereas Request Nos. 11-16 focused on Plaintiffs' unjust enrichment theory only, Request Nos. 17-21 seek "any and all documents" which "relate" to MSP's and MADA's damages, including documents about the "type of damages sought," from whom they are sought, and the "methodology used to calculate damages." As noted *supra*, MSP and MADA already produced (i) documents called for by the TPP PFS and other (timely) requests propounded upon them, (ii) transactional claims data, and (iii) expert reports detailing the damages theory against Wholesalers and calculating MSP's and MADA's (and the TPP subclasses') damages. This included any documents responsive to the catch-all requests included in the Plaintiff Fact Sheet, and the court-approved supplemental document requests, all of which TPP Plaintiffs answered years ago. MSP and MADA asked for more detail about what Wholesalers are really looking for here. They received no real answer.

As with Request Nos. 11-16, the Special Master disallowed Request Nos. 17-21, for the same reasons. *See* SMO No. 82, at 12-13.

Wholesalers' objection, again, focuses on whether the Special Master was "misled" into thinking TPP Plaintiffs had already produced relevant documents. As discussed *supra*, he was not. Wholesalers' repeated desire for TPP Plaintiffs to state, again, that they have no more responsive documents is improper. As the Special

-20-

Master aptly put it: "What Wholesalers are entitled to . . . are the relevant documents, not a reply to a 'gotcha' request.  Having failed to contest Plaintiffs' statement that all relevant documents have been produced, Wholesalers have not presented justification for compelling Plaintiffs to respond to Requests 17 through 21."  SMO No. 82 (ECF No. 2469) at 12.

Wholesalers' previously professed need for "discovery of these fundamental damages calculations," *see* Wholesalers' 6/13/2023 Ltr. (ECF No. 2426) at 10, falls flat. As noted above, MSP and MADA already produced expert reports explaining their damages theory and estimating their (and the TPP subclasses') damages. They also produced all of the transactional data on which those calculations relied. They have since produced even more data regarding subsidies, rebates, and the like. They have already produced costs for replacement drugs in place of recalled VCDs, which is something Wholesalers claim they need (*see id.* at 10), but already have.  And, of course, TPP Plaintiffs might supplement their damages analyses once Wholesalers complete their production of the CMO NO. 32 discovery Wholesalers were ordered to produce months ago (e.g., data on costs and profits), but which Wholesalers have yet to produce to date.

Wholesalers' cases (Obj. at 20-21) simply stand for unremarkable propositions about general damages-related discovery. They are inapposite here, as

-21-

MSP and MADA already produced all the fact and expert discovery pertinent to their damages during the discovery periods, which are now closed. Defendants already deposed MSP, MSP's at-issue assignors, MADA, MADA's claims administrator, and their damages expert Dr. Rena Conti.  There is nothing more to be done, as SMO No. 82 properly recognized.

### 5. The Special Master Correctly Disallowed Proposed Request Nos. 22-27

These additional "any and all documents" requests remarkably seek all documents about "the value" or "therapeutic benefit" VCDs provided to MSP's and MADA's insureds, the "safety of VCDs, the efficacy of VCDs," "how VCDs should be included on the formulary," and in perhaps the most extreme overreach, all "underlying medical records" for Plaintiffs' insureds who ingested VCDs.  In other words, Wholesalers now seek, years after the close of discovery, "any and all documents" relating to the many thousands of insurance reimbursement claims for TPP Plaintiffs' insureds.  In essence, this would convert the thousands of TPP Plaintiffs' insureds into individual named plaintiffs, for each of whom a comprehensive set of medical and other information would need to be produced.

Special Master Order No. 82 rightly disallowed Request Nos. 22-27. There is no allegation in this litigation that VCDs were ineffective to treat high blood pressure or some other condition. The allegations center on the fact that each plaintiff paid

for VCDs that contained dangerous, undisclosed carcinogens that rendered the drugs adulterated, illegal to sell in the first place, and therefore economically worthless. As this Court ruled years ago: "This Court finds that contaminated drugs are economically worthless at the point of sale by virtue of the dangerousness caused by their contamination, regardless whether the sold VCDs actually achieved the medical purpose of lowering blood pressure. Put differently, contaminated drugs, even if medically efficacious for their purpose, cannot create a benefit of the bargain because the contaminants, and their dangerous effects, were never bargained for." 1/22/21 Order (ECF No. 775) at 20. In certifying the subclasses, this Court also found Dr. Conti's damages model of economic worthlessness, which does not depend on level of "value" or "therapeutic benefit," sufficiently reliable. See ECF No. 2261 at 88-89.

Moreover, "value" or "therapeutic benefit" are irrelevant when TPPs' unjust enrichment claims turn on Wholesalers' conduct. *See infra* Part IV.B.6. To the extent Wholesalers seek information about MSP's and MADA's formularies and Pharmacy & Therapeutics Committee meeting minutes about qualifying the VCDs for formulary placement, MSP and MADA already produced those documents. On top of that, MSP has already produced information about subsidies and rebates and other data. The Special Master was correct to disallow these untimely Requests,

especially Request No. 27 seeking all insureds' medical records, which the Special Master rightly found were "plainly outside the bounds of permissible discovery." SMO No. 82 at 13.

Wholesalers object, arguing to this Court, as they argued to the Special Master, that the "value" received by TPP Plaintiffs is an "essential element" of their unjust enrichment claims.  *See* Obj. at 24.  But, as discussed *infra* Part IV.B.6, the proper focus of an unjust enrichment claim is on the defendant's conduct, and how much the defendant was unjustly enriched.  Wholesalers' trio of cases, which they wrongly contend the Special Master ignored, all dealt with very different procedural and factual situations.[7]  None of them involved payments for prescription drugs that were contaminated with carcinogens.

In short, Wholesalers do not come anywhere close to identifying any clearly erroneous finding of fact or conclusion of law that warrants modifying Special Master Order No. 82's disallowance of Request Nos. 22-27.  Especially when, as noted *supra*, TPP Plaintiffs already produced any documents relating to "any amount

---

[7] In Wholesalers' first case, which makes no mention of unjust enrichment, the plaintiff directly challenged the effectiveness of probiotic baby food and whether it provided as-advertised health benefits.  *In re Gerber Probiotic Sales Pracs. Litig.*, 306 F.R.D. 527 (D.N.J. 2015).  Here, the wrongful conduct is failure to disclosure a dangerous contaminant.  Wholesalers' other two cases dealt with professional sport players' likenesses and intellectual property rights. *Bauer v. Pourciau*, No. CV 18-5611, 2020 WL 5542863 (E.D. La. Sept. 16, 2020); *Dryer v. NFL*, No. 09-cv-2182, 2011 WL 13136546 (D. Minn. Jan. 5, 2011).

-24-

for which you seek reimbursement on, including the amounts sought, the amounts of alleged diminution in value of the VCDs as warranted, and as received and/or covered by you or each assignor or its agent and/or any alleged loss of benefit of any alleged bargain you claim herein specified by specific VCD product."

### 6. The Special Master Correctly Disallowed Proposed Request No. 28

Request No. 28 seeks the MSP at-issue assignors' and MADA's own "gross revenue, expenses and/or costs, and net profits" for an "unclean hands defense." This Court repeatedly inquired at the April 26, 2023 CMC why any of this was remotely relevant given that unjust enrichment focuses on the Defendants' conduct. Wholesalers could not answer the Court's questions.

This request is illogical because neither MSP nor MADA are sellers of a VCD distribution chain, so they never "profit" off a sale of VCDs. This is doubly so for MADA, which does not make a profit as a health plan because it is a non-profit multi-employer welfare arrangement ("MEWA") pursuant to 24-A M.S.R.A. Chapter 81. Further, procedurally, Plaintiffs noted that Wholesalers have never pleaded any actual affirmative defense in this action, let alone unclean hands. As such, discovery relating to an unpled affirmative defense would be premature because Plaintiff have never had an opportunity to contest the legal sufficiency of such a defense.

-25-

But more pointedly, Wholesalers do not provide any basis in fact or law to suggest that an unclean hands defense might lie in the circumstances here. Their smattering of cases stand for completely different propositions involving entirely different factual circumstances. It also goes without saying that MSP's, its assignors', and MADA's financials are highly commercially sensitive, confidential, and burdensome to produce—especially at this late stage of the litigation, years after the close of fact and expert discovery.

Finally, a TPP plaintiff's own profits or losses are irrelevant to whether a defendant has been unjustly enriched. Courts consistently make the distinction that "[b]ecause the doctrine of unjust enrichment is grounded in restitution, the measure of damages for an unjust enrichment claim is based on the amount of benefit retained by the defendant, rather than by a plaintiff's loss." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 809–10 (S.D.N.Y. 2012) (citing 3 D. Dobbs, Law of Remedies § 12.1(1), at 9).[8]

---

[8] *See, e.g.*, *Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782, 788 (N.D. Ill. 2006) ("Damages in unjust enrichment cases are measured by the defendant's gains, not plaintiff's losses."); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, No. CV063459ABCPLAX, 2011 WL 13127211, at *3 (C.D. Cal. Oct. 13, 2011) ("[D]isgorgement of an infringing defendant's profits based on a theory of unjust enrichment is not concerned with approximating a plaintiff's losses, but with divesting the defendant of gains resulting from infringement."); *Miller v. Bank of Am., N.A.*, 352 P.3d 1162, 1169 (N.M. 2015) ("Damages for unjust enrichment differ from compensatory damages in that '[t]he measure [and limit] of compensatory damages is the plaintiff's loss or injury, while the measure of restitution is the defendant's gain or benefit.'"); *Cohan v. Minicozzi*, No. NNHCV156052856, 2016 WL 5798900, at *3 (Conn. Super. Ct. Sept. 2, 2016) ("[A] plaintiff's recovery for unjust enrichment is based, not on plaintiff's loss, but defendant's gain").

Special Master Order 82 correctly noted that Wholesalers' "efforts to place the spotlight on the TPPs are misguided."  SMO No. 82 at 14.  "Whether TPPs profited by fulfilling their contractual obligations to their insured by paying for worthless VCDs is irrelevant to whether the Wholesalers were unjust enriched."  *Id.*  The Special Master continued: "The TPPs by paying for the contaminated VCDs to fulfill their duties to their insureds are not sellers of a contaminated product and any profits from honoring their contractual obligations are simply irrelevant to a claim for unjust enrichment against the seller of the contaminated product."  *Id.* at 15.

Wholesalers' objection (*see* Obj. at 26-30) does not move the needle in their direction.  Far from identifying any error of law, Wholesalers' inapposite cases simply stand for the unremarkable proposition that a *seller* of a product that engages in the same challenged wrong may have unclean hands.  *See id.*  As the Special Master rightly acknowledged, Wholesalers are wrong to say that TPPs ever "transferred VCDs" like any defendant in this litigation.  To the contrary, TPP Plaintiffs were not in the distribution chain for VCDs at all; they never bought, took possession of, and resold VCDs.  They were end payors obligated to pay for product which they thought was one thing (i.e., non-adulterated, cGMP-compliant valsartan), when in fact it was in fact another (i.e., adulterated, contaminated, worthless VCDs).

-27-

Accordingly, TPP Plaintiffs' profits are not related to the parties' claims or defenses and are therefore outside the scope of permissible discovery. Wholesalers' objection regarding Request No. 28 should be overruled.

## V.   **CONCLUSION**

For the foregoing reasons, the Court should overrule Wholesalers' objections (ECF No. 2480) to Special Master Order No. 82 (ECF No. 2469).

Dated: September 15, 2023

Respectfully,

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*/s/ Adam Slater*
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

*/s/ Conlee S. Whiteley*
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

*/s/ Daniel Nigh*
Daniel Nigh
**NIGH, GOLDENBERG, RASO & VAUGHN, PLLC**
712 H Street NE, Dpt 32022
Washington, DC 20002
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

*MDL Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September 2023, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system.

*/s/ David J. Stanoch*
David J. Stanoch