# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALSARTAN LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875** <br><br> **Honorable Robert B. Kugler, District Judge** |
| ***This Documents Relates to All Actions*** | |

# WHOLESALER DEFENDANTS' REPLY IN SUPPORT OF OBJECTIONS TO AND MOTION TO MODIFY SPECIAL MASTER ORDER NO. 82

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

I.   Wholesalers are entitled to basic discovery of Plaintiffs' claims against
     them. ...........................................................................................................2

     a.  Contracts Between TPP Plaintiffs and Wholesalers (RFP 7).........................3

     b.  Communications Between TPP Plaintiffs and Wholesalers (RFPs 8-9).......4

     c.  Elements of the UE Cause of Action (RFPs 11-16) ..................................5

     d.  Damages to TPP Class Representatives (RFPs 17-21) ...............................7

     e.  Value of VCDs to the TPPs (RFPs 22-27)..................................................8

     f.  Profits TPP Plaintiffs Earned By Covering VCDs (RFP 28).........................9

II.  Plaintiffs' Opposition is riddled with factual misrepresentations
     irrelevant to the core discovery at issue, and relies on factual
     inaccuracies in SMO 82 that the Court should correct. .....................................11

     a.  The timeliness of Wholesalers' RFPs is not at issue, and Plaintiffs
         misrepresent the "timeliness" of their own requests. .....................................11

     b.  Plaintiffs argue that Wholesalers have violated their discovery
         obligations under CMO 32, which is false and irrelevant to the
         discovery at issue. .........................................................................13

     c.  Plaintiffs latch on to SMO 82's incorrect statements about
         "worthlessness". ..............................................................................14

CONCLUSION...................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dryer v. Nat'l Football League*,
  No. 09-CV-2182, 2011 WL 13136546 (D. Minn. Jan. 5, 2011).........................10

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
  No. CIV. A. 03-4558 (GEB), 2010 WL 2813788 (D.N.J. July 9,
  2010), *amended*, No. CIV.A. 03-4558 (GEB), 2011 WL 601279
  (D.N.J. Feb. 16, 2011) .............................................................................8

*Hernandez v. Sullivan*,
  No. 18-CV-0606-SMY, 2018 WL 1757601 (S.D. Ill. Apr. 12,
  2018)..........................................................................................................5

*Intarome Fragrance & Flavor Corp. v. Zarkades*,
  No. 07-973 (DRD) (MAS), 2008 WL 4449629 (D.N.J. Oct. 1,
  2008)..........................................................................................................4

*Ivanti, Inc. v. Staylinked Corp.*,
  No. 2:19-CV-00075-RJS-JCB, 2022 WL 504142 (D. Utah Feb. 18,
  2022)..........................................................................................................5

*Love v. N.J. Dep't of Corr.*,
  No. 2:15-CV-4404-SDW-SCM, 2017 U.S. Dist. LEXIS 128905
  (D.N.J. Aug. 11, 2017) ..............................................................................6

*Microsoft Corp. v. Softicle.com*,
  No. 2:16-CV-02762-MCA-SCM, 2017 WL 4387376 (D.N.J. Oct.
  2, 2017)......................................................................................................5

*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) .....................................................................1

*Paramount Aviation Corp. v. Agusta*,
  178 F.3d 132 (3d Cir. 1999) .....................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ..................................................................................6

Rule 34............................................................................................4, 5, 7, 8

**INTRODUCTION**

Wholesalers are entitled to basic discovery relevant to the unjust enrichment ("UE") claim certified against them. Special Master Order ("SMO") 82 mistakenly denies Wholesalers most of that basic discovery, and Plaintiffs' Opposition to Wholesalers' Objections to SMO 82 articulates no reason grounded in the Federal Rules or applicable case law that excuses Third-Party Payor ("TPP") Plaintiffs from responding to Wholesalers' Requests For Production ("RFPs").

In their Opposition, Plaintiffs bury their argument on the substance of the RFPs after a 10-page discussion of the timeliness of Wholesalers' discovery. But this lengthy discussion is irrelevant because the Special Master determined that Plaintiffs waived their timeliness argument. When they finally address the substance of the RFPs, Plaintiffs incredibly argue that the Federal Rules of Civil Procedure do not apply to them.[1] And, even more incredibly, they now refuse to produce documents in response to an RFP to which they had previously agreed to respond. Moreover, underlying all of their arguments are numerous verifiably incorrect factual statements, many of which are irrelevant to the RFPs at issue.

Looking past Plaintiffs' smoke-and-mirrors, the Court's task is simple. The

---

[1] However, as the Sixth Circuit Court of Appeals recently made clear, "[t]he rule of law applies in multidistrict litigation . . . just as it does in any individual case." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). An MDL court "may not . . . distort or disregard the rules of law", as Plaintiffs ask the Court to do here. *See id.*

1

Court has certified one claim for the TPP Plaintiffs against Wholesalers—unjust enrichment. The RFPs at issue properly exercise Wholesalers' fundamental rights to seek relevant information on the elements of that claim, including on issues that this Court has specifically described as "central trial issues," and should be permitted. TPP Plaintiffs acknowledge that Wholesalers are now entitled to discovery on that claim, as they agreed to some of the RFPs previously. Wholesalers ask the Court to enforce TPP Plaintiffs' prior agreements to produce, and modify SMO 82 to require the TPP Plaintiffs to properly respond to RFPs 7, 8, 9, and 11-28.

## I.  Wholesalers are entitled to basic discovery of Plaintiffs' claims against them.

As Wholesalers explained in their Objections, Wholesalers' defense to the certified UE claim against them is prejudiced without the discovery at issue in the RFPs. This Court has said: "I have never forced a lawyer to go to trial when they don't have the discovery they need in a case. I think we have been very receptive to all sides in this case to meet the needs of you and your clients to prepare these cases for trial, and I think that will continue." *See* ECF 2151, Aug. 24, 2022 CMC Hr'g Tr. 26:14-18.

As SMO 82 now stands, Wholesalers will be forced to go to trial without the discovery they need. As a result, Wholesalers filed Objections seeking to modify that result to get the basic discovery they need. In their Opposition, Plaintiffs

articulate no legitimate basis for not responding the RFPs, and instead seek to evade the requirements of applicable law and the Federal Rules.

### a. Contracts Between TPP Plaintiffs and Wholesalers (RFP 7)

SMO 82 requires TPP Plaintiffs to "produce promptly" documents that "Plaintiffs have indicated a willingness to produce[.]" Dkt. 2469 at 15. Plaintiffs previously indicated a willingness to produce contracts between TPPs and Wholesalers relating to VCDs in response to RFP 7, *see* Dkt. ECF No. 2426 at Exhibit 2 (redlines), and in their Opposition, Plaintiffs do not dispute that they did not object to producing these documents.

Inexplicably switching course, Plaintiffs now claim Wholesalers are not entitled to these documents because Wholesalers rejected a "compromise" offer to produce them. Opp. at 13. But Plaintiffs neglect to mention that this "compromise" offer was conditioned on Wholesalers' agreement to completely forgo many of their other necessary requests: their requests for any communications between TPPs and Wholesalers, and all discovery related to the value of VCDs and the profits TPPs earned on covering the VCDs, as well as an agreement that TPP Plaintiffs' responses to all other disputed discovery requests would be limited to only those documents on which TPP Plaintiffs "intend to rely" at trial. Dkt. ECF No. 2426 at Exhibit 2. Given these self-serving parameters mandated by Plaintiffs, this so-called "compromise" offer was a non-starter for Wholesalers. Even so, Plaintiffs were

previously willing to produce contracts between TPPs and Wholesalers relating to VCDs, which are unquestionably relevant,[2] and they should have to do so now.

### b. Communications Between TPP Plaintiffs and Wholesalers (RFPs 8-9)

RFPs 8 and 9 seek TPP Plaintiffs' communications with Wholesalers regarding the Claims at issue and the VCDs made the subject of the Claims. These communications are relevant to the certified UE claim, and Plaintiffs should be ordered to respond. *See Intarome Fragrance & Flavor Corp. v. Zarkades*, No. 07-973 (DRD) (MAS), 2008 WL 4449629, at *1-2 (D.N.J. Oct. 1, 2008) (finding discovery related to any communications, business transactions, or agreements between the parties relevant to various claims, including UE).

Wholesalers expect that the TPP Plaintiffs have no responsive communications. In fact, the TPP PFS required the answering TPP Plaintiff to produce communications with Defendants regarding VCDs, which would necessarily include communications with Wholesalers. Yet TPP Plaintiffs refuse to respond or indicate if they have no responsive documents or whether they are withholding responsive documents, as required. Fed. R. Civ. P. 34(b)(2)(C) (party

---

[2] The Fact Sheet ("TPP PFS") answered by TPP Plaintiffs, which was approved via CMO No. 17 before Wholesalers' appearance in this litigation, requires TPP Plaintiffs to produce "all contracts between [the TPP Plaintiff] and any pharmacy or Pharmacy Benefit Manager related to any actual or potential claims asserted by [the TPP Plaintiff] in this litigation." Any contracts with Wholesalers are similarly relevant and should be produced.

objecting to a request for production "must state whether any responsive materials are being withheld on the basis of [the] objection."); *Microsoft Corp. v. Softicle.com*, No. 2:16-CV-02762-MCA-SCM, 2017 WL 4387376, at *8 (D.N.J. Oct. 2, 2017) (where "there are no responsive documents," a party's "answer must state under oath that he is unable to provide the information") (citations omitted). In their Opposition, Plaintiffs argue they should not have to state whether they are withholding responsive documents as required by Rule 34, because Wholesalers somehow "waived" this argument or the applicability of this Rule. Opp. at 16. Wholesalers cannot "waive" the applicability of the Federal Rules to Plaintiffs. *See, e.g.*, *Ivanti, Inc. v. Staylinked Corp.*, No. 2:19-CV-00075-RJS-JCB, 2022 WL 504142, at *2 (D. Utah Feb. 18, 2022) ("the parties cannot waive" compliance with requirements of the Federal Rules); *Hernandez v. Sullivan*, No. 18-CV-0606-SMY, 2018 WL 1757601, at *2 (S.D. Ill. Apr. 12, 2018) ("While the Court takes Plaintiffs' allegations seriously, it cannot waive the requirements of the Federal Rules of Civil Procedure").

### c. Elements of the UE Cause of Action (RFPs 11-16)

RFPs 11-16 each track an element of UE that the TPP Plaintiffs *must* prove in one or more of the relevant states at issue in the certified class. For example, these RFPs seek documents reflecting the benefit conferred by the TPPs on a Wholesaler

(RFP 11), and documents reflecting any wrongdoing/improper conduct by a Wholesaler with respect to the Claims (RFP 16).

These RFPs are clearly relevant, and Plaintiffs do not dispute relevance in their Opposition. Instead, Plaintiffs claim (and SMO 82 accepted) that they have already produced all relevant documents. Wholesalers are skeptical of this claim, however, because TPP Plaintiffs do not (and, to date, will not) identify any documents they have produced or discovery requests that they have responded to that relate to any alleged misleading action by a Wholesaler (RFP 13), or any alleged wrongdoing/improper conduct by a Wholesaler (RFP 15). *See* Opp. at 17-18.

Further, Plaintiffs previously presented Wholesalers with the "compromise" offer of producing only those "[d]ocuments on which [TPPs] *intend to rely* concerning each Wholesaler Defendant's alleged wrongdoing." Dkt. 2426-2 (emphasis added). But the Federal Rules and applicable case law require TPP Plaintiffs to produce all relevant documents—not just documents favorable to their case. *See* Fed. R. Civ. P. 26(b)(1); *Love v. N.J. Dep't of Corr.*, No. 2:15-CV-4404-SDW-SCM, 2017 U.S. Dist. LEXIS 128905, at *8 (D.N.J. Aug. 11, 2017) (noting that, when a party serves RFPs, the responding party "*must produce all relevant documents* in his possession, custody, or control") (internal quotations and citations omitted) (emphasis added). Plaintiffs do not dispute this point in their Opposition,

6

and thus should have to produce *all* responsive documents—not just those on which they intend to rely.

Further, if TPP Plaintiffs have already produced responsive documents, as they contend they have done, TPP Plaintiffs must identify to Wholesalers the Bates numbers of those documents. Fed. R. Civ. P. 34(b)(2)(E)(1). Wholesalers have complied with that process (as demanded by Plaintiffs) in their previous written discovery responses to Plaintiffs. TPP Plaintiffs should be held to the same standard and be required to identify the Bates numbers of the produced documents they contend are responsive to—and, they contend, obviate the need for—Wholesalers' RFPs.

### d. Damages to TPP Class Representatives (RFPs 17-21)

RFPs 17-21 seek information on the TPP Plaintiffs' alleged damages they are seeking to collect against Wholesalers, including the type of damages sought, the calculation of damages, and the specific Wholesaler from whom damage for each Claim is sought. Plaintiffs do not dispute the relevance of these requests, but instead claim (and SMO 82 accepted) that they have produced all relevant documents. Opp. at 20-22. However, as with RFPs 11-16, TPP Plaintiffs do not provide Bates numbers for responsive documents, and Plaintiffs only agreed to produce to Wholesalers the self-selected "[d]ocuments on which [TPPs] *intend to rely* for the damages [TPPs] seek from Wholesaler Defendants." Dkt. 2426-2 at 3 (emphasis added). Plaintiffs

also argue that "Wholesalers' repeated desire for TPP Plaintiffs to state, again, that they have no more responsive documents is improper," Opp. at 20, but Rule 34 requires them to do so. TPP Plaintiffs are not exempt from the Federal Rules of Civil Procedure.

For the same reasons discussed *supra* for RFPs 11-16, TPP Plaintiffs must identify Bates numbers for responsive documents and be required to produce all relevant documents, not just a subset of materials favorable to their case.

### e.  Value of VCDs to the TPPs (RFPs 22-27)

RFPs 22-27 seek information about the value the VCDs provided to TPPs, which is relevant to the essential elements of the TPP Plaintiffs' UE claim against Wholesalers. SMO 82 did not address the case law Wholesalers presented on this issue. Plaintiffs' Opposition likewise fails to address on-point authority from the District of New Jersey that Wholesalers cited in their Objections. *See* Objections at 24-25 (citing *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. CIV. A. 03-4558 (GEB), 2010 WL 2813788, at *44 (D.N.J. July 9, 2010), *amended*, No. CIV.A. 03-4558 (GEB), 2011 WL 601279 (D.N.J. Feb. 16, 2011) ("To determine whether a defendant in an unjust enrichment claim enjoyed an appreciation of the benefits which were conferred ... *the issue is whether the value of the benefit conferred exceeds the value of the consideration he paid for the benefits*.") (quotations omitted) (emphasis added)). According to precedent from this District,

the factfinder must determine whether the value of the benefit TPPs conferred upon Wholesalers—i.e., Wholesalers' profits—exceeded the value of the VCDs to the TPPs. The value the VCDs provided to TPPs is thus relevant and discoverable.

Plaintiffs also argue that the value the VCDs provided is irrelevant to the certified UE claim because the Court did not exclude Dr. Conti's damages model of economic worthlessness. Opp. at 23. However, Plaintiffs falsely characterize the Court's ruling on Dr. Conti's model of economic worthlessness: a ruling by this Court that the model is "sufficiently reliable" to pass a *Daubert* challenge does not mean that it is not subject to challenge via discovery and contrary evidence at trial. Indeed, Plaintiffs ignore the Court's contemporaneous statements that its assessment of Dr. Conti's methodology was confined to the "class certification stage" and that the parties' disagreement over Dr. Conti's theory of worthlessness "points straight to a *central trial issue*" and that the resolution of that disagreement is "*for the factfinder*," ECF No. 2261 at 37-38 n. 27, 89 (emphasis added). The Court's own ruling thus makes clear that denying discovery on the worthlessness theory constitutes a deprivation of discovery on a "central trial issue." By the Court's own reasoning, Wholesalers are entitled to discovery on the value the VCDs provided to the TPPs.

### f. Profits TPP Plaintiffs Earned By Covering VCDs (RFP 28)

As Wholesalers explained in their Objections, the profits TPP Plaintiffs

earned by covering the VCDs are relevant and discoverable because TPP Plaintiffs seek disgorgement of Wholesalers' profits. To the extent TPPs already profited off the VCDs, TPPs are not permitted a *further* windfall by collecting all of Wholesalers' profits on the VCDs. *See*, *e.g.*, *Dryer v. Nat'l Football League*, No. 09-CV-2182, 2011 WL 13136546 (D. Minn. Jan. 5, 2011) (granting discovery on the plaintiffs' profits "to the extent Plaintiffs have profited commercially," where plaintiffs brought a UE claim and sought to disgorge the defendants' profits).

Further, evidence of the profits TPPs earned on covering the VCDs at issue is also relevant to Wholesalers' unclean hands defense. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n. 12 (3d Cir. 1999). Wholesalers allege that they are no different from the TPPs, as both groups transferred VCDs without knowing that they were allegedly contaminated—thus if Wholesalers are liable for "bad" conduct then so, too, are the TPPs—or neither are. SMO 82 attempts to distinguish the positions of the parties, but that decision is ultimately up to the factfinder.

Plaintiffs counter that "discovery relating to an unpled affirmative defense would be premature because Plaintiff have never had an opportunity to contest the legal sufficiency of such a defense." Opp. at 25. More importantly, Wholesalers have never had the opportunity to raise such a defense. To date, the Court has not required Defendants to file Answers, but contemplated that they may do so in the future. *See* Dkt. 2092 at 32 (June 1, 2022 CMC Transcript) (The Court: "I don't think that

having to file an answer is going to add a whole lot to what we know in this case and what we need to do in this case, so I'm not going to require any answers to be filed yet at this time."). Thus, to the extent the Court agrees with Plaintiffs, Wholesalers seek clarification from the Court that they will have an opportunity in the future to plead the unclean hands affirmative defense (and other appropriate affirmative defenses) and obtain the relevant discovery.

## II. Plaintiffs' Opposition is riddled with factual misrepresentations irrelevant to the core discovery at issue, and relies on factual inaccuracies in SMO 82 that the Court should correct.

Rather than focus on the substance of the RFPs, Plaintiffs' Opposition tries to distract the Court from looking at the real issues by fixating on irrelevant issues and citing numerous verifiably incorrect factual statements. These distractions do not impact TPP Plaintiffs' discovery obligations, and the Court should ignore them.

### a. The timeliness of Wholesalers' RFPs is not at issue, and Plaintiffs misrepresent the "timeliness" of their own requests.

Plaintiffs chose not to lead with a discussion of the substance of Wholesalers' RFPs, and instead use more than 10 pages of their 27-page Opposition arguing that Wholesalers' discovery requests are untimely—an argument Judge Vanaskie already found Plaintiffs had waived. Dkt. 2469 at 8.

Plaintiffs even double down, and contend that Wholesalers' discovery requests are untimely in comparison to Plaintiffs' "timely" discovery requests to Wholesalers. Opp. at 3-4, 10. Plaintiffs repeatedly represent to the Court that their

recent discovery to Wholesalers (ordered in CMO 32) was timely because Judge Schneider deferred this discovery "until *after class certification*." Opp. at 3-4 (emphasis added); *see also* Opp. at 10 ("During lengthy CMC before Judge Kugler and Special Master Vanaskie, Plaintiffs note they would be seeking the additional discrete data and custodial discovery from Retailers and Wholesalers that Magistrate Judge Schneider had deferred earlier *pending class certification*.") (emphasis added); *id.* ("Plaintiffs identify the discrete data and custodial discovery they need from Retailers and Wholesalers, which Magistrate Judge Schneider earlier denied without prejudice *pending class certification*.") (emphasis added); *id.* ("CMO No. 32 entered, ordering Wholesalers to produce discrete data and custodial discovery, *viz.*, the same items Magistrate Judge Schneider had denied without prejudice *pending class certification*.") (emphasis added).

Plaintiffs misrepresent the record. In 2020, Judge Schneider deferred Plaintiffs' "price and profit" discovery "until *after the defendants' motions to dismiss are decided or an earlier time for good cause shown*"—not until after class certification, as Plaintiffs now claim. Dkt. 507 at 1-2 (emphasis added). Yet Plaintiffs waited *two years* after the motions to dismiss were decided in March 2021, and well after the "close of fact discovery," to request their discovery on these issues. Indeed, they waited until after class certification was decided. Thus, Plaintiffs' timeliness arguments, while irrelevant here, apply equally to their own conduct.

**b. Plaintiffs argue that Wholesalers have violated their discovery obligations under CMO 32, which is false and irrelevant to the discovery at issue.**

The status of Wholesalers' responses to Plaintiffs' discovery requests are irrelevant to SMO 82. Still, Plaintiffs falsely accuse Wholesalers of failing to meet supposed deadlines for the discovery ordered in CMO 32. Opp. at 11 ("To date, Wholesalers have yet to produce any data on costs and profits, or custodial discovery, despite not seeking an extension of the CMO No. 32 deadline.").

In fact, Wholesalers produced their pricing data maintained in the ordinary course of business by May 30, 2023 in compliance with CMO 32, and explained—once again—that they do not keep profits data in the ordinary course of business. The Court agreed that Wholesalers "can't produce something [they] don't have." Dkt. 2370 (Transcript of April 26, 2023 CMC) at 18. As a result, Wholesalers have engaged consultants to develop a potential proxy formula to attempt to estimate valsartan profits, and are working to provide this formula to Plaintiffs—which was Plaintiffs' suggestion to begin with. Dkt. 2370 at 16-17. Wholesalers have missed no deadline with respect to production of data on costs and profits, as they have already produced the data kept in the ordinary course of business, as required by the Federal Rules.

As to custodial discovery ordered under CMO 32, the parties are still negotiating an agreeable schedule. No CMO 32 deadlines with respect to custodial

discovery have passed because they have yet to be agreed to by the parties and set by the Court. It is misleading to suggest otherwise.

    **c.  Plaintiffs latch on to SMO 82's incorrect statements about "worthlessness".**

As Wholesalers explained in their Objections, SMO 82 incorrectly premises the determination that value of the VCDs to the TPP Plaintiffs is irrelevant on the Court's statement in its motion to dismiss rulings regarding contractual warranty claims that the VCDs are economically worthless. ECF No. 2469 at 13 (citing Jan. 22, 2021, Opinion, ECF No. 775 at 20). SMO 82 ignores that the Court, in its ruling on class certification and related motions to exclude expert testimony, explicitly found that at the merits stage (where Plaintiffs' allegations are not given the same presumption of accuracy as at the motion to dismiss stage), *whether the VCDs are economically worthless is a question reserved for the factfinder*. ECF No. 2261 at 22-23, 85-89.

Unsurprisingly, Plaintiffs parrot the incorrect factual statements in SMO 82 regarding worthlessness. Opp. at 23. Plaintiffs continue to perpetuate the error in SMO 82, and conflate a motion to dismiss ruling with a ruling on the merits, wrongly asserting that the Court's denial at the *dismissal* stage has the effect of imposing an irrebuttable presumption at the *merits* stage of Plaintiffs' "worthlessness" theory. Plaintiffs ignore the last sentence of the same paragraph Plaintiffs quote in their

14

Opposition, where the Court made clear that its ruling applied "at the motion to dismiss stage," ECF No. 775 at 20.

And, as discussed above, Plaintiffs falsely characterize the Court's ruling that Dr. Conti's model of economic worthlessness was "sufficiently reliable" to pass a *Daubert* challenge as a ruling that it is not subject to challenge via discovery and contrary evidence. This ignores the Court's contemporaneous statements that its assessment of Dr. Conti's methodology was confined to the "class certification stage", that the parties' disagreement over Dr. Conti's theory of worthlessness "points straight to a *central trial issues*", and that the resolution of that disagreement is "*for the factfinder*," ECF No. 2261 at 37-38 n. 27, 89 (emphasis added).

The Court should correct SMO 82's erroneous statements that the Court decided the issue of worthlessness at the motion to dismiss stage, and ignore Plaintiffs' reliance on those incorrect statements.

## CONCLUSION

For the reasons set forth in their Objections, and discussed above, Wholesalers respectfully object to the Special Master's findings in SMO 82 and ask the Court to modify SMO 82 to require TPP Plaintiffs to properly respond to RFPs 7, 8, 9, and 11-28. TPP Plaintiffs' Opposition presents no reason for the Court to deny Wholesalers their requested relief.

Dated: September 25, 2023

Respectfully submitted,

/s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
*Liaison Counsel for Wholesalers*

Jeffrey D. Geoppinger, *Liaison Counsel for Wholesalers*
ULMER & BERNE LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Tel.: (513) 698-5038
Fax: (513) 698-5039
Email: jgeoppinger@ulmer.com

**Counsel for AmerisourceBergen Corp.**

Andrew D. Kaplan
CROWELL & MORING LLP
1000 Pennsylvania Avenue NW
Washington., D.C. 20004
Tel.: (202) 624-1000
Fax: (202) 628-5116
Email: akaplan@crowell.com

**Counsel for Cardinal Health Inc.**

D'Lesli M. Davis
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Tel.: (214) 855-8221
Fax: (214) 855-8200
Email:
dlesli.davis@nortonrosefulbright.com

**Counsel for McKesson Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 25, 2023, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will send

a notice of electronic filing to all CM/ECF participants in this matter.

<u>/s/ <i>Jeffrey D. Geoppinger</i>            </u>
Jeffrey D. Geoppinger
