# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge |

## ZHP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL WECHAT PRODUCTION

# TABLE OF CONTENTS

<u>Page</u>

FACTUAL BACKGROUND ................................................................................3

ARGUMENT .....................................................................................................7

I.      PLAINTIFFS' MOTION SHOULD BE DENIED UNDER RULE 34 BECAUSE ZHP DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OF WECHAT DATA ON ITS EMPLOYEES' PERSONAL PHONES. ...................................................................................8

II.     PLAINTIFFS' MOTION SHOULD ALSO BE DENIED BECAUSE THE BURDEN OF THE REQUESTED DISCOVERY FAR OUTWEIGHS ANY POTENTIAL BENEFIT. ...........................................16

        A.      Plaintiffs Have Not Established That A Search Of The WeChat Accounts On Employees' Personal Smartphones Is Likely To Yield Discoverable Evidence. .............................................................17

        B.      Any Potential Benefit From Searching ZHP Employees' Personal Smartphones Is Far Outweighed By The Substantial Burdens................................................................................................19

CONCLUSION ...................................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agerbrink v. Model Service LLC*,
  No. 14 Civ. 7841, 2017 WL 933095 (S.D.N.Y. Mar. 8, 2017) .................... 16

*Ainstein AI, Inc. v. ADAC Plastics, Inc.*,
  No. 23-2166, 2023 WL 3568661 (D. Kan. May 19, 2023) ................... 18, 22

*Alter v. Rocky Point School District*,
  No. 13-1100, 2014 WL 4966119 (E.D.N.Y. Sept. 30, 2014) ........................ 9

*Block v. Jaguar Land Rover North America, LLC*, No. CV 15-5957,
  2017 WL 11696617 (D.N.J. Aug. 23, 2017) .................................................. 7

*Brooks Sports, Inc. v. Anta (China) Co.*,
  No. 1:17-cv-1458, 2018 WL 7488924 (E.D. Va. Nov. 30, 2018) ................ 24

*Halabu Holdings, LLC v. Old National Bancorp*,
  No. 20-10427, 2020 WL 12676263 (E.D. Mich. June 9, 2020) ............... 9, 10

*In re Valsartan, Losartan, & Irbesartan Product Liability Litigation*,
  No. MDL 2875, 2021 WL 6010575 (D.N.J. Dec. 20, 2021) ........................ 6

*Jones v. Varsity Brands, LLC*,
  No. 20-cv-02892, 2021 WL 5889984 (W.D. Tenn. Dec. 13, 2021) ............. 19

*Krishnan v. Cambia Health Solutions, Inc.*,
  No. 2:20-cv-574, 2021 WL 3129940 (W.D. Wash. July 23, 2021) . 10, 11, 12

*Lalumiere v. Willow Springs Care, Inc.*,
  No. 1:16-CV-3133, 2017 WL 6943148 (E.D. Wash. Sept. 18, 2017) ........ 8, 9

*LKQ Corp. v. General Motors Co.*,
  No. 20 C 2753, 2021 WL 4127326 (N.D. Ill. Sept. 9, 2021) ........................ 16

*Matter of Skanska USA Civil Southeast Inc.,*
  No. 3:20-CV-05980, 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) ....... 19, 20

*McCormick v. Dresdale*,
  No. CV 09-474, 2011 WL 13364587 (D.R.I. June 3, 2011) ........................ 19

*Playboy Entertainment Group, Inc. v. United States*,
    No. CIV. A. 96-94, 1997 WL 873550 (D. Del. Dec. 11, 1997) .....................8

*RightCHOICE Managed Care, Inc. v. Hospital Partners, Inc.*,
    No. 4:18-CV-06037, 2019 WL 3291570 (W.D. Mo. July 22, 2019) ..............8

*Sandoz, Inc. v. United Therapeutics Corp.*,
    No. 19-cv-10170, 2021 WL 2374349 (D.N.J. June 10, 2021) ......................9

*Schick v. Cintas Corp.*,
    No. CV 17-7441, 2020 WL 1873004 (D.N.J. Apr. 15, 2020).........................7

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the
    Southern District of Iowa*,
    482 U.S. 522 (1987)........................................................................................22

*Stafford v. Bojangles' Restaurants Inc.*,
    No. 3:20-CV-00266, 2022 WL 2680040 (W.D.N.C. July 11, 2022) ..............9

*Stewart v. First Transit, Inc.*,
    No. CV 18-3768, 2019 WL 13027112 (E.D. Pa. Sept. 3, 2019) .....................8

*Stinson v. City of New York*,
    No. 10 Civ. 4228, 2016 WL 54684 (S.D.N.Y. Jan. 5, 2016) ..........................9

*Takacs v. Union County*,
    No. CIVA 08-711, 2009 WL 3048471 (D.N.J. Sept. 23, 2009)............. 15, 16

## RULES

Fed. R. Civ. P. 26(b)(1)...............................................................................................6

Fed. R. Civ. P. 34(a)(1)...............................................................................................7

Plaintiffs' motion to compel asks the Court to force defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC (collectively, "ZHP") to require their employees to turn over their personal smartphones and access to their most sensitive personal information, even though: (1) the Court has already found such excessive discovery to be improper; (2) Chinese law would not allow it; (3) ZHP's employees will either refuse to provide their phones or feel coerced into compromising their confidential information; and (4) the discovery will almost certainly yield zero non-cumulative, relevant information. Plaintiffs' attempt to access the private data of non-party employees should once again be denied.

As set forth below, WeChat is a popular Chinese social media application that combines the functionality of dozens of online services – including, but not limited to, video and audio calling, photo sharing, mobile banking, ride hailing, online dating, and storage of healthcare information – into one. Accordingly, an individual's WeChat data contain a substantial amount of highly private, personal information belonging to the user. Plaintiffs argue that ZHP should be required to acquire and search its employee custodians' personal WeChat data from their personal phones because some custodians may have used WeChat to engage in business-related text communications despite ZHP's express policy prohibiting it. This extraordinary request far exceeds the bounds of permissible discovery.

*First*, as numerous courts have recognized in rejecting similar discovery requests, data on employees' personal smartphones are not within their employers' possession, custody or control and therefore are not discoverable under Federal Rule 34.[1] The few cases plaintiffs cite as allowing discovery of a party's employees' smartphone data involved inapposite situations where the smartphones at issue were issued or controlled by the employer or there was strong evidence that personal devices were regularly used for business purposes. Plaintiffs cannot establish either circumstance in this case.

*Second*, the discovery plaintiffs seek is also barred under Federal Rule 26 because plaintiffs have come nowhere close to demonstrating that employees' personal WeChat data are likely to include information relevant to plaintiffs' losartan- and irbesartan-related claims, much less that the value of such casual communications would outweigh the heavy burdens of the intrusive discovery sought. To the contrary, the evidence cited by plaintiffs primarily demonstrates that certain ZHP employees used WeChat to make voice calls or hold video conferences, neither of which would have generated discoverable data. And the few documents

---

[1] Plaintiffs do not even attempt to argue that an employer has control over, or a court may order an employer to search, personal devices belonging to *former* employees. As a result, plaintiffs' motion presumably only seeks discovery of WeChat data on personal smartphones of custodians who are current company employees.

suggesting that employees may have occasionally used WeChat to send information despite company policy cannot justify the enormous logistical and legal burdens associated with obtaining, searching and potentially producing employee custodians' personal WeChat data. As set forth below, plaintiffs' own cited authorities make clear that it would be inappropriate to order ZHP to collect and broadly search employees' personal devices – and it would be technologically complicated and time-consuming for ZHP employees to individually search for and extract any potentially relevant WeChat data from their personal smartphones. Moreover, obtaining the private WeChat data of the roughly 50 employee custodians located in China would potentially subject ZHP to civil liability under China's recently-enacted Personal Information Protection Law ("PIPL"), significantly increasing the already substantial burden posed by this unnecessary discovery.

For all of these reasons, plaintiffs' motion should be denied.

## FACTUAL BACKGROUND

On November 21, 2021, in connection with a valsartan-related discovery dispute, Judge Vanaskie entered Special Master Order No. 54. (*See* Dkt. No. 1753.) In that Order, the Court held that ZHP would "not be compelled to retrieve handheld

devices from key custodians and search the devices for responsive information."[2] (*Id.* at 6-7.)

Discovery recently began in connection with plaintiffs' losartan- and irbesartan-related claims and, after significant negotiations, ZHP agreed to search the custodial files of 80 current employees, former employees and consultants for a wide variety of terms related to losartan and irbesartan.[3] At the end of the meet-and-confer process, plaintiffs stated for the first time that they intended to ask the Court to order ZHP to collect, search and produce data from employee custodians' personal WeChat accounts, despite this Court's prior ruling. (*See* August 24, 2023 Email re: WeChat (Ex. 1 to the Certification of Jessica Davidson, Esq. ("Davidson Cert.")) (rejecting ZHP's argument that the issue of WeChat was previously settled and informing counsel that plaintiffs intended to brief the issue).)

WeChat is a Chinese social media application developed by Tencent, a Chinese technology and entertainment company. (*See* Declaration of Yong Zhou

---

[2]    Plaintiffs' assertion that the WeChat data "should have been collected from custodians" in connection with valsartan-related discovery is in direct conflict with Special Master Order No. 54, which denied plaintiffs' request that "all ZHP custodians' mobile devices be searched, and relevant documents produced." (Pls.' Mem. at 1.)

[3]    Notably, ZHP has agreed to undertake these significant discovery efforts even though no lots of losartan API or finished dose product were recalled in the United States, no lots of its irbesartan API were recalled, and only eight lots of its irbesartan finished dose product were recalled.

("Zhou Decl.") ¶ 3 (Ex. 2 to Davidson Cert.).) WeChat is used ubiquitously within China and combines a large number of personal technology functions into one application, including, for example, video and phone calling, social media access and photo-sharing, banking, mobile payments, shopping, travel booking, rideshare services, food delivery and personal fitness tracking. (*Id.*) The WeChat application is primarily installed and used on smartphone devices, which ZHP does not issue to its employees except in limited circumstances. (*Id.* ¶ 5.) ▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ As ZHP's discovery vendor has explained, this would pose a number of logistical burdens, likely requiring hundreds of hours of work by the vendor just to identify and collect materials from employee custodians' personal phones, in addition to significant time and costs required to process the data

and search it for relevance and privacy-related concerns. (*See* Declaration of Frances Chen ("Chen Decl.") (Ex. 3 to Davidson Cert.).)

The burden to ZHP associated with the discovery of WeChat information would be even greater with respect to the roughly 50 employee custodians located in China. As explained by Dr. Rogier Creemers – a legal expert on Chinese digital technology and related policies, whose work has previously been cited by this Court[4] – China recently enacted the PIPL, which strictly limits the ability to access private information from Chinese citizens and places particular controls on the export of such information outside of the country. (*See* Decl. of Rogier Creemers, Ph.D. ("Creemers Decl.") ¶¶ 10, 13 (Ex. 4 to Davidson Cert.).) Under the PIPL, express and voluntary consent is required to access the private data of individuals. (*Id.* ¶¶ 20, 21.) In light of the highly personal and sensitive nature of the information included in personal WeChat accounts, which can include, for example, "personal chat histories, personal photos, health records, financial information, and/or information on a user's dating history and sexual orientation," it is unclear whether ZHP (as an employer) could realistically obtain voluntary and "lawful consent" to collect and review this data from its employees under Chinese law. (*Id.* ¶ 19.)

---

[4]     *See In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *9 (D.N.J. Dec. 20, 2021) (citing translation of Chinese privacy law by Dr. Rogier Creemers) (citation omitted).

# ARGUMENT

Federal Rule of Civil Procedure 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Consistent with this rule, courts in this Circuit "limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case when [certain] factors are considered including . . . burden and expense." *Schick v. Cintas Corp.*, No. CV 17-7441 (JMV), 2020 WL 1873004, at *2 (D.N.J. Apr. 15, 2020). In addition, separate and apart from the limits set forth in Rule 26, Federal Rule of Civil Procedure 34 limits the production of documents or electronically stored information to materials that are "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Plaintiffs' motion to compel should be denied under both Rule 34 and Rule 26 because: (1) ZHP does not have possession, custody or control of its employees' personal phones or the WeChat data contained on those phones; and (2) the significant logistical and legal burdens of production would far outweigh any limited potential relevance.

## I. PLAINTIFFS' MOTION SHOULD BE DENIED UNDER RULE 34 BECAUSE ZHP DOES NOT HAVE POSSESSION, CUSTODY OR CONTROL OF WECHAT DATA ON ITS EMPLOYEES' PERSONAL PHONES.

As an initial matter, personal WeChat data stored on ZHP employees' personal phones is not in the "possession, custody, or control" of ZHP, as required under Rule 34(a)(1). Courts have recognized that the party seeking the production of documents bears the burden of establishing that those materials are in the control of the party from whom the discovery is sought. *See*, *e.g.*, *Block v. Jaguar Land Rover N. Am., LLC*, No. CV 15-5957 (SRC), 2017 WL 11696617, at *1 (D.N.J. Aug. 23, 2017) (affirming magistrate judge's denial of motion to compel where plaintiffs "did not meet their burden" to show the documents in question were within the defendant's possession, custody, or control); *see also Playboy Ent. Grp., Inc. v. United States*, No. CIV. A. 96-94-JJF, 1997 WL 873550, at *4 (D. Del. Dec. 11, 1997) (similar). Plaintiffs cannot make such a showing here.

While plaintiffs cite a variety of cases addressing the discovery of personal electronic devices, none of those cases supports compelling the collection and search of personal smartphones belonging to a party's employees in these circumstances. Indeed, a number of the cases identified by plaintiffs are entirely inapposite because they involved the production of personal cell phone data from individuals who were ***named parties*** in litigation rather than third-party employees. *See RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 4:18-CV-06037-DGK, 2019 WL

3291570, at *2 (W.D. Mo. July 22, 2019) (Pls.' Mem. at 5) (noting that text messages of two named individual defendants would be produced); *Stewart v. First Transit, Inc.*, No. CV 18-3768, 2019 WL 13027112, at *2 (E.D. Pa. Sept. 3, 2019) (Pls.' Mem. at 5) (ordering production of "all GPS data, call logs, and text messages from the cell phones and hand-held communication devices" from plaintiffs themselves). And other cases cited by plaintiffs merely allow the production of data from company-issued devices. *See, e.g.*, *Lalumiere v. Willow Springs Care, Inc.*, No. 1:16-CV-3133-RMP, 2017 WL 6943148, at *2 (E.D. Wash. Sept. 18, 2017) (Pls.' Mem. at 7); *Stinson v. City of New York*, No. 10 Civ. 4228 (RWS), 2016 WL 54684, at *5 (S.D.N.Y. Jan. 5, 2016) (Pls.' Mem. at 7) (allowing discovery of "information stored on officers' Department-issued devices" because "those devices were within the possession, custody, or control of the City").[5]

By contrast, these and other courts have consistently recognized that a company "does not possess or control the [data on] personal phones of its employees

---

[5]     Additional cases cited by plaintiffs are inapposite for other reasons. *See Sandoz, Inc. v. United Therapeutics Corp.*, No. 19-cv-10170, 2021 WL 2374349, at *2 (D.N.J. June 10, 2021) (Pls.' Mem. at 4-5) (ordering production of text messages from phone of defendant's Chief Financial Officer after defense counsel indicated that defendant had already collected and reviewed the executive's texts); *Alter v. Rocky Point Sch. Dist.*, No. 13-1100 (JS)(AKT), 2014 WL 4966119, at *10 (E.D.N.Y. Sept. 30, 2014) (Pls.' Mem. at 5) (addressing party's document preservation responsibilities with respect to laptops and cell phones without discussing the circumstances in which personal cell phone data could be collected or produced).

and may not be compelled to disclose [data] from employees' personal phones." *Lalumiere*, 2017 WL 6943148, at *2; *see also, e.g.*, *Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at *3 (E.D. Mich. June 9, 2020); *Stafford v. Bojangles' Restaurants Inc.*, No. 3:20-CV-00266-MOC-DSC, 2022 WL 2680040, at *1 (W.D.N.C. July 11, 2022) (refusing to allow discovery of personal smartphones belonging to defendants' employees). For example, in *Halabu Holdings* (a case cited by plaintiffs), the court rejected the plaintiff's request that a corporate defendant be required to search and collect text messages from the personal mobile phones of the defendant's employees where the plaintiff could not "establish that" the defendant had "any . . . control over the personal devices of its employees." 2020 WL 12676263, at *3. There, the defendant represented that "its employees personally owned" the devices in question and the plaintiff failed to point to any agreement or practice that suggested the employer had contracted "for the right to access the employees' personal phones." *Id.* In denying the discovery, the court explained that allowing "information on an employee's personal device [to] be compelled by way of a document request directed to the employer without any further indicia of control over the device by the employer . . . would have serious potential consequences for an employee's privacy rights." *Id.* at *2. As the court acknowledged, "[d]evices and the information they contain are reasonably

understood to constitute the property of those who purchased the devices and operated them." *Id.*

Similarly, in *Krishnan v. Cambia Health Solutions, Inc.*, No. 2:20-cv-574-RAJ, 2021 WL 3129940 (W.D. Wash. July 23, 2021), the court denied a motion to compel the production of the defendants' employees' text messages because the plaintiff did not meet "its burden to establish that Defendants are in 'control' of" communications on employees' personal phones. *Id.* at *2. As the court explained, "[i]n determining whether an employer has 'control' of its employees' communications on their personal devices, the Court must consider several factors, including whether the employer issued the devices, whether the devices were used for business purposes, and whether the employer had a legal right to obtain communications from the devices." *Id.* While the plaintiff there produced "evidence of text messages between [one of the defendants'] supervisor[s] . . . and several [other of the defendants'] employees discussing work-related material on their personal devices," the court refused to compel the production of the defendants' employees' smartphones because the phones were not "issued by Defendants" and the plaintiff had "not established that the devices [were] routinely used for business purposes or to what extent." *Id.* Further, the court noted that even though a company policy gave the defendant access to information on company-issued devices, the

plaintiff had no evidence that the defendant had a "legal right to obtain the communications from its employees' personal cell phones." *Id.*

Plaintiffs here cannot satisfy Rule 34's "possession, custody, or control" standard for similar reasons.

***First***, ZHP does not issue smartphones to most of its employees and does not provide ***any*** employees with smartphones that are capable of accessing WeChat. (Zhou Decl. ¶ 5.) While plaintiffs point to the deposition testimony of ZHP employee Yuelin Hu as evidence that "at least some ZHP employees had company-provided mobile devices" (Pls.' Mem. at 7), ███████████████████

█████████████████████████████████

█████████████████████████████████

████████████████████████  ███████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

████████████████ As a result, there is no evidence that ZHP has possession, custody or control over its employee custodians' smartphones or the WeChat data located on those devices.

*Second*, plaintiffs have not come anywhere close to demonstrating that ZHP employees "routinely used" WeChat on their personal smartphones to conduct written communications "for business purposes." *Krishnan*, 2021 WL 3129940, at *2. As noted above, ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ ████████████████ And while plaintiffs insist that a small number of the hundreds of thousands of documents produced by ZHP in connection with valsartan-related litigation demonstrate that written WeChat communications were "created as part of a regular practice of ZHP and for the purpose of carrying out ZHP's business" (Pls.' Mem. at 8), the documents themselves make clear that is not the case.

For one thing, a substantial portion of the documents identified by plaintiffs clearly refer to the use of WeChat to conduct video conferences (in the same way corporate employees in the United States would use Zoom or Webex) or audio calls, not for written communications. (*See, e.g.*, Pls.' Mem Ex. A at 2 (referencing a WeChat *call*); Ex. C at 1 ("I am okay to use WeChat for *teleconference* tonight.") (emphasis added); Ex. D (summarizing meeting held by WeChat); Ex. E (same); Ex. P (circulating meeting minutes from "WeChat conference call") (translation [6]

---

[6]    Because some of the translations of internal ZHP documents submitted by plaintiffs are unclear or unintelligible, ZHP has submitted its own translations of

*(cont'd)*

attached as Ex. 6 to Davidson Cert.); Ex. S ("We will have a WeChat meeting tomorrow at 3:00 PM") (translation attached as Ex. 7 to Davidson Cert.).)[7] And while plaintiffs make much of the fact that some ZHP employees list their WeChat contact information in their email signature blocks (*see* Pls.' Mem. at 3 (citing Exs. F & G)), that practice is no different from a corporate employee in the United States listing a personal cell phone number in his or her contact information – and does not suggest that written business communications were regularly made over WeChat in light of ZHP's express policy to the contrary. (*See* Zhou Decl. ¶ 4 ("Individuals in China quite often list their WeChat addresses in their professional contact information because telephone calls through WeChat are common, free of cost, and can be answered on any personal device on which the individual has installed the application.").) In addition, as explained in detail in Section II, below, the smattering

---

these materials. Given that the precise language of each document is not at issue in this dispute – rather, the documents have been submitted as purported examples of the use of WeChat – ZHP has not provided certified translations.

[7]    A number of additional documents cited by plaintiffs include references to WeChat that are vague and, particularly in light of translation issues, may also relate to audio or video communications. (*See, e.g.*, Pls.' Mem Ex. H at 1 ("as we discussed on wechat"); Ex. I at 1 ("[t]hey have been urging us on WeChat") (translation attached as Ex. 8 to Davidson Cert.); Ex. B ("as chatted by wechat"); Ex. R ("We plan to have a conference call to discuss this version! . . . Please inform. Reply on WeChat upon receipt") (translation attached as Ex. 9 to Davidson Cert.); Ex. T (forwarding Exhibit R to additional individuals) (translation attached as Ex. 10 to Davidson Cert.).)

of other documents that plaintiffs claim show employee use of WeChat are either misdescribed or merely demonstrate that a few employees occasionally sent information from WeChat accounts to company sources, where they would be available for collection. This is a far cry from proof of routine use of WeChat on personal smartphones to conduct written company communications unavailable from other sources.

***Third***, plaintiffs have not identified any evidence that ZHP has a legal right to access WeChat data contained on employees' personal cell phones. While plaintiffs claim to have identified a "written polic[y] evidencing [ZHP's] right to control and access its employees' WeChat information" by "requiring the use of WeChat and the storing of WeChat chat histories" (Pls.' Mem. at 9 (citing Ex. U) (translation attached as Ex. 11 to Davidson Cert.)), the document they cite is not a policy and says nothing of the sort. Instead, the document merely notes that a ZHP employee attending a 2019 audit by European Union regulators used WeChat to communicate requests made by the auditor to another team member in real time so that those requests could be documented in Word and saved in ZHP's files. (*See* Pls.' Mem. Ex U at 6.) Notably, the Word document containing the information communicated through WeChat about the inspection ***has been produced*** to plaintiffs. (*See* Davidson Cert., Exs. 12 & 13 (ZHP02394113) (transcript of March 2019 API EU Joint Audit and translation).) Nothing in the document plaintiffs cite suggests that

15

ZHP generally required WeChat use or has a legal right to access employees' private WeChat information.

In short, ZHP does not have custody or control over its non-party employees' personal smartphones and – for this reason alone – the motion to compel should be denied.

## II.   PLAINTIFFS' MOTION SHOULD ALSO BE DENIED BECAUSE THE BURDEN OF THE REQUESTED DISCOVERY FAR OUTWEIGHS ANY POTENTIAL BENEFIT.

Plaintiffs' motion should also be denied under Rule 26 because the discovery at issue would be unduly burdensome.

Rule 26(b)(1) provides that requested discovery must be "proportional to the needs of the case" and therefore a "discovery request may be denied if . . . the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Takacs v. Union Cnty.*, No. CIVA 08-711 KSH/MAS, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009). The purpose of Rule 26's proportionality requirement "is 'to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry.'" *Id.* (citation omitted). Accordingly, "[t]he standard for evaluating discovery is reasonableness, not perfection." *Agerbrink v. Model Serv. LLC*, No. 14 Civ. 7841 (JPO) (JCF), 2017 WL 933095, at

\*5 (S.D.N.Y. Mar. 8, 2017).  Because "a party is not entitled to every document that strikes the fancy of counsel," discovery should be limited where there is no evidence it will actually yield a significant amount of discoverable information such that the burden of the discovery is warranted.  *LKQ Corp. v. Gen. Motors Co.*, No. 20 C 2753, 2021 WL 4127326, at \*1 (N.D. Ill. Sept. 9, 2021).

Plaintiffs have not come close to demonstrating that the WeChat accounts on the relevant employees' personal smartphones are likely to contain sufficient unique business information related to irbesartan and losartan to justify the significant logistical and legal burdens associated with the highly intrusive discovery they seek.

**A.**   **Plaintiffs Have Not Established That A Search Of The WeChat Accounts On Employees' Personal Smartphones Is Likely To Yield Discoverable Evidence.**

There is no evidence that ZHP employees' personal WeChat accounts are likely to contain a significant amount of information relevant to plaintiffs' losartan- or irbesartan-related claims, much less information that is not available to plaintiffs from other sources.

As noted above, plaintiffs point to a limited number of documents in ZHP's production that they claim show that ZHP employees used WeChat for work purposes, but most of those materials refer to audio calls or video conferences through the application, which would not result in any saved data.  (*See* pg. 13, *supra*.)  The handful of remaining documents identified by plaintiffs come nowhere

close to establishing that ZHP employees regularly engaged in text communications

via WeChat about company business that would not be available from other sources.

For example:

- Three of the documents cited by plaintiffs suggest that, to the extent
  ZHP-related communications were made on WeChat accounts, that
  information was sent to ZHP email accounts or downloaded onto company
  computers such that it would be available on, and could be collected from,
  ZHP sources. (*See* Pls.' Mem., Ex. M (employee forwarding WeChat
  communication to work email account); Exs. J & K (file paths of produced
  documents indicate materials were downloaded to ZHP system from
  WeChat).)

- Plaintiffs also point to two produced emails in which employees appear to
  reference WeChat chat groups related to valsartan. (*See generally* Pls.'
  Mem., Exs. L & Q (translation of Ex. Q attached as Ex. 14 to Davidson
  Cert.).)  It is unclear, however, whether:  (1) such WeChat groups were
  used primarily for teleconferencing or text communications; (2) similar
  WeChat groups exist for either losartan or irbesartan; or (3) any employee
  WeChat accounts would contain data not sent to company sources.

- Plaintiffs assert that another document references WeChat "as a place to
  pull information from for draft responses to FDA audits" (Pls.' Mem. at 4),
  but that is a misreading.  The cited document merely notes that, on one
  particular occasion, employees at ZHP ***may have*** sent a scientific
  instrument vendor a screenshot via WeChat in the process of
  troubleshooting a problem with the instrument. (Pls.' Mem., Ex. N. at 5
  ("By consulting with the technical support from the instrument vendor
  (Agilent, WeChat screen shots?), the analyst was told . . .").)

The fact that there are a few documents among the nearly four million pages

of materials produced by ZHP that reference WeChat – or indicate that WeChat may

have been used for business communications on limited occasions – cannot possibly

establish that employees' personal WeChat accounts are a likely source of

information regarding plaintiffs' claims with respect to losartan and irbesartan. Moreover, a number of those documents suggest that the information purportedly available on WeChat was likely sent to company sources and could potentially be collected from company files. As a result, plaintiffs are unable to point to any concrete, legitimate benefit they would obtain from discovery of WeChat materials on employees' personal smartphones. Quite simply, this is precisely the type of fishing expedition Rule 26 was revised to avoid.

**B.** **Any Potential Benefit From Searching ZHP Employees' Personal Smartphones Is Far Outweighed By The Substantial Burdens.**

In stark contrast to the minimal benefit, if any, of the discovery sought, the burden of collecting and searching WeChat data from employee custodians' personal smartphones would be substantial. It is well recognized that searches of a party's employees' personal cell phones are "unduly intrusive given the disproportionate amount of personal information totally irrelevant to th[e] lawsuit that is likely on [ ] individuals' personal cell phones." *Ainstein AI, Inc. v. ADAC Plastics, Inc.*, No. 23-2166-DDC-TJJ, 2023 WL 3568661, at *7 (D. Kan. May 19, 2023). Accordingly, courts regularly deny requests that corporate parties be required to collect and search employees' personal mobile devices as unduly burdensome. *See, e.g., id.* ("The Court finds Plaintiff's request to image these employees' personal cell phones overly broad, unduly burdensome, and unduly intrusive"); *Jones v. Varsity Brands, LLC*, No. 20-cv-02892-SHL-TMP, 2021 WL 5889984, at *3 (W.D. Tenn. Dec. 13, 2021)

("a search of all additional custodians' personal phones would be overly burdensome"); *McCormick v. Dresdale*, No. CV 09-474-PJB-LM, 2011 WL 13364587, at *2 (D.R.I. June 3, 2011) ("The request for documents concerning communications from personal phones or other devices is overly broad and unduly burdensome."). The same result is required here.

***First***, the identification and collection of WeChat data from employee custodians' personal smartphones would be a complex, time-consuming and highly intrusive process.

Even in cases where a party is deemed to have control over its employees' personal devices, courts recognize that the unilateral collection and search of those devices is inappropriate. For example, plaintiffs rely on *Matter of Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021) (Pls.' Mem. at 6, 8), in which the court ***denied*** the plaintiffs' request to compel a corporate defendant to collect and search the personal cell phone of one of its employees. According to the court, a defendant's obligation to produce responsive information "does not extend to requiring [it] to extract and review all the cell phone data on [an employee's] cell phone." 2021 WL 4953239, at *4. Indeed, the court noted that it "was unable to find any case where an employer was ordered to take possession of an employee's personal device for purposes of searching the entire data on the device." *Id.* Instead, "in those cases where [a] court has found that an

employer has 'control' over an employee's personal device, courts have only required the employer to ask the employee to search and produce the responsive information." *Id.*

For these reasons, to the extent ***any*** search of employee smartphones is allowed, it would have to be performed manually by each custodian, which would create significant logistical burdens. As explained in the declaration of Frances Chen, such a manual extraction would require one or more employees from ZHP's discovery vendor to: (1) travel to the location of each of the 51 current employee custodians; (2) obtain agreement from each custodian to search his or her personal WeChat account; (3) walk each custodian through a manual search of his or her WeChat account for relevant communications using a limited number of search terms that would have to be negotiated by the parties; (4) aid each employee in segregating any responsive communications; and (5) export responsive content to "dummy" phones for further processing at FTI's forensic laboratory in Shanghai. (*See* Chen Decl. ¶¶ 8-12.) This process alone would take hundreds of hours, which would not include the significant time and effort required to review any material collected, including to identify private or privileged information, and to process any production. (*See id.* ¶ 13.)

Even if it were legally appropriate to compel ZHP to simply collect and search each employee custodian's phone itself, that would also pose logistical burdens. As

explained by Ms. Chen, forensically copying the data available on each employee custodian's smartphone would require a personal meeting between FTI and each employee custodian to secure the custodian's voluntary consent for FTI's collection of all available data on the custodian's smartphone for further processing and searching. (*Id.* ¶¶ 8-11.) Moreover, the burden of reviewing the data on a given custodian's smartphone, which is likely to be substantial, would be very significant in terms of time and cost. Most importantly, unilaterally collecting and searching and employee's phone would raise significant privacy concerns because, "even if only the WeChat data were extracted from each employee custodian's personal smartphone device, all of the communications included on the WeChat application, regardless of their content, sender or recipient, would need to be processed before the communications could be searched with relevant terms or date ranges," and those communications could include "personal, financial or health information or other private information" stored on the application. (*Id.* ¶¶ 7, 8.)

In short, collection of employees' personal smartphones and search of WeChat data would amount to a search of the entirety of each employee's digital life, which would be "unduly intrusive," "invasive" and unduly burdensome under Rule 26. *Ainstein*, 2023 WL 3568661, at *7.

***Second***, obtaining WeChat data from the personal smartphones of the approximately 50 employee custodians living in China (regardless of how those data

are collected) could potentially subject ZHP to legal liability under Chinese privacy law.

The United States Supreme Court explained in *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." 482 U.S. 522, 546 (1987). Granting the discovery plaintiffs seek here would violate these principles because compliance with such an order would potentially subject ZHP to liability under China's recently-enacted PIPL.

As explained by Dr. Creemers, an expert in Chinese privacy law, the PIPL "protects 'all kinds of information recorded by electronic or other means related to identified or identifiable natural persons,'" which would certainly "include information contained on individuals' personal smartphones and in applications such as WeChat." (Creemers Decl. ¶ 9 (citation omitted).) "The PIPL establishes consent as the principal condition for the processing of [such] personal information" and specifies that consent "must be voluntary, explicit and fully informed." (*Id.* ¶ 10.) Given that Chinese citizens use WeChat in nearly every aspect of their personal lives – from making phone and video calls, to accessing bank information to making mobile payments to scheduling medical appointments – it is questionable whether

an employee could ever provide the voluntary and lawful consent necessary to collect this information under the PIPL, particularly given the relationship between ZHP and its employees. (*See generally id.* ¶¶ 19-22.) Specifically, "the employment relationship between ZHP and the individuals concerned creates a power dynamic that People's Courts may view as precluding the voluntary, non-coercive nature of the consent given." (*Id.* ¶ 22.) Further, even if an employee initially consented to a search of his or her WeChat data, he or she could "file a lawsuit under the Civil Code prior or subsequent to [his or her] device[] being accessed, or report the matter to the [Cyberspace Administration of China] for investigation under the PIPL." (*Id.*) This could subject ZHP to penalties that would pose a serious threat to the company. (*See id.* ¶ 30 (noting Chinese company fined over a billion U.S. dollars in connection with a violation of the PIPL).)

Moreover, even if it were possible for ZHP to ***collect*** WeChat data without violating the PIPL or other privacy laws, any responsive information would be subject to a lengthy, expensive and time-consuming security review to determine whether ZHP could legally export the data to plaintiffs in the United States. (*See id.* ¶¶ 13, 31-34.) Given the vast amounts of extremely personal and sensitive information that may be available in WeChat accounts, it is likely that the requisite Chinese government review would be particularly rigorous. (*Id.* ¶ 34.)

Plaintiffs suggest that in *Brooks Sports, Inc. v. Anta (China) Co.*, No. 1:17-cv-1458 (LO/TCB), 2018 WL 7488924, at *1 (E.D. Va. Nov. 30, 2018), the court held that it is appropriate to compel a Chinese company to collect and produce WeChat information from its employees even if doing so would force the company to violate Chinese privacy laws. (Pls.' Mem. at 9-10.) This is untrue. *Brooks Sports* was decided three years ***before*** the enactment of the PIPL in 2021 and therefore did not address the heavy burdens associated with the review and production of materials subject to protection under the law. In addition, that decision, which addressed a motion for sanctions based on allegations that the defendant engaged in a variety of discovery violations, turned on very different facts. *See* 2018 WL 7488924, at *1. Specifically, the plaintiffs in *Brooks Sports* had established that the company "clearly knowingly allowed its employees to use WeChat for substantive business communications through ***only*** their personal accounts and devices" and that WeChat was used extensively by the high-level executive who the company itself had identified as the "only person having information related to the litigation." *Id.* at *10, *13 (emphasis added). As a result, the court concluded that the company's failure to comply with a request for WeChat information – in addition to other misconduct – warranted sanctions.

The PIPL now clearly prohibits the collection of private information contained in a Chinese employee custodian's WeChat account without express and

informed consent – and it is unclear whether an employer like ZHP could obtain such voluntary consent from its employees given the highly sensitive nature of the personal information available in WeChat and ZHP's power dynamic with its employees.  Further, as explained in detail above, there are no special circumstances in this case capable of demonstrating that ZHP "clearly [and] knowingly allowed" its employees to use WeChat to conduct written business communications, much less that employees' personal WeChat accounts are likely to contain communications relevant to plaintiffs' losartan- and irbesartan-related claims.

In short, the substantial logistical and legal burdens of obtaining WeChat data from employee smartphones vastly outweigh any possible benefit of such discovery under Rule 26.

## **CONCLUSION**

For all of the reasons set forth above, ZHP respectfully requests that the Court deny plaintiffs' motion to compel.

Dated:  October 6, 2023

Respectfully submitted,

By: */s/ Jessica Davidson*
Jessica Davidson (NY Bar No. 6034748)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2588
Facsimile: (917) 777-2588
jessica.davidson@skadden.com

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Nina R. Rose
1440 New York Ave., N.W.
Washington, D.C. 20005
Tel.: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

*Attorneys for Zhejiang Huahai
Pharmaceutical Co., Ltd., Huahai U.S., Inc.,
Prinston Pharmaceutical Inc., and Solco
Healthcare U.S., LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson (NY Bar No. 6034748)