# EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br><br>*This Documents Relates to All Actions* | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Judge |

### DECLARATION OF FRANCES CHEN

1. I, Jia (Frances) Chen, am a Managing Director in the Technology segment with FTI Consulting, Inc. ("FTI"). I am based in Hong Kong, China. I have been employed by FTI since 2018. In my current role, I routinely advise clients in a wide range of industries, including healthcare and life sciences, pharmaceutical, and biotech companies, on cross-border litigation and multi-jurisdictional data privacy matters. I have published a number of articles in these areas, including "Key Questions Answered for China's Personal Information Protection Law" for *Chief Privacy Officer Magazine* and "Roadmap for cross-border data transfers: China's new measures for security assessments" for *IFLR* in 2022. I received my J.D. from The University of Iowa College of Law and hold a B.A. in Administrative Science and a minor in Japanese from Colby College.

2. FTI's global e-discovery practice provides a variety of professional services to its clients, including the identification of, and collection from, a wide range of data sources in cross-border contexts. FTI employs over 7,500 professionals worldwide, including a number

1

of professionals in offices in Beijing, Shanghai, and Shenzhen, China. FTI has considerable experience in extracting data from digital sources like social media, chat, and instant message applications; developing cross-border discovery workflows; and managing multi-jurisdictional data privacy concerns.

3. FTI has been retained by Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare US, LLC (collectively, the "ZHP Defendants") to provide data collection, analysis, and review services in connection with plaintiffs' discovery requests in the above-captioned litigation.

4. I have been asked to provide this declaration to assist the Court in understanding the logistical complications and burdens associated with plaintiffs' request for the production of WeChat data that may exist on the personal smartphone devices of current ZHP employee custodians.

5. The statements set forth below are based upon my personal knowledge and experience, discussions with other FTI personnel, and industry standards that FTI employs in its practice.

6. WeChat is a widely used communication platform in China and is commonly installed and used on smartphone devices. WeChat allows users to place voice or video calls, send messages, and share files. It also allows users to, among other things, browse social media, post information and pictures, make mobile payments, and manage personal health records. WeChat does not offer a cloud storage option for individual users. Instead, data, including text communications made through WeChat (*i.e.* chat data), is locally stored on the device on which the application is installed.

7. Based on my experience in other litigations and my understanding from counsel, I understand that voluntary and unambiguous consent is required to collect WeChat data from the personal smartphone devices of individuals for production in litigation. Given the personal, financial, health, and other private information that may be stored within the WeChat application, a WeChat user may have concerns about consenting to allow an employer or other third party to access his or her WeChat account or WeChat communications.

8. In my experience, there is no automated method by which it is possible to segregate personal information stored on a personal smartphone, including on the WeChat application, from other, potentially non-personal information that may be located on the device. I am not aware of any feature on smartphone devices or within the WeChat platform to systematically identify non-personal information. As a result, collection of an employee custodian's personal smartphone would provide FTI with access to all of the accessible and unencrypted information on that phone regardless of content. Even if FTI were to extract only WeChat data from an employee custodian's personal smartphone device, the information and communications included on the WeChat application – regardless of content, sender, or recipient – would need to be processed before the communications could be searched with relevant terms or date ranges. Accordingly, to perform a collection and search of an employee custodian's personal smartphone – or WeChat account – for information responsive to a litigation request, it is FTI's understanding that we would need to secure that individual's voluntary consent to access the personal data on the smartphone and/or WeChat account.

9. And even if it were possible to obtain voluntary consent to make a forensic copy of each employee's smartphone despite the privacy issues involved, there would still be attendant costs associated with this method of data collection. FTI employees would need to travel to

3

the location of each employee custodian to obtain access to his or her personal smartphone, copy the data on the device, and return it. Moreover, the post-collection costs of processing and reviewing the data collected from an employee custodian's phone would likely be significant because the use of the parties' current search terms is likely to pull in a host of personal and irrelevant communications that would require extensive relevance and privacy review of personal data.[1]

10. In light of the potential complications in securing access to an employee custodian's personal smartphone and/or WeChat account, it is possible to conduct a targeted collection of WeChat data that involves the custodian identifying WeChat content and communications with other employees of the ZHP Defendants, if any, that contain one or more of a limited number of easily-searchable terms, assuming that the custodian consents to such a search and collection process.

11. A targeted collection of WeChat data would still require close coordination with the employee. Specifically, one or more FTI employees would need to travel to each employee custodian's location and assist the custodian in searching the WeChat account on his or her personal smartphone device to identify communications subject to collection. Because WeChat does not support the complex search syntax that is utilized by common litigation support software, the search terms agreed upon by the parties in this litigation could not be used to conduct a targeted WeChat search. Instead, the parties would have to reach an agreement regarding a limited number of search terms involving simple syntax that employee

---

[1] For example, search terms like "cancer," "stomachache," "prostate," or "alert" – which are not tied to any of the products or issues in this litigation – may lead to sensitive, personal information being brought into the review population.

4

custodians could use to search their WeChat accounts for potentially relevant information. After information or communications with other employees of the ZHP Defendants responsive to such terms were identified, the communications could be limited to the appropriate date range and exported by FTI personnel.

12. FTI could then potentially use the built-in WeChat function known as "Chat History Migration" to transfer identified communications within a targeted date range from the employee custodian's personal smartphone to an empty or "dummy" phone, which would then be copied and sent to FTI's forensic laboratory in Shanghai for processing.

13. It is my understanding that there are 51 current employee custodians whose documents are being produced in response to plaintiffs' losartan and/or irbesartan-related document requests.[2] I understand that the employee custodians are based at five different work sites in China and the United States and serve in a wide range of functional roles, including manufacturing, quality assurance, regulatory, sales, and purchasing. In my experience, identification and extraction of WeChat data using the targeted method described above may take several hours – if not more – per employee custodian, assuming: (1) that the search parameters were appropriately limited to specific contacts and utilized a small number of reasonably specific terms using simple syntax: and (2) the search results were limited in

---

[2] The remaining 29 custodians are former employees of the ZHP Defendants or third-party consultants. Even if those former employee or third-party custodians could be located and were willing to voluntarily consent to allowing FTI to access their smartphones and search their WeChat data, FTI would have to travel to the location where each custodian works or resides to do so, exponentially increasing the cost and burden of the collection in a manner that cannot be quantified without more information about each custodian's particular circumstances.

number. Even in these circumstances, it is my estimate that it would take hundreds of hours for FTI to collect and extract WeChat communications from the individual smartphones of each of the 51 employee custodians. This estimate does not include time associated with FTI personnel's travel, broader project management and coordination, data processing, or preparation of the data for document review and production, which could also require hundreds of additional hours depending on the information collected.

I declare under penalty of perjury under the laws of the United States that to the best of my knowledge the foregoing is true and correct.

Executed on October 5, 2023 in Hong Kong, China.

*Frances Chen*
_____