IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge<br><br>Honorable Joel Schneider, Magistrate Judge |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**<u>MOTION TO COMPEL WECHAT PRODUCTION</u>**

## **TABLE OF CONTENTS**

**Table of Contents** ................................................................................................................. ii

**Table of Authorities** ............................................................................................................ iii

    A.    ZHP's Argument on Possession Custody and Control Fails ................................. 1

    B.    ZHP's Rule 26 Burden Argument Fails ............................................................... 4

    C.    Other Issues ......................................................................................................... 5

            i.    ZHP's WeChat Data Collection Proposal ..................................................... 5

            ii.    ZHP Cannot Use the PIPL as a Basis to Shield Production ......................... 5

            iii.    The Creemers Declaration is Insufficient to Support ZHP's PIPL Argument .......................................................................................................... 6

    D.    Conclusion .......................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brooks Sports, Inc. v. Anta (China) Co.*,
 2018 WL 7488924 (E.D. Va. Nov. 30, 2018) ..................................................................4

*In Matter of Skanska USA Civ. Se. Inc.*,
 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021) ....................................................................3

*Mamani v. De Lozada Sanchez Bustamante*,
 2017 WL 3456327 (S.D. Fla. Aug. 11, 2017) ..................................................................3

*Owen v. Elastos Found.*,
 343 F.R.D. 268 (S.D.N.Y. 2023) ......................................................................................7

*Schindler Elevator Corp. v. Otis Elevator Co.*,
 657 F. Supp. 2d 525 (D.N.J. 2009) ..................................................................................6

*Searock v. Stripling*,
 736 F.2d 650 (11th Cir. 1983) .........................................................................................3

*Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*,
 482, U.S. 522, 107 S.Ct. 254, 296 (1987) .......................................................................5

*State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*,
 2020 WL 7056039 (E. D. Mich. Dec. 2, 2020) ...............................................................3

**Rules**

Federal Rule of Civil Procedure 34(a) ..........................................................................................3

Despite evidence that ZHP employees and executives regularly used WeChat for conducting its business, including for communications regarding the nitrosamine contamination of its sartan products, ZHP resists any production of its agents' WeChat data. In doing so, ZHP misconstrues this Court's prior rulings, the evidence, and the law. ZHP's opposition is divided into two main arguments: 1) that it does not have control of the data on its employee's cell phones, and 2), that the burden outweighs the benefit of production. In addition, ZHP reargues the applicability of a Chinese blocking statute this Court previously rejected. None of ZHP's arguments are persuasive here for the reasons set forth below.

    A.    **ZHP's Argument on Possession Custody and Control Fails**

ZHP claims that it does not control its employee's cell phones, and therefore cannot be required to produce the WeChat data. In support of this position, it relies heavily on the declaration of Yong Zhou, the assistant director of the IT department at ZHP, and offers the following three points:

First, Citing the Zhou Declaration, ZHP states that it does not issue smartphones "to most of its employees." ZHP Opposition at 12; Zhou Declaration at ¶ 5. This may be true, however, neither the Zhou Declaration nor ZHP's opposition indicates whether or how many of the ZHP custodians were issued or reimbursed for the cost of their smart phone or its service. With respect to the cell phone issued to ZHP employee and custodian Yuelin Hu, the Declaration merely states it was Mr. Zhou's "understanding" that the cell phone issued to Ms. Hu would not allow installation of WeChat. Id. Despite this equivocation, ZHP's opposition asserts that it "does not provide any employees with smartphones that are capable of accessing WeChat." Id. The Zhou Declaration does not affirmatively state whether WeChat was installed on Ms. Hu's phone, much less that no employee at ZHP was given a phone that had anytime thereafter had the WeChat application installed. As such, this Court should not rely on ZHP's

Page | 1

unsubstantiated and conclusory statements to the contrary.

Second, ZHP relies on the Zhou Declaration to state that "ZHP's company policies █████████████████████████████████████████████████████████████████ ZHP admits in its opposition that it was a practice of ZHP to use WeChat "to conduct video conferences . . . or audio calls. . . ." ZHP Opposition at 13. ZHP also admits that some employees include WeChat contact information in their email signature block. ████████████████ ████████████████████ ZHP cannot have its cake and eat it too.

Third, ZHP submits that Plaintiffs have failed to provide any evidence that ZHP has a right to access employee's cell phones. In support of its position, ZHP primarily quibbles with the translation of a ZHP policy ██████████████████████████████████████████████████████████████████████████████████████ Query where ZHP would suggest the "chat records" from that 2019 facility audit originated if not from employee cell phones (since ZHP had an alleged policy ███████████████████████████████████████)? In doing so, however, ZHP attempts to sidestep the litany of documents cited in Plaintiffs' Motion that clearly evidence the use of WeChat was pervasive and a regular business practice at all levels

Page | 2

of the company. ZHP also fails to address the substance of the caselaw cited by Plaintiffs that speaks to such scenarios, likely because it is aware that such case law is fatal to its position. *In Matter of Skanska USA Civ. Se. Inc.*, 2021 WL 4953239 (N.D. Fla. Aug. 5, 2021), the district court spoke to situations where employees use personal email accounts for work purposes, stating:

> Federal Rule of Civil Procedure 34(a) requires a party to produce relevant documents and other physical items that are in the possession, custody, or control of the party upon whom the request is served. *See* Fed. R. Civ. P. 34(a). "Control is defined not only as possession, but as the legal right to obtain documents upon demand," and courts have construed it broadly. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1983). The burden of establishing control over the documents sought is on the party seeking production. *See Mamani v. De Lozada Sanchez Bustamante*, 2017 WL 3456327, at *2 (S.D. Fla. Aug. 11, 2017).
>
> As an initial matter, an employer has "control" of a current employee and the legal right to obtain business communications from a current employee regardless of whether the communication is located on a personal cell phone. *See State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*, 2020 WL 7056039, at * 5 (E. D. Mich. Dec. 2, 2020) (granting motion to compel production of emails from employees' personal email accounts). As the district court in State Farm stated:
>
> **The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment. <u>As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts</u>. Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits.**

*Matter of Skanska*, 2021 WL 4953239 at 3 (emphasis added). The same conclusion was reached by the district court in the *Brooks Sports* case relating specifically to personal use of WeChat accounts for business purposes:

> **Anta may not avoid penalties for their claimed inability to produce those communications. Anta clearly knowingly allowed its employees to use WeChat for substantive business communications through only their personal accounts and devices.**

Page | 3

> \* \* \*
>
> **Anta should not be able to conveniently use Chinese law to shield production of communications responsive to discovery requests when it could have set up Anta-controlled WeChat accounts for its employees' use which would not have the same issues regarding Chinese privacy laws**.

*Brooks Sports, Inc. v. Anta (China) Co.*, 2018 WL 7488924, at *13 (E.D. Va. Nov. 30, 2018) (emphasis added). Thus, ZHP's argument as to "possession, custody, or control" falls flat.

### B. ZHP's Rule 26 Burden Argument Fails

ZHP cannot legitimately challenge the clear fact that the WeChat data Plaintiffs seek is relevant. There are 2,356 documents in ZHP's production that contain the term "WeChat." From a logistical standpoint, it would be challenging to present them all to the Court for review, so Plaintiffs have chosen a handful which evidence WeChat use at all levels of the company. ZHP's statements regarding the amount of examples provided to the Court should be rejected out of hand. All 2,356 documents, as well as the ones cited in Plaintiffs Motion to Compel, would have necessarily hit on search terms which are *ipso facto* relevant, and most documents cited in Plaintiffs' Motion speak directly to the issue of nitrosamine contamination. ZHP all but concedes this point, stating that Plaintiffs have identified documents that "indicate that WeChat may have been used for business communications on limited occasions." ZHP Opposition at 18. Rather than challenge the relevancy of the documents themselves, ZHP quibbles with translations, questions whether WeChat groups were more often used for text communications or teleconferencing, and surmises that Plaintiffs may possibly be able to get documents exchanged through WeChat from other company sources. ZHP Opposition at 17-19. None of ZHP's arguments challenge the relevancy of the cited documents.

Instead, the main thrust of ZHP's Rule 26 argument is its belief that WeChat wasn't used enough to require the production of its data, because ZHP considers that its production

Page | 4

would be burdensome. Unfortunately for ZHP, this is a problem of its own creation. ZHP could have required its employees to use only company-managed WeChat accounts. Had it done so, production of the WeChat data would be as routine as email production. Instead, ZHP allowed, if not encouraged, the use of personal WeChat accounts. ZHP cannot shuck its discovery obligations simply because it perceives the self-created burden to be great.

    **C.    Other Issues**

        **i.    ZHP's WeChat Data Collection Proposal**

As a fall-back position, ZHP suggests it could have its ESI consultant, FTI, perform the WeChat data collection and sets forth the parameters by which it believes it could complete the collection. ZHP Opposition at 21. At this time, Plaintiffs cannot take a position with respect to the manner by which ZHP produced to collect the WeChat data as Parties have not discussed the matter. Plaintiffs would only state that the ESI protocol and the agreed-upon search terms govern production of electronically stored information, including the WeChat data. However, ZHP suggests it would only produce WeChat data where its employees consented and voluntarily agreed to search for it, because, it claims, the Chinese Personal Information Protection Law ("PIPL") requires an employee give consent before their cell phone data can be searched. Plaintiffs vehemently oppose this position.

        **ii.    ZHP Cannot Use the PIPL as a Basis to Shield Production**

The PIPL is the same Chinese law ZHP claimed prevented production of the 23 Chinese "State Secret" documents. State Secret Order at Dkt. 1825. With respect to the State Secret documents, this Court found the five factors announced in *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 107 S.Ct. 254, 296 (1987), along with an additional two factors borrowed from the Second Circuit, weighed heavily in favor of production of the State Secret documents. This Court cautioned

ZHP:

> Even though between a "legal rock and hard place", PRC defendants cannot enter the U.S. market expecting a possible shield from unfavorable discovery by PRC blocking statutes. As one judge's decision has implied, if you don't like the rules, then stop doing business in the U.S.
>
> Any expectation that a PRC law will successfully shield discovery in a U.S. litigation needs a tempering of realism. That is, PRC defendants must know from the outset they risk serious consequences if and when they fail to obey a U.S. court's order to compel discovery.

Dkt. 1825 at p.30. Thus, it defies reason that ZHP would trot out the same blocking statute this Court has already rejected with respect to documents that ZHP claimed implicated Chinese State Secrets.

### iii. The Creemers Declaration is Insufficient to Support ZHP's PIPL Argument

In support of its position on the PIPL, ZHP relies exclusively on the affidavit of professor Rogier Creemers, Ph.D., located in the Netherlands, who is neither an American lawyer nor a Chinese lawyer and is not qualified to opine on any of the information contained in his declaration in this Court or one in China. *See* Creemers Declaration. Importantly, the "party relying on foreign law has the burden of showing that such law bars production." *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525, 532 (D.N.J. 2009). As discussed below, The Creemer declaration does not satisfy this burden, as it consists of a conclusory, open-ended, result-driven analysis of the allegedly relevant law.

The declaration is replete with open-ended statements that fail to tie the alleged law to this case or provide concrete answers to the issues it tries to raise. For example, in Paragraph 6, the declarant states "Article 40 does provide an indication of criteria under which access to private communications will be granted or denied," but there is no discussion of these criteria or how they apply here. Frankly, it reads like an incomplete draft proposing further research rather than a concrete analysis of why ZHP could not comply with Plaintiffs' requested

discovery. The declaration also repeatedly relies on "draft implementing regulations" that cannot possibly form the basis for any legal opinion that would satisfy ZHP's burden here. *See, e.g.*, Creemers Declaration at ¶ 10, 15.

Interestingly, the declarant cites a single United States court decision—*Owen v. Elastos Found.*, 343 F.R.D. 268, 284 (S.D.N.Y. 2023)—without recognizing that the federal court there compelled the discovery despite the defendant raising most, if not all of the arguments made in the declaration. *See* Creemers Declaration at ¶ 9 n.6. The declarant's ignorance of this fact and failure to account for it completely undercuts his opinions and shows his conclusory, results-driven methodology, requiring the Court to disregard the declaration.

Paragraph 19 and numerous others also indicate that the declarant misunderstands the discovery process in this case. He seems to think production would require someone to read through and/or manually review everything in a person's WeChat app, but the discovery here is produced by using search terms to limit the review of the information at issue, and the search terms are tailored to pull information relevant to this case, not the personal lives of ZHP's employees. Rather than provide examples where this type of discovery has been performed, the declarant discusses examples where companies had clearly violated their customers' privacy rights, such as "the illegal collection of screenshots from users' mobile photo albums, passengers' facial recognition information, passengers' evaluation of drivers, and geolocation data." Creemers Declaration at ¶ 30. Plaintiffs are not asking ZHP to engage in such practices, and the declarant's discussion of them further shows his misunderstanding of the discovery requests at issue.

The declarant even admits he does not know the answers to many of the issues he raises. *See, e.g.*, Creemers Declaration at ¶ 22 (stating that "there is little or no judicial or administrative practice to provide guidance on the course courts or regulators may take, which

would likely result in a significant delay to cases as these bodies come to a conclusion if consent were challenged"), ¶ 34 (proclaiming: "[f]irst and foremost, the law is vague and does not provide information on the specific processes, timelines and procedural requirements for parties to follow in seeking to export data, nor how this approval process dovetails with the Hague Evidence Convention").

The declarant also fails to incorporate findings about the PIPL that this Court has previously made. For example, he reargues that Article 41 of the PIPL "explicitly prohibits" the export of WeChat information "for the purpose of a judicial proceeding abroad" and suggests that permission from the PRC authorities would be required prior to transferring the data. Creemers Declaration at ¶ 31-34. This Court has already rejected that argument, reasoning:

> Of interest is the injunction in . . . [the] PIPL that information located in the PRC may not be given to U.S. courts. That injunction is inapplicable to these documents or indeed to any information produced in response to an FRCP discovery request. It is not U.S. courts that receive discovery in U.S. litigation, but the parties themselves who exchange information.

Dkt. 1825 at p.17.

Finally, the declarant fails to even mention clearly relevant exceptions to the PIPL. For example, Subsection (7) of Article 13 of the PIPL, provides that consent is not required for "[o]ther circumstances provided in law and administrative regulations," without specifically limiting law or regulations to those from China. Moreover, Subsection (6), provides that consent is not required "when handling personal information disclosed by persons themselves or otherwise already lawfully disclosed." Information that is sent via WeChat by a ZHP employee (and in this case hitting on agreed-upon relevant search terms) has arguably already been "disclosed by the person[] themselves."

This Court cannot allow ZHP to avoid discovery on the basis of an unqualified expert

Page | 8

who opines on questions he does not have the answers to, regarding discovery he does not understand. Notwithstanding the Creemers Declaration, ZHP has not indicated it was fined or suffered any of the doom and gloom consequences it suggested it *could* or *might* face after production of the State Secrets Documents. As such, it is hard to imagine a world where such consequences would befall ZHP in this instance.

### D. Conclusion

What is truly telling here, is that despite being afforded two weeks to respond to Plaintiffs Motion to Compel, and knowing about the issue for many weeks prior to that, ZHP has never affirmatively stated how many of their custodians used WeChat for business communications. ZHP is aware that the systematic, regular usage of WeChat across all levels of ZHP, and the relevance of the communications cannot legitimately be challenged.

To be clear, Plaintiffs are seeking the production of written communications transmitted or received by ZHP custodians via WeChat pursuant to the ESI protocol and agreed-upon search terms. Plaintiffs are not seeking "personal, financial or health information or other private information" from the ZHP custodians. Nevertheless, there are protections within the ESI protocol and Confidentiality Orders of this Court to protect such information. Plaintiffs are also prepared to work with ZHP should it identify any search terms which it believes is particularly problematic to use in searching WeChat communications. It is Plaintiffs' position is that these documents should have been preserved at the outset of the litigation, collected, and subsequently produced like all other written communications.

As evidenced in Plaintiffs' Motion and above, 1) ZHP has possession, custody, or control over its agents' WeChat-containing mobile devices and 2) the WeChat information is highly relevant to this litigation. ZHP cannot escape its discovery obligations to produce this information because of the self-created burden of production or Chinese law. Accordingly,

Plaintiffs' Motion should be granted.

Dated: October 13, 2023                             Respectfully submitted,

| /s/ George T. Williamson | /s/ David Hobbs |
|---|---|
| George T. Williamson | David Hobbs |
| FARR, FARR, EMERICH, | FLEMING, NOLEN & JEZ, L.L.P. |
| HACKETT, CARR & HOLMES, P.A. | 2800 Poast Oak Blvd. |
| 99 Nesbit Street | Suite 4000 |
| Punta Gorda, FL 33950 | Houston, Texas 77056 |
| Phone: (941) 639-1159 | Phone: (713) 621-7944 |
| gwilliamson@farr.com | david_hobbs@fleming-law.com |