**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

1

2

3 ─────────────────────────────

                                        CIVIL ACTION NUMBER:
4   IN RE:  VALSARTAN PRODUCTS
    LIABILITY LITIGATION            19-md-02875
5
                                    CASE MANAGEMENT CONFERENCE
6 ─────────────────────────────

7        Mitchell H. Cohen Building & U.S. Courthouse
         4th & Cooper Streets
8        Camden, New Jersey  08101
         November 1, 2023
9        Commencing at 2:18 p.m.

10  **B E F O R E:**            THE HONORABLE ROBERT B. KUGLER
                                UNITED STATES DISTRICT JUDGE
11

12  **A P P E A R A N C E S:**

13       MAZIE SLATER KATZ & FREEMAN, LLC
         BY:  ADAM M. SLATER, ESQUIRE
14       103 Eisenhower Parkway
         Roseland, New Jersey  07068
15       For the Plaintiffs

16       HONIK LLC
         BY:  RUBEN HONIK, ESQUIRE
17       1515 Market Street, Suite 1100
         Philadelphia, Pennsylvania  191032
18       For the Plaintiffs

19
         KANNER & WHITELEY, LLC
20       BY:  CONLEE S. WHITELEY, ESQUIRE
         701 Camp Street
21       New Orleans, Louisiana  70130
         For the Plaintiffs
22
                 Ann Marie Mitchell, Official Court Reporter
23                AnnMarie_Mitchell@njd.uscourts.gov
                          (856) 576-7018
24
      Proceedings recorded by mechanical stenography; transcript
25             produced by computer-aided transcription.

1   **A P P E A R A N C E S (Continued):**

2       NIGH GOLDENBERG RASO & VAUGHN
        BY:  DANIEL A. NIGH, ESQUIRE
3       1333 College Parkway, #1049
        Gulf Breeze, Florida 32563
4       For the Plaintiffs

5

        KIRTLAND & PACKARD LLP
6       BY:  BEHRAM V. PAREKH, ESQUIRE
        1638 South Pacific Coast Highway
7       Redondo Beach, California  90277
        For the Plaintiffs
8

9       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
        BY:  ALLISON M. BROWN, ESQUIRE
10      1440 New York Avenue, N.W.
        Washington, DC 20005
11      For the Defendants, Prinston Pharmaceuticals,
        Solco Healthcare U.S. LLC, and  Zhejiang Huahai
12      Pharmaceuticals Ltd.

13

        GREENBERG TRAURIG LLP
14      BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
        BY:  STEVEN M. HARKINS, ESQUIRE
15      3333 Piedmont Road, NE, Suite 2500
        Atlanta, Georgia  30305
16
        BY:  GREGORY E. OSTFELD,  ESQUIRE
17      77 West Wacker Drive, Suite 3100
        Chicago, Illinois 60601
18      For the Defendants, Teva Pharmaceutical Industries Ltd.,
        Teva Pharmaceuticals USA, Inc., Actavis LLC,
19      and Actavis Pharma, Inc.

20

        BARNES & THORNBURG, LLP
21      BY:  KARA KAPKE, ESQUIRE
        11 S. Meridian Street
22      Indianapolis, Indiana 46204
        For the Retailer Defendants and CVS Pharmacy, Inc., and
23      Rite Aid Corporation

24

25

1    **ALSO PRESENT:**

2         LORETTA SMITH, ESQUIRE
          Judicial Law Clerk to The Honorable Robert B. Kugler
3
          Larry MacStravic, Courtroom Deputy
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*

```
 1              (PROCEEDINGS held in open court before The Honorable
 2    ROBERT B. KUGLER at 2:18 p.m.)
 3              THE COURT:  Have a seat.  Thank you, everybody.
 4    Happy Halloween belatedly.  I have candy here if anybody wants
 5    it, because I sure as heck don't want to eat it.
 6              I have to ask a question, a Halloween question, and
 7    I'm showing my age.  Okay?
 8              How many of you decorated your homes, outside your
 9    homes with lights for Halloween?
10              Wow.  Amazing.
11              And how many of those who have their hands up also do
12    it if you celebrate Christmas?
13              See, when I was young, nobody ever did that.  You get
14    a pumpkin on the front step.  That was your decoration.  But I
15    walk around --
16              MS. BROWN:  A lot of pressure from kids these days,
17    Judge.  My kids, it's lot of pressure.
18              THE COURT:  It's everywhere.  I mean, some of them
19    are pretty clever, but it's pretty overdone, I think, in
20    neighborhoods.  There's contests in my town.  There is the
21    best decorations.
22              MS. LOCKARD:  So I take it you did not decorate for
23    Halloween?
24              THE COURT:  I did not.  I did not.
25              I had I think six kids come, which I was shocked at.
```

```
 1        MS. LOCKARD:  It's a lot of work.
 2        THE COURT:  I had all kinds of candy, but I didn't
 3  have a lot of kids.  So anyway, anyhoo...
 4        Apparently you worked out any issues you had for
 5  Judge Vanaskie.  Correct?  You don't need him anymore today?
 6        Good.
 7        MR. HARKINS:  Your Honor, one issue I believe may be
 8  outstanding is the update on losartan and irbesartan
 9  discovery.  I don't know if the Court is intending to hear
10  argument on that or modify the existing order, but there was
11  something included in there that I believe would be addressed
12  by Judge Vanaskie ordinarily.
13        THE COURT:  Yeah.  I wasn't going to hear on it.  It
14  didn't seem like there were really any key disputes about it
15  anyway.
16        MR. HARKINS:  Not from defendants' perspective, Your
17  Honor, though there is a request to add additional production
18  deadlines that was included in plaintiffs' letter.  We were
19  unaware that that was going to be an issue until the letters
20  were submitted.  We're happy to address that if needed, but --
21  thank you.
22        MR. NIGH:  Your Honor, we can raise it with Judge
23  Vanaskie at the next conference.
24        THE COURT:  You have an agreement on the WeChat
25  production.  Correct?
```

 1          And the Rite Aid bankruptcy, I mean, it is what it

 2    is.  We'll have to deal with it.

 3          I'm going to get into the class notice plan.

 4          You're apparently making some progress on the class

 5    notice issue.  Correct?

 6          MR. PAREKH:  Yes, Your Honor.  We have basically

 7    reached agreement on the form of notice, both short form and

 8    long form.

 9          We basically reached agreement on most other things,

10    other than just some issues with the website design and URL

11    names and stuff, so we should be able to do that.

12          Just to give Your Honor an idea, we have about

13    four-and-a-half million direct notice that we're going to be

14    giving either by email, text or US mail.  And the

15    publication -- which essentially is about 80 to 85 percent of

16    the class will be notified by direct mail.

17          And then we also have some supplemental publication

18    notice to just sort of cover our bases.

19          THE COURT:  Okay.  Great.  Thank you.

20          MR. OSTFELD:  Your Honor, if I could very briefly

21    speak.

22          I agree with that assessment.  I think the goal for

23    today would be to set a deadline by which the class notice

24    plan would be submitted to the Court, and we can

25    simultaneously advise the Court if there are any remaining

 1  disagreements that require briefing.  I think we're both

 2  cautiously optimistic that any remaining differences can be

 3  worked out.

 4          THE COURT:  Can we get it done in a matter of weeks?

 5          MR. PAREKH:  I think we should be able to get it done

 6  by the end of next week.

 7          THE COURT:  Okay.  Sounds like a plan.

 8          MR. PAREKH:  And Your Honor, I think I might have

 9  misspoke.  It's 4.4 million direct notice, not direct mail

10  notice.  That includes the email and the text notice.

11          THE COURT:  Okay.  Got you.

12          So hopefully we'll hear from you at the end of next

13  week that everything is good.  And if not, then we'll get it

14  resolved.

15          MR. PAREKH:  Thank you, Your Honor.

16          MR. OSTFELD:  Yes.  Thank you.

17          THE COURT:  All right.  Deficiencies, we're still

18  left with Worms, Bartels, Andrews and Lamb.  Correct?  Any

19  update on those?

20          MR. HARKINS:  One update, Your Honor.  The issues in

21  the Andrews case are being worked on, and we'd ask to extend

22  that one to the next case management conference.

23          THE COURT:  Okay.

24          MR. HARKINS:  At this time defendants seek dismissal

25  of the other three actions, Worms, Bartels and Lamb.

```
 1              THE COURT:  Anybody here on the Bartels matter?

 2              MR. NIGH:  I am, Your Honor.  No objection to that.

 3              THE COURT:  Bartels will be -- the Complaint will be

 4    dismissed.

 5              How about Andrews, anybody here on Andrews?

 6              (No response.)

 7              THE COURT:  All right.  That will be dismissed.

 8              How about Lamb?

 9              (No response.)

10              MR. HARKINS:  One correction, Your Honor.  I think,

11    just to make sure that the record is clear, the Andrews matter

12    is being extended to the next case management conference.

13              THE COURT:  I'm sorry, Andrews.

14              MR. HARKINS:  And Worms is the other case in which

15    we're seeking dismissal at this time.

16              THE COURT:  Worms.  I got it wrong.  I wrote it down

17    right but I said it wrong.

18              Anybody here on the Worms matter?

19              MR. NIGH:  Yes, Your Honor.  Daniel Nigh.  And again,

20    no objection to that one.

21              THE COURT:  Okay.  That will be dismissed.

22              The Estate of Alexandra Samocha, Benjamin Andrews and

23    Pauline Harris will be extended to the next.

24              And I'm going to dismiss the following orders to show

25    cause:  Leslie Sturgill, Joseph George, Robert Lee, Ronald
```

```
 1   Jackson, Byron Wrigley, Steven Petrie, Emmett Wesson, Stacey
 2   Thomas, Phillip Quinn, and Antoinette Smith.
 3             Anything else on that?
 4             MR. HARKINS:  No.
 5             THE COURT:  There's two you want to list in order to
 6   show cause for next time.
 7             Any update on Berkovski or Parks?
 8             MR. HARKINS:  No updates, Your Honor.  Defendants
 9   request orders to show cause returnable at the next case
10   management conference in both of those matters.
11             THE COURT:  Unless there's an objection, we will list
12   those at orders to show cause, Igor Berkovski and Janice
13   Parks.
14             Now, you have nine more you want to relist.
15             Any update on those?
16             MR. HARKINS:  No update, Your Honor.
17             THE COURT:  All right.  Haughton, H-A-U-G-H-T-O-N;
18   Hines, H-I-N-E-S; Kaluhiokalani; Mike; Shannon; Wallace;
19   Bishop; Kennedy; and Anderson will be listed again next time.
20             Anything further?
21             MR. HARKINS:  Nothing further.  Thank you, Your
22   Honor.
23             THE COURT:  Anything further we want to talk about
24   before we get into the issues on the trial?
25             (No response.)
```

*United States District Court*

 1          THE COURT:  Okay.  Let's get into it.

 2          So it will be jury.  It will be unanimous, because we

 3    don't have consent on that.

 4          There's differing predictions on the length of the

 5    trial.  Of course it depends on how many parties end up going

 6    to trial, which can change between now and then, but it seems

 7    like about -- four weeks it seems about where everybody is

 8    comfortable with, so we'll assume that to be true, but

 9    lawyers' predictions are not terribly accurate.  But we'll

10    see, see how it goes.

11          Peremptory challenges.  The rule is kind of strange.

12    It says three for each party, but the Court has discretion for

13    more or less or whatever.

14          So we'll start with the plaintiffs.

15          How many peremptories do you believe you have?

16          MR. SLATER:  I think it's just the -- well, I think

17    that we're -- if you took the most stringent definition, the

18    three.  But I'm not saying that we think that's what we should

19    have.

20          THE COURT:  Well, I know.  You made -- you want to

21    match what they have essentially.

22          MR. SLATER:  That would be ideal.

23          THE COURT:  Or get close to it.

24          MR. SLATER:  Yeah.  Ideally we would.

25          THE COURT:  Let me ask the defense, how many do you

1    think you have?

2        MS. LOCKARD:  Hi, Your Honor.  I believe that all

3    parties are entitled to three per side.

4        I think the issue that Mr. Slater has raised, as I

5    read it, in his letter is the rule is unclear as to whether

6    each of the defendants get additional peremptories, or are we

7    limited to three for the total defense?

8        THE COURT:  Right.

9        MS. LOCKARD:  If we -- assuming we have three

10   defendants and we have nine peremptories and they get nine

11   peremptories, we're not going to have much of a jury left.

12       THE COURT:  We're just going to have to bring in a

13   lot more people.

14       MS. LOCKARD:  We have to bring in a lot of people.

15       So I don't think that this is something that we have

16   a major dispute on.  I think we're probably in agreement that

17   we can have even peremptories per side, but we may want to

18   have a number of peremptories each defendant within that and

19   not have to essentially agree on every peremptory for

20   defendants.

21       THE COURT:  Well, I get this a lot with

22   multi-defendant cases, who gets to exercise the peremptories.

23   And it generally turns out that each wants his or her own.

24   And that's fine.  If it's three, then, you know, you do the

25   math.

1          Can we agree on a number on both sides?  Both sides

2   should have the same number.  Can we agree on that number,

3   something less than nine and more than three?

4          MR. SLATER:  I would suggest six and six.

5          THE COURT:  Can we agree on six and six?

6          MS. LOCKARD:  So we're fine with three per side, Your

7   Honor.

8          THE COURT:  Okay.

9          MS. BROWN:  Yeah.

10          THE COURT:  Three and three.

11          MR. SLATER:  We ride with whatever you tell us we

12   ride with, Judge.

13          THE COURT:  All right.  Three and three.

14          Defendants want to file an answer, is that correct,

15   file answers?

16          MR. OSTFELD:  Yes, Your Honor.  That's correct.

17          THE COURT:  When are you going to do that?

18          MR. OSTFELD:  We had contemplated doing it at least

19   60 days before trial.  I think plaintiffs had requested we do

20   it at least two weeks before any dispositive motions are due.

21   Both solutions seem reasonable, and they would probably end up

22   being in line with one another.

23          THE COURT:  Okay.  Well, I'm going to let you guys --

24   you lawyers work that out, all right, as to when you want to

25   do that.

```
 1              Deposition designations, this I think -- I think both

 2    sides sort of agree that it should be a rolling thing, but the

 3    question is, when do you want to start that?

 4              Sooner rather than later, I think.  I think you would

 5    have some idea of which deposition -- particularly the

 6    plaintiffs, which depositions you want to use in this?

 7              MR. SLATER:  Absolutely.  We could start rolling them

 8    out.  And I think we're just all going to have to understand

 9    that they're going to be overinclusive to begin by necessity,

10    because we don't know whether certain issues are in or out.

11    And hopefully as we start to roll forward and get guidance

12    from Your Honor whether formally or informally to help us to

13    inform what we should be including and what we should not be

14    including, I think that would be helpful to us.

15              But we're ready to start rolling them out in the next

16    few weeks at the latest and just start to get it going and

17    start to get a steady stream, and then start to talk with

18    defense about counters, et cetera, and figure that out.  I

19    think it helps to get it out of the way as early as possible.

20              THE COURT:  Give me your best guess as to the mass of

21    data we're dealing with.

22              How many pages of deposition do you think at this

23    point?  And I know this is very inexact, and as you see things

24    unfold, you're going to add and subtract things, but at this

25    point, how much are we talking about?
```

```
 1              MR. SLATER:  I never like to say.  It's very hard to

 2   say.

 3              THE COURT:  Are we talking about thousands of pages

 4   or --

 5              MR. SLATER:  Well, I think at the end -- by the time

 6   we start the trial, the answer is it should not be, because at

 7   that point we're going to know what's in and out and we're

 8   going to know we don't need -- for example, I think probably

 9   out of caution, both sides will be designating -- I know we

10   will -- most likely similar testimony from multiple witness.

11   When we get to trial, obviously we don't need six different

12   people to say the same thing 19 times.  There may be a few

13   things that duplicate, but -- so we're going to obviously

14   endeavor to make it as narrow as possible within reason.  We

15   just haven't actually analyzed the number of pages.

16              I can say, for example, for ZHP, if the trial unfolds

17   as we see it, I could see us designating from between six and

18   eight witnesses and actually playing that.  I think that's a

19   rough estimate, give or take.  But, again, that's assuming the

20   world as we see it unfolding at trial.  If there's more

21   issues, that may pull in a few more witnesses and we'll get

22   some more designations.

23              On Torrent and Teva, it's probably a little bit less,

24   because they didn't do the actual API manufacturing, so

25   there's a little bit less that has to be addressed with those
```

1  parties.  They did the finished dose manufacturing.  So it's a

2  narrower scope of testimony, I think.

3        But, again, if the rulings are consistent with how we

4  envision the trial, we don't have to put nearly as much

5  evidence in on the manufacturing.  We probably have to just

6  give the jury some idea what happened but without having to

7  prove a lot of issues, not have to get into quality issues in

8  any excruciating detail.

9        So that's -- I mean, maybe everything I'm saying is

10 obvious, but I would think probably for Teva and Torrent

11 you're probably talking about around four witnesses, give or

12 take.  But, again, it's going to depend on what the issues

13 are.

14       I think that most of the trial is going to be on

15 video, at least the factual part of it.

16            THE COURT:  Oh, the jury will love that.

17            MR. SLATER:  Yep.

18            THE COURT:  This is all video in the can, you've

19 already done them?  We're not going to stream any video

20 testimony in?

21            MR. SLATER:  We haven't had discussions on that yet,

22 Judge, witness availability or whether it will be necessary.

23       But the corporate witnesses, obviously, have been

24 videotaped, but I would anticipate that there are a few we'll

25 bring in live, defense witnesses.

1        The plaintiff witnesses will be live, you know, for
2    the representatives of the TPPs, those types of witnesses.
3    Depending on what experts are needed, I would think there will
4    be some live expert testimony as well.

5        THE COURT:  How about, can we get the first tranche
6    of these out by the end of the month, November 30th?

7        MS. LOCKARD:  Your Honor, if I may address this.

8        MR. SLATER:  Yes.

9        MS. LOCKARD:  And conceptually we have met and
10    conferred on this.  And I think it warrants more conference
11    with counsel, because we have -- to give you some figures,
12    there were over 40 corporate witnesses deposed among the three
13    defendants.  There were 18 defense experts deposed.

14        Now, obviously, not all of those will be in this
15    trial, but we need to have a serious discussion about which of
16    those witnesses will be, because that sounds like an extreme
17    narrowing down of witnesses.  We need to know who the
18    witnesses are going to be.  We also need to get rulings on
19    motions in limine, motions for summary judgment.  We have 702
20    motions pending for liability witnesses and will be filed for
21    damages witnesses.

22        So there is a lot of information that needs to be
23    determined, rulings that need to be had, before we spend
24    significant resources going through these thousands of pages
25    of depositions to start doing designations.

 1          So earlier is better.  We certainly agree with that

 2    on the defense side.  But we do need to have some doors

 3    unlocked before we can start really narrowing this down;

 4    otherwise, we're going to have to do it twice.

 5          THE COURT:  You're going to have to repeat a lot of

 6    it anyway.  That's just the nature of how this works.  They're

 7    going to be changing their mind, they're going to be adding

 8    things when they see your responses.  You're going to be

 9    adding things when you see their response to your response.  I

10    mean, that's just -- it's going to be a process.

11          MS. LOCKARD:  We also believe that the class notice

12    opt-out period needs to be complete before we can get rulings

13    on the objections to those depositions.

14          THE COURT:  Sure.  Well, about objections to -- why?

15    I don't understand what the opt-out period has to do with the

16    depositions that they want to use at a trial.

17          MS. LOCKARD:  I think any of the evidentiary rulings

18    will need to be made before we -- before we get to that.  We

19    need to have the opt-out before we get to the evidentiary

20    rulings.

21          THE COURT:  You may not get final rulings on in

22    limine motions until relatively before the trial.

23          I'm reading through some of these things, which some

24    of them are -- I have no idea what you're talking about.  Many

25    of them, my suggestion to you is you really ought to talk to

1    each other before you file these in limine motions, because my

2    experience has been in reading what you're proposing, it

3    indicates to me it might happen again, is that, you know, your

4    adversaries may say, oh, we're not going to do that anyway, so

5    what's the point of making the motion.

6        MS. LOCKARD:  I agree with that, Your Honor.

7        I do think that there is further meeting and

8    conferring that can happen on the motions in limine.  There

9    may be things we can stipulate to.  And so far the parties

10   have exchanged those preliminary lists sight unseen, and we

11   haven't had an opportunity to meet and confer on that.

12       During our one conference that we had in terms of the

13   witnesses, plaintiffs agreed that they would attempt to narrow

14   down the witnesses they think they need.

15       We need to determine who's available for trial, who's

16   not.  There may be witnesses who can come and deposition

17   designations won't be necessary.  So I think we need to have a

18   discussion about which witnesses we really need at this trial,

19   the parties.  Let's figure out if we have any disputes among

20   those.  And then once we get our witnesses or our most likely

21   witnesses, we start rolling with the deposition designations.

22       THE COURT:  The plaintiffs have indicated that most

23   of their testimony is going to be by video anyway, so very few

24   live witnesses.  I want that process to start.

25       We're putting the burden on them to get started

1    identifying who their witnesses are going to be and what

2    they're going to say.  I don't think there's any problem with

3    them having to do that relatively soon.  Again, it's a rolling

4    process.  It's going to change.

5            But let's get it started by the end of the month, the

6    first tranche of these things.  Get them over to the defense

7    side.

8            And I'll give you, you know, a month to respond to

9    that.

10           And then we'll go back and forth, and you can report

11   back to me during our periodic meetings on this.  All right?

12           MR. SLATER:  Judge, I can tell you, we're not going

13   to wait until the end of the month.  I can say some of them

14   are going to roll out to them starting next week.  We're going

15   to start serving the designations next week.  Not in any

16   particular order, we're just going to start rolling them out

17   as they're ready to be looked at.

18           And again, I've given the caveat that they're

19   overinclusive by necessity, but there will be repeating issues

20   across the board and know that chunks of testimony that are

21   going to be subject to this motion or this negotiation, so,

22   there's no other way to do it than just get it started now.

23           THE COURT:  If there's problems, you'll let me know.

24   We'll get it worked out.

25           MS. LOCKARD:  Sure.  And so we would request at least

1    30 days to try to respond to --

2            THE COURT:  That's what I said.  I said I'll give you

3    until the end of the month to respond --

4            MS. LOCKARD:  Understood.

5            THE COURT:  -- to the first tranche.  Okay?

6            MS. LOCKARD:  And this is a rolling process, so not

7    all witnesses?  By rolling process, you'll be rolling out a

8    few at a time?  Understood.

9            MR. SLATER:  Yep.  We'll get as many out as we can

10   next week.  And that's to our incentive.  We have a large

11   incentive to get it going, so we're going to work hard to get

12   those out.  And we're looking to engage on them.

13           For example, if we send over for witness A and

14   there's -- as soon as the defense gets through it and they

15   just want to talk about it, we're ready to get on the phone

16   and start conferring about those things.  We don't need formal

17   letters.  I mean, we're going to need at some point counters

18   and that type of thing to be documented, but we can start to

19   talk through it and figure out if we can negotiate through as

20   much as possible.  We believe that's important for us to do

21   for efficiency and for both sides' peace of mind to just get

22   it done.

23           THE COURT:  Let's get it started.

24           What's your universe of documents?  How big?

25           MR. SLATER:  I don't have a number.

*United States District Court*

```
 1            THE COURT:  Are we talking about terabytes or --
 2            MR. SLATER:  For the trial, putting aside
 3    spreadsheets and that kind of thing -- I wish I could speak
 4    computer speak as to terabytes.
 5            THE COURT:  I am not interested in what you're going
 6    to use as demonstratives, you know, to show the jury what this
 7    all means, what you want to introduce into evidence.
 8            MR. SLATER:  I think that when it's all boiled down
 9    and we know what all the rulings are, the universe of what may
10    get admitted is probably a few hundred.  I think that's
11    probably how these things go from experience.
12            There probably will be a lot more on the exhibit list
13    for just in case, but I think probably we're talking a few
14    hundred exhibits.  And it may be less if we're -- if some of
15    the issues go the way we're hoping, I think it will narrow the
16    evidence substantially.
17            THE COURT:  Here's my advice on exhibit lists.
18    Everybody needs to get together before trial to premark your
19    exhibits.  We don't mark exhibits.  And show each other what
20    you've got, because we need exhibit lists before the trial
21    starts.  We need the actual lists so we know what everybody's
22    talking about.  And the only way that that's going to make any
23    sense given how many people are involved in this is to do it
24    jointly.  I'm not suggesting it has to be joint exhibits.  It
25    can be plaintiffs' exhibits and defense exhibits.
```

1          But you've got to sit down with each other or Zoom

2    with each other with your exhibits so everybody knows what

3    everybody is talking about and they premarked.  And then we

4    can get a list delivered to us when you deliver all the

5    copies.  Well, the electronic digital copies of the evidence

6    that you're going to use.

7          So you're going to have to -- I know some lawyers

8    think it's burdensome, but we're going to have to digitize

9    everything that the jury is going to see, because we're not

10   going to use paper.  We're going to show it on the screens,

11   and then when it gets into evidence, we load it on a server.

12   And then the jurors can access it during deliberations on an

13   iPad.  That's how we do things.

14         Jurors love it.  I mean, there's a search function

15   and they can find stuff in a second, and it really makes

16   things go fast.  So although it's burdensome at the beginning,

17   it saves us a lot of time during the course of the trial and

18   during the deliberations when we have it all in digital format

19   so the jurors can access it when they're deliberating.

20         I explain that all to the jurors, how that all works,

21   and we show them how to do it, although there's very few

22   jurors anymore who don't know how to use these things.  I

23   mean, when we first started doing this many years ago, it was

24   an epiphany for many people.  But that's -- that's how we deal

25   with exhibits.

1          So what that's going to entail you to do in addition

2    to digitizing is that before trial, we need your thumb drive

3    or something with your exhibits on it, each side or each

4    party, so that we have it here so that when I say it's -- you

5    know, P-63 is introduced into evidence, Mr. MacStravic with a

6    keystroke, bang, it goes right to the server, and that's it.

7    And we're done.

8          But we need that in advance.  We will not give that

9    to your adversaries.  We will keep just yours.  And you're

10   probably right to be overinclusive, obviously.  But we're

11   going to need that before trial.  And we can talk about that

12   some more.

13          MR. SLATER:  Quick question on that, Your Honor.

14          THE COURT:  Yep.

15          MR. SLATER:  Maybe it would be more of a Larry --

16   Mr. MacStravic question.

17          We're developing a spreadsheet to put it all on.

18          Is it helpful for us to give you the spreadsheets

19   we're going to work off with the defense so that you'll have

20   that, or do you do it all yourself?

21          THE DEPUTY CLERK:  Myself.

22          MR. SLATER:  Okay.  It will be available.  We're

23   obviously going to need to exchange things among ourselves to

24   keep track of one another, so we'll have that in case you need

25   it.

```
 1          THE COURT:  All right.  And what I also ask counsel
 2   to do once trial starts, I need you, both sides, to check,
 3   probably twice a week, to make sure that which we have loaded
 4   is exactly what you want the jury to see.  I mean, you're the
 5   failsafe.  You make sure that we've got exactly what you want
 6   the jury to have, because you certainly know the exhibits
 7   more -- better than we do.  All right?  So you'll be doing
 8   that during the course of trial.
 9          MS. LOCKARD:  Your Honor, the format for the
10   digitized evidence, would that be searchable PDF?  Or what is
11   the preference for that?
12          THE DEPUTY CLERK:  Documents would be PDF.  If you
13   have recordings, I don't know if you do or not, audio
14   recordings, MP3; video recordings, MP4.
15          THE COURT:  We have the equipment you can use to
16   display all this stuff.  You can get familiar with that and
17   all that kind of stuff, how it works.
18          MR. SLATER:  Your Honor, do you download for the
19   jurors on their iPad also the videos that are actually played
20   in the trial?
21          THE COURT:  Yes.  If they're in evidence, yes.
22          MR. SLATER:  Great.
23          THE COURT:  And we also put on there the jury charge.
24   And we have the ability, I don't know -- I assume you're going
25   to have daily copy of the transcript.  I hope you do.  We have
```

1  the ability to also then if there's -- Third Circuit law is

2  pretty clear.  If the jury requests a specific testimony, a

3  specific witness, we can give it to them.

4        If you get one of those requests during

5  deliberations, obviously I'll hear from counsel, but -- and

6  then you'll have to look at it to make sure we take out any

7  sidebars and things like that.

8        But when we have the actual testimony, we can then

9  load that onto their iPads through our server to that

10  testimony if they want.

11        But, you know, so we can do a lot of things with

12  that.

13        MR. SLATER:  Great.

14        MR. OSTFELD:  Your Honor, on a related point.  When

15  the jurors access exhibits, when they access testimony, do we

16  get reports on what they're accessing?

17        THE COURT:  No.  We have no idea what they're looking

18  at.  No.

19        You know, I know some judges make -- make jurors make

20  a formal request for evidence, and then they have to come to

21  the courtroom to look at it and play the video and all.  It's

22  just -- I don't do that.  Okay?  They have everything they

23  need.  I leave them alone, and then they let us know what they

24  want.

25        Yes, we'll need a joint final pretrial order in

1    place, but that doesn't have to be till about 30 days before

2    trial.  We got a long way to go before we get to that stage

3    anyway.

4         But we have a form that we use.  And it involves --

5    the plaintiff fills out their portion first, they give it to

6    defense counsel.  Defense fill out their portion.  When it's

7    all filled out, they send it to us.  We go through it, talk to

8    you about it, any objections, blah, blah, blah, and then we'll

9    sign and enter it.

10         But, as you know, the pretrial order supersedes all

11    pleadings in the case.  And that is the final order on what

12    your trial is going to look like.  And you have to show

13    prevention of manifest injustice to amend it at that point.

14         So we're pretty careful about the pretrial order.

15    You should be pretty careful about it too.  It's a lot of

16    work, and I appreciate that, but it pays off in the end.

17         There was an issue raised about questions by jurors.

18    Yes.  I permit in civil cases jurors to ask questions.  I tell

19    them that.  And this is how it works.

20         I do my preliminary instructions to the jury.  It's

21    one of the things I tell them, that they have the right to ask

22    questions of the witnesses.  They do that by putting --

23    writing it on a piece of paper, getting my attention.  I will

24    show it to you.

25         I tell the jurors that you have a right to object to

1  their questions as any other questions.  And I'll rule on the

2  objections you have to the jurors' questions.  And if I

3  overrule the objection or there is no objection, then we'll

4  just read it to the witness.  You know, I can read it to the

5  witness, whoever has got the witness on the stand can read it

6  to the witness, whatever you want to do.  I don't really care.

7  But yes, the jurors can ask questions.

8          I have to tell you, I've had long, complicated civil

9  cases that go on for weeks and weeks and weeks, and I don't

10 hear a peep out of the jurors.  And I had a negligence auto

11 accident case once and they asked 13 questions.  So I can't

12 predict when that's going to happen, but yeah, they're told

13 that they can do that.

14         MR. SLATER:  Your Honor, when the questions are

15 submitted, if there's objections, do you either ask it as is

16 or not?

17         My experience in state court is some judges will say,

18 look, if there's objections, if anything is objectionable,

19 it's out.  And some judges will say, well, I'm going to modify

20 it with the agreement of counsel and ask it in a different

21 way.  I'm just curious what your practice is.

22         THE COURT:  Well, if you agree to the modification of

23 it, I'll ask the modified question.

24         And if the juror has additional questions, I assume

25 that they'll let us know.

```
 1              MR. SLATER:  Okay.

 2              THE COURT:  Go from there.

 3              All right.  Let's get to the big question.  When?

 4    March 18th.  I know that interferes with some of your dates

 5    and all that.  And some of you wanted earlier in March.  But

 6    March 18th is the first chance I'm going to be available to

 7    try this case.  So let's list it for March 18th, and we'll see

 8    what happens.

 9              MS. BROWN:  Judge, can I raise an objection to that

10    date?

11              THE COURT:  Everybody is going to raise an objection

12    to that date.  I get it.  I understand it.  You're all busy.

13    And God bless you all, but, you know, we got to do it.

14              MS. BROWN:  Yeah.  The only issue for me, and I think

15    we put it in the papers, is this attorney general case that's

16    been pending for 15 years that I am scheduled to try in

17    Mississippi on April 1st.

18              THE COURT:  I understand.  I'm sure the judge in

19    Mississippi will be very understanding when you tell him that

20    you're standing on your feet here.

21              MS. BROWN:  Okay.

22              THE COURT:  You got this mean guy up in New Jersey.

23    But, you know, I mean, you're all busy.  And we've just got to

24    arbitrarily pick a day when we can all get together and get

25    this thing started.  Okay?
```

```
 1            MS. BROWN:  I understand.

 2            THE COURT:  I'm sorry.

 3            MS. BROWN:  I understand.

 4            THE COURT:  I agree summary judgment motions should

 5    be simultaneously filed.  Let's talk about the timing of that.

 6            When can we start that process?

 7            MR. SLATER:  Working backwards from March, I was

 8    going to say we probably want to try to get rulings I think --

 9    well, I guess it depends when the notice -- when do we

10    anticipate the notice being done so we can work back from then

11    if we can?

12            MR. OSTFELD:  Your Honor, with a March 18th trial

13    date, we've been talking about the opt-out period.  I think to

14    facilitate the Court's ability to start ruling on notices, we

15    would consent to a 45-day opt-out period.  So if Your Honor is

16    able to approve a class notice plan within the next few weeks

17    and notice is able to commence by the end of the month, I

18    think that would put us in a position to complete the opt-out

19    period by mid-January.

20            MR. PAREKH:  It would probably be about January 31st.

21            MR. OSTFELD:  We can be briefing of course while the

22    notice period --

23            MR. PAREKH:  Yeah.  That's just in term of any

24    rulings.

25            MR. SLATER:  We can maybe talk out loud through this
```

1  conversation, discussing potentially filing the briefs in

2  mid-December to give time for opposition, if there's any

3  reply, I don't know if you're going to permit replies, and

4  then that probably takes us to the end of January.

5          MR. OSTFELD:  Your Honor, may I suggest that perhaps

6  counsel meet and confer, and we can probably work out an

7  agreed briefing schedule.

8          THE COURT:  Let's do that, but let's not squeeze it

9  too close to the trial date.  Okay?

10         MR. SLATER:  Yes.  We'd like to get it, I think, to

11 your hands to make decisions as soon as you possibly can after

12 the opt-out period.

13         THE COURT:  Right.

14         MR. OSTFELD:  Ideally we could perhaps set a hearing

15 on the summary judgment motions for if possible even the day

16 after the opt-out period is done and Your Honor can have the

17 benefit of our arguments which may facilitate your ability to

18 expedite rulings.

19         MR. SLATER:  Or the benefit of not hearing our

20 arguments.

21         THE COURT:  Well, the question is when do you want to

22 start filing the motions.

23         MR. SLATER:  I think -- I agree we should probably

24 talk, but --

25         THE COURT:  Why don't you talk.

```
 1            MR. SLATER:  -- by the middle of December at the
 2   latest.
 3            THE COURT:  Why don't you talk and send me a proposed
 4   schedule of these things.  Okay?
 5            MR. SLATER:  We should be able to get that to you by
 6   next week, I would think.
 7            MR. OSTFELD:  Absolutely.  Yes, Your Honor.
 8            THE COURT:  Mr. Slater, you're going to attack all
 9   the defense damages experts, Daubert and all that kind of
10   stuff.
11            But you also -- there's a little thing in there about
12   submitting a supplemental report.
13            What's that all about?
14            MR. SLATER:  I think we're getting the issue
15   resolved.  The retailers had produced some data on pricing.
16   We felt like we should get our experts to address it.  We
17   assume their experts would want to address it.  Or not.  But
18   we wanted to raise the issue, because it would -- what it
19   would require is our expert to do a very short supplemental
20   report to say, and here's what the retailer data says for
21   these defendants on price.  And then to the extent it varies
22   at all, do a calculation and say, this is what it is.  The
23   defense experts would be entitled to the same data.
24            And then the question is whether or not -- I would
25   expect everyone needs to take probably another hour deposition
```

 1    or something of the experts.  Not that we think it's critical

 2    to do that, but I would assume everybody is going to at least

 3    want to have the opportunity to do that.

 4            I think this can be done pretty quickly.  But we

 5    wanted to raise the issue.  And we've reached out to the

 6    retailers.  We want to make sure of whether or not they have

 7    any issues with us using this data, because there had been so

 8    many arguments about the proprietary nature of their pricing.

 9            My understanding is there's no strong objections at

10    this point, but --

11            MS. WHITELEY:  There's a protective order that

12    specifically covers this.  And so each of the experts will

13    have to sign that so it's not distributed past the attorneys

14    and experts.

15            And Ms. Kapke can address it.

16            THE COURT:  Oh, hi.

17            MS. KAPKE:  Hi.  Kara Kapke for the retail pharmacy

18    defendants.

19            THE COURT:  Can you come up here so we can hear you a

20    little bit better, please.  Thank you.

21            MS. KAPKE:  Sure.  I agree with what Ms. Whiteley

22    said.

23            Kara Kapke for the retail pharmacy defendants.

24            There are a number of protective orders in place.  A

25    couple of defendants designated materials as confidential,

```
 1   restricted confidential, which requires signing one protective
 2   order.  Some pharmacy defendants designated as PBM
 3   confidential, which requires yet another protective order.
 4          And so we just need to hear -- those defendants who
 5   designated as PBM confidential, we just need to hear from your
 6   expert that your expert is comfortable signing that Exhibit B.
 7   And once we do that, I think we have no problem.
 8          MS. WHITELEY:  She is, Your Honor.
 9          THE COURT:  Apparently that's worked out.
10          You'll get it signed?
11          MS. WHITELEY:  Yes.
12          MS. KAPKE:  Perfect.  Then I don't think the pharmacy
13   defendants from a "can this be used" have an objection in
14   terms of the data being used once we get the signed protective
15   orders.
16          THE COURT:  Okay.
17          MR. SLATER:  I think -- I'm estimating about two
18   weeks to be able to have our expert finish looking at it, look
19   at it, get a quick supplemental report, which, again, I
20   anticipate to be very short.
21          MR. OSTFELD:  Your Honor, on behalf of the TPP trial
22   defendants, we have some concerns about this approach.
23          And the problem is, we're basically talking about --
24   I understand that it's intended to be a short supplemental
25   report, but we are talking about a very large dataset of
```

1    4.4 -- what I'm hearing today is 4.4 million records of

2    individual claims data which were not ever not part of

3    Dr. Conti's --

4         MR. SLATER:  I hate to interrupt, because I

5    thought -- and I don't have any idea how the data was

6    produced.  I'm not the technical wizard here.

7         That's the whole entire -- all the classes, I think.

8    So there may be a way to narrow it to what relates to the

9    trial defendants, and that might make it easier in this phase.

10   We should talk about it.

11        But I didn't mean to interrupt you.  But that's -- I

12   just wanted to throw that out there.

13        MR. OSTFELD:  That's all right.  And Your Honor, I've

14   seen a sample set of the data.  And the challenge here is

15   we're dealing with different datasets produced by different

16   retailers that are formatted in different ways.

17        Plaintiffs have had the data.  We have not.  We're

18   just now reaching out to get it when we learned for the first

19   time that this data might be used as part of the damages

20   evidence at this trial.

21        It wasn't part of the methodology employed by

22   Dr. Conti when she did her damages methodology.  Her

23   calculation was based on a dataset, IQVIA data, that our

24   experts have criticized.  So to the extent that we're now

25   adding or substituting a methodological basis for Dr. Conti's

1  opinions, I think we're talking about a relatively complicated

2  step that is going to alter the damages case, is going to

3  require additional depositions, it's going to require our

4  experts at least who have not had an opportunity to look at

5  the data to begin formatting it and analyzing it.

6          You know, I understand Your Honor has set the trial.

7  I'm not -- I can't argue with that.  Obviously we'll -- as

8  Mr. Slater said, we'll go with what Your Honor set.  But it's

9  going to complicate that trial date if we're doing a whole new

10 damages case workup before we can even file the 702 motions as

11 to the data.

12         THE COURT:  That's why I raised it when I saw it,

13 because I'm not a big fan of supplemental reports, because as

14 you hint at, sometimes that cycle never ends.  So we need a

15 really good reason -- if they object, they're going to need a

16 really good reason to be able to use that.

17         MR. SLATER:  I mean -- I'll say a couple things.

18         We wanted to make sure that we introduced this as

19 something that we address, because it's over there, so we have

20 to address it.

21         It doesn't change our expert's methodology, which is

22 how do you -- what's the right time to calculate the damages.

23 All it would do, to the extent the numbers vary from the IQVIA

24 data, the expert would just say, and if you apply this data,

25 the numbers would be this.  It doesn't change her model or

1  methodology.  It just is an alternative set of numbers to do

2  the calculation within the method.

3        I mean, we can do it a couple ways.  We can have it

4  and we can use it and do this, or the parties can stipulate

5  not to use the data and just go with what's been here to begin

6  with.  It doesn't matter to us, frankly, because we think

7  we're fine either way.

8        But we want to make sure that there's been full

9  transparency and that everybody is on the same page, because

10  what we wouldn't want to happen is at trial for someone to

11  cross-examine our expert and say, well, these are your

12  opinions, but didn't you know there was this other data out

13  there and you didn't tell us what those numbers are, what the

14  calculation you did there.  So this is to prevent that from

15  happening, or to their experts, by the same token.

16        So if -- maybe we talk a little.  Maybe the defense

17  says we don't even want to go down this rabbit hole, just

18  stick where we are.  I think we would agree to that, because

19  it's the point of least resistance, and there's a lot of work

20  to do right now.

21        But that's a call, frankly, that they would need to

22  make to tell us what they prefer, because we could go either

23  way as long as we know that we've covered that base of,

24  frankly, the experts not incorporating that into their

25  opinions.  Neither expert should be able to be attacked for

1    not doing that.  It should just be a level playing field.

2             MR. HONIK:  Your Honor, just perhaps to clarify this

3    so it's not -- we're not speaking about it in the abstract.

4             This case we believe is about the price or cost of

5    the pill at the point of sale.  And that's what our economic

6    expert has calculated.  She did so by relying on what the

7    industry uses across the board, which is IQVIA.

8             Long after the reports were done, because they were

9    discovery disputes, we then got retailer pricing data long

10   after.  We just got it late this summer.

11            And so the question arises, does that data reflect in

12   some reasonable and reliable way the price of the pills at the

13   point of sale.  The answer is that it may, because IQVIA is

14   also capturing that same data, if you will.

15            And so we felt it appropriate for a factfinder to

16   potentially have both sets of data which capture -- which

17   answer the same question.

18            So to Adam's point, if we can agree to just go with

19   one dataset, that's fine.  We just don't want to be in a

20   position where someone says, our expert didn't look at or

21   evaluate data that was later produced to us by the retailers

22   in this case.  We want it -- we want to do it out of a sense

23   of thoroughness.

24            THE COURT:  I understand.  Nobody is ascribing any

25   bad motives to anybody.

1    But maybe that's something you should explore with

2    them.

3    MR. OSTFELD:  I agree it makes sense for us to talk,

4    Your Honor.  Without getting into the merits of this issue,

5    the IQVIA data had been challenged vigorously by the

6    defendants, so I can understand why it would be in the

7    interest of plaintiffs' expert to introduce another dataset.

8    And logistically, had plaintiffs obtained the data earlier and

9    provided it to Dr. Conti earlier, you know, I think we

10   wouldn't be having this argument.  It's really the challenges

11   of can we do this within the time frame before the trial.  And

12   I think that's what we need to talk about and whether it makes

13   sense to do so.  And I agree it makes sense for us to have

14   this conversation.

15   THE COURT:  Of course, the conclusion may not be

16   any --

17   MR. SLATER:  Yeah.  I don't think it's a problem

18   timing-wise, and we're certainly not running from the IQVIA

19   data, but thank you for the suggestion.

20   THE COURT:  The conclusion may not be terribly

21   different anyway.  But no, I understand the points.  And like

22   I said, I'm not at all a fan of supplementing expert reports

23   just before trial, because you just never end the cycle.

24   But we'll see how it goes.  You need to talk, and,

25   you know, if something happens and you object, you'll let me

1  know, and I'll rule on it.

2          MR. OSTFELD:  Thank you.

3          THE COURT:  Okay.  Any other trial issues that you

4  want me to talk about?

5          MS. LOCKARD:  Your Honor --

6          THE COURT:  Questionnaires.

7          MS. LOCKARD:  Yes.  Read your mind.

8          THE COURT:  There we go.

9          Obviously the number of jurors we bring in is solely

10 dependent on the number of lawyers and number of parties who

11 go to trial.  I'll assume now that everybody is going to

12 trial.

13         Yes, I do use -- I will use a questionnaire.  I've

14 had great success with questionnaires in cases, you know,

15 long, complicated cases with many parties.

16         And here's how it works.

17         I have you working collaboratively to put together a

18 questionnaire of everything you want to know from that juror,

19 everything that's relevant to this case and the issues in this

20 case.  The sides get together.

21         If there are questions that one side wants, the other

22 sides thinks are irrelevant, I'll rule on them.  Otherwise,

23 you give me the questionnaire.

24         So day one of the process is nothing but the jurors

25 filling out the questionnaire.  That's all they do.

1          We will duplicate the questionnaire, whatever format

2     you want.  If you want it digital, if you want paper, we'll

3     give it to you.

4          My experience with questionnaires is the jurors can

5     get it done within an hour-and-a-half.  So they come in, they

6     see a video, they're done before 12:00 filling out the

7     questionnaires.  Again, we'll make copies to you.

8          I then expect you to get together, reviewing the

9     questionnaires, and propose to me joint requests to excuse for

10    cause just based on the questionnaires.  I'm very liberal

11    about this.  The sooner the better so they don't have to come

12    in.

13         Day 2 then, we bring the remaining jurors in for

14    follow-up individual voir dire.  And I mean follow-up.  We're

15    not asking them the same questions they've just answered.  But

16    sometimes you'll see something in the questionnaire that

17    indicates that, well, maybe -- maybe the juror can't do this

18    or maybe the juror really can't be fair.  So we'll ask those

19    questions.

20         I permit counsel to participate in the follow-up

21    questions.  And we bring them in one at a time.  We put them

22    in here in the witness box to answer whatever questions you

23    have or I have.  I usually start off because I have found over

24    the years that it can be a very intimidating process for the

25    jurors.  So I'll stand next to them, and I'll ask the first

1  questions just to help them feel more comfortable being in the

2  courtroom.  And then I'll ask you if you have any follow-up

3  questions.

4        And by the way, I'll ask you to introduce yourselves

5  to the jurors, because they'll have your name on the

6  questionnaire presumably, but they won't know who you are by

7  looking at you.

8        When we're done with all the questions of that

9  individual juror and the juror leaves the courtroom, I'll then

10 entertain applications for cause for that particular juror,

11 and I'll rule on it.

12       And we'll keep doing that until we have enough

13 qualified jurors to take into account the number of jurors

14 we're going to have and the peremptories.  Here are the six

15 peremptories, a four-week trial, I don't know, probably going

16 to need ten jurors; because, you know, you're going to lose

17 some during the course -- I've always lost some jurors during

18 the course of a long trial, just unexpected, things happen.

19       So ten and six, we need at least -- you know, at

20 least that many jurors, qualified jurors.

21       So when we get our pool of qualified jurors, we bring

22 all the qualified jurors in the courtroom.  We start seating

23 them 1, 2, 3, 4, right down the line and in the back row.  And

24 then you exercise your peremptories.

25       And as one is excused, you know, that puts other

1    people in the box until we have ten people that are not

2    subject to peremptories and obviously are satisfactory to the

3    parties.  And that's our jury.  And we will go from there.

4            So that's how we do that.

5            So, again, depending on the number of jurors we have

6    to go through, that will be -- they may be able to get it done

7    Tuesday.  I mean, it's possible.  I've done it in two days.

8    I've had other cases that we needed 500 jurors so that took

9    weeks.

10           So that's how I foresee that.  A good chance we can

11   get done with selection on Tuesday, which will mean we would

12   have opening statements on Wednesday.  And we'll go from

13   there.  Okay?

14           Now, I've been working 9:00 to 2:00 with juries,

15   9:00 a.m. to 2:00 p.m., no lunch break.  They love it.

16   They're out of here.  They have kids coming home from school,

17   they're home, everybody loves it.

18           It gives you a chance, more hours to prepare for the

19   next day and to catch up on what you need to do.  So we take a

20   couple of 15-minute breaks during that, and everybody seems to

21   be happy with that.

22           And, frankly, when you compare the number of pages,

23   you get a transcript between the 9:00 to 2:00 with no lunch

24   break and a 9:30 to 4:30 with a lunch break, it's really not

25   that much different.  We make a lot of progress that way.

```
 1              So that's what the trial days will look like.

 2              Because the jurors don't like it, I am not a big fan

 3    of sidebars.  And we're all big boys and girls.  And if you

 4    have an objection and the basis is hearsay, just stand up and

 5    say objection, hearsay.  I'll turn to the proponent of the

 6    evidence and say, why isn't that hearsay.  It just requires a

 7    simple explanation.  I'll make a ruling, yes, no.  We'll go

 8    from there.

 9              The time we really need a sidebar is if there's like

10    a relevance objection and somebody has to make a proffer and

11    we don't want the jury to hear that before I make a ruling on

12    it, then I'll ask you to go to sidebar.

13              Of course you can always bring anything up during the

14    breaks or at the end of the day.  If you have concerns about

15    evidence, we can, you know, talk about it when the jury is not

16    here.

17              But what I want to try to do is to make this as

18    smooth as possible for the jurors, get them in and get them

19    out, and then we can worry about the legal stuff when they're

20    not in the box waiting to hear from your witnesses.

21              You are going to bring a ton of motions about

22    witnesses and their testimony.  You are -- probably benefits

23    that you have a lot on video that you're going to play so I

24    get to see the entire testimony of that witness, because it

25    can be really hard for me to make a motion -- evidentiary in
```

United States District Court

```
 1   limine objection without hearing more of the testimony and
 2   without understanding where this all fits in.
 3          So I'm just telling you right now, it may not be
 4   possible for me to rule on your evidentiary objections
 5   pretrial, because I need to hear more of the evidence.  I'll
 6   do my best, but sometimes you're just going to have to defer
 7   it to the trial.  All right?
 8          Any other questions?
 9          MR. OSTFELD:  Your Honor, we have a list of
10   logistical questions from our trial specialist.  I don't know
11   that we necessarily need to bother Your Honor with those.
12          THE COURT:  Go ahead.
13          MR. OSTFELD:  Should we just have our specialist
14   liaise with the Court's --
15          THE COURT:  If it's technical questions, then you
16   need -- you can talk to our technical people.  But what can I
17   help you with?
18          MR. OSTFELD:  I think we've covered most of the
19   nontechnical questions.
20          But will we have -- that's a technical one.
21          When the exhibits are admitted, are they going to be
22   admitted under their originally submitted numbers, or do they
23   need to be renumbered consecutively?
24          THE COURT:  Your number.
25          MR. OSTFELD:  The rest are just logistical questions,
```

1    Your Honor.

2            THE COURT:  You will get day one that same jury list

3    that I have.  They come in and they -- trust me, they don't

4    ever -- we never get all of them have gotten the right

5    message, so we get more than we ask or less than we ask.

6            Anyway, so they check in downstairs.  And then we

7    make the list.  And it's computer prepared and shuffled and

8    all that kind of stuff.  It's randomized and all that.

9            You will get that same list that I get.  And that's

10   the one we'll work out.  Juror Number 1 is always going to be

11   that same person.  That's not going to change throughout.

12           So if the person who appears in number 1 makes it

13   through the qualification process, that's the person who will

14   go in seat number 1 and so forth.

15           I don't have a foreperson for the jurors, I have a

16   spokesperson.  I pick the person in seat number 1 to be the

17   spokesperson.  I had a problem with some jurors once who were

18   really upset that the foreperson was exercising his authority

19   as a foreperson, which of course isn't the way it's supposed

20   to work, so I don't appoint a foreperson.  It's a

21   spokesperson.  And all the spokesperson does is, if they have

22   any questions, the spokesperson signs it and gives it to me.

23   And the spokesperson announces the verdict.  That's all they

24   do.  Anyway.

25           MS. LOCKARD:  One other logistical question just in

 1   terms of space management.

 2          What is the Court's practice in terms of allowing

 3   conference space or use of empty juror rooms for our teams?

 4          THE COURT:  We'll find you spots.  Okay?  We do have

 5   space available, and we'll find you a spot.

 6          MS. LOCKARD:  Thank you.

 7          THE COURT:  And we have had teams of lawyers, and

 8   they bring in food at the end the day.  You can make those

 9   arrangements.  But please, please clean up.  Please.

10          We don't have -- we do not permit food in the

11   courtroom.  Water, yes, but nothing else in the courtroom

12   itself.  All right?

13          Anything else?

14          MR. OSTFELD:  Your Honor --

15          MR. SLATER:  Nothing for plaintiffs.

16          THE COURT:  Hmm?

17          MR. SLATER:  I said nothing for plaintiffs, Your

18   Honor?

19          MR. OSTFELD:  One more sort of logistical question.

20   Will we have access to the Court's wifi, or should we have

21   ours?

22          THE COURT:  No, you can use our wifi.  You can use

23   our wifi.  That's fine.  But I have also had lawyers set up

24   their own.  And that's up to you, whatever you want to do.

25   You can use ours, but, you know, there's a lot of people using

```
 1   ours, and you may want your own.  It's entirely up to you.
 2   You can set that up if you want.
 3           Okay.  Well, let's get at it, folks.  Sounds exiting.
 4           MR. HONIK:  Next meeting, Your Honor?
 5           THE COURT:  Next meeting.
 6           It's hard to believe it's November.
 7           LAW CLERK:  It's the Wednesday after Thanksgiving,
 8   Judge, I think.
 9           THE COURT:  Well, I don't know.
10           MR. HONIK:  Your Honor, I would only -- I was going
11   to just point out, there's a JPML hearing, I think it's
12   that -- let me just check.  It's that Thursday the 30th.  I
13   know a lot of us are traveling for that.
14           THE COURT:  Well, then --
15           LAW CLERK:  Could it be Tuesday the 28th?
16           MR. SLATER:  I can't do that day.  I can't do the
17   28th or 30th.  I have depositions both days.  I can do -- the
18   29th is fine.  I understand people have to travel, but I'm
19   just saying, I can't -- I have depositions.
20           MR. HONIK:  Did you say Monday the 27th?
21           How about Monday, Adam?
22           MR. SLATER:  I have a -- I can be here.  I have a
23   Zoom status conference for another MDL, but I can make it
24   work.
25           THE COURT:  What time?
```

*United States District Court*

```
 1              MR. SLATER:  2:00.

 2              THE COURT:  This would be later in the afternoon.

 3              MR. SLATER:  It's scheduled at 2:00.

 4              THE COURT:  Shoot.

 5              MR. SLATER:  I won't be able -- assuming this

 6   schedule holds, I'm going to be in depositions the 28th and

 7   30th.  I wouldn't be able to be here.

 8              THE COURT:  We've got Dr. Patel's trial that week.

 9              So, well, like December.  How about Wednesday the 6th

10   of December in the afternoon?

11              MR. SLATER:  We also -- the 29th early in the morning

12   is fine for us.  No good?

13              THE COURT:  No. I'm on trial.

14              MR. HONIK:  The 6th is good.  12/6 is all right.

15              THE COURT:  The 6th?

16              MR. HONIK:  Adam says he can come even though it's

17   his birthday.

18              THE COURT:  It's his birthday?

19              MR. HONIK:  That's what he said.

20              THE COURT:  How old?

21              MR. HONIK:  Him?

22              THE COURT:  Yeah.

23              MR. HONIK:  I don't know.

24              MR. SLATER:  How old?

25              THE COURT:  Yeah.
```

1           MR. SLATER:  Old.

2           THE COURT:  No, no.  Look who you're talking to.

3           MR. SLATER:  I'll be -- I don't care.  I'll be 56.

4           THE COURT:  56?

5           MR. HONIK:  Baby.

6           THE COURT:  You're a child yet.

7           2:00 on the 6th.  Thank you.

8           MR. SLATER:  Your Honor, if we reach a point in our

9    meet and confers on these multiple issues where we feel like

10   we've brought something to a head earlier than that and we

11   think it would be helpful --

12          THE COURT:  Yeah.  Come in.

13          MR. SLATER:  -- can we reach out to Your Honor?

14          THE COURT:  Yep.  Come on in.  We'll get it

15   straightened out.

16          MR. SLATER:  Thank you.

17          THE COURT:  Happy Thanksgiving, everyone.

18          RESPONSE:  Same to you, Judge.

19          THE COURT:  See you in December if not sooner.

20          You know, if you do have an issue that you think I

21   can resolve sooner, just let me know.

22          (Proceedings concluded at 3:18 p.m.)
                                - - -
23          I certify that the foregoing is a correct transcript
     from the record of proceedings in the above-entitled matter.
24
     */S/ Ann Marie Mitchell*          *2nd day of November, 2023*
25   *Court Reporter/Transcriber*      *Date*

*United States District Court*

# #

**#1049** [1] - 2:3

---

# /

**/S** [1] - 49:24

---

# 0

**07068** [1] - 1:14
**08101** [1] - 1:8

---

# 1

**1** [6] - 1:8, 41:23, 45:10, 45:12, 45:14, 45:16
**103** [1] - 1:13
**11** [1] - 2:21
**1100** [1] - 1:17
**12/6** [1] - 48:14
**12:00** [1] - 40:6
**13** [1] - 27:11
**1333** [1] - 2:3
**1440** [1] - 2:10
**15** [1] - 28:16
**15-minute** [1] - 42:20
**1515** [1] - 1:17
**1638** [1] - 2:6
**18** [1] - 16:13
**18th** [4] - 28:4, 28:6, 28:7, 29:12
**19** [1] - 14:12
**19-md-02875** [1] - 1:4
**191032** [1] - 1:17
**1st** [1] - 28:17

---

# 2

**2** [2] - 40:13, 41:23
**20005** [1] - 2:10
**2023** [2] - 1:8, 49:24
**2500** [1] - 2:15
**27th** [1] - 47:20
**28th** [3] - 47:15, 47:17, 48:6
**29th** [2] - 47:18, 48:11
**2:00** [6] - 42:14, 42:15, 42:23, 48:1, 48:3, 49:7
**2:18** [2] - 1:9, 4:2
**2nd** [1] - 49:24

---

# 3

**3** [1] - 41:23
**30** [2] - 20:1, 26:1
**30305** [1] - 2:15
**30th** [4] - 16:6, 47:12, 47:17, 48:7
**3100** [1] - 2:17
**31st** [1] - 29:20

---

**32563** [1] - 2:3
**3333** [1] - 2:15
**3:18** [1] - 49:22

---

# 4

**4** [1] - 41:23
**4.4** [3] - 7:9, 34:1
**40** [1] - 16:12
**45-day** [1] - 29:15
**46204** [1] - 2:22
**4:30** [1] - 42:24
**4th** [1] - 1:7

---

# 5

**500** [1] - 42:8
**56** [2] - 49:3, 49:4
**576-7018** [1] - 1:23

---

# 6

**60** [1] - 12:19
**60601** [1] - 2:17
**6th** [4] - 48:9, 48:14, 48:15, 49:7

---

# 7

**701** [1] - 1:20
**70130** [1] - 1:21
**702** [2] - 16:19, 35:10
**77** [1] - 2:17

---

# 8

**80** [1] - 6:15
**85** [1] - 6:15
**856** [1] - 1:23

---

# 9

**90277** [1] - 2:7
**9:00** [3] - 42:14, 42:15, 42:23
**9:30** [1] - 42:24

---

# A

**a.m** [1] - 42:15
**ability** [4] - 24:24, 25:1, 29:14, 30:17
**able** [5] - 6:11, 7:5, 29:16, 29:17, 31:5, 33:18, 35:16, 36:25, 42:6, 48:5, 48:7
**above-entitled** [1] - 49:23
**absolutely** [2] - 13:7, 31:7
**abstract** [1] - 37:3
**access** [5] - 22:12, 22:19, 25:15, 46:20
**accessing** [1] - 25:16

---

**accident** [1] - 27:11
**account** [1] - 41:13
**accurate** [1] - 10:9
**Actavis** [2] - 2:18, 2:19
**ACTION** [1] - 1:3
**actions** [1] - 7:25
**actual** [3] - 14:24, 21:21, 25:8
**Adam** [2] - 47:21, 48:16
**ADAM** [1] - 1:13
**Adam's** [1] - 37:18
**add** [2] - 5:17, 13:24
**adding** [3] - 17:7, 17:9, 34:25
**addition** [1] - 23:1
**additional** [4] - 5:17, 11:6, 27:24, 35:3
**address** [7] - 5:20, 16:7, 31:16, 31:17, 32:15, 35:19, 35:20
**addressed** [2] - 5:11, 14:25
**admitted** [3] - 21:10, 44:21, 44:22
**advance** [1] - 23:8
**adversaries** [2] - 18:4, 23:9
**advice** [1] - 21:17
**advise** [1] - 6:25
**afternoon** [2] - 48:2, 48:10
**age** [1] - 4:7
**ago** [1] - 22:23
**agree** [16] - 6:22, 11:19, 12:1, 12:2, 12:5, 13:2, 17:1, 18:6, 27:22, 29:4, 30:23, 32:21, 36:18, 37:18, 38:3, 38:13
**agreed** [2] - 18:13, 30:7
**agreement** [5] - 5:24, 6:7, 6:9, 11:16, 27:20
**ahead** [1] - 44:12
**Aid** [2] - 2:23, 6:1
**aided** [1] - 1:25
**Alexandra** [1] - 8:22
**ALLISON** [1] - 2:9
**allowing** [1] - 46:2
**alone** [1] - 25:23
**ALSO** [1] - 3:1
**alter** [1] - 35:2
**alternative** [1] - 36:1
**amazing** [1] - 4:10
**amend** [1] - 26:13
**analyzed** [1] - 14:15
**analyzing** [1] - 35:5

---

**Anderson** [1] - 9:19
**Andrews** [7] - 7:18, 7:21, 8:5, 8:11, 8:13, 8:22
**Ann** [1] - 49:24
**ann** [1] - 1:22
**AnnMarie_Mitchell@njd.uscourts.gov** [1] - 1:23
**announces** [1] - 45:23
**answer** [5] - 12:14, 14:6, 37:13, 37:17, 40:22
**answered** [1] - 40:15
**answers** [1] - 12:15
**anticipate** [3] - 15:24, 29:10, 33:20
**Antoinette** [1] - 9:2
**anyhoo..** [1] - 5:3
**anyway** [9] - 5:3, 5:15, 17:6, 18:4, 18:23, 26:3, 38:21, 45:6, 45:24
**API** [1] - 14:24
**applications** [1] - 41:10
**apply** [1] - 35:24
**appoint** [1] - 45:20
**appreciate** [1] - 26:16
**approach** [1] - 33:22
**appropriate** [1] - 37:15
**approve** [1] - 29:16
**April** [1] - 28:17
**arbitrarily** [1] - 28:24
**argue** [1] - 35:7
**argument** [2] - 5:10, 38:10
**arguments** [3] - 30:17, 30:20, 32:8
**arises** [1] - 37:11
**ARPS** [1] - 2:9
**arrangements** [1] - 46:9
**ascribing** [1] - 37:24
**aside** [1] - 21:2
**assessment** [1] - 6:22
**assume** [6] - 10:8, 24:24, 27:24, 31:17, 32:2, 39:11
**assuming** [3] - 11:9, 14:19, 48:5
**Atlanta** [1] - 2:15
**attack** [1] - 31:8
**attacked** [1] - 36:25
**attempt** [1] - 18:13
**attention** [1] - 26:23
**attorney** [1] - 28:15
**attorneys** [1] - 32:13
**audio** [1] - 24:13

---

**authority** [1] - 45:18
**auto** [1] - 27:10
**availability** [1] - 15:22
**available** [4] - 18:15, 23:22, 28:6, 46:5
**Avenue** [1] - 2:10

---

# B

**baby** [1] - 49:5
**backwards** [1] - 29:7
**bad** [1] - 37:25
**bang** [1] - 23:6
**bankruptcy** [1] - 6:1
**BARNES** [1] - 2:20
**Bartels** [4] - 7:18, 7:25, 8:1, 8:3
**base** [1] - 36:23
**based** [2] - 34:23, 40:10
**bases** [1] - 6:18
**basis** [2] - 34:25, 43:4
**Beach** [1] - 2:7
**begin** [3] - 13:9, 35:5, 36:5
**beginning** [1] - 22:16
**behalf** [1] - 33:21
**BEHRAM** [1] - 2:6
**belatedly** [1] - 4:4
**benefit** [2] - 30:17, 30:19
**benefits** [1] - 43:22
**Benjamin** [1] - 8:22
**Berkovski** [2] - 9:7, 9:12
**best** [3] - 4:21, 13:20, 44:6
**better** [4] - 17:1, 24:7, 32:20, 40:11
**between** [3] - 10:6, 14:17, 42:23
**big** [5] - 20:24, 28:3, 35:13, 43:2, 43:3
**birthday** [2] - 48:17, 48:18
**Bishop** [1] - 9:19
**bit** [3] - 14:23, 14:25, 32:20
**blah** [3] - 26:8
**bless** [1] - 28:13
**board** [2] - 19:20, 37:7
**boiled** [1] - 21:8
**bother** [1] - 44:11
**box** [3] - 40:22, 42:1, 43:20
**boys** [1] - 43:3
**break** [3] - 42:15, 42:24
**breaks** [2] - 42:20, 43:14
**Breeze** [1] - 2:3

**briefing** [3] - 7:1, 29:21, 30:7
**briefly** [1] - 6:20
**briefs** [1] - 30:1
**bring** [10] - 11:12, 11:14, 15:25, 39:9, 40:13, 40:21, 41:21, 43:13, 43:21, 46:8
**brought** [1] - 49:10
**BROWN** [8] - 2:9, 4:16, 12:9, 28:9, 28:14, 28:21, 29:1, 29:3
**Building** [1] - 1:7
**burden** [1] - 18:25
**burdensome** [2] - 22:8, 22:16
**busy** [2] - 28:12, 28:23
**Byron** [1] - 9:1

**C**

**calculate** [1] - 35:22
**calculated** [1] - 37:6
**calculation** [4] - 31:22, 34:23, 36:2, 36:14
**California** [1] - 2:7
**Camden** [1] - 1:8
**Camp** [1] - 1:20
**candy** [2] - 4:4, 5:2
**capture** [1] - 37:16
**capturing** [1] - 37:14
**care** [2] - 27:6, 49:3
**careful** [2] - 26:14, 26:15
**case** [17] - 7:21, 7:22, 8:12, 8:14, 9:9, 21:13, 23:24, 26:11, 27:11, 28:7, 28:15, 35:2, 35:10, 37:4, 37:22, 39:19, 39:20
**CASE** [1] - 1:5
**cases** [6] - 11:22, 26:18, 27:9, 39:14, 39:15, 42:8
**catch** [1] - 42:19
**caution** [1] - 14:9
**cautiously** [1] - 7:2
**caveat** [1] - 19:18
**celebrate** [1] - 4:12
**certain** [1] - 13:10
**certainly** [3] - 17:1, 24:6, 38:18
**certify** [1] - 49:23
**cetera** [1] - 13:18
**challenge** [1] - 34:14
**challenged** [1] - 38:5
**challenges** [2] - 10:11, 38:10
**chance** [3] - 28:6,

42:10, 42:18
**change** [5] - 10:6, 19:4, 35:21, 35:25, 45:11
**changing** [1] - 17:7
**charge** [1] - 24:23
**check** [3] - 24:2, 45:6, 47:12
**Chicago** [1] - 2:17
**child** [1] - 49:6
**Christmas** [1] - 4:12
**chunks** [1] - 19:20
**Circuit** [1] - 25:1
**CIVIL** [1] - 1:3
**civil** [2] - 26:18, 27:8
**claims** [1] - 34:2
**clarify** [1] - 37:2
**class** [6] - 6:3, 6:4, 6:16, 6:23, 17:11, 29:16
**classes** [1] - 34:7
**clean** [1] - 46:9
**clear** [2] - 8:11, 25:2
**Clerk** [1] - 3:2
**CLERK** [2] - 47:7, 47:15
**clever** [1] - 4:19
**close** [2] - 10:23, 30:9
**Coast** [1] - 2:6
**Cohen** [1] - 1:7
**collaboratively** [1] - 39:17
**College** [1] - 2:3
**comfortable** [3] - 10:8, 33:6, 41:1
**coming** [1] - 42:16
**commence** [1] - 29:17
**Commencing** [1] - 1:9
**compare** [1] - 42:22
**Complaint** [1] - 8:3
**complete** [2] - 17:12, 29:18
**complicate** [1] - 35:9
**complicated** [3] - 27:8, 35:1, 39:15
**computer** [3] - 1:25, 21:4, 45:7
**computer-aided** [1] - 1:25
**conceptually** [1] - 16:9
**concerns** [2] - 33:22, 43:14
**concluded** [1] - 49:22
**conclusion** [2] - 38:15, 38:20
**confer** [2] - 18:11, 30:6
**CONFERENCE** [1] - 1:5

**conference** [8] - 5:23, 7:22, 8:12, 9:10, 16:10, 18:12, 46:3, 47:23
**conferred** [1] - 16:10
**conferring** [2] - 18:8, 20:16
**confers** [1] - 49:9
**confidential** [4] - 32:25, 33:1, 33:3, 33:5
**CONLEE** [1] - 1:20
**consecutively** [1] - 44:23
**consent** [2] - 10:3, 29:15
**consistent** [1] - 15:3
**contemplated** [1] - 12:18
**contests** [1] - 4:20
**Conti** [2] - 34:22, 38:9
**Conti's** [2] - 34:3, 34:25
**Continued** [2] - 2:1, 2:1
**conversation** [2] - 30:1, 38:14
**Cooper** [1] - 1:7
**copies** [3] - 22:5, 40:7
**copy** [1] - 24:25
**corporate** [2] - 15:23, 16:12
**Corporation** [1] - 2:23
**correct** [7] - 5:5, 5:25, 6:5, 7:18, 12:14, 12:16, 49:23
**correction** [1] - 8:10
**cost** [1] - 37:4
**counsel** [7] - 16:11, 24:1, 25:5, 26:6, 27:20, 30:6, 40:20
**counters** [2] - 13:18, 20:17
**couple** [4] - 32:25, 35:17, 36:3, 42:20
**course** [9] - 10:5, 22:17, 24:8, 29:21, 38:15, 41:17, 41:18, 43:13, 45:19
**court** [2] - 4:1, 27:17
**Court** [2] - 1:22, 49:25
**COURT** [1] - 1:1
**Court's** [4] - 29:14, 44:14, 46:2, 46:20
**Courthouse** [1] - 1:7
**Courtroom** [1] - 3:3
**courtroom** [6] - 25:21, 41:2, 41:9, 41:22, 46:11
**cover** [1] - 6:18
**covered** [2] - 36:23,

44:18
**covers** [1] - 32:12
**critical** [1] - 32:1
**criticized** [1] - 34:24
**cross** [1] - 36:11
**cross-examine** [1] - 36:11
**curious** [1] - 27:21
**CVS** [1] - 2:22
**cycle** [2] - 35:14, 38:23

**D**

**daily** [1] - 24:25
**damages** [7] - 16:21, 31:9, 34:19, 34:22, 35:2, 35:10, 35:22
**Daniel** [1] - 8:19
**DANIEL** [1] - 2:2
**data** [26] - 13:21, 31:15, 31:20, 31:23, 32:7, 33:14, 34:2, 34:5, 34:14, 34:17, 34:19, 34:23, 35:5, 35:11, 35:24, 36:5, 36:12, 37:9, 37:11, 37:14, 37:16, 37:21, 38:5, 38:8, 38:19
**dataset** [4] - 33:25, 34:23, 37:19, 38:7
**datasets** [1] - 34:15
**date** [5] - 28:10, 28:12, 29:13, 30:9, 35:9
**Date** [1] - 49:25
**dates** [1] - 28:4
**Daubert** [1] - 31:9
**DAVIS** [1] - 2:14
**days** [7] - 4:16, 12:19, 20:1, 26:1, 42:7, 43:1, 47:17
**DC** [1] - 2:10
**deadline** [1] - 6:23
**deadlines** [1] - 5:18
**deal** [2] - 6:2, 22:24
**dealing** [2] - 13:21, 34:15
**December** [5] - 30:2, 31:1, 48:9, 48:10, 49:19
**decisions** [1] - 30:11
**decorate** [1] - 4:22
**decorated** [1] - 4:8
**decoration** [1] - 4:14
**decorations** [1] - 4:21
**defendant** [2] - 11:18, 11:22
**defendants** [17] - 7:24, 9:8, 11:6, 11:10, 11:20, 12:14, 16:13, 31:21, 32:18,

32:23, 32:25, 33:2, 33:4, 33:13, 33:22, 34:9, 38:6
**Defendants** [3] - 2:11, 2:18, 2:22
**defendants'** [1] - 5:16
**defense** [15] - 10:25, 11:7, 13:18, 15:25, 16:13, 17:2, 19:6, 20:14, 21:25, 23:19, 26:6, 31:9, 31:23, 36:16
**defer** [1] - 44:6
**deficiencies** [1] - 7:17
**definition** [1] - 10:17
**deliberating** [1] - 22:19
**deliberations** [3] - 22:12, 22:18, 25:5
**deliver** [1] - 22:4
**delivered** [1] - 22:4
**demonstratives** [1] - 21:6
**dependent** [1] - 39:10
**deposed** [2] - 16:12, 16:13
**deposition** [6] - 13:1, 13:5, 13:22, 18:16, 18:21, 31:25
**depositions** [8] - 13:6, 16:25, 17:13, 17:16, 35:3, 47:17, 47:19, 48:6
**Deputy** [1] - 3:3
**DEPUTY CLERK** [2] - 23:21, 24:12
**design** [1] - 6:10
**designated** [3] - 32:25, 33:2, 33:5
**designating** [2] - 14:9, 14:17
**designations** [6] - 13:1, 14:22, 16:25, 18:17, 18:21, 19:15
**detail** [1] - 15:8
**determine** [1] - 18:15
**determined** [1] - 16:23
**developing** [1] - 23:17
**differences** [1] - 7:2
**different** [7] - 14:11, 27:20, 34:15, 34:16, 38:21, 42:25
**differing** [1] - 10:4
**digital** [3] - 22:5, 22:18, 40:2
**digitize** [1] - 22:8
**digitized** [1] - 24:10
**digitizing** [1] - 23:2
**dire** [1] - 40:14
**direct** [4] - 6:13, 6:16,

7:9
disagreements [1] - 7:1
discovery [2] - 5:9, 37:9
discretion [1] - 10:12
discussing [1] - 30:1
discussion [2] - 16:15, 18:18
discussions [1] - 15:21
dismiss [1] - 8:24
dismissal [2] - 7:24, 8:15
dismissed [3] - 8:4, 8:7, 8:21
display [1] - 24:16
dispositive [1] - 12:20
dispute [1] - 11:16
disputes [3] - 5:14, 18:19, 37:9
distributed [1] - 32:13
DISTRICT [3] - 1:1, 1:1, 1:10
documented [1] - 20:18
documents [2] - 20:24, 24:12
done [15] - 7:4, 7:5, 15:19, 10:22, 23:7, 29:10, 30:16, 32:4, 37:8, 40:5, 40:6, 41:8, 42:6, 42:7, 42:11
doors [1] - 17:2
dose [1] - 15:1
down [8] - 8:16, 16:17, 17:3, 18:14, 21:8, 22:1, 36:17, 41:23
download [1] - 24:18
downstairs [1] - 45:6
Dr [5] - 34:3, 34:22, 34:25, 38:9, 48:8
drive [1] - 23:2
Drive [1] - 2:17
due [1] - 12:20
duplicate [2] - 14:13, 40:1
during [1] - 18:12, 19:11, 22:12, 22:17, 22:18, 24:8, 25:4, 41:17, 42:20, 43:13

**E**

early [2] - 13:19, 48:11
easier [1] - 34:9
eat [1] - 4:5
economic [1] - 37:5
efficiency [1] - 20:21
eight [1] - 14:18

Eisenhower [1] - 1:13
either [4] - 6:14, 27:15, 36:7, 36:22
electronic [1] - 22:5
email [2] - 6:14, 7:10
Emmett [1] - 9:1
employed [1] - 34:21
empty [1] - 46:3
end [15] - 7:6, 7:12, 10:5, 12:21, 14:5, 16:6, 19:5, 19:13, 20:3, 26:16, 29:17, 30:4, 38:23, 43:14, 46:8
endeavor [1] - 14:14
ends [1] - 35:14
engage [1] - 20:12
entail [1] - 23:1
enter [1] - 26:9
entertain [1] - 41:10
entire [2] - 34:7, 43:24
entirely [1] - 47:1
entitled [1] - 11:3, 31:23, 49:23
envision [1] - 15:4
epiphany [1] - 22:24
equipment [1] - 24:15
ESQUIRE [11] - 1:13, 1:16, 1:20, 2:2, 2:6, 2:9, 2:14, 2:14, 2:16, 2:21, 3:2
essentially [3] - 6:15, 10:21, 11:19
Estate [1] - 8:22
estimate [1] - 14:19
estimating [1] - 33:17
et [1] - 13:18
evaluate [1] - 37:21
everywhere [1] - 4:18
evidence [13] - 15:5, 21:7, 21:16, 22:5, 22:11, 23:5, 24:10, 24:21, 25:20, 34:20, 43:6, 43:15, 44:5
evidentiary [4] - 17:17, 17:19, 43:25, 44:4
exactly [2] - 24:4, 24:5
examine [1] - 36:11
example [3] - 14:8, 14:16, 20:13
exchange [1] - 23:23
exchanged [1] - 18:10
excruciating [1] - 15:8
excuse [1] - 40:9
excused [1] - 41:25
exercise [2] - 11:22, 41:24
exercising [1] - 45:18
exhibit [3] - 21:12,

21:17, 21:20
Exhibit [1] - 33:6
exhibits [12] - 21:14, 21:19, 21:24, 21:25, 22:2, 22:25, 23:3, 24:6, 25:15, 44:21
existing [1] - 5:10
exiting [1] - 47:3
expect [2] - 31:25, 40:8
expedite [1] - 30:18
experience [4] - 18:2, 21:11, 27:17, 40:4
expert [1] - 16:4, 31:19, 33:6, 33:18, 35:24, 36:11, 36:25, 37:6, 37:20, 38:7, 38:22
expert's [1] - 35:21
experts [13] - 16:3, 16:13, 31:9, 31:16, 31:17, 31:23, 32:1, 32:12, 32:14, 34:24, 35:4, 36:15, 36:24
explain [1] - 22:20
explanation [1] - 43:7
explore [1] - 38:1
extend [1] - 7:21
extended [2] - 8:12, 8:23
extent [3] - 31:21, 34:24, 35:23
extreme [1] - 16:16

**F**

facilitate [2] - 29:14, 30:17
factfinder [1] - 37:15
factual [1] - 15:15
failsafe [1] - 24:5
fair [1] - 40:18
familiar [1] - 24:16
fan [3] - 35:13, 38:22, 43:2
far [1] - 18:9
fast [1] - 22:16
feet [1] - 28:20
felt [2] - 31:16, 37:15
few [10] - 13:16, 14:12, 14:21, 15:24, 18:23, 20:8, 21:10, 21:13, 22:21, 29:16
field [1] - 37:1
figure [3] - 13:18, 18:19, 20:19
figures [1] - 16:11
file [4] - 12:14, 12:15, 18:1, 35:10
filed [2] - 16:20, 29:5
filing [2] - 30:1, 30:22

fill [1] - 26:6
filled [1] - 26:7
filling [2] - 39:25, 40:6
fills [1] - 26:5
final [3] - 17:21, 25:25, 26:11
fine [7] - 11:24, 12:6, 36:7, 37:19, 46:23, 47:18, 48:12
finish [1] - 33:18
finished [1] - 15:1
first [8] - 16:5, 19:6, 20:5, 22:23, 26:5, 28:6, 34:18, 40:25
fits [1] - 44:2
FLOM [1] - 2:9
Florida [1] - 2:3
folks [1] - 47:3
follow [4] - 40:14, 40:20, 41:2
follow-up [4] - 40:14, 40:20, 41:2
following [1] - 8:24
food [2] - 46:8, 46:10
foregoing [1] - 49:23
foreperson [4] - 45:15, 45:18, 45:19, 45:20
foresee [1] - 42:10
form [4] - 6:7, 6:8, 26:4
formal [2] - 20:16, 25:20
formally [1] - 13:12
format [3] - 22:18, 24:9, 40:1
formatted [1] - 34:16
formatting [1] - 35:5
forth [2] - 19:10, 45:14
forward [1] - 13:11
four [4] - 6:13, 10:7, 15:11, 41:15
four-and-a-half [1] - 6:13
four-week [1] - 41:15
frame [1] - 38:11
frankly [4] - 36:6, 36:21, 36:24, 42:22
FREEMAN [1] - 1:12
front [1] - 4:14
full [1] - 36:8
function [1] - 22:14

**G**

general [1] - 28:15
generally [1] - 11:23
George [1] - 8:25
Georgia [1] - 2:15
girls [1] - 43:3
given [2] - 19:18,

21:23
goal [1] - 6:22
God [1] - 28:13
GOLDENBERG [1] - 2:2
great [4] - 6:19, 24:22, 25:13, 39:14
GREENBERG [1] - 2:13
GREGORY [1] - 2:16
guess [2] - 13:20, 29:9
guidance [1] - 13:11
Gulf [1] - 2:3
guy [1] - 28:22
guys [1] - 12:23

**H**

half [2] - 6:13, 40:5
Halloween [4] - 4:4, 4:6, 4:9, 4:23
hands [2] - 4:11, 30:11
happy [4] - 4:4, 5:20, 42:21, 49:17
hard [4] - 14:1, 20:11, 43:25, 47:6
HARKINS [11] - 2:14, 5:7, 5:16, 7:20, 7:24, 8:10, 8:14, 9:4, 9:8, 9:16, 9:21
Harris [1] - 8:23
hate [1] - 34:4
Haughton [1] - 9:17
HAUGHTON [1] - 9:17
head [1] - 49:10
Healthcare [1] - 2:11
hear [11] - 5:9, 5:13, 7:12, 25:5, 27:10, 32:19, 33:4, 33:5, 43:11, 43:20, 44:5
hearing [4] - 30:14, 30:19, 34:1, 44:1, 47:11
hearsay [3] - 43:4, 43:5, 43:6
heck [1] - 4:5
held [1] - 4:1
help [3] - 13:12, 41:1, 44:17
helpful [3] - 13:14, 23:18, 49:11
helps [1] - 13:19
hi [3] - 11:2, 32:16, 32:17
Highway [1] - 2:6
Hines [1] - 9:18
HINES [1] - 9:18
hint [1] - 35:14
hmm [1] - 46:16
holds [1] - 48:6

hole [1] - 36:17
home [2] - 42:16, 42:17
homes [2] - 4:8, 4:9
HONIK [12] - 1:16, 1:16, 37:2, 47:4, 47:10, 47:20, 48:14, 48:16, 48:19, 48:21, 48:23, 49:5
Honor [48] - 5:7, 5:17, 5:22, 6:6, 6:12, 6:20, 7:8, 7:15, 7:20, 8:2, 8:10, 8:19, 9:8, 9:16, 9:22, 11:2, 12:7, 12:16, 13:12, 16:7, 18:6, 23:13, 24:9, 24:18, 25:14, 27:14, 29:12, 29:15, 30:5, 30:16, 31:7, 33:8, 33:21, 34:13, 35:6, 35:8, 37:2, 38:4, 39:5, 44:9, 44:11, 45:1, 46:14, 46:18, 47:4, 47:10, 49:8, 49:13
Honorable [2] - 3:2, 4:1
HONORABLE [1] - 1:10
hope [1] - 24:25
hopefully [2] - 7:12, 13:11
hoping [1] - 21:15
hour [2] - 31:25, 40:5
hour-and-a-half [1] - 40:5
hours [1] - 42:18
Huahai [1] - 2:11
hundred [2] - 21:10, 21:14

**I**

idea [6] - 6:12, 13:5, 15:6, 17:24, 25:17, 34:5
ideal [1] - 10:22
ideally [2] - 10:24, 30:14
identifying [1] - 19:1
Igor [1] - 9:12
Illinois [1] - 2:17
important [1] - 20:20
Inc [3] - 2:18, 2:19, 2:22
incentive [2] - 20:10, 20:11
included [2] - 5:11, 5:18
includes [1] - 7:10
including [2] - 13:13,

13:14
incorporating [1] - 36:24
Indiana [1] - 2:22
Indianapolis [1] - 2:22
indicated [1] - 18:22
indicates [2] - 18:3, 40:17
individual [3] - 34:2, 40:14, 41:9
Industries [1] - 2:18
industry [1] - 37:7
inexact [1] - 13:23
inform [1] - 13:13
informally [1] - 13:12
information [1] - 16:22
injustice [1] - 26:13
instructions [1] - 26:20
intended [1] - 33:24
intending [1] - 5:9
interest [1] - 38:7
interested [1] - 21:5
interferes [1] - 28:4
interrupt [2] - 34:4, 34:11
intimidating [1] - 40:24
introduce [3] - 21:7, 38:7, 41:4
introduced [2] - 23:5, 35:18
involved [1] - 21:23
involves [1] - 26:4
iPad [2] - 22:13, 24:19
iPads [1] - 25:9
IQVIA [6] - 34:23, 35:23, 37:7, 37:13, 38:5, 38:18
irbesartan [1] - 5:8
irrelevant [1] - 39:22
issue [11] - 5:7, 5:19, 6:5, 11:4, 26:17, 28:14, 31:14, 31:18, 32:5, 38:4, 49:20
issues [15] - 5:4, 6:10, 7:20, 9:24, 13:10, 14:21, 15:7, 15:12, 19:19, 21:15, 32:7, 39:3, 39:19, 49:9
itself [1] - 46:12

**J**

Jackson [1] - 9:1
Janice [1] - 9:12
January [3] - 29:19, 29:20, 30:4
JERSEY [1] - 1:1
Jersey [3] - 1:8, 1:14,

28:22
joint [3] - 21:24, 25:25, 40:9
jointly [1] - 21:24
Joseph [1] - 8:25
JPML [1] - 47:11
Judge [10] - 4:17, 5:5, 5:12, 5:22, 12:12, 15:22, 19:12, 28:9, 47:8, 49:18
judge [1] - 28:18
JUDGE [1] - 1:10
judges [3] - 25:19, 27:17, 27:19
judgment [3] - 16:19, 29:4, 30:15
Judicial [1] - 3:2
juries [1] - 42:14
Juror [1] - 45:10
juror [8] - 27:24, 39:18, 40:17, 40:18, 41:9, 41:10, 46:3
jurors [33] - 22:12, 22:14, 22:19, 22:20, 22:22, 24:19, 25:15, 25:19, 26:17, 26:18, 26:25, 27:7, 27:10, 39:9, 39:24, 40:4, 40:13, 40:25, 41:5, 41:13, 41:16, 41:17, 41:20, 41:21, 41:22, 42:5, 42:8, 43:2, 43:18, 45:15, 45:17
jurors' [1] - 27:2
jury [15] - 10:2, 11:11, 15:6, 15:16, 21:6, 22:9, 24:4, 24:6, 24:23, 25:2, 26:20, 42:3, 43:11, 43:15, 45:2

**K**

Kaluhiokalani [1] - 9:18
KANNER [1] - 1:19
KAPKE [4] - 2:21, 32:17, 32:21, 33:12
Kapke [3] - 32:15, 32:17, 32:23
KARA [1] - 2:21
Kara [2] - 32:17, 32:23
KATZ [1] - 1:12
keep [3] - 23:9, 23:24, 41:12
Kennedy [1] - 9:19
key [1] - 5:14
keystroke [1] - 23:6
kids [5] - 4:16, 4:17, 4:25, 5:3, 42:16
kind [5] - 10:11, 21:3,

24:17, 31:9, 45:8
kinds [1] - 5:2
KIRTLAND [1] - 2:5
knows [1] - 22:2
Kugler [1] - 3:2
KUGLER [2] - 1:10, 4:2

**L**

Lamb [3] - 7:18, 7:25, 8:8
large [2] - 20:10, 33:25
larry [1] - 3:3
Larry [1] - 23:15
late [1] - 37:10
latest [2] - 13:16, 31:2
law [1] - 25:1
LAW [2] - 47:7, 47:15
Law [1] - 3:2
lawyers [5] - 12:24, 22:7, 39:10, 46:7, 46:23
lawyers' [1] - 10:9
learned [1] - 34:18
least [9] - 12:18, 12:20, 15:15, 19:25, 32:2, 35:4, 36:19, 41:19, 41:20
leave [1] - 25:23
leaves [1] - 41:9
Lee [1] - 8:25
left [2] - 7:18, 11:11
legal [1] - 43:19
length [1] - 10:4
Leslie [1] - 8:25
less [6] - 10:13, 12:3, 14:23, 14:25, 21:14, 45:5
letter [2] - 5:18, 11:5
letters [2] - 5:19, 20:17
level [1] - 37:1
liability [1] - 16:20
LIABILITY [1] - 1:4
liaise [1] - 44:14
liberal [1] - 40:10
lights [1] - 4:9
likely [2] - 14:10, 18:20
limine [5] - 16:19, 17:22, 18:1, 18:8, 44:1
limited [1] - 11:7
line [2] - 12:22, 41:23
list [9] - 9:5, 9:11, 21:12, 22:4, 28:7, 44:9, 45:2, 45:7, 45:9
listed [1] - 9:19

lists [4] - 18:10, 21:17, 21:20, 21:21
LITIGATION [1] - 1:4
live [4] - 15:25, 16:1, 16:4, 18:24
LLC [5] - 1:12, 1:16, 1:19, 2:11, 2:18
LLP [4] - 2:5, 2:9, 2:13, 2:20
load [2] - 22:11, 25:9
loaded [1] - 24:3
LOCKARD [20] - 2:14, 4:22, 5:1, 11:2, 11:9, 11:14, 12:6, 16:7, 16:9, 17:11, 17:17, 18:6, 19:25, 20:4, 20:6, 24:9, 39:5, 39:7, 45:25, 46:6
logistical [4] - 44:10, 44:25, 45:25, 46:19
logistically [1] - 38:8
look [9] - 25:6, 25:21, 26:12, 27:18, 33:18, 35:4, 37:20, 43:1, 49:2
looked [1] - 19:17
looking [4] - 20:12, 25:17, 33:18, 41:7
LORETTA [1] - 3:2
losartan [1] - 5:8
lose [1] - 41:16
lost [1] - 41:17
loud [1] - 29:25
Louisiana [1] - 1:21
love [3] - 15:16, 22:14, 42:15
loves [1] - 42:17
Ltd [2] - 2:12, 2:18
lunch [3] - 42:15, 42:23, 42:24

**M**

MacStravic [3] - 3:3, 23:5, 23:16
mail [3] - 6:14, 6:16, 7:9
major [1] - 11:16
MANAGEMENT [1] - 1:5
management [4] - 7:22, 8:12, 9:10, 46:1
manifest [1] - 26:13
manufacturing [3] - 14:24, 15:1, 15:5
March [6] - 28:4, 28:5, 28:6, 28:7, 29:7, 29:12
Marie [2] - 1:22, 49:24
mark [1] - 21:19

**Market**[1] - 1:17
**mass**[1] - 13:20
**match**[1] - 10:21
**materials**[1] - 32:25
**math**[1] - 11:25
**matter**[6] - 7:4, 8:1, 8:11, 8:18, 36:6, 49:23
**matters**[1] - 9:10
**MAZIE**[1] - 1:12
**MDL**[1] - 47:23
**MEAGHER**[1] - 2:9
**mean**[4] - 4:18, 6:1, 15:9, 17:10, 20:17, 22:14, 22:23, 24:4, 28:22, 28:23, 34:11, 35:17, 36:3, 40:14, 42:7, 42:11
**means**[1] - 21:7
**mechanical**[1] - 1:24
**meet**[3] - 18:11, 30:6, 49:9
**meeting**[3] - 18:7, 47:4, 47:5
**meetings**[1] - 19:11
**Meridian**[1] - 2:21
**merits**[1] - 38:4
**message**[1] - 45:5
**met**[1] - 16:9
**method**[1] - 36:2
**methodological**[1] - 34:25
**methodology**[4] - 34:21, 34:22, 35:21, 36:1
**mid**[2] - 29:19, 30:2
**mid-December**[1] - 30:2
**mid-January**[1] - 29:19
**middle**[1] - 31:1
**might**[4] - 7:8, 18:3, 34:9, 34:19
**Mike**[1] - 9:18
**million**[3] - 6:13, 7:9, 34:1
**mind**[3] - 17:7, 20:21, 39:7
**Mississippi**[2] - 28:17, 28:19
**misspoke**[1] - 7:9
**Mitchell**[3] - 1:7, 1:22, 49:24
**model**[1] - 35:25
**modification**[1] - 27:22
**modified**[1] - 27:23
**modify**[2] - 5:10, 27:19
**Monday**[1] - 47:20,

47:21
**month**[6] - 16:6, 19:5, 19:8, 19:13, 20:3, 29:17
**morning**[1] - 48:11
**most**[7] - 6:9, 10:17, 14:10, 15:14, 18:20, 18:22, 44:18
**motion**[3] - 18:5, 19:21, 43:25
**motions**[12] - 12:20, 16:19, 16:20, 17:22, 18:8, 18:18, 29:4, 30:15, 30:22, 35:10, 43:21
**motives**[1] - 37:25
**MP3**[1] - 24:14
**MP4**[1] - 24:14
**MR**[99] - 5:7, 5:16, 5:22, 6:6, 6:20, 7:5, 7:8, 7:15, 7:16, 7:20, 7:24, 8:2, 8:10, 8:14, 8:19, 9:4, 9:8, 9:16, 9:21, 10:16, 10:22, 10:24, 12:4, 12:11, 12:16, 12:18, 13:7, 14:1, 14:5, 15:17, 15:21, 16:8, 19:12, 20:9, 20:25, 21:2, 21:8, 23:13, 23:15, 23:22, 24:18, 24:22, 25:13, 25:14, 27:14, 28:1, 29:7, 29:12, 29:20, 29:21, 29:23, 29:25, 30:5, 30:10, 30:14, 30:19, 30:23, 31:1, 31:5, 31:7, 31:14, 33:17, 33:21, 34:4, 34:13, 35:17, 37:2, 38:3, 38:17, 39:2, 44:9, 44:13, 44:18, 44:25, 46:14, 46:15, 46:17, 46:19, 47:4, 47:10, 47:16, 47:20, 47:22, 48:1, 48:3, 48:5, 48:11, 48:14, 48:16, 48:19, 48:21, 48:23, 48:24, 49:1, 49:3, 49:5, 49:8, 49:13, 49:16
**MS**[32] - 4:16, 4:22, 5:1, 11:2, 11:9, 11:14, 12:6, 12:9, 16:7, 16:9, 17:11, 17:17, 18:6, 19:25, 20:4, 20:6, 24:9, 28:9, 28:14, 28:21, 29:1, 29:3, 32:11, 32:17, 32:21, 33:8, 33:11, 33:12, 39:5,

39:7, 45:25, 46:6
**multi**[1] - 11:22
**multi-defendant**[1] - 11:22
**multiple**[2] - 14:10, 49:9

## N

**N.W**[1] - 2:10
**name**[1] - 41:5
**names**[1] - 6:11
**narrow**[4] - 14:14, 18:13, 21:15, 34:8
**narrower**[1] - 15:2
**narrowing**[2] - 16:17, 17:3
**nature**[2] - 17:6, 32:8
**NE**[1] - 2:15
**nearly**[1] - 15:4
**necessarily**[1] - 44:11
**necessary**[2] - 15:22, 18:17
**necessity**[2] - 13:9, 19:19
**need**[41] - 5:5, 14:8, 14:11, 16:15, 16:17, 16:18, 16:23, 17:2, 17:18, 17:19, 18:14, 18:15, 18:17, 18:18, 20:16, 20:17, 21:20, 21:21, 23:2, 23:8, 23:11, 23:23, 23:24, 24:2, 25:23, 25:25, 33:4, 33:5, 35:14, 35:15, 36:21, 38:12, 38:24, 41:16, 41:19, 42:19, 43:9, 44:5, 44:11, 44:16, 44:23
**needed**[3] - 5:20, 16:3, 42:8
**needs**[4] - 16:22, 17:12, 21:18, 31:25
**negligence**[1] - 27:10
**negotiate**[1] - 20:19
**negotiation**[1] - 19:21
**neighborhoods**[1] - 4:20
**never**[4] - 14:1, 35:14, 38:23, 45:4
**new**[1] - 35:9
**NEW**[1] - 1:1
**New**[5] - 1:8, 1:14, 1:21, 2:10, 28:22
**next**[19] - 5:23, 7:6, 7:12, 7:22, 8:12, 8:23, 9:6, 9:9, 9:19, 13:15, 19:14, 19:15, 20:10, 29:16, 31:6, 40:25, 42:19, 47:4, 47:5

**NIGH**[5] - 2:2, 2:2, 5:22, 8:2, 8:19
**Nigh**[1] - 8:19
**nine**[4] - 9:14, 11:10, 12:3
**nobody**[2] - 4:13, 37:24
**nontechnical**[1] - 44:19
**nothing**[5] - 9:21, 39:24, 46:11, 46:15, 46:17
**notice**[15] - 6:3, 6:5, 6:7, 6:13, 6:18, 6:23, 7:9, 7:10, 17:11, 29:9, 29:10, 29:16, 29:17, 29:22
**notices**[1] - 29:14
**notified**[1] - 6:16
**November**[4] - 1:8, 16:6, 47:6, 49:24
**number**[17] - 11:18, 12:1, 12:2, 14:15, 20:25, 32:24, 39:9, 39:10, 41:13, 42:5, 42:22, 44:24, 45:12, 45:14, 45:16
**Number**[1] - 45:10
**NUMBER**[1] - 1:3
**numbers**[5] - 35:23, 35:25, 36:1, 36:13, 44:22

## O

**object**[3] - 26:25, 35:15, 38:25
**objection**[12] - 8:2, 8:20, 9:11, 27:3, 28:9, 28:11, 33:13, 43:4, 43:5, 43:10, 44:1
**objectionable**[1] - 27:18
**objections**[8] - 17:13, 17:14, 26:8, 27:2, 27:15, 27:18, 32:9, 44:4
**obtained**[1] - 38:8
**obvious**[1] - 15:10
**obviously**[10] - 14:11, 14:13, 15:23, 16:14, 23:10, 23:23, 25:5, 35:7, 39:9, 42:2
**Official**[1] - 1:22
**old**[3] - 48:20, 48:24, 49:1
**once**[6] - 18:20, 24:2, 27:11, 33:7, 33:14, 45:17
**one**[21] - 5:7, 7:20,

7:22, 8:10, 8:20, 12:22, 18:12, 23:24, 25:4, 26:21, 33:1, 37:19, 39:21, 39:24, 40:21, 41:25, 44:20, 45:2, 45:10, 45:25, 46:19
**open**[1] - 4:1
**opening**[1] - 42:12
**opinions**[3] - 35:1, 36:12, 36:25
**opportunity**[3] - 18:11, 32:3, 35:4
**opposition**[1] - 30:2
**opt**[8] - 17:12, 17:15, 17:19, 29:13, 29:15, 29:18, 30:12, 30:16
**opt-out**[8] - 17:12, 17:15, 17:19, 29:13, 29:15, 29:18, 30:12, 30:16
**optimistic**[1] - 7:2
**order**[10] - 5:10, 9:5, 19:16, 25:25, 26:10, 26:11, 26:14, 32:11, 33:2, 33:3
**orders**[5] - 8:24, 9:9, 9:12, 32:24, 33:15
**ordinarily**[1] - 5:12
**originally**[1] - 44:22
**Orleans**[1] - 1:21
**OSTFELD**[21] - 2:16, 6:20, 7:16, 12:16, 12:18, 25:14, 29:12, 29:21, 30:5, 30:14, 31:7, 33:21, 34:13, 38:3, 39:2, 44:9, 44:13, 44:18, 44:25, 46:14, 46:19
**otherwise**[2] - 17:4, 39:22
**ought**[1] - 17:25
**ourselves**[1] - 23:23
**outside**[1] - 4:8
**outstanding**[1] - 5:8
**overdone**[1] - 4:19
**overinclusive**[3] - 13:9, 19:19, 23:10
**overrule**[1] - 27:3
**own**[3] - 11:23, 46:24, 47:1

## P

**P-63**[1] - 23:5
**p.m**[4] - 1:9, 4:2, 42:15, 49:22
**Pacific**[1] - 2:6
**PACKARD**[1] - 2:5
**page**[1] - 36:9
**pages**[5] - 13:22,

14:3, 14:15, 16:24, 42:22
**paper** [3] - 22:10, 26:23, 40:2
**papers** [1] - 28:15
**PAREKH** [7] - 2:6, 6:6, 7:5, 7:8, 7:15, 29:20, 29:23
**Parks** [2] - 9:7, 9:13
**Parkway** [2] - 1:13, 2:3
**part** [4] - 15:15, 34:2, 34:19, 34:21
**participate** [1] - 40:20
**particular** [2] - 19:16, 41:10
**particularly** [1] - 13:5
**parties** [9] - 10:5, 11:3, 15:1, 18:9, 18:19, 36:4, 39:10, 39:15, 42:3
**party** [2] - 10:12, 23:4
**past** [1] - 32:13
**Patel's** [1] - 48:8
**Pauline** [1] - 8:23
**pays** [1] - 26:16
**PBM** [2] - 33:2, 33:5
**PDF** [2] - 24:10, 24:12
**peace** [1] - 20:21
**peep** [1] - 27:10
**pending** [2] - 16:20, 28:16
**Pennsylvania** [1] - 1:17
**people** [10] - 11:13, 11:14, 14:12, 21:23, 22:24, 42:1, 44:16, 46:25, 47:18
**per** [3] - 11:3, 11:17, 12:6
**percent** [1] - 6:15
**peremptories** [11] - 10:15, 11:6, 11:10, 11:11, 11:17, 11:18, 11:22, 41:14, 41:15, 41:24, 42:2
**peremptory** [2] - 10:11, 11:19
**perfect** [1] - 33:12
**perhaps** [3] - 30:5, 30:14, 37:2
**period** [8] - 17:12, 17:15, 29:13, 29:15, 29:19, 29:22, 30:12, 30:16
**periodic** [1] - 19:11
**permit** [4] - 26:18, 30:3, 40:20, 46:10
**person** [4] - 45:11, 45:12, 45:13, 45:16

**perspective** [1] - 5:16
**Petrie** [1] - 9:1
**Pharma** [1] - 2:19
**Pharmaceutical** [1] - 2:18
**Pharmaceuticals** [3] - 2:11, 2:12, 2:18
**pharmacy** [4] - 32:17, 32:23, 33:2, 33:12
**Pharmacy** [1] - 2:22
**phase** [1] - 34:9
**Philadelphia** [1] - 1:17
**Phillip** [1] - 9:2
**phone** [1] - 20:15
**pick** [2] - 28:24, 45:16
**piece** [1] - 26:23
**Piedmont** [1] - 2:15
**pill** [1] - 37:5
**pills** [1] - 37:12
**place** [2] - 26:1, 32:24
**plaintiff** [2] - 16:1, 26:5
**plaintiffs** [9] - 10:14, 12:19, 13:6, 18:13, 18:22, 34:17, 38:8, 46:15, 46:17
**Plaintiffs** [5] - 1:14, 1:18, 1:21, 2:4, 2:7
**plaintiffs'** [3] - 5:18, 21:25, 38:7
**plan** [4] - 6:3, 6:24, 7:7, 29:16
**play** [2] - 25:21, 43:23
**played** [1] - 24:19
**playing** [2] - 14:18, 37:1
**pleadings** [1] - 26:11
**point** [14] - 13:23, 13:25, 14:7, 18:5, 20:17, 25:14, 26:13, 32:10, 36:19, 37:5, 37:13, 37:18, 47:11, 49:8
**points** [1] - 38:21
**pool** [1] - 41:21
**portion** [2] - 26:5, 26:6
**position** [2] - 29:18, 37:20
**possible** [7] - 13:19, 14:14, 20:20, 30:15, 42:7, 43:18, 44:4
**possibly** [1] - 30:11
**potentially** [2] - 30:1, 37:16
**practice** [2] - 27:21, 46:2
**predict** [1] - 27:12
**predictions** [2] - 10:4, 10:9
**prefer** [1] - 36:22

**preference** [1] - 24:11
**preliminary** [2] - 18:10, 26:20
**premark** [1] - 21:18
**premarked** [1] - 22:3
**prepare** [1] - 42:18
**prepared** [1] - 45:7
**PRESENT** [1] - 3:1
**pressure** [2] - 4:16, 4:17
**presumably** [1] - 41:6
**pretrial** [4] - 25:25, 26:10, 26:14, 44:5
**pretty** [6] - 4:19, 25:2, 26:14, 26:15, 32:4
**prevent** [1] - 36:14
**prevention** [1] - 26:13
**price** [3] - 31:21, 37:4, 37:12
**pricing** [3] - 31:15, 32:8, 37:9
**Prinston** [2] - 2:11
**problem** [5] - 19:2, 33:7, 33:23, 38:17, 45:17
**problems** [1] - 19:23
**PROCEEDINGS** [1] - 4:1
**proceedings** [1] - 49:23
**Proceedings** [2] - 1:24, 49:22
**process** [9] - 17:10, 18:24, 19:4, 20:6, 20:7, 29:6, 39:24, 40:24, 45:13
**produced** [5] - 1:25, 31:15, 34:6, 34:15, 37:21
**production** [2] - 5:17, 5:25
**PRODUCTS** [1] - 1:4
**proffer** [1] - 43:10
**progress** [2] - 6:4, 42:25
**proponent** [1] - 43:5
**propose** [1] - 40:9
**proposed** [1] - 31:3
**proposing** [1] - 18:2
**proprietary** [1] - 32:8
**protective** [5] - 32:11, 32:24, 33:1, 33:3, 33:14
**prove** [1] - 15:7
**provided** [1] - 38:9
**publication** [2] - 6:15, 6:17
**pull** [1] - 14:21
**pumpkin** [1] - 4:14
**put** [7] - 15:4, 23:17,

24:23, 28:15, 29:18, 39:17, 40:21
**puts** [1] - 41:25
**putting** [3] - 18:25, 21:2, 26:22

**Q**

**qualification** [1] - 45:13
**qualified** [4] - 41:13, 41:20, 41:21, 41:22
**quality** [1] - 15:7
**questionnaire** [7] - 39:13, 39:18, 39:23, 39:25, 40:1, 40:16, 41:6
**questionnaires** [6] - 39:6, 39:14, 40:4, 40:7, 40:9, 40:10
**questions** [24] - 26:17, 26:18, 26:22, 27:1, 27:2, 27:7, 27:11, 27:14, 27:24, 39:21, 40:15, 40:19, 40:21, 40:22, 41:1, 41:3, 41:8, 44:8, 44:10, 44:15, 44:19, 44:25, 45:22
**quick** [2] - 23:13, 33:19
**quickly** [1] - 32:4
**Quinn** [1] - 9:2

**R**

**rabbit** [1] - 36:17
**raise** [5] - 5:22, 28:9, 28:11, 31:18, 32:5
**raised** [3] - 11:4, 26:17, 35:12
**randomized** [1] - 45:8
**RASO** [1] - 2:2
**rather** [1] - 13:4
**RE** [1] - 1:4
**reach** [2] - 49:8, 49:13
**reached** [3] - 6:7, 6:9, 32:5
**reaching** [1] - 34:18
**read** [5] - 11:5, 27:4, 27:5, 39:7
**reading** [2] - 17:23, 18:2
**ready** [3] - 13:15, 19:17, 20:15
**really** [14] - 5:14, 17:3, 17:25, 18:18, 22:15, 27:6, 35:15, 35:16, 38:10, 40:18, 42:24, 43:9, 43:25, 45:18
**reason** [3] - 14:14,

35:15, 35:16
**reasonable** [2] - 12:21, 37:12
**record** [2] - 8:11, 49:23
**recorded** [1] - 1:24
**recordings** [3] - 24:13, 24:14
**records** [1] - 34:1
**Redondo** [1] - 2:7
**reflect** [1] - 37:11
**related** [1] - 25:14
**relates** [1] - 34:8
**relatively** [3] - 17:22, 19:3, 35:1
**relevance** [1] - 43:10
**relevant** [1] - 39:19
**reliable** [1] - 37:12
**relist** [1] - 9:14
**relying** [1] - 37:6
**remaining** [3] - 6:25, 7:2, 40:13
**renumbered** [1] - 44:23
**repeat** [1] - 17:5
**repeating** [1] - 19:19
**replies** [1] - 30:3
**reply** [1] - 30:3
**report** [5] - 19:10, 31:12, 31:20, 33:19, 33:25
**Reporter** [1] - 1:22
**Reporter/ Transcriber** [1] - 49:25
**reports** [4] - 25:16, 35:13, 37:8, 38:22
**representatives** [1] - 16:2
**request** [4] - 5:17, 9:9, 19:25, 25:20
**requested** [1] - 12:19
**requests** [3] - 25:2, 25:4, 40:9
**require** [4] - 7:1, 31:19, 35:3
**requires** [3] - 33:1, 33:3, 43:6
**resistance** [1] - 36:19
**resolve** [1] - 49:21
**resolved** [2] - 7:14, 31:15
**resources** [1] - 16:24
**respond** [3] - 19:8, 20:1, 20:3
**response** [5] - 8:6, 8:9, 9:25, 17:9
**RESPONSE** [1] - 49:18
**responses** [1] - 17:8

**rest** [1] - 44:25
**restricted** [1] - 33:1
**retail** [2] - 32:17, 32:23
**Retailer** [1] - 2:22
**retailer** [2] - 31:20, 37:9
**retailers** [4] - 31:15, 32:6, 34:16, 37:21
**returnable** [1] - 9:9
**reviewing** [1] - 40:8
**ride** [2] - 12:11, 12:12
**Rite** [2] - 2:23, 6:1
**Road** [1] - 2:15
**ROBERT** [2] - 1:10, 4:2
**Robert** [2] - 3:2, 8:25
**roll** [2] - 13:11, 19:14
**rolling** [9] - 13:2, 13:7, 13:15, 18:21, 19:3, 19:16, 20:6, 20:7
**Ronald** [1] - 8:25
**rooms** [1] - 46:3
**Roseland** [1] - 1:14
**rough** [1] - 14:19
**row** [1] - 41:23
**RUBEN** [1] - 1:16
**rule** [7] - 10:11, 11:5, 27:1, 39:1, 39:22, 41:11, 44:4
**ruling** [3] - 29:14, 43:7, 43:11
**rulings** [11] - 15:3, 16:18, 16:23, 17:12, 17:17, 17:20, 17:21, 21:9, 29:8, 29:24, 30:18
**running** [1] - 38:18

## S

**sale** [2] - 37:5, 37:13
**Samocha** [1] - 8:22
**sample** [1] - 34:14
**satisfactory** [1] - 42:2
**saves** [1] - 22:17
**saw** [1] - 35:12
**schedule** [3] - 30:7, 31:4, 48:6
**scheduled** [2] - 28:16, 48:3
**school** [1] - 42:16
**scope** [1] - 15:2
**screens** [1] - 22:10
**search** [1] - 22:14
**searchable** [1] - 24:10
**seat** [3] - 4:3, 45:14, 45:16
**seating** [1] - 41:22
**second** [1] - 22:15
**see** [17] - 4:13, 10:10,

13:23, 14:17, 14:20, 17:8, 17:9, 22:9, 24:4, 28:7, 38:24, 40:6, 40:16, 43:24, 49:19
**seek** [1] - 7:24
**seeking** [1] - 8:15
**seem** [2] - 5:14, 12:21
**selection** [1] - 42:11
**send** [3] - 20:13, 26:7, 31:3
**sense** [5] - 21:23, 37:22, 38:3, 38:13
**serious** [1] - 16:15
**server** [3] - 22:11, 23:6, 25:9
**serving** [1] - 19:15
**set** [6] - 6:23, 30:14, 34:14, 35:6, 35:8, 36:1, 46:23, 47:2
**sets** [1] - 37:16
**Shannon** [1] - 9:18
**shocked** [1] - 4:25
**shoot** [1] - 48:4
**short** [4] - 6:7, 31:19, 33:20, 33:24
**show** [10] - 8:24, 9:6, 9:9, 9:12, 21:6, 21:19, 22:10, 22:21, 26:12, 26:24
**showing** [1] - 4:7
**shuffled** [1] - 45:7
**side** [7] - 11:3, 11:17, 12:6, 17:2, 19:7, 23:3, 39:21
**sidebar** [2] - 43:9, 43:12
**sidebars** [2] - 25:7, 43:3
**sides** [7] - 12:1, 13:2, 14:9, 24:2, 39:20, 39:22
**sides'** [1] - 20:21
**sight** [1] - 18:10
**sign** [2] - 26:9, 32:13
**signed** [2] - 33:10, 33:14
**significant** [1] - 16:24
**signing** [2] - 33:1, 33:6
**signs** [1] - 45:22
**similar** [1] - 14:10
**simple** [1] - 43:7
**simultaneously** [2] - 6:25, 29:5
**sit** [1] - 22:1
**six** [9] - 4:25, 12:4, 12:5, 14:11, 14:17, 41:14, 41:19
**SKADDEN** [1] - 2:9

**SLATE** [1] - 2:9
**SLATER** [52] - 1:12, 1:13, 10:16, 10:22, 10:24, 12:4, 12:11, 13:7, 14:1, 14:5, 15:17, 15:21, 16:8, 19:12, 20:9, 20:25, 21:2, 21:8, 23:13, 23:15, 23:22, 24:18, 24:22, 25:13, 27:14, 28:1, 29:7, 29:25, 30:10, 30:19, 30:23, 31:1, 31:5, 31:14, 33:17, 34:4, 35:17, 38:17, 46:15, 46:17, 47:16, 47:22, 48:1, 48:3, 48:5, 48:11, 48:24, 49:1, 49:3, 49:8, 49:13, 49:16
**Slater** [3] - 11:4, 31:8, 35:8
**Smith** [1] - 9:2
**SMITH** [1] - 3:2
**smooth** [1] - 43:18
**Solco** [1] - 2:11
**solely** [1] - 39:9
**solutions** [1] - 12:21
**someone** [2] - 36:10, 37:20
**sometimes** [3] - 35:14, 40:16, 44:6
**soon** [3] - 19:3, 20:14, 30:11
**sooner** [4] - 13:4, 40:11, 49:19, 49:21
**sorry** [2] - 8:13, 29:2
**sort** [3] - 6:18, 13:2, 46:19
**sounds** [3] - 7:7, 16:16, 47:3
**South** [1] - 2:6
**space** [3] - 46:1, 46:3, 46:5
**speaking** [1] - 37:3
**specialist** [2] - 44:10, 44:13
**specific** [2] - 25:2, 25:3
**specifically** [1] - 32:12
**spend** [1] - 16:23
**spokesperson** [6] - 45:16, 45:17, 45:21, 45:22, 45:23
**spot** [1] - 46:5
**spots** [1] - 46:4
**spreadsheet** [1] - 23:17
**spreadsheets** [2] - 21:3, 23:18
**squeeze** [1] - 30:8

**Stacey** [1] - 9:1
**stage** [1] - 26:2
**stand** [3] - 27:5, 40:25, 43:4
**standing** [1] - 28:20
**start** [22] - 10:14, 13:2, 13:7, 13:11, 13:15, 13:16, 13:17, 14:6, 16:25, 17:3, 18:21, 18:24, 19:15, 19:16, 20:16, 20:18, 29:6, 29:14, 30:22, 40:23, 41:22
**started** [6] - 18:25, 19:5, 19:22, 20:23, 22:23, 28:25
**starting** [1] - 19:14
**starts** [2] - 21:21, 24:2
**state** [1] - 27:17
**statements** [1] - 42:12
**STATES** [2] - 1:1, 1:10
**status** [1] - 47:23
**steady** [1] - 13:17
**stenography** [1] - 1:24
**step** [2] - 4:14, 35:2
**Steven** [1] - 9:1
**STEVEN** [1] - 2:14
**stick** [1] - 36:18
**still** [1] - 7:17
**stipulate** [2] - 18:9, 36:4
**straightened** [1] - 49:15
**strange** [1] - 10:11
**stream** [2] - 13:17, 15:19
**Street** [3] - 1:17, 1:20, 2:21
**Streets** [1] - 1:7
**stringent** [1] - 10:17
**strong** [1] - 32:9
**stuff** [7] - 6:11, 22:15, 24:16, 24:17, 31:10, 43:19, 45:8
**Sturgill** [1] - 8:25
**subject** [2] - 19:21, 42:2
**submitted** [4] - 5:20, 6:24, 27:15, 44:22
**submitting** [1] - 31:12
**substantially** [1] - 21:16
**substituting** [1] - 34:25
**subtract** [1] - 13:24
**success** [1] - 39:14
**suggest** [2] - 12:4, 30:5
**suggesting** [1] - 21:24

**suggestion** [2] - 17:25, 38:19
**Suite** [3] - 1:17, 2:15, 2:17
**summary** [3] - 16:19, 29:4, 30:15
**summer** [1] - 37:10
**supersedes** [1] - 26:10
**supplemental** [6] - 6:17, 31:12, 31:19, 33:19, 33:24, 35:13
**supplementing** [1] - 38:22
**supposed** [1] - 45:19

## T

**teams** [2] - 46:3, 46:7
**technical** [4] - 34:6, 44:15, 44:16, 44:20
**ten** [3] - 41:16, 41:19, 42:1
**terabytes** [2] - 21:1, 21:4
**term** [1] - 29:23
**terms** [4] - 18:12, 33:14, 46:1, 46:2
**terribly** [2] - 10:9, 38:20
**testimony** [13] - 14:10, 15:2, 15:20, 16:4, 18:23, 19:20, 25:2, 25:8, 25:10, 25:15, 43:22, 43:24, 44:1
**Teva** [4] - 2:18, 2:18, 14:23, 15:10
**text** [2] - 6:14, 7:10
**Thanksgiving** [2] - 47:7, 49:17
**The Court** [113] - 4:3, 4:18, 4:24, 5:2, 5:9, 5:13, 5:24, 6:19, 6:24, 6:25, 7:4, 7:7, 7:11, 7:17, 7:23, 8:1, 8:3, 8:7, 8:13, 8:16, 8:21, 9:5, 9:11, 9:17, 9:23, 10:1, 10:12, 10:20, 10:23, 10:25, 11:8, 11:12, 11:21, 12:5, 12:8, 12:10, 12:13, 12:17, 12:23, 13:20, 14:3, 15:16, 15:18, 16:5, 17:5, 17:14, 17:21, 18:22, 19:23, 20:2, 20:5, 20:23, 21:1, 21:5, 21:17, 23:14, 24:1, 24:15, 24:21, 24:23, 25:17, 27:22, 28:2, 28:11, 28:18, 28:22,

29:2, 29:4, 30:8, 30:13, 30:21, 30:25, 31:3, 31:8, 32:16, 32:19, 33:9, 33:16, 35:12, 37:24, 38:15, 38:20, 39:3, 39:6, 39:8, 44:12, 44:15, 44:24, 45:2, 46:4, 46:7, 46:16, 46:22, 47:5, 47:9, 47:14, 47:25, 48:2, 48:4, 48:8, 48:13, 48:15, 48:18, 48:20, 48:22, 48:25, 49:2, 49:4, 49:6, 49:12, 49:14, 49:17, 49:19
**the witness** [5] - 27:4, 27:5, 27:6, 40:22
**they've** [1] - 40:15
**thinks** [1] - 39:22
**Third** [1] - 25:1
**Thomas** [1] - 9:2
**THORNBURG** [1] - 2:20
**thoroughness** [1] - 37:23
**thousands** [2] - 14:3, 16:24
**three** [14] - 7:25, 10:12, 10:18, 11:3, 11:7, 11:9, 11:24, 12:3, 12:6, 12:10, 12:13, 16:12
**throughout** [1] - 45:11
**throw** [1] - 34:12
**thumb** [1] - 23:2
**Thursday** [1] - 47:12
**timing** [2] - 29:5, 38:18
**timing-wise** [1] - 38:18
**today** [3] - 5:5, 6:23, 34:1
**together** [5] - 21:18, 28:24, 39:17, 39:20, 40:8
**token** [1] - 36:15
**ton** [1] - 43:21
**took** [2] - 10:17, 42:8
**Torrent** [2] - 14:23, 15:10
**total** [1] - 11:7
**town** [1] - 4:20
**TPP** [1] - 33:21
**TPPs** [1] - 16:2
**track** [1] - 23:24
**tranche** [3] - 16:5, 19:6, 20:5
**transcript** [4] - 1:24, 24:25, 42:23, 49:23

**transcription** [1] - 1:25
**transparency** [1] - 36:9
**TRAURIG** [1] - 2:13
**travel** [1] - 47:18
**traveling** [1] - 47:13
**trial** [46] - 9:24, 10:5, 10:6, 12:19, 14:6, 14:11, 14:16, 14:20, 15:4, 15:14, 16:15, 17:16, 17:22, 18:15, 18:18, 21:2, 21:18, 21:20, 22:17, 23:2, 23:11, 24:2, 24:8, 24:20, 26:2, 26:12, 29:12, 30:9, 33:21, 34:9, 34:20, 35:6, 35:9, 36:10, 38:11, 38:23, 39:3, 39:11, 39:12, 41:15, 41:18, 43:1, 44:7, 44:10, 48:8, 48:13
**true** [1] - 10:8
**trust** [1] - 45:3
**try** [5] - 20:1, 28:7, 28:16, 29:8, 43:17
**Tuesday** [3] - 42:7, 42:11, 47:15
**turn** [1] - 43:5
**turns** [1] - 11:23
**twice** [2] - 17:4, 24:3
**two** [4] - 9:5, 12:20, 33:17, 42:7
**type** [1] - 20:18
**types** [1] - 16:2

## U

**U.S** [2] - 1:7, 2:11
**unanimous** [1] - 10:2
**unaware** [1] - 5:19
**unclear** [1] - 11:5
**under** [1] - 44:22
**understood** [2] - 20:4, 20:8
**unexpected** [1] - 41:18
**unfold** [1] - 13:24
**unfolding** [1] - 14:20
**unfolds** [1] - 14:16
**UNITED** [2] - 1:1, 1:10
**universe** [2] - 20:24, 21:9
**unless** [1] - 9:11
**unlocked** [1] - 17:3
**unseen** [1] - 18:10
**up** [17] - 4:11, 10:5, 12:21, 28:22, 32:19, 40:14, 40:20, 41:2, 42:19, 43:4, 43:13,

46:9, 46:23, 46:24, 47:1, 47:2
**update** [6] - 5:8, 7:19, 7:20, 9:7, 9:15, 9:16
**updates** [1] - 9:8
**upset** [1] - 45:18
**URL** [1] - 6:10
**US** [1] - 6:14
**USA** [1] - 2:18
**uses** [1] - 37:7

## V

**VALSARTAN** [1] - 1:4
**Vanaskie** [3] - 5:5, 5:12, 5:23
**varies** [1] - 31:21
**vary** [1] - 35:23
**VAUGHN** [1] - 2:2
**verdict** [1] - 45:23
**VICTORIA** [1] - 2:14
**video** [8] - 15:15, 15:18, 15:19, 18:23, 24:14, 25:21, 40:6, 43:23
**videos** [1] - 24:19
**videotaped** [1] - 15:24
**vigorously** [1] - 38:5
**voir** [1] - 40:14

## W

**Wacker** [1] - 2:17
**wait** [1] - 19:13
**waiting** [1] - 43:20
**walk** [1] - 4:15
**Wallace** [1] - 9:18
**wants** [3] - 4:4, 11:23, 39:21
**warrants** [1] - 16:10
**Washington** [1] - 2:10
**water** [1] - 46:11
**ways** [2] - 34:16, 36:3
**website** [1] - 6:10
**WeChat** [1] - 5:24
**Wednesday** [3] - 42:12, 47:7, 48:9
**week** [9] - 7:6, 7:13, 19:14, 19:15, 20:10, 24:3, 31:6, 41:15, 48:8
**weeks** [10] - 7:4, 10:7, 12:20, 13:16, 27:9, 29:16, 33:18, 42:9
**Wesson** [1] - 9:1
**West** [1] - 2:17
**Whiteley** [1] - 32:21
**WHITELEY** [5] - 1:19, 1:20, 32:11, 33:8, 33:11
**whole** [2] - 34:7, 35:9

**wifi** [3] - 46:20, 46:22, 46:23
**wise** [1] - 38:18
**wish** [1] - 21:3
**witness** [5] - 14:10, 15:22, 20:13, 25:3, 43:24
**witnesses** [25] - 14:18, 14:21, 15:11, 15:23, 15:25, 16:1, 16:2, 16:12, 16:16, 16:17, 16:18, 16:20, 16:21, 18:13, 18:14, 18:16, 18:18, 18:20, 18:21, 18:24, 19:1, 20:7, 26:22, 43:20, 43:22
**wizard** [1] - 34:6
**works** [5] - 17:6, 22:20, 24:17, 26:19, 39:16
**workup** [1] - 35:10
**world** [1] - 14:20
**Worms** [5] - 7:18, 7:25, 8:14, 8:16, 8:18
**worry** [1] - 43:19
**wow** [1] - 4:10
**Wrigley** [1] - 9:1
**writing** [1] - 26:23
**wrote** [1] - 8:16

## Y

**years** [3] - 22:23, 28:16, 40:24
**York** [1] - 2:10
**young** [1] - 4:13
**yourself** [1] - 23:20
**yourselves** [1] - 41:4

## Z

**Zhejiang** [1] - 2:11
**ZHP** [1] - 14:16
**Zoom** [2] - 22:1, 47:23

*United States District Court*