

**Jeffrey D. Geoppinger**
*Partner*

DIRECT 513.698.5038
DIRECT FAX 513.698.5039
EMAIL jgeoppinger@ulmer.com

January 16, 2024

**VIA ECF**
Special Master The Hon. Thomas I. Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
Case No. 1:19-md-02875-RBK-SAK (D.N.J.)

Dear Judge Vanaskie:

Pursuant to the briefing schedule set at the January 4, 2024 Case Management Conference, and as set forth in Special Master Order No. 90 (ECF No. 2587), Defendants of the claims brought by Third-Party Payor Plaintiffs regarding Losartan and/or Irbesartan products (hereinafter "TPP Defendants" or "Defendants") respectfully move the Court to approve and enter the full Losartan/Irbesartan Third Party Payor Plaintiff Fact Sheet ("TPP PFS"), attached as Exhibit 1, or alternatively to allow Defendants core Losartan/Irbesartan fact discovery of the TPP Plaintiffs through other means under the Federal Rules of Civil Procedure.

## Introduction

The issues in dispute all boil down to Defendants' fundamental right to discovery on the causes of action against them—and when and how Defendants get the discovery to which they are entitled. Defendant sought via the PFS, the form demanded by Plaintiffs, basic relevant discovery from the TPP Class Representatives ("TPPs" or "Plaintiffs") on the elements of the many causes of action they brought against Defendants, including Wholesaler Defendants[1] ("Wholesalers") specifically. Plaintiffs agree that discovery is appropriate and insist they are not trying to stall discovery. Aug. 24, 2023 Disc. Conf. Trans. 6:24-7:3, 9:13-18. However, despite multiple meet and confer sessions, Plaintiffs have refused to provide the majority of the core facts sought. Plaintiffs have largely refused to produce any information related to their proof (or lack thereof) of the essential elements of their causes of action and Defendants' corresponding defenses.

CLEVELAND
COLUMBUS
CINCINNATI
CHICAGO
NEW YORK
WASHINGTON DC
BOCA RATON

ULMER.COM

[1] Wholesaler Defendants are AmerisourceBergen Corp. (n/k/a Cencora, Inc.), Cardinal Health, Inc., and McKesson Corporation.





Due process demands that Defendants have a right to this core discovery of relevant facts, including defenses to Plaintiffs' asserted causes of action. The TPPs' PFS revisions and objections are unacceptable and only serve to stymie Defendants' discovery into the facts (or lack thereof) underlying TPP Plaintiffs' claims in violation of the Federal Rules. Thus, as demonstrated below, Defendants' proposed TPP PFS (Ex. 1) should be entered, as it seeks core relevant facts and properly exercises Defendants' fundamental rights to seek such discovery.

Alternatively, if Plaintiffs now argue—in direct contradiction to their previous arguments—that the TPP PFS is *not* the proper vehicle for this core discovery, then Defendants ask the Court to permit Defendants to serve discovery on Plaintiffs through other means under the Federal Rules. Defendants' focus is on function, not form; Plaintiffs cannot be permitted to avoid basic discovery obligations. Defendants are entitled to this discovery, whether via the PFS or other means. If the relief Defendants seek is not granted, Defendants will be denied adequate discovery of the basic elements of the causes of action Plaintiffs assert.

**Background of the Dispute**

It is fundamental that Defendants are entitled to basic discovery about Plaintiffs' Losartan and Irbesartan causes of action, the underlying facts, and the documents and data containing those facts. Plaintiffs agree: "[W]e believe the wholesaler defendants have a right to discovery." Counsel for Plaintiffs, Aug. 24, 2023 Disc. Conf. Trans. 9:14-15 [ECF 2475]. Indeed, Plaintiffs have repeatedly assured Defendants and the Court that—while Plaintiffs fully agree that Defendants are entitled to this discovery—Plaintiffs simply want to find the "right vehicle" and "right time" for that discovery:

> ***So the plaintiffs' position has never been that the wholesaler defendants aren't entitled to discovery. We absolutely believe that discovery is necessary, and the TPP plaintiffs will provide it. The question is which is the right vehicle, and what is the right time.***

Counsel for Plaintiffs, Aug. 24, 2023 Disc. Conf. Trans. 6:24-7:3 (ECF No. 2475) (emphasis added). Despite these assurances, however, Plaintiffs have consistently played a shell game designed to avoid discovery of the facts underlying their many causes of action.

In August 2023, the Court determined that it was the "right time" to get this losartan and irbesartan discovery started and specifically noted that Plaintiffs and Defendants would each be entitled to discovery from the other:






> ***I do believe that it is appropriate to put in place a schedule now and a schedule that swings both ways for the wholesaler defendants and for the plaintiffs in this case.***

Aug. 24, 2023 Disc. Conf. Trans. 12:7-9 (ECF No. 2475) (emphasis added). The Court indicated it would enter the Wholesalers' proposed scheduling order (ECF No. 2472-1), which included discovery for both Plaintiffs and Wholesalers. *Id.* at 12:7-13:1. Plaintiffs' Counsel asked that Plaintiffs be permitted to counter some dates, which the Court granted. *Id.* at 13:19-21. But Plaintiffs did not simply propose different dates; Plaintiffs altogether removed many of the entries regarding Wholesalers' discovery to Plaintiffs in an attempt to minimize Plaintiffs' discovery obligations. *See* Sept. 7, 2023 Disc. Conf. Trans. 4:1-5:22 (ECF No. 2487).

Plaintiffs' shell game tactics continued with respect to the substance of the PFS: Plaintiffs argued the PFS was the "right vehicle" for discovery to Plaintiffs but then substantively eviscerated it. Plaintiffs successfully argued to the Court that[2] the core discovery to which Defendants are entitled should be obtained via the PFS to increase efficiency and coordination. *See* Sept. 7, 2023 Disc. Conf. Trans. 8:24-10:23, 25:4-10 (ECF No. 2487). In line with the Court's ruling and its previous ruling that the time for this discovery was now, Defendants prepared and sent Plaintiffs a draft PFS. However, Plaintiffs now dispute many of the requests in the TPP PFS, and object to producing facts that are core to their claims and allegations against Defendants (and Wholesalers, specifically),[3] including facts demonstrating alleged (1) Wholesaler wrongdoing or misrepresentations; (2) Wholesaler knowledge of impurities; (3) the lack of full value for losartan/irbesartan; and even (4) the financial data for covered insurance claims for which Plaintiffs seek damages.

[2] For the avoidance of doubt as to the role of the PFS within broader permitted discovery and/or any alleged "waiver" arguments of additional Wholesaler discovery to Plaintiffs, Plaintiffs repeatedly affirmed that Wholesalers should and will be allowed to serve additional discovery on Plaintiffs beyond the PFS. Counsel for Plaintiffs, Sept. 7, 2023 Disc. Conf. Trans. 6:25-7:1 (ECF No. 2487) ("We're not saying, wholesalers, you can't serve extra discovery."); *id.* at 8:24-25 ("We're not saying that there should be nothing else after the fact sheet, not at all."); *id.* at 10:10-11 ("And again, we're not saying they don't get to serve other supplemental RFPs. We heard you."). Special Master Vanaskie likewise agreed that Wholesalers can serve at a later date supplemental discovery beyond the PFS. Sept. 7, 2023 Disc. Conf. Trans. 6:25-7:1 (ECF No. 2487) ("Supplemental requests for production of documents certainly can be allowed, will be allowed.").

[3] The requests in the TPP PFS that remain in dispute are highlighted in Exhibit 1 for ease of reference.





Since Plaintiffs refuse to produce this core information, Defendants now ask the Court to hold Plaintiffs to their discovery obligations and require them to produce the discovery sought, whether via entry of Defendants' proposed PFS or by allowing Defendants to serve other discovery.

Below, Defendants set forth the reasons they are entitled to the discovery contemplated in the disputed requests in the TPP PFS under the Federal Rules and applicable law. Because the vast majority of the disputed requests relate specifically to Wholesalers, those requests are addressed first, and separately from, the requests applicable to all Defendants.

## I. Disputed Wholesaler-Specific Requests

### a. Wholesalers are entitled to discovery.

Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Rule 34 also provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)… to produce … items in the responding party's possession, custody, or control," including "documents or electronically stored information." Fed. R. Civ. P. 34(a)(1).

These fundamental rules are precisely why Wholesalers originally served RFPs on the TPP Plaintiffs—to obtain discovery relevant to the TPPs' claims against them and Wholesalers' defenses to the TPPs' claims. As discussed *supra*, the court at first agreed that Wholesalers were entitled to this discovery. Unsatisfied, Plaintiffs protested this result, and argued that TPP Defendants, Wholesalers included, should instead incorporate their discovery requests into the PFS.

But despite their stated willingness to follow the PFS process as the primary means of discovery and their assurance to the Court that they were not "trying to stymie" Wholesalers' in their discovery requests (Sept. 7, 2023 Disc. Conf. Trans.at 16:11-15, ECF No. 2487), Plaintiffs now refuse to include (and thus answer) nearly all the Wholesaler-related requests in the proposed TPP PFS. Of the 24 proposed requests related specifically to Wholesalers, Plaintiffs agreed to respond to *just three*. Plaintiffs' fundamental position appears to be that Wholesalers are not entitled to discovery—either in the PFS, as they specifically requested of the Court, or otherwise.

Plaintiffs' categorical refusal to answer the disputed requests denies Wholesalers their basic due process rights to obtain discovery related to the claims against them and their defenses to those claims, as well as the damages sought—straightforward and essential





discovery that the Federal Rules plainly allow. It is fundamental, and the case law is consistent, that all Defendants are entitled to this discovery about:

**(1) Plaintiffs' claims:** *McBee v. Sec. Credit Sys.*, No. CIV.A.09-2764(WJM), 2010 WL 1380017, at *2 (D.N.J. Jan. 27, 2010), *report and recommendation adopted*, No. CIV.A.2:09-02764, 2010 WL 1407243 (D.N.J. Mar. 29, 2010) ("Defendant has a right to defend itself against Plaintiff's allegations by obtaining discovery relevant to Plaintiff's claim. *See* Fed.R.Civ.P. 26(b). The discovery requests by Defendant are crucial to the efficient resolution of this case."); *Cornaglia v. Ricciardi*, 63 F.R.D. 416, 419 (E.D. Pa. 1974) ("It is beyond question that defendant is entitled to discovery of the facts upon which plaintiff's claim … is founded."); *Vanguard Sav. & Loan Ass'n v. Banks*, No. CIV. A. 93-CV-4627, 1995 WL 108223, at *4 (E.D. Pa. Feb. 15, 1995) ("As a defendant in this matter, Mrs. Banks is entitled to know the factual content of plaintiff's claims with a reasonable degree of precision"); *MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. CV1921607FLWRLS, 2022 WL 11804007, at *2 (D.N.J. Oct. 17, 2022) (granting defendant's motion to compel MSP to produce documents regarding its claims, where defendant argued "because Plaintiffs are pursuing consumer fraud claims on behalf of the Assignors under varying state laws, Defendants are entitled to discovery from each Assignor to challenge the allegations that the Assignor meets the elements of those consumer fraud claims.");

**(2) Wholesalers' defenses:** *Zacharewicz v. Kokes Fairways, LLC*, No. CIV. 15-1551, 2015 WL 4545638, at *2 (D.N.J. July 28, 2015) ("Defendants will be entitled to seek discovery related to the affirmative defenses."); *Perrone v. CBS, Inc.*, No. CIV.A. 96-110, 1997 WL 863266, at *4 (D.N.J. Mar. 20, 1997) ("Because the requested discovery is directly relevant to establishing a 'truth defense' to the plaintiffs' claim, the defendants are clearly entitled to the discovery pursuant to Rule 26(b)."); and

**(3) Damages:** *JJ BADA Operating Corp. v. Dokdoya, Inc.*, No. CV199194ESCLW, 2021 WL 4988488, at *4 (D.N.J. Oct. 27, 2021) ("For example, if Plaintiff intends to seek damages based on 'the cost of developing the trade secret,' it must disclose all relevant information on such cost. If Plaintiff plans to seek a 10% reasonable royalty, it is obligated to disclose any factual basis in its possession, control, and custody that supports such a claim. Moreover, regardless of Plaintiff's damages theory, Defendants are entitled to discovery on matters that are relevant to their defenses[.]").





Denial of critical discovery is grounds for reversal. *See, e.g.*, *Shaklee Corp. v. Gunnell*, 748 F.2d 548, 550 (10th Cir. 1984) ("We must hold that there was a denial of discovery sought by the defendants that precluded a fair trial and the judgment must be set aside."). The Court should therefore affirm that Wholesalers are entitled to discovery about the TPPs' claims against them, their defenses, and the damages sought by TPPs, and order Plaintiffs to respond to the TPP PFS containing the disputed Wholesaler-specific requests.

**b. Wholesalers are entitled to discovery about the TPPs' unjust enrichment claims.**

Because the elements of UE claims vary widely from state to state, various facts may be relevant to Plaintiffs' claims—all of which should be discoverable by Defendants. Wholesalers' targeted RFPs properly exercise their fundamental rights to seek this relevant information on the elements of the TPP Plaintiffs' UE claim against them. TPP Plaintiffs should not be permitted to avoid their most basic discovery obligation to respond to them.

This Court has held that to prevail on a UE claim, a plaintiff must show "(1) a benefit conferred on the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance/retention by the defendant of the benefit under circumstances that make it inequitable for the defendant to keep the benefit without payment of its value." MTD 6 Op., pg. 26 (ECF 1019). While those are three core elements of a UE cause of action, depending on the state laws invoked, discovery of other underlying facts will be appropriate. These include, for example, topics such as:

> **(1) Remuneration**. UE law in New Jersey "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on the defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" MTD 6 Op. Pg. 39 (ECF 1019) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 519 (N.J. 1994)); *accord Gant v. Ragone*, No. 1-20-cv-01727-RBK-KMW, 2020 U.S. Dist. LEXIS 216740, at *9 (D.N.J. 2020) (Kugler, J.).
>
> **(2) Wrongdoing.** Certain other states—such as Indiana, Texas, and Montana—require the plaintiff to prove the defendant engaged in wrongdoing. *Hughes v. Chattem, Inc.,* 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011); *Bimbo Bakeries USA, Inc. v. Pinckney Molded Plastics, Inc.*, No. 4:06-CV-180-A, 2007 WL 836874, at *6 (N.D. Tex. Mar. 20, 2007); *Albinger v. Harris*, 48 P.3d 711, 716 (Mont. 2002).
>
> **(3) Direct Benefit.** Other states—such as Delaware, Florida, Ohio, and New Jersey—permit UE recovery only if the plaintiff conferred a "direct benefit" on the defendant or had "a sufficiently direct relationship with the defendant to support the





claim." See *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59–60 (Del. Ch. 2012); S*port & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1255 (N.D. Fla. 2020); *Johnson v. Microsoft Corp*., 834 N.E.2d 791, 799 (Ohio 2005); *Snyder v. Farnam Cos*., 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (citing *Nelson v. Xacta 3000 Inc.*, Civ. No. 08-5426 (MLC), 2009 U.S. Dist. LEXIS 109580, at *7 (D.N.J. Nov. 24, 2009)).

**(4) Unjustness.** The UE element of a "benefit unjust for the defendant to retain," in particular, requires discovery of the circumstances of the underlying events and the equities between the parties. *See* ECF No. 1019, Mot. to Dismiss Op. 6 at 26. As an equitable remedy, UE requires analyzing the extent of unjustness of any "enrichment," which will vary depending on the specific circumstances. Because a plaintiff asserting a UE claim is entitled only to the portion of profits that would be inequitable to retain in light of all the circumstances, the conduct of the defendant from whom the plaintiff seeks to recover cannot be the only consideration. *See, e.g.*, *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 232 (D.D.C. 2019) (UE requires "a fact-intensive inquiry that focuses on the totality of the circumstances, *not just defendants' conduct*.") (emphasis added).

**(5) Value.** The value of the LCDs and ICDs to the TPP Plaintiffs is relevant to an evaluation of the appropriate measure of damages on a UE claim. *Jones v. Monsanto Co.*, No. 19-0102-CV-W-BP, 2021 WL 2426126, at *6 (W.D. Mo. May 13, 2021) ("[t]he measure of damages" for UE "*requires consideration of the fact that the consumers ... received some value from their purchase*.") (emphasis added); *see also Off. Stanford Invs. Comm. v. Am. Lebanese Syrian Associated Charities, Inc.*, No. 3:11-CV-0303-N, 2015 WL 13739835, at *13 (N.D. Tex. July 22, 2015) (denying plaintiff's motion for summary judgment because "a fact question remains as to whether Stanford received some value in exchange for the transfers, and thus whether Le Bonheur is entitled to a corresponding reduction in [UE] damages.").

Moreover, the value of the LCDs and ICDs to the TPPs is relevant to the essential elements of the TPPs' UE claim. "To determine whether a defendant in an unjust enrichment claim enjoyed an appreciation of the benefits which were conferred ... *the issue is whether the value of the benefit conferred exceeds the value of the consideration he paid for the benefits*." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. CIV. A. 03-4558 (GEB), 2010 WL 2813788, at *44 (D.N.J. July 9, 2010), *amended*, No. CIV.A. 03-4558 (GEB), 2011 WL 601279 (D.N.J. Feb. 16, 2011) (quotations omitted) (emphasis added).





Furthermore, the value of the LCDs and ICDs provided to TPP Plaintiffs must include profits TPP Plaintiffs realized from the coverage of losartan and irbesartan prescriptions for their insureds. In analogous cases in which a plaintiff has sought disgorgement of profits from a defendant, multiple other courts have found that *if the plaintiff also profited or received value from the defendant's alleged misconduct, such profits, or value are discoverable.* For example, in *Dryer v. Nat'l Football League*, NFL players sued the NFL for unjustly profiting off their publicity rights. 2011 WL 13136546, at *1. The NFL argued that "to the extent Plaintiffs have profited commercially, the NFL is entitled to discovery regarding the players' publicity rights." *Id*. The court agreed and granted the NFL's requested discovery: "[b]ased on the allegations in the Amended Complaint regarding the use of Plaintiffs' identities and claims of unjust enrichment, and Defendant's asserted defenses … the Court finds that *to the extent that Plaintiffs have used their identity rights commercially ... such documents are relevant" and "[t]o the extent that documents reflect the value of those identity rights, such documents are likewise relevant*." *Id*. at *2.

Similarly, in *Bauer v. Pourciau*, the plaintiff "contend[ed] that the Defendants are unjustly enriched in the amount of their profits" from appropriation of the plaintiff's intellectual property rights. 2020 WL 5542863, at *2. The court rejected the plaintiff's argument that "he need not produce documents related to the value of [his] intellectual property" because the value "is not related solely to the damages of an unjust enrichment claim, but rather *is an essential element of the claim*." *Id*. (emphasis added).

**(6) Wholesalers' Defenses.** Evidence of TPP profits earned on covering the LCDs and ICDs at issue is relevant to Wholesalers' unclean hands defense. Generally, the unclean hands defense applies "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and *affects the balance of equities*." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n. 12 (3d Cir. 1999). Wholesalers are no different from the TPPs, as both groups paid for LCDs and ICDs without knowing that they were contaminated—thus if Wholesalers are liable for bad conduct then so, too, are the TPPs—or neither are.

With this law and the elements of UE in mind, Defendants have included the following RFPs in the TPP PFS, each of which tracks an element of UE that the TPP Plaintiffs *must* prove in some relevant state:





| | |
|---|---|
| RFP 19: | wrongdoing/improper conduct by Wholesaler; |
| RFP 25 | benefit conferred on Wholesaler by TPP Plaintiff; |
| RFP 26: | portion of benefit unjust for Wholesaler to retain; |
| RFP 27: | expectation of remuneration from Wholesaler; |
| RFP 28 | benefit/value provided to TPP Plaintiff by losartan/irbesartan products; and |
| RFP 31: | revenue, expenses and/or costs, and net profits of TPP Plaintiff. |

It is axiomatic that the TPP Plaintiffs bear the burden of proof on their UE cause of action, obligating them under the Federal Rules of Civil Procedure to produce in discovery both the evidence on which they will rely at trial *and* all other evidence relevant to the cause of action requested in the above RFPs. *See* Fed. R. Civ. P. 26(b)(1); *Munoz v. PHH Corp.*, No. 1:08-cv-0759-DAD-BAM, 2016 U.S. Dist. LEXIS 17254, at *14 (E.D. Cal. 2016); *see also Montana v. Cnty. Of Cape May Bd. Of Freeholders*, No. CV 09-755 (NLH/JS), 2013 WL 11233748, at *5 (D.N.J. Sept. 20, 2013) ("Admissibility at the trial is not the limit of discovery, and discovery may properly be had of inadmissible matter.").

Wholesalers anticipate Plaintiffs will argue that the disputed UE RFPs in the TPP PFS regarding LCDs and ICDs should be denied because SMO 82 previously denied similar RFPs about VCDs, including RFPs requesting documents about the value of VCDs to TPP Plaintiffs and TPP Plaintiffs profits on coverage of VCDs. SMO 82 held that the discovery on the value of VCDs is irrelevant and unnecessary, premised mainly on a statement by Judge Kugler in a motion to dismiss ruling that Plaintiffs sufficiently pled that VCDs are economically worthless. ECF No. 2469 at 13 (citing Jan. 22, 2021 Opinion, ECF No. 775 at 20). That said, SMO 82 and its reasoning has no application to the TPP PFS regarding LCDs and ICDs for two reasons. First, the Court has *not* stated that the LCDs and ICDs at issue are worthless—or VCDs, for that matter. Second, in the Court's subsequent ruling on class certification of claims about VCDs and related motions to exclude expert testimony, the Court explicitly found that, contrary to SMO 82, whether the VCDs are economically worthless is a question reserved for the factfinder. ECF 2261 at 22-23. Fed. R. Civ. P. 26 permits Wholesalers discovery on issues to be presented to the factfinder, which in this case includes discovery of whether TPP Plaintiffs received value in relation to the LCDs and ICDs at issue, or if they directly profited from their coverage of those LCDs and ICDs.

Finally, if, as Wholesalers request, Court enters the disputed UE RFPS, Wholesalers anticipate TPP Plaintiffs will, as they have previously, attempt to limit their production of documents regarding LCDs and ICDs to only those documents they intend to rely on at trial. That is improper. A party's strategic choices about what it will or will not rely on at trial to prove its claims does not determine the scope of discovery—Fed. R. Civ. 26 does. TPP Plaintiffs cannot use such a tactic to thwart Defendants from obtaining relevant documents





and information, if they in fact exist. Indeed, no such standard has been applied to the discovery of TPP Defendants, and it does not apply to TPP Plaintiffs either.

**c. Wholesalers are entitled to discovery about the remaining claims against them, and to support their defenses.**

Along with unjust enrichment, TPP Plaintiffs also bring claims against Wholesalers for breach of implied warranty and violation of various state consumer protection statutes.[4] In response to these claims, Wholesalers intend to raise the innocent seller statutory protections available in a majority of states as a defense. *See* Dkt. 2011-10. Accordingly, Wholesalers included targeted requests in the TPP PFS that seek basic information about these claims and the application of the innocent seller defense.

The TPP PFS contains just one disputed Wholesaler-specific request related to implied warranty, requesting TPPs to produce documents "that refer and/or relate to any action by any Wholesaler Defendant that You allege breached an implied warranty with respect to the Claims and/or the Losartan and/or Irbesartan products made the subject of the Claims." Ex. 1, Doc. Demands No. 22. Plaintiffs have not provided a specific objection to this request in writing, nor have they explained their objection in the several meet and confer sessions, other than striking the request through in redline. *See* Ex. 2 (Plaintiffs' initial mark-up of draft TPP PFS). This straightforward and uncontroversial request seeks the facts underlying Plaintiffs' implied warranty claim against Wholesalers. Defendants are entitled to this essential and plainly relevant information. *McBee*, 2010 WL 1380017, at *2; *Cornaglia*, 63 F.R.D. at 419.

Similarly, Request Nos. 20, 21, 24, 37, and 38 seek information relevant to the elements of TPPs' consumer protection statute claims against Wholesalers in various states, including information about the TPPs' reliance on any alleged "misrepresentation or omission of fact by any Wholesaler Defendant" and any "deception" on the part of any

---

[4] Plaintiffs brought various other claims against Wholesalers in the losartan and irbesartan Master Complaints, including fraud, negligence, and breach of express warranty, that were dismissed with respect to valsartan. The parties are negotiating a stipulation to dismiss those claims from the losartan and irbesartan Master Complaints, and agree that discovery requests in the TPP PFS related exclusively to those claims may be removed, pending entry of the stipulation. *See* Ex. 1, Draft TPP PFS, Document Demand Nos. 39 (relevant to negligence claim); 35-36 (relevant to express warranty claim). Should the parties not reach agreement on a stipulation, or the Court not enter the stipulation for any reason, Wholesalers reserve their rights to request that those specific requests also be included in the TPP PFS.






Wholesaler Defendant. *See, e.g.*, *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 91 (D.N.J. 2011) (New Jersey Consumer Fraud Act requires "misrepresentation" by the defendant in the sale or advertisement of product); *In re Fyre Festival Litig.*, No. 17-CV-3296 (PKC), 2020 WL 7043497, at *7 (S.D.N.Y. Dec. 1, 2020) ("California's … Unfair Competition Law, and Illinois's Consumer Fraud Act all require plaintiff to demonstrate reliance" and that "Colorado's Consumer Protection Act require[s] a plaintiff to demonstrate that the suffered injury was caused by the deceptive conduct."). Again, Plaintiffs do not articulate specific objections to these requests, but simply refuse to include them. Wholesalers are entitled to a response to these basic questions fleshing out the facts underpinning claims against them.

Next, Request Nos. 41-46 track the elements of the innocent seller statutory defenses in various states, including requesting documents related to any alleged involvement by Wholesalers in the manufacture or design of LCDs and ICDs, and documents that "demonstrate that Wholesaler Defendants should have been aware of the alleged LCD/ICD contamination before the date of the first LCD/ICD recall." *See* Dkt. 2011-10 (chart of elements of innocent seller defense in 27 states); *see also Thompson v. Nestle Waters N. Am., Inc.*, No. 2:21-CV-11054, 2021 WL 5114567, at *4 (E.D. Mich. Nov. 3, 2021) ("In essence, the statute stands for the proposition that a non-manufacturing seller will not be strictly liable for injuries caused by a defective product. Instead, *a plaintiff must establish* that the seller breached some independent duty to the injured party") (citations omitted). In many states, the burden is on the *plaintiff* to disprove a seller's entitlement to the innocent seller defense, making Wholesalers' ability to obtain the information in Plaintiffs' possession particularly critical to this defense. *See* Dkt. 2011-10. Despite the clear relevance of the requests, Plaintiffs do not articulate specific objections to these requests but simply refuse to include them without discussion. Wholesalers are entitled to this discovery.

Finally, Plaintiffs refuse to answer all three requests under the heading "Wholesaler Conduct and Damages." These requests seek fundamental discovery about any "wrongdoing, improper practice or action, and/or misrepresentation by any Wholesaler Defendant," the actions or inactions the TPP Plaintiff took as a result of any alleged Wholesaler wrongdoing, and the type and amount of damages the TPP Plaintiff seeks against Wholesalers. This basic discovery into the facts underlying the TPPs' claims, and the damages they seek, is unquestionably relevant. *McBee*, 2010 WL 1380017, at *2; *Cornaglia*, 63 F.R.D. at 419; *JJ BADA Operating Corp.*, 2021 WL 4988488, at *4. Plaintiffs have stated that they object to these requests as premature "contention interrogatories." Even if the Court agrees, Wholesalers request that the Court order noting when and in what form Wholesalers will be permitted to renew these requests in the future.






## II. Disputed Requests Applicable to All TPP Defendants

There also are several disputed requests applicable to all TPP Defendants. For each of these reasons, TPP Defendants are entitled to this discovery from the TPP Plaintiffs.

### a. RFP No. 13 Regarding TPP Plaintiffs' Third-Party Beneficiary Status

The parties have agreed that TPP Plaintiffs will produce any contracts between them and any Manufacturer Defendant, Wholesaler Defendant, and/or Pharmacy Benefit Manager. But the TPP Plaintiffs refuse to answer RFP No. 13, which seeks documents showing whether any TPP Plaintiff was a third-party beneficiary to a contract between any Manufacturer Defendant, Wholesaler Defendant, and/or Pharmacy Benefit Manager. Dealings between parties are a fundamental subject of discovery regardless of the cause of action. *See, e.g.*, *Intarome Fragrance & Flavor, Corp. v. Zarkades*, No. CIV A 07-873 DRD MAS, 2008 WL 4449629, at *1-2 (D.N.J. Oct. 1, 2008) (discovery related to any communications, business transactions, or agreements between the parties relevant to various claims, including conversion, misappropriation, unfair competition, tortious interference, and unjust enrichment); *Ho v. Marathon Pat. Grp., Inc.*, No. 5:21-cv-339-PSG (SPx), 2021 U.S. Dist. LEXIS 118462, at *18 (C.D. Cal. June 23, 2021) (parties' prior business communications were sufficiently relevant to plaintiff's implied contract claims). Documents responsive to RFP 13 are just as relevant as the specific contracts the TPP Plaintiffs have already agreed to produce, and the TPP Plaintiffs cannot provide any reasonable argument about why such documents, if they exist, are not relevant and discoverable as dealings between the parties. This is particularly true because the TPP Plaintiffs may attempt to claim third-party beneficiary status with respect to any contract involving TPP Defendants.

### b. RFP No. 23 Regarding Claim for Breach of Implied Warranties of Merchantability and Fitness

Plaintiffs' losartan and irbesartan Master Complaints both allege breach of implied warranty of merchantability and fitness claims on behalf of TPP Plaintiffs against all Defendants. Defendants' RFP No. 23 asks the TPP Plaintiffs to produce documents that demonstrate whether the losartan and irbesartan products at issue were or were not fit for the purpose for which they were used. For example, this would include documents that demonstrate that the products at issue did or did not lower an insured's blood pressure. Courts throughout the country have long held that an implied warranty of both merchantability and fitness "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Henningsen v. Bloomfiled Motors, Inc.*, 161 A.2d 69, 76 (N.J. 1960), citing *Giant Mfg. Co. v. Yates-American Mach. Co.*, 111 F.2d 360





(8th Cir. 1940); *Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co.*, 23 F.2d 416, 419 (2d Cir. 1928); *Simmons v. Rhodes & Jamieson, Ltd.*, 46 Cal.2d 190, 293 P.2d 26 (Sup. Ct. 1956); *Mead v. Coca Cola Bottling Co.*, 329 Mass. 440, 108 N.E.2d 757 (Sup. Jud.Ct. 1952); *Ryan v. Progressive Grocery Stores,* 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339 (Ct. App. 1931). This RFP seeks the most fundamental of discovery on the TPP Plaintiffs' breach of implied warranty of merchantability and fitness claim.

**c. RFP Nos. 29, 33, 40 Regarding TPP Plaintiffs' Worthlessness Theory**

The TPP Plaintiffs allege in their losartan and irbesartan Master Complaints, and elsewhere throughout this litigation, that the generic LCD and ICDs at issue "were in fact not FDA-approved generic version of these drugs, and were instead of lesser quality and were adulterated and/or misbranded (and thereby rendered worthless) . . . ." (Dkt. No. 751, p. 2, ¶ 5; Dkt. No. 752, p. 2, ¶ 4.). Defendants' RFPs Nos. 29, 33, and 40 seek discovery on this theory to defend against these allegations, including by collecting evidence showing that the LCDs and ICDs at issue provided value to TPP Plaintiffs and their insureds and were not "worthless" as alleged. And, as noted *supra*, the Court has recognized that the issue of "worthlessness" is an issue for the factfinder. Thus, Defendants are entitled to serve RFPs on the TPP Plaintiffs to discover documents in their possession that either support or contradict their theory that the products at issue were "worthless."

**d. RFP Nos. 30 and 32 Regarding TPP Plaintiffs' Alleged Damages**

Discovery about the TPP Plaintiffs' purported damages is fundamental. Defendants' RFP No. 30 seeks information about premiums and deductibles paid by the TPP Plaintiffs' insureds for LCD and ICD prescriptions that are the subject of the Claims on which the TPP Plaintiffs are trying to recover. This information is relevant and discoverable because the TPP Plaintiffs cannot recover for payments they did not make. RFP No. 32 asks for production of documents about payments made by the TPP Plaintiffs for alternative and/or replacement medications for the LCDs and IDCs at issue. Those payments, to the extent they were made for insureds and are the subject of the Claims at issue, are relevant to whether the TPP Plaintiffs incurred damages because of the recall of LCDs and IDCs at issue. Defendants are entitled to discovery of this information to understand the potential damages associated with the TPP Plaintiffs' claims. Indeed, if the TPP Plaintiffs intend to attempt to recover for such payments, they will need to present evidence at trial about them.

**<u>Conclusion</u>**

Despite TPP Defendants' fundamental due process right to basic discovery about the claims against them, and their defenses, Plaintiffs continue to oppose full and fair discovery, especially as to their claims against Wholesalers. Without responses to the disputed requests,






Defendants will be denied important discovery of the TPPs' causes of action, and Defendants' ability to prepare a comprehensive defense of the case will be materially prejudiced. Defendants therefore request that this Court approve and enter the proposed Losartan/Irbesartan TPP PFS, or alternatively to allow Defendants core Losartan/Irbesartan fact discovery of Plaintiffs through other means under the Federal Rules of Civil Procedure. If the Court finds that the disputed requests are premature, Defendants request that the Court order note when and in what form Defendants will have an opportunity in the future to serve supplemental discovery containing these disputed requests.

Respectfully submitted,

By: /s/ *Jeffrey D. Geoppinger*
Jeffrey D. Geoppinger
Ulmer & Berne LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
jgeoppinger@ulmer.com
***Attorney for Defendant***
***AmerisourceBergen Corporation***
***(n/k/a Cencora, Inc.)***
***Liaison Counsel for***
***Wholesaler Defendants***

By: /s/ *Andrew D. Kaplan*
Andrew D. Kaplan
Daniel T. Campbell
Marie S. Dennis
Crowell & Moring
1001 Pennsylvania Avenue NW
Washington, D.C. 20004
Phone: (202) 624-1000
Fax: (202) 628-5116
akaplan@crowell.com
dcampbell@crowell.com
mdennis@crowell.com
***Attorneys for Defendant***
***Cardinal Health Inc.***





By: /s/ *D'Lesli M. Davis*

D'Lesli M. Davis
Ellie K. Norris
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Phone: (214) 855-8221
Fax: (214) 855-8200
dlesli.davis@nortonrosefulbright.com
ellie.norris@nortonrosefulbright.com
***Attorneys for Defendant***
***McKesson Corporation***

By: /s/ *Neal Seth*

Neal Seth (D.C. Bar No. 477011)
Corey Weinstein (D.C. Bar No. 230609)
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
Phone: (202) 719-7000
Fax: (202) 719-7049
nseth@wiley.law
cweinstein@wiley.law
***Attorney for Defendants***
***Macleods Pharma USA, Inc.,***
***and Macleods Pharmaceuticals Ltd.***





By: /s/ *Jessica Davidson*

Jessica Davidson (NY Bar No. 6034748)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Manhattan West
New York, New York 10001
Phone: (212) 735-3222
Fax: (917) 777-3222
jessica.davidson@skadden.com

Nina R. Rose (D.C. Bar No. 975927)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

***Attorneys for Defendants***
***Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC***

*/s/ John P. Lavelle, Jr.*

John P. Lavelle, Jr.
Morgan, Lewis & Bockius LLP
(A Pennsylvania Limited Liability Partnership)
502 Carnegie Center
Princeton, NJ 08540
Tel: (609) 919-6600
john.lavelle@morganlewis.com

***Counsel for Aurobindo Pharma, Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma, LLC***