# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

January 23, 2024

**VIA ECF**
The Hon. Thomas I. Vanaskie, Special Master
Sevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

Re: *In Re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
Case No. 1:19-md-02875-RBK-SAK (D.N.J.)

Dear Special Master Vanaskie:

Consistent with the briefing schedule set at the January 4, 2024 Case Management Conference, and as set forth in Special Master Order No. 90 (ECF No. 2597), the TPP Plaintiffs respectfully request that you deny the Defendants' request to approve their proposed Third Party Payor Plaintiff Fact Sheet for Losartan/Irbesartan (the "TPP PFS") (ECF No. 2590), wherein Defendants seek to include numerous burdensome requests for information that go well beyond "core fact discovery," and what was ultimately permitted by this Court in relation to Plaintiffs' Valsartan claims.

As set forth herein, through their numerous conferences and negotiation efforts with the Defendants, Plaintiffs have agreed to a proposed Losartan/Irbesartan TPP PFS which not only covers everything the Defendants sought and was approved by the Court related to the claims and defenses at issue as they relate to Valsartan, but the TPP Plaintiffs have already agreed, after negotiating in good faith, to include additional requests for information in the Losartan/Irbesartan TPP PFS that go well beyond those permitted by the Court in this case related to Valsartan. As the Court can appreciate, plaintiff fact sheets are intended to be standardized forms approved by the court allowing the parties to obtain basic information about the plaintiffs' general claims. The intended purpose of the plaintiff fact sheet is to get the relevant factual information recorded, not to lock in the legal arguments of counsel.

The TPP Plaintiffs proposed Losartan/Irbesartan TPP PFS is attached hereto as Exhibit A. In short, as is easily recognizable when reviewing the TPP Plaintiffs proposed PFS, the TPP Plaintiffs are not refusing to produce to the Defendants relevant facts and information related to their burden of proof or the Defendants' corresponding defenses, Plaintiffs seek to limit to the core discovery to what is reasonable, necessary, and what is consistent with this Court's prior Orders and guidance related to these very discovery issues.

## I. The TPP Plaintiffs Do Not Oppose Relevant Fact Discovery, Which Is Also Proportionate to the Needs of the Case.

Unquestionably, the TPP Plaintiffs do not dispute that the Defendants are entitled to fact discovery that is both relevant and proportionate to the needs of the case. However, as the TPP Plaintiffs have argued and the Court has agreed that discovery related to the Plaintiffs' Losartan/Irbesartan claims should progress in the same fashion as the fact discovery conducted by the parties related to Valsartan. As intended, the Losartan/Irbesartan TPP Plaintiffs PFS as proposed by the TPP Plaintiffs encompasses the core discovery of facts related to Plaintiffs' claims.

As set forth in the TPP Plaintiffs proposed Losartan/Irbesartan PFS, which is attached hereto as Exhibit A, the TPP Plaintiffs agree Defendants are entitled to facts and information related to the core case information. Accordingly, the TPP Plaintiffs agree to produce information regarding: the identification of the Defendants against whom TPPs bring claims (I.A); the identification of the Pharmacy Benefit Managers ("PBMs") with whom TPPs had contracts; (II.B.1); contracts with any Manufacturer Defendant and/or Wholesaler Defendants to which payments were made (II.B.1-2); whether the TPPs offered any Plans programs involving a Medicare Advantage Plan or Part D benefits and for which the TPP made payments (III.A.1-2); persons who were members of Pharmacy and Therapeutics ("P&T") Committees or similar committees that made decisions about coverage or formularies; (III.B.4). Likewise, TPP Plaintiffs have already agreed to produce: data showing all transactions for which the TPP Plaintiffs made payments on behalf of Recipients, including approximately two dozen bullet points of data (V.2); summaries and/or schedules of benefits; (V.3); payments for each year during benefits period on for each Plan policy or prescription benefits; formularies and preferred drug lists; contracts between the TPP Plaintiffs and any manufacturer (V.3-4); contracts between TPP Plaintiffs and any Manufacturer Defendant, Wholesaler Defendant and/or PBM, (V.12); Minutes or documents regarding decisions made by P&T Committee regarding formulary placements; (V.18); and communications between TPPs and any Defendant regarding the clams and/or litigation (V.34).

In sum, as evidenced in Exhibit A, the TPP Plaintiffs have agreed to provide substantial core discovery to Defendants through their proposed Losartan/Irbesartan TPP PFS.

## II. The TPP Plaintiffs Have Agreed to Provide All Core Discovery to Defendants Through their Proposed Losartan/Irbesartan TPP PFS.

Defendants devote five pages to arguing that they are entitled to discovery under Rule 26 and accusing Plaintiffs of engaging in a "shell game" to avoid discovery on the "facts underlying their many causes." Def's Letter Brief at 1-5. To make this sweeping argument, Defendants ignore

2

the excessive nature of their additional discovery requests and the ample core discovery that the TPP Plaintiffs have already agreed to produce through the core discovery Losartan/Irbesartan TPP PFS.

To put all of this in context, the original PFSs approved by the Court related to Valsartan contained the equivalent of 16 relevant document requests and 26 requests for information, which was largely sufficient for the manufacturing defendants to prepare for the upcoming TPP trial. In contrast, here, as set for their Exhibit B, Defendants propose that the TPP PFS for Losartan/Irbesartan should contain *46* document requests and *32* requests for information. Attached as Exhibit B the Court can find the Defendants' proposed fact sheet with the additional discovery that the TPP Plaintiffs already agreed to produce highlighted in yellow and the disputed discovery requests for which the parties have not reached an agreement highlighted in green.[1] And one of Defendants' proposed document requests seeks an *additional 29* specific datapoints of information. *See* Exhibit B at pp. 13-14 containing the parties' disputed request SectionV.2.

To be clear, the TPP Plaintiffs are more than willing to provide relevant core discovery to the Defendants, but the discovery has to be reasonable and proportionate. To that end, the TPP Plaintiffs have already agreed to produce the following additional discovery, beyond what was permitted by the Court in the Valsartan PFS, which is specific to the Defendants' claims and defenses:

> Information Request II.B.1
> During the Damages Period, did you have a contract(s) with any Manufacturer Defendants and/or Wholesaler Defendants related to the Losartan and/or Irbesartan products pursuant to which you made payments on behalf of Recipients for At-Issue Losartan and/or Irbesartan? Yes o No o
>
> If yes, identify the Manufacturer Defendants and/or Wholesaler Defendant(s) with whom you shad a contract(s), identify the relevant time period associated with each Contract(s), and describe the purpose of the Contract(s).
>
> Document Demand #1
> Detailed claims data showing all transactions for which you made payments on behalf of Recipients for at issue Losartan and/or Irbesartan, including but not limited to the following information, to the extent it exists:
> - Wholesaler Defendant(s) that distributed the ICD/LCD made the subject of the Claim
> - The amount billed to You by the Wholesaler Defendant(s) with regard to the ICD/LCD made the subject of the Claim; and
> - The amount paid by You to the Wholesaler Defendant(s) with regard to the ICD/LCD made the subject of the Claim;
> - The adjusted amount paid by You to the Wholesaler Defendant(s) with

---

[1] The additional items that the TPP Plaintiffs agreed to produce or provide through their Losartan/Irbesartan PFS are highlighted in yellow. The additional requests that the Defendants are seeking, but the TPP Plaintiffs are disputing are highlighted in green.

regard to the subject ICD/LCD made the subject of the Claim, including discounts, rebates, prescribing fees, PBM fees or other costs, allowances, or reimbursements; and

Document Demand #12
All Contracts between you and any Manufacturer Defendant, Wholesaler Defendant, and/or Pharmacy Benefit Manager identified in response to the preceding questions in section II.B.1 and II.B.2.

In addition to those specific requests, the TPP Plaintiffs agreed to produce the following which also covers claims against the Defendants:

Document Demand #15
All Documents constituting any communications or correspondence between you and any representative of any of the Defendants relating to Losartan and/or Irbesartan products.

Taken together, if the Losartan/Irbesartan TPP PFS proposed by the TPP Plaintiffs is accepted by the Court, Defendants will receive, at minimum, a copy of every contract between the Wholesaler Defendants and the TPP Plaintiffs that relate to this entire litigation, all communications between the Wholesaler Defendants and the TPP Plaintiffs, the identity of the specific claims they were involved in, and detailed information as to the amount billed and paid to the Wholesaler Defendants. That is more than sufficient fact discovery at this stage of the litigation.

Once the Defendants have received that foregoing core discovery through the proposed Losartan/Irbesartan TPP PFS, Defendants can conduct their own legal analysis and apply those facts to their claims to defend their case. As will be shown in the following section, the vast majority of the additional discovery requests that the Defendants seek to add to the Losartan/Irbesartan TPP PFS (Exhibit B highlighted in green) are nothing more than amorphous gotcha contention requests for production. Allowing those types of requests would improperly shift the burden of legal analysis from the Defendants to the TPP Plaintiffs and seek to improperly invade the attorney-client and work-product privileges.

### III. Much of the Disputed Discovery the Wholesalers Defendants Seek Through the TPP PFS Amounts to Impermissible Contention Requests.

The Defendants proposed Losartan/Irbesartan TPP PFS contains multiple contention requests for production of documents which are not permissible under the Federal Rules of Civil Procedure and are inconsistent with this Court's prior Orders.[2] To the extent the Losartan/Irbesartan TPP PFS contains contention requests for information, at most these types of requests would only be permissible later in time, after the Defendants have received core discovery via the TPP PFS. At that time, the Defendants will have the opportunity to determine what additional requests, if any, they might wish to serve on the TPP Plaintiffs, subject to review by TPP Plaintiffs, and the Court.

---

[2] *See* Exhibit B, TPP PFS (V. Document Demands) Request Nos: 13, 19-46

Contention based requests for production of documents are not just premature, they exceed what is allowable under Rule 34. *Bonilla v. Trebol Motors Corp.*, 1997 WL 178844, at *65 (D.P.R. 1997), *judgment rev'd in part, vacated in part sub nom. Bonilla v. Volvo Car Corp.*, 150 F.3d 88 (1st Cir. 1998) ("Defendants have decided to invent a new form of discovery—contention requests to produce documents."); *Martinez v. First Class Interiors of Naples*, LLC, 2020 WL 7027504, at *6 n. 3 (M.D. Tenn. 2020) ("[C]ontention requests for production of documents are a form of discovery that does not exist under the Federal Rules.") (citation and quotation omitted).

The requests at issue plainly call for TPP Plaintiffs to state every contention to support every claim now.[3] Because Rule 34 does not permit this sort of discovery, the TPP Plaintiffs object to the inclusion of these types of requests in the proposed TPP PFS and the Court should find them to be improper.

Regarding the TPP Plaintiffs' objections to items Nos. 1-3 (E. Wholesaler Conduct and Damages at 11 in Exhibit B) of the TPP PFS, it is well settled that contention interrogatories are not appropriate at every phase of litigation. Rule 33(a)(2) provides that, although "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact," the court may "order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33.

Although the word "contend" is absent from these three requests, Defendants effectively demand that the TPP Plaintiffs provide every basis for their contentions and claims at this early

---

[3] For example, "Documents sufficient to show you were a third-party beneficiary to any Contract and/or Agreement with each Manufacturer Defendants, Wholesaler Defendant, and/or Pharmacy Beneit Manager." (Request No. 13). "All Documents *You contend* demonstrate that Wholesaler Defendants should have been aware of the alleged ICD/LCD contamination before the date of the first ICD/LCD recall." (Request No. 44) (emphasis added). "Documents that refer and/or relate to any Wholesaler Defendant's wrongdoing and/or unjust or improper conduct…." (Request No. 19). "All documents that refer and/or relate to any unconscionable commercial practice, deception, fraud, false pretense, false promise, an/oor misrepresentation and/or omissioon or concealment of fact by any Wholesaler Defendant …." (Request No. 20); "documents that refer and/or relate to any Wholesaler Defndant's knowledge of the impropriety of any action or practice….." (Request No. 21). Documents "that refer and/or relate to any action by any Wholesaler Defenant that you allege breached an implied warranty…." (Request No. 22). Also see requests seeking similar information on documents which "refer and/or relate to whether the Losartan and/or Irbesartan products . . . was fit for the ordinary purpose for which it was used…." (Request No. 23), documents which refer or relate to, "any alleged violation of any Consumer Protection … statute and/or any other statute or regualtion by any Wholesaler Defendant…." (Request No. 24). "Documents which refer to …. the specficic benefit You allege each Wholesaler Defendant(s) received…" and "… the portion of each specific benefit it would be unjust for the relevant Wholesaler Defendant(s) to retain, and the reason such retention wuld be unjust." (Request Nos. 25-26). In addition, *see* Request No. 37 ("Documents that refer and/or relate to any reliance by You on any misrepresentation or omission of fact by any Wholesaler Defendant…" and Request No. 38 ("All Documents that refer and/or relate to any injury and/or harm suffered by You as a result of Your reliance on any misrepresentation and/or omission of fact…"

5

stage of the litigation. For example, Defendants ask the TPP Plaintiffs to: "Describe with particularity any wrongdoing, improper practice or action, and/or misrepresentation by any Wholesaler Defendant upon which You base you claims," is a request to that TPP Plaintiffs provide information on what Plaintiffs *contend* regarding Wholesaler Defendants "wrongdoing, improper practice or action, and/or misrepresentation …." Request (E)(1). Similarly, Wholesalers' request that the TPP Plaintiffs "Describe with particularity any action and/or omission You took in reliance on any wrongdoing, improper practice or action, and/or misrepresentation by any Wholesaler Defendant," (E)(2), calls for Plaintiffs to provide Wholesalers information on what Plaintiffs *contend* were, "wrongdoing, improper practice or action, and/or misrepresentation by any Wholesaler Defendant." Likewise, Wholesalers' request that TPP Plaintiffs, "State the type and amount of damages You seek from each Wholesaler Defendant … with regard to each Claim and each cause of action asserted …," (E)(3), calls for Plaintiffs to provide Defendants information on TPP Plaintiffs' contentions with respect to liability and damages.

The party serving contention interrogatories must prove how discovery is benefited by an earlier answer. If the court forces a plaintiff to respond, it may have to set forth theories of its case that have not yet been developed. *Conopco, Inc. v. Warner-Lambert Co.*, 2000 WL 342872, at *4 (D.N.J. Jan. 26, 2000) (quoting *B. Braun Med. Inc. v. Abbott Lab.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994)) (internal quotation omitted); *see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 110-11 (D.N.J. 1990) (contention interrogatories were premature where discovery was in its infancy and judicial economy as well as efficiency for the litigants weighed in favor of deferring contention interrogatories until after substantial amount of discovery was conducted).

"[M]ost courts agree that '[d]ue to the nature of contention interrogatories, they are more appropriately used after a substantial amount of discovery has been conducted—typically, at the end of the discovery period.'" *Sigman v. CSX Corp.*, Case No. 3:15-cv-13328, 2016 WL 7444947, at *2 (S.D. W. Va. Dec. 27, 2016) (quoting *Cappachione v. Charlotte-Mecklenburg Bd. Of Educ.*, 182 F.R.D. 486, 489 (W.D.N.C. 1998)); *see also, e.g., BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006) ("[C]ontention interrogatories should normally be conducted at the end of discovery."); *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) ("[T]he obligation to respond to [contention interrogatories] is often postponed until near the end of the discovery period unless the proponent carries its burden of demonstrating why they are necessary earlier on.") (internal citation omitted). Premature contention interrogatories are improper because of "the unfairness of requiring a party to prematurely articulate theories which have not yet been fully developed." *Sigman,* 2016 WL 7444947, at *2 (quoting *Cornell Research Found., Inc. v. Hewlett Packard Co.*, 223 F.R.D. 55, 66 (N.D.N.Y. 2003)).

Further, all of the above Defendants' demands for information and requests for production improperly shift the burden of legal analysis to TPP Plaintiffs and invade—or at the very least present a high risk of invading—the attorney-client and work-product privileges. Waiting until after core discovery is provided through the Losartan/Irbesartan TPP PFS would help reduce this risk and narrow the requests once the Defendants have reviewed the factual information received through core discovery. Any contention discovery that is eventually permitted should be deferred until after the core TPP PFS discovery has been completed, and carefully limited to avoid calling for the disclosure of attorney-client privileged information or work product.

In sum, Defendants' contention requests for the production discovery is not permissible. At most, the remainder of the proposed discovery is premature, and the issue should be revisited after TPPs respond to the Losartan/Irbesartan TPP PFS, and the Defendants can then determine what, if any additional information they might need. *See, e.g., Francis v. Lakewood Eng'g & Mfg. Co.*, No. 05-2429 MAV, 2006 WL 8434945, at *2 (W.D. Tenn. July 18, 2006) (The Federal Rules of Civil Procedure allow courts to defer answers to contention interrogatories because they "may create disputes between the parties which are best resolved after much or all of the other discovery has been completed.").

### IV. The Court has Already Ruled on and Denied Much of the Additional Discovery Sought by the Defendants Through Their Proposed TPP PFS Regarding Plaintiffs' Unjust Enrichment Claims.

No question, through their Letter Brief, Defendants seek to relitigate issues related to various discovery requests and certain documents and information which the Court has already ruled on when analyzing these exact same disputes during the Valsartan discovery. To summarize, the Court entered Case Management Order No. 32 related to the discovery to be conducted in Valsartan on April 21, 2023. (ECF No. 2343). The Defendants then submitted a letter brief to the Special Master on April 25, 2023, asserting that "CMO 32 makes plain that discovery on Plaintiffs' certified class claim of unjust enrichment is open," and requesting leave to reopen discovery relevant to TPP Plaintiffs' unjust enrichment claims. (ECF No. 2349 at 4). After the parties failed to reach agreement on Defendants' additional discovery requests, the dispute was briefed to the Special Master. The Special Master entered Special Master Order No. 82 on August 11, 2023. (ECF No. 2469).

The Court addressed the timeliness of Defendants' discovery requests, noting that the deadline for fact discovery was June 1, 2023. *Id.* at 5. Even though Defendants' requests were "clearly untimely," the Court carefully considered each category of the proposed requests at issue, considering that TPP Plaintiffs had offered to respond to some of the Defendants' requests without objection. *Id.* at 8.

The topics on which Wholesaler Defendants ultimately sought to compel discovery were: "(A) Communications and Contracts between TPP Plaintiffs and Wholesaler Defendants (Wholesaler RFP Nos. 7 – 9); (B) Communications between Plaintiff MSP and the party making the assignment to MSP (RFP No. 10); (C) elements of the unjust enrichment cause of action (RFP Nos. 11 – 16); (D) damages sustained by TPP Plaintiffs (Requests 17-21); (E) the value and safety of VCDs to TPP Plaintiffs and insureds/consumers (RFPs 22 – 27); and (F) profits of TPP Plaintiffs from covering the VCDs in issue (RFP No 28)." *Id.* at 4.

In sum, the Court disallowed every disputed discovery request as, variously, "patently overbroad," "an impermissible fishing expedition," "already produced," "'gotcha' request[s]," and "irrelevant." *Id.* at 8-15. The Court ordered that TPP Plaintiffs produce only those documents which they previously agreed to produce. *Id.* at 15. Defendants filed their objections to Special Master Order No. 82 on September 1, 2023. ECF No. 2480. The Court overruled the Defendants' objections in their entirety on October 3, 2023. ECF No. 2504. Through the Defendants' Letter

Brief here, they seek to the same types of requests, but in the format of the Losartan/Irbesartan TPP PFS.

For example, in Special Master Order No. 82 (EFC No. 2469), (pages 10-1), the discovery Defendants sought was:

- "[a]ny and all documents which refer to, relate to and/or reflect" the benefit each Wholesaler received "with regard to each Claim;"
- the amount of each specific benefit for each Claim that it would be unjust for the relevant Wholesaler to retain;
- any documents that relate to and/or reflect any action by a Wholesaler that misled MSP with regard to a Claim;
- any and all documents referring to each Claim for which MSP expected remuneration from a Wholesaler.
- any and all documents referring to each Claim for which MSP alleges that a Wholesaler "engaged in any wrongdoing and/or unjust or improper conduct with regard to the VCDs made the subject of the Claims;" and
- and any and all documents that refer to any action of a Wholesaler that directly or indirectly caused damage to MSP "with regard to any specific Claim."

To the above, the Court found, these requests as "overly broad, burdensome, unreasonably cumulative, and disproportionate" to the needs of this case. The Court found, "Plaintiffs' objections are meritorious." Special Master Order No. 82 (EFC No. 2469) at 10-14.

Here Wholesaler Defendants advance similar requests like those the Court disallowed in its Special Master Order No. 82 (EFC No. 2469).

- *See e.g.,* Request 25 (With regard to each Claim, all Documents that refer to, relate to, and/or reflect the specific benefit You allege each Wholesaler Defendant(s) received, the value of such benefit, and the party who conferred such benefit.
- *See, e.g.,* Request 26 (With regard to each Claim referenced in the question immediately above, all Documents that refer and/or relate to the portion of each specific benefit it would be unjust for the relevant Wholesaler Defendant(s) to retain, and the reason such retention would be unjust.
- *See, e.g.,* Request 27 (All Documents that refer and/or relate to each Claim for which You expected and/or anticipated payment and/or remuneration from a Wholesaler Defendant(s).

Defendants seek to relitigate issues related to various discovery requests and certain documents and information which the Court has already ruled on when analyzing these exact same disputes during the Valsartan discovery.

No doubt, Defendants seek to minimize the significance of Special Master Order No. 82, asserting its application is limited to the prior ruling that the discovery on the value of VCDs is irrelevant and unnecessary, which was "premised mainly on a statement by Judge Kugler in a motion to dismiss ruling that Plaintiffs sufficiently pled that VCDs are economically worthless." Def's Letter Brief at 9 (citing ECF No. 2469 at 13 (citing Jan. 22, 2021 Opinion, ECF No. 775 at

8

20)). Defendants allege that Special Master Order No. 82 has no application here because the Court has not found that LCDs, ICDs or VCDs are worthless, and that the question whether VCDs are economically worthless is a question reserved for the factfinder. ECF 2261 at 22-23. Although Special Master Order No. 82 was limited to Valsartan, the Court's conclusion that the Valsartan drug at issue is worthless applies equally to Losartan and Irbesartan; there is no logical basis to distinguish the discovery sought here and Court's prior decision in Special Master Order No. 82. Further, in ECF No. 2261 (Opinions on Certification of Proposed Classes under *FRPC Rule* 22 and on Class Certification Expert Reports under *FRE* 702), the Court did not specifically find the issue of worthlessness is a fact question. A fair reading of that Order demonstrates that the Court did not take a position on worthlessness, but simply found it does not prevent a class.[4] Moreover, in Special Master Order No. 82 (EFC No. 2469) the Court also finds the Valsartan drug at issue is worthless, and that order was issued *after* the ruling Defendants presumably rely on in ECF No. 2261.

In sum, the Court has ruled on and denied the additional discovery sought.

## **Conclusion**

The Losartan/Irbesartan TPP PFS proposed by Plaintiffs and attached hereto as Exhibit A fully satisfies Defendants entitlement to basic core discovery. Plaintiffs have agreed to a proposed TPP PFS which not only covers everything the Defendants sought and was approved by the Court related to Valsartan, but the TPP Plaintiffs have agreed to additional requests for information that go well beyond those permitted by the Court in this case related to Valsartan. TPP Plaintiffs are not refusing to produce relevant facts and information related to their proof or the Defendants' corresponding defenses, Plaintiffs seek to limit to discovery to what is reasonable, necessary, and what is consistent with this Court's prior Orders and guidance related to these very discovery disputes. Once the Defendants have received that foregoing core discovery, they can conduct their own legal analysis and apply those facts to their claims to defend their case. Therefore, the Court should deny and strike the contention requests for production as well as the requests for information. If for some reason the Court finds any of these permissible in the litigation, it should find any such requests to be premature at this juncture of the litigation.

---

[4] Rather, the Court addresses the issue of predominance opinions of experts, stating, "the Court has considered its conclusions on the reliability of the experts' reports set forth in Section 6.0; It has also heeded the guidance of In re Processed Egg Products 2017. But It has NOT decided the predominance requirement of any Rule 23(b)(3) class based on its acceptance of either of the proposed economic loss theories. Since each parties' economic loss theory reduces or expands the importance of individualized fact questions over common ones, **choosing one theory over the other drives a decision as to predominance that bounds too deeply into the province of the factfinder**. Rather, the Court has chosen a practical approach to predominance: to confirm that subclasses aptly map the reality of state law variation and factual variability." (emphasis added).

9

                                      Respectfully,

                                      ADAM M. SLATER

Encl.

cc:      All Counsel (via ECF)