<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
 2   _____
                                      :   CIVIL ACTION NUMBER:
 3                                    :   19-md-02875
     IN RE:  VALSARTAN PRODUCTS       :
 4   LIABILITY LITIGATION             :   MOTION HEARING via
                                      :   Teams
 5   _____ :
 6        Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
 7        Camden, New Jersey 08101
          January 24, 2024
 8        Commencing at 1:03 p.m.

 9

10   B E F O R E:            THOMAS I. VANASKIE (RET.)
                             SPECIAL MASTER

11

     A P P E A R A N C E S:
12

13        PRETI FLAHERTY BELIVEAU & PACHIOS LLP
          BY:  JOHN J. CRONAN, III, ESQUIRE
14        One City Center
          Portland, Maine 04101
15        For the Plaintiffs

16

          RIVERO MESTRE LLP
17        BY:  ZALMAN KASS, ESQUIRE
          2525 Ponce De Leon Boulevard, Suite 1000
18        Miami, Florida 33134
          For the Plaintiffs

19

20

21

        Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
22              AnnMarie_Mitchell@njd.uscourts.gov
                       (856) 576-7018
23

        Proceedings recorded by mechanical stenography; transcript
24            produced by computer-aided transcription.

25
</pre>

*United States District Court*

1    **A P P E A R A N C E S (Continued):**

2

3        GREENBERG TRAURIG LLP
         BY:  STEVEN M. HARKINS, ESQUIRE

4        3333 Piedmont Road, NE, Suite 2500
         Atlanta, Georgia  30305

5        For the Defendants, Teva Pharmaceutical Industries Ltd.,
         Teva Pharmaceuticals USA, Inc., Actavis LLC,  and Actavis

6        Pharma, Inc.

7        ULMER & BERNE LLP
         BY:  JEFFREY D. GEOPPINGER, ESQUIRE

8        600 Vine Street, Suite 2800
         Cincinnati, Ohio 445202

9        For the Wholesaler Defendants and AmerisourceBergen

10

11       NORTON ROSE FULBRIGHT US LLP
         BY:  D'LESLI DAVIS, ESQUIRE

12       2200 Ross Avenue, Suite 3600
         Dallas, Texas 75201

         For the Defendant McKesson Corporation

13

14   **ALSO PRESENT:**

15

16       LORETTA SMITH, ESQUIRE
         Judicial Law Clerk to The Honorable Robert B. Kugler

17       Larry MacStravic, Courtroom Deputy

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held via Teams before SPECIAL MASTER
 2   THOMAS I. VANASKIE at 1:03 p.m.)
 3              SPECIAL MASTER VANASKIE:  Why don't we get started.
 4   As Mr. MacStravic has informed us, with Teams, people just
 5   show up, so we don't have to worry about admitting anybody.
 6              And we're ready to hear argument on the plaintiffs'
 7   fact sheets for the irbesartan and losartan matters.
 8              I see Mr. Geoppinger is here.
 9              Who will be arguing on behalf of the plaintiffs?
10              You're muted.
11              MR. CRONAN:  Your Honor, John Cronan here for the
12   TPPs.  I'll be arguing on behalf of the plaintiffs.
13              SPECIAL MASTER VANASKIE:  All right.  Thank you.
14              I guess I'll start with a question, Mr. Geoppinger,
15   why shouldn't I simply follow what I did with respect to the
16   discovery dispute that was decided back in August of '23 in
17   Special Master Order Number 82 and then essentially affirmed
18   by Judge Kugler?
19              MR. GEOPPINGER:  Good morning, Your Honor, or good
20   afternoon.
21              SPECIAL MASTER VANASKIE:  Good afternoon.
22              MR. GEOPPINGER:  Can you hear me okay?
23              SPECIAL MASTER VANASKIE:  Yes, I can hear you fine.
24   Thanks.
25              MR. GEOPPINGER:  Great, great.  Thank you.  We've had
```

1   some technical difficulties here this morning.  I'm glad I'm

2   able to be heard.

3          The short answer is, Your Honor, this is a little bit

4   more -- this dispute here covers a little bit more ground than

5   what we dealt with back in July and August of last year.

6          Yes, there are some same and similar requests on the

7   unjust enrichment piece as to the wholesaler defendants that

8   you may be familiar with and you may have recognized, but

9   there are other requests here, for example, a large group of

10  them being requests about, for instance, our innocent -- the

11  wholesalers' innocent seller defense that weren't at issue in

12  that dispute that we dealt with back with regard to valsartan

13  last summer.  There's also other requests about other claims.

14  And with respect to valsartan, we were focusing on unjust

15  enrichment because that was what was certified.

16         Here with respect to the losartan and irbesartan

17  cases, the plaintiffs have claims for unjust enrichment

18  against the defendants who are at issue in this fact sheet.

19         And just to be clear, this fact sheet is for the

20  third-party payors who have sued with respect to losartan and

21  irbesartan, and the defendants in those cases are the

22  wholesaler defendants as well as the manufacturer defendants,

23  some of the same ones as in valsartan, some different ones,

24  actually, but not the retailer defendants.

25         So there's some claims here at issue in this fact

1    sheet that weren't at issue with respect to what we talked

2    about regarding valsartan last summer.

3         SPECIAL MASTER VANASKIE:  Are the wholesaler

4    defendants the only parties on the defense side that have a

5    dispute with the plaintiffs concerning the fact sheet?

6         MR. GEOPPINGER:  The requests are -- there's two

7    original requests.  There are requests that are specific to

8    the wholesaler defendants and then there's requests that are

9    more generally applicable to all the defendants.

10         SPECIAL MASTER VANASKIE:  Okay.  And so at issue now

11   are only the requests applicable to the wholesaler defendants?

12         MR. GEOPPINGER:  I'm prepared to address all the

13   disputed requests, Your Honor, both those specific to

14   wholesalers as well as those sort of generally applicable to

15   all the defendants in the losartan/irbesartan TPP cases.

16         SPECIAL MASTER VANASKIE:  Okay.  All right.

17         I thought one way to proceed here, I wasn't sure we'd

18   have to go that route, would be to go request by request.  And

19   maybe that is the best way to go at it.

20         As I understand it from the filing that was made

21   yesterday, the matters at issue would be highlighted in green,

22   at least with respect to the submission made yesterday.

23         Is that correct?

24         MR. GEOPPINGER:  That's correct, Your Honor.  I

25   think --

```
 1            MR. CRONAN:  That's correct.

 2            MR. GEOPPINGER:  Yeah.  Our submission last week

 3    highlighted in green the requests that are in dispute.

 4            As an aside, the good news is all the other stuff is

 5    not in dispute.  So as you can see, there is a good deal of

 6    information that's not in dispute.

 7            SPECIAL MASTER VANASKIE:  Right.

 8            MR. GEOPPINGER:  But the plaintiffs, I believe that

 9    the -- like I said, we've had some technically difficulties,

10    but I believe their Exhibit B to their filing yesterday is the

11    same as what we filed with the green highlighting.  They added

12    in some yellow highlighting on things that are not in dispute

13    but things that were different from valsartan.

14            SPECIAL MASTER VANASKIE:  Okay.  So let me ask you

15    this, Mr. Cronan, do you think it's best if we proceed by

16    disputed request by disputed request, one at a time?

17            MR. CRONAN:  Your Honor, I'm open to that approach.

18            If I may be heard as to our general position before

19    we go forward --

20            SPECIAL MASTER VANASKIE:  Sure.

21            MR. CRONAN:  -- that would be great.

22            You know, just to briefly lay out here, as outlined

23    in our letter brief, the TPPs do not deny the fact that

24    wholesalers are entitled to discovery here.

25            The purpose of a fact sheet is to have a standardized
```

1   form to allow for the initial disclosure of certain facts to

2   allow the parties to proceed with formal discovery.

3       The issue we have here is that the fact sheet that's

4   been proposed goes far beyond what was used in the valsartan

5   case, and it contains, after several rounds of meet and

6   confers and exchange of the documents, about seven more sets

7   of information than the valsartan fact sheet included and

8   about 28 additional data points.  So the TPPs have made

9   significant concessions since they've received this proposed

10  fact sheet from the wholesalers; however, the requested

11  issue are -- there's several problems with them, from our

12  perspective.

13      First, they're outside the scope of a plaintiffs fact

14  sheet.  They're simply much too broad, they're contention

15  based in many instances, and they also put the TPPs in a

16  difficult position because these requests cannot be answered

17  at this time in large part.  They require additional

18  discovery, and many of them require expert analysis, you know.

19      The appropriate time for these requests, if any, is

20  to revisit them after the fact sheets have been exchanged,

21  preliminary information has been exchanged, and the parties

22  can narrow the issues down.

23      Essentially, Your Honor, we as TPPs are being asked

24  to prejudge and predict the outcome of the irbesartan and

25  losartan litigation based on the path that the valsartan

 1  litigation has taken, which is really not a fair position for

 2  TPPs to be put in at this time, which is what these -- most of

 3  these requests, if not all of these requests that are at

 4  issue, are doing at this time.

 5          SPECIAL MASTER VANASKIE:  All right.  Well, I still

 6  think we need to go through this one by one.  That's my gut

 7  reaction.  And --

 8          MR. CRONAN:  I'm open to that.  We're open to that,

 9  Your Honor.  That's acceptable.

10          SPECIAL MASTER VANASKIE:  I mean, I know it's tedious

11  and time-consuming, but I think that's the best way to go.  I

12  think that's the best way to go.  I'd rather not, but I still

13  think it's better to do it this way.

14          So why don't we -- and I'm looking at the document

15  that was filed yesterday, 2611-2.  And I just want to look at

16  the requests that are in green, highlighted in green.

17          And the first one I have appears on page 10.  It's

18  page 11 of the ECF filing, but page 10 of the document itself.

19  It's heading E, as in Edward, Wholesaler Conduct and Damages.

20  And it asks for a description with particularity of any

21  wrongdoing, improper practice or action, and/or

22  misrepresentation by any wholesaler defendant upon which you

23  base your claims.

24          Why shouldn't that -- why should that not be part of

25  core discovery?

1          MR. CRONAN:  Your Honor, it's the TPPs' position that

2    this request goes or this request for information goes beyond

3    the scope of core discovery precisely because it's a

4    contention request.

5          This is not a TPP argument sheet or a TPP's

6    contention sheet.  This is a sheet that's intended to get

7    facts -- basic facts out there that the parties can use for

8    discovery.

9          This request is asking the TPPs to describe specific

10   wrongdoing or improper practices or actions, allegations,

11   essentially, and against the wholesaler defendants and what

12   their claims are based on.

13         We simply -- it's simply not proper at this stage to

14   require the parties, the TPPs, to respond to -- this isn't

15   really a request for facts to begin with.  This is a request

16   for our contentions, which we think is more appropriate, if at

17   any time, later on in the case.

18         SPECIAL MASTER VANASKIE:  Mr. Geoppinger?

19         MR. GEOPPINGER:  Well, Your Honor, I think it's

20   pretty simple.  We dispute that, because I think this is a

21   request for facts.  I mean, we're asking -- look, if we made a

22   misrepresentation, tell us what it is.  That is a request for

23   a fact.  The misrepresentation would have already happened.

24   They filed a lawsuit.  They need to prove these kinds of

25   things, improper practice, misrepresentation.  If they're

1  going to proceed and prevail on consumer protection claims, on

2  unjust enrichment claims, on the claims they have against the

3  defendants in this case, wholesaler defendants -- this is

4  about wholesaler defendants, and we'll stick to the wholesaler

5  defendants on this one.  But those are the claims against us

6  by the TPPs with respect to losartan and irbesartan, along

7  with implied warranty.  And to prevail on those claims,

8  they're going to have to prove as an element that we engaged

9  in wrongdoing, that we made a misrepresentation.

10         And asking them to identify the misrepresentation is

11  an ask for a fact.  What is the misrepresentation?  Factually

12  speaking, what in fact did we misrepresent to you?

13         And the next question is after that, what did you do

14  in reliance upon that?  That's another fact.  Okay?

15         We made -- you say we made this misrepresentation,

16  you said you did this.  These things would have already

17  happened.  So they're not contentions, they're facts.  And as

18  Mr. Cronan agreed, we're here to get the facts out.

19         So I think that real basic, Your Honor, these are

20  requests for facts, these are not requests for contention.

21  None of the things that we've asked for, I believe, are

22  requests for contention.

23         What we are looking for in this request and the next

24  request and the one after that and the one we'll talk -- and

25  all of them that we'll discuss are the facts underlying their

1    claims.  That's what we're here to find out.  I agree.  I

2    think this does the trick.  If we need to -- you know, if

3    there's a better way to do it, I am open to it, but I think

4    these are questions about facts, and they should be answered

5    as such.

6              MR. CRONAN:  Your Honor, may I -- may I respond, Your

7    Honor?

8              SPECIAL MASTER VANASKIE:  I do want to hear from you,

9    yes.

10             MR. CRONAN:  To Mr. Geoppinger's response to that, I

11   will add that the TPP fact sheet here on page 13 of the ECF

12   filing that you're referring to contains a specific section

13   under Category 4 that says Fraud Claims.  I'll direct to your

14   attention to that.

15             And it begins with asking the TPPs, are you claiming

16   fraud or consumer fraud in this action on the basis of

17   plaintiff-specific allegations.

18             And it goes on to ask, what representations do you

19   claim was falsely or fraudulently made, to whom it was made,

20   by whom, how was it made, when was it made, were they in

21   writing.

22             These are factual items.  This is what

23   Mr. Geoppinger's referring to presumably, but the request at

24   issue under wholesaler conduct and damages is much different

25   than this, Your Honor.  This is why we consider this to be a

 1    contention request.  It's not proper.  It does not go to the

 2    specific facts that Mr. Geoppinger's asserting that the

 3    wholesalers are looking for at this time.

 4         SPECIAL MASTER VANASKIE:  All right.  Let's hear from

 5    Jeff in reply to this.

 6         Because you do have that whole section on fraud

 7    claims that is not objected to.

 8         Why isn't what you're seeking under subheading E in

 9    parts I, II and III cumulative or duplicative?

10         MR. GEOPPINGER:  The most simple answer to that, Your

11    Honor, is that there, you know, aren't going to be any fraud

12    claims against the wholesaler defendants.  They were dismissed

13    in valsartan.  I anticipate there will be a stipulation that

14    was referenced in our brief that we're working on with the

15    plaintiffs that will essentially have the same claims that are

16    in losartan and irbesartan dismissed that were -- without

17    prejudice that were dismissed in the valsartan case.

18         So, you know, the easy answer here, you know, from

19    the wholesalers' perspective, which is what section E is

20    about, the wholesalers, is there aren't any fraud claims.  The

21    claims against us are consumer protection, there -- like I

22    said, unjust enrichment.

23         So the kind of conduct that -- the plaintiffs have to

24    prove conduct, for instance, on it, as we discussed back in

25    the summer, on an unjust enrichment claim.

1          To get to liability, they have to prove in some
2     places wrongdoing by the defendants.  Texas and Indiana come
3     to mind.  So the wholesalers in these requests are looking for
4     that kind of information.  They're looking for the facts upon
5     which the plaintiffs are going to claim that we, you know,
6     committed wrongful conduct.  We're looking for the facts upon
7     which they're going to claim that our conduct was -- in the
8     context of a consumer protection claim was either unfair or --
9     I'm forgetting the other term.  But that's the kind of
10    information we're seeking here separate and apart from a fraud
11    claim.
12          And, you know, I will just point out, Your Honor, the
13    plaintiffs recently filed motions for summary judgment in
14    valsartan.  And one of the things they moved for summary
15    judgment on is their consumer protection claim.  And that's
16    against, of course, the defendants in that case.
17          And they filed a motion for summary judgment.  And
18    per the local rules, they attached a statement of material
19    facts that supports their request for judgment as a matter of
20    law on a consumer protection claim.  And they attached a
21    statement of material facts to support their argument that the
22    Court can determine on summary judgment that those defendants'
23    conduct was unfair.
24          Essentially what we're asking for here in this fact
25    sheet, Your Honor, are those facts, those facts that we would

1   see ultimately possibly in a statement of material facts that

2   the plaintiffs would submit in support of a summary judgment.

3   But we don't want to wait till we get to summary judgment to

4   find out what they are, Your Honor.  We're entitled to find

5   out now.

6           And if they don't have them now, they can say they

7   don't.  If they get them later, they can amend under the rules

8   and add to it.

9           But certainly we don't want to be in a position where

10  the facts that the plaintiffs might use to support a claim

11  against us, consumer protection, for example, would be listed

12  in a statement of material facts but somehow we weren't able

13  to get them in discovery.

14          So what we're trying to do here with these questions,

15  Your Honor, is get those facts now via the fact sheet, which,

16  yes, it's more -- it's more voluminous than what was done in

17  valsartan, but as you'll recall, we had a couple hearings back

18  in August and September about that very issue, and this is how

19  we decided to proceed.  And the defendants have endeavored to

20  create a fact sheet that, yes, is a little more substantive,

21  but in the interest of using the fact sheet as the plaintiffs

22  asked us to do, and in the interest of getting this

23  information now, not later, and not being in a position,

24  candidly, Your Honor, where we have to fight about waiver and

25  those kinds of things that we've had to deal with before.

1          We don't need -- if we don't need to kick the can

2    down the road, let's not do it.  Let's put it here, and let's

3    deal with it now.

4          SPECIAL MASTER VANASKIE:  Mr. Cronan, why couldn't

5    you answer now, the question of to describe with particularity

6    any wrongdoing, improper practice, or action, and/or

7    misrepresentation by any wholesaler defendant upon which you

8    base your claims?

9          MR. CRONAN:  Your Honor, I would say it would be

10   incredibly difficult for TPPs to answer that now, because what

11   we could answer is what we've agreed to on page 13 of these

12   proposed -- this exhibit here, because those relate to

13   specific facts.

14         The issue here is that we're not kicking the can down

15   the road.  We're doing how things -- we're doing this in the

16   normal fashion of how it's ordinarily done, is to get --

17   establish basic facts and then move on to additional

18   discovery.

19         You know, I want to add that the facts in the summary

20   judgment motion that Attorney Geoppinger was mentioning, those

21   were developed after discovery, in discovery, basically

22   following depositions in a much different posture than what

23   we're dealing with now.

24         So I just think it's -- it would not be appropriate

25   to have multiple requests that TPPs cannot respond to, to

1 simply have them state, we can't respond, we need to

2 supplement later, when that could be maybe used against us at

3 some point in the future, when we don't -- it's not a

4 constructive use of a fact sheet, Your Honor.  It's simply --

5 is seeking information that is contention based.

6        And I think that what's missed here is that a

7 contention can be couched as fact.  And that's exactly what's

8 going on in this situation here.

9        So we would say that this is -- this is a different

10 situation.  We're supposed to be getting preliminary facts

11 now, and this question goes far beyond what's appropriate for

12 a fact sheet.

13        SPECIAL MASTER VANASKIE:  All right.  Thank you.

14        I'm going to move now to page 14 of 2611-2.  And

15 there's one item that's in dispute there, that the

16 plaintiff -- plaintiffs, the TPPs, have not agreed to produce,

17 and that is the gross revenue, expenses and/or costs, and net

18 profits to you on each claim.

19        So what's objectionable about that?

20        MR. CRONAN:  Your Honor, that request is one of -- I

21 would add, to begin with -- 29 subpoints of data that TPPs

22 have agreed to that were not in the valsartan fact sheet, just

23 to set the stage on this one.

24        SPECIAL MASTER VANASKIE:  All right.

25        MR. CRONAN:  That information there --

1    SPECIAL MASTER VANASKIE:  You've agreed to produce 28

2  of those subsets, do I understand that right?

3    MR. CRONAN:  That's correct, Your Honor.  Following

4  several meet and confers and exchanging this document, we have

5  agreed to that in good faith.

6    SPECIAL MASTER VANASKIE:  Okay.  All right.

7    MR. CRONAN:  But these -- this particular item we're

8  focused on, Your Honor, that deals with gross revenue,

9  expenses or costs and net profits, we, TPPs, are not in a

10  position to answer this now until we have additional discovery

11  and the use of expert disclosures.

12    Once experts are available to review this and we have

13  disclosures made, at the appropriate time down the road, we'll

14  be in a position to deal with this.

15    We don't have any issue with this similar request

16  being presented after the close or the conclusion of the fact

17  sheet process.  But again, this is far beyond what's

18  appropriate early on at this stage.

19    So this is the kind of thing that's really not

20  appropriate because we're unable to answer at this time as

21  TPPs.  It's not a factual matter.

22    SPECIAL MASTER VANASKIE:  Why not respond that way?

23  You know, instead of getting into a battle over what's

24  appropriate to ask now, why not have you be required to

25  respond in whatever way you can, which -- and one possible

1  response would be, it's premature, we can't answer it right

2  now?

3         MR. CRONAN:  Your Honor, we could do that, but my

4  concern is that if we have that -- if we have multiple

5  requests that go that route, we're left with a situation where

6  we're wasting time and we're not focusing on what's typically

7  asked.

8         I think there -- I think when we're met with a

9  situation where we're facing a request that would be met with,

10  we can't answer, we'll have to supplement, I think the issue

11  is that that's the test of whether something is appropriate or

12  not in the fact sheet stage.  You know, the fact sheet stage

13  should set the stage for basic information.  And this is the

14  kind of stuff that really ought to happen later in the case,

15  if at all, once we have more information on experts.

16         I just think it's not a good use of people's time to

17  answer, we don't know now but we'll tell you later.  I think

18  it should be revisited at the appropriate time.

19         SPECIAL MASTER VANASKIE:  Mr. Geoppinger, do you want

20  to respond?

21         MR. GEOPPINGER:  Yes, Your Honor.

22         You know, this request here, we understand that it

23  may involve some expert work, and we're certainly willing to

24  accept that and accept the answer if that's where it has to

25  come from via that route.

1          However, to your point, I mean, it is something that

2     can be answered now at least with respect to that answer, to

3     finding that out.  The plaintiffs want -- need to go through

4     that exercise, as opposed to having that figure available to

5     them that they can just write -- that they can provide in the

6     data we've asked for.  And I will note there's probably a

7     request a little bit later on that also addresses this.

8          But if they're willing to do that and they can

9     provide it via experts, we can accept that; but to the

10    point -- your point that, you know, or the point that it

11    doesn't belong in a fact sheet, I mean, we're trying to be

12    comprehensive here more so than in valsartan.  We're trying to

13    get the discovery out there now.  We're trying to avoid -- all

14    of this was discussed back in August and September.  We're

15    trying to avoid these waiver issues.

16         And so, you know, the rules certainly provide that

17    the plaintiffs can provide an answer now and they can

18    supplement it later.  So I think that the idea we should just

19    take it out because we can go -- somewhere down the road,

20    we'll get to it later, you know, obviously causes concern for

21    the defendants.  And I don't see any reason why we need to do

22    that.  We can leave it here, and we can deal with it now.  And

23    if it needs to be supplemented later, then that's what will

24    have to happen.

25         MR. KASS:  Your Honor, may be I heard?

1              SPECIAL MASTER VANASKIE:  Yes, certainly.

2              MR. KASS:  Zalman Kass, also on behalf of the TPP

3    plaintiffs.

4              There is one other additional issue with these three

5    requests, is that they're really focused on the benefit to the

6    TPPs.  And, Your Honor, this is unjust enrichment, which Your

7    Honor readily rejected in valsartan.  We're not supposed to be

8    focusing on any value to the TPPs.  Unjust enrichment focus on

9    the value and/or the gain to the defendant in this case, which

10   is the wholesaler defendant.

11             This is another instance where -- you know, in

12   addition to all the reasons that Mr. Cronan mentioned, there's

13   an additional reason why it's improper, is because, again,

14   we're focusing on the wrong conduct.  And Your Honor already

15   excluded this in valsartan.

16             SPECIAL MASTER VANASKIE:  Okay.  Thank you.

17             Any response on that?

18             MR. GEOPPINGER:  Sure, Your Honor.

19             With respect to the conduct question, you know,

20   candidly, to say that we only focus on the conduct of the

21   defendants is a misstatement of law.  All right?

22             The *McCormick* case we cited in our letter, we it

23   cited multiple times.  It's from 2019 from District of

24   Columbia.  UE requires a fact-intensive inquiry that focuses

25   on the totality of the circumstances, not just on the

1  defendants' conduct.

2        The defendants' conduct or the focus on defendants

3  might be of interest for a damages calculation, but we have to

4  get past liability before we get to damages.  And in unjust

5  enrichment, okay, the third element is that the defendants'

6  acceptance of the benefit under the circumstances -- under the

7  circumstances, that's the keywords -- under the circumstances

8  that make it unfair for the defendant to keep the benefit or

9  part of it.

10        The circumstances are not just what the defendants'

11  conduct is.  To get to liability, we look at the totality of

12  the conduct, totality of the circumstances, both with respect

13  to the defendants and with respect to the plaintiffs.

14        Think about it this way:  In an unjust enrichment

15  claim, would it be fair -- because unjust enrichment is an

16  equitable claim.  The element I just read to you uses the word

17  "unfair."  Would it be fair for the TPP plaintiffs to be able

18  to recover a wholesaler defendant's profits when the TPP

19  plaintiffs may have profited from the covering of the claims

20  to a greater extent than the wholesaler defendants did from

21  distributing the product?  That would be a jury question.  And

22  that would be a jury question to determine liability.

23        Therefore, the wholesalers in that instance should be

24  able to obtain discovery as to the benefits and as to the

25  conduct of the TPP plaintiffs.  It's not just focused on us.

1          I'll also add to that, Your Honor, a reference back

2   to that motion for summary judgment that was just filed in

3   valsartan on the consumer protection claim.  It's on page 31

4   of their motion.

5          The plaintiffs argue that -- and I'm just going to --

6   I'll just quote it for Your Honor.  It says in *F.T.C. v.*

7   *Wyndham*, the Third Circuit was tasked with interpreting the

8   unfairness -- there's that word again -- prong of the FTC Act.

9   In doing so, the Court used the FTC's 1980 policy statement on

10  unfairness as its guide.  This is the policy that the

11  plaintiffs are advocating that the Court use in this case on

12  summary judgment in valsartan.

13         The Court described the three factor unfairness test:

14  One, the substantiality of the injury; two, whether it, the

15  substantiality of the injury, was outweighed by any

16  countervailing benefits.  That's the key element, Your Honor,

17  countervailing benefits.  That means countervailing benefits

18  to the TPPs.  And in their summary judgment motion, they argue

19  that they didn't get any benefits.

20         But regardless of what they argue in that motion in

21  valsartan, it's clear that on consumer protection claims, the

22  benefits to the TPPs are also at issue.

23         And of course, CMO or SMO 82 didn't address a

24  consumer protection claim at all.  It focused solely on the

25  unjust enrichment claims.

```
 1              So I would suggest that there are two reasons on both

 2     claims that the wholesaler defendants should be entitled to

 3     discovery as to the conduct of the TPP plaintiffs as well as

 4     the benefits that they realized from their covering the claims

 5     at issue.

 6              SPECIAL MASTER VANASKIE:  Thank you.

 7              Mr. Cronan or Mr. Kass?

 8              MR. KASS:  Sure.

 9              Your Honor, I just want to say briefly -- and I'm not

10     going to address all the arguments and all the citations that

11     Mr. Geoppinger was going through, because the reality is, the

12     Court has heard this argument, the same argument, many times,

13     has ruled on it, has -- the exact same cases they're citing

14     now, the Court rejected, Your Honor rejected, and Judge Kugler

15     reaffirmed it.

16              Your Honor, I don't want to waste more -- or use up

17     more of the times going over the same argument, but this is,

18     you know, water over -- we've already passed this.

19              So, Your Honor, just to relitigate this, I mean, the

20     orders are what they are, and we just respectfully ask the

21     Court to, you know -- you know, it's already been decided like

22     that.

23              I'll leave it at that.

24              SPECIAL MASTER VANASKIE:  All right.  Thank you.

25              MR. CRONAN:  Your Honor, if I may add one thing, just
```

 1    to echo what Mr. Kass said.

 2              SPECIAL MASTER VANASKIE:  Sure, Mr. Cronan.

 3              MR. CRONAN:  As this Court -- as Your Honor found in

 4    Special Master Order 82 and as Judge Kugler ordered in the

 5    order affirming that, whether the TPPs profited by fulfilling

 6    their contractual obligations by paying for worthless VCDs is

 7    irrelevant to whether wholesalers were unjustly enriched.

 8    That is exactly what Special Master Order 82 says.

 9              The TPPs, by paying for the contaminated VCDs to

10    fulfill their duties, are not sellers of the contaminated

11    product.  Any profits by honoring their contractual

12    obligations are irrelevant to a claim for unjust enrichment,

13    Your Honor.

14              So echoing what Attorney Kass said, this is just

15    water under the bridge at this point, and we think it's well

16    established what the outcome should be here, respectfully.

17              SPECIAL MASTER VANASKIE:  All right.  Thank you.

18              I'm going to move now to page 16 of Document 2611-2.

19    It's request 13, documents sufficient to show that you were a

20    third-party beneficiary to any contract and/or agreement with

21    each manufacturer defendant, wholesaler defendant, and/or

22    pharmacy benefit manager.

23              Why is that improper?

24              MR. CRONAN:  Your Honor, the TPP fact sheet contains

25    requests for information and documents on contracts with

1  wholesalers and defendants.  This question as to whether TPPs

2  were a third-party beneficiary to a contract is a contention

3  request in our view, and secondarily, it's improper for a

4  plaintiffs fact sheet at this early stage.

5       It requests TPPs to guess and to predict what

6  discovery is going to show at this point.  And we don't have

7  the ability really to answer this information as we typically

8  would with an actual, a straightforward request for facts.

9       So, again, like the prior request, we think it's too

10  early for this kind of request, and we think it's outside the

11  scope of what would be allowed in a typical plaintiff fact

12  sheet and the kind of plaintiff fact sheet that was used in

13  the valsartan case with success.

14       SPECIAL MASTER VANASKIE:  All right.  Mr. Geoppinger?

15       MR. GEOPPINGER:  Your Honor, we think this asks for

16  relevant documents.  It's not asking for anybody's contention

17  about anything.

18       The fact of the matter is this:  You know, in this

19  fact sheet, they have -- the plaintiffs have agreed to produce

20  contracts with manufacturers, wholesalers, retailers,

21  third-party -- PBMs, which is great.  That's great.  And we

22  are very glad about that.

23       But the fact of the matter is, and we discussed this

24  back in the summer, the way this whole industry works and the

25  whole insurance payment system works, it doesn't involve the

1  wholesalers and -- my clients.  We don't have dealings with

2  these third-party payors, to our knowledge.  So I expect

3  they're not going to have any contracts.

4           So the question is this:  If you don't have any

5  contracts, are you claiming you're a third-party beneficiary

6  to some other contract?  And if so, do you have a document to

7  support that?  And that's all we're asking here.  And that's

8  what we'd --

9           SPECIAL MASTER VANASKIE:  But it sounds like --

10 sounds like a contention question, do you contend that you're

11 a third-party beneficiary to any contract.

12          MR. GEOPPINGER:  Well, we ask -- actually, it's in

13 the context of a request for production, which is how we use

14 these fact sheets.  And I won't belabor the point here.  The

15 Court is well aware of the arguments about the

16 interrogatories.  So we have requests for production here --

17          SPECIAL MASTER VANASKIE:  Right.

18          MR. GEOPPINGER:  -- seeking facts that may be

19 contained in documents.

20          And essentially, if the plaintiffs -- I mean, if --

21 they either have -- they can give us their contracts.  If they

22 don't have contracts, we won't get them.  They can give us

23 documents, which -- in response to this, which we -- they will

24 say is, you know, is evidence of a third-party beneficiary

25 relationship.  That's all we're asking for.

*United States District Court*

1        If they get a document that they're going to put

2   on -- they're going to cite to in a statement of material

3   facts with respect to one of their claims someday, this would

4   be the time to give it to us, and this is the request for it.

5        SPECIAL MASTER VANASKIE:  The plaintiffs have cited

6   some case law that essentially says requests for production

7   cannot be used to ferret out contentions.

8        Why should I not interpret certain of these requests

9   as essentially contention interrogatories in disguise and say

10  they're not part of core discovery, that can come later?

11       MR. GEOPPINGER:  Well, because they're asking for

12  facts and they're asking for documents or they're asking for

13  documents that contain the facts, but they're fact-specific.

14  I mean, if the plaintiffs have a document that they -- that

15  shows a third-party beneficiary relationship responsive to

16  this, they can produce it.  If they don't have a document,

17  they won't.

18       But via these discovery requests -- these requests in

19  whatever form they are in this fact sheet, which is, as I

20  mentioned, consistent with the way the fact sheets have had to

21  have been done before and consistent with the fact that Judge

22  Schneider didn't allow any interrogatories -- and as far as I

23  know, we're still not allowed to serve any interrogatories.

24  But if the Court wants to advise me otherwise, I'll be happy

25  to hear it and to adjust accordingly.  But I think that what

1   we are asking for is a production of a document.  Factually

2   speaking, do you have it, do you not have it, end of story.

3         And I think that's what all of these requests are

4   aimed at, finding the facts or finding the documents

5   containing the facts that underlie the plaintiffs' claims,

6   that underlie the elements they have to produce -- or excuse

7   me, the elements they have to prove.

8         SPECIAL MASTER VANASKIE:  All right.  And your

9   response?

10         MR. CRONAN:  Yes, Your Honor.

11         As you indicated before, and as the plaintiffs have

12  outlined in their letter brief, Rule 34, unlike Rule 33, has a

13  blanket prohibition, as far as we see, on contention requests

14  for production of documents.  So that's a major roadblock here

15  to this request, this proposed request.

16         And the fact that it says -- it's -- Attorney

17  Geoppinger's asserting that it's searching for facts, any

18  contention can be couched as a fact, which is exactly what

19  this is.  As Your Honor said earlier, it ought to say -- it

20  may as well state, do you contend that you were a third-party

21  beneficiary.

22         TPPs have agreed to include requests for information

23  regarding whether they had a contract with any manufacturer

24  defendant or wholesaler defendants related to the losartan or

25  irbesartan.  That is a more straightforward question.  That's

1   more appropriate for a fact sheet, Your Honor.

2          So we'll just leave it at that and indicate that this

3   is outside the scope of what's permissible, both in a fact

4   sheet and both from a contention request for production.

5          SPECIAL MASTER VANASKIE:  All right.  Thank you.

6          Now, requests 19 through 33 have all been objected

7   to.

8          Mr. Cronan, do you want to elaborate on your

9   objections to any or all of those requests?

10         MR. CRONAN:  Yes, Your Honor.  I think that these

11  simply -- this is further -- the issue that we've flagged

12  before is even more pronounced with respect to these requests.

13  These are clearly contention requests for production of

14  documents in our perspective the further down we move.

15         For example, request number 20 that's been

16  highlighted, all documents that refer/relate to any

17  unconscionable commercial practice, deception, fraud, false

18  pretense, false promise, misrepresentation, omission or

19  concealment.  This is not a search for facts, certainly not

20  the kind of facts that one would expect to see in a plaintiffs

21  fact sheet in a case like this.

22         If these requests are the kind that wholesalers or

23  defendants wish to renew at a later time, you know, we can

24  certainly revisit it at that time, but it's certainly not

25  appropriate at this stage.

1      Your Honor, I think they're clearly contention

2  requests on their face, so they ought to be prohibited all

3  together, in fact, based upon the mandate in Rule 34.

4      SPECIAL MASTER VANASKIE:  I'm sensitive to

5  Mr. Geoppinger's concern about waiver and not being able to

6  seek discovery that is believed to be necessary to adequately

7  prepare a defense.

8      So what would be improper about -- now, I know -- I

9  know, you know, there was a ruling in this matter, no

10  interrogatories.

11      But what would be improper about saying after core

12  discovery is completed, the defense can propound

13  interrogatories, including contention interrogatories?

14      MR. CRONAN:  Your Honor, our position is that after

15  the fact sheet process is completed, we are open to additional

16  discovery as needed, depending upon what the issues look like

17  and how the issues are narrowed.

18      I don't have a crystal ball, as speaking on behalf of

19  the TPPs, in terms of exactly what requests Mr. Geoppinger or

20  the wholesalers or defendants would present, but we are open

21  to additional discovery as allowed by Rule 26 once the basic

22  facts are elicited.

23      But again, we do not think that this is the

24  appropriate time and certainly not when it's couched as a

25  request for production in this manner.

1          SPECIAL MASTER VANASKIE:  All right.  Mr. Geoppinger,

2     why don't we proceed along those lines and establish now that

3     you can pursue discovery by way of contention interrogatories

4     after core discovery is completed?

5          MR. GEOPPINGER:  Your Honor, that's -- you know, as

6     we mentioned in our letter, we're here for -- you know, we're

7     more substance over form, Your Honor.  We just want to get the

8     information.

9          SPECIAL MASTER VANASKIE:  All right.  Okay.

10         MR. GEOPPINGER:  So, yeah, I mean, look, I won't

11    belabor the point.  We're trying to track the elements here of

12    their claims in these requests.  We're using the requests

13    because of the interrogatory ruling.

14         But the wholesaler defendants are certainly open

15    to -- with respect to these specific wholesaler requests, and

16    I imagine the other defendants will tell me if I'm wrong, but

17    with respect to other ones that the Court feels appropriate,

18    that might be more generally applicable to the defendants in

19    this case.  So yeah, let's come up with a -- you know, I guess

20    a plan for the defendants to get this information.

21         And, if -- look, if after having received responses

22    to the information that we've either agreed to or that the

23    Court decides is an appropriate request in this fact sheet, we

24    narrow that issue, then great.  That's fine.  But like I said,

25    we're looking for a vehicle by which we can get this

 1    information.

 2            And if the Court wants to, in ruling upon these

 3    disputed requests, say, look, we're going to do this fact

 4    sheet, this is what it's going to look like.  And then after

 5    that, at this point in time, 30 days after, 60 days after, put

 6    it in an order, and provide that this is going to happen, the

 7    wholesaler defendants -- and I expect all the defendants in

 8    these losartan/irbesartan cases brought by the TPPs would

 9    be -- would be fine with that.

10            SPECIAL MASTER VANASKIE:  All right.  Thank you.

11            I'm now looking at requests 37, 38, 40 through 46.

12            And again, they seem to be outside what I conceive to

13    be core discovery.  But on the other hand, they seem to be

14    inquiries that could be relevant, depending upon what's

15    produced in core discovery.

16            What's your position, Mr. Cronan?

17            MR. CRONAN:  Your Honor, I am open to -- I would

18    agree with that generally.  I'd say that these are certainly

19    outside the scope of what's appropriate in core discovery, and

20    as TPPs, we are -- I believe I speak on behalf of all TPPs

21    when I say we're open to revisiting the issue depending upon

22    what information defendants think they might need after we

23    exchange the basic information in an appropriate fact sheet.

24            So I think that's the best way to do it.  I think

25    it's much too early to deal with anything like this at this

1  point.

2          But I will say, Your Honor, that if this does happen

3  in this manner, we reserve all rights, including any arguments

4  we may make about Rule 34 requests for production as

5  contention requests, which we think are off limits.

6          SPECIAL MASTER VANASKIE:  Right.

7          MR. CRONAN:  But generally -- so that's our position

8  on that piece.

9          SPECIAL MASTER VANASKIE:  Okay.  I don't want anybody

10  to waive any positions here, so I'm very sensitive to that.

11          I want to study this a little more closely, but I'm

12  inclined to say, the items that are agreed to thus far should

13  go into the fact sheet, the plaintiffs fact sheet.  And we can

14  talk about the time frame within which the fact sheets need to

15  be produced.

16          And then the other items -- I know I'm kicking the

17  can down the road, and I want to be very careful of -- not to

18  do that unnecessarily, but it might be appropriate to say

19  let's get the core discovery done, then let's allow additional

20  discovery.

21          I'm not a fan of contention interrogatories.  I

22  understand -- I understand that, but it might be appropriate

23  in this matter to allow for some contention interrogatories.

24          The problem I have with contention interrogatories is

25  that they're never really answered.  They really don't provide

```
 1    discovery.  And they're often an attempt at a gotcha.  So I'm
 2    trying to balance that out.
 3              MR. CRONAN:  Your Honor, may I add one thing for you?
 4              SPECIAL MASTER VANASKIE:  Absolutely.
 5              MR. CRONAN:  Your Honor, just to be clear for the
 6    record, that the TPPs, we are not opposed to deferring
 7    requests, but we are reserving any objection to contention
 8    interrogatories.
 9              And the way the case has proceeded over the last few
10    years, we've generally had the understanding and everyone has
11    taken the approach that there have not been any
12    interrogatories.
13              So, again, we're okay with deferring requests, but,
14    you know, any and all objections to those type of
15    interrogatories are reserved by TPPs in that event.
16              SPECIAL MASTER VANASKIE:  All right.
17              MR. GEOPPINGER:  And, Your Honor --
18              SPECIAL MASTER VANASKIE:  Yes.
19              MR. GEOPPINGER:  -- with respect to all of these --
20    and actually, I'm just going to -- I'd like to talk about 41
21    to 46, if I could, separately after I make this statement.
22              SPECIAL MASTER VANASKIE:  We will.  Okay.
23              MR. GEOPPINGER:  Those are a little bit different.
24              But, you know, the plaintiffs are here saying these
25    are contention interrogatories, they're contention requests
```

1    for production or contention whatever they are.  To be clear,

2    we don't think they are.  We think they're looking for facts.

3    Okay?  And we're looking for facts the best we can in the

4    means that the Court has previously approved and the fact

5    sheets that they've used and trying to basically do what we

6    understand the plaintiffs have asked for and the Court accepts

7    as a way to go about this.

8         As I noted, we're open to getting through the fact

9    sheet on what we've agreed to, whatever else the Court finds

10   to be -- should be included from these disputed requests, and

11   then dealing with the ones that the Court doesn't include at a

12   later time, even via interrogatory, that's great.  I don't

13   necessarily say we're going to serve contention

14   interrogatories.  I doubt we will.  Maybe they will be as

15   simple as tell me all the facts that you would include in a

16   statement of facts to support your claim that, you know --

17   that you're entitled to -- excuse me, that the defendants'

18   conduct was such that we're liable for unjust enrichment or

19   that the defendants' conduct was unfair such that we're liable

20   for consumer protection, you know, statute violation.

21        I'm not necessarily looking to serve contention

22   interrogatories, Your Honor.  I don't necessarily think I

23   have.  But if the Court is willing to defer this and come up

24   with a better way to do it, we're all for that.

25        And as I noted, once we get the other information,

1  perhaps our requests will be narrowed and we'll be in a little

2  bit different position.

3          But I don't think the Court should expect, the TPPs

4  should expect or assume that there are going to be contention

5  interrogatories coming out of us.  We think we're just looking

6  for facts, and that's all we're going to keep doing if we

7  don't have them.

8          With respect to 41, I think it is, to 46, Your

9  Honor -- I want to make sure we get those numbers right,

10  yeah -- those -- those are a little bit different from our

11  perspective.

12          What we're trying to do there, Your Honor, for the

13  wholesalers is ask for documents containing facts that relate

14  to our innocent seller defense.

15          An innocent seller defense is something that came up

16  early in the litigation.  It's been deferred to summary

17  judgment by the Court.  It's a defense available to suppliers

18  like ourselves in many, many states.  And it's basically

19  designed, Your Honor, to protect distributors who are really

20  conduits of products like the wholesaler defendants in this

21  case.

22          So generally those defenses exclude a supplier from

23  liability unless certain circumstances exist, like -- and I'm

24  kind of -- there's a lot of different statutes, so I'm putting

25  some of this stuff together.  But basically circumstances

1    where perhaps the manufacturer owns the distributor or the

2    distributor owns the manufacturer, or one in particular that I

3    think we address in request 45, if the supplier markets the

4    product under its own label.

5        Of course that didn't happen here, but to the extent

6    we are going to be asserting that defense on summary judgment

7    and we come in and say, you know, we didn't market it under

8    our own label, you can't get around the innocent seller

9    statute in this state because of that, we are asking the TPPs,

10   hey, do you have any information or do you have documents in

11   your possession that contradicts that.

12       And I think that's something we're allowed to take

13   discovery on.  I don't think there's anything contention --

14   contentious about that.  And I would suggest that we could

15   include them here in this -- in this fact sheet.

16       It is certainly a defense that will be asserted.

17   It's something we've raised from the outset of the litigation

18   to I think to the surprise of no one, and I think these

19   requests are basically, hey, look, do you have something in

20   your possession document wise that would include facts that

21   would tend to prove one of these exceptions.

22       I think the answer is going to be, you know, no, but

23   if it's not, then we'll know what those documents are.

24       SPECIAL MASTER VANASKIE:  Mr. Cronan, what

25   Mr. Geoppinger is saying seems to make sense to me, that core

1    discovery should include the innocent seller defense.  And

2    they're looking for documents that would be relevant to that

3    defense.

4         Why not allow that to go forward?

5         MR. CRONAN:  Yes, Your Honor.  Thank you for the

6    opportunity to weigh in on that.

7         We would echo some of the prior comments we've made

8    in the past, particularly many of the documents which are at

9    issue here that are requested that are likely to inform us of

10   the response or to be responsive, for that matter, frankly,

11   are in the defendants' hands in some cases.

12        In terms of the information on knowledge of a

13   wholesaler defendant, for example, other issues regarding the

14   value provided or I should say the involvement or control

15   that's alleged on behalf of a wholesaler defendant, this isn't

16   the type of stuff that -- again, that's not part -- it's just

17   ordinarily not part of a fact sheet.  It's not basic facts.

18        I understand they're raising a defense, Your Honor,

19   and there's been reference to, you know, anticipated summary

20   judgment motions and whatnot.  But we're far from that, Your

21   Honor.  And this is putting the cart before the horse in our

22   view.  It's simply not appropriate for this early stage and

23   the basic information we're looking to gather.

24        SPECIAL MASTER VANASKIE:  Well, why wouldn't it be

25   appropriate simply to say, discovery is ongoing, we don't have

1  any documents at this time, but include it as part of the fact

2  sheet?

3          MR. CRONAN:  I think for the -- Zalman, do you have

4  something to add?

5          MR. KASS:  Well, yes, Your Honor.  If I could add to

6  that.

7          SPECIAL MASTER VANASKIE:  Sure.

8          MR. KASS:  We still take issue, because these are

9  contention requests for production of documents.  They're not

10 simply saying -- a regular request for documents is like all

11 documents between this person and that person, that date,

12 maybe referencing something.  That's a request for production

13 of documents.  But when you're taking the elements of a

14 defense and saying all documents that would support or negate

15 this defense, now me as an attorney, I have to analyze the

16 documents, determine whether they do support the defense, they

17 do negate the defense, identify those documents and produce it

18 to the opposing side.

19         Your Honor, that's not permitted under the Rules of

20 Federal Procedure, for the simple basis, it's forcing me to do

21 attorney work product.  Right?  And then give my work product

22 to the other side, Your Honor.

23         So if they can make these factually based, right, all

24 documents, whatever, something like that where they're not

25 taking the elements and asking me to apply facts to elements.

1  That's what a contention is.

2        And you can say it's only -- I'm only looking for a

3  fact, I'm only looking for fact, but when you're asking to

4  apply those facts to an element of a claim or a defense, that

5  is contention based, and that's simply not permitted by the

6  rules.  So I just wanted to make that clear.

7        MS. DAVIS:  Your Honor, D'Lesli Davis from McKesson.

8  May I be heard on this for just a moment?

9        SPECIAL MASTER VANASKIE:  Yes, you may.

10       MS. DAVIS:  I represent McKesson, which is a

11  wholesaler.

12       These are pleading obligations of the plaintiffs.

13  They are to allege facts that meet the elements of particular

14  claims and conclude that they have been damaged in some way

15  and then articulate those damages.

16       They have not made those allegations in any of their

17  complaints.  We are on zero notice of -- using the great

18  example that Mr. Geoppinger was using -- what a

19  misrepresentation was factually, who made it, what the date of

20  it was, when it happened, or how they relied on it, what the

21  date of reliance was, who relied, in what way they relied.

22  They have not even articulated whether they know if an

23  individual wholesaler was involved in any given transaction.

24  And they have successfully dodged that, having to ever do

25  that, having to ever plead or do discovery on facts that would

1   constitute elements.

2       This is a red herring to say that these are

3   contention RFPs or if you interpret them as interrogatories.

4   The request is for what the facts they base these claims on

5   are.  And they owe us that at some point.  I'm sympathetic, as

6   Mr. Geoppinger suggested, if there's a different time that the

7   Court wants to do it or a different manner, but what we need

8   to know is that we're this time around going to get these

9   facts and not be popped on the rear side by saying, well, you

10  didn't ask the right questions or you didn't make clear to the

11  Court what you needed to have.

12      These are fundamental responsibilities of a plaintiff

13  in any litigation, and to pretend that this is unheard of

14  early in a case, for you to say what misrepresentations were

15  made to you, who made them and how you relied, is simply

16  treading water to try to avoid having to make those

17  disclosures.

18      MR. CRONAN:  Your Honor, may I be heard?

19      SPECIAL MASTER VANASKIE:  Mr. Kass -- one at a time,

20  but we'll hear from Mr. Cronan first.

21      MR. CRONAN:  Sure, Your Honor.

22      To the comment about treading water, Your Honor,

23  again, I go back to what we talked about earlier on in this

24  hearing.  Again, the fact sheet has agreed-upon requests with

25  respect to the fraud, for example, which specifically asks

1  about statements, when they were made, who they were made by

2  and further details along those lines.  So it's not as if

3  we're claiming that there's no entitlement to that

4  information.

5          And, secondly, as Attorney Kass talked about earlier,

6  the work product privilege -- the work product issue here is

7  really a significant issue that ought to be considered.

8  There's always the risk of invading that -- the work product

9  concerns once we're dealing with contention requests.  And it

10 makes no sense in my view, Your Honor, to go towards that risk

11 when we don't need to at this point, especially when we're in

12 such an early stage and we haven't narrowed the issues down.

13         So those are just the two points that I wanted to

14 raise.

15         SPECIAL MASTER VANASKIE:  All right.  Thank you.

16         Did you want to be heard, Mr. Kass?

17         MR. KASS:  Yes, just very briefly.

18         Again, so I hear Ms. Davis' argument, but, again, so

19 she's saying she needs to know what the information is.  Okay.

20 So the remedy is, if any remedy it is, it's a contention

21 interrogatory.  It's not a contention request for production.

22 We're using the wrong vehicle to try and get to a conclusion.

23 So I just really want to make that difference.

24         And the TPPs' position -- and this is based on the

25 case law that we cited in our brief -- contention requests for

 1   production are simply not allowed because they invade the

 2   attorney work product.  It's a full stop, privilege.

 3            Then, Your Honor, it seems to be saying, she's

 4   almost -- and then we're almost trying to -- Ms. Davis is

 5   almost trying to -- getting into, is there standing, not

 6   standing on it.  That's an issue for a motion to dismiss.

 7            Like -- like, we do -- you know, we do discovery and

 8   we do litigation in a former -- in a manner.  Right?  If she

 9   thinks there's not standing, if she thinks it's not correctly

10   laid out in the complaint, well, you do a motion to dismiss.

11   Right?

12            But now to -- I think we're sort of putting the cart

13   before the horse.

14            I just wanted to flag that.  That's all I have.

15            SPECIAL MASTER VANASKIE:  All right.  I'd like to

16   talk about the final item that's at issue, the record

17   retention policies that have been asked on page 23 of 2511-2.

18            Why would that be inappropriate, Mr. Cronan?

19            MR. CRONAN:  So the request regarding the

20   recordkeeping, we indicated that's a contention request,

21   because we think the way -- the way it's phrased is

22   inappropriate at this point.  And I think it's something that

23   we don't think is basically the kind of thing that would be

24   asked for at this early stage in a fact sheet.

25            I mean, we've outlined our position on that before,

```
 1   and I think it's -- to the extent we can answer it, you know,
 2   I think we could do that at a later point once we get more
 3   information.  But at this point it's an early -- it's very
 4   preliminary.
 5          SPECIAL MASTER VANASKIE:  That seems to me to be a
 6   basic request part of core discovery, you know, you're finding
 7   out what might have been lost over time by ascertaining what
 8   retention policies existed.  I'm having trouble understanding
 9   how that turns into a contention request.
10          MR. CRONAN:  Your Honor, we would be open to
11   revisiting the way it's phrased at this point, if that's
12   helpful.
13          I think it's just -- this is our position, at least
14   at this point, based on how this has been presented in this
15   fact sheet.
16          MR. GEOPPINGER:  Your Honor, may I --
17          SPECIAL MASTER VANASKIE:  Yes.
18          MR. GEOPPINGER:  -- say something on this one?
19          This one is in contention.  It's highlighted in
20   green.
21          I can tell you, it was -- you know, the plaintiffs --
22   I haven't had a chance to talk with Mr. Cronan, specifically
23   to him, about this.  I don't think Mr. Kass and I talked about
24   this.  But it was deleted by the plaintiffs.
25          It could have been the subject maybe of more meet and
```

1  confer, but let me just tell you this.  This is a request.

2  And if it's not, I'll make sure -- double, triple check, make

3  sure, this is a verbatim request to us, the defendants.  This

4  is in plaintiffs' request for production to the defendants,

5  the wholesalers, I think the manufacturers too.  This is one

6  of their requests for production.  We put it in here.  These

7  are -- you know, these are not individuals we're dealing with

8  in this instance, these are companies.  So we've included the

9  same request that they've asked of us.  So I think it's

10  appropriate.  And I'd -- probably, I think if the plaintiffs

11  take a look at it a little closer, they're probably going to

12  agree too.

13          MR. CRONAN:  Your Honor --

14          SPECIAL MASTER VANASKIE:  All right.  Mr. Kass's

15  camera came on, so --

16          MR. CRONAN:  Go ahead.  Go ahead, Zalman.

17          No, no.  I was just going to say, Your Honor, we

18  have --

19          Zalman, please go ahead.  Please do.

20          MR. KASS:  Well, I was just going to say again, Your

21  Honor, we're definitely okay with looking at it again and

22  speaking to the wholesaler defendants to see if something can

23  be reached.

24          I'm not sure exactly sure which request for

25  production it's from, since we -- so, again, like, I don't

1    know -- like, there are more factual information that I don't

2    have right in front of me right now, and so sort of we

3    haven't really -- you know, I'll be very honest with you, Your

4    Honor, we've been meeting and conferring a lot with the

5    wholesaler defendants, but there are just a lot of -- a lot of

6    requests that we were going through, and the parties really

7    haven't focused so much on that section, so it may make more

8    sense for us to have another meet and confer.  And maybe we

9    can resolve it.

10         Like, you know, conceptually, if there are going to

11    be document retention policies, yeah, we're not opposed to

12    giving it to them.  It's just, we need -- I think it's really

13    a matter of figuring out how -- how to word the request.

14    That's I believe where we are.

15         MR. GEOPPINGER:  And presuming I'm correct, I think

16    the plaintiffs after they look at their own requests are going

17    to agree that the wording is pretty good since they wrote it.

18         MR. CRONAN:  In fact, I agree.  We will revisit that,

19    Your Honor, if that's acceptable.

20         SPECIAL MASTER VANASKIE:  I will ask that you revisit

21    it and report back to me on that particular request within a

22    few days.  All right?

23         MR. GEOPPINGER:  Sure.

24         MR. CRONAN:  Certainly.

25         SPECIAL MASTER VANASKIE:  It shouldn't take long to

```
 1   do.
 2           I don't know if we're interrupting your vacation,
 3   Mr. Kass, but I presume we are.
 4           MR. KASS:  Just a bit, but this was -- it was
 5   important, so...
 6           SPECIAL MASTER VANASKIE:  Okay.  All right.
 7           All right.  I will get a decision out promptly on
 8   this.
 9           Is there anything else you want to present to me
10   today?
11           MR. GEOPPINGER:  Nothing from the wholesaler
12   defendants.  And unless any of my other colleagues have
13   something to weigh in, I would saying nothing from the
14   defendants as a whole.
15           THE COURT:  Mr. Cronin?
16           MR. HARKINS:  Your Honor, briefly for the
17   non-wholesaler defendants, nothing to add, just to make sure
18   that -- and I think this is reflected on the record, that any
19   decision as to deferring or allowing further discovery as
20   appropriate would not just apply to the wholesaler defendants,
21   but there are a certain number of requests in here that are
22   applicable to the other defendants.  I just want to make sure
23   that that's incorporated into the order.
24           SPECIAL MASTER VANASKIE:  Okay.  Very well.  Thank
25   you.
```

1          Mr. Cronan, anything else?

2          MR. CRONAN:  Thank you, Your Honor.  Nothing on

3    behalf of the TPPs, unless my colleagues have anything else to

4    add.  I'll open the floor.

5          SPECIAL MASTER VANASKIE:  Ann Marie, I thank you for

6    your patience with us today, because we sometimes talked over

7    each other.

8          Hearing nothing else, we'll conclude for today.  All

9    right.  Thank you all very much.

10         RESPONSE:  Thank you, Your Honor.

11         (Proceedings concluded at 2:02 p.m.)

12                      -   -   -

13         I certify that the foregoing is a correct transcript

14   from the record of proceedings in the above-entitled matter.

15

16   */S/ Ann Marie Mitchell*          *25th day of January, 2024*

17   *Court Reporter/Transcriber*    *Date*

18

19

20

21

22

23

24

25

*United States District Court*

## '

**'23** [1] - 3:16

## /

**/S** [1] - 48:16

## 0

**04101** [1] - 1:14
**08101** [1] - 1:7

## 1

**10** [2] - 8:17, 8:18
**1000** [1] - 1:17
**11** [1] - 8:18
**13** [3] - 11:11, 15:11, 24:19
**14** [1] - 16:14
**16** [1] - 24:18
**19** [1] - 29:6
**19-md-02875** [1] - 1:3
**1980** [1] - 22:9
**1:03** [2] - 1:8, 3:2

## 2

**20** [1] - 29:15
**2019** [1] - 20:23
**2024** [2] - 1:7, 48:16
**2200** [1] - 2:11
**23** [1] - 43:17
**24** [1] - 1:7
**2500** [1] - 2:3
**2511-2** [1] - 43:17
**2525** [1] - 1:17
**25th** [1] - 48:16
**26** [1] - 30:21
**2611-2** [3] - 8:15, 16:14, 24:18
**28** [2] - 7:8, 17:1
**2800** [1] - 2:8
**29** [1] - 16:21
**2:02** [1] - 48:11

## 3

**30** [1] - 32:5
**30305** [1] - 2:4
**31** [1] - 22:3
**33** [2] - 28:12, 29:6
**33134** [1] - 1:18
**3333** [1] - 2:3
**34** [3] - 28:12, 30:3, 33:4
**3600** [1] - 2:11
**37** [1] - 32:11
**38** [1] - 32:11

## 4

**4** [1] - 11:13
**40** [1] - 32:11
**41** [2] - 34:20, 36:8
**445202** [1] - 2:8
**45** [1] - 37:3
**46** [3] - 32:11, 34:21, 36:8
**4th** [1] - 1:6

## 5

**576-7018** [1] - 1:22

## 6

**60** [1] - 32:5
**600** [1] - 2:8

## 7

**75201** [1] - 2:12

## 8

**82** [4] - 3:17, 22:23, 24:4, 24:8
**856** [1] - 1:22

## A

**ability** [1] - 25:7
**able** [5] - 4:2, 14:12, 21:17, 21:24, 30:5
**above-entitled** [1] - 48:14
**absolutely** [1] - 34:4
**accept** [3] - 18:24, 19:9
**acceptable** [2] - 8:9, 46:19
**acceptance** [1] - 21:6
**accepts** [1] - 35:6
**accordingly** [1] - 27:25
**Act** [1] - 22:8
**Actavis** [2] - 2:5
**ACTION** [1] - 1:2
**action** [3] - 8:21, 11:16, 15:6
**actions** [1] - 9:10
**actual** [1] - 25:8
**add** [11] - 11:11, 14:8, 15:19, 16:21, 22:1, 23:25, 34:3, 39:4, 39:5, 47:17, 48:4
**added** [1] - 6:11
**addition** [1] - 20:12
**additional** [9] - 7:8, 7:17, 15:17, 17:10, 20:4, 20:13, 30:15, 30:21, 33:19

**address** [4] - 5:12, 22:23, 23:10, 37:3
**addresses** [1] - 19:7
**adequately** [1] - 30:6
**adjust** [1] - 27:25
**admitting** [1] - 3:5
**advise** [1] - 27:24
**advocating** [1] - 22:11
**affirmed** [1] - 3:17
**affirming** [1] - 24:5
**afternoon** [2] - 3:20, 3:21
**agree** [5] - 11:1, 32:18, 45:12, 46:17, 46:18
**agreed** [12] - 10:18, 15:11, 16:16, 16:22, 17:1, 17:5, 25:19, 28:22, 31:22, 33:12, 35:9, 41:24
**agreed-upon** [1] - 41:24
**agreement** [1] - 24:20
**ahead** [3] - 45:16, 45:19
**aided** [1] - 1:24
**aimed** [1] - 28:4
**allegations** [3] - 9:10, 11:17, 40:16
**allege** [1] - 40:13
**alleged** [1] - 38:15
**allow** [6] - 7:1, 7:2, 27:22, 33:19, 33:23, 38:4
**allowed** [5] - 25:11, 27:23, 30:21, 37:12, 43:1
**allowing** [1] - 47:19
**almost** [3] - 43:4, 43:5
**ALSO** [1] - 2:14
**amend** [1] - 14:7
**AmerisourceBergen** [1] - 2:9
**analysis** [1] - 7:18
**analyze** [1] - 39:15
**Ann** [3] - 1:21, 48:5, 48:16
**AnnMarie_Mitchell@ njd.uscourts.gov** [1] - 1:22
**answer** [17] - 4:3, 12:10, 12:18, 15:5, 15:10, 15:11, 17:10, 17:20, 18:1, 18:10, 18:17, 18:24, 19:2, 19:17, 25:7, 37:22, 44:1
**answered** [4] - 7:16, 11:4, 19:2, 33:25
**anticipate** [1] - 12:13

**anticipated** [1] - 38:19
**apart** [1] - 13:10
**applicable** [5] - 5:9, 5:11, 5:14, 31:18, 47:22
**apply** [3] - 39:25, 40:4, 47:20
**approach** [2] - 6:17, 34:11
**appropriate** [23] - 7:19, 9:16, 15:24, 16:11, 17:13, 17:18, 17:20, 17:24, 18:11, 18:18, 29:1, 29:25, 30:24, 31:17, 31:23, 32:19, 32:23, 33:18, 33:22, 38:22, 38:25, 45:10, 47:20
**approved** [1] - 35:4
**argue** [3] - 22:5, 22:18, 22:20
**arguing** [2] - 3:9, 3:12
**argument** [7] - 3:6, 9:5, 13:21, 23:12, 23:17, 42:18
**arguments** [3] - 23:10, 26:15, 33:3
**articulate** [1] - 40:15
**articulated** [1] - 40:22
**ascertaining** [1] - 44:7
**aside** [1] - 6:4
**asserted** [1] - 37:16
**asserting** [3] - 12:2, 28:17, 37:6
**assume** [1] - 36:4
**Atlanta** [1] - 2:4
**attached** [2] - 13:18, 13:20
**attempt** [1] - 34:1
**attention** [1] - 11:14
**attorney** [3] - 39:15, 39:21, 43:2
**Attorney** [4] - 15:20, 24:14, 28:16, 42:5
**August** [4] - 3:16, 4:5, 14:18, 19:14
**available** [3] - 17:12, 19:4, 36:17
**Avenue** [1] - 2:11
**avoid** [3] - 19:13, 19:15, 41:16
**aware** [1] - 26:15

## B

**balance** [1] - 34:2
**ball** [1] - 30:18
**base** [3] - 8:23, 15:8, 41:4
**based** [9] - 7:15, 7:25, 9:12, 16:5, 30:3,

39:23, 40:5, 42:24, 44:14
**basic** [9] - 9:7, 10:19, 15:17, 18:13, 30:21, 32:23, 38:17, 38:23, 44:6
**basis** [2] - 11:16, 39:20
**battle** [1] - 17:23
**begin** [2] - 9:15, 16:21
**begins** [1] - 11:15
**behalf** [7] - 3:9, 3:12, 20:2, 30:18, 32:20, 38:15, 48:3
**belabor** [2] - 26:14, 31:11
**BELIVEAU** [1] - 1:13
**belong** [1] - 19:11
**beneficiary** [7] - 24:20, 25:2, 26:5, 26:11, 26:24, 27:15, 28:21
**benefit** [4] - 20:5, 21:6, 21:8, 24:22
**benefits** [7] - 21:24, 22:16, 22:17, 22:19, 22:22, 23:4
**BERNE** [1] - 2:7
**best** [6] - 5:19, 6:15, 8:11, 8:12, 32:24, 35:3
**better** [3] - 8:13, 11:3, 35:24
**between** [1] - 39:11
**beyond** [4] - 7:4, 9:2, 16:11, 17:17
**bit** [7] - 4:3, 4:4, 19:7, 34:23, 36:2, 36:10, 47:4
**blanket** [1] - 28:13
**Boulevard** [1] - 1:17
**bridge** [1] - 24:15
**brief** [4] - 6:23, 12:14, 28:12, 42:25
**briefly** [4] - 6:22, 23:9, 42:17, 47:16
**broad** [1] - 7:14
**brought** [1] - 32:8
**Building** [1] - 1:6

## C

**calculation** [1] - 21:3
**Camden** [1] - 1:7
**camera** [1] - 45:15
**candidly** [2] - 14:24, 20:20
**cannot** [2] - 7:16, 15:25, 17:7
**careful** [1] - 33:17
**cart** [2] - 38:21, 43:12

**case** [17] - 7:5, 9:17, 10:3, 12:17, 13:16, 18:14, 20:9, 20:22, 22:11, 25:13, 27:6, 29:21, 31:19, 34:9, 36:21, 41:14, 42:25
**cases** [6] - 4:17, 4:21, 5:15, 23:13, 32:8, 38:11
**Category** [1] - 11:13
**causes** [1] - 19:20
**CCR** [1] - 1:21
**Center** [1] - 1:14
**certain** [4] - 7:1, 27:8, 36:23, 47:21
**certainly** [12] - 14:9, 18:23, 19:16, 20:1, 29:19, 29:24, 30:24, 31:14, 32:18, 37:16, 46:24
**certified** [1] - 4:15
**certify** [1] - 48:13
**chance** [1] - 44:22
**check** [1] - 45:2
**Cincinnati** [1] - 2:8
**Circuit** [1] - 22:7
**circumstances** [8] - 20:25, 21:6, 21:7, 21:10, 21:12, 36:23, 36:25
**citations** [1] - 23:10
**cite** [1] - 27:2
**cited** [4] - 20:22, 20:23, 27:5, 42:25
**citing** [1] - 23:13
**City** [1] - 1:14
**CIVIL** [1] - 1:2
**claim** [17] - 11:19, 12:25, 13:5, 13:7, 13:8, 13:11, 13:15, 13:20, 14:10, 16:18, 21:15, 21:16, 22:3, 22:24, 24:12, 35:16, 40:4
**claiming** [3] - 11:15, 26:5, 42:3
**claims** [27] - 4:13, 4:17, 4:25, 8:23, 9:12, 10:1, 10:2, 10:5, 10:7, 11:1, 12:7, 12:12, 12:15, 12:20, 12:21, 15:8, 21:19, 22:21, 22:25, 23:2, 23:4, 27:3, 28:5, 31:12, 40:14, 41:4
**Claims** [1] - 11:13
**clear** [6] - 4:19, 22:21, 34:5, 35:1, 40:6, 41:10

**clearly** [2] - 29:13, 30:1
**Clerk** [1] - 2:16
**clients** [1] - 26:1
**close** [1] - 17:16
**closely** [1] - 33:11
**closer** [1] - 45:11
**CMO** [1] - 22:23
**Cohen** [1] - 1:6
**colleagues** [2] - 47:12, 48:3
**Columbia** [1] - 20:24
**coming** [1] - 36:5
**Commencing** [1] - 1:8
**comment** [1] - 41:22
**comments** [1] - 38:7
**commercial** [1] - 29:17
**committed** [1] - 13:6
**companies** [1] - 45:8
**complaint** [1] - 43:10
**complaints** [1] - 40:17
**completed** [3] - 30:12, 30:15, 31:4
**comprehensive** [1] - 19:12
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concealment** [1] - 29:19
**conceive** [1] - 32:12
**conceptually** [1] - 46:10
**concern** [3] - 18:4, 19:20, 30:5
**concerning** [1] - 5:5
**concerns** [1] - 42:9
**concessions** [1] - 7:9
**conclude** [2] - 40:14, 48:8
**concluded** [1] - 48:11
**conclusion** [2] - 17:16, 42:22
**conduct** [17] - 11:24, 12:23, 12:24, 13:6, 13:7, 13:23, 20:14, 20:19, 20:20, 21:1, 21:2, 21:11, 21:12, 21:25, 23:3, 35:18, 35:19
**Conduct** [1] - 8:19
**conduits** [1] - 36:20
**confer** [2] - 45:1, 46:8
**conferring** [1] - 46:4
**confers** [2] - 7:6, 17:4
**consider** [1] - 11:25
**considered** [1] - 42:7
**consistent** [2] - 27:20, 27:21

**constitute** [1] - 41:1
**constructive** [1] - 16:4
**consumer** [11] - 10:1, 11:16, 12:21, 13:8, 13:15, 13:20, 14:11, 22:3, 22:21, 22:24, 35:20
**consuming** [1] - 8:11
**contain** [1] - 27:13
**contained** [1] - 26:19
**containing** [2] - 28:5, 36:13
**contains** [3] - 7:5, 11:12, 24:24
**contaminated** [2] - 24:9, 24:10
**contend** [2] - 26:10, 28:20
**contention** [42] - 7:14, 9:4, 9:6, 10:20, 10:22, 12:1, 16:5, 16:7, 25:2, 25:16, 26:10, 27:9, 28:13, 28:18, 29:4, 29:13, 30:1, 30:13, 31:3, 33:5, 33:21, 33:23, 33:24, 34:7, 34:25, 35:1, 35:13, 35:21, 36:4, 37:13, 39:9, 40:1, 40:5, 41:3, 42:9, 42:20, 42:21, 42:25, 43:20, 44:9, 44:19
**contentions** [3] - 9:16, 10:17, 27:7
**contentious** [1] - 37:14
**context** [2] - 13:8, 26:13
**Continued** [1] - 2:1
**contract** [5] - 24:20, 25:2, 26:6, 26:11, 28:23
**contracts** [6] - 24:25, 25:20, 26:3, 26:5, 26:21, 26:22
**contractual** [2] - 24:6, 24:11
**contradicts** [1] - 37:11
**control** [1] - 38:14
**Cooper** [1] - 1:6
**core** [11] - 8:25, 9:3, 27:10, 30:11, 31:4, 32:13, 32:15, 32:19, 33:19, 37:25, 44:6
**Corporation** [1] - 2:12
**correct** [6] - 5:23, 5:24, 6:1, 17:3, 46:15, 48:13
**correctly** [1] - 43:9

**costs** [2] - 16:17, 17:9
**couched** [3] - 16:7, 28:18, 30:24
**countervailing** [3] - 22:16, 22:17
**couple** [1] - 14:17
**course** [3] - 13:16, 22:23, 37:5
**COURT** [1] - 1:1
**Court** [3] - 1:21, 24:3, 48:17
**Courthouse** [1] - 1:6
**Courtroom** [1] - 2:17
**covering** [2] - 21:19, 23:4
**covers** [1] - 4:4
**create** [1] - 14:20
**Cronan** [14] - 3:11, 6:15, 10:18, 15:4, 20:12, 23:7, 24:2, 29:8, 32:16, 37:24, 41:20, 43:18, 44:22, 48:1
**CRONAN** [36] - 1:13, 3:11, 6:1, 6:17, 6:21, 8:8, 9:1, 11:6, 11:10, 15:9, 16:20, 16:25, 17:3, 17:7, 18:3, 23:25, 24:3, 24:24, 28:10, 29:10, 30:14, 32:17, 33:7, 34:3, 34:5, 38:5, 39:3, 41:18, 41:21, 43:19, 44:10, 45:13, 45:16, 46:18, 46:24, 48:2
**Cronin** [1] - 47:15
**CRR** [1] - 1:21
**crystal** [1] - 30:18
**cumulative** [1] - 12:9

### D

**D'LESLI** [1] - 2:11
**D'Lesli** [1] - 40:7
**Dallas** [1] - 2:12
**damaged** [1] - 40:14
**Damages** [1] - 8:19
**damages** [4] - 11:24, 21:3, 21:4, 40:15
**data** [3] - 7:8, 16:21, 19:6
**Date** [1] - 48:17
**date** [3] - 39:11, 40:19, 40:21
**DAVIS** [3] - 2:11, 40:7, 40:10
**Davis** [2] - 40:7, 43:4
**Davis'** [1] - 42:18
**days** [3] - 32:5, 46:22
**De** [1] - 1:17
**deal** [6] - 6:5, 14:25,

15:3, 17:14, 19:22, 32:25
**dealing** [4] - 15:23, 35:11, 42:9, 45:7
**dealings** [1] - 26:1
**deals** [1] - 17:8
**dealt** [2] - 4:5, 4:12
**deception** [1] - 29:17
**decided** [3] - 3:16, 14:19, 23:21
**decides** [1] - 31:23
**decision** [2] - 47:7, 47:19
**defendant** [10] - 8:22, 15:7, 20:9, 20:10, 21:8, 24:21, 28:24, 38:13, 38:15
**Defendant** [1] - 2:12
**defendant's** [1] - 21:18
**Defendants** [2] - 2:4, 2:9
**defendants** [47] - 4:7, 4:18, 4:21, 4:22, 4:24, 5:4, 5:8, 5:9, 5:11, 5:15, 9:11, 10:3, 10:4, 10:5, 12:12, 13:2, 13:16, 14:19, 19:21, 20:21, 21:2, 21:13, 21:20, 23:2, 25:1, 28:24, 29:23, 30:20, 31:14, 31:16, 31:18, 31:20, 32:7, 32:22, 36:20, 45:3, 45:4, 45:22, 46:5, 47:12, 47:14, 47:17, 47:20, 47:22
**defendants'** [8] - 13:22, 21:1, 21:2, 21:5, 21:10, 35:17, 35:19, 38:11
**defense** [17] - 4:11, 5:4, 30:7, 30:12, 36:14, 36:15, 36:17, 37:6, 37:16, 38:1, 38:3, 38:18, 39:14, 39:15, 39:16, 39:17, 40:4
**defenses** [1] - 36:22
**defer** [1] - 35:23
**deferred** [1] - 36:16
**deferring** [3] - 34:6, 34:13, 47:19
**definitely** [1] - 45:21
**deleted** [1] - 44:24
**deny** [1] - 6:23
**depositions** [1] - 15:22
**Deputy** [1] - 2:17
**describe** [2] - 9:9,

15:5
**described** [1] - 22:13
**description** [1] - 8:20
**designed** [1] - 36:19
**details** [1] - 42:2
**determine** [3] - 13:22, 21:22, 39:16
**developed** [1] - 15:21
**difference** [1] - 42:23
**different** [11] - 4:23, 6:13, 11:24, 15:22, 16:9, 34:23, 36:2, 36:10, 36:24, 41:6, 41:7
**difficult** [2] - 7:16, 15:10
**difficulties** [2] - 4:1, 6:9
**direct** [1] - 11:13
**disclosure** [1] - 7:1
**disclosures** [3] - 17:11, 17:13, 41:11
**discovery** [37] - 3:16, 6:24, 7:2, 7:18, 8:25, 9:3, 9:8, 14:13, 15:18, 15:21, 17:10, 19:13, 21:24, 23:3, 25:6, 27:10, 27:18, 30:6, 30:12, 30:16, 30:21, 31:3, 31:4, 32:13, 32:15, 32:19, 33:19, 33:20, 34:1, 37:13, 38:1, 38:25, 40:25, 43:7, 44:6, 47:19
**discuss** [1] - 10:25
**discussed** [3] - 12:24, 19:14, 25:23
**disguise** [1] - 27:9
**dismiss** [2] - 43:6, 43:10
**dismissed** [3] - 12:12, 12:16, 12:17
**dispute** [10] - 3:16, 4:4, 4:12, 5:5, 6:3, 6:5, 6:6, 6:12, 9:20, 16:15
**disputed** [5] - 5:13, 6:16, 32:3, 35:10
**distributing** [1] - 21:21
**distributor** [2] - 37:1, 37:2
**distributors** [1] - 36:19
**DISTRICT** [2] - 1:1, 1:1
**District** [1] - 20:23
**Document** [1] - 24:18
**document** [10] - 8:14,

8:18, 17:4, 26:6, 27:1, 27:14, 27:16, 28:1, 37:20, 46:11
**documents** [26] - 7:6, 24:19, 24:25, 25:16, 26:19, 26:23, 27:12, 27:13, 28:4, 28:14, 29:14, 29:16, 36:13, 37:10, 37:23, 38:2, 38:8, 39:1, 39:9, 39:10, 39:11, 39:13, 39:14, 39:16, 39:17, 39:24
**dodged** [1] - 40:24
**done** [4] - 14:16, 15:16, 27:21, 33:19
**double** [1] - 45:2
**doubt** [1] - 35:14
**down** [8] - 7:22, 15:2, 15:14, 17:13, 19:19, 29:14, 33:17, 42:12
**duplicative** [1] - 12:9
**duties** [1] - 24:10

**E**

**early** [1] - 17:18, 25:4, 25:10, 32:25, 36:16, 38:22, 41:14, 42:12, 43:24, 44:3
**easy** [1] - 12:18
**ECF** [2] - 8:18, 11:11
**echo** [2] - 24:1, 38:7
**echoing** [1] - 24:14
**Edward** [1] - 8:19
**either** [3] - 13:8, 26:21, 31:22
**elaborate** [1] - 29:8
**element** [5] - 10:8, 21:5, 21:16, 22:16, 40:4
**elements** [8] - 28:6, 28:7, 31:11, 39:13, 39:25, 40:13, 41:1
**elicited** [1] - 30:22
**end** [1] - 28:2
**endeavored** [1] - 14:19
**engaged** [1] - 10:8
**enriched** [1] - 24:7
**enrichment** [14] - 4:7, 4:15, 4:17, 10:2, 12:22, 12:25, 20:6, 20:8, 21:5, 21:14, 21:15, 22:25, 24:12, 35:18
**entitled** [5] - 6:24, 14:4, 23:2, 35:17, 48:14
**entitlement** [1] - 42:3
**equitable** [1] - 21:16

**especially** [1] - 42:11
**ESQUIRE** [6] - 1:13, 1:17, 2:3, 2:7, 2:11, 2:15
**essentially** [8] - 3:17, 7:23, 9:11, 12:15, 13:24, 26:20, 27:6, 27:9
**establish** [2] - 15:17, 31:2
**established** [1] - 24:16
**event** [1] - 34:15
**evidence** [1] - 26:24
**exact** [1] - 23:13
**exactly** [5] - 16:7, 24:8, 28:18, 30:19, 45:24
**example** [6] - 4:9, 14:11, 29:15, 38:13, 40:18, 41:25
**exceptions** [1] - 37:21
**exchange** [2] - 7:6, 32:23
**exchanged** [2] - 7:20, 7:21
**exchanging** [1] - 17:4
**exclude** [1] - 36:22
**excluded** [2] - 20:15
**excuse** [2] - 28:6, 35:17
**exercise** [1] - 19:4
**Exhibit** [1] - 6:10
**exhibit** [1] - 15:12
**exist** [1] - 36:23
**existed** [1] - 44:8
**expect** [5] - 26:2, 29:20, 32:7, 36:3, 36:4
**expenses** [2] - 16:17, 17:9
**expert** [3] - 7:18, 17:11, 18:23
**experts** [3] - 17:12, 18:15, 19:9
**extent** [2] - 21:20, 37:5, 44:1

**F**

**F.T.C** [1] - 22:6
**face** [1] - 30:2
**facing** [1] - 18:9
**fact** [66] - 3:7, 4:18, 4:19, 4:25, 5:5, 6:23, 6:25, 7:3, 7:7, 7:10, 7:13, 7:20, 9:23, 10:11, 10:12, 10:14, 11:11, 13:24, 14:15, 14:20, 14:21, 16:4, 16:7, 16:12, 16:22,

17:16, 18:12, 19:11, 20:24, 24:24, 25:4, 25:11, 25:12, 25:18, 25:19, 25:23, 26:14, 27:13, 27:19, 27:20, 27:21, 28:16, 28:18, 29:1, 29:3, 29:21, 30:3, 30:15, 31:23, 32:3, 32:23, 33:13, 33:14, 35:4, 35:8, 37:15, 38:17, 39:1, 40:3, 41:24, 43:24, 44:15, 46:18
**fact-intensive** [1] - 20:24
**fact-specific** [1] - 27:13
**factor** [1] - 22:13
**facts** [50] - 7:1, 9:7, 9:15, 9:21, 10:17, 10:18, 10:20, 10:25, 11:4, 12:2, 13:4, 13:6, 13:19, 13:21, 13:25, 14:1, 14:10, 14:12, 14:15, 15:13, 15:17, 15:19, 16:10, 25:8, 26:18, 27:3, 27:12, 27:13, 28:4, 28:5, 28:17, 29:19, 29:20, 30:22, 35:2, 35:3, 35:15, 35:16, 36:6, 36:13, 37:20, 38:17, 39:25, 40:4, 40:13, 40:25, 41:4, 41:9
**factual** [3] - 11:22, 17:21, 46:1
**factually** [4] - 10:11, 28:1, 39:23, 40:19
**fair** [3] - 8:1, 21:15, 21:17
**faith** [1] - 17:5
**false** [2] - 29:17, 29:18
**falsely** [1] - 11:19
**familiar** [1] - 4:8
**fan** [1] - 33:21
**far** [7] - 7:4, 16:11, 17:17, 27:22, 28:13, 33:12, 38:20
**fashion** [1] - 15:16
**Federal** [1] - 39:20
**ferret** [1] - 27:7
**few** [2] - 34:9, 46:22
**fight** [1] - 14:24
**figure** [1] - 19:4
**figuring** [1] - 46:13
**filed** [6] - 6:11, 8:15, 9:24, 13:13, 13:17, 22:2
**filing** [4] - 5:20, 6:10,

8:18, 11:12
**final** [1] - 43:16
**fine** [3] - 3:23, 31:24, 32:9
**first** [3] - 7:13, 8:17, 41:20
**flag** [1] - 43:14
**flagged** [1] - 29:11
**FLAHERTY** [1] - 1:13
**floor** [1] - 48:4
**Florida** [1] - 1:18
**focus** [3] - 20:8, 20:20, 21:2
**focused** [5] - 17:8, 20:5, 21:25, 22:24, 46:7
**focuses** [1] - 20:24
**focusing** [4] - 4:14, 18:6, 20:8, 20:14
**follow** [1] - 3:15
**following** [2] - 15:22, 17:3
**forcing** [1] - 39:20
**foregoing** [1] - 48:13
**forgetting** [1] - 13:9
**form** [3] - 7:1, 27:19, 31:7
**formal** [1] - 7:2
**former** [1] - 43:8
**forward** [2] - 6:19, 38:4
**frame** [1] - 33:14
**frankly** [1] - 38:10
**Fraud** [1] - 11:13
**fraud** [8] - 11:16, 12:6, 12:11, 12:20, 13:10, 29:17, 41:25
**fraudulently** [1] - 11:19
**front** [1] - 46:2
**FTC** [1] - 22:8
**FTC's** [1] - 22:9
**FULBRIGHT** [1] - 2:10
**fulfill** [1] - 24:10
**fulfilling** [1] - 24:5
**full** [1] - 43:2
**fundamental** [1] - 41:12
**future** [1] - 16:3

**G**

**gain** [1] - 20:9
**gather** [1] - 38:23
**general** [1] - 6:18
**generally** [7] - 5:9, 5:14, 31:18, 32:18, 33:7, 34:10, 36:22
**Geoppinger** [12] - 3:8, 3:14, 9:18, 15:20, 18:19, 23:11, 25:14,

30:19, 31:1, 37:25, 40:18, 41:6
**GEOPPINGER** *[27]* - 2:7, 3:19, 3:22, 3:25, 5:6, 5:12, 5:24, 6:2, 6:8, 9:19, 12:10, 18:21, 20:18, 25:15, 26:12, 26:18, 27:11, 31:5, 31:10, 34:17, 34:19, 34:23, 44:16, 44:18, 46:15, 46:23, 47:11
**Geoppinger's** *[5]* - 11:10, 11:23, 12:2, 28:17, 30:5
**Georgia** *[1]* - 2:4
**given** *[1]* - 40:23
**glad** *[2]* - 4:1, 25:22
**gotcha** *[1]* - 34:1
**great** *[8]* - 3:25, 6:21, 25:21, 31:24, 35:12, 40:17
**greater** *[1]* - 21:20
**green** *[6]* - 5:21, 6:3, 6:11, 8:16, 44:20
**GREENBERG** *[1]* - 2:2
**gross** *[2]* - 16:17, 17:8
**ground** *[1]* - 4:4
**group** *[1]* - 4:9
**guess** *[3]* - 3:14, 25:5, 31:19
**guide** *[1]* - 22:10
**gut** *[1]* - 8:6

**H**

**hand** *[1]* - 32:13
**hands** *[1]* - 38:11
**happy** *[1]* - 27:24
**HARKINS** *[2]* - 2:3, 47:16
**heading** *[1]* - 8:19
**hear** *[8]* - 3:6, 3:22, 3:23, 11:8, 12:4, 27:25, 41:20, 42:18
**heard** *[7]* - 4:2, 6:18, 19:25, 23:12, 40:8, 41:18, 42:16
**HEARING** *[1]* - 1:4
**hearing** *[2]* - 41:24, 48:8
**hearings** *[1]* - 14:17
**held** *[1]* - 3:1
**helpful** *[1]* - 44:12
**herring** *[1]* - 41:2
**highlighted** *[5]* - 5:21, 6:3, 8:16, 29:16, 44:19
**highlighting** *[2]* - 6:11, 6:12
**honest** *[1]* - 46:3

**Honor** *[83]* - 3:11, 3:19, 4:3, 5:13, 5:24, 6:17, 7:23, 8:9, 9:1, 9:19, 10:19, 11:6, 11:7, 11:25, 12:11, 13:12, 13:25, 14:4, 14:15, 14:24, 15:9, 16:4, 16:20, 17:3, 17:8, 18:3, 18:21, 19:25, 20:6, 20:7, 20:14, 20:18, 22:1, 22:6, 22:16, 23:9, 23:14, 23:16, 23:19, 23:25, 24:3, 24:13, 24:24, 25:15, 28:10, 28:19, 29:1, 29:10, 30:1, 30:14, 31:5, 31:7, 32:17, 33:2, 34:3, 34:5, 34:17, 35:22, 36:9, 36:12, 36:19, 38:5, 38:18, 38:21, 39:5, 39:19, 39:22, 40:7, 41:18, 41:21, 41:22, 42:10, 43:3, 44:10, 44:16, 45:13, 45:17, 45:21, 46:4, 46:19, 47:16, 48:2, 48:10
**Honorable** *[1]* - 2:16
**honoring** *[1]* - 24:11
**horse** *[2]* - 38:21, 43:13

**I**

**idea** *[1]* - 19:18
**identify** *[2]* - 10:10, 39:17
**II** *[1]* - 12:9
**III** *[2]* - 1:13, 12:9
**imagine** *[1]* - 31:16
**implied** *[1]* - 10:7
**important** *[1]* - 47:5
**improper** *[9]* - 8:21, 9:10, 9:25, 15:6, 20:13, 24:23, 25:3, 30:8, 30:11
**inappropriate** *[2]* - 43:18, 43:22
**Inc** *[2]* - 2:5, 2:5
**inclined** *[1]* - 33:12
**include** *[7]* - 28:22, 35:11, 35:15, 37:15, 37:20, 38:1, 39:1
**included** *[3]* - 7:7, 35:10, 45:8
**including** *[2]* - 30:13, 33:3
**incorporated** *[1]* - 47:23
**incredibly** *[1]* - 15:10

**Indiana** *[1]* - 13:2
**indicate** *[1]* - 29:2
**indicated** *[2]* - 28:11, 43:20
**individual** *[1]* - 40:23
**individuals** *[1]* - 45:7
**Industries** *[1]* - 2:4
**industry** *[1]* - 25:24
**inform** *[1]* - 38:9
**information** *[28]* - 6:6, 7:7, 7:21, 9:2, 13:4, 13:10, 14:23, 16:5, 16:25, 18:13, 18:15, 24:25, 25:7, 28:22, 31:8, 31:20, 31:22, 32:1, 32:22, 32:23, 35:25, 37:10, 38:12, 38:23, 42:4, 42:19, 44:3, 46:1
**informed** *[1]* - 3:4
**initial** *[1]* - 7:1
**injury** *[2]* - 22:14, 22:15
**innocent** *[6]* - 4:10, 4:11, 36:14, 36:15, 37:8, 38:1
**inquiries** *[1]* - 32:14
**inquiry** *[1]* - 20:24
**instance** *[5]* - 4:10, 12:24, 20:11, 21:23, 45:8
**instances** *[1]* - 7:15
**instead** *[1]* - 17:23
**insurance** *[1]* - 25:25
**intended** *[1]* - 9:6
**intensive** *[1]* - 20:24
**interest** *[3]* - 14:21, 14:22, 21:3
**interpret** *[2]* - 27:8, 41:3
**interpreting** *[1]* - 22:7
**interrogatories** *[19]* - 26:16, 27:9, 27:22, 27:23, 30:10, 30:13, 31:3, 33:21, 33:23, 33:24, 34:8, 34:12, 34:15, 34:25, 35:14, 35:22, 36:5, 41:3
**interrogatory** *[3]* - 31:13, 35:12, 42:21
**interrupting** *[1]* - 47:2
**invade** *[1]* - 43:1
**invading** *[1]* - 42:8
**involve** *[2]* - 18:23, 25:25
**involved** *[1]* - 40:23
**involvement** *[1]* - 38:14
**irbesartan** *[7]* - 3:7, 4:16, 4:21, 7:24,

10:6, 12:16, 28:25
**irrelevant** *[2]* - 24:7, 24:12
**issue** *[26]* - 4:11, 4:18, 4:25, 5:1, 5:10, 5:21, 7:3, 7:11, 8:4, 11:24, 14:18, 15:14, 17:15, 18:10, 20:4, 22:22, 23:5, 29:11, 31:24, 32:21, 38:9, 39:8, 42:6, 42:7, 43:6, 43:16
**issues** *[6]* - 7:22, 19:15, 30:16, 30:17, 38:13, 42:12
**item** *[3]* - 16:15, 17:7, 43:16
**items** *[3]* - 11:22, 33:12, 33:16
**itself** *[1]* - 8:18

**J**

**January** *[2]* - 1:7, 48:16
**Jeff** *[1]* - 12:5
**JEFFREY** *[1]* - 2:7
**JERSEY** *[1]* - 1:1
**Jersey** *[1]* - 1:7
**John** *[1]* - 3:11
**JOHN** *[1]* - 1:13
**Judge** *[4]* - 3:18, 23:14, 24:4, 27:21
**judgment** *[14]* - 13:13, 13:15, 13:17, 13:19, 13:22, 14:2, 14:3, 15:20, 22:2, 22:12, 22:18, 36:17, 37:6, 38:20
**Judicial** *[1]* - 2:16
**July** *[1]* - 4:5
**jury** *[2]* - 21:21, 21:22

**K**

**KASS** *[9]* - 1:17, 19:25, 20:2, 23:8, 39:5, 39:8, 42:17, 45:20, 47:4
**Kass** *[9]* - 20:2, 23:7, 24:1, 24:14, 41:19, 42:5, 42:16, 44:23, 47:3
**Kass's** *[1]* - 45:14
**keep** *[2]* - 21:8, 36:6
**key** *[1]* - 22:16
**keywords** *[1]* - 21:7
**kick** *[1]* - 15:1
**kicking** *[2]* - 15:14, 33:16
**kind** *[11]* - 12:23, 13:4,

13:9, 17:19, 18:14, 25:10, 25:12, 29:20, 29:22, 36:24, 43:23
**kinds** *[2]* - 9:24, 14:25
**knowledge** *[2]* - 26:2, 38:12
**Kugler** *[4]* - 2:16, 3:18, 23:14, 24:4

**L**

**label** *[2]* - 37:4, 37:8
**laid** *[1]* - 43:10
**large** *[2]* - 4:9, 7:17
**Larry** *[1]* - 2:17
**last** *[5]* - 4:5, 4:13, 5:2, 6:2, 34:9
**law** *[4]* - 13:20, 20:21, 27:6, 42:25
**Law** *[1]* - 2:16
**lawsuit** *[1]* - 9:24
**lay** *[1]* - 6:22
**least** *[3]* - 5:22, 19:2, 44:13
**leave** *[3]* - 19:22, 23:23, 29:2
**left** *[1]* - 18:5
**Leon** *[1]* - 1:17
**letter** *[4]* - 6:23, 20:22, 28:12, 31:6
**LIABILITY** *[1]* - 1:4
**liability** *[5]* - 13:1, 21:4, 21:11, 21:22, 36:23
**liable** *[2]* - 35:18, 35:19
**likely** *[1]* - 38:9
**limits** *[1]* - 33:5
**lines** *[2]* - 31:2, 42:2
**listed** *[1]* - 14:11
**litigation** *[6]* - 7:25, 8:1, 36:16, 37:17, 41:13, 43:8
**LITIGATION** *[1]* - 1:4
**LLC** *[1]* - 2:5
**LLP** *[5]* - 1:13, 1:16, 2:2, 2:7, 2:10
**local** *[1]* - 13:18
**look** *[11]* - 8:15, 9:21, 21:11, 30:16, 31:10, 31:21, 32:3, 32:4, 37:19, 45:11, 46:16
**looking** *[17]* - 8:14, 10:23, 12:3, 13:3, 13:4, 13:6, 31:25, 32:11, 35:2, 35:3, 35:21, 36:5, 38:2, 38:23, 40:2, 40:3, 45:21
**LORETTA** *[1]* - 2:15
**losartan** *[7]* - 3:7,

*4:16, 4:20, 7:25, 10:6, 12:16, 28:24*

**losartan/irbesartan** *[2]* - 5:15, 32:8

**lost** *[1]* - 44:7

**Ltd** *[1]* - 2:4

## M

**MacStravic** *[2]* - 2:17, 3:4

**Maine** *[1]* - 1:14

**major** *[1]* - 28:14

**manager** *[1]* - 24:22

**mandate** *[1]* - 30:3

**manner** *[4]* - 30:25, 33:3, 41:7, 43:8

**manufacturer** *[5]* - 4:22, 24:21, 28:23, 37:1, 37:2

**manufacturers** *[2]* - 25:20, 45:5

**Marie** *[3]* - 1:21, 48:5, 48:16

**market** *[1]* - 37:7

**markets** *[1]* - 37:3

**Master** *[3]* - 3:17, 24:4, 24:8

**MASTER** *[61]* - 1:10, 3:1, 3:3, 3:13, 3:21, 3:23, 5:3, 5:10, 5:16, 6:7, 6:14, 6:20, 8:5, 8:10, 9:18, 11:8, 12:4, 15:4, 16:13, 16:24, 17:1, 17:6, 17:22, 18:19, 20:1, 20:16, 23:6, 23:24, 24:2, 24:17, 25:14, 26:9, 26:17, 27:5, 28:8, 29:5, 30:4, 31:1, 31:9, 32:10, 33:6, 33:9, 34:4, 34:16, 34:18, 34:22, 37:24, 38:24, 39:7, 40:9, 41:19, 42:15, 43:15, 44:5, 44:17, 45:14, 46:20, 46:25, 47:6, 47:24, 48:5*

**material** *[5]* - 13:18, 13:21, 14:1, 14:12, 27:2

**matter** *[9]* - 13:19, 17:21, 25:18, 25:23, 30:9, 33:23, 38:10, 46:13, 48:14

**matters** *[2]* - 3:7, 5:21

**McCormick** *[1]* - 20:22

**McKesson** *[3]* - 2:12, 40:7, 40:10

**mean** *[9]* - 8:10, 9:21, 19:1, 19:11, 23:19,

---

*26:20, 27:14, 31:10, 43:25*

**means** *[2]* - 22:17, 35:4

**mechanical** *[1]* - 1:23

**meet** *[5]* - 7:5, 17:4, 40:13, 44:25, 46:8

**meeting** *[1]* - 46:4

**mentioned** *[3]* - 20:12, 27:20, 31:6

**mentioning** *[1]* - 15:20

**MESTRE** *[1]* - 1:16

**met** *[2]* - 18:8, 18:9

**Miami** *[1]* - 1:18

**might** *[7]* - 14:10, 21:3, 31:18, 32:22, 33:18, 33:22, 44:7

**mind** *[1]* - 13:3

**misrepresent** *[1]* - 10:12

**misrepresentation** *[11]* - 8:22, 9:22, 9:23, 9:25, 10:9, 10:10, 10:11, 10:15, 15:7, 29:18, 40:19

**misrepresentations** *[1]* - 41:14

**missed** *[1]* - 16:6

**misstatement** *[1]* - 20:21

**Mitchell** *[3]* - 1:6, 1:21, 48:16

**moment** *[1]* - 40:8

**morning** *[2]* - 3:19, 4:1

**most** *[2]* - 8:2, 12:10

**motion** *[8]* - 13:17, 15:20, 22:2, 22:4, 22:18, 22:20, 43:6, 43:10

**MOTION** *[1]* - 1:4

**motions** *[2]* - 13:13, 38:20

**move** *[4]* - 15:17, 16:14, 24:18, 29:14

**moved** *[1]* - 13:14

**MR** *[70]* - 3:11, 3:19, 3:22, 3:25, 5:6, 5:12, 5:24, 6:1, 6:2, 6:8, 6:17, 6:21, 8:8, 9:1, 9:19, 11:6, 11:10, 12:10, 15:9, 16:20, 16:25, 17:3, 17:7, 18:3, 18:21, 19:25, 20:2, 20:18, 23:8, 23:25, 24:3, 24:24, 25:15, 26:12, 26:18, 27:11, 28:10, 29:10, 30:14, 31:5, 31:10, 32:17, 33:7, 34:3, 34:5, 34:17, 34:19,*

---

*34:23, 38:5, 39:3, 39:5, 39:8, 41:18, 41:21, 42:17, 43:19, 44:10, 44:16, 44:18, 45:13, 45:16, 45:20, 46:15, 46:18, 46:23, 46:24, 47:4, 47:11, 47:16, 48:2*

**MS** *[2]* - 40:7, 40:10

**multiple** *[3]* - 15:25, 18:4, 20:23

**muted** *[1]* - 3:10

## N

**narrow** *[2]* - 7:22, 31:24

**narrowed** *[3]* - 30:17, 36:1, 42:12

**NE** *[1]* - 2:3

**necessarily** *[3]* - 35:13, 35:21, 35:22

**necessary** *[1]* - 30:6

**need** *[13]* - 8:6, 9:24, 11:2, 15:1, 16:1, 19:3, 19:21, 32:22, 33:14, 41:7, 42:11, 46:12

**needed** *[2]* - 30:16, 41:11

**needs** *[2]* - 19:23, 42:19

**negate** *[2]* - 39:14, 39:17

**net** *[2]* - 16:17, 17:9

**never** *[1]* - 33:25

**NEW** *[1]* - 1:1

**New** *[1]* - 1:7

**news** *[1]* - 6:4

**next** *[2]* - 10:13, 10:23

**non** *[1]* - 47:17

**non-wholesaler** *[1]* - 47:17

**none** *[1]* - 10:21

**normal** *[1]* - 15:16

**NORTON** *[1]* - 2:10

**note** *[1]* - 19:6

**noted** *[2]* - 35:8, 35:25

**nothing** *[5]* - 47:11, 47:13, 47:17, 48:2, 48:8

**notice** *[1]* - 40:17

**NUMBER** *[1]* - 1:2

**number** *[2]* - 29:15, 47:21

**Number** *[1]* - 3:17

**numbers** *[1]* - 36:9

## O

**objected** *[2]* - 12:7,

---

*29:6*

**objection** *[1]* - 34:7

**objectionable** *[1]* - 16:19

**objections** *[2]* - 29:9, 34:14

**obligations** *[3]* - 24:6, 24:12, 40:12

**obtain** *[1]* - 21:24

**obviously** *[1]* - 19:20

**Official** *[1]* - 1:21

**often** *[1]* - 34:1

**Ohio** *[1]* - 2:8

**omission** *[1]* - 29:18

**once** *[6]* - 17:12, 18:15, 30:21, 35:25, 42:9, 44:2

**one** *[26]* - 5:17, 6:16, 8:6, 8:17, 10:5, 10:24, 13:14, 16:15, 16:20, 16:23, 17:25, 20:4, 22:14, 23:25, 27:3, 29:20, 34:3, 37:2, 37:18, 37:21, 41:19, 44:18, 44:19, 45:5*

**One** *[1]* - 1:14

**ones** *[4]* - 4:23, 31:17, 35:11

**ongoing** *[1]* - 38:25

**open** *[12]* - 6:17, 8:8, 11:3, 30:15, 30:20, 31:14, 32:17, 32:21, 35:8, 44:10, 48:4

**opportunity** *[1]* - 38:6

**opposed** *[3]* - 19:4, 34:6, 46:11

**opposing** *[1]* - 39:18

**order** *[3]* - 24:5, 32:6, 47:23

**Order** *[3]* - 3:17, 24:4, 24:8

**ordered** *[1]* - 24:4

**orders** *[1]* - 23:20

**ordinarily** *[2]* - 15:16, 38:17

**original** *[1]* - 5:7

**otherwise** *[1]* - 27:24

**ought** *[4]* - 18:14, 28:19, 30:2, 42:7

**ourselves** *[1]* - 36:18

**outcome** *[2]* - 7:24, 24:16

**outlined** *[3]* - 6:22, 28:12, 43:25

**outset** *[1]* - 37:17

**outside** *[5]* - 7:13, 25:10, 29:3, 32:12, 32:19

**outweighed** *[1]* -

---

*22:15*

**owe** *[1]* - 41:5

**own** *[3]* - 37:4, 37:8, 46:16

**owns** *[2]* - 37:1, 37:2

## P

**p.m** *[3]* - 1:8, 3:2, 48:11

**PACHIOS** *[1]* - 1:13

**page** *[9]* - 8:17, 8:18, 11:11, 15:11, 16:14, 22:3, 24:18, 43:17

**part** *[8]* - 7:17, 8:24, 21:9, 27:10, 38:16, 38:17, 39:1, 44:6

**particular** *[4]* - 17:7, 37:2, 40:13, 46:21

**particularity** *[2]* - 8:20, 15:5

**particularly** *[1]* - 38:8

**parties** *[6]* - 5:4, 7:2, 7:21, 9:7, 9:14, 46:6

**parts** *[1]* - 12:9

**party** *[10]* - 4:20, 24:20, 25:2, 25:21, 26:2, 26:5, 26:11, 26:24, 27:15, 28:20

**passed** *[1]* - 23:18

**past** *[2]* - 21:4, 38:8

**path** *[1]* - 7:25

**patience** *[1]* - 48:6

**paying** *[2]* - 24:6, 24:9

**payment** *[1]* - 25:25

**payors** *[2]* - 4:20, 26:2

**PBMs** *[1]* - 25:21

**people** *[1]* - 3:4

**people's** *[1]* - 18:16

**per** *[1]* - 13:18

**perhaps** *[2]* - 36:1, 37:1

**permissible** *[1]* - 29:3

**permitted** *[2]* - 39:19, 40:5

**person** *[1]* - 39:11

**perspective** *[4]* - 7:12, 12:19, 29:14, 36:11

**Pharma** *[1]* - 2:5

**Pharmaceutical** *[1]* - 2:4

**Pharmaceuticals** *[1]* - 2:5

**pharmacy** *[1]* - 24:22

**phrased** *[2]* - 43:21, 44:11

**piece** *[2]* - 4:7, 33:8

**Piedmont** *[1]* - 2:3

**places** *[1]* - 13:2

**plaintiff** *[5]* - 11:17, 16:16, 25:11, 25:12,

*41:12*

**plaintiff-specific** [1] - 11:17

**Plaintiffs** [2] - 1:15, 1:18

**plaintiffs** [39] - 3:9, 3:12, 4:17, 5:5, 6:8, 7:13, 12:15, 12:23, 13:5, 13:13, 14:2, 14:10, 14:21, 16:16, 19:3, 19:17, 20:3, 21:13, 21:17, 21:19, 21:25, 22:5, 22:11, 23:3, 25:4, 25:19, 26:20, 27:5, 27:14, 28:11, 29:20, 33:13, 34:24, 35:6, 40:12, 44:21, 44:24, 45:10, 46:16

**plaintiffs'** [3] - 3:6, 28:5, 45:4

**plan** [1] - 31:20

**plead** [1] - 40:25

**pleading** [1] - 40:12

**point** [19] - 13:12, 16:3, 19:1, 19:10, 24:15, 25:6, 26:14, 31:11, 32:5, 33:1, 41:5, 42:11, 43:22, 44:2, 44:3, 44:11, 44:14

**points** [2] - 7:8, 42:13

**policies** [3] - 43:17, 44:8, 46:11

**policy** [2] - 22:9, 22:10

**Ponce** [1] - 1:17

**popped** [1] - 41:9

**Portland** [1] - 1:14

**position** [15] - 6:18, 7:16, 8:1, 9:1, 14:9, 14:23, 17:10, 17:14, 30:14, 32:16, 33:7, 36:2, 42:24, 43:25, 44:13

**positions** [1] - 33:10

**possession** [2] - 37:11, 37:20

**possible** [1] - 17:25

**possibly** [1] - 14:1

**posture** [1] - 15:22

**practice** [4] - 8:21, 9:25, 15:6, 29:17

**practices** [1] - 9:10

**precisely** [1] - 9:3

**predict** [2] - 7:24, 25:5

**prejudge** [1] - 7:24

**prejudice** [1] - 12:17

**preliminary** [3] - 7:21, 16:10, 44:4

**premature** [1] - 18:1

**prepare** [1] - 30:7

**prepared** [1] - 5:12

**PRESENT** [1] - 2:14

**present** [2] - 30:20, 47:9

**presented** [2] - 17:16, 44:14

**presumably** [1] - 11:23

**presume** [1] - 47:3

**presuming** [1] - 46:15

**pretend** [1] - 41:13

**pretense** [1] - 29:18

**PRETI** [1] - 1:13

**pretty** [2] - 9:20, 46:17

**prevail** [2] - 10:1, 10:7

**previously** [1] - 35:4

**privilege** [2] - 42:6, 43:2

**problem** [1] - 33:24

**problems** [1] - 7:11

**Procedure** [1] - 39:20

**proceed** [6] - 5:17, 6:15, 7:2, 10:1, 14:19, 31:2

**proceeded** [1] - 34:9

**Proceedings** [2] - 1:23, 48:11

**proceedings** [1] - 48:14

**PROCEEDINGS** [1] - 3:1

**process** [2] - 17:12, 30:15

**produce** [6] - 16:16, 17:1, 25:19, 27:16, 28:6, 39:17

**produced** [3] - 1:24, 32:15, 33:15

**product** [9] - 21:21, 24:11, 37:4, 39:21, 42:6, 42:8, 43:2

**production** [17] - 26:13, 26:16, 27:6, 28:1, 28:14, 29:4, 29:13, 30:25, 33:4, 35:1, 39:9, 39:12, 42:21, 43:1, 45:4, 45:6, 45:25

**PRODUCTS** [1] - 1:3

**products** [1] - 36:20

**profited** [2] - 21:19, 24:5

**profits** [4] - 16:18, 17:9, 21:18, 24:11

**prohibited** [1] - 30:2

**prohibition** [1] - 28:13

**promise** [1] - 29:18

**promptly** [1] - 47:7

**prong** [1] - 22:8

**pronounced** [1] - 29:12

**proper** [2] - 9:13, 12:1

**proposed** [4] - 7:4, 7:9, 15:12, 28:15

**propound** [1] - 30:12

**protect** [1] - 36:19

**protection** [10] - 10:1, 12:21, 13:8, 13:15, 13:20, 14:11, 22:3, 22:21, 22:24, 35:20

**prove** [6] - 9:24, 10:8, 12:24, 13:1, 28:7, 37:21

**provide** [6] - 19:5, 19:9, 19:16, 19:17, 32:6, 33:25

**provided** [1] - 38:14

**purpose** [1] - 6:25

**pursue** [1] - 31:3

**put** [6] - 7:15, 8:2, 15:2, 27:1, 32:5, 45:6

**putting** [3] - 36:24, 38:21, 43:12

---

## Q

**questions** [3] - 11:4, 14:14, 41:10

**quote** [1] - 22:6

---

## R

**raise** [1] - 42:14

**raised** [1] - 37:17

**raising** [1] - 38:18

**rather** [1] - 8:12

**RDR** [1] - 1:22

**RE** [1] - 1:3

**reached** [1] - 45:23

**reaction** [1] - 8:7

**read** [1] - 21:16

**readily** [1] - 20:7

**ready** [1] - 3:6

**reaffirmed** [1] - 23:15

**real** [1] - 10:19

**reality** [1] - 23:11

**realized** [1] - 23:4

**really** [14] - 8:1, 9:15, 17:19, 18:14, 20:5, 25:7, 33:25, 36:19, 42:7, 42:23, 46:3, 46:6, 46:12

**rear** [1] - 41:9

**reason** [2] - 19:21, 20:13

**reasons** [2] - 20:12, 23:1

**received** [2] - 7:9, 31:21

**recently** [1] - 13:13

**recognized** [1] - 4:8

**record** [4] - 34:6, 43:16, 47:18, 48:14

**recorded** [1] - 1:23

**recordkeeping** [1] - 43:20

**recover** [1] - 21:18

**red** [1] - 41:2

**refer/relate** [1] - 29:16

**reference** [2] - 22:1, 38:19

**referenced** [1] - 12:14

**referencing** [1] - 39:12

**referring** [2] - 11:12, 11:23

**reflected** [1] - 47:18

**regard** [1] - 4:12

**regarding** [4] - 5:2, 28:23, 38:13, 43:19

**regardless** [1] - 22:20

**regular** [1] - 39:10

**rejected** [2] - 20:7, 23:14

**relate** [2] - 15:12, 36:13

**related** [1] - 28:24

**relationship** [2] - 26:25, 27:15

**relevant** [3] - 25:16, 32:14, 38:2

**reliance** [2] - 10:14, 40:21

**relied** [4] - 40:20, 40:21, 41:15

**relitigate** [1] - 23:19

**remedy** [2] - 42:20

**renew** [1] - 29:23

**reply** [1] - 12:5

**report** [1] - 46:21

**Reporter** [1] - 1:21

**Reporter/ Transcriber** [1] - 48:17

**represent** [1] - 40:10

**representations** [1] - 11:18

**request** [5] - 5:18, 6:16, 9:2, 9:4, 9:9, 9:15, 9:21, 9:22, 10:23, 10:24, 11:23, 12:1, 13:19, 16:20, 17:15, 18:9, 18:22, 19:7, 24:19, 25:3, 25:8, 25:9, 25:10, 26:13, 27:4, 28:15, 29:4, 29:15, 30:25, 31:23, 37:3, 39:10, 39:12, 41:4, 42:21,

**43:19, 43:20, 44:6, 44:9, 45:1, 45:3, 45:4, 45:9, 45:24, 46:13, 46:21**

**requested** [2] - 7:10, 38:9

**requests** [61] - 4:6, 4:9, 4:10, 4:13, 5:6, 5:7, 5:8, 5:11, 5:13, 6:3, 7:16, 7:19, 8:3, 8:16, 10:20, 10:22, 13:3, 15:25, 18:5, 20:5, 24:25, 25:5, 26:16, 27:6, 27:8, 27:18, 28:3, 28:13, 28:22, 29:6, 29:9, 29:12, 29:13, 29:22, 30:2, 30:19, 31:12, 31:15, 32:3, 32:11, 33:4, 33:5, 34:7, 34:13, 34:25, 35:10, 36:1, 37:19, 39:9, 41:24, 42:9, 42:25, 45:6, 46:6, 46:16, 47:21

**require** [3] - 7:17, 7:18, 9:14

**required** [1] - 17:24

**requires** [1] - 20:24

**reserve** [1] - 33:3

**reserved** [1] - 34:15

**reserving** [1] - 34:7

**resolve** [1] - 46:9

**respect** [18] - 3:15, 4:14, 4:16, 4:20, 5:1, 5:22, 10:6, 19:2, 20:19, 21:12, 21:13, 27:3, 29:12, 31:15, 31:17, 34:19, 36:8, 41:25

**respectfully** [2] - 23:20, 24:16

**respond** [7] - 9:14, 11:6, 15:25, 16:1, 17:22, 17:25, 18:20

**RESPONSE** [1] - 48:10

**response** [6] - 11:10, 18:1, 20:17, 26:23, 28:9, 38:10

**responses** [1] - 31:21

**responsibilities** [1] - 41:12

**responsive** [2] - 27:15, 38:10

**RET** [1] - 1:9

**retailer** [1] - 4:24

**retailers** [1] - 25:20

**retention** [3] - 43:17, 44:8, 46:11

**revenue** [2] - 16:17, 17:8
**review** [1] - 17:12
**revisit** [4] - 7:20, 29:24, 46:18, 46:20
**revisited** [1] - 18:18
**revisiting** [2] - 32:21, 44:11
**RFPs** [1] - 41:3
**rights** [1] - 33:3
**risk** [2] - 42:8, 42:10
**RIVERO** [1] - 1:16
**road** [5] - 15:2, 15:15, 17:13, 19:19, 33:17
**Road** [1] - 2:3
**roadblock** [1] - 28:14
**Robert** [1] - 2:16
**ROSE** [1] - 2:10
**Ross** [1] - 2:11
**rounds** [1] - 7:5
**route** [3] - 5:18, 18:5, 18:25
**Rule** [5] - 28:12, 30:3, 30:21, 33:4
**ruled** [1] - 23:13
**Rules** [1] - 39:19
**rules** [4] - 13:18, 14:7, 19:16, 40:6
**ruling** [3] - 30:9, 31:13, 32:2

## S

**Schneider** [1] - 27:22
**scope** [5] - 7:13, 9:3, 25:11, 29:3, 32:19
**search** [1] - 29:19
**searching** [1] - 28:17
**secondarily** [1] - 25:3
**secondly** [1] - 42:5
**section** [4] - 11:12, 12:6, 12:19, 46:7
**see** [7] - 3:8, 6:5, 14:1, 19:21, 28:13, 29:20, 45:22
**seek** [1] - 30:6
**seeking** [4] - 12:8, 13:10, 16:5, 26:18
**seem** [2] - 32:12, 32:13
**seller** [5] - 4:11, 36:14, 36:15, 37:8, 38:1
**sellers** [1] - 24:10
**sense** [3] - 37:25, 42:10, 46:8
**sensitive** [2] - 30:4, 33:10
**separate** [1] - 13:10
**separately** [1] - 34:21
**September** [2] - 14:18, 19:14

**serve** [3] - 27:23, 35:13, 35:21
**set** [2] - 16:23, 18:13
**sets** [1] - 7:6
**seven** [1] - 7:6
**several** [3] - 7:5, 7:11, 17:4
**sheet** [46] - 4:18, 4:19, 5:1, 5:5, 6:25, 7:3, 7:7, 7:10, 7:14, 9:5, 9:6, 11:11, 13:25, 14:15, 14:20, 14:21, 16:4, 16:12, 16:22, 17:17, 18:12, 19:11, 24:24, 25:4, 25:12, 25:19, 27:19, 29:1, 29:4, 29:21, 30:15, 31:23, 32:4, 32:23, 33:13, 35:9, 37:15, 38:17, 39:2, 41:24, 43:24, 44:15
**sheets** [6] - 3:7, 7:20, 26:14, 27:20, 33:14, 35:5
**short** [1] - 4:3
**show** [3] - 3:5, 24:19, 25:6
**shows** [1] - 27:15
**side** [4] - 5:4, 39:18, 39:22, 41:9
**significant** [2] - 7:9, 42:7
**similar** [2] - 4:6, 17:15
**simple** [4] - 9:20, 12:10, 35:15, 39:20
**simply** [13] - 3:15, 7:14, 9:13, 16:1, 16:4, 29:11, 38:22, 38:25, 39:10, 40:5, 41:15, 43:1
**situation** [4] - 16:8, 16:10, 18:5, 18:9
**SMITH** [1] - 2:15
**SMO** [1] - 22:23
**so..** [1] - 47:5
**solely** [1] - 22:24
**someday** [1] - 27:3
**sometimes** [1] - 48:6
**somewhere** [1] - 19:19
**sort** [3] - 5:14, 43:12, 46:2
**sounds** [2] - 26:9, 26:10
**speaking** [4] - 10:12, 28:2, 30:18, 45:22
**Special** [3] - 3:17, 24:4, 24:8
**SPECIAL** [61] - 1:10, 3:1, 3:3, 3:13, 3:21,

3:23, 5:3, 5:10, 5:16, 6:7, 6:14, 6:20, 8:5, 8:10, 9:18, 11:8, 12:4, 15:4, 16:13, 16:24, 17:1, 17:6, 17:22, 18:19, 20:1, 20:16, 23:6, 23:24, 24:2, 24:17, 25:14, 26:9, 26:17, 27:5, 28:8, 29:5, 30:4, 31:1, 31:9, 32:10, 33:6, 33:9, 34:4, 34:16, 34:18, 34:22, 37:24, 38:24, 39:7, 40:9, 41:19, 42:15, 43:15, 44:5, 44:17, 45:14, 46:20, 46:25, 47:6, 47:24, 48:5
**specific** [9] - 5:7, 5:13, 9:9, 11:12, 11:17, 12:2, 15:13, 27:13, 31:15
**specifically** [2] - 41:25, 44:22
**stage** [11] - 9:13, 16:23, 17:18, 18:12, 18:13, 25:4, 29:25, 38:22, 42:12, 43:24
**standardized** [1] - 6:25
**standing** [3] - 43:5, 43:6, 43:9
**start** [1] - 3:14
**started** [1] - 3:3
**state** [3] - 16:1, 28:20, 37:9
**statement** [8] - 13:18, 13:21, 14:1, 14:12, 22:9, 27:2, 34:21, 35:16
**statements** [1] - 42:1
**states** [1] - 36:18
**STATES** [1] - 1:1
**statute** [2] - 35:20, 37:9
**statutes** [1] - 36:24
**stenography** [1] - 1:23
**STEVEN** [1] - 2:3
**stick** [1] - 10:4
**still** [4] - 8:5, 8:12, 27:23, 39:8
**stipulation** [1] - 12:13
**stop** [1] - 43:2
**story** [1] - 28:2
**straightforward** [2] - 25:8, 28:25
**Street** [1] - 2:8
**Streets** [1] - 1:6
**study** [1] - 33:11

**stuff** [4] - 6:4, 18:14, 36:25, 38:16
**subheading** [1] - 12:8
**subject** [1] - 44:25
**submission** [2] - 5:22, 6:2
**submit** [1] - 14:2
**subpoints** [1] - 16:21
**subsets** [1] - 17:2
**substance** [1] - 31:7
**substantiality** [2] - 22:14, 22:15
**substantive** [1] - 14:20
**success** [1] - 25:13
**successfully** [1] - 40:24
**sued** [1] - 4:20
**sufficient** [1] - 24:19
**suggest** [2] - 23:1, 37:14
**suggested** [1] - 41:6
**Suite** [1] - 1:17, 2:3, 2:8, 2:11
**summary** [13] - 13:13, 13:14, 13:17, 13:22, 14:2, 14:3, 15:19, 22:2, 22:12, 22:18, 36:16, 37:6, 38:19
**summer** [4] - 4:13, 5:2, 12:25, 25:24
**supplement** [3] - 16:2, 18:10, 19:18
**supplemented** [1] - 19:23
**supplier** [2] - 36:22, 37:3
**suppliers** [1] - 36:17
**support** [7] - 13:21, 14:2, 14:10, 26:7, 35:16, 39:14, 39:16
**supports** [1] - 13:19
**supposed** [2] - 16:10, 20:7
**surprise** [1] - 37:18
**sympathetic** [1] - 41:5
**system** [1] - 25:25

## T

**tasked** [1] - 22:7
**Teams** [3] - 1:4, 3:1, 3:4
**technical** [1] - 4:1
**technically** [1] - 6:9
**tedious** [1] - 8:10
**tend** [1] - 37:21
**term** [1] - 13:9
**terms** [2] - 30:19, 38:12
**test** [2] - 18:11, 22:13

**Teva** [2] - 2:4, 2:5
**Texas** [2] - 2:12, 13:2
**the Court** [22] - 13:21, 22:9, 22:11, 22:13, 23:11, 23:14, 23:20, 26:14, 27:24, 31:17, 31:22, 32:2, 35:4, 35:6, 35:9, 35:11, 35:23, 36:3, 36:17, 41:6, 41:10, 47:15
**therefore** [1] - 21:23
**they've** [3] - 7:9, 35:5, 45:9
**thinks** [1] - 43:9
**Third** [1] - 22:7
**third** [11] - 4:20, 21:5, 24:20, 25:2, 25:21, 26:2, 26:5, 26:11, 26:24, 27:15, 28:20
**third-party** [10] - 4:20, 24:20, 25:2, 25:21, 26:2, 26:5, 26:11, 26:24, 27:15, 28:20
**THOMAS** [2] - 1:9, 3:2
**three** [2] - 20:4, 22:13
**time-consuming** [1] - 8:11
**today** [3] - 47:10, 48:6, 48:8
**together** [2] - 30:3, 36:25
**totality** [3] - 20:25, 21:11, 21:12
**towards** [1] - 42:10
**TPP** [9] - 5:15, 9:5, 11:11, 20:2, 21:17, 21:18, 21:25, 23:3, 24:24
**TPP's** [1] - 9:5
**TPPs** [34] - 3:12, 6:23, 7:8, 7:15, 7:23, 8:2, 9:9, 9:14, 10:6, 11:15, 15:10, 15:25, 16:16, 16:21, 17:9, 17:21, 20:6, 20:8, 22:18, 22:22, 24:5, 24:9, 25:1, 25:5, 28:22, 30:19, 32:8, 32:20, 34:6, 34:15, 36:3, 37:9, 48:3
**TPPs'** [2] - 9:1, 42:24
**track** [1] - 31:11
**transaction** [1] - 40:23
**transcript** [2] - 1:23, 48:13
**transcription** [1] - 1:24
**TRAURIG** [1] - 2:2
**treading** [1] - 41:16, 41:22

**trick** [1] - 11:2
**triple** [1] - 45:2
**trouble** [1] - 44:8
**try** [2] - 41:16, 42:22
**trying** [11] - 14:14, 19:11, 19:12, 19:13, 19:15, 31:11, 34:2, 35:5, 36:12, 43:4, 43:5
**turns** [1] - 44:9
**two** [4] - 5:6, 22:14, 23:1, 42:13
**type** [2] - 34:14, 38:16
**typical** [1] - 25:11
**typically** [2] - 18:6, 25:7

### U

**U.S** [1] - 1:6
**UE** [1] - 20:24
**ULMER** [1] - 2:7
**ultimately** [1] - 14:1
**unable** [1] - 17:20
**unconscionable** [1] - 29:17
**under** [11] - 11:13, 11:24, 12:8, 14:7, 21:6, 21:7, 24:15, 37:4, 37:7, 39:19
**underlie** [2] - 28:5, 28:6
**underlying** [1] - 10:25
**unfair** [5] - 13:8, 13:23, 21:8, 21:17, 35:19
**unfairness** [3] - 22:8, 22:10, 22:13
**unheard** [1] - 41:13
**UNITED** [1] - 1:1
**unjust** [14] - 4:7, 4:14, 4:17, 10:2, 12:22, 12:25, 20:6, 20:8, 21:4, 21:14, 21:15, 22:25, 24:12, 35:18
**unjustly** [1] - 24:7
**unless** [3] - 36:23, 47:12, 48:3
**unlike** [1] - 28:12
**unnecessarily** [1] - 33:18
**up** [5] - 3:5, 23:16, 31:19, 35:23, 36:15
**US** [1] - 2:10
**USA** [1] - 2:5
**uses** [1] - 21:16

### V

**vacation** [1] - 47:2
**VALSARTAN** [1] - 1:3

**valsartan** [20] - 4:12, 4:14, 4:23, 5:2, 6:13, 7:4, 7:7, 7:25, 12:13, 12:17, 13:14, 14:17, 16:22, 19:12, 20:7, 20:15, 22:3, 22:12, 22:21, 25:13
**value** [3] - 20:8, 20:9, 38:14
**VANASKIE** [61] - 1:9, 3:2, 3:3, 3:13, 3:21, 3:23, 5:3, 5:10, 5:16, 6:7, 6:14, 6:20, 8:5, 8:10, 9:18, 11:8, 12:4, 15:4, 16:13, 16:24, 17:1, 17:6, 17:22, 18:19, 20:1, 20:16, 23:6, 23:24, 24:2, 24:17, 25:14, 26:9, 26:17, 27:5, 28:8, 29:5, 30:4, 31:1, 31:9, 32:10, 33:6, 33:9, 34:4, 34:16, 34:18, 34:22, 37:24, 38:24, 39:7, 40:9, 41:19, 42:15, 43:15, 44:5, 44:17, 45:14, 46:20, 46:25, 47:6, 47:24, 48:5
**VCDs** [2] - 24:6, 24:9
**vehicle** [2] - 31:25, 42:22
**verbatim** [1] - 45:3
**via** [7] - 1:4, 3:1, 14:15, 18:25, 19:9, 27:18, 35:12
**view** [3] - 25:3, 38:22, 42:10
**Vine** [1] - 2:8
**violation** [1] - 35:20
**voluminous** [1] - 14:16

### W

**wait** [1] - 14:3
**waive** [1] - 33:10
**waiver** [3] - 14:24, 19:15, 30:5
**wants** [3] - 27:24, 32:2, 41:7
**warranty** [1] - 10:7
**waste** [1] - 23:16
**wasting** [1] - 18:6
**water** [4] - 23:18, 24:15, 41:16, 41:22
**week** [1] - 6:2
**weigh** [2] - 38:6, 47:13
**whatnot** [1] - 38:20
**whole** [4] - 12:6, 25:24, 25:25, 47:14

**wholesaler** [32] - 4:7, 4:22, 5:3, 5:8, 5:11, 8:22, 9:11, 10:3, 10:4, 11:24, 12:12, 15:7, 20:10, 21:18, 21:20, 23:2, 24:21, 28:24, 31:14, 31:15, 32:7, 36:20, 38:13, 38:15, 40:11, 40:23, 45:22, 46:5, 47:11, 47:17, 47:20
**Wholesaler** [2] - 2:9, 8:19
**wholesalers** [15] - 5:14, 6:24, 7:10, 12:3, 12:20, 13:3, 21:23, 24:7, 25:1, 25:20, 26:1, 29:22, 30:20, 36:13, 45:5
**wholesalers'** [2] - 4:11, 12:19
**willing** [3] - 18:23, 19:8, 35:23
**wise** [1] - 37:20
**wish** [1] - 29:23
**word** [3] - 21:16, 22:8, 46:13
**wording** [1] - 46:17
**works** [2] - 25:24, 25:25
**worry** [1] - 3:5
**worthless** [1] - 24:6
**write** [1] - 19:5
**writing** [1] - 11:21
**wrongdoing** [4] - 8:21, 9:10, 10:9, 13:2, 15:6
**wrongful** [1] - 13:6
**wrote** [1] - 46:17
**Wyndham** [1] - 22:7

### Y

**year** [1] - 4:5
**years** [1] - 34:10
**yellow** [1] - 6:12
**yesterday** [4] - 5:21, 5:22, 6:10, 8:15

### Z

**ZALMAN** [1] - 1:17
**Zalman** [4] - 20:2, 39:3, 45:16, 45:19
**zero** [1] - 40:17