**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

IN RE:  VALSARTAN PRODUCTS
LIABILITY LITIGATION

_____

```
                               :  CIVIL ACTION NUMBER:
                               :  19-md-02875
                               :
                               :
                               :  STATUS CONFERENCE
                               :
```

          Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
          Camden, New Jersey 08101
          February 1, 2024
          Commencing at 1:07 p.m.

**B E F O R E:**          **THE HONORABLE ROBERT B. KUGLER,**
                         **UNITED STATES DISTRICT JUDGE**

                         **THOMAS I. VANASKIE (RET.)**
                         **SPECIAL MASTER**

**A P P E A R A N C E S:**

          MAZIE SLATER KATZ & FREEMAN, LLC
          BY:  ADAM M. SLATER, ESQUIRE
          BY:  CHRISTOPHER GEDDIS, ESQUIRE
          103 Eisenhower Parkway
          Roseland, New Jersey  07068
          For the Plaintiffs


          KANNER & WHITELEY, LLC
          BY:  CONLEE S. WHITELEY, ESQUIRE
          BY:  DAVID J. STANOCH, ESQUIRE
          701 Camp Street
          New Orleans, Louisiana  70130
          For the Plaintiffs




               Sharon Ricci, CRR, RMR, Official Court Reporter
                     Sharon.ricci.usdcnj@gmail.com
                          (267) 249-8780

       Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.

1

**A P P E A R A N C E S (Continued):**

2

3

4      KIRTLAND & PACKARD LLP
       BY:  BEHRAM V. PAREKH, ESQUIRE
       1638 South Pacific Coast Highway
5      Redondo Beach, California  90277
       For the Plaintiffs

6

7      GREENBERG TRAURIG LLP
       BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
8      BY:  STEVEN M. HARKINS, ESQUIRE
       3333 Piedmont Road, NE, Suite 2500
9      Atlanta, Georgia  30305

10

       BY:  GREGORY E. OSTFELD,  ESQUIRE
11     77 West Wacker Drive, Suite 3100
       Chicago, Illinois 60601
12     For the Defendants Teva Pharmaceutical Industries Ltd.,
       Teva Pharmaceuticals USA, Inc., Actavis LLC,
13     and Actavis Pharma, Inc.

14

       HILL WALLACK, LLP
15     BY:  ERIC I. ABRAHAM, ESQUIRE
       21 Roszel Road
16     Princeton, New Jersey 08540
       For the Defendants Hetero Drugs and Hetero Labs

17

18     ULMER & BERNE LLP
       BY:  JEFFREY D. GEOPPINGER, ESQUIRE
19     600 Vine Street, Suite 2800
       Cincinnati, Ohio 445202
20     For the Wholesaler Defendants and AmerisourceBergen

21

       BY:  KARA KAPKE, ESQUIRE
22     11 S. Meridian Street
       Indianapolis, Indiana 46204
23     For the Retailer Defendants and CVS Pharmacy, Inc., and
       Rite Aid Corporation

24

25

1
2        **A P P E A R A N C E S (Continued):**

3
4        HUNCH BLACKWELL LLP
         BY:  ABRAHAM JAMES SPUNG, ESQUIRE
5        1801 Wewatta Streeet
         Suite 1000
6        Denver, Colorado 80202
         For the Defendants Cigna Corporation, Express Scripts
7        Holding Company, and Express Scripts, Inc.

8
9        **ALSO PRESENT:**

10       LORETTA SMITH, ESQUIRE
         Judicial Law Clerk to The Honorable Robert B. Kugler
11
         LARRY MACSTRAVIC, Courtroom Deputy
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings held via Teams conference before The

2   Honorable Robert B. Kugler, United States District Judge, and

3   Special Master Thoms I. Vanaskie at 1:07 p.m.)

4          (Discussion held off the record.)

5          JUDGE KUGLER:  All right.  We have -- the defense has

6   the orders to show cause apparently.  Who's going to speak on

7   that?

8          MR. HARKINS:  Good afternoon, Your Honor.  This is

9   Steve Harkins from Greenberg Traurig and the joint defense

10  group.  I'll be handling those.

11         JUDGE KUGLER:  Mr. Harkins, how are you?  Apparently

12  the only one that's unresolved is the Samocha, S-A-M-O-C-H-A,

13  case?

14         MR. HARKINS:  That's correct, Your Honor.  The other

15  five can be dismissed or withdrawn, and we are asking for an

16  extension of the Samocha matter to the next case management

17  conference.

18         JUDGE KUGLER:  Okay.  The following cases:  Benjamin

19  Andrews; Ocie Mae Haughton, H-A-U-G-H-T-O-N; Robert Kennedy,

20  Tom Davidson; Stelio, S-T-E-L-I-O, Mantalis, M-A-N-T-A-L-I-S,

21  are all orders to show cause are dismissed.

22         Samocha matter will be carried to the next one.

23         Apparently, Mr. Harkins, you have no request for

24  orders to show cause for the next return date; is that correct?

25         MR. HARKINS:  That's correct, we have no new requests

 1    for this conference.

 2            JUDGE KUGLER:  So you have ten you want to relist,

 3    though.  Any updates on those?

 4            MR. HARKINS:  One update.  Number 10 on our list,

 5    Bobby Williams, there's been a PFS filed, so we'll remove that

 6    and evaluate it through the course.

 7            The remaining nine, we would simply carry forward and

 8    relist for the next case management conference.

 9            JUDGE KUGLER:  All right.  That's Oswald Anfossi,

10    A-N-F-O-S-S-I; Susan Schaefer; Regina Hill; Anthony Ivers;

11    Jerry Anderson; Mark McNall, M-C-N-A-L-L; Nathaniel Green;

12    Soraya Svoronos, S-V-O-R-O-N-O-S; and Paul Marchionda,

13    M-A-R-C-H-I-O-N-D-A.  They will be relisted at the next

14    meeting.

15            Any other matters of this nature to be brought to my

16    attention, Mr. Harkins?

17            MR. HARKINS:  Nothing from defense.  Thank you, Your

18    Honor.

19            JUDGE KUGLER:  I thank you.  All right.

20            Mr. Slater, you raised the issue of my reconsideration

21    and vacation of the expert report in this matter.  Let me just

22    explain -- in your footnote you point out accurately that you

23    had not attached that, Anderson's earlier class certification

24    report, to this pending motion.  That's correct, you did not.

25    It's completely my fault.  I just grabbed the wrong one when I

1   was doing it.  And, you know, the defense counsel pointed that

2   out, and they're correct about that, and I apologize for that.

3   But, you know, when I make a mistake, we try to fix it as soon

4   as we can.

5           But apparently, Mr. Slater, you said you wanted to

6   talk to defense counsel more about that?

7           MR. SLATER:  Your Honor, I'm going to defer to David

8   Stanoch.  Mr. Stanoch is handling this specific part of the

9   case.  Not to jump out of the way, but Mr. Stanoch is fully

10  familiar with it and ready to address it with Your Honor.

11          MR. STANOCH:  Good afternoon, Your Honor.

12          JUDGE KUGLER:  Do you want to talk to defense counsel

13  more about it?  You indicate that in the letter, that that

14  might be worthwhile.  It's up to you.

15          MR. STANOCH:  Yes, Your Honor.  We didn't want to

16  clutter the docket with more motion practice about this, which

17  was clearly just a clerical oversight, as Your Honor just

18  described.  We're happy to talk with defendants.  Our issue

19  here is Your Honor's rationale in the original *Daubert* ruling

20  would apply, we think, to the correct liability report.  And

21  Your Honor precluded everything except 14 paragraphs from the

22  incorrect class report, but now defendants are, because of --

23  I'm not blaming anyone -- because of the confusion, they're now

24  in a better position with the amended order, because there's

25  paragraphs that are very similar that you had excluded the

1  first time, which is almost identical in both reports, but now

2  they're not excluded.

3       And in Teva's motion, they say we think you should

4  exclude opinion paragraphs, you know, blah, blah, and blah, but

5  now they're not.  So we don't want to kick up a lot of dust

6  here, Judge, but Teva is in a better position now sort of

7  through their own mistake than they were when your -- than when

8  they asked for clarification or when your order was doing the

9  ruling.

10       So I'm happy to talk to them, but Teva's response is

11 they think the prior order is vacated completely, there's

12 nothing to talk about.  If that's incorrect, I'm happy to talk

13 to them first.

14       JUDGE KUGLER:  Well, Mr. Stanoch, it wasn't their

15 mistake, it was mine.  And I certainly didn't mean to put

16 anybody in a better position.

17       Talk to them, and if they can't work it out, then just

18 send me a letter and we'll get this straightened out.  It's not

19 that big of a deal.  Okay?

20       MR. STANOCH:  Agreed, Judge.  Thank you.

21       JUDGE KUGLER:  Another one that it looks like you want

22 me to get involved in is next trial.  Mr. Slater raises that in

23 the case.

24       There's a whole lot -- a whole lot of considerations

25 need to go into this next trial issue.  Number one, the most

1    important is jurisdiction.  I don't know what jurisdiction I

2    have over other cases.  You know, we have this direct file

3    order in the case, but no one waived any venue objections.  And

4    at the very beginning of this, I suggested that when the day

5    comes, and it is coming when this case gets referred back to

6    the panel for redistribution back to the various districts,

7    we're going to have to make a decision as to where these direct

8    file cases that don't belong in New Jersey have to go.

9         Now, some cases undoubtably will belong in New Jersey,

10   but that doesn't mean that I'm going to have them.  If there

11   are cases that remain in New Jersey, we have vicinage rules in

12   our local rules as to which of the three courthouses they're

13   assigned to and they'll be assigned to other judges randomly,

14   so I'm not so sure these are going to be my cases anyway if

15   they remain in Jersey.

16        So perhaps the time is approaching, if it isn't

17   already here, when you need to discuss among yourselves where

18   these cases are going to go back to, particularly these direct

19   file cases for which no one waived their venue or jurisdiction

20   objections.

21        So maybe you should spend some time thinking about

22   that among yourselves.  But I think otherwise -- now, if you

23   want to talk about trials, that's fine.  I just -- I can't tell

24   you with any confidence that it's going to be before me at the

25   appropriate time.  So that's really all I have to say about

1    next trial.

2              But if you want to speak, Mr. Slater, or anyone else

3    wants to speak about next trial, that's fine.

4              MR. SLATER:  No, Your Honor.  Your guidance is very

5    clear.  We believe that the next step would be to start to meet

6    and confer with the defense and see if there's any common

7    ground, and if not, maybe to start, at least start a discussion

8    with Your Honor and methodically talk through these issues that

9    Your Honor is raising, as well as other considerations, and

10   figure out the best way forward.

11             Our hope, obviously, is just that we have the momentum

12   moving forward now, and we're hoping to be able to keep that

13   momentum going from this trial to next and try to cover the

14   other parties.  But we take, obviously, to heart what you just

15   said and we understand it, and I think that will be part of our

16   discussion with the defense.

17             JUDGE KUGLER:  All right.  Anybody on the defense side

18   want to be heard on that issue?

19             MS. LOCKARD:  Your Honor, it's Victoria Lockard for

20   the defendants.  And we're happy to meet and confer.  As you

21   saw in our papers on this, I mean, we do believe that this

22   issue is premature.  The parties -- we just heard about this on

23   the defense side on Monday.

24             So, you know, we're -- at this point we're very

25   focused, at least the TPP defendants, on getting the case ready

1    to be tried on March 18th.  We think that's what our focus

2    should be on.  That's the next step.

3            And, you know, I think it's premature to start setting

4    sequential trials, but I do agree there needs to be a

5    discussion about what will happen to the direct file cases and

6    what the remand picture will look like.  So we're, of course,

7    happy to talk with plaintiffs about that.

8            JUDGE KUGLER:  Good.  Okay.

9            In limine motions, you are working on a date for that,

10   which apparently would provide all the papers to be filed by

11   February 26th in this matter.

12           Any idea how many motions you're contemplating?

13           MR. SLATER:  It's still a little bit of a moving

14   target, Your Honor.  There's clearly -- and I'm afraid to call

15   them all motions because a lot of them are just issues that

16   kind of dovetail with one another.  We've reached agreement on

17   a bunch and we talked through some stipulations that we believe

18   we can work through.

19           I'm hesitant to say a number.  It's not two or three,

20   it's not ten.  I would think it's probably -- I would say 20 or

21   30 issues.  There may be some subparts to them.  And I think a

22   lot of them, frankly, we said in our papers, can be dealt with

23   in less than a page.  So they're not -- we don't anticipate

24   hundreds of pages of briefing.

25           We know the Court doesn't want it, nor does the Court

1    need that, especially with the familiarity that the Court has

2    with the case and especially in light of all the briefing that

3    Your Honor now has available to you.

4         I don't want to dodge the question out of fear of

5    saying too many, but I think that we're probably talking about

6    20 or 30 issues that you're going to have to look at.  And I

7    think that what we've done is to the extent that we're reaching

8    agreement -- and I know that both sides are still going to work

9    on this -- and I can tell Your Honor we're starting to move out

10   of the hedging and holding things in our back pocket phase and

11   things are starting to really be put on the table, which is

12   really helpful, and I think we're still -- there's a few issues

13   where we're getting close to agreeing on a major decision where

14   we can say, okay, we can stipulate to this, but there's things

15   on the edges where one side or the other says we still want to

16   be able to do that.

17        And we're really trying to work through -- my hope is

18   to stipulate to the major issue and preserve the -- what I'll

19   call the edge issues, to say this -- we've agreed on this, but

20   either the plaintiffs or defendants, whoever it is, still

21   believes this should be admissible so it could be a much more

22   narrow dispute.

23        And I think that there's a lot of those -- a lot of

24   the disputed issues are going to fall into that category where

25   we're going to reach some agreements that are going to be more

1    general, but there's going to be some specifics Your Honor will

2    have to hit.  I'm hesitant to give examples right now just

3    because the negotiations are ongoing and we're actually getting

4    ready to trade language on proposed stipulations on a bunch of

5    the motions.

6         But I really am optimistic that even where we haven't

7    reached agreement yet on some issues, that the talks that we're

8    going to have on our own separate sides, going back to

9    testimony that one side or the other is saying, well, look at

10   this or look at that, is going to be helpful.  And I think that

11   we'll probably agree on more than you might have expected, but

12   not everything, obviously.

13        JUDGE KUGLER:  Well, look, just remember -- and I've

14   said this before because you may be disappointed -- many in

15   limine motions are impossible to decide before trial because

16   you don't have the context.

17        So historically I have denied without prejudice many

18   in limine motions in other cases, just waiting and pending to

19   see what the evidence is going to be on it.  So I don't want

20   anybody disappointed if that's what happens, but it's a good

21   possibility that's going to happen.  But we'll wait and see

22   what you submit and go from there.

23        MR. SLATER:  And I can say, Your Honor, I think both

24   sides have been cognizant of that.  Your name has come up in

25   our discussions a few times as to what we believe your

1  expectations are going to be.  And what we're trying to do is

2  -- I think both sides are trying to do this and have succeeded

3  to a large extent, and the conversations we've had have been

4  really good in focusing the issues down to things that are a

5  little bit more concrete.  Because I think both sides are

6  cognizant of what you told us and what you just repeated to us,

7  and both sides have an interest, I think, in trying to make the

8  disputes as concrete as possible so that there's less

9  uncertainty going into trial, understanding your predilection

10  not to deal with something that's ambiguous.

11       So I think we're both trying to work to get really

12  specific so that you'll feel hopefully more comfortable at

13  least resolving more of the issues, rather than having

14  uncertainty that will impede opening statements and some of the

15  questioning of the witnesses and having to not really know

16  where it's going.

17       But we are very cognizant, you've told us that, so

18  we're trying to work with that front and center.

19       JUDGE KUGLER:  Okay.  Is there anything else that you

20  need me to -- to talk to me about?  Otherwise, I'll turn it

21  over -- I think these other issues are for Judge Vanaskie for

22  you to talk about.

23       MR. OSTFELD:  Judge, this is Greg Ostfeld for the

24  defendants.

25       Just one question pertaining to the motion in limine.

1    I don't think we've actually set a final pretrial date, which

2    is where I would anticipate you might take argument on the

3    motions in limine, among other issues.

4           Do we want to set that date along with whenever we set

5    the next case management conference date?

6           JUDGE KUGLER:  Where are you in preparation of the

7    final pretrial order?

8           MR. SLATER:  The truth is, far from being done.

9    That's the honest truth.

10          JUDGE KUGLER:  What?

11          MR. SLATER:  We're far --

12          JUDGE KUGLER:  The plaintiff needs to start the

13   process.

14          So where are you, Mr. Slater, with that process?

15          MR. SLATER:  I would say that as far as listing

16   witnesses, we're working on that.  Exhibit lists are very far

17   along, and we actually discussed exchange of exhibit list and

18   also segments of the exhibit list the other day, so we're going

19   to start exchanging that probably piece by piece.

20          Stipulated issues we've started to talk about with the

21   defense.  And obviously, the flip side being the contested

22   issues.  I would say we're probably going to start rolling

23   things out that are in the pretrial order exclusively probably

24   by the beginning of the week next week, and then we'll start to

25   really fill in the rest of the order in earnest.

1          To be honest with you, the summary judgement briefing

2    has enveloped a lot of time for a good part of our team that

3    would have been doing the same at the same time.  So I would

4    say at least a week to two weeks before the defense is going to

5    have a really fulsome picture of everything from us.

6          But understanding what Your Honor said, we've had

7    separate talks with the defense and I'm not sure that defense

8    is entirely committed to waiting for our entire pretrial

9    exchange.  I think that the way we've been working is to start

10   to exchange the parts of the order with one another and try to

11   make progress as we go so that it's not a question of us

12   dumping it on them and then putting it on them to get back to

13   us, although there's going to be some of that.

14         But we're really trying to work back and forth as much

15   as we can on the pieces of the order.

16         JUDGE KUGLER:  Okay.  Well, how about from the defense

17   side?  What are you up to regarding the pretrial order?

18         MR. OSTFELD:  Your Honor, as Mr. Slater said, we all

19   recognize this is a very large undertaking and we aren't

20   waiting for them to send us their stuff.  We're working on our

21   own exhibits, we're working on our own witness submissions, our

22   own jury instructions and trial brief, and I think we all

23   acknowledge -- and we've been speaking regularly and

24   collaborating well.  This is just a very large and significant

25   undertaking.

1        So, you know, we've at times exchanged sort of

2   optimistic prospects of when we might exchange things, and some

3   of them have worked and some of them have not.  But I think

4   it's fair to say that both sides are diligently working at this

5   and we're all doing our best.

6        And I would agree with Mr. Slater, we're probably a

7   ways off.  At the last case management conference, Your Honor

8   indicated that the pretrial order submissions would be expected

9   seven days before trial, and we're all very, very cognizant of

10  that deadline and we'll certainly hit that deadline.

11       I think kind of the question is, are things that we

12  need to be getting done in the interim or is there a hearing

13  that we're going to have in the interim on some of these

14  motions, like motions in limine, that would assist the Court

15  and may assist us in finalizing the final pretrial order.

16       JUDGE KUGLER:  Well, without seeing the motions, it's

17  really hard to tell you whether or not I need oral argument on

18  in limine motions anyway.  All right.

19       Well, you know what you need to do on the pretrial

20  order and we'll go from there.  And you're right, it is a

21  massive undertaking.  That's one of the things that sort of are

22  stuck in my craw, one of the things that makes federal

23  litigation so darn expensive is that we make you do those kinds

24  of things, but it is helpful to be able to look that we file,

25  to try the case -- difficult --

1          (Inaudible crosstalk.)

2          MR. OSTFELD:  Well, Your Honor -- I am sorry, Your

3     Honor, I didn't mean to interrupt.

4          On that point, I think there are two topics that we've

5     discussed with plaintiffs where we feel perhaps they would be

6     less helpful in the context of a jury trial, which is the trial

7     briefs and the statement of legal issues.  Or at least having

8     both of them.  So we -- that might be something where some

9     guidance from the Court might assist us.

10         In the context of a jury trial, what are you looking

11    for from us on the statement of legal issues and on the trial

12    briefs?

13         JUDGE KUGLER:  Trial briefs are to alert the Court to

14    what evidentiary disputes might come up.

15         Now, in limine motions usually, but not always, cover

16    just about all that ground.  But there might be some other

17    things that, you know, it's good to alert the Court that are

18    coming.

19         Legal issues really is going to be tied in with the

20    requested charge.  What do you want me to tell the jury about

21    this case?  What's the law that we're going to tell the jury

22    about this case?

23         I anticipate in this case it's going to be a pretty

24    long jury charge.  There's a lot of issues.  But that's really

25    what I'm looking for, to get a head start on those kinds of

1    issues.

2             MR. OSTFELD:  Thank you, Your Honor.  That's very

3    helpful.  I think that will save a lot of time and space if we

4    narrow those to those particular uses.

5             JUDGE KUGLER:  And so I'm not saying that if you don't

6    raise it in your trial brief, you can't raise it at trial.  I

7    mean, things happen.  You know, I mean, everybody knows that

8    once you start trial, all the planning you've done can go right

9    out the window because people say things that no one expects.

10   I get that.

11            But it is helpful for me to know before we start some

12   issues that may arise so I can be prepared for them.  Okay?

13            MR. OSTFELD:  Yes.

14            MR. SLATER:  Yes.

15            JUDGE KUGLER:  All right.  Anything else you want to

16   talk to me about before we talk to Judge Vanaskie?

17            MR. SLATER:  I don't think that the plaintiffs have

18   any other issues that are -- that need to be addressed today or

19   decided today.  I can update Your Honor to tell you on the

20   issue of the updates to indemnifications, et cetera, we've been

21   getting responses from a number of the defendants.  Defense

22   groups have said they're willing to do it, they're going do it.

23   So there's really no issue right now because it seems that

24   everybody's willing to do so.

25            So we're hoping that we're going to get those updates

1   shortly.  Some of them we already have.  And then if there's

2   any issues, we can let Your Honor know, but we obviously

3   thought it was important to know if there's been any changes

4   because the subjects of indemnification has been a subject that

5   we've been dealing with more recently, so we thought it would

6   be good to know where everybody stands currently.

7            JUDGE KUGLER:  Sounds like that's under control for

8   the time being.

9            MR. SLATER:  Yes, looks that way.

10           JUDGE KUGLER:  All right.

11           Judge Vanaskie, anything you want to say?  Anything

12  you need to get involved with?

13           JUDGE VANASKIE:  I thought there were two issues left

14  to address to me.  Maybe I'm wrong on that.

15           One deals with the status of the wholesalers' CMO 32

16  productions and the other was whether you need to leave to move

17  to compel production of the retailer sales data.  I'm not sure

18  where either issue stands now.

19           MR. STANOCH:  Your Honor, this is David Stanoch for

20  the plaintiffs.  I can tackle the status of wholesalers' CMO 32

21  productions.

22           JUDGE VANASKIE:  Okay.

23           MR. STANOCH:  This simply relates to the cost and

24  profits data, and we just -- it's been quite some time and we

25  laid out in our letter -- we're not beating a drum here, but we

1  also don't want things to fall through the cracks.  And we're

2  not pointing fingers at wholesalers, but we think that given

3  the passage of time, even with the work that's purportedly

4  required to prepare the data, we think we might benefit from

5  some deadline for production with input from wholesalers so we

6  at least have a target and know where we're going and where

7  we're heading and what the timeline might be.

8            JUDGE VANASKIE:  All right.

9            Mr. Geoppinger, do you want to address that issue?

10           MR. GEOPPINGER:  Yes.  Good afternoon, Your Honor.

11           JUDGE VANASKIE:  Good afternoon.

12           MR. GEOPPINGER:  As we discussed previously when we

13  talked about this with the plaintiffs and the Court, you know,

14  there's not data on profits that's kept in the ordinary course

15  of business by the wholesaler.  So what we discussed was a

16  proxy formula that everybody agreed would be something that

17  we'd attempt to put together instead and that it be ultimately

18  expert exercise.

19           The wholesalers have done the legwork on that, Your

20  Honor.  We're ready to sit down with the plaintiffs and -- as

21  we discussed before, sit down with them, talk about it, tell

22  them what our formulas are, explain them, and we can do so next

23  week.

24           JUDGE VANASKIE:  Mr. Stanoch?

25           MR. STANOCH:  We're happy to talk to them next week.

 1  We received that update, perhaps unsurprisingly, right before

 2  the CMC.  I would just be loathed to kick the can, Your Honor,

 3  and we talk to them and then we may not have anything close to

 4  a deadline.

 5          And I'm not pointing fingers again, Judge, but I'll

 6  just say, cost and profits, that's defendants' burden, not

 7  ours.  So we're certainly being very sensitive and

 8  accommodating here, we're not trying to be unreasonable.  We

 9  show revenues, they're going to want to show a lesser amount.

10  We understand that this is part of what they want to do, so --

11  this is not just us pushing, this is for the good of both sides

12  trying to get this information fronted so it's out there and

13  there's no surprises.

14          So I'd still ask Your Honor to consider a deadline,

15  even a short deadline, for the production.  And if we need to

16  agree to move it back, I'm certainly open to it.  There's

17  certainly plenty of folks on my side who have a lot coming up

18  in the next few weeks, anyway.

19          JUDGE VANASKIE:  Why don't you meet and confer next

20  week and get a letter report to me by next Friday and see if

21  you can agree on a deadline or at least exchange competing

22  proposals or schedules, and we'll go from there.  And then

23  we'll move forward.

24          MR. STANOCH:  Very good, Your Honor.

25          MR. GEOPPINGER:  Thank you, Your Honor.

1          JUDGE VANASKIE:  The other item I had, and you can

2    correct me if I'm wrong, but that is a motion to compel

3    retailer sales data.

4          And who's addressing this issue?

5          MR. PAREKH:  Behram Parekh, Your Honor, for plaintiff.

6          I think there are two issues here.  One is, you know,

7    we basically want the same data that we got for the Valsartan

8    litigation in terms of class member data, retailer sales data

9    and things like that, and it's our understanding that the

10   defendants would like a court order requiring them to produce

11   that data because it includes, you know, personal health

12   information.

13         The second issue is that -- and I'll let Ms. Kapke

14   speak for herself on this, but our understanding of the issue

15   is that some of the retailers are not -- even though they're

16   named in the class action master complaint, don't currently

17   have a specific individual class representative that

18   corresponds with that retailer's purchase, and so their

19   position is that they're not really a party and, therefore,

20   would need a third-party subpoena issued to them in order to

21   have any obligation to produce those records.

22         JUDGE VANASKIE:  Is it you, Ms. Kapke?

23         MS. KAPKE:  Yes, Your Honor.

24         JUDGE VANASKIE:  Am I pronouncing your name correctly?

25         MS. KAPKE:  It's Kapke.  You got it close enough.

1        JUDGE VANASKIE:  Sorry.

2        MS. KAPKE:  No, that's okay.

3        So there's two issues, as was said.  The first is that

4   plaintiffs are not exactly asking for the same data in the same

5   courses they did with respect to Valsartan.  They're asking for

6   everything now, before certification, before a settlement

7   class, before there's even been any discovery of class reps.

8        And so we don't think that -- we think there are a lot

9   of issues associated with that.  And, in particular, we think

10  that there are some issues under HIPAA and whether that's the

11  minimum necessary.  And so we would just like the opportunity

12  to brief that with respect to the producing PHI now.

13       I don't think it's appropriate to produce

14  precertification, especially because we could redact names.  We

15  had to repull data because we anonymized the first time.  I

16  think we could potentially redact instead of anonymize so we

17  could make the production after a potential certification more

18  easily.

19       But, again, I would suggest that we just brief that

20  issue to Your Honor down the road and potentially have a

21  hearing stating our objections, stating the law under HIPAA.  I

22  think all of us just want to be very, very cognizant of the

23  rules whenever it comes to producing PHI, particularly

24  precertification.  In Valsartan we did not produce any PHI

25  prior to certification.

1          The second issue is one that other counsel for

2    retailers may want to speak up and talk about, but again, I

3    would put this in the same category as maybe we need to brief

4    this, maybe we don't.  There are some retailers who are not in

5    these cases and I think that's a different posture than a

6    defendant who there is a class rep who has asserted claims

7    against that retailer defendant.

8          And so, you know, there may be room for negotiation.

9    I can't speak for the defendants that are in that position, but

10   I think what would, again, make sense is give us time to talk

11   to our clients, communicate plaintiffs' position on this to

12   them, see if there's something we could work out, see if, you

13   know, a subpoena is the appropriate route.  And plaintiffs can

14   give a subpoena and they will produce a subpoena.  I think

15   there are a number of different things.

16         But ultimately, we need a little bit more time to

17   confer with our clients on this and brief the issue before Your

18   Honor.

19         JUDGE VANASKIE:  How much more time do you need,

20   Ms. Kapke?

21         MS. KAPKE:  I think that's a good question.  I would

22   say we could brief this in a couple of weeks.  I don't think we

23   need a huge amount of time.

24         But I do -- I'm fine with a reasonable schedule to

25   brief this and, you know, have the opening briefs be due in a

1    couple of weeks.

2           JUDGE VANASKIE:  Mr. Spung, did you want to be heard

3    on this?

4           MR. SPUNG:  Yeah.  Good afternoon, Judge Vanaskie.

5    James Spung representing Pharmacy Defendant Express Scripts.

6    I'm probably one of those pharmacies that Ms. Kapke was

7    referring to that's a little bit differently situated perhaps

8    from some of her clients.

9           But the main point here is that I don't believe

10   there's anything we need to belabor with you today.  You know,

11   counsel for plaintiffs and we conferred recent -- just recently

12   as two days ago, and I think we're having a productive

13   discussion given all of our different positions.

14          I'm not even sure what it is we need to brief yet, so

15   what I would say is I think probably the next few weeks we

16   could meet and confer and continue to meet and confer.  And

17   then if needed, we could raise this at some point.  Two weeks

18   to brief something might be a little fast, speaking for myself

19   and probably there are other pharmacy defendants that are

20   similarly situated just because we just haven't advanced very

21   far with the -- but we understand the issue.

22          And to clarify, again, not to belabor, but to clarify,

23   it's not just that there's defendants that are named that

24   there's no class representative with a traceable injury to

25   them, there's also in these Losartan/Irbesartan cases,

1  Valsartan pharmacy defendants that aren't named at all.

2         And so we think that's just a different posture that

3  we need to work out.  And again, we're working it out.  I think

4  we are engaging and speaking first and making progress here,

5  but we just need some more time.

6         JUDGE VANASKIE:  Mr. Parekh?

7         MR. PAREKH:  Yeah.  We just wanted to raise this and

8  just more to flag this issue to Your Honor as it's coming down

9  the pike.  We didn't intend Your Honor to rule on anything

10 today, but so that you know that it will be coming and that

11 we're working out between us what we need to brief and what we

12 can submit.

13        JUDGE VANASKIE:  Would it be acceptable if I required

14 a letter report by February 16th in terms of where -- you know,

15 the status of this particular issue?

16        MR. PAREKH:  Sure.  I'm sure we could submit something

17 short that just says these are, you know, what we've agreed to

18 and this is the process.

19        JUDGE VANASKIE:  And what might still remain in

20 dispute, right?

21        MS. KAPKE:  I think that's a good idea.  We could

22 submit that letter, and if there are disputes following that,

23 we could set up a proposed briefing schedule in that letter.

24        JUDGE VANASKIE:  All right.  So we'll require a letter

25 report on this issue by February 16th.

1      That's all I understood was before me today.  Am I

2  missing anything?

3           (No response.)

4           JUDGE VANASKIE:  All right.  Judge Kugler, are you

5  still there?

6           JUDGE KUGLER:  I'm here.

7           JUDGE VANASKIE:  All right.  I think I'm finished.

8           JUDGE KUGLER:  Well, thank you, Judge Vanaskie.  We'll

9  pencil in March 13th to come to the courthouse.  We'll enter

10  the pretrial order.  We'll talk about any in limine motions we

11  can talk about that day and any remaining issues.  Okay?  We'll

12  start at 11:00 a.m. that day.

13           MR. SLATER:  Thank you.

14           JUDGE KUGLER:  All right.  Anything else from anybody?

15           (No response.)

16           JUDGE KUGLER:  Thank you.  Yeah, Go ahead.

17           MS. SMITH:  I'm sorry, Judge.  This is Loretta Smith.

18  Do you want to identify the next TMC date?

19           JUDGE KUGLER:  It will be that date, March 13th.

20  We'll do everything then.

21           MS. SMITH:  Okay.

22           JUDGE KUGLER:  Okay?

23           MS. SMITH:  Thanks.

24           JUDGE KUGLER:  I don't think there's going to be much

25  left to talk about at that point.

1          Thank you, everybody.

2              (Matter adjourned at 1:41 p.m.)

3

4          - - - - - - - - - - - - - - - -

5

6          I certify that the foregoing is a correct transcript

7    from the record of proceedings in the above-entitled matter.

8

9    /S/ Sharon Ricci, RMR, CRR
     Official Court Reporter
10

11   February 1, 2024
          Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25