# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875<br><br>Honorable Robert B. Kugler,<br>District Court Judge |

## TPP TRIAL DEFENDANTS'
## MOTION FOR DECERTIFICATION OF THE TPP TRIAL SUBCLASSES[1]

---

[1]     This Motion for Decertification concerns the claims designated in the Court's Case Management Order No. 32 (the "TPP Trial Claims"); specifically, the claims of Plaintiff MSP Recovery Claims, Series LLC, as class representative of TPP Breach of Express Warranty Subclass B, TPP Breach of Implied Warranty Subclass D, TPP Fraud Subclass C, and TPP State Consumer Protection Laws Subclass A (collectively, the "TPP Subclasses" or "TPP Trial Subclasses"), against the TPP Trial Defendants. (ECF 2343, 1-2.) Accordingly, this motion is limited to the TPP Trial Claims and Subclasses and is presented without waiver of any arguments to decertify the class as a whole or any other subclasses that may be later prepared for trial.

# **TABLE OF CONTENTS**

**Page**

BACKGROUND ..................................................................................................4

ARGUMENT......................................................................................................6

I.   LEGAL PREDOMINANCE CANNOT BE SATISFIED BECAUSE THE TPP TRIAL SUBCLASSES DO NOT MATCH THE COURT'S CHOICE-OF-LAW RULING. ....................................................................6

II.   THE TPP TRIAL SUBCLASSES ARE NOT ASCERTAINABLE. .............9

III.   DR. CONTI'S DAMAGES MODEL DOES NOT SATISFY *COMCAST*. ...............................................................................................10

    A.   Dr. Conti's Damages Model Incorrectly Focuses On The State In Which Prescriptions Were Dispensed. ...........................................12

    B.   Dr. Conti's Model Also Fails Because Her Theory That VCDs Had Zero Value Is Unsustainable, As She Effectively Admitted After Certification. ............................................................................13

IV.   INDIVIDUAL ACTIONS WOULD BE VASTLY SUPERIOR TO A CLASS TRIAL. ....................................................................................15

V.   MSP IS AN INADEQUATE AND ATYPICAL CLASS REPRESENTATIVE. ................................................................................20

    A.   MSP's History Of Litigation Misconduct And Its Financial Instability Make It Unfit To Serve As A Class Representative..........21

    B.   MSP Is Not Typical Because It Is Subject To A Unique Defense......................................................................................25

VI.   COMMON FACTUAL AND LEGAL ISSUES DO NOT PREDOMINATE OVER INDIVIDUAL ONES. ........................................26

    A.   Additional Factual Variations Preclude A Finding Of Predominance. .......................................................................26

i

1. Plaintiffs Cannot Present Classwide Proof To Satisfy All The Elements Of Their Claims.................................................26

2. Individualized Inquiries Will Be Required To Determine Whether The TPPs' Claims Are Timely..................................29

B. Legal Standards Vary Greatly Among The TPP Trial Subclass States, Further Defeating Predominance. ...........................................30

CONCLUSION .................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Agostino v. Quest Diagnostics Inc.*,
No. 04-4362 (SRC), 2010 WL 5392688 (D.N.J. Dec. 22, 2010) ................34

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) .................................................................19, 20

*American Seed Co. v. Monsanto Co.*,
271 F. App'x 138 (3d Cir. 2008) ..............................................27

*Arch v. American Tobacco Co.*,
175 F.R.D. 469 (E.D. Pa. 1997) ...............................................19

*Baker v. Stryker Corp.*,
770 F. App'x 12 (2d Cir. 2019) ................................................30

*Barnes v. American Tobacco Co.*,
176 F.R.D. 479 (E.D. Pa. 1997) .................................................6

*Benner v. Becton Dickinson & Co.*,
214 F.R.D. 157 (S.D.N.Y. 2003) ..............................................19

*Brazil v. Dole Packaged Foods, LLC*,
No. 12-CV-01831, 2014 WL 5794873 (N.D. Cal. Nov. 6, 2014) ...............11

*Brown v. Electrolux Home Products, Inc.*,
817 F.3d 1225 (11th Cir. 2016) ...............................................27

*Center City Periodontists, P.C. v. Dentsply International, Inc.*,
321 F.R.D. 193 (E.D. Pa. 2017) ...............................................15

*Cheatham v. ADT Corp.*,
161 F. Supp. 3d 815 (D. Ariz. 2016) .........................................34

*In re Citizens Bank, N.A.*,
    15 F.4th 607 (3d Cir. 2021).........................................................................19

*Cole v. General Motors Corp.*,
    484 F.3d 717 (5th Cir. 2007).........................................................................9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2012)...........................................................................2, 11, 31

*Danca v. Taunton Savings Bank*,
    429 N.E.2d 1129 (Mass. 1982) ...................................................................18

*Dockery v. Heretick*,
    No. 17-4114, 2021 WL 3929707 (E.D. Pa. Sept. 1, 2021)..........................29

*Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*,
    837 F. Supp. 2d 1145 (D. Idaho 2011) .......................................................32

*Driscoll v. Standard Hardware, Inc.*,
    785 N.W.2d 805 (Minn. Ct. App. 2010)......................................................33

*Fichera v. Mine Hill Corp.*,
    541 A.2d 472 (Conn. 1988)..........................................................................30

*Fly Fish Vermont, Inc. v. Chapin Hill Estates, Inc.*,
    996 A.2d 1167 (Vt. 2010) ............................................................................35

*In re Ford Motor Co. E-350 Van Products Liability Litigation*,
    No. 03-4558, 2010 WL 2813788 (D.N.J. July 9, 2010)...............................26

*Frayman v. Douglas Elliman Realty, LLC*,
    515 F. Supp. 3d 1262 (S.D. Fla. 2021) .......................................................33

*Freitas v. Cricket Wireless, LLC*,
    No. 19-07270, 2022 WL 3018061 (N.D. Cal. July 29, 2022) ......................11

*Georgine v. Amchem Products, Inc.*,
    83 F.3d 610 (3d Cir. 1996)...........................................................................20

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) .......................................................26

*Grandalski v. Quest Diagnostics Inc.*,
    767 F.3d 175 (3d Cir. 2014) ...........................................................9, 31, 34

*Gustafson v. Goodman Manufacturing Co.*,
    No. 13-cv-8274, 2014 WL 1669069 (D. Ariz. Apr. 28, 2014) ....................34

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020) .........................................................32

*In re Hydrogen Peroxide Antitrust Litigation*,
    552 F.3d 305 (3d Cir. 2008) .......................................................................14

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
    117 F. Supp. 2d 167 (D. Conn. 2000) .........................................................34

*Jacobsen v. Allstate Insurance Co.*,
    310 P.3d 452 (Mont. 2013) .........................................................................35

*Johnson v. GEICO Casualty Co.*,
    672 F. App'x 150 (3d Cir. 2016) ..................................................................6

*Jones v. Lubrizol Advanced Materials, Inc.*,
    559 F. Supp. 3d 569 (N.D. Ohio 2021) .......................................................27

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990) ..................................................................21

*Kaplan v. Volvo Penta of Americas, LLC*,
    No. 14-22226, 2014 WL 6908423 (S.D. Fla. Dec. 8, 2014) .......................32

*In re K-Dur Antitrust Litigation*,
    MDL No. 1419, 2008 WL 2660783 (D.N.J. Mar. 19, 2008)..........................7

*Krueger v. Wyeth, Inc.*,
    No. 03cv2496, 2008 WL 481956 (S.D. Cal. Feb. 19, 2008) .......................17

*Laugh Factory, Inc. v. Basciano*,
    608 F. Supp. 2d 549 (S.D.N.Y. 2009) ........................................................33

*In re LifeUSA Holding Inc.*,
    242 F.3d 136 (3d Cir. 2001) ......................................................................16

*Lisowski v. Henry Thayer Co.*,
    501 F. Supp. 3d 316 (W.D. Pa. 2020) ........................................................34

*Lloyd v. Drake University*,
    686 N.W.2d 225 (Iowa 2004) ....................................................................33

*Mainline Tractor & Equipment Co. v. Nutrite Corp.*,
    937 F. Supp. 1095 (D. Vt. 1996) ................................................................31

*MAO-MSO Recovery II, LLC v. Mercury General*,
    No. 17-02525, 2021 WL 3615905 (C.D. Cal. Aug. 12, 2021) ...............23, 25

*MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Insurance Co.*,
    994 F.3d 869 (7th Cir. 2021) .....................................................................22

*MAO-MSO Recovery II, LLC v. State Farm Mutual Automobile Insurance Co.*,
    No. 17-cv-1537, 2018 WL 6634324 (C.D. Ill. Dec. 19, 2018)....................22

*Marcus v. BMW of North America, LLC*,
    687 F.3d 583 (3d Cir. 2012) .......................................................................9

*Massey-Ferguson, Inc. v. Laird*,
    432 So. 2d 1259 (Ala. 1983) .....................................................................32

*McSwain v. Sunrise Medical Inc.*,
    689 F. Supp. 2d 835 (S.D. Miss. 2010) .....................................................32

*MSP Recovery Claims, Series LLC v. Abbott Laboratories*,
    No. 19-21607, 2023 WL 8718823 (D.N.J. Dec. 18, 2023) .........................25

*MSP Recovery Claims, Series LLC v. New York Central Mutual Fire Insurance Co.*,
No. 19-CV-00211, 2019 WL 4222654
(N.D.N.Y. Sept. 5, 2019) ................................................................ 4, 22, 25

*MSP Recovery Claims, Series LLC v. USAA General Indemnity Co.*,
No. 18-21626, 2018 WL 5112998 (S.D. Fla. Oct. 19, 2018) ...................... 22

*MSPA Claims 1, LLC v. Liberty Mutual Fire Insurance Co.*,
No. 17-22539, 2023 WL 7383260 (S.D. Fla. Nov. 7, 2023) ....................... 21

*Muccio v. Hunt*,
490 S.W.3d 310 (Ark. 2016) ....................................................... 33

*Nafar v. Hollywood Tanning Systems, Inc.*,
339 F. App'x 216 (3d Cir. 2009) .............................................. 17, 18

*In re Niaspan Antitrust Litigation*,
67 F.4th 118 (3d Cir. 2023) ...................................................... passim

*Owen v. General Motors Corp.*,
533 F.3d 913 (8th Cir. 2008) ....................................................... 34

*Pasternack v. Laboratory Corp. of America Holdings*,
59 N.E.3d 485 (N.Y. 2016) .......................................................... 27

*In re Paulsboro Derailment Cases*,
No. 13-784 (RBK/KMW) et al., 2014 WL 4162790
(D.N.J. Aug. 20, 2014) ............................................................. 17

*Payne v. FujiFilm U.S.A., Inc.*,
No. 07-385 (GEB), 2010 WL 2342388 (D.N.J. May 28, 2010) .................. 31

*In re Pharmacy Benefit Managers Antitrust Litigation*,
No. 06-1782 et al., 2017 WL 275398 (E.D. Pa. Jan. 18, 2017) ............. 11, 13

*Portugues-Santana v. Rekomdiv International*,
657 F.3d 56 (1st Cir. 2011) ....................................................... 33

*Reap v. Continental Casualty Co.*,
    199 F.R.D. 536 (D.N.J. 2001) ...................................................................20

*In re Rezulin Products Liability Litigation*,
    210 F.R.D. 61 (S.D.N.Y. 2002) ................................................................15

*In re Rezulin Products Liability Litigation*,
    392 F. Supp. 2d 597 (S.D.N.Y. 2005) ........................................................7

*In re Rhone-Poulenc Rorer Inc.*,
    51 F.3d 1293 (7th Cir. 1995) .............................................................16, 18

*Rocky Mountain Exploration, Inc. v. Davis Graham & Stupps LLP*,
    420 P.3d 223 (Colo. 2018) ........................................................................33

*In re Schering Plough Corp. ERISA Litigation*,
    589 F.3d 585 (3d Cir. 2009) ......................................................................25

*Tershakovec v. Ford Motor Co.*,
    79 F.4th 1299 (11th Cir. 2023) ..................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................31

*In re Wellbutrin XL Antitrust Litigation*,
    308 F.R.D. 134 (E.D. Pa. 2016) ........................................................6, 8, 9

*Wood v. Houghton Mifflin Harcourt Publishing Co.*,
    569 F. Supp. 2d 1135 (D. Colo. 2008) ......................................................32

*Yusuf Mohamad Excavation, Inc. v. Ringhaver Equipment, Co.*,
    793 So. 2d 1127 (Fla. Dist. Ct. App. 2001) ..............................................30

*In re Zantac (Ranitidine) Products Liability Litigation*,
    644 F. Supp. 3d 1075 (S.D. Fla. 2022) .....................................................27

*In re Zantac (Ranitidine) Products Liability Litigation*,
    MDL No. 2924, 2023 WL 4765409 (S.D. Fla. July 25, 2023) ...................27

# CONSTITUTION

U.S. Const. amend. VII ............................................................................. 18

# STATUTES

Ariz. Rev. Stat. § 12-541(5) ..................................................................... 34

Del. Code Ann. tit. 6, § 18-215 ................................................................ 25

La. Rev. Stat. § 51:1409(A) ...................................................................... 34

Mo. Rev. Stat. § 516.120 .......................................................................... 34

Mont. Code Ann. § 30-14-133(1) .............................................................. 34

Mont. Code Ann. § 30-14-133(1)(a) ......................................................... 35

Mont. Code Ann. § 33-18-201 .................................................................. 35

N.Y. U.C.C. § 2-725(2) ............................................................................. 30

Or. Rev. Stat. § 31.730(1) ......................................................................... 35

Tex. Bus. & Com. Code Ann. § 2.725(b) ................................................. 30

Vt. Stat. Ann. tit. 9A § 2-313 ................................................................... 32

# RULES

Fed. R. Civ. P. 23(a)(3) ............................................................................ 20

Fed. R. Civ. P. 23(a)(4) ............................................................................ 20

Fed. R. Civ. P. 23(b)(3) ...................................................................... 15, 26

Fed. R. Civ. P. 23(b)(3)(D) ...................................................................... 15

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................... 6

## OTHER AUTHORITIES

7A Fed. Prac. & Proc. Civ. § 1766 (4th ed. 2023 update).......................................21

Express Scripts, *White Paper: Formulary Development at Express Scripts*
  (Dec. 2020), https://www.express-scripts.com/files/hub/aboutus/
  formularyinformation/development/formularyDevelopment.pdf................28

MSP Recovery, Inc. Class A Common Stock (LIFW),
  https://www.nasdaq.com/market-activity/stocks/lifw...................................5

A year ago, the Court certified a class of third-party payors ("TPPs") that allege they were harmed by paying for generic valsartan-containing drugs ("VCDs") that contained trace nitrosamine impurities in the form of N-Nitrosodimethylamine ("NDMA") and/or N-Nitrosodiethylamine ("NDEA"). (*See* ECF 2261.) A few months later, in April 2023, the Court ordered a trial of various TPP Subclasses, involving four causes of action and spanning a total of 43 states,[2] with MSP Recovery Claims, Series LLC ("MSP") as the sole class representative. (ECF 2343.) Preparation for this trial has revealed that the TPP Trial Subclasses fail to satisfy any subpart of Rule 23(b), and that MSP—which is not a TPP, may not even own the TPP assignments that form the basis of its claims, and is facing mounting financial and legal difficulties—is not an adequate class representative. The TPP Trial Subclasses should therefore be decertified.

*First*, insurmountable complexities relating to choice of law make this case unsuitable for class treatment. This Court ruled that each TPP's claims are governed by the laws of its home state. That ruling was correct. But it cannot be squared with the TPP Subclasses set for trial, which are defined based on the state in which a TPP paid for the medications at issue. That creates an irreconcilable mismatch. For

---

[2]     There are now just three causes of action spanning 42 states, because plaintiffs have conceded that summary judgment should be entered against the implied warranty subclass. As used throughout this brief, "state" means any primary political division of the United States and includes the District of Columbia and Puerto Rico.

example, a TPP based in Michigan that paid an Alabama-based pharmacy benefit manager ("PBM") for the medications at issue would be subject to Michigan express-warranty law but would be (at least as to that prescription) a member of Express Warranty Subclass B (which includes TPPs that paid money in Alabama but not Michigan). Far from reducing legal variations, therefore, the TPP Trial Subclass definitions have only multiplied predominance and manageability problems.

**Second**, and relatedly, plaintiffs have not made any effort to propose an administratively feasible mechanism to identify which TPPs made payments in the subclass states, as they must to satisfy Third Circuit ascertainability precedents.

**Third**, decertification is also required because the damages model proposed by plaintiffs' expert, Dr. Rena Conti, does not match the class certified. Dr. Conti's model is based on the state in which the prescriptions were **dispensed**, not where the TPP Trial Subclass members are based, or even where they paid for prescriptions. That mismatch precludes class treatment under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2012). And Dr. Conti's model also remains flawed for all the reasons defendants have previously discussed, including her assumption that effective blood pressure medication is uniformly worthless because it contains trace amounts of an impurity.

**Fourth**, a class action is not a superior method for adjudicating this litigation because the 42-state class trial would be entirely unmanageable. Moreover, because class members are included in the trial for some causes of action and some

2

prescriptions, but excluded for others, the trial structure would very likely require multiple juries to reexamine the same issues in violation of the Seventh Amendment. Superiority is also not satisfied because individual TPPs can bring suit on their own; indeed, Dr. Conti's flawed model estimates the class representative's claims to be worth more than a million dollars by themselves.

**Fifth**, MSP, which is the sole named plaintiff, is not an adequate class representative because the MSP family of companies is losing hundreds of millions of dollars each year, appears to be in financial distress, and is the target of a criminal investigation by the Federal Bureau of Investigation ("FBI") and civil investigations by the Securities and Exchange Commission ("SEC"). In addition, the MSP entity that serves as a plaintiff in this case does not actually own the assignments on which it sued, raising a unique and distracting trial defense.

**Sixth**, a host of additional problems related to factual predominance have also become apparent, including questions related to the materiality of any alleged misrepresentations and whether patients, doctors, or TPPs relied on those representations. For some causes of action, like express warranty, which generally lacks any discovery rule, issues related to statutes of limitations would also have to be resolved on a TPP-by-TPP or prescription-by-prescription basis.

**Finally**, legal standards vary greatly, even among the states specifically named in the trial order. The Court resolved certain issues by regrouping plaintiffs'

proposed subclasses in its certification order, but it ignored a host of others, such as reliance, materiality, and the proper measure of damages, and appeared to view others with a presumption in favor of class certification.

For all of these reasons, discussed further below, this case cannot proceed as a class trial, and the Court should decertify it.

## **BACKGROUND**

MSP is not a TPP that actually purchases medications like the VCDs. Instead, it is a litigation shell company that purports to have been "assigned . . . recovery rights" from "[c]ertain healthcare benefit providers." (ECF 1708, ¶ 61.) MSP and its affiliates have a "well-documented" "history of untruthfulness" and have been repeatedly criticized for their "flagrant abuse of the legal system." *MSP Recovery Claims, Series LLC v. N.Y. Cent. Mut. Fire Ins. Co.*, No. 19-CV-00211, 2019 WL 4222654, at *6-7 (N.D.N.Y. Sept. 5, 2019).

Over the past year, MSP's attempt to use the litigation system to try to extract value from its speculative investment in assignments from TPPs has begun to unravel. Its parent company has lost more than 99% of its value since going public. *See* Ben Wieder & Jay Weaver, *"Red Flags On Top Of Red Flags": Problems Mount For UM Athletics Booster John Ruiz*, Miami Herald, July 30, 2023 ("Herald Article") (Ex. 1 to Certification of Jessica Davidson ("Davidson Cert.")). That includes a 96% loss in value since the Court's order certifying a class. *See* MSP

Recovery, Inc. Class A Common Stock (LIFW), https://www.nasdaq.com/market-activity/stocks/lifw (comparing opening price on February 8, 2023 with present). And the MSP companies, along with their principal, John Ruiz, are the targets of federal criminal and civil investigations. *See* Herald Article.

In this trial, MSP represents three subclasses of TPPs that "paid any amount of money" for at-issue VCDs in one of 42 states between January 1, 2012 and November 10, 2022. (ECF 2343.) The Court defined a TPP as an entity that "provide[s] health care benefits for consumers" and "paid in whole or in part, or reimbursed consumers, for the VCDs at issue in this case." (ECF 2261, 36 n.24.) That definition includes private insurance companies and "health and welfare plan[s]." (*Id.*) It also includes insurance providers involved in government-run or government-subsidized programs, namely Medicare and Medicaid. The extent to which a TPP will cover the purchase of a medication is governed by a formulary set by a Pharmacy and Therapeutics ("P&T") Committee, which is sometimes, but not always, associated with the TPP. (*See, e.g.*, ECF 1749-3, ¶ 22 & n.2.) While TPPs are among a range of companies involved in paying for the costs of prescription medications, they do not typically pay pharmacies directly at the point of sale. More often, an intermediary like a PBM "pays for the drug directly and then seeks repayment" from a client like a TPP. (*See* ECF 2571, ¶ 110.) *See also In re Niaspan Antitrust Litig.*, 67 F.4th 118, 123 (3d Cir. 2023).

# **ARGUMENT**

"An order that grants . . . class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Rule 23(c)(1) requires district courts 'to reassess their class certification rulings as the case develops.'" *In re Wellbutrin XL Antitrust Litig.*, 308 F.R.D. 134, 147 (E.D. Pa. 2016) (citation omitted). On a motion for decertification, the court should consider whether the requirements of Rule 23 are "no longer satisfied." *Johnson v. GEICO Cas. Co.*, 672 F. App'x 150, 157 (3d Cir. 2016). "If a district court harbors uncertainty about whether the plaintiff has satisfied the requirements of Rule 23, class certification should be denied." *Niaspan Antitrust*, 67 F.4th at 130. In particular, decertification is warranted if "the [c]ourt looks down the road" and finds the case "would ultimately splinter into individual issues." *Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 502 (E.D. Pa. 1997), *aff'd*, 161 F.3d 127 (3d Cir. 1998). Notably, after certifying an omnibus class, the Court recognized that it may be "amended" and "changed." (ECF 2316, 26:22-27:6.)

The TPP Trial Subclasses should be decertified pursuant to these standards.

# **I.   LEGAL PREDOMINANCE CANNOT BE SATISFIED BECAUSE THE TPP TRIAL SUBCLASSES DO NOT MATCH THE COURT'S CHOICE-OF-LAW RULING.**

Decertification is first required because the subclasses defined for trial do not match the governing law. The Court held in its Motion to Dismiss Opinion that the claims of each class member are governed by "the law[s] of [its] home state." (ECF

818, 10.)[3] But the TPP Trial Subclasses are defined by a different metric: the states where TPPs paid for medication. This is an intractable problem because it means that the effort to which the Court went to identify subclasses with supposedly similar state laws is irrelevant to the actual law that will govern at trial, defeating the Court's effort to address state-law variations through subclasses.

By way of example, a TPP based in Tennessee would be included in this trial to the extent it paid for medication in one of the fraud subclass states (such as New York or New Jersey), even though the Court has held that its claims should be judged by Tennessee law. This concern is not merely academic. The Court expressly acknowledged the difference between Tennessee law and the law of the subclass states when it removed Tennessee from Fraud Subclass C because it has a different scienter standard from the other states in that group. (*See* ECF 2261-3, H-39.)

---

[3] Defendants acknowledge a split of authority on this issue, as other cases have held that TPP claims are governed by the laws of the states in which prescriptions were filled. (*See, e.g.*, ECF 2606, 42 n.41 (collecting cases).) The Court was correct to reject this approach. While beneficiaries may have filled prescriptions in their home states, the TPPs "are not suing derivatively for alleged injur[ies] to their" beneficiaries. *In re K-Dur Antitrust Litig.*, MDL No. 1419, 2008 WL 2660783, at *5 (D.N.J. Mar. 19, 2008). And the Court's holding here is consistent with choice-of-law decisions in many similar cases. *See, e.g.*, *id.* ("The state with the greatest interest in a TPP's claims . . . is the state where the TPP has its principal place of business . . . ."); *In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 611 n.85 (S.D.N.Y. 2005) (reaching similar conclusion because "[t]he only injury asserted here—namely the loss [the TPP] allegedly suffered when it overpaid for diabetes drugs—occurred in" its home state).

Similarly, a TPP based in West Virginia could sue for payments made in a class state under a consumer protection theory even though the Court held that West Virginia consumer protection law expressly prohibits suits for drug purchases. (*See* ECF 2261-4, I-33.) Put simply, allowing the subclasses to be defined by a metric that does not match the choice-of-law determination means the subclasses do not resolve the problem of legal variations.

Plaintiffs argued in summary judgment briefing that choice of law should turn on "where the [purchases] occurred." (ECF 2606, 42.) As discussed above, however, the Court ruled to the contrary. In any event, to the extent plaintiffs mean that the law of the state in which a prescription is dispensed should control, that proposal still would not match the subclass definitions, which are based on the state in which each TPP "paid any amount of money." (ECF 2343.) The location in which the prescription is dispensed to the consumer is not always, and perhaps not usually, the state in which the TPP made payment. This is so because intermediaries like PBMs are typically the ones that make payment at the point of sale. *Niaspan Antitrust*, 67 F.4th at 123 (PBM pays pharmacy, TPP "reimburses the PBM"). The TPP subsequently reimburses the intermediary, but plaintiffs have never made any effort to identify the states in which those transactions took place. *Cf. Wellbutrin XL Antitrust*, 308 F.R.D. at 146 ("given the realities of the pharmaceutical industry," "paid" does not necessarily mean "paid at the time of the transaction").

8

For this reason alone, predominance is not satisfied, and the TPP Trial Subclasses should be decertified. *See, e.g.*, *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir. 2007) (reversing certification of nationwide class because plaintiffs failed to show sufficient legal similarity among applicable states' laws); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 183-84 (3d Cir. 2014) (affirming denial of nationwide class due to legal variations).

## II.   <u>THE TPP TRIAL SUBCLASSES ARE NOT ASCERTAINABLE.</u>

For similar reasons, defining the TPP Trial Subclasses based on the states in which TPPs made payments presents an insurmountable ascertainability problem. The proponent of class certification must demonstrate that "there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition," *Niaspan Antitrust*, 67 F.4th at 130 (citation omitted), without "extensive and individualized fact-finding," *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012). This requirement has precluded certification of at least two TPP cases in recent years. *See Niaspan Antitrust*, 67 F.4th at 135-40 (rejecting opinion from Dr. Laura Craft and affirming denial of class certification); *Wellbutrin XL Antitrust*, 308 F.R.D. at 149-51 (granting decertification due to lack of reliable mechanism to determine which PBMs were members of indirect purchaser class).

The Court previously held that it would be "relatively uncomplicated for plaintiffs to have arrived at a methodology that identifies a definitive list of TPPs who paid for *U.S. prescriptions* during the relevant time period." (ECF 2261, 41 (emphasis added).) But plaintiffs do not have any methodology to identify members of the *TPP Trial Subclasses* certified for trial, which, as mentioned above, require a TPP to have "paid . . . money" in a relevant state.

Plaintiff's primary ascertainability expert, Dr. Laura Craft (the same expert excluded in *Niaspan*), only opines that "the location of purchase is . . . available and purchases may be attributed to particular states if need be" (ECF 2287 at Ex. A, ¶ 10), but that does not bridge the gap. As discussed above, the "location of the purchase"—i.e., where the medicine was dispensed—is not necessarily or even usually the state where the TPP Subclass member made payment. Thus, plaintiffs have offered no evidence that there is a mechanism (administratively feasible or otherwise) to identify the TPPs that made payments in the subclass states. For this reason, too, the TPP Trial Subclasses should be decertified.

## III.   DR. CONTI'S DAMAGES MODEL DOES NOT SATISFY *COMCAST*.

Decertification is also required because plaintiffs' damages theory—which depends entirely on the expert report of Dr. Conti—does not match their liability theory.

A "model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to" the legal theory at issue in the class action. *Comcast*, 569 U.S. at 35. "Where the damages evidence does not translate" "to the theory upon which liability is premised," "common questions [can]not predominate over individual ones." *In re Pharmacy Benefit Managers Antitrust Litig.*, No. 06-1782 et al., 2017 WL 275398, at *29, *31 (E.D. Pa. Jan. 18, 2017) (denying certification of one class and decertifying others in pharmaceutical pricing case because damages expert "made no effort to determine which portion of the class's purported damages result from which alleged conspiracy"). If it becomes clear following certification that a damages model fails to satisfy the requirements of *Comcast*, the class should be decertified. *See Freitas v. Cricket Wireless, LLC*, No. 19-07270, 2022 WL 3018061, at *3 (N.D. Cal. July 29, 2022) (granting decertification where plaintiffs' experts failed to "isolate the price premium attributable" to theory of liability); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831, 2014 WL 5794873, at *14 (N.D. Cal. Nov. 6, 2014) (decertifying damages class for the same reason).

Dr. Conti's damages model fails to satisfy *Comcast* for two reasons: (1) it incorrectly focuses on the state in which prescriptions are dispensed, rather than where each TPP paid money for the prescriptions; and (2) it unscientifically assumes that effective blood pressure medications are categorically worthless.

### A.   Dr. Conti's Damages Model Incorrectly Focuses On The State In Which Prescriptions Were Dispensed.

As discussed above, the applicable law in this case comes from the state in which each TPP is based. But even assuming that choice of law should instead be based on the state where money was spent on prescriptions as framed in the certification order, Dr. Conti purported to measure damages suffered by TPPs nationwide without any restriction. (*See generally* ECF 2287 at Ex. C; Suppl. Damages Expert Decl. of Rena Conti, Ph.D., Dec. 1, 2023 (Davidson Cert. Ex. 2).) That is the wrong calculation. This trial covers 42 jurisdictions; Dr. Conti's calculations cover 52. That alone is a basis to decertify under *Comcast*.

Dr. Conti belatedly provided data from which she might be able to break down her damages estimate by the state in which a pharmacy dispensed prescriptions. (*See* Pharmacy Suppl. Analysis, attached to Email from John Davis to Defendants, Dec. 18, 2023 (Davidson Cert. Ex. 3); *see also* Dep. of Rena Conti 68:11-18, Feb. 1, 2024 ("where the pharmacy was located") (Davidson Cert. Ex. 4).)[4] She provided a similar breakdown in her report at the class certification stage. But such a breakdown still

---

[4]   In a previous case, Dr. Conti apparently stated (in errata to a deposition misstatement) that the IQVIA data on which she relies here actually record the state of the prescribing physician. (*See* Mem. of Law in Supp. of Defs.' Mot. to Exclude Test. of Dr. Rena Conti at 3, *In re Novartis & Par Antitrust Litig.*, No. 1:18-cv-04361-AKH, ECF 489 (S.D.N.Y. Jan. 11, 2022) (Davidson Cert. 5).) For present purposes, defendants take her representation in this case that IQVIA data represent pharmacy states at face value.

would not fit the liability theory for the reason discussed above: payment is not necessarily made at the time or place the drug is dispensed.

For example, any effort Dr. Conti could make to isolate prescriptions filled in New Jersey would include prescriptions ***dispensed*** in New Jersey and ***paid for*** by a Delaware TPP in Delaware, which are not part of any TPP Trial Subclass. At the same time, it would exclude prescriptions dispensed in Delaware but paid for in New Jersey by a New Jersey TPP (which are part of the TPP trial). In other words, such a breakdown would be both over- and underinclusive in each state, with no way to tell by how much in either direction. This mismatch renders Dr. Conti's model ill-fitting and unable to sustain class certification. *See Pharmacy Benefit Managers Antitrust Litig.*, 2017 WL 275398, at *19 (experts who failed "to relate their conclusions to . . . a geographic market" failed *Daubert* and *Comcast*).

### B.   Dr. Conti's Model Also Fails Because Her Theory That VCDs Had Zero Value Is Unsustainable, As She Effectively Admitted After Certification.

Dr. Conti's model also fails because it is based on her ipse dixit assertion that any medication that violates standards set by the FDA has "no economic value" even if it: (1) effectively treated blood pressure; (2) had benefits that outweighed the risks associated with nitrosamines according to the FDA; and (3) as most relevant to the TPP trial, fulfilled obligations to beneficiaries that saved the TPP plaintiffs money. (ECF 2040 at Ex. 1, ¶ 44.) As the Court knows, according to Dr. Conti, any entity

13

that purchased an at-issue VCD suffered damages in the amount of the full purchase price. Dr. Conti did not base this assertion on any evaluation of the health risks or benefits of VCDs, much less of the amount of money a TPP allegedly lost as compared to a counterfactual world in which the VCDs were not available. Instead, the sum total of her reasoning consisted of drawing two graphs and erasing the supply curve from one of them.

Despite acknowledging defendants' critique of the zero-value opinion as "sophomoric economics," the Court neither accepted it nor rejected it, claiming that taking a position would delve "too deeply into the province of the factfinder." (ECF 2261, 22-23.) That was contrary to blackletter law, which requires the Court to resolve all questions that bear on class certification, even if doing so requires resolving "conflicting expert testimony" that "overlap[s] with the merits." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 323-24 (3d Cir. 2008); *see also, e.g.*, *Niaspan Antitrust*, 67 F.4th at 130 (a court "must engage in a rigorous analysis . . . even if [doing so] involves judging credibility, weighing evidence, or deciding issues that overlap with the merits of plaintiff's claims") (citation omitted). Regardless of its correctness at the time, such a holding is clearly unsustainable now in light of Dr. Conti's post-certification concession that anything with a market price has "some . . . economic value." (ECF 2571, ¶ 128.)

The invalidity of Dr. Conti's zero-value assumption clearly bears on the propriety of class certification because without it, damages (not to mention causation and injury) would require evaluating questions such as the therapeutic value of the VCDs and the likely cost of alternative medications on a prescription-by-prescription basis. Especially now that Dr. Conti has essentially admitted the invalidity of her assumption, the Court should reject her opinion, as courts have done in similar circumstances, because there is nothing to support it. *See, e.g.*, *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 212 (E.D. Pa. 2017) (denying certification; because "it is not true that [product] had 'zero value' at the time of sale" damages were not "provable with common evidence"); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) (similar). For this reason, too, the damages model fails to fit the facts of the case.

## IV.   INDIVIDUAL ACTIONS WOULD BE VASTLY SUPERIOR TO A CLASS TRIAL.

Preparation for this trial has also made it abundantly clear "that a class action is" not "superior to other available methods for . . . adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This is so because the class trial will be unmanageable and raise serious constitutional concerns, and, given the amount of damages claimed by the class representative on its own, a class trial is entirely unnecessary.

*First*, preparing for trial has confirmed that trying the TPP Trial Subclasses' claims on a classwide basis will prove entirely unmanageable. *See* Fed. R. Civ. P.

15

23(b)(3)(D) (court must consider "the likely difficulties in managing a class action"). The Third Circuit has recognized that certification should be denied where a trial "would . . . be inordinately time consuming and difficult" and "impermissibly transgress upon the required standards of fairness and efficiency." *In re LifeUSA Holding Inc.*, 242 F.3d 136, 148 (3d Cir. 2001). The planned TPP trial is far too large to be reasonably or fairly conducted.

Defendants' previous class certification briefing speculated about the potential length of jury instructions in a class trial. (*See* ECF 2008, 67; ECF 2010, 18.) Preparation for the planned TPP trial has revealed that the task of instructing a jury remains insurmountable. And that would still be true even if the governing law were limited to the states specifically identified in the trial order. As explained above, despite the Court's effort to group similar states, each proposed TPP Trial Subclass remains legally heterogeneous, and far too much so for the Court to combine the laws of the various states into some sort of "Esperanto instruction." *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995). As defendants' forthcoming proposed jury instructions will make clear, simply instructing on each cause of action under the laws of each relevant state would require hundreds of pages—and would cover far too much information for jurors to possibly comprehend.

**Second**, while the Court's subclassing proposal reduced certain manageability problems—at least as compared to trying the whole MDL at once—it introduced a host of new problems that implicate the rights of both absent class members and the defendants.

For starters, class members are "seeking only partial relief" by way of this trial—asserting only certain claims and only for payments made in certain states—therefore "engaging in claim splitting, which is generally prohibited by the doctrine of res judicata." *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009); *see, e.g.*, *In re Paulsboro Derailment Cases*, No. 13-784 (RBK/KMW) et al., 2014 WL 4162790, at *15 (D.N.J. Aug. 20, 2014) (Kugler, J.) (denying class certification and raising claim-splitting concerns). Under the claim-splitting doctrine, where multiple claims arise out of the same set of facts or transactions, a party will be barred "from raising in a subsequent proceeding any claim they could have raised in the prior" one. *Krueger v. Wyeth, Inc.*, No. 03cv2496, 2008 WL 481956, at *2 (S.D. Cal. Feb. 19, 2008) (citation omitted) (denying certification because under the claim-splitting rule, a class action for economic damages would preclude physically injured class members from pursuing claims for personal injury) (cited with approval in *Nafar*, 339 F. App'x at 224). While some circuits have recognized that class actions might be an exception to the rule, the Third Circuit has not. To the contrary, *Nafar* suggested that the claim-splitting doctrine would work

17

to prevent even absent class members from raising new claims not tried in class proceedings. *See* 339 F. App'x at 224-25.

The same concerns are at play here. For example, a TPP advancing claims from Massachusetts is represented only in the common-law fraud subclass. Under the Court's interpretation of the law applicable to that subclass, plaintiffs will have to prove defendants' "knowledge" that any statements they made were false. (ECF 2261-3, H-13 (moving Massachusetts to Fraud Subclass C because that state requires "a false representation of a material fact <u>with knowledge of its falsity</u>" and quoting *Danca v. Taunton Savings Bank*, 429 N.E.2d 1129, 1133 (Mass. 1982)).) A jury might well find for defendants on that issue. And if it did, the TPP would be precluded under claim-splitting rules from later advancing claims with no scienter requirement that it might be able to win.

The claim-splitting engendered by the subclass structure would also be likely to lead to a violation of the Seventh Amendment's reexamination clause, which provides that "no fact tried by a jury[] shall be otherwise re-examined in any [c]ourt of the United States, [other] than according to the rules of the common law." U.S. Const. amend. VII. As courts have explained, "the findings of one jury are not to be reexamined by a second, or third, or *n*th jury." *In re Rhone-Poulenc Rorer*, 51 F.3d at 1303. Thus, if a "court bifurcates a case, it must 'divide issues between separate

trials in such a way that the same issue is not reexamined by different juries.'" *In re Citizens Bank, N.A.*, 15 F.4th 607, 620 n.15 (3d Cir. 2021) (citations omitted).

There is no practical way to do that here given the structure of the TPP Trial Subclasses, and in particular, the fact that for any given TPP, some claims, but not others, will be tried. While a handful of issues are specific to individual causes of action or individual states, many others overlap. For instance, the jury will be required to determine whether defendants made some form of misrepresentation, which entails consideration of whether they complied with current good manufacturing practices. The jury would also need to determine whether the class member suffered economic injury. Once a jury has done so for a given class member as to the states and causes of action at issue, trying the remaining ones would require asking a second jury to reconsider the findings made by the first one.

**Third**, not only are there practical, doctrinal, and constitutional problems, but a class trial is entirely unnecessary. "[O]ne of the main reasons for finding superiority in a class action—the existence of a negative value suit—is absent in this case." *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 496 (E.D. Pa. 1997); *see, e.g.*, *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003) ("'most compelling rationale'") (citations omitted); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

19

individual to bring a solo action prosecuting his or her rights.") (citation omitted). Indeed, "a class action is not warranted when proposed class members have both the incentive and the ability to protect their own interests." *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 550 (D.N.J. 2001).

According to Dr. Conti's damages estimates, plaintiff MSP is entitled to $1,186,787 in damages. (ECF 2287 at Ex. C, ¶ 10 tbl.1.) That includes $1,136,359 in damages incurred by assignor Emblem, and $50,428 from assignor SummaCare. (*Id.*) And this is only one subset of the claims owned by Emblem and SummaCare, suggesting that the damages suffered by unnamed TPP Trial Subclass members might be even higher. (*See* ECF 2287 at Ex. A, ¶¶ 10 n.9, 27.) These damages estimates more than suffice to justify bringing individual suits and retaining individual counsel, rendering a class trial unnecessary.

## V.   MSP IS AN INADEQUATE AND ATYPICAL CLASS REPRESENTATIVE.

Developments since the Court's certification order have also clarified that MSP—the sole named plaintiff at trial—cannot possibly be an adequate class representative. A named plaintiff must show that it will "fairly and adequately protect the interests of the class" and its "claims or defenses . . . are typical . . . of the class." Fed. R. Civ. P. 23(a)(3)-(4). These requirements are "designed to ensure that absentee[ class members'] interests are fully pursued." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd sub nom. Amchem Prods.*, 521

U.S. 591. MSP cannot do so here because: (1) the MSP companies are in dire financial straits, facing legal investigation, and uncertain to make it through the rest of this litigation; and (2) MSP is suing on an assignment owned by its subsidiary series, raising serious questions about standing and abuse of the corporate form that are not common to other class members.

### A.   <u>MSP's History Of Litigation Misconduct And Its Financial Instability Make It Unfit To Serve As A Class Representative.</u>

Over the past year, MSP's growing financial and legal problems have raised serious concerns about its suitability to serve as a class representative. A "plaintiff's honesty and integrity are important considerations in allowing [it] to represent a class." *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990) (granting decertification where class representative gave "intentionally false and misleading testimony" even though it was on an issue "of marginal relevance"); *see* Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1766 (4th ed. 2023 update) ("In order to assess the adequacy of the named representatives, courts have looked to factors such as their honesty, conscientiousness, and other affirmative personal qualities.").

MSP's track record of litigation conduct indicates that it is not an adequate class representative. Indeed, a magistrate judge recently recommended denying class certification in a case brought by MSP and its affiliated entities because their improper litigation tactics prevented them from serving as adequate class representatives. *See MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-

22539, 2023 WL 7383260, at *4-5 & n.1 (S.D. Fla. Nov. 7, 2023);[5] *see also MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-1537, 2018 WL 6634324, at *5 (C.D. Ill. Dec. 19, 2018) (noting "significant" question about MSP's adequacy to serve as class representative).[6]

Additional considerations further support that conclusion here. MSP and its affiliates have been condemned by federal courts across the country for their "well-documented" "history of untruthfulness." *N.Y. Cent.*, 2019 WL 4222654, at *7 (collecting cases and warning plaintiffs "not to commit fraud on the court"); *id.* at *6 ("flagrant abuse of the legal system"); *see also, e.g.*, *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 871 (7th Cir. 2021) (By filing "scores" of lawsuits "that have all the earmarks of abusive litigation," MSP has "drawn intense criticism from many a federal judge."); *see id.* at 879 (sending a "message . . . directed to the plaintiffs and their counsel" to stop "stretching the limits of judicial patience"); *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018)

---

[5]  The district court judge did not reach the class certification issue because it granted summary judgment on MSP's "meritless" individual claims. *See* Order, *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 17-22539, ECF 242 (S.D. Fla. Feb. 12, 2024) (Davidson Cert. Ex. 6).

[6]  In a different case, an affiliated company agreed to withdraw as claims administrator, apparently in exchange for having certain filings sealed. *See* Agreed Court Order Resolving Pls.' Motions to Strike, *Velez v. Fla. Power & Light Co.*, No. 2017-022854-CA-01 (Fla. Cir. Ct. Apr. 28, 2023) (Davidson Cert. Ex. 7).

("Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings."); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. 17-02525, 2021 WL 3615905, at *6 (C.D. Cal. Aug. 12, 2021) ("Once again, [p]laintiffs seemingly 'play[] fast and loose with facts, corporate entities, and adverse judicial rulings' as other courts have experienced. The [c]ourt cautions [p]laintiffs about the potential consequences of this continued behavior—both as attorneys of law and parties appearing before this [c]ourt.") (citation omitted).

MSP's tactics have soured investors as well as courts. MSP's parent company went public just after class certification briefing in this case was completed. Since then, it has lost ***99.7%*** of its value. There is no reason to anticipate an imminent turnaround. The most recent annual report belatedly filed by MSP's parent company showed (in its words) "no substantial revenue" and more than $400 million of annual loss in 2022. *See* MSP Recovery, Inc., Annual Report (Form 10-K), pp. 15, 18 (July 27, 2023) (Davidson Cert. Ex. 8). To cover these gargantuan loses, the company had just $3.7 million in cash on hand—more than ***100 times less*** than its net loss. In the words of one commentator, the filing showed "red flags on top of red flags" and "all the telltale signs of a company with potentially massive financial problems." *See* Herald Article. And things are getting worse. MSP's most recent quarterly statement revealed that its losses keep growing—to more than $600 million over the first nine

months of 2023. *See* MSP Recovery, Inc., Quarterly Report (Form 10-Q), p. 41 (Nov. 14, 2023) ("10-Q") (Davidson Cert. Ex. 9).

Unsurprisingly, MSP's failure to perform financially has given rise to litigation. One of its own assignors and major investors recently sued the company, alleging it "is a sham, and effectively a Ponzi scheme." Compl. ¶ 18, *Cano Health, LLC v. MSP Recovery, Inc.*, No. 2023-021166-CA-01 (Fla. Cir. Ct. filed Aug. 10, 2023) (Davidson Cert. Ex. 10). And the media have reported that MSP is facing federal civil and criminal investigations from the SEC, the IRS, the FBI, and the United States Attorney. *See* Herald Article. MSP's own filings bear that reporting out. In August 2023, it acknowledged receiving subpoenas from the SEC as well as from "the U.S. Attorney's Office in connection with a grand jury investigation." *See* MSP Recovery, Inc., Current Report (Form 8-K) (Aug. 1, 2023) (Davidson Cert. Ex. 11); *see also* 10-Q (discussing these subpoenas as well as an additional one issued August 16, 2023).

In short, MSP is in financial distress and under a cloud of suspicion. It cannot adequately represent the class because there is no guarantee the company will continue to exist through trial and appeal. That makes MSP a woefully inadequate class representative and the TPP Trial Subclasses should be decertified for this reason too.

**B.** <u>**MSP Is Not Typical Because It Is Subject To A Unique Defense.**</u>

A key consideration in the typicality inquiry is whether "the proposed representative may face significant unique or atypical defenses to [its] claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597-98 (3d Cir. 2009).

That is the case here. The named plaintiff is MSP Recovery Claims, Series LLC, but the assignments that form the basis of its claim are owned by two subsidiary series: Series 16-08-483 and Series 16-11-509. (*See* SummaCare Assignment (Davidson Cert. Ex. 12); Emblem Assignment (Davidson Cert. Ex. 13); ECF 1708, ¶¶ 63, 65.) Plaintiff admitted that the relevant claims "are no longer held by MSP recovery." (ECF 2009-3 at Ex. 30, 70:24-25.) A "series" is a creature of Delaware law akin to a corporate subsidiary of an LLC. *See* Del. Code Ann. tit. 6, § 18-215. "Series" are "separate legal entities." (ECF 2009-3 at Ex. 30, 137:12-16.) A number of courts have held that the effort by MSP entities to sue on behalf of their subsidiary series represents "an abuse of corporate form" that should not be allowed. *N.Y. Cent.*, 2019 WL 4222654, at *6; *see Mercury Gen.*, 2021 WL 3615905, at *5. At the motion-to-dismiss stage, other courts have reached a contrary conclusion and found the right to sue on behalf of a subsidiary to at least be properly alleged based on MSP's operating agreement. *See MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. 19-21607, 2023 WL 8718823, at *7 & n.11 (D.N.J. Dec. 18, 2023) ("[F]ederal courts are split as to whether [MSP] has standing to bring suit on behalf

25

of its [subsidiary] series."). At a minimum, this represents a legal issue related to Delaware law, and a factual issue related to MSP's operating agreement that will be litigated at trial.[7] Those issues are relevant to no other class member and further cut against MSP's adequacy as a class representative.

## VI.   COMMON FACTUAL AND LEGAL ISSUES DO NOT PREDOMINATE OVER INDIVIDUAL ONES.

Additional legal and factual variations, some of which have come to light since certification, further prevent common issues from "predominat[ing]" over individual ones. Fed. R. Civ. P. 23(b)(3).

### A.   Additional Factual Variations Preclude A Finding Of Predominance.

#### 1.   Plaintiffs Cannot Present Classwide Proof To Satisfy All The Elements Of Their Claims.

Discovery has only further confirmed that several elements of the class members' claims are highly individualized in nature, particularly injury and reliance.

*First*, plaintiffs' claims require a showing that they suffered some injury. *See, e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2010 WL 2813788, at *70-72 (D.N.J. July 9, 2010) (New York consumer protection and express warranty); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100 (C.D. Cal. 2012) ("the majority of states require proof of an injury" for a consumer protection

---

[7]      As explained in defendants' initial class certification briefing, there are additional unique defenses to MSP's claims as well.

claim). The inability to show classwide injury renders a class uncertifiable. *See Am. Seed Co. v. Monsanto Co.*, 271 F. App'x 138, 142 (3d Cir. 2008) (affirming denial of class certification where common questions regarding injury did not predominate). But plaintiffs' only model of injury—as with damages—comes from Dr. Conti's no-value assumption, which the Court should never have accepted, and which Dr. Conti's own testimony now throws into doubt.[8]

Additionally, reliance is required for many of plaintiffs' causes of action. *See, e.g.*, *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569, 626 (N.D. Ohio 2021) (consumer protection); *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491-93 (N.Y. 2016) (first-party reliance required for fraud). And all of their causes of action require at least a showing of causation. (*See* ECF 2562-1, 28-29 (collecting cases).) Classwide proof of reliance is a "near-impossibility." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1237 (11th Cir. 2016) (citation

---

[8]      Plaintiffs lack any way to prove injury on a classwide basis (or at all) for an additional reason too. The Court should have excluded any suggestion that the trace nitrosamine impurities can cause cancer—a theory with no support in science. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075 (S.D. Fla. 2022) (excluding experts offering same theory). Had the Court done so, plaintiffs would have had no evidence that the at-issue VCDs were unsafe or capable of causing illness. And as the *Zantac* court explained, without evidence of medical causation, plaintiffs have not suffered any loss. Merely purchasing the medications that had "trace amounts of NDMA unconnected to evidence of human harm" does not suffice. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, MDL No. 2924, 2023 WL 4765409, at *14 (S.D. Fla. July 25, 2023) (exclusion of medical causation experts required dismissing economic loss plaintiffs for lack of injury in fact).

omitted). That is certainly the case here. The Court previously suggested that the question whether "TPPs, their [PBMs], and other agents . . . reasonably relied on the VCD labels that these drugs were legally compliant" was a common one. (ECF 2261, 40). But clearly, each TPP, PBM, and P&T Committee would have considered a mix of information (mostly beyond drug labels) in determining whether to place a drug on its formulary.[9] As a representative of Emblem (MSP's assignor) testified, these considerations include "clinical and drug evaluation info" as well as "[p]otentially pricing information." (Dep. of Andrew Colby 35:10-15, Feb. 7, 2024 (Davidson Cert. Ex. 14).) And there is no reason to think each would have weighed those sources similarly.

Plaintiffs' response at the initial class certification stage was to assert that TPPs only permitted "VCDs to be included on their formularies in reliance" on representations about "quality, purity, and other requirements"—representations they contend are implicit in the drugs' inclusion in the Orange Book. (ECF 2058, 6-8.) But they offered no classwide support for this assertion, and more to the point, the Court never adopted the theory. In fact, the Court specifically declined to find that inclusion in the Orange Book even "create[d] manufacturer warranties," much

---

[9]   *See, e.g.*, Express Scripts, *White Paper: Formulary Development at Express Scripts* (Dec. 2020), https://www.express-scripts.com/files/hub/aboutus/formulary information/development/formularyDevelopment.pdf (explaining considerations in making formulary decisions).

less warranties or representations on which TPPs necessarily relied (ECF 2261, 3), and it subsequently excluded plaintiffs' expert on the issue (ECF 2261, 94). Plaintiffs also asserted that they were entitled to a presumption of reliance "based on the nature of the alleged misrepresentations at issue." (ECF 2058, 7 (citation omitted).) But they could not cite a single state-law case (for any state) to apply such a presumption (ECF 2010, 26), and in fact, many states expressly reject it. *See, e.g.*, *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1313-14 (11th Cir. 2023) (discussing state-law claims, including Washington and New York fraud claims, that never allow a presumption of reliance).

> ### 2.   Individualized Inquiries Will Be Required To Determine Whether The TPPs' Claims Are Timely.

Factual predominance is further lacking because the factfinder would have to individually evaluate whether each TPP's claim was timely. *See Dockery v. Heretick*, No. 17-4114, 2021 WL 3929707, at *29 (E.D. Pa. Sept. 1, 2021) (denying certification where "individual inquiries as to the statute of limitations would predominate over any common issues facing the class as a whole"), *aff'd*, No. 21-2753, 2022 WL 14810015 (3d Cir. Oct. 26, 2022). The Court's certification order did not address this issue. Plaintiffs' reply brief argued that "statutes of limitations . . . are a non-starter . . . because the first class action lawsuits were filed within weeks of the initial recalls in 2018." (ECF 2057, 28.) But that assumes that all claims only accrued at the time of recall, which plaintiffs claim to be the first occasion on

which they could have discovered the impurities and therefore their purported injuries. In other words, it assumes that all the relevant statutes of limitations have a discovery rule. They do not.

Almost all the relevant states have no discovery rule for claims sounding in warranty. *See, e.g.*, *Baker v. Stryker Corp.*, 770 F. App'x 12, 15 (2d Cir. 2019) (citing N.Y. U.C.C. § 2-725(2)); Tex. Bus. & Com. Code Ann. § 2.725(b). And in many states, the same is true for consumer protection claims. *See, e.g.*, *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 475 (Conn. 1988); *Yusuf Mohamad Excavation, Inc. v. Ringhaver Equip., Co.*, 793 So. 2d 1127, 1128 (Fla. Dist. Ct. App. 2001).

### B.   Legal Standards Vary Greatly Among The TPP Trial Subclass States, Further Defeating Predominance.

Variations in state law also defeat predominance. In its class certification order, the Court "worked from defendants' opposition chart of state law jurisprudence to research and ***confirm*** the legal correctness of plaintiffs' proposed subclasses." (ECF 2261, 40 (emphasis added).) The Court frequently opined that defendants' authority did not affirmatively disprove the propriety of the legal groupings at issue. (*See, e.g.*, ECF 2261-1, F-5 ("This [case] doesn't negate a zero value theory"), F-11 (resolving open question related to privity requirement in favor of class certification), F-19 (resolving open question related to reliance in favor of class certification), F-33 (case on which defendants rely was "distinguished" elsewhere); ECF 2261-3, H-49 ("Nothing in D[efendant]s['] cited case"

demonstrates intent requirement); ECF 2261-4, I-21 ("'deceptive' is not as limited as D[efendant]s imply"), I-23 (case cited by defendants "inapposite").)

However, it is the "party seeking class certification"—i.e., *plaintiffs*—who "must affirmatively demonstrate [their] compliance with [Rule 23]." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Comcast*, 569 U.S. at 33-34. Thus, *plaintiffs* were required to demonstrate that the wide variety of different legal requirements applicable to the claims of class members from 42 jurisdictions could feasibly be addressed by dividing the class into workable subclasses. Defendants had no burden to demonstrate the opposite. *See Grandalski*, 767 F.3d at 183.

Plaintiffs failed to carry their burden. And preparation for trial has made clear it could not possibly be met, so individual legal issues will inevitably predominate. Among the variations in the subclasses certified by the Court are the following:

*First*, the 20 states included within the express warranty subclass vary greatly as to the applicable legal standard. *See, e.g.*, *Payne v. FujiFilm U.S.A., Inc.*, No. 07-385 (GEB), 2010 WL 2342388, at *9-10 (D.N.J. May 28, 2010) (recognizing that "state laws regarding . . . breach of warranty . . . vary greatly with respect" to multiple issues, including reliance and privity). For example, some states do not require reliance,[10] others do not require reliance but recognize that a buyer's

---

[10]     *See, e.g.*, *Mainline Tractor & Equip. Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1106-07 (D. Vt. 1996) ("[N]o particular reliance on such statements need b[e] shown
*(cont'd)*

knowledge of inaccuracies within a warranty may defeat the claim, and still others impose an explicit reliance requirement.[11] There are also legal variations with respect to statute of limitations. As noted above, the overwhelming majority of states do not have a discovery rule for warranty claims (*see supra* at 30), but Florida does, *see Kaplan v. Volvo Penta of Ams., LLC*, No. 14-22226, 2014 WL 6908423, at *2 (S.D. Fla. Dec. 8, 2014).

**Second**, the fraud subclass is equally unworkable. For instance, the states included in this subclass differ as to the level of scienter required. Some require a strict showing that the defendant knew the statement to be false, while others allow the scienter element to be satisfied with a showing that the defendant was simply unaware of whether the representation was true or not.[12] The states also differ as to

---

in order to weave them into the fabric of the agreement.") (quoting Vt. Stat. Ann. tit. 9A § 2-313 cmt. 3); *Massey-Ferguson, Inc. v. Laird*, 432 So. 2d 1259, 1261-62 (Ala. 1983) ("not necessary to show any particular reliance by the buyer to give rise to such warranties").

[11] *See e.g.*, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 469 (S.D.N.Y. 2020) ("A successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty.") (citation omitted); *McSwain v. Sunrise Med. Inc.*, 689 F. Supp. 2d 835, 848 (S.D. Miss. 2010) ("Under the MPLA, a claimant must prove that 'the product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product.'") (citation omitted).

[12] *Compare Doe v. Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 837 F. Supp. 2d 1145, 1154 (D. Idaho 2011) (requiring that the representation be made with "the speaker's knowledge of its falsity"); *Wood v. Houghton Mifflin*

<span style="float:right">*(cont'd)*</span>

whether that reliance is judged by an objective or subjective standard.[13] And finally, different states impose different burdens of proof, with some states requiring plaintiffs to prove their claims by only a preponderance of the evidence, others requiring clear and convincing evidence, and still others imposing unique standards of their own.[14]

*Third*, the consumer protection subclass contains numerous variations that have never adequately been resolved. Consumer protection statutes "differ

---

*Harcourt Publ'g Co.*, 569 F. Supp. 2d 1135, 1140 (D. Colo. 2008) ("knew it was false"), *with Muccio v. Hunt*, 490 S.W.3d 310, 312 (Ark. 2016) ("knew that the representation was false or that there was insufficient evidence upon which to make the representation"); *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 811 (Minn. Ct. App. 2010) ("made with knowledge of the falsity of the representation or . . . without knowing whether it was true or false") (citation omitted). Strikingly, the Court highlighted the "without knowing" language in *Driscoll*, but then grouped the state with those requiring knowledge of falsity. (ECF 2261-3, H-33.)

[13]    *Compare, e.g.*, *Rocky Mountain Expl., Inc. v. Davis Graham & Stupps LLP*, 420 P.3d 223, 234 (Colo. 2018) ("A fact is material if a ***reasonable person*** under the circumstances would attach importance to it in determining his or her course of action.") (emphasis added) (citation omitted), *with, e.g.*, *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 4 1262, 1283 (S.D. Fla. 2021) ("[A] fact is material if, but for the misrepresentation, ***the aggrieved party*** would not have entered into the contract.") (emphasis added) (citation omitted).

[14]    *Compare, e.g.*, *Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 61 (1st Cir. 2011) ("[T]he Supreme Court of Puerto Rico has uniformly held that a preponderance of the evidence standard applies to claims of fraud."), *with, e.g.*, *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 558 (S.D.N.Y. 2009) ("In proving the elements of fraud [under New York law], the proponent of the claim must put forth clear and convincing evidence."), *with Lloyd v. Drake Univ.*, 686 N.W.2d 225, 233 (Iowa 2004) ("a preponderance of clear, satisfactory, and convincing proof").

immensely from jurisdiction to jurisdiction" "as to elements (including the defendant's state of mind), burden of proof, allowable recovery, actionable wrongdoing and limitations periods." *Agostino v. Quest Diagnostics Inc.*, No. 04-4362 (SRC), 2010 WL 5392688, at *11 (D.N.J. Dec. 22, 2010) (citation omitted), *aff'd sub nom. Grandalski*, 767 F.3d 175. For instance, the statutes of limitations range from one to five years,[15] and vary as to whether the discovery rule applies.[16] Some statutes impose a reliance requirement, while others do not.[17] And two states in the consumer protection subclass, Louisiana and Montana, flatly disallow consumer protection class actions. *See* La. Rev. Stat. § 51:1409(A); Mont. Code Ann. § 30-14-133(1). The Court removed South Carolina and Tennessee from the same subclass for exactly that reason, but ignored the issue with respect to

---

[15]    *See, e.g.*, *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826 (D. Ariz. 2016) ("Private actions under the [Arizona Consumer Fraud Act] are subject to a one-year statute of limitations.") (citing Ariz. Rev. Stat. § 12-541(5)); *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 921 n.6 (8th Cir. 2008) (statute of limitations under Missouri Merchandising Practices Act is five years) (citing Mo. Rev. Stat. § 516.120).

[16]    *Compare supra* at 30 (states that reject the discovery rule), *with Gustafson v. Goodman Mfg. Co.*, No. 13-cv-8274, 2014 WL 1669069, at *5 (D. Ariz. Apr. 28, 2014) (applying discovery rule).

[17]    *Compare Lisowski v. Henry Thayer Co.*, 501 F. Supp. 3d 316, 332 (W.D. Pa. 2020) ("must show that . . . plaintiff justifiably relied"), *with Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 176 (D. Conn. 2000) (Connecticut act "does not require reliance").

Louisiana.[18] Scienter requirements vary too. In fact, at the class certification stage, the Court expressly removed Illinois from Consumer Protection Subclass A because it requires a showing of intent (*see* ECF 2261-4, I-14), but then added it back at plaintiffs' urging when defining the subclasses for trial.

*Fourth*, the various states differ with respect to the availability of punitive damages, with some states proscribing them altogether, and some states prohibiting them for certain causes of action, such as breach of warranty. (*See* ECF 2562-1, 38-39, 42 (collecting authority).) And where punitive damages are permitted, standards vary. For instance, in Oregon, punitive damages are available upon a showing of malice or "reckless and outrageous indifference," Or. Rev. Stat. § 31.730(1), while in Vermont, both showings must be made, *see Fly Fish Vt., Inc. v. Chapin Hill Ests., Inc.*, 996 A.2d 1167, 1173-74 (Vt. 2010). The Court never grappled with these distinctions at the class certification stage, because plaintiffs had not yet proposed a trial involving punitive damages. But now that they have, the issue presents yet another obstacle to legal predominance.

---

[18]     The Court permitted the Montana class to go forward, citing to *Jacobsen v. Allstate Insurance Co.*, but that case alleged violations of Mont. Code Ann. § 33-18-201, *see* 310 P.3d 452, 456 n.1 (Mont. 2013), and the class action bar only applies to cases (like this one) brought under Section 30-14-103, *see* Mont. Code Ann. § 30-14-133(1)(a).

For all of these reasons, even if the applicable law could somehow be limited to the TPP Trial Subclass states, legal variations would still swamp common issues at trial.

## CONCLUSION

For the foregoing reasons, the TPP Trial Subclasses should be decertified. If trial proceeds, it should be on MSP's individual claims alone.

Dated: February 13, 2024

Respectfully submitted,

By: */s/ Jessica Davidson*
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Jessica Davidson (NY Bar No. 6034748)
*Liaison Counsel for Manufacturer*
*Defendants*

Allison M. Brown (NJ Bar No. 044992012)
One Manhattan West
New York, New York 10001
Phone: (212) 735-3222
Fax: (917) 777-3222
jessica.davidson@skadden.com
allison.brown@skadden.com

Nina R. Rose (DC Bar No. 975927)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

*Attorneys for Zhejiang Huahai*
*Pharmaceutical Co., Ltd., Huahai U.S.,*
*Inc., Prinston Pharmaceutical Inc., and*

*Solco Healthcare U.S., LLC*

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
GREENBERG TRAURIG, LLP
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Lori G. Cohen, Esq.
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and*

*Actavis Pharma, Inc.*

<u>*/s/ Alexia R. Brancato*</u>
Alexia R. Brancato
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
alexia.brancato@kirkland.com
devora.allon@kirkland.com

*Attorneys for Defendants Torrent*
*Pharmaceuticals Ltd. and Torrent*
*Pharma, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 13, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson