IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| In re Valsartan, Losartan and Irbesartan Multi-District Litigation | 19-md-2875 (RBK/SAK) |
| This document applies to all actions. | Order and Memorandum on Defendants' Motion to Decertify the TPP Trial Classes |

**KUGLER**, United States District Court Judge

## ORDER

**BEFORE THE COURT** is defendants' motion (Doc. No. 2637) ["the motion"] seeking to decertify the TPP Trial Classes as stated in this Court's Case Management Order ["CMO"] No. 32 (Doc. No 2343:1-2).

The classes relate to the claims of Plaintiff MSP Recovery Claims, Series LLC, as class representative for TPP Breach of Express Warranty Subclass b, TPP Breach of Implied Warranty Subclass d, TPP Fraud Subclass c, and TPP State Consumer Protection Laws Subclass a against the TPP Trial Defendants, ZHP, Teva, and Torrent in the upcoming bellwether trial.

For the reasons stated herein and without oral argument pursuant to *Loc.R. 78.1*,

**IT IS ORDERED:** Defendants' Motion is **DENIED**.

## MEMORANDUM

This Court's class certification opinion (Doc. No 2343: 1-2) and CMO 32 stated the TPP subclasses at issue as:

**TPP Breach of Express Warranty Subclass Group b**, comprising a breach of express warranty subclass of all TPPs that, from at least 1 January 2012 through the date of final recall as of 10 November 2021, paid any amount of money in Alabama, Arkansas, Florida, Georgia, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, Ohio, Oregon, Rhode Island, South Carolina, Texas, Utah, Vermont, Wisconsin, or Wyoming for a valsartan-containing drug ["VCD"]s (intended for personal or household use) that was manufactured by a relevant defendant;

**TPP Breach of Implied Warranty Subclass Group d,** comprising a breach of implied warranty subclass of all TPPs that, from at least 1 January 2012 through the date of final recall as of 10 November 2021, paid any amount of money in Alabama, Ohio, Oregon, New York, Tennessee, Utah, or Vermont for a valsartan-containing drug (intended for personal or household use) that was manufactured by a relevant defendant;

**TPP Fraud Subclass Group c**, comprising a fraud subclass of all TPP that, from at least 1 January 2012 through the date of final recall as of 10 November 2021, paid any amount of money in Alaska, Arkansas, Colorado, District of Columbia, Florida, Idaho, Iowa, Louisiana, Massachusetts, Minnesota, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, Washington, Wyoming, or Puerto Rico for a valsartan-containing drug (intended for personal or household use) that was manufactured by a relevant defendants; and

**TPP State Consumer Protection Laws Subclass Group a**, comprising a violation of state consumer protection laws subclass of all TPPs that, from at least 1 January 2012 through the date of final recall as of 10 November 2021, paid any amount of money in Alaska, Arizona, California, Connecticut, Florida, Hawaii, Illinois, Louisiana, Missouri, Nebraska, New Hampshire, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, or Washington for a valsartan-containing drug (intended for personal or household use) that was manufactured by a relevant defendant.

To focus this discussion, the Court reproduces below the table of contents in defendants' ["Ds"] brief (Doc. No.2637-1) accompanying the motion:

TABLE OF CONTENTS
Page

BACKGROUND ................................................................................................4
ARGUMENT....................................................................................................6
I. LEGAL PREDOMINANCE CANNOT BE SATISFIED BECAUSE
THE TPP TRIAL SUBCLASSES DO NOT MATCH THE COURT'S
CHOICE-OF-LAW RULING. ......................................................................6
II. THE TPP TRIAL SUBCLASSES ARE NOT ASCERTAINABLE. .............9
III. DR. CONTI'S DAMAGES MODEL DOES NOT SATISFY
COMCAST. ............................................................................................ 10
A. Dr. Conti's Damages Model Incorrectly Focuses On The State
In Which Prescriptions Were Dispensed. .......................................... 12
B. Dr. Conti's Model Also Fails Because Her Theory That VCDs

Case 1:19-md-02875-RBK-SAK   Document 2657   Filed 02/26/24   Page 3 of 12 PageID: 97661

3

Had Zero Value Is Unsustainable, As She Effectively Admitted After Certification. ............................................................................... 13

IV. INDIVIDUAL ACTIONS WOULD BE VASTLY SUPERIOR TO A CLASS TRIAL. ........................................................................................... 15

V. MSP IS AN INADEQUATE AND ATYPICAL CLASS REPRESENTATIVE. .................................................................................. 20

A. MSP's History Of Litigation Misconduct And Its Financial Instability Make It Unfit To Serve As A Class Representative. ......... 21

B. MSP Is Not Typical Because It Is Subject To A Unique Defense. ................................................................................................ 25

VI. COMMON FACTUAL AND LEGAL ISSUES DO NOT PREDOMINATE OVER INDIVIDUAL ONES. ......................................... 26

A. Additional Factual Variations Preclude A Finding Of Predominance. ................................................................................... 26

    1. Plaintiffs Cannot Present Classwide Proof To Satisfy All The Elements Of Their Claims. ............................................... 26

    2. Individualized Inquiries Will Be Required To Determine Whether The TPPs' Claims Are Timely. ................................. 29

B. Legal Standards Vary Greatly Among The TPP Trial Subclass States, Further Defeating Predominance. .......................................... 30

The procedural backdrop to the motion is this Court's 97-page class certification opinion (Doc. No. 2261, "Class Cert. Op.) issued 9 Feb 2023, which included six appendices reviewing Ds own listings of case law for each claims propounded by each of the three proposed classes: Personal Injury, Economic Loss, and Medical Monitoring. In the Class Cert. Op., the Court discussed at length the parties' arguments pro and con as to each required showing under *Fed.R.Civ.P.* ["*Rule*"] *23 (a)* and *(b)*, including class representative adequacy, predominance, and ascertainability.

**Ds Sections I and II**

Ds Section I and II arguments are hyperbole and fail for two reasons. Ds aver that the relevant TPP subclass definitions are improperly defined and invoke lack of predominance and ascertainability of those subclasses. First, these arguments circumvent the "law of the case"

doctrine as they raise no new issue of law or any other element the doctrine requires[1].  Second and related to the first, Ds arguments overstate the effect of the mismatch between the Point of Sale ["POS"] data propounded by Rena Conti and the Point of Position ["POP"] data Ds assert must be used to calculate damages as required by this Court's decision in its Motion to Dismiss Opinion 2 (Doc. No. 728).

> On the law of the case doctrine, the Third Circuit has recently guided:
>> "[O]ne panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." (citing *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998).) The doctrine "does not apply to dicta"; rather, it precludes review of legal issues actually decided in a prior appeal. (citing *Id*. at 718*).* The Supreme Court has counseled that an appellate court "has the power to revisit [its own] prior decisions [in the same case] … in any circumstance"— however, a court should not do so absent "extraordinary circumstances." (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).  We have recognized three circumstances where the law of the case doctrine does not preclude reconsideration of an earlier panel's decision: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).  Thus, our first inquiry here is whether our earlier determination on *contra proferentem* was dicta. Our second inquiry is whether this case presents any circumstances allowing us to depart from the law of the case doctrine.

*Aleynikov v. Goldman Sachs Group, Inc.,* No. 21-1782,  2022 WL 421398 at *1 (3d Cir. 11 Feb 2022 ).[2]

---

[1] *See* the discussion *infra* on the next page  for the Third Circuit's and the Supreme Court's standards for opposing a law of the case.  Generally:  The law of the case may be opposed when extraordinary circumstances prevail; and specifically when (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.
*See also, Pyrotechnics Management, Inc. v. XFX Pyrotechnics LLC*, Nos. 22-2951, 22-2974, 22-3386, 2024 WL 379960 (3d Cir. 1 Feb 2024), the Third Circuit's latest guidance on the law of the case doctrine, stating:
> The "law of the case" doctrine provides that "one panel of an appellate court generally will not reconsider questions that another panel has decided on a prior appeal in the same case." *Pardini [v. Allegheny Intermediate Unit]*, 524 F.3d [419] at 426  [(3d Cir. 2008)] (quoting *In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998) [*Pardini* quoted the Third Circuit Internal Operation Procedure ["I.O.P."] 9.1 that made clear the Third Circuit was not free to disregard its earlier decision in *Pyrotechnics I*.] Here, Pyrotechnics concedes that it is essentially requesting that we revisit and overrule the holdings of this Court's PO in *Pyrotechnics I.*

The Third Circuit's affirmation (3d Cir. Doc. Nos. 23-8005: 60; 23-8006:47; 23-8007 associated with 23-8006; and 23-8008: 46) rendered this Court's Class Cert. Op. "the law of the case" for all certified classes and subclasses.  Accordingly, the TPP Economic Loss Class ["TPPEcoLoss"]and subclasses were found compliant of *Rule 23*'s requirements and were certified.   While recognizing in the Class Cert. Op. that the claims for economic loss of each TPPEcoLoss class member certainly has facts unique to it,[3] this Court also specified  that each and all TPPEcoLoss plaintiffs assert the same basic causes for their economic loss, prominent among them: defendants' violation of cGMPs,  which introduced genotoxic contaminants into valsartan API and finished doses.  Doc. No. 2261: 38-39.   The Class Cert. Op. for the TPPEco Loss subclasses focused on and reviewed arguments about the economic loss claims, which turned <u>not</u> on personal injury causation elements but on the variability of evidence to demonstrate TPPs reimbursements for contaminated VCDs, whether the VCDs were improperly or properly  merchantable, and what was the bargained-for exchange between the parties.

It is not clear to the Court whether Ds posing this motion a few weeks before the bellwether trial presages Ds intent to raise this same argument to the Third Circuit in post-bellwether trial appeals.  If so, the Court states outright that this is not an advisory "opinion" for or against whether such an appeal could or should be raised.  What is clear to the Court is that Ds have not met any required showing to overturn the law of the case:  extraordinary circumstances such as compelling new evidence, supervening law, or the Third Circuit's clearly erroneous decision in affirming this Court's Class Cert. Op.

It is also clear that Ds have not taken to heart this Court's Class Cert. Op. discussing Third Circuit caselaw about when there are mismatches between how the economic damages data are configured or calculated and how damages may be apportioned to the relevant class members.  Ds are reminded that such mismatches are not fatal to a finding of ascertainability:

---

 Consistent with I.O.P. 9.1 and the law of the case doctrine, we will not overrule *Pyrotechnics I*. "This case is governed by our [prior] decision." [*United States v.] Harris*  68 [F.4th 140] at 146 [(3d Cir. 2023)]. Moreover, Pyrotechnics fails to demonstrate extraordinary circumstances warranting that the law of the case doctrine should not be applied here. *In re City of Phila. Litig.*, 158 F.3d at 718 (citing *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116-17 (3d Cir. 1997)). Pyrotechnics' request that we revisit the issues decided in *Pyrotechnics I* is denied, and we affirm the District Court's Judgment. *Pyrotechnics*, 2024 WL 379960 at * 3.

Moreover, the Third Circuit found there (*Pyrotechnics*, 2024 WL 379960 n.3) that the issues were the same as those raised in *Pyrotechnics I* and refused to re-consider, basing their decision on appellants' failure to show the required exigent circumstances or that the appeal presented a question of exceptional importance sufficient to warrant *en banc* hearing. *See* I.O.P. 9.2 and 9.4.1; *Fed. R. App. P. 35(a)*.

[3] such as, the prescribed VCD of their insured consumer, the insureds' prescription dosages and durations, the total amounts of economic loss, differences in state law standards across the five asserted claims, etc., which are largely facts related to the consumers' economic loss and causation arguments, and tangential to the TPPs economic loss arguments.

*See Class Cert. Op.* at 24-28 and n. 17 citing *Kelly et al. v. RealPage Inc.*, 47 F.4th 202, 223 (2022) citing *Byrd et al. v. Aaron's, Inc. et al.*, 784 F.3d 154 at 169-71) (*holding* ascertainability satisfied by the prospect of matching address from multiple as-of-yet unknown sources) and *Hargrove v. Sleepy's LLC*, 974 F.3d 467 at 480 (*holding* ascertainability satisfied by the prospect of cross-referencing defendant's voluminous records with affidavits from putative class members); *see also Bennett v. Quest Diagnostics, Inc.*, Civ. No. 17-1590 , 2023 WL 3884117 at *14  (D. N..J. 8 Jun 2023)  [finding against ascertainability of classes because, completely opposite to the situation here, Bennett Ps had not identified even a "straightforward 'yes-or-no' review of existing records that would allow the classes to be ascertained."

To the point, what is needed is what the Third Circuit allows: that is, a translating mechanism that aligns the mismatched Point of Sale ["POS"] jurisdictions obtained from the gold standard, confidently reliable IQVIA data to the TPP Point of Payment ["POP"] locations. Such a translation could be accomplished by a computer subroutine. While not naïve that such a translation mechanism won't require much effort, the Court finds that such mechanisms have been used before (see previous paragraphs) in cases where, as here, the plaintiffs have relied on a single theory of damages.  Such mechanisms have in effect confirmed ascertainability of class damages.  For that reason, the Court finds that Ds arguments that damages are not ascertainable on a class-wide basis fails.  The Court also finds that Ds preponderance arguments in these sections based on lack of ascertainability also fail.

**Section III**

As for Ds Section III arguments that Rena Conti's' model of damages does not satisfy the Supreme Court's guidance in *Comcast v. Behrend, 569 U.S. 27, 35*, the Court notes  the Third Circuit's rulings on translating mechanisms serve *Comcast* well and precisely.

Ds arguments have misused *Comcast,* which concerned whether plaintiffs had tied each theory of antitrust impact to an exact and specific calculation model of damages; there were FOUR such theories.  At the class certification stage, the plaintiffs did NOT tie all four theories of antitrust damage to a unique model for calculating those damages.  Rather they tied  ONLY ONE theory of damage to their single, universal model. Consequently, Justice Scalia found that the calculation of damages in various counties in the Delaware Valley were not comparable; different counties' antitrust damages relied on different theories of antitrust impact.  Ps single damages model **could not** translate the differences between supra-competitive prices <u>in general</u> and supra-competitive prices <u>due to the deterrence of overbuilding</u>.

The *Comcast* situation is exactly what the parties do NOT have here.  Plaintiffs here have ONE model of damages that depends on Conti's worthlessness theory.  Importantly, and also unlike in *Comcast*,[4] a translating mechanism of Conti's model relying on IQVIA data  could convert where POS damages were paid into those TPP POP locations.  It would serve the purpose of ascertaining exactly "only those damages attributable to" Ps legal theory, namely where TPPs paid for their economic losses.  Since such damage evidence can be translated "to the [**single**] theory upon which liability is premised,"  which is exactly what the Third Circuit has affirmed several times, common questions do predominate over individual ones, which makes Ds reliance on *In re Pharmacy Benefit Managers Antitrust Litig.*, No. 06-1782 et al., 2017 WL 275398, at *29, *31 (E.D. Pa. Jan. 18, 2017) inapposite and lacking the jurisprudential power of Third Circuit guidance .

Also in Section III, Ds characterize Conti's model of damages as unscientific largely they aver because that model posits the worthlessness of the contaminated VCDs.  Such characterization is unsupported and rigid.  Ds definition of  a "scientific" theory of damages is wholly limited to the narrowest view that only a "biological" basis can support a theory of damages here.   Ds bias that their theory of damages is "scientific" depends on their limited definition of  "bioequivalence" between the VCDs and the Reference Listed Drug ["RLD"].  Ds theory of damages rests largely on their argument that, since the VCDs lowered blood pressure in consumers who ingested it, the VCDs must then be "bioequivalent" to the RLD.  Consequently, TPPs can neither have been deceived nor lacking in the benefit of the bargain when they reimbursed for their insureds'  VCDs.  Ds meaning of "bioequivalence" is "scientifically" limited to a solitary biological functionality, namely, the hypertensive function of the VCD.  This "scientific" definition, moreover, does not admit of a fuller, biological functionality of a genotoxic-contaminated drug, to wit, that it lowered blood pressure while it increased ingesting consumers' probability of contracting cancer.

Ps theory of damages rests not on a "biological" basis but on an "economics" one, that the supply curve of contaminated drugs the FDA never would have allowed for sale is zero, making the drugs unmerchantable.   Contrary to Ds characterization, Ps theory of damages, while not biologically based, is nonetheless based in recognized caselaw as economic theory.[5]

---

[4] Where Justice Scalia ruled that the plaintiff's model of damages was unable to bridge the differences among their theories of antitrust harm.  *Comcast*, 569 U.S., at 38.

[5] *See, e.g., Debernardis v. IQ Formulations*, LLC, 942 F.3d 1076, 1085 (11th Cir. 2019) [*concluding* plaintiffs suffered an injury in fact when they purchased an adulterated dietary supplement and therefore economically worthless]; *Blue Cross Blue Shield Ass'n. v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 554 (E.D. Pa. 2019) [*reasoning* plaintiffs had established an injury in fact because they alleged they paid for drugs "believing they were manufactured in compliance with cGMPs but received drugs that were non-compliant and therefore worth less than what they paid."]; *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) [*concluding* purchasers of a defective toy suffered an injury in fact because they paid more for the toys than they would have,

The Court also observes that Ds argument about the scientific value of Conti's model of damages rehashes their previous arguments made in the class certification opinion, which is again contrary to the law of the case.

Accordingly, the Court finds no legal support for decertifying the TPP subclasses by attacking Conti's model of damages. Ds raise no argument that shows requisite elements invoke a review of the law of the case.

**Section IV**

In Section IV, Ds assert that a class action trial is not superior to individual actions. They posit a possible claim-splitting in the future, which would likely lead to a violation of the Seventh Amendment. This Amendment clearly concerns a subsequent jury or a court's questioning of a prior jury verdict. It should be obvious the pending bellwether trial is not a subsequent proceeding. This is a manifestly premature argument and at best, if occurred in later trials, would be plaintiffs' problem, not defendants'.

Moreover, the Court finds this argument ineffective and lacking support from any legal requisite for overturning that a class action is the superior adjudication. The rest of Ds arguments about superiority assume the upcoming TPP trial is too large to be reasonably or fairly conducted, which is in effect a preponderance and/or ascertainability argument in other terms. Ds raised this argument at class certification stage and is rehashing it here. Possibly it will be presented to the Third Circuit in a post-trial motion. But at this moment, we are in pre-trial posture and this argument is but a lamentation in the wind, predicting doom and destruction because the jurors won't be able to comprehend the multidinous pages of jury instructions on each state's laws.

The Court recognizes that the upcoming trial may require Herculean efforts from all of us. That however does not foretell that the bellwether trial is not and will not prove to be the superior action for determining liability and damages. Especially as the fix for securing aligned liability damages is a translating mechanism that applies to the POS data the TPP POP data and is up to the parties to realize. Accordingly, the Seventh Amendment and superiority issues are not ripe and again the Court is not issuing an advisory opinion here. The Court finds no legal support for overturning the law of the case.

---

had they known the beads poisoned children); *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47, 49 (9th Cir. 2018) [*explaining* consumers suffered an injury in fact when they spent money to purchase a skin lotion that should not have been sold because it was illegal to sell the product].

**Section V**

      Ds Section V arguments seek to unseat MSP as an inadequate class representative because of its purported unsavory business practices. To characterize MSP in the most uncomplimentary terms possible, the Court identifies it as a medical insurance troll, buying insurers' (including Medicare) claims only to sue on them. Such a trolling model leaves a taint only for those naïve as to the realities of doing business. Such a trolling model exists for patents and other IP assets, for uncollectable medical practices claims', and in a variety of other business contexts. MSPs business model of buying claims as an investment in order to get higher liability damages through litigation means that MSP is in the business of arbitraging its costs versus its calculations/expectations to turn a profit on the insurers' claims it purchases. Ultimately, MSP is a risk assessor of the likelihood of success on the merits of its purchased claims and resembles to some extent a junk bond trader. That MSP is arbitraging litigation risk has nothing to do with its adequacy as a class representative nor does MSP's loss of value on the stock market nor does MSP's litigation history on suing for other purchased claims. Simply, as assignee of Emblem Health's and Summacare's economic loss claims, MSP stands in their shoes and is eligible to sue. Rule 23(a)(3) and *(4)* does not require "savory" business practices, but that the claims of the representative parties are typical of the claims of the class; and the representatives will fairly and adequately protect the interests of the class. MSP claims clearly are TPP claims even though it is not a TPP. That MSP is involved in several other litigations does not without more make MSP a bad risk as a class representative. To the point, Ds description of MSP's despicable deeds and state of affairs has invited the Court to research MSP,[6] which does not appear the dastardly fiend the motion portrays.

      Further, were MSPs status as a proper assignee contested, MSP would have to prove a valid assignment of which it is the valid assignee. But, that status is not contested.

      Accordingly, the Court finds nothing in this section to support an overturn of the law of

---

[6] MSP Recovery d/b/a LifeWallet announced its 2023 3rd Quarter Financials at. https://www.globenewswire.com/news-release/2023/11/15/2780655/0/en/LifeWallet-Announces-Third-Quarter-2023-Financial-Results.html (last accessed 21 Feb 2024). These do not look dreadful or even scary.

    Moreover, the SEC URL identifying SEC litigations/actions against business entities does not list an SEC- initiated litigation, past or current, against MSP or LifeWallet. To be sure, the SEC had opened an investigation into MSP in August 2023.  *See* https://www.sec.gov/litigation/litreleases?aId=&populate=msp&year=All (last accessed 21 Feb 2024).

    And, in response to that, MSP was sued by several securities-regulation law firms in August 2023 for fraud on the shareholders. Ironically, just 3 weeks later, all law firms voluntarily ended these suits and affirmatively and publicly recanted that MSP had engaged in such fraud. *See, e.g.,* https://www.globenewswire.com/news-release/2023/09/13/2742930/0/en/Robbins-LLP-Retracts-Prior-Notices-Regarding-MSP-Recovery-Inc-LIFW-f-k-a-Lionheart-Acquisition-Corp-II-Class-Action-Lawsuit.html (last accessed 21 Feb 2024). The supposition is that the SEC's investigation had panned out.

    Plus, Ds much-bemoaned loss of MSP stock value as a measure of lack of creditworthiness is equally unavailing as MSP's stock value already had begun to revert by November 2023. *See* https://seekingalpha.com/news/4031102-msp-recovery-aka-lifewallet-stock-rockets-amid-high-volality (last accessed 21 Feb 2024).

the case.

**Section VI**

Ds Section VI arguments raise another attack on the predominance requirement of the certified subclasses.  For example, Ds aver that Ps cannot show reliance across all the jurisdictions in the breach of express warranty subclass; they likewise argue Ps cannot show across all jurisdictions other elements of other claims.  In so arguing, Ds attempt to debunk one of Ps legal theories, namely, that in including VCDs in their formularies, TPPs relied on Ds representations about the substantial identity in quality, purity, etc. of the VCDs with the RLD.  This is not an attack on predominance but rather a central attack on a much disputed, material piece of evidence that would tend to prove/disprove breach of warranty.   As such, the Court has not, will not, and does not rule on matters of deep consequence to the parties' positions, leaving that for the fact-finder.

Ds also assert that, as for its arguments that TPPs claims are not timely, each TPP claim would have to be evaluated for its timeliness, thereby defeating predominance.  Again this is a genuine dispute of material fact raised in the parties' summary judgment motions. As soon to be resolved in the SJ opinion, the shortest statute of limitations of any jurisdiction in the subclass is the "limiting" factor to Ps breach of warranty claims.  So long as all of TPP claims fall within the shortest statute of limitations period., there can be no lack of predominance.  That the shortest statute of limitations period should apply to all jurisdictions in the subclass was proposed by Ps in their SJ arguments, with which the Court concurs.

Ds also assert Ps have failed their burden to demonstrate that the great variety of different legal elements for each claim are feasibly addressed  by dividing the classes into workable subclasses.  Ds basis is that since the Court's appendices attached to the Class Cert. Op. did not review each element of each claim, then Ps did not meet their burden.  Even more, Ds assert in parentheses that the Court favored class certification.  Inasmuch as the Court's own research focused on the most salient element in each claim and found when state case law was not favorable to Ds preponderance arguments or raised a neutral or unresolved legal question, Ds improperly overemphasized that the unknown status worked in their favor.  Mostly, the Court worked to level Ds overemphasis in Ds favor when the caselaw did not support their arguments and to correct Ps incorrect citation of case law that supported their proposed subclasses.  The Court finds that Ds' opposition to the Court's correcting research as a basis for now re-arguing lack of predominance is about a year late.

Nonetheless, the Court finds that Ds have raised none of the elements that would require the Third Circuit to revisit the law of the case:  neither new evidence (except that Ds

have now "discovered" weaknesses in Ps subclasses given the longer time they've had to review the Class Cert. Op.), nor new supervening law nor the manifest error of the earlier decision resulting in injustice.  Accordingly, the Court denies the motion as Ds have re-asserted substantially similar arguments as in previous oppositions.

**CONCLUSION**

Given that Ds have raised no new arguments regarding *Rule 23 (a)* or *(b)*  requirements, the Court properly has regarded the motion as a one for reconsideration of the Class Cert. Op. However, the Third Circuit's affirmance, upon defendant's appeal, of the Class Cert Op., constrains this Court to respect the "law of the case" doctrine.  The Court decides here that Ds have not shown the requisite elements for unseating the law of the case.

The Court finds Ds arguments rest on the mismatch between the definition of Ps subclasses that damages are determinable by POS (IQVIA) data and this Court's definition regarding Ps standing defined as the place where they are located.  Ultimately, Ds urge that the mismatch earns not merely a third review but a reversal of the ascertainability and predominance findings of the TPP subclasses and thereby an overturn of the law of the case. They implore that Ps damages theory and method of calculation will result in an imponderable and unfixable chaos in determining damages owed the TPPs.

Importantly, Ps theory of damages is singular, i.e., applicable to all TPP reimbursements of VCDs.  Third Circuit precedents that apply translating mechanisms to align a plaintiff's singular theory of calculating Ps damages to other variables for which data has been collected and/or is required, such as the POP locations, weigh heavily toward that reconsideration is unwarranted.  Further, the applicable IQVIA data Ps used to realize their theory of damages  have been heralded even by Ds experts as the gold standard for calculating damages.  The Court finds that, once the parties adopt a translating mechanism for locating where the VCDs were paid into where the paying TPPs are located, there will be no misalignment.

Further, the Court also finds that none of the three bases for even initiating a "law of the case" review has been raised, let alone met.  Ds have raised no new evidence; clearly the mismatch between how TPPs damages are calculated and how TPPs are located was in play last year even though neither party raised it and even though D appealed the Class Cert. Op. Moreover, Ds have only very recently raised this issue, which indicates their very recent finding of it.

No new, intervening law applies to the Class Cert. Op.  And finally, Ds recent finding

raises no manifest injustice issue inasmuch as a practical, practicable, if nonetheless difficult, "fix" is doable to align Ps theory of damages calculation of POS TPP payments to POP TPP locations.

    Accordingly, for the reasons stated herein, the Court **DENIES** the motion.

Dated: 26 February 2024	/s <u>Robert B. Kugler</u>
    The Honorable Robert B. Kugler
    United Stated District Judge