# EXHIBIT 1

## ASSIGNMENT AGREEMENT

THIS CONFIDENTIAL PURCHASE AGREEMENT ("Agreement") is made as of the date when this Agreement is fully executed ("**Effective Date**"), by, between and among the (a) assignors EmblemHealth Services Company, LLC and Group Health Incorporated, a New York corporation and Medicare Advantage Organization, and Health Insurance Plan of Greater New York, a New York corporation and Medicare Advantage Organization (collectively referred to as "**Assignor**"), on the one hand, and (b) the assignees Series 16-08-483, a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company, and its affiliated entity MSP Recovery, LLC, a Florida Limited Liability Company, on the other hand (collectively referred to as "**Assignee**"). Assignor and Assignee herein are each referred to as a "**Party**" and collectively as the "**Parties**.".

### PREAMBLE

**WHEREAS,** Assignor is a Health Maintenance Organization, and Preferred Provider Organization, and/or other health insurance provider, and is duly authorized by state or federal law, or other administrative or licensing agencies to engage in health insurance business, which includes issuing health insurance plans that provides payment for certain covered medical and health care services and/or supplies including medications, treatment or other procedures ("**Health Care Services**") rendered to persons enrolled in Medicare and Medicare Advantage programs (jointly referred to herein as "**Medicare**"); and

**WHEREAS,** Assignor has certain legal and equitable rights to seek reimbursement and/or recover payments from primary payers and any other party or entity that may be responsible to Assignor directly or through rights conferred on the Assignor pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to Assignor's Medicare (as defined above) enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for the reimbursement of payments made by the Assignor for such Medicare services, whether under Parts A, B and D of the Medicare Act, including pursuant to a Medicare Advantage Plan, including the right to recover claims for Medicare Health Care Services that are billed on a fee for service basis and all outstanding liens, potential liens, lien rights and subrogation recovery rights, legal or equitable, in favor of Assignor, including in any litigation, such as but not limited to mass tort actions, class actions and multi-district litigation for which a primary payer has demonstrated responsibility, all of the forgoing defined as the "**Medicare Recovery Claims;**" and

**WHEREAS,** Assignee has expertise in analyzing Medicare claims, identifying primary payers and recovering costs or claims for Medicare Health Care Services paid by or on behalf of Assignor for which Assignor was not or should not have been the primary payer; and

**WHEREAS,** Assignor wishes to assign to Assignee all right, title, interest in and ownership of Medicare Recovery Claims – excluding Medicare Recovery Claims that can be asserted against Assignor's members, enrollees and/or contracted providers, and excluding Medicare Recovery Claims that, as of the Effective Date, have been assigned to and/or are being pursued by other recovery vendors, including, but not limited to, The Rawlings Group – related to Medicare Health Care Services that were rendered and paid for by Assignor during the six (6) year period beginning September 29, 2011 and ending September 29, 2017 (hereinafter, such Medicare Recovery Claims shall be referred to as the "**Assigned Medicare Recovery Claims**") (this provision shall not preclude future transactions as to Medicare Recovery Claims involving Assignor's members, enrollees and/or contracted providers); and

**WHEREAS,** the assignment of the Assigned Medicare Recovery Claims shall include Assignor granting Assignee access claims data, information and documentation directly relating to the Assigned

Exh. C to Emblem Purchase Agreement

Medicare Recovery Claims (hereinafter to all minimum necessary, such data and documentation shall be referred to as the "**Assigned Medicare Benefit Material**"), for the sole and limited purpose(s) of this Agreement and in accordance with Business Associate Agreement entered into between Assignor and MSP Recovery, LLC, effective as of January 25, 2017 (hereinafter, "**Business Associate Agreement**," incorporated herein, by reference, in its entirety), and the Nondisclosure Agreement entered into between Assignor and MSP Recovery, LLC, effective as of January 25, 2017 (hereinafter, "**Nondisclosure Agreement**," incorporated herein, by reference, in its entirety), which Business Associate Agreement and Nondisclosure Agreement all Parties agree herein to be bound by; and

**WHEREAS**, Assignee acknowledges and agrees that it will not change and/or delete the HIPAA Protected Health Information contained in the Assigned Medicare Benefit Material; namely, personal information including, but not limited to names, Social Security numbers as well as health information; and

**WHEREAS**, it is acknowledged and agreed to by the Parties that the assignment of the Assigned Medicare Recovery Claims includes the right on the part of Assignee to pursue recovery with respect to the Assigned Medicare Recovery Claims and to retain any and all amounts recovered on the Assigned Medicare Recovery Claims, in accordance with the terms set forth herein; and

**NOW, THEREFORE**, in consideration of the execution and delivery of this Agreement and the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree to as follows:

1. <u>Incorporation of Recitals</u>. Each of the foregoing recitals and the representations reflected therein are incorporated herein and expressly made a part of this Agreement.

2. <u>Assignment of Assigned Medicare Recovery Claims</u>.

    a. The definition of Assigned Medicare Recovery Claims set forth in the Preamble is reiterated and incorporated herein, and the following exclusions are restated for emphasis: Consistent with the definition of Assigned Medicare Recovery Claims set forth in the Preamble, the Assigned Medicare Recovery Claims do not include claims that Assignor may have against its members, enrollees, and/or contracted providers, regardless of the nature of the claims, or claims that are currently being pursued by other vendors pursuant to a contract with Assignor (such excluded claims being defined as "Assignor Retained Claims").

    b. Assignor hereby irrevocably assigns, transfers, conveys, sets over and delivers to Assignee, and any of its successors and assigns, any and all of Assignor's right, title, ownership and interest in and to all Assigned Medicare Recovery Claims, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies that Assignor had, may have had, or has asserted against any party in connection with the Assigned Medicare Recovery Claims and all rights and claims against primary payers and/or, subject to the definition of Assigned Medicare Recovery Claims, third parties that may be liable to Assignor arising from or relating to the Assigned Medicare Recovery Claims, including claims under consumer protection statutes and laws, and all information relating thereto, as may be applicable. It is expressly acknowledged and agreed by Assignee that this Agreement does not contemplate nor constitute an assignment by Assignor to Assignee of Assignor Retained Claims. The transfer, grant, right, or assignment of any and all of Assignor's right, title, ownership, interest and entitlements in and to the Assigned Medicare Recovery Claims shall remain the confidential and exclusive property of Assignee or its assigns. This assignment is irrevocable and absolute.

Exh. C to Emblem Purchase Agreement  2



3.  **Purpose of Assignment.** Assignor makes and Assignee accepts this assignment of the Assigned Medicare Recovery Claims in order to facilitate Assignee's ability to initiate and pursue the recovery of the Assigned Medicare Recovery Claims, including in any litigation, such as but not limited to mass tort actions, class actions and multi-district litigation for which a primary payer has demonstrated responsibility. For each potentially recoverable Assigned Medicare Recovery Claim, Assignee shall use commercially reasonable efforts to recover the value of such Assigned Medicare Recovery Claims. Assignee shall pursue the recovery and reimbursement of the Assigned Medicare Recovery Claims in its own name or in the name of an affiliated entity controlled in whole or in part by Assignee. Accordingly, upon thirty (30) days prior written notice given by Assignee to Assignor explaining the purpose of a proposed assignment, and prior written approval by Assignor, which may not be unreasonably withheld, Assignee may assign this Agreement and corresponding Business Associate Agreement to any entity controlled in whole or in part by Assignee, which entity shall enter into a written agreement with Assignor to be bound by the terms of this Agreement, and corresponding Business Associate Agreement and Nondisclosure Agreement. Such assignment, however, shall not relieve Assignee of its obligations and responsibilities set forth in, and/or related to, this Agreement, and corresponding Business Associate Agreement and Nondisclosure Agreement. Assignee is prohibited from assigning this Agreement to any entity which is not controlled in whole or in part by Assignee. Assignee may, in its discretion, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in pursuing recoveries consistent with the Business Associate Agreement. Assignee will use its best efforts in pursuing recovery for the Assigned Medicare Recovery Claims and makes no express or implied promises regarding the existence or amounts of potential recoveries, given that the results of its analysis are case-specific and will vary. Assignor acknowledges that no guarantees or promises have been made regarding the amount or results of potential recoveries.

3.  **Consideration.** Assignor acknowledges that Assignor has received good and valuable consideration for entering into this Agreement, the sufficiency of which is hereby acknowledged by the Parties. The amount of consideration provided to Assignor shall be deferred contingent compensation in the amount of 50% of the value of the recoveries of the Assigned Medicare Recovery claims affected by Assignee. Such consideration may be accelerated pursuant to an agreement between the Parties, which agreement shall supersede this Agreement. In addition, other than the acknowledged consideration, Assignor will have no other obligation to compensate Assignee for any costs incurred by Assignee in undertaking in relation to recovery of any Assigned Medicare Recovery Claims. As between the Parties, all costs and expenses for the services and pursuit of recovery with respect to the Assigned Medicare Recovery Claims shall be for the account of Assignee. Assignor shall have no liability to Assignee for the value of any Assigned Medicare Recovery Claim or the failure of Assignee to recover on any Assigned Medicare Recovery Claim, and Assignee shall have no liability to Assignor for the value of any Assigned Medicare Recovery Claim or the failure of Assignee to recover on any Assigned Medicare Recovery Claim.

4.  **Confidential Information and Protected Health Information.** The rights, responsibilities and obligations with respect to Assignee's access to Confidential and Protected Health Information, which are set forth in the Business Associate Agreement entered into by the Parties, effective as of January 25, 2017, and the Nondisclosure Agreement entered into by the Parties, effective as of January 25, 2017, are incorporated herein by reference, and are binding upon the Parties. The Parties acknowledge and agree that the Assigned Medicare Benefit Material is Protected Health Information as protected by the Business Associate Agreement.

5.  **General Representations and Warranties of Both Parties.** Each Party represents and warrants as follows:

Exh. C to Emblem Purchase Agreement 3



a. The representations and warranties of each of the Parties are true and correct in all respects as of the date of execution of this Agreement;

b. Each Party is duly organized and existing and is in good standing in its state of domicile;

c. Each Party is duly qualified to do business and is in good standing under the laws of any jurisdiction where the conduct of its business require it to be so qualified;

d. Each Party possesses any and all licenses and/or governmental approvals required to perform its respective business;

e. Each Party's execution, delivery and performance of this Agreement and the performance of all obligations thereunder have been duly authorized by all appropriate corporate action;

f. This Agreement has been duly executed and delivered by duly authorized officers of each Party and therefore constitutes valid, binding and enforceable obligations as to each Party enforceable one as against each other;

g. Each Party shall at all times comply with all applicable laws and regulations in the performance of this Agreement; and

h. No agent, broker, finder, financial advisor or any other entity will be entitled to any fee, commission or other compensation in connection with the assignment contemplated herein, or of any other right or obligation arising under this Agreement;

i. These general representations and warranties of both Parties, as well as the Assignee's and Assignor's representations and warranties, shall survive and be in full force and effect after the execution of this Agreement.

6. **Assignee's Representations and Warranties.** Assignee understands and acknowledges that Assignor, in entering into this Agreement, is relying upon the Assignee's representation that it is experienced with, and it possesses expertise regarding, the assignment of Medicare Recovery Claims and related data, information and documentation, and matters related to recovery on Medicare Recovery Claims. Moreover, it is understood by Assignor that Assignee, upon assignment of the Assigned Medicare Recovery Claims, intends to initiate and pursue recovery of the Assigned Medicare Recovery Claims, and may, consistent with the Business Associate Agreement, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in pursuing recovery. Assignee, therefore, represents warrants and/or agrees as follows, and acknowledges that Assignee's representations, warranties and agreements, as set forth in this Agreement, including in the Preamble, are a material inducement for Assignor entering into this Agreement:

a. Assignee has not encountered and is unaware of any legal impediment to the Parties entering into this Agreement.

b. Assignee has not encountered and is unaware of any challenges to agreements like this Agreement based upon alleged violation of CMS contracting requirements and guidelines, or alleged failure to obtain approval from any governmental or regulatory authority.

c. Assignee, understands the difference between recovery from payers, and recovery from Medicare and Medicare Advantage plan members, enrollees and contracted providers, and, therefore, represents, warrants and agrees that it shall not pursue recovery with respect to the Assigned

Exh. C to Emblem Purchase Agreement                        4



Case 1:19-md-02875-RMB-SAK-WZ Document 2672-3 Filed 05/25/22 Page 6 of 9 PageID:
Case 1:21-cv-10526-KWZ Document 261-93 Filed 05/06/24 Page 6 of 9
99302

Medicare Recovery Claims from any of Assignor's members, enrollees or contracted providers under this Agreement and pursuant to the specific transaction the Agreement documents. This provision does not preclude subsequent transactions between the Parties which may involve other recoveries from any of Assignor's members, enrollees or contracted providers.

        d.    Under this Agreement and pursuant to the specific transaction, Assignee shall initiate and pursue the recovery of the Assigned Medicare Recovery Claims from payers other than Assignor's members, enrollees and/or contracted providers, and, for each potentially recoverable Assigned Medicare Recovery Claim, Assignee shall use commercially reasonable efforts to recover the value of such Assigned Medicare Recovery Claim from payers other than Assignor's members, enrollees and/or contracted providers. Assignee shall pursue the recovery and reimbursement of the Assigned Medicare Recovery Claims in its own name. Upon thirty (30) days prior written notice given by Assignee to Assignor explaining the purpose of a proposed assignment, and prior written approval by Assignor, which may not be unreasonably withheld, Assignee may assign this Agreement, and corresponding Business Associate Agreement and Nondisclosure Agreement, to any entity controlled in whole or in part by Assignee, which entity shall enter into a written agreement with Assignor to be bound by the terms of this Agreement, and corresponding Business Associate Agreement and Nondisclosure Agreement. In such case, Assignee shall pursue the recovery and reimbursement of the Assigned Medicare Recovery Claims in the name of its affiliated entity. Such assignment, however, shall not relieve Assignee of its obligations and responsibilities set forth in, and/or related to, this Agreement. Assignee is prohibited from assigning this Agreement to any entity that is not controlled in whole or in part by Assignee. Assignee may, in its discretion, and at no cost or expense to Assignor, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in pursuing recoveries, consistent with the Business Associate Agreement.

        7.    **Assignor's Representations and Warranties.** Assignor understands and acknowledges that in order for Assignee to pursue the recovery of the Assigned Medicare Recovery Claims that it contemplates upon conclusion of the assignment contemplated herein, and to obtain the full benefit of this Agreement, Assignor must have full sole legal right, title, standing and interest in the Assigned Medicare Recovery Claims that are the subject of this Agreement and are being assigned. Assignor hereby represents and warrants that, as of the date of this Agreement's execution, Assignor possesses full legal right, title, standing and interest in the Assigned Medicare Recovery Claims being assigned. Further, Assignor represents and warrants as follows, and acknowledges that Assignor's representations and warranties are a material inducement for Assignee entering into this Agreement:

        a.    None of the execution, delivery, nor performance of this Agreement will conflict with or violate the governing corporate documents of Assignor or conflict with or violate any other agreement, license, contract, instrument or other commitment or arrangement to which Assignor is bound;

        b.    Assignor holds and possesses all rights, authorizations, title, interest in and ownership of the Assigned Medicare Recovery Claims being assigned subject to this Agreement, free and clear of all liens and encumbrances;

        c.    No lawsuit, judicial or administrative action, suit, investigation or proceeding of any kind is pending or, to Assignor's knowledge, threatened, in any court or before any governmental or regulatory authority, (i) which would prevent the carrying out of this Agreement or the assignment of Assigned Medicare Recovery Claims contemplated hereby or (ii) which would declare this Agreement or the assignment of Assigned Medicare Recovery Claims contemplated hereby to be unlawful or (iii) which would cause the rescission of this Agreement or (iv) which would have a material adverse effect upon this Agreement or the assignment of Assigned Medicare Recovery Claims contemplated hereby;



d. Assignor, a Health Plan, has made the claims payments with respect to the Assigned Medicare Recovery Claims for and on behalf of the enrollee members that are the subject of the Assigned Medicare Recovery Claims being assigned; and

e. Consistent with the terms of this Agreement and the Business Associate Agreement, Assignor hereby grants Assignee access to all Assigned Medicare Benefit Material.

8. **Indemnification of Assignee.**

(a) Third Party Demands.

Assignor shall indemnify, defend and hold harmless Assignee and its affiliates, and its and their respective successors and assigns (and its and their respective officers, directors, employees and agents) from and against any third party demands, claims, lawsuits, judicial or administrative actions, investigations or proceeding based upon any allegation that (i) Assignor, as of the Effective Date, did not hold and possess all rights, authorizations, standing, title, and interest in and ownership to any Assigned Medicare Recovery Claim(s) or portion thereof, being assigned pursuant to this Agreement and; (ii) any allegation that any Claim(s), or portion thereof, being assigned pursuant to this Agreement, infringes, misappropriates or violates any right of any person or entity, including any assertion or claim that any recoveries are or may be owed to any of Assignor's first tier and/or downstream providers, such as Maintenance Service Organizations, Independent Physicians' Associations, subrogation or recovery audit contractors, and/or any other entity with whom Assignor may have an Agreement.

(b) Assignor's Breach of Representations and/or Warranties.

Assignor shall indemnify, defend and hold harmless Assignee and its affiliates, and its and their respective successors and assigns (and its and their respective officers, directors, employees and agents) for any losses or damages arising from (i) any knowing and willful breach of any of the representations and warranties set forth in Article III of this Agreement; (ii) any failure of the Assignor to perform in accordance with any covenant or other term of this Agreement; and/ or (iii) any assertion of the right to brokerage or finder's fees or commissions or similar payments by persons or entities other than the Parties.

9. **Indemnification of Assignor.**

(a) Third Party Demands.

In addition to the indemnification provided for in the Business Associate Agreement, and without the intent to limit such indemnification, Assignee shall indemnify, defend and hold harmless Assignor and its affiliates, and its and their respective successors and assigns (and its and their respective officers, directors, employees and agents) for and against any demands, claims, lawsuits, judicial or administrative actions, investigations or proceeding by any third party (including any governmental agency) arising out of or related to illegal conduct undertaken by Assignee with respect to effecting recoveries with respect to the Assigned Medicare Recovery Claims pursuant to this Agreement, , and/or challenges to the lawfulness of the assignment of the Assigned Medicare Recovery Claims and of the provision of access to the Assigned Medicare Benefit Material.

(b) Assignee's Breach of Representations and/or Warranties.

Assignee shall indemnify, defend and hold harmless Assignor and its affiliates, and its and their respective successors and assigns (and its and their respective officers, directors, employees and agents)

Exh. C to Emblem Purchase Agreement 6



for and against any losses or damages arising from (i) any knowing and willful breach by Assignee of any of its representations and warranties set forth in this Agreement; and/or (ii) any failure of the Assignee to perform in accordance with any covenant or other term of this Agreement.

10. **Successors and Assigns.** This Agreement shall be binding upon the successors, legal representatives or permitted assigns of the Parties hereto.

11. **Governing Law and Venue.** The interpretation, construction and enforcement of this Agreement shall be in accordance with the laws of the State of New York, without regard to any conflict of laws principles that would apply any laws other than those of the State of New York and any action, whether in law or in equity must be commenced and maintained in federal or state court within New York County, New York.

12. **Severability.** Should any term(s) of this Agreement be deemed unenforceable, all other terms shall survive and remain in full force and effect. This includes any and all financial terms, rulings and/or other findings of the Centers for Medicare and Medicaid Services ("CMS"), Agency for Health Care Administration, or of a court of competent jurisdiction.

13. **Waiver.** A waiver by any party of any of the terms of this Agreement shall not be construed as a general waiver by the Party and the Party is free to reinstate any such term or condition, with or without notice to the other.

14. **Notice.** All notice and other communications required or permitted hereunder or convenient in connection herewith shall be in writing and shall be deemed to have been given when mailed via certified mail, return receipt requested or sent via electronic delivery as follows:

| If to: | **Assignee** | If to: | **Assignor** |
|---|---|---|---|
| | MSP Recovery, LLC<br>5000 SW 75 Ave., Suite 400<br>Miami, FL 33155<br>Attn: Frank Quesada<br>Phone: 305-614-2222<br>Email: FQuesada@msprecovery.com | | EmblemHealth, Inc.<br>55 Water Street, 13th Floor<br>New York, NY 10041<br>Attn: Michael Palmateer<br>Phone: 646-447-6170<br>Email: mpalmateer@emblemhealth.com |

With copy to:

EmblemHealth, Inc.
Legal Department
55 Water Street, 13th Floor
New York, NY 10041
Attn: Carlos G. Manalansan
Phone: 646-447-7837
Email:
cmanalansan@emblemhealth.com

or to such other names and addresses as Assignee or Assignor shall designate by notice to the other Party hereto in the manner specified in this Section.

Exh. C to Emblem Purchase Agreement 7



15. **Execution and Counterparts.** This Agreement may be executed in one or more counterparts, each of which when executed and delivered shall be an original, and all of which when executed shall constitute one and the same instrument. Signatures on this Agreement or any counterpart of this Agreement, transmitted by facsimile machine or electronic mail in .pdf format shall have the same force and effect as original signatures.

IN WITNESS WHEREOF, the Parties have hereunto set their hands on the dates set forth below.

ASSIGNOR

EmblemHealth Services Company, LLC
Sign: _____
Print: Michael Palmateer
Title: Chief Administrative Officer
Date: 3/20/18

Group Health Incorporated
Sign: _____
Print: Michael Palmateer
Title: Chief Administrative Officer
Date: 3/20/18

Health Insurance Plan of Greater New York
Sign: _____
Print: Michael Palmateer
Title: Chief Administrative Officer
Date: 3/20/18

ASSIGNEE

Series 16-08-483 a designated series of MSP Recovery Claims, Series LLC, a Delaware series limited liability company
Sign: _____
Print: John H. Ruiz
Title: Authorized Officer
Date: 3/20/2018

MSP Recovery, LLC
Sign: _____
Print: John H. Ruiz
Title: Authorized Officer
Date: 3/20/2018

Exh. C to Emblem Purchase Agreement                    8

