# EXHIBIT 2

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 03/06/24 Page 2 of 19
Case 1:22-cv-16923-SAK Document 1-7 Filed 06/14/22 Page 2 of 18
PageID: 99307

## RECOVERY AGREEMENT

THIS RECOVERY AGREEMENT ("Agreement") is made this 12th day of May, 2017, ("Effective Date") by and between **SummaCare, Inc.**, an Ohio Corporation ("Client") and **MSP Recovery, LLC**, a Florida Limited Liability Company and/or its assigns ("MSP Recovery").

**WHEREAS**, Client is a Health Maintenance Organization, Maintenance Service Organization, Independent Practice Association, Medical Center, and/or other health care organization and/or provider and is duly authorized by state or federal law, and/or other administrative or licensing agencies to provide or arrange for the provision of medical and health care services and/or supplies including medications, treatment or other procedures ("health care services") to persons, including but not limited to those who are covered under government healthcare programs such as Medicare, Medicare Advantage or Medicaid; and

**WHEREAS**, Client has certain legal rights to recover payments for the provision of health care services arising from contractual agreements, such as participation and network agreements with applicable capitation and risk sharing arrangements, and state and federal laws that provide for the reimbursement of conditional payments made by the Client, including the right to recover claims for health care services that are billed on a fee for service basis (the "**General Claims**"); and

**WHEREAS**, MSP Recovery has expertise in analyzing claims, identifying primary payers and recovering costs or claims for health care services paid by or on behalf of Client for which Client was not or should not have been the primary payer (the amounts of such payments by Client being the "**Client Paid Amount**"); and

**WHEREAS**, MSP Recovery is in the business of identifying and analyzing Parts A, B and D of Client's Medicare, Medicare Advantage and/or Medicaid claims (the "**Medicare/Medicaid Claims**, and together with the General Claims, the "**Claims**") and pursuing the recovery of Claims; and

**WHEREAS**, Client wishes to assign to MSP Recovery all right, title, interest in and ownership of the Claims, including all underlying documents relating to the Claims.

**NOW THEREFORE**, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to as follows:

### ARTICLE I

1.1 Recovery of the Claims.

In order for MSP Recovery to provide its analysis, identification and claims recovery services (the "**Services**") and pursue recovery of the Assigned Claims (as hereinafter defined), Client shall provide MSP Recovery with historical claims data as well as the most updated claims data that Client's current systems can provide, as of the date hereof. Client shall provide ongoing data transfers at intervals of no less than 30 days. The transfer and delivery of Client's claims data shall be in compliance with HIPAA and shall be *via* a secure file transfer protocol site in accordance with Client's data security requirements. It is the intent of the Parties that such data will be analyzed using MSP Recovery's platform, which will allow MSP Recovery to identify claims that should be paid by a primary payer, including those that should have been paid within the "clean claims time period" as required by state and/or federal laws as it pertains to the processing of claims by a Medicare Advantage Organization and/or under any of the requirements of any state agency that governs any Medicaid beneficiary payment requirements for medical services and/or supplies.

Case 1:22-cv-10928-AK   Document 167   Filed 06/14/23   Page 3 of 19

Upon receipt of Client's claims data, MSP Recovery shall conduct a review and analysis of the data and use its best efforts to identify the Assigned Claims for which Client has a legal right of recovery and reimbursement. In accordance with Article I, all claims that have been or can be identified by MSP Recovery as being recoverable pursuant to any contractual, statutory, equitable or legal basis, whether state or federal (including the Medicare Secondary Payer Act) and whether arising as a Part A, B or D claim(s) shall be deemed Assigned Claims. As part of its services and recovery efforts, MSP Recovery will determine the available primary insurance coverage and/or other responsible parties for secured[1] and unsecured[2] claims and pursue those claims against the appropriate parties.

MSP Recovery shall initiate and pursue the recovery of the Assigned Claims and, for each potentially recoverable Assigned Claim, MSP Recovery shall use commercially reasonable efforts to recover the value of such Assigned Claim. MSP Recovery shall pursue the recovery and reimbursement of the Assigned Claims in its own name or in the name of an affiliated entity. Accordingly, MSP Recovery may assign this Agreement to any affiliated entity. MSP Recovery may, in its discretion, contract with law firms and attorneys, experts, investigators and/or claims specialists to assist it in pursuing recoveries. MSP Recovery will use its best efforts in pursuing recovery for the Assigned Claims and makes no express or implied promises regarding the existence or amounts of potential recoveries, given that the results of its analysis are case-specific and will vary. Client acknowledges that no guarantees or promises have been made regarding the amount or results of potential recoveries.

MSP Recovery's services focus on the analysis, identification and recovery of conditional payments that have already been made by the Client. MSP Recovery does not perform or provide any of the following services: claims related or enrollee/member-facing functions; healthcare services; administrative services; the processing of claims for health care services; connecting potential beneficiaries to health plans; providing customer service to beneficiaries, enrollees or members; sales or marketing services; utilization management; member application, enrollment or membership functions; claims administration, processing or coverage functions; credentialing; provider network management. MSP Recovery's services do not negatively impact enrollees or Medicare Advantage members or otherwise put them at any financial risk. Accordingly, MSP Recovery is neither a first tier nor downstream entity and/or provider. Client has taken all steps to ensure that this contract is acceptable to CMS and is in full compliance with CMS (as hereinafter defined) contracting requirements and guidelines.

## ARTICLE II

2.1. <u>Compensation of MSP Recovery.</u>

In full consideration of providing the services to Client, Client shall assign the Assigned Claims to MSP Recovery or its affiliates as provided for in Article IV. Client will have no other obligation to compensate MSP Recovery for any costs incurred by MSP Recovery in undertaking the services hereunder or in relation to recovery of any Assigned Claims. As between the parties, all costs and expenses for the services and pursuit of the Assigned Claims shall be for the account of MSP Recovery. Client shall have no liability to MSP Recovery for the value of any Assigned Claim or the failure of MSP Recovery to recover

---

[1] A secured claim is one in which a payment is required pursuant to an insurance agreement whereby either the terms of the policy and/or by statutory requirement, the insurer is required to pay for medical services before any other available sources of payment.

[2] An unsecured claim is one whereby there is either no contractual obligation to be a Primary Payer or where the Primary Payer has paid the limits of its contractual obligation.

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 06/11/22 Page 4 of 18
Case 1:22-cv-10923-SFK Document 26-4 Filed 03/06/24 Page 4 of 19
PageID: 99309

on any Assigned Claim, and MSP Recovery shall have no liability to Client for the value of any Assigned Claim or the failure of MSP Recovery to recover on any Assigned Claim.

2.2  Client's Contingent Payment.

MSP will pay to Client, out of the proceeds of any recovery made on the Claims, a contingent deferred purchase price as consideration for the Assigned Claims as follows:

Client will receive 50% of the Net Proceeds of any Assigned Claims.

1.  Example:
    - MSP Recovery recovers $12,000 and incurs $500 in costs.
    - Net Proceeds are $11,500
    - Client receives 50% of $11,500 = $5,750
    - MSP Recovery receives 50% of $11,500 = $5,750

For purposes of this Agreement, "Net Proceeds" of any Assigned Claim is defined as the gross proceeds recovered in respect of such Assigned Claim, minus any Costs (as hereinafter defined) (whether in litigation or otherwise) that is directly traceable to such Assigned Claim(s) for which recovery was made. Attorneys' fees are not included in the Net Proceeds definition and any attorneys' fees that are recovered pursuant to a fee shifting statute by settlement or otherwise shall not affect the computation of the Net Proceeds amount. To the extent that any attorneys' fees are awarded pursuant to a multi-district litigation and/or a class action or any other mass tort or litigation procedure wherein a court awards attorneys' fees from the total settlement award and/or the defendant agrees to a negotiated fee award, such attorneys' fees shall not affect the computation of the Net Proceeds amount. For purposes of this Agreement, "proceeds of any recovery" shall also include the sale by Client of all or a portion of its 50% recovery rights in one lump sum or in divisible amounts.

The breakdown and percentages described above shall also apply irrespective of payment under any Medicaid, commercial insurance, and medical plans. Any health plan(s) of the Client are encompassed within the Agreement.

2.3  Costs.

All costs incurred by MSP Recovery in pursuing the Assigned Claims ("Costs") shall be deducted from gross proceeds in determining Net Proceeds. "Costs" include, but are not limited to filing fees, witness fees, consultant fees, deposition fees, court reporter fees, photocopy charges, and expenses reasonably related and necessary for the investigation, pursuit and recovery of the Assigned Claims. MSP Recovery shall pay all Costs upfront for each Assigned Claim, however, in the event of a settlement and/or recovery of a judgment amount, MSP Recovery shall seek court approval to recover said Costs from third parties. To the extent that costs are recovered from a third party, such recovered Costs shall not be deducted in determining Net Proceeds with respect to such Assigned Claim.

### ARTICLE III

3.1.  Recoveries; Settlements.

Any and all amounts recovered by MSP Recovery in connection with the Assigned Claims will be reported to Client on a monthly basis *via* automatic electronic reports. Client shall designate an electronic email address to obtain such information. All payments received by MSP Recovery shall be segregated into a segregated lockbox account entitled MSP Recovery - _____". Client shall receive payments

Recovery Agreement        MSP ✓        Client [initials]        Page 3 of 17

by the 10th of each month for the prior month's activity of all cleared funds, minus any costs incurred for any claims and/or expenses during the prior month.

3.2. Closing Statement.

Upon a recovery and the conclusion of a particular representation with regard to an Assigned Claim, MSP Recovery shall provide Client a closing statement reflecting an itemization of all costs and expenses, together with the total amount of recovery. MSP Recovery shall retain a copy of this Agreement and any closing statements for six (6) years after execution of the closing statement. During such period, Client may inspect these documents at reasonable times and upon reasonable notice.

## ARTICLE IV

4.1 Assignment of Claims.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "Assigned Claims", excluding those claims previously identified by other vendors currently under contract with Client. The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

4.2 Continuing Assignment.

Client acknowledges that Claims that arise after the Effective Date of this Agreement ("Prospective Claims") shall also be assigned to MSP Recovery as the Client's data is transferred to MSP Recovery for Claims' analysis and to pursue possible recovery on the Assigned Claims, excluding those claims previously identified by other vendors currently under contract with Client. In order to convey to MSP Recovery the assignment of the Prospective Claims, Client shall execute the addendum in the form attached as Exhibit A to this Agreement (the "**Assignment Addendum**").

## ARTICLE V

5.1. Proprietary Information.

Recognizing the parties' proprietary interests in their respective business operations, MSP Recovery and Client each acknowledge the confidential nature of their relationship, and any information or data relating to the business operations, systems, components, customers, prices, methods, plans, programs or results exchanged by the parties shall remain confidential and collectively be referred to as "**Trade Secrets**". The parties shall not disclose any information, including protected health information, pertaining to Client's members, patients, and/or methods of recovery, and Trade Secrets.

Case 1:19-md-02875-RBK-SAK Document 2672-4 Filed 03/06/24 Page 6 of 19
Case 1:22-cv-51692B-STAK Document 1-7 Filed 06/14/22 Page 6 of 18
PageID: 99311

## ARTICLE VI

6.1. Representations, Warranties, and Covenants.

(a) General Warranties of Both Parties. Each party's execution, delivery and performance of this Agreement has been duly authorized by all appropriate corporate action and this Agreement constitutes a valid, binding and enforceable obligation as to each party.

(b) Client's Representations, Warranties, and Covenants.

i. Neither the execution, delivery, nor performance of this Agreement will conflict with or violate any other agreement, license, contract, instrument or other commitment or arrangement to which Client is bound.

ii. Client has all right, title, interest in and ownership of the Claims being assigned subject to this Agreement, free and clear of all liens and encumbrances.

iii. Client will cooperate with MSP Recovery and deliver to MSP Recovery all information relating to the Assigned Claims, including all Assigned Documents, to enable MSP Recovery to perform the Services and recover the Assigned Claims.

## ARTICLE VII

7.1. Successors and Assigns.

This Agreement shall be binding upon the successors, legal representatives or assigns of the parties hereto.

7.2. Indemnification.

Client shall indemnify MSP Recovery in connection with any recoveries that may be owed and/or are claimed by any of Client's first tier and/or downstream providers. This includes, but is not limited to, Maintenance Service Organizations, Independent Physicians Associations and/or any other entity. However, this does not include any claims previously identified by other vendors currently under agreement with Client

7.3. Governing Law and Venue.

The interpretation, construction and enforcement of this Agreement shall be in accordance with the laws of the State of Ohio, without regard to any conflict of laws principles that would apply any laws other than those of the State of Ohio and any action, whether in law or in equity must be commenced and maintained in federal or state court within Summit County, Ohio.

7.4. Severability.

Should any term(s) of this Agreement be deemed unenforceable, all other terms shall survive and remain in full force and effect. This includes any and all financial terms, rulings and/or other findings of the Centers for Medicare and Medicaid Services ("CMS"), Agency for Health Care Administration, or of a court of competent jurisdiction.

7.5. Entire Agreement.

Case 1:19-md-02875-RMB-SAK Document 1-7 Filed 06/14/22 Page 7 of 18
Case 1:22-cv-16923-SAK Document 26-2 Filed 03/06/24 Page 7 of 19
PageID: 99312

This Agreement sets forth the entire agreement of the Parties. The parties agree that this Agreement has been drafted by both parties and shall not be construed against or in favor of one party or the other.

7.6. Attorneys' Fees.

In the event of any controversy arising under or relating to the interpretation or implementation of this Agreement or any breach thereof, the prevailing party shall be entitled to payment for all costs and reasonable attorney's fees (both trial and appellate) incurred in connection therewith. The terms of this Section shall survive any termination of this Agreement.

7.7. Waiver.

A waiver by any party of any of the terms of this Agreement shall not be construed as a general waiver by the party and the party is free to reinstate any such term or condition, with or without notice to the other.

7.8 Notice.

All notice and other communications required or permitted hereunder or convenient in connection herewith shall be in writing and shall be deemed to have been given when mailed via certified mail, return receipt requested or sent via electronic delivery as follows:

| If to: | MSP Recovery | If to: | Client |
| --- | --- | --- | --- |
| | 5000 SW 75 Ave, Suite 400 | | |
| | Miami, FL 33155 | | |
| | Attn: Mr. Frank C. Quesada | | |
| | Chief Legal Officer | Attn: | _____ |
| | Phone: 305-614-2222 | Phone: | _____ |
| | Email: FQuesada@msprecovery.com | Email: | _____ |

or to such other names and addresses as Company or Client shall designate by notice to the other Party hereto in the manner specified in this Section.

7.9 Amendment.

This Agreement may be amended, in whole or in part, at any time by mutual written agreement of the parties, subject to any regulatory approvals as may be required by law.

7.10 Assignment.

This Agreement may not be assigned without the prior written consent of the other party, which consent shall not be unreasonably withheld. Notwithstanding the foregoing, either party may assign this Agreement, in whole or in part, to any corporate successor or any corporation that is its sole corporate member, without the consent of the other party.

7.11 Term.

This Agreement shall be effective as of the Effective Date set forth herein and shall have an initial term of one (1) year, unless terminated earlier pursuant to the provisions of this Agreement. This Agreement shall automatically renew for successive terms of one (1) year unless terminated as set forth below.

7.12 Termination With Cause.

In the event either party breaches this agreement, the non-breaching party may terminate this Agreement for cause upon thirty (30) days written notice to the breaching party. The breaching party shall have thirty (30) days to cure the breach. In the event the breach is not cured within the thirty (30) days, the termination shall be effective pursuant to the terms of this notice. Failure by MSP Recovery to make timely payments constitutes a breach of this Agreement.

7.13 Termination Without Cause.

Either party with sixty (60) days advance written notice to the other party, may terminate this Agreement without cause.

7.14 Disputes.

Any dispute which arises out of or relates to this Agreement or a breach of this Agreement shall be referred first to the Management Dispute Resolution Process. The "Management Dispute Resolution Process" shall mean the efforts by management and senior management of all parties involved in the dispute to appropriately research and investigate the facts and circumstances surrounding the dispute, and to resolve the dispute by good faith negotiation and cooperation among the parties.

In the event that (a) the Management Dispute Resolution Process does not resolve a dispute in the reasonable opinion of the parties involved, or (b) 60 days have passed since a dispute was referred to the Management Dispute Resolution Process, then the parties mutually agree to settle the dispute by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, in which the Arbitrator(s) may assess compensatory damages only, and in no event shall the arbitrator assess consequential or punitive damages. The compensation and expenses of the Arbitrator and any administrative fees or costs associated with the arbitration proceedings shall be borne equally by the parties. In addition, each party shall pay its own fees and expenses incurred in connection with any arbitration proceeding, including but not limited to attorneys' fees and expenses, expenses incurred preparing for arbitration, witness fees and expenses, copying expenses, and other similar fees and expenses. Arbitration shall take place in a reasonable location selected by the respondent.

7.15 Independent Contractor.

None of the provisions of this Agreement are intended to create, nor shall be deemed or construed to create any relationship between the parties other than that of independent entities contracting with one another solely for the purposes of effecting the provisions of this Agreement. Neither of the parties hereto, nor any of their respective officers, directors, employees or agents shall have authority to bind the other or shall be deemed or construed to be the agent, employee or representative of the other except as may be specifically provided herein. Neither party, nor any employees or agents thereof, shall have any claim under this Agreement nor otherwise against the other party for social security benefits, workman's compensation, disability benefits, unemployment insurance, vacation, sick pay or any other employee benefits of any kind.

7.16 Protected Health Information.

The Parties agree that Protected Health Information, as defined in 45 CFR 160.103, may be exchanged by the Parties and the Parties will comply with the Business Associate Agreement, set forth in **Exhibit B**, attached hereto and incorporated.

Recovery Agreement         MSP _____         Client _____         Page 7 of 17

Case 1:10-md-02875-RMB-SAK Document 2672-4 Filed 06/14/22 Page 9 of 18
Case 1:22-cv-51828-SAK Document 17-7 Filed 03/06/24 Page 9 of 19
PageID: 99314

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the date first written above.

SummaCare, Inc.

Sign: _____

Print: STEPHEN ADAMSON

Title: Chief Operating Officer

MSP Recovery, LLC

Sign: _____

Print: Jorge A Lopez

Title: Asst. Gen Counsel.

Recovery Agreement    MSP ___    Client ___    Page 8 of 17

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 06/14/22 Page 10 of 18
Case 1:22-cv-51092B-SAK Document 2672-4 Filed 03/06/24 Page 10 of 19
PageID: 99315

## EXHIBIT A

### Assignment Addendum

### FORM OF ASSIGNMENT ADDENDUM

This Assignment Addendum ("Agreement") is made this __12__ day of May, 2017, ("**Effective Date**") by and between SummaCare, Inc, an Ohio Corporation ("**Client**") and MSP Recovery, LLC, a Florida Limited Liability Company and/or its assigns ("**MSP Recovery**").

WHEREAS, on __May 12__, 2017 (the "**Effective Date**") Client and MSP Recovery entered into the Recovery Agreement; and

WHEREAS, pursuant to the Recovery Agreement, Client has irrevocably assigned to MSP Recovery all right, title, interest, and ownership of the Assigned Claims; and

WHEREAS, Client wishes to assign to MSP Recovery all right, title, interest in and ownership of the Claims arising between the date hereof and the Effective Date.

NOW THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree to as follows:

### ARTICLE I

**1.1** Assignment of Claims

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all Claims existing on the date hereof, whether based in contract, tort, statutory right, and any and all rights (including, but not limited to, subrogation) to pursue and/or recover monies for Client that Client had, may have had, or has asserted against any party in connection with the Claims and all rights and claims against primary payers and/or third parties that may be liable to Client arising from or relating to the Claims, including claims under consumer protection statutes and laws, and all information relating thereto, all of which shall constitute the "**Assigned Claims**". The transfer, grant, right, or assignment of any and all of Client's right, title, ownership, interest and entitlements in and to the Assigned Claims shall remain the confidential and exclusive property of MSP Recovery or its assigns. This assignment is irrevocable and absolute.

Client hereby irrevocably assigns, transfers, conveys, sets over and delivers to MSP Recovery, and any of its successors and assigns, any and all of Client's right, title, ownership and interest in and to all documents relating to the Assigned Claims (the "**Assigned Documents**"). The Documents include, but are not limited to, those documents listed on Schedule A to the attached.

### ARTICLE II

**2.1** Successors and Assigns

This Addendum shall be binding upon the successors, legal representatives or permitted assigns of the parties hereto.

Recovery Agreement            MSP ____            Client ____            Page 9 of 17

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 03/06/24 Page 11 of 19
Case 1:22-cv-15928-SAK Document 17 Filed 06/14/22 Page 11 of 18
PageID: 99316

2.2    Incorporation of Recovery Agreement

All terms, representations, warranties and covenants in the Recovery Agreement are incorporated herein and are applicable to the parties to this Assignment Addendum.

IN WITNESS WHEREOF, the parties have hereunto set their hands effective the date first written above.

SummaCare, Inc.
Sign: _____
Print: STEPHEN ADAMSON
Title: Chief Operations Officer

MSP Recovery, LLC
Sign: _____
Print: Jorge A. Lopez
Title: Asst Gen Counsel

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 03/06/24 Page 12 of 19
Case 1:22-cv-15928-SAK Document 17 Filed 06/14/22 Page 12 of 18
PageID: 99317

## SCHEDULE A

1) Documentation of services rendered and any payments made for those services

2) Any documentation required to establish liability of third-party payer, including related medical records [3]

---

[3] Subject to HIPAA compliance regulations and confidentiality requirements

Recovery Agreement        MSP ____        Client ____        Page 11 of 17

Case 1:22-cv-10928-FAK Document 267 Filed 07/14/23 Page 13 of 19
PageID: 99318

# EXHIBIT B

## Business Associate Agreement

This Business Associate Agreement, effective May 4, 2017 ("Effective Date"), is entered into by and between SummaCare, Inc. and Summa Insurance Company, Inc. (collectively "Health Plan" or "Covered Entity"), both located at 10 N. Main St., Akron, Ohio, 44308 and MSP Recovery, LLC ("Business Associate") located at 5000 SW 75 Ave, Suite 400, Miami, Florida 33155.

WHEREAS Health Plan is a Health Insurance Corporation and Insurer engaged in works with providers, patients and employers to provide a comprehensive community focused health plan;

WHEREAS in order to effectively carry out its operations, it is necessary for Health Plan to contract with entities who provide additional services;

WHEREAS Health Plan has engaged Business Associate to carry out such identified services, which includes the use and disclosure of Protected Health Information;

NOW THEREFORE, for and in consideration of the mutual promises and covenants contained herein and in order to assure compliance with 45 C.F.R. Parts 160 and 164 on privacy and confidentiality and security, the parties agree as follows:

### SECTION I. DUTIES OF BUSINESS ASSOCIATE

Business Associate shall use Protected Health Information for the purpose described below in Section II.

### SECTION II. PROTECTED HEALTH INFORMATION

For purposes of this Agreement, "Protected Health Information," as defined at 45 C.F.R. §160.103, and as may be periodically revised or amended by the U.S. Department of Health and Human Services, the U.S. Congress or other federal agency, means information that is received from, or created or received on behalf of, Health Plan and is information about an individual which relates to the past, present or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual. Protected Health Information (PHI) also either identifies the individual or there is a reasonable basis to believe the information can be used to identify the individual. Protected Health Information pertains to both living and deceased individuals. Electronic Protected Health Information ("EPHI") means individually identifiable health information that is transmitted by or maintained in electronic media.

A. Business Associate's use and/or disclosure of PHI shall be limited to only those purposes below that are necessary to perform its obligations under this Agreement:
    1. Business Associate shall use PHI only for the following purposes: to identify potential recovery and reimbursement rights related to health care claims paid for by the Health Plan/Covered Entity for which a primary payer was responsible.
    2. Business Associate shall not disclose the Protected Health Information unless otherwise expressly approved by Health Plan.

Recovery Agreement        MSP         Client              Page 12 of 17

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 03/06/24 Page 14 of 19
Case 1:22-cv-51523-RMB-SAK Document 17 Filed 06/14/22 Page 14 of 18
PageID: 99319

B. Unless otherwise limited by this Agreement, Business Associate may also:
   1. Use the PHI in its possession for the proper management and administration of Business Associate or to carry out its legal responsibilities.
   2. Disclose the PHI in its possession for the proper management and administration of Business Associate or to carry out its legal responsibilities, if such disclosure is required by law or is addressed in this Agreement.
C. Business Associate may not use or disclose Protected Health Information in any manner that would constitute a violation of 45 C.F.R. Parts 160 and 164 if used or disclosed by Health Plan.
D. Business Associate agrees to not use or further disclose Protected Health Information other than as authorized by this Agreement or as required by law.
E. Business Associate shall use appropriate safeguards to prevent uses or disclosures of Protected Health Information other than as provided for by this Agreement.
F. Business Associate shall comply with the Security Provisions of 45 CFR §§164.308, 164.310, 164.312 and 164.316 in the same manner as these regulations apply to Health Plan or Covered Entities.
G. Business Associate shall implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of EPHI that Business Associate creates, receives, maintains, or transmits on behalf of Health Plan.
H. If Business Associate becomes aware of any use or disclosure of Protected Health Information not provided for by this Agreement, it shall report such use or disclosure to Health Plan within three business days of gaining such knowledge.
I. Business Associate shall report to Health Plan any security incident within three business days of becoming aware of such incident. For the purposes of this paragraph, "security incident" shall mean the attempted or successful unauthorized access, use, disclosure, modification, or destruction of information or interference with systems operations in an information system.
J. Business Associate shall require that its agents, including subcontractors, to whom it provides Protected Health Information under this Agreement, agree to the same restrictions and conditions that apply to Business Associates with respect to such information.
K. Business Associate shall ensure that any agent to whom it provides EPHI, including a subcontractor, agrees to implement reasonable and appropriate administrative, physical and technical safeguards to protect the confidentiality, integrity, and availability of such EPHI.
L. Within fifteen business days of a request by Health Plan, Business Associate agrees to comply with Health Plan's request to accommodate an individual's access to his/her Protected Health Information. In the event an individual contacts Business Associate directly about access to Protected Health Information, Business Associate will not provide access to the individual but shall forward such request to Health Plan within three business days of such contact.
M. Within fifteen business days of a request by Health Plan, Business Associate agrees to comply with Health Plan's request to make amendments to Protected Health Information. Business Associate shall promptly incorporate any such amendments into the Protected Health Information. In the event an individual contacts Business Associate directly about making amendments to Protected Health Information, Business Associate will not make any amendments to the individual's Protected Health Information but shall forward such request to Health Plan within three business days of such contact.
N. Business Associate shall keep a record of disclosures of Protected Health Information and agrees to make information regarding disclosures of Protected Health Information available to Health Plan within fifteen days of a request by Health Plan. Business Associate shall provide, at a minimum, the following information: (i) the date of disclosure; (ii) the name of the entity or person who received the Protected Health Information, and the address of such entity or person, if known; (iii) a brief description of the Protected Health Information disclosed; (iv) a brief statement regarding the purpose and explanation of the basis of such disclosure and (v) the names of all individuals whose protected health information was disclosed.

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 06/14/22 Page 15 of 18
Case 1:22-cv-15923-SAK Document 26 Filed 03/06/24 Page 15 of 19
PageID: 99320

O. Business Associate agrees to comply with any other restrictions on the use or disclosure of Protected Health Information that Health Plan may from time to time request.

P. Business Associate shall make its internal practices, books and records relating to uses and disclosures of Protected Health Information available to Health Plan, or to the Secretary of the U.S. Department of Health and Human Services or designee, for purposes of determining Health Plan and Business Associate compliance with 45 C.F.R. Parts 160 and 164.

Q. Upon the termination of this Agreement, Business Associate shall return or destroy all Protected Health Information and will retain no copies of such information. If such return or destruction of Protected Health Information is not feasible as approved by Health Plan, Business Associate agrees that the provisions of this Agreement are extended beyond termination to the Protected Health Information, and Business Associate shall limit all further uses and disclosures to those purposes that make the return or destruction of the Protected Health Information infeasible.

### SECTION III. HITECH

A. Business Associate will implement administrative, physical and technical safeguards consistent with 45 CFR §§164.308, 164.310 and 164.312 to protect the confidentiality, integrity and availability of the EPHI that it receives, creates, transmits or maintains on behalf of Health Plan in the same manner as these regulations apply to Health Plan.

Business Associate will adopt, maintain and update written policies and procedures consistent with requirements of 45 CFR §164.316 with respect to its administrative, physical and technical safeguards.

B. Business Associate may use and disclose PHI only if such use or disclosure is in compliance with each applicable requirement of 45 CFR §164.504(e) and this Agreement. The additional requirements of Subtitle D of the American Recovery and Reinvestment Act of 2009 (ARRA) (ARRA §§13400-13424) that relate to privacy and that are made applicable with respect to covered entities are also applicable to Business Associate and are hereby incorporated into this Agreement.

C. Business Associate will refrain from marketing practices prohibited by Section 13406 of HITECH.

D. Effective as of the effective date of regulations promulgated by the Department of Health and Human Services under Section 13405(d) of HITECH, Business Associate will not receive or provide direct or indirect remuneration in exchange for any PHI in a manner that would violate Section 13405(d) of HITECH.

E. Business Associate will:

- have in place policies and procedures that are designed to detect the inappropriate acquisition, access, use or disclosure of PHI. Business Associate's workforce and its agents have received the training on such policies and procedures that Business Associate deems appropriate.

- notify the Covered Entity as soon as practicable and (except in the event of a law enforcement delay as provided in 45 CFR §164.412) in no case later than 10 business days after the discovery of an acquisition, access, use or disclosure in a manner not permitted by the HIPAA privacy regulations of PHI that Business Associate accesses, maintains, retains, modifies, records, stores, destroys or otherwise holds, uses or discloses on behalf of the Covered Entity.

At the time of such notice or as soon as reasonably possible thereafter (and in no case later than 30 calendar days), Business Associate will provide the identification of each individual whose unsecured PHI has been, or is reasonably believed by Business Associate to have been, acquired, accessed, used or disclosed during such breach.

- assist the Covered Entity in assessing whether the impermissible acquisition, access, use or disclosure of PHI poses a significant risk of financial, reputational or other harm to the individuals whose information is involved.

- will provide notification at its own expense in a form acceptable to the Covered Entity without unreasonable delay and in compliance with applicable law if the Covered Entity determines that individuals whose data is affected by the impermissible acquisition, access, use or disclosure of PHI must be notified pursuant to 45 CFR Part 164 Subpart D.

F. Business Associate shall determine the amount minimally necessary consistent with the requirements in Section 13405(b) of HITECH, or as otherwise specified in regulations promulgated by the Secretary of the Department of Health and Human Services.

## SECTION IV. TERM AND TERMINATION

This Agreement shall terminate upon the completion of the underlying Agreement or if Covered Entity or knows of a pattern of activity or practice of the Business Associate that constitutes a material violation of the Business Associate's obligations under 45 CFR Part 164 Subpart E. Covered Entity will notify the Business Associate and provide a reasonable period for the Business Associate to cure or end the violation. If the Business Associate does not cure or end the violation within ten days of notice, Covered Entity will, if feasible, terminate its service agreement with the Business Associate. If termination of the service agreement is not feasible, Health Plan shall report the violation to the Department of Health and Human Services.

## SECTION V. INDEMNIFICATION

Business Associate agrees to indemnify, defend and hold Health Plan and its officers, directors, and employees harmless from any alleged claim or penalty against Health Plan or its officers, directors or employees arising from any allegation of uses and/or disclosures of PHI or EPHI in violation of 45 C.F.R. Parts 160 and 164 arising from an alleged use or disclosure of PHI or EPHI by Business Associate or its agents or subcontractors, including any penalties attributed to the failure of Business Associate to notify Health Plan within the timeframes set forth in section III above.

## SECTION VI. BOOKS AND RECORDS

To the extent Section 952 of the Omnibus Reconciliation Act of 1980 (Public Law 96-499) is found applicable to this Agreement, until the expiration of six (6) years after the furnishing of service pursuant to this Agreement, Business Associate agrees to make available upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or to any of their duly authorized representatives, this Agreement. and books, documents and records of the Business Associate that are necessary to certify the extent of any costs of Health Plan arising from this Agreement. Further, if Business Associate carries out any of its duties arising from this Agreement through a subcontractor, with a value or cost of Ten Thousand Dollars ($10,000) or more over a 12-month period, with a related organization, such subcontract shall contain a clause to the effect that until the expiration of four (4) years after the furnishing

Recovery Agreement        MSP        Client        Page 15 of 17

of such services pursuant to such subcontract, the related organization shall make available, upon written request to the Secretary of Health and Human Services, or upon request to the Comptroller General, or any of their duly authorized representatives, the subcontract, books, documents, and records of such organization that are necessary to verify the nature or extent of such costs.

## SECTION VII. AMENDMENT

A. To the extent that any provision of this Agreement is in conflict with any law, regulation, rule, or administrative policy of any governmental entity, this Agreement will have been deemed to have been amended in order to bring it into conformity with these provisions.
B. Except as stated in paragraph A of this Section, this Agreement may be amended only in a written agreement signed by both parties.

## SECTION VIII. GOVERNING LAW

This Agreement will be executed, delivered, integrated, construed and enforced pursuant to and in accordance with the laws of the State of Ohio.

## SECTION IX. ASSIGNMENT

This Agreement may not be assigned by either party without the prior written consent of the other party. Except for the prohibition on assignment contained in the preceding sentence, this Agreement shall be binding upon and inure to the benefits of the heirs, successors, and assigns of the parties hereto.

## SECTION X. WAIVER OF BREACH

The waiver by either party of a breach or a violation of this Agreement shall not operate as, or be construed to be, a waiver of any subsequent breach of same or other provision hereof. No waiver shall be effective against any party hereto unless in a writing signed by that party.

## SECTION XI. NOTICES

All notices, requests, demands, approvals, and other communications required or permitted by this Agreement shall be in writing and sent by certified mail or by personal delivery. Such notice shall be deemed given on any date of delivery by the United States Postal Service. Any notice shall be sent to the following address:

If to Health Plan:
  SummaCare, Inc.
  10 N. Main St.
  Akron, OH 44308
  ATTN: President
  CC: Privacy Officer

If to Business Associate:
  Name:      MSP Recovery, LLC
  Address:   5000 SW 75 Avenue, Suite 400
  City:      Miami
  State:     Florida
  Zip:       33155
  ATTN:      Mr. Frank C. Quesada, Chief Legal Officer

Recovery Agreement        MSP ___        Client ___        Page 16 of 17

Case 1:19-md-02875-RMB-SAK Document 2672-4 Filed 03/06/24 Page 18 of 19
Case 1:22-cv-51928-STAK Document 1-7 Filed 06/14/22 Page 18 of 18
PageID: 99323

## SECTION XII. SEVERABILITY

If any provision of this Agreement is held invalid, the remainder of this Agreement shall not be affected unless the invalid provision substantially impairs the benefits of the remaining provisions of this Agreement.

## SECTION XIII. SURVIVAL

The responsibilities of Business Associate under the provisions of Section IV of this Agreement shall survive termination of this Agreement indefinitely.

**IN WITNESS WHEREOF**, each of the undersigned has caused this Agreement to be duly executed in its name and on its behalf as of the Effective Date.

SummaCare, Inc.

MSP Recovery, LLC

Business Associate

_____  
Signature

_____  
Signature

Stephen Adamson  
Printed Name

Jorge A. Lopez  
Printed Name

Chief Operations Officer  
Title

Asst Gen Counsel  
Title

5/16/2017  
Date

5/12/2017  
Date



SummaCare
1200 E Market St, Suite 400
Akron, OH 44305-4018
summacare.com

September 5, 2018

MSP Recovery, LLC
5000 SW 75 Ave, Suite 400
Miami, FL 33155

Re: Recovery Agreement

This letter is in reference to that certain Recovery Agreement dated May 12, 2017 by and between SummaCare, Inc. and MSP Recovery, LLC. (the "Recovery Agreement"). This will confirm, pursuant to the Recovery Agreement, that Summacare, Inc. has consented to, approved and ratified the assignment of the Recovery Agreement executed on June 12, 2017 by MSP Recovery, LLC, and all rights contained therein, including all claims and reimbursement rights, to and in favor of MSP Recovery Claims Series, LLC or any of its designated series, including but not limited to, Series 16-11-509.

Summacare, Inc.,
an Ohio corporation

_____
Signature

*Stephen Adamson*
Print Name

*Chief Operating Officer*
Title

9/7/2018
Date