# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875** |
| **THIS DOCUMENT RELATES TO ALL CASES** | **HON. ROBERT B. KUGLER CIVIL NO. 19-2875 (RBK)** |

## PLAINTIFFS' TRIAL BRIEF

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

LEGAL ISSUES ....................................................................................................1

   1. Maggie Kong Should Be Precluded From Testifying ...................................1

   2. Jinsheng Lin, Ph.D Should Be Precluded From Testifying .........................4

   3. Defendants Should Be Compelled to Produce Requested Financial
      Information Related to Punitive Damages ....................................................6

   4. The Court Should Preclude Defendants from Calling John Ruiz at Trial
      and Should Quash any Subsequent Subpoenas Issued by Defendants..........11

   5. Plaintiffs Should Be Allowed to Call Greg Cowhey If Necessary ...............14

   6. Plaintiffs Should Be Permitted to Call Witnesses Confirming
      Defendants' Pre-Suit Notice If Necessary....................................................14

   7. Plaintiffs Should Be Allowed to Call James MacDonald if Necessary
      to Address Defendants' Hearsay Objections to His Email Exchange
      with Charles Wang ........................................................................................15

   8. Retailer Defendants Should Not Be Permitted to Object to Testimony,
      as They Are Not Parties to the Trial.............................................................16

   9. Plaintiffs Can Present the Testimony of Jucai Ge, Hai Wang, and Other
      Witnesses by Video Deposition Designations................................................17

   10. Dr. Hecht and Other Experts Should Not Be Subjected to Unreasonable
       Questioning on Cross-Examination................................................................18

   11. This Trial Does Not Require the Jury to Assess Any "Translating
       Mechanism"..................................................................................................19

   12. Defendants' Request for Additional MSP Assignment Documents .............20

13. Defendants' Request to Present Non-Responsive Answers to Deposition Questions ........................................................................22

14. Defendants' Request to Preclude Testimony of Wholesaler and Retailer Witnesses .............................................................................23

15. Plaintiffs' Rule 37 Motion Regarding Baohua Chen ....................................23

CONCLUSION ........................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*,
  2017 WL 1471491 (M.D. Pa. 2017) ........................................................ 14

*Blue Gentian v. Tristar Prod., Inc.*,
  2019 WL 13165269 (D.N.J. Jan. 18, 2019) ........................................... 13

*Gares v. Willingboro Twp.*,
  90 F.3d 720 (3d Cir. 1996) ..................................................................... 9

*Graham v. Carino*,
  No. CIV.09-4501 JEI/AMD,
  2010 WL 2483294 (D.N.J. June 4, 2010) ............................................... 9

*Herman v. Sunshine Chemicals*,
  133 N.J. 329, 627 A.2d 1081 (1993) ..................................................... 7

*In re Grand Jury Empaneled on Apr. 6, 1993*,
  869 F. Supp. 298 (D.N.J. 1994) ............................................................. 20

*In re Kayati*,
  2018 WL 2059800 (Bankr. D.N.J. 2018) .............................................. 13

*Lightning Lube, Inc. v. Witco Corp.*,
  802 F. Supp. 1180 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993)..... 10

**Rules**

Fed R. Civ. P. 30 ........................................................................................ 16

Fed R. Civ. P. 45 ........................................................................................ 11

Fed. R. Evid. 901 ....................................................................................... 20

Plaintiff MSP Recovery Claims, Series LLC ("MSP") on behalf of itself and the certified TPP class ("Plaintiffs"), hereby submit this trial brief for the Court's consideration.

## PRELIMINARY STATEMENT

The Court has the benefit of extensive briefing, including but not limited to dispositive motions and motions in limine, setting forth the facts and many legal issues in great detail. Those briefs and issues are not summarized or addressed herein except by reference where relevant. Plaintiffs reserve the right to supplement this submission as necessary.

## LEGAL ISSUES

### 1. Maggie Kong Should Be Precluded From Testifying.

In the past several weeks, ZHP advised that it intends to call Maggie Kong to testify live at trial. It is Plaintiffs' understanding that Maggie Kong started as ZHP Chairman Baohua Chen's "chief of staff" in late 2017.

ZHP's suggestion that it may call Maggie Kong to testify at trial is perplexing. Ms. Kong has never been deposed, and this is because ZHP filed a brief on August 13, 2021 that opposed the mere production of Ms. Kong's custodial file based on multiple arguments as to her lack of substantive involvement in the events at issue, and her lack of first-hand knowledge as to anything of significance. ZHP's argument in its brief opposing production of her custodial file was unequivocal:

Of great concern to the ZHP Parties, Plaintiffs have stated in correspondence and in its submissions to the Court, that the Court has ordered the custodial file of Maggie Kong to be produced when, as the Court is well aware, ***there is no such order***. Plaintiffs have failed to cite any such order on the docket, and have instead cited this Court's instruction to the parties that Ms. Kong's custodial file be ***collected***, not produced. As even the Court hearing transcripts cited by Plaintiffs make clear, the Court permitted the ZHP Parties to assert their objections on proportionality grounds in this brief, in response to Plaintiffs' motion to compel. *See* Ex. M, 5/12/2021 Tr. 32:15-33:1; and Ex. N, 6/25/21Tr. 30:15-17.

As set forth in the ZHP Parties' prior objections, Ms. Kong is the Chief of Staff to the President of ZHP, Baohua Chen; and she did not join ZHP until late 2017, ***several years after many of the events at issue in this case***. *See* Dkt. 1237 at 6-7. As a member of the President's staff, she has no direct role in the development, manufacturing, testing or sale of valsartan, nor does she have any regulatory responsibilities at ZHP. *Id*. Plaintiffs have indicated that their primary goal in collecting Ms. Kong's custodial file is to locate the dates and times of certain meetings involving Mr. Chen; however, the ZHP Parties have confirmed that Ms. Kong does not keep a hardcopy calendar, and the ZHP Parties' production to date demonstrates that calendaring software is rarely, if ever, used among ZHP's employees, including Ms. Kong. *See, e.g.,* Exs. C, A, and B, Excerpts of 4-22-21 Min Li Deposition at 593:23 – 594:19; 5-4-21 Linda Lin Deposition at 16:15 – 17:13; and 5-27-21 Jun Du Deposition at 85:18 – 86:8, respectively. Further, the Court has already ordered, and ZHP has produced, the files of Baohua Chen, and any responsive information in Ms. Kong's documents is likely to be duplicative of the information produced from Mr. Chen's files. *See Arconic Inc. v. Novelis Inc.,* No. 17-1434, 2019 WL 5802365, at *20 (W.D. Pa. Sept. 6, 2019) (denying request to add custodian because employee "was working at the direction

of" an existing custodian).

In addition, because the ZHP Parties do not have a general counsel, Ms. Kong serves as the primary contact with the ZHP Parties' attorneys; accordingly, responsive documents within her custodial file contain privileged information, and, for reasons set forth below, a detailed review of her custodial file would therefore be unduly burdensome. *Id*. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any ***nonprivileged matter*** that is relevant to any party's claim or defense and ***proportional to the needs of the case***, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and ***whether the burden or expense of the proposed discovery outweighs its likely benefit***."). After collecting Ms. Kong's custodial file, applying the court-ordered search terms rendered 37,579 document hits, inclusive of families; of that number, 16,339 documents, inclusive of families, were hits for privilege terms. Accordingly, ***more than 43%*** of the documents at issue are likely to be privileged.

In light of the testimony of ZHP's witnesses that the information Plaintiffs claim they are seeking (i.e., calendar and meeting invitations) does not exist in Ms. Kong's custodial file; Plaintiffs' failure to articulate what unique information they are seeking from Ms. Kong that has not been captured by Mr. Chen's production of documents; and the burden of reviewing the extraordinarily high number of privileged documents in Ms. Kong's files, it is disproportionate to the needs of this case to compel the ZHP Parties to review and produce Ms. Kong's custodial file. Accordingly, Plaintiffs' request should be denied.

(ECF 1485).

In other words, according to ZHP, Ms. Kong joined the company so late in

3

the timeline and was so far removed from the operative events, including that she had, "no direct role in the development, manufacturing, testing or sale of valsartan, nor does she have any regulatory responsibilities," that ordering the production of her custodial file would be disproportionate to her value as a witness.

Against this backdrop, ZHP's last second decision to call Ms. Kong as a witness raises serious questions.  ZHP's description of anticipated testimony for Ms. Kong states: "Ms. Kong is expected to testify about the Chinese side of the voluntary recall of valsartan, including communications with pharmaceutical clients, procurement of testing materials, and organization of manpower to test batches of Valsartan and collect information to be passed on to regulators, pharmaceutical clients, and the public at large."  This summary raises more questions than it answers, suggesting that there is a need for testimony as to the mechanisms of the recall, and that she can testify to the other ambiguously listed areas, without any specificity.

This trial is already quite complex.  Inserting this new witness into the case at this stage is obviously problematic, based in large part on ZHP's clearly stated position that she has no substantively material knowledge or experience (which ZHP is judicially estopped from denying). It would be unfair, distracting, and unduly prejudicial to the Plaintiffs for this witness to be permitted to testify.

## 2. Jinsheng Lin, Ph.D Should Be Precluded From Testifying.

Jinsheng Lin, Ph.D is the author of the July 27, 2017 email in which he

4

correctly stated that there is NDMA in valsartan, and that the root cause was the sodium nitrite quenching.  ZHP has rolled out a number of weak excuses to try to obscure the meaning of the email since 2021, including claiming that it did not relate to valsartan at all, that it was written about an irbesartan experimental process, that it was written about a wastewater issue, that it was written about a patent mentioned at the end of the email, that it was written about a different nitrosamine impurity, that the words do not mean what they say, and that it was a "lousy email." Most important, every witness deposed on the email admitted that it states that there is NDMA in valsartan as a result of the sodium nitrite quenching, consistent with ZHP's own translation of the document. (*e.g.*, Min Li 4/20/2021 Dep. 82:11-12, 87:19-88:7, 88:13-89:18 (Pls.' ZHP Ex. In Opp. To Defs.' MILs 10); Jun Du 5/27/21 Dep. Tr. 107:12-115:23 (Pls.' ZHP Ex. In Opp. To Defs.' MILs 11); *see also* ZHP00190573, with translations (Pls.' ZHP Exs. In Opp. To Defs.' MILs 18-19, 49)).   ZHP has now decided to further attack its own document, and advised Plaintiffs that they intend to throw a Hail Mary and call Dr. Lin to testify live at trial - presumably to try to explain why the key parts of the email do not mean what they say - contradicting sworn testimony from Dr. Lin's boss Min Li, Jun Du, and others who testified to the contents, and ZHP's own translation of the email.

The primary problem with permitting Dr. Lin's testimony (aside from the serious questions that would have to be answered if Dr. Lin denies the words on the

page) is that Dr. Lin's custodial file is woefully and materially deficient, in violation of the ESI protocol and all relevant discovery orders in the litigation, as well as the governing Federal Rules of Civil Procedure.  Despite the fact that he apparently started to work at ZHP in 2012, the custodial file contains only one document that predates December 2017.  **In fact, the July 27, 2017 email is NOT in Dr. Lin's custodial file and nor is he listed as a duplicate custodian of the email.**[1]

The material insufficiency of Dr. Lin's custodial production places Plaintiffs at a significant and unfair disadvantage, preventing Plaintiffs from fairly conducting a deposition or their cross-examination with access to the full custodial file—for example what came before the email was sent, and what responses Dr. Lin received or documented after sending the email.  ZHP should not be permitted to tie Plaintiffs' hands with a patently inadequate production, on top of first signaling the intention to call him as a witness just weeks before trial.  That would be unfair and unreasonable, and severely distract and unduly prejudice Plaintiffs.

### 3. Defendants Should Be Compelled to Produce Requested Financial Information Related to Punitive Damages.

Plaintiffs first learned on February 20, 2024 that Defendants had collectively

---

[1] As the Court is aware, though the email was sent to eleven people at ZHP, it was only produced as a pdf copied from Min Li's laptop in June 2018, with no metadata, and no other recipients had it in their custodial files or were listed as duplicate custodians.  The only logical explanation is that ZHP intended to conceal the email and any surrounding documents and communications, and it was inadvertently produced.

agreed to request that the Court not bifurcate punitive damages at trial. Defendants notified Plaintiffs by email on February 20, 2024 that, "Defendants do not seek to bifurcate punitive damages. Accordingly, to the extent punitive damages are not resolved on summary judgment, we anticipate they will be tried with the other issues at trial."

Prior to that, Plaintiffs expected that the Defendants would request bifurcation of the punitive damages claims, and that Defendants would not willingly provide discovery with regard to their financial information solely related to punitive damages at least until after the Court ruled on the pending dispositive motions (for example in line with the New Jersey Supreme Court's ruling in *Herman v. Sunshine Chemicals*, 133 N.J. 329, 627 A.2d 1081 (1993)), if not after Plaintiffs prevailed in the first phase of the trial. Plaintiffs communicated with Defendants regarding punitive damages discovery upon learning of Defendants' plan, and Defendants responded that they would not entertain any such requests, as it was too late.

Accordingly, on February 23, 2024, Plaintiffs served Trial Defendants a Notice to Produce in connection with Plaintiffs' punitive damages claims. Plaintiffs requested Trial Defendants produce, in both their original language and any versions in English, the following categories of documents evidencing Trial Defendants' relevant financial information, to supplement the publicly available information collected by Plaintiffs:

1.   <u>Financial Statements</u>: Copies of all financial statements, including but not limited to, income statements, balance sheets, annual reports, statements of net worth, statements of gross sales, revenues, profits, and cash flow statements, for the past three years, for all entities in which you have a financial interest or control.

2.   <u>Tax Returns</u>: Copies of all federal and state tax returns filed by you in the United States for the past three years and, if you are incorporated or have your principal place of business in one or more other countries, copies of all national and provincial tax returns in each such country or countries filed by you in the past three years.

3.   <u>Bank Statements</u>: Copies of all bank statements for all accounts held by you for the past three years.

4.   <u>Asset Documentation</u>: Documentation evidencing ownership and valuation of all assets owned or controlled by you in the last three years, including subsidiaries, affiliates, real property, equipment, information technology hardware, inventories, intellectual property, vehicles, investments, receivables, and any other valuable assets.

5.   <u>Income Documentation</u>: Documentation evidencing all sources of income received by you during the past three years, including but not limited to income from the sale of goods, sale of assets, interest, distributions from subsidiaries, government funding, affiliates or joint ventures, royalty income, rental income, and any other forms of income.

6.   <u>Liabilities:</u> Documentation evidencing all outstanding liabilities and debts owed by you, including payables, mortgages, loans, liens, security interests, and any other financial obligations.

7.   <u>Trusts and Other Entities</u>: Documentation relating to any trusts, corporations, partnerships, or other entities in which you have an ownership interest or control, including but not limited to, subsidiaries, affiliates, joint ventures, trust agreements, partnership agreements, and corporate bylaws.

Plaintiffs requested that Trial Defendants produce the documents at trial on

March 18, 2024, or within three business days prior to trial.  The ZHP, Torrent, and

Teva Defendants served individual, but similar Responses and Objections to Plaintiffs' Notice to Produce on March 4, 2024, each refusing to produce any documents.

Defendants' primary argument appears to be that Plaintiffs' Notice to Produce was untimely served. But Plaintiffs served their Notice to Produce only three days after Defendants notified Plaintiffs that they are not seeking to bifurcate punitive damages. The request does not prejudice Defendants, who undoubtedly would have resisted the request earlier in the case.

Discovery of Defendants' financial condition is obviously relevant because Plaintiffs' complaint includes punitive damages claims. Under the New Jersey Punitive Damages Act, for example, "once the trier of fact determines that punitive damages should be awarded, the trier of fact shall then consider evidence concerning the financial condition of the Defendant in determining the amount of those damages." *Graham v. Carino*, No. CIV.09-4501 JEI/AMD, 2010 WL 2483294, at *3 (D.N.J. June 4, 2010) (internal citations omitted).

Juries take into account evidence of Defendants' financial condition because the "theory behind punitive damages is to punish for the past event and to prevent future offenses, and the degree of punishment resulting from a judgment must be, to some extent, in proportion to the means of the guilty person." *Gares v. Willingboro Twp.*, 90 F.3d 720, 731 (3d Cir. 1996) (internal citations omitted). "In determining

9

whether a defendant's conduct was sufficiently egregious to justify an award of punitive damages, the jury should consider that the purpose of punitive damages is to punish a tortfeasor and deter him and others from similar conduct." *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1195 (D.N.J. 1992), *aff'd*, 4 F.3d 1153 (3d Cir. 1993) (noting that "the financial condition of the [Defendant] and the probable effect thereon of a particular judgment" are factors to be considered in determining the amount of punitive damages to award).

Plaintiffs' request for financial documents is timely and relevant to Plaintiffs' punitive damages claims. Defendants can readily produce this information and should be compelled to produce the requested financial documents by March 15, 2024.

To be clear, though the requested documents are relevant and would aid Plaintiffs in providing more detail about Defendants' respective financial conditions, if the documents are not provided, Plaintiffs will establish the financial condition of each Defendant through their publicly available filings which have been listed on Plaintiffs' exhibit list. Unfortunately, Defendants have so far been unwilling to stipulate to the key publicly available figures including the Defendants' net worth and gross revenues, or to the conversion calculations to US dollars. At the very least, Defendants should be required to provide the most up to date versions of that information and Defendants should stipulate to that information, including

Plaintiffs' calculations of the key net worth and gross revenue figures converted to US dollars.

### 4. The Court Should Preclude Defendants from Calling John Ruiz at Trial and Should Quash any Subpoenas Issued by Defendants.

John Ruiz is the CEO of MSP Recovery Inc., which is a thrice removed affiliated company of MSP Recovery Claims Series, LLC, the plaintiff in this action. Defendants have already clearly signaled their intention to defend the case by attacking Mr. Ruiz and MSP. Defendants listed Mr. Ruiz in the joint pretrial order and served a trial subpoena for Mr. Ruiz to appear in Camden, New Jersey on April 2, 2024 at 8:30 am. The Court should preclude Defendants from calling Mr. Ruiz at trial, quash the subpoena that Defendants issued, and quash any subsequent subpoenas that Defendants may issue to Mr. Ruiz.

As a threshold matter, Defendants' subpoena is defective and any subsequent subpoena would suffer the same defect. Rule 45(c)(1) permits a party to issue a subpoena to attend a trial *only if* the place of compliance is:

> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
>    (i) is a party or a party's officer; or
>    (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). Mr. Ruiz resides in Coral Gables, Florida, which is 1,100 miles further than what is permitted by Rule 45(c)(1)(a). Mr. Ruiz also is not a party

to this action, nor is he an officer of MSP Recovery Claims Series, LLC, and in any event, Coral Gables isn't part of the state of New Jersey.

Further, even if the subpoena wasn't so obviously defective, the Court should still preclude Defendants from calling Mr. Ruiz at trial. As Defendants state in the Joint Pretrial Order, they intend to call Mr. Ruiz to testify because:

> [He] is the CEO of the parent company of Plaintiff MSP and serves as manager of Plaintiff MSP.  He is also the original signatory for the March 20, 2018 Assignment Agreement between Plaintiff and EmblemHealth—one of the dozens of non-party Third Party Payors that assigned their valsartan-related claims to Plaintiff MSP—and therefore presumably oversaw the formation of that agreement, which forms the basis for Plaintiff's lawsuit. Mr. Ruiz later became the trustee of the EmblemHealth claims.  Mr. Ruiz is expected to provide testimony about the formation of the claims assignment agreements for which he was the signatory, including Plaintiff's motive in pursuing those agreements, in filing this lawsuit, and the negotiations that took place between Plaintiff and the non-party assignors prior to and after formation of the assignment. Mr. Ruiz is also expected to testify about his knowledge of Plaintiff MSP, the reliability of the company, and its standing to bring suit.

But even *if true*, none of that is relevant to the action before the Court.  ZHP has indicated in its untimely motion to amend its Answer for a second time that the assignment and MSP's motivations are relevant to a champerty affirmative defense—but there can be no such defense based on the record in this case, and even if there were that would not/should not apply to the MSP assignments (this will be explained more fully in Plaintiffs' response to ZHP's pending motion to amend).

There also is no record support for Defendants' assertion that "Mr. Ruiz later

12

became the trustee of the EmblemHealth claims," and even if there were (there isn't), that would not be relevant to the actual issue in this case: the Defendants' manufacture and sale of contaminated valsartan. More troubling is Defendants' attempt to interject issues that are subject to multiple motions in limine and that the Court rejected a mere two weeks ago. It is plain that when Defendants obliquely state that Mr. Ruiz is expected to testify about "his knowledge of the Plaintiff" and the "reliability of the company," Defendants intend to raise irrelevant, misleading, unduly prejudicial issues related to MSP Recovery Inc.'s business model, finances, stock price, and the SEC investigation. But the Court has already found MSP's business "model leaves a taint only for those naïve as to the realities of doing business," and MSP "does not appear the dastardly fiend the [defendants'] motion portrays." D.E. 2657 at 9.

At bottom, the Court should reject the Defendants' attempt to interject irrelevant and prejudicial testimony into the trial, and not enforce the unenforceable subpoena served on Mr. Ruiz in Floria. *Blue Gentian v. Tristar Prod., Inc.*, 2019 WL 13165269, at *2 (D.N.J. Jan. 18, 2019) ("If the proposed testimony is not relevant – or relevant but inadmissible – a court should quash the subpoena.") (citing *In re Kayati*, 2018 WL 2059800 at *4, (Bankr. D.N.J. 2018)). The Court should preclude Defendants from calling Mr. Ruiz at trial, quash Defendants' defective subpoena, and quash any subsequent subpoena issued by Defendants to Mr. Ruiz.

*Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 2017 WL 1471491, at *3 (M.D. Pa. 2017) (quashing subpoena that exceeded Rule 45's 100-mile limitation).

**5.  Plaintiffs Should Be Allowed to Call Greg Cowhey If Necessary.**

Gregory Cowhey is an accountant with extensive knowledge and experience with regard to the finances of international pharmaceutical companies.  If necessary based on the production of documents and/or arguments to be presented by Defendants relevant to the punitive damages issue, Plaintiffs have notified Defendants of their intention to call Mr. Cowhey to address such documents and arguments. Defendants advised that they will request that his testimony be excluded, in their trial brief.

While Mr. Cowhey was not formally named as an expert in the litigation, it is submitted that the best approach is to await the progress of the trial, and evaluate whether the testimony would be appropriate or necessary depending on other rulings and the Defendants' arguments at trial.

**6.  Plaintiffs Should Be Permitted to Call Witnesses Confirming Defendants' Pre-suit Notice if Necessary.**

Defendants have informed Plaintiffs that they intend to seek to preclude certain named witnesses who are attorneys.  These witnesses, including Daniel Levin, Esq. and David Stanoch, Esq., have been named solely to authenticate and confirm that pre-suit notice letters were sent to the Defendants - only if necessary. This does not implicate any rules that address the testimony of an attorney involved

14

in the case. However, if necessary, the testimony can be easily avoided by Defendants stipulating that the letters were sent to them.

**7. Plaintiffs Should Be Allowed to Call James MacDonald if Necessary to Address Defendants' Hearsay Objections to His Email Exchange with Charles Wang.**

Defendants filed a motion in limine to preclude the use of emails regarding ZHP's consultation of toxicologists Charles Wang and James McDonald (via Charles Wang) as to ZHP's effort to keep its contaminated VCD's on the market in June 2018. (*See* Plaintiffs' Opposition to ZHP MIL 3). ZHP then advocated for an acceptable NDMA level of 31.2 ppm, despite Charles Wang's analysis that a proper level would be 0.11 ppm, and Mr. MacDonald's analysis that the levels in the valsartan were too high to be justified and that the right approach would be to find a way to manufacture the drug without the contamination. *Id.*

As set forth in Plaintiffs' opposition to ZHP's motion, the emails are fully admissible as business records, and also as notice even if not admitted for the truth. Mr. MacDonald was consulted at the request of ZHP, for ZHP's business purposes, and his advice was shared with ZHP. (Pls. Opp. to ZHP MIL 3). However, in light of ZHP's filing of the motion, Plaintiffs subpoenaed Mr. MacDonald to testify at trial in case the Court entertains the motion. There is certainly no surprise to Defendants – it is ZHP's motion to exclude the communications of its own consultant which first implicated the issue. The fact that no party chose to depose

this consultant is of no moment, his relevance to the case is well known and defined per the questioning of ZHP corporate representative Min Li, who was the primary point of contact to Charles Wang and Mr. MacDonald.

Mr. MacDonald's testimony should be permitted in order to overcome ZHP's hearsay objection, if necessary.

## 8. Retailer Defendants Should Not Be Permitted to Object to Testimony, as They Are Not Parties to the Trial.

 As Rule 30(a)(6) plainly states, the right to object and counter deposition designations is reserved for *adverse parties*.  The retailer defendants have injected themselves into the pretrial designation exchanges, and Plaintiffs have objected. To be clear, Plaintiffs requested that the retailer defendants make their witnesses available to testify live in Court, and they have advised that they will not agree to do so and have pointed out that the witnesses designated by Plaintiffs are beyond the Court's subpoena power.  This will require the witnesses' testimony, which is very narrow and relates to their testimony that the adulterated drugs never would have been sold by them if that had been known, to be presented via video deposition designations.

While the Retailer Defendants are parties to this MDL, they are not parties to the trial, and the jury is not being asked to make findings against the Retailer Defendants. What matters is the positions of the parties going to trial.  For this reason, the Court should limit objections and counter-designations to the *adverse*

*parties* in this trial.

9. **Plaintiffs Can Present the Testimony of Jucai Ge, Hai Wang, and Other Witnesses by Video Deposition Designations.**

Defendants apparently object to Plaintiffs utilizing the deposition designations of ZHP 30(b)(6) witnesses Hai Wang and Jucai Ge, since Plaintiffs have subpoenaed Hai Wang, and Defendants claim they will be bringing Jucai Ge live to trial.  Plaintiffs have the absolute right to present the deposition designations for both witnesses.  There is no Rule or case that would deprive Plaintiffs of submitting the designations, which constitute admissions, in the event one or more of those witnesses may be available.  Availability is not a factor determining Plaintiffs' ability to do so since these are adverse witnesses.

Plaintiffs reserve the right to call Hai Wang to the extent necessary to address issues that a live witness may be needed for in light of ZHP's unreasonable refusal to stipulate to basic facts and the admissibility of basic documents.  He has been subpoenaed in case his testimony becomes necessary to address discrete issues of that nature.

If Defendants bring Jucai Ge to testify live, as is their right, Plaintiffs will cross-examine Ms. Ge.  Plaintiffs have already lodged extensive objections to ZHP's affirmative deposition designations for its own witness since she is available, and based on evidential problems with the testimony, for example Ms. Ge's repeated references to and reliance on purported hearsay discussions with others (See MIL's).

17

Similarly, Torrent has objected to Plaintiffs' use of deposition designations for at least two witnesses Torrent claims it intends to bring live. Plaintiffs have the right to utilize the depositions. Moreover, when Torrent raised the possibility of their witnesses testifying live in Plaintiffs' case, Torrent insisted that it be allowed to fully question the witnesses even beyond the areas covered by Plaintiffs, and Plaintiffs rejected that proposal. Plaintiffs will use the videos, Torrent can call the witnesses live in their case, and Plaintiffs will cross-examine the witnesses at that point.

### 10. Dr. Hecht and Other Experts Should Not Be Subjected to Unreasonable Questioning on Cross-Examination.

Defendants have indicated that they intend to cross-examine Plaintiffs' expert Dr. Hecht, and other experts, with regard to their qualifications - which have already been found to be sufficient in the Daubert rulings. Defendants seem to intend to attack the qualifications in a manner inconsistent with the Court's finding, and if so may intend to make statements in opening that are inconsistent with the Daubert rulings - for example telling the jury that Dr. Hecht is not qualified when the Court has already ruled that he is. This is not permissible.

Related, Defendants should not be permitted to question Dr. Hecht about irrelevant and clearly unduly prejudicial questioning about the American Health Foundation, where Dr. Hecht worked in the 1970's. That Foundation was created by the epidemiologist Ernst Wynder who apparently was the first to confirm the link

between smoking and cancer. During Dr. Hecht's deposition, he was questioned about the fact that after he left the Foundation the leaders of the Foundation were indicted based on allegations of diverting research funds.  Dr. Hecht had no involvement in this, was not questioned about it, and raising this issue would be both irrelevant and implicate FRE 403 since it would be misleading and unduly prejudicial to try to indirectly impugn Dr. Hecht and the important research he performed and oversaw during his time there.  Since he had no involvement in what occurred later this should be off-limits.

### 11. This Trial Does Not Require the Jury to Assess Any "Translating Mechanism."

Plaintiffs do not believe the Court's comments about a "translating mechanism" in its recent order denying Defendants' motion to decertify have import for this trial. As the Court's order clearly contemplated, the largely mechanical process of tracing which TPPs paid for which VCDs in the event of a judgment in Plaintiffs' favor (which Plaintiffs maintain is not necessary at all) is simply is a claims administration that, if needed at all, would occur after this jury trial, post-judgment, and during the distribution of the class judgment. Indeed, as the Court acknowledged in the decertification order, the data by which to do such an exercise must come from the TPP class members themselves as part of the claims submission process. It is not a substantive merits issue, let alone a factual one for the jury to decide. Indeed, in granting class certification, this Court already found in its

ascertainability analysis that Plaintiffs adequately demonstrated that TPPs are identifiable insofar as the payments by entities who reimbursed for VCDs can be sufficiently traced. To the extent Defendants contend a "translating" mechanism has any other substantive import, those contentions are meritless for the reasons set forth in Plaintiffs' response to Defendants' summary judgment motion and their Daubert motion as to Dr. Conti.

**12. Defendants' Request for Additional MSP Assignment Documents.**

Defendants' request that the Court exclude "unauthenticated" assignment documents is without any merit. The Court has already determined that the assignments are no longer at issue. Authentication is an extremely low bar, and the rule only requires the proponent to produce "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). That may be done through "testimony of a witness with knowledge." Fed. R. Evid. 901(b)(1). Plaintiffs can easily make that showing.

Plaintiffs listed in the pretrial order Jorge Lopez, the corporate representative of MSP, who will testify about the "the assignments from EmblemHealth and SummaCare to MSP and its related entities." As a corporate representative, Mr. Lopez will authenticate the assignments. *In re Grand Jury Empaneled on Apr. 6, 1993*, 869 F. Supp. 298, 301, 304 (D.N.J. 1994) (noting that a corporate custodian can authenticate documents produced through oral testimony).

Further, Mr. Lopez has already testified in his deposition that he has direct personal knowledge regarding the assignments:

> Q. Were you involved in negotiating the assignments for the entities involved in whose claims MSP is asserting in this case, which are SummaCare, Emblem Health and ConnectiCare?
> MR. WHORTON: Objection.
> Vague.
> A. Yes, I was.
> Q. All three entities or just one or two of them?
> A. I was involved with all three of them.
> Q. Could you please describe what your involvement was in negotiating those transactions?
> A. I communicated with counsel for those assignors and discussed the language that would be included in the assignment agreements.
> Q. Okay.

Lopez Tr. 18:3-19. And he has *already authenticated* the assignments in his deposition:

> Q. Okay. Let's look at some assignment documents. I'm going to show you what's been marked for identification as Exhibit 2 and for the record, Exhibit 2 consists of three agreements, one of which has the Bates label MSP 000152 through 53, an assignment dated June 12th, 2013, one of which has the Bates number MSP 14 -- I'm sorry -- 154 through 155, assignment dated May 12th, 2017 and one of which has Bates numbers MSP 156 through 172 and is a Recovery Agreement dated May 12th, 2017. Mr. Lopez, we're going to go through these in more detail in a moment. I'll just begin by asking do you recognize these as the assignment documents you reviewed in preparing for your deposition today for SummaCare?
> A. Yes.
> Q. Okay. To your knowledge, are these the documents that assigned the claims MSP is asserting in this case as the assignee of SummaCare?
> A. Yes.

Lopez Tr. 67:9-25.

Q. Let's move to the ConnectiCare assignment documents I am showing you now what's been marked for identification as Exhibit 4. It bears Bates numbers MSP 275 through 276. This is a two-page document titled "Assignment" and dated March 20th, 2018. Do you recognize this assignment document?

A. Yes.

Q. Is this one of the assignment documents you reviewed in preparing for your deposition today?

A. Yes.

Q. Is this the document that assigned the claim from ConnectiCare that are being asserted by MSP in this litigation?

A. Yes, it is. This is a standalone assignment, but I think there may have been a similar agreement as with the Emblem, but yes this is the assignment that I reviewed.

Lopez Tr. 108:5-24.

No further authentication is necessary, and even it was (it isn't), Mr. Lopez will authenticate those documents at trial.

## 13. Defendants' Request to Present Non-Responsive Answers to Deposition Questions.

Defendants indicated they are requesting that the Court require that the complete answer to every deposition question be played to the jury. This request ignores the fact that many answers by defense witnesses were non-responsive in whole or in part. Due to the rampant inability of Plaintiffs to obtain direct, responsive answers to questions, the Court was called upon during the course of the depositions to address the difficulty Plaintiffs were having in obtaining responsive testimony. In response, the Court directed that Plaintiffs need not move to strike non-responsive answers - preserving that issue for trial. The Court also ultimately

22

entered an Order sanctioning ZHP for the non-responsive testimony and ordered that ZHP produce a 30(b)(6) witness or witnesses to answer a number of questions that were not answered at all.

During the ongoing meet and confers on the deposition designations, this issue has come up a number of times and presumably the Court will address that testimony when it rules on the designations, which are to be trial testimony.

### 14. Defendants' Request to Preclude Testimony of Wholesaler and Retailer Witnesses.

Plaintiffs are unclear on the basis for Defendants' as yet unexplained request to prevent the submission of testimony from retailer witnesses. This testimony is relevant to the issues at trial, including that the retailers would never have sold the VCD's if they had been made aware that the pills were adulterated. Obviously, that means that the pills never would have been available for sale if the truth were known, and thus the TPPs could not have even had the opportunity to pay for them. Plaintiffs will be prepared to address whatever is argued by Defendants in their brief at the appropriate time.

### 15. Plaintiffs' Rule 37 Motion Regarding Baohua Chen.

On February 18, 2022, the Parties completed the briefing on Plaintiffs' motion for Rule 37 sanctions based on Baohua Chen's failure to submit to a court ordered deposition. Plaintiffs request that the motion be addressed, and granted prior to trial.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court (1) bar Maggie Kong from testifying at trial, (2) bar Jinsheng Lin from testifying at trial, (3) order Defendants to produce the requested financial information related to punitive damages, (4) preclude Defendants from calling John Ruiz at trial or otherwise submit argument or evidence with regard to MSP implicated by Plaintiffs' motions in limine, (5) allow Plaintiffs to call Greg Cowhey if necessary, (6) allow Plaintiffs to call witnesses confirming Defendants' pre-suit notice if necessary, (7) allow Plaintiffs to call James MacDonald to testify if necessary, (8) uphold Plaintiffs' objection to the retailer Defendants' efforts to inject themselves into the trial, (9) permit Plaintiffs to utilize deposition designations of adverse witnesses regardless of availability, (10) preclude unreasonable cross-examination of Dr. Hecht and other experts, (11) reject Defendants' anticipated argument that a "translating mechanism" must be introduced at trial, (12) reject Defendants' request for additional MSP assignment documents, (13) reject Defendants' argument that their witnesses' non-responsive deposition testimony should go to the jury, (14) reject Defendants' effort to block relevant testimony of retailer witnesses, and (15) grant Plaintiffs' fully briefed motion for Rule 37 sanctions pertaining to Baohua Chen's failure to submit to his Court ordered deposition.

Dated: March 14, 2024

Respectfully submitted,

/s/ Ruben Honik
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

/s/ Daniel Nigh
Daniel Nigh
**Nigh Goldenberg Raso & Vaughn, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

/s/ Adam Slater
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

**MDL Plaintiffs' Co-Lead Counsel**

/s/ Jorge Mestre
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

/s/ Gregory P. Hansel
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

**Third-Party Payor Economic Loss Co-Lead Class Counsel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2024, I electronically filed Plaintiffs' trial brief with the Clerk of the Court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiffs

By:＿＿/s/ Adam M. Slater＿＿＿＿＿＿＿＿

Dated: March 14, 2024