# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. ROBERT B. KUGLER CIVIL NO. 19-2875 (RBK) |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

# I. PRELIMINARY INSTRUCTIONS

## Preliminary Instruction 1.1 – Introduction; Role of Jury [Plaintiffs' Proposal]

**Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.**

**You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.**

**You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.**

Model Civ. Jury Instr. 3d Cir. 1.1 (2024).

**<u>Preliminary Instruction 1.2 – Description of Case; Summary of Applicable
Law [Plaintiffs' Proposal]</u>**

**The Plaintiff in this trial is MSP Recovery Series, LLC ("MSP"), as class
representative for a certified class of third-party payors ("Plaintiffs"). Third-
party payors are health plans that bear a portion of the cost of prescription
drugs. I will explain more regarding class actions later.**

**The Defendants in this trial are:**

- **Zhejiang Huahai Pharmaceutical Co., Ltd.; Huahai US Inc.; Prinston
  Pharmaceutical Inc. d/b/a Solco Healthcare LLC; and Solco Healthcare
  US, LLC. Collectively, I will refer to these companies as "ZHP."**
- **Torrent Pharmaceuticals Ltd. and Torrent Pharma Inc. Collectively, I
  will refer to these companies as "Torrent."**
- **Teva Pharmaceutical Industries Ltd.; Teva Pharmaceuticals USA, Inc.;
  Actavis Pharma, Inc.; and Actavis, LLC. Collectively, I will refer to
  these companies as "Teva."**

**In this trial, Plaintiffs assert claims for breach of express warranty, violation
of consumer protection laws , and common law fraud, against ZHP, Torrent,
and Teva related to their manufacture, distribution, and sale of valsartan.**

**Valsartan is a generic prescription drug prescribed to treat hypertension
(which is commonly known as high blood pressure). ZHP manufactured the
active pharmaceutical ingredient for valsartan (which I will refer to as
"valsartan API"). ZHP, Torrent, and Teva each produced and marketed
several kinds of valsartan finished dose pills, including valsartan as well as
combination therapies valsartan HCTZ, amlodipine valsartan, and
amlodipine valsartan HCTZ. I will refer to these as "valsartan-containing
drugs" or "VCDs." These VCDs are the generic form of "Brand" or
"Reference Listed Drugs" DIOVAN® and EXFORGE®.**

**In summary, Plaintiffs claim that:**

- **ZHP manufactured, distributed, and sold both: (1) valsartan API and
  (2) finished dose VCDs that were adulterated and/or contaminated with
  genotoxic probable human carcinogens NDMA and/or NDEA, resulting
  in a recall. (The scientific names for these chemicals are N-
  nitrosodimethylamine and N-nitrosodiethylamine, respectively.)**
- **Torrent manufactured, distributed, and sold finished dose VCDs that**

contained valsartan API manufactured by ZHP and were adulterated and/or contaminated with genotoxic probable human carcinogens NDMA and/or NDEA, resulting in a recall.

- Teva manufactured, distributed, and sold finished dose VCDs that contained valsartan API manufactured by ZHP and were adulterated and/or contaminated with genotoxic probable human carcinogens NDMA and/or NDEA, resulting in a recall.

Plaintiffs contend that ZHP, Teva, and Torrent each made and breached express warranties regarding their respective VCDs. To prove breach of express warranty, Plaintiffs must show: (1) the defendant made an express warranty regarding their VCDs; (2) that the VCDs did not conform to that express warranty; and (3) that Plaintiffs were harmed as a result of the breach of warranty. [Notice element TBD based on outcome of pre-trial court decisions]

Plaintiffs also contend that ZHP, Teva, and Torrent each violated state consumer protection laws by: (1) engaging in deceptive or unfair acts or practices; (2) in the conduct of trade or commerce; and (3) Plaintiffs suffered damages as a result of defendants' deceptive or unfair acts or practices.

Plaintiffs also contend that ZHP, Teva, and Torrent each committed common law fraud because for certain periods of time, they had actual knowledge that their VCDs were adulterated and contaminated, and nevertheless continued to sell them as if they were the approved, proper quality, uncontaminated form of valsartan that they were supposed to be. Alternatively, Plaintiffs claim that ZHP, Teva, and Torrent each had knowledge that they did not know whether their representations regarding their VCDs were true or false.  To prove common law fraud, Plaintiffs must show: (1) the defendant made a false representation of material fact regarding their VCDs; (2) the defendant had knowledge that the representation was false or knowledge that the defendant did not know whether it was true or false; (3) the defendant had an intention to induce another to rely on it; and (4) defendant's false representation resulted in injury to the Plaintiffs.

In addition to compensatory damages, which are intended to compensate Plaintiffs for their economic damages, Plaintiffs also seek punitive damages against ZHP, Teva, and/or Torrent's conduct where applicable.

[insert defendant language]

Model Civ. Jury Instr. 3d Cir. 1.2 (2024).

**Preliminary Instruction 1.3 – Class Actions [Plaintiffs' Proposal]**

I have certified this case as a class action. A class action is a lawsuit that has been brought by one or more plaintiffs on behalf of a larger group of persons or entities (called "class members") who have similar legal claims. All of these people or entities together are called a "class."

In a class action, the plaintiff sues as a representative of the entire class and the claims of the named plaintiff and the class members can be resolved at the same time and based on the same evidence, instead of requiring each class member to bring a separate individual lawsuit.

I have already determined that this case shall proceed as a class action. This means that your verdict in this matter will not only apply to the class representative MSP. Instead, it will be applicable to <u>the entire class composed of approximately 43,000 entities around the country</u>. By way of example, these entities include both small self-funded union plans, as well as larger health insurance companies.

In this case, I will be asking you to decide how the evidence you hear at trial applies to the laws of many different states. Although there are some differences between the laws of each state on which I will instruct you, I have determined that the state laws at issue in this case are similar enough to be resolved in a single trial, with a single set of jury instructions, and a single verdict form. If you find ZHP, Teva, and/or Torrent liable for breach of express warranty, fraud, and/or violations of consumer protection laws, you will be asked to award appropriate damages for each state. Your verdict form will provide you with appropriate instructions.

The named plaintiff in the case is MSP. The class at issue in this trial is defined as:

> All Third-Party Payors that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in the parts of United States and its territories and possessions that I will identify, for a VCD that was manufactured by ZHP, Teva, or Torrent.

This trial concerns claims for breach of express warranty, violations of consumer protection laws, and common law fraud. You will be asked to return a verdict as to each of those claims for a sub-group of states whose laws I have determined are similar and should be tried together. Those sub-groups

6

are referred to as subclasses. These are the sub-class definitions for this trial:

- A breach of express warranty subclass of all third-party payors that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alabama, Arkansas, Florida, Georgia, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New York, North Carolina, Ohio, Oregon, Rhode Island, South Carolina, Texas, Utah, Vermont, Wisconsin, or Wyoming for a valsartan-containing drug (intended for personal or household use) that was manufactured by ZHP, Teva, or Torrent.

- A violation of state consumer protection laws subclass of all third-party payors that, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arizona, California, Connecticut, Florida, Hawaii, Idaho, Louisiana, Missouri, Nebraska, New Hampshire, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, or Washington that for a valsartan-containing drug that was manufactured by ZHP, Teva, or Torrent.

- A fraud subclass of all third-party payors, from at least January 1, 2012 through the date of final recall as of November 10, 2021, paid any amount of money in Alaska, Arkansas, Colorado, District of Columbia, Florida, Idaho, Iowa, Louisiana, Massachusetts, Minnesota, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, Washington, Wyoming, or Puerto Rico for a valsartan-containing drug (intended for personal or household use) that was manufactured by ZHP, Teva, or Torrent.

Dkt. No. 2535, Dkt. No. 2532-6, Dkt. Nos. 2261-62.

**Preliminary Instruction 1.4 – Conduct of the Jury [Plaintiffs' Proposal]**

**Now, a few words about your conduct as jurors.**

**First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones [like Androids and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as WhatsApp], or through any blog, website, internet chat room, or by way of any other social networking websites or services [including Facebook, Twitter or X, LinkedIn, and YouTube].**

**If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. [That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.]**

**Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.**

8

**Again, do not reach any conclusion on the claims [or defenses] until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.**

**[Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.]**

Model Civ. Jury Instr. 3d Cir. 1.3 (2024).

**<u>Preliminary Instruction 1.5 – Bench Conferences [Plaintiffs' Proposal]</u>**

**During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference, otherwise known as a sidebar. If that happens, please be patient.**

**We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.**

**We will, of course, do what we can to keep the number and length of these conferences to a minimum. [While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to take a break.]**

**I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.**

Model Civ. Jury Instr. 3d Cir. 1.4 (2024).

## Preliminary Instruction 1.6 – Evidence [Plaintiffs' Proposal]

**The evidence from which you are to find the facts consists of the following:**

1. **The testimony of the witnesses;**
2. **Documents and other things received as evidence;**
3. **Any facts that are stipulated – that is, formally agreed to by the parties; and,**
4. **Any facts that are judicially noticed—that is, facts I say you must accept as true even without other evidence.**

**The following things are not evidence:**

1. **Statements, arguments, and questions of or by the lawyers for the parties in the case;**
2. **Objections by lawyers;**
3. **Any testimony I tell you to disregard; and,**
4. **Anything you may see or hear about this case outside the courtroom.**

**You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.**

**You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.**

**There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.**

11

**Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.**

Model Civ. Jury Instr. 3d Cir. 1.5 (2024).

## Preliminary Instruction 1.7 – Direct and Circumstantial Evidence [Plaintiffs' Proposal]

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses—something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

Model Civ. Jury Instr. 3d Cir. 1.6 (2024).

13

**Preliminary Instruction 1.8 – Credibility of Witnesses [Plaintiffs' Proposal]**

**In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:**

**(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;**

**(2) the quality of the witness's understanding and memory;**

**(3) the witness's manner while testifying;**

**(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;**

**(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;**

**(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and**

**(7) any other factors that bear on believability.**

**[The weight of the evidence to prove a fact does not depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.]**

Model Civ. Jury Instr. 3d Cir. 1.7 (2024).

### Preliminary Instruction 1.9 – Jury Questions for Witnesses [Plaintiffs' Proposal]

**You will have the opportunity to ask questions of the witnesses in writing. When a witness has been examined and cross-examined by counsel, and after I ask any clarifying questions of the witness, I will ask whether any juror has any further clarifying question for the witness.**

**If so, you will write your question on a piece of paper, and hand it to my Deputy Clerk. Do not discuss your question with any other juror. I will review your question with counsel at sidebar and determine whether the question is appropriate under the rules of evidence. If so, I will ask your question, though I might put it in my own words. If the question is not permitted by the rules of evidence, it will not be asked, and you should not draw any conclusions about the fact that your question was not asked. Following your questions, if any, the attorneys may ask additional questions. If I do ask your question you should not give the answer to it any greater weight than you would give to any other testimony.**

Model Civ. Jury Instr. 3d Cir. 1.8 (2024).

15

**<u>Preliminary Instruction 1.10 – Note Taking by Jurors [Plaintiffs' Proposal]</u>**

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Deputy Clerk will arrange for pens, pencils, and paper. Remember that your notes are for your own personal use —they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1. **Note-taking is permitted, not required.** Each of you may take notes. No one is required to take notes.

2. **Be brief.** Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Overuse of note-taking may be distracting. You must determine the credibility of witnesses; so you must observe the demeanor and appearance of each person on the witness stand. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation.

3. **Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.** In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a way to refresh your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial. Notes are not to be used in place of the evidence.

4. **Do not take your notes away from court.** I repeat, at the end of each day,

**please leave your notes in the jury room. [Describe logistics of storing and securing notes, for example: "If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations."]**

Model Civ. Jury Instr. 3d Cir. 1.9 (2024).

## Preliminary Instruction 1.11 – Burden of Proof/Preponderance of the Evidence [Plaintiffs' Proposal]

This is a civil case. Plaintiff MSP on behalf of itself and the Class Members is the party that brought this lawsuit. Defendants ZHP, Teva, and Torrent are the parties against which the lawsuit was filed. Generally, Plaintiffs have the burden of proving their claims for breach of express warranty and violations of consumer protection laws by what is called the preponderance of the evidence. That means Plaintiffs have to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently: if you were to put the evidence favorable to Plaintiffs and the evidence favorable to each Defendant on opposite sides of the scales, Plaintiffs would have to make the scales tip somewhat on its side. If Plaintiffs fail to meet this burden, the verdict must be for the Defendant(s) to whom that judgment applies. If you find after considering all the evidence that a claim or fact is more likely so than  not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, learned treatises discussed by the witnesses, and all exhibits received in evidence, regardless of who may have produced them.

On certain issues, called affirmative defenses, Defendants have the burden of proving the elements of the defense by a preponderance of the evidence. An affirmative defense is proven if you find, after considering all evidence in the case, that a Defendant has succeeded in proving that the required facts to prove the affirmative defense are more likely so than not so.

Model Civ. Jury Instr. 3d Cir. 1.10 (2024).

18

## Preliminary Instruction 1.12 – Clear and Convincing Evidence [Plaintiffs' Proposal]

**On certain limited aspects of Plaintiffs' claims, a different standard of proof may apply. In this case, the clear and convincing evidence standard <u>only</u> applies to common law fraud claims and punitive damages claims under the laws of certain states at issue in this trial.**

**Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction that the allegations sought to be proved by the evidence are true. Clear and convincing evidence involves a higher degree of persuasion than is necessary to meet the preponderance of the evidence standard. But it does not require proof beyond a reasonable doubt, the standard applied in criminal cases.**

**I will instruct you more specifically on where to apply the clear and convincing evidence standard at the end of the case. But in order to help you follow the evidence, the clear and convincing standard is generally limited in this trial to Plaintiffs' common law fraud claims, and to the award of punitive damages only (and not to any other damages sought). You will make all other findings under the preponderance of the evidence standard I described earlier.**

Model Civ. Jury Instr. 3d Cir. 1.11 (2024).

19

## Preliminary Instruction 1.13 – Description of Trial Proceedings [Plaintiffs' Proposal]

**The trial will proceed in the following manner:**

**First, attorney(s) for Plaintiffs will make an opening statement to you. Next, attorney(s) for ZHP, Teva, and/or Torrent may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show. A party is not required to make an opening statement.**

**After the attorneys have made their opening statements, then each party is given an opportunity to present its evidence.**

**Plaintiffs go first because Plaintiffs have the burden of proof. Plaintiffs will present evidence and witnesses whom counsel for Defendant(s) may cross-examine. Following Plaintiffs' case, Defendant(s) may present evidence and witnesses. Counsel for Plaintiffs may cross-examine witnesses for the defense. [After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.]**

**After all the evidence has been presented, [I will instruct you on the law and then] the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. After that you will retire to the jury room to deliberate on your verdict in this case.**

**[At this point the Court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]**

Model Civ. Jury Instr. 3d Cir. 1.12 (2024).

## II.  <u>GENERAL INSTRUCTIONS FOR USE DURING TRIAL</u>

### General Instruction 2.1 – Judicial Notice [Plaintiffs' Proposal]

**The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact. You must accept this fact as true for purposes of this case.**

Model Civ. Jury Instr. 3d Cir. 2.2 (2024).

## **General Instruction 2.2 – Stipulation of Fact [Plaintiffs' Proposal]**

**[The parties have agreed that certain facts are true, and those stipulations have been read to you during this trial.] You must therefore treat [this fact] [these facts] as having been proved for the purposes of this case.**

Model Civ. Jury Instr. 3d Cir. 2.4 (2024).

### General Instruction 2.3 – Use of Deposition [Plaintiffs' Proposal]

**A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.**

**The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you [by a video]. Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify. You should give it the same weight as if the testimony was being given from the witness stand.**

Model Civ. Jury Instr. 3d Cir. 2.5 (2024).

### General Instruction 2.4 – Use of Interrogatories [Plaintiffs' Proposal]

**You will now hear [have heard] answers that [name of party] gave in response to written questions submitted by the other side. The written questions are called "interrogatories." The written answers were given in writing and under oath, before the trial.**

**You must consider [name of party]'s answers to interrogatories in the same manner as if the answers were made from the witness stand.**

Model Civ. Jury Instr. 3d Cir. 2.6 (2024).

## General Instruction 2.5 – Charts and Summaries in Evidence [Plaintiffs' Proposal]

**[Name of party] has presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.**

Model Civ. Jury Instr. 3d Cir. 2.7 (2024)

## General Instruction 2.6 – Charts and Summaries Not Admitted in Evidence
### [Plaintiffs' Proposal]

**Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. [Describe the charts and summaries that have not been admitted.] These charts and summaries are not themselves proof of any facts. They are not binding on you in any way. If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.**

Model Civ. Jury Instr. 3d Cir. 2.8 (2024).

## General Instruction 2.7 – Striking Evidence [Plaintiffs' Proposal]

**I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony]. That means that when you are deciding the case, you must not consider that information [testimony] in any way.**

Model Civ. Jury Instr. 3d Cir. 2.9 (2024).

## General Instruction 2.8 – Evidence Admitted for a Limited Purpose
### [Plaintiffs' Proposal]

**You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].**

Model Civ. Jury Instr. 3d Cir. 2.10 (2024).

### General Instruction 2.9 – Opinion Testimony [Plaintiffs' Proposal]

**You have heard [will hear] testimony containing opinions from [name of witness], who I have determined is an expert in the field(s) of _____.**
**In weighing this expert opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.**

**In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].**

Model Civ. Jury Instr. 3d Cir. 2.11 (2024).

### General Instruction 2.10 – Recess Admonition [Plaintiffs' Proposal]

**We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet. Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case.] Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.**

**If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.**

**[I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.]**

Model Civ. Jury Instr. 3d Cir. 2.14 (2024).

# III.  SUBSTANTIVE LAW INSTRUCTIONS

## A. ADULTERATED DRUGS

## Substantive Law Instruction 3.1 – Definitions [Plaintiffs' Proposal]

**I will now read to you the following statement of law, which you must accept for purposes of determining your verdict.**

**"The term 'interstate commerce' means (1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other Territory not organized with a legislative body."**

**"The term 'drug' means (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any article specified in clause (A), (B), or (C)."**

**"The term 'official compendium' means the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, official National Formulary, or any supplement to any of them."**

21 U.S.C. § 321.

## Substantive Law Instruction 3.2 – Adulteration of Drugs (CGMP) [Plaintiffs' Proposal]

**I will now read to you the following statement of law, which you must accept for purposes of determining your verdict.**

**A drug is adulterated if the methods, facilities or controls used for the drug's manufacture and processing do not conform with current good manufacturing practices to assure that it meets FDA requirements as to safety, is correctly identified, and meets the quality and purity characteristics, which it claims or is represented to possess.**

21 U.S.C. § 351(a)(2)(B).

## **Substantive Law Instruction 3.3 – Adulteration of Drugs (Differing from Official Compendium) [Plaintiffs' Proposal]**

**I will now read to you the following statement of law, which you must accept for purposes of determining your verdict.**

**A drug is adulterated if it claims or is represented as being a drug that is recognized in an official compendium and its quality or purity falls below the standard set forth in the official compendium.**

21 U.S.C. § 351(b).

## Substantive Law Instruction 3.4 – Sale of Adulterated Drugs Illegal
### [Plaintiffs' Proposal]

**I will now read to you the following statement of law, which you must accept for purposes of determining your verdict.**

**The following acts are prohibited:**

**(a) Introducing or delivering for introduction of any adulterated drug into interstate commerce.**

**(b) Adulterating any drug in interstate commerce.**

**(c) Receiving, delivering, or offering to deliver adulterated drugs in interstate commerce.**

21 U.S.C. § 331.

## B. **ZHP ADVERSE INFERENCE INSTRUCTION**

## Adverse Inference Instruction 4.1 – ZHP

Reference has been made to Baohua Chen, the chief executive of ZHP as a person who has information relevant to the matter before you, and as you are aware defendant ZHP has failed to call him to testify.

In addition, I am advising you that during the course of discovery in this case, when the parties produced documents and conducted the depositions of the witnesses, the Court ordered Baohua Chen to make himself available to be deposed and he failed to do so. Therefore, Mr. Chen and his employer ZHP failed to comply with a court order that he be deposed.

The rule is that where a party fails to produce as a witness a person whom that party would naturally be expected to call to testify, you have a right to infer that had the witness been produced he would have testified adversely to the interests of that party. The same is equally or even more true where the witness in question violates a court order that he be deposed, blocking the other side from obtaining his sworn testimony for use at trial. Here, that inference also includes the inference that ZHP was aware of and had knowledge of the NDMA and NDEA contamination of its valsartan from the point in time when it first started marketing that contaminated API and finished dose.

The reason for this rule is that where you would normally expect a party to call a person as a witness and that party, without reasonable explanation, fails to do so, it leaves a natural inference that the non-producing party fears exposure of facts which would be unfavorable to it. The same is equally or even more true where the witness in question violates a court order that he be deposed, blocking the other side from obtaining his sworn testimony for use at trial.

Based on N.J. Model Civ. Jury Instr. 1.18A.

Note: Plaintiffs reserve the right to supplement or modify this requested charge depending on the Court's rulings, and developments during trial.

THIS IS WITH REGARD TO THE JINSHENG LIN CUSTODIAL FILE AND MAYBE OTHER ISSUES

## C. <u>EXPRESS WARRANTY CLAIM</u>

### Express Warranty Instruction 5.1 – Introduction [Plaintiffs' Proposal]

**Plaintiffs' first claim for this trial is made under the laws of the following states:**

- **Alabama**
- **Arkansas**
- **Florida**
- **Georgia**
- **Mississippi**
- **Montana**
- **Nebraska**
- **Nevada**
- **New Hampshire**
- **New York**
- **North Carolina**
- **Ohio**
- **Oregon**
- **Rhode Island**
- **South Carolina**
- **Texas**
- **Utah**
- **Vermont**
- **Wisconsin**
- **Wyoming**

**I have already determined that the breach of express warranty claims of these states are sufficiently similar to instruct you on them jointly for the most part, as I will do in a few moments. However, there may be instances where I provide you with specific instructions for a state or subgroup of states. Your verdict form will reflect any state-specific findings you need to make. Unless otherwise instructed, you must treat the following instructions as applicable to all of the above states.**

Ala. Code § 7-2-313; **Ark.** Code § 4-2-313; **Fla.** Stat. § 672.313; **Ga.** Code § 11-2-313; **Miss.** Code Ann. § 75-2-313; **Mont.** Code Ann. § 30-2-313; **Neb.** Rev. Stat. U.C.C. § 2-313; **Nev.** Rev. Stat. § 104.2313; **N.H.** Rev. Stat. § 382-A:2-313; **N.Y.** U.C.C. Law § 2-313; **N.C.** Gen. Stat. § 25-2-313; **Ohio** Rev. Code Ann. § 1302.26;

**Or.** Rev. Stat. § 72.8060; **R.I.** Gen. Laws § 6A-2-313; **S.C.** Code § 36-2-313; **Tex.** Bus. & Com. Code Ann. § 2.313; **Utah** Code Ann. § 70A-2-313; **Vt.** Stat. tit. 9A, § 2-313; **Wis.** Stat. § 402.313; **Wyo.** Stat. § 34.1-2-313.

## Express Warranty Instruction 5.2 – Express Warranty [Plaintiffs' Proposal]

Plaintiffs claim that ZHP, Teva, and Torrent each made an express warranty (or warranties) to Plaintiff MSP and class members when they sold contaminated and/or adulterated valsartan-containing drugs paid for by Plaintiff and Class Members.

A warranty is a promise or guarantee about the condition or performance of a product. A warranty does not require any particular words. Formal words such as "warrant," "warranty," or "guarantee" are not necessary to create a warranty. Also, it is not necessary to find that ZHP, Teva, or Torrent intended to create a warranty for a warranty to exist as to Plaintiff and class members. [1]

A product manufacturer can make a promise or guarantee that creates an express warranty in a few different ways, but the promise or guarantee must become a part of the "basis of the bargain.""Basis of the bargain" is a legal term of art. It is not necessary that the promise or guarantee be the motivating factor of the sale or that the buyer relied on it. It is sufficient if the promise or guarantee was one of the factors in the purchase. [2]

In this case, Plaintiffs claim that ZHP, Teva, and Torrent, respectively, created an express warranty in one of two ways:

> (1) by making a promise or statement of fact about their respective valsartan containing drugs that became a basis of the bargain [3]; and/or

> (2) By making a description of the adulterated and/or contaminated valsartan that became a basis of the bargain. A description of goods may be by words or may be expressed in any other manner, such as use of technical specifications. As long as the description becomes a part of the basis of the bargain, the goods must conform to that description. [4]

In this case, Plaintiffs claim that Defendants sold the adulterated and/or contaminated VCDs and made at least one express warranty, including:

> a. identifying their VCDs as FDA-approved "valsartan" generic prescription drugs in the product labeling materials. The very

naming of a generic drug or labeling of a generic drug as the equivalent of another drug is a statement of fact that creates an express warranty. In this case, the Defendants' very naming of the drug as valsartan or valsartan-containing amounted to an express warranty on which patients had no choice but to "rely" when they were prescribed the drug and bought it as a medication to control their high blood pressure. Similarly, Plaintiff and the class members did not have to "perceive" the package labelling or insert in order to create a benefit of the bargain. All they had to know was they were paying for a generic drug that contained valsartan because the very name "valsartan" or "valsartan-containing" constituted itself an express warranty that what Plaintiff and the class members paid for the chemical and therapeutic equivalent of brand name drugs listed in the Orange Book AB listing—namely DIOVAN® and/or EXFORGE®. The Orange Book is the common name for the publication titled "Approved Drug Products with Therapeutic Equivalence Evaluations," which identifies drug products approved on the basis of safety and effectiveness by the Food and Drug Administration (FDA) under the Federal Food, Drug, and Cosmetic Act and "contains therapeutic equivalence evaluations for approved" generic drugs to their respective brand name or reference listed drug; and/<u>or</u>

b. identifying their VCDs as generic version(s) or interchangeable therapeutic equivalents of brand name drugs—namely DIOVAN® and/or EXFORGE®, in the Orange Book AB listing; and/<u>or</u>

c. representing that their VCDs met compendial standards by identifying their valsartan as "valsartan USP" as compliant with the United States Pharmacopeia ("USP"). USP sets quality, purity, strength, and identity standards for medicines, food ingredients, and dietary supplements.

Plaintiffs claim that ZHP, Teva, and Torrent's respective contaminated valsartan-containing drugs did not conform to the express warranties given by ZHP, Teva, and Torrent, respectively, because they were adulterated and/or

contaminated with genotoxic probable human carcinogens NDMA and/or
NDEA, and that as a result Plaintiff MSP and Class Members were financially
harmed because they paid for the adulterated and/or contaminated VCDs. [5]

To establish breach of express warranty, Plaintiffs must prove the following
by a preponderance of the evidence:

1. The adulterated and/or contaminated valsartan-containing drugs did
   not conform to at least one of those express warranty or warranties;
2. [Notice TBD depending on outcome of court rulings]
3. Plaintiffs were economically harmed by ZHP's, Teva's, or Torrent's
   valsartan-containing drugs' respective failure to conform to the express
   warranty. [6]

[1] The first sentence of this instruction is based on Model Utah Jury Instr. CV
1023 (2d ed. 2014) ("[Name of plaintiff] claims that [name of defendant] breached
a warranty. A warranty is a promise or guarantee about the condition or
performance of a product.").

The rest of this instruction is based on the text of the UCC section 2-313(2), which
states, "It is not necessary to the creation of an express warranty that the seller use
formal words such as 'warrant' or 'guarantee' or that he have a specific intention to
make a warranty . . . ." This language has been adopted by each of the Express
Warranty States. *See* Express Warranties by Affirmation, Promise, Description,
Sample, UCC Local Code Variations § 2-313 (2023) (listing minute differences
between adoptions of UCC § 2-313).

**Ala.** Code § 7-2-313(2) ("It is not necessary to the creation of an express warranty
that the seller use formal words such as "warrant" or "guarantee" or that he have a
specific intention to make a warranty. . ."); *see also* 2 Ala. Pattern Jury Instr. Civ.
32.19 (3d ed. 2020) ("It is not necessary that the words 'warrant' or 'guarantee' be
used, or that (name of defendant) have a specific intention to make a warranty."
(citing *id.*).
**Ark.** Code Ann. § 4-2-313(2) (same as UCC § 2-313(2)).
**Fla.** Stat. § 672.313(2) (same).
**Ga.** Code § 11-2-313(2) (same).
**Miss.** Code § 75-2-313(2) (same).
**Mont.** Stat. § 30-2-313(2) (same).
**Neb.** Rev. Stat. U.C.C. § 2-313(2) (same).

44

**Nev.** Rev. Stat. § 104.2313(2) (same).
**N.H.** Rev. Stat. § 382-A:2-313(2) (same).
**N.Y.** U.C.C. Law § 2-313(2) (same).
**N.C.** Gen. Stat. § 25-2-313(2) (same).
**Ohio** Rev. Code § 1302.26(B) (same).
**Or.** Rev. Stat. § 72.3130(2) (same).
**R.I.** Gen. Laws § 6A-2-313(2) (same).
**S.C.** S.C. Code § 36-2-313(2) (same).
**Tex.** Bus. & Com. Code Ann. § 2.313(2) (same).
**Utah.** Code Ann. § 70A-2-313(2) (same).
**Vt.** Stat. Ann. tit. 9A, § 2-313(2) (same).
**Wis.** Stat. § 402.313(2) (same).
**Wyo.** Stat. § 34.1-2-313(b) (same).

[2] The first part of this instruction follows the statutory text of UCC section 2-313(1)(a)-(c), which incorporates the phrase "basis of the bargain" in each of the endorsed means of creation of an express warranty. *See* Express Warranties by Affirmation, Promise, Description, Sample, UCC Local Code Variations § 2-313 (2023). "In the absence of limitations based upon the parol evidence rule [under the UCC], it is enough that a statement of fact or promise has been made which relates to the goods and becomes part of the basis of the bargain." Nature of Express Warranty Obligation, 3 Hawkland UCC Series § 2A-210:2 (2023).

The second part of this instruction is based on Ohio Civil Jury Instruction CV 505.11, titled "Express Warranties." This formulation is consistent with how "basis of the bargain" is described in other pattern jury instructions. *See* 1 CV Ohio Jury Instr. 505.11 (2023) ("4. BASIS OF THE BARGAIN. It is not necessary that the promise or affirmation be the motivating factor of the sale or be relied upon by the buyer; it is sufficient if the (promise) (affirmation of fact) is one of the bases of the bargain. If you find, however, that the buyer did rely on the (promise) (affirmation of fact), the (promise) (affirmation of fact) would then be part of the basis of the bargain."); *see also* Express Warranty Under the Uniform Commercial Code, Wisc. Civ. Jury Instr. 3230 (2024) ("The second element to establish the express warranty is that the affirmation of fact or promise becomes a 'basis of the bargain.' This statutory phrase does not require the affirmation to be the sole basis for the sale, only that it is a <u>factor</u> in the purchase." (emphasis in original)).

Given the uniform statutory text of the UCC, "basis of the bargain" is the only appropriate description of this aspect of Express Warranty claims.

**Ala.** Code § 7-2-313(1); *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1281 (M.D. Ala. 2001) ("It is clear . . . that a statement of fact which becomes a part of the basis of the bargain between the buyer and seller can be actionable as an express warranty, . . .").

**Ark.** Model Jury Instr.-Civ. AMI 2508 (citing Ark. Code § 4-2-313(1) (same as UCC § 2-313)).

**Fla.** Stat. § 672.313(1) (same as UCC § 2-313); *Griffis v. Leisure Tyme RV, Inc.*, 884 So. 2d 241, 242–43 (Fla. Dist. Ct. App. 2004) ("The language of the [pre-delivery inspection form (PDI)], together with [Defendant's] subsequent efforts to make corrections or repairs to the motor home consistent with the PDI in the months following the sale, creates a genuine issue of material fact as to whether the dealer's representations on the PDI to make corrections were part of the basis of the parties' bargain, notwithstanding the disclaimers that were made at or about the same time by the dealer.").

**Ga.** Code § 11-2-313(1); *Tillman & Deal Farm Supply, Inc. v. Deal*, 146 Ga. App. 232, 233, 246 S.E.2d 138, 140 (1978) ("An affirmation of fact made by a seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."); *Key v. Bagen*, 136 Ga. App. 373, 373, 221 S.E.2d 234, 235 (1975) ("Any affirmation of fact or promise made by the seller to the buyer relating to the goods becomes a part of the basis of the bargain; and 'creates an express warranty that the goods shall conform to the affirmation or promise'" (citing Ga. Code § 11-2-313(1))).

**Miss.** Code § 75-2-313(1); *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 875 (Miss. 2006) ("In any case, that the [Plaintiffs] never read their owner's manual is not fatal to their case. It is still possible to rely on assertions therein without having actually read them.").

**Mont.** Stat. § 30-2-313(1); Mont. Pattern Instr. (Civ.) 14.01 (2d ed. 2003) (referring to "basis of the bargain") (citing *id.*).

**Neb.** Rev. Stat. U.C.C. § 2-313(1); 1 Neb. Prac. Jury Instr. Civ. 11.41 (2d ed. 2023) ("This instruction requires that promises, descriptions, samples, and so on, become 'part of the basis of the bargain.' That phrase is quoted from the controlling statute. The Committee has not tried to restate 'basis of the bargain' in language that might be more easily understood by a jury because it is not clear what the drafters of the statute meant by the phrase. . . . In any event, when possible, restate the 'basis of the bargain' part of this instruction so that the jury will more easily understand it." (citations omitted)).

**Nev.** Rev. Stat. § 104.2313(1); Nevada Jury Instr.—Civ. 7.12 (2018) (citing *Allied Fid. Ins. Co. v. Pico*, 99 Nev. 15, 18, 656 P.2d 849, 850 (1983) ("If these

representations did not form a part of the basis of the bargain, they might not constitute express warranties which would be actionable if breached.").

**N.H.** Rev. Stat. § 382-A:2-313(1); *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 843, 891 A.2d 477, 501 (2005) ("The plain language of section 2–313 requires that the affirmation be *part* of the basis of the bargain, and the corresponding official comments make it clear that 'no particular reliance on such statements need be shown [by the buyer].'").

**N.Y.** U.C.C. Law § 2-313(1); N.Y. Pattern Jury Instr.—Civ. 2:140 (2023) ("As is stated in Historical Note to UCC § 2-313 in McKinney's, that criticism resulted in the insertion of the words 'part of' to make clear that 'basis of the bargain' did not mean 'basic to the bargain,' which would have drastically restricted the scope of express warranties.").

**N.C.** Gen. Stat. § 25-2-313(1); N.C. Pattern Jury Inst. - Civ. 741.10 (2023).

**Ohio** Rev. Code § 1302.26(A); *Bobb Forest Prod., Inc. v. Morbark Indus., Inc.*, 2002-Ohio-5370, ¶ 49, 151 Ohio App. 3d 63, 81 ("The 'basis of the bargain' test [in R.C. 1302.26(A) ] centers on the description or affirmation which goes to the heart of the basic assumption between the parties. For instance, a seller's awareness of the customer's needs and affirmation that the product will meet those needs are sufficient to create an express warranty." (quotation marks omitted) (citing *id.*)).

**Or.** Rev. Stat. § 72.3130(1); *Larrison v. Moving Floors, Inc.*, 127 Or. App. 720, 724, 873 P.2d 1092, 1094 (1994) ("There are two prerequisites to a claim for breach of an express warranty. First, there must be an affirmation of fact or description of the goods by the seller. Second, that factual affirmation or description must be the 'basis of the bargain.'").

**R.I.** Gen. Laws § 6A-2-313(1).

**S.C.** Code § 36-2-313(1); *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 480 (D.S.C. 2014) ("In South Carolina, a seller of product may create an express warranty in a number of ways, including by '[a]ny affirmation of fact or promise, . . . made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis of the bargain.'" (citing *id.*)).

**Tex.** Bus. & Com. Code Ann. § 2.313(1); Tex. Pattern Jury Charges at PJC 102.9 (2022) ("An express warranty is any affirmation of fact or promise made by Don Davis that relates to the [describe particular goods] and becomes part of the basis of the bargain.").

**Utah** Code Ann. § 70A-2-313(1); *State By & Through Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 315 (Utah 1988) ("Actual reliance on the statement need not be shown, however; the statement need only form a 'part of the basis of the bargain.'").

**Vt.** Stat. tit. 9A, § 2-313(1); *Taylor v. Alfama*, 145 Vt. 4, 5, 481 A.2d 1059, 1060 (1984) ("Under 9A V.S.A. § 2–313(1)(b), when a seller of goods makes a

description of the goods which is part of the 'basis of the bargain,' the seller creates an express warranty that the goods will conform to the description.").

**Wis.** Stat. § 402.313(1); Wisc. Civ. Jury Instr. 3230 (2024) (citing *Ewers v. Eisenzopf*, 88 Wis. 2d 482, 488, 276 N.W.2d 802, 805 (1979) ("The statutory language 'A basis of the bargain' does not require the affirmation to be the sole basis for the sale, only that it is A factor in the purchase.")).

**Wyo.** Stat. § 34.1-2-313(a); Wyo. Civ. Pattern Jury Instr. (2024) (citing *Tribe v. Peterson*, 964 P.2d 1238, 1241 (Wyo. 1998) ("An express warranty is created by any affirmation of fact made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain.").

[3] This instruction reflects the statutory text of UCC section 2-313(1)(a), which has been adopted by all of the Express Warranty States and reads, "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *See* Express Warranties by Affirmation, Promise, Description, Sample, UCC Local Code Variations § 2-313 (2023) (listing minute differences between adoptions of UCC § 2-313).

**Ala.** Code § 7-2-313(1).

**Ark.** Code § 4-2-313(1).

**Fla.** Stat. § 672.313(1) (same as UCC § 2-313); *ISK Biotech Corp. v. Douberly*, 640 So. 2d 85, 88 (Fla. Dist. Ct. App. 1994) ("[T]he Douberlys' breach of express warranty theory, alleged in Count II, arose from facts showing that [Defendant] had informed Hammond that he could assure farmers that Bravo 720 would not burn their watermelons. This claim was entirely distinct from any representation made on the Bravo 720 label and involved a warranty clearly cognizable at law.").

**Ga.** Code § 11-2-313(1); *Tillman & Deal Farm Supply, Inc. v. Deal*, 146 Ga. App. 232, 233, 246 S.E.2d 138, 139-40 (1978) ("In Count 3 he sought damages resulting from the loss of his hogs as being caused by the contaminated corn which corn was supplied by the defendant 'in breach of its express warranty of suitability for feeding to the plaintiff's hogs'. . . The trial court did not err in denying the motion with respect to Count 3 of the complaint based on an express warranty by the defendant inasmuch as there was evidence to support same (the corn was stated to be satisfactory for hog feed).").

**Miss.** Code § 75-2-313(1); *Forbes v. Gen. Motors Corp.*, 935 So. 2d 869, 875 (Miss. 2006) ("To meet the first part of the statutory claim, the Forbeses must show that the product either 'breached an express warranty *or* failed to conform to other express factual representations' upon which he justifiably relied in electing to use

the product." (emphasis in original)).

**Mont.** Stat. § 30-2-313(1);  Mont. Pattern Instr. (Civ.) 14.01 (2d ed. 2003) ("Any direct and positive representation of a fact made orally or in writing by the seller to the buyer which relates to the goods, which becomes part of the basis of the bargain between the buyer and seller, constitutes an express warranty that the goods shall conform to the representation." (citing *id.*)).

**Neb.** Rev. Stat. U.C.C. § 2-313(1); 1 Neb. Prac. Jury Instr. Civ. 11.41 (2d ed. 2023).

**Nev.** Rev. Stat. § 104.2313(1); Nev. Jury Instr.—Civil 7.12 (2018).

**N.H.** Rev. Stat. § 382-A:2-313(1).

**N.Y.** U.C.C. Law § 2-313(1); N.Y. Pattern Jury Instr.—Civil 2:140 (2023) ("Plaintiff claims that in its (advertisement, label) defendant represented that its *[state product]* was *[state representation]* and that the *[state product]* did not conform to the representation in that *[state how failed to conform]*." (emphases in original)).

**N.C.** Gen. Stat. § 25-2-313(1); *Kinlaw v. Long Mfg. N. C., Inc.*, 298 N.C. 494, 499 n.5 (1979) ("North Carolina holds a manufacturer to his express warranty on the label without privity.").

**Ohio** Rev. Code § 1302.26(A); Ohio Jury Instructions CV 505.11 (2023) (citing *id.*); *Bobb Forest Prod., Inc. v. Morbark Indus., Inc.*, 2002-Ohio-5370, ¶ 49, 151 Ohio App. 3d 63, 81.

**Or.** Rev. Stat. § 72.3130(1); *Miller v. Hubbard-Wray Co.*, 52 Or. App. 897, 901, 630 P.2d 880, 882 (1981) ("The representation that the baler was only two years old and had been used only one year is a statement of fact material to the bargain in view of plaintiff's express criterion that the baler be newer than his former machine.").

**R.I.** Gen. Laws § 6A-2-313(1).

**S.C.** Code § 36-2-313(1).

**Tex.** Bus. & Com. Code Ann. § 2.313(1); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 372 (Tex. App. 1994) ("We reverse and remand for new trial on the Mechuras' claims for express warranties by Martin in extolling the superiority of TS–466 and by all appellants in representing on the bag tag that lot A9759AC had been tested in February 1990 and produced a germination rate of at least 85%.").

**Utah** Code Ann. § 70A-2-313(1); *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.*, No. 2:18-CV-01509, 2020 WL 5223363, at *24 (S.D. Ohio Sept. 1, 2020) (applying Utah law, "Plaintiff need not establish that Bard made any affirmations directly to him. Instead, he could show that he relied on Dr. Jensen's medical judgment, and that Dr. Jensen in turn relied on the affirmations made by Bard in forming that judgment relied upon by Plaintiff.").

**Vt.** Stat. tit. 9A § 2-313(1); *Mainline Tractor & Equip. Co. v. Nutrite Corp.*, 937 F. Supp. 1095, 1106 (D. Vt. 1996) ("The label booklet states that Micro–Tech controls crabgrass. Therefore, the statement on the label clearly falls within the purview of § 2–313(a) as an affirmation of fact made by the seller to the buyer relating to the quality of the goods.").

**Wis.** Stat. § 402.313(1).

**Wyo.** Stat. § 34.1-2-313(a); *Albin Elevator Co. v. Pavlica*, 649 P.2d 187, 190 (Wyo. 1982) ("The description is plainly reflected in the sales ticket, signed by one of appellant's employees, where the recitation approves to the effect that Albin delivered 216.3 bushels of 'spring wheat' to appellee. . . . These facts establish that Albin expressly warranted to sell Pavlica 'spring wheat' and such assurances were made a basis of the bargain.").


[4] This instruction reflects the statutory text of UCC section 2-313(1)(b), which has been adopted by all Express Warranty states and reads, "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *See* Express Warranties by Affirmation, Promise, Description, Sample, UCC Local Code Variations § 2-313 (2023) (listing minute differences between adoptions of UCC § 2-313).


This instruction is based on Model Utah Jury Instruction CV1025, titled "Breach of Express Warranty. Description of goods." Model Utah Jury Instr.s (2d ed. 2014) ("A description of goods may be by words or may be expressed in any other manner, such as use of technical specifications or blueprints, which may be more exact than language. As long as the description is made part of the basis for entering into the transaction, the goods must conform to that description."). Several other states have similar instructions on descriptions, such as Nebraska and Montana. 1 Neb. Prac. Jury Instr. Civ. 11.41 ("If a description of the goods is part of the basis of the bargain, that creates an express warranty that the goods will conform to the description."); Mont. Pattern Jury Instr. 14.03 (2d ed. 2003) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").


**Ala.** Code § 7-2-313(1)(b) ("Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.").

**Ark.** Code § 4-2-313(1)(b) (same).

**Fla.** Stat. § 672.313(1)(b) (same).

**Ga.** Code § 11-2-313(1)(b) (same).

**Miss.** Code § 75-2-313(1)(b) (same).

**Mont.** Stat. § 30-2-313(1)(b) (same).
**Neb.** Rev. Stat. U.C.C. § 2-313(1)(b) (same).
**Nev.** Rev. Stat. § 104.2313(1)(b) (same).
**N.H.** Rev. Stat. § 382-A:2-313(1)(b) (same).
**N.Y.** U.C.C. Law § 2-313(1)(b) (same).
**N.C.** Gen. Stat. § 25-2-313(1)(b) (same).
**Ohio** Rev. Code § 1302.26(A)(2) (same).
**Or.** Rev. Stat. § 72.3130(1)(b) (same).
**R.I.** Gen. Laws § 6A-2-313(1)(b) (same).
**S.C.** Code § 36-2-313(1)(b) (same).
**Tex.** Bus. & Com. Code Ann. § 2.313(1)(b) (same).
**Utah** Code Ann. § 70A-2-313(1)(b) (same).
**Vt.** Stat. tit. 9A, § 2-313(1)(b) (same).
**Wis.** Stat. § 402.313(1)(b) (same).
**Wyo.** Stat. § 34.1-2-313(a)(ii) (same).

[5] This instruction incorporates Judge Kugler's holding that:

> The Mfrs' very naming of the drug as valsartan or valsartan-containing amounted to an express warranty on which plaintiffs had no choice but to "rely" when they were prescribed the drug and bought it as a medication for their high blood pressure. Plaintiffs did not have to "perceive" the package labelling or insert in order to create a benefit of the bargain. All they had to know was they were buying a generic drug that contained valsartan because the very name "valsartan" or "valsartan-containing" constituted itself an express warranty that what plaintiffs were purchasing was the chemical equivalent of the Orange Book pharmaceutical. See, e.g., Gremo v. Bayer Corporation, 469 F.Supp.3d 240, 258 (D.N.J. 2020) quoting " 'A statement can amount to a warranty, even if unintended to be such by the seller, if it could fairly be understood ... to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance.' Volin v. General Electric Company, 189 F. Supp. 3d 411, 420 (D.N.J. 2016) (citations omitted).

MTD Opinion 3: Warranty Claims, ECF 775 at 14; *see also In re Metformin Mktg. & Sales Prac. Litig.*, No. CV 20-2324, 2022 WL 970281, at *11 (D.N.J. Mar. 30, 2022) ("MSPRC has sufficiently pled the specific language of the express warranties at issue, namely the labeling and product name which 'represent and warrant to end-users and TPPs that their MCDs are in fact the same as and are therapeutically interchangeable with their RLDs.'"); *Bourbia v. S.C. Johnson &*

51

*Son, Inc.*, 375 F. Supp. 3d 454, 464 (S.D.N.Y. 2019) ("Plaintiff stated a claim for breach of express warranty, since product descriptions such as those on Off! Clean Feel's label are considered express warranties under New York's Uniform Commercial Code, and Plaintiff alleged that the label statements were part of the basis of the bargain.")); *Hassett v. Dafoe*, 2013 PA Super 213, 74 A.3d 202, 215 (2013) ("In Count VII, breach of express and implied warranties, Mr. Hassett seeks to impose liability against Generic Defendants for failing to deliver products that conformed to the properties described in the label and promotional materials. Such a claim is not premised on the inadequacy of the label but rather on the product's failure to live up to or conform to its label and advertising.").

The description of the Orange Book is from the preface of the *FDA Orange Book* publication. U.S. Food & Drug Admin., Approved Drug Products With Therapeutic Equivalence Evaluations  (2024), https://www.fda.gov/drugs/development-approval-process-drugs/orange-book-preface.


[6] This instruction is based on Alabama Pattern Jury Instruction 32.18, entitled "Breach of Warranty—Express Warranty—Elements":

> Plaintiff (name of plaintiff) says that (name the product) did not conform to the express warranty given by defendant (name of defendant), and that as a result (name of plaintiff) was harmed.

> To recover damages for breach of the express warranty, (name of plaintiff) must prove to your reasonable satisfaction the following:

> 1. (Name of defendant) sold the (name the product) and made an express warranty about the (name the product);

> 2. The (name the product) did not conform to the express warranty; and

> 3. (Name of plaintiff) was harmed as a result of the (name the product)'s failure to conform to the express warranty.

2 Ala. Pattern Jury Instr. Civ. 32.18 (3d ed.).

Oregon Uniform Civil Jury Instructions 67.03, entitled "Breach of Express Warranty (UCC)" is similar:

> To recover damages for breach of an express warranty, the buyer must prove all of the following elements:
>
> (1) The seller made one or more express warranties relating to the [specify goods];
>
> (2) The seller breached one or more of the express warranties because the [specify goods] did not conform to one or more of the express warranties;
>
> (3) The buyer notified the seller of the breach within a reasonable time after the buyer discovered or should have discovered the breach; and
>
> (4) The buyer sustained damages resulting from the seller's breach.

Or. Unif. Civ. Jury Instr. 67.03 (2023). This instruction also incorporates notice as an element, which has been implemented in the above. *See* Ark. Model Jury Instr., Civ. AMI 2507 (2023) ("[T]hat (plaintiff) gave notice of the failure of the goods to conform to the warranty to (defendant) within a reasonable time[.]"). Plaintiffs do not presently incorporate an element of notice in their proposed instruction, pending resolution of its motion for summary judgment and arguments in opposing Defendants' motion for summary judgment regarding preemption and estoppel.

The elements of an express warranty claims in each of the Express Warranty States are consistent, though there is some variation in how each state chooses to break out the elements.

**Ala.** 2 Ala. Pattern Jury Instr. Civ. 32.18 (3d ed.); *see also Ex parte Miller*, 693 So. 2d 1372, 1376 (Ala. 1997) ("In Alabama, the crux of all express warranty claims is that the goods did not conform to the warranty.").
**Ark.** Model Jury Instr., Civ. AMI 1012 (listing elements) (citing *Little Rock Sch. Dist. of Pulaski Cnty. v. Celotex Corp.*, 264 Ark. 757, 766 (1978) ("We perceive that the trial court's proscriptive definition of an express warranty is not compatible not only with the case law cited herein, but is diametrically opposed to Arkansas's Uniform Commercial Code in delineating circumstances giving credence to express warranties.")).
**Fla.** *Armadillo Distrib. Enters., Inc. v. Hai Yun Musical Instruments Manufacture Co.*, 142 F. Supp. 3d 1245, 1253 (M.D. Fla. 2015) ("To state a cause of action for breach of an express warranty under Florida's U.C.C., the plaintiff 'must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to

seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty.'" (citation omitted)).

**Ga.** *Cline v. Advanced Neuromodulation Sys., Inc*., 914 F. Supp. 2d 1290, 1296 (N.D. Ga. 2012).

**Miss.** Miss. Prac. Model Jury Instr. Civil § 16:1 (2d ed.) (citing Miss. Code Ann. § 11-1-63(a)(i)(4)); *see also Goodyear Tire & Rubber Co. v. Kirby*, 156 So. 3d 281, 294 ¶ 27 (Miss. Ct. App. 2009) (listing elements in context of jury instruction).

**Mont.** Pattern Instr. (Civ.) 14.01-14.04 (2d ed. 2003) (listing elements).

**Neb.** 1 Neb. Prac., Jury Instr. Civ. 11.40 (2d ed.) (listing elements in jury instruction); *Delgado v. Inryco, Inc.*, 230 Neb. 662, 666–67, 433 N.W.2d 179, 183 (1988) ("In order for a plaintiff to recover on a breach of express warranty, he must show, among other things, that 'the goods did not comply with the warranty, that is, that they were defective, and that his injury was caused by the defective nature of the goods.'").

**Nev.** Jury Instr.—Civil 7.12 (2018) (listing elements).

**N.H.** *Xerox Corp. v. Hawkes*, 124 N.H. 610, 616, 475 A.2d 7, 9 (1984) ("Under the Uniform Commercial Code, express warranties can be created by 'promises or affirmations of fact' which relate to the goods and become part of the contractual bargain. . . . Unless the warranties are disclaimed or limited, a breach of any of these warranties may give rise to a cause of action for incidental or consequential damages." (citations omitted)).

**N.Y.** N.Y. Pattern Jury Instr.—Civ. 2:140 (2023) (listing elements).

**N.C.** Pattern Jury Inst. 741.10 (2023) (listing elements).

**Ohio** Jury Instr. CV 505.11 (2023) (listing elements).

**Or.** Unif. Civil Jury Instr. 67.03 (2023) (listing elements).

**R.I.** *Thomas v. Amway Corp.*, 488 A.2d 716, 719 (R.I. 1985) ("General Laws 1956 (1969 Reenactment) § 6A–2–313 sets forth the necessary requisites of proof in order to prevail on a claim for a breach of an express warranty by affirmation or promise.").

**S.C.** *Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 480 (D.S.C. 2014) ("In order to establish a cause of action for breach of an express warranty, a plaintiff must show 'the existence of the warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach.'").

**Tex.** Pattern Jury Charges at PJC 102.9 (2022) (listing elements); *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 197 (Tex. App. 2003) ("Generally, in order to recover for breach of an express warranty under the DTPA, a plaintiff must prove (1) he or she is a consumer, (2) a warranty was made, (3) the warranty was breached, and (4) as a result of the breach, an injury resulted.").

**Utah.** Model Utah Jury Instr. CV1029 (2d ed. 2014).

54

**Vt.** *Taylor v. Alfama*, 145 Vt. 4, 5, 481 A.2d 1059, 1060 (1984) (applying elements of Vermont express warranty law).

**Wis.** Jury Instr.-Civ. 3230 (2024) (listing elements).

**Wyo.** Civ. Pattern Jury Instr. (2024) (listing elements).

## D. <u>CONSUMER PROTECTION LAW CLAIM</u>

## CPL Instruction 6.1 – Introduction [Plaintiffs' Proposal]

**Plaintiffs' second claim, for violation of state consumer protection laws, is made under the laws of the following states:**

- **Alaska's Unfair Trade Practices Act**
- **Arizona's Consumer Fraud Act**
- **California's Unfair Competition Law**
- **Connecticut's Unfair Trade Practices Act**
- **Florida's Unfair and Deceptive Trade Practices Act**
- **Hawaii's Unfair and Deceptive Acts and Practices Law**
- **Louisiana's Unfair Trade Practices Act**
- **Missouri's Merchandising Practices Act**
- **Nebraska's Consumer Protection Act**
- **New Hampshire's Consumer Protection Act**
- **New York's Consumer Protection from Deceptive Acts and Practices Laws**
- **North Carolina's Deceptive Trade Practices Act**
- **North Dakota's Consumer Protection Act**
- **Oregon's Unlawful Trade Practices Act**
- **Pennsylvania's Unfair Trade Practices and Consumer Protection Law**
- **Washington's Consumer Protection Act**

**I have already determined that the laws of these states (which I will collectively refer to as the "Consumer Protection Law" states) are sufficiently similar to instruct you on them jointly for the most part. However, there may be instances where I provide you with specific instructions for a state or subgroup of states. Your verdict form will reflect any state-specific findings you need to make. Unless otherwise instructed, you must treat the following instructions as applicable to all of the above states.**

**Alaska** Stat. §45.50.471 *et seq.*; **Ariz.** Rev. Stat. § 44- 1522 *et seq.*; **Cal.** Bus. & Prof. Code § 17200 *et seq.*; **Conn.** Gen. Stat. § 42- 110a *et seq.*; **Fla.** Stat. § 501.201 *et seq.*; **Haw.** Rev. Stat. § 480-2 *et seq.* & 480-13; **La.** Rev. Stat. § 51:1405 *et seq.*; **Mo.** Rev. Stat. § 407.020 *et seq.*; **Neb.** Rev. Stat. § 59-1602 *et seq.*; **N.H.** Rev. Stat. Ann. § 358-A:1 *et seq.*; **N.Y.** Gen. Bus. Law §§ 349 & 350 *et seq.*; **N.C.** Gen. Stat. § 75-1.1 *et seq.*; **N.D.** Cent. Code Ann. § 51-15-01 *et seq.* & 51-10-02 *et seq.*; **Or.** Rev. Stat. Ann. § 646.605 *et seq.*; 73 **Pa.** Cons. Stat. § 201-1 *et seq.*; **Wash.** Rev. Code § 19.86.020 *et seq.*

### CPL Instruction 6.2 – General Elements of Claim [Plaintiffs' Proposal]

**Plaintiffs claim that ZHP, Teva, and Torrent each violated the Consumer Protection Law statutes of the states I listed a few moments ago. Plaintiffs must prove their claims against ZHP, Teva, and Torrent by a preponderance of the evidence. Generally (and aside from any state-specific instructions I will provide), Plaintiffs must prove three things: (1) the defendant engaged in unfair or deceptive conduct; (2) that the defendant's unfair or deceptive conduct occurred in the course of defendant's trade or commerce; and (3) Plaintiffs were damaged as a result of the defendant's unfair or deceptive conduct. I will define and explain these terms now.**

**Alaska** Civ. Pattern Jury Instr. 10.01A (2022) (setting forth elements of claim).
Rev. **Ariz.** Pattern Jury Instr. CTI 21 (7th ed.) (elements of claim).
*CF Gainesville Investor, LLC v. Astronergy Solar, Inc.,* 615 F. Supp. 3d 1137 (C.D. Cal. 2022) (elements of **California** UCL claim).
**Conn.** Jud. Branch Civ. Jury Instr. 5.2-1 (2020) (elements of claim).
**Fla.** Civ. Jury Instr. 416.50(a) (elements of claim)
**Haw.** Pattern Civ. Jury Instr. 19.1 (1999) (elements of claim, will set forth a separate instruction on required unfair competition element for which plaintiff need not be "consumer" *infra*); *accord Davis v. Four Seasons Hotel Ltd.,* 228 P.3d 303, 315 (Haw. 2010) (holding that "a plaintiff "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practices"); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1074 (D. Haw. 2011) (plaintiff may prove unfair competition claim through proof of unfair or deceptive practices claim with added element that the practice "negatively affect[ed] competition" generally).
**La.** Rev. Stat. § 51:1405.
**Mo.** Approved Jury Instr. (Civ.) 39.01 (8th ed. 2023)(setting forth elements of claim, separate instruction will be provided on element of "personal, family or household purposes"); *see also Huch v. Charter Commc'ns., Inc.,* 290 S.W.3d 721, 724 (Mo. 2009).
*Raad v. Wal-Mart Stores, Inc*., 13 F. Supp. 2d 1003, 1018 (D. Neb. 1998) (discussing claim, separate instruction to be provided on element that the claim affects the public interest); *State ex rel. Stenberg v. Consumer's Choice Foods*, 755 N.W.2d 583 (Neb. 2008) (**Nebraska** claim is equitable in nature).
*Optical Alignment Sys. & Inspection Servs., Inc. v. Alignment Servs. of N. Am*., Inc., 909 F. Supp. 58, 62 (D.N.H. 1995) (discussing **New Hampshire** claim).
*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (setting forth **New York** elements, a separate instruction will be provided on element that the

defendant's conduct be "consumer-oriented").

*Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 109 (4th Cir. 2016) (setting forth elements for **North Carolina** claim and citing authorities).

*DJ Coleman, Inc. v. Nufarm Americas, Inc.*, 693 F.Supp.2d 1055 (D.N.D. 2010) (discussing **North Dakota** claim and elements).

*Wright v. Kia Motors Am. Inc.*, No. 6-6212, 2007 WL 316351, at *2 (D. Or. Jan. 29, 2007) (discussing elements of **Oregon** claim).

*Gregg v. Ameriprise Fin., Inc.,* 245 A.3d 637, 647 (Pa. 2021) (extensive discussion of **Pennsylvania** claim, construction, and proof elements).

**Wash.** Pattern Jury Instr.-Civ. 310.01 (setting forth elements, separate instruction to be provided on element that practice impact the "public interest").

## CPL Instruction No. 6.3 – Deceptive Conduct [Plaintiffs' Proposal]

I will now instruct you on what constitutes "deceptive" conduct.

Plaintiffs are not required to show that ZHP, Teva, or Torrent intended to deceive anyone or acted in bad faith. [1]

A defendant's conduct (meaning statements, omissions, other acts) is deceptive if it is material (meaning a reasonable person would consider it important) and has the tendency to deceive based on any reasonable interpretation of the conduct. Any material misrepresentation is considered to be deceptive. [2]

The sale of hazardous or systematically defective products without adequate disclosures is considered to be deceptive. [3]

All of the following conduct is also considered to be deceptive:

- Causing likelihood of confusion or of misunderstanding as to the approval or certification of goods;
- Causing likelihood of confusion or of misunderstanding as to affiliation or certification by, another;
- Representing that goods have approval, characteristics, ingredients, uses that they do not have; or,
- Representing that goods are of a particular standard, quality or grade, if they are of another. [4]

[1] *See Borgen v. A&M Motors, Inc.*, 273 P.3d 575, 591 (**Alaska** 2012); *State ex rel. Babbit v. Goodyear Tire & Rubber Co.*, 626 P.2d 1115, 1118 (**Ariz.** Ct. App. 1981); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 **Cal.** App. 4th 1105, 1133 (Cal. App. 2nd Dist. 2014); *Lawrence v. Richman Grp. Cap. Corp.*, 358 F. Supp. 2d 29 (D. **Conn.** 2005); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (**Fla.** 2003); *Morice v. Hosp. Serv. Dist. #3*, 430 F. Supp. 3d 182, 216 (E.D. **La.** 2019) (A misrepresentation is "deceptive" for purposes of LUTPA.); *Duncan v. Savannah, LLC*, 637 S.W.3d 633, 643 (**Mo.** Ct. App. 2021) ("It is the defendant's conduct, not his intent, which determines whether a violation has occurred." (citations and quotations omitted)); *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1014 (D. **Neb.** 1998) ("practice possessed the tendency or capacity to mislead"); ECF 2261, App'x I, at 20 (this Court stating, with respect to **New Hampshire** law, that the "P[laintiffs] could claim violation under several

enumerated prohibitions by D[efendant]s in the statute that do not require scienter."); *Pension Fund v. Marine Bank*, 85 N.Y.2d 20, 26 (**N.Y.** 1995); *Myers v. Liberty Lincoln-Mercury, Inc.*, 365 S.E.2d 663, 664 (**N.C.** 1988) ("purchaser of misrepresented merchandise does not have to prove fraud, bad faith or intentional deception"); *DJ Coleman, Inc. v. Nufarm Americas, Inc.*, 693 F. Supp. 2d 1055 (D.**N.D.** 2010); *Trotter v. Am. Mod. Select Ins. Co.*, 220 F. Supp. 3d 1266, 1269 (W.D. **Okla.** 2016); *State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1203 (**Or.** App. 2015); *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 650 (**Pa.** 2021); *State v. A.N.W. Seed Corp.* 802 P.2d 1353 (**Wash.** 1991).

[2] **Alaska** Pattern Jury Instr. 10.03A (2022) (defining deception).
Rev. **Ariz**. Pattern Jury Inst. CTI 21 (7th ed.) (citing *Powers v. Guaranty RV, Inc.*, 278 P.3d 333, 338 (Ariz. Ct. App. 2012)).
**Conn.** Jud. Branch Civ. Jury Instr. 5.2-7 (2020) (deception instruction).
**Fla.** Pattern Jury Inst. 416.50(a) (deception instruction); *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).
**Haw.** Civ. Jury Instr. 19.4 (1999) (deception instruction).
*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1056 n. 4 ("[T]his 1972 [**Louisiana**] legislation was modeled after the Federal Trade Commission Act of 1914 (FTC).").
*Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 759 (W.D. Mo. 2015) (**Missouri** statute deliberately does not define deception to effectuate liberal and remedial purpose); *see also Glassock v. Sig Sauer, Inc.*, 654 F. Supp. 3d 866, 870 (W.D. Mo. 2022) (whether reasonable consumer would be deceived by conduct).
*Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1018 (D. Neb. 1998) (conduct is deceptive under **Nebraska** statute if it has "tendency to mislead").
*Optical Alignment Sys. & Inspection Servs., Inc. v. Alignment Servs. of N. Am., Inc.*, 909 F. Supp. 58, 62 (D.**N.H.** 1995).
*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178, 171 N.E.3d 1192 (NY Ct. App. 2021) (defining deception under **New York** GBL §§ 349, 350).
*Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996) (collecting cases on **North Carolina** statute).
*DJ Coleman, Inc. v. Nufarm Americas, Inc*, 693 F.Supp.2d 1055 (D.N.D. 2010) (discussing **North Dakota** claim and elements).
*Watson v. Vici Cmty. Dev. Corp.*, No. 20cv1011, 2021 WL 1394477, at *12 (W.D. Okla. Apr. 12, 2021) (defining deception under **Oklahoma** statute).
*State ex rel. Rosenblum v. Johnson & Johnson*, 362 P.3d 1197, 1203 (Or. Ct. App. 2015), *aff'd* 358 Or. 611 (Or. 2016) ("misrepresentations made in connection with the sale of good" actionable under **Oregon** law).

**Washington** Pattern Instr. 310.08 (2022) (deception instruction)

[3] FTC Policy Statement on Deception, U.S. Fed. Trade Comm'n (Oct. 14, 1983), https://www.ftc.gov/system/files/documents/public_statements/410531/831014deceptionstmt.pdf; *see also F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 243 (3d Cir. 2015) (emphasizing FTC's ability to "deem a practice" deceptive *via* issuance of policy statements). The vast majority of these states incorporate FTC guidance and decisional law. *See, e.g.*, *Borgen v. A & M Motors, Inc.*, 273 P.3d 575, 583 (**Alaska** 2012); **Ariz.** Rev. Stat. § 44-1522(C); *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 543 (**Cal.** 1999); **Conn.** Gen. Stat. § 42-110b; **Fla.** Stat. Ann. § 501.204; **Haw.** Rev. Stat. § 480-2; *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc*., 2009-1633 (**La.** 4/23/10), 35 So. 3d 1053, 1056 n.4 ("[T]his 1972 [Louisiana] legislation was modeled after the" FTC Act.); *F.T.C. v. Crescent Pub. Grp., Inc.*, 129 F. Supp. 2d 311, 318 (S.D.N.Y. 2001) ("Moreover, the [**New York**] state law is modeled in part on the FTCA and compliance with the FTCA is a defense to charges under the law."); **N.H.** Rev. Stat. § 358- A:13; *Johnson v. Phoenix Mut. Life Ins*. Co., 266 S.E.2d 610, 620 (**N.C.** 1980) ("[I]t is appropriate for us to look to the federal decisions interpreting the FTC Act for guidance" in construing N.C. Gen. Stat. § 75-1.1); *Gregg v. Ameriprise Fin., Inc*., 245 A.3d 637, 650 (**Pa.** 2021); *State v. Living Essentials, LLC*, 436 P.3d 857, 866 (2019) ("**Washington** courts have repeatedly adopted federal court interpretations of section 5 of the FTCA when reviewing CPA cases.").

[4] **Alaska** Stat. § 45.50.471; 73 **Pa.** Cons. Stat. § 201-1; **Or.** Rev. Stat. Ann. § 646.608.

## CPL Instruction No. 6.4 – Unfair Conduct [Plaintiffs' Proposal]

I will now instruct you on what constitutes "unfair" conduct. Plaintiffs do not pursue an independent "unfair conduct" claim under New York, North Dakota, Oregon, or Pennsylvania law, and your verdict form will reflect that. Plaintiffs do pursue "unfair conduct" claims for the remainder of the states.

To show "unfair conduct," Plaintiffs are not required to show that ZHP, Teva, or Torrent intended to engage in unfair conduct or otherwise acted in bad faith. It is enough if you find that they engaged in unfair conduct or otherwise acted in bad faith, even if not intended. [1]

A defendant's conduct may be both "deceptive" and "unfair", and a defendant's conduct may be "unfair" even if it is not "deceptive." [2]

In determining whether a defendant's conduct (meaning statements, omissions, other acts) is "unfair conduct" you must consider:

> (1) the substantiality of Plaintiffs' injury;

> (2) whether the injury is outweighed by any countervailing benefits; and

> (3) whether Plaintiffs could have reasonably avoided the injury. [3]

Other considerations in determining unfairness may include:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or some other established concept of unfairness;

> (2) whether it is immoral, unethical, oppressive, or unscrupulous; or

> (3) whether it causes substantial injury. [4]

[1] *See supra* CPL Instr. 6.3 n.1 (collecting cases)
[2] *FTC v. Wyndham*, 799 F.3d 236, 245 & n.4 (3d Cir. 2015) (citing cases interpreting FTC Act and describing "deception as a subset of unfairness"). The vast majority of the states at issue expressly incorporate and look to FTC Act guidance. *See supra* CPL Instr. 6.3 n.3 (collecting cases). For those that do not expressly incorporate FTC Act guidance (*i.e.*, Nebraska, Oklahoma, Oregon) each

state broadly interprets their respective claims based on equitable principles such that this instruction is similarly applicable. *State ex rel. Stenberg v. Consumer's Choice Foods*, 755 N.W.2d 583, 587 (Neb. 2008) (**Nebraska** claim equitable in nature); *Gordon v. Rosenblum*, 361 Or. 352, 361–62, 393 P.3d 1122, 1128 (2017) (**Oregon** statute largely equitable in nature).

[3] Ariz. Rev. Stat. § 44- 1522(C) (**Arizona** courts may use "interpretations given by the [FTC] and the federal courts" in interpreting "unfair act or practice"); *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (Cal. App. 2d 2006) (**California** UCL section 17200 unfairness); *Hill Dermaceuticals, Inc. v. Anthem, Inc.*, 228 F. Supp. 3d 1292, 1302 (M.D. Fla. 2017) (**Florida** unfairness and citing authorities); Wash. Pattern Jury Instr. 310.08 (2022) (**Washington** defining unfair practice).

[4] Alaska Pattern Jury Instr.--Civ. 10.03B (2022) (unfair pattern charge); *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 215 (**Conn.** 1990) (**Connecticut**); Haw. Civ. Jury Instr. 19.3 (1999) (**Hawaii** unfairness); *L. Indus., LLC v. Dep't of Educ., Recovery Sch. Dist. & Advanced Env't Consulting, Inc.*, 2023-00794 (La. 1/26/24), 2024 WL 295933, at *4-5 (**Louisiana** unfairness); *Ward v. W. Cnty. Motor Co.*, 403 S.W.3d 82, 84 (Mo. 2013) (**Missouri** unfairness); *Raad v. Wal-Mart Stores, Inc.*, 13 F. Supp. 2d 1003, 1018 (D. Neb. 1998) (**Nebraska** unfairness); *Ne. Lumber Mfrs. Assoc. v. N. States Pallet Co.*, 710 F. Supp. 2d 179, 188 (D.N.H. 2010) (**New Hampshire** unfairness); *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 845 F.3d 104, 109 (4th Cir. 2016) (discussing **North Carolina** unfairness); 15 Okla. Stat. § 752(14) (**Oklahoma** statute defining unfair trade practice).

64

### CPL Instruction No. 6.5 – Trade or Commerce [Plaintiffs' Proposal]

**Trade or commerce means advertising, offering for sale, selling, renting, leasing, or distributing any services, goods, property, or any other thing of value. Trade or commerce includes transactions between businesses and transactions with individual customers or consumers.**

*See, e.g.*, **Alaska** Pattern Jury Instr. 10.02 (2022); **Conn.** Jud. Branch Civ. Jury Instr. 5.2-2 (2020). Arizona's "sale or advertisement of merchandise" is subsumed within the definition of "Trade or Commerce." *See* **Ariz.** Rev. Stat. § 44-1522(A).

## CPL Instruction No. 6.6 – Affecting the Public Interest (Nebraska and Washington) [Plaintiffs' Proposal]

Two states (Nebraska and Washington) require that the defendant's conduct affect or impact the public interest. Your verdict form will reflect this.

Conduct in violation of a statute aimed at securing the public interest is deemed to be conduct affecting or impacting the public interest.

You may consider the fact that this is a certified class action in determining whether ZHP's, Teva's, or Torrent's respective conduct affected or impacted the public interest.

Conduct that has a widespread affect or which implicates matters of public policy are also deemed to affect or impact the public interest.

Other considerations on whether a defendant's conduct affects or impacts the public interest are whether the acts were committed in the course of defendant's business, or, whether the conduct was isolated to one individual or subject to a pattern of generalized conduct aimed at the public at large.

*Stephens v. Omni Ins. Co.*, 159 P.3d 10, 24 (Wash. Ct. App. Div. 1 2007); *Bassett v. Credit Bureau Servs., Inc.*, 554 F. Supp. 3d 1000, 1018 (D. Neb. 2021), *vacated and rev'd on other grounds,* 60 F.4th 1132 (8th Cir. 2023).

## CPL Instruction No. 6.7 – "Consumer-Oriented" Conduct for New York
### [Plaintiffs' Proposal]

New York requires that the defendant's conduct be "consumer-oriented" for violations of its consumer protection statute. Your verdict form will reflect this.

Consumer-oriented conduct does not necessarily require repetition or a pattern of deceptive behavior, but to state a claim of consumer-oriented deception, a plaintiff must allege that the disputed acts or practices of the defendant have a broader impact on consumers at large.

Satisfaction of this element does not depend on whether the plaintiff actually consumed the product or is or is not a consumer itself, or their intended use of the product in question. Your focus should be on the defendant's alleged deception and its subsequent impact in determining whether conduct is consumer-oriented.

*Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004); *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 177, 171 N.E.3d 1192, 1198 (N.Y. 2021).

## CPL Instruction No. 6.8 – Personal, Family, Household for Missouri
### [Plaintiffs' Proposal]

**Missouri requires that the purchase of the product have been primarily for personal, family, or household purposes for violations of its statute. Your verdict form will reflect this.**

Mo. Rev. Stat. § 407.025.

### CPL Instruction No. 6.9 – "Harm to Competition Generally" for Hawaii
### [Plaintiffs' Proposal]

**Hawaii requires that Plaintiffs demonstrate "harm to competition" as an additional element to its claim. Your verdict form will reflect this.**

**Plaintiffs contend that ZHP's, Teva's, and Torrent's respective conduct caused harm to competition. Plaintiffs contend that ZHP's API manufacturing process or processes (which caused the NDMA and/or NDEA contamination) resulted in higher yields and lower production costs. This in turn allowed ZHP, Teva, and/or Torrent to sell their respective finished dose valsartan-containing drugs at lower prices than the competition and negatively affect competition in the market for valsartan. If you find for the Plaintiffs on these facts, they have established "harm to competition" under Hawaii law.**

**[Defendants contend ….]**

*Davis v. Four Seasons Hotel Ltd.*, 122 Haw. 423, 434-36 (Haw. 2010); *Gurrobat v. HTH Corp.*, 133 Haw. 1, 22, 323 P.3d 792, 813 (2014) ("[P]laintiffs may prove how a defendant's conduct negatively affects competition by showing that defendant's conduct enables the defendant to create incentives for customers to purchase banquet services from the defendant instead of competitors who did not engage in the unlawful conduct.").

## E. COMMON LAW FRAUD CLAIM

## Fraud Instruction 7.1 – Introduction [Plaintiffs' Proposal]

**Plaintiffs third and final claim for this trial is a common law fraud claim pursuant to the laws of Alaska, Arkansas, Colorado, District of Columbia, Florida, Idaho, Iowa, Louisiana, Massachusetts, Minnesota, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, Washington, Wyoming, and Puerto Rico.**

**I have already determined that the common law fraud claims of these states are sufficiently similar to instruct you on them jointly for the most part. However, there may be instances where I provide you with specific instructions for a state or subgroup of states. Your verdict form will reflect any state-specific findings you need to make. Unless otherwise instructed, you must treat the following instructions as applicable to all of the above states.**

**<u>Fraud Instruction 7.2 – General Elements and Discussion of Claim [Plaintiffs'
Proposal]</u>**

**Plaintiffs claim that ZHP, Teva, and Torrent each committed common law
fraud under the laws of the states I listed a few moments ago. In some of these
states, Plaintiffs must prove their fraud claim against each of ZHP, Teva, and
Torrent by a preponderance of the evidence. In others, Plaintiffs must prove
their fraud claim by clear and convincing evidence. I have already defined and
explained these burdens of proof to you. The underlying evidence you will
consider is the same regardless of the burden of proof to be applied. Your task
is to determine whether that evidence meets one or both of these standards of
proof, and your verdict form will reflect that.**

**Generally (and aside from any state-specific instructions I will provide),
Plaintiffs must prove the following elements of common law fraud: (1) a false
statement of material fact by ZHP, Teva, or, Torrent, respectively; (2) made
with knowledge of its falsity (or knowledge that the defendant did not know
whether it was true or false); (3) with an intent to induce another to rely on it;
(4) and resulting or consequent injury by Plaintiffs. [1]**

**I will define and explain these terms now.**

[1] *Cornelison v. TIG Ins.*, 376 P.3d 1255, 1270 (**Alaska** 2016); *Jewell v. Fletcher*,
377 S.W.3d 176 (**Ark.** 2010); *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155,
1160 (**Colo.** 2013) (separate instruction to be provided on additional element that
the plaintiff be ignorant of falsity); *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln
New Town Corp.*, 944 A.2d 1055, 1074 & n.22 (**D.C.** 2008); *Johnson v. Davis*, 480
So.2d 625, 627 (**Fla.** 1985); *Frontier Dev. Grp., LLC v. Caravella*, 338 P.3d 1193,
1198 (**Idaho** 2014) (separate instruction to be provided on additional element that
the plaintiff be ignorant of falsity); *Wilden Clinic, Inc. v. City of Des Moines*, 229
N.W.2d 286, 292 (**Iowa** 1975); *Becnel v. Grodner*, 07–1041, p. 3 (La. App. 4 Cir.
4/2/08), 982 So.2d 891, 894; *Danca v. Taunton Sav. Bank*, 429 N.E.2d 1129
(**Mass.** 1982); *Estate of Jones v. Kvamme*, 449 N.W.2d 428, 431 (**Minn.** 1989);
*Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (**N.J.** 2005); *Euryclia
Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (**N.Y.** 2009); *City of
New Bern v. White*, 110 S.E.2d 446, 448 (**N.C.** 1959); *Kary v. Prudential Ins. Co.
of Am.*, 541 N.W.2d 703, 705 (**N.D.** 1996); *Siegel v. Ringer*, 94 N.E.3d 1178, 1185
(**Ohio** Ct. App. 2017); *Bowman v. Presley*, 212 P.3d 1210, 1218 (**Okla.** 2009);
*Parker v. Byrne*, 996 A.2d 627, 634 (**R.I.** 2010); *N. Am. Truck & Trailer, Inc. v.*

*M.C.I. Commc'n Servs., Inc.*, 751 N.W.2d 710, 713 (**S.D.** 2008); *Estate of Alden v. Dee*, 35 A.3d 950, 960-61 (**Vt.** 2011) (separate instruction to be provided on additional element that the plaintiff be ignorant of falsity); *State Farm Mut. Auto. Ins. Co. v. Remley*, 618 S.E.2d 316, 321 (**Va.** 2005); *Adams v. King Cty.*, 192 P.3d 891, 902 (**Wash.** 2008) (separate instruction to be provided on additional element that the plaintiff be ignorant of falsity); *Singer v. Lajaunie*, 339 P.3d 277, 285 (**Wyo.** 2014) (separate instruction to be provided on additional element that the plaintiff be ignorant of falsity); *Microsoft Corp. v. Comput. Warehouse*, 83 F. Supp. 2d 256, 262 (D.**P.R.** 2000).

## <u>Fraud Instruction 7.3 – Materiality [Plaintiffs' Proposal]</u>

**A statement of fact is material if a reasonable person would consider it important.**

**Ark.** Model Jury Instr., Civil 402 (2023) ("A fact or statement of fact is material if it was a substantial factor in influencing (plaintiff)'s decision. It is not necessary, however, that it be the paramount or decisive factor, but only one that a reasonable person would attach importance to in making a decision."); **Idaho** Civ. Jury Instr. 6.08.4 (2003); **Minn.** Prac., Jury Instr. Guides 57.10; **N.Y.** Pattern Jury Instr. 3:20; **Va.** Model Jury Instr. 39.020 (2023).

**Fraud Instruction 7.4 – Knowledge or Scienter [Plaintiffs' Proposal]**

As I mentioned above, the elements of fraud for these states require "knowledge" or "scienter" on the part of ZHP, Teva, or Torrent, respectively, for the fraud claim against each.  This is the state of mind of the Defendant, otherwise known as the Defendant's intent.

Scienter or knowledge may be proven in one of two ways. Plaintiffs may prove that ZHP, Teva, or Torrent, respectively, either: (a) knew that their respective representations were false or (b) were aware that their respective representations were made without adequate knowledge as to whether those statements were true or false. [1]

Because you cannot look into the mind of another, knowledge is determined from all of the facts and circumstances in evidence. [2]

[1] **Alaska** Pattern Jury Instr. 17.02 (2022); **Ark.** Model Jury Instr. 402; **Colo.** Pattern Civ. Jury Instr. 19.1 (2024); **Fla.** Standard Jury Instr. 409.7 (2024); Idaho Civ. Jury Inst. 4.60 (2003); **Mass.** Sup. Ct. Civ. Prac. Jury Instr. § 20.1.5 (2023); **Minn.** Prac., Jury Instr. Guides 57.10 (6th ed. 2023); *Plimpton v. Friedberg*, 166 A. 295, 296 (**N.J.** Ct. Errors & Appeals 1933) ("[F]alsity may consist in making a representation of a material fact knowing it to be false, or in making a representation which is untrue without knowledge whether it is true or false and by coupling with the representation an express or implied affirmation that it is known to be true of personal knowledge." (collecting cases)); *Barkany Asset Recovery & Mgmt. v. Sw. Sec. Inc.*, 972 N.Y.S.2d 458, 467 (**N.Y.** Sup. 2013) ("reckless disregard for the truth" and collecting cases); **N.C.** Pattern Jury Instr. - Civ. 800.00 (2023); **N.D.** Civ. Jury Instr. 72.12; *Pumphrey v. Quillen*, 135 N.E. 2d 328, 330-31 (**Ohio** 1956); **Okla.** Pattern Civ. Jury Instr. 18.1; *Mason v. Chappell*, 56 Va. 572, 582 (**Va.** 1860); *Matter of Est. of Lint*, 957 P.2d 755, 763 (**Wash.** 1998), *as amended* (July 9, 1998); **Wyo.** Civil Pattern Jury Instr. 17.01 (2024).

[2] *See, e.g.*, **Ohio** Civ. Jury Instr. 449.01 (2023).

75

## Fraud Instruction 7.5 – Justifiable Reliance [Plaintiffs' Proposal]

**Justifiable or reasonable reliance exists when a person of ordinary care would rely on the defendant's representation under the same or similar circumstances to his, her, or its detriment. In determining whether reliance is justifiable you may consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties and their respective knowledge and means of knowledge.**

**As I have instructed you above, the Plaintiff and Class Members had no choice but to rely on the Defendants' representations that the VCD's were the approved form of the drugs, since the drugs could not be legally sold without those representations.**

**Alaska** Pattern Jury Instr. 17.03 (2022); **Ark.** Model Jury Instr. 402 (2023); **Colo.** Pattern Civ. Jury Instr. 19.8 (2024); **Fla.** Standard Jury Instr. 409.7 (2024); **Idaho** Civ. Jury Instr. 4.60 (2003);  **Mass.** Pattern Jury Instr. § 20.1.7 (2023);  4 **Minn.** Prac., Jury Instr. Guides 57.10 (6th ed. 2023); **N.J.** Civ. Jury Instr. 3.30E (2023); **N.Y.** Pattern Jury Instr. 3:20 (2023); **N.C.** Civ. Jury Inst. 800.00 (2023); **Ohio** Jury Instr. 449.01 (2023); **Okla.** Unif. Jury Instr.-Civ. 18.1 (2022); **Va.** Model Jury Instr. 39.030; *Matter of Est. of Lint*, 957 P.2d 755, 763 n.4 (**Wash.** 1998), *as amended* (July 9, 1998); **Wyo.** Civil Pattern Jury Instr. 17.01 (2024); *Microsoft Corp. v. Comput. Warehouse*, 83 F. Supp. 2d 256, 262 (D.P.R. 2000).

**<u>Fraud Instruction 7.6 – Plaintiff Ignorance of Falsity [Plaintiffs' Proposal]</u>**

**Several states (Colorado, Idaho, Vermont, Washington, Wyoming) additionally require that the plaintiff be ignorant of the falsity of the representation. Your verdict form will reflect this.**

*See supra* Fraud Instruction 1.2 n.1 for authorities.

## F. **DAMAGES**

## Damages Instruction 8.1 – Types of Damages [Plaintiffs' Proposal]

I explained to you at the outset of the case that Plaintiffs seek two types of damages.

First, Plaintiffs seek compensatory damages, which are those economic damages Plaintiffs contend they suffered on account of ZHP's, Teva's, and Torrent's respective breaches of express warranty, violations of consumer protection laws, and fraud.

Second, Plaintiffs seek punitive damages, which are meant to punish a defendant and/or deter the defendant or others from engaging in similar conduct.

I will now instruct you on these two forms of damages.

## Damages Instruction 8.2 – Compensatory Damages [Plaintiffs' Proposal]

I am now going to instruct you on compensatory damages, which will apply to all of Plaintiff's claims, including breach of express warranty, violations of State consumer protection laws, and common law fraud. Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not ZHP, Teva, or Torrent should be held liable.

If Plaintiffs have failed to prove one or more of their claims against ZHP, Teva, or Torrent, respectively, your verdict must be in favor of that defendant on that claim. You may find, based on the evidence, one claim proved and another not proved, and you may find claims proved against one defendant but not others.

If you find that Plaintiffs have proved any of their claims against any of ZHP, Teva, or Torrent, you must then decide how much money to award Plaintiffs against that or those Defendants, on that claim or claims.

The money you choose to award for each claim is called damages. As I instructed you previously, Plaintiff has the burden of proving damages by a preponderance of the evidence. But the law does not require that Plaintiff prove the amount of its losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit. A reasonable estimate of Plaintiffs and Class Members' damages will suffice. [1]

Compensatory damages means the amount of money that will reasonably and fairly compensate Plaintiff and Class Members for any injury you find was caused by ZHP, Teva, or Torrent, respectively. You may not consider theoretical, hypothetical, or unmaterialized injuries or harm in determining this amount of money.

In deciding this amount, you will consider only the Plaintiff and the Class Members' economic loss, if any, caused by ZHP, Teva, or Torrent, respectively. What I mean by economic loss is:

    (1) the monetary difference between the amounts paid by Plaintiffs and Class Members for Defendants' VCDs, and

    (2) the actual monetary value of Defendants' VCDs at the point of sale had the Defendants

        (a) not represented that the VCDs were the FDA approved and USP

and Orange Book compliant, and/or

**(b) the adulteration and/or NDMA/ NDEA-contamination been known. In this case, the Plaintiffs claim that the contaminated VCDs had no economic value and seek compensatory damages equal to the full amounts paid by the Plaintiff and Class Members at the point of sale. [2]**

**Your verdict form will guide you through the process of awarding compensatory economic damages consistent with this Instruction.**

[1] Model Civ. Jury Instr. 3d Cir. 4.8.1 & 9.4.1 (2023); *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 484 (3d Cir. 1998) ("[T]he jury is permitted to calculate the actual damages suffered using a 'reasonable estimate, as long as the jury verdict is not the product of speculation or guess work[.]'" (internal quotation marks and citations omitted)).

[2] **Ala.** Pattern Jury Instr. 11.00 (3d ed. 2020); **Alaska** Pattern Jury Instr. 20.01A (2022); **Ark.** Model Jury Instr. 2520 (2023); Rev. **Ariz.** Jury Inst. CI 22 (7th ed.); *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 791, 192 Cal. Rptr. 3d 881, 892 (**Cal.** 2015) (difference between what plaintiff paid and value of what plaintiff received); **Conn.** Jud. Branch Civ. Jury Instr. 5.2-9 (2020); **Colo.** Jury Instr. Civ. 19.17 (2023); **Fla.** Cont. & Bus. Jury Instr. 416.50(c) & Fla. Civ. Jury Instr. 409.13; **Ga.** Suggested Pattern Jury Instr. 18.052 (5th ed. 2020); **Haw.** Civ. Jury Instr. 19.6 (1999); **Idaho** Civ. Jury Instr. 9.01; **La.** Civ. Jury Instr. § 18:1; **Mass.** Sup. Ct. Civ. Prac. Jury Instr. § 20.1.9 (2023); 4 **Minn.** Prac., Jury Instr. Guides 57.25 (6th ed. 2023); **Miss.** Prac. Model Jury Instr. § 10.3 (2d ed. 2023); **Mo.** Approved Jury Instr. (Civ.) 4.02 (8th ed. 2023); **Mont.** Pattern Instr. (Civ.) 25.00 & 25.40 (2d ed.2003); *Moss v. Speck*, 306 N.W. 2d 156, 157 (**Neb.** 1981) (value of building as constructed versus value if constructed according to contract); **Nev.** Jury Instr. Civ. 13.45 (2018); **N.H.** Civ. Jury Instr. 32.41 (2023); *McConkey v. AON Corp.*, 804 A.2d 572, 588 (**N.J.** App. Div. 2002) ("New Jersey clearly recognizes benefit-of-the-bargain damages in fraud cases."); **N.Y.** Pattern Jury Instr. 3:20 (2023); **N.C.** Pattern Jury Instr. - Civ. 741.60 (Express Warranty) & 800.07 (Fraud) (2023); *Warne v. Finseth*, 195 N.W. 573, 575 (**N.D.** 1923) ("the difference in value between what was received and what would have been received had the representations been true"); *Molnar v. Beriswell*, 122 **Ohio** St. 348, 353, 171 N.E. 593, 594 (Ohio 1930) ("difference between the property as represented and as it in fact then was"); *Bowman v. Presley*, 212 P.3d 1210, 1218 (**Okla.** 2009) ("This rule of recovery, adopted in Oklahoma as a measure of damages in fraud cases, allows a plaintiff to recover the difference between the actual value received

and the value the defrauded party would have received had the value actually been as represented."); *McVay v. Deschutes Valley Potato Co.*, 49 Or. App. 629, 635, 620 P.2d 930, 933 (**Or.** 1980) ("the difference in value of the seed as warranted and as delivered"); *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 338 (W.D. **Pa.** 2020), *reh'g grant*ed *in part on other grounds*, No. 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021) (measure of damages under Pennsylvania UTPCPL is "the amount [] paid for the product"); **R.I.** Civ. Jury Instr. § 10001; *Allen v. Holiday Kamper Co. of Columbia, LLC*, No.  4:18-1885-MGL, 2019 WL 4094938, at *4 (D.**S.C.** Aug. 29, 2019) ("In a breach of warranty action, the measure of damages is 'the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . .'" (citation omitted)); *Hallen v. Martin*, 167 N.W. 314, 316 (**S.D.** 1918) ("the difference between the actual value of the [property] and the value of such a piece of [property] as this was represented to be by the defendant"); *Compaq Comput. Corp. v. Lapray*, 135 S.W.3d 657, 679 (**Tex.** 2004) ("The benefit of the bargain measure of damages is neither novel nor exotic."); *Lamb v. Bangart*, 525 P.2d 602, 608–09 (**Utah** 1974) ("[T]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted[.]"); *Kramer v. Chabot*, 152 Vt. 53, 57, 564 A.2d 292, 294 (**Vt.** 1989) (endorsing full refund damages theory for "permanent and beyond repair" breach of warranty); *Prospect Dev. Co. v. Bershader*, 515 S.E.2d 291, 300 (**Va.** 1999) ("difference between the actual value of the property at the time the contract was made and the value that the property would have possessed had the representation been true"); *McInnis & Co. v. W. Tractor & Equip. Co.*, 63 Wash. 2d 652, 658, 388 P.2d 562, 566 (**Wash.** 1964) ("The measure of damages in fraud cases is to be computed by the 'benefit of bargain' rule, which is the difference between the value of the property had it been as represented, and its actual value." (citation omitted)). *Jones v. Pittsburgh Plate Glass Co.*, 246 **Wis.** 462, 466, 17 N.W.2d 562, 564 (Wis. 1945) ("The respondent's damages are the amount which will compensate him for the difference in value to him of the pane of glass he received and the value of the piece for which he contracted."); *City of Kemmerer v. Wagner*, 866 P.2d 1283, 1287 (**Wyo.** 1993) ("the measure of damages is the difference between the value of the property before and after the injury"); *Camilo v. Nieves*, No. 10-2150, 2013 WL 6632801, at *9 (D.**P.R.** Dec. 16, 2013) ("The appropriate measure of damages is usually the difference in the price paid and the value received.").

## G. **PUNITIVE DAMAGES**

**<u>Punitive Damages Instruction 9.1 – Introduction [Plaintiffs' Proposal]</u>**

**In addition to economic damages, Plaintiffs seek punitive damages against ZHP, Teva, and Torrent, respectively, under the laws of certain states where punitive damages are available.**

**Before you can award punitive damages, you must also have decided to award Plaintiffs some amount of compensatory damages.**

**Punitive damages are intended to punish a wrongdoer and to deter the wrongdoer from similar wrongful conduct in the future. Punitive damages are designed to require the wrongdoer to pay an amount of money that is sufficient to punish a defendant for particular conduct and to deter that party from future misconduct.  Punitive damages are not to be awarded as a routine matter in every case; they are to be awarded only in exceptional cases, to punish a party which has acted in an especially egregious or outrageous matter and to discourage that party from engaging in similar misconduct in the future. Therefore, Plaintiffs are not entitled to punitive damages simply because you have found that ZHP, Teva, and/or Torrent engaged in specific conduct or because you have awarded damages to compensate Plaintiffs for their injuries. You may award punitive damages to Plaintiffs only if you find that Plaintiffs have proved certain additional facts.**

**In order to award punitive damages, you must find, based on the evidence, that ZHP, Teva, and/or Torrent, respectively, acted with either: (1) willful and wanton disregard for the rights, health, or safety of others; or (2) maliciously.**

**Willful or wanton conduct is a deliberate act or omission with knowledge of a high degree of probability of harm to another who foreseeably might be harmed by that act or omission and reckless indifference to the consequence of the act or omission. Stated another way, willful and wanton conduct is conduct that is carried out with a reckless or conscious disregard of the rights, health, or safety of others.**

**Malicious conduct is intentional wrongdoing in the sense of an evil-minded act.**

**In some states, you may find Defendants' malice or willful and wanton conduct based on the preponderance of the evidence standard. In others, you must find Defendants' malice or willful and wanton conduct by clear and convincing evidence. I have previously instructed you on those differing standards of proof, and your verdict form will reflect the appropriate findings**

84

**you must make.**

**In determining whether to award punitive damages, consider all relevant evidence, including but not limited to the following: (1) the likelihood, at the relevant time, that serious harm would arise from ZHP's, Teva's, and/or Torrent's conduct; (2) ZHP's, Teva's, and/or Torrent's respective awareness or reckless disregard of the likelihood that such serious harm would arise from each's conduct; (3) consider the conduct of ZHP, Teva, or Torrent upon learning that each's respective initial conduct would likely cause harm; and (4) consider the duration of the conduct or any concealment of that conduct by ZHP, Teva, or Torrent, respectively.**

**Whether you award punitive damages is up to you. If you do, the amount of the award is determined by the character and degree of ZHP, Teva, and/or Torrent's, respectively, wrongful conduct, and the necessity to prevent the same or similar wrongful conduct by the defendants in the future.**

This instruction is modeled off New Jersey Model Civ. Jury Charge 8.60. The Parties have agreed not to bifurcate punitive damages and to try punitive damages with all other issues at this trial.

*Wal-Mart, Inc. v. Stewart*, 990 P.2d 626, 636 (**Alaska** 1999); *Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc.*, 2011 Ark. App. 147, 17, 382 S.W.3d 6, 17 (**Ark.** 2011); See **Colo.** Rev. Stat. § 13-21-102; *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F. Supp. 2d 1135, 1142 (D. Colo. 2008); *Washington Med. Ctr. v. Holle*, 573 A.2d 1269, 1284 (**D.C.** 1990) ("[P]unitive damages [under D.C. law] are warranted only when the defendant commits a tortious act 'accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the injury.'" (citation omitted)); W.*R. Grace & Co.—Conn. v. Waters*, 638 So. 2d 502, 503 (Fla. 1994) ("Punitive damages are appropriate [under **Florida** law] when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others."); *Alexander v. Stibal*, 161 Idaho 253, 265, 385 P.3d 431, 443 (2016) ("**Idaho** Code section 6-1604(1) authorizes an award of punitive damages for fraudulent conduct."); *Wooley v. Lucksinger*, 61 So. 3d 507, 567 (finding that punitive damages were properly awarded under **La.** Civ. Code Ann. art. 3546); *Xiaolin Li v. Franchoice, Inc.*, No. 19-1267, 2020 WL 2192325, at *9 (D. Minn. May 6, 2020) (Under **Minnesota** law, punitive "damages are appropriate in the context of fraud."); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1231 (N.J. 1984) ("Moreover, it is especially fitting to

allow punitive damages for actions such as legal fraud [under **New Jersey** law], since intent rather than mere negligence is the requisite state of mind."); *Solutia Inc. v. FMC Corp*, 456 F. Supp. 2d 429, 453 (S.D.N.Y. 2006) ("**New York** law provides that fraudulent conduct may give rise to punitive damages."); N.C. Gen. Stat. § 1D-15(a) (**North Carolina** statute: "Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud (2) Malice (3) Willful or wanton conduct."); N.D. Cent. Code § 32-03.2-11 (**North Dakota** statute: "In any action for the breach of an obligation not arising from contract, when the defendant has been guilty by clear and convincing evidence of . . . fraud, or actual malice . . . , the court or jury, in addition to the actual damages, may give damages for the sake of example and by way of punishing the defendant."); *Windsor Med. Ctr., Inc. v. Time Warner Cable, Inc.*, 2021-Ohio-158, ¶ 38, 167 N.E.3d 23, 31 ("In cases alleging fraud [under **Ohio** law], in order to be awarded punitive damages, the plaintiff must establish not only the elements of the tort itself, but must also show either the fraud is aggravated by the existence of malice or ill, or must demonstrate the wrongdoing is particularly gross or egregious."); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1314 (10th Cir. 1998) ("The jury found [Defendant] separately liable for the torts of fraud and deceit, both of which may support an award of punitive damages under **Oklahoma** law"); Okla. Stat. tit. 23, § 9.1(A) ("In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages may . . . award punitive damages . . . ."); **Or.** Rev. Stat. § 31.730 (Punitive damages available based on "malice," "reckless and outrageous indifference," or "conscious indifference to health, safety, and welfare of others."); *N. Atl. Fishing, Inc. v. Geremia*, 153 B.R. 607, 613 (D.R.I. 1993) ("[U]nder **Rhode Island** law, a court may only award punitive damages for intentional conduct that is malicious."); *Dziadek v. Charter Oak Fire Ins. Co.*, 867 F.3d 1003, 1011 (8th Cir. 2017) ("**South Dakota** Law § 21–3–2 authorizes punitive damages when there is evidence of 'oppression, fraud, or malice.'"); *Rousseau v. Coates*, 488 F. Supp. 3d 163, 169 (D. Vt. 2020) ("**Vermont** law plainly allows punitive damages in the context of a fraud claim"); *Adkins v. Crown Auto, Inc.*, 488 F.3d 225, 234 (4th Cir. 2007) ("In **Virginia**, punitive damages may be recovered on a common law fraud claim . . . only upon 'proof, either direct or circumstantial, showing actual malice.'" (citation omitted)); *Alexander v. Meduna*, 47 P.3d 206, 218-20 (**Wyo.** 2002) (affirming an award of punitive damages based on the sellers' deception and fraud).

## **Punitive Damages Instruction 9.2 – Amount of Punitive Damages**

**If you decide that ZHP, Teva, and/or Torrent, respectively, have engaged in the type of wrongdoing that justifies punitive damages, you must decide the amount of punitive damages that should be awarded.**

**In doing so, you must consider all relevant evidence, including but not limited to, evidence of the four factors that I discussed in connection with your determination as to whether punitive damages should be awarded at all. These are:**

> **(1) the likelihood, at the relevant time, that serious harm would arise from ZHP's, Teva's, and/or Torrent's conduct;**

> **(2) ZHP's, Teva's, and/or Torrent's awareness or reckless disregard of the likelihood that such serious harm would arise from their respective conduct;**

> **(3) the conduct of ZHP, Teva, and/or Torrent upon learning that its respective initial conduct would likely cause harm; and**

> **(4) the duration of the conduct or any concealment of it by ZHP, Teva, and/or Torrent, respectively.**

**Consider, also, the profitability, if any, of the misconduct to ZHP, Teva, and/or Torrent; when the misconduct was terminated; and the financial condition of ZHP, Teva, and/or Torrent or each's ability to pay the punitive damages award. You must also make certain that there is a reasonable relationship between the actual injury and the punitive damages.**

Modeled off N.J. Model Jury Instr. Charge 8.60.

## Punitive Damages Instruction 9.3 – Express Warranty Claim [Plaintiffs' Proposal]

**Arkansas, Mississippi, Montana, New York, Rhode Island, and Vermont allow for the award of punitive damages for an express warranty claim. Your verdict form will reflect this.**

*See e.g.*, *Stein v. Lukas*, 823 S.W. 2d 832, 834-36 (**Ark**. 1992); *Todd v. Kellum,* No. 15-177, 2016 WL 4261919, at *3 (N.D. Miss. Aug. 10, 2016) ("Furthermore, in 'rare instances,' **Mississippi** law allows punitive damages for breach-of-warranty claims. Specifically, punitive damages may be allowed when '[i]n addition to the breach, there . . . enter[s] into the injury some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule.'" (citations and internal quotation marks omitted)); *Textana, Inc. v. Klabzuba Oil & Gas*, 222 P.3d 580, 590 (Mt. 2009) (Punitive damages are recoverable under **Montana** law "where the claimant proves by clear and convincing evidence that the defendant is guilty of actual fraud or actual malice outside the contract context." (citation and internal quotation marks omitted)); *Bristol Vill., Inc. v. La.-Pac. Corp*., 916 F. Supp. 2d 357, 371 (W.D.N.Y. 2013) (Under **New York** law, "punitive damages for the breach of contractual obligations, such as express warranties, are generally unavailable unless necessary to vindicate a public right. Punitive damages are recoverable in contract claims where the breach involved particularly egregious fraud aimed at the public generally." (citations omitted)); *Baker v. Knott*, No.77-442, 1980 WL 336061, at *9–10 (R.I. Super. May 27, 1980) (**Rhode Island** court awarding punitive damages in case of "breach of warranty accompanied by deceit"); *Murphy v. Stowe Club Highlands,* 761 A.2d 688, 696 (Vt. 2000) (Under **Vermont** law, "Punitive damages are generally not recoverable in actions for breach of contract. However, in certain extraordinary cases in which the breach has the character of a wilful and wanton or fraudulent tort, punitive damages may be allowed. Punitive damages are awarded not as compensation to the sufferer, but 'on account of the bad spirit and wrong intention' of the breachor.'" (citation omitted)). Defendants concede that "four of the warranty subclass states' laws apparently do permit recovery of punitive damages" (Defs.' Omnibus MSJ Br., ECF 2562-1 at 39-40 (citing cases from **Arkansas, New York, Ohio and Mississippi**)).

## Punitive Damages Instruction 9.4 – Consumer Protection Law Violations
## [Plaintiffs' Proposal]

**Oregon allows for the award of punitive damages for violations of its Consumer Protection Law. [1] [2]**

[1] **Or.** Rev. Stat. § 646.638 ("[t]he trier of fact may award punitive damages" for violations of ORS 646.608).

[2] **Alaska** Stat. § 45.50.531(a) (no instruction because automatic trebling by operation of law with court discretion for punitive damages); **Conn.** Gen. Stat. § 42-110g(a) & (g) (no instruction because punitive damages are to be awarded by court in its discretion); **Haw.** Stat. § 480-13(a)(1) (no instruction because automatic trebling by operation of law); **Mo.** Rev. Stat. § 407.025 (no instruction because punitive damages are to be awarded by court in its discretion); **Neb.** Rev. Stat. Ann. § 59-1609 (no instruction because  punitive damages are to be awarded by court in its discretion); **N.H.** Rev. Stat. § 358-A:10 (no instruction because for "a willful or knowing violation," the court must award between double and treble damages in its discretion); **N.Y.** Gen. Bus. Law § 349(h) (no instruction because punitive damages are to be awarded by court in its discretion); **N.C.** Gen. Stat.§75-16 (no instruction because North Carolina provides automatic trebling by operation of law); 73 **Pa.** Cons. Stat. § 201-9.2(a) (no instruction because  punitive damages are to be awarded by court in its discretion); **Wash.** Rev. Code. § 19.86.090 (no instruction because damages are to be awarded by court in its discretion).

**Punitive Damages Instruction 9.5 – Common Law Fraud [Plaintiffs' Proposal]**

**Alaska, Arkansas, Colorado, the District of Columbia, Florida, Idaho, Minnesota, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Vermont, Virginia, and Wyoming allow for the award of punitive damages for common law fraud claims. Your verdict form will reflect as much.**

**I mentioned in my preliminary instructions that on certain limited aspects of Plaintiffs' case, including punitive damages, you will need to evaluate Plaintiffs' claim for punitive damages under a clear and convincing evidence standard.**

**There is one state that requires an even stricter standard than clear and convincing, for the issue of punitive damages only. That state is Colorado. Colorado requires that the entitlement to punitive damages be proven beyond a reasonable doubt, the same standard employed in criminal cases.**

**Proof beyond a reasonable doubt is proof that leaves you firmly convinced that ZHP, Teva, and/or Torrent, respectively, acted with (1) willful and wanton disregard for the rights, health, or safety of others; or (2) maliciously. It is not required that Plaintiffs prove punitive damages entitlement beyond all possible doubt.**

**A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.**

**If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that ZHP, Teva, and/or Torrent, respectively, acted with (1) willful and wanton disregard for the rights, health, or safety of others; or (2) maliciously, it is your duty to find that  defendant or defendants not liable for punitive damages under Colorado law. On the other hand if, after careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt, it is your duty to find that defendant or defendants liable for punitive damages under Colorado law.**

**As I have stated, the proof beyond a reasonable doubt standard only applies to the issue of punitive damages for the State of Colorado. You must evaluate all other punitive damages under a clear and convincing evidence or preponderance of the evidence standard, on which I have instructed you.**

**Your verdict form will reflect these instructions.**

*See supra* authorities for Punitive Damages Instruction 1.1 – Introduction.

**H. [TBD RESPONSIVE INSTRUCTIONS TO ANY AFFIRMATIVE DEFENSE DEFENDANTS INTEND TO RAISE]**

## IV.  <u>CLOSING INSTRUCTIONS</u>

**<u>Closing Instruction 10.1 – Deliberations [Plaintiffs' Proposal]</u>**

**When you retire to the jury room to deliberate, you will also have these instructions,  your notes, and the exhibits that the Court has admitted into evidence, via the ipads provided by the Court. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.**

**You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.**

**Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.**

**Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.**

**As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.**

**When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone [like Androids or iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like**

Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook, Twitter or X, LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive

94

**duty and responsibility to determine the verdict.**

Model Civ. Jury Instr. 3d Cir. 3.1 (2024).

### Closing Instruction 10.2 – Number of Witnesses [Plaintiffs' Proposal]

**The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.**

Model Civ. Jury Instr. 3d Cir. 3.2 (2024).

## <u>Closing Instruction 10.3 – Verdict Form [Plaintiffs' Proposal]</u>

**A verdict form and damages worksheets for each Defendant (ZHP, Teva, and Torrent) have been prepared for you. Please proceed through the verdict form and then, based on your findings, fill out the damages worksheets. After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the [clerk] that you are ready to return to the courtroom.**

Model Civ. Jury Instr. 9th Cir. 3.5 (2023).