# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875**<br><br>**HON. ROBERT B. KUGLER**<br>**CIVIL NO. 19-2875 (RBK)** |
| **THIS DOCUMENT RELATES TO ALL CASES** | |

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND THEIR ANSWER

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ ii
TABLE OF AUTHORITIES ......................................................................................... iii
INTRODUCTION ...........................................................................................................1
STANDARD OF REVIEW .............................................................................................2
ARGUMENT ...................................................................................................................3
   I.   ZHP's Proposed Amendment is Untimely.......................................................3
   II.  ZHP's Affirmative Defense is Futile ...............................................................5
       1.   Ohio Abrogated Champerty as an Affirmative Defense .............................6
       2.   SummaCare Assigned Vested Rights to Reimbursement............................7
       3.   Champerty is Not Available as a Defense to Plaintiffs' New York Claims .8
   III.  ZHP's Proposed Amendment Prejudices Plaintiffs .......................................12
CONCLUSION..............................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411 (D.N.J. 2005). ............ 5

*Blackstone Prs., L.P. v. Sympak, Inc.*, 2006 WL 8457300 (D.N.J. Jan. 27, 2006) ... 4

*Bluebird Prs., L.P. v. First Fidelity Bank, N.A.*, 731 N.E.2d 580 (N.Y. App. 2000) . 9

*Bode & Grenier, LLP v. Knight*, 808 F.3d 852 (D.C. Cir. 2015) ........................... 4

*Carson v. Estate of Golz*, No. 17-cv-01152, 2019 WL 1513199 (D. Colo. Apr. 8, 2019) ................................................................................................................ 4

*Cureton v. NCAA*, 252 F.3d 267 (3d Cir. 2001). ............................................... 3

*DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358 (3d Cir. 2020) ..................... 3

*DynaEnergetics Europe GmbH v. Hunting Titan, Inc.,* 629 F. Supp. 3d 548 (S.D. Tex. 2022) ....................................................................................................... 3

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463 (D.N.J. 1990) 10

*Heyl & Patterson Int'l. Inc. v. F.D. Rich Housing of the Virgin Islands*, 663 F.2d 419 (3d Cir. 1981) ...................................................................................... 12

*Maslowski v. Prospect Funding Prs., LLC*, 944 N.W.2d 235 (Minn. 2020) ........... 7

*Moses v. McDivitt*, 88 N.W. 62 (N.Y. 1882) ..................................................... 6

*Pharm. Sales & Consulting Cor. v. J.W.S. Delavau Co., Inc.*, 106 F.Supp.2d 761 (D.N.J. 2000). ............................................................................................... 5

*Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316 (3d Cir. 2020) ................ 5

*Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217 (Ohio 2003) ........ 6

*Red Tulip LLC v. Neiva*, 44 A.D.3d 204 (N.Y. 2007) ......................................... 9

*Rivera v. Gupta*, No. 13-cv-056, 2018 WL 9142121 (W.D. Wisc. Apr. 6, 2018) ..... 4

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002). ........................................... 3

*RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382 (S.D.N.Y. 2009). .................... 8

*Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.*, 399 F.Supp.3d 241 (D.N.J. 2019) ...... 10

*Sprint Comms. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ...................... 7

*The President Arthur*, 25 F.2d 999 (S.D.N.Y. 1928) .............................................. 9

*Trust for the Certificate Holders of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp.*, 918 N.E.2d 889 (N.Y. App. 2009) .......................................... 9

*W. Broad Chiropractic v. Am. Family Ins.*, 912 N.E.2d 1093 (Ohio 2009) ............. 8

**STATUTES**

N.Y. Jud. Law § 489 ................................................................................................. 8

Ohio Rev. Code Ann. § 1349.55 .............................................................................. 6

**RULES**

Federal Rule of Civil Procedure 15 ................................................................. 2, 5

Federal Rule of Civil Procedure 16 ..................................................................... 5

# INTRODUCTION

The Court should summarily deny ZHP's Motion for Leave to File Their Second Amended Answer and Affirmative Defenses [ECF 2672.]. This is true for multiple reasons, including inexcusable delay, waiver, the futility of the proposed amendment, and the significant undue prejudice that Plaintiffs would suffer if permitted.

First, ZHP's request is patently untimely. ZHP failed to include this defense in its initial Answer filed on December 7, 2023, then failed to raise this proposed amendment when filing its motion over a different amendment that was contested by Plaintiffs. It is now too late to inject this proposed amendment after the completion of summary judgment briefing, the motion *in limine* briefing, and a mere twelve days before the scheduled start of a multi-week class action trial.[1]

ZHP proffers no plausible justification for the delay in attempting to assert the new substantive defense of champerty. Defendants (including ZHP) referenced the assignments in their class certification briefing filed more than two years ago. At this point, the defense is waived.

Third, amendment would be futile. ZHP cites abrogated Ohio law as to

---

[1] The Court's need to postpone the trial after ZHP filed this Motion, for unrelated reasons, does not excuse ZHP's delay or in any way mitigate its impact given that ZHP chose to wait to file this Motion until after summary judgment briefing was submitted. Further, the parties continue to make trial-related submissions despite the schedule modification.

1

SummaCare's assignment to MSP. As to EmblemHealth's assignment under New York law, ZHP simply misstates the law.

Fourth, eve-of-trial amendment obviously would prejudice Plaintiffs. Plaintiffs clearly would have moved for summary judgment on the merits of this defense had ZHP timely pleaded it. It would be unfairly prejudicial to allow this amendment when the parties are feverishly preparing for the trial set to start in just over a week.

For these reasons, discussed more fully below, the Court should deny ZHP's motion.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 governs the amendment of pleadings, including answers and affirmative defenses. Although courts tend to view motions for leave to amend liberally, leave will be denied where a proposed amendment is the result of undue delay, would unfairly prejudice the nonmoving party, is motivated by bad faith, or would be futile. *Cureton v. NCAA*, 252 F.3d 267, 272-73 (3d Cir. 2001). "It is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment." *DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358 (3d Cir. 2020) (internal quotation marks and citation omitted).

# ARGUMENT
## I. ZHP's Proposed Amendment is Untimely

ZHP seeks leave to amend its Answer long after the deadline for Answers to be filed—a deadline that was first imposed years into the litigation, leaving the Defendant years to consider and prepare its defenses. This after already filing a contested motion to amend the Answer. And this comes a mere twelve days before trial was scheduled to begin. In doing so, ZHP concedes its delay in raising a defense that it was aware of for at least two years and fails to establish "good cause" for allowing amendment after the expiration of the deadline to Answer and already moving once to amend the Answer. The proposed amendment must therefore be denied as untimely.

As a general proposition, "[a]ffirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). Courts routinely deny amendment late in litigation, especially after summary judgment briefing and when amendment is sought just before trial. *See DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020) (affirming denial of motion for leave to amend answer where "untimely defense would likely have required additional discovery"); *see also, e.g.*, *DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, 629 F. Supp. 3d 548 (S.D. Tex. 2022) (denying motion to amend answer and add affirmative defense filed shortly before trial, and amendment would necessitate reopening discovery and

3

summary judgment briefing); *Carson v. Estate of Golz*, No. 17-cv-01152, 2019 WL 1513199 (D. Colo. Apr. 8, 2019) (denying motion for leave to amend answer to add affirmative defense after summary judgment briefing); *Rivera v. Gupta*, No. 13-cv-056, 2018 WL 9142121, at *1 (W.D. Wisc. Apr. 6, 2018) (denying motion for leave to amend answer to add affirmative defense filed six weeks before trial); *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (affirming denial of motion for leave to amend answer to add affirmative defense filed "only days before trial. This is the very picture of undue delay.").

In particular, where, as here, a party "had knowledge of [its] defenses months before trial" a motion to amend should be denied. *DLJ Mortg. Capital, Inc*, 975 F.3d at 369. ZHP acknowledges that the availability of champerty as a defense was known to it as early as April 2022[2] but nonetheless chose to omit it from its Answer, filed

---

[2] Defendants also suggest that Plaintiffs were "on notice" that champerty would be raised as a defense. [ECF 2672-1, at 15] Presumably, Defendants refer to their April 10, 2022 opposition to the TPP Plaintiffs' Motion to Certify. [ECF 2010, at 21] As an initial matter, Defendants in their April 2022 briefing never asserted that MSP's assignment was unenforceable under New York law, and cannot therefore be construed to have put Plaintiffs "on notice" that it planned to raise that defense as to the Emblem Health assignment. [*See id.*] Moreover, the Court should not now credit Defendants' passing references to champerty made in the context of challenges to the adequacy and typicality of MSP as a class representative [*id.*] where the Court (1) certified the class and held that MSP satisfied the requirements to serve as a class representative and (2) did not deem Defendants' champerty arguments worth even a single mention. [ECF 2261] Finally, Defendants moved to decertify the class but failed to raise the issue of champerty there, [ECF 2637-1], such that it is reasonable to conclude Defendants abandoned and forfeited such an affirmative defense if ever one was viable, which Plaintiffs deny. *See, e.g.*, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 921 F.3d 98, 107 (3d. Cir. 2019) (holding defendants forfeited affirmative defense "by failing to diligently pursue it"); *Blackstone Prs., L.P. v. Sympak, Inc.*, 2006 WL 8457300 (D.N.J. Jan. 27, 2006) (finding defendant abandoned affirmative defense raised in one brief but not elaborated on in subsequent briefing).

pursuant to an agreed upon schedule over a year *after* that date in December 2023. [*Compare* ECF 2672-1, at 15 *with* ECF 2549] ZHP's failure to raise this defense in its Answer *or even* its First Amended Answer warrants denial of the Motion as untimely. *See Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 419 (D.N.J. 2005).

In addition, ZHP has waived this defense. *See Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) ("a trial court has discretion to find waiver if a defendant fails to assert the defense within the time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." (quotations omitted)).

## II.     ZHP's Affirmative Defense is Futile

ZHP's motion for leave to amend their Answer to add the affirmative defense of champerty and maintenance should be denied as futile. Amendment is futile if the proposed amendment "advances a claim that is legally insufficient on its face." *Pharm. Sales & Consulting Cor. v. J.W.S. Delavau Co., Inc.*, 106 F.Supp.2d 761, 764 (D.N.J. 2000). The standard is the same as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* In this instance, amendment is futile because the defense of champerty was abrogated under Ohio law and is not available under New York law where, as here, litigation is *a* purpose but not *the* purpose of the at-issue assignment.

5

A relic of the French feudal system,[3] the defense has little applicability today. Numerous states have substantially limited—or entirely abrogated—champerty and maintenance as a defense, including Ohio and New York. Even if champerty and maintenance were generally available as a defense, it would not apply in this case where MSP entered into an assignment for numerous legitimate business purposes, not for the sole purpose of utilizing the assignment as a springboard to litigation.

### 1. Ohio Abrogated Champerty as an Affirmative Defense

Champerty as a defense has long "lain dormant" in the state of Ohio, *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220 (Ohio 2003). In 2008, the Ohio legislature largely abrogated champerty as a defense when it enacted Ohio Rev. Code Ann. § 1349.55, which is applicable to "consumers," including persons or entities residing in Ohio, such as Akron-based Summa-care. Courts have recognized its abrogative effect. For example, in abolishing champerty as an affirmative defense in Minnesota, the Minnesota Supreme Court relied on the decisions of other states—including Ohio—to do the same, citing Ohio Rev. Code. Ann. § 1349. *Maslowski v. Prospect Funding Prs., LLC*, 944 N.W.2d 235, 241, 241 n.4 (Minn. 2020)

---

[3] *Justinian Capital SPC v. West LB AG*, 65 N.E.3d 1253, 1254 (N.Y. App. 2016). Defendants rely on *Justinian*, but misapply the "primary purpose" test, incorrectly reasoning that if *any* purpose of an assignment is litigation, it is champertous. [ECF 2672-1, at 7.] However, the court in *Justinian* applied the same "primary purpose" test followed by New York courts for over a century, under which "simply intending to bring a lawsuit on a purchased [assignment] is not champerty, but when the purchase … was 'made for the very purpose of bringing such suit' that is champerty because 'this implies the exclusion of any other purpose.'" *Id.* at 1256 (quoting *Moses v. McDivitt*, 88 N.W. 62, 65 (N.Y. 1882)).

(abolishing champerty as defense and citing Ohio Rev. Code Ann. § 1349.55 as an example of statutory abolition). Since champerty and maintenance has been abolished by action of the Ohio legislature, ZHP cannot now raise it as an affirmative defense.

ZHP also misstates the (now-abolished) Ohio common law affirmative defense of champerty. Under the prior law, "champerty" was defined as "a form of maintenance in which **a nonparty** undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues." *Rancman*, 789 N.E.2d at 219. MSP is, of course, **a party** to this action. Assignments, whereby the assignee serves as a party (as opposed to a nonparty exerting control over the case), are permitted. *Sprint Comms. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("courts—both before and after the founding—have always permitted the party with legal title alone to bring suit"). At common law, champerty never barred claims brought by assignees as parties; thus, even if the defense remained available—which it is not—it would not apply to MSP.

2. **SummaCare Assigned Its Present Rights to MSP**

ZHP incorrectly characterizes the SummaCare assignment as a "contingent future interest." [ECF 2672-1, at 10.] Defendants rely on a line of inapposite cases involving the assignment of settlement proceeds in the absence of any filed claim. *See W. Broad Chiropractic v. Am. Family Ins.*, 912 N.E.2d 1093, 1096–98 (Ohio

7

2009) (holding that assignment of settlement proceeds for injuries sustained in auto accident to a nonparty where injured person had not yet filed a claim or otherwise established liability was unenforceable).[4] Here, however, SummaCare assigned its *then-existing* rights to recover payments through various means including, if necessary, litigation. [2672-4, at 2.] The Recovery Agreement provided that, on assignment, MSP would seek to enforce those then-existing rights in order to recover payments owed to the assignor. [*Id.*] Thus, the rights to recovery assigned by SummaCare had already vested and were assigned to MSP as existing rights as opposed to contingent future interests. [*Id.*]

### 3. Champerty is Not Available as a Defense to Plaintiffs' New York Claims

ZHP has failed to adequately allege that Emblem Health's assignment of claims is impermissibly champertous under New York law thus its proposed amendment is futile. In New York, the doctrine of champerty is not actionable except as provided by statute, specifically N.Y. Jud. Law § 489. *See RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382 (S.D.N.Y. 2009). To establish the affirmative defense of champerty under the statute, a defendant must establish that bringing suit was "the primary motivation, not less the sole basis" for the acquisition of an interest of rights.

---

[4] Unlike the entities which purchased a right to settlement proceeds in the cases ZHP relies, on MSP is a party to this case and is fully participating in trial, as are assignors Emblem Health and SummaCare. This further distinguishes the assignment relationships here from chapertous arrangements or contingent future interests.

8

*Bluebird Prs., L.P. v. First Fidelity Bank, N.A.*, 731 N.E.2d 580, 587–88 (N.Y. App. 2000) (holding that where assignee purchased a series "in their entirety and not just the rights to a lawsuit encompassed within the expressed terms" the purpose of litigation was incidental and not primary). Thus, "a mere intent to bring a suit on a claim purchased does not constitute the offense; the purchase must be made for the very purpose of bringing such suit, and this implies an *exclusion of any other purpose*." *Red Tulip LLC v. Neiva*, 44 A.D.3d 204, 213 (N.Y. 2007) (quotations omitted; emphasis added); *see also* ("Judiciary Law § 480 requires that the acquisition be made with the intent and for *the* purpose (as contrasted to *a* purpose) of bringing an action" (emphasis original).

In addition, the statute is narrowly construed with a presumption that assignments are made for legitimate purposes. *See The President Arthur*, 25 F.2d 999, 1001 (S.D.N.Y. 1928); *see also Red Tulip LLC*, 44 A.D.3d at 213 (N.Y. 2007). Consistent with this narrow construction, acquisition of a right for the purpose of enforcing it—including, if necessary, by litigation—is not champerty as a matter of law. *Trust for the Certificate Holders of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 894 (N.Y. App. 2009).

ZHP cannot meet this high burden. The proposed Second Amended Answer baldly asserts that the "primary purpose" of the assignment from Emblem was litigation. [ECF 2672-6, at 67] However, "conclusory allegations" do not state a

9

plausible claim and must generally be stricken from a pleading. *Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.*, 399 F.Supp.3d 241, 247 (D.N.J. 2019). Such allegations, therefore, cannot support a motion to amend an answer. *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Other than the inadequate conclusory allegation that the "primary purpose" of the assignment was litigation, which merely regurgitates the elements of the defense, ZHP does not include any allegations of fact in the Proposed Second Amended Answer suggesting what, if anything, was intended by the assignment. [ECF 2672-6] Nor could they, at this late stage, as fact discovery has long been closed.

By contrast, the Emblem Assignment Agreement, provides that Emblem was assigning its Medicare Recovery Claims, which consisted of "legal and equitable rights to seek reimbursement and/or recover payments from primary payers and any other party or entity that may be responsible to Assignor" through methods "including the right to recover claims for Medicare Health Care Services that are billed on a fee for service basis and all outstanding liens, potential liens, lien rights and subrogation recovery rights, legal or equitable, in favor of Assignor, including in any litigation." [ECF 2672-3, at 2] The Assignment Agreement expressly stated that its purpose was "to initiate and pursue the recovery of the Assigned Medicare Recovery Claims" through methods "including" *but not limited to* litigation. [ECF 2672-3, at 3] The Assignment Agreement mandated that "[f]or each potentially

10

recoverable Assigned Medicare Recovery Claim, Assignee shall use commercially reasonable efforts." [*Id.*] Thus, while litigation may be *a* potential consequence of the assignment, it is not the *sole* purpose to the exclusion of all others. The plain language of the Assignment Agreement demonstrates that other purposes, including recovery through commercially reasonable means, such as seeking reimbursement from primary payers and collecting on liens, were also contemplated. [*Id.*] Litigation clearly is not the only means.

New York courts have distinguished between "one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it" and have agreed that the acquisition of a right "for the purpose of enforcing it … is not champerty simply because the party intends to do so by litigation." *Trust for the Certificate Holders of Merrill Lynch*, 918 N.E.2d at 894. Here, MSP acquired rights from Emblem for the purpose of enforcing them by various means, including litigation, if necessary. [ECF 2672-3, at 3] That is not champerty.

Because ZHP cannot establish that litigation is the only purpose of the assignment and relies only on conclusory allegations on this point devoid of any basis in fact, the proposed champerty and maintenance defense fails as a matter of law.

11

### III. ZHP's Proposed Amendment Prejudices Plaintiffs

ZHP's Motion must be denied because an eleventh-hour amendment adding an entirely new defense will prejudice Plaintiffs.

First, ZHP waited to seek leave to amend its Answer to add the defense of champerty and maintenance after summary judgment briefing was completed. ZHP states that the availability of champerty is a solely legal issue. [ECF 2672-1, at 14.] Had champerty been raised as an affirmative defense at an earlier date, Plaintiffs would have moved for summary judgment.

Second, ZHP asserts that Plaintiffs will not be prejudiced because responding to an affirmative defense of champerty will require no additional evidence. [*See* 2672-1, at 14.][5] To the contrary, if permitted at this late stage, Plaintiffs will need to spend precious time and resources to prepare for the additional defense and take this into consideration in establishing their plan for trial.[6]

---

[5] Defendants rely principally on *Heyl & Patterson Int'l. Inc. v. F.D. Rich Housing of the Virgin Islands*, 663 F.2d 419, 426 (3d Cir. 1981). *Heyl* is distinguishable in that it was premised on the belief that a prior amendment was conditional on the government agreeing not to make other amendments, such that the plaintiff claimed it was surprised by the amendment. *Id.* Additionally, the court in *Heyl* emphasized that a party is "unfairly disadvantaged *or* deprived of the opportunity to present facts or evidence which it would have offered had the … amendments been timely." *Id.* (emphasis added). Thus, regardless of whether additional evidence needs to be gathered, amendment may be denied where there is unfair advantage. *Id.*

[6] At this stage in the litigation, Plaintiffs have submitted to Defendants their witness lists, exhibit lists, and deposition designations for numerous witnesses and have spent countless hours working to substantially trim down previously designated exhibits and testimony as both a matter of strategy and the meet and confer process. The addition of a new defense would require Plaintiffs' counsel to expend substantial additional time and energy reviewing documents and deposition transcripts (which have already been reviewed and cut for trial) to prepare a response to this defense.

Courts typically find that Plaintiffs are not prejudiced by the addition of affirmative defenses where defendants are permitted "to cure an insufficient defense or to amplify a defense that has been stated in the answer." *Arista Records, Inc.*, 356 F.Supp.2d at 419. That is not the case here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to for Leave to File a Second Amended Answer.

Dated: March 15, 2024                    Respectfully submitted,

*/s/ Ruben Honik*                         */s/ Daniel Nigh*
Ruben Honik                               Daniel Nigh
**HONIK LLC**                             **NIGH, GOLDENBERG, RASO, & VAUGHN, PLLC**
1515 Market Street, Suite 1100            14 Ridge Square NW, 3rd Floor
Philadelphia, PA 19102                    Washington, DC 200016
Phone: (267) 435-1300                     Phone: (202) 792-7979
ruben@honiklaw.com                        dnigh@nighgoldenberg.com

<mark><mark><mark><mark><mark><mark><mark><mark></mark></mark></mark></mark></mark></mark></mark></mark>

| | |
|---|---|
| */s/ Adam Slater* <br> Adam Slater <br> **MAZIE, SLATER, KATZ & FREEMAN, LLC** <br> 103 Eisenhower Pkwy, 2nd Flr. <br> Roseland, NJ 07068 <br> Phone: (973) 228-9898 <br> aslater@mazieslater.com <br><br> ***MDL Plaintiffs' Co-Lead Counsel*** | */s/ Conlee S. Whiteley* <br> Conlee S. Whiteley <br> **KANNER & WHITELEY, LLC** <br> 701 Camp Street <br> New Orleans, LA 70130 <br> Phone: (504)-524-5777 <br> c.whiteley@kanner-law.com |
| /s/ *Jorge Mestre* <br> Jorge Mestre <br> **RIVERO MESTRE LLP** <br> 2525 Ponce de Leon Blvd., Suite 1000 <br> Miami, FL 33134 <br> Phone (305) 445-2500 <br> jmestre@riveromestre.com <br><br> ***Third-Party Payor Economic Loss Co-Lead Class Counsel*** | /s/ *Gregory P. Hansel* <br> Gregory P. Hansel <br> **PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP** <br> One City Center <br> P.O. Box 9546 <br> Portland, ME 04112 <br> Phone: (207) 791-3000 <br> ghansel@preti.com |

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel of record.

*/s/ Daniel Nigh*
