# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to the TPP Trial Subclasses** | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Court Judge |

## TPP TRIAL DEFENDANTS' RESPONSE TO PLAINTIFFS' TRIAL BRIEF

# TABLE OF CONTENTS

**Page**

1.  Maggie Kong .................................................................................................1

2.  Jinsheng Lin.................................................................................................3

3.  Plaintiffs' Untimely Requests For Financial Discovery...............................6

4.  Trial Subpoena For John Ruiz.....................................................................9

5.  Greg Cowhey ...............................................................................................9

6.  Attorney Witnesses On Pre-Suit Notice ....................................................11

7.  James MacDonald.......................................................................................11

8.  Retailer Defendants....................................................................................12

9.  Designations For Witnesses Appearing Live.............................................13

10. Dr. Hecht ....................................................................................................14

11. Translating Mechanism...............................................................................16

12. MSP Assignment Documents......................................................................17

13. Playing Partial Answers To Jurors ............................................................20

14. Testimony From Corporate Pharmacy And Wholesaler Defendants ..........21

15. Plaintiffs' Pending Motion For Sanctions ..................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*ABB Air Preheater, Inc. v. Regenerative Environment Equipment Co.*,
    167 F.R.D. 668 (D.N.J. 1996) ....................................................................4

*Albright v. Varicon, L.L.C.*,
    No. 99967, 2014 WL 265798 (Ohio Ct. App. Jan. 23, 2014) ......................19

*ADT-American Co. v. Krueger International, Inc.*,
    No. 12-00032, 2014 WL 3952848 (E.D. Pa. Aug. 12, 2014)......................13

*Brown v. Omega Insurance Co.*,
    322 So. 3d 98 (Fla. Dist. Ct. App. 2021) ....................................................18

*Carnathan v. Ohio National Life Insurance Co.*,
    No. 1:06-CV-999, 2008 WL 4000392 (M.D. Pa. Aug. 25, 2008)..................4

*Contractors Construction Corp. v. Michael Development Corp.*,
    213 So. 2d 430 (Fla. Dist. Ct. App. 1968) ..................................................19

*Creely v. Genesis Health Ventures, Inc.*,
    184 F. App'x 197 (3d Cir. 2006).................................................................1

*Crowley v. Chait*,
    No. 85-2441 (HAA), 2004 WL 7338421 (D.N.J. Dec. 29, 2004) ...............20

*D & D Associates, Inc. v. Board of Education of North Plainfield*,
    No. 03-1026 (MLC), 2006 WL 1644742 (D.N.J. June 8, 2006) .................10

*DiFlorio v. Nabisco Biscuit Co.*,
    No. CIV. A. 95-0089, 1995 WL 710592 (E.D. Pa. Nov. 13, 1995) ..........4, 6

*Dolfman v. Edwards*,
    Nos. 13-2831 & 13-6172, 2015 WL 3477736 (E.D. Pa. June 2, 2014)........15

*G. Heileman Brewing Co. v. Joseph Oat Corp.*,
 871 F.2d 648 (7th Cir. 1989) ........................................................................9

*Giles v. Sun Bank, N.A.*,
 450 So. 2d 258 (Fla. Dist. Ct. App. 1984) ..................................................18

*Giorgini v. Ford Motor Co.*,
 No. 06-0968, 2008 WL 859230 (E.D. Pa. Mar. 28, 2008) ..........................16

*Graham v. Carino*,
 No. 09-4501 (JEI/AMD), 2010 WL 2483294 (D.N.J. June 4, 2010) ............7

*Herman v. Sunshine Chemical Specialties, Inc.*,
 627 A.2d 1081 (N.J. 1993)............................................................................7

*Kannankeril v. Terminix International, Inc.*,
 128 F.3d 802 (3d Cir. 1997) ........................................................................15

*Langhals v. Holt Roofing Co.*,
 547 N.E.2d 401 (Ohio Ct. App. 1988)........................................................19

*M.A. v. Rockland County Department of Health*,
 No. 19 Civ. 2066 (JCM), 2023 U.S. Dist. LEXIS 192486
 (S.D.N.Y. Oct. 26, 2023) ..............................................................................9

*Micron Technology, Inc. v. Rambus Inc.*,
 No. 00-792 (SLR), 2007 WL 9771144 (D. Del. Aug. 29, 2007).................13

*Newman v. GHS Osteopathic, Inc.*,
 60 F.3d 153 (3d Cir. 1995)............................................................................4

*Pizzarotti, LLC v. Phipps & Co.*,
 128 N.Y.S.3d 432 (table), 2020 WL 3408481 (N.Y. Sup. Ct. 2020) ...........19

*Rhoades, Inc. v. United Air Lines, Inc.*,
 340 F.2d 481 (3d Cir. 1965)........................................................................21

*Robinson v. Horizon Blue Cross-Blue Shield of New Jersey*,
 No. 2:12-CV-02981-ES-JAD, 2013 WL 6858956
 (D.N.J. Dec. 23, 2013) ..................................................................................7

*SourceTrack, LLC v. Ariba, Inc.*,
    958 So. 2d 523 (Fla. Dist. Ct. App. 2007) ...................................................18

*Street Search Partners v. Rincon International, L.L.C.*,
    No. 04C-09-191-PLA, 2006 WL 1313859
    (Del. Super. Ct. May 12, 2006) .................................................................18

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*,
    242 F.R.D. 1 (D.D.C. 2007) .........................................................................9

*Vacarro v. Amazon.com.dedc, LLC*,
    No. 18-11852 (GC) (TJB), 2024 WL 866776 (D.N.J. Feb. 29, 2024)..........10

*Wood v. Borough of Lawnside*,
    No. 08-2914 (RBK/AMD), 2009 U.S. Dist. LEXIS 89909
    (D.N.J. Sept. 28, 2009) .................................................................................1

## RULES

Fed. R. Civ. P. 32(a)(6) ...........................................................................................13

Fed. R. Civ. P. 37(c)(1) ...........................................................................................10

Fed. R. Evid. 403 ...............................................................................................14, 21

The TPP Trial Defendants respectfully submit this response to Plaintiffs' Trial Brief.

## 1.    Maggie Kong

Plaintiffs argue that because ZHP previously objected to the production of Maggie Kong's custodial file on relevance and privilege grounds in the context of a narrow discovery dispute, it is somehow judicially estopped from presenting *any* testimony from her at trial. (*See* Pls.' Trial Br. at 1 (ECF 2682).) As this Court has recognized, however, a party's "judicial estoppel argument fails" where the opponent "did not succeed in" pressing its prior position. *See Wood v. Borough of Lawnside*, No. 08-2914 (RBK/AMD), 2009 U.S. Dist. LEXIS 89909, at *13-14 (D.N.J. Sept. 28, 2009) (Kugler, J.) (plaintiff's "judicial estoppel argument fails because the Borough did not succeed in its prior suit in arguing that CFBL lacked standing to pursue Ms. Wood's claim"); *see also Creely v. Genesis Health Ventures, Inc.*, 184 F. App'x 197, 201 (3d Cir. 2006) (because party "did not succeed in its [prior] argument . . . judicial estoppel does not foreclose [related party's] current position"). Because ZHP's objection to discovery from Ms. Kong was overruled and materials from her custodial files were produced to Plaintiffs years ago, judicial estoppel does not apply.

In any event, there is nothing remotely inconsistent with ZHP's position. As Plaintiffs expressly acknowledge, ZHP merely represented in the course of a

discovery dispute that Ms. Kong had "no direct role in the ***development, manufacturing, testing or sale of valsartan***" and that many of the documents in Ms. Kong's custodial file would involve communications "with the ZHP Parties' attorneys." (Pls.' Trial Br. at 2-3 (emphasis added) (quoting ECF 1485 at 16-17).) By contrast, ZHP seeks to elicit testimony from Ms. Kong at trial regarding non-privileged matters relevant to Plaintiffs' expected trial presentation about which she does have personal knowledge. This includes, but is not limited to, the events immediately leading up to and following the voluntary recall of valsartan, including ZHP's communications with pharmaceutical clients, the procurement of testing materials, and the organization of manpower to test batches of valsartan to confirm the alleged presence of nitrosamines and collect information to be passed on to regulators, pharmaceutical clients and the public at large. (Pls.' Trial Br. at 4.) Ms. Kong also has personal knowledge of ZHP's reaction to the recall, the effect of the recall on the company, and the steps taken to ensure the safety of valsartan so that it could be returned to the market in order to provide much-needed anti-hypertension treatment to patients.

Notably, these recall and post-recall-related subjects were not addressed in the parties' 2021 dispute regarding the production of Ms. Kong's custodial file because they were, at most, peripheral to the production-related issues that were the focus of the parties' narrow discovery dispute at that time. Indeed, it only became clear

recently that Plaintiffs intend to make the promptness of ZHP's voluntary recall following the discovery of nitrosamines in valsartan in 2018 a central theory of their case, particularly with respect to their request for punitive damages. (*See, e.g.*, Joint Final Pretrial Order ("PTO") at 6 (Plaintiffs asserting in the summary of their case for trial that "ZHP unreasonably delayed" the recall and "attempted to persuade the FDA to agree to allow ZHP and others to continue to sell" valsartan that was eventually recalled).) Because such allegations concern activities in which Ms. Kong did have a direct role, ZHP has a fundamental right to present her testimony at trial.

## 2.    Jinsheng Lin

Plaintiffs seek to preclude Dr. Jinsheng Lin—a research chemist at ZHP and the author of an email that Plaintiffs claim is central to their theory of liability— from testifying at trial. Throughout this litigation, Plaintiffs have pointed to an email sent by Dr. Lin that they claim is a "smoking gun" that purportedly proves that "ZHP knew that its valsartan was contaminated with NDMA" in 2017. (*See, e.g.*, ECF 2569-2 at 1.) Notably, Plaintiffs have never sought to ask Dr. Lin directly about his email, and now they want the Court to block the jury from hearing from Dr. Lin either, based on a claim that his custodial file is somehow "deficient."[1] Plaintiffs'

---

[1]    Notably, Plaintiffs have questioned many other ZHP witnesses about Dr. Lin's emails, including those who never received it and had no familiarity with it.

arguments are legally and factually baseless, and excluding Dr. Lin would be fundamentally unfair.

The Third Circuit has expressed "a distinct aversion to the exclusion of important testimony absent evidence of extreme neglect or bad faith on the part of the proponent of the testimony." *ABB Air Preheater, Inc. v. Regenerative Env't Equip. Co.*, 167 F.R.D. 668, 671 (D.N.J. 1996) (citing cases); *see also DiFlorio v. Nabisco Biscuit Co.*, No. CIV. A. 95-0089, 1995 WL 710592, at *2 (E.D. Pa. Nov. 13, 1995) (similar) (citing cases). This is because the extreme sanction of excluding critical witness testimony would result in "fundamental unfairness in the trial of the case." *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995) (citation omitted); *see also, e.g.*, *Carnathan v. Ohio Nat'l Life Ins. Co.*, No. 1:06-CV-999, 2008 WL 4000392, at *2 (M.D. Pa. Aug. 25, 2008) (refusing to exclude testimony where there was "no surprise or prejudice" to the opposing party).

Plaintiffs' three-paragraph argument comes nowhere close to making such a showing. According to Plaintiffs, Dr. Lin's custodial file is "inadequate" and in supposed violation of unspecified discovery orders and rules because it "contains only one document that predates December 2017." (Pls.' Trial Br. at 6.) This argument is premised on the erroneous belief that Dr. Lin had significant involvement in valsartan such that he would be expected to have a trove of responsive documents in his custodial file. In fact, as ZHP has previously explained,

4

Dr. Lin had virtually no involvement with valsartan prior to 2018. As such, it is no surprise that his custodial file—which includes well over 15,000 documents—contains few responsive documents from the year prior to the recall.[2]

Plaintiffs also claim prejudice because ZHP indicated its "intention to call [Dr. Lin] as a witness just weeks before trial." (Pls.' Trial Br. at 6.) But Plaintiffs have been focused on Dr. Lin's email for almost three years, and there can be no credible contention of surprise here. In any event, Plaintiffs have known for more than a month that ZHP intended to bring Dr. Lin to testify narrowly about the events surrounding his July 27, 2017 email, and ZHP immediately offered Dr. Lin for a deposition. Plaintiffs did not even respond. Rather, the very first time Plaintiffs raised any objections to Dr. Lin's trial testimony was in their Trial Brief. Because Plaintiffs will have had more than sufficient time to prepare for Dr. Lin's testimony

---

[2]    Plaintiffs also suggest that because the July 27, 2017 email was not found in Dr. Lin's custodial file at the time documents were produced in 2020-2021, ZHP must have "intended to conceal the email and any surrounding documents and communications." (Pls.' Trial Br. at 6 n.1.) This unsupported accusation has been rejected by Judge Vanaskie (*see* ECF 1573 at 43:21-24), is wholly inappropriate, and the Court should not permit Plaintiffs to make such inflammatory suggestions at trial. Prior to the litigation hold that was put in place in 2018, ZHP maintained its records consistent with its regular retention policies. Moreover, the circumstances surrounding the production of Dr. Lin's email have been explained in deposition testimony and corroborated by documentary evidence and contemporaneous emails. (*See* Dep. of Min Li, Ph.D. 33:22-35:17, Apr. 20, 2021 (Ex. 1 to Cert. of Jessica Davidson ("Davidson Cert."); ZHP02730423 (Davidson Cert. Ex. 2); ZHP02730425 (Davidson Cert. Ex. 3); ZHP02730426 (Davidson Cert. Ex. 4).)

(particularly with the trial delay), their arguments are meritless. *See DiFlorio*, 1995 WL 710592, at *2 (declining to exclude testimony and finding that any "prejudice to defendants' opportunity to prepare" could be cured where trial was "still a month away").

For all of these reasons, the Court should not bar ZHP from presenting Dr. Lin at trial.

## 3.   Plaintiffs' Untimely Requests For Financial Discovery

Plaintiffs seek to compel Defendants to respond to Plaintiffs' untimely Notice to Produce served on February 23, 2024, seeking seven categories of financial documents Plaintiffs purport to seek in connection with punitive damages. (Pls.' Trial Br. at 6-11.) Defendants have addressed this subject in Section VIII of their Trial Brief ("Plaintiffs May Not Take Untimely Financial Condition Discovery"), which is incorporated herein by reference. Three points not addressed in Defendants' Trial Brief, however, merit a short response.

First, Plaintiffs suggest they could not have sought punitive damages discovery any earlier because they did not know Defendants' position on bifurcation, and Defendants "undoubtedly would have resisted the request earlier in the case." (Pls.' Trial Br. at 9.) But this Court never bifurcated punitive damages discovery; Plaintiffs did not seek such bifurcation; and Defendants never suggested they would not participate in punitive damages discovery. Nor did Plaintiffs raise the issue or

seek to reserve punitive damages discovery for a later stage of the case in any of the case management orders setting discovery deadlines. Even though they have asserted punitive damages claims since at least June 2019 (ECF 121 at 128), Plaintiffs failed to propound such discovery prior to the close of fact discovery in June 2021, or even prior to the close of damages expert disclosures in January 2023.

Plaintiffs' tepid excuse that they believe Defendants "would have resisted" such discovery cannot justify their tardiness. Even assuming Defendants had uniformly objected to the commencement of any punitive damages discovery— though Plaintiffs offer no basis for such an assumption—the Court could still have ordered such discovery at the merits phase. *See Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 2:12-CV-02981-ES-JAD, 2013 WL 6858956, at *4 (D.N.J. Dec. 23, 2013) (allowing financial condition discovery and punitive damages discovery to proceed at the merits phase despite the bifurcation of punitive damages); *Graham v. Carino*, No. 09-4501 (JEI/AMD), 2010 WL 2483294, at *3 (D.N.J. June 4, 2010) (finding that "bifurcation of the issues of liability and punitive damages does not warrant delaying production of financial information in this case, and deferring punitive damage discovery does not serve the interests of judicial economy"). Plaintiffs' own authority aligns with this, holding only that "requests for discovery of a defendant's financial condition" should "balance the plaintiff's need for the information with the burden on a defendant of disclosure." *Herman v.*

7

*Sunshine Chem. Specialties, Inc.*, 627 A.2d 1081, 1089 (N.J. 1993). Plaintiffs never asked the Court to undertake such a balancing.

Second, Plaintiffs rely solely on New Jersey caselaw for the proposition that financial condition discovery is relevant because New Jersey's punitive damages statute allows consideration of financial condition as part of a punitive damages determination. (Pls.' Trial Br. at 9-10.) At best, that reinforces why Plaintiffs should have sought such discovery earlier in the case. In any event, as reflected in Defendants' proposed jury instructions, only 10 of the 41 states at issue (Alaska, Iowa, Minnesota, New Jersey, New York, Oklahoma, Oregon, South Dakota, Vermont and Wyoming) list financial condition or financial status as a consideration in their pattern jury instructions for punitive damages. (ECF 2680 at 332-33, 349-50, 351-52, 356-57, 358-60, 376-77, 378-79, 384-85, 386-87, 393-94.) The impact of Plaintiffs' failure to seek financial condition discovery is therefore minimal.

Third, Plaintiffs suggest they can establish the financial condition of each Defendant "through their publicly available filings" and assert that Defendants should be "required to provide the most up to date versions of that information" and to "stipulate to that information, including Plaintiffs' calculations of the key net worth and gross revenue figures converted to US dollars." (Pls.' Trial Br. at 10-11.) But the most "up to date" versions of "publicly available filings" are, by definition, publicly available, and Defendants cannot be compelled to "stipulate" to Plaintiffs'

unsubstantiated "calculations" of "net worth" and "gross revenue" based on filings on Plaintiffs' exhibit list, which, at least as to some Defendants (including Teva and Torrent Pharma, Inc.), do not even pertain to the entities named in this trial. *See, e.g.*, *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 653 n.8 (7th Cir. 1989) ("[A] court cannot compel parties to stipulate to facts."); *M.A. v. Rockland Cnty. Dep't of Health*, No. 19 Civ. 2066 (JCM), 2023 U.S. Dist. LEXIS 192486, at *5 (S.D.N.Y. Oct. 26, 2023) (acknowledging "the well-settled principle that a party cannot be forced to stipulate to disputed facts prior to trial") (citing Fed. Trial Handbook: Civil § 34:1; *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 4 (D.D.C. 2007) ("Since a stipulation is 'voluntary,' this [c]ourt cannot compel a party to voluntarily do something.") (citing *Black's Law Dictionary* 1427 (Deluxe 7th ed. 1999) (defining stipulation)).

At bottom, Plaintiffs made a strategic decision not to seek punitive damages discovery at the time prescribed by the Court. They should not be allowed to shore up their delinquent efforts with untimely notices or demands for stipulations on the eve of trial.

**4.      Trial Subpoena For John Ruiz**

Defendants no longer intend to seek Mr. Ruiz's testimony live at trial.

**5.      Greg Cowhey**

For the reasons set forth in Defendants' Trial Brief and the additional reasons

set forth herein, the Court should strike Plaintiffs' undisclosed expert Greg Cowhey. Plaintiffs admit that "Mr. Cowhey was not formally named as an expert in the litigation" and was disclosed on the eve of trial. (Pls.' Trial Br. at 14.) As explained in Defendants' Trial Brief (ECF 2681 at 3-7), an expert disclosed belatedly is automatically precluded from offering testimony at trial pursuant to Federal Rule of Civil Procedure 37(c). *See Vacarro v. Amazon.com.dedc, LLC*, No. 18-11852 (GC) (TJB), 2024 WL 866776, at *4 (D.N.J. Feb. 29, 2024) (rule is self-executing and "written in mandatory terms") (citation omitted). Plaintiffs bear the burden of demonstrating that their failure to comply with the Court-ordered schedule for expert discovery was either "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). Despite having received advance notice of Defendants' position, Plaintiffs made no attempt to show in their Trial Brief that their failure caused no prejudice to Defendants or that they were not required to timely disclose Mr. Cowhey. *See D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-1026 (MLC), 2006 WL 1644742, at *4 (D.N.J. June 8, 2006) ("Substantial justification requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'") (citation omitted).

Plaintiffs' attempt to bypass expert disclosure rules and gain a strategic advantage is confirmed in Plaintiffs' Trial Brief. After Defendants objected in the

Joint Final Pretrial Order to Mr. Cowhey's lack of experience with the pharmaceutical industry, Plaintiffs used their Trial Brief as an opportunity to shore up their undisclosed witness's qualifications through an unsubstantiated claim of "extensive knowledge and experience with regard to the finances of international pharmaceutical companies" that appears nowhere in Plaintiffs' summary of his qualifications or in his professional biography. (Pls.' Trial Br. at 14; *see* PTO at 214-15; PTO Ex. 65.) Worse still, Plaintiffs' wait-and-see proposal reveals their intent of keeping Mr. Cowhey on their roster so that they could spring him as a surprise witness and ambush Defendants with his undisclosed and untested opinions. (*See* Pls.' Trial Br. at 14 ("[T]he best approach is to await the progress of the trial, and evaluate whether the testimony would be appropriate or necessary depending on other rulings and the Defendants' arguments at trial.").)

**6.    Attorney Witnesses On Pre-Suit Notice**

This topic is addressed in Section II of Defendants' Trial Brief ("The Court Should Strike Irrelevant Lawyer Testimony About Supposed Notice"), which is incorporated herein by reference.

**7.    James MacDonald**

This topic is addressed in Section IV of Defendants' Trial Brief ("The Court Should Strike James MacDonald From Plaintiffs' Witness List"), which is incorporated herein by reference.

ZHP only adds that Plaintiffs suggest that their intent to call Dr. MacDonald is "certainly no surprise" and was "first" made necessary by "ZHP's motion" to exclude his email. (Pls.' Trial Br. at 15.) But ZHP's objection does not relate to surprise; it relates to the fact that Plaintiffs seek improperly to slip in expert testimony by someone who has never been designated as an expert in this matter.

## 8.  Retailer Defendants

Plaintiffs' assertion that the Retailer Defendants are not adverse parties and thus cannot object to designations and counter-designate is irrelevant. The TPP Trial Defendants have made the same counter-designations and objections as the Retailer Defendants.[3] In addition, if the Court grants Defendants' request to exclude the Retailers' witnesses at trial (see Defendants' Trial Brief, Section VII), Plaintiffs' objections will become moot.

In any event, the Retailer Defendants have a right to object to, and counter-designate, deposition testimony from their own witnesses because they are parties to

---

[3]      (See 3/12/24 Emails to M. Goldenberg (Davidson Cert. Ex. 5) ("The counter-designations and objections for the CVS and Walgreens witnesses were also served on behalf of the TPP Trial Defendants."); id. ("[T]he objections and counters . . . served on March 11 were also on behalf of the TPP Trial Defendants."); 3/12/24 Letter from A. Brancato re: Daniel Brais (Humana), Steven Taylor (OptumRx), and Wendy Woon-Fat (OptumRx) (Davidson Cert. Ex. 6) ("These objections and counter-designations are on behalf of all TPP Trial Defendants."); 3/12/24 Letter from A. Brancato re: Owen McMahon (Rite-Aid) and Cesar Cedeno (Humana) (Davidson Cert. Ex. 7) (same); 3/13/24 Letter from A. Brancato re: Julie Webb (Cardinal Health) (Davidson Cert. Ex. 8) (same).)

the litigation even though they were not selected as trial defendants for this specific trial. Fed. R. Civ. P. 32(a)(6). Accordingly, the Retailer Defendants have an interest in ensuring that any deposition testimony presented at trial from them is admissible, complete, and not taken out of context. Their objections and counter-designations accomplish just that.

**9.      Designations For Witnesses Appearing Live**

This topic is largely addressed in Section IX of Defendants' Trial Brief ("Plaintiffs Should Not Be Allowed To Use Deposition Designations In Lieu Of Questioning Witnesses That Are Present Live"), which is incorporated herein by reference. Defendants add only a few points below.

Plaintiffs claim an "absolute right to present the deposition designations." (Pls.' Trial Br. at 17), but there is no such absolute right. To the contrary, even party-opponent depositions are subject to "the [c]ourt's authority" to avoid "redundant videotaped clips," *ADT-Am. Co. v. Krueger Int'l, Inc.*, No. 12-00032, 2014 WL 3952848, at *19-20 (E.D. Pa. Aug. 12, 2014), and in light of the general preference for live testimony, "particularly when a witness's credibility has been challenged," *Micron Tech., Inc. v. Rambus Inc.*, No. 00-792 (SLR), 2007 WL 9771144, at *2 (D. Del. Aug. 29, 2007).

Plaintiffs' Trial Brief also illustrates the confusing nature of the manner in which they plan to present testimony, particularly from Jucai Ge, Dr. Sushil Jaiswal,

13

and Dawn Chitty. Plaintiffs propose to "use the videos" in their case-in-chief; then, weeks later, Defendants would "call the witnesses live in their case, and Plaintiffs [would re-]cross-examine the witnesses at that point." (Pls.' Trial Br. at 18.) Particularly when combined with Plaintiffs' "extensive objections" to Defendants' deposition designations (*id.* at 17), this is a recipe for unfairness and juror confusion. Fed. R. Evid. 403. Plaintiffs' cherry-picked designations would be left unchallenged in jurors' minds for weeks. When Defendants finally have the opportunity to present their side of the story, jurors will wonder why this direct and re-cross-examination is so far removed from the initial presentation of the same witnesses. The Court should reject this convoluted scheme in favor of traditional presentation of live testimony at trial.

## 10.  Dr. Hecht

Plaintiffs seek to circumscribe the cross-examination of their experts, and particularly of Dr. Stephen Hecht, by preventing Defendants from challenging his qualifications. According to Plaintiffs, cross-examination on issues related to qualifications would be "inconsistent with the Court's finding[s]" in its *Daubert* rulings. (Pls.' Trial Br. at 18.) This argument is frivolous.[4] Defendants did not

---

[4]    Plaintiffs also seek to preclude Defendants from asking about criminal conduct by leaders of Dr. Hecht's former employer, the American Health Foundation. Although Defendants did briefly address this issue at Dr. Hecht's

*(cont'd)*

challenge Dr. Hecht's biochemistry qualifications at the *Daubert* stage; thus, the Court never ruled on them.[5] But even if it had, the mere fact that a court finds an expert's qualifications to be sufficient for purposes of admissibility does not prevent the opposing party from challenging those qualifications before the jury. This is so because, although certain minimum qualifications are required for admissibility, beyond that level, qualifications bear on the weight of an expert's opinion. *See, e.g.*, *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 809 (3d Cir. 1997) ("If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility."); *Dolfman v. Edwards*, Nos. 13-2831 & 13-6172, 2015 WL 3477736, at *1 (E.D. Pa. June 2, 2014) ("[T]he breadth of [expert's] experience, e.g., the lack of scholarly publications and peer-reviewed research for the past 20 years, and her lack of recent practical experience[] . . . are relevant to the weight the jury should give her testimony, not admissibility.").

The Court understood that its admissibility decision did not render Dr. Hecht (or anyone else) immune from challenge before the jury; in denying Defendants' motion, it referred to their arguments as "no doubt [a] preview [of] cross-examination." (ECF 2581 at 21.) The Court has also expressly noted that while

---

deposition (where the scope of relevance is far wider) they do not plan to raise the issue at trial and therefore do not oppose that portion of Plaintiffs' argument.

[5]     Defendants challenged Dr. Hecht's qualifications to offer regulatory opinions (which Plaintiffs then withdrew).

"[v]ery minimal qualifications is all you need" at the *Daubert* stage, the parties are "welcome" to present qualification arguments "to a respective juror so they can make any decisions they want based on that" at trial. (ECF 1903 at 27:5-25.) And Plaintiffs themselves seemed to understand the distinction earlier, defending the admissibility of one of their experts, Dr. Susan Bain, by claiming (in bold font no less) that "**most arguments about an expert's qualifications relate more to the weight to be given the expert's testimony [by the jury] than to its admissibility**." (ECF 2325 at 7 (citations omitted).) Now that the time has come to evaluate weight, Plaintiffs cannot retreat behind admissibility rulings that considered a different question under different a standard.

In sum, *Daubert* and Rule 702 set threshold requirements, but do not "supplant the traditional adversary system and the place of the jury." *Giorgini v. Ford Motor Co.*, No. 06-0968, 2008 WL 859230, at *5 (E.D. Pa. Mar. 28, 2008). The Court should reject Plaintiffs' effort to avoid jury examination of Dr. Hecht's credentials.

## 11.    Translating Mechanism

This topic is largely addressed in Section V of Defendants' Trial Brief ("Plaintiffs Should Be Required To Disclose Their Mechanism For 'Translating' State Data"), which is incorporated herein by reference. However, Defendants seek to address a bigger concern raised in Plaintiffs' Trial Brief.

Plaintiffs' Trial Brief now makes clear that they not only seek to avoid producing a translation mechanism in discovery; they also seek to avoid presenting one at trial. According to Plaintiffs, the "process of tracing which TPPs paid for which VCDs in the event of a judgment in Plaintiffs' favor" is, to the extent necessary at all, "simply . . . a claims administration [issue] that" could "occur after this jury trial." (Pls.' Trial Br. at 19.)

That is wrong. Even if Plaintiffs were correct that ascertaining the particular TPPs that form part of the trial class could be done in the claims administration process, the Court's decertification order makes clear that apportioning the aggregate amount of damages sustained in each state (or under each state's law) also requires a "translation" mechanism. (*See* ECF 2657 at 7 (A "translating mechanism of [Dr.] Conti's model relying on IQVIA data could convert where [point-of-sale] damages were paid into those TPP [point-of-payment] locations.").) And state-by-state damages undoubtedly present a jury question for trial. Plaintiffs' own proposed damages worksheet asks the jury to apportion compensatory damages by state. (*See* ECF 2683-4.) If Plaintiffs have no such translation mechanism to present to jurors, the Court's basis for denying decertification would not stand.

## 12.   MSP Assignment Documents

This section is largely addressed in Section III of Defendants' Trial Brief ("Plaintiffs Cannot Prove The Validity Of MSP's Assignments Through

Unauthenticated Documents"), which is incorporated herein by reference. One issue not addressed in Defendants' opening brief merits a short response. Plaintiffs contend that Jorge Lopez will authenticate the MSP assignments. (Pls.' Trial Br. at 20-22.) Even assuming *arguendo* that Mr. Lopez can provide authenticating testimony, and that he will appear at trial to do so, that does not address the problem that the written assignments MSP has produced and Plaintiffs have placed on their exhibit list do not disclose the actual consideration paid by MSP for the assignments of claims from EmblemHealth and SummaCare, instead reciting nominal consideration of ten dollars. (*See* ECF 2672-4 (SummaCare assignment); ECF 2672-3 (EmblemHealth assignment); ECF 2681 at Ex. 1 (operating agreement).)

This bare recitation of nominal consideration for the EmblemHealth and SummaCare assignments does not suffice to establish their validity. MSP's assignments purport to be governed by Florida and Delaware law.[6] Florida requires "valuable consideration" for a valid assignment of claims. *See Giles v. Sun Bank, N.A.*, 450 So. 2d 258, 260 (Fla. Dist. Ct. App. 1984) (requiring "an intention on one side to assign a right . . . and an intention on the other to receive" with "valuable

---

[6]    The assignments between MSP entities, which are for only nominal consideration, are governed by Florida and Delaware law. As discussed in the briefing in support of the ZHP Defendants' motion to amend their answer (*see* ECF 2672-1 & 2686), the initial assignments from EmblemHealth and SummaCare are governed by New York and Ohio law respectively.

consideration" to operate as an effective assignment); *Brown v. Omega Ins. Co.*, 322 So. 3d 98, 101 (Fla. Dist. Ct. App. 2021) (similar); *SourceTrack, LLC v. Ariba, Inc.*, 958 So. 2d 523, 526 (Fla. Dist. Ct. App. 2007) (similar). Delaware courts are in accord. *See Street Search Partners v. Rincon Int'l, L.L.C.*, No. 04C-09-191-PLA, 2006 WL 1313859, at \*4-5 (Del. Super. May 12, 2006) (assignment must be supported by "good and valuable consideration").[7] A nominal recitation of "ten dollars" is inadequate. The "requirement of a sufficient consideration for a promise is not satisfied by a pretense that there is a consideration when in fact there is none," and "[a] nominal consideration is not a sufficient one if we mean by nominal that the stated consideration is a pretense and not a reality. This is true whether the statement indicates that the consideration is large or small." *Contractors Constr. Corp. v. Michael Dev. Corp.*, 213 So. 2d 430, 433 (Fla. Dist. Ct. App. 1968) (holding that recitations like "'In consideration of One Dollar,' or 'Ten Dollars'" are insufficient to demonstrate valuable consideration "if the statement is untrue").

---

[7]    *See also Langhals v. Holt Roofing Co.*, 547 N.E.2d 401, 403 (Ohio Ct. App. 1988) (valid assignment requires "an intention on one side to assign and an intention on the other to receive," as well as "valuable consideration") (citation omitted); *Albright v. Varicon, L.L.C.*, No. 99967, 2014 WL 265798, at \*5 (Ohio Ct. App. Jan. 23, 2014) (similar); *Pizzarotti, LLC v. Phipps & Co.*, 128 N.Y.S.3d 432 (table), 2020 WL 3408481, at \*2 (N.Y. Sup. Ct. 2020) (holding that "adequate consideration" for an assignment requires an "exchange of something of value" to support "a mutuality of obligation").

Following Mr. Lopez's deposition, Defendants requested that Plaintiffs produce copies of MSP's assignment agreements reflecting "the consideration paid" for the assignments. (*See* 5/12/21 Letter from G. Ostfeld (Davidson Cert. Ex. 9).) Plaintiffs refused to do so. (*See* 6/4/21 Letter from D. DaPonte (Davidson Cert. Ex. 10).) Having refused to produce documents necessary to establish a point on which Plaintiffs bear the burden of proof—the validity of the MSP assignments—Plaintiffs cannot meet their burden at trial using inadequate assignment documents lacking actual consideration terms.[8]

## 13. Playing Partial Answers To Jurors

This issue is addressed in Section VI of Defendants' Trial Brief ("Plaintiffs Should Be Prohibited From Designating Partial Answers in Depositions"), which is incorporated herein by reference. To the extent Plaintiffs submit that they should be allowed to designate partial answers where the rest of these answers is purportedly unresponsive, they have provided no such examples. Regardless, Plaintiffs should not be allowed to circumvent the rule of completeness by selecting their preferred soundbites and then unfairly excising everything else they do not like. *Crowley v.*

---

[8]  Plaintiffs also assert that "[t]he Court has already determined that the assignments are no longer at issue," but they do not cite any ruling or order of the Court so holding. (Pls.' Trial Br. at 20.) The Court briefly referenced Plaintiffs' allegations with respect to the assignments at the dismissal stage, but Defendants are not aware of any ruling by the Court that the assignments are "no longer at issue" or need not be proven by Plaintiffs at the merits phase. (*See* ECF 728 at 4.)

*Chait*, No. 85-2441 (HAA), 2004 WL 7338421, at *17 (D.N.J. Dec. 29, 2004) ("The touchstone of Rules 32(a)(4) and 106 is 'fairness.'"). Plaintiffs' proposed approach would cause Defendants undue prejudice and risk misleading the jurors by depriving them of crucial context. Fed. R. Evid. 403.

Nor should Plaintiffs be allowed to supplant the jury's responsibility for evaluating a witness's responsiveness and making credibility assessments. *See Rhoades, Inc. v. United Air Lines, Inc.*, 340 F.2d 481, 485 (3d Cir. 1965) (emphasizing that the jury exercises its independent judgment when assessing credibility of witnesses and determining weight to give to testimony).

## 14.     Testimony From Corporate Pharmacy And Wholesaler Defendants

This topic is addressed in Section VII of Defendants' Trial Brief ("Plaintiffs Should Be Precluded From Introducing Testimony Of The Corporate Pharmacy And Wholesaler Witnesses"), which is incorporated herein by reference.

## 15.     Plaintiffs' Pending Motion For Sanctions

This topic was addressed in a standalone motion that was fully briefed two years ago, and Defendants herein adopt and incorporate the arguments made in their opposition (ECF 1900) and sur-reply (ECF 1942-2) by reference.

Dated: March 21, 2024                    Respectfully submitted,

                                         By: */s/ Jessica Davidson*
                                         SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM LLP
                                         Jessica Davidson (NY Bar No. 6034748)

*Liaison Counsel for Manufacturer*
*Defendants*

Allison M. Brown (NJ Bar No. 044992012)
One Manhattan West
New York, New York 10001
Phone: (212) 735-3222
Fax: (917) 777-3222
jessica.davidson@skadden.com
allison.brown@skadden.com

Nina R. Rose (DC Bar No. 975927)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

> *Attorneys for Zhejiang Huahai*
> *Pharmaceutical Co., Ltd., Huahai U.S.,*
> *Inc., Prinston Pharmaceutical Inc., and*
> *Solco Healthcare U.S., LLC*

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
GREENBERG TRAURIG, LLP
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Lori G. Cohen, Esq.
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385

Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

*Attorneys for Teva Pharmaceuticals
USA, Inc., Actavis LLC, and Actavis
Pharma, Inc.*

<u>/s/ Alexia R. Brancato</u>
Alexia R. Brancato
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
alexia.brancato@kirkland.com
devora.allon@kirkland.com

*Attorneys for Defendants Torrent
Pharmaceuticals Ltd. and Torrent
Pharma, Inc.*

23

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on March 21, 2024, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*      

Jessica Davidson
