1                   UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
2    _____
                                      :  CIVIL ACTION NUMBER:
3                                     :  19-md-02875
     IN RE:  VALSARTAN PRODUCTS       :
4    LIABILITY LITIGATION             :  MOTION HEARING via
                                      :  Teams
5    _____ :

6         Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
7         Camden, New Jersey 08101
          March 27, 2024
8         Commencing at 2:01 p.m.

9    B E F O R E:        THE HONORABLE ROBERT B. KUGLER,
                         UNITED STATES DISTRICT JUDGE
10
                         THOMAS I. VANASKIE (RET.)
11                       SPECIAL MASTER

12   A P P E A R A N C E S:

13
          NIGH GOLDENBERG RASO & VAUGHN
14        BY:  DANIEL A. NIGH, ESQUIRE
          1333 College Parkway, #1049
15        Gulf Breeze, Florida 32563
          For the Plaintiffs
16

17        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
          BY:  ZACHARY W. MARTIN, ESQUIRE
18        500 Boylston Street
          Boston, Massachusetts 02116
19        For the Defendants Prinston Pharmaceuticals,
          Solco Healthcare U.S. LLC, and  Zhejiang Huahai
20        Pharmaceuticals Ltd.

21

22
       Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
23              AnnMarie_Mitchell@njd.uscourts.gov
                         (856) 576-7018
24
       Proceedings recorded by mechanical stenography; transcript
25          produced by computer-aided transcription.

1

2  **A P P E A R A N C E S (Continued)**:

3

4      GREENBERG TRAURIG LLP
       BY:  TIFFANY M. ANDRAS, ESQUIRE
5      77 West Wacker Drive, Suite 3100
       Chicago, Illinois 60601
6      For the Defendants Teva Pharmaceutical Industries Ltd.,
       Teva Pharmaceuticals USA, Inc., Actavis LLC,
7      and Actavis Pharma, Inc.

8  **ALSO PRESENT**:

9

10     LORETTA SMITH, ESQUIRE
       Judicial Law Clerk to The Honorable Robert B. Kugler
11
       LARRY MACSTRAVIC, Courtroom Deputy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS held via Teams before The Honorable
 2    ROBERT B. KUGLER and SPECIAL MASTER THOMAS I. VANASKIE at
 3    2:01 p.m.)
 4              THE COURT:  Good afternoon.
 5              Welcome.  I hope you can hear me.
 6              SPECIAL MASTER VANASKIE:  We can.
 7              THE COURT:  I have a heck of the time with the
 8    technology here.
 9              Those of you who are not going to speak, could you
10    mute your -- if you haven't already muted your microphones for
11    the time being.  I have some things I want to talk about and
12    tell you.
13              Okay.  Well, first of all, thank you for your
14    patience, and thank you for your wishes -- your best wishes
15    while I was sick.  I am feeling better.  You can maybe see in
16    the background that I'm at the courthouse today.
17              I got the letters from Mr. Slater and Mr. Ostfeld.  I
18    understand, trust me, the logistical issues that arise from a
19    trial in this matter given where your clients and witnesses
20    are.  And I, trust me, have given this a lot of thought.
21              And here's the answers to your questions.  And it's
22    not going to be terribly satisfactory, but this is the best I
23    can do.
24              You will not be trying this case this spring.  I will
25    not be presiding over this case, a trial, for any longer.
```

*United States District Court*

1  After about almost 32 years as a judge, I have decided to step

2  down and retire effective May 31st.

3        I apologize that I wasn't able to get the case done.

4  I had that sweet spot back a couple weeks ago, but I was just

5  too sick to do it.  I no longer have the time to do it because

6  of my other commitments and my need to get things wrapped up

7  before I retire.

8        So where does that leave you and this case?

9        I've been in contact with the JPMDL as to what

10 happens next.  It is their desire that the case remain in the

11 District of New Jersey.  As you may know, the District of New

12 Jersey has the second most MDL cases in the country, so they

13 and I are trying to find a judge who is able to take this on

14 at this time.  I think we'll be able to do that, but I don't

15 have final word on who that might be yet.

16       So obviously it will be up to the new judge as to

17 when and even whether to conduct the trial that we were going

18 to have.  There's no obligation on the new judge, whoever it

19 might be, to have this bellwether trial or any bellwether

20 trial.  He or she may decide to proceed in a different manner.

21 I have no idea.  Obviously, I will offer my services to the

22 new judge and tell the new judge where we are in this matter,

23 but it's up to her or him to decide what to do next.

24       Consequently, since there may not be a bellwether

25 trial, I'm going to hold off on your motions in limine, many

1  of which couldn't be decided anyway, anyhow, but I am not

2  going to decide them until I find out who it's going to be and

3  what she or he wants to do hereafter.

4          Just let me take a moment of your time and Judge

5  Vanaskie's time.

6          Almost 50 years ago, I began my first day in law

7  school.  I had no idea, no conception, no dream that someday I

8  would have completed the career that I have completed.  It's

9  been unbelievably fulfilling for me, and it's been great, but

10  it is time for me to leave.  And I know some people out there

11  probably thought it was time for me to leave ten years ago,

12  but I'm here.

13          But one of the things that's made it so rewarding to

14  me, frankly, is you, lawyers.  It's been thrilling for me to

15  watch all these years as a judge lawyers do what they do, the

16  intellect and the integrity and the energy that you bring to

17  these problems that we're here to try to resolve.

18          Lawyers are underappreciated in our society.  Sure, I

19  mean, when somebody gets in trouble, they know where to go,

20  they've got to find a lawyer.  But otherwise, I don't think --

21  I think we get a bad press.  I really do.

22          I want you to know how much I've appreciated what all

23  of you have done in this case.  This is a difficult case.  It

24  was an interesting case.  I was really looking forward to

25  trying the case because, frankly, the lawyers in this case are

 1   just terrific.  And it would have been thrilling to see you in

 2   action in this case, but it's not to be.

 3          So I'm going to thank you for all you've done, tell

 4   you that at least I appreciate all that you do and will

 5   continue to do.  And I hope that in the future our paths will

 6   cross, and you will bring me up to date as to where you are

 7   and what you've been doing.  And obviously, I will keep in

 8   touch with whatever judge has this case to find out what

 9   happens.

10          And with that, I'm going to turn this over to one of

11   I think the outstanding judges of this era, Judge Tom

12   Vanaskie.

13          Tom, it's all yours.

14          Good-bye, everybody.

15          SPECIAL MASTER VANASKIE:  All right.  Thanks, Judge

16   Kugler.  Thank you.

17          Okay.  Let me just say what a pleasure it's been to

18   work with Judge Kugler.  And I'll continue to work until May

19   31st.  He's the outstanding jurist in this proceeding.  A

20   fantastic, fantastic judge.

21          So we're going to hear argument on this motion for

22   leave to file a second amended answer.

23          Who will be arguing on behalf of ZHP?  It's ZHP's

24   motion.

25          MR. MARTIN:  It is, Your Honor.  And I will, Zachary

1    Martin, Skadden, Arps, Slate, Meagher & Flom.

2              SPECIAL MASTER VANASKIE:  All right.  And do we have

3    anyone on the phone from the -- I think it's Teva that has

4    moved now to join in this second amended answer?  Or motion

5    for leave.

6              MS. ANDRAS:  Yes, Your Honor.  Yes, Your Honor.

7              SPECIAL MASTER VANASKIE:  I'm not going to put you on

8    the spot and call on you today.  I just wanted to note for the

9    record that a motion was filed yesterday seeking to join in

10   this particular motion.

11             And I take it also for the purpose of asserting the

12   defenses that ZHP proposes to assert?

13             MS. ANDRAS:  That's correct, Your Honor.  It's just

14   asking that if the Court were so inclined to grant ZHP leave

15   to amend their answers, that Teva and Torrent would want the

16   same opportunity.

17             SPECIAL MASTER VANASKIE:  All right.  Thank you.

18   Thank you for that.

19             Now, who will be addressing this matter for the

20   plaintiffs?

21             MR. NIGH:  Your Honor, Daniel Nigh for the

22   plaintiffs.

23             SPECIAL MASTER VANASKIE:  All right, thanks.  Thanks,

24   Mr. Nigh.

25             Well, it's your motion, Mr. Martin, so we'll hear

1   from you first.

2          MR. MARTIN:  Thank you, Your Honor.

3          I'd like to start with the merits of the proposed

4   defenses and the futility issue, and then I'll move on to the

5   other amendment factors of timeliness and prejudice.  And I'll

6   try to be quick with everything.

7          As Your Honor knows, there are two assignments at

8   issue.  The first one is from EmblemHealth and has a New York

9   choice of law clause.  I think everyone agrees that the

10  governing law for that one is Section 489 of the New York

11  Judiciary Law which prohibits a corporation from soliciting,

12  buying, or taking an assignment with the intent and for the

13  purpose of suing -- or, excuse me, for bringing an action

14  thereon.  And really --

15         SPECIAL MASTER VANASKIE:  What's the language in the

16  assignment?  The assignment is attached as -- let me look

17  through this binder I have in front of me now.

18         MR. MARTIN:  It is, Your Honor.

19         SPECIAL MASTER VANASKIE:  Exhibit 1 to the --

20         MR. MARTIN:  I'm brining it up right now on my

21  computer as well.

22         SPECIAL MASTER VANASKIE:  So what language in that

23  assignment are you relying on to claim that this is a

24  champertous agreement?

25         MR. MARTIN:  Your Honor, if I can just pull up the

1  assignment, because I do want to get the language exactly

2  correct.

3            SPECIAL MASTER VANASKIE:  Sure.  Take your time.

4            MR. MARTIN:  Your Honor, I would have a couple

5  answers to that.

6            The first one is on page 1 of the assignment, the

7  second paragraph of the preamble, where it says -- excuse me.

8            Excuse me.  I'm sorry, Your Honor.

9            Well, there's actually several places in the

10  assignment that reference litigation, Your Honor, but I think

11  the particular point that we may have cited in our papers

12  is -- comes under the Purpose of Assignment clause, which is

13  paragraph 3 on page 3.

14            The assignor makes and assignee accepts

15  the assignment of the assigned --

16            (Court reporter clarification.)

17            SPECIAL MASTER VANASKIE:  I know you're trying to

18  hurry, Mr. Martin, but a little bit --

19            MR. MARTIN:  I understand.  I apologize,

20  Ms. Mitchell.

21            So it's the first sentence here under paragraph 3 of

22  the assignment.  Assignor makes and assignee accepts this

23  assignment of the assigned Medicare claims in order to

24  facilitate assignee's ability to initiate and pursue the

25  recovery of the assigned Medicare recovery claims, including

1    in any litigation, such as but not limited to mass tort

2    actions, class actions and multidistrict litigation.

3         And, Your Honor, I think it's important that if you

4    look at plaintiffs' brief, they quote this assignment a little

5    bit selectively.

6         Your Honor, on page 14 of their brief, they --

7         SPECIAL MASTER VANASKIE:  I'll ask you to wait a

8    second.  Let me get there.

9         MR. MARTIN:  Yes, Your Honor.

10        SPECIAL MASTER VANASKIE:  You mean page 11?

11        MR. MARTIN:  I mean ECF page 14, which I believe is

12   actually page 10.

13        SPECIAL MASTER VANASKIE:  You are correct.  Let me

14   get there.

15        All right.

16        MR. MARTIN:  So right at the bottom of the page, you

17   can see that they're quoting this as saying:  Through methods

18   including, but not limited to, litigation.  "But not limited

19   to" is in italics but it's notably not in quotation marks.

20        And so I have looked for that language in the

21   EmblemHealth assignment.  I can't find it.  As far as I can

22   tell in the assignment, the only --

23        SPECIAL MASTER VANASKIE:  But the language is there

24   that says including litigation.

25        MR. MARTIN:  It does say including litigation, Your

1    Honor.  But I would say that -- well, I would have two answers

2    to that.

3            One is that plaintiffs have to come forward with

4    something more than speculation about what -- about that they

5    might use some other method to recover.

6            SPECIAL MASTER VANASKIE:  Why do plaintiffs have to

7    come forward with anything when it's an affirmative defense

8    and it's your burden?

9            MR. MARTIN:  Well, Your Honor, it is an affirmative

10   defense and it's our burden to prove at trial, but at this

11   point it's a 12(b)(6) burden.  And so I don't think we have to

12   come forward with evidence to prove at this point to sustain a

13   verdict, to survive summary judgment, to submit a case to the

14   jury.

15           But I think that the jury could infer from MSP's

16   business model, from the fact that they have not -- from the

17   fact that they ordinarily sue on these assignments, from the

18   fact that they, as far as I know, did not attempt to collect

19   in any way before filing suit on the assignment, the jury

20   could infer from that that the primary purpose of the

21   assignment was to sue on it.

22           I think a primary purpose question is one that's

23   uniquely -- or not uniquely, but very ill suited for a

24   12(b)(6) analysis, Your Honor.

25           SPECIAL MASTER VANASKIE:  So are you suggesting then

1  that there will be discovery to determine whether the primary

2  purpose of this assignment was litigation?

3       MR. MARTIN:  I don't believe discovery is necessary,

4  Your Honor.  I think that the facts about this are already

5  well established.  They're well known.  What's disputed is the

6  inferences that could be drawn from those facts.  And that's

7  within the realm of the jury, but it is not something that

8  necessarily requires additional discovery.

9       SPECIAL MASTER VANASKIE:  Anything else?

10       MR. MARTIN:  Well, if I could turn to the Ohio

11  assignment, Your Honor.

12       SPECIAL MASTER VANASKIE:  All right.

13       Now, this -- let's go back to the Emblem assignment.

14       This assignment covered a six-year period, as I

15  understand it, from September 29, 2011 to September 29, 2017.

16  So it's not an assignment that concerned only the claims in

17  the valsartan litigation.

18       MR. MARTIN:  I agree with that, Your Honor.  I don't

19  know that that is dispositive.  I understand that most of the

20  cases that arise in this context, certainly the *Justinian*

21  *Capital* case, the *Merrill Lynch* case, do involve specific

22  securities or specific packages of things.  This is a broader

23  assignment than most.  But I'm not aware of anything in the --

24  in Section 489 that would render that relevant to the

25  champerty question.

1          Turning to the Ohio assignment, if I may now, Your

2     Honor, the SummaCare assignment.

3          SPECIAL MASTER VANASKIE:  You may.

4          MR. MARTIN:  There are two, as you know from our

5     papers, interrelated issues in Ohio law, but I think the more

6     straightforward one is the -- what we call the contingent

7     interest question that comes out of *West Broad Chiropractic v.*

8     *American Family Insurance*.  And I think there's really no

9     daylight between that case and this one.

10          In that case, like here, there -- someone had been

11     injured.  They could have -- or had been allegedly injured.

12     They could have brought a suit themselves.  They assigned it

13     to someone else prior to doing so but after it had accrued.

14     And the Ohio Supreme Court said, no, if you have not

15     established liability and you have not established damages,

16     that interest is not -- is too contingent to be assigned.

17          And I just think there's no daylight between that

18     case and this one.  At the time SummaCare assigned its rights

19     here, they had not established the right to any damages.  They

20     had not established any damages.  That's why we're going to

21     ultimately have a trial in this case.  And so I think *West*

22     *Broad* really controls this case with respect to the SummaCare

23     assignment.

24          But I just want to talk on common law champerty in

25     Ohio very quickly, because plaintiffs argue that

1  Section 1349.55 of the Ohio Code abrogated the common law in

2  that respect, and that's just not true.

3        The statute itself sets disclosure requirements.  It

4  says nothing about the common law.  We cited the *Hiles* case

5  that postdates the statute and that dismisses on champerty

6  grounds.

7        I'd also point to a case that I'm not sure was in our

8  papers but from Judge Shipp in this court which was brought by

9  these plaintiffs, *MSP v. Abbott Health*, in which the

10 defendants moved to dismiss on the pleadings arguing Ohio

11 champerty.  The court denied the motion, but it denied the

12 motion because it's a fact issue, not because champerty no

13 longer exists in Ohio.

14        So if Your Honor has further questions on the merits,

15 I'm happy to answer them.  Otherwise, I'd like to move to

16 delay and prejudice.

17        SPECIAL MASTER VANASKIE:  Yeah, why don't you move to

18 delay and prejudice.

19        MR. MARTIN:  Sure.  Thank you, Your Honor.

20        So as to the delay issue, I think we cite case after

21 case in the Third Circuit that says delay alone is not

22 sufficient to justify denial of leave to amend.  And even if

23 the delay is the result of attorney inadvertence, even if the

24 court believes that the amendment should have happened or

25 could have happened earlier, that is not by itself

1  determinative.

2       So plaintiffs have to show prejudice, which *Ajax v.*

3  *Fiy* -- excuse me, *Fay* defines as an opportunity to present

4  facts or evidence that would have been offered.

5       Your Honor hit earlier on a common type of prejudice,

6  which is the need to reopen discovery.  That obviously has no

7  application here, because even if we pled this in our initial

8  answer in December, discovery still would have been closed, so

9  we would have been in no different of a position with respect

10 to discovery.

11      Plaintiffs point to the fact that they have already

12 filed a motion for summary judgment.  Judge Kugler addressed

13 that squarely in *Venuto v. Atlantis Motor Group* where the

14 plaintiff made the same argument.  They said, we've already

15 filed a motion for summary judgment, and it's -- it didn't

16 take into account this revision in your pleadings.  And Judge

17 Kugler said that's just not enough to overcome the liberal

18 policy in favor of amendment.

19      And I think that's particularly true because nothing

20 would prevent plaintiffs, especially now that we have delayed

21 the trial past this spring, from filing a supplemental motion

22 for summary judgment.

23      So what the issue really is, is that it would require

24 additional work, additional expenditure of funds.  And I

25 recognize that, though I don't know how much more difficult it

1  is to file a supplemental motion now than with the previous

2  motion.

3          But, again, *Venuto* says, as do several other cases

4  from the District of New Jersey, that the need to expend

5  additional resources, the need to do additional work, the need

6  in *Venuto*, for instance, to take an additional deposition is

7  simply not sufficient to overcome the preference for deciding

8  these issues on the merits under Rule 15.

9          So that's my presentation.  I'm happy to answer any

10  questions Your Honor has.  Otherwise, I will rest on our

11  papers.

12          SPECIAL MASTER VANASKIE:  We'll hear from Mr. Nigh

13  now.

14          MR. MARTIN:  Thank you.

15          MR. NIGH:  Good afternoon, Your Honor.  Daniel Nigh

16  for the plaintiffs.

17          SPECIAL MASTER VANASKIE:  Good afternoon.

18          MR. NIGH:  First I'll address why allowing this

19  amendment would be prejudicial to the plaintiffs --

20          (Court reporter clarification.)

21          MR. NIGH:  First I'll address why allowing this

22  amendment would be prejudicial to the plaintiffs and then why

23  this amendment would be futile.

24          First, pursuant to CMO 32B, the TPP trial defendants

25  were be obligated to file their affirmative defenses by

1    December 7, 2023.  Defendants failed to file these affirmative

2    defenses by that date.

3         Since then, the TPP parties have completed all the

4    summary judgment briefing, and defendants failed yet again to

5    raise these affirmative defenses before the close of summary

6    judgment briefing.  They even amended their complaint

7    afterwards and yet again did not seek to include this

8    affirmative defense.

9         Now the Court has issued its order regarding summary

10   judgment.

11        In addition, the TPP parties have completed

12   exchanging their pretrial papers and their trial briefs.

13        Your Honor -- and Judge Kugler has ordered there be

14   no further briefing by the parties for the TPP trial.

15        These affirmative defenses come as a shock to

16   plaintiffs and were hardly mentioned in the thousands and

17   thousands of pages of briefing in this case.  Defendants point

18   to one paragraph in a 40-page brief filed nearly two years ago

19   as if this serves as adequate notice to plaintiffs.  It does

20   not.

21        Allowing amendment to add these affirmative defenses

22   would lead to a slippery slope.

23        First, plaintiffs would need to be able to file a

24   motion for summary judgment and include a declaration from MSP

25   and its assignors.  We suspect that defendants would then

1  insist on deposing the declarants, and I doubt the defendants

2  would agree today not to seek depositions of declarants.

3       Finally, allowing amendment of these affirmative

4  defenses would throw this trial into turmoil and simply serve

5  as a distraction while plaintiffs are preparing for trial as

6  opposed to wasting time and resources on a futile affirmative

7  defense.

8       Now, I want to talk about the futility of this

9  affirmative defense.

10      In order to understand how these affirmative defenses

11 are futile, it's important to understand the nature of these

12 assignments.  And I'll raise that this is a contract law

13 issue, not an issue for interpretation by the jury.

14      First, the assignments from SummaCare and Emblem were

15 in 2017 and March of 2018 before any recall of valsartan was

16 announced.  These assignments' primary purpose is to be able

17 to recover monies that SummaCare and Emblem paid wherein other

18 sources should have been the primary payer.  In fact, that's

19 what the plaintiff's name stands for.  It's MSP, which stands

20 for Medicare Secondary Payer Act, and alludes to the 1980

21 Medicare Secondary Payer Act that describes when other

22 insurances are the primary payer and Medicare is the secondary

23 payer.

24      The MSP plaintiff finds situations where these

25 assignors made payments for health coverage that should have

1    been primarily paid by other insurance companies, like car

2    insurance for a car wreck or workmen's comp for a work jury.

3    Once MSP finds these situations, then MSP reaches out to the

4    other insurances, like the car insurance or the workmen's comp

5    insurance, to recover the proceeds that its assignors paid

6    that should have been primarily paid by the other insurance

7    companies.  This is referenced all throughout the assignments.

8         In many instances, this recovery can be made without

9    use of litigation.  This model that MSP uses is similar to

10   subrogation that many insurance companies use and assignments

11   that mortgage companies use and many other industry --

12   industry companies employ.  And, in fact, you can even see

13   them on Emblem page 2 of 17.  It discusses how MSP Recovery

14   would use commercially reasonable means when they're

15   available.

16        I'll turn my attention to the applicable law on

17   champerty.

18        First, Ohio law.  First, according to Ohio law,

19   champerty was largely abrogated as a defense when the Ohio

20   legislature enacted Section 1349.55.  Because champerty and

21   maintenance have been abolished by Ohio legislature, the TPP

22   defendants cannot now raise it as an affirmative defense.

23        Next, the TPP defendants misstate the now abolished

24   Ohio common law affirmative defense of champerty.  Under the

25   prior law, champerty was defined as a form of maintenance in

1   which a nonparty undertakes to further another's interest in a

2   suit.  MSP is a party to this action, not a nonparty; and,

3   therefore, this now abolished Ohio common law champerty

4   defense would not have applied to the MSP anyways.

5          Next, SummaCare assigned its present rights when they

6   made those assignments, not future rights.  Unlike the case

7   law cited by defendants, here the Medicare Secondary Payer Act

8   established liability as to who was responsible for certain

9   payments.  That's established, and it's detailed in 1980.

10  That discusses who would be the primary payer.  Like in a car

11  accident, the primary payer would be the car insurance

12  company, and then the Medicare company -- the Medicare payer

13  would be secondary in those situations.  So that's

14  established.  Very different than the sorts of facts that the

15  defendant cited.

16         And so SummaCare assigned its present rights to MSP,

17  which included the right to recover monies that SummaCare

18  already paid that should have been paid by another insurance

19  company pursuant to the Medicare Secondary Payer Act.

20         Now, next I'll turn my attention to New York law.

21         New York law states that champerty is only a defense

22  when the assignment of claims was for the primary and only

23  purpose of pursuing the litigation.  Here, the primary purpose

24  of the assignments from Emblem and SummaCare to MSP was

25  clearly not to pursue litigation related to these recalled

1    valsartan medications.  The assignments for Emblem and

2    SummaCare were initially entered in 2017, in March of 2018,

3    before any recalls of valsartan were announced in the summer

4    of 2018.

5         Further, the primary purpose of these assignments is

6    not from litigation but rather to recover monies paid by its

7    assignors for healthcare coverage that should have primarily

8    been paid by other insurance companies.  This money is often

9    recovered through non-litigation means such as demand letters

10   and other economic recovery means.  And the assignment refers

11   to this recovery through commercially reasonable efforts

12   quoted on page 2 of the SummaCare assignment and page 3 of the

13   EmblemHealth assignment.

14        And then I'll just briefly talk about *Justinian* and

15   other case law that the defendants cite from New York.

16        The assignments in those cases are very specific to

17   the litigation that was brought in those cases, which

18   defendants even agree here today, they concede is much

19   different than the situation we're dealing with in this

20   valsartan case.

21        In addition, in *Justinian* and other cases the

22   defendants cite, the timing of the lawsuit was a very

23   important aspect, the timing vis-a-vis the assignment was a

24   very important factor, looked at in both of those cases.  The

25   timing of the lawsuit in *Justinian*, they filed a lawsuit days

1  after the assignment was given, so the purpose of it was very

2  clear.  There's an assignment, and then right thereafter, days

3  later, there's a lawsuit filed by the party who now held the

4  assignment.

5       Here, that couldn't be further from the truth.  I

6  mean, these assignments happened before there was even

7  knowledge about the valsartan claims.  And they were present

8  rights, because the MSP parties paid for medications that they

9  shouldn't have paid for because the medications that should

10 never have been sold in the first place.  That's the theme of

11 the case -- the theory of the case.

12      So with that, I think at this point, I will wrap up

13 and just say, first, it would be prejudicial to the plaintiffs

14 based on the timing; and, second, it would be futile, even if

15 the amendments were allowed.

16      SPECIAL MASTER VANASKIE:  All right.  Mr. Martin, any

17 reply?

18      MR. MARTIN:  Yes, Your Honor.  And I'll be very, very

19 brief on this.  I'll touch on prejudice first.

20      This is not an eve of trial case.  We don't have a

21 trial date at this point.  We didn't have a trial date at this

22 point even before Judge Kugler informed us this morning that

23 he's going to be stepping away.  So I think this stands in

24 stark contrast to some of the cases plaintiffs cite.

25      The Third Circuit case they cite, *DLJ Mortgage*, is

1    about an assignment the night before trial is set to begin.

2    So the fact that there may be additional summary judgment

3    briefing, I don't think there needs to be additional

4    discovery, but even if there were additional discovery, that

5    would just take it within the realm of something like *Venuto*,

6    where the prejudice --

7         SPECIAL MASTER VANASKIE:  Are you willing,

8    Mr. Martin, to forego depositions of declarants if this matter

9    was to proceed forward and declarations were submitted on

10   behalf of the plaintiffs or on behalf of MSP?

11        MR. MARTIN:  Your Honor, it is my suspicion that they

12   would not be necessary, but I am not in a position to obligate

13   our clients for that.  I would have to communicate with our

14   trial counsel.  And I'm happy to do so and get back to you

15   shortly in writing, if that would be helpful to Your Honor.

16        SPECIAL MASTER VANASKIE:  I don't think that's

17   necessary, but please proceed with your argument.

18        MR. MARTIN:  So, again, I just would say that trial

19   remains a long way off.  This is not the eve of trial.  But

20   even if it were, Rule 15(b) actually contemplates amendment

21   during trial.  And we cited the *Heyl & Patterson* case, which

22   was an amendment at opening statement.

23        Moving on to the futility or merits of the defense,

24   starting in Ohio, Mr. Nigh said that this case is different

25   because the MSP Act established liability already.

1    This isn't an MSP Act case.  This is a state common

2  law case.  To the extent liability had been established under

3  the state common law, the exact same thing was true in the

4  *West Broad Chiropractic* case in which state common law

5  presumably established a right to recover based on being hit

6  by the tortfeasor and their insurance company's contract.

7    SPECIAL MASTER VANASKIE:  Now, doesn't the fact that

8  this agreement that's at issue here, the assignment agreement

9  or purchase agreement, the fact that it deals with so much

10  more than just the valsartan litigation take this out of the

11  realm of champerty?

12    MR. MARTIN:  I don't think so, Your Honor.  And as I

13  think I said when you asked before, I don't -- starting with

14  Ohio, I don't see anything in the sort of contingent future

15  interest bucket, the *West Broad Chiropractic* bucket, that

16  changes based on whether you are assigning one contingent

17  future interest or ten contingent future interests or an

18  unknown number of contingent future interests at once.

19    The reality is this is an abnormally large case, but

20  I don't think the principle of *West Broad Chiropractic*

21  changes.

22    With respect to what we'll call common law champerty,

23  I would say the same thing.  There is nothing in the

24  definition of champerty under Ohio law and certainly nothing

25  in the text of the Section 489 of the New York Statutes that

1  suggests that the rules change whether you assign one lawsuit

2  or ten lawsuits or an unknown number of lawsuits at one.

3         SPECIAL MASTER VANASKIE:  Now, are SummaCare and

4  Emblem parties to this litigation?

5         MR. MARTIN:  They are not, Your Honor.  But the same

6  could be said of the assignors in either of the Ohio cases.

7  *West Broad Chiropractic*, obviously the assignee was the party

8  to the case.  That's the chiropractic clinic that's named.

9  The same would be true of the *Hiles* case in Ohio federal court

10 involving common law champerty.

11        So I don't think the fact that the assignment is

12 complete and that MSP is suing in its own name rather than

13 back seat driving distinguishes it in any way from the cases

14 we cited in our papers.

15        SPECIAL MASTER VANASKIE:  Anything else, Mr. Martin?

16        MR. MARTIN:  No, Your Honor, unless you have any

17 further questions.

18        SPECIAL MASTER VANASKIE:  No, I don't.

19        Mr. Nigh, anything else?

20        MR. NIGH:  Yeah.  The only thing I'll add is that the

21 primary purpose of the assignment is not about the valsartan

22 case, it's primarily about Medicare Secondary Payer.  That's

23 why I cite the 1980 Medicare Secondary Payer Act, which

24 establishes the liability of who would be the primary payer

25 and who would be the secondary payer.  That's why the

1  liability established in those cases is much different than

2  the cases that defendants cite in terms of where the liability

3  is still unknown.

4          These assignments assigned present rights where the

5  assignors paid for payments where another insurance company

6  should have been the primary payer.  And so those rights,

7  they're already established and the liability is already

8  established pursuant to the 1980 Medicare Secondary Payer Act.

9          SPECIAL MASTER VANASKIE:  Thank you for that.

10          I take it this is a motion that I can decide and then

11  you'd have appeal rights to Judge Kugler or to the district

12  judge assigned to the matter?

13          MR. MARTIN:  That was my understanding until the ECF

14  notification I got this morning, Your Honor.  I got an ECF

15  notification this morning that suggested it was being referred

16  back to Judge Kugler.  But I know nothing beyond that.

17          SPECIAL MASTER VANASKIE:  Mr. Nigh?

18          MR. NIGH:  That was my understanding as well, Your

19  Honor.

20          SPECIAL MASTER VANASKIE:  All right.  Well, I intend

21  to decide this, and you'll receive a decision from me

22  promptly.

23          Anything else?

24          MR. MARTIN:  Not from me, Your Honor.

25          MR. NIGH:  No, Your Honor.

1          SPECIAL MASTER VANASKIE:  From plaintiffs?  All

2    right.

3          Well, thank you all very much.  I'll be in touch.

4    Take care.  Bye-bye.

5          (Proceedings concluded at 2:38 p.m.)

6                          -  -  -

7          I certify that the foregoing is a correct transcript

8    from the record of proceedings in the above-entitled matter.

9

10   */S/ Ann Marie Mitchell*          *28th day of March, 2024*

11   *Court Reporter/Transcriber*      *Date*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*

**#**

**#1049** [1] - 1:14

**/**

**/S** [1] - 27:10

**0**

**02116** [1] - 1:18
**08101** [1] - 1:7

**1**

**1** [2] - 8:19, 9:6
**10** [1] - 10:12
**11** [1] - 10:10
**12(b)(6** [2] - 11:11, 11:24
**1333** [1] - 1:14
**1349.55** [2] - 14:1, 19:20
**14** [2] - 10:6, 10:11
**15** [1] - 16:8
**15(b** [1] - 23:20
**17** [1] - 19:13
**19-md-02875** [1] - 1:3
**1980** [4] - 18:20, 20:9, 25:23, 26:8

**2**

**2** [2] - 19:13, 21:12
**2011** [1] - 12:15
**2017** [3] - 12:15, 18:15, 21:2
**2018** [3] - 18:15, 21:2, 21:4
**2023** [1] - 17:1
**2024** [2] - 1:7, 27:10
**27** [1] - 1:7
**28th** [1] - 27:10
**29** [2] - 12:15
**2:01** [2] - 1:8, 3:3
**2:38** [1] - 27:5

**3**

**3** [4] - 9:13, 9:21, 21:12
**3100** [1] - 2:4
**31st** [2] - 4:2, 6:19
**32** [1] - 4:1
**32563** [1] - 1:15
**32B** [1] - 16:24

**4**

**40-page** [1] - 17:18
**489** [3] - 8:10, 12:24, 24:25
**4th** [1] - 1:6

**5**

**50** [1] - 5:6
**500** [1] - 1:18
**576-7018** [1] - 1:23

**6**

**60601** [1] - 2:5

**7**

**7** [1] - 17:1
**77** [1] - 2:4

**8**

**856** [1] - 1:23

**A**

**Abbott** [1] - 14:9
**ability** [1] - 9:24
**able** [5] - 4:3, 4:13, 4:14, 17:23, 18:16
**abnormally** [1] - 24:19
**abolished** [3] - 19:21, 19:23, 20:3
**above-entitled** [1] - 27:8
**abrogated** [2] - 14:1, 19:19
**accepts** [2] - 9:14, 9:22
**accident** [1] - 20:11
**according** [1] - 19:18
**account** [1] - 15:16
**accrued** [1] - 13:13
**Act** [8] - 18:20, 18:21, 20:7, 20:19, 23:25, 24:1, 25:23, 26:8
**Actavis** [2] - 2:6, 2:6
**action** [3] - 6:2, 8:13, 20:2
**ACTION** [1] - 1:2
**actions** [2] - 10:2
**add** [2] - 17:21, 25:20
**addition** [2] - 17:11, 21:21
**additional** [9] - 12:8, 15:24, 16:5, 16:6, 23:2, 23:3, 23:4
**address** [2] - 16:18, 16:21
**addressed** [1] - 15:12
**addressing** [1] - 7:19
**adequate** [1] - 17:19
**afternoon** [3] - 3:4, 16:15, 16:17
**afterwards** [1] - 17:7
**ago** [4] - 4:4, 5:6, 5:11, 17:18

**agree** [3] - 12:18, 18:2, 21:18
**agreement** [4] - 8:24, 24:8, 24:9
**agrees** [1] - 8:9
**aided** [1] - 1:25
**Ajax** [1] - 15:2
**allegedly** [1] - 13:11
**allowed** [1] - 22:15
**allowing** [4] - 16:18, 16:21, 17:21, 18:3
**alludes** [1] - 18:20
**almost** [2] - 4:1, 5:6
**alone** [1] - 14:21
**ALSO** [1] - 2:8
**amend** [2] - 7:15, 14:22
**amended** [3] - 6:22, 7:4, 17:6
**amendment** [10] - 8:5, 14:24, 15:18, 16:19, 16:22, 16:23, 17:21, 18:3, 23:20, 23:22
**amendments** [1] - 22:15
**American** [1] - 13:8
**analysis** [1] - 11:24
**ANDRAS** [3] - 2:4, 7:6, 7:13
**Ann** [2] - 1:22, 27:10
**AnnMarie_Mitchell@njd.uscourts.gov** [1] - 1:23
**announced** [2] - 18:16, 21:3
**another's** [1] - 20:1
**answer** [5] - 6:22, 7:4, 14:15, 15:8, 16:9
**answers** [4] - 3:21, 7:15, 9:5, 11:1
**anyhow** [1] - 5:1
**anyway** [1] - 5:1
**anyways** [1] - 20:4
**apologize** [2] - 4:3, 9:19
**appeal** [1] - 26:11
**applicable** [1] - 19:16
**application** [1] - 15:7
**applied** [1] - 20:4
**appreciate** [1] - 6:4
**appreciated** [1] - 5:22
**argue** [1] - 13:25
**arguing** [2] - 6:23, 14:10
**argument** [3] - 6:21, 15:14, 23:17
**arise** [2] - 3:18, 12:20
**ARPS** [1] - 1:17
**Arps** [1] - 7:1

**aspect** [1] - 21:23
**assert** [1] - 7:12
**asserting** [1] - 7:11
**assign** [1] - 25:1
**assigned** [10] - 9:15, 9:23, 9:25, 13:12, 13:16, 13:18, 20:5, 20:16, 26:4, 26:12
**assignee** [3] - 9:14, 9:22, 25:7
**assignee's** [1] - 9:24
**assigning** [1] - 24:16
**assignment** [36] - 8:12, 8:16, 8:23, 9:1, 9:6, 9:10, 9:15, 9:22, 9:23, 10:4, 10:21, 10:22, 11:19, 11:21, 12:2, 12:11, 12:13, 12:14, 12:16, 12:23, 13:1, 13:2, 13:23, 20:22, 21:10, 21:12, 21:13, 21:23, 22:1, 22:2, 22:4, 23:1, 24:8, 25:11, 25:21
**Assignment** [1] - 9:12
**assignments** [13] - 8:7, 11:17, 18:12, 18:14, 19:7, 19:10, 20:6, 20:24, 21:1, 21:5, 21:16, 22:6, 26:4
**assignments'** [1] - 18:16
**assignor** [2] - 9:14, 9:22
**assignors** [6] - 17:25, 18:25, 19:5, 21:7, 25:6, 26:5
**Atlantis** [1] - 15:13
**attached** [1] - 8:16
**attempt** [1] - 19:14
**attention** [2] - 19:16, 20:20
**attorney** [1] - 14:23
**available** [1] - 19:15
**aware** [1] - 12:23

**B**

**background** [1] - 3:16
**bad** [1] - 5:21
**based** [3] - 22:14, 24:5, 24:16
**began** [1] - 5:6
**begin** [1] - 23:1
**behalf** [3] - 6:23, 23:10
**believes** [1] - 14:24
**bellwether** [3] - 4:19, 4:24

**best** [2] - 3:14, 3:22
**better** [1] - 3:15
**between** [2] - 13:9, 13:17
**beyond** [1] - 26:16
**binder** [1] - 8:17
**bit** [2] - 9:18, 10:5
**Boston** [1] - 1:18
**bottom** [1] - 10:16
**Boylston** [1] - 1:18
**Breeze** [1] - 1:15
**brief** [4] - 10:4, 10:6, 17:18, 22:19
**briefing** [5] - 17:4, 17:6, 17:14, 17:17, 23:3
**briefly** [1] - 21:14
**briefs** [1] - 17:12
**bring** [2] - 5:16, 6:6
**bringing** [1] - 8:13
**brining** [1] - 8:20
**Broad** [6] - 13:7, 13:22, 24:4, 24:15, 24:20, 25:7
**broader** [1] - 12:22
**brought** [3] - 13:12, 14:8, 21:17
**bucket** [2] - 24:15
**Building** [1] - 1:6
**burden** [3] - 11:8, 11:10, 11:11
**business** [1] - 11:16
**buying** [1] - 8:12
**bye** [3] - 6:14, 27:4
**bye-bye** [1] - 27:4

**C**

**Camden** [1] - 1:7
**cannot** [1] - 19:22
**Capital** [1] - 12:21
**car** [5] - 19:1, 19:2, 19:4, 20:10, 20:11
**care** [1] - 27:4
**career** [1] - 5:8
**case** [41] - 3:24, 3:25, 4:3, 4:8, 4:10, 5:23, 5:24, 5:25, 6:2, 6:8, 11:13, 12:21, 13:9, 13:10, 13:18, 13:21, 13:22, 14:4, 14:7, 14:20, 14:21, 17:17, 20:6, 21:15, 21:20, 22:11, 22:20, 22:25, 23:21, 23:24, 24:1, 24:2, 24:4, 24:19, 25:8, 25:9, 25:22
**cases** [12] - 4:12, 12:20, 16:3, 21:16, 21:17, 21:21, 21:24,

22:24, 25:6, 25:13, 26:1, 26:2
**CCR** [1] - 1:22
**certain** [1] - 20:8
**certainly** [2] - 12:20, 24:24
**certify** [1] - 27:7
**champertous** [1] - 8:24
**champerty** [16] - 12:25, 13:24, 14:5, 14:11, 14:12, 19:17, 19:19, 19:20, 19:24, 19:25, 20:3, 20:21, 24:11, 24:22, 24:24, 25:10
**change** [1] - 25:1
**changes** [2] - 24:16, 24:21
**Chicago** [1] - 2:5
**Chiropractic** [5] - 13:7, 24:4, 24:15, 24:20, 25:7
**chiropractic** [1] - 25:8
**choice** [1] - 8:9
**Circuit** [2] - 14:21, 22:25
**cite** [7] - 14:20, 21:15, 21:22, 22:24, 22:25, 25:23, 26:2
**cited** [6] - 9:11, 14:4, 20:7, 20:15, 23:21, 25:14
**CIVIL** [1] - 1:2
**claim** [1] - 8:23
**claims** [5] - 9:23, 9:25, 12:16, 20:22, 22:7
**clarification** [2] - 9:16, 16:20
**class** [1] - 10:2
**clause** [2] - 8:9, 9:12
**clear** [1] - 22:2
**clearly** [1] - 20:25
**Clerk** [1] - 2:10
**clients** [2] - 3:19, 23:13
**clinic** [1] - 25:8
**close** [1] - 17:5
**closed** [1] - 15:8
**CMO** [1] - 16:24
**Code** [1] - 14:1
**Cohen** [1] - 1:6
**collect** [1] - 11:18
**College** [1] - 1:14
**Commencing** [1] - 1:8
**commercially** [2] - 19:14, 21:11
**commitments** [1] - 4:6
**common** [11] - 13:24, 14:1, 14:4, 15:5,

19:24, 20:3, 24:1, 24:3, 24:4, 24:22, 25:10
**communicate** [1] - 23:13
**comp** [2] - 19:2, 19:4
**companies** [6] - 19:1, 19:7, 19:10, 19:11, 19:12, 21:8
**company** [4] - 20:12, 20:19, 26:5
**company's** [1] - 24:6
**complaint** [1] - 17:6
**complete** [1] - 25:12
**completed** [4] - 5:8, 17:3, 17:11
**computer** [2] - 1:25, 8:21
**computer-aided** [1] - 1:25
**concede** [1] - 21:18
**conception** [1] - 5:7
**concerned** [1] - 12:16
**concluded** [1] - 27:5
**conduct** [1] - 4:17
**consequently** [1] - 4:24
**contact** [1] - 4:9
**contemplates** [1] - 23:20
**context** [1] - 12:20
**contingent** [6] - 13:6, 13:16, 24:14, 24:16, 24:17, 24:18
**continue** [2] - 6:5, 6:18
**Continued** [1] - 2:2
**contract** [2] - 18:12, 24:6
**contrast** [1] - 22:24
**controls** [1] - 13:22
**Cooper** [1] - 1:6
**corporation** [1] - 8:11
**correct** [4] - 7:13, 9:2, 10:13, 27:7
**counsel** [1] - 23:14
**country** [1] - 4:12
**couple** [2] - 4:4, 9:4
**Court** [4] - 1:22, 9:16, 13:14, 27:11
**COURT** [1] - 1:1
**court** [3] - 14:8, 16:20, 25:9
**courthouse** [1] - 3:16
**Courthouse** [1] - 1:6
**Courtroom** [1] - 1:7
**coverage** [2] - 18:25, 21:7
**covered** [1] - 12:14
**cross** [1] - 6:6

**CRR** [1] - 1:22

**D**

**damages** [3] - 13:15, 13:19, 13:20
**Daniel** [2] - 7:21, 16:15
**DANIEL** [1] - 1:14
**Date** [1] - 27:11
**date** [4] - 6:6, 17:2, 22:21
**daylight** [2] - 13:9, 13:17
**days** [2] - 21:25, 22:2
**dealing** [1] - 21:19
**deals** [1] - 24:9
**December** [2] - 15:8, 17:1
**decide** [5] - 4:20, 4:23, 5:2, 26:10, 26:21
**decided** [2] - 4:1, 5:1
**deciding** [1] - 16:7
**decision** [1] - 26:21
**declarants** [3] - 18:1, 18:2, 23:8
**declaration** [1] - 17:24
**declarations** [1] - 23:9
**defendant** [1] - 20:15
**defendants** [14] - 14:10, 16:24, 17:1, 17:4, 17:17, 17:25, 18:1, 19:22, 19:23, 20:7, 21:15, 21:18, 21:22, 26:2
**Defendants** [2] - 1:19, 2:5
**defense** [11] - 11:7, 11:10, 17:8, 18:7, 18:9, 19:19, 19:22, 19:24, 20:4, 20:21, 23:23
**defenses** [9] - 7:12, 8:4, 16:25, 17:2, 17:5, 17:15, 17:21, 18:4, 18:10
**defined** [1] - 19:25
**defines** [1] - 15:3
**definition** [1] - 24:24
**delay** [5] - 14:16, 14:18, 14:20, 14:21, 14:23
**delayed** [1] - 15:20
**demand** [1] - 21:9
**denial** [1] - 14:22
**denied** [2] - 14:11
**deposing** [1] - 18:1
**deposition** [1] - 16:6
**depositions** [2] - 18:2, 23:8

**Deputy** [1] - 2:11
**describes** [1] - 18:21
**desire** [1] - 4:10
**detailed** [1] - 20:9
**determinative** [1] - 15:1
**determine** [1] - 12:1
**different** [6] - 4:20, 15:9, 20:14, 21:19, 23:24, 26:1
**difficult** [2] - 5:23, 15:25
**disclosure** [1] - 14:3
**discovery** [8] - 12:1, 12:3, 12:8, 15:6, 15:8, 15:10, 23:4
**discusses** [2] - 19:13, 20:10
**dismiss** [1] - 14:10
**dismisses** [1] - 14:5
**dispositive** [1] - 12:19
**disputed** [1] - 12:5
**distinguishes** [1] - 25:13
**distraction** [1] - 18:5
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [3] - 4:11, 16:4
**district** [1] - 26:11
**DLJ** [1] - 22:25
**done** [3] - 4:3, 5:23, 6:3
**doubt** [1] - 18:1
**down** [1] - 4:2
**drawn** [1] - 12:6
**dream** [1] - 5:7
**Drive** [1] - 2:4
**driving** [1] - 25:13
**during** [1] - 23:21

**E**

**ECF** [3] - 10:11, 26:13, 26:14
**economic** [1] - 21:10
**effective** [1] - 4:2
**efforts** [1] - 21:11
**either** [1] - 25:6
**Emblem** [7] - 12:13, 18:14, 18:17, 19:13, 20:24, 21:1, 25:4
**EmblemHealth** [3] - 8:8, 10:21, 21:13
**employ** [1] - 19:12
**enacted** [1] - 19:20
**energy** [1] - 5:16
**entered** [1] - 21:2
**entitled** [1] - 27:8
**era** [1] - 6:11
**especially** [1] - 15:20

**Deputy** [1] - 2:11
**ESQUIRE** [4] - 1:14, 1:17, 2:4, 2:9
**established** [14] - 12:5, 13:15, 13:19, 13:20, 20:8, 20:9, 20:14, 23:25, 24:2, 24:5, 26:1, 26:7, 26:8
**establishes** [1] - 25:24
**eve** [2] - 22:20, 23:19
**evidence** [2] - 11:12, 15:4
**exact** [1] - 24:3
**exactly** [1] - 9:1
**exchanging** [1] - 17:12
**excuse** [4] - 8:13, 9:7, 9:8, 15:3
**Exhibit** [1] - 8:19
**exists** [1] - 14:13
**expend** [1] - 16:4
**expenditure** [1] - 15:24
**extent** [1] - 24:2

**F**

**facilitate** [1] - 9:24
**fact** [11] - 11:16, 11:17, 11:18, 14:12, 15:11, 18:18, 19:12, 23:2, 24:7, 24:9, 25:11
**factor** [1] - 21:24
**factors** [1] - 8:5
**facts** [4] - 12:4, 12:6, 15:4, 20:14
**failed** [2] - 17:1, 17:4
**Family** [1] - 13:8
**fantastic** [2] - 6:20
**far** [2] - 10:21, 11:18
**favor** [1] - 15:18
**Fay** [1] - 15:3
**federal** [1] - 25:9
**file** [5] - 6:22, 16:1, 16:25, 17:1, 17:23
**filed** [6] - 7:9, 15:12, 15:15, 17:18, 21:25, 22:3
**filing** [2] - 11:19, 15:21
**final** [1] - 4:15
**finally** [1] - 18:3
**first** [16] - 3:13, 5:6, 8:1, 8:8, 9:6, 9:21, 16:18, 16:21, 16:24, 17:23, 18:14, 19:18, 22:10, 22:13, 22:19
**Fiy** [1] - 15:3

**FLOM** [1] - 1:17
**Flom** [1] - 7:1
**Florida** [1] - 1:15
**forego** [1] - 23:8
**foregoing** [1] - 27:7
**form** [1] - 19:25
**forward** [5] - 5:24, 11:3, 11:7, 11:12, 23:9
**frankly** [2] - 5:14, 5:25
**front** [1] - 8:17
**fulfilling** [1] - 5:9
**funds** [1] - 15:24
**futile** [4] - 16:23, 18:6, 18:11, 22:14
**futility** [3] - 8:4, 18:8, 23:23
**future** [6] - 6:5, 20:6, 24:14, 24:17, 24:18

**G**

**given** [3] - 3:19, 3:20, 22:1
**GOLDENBERG** [1] - 1:13
**good-bye** [1] - 6:14
**governing** [1] - 8:10
**grant** [1] - 7:14
**great** [1] - 5:9
**GREENBERG** [1] - 2:3
**grounds** [1] - 14:6
**Group** [1] - 15:13
**Gulf** [1] - 1:15

**H**

**happy** [3] - 14:15, 16:9, 23:14
**hardly** [1] - 17:16
**health** [1] - 18:25
**Health** [1] - 14:9
**healthcare** [1] - 21:7
**Healthcare** [1] - 1:19
**hear** [4] - 3:5, 6:21, 7:25, 16:12
**HEARING** [1] - 1:4
**heck** [1] - 3:7
**held** [2] - 3:1, 22:3
**helpful** [1] - 23:15
**hereafter** [1] - 5:3
**Heyl** [1] - 23:21
**Hiles** [2] - 14:4, 25:9
**hit** [2] - 15:5, 24:5
**hold** [1] - 4:25
**Honor** [38] - 6:25, 7:6, 7:13, 7:21, 8:2, 8:7, 8:18, 8:25, 9:4, 9:8, 9:10, 10:3, 10:6, 10:9, 11:1, 11:9,

11:24, 12:4, 12:11, 12:18, 13:2, 14:14, 14:19, 15:5, 16:10, 16:15, 17:13, 22:18, 23:11, 23:15, 24:12, 25:5, 25:16, 26:14, 26:19, 26:24, 26:25
**HONORABLE** [1] - 1:9
**Honorable** [2] - 2:10, 3:1
**hope** [2] - 3:5, 6:5
**Huahai** [1] - 1:19
**hurry** [1] - 9:18

**I**

**idea** [2] - 4:21, 5:7
**ill** [1] - 11:23
**Illinois** [1] - 2:5
**important** [4] - 10:3, 18:11, 21:23, 21:24
**inadvertence** [1] - 14:23
**Inc** [2] - 2:6, 2:6
**inclined** [1] - 7:14
**include** [2] - 17:7, 17:24
**included** [1] - 20:17
**including** [4] - 9:25, 10:18, 10:24, 10:25
**Industries** [1] - 2:5
**industry** [2] - 19:11, 19:12
**infer** [2] - 11:15, 11:20
**inferences** [1] - 12:6
**informed** [1] - 22:22
**initial** [1] - 15:7
**initiate** [1] - 9:24
**injured** [2] - 13:11
**insist** [1] - 18:1
**instance** [1] - 16:6
**instances** [1] - 19:8
**Insurance** [1] - 13:8
**insurance** [11] - 19:1, 19:2, 19:4, 19:5, 19:6, 19:10, 20:11, 20:18, 21:8, 24:6, 26:5
**insurances** [2] - 18:22, 19:4
**integrity** [1] - 5:16
**intellect** [1] - 5:16
**intend** [1] - 26:20
**intent** [1] - 8:12
**interest** [3] - 1:7, 13:16, 20:1, 24:15, 24:17
**interesting** [1] - 5:24
**interests** [2] - 24:17, 24:18

interpretation [1] - 18:13
**interrelated** [1] - 13:5
**involve** [1] - 12:21
**involving** [1] - 25:10
**issue** [8] - 8:4, 8:8, 14:12, 14:20, 15:23, 18:13, 24:8
**issued** [1] - 17:9
**issues** [3] - 3:18, 13:5, 16:8
**italics** [1] - 10:19
**itself** [2] - 14:3, 14:25

**J**

**JERSEY** [1] - 1:1
**Jersey** [4] - 1:7, 4:11, 4:12, 16:4
**join** [2] - 7:4, 7:9
**JPMDL** [1] - 4:9
**judge** [10] - 4:1, 4:13, 4:16, 4:18, 4:22, 5:15, 6:8, 6:20, 26:12
**Judge** [11] - 5:4, 6:11, 6:15, 6:18, 14:8, 15:12, 15:16, 17:13, 22:22, 26:11, 26:16
**JUDGE** [1] - 1:9
**judges** [1] - 6:11
**judgment** [9] - 11:13, 15:12, 15:15, 15:22, 17:4, 17:6, 17:10, 17:24, 23:2
**Judicial** [1] - 2:10
**Judiciary** [1] - 8:11
**jurist** [1] - 6:19
**jury** [6] - 11:14, 11:15, 11:19, 12:7, 18:13, 19:2
**justify** [1] - 14:22
**Justinian** [4] - 12:20, 21:14, 21:21, 21:25

**K**

**keep** [1] - 6:7
**knowledge** [2] - 22:7
**known** [1] - 12:5
**knows** [1] - 8:7
**Kugler** [9] - 2:10, 6:16, 6:18, 15:12, 15:17, 17:13, 22:22, 26:11, 26:16
**KUGLER** [2] - 1:9, 3:2

**L**

**language** [5] - 8:15, 8:22, 9:1, 10:20,

10:23
**large** [1] - 24:19
**largely** [1] - 19:19
**LARRY** [1] - 2:11
**law** [24] - 5:6, 8:9, 8:10, 13:5, 13:24, 14:1, 14:4, 18:12, 19:16, 19:18, 19:24, 19:25, 20:3, 20:7, 20:20, 20:21, 21:15, 24:2, 24:3, 24:4, 24:22, 24:24, 25:10
**Law** [2] - 2:10, 8:11
**lawsuit** [5] - 21:22, 21:25, 22:3, 25:1
**lawsuits** [3] - 25:2
**lawyer** [1] - 5:20
**lawyers** [4] - 5:14, 5:15, 5:18, 5:25
**lead** [1] - 17:22
**least** [1] - 6:4
**leave** [7] - 4:8, 5:10, 5:11, 6:22, 7:5, 7:14, 14:22
**legislature** [2] - 19:20, 19:21
**letters** [2] - 3:17, 21:9
**liability** [8] - 13:15, 20:8, 23:25, 24:2, 25:24, 26:1, 26:2, 26:7
**LIABILITY** [1] - 1:4
**liberal** [1] - 5:17
**limine** [1] - 4:25
**limited** [3] - 10:1, 10:18
**LITIGATION** [1] - 1:4
**litigation** [16] - 9:10, 10:1, 10:2, 10:18, 10:24, 10:25, 12:2, 12:17, 19:9, 20:23, 20:25, 21:6, 21:9, 21:17, 24:10, 25:4
**LLC** [2] - 1:19, 2:6
**LLP** [2] - 1:17, 2:3
**logistical** [1] - 3:18
**look** [2] - 8:16, 10:4
**looked** [2] - 10:20, 21:24
**looking** [1] - 5:24
**LORETTA** [1] - 2:9
**Ltd** [2] - 1:20, 2:5
**Lynch** [1] - 12:21

**M**

**MACSTRAVIC** [1] - 2:11
**maintenance** [2] - 19:21, 19:25

**manner** [1] - 4:20
**March** [4] - 1:7, 18:15, 21:2, 27:10
**Marie** [2] - 1:22, 27:10
**marks** [1] - 10:19
**Martin** [6] - 7:1, 7:25, 9:18, 22:16, 23:8, 25:15
**MARTIN** [27] - 1:17, 6:25, 8:2, 8:18, 8:20, 8:25, 9:4, 9:19, 10:9, 10:11, 10:16, 10:25, 11:9, 12:3, 12:10, 12:18, 13:4, 14:19, 16:14, 22:18, 23:11, 23:18, 24:12, 25:5, 25:16, 26:13, 26:24
**mass** [1] - 10:1
**Massachusetts** [1] - 1:18
**MASTER** [36] - 1:11, 3:2, 3:6, 6:15, 7:2, 7:7, 7:17, 7:23, 8:15, 8:19, 8:22, 9:3, 9:17, 10:7, 10:10, 10:13, 10:23, 11:6, 11:25, 12:9, 12:12, 13:3, 14:17, 16:12, 16:17, 22:16, 23:7, 23:16, 24:7, 25:3, 25:15, 25:18, 26:9, 26:17, 26:20, 27:1
**matter** [6] - 3:19, 4:22, 7:19, 23:8, 26:12, 27:8
**MDL** [1] - 4:12
**MEAGHER** [1] - 1:17
**Meagher** [1] - 7:1
**mean** [4] - 5:19, 10:10, 10:11, 22:6
**means** [3] - 19:14, 21:9, 21:10
**mechanical** [1] - 1:24
**Medicare** [12] - 9:23, 9:25, 18:20, 18:21, 18:22, 20:7, 20:12, 20:19, 25:22, 25:23, 26:8
**medications** [3] - 21:1, 22:8, 22:9
**mentioned** [1] - 17:16
**merits** [4] - 8:3, 14:14, 16:8, 23:23
**Merrill** [1] - 12:21
**method** [1] - 11:5
**methods** [1] - 10:17
**microphones** [1] - 3:10
**might** [3] - 4:15, 4:19, 11:5

**misstate** [1] - 19:23
**Mitchell** [4] - 1:6, 1:22, 9:20, 27:10
**model** [2] - 11:16, 19:9
**moment** [1] - 5:4
**money** [1] - 21:8
**monies** [3] - 18:17, 20:17, 21:6
**morning** [3] - 22:22, 26:14, 26:15
**mortgage** [1] - 19:11
**Mortgage** [1] - 22:25
**most** [3] - 4:12, 12:19, 12:23
**motion** [15] - 6:21, 6:24, 7:4, 7:9, 7:10, 7:25, 14:11, 14:12, 15:12, 15:15, 15:21, 16:1, 16:2, 17:24, 26:10
**MOTION** [1] - 1:4
**motions** [1] - 4:25
**Motor** [1] - 15:13
**move** [3] - 8:4, 14:15, 14:17
**moved** [2] - 7:4, 14:10
**moving** [1] - 23:23
**MR** [33] - 6:25, 7:21, 8:2, 8:18, 8:20, 8:25, 9:4, 9:19, 10:9, 10:11, 10:16, 10:25, 11:9, 12:3, 12:10, 12:18, 13:4, 14:19, 16:14, 16:15, 16:18, 16:21, 22:18, 23:11, 23:18, 24:12, 25:5, 25:16, 25:20, 26:13, 26:18, 26:24, 26:25
**MS** [2] - 7:6, 7:13
**MSP** [17] - 14:9, 17:24, 18:19, 18:24, 19:3, 19:9, 19:13, 20:2, 20:4, 20:16, 20:24, 22:8, 23:10, 23:25, 24:1, 25:12
**MSP's** [1] - 11:15
**multidistrict** [1] - 10:2
**mute** [1] - 3:10
**muted** [1] - 3:10

### N

**name** [2] - 18:19, 25:12
**named** [1] - 25:8
**nature** [1] - 18:11
**nearly** [1] - 17:18
**necessarily** [1] - 12:8
**necessary** [3] - 12:3,

23:12, 23:17
**need** [6] - 4:6, 15:6, 16:4, 16:5, 17:23
**needs** [1] - 23:3
**never** [1] - 22:10
**NEW** [1] - 1:1
**new** [4] - 4:16, 4:18, 4:22
**New** [10] - 1:7, 4:11, 8:8, 8:10, 16:4, 20:20, 20:21, 21:15, 24:25
**next** [5] - 4:10, 4:23, 19:23, 20:5, 20:20
**Nigh** [6] - 7:21, 7:24, 16:12, 16:15, 23:24, 26:17
**NIGH** [9] - 1:13, 1:14, 7:21, 16:15, 16:18, 16:21, 25:20, 26:18, 26:25
**nigh** [1] - 25:19
**night** [1] - 23:1
**non** [1] - 21:9
**non-litigation** [1] - 21:9
**nonparty** [2] - 20:1, 20:2
**notably** [1] - 10:19
**note** [1] - 7:8
**nothing** [5] - 14:4, 15:19, 24:23, 24:24, 26:16
**notice** [1] - 17:19
**notification** [2] - 26:14, 26:15
**number** [2] - 24:18, 25:2
**NUMBER** [1] - 1:2

### O

**obligate** [1] - 23:12
**obligated** [1] - 16:25
**obligation** [1] - 4:18
**obviously** [5] - 4:16, 4:21, 6:7, 15:6, 25:7
**offer** [1] - 4:21
**offered** [1] - 15:4
**Official** [1] - 1:22
**often** [1] - 21:8
**Ohio** [19] - 12:10, 13:1, 13:5, 13:14, 13:25, 14:1, 14:10, 14:13, 19:18, 19:19, 19:21, 19:24, 20:3, 23:24, 24:14, 24:24, 25:6, 25:9
**once** [2] - 19:3, 24:18
**one** [14] - 5:13, 6:10,

8:8, 8:10, 9:6, 11:3, 11:22, 13:6, 13:9, 13:18, 17:18, 24:16, 25:1, 25:2
**opening** [1] - 23:22
**opportunity** [2] - 7:16, 15:3
**opposed** [1] - 18:6
**order** [3] - 9:23, 17:9, 18:10
**ordered** [1] - 17:13
**ordinarily** [1] - 11:17
**Ostfeld** [1] - 3:17
**otherwise** [5] - 5:20, 14:15, 16:10
**outstanding** [2] - 6:11, 6:19
**overcome** [2] - 15:17, 16:7
**own** [1] - 25:12

### P

**p.m** [3] - 1:8, 3:3, 27:5
**packages** [1] - 12:22
**page** [10] - 9:6, 9:13, 10:6, 10:10, 10:11, 10:12, 10:16, 19:13, 21:12
**pages** [1] - 17:17
**paid** [11] - 18:17, 19:1, 19:5, 19:6, 20:18, 21:6, 21:8, 22:8, 22:9, 26:5
**papers** [4] - 9:11, 13:5, 14:8, 16:11, 17:12, 25:14
**paragraph** [4] - 9:7, 9:13, 9:21, 17:18
**Parkway** [1] - 1:14
**particular** [2] - 7:10, 9:11
**particularly** [1] - 15:19
**parties** [5] - 17:3, 17:11, 17:14, 22:8, 25:4
**party** [3] - 20:2, 22:3, 25:7
**past** [1] - 15:21
**paths** [1] - 6:5
**patience** [1] - 3:14
**Patterson** [1] - 23:21
**payer** [9] - 18:18, 18:22, 18:23, 20:10, 20:11, 20:12, 25:24, 25:25, 26:6
**Payer** [7] - 18:20, 18:21, 20:7, 20:19, 25:22, 25:23, 26:8
**payments** [3] - 18:25,

20:9, 26:5
**people** [1] - 5:10
**period** [1] - 12:14
**Pharma** [1] - 2:6
**Pharmaceutical** [1] - 2:5
**Pharmaceuticals** [3] - 1:19, 1:20, 2:6
**phone** [1] - 7:3
**place** [1] - 22:10
**places** [1] - 9:9
**plaintiff** [2] - 15:14, 18:24
**plaintiff's** [1] - 18:19
**Plaintiffs** [1] - 1:15
**plaintiffs** [20] - 7:20, 7:22, 11:3, 11:6, 13:25, 14:9, 15:2, 15:11, 15:20, 16:16, 16:19, 16:22, 17:16, 17:19, 17:23, 18:5, 22:13, 22:24, 23:10, 27:1
**plaintiffs'** [1] - 10:4
**pleadings** [2] - 14:10, 15:16
**pleasure** [1] - 6:17
**pled** [1] - 15:7
**point** [9] - 9:11, 11:11, 11:12, 14:7, 15:11, 17:17, 22:12, 22:21, 22:22
**policy** [1] - 15:18
**position** [2] - 15:9, 23:12
**postdates** [1] - 14:5
**preamble** [1] - 9:7
**preference** [1] - 16:7
**prejudice** [7] - 8:5, 14:16, 14:18, 15:2, 15:5, 22:19, 23:6
**prejudicial** [3] - 16:19, 16:22, 22:13
**preparing** [1] - 18:5
**present** [5] - 15:3, 20:5, 20:16, 22:7, 26:4
**PRESENT** [1] - 2:8
**presentation** [1] - 16:9
**presiding** [1] - 3:25
**press** [1] - 5:21
**presumably** [1] - 24:5
**pretrial** [1] - 17:12
**prevent** [1] - 15:20
**previous** [1] - 18:16
**primarily** [4] - 19:1, 19:6, 21:7, 25:22
**primary** [14] - 11:20, 11:22, 12:1, 18:16,

20:9, 26:5
**principle** [1] - 24:20
**Prinston** [1] - 1:19
**problems** [1] - 5:17
**proceed** [3] - 4:20, 23:9, 23:17
**proceeding** [1] - 6:19
**PROCEEDINGS** [1] - 3:1
**Proceedings** [2] - 1:24, 27:5
**proceedings** [1] - 27:8
**proceeds** [1] - 19:5
**produced** [1] - 1:25
**PRODUCTS** [1] - 1:3
**prohibits** [1] - 8:11
**promptly** [1] - 26:22
**proposed** [1] - 8:3
**proposes** [1] - 7:12
**prove** [2] - 11:10, 11:12
**pull** [1] - 8:25
**purchase** [1] - 24:9
**purpose** [11] - 7:11, 8:13, 11:20, 11:22, 12:2, 18:16, 20:23, 21:5, 22:1, 25:21
**Purpose** [1] - 9:12
**pursuant** [3] - 16:24, 20:19, 26:8
**pursue** [2] - 9:24, 20:25
**pursuing** [1] - 20:23
**put** [1] - 7:7

### Q

**questions** [4] - 3:21, 14:14, 16:10, 25:17
**quick** [1] - 8:6
**quickly** [1] - 13:25
**quotation** [1] - 10:19
**quote** [1] - 10:4
**quoted** [1] - 21:12
**quoting** [1] - 10:17

### R

**raise** [3] - 17:5, 18:12, 19:22
**RASO** [1] - 1:13
**rather** [2] - 21:6, 25:12
**RDR** [1] - 1:22
**RE** [1] - 1:3
**reaches** [1] - 19:3
**reality** [1] - 24:19
**really** [6] - 5:21, 5:24,

8:14, 13:8, 13:22, 15:23
**realm** [3] - 12:7, 23:5, 24:11
**reasonable** [2] - 19:14, 21:11
**recalled** [1] - 20:25
**receive** [1] - 26:21
**recognize** [1] - 15:25
**record** [2] - 7:9, 27:8
**recorded** [1] - 1:24
**recover** [6] - 11:5, 18:17, 19:5, 20:17, 21:6, 24:5
**recovered** [1] - 21:9
**recovery** [5] - 9:25, 19:8, 21:10, 21:11
**Recovery** [1] - 19:13
**reference** [1] - 9:10
**referenced** [1] - 19:7
**referred** [1] - 26:15
**refers** [1] - 21:10
**regarding** [1] - 17:9
**related** [1] - 20:25
**relevant** [1] - 12:24
**relying** [1] - 8:23
**remain** [1] - 4:10
**remains** [1] - 23:19
**render** [1] - 12:24
**reopen** [1] - 15:6
**reply** [1] - 22:17
**Reporter** [1] - 1:22
**reporter** [2] - 9:16, 16:20
**Reporter/ Transcriber** [1] - 27:11
**require** [1] - 15:23
**requirements** [1] - 14:3
**requires** [1] - 12:8
**resolve** [1] - 5:17
**resources** [2] - 16:5, 18:6
**respect** [4] - 13:22, 14:2, 15:9, 24:22
**responsible** [1] - 20:8
**rest** [1] - 16:10
**result** [1] - 14:23
**RET** [1] - 1:10
**retire** [2] - 4:2, 4:7
**revision** [1] - 15:16
**rewarding** [1] - 5:13
**rights** [8] - 13:18, 20:5, 20:6, 20:16, 22:8, 26:4, 26:6, 26:11
**ROBERT** [2] - 1:9, 3:2
**Robert** [1] - 2:10

**Rule** [2] - 16:8, 23:20
**rules** [1] - 25:1

## S

**satisfactory** [1] - 3:22
**school** [1] - 5:7
**seat** [1] - 25:13
**second** [6] - 4:12, 6:22, 7:4, 9:7, 10:8, 22:14
**Secondary** [7] - 18:20, 18:21, 20:7, 20:19, 25:22, 25:23, 26:8
**secondary** [3] - 18:22, 20:13, 25:25
**Section** [5] - 8:10, 12:24, 14:1, 19:20, 24:25
**securities** [1] - 12:22
**see** [5] - 3:15, 6:1, 10:17, 19:12, 24:14
**seek** [2] - 17:7, 18:2
**seeking** [1] - 7:9
**selectively** [1] - 10:5
**sentence** [1] - 9:21
**September** [2] - 12:15
**serve** [1] - 18:4
**serves** [1] - 17:19
**services** [1] - 4:21
**set** [1] - 23:1
**sets** [1] - 14:3
**several** [2] - 9:9, 16:3
**Shipp** [1] - 14:8
**shock** [1] - 17:15
**shortly** [1] - 23:15
**show** [1] - 15:2
**sick** [2] - 3:15, 4:5
**similar** [1] - 19:9
**simply** [2] - 16:7, 18:4
**situation** [1] - 21:19
**situations** [3] - 18:24, 19:3, 20:13
**six** [1] - 12:14
**six-year** [1] - 12:14
**SKADDEN** [1] - 1:17
**Skadden** [1] - 7:1
**SLATE** [1] - 1:17
**Slate** [1] - 7:1
**Slater** [1] - 3:17
**slippery** [1] - 17:22
**slope** [1] - 17:22
**SMITH** [1] - 2:9
**society** [1] - 5:18
**Solco** [1] - 1:19
**sold** [1] - 22:10
**soliciting** [1] - 8:11
**someday** [1] - 5:7
**someone** [2] - 13:10, 13:13

**sorry** [1] - 9:8
**sort** [1] - 24:14
**sorts** [1] - 20:14
**sources** [1] - 18:18
**SPECIAL** [36] - 1:11, 3:2, 3:6, 6:15, 7:2, 7:7, 7:17, 7:23, 8:15, 8:19, 8:22, 9:3, 9:17, 10:7, 10:10, 10:13, 10:23, 11:6, 11:25, 12:9, 12:12, 13:3, 14:17, 16:12, 16:17, 22:16, 23:7, 23:16, 24:7, 25:3, 25:15, 25:18, 26:9, 26:17, 26:20, 27:1
**specific** [3] - 12:21, 12:22, 21:16
**speculation** [1] - 11:4
**spot** [2] - 4:4, 7:8
**spring** [3] - 3:24, 15:21
**squarely** [1] - 15:13
**stands** [3] - 18:19, 22:23
**stark** [1] - 22:24
**start** [1] - 8:3
**starting** [2] - 23:24, 24:13
**state** [3] - 24:1, 24:3, 24:4
**statement** [1] - 23:22
**STATES** [2] - 1:1, 1:9
**states** [1] - 20:21
**statute** [2] - 14:3, 14:5
**Statutes** [1] - 24:25
**stenography** [1] - 1:24
**step** [1] - 4:1
**stepping** [1] - 22:23
**still** [2] - 15:8, 26:3
**straightforward** [1] - 13:6
**Street** [1] - 1:18
**Streets** [1] - 1:6
**submit** [1] - 11:13
**submitted** [1] - 23:9
**subrogation** [1] - 19:10
**sue** [2] - 11:17, 11:21
**sufficient** [2] - 14:22, 16:7
**suggested** [1] - 26:15
**suggesting** [1] - 11:25
**suggests** [1] - 25:1
**suing** [2] - 8:13, 25:12
**suit** [3] - 11:19, 13:12, 20:2
**Suite** [1] - 2:4
**suited** [1] - 11:23
**SummaCare** [12] -

13:2, 13:18, 13:22, 18:14, 18:17, 20:5, 20:16, 20:17, 20:24, 21:2, 21:12, 25:3
**summary** [9] - 11:13, 15:12, 15:15, 15:22, 17:4, 17:5, 17:9, 17:24, 23:2
**summer** [1] - 21:3
**supplemental** [2] - 15:21, 16:1
**Supreme** [1] - 13:14
**survive** [1] - 11:13
**suspect** [1] - 17:25
**suspicion** [1] - 23:11
**sustain** [1] - 11:12
**sweet** [1] - 4:4

## T

**Teams** [2] - 1:4, 3:1
**technology** [1] - 3:8
**ten** [3] - 5:11, 24:17, 25:2
**terms** [1] - 26:2
**terribly** [1] - 3:22
**terrific** [1] - 6:1
**Teva** [4] - 2:5, 2:6, 7:3, 7:15
**text** [1] - 24:25
**The court** [6] - 3:4, 3:7, 7:14, 14:11, 14:23, 17:9
**theme** [1] - 22:10
**themselves** [1] - 13:12
**theory** [1] - 22:11
**thereafter** [1] - 22:2
**therefore** [1] - 20:3
**thereon** [1] - 8:14
**they've** [1] - 5:20
**Third** [2] - 14:21, 22:25
**THOMAS** [2] - 1:10, 3:2
**thousands** [2] - 17:16, 17:17
**thrilling** [2] - 5:14, 6:1
**throughout** [1] - 19:7
**throw** [1] - 18:4
**TIFFANY** [1] - 2:4
**timeliness** [1] - 8:5
**timing** [4] - 21:22, 21:23, 21:25, 22:14
**today** [4] - 3:16, 7:8, 18:2, 21:18
**Tom** [2] - 6:11, 6:13
**Torrent** [1] - 7:15
**tort** [1] - 10:1
**tortfeasor** [1] - 24:6
**touch** [3] - 6:8, 22:19,

27:3
**TPP** [6] - 16:24, 17:3, 17:11, 17:14, 19:21, 19:23
**transcript** [2] - 1:24, 27:7
**transcription** [1] - 1:25
**TRAURIG** [1] - 2:3
**trial** [22] - 3:19, 3:25, 4:17, 4:19, 4:20, 4:25, 11:10, 13:21, 15:21, 16:24, 17:12, 17:14, 18:4, 18:5, 22:20, 22:21, 23:1, 23:14, 23:18, 23:19, 23:21
**trouble** [1] - 5:19
**true** [4] - 14:2, 15:19, 24:3, 25:9
**trust** [2] - 3:18, 3:20
**truth** [1] - 22:5
**try** [2] - 5:17, 8:6
**trying** [4] - 3:24, 4:13, 5:25, 9:17
**turmoil** [1] - 18:4
**turn** [4] - 6:10, 12:10, 19:16, 20:20
**turning** [1] - 13:1
**two** [4] - 8:7, 11:1, 13:4, 17:18
**type** [1] - 15:5

## U

**U.S** [2] - 1:6, 1:19
**ultimately** [1] - 13:21
**unbelievably** [1] - 5:9
**under** [6] - 9:12, 9:21, 16:8, 19:24, 24:2, 24:24
**underappreciated** [1] - 5:18
**undertakes** [1] - 20:1
**uniquely** [2] - 11:23
**UNITED** [2] - 1:1, 1:9
**unknown** [3] - 24:18, 25:2, 26:3
**unless** [1] - 25:16
**unlike** [1] - 20:6
**up** [7] - 4:6, 4:16, 4:23, 6:6, 8:20, 8:25, 22:12
**USA** [1] - 2:6
**uses** [1] - 19:9

## V

**valsartan** [8] - 12:17, 18:15, 21:1, 21:3, 21:20, 22:7, 24:10,

25:21
**VALSARTAN**[1] - 1:3
**Vanaskie**[1] - 6:12
**VANASKIE**[36] - 1:10, 3:2, 3:6, 6:15, 7:2, 7:7, 7:17, 7:23, 8:15, 8:19, 8:22, 9:3, 9:17, 10:7, 10:10, 10:13, 10:23, 11:6, 11:25, 12:9, 12:12, 13:3, 14:17, 16:12, 16:17, 22:16, 23:7, 23:16, 24:7, 25:3, 25:15, 25:18, 26:9, 26:17, 26:20, 27:1
**Vanaskie's**[1] - 5:5
**VAUGHN**[1] - 1:13
**Venuto**[4] - 15:13, 16:3, 16:6, 23:5
**verdict**[1] - 11:13
**via**[2] - 1:4, 3:1
**vis**[2] - 21:23
**vis-a-vis**[1] - 21:23

## W

**Wacker**[1] - 2:4
**wait**[1] - 10:7
**wants**[1] - 5:3
**wasting**[1] - 18:6
**watch**[1] - 5:15
**weeks**[1] - 4:4
**welcome**[1] - 3:5
**West**[7] - 2:4, 13:7, 13:21, 24:4, 24:15, 24:20, 25:7
**wherein**[1] - 18:17
**willing**[1] - 23:7
**wishes**[2] - 3:14
**witnesses**[1] - 3:19
**word**[1] - 4:15
**workmen's**[2] - 19:2, 19:4
**wrap**[1] - 22:12
**wrapped**[1] - 4:6
**wreck**[1] - 19:2
**writing**[1] - 23:15

## Y

**year**[1] - 12:14
**years**[5] - 4:1, 5:6, 5:11, 5:15, 17:18
**yesterday**[1] - 7:9
**York**[6] - 8:8, 8:10, 20:20, 20:21, 21:15, 24:25

## Z

**ZACHARY**[1] - 1:17

**Zachary**[1] - 6:25
**Zhejiang**[1] - 1:19
**ZHP**[3] - 6:23, 7:12, 7:14
**ZHP's**[1] - 6:23

*United States District Court*