UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875<br><br>Honorable Robert B. Kugler, District Judge |

**SPECIAL MASTER ORDER NO. 97**

## I.   BACKGROUND

The Third Amended Consolidated Economic Loss Class Action Complaint, filed in this MDL on behalf of consumer and third party payors ("TPPs") (ECF No. 1708), concerns economic losses purportedly resulting from the alleged contamination of valsartan-containing drugs ("VCDs") designed, manufactured, labeled, marketed, and sold in the United States. The plaintiff class members include both consumers and third party payors ("TPPs") who paid for or reimbursed payments made for the acquisition of the allegedly contaminated VCDs.

On March 6, 2024, Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC (collectively "ZHP") moved for leave to file a *Second* Amended Answer and

1

Affirmative Defenses. (ECF No. 2672.) The proposed amended Answer seeks to challenge the validity of the assignments of claims by (1) EmblemHealth Services Company, LLC, Group Health Incorporated, and Health Insurance Plan of Greater New York (collectively referred to as "Emblem") and (2) SummaCare, Inc. The assignments at issue were made to one of the two named class representatives for the TPP class, MSP Recovery Claims, Series LLC (referred to herein as either "MSPRC" or "MSP").[1] Specifically, ZHP seeks leave to add an "affirmative

---

[1] MSPRC is a Delaware Series Limited Liability Company. Under Delaware law, "[a] limited liability company agreement may establish or provide for the establishment of 1 or more designated series of members, managers, limited liability company interests or assets. Any such series may have separate rights, powers or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations, and any such series may have a separate business purpose or investment objective." Del. Code Ann. tit. 6, § 18-215(a) (West). As explained by one source, "[a] Series LLC is a type of LLC that is able to establish an unlimited number of internal asset chambers called 'protected series'. Each protected series under a Series LLC has its own limited liability shield. Protected series allow business owners to separate the assets and liabilities of multiple businesses under one legal entity." https://www.incnow.com/delaware-series-llc/series-llc-structure/ (Last visited April 17, 2024).
  MSPRC was "established pursuant to the 1980 Medicare Secondary Payer Act." (3/27/24 Tr. at 26.) Codified at 42 U.S.C. § 1395y(b), the Medicare Secondary Payer Act makes Medicare the secondary payer for medical expenses in certain circumstances. The TPP claims are an instance where Medicare, and by extension, Emblem and SummaCare, are the secondary payer, entitled to seek recovery from parties responsible for the alleged contamination of valsartan for payments made for the allegedly adulterated medication.

2

defense" of champerty.² ZHP also seeks to add a defense that the SummaCare assignment to MSPRC is invalid under Ohio law as an impermissible assignment of a contingent, future interest.³

The Third Amended Consolidated Economic Loss Class Action Complaint alleges that "[c]ertain healthcare benefit providers have assigned their recovery rights to assert the claims alleged in this Complaint to Series LLCs of MSPRC."

---

² As explained in *Justinian Capital SPC v. WestLB AG*, 65 N.E.3d 1253, 1254 (N.Y. 2016)(internal citations omitted):

> The concept of champerty dates back to French feudal times. In the English legal system, the word "champart" was used "as a metaphor to indicate a disapproval of lawsuits brought 'for part of the profits' of the action." [T]he champerty doctrine was developed "to prevent or curtail the commercialization of or trading in litigation."

Champerty is not included in the list of affirmative defenses set forth in Rule 8(c) of the Federal Rules of Civil Procedure, but the Rule does require that an answer to a complaint include "any avoidance or affirmative defense." It thus appears that champerty should have been plead as an affirmative defense in ZHP's initial answer.

³ On March 26, 2024, Defendants Actavis, LLC, Actavis Pharma Inc., Teva Pharmaceuticals USA, Inc., Torrent Pharmaceuticals, Ltd., and Torrent Pharma, Inc. filed a joinder in the ZHP Motion for Leave to file a second amended answer, asserting that "if that motion is granted, [they] respectfully move the Court for leave to similarly amend their answers and affirmative defenses to specifically assert (1) an affirmative defense based on the New York and Ohio doctrines of champerty, and (2) an affirmative defense related to the invalidity of SummaCare's assignment under Ohio law, based on the impermissible assignment to MSP of a contingent, future interest." (ECF No. 2693 at 1.)

3

(ECF No. 1708, ¶ 61.)  Pertinent to ZHP's motion to add the defense of champerty, Plaintiffs allege:

> Certain series of MSPRC have executed irrevocable assignments of any and all rights to recover payments made on behalf of their assignors' health plan members and enrollees. These assignments authorize the series and, in turn MSPRC through its operating agreement, to pursue and enforce all legal rights of recovery and reimbursement for health care services and Medicare benefits.

(*Id.* ¶ 62.)  ZHP singles out the assignments of claims to MSPRC by Emblem and SummaCare.

The Emblem assignment, dated March 20, 2018, covers "Medicare Recovery Claims," defined as:

> legal and equitable rights to seek reimbursement and/or recover payments from primary payers and any other party or entity that may be responsible to Assignor directly or through rights conferred on the Assignor pursuant to state and/or federal law pertaining to beneficiaries, for Health Care Services provided to Assignor's Medicare . . . enrollees arising under state and/or federal laws, including common law subrogation theories, that provide for reimbursement of payments made by the Assignor for such Medicare services, whether under Parts A, B and D of the Medicare Act, including pursuant to a Medicare Advantage Plan, including the right to recover claims for Medicare Health Care Services that are billed on a fee for service basis and all outstanding liens, potential liens, lien rights and subrogation recovery rights, legal or equitable, in favor of Assignor, including in any litigation, such as but not limited to mass tort actions, class actions and multi-district litigation for which a primary payer has demonstrated responsibility. . . .

(Emblem Assignment Agreement, ECF No. 2672-3, at 2.)  The consideration for the Emblem Assignment is "50% of the value of the recoveries of the Assigned Medicare Recovery claims affected [sic] by Assignee."  (*Id.* at 3.)

The SummaCare assignment to MSPRC, dated May 12, 2017, covers:

> [SummaCare's] legal rights to recover payments for the provision of health care services arising from contractual agreements, such as participation and network agreements with applicable capitation and risk sharing arrangements, and state and federal laws that provide for the reimbursement of conditional payments made by [SummaCare], including the right to recover claims for health care services that are billed on a fee for service basis.

(Summacare Assignment, ECF No. 2672-4, at 2.).  Similar to the Emblem Assignment, MSPRC agrees to pay SummaCare 50% of the net proceeds of any of the assigned claims.

Both assignments are general in nature and appear to be part and parcel of how MSPRC conducts its business.  Neither assignment mentions valsartan or the matters at issue in this litigation.  Indeed, both assignments were made before the alleged contamination of VCDs was disclosed.  Both assignments, however, are broad enough to include Emblem and SummaCare's claims against ZHP.

The assignments essentially allow for the consolidation of TPP claims to be presented by a single entity, MSPRC.  The Emblem assignment is expressly governed by the law of New York state.  The SummaCare assignment is expressly governed by Ohio law.

5

Plaintiffs oppose the motion for leave to file a second amended answer on several grounds.  First, Plaintiffs challenge the timeliness of the motion, pointing out that it asserts defenses mentioned by ZHP over two years before seeking leave to amend the answer and known to ZHP when it filed its Answer and its first motion for leave to amend the answer.  Plaintiffs contend that they will be prejudiced by the proposed amended answer because it purports to present new defenses on the eve of the first bellwether trial, after discovery has closed and summary judgment motions have been filed.  Plaintiffs also assert that the proffered defenses fail as a matter of law, and so the motion for leave to amend should be rejected as futile.

The parties have briefed the issues and oral argument was presented on March 27, 2024.  Although there is substantial reason to believe that the proffered defenses will fail as a matter of law, the prejudice to the Plaintiffs by allowing for the eleventh hour assertion of dubious defenses that will require additional discovery and substantial delay is sufficient alone to compel denial of leave to amend.

## II.    DISCUSSION

Amendment of pleadings is generally governed by Rule 15 of the Federal Rules of Civil Procedure, which, in pertinent part provides that "a party may amend its pleading only with the opposing party's written consent or the court's

leave. The court should freely give leave *when justice so requires*." Fed. R. Civ. P. 15(a)(2) (emphasis added). "Unless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).

In this instance, the prejudice to Plaintiffs is so palpable that justice would not be served by allowing leave to amend to add defenses of dubious merit that will not have a substantive impact on the underlying claims. On the eve of the first bellwether trial, ZHP (and now Defendants Actavis, LLC, Actavis Pharma Inc., Teva Pharmaceuticals USA, Inc., Torrent Pharmaceuticals, Ltd., and Torrent Pharma, Inc.) seek to challenge the ability of a certified named class representative to present claims on behalf of third party payors by asserting that blanket assignment agreements entered into well-before this MDL was commenced violate New York and Ohio statutes concerning champerty. Inclusion of champerty as a defense to this action will lead to extensive discovery and additional motion work, portending extensive delay.

ZHP contends that the assignments are unenforceable under the statutory laws of New York and Ohio. But there are substantial reasons to believe that the champerty defense would fail under both states' laws.

New York law provides:

> No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation

7

> or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon; provided however, that bills receivable, notes receivable, bills of exchange, judgments or other things in action may be solicited, bought, or assignment thereof taken, from any executor, administrator, assignee for the benefit of creditors, trustee or receiver in bankruptcy, or any other person or persons in charge of the administration, settlement or compromise of any estate, through court actions, proceedings or otherwise.

N.Y. Judiciary Law § 489.

New York courts have construed this statute to require that "the *primary purpose* of the [assignment] must be to enable [one] to bring a suit, and the intent to bring a suit must not be merely incidental and contingent." *Justinian Capital SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016) (emphasis added). "The bottom line is that Judiciary Law § 489 requires that the acquisition be made with the intent and for *the* purpose (as contrasted to *a* purpose) of bringing an action or proceeding." *Id.* *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 736, 731 N.E.2d 581, 587 (N.Y. 2000) (emphasis in original). The New York Court of Appeals has cautioned against a broad interpretation of section 489, as such an approach "might cast the potentiality of a champerty cloud too easily over modern business practices and dispute resolutions involving the acquisition of securities and their concomitant rights." *Id.* at 737. "New York courts have

8

consistently held that the possibility that a purchaser of debt obligations will be required to resort to litigation to recover on the debt does not violate § 489." *Red Tulip, LLC v. Neiva*, 842 N.Y.S.2d 1, 8 (N.Y. App. Div. 1st Dept. 2007).

    The Emblem assignment is obviously just part of a substantial transaction. It also is clear that the Emblem assignment, predating as it does this litigation, was not motivated by an intent to bring suit against producers of valsartan. It thus appears that the Emblem assignment, in the context of the assignment of claims arising out of the alleged adulteration of valsartan, does not violate New York law.

    Although the Ohio Supreme Court declared that nonrecourse advance of funds secured solely by an interest in a pending lawsuit constituted champerty and void under Ohio law, *see Rancman v. Interim Settle. Funding Corp.,* 789 N.E.2d 217, 218 (Ohio 2003), the Ohio legislature subsequently enacted R.C. 1349.55 "to address the Supreme Court's holding in Rancman [and] *make nonrecourse civil litigation advance contracts legal. . . .*" Opinion No. 2012-3 of the Supreme Court of Ohio Board of Commissioners On Grievances and Discipline, 2012 WL 6591524, at *4 (Dec. 7, 2012) (emphasis added). *Rancman* thus appears to have been rendered a nullity by the Ohio legislature. *See Maslowski v. Prospect Funding Partners LLC,* 944 N.W.2d 235, 241 (Minn. 2020) (supporting the decision to abolish Minnesota's common law prohibition of champerty with the

9

acknowledgment that Ohio and other states had adopted legislation to authorize litigation funding arrangements).

New York courts have "been willing to find that an action is not champertous as a matter of law," *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 734–35 (2000), encouraging a challenge to the defense by way of a summary judgment motion. The enactment in Ohio of R.C. 1349.55 provides a substantial basis for a summary judgment motion arguing that the SummaCare assignment is valid.[4]

Both the SummaCare and Emblem assignments appear to be part of a larger transaction, and, suing to recover on assigned claims seems to be an incidental part of a much larger transaction. At a minimum, the facts presented thus far do not reveal the purported evils of champerty: "strife, discord and harassment which could result from permitting attorneys and corporations to purchase claims for the purpose of bringing actions thereon." *Fairchild Hiller Corp. v. McDonnell Douglas Corp.*, 270 N.E.2d 691, 693 (N.Y. 1971). New York courts "have

---

[4] ZHP's contention that the SummaCare assignment is invalid as an assignment of a "contingent future interest" (ECF 2672-1 at 10) ignores the fact that SummaCare's blanket assignment involves its existing rights, including its rights to pursue recovery against alleged primary payers, such as ZHP. The validity of assignments of existing claims, like SummaCare's claims against primary payers, have long been recognized. *See, e.g., Sprint Communications Co. L.P. v. APCC Servs.*, 554 U.S. 269, 274-85 (2008); *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 5:19CV00219, 2019 WL 6770729, at *12 (N.D. Ohio Dec. 12, 2019).

consistently held that in order to fall within the statutory prohibition, the assignment must be made *for the very purpose of bringing suit and this implies an exclusion of any other purpose.*" *Id.* (emphasis added).  The Emblem assignment of "Medicare Recovery Claims" does not reveal that it was made for "the very purpose" of enabling MSPRC to sue Defendants to this action for damages caused by the alleged adulteration of valsartan, and to the exclusion of any other purpose.

In any event, "under New York law, champertous intent is a fact-sensitive inquiry." *MSP Recovery Claims, Series LLC v. Abbott Laboratories*, No. CV1921607FLWZNQ, 2021 WL 2177548, at *10 (D.N.J. May 28, 2021). "The case law makes clear that to evaluate champertous intent, specific facts matter." *Id.*  If the motion for leave to amend the answer were granted to include the defense of champerty, additional and extensive discovery would doubtlessly ensue.  Trial would be delayed, but with nothing meaningful accomplished.

The invalidation of the assignments to MSPRC would not vitiate the TPP claims that have been assigned.  They would remain valid and could be pursued on a class-wide basis.  The only thing that would be accomplished by a determination that the assignments to Emblem and SummaCare are champertous under the laws of New York and Ohio would be that the previously assigned claims would be pursued as part of the class action.

11

Plaintiffs, however, would have to consider designating a new class representative, undoubtedly resulting in additional discovery, briefing, and judicial decision-making on class certification issues. The delay and additional expense would be substantial. Justice would not be served by allowing the assertion of the affirmative defenses proposed by ZHP.

ZHP's motion for leave to amend simply comes too late. MSPRC has been certified as a class representative for the TPP class. Although the ZHP opposition to the motion for class certification did attack the SummaCare assignment as champertous, it did not challenge the Emblem assignment on that ground. (*See* ECF No. at 21-22.) If ZHP (and the other defendants) contended that the assignment of claims to MSPRC were unenforceable, those contentions should have been pressed when the motion for class certification was pending, and not on the eve of the first bellwether trial.

Indeed, in moving to decertify the TPP Trial Classes (ECF No. 2637), Defendants' attack on the adequacy of MSPRC as a class representative did not even suggest that either the Emblem or SummaCare assignments were unenforceable under New York or Ohio law. Instead, they attacked MSPRC's business practices as "unsavory." In rejecting the motion to decertify the TPP Trial Classes, the Court, in an opinion issued on February 26, 2024, observed:

> [Defendants] seek to unseat MSP as an inadequate class representative because of its purported unsavory business practices.

12

> To characterize MSP in the most uncomplimentary terms possible, the Court identifies it as a medical insurance troll, buying insurers' (including Medicare) claims only to sue on them. Such a trolling *model leaves a taint only for those naïve as to the realities of doing business*. Such a trolling model exists for patents and other IP assets, for uncollectable medical practices' claims, and in a variety of other business contexts. MSP's business model of buying claims as an investment in order to get higher liability damages through litigation means that MSP is in the business of arbitraging its costs versus its calculations/expectations to turn a profit on the insurers' claims it purchases. Ultimately, MSP is a risk assessor of the likelihood of success on the merits of its purchased claims and resembles to some extent a junk bond trader. That MSP is arbitraging litigation risk has nothing to do with its adequacy as a class representative nor does MSP's loss of value on the stock market nor does MSP's litigation history on suing for other purchased claims. Simply, as assignee of Emblem Health's and SummaCare's economic loss claims, MSP stands in their shoes and is eligible to sue. Rule 23(a)(3) and (4) does not require "savory" business practices, but that the claims of the representative parties are typical of the claims of the class; and the representatives will fairly and adequately protect the interests of the class. MSP claims clearly are TPP claims even though it is not a TPP. That MSP is involved in several other litigations does not without more make MSP a bad risk as a class representative. To the point, D[efendant]s' description of MSP's despicable deeds and state of affairs has invited the Court to research MSP, which does not appear the dastardly fiend the motion portrays.
>
> Further, were MSPs status as a proper assignee contested, MSP would have to prove a valid assignment of which it is the valid assignee. *But, that status is not contested.*

(ECF 2657 at 9; emphasis added.)

Having had its effort to decertify the class rejected, it appears that ZHP and other Defendants do indeed now seek to contest MSPRC's status as a valid assignee of claims arising from the alleged contamination of

13

valsartan. But that contest comes too late. ZHP's motion for leave to amend its answer to add defenses to the SummaCare and Emblem assignments will be denied.[5]

**NOW, this 18th Day of April, 2024, IT IS HEREBY ORDERED THAT:**

1. ZHP's Motion for Leave to File a Second Amended Answer and Affirmative Defenses (ECF No. 2672) is **DENIED.**

2. The request of Defendants Actavis, LLC, Actavis Pharma Inc., Teva Pharmaceuticals USA, Inc., Torrent Pharmaceuticals, Ltd., and Torrent Pharma, Inc. for leave to add the Affirmative Defenses proposed by ZHP (ECF No. 2693) is **DENIED.**

Dated: April 18, 2024

*s/ Thomas I. Vanaskie*
Hon. Thomas I. Vanaskie (Ret.)
Special Master

---

[5] Because ZHP's motion is being denied, the dependent request of Defendants Actavis, LLC, Actavis Pharma Inc., Teva Pharmaceuticals USA, Inc., Torrent Pharmaceuticals, Ltd., and Torrent Pharma, Inc. to assert the same defenses (ECF No. 2693) will likewise be denied.

14