# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Renée Marie Bumb, District Court Judge |

## DEFENDANTS ZHEJIANG HUAHAI PHARMACEUTICAL CO., LTD., HUAHAI U.S., INC., PRINSTON PHARMACEUTICAL INC., AND SOLCO HEALTHCARE U.S., LLC'S MEMORANDUM IN SUPPORT OF OBJECTIONS TO AND MOTION TO REVERSE SPECIAL MASTER'S ORDER DENYING LEAVE TO FILE SECOND AMENDED ANSWER AND AFFIRMATIVE DEFENSES

# **TABLE OF CONTENTS**

**Page**

BACKGROUND ................................................................................................3

ARGUMENT......................................................................................................4

I.      THE ZHP DEFENDANTS' PROPOSED AMENDMENTS ARE
        NOT FUTILE. ........................................................................................5

II.     THE ZHP DEFENDANTS' PROPOSED AMENDMENT WOULD
        NOT UNDULY PREJUDICE PLAINTIFFS. .........................................12

III.    THE REMAINING FACTORS MENTIONED BY THE SPECIAL
        MASTER DO NOT JUSTIFY DENYING AMENDMENT. ......................16

CONCLUSION ................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ajax Enterprises v. Fay*,
No. 04-4539, 2007 WL 766335 (D.N.J. Mar. 7, 2007).....................13, 14, 15

*Arthur v. Maersk, Inc.*,
434 F.3d 196 (3d Cir. 2006).......................................................................16

*Blue Ash Auto Body, Inc. v. Frank*,
190 N.E.3d 1180 (Ohio Ct. App. 2022).......................................................11

*Elliot Associates, L.P. v. Republic of Panama*,
975 F. Supp. 332 (S.D.N.Y. 1997)................................................................8

*Heyl & Patterson International, Inc. v. F.D. Rich Housing of Virgin Islands, Inc.*,
663 F.2d 419 (3d Cir. 1981)..................................................................12, 17

*Hiles v. NovaStar Mortgage, Inc.*,
No. 1:12-cv-392, 2012 WL 4813775 (S.D. Ohio Oct. 10, 2012) .............9, 10

*Justinian Capital SPC v. WestLB AG*,
65 N.E.3d 1253 (N.Y. 2016) ...............................................................6, 7, 8

*Juul Labs, Inc. v. 4X PODS*,
No. 18-15444, 2020 WL 2029327 (D.N.J. Apr. 28, 2020) ..................5, 8, 13

*Long v. Wilson*,
393 F.3d 390 (3d Cir. 2004).......................................................................16

*Maslowski v. Prospect Funding Partners LLC*,
944 N.W.2d 235 (Minn. 2020).....................................................................10

*MSP Recovery Claims, Series LLC v. Abbott Laboratories*,
No. 19-21607, 2021 WL 2177548 (D.N.J. May 28, 2021) ...........................8

*MSP Recovery Claims, Series LLC v. Abbott Laboratories*,
 No. 19-21607, 2023 WL 8718823 (D.N.J. Dec. 18, 2023) ..........................10

*MSP Recovery Claims Series LLC v. Grange Insurance Co.*,
 No. 5:19cv00219, 2019 WL 6770729 (N.D. Ohio Dec. 12, 2019)...............12

*Nippon Steel & Sumitomo Metal Corp. v. POSCO*,
 No. 12-2429, 2014 U.S. Dist. LEXIS 42444 (D.N.J. Mar. 26, 2014)............4

*Ramos v. Banner Health*,
 No. 15-cv-2556, 2018 U.S. Dist. LEXIS 138101
 (D. Colo. Aug. 8, 2018) ...............................................................................4

*Rancman v. Interim Settlement Funding Corp.*,
 789 N.E.2d 217 (Ohio 2003) ........................................................................9

*Sprint Communications Co. v. APCC Services, Inc.*,
 554 U.S. 269 (2008)....................................................................................12

*Three-C Body Shops, Inc. v. Francois*,
 No. 19AP-471, 2020 WL 5821316 (Ohio Ct. App. Sept. 30, 2020).......11, 12

*United States v. Johnman*,
 948 F.3d 612 (3d Cir. 2020)..........................................................................7

*Venuto v. Atlantis Motor Group, LLC*,
 No. 17-3363, 2020 WL 998945 (D.N.J. Mar. 2, 2020).....................5, 14, 16

*West Broad Chiropractic v. American Family Insurance*,
 912 N.E.2d 1093 (Ohio 2009)...................................................................11

*Walmart Inc. v. Capital One, N.A.*,
 No. 23 Civ. 2942, 2024 WL 1311907 (S.D.N.Y. Mar. 26, 2024) .................7

## STATUTES

N.Y. Jud. Law § 489 ...............................................................................................6

Ohio Rev. Code § 1349.55.............................................................................9, 11

iii

Ohio Rev. Code § 1349.55(A)(1) ...................................................................9, 10

## RULES

Fed. R. Civ. P. 15(a)(2) ...............................................................................4

Fed. R. Civ. P. 53(f)(3) ...............................................................................4

Fed. R. Civ. P. 53(f)(4) ...............................................................................4

Fed. R. Civ. P. 53(f)(5) ...............................................................................4

## OTHER AUTHORITY

Supreme Court of Ohio Board of Commissioners on Grievances and
    Discipline,
    2012 WL 6591524 (Dec. 7, 2012) ...............................................................10

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd.; Huahai U.S., Inc.; Prinston Pharmaceutical Inc.; and Solco Healthcare U.S., LLC (collectively, the "ZHP Defendants"), by and through their undersigned counsel, hereby object to Special Master Order ("SMO") 97 denying their motion for leave to file a Second Amended Answer and Affirmative Defenses. The ZHP Defendants sought leave to make express their additional defenses that any assignment of rights from EmblemHealth ("EmblemHealth Assignment") and/or SummaCare ("SummaCare Assignment") to Plaintiffs is void under New York and Ohio's doctrines of champerty, respectively. In addition, the ZHP Defendants sought to add the defense that the SummaCare Assignment is independently invalid under Ohio law because it impermissibly assigns a contingent and not-yet-established future interest. The Special Master denied the motion on the asserted ground that it would permit "the eleventh hour assertion of dubious defenses that will require additional discovery and substantial delay." (ECF 2701, at 6.) The Special Master's decision was clearly wrong and should be reversed.

*First*, although the Special Master did not formally find the proffered defenses to be invalid or the proposed amendment to be futile, he held that there was "substantial reason to believe that [the defenses would] fail as a matter of law." (ECF 2701, at 7.) This conclusion was erroneous. With respect to the EmblemHealth Assignment, the Special Master imposed limitations on the doctrine

of champerty that have no support in New York law.[1]  And with respect to the SummaCare Assignment, the Special Master conflated two independent defenses, wrongly suggested that one or both had been repealed, and confused Article III standing with state-law limits on assignments.

**Second**, the Special Master's finding that an amended answer would cause undue prejudice ignores the fact that trial was postponed indefinitely immediately prior to oral argument on the motion to amend.  Any limited additional litigation that would be required by adding these new defenses (such as further discovery or motion practice) would be limited in scope and could easily be completed without any additional delay.  Nor would it impose any greater cost than would have been imposed if the ZHP Defendants had included these defenses in their initial answer in December 2023, especially since <u>discovery was already closed and the class was already defined before the initial answer was due</u>.

**Third**, the additional reasons that the Special Master mentioned in passing—i.e., that the ZHP Defendants unduly delayed and that any challenge to the validity of the assignments would be pointless because the same claims could be pursued by assignors as absent class members—are also wrong as a matter of fact and law.

---

[1]     The EmblemHealth Assignment states that the "interpretation, construction, and enforcement of this Agreement" shall be governed by New York law.  (ECF <u>2672-3</u>.)  The SummaCare Assignment provides that Ohio law governs how the agreement will be "construct[ed] and enforced."  (ECF <u>2672-4</u>.)

## **BACKGROUND**

In February 2023, Judge Robert Kugler certified a sprawling class action including third-party payors, individual economic loss plaintiffs, and medical monitoring plaintiffs.  (*See* ECF 2261.)  Two months later, in April, the Court ordered a "bellwether" trial spanning four causes of action, and nearly every state, with MSP Recovery Claims, Series LLC ("MSP" or "Plaintiffs") as the sole class representative.  (*See* ECF 2343.)  The trial defendants' answers were due in December 2023.  Although the defendants had raised the possibility that MSP's assignments might be invalid under champerty or related doctrines as early as 2022 (*see* ECF 2010, at 21-22), the ZHP Defendants did not specifically enumerate these defenses in their December 2023 answer.  When they realized the oversight during trial preparation, they promptly moved to amend the answer to include additional defenses.  That motion was filed on March 6, 2024.  (ECF 2672.)  Although trial had initially been scheduled for late March 2024, it was postponed indefinitely, first due to Judge Kugler's illness and then due to his retirement from the bench.  It has not been rescheduled.  Rather, immediately prior to the hearing on this motion, Judge Kugler acknowledged that the trial would not take place this spring and noted that it might not take place at all.

Despite the indefinite delay, the Special Master treated the motion to amend as if it came on the eve of trial and denied it in SMO 97.  These objections follow.

## **ARGUMENT**

This Court's review of decisions issued by the Special Master is governed by Rule 53.  *See, e.g.*, *Nippon Steel & Sumitomo Metal Corp. v. POSCO*, No. 12-2429, 2014 U.S. Dist. LEXIS 42444, at *1 (D.N.J. Mar. 26, 2014).  Objections to the Special Master's findings of fact and conclusions of law are subject to de novo review, unless the parties stipulate otherwise, which they have not done here.[2]  Fed. R. Civ. P. 53(f)(3)-(4).  (*See, e.g.*, ECF 1994 at 5 (applying de novo standard of review to order on motion to amend complaint).)  "Upon review, the [c]ourt may 'adopt or affirm, modify, wholly or partially reject or reverse, or resubmit to the master with instructions.'"  *Ramos v. Banner Health*, No. 15-cv-2556, 2018 U.S. Dist. LEXIS 138101, at *6 (D. Colo. Aug. 8, 2018) (citation omitted).

Under this standard of review (or any other), the Court should sustain the ZHP Defendants' objections and completely reverse the order denying the motion for leave to amend.  A "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Amendment should be allowed unless it is apparent that: (1) the amendment would be futile; (2) the amendment would prejudice the opposing party; (3) the moving party has demonstrated undue delay,

---

[2]     A "ruling on a procedural matter" is reviewed for abuse of discretion.  Fed. R. Civ. P. 53(f)(5).  But an order denying a motion for leave to amend a pleading is not a procedural matter.

bad faith [or] dilatory motives; or (4) the moving party has repeatedly failed to cure deficiencies under previously allowed amendments. *Venuto v. Atlantis Motor Grp., LLC*, No. 17-3363, 2020 WL 998945, at *4 (D.N.J. Mar. 2, 2020).

Here, the defenses at issue are meritorious, Plaintiffs will suffer no prejudice from their assertion, the brief delay between the answer and motion for leave would cause minimal, if any, prejudice, and there are no other grounds for denying the motion.

## I.    THE ZHP DEFENDANTS' PROPOSED AMENDMENTS ARE NOT FUTILE.

Although it did not formally decide the matter, the Special Master's order was clearly colored by his view that "there are substantial reasons to believe that the . . . defense[s] would fail under both states' laws." (ECF 2701, at 7.) That was incorrect. The proposed defenses are clearly meritorious and easily pass muster under the motion-to-dismiss standard that governs the sufficiency of an amendment. *See, e.g.*, *Juul Labs, Inc. v. 4X PODS*, No. 18-15444, 2020 WL 2029327, at *5 (D.N.J. Apr. 28, 2020) ("To determine whether an amendment is []sufficient on its face, the [c]ourt employs the standard applied to Rule 12(b)(6) motions to dismiss.").

*The EmblemHealth Assignment plausibly violates New York's champerty statute.*    The Special Master correctly cited the New York champerty statute, codified at Judiciary Law § 489, which provides that "no corporation . . . directly or indirectly . . . shall solicit, buy or take an assignment of . . . any claim or demand,

with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Jud. Law § 489.  The Special Master also correctly stated that "New York courts have construed this statute to require that 'the *primary purpose* of the [assignment] must be to enable one to bring a suit, and the intent to bring a suit must not be merely incidental or contingent.'"  (ECF 2701, at 8 (quoting *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256 (N.Y. 2016)) (alteration in SMO).)

The Special Master erred, however, when he established a new requirement, not grounded in any New York authority, that an assignment can be champertous only if it is made for the purpose of bringing a specific lawsuit against a specific defendant on a specific theory, rather than for purposes of litigation more generally. The Special Master noted that the Emblem Assignment formed "part of a substantial transaction"—i.e., one that assigned many claims, not just claims related to valsartan-containing drugs—and that transaction took place before the recall at issue.  He therefore reasoned that the transaction "was not motivated by an intent to bring suit against producers of valsartan" specifically.  (ECF 2701, at 9.)  The Special Master did not cite any authority in support of this distinction between litigation generally and litigation against a particular defendant on a particular theory.  And his distinction finds no support in the language of the statute, which proscribes any assignment "with the intent and for the purpose of bringing ***an*** action or proceeding thereon."  N.Y. Jud. Law § 489 (emphasis added).  "[T]he article 'a[n],' when used

prior to a countable noun, is most often understood to refer to a nonspecific thing." *Walmart Inc. v. Cap. One, N.A.*, No. 23 Civ. 2942, 2024 WL 1311907, at *9 (S.D.N.Y. Mar. 26, 2024); *see, e.g.*, *United States v. Johnman*, 948 F.3d 612, 618 (3d Cir. 2020) ("As an indefinite article, 'a' or 'an' 'implies that the thing referred to is nonspecific.'") (citation omitted).  Had the New York legislature wished to impose the specificity limitation suggested by the Special Master, it easily could have done so by drafting the statute to prohibit an assignment taken "with the intent or for the purpose of bringing ***a specific*** action."  It did not.

Moreover, the Special Master's reasoning is inconsistent with the purpose of the champerty doctrine, which is "to prevent or curtail the commercialization of or trading in litigation." *Justinian Cap.*, 65 N.E.3d at 1254 (citation omitted).  The fact that Plaintiffs purchased many potential lawsuits at once suggests an even greater degree of "trading in litigation" than if they had purchased just one.  That is particularly so because the Special Master acknowledged that purchasing assignments to sue on them "appear[s] to be part and parcel of how [MSP] conducts its business."  (ECF 2701, at 5.)

Without the specificity requirement invented by the Special Master, the ZHP Defendants can easily show that Plaintiffs took the EmblemHealth Assignment for the purpose of bringing ***a*** lawsuit.  As Judge Kugler recognized earlier in this litigation, MSP's entire business model consists of buying claims "only to sue on

them." (ECF 2657, at 9.)  *See, e.g.*, *Justinian Cap.*, 65 N.E.3d at 1257 (relying on the fact that plaintiff's "business plan . . . was acquiring investments . . . in order to sue on them").  Moreover, the EmblemHealth Assignment explicitly states under the header "Purpose of Assignment" that it is made "in order to facilitate Assignee's ability to initiate and pursue the recovery of the Assigned Medicare Recovery Claims, ***including in any litigation***."  (ECF 2672-3 (emphasis added).)  Finally, the fact that EmblemHealth received consideration primarily in the form of a 50% stake in any recovery provides further evidence of litigation-driven intent.  *Cf. Elliot Assocs., L.P. v. Republic of Panama*, 975 F. Supp. 332, 339 (S.D.N.Y. 1997) (finding no champertous intent because (1) the assignee "paid some $8 million for the notes, not just a token sum"; and (2) "[u]nlike in other cases where the assignor retained an interest in the outcome of litigation, [assignors] retained no interest in the notes").

Taken together, this evidence is more than sufficient to state a "plausible" defense.  *Juul Labs*, 2020 WL 2029327, at *5.  Moreover, as the Special Master himself acknowledged, "champertous intent is a fact-sensitive" inquiry.  (ECF 2701, at 11 (quoting *MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. 19-21607, 2021 WL 2177548, at *10 (D.N.J. May 28, 2021)).)  As *Abbott Laboratories* went on to explain, that renders the issue "inappropriate for resolution" under the motion-to-dismiss standard that governs here.

*The SummaCare Assignment plausibly violates Ohio's prohibition on maintenance and champerty.*  For much the same reasons, the ZHP Defendants can plausibly demonstrate that the SummaCare Assignment violates Ohio's prohibition on champerty.  As previously discussed, MSP and SummaCare's assignment agreement specified that it was governed under Ohio law.  (ECF 2672-4.)  And under Ohio law, "'[c]hamperty' is a form of maintenance in which a nonparty undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues." *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 219 (Ohio 2003).  An assignment is void if the assignee "'would receive a stake' in the assignors' claims." *Hiles v. NovaStar Mortg., Inc.*, No. 1:12-cv-392, 2012 WL 4813775, at *4 (S.D. Ohio Oct. 10, 2012) (citation omitted).

The Special Master suggested that the common-law doctrine of champerty was abrogated by Ohio Revised Code § 1349.55, which took effect in August 2008. Not so.  Section 1349.55 establishes *disclosure* requirements for transactions in which "a company makes a cash payment to a consumer who has a pending civil claim or action in exchange for the right to receive an amount out of the proceeds." Ohio Rev. Code § 1349.55(A)(1).  The statute appears to be concerned with litigation financing agreements (cash advances to plaintiffs that sue in their own name) rather than cases involving a wholesale assignment of rights.  More importantly, it says nothing about the substantive permissibility of any transaction.  In any event, even

9

the disclosure requirements do not apply in cases like this one because there was no "***pending*** civil claim or action," Ohio Rev. Code § 1349.55(A)(1) (emphasis added), at the time of the champertous agreement.  As such, courts applying Ohio law have dismissed cases predicated on analogous champertous assignments well after the enactment of the statute.  *See Hiles*, 2012 WL 4813775, at *4 (decision from 2012 involving assignment from 2011 dismissing case because "[c]hampertous assignments are void"); *see also MSP Recovery Claims, Series LLC v. Abbott Lab'ys*, No. 19-21607, 2023 WL 8718823, at *12-13 (D.N.J. Dec. 18, 2023) (discussing elements of champerty in decision from December 2023).

The Special Master relied heavily on an advisory bar discipline opinion discussing the ethical considerations surrounding litigation financing.  Advisory Opinion No. 2012-3 of the Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 2012 WL 6591524, at *1 (Dec. 7, 2012).  Such a document has no precedential value.  Moreover, the opinion said nothing about assignments per se, instead focusing on transactions "advanc[ing] funds to individuals who have pending civil (usually personal injury) claims" in exchange for "the amount advanced plus additional financing fees."  *Id.* at *2.  The Special Master also relied on a Minnesota Supreme Court decision, *Maslowski v. Prospect Funding Partners LLC*, but that case did nothing but list Ohio among states that "have adopted statutes to regulate consumer litigation financing agreements."  944 N.W.2d 235,

241 n.4 (Minn. 2020).  It certainly did not hold that Ohio had abolished any substantive limits on champertous assignments.

**The SummaCare Assignment is plausibly void under Ohio law because it assigned a contingent future interest.**  Lastly, the ZHP Defendants can plausibly show that the SummaCare Assignment independently violates Ohio's prohibition on "assign[ing] the right to the future proceeds of a [judgment or] settlement if the right to the proceeds does not exist at the time of the agreement." *W. Broad Chiropractic v. Am. Fam. Ins.*, 912 N.E.2d 1093, 1097-98 (Ohio 2009).  Rights to a claim or to the proceeds from a future claim cannot be assigned where "liability ha[s] yet to be established and no settlement [or judgment] proceeds exist[]." *Blue Ash Auto Body, Inc. v. Frank*, 190 N.E.3d 1180, 1182 (Ohio Ct. App. 2022); *see Three-C Body Shops, Inc. v. Francois*, No. 19AP-471, 2020 WL 5821316, at *3 (Ohio Ct. App. Sept. 30, 2020) ("There must be an existing and present determination of liability and right to damages" at the time of assignment.).  To the extent the Special Master held that this defense was also superseded by § 1349.55 in 2008, that was clearly wrong, since every relevant case applying it post-dates the enactment of that statute.

The Special Master also claimed that SummaCare assigned "its existing rights" (ECF 2701, at 10 n.4), but that is clearly wrong, too.  At the time of its assignment, SummaCare had not established the right to any damages from the ZHP Defendants; indeed, that issue still remains to be decided.  If the Special Master

meant that a cause of action had accrued by the time of the assignment, that fact is irrelevant. *See Three-C Body Shops*, 2020 WL 5821316, at \*3 ("Although [plaintiffs] suggest[] that [assignor's] cause of action against [defendant] was assignable because the cause of action had already accrued at the time of the assignment, the [Ohio] Supreme Court rejected this same argument in *W. Broad Chiropractic*.").

The Special Master also stated that "[t]he validity of assignments . . . ha[s] long been recognized."  (ECF 2701, at 10 n.4 (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274-85 (2008) & *MSP Recovery Claims Series LLC v. Grange Ins. Co.*, No. 5:19cv00219, 2019 WL 6770729, at \*12 (N.D. Ohio Dec. 12, 2019)).)  But both *Sprint* and *Grange Insurance* decided only that the plaintiffs had federal Article III standing, not whether the assignments were valid under state law.[3] As such, they have no relevance to any substantive state-law limits on assignments.

## II.  THE ZHP DEFENDANTS' PROPOSED AMENDMENT WOULD NOT UNDULY PREJUDICE PLAINTIFFS.

"*[U]ndue* prejudice is 'the touchstone for the denial of leave to amend.'" *Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc.*, 663 F.2d 419, 425 (3d Cir.

---

[3]    *Grange Insurance* mentioned common-law champerty (though not the prohibition on assigning contingent future interests) but determined only that the issue had not properly been raised in the motion to dismiss and could be revisited at the summary judgment stage.  2019 WL 6770729, at \*15.

1981) (emphasis added) (citation omitted).  By contrast, "incidental prejudice is not a sufficient basis to deny an amendment."  *Ajax Enters. v. Fay*, No. 04-4539, 2007 WL 766335, at *3 (D.N.J. Mar. 7, 2007); *see, e.g.*, *Juul Labs*, 2020 WL 2029327, at *4 ("mere inconvenience in defending a suit" constitutes "incidental prejudice" and does not justify denying leave to amend).  In concluding that this high standard of prejudice could be met, the Special Master erred in multiple respects.

*First*, the Special Master fundamentally misstated the procedural posture of this case by repeatedly stating that the parties were "on the eve of the first bellwether trial."  (ECF 2701, at 6, 7, 12.)  They are not.  There is no longer any bellwether trial scheduled, much less one scheduled imminently.  To the contrary, immediately prior to oral argument before the Special Master, Judge Kugler announced that due to his impending retirement, no trial would go forward this spring.  (*See* ECF 2698, 3:24.)  The questions of when, how, and even whether a bellwether trial might proceed remain open.  (*Id.* 4:16-23.)  At a minimum, however, no such trial is imminent.  If there is to be a bellwether trial, there will almost certainly be more time between now and any trial date than there was between the date of the initial answer in December 2023 and the originally-scheduled trial in March 2024.  That is in addition to the two months that have already elapsed since the ZHP Defendants filed their motion to amend.  In other words, Plaintiffs have more time to prepare to meet these

13

affirmative defenses than they would have had if the defenses had been included in the answer and the trial had gone ahead as planned.[4]

**Second**, the Special Master suggested that inclusion of the proposed defenses would "lead to extensive discovery" and resultant delay.  (ECF 2701, at 7; *see id.* at 11 ("additional and extensive discovery").)  This, too, is incorrect.  For starters, the need for "some additional discovery" does not suffice to deny leave to amend an answer.  *Venuto*, 2020 WL 998945, at *5 (citation omitted) ("[A] single extra deposition does not reach the level of undue prejudice."); *see, e.g.*, *Ajax Enters.*, 2007 WL 766335, at *3 (rejecting claim of prejudice based on need to conduct new discovery).  That principle applies with special force here.  In light of the unique nature of a bellwether trial in a multi-district proceeding, discovery was **already closed** when the ZHP Defendants filed their initial answer.  Had these defenses been included in that answer, it could not have changed the course of discovery or obviated any potential need to reopen it.

Moreover, if any additional discovery is necessary, it would likely be very limited in scope.  While the Special Master is correct that the proposed defenses can involve fact-intensive inquiries (*see* ECF 2701, at 11), most of the relevant facts—

---

[4]     Even if trial really were imminent, that alone would not justify denying leave to amend.  It is well established that "amendments may be made during trial, after the close of testimony, or even after judgment."  *Ajax Enters.*, 2007 WL 766335, at *2.

such as the nature of the assignments and the nature of Plaintiffs' business model— have already been discovered.  And to the extent any remain undiscovered, they would all be in Plaintiffs' possession.

***Third***, the Special Master suggested that if amendment were allowed, Plaintiffs would "consider designating a new class representative" and thereby require "additional discovery, briefing, and judicial decision-making on class certification issues." (ECF 2701, at 12.)  But that cannot possibly be a basis to deny leave to amend because the same would have been true had these defenses been included in the initial answer.  The answer itself was filed ten months after the class certification order and eight months after the bellwether trial was set.  In any event, the defendants raised the possibility that MSP would be subject to a unique champerty defense in their initial class certification opposition in early 2022.  (*See* ECF 2010, at 21-22.)  That did not prompt Plaintiffs or their counsel to seek to designate a new class representative then, and is therefore unlikely to do so now.

The Special Master also noted the fact that "summary judgment motions ha[d] been filed."  (ECF 2701, at 6.)  Once again, that is irrelevant.  "It is not unusual for pleadings to be amended . . . at the summary judgment stage of a case." *Ajax Enters.*, 2007 WL 766335, at *2.  That a party has already filed a motion for summary judgment and will need to file an additional one following amendment might constitute incidental prejudice, but "is not enough to overcome 'the liberal

approach'" embodied in the federal rules. *Venuto*, 2020 WL 998945, at \*5 (citation omitted).  Moreover, the suggestion that amendment cannot be made after summary judgment briefing or a summary judgment order would abrogate the longstanding principle that amendments can be made at trial or even after judgment.

## III.   THE REMAINING FACTORS MENTIONED BY THE SPECIAL MASTER DO NOT JUSTIFY DENYING AMENDMENT.

Although the Special Master's decision was based primarily on his evaluation of the merits and purported prejudice, he mentioned two additional factors: the mere fact of delay itself, and his view that challenges to the assignments would be pointless.  To the extent that either formed the basis for his decision, that, too, was wrong.

*First*, the Special Master suggested that the ZHP Defendants' "motion for leave to amend simply comes too late."  (ECF 2701, at 12.)  It is black-letter law in this circuit that "[d]elay alone is not sufficient to justify denial of leave to amend." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see, e.g.*, *Long v. Wilson*, 393 F.3d 390, 401 (3d Cir. 2004) ("[W]e did not believe that the [defendant] had to supply a compelling reason for its delay in asserting the three additional defenses in view of the absence of prejudice to the plaintiff.").  And, in any event, the delay here was hardly substantial.  The motion to amend was filed within three months of the answer and long before any potential trial.  The Third Circuit has routinely found amendment appropriate following much greater delay.  *See Long*, 393 F.3d at 401

(defense asserted 14 months after answer and only when raised sua sponte by the magistrate judge); *Heyl & Patterson*, 663 F.2d at 424-27 (addition of new affirmative defenses specified in opening statement).

**Second**, the Special Master suggested that permitting amendment would "accomplish[]" "nothing meaningful" because even if the assignments were invalidated, the claims would remain as property of the assignors. (ECF 2701, at 11.)  The claims could theoretically then be pursued by the assignors as absent class members, represented by some unknown new named plaintiff, rather than by MSP as the class representative. (*Id.*)  If this logic were taken seriously, a defendant would never be able to challenge the validity of an assignment (since the assignor could bring the same claim) or the adequacy of a class representative (since that representative could still pursue the same claim as an absent class member).  That is not the law.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should sustain the ZHP Defendants' objections to the Special Master's Order, reverse the Special Master's ruling in SMO 97, and permit the filing of a Second Amended Answer.

Dated: May 9, 2024                 Respectfully submitted,

                                    By: *<u>/s/ Jessica Davidson</u>*
                                    SKADDEN, ARPS, SLATE, MEAGHER &
                                    FLOM LLP
                                    Jessica Davidson (NY Bar No. 6034748)

Allison M. Brown (NJ Bar No. 044992012)
One Manhattan West
New York, New York 10001
Phone: (212) 735-3222
Fax: (917) 777-3222
jessica.davidson@skadden.com
allison.brown@skadden.com

Nina R. Rose (DC Bar No. 975927)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 661-0525
nina.rose@skadden.com

*Attorneys for Zhejiang Huahai
Pharmaceutical Co., Ltd., Huahai U.S.,
Inc., Prinston Pharmaceutical Inc., and
Solco Healthcare U.S., LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 9, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson (NY Bar No. 6034748)