## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

### CAMDEN VICINAGE

| | | |
|---|---|---|
| IN RE VALSARTAN, | : | MDL No. 19-2875(RBK/KW) |
| LOSARTAN, AND IRBESARTAN | : | |
| PRODUCTS LIABILITY | : | |
| LITIGATION | : | |
| | : | |

**This Order Relates to all Cases**

### SPECIAL MASTER ORDER NO. 98

Plaintiffs have moved under Rule 37 of the Federal Rules of Civil Procedure for sanctions arising out of the violation of orders compelling the CEO of Defendant Zhejiang Huahai Pharmaceutical Co, Ltd. ("ZHP") to appear for his deposition and compelling ZHP to produce the custodial file of Mr. Chen's Chief of Staff and other relevant documents. (Doc. 1838). Plaintiffs ask that the Answer and Defenses of ZHP and its subsidiaries be stricken; that the allegations in Plaintiffs' Amended Master Complaints with respect to ZHP and its subsidiaries be deemed admitted for all purposes; and that ZHP and its subsidiaries be precluded from defending Plaintiffs' claims. (Doc. 1838 at 30.) ZHP, along with its subsidiaries, opposes the motion. Although the terminating sanctions sought are not warranted, Plaintiffs are entitled to relief that attempts to cure the prejudice resulting from ZHP's failure to comply with court-ordered discovery. Accordingly, Plaintiffs' motion for sanctions will be granted to the degree set forth below.

1

## I. BACKGROUOND

Plaintiffs' motion for sanctions is supported by a tortuous record of discovery disputes spanning more than three years.  Two discovery disputes in particular animate Plaintiffs' Motion for Sanctions: (1) the failure of ZHP's CEO to  sit for  his court-ordered  deposition;  and  (2)  ZHP's  violations  of  orders  requiring  the production of documents.  Each discovery transgression will be recounted in turn.

### A.  Failure of Baohua Chen to Appear for His Court-Ordered Deposition

On December 31, 2020, Plaintiffs were granted leave to depose Baohua Chen, subject to ZHP moving to preclude Chen's deposition "after a sufficient deposition record is developed." (Doc. 704).  That same order also granted Plaintiffs leave to file a motion requesting Mr. Chen's custodial file.  (*Id.*)

In their agenda letter of April  27, 2021 (Doc. 1189),[1] Plaintiffs requested the production of Mr. Chen's custodial file.  (Doc. 1189.)  In response, ZHP filed a motion for a protective order, arguing that Mr. Chen's custodial file would be duplicative of voluminous document production that had already been made and that production of his custodial file could expose him to "severe criminal penalties under Chinese law given the nature of his public positions with the Chinese government

---

[1] Twice-monthly calls were conducted during the relevant time period, with counsel providing agenda letters to structure the phone conferences that are filed on the record.   In addition, the calls were recorded by a court reporter, with the transcripts filed on the docket.

2

and the highly confidential and sensitive state secret information that pervades his custodial file as a result." (Doc. 1244 at 2.)  Because Plaintiffs had "shown that Mr. Chen had direct involvement with issues central to this case," and that the prospects for prosecution of Mr. Chen could be "minimized by ZHP withholding and/or redacting the sensitive documents and producing a log of withheld documents, just as ZHP ha[d] done with respect to documents withheld under the Chinese State Secrecy laws," the motion for a protective order was denied and the motion to compel production of Mr. Chen's custodial file was granted.  (Special Master Order No. 25, Doc. 1315 at 6, 7.)

Invoking the "apex doctrine," ZHP then sought to preclude Mr. Chen's deposition, scheduled to take place on May 31, 2021. (Doc. 1247.)[2]  Concluding that Plaintiffs "have adequately shown that Mr. Chen's involvement and authority with respect to the development, manufacture, sale and recall of Valsartan was substantial and that it is likely that Mr. Chen has personal or unique firsthand knowledge regarding the matters at issue in this case," Special Master Order No. 28 denied the motion to preclude Mr. Chen's deposition.  (Doc. 1330.)

---

[2] The "apex doctrine" is a judge-made rule that seeks to limit depositions of individuals at the "apex" of a corporation based upon the commonsense proposition that lower-level employees are likely to have firsthand knowledge of the material facts and that deposing the top executives of a corporation is likely to impose a significant burden.  *See United States ex rel. Galmines v. Novartis Pharm. Corp.,* No. CV 06-3213, 2015 WL 4973626, at *2 (E.D. Pa. Aug. 20, 2015).

ZHP challenged this decision in an appeal to Judge Kugler. (Doc. 1386.)  In an order dated August 10, 2021, Judge Kugler denied ZHP's motion to vacate the Special Master Order and directed that Mr. Chen's deposition "take place upon the parties' agreement of when and where."  (Doc. 1475 at 2.)  Mr. Chen's deposition was then scheduled to occur by December 15, 2021.

In its agenda letter dated October 26, 2021, ZHP advised the Court that the Chinese government had verbally denied Mr. Chen's request for a permit to travel to Macao for his deposition. (Doc. 1673 at 1-2.)  During an October 27, 2021 case management conference, counsel for ZHP was instructed to stress to their Chinese counterparts that the Court had ordered Mr. Chen's deposition to occur by December 15, 2021. (Doc. 1696 at 6.) In its agenda letter dated November 22, 2021, ZHP informed the Court that, although the Chinese Communist Party Committee had granted Mr. Chen permission to travel to Macao to be deposed, the "Taizhou Public Security Bureau, Exit-Entry Administration and the Taizhou Federation of Industry and Commerce denied Mr. Chen's travel request on October 27, 2021," and "those denials were confirmed to ZHP on November 11, 2021." (Doc. 1766 at 4.)  To date, Mr. Chen has yet to be deposed in this action.

### B.  Failure to Produce Documents

In conjunction with their efforts to obtain Mr. Chen's deposition, Plaintiffs also sought production of (1) the custodial file of Mr. Chen's chief of staff, Ziaofang

4

Kong, (2) an investigative report regarding contamination of irbesartan, (3) all documents referencing "TC-201729," the code for the investigation regarding the irbesartan contamination, and (4) all documents relating to the batch testing for nitrosamines referenced in PRINSTON0075797. Plaintiffs first raised its requests via letter dated April 27, 2021 (Doc. 1189.) During a status conference on May 12, 2021, ZHP was ordered to produce the custodial file of Ms. Kong. (Doc. 1243 at 32:15-33:1.) ZHP was ordered to produce the remaining materials requested in Plaintiffs' April 27 letter via Special Master Order No. 20, filed on May 11, 2021. (Doc. 1233.)

On May 10, 2021, Plaintiffs filed a motion to compel the production of twenty-three documents that ZHP withheld as Chinese state secrets (Doc. 1231), and ZHP subsequently filed a cross-motion for a protective order (Doc. 1268). Special Master Order No. 35 (Doc. 1482), filed on August 12, 2021, considered the competing motions in the context of the applicable factors enunciated in *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. Of Iowa*, 482 U.S. 522 (1987), and *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992).[3] After evaluation of those factors, Special Master Order No. 35 ordered

---

[3] The factors are:

> (1) the importance to the litigation of the documents requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative

5

ZHP to produce all but three of the documents that had been withheld under the China state secrets law.  (Doc. 1482.)[4]

ZHP subsequently moved to vacate Special  Master Order No. 35.  (Doc. 1550-1.)  Judge Kugler, in a lengthy Opinion and Order filed on December 20, 2021, undertook a comprehensive review of the factors enunciated in *Société* and *Wultz v. Bank of China, Ltd*., 910 F. Supp. 2d 548, 553 (S.D.N.Y. 2012).  *See In re Valsartan, Losartan, and Irbesartan Products Liab. Litig*., No. MDL 2875 (RBK), 2021 WL 6010575 (D.N.J. Dec. 20, 2021).  In affirming Special Master Order No. 35 in its entirety, Judge Kugler articulated a rationale that applies with special force in considering Plaintiffs' present sanctions motion:

> Even though between a "legal rock and  hard place," PRC [People's Republic  of China] defendants cannot enter the U.S. market expecting a  possible shield from unfavorable discovery by PRC blocking statutes. As one judge's decision has implied, if you don't like the rules, then stop doing business in the U.S.

---

> means of securing the information; (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located; (6) the extent and nature of the hardship that enforcement would impose upon the foreign entity; and (7) the good faith of the party opposing discovery.

(Doc. 1482 at 11.)

[4] Because "China's interests in confidentiality would appear to be greatest with respect to its own documents," (Doc. 1482 at 16), protection from production was granted for the three documents "created by an organ of the Chinese government." (*Id.*)

6

Any expectation that a PRC law will successfully shield discovery in a U.S. litigation needs a tempering of realism. That is, PRC defendants must know from the outset they *risk serious consequences if and when they fail to obey a U.S. court's order to compel discovery*. These consequences arise from the clearly enumerated authority under Rule 37, which U.S courts wield as needed.

An example of a court imposing such a tempering realism is found *In re Activision Blizzard, Inc*., 86 A.3d 531, 552 (Del. Ch. Ct. 2014). There, the court required French defendants to make a good faith effort to obtain promptly the assistance of the appropriate French authority in deciding the disclosable nature of documents at issue. This good faith effort is similar to what I see ZHP has done. However, the Activision court's patience was not infinite in that the French defendants were given a deadline by which the blocked French documents had to be produced, with or without the French authority assistance. The court stated:

> "If [document] production has not been authorized [by the French authority] by March 31, 2014, when substantial completion of document production is due, then the [French] Defendants shall produce on that date the documents called for by the plaintiff's discovery requests or face the prospect of sanctions in this court. In considering sanctions, the court will be guided by the factors cited in Section 442 of the Restatement [Third of the Foreign Relations Law] and will take into account the recommendation in Section 442(2)(c) of the Restatement that the appropriate sanctions involve making 'findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.' Restatement § 442(2)(c)."

(*Id.* at *18-19; emphasis in original.) Judge Kugler entered the following order:

Plaintiffs' Motion To Compel (Doc. 1231) is GRANTED IN PART AND DENIED IN PART; and FURTHER ORDERS:

7

> by the next Case Management Conference ["CMC"] in this MDL scheduled to occur on 5 Jan 2022, ZHP shall produce all documents that are the subject of Plaintiffs' Motion to Compel, along with all documents listed as duplicates of these documents on its State Secrets Review Log of documents withheld as Chinese state secrets, with the exception of the following three documents and any duplicates of the following three documents: ZHP0255672, ZHP02622051, and ZHP02622054

During a status conference on June 16, 2021, counsel for ZHP informed the Court of technical difficulties that ZHP and its discovery vendor were facing in the production of Mr. Chen's and Ms. Kong's files.   (Doc. 1326 at 14:19-15:24.) Because these difficulties required hardware that would not be available until July 2021, the deadline for production of Mr. Chen and Ms. Kong's files was extended to July 12, 2021. (*Id*. at 15:16-16, 30:16-23.)

After ZHP failed to produce the documents by July 12, 2021, Plaintiffs moved to compel ZHP's compliance with the Court's order to produce the custodial file of Ms. Kong and the litigation hold letters issued to ZHP employees, as well as to correct purportedly deficient productions made in response to Special Master Order No. 20. (Doc. 1405.) ZHP opposed the motion and objected that Plaintiffs mischaracterized the Court's order regarding Ms. Kong's file. (Doc. 1485.)  During the September 10, 2021 oral argument regarding Plaintiffs' motion to compel, counsel for ZHP notified the Court for the first time that the newly enacted China Data Security Law prevented the production of Ms. Kong's files. (Doc. 1573 at 60:10-23.)  Counsel for ZHP raised the preclusive effects of the Data Security Law

only after it was told that it would be ordered to produce Ms. Kong's file. (*Id*. at 62:9-18.) Special Master Order No. 54, issued on November 12, 2021, directed ZHP to produce the relevant, non-privileged parts of Ms. Kong's custodial file by November 22, 2021, with the qualification that the impact of the Data Security Law would be addressed "if raised as a ground for withholding from discovery this potentially significant source of discovery." (Doc. 1753 at 5, 9-10.) On November 22, 2021, ZHP informed the Court it could not produce Ms. Kong's custodial file because it was unable to identify "the specific 'competent authority' that can grant ZHP permission to resume its document production." (Doc. 1766 at 5.) ZHP noted it was seeking to find the competent authority that could grant it permission to produce the documents, but that these efforts were unsuccessful because the Chinese government had not passed implementing regulations to enforce the law. (*Id*. at 5.) Counsel for ZHP also represented that they had sought to confer with Plaintiffs' counsel to extend the deadlines for document production set forth in Special Master Order No. 54. (*Id*. at 5-6.) During a December 1, 2021 status conference, counsel for ZHP informed the Court that Plaintiffs' counsel was not amenable to an extension of the production deadlines. (Doc. 1828 at 14:13-15:1.)

Plaintiffs represent that ZHP has provided just four documents from Ms. Kong's files for the period from January through June 2018, a highly relevant time period in this litigation. (Doc. 2182 31:13-32:7.) In response, counsel for ZHP

represented that all documents subject to Special Master Order No. 54 had been produced. (*Id*. at 34:23-35:1.)

### C. Plaintiffs' Motion for Sanctions

On December 30, 2021, Plaintiffs filed the at-issue "Motion for Rule 37 Sanctions against ZHP." (Doc. 1838.) In support of their motion, Plaintiffs assert that the requested sanctions are the only sanctions that will remedy the prejudice they have faced as a result of ZHP's violations of the Court's discovery orders. (Doc. 1838 at 23.) Plaintiffs also assert sanctions are necessary to deter other foreign corporations from failing to comply with discovery orders. *Id.*

With regard to the violation of the court order requiring Mr. Chen to be deposed, Plaintiffs represent that Mr. Chen is "the linchpin of the ZHP organization" with unique knowledge of a purported "financially motivated cover up of ZHP's knowledge" regarding the contamination. (*Id*. at 25; *see also* Exhibits 2, 39 and 41 to Brief in Supp. of Mot. to Sanction (Docs. 1838-4, 1838-18, 1838-19.) Plaintiffs also contend they have been prejudiced by ZHP's failure to provide the custodial file of Ziaofang Kong, the native version of ZHP's report detailing its investigation of the contamination, and documents relating to the batch testing of valsartan API. (*Id*. at 26.) Plaintiffs assert that they cannot fully develop their claims without the requested discovery. *Id*.

In support of their motion, Plaintiffs cite to the Court's discussion of the use of sanctions to overcome a party's misplaced reliance on foreign blocking statutes as shields from U.S. litigation. *In re Valsartan, Losartan, & Irbesartan Prds. Liab. Litig.*, MDL No. 2875, 2021 WL 6010575 at *18-19 (D.N.J. Dec. 20, 2021). As such, Plaintiffs frame their motion for sanctions as an opportunity for the Court to deter other foreign corporations from asserting foreign laws as a means to avoid U.S. litigation obligations. (Doc. 1838 at 29.)

In its opposition, ZHP asserts that sanctions would be inappropriate in these circumstances because Plaintiffs have not first exhausted Hague Convention protocols for seeking Mr. Chen's deposition. (Doc. 1900 at 4-5.) Further, ZHP argues that the Court must deny Plaintiffs' motion because Plaintiffs cannot point to any bad faith conduct by ZHP in this discovery process. *Id*. ZHP supports its assertion that  it has acted in good faith by citing to its requests to the PRC government to allow Mr. Chen to travel for his deposition and its decision to voluntarily disclose additional documents in violation of the new Data Security Law. *Id*. at 5 and 15-16. ZHP asserts that its agreement to produce "all outstanding documents responsive to SMO 54" moots Plaintiffs' request for sanctions as it relates to the requested documents. *Id*. at 30. In response to Plaintiffs' assertion that Mr. Chen's deposition would offer necessary information, ZHP argues that Mr. Chen's deposition will reveal no information Plaintiffs did not obtain in their

depositions of seventeen other ZHP witnesses. *Id*. Finally, ZHP asserts that dismissal of its Answers and Defenses as a sanction would amount to a default judgment against ZHP and be inappropriate under the requisite balancing test. *Id*. at 23.

In reply to ZHP's contentions, Plaintiffs point out that the Court has rejected most of ZHP's opposition, including ZHP's contention that Plaintiffs should have sought relief under the Hague Convention. (Doc. 1921 at 4.) Plaintiffs further contend that ZHP has acted in bad faith by half-heartedly requesting permission for Mr. Chen to travel for the deposition. (Doc. 1921 at 10.) Plaintiffs assert that ZHP acted in bad faith by withholding Ms. Kong's custodial file until China's new Data Security Law went into effect in September 2021 despite being ordered to produce the file in May of 2021. *Id*. at 11. Regarding the requested documents, Plaintiffs contend that ZHP's promise to produce supplemental documents does not moot Plaintiffs' request for sanctions because the supplemental production made in February 2022 does not contain relevant documents. *Id*. at 13. Taken together, Plaintiffs assert these actions warrant the terminating sanctions they have requested. *Id*. at 13.

At a September 8, 2022 hearing regarding this motion, the Court questioned ZHP's failure to submit an affidavit or declaration explaining how the Chinese government evaluates requests for travel permits. (Hr'g Tr. 41:3-42:11, Sept. 8,

2022.)  More than one month later, on October 13, 2022, ZHP filed a declaration from Jacques deLisle, a professor of law and political science who concentrates his studies on Contemporary China and Asian Law, regarding the Chinese government's process of reviewing travel permit applications.  (Doc. 2175.) Plaintiffs objected to the Declaration, asserting that the submission was untimely and lacked sufficient support in controlling law and the present record.  (Doc. 2177.) Considering ZHP's delay in submitting the declaration and the declaration's conclusory explanations, the declaration was stricken by Special Master Order No. 75.  (Doc. 2371.)

## II. DISCUSSION

### A. Authority to Sanction

Courts are vested with an inherent authority to sanction misbehaving parties that appear before them. *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d. Cir. 1994) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991)). In exercising this authority, a court must utilize restraint and discretion "to fashion an appropriate sanction for the conduct which abuses the judicial process." *Id*. In determining whether sanctions are appropriate, the Court must first consider whether the conduct at issue warrants sanctions and then assess the range of permissible sanctions and explain why less severe sanctions would be inadequate. *Id*. at 74.

Fed. R. Civ. P. 37 specifically empowers a court to sanction a party for failure to comply with discovery orders.  Rule 37(b)(2) provides:

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*See generally Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (establishing five factor balancing test for determination of sanctions).

ZHP asserts that a court may not sanction a party for its failure to comply with discovery orders when the failure is premised on a foreign law prohibiting disclosure. However, in the same case on which ZHP relies for this assertion, *In re Westinghouse Electric Corp. Uranium Contracts Litig.*, the court recognized the power of a court to sanction a party for its failure to comply with discovery orders despite the foreign illegality, finding "it to be implicit in *Société* that foreign illegality does not necessarily prevent a local court from imposing sanctions when, due to the threat of prosecution in a foreign country, a party fails to comply with a valid discovery order." 563 F.2d 992, 997 (10th Cir. 1977). Other courts have

14

similarly recognized the authority of a local court to sanction a party, regardless of the illegality of compliance. *See Wu v. Sushi Nomado of Manhattan, Inc.,* 2021 WL 7186735, at \*1 (S.D.N.Y. Oct. 29, 2021) (*Société* "'do[es] not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that law.'") Further, ZHP's argument would place a limitation on the Court's inherent authority to sanction a party that fails to comply with the judicial process, contrary to the Supreme Court's pronouncement in *Chambers* that the inherent power of a court to sanction cannot be limited by rule or statute. *See Chambers* 501 U.S. at 43.

ZHP also contends that this Court cannot sanction ZHP for its failure to comply with the Court's discovery order to depose Mr. Chen because such a sanction would only result from Plaintiffs' failure to exhaust Hague Convention protocols. (Doc. No. 1900 at 4-5.) ZHP's reliance on this argument is misplaced, as courts have held that a party is not required to resort to the Hague Convention protocols before utilizing general discovery rules. *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522, 543 (1987) (declining to adopt petitioner's invitation to establish new rule that "would require first resort to Convention procedures whenever discovery is sought from a foreign litigant."); *Inventus Power v. Shenzen Ace Battery*, 339 F.R.D. 487, 497-98 (N.D. Ill. 2021) (noting the Federal Rules are the "normal methods" for federal litigation involving

foreign nationals but the Hague Convention procedures may be used if they are "conducive to discovery"); *Munoz v. China Expert Technology, Inc*., 2011 WL 5346323 at *1 (S.D.N.Y. Nov. 7, 2011) (recognizing time considerations and location of alleged acts in the United States weigh against use of Hague Convention protocols). While there are circumstances where use of the Hague Convention protocols would be proper, the lengthy process of utilizing the Hague Convention protocols coupled with the PRC's history of denying depositions under those protocols demonstrate that Plaintiffs did not need to utilize the Hague Convention protocols, and any requirement for them to do so would unnecessarily lengthen this litigation.[5]

ZHP also claims that Plaintiffs' motion is procedurally deficient because Plaintiffs did not seek to confer with ZHP before filing the motion for sanctions. (Doc. No. 1900 at 11.) However, because Plaintiffs' motion for sanctions rests on the principles of Rule 37(b)(2)(A), rather than Rule 37(a), Plaintiffs did not need to confer with ZHP prior to filing their motion for sanctions. *See* Fed. R. Civ. P. 37(b)(2)(A) (recognizing court's authority to grant sanctions in response to a party's

---

[5] The court in *Inventus Power*, 339 F.R.D. at 503, reported that "'in more than 30 years under the Consular Convention and 13 years under the Hague Convention, China has granted permission for a deposition on only one occasion.'" Given the inability of ZHP to obtain permission for Mr. Chen to travel for his deposition it is a virtual certainty that it would have denied permission for Mr. Chen to be deposed under the Hague Convention.

noncompliance with a discovery order).  Therefore, this Court has the authority to sanction ZHP and this review is proper.

## B. Reasonable Efforts Analysis

Generally, a court does not need to find that a party has acted in bad faith to sanction the party for its failure to comply with a discovery order.  *Flexsteel Pipeline v. Chen*, 2019 WL 13164175, at *4 (N.D. Fl. Nov. 26, 2019).  Rather, sanctions are appropriate where a court finds that the party has failed to make all reasonable efforts to comply with the court's discovery order.  *Id*.  Courts have found that where a party simply accepts the limitations placed by foreign laws that prevent compliance with a discovery order, this acquiescence is similar to acts of bad faith by the party worthy of sanctions. *See Estate of Boyles*, 2021 WL 3292727 at *7 (M.D. N.C. Aug. 2, 2021) ("[I]nstead of seeking a workable solution, they basically threw their hands up. That is the equivalent to bad faith.")  As such, an analysis of whether ZHP took reasonable efforts to comply with discovery is central to any sanctions determination.

In determining whether a party has made all reasonable efforts to comply with a discovery order in foreign litigation, the personal responsibility of the party is an important consideration.  If a party claims it is unable to participate in discovery because of a foreign government's prohibitions, sanctions are appropriate against that party if the party is personally responsible for the foreign government's prohibition. *See Egyptian Chamois Co. v. Evergreen Marine Corp*., 2001 WL

17

1737458, at *4 (C.D. Cal. Jan. 25, 2001).  Sanctions are thus warranted despite the foreign-law prohibition "when the foreign-law prohibition was fostered by the disobedient party's conduct." *Id*. at *4 (citing *Richmark Corp v. Timber Falling Consultants*, 959 F.2d 1468, 1474-1465 (9th Cir. 1992)). Procedural deficiencies in applications for discovery related travel have been found by other courts to represent a party's lack of reasonable efforts. *See Flexsteel*, 2019 WL 13164175 at *6 (finding that a party's procedurally improper exit visa application that did not reflect the urgency of the deposition or the deadline for the deposition did not demonstrate reasonable efforts).  However, seeking the help of a third-party organization specializing in assisting travelers obtain permits or gathering supporting documents to appeal the denial have been found to be evidence of good faith.  *See Tower Mgf. Corp. v. Changhai Ele Mfg. Corp.,* 244 F.R.D  125, 129 (D.R.I. 2007).

Rather than requiring that the individual party actually contribute to the foreign prohibition, courts have found that a party is personally responsible for the noncompliance where the party failed to "take every step he lawfully and reasonably could" to comply with the discovery request.  *See RePet, Inc. v. Zhao*, 2018 WL 9802098 at *6-7 (C. D. Cal. January 16, 2018).  The personal responsibility of a non-complying party is even clearer where the record suggests that the party accepted the foreign-government prohibition at face value and then decided to use the prohibition as a shield against discovery obligations in the United States.  *Id*. ("there

18

is nothing in the record here to indicate Zhao has made any effort to pay the Chinese judgment in whole or in part . . . on the contrary, it appears that once Zhao learned he was placed on the List, he has used that placement to shield himself from full discovery obligations in this case.")

The present record reflects that ZHP has not taken all reasonable steps to comply with the Court's orders throughout this proceeding.  First, Mr. Chen's visa application did not reflect the importance of Mr. Chen's deposition in this litigation. The application does not mention that Mr. Chen was ordered by a federal court in the United States to appear for a deposition and does not list the importance of the deposition that the court order reflected.  *See* Defs. Ex. 2, Lu Declaration, "Official Denial Document."  Nor did ZHP attach a to the application a copy of the Special Master Order ordering Mr. Chen to be deposed.  *Id*.  The application's reference to Mr. Chen's need to travel "to deal with the company's overseas litigation matters" does not represent the significance of the matter, and such a lax description does not strike confidence in the Court regarding ZHP's efforts to make Mr. Chen available. *Id*.

To support its assertions that ZHP was appealing the denial of Mr. Chen's visa application, ZHP offered the declaration of Sihan Lu.  Lu Decl., Exhibit 2.  There, Lu explains that after the denial, Lu "conducted further discussions with [sic] Taizhou Federation of Industry and Commerce to determine if the restriction on Mr.

Chen's travel could be lifted or modified." *Id*. at 3.   Without explaining the content of these conversations or the Taizhou Federation of Industry and Commerce's explanation for the denial, the declaration goes on to explain that these efforts were "unsuccessful." *Id*. Such conclusory explanations do not reflect that ZHP acted in good faith to make all reasonable efforts to have Mr. Chen be deposed in this action. Nor is there any  indication that Mr. Chen himself was involved in the efforts to obtain permission to travel for his deposition.

While informal contacts may be one avenue available to appeal a denial, ZHP has not shown that it attempted to appeal the denial via more formal measures. ZHP's lack of forthrightness in regard to its efforts to appeal the rejection reflects that ZHP may have not meaningfully appealed the rejection but rather accepted the decision because it benefitted ZHP.  ZHP has not undertaken conduct which other courts have found to reflect a good faith effort, such as seeking the help of a third-party organization specializing in assisting travelers obtain permits or gathering supporting documents to appeal the denial.   Further, ZHP did not express its concerns regarding Mr. Chen's ability to obtain a travel permit earlier in this proceeding and did not suggest alternative discovery tools to combat any limitations regarding his ability to participate in a deposition, as other courts have found to be done in good faith when a party anticipates difficulty in obtaining a travel permit. *See Juul Labs, Inc. v. Chou*, 2022 WL 2161063, at *7 (C.D. Ca. 2022).  ZHP's lack

of efforts to appeal the denial of Mr. Chen's application reflects that ZHP failed to adhere to the Special Master's instruction to ZHP to stress the importance of the deposition. *See* Oct. 3, 2021 Hearing Transcript, ((10/27/2021 Tr. 4:8-9)) (Doc. 1838 at 3) ("report to your counterparts in China that the Court has ordered that the deposition be taken by December 15th so that they understand that there is a deadline in place and hopefully this deadline can be accommodated.")

Thus, in regard to Mr. Chen's deposition, ZHP's course of action reflects a "throwing up of the hands" regarding its ability to comply with the Court's directives and demonstrates that ZHP failed to act in good faith to utilize all avenues available to it to seek compliance. ZHP's lack of reasonable effort to find a workable solution to the problems presented in making Mr. Chen available for his deposition appears tantamount to failing to act in the first place. By failing to take all reasonable efforts to make Mr. Chen available for his deposition, ZHP has done the equivalent of making no effort to comply with the Court's discovery orders. Thus, ZHP's conduct is sanctionable under Rule 37.

ZHP has demonstrated a similar lack of reasonable efforts regarding the documents subject to Special Master Order No. 35. (Doc. 1482.) As noted above, both the Special Master and Judge Kugler conducted the comity analysis required under *Aerospatiale-Wultz* and held that the relevant documents were subject to disclosure.

21

While ZHP has produced some relevant documents, Plaintiffs have demonstrated that the evidence provided does not reflect all the requested information.  For example, it is inconceivable that Chen's Chief of Staff would have only four documents during a critical multi-month period.  Moreover, Plaintiffs contend the documents ZHP has produced lack the documents' metadata and lack information regarding ZHP's other valsartan grades.  (Doc. 1921 at 2.)  Without this information, these documents fail to show the scope of ZHP's knowledge regarding the contamination.  Plaintiffs assert that they will be at a disadvantage and unable to present all evidence relevant to their claims.   (Doc. 1921 at 2.)

ZHP's reliance upon  the PRC's new Data Security Law is unavailing.  (Doc. 1900 at 15.)  Courts, including this one, have repeatedly rejected attempts to use foreign blocking statutes as shields to protect against U.S. discovery. *See Richmark Corp*, 959 F.2d at 1479; ; *In re Valsartan, Losartan, and Irbesartan Products Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575 (D.N.J. Dec. 20, 2021).  Rather, courts have held that by deciding to conduct business in the United States, parties have "an obligation to comply with the lawful orders of the United States courts." *See Richmark,* 959 F.2d at 1479*; see also Yan v. Zhou*, 2021 WL 4059478 at *1 (E.D.N.Y. September 7, 2021) (ordering deposition of Chinese nationals who "undoubtedly availed themselves" of the  United States "when it was convenient for them").  Parties cannot do business in the  United States and then assert that they are

22

immune from complying with court orders in United States litigation under their home country's laws. *Yan*, 2021 WL 4059478 at *4.

Further, ZHP has pointed to no mitigating factors suggesting that non-compliance with the new Data Security Law risks substantial harm which would affect the Court's determination that it must comply with the Order. *See Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 160 (S.D.N.Y. 2011) (recognizing that a high risk of foreign conviction for noncompliance with foreign blocking statute weighs against Rule 37 sanctions). While ZHP suggests it *could* be subject to penalties under the new Data Security Law, the severity of this risk is not so clear as to dictate the denial of sanctions.

Here, ZHP has undertaken a course of conduct that reflects a lack of sincerity regarding its compliance with court orders compelling discovery. While PRC laws do make the disclosure of certain documents more difficult, the record reflects that ZHP has done little to help its own ability to disclose these documents. ZHP failed to raise the limitations that the Data Security Law imposed at any time before Plaintiffs moved for the court to compel production. (Doc. 1838 at 26.) While ZHP frames its lack of compliance as an issue of timing, this argument skirts the fact that these documents were requested well before the Data Security Law went into effect. (Doc. No. 1900 at 15-16.) Plaintiffs argue they requested the relevant documents in May and July 2021, weeks before the Data Security Law went into effect on

23

September 1, 2021.  (*Id.* at 15); (Doc. 1838 at 26.)   ZHP's citation to a Wall Street Journal article published on August 17, 2021 as support for the notoriety of the new Data Security Law further reflects that the effective date of the Law was well known. (*See* Doc. 1900, at 16,  n. 8).  This notice coupled with Plaintiffs' May 2021 and July 2021 motions reflect that ZHP likely had sufficient time to produce the documents prior to the new Data Security Law going into effect and chose to wait to assert the law as a reason for its noncompliance.  While such reliance may be skillful from ZHP's perspective, it is inconsistent with ZHP's duty to comply with American discovery while doing business in the United States.

It is true that since its initial disclosure, ZHP has produced additional documents. While ZHP emphasizes that it undertook these supplemental disclosures at risk of prosecution under the PRC's Data Security Law, these documents do not contain the breadth of information Plaintiffs are due. (Doc. 1900 at 15-16; Def.'s Ex. "B".)  While the supplemental document production  reflects ZHP's willingness to cooperate, the additional data disclosed does little to aid in the resolution of this case. (Doc. 1921 at 9.)

> As argued by Plaintiffs:
>
>> Plaintiffs are entitled to full discovery concerning the circumstances of the July 27, 2017 email, in which Jinsheng Lin notified numerous other high-level employees that ZHP's valsartan was contaminated with NDMA and then urged them to address the problem immediately. This email will be a significant piece of evidence in any trial against ZHP and its subsidiaries. Without all versions of the

24

irbesartan investigation in their native format and all other related documents, such as those referencing "TC-201729," Plaintiffs will be left at a disadvantage, which would impact Plaintiffs' ability to present all relevant evidence and to respond to ZHP's ongoing efforts to explain away this email and the related investigation. These unproduced documents could also show that ZHP knew of the contamination significantly earlier than July 27, 2017. The significance of these documents also flows from the brazen fact that ZHP never issued a litigation hold notice to Jinsheng Lin, Ph.D. who authored the email stating that it was known NDMA was in ZHP's valsartan API and that this was a problem with the manufacture of sartans in general, as well as the scant custodial production Plaintiffs were given for Dr. Lin after the email came to light. (Ex. 55; ZHP 296, Ex. 37)

Reply Br. in Supp. of Sanctions Motion (Doc. 1921) at 5.

ZHP's conduct in this proceeding reflects that ZHP seeks to benefit from the United States when it suits it but is unwilling to accept the obligation of participation in United States proceedings.   Judge Kugler warned ZHP this conduct was unacceptable in his opinion affirming Special Master Order No. 35 and that continued disregard for the authority of an American court to require discovery in defiance of the PRC laws would lead to Rule 37 Sanctions.

Taken together, ZHP's failure to undertake all reasonable efforts to make Mr. Chen available for his deposition and its decision to withhold documents that were subject to a court order reflect that ZHP has not been forthcoming in this discovery process. It is thus clear that ZHP has not taken all reasonable steps to comply with the Court's orders or to openly participate in this litigation.   From the record, it appears that ZHP has sought to benefit from the United States pharmaceutical market

25

but is unwilling to uphold its obligation to abide by United States discovery requirements.  As such, ZHP's conduct is sanctionable under Rule 37 of the Federal Rules of Civil Procedure.

### C. Degree of Sanctions

In considering what sanctions to impose, courts are guided by the multiple purposes of such sanctions to 1) penalize the culpable party or attorney; 2) deter others from engaging in similar conduct; 3) compensate the court and other parties for the expense caused by the abusive conduct; and 4) compel discovery and disclosure. *Wachtel v. Health Net, Inc*., 239 F.R.D. 81, 99 (D.N.J. 2006) (citing *Nat'l Hockey League v. Metro Hockey Club, Inc*., 427 U.S. 639, 643 (1976)). In determining whether to sanction foreign parties who cite foreign laws as justification for their noncompliance with discovery, courts have been guided by the Restatement (Third) of Foreign Relations. See *In re Activision Blizzard, Inc*., 86 A.3d 531, 552 (Del. Ch. 2014)*; In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, 2021 WL 6010575 at *18 (D.N.J. December 20, 2021) (warning ZHP that Court would be guided by same factors if ZHP continued to fail to comply with Court ordered discovery).

The Restatement suggests a court should not impose sanctions of contempt, dismissal, or default on a party for failure to comply with a court order that conflicts with foreign law unless the party has deliberately concealed the information or failed

26

to make good faith efforts to secure permission from the foreign authorities to disclose the materials. *See* Restatement (Third) of Foreign Relations Law § 442(b). The Restatement also recommends, however, that "a court may . . . in appropriate cases, make findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful." Restatement (Third) of Foreign Relations Law § 442(2)(c) (1987); *see also In Re Activision Blizzard*, 86 A.3d at 552.[6]  In granting a sanction to find an adverse inference against the party who fails to comply with a

---

[6] Restatement (Third) Foreign Relations Law of the United States Section 442(2) provides:

> If disclosure of information located outside the United States is prohibited by a law, regulation, or order of a court or other authority of the state in which the information or prospective witness is located, or of the state of which a prospective witness is a national,

(a) A court or agency in the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available;

(b) A court or agency should not ordinarily impose sanctions of contempt, dismissal or default on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort in accordance with paragraph (a);

(c) A court or agency may, in appropriate cases, make findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.

discovery order, the Restatement further suggests that a Court only grant this sanction where the request is made in good faith and there is evidence that the information requested, if disclosed, would support a finding adverse to the noncomplying party. *See* § 442(c) at Comment (f). Additionally, in crafting a sanction for failure to comply with a discovery order, at a minimum, a court must grant attorney's fees and costs associated with the motion for sanctions unless the failure to comply was "substantially justified or other circumstances make an award of expenses unjust." *Flexsteel Pipeline,* 2019 WL 13164175 at *1 (quoting Fed. R. Civ. P. 37(b)). A party's failure to comply with discovery is "substantially justified" under Rule 37 where there is a genuine dispute or "if reasonable people could differ as to the appropriateness of the contested action." *See Pierce v. Underwood*, 487 U.S. 553,565 (1988).

Under *Poulis*, the court must consider 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary; 3) the party's history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and 6) the meritoriousness of the claim or defense. 747 F.2d at 863. A court does not need to find all factors satisfied under the *Poulis* balancing test to grant sanctions. *Id.* Rather, the Court is vested with substantial discretion to shape sanctions fitting the circumstances of the case. *Id*.; *see also Giavaudan*

28

*Fragrances Corporation*, 2012 WL 12917268 at *16 ("*Poulis* does not provide a magic formula in which the decision to enter sanctions becomes a mechanical calculation.")  However, the extreme sanction of default is generally disfavored under Third Circuit precedent.  *See Wachtel*, 239 F.R.D. 81, 101 (D.N.J. 2006) (citing *Poulis*).

### 1.   The Extent of the Party's Personal Responsibility

When determining the personal responsibility of a party for its noncompliance, the court must weigh the responsibility of the party and the responsibility of the party's attorney. *See Carter v. Albert Einstein Medical Center*, 804 F.2d 805, 807 (3d Cir. 1986) (citing *Matter of MacMeekin*, 722 F.2d 32, 35 (3d Cir. 1983).  Although it is well settled law that clients are bound by the actions of their attorneys, courts are hesitant to dismiss claims where the noncompliance is due to the actions of attorneys, rather than their clients.  *See Matter of MacMeekin*, 722 F.2d at 35.  There is no indication in the record that ZHP has been unable to comply with the Court's discovery orders due to its attorneys' lack of diligence.  There is also little indication that it has been unwillingly lead down the path of non-compliance by its attorneys.  Without an indication that ZHP has unwillingly been forced to not comply by its counsel, this factor weighs in favor of granting Plaintiffs' requested sanctions.

### 2.   The Prejudice to the Adversary

29

The record reflects that ZHP's noncompliance has prejudiced Plaintiffs. Under the *Poulis* test, prejudice to an adversary includes "deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams*, 29 F.3d at 874 (citing *Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683 (3d Cir. 1988).) Without the information that the documents and Mr. Chen's deposition would have provided, Plaintiffs have been unable to obtain a complete understanding of the facts relevant to their claims.  Plaintiffs have shown cause to believe that both sources of evidence would provide additional information about when ZHP first became aware of the contamination.  (Doc. 1838 at 25-26.)  Because Plaintiffs have been unable to obtain a complete understanding of the information regarding ZHP's knowledge of the contamination, Plaintiffs have been prejudiced by ZHP's noncompliance. Therefore, this factor weighs in favor of granting sanctions.

### 3.  A History of Dilatoriness

In assessing a party's history of dilatoriness, a court must consider the party's problematic acts "in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875.  Conduct that occurs just once or twice is insufficient to establish a history

of dilatoriness.  *Reilly v. Home Depot U.S.A., Inc*., 670 F.Supp.3d 126, 144 (D.N.J. 2023).

To be sure, discovery with ZHP has been anything but smooth.  Discovery disputes necessitated repeated court involvement.  As ZHP emphasizes in its Brief in Opposition, however, ZHP has made seventeen party witnesses available to Plaintiffs for depositions.  (Doc. 1900 at 12.)  Further, this Court has recognized ZHP's good faith compliance with discovery in other areas of this proceeding.  *Id*. (citing to  finding that the level of review ZHP conducted in regard to initial document disclosures represented good faith).  Additionally, ZHP provided additional documentation, albeit unresponsive, in defiance of the Data Security Law.

### 4.  Whether the Conduct of the Party or the Attorney was Willful or in Bad Faith

ZHP's conduct appears to be sufficiently self-serving to warrant a finding of bad faith under the *Poulis* test.  In considering whether a party has willfully acted in bad faith under the *Poulis* test, the Third Circuit has considered whether the record reflects "intentional or self-serving behavior" without reason for exculpation. *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 875 (3d Cir. 1994).  Willful failure to comply with discovery orders without a plausible reason for the failure demonstrates bad faith.  *Bedwell*, 843 F.2d at 695.

31

By resting on the laws of the PRC that benefit ZHP by preventing discovery, ZHP has acted in bad faith by not making all reasonable efforts to find a solution that allowed compliance with this Court's orders.  Regarding Mr. Chen's deposition, ZHP accepted the denial of Mr. Chen's travel permit by the Taizhou authorities and has not demonstrated efforts to appeal the denial.  While ZHP points to its October 26, 2021 letter stating that ZHP was "still working with the Chinese government" to determine whether the restriction on Mr. Chen's travel could be lifted or modified, ZHP has pointed to no concrete efforts to appeal this denial.  (Doc. 1900 at 9; Doc. 1673 at 2.)  Rather, the record reflects that ZHP has not been forthcoming with its information regarding Mr. Chen's deposition, as the record indicates that ZHP waited almost two weeks to inform Plaintiffs that the Taizhou authorities had confirmed this denial.  (Doc. 1766, p. 3-4.)  Without additional evidence of efforts to appeal the denial, the record suggests that ZHP accepted the denial because it benefitted ZHP, the type of self-serving conduct that demonstrates bad faith.

Similarly, regarding the production of Ms. Kong's custodial files, the timing of ZHP's assertion of the Data Security Law as a hurdle to production appears similarly self-serving.  The Court ordered ZHP to add Ms. Kong as a custodian during oral argument on May 12, 2021.  ZHP requested an extension of its deadline for producing Ms. Kong's files on July 12, 2021, but did not object that the Data Security Law prevented the production despite the law having passed on June 10,

32

2021.[7]  (Doc. 1326 at 14:19-15:14.)  And ZHP had plenty of time to comply with the order governing production of Fong's file before the Data Security Law went into effect.  Only during oral argument on September 10, 2021 did ZHP raise the issue of the Data Security Law.  (Doc. 1573 at 60:9-61:20.)  While counsel for ZHP noted that its Chinese counsel and vendor were scrambling to see what could be done in the immediate aftermath of the law going into effect, there was approximately a three-month window where ZHP could have produced these files before the law was effective.  (*Id.*)   ZH"s general offer that "ZHP and its counsel in China have endeavored to determine the specific 'competent authority' that can grant ZHP permission to resume its document production" does not instill confidence as to the extent of ZHP's efforts. (Doc. 1766 at 5.)   ZHP's conduct evidences bad faith in its efforts to avoid its discovery obligations by using the laws of the PRC as a shield.  Accordingly, this factor supports the grant of lesser sanctions against ZHP.

### 5.   The Effectiveness of Lesser Sanctions

Because ZHP's noncompliance is focused on the information Mr. Chen's deposition and the relevant documents would provide, a targeted, lesser sanction would be appropriate.  The Restatement suggests a court may sanction a party via an adverse inference to the effect that the non-complying party has shielded

---

[7] *China Finalizes Data Security Law to Strengthen Regulation on Data Protection*, JONES DAY, June 2021, China Finalizes Data Security Law | Jones Day

information that would have favored the inquiring party. *See* Restatement (Third) on

Foreign Relations, § 442(c). Such a sanction would correct the prejudice Plaintiffs

have experienced because of their inability to rely on the nondisclosed information

in forming their case. Coupling this with the sanctions allowed under Rule 37 which

prevent a delinquent defendant from presenting evidence to rebut the adverse

inference, a sanction preventing ZHP from presenting testimony from Mr. Chen

would also be appropriate.  Because lesser sanctions are more likely to be effective

than dismissing ZHP's Answers and Defenses, this factor weighs against granting

Plaintiffs' requested sanctions.

### 6.   The Meritoriousness of the Claim or Defense

In considering the final factor, a court does not need to consider the merits of

the claim or defense at issue under a summary judgment standard.  *See Poulis*, 747

F.2d at 869-70.  Rather, a court may determine whether the allegations or defenses

as pleaded would be sufficient to support recovery or a complete defense at trial.  *Id*.

Where claims have survived the summary judgment hurdle and are in a posture to

proceed to trial, the claims are meritorious under the *Poulis* test.  *See Briscoe v.

Klaus*, 538 F.3d 252, 263 (3d Cir. 2008).   The meritoriousness factor is "'neutral

and not dispositive' in the *Poulis* analysis when both sides' positions appear

reasonable." *Bancorp Bank v. Condor Developers, LLC*, 2017 WL 11812533, at *5

(D.N.J. Jan. 18, 2017) (citing *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co*.,

05/02/2024 SL1 1807617v4 114548.00002

843 F.2d 683, 696 (3d Cir. 1988)).  Here, ZHP filed both a motion to dismiss and a motion for summary judgment (Docs. 520, 2567). Plaintiffs similarly filed a motion for summary judgment on several claims asserted against ZHP. (Doc. 2569.) Following the Court's determination on these filings, each party has several claims remaining. (Doc. 2695.)  As both parties have outstanding claims that remain pending and appear reasonable, this factor is neutral in the evaluation of sanctions.

### 7. *Poulis* Determination

 Under the *Poulis* test and precedent providing that Plaintiffs' requested relief should be a last resort, an order granting all of Plaintiffs' requested relief would be improper.  However, such a finding does not imply that ZHP's conduct was proper. Instead, narrower sanctions tailored to address the prejudice ZHP has caused Plaintiffs are more appropriate. Looking to the guidance that the Restatement (Third) of Foreign Relations and Rule 37 provide, the record reflects that lesser sanctions would appropriately remedy ZHP's noncompliance.

Specifically, an adverse inference instruction regarding the information that would have been disclosed in Mr. Chen's deposition and the requested documents, in addition to monetary sanctions, appears appropriate.  At   oral   argument, Plaintiffs indicated that an adverse inference instruction would be a positive step but would need to be carefully crafted to avoid relitigating the matter and should be accompanied by a monetary sanction sufficient to deter this type of conduct. (Doc.

35

2182 at 30:3-31:10.) Counsel for ZHP, while contesting the propriety of sanctions, represented that only a monetary sanction would be appropriate in this context. (*Id*. at 49:8-12).

Notwithstanding the laws of the PRC, the fact remains  that ZHP has failed to comply with court ordered discovery and committed sanctionable conduct.  Its failure to provide the native file for the July 27, 2017 email and its absence from the production made from custodial files of key ZHP personnel is especially troubling. The absence of this information and the extensive efforts to preclude Mr. Chen's deposition testimony support an inference that ZHP was aware of the contamination of valsartan long before it was disclosed by a ZHP customer.   Under these circumstances, and utilizing the Restatement approach, it would be proper to sanction ZHP by an adverse inference instruction that the information that Mr. Chen's deposition and the requested documents would have provided would be adverse to ZHP.  *See* Restatement (Third) on Foreign Relations, § 442(c).  As Plaintiffs observe, the specifics of such an instruction are of critical importance. Accordingly, it is appropriate to request that Plaintiffs propose the adverse inference instruction and ZHP be accorded an opportunity to reply.  An appropriate instruction could then be crafted.

In this regard, Plaintiffs have asserted that both the documents and Mr. Chen's deposition would disclose information that would adversely affect ZHP by

demonstrating that ZHP was aware of the contamination earlier than it alleges. Further, it would be appropriate to prevent ZHP from using the information that Mr. Chen's deposition and the documents would disclose under Rule 37(b)(2)(ii) to support its defenses because Plaintiffs are unable to utilize the information in their preparation of the case. Because ZHP's noncompliance caused Plaintiffs to file this motion, ZHP shall pay Plaintiffs' attorneys' fees and costs associated with the filing of the motion.

Given the arguments ZHP has represented regarding this Court's authority to order the requested discovery, any sanction must also demonstrate the need for this Court "to preserve and protect its jurisdiction and the integrity of the proceedings before it." *In re Prudential*, 169 F.R.D. at 617.  Through its refusal to follow this Court's discovery orders, ZHP has wasted this Court's time and resources in the process.  Even after this Court determined that Chinese law did not absolve ZHP from complying with its orders, ZHP has failed to provide the necessary documents or present a workable solution to obtain the deposition of Mr. Chen.  Permitting ZHP to undertake this conduct without sanction sets a negative precedent for other foreign corporations conducting business in the United States who may seek to rely on foreign discovery limitations in the future. Thus, an appropriate sanction must have both substantive and financial consequences to reflect the seriousness of ZHP's discovery defalcations.

Regarding Mr. Chen's deposition, ZHP will be precluded from relying on any testimony or fact that Mr. Chen's deposition would have demonstrated. There will be an adverse inference regarding ZHP's knowledge of the contamination and efforts to prevent the disclosure of this contamination. Plaintiffs are instructed to submit proposed findings of fact consistent with this sanction regarding Mr. Chen's knowledge of the contamination and ZHP's cover up of the contamination within thirty (30) days of this Order for the Court's consideration.

Finally, a substantial monetary penalty is warranted. While both sides seemed to recognize that a monetary penalty may be appropriate, no party has suggested what that penalty should be and to whom it should be paid. The parties will be accorded an opportunity to address these issues.

## III. CONCLUSION

The sanctions imposed by this ruling are adequate given the history of ZHP's non-compliance. In addition to violating court orders, ZHP has also not proactively sought to find a solution to the limitations imposed by Chinese law. Rather, ZHP appears to have thrown its hands up when faced with hurdles to its discovery obligations imposed by Chinese law. Further, the sanctions recognize the substantial duration of ZHP's non-compliance, which has now lasted for more than three years. Taken together, these substantive sanctions will mitigate, to some extent, the prejudice Plaintiffs have suffered as a result of ZHP's noncompliance and send a

clear message to other foreign corporations that they must take their discovery obligations in United States Courts seriously.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

Plaintiffs' Motion for Sanctions (Doc. 1838) is GRANTED IN PART AND DENIED IN PART.

1. Within seven(7) days of this Order, Plaintiffs shall submit proposed findings of fact consistent with an adverse inference as to i) the fact that ZHP knew of  the contamination at least by July of 2017 and did not disclose that fact until its customer informed it of the contamination; and ii) Mr. Chen's role in the cover up of the contamination.  ZHP may respond to Plaintiffs' proposed findings of fact within seven (7) days of receipt of Plaintiffs' submission.

2. ZHP is directed to compensate Plaintiffs for the cost and attorneys' fees associated with its efforts to obtain ZHP's compliance, including its motions to compel, the instant motion for sanctions, and its preparation of proposed findings of fact consistent with this Order.  Plaintiffs shall file a properly supported request for the fees and costs awarded by this Order within fourteen (14) days of this Order.

3. Within fourteen (14) days of this Order, Plaintiffs shall propose a monetary penalty it believes is appropriate under the circumstances. ZHP shall respond within seven (7) days of receipt of Plaintiffs' proposal. A hearing on the monetary penalty may be scheduled following receipt of the parties' submissions.

Dated: 10 May 2024

*s/ Thomas I. Vanaskie*
Hon. Thomas I. Vanaskie (Ret.)
Special Master