IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*All Actions* | No. 1:19-md-2875-RBK-KMW<br><br>Hon. Renee Bumb |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO APPEAL OF SPECIAL MASTER ORDER NO. 97**

1

**INTRODUCTION**

Plaintiffs respectfully request the Court DENY the appeal of Special Master Order No. 97. ZHP's request to vacate the decision of the Special Master should be denied because (1) the proposed amendment is futile, (2) Defendants' motion to amend was untimely and Defendants' failure to raise these defenses earlier was the result of inexcusable delay, and (3) the addition of these affirmative defenses would be prejudicial to the Plaintiffs.

First, the proposed amendment is futile. Ohio abrogated the affirmative defense of champerty that ZHP relies on regarding SummaCare's assignment to MSP. As for EmblemHealth's assignment under New York law, ZHP simply misstates the law. As Special Master Vanaskie stated in his order "there is substantial reason to believe that the proffered defenses will fail as a matter of law*"* [ECF 2701 at 6.], and "there are substantial reasons to believe that the champerty defense would fail under both states' laws" [ECF 2701 at 7.] New York's champerty statute states that "the purchase must be made for the very purpose of bringing such suit, and this implies an *exclusion of any other purpose*." *Red Tulip LLC v. Neiva*, 44 A.D.3d 204, 213 (N.Y. 2007) (quotations omitted; emphasis added). Likewise, Ohio's champerty laws have been rendered null by the Ohio legislature. *See Maslowski v. Prospect Funding Partners LLC,* 944 N.W.2d 235, 241 (Minn. 2020).

Second, ZHP's request is patently untimely. ZHP failed to include this defense in its initial Answer filed on December 7, 2023, and then failed to raise this proposed amendment when filing its motion as to a different amendment that was contested by Plaintiffs. It is now too late to inject this proposed amendment after the completion of class certification and summary judgment briefing. The Court's need to postpone the trial after ZHP filed this Motion, for unrelated reasons, does not excuse ZHP's delay or in any way mitigate its impact given that ZHP chose to wait to file

2

this Motion until after summary judgment briefing was submitted. Further, the parties continue to make trial-related submissions despite the schedule modification. ZHP proffers no plausible justification for the delay in attempting to assert the new substantive defense of champerty. Defendants (including ZHP) referenced the assignments in passing in their class certification briefing filed more than two years ago. At this point, the defense is waived.

Third, ZHP's attempt to add these affirmative defenses at this stage is a transparent effort to cause undue delay in the litigation process. Allowing the amendment now, would disrupt the procedural schedule and require additional discovery, motions, and potential hearings that would inevitably extend the trial timeline. Such a delay would not only burden the Court but also impose unnecessary costs and time commitments on the Plaintiffs, who have diligently prepared for trial based on the existing parties, pleadings, and defenses. This tactic is not only procedurally unfair but also strategically manipulative, aimed at further postponing the case and increasing litigation expenses for the Plaintiffs. The timing and nature of ZHP's request reflect an inexcusable delay, lacking any justifiable rationale, thereby warranting denial by the Court.

Fourth, Special Master Vanaskie was correct to deny Defendant's request for an eve-of-trial amendment that would obviously prejudice Plaintiffs. Plaintiffs clearly would have moved for summary judgment on the merits of this defense had ZHP timely pleaded it. It would be unfairly prejudicial to allow this amendment when the parties are fully prepared for trial. As stated in Special Master Order No. 97, "It thus appears that champerty should have been plead as an affirmative defense in ZHP's initial answer." [ECF 2701 at 3.]

For these reasons, discussed more fully below, the Court should deny ZHP's appeal.

3

**FACTUAL BACKGROUND**

On April 10, 2022, Defendants referenced the medieval affirmative defense of champerty in passing in the middle of their Opposition to Plaintiffs' Motion to Certify the Third-Party Payor Class. [ECF 2010] The Court granted Plaintiffs' Motion to Certify without reference to champerty. ZHP subsequently filed motions for summary judgment and to decertify, without referencing the allegedly champertous assignments. [*See generally* ECF 2562; ECF 2562; ECF 2637] On December 7, 2023, ZHP filed its Answer, followed by its First Amended Answer on February 7, 2024; neither asserted the affirmative defense of champerty. [*See generally* ECF 2562; ECF 2628-5]. Only on March 6, 2024, a mere twelve days before the third-party payor trial was scheduled to begin did ZHP move for leave to file a second amended answer asserting champerty as an affirmative defense. [ECF 2672] Special Master Vanaskie issued Special Master Order No. 97 denying leave to file a second amended complaint because "there are substantial reasons to believe that the champerty defense would fail under both states' laws.*"* [ECF 2701 at 7.]

Defendants mischaracterize MSP's assignment of subrogation rights as champerty. The assignments from SummaCare and Emblem in 2017 and March 2018 occurred before any recall of Valsartan was announced. These assignments aim to recover funds that SummaCare and Emblem paid, which should have been covered by other primary payers. The Plaintiff's name, "MSP", refers to the 1980 Medicare Secondary Payer Act, which outlines when other insurances are the primary payer, and Medicare is secondary. MSP identifies cases where payments made by its assignors should have been covered by other insurers, like car insurance or worker's compensation. MSP then seeks to recover these payments from the appropriate insurers. Often, this recovery can occur without litigation. MSP's model is akin to subrogation practices used by

4

many insurance companies and assignments by mortgage companies. Considering this champerty would alter the fundamental operation of subrogation rights.

## STANDARD OF REVIEW

1. **Objection to Special Master's Order**

The Court reviews a party's objections to a Special Master's findings of fact and legal conclusions *de novo*. Fed. R. Civ. P. 53(f)(3)–(4). "This, however, does not require the reviewing court to hear new arguments. In fact, courts generally 'exclude evidence of new arguments on objections because systematic efficiencies would be frustrated and the Special Master's role reduced to a mere dress rehearser." *Net2Phone, Inc. v. Ebay, Inc.*, 2008 WL 8183817, at *4 (D.N.J. June 26, 2008) (quoting *Dunkin' Donuts Franchised Restaurants LLC v. Mehta*, 2007 WL 2688710, at *1–2 (W.D. Pa. Sept. 11, 2007)).

2. **Motions to Amend**

Motions to amend pleadings, including answers, are governed by the Federal Rule of Civil Procedure 15. Leave to amend should be denied where the proposed amendment is the result of undue delay, would unfairly prejudice the nonmoving party, is motivated by bad faith, or is futile. *Cureton v. NCAA*, 252 F.3d 267, 272-73 (3d Cir. 2001). "It is well-settled that prejudice to the nonmoving party is the touchstone for the denial of an amendment." *DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358 (3d Cir. 2020) (internal quotation marks and citation omitted).

## ARGUMENT

I. **Amendment Is Futile**

ZHP's appeal should be denied because the proposed defenses are futile. As Special Master Vanaskie explained "there are substantial reasons to believe that the champerty defense would fail under both states' laws" [ECF 2701 at 7.] Amendment is futile if the proposed amendment

5

"advances a claim that is legally insufficient on its face." *Pharm. Sales & Consulting Cor. v. J.W.S. Delavau Co., Inc*., 106 F.Supp.2d 761, 764 (D.N.J. 2000). The standard is the same as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id*. Here, amendment is futile because the defense of champerty was abrogated under Ohio law and is not available under New York law where, as here, litigation is a purpose but not the purpose of the at-issue assignment.

   1. **Ohio Abrogated Champerty as an Affirmative Defense**

The proposed amendment is futile because, as Special Master Vanaskie noted[1] champerty is no longer a valid defense in the state of Ohio. *Rancman v. Interim Settlement Funding Corp.*, 789 N.E.2d 217, 220 (Ohio 2003). In 2008, the Ohio legislature largely abrogated champerty as a defense when it enacted Ohio Rev. Code Ann. § 1349.55, which is applicable to "consumers," including persons or entities residing in Ohio, such as Akron-based Summa-care. Courts have recognized its abrogative effect. For example, in abolishing champerty as an affirmative defense in Minnesota, the Minnesota Supreme Court relied on the decisions of other states— including Ohio—to do the same, citing Ohio Rev. Code. Ann. § 1349. *Maslowski v. Prospect Funding Prs., LLC*, 944 N.W.2d 235, 241, 241 n.4 (Minn. 2020) (abolishing champerty as defense and citing Ohio Rev. Code Ann. § 1349.55 as an example of statutory abolition). Since champerty and maintenance has been abolished by action of the Ohio legislature, ZHP cannot now raise it as an affirmative defense.

ZHP also misstates the (now-abolished) Ohio common law affirmative defense of champerty. Under the prior law, "champerty" was defined as "a form of maintenance in which **a nonparty** undertakes to further another's interest in a suit in exchange for a part of the litigated matter if a favorable result ensues." *Rancman*, 789 N.E.2d at 219. MSP is, of course, **a party** to

---

[1] "*Rancman* thus appears to have been rendered a nullity by the Ohio legislature. *See Maslowski v. Prospect Funding Partners LLC*, 944 N.W.2d 235, 241 (Minn. 2020) (supporting the decision to abolish Minnesota's common law prohibition of champerty with the acknowledgment that Ohio and other states had adopted legislation to authorize litigation funding arrangements)."

this action. Assignments, whereby the assignee serves as a party (as opposed to a nonparty exerting control over the case), are permitted. *Sprint Comms. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("courts—both before and after the founding—have always permitted the party with legal title alone to bring suit"). At common law, champerty never barred claims brought by assignees as parties; thus, even if the defense remained available—which it is not—it would not apply to MSP.

2. **SummaCare Assigned Its Present Rights to MSP**

The court must DENY the appeal because any potential champerty defense is futile. ZHP incorrectly characterizes the SummaCare assignment as a "contingent future interest." [ECF 2672-1, at 10.] Defendants rely on a line of inapposite cases involving the assignment of settlement proceeds in the absence of any filed claim. *See W. Broad Chiropractic v. Am. Family Ins.*, 912 N.E.2d 1093, 1096–98 (Ohio 2009) (holding that assignment of settlement proceeds for injuries sustained in auto accident to a nonparty where injured person had not yet filed a claim or otherwise established liability was unenforceable).[2] Here, however, SummaCare assigned its *then-existing* rights to recover payments through various means including, if necessary, litigation. [ECF 2672-4, at 2.] The Recovery Agreement provided that, on assignment, MSP would seek to enforce those then-existing rights in order to recover payments owed to the assignor. [*Id.*] The assignments from SummaCare and Emblem were in 2017 and March of 2018 before and recall of valsartan was announced. Special Master Vanaskie noted "Indeed, both assignments were made before the alleged contamination of VCDs was disclosed." [ECF 2701 at 5.] Thus, the rights to recovery

> **Commented [SH1]:** In the transcript of the hearing, Daniel discusses the assignments being in 2017 as part of the Medicare Claims act (or similar name?) with Judge Vanaskie and I think Judge Vanaskie references this in his order. I would discuss this as well here

---

[2] Unlike the entities which purchased a right to settlement proceeds in the cases ZHP relies on, MSP is a party to this case and is fully participating in trial, as are assignors Emblem Health and SummaCare. This further distinguishes the assignment relationships here from chapertous arrangements or contingent future interests.

assigned by SummaCare had already vested and were assigned to MSP as existing rights as opposed to contingent future interests. [*Id.*]

### 3. Champerty is Not Available as a Defense to Plaintiffs' New York Claims

The court must DENY the appeal because the proposed amendment was futile because champerty is not available as a defense to Plaintiffs' New York claims. ZHP has failed to adequately allege that Emblem Health's assignment of claims is impermissibly champertous under New York law thus its proposed amendment is futile. In New York, the doctrine of champerty is not actionable except as provided by statute, specifically N.Y. Jud. Law § 489. *See RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382 (S.D.N.Y. 2009). To establish the affirmative defense of champerty under the statute, a defendant must show that bringing suit was "the primary motivation, no less the sole basis" for the acquisition of an interest of rights. *Bluebird Prs., L.P. v. First Fidelity Bank, N.A.*, 731 N.E.2d 580, 587–88 (N.Y. App. 2000) (holding that where assignee purchased a series "in their entirety and not just the rights to a lawsuit encompassed within the expressed terms" the purpose of litigation was incidental and not primary). Thus, "a mere intent to bring a suit on a claim purchased does not constitute the offense; the purchase must be made for the very purpose of bringing such suit, and this implies an *exclusion of any other purpose*." *Red Tulip LLC v. Neiva*, 44 A.D.3d 204, 213 (N.Y. 2007) (quotations omitted; emphasis added); *see also* ("Judiciary Law § 480 requires that the acquisition be made with the intent and for *the* purpose (as contrasted to *a* purpose) of bringing an action" (emphasis original).

In addition, the statute is narrowly construed with a presumption that assignments are made for legitimate purposes. *See The President Arthur*, 25 F.2d 999, 1001 (S.D.N.Y. 1928); *see also Red Tulip LLC*, 44 A.D.3d at 213 (N.Y. 2007). Consistent with this narrow construction, acquisition of a right for the purpose of enforcing it—including, if necessary, by litigation—is not

8

champerty as a matter of law. *Trust for the Certificate Holders of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp.*, 918 N.E.2d 889, 894 (N.Y. App. 2009).

ZHP cannot meet this high burden. The proposed Second Amended Answer baldly asserts that the "primary purpose" of the assignment from Emblem was litigation. [ECF 2672-6, at 67] However, "conclusory allegations" do not state a plausible claim and must generally be stricken from a pleading. *Sleep Tight Diagnostic Ctr., LLC v. Aetna, Inc.*, 399 F.Supp.3d 241, 247 (D.N.J. 2019). Such allegations, therefore, cannot support a motion to amend an answer. *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990). Other than the inadequate conclusory allegation that the "primary purpose" of the assignment was litigation, which merely regurgitates the elements of the defense, ZHP does not include any allegations of fact in the Proposed Second Amended Answer suggesting what, if anything, was intended by the assignment. [ECF 2672- 6] Nor could they, at this late stage, as fact discovery has long been closed. By contrast, the Emblem Assignment Agreement, provides that Emblem was assigning its Medicare Recovery Claims, which consisted of "legal and equitable rights to seek reimbursement and/or recover payments from primary payers and any other party or entity that may be responsible to Assignor" through methods "including the right to recover claims for Medicare Health Care Services that are billed on a fee for service basis and all outstanding liens, potential liens, lien rights and subrogation recovery rights, legal or equitable, in favor of Assignor, including in any litigation." [ECF 2672-3, at 2] The Assignment Agreement expressly stated that its purpose was "to initiate and pursue the recovery of the Assigned Medicare Recovery Claims" through methods "including" *but not limited to* litigation. [ECF 2672-3, at 3] The Assignment Agreement mandated that "[f]or each potentially recoverable Assigned Medicare Recovery Claim, Assignee shall use commercially reasonable efforts." [*Id.*] Thus, while litigation may be *a* potential

9

consequence of the assignment, it is not the *sole* purpose to the exclusion of all others. *Bluebird Prs.,* 731 N.E.2d at 587–88. The plain language of the Assignment Agreement demonstrates that other purposes, including recovery through commercially reasonable means, such as seeking reimbursement from and collecting on liens, were also contemplated. [*Id.*] Litigation clearly is not the only means.

New York courts have distinguished between "one who acquires a right in order to make money from litigating it and one who acquires a right in order to enforce it" and have agreed that the acquisition of a right "for the purpose of enforcing it … is not champerty simply because the party intends to do so by litigation." *Trust for the Certificate Holders of Merrill Lynch*, 918 N.E.2d at 894. Here, MSP acquired rights from Emblem for the purpose of enforcing them by various means, including litigation, if necessary. [ECF 2672-3, at 3] That is not champerty.

Because ZHP cannot establish that litigation is the assignment's only purpose and relies only on conclusory allegations on this point devoid of any basis, the proposed champerty and maintenance defense fails by law. Therefore, ZHP's proposed amendment was futile and the appeal should be denied.

Similarly, because Ohio abrogated champerty as an affirmative defense, SummaCare assigned its present rights to MSP, and Champerty is not available as a defense to Plaintiffs' New York claims, the proposed amendment was futile, and the appeal must therefore be DENIED.

II. **Defendants' Motion to Amend Was Untimely and Causes Undue Delay**

ZHP's appeal should be denied because the motion to amend was untimely. Special Master Thomas Vanaskie pointed out that "the delay and additional expense would be substantial." [ECF 2701, at 12.]. ZHP's original motion sought leave to amend its Answer long after the deadline for Answers to be filed—a deadline that was first imposed years into the litigation, leaving the

10

Defendant years to consider and prepare its defenses. This after already filing a contested motion to amend the Answer a mere twelve days before the trial was scheduled to begin. In doing so, ZHP conceded its delay in raising a defense that it was aware of for at least two years and failed to establish "good cause" for allowing amendment after the expiration of the deadline to Answer. The appeal must therefore be denied because the proposed amendment was untimely.

As a general proposition, "[a]ffirmative defenses must be raised as early as practicable, not only to avoid prejudice, but also to promote judicial economy." *Robinson v. Johnson*, 313 F.3d 128, 137 (3d Cir. 2002). Courts routinely deny amendment late in litigation, especially after summary judgment briefing and when amendment is sought just before trial. *See DLJ Mortg. Capital, Inc. v. Sheridan*, 975 F.3d 358, 369 (3d Cir. 2020) (affirming denial of motion for leave to amend answer where "untimely defense would likely have required additional discovery"); *see also, e.g., DynaEnergetics Europe GmbH v. Hunting Titan, Inc.*, 629 F. Supp. 3d 548 (S.D. Tex. 2022) (denying motion to amend answer and add affirmative defense filed shortly before trial, and amendment would necessitate reopening discovery and summary judgment briefing); *Carson v. Estate of Golz*, No. 17-cv-01152, 2019 WL 1513199 (D. Colo. Apr. 8, 2019) (denying motion for leave to amend answer to add affirmative defense after summary judgment briefing); *Rivera v. Gupta*, No. 13-cv-056, 2018 WL 9142121, at *1 (W.D. Wisc. Apr. 6, 2018) (denying motion for leave to amend answer to add affirmative defense filed six weeks before trial); *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 860 (D.C. Cir. 2015) (affirming denial of motion for leave to amend answer to add affirmative defense filed "only days before trial. This is the very picture of undue delay.").

In particular, where, as here, a party "had knowledge of [its] defenses months before trial" a motion to amend should be denied. *DLJ Mortg. Capital, Inc*, 975 F.3d at 369. ZHP acknowledges

that the availability of champerty as a defense was known to it as early as April 2022[3] but nonetheless chose to omit it from its Answer, filed pursuant to an agreed upon schedule over a year after that date in December 2023. [Compare ECF 2672-1, at 15 with ECF 2549]. ZHP's failure to raise this defense in its Answer or even its First Amended Answer warrants denial of the Motion as untimely. *See Arista Records, Inc. v. Flea World, Inc*., 356 F.Supp.2d 411, 419 (D.N.J. 2005). In addition, ZHP has waived this defense. *See Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 209 (3d Cir. 2001) ("a trial court has discretion to find waiver if a defendant fails to assert the defense within the time limits set by the court or if the court otherwise finds that a defendant has failed to exercise due diligence or has asserted the defense for dilatory purposes." (quotations omitted).

    The detailed chart below shows the timeline of key events and filings in which ZHP consistently failed to assert the champerty defense until their motion to file a second amended answer, twelve days before trial. This chronology demonstrates ZHP's repeated missed

---

[3] Defendants also suggest that Plaintiffs were "on notice" that champerty would be raised as a defense. [ECF 2672-1, at 15] Presumably, Defendants refer to their April 10, 2022 opposition to the TPP Plaintiffs' Motion to Certify. [ECF 2010, at 21] As an initial matter, Defendants in their April 2022 briefing never asserted that MSP's assignment was unenforceable under New York law, and cannot therefore be construed to have put Plaintiffs "on notice" that it planned to raise that defense as to the Emblem Health assignment after the deadline for filing an answer. [*See id*.] Moreover, the Court should not now credit Defendants' passing references to champerty made in the context of challenges to the adequacy and typicality of MSP as a class representative [*id*.] where the Court (1) certified the class and held that MSP satisfied the requirements to serve as a class representative and (2) did not deem Defendants' champerty arguments worth even a single mention. [ECF 2261] Finally, Defendants moved to decertify the class but failed to raise the issue of champerty there, [ECF 2637-1], such that it is reasonable to conclude Defendants abandoned and forfeited such an affirmative defense if ever one was viable, which Plaintiffs deny. *See, e.g., In re Asbestos Prods. Liab. Litig*. (No. VI), 921 F.3d 98, 107 (3d. Cir. 2019) (holding defendants forfeited affirmative defense "by failing to diligently pursue it"); *Blackstone Prs., L.P. v. Sympak, Inc.*, 2006 WL 8457300 (D.N.J. Jan. 27, 2006) (finding defendant abandoned affirmative defense raised in one brief but not elaborated on in subsequent briefing).

opportunities to introduce the champerty defense, highlighting the untimeliness and potential strategic delay in their current request.

| | | |
|---|---|---|
| 04/10/2022 | Opposition to Motion to Certify TPP Class [ECF 2010] | Defendants claim, in passing, champerty defense is available |
| 12/22/2023 | TPP Trial Defendants' Motion for Summary Judgment [ECF 2562] | ZHP fails to assert champerty defense |
| 12/22/2023 | ZHP's Supplemental Motion for Summary Judgment [ECF 2564] | ZHP fails to assert champerty defense |
| 02/13/2024 | Motion to Decertify [ECF 2637] | ZHP fails to assert champerty defense |
| 12/07/2023 | Answer | ZHP fails to assert champerty defense |
| 02/07/2024 | Motion to File First Amended Answer [ECF 2628] | ZHP fails to assert champerty defense |
| 02/07/2024 | First Amended Answer [ECF 2628-5] | ZHP fails to assert champerty defense |
| 03/06/2024 | Motion to File Second Amended Answer [ECF 2672] | Champerty defense raised for the first time |

### III. Proposed Amendment Unduly Prejudices Plaintiffs

ZHP's appeal must be denied because an eleventh-hour amendment adding an entirely new defense will prejudice Plaintiffs.

First, ZHP waited to seek leave to amend its Answer to add the defense of champerty and maintenance after summary judgment briefing was completed. ZHP states that the availability of champerty is a solely legal issue (and one it was aware of two years prior two summary judgment briefing). [ECF 2672-1, at 14; ECF 2010.] Thus, champerty could have been resolved when the parties completed their pretrial summary judgment briefing. Had champerty been raised as an affirmative defense earlier, Plaintiffs would have moved for summary judgment. At *minimum,* Defendants' inexcusable delay burdens Plaintiffs with additional time and expense to prepare a motion that could have been encompassed in a prior motion.

Second, ZHP asserts that Plaintiffs will not be prejudiced because responding to an affirmative defense of champerty will require no additional evidence. [*See* ECF 2672-1, at

13

14.]⁴ To the contrary, if permitted at this late stage, Plaintiffs will need to spend precious time and resources to prepare for the additional defense and take this into consideration in establishing their plan for trial.⁵ Indeed, as Special Master Vanaskie correctly stated, "the prejudice to Plaintiffs is so palpable that justice would not be served by allowing leave to amend. [ECF 2701 at 7.]

Specifically, inclusion of champerty as a defense would require "extensive" additional discovery, and, potentially, substitution of the class representative *already* deemed by this Court to be a suitable representative. *Id.* Identifying and designating a new class representative would—contrary to Defendants' assertions—require additional discovery, briefing, and decision-making on class certification issues. *Id.* at 12. Defendants cannot seriously argue that Plaintiffs would not be prejudiced by the addition of a defense that would throw a wrench in this case and require re-litigation of previously decided class-related issues. The appeal must therefore be denied because the proposed amendment unduly prejudices the Plaintiffs.

---

⁴ Defendants rely principally on *Heyl & Patterson Int'l. Inc. v. F.D. Rich Housing of the Virgin Islands*, 663 F.2d 419, 426 (3d Cir. 1981). *Heyl* is distinguishable in that it was premised on the belief that a prior amendment was conditional on the government agreeing not to make other amendments, such that the plaintiff claimed it was surprised by the amendment. *Id.* Additionally, the court in *Heyl* emphasized that a party is "unfairly disadvantaged *or* deprived of the opportunity to present facts or evidence which it would have offered had the … amendments been timely." *Id.* (emphasis added). Thus, regardless of whether additional evidence needs to be gathered, amendment may be denied where there is unfair advantage. *Id.*

⁵ At this stage in the litigation, Plaintiffs have submitted to Defendants their witness lists, exhibit lists, and deposition designations for numerous witnesses and have spent countless hours working to substantially trim down previously designated exhibits and testimony as both a matter of strategy and the meet and confer process. The addition of a new defense would require Plaintiffs' counsel to expend substantial additional time and energy reviewing documents and deposition transcripts (which have already been reviewed and cut for trial) to prepare a response to this defense.

14

CONCLUSION

      For the foregoing reasons, Plaintiffs request that the Court DENY Defendants' Appeal of Special Master Order No. 97.

Dated: May 20, 2024                                    Respectfully submitted,

*/s/ Ruben Honik*  
Ruben Honik  
**HONIK LLC**  
1515 Market Street, Suite 1100  
Philadelphia, PA 19102  
Phone: (267) 435-1300  
ruben@honiklaw.com

*/s/ Daniel Nigh*  
Daniel Nigh  
**NIGH, GOLDENBERG, RASO, & VAUGHN, PLLC**  
14 Ridge Square NW, 3rd Floor  
Washington, DC 200016  
Phone: (202) 792-7979  
dnigh@nighgoldenberg.com

*/s/ Adam Slater*  
Adam Slater  
**MAZIE, SLATER, KATZ & FREEMAN, LLC**  
103 Eisenhower Pkwy, 2nd Flr.  
Roseland, NJ 07068  
Phone: (973) 228-9898  
aslater@mazieslater.com

***MDL Plaintiffs' Co-Lead Counsel***

*/s/ Jorge Mestre*  
Jorge Mestre  
**RIVERO MESTRE LLP**  
2525 Ponce de Leon Blvd., Suite 1000  
Miami, FL 33134  
Phone (305) 445-2500  
jmestre@riveromestre.com

***Third-Party Payor Economic Loss Co-Lead Class Counsel***

*/s/ Conlee S. Whiteley*  
Conlee S. Whiteley  
**KANNER & WHITELEY, LLC**  
701 Camp Street  
New Orleans, LA 70130  
Phone: (504)-524-5777  
c.whiteley@kanner-law.com

*/s/ Gregory P. Hansel*  
Gregory P. Hansel  
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**  
One City Center  
P.O. Box 9546  
Portland, ME 04112  
Phone: (207) 791-3000  
ghansel@preti.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of this electronic filing to all counsel of record.

<em>/s/ Daniel Nigh</em>