Exhibit 46

2020 WL 1290607
Only the Westlaw citation is currently available.
United States District Court, W.D. Kentucky,
Louisville Division.

Michael JACOBS, Plaintiff,
v.
FLOORCO ENTERPRISES, LLC, Defendant.

CIVIL ACTION NO. 3:17-CV-90-RGJ-CHL
|
Signed 03/18/2020

**Attorneys and Law Firms**

Andrew S. Epstein, Bahe Cook Cantley & Nefzger PLC, Louisville, KY, for Plaintiff.

Kyle D. Johnson, Souhila El Moussaoui, Frost Brown Todd LLC, Louisville, KY, for Defendant.

### MEMORANDUM OPINION AND ORDER

Colin H Lindsay, Magistrate Judge

 **\*1** Before the Court are four motions filed by Plaintiff, Michael Jacobs ("Jacobs"): (1) a Motion to Compel (DN 38); (2) a Motion to Disqualify Defense Counsel (DN 41); (3) a Motion to Strike Defense Errata Sheets (DN 51); and (4) a Renewed Motion to Compel the Deposition of Paul Tu (DN 75). [1] Defendant, Floorco Enterprises, LLC ("Floorco"), filed responses to each motion (DNs 43, 46, 60, 86), and Jacobs filed replies (DNs 44, 48, 63, 87). Therefore, these motions are ripe for review.

For the reasons set forth below, Jacobs's Motion to Compel (DN 38) is **GRANTED IN PART** and **DENIED IN PART**, his Motion to Disqualify (DN 41) is **DENIED**, his Motion to Strike (DN 51) is **GRANTED**, and his Motion to Compel the Deposition of Paul Tu (DN 75) is **GRANTED**.

### I. BACKGROUND
This case involves an employment dispute between Jacobs and Floorco, which is a wholesaler of material used for the construction and installation of hardwood flooring. (DN 91, at PageID #811.) Jacobs alleged that he initially worked as an independent contractor for Floorco's predecessor company until Floorco's President, Paul Tu ("Tu"), orally offered him the position of Vice President of Sales and Marketing. (*Id.* at 811-12.) Jacobs contended that Tu offered to pay him $150,000 plus commission incentives. (*Id.* at 812.) Jacobs alleged that he worked in this position and was paid this salary until January 31, 2009, when his paychecks began coming up short. (*Id.* at 816.) The problems with his paychecks continued between 2009 and 2013 until he was terminated by Tu in June 2013. (*Id.* at 816-17.)

On January 20, 2017, Jacobs filed a Complaint against Floorco asserting breach of contract and wage and hours claims. (DN 1-1.) Jacobs claimed that Floorco failed to pay him his wages in violation of an oral employment contract and Kentucky wage and hour law. (*Id.*; DN 18.) After the case was removed to this Court, the Court dismissed Jacobs's breach of contract claim. (DN 23.) The Court recently allowed Jacobs to amend his complaint to add claims of promissory estoppel, equitable estoppel, fraud, unjust enrichment, and vicarious liability. (DNs 90, 91.) Additional background information pertinent to each pending motion will be set forth in the section pertaining to each motion below.

### II. DISCUSSION

#### A. Jacobs's Motion to Compel (DN 38)
Jacobs propounded a request for production seeking "the production of all e-mails between Paul Tu (Floorco's President) and any manager of Floorco." [2] (DN 43, at PageID # 359.) Floorco objected to the request to the extent it sought emails protected by either the attorney-client privilege and/or work product doctrine and produced a privilege log identifying twenty-eight emails it was withholding on those grounds. (*Id.*; DN 38-1.) The privilege log claimed the work product doctrine alone as the reason for withholding five e-mails and both the attorney-client privilege and the work product doctrine as the reason for withholding twenty-three other e-mails. (DN 38-1.) On March 22, 2019, Jacobs's counsel sent Floorco's counsel a letter challenging the applicability of the attorney-client privilege and work product doctrine given the timing of the e-mails in comparison to the filing of the instant action and given that the e-mails were exchanged between non-attorney representatives of Floorco. (DN 38-2.) In response, Floorco's counsel indicated that Floorco stood by its objections. (DN 38-3.) Jacobs then filed the instant motion seeking to compel production of all twenty-eight e-mails identified on Floorco's privilege log and/or for the Court to conduct an *in camera* review of the e-mails to determine whether they were properly withheld on the basis

of Floorco's stated objections. (DN 38; DN 38-1.) The Court directed Floorco to submit the e-mails in question for an *in camera* review. (DN 89.)

**\*2** As to attorney-client privilege, Jacobs argued that because the e-mails were between representatives of Floorco, it was suspect that all of the listed e-mails were made for the purpose of facilitating the rendition of legal services or transmitting advice from counsel. (DN 38, at PageID # 262-63.) Jacobs argued that it was possible that the communications were only in part for that purpose such that the proper remedy was the redaction of the privileged portion of the e-mail. (*Id.* at 263.) In response, Floorco admitted that the authors and recipients listed on the privilege log were not lawyers. (DN 43, at PageID # 360.) Floorco produced an affidavit from each of the listed individuals demonstrating that they were Floorco's President, Tu (DN 43-1); Finance Manager, Freida Bayliss ("Bayliss") (DN 43-2); and Operations Manager, Richie Berry ("Berry") (DN 43-3). The affidavits also indicated that the e-mails exchanged between Tu, Bayliss, and Berry regarding Jacobs were created as a result of Jacobs's threat to sue and "included confidential discussions regarding internal strategy for purposes of assisting Floorco in obtaining legal advice regarding this matter from an attorney." (DN 43-1, at PageID # 369-70; DN 43-2, at PageID # 371-72; DN 43-3, at PageID # 373-74.) Bayliss's and Berry's affidavits also stated that they possessed authority to seek legal advice on behalf of Floorco and that to their knowledge, the e-mails exchanged "have at all times been treated as confidential." (DNs 43-2, 43-3.) Floorco argued that the communications withheld were "made primarily to assist [Floorco] in obtaining legal advice and to prepare for a possible lawsuit." (DN 43, at PageID # 362.)

As to the work product doctrine, Jacobs argued that because the e-mails on the privilege log were exchanged months before he filed suit, it was unlikely they were prepared in anticipation of litigation as required. (DN 38, at PageID # 263-65.) Jacobs also argued that even if the e-mails were prepared in anticipation of litigation, he has a substantial need for the information given the likelihood the e-mails contain factual information substantiating his claims that Floorco shorted his pay and/or admissions from Floorco's managers regarding whether money is still owed to him. (*Id.* at 264-65; DN 44, at PageID # 381-82.) Jacobs argued that he could not obtain this information from any other source given the fact that "memories fade and witnesses whose jobs are on the line have a tendency to conceal damaging evidence when not forced to be truthful by irrefutable proof of past statements they have made." (DN 44, at PageID # 381.)

In response, Floorco indicated that even though the e-mails are dated prior to the filing of the instant action, the e-mails were all exchanged after an e-mail from Jacobs to Tu dated February 4, 2015, in which Jacobs indicated that he had discussions with the United States Labor Department and the Kentucky Labor Cabinet regarding the monies owed to him. (DN 43-4.) Jacobs stated, "If you do not have a plan to correct the situation between you and I in a reasonable manner in a reasonable time, I am not choosing to pursue this through legal means, I am being forced to pursue it legally by you." (*Id.*) He also stated, "Please get back to me with your thoughts on this—I must move forward immediately if we cannot come to a reasonable agreement." (*Id.*) After this e-mail, Floorco argued that its representatives believed litigation was imminent, and it attached affidavits of those authors and recipients identified on the privilege log to substantiate this claim.[3] (DN 43, at PageID # 364.) Floorco also argued that Jacobs had not shown a substantial need for the information because he could obtain the same information through deposition testimony. (*Id.* at 366-67.)

**\*3** Having reviewed the e-mails submitted for an *in camera* review, the Court will now address Jacobs's Motion.

### 1. Legal Standard

Because this is a diversity case, this Court applies Kentucky law to the applicability of the attorney-client privilege. *In re Powerhouse Licensing*, LLC, 441 F.3d 467, 472 (6th Cir. 2006); Fed. R. Evid. 501. Kentucky's attorney-client privilege is set forth in the Kentucky Rules of Evidence. *Haney v. Yates*, 40 S.W.3d 352, 354 (Ky. 2000); Ky. R. Evid. 503. It protects confidential communications made "for the purpose of facilitating the rendition of professional legal services" if those communications are between the individuals identified in the Rule. Ky. R. Evid. 503(b). The Rule explicitly states that communications between "representatives of the client" or "the client and a representative of the client" are covered if made for a purpose set forth in the Rule. *Id.* A representative of the client is defined as either "[a] person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client" or "[a]ny employee or representative of the client who makes or receives a confidential communication: (i) [i]n the course and

scope of his or her employment; (ii) [c]oncerning the subject matter of his or her employment; and (iii) [t]o effectuate legal representation for the client." Ky. R. Evid. 503(a)(2). The applicability of the privilege to a particular communication "depends ... on the facts and circumstances under which the communication was made." *Lexington Pub. Library v. Clark*, 90 S.W.3d 53, 59 (Ky. 2002). The burden to establish the privilege is on the party claiming the privilege, who "must provide the court with sufficient information to show the existence of the elements of the privilege and to allow review of that decision by higher courts." *Collins v. Braden*, 384 S.W.3d 154, 164-65 (Ky. 2012).

The Kentucky Supreme Court has explained that the attorney-client privilege "protects only those disclosures necessary to obtain legal advice which might not have been made absent the privilege." *Clark*, 90 S.W.3d at 60 (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Further, the privilege "is triggered only by a client's request for legal, as contrasted with business, advice." *Id.* (quoting *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984)). Therefore, "[o]nly in those situations in which client communications otherwise intended to apprise an attorney of business matters contain an implied request for legal advice on such matters will the attorney-client privilege apply." *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6939338, at *11 (W.D. Ky. Feb. 16, 2017) (citing *Clark*, 90 S.W.3d at 60).

As the work product doctrine is a procedural rule of federal law, it is governed by Fed. R. Civ. P. 26. *In re Powerhouse*, 441 F.3d at 472; *Pinnacle Sur. Servs. v. Manion Stigger, LLP*, 370 F. Supp.3d 745, 755 (W.D. Ky. 2019). The doctrine protects "documents and tangible things that are *prepared in anticipation of litigation or for trial* by or for another party or its representative...." Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). To determine whether a document was prepared in anticipation of litigation, the Court asks "(1) whether a document was created because of a party's subjective anticipation of litigation ... and (2) whether that subjective anticipation of litigation was objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). "[A]n ordinary business purpose" does not suffice. *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009). "[T]he burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.' " *Id.* (quoting *Roxworthy*, 457 F.3d at 595). "So-called 'fact' work-product, the 'written or oral information transmitted to the attorney and recorded as conveyed by the client,' ... may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) and citing *Toledo Edison Co. v. G.A. Techs., Inc.*, 847 F.2d 335, 339-40 (6th Cir. 1988)). "However, absent waiver, a party may not obtain the 'opinion' work of his adversary; i.e., 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.' " *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d at 163-64).

### 2. Analysis

**\*4** Ordinarily, the Court would first address whether the requested materials were relevant prior to determining whether the attorney-client privilege or the work product doctrine protected the materials from disclosure. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *Genesco, Inc. v. Visa U.S.A., Inc.*, 302 F.R.D. 168, 192 (M.D. Tenn. 2014). However, Floorco did not contest in its response that the e-mails identified on its privilege log were relevant and otherwise discoverable if found not to be privileged or protected by the work product doctrine. Therefore, the Court will proceed to separately address the propriety of each designation on Floorco's privilege log below. [4] If necessary, the Court will then address in Section II(A)(2)(k) below whether Jacobs has made a sufficient showing of substantial need and that he cannot obtain the substantial equivalent of the materials by other means pursuant to Fed. R. Civ. P. 26(b)(3)(A)(ii).

#### a) Ref. Nos. 1-4

Ref. Nos. 1-4 are a series of e-mails between Berry and Tu regarding a February 11, 2015, e-mail from Jacobs. [5] Jacobs's February 11, 2015, e-mail followed up on Jacobs's

prior February 4, 2015, e-mail in which Jacobs requested payment of the outstanding balance he believed was owed to him. Floorco attached Jacobs's February 4, 2015, e-mail to its response to Jacobs's Motion to Compel. (DN 43-4.) Therein, Jacobs indicated that if Tu did not "have a plan to correct the situation ... in a reasonable manner in a reasonable time, [Jacobs] [was] not choosing to pursue this through legal means, [he] [was] being forced to pursue it legally...." (*Id.*) Jacobs also stated therein that he "must move forward immediately if [they] [could not] come to a reasonable agreement." (*Id.*) Floorco claimed that Ref. Nos. 1-4 were protected from disclosure by the work product doctrine. (DN 38-1, at PageID # 267.)

Jacobs argued that an e-mail is not a document or tangible thing within the meaning of Fed. R. Civ. P. 26(b)(3) such that the work product protection does not apply to e-mails. (DN 44, at PageID # 378-79.) While Jacobs cited to *Liberty Corp. Capital Ltd. v. Sec. Safe Outlet, Inc.*, 937 F. Supp. 2d 891, 901 (E.D. Ky. 2013), in support of this proposition, that case is distinguishable. In *Liberty Corporate*, the United States District Court for the Eastern District of Kentucky was construing the terms of an insurance policy, not applying the federal work product doctrine. *Id.* Further, the passage cited by Jacobs only explicitly discussed whether customer "e-mail addresses obtained from an electronic backup copy of [a] customer database" were tangible property. *Id.* The court therein found that the same were not tangible property under either the general definition of the term or under the specific terms of the insurance policy at issue, which excluded electronically stored information from the policy's definition of tangible property. *Id.* Therefore, the case does not support an argument that an e-mail is not a "document or tangible item" for purposes of the federal work product doctrine. While Jacobs also cited in support to the Black's Law Dictionary definition of the term "tangible property," Black's Law Dictionary elsewhere defines a "document" as "embrac[ing] any information stored on a computer, electronic storage device, or any other medium." *Document*, Black's Law Dictionary (11th ed. 2019). Accordingly, an e-mail is a "document" that can be protected by the work product doctrine.

**\*5** Documents need not be prepared by an attorney to trigger the protection of the work product doctrine. Fed. R. Civ. P. 26(b)(3)(A) states that "documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative*" may not be discovered by a party. Fed. R. Civ. P. 26(b)(3)(A). "Thus, whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc. v. Affiliated* Comput. *Servs., Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000). Therefore, Ref. Nos. 1-4 are not ineligible for protection under the work product doctrine merely because they were prepared by Floorco employees.

Though Ref. Nos. 1-4 are otherwise eligible for protection under Fed. R. Civ. P. 26(b)(3), they were not prepared *because of* Floorco's subjective anticipation of litigation as required to trigger the protection of the work product doctrine.[6] *Roxworthy*, 457 F.3d at 594. Tu's February 4, 2015, and February 11, 2015, e-mails gave Floorco an objectively reasonable subjective anticipation of litigation, but Ref. Nos. 1-4 discuss how Floorco will respond to Tu's request for funds and not his threat of legal action. Ref. Nos. 1-2, 4 only mention "going to legal" in passing and as something to be avoided, and Ref. Nos. 1-4 do not contain any larger discussions of Floorco's strategy with respect to any anticipated litigation. As the Supreme Court has explained, the work product doctrine is designed to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... to promote justice and to protect their clients' interests." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also Columbia/HCA Healthcare*, 293 F.3d at 294. Ref. Nos. 1-4 do not contain any equivalent information or discussion. Instead, the e-mails appear to have largely been exchanged for the "ordinary business purpose" of Jacobs's demand for funds, which does not suffice to trigger the protection of the work product doctrine.

While the Court recognizes that "[i]f a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection," the Court cannot conclude that the e-mails between Tu and Berry were prepared *because of* Jacobs's threat to pursue to the matter legally as required. *In re Prof'ls*, 578 F.3d at 439. Indeed, it appears that Ref. Nos. 1-4 "would have been created in essentially similar form irrespective" of Jacobs's threat of pursuing the matter legally given that Jacobs had been consistently demanding payment from Floorco. *Roxworthy*, 457 F.3d at 599 (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)). Accordingly,

Jacobs's Motion to Compel (DN 38) will be granted as to Ref. Nos. 1-4.

### b) Ref. No. 5

**\*6** Ref. No. 5 is a March 7, 2016, e-mail from Bayliss to Tu again regarding the Kentucky Labor Cabinet's investigation of Jacobs's claims. Floorco claimed this e-mail was protected from disclosure by the work product doctrine. (DN 38-1, at PageID # 267.) As above, the Court concludes Ref. No. 5 is a document prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). However, Ref. No. 5 was not prepared *because of* Floorco's subjective anticipation of litigation as required.[7] Roxworthy, 457 F.3d at 594. Ref. No. 5 largely consists of a recitation of Bayliss's conversations with a Labor Cabinet representative. As with Ref. Nos. 1-4 above, the e-mail contains no discussion of strategy with respect to Jacobs's threat of litigation, nor does it even appear to explicitly reference Jacobs's stated intent to pursue legal action. Therefore, Ref. No. 5 was not prepared because of anticipation of litigation from Jacobs. Instead, the e-mail was prepared as a summary of Bayliss's conversation with the Labor Cabinet for Tu. Jacobs's Motion to Compel (DN 38) will be granted as to Ref. No. 5.

### c) Ref. Nos. 6-8

Ref. Nos. 6-8 are a series of March 7, 2016, e-mails between Tu and Bayliss in part regarding the Kentucky Labor Cabinet's investigation and position and in part discussing obtaining legal representation. Floorco claimed these e-mails were protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 267-68.)

The attorney-client privilege protects only confidential communications. Ky. R. Evid. 503(a)(5) states that "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." Ky. R. Evid. 503(a)(5). Tu stated in his affidavit that obtaining Berry and Bayliss's input on Jacobs's e-mails and threat to sue "was necessary and essential for purposes of obtaining legal advice for Floorco" and that the "emails included confidential discussions regarding internal strategy for purposes of assisting Floorco in obtaining legal advice regarding this matter from an attorney." (DN 43-1.) Bayliss and Berry echoed Tu's sentiment regarding the content of the e-mails in their affidavits and also stated that "[t]o [their] knowledge, those emails have at all times been treated as confidential." (DN 43-2, at PageID # 372; DN 43-3, at PageID # 374.) These representations regarding how Tu, Bayliss, and Berry treated the e-mails, especially in light of the absence of any information that Ref. Nos. 6-8 have ever been disclosed to any third party, establish that the e-mails are confidential communications within the meaning of Ky. R. Evid. 503.

To be protected by the attorney-client privilege, the confidential communications must also be exchanged between persons covered by the Rule. Ky. R. Evid. 503(b)(1)-(5) list the individuals between whom communications are protected, which includes communications "[b]etween representatives of the client or between the client and a representative of the client...." Ky. R. Evid. 503(b)(4). Ky. R. Evid. 503(a)(2) defines "representative of the client" as

(A) A person having authority to obtain professional legal services, or to act on advice thereby rendered on behalf of the client; or

(B) Any employee or representative of the client who makes or receives a confidential communication:

(i) In the course and scope of his or her employment;

(ii) Concerning the subject matter of his or her employment; and

(iii) To effectuate legal representation for the client.

Ky. R. Evid. 503(a)(2). Floorco argued that both Tu and Berry fall within the scope of this definition, stating that "[i]n their respective capacities, [Tu and Bayliss] ... have the authority to obtain professional legal services and to act on legal advice rendered on behalf of Floorco."[8] (DN 43, at PageID # 361.) Given their respective positions—Tu as Floorco's President and Bayliss as Floorco's Finance Manager—and Bayliss's representation in her affidavit that she has "authority to seek legal advice on behalf of Floorco," (DN 43-2, at PageID # 372), both Tu and Bayliss are representatives of the client within the meaning of Ky. R. Evid. 503(a)(2)(A).

**\*7** Though Ref. Nos. 6-8 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503, based the content of the same, Ref. Nos. 6-8 were

not "made for the purpose of facilitating the rendition of professional legal services to the client" as required. Ky. R. Evid. 503(b). While Floorco stated in its privilege log that all three e-mails were "sent for the purpose of facilitating the rendition of legal representation," that statement appears to be true of only a portion of Ref. Nos. 6 and 7. Specifically, only the first independent clause in the last sentence of Ref. No. 6 prior to the closing salutation and the sixth through eighth and last sentences of Ref. No. 7 are communications regarding facilitating legal representation. These passages alone do not convert the whole of Ref. Nos. 6 and 7 into attorney-client privileged e-mails. *Collins*, 384 S.W.3d at 165 n. 5 ("It is worth noting that if the [attorney-client] privilege applies to only some of the statements or parts of the documents, the statements or parts of documents not covered are nevertheless properly discoverable."). Instead, the remainder of these e-mails and the whole of Ref. No. 8 were prepared in response to Bayliss's explanation of the Labor Cabinet's position and were not made for the purpose of facilitating legal representation. As to Ref. No. 8, the mere use of the word "legally" is an insufficient reference to the facilitation of legal representation to justify protection under the attorney-client privilege.

Floorco also claimed that Ref. Nos. 6-8 were protected from disclosure by the work product doctrine. (DN 38-1, at PageID # 267-68.) As with Ref. Nos. 1-5 above, Ref. Nos. 6-8 are documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). However, once again, Ref. Nos. 6-8 were not prepared *because of* Floorco's subjective anticipation of litigation as required. *Roxworthy*, 457 F.3d at 594. Ref. Nos. 6-8 simply contain a further discussion of what Bayliss was told by Labor Cabinet representative and what Floorco's financial options were in response. They contain no discussion of strategy with respect to Jacobs's threat of litigation, nor do they even explicitly or implicitly reference Jacobs's stated intent to pursue legal action. Therefore, Ref. Nos. 6-8 were not prepared because of anticipation of litigation from Jacobs and are not protected by the work product doctrine.

Accordingly, the Court will grant in part Jacobs's Motion to Compel (DN 38) and direct Floorco to produce a copy of Ref. No. 6 redacting the first independent clause in the last sentence, a copy of Ref. No. 7 redacting the sixth through eighth and last sentences, and Ref. No. 8 in its entirety.

#### d) Ref. Nos. 9-10, 12

Ref. Nos. 9-10, 12 are a series of March 8, 2016, and March 9, 2016, e-mails between Bayliss and Tu in part discussing the Kentucky Labor Cabinet's investigation and position and in part discussing obtaining legal representation. Floorco claimed these e-mails were protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 268.)

As to attorney-client privilege, Ref. Nos. 9-10, 12 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503. However, based on their content, Ref. Nos. 9-10, 12 were not "made for the purpose of facilitating the rendition of professional legal services to the client" in their entirety as required. Ky. R. Evid. 503(b). Instead, Ref. Nos. 9-10, 12 are only partially protected by the attorney client privilege. Specifically, (1) the entire first paragraph and the phrase in the second-to-last sentence beginning with "and" and ending with "laws" of Ref. No. 9, (2) the third sentence and the independent clause after the comma in the fifth sentence of Ref. No. 10, and (3) the last sentence of Ref. No. 12 are communications regarding facilitating legal representation such that the attorney-client privilege protects those portions from disclosure. These passages contain both explicit and implicit references to legal representation sufficient to trigger the privilege. The remaining portions of the e-mails are merely a recitation of Bayliss's conversations with the Kentucky Labor Cabinet representative, Tu's reaction to the same, and a discussion of Floorco's financial position, which facially do not relate to legal representation.

As to the work product doctrine, Ref. Nos. 9-10, 12 are documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). However, again, Ref. Nos. 9-10, 12 were not prepared *because of* Floorco's subjective anticipation of litigation as required. *Roxworthy*, 457 F.3d at 594. Ref. Nos. 9-10, 12 simply contain a further discussion of what Bayliss was told by Labor Cabinet representative, Tu's reaction to the same, and Floorco's financial position. They contain no discussion of strategy with respect to Jacobs's threat of litigation, nor do they even explicitly or implicitly reference Jacobs's stated intent to pursue legal action. Therefore, Ref. Nos. 9-10, 12 were not prepared because of anticipation of litigation from Jacobs and are not protected from disclosure by the work product doctrine.

**\*8**  Accordingly, the Court will grant in part Jacobs's Motion to Compel (DN 38) and direct Floorco to produce a copy of Ref. No. 9 redacting the entire first paragraph and the phrase in the second-to-last sentence beginning with "and" and ending with "laws," a copy of Ref. No. 10 redacting the third sentence and independent clause after the comma in the fifth sentence of the e-mail, and a copy redacting the last sentence of Ref. No. 12.

### e) Ref. Nos. 11, 13

Ref. Nos. 11, 13 are March 9, 2016, and April 21, 2016, respectively, e-mails between Tu and Bayliss. In its privilege log, Floorco described both as "[e]mail[s] following [Jacobs]'s threat of filing a legal claim regarding Labor Cabinet's investigation sent for the purpose of facilitating the rendition of legal representation" and argued that they were protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 268-69.) The Court finds this to be an unfair characterization of the purpose of Ref. Nos. 11, 13. Ref. Nos. 11, 13 do not explicitly reference counsel or contain any implied references to seeking legal representation. Instead, they discuss Floorco's inventory, financial position, and Bayliss's—not Floorco's— conversations with the Labor Cabinet representative. This is an insufficient purpose to trigger the protections of either the work product doctrine or the attorney-client privilege for the reasons set forth above. Because Ref. Nos. 11, 13 were not sent for the purposes prescribed by either protection claimed by Floorco, they are not protected even though the Court otherwise concludes that Ref. Nos. 11, 13 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503 and documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). Accordingly, Jacobs's Motion to Compel (DN 38) will be granted as to Ref. Nos. 11, 13, and the Court will direct Floorco to produce Ref. Nos. 11, 13.

### f) Ref. No. 14

Ref. No. 14 is an April 21, 2016, e-mail between Tu and Bayliss. Floorco argued that it was protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 269.) While Ref. No. 14 is a confidential communication exchanged between representatives covered by Ky. R. Evid. 503 and is a document prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A), Ref. No. 14 is only partially entitled to protection under the attorney-client privilege. Again, the bulk of Ref. No. 14 discusses Floorco's financial position and how to respond to the Labor Cabinet, which the Court has already found to be insufficient to trigger the protections of the work product doctrine. Only the third and fourth sentences of Ref. No. 14 contain an implied reference to facilitating legal representation such that the same is protected by the attorney-client privilege. Therefore, Jacobs's Motion to Compel (DN 38) will be granted in part as to Ref. No. 14, and the Court will direct Floorco to produce a copy of Ref. No. 14 redacting the third and fourth sentences.

### g) Ref. Nos. 15-19

Ref. Nos. 15-19 are a series of April 22, 2016, e-mails and a May 5, 2016, e-mail between Tu and Bayliss, which Floorco argued were protected by the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 269-70.) For each of these e-mails, Floorco indicated that the e-mail was sent "for the purpose of facilitating the rendition of legal representation." (*Id.*) This is an inaccurate characterization of Ref. Nos. 15-19, which facially relate only the Floorco's financial position and ability to meet the demands of the Labor Cabinet representative to whom Bayliss had been speaking. This is no way involves facilitating legal representation, nor do Ref. Nos. 15-19 contain any explicit or implicit references to an attorney or legal advice. Therefore, Ref. Nos. 15-19 were not produced for the purpose prescribed by Ky. R. Evid. 503(b). As to the work product doctrine, because Ref. Nos. 15-19 were produced solely for the purpose of determining how Floorco could respond to the Labor Cabinet, the Court finds the same were not created because of Jacobs's threat of litigation. Because they were not sent for the purposes prescribed by either protection claimed by Floorco, they are not protected even though the Court otherwise concludes that Ref. Nos. 15-19 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503 and documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). Accordingly, Jacobs's Motion to Compel (DN 38) will be granted, and the Court will direct Floorco to produce Ref. Nos. 15-19.

### h) Ref. No. 21

**\*9** Ref. No. 21 is a May 5, 2016, e-mail between Bayliss and Tu. Floorco argued Ref. No. 21 was protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 270.) Ref. No. 21 is a confidential communication exchanged between representatives covered by Ky. R. Evid. 503 and a document prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). Though it does contain at least one implied reference to legal representation, which is protected by the attorney client privilege, the vast majority of Ref. No. 21 involves only a discussion of Floorco's response to the Labor Cabinet and/or incoming fees, which are not protected. Ref. No. 21 is likewise not protected by the work product doctrine because it was prepared in response to the Labor Cabinet and not "because of" the threat of litigation from Jacobs. Therefore, Jacobs's Motion to Compel (DN 38) will be granted in part as to Ref. No. 21, and the Court will require Floorco to produce a copy of Ref. No. 21 that redacts the first line item and amount in the list that begins the e-mail and the amount of money listed after the word "total."

### i) Ref. Nos. 23-25

Ref. Nos. 23-25 are two May 5, 2016, e-mails and a May 10, 2016, e-mail between Bayliss and Tu.[9] Again, Floorco listed the same as protected by both the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 270-71.) Ref. Nos. 23-25 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503 and documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). However, they are not protected by the attorney-client privilege because they do not contain any explicit or implicit references to obtaining legal representation or facilitating legal representation. As to the work product doctrine, they were not prepared "because of" the threat of litigation from Jacobs and again, were prepared in response to Bayliss's communications with the Labor Cabinet. Indeed, Ref. Nos. 23-25 only discuss the preparation of documentation requested by the Labor Cabinet representative with whom Bayliss had been speaking. Therefore, Jacobs's Motion to Compel (DN 38) will be granted as to Ref. Nos. 23-25.

### j) Ref. Nos. 20, 22, 26-28

Ref. Nos. 20, 22, 26-28 are a series of May 5, 6, and 11, 2016, e-mails between Tu and Bayliss, which Floorco argued were protected from disclosure by the attorney-client privilege and the work product doctrine. (DN 38-1, at PageID # 270-71.) Ref. Nos. 20, 22, 26-28 are confidential communications exchanged between representatives covered by Ky. R. Evid. 503 and documents prepared by or for a party or its representative within the meaning of Fed. R. Civ. P. 26(b)(3)(A). Further, they are communications for the purpose of facilitating legal representation and contain either an explicit discussion of legal advice and representation or an implied recognition of the need for legal advice sufficient to trigger the protection of the attorney-client privilege. Ref. Nos. 20, 22, 26-28 are not protected by the work product doctrine because they were not prepared because of Jacobs's threat of litigation and were again prepared as a response to the Labor Cabinet's investigation. Accordingly, Jacobs's Motion to Compel (DN 38) will be denied as to Ref. Nos. 20, 22, 26-28.

### k) Fed. R. Civ. P. 26(b)(3)(i)-(ii)

**\*10** Because the Court has not found that any e-mail on Floorco's privilege log was protected solely by the work product doctrine, the Court need not assess whether Jacobs made a showing of substantial need and that he could not obtain the substantial equivalent of the materials without undue hardship. See St. Luke Hospitals, 160 S.W.3d at 777 ("[W]hen a communication is protected by the attorney-client privilege it may not be overcome by a showing of need by an opposing party to obtain the information contained in the privileged communication.").

**B. Jacobs's Motion to Disqualify (DN 41)**
Jacobs moved to disqualify Floorco's counsel, Kyle Johnson ("Johnson"), contending that Johnson is a fact witness in this case. (DN 41.) Jacobs argued that Johnson represented Floorco in relation to the complaint Jacobs filed with the Kentucky Labor Cabinet; that prior to Johnson's involvement at least one Floorco representative repeatedly admitted that Floorco owed money to Jacobs; and that subsequently Johnson sent a letter and e-mail asserting that Jacobs was not Floorco's employee, stating no money was owed, and "reneging" on prior promises to pay. (Id. at PageID # 348-49.) Jacobs argued that because Floorco's intentions in promising to pay and then changing its mind are relevant to

Jacobs's promissory estoppel, equitable estoppel, and fraud claims, "Johnson's testimony about the content, meaning, and intention behind his letter and e-mail [a]re material to Plaintiff's case...." (*Id.* at 351.) In response, Floorco argued that Johnson's actions were all taken within the scope of his responsibilities as counsel for Floorco, that Johnson had no independent personal knowledge regarding the underlying facts of the case, and that Jacobs could obtain the facts sought through testimony from Floorco representatives themselves. (DN 46.)

"Disqualification of an attorney sought to be called as a witness for an opposing party is subject to a strict standard of review because 'a litigant may call his or her opponent's attorney as a trial tactic, seeking to disqualify the opposing party's counsel as witness.' " *Boodram v. Coomes*, No. 1:12-CV-00057-JHM, 2014 WL 12823642, at *7 (W.D. Ky. Nov. 20, 2014) (quoting *Hall v. MLS Nat'l Med. Evaluations, Inc.*, No. 05-185-JBC, 2008 WL 533542, at *2-3, 2008 U.S. Dist. LEXIS 15071 at *6-7 (W.D. Ky. Feb. 27, 2008))). *See also* *Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555, 560 (Ky. 2001) ("[D]isqualification is a drastic measure [that] courts should be hesitant to impose except when absolutely necessary."). Courts in this District have previously held that the Kentucky Supreme Court Rules governing professional conduct are "persuasive authority, if not governing standards, for practice before this Court." *Kittel v. C-Plant Fed. Credit Union*, No. 5:08-cv-114-TBR, 2010 WL 292689, at *1 (W.D. Ky. Jan. 20, 2010) (quoting *Carlsen v. Thomas*, 159 F.R.D. 661, 664 (E.D. Ky. 1994)). SCR 3.130(3.7)(a) provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless ..." one of several exceptions are met. Interpreting this rule, the Kentucky Supreme Court in *Zurich Ins. Co. v. Knotts* reversed the disqualification of an attorney where the moving party had failed to show that the attorney's testimony was "important to [movant's] proof at trial"; there was "any probability that [the attorney's] testimony w[ould] conflict with that of other witnesses;" and that the testimony to be elicited from the attorney was "unattainable from other sources." *Knotts*, 52 S.W.3d at 560. *See also* *Commonwealth Orthopaedic Ctrs., P.S.C. v. Philadelphia Indemn. Ins. Co.*, No. 09-109(WOB), 2010 WL 4568805, at * 3 (E.D. Ky. Nov. 3, 2010).

**\*11** Applying these principles to the instant case, the Court finds that Jacobs has not demonstrated that Johnson is a necessary witness in the instant action. Johnson does not appear to have personal knowledge of any fact related to the action other than those gained through his representation of Floorco. Further, to the extent Jacobs seeks testimony regarding Floorco's intentions with respect to his pay, Jacobs has not demonstrated that this testimony is unattainable from other sources, specifically Floorco's directors and managers. Additionally, Jacobs's Motion underestimates the prejudice disqualification would work on Floorco by emphasizing the number of other lawyers at Johnson's firm who could undertake Floorco's representation. Regardless of their number, no attorney could immediately match Johnson's "knowledge of the case" or "the degree of confidence and trust" Johnson has developed with Floorco. *Knotts*, 52 S.W.3d at 560. Accordingly, Jacobs's Motion (DN 41) will be denied.

**C. Jacobs's Motion to Strike (DN 51)**

Jacobs moved to strike the errata sheets submitted by Floorco after the depositions of Bayliss and Berry. (DN 51.) The Parties took the depositions of Bayliss and Berry on April 24, 2019. (DN 51, at PageID # 525.) On June 5, 2019, counsel for Floorco sent a letter to the court reporter who transcribed the depositions enclosing errata sheets purporting to make three changes to Berry's deposition transcript and seven changes to Bayliss's deposition. (DN 51-1.) Jacobs argued that, with one exception as to a change to correct spelling on Bayliss's errata sheet, the errata sheets all improperly attempted to make substantive changes to the testimony of Berry and Bayliss in violation of the Federal Rules of Civil Procedure and Sixth Circuit caselaw interpreting the same. (DN 51, at PageID # 526-27.) In response, Floorco argued that a motion to strike was not the proper procedural tool to use, that there existed no live controversy for this Court to address at this time in the case, and that the changes listed on the errata sheets were within the scope permitted by Fed. R. Civ. P. 30(e) and Sixth Circuit case law interpreting the same. (DN 60.)

As to Floorco's initial argument that a motion to strike errata sheets is not proper, Rule 30(e) does not specify by what vehicle a movant should challenge an errata sheet that does not substantively or procedurally comport with the Rule. Other courts in this Circuit have entertained a motion to strike under such circumstances. *See, e.g., Ramirez v. Bolster & Jeffries Health Care Grp., LLC*, No. 1:12-cv-205-GNS, 2016 WL 4132294, at *3 (W.D. Ky. Aug. 3, 2016) (collecting cases); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374-DCR, 2014 WL 1744848, at *3 (E.D. Ky. Apr. 30, 2014). Accordingly, the Court finds no error in addressing Jacobs's Motion. Likewise,

the Court is unpersuaded by Floorco's argument that no live controversy exists regarding the challenged errata sheets because Floorco had not yet attempted to use the changes in support of their substantive arguments. Floorco presented no binding authority to support the application of this concept at this level of review when the larger case and controversy of the claims detailed in Jacobs's complaint remain pending before the Court. Accordingly, the Court will now address Jacobs's motion.

### 1. Legal Standard

Fed. R. Civ. P. 30(e)(1) provides that

> (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."

Fed. R. Civ. P. 30(e)(1). The Rule does not define what it means by "changes in form or substance." However, in *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560 (6th Cir. 2009), the Sixth Circuit suggested that Rule 30(e)(1) does not allow a deponent to change his or her testimony under oath. The Sixth Circuit explained, "Rule 30(e) does not allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all[ ], then return home and plan artful responses.... A deposition is not a take home examination." *Id.* (citations omitted) (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 WL 343178, at *4 (S.D. Ohio Feb. 7, 2008)). Though unpublished and only discussed in passing, a majority of district courts within the Sixth Circuit have interpreted *Trout* to provide that an errata sheet is not a vehicle for a deponent to make substantive changes to deposition testimony.[10]

**\*12** Floorco cited to *Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009), in support of the proposition that a deponent can make substantive changes beyond corrections to typographical errors. (DN 60, at PageID # 566.) In *Carter*, the Sixth Circuit affirmed the district court's grant of summary judgment to the defendant in a sex discrimination and Family Medical Leave Act case. *Carter*, 561 F.3d at 563. In response to defendant's motion for summary judgment, plaintiff had responded by stating that her claim was based on her 2005 termination, which was different from her prior deposition testimony. The district court refused to consider a claim based on plaintiff's 2005 termination given her deposition testimony, and the Sixth Circuit affirmed. In doing so, the Sixth Circuit observed in passing that once plaintiff realized her deposition testimony regarding the scope of her claims was incorrect, "[u]nder Rule 30(e)(1)(B), she had thirty days following her deposition to make changes 'in form or substance.' [Plaintiff] was, after all, under a general duty to supplement or correct discovery responses." *Id.* at 568 (quoting Fed. R. Civ. P. 30(e)(1)(B)). Floorco contended this language suggested that a deponent may make substantive changes to his or her deposition testimony and criticized Jacobs for relying on *Trout*, an unpublished Sixth Circuit case, over *Carter*, which is published binding precedent. (DN 60, at PageID # 566.) However, the Court does not read *Carter* to fully support the proposition for which it is offered by Floorco because other than simply quoting the language of Rule 30, the *Carter* court did not offer any explanation of what it means by the term "form or substance." Further, the language by the *Carter* opinion was mere dicta and the issue of the interpretation of Rule 30(e) was not squarely before that court. *Skanska*, 278 F.R.D. at 410 n.1. Accordingly, the Court finds both the language and reasoning of *Trout* to be the proper approach, especially in light of the many decisions from other district courts in this Circuit reaching the same conclusion.

### 2. Analysis

Berry's errata sheet listed three proposed changes as follows:

| Page | Line | Transcript Reads | Transcript Should Read |
|------|------|------------------|------------------------|

| Page | Line | Transcript Reads | Transcript Should Read |
|---|---|---|---|
| 21 | 10 | Yes | Yes, he became a W-2 employee in 2005. |
| 21 | 12 | Yes | Yes, he was a W-2 employee. |
| 31 | 12 | Yes | Yes, but I don't know what the arrangement between Mike and Paul was. |

(DN 51-1, at PageID # 531.) The listed reason for each of the three changes was "clarification." (*Id.*) Though no Party attached Berry's deposition so the Court could view the answers and proposed revisions in context, the same was not necessary given the alterations proposed. Berry's initial response to whatever question was asked of him was an unqualified "yes." To allow any additional change to offer qualifying explanation along with his "yes" is a change beyond the scope contemplated by *Trout.* Accordingly, Jacobs's motion (DN 51) will be granted as to Berry's errata sheet.

Bayliss's errata sheet listed seven proposed changes, only six of which Jacobs challenged in his instant motion, as follows:

| Page | Line | Transcript Reads | Transcript Should Read |
|---|---|---|---|
| 46 | 12 | Salaried employee. | Salaried W-2 employee |
| 150 | 21 | Yes. | Yes, but only because Patricia Major stated that Floorco had to pay the money. |
| 189 | 19 | Employee | W-2 employee |
| 189 | 24 | Employee | W-2 employee |
| 194 | 12 | He-Paul most likely promised Mike in their conversation. | If this happened, Paul would most likely have made the promise in their conversation. But I was not privy to their conversations and don't know if a promise was made. |
| 114 | 25 | This e-mail is not about whether he was paid or not, it's whether to accrue payroll that wasn't paid. It's about the accrual. | This e-mail is not about whether he was paid or not. It's about the accrual. |

(DN 51-1, at PageID # 533.) Again, the listed reason for all of the above changes was "clarification." (*Id.*) Here again, Bayliss's proposed changes do not appear to be made for the purpose of correcting typographical errors or other transcription errors. Floorco did not argue that the court reporter inaccurately transcribed Bayliss's testimony, and Jacobs's submitted an affidavit from the court reporter who transcribed Bayliss and Berry's depositions affirming that the original transcript she prepared accurately reflected the testimony given by Bayliss and Berry (DN 51-2). Bayliss's revised responses qualify her initial responses to an impermissible degree—in some cases dramatically. To permit Floorco to amend testimony in this manner after the deposition has closed when Jacobs's counsel has no reasonable opportunity to ask follow up questions would "defeat the purpose of the discovery deposition process." *Ramirez*, 2016 WL 4132294, at * 3. Instead, Bayliss's opportunity to further explain or clarify her deposition testimony will come at any trial of this matter. *Id.* Accordingly, Jacobs's motion (DN 51) will likewise be granted as to Bayliss's errata sheet.

**D. Jacobs's Renewed Motion to Compel the Deposition of Paul Tu (DN 75)**

**\*13** Jacobs moved to compel Floorco to produce its President, Tu, who resides in China, for a deposition. (DN 75.) The Parties attempted to compromise to schedule Tu's deposition over the course of several months, as detailed in Jacobs's Motion (DN 75) and Floorco's Response (DN 86).

Jacobs first requested Tu's deposition on November 19, 2018, and followed up regarding his request multiple times in the months thereafter. (DN 75, at PageID # 648; DN 75-1, at PageID # 663-66.) On February 21, 2019, Jacobs unilaterally noticed Tu's deposition for May 30, 2019, at counsel's office in Louisville. (DN 35; DN 75-1, at PageID # 668.) However, Jacobs's counsel e-mailed Floorco's counsel the same date indicating that he was willing to reschedule the deposition for a different date if more convenient for Tu. (DN 75-1, at PageID # 668.) In response, Floorco's counsel indicated that he would reserve the date on his calendar but did "not have authorization to state that [Floorco] w[ould] make Paul Tu available on that date and time." (*Id.* at 666.) When Jacobs's counsel reached out to confirm the deposition was going forward as scheduled in early May, he was informed by Floorco's counsel that Tu was not going to be able to travel to the United States before the end of the discovery period. (*Id.* at 669-71; DN 75-3.) The Parties discussed taking Tu's deposition via video or teleconferencing but there was some concern that this sort of deposition would put the Parties and/or Tu in violation of Chinese law. (*Id.* at 670.)

On June 10, 2019, Jacobs filed his first motion to compel Tu's deposition. (DN 50.) Thereafter, the Parties reached an agreement to take Tu's deposition remotely and filed a motion with the Court to extend the discovery deadline to allow the Parties additional time to complete the deposition. (DNs 57, 75-11, 86-3, 86-4, 86-5, 86-6, 86-7, 86-8.) However, the court reporter Jacobs selected to take Tu's deposition advised her that her company could no longer facilitate the deposition because she had been informed by the U.S. Embassy in China that the deposition would violate Chinese law and could subject the participants to criminal penalties.[11] (DNs 61-2, 75-5.) Though Floorco argued that the court reporter appeared to be misunderstanding the advice she received from the Embassy, Jacobs's counsel refused to take the deposition remotely from China given the advice he received. (DNs 75-6, 86-10, 86-13.)

**\*14** The Parties then-explored the possibility of taking the deposition while Tu was in Hong Kong and scheduled Tu's deposition for August 29-30, 2019 to be taken remotely from Hong Kong. (DNs 72, 75-7, 75-8, 86-1, 86-2.) Because the Parties had reached an agreement, the Court denied Jacobs's initial motion to compel without prejudice, granting Jacobs leave to refile if the deposition did not take place as scheduled. (DN 71.) However, in confirming the August deposition dates, Floorco's counsel alerted Jacobs's counsel that Tu was facing legal trouble in China and was prohibited by a Chinese Court from leaving mainland China until the issue was resolved. (DN 75-8.) Two days before the scheduled August deposition, Floorco's counsel informed Jacobs's counsel that Tu would not be able to travel to Hong Kong for the deposition and again offered a remote deposition from China. (DN 75-10.) The instant motion followed.

Jacobs argued that the Court should compel Tu to appear in person for his deposition in Kentucky. (DN 75, at PageID # 653-57.) In response, Floorco argued that Jacobs should have to take the deposition where Tu is located.[12] (DN 86, at PageID # 755-58.) Further, Floorco argued that Jacobs had not yet attempted to utilize the Hague Convention to take Tu's deposition and that alternatively Jacobs could take Tu's deposition remotely while Tu was located in China. (*Id.* at 758.) Floorco viewed the court reporter's e-mail regarding the legality of taking Tu's deposition remotely to only cover a situation where the attorneys traveled to China to conduct a deposition. (*Id.* at 759.) Floorco attached a legal opinion it obtained from a Chinese law firm, which it had translated by an attorney in Floorco's counsel's office who is fluent in Chinese. (*Id.* at 758 n.2.) The legal opinion, as translated, stated, "Currently, there is no law requiring that a foreign court can obtain a witness' statements only when such witness testifies in the court, and the law does not preclude a witness from testifying through two-way audiovisual transmission technologies." (DN 86-12, at PageID # 780.) Floorco also attached a declaration from Tu in which he represented under penalty of perjury that he did not oppose Jacobs's request to take his deposition and affirmed that he was "currently under a court order precluding [him] from traveling outside of mainland China in relation with a civil litigation [he was] involved in mainland China, unrelated to the present case." (DN 86-11, at PageID # 777.) Tu even represented that he attempted to buy a plane ticket to Hong Kong online but a message popped up indicating a ticket could not be issued to him due to travel restrictions. (*Id.* at 777-78) In his reply, Jacobs maintained that Floorco had not demonstrated that a remote deposition was legal under Chinese law and that special circumstances existed in this matter to make Kentucky the proper venue for Tu's deposition. (DN 87.)

### 1. Legal Standard

Pursuant to Fed. R. Civ. P. 30, a party may depose any person. While a deponent's attendance may be compelled by subpoena, if necessary, under Fed. R. Civ. P. 45, "a subpoena is not necessary if the person to be examined is a party or an officer, director, or managing agent of a party." 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2107 (3d ed. Aug 2019). Instead, "if a corporation is a party, the [deposition] notice compels it to produce any officer, director or managing agent named in the deposition notice." *El Camino Res. Ltd. v. Huntington Nat. Bank*, No. 1:07-CV-598, 2008 WL 2557596, at *2 (W.D. Mich. June 20, 2008); *see also Martin Cty. Coal Corp. v. Universal Underwriters Ins. Services, Inc.*, No. 08-93-ART, 2010 WL 4629761, at *2 (E.D. Ky. Nov. 8, 2010); *E.E.O.C. v. Honda of America Mfg., Inc.*, No. 2:06-CV-0233, 2007 WL 682088, at *1 (S.D. Ohio Feb. 28, 2007). As to the location of a noticed deposition, generally, "an examining party may set the place for the deposition of another party wherever he wishes subject to the power of the court to grant a protective order under Rule 26(c)(2) designating a difference place." *Farquhar v. Shelden*, 116 F.R.D. 70, 72 (E.D. Mich. 1987) (quoting Wright & Miller, Federal Practice and Procedure Civil, § 2112); *see also In re FCA US LLC Monostable* Elect. *Gearshift Litg.*, No. 16-MD-02744, 2017 WL 4216193, at *3 (E.D. Mich. Sept. 22, 2017). District courts in the Sixth Circuit have held that a rule has "evolved" such that "in federal litigation, in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located." *Id.* Here, Tu is a resident of China, and therefore, generally, it would be Jacobs's obligation to depose Tu in China. Jacobs admitted that absent special circumstances, he would be required to travel to where the witness is located for a deposition but argued that special circumstances existed here to justify forcing Tu to travel to Kentucky for his deposition. (DN 87, at PageID # 787.) "[D]istrict courts within the Sixth Circuit have considered the factors of cost, convenience, and litigation efficiency" in determining whether special circumstances exist to overcome the general rules regarding the location for a deposition. *Schall v. Suzuki Motor of America, Inc.*, No. 4:14-cv-74-JHM, 2017 WL 5622498, at *4 (W.D. Ky. Nov. 21, 2017) (objections to magistrate judge's order overruled in *Schall v. Suzuki Motor of America, Inc.*, No. 4:14-cv-749-JHM, 2018 WL 283266, at *1 (W.D. Ky. Jan. 3, 2018)).

### 2. Analysis

**\*15** As to the first factor, cost, Jacobs argued that Floorco has "nearly limitless resources" and is more capable of bearing the burden of international travel than Jacobs, an individual. (DN 87, at PageID # 787.) If a difference in available funds for travel were sufficient to overcome the presumptive location for a deposition, then the rule requiring depositions to take place at the corporation's principal place of business in the case of a Rule 30(b)(6) deposition or the witness's location in the case of Rule 30(b)(1) deposition never would never have arisen. As the Court has previously observed, "the Court *will not* permit the parties' relative size and resources alone to control the outcome in disputes...." *Pogue v. Northwestern Mut. Life Ins. Co.*, No. 3:14-cv-598-CRS-CHL, 2016 WL 2343898, at *3 (W.D. Ky. May 3, 2016). Accordingly, the Court finds that the cost factor, and more specifically, Jacobs's argument regarding the respective resources of the Parties, is non-dispositive of the instant issue.

The second factor, convenience, looks to "whether there is any hardship to counsel, where the deponent lives, and to what extent the deponent's affairs may be disrupted by having to travel to the site of the deposition." *Schall*, 2017 WL 5622498, at *6 (citing *MEMC Elect. Materials v. Balakrishnan*, No. 2:12-cv-344, 2012 WL 1606053, at *3 (S.D. Ohio May 8, 2012)). Here, Floorco did not offer any proof that appearing for a deposition in Kentucky would impose a significant disruption on Tu's life and business. Indeed, the Parties' correspondence in attempting to schedule Tu's deposition recognized that Tu did sometimes travel to the United States for business, which suggests that the disruption, if any, to Tu would be minimal. (*See* DN 75-1.) The Court notes that it appears requiring Jacobs to attempt to take Tu's deposition in China would impose a significant hardship and inconvenience on counsel given the logistics involved of attempting to arrange and attend such a deposition. Accordingly, the Court concludes that the convenience factor weighs in favor of requiring Tu to appear for a deposition in Kentucky.

As to the final factor, litigation efficiency, the Court recognizes that requiring the Parties to attempt to conduct a deposition in China will substantially impair, if not eliminate, this Court's ability to intervene if a discovery dispute arises during Tu's deposition. Further, Jacobs argued that it is "impossible" or at least "highly unlikely" that the Hague Convention procedure would result in a deposition of Tu. (DN 87, at PageID #787-88.) In support of his argument,

Jacobs cited to an article and publication from the American Bar Association suggesting that China rarely grants such requests. (*Id.* at 788 n.6.) Floorco has not pointed the Court to any authority suggesting that it is likely any request submitted by Jacobs to take Tu's deposition pursuant to the Hague Convention would be granted, nor was the Court able to find any reliable authority that suggested the same. The Court is unpersuaded by Floorco's reading of the communications Jacobs received from his chosen court reporter and the U.S. Embassy in China regarding the legality of taking a remote deposition and the purported legal opinion it obtained in support. The Court was provided with no information regarding the reliability of the legal advice provided by the Chinese firm or the accuracy of the translation. Further, the opinion did not purport to rely on any particular source of Chinese law that the Court could use to verify its interpretation of the same. The Court will neither direct nor encourage the Parties to engage in potentially illegal conduct. Because attempting to take the deposition of Tu in China does not appear likely to succeed under the Hague Convention process and a remote deposition appears unlawful, the Court concludes the convenience factor weighs in favor of compelling Tu to appear for a deposition in Kentucky.

**\*16** Despite Floorco's attempts to distinguish it, the Court finds this case to be similar to *Recaro N. Am., Inc. v. Holmbergs Childsafety Co.*, No. 09-12256, 2011 WL 5864727, at \*3, 2011 U.S. Dist. LEXIS 134978 at \*8 (E.D. Mich. Nov. 22, 2011), relied upon by Jacobs. In *Recaro*, the plaintiff served notices to take the Rule 30(b)(6) depositions of certain Swedish and Chinese corporate defendants and the Rule 30(b)(1) depositions of certain officers, directors, and managing agents of those companies at plaintiff's counsel's office in Michigan. *Id.* at \*2-3. Defendants objected that the depositions should have to take place in the respective country of each deponent pursuant to the Hague Convention. *Id.* at \*3. The United States District Court for the Eastern District of Michigan found that special circumstances existed to justify requiring that the depositions be conducted in Michigan. *Id.* at \*8. The court noted that the defendant had not raised the applicability of the Hague convention until near in time to the close of fact discovery and cited that defendants had previously been content to proceed under the Federal Rules. *Id.* at \*6-7. The court noted that defendants did business in Michigan and that "Michigan has a strong interest in protecting its corporate citizens from defective, foreign manufactured equipment." *Id.* at \*7. The court emphasized that affidavits submitted by the defendants suggested that the court could not assume any request to the Sweden and Hong Kong authorities to approve the depositions would be granted, that the deponents were involuntary witnesses, and that defendants could not ensure the witnesses' attendance at overseas depositions. *Id.* Therefore, the court concluded that special circumstances justified applying the Federal Rules to the depositions in lieu of the Hague Convention and requiring the deponents to appear in Michigan. However, the court did require the plaintiff's counsel to "pay the travel expenses, including reasonable airfare, hotel, food, and rental car expenses if needed for each deponent." *Id.* at \*9. Like in *Recaro*, Floorco is organized as a Kentucky limited liability company, holds a corporate license to do business here, and appears to intend to continue to do business here. (DN 87, at PageID # 787.) Further, there is no indication that the Chinese authorities will approve Tu's deposition. While Tu is a willing witness, unlike the witnesses in *Recaro*, the Court is persuaded that a finding of special circumstances is warranted here. [13]

Accordingly, the Court will grant Jacobs's Motion to Compel Tu to appear for a deposition in Kentucky. However, in the face of both Tu's sworn testimony that he is not permitted at present to travel outside of China and the current restrictions imposed by the United States and other countries on travel in light of COVID-19, the Court will not yet impose a deadline as to when Tu must travel to Kentucky for his deposition. Instead, the Court will require the Parties to meet and confer as to the issue and propose a deadline for Tu's deposition to the Court in submitting the revised scheduling order required by the Court's November 25, 2019, and December 16, 2019, Orders (DNs 90, 94). [14] Because the Parties had previously agreed to take Tu's deposition remotely from Hong Kong, the Court emphasizes that its instant ruling does not prohibit the Parties from making other arrangements to take Tu's deposition to the extent they can agree to do so.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

(1) Jacobs's Motion to Compel (DN 38) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. On or before **April 13, 2020**:

   (a) Floorco is directed to produce Ref. Nos. 1-5, 8, 11, 13, 15-19, and 23-25.

(b) Floorco is directed to produce copies of Ref. Nos. 6-7, 9-10, 12, 14, and 21 redacted as set forth in Section II(A)(2) above.

(c) Floorco shall determine whether the attachments to Ref. No. 25 have already been produced. If so, Floorco shall advise Jacobs in writing of that fact. If not, Floorco is directed to either produce the attachments, if responsive, or, if privileged or protected from disclosure by the work product doctrine considering the analysis in the Court's instant opinion, list the attachments on an amended privilege log.

(d) Floorco shall serve an amended privilege log reflecting the documents withheld and the reason for withholding them in accordance with this opinion.

(2) Jacobs's Motion to Disqualify (DN 41) is **DENIED**.

(3) Jacobs's Motion to Strike (DN 51) is **GRANTED**. All proposed changes on the errata sheets for the depositions of Richie Berry and Freida Bayliss are struck except for the sole change in the spelling of "Nu-Kote" listed on Bayliss's errata sheet. On or before **April 13, 2020**, Floorco shall prepare and serve amended errata sheets in accordance with this opinion and serve a copy of the same on Jacobs to be attached to Bayliss and Berry's depositions. Floorco shall also serve a copy of the instant opinion and amended errata sheets on the court reporter who transcribed the depositions at issue.

*17 (4) Jacobs's Renewed Motion to Compel the Deposition of Paul Tu (DN 75) is **GRANTED**. Tu shall appear for his deposition in Kentucky or in any other location as to which the Parties can agree he may be produced.

(5) On or before **March 31, 2020**, the Parties shall submit a revised scheduling order, as required by the Court's November 25, 2019, and December 16, 2019, Orders (DNs 90, 94), that includes a proposed deadline for Tu's deposition.

**All Citations**

Slip Copy, 2020 WL 1290607

## Footnotes

1     The Court previously denied Jacobs's initial motion to compel Paul Tu's deposition (DN 50) as moot given the Parties' then-agreement to conduct the deposition. (DN 71.)

2     No party produced a copy of the actual request or Floorco's response for the Court's review.

3     Tu stated in his affidavit that "[t]he e-mails [he] subsequently exchanged with Richie Berry and Freida Bayliss with regard to Michael Jacobs [after Jacobs's February 4, 2015, e-mail] were created because of Michael Jacobs' [*sic*] threat to sue." (DN 43-1, at PageID # 370.) Bayliss likewise stated that in light of the e-mail from Jacobs in February 2015, "[t]he e-mails [she] subsequently exchanged with Paul Tu and/or Richie Berry regarding Michael Jacobs were created after and because of Michael Jacobs' [*sic*] threat to sue Floorco for the purpose of preparing for the prospect of litigation." (DN 43-2, at PageID # 372.) Richie Berry's affidavit included a similar statement. (DN 43-3, at PageID # 374) ("The e-mails I exchanged with Paul Tu and/or Freida Bayliss after receipt of the February 4, 2015 e-mail were created because of Michael Jacobs' [*sic*] threat to sue Floorco and in preparation for the prospect of litigation.").

4     In the instant opinion, the Court will refer to the e-mails on Floorco's privilege log by the reference number ("Ref. No.") assigned to each in the first column on the log. (DN 38-1.)

5     Jacobs's February 11, 2015, e-mail is not listed on the privilege log, and therefore, the Court has no reason to believe a discussion of the content of the same is inappropriate herein.

6     Though Tu and Berry indicated in their respective affidavits that the e-mails the two exchanged were "created because of Michael Jacobs' [*sic*] threat to sue," the Court concludes this is at least partially a question of law for the Court's determination, not a factual question for the Parties. (DN 43-1, at PageID # 370; DN 43-3, at PageID # 374.) To find otherwise would mean that any party could trigger the protection of the work product doctrine anytime it could find a witness willing to swear that the purpose for the creation of a particular document was the threat of litigation. Though the Court does not question the veracity of Tu and Berry's

| | |
|---|---|
| | *beliefs*, the same are not dispositive of the instant case given the content and context of the messages they exchanged. |
| 7 | Again, though Bayliss's affidavit contained the same statement as Tu's and Berry's that the e-mails she exchanged with Tu "were created because of Michael Jacobs' [*sic*] threat to sue Floorco," the Court finds it is not bound by the same for the same reasons set forth in the previous footnote. (DN 43-3, at PageID # 374.) |
| 8 | Though Floorco argued that Berry had the same authority, the Court need not address whether Berry falls within the provisions of Ky. R. Evid. 503(a)(2) because all of the e-mails on Floorco's privilege log as to which it claimed the attorney-client privilege were exchanged between Tu and Bayliss. (DN 38-1.) |
| 9 | The Court notes that Ref. No. 25 appears to contain attachments that are not listed individually on the privilege log. Because the attachments are not listed on the privilege log, the Court must assume that the same are either non-responsive to Jacobs's propounded discovery requests or have already been produced. The Court will direct Floorco to determine whether the attachments to Ref. No. 25 have already been produced. If so, Floorco should advise Jacobs of that fact. If not, Floorco is directed to either produce the attachments, if responsive, or, considering the Court's instant opinion, if protected by either the attorney-client privilege or the work product doctrine, list the attachments on the amended privilege log the Court will direct Floorco to produce below. |
| 10 | *See Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-cv-82-CRS, 2019 WL 1435934, at *5 n.1 (W.D. Ky Mar. 29, 2019); *Ramirez v. Bolster& Jeffries Health Care Grp., LLC*, No. 1:12-cv-205-GNS, 2016 WL 4132294, at *3 (W.D. Ky. Aug. 3, 2016) (collecting cases); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374-DCR, 2014 WL 1744848, at *3 (E.D. Ky. Apr. 30, 2014); *Clare v. Chrysler Grp., LLC*, No. 13-11225, 2014 WL 2515212, at *1 (E.D. Mich. June 4, 2014); *Walker v. 9912 E. Grand River Assocs., LP*, No. 11-12085, 2012 WL 1110005, at *3-4 (E.D. Mich. Apr. 3, 2012); *Giebel v. Lavalley*, No. 5:12-CV-750, 2013 WL 6903784, at *4-5 (N.D. Ohio Dec. 31, 2013); *Hall v. U.S. Cargo & Courier Service, LLC*, No. 2:16-CV-330, 2019 WL 2524424, at *2 (S.D. Ohio June 18, 2019); *Tchankpa v. Ascena Retail Grp., Inc.*, No. 2:16-CV-895, 2018 WL 1472527, at *1 (S.D. Ohio Mar. 26, 2018); *European Pensions Mgmt. Ltd. v. Columbus Life Ins. Co.*, No. 1:16-CV-542, 2017 WL 4540233, at *12 (S.D. Ohio Oct. 11, 2017); *Horter Inv. Mgmt., LLC v. Cutter*, No. 1:15-CV-00477, 2017 WL 1424327, at *3 (S.D. Ohio Apr. 20, 2017); *McClendon v. Hightowers Petroleum Co.*, No. 1:14-CV-00619, 2016 WL 2859625, at *2 (S.D. Ohio May 16, 2016); *Jones-McNamara v. Holzer Health Systems, Inc.*, No. 2:13-CV-616, 2015 WL 196048, at *4 (S.D. Ohio Jan. 14, 2015); *Mullins v. Cyranek*, No. 1:12-CV-384, 2014 WL 3573498, at *2 (S.D. Ohio July 21, 2014); *Lewis v. Hawkins*, No. 3:16-CV-315-TAV-HBG, 2017 WL 4322825, at *6, 2017 U.S. Dist. LEXIS 162003 at *16 (E.D. Tenn. Sept. 28, 2017); *Dentsply Int'l v. U.S. Endodontics, LLC*, No. 2:14-CV-196, 2015 WL 12672022, at *, 2014 U.S. Dist. LEXIS 181352 at *4 (E.D. Tenn. Nov. 18, 2014); *CNB Bancshares, Inc. v. StoneCastle Sec. LLC*, No. 3:09-CV-33, 2012 WL 2887256, at *3 (E.D. Tenn. July 13, 2012); *Jeffries v. Emerson Indus. Automation*, No. 14-CV-2431-SHL-TMP, 2015 WL 11019142, at *1 (W.D. Tenn. Aug. 6, 2015); *Hensley v. Methodist Healthcare Memphis*, No. 13-2436-STA-CGC, 2014 WL 11514824, at *2 (W.D. Tenn. July 28, 2014); *Taylor v. W. Tenn. State Penitentiary*, No. 2:11-CV-02843-CGC, 2014 WL 2036048, at *2 (W.D. Tenn. May 16, 2014); *E.E.O.C. v. Skanska USA Building, Inc.*, 278 F.R.D. 407, 412 (W.D. Tenn. 2012). *But see Hank v. Great Lakes Constr. Co.*, No. 1:16-CV-02104, 2017 WL 10127362, at *1 n.3 (N.D. Ohio Aug. 2, 2017), *reconsideration denied*, 2017 WL 10127363 (N.D. Ohio Aug. 21, 2017); *Jermano v. Graco Children's Products, Inc.*, No. 13-CV-10610, 2015 WL 1737548, at *2 (E.D. Mich. Apr. 16, 2015). |
| 11 | The e-mail the court reporter received from the U.S. Embassy appeared to be copied from the U.S. Department of State's Judicial Assistance Country Information page for China, which stated under the heading "Taking Voluntary Depositions of Willing Witnesses" that: |
| | China does not permit attorneys to take depositions in China for use in foreign courts. Under its Declarations and Reservations to the Hague Evidence Convention and subsequent diplomatic communications, China has indicated that taking depositions, whether voluntary or compelled, and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its |

|   | |
|---|---|
|   | Central Authority under the Hague Evidence Convention. Consular depositions would require permission from the Central Authority on a case by case basis and the Department of State will not authorize the involvement of consular personnel in a deposition without that permission. Participation in such activity could result in the arrest, detention or deportation of the American attorneys and other participants.<br>Judicial Assistance Country Information: China, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html (last visited Mar. 12, 2019). *Compare id., with* DN 75-5. |
| 12 | Floorco also argued that Jacobs's motion was not properly brought because it did not oppose taking Tu's deposition. (DN 86, at PageID # 751.) Floorco's argument is misplaced given that Jacobs has noticed at least two depositions for Tu and because Floorco does oppose presenting Tu for deposition in Kentucky as requested by the present motion. |
| 13 | Because Floorco did not request cost-shifting if the Court granted Jacobs's motion, the Court does not address the propriety of the same herein. |
| 14 | The Court understands that scheduling Tu's deposition is likely to involve many factors outside of the control of the Parties. The Parties are directed to do their best to develop a scheduling order that accommodates those factors and are advised that the Court will consider all factors in both setting and ruling on a request for an extension of the deadline for Tu's deposition. |

---

**End of Document**     © 2021 Thomson Reuters. No claim to original U.S. Government Works.