**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW JERSEY**

**CAMDEN VICINAGE**

| | | |
|---|---|---|
| IN RE VALSARTAN, | : | MDL No. 19-2875(RBK/KW) |
| LOSARTAN, AND IRBESARTAN | : | |
| PRODUCTS LIABILITY | : | |
| LITIGATION | : | |
| | : | |

**This Order Relates to all Cases**

## SPECIAL MASTER ORDER NO. 100

### July 22, 2024

The issue addressed in this Special Master Order is what sanctions to impose for violations of discovery orders committed over the course of several years by Defendant Zhejiang Huahai Pharmaceutical Co, Ltd. ("ZHP").  Special Master Order No. ("SMO") 98, issued on May 10, 2024,  determined that ZHP had indeed violated discovery orders and granted in part Plaintiffs' Second Motion for Sanctions (ECF No. 1838).  (ECF No. 2712).  Specifically, SMO 98 concluded that ZHP had violated court orders compelling production of documents and the deposition of its CEO, Baohua Chen, but denied the "death penalty" sanctions sought by Plaintiffs (*i.e.*, "that the Answer and Defenses of ZHP and its subsidiaries be stricken; that the allegations in Plaintiffs' Amended Master Complaints with respect to ZHP and its subsidiaries be deemed admitted for all purposes; and that ZHP and its subsidiaries be precluded from defending Plaintiffs'

1

claims." (*Id.* at 1).)  Instead, SMO 98 directed Plaintiffs to submit proposed findings of fact in support of an adverse inference instruction to the effect that information favorable to Plaintiffs would have been provided had ZHP's CEO appeared for his court-ordered deposition and had ZHP complied with court orders requiring the production of documents from the custodial file of Mr. Chen's Chief of Staff,  Maggie Kong.

This Special Master Order now decides the specific sanctions to be imposed for ZHP's violations of discovery orders.  In summary, Plaintiffs will be awarded a permissive adverse inference instruction to the effect that the jury may infer that Mr. Chen's deposition testimony and the documents that have not been produced would have been favorable to Plaintiffs and adverse to ZHP.  In addition, Plaintiffs will be awarded the attorneys' fees and costs incurred in connection with the discovery disputes in the amount set forth in Plaintiffs' Brief in Support of Request for Attorneys' Fees, Expenses, and Monetary Sanction Pursuant to Special Master Order 98. (Doc. No. 2731-1).  Plaintiffs' request for other monetary sanctions, however, will be denied.

## BACKGROUND

The parties are well acquainted with the events leading to this Order, which are recounted at length in SMO 98.  Accordingly, there is no need to reiterate here the details of ZHP's discovery failures.

2

It is, however,  important to note the significance of the discovery items that remain outstanding: the deposition testimony of Mr. Chen; the native file and metadata for an email dated July 27, 2017 that revealed ZHP's knowledge of the nitrosamine contamination; and the native files and any drafts of an internal report regarding the investigation of the nitrosamine contamination of a related ZHP product, Irbesartan.  Due to these discovery failings, there are important information gaps dealing with when ZHP first learned of the contamination and whether it concealed its knowledge.

To determine the appropriate sanctions for the failure to provide information and documents concerning these significant matters and the failure of Mr. Chen to appear for his deposition, the parties were directed to submit additional briefing.  On May 17, 2024, Plaintiffs filed proposed findings of fact and a request for attorneys' fees, expenses, and monetary sanctions, as ordered in SMO 98. (Doc. Nos. 2721 and 2731-1). In total, Plaintiffs requested an award of attorneys' fees of $309,130 and an award of expenses of $41,399.20.  (Doc. No. 2731-1 at 20).  Plaintiffs also asserted that it would be appropriate to impose a per diem monetary sanction of at least $1,000 per day from the expiration of the December 15, 2021 deadline for Mr. Chen's deposition until full payment of the monetary sanctions.[1]  (*Id*.).

---

[1] Plaintiffs proposed a daily sanction of between $1,000 and $50,000.  At $1,000 per day, the sanction would have been $877,000 as of May 10, 2024.  At $50,000 per day, the sanction would  have totaled $48,850,000.  (Doc. No. 2732-1 at 15.)

3

On May 21, 2024, ZHP filed a response to Plaintiffs' proposed findings of fact and requested an extension of the deadlines provided in SMO 98. (Doc. No. 2726). Special Master Order 99 denied ZHP's request for an extension of all deadlines, but extended the deadline for ZHP to respond to Plaintiffs' proposed finding of facts to May 31, 2024. (Doc. No. 2730).

On May 31, 2024, ZHP filed its Response to Plaintiffs' Proposed Findings of Fact and Response to Plaintiffs' Brief in Support of Request for Attorneys' Fees, Expenses, and Monetary Sanctions. (Doc. Nos. 2736 and 2737). ZHP also filed its Objections and Motion to Reverse Special Master Order 98 on May 31, 2024 (Doc. No. 2738).

On June 25, 2024, oral argument was presented on the question of the appropriate sanctions for ZHP's violations of discovery orders. This opinion follows.

## DISCUSSION

### A. Adverse Inference Sanction

Rule 37(b)(2) of the Federal Rules of Civil Procedure identifies sanctions that may be imposed by the Court in the Judicial District where an action is pending for a party's violation of a court discovery order. It provides:

> (b) Failure to Comply with a Court Order.

> (2) Sanctions Sought in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(B) For Not Producing a Person for Examination. If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.

(C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

The Third Circuit has recognized that the list of sanctions available to a court for a party's failure to abide by a Court Order under Rule 37(b)(2)(A) is "not exhaustive" and a decision to "depart from the list of sanctions expressly endorsed by the rule is not fatal." *Clientron Corp. v. Devon IT, Inc*., 894 F.3d 568, 580 (3d

5

Cir. 2018). Any sanction, however, must both be just as well as "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982). The first prong of this test is satisfied if the sanction does not violate principles of due process while the second prong is satisfied if there is a specific nexus between the sanction and the unproduced discovery. *Id.*[2]

Nearly 70 years ago, the Supreme Court recognized in circumstances similar to those presented here – a litigant claiming inability to comply with discovery orders on the basis of a foreign law – that an adverse inference could be an appropriate sanction so long as the foreign litigant is able to present its claims and defenses on the merits. *See Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 213 (1958). The Court noted that it

---

[2] In *Clientron* the court noted that "Rule 37(b)(2)(A) certainly allows courts to adopt conclusions, presumptions, inferences, or evidentiary preclusion rules that operate within the confines of the claims and defenses that the parties have already raised," but that Rule 37(b)(2)(A) does not "authorize courts to create new federal law remedies that liberate the courts from those confines entirely." Ordering an adverse inference as to the testimony of Baohua Chen and the missing files and metadata does not present a concern similar to the concerns raised by the Rule 37 sanction at issue in *Clientron*, where the District Court ordered parties to be held as alter egos to a corporate entity, despite Pennsylvania law not recognizing the parties as alter egos. 894 F.3d at 581. Here, Plaintiffs have placed at issue the information contained in the non-produced discovery and its relevance to the resolution of these claims. Ordering the permissive adverse inference, which ZHP may rebut through available evidence already produced in this case, does not create a substantive concern similar to the concern caused by the sanction in *Clientron*.

would be inappropriate to dismiss a complaint filed by a Swiss holding company for failure to provide Swiss banking records when the productions would have subjected the plaintiff to criminal sanctions in Switzerland.  Instead, in remanding for the issuance of different sanctions, the Court suggested that "[i]n the absence of complete disclosures by petitioner, the District Court would be justified in drawing inferences unfavorable to petitioner as to particular events," but that such a sanction should not "preclude petitioner from being able to contest on the merits." *Id.* at 212.

Review of subsequent opinions addressing similar circumstances where a foreign litigant relies on foreign law as a justification for failure to comply with a court order confirms that an adverse inference is an appropriate sanction. *See e.g.*, *Giorgi Global Holdings, Inc. v. Smulski*, 2022 WL 4389523, at *7 (E.D. Pa. Sept. 22, 2022) (ordering adverse inference instruction as sanction for defendants' failure to produce documents subject to court order due to Polish foreign secrecy laws); *Chevron Corp. v. Donziger*, 296 F.R.D. 168, 222 (S.D.N.Y. 2013) (ordering adverse inference instruction as sanction for defendants' failure to produce documents subject to court order due to alleged limitations under Ecuadorian law); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186 (E.D. N.Y. 2010) (ordering adverse inference instruction as sanction for defendants' failure to produce banking records that defendant claimed it could not produce without violating foreign bank secrecy laws).

The appropriateness of an adverse inference instruction is further confirmed by the Restatement (Third) of Foreign Relations Law and Judge Kugler's earlier comments. Section 442 of the Restatement (Third) of Foreign Relations Law provides:

> (2) If disclosure of information located outside the United States is prohibited by a law, regulation, or order of a court or other authority of the state in which the information or prospective witness is located, or of the state of which a prospective witness is a national,
>
> (a) a court or agency in the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available;
>
> (b) a court or agency should not ordinarily impose sanctions of contempt, dismissal, or default on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort in accordance with paragraph (a);
>
> (c) *a court or agency may, in appropriate cases, make findings of fact adverse to a party that has failed to comply with the order for production, even if that party has made a good faith effort to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.*

Restatement (Third) of Foreign Relations Law § 442 (1987)(emphasis added).

In warning ZHP that its reliance on the laws of the People's Republic of China as a shield to U.S. discovery needed a "tempering of realism," Doc. No. 1825 at 30), Judge Kugler expressly warned ZHP of the sanctions recommended under the Restatement (Third) of Foreign Relations Law § 442(2) and Rule 37. (Doc. No. 1825 at 31-32). Specifically, Juge Kugler, relying upon in *In Re Activision Blizzard, Inc.*,

486 A.3d 531, 552 (De. Ch. Ct. 2014), cautioned ZHP that it was within the Court's authority under Rule 37 to make "'findings of fact adverse to a party that has failed to comply'" with a court order requiring discovery pursuant to Rule 37 despite the foreign party's reliance on foreign blocking statutes. *Id*. at 19. *Id*. at 31, n. 46. Considering the circumstances of this case and the Restatement's reference to a prospective witness, it is appropriate here to direct a permissive adverse inference as to the information that Mr. Chen's deposition would have revealed.

Ordering a permissive adverse inference, rather than directing that certain facts be taken as established as permitted under Rule 37, appears appropriate. An adverse inference as to the information that Mr. Chen's deposition testimony would have revealed cures to some extent the prejudice suffered by Plaintiffs as a result of Mr. Chen's failure to be deposed, while also deterring other parties from believing that a failure to abide by a U.S. court order for a deposition is permissible. Further, ordering an adverse inference rather than directing the facts that would have been disclosed in Mr. Chen's deposition to be established, as the Court may order pursuant to Rule 37(b)(2), is an exercise of judicial discretion tailored to the circumstances of ZHP's noncompliance.[3]

---

[3] Rule 37(b)(2)(A)(i) provides that a court may sanction a party for its failure to abide by discovery orders by "directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."

The considerations raised by ZHP, specifically that any adverse inference instruction must be carefully drafted to both avoid what would amount to a default judgment in Plaintiffs' favor and have a material connection to the discovery that is missing, are informative (Doc. No. 2738-1 at 33). However, the below permissive adverse inference satisfies these concerns because it is permissive and logically tied to the discovery that Plaintiffs are missing.  Here, circumstantial evidence supports that the discovery that Plaintiffs are missing (*i.e.*, the deposition testimony of Mr. Chen, the native file and metadata regarding the July 27, 2017 email, and the native files and any drafts of the internal Irbesartan Report regarding the investigation), support that ZHP likely knew of the contamination before its ultimate disclosure in 2018.[4]  It is undisputed that Mr. Chen, as President of ZHP, is the company's highest level executive and had direct involvement with ZHP's response to the discovery of the NDMA contamination of ZHP's valsartan.  The fact that the missing discovery correlates to a time when the investigation was at its height is circumstantial evidence that the missing materials are relevant to a determination of when the contamination was uncovered and ZHP's subsequent actions. As the CEO of ZHP,

---

[4] Additionally, the Court in prior opinions, based on the parties' submissions, has expressly recognized that Mr. Chen was "closely involved in ZHP operations and in the decision-making to change the API solvent(s)" (Doc. No. 1475 at 2) and the importance of the outstanding metadata and materials to this matter (Doc. No. 1753).

Mr. Chen's testimony would also provide information regarding ZHP's knowledge of the contamination and any actions taken by ZHP regarding the contamination.

The purposes of an adverse inference instruction are to sanction the party that violated discovery orders, deter future misconduct, and restore the affected party to the likely position it would have been in had its adversary observed its discovery obligations. See *Mosaid Techs. Inc. v. Samsung Elecs. Co*., 224 F.R.D. 595, 600 (D.N.J. 2004). Taking into account the various purposes of an adverse inference instruction and ZHP's conduct in this case, the following adverse inference instruction appears appropriate:

<u>Baohua Chen</u>

Baohua Chen, the President of ZHP, did not appear for a deposition ordered by this Court. Plaintiff has argued that Mr. Chen had direct involvement with issues central to this case. Plaintiffs contend that Mr. Chen had substantial involvement and authority with respect to ZHP's response to the disclosure of the contamination of ZHP's Valsartan and its subsequent recall from the market.

If you find that defendants could have produced Mr. Chen for his deposition and that Mr. Chen's testimony would have been relevant in deciding disputed facts in this case, you are permitted, but not required, to infer that the Mr. Chen's deposition testimony would have been unfavorable to defendants. Specifically, you are permitted to infer that Mr. Chen's deposition testimony would have included information about ZHP's knowledge of the nitrosamine contamination of ZHP's Valsartan that information would have been unfavorable to ZHP.

In deciding whether to draw this inference, you may consider whether the testimony Mr. Chen would have provided would merely have duplicated other evidence already before you. Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

06/27/2024 SL1 2176129v2 114548.00002

Withheld Documents

ZHP failed to produce relevant documents that it was ordered to produce in this case.  Specifically, ZHP was ordered to produce the native form of the July 27, 2017 email written by Jinsheng Lin. The July 27, 2017 email references ZHP's discussion of a problem presented by the finding of another nitrosamine impurity in Irbesartan, a similar drug manufactured by ZHP with a process similar to the process used to manufacture Valsartan.  Additionally, ZHP was ordered to produce all drafts of an internal Irbesartan Report addressing ZHP's investigation into the nitrosamine impurity found in Irbesartan referenced in the July 27, 2017 email.  ZHP produced a single draft of this report but did not produce the report in its native, primary electronic form with its metadata.  The native form of these documents and their included metadata would have provided Plaintiffs information about when the document was written, when it was sent, who it was forwarded to and when, and other relevant information.

Plaintiff has argued that these documents were in ZHP's control and would have proven facts relevant to the issues in this case.

If you find that ZHP could have produced these documents and their metadata, and that the evidence was within their control, and that the documents and metadata would have been relevant in deciding disputed facts in this case, you are permitted, but not required, to infer that the evidence would have been unfavorable to ZHP.

In deciding whether to draw this inference, you may consider whether these documents would merely have duplicated other evidence already before you. Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

These instructions satisfy the criteria for a sanction that is not specifically enumerated in Rule 37(b)(2)(A) because the instructions are both just and have a sufficient nexus to the missing discovery. As permissive adverse inferences, ZHP will have the opportunity to present evidence that is available to all parties that may rebut these inferences, thus negating due

process concerns. Additionally, the inferences are sufficiently tied to the missing discovery materials in that the inferences seek to address the prejudice Plaintiffs face by being unable to rely on any information that the missing materials would have revealed regarding ZHP's knowledge and actions regarding the contamination.

### B. Attorneys' Fees and Costs

Pursuant to Fed. R. Civ. P. 37, if a party fails to obey a discovery order, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." See Fed. R. Civ. P. 37(b)(2)(C). The Court is thus "specifically authorized" to award attorney's fees and costs for an unjustified failure to comply with discovery orders. *See Poulis v. State Farm Fire and Cas. Co*., 747 F.2d 863, 869 (3d Cir. 1984). To demonstrate that noncompliance was substantially justified, a party must demonstrate "justification to a degree that would satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Kinney v. Trustees of Princeton Univ*., 2007 WL 700874, at *5 (D.N.J. March 1, 2007) (further citations omitted).

It would be unreasonable to find that ZHP's noncompliance with this Court's discovery orders was substantially justified despite a warning from the Court that

ZHP risked sanctions if it continued to fail to comply with discovery orders. Notwithstanding ZHP's contentions that it was prevented from complying with discovery orders in this case due to specific laws of the People's Republic of China, Judge Kugler specifically warned ZHP that its noncompliance with discovery orders risked "serious consequences" which arose "from the clearly enumerated authority under Rule 37." (Doc. No. 1825 at 30.)  In light of this warning, which specifically rejected ZHP's reliance on the laws of the People's Republic of China as a shield to discovery in U.S. litigation, ZHP's continued failure to abide by the Court's orders requires that it pay the considerable costs incurred by Plaintiffs in attempting to compel compliance.  In this regard, it bears reiterating that there remain unexplained failures to account for the fact that the July 27, 2017 email of Jinsheng Lia had a number of addresses but was not included in the custodial files of Jinsheng Lin and all but one of the numerous addressees.  Nor has ZHP provided a credible explanation for its failure to produce in native format the Irbesartan Report or any drafts of that report.  These are crucially important documents and ZHP's failure to provide a credible explanation for its inability to produce them precludes a finding that ZHP's discovery failures are "substantially justified."  Accordingly, Plaintiffs are entitled to an award of the attorneys' fees and costs incurred by Plaintiffs.

14

Regarding the amount of attorneys' fees and expenses to be awarded to Plaintiffs, reasonableness must guide a review of Plaintiffs' requested award. *See e.g.*, *Mosaid Techs. Inc.*, 224 F.R.D. at 596 (citing *Washington v. Philadelphia County Court*, 89 F.3d 1031, 1035 (3d Cir. 1996)).  A reasonable attorneys' fee award will begin with a calculation of the number of hours expended multiplied by a reasonable hourly rate.  *Id*.  In reviewing a request for attorneys' fees, the Court must be sensitive to hours that are excessive, redundant, or unnecessary as well as the overstaffing of a matter.  *Id*.  A determination of whether an hourly fee is reasonable requires a comparison to the prevailing market rates in the surrounding community.  *Id*.  After the Court has settled on a reasonable number of hours and rates, the Court then calculates the lodestar by multiplying these numbers together.  *Id*.  The party contesting the award then bears the burden to challenge the unreasonableness of the lodestar.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Plaintiffs request an award of attorneys' fees of $309,130.00 and an award of expenses of $41, 399.20. (Doc. No. 2731-1 at 20).[5] Plaintiffs' submission regarding the individual rates of attorneys and the number of hours spent in seeking ZHP's

---

[5] ZHP, while purporting to "reserve" its objections to the reasonableness of Plaintiffs' requests until Judge Bumb reviews SMO No. 98, (Doc. No. 2737 at 13), has not otherwise contested the reasonableness of Plaintiffs' requested counsel fees and expenses.

15

compliance reflect that Plaintiffs' requested award is reasonable. Plaintiffs' attorneys' fees submission demonstrates that Plaintiffs' attorneys utilized a coordinated and measured approach to seeking ZHP's compliance. See Ex. 1 to Slater Certification (Doc. No. 2731-2). For certain entries, Plaintiffs note that the hours billed were reduced so as to prevent redundant billing. *Id*. Given the complexity of the issues presented, the hours expended on tasks such as researching and drafting motions and briefs appear reasonable. *Id*. Additionally, the rates of Plaintiffs' attorneys appear commensurate with the rates of attorneys in the surrounding legal market specializing in substantial products liability litigation. Subject to subsequent determinations by Judge Bumb which may affect the determination of Plaintiffs' requested award, Plaintiffs will be awarded the entirety of the amount of attorneys' fees and costs requested.

C. **Monetary Penalty**

After analysis of ZHP's conduct within this matter and the range of available sanctions under Rule 37, SMO No. 98 provides that "a substantial monetary penalty is warranted." (Doc. No. 2712 at 38). SMO No. 98 then ordered Plaintiffs to propose a monetary penalty that was appropriate under the circumstances. (*Id*. at 40).

Plaintiffs proposed a monetary penalty that would sanction ZHP in the amount of at least $1,000 per day for the period of ZHP's noncompliance, which Plaintiffs

16

represent as extending from December 15, 202, the deadline for Mr. Chen to appear for his court-ordered deposition, through the date when ZHP paid the monetary penalty. (Doc. No. 2731-1 at 16).  Plaintiffs contend that the daily amount should be at least $1,000 but, relying on ZHP's prior representation during oral argument that a daily sanction of $50,000 would be appropriate, contend that an award of up to $50,000 is warranted.  (*Id*. at 12)  Plaintiffs argue that ZHP is estopped from challenging a monetary penalty now when ZHP previously asserted that a monetary penalty would be a more appropriate sanction than a default judgment. (*Id*. at 16).[6]

In response, ZHP contends that the Court may not award a monetary sanction for ZHP's noncompliance because a per-day sanction amounts to a criminal sanction that would first require a jury finding of criminal contempt. (Doc. No. 2737 at 5). ZHP also contends that a per-day sanction would punish ZHP for the delay associated with ruling on Plaintiffs' Rule 37 motion. (*Id*.)

The doctrine of judicial estoppel is intended to protect the integrity of the judicial process by preventing a party "'from deliberately changing positions

---

[6] Plaintiffs accurately recount that ZHP previously represented that a monetary sanction would be appropriate.  *See* ZHP's Brief in Opposition to Plaintiffs' Motion for Rule 37 Sanctions (Doc. No. 1900 at 29) ("[I]n numerous cases involving sanctions for noncompliance due to foreign law, courts have found monetary penalties, where the conduct in question warranted sanctions, sufficient to address compliance issues.") *See* September 8, 2022 Transcript at 49:8-23 ("[W]hile we strongly disagree that any sanctions are warranted, at best, monetary sanctions, and certainly not the type that Mr. Slater is requesting. . . .")

according to the exigencies of the moment.'" *New Hampshire v. Maine*, 532 U.S. at 750 (citing *U.S. v. McCaskey*, 9 F.3d 368 (5th Cir. 1993)).  The Supreme Court has noted that several factors determine whether the doctrine should apply in a specific case.  *Id.*  One factor is whether "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'"  *Id.* (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)).  If the party did not succeed in persuading the court as to its prior position, the party's subsequent inconsistent position does not pose a risk of inconsistent judicial opinions.  *Id.*  To successfully assert a position in a prior proceeding, the party must persuade the court to accept the party's first position. *Edwards*, 690 F.2d at 599.

Here, to the extent that ZHP advocated for a monetary sanction as an alternative to Plaintiffs' requested relief, it is clear that ZHP did not succeed.  In its brief in opposition to Plaintiffs' motion for sanctions, ZHP represented that monetary sanctions are an appropriate, lesser sanction to the sanctions requested by Plaintiffs.  (Doc. No. 1900 at 34).  ZHP thus appears to have previously asserted that monetary penalties would be a sufficient sanction in the alternative to other forms of sanctions available to the Court.  *Id.*  As SMO 98 orders an adverse inference instruction, it is evident that ZHP failed to succeed in persuading the Court that it

should award only a monetary penalty to address ZHP's failure to comply with prior discovery orders.  Accordingly, a factor in the application of judicial estoppel to ZHP's current position has not been demonstrated, and it is not clear that ZHP is estopped from objecting to an award of a monetary penalty.

Because a monetary award could not be used to compel ZHP to comply with discovery orders and would not be compensatory, imposition of a financial penalty, although attractive given the apparent significance of the missing information, is not appropriate absent a finding of criminal contempt.  *See International Union, United Mine Workers v. Bagwell,* 512 U.S. 821 (1994).  As explained in *Harris v. City of Philadelphia*, 47 F.3d 1311, 1328 (3d Cir. 1995), "[i]f the contemnor cannot purge through an affirmative act, the sanction has no coercive effect and exceeds the appropriate bounds of civil contempt."  Section 442(2)(b) also discourages contempt sanctions when the violation of a court order is caused by the law of the foreign state in which the information or witness is located.  "Absent contempt, the only monetary sanctions Rule 37 authorizes are 'reasonable expenses' resulting from the failure to comply with discovery."  *Martin v. Brown*, 63 F.3d 1252, 1263 (3d Cir. 1995).

## CONCLUSION

By sanctioning ZHP for its failure to provide discovery materials despite multiple Court Orders requiring their disclosure, this Order seeks to restore the parties to the position the parties would have reached if ZHP had satisfied its

discovery obligations. These sanctions will also act as a deterrent to other foreign litigants who believe they are able to rely on foreign law as a means to avoid U.S. based discovery obligations. The permissive adverse inference as to the missing discovery materials cures, at least to some extent, the prejudice Plaintiffs faced by being unable to utilize all discovery materials they were entitled to in this matter while also permitting ZHP to rely on evidence accessible to both parties to defend itself. Finally, the award of attorneys' fees and costs to Plaintiffs compensates Plaintiffs for their extensive and protracted efforts to obtain ZHP's compliance with this Court's discovery orders.

## NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     The jury shall be instructed as follows:

Deposition of Baohua Chen

Baohua Chen, the President of ZHP, did not appear for a deposition ordered by this Court. Plaintiff has argued that Mr. Chen had direct involvement with issues central to this case. Plaintiffs contend that Mr. Chen had substantial involvement and authority with respect to ZHP's response to the disclosure of the contamination of ZHP's Valsartan and its subsequent recall from the market.

If you find that defendants could have produced Mr. Chen for his deposition and that Mr. Chen's testimony would have been relevant in deciding disputed facts in this case, you are permitted, but not required, to infer that the Mr. Chen's deposition testimony would have been unfavorable to defendants. Specifically, you are permitted to infer that Mr. Chen's deposition testimony would have included information about ZHP's knowledge of the nitrosamine contamination of ZHP's Valsartan that information would have been unfavorable to ZHP.

20

In deciding whether to draw this inference, you may consider whether the testimony Mr. Chen would have provided would merely have duplicated other evidence already before you. Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

<u>Missing Documents</u>

ZHP failed to produce relevant documents that it was ordered to produce in this case.  Specifically, ZHP was ordered to produce the native form of the July 27, 2017 email written by Jinsheng Lin. The July 27, 2017 email references ZHP's discussion of a problem presented by the finding of another nitrosamine impurity in Irbesartan, a similar drug manufactured by ZHP with a process similar to the process used to manufacture Valsartan.  Additionally, ZHP was ordered to produce all drafts of an internal Irbesartan Report addressing ZHP's investigation into the nitrosamine impurity found in Irbesartan referenced in the July 27, 2017 email.  ZHP produced a final version of this report but did not produce the report in its native, primary electronic form with its metadata.  The native form of these documents and their included metadata would have provided Plaintiffs information about when the document was written, when it was sent and forwarded to and when, and other relevant information.

Plaintiff has argued that these documents were in ZHP's control and would have proven facts relevant to the issues in this case.

If you find that ZHP could have produced these documents and their metadata, and that the evidence was within their control, and that the documents and metadata would have been relevant in deciding disputed facts in this case, you are permitted, but not required, to infer that the evidence would have been unfavorable to ZHP.

In deciding whether to draw this inference, you may consider whether these documents would merely have duplicated other evidence already before you. Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

21

2. ZHP shall pay Plaintiffs $309,130 for attorneys' fees and $41,399.20 for expenses incurred in seeking ZHP's compliance with its discovery obligations. Payment shall be made within thirty (30) days of this Order becoming final.

3. ZHP will not be required to pay an additional monetary sanction for its failure to abide by this Court's prior discovery orders.

*s/ Thomas I. Vanaskie*
Hon. Thomas I. Vanaskie (Ret.)
Special Master
