### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*All Actions* | No. 1:19-md-2875<br><br>Honorable Renée Marie Bumb<br>Special Master Thomas I. Vanaskie |

### PLAINTIFFS' BRIEF IN SUPPORT OF
### THEIR OBJECTIONS TO AND MOTION TO REVERSE OR MODIFY
### SPECIAL MASTER ORDER 100 IN PART

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT .................................................................................................. 4

I.  THE COURT SHOULD CHARGE THE JURY WITH ADVERSE
    FINDINGS OF FACT AS DIRECTED IN SMO 98 .................................. 4

II. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE
    PERMISSIVE ADVERSE INFERENCE CHARGE IN SPECIAL
    MASTER ORDER 100 .............................................................................. 11

III. ZHP WAIVED ANY ARGUMENT AGAINST THE ATTORNEY
     FEES, WHICH ARE ALSO REASONABLE ............................................ 15

CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Aikens v. Shalala*,
    956 F. Supp. 14 (D.D.C. 1997).................................................................. 16

*Amersham Biosciences v. PerkinElmer, Inc.*,
    No. CV 03-4901 (JLL), 2005 WL 8179738 (D.N.J. Apr. 14, 2005).......... 16

*Arconic Inc. v. Universal Alloy Corp.*,
    No. 1:15-CV-01466, 2020 WL 10486178 (N.D. Ga. Mar. 30, 2020)........ 15

*Beira v. Comm'r of Soc. Sec.*,
    No. 612CV147ORL18DCI, 2021 WL 275905 (M.D. Fla. Jan. 4, 2021),
    *report and recommendation adopted*, No. 6:12-CV-147-GKSDCI,
    2021 WL 268643 (M.D. Fla. Jan. 27, 2021) ............................................. 24

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................... 21

*Brazile v. Comm'r of Soc. Sec.*,
    No. C18-5914JLR, 2022 WL 503779 (W.D. Wash. Feb. 18, 2022).......... 24

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan*,
    183 F.R.D. 135 (D.N.J. 1998) ................................................................... 16

*Horizon Glob. Americas Inc. v. Curt Mfg., LLC*,
    No. 17-11879, 2020 WL 1303212 (E.D. Mich. Mar. 18, 2020) ............... 16

*In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*,
    No. 19-md-02913 (Dec. 18, 2023) ............................................................ 23

*Koch Materials Co. v. Shore Slurry Seal, Inc.*,
    216 F.R.D. 301 (D.N.J. 2003) ................................................................... 16

*In re LTL Management LLC*,
    No. 21-bk-30589 (D.N.J. Bankr. March 1, 2023) ..................................... 23

*In re LTL Management LLC*,
    No. 21-bk-30589 (D.N.J. Bankr. May 4, 2022) ........................................ 24

*Mali v. Fed. Ins. Co.*,
    720 F.3d 387 (2d Cir. 2013) ........................................................ 10

*Peterson v. Comm'r of Soc. Sec.*,
    No. 616CV948ORL40GJK,
    2018 WL 3650034 (M.D. Fla. June 19, 2018) ........................................... 24

*In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prod. Litig.*,
    No. MC 21-1230, 2024 WL 1810190, (W.D. Pa. Apr. 25, 2024).............. 22

*In re Refco Inc. Sec. Litig.*,
    No. 07 MDL 1902, 2013 WL 2526661 (S.D.N.Y. June 6, 2013) .............. 16

*Reich v. Hercules, Inc.*,
    857 F. Supp. 367 (D.N.J. 1994)..................................................... 16

*Rode v. Dellarciprete*,
    892 F.2d 1177 (3d Cir.1990) ....................................................... 20

*Student Pub. Interest Research Grp., Inc. v. AT & T Bell Labs.*,
    842 F.2d 1436 (3d Cir.1988) ....................................................... 21

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    No. 13-MD-2445, 2024 WL 815503 (E.D. Pa. Feb. 27, 2024).................. 22

*Timothy M. v. Comm'r Soc. Sec. Admin.*,
    No. 6:21-CV-01708-AR, 2023 WL 1071604 (D. Or. Jan. 27, 2023) ........ 24

*In re Valsartan, Losartan, and Irbesartan Products Liab. Litig.*,
    No. MDL 2875, 2021 WL 6010575 (D.N.J. Dec. 20, 2021) ..............*passim*

*In re Vioxx Prod. Liab. Litig.*,
    760 F. Supp. 2d 640 (E.D. La. 2010) ....................................... 20,21

*Wachtel v. Health Net, Inc.*,
    No. CIV 01-4183, 2007 WL 1791553 (D.N.J. June 19, 2007) ...........*passim*

*Washington v. Philadelphia County Court of Common Pleas*,
    89 F.3d 1031 (3d Cir. 1996) .................................................. 20,21

**Rules**

Federal Rule of Civil Procedure 26 .................................................................... 10

Federal Rule of Civil Procedure 44.1 ................................................................. 10

Federal Rule of Civil Procedure 37 ...............................................................*passim*

## **PRELIMINARY STATEMENT**

Special Master Order 98 ("SMO 98") correctly found that the appropriate sanctions for ZHP's years-long pattern of discovery violations, replete with gamesmanship and outright refusal and obstruction, included adverse findings of fact to be charged to the jury at trial. This sanction was correctly found to be necessitated to match the degree and duration of ZHP's misconduct, which is ongoing. "ZHP has not been forthcoming in this discovery process. …ZHP has not taken all reasonable steps to comply with the Court's orders or to openly participate in this litigation." (SMO 98, at 25). In addition to the inability to depose Baohua Chen, the Special Master pointed out the ongoing "unexplained failures," including the failure by ZHP to offer a "credible explanation" for its claimed "inability" to produce "crucially important documents." (SMO 100, at 14).[1]  In sum, "Due to these discovery failings, there are important information gaps dealing with when ZHP first learned of the contamination and whether it concealed its knowledge."  (SMO 100, at 3).

Despite this, in SMO 100, the Special Master modified the sanction to provide the jury with the option to draw an adverse inference (but including confusing language suggesting that the jury will assess and make factual findings as to whether

_____

[1] To the extent ZHP again argues that it did not violate its discovery obligations or that its conduct has not been egregious, those arguments should be rejected, and ZHP's continued refusal to acknowledge the severity of its misconduct should be taken into account in imposing the sanctions here.

the long-standing discovery violations were improper, which is not workable). This change was not warranted, as the adverse findings of fact were proper, and it would be unfairly prejudicial to require the Plaintiffs to litigate these material gaps at trial as if the Court did not already conclusively rule that the gaps existed and prejudiced Plaintiffs based on extensive briefing and argument over the course of years.

The modification to the sanction was apparently based on the mistaken crediting of the concern raised by ZHP that the adverse findings of fact directed in SMO 98 could be considered the equivalent of the entry of a default judgment. (SMO 100, at 10). However, that decision was made without reference by ZHP or the Special Master to the elements of any of the claims in the upcoming trial against ZHP (and others), or future cases, or any analysis of how the adverse findings could equate to a default.

The findings discussed in SMO 98, and dutifully set forth in Plaintiffs' proposed findings of fact, would not amount to entry of a default judgment on any of the claims. Among other things, Defendants continue to deny that the contamination created an "unacceptable carcinogenic risk" or that the contamination impacted the value of the contaminated pills in the context of economic loss claims, or that the contamination was significant enough to establish general causation in the context of personal injury claims. Defendants also retain all of their legal defenses, including the arguments they have characterized as so strong that Plaintiffs cannot prevail as a matter of law.

Notwithstanding, in case the Court determines that SMO 98 went too far, Plaintiffs have taken into account the issues noted by the Special Master in SMO 100 and have revised the Special Master's proposed adverse inference instruction to reinsert the foundational findings as to the discovery violations, and clarify the permissive inference the jury may make.  The result is an instruction that addresses the discovery violations, while addressing the Special Master's concern that the sanction not amount to a default—in accordance with ZHP's own argument: "The Special Master went far beyond simply endorsing an instruction that the jury could assume that Mr. Chen's testimony - or any unproduced documents…would be adverse to ZHP." (ECF 2738-1, at 30).

Accordingly, in the event the Court will not charge the jury with the Plaintiffs' proposed adverse findings of fact submitted pursuant to SMO 98, the Court should adopt Plaintiffs' proposed modified adverse inference instruction, which harmonizes the Special Master's findings in SMO 98 with the concerns and modifications set forth in SMO 100.  Most important, the instruction should make clear that ZHP violated its discovery obligations, and that the jury can infer that this occurred because ZHP knew that the discovery would have been adverse to ZHP—without inviting or requiring a mini-trial to re-examine the Court's findings during the course of discovery, and without instructing the jury to find that there was a "cover up," which removes the basis for the argument that the instruction is equivalent to a default or too prejudicial.

3

Finally, SMO 100 properly granted Plaintiffs' unopposed request for attorney fees and costs in accordance with SMO 98. In this connection, ZHP waived its right to object by unilaterally determining that it could wait to object to the sanctions at a time of its choosing despite the clear dictates of SMO 98.

**ARGUMENT**

**I.**

**THE COURT SHOULD CHARGE THE JURY WITH ADVERSE FINDINGS OF FACT AS DIRECTED IN SMO 98**

SMO 98 correctly held that "[b]y resting on the laws of the PRC that benefit ZHP by preventing discovery, ZHP has acted in bad faith by not making all reasonable efforts to find a solution that allowed compliance with this Court's orders." (SMO 98, at 32). In fact, the Special Master spotlighted ZHP's "skillful" manipulation of deadlines and choice to try to hide behind Chinese blocking statutes (including delaying a production deadline while waiting for the Chinese Data Security law to be implemented, then refusing production), and inadequate production of documents thereafter ("[T]hese documents do not contain the breadth of information Plaintiffs are due") and **outright violation of the Special Master's instructions directing ZHP to clearly inform the Chinese government of the purpose and importance of the visa application**. (*Id.* at 19-21, 23-24).

SMO 98 followed this Court's prior decision outlining the propriety of "*making 'findings of fact adverse to a party that has failed to comply with the order*

4

for production, **even if that party has made a good faith effort** to secure permission from the foreign authorities to make the information available and that effort has been unsuccessful.*" In re Valsartan, Losartan, and Irbesartan Products Liab. Litig.*, No. MDL 2875 (RBK), 2021 WL 6010575, at *18-19 (D.N.J. Dec. 20, 2021) (bold added). Specifically, the Court held: "Regarding Mr. Chen's deposition, ZHP will be precluded from relying on any testimony or fact that Mr. Chen's deposition would have demonstrated. There will be an adverse inference regarding ZHP's knowledge of the contamination and efforts to prevent the disclosure of this contamination." (SMO 98, at 38). SMO 98 was clear that this sanction was necessary to "correct the prejudice Plaintiffs have experienced because of their inability to rely on the nondisclosed information in forming their case." (*Id.* at 34). Moreover, SMO 98 found that such adverse findings of fact were a "lesser sanction" than the one Plaintiffs requested, namely "dismissing ZHP's Answers and Defenses." (*Id.*).

In accordance with SMO 98, Plaintiffs submitted proposed adverse findings of fact, with supporting citations to the Special Master's decision:

> The Court has made the following findings of fact with regard to ZHP that you are required to accept as true in evaluating the evidence and reaching your verdict:
>
> 1.    Baohua Chen is the CEO and the highest-level executive in ZHP. (SMO 98, at 1-2).
>
> 2.    Baohua Chen had direct involvement with issues central to this case. (SMO 98, at 3).

5

3.     Baohua Chen's involvement and authority with respect to the development, manufacture, sale, and recall of ZHP's Valsartan was substantial, and it is likely that Mr. Chen has personal, unique firsthand knowledge regarding the matters at issue in this case. (SMO 98, at 3).

4.     During the course of discovery in this case, when the Parties were required to produce documents and conduct the depositions of witnesses, the Court ordered ZHP to produce Baohua Chen for his deposition by the Plaintiffs. ZHP violated the Court Order requiring ZHP to produce Mr. Chen for his deposition, and Mr. Chen was not produced for his deposition. This deprived the Plaintiffs of their right to take the deposition of Mr. Chen. (SMO 98, at 2-4, 10-13, 19-21, 25-26, 30, 32).

5.     During the course of discovery in this case, ZHP was also required by Court Orders to produce relevant documents, and failed to fully comply with those Court Orders. In addition to the failure to produce certain documents at all, documents that were produced were not produced in the required form. For example, ZHP was required by Court Orders to produce the July 27, 2017 email written by Jinsheng Lin, in its native form. The July 27, 2017 email references ZHP's knowledge that its Valsartan was contaminated with NDMA, in discussing the problems presented by the finding of another nitrosamine impurity in Irbesartan, a similar drug substance manufactured by ZHP with a similar process as used to manufacture Valsartan. The native form of the document is the primary electronic form of the document, including the metadata for the document, which is information embedded in an electronic document. The metadata would have included information about when the document was written, who it was sent and forwarded to and when, and other relevant information. Instead, ZHP only produced a copy of the July 27, 2017 email in PDF form, without the metadata for the document. This deprived the Plaintiffs of their right to be provided the July 27, 2017 email in its primary electronic form with its metadata, so that the Plaintiffs could fully investigate and

6

understand the email. In addition, despite the email being sent to numerous key personnel at ZHP, it was not produced in the custodial file for the author of the email, Jinsheng Lin, and was only produced in the custodial file of one of the numerous recipients of the email, Min Li. In addition, ZHP created an internal Irbesartan Report addressing ZHP's investigation into the nitrosamine impurity found in Irbesartan referenced in the July 27, 2017 email. ZHP failed to produce all drafts of the Irbesartan Report, as required, and the single draft produced was not produced in its native, primary electronic form with its metadata. This deprived the Plaintiffs of their right to fully understand and investigate the report and ZHP's internal investigation and decision making with regard to nitrosamine impurities in its sartan drug substances, including Valsartan. (SMO 98, at 4-10, 21-26, 32-33, 36-37).

6.      The Court has determined that Baohua Chen's deposition testimony and the documents ZHP failed to produce as required would have provided information that would have been adverse to ZHP, and would have favored the Plaintiffs. (SMO 98, at 33-34, 36-39).

7.      The Court has determined that ZHP, at Baohua Chen's direction, covered up and prevented the disclosure of ZHP's actual knowledge of the nitrosamine contamination of ZHP's Valsartan from at least July 27, 2017 until ZHP's customer Novartis discovered the contamination and informed ZHP of its discovery in June, 2018. ZHP then disclosed the contamination. (SMO 98, at 36-39)

> 8.    The Court has determined that ZHP violated its Court ordered legal obligations to produce Baohua Chen for his deposition and produce documents as required because ZHP and Mr. Chen knew of the nitrosamine contamination of ZHP's Valsartan at least as of July 27, 2017, and at Mr. Chen's direction covered up and prevented disclosure of the nitrosamine contamination until ZHP's customer Novartis discovered the contamination and informed ZHP of its discovery in June, 2018. ZHP then disclosed the contamination. (SMO 98, at 36-39).

(ECF 2721-1).

This instruction is faithful to the instructions in SMO 98, and the record in this case.  To be clear, ZHP's own translation of the July 27, 2017 email and the testimony of ZHP 30(b)(6) witness Min Li, who was Jinsheng Lin's boss and a recipient of the email, conclusively establish the meaning of the email. (ZHP 296 (Plaintiffs' translation), Ex. 37; Ex. 53 (ZHP's Translation); Min Li 4/20/2021 Dep. 82:11-12, 87:19-88:7, 88:13-89:18, Ex. 48 (discussing ZHP-295, Ex. 54)).[2] The Special Master recognized this, stating the "email dated July 27, 2017 … revealed ZHP's knowledge of the nitrosamine contamination." (SMO 100, at 3).

SMO 100 did not address Plaintiffs' proposed instruction directly. Instead, the Special Master drafted a permissive inference instruction, apparently concerned that directing the findings of fact could amount to a default judgment.  However, this was not based on an analysis of the elements of any of the claims at issue, likely because

---

[2] These exhibits are attached to the Adam M. Slater's Certification in Opposition to ZHP's objections and motion to vacate SMO 98. (ECF 2750).

ZHP had not done that analysis, including in its brief objecting to SMO 98.  (ECF 2738-1).  The fact that the adverse findings of fact would be helpful to Plaintiffs' position is not a reason to weaken the sanction—that is the purpose of the sanction.

SMO 100 went too far in revising the ruling and weakening and unnecessarily complicating the instruction to be given to the jury, and incorrectly found that the permissive adverse inference instruction would "restore the affected party to the likely position it would have been in had its adversary observed its discovery obligations." (SMO 100, at 11).  SMO 100's permissive adverse inference charge would not put Plaintiffs in the same position as if ZHP had produced Baohua Chen for his deposition and produced the native versions of the July 27, 2017 email and the related irbesartan report with all its drafts, and allowed Plaintiffs to have the information to which they were entitled. SMO 100 actually puts Plaintiffs in the same or worse position than they would have been had the Court never ordered the deposition of Mr. Chen or the native documents with all their drafts, or made the findings regarding ZHP's systemic discovery violations, if Plaintiffs need to prove the discovery violations and their import at trial.

Moreover, as written, SMO 100 would require Plaintiffs to litigate these issues in the form of an unnecessary mini-trial without the benefit of the deposition and documents Plaintiffs were entitled to.  This despite the Court having conclusively found that the Defendants violated their obligations—without that finding no sanctions could have been imposed to begin with, so those findings cannot be

effectively reversed by a jury. This would be especially prejudicial because Plaintiffs have a limited time to present their case to a jury, the instruction as written would undoubtedly create a mini-trial and distract the jury, and it would be quite unworkable to litigate the discovery misconduct at trial.[3]

The instruction also runs contrary to the law that the non-producing party has the burden of proving a foreign law prevented the discovery at issue, which is a legal question the Court has already decided in the negative. SMO 100 seems to impose on Plaintiffs the burden of proving that Chinese law did not prevent ZHP from producing Baohua Chen for his deposition, when the law is clear that ZHP bears the burden of establishing a foreign law prevented the deposition. **Most important, the Court already found that ZHP did not act in good faith and violated the Court's explicit directions on this issue, and failed to meet its burden**. *Valsartan*, 2021 WL 6010575, at *10-11 (noting that "The party invoking a foreign … restriction has the burden not only to assert the basis for its objections under Rule 26(b)(5)(A), but must prove in accordance with Rule 44.1 that the foreign law applies to the discovery sought, and conflicts with U.S. law," and "Rule 44.1 states: …. **The court's determination must be treated as a ruling on a question of law.**" (emphasis

---

[3] *See Mali v. Fed. Ins. Co.*, 720 F.3d 387, 393 (2d Cir. 2013) (holding that a permissive adverse inference charge "is not a sanction. It is no more than an explanation of the jury's fact-finding powers.").

10

added)). This issue has been determined by the Court and should not be revisited any further, including on this application or at trial.

The Court should therefore affirm SMO 98, vacate SMO 100 to the extent it overruled SMO 98's adverse findings of fact, and adopt Plaintiffs' requested adverse findings of fact.

## II.

### IN THE ALTERNATIVE,
### THE COURT SHOULD MODIFY THE PERMISSIVE ADVERSE
### <u>INFERENCE CHARGE IN SPECIAL MASTER ORDER 100</u>

In the event the Court determines that a different instruction is required, Plaintiffs submit the following alternative proposed adverse inference instruction taking into account the guidance from SMO 100.  This instruction utilizes the proposed instruction in SMO 100, which is edited to ensure consistency with the findings already made by the Court and Special Master, removes the need for an unworkable and unnecessary mini-trial on ZHP's discovery conduct, and omits references to a finding of a "cover up" to avoid any argument that the instruction goes too far.

First, as the Court can see below, the edits remove references to what the Plaintiffs "argued" or "contend" since the Special Master and Court (in denying ZHP's appeal from the Order compelling the deposition of Mr. Chen) made these factual findings as a prerequisite to sanctioning ZHP in the first place—the jury cannot be given the opportunity to disagree with the Court on those findings.

11

The findings encompassed herein made by the Court include: (1) Baohua Chen is the CEO and the highest-level executive in ZHP (SMO 98, at 1-2), (2) Baohua Chen had direct involvement with issues central to this case (SMO 98, at 3), and (3) Baohua Chen's involvement and authority with respect to the development, manufacture, sale, and recall of ZHP's Valsartan was substantial, and it is likely that Mr. Chen has personal, unique firsthand knowledge regarding the matters at issue in this case (SMO 98, at 3).   As found by the Special Master in SMO 100, "[i]t is undisputed that Mr. Chen, as President of ZHP, is the company's highest level executive and had direct involvement with ZHP's response to the discovery of the NDMA contamination of ZHP's valsartan … was closely involved in ZHP operations and in the decision-making to change the API solvent(s)."  (SMO 100, at 10).

These are the foundational findings by the Court through months and years of contested motions, supporting the imposition of the adverse inference instruction, along with the findings by the Court that ZHP violated its discovery obligations to the extreme prejudice of Plaintiffs.  These findings cannot be collaterally attacked at this stage.   In other words, the findings leading to the decision to impose the sanctions, which are focused on ZHP's gross misconduct during discovery, and Mr. Chen's role in the company, have been determined by the Court, and there is no basis to re-submit those issues to a jury.

Plaintiffs' alternative proposed instruction:

12

Deposition of Baohua Chen

Baohua Chen, the President of ZHP, did not appear for a deposition ordered by this Court. This deprived the Plaintiffs of their right to obtain the sworn deposition of Mr. Chen that they were entitled to pursuant to the law. Mr. Chen had direct involvement with issues central to this case. Mr. Chen had substantial involvement and authority with respect to ZHP's Valsartan development, manufacturing, marketing, quality assurance, ZHP's response to the disclosure of the contamination of ZHP's Valsartan, and its subsequent recall from the market.

You are permitted, but not required, to infer that Mr. Chen's deposition testimony would have been unfavorable to ZHP. Specifically, you are permitted to infer that Mr. Chen's deposition testimony would have included information about ZHP's knowledge of the nitrosamine contamination of ZHP's Valsartan that would have been unfavorable to ZHP.

Again, any inference you decide to draw should be based on all the facts and circumstances of this case.

Missing Documents

ZHP failed to produce relevant documents that it was ordered to produce in this case. Specifically, ZHP was ordered to produce the native form of the July 27, 2017 email written by Jinsheng Lin. The July 27, 2017 email references ZHP's discussion of a problem presented by the finding of another nitrosamine impurity in Irbesartan, a similar drug manufactured by ZHP with a process similar to the process used to manufacture Valsartan, and states that this nitrosamine impurity appeared to be similar to the NDMA found in ZHP's Valsartan, and correctly states the root cause of the contamination with the impurity was the quenching with sodium nitrite. Additionally, ZHP was ordered to produce all drafts of an internal Irbesartan Report addressing ZHP's investigation into the nitrosamine impurity found in Irbesartan referenced in the

13

July 27, 2017 email. ZHP produced a version of this report but did not produce the report in its native, primary electronic form with its metadata. The native form of these documents and their included metadata would have provided Plaintiffs information about when the document was written, when it was sent and forwarded to and when, and other relevant information.

These documents were in ZHP's control and would have proven facts relevant to the issues in this case.

You are permitted, but not required, to infer that the evidence would have been unfavorable to ZHP.

Again, any adverse inference you decide to draw should be based on all the facts and circumstances of this case.[4]

Plaintiffs submit that this instruction cannot be reasonably objected to, as it communicates the findings already made by the Court regarding the foundational facts and discovery violations that created the need for the sanctions, the instruction is permissive and streamlined to be in line with what ZHP argued for, and the reference to a finding of a cover up has been removed, thus avoiding any risk that the instruction could be construed as equating to a default or too drastic.  The finding of ZHP's state of mind is left to the jury.

---

[4] Plaintiffs also changed "defendants" to ZHP.

14

## III.

## ZHP HAS WAIVED ANY ARGUMENT AGAINST
## THE ATTORNEY FEES, WHICH ARE ALSO REASONABLE

SMO 98 ordered ZHP to compensate Plaintiffs for their attorney fees and costs related to the discovery violations at discussed above. (SMO 98, at 39). Plaintiffs submitted their request in accordance with SMO 98. (ECF 2731). After the Special Master rejected its request to postpone the issue until after its motion to reverse SMO 98, ZHP did not object to the reasonableness of Plaintiffs' requested attorney fees and costs before the Special Master, but instead unilaterally "reserved" its rights to object later, without asking the Court for permission to do so. (ECF 2726; ECF 2730; ECF 2737, at 9-11). SMO 100 granted Plaintiffs' request in full, finding "the hours expended on tasks such as researching and drafting motions and briefs appear reasonable" and "the rates of Plaintiffs' attorneys appear commensurate with the rates of attorneys in the surrounding legal market specializing in substantial products liability litigation." (SMO 100, at 16). ZHP's failure to challenge these findings below is a waiver since that was the time to raise the objection—ZHP cannot unilaterally alter the briefing schedule to suit its whims. *See, e.g.*, *Arconic Inc. v. Universal Alloy Corp.*, No. 1:15-CV-01466-ELR, 2020 WL 10486178, at *4 (N.D. Ga. Mar. 30, 2020) (holding **"those arguments were not raised before the Special Master and the Court need not consider them now,"** noting that **"the rules governing review of a Special Master's determination are analogous to those**

15

**which guide federal district courts sitting in an appellate capacity of rulings by magistrates,"** and collecting cases refusing to consider arguments not raised before a magistrate because "'allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose' of the magistrate-judge system, 'effectively nullify the magistrate judge's consideration of the matter[,] and would not help to relieve the workload of the district court.'" (emphasis added)); *Horizon Glob. Americas Inc. v. Curt Mfg., LLC*, No. 17-11879, 2020 WL 1303212, at *3 (E.D. Mich. Mar. 18, 2020) (same**);** *In re Refco Inc. Sec. Litig.*, No. 07 MDL 1902 JSR, 2013 WL 2526661, at *4 (S.D.N.Y. June 6, 2013) (same); *Amersham Biosciences v. PerkinElmer, Inc.*, No. CV 03-4901 (JLL), 2005 WL 8179738, at *2 (D.N.J. Apr. 14, 2005) (collecting cases, and denying consideration of such arguments as waived); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 216 F.R.D. 301, 306 (D.N.J. 2003); *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 135, 142 (D.N.J. 1998); *Aikens v. Shalala*, 956 F. Supp. 14, 23 (D.D.C. 1997); *Reich v. Hercules, Inc.*, 857 F. Supp. 367, 369 (D.N.J. 1994) (**"Although this Court must review the Report and Recommendation de novo, Hercules is not entitled as of right to present arguments to this Court which were not seasonably presented to the Magistrate"** (emphasis added)).

Nevertheless, out of an abundance of caution, Plaintiffs summarize their submission "associated with its efforts to obtain ZHP's compliance, including its

motions to compel, the instant motion for sanctions, and its preparation of proposed findings of fact consistent with this Order." (SMO 98, at 39). The identified time and expenses are itemized in the accompanying Certification of Adam M. Slater in Support of Plaintiffs' Request for Attorneys' Fees and Costs and Monetary Sanction Pursuant to SMO 98 ("Slater Certification") (ECF 2731-2).

In accordance with the detailed factual analysis set forth in SMO 98, Plaintiffs determined that the following filings and hearings were "associated with [Plaintiffs'] efforts to obtain ZHP's compliance, including its motions to compel, the instant motion for sanctions, and its preparation of proposed findings of fact." This list illustrates the extent of the legal work that was necessitated by ZHP's long-standing lack of compliance, which the Court noted, stating "the sanctions recognize the substantial duration of ZHP's non-compliance, which has now lasted for more than three years" (SMO 98, at 38):

- ECF 685 – December 21, 2020 Letter from Adam M. Slater Regarding the December 22, 2020 Case Management Conference Regarding Baohua Chen's Deposition

- ECF 694 – Transcript of Proceedings held on December 22, 2020, before Judge Robert B. Kugler and Joel Schneider Regarding Deposition of Baohua Chen

- ECF 1189 – April 27, 2021 Letter from Adam M. Slater Regarding the April 28, 2021 Case Management Conference

- ECF 1220 – Transcript of Proceedings held on May 3, 2021, before Special Master the Honorable Thomas I. Vanaskie Regarding Baohua Chen's Custodial File and Deposition

- [ECF 1243](#) – Transcript of Proceedings held on May 12, 2021, before Special Master the Honorable Thomas I. Vanaskie Regarding Maggie Kong's Custodial File[5]

- [ECF 1250](#) – May 17, 2021 Letter from Adam M. Slater in Reply to ZHP's Opposition to Plaintiffs' Request for Production of Baohua Chen's Custodial File

- [ECF 1293](#) – June 3, 2021 Notice by All Plaintiffs Regarding 1158 Notice (Other) to Take Videotaped Oral Deposition of Baohua Chen (First Amended)

- [ECF 1298](#) – Brief in Opposition filed by All Plaintiffs Regarding 1247 Motion for Protective Order Precluding the Deposition of ZHP President Baohua Chen, filed June 6, 2021

- [ECF 1299](#) – Transcript of Proceedings held on June 3. 2021, before Special Master the Honorable Thomas I. Vanaskie Regarding Baohua Chen's Custodial File and Deposition

- [ECF 1326](#) – Transcript of Proceedings held on June 16, 2021, before Special Master the Honorable Thomas I. Vanaskie Regarding Baohua Chen's and Maggie Kong's Custodial Files

- [ECF 1405](#) – Motion to Compel ZHP's Supplemental Production by All Plaintiffs, filed July 23, 2021

- [ECF 1453](#) – Brief in Opposition filed by All Plaintiffs Regarding 1386 Motion to Vacate, filed August 2, 2021

- [ECF 1504](#) – Transcript of Proceedings held on August 25, 2021, before Judge Robert B. Kugler and Special Master the Honorable Thomas I. Vanaskie Regarding Supplemental Production

- [ECF 1573](#) – Transcript of Proceedings held on September 10, 2021, before Special Master the Honorable Thomas I. Vanaskie Regarding Maggie Kong's Custodial File

---

[5] Plaintiffs note that ZHP did not produce any part of Maggie Kong's custodial file until after the filing of Plaintiffs' Rule 37 motion and continued producing documents from her file even after oral argument of the motion. Attorney fees and costs for Plaintiffs' unnecessary efforts to force ZHP's compliance with the Court's repeated orders for her custodial file are therefore justified.

- ECF 1674 – October 26, 2021 Letter from Adam M. Slater Regarding the October 27, 2021 Case Management Conference Regarding Baohua Chen's Deposition

- ECF 1765 – November 21, 2021 Letter from A. Slater on behalf of Plaintiffs Regarding November 24, 2021 CMC Regarding Baohua Chen's deposition and Maggie Kong's Custodial File

- ECF 1828 – Transcript of Proceedings held on 12/1/2021, before Judge Robert B. Kugler and Special Master the Honorable Thomas I. Vanaskie re Supplemental Production

- ECF 1838 – Motion for Sanctions under Rule 37 Against ZHP by All Plaintiffs, filed December 30, 2021

- ECF 1921 – Reply Brief to Opposition to Motion filed by All Plaintiffs Regarding 1838 Motion for Sanctions under Rule 37 Against ZHP, filed February 18, 2022

- ECF 1953 - Letter from Adam M. Slater Opposing ZHP's Motion to File a Sur-Reply Concerning Rule 37 Sanctions, filed March 2, 2022

- ECF 2177 – October 22, 2022 Letter from Adam M. Slater Regarding 2175 Letter Regarding deLisle Report

- ECF 2182 – Transcript of Oral Argument held on September 8, 2022, before Special Master the Honorable Thomas I. Vanaskie Regarding Sanctions

- ECF 2721 – May 17, 2024 Letter from Adam M. Slater Enclosing Plaintiffs' Proposed Findings of Fact Regarding 2712 Order on Motion for Sanctions

Plaintiffs are not seeking attorney fees and costs for the appeals of SMO 98 and 100.

Plaintiffs have only submitted attorney time that was focused on the particular activities and issues catalogued in SMO 98, and was necessary to perform in each instance. *See* Slater Certification. Plaintiffs' submission also includes the Special Master's fees paid for by Plaintiffs, related to overseeing and adjudicating Plaintiffs' repeated efforts to compel ZHP's compliance with its discovery obligations, specific

19

to the issues identified in SMO 98.  Those fees were properly awarded as they are certainly "associated with [Plaintiffs'] efforts to obtain ZHP's compliance."  *See* Slater Certification.

Defendant failed to challenge the time spent or the rates submitted, or the expenses.  Precision in the submission is not required.  "A fee petition should include 'some fairly definite information as to the hours devoted to various general activities, e.g. pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e .g., senior partners, junior partners, and associates,' but 'it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Wachtel v. Health Net, Inc.*, No. CIV 01-4183, 2007 WL 1791553, at *2 (D.N.J. June 19, 2007) (quoting *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037-1038 (3d Cir. 1996) (citing *Rode v. Dellarciprete,* 892 F.2d 1177, 1190 (3d Cir.1990))).  Plaintiffs easily meet this standard and would meet a test requiring precision, as they utilized the applicable entries for all time submitted, and have reasonably allocated the recorded time in the few entries that include time subject and not-subject to the SMO 98 Order, as recognized in SMO 100, at 16.

This case is a consolidated MDL involving attorneys from all over the country, including some of the most prominent defense law firms in the world. As a result, "a more national rate is the appropriate pole star to guide" this Court in

20

determining a reasonable hourly rate to apply to the submitted time. *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640, 660 (E.D. La. 2010). Based on any measure, the submitted rates are reasonable.  The hourly rates submitted on this application include:[6]

- Adam Slater, Partner, Co-lead:  $1,400.00

- Christopher Geddis, Associate: $650.00

- Cheryll Calderon, Associate: $475.00[7]

"To determine the reasonable hourly rate, the Court should look to the prevailing market rates in the community." *Wachtel*, 2007 WL 1791553, at *2 (citing *Washington*, 89 F.3d at 1035 (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984); *Student Pub. Interest Research Grp., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1448 (3d Cir.1988) ("adopting the community market rule"))). **Importantly, "a more national rate is the appropriate pole star to guide [an MDL] Court."** *In re Vioxx*, 760 F. Supp. 2d at 660. "When attorney's fees are awarded, the current market rate, defined as 'the rate at the time of the fee petition,' must be used."

---

[6] Other Plaintiffs' counsel besides those listed worked on and reviewed the pertinent filings, etc.  But, in an exercise of their discretion and to be conservative, Plaintiffs only include time here for the principal attorneys involved.

[7] Cheryll Calderon left Mazie Slater on or about, July 2021; therefore, her hourly rate at that time has been utilized.  If Ms. Calderon were still with Mazie Slater her hourly rate would be higher and the Plaintiffs' total fees submitted would be higher, but Plaintiffs did not extrapolate.

*Wachtel*, 2007 WL 1791553, at *2. The Special Master correctly found the rates to be reasonable here. (SMO 100, at 15-16).

The submitted rates are within the range recognized as reasonable. For some recent concrete examples, in the recent CPAP class action settlement, the submitted hourly rates ranged from $225.00 to $1,450.00 per hour and were approved by the Court. (Pls.' Br. in Supp. of Their Motion for an Award of Attorneys' Fees, Costs, and Expenses and for Serv. Awards to Settlement Class Reps in *In re Philips Recalled CPAP, Bilevel Pap, & Mechanical Ventilator Prods. Litig.*, p. 34 (Jan. 8, 2024) (Ex. 3)[8]). *In re Philips Recalled CPAP, Bi-Level PAP, & Mech. Ventilator Prod. Litig.*, No. MC 21-1230, 2024 WL 1810190, at *12 (W.D. Pa. Apr. 25, 2024). The Suboxone MDL court approved a $1,550.00 rate for the co-lead counsel there. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *17 (E.D. Pa. Feb. 27, 2024). In another example, in early 2023, ZHP's counsel submitted their hourly rates to the Talc MDL bankruptcy:

- Jessica Davidson, Partner, Defendants' Liaison Counsel: $1,195.00

- Richard Bernardo, Partner: $1,113.00

- Allison Brown, Partner, $1,113.00

- Christopher Cox, Counsel: $967.00

---

[8] All exhibits in this section are attached to the Slater Cert. (ECF 2731-2).

- Jordan Schwartz, Counsel: $898.00

- Nancy Wuamett, Counsel: $898.00

- Kelsey Byler, Associate: $817.00

- Andrew Karp, Associate: $786.00

- Zachary Martin, Associate: $786.00

(Skadden Arps Fee Application in *In re LTL Management LLC*, No. 21-bk-30589 (D.N.J. Bankr. March 1, 2023) (Ex. 4)).  Presumably, these rates have increased since the time of this submission. More recently, In the Juul MDL, the Court approved attorneys' fees where "97% of partner hours, rates range from $275 – $1,200; for over 96.5% of senior counsel hours, rates range from $475 – $1,000; for over 93.5% of associate hours, rates range from $175 – $800; for over 92.5% of contract or staff attorney hours, rates range from $100 – $500; and for over 88% of paralegal hours, rates range from $75 – $425." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 19-md-02913, p. 6 n.6 (Dec. 18, 2023) (Ex. 5). The submitted rates are consistent with the aforesaid examples of decisions addressing the rates in similar MDL litigation.

In fact, there is law that would support even higher rates, though not requested here. For example, in the Talc MDL bankruptcy in the District of New Jersey, the Court approved the following fee ranges:

The current standard hourly rates charged by Hogan Lovells in the United States fall within the following ranges:

| Billing Category | U.S. Range |
| --- | --- |
| Partners | $950–$2,465 |
| Counsel | $910–$1,735 |
| Associates | $605–$1,055 |
| Paralegals | $275–$550 |

Hogan Lovells US LLP's Application for Retention in *In re LTL Management LLC*, No. 21-bk-30589 (D.N.J. Bankr. May 4, 2022) (Ex. 6); Order Granting Hogan Lovells US LLP's Application in *In re LTL Management LLC*, No. 21-bk-30589 (D.N.J. Bankr. June 15, 2022) (Ex. 7). Other courts have similarly approved attorneys' fees in the range of $2,000 an hour. *Brazile v. Comm'r of Soc. Sec.*, No. C18-5914JLR, 2022 WL 503779, at *3 (W.D. Wash. Feb. 18, 2022) (collecting cases); *Timothy M. v. Comm'r Soc. Sec. Admin.*, No. 6:21-CV-01708-AR, 2023 WL 1071604, at *2 (D. Or. Jan. 27, 2023) (same); *Beira v. Comm'r of Soc. Sec.*, No. 612CV147ORL18DCI, 2021 WL 275905, at *3 (M.D. Fla. Jan. 4, 2021), *report and recommendation adopted*, No. 6:12-CV-147-GKSDCI, 2021 WL 268643 (M.D. Fla. Jan. 27, 2021); *Peterson v. Comm'r of Soc. Sec.*, No. 616CV948ORL40GJK, 2018 WL 3650034, at *2 (M.D. Fla. June 19, 2018).

For the above reasons and those set forth in the referenced Slater Certification, Plaintiffs request that the award of attorney's fees and costs be affirmed as ordered by SMO 98 and 100.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court affirm Special Master Order 98, direct the adverse findings of fact submitted by Plaintiffs in response to SMO 98, or in the alternative the adverse inference instruction set forth herein, and affirm the award of attorney fees and expenses pursuant to Special Master Order 100.

Dated: August 2, 2024                Respectfully submitted,

*/s/ Adam Slater*                      */s/ Daniel Nigh*
Adam Slater                          Daniel Nigh
**MAZIE, SLATER, KATZ &**             **NIGH GOLDENBERG RASO &**
**FREEMAN, LLC**                      **VAUGHN, PLLC**
103 Eisenhower Pkwy, 2nd Flr.          14 Ridge Square NW
Roseland, NJ 07068                    Third Floor
Phone: (973) 228-9898                 Washington, D.C. 20016
aslater@mazieslater.com               Phone: (850) 600-8090
                                      dnigh@nighgoldenberg.com


*/s/ Ruben Honi*                       */s/ Conlee S. Whiteley*
Ruben Honik                          Conlee S. Whiteley
**HONIK LLC**                         **KANNER & WHITELEY, LLC**
1515 Market Street, Suite 1100         701 Camp Street
Philadelphia, PA 19102                New Orleans, LA 70130
Phone: (267) 435-1300                 Phone: (504)-524-5777
ruben@honiklaw.com                    c.whiteley@kanner-law.com


*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2024, I electronically filed Plaintiffs' notice of motion and brief in support of their objections to and motion to reverse or modify Special Master Order 100 in part with the Clerk of the Court using CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

**MAZIE SLATER KATZ & FREEMAN, LLC**
Attorneys for Plaintiffs

By: ___/s/ Adam M. Slater_____

Dated: August 2, 2024