# MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ  07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

September 5, 2024

<u>*VIA ECF*</u>

Honorable Renée Marie Bumb
United States District Court
Mitchell H. Cohen Building and
 U.S. Courthouse
Courtroom 3D
4th and Cooper Streets
Camden, New Jersey  0810

Honorable Thomas I. Vanaskie (Ret.)
Special Master
Stevens & Lee
1500 Market St., East Tower,
 Suite 1800
Philadelphia, Pennsylvania 19103

Re: ***In re Valsartan, Losartan, and Irbesartan Liability Litigation***,
**Case No. 1:19-md-02875-RBK (D.N.J.)**

Dear Chief Judge Bumb and Judge Vanaskie:

Please accept this letter on behalf of Plaintiffs in advance of the September 9, 2024 case management conference.

**1.  Trial brief issues to be agreed and/or decided by the Court.**

Plaintiffs have reviewed the trial brief issues, the status of which is as follows:

### 1. Maggie Kong Should Be Precluded From Testifying

Decision needed

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 2

**2. Jinsheng Lin, Ph.D Should Be Precluded From Testifying**

Decision needed

**3. Defendants Should Be Compelled to Produce Requested Financial Information Related to Punitive Damages**

Sent to Judge Vanaskie and pending current meet and confer

**4. The Court Should Preclude Defendants from Calling John Ruiz at Trial and Should Quash any Subsequent Subpoenas Issued by Defendants**

No decision needed, as Defendants withdrew this subpoena.

**5. Plaintiffs Should Be Allowed to Call Greg Cowhey If Necessary**

No decision needed pending decision and/or meet and confer on Issue 3 above.

**6. Plaintiffs Should Be Permitted to Call Witnesses Confirming Defendants' Pre-Suit Notice If Necessary**

Moot, as the Court granted Plaintiffs summary judgment on this issue.

**7. Plaintiffs Should Be Allowed to Call James MacDonald if Necessary to Address Defendants' Hearsay Objections to His Email Exchange with Charles Wang**

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 3

No decision needed, as this was addressed during the MILs.

**8. Retailer Defendants Should Not Be Permitted to Object to Testimony, as They Are Not Parties to the Trial**

Decision needed

**9. Plaintiffs Can Present the Testimony of Jucai Ge, Hai Wang, and Other Witnesses by Video Deposition Designations**

Addressed during MIL arguments, to be further discussed in the context of the trial schedule.

**10. Dr. Hecht and Other Experts Should Not Be Subjected to Unreasonable Questioning on Cross-Examination**

Decision needed

**11. This Trial Does Not Require the Jury to Assess Any "Translating Mechanism"**

Decision needed.

**12. Defendants' Request for Additional MSP Assignment Documents**

Assignment issue to be addressed by Court based on ongoing discussions and narrowing of issue.

**13. Defendants' Request to Present Non-Responsive Answers to Deposition Questions**

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 4

> Sent to Judge Vanaskie in the context of deposition designations
>
> **14. Defendants' Request to Preclude Testimony of Wholesaler and Retailer Witnesses**
>
> Decision needed
>
> **15. Plaintiffs' Rule 37 Motion Regarding Baohua Chen**
>
> Has been decided already

(*See* ECF 2682, 2681). Plaintiffs will be prepared to argue the issues requiring decisions during the CMC.

**2. Confirmation of travel plans and visas for Defendants' proposed witnesses, and status of translators.**

Defendants have notified Plaintiffs of the witnesses they intend to bring live to the trial, but they have not definitively confirmed their availability pending Plaintiffs' decision on how to present their case. For example, ZHP has indicated that most of the witnesses it intends to bring live require travel visas but has not provided confirmation that they have been obtained. Plaintiffs need to plan and prepare for trial and should not be required to wait further for this confirmation.

Additionally, Plaintiffs need confirmation from Defendants that Defendants have secured translators for all of their non-English speaking witnesses, and the

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 5

names and credentials of the translators such that the parties can meet and confer well in advance of trial should there be any objections.

### 3. Trial schedule and planning.

Plaintiffs have significant concerns that the trial schedule discussed at the July 2024 CMC cannot be fairly administered. Plaintiffs are preparing to present cases against three multi-national generic drug manufacturers on multiple claims, and cannot do so in the time currently provided. Based on the analysis of the time it will take to present the witnesses, and the limited time for presentation of the case during the trial day (9-2 each day), and the defense's position that they each need adequate time to put on their defenses, 3.5 weeks simply is not enough time.

The prior estimate of about 4 weeks to try the case was made based on the state of affairs well before the March 2024 trial setting that was adjourned. It was based in large part on the expectation that Plaintiffs would be permitted to present video deposition designations, and was conditioned on the possibility that depending on the outcome of the MILs, more than four weeks could and would likely be needed. Now, with the Court's preference for live testimony in play, and the denial of certain MILs and dispositive motions that would have truncated the trial if granted, and understanding the case at a far more detailed level due to the extensive ongoing

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 6

preparation, it is apparent that more time will be needed. This is very problematic in light of the conflicts of all three lead defense attorneys in early December 2024. Plaintiffs have already prepared for trial once and incurred significant expenses due to the postponement and under no circumstances should the risk of disruption of this trial be increased by the combination of the defense attorneys' conflicts and the tight time frame currently planned for the trial.

In this connection, in an effort to make the trial more streamlined and efficient, Plaintiffs have continued to cut down their proposed deposition designations, taking to heart the Court's statement during the July 2024 CMC that if the videos are not too long, the Court will entertain Plaintiffs' request to be permitted to use the video rather than live testimony. Unfortunately, the Defendants have not been amenable. In fact, ZHP has refused to discuss the cut down designations for witnesses it says it is bringing to Court live, despite the Court's statement that if not too long, they may be permitted. ZHP's attitude towards this issue was demonstrated in its letter dated August 2, 2024, in which ZHP pointed out the witnesses it planned to call live and advised Plaintiffs that the witnesses selected by ZHP were sufficient for Plaintiffs to put in their case—neglecting to include important 30(b)(6) witnesses and the former Vice Chairman of ZHP in the list. (Ex. 1 hereto). The defense clearly sees this issue

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 7

as being an issue of strategic importance, not a matter of efficiency. In fact, it is likely that some or all of the proposed live witnesses will not even be called by the defense if they are required to call the witnesses in the defense case, rather than inserting their questioning into Plaintiffs' case and severely damaging the continuity of Plaintiffs' case.

In summary, the Parties need to know that the trial will start as scheduled, and then continue to verdict, whether that takes 3 or 4 weeks, or longer, depending on the circumstances. One potential solution is to start the trial earlier than currently planned, with all Parties committing to finish the trial regardless of other cases and conflicts (other than what cannot be foreseen or planned for). This is across the board, applicable to all Parties. We look forward to discussing and working through this important issue.

**4. Jury selection process/status of questionnaire.**

The Parties have met and conferred on the jury questionnaire. Plaintiffs have attached a redlined copy showing the disputes and will be prepared to address these issues and the jury selection process more generally during the CMC. (Ex. 2 hereto).

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 8

**5. Trial management issues, including paper or electronic exhibits, sidebars, rooms to work in at the courthouse.**

Plaintiffs look forward to discussing the Court's favored procedures for the conduct of the trial, in order to meet the Court's expectations and conduct an efficient trial.

**6. Status of punitive damages financial disclosures issue.**

The Parties are continuing to meet and confer on punitive damages discovery/information and will provide the Court ordered update tomorrow.

**7. ZHP's request to add new expert.**

The Parties have submitted letters on this request. (ECF 2818, 2820). Plaintiffs will be prepared to discuss this issue during the CMC.

**8. Status of MSP assignment issue.**

As the Court is aware, MSP filed a motion in limine asking the Court to "issue a blanket order precluding [] any other arguments or evidence that would similarly attack MSP, or highlight MSP's status as an assignee." (ECF 2648-1 at 50-52). This was necessary to avoid a distracting sideshow about MSP and its assignments, with the hope of diverting the jury from the actual justiciable issue—Defendants' manufacture and sale of contaminated valsartan medication—and siphoning

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 9

valuable trial time to a non-issue, which also implicates the trial schedule issue discussed above.

At the July 23, 2024 hearing, the Court ruled that "you can talk about who MSP is, but it's not going to be in sort of a character assassination about these types of assignments . . . . We're not going to go there." (July 23, 2024, Hr. Tr. 249:6-13). The Court then told Defendants that they "are going to have to show me why in good faith you can't stipulate to these assignments." (*Id*. 250:8-10). Defendants responded that they couldn't stipulate because "the consideration is absent from the assignments that were produced." (*Id.* 250:14-16). "They've got to provide their consideration. If they can do that, maybe we can reach a stipulation." (*Id.* at 251:6-7).

The Court referred the issue to Judge Vanaskie, the parties submitted two additional rounds of briefing [ECF 2789; 2790; 2800; 2807], Judge Vanaskie held two hearings, and on August 26, 2024, MSP produced unredacted versions of the assignment purchase agreements to defendants. That should have ended the issue or at least narrowed it to the only question at this point—should the jury know the amount of the consideration (not relevant to the claims or dispositive of any issue), and what should the jury be told on this subject, if anything.

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 10

Yet, on September 4, 2024, Defendants informed plaintiffs that as long as MSP can "substantiate" that the lump sum consideration was paid, the only "issue remaining between the parties as to consideration is the admissibility of the amount of consideration at trial." (Ex. 3 hereto). Defendants then broadened the issue, and asserted that they still intended to raise other issues related to the assignments at trial, such as "whether the claims asserted here have been properly assigned to the MSP entity named as plaintiff in this case." *Id*.  According to Defendants, "Emblem and SummaCare claims were assigned to subsidiary MSP Series LLCs and were also subject to certain carve-outs the scope of which are unclear on the face of the assignment documents. It remains the TPP Trial Defendants' position that MSP still needs to prove up how the assignments give the MSP entity named as plaintiff in this case the ability to assert the Emblem and SummaCare claims asserted." *Id*.

In other words, Defendants hope to require a distracting and time-consuming side show trial about the assignments, the amount paid for their consideration, whether the consideration was actually paid, and whether the claims were properly assigned. The Court should grant MSP's motion in limine and exclude that irrelevant and unduly prejudicial argument and focus the trial on the issues actually in dispute,

since the Defendants are unwilling to reach a reasonable stipulation or withdraw this issue.

There is no reason for the jury to be informed as to the amount paid as consideration. It's simply irrelevant; the adequacy of consideration should not ordinarily be questioned:

> **Strictly speaking, the adequacy of a consideration is not a question for judicial determination at all**. That is a thing for the parties to settle. **Upon this point of legal theory the law has never wavered**. "If a person chooses to make an extravagant promise for an inadequate consideration, it is his own affair."

*Affiliated Enterprises v. Waller*, 40 Del. 28, 5 A.2d 257, 260 (Del. Super. Ct. 1939) (citing *Holdsworth*, Hist.Eng. Law, 17; *Sturlyn v. Albany*, Cro.Eliz. 67) (emphasis added).

It is also unduly prejudicial because it will distract the jury from the actual issue (Defendants' manufacture and sale of contaminated valsartan) and may lead the jury to believe that MSP isn't deserving of a recovery because it didn't pay "enough" for the claims.

The same holds true for Defendants' insistence that MSP "prove" that the consideration was actually paid. Of course it was. MSP's corporate representative testified that it was paid. Lopez Dep. Tr. 102:15-19; 116:5-12 [ECF 2800-9]. And

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 12

the assignors have actively participated in this litigation, demonstrating that they received value for the claims that they assigned. *See* ECF 2800 at 10. This is nothing more than an attempt to distract from the actual trial issues. Does the defense want to see the wire transfer documents? What are they looking for?

Finally, Defendants raise the new issue of whether the "claims asserted here have been properly assigned to the MSP entity named as plaintiff in this case." But Judge Kugler already ruled that MSP's status as an assignee "was not contested," and Defendants never moved for reconsideration of that order. (ECF 2657 at 9). Defendants also never challenged whether the claims were properly assigned in their motion to dismiss [ECF. 520-3], in their answers [ECF 2548 at 11-12; 2547 at 41-44; 2549 at 4], in their motions for summary judgment [ECF 2562-1; 2564-1; 2565-1; 2567-1; 2570-1], in their trial brief [ECF 2681], or at the July 23, 2024 hearing, where the Court asked why Defendants' couldn't stipulate to the assignments. This is an afterthought.

The Court should not permit trial by ambush, or permit the trial to be clogged with an issue that is not an issue. Nor should it permit Defendants to make irrelevant and baseless arguments as to MSP's assignments—confusing the issues, distracting the jury, and wasting precious trial time. The new issues that Defendants raise are

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 13

meritless. As the Eleventh Circuit has found, "[n]othing in the record suggests that MSPRC's relationships with its series LLCs preclude MSPRC from asserting those series LLCs' rights." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319–20 (11th Cir. 2020). MSP also maintains lists from its assignors specifying what claims are carved out and not assigned. The Court should grant MSP's motion in limina with respect to the assignments.

**9. Proposed modification of CMO #32 to add express warranty subclass A to trial.**

In light of the Court's March 26, 2024 Summary Judgment Opinion (ECF 2694) finding express warranty "notice" requirements satisfied as a matter of law, Plaintiffs propose modifying CMO 32 to add the Express Warranty Subclass Group "a" states to this bellwether class TPP trial. Based on the applicable substantive laws and the factual issues remaining for the jury, Plaintiffs believe adding Express Warranty Subclass Group "a" to be workable and that this proposed addition will advance the efficient resolution of the litigation. No liability evidence is subject to change. MSP through its two assignors (Emblem and SummaCare) paid for at-issue VCDs in numerous of the jurisdictions comprising Express Warranty subclass "a" and will continue to serve as the class representative at trial for these claims. Also, Plaintiffs do not understand that there will be any prejudice to the defendants

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 14

regarding the presentation of damages. Defendants have long been in possession of Dr. Conti's entire damages analysis for all legal claims, jurisdictions, defendants, and states, and have had multiple opportunities to depose Dr. Conti regarding her damages calculations. In addition, Defendants' damages experts (Dr. Stiroh and Mr. Gibson) are critique-only experts, and thus none of their opinions are subject to any modification. Plaintiffs believe the only material changes will be to jury instructions and verdict forms, which are not due for some time.

**10. Status of MIL Orders.**

The Parties have met and conferred on their respective proposed orders, but they still have significant disagreements on the content of those orders. Plaintiffs have attached redlines of the proposed orders showing the disputes and will be prepared to discuss them during the CMC. Exhibit 4 is the proposed order on Plaintiffs' proposed MILs, with Defendants' counter proposals in red and blue and Plaintiffs' responses in green, unless explicitly differentiated with headings. Exhibit 5 is the proposed order on ZHP's MILs, with Plaintiffs' counter proposals in green. Exhibit 6 is the proposed order on Teva's MILs, with Plaintiffs' counter proposals in blue. Exhibit 7 is the agreed upon order for Torrent's MILs.

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 15

11. **Deposition Designations.**

Plaintiffs request the scheduling of an initial hearing date to present the objections to the designations for 2-3 ZHP witnesses to begin the process, gain the Court's guidance, and hopefully streamline further disputes or remove them altogether.

12. **ZHP sanctions payment.**

Plaintiffs were awarded monetary sanctions against ZHP in the amount of $309,130 in attorneys' fees and $41,399.20 in costs for time spent litigating the Baohua Chen deposition and missing document production issues. Plaintiffs understand that these funds are for reimbursement of common benefit time, not for work on any specific individual plaintiff's case. As such, Plaintiffs intend to present a motion to the Court to designate the awarded fees and expenses as common benefit reimbursement, to be utilized by the Plaintiffs' Executive Committee for the common benefit of all plaintiffs.

13. **Common Benefit Order.**

Plaintiffs will be submitting a motion and proposed common benefit order to set the percentages so that the settlements reached to date, and any future recoveries, will be implemented with the common benefit percentages in place.

Honorable Renée Marie Bumb, U.S.D.J.
Honorable Thomas I. Vanaskie (Ret.)
September 5, 2024
Page 16

**14. Pharmacy testimony regarding selling adulterated products.**

As indicated in Plaintiffs' Trial Brief, the pharmacies have refused to produce their witnesses live at trial, as they are not parties to the trial, and their witnesses live further than 100 miles away. To that end, Plaintiffs have designated extremely short sections of the depositions, which each touch on the issue of whether (1) pharmacies will sell an adulterated product, and (2) whether they would have sold the VCDs had they known the drugs were contaminated. The pharmacy defendants contend that only experts may testify about adulteration, but this argument misses the point. The testimony designated by Plaintiffs does not ask the witnesses to opine on whether the drugs were adulterated. Instead, the testimony merely asks the witnesses to testify to their own contracts and internal policies about selling adulterated products. Surely these fact witnesses, each of which was presented as a 30(b)(6) witness for their respective companies, are qualified to testify to the contents of their companies policies, procedures, and contracts about selling adulterated products.

Respectfully,

ADAM M. SLATER

Cc: All counsel of record (via ECF)