SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2588
DIRECT FAX
(917) 777-2588
EMAIL ADDRESS
Jessica.Davidson@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

September 5, 2024

**VIA ECF**

The Hon. Renée Marie Bumb             Special Master the Hon. Thomas Vanaskie
USDJ, District of New Jersey           Stevens & Lee
Mitchell H. Cohen Building             1500 Market Street, East Tower
& U.S. Courthouse                      18th Floor
4th & Cooper Streets,                  Philadelphia, PA 19103
Camden, NJ 08101

RE: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-2875-RBK-KMW (D.N.J.)

Dear Chief Judge Bumb and Special Master Vanaskie:

Defendants submit this letter to provide the list of agenda items for the Case Management Conference with the Court on September 9, 2024 ("September 9 CMC"). The Court already has extensive briefing on many of these topics. Defendants will be prepared to discuss any and all issues at the Court's convenience.

## I.   LEGAL ISSUES FROM TRIAL BRIEFS STILL IN DISPUTE

The Court's rulings at the July CMC, along with communications between the parties since that time, appear to have resolved many of the issues raised in the parties' respective Trial Briefs. (*See* ECF 2681 and 2682.) The issues included in the Defendants' Trial Brief that the TPP Trial

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 2

Defendants believe remain in dispute and require resolution by the Court are limited to the following:

- Plaintiffs Cannot Prove The Validity Of MSP's Assignments Through Unauthenticated Documents;

- Plaintiffs Should Be Required To Disclose Their Mechanism For "Translating" State Data; and

- Plaintiffs Should Be Precluded From Introducing Testimony Of The Corporate Pharmacy And Wholesaler Witnesses.

The issues included in the Plaintiffs' Trial Brief that Defendants believe remain in dispute and require resolution by the Court are limited to the following:

- Maggie Kong Should Be Precluded from Testifying;

- Jinsheng Lin Should Be Precluded from Testifying;

- Retailer Defendants Should Not Be Permitted to Object to Testimony, as They Are Not Parties to the Trial;

- Dr. Hecht and Other Experts Should Not Be Subjected to Unreasonable Questioning on Cross-Examination;

- This Trial Does Not Require the Jury to Assess Any "Translating Mechanism"; and

- Defendants' Request to Preclude Testimony of Wholesaler and Retailer Witnesses.

Each of these issues has been briefed by the parties in their Trial Briefs. The TPP Trial Defendants will be prepared to address each of these issues—and any others that may be raised by Plaintiffs—at the September 9 CMC.

## II.   CONFIRMATION OF TRAVEL PLANS AND VISAS FOR DEFENDANTS' PROPOSED WITNESSES, AND STATUS OF TRANSLATORS

Plaintiffs added this item to the agenda for the September 9 CMC agenda and indicated that it relates to the TPP Trial Defendants' ability to present certain witnesses live at trial. The TPP Trial Defendants will be prepared to address these issues at the September 9 CMC.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 3

## III.   TRIAL SCHEDULE AND PLANNING

Plaintiffs added this item to the agenda for the September 9 CMC agenda. The TPP Trial
Defendants asked for clarification of the issues that Plaintiffs sought to raise and, in response,
Plaintiffs stated that they have "concerns about the feasibility and timing of the current trial
schedule" but provided no further insight before the deadline for submitting this statement.[1] The
TPP Trial Defendants have asked for a meet and confer to obtain more information about
Plaintiffs' concerns and hope to be prepared to address those issues at the September 9 CMC.

## IV.   JURY SELECTION PROCESS AND STATUS OF QUESTIONNAIRE

As discussed at the last CMC before Your Honor, the parties previously negotiated an
advance jury questionnaire and submitted the draft with a few minimal areas of disagreement to
Judge Kugler. The parties expect to file the draft jury questionnaire on the docket for your
consideration later, as requested, prior to the CMC. The parties will be prepared to discuss any
other jury selection logistics, preferences and procedures the Court wishes to share.

## V.   TRIAL MANAGEMENT ISSUES, INCLUDING PAPER OR ELECTRONIC
## EXHIBITS, SIDEBARS, ROOMS TO WORK IN AT THE COURTHOUSE.

The TPP Trial Defendants will be prepared to address these issues at the September 9 CMC.

## VI.   STATUS OF PUNITIVE DAMAGES FINANCIAL DISCLOSURES ISSUE.

Judge Vanaskie ordered the parties to provide an update regarding the status of the parties'
disputes with respect to punitive damages discovery by September 6, 2014. The TPP Trial
Defendants will submit an update either jointly or separately in accordance with that deadline.

---

[1]     Torrent states that it is ready to proceed with the trial on the schedule the Court has already
set.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 4

**VII.   ZHP REQUEST TO ADD NEW EXPERT.**

As explained in ZHP's August 23, 2024 letter to the Court (ECF 2818), which is incorporated herein, fairness requires that ZHP be given leave to designate an additional expert witness to provide evidence at trial that would inform the jury's decision as to whether to apply the permissive inference adopted in the Court's August 15 Order affirming, in part, SM Order 100.

As courts have recognized, parties subject to a permissible or rebuttable adverse inference are entitled to defend themselves against the application of such an inference "through [the] presentation of evidence, including expert testimony." *Penick v. Harbor Freight Tools, USA, Inc.*, 481 F. Supp. 3d 1286, 1295-96 (S.D. Fla. 2020); *see also Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, No. 20-82102, 2021 WL 3111191, at *14 (S.D. Fla. July 22, 2021) (citing and quoting *Penick*). Here, the Court's sanctions order allows, but does not require, the jury to infer that because ZHP's President, Baohua Chen, did not appear for a deposition in this case, Mr. Chen's "testimony would have been unfavorable to ZHP." (ECF 2810 at 2.) As a result, ZHP seeks leave to designate an expert in Chinese law who can assist the jury in determining whether Mr. Chen's failure to appear for a deposition was motivated by the fact that his testimony would have hurt ZHP's litigation position, or whether it was the result of government restrictions.

**VIII.   THE COURT SHOULD DENY MOTION IN LIMINE 34(F) TO THE EXTENT IT SEEKS TO EXCLUDE ALL MENTION OF THE AMOUNT MSP PAID FOR ITS ASSIGNMENTS.**

The Court reserved Plaintiff's Motion in Limine 34(f) at the July 23, 2024 Case Management Conference, and referred it to the Special Master to "work on resolving" the parties' dispute regarding the authenticity of Plaintiff's assignments. (7/23/2024 Tr. 257:15-16 (ECF 2791).) With the assistance of the Special Master and following additional meet-and-confers

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 5

between the parties, Plaintiff and Defendants have resolved their authenticity dispute with respect

to the assignment documents. Plaintiff MSP Recovery Claims, Series LLC ("MSP" or "Plaintiff")

agreed to produce the assignment documents and related agreements with unredacted

consideration terms subject to the highest level of confidentiality protection under the Protective

Order in this case, and Defendants agreed to stipulate to the authenticity of the unredacted versions

of the assignment documents.

The issue remaining for the Court's resolution under Motion in Limine 34(f) is the question

of how the assignments are to be introduced at trial. It is Plaintiff's view that the jury should not

be informed of the amount MSP's Series LLC affiliates paid to the assignors, EmblemHealth and

SummaCare, in exchange for the assignments. It is Defendants' position that, consistent with this

Court's other *in limine* rulings regarding MSP's status as an assignor, Defendants should be

permitted to "talk about who MSP is," including the existence and amount paid for the

assignments, but may not engage in "character assassination" against MSP based on the

assignments. (7/23/2024 Tr. 249:6-8.) In practical terms, the examination of MSP's representative

witnesses should include a brief discussion of who MSP is, the MSP Series LLC entities that

purchased assignments from EmblemHealth and SummaCare, what claims were purchased, the

amount paid, and the relationship between MSP and the MSP Series LLC assignees, including any

agreement that allows MSP to assert the claims belonging to the Series LLC entities. Such an

examination should take just a few minutes and would be confined to the facts of the assignments

and related agreement and their terms. Consistent with the Court's prior direction, there would be

no editorializing in the nature of "a character assassination about these types of assignments are

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 6

just, you know, awful and why do we . . . as a society do we allow these, and this is a terrible thing." (7/23/2024 Tr. 249:6-12.)

A factual examination regarding who MSP is and how it came to be the Plaintiff in this case, asserting claims on behalf of two MSP Series LLC entities that are not in the case, which were acquired from two health insurer entities (EmblemHealth and SummaCare) that also are not in the case, is necessary for the jury to understand the case and the parties before it. The parties cannot simply pretend that MSP is a Medicare Part D plan or other health insurer. It is not. Nor can the parties pretend that MSP is the entity that acquired the claims directly from EmblemHealth and SummaCare. It is not. Two MSP-affiliated Series LLC entities acquired the claims by assignment, and MSP contends that it is the appropriate entity to assert the claims under one or more of a number of corporate governance agreements that MSP produced by supplemental production on April 9, 2024. The jury will need to be informed of the facts underlying the assignments, their terms, and the relationships between and among the assignors (EmblemHealth and SummaCare), the assignee MSP Series LLC entities, and the MSP entity appearing before them as the named Plaintiff in this case, to adequately understand "who MSP is" and why it is prosecuting these claims.

The amount of the consideration paid for the assignments is an important part of this background and is likely the first and most natural question that will occur to the jurors. The simplest way to address that question is to inform the jury of the amount paid, purely as a recitation of fact, and then move on without editorializing or lingering on the subject. Absent such a factual recitation, the jurors will be left to speculate unhelpfully as to the amount of the consideration and why they were not informed of that amount. A curative instruction telling the jury it need not

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 7

concern itself with the amount paid is more likely to highlight the question in their minds than resolve it. A simple recitation of the facts offers the easiest and most efficient solution to inform the jury of the parties before it without prejudice to either side.

Under these circumstances, the balancing under Fed. R. Evid. 403 is straightforward. The jury's understanding of MSP's relationship to Emblem and SummaCare, how it came to stand in their shoes, and the basis for its assertion of the claims the jury is being asked to decide, are facts plainly probative of the basis for MSP's assertion of its claims and are "of consequence in determining the action." Fed. R. Evid. 401. MSP has not shown that the admission of these relevant facts creates a "danger" of "unfair prejudice," "confusing the issues," or "misleading the jury." Fed. R. Evid. 403. To the extent there ever was any such danger, the Court has already set clear boundaries on how such evidence may be used, preventing any prejudicial uses. (7/23/2024 Tr. 249:6-8.) That ruling prevents Defendants from arguing—though they never intended to argue "that MSP is not worthy of a recovery" because it is "merely . . . an assignee" and any recovery "would go to MSP and not the health plans," or otherwise "try[ing] to smear MSP, or hammer MSP's position as an assignee to improperly influence or mislead the jury." (ECF 2648-1 at 51-52.) Apprising the jury of the facts erases confusion without influencing or misleading the jury regarding MSP's "worthiness" of a recovery.

Not only is evidence of the assignments and their material terms, including consideration, relevant and non-prejudicial; it is also part of MSP's burden of proof. As Defendants have previously briefed before the Special Master (*see* ECF 2807 at 8-10), nearly two dozen court rulings have previously expressed concerns specifically with respect to MSP and its affiliates regarding the confusing nature of its corporate structure and the unclear provenance of its

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 8

assignments.[2] And as one of MSP's own lead authorities on assignee standing has acknowledged,

"Defendants are, of course, *within their right to challenge [p]laintiff's standing at trial, at which*

*point [p]laintiff will be subject to the appropriate standard of proof*." *Rhoads Indus., Inc. v.*

*Shoreline Found., Inc.*, Nos. 15-921 & 17-266, 2022 WL 4021766, at *12 (E.D. Pa. Sept. 2, 2022)

(emphasis added). Based on MSP's production of assignment documents with unredacted

consideration terms, Defendants do not anticipate challenging the sufficiency of the consideration.

But the architecture of MSP's corporate structure and connecting the dots between EmblemHealth

and SummaCare as assignors, the MSP Series LLCs as assignees, and MSP as the Plaintiff in this

case, is a more challenging exercise on the documents alone, and Defendants therefore respectfully

submit it is incumbent upon MSP to present its evidence at trial demonstrating its capacity to assert

the assigned claims on behalf of EmblemHealth and SummaCare. The consideration terms are part

of that picture.

---

[2]    *See, e.g.*, *MSP Recovery Claims, Series LLC v. Phoenix Ins. Co.*, 426 F. Supp. 3d 458, 475 (N.D. Ohio 2019) (dismissing MSP for failure to carry its burden of proof on standing); *MSP Recovery Claims, Series LLC v. Tech. Ins. Co.*, No. 18 Civ. 8036 (AT), 2020 U.S. Dist. LEXIS 5288, at *12 (S.D.N.Y. Jan. 8, 2020) ("This [c]ourt's decision to dismiss the complaint for lack of standing is similarly not singular, as it joins a growing contingent of courts that have dismissed complaints brought by [p]laintiffs due to various standing defects."); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co*., No. 20-CV-2102 (VEC), 2021 U.S. Dist. LEXIS 58343, at *41 (S.D.N.Y. Mar. 26, 2021) ("If this were the first of this type of case that [p]laintiff had filed, the [c]ourt might be inclined to give it another shot at adequately alleging standing. But this is far from [p]laintiff's first rodeo. Plaintiff has brought many of these cases around the country and was, therefore, 'on notice from the outset that the issue of standing would be front and center.'") (citation omitted); *MSP Recovery Claims, Series LLC v. N.Y. Cent. Mut. Fire Ins. Co.*, No. 6:19-CV-00211 (MAD/TWD), 2019 U.S. Dist. LEXIS 151147, at *19-20 (N.D.N.Y. Sept. 5, 2019) ("Plaintiffs' strategy, it appears, is to throw their allegations into as many federal courts as possible and see what sticks.").

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 9

      The need to present these proofs at trial comes as no surprise to MSP. It understood its burden when the parties jointly submitted their Joint Final Pretrial Order ("PTO") to Judge Kugler and Special Master Vanaskie on March 14, 2024.[3] Plaintiff's list of contested facts in the PTO included two paragraphs asserting that two MSP Series LLC entities hold "legal title" to the claims of EmblemHealth and SummaCare "[b]y way of assignment," and a third paragraph asserting MSP's "legal right to bring this lawsuit" on behalf of the two MSP Series LLC entities. (PTO at 32-33 ¶¶ 106-108.) MSP also designated Jorge Lopez as its "corporate representative . . . *expected to testify about the assignments* from EmblemHealth and SummaCare to MSP and its related entities, *any subsequent assignments*, the *scope of the claims that were assigned*, the *related purchase agreements*, and MSP's corporate structure." (*Id.* at 169, 171 (emphasis added).) MSP further listed at least 15 versions of its assignment agreements, purchase agreements, and recovery agreements as trial exhibits. (Pls.' Ex. List at Exs. 4146-53, 4173-74, 4306-07, 4323-25.) And MSP stated in its trial brief that Mr. Lopez "will authenticate the assignments" and "will authenticate those documents at trial." (ECF 2682 at 20-22.) Additionally, as noted above, MSP made a supplemental production of corporate governance documents on April 9, 2024, evidently to tie up MSP's asserted right to pursue the assigned claims on behalf of the affiliated MSP Series LLCs.

      Defendants likewise gave clear notice in the PTO that the validity of the assignments would be contested at trial. Each defendant separately gave notice of its position that MSP lacks standing

---

[3]    The PTO was submitted to the Court and Special Master by email from Plaintiff's counsel, Christopher Geddis, on March 14, 2024, at 5:11 pm, but has not been filed on the Court's docket. Defendants can provide a courtesy copy of the PTO to the Court at its request.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 10

to sue on its assignments, that the assignments are invalid, and that whether MSP has the right to

sue based on its assignments is a contested issue. (*See* PTO at 9-10, 11, 229, 233-34, 238.)

Defendant also designated Mr. Lopez, Christopher Miranda, and multiple other MSP, Emblem,

and SummaCare witnesses to testify regarding, among other topics, "the terms of the putative

assignments" and "the consideration paid for the assignments." (*Id.* at 180-83.) MSP objected to

some of these designations, but ***not*** with respect to Mr. Lopez or Mr. Miranda. (*Id.* at 198-99.)

In fact, the assignments dispute was already years old by the time the parties enshrined it

in the PTO. Defendants have previously summarized the lengthy history of the assignments dispute

in their letters to the Special Master on July 29, 2024 and August 14, 2024. (*See* ECF 2790 at 3-6;

ECF 2807 at 12-13.) Without unnecessarily belaboring the point here, the existence of a dispute

regarding the validity of MSP's assignments and its standing as assignee is reflected and

memorialized in the pleadings, written discovery, notices of depositions, depositions of MSP's

corporate representatives (especially Mr. Lopez), post-deposition correspondence, and class

certification briefing. As the PTO and the long history of this disagreement confirm, the parties

have always understood MSP would have to substantiate its standing to assert the claims assigned

by EmblemHealth and SummaCare at trial.

For these reasons, as well as such additional points as may be argued at the September 9,

2024 Case Management Conference, Defendants respectfully request that the Court deny

Plaintiff's Motion in Limine 34(f) to the extent it seeks to exclude all mention of the amount MSP

or its affiliated MSP Series LLCs paid for the assignments from EmblemHealth and SummaCare.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 11

## IX.     LOSARTAN DISCOVERY ISSUES REGARDING HETERO.

Hetero has completed custodial production on Losartan and is working to source any additional information requested by plaintiffs. Hetero has provided a list of 30(b)(6) witnesses to address each specific topic in the plaintiffs' deposition notice. The parties have met and conferred and are working to schedule 30(b)(6) depositions, the first is set to take place on September 24, 2024. Hetero has proposed additional dates for the remaining depositions in October and is proactively working to schedule these depositions with the plaintiffs. Hetero is committed to completing these depositions before the October 30, 2024, deadline and fully intends to comply with the Court's Order.

## X.     THE COURT SHOULD DENY PLAINTIFF'S REQUEST TO AMEND CMO 32 TO ADD BREACH OF EXPRESS WARRANTY SUBCLASS GROUP A TO THE TPP TRIAL.

Plaintiff proposes to expand the scope of the upcoming TPP Trial less than two months before the commencement of trial by adding an additional express warranty subclass, Breach of Express Warranty Subclass Group a, that would insert a new class representative and the express warranty laws of 25 additional jurisdictions into trial. The Court stated unequivocally in its MDL Text Order of July 11, 2024, that it "has no intention of revisiting Judge Kugler's well-reasoned decision to proceed with the previously-envisioned TPP class trial." (ECF 2771 (text order).) Judge Kugler set the parameters for trial more than eighteen months ago with the entry of Case Management Order ("CMO") 32, stating that a first trial "shall be held between the TPP plaintiff MSP as a TPP class representative, via its two assignors EmblemHealth and SummaCare, and defendants Zhejiang Huahai Pharmaceuticals, Ltd., Teva Pharmaceuticals, and Torrent Pharmaceuticals," for four subclasses: TPP Breach of Express Warranty Subclass Group b, TPP

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 12

Breach of Implied Warranty Subclass Group d, TPP Fraud Subclass Group c, and TPP State

Consumer Protection Laws Subclass Group a. (ECF 2343 at 1-2.) The Court should not revisit that

plan on the eve of trial to add another express warranty subclass, as doing so would be disruptive

of the orderly administration of trial and highly prejudicial to Defendants.

  *First*, MSP, as the current TPP Trial Plaintiff, cannot represent Breach of Express Warranty

Subclass Group a because it is not a member of that subclass. The Court designated MSP as the

class representative for the TPP Trial "via its two assignors EmblemHealth and SummaCare."

(ECF 2343 at 1-2.) Each TPP subclass is defined by reference to the state(s) the class representative

and class members "paid any amount of money in" for a valsartan-containing drug. (*See* ECF

2532-6 at 2.) MSP does not allege and has presented no evidence that EmblemHealth or

SummaCare "paid any amount of money in" any of the 25 jurisdictions in Breach of Express

Warranty Subclass Group a (Alaska, Arizona, California, Colorado, Delaware, District of

Columbia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Maine, Massachusetts, Minnesota,

Missouri, New Jersey, New Mexico, Oklahoma, Pennsylvania, Puerto Rico, South Dakota,

Virginia, Washington, or West Virginia), or that they paid for a valsartan-containing drug

anywhere other than their home states of New York and Ohio.

  A class representative cannot represent the members of a class to which it does not belong.

*See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) ("We have repeatedly held that 'a

class representative must be part of the class and "possess the same interest and suffer the same

injury" as the class members.'") (citations omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564

U.S. 338, 348-49 (2011) (same); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 368 (3d Cir.

2015) (same); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 13

679, 753 (D.N.J. 2021) (same). Thus, where a named plaintiff was "not a member of the class of thirty-one states" he sought to represent, this District held that "he cannot prosecute claims on behalf of those in that class." *Semeran v. BlackBerry Corp.*, No. 15-750, 2016 U.S. Dist. LEXIS 87379, at \*20 (D.N.J. July 6, 2016) (citing *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014) ("Because he is not a member of those subclasses, Berger cannot prosecute claims on their behalf."), *abrogated in other part by Microsoft Corp. v. Baker*, 582 U.S. 23, 35 (2017); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (holding that subclasses must be dismissed because "the fundamental requirement that the representative plaintiff must be a member of the class he represents" was not met)). MSP is not a member of Breach of Express Warranty Subclass Group a because its assignors did not pay any amount of money for valsartan-containing drugs in the states encompassed within that subclass, and thus MSP cannot prosecute claims on behalf of the subclass members.

This is no mere technicality; the division of the TPPs' Breach of Express Warranty subclasses into subgroupings was part and parcel of the Court's manageability finding when it granted class certification over Defendants' vigorous objections that variances in state law precluded Plaintiffs' proposed multi-state groupings. When the Court granted class certification and authorized groupings of multiple states into the certified subclasses over Defendants' objections, it noted that in "certifying a class where various state laws apply to putative class members who each have varying fact scenarios," the Court "should examine whether varying state laws can be grouped by shared elements and applied as a unit *in such a way that the litigation class is manageable*." (ECF 2261 at 21 n.12 (emphasis added) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004)).) To that end, the Court went to great lengths to

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 14

assess each of Plaintiffs' proposed groupings, moving numerous states into and out of groups to meet the Court's assessment of which "varying state laws" could manageably be grouped by shared elements. (*See id*. at 30-35, 43-48, 71-73.) These groupings were further adjusted during the class notice process. (*See* ECF 2532-5, 2532-6, 2532-7.) Plaintiffs' proposal to merge two express warranty subclasses—one of which (the current Subclass Group b) encompasses 22 jurisdictions' laws, and the other of which (Subclass Group a) encompasses 25 jurisdictions' laws—upends the Court's efforts to divide the TPPs' claims into manageable subclasses and places the interests of 25 jurisdictions' class members into the hands of a class representative that is not a member of their subclass. That is impermissible.

*Second*, and related to the preceding point, Plaintiff's proposal would require the addition to trial of another class representative, Maine Automobile Dealers Association, Inc. Insurance Trust ("MADA"), and its counsel. MADA paid for valsartan-containing drugs in one of the Subclass Group a states (Maine). But MADA and MADA's class counsel have had no involvement to date in the TPP Trial. In particular, Plaintiff's damages expert, Dr. Rena Conti, has provided no MADA-specific damages calculation, as she did for EmblemHealth and SummaCare in accordance with the Court's Case Management Order 32-A. (ECF 2368.) And MADA has not produced any subsidy, reimbursement, or rebate data, as MSP was ordered to produce for the TPP Trial in Special Master Order No. 73. (ECF 2249 at 3-4.) To insert MADA and its class counsel into the TPP Trial would require supplemental damages discovery, a supplemental production of subsidy, reimbursement, and rebate data by MADA, and multiple additional depositions with fewer than two months to go before trial. That would disrupt the orderly progression of this matter to trial and would impose significant prejudice upon Defendants.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 15

      **Third**, adding Breach of Express Warranty Subclass Group a to the TPP Trial would require evaluation of the breach of express warranty jury instructions of another 25 jurisdictions on top of the 22 jurisdictions for which Defendants have already submitted proposed jury instructions. As Defendants have argued in their recent bench brief regarding state-specific jury instructions, which Defendants adopt and incorporate herein by reference, the Court's charge to the jury must accurately describe and account for variances in state substantive law. (*See* ECF 2817.) Even if the Court ultimately determines that it need not use the pattern instructions of each individual state, precedent requires that it account for substantive differences in state law and cannot impose a hybrid or composite law that does not accurately capture the substantive elements of individual states. *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 797 (3d Cir. 1992). Here, although the Court primarily focused on the questions of notice and privity in subdividing Breach of Express Warranty Subclass Groups a and b, it also acknowledged other potential state law variations, most notably with respect to reliance, but also with respect to manifestation of defect, statute of limitations, and the acceptance of "zero-value" theories of damages. (*See* ECF 2261-1.) Although the Court did not find these variations sufficient to prevent grouping the states into subclasses, it also ***did not resolve*** the variations at the class certification stage, necessitating the Court's assessment of the state law variations for trial to determine how the jury must be charged to accurately instruct the jury on the substantive elements of each state's law. (*See, e.g.*, *id*. at F-5 (declining to decide reliance and manifestation of defect elements of California law); *id*. at F-6 to F-8 (not disputing differences between Colorado, Delaware, and D.C. law regarding reliance).)

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 16

This point also rebuts Plaintiff's assertion that the Court's summary judgment ruling disposes of the need for separate trials on Subclass Groups a and b, because the Court found in Plaintiffs' favor on the issue of pre-suit notice. The Court certainly never suggested when it granted summary judgment on pre-suit notice more than five months ago that it viewed its ruling as having any effect on its prior subclass groupings. (*See* ECF 2694 at 4-5, 34-39.) Nor did Plaintiff suggest any such interpretation prior to August 13, 2024, when Plaintiff's counsel first gave notice of their intention to seek a modification of CMO 32 to add Subclass Group a to the TPP Trial based on the Court's summary judgment ruling. That view cannot be reconciled with the Court's class certification ruling. There, although the Court identified privity and pre-suit notice as two of the "required elements" differentiating subclasses, it also acknowledged "other elements" of the breach of express warranty claim. (ECF 2261 at 12, 13.) And the Court included discussion of these "other elements" in its chart comparing states' laws. (*See* ECF 2261-1.)

Thus, the mere fact that the Court labeled Subclass Group a as "Privity Not Required; PreSuit Notice Not Required," and Subclass Group b as "Privity Not Required; PreSuit Notice May Be Required" as shorthand descriptors of the two subclasses does not support Plaintiff's assertion that summary judgment on the notice elements erases all other differences of state law between the member states of the two subclasses, or renders a single massive subclass comprised of 47 jurisdictions' express warranty laws manageable—when the comparison chart and precedent clearly points to a lack of manageability given other state law variations. (*See* ECF 2261-1.) *See also, e.g.*, *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455-62 (D.N.J. 1998) (holding state law variations, including as to manifestation of defect, precluded certification of multi-state breach of express warranty class); *Alligood v. Taurus Int'l Mfg., Inc.*, No. CV 306-003, 2009 WL 8387645,

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 17

at *4-9 (S.D. Ga. Mar. 4, 2009) (rejecting nationwide express warranty class because the "variations in state law related to the issues of reliance, manifestation of defect, and notice . . . overwhelm the common issues of fact and law"). At a minimum, the Court would have to undertake a new class certification inquiry under Rule 23 to determine whether certification of a 47-state express warranty subclass is now supportable.

    *Finally*, Plaintiff's counsel suggested in the parties' meet-and-confer on this issue that MSP might also serve as class representative for Subclass Group a, because MSP also holds the claims of other assignors that paid for valsartan-containing drugs in the Subclass Group a states. But such an attempt by MSP to assert claims on behalf of other assignors would directly contradict the express terms of a stipulation MSP entered into with Defendants four years ago to limit discovery into MSP's other assignors. There, MSP expressly stipulated, *inter alia*:

1.   The only claims MSPRC asserts herein are the claims alleged in the Complaint (or otherwise in this litigation) for reimbursement of payments made for SCDs, based on assignments to it from the three At-Issue Assignor MAOs, ConnectiCare, Inc.; EmblemHealth (Group Health, Inc. and Health Insurance Plan of Greater New York); and SummaCare, Inc.; *MSPRC asserts no other claims herein, and specifically asserts no claims based on any other assignment by any other type of TPP besides the At-Issue Assignor MAOs*.

2.   While MSPRC disputes that it has put at issue the claims related to any assignors other than the At-Issue Assignor MAOs, it nevertheless agrees that *this stipulation effectively dismisses without prejudice any claims that it has asserted or could have asserted in this litigation based on assignments by any assignor that is not an At-Issue Assignor MAO*, which includes assignments of claims from: (1) the 26 FDRs [defined First Tier Entities, Downstream Entities, or Related Entities]; (2) the seven other MAO Assignors (specifically, Health First Health Plans, Inc.; Avmed, Inc.; Fallon Community Health Plan, Inc.; Network Health, Inc.; Blue Cross & Blue Shield of Rhode Island; Preferred Medical Plan, Inc.; and Aspire Health Plan); and (3) any other TPP entity.

        * * *

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 18

4.      MSPRC and MADA will exclude from their own, individual and class claims for
damages any amounts alleged to be owed in the form of reimbursement for SCDs
by any FDR, including the 26 FDRs and all other FDRs, but this agreement does
not impair and is without prejudice to MSPRC's or any other proposed TPP class
representatives' ability to move for class certification as to the class definition set
forth above.

5.      MSPRC and MADA, in moving for class certification in this litigation, will not
present or rely on evidence of payments by any FDRs who assigned claims to
MSPRC, or otherwise, or affirmatively and specifically take any position on the
inclusion of FDRs in any class or sub-class. MSPRC and MADA reserve the right
to respond to issues raised by Defendants in opposition to class certification.

6.      ***MSPRC and MADA agree that they will not rely on any data or documents from
any assignor(s) other than the At-Issue Assignor MAOs in moving for class
certification, responding to issues raised by Defendants in opposition to class
certification, or in connection with any other issue in this litigation***.

(ECF 648 at 2-3, entered by Magistrate Judge at ECF 650 (emphasis added).)

If MSP is now seeking to abandon its stipulation to assert claims on behalf of other

assignors that paid for valsartan-containing drugs in other states, there will need to be motion

practice on the propriety of it doing so years after Defendants agreed to limit discovery of MSP

based on the stipulation. Even if MSP is permitted to add the claims of other assignors, it will need

to amend its pleadings to add the claims, as it stipulated to the dismissal of such claims. It will also

need to submit Plaintiffs' Fact Sheets for the additional assignors, produce documents for them,

and produce representatives of the additional assignors for deposition. This cannot possibly be

completed in the less than two months remaining prior to trial.

For these reasons, as well as such additional points as may be argued at the September 9,

2024 Case Management Conference, Defendants respectfully request that the Court deny

Plaintiff's request to amend CMO 32 to add Breach of Express Warranty Subclass Group a to the

TPP Trial.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 19

## XI.   <u>STATUS OF MOTION IN LIMINE ORDERS</u>

The parties are in the process of attempting to reach agreement on proposed orders on the parties' various motions in limine. Defendants request that the Court provide guidance regarding the date by which such proposed orders should be submitted to the Court and the format the parties should use to identify motions as to which the parties have a dispute regarding the Court's ruling.

At the July 23, 2024 CMC, the Court instructed Plaintiffs and the TPP Trial Defendants—ZHP, Teva, and Torrent—to prepare and submit proposed orders on the parties' respective motions in limine based on the oral rulings and guidance provided by the Court at that hearing. Each party has drafted proposed orders on its own motions, shared those proposed orders in an attempt to reach a consensus on the language to be used in the orders, and provided redlines to one another.[4] On August 28, 2024, the parties held a telephonic meet and confer with respect to the proposed order on Plaintiffs' Omnibus Motions in Limine (ECF 2648-1). Based on that meeting, it appeared that the parties would be able to reach consensus on a number of the proposed orders at issue and agreed to revisit their positions with respect to others. The parties have not yet had the opportunity to have a telephonic meet and confer with respect to their varying versions of the proposed orders with respect to Defendants' Omnibus Motions in Limine, ZHP's Motions in Limine or Teva's Motion's in Limine. As a result, the parties do not have final proposed orders to submit to the Court at this time.

It is the TPP Trial Defendants understanding that, although the parties are still in the process of meeting and conferring, Plaintiffs intend to submit the current versions of their proposed

---

[4]       Plaintiffs were sent a proposed order on Torrent's Motions in Limine on August 6, 2024. Plaintiffs never proposed any edits to Torrent's proposed order, so Torrent presumes there are no objections.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 20

orders to the Court in connection with their CMC statement. Accordingly, the TPP Trial

Defendants are attaching their current proposals regarding the content of the proposed orders on

each of the parties' motion in limine filings as Ex. 1. Defendants, however, do not believe that this

issue is yet ripe for the Court's determination given the parties' ongoing discussions in an attempt

to reach compromise.

## XII.    DEPOSITION DESIGNATIONS.

It is the TPP Trial Defendants' understanding that the Court held at the July 23, 2024 CMC

that: (1) Plaintiff will conduct an in-court examination of any defense witness who is available to

testify live at trial, rather than play videotaped deposition designations for those witnesses; and (2)

Plaintiff may play videotaped deposition designations for any witness who is not available to

testify live at trial, subject to Judge Vanaskie's rulings on the objections and counter-designations

made by the TPP Trial Defendants with respect to the designated testimony. (7/23/2024 Tr. 98:2-

11, 105:5-20, 106:16-107:7, 119:25-121:17.)

While the Court noted that it may consider permitting Plaintiff to play limited videotaped

designations for available foreign witnesses if there is *no disagreement* among the parties

regarding the designations (*id.* 119:25-120:3), that will not be the case with respect to many—if

any—of the available foreign witnesses at issue. As explained in detail in the TPP Defendants'

Trial Brief, Plaintiffs' proposed deposition designations are problematic for a host of reasons,

including, but not limited to, the fact that the designations unfairly cut off witness responses to

deposition questions and therefore misrepresent the testimony offered by the witnesses. As the

Court noted at the July 23 CMC, it would take significant time and effort by the Court and the

parties to resolve such challenges with respect to individual deposition designations, and therefore

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 21

it is more efficient for these witnesses to appear live to testify. (7/23/2024 Tr. 93:5-23.) The TPP

Trial Defendants submit that there is no reason to reconsider this ruling and will be prepared to

address this issue in more depth at the September 9 CMC if helpful to the Court.

## XIII.   **ZHP SANCTIONS PAYMENT.**

The Court's August 15, 2024 Order (ECF 2810) affirmed, in part, Special Master Order

No. 100 ("SMO 100") (ECF 2778), including the Special Master's finding that "ZHP shall pay

Plaintiffs $309,130 for attorneys' fees and $41,399.20 for expenses incurred in seeking ZHP's

compliance with its discovery obligations. Payment shall be made within thirty (30) days of this

Order becoming final" (SMO 100 at 22). ZHP has been working to comply with the Court's Order,

including seeking authorization from the Chinese banking authority to permit the transfer of the

fees and costs assessed to Plaintiffs' counsel. On August 30, 2024, counsel for ZHP informed

counsel for Plaintiffs that ZHP's bank required a letter from the party to whom payment was due

pursuant to the Court's Order to send a letter to ZHP identifying the amount to be paid, the

individual or entity to which it should be paid, and the applicable bank routing number for

payment. (*See* Email from N. Rose to A. Slater, Aug. 30, 2024 (Ex. 2).) To facilitate this, ZHP's

counsel provided Plaintiffs' counsel with a draft of such a letter for Plaintiffs to review and edit as

necessary. (*Id.*) ZHP's counsel also informed Plaintiffs' counsel that the bank would require 7 to

10 days to wire the money once the letter from Plaintiffs was received. (*Id.*) Plaintiffs' counsel

responded to that request providing the information sought on September 5, 2024. ZHP anticipates

that it should be able to complete payment by September 14, 2024, but requests that the Court

allow ZHP until September 19, 2024 to make payment given the possibility of a banking delay.

The Honorable Renée Marie Bumb
Special Master the Honorable Thomas Vanaskie
September 5, 2024
Page 22

## XIV.   **COMMON BENEFIT ORDER.**

This issue was added to the September 9 CMC agenda by Plaintiffs. It is the TPP Trial

Defendants' understanding that there is no need for a statement from the TPP Trial Defendants on

this issue.

## XV.   **PLAINTIFFS SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY OF THE CORPORATE PHARMACY AND WHOLESALER WITNESSES.**

Following the July 23 CMC, the parties met and conferred, along with counsel for

Pharmacy and Wholesaler Defendants, regarding the admissibility of videotaped deposition

designation testimony Plaintiff seeks to introduce from a number of corporate witnesses who are

or were employed by Pharmacy and Wholesaler Defendants, which are not parties to the TPP Trial.

Defendants previously moved to exclude the testimony of these witnesses, whether in person or

by video. This issue is fully briefed in the parties' respective Trial Briefs and therefore no

additional briefing on the issue is necessary or appropriate. The TPP Trial Defendants will be

prepared to address the issue at the September 9 CMC.


Respectfully Submitted,

*Jessica Davidson*

Jessica Davidson

cc: All counsel of record (via ECF)