# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Renée Marie Bumb, Chief District Court Judge |
| **This Document Relates to All Actions** | |

## TPP TRIAL DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF REGARDING TRIAL CLAIMS, DAMAGES AND MIL 16

# **TABLE OF CONTENTS**

**Page**

I.  PLAINTIFFS' WARRANTY THEORY IS NOT VIABLE. .........................2

II.  PLAINTIFFS ARE NOT ENTITLED TO A FULL REFUND. ....................3

III.  DR. STIROH'S ALTERNATIVE DRUGS OPINION IS ADMISSIBLE. ........................................................................11

CONCLUSION ................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A&E Adventures, LLC v. Intercard, Inc.*,
    529 F. Supp. 3d 1333 (S.D. Fla. 2021) ..........................................................4

*In re Amla Litigation*,
    320 F. Supp. 3d 578 (S.D.N.Y. 2018) ............................................................6

*In re Avandia Marketing Sales Practices & Products Liability Litigation*,
    588 F. App'x 171 (3d Cir. 2014) ....................................................................2

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
    417 F. Supp. 3d 531 (E.D. Pa. 2019) ......................................................11, 15

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
    No. 13-4663, 2019 WL 4751883 (E.D. Pa. Sept. 30, 2019) ........................10

*Braunm v. Winnebago Industries, Inc.*,
    No. 18-1883, 2019 U.S. Dist. LEXIS 12259 (M.D. Fla. Jan. 25, 2019) .........5

*Caldera v. J.M. Smucker Co.*,
    No. 12-4936, 2014 WL 1477400 (C.D. Cal. Apr. 15, 2014) ..........................6

*In re Celexa & Lexapro Marketing & Sales Practices Litigation*,
    325 F.R.D. 529 (D. Mass. 2017) ..................................................................13

*Chapman v. Tristar Products, Inc.*,
    No. 16-1114, 2017 WL 1433259 (N.D. Ohio Apr. 24, 2017) ...................6, 7

*Corbett v. PharmaCare U.S., Inc.*,
    No. 21-137, 2024 WL 1356220 (S.D. Cal. Mar. 29, 2024) ...................5, 6, 9

*Davis v. Main Street Family Pharmacy, LLC*,
    No. 15-45, 2016 WL 9051172 (N.D. Fla. May 19, 2016) ..............................8

*Debernardis v. IQ Formulations, LLC*,
    942 F.3d 1076 (11th Cir. 2019) ................................................................... 7

*F.T.C. v. Figgie International, Inc.*,
    994 F.2d 595 (9th Cir. 1993) ....................................................................... 9

*In re General Motors LLC Ignition Switch Litigation*,
    407 F. Supp. 3d 212 (S.D.N.Y. 2019) ....................................................... 14

*In re Gerber Products Co. Heavy Metals Baby Food Litigation*,
    No. 21-269, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022) ......................... 8

*Godec v. Bayer Corp.*,
    No. 10-224, 2012 WL 1201013 (N.D. Ohio Apr. 10, 2012) ........................ 4

*Harris v. Pfizer Inc.*,
    586 F. Supp. 3d 231 (S.D.N.Y. 2022) ......................................................... 2

*Heindel v. Pfizer Inc.*,
    381 F. Supp. 2d 364 (D.N.J. 2004) .............................................................. 6

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. 09-1597, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................ 4

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales
    Practices & Liability Litigation*,
    903 F.3d 278 (3d Cir. 2018) ........................................................................ 7

*In re JUUL Labs, Inc., Marketing, Sales Practices & Products Liability
    Litigation*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022) ...................................................... 10

*Makaeff v. Trump University, LLC*,
    309 F.R.D. 631 (S.D. Cal. 2015) ................................................................. 9

*McMonigle v. BlackOxygen Organics USA, Inc.*,
    No. 21-04790, 2022 WL 17908701 (N.D. Ga. Oct. 17, 2022) ..................... 8

*In re Morning Song Bird Food Litigation*,
    320 F.R.D. 540 (S.D. Cal. 2017) ................................................................. 9

*Mulligan v. QVC, Inc.*,
    888 N.E.2d 1190 (Ill. App. Ct. 2008) ........................................................14

*In re Recalled Abbott Infant Formula Products Liability Litigation*,
    97 F.4th 525 (7th Cir. 2024)........................................................................7

*In re Rezulin Products Liability Litigation*,
    210 F.R.D. 61 (S.D.N.Y. 2002)....................................................................4

*Rikos v. Procter & Gamble Co.*,
    799 F.3d 497 (6th Cir. 2015)........................................................................9

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
    20 F. Supp. 3d 305 (E.D.N.Y. 2014) ..........................................................13

*Shahinian v. Kimberly-Clark Corp.*,
    No. 14-8390, 2016 WL 11722907 (C.D. Cal. Nov. 14, 2016) ......................6

*State of New York v. United Parcel Service, Inc.*,
    No. 15-1136, 2016 WL 4735368 (S.D.N.Y. Sept. 10, 2016) ......................14

*Steel Dynamics Columbus, L.L.C. v. Altech Environment USA Corp.*,
    734 F. App'x 234 (5th Cir. 2018)............................................................4, 5

*Steroid Hormone Product Cases*,
    104 Cal. Rptr. 3d 329 (Ct. App. 2010) ......................................................10

*Tsao v. Ferring Pharmaceuticals Inc.*,
    No. 16-01724, 2018 WL 3589082 (S.D. Tex. June 13, 2018) ......................5

*United States v. Gonzalez-Alvarez*,
    277 F.3d 73 (1st Cir. 2002) ..........................................................................8

*United States v. Milstein*,
    401 F.3d 53 (2d Cir. 2005)............................................................................8

*Victorino v. FCA US LLC*,
    326 F.R.D. 282 (S.D. Cal. 2018)..................................................................3

*Walker Ford Sales v. Gaither*,
    578 S.W.2d 23 (Ark. 1979) ......................................................................4, 5

*Weaver v. Champion Petfoods USA Inc.*,
    471 F. Supp. 3d 876 (E.D. Wis. 2020) ........................................................4

*In re Zantac (Ranitidine) Products Liability Litigation*,
    No. 20-2924, 2023 WL 4765409 (S.D. Fla. July 25, 2023) ..........................8

*Zapadinsky v. Blue Diamond Growers*,
    No. 23-231, 2023 WL 5116507 (E.D. Wis. Aug. 7, 2023) ........................3, 8

*Zeiger v. WellPet LLC*,
    526 F. Supp. 3d 652 (N.D. Cal. 2021)..........................................................6

## STATUTE

Tex. Bus. & Com. Code § 2.608 ............................................................................9

## OTHER AUTHORITY

JAMES M. FISCHER, UNDERSTANDING REMEDIES 2 § 7.5 (4th ed. 2021) ................14

This Court asked the parties to submit briefing that addresses: (1) what warranties Defendants allegedly breached; and (2) the proper measure of damages if the jury finds a breach. (*See* 9/9/24 Hr'g Tr. 180:15-181:20, 229:6-21, ECF 2841.) In particular, the Court asked for clarification on whether a damages expert needs to "consider the benefit-of-the-bargain" and "do [a] benefit-risk analysis" (9/17/24 Hr'g Tr. 119:22-120:4) to estimate damages—and whether the answer to that question varies by "jurisdiction[]" (*id.* 130:15). The Court also asked for additional briefing on Plaintiffs' Motion In Limine 16, addressing whether alternative drugs costs are relevant to assessing damages. (9/9/24 Hr'g Tr. 184:14-185:6.)

Despite the length of Plaintiffs' brief and 18-page appendix, they largely fail to answer the Court's questions. As set forth below, while warranty law varies in its particulars from state to state, there is a general recognition that a full refund is only permitted under a benefit-of-the-bargain theory when the product at issue is completely worthless—i.e., unusable for its intended purpose. That standard cannot be satisfied for an effective medication even if it contains unexpected impurities or contaminants. Instead, the proper damages inquiry requires the jury to consider the **value received by the plaintiff**, which includes, in this case, the benefit to third-party payors ("TPPs") of obtaining effective hypertension medications for their members

and not having to incur costs purchasing alternative medications.[1]

# I.    <u>PLAINTIFFS' WARRANTY THEORY IS NOT VIABLE.</u>

Plaintiffs describe the express warranty underlying their claims as: "the labeling-based representations by the [d]efendants that they were selling [Food & Drug Administration ("FDA")] approved, Orange Book A/B rated, USP compliant valsartan that was manufactured in a manner that was compliant with cGMPs and was not adulterated."  (*See* Pls.' Br. at 1, ECF 2844.)  But the FDA-approved label does not constitute a warranty that a prescription drug is free of nitrosamine impurities.  *See Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 242, 244 (S.D.N.Y. 2022) ("the presence of nitrosamines does not provide a basis for a breach of express warranty claim" because it "does not mean that the medication they received was not Chantix, or that it did not contain the active ingredient varenicline"); *see also In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 588 F. App'x 171, 176-77 (3d Cir. 2014) (collecting cases and declining to construe "safe and effective" drug labeling as a warranty "that a drug was free from all harmful side effects").

Plaintiffs recycle excerpts from their summary judgment briefing and Judge Kugler's summary judgment ruling as supposed support for their characterization.

---

[1]    Plaintiffs also address a number of issues the Court did not ask about, including scienter and the propriety of using IQVIA data.  Due to space constraints, Defendants do not respond to Plaintiffs' irrelevant scienter discussion.  Defendants address Plaintiffs' IQVIA cases in Appendix A.

(ECF 2844 at 1-2 & n. 1.)  But that ruling only found an express warranty that Defendants' VCDs "were the equivalent to the RLD," with the jury to decide all other asserted express warranties, including "as to the purity, identity, or any other quality of the VCDs" or the drugs being "USP compliant."  (ECF 2694 at 28-29.)

## II.    PLAINTIFFS ARE NOT ENTITLED TO A FULL REFUND.

The proper measure of damages, assuming liability is proven, is the difference between the amount Plaintiffs paid for the at-issue VCDs and the actual value of those drugs in light of the nitrosamine impurities.  Under that measure of damages, a full refund would only be appropriate if the VCDs had been completely worthless to every class member or returned to defendants.  They were not.

As Plaintiffs recognize, the UCC measure of damages for breach of express warranty is the difference between the value of the goods as represented (i.e., without a nitrosamine impurity that allegedly breached a warranty) and the goods as provided (i.e., with a nitrosamine impurity), also known as benefit-of-the-bargain damages, *see, e.g.*, *Zapadinsky v. Blue Diamond Growers*, No. 23-231, 2023 WL 5116507, at *5-6 (E.D. Wis. Aug. 7, 2023).   The benefit-of-the-bargain measure avoids "overcompensat[ing]" the plaintiff by considering "the value of the goods accepted" and not just the amount paid.  *Victorino v. FCA US LLC*, 326 F.R.D. 282, 304 (S.D. Cal. 2018) (rejecting "a full refund model" under a "benefit of the bargain theory").

Where, as here, a product has some value to the purchaser despite the alleged

breach, courts reject "full purchase price recovery." *Godec v. Bayer Corp.*, No. 10-224, 2012 WL 1201013, at *1 (N.D. Ohio Apr. 10, 2012) (citation omitted) (rejecting full refund in express warranty class action over misleadingly-labeled vitamin); *see also, e.g.*, *A&E Adventures, LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1345, 1354 (S.D. Fla. 2021) (Florida law; plaintiff not entitled to full refund over computer system that was "in some respects[] defective," because it was not "totally worthless"); *Walker Ford Sales v. Gaither*, 578 S.W.2d 23, 26 (Ark. 1979) (Arkansas law; car that worked acceptably under 50 miles per hour was not worthless); *Steel Dynamics Columbus, L.L.C. v. Altech Env't USA Corp.*, 734 F. App'x 234, 236-37 (5th Cir. 2018) (per curiam) (Mississippi law; full refund improper because buyer received "credit for component[]" parts of the product); *Weaver v. Champion Petfoods USA Inc.*, 471 F. Supp. 3d 876, 886-87 (E.D. Wis. 2020) (rejecting full-refund theory in case involving dog food that was allegedly adulterated because it was tainted with a chemical used to euthanize animals; plaintiff received "vast majority of the benefit" of the product because "his dogs ate the food and survived for many years"), *aff'd*, 3 F.4th 927 (7th Cir. 2021).[2]

---

[2]    *See also In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 68-69 (S.D.N.Y. 2002) (presumption that drug was worthless "is not a defensible position" since it "was enormously beneficial to many patients"); *cf. Herrington v. Johnson & Johnson Consumer Cos.*, No. 09-1597, 2010 WL 3448531, at *1, *6 (N.D. Cal. Sept. 1, 2010) (no damages **at all** where plaintiffs purchased products "that [allegedly] contain[ed] probable carcinogens and other unsafe substances" but did not develop

*(cont'd)*

Plaintiffs have the burden of showing the difference between amount paid and value received.  *See, e.g.*, *Steel Dynamics Columbus*, 734 F. App'x at 236 (burden of proving "value of the goods accepted" is on "the buyer seeking damages") (citation omitted).  The proper way to meet that burden is through expert evidence that satisfies the prerequisites of Rule 702 (such as a properly constructed survey). *See, e.g.*, *Corbett v. PharmaCare U.S., Inc.*, No. 21-137, 2024 WL 1356220, at \*25-28 (S.D. Cal. Mar. 29, 2024) (rejecting full-refund theory but accepting proof of classwide damages through a price premium survey methodology).

The upshot of this rule is that warranty law "does not entitle a prevailing plaintiff to the full purchase price of the warranted item (unless the item was valueless)."  *Braunm v. Winnebago Indus., Inc.*, No. 18-1883, 2019 U.S. Dist. LEXIS 12259, at \*2-3 (M.D. Fla. Jan. 25, 2019) (because plaintiff could only recover "diminution in value" and "cost of repairs," full cost of vehicle was improper measure for determining "amount in controversy"); *see, e.g.*, *Tsao v. Ferring Pharms. Inc.*, No. 16-01724, 2018 WL 3589082, at \*2 (S.D. Tex. June 13, 2018) (to recover "the purchase price" "[p]laintiff has to show that the [product] she received has zero value").[3]  Thus, while there are cases in which a full refund is appropriate,

---

cancer or any other disease).

[3]    *See also Walker*, 578 S.W.2d at 26 (because "we cannot say that the car was of no value to the" plaintiffs, factfinder must determine "the actual market value" to determine damages).

they represent "a limited exception to the general rule." *Corbett*, 2024 WL 1356220, at \*25 ("full refund model" improper under Missouri and California warranty and consumer protection law for dietary supplement that was allegedly misbranded under the Food Drug & Cosmetics Act ("FDCA")).[4] This case does not fall within that "limited exception" because the at-issue VCDs effectively controlled blood pressure, as the FDA recognized in advising patients to continue taking their medications post-recall until they could find an appropriate substitute.

Only *one* case cited by Plaintiffs, *Chapman v. Tristar Prods., Inc.*, No. 16-1114, 2017 WL 1433259 (N.D. Ohio Apr. 24, 2017), involved an express warranty claim in one of the express warranty subclass states, but there, the pressure cookers

---

[4]     Cases involving other states' express warranty laws and other causes of action are in accord. *See, e.g.*, *Shahinian v. Kimberly-Clark Corp.*, No. 14-8390, 2016 WL 11722907, at \*15 (C.D. Cal. Nov. 14, 2016) (consumer protection and common law fraud; "full refund damages model" inappropriate for defective surgical gowns because they still "have other valuable attributes," despite plaintiffs' claim that they were "misbranded, adulterated, and/or noncompliant"); *Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 380 (D.N.J. 2004) (Pennsylvania implied warranty; plaintiffs not "entitled to recover *all* of the purchase price" despite alleged risks because they "got the effective arthritis remedy that they bargained for"); *In re Amla Litig.*, 320 F. Supp. 3d 578, 591 (S.D.N.Y. 2018) (rejecting full refund theory; "the allegedly defective nature of the scalp protector alone does not render the entire kit so dangerous as to be worthless"); *Caldera v. J.M. Smucker Co.*, No. 12-4936, 2014 WL 1477400, at \*4 (C.D. Cal. Apr. 15, 2014) (denying class certification; consumer protection and warranty claims; "a full refund would only be appropriate if not a single class member received any benefit from the products"); *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 675 (N.D. Cal. 2021) (full refund not available for pet food with health risks because "pets consumed [the food] and received nutrients from" it).

6

at issue opened while pressurized, leaving the purchasers in possession of goods that were both dangerous and could not function for their intended purposes.  And even there, the court did not pass on the legal merit of a full-refund theory, stating only that determining whether the theory of damages "might win" was unnecessary at the class certification stage.  2017 WL 1433259, at *8 (cited in ECF 2844 at 10). Plaintiffs' other cases are even further afield.

*Motion to Dismiss Cases.*  Two cases, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525 (7th Cir. 2024) and *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084-85 (11th Cir. 2019) (cited in ECF 2844 at 10-11) address Article III standing at the pleading stage, not whether a worthlessness theory suffices under the law of any state, and not the evidence necessary to prove such a theory. *See Debernardis*, 942 F.3d at 1090 (Sutton, J., concurring) ("At summary judgment, each claimant will need evidence to back the point up.  Why was the product worthless to each of them?  How did it deliver less than expected?  Did each of them use the product even after they knew of the labeling deficiency?  The answers to these questions and others will determine whether the case may proceed further and, if so, how.").  *Abbott* found standing *lacking*, holding that the purchase of infant formula later recalled did not suffice to show an injury in fact.  97 F.4th at 532.[5]

---

[5]    Several other cases have held similarly.  *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 290 (3d *(cont'd)*

Another set of cases cited by Plaintiffs (including a prior ruling in this litigation) similarly addresses only whether worthlessness theories can survive a motion to dismiss.  Indeed, in *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, ECF 775 (D.N.J. Jan. 22, 2021) (cited in ECF 2844 at 10), Judge Kugler emphasized through underline that his holding as to Plaintiffs' full-refund model applied only "at the <u>motion to dismiss stage</u>."  *Id.* at 20; *see also Davis v. Main St. Fam. Pharm., LLC*, No. 15-45, 2016 WL 9051172 (N.D. Fla. May 19, 2016) (cited in ECF 2844 at 11) (addressing standing on a motion to dismiss rather than measure of damages); *McMonigle v. BlackOxygen Organics USA, Inc.*, No. 21-04790, 2022 WL 17908701, at *3 (N.D. Ga. Oct. 17, 2022) (cited in ECF 2844 at 11) (default ruling discussing plaintiffs' theory without addressing proper measure of damages).

***Criminal/Statutory Cases.***  Plaintiffs also cite two criminal cases, which found that the entire amount paid for certain adulterated products that were sold in violation of criminal laws could be considered when calculating sentencing guidelines.  *See United States v. Milstein*, 401 F.3d 53 (2d Cir. 2005); *United States*

---

Cir. 2018) (no standing for plaintiff who purchased allegedly carcinogenic Baby Powder but did not develop cancer); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, No. 21-269, 2022 WL 10197651, at *6-10 (E.D. Va. Oct. 17, 2022) (no standing for purchasers of baby food with potentially excessive levels of arsenic and heavy metals); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-2924, 2023 WL 4765409, at *13-14 (S.D. Fla. July 25, 2023) (distinguishing *Debernardis* and finding no standing in case brought by purchasers of NDMA-contaminated drugs); *Zapadinsky*, 2023 WL 5116507, at *5-6.

*v. Gonzalez-Alvarez*, 277 F.3d 73 (1st Cir. 2002) (cited in ECF 2844 at 11); *see also F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 607 (9th Cir. 1993) (cited in ECF 2844 at 9) (interpreting a federal statute that specifically provides for "the refund of money or return of property" and noting that consumer was required to return the product to the manufacturer) (citation omitted).[6]

***Class Certification Cases.*** Plaintiffs also cite several cases finding that a classwide damages model aligned with the proffered theories of liability (none of which was a breach of express warranty), but these cases involved placebos or unusable products. *See, e.g.*, *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524 (6th Cir. 2015) (cited in ECF 2844 at 10) (case involving probiotic; "[i]f, as alleged, the bacteria do[] nothing, then the capsule is worthless") (citation omitted); *see also id.* at 506 (common question was "whether [product] is 'snake oil' and thus does not yield benefits to *anyone*"); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 636 (S.D. Cal. 2015) (cited in ECF 2844 at 9) (plaintiffs alleged that they "got *none* of what they paid for" in fraudulently advertised real estate classes) (citation omitted).

Another three non-warranty class certification cases involved blatantly illegal conduct and have been distinguished in a case with much more analogous facts to this one. *See Corbett*, 2024 WL 1356220, at *25-28 (distinguishing *In re Morning*

---

[6]    In the context of state law, returned products implicate an entirely different section of the UCC. *See, e.g.*, Tex. Bus. & Com. Code § 2.608.

*Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. 2017) (bird seed that was "actually bird poison"), *In re JUUL Labs, Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 976 (N.D. Cal. 2022) (marketing of tobacco to children, who cannot legally purchase it), and *Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329 (Ct. App. 2010) (sale of product containing controlled substance that was illegal both to sell and possess) (cited in ECF 2844 at 9-10)). *Corbett* explains why these cases are inapplicable. In *Corbett*, the defendants sold a dietary supplement that had not been cleared by the FDA, and therefore was adulterated and misbranded. At the class certification stage, the plaintiffs claimed they were entitled to a full refund because "the FDCA does not permit sales of food or drugs that are misbranded." *Id.* at *24. The court rejected a "full refund model," stating that a "violation of the FDCA" did not render a product worthless. *Id.* at *25. In so holding, the court distinguished *Morning Song Bird*, *JUUL Labs*, and *Steroid Hormone* as representing "a limited exception to the general rule," where there are "blatant[] illegal actions" by the defendants. *Id.*

**Blue Cross.** The final case cited by Plaintiffs, *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, No. 13-4663, 2019 WL 4751883 (E.D. Pa. Sept. 30, 2019) (cited in ECF 2844 at 10), has been discussed extensively in Court over the last few

weeks.[7]  In *Blue Cross*, unlike this litigation, the FDA made a formal finding that the drugs at issue were "adulterated within the meaning of" the FDCA while they were ***still being sold and paid for*** by class members.  *See* 417 F. Supp. 3d 531, 541 (E.D. Pa. 2019) (citation omitted) (finding of adulteration in 2002, but drugs continued to be sold through 2005).  No such finding was made here.

For all of these reasons, Plaintiffs have not identified any cases that support their position on express warranty claims and worthlessness.[8]

## III.  DR. STIROH'S ALTERNATIVE DRUGS OPINION IS ADMISSIBLE.

Finally, to the extent Plaintiffs continue to argue that the VCDs were adulterated since their inception, the Court should admit Dr. Stiroh's opinion that Plaintiffs would have been economically worse off in such a counterfactual world. As a rebuttal expert, Dr. Stiroh should be permitted to explain the economic consequences of a world in which the VCDs would not have been sold and Plaintiffs

---

[7]    While Plaintiffs and Dr. Conti have asserted that Dr. Conti was permitted to offer damages calculations in *Blue Cross* based on the same IQVIA data she attempts to use in this case to evaluate the purchase price for valsartan medications paid by TPPs (*see* 9/9/24 Hr'g Tr. 87:1-6), the record in that case is to the contrary. According to Dr. Conti's own report in *Blue Cross*, her damages "calculations" there were "based on ***claims data provided by each plaintiff*** with respect to the payments made" for the medications at issue).  *See* Expert Report of Rena Conti, Ph.D. ¶ 41 & Attach. B (Materials Considered), *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, No. 13-04663 (E.D. Pa. June 5, 2018) (emphasis added) (attached as Ex. 1 to Cert. of Jessica Davidson).

[8]    Plaintiffs' Appendix cites a number of other cases that supposedly support their worthlessness theory.  They do not, as shown in Defendants' Appendix B.

would have paid more for alternative drugs.

Plaintiffs argue that Dr. Stiroh's opinion is untethered to this case because their damages theory does not rely on a but-for world in which the VCDs would "not [have] been sold on the market." (ECF 2673 at 3.) They also contend that consideration of alternative drugs is improper when the measure of damages is the benefit of the bargain. (ECF 2811 at 1-2.) Both arguments fail.

*First*, Plaintiffs' theory of the case is very much premised on a but-for world in which the VCDs would not have been sold. According to Plaintiffs, they are entitled to a full refund because an adulteration finding would have rendered the VCDs *retroactively* worthless. But that is tantamount to claiming that the VCDs were always adulterated, which means that they could *not* have been legally sold. Given this theory, Dr. Stiroh reasonably compared the world in which the VCDs were sold to the TPPs to one in which the medications would have been adulterated and not sold. (9/10/24 Hr'g Tr. 26:13-28:1, 31:1-5, ECF 2842.) And because Plaintiffs have admitted that they would have covered alternative drugs in that counterfactual world, Dr. Stiroh necessarily considered those medications in her analysis. (*Id.* 32:10-33:1; ECF 2009-3, Ex. 29 at 208:5-13.) As Dr. Stiroh explained, "if [Plaintiffs] would have been better off in the but-for world, that measure of difference is the economic loss damages." (9/10/24 Hr'g Tr. 19:9-10.) For example, if Plaintiffs would have paid for cheaper alternative medications, the measure of

12

damages is the difference between the respective prices of the drugs. *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 325 F.R.D. 529, 540 (D. Mass. 2017).[9]  But if Plaintiffs are worse off in the but-for world because they would have paid for more expensive medications, it means they suffered no harm, and any damages award would be a windfall.  (9/10/24 Hr'g Tr. 21:14-22:4.)

In short, Plaintiffs' adulteration theory of worthlessness is premised on the very same counterfactual world as the one Dr. Stiroh used in her alternative drugs opinion—i.e., a world in which the alleged adulteration would have been discovered earlier and the VCDs been taken off the shelves.  (9/10/24 Hr'g Tr. 86:16-23.)  At the September 10 hearing, Plaintiffs forcefully reiterated their intention to present this theory at trial through Professor Conti or other witnesses (*id.* 107:1-7),[10] and they doubled down on this theory in their most recent brief (ECF 2844 at 11).

*Second*, Plaintiffs are wrong that the cost of alternative medications is

---

[9]    Similarly, where a drug causes physical harm to members, Plaintiffs could recover the additional medical costs they would not have had to pay if their members had taken a safer alternative.  (9/10/24 Hr'g Tr. 49:15-18.)  And where Plaintiffs would not have paid for any alternatives, they may recover the full price of the medication.  *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 20 F. Supp. 3d 305, 324 (E.D.N.Y. 2014), *aff'd*, 806 F.3d 71 (2d Cir. 2015).  Neither scenario is present in this case.

[10]    Since Plaintiffs intend to argue at trial that the at-issue VCDs were worthless because they were adulterated and should never have been sold, Dr. Stiroh's alternative drugs opinion rebutting this theory will still be relevant despite the exclusion of Professor Conti's worthlessness opinion.  (9/10/24 Hr'g Tr. 110:7-21.)

irrelevant in a benefit-of-the-bargain case.  "[B]efore [applying] the benefit-of-the-bargain rule," courts "must first consider whether [the plaintiff] has been actually harmed as a result of [the defendant]'s alleged deceptive practice." *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008) (no injury where plaintiff "received the benefit of her bargain because the prices she paid were indeed lower than the prices at which she purportedly could have purchased comparable products in the marketplace"); *see also id.* (a model that "calculate[s] . . . damages" before an actual injury has been established is "flawed").  And as courts have explained, the way to do that is measuring "the difference between the loss a plaintiff would have suffered (if any) in the absence of offending conduct versus what he/she in fact suffered." *State of New York v. United Parcel Serv., Inc.*, No. 15-1136, 2016 WL 4735368, at *10 (S.D.N.Y. Sept. 10, 2016) ("*UPS*"); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 240 (S.D.N.Y. 2019) (damages must account for "the but-for world" in which the alleged breach of warranty and fraud did not occur). Any other rule would effectively "place a plaintiff in a position better than he/she would have been in the absence of the alleged conduct," resulting in an impermissible "windfall."  *UPS*, 2016 WL 4735368, at *10; *see also* JAMES M. FISCHER, UNDERSTANDING REMEDIES 2 § 7.5 (4th ed. 2021) ("[T]he law will not permit compensation recoveries that result in windfalls.").

Dr. Stiroh undertook precisely that kind of but-for analysis and concluded that

Plaintiffs would likely have been worse off if Defendants' supply of VCDs had been erased. As she explained, the price of other manufacturers' VCDs would have increased given the supply constraints, and other medicines would have been more expensive. (9/10/24 Hr'g Tr. 33:4-44:13; ECF 2630-1 ¶¶ 38-40.) Contrary to Plaintiffs' claim (ECF 2844 at 14), Judge Kugler did not reject Defendants' alternative drugs argument, much less adjudicate the admissibility of Dr. Stiroh's opinion. Rather, the Court merely quoted *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531 (E.D. Pa. 2019), in passing, without taking any position on the relevance of alternative drugs. Moreover, the passage Plaintiffs cite to was part of the Court's discussion on proximate causation, not injury and damages—which is the purpose for which Defendants seek to admit Dr. Stiroh's opinion. (ECF 2694 at 60-64.)

In sum, as a rebuttal expert, Dr. Stiroh should be permitted to critique Plaintiffs' worthlessness theory and explain why Plaintiffs would have been economically worse off had the VCDs not been sold and why awarding them damages under an overly simplistic model would reward them with an unfair windfall.

## CONCLUSION

For the foregoing reasons, the proper measure of damages is "benefit of the bargain," to which Dr. Stiroh's alternative drug opinion is highly relevant.

15

Dated: September 24, 2024

Respectfully submitted,

By: */s/ Jessica Davidson*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jessica Davidson (NY Bar No. 6034748)
*Liaison Counsel for Manufacturer Defendants*

Allison M. Brown (NJ Bar No. 044992012)
One Manhattan West
New York, New York 10001
Phone: (212) 735-3222
Fax: (917) 777-3222
jessica.davidson@skadden.com
allison.brown@skadden.com

Nina R. Rose (DC Bar No. 975927)
1440 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 371-7000
Fax: (202) 661-0525
nina.rose@skadden.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC*

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
GREENBERG TRAURIG, LLP
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Lori G. Cohen, Esq.
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
Fax: (678) 553-2386
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis Pharma, Inc.*

/s/ Alexia R. Brancato
Alexia R. Brancato
Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
Fax: (212) 446-6460
alexia.brancato@kirkland.com
devora.allon@kirkland.com

*Attorneys for Defendants Torrent Pharmaceuticals Ltd. and Torrent Pharma, Inc.*

17

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on September 24, 2024, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson