```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW JERSEY
 2   _____

 3   IN RE:  VALSARTAN, LOSARTAN,         CIVIL ACTION NUMBER:

 4   and IRBESARTAN PRODUCTS              1:19-md-02875-RMB-SAK

 5   LIABILITY LITIGATION                 Oral Argument via TEAMS

 6   _____     Videoconferencing

 7

 8   Mitchell H. Cohen Building & U.S. Courthouse
     4th and Cooper Streets
 9   Camden, New Jersey 08101
     Monday, October 7, 2024
10   Commencing at 10:00 a.m.

11   B E F O R E:         THE HONORABLE THOMAS I. VANASKIE (RET.)
                          SPECIAL MASTER
12

13   A P P E A R A N C E S:

14   HONIK LLC
     BY:  RUBEN HONIK, ESQUIRE
15   1515 Market Street, Suite 1100
     Philadelphia, Pennsylvania 19102
16   Co-Lead Counsel for MDL Plaintiffs

17   MAZIE SLATER KATZ & FREEMAN, LLC
     BY:  ADAM M. SLATER, ESQUIRE
18        CHRISTOPHER J. GEDDIS, ESQUIRE
     103 Eisenhower Parkway, Suite 207
19   Roseland, New Jersey 07068
     Co-Lead Counsel for MDL Plaintiffs

20

21
                  John J. Kurz, Official Court Reporter
22                  John_Kurz@njd.uscourts.gov
                          (856)576-7094
23
          Proceedings recorded by mechanical stenography; transcript
24             produced by computer-aided transcription.

25
```

**A P P E A R A N C E S:** (Continued)


SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
BY:  JESSICA DAVIDSON, ESQUIRE
One Manhattan West, Suites 42-128
New York, New York 10001
Counsel for Defendants Zhejiang Huahai Pharmaceutical Co.,
Ltd., Huahai U.S., Inc., Prinston Pharmaceutical, Inc., and
Solco Healthcare U.S., LLC (collectively ZHP)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
BY:  NINA R. ROSE, ESQUIRE
1440 New York Avenue, N.W.
Washington, D.C. 20005
Counsel for Defendants Zhejiang Huahai Pharmaceutical Co.,
Ltd., Huahai U.S., Inc., Prinston Pharmaceutical, Inc., and
Solco Healthcare U.S., LLC (collectively ZHP)

KIRKLAND & ELLIS LLP
BY:  DEVORA W. ALLON, P.C.
     ALEXIA R. BRANCATO, ESQUIRE
601 Lexington Avenue
New York, New York 10022
Counsel for Defendants Torrent Pharma, Inc. and
Torrent Pharmaceuticals Ltd. (collectively Torrent)

PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
BY:  JASON M. REEFER, ESQUIRE
One Oxford Centre, 38th Floor
Pittsburgh, Pennsylvania 15219
Counsel for Defendant Mylan Pharmaceuticals, Inc.

GREENBERG TRAURIG LLP
BY:  STEVEN M. HARKINS, ESQUIRE
3333 Piedmont Road, NE, Suite 2500
Atlanta, Georgia 30305
Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
Inc. (collectively Teva)

BARNES & THORNBURG, LLP
BY:  KARA KAPKE, ESQUIRE
11 South Meridian Street
Indianapolis, IN 46204
Counsel for Retailer Defendants and CVS Pharmacy, Inc., and
Walmart, Walgreens

1  **A P P E A R A N C E S:** (Continued)

2  ULMER & BERNE LLP
   BY: JEFFREY D. GEOPPINGER, ESQUIRE
3  600 Vine Street, Suite 2800
   Cincinnati, Ohio 45202
4  Counsel for Wholesaler Defendants and AmerisourceBergen

5  FALKENBERG IVES LLP
   BY:  KIRSTIN B. IVES, ESQUIRE
6  230 W Monroe Street, Suite 2220
   Chicago, Illinois 60606
7  Counsel for Defendant Humana

8  NORTON ROSE FULBRIGHT US LLP
   BY:  D'LESLI DAVIS, ESQUIRE
9  2200 Ross Avenue
   Suite 3600
10 Dallas, Texas 75201
   Counsel for Defendant Mckesson Corp.

11

12 **Also present:**

13 Larry MacStravic, The Courtroom Deputy

14 Loretta Smith, Esquire, Judicial Law Clerk to the Honorable
   Robert B. Kugler (Ret.)

15

16

17

18

19

20

21

22

23

24

25

1                (PROCEEDINGS held via remote TEAMS videoconferencing

2      before the Honorable Thomas I. Vanaskie (Ret.), Special Master,

3      at 10:00 a.m. as follows:)

4                THE COURT:  Good morning.

5                THE COURT REPORTER:  Good morning, Your Honor.

6                THE COURT:  Jessica, good morning.

7                MS. DAVIDSON:  Good morning, Your Honor.  Can you

8      hear me now?

9                THE COURT:  Good morning.  Loud and clear.  Thanks.

10               Who do we have on for plaintiffs?

11               MR. SLATER:  Hello, Judge.  Adam Slater.

12               THE COURT:  Good morning, Adam.

13               All right.  I guess we'll go on the record.  Now is

14     the time we set for oral argument on plaintiffs' request to

15     preclude Jinsheng Lin and Maggie Kong from testifying at trial.

16               The parties have briefed the issues extensively, and

17     I'm ready to proceed.  And we'll hear from Mr. Slater first.

18               MR. SLATER:  Thank you very much, Your Honor.

19               I want to start off just to highlight a couple of

20     important foundational principles, one of which is that from

21     our perspective, ZHP failed to disclose information regarding

22     and of Jinsheng Lin and Maggie Kong in a timely fashion.  And

23     based on the case law we cited, the burden would be on ZHP to

24     show that their nondisclosure was substantially justified or is

25     harmless.  And I don't think they can meet that burden on this

1    record.

2           I'll also say in also a general sense, ZHP cited a

3    lot of cases, but none of them really apply here, and all are

4    fully distinguishable, because in our case we have a finding of

5    bad faith in terms of the forthrightness of the discovery

6    productions.

7           And I think ultimately we end up where Judge Bumb was

8    when she commented on this; that if the defendant lulled the

9    plaintiffs or misled the plaintiffs, they can't profit or gain

10    from that.  And I think that's really what's happening here.  I

11    think having those principles in mind, I'll start with Maggie

12    Kong.

13           THE COURT:  Well, let me interrupt you for a minute,

14    because hindsight, of course, is 20/20.  And this dispute arose

15    when the case was scheduled to go to trial in March, but of

16    course didn't go to trial in March.  Why didn't you take action

17    when it was in that period, that suspense period, awaiting the

18    scheduling of a trial, assignment of a new judge, to take the

19    depositions of Jinsheng Lin and Maggie Kong?

20           MR. SLATER:  I think that we did take action.  I

21    don't think that taking their depositions -- I think that ZHP

22    would have liked us to do that because then they could claim

23    unavailability and try to use the depositions at trial.  And

24    that was a concern.  But we did take action.

25           When we found out about this, I believe it was on

1    February 22nd, less than a month before the trial when they

2    disclosed these witnesses that were actually intended to come

3    to trial, and we immediately, when the time came to file the

4    trial briefs, objected to them testifying because we felt that

5    it shouldn't be on us now to take their deposition and cure all

6    the prejudice and to create a pathway to get these witnesses

7    into court when they had been named as actual trial witnesses

8    so late in the process.  And with the history that came before

9    that, I don't think that ultimately this can be cured by just

10   having the plaintiffs take their deposition and move along.

11           And I think when I walk through each of the two

12   witnesses, I think it can be made much more clear why it is

13   that a deposition or cross-examination at trial is really not

14   sufficient.

15           When you start with Maggie Kong, this is a witness --

16   and I think it's important to look at what the briefs from ZHP

17   say.  This is a witness who Your Honor faced these briefs, when

18   the defense didn't even want to turn over a custodial

19   production for her and gave a list of things and said she had

20   absolutely no personal involvement or knowledge with anything

21   relevant to the case.  She's merely the chief of staff.  They

22   don't even keep a calendar.  She doesn't know anything.  And

23   they said she doesn't know anything about the development,

24   manufacturing, testing, or sale of the product, which is

25   everything, and overall also said she had no regulatory

1  responsibilities, and that her custodial file will duplicate

2  what Baohua Chen would have known.  That's obviously a big

3  concern of ours.  We don't want her to be able to come in and

4  be a proxy for Baohua Chen.

5         But look at their brief now, Judge.  When they listed

6  the areas that she was not knowledgeable about in their briefs

7  now, they only list the development, manufacturing, testing and

8  sale.  They leave out what they told Your Honor three years

9  ago, which is that she had no regulatory responsibilities.  And

10  then when you go through the proffer, it's all under the

11  heading of, I would say, regulatory, because it's all related

12  to the recall, which was a regulatory action, and also

13  specifically goes to testing and speaking to customers, which I

14  think would also go within sales because that's why you're

15  contacting customers.  And I'm not really sure what the

16  relevance of that is.  I don't know that she's going to say

17  that she spoke to Teva or Torrent.  So I don't really

18  understand where she's going.

19         But coming back to your question before, why would we

20  take her deposition when they told us she knew nothing and had

21  no personal knowledge of anything that was relevant?  And we,

22  again, didn't want to give her a platform to become a

23  mouthpiece for Baohua Chen.  So now, all of a sudden, after she

24  had no regulatory responsibilities, now she wants to talk about

25  organizing all the manpower to test and the procurement of the

1    testing materials, all being handled under the disclosure of

2    this regulatory problem with these impurities.  Collecting

3    information to give to regulators.  I'm reading the list of

4    what they proffered in their brief of what she's going to talk

5    about.  ZHP's reaction to the recall.  That's regulatory also.

6         The effort -- the effect of the recall on the

7    company, there was an import ban.  We know that.  That's

8    regulatory.

9         Steps taken to ensure the safety of valsartan.  She

10   has no knowledge of development, manufacturing, testing, sale

11   or regulatory issues.  I don't understand how she can now, all

12   of a sudden, be able to talk about those things.  So I think

13   this is the ultimate gamesmanship.  It's the ultimate of they

14   figured out let's just have a witness who we can present as a

15   blank slate and then we can just have her talk about all the

16   things that we said three years ago she didn't know about.

17        And I'd like Your Honor also to take note of, all of

18   a sudden, she has a title that we can't find in any

19   organizational chart which we never saw before.

20        THE COURT:  Okay.

21        MR. SLATER:  She was always the chief of staff.  Now

22   she's the vice president of globalization and development,

23   whatever that means.

24        We looked.  We couldn't find an organizational chart

25   that actually gave her that title.  If we're missing it, I'm

1  sure that counsel will tell us, but we haven't seen it.  In all

2  their briefs, they said all she is, is the chief of staff.

3       So when you look at all of that and her lack of

4  knowledge, and you look at the fact that her custodial file not

5  only is it scarce overall, but she has no documents from

6  May 24, 2018 to June 15, 2018, which is obviously a critical

7  period.  But she wants to talk about the communications with

8  pharmaceutical clients.  She doesn't have documents for the

9  most important client, Novartis, that time period.  And she

10  wasn't involved in that at all.  You know, Judge, she wasn't

11  even on the recall team.  Baohua Chen was on it.  Jucai Ge was

12  on it, who's coming to testify.

13       So when you put all of this together, there's

14  absolutely no reason why she should ever be proffered to

15  testify, unless there's something going on here to try to get

16  around either the Baohua Chen ruling or to try to get around

17  the testimony of other witnesses.

18       There's literally no prejudice to the defense of not

19  letting her testify in light of where we stand.  And so that

20  lays out, I think, our argument of Maggie Kong.

21       THE COURT:  Let's hear from Jessica on Maggie Kong.

22       MS. DAVIDSON:  So, Your Honor, I want to point out

23  that Mr. Slater used the word "gamesmanship."  And I wasn't

24  going to use that word because I try hard not to be *ad hominem*

25  about opposing counsel, but this is the ultimate in

1    gamesmanship here.

2          Basically what Mr. Slater is saying to you is he

3    doesn't want Maggie Kong to testify.  We have produced 57,000

4    documents from Maggie Kong post -- in the period after the

5    recall having to do with the words either "recall" or

6    "valsartan."  57,000 unique documents beginning 6/1/18.

7          ZHP lost the argument not to do a collection.  So

8    Mr. Slater wants it both ways.  He got the documents.  He got

9    57,000 unique documents.  ZHP has the right to choose who to

10   bring to trial.  Mr. Slater doesn't want Maggie Kong at trial

11   because, for whatever reason, he thinks it won't be good for

12   his case.  That's not how one decides who testifies at trial.

13         And, you know, I hesitate -- just like I hesitate to

14   use the word "gamesmanship," I also hesitate to use the word

15   "due process," because I do feel like due process is something

16   litigants bandy about too often.  This is literally a violation

17   of due process to say to a company you cannot bring to trial

18   the witnesses you chose from your employees.

19         And if Mr. Slater thinks that Maggie Kong has nothing

20   to say, he has a right to cross-examine her.  That's due

21   process, too.  We have a due process right to bring her to

22   trial.  He has a due process right to cross-examine her.

23         And I also want to point out that Mr. Slater

24   basically said anything that happened after 2018 has to do with

25   regulatory.  I am going to define the word "regulatory" so

1    broad that anything she could possibly say is somehow

2    tangentially related to regulatory and she shouldn't be allowed

3    to do that.  But this is his definition.  That's the

4    gamesmanship here, not ours.

5             Finally, Your Honor, I want to make a really

6    important point, which is we basically just heard from

7    Mr. Slater a sanctions argument, but the sanctions order was

8    entered.

9             That was, right, SMO 100, entered by the Court.  And

10    I think it's really important to look at the words of that

11    permissive adverse inference, because it says "you are

12    permitted, but not required, to infer that the evidence would

13    have been unfavorable to ZHP."  And then it says, "any

14    inference you decide to draw should be based on all of the

15    facts and circumstances of this case."

16             Nowhere does it say that ZHP should be barred from

17    bringing to trial the witnesses it has chosen.  It says, "The

18    jury will be told that it can draw an adverse inference."

19             That is very different from an evidence-barring

20    sanction.  And what Mr. Slater is basically doing today is

21    asking Your Honor to reconsider the sanctions ruling and now

22    enter an evidence-barring sanction.  So that has very high

23    standards, as Your Honor knows.  In fact, Your Honor stayed

24    away from that for that very reason.  There is no evidence to

25    support that here.

1        And if Mr. Slater thinks that Maggie Kong doesn't

2   know things, he is, as we have seen, a very effective

3   questioner, and he can question her about that at trial.  But

4   there is no legal, legitimate basis, other than Mr. Slater

5   wanting to choose who testifies, to bar her from coming.

6        THE COURT:  Let me ask just a couple of questions,

7   Jessica.

8        MS. DAVIDSON:  Okay.

9        THE COURT:  On the background of Maggie Kong, from my

10  perspective, having sat through a number of arguments on

11  discovery-related matters, is that Maggie Kong did not possess

12  any relevant information.  She was Baohua Chen's chief of

13  staff, described to me more in the nature of an administrative

14  assistant than anybody who had a substantive role.

15       So I was a bit surprised when I saw in your papers

16  that she played some role and she had this title that wasn't

17  chief of staff to Baohua Chen.  It had some substantive

18  connotation to it.

19       So when did she assume this role as vice president of

20  globalization and development?  I'd like to understand where

21  that fits in here.

22       MS. DAVIDSON:  So that really does not fit in here.

23  She just got a promotion a month or two ago.

24       THE COURT:  Okay.

25       MS. DAVIDSON:  She is now --

```
1              THE COURT:  So that's irrelevant to this.

2              MS. DAVIDSON:  Yes.  That's irrelevant to this.  She

3    received a promotion a month or two ago.  I know that she's

4    working on some projects that have to do with Europe.  I don't

5    know the details.  Since they don't relate to the litigation, I

6    didn't ask.

7              THE COURT:  Sure.

8              MS. DAVIDSON:  I just know that from the time change

9    of when I need to talk to her that her new role has something

10   to do with Europe, but it is unrelated to this case.

11             And, Your Honor, look, obviously, as you know,

12   there's only so much I can tell you about the past because the

13   events you're describing obviously occurred before Skadden took

14   on representation of ZHP.

15             THE COURT:  Sure.

16             MS. DAVIDSON:  So I can't -- I don't know exactly

17   what the attorneys at Duane Morris told you or didn't tell you.

18   This is what I can tell you.

19             The chief of staff position is very similar, in my

20   mind.  You know, I used to work in politics as a chief of staff

21   on Capitol Hill.  That person does have substantive roles.  I

22   would not describe Ms. Kong in any way as administrative or

23   secretarial.

24             And obviously what happened when the valsartan was

25   discovered to have these impurities was a major upheaval at the
```

1    company.  She was very involved in the day-to-day after this

2    was discovered, during the recall, after the recall, during the

3    time period when there was an import ban, she was very involved

4    in that part.

5          She is not going to come to trial and testify about

6    the development of the product.  She's not going to come to

7    trial and testify about any of those five things that Adam

8    talked about: the sales, the development, the testing, none of

9    that.

10          She was not involved in the DMF.  She was not

11   involved in any of that.  It is a very narrow discussion of

12   what the company did after this unfortunate series of events

13   occurred and how the company handled that.  That is what she

14   would be talking about.

15          THE COURT:  Now, Adam, Jessica says that they've

16   produced 57,000 documents from Maggie Kong's file.  There's

17   nothing in your mind or in your judgment of relevance in those

18   57,000 documents?

19          MR. SLATER:  I'm told the number is 2,497.  So I

20   don't know where 50,000 comes from, or 57,000 or whatever

21   number comes from.

22          That number is not the number that we have.  It's

23   never been the number we have.

24          There was a lot of documents that they held back for

25   privilege.  I don't know if she's mixing up the numbers.

1  Because remember they said she interacts with lawyers or

2  something.

3          THE COURT:  Yeah.

4          MR. SLATER:  I guess the lawyers' things go through

5  her email to Baohua Chen or something.  I don't know.  But said

6  they were going to have to hold back some massive number of

7  documents for privilege.  But I don't know where 57,000 comes

8  from.  They produced 2,497.  And --

9          THE COURT:  And that's still a large number.  Nothing

10  of relevance in that 2,500-document universe?

11         MR. SLATER:  Not -- not really.  And it's actually,

12  for a litigation of this size, Your Honor, as you know, that's

13  not actually a large number at all.  There were duplications,

14  et cetera.

15         But let me unpack a little bit of what you heard

16  there, because I don't think the raw numbers really tell the

17  story that needs to be told anyway.  I think the numbers don't

18  help them, because nowhere in those documents is anything

19  between May 24, 2018 and June 15, 2018.  If something is not

20  rotten in Denmark with that, I don't know what would be.

21  That's a very, very important time period, and she had no

22  documents during that time period.

23         I want to talk about something that counsel just

24  said.  Number one, I've heard this a couple other times where

25  Skadden, Arps' lawyers say, well, you know, that wasn't us,

1    that was Duane Morris.

2              There's no reset.  This is the conduct on behalf of

3    ZHP throughout the litigation.  So whatever Duane Morris did,

4    they did.  And if the ZHP lawyers, the current ones, can't talk

5    to it, then that's a gap that they can't fill, but they don't

6    get a break for that.  This is the party --

7              THE COURT:  Yeah.  And they're not getting a break

8    for that, so that does not resonate with me.

9              MR. SLATER:  Okay.  I just wanted to say, because I

10   wasn't sure where that was going.  But I thought it was also

11   interesting, and I think we are hearing more of what they want

12   to do with this witness.

13             Counsel just said it's going to be very narrow, it's

14   going to be about what the company did after the recall.

15             She's not a 30(b)(6) witness who can testify -- first

16   of all, a 30(b)(6) witness can't even testify affirmatively on

17   behalf of the company to what the company did.  She was never

18   designated.  She's a fact witness who had no knowledge of any

19   of the relevant areas of this case.  And anything she would

20   have to say at trial would have to be based on her personal

21   knowledge and what she did, not Baohua Chen did this, not Min

22   Li did that, not Joe Smith did this, not Jane Smith did that.

23   It would have to be:  This is what I did, this is what I knew.

24             And counsel is trying to say that the areas they said

25   she had no involvement with are not within the scope of what

1    they're proffering, but of course it is.

2              And what I was pointing out for you, Judge, before

3    was, when they tried to block the custodial file from being

4    produced, they said she had no regulatory responsibilities.  In

5    the briefs they just filed, they left that off the list.  And

6    then they list all these other things.  They said she had no

7    involvement in testing either.  Right here we have:

8    "Procurement of testing materials; organize manpower to test."

9    If she had no involvement with testing, she had no involvement

10   with testing.  Those representations were made to the Court in

11   2021 after all these events occurred, which they said she had

12   no involvement with.

13             So if you go through it, everything related to the

14   recall is regulatory.  That was a regulatory act and everything

15   they did was being done with FDA oversight.  They were making

16   reports to the FDA.  It was all being overseen.  And they have

17   Linda Lin, the head of regulatory, a 30(b)(6) witness, who has

18   been deposed, and other witnesses who have been deposed on the

19   recall -- the people they actually designated who we were

20   actually able to depose on these things.  When we were told

21   these are the necessary custodians, these are the necessary

22   witnesses, we focused on what was needed.

23             If we had asked for the deposition of Maggie Kong

24   after the representations they made, Judge, I would have been

25   laughed out of court.  I'm saying that, obviously you wouldn't

1    have literally laughed at me, but you would have said why do

2    you need to take her deposition?  You're already taking all

3    these depositions and the defense is saying she doesn't know

4    anything.  She's not going to suddenly know something later, so

5    don't -- you're not -- why would you take her deposition?

6             Now, all of a sudden, they want to say she knows

7    something later.  I still don't understand what it is they

8    think she's going to talk about.  So I think it's, "I want to

9    talk about our company and what the company did."  She can't do

10   that.  You can't affirmatively do that even with a designated

11   30(b)(6) witness.  She certainly can't do it as a person with

12   personal knowledge of very little.

13            And whatever she did was in the role of an

14   administrative assistant.  She was the chief of staff.  They

15   want to say she's not, but that's literally what they

16   represented.  She can't say when things happened because she

17   didn't keep a calendar.  They represented that, too.

18            So obviously she's being proffered here to say things

19   that Baohua Chen may have wanted to say or to try to soften the

20   blow for him not testifying in his deposition and whatever else

21   she wants to say.  But it all comes within the scope of what

22   they said she didn't know.

23            Were we lulled to sleep?  Absolutely, everybody was.

24   And we never pursued her.  And then we find out a few weeks

25   before the trial they want to call her, so we did the right

1    thing.  We said she shouldn't be allowed to testify.  We

2    shouldn't have to go and take a deposition to make her

3    testimony actually admissible if she can't get out of the

4    country or something.

5           So I think that those are the main points with Maggie

6    Kong.

7           THE COURT:  Okay.  All right.  Let's hear from

8    Jessica.

9           MS. DAVIDSON:  Briefly.  Thank you.  Thank you, Your

10   Honor.

11          So, first of all, I think it's very telling what

12   Mr. Slater just said.  And I tried to write it down, even

13   though he talks fast, which was, "I don't understand what she's

14   going to talk about."  That's the purpose of the deposition.

15   We disclosed Maggie Kong as a trial witness to Adam

16   eight months ago.  My email immediately said she's available

17   for a deposition, she's coming to trial, she's available at any

18   point.  Let us know when you want to depose her.

19          He made the strategic decision not to depose her,

20   hoping that the Court would just basically give him a break and

21   enable him to benefit from not taking a deposition.

22          So when Mr. Slater sits here and says I don't know

23   what she's going to talk about, that is a choice he made.  He

24   made the choice not to know what she's going to talk about by

25   not deposing her.

1           Also, Your Honor, I hope you understood that I am not
2     saying that what Duane Morris told the Court before Skadden
3     came on is somehow no longer relevant.  I'm just saying that I
4     didn't feel comfortable commenting on prior representations
5     they made because I wasn't there and didn't make them.
6           THE COURT:  All right.
7           MS. DAVIDSON:  Next, Your Honor, the Rules of
8     Evidence obviously will apply to all ZHP witnesses just like
9     they'll apply to plaintiffs' witnesses.  So if Mr. Slater is
10    concerned that Ms. Kong is somehow going to try to testify
11    outside the scope of her knowledge, which he doesn't know
12    because he chose not to depose her, the Rules of Evidence would
13    apply.  There are objections.
14          Judge Bumb made it very clear that she runs a very
15    tight ship in Court.  Judge Bumb is not going to allow a
16    witness to testify to something that's hearsay.  I think we all
17    know that.  She made that very, very clear.  So to the extent
18    Mr. Slater's concerned about Ms. Kong testifying outside the
19    scope of her knowledge, the federal rules are there.
20          To the extent he's concerned there's documents
21    missing from her file that he believes are missing, which
22    obviously we have certified to you nothing is missing, and that
23    is Skadden.  Mr. Bernardo, my colleague, who's got a lot of
24    integrity, did a full analysis and provided that certification.
25    Mr. Slater can cross-examine her.  Between the Rules of

```
 1    Evidence and the ability to cross-examine and the ability to
 2    take a deposition, which is still available to him, you know,
 3    trial is not tomorrow, that he's chosen to forego, every single
 4    one of his concerns has been addressed.
 5            I do want to say as to the number of documents, I
 6    asked a paralegal this morning to check.  I will go back and
 7    confirm if I misspoke and I will let the Court now.
 8            THE COURT:  All right.  Thank you.
 9            All right.  Why not take her deposition, Adam?
10            MR. SLATER:  Well, I don't want to bail them out
11    because if I were to start with I'll take their deposition,
12    then there's obviously -- then it's going to be well, then,
13    that's what you want and you can take her deposition and you
14    can fix everything because, you know, everything can be cured
15    with cross-examination.
16            If Your Honor rules that she can testify and she
17    actually makes it to the United States and she's actually here,
18    then I would want to -- then I would ask to take her deposition
19    for a few hours like within a week of her testimony or
20    something like that.  But I don't want that to become the
21    linchpin to say, well, there's no prejudice because you're
22    going to depose her.  I can't depose her on the gaps in her
23    file.  I don't have the documents that had to have existed
24    between May 24, 2018 and June 15, 2018, for example.  I don't
25    know what -- when I said I don't know what she's going to say,
```

```
 1  what I was saying, is I don't understand what she can say
 2  because the areas that they represented she doesn't have any
 3  knowledge or involvement in is everything.  I mean, that's what
 4  I was saying is "I don't know what she's going to say."
 5  Because, again, if I had asked for a deposition, the defense
 6  would have been laughing at us and saying why do they want to
 7  depose this person who knows nothing.  Maybe we should have
 8  asked for it at the time so they could oppose it, but --
 9          THE COURT:  Yeah; I'm not faulting you for not taking
10  the deposition.  And I agree with you, based upon my
11  recollection of representations that were made back a while
12  ago, that Maggie Kong was represented as a person with no
13  relevant knowledge, no firsthand knowledge or simply a conduit.
14  You know, she passed information to Baohua Chen and so maybe
15  sometimes passed information Baohua Chen gave her, but it was
16  more she was simply a conduit.  And so, you know, I'm not
17  faulting you for not taking the deposition.
18          I guess what I'm questioning you on is after they
19  designated her as a trial witness, why would you not take her
20  deposition then?  Knowing now, hindsight 20/20, that we had a
21  number of months where there was no activity, little activity,
22  in the matter that you could have availed yourself of that
23  opportunity.
24          MR. SLATER:  The answer is, we moved in the trial
25  brief to block her testimony, and that motion has been pending
```

1    until today.

2              THE COURT:  Okay.

3              MR. SLATER:  So I certainly wasn't going to take her

4    deposition in the interim.  I feel like it's unfair to us to be

5    put in that situation, for all the reasons that we've

6    explained, which are not just semantics.

7              I mean, if she -- if she were to be allowed to

8    testify, as a matter of equity in the courts -- and, Your

9    Honor, the idea that you, the Court, doesn't have the right to

10   either preclude or limit testimony from a witness and that

11   somehow this becomes a due process issue is obviously not

12   correct.  Witnesses get precluded all the time.  They get

13   limited all the time.

14             She certainly would not be -- I don't think it would

15   be completely unfair to allow her to testify -- let me start

16   over.

17             It would be completely unfair to let her testify in

18   any of the areas where they represented she has no personal

19   knowledge or involvement.  That would be -- it would be

20   completely unfair to let her now suddenly flip -- forget

21   estoppel.  It's not an estoppel -- it doesn't have to be a

22   judicial estoppel issue.  It's just a question of what the

23   Court's going to allow somebody to do in terms of they make

24   representations to the Court, they say that this is what the

25   person knows, the person shouldn't be allowed to go beyond

1    that.

2           And, you know, I hope we don't have to have that

3    discussion, but if we have to do that, I think it should be

4    narrowed.  And we should only have to depose her if she makes

5    it to the U.S., because, again, I don't want to be baited into

6    taking the deposition of a witness by Zoom and then they say,

7    well, now the witness can't get here so we'll just use the

8    deposition, and then they question the witness in the back half

9    and do their entire direct.  That we're not going to do for

10   them.

11          So to the extent the witness is allowed to testify,

12   we would ask to be able to depose, if the witness actually gets

13   to the United States and is actually going to testify, so this

14   can't become a substitute for live testimony.  I think that's

15   fair and I don't think it's unreasonable.

16          But I still think that there's no prejudice to them

17   not being able to call Maggie Kong because they said it, she

18   doesn't know anything, she didn't do anything relevant.

19          And, again, we're hearing that she was involved after

20   the recall.  I don't understand.  She was procuring things?

21   Was she sending letters out?  Was she running anything?  They

22   said she never had the lead role in any testing.  But now

23   they're saying she's going to testify about the testing?  It

24   doesn't make any sense, Judge.  It doesn't pass the smell test.

25   There's something else going on here.

1          And, again, we have an arm tied behind our back

2     because this witness has no documents between May 24, 2018 and

3     June 15, 2018.  The idea that they're going to put her on to

4     talk about all of the -- anything when there's no documents,

5     and they've never explained that, they've never been -- and I

6     don't think anyone's going to say on the record as an officer

7     of the court, well, she had no emails or communications with

8     anybody during those 21 days or 22 days, because that would be

9     unbelievable.  So we're going to now be put in the situation

10    where we have to depose and cross this witness when a key time

11    period right before the disclosure is absent from her custodial

12    file.  That would be very, very unfair to us.

13         And I think I just -- and I just remembered also,

14    counsel said, well, why didn't you move for sanctions against

15    Maggie Kong and Jinsheng Lin back when you filed the Rule 37

16    motion.  There was no reason to.  We were focused on the

17    witnesses -- on the witness that was the focus.  And we

18    never -- it never occurred to us they were going to call Maggie

19    Kong to testify.  It never occurred to us that there would be

20    any reason to because they said she knows nothing.

21         So what happened was, when they disclosed the witness

22    the end of February, we then in our trial brief said we oppose

23    that witness being allowed to testify.  We've done things when

24    we learned.  We took our position, and I think I've explained

25    my position on the deposition.

```
 1                    THE COURT:  Okay.

 2                    MR. SLATER:  I don't want to go in circles with this.

 3                    THE COURT:  Yeah.

 4                    MS. DAVIDSON:  Your Honor, can I have 30 seconds?

 5                    THE COURT:  You can have two minutes.

 6                    MS. DAVIDSON:  I don't even need two minutes.

 7                    First of all, I just want to reassure you,

 8      Mr. Slater, that Maggie, as you probably know from her resume,

 9      Ms. Kong worked at Merck in New Jersey and has a green card.

10      So there's not going to be a problem for her coming to the U.S.

11                    And secondly, I want to assure you that there's

12      nothing going on, there's no devious plan.  This is all

13      speculation.  It's almost like you've seen too many movies or

14      something, but there's no devious plan.  There's no secret

15      reason why Ms. Kong is being brought to trial.

16                    And, again, you will have -- if we are allowed to

17      bring Ms. Kong to trial, as Judge Vanaskie noted, there is an

18      opportunity to depose her.  She would be happy to sit for a

19      deposition either before she comes or after she arrives.  She,

20      as I understand it, is currently in Germany for work.  So it's

21      a lot easier, Adam.  She's not in China.

22                    And, again, I think it's really important that

23      plaintiffs were awarded sanctions.  Those sanctions did not say

24      that ZHP is barred from bringing witnesses to trial.  And there

25      is not a basis that I've heard to keep her from coming to
```

1    trial.

2              There is -- apparently Adam believes he has a lot of

3    cross-examination, and that's fair game.  That's all, Your

4    Honor.

5              THE COURT:  All right.  Thank you.

6              All right.  Let's move to Jinsheng Lin then.

7              MR. SLATER:  Your Honor, starting with Jinsheng Lin,

8    I think we have to remember that he was not named as a

9    custodian when ZHP was required to identify the people with

10   relevant knowledge.  And, again, his deposition wasn't offered.

11   He wasn't named as a trial witness until right before the trial

12   either, in February of 2024.

13             It's very --

14             THE COURT:  But you knew about him.  You knew for --

15   at least for some time.

16             MR. SLATER:  Oh, we knew about him for sure, and --

17             THE COURT:  And, you know, I think it's a fair

18   characterization to say that the email he authored is the

19   centerpiece of your trial strategy.  So why not notice the

20   deposition of the centerpiece of your trial strategy?

21             MR. SLATER:  The reason we didn't do it was because

22   ZHP had never named him as a relevant custodian.  Never named

23   him as a relevant witness.  Never offered him for deposition.

24   And once we deposed the 30(b)(6) witness who spoke for the

25   company, Min Li, who was Jinsheng Lin's boss, and who received

1    that email and was speaking for the company, and he explained

2    what the email said, it didn't seem like there was a reason to

3    then go to Jinsheng Lin, who they had never listed as a witness

4    who was going to testify, they had never offered him for

5    deposition, didn't offer his custodial file, it didn't seem

6    necessary for us to go create testimony with him for the

7    benefit of ZHP when we had testimony from their 30(b)(6)

8    witness speaking for the company on this subject.  It would

9    have been a big favor to them at that point because we had

10   binding testimony the company was bound by.

11        And I think one of the big problems that we have here

12   is, we're now told that he's going to -- the proffer is talk

13   about the meaning of the email, the intention in writing the

14   email, and his knowledge at the time the email was sent.

15        So essentially he's going to now -- I presume they

16   wouldn't be calling him to agree with Min Li about what it

17   says, so they're going to now try to bring in the witness to

18   say that their 30(b)(6) witness was wrong and that he disagrees

19   with the company's own testimony and the company's own

20   translation of the document so that the jury can be thoroughly

21   confused.  I suppose that's the reason to call him.

22        And now let's talk about how prejudiced we would be

23   to depose him.  His custodial file is materially deficient.

24   This is a guy who worked at the company for many years.  I

25   think he started there in, I think, 2012 or 2013.  It might be

1    2014 at the latest.  And we have -- the earliest family date

2    for any of the documents is December 7, 2017.  So, again, they

3    are, hey, go take the deposition of our witness for whom you

4    don't have any of his documents before December of 2017, when

5    that email was written, et cetera.  And so with both hands tied

6    behind your back, ask him these questions.

7            And I can tell you, Judge, we have evidence that's

8    already going to go in -- we have testimony that's already

9    going to go into evidence from another 30(b)(6) witness that as

10   of July 13, 2017, 14 days before that email was written, CEMAT,

11   and this is testimony from Qiangming Li that was given on

12   April 16, 2021, that CEMAT was using GCMS, chromatography,

13   which is the type that is used to identify nitrosamines, to

14   identify unknown impurities in its valsartan API as of July 13,

15   2017.

16           Jinsheng Lin would have definitely been involved in

17   those activities.  He ran the lab that looked for impurities in

18   their drugs, but we have no documentation of that at all.

19           We have no documentation of why he said that what

20   they're seeing in the irbesartan looks just like the NDMA

21   that's in valsartan and is caused by sodium nitrite quenching.

22   So we've never seen the documents that show why did he know

23   that.  Because the idea that this was about some other product,

24   it's literally the information that this case turns on, and

25   it's literally the specific information, yet we have no

1    documents from him showing how did he learn that.  When did he

2    know it?  Who else did he discuss it with?

3            So they want us to depose him, but we don't have any

4    of his documents from that relevant time period, when we know

5    that CEMAT and his specific lab that he ran at CEMAT was using

6    the right kind of chromatography testing to identify unknown

7    impurities in valsartan in July of 2017, yet we have no

8    documents from his custodial file during that time period.

9            That's a very problematic, very prejudicial

10   situation.  And, again, and I think I've answered your

11   question, I'm happy to answer more questions about why we

12   didn't jump up and say, well, now we'll depose him if you're

13   calling him as a witness.  We did what we thought was right.

14   We moved to preclude his testimony.

15           Again, if they bring him to the U.S. and we lose this

16   argument, we would want to depose him.  But we think that

17   there's also going to be -- well, I don't want to go further

18   than that other than to say --

19           THE COURT:  All right.  Can you answer this question

20   for me?

21           MR. SLATER:  Yes.

22           THE COURT:  To what extent, because this is an MDL,

23   and I'm not certain of the answer to this question, to what

24   extent is Rule 26(a)(1), I think it is, of the Federal Rules of

25   Civil Procedure applicable here, where you have to disclose the

```
 1   identity of every person likely to have discoverable
 2   information along with the subjects of that information and to
 3   do it in a timely manner?
 4          MR. SLATER:  It does apply.  It does apply, Your
 5   Honor, and that's why they were told to identify those people
 6   as the custodians that we would need, and it was never
 7   disclosed.
 8          THE COURT:  Okay.
 9          MR. SLATER:  And I think there was a weird statement
10   in their brief, and I'm not sure what it is, counsel could
11   explain it maybe, where they said the plaintiffs know that we
12   didn't even know about this email back then.
13          I don't know what they -- I don't know that.  I don't
14   know when they learned of it.  I mean, you understand our view
15   on that email.  You understand what we think happened.  And
16   it's a big so what.  And it does go back to Rule 26.  All of
17   this was required to be investigated, identified, and disclosed
18   going back to the beginning when custodians were first being
19   identified in 2019.
20          THE COURT:  All right.  Jessica.
21          MS. DAVIDSON:  Your Honor, ZHP learned about the
22   email at this deposition, the first deposition where the email
23   was used by plaintiffs' counsel.  At that point, plaintiffs
24   made a decision that they were going to depose every single
25   person they could about this email except the author of the
```

1   email himself.

2          What we just heard from Mr. Slater was his closing

3   argument.  His entire case is about this email.  It's

4   unprecedented to me to allow plaintiffs to make their entire

5   case about an email but bar the jury from hearing from that

6   author.

7          The fact that plaintiffs decided from a strategic

8   perspective that they would have a stronger case about the

9   email if they didn't actually ask the person who wrote it why

10  did you write this, what did it mean, what were the

11  circumstances, whatever questions I would ask someone if I were

12  deposing somebody who wrote the email, the fact that plaintiffs

13  decided they weren't going to do that cannot be a basis for

14  barring ZHP from bringing the author of the email that they're

15  making their entire case about.

16         And I want to say that there's been an ongoing effort

17  in this litigation to make this a one-sided trial, constant

18  efforts to preclude ZHP from introducing this sort of evidence

19  or that sort of evidence and to box ZHP in.  And I think the

20  Court has made very clear that this is going to be a fair

21  trial.  We heard that multiple times from Judge Bumb when we

22  sat in court.  This is going to be a fair trial.

23         And obviously, a fair trial can only happen if ZHP is

24  allowed to bring the person who wrote the email that

25  Mr. Slater's entire case is about.

1        I don't know how to say that any more emphatically.

2   And I am not aware of any situation where a court would bar the

3   defendant from bringing the person who wrote the email that the

4   entire trial strategy of the plaintiffs is about.

5        And I want to make one more point.  Mr. Slater said

6   something earlier about and suggested that ZHP chose who would

7   be deposed early on.  Obviously it was plaintiffs who chose who

8   would be deposed early on.  And I did reach out actually, Your

9   Honor, to Duane Morris to say, hey, did ZHP choose all the

10  potential witnesses?  And I was told, of course not.  That's

11  not how it happened.  And obviously we know that's not how it

12  happened since plaintiffs wanted to depose Mr. Chen.  I don't

13  believe that ZHP put Mr. Chen down as a deponent and chose him

14  and then moved to block him from being deposed.  So it's very

15  clear that plaintiffs chose whom to depose.  They chose

16  carefully.  They chose strategically.  They had that right.

17  But conversely, we too have the right at trial to present a

18  full and fair defense, which includes bringing the person who

19  wrote the email that Mr. Slater has now questioned multiple

20  people about except the person himself.

21            THE COURT:  All right.

22            MS. DAVIDSON:  I'll leave it there.

23            THE COURT:  Thank you.

24            Adam.

25            MR. SLATER:  Yes, Judge.

1          We based our witnesses on who they told us had

2     knowledge and the things that we saw when they were giving us

3     the custodial files.  And we did the best we could.  We

4     obviously want to depose Baohua Chen.

5          I want to go back to something that counsel said.

6          THE COURT:  Why did you choose not to depose Jinsheng

7     Lin after you learned of the existence of that email?

8          MR. SLATER:  Well, as I said, once we learned of the

9     email, we took the deposition of Min Li, who was the 30(b)(6)

10    witness who addressed these issues.  So we now have the company

11    testifying to the email.  So there was no reason for us to now

12    go and take the deposition of this other witness who they had

13    never even disclosed to us and never showed any interest in

14    calling as a witness.

15         So we had good testimony that explained what the

16    email said.  We weren't going to go and now take the deposition

17    of this Jinsheng Lin and let him say whatever he was going to

18    say.  We didn't need to do that at that point because they were

19    locked in on what the email said.  Because, again, the company

20    is bound by the admissions of the 30(b)(6) witness.  So we had

21    it.  And we had very clear testimony.

22         There's nothing that says just -- if we had said as

23    to the 30(b)(6) witnesses, okay, we deposed this witness, now

24    we want to go depose the other people who wrote the emails that

25    the person testified about, the response would be, no, that's

1   why you took a 30(b)(6) to cover that department, to cover that

2   subject matter.  So we weren't required to go depose all of the

3   people that were in -- that had the roles and wrote the emails

4   and the documents that were within the designation.

5       I also think -- I think we shouldn't lose what

6   counsel said before.  ZHP learned about the email at the first

7   deposition when it was used.  That's impossible.  ZHP and their

8   counsel were required to go through all the documents, make

9   sure all relevant documents were produced, and they're supposed

10  to be given to us.  So I don't understand how counsel can

11  represent that ZHP didn't know what it produced to us or that

12  they missed a document which on their search would have shown

13  NDMA, valsartan, quenching, key search terms to look for any

14  highly relevant documents.  They all would come up with that

15  document.  I mean, it's interesting to think that our people

16  would find the document and figure out what it means before ZHP

17  did.

18      What happened with the document from our perspective

19  and our understanding is that document was never supposed to be

20  produced and it slipped through and was missed.  That's why

21  there's no duplicate custodians.  That's why it was a copy, a

22  PDF copy off a laptop.  And that's why we got it the way we

23  did.  So if ZHP was surprised when we used it at the deposition

24  of Min Li, they were surprised because they didn't think we had

25  it.  And frankly, I don't even know who was involved in doing

1    that.

2          It may have been not that the U.S. counsel didn't

3    know.  I have no idea, but it seemed pretty obvious what

4    happened.

5          I also would like to say, counsel acts as if this

6    email is the only thing that we have and it's the entire case.

7    The FDA never knew about the email because it was never

8    disclosed to the FDA even after the recall, even after all this

9    happened.  And the FDA still imposed a recall.  They wrote the

10   warning letter finding cGMP violations and adulteration and

11   imposed an import ban all without the email.  So it's not our

12   entire case.  It's an important piece of evidence within the

13   case, but it's not the whole case.

14         And, again, it's not our job to go take depositions

15   to make it easier for ZHP to deflect what their 30(b)(6)

16   witness said the document says.

17         So I don't think that that should be used against us

18   because I don't think that we were obligated to do it.  And I

19   don't think that we needed to go take depositions of everybody

20   that was within the documents and actions that their 30(b)(6)

21   witnesses talked about.

22         THE COURT:  All right.  Thank you.

23         MS. DAVIDSON:  Your Honor, if I may, two minutes.

24         THE COURT:  You may.

25         MS. DAVIDSON:  Thank you, Your Honor.

1    We heard a lot of conspiracy theories from
2  Mr. Slater, and I want to make clear that, and Your Honor knows
3  this, obviously conspiracy theories and speculation are not a
4  basis for telling a company that it cannot bring its employees
5  to trial.
6    And it's troubling to me that ZHP is being at this
7  point accused with no evidence of intentionally destroying
8  documents, of hiding documents.
9    I mean, as I said earlier, I feel like Mr. Slater has
10 watched a lot of TV shows because there's no evidence of this.
11 There's no -- it's all just conspiracy, speculation, with no
12 facts.  And it seems to me that plaintiffs have chosen --
13 decided that that's how they want to try this case, with
14 conspiracy and speculation rather than facts.
15    Now, I thought it was interesting that Mr. Slater
16 said that Min Li was, quote, locked in.  They locked in the
17 testimony with Min Li and therefore they didn't want to depose
18 Jinsheng Lin.
19    As Your Honor will recall, when Min Li was shown that
20 email at his deposition, he said he had never seen it before.
21 He didn't know what it was.  So to surprise somebody with an
22 email that they don't know what it is and then tell the company
23 that the person who wrote the email can't come to trial to
24 testify about it because Min Li is locked in, that is -- and,
25 again, I go back to not wanting to overstate -- but that is

1    fundamentally a due process violation.  I mean, this would be

2    baking prejudicial error into the trial.

3            And I do want to go back to something that, you know,

4    Judge Bumb said two things that I thought were very important.

5    Number one, we're going to have a fair trial.  And number two,

6    I don't want to have a trial that has any baked-in error.  I

7    want -- if we're going to have a trial, I want to make sure

8    that this does not get reversed.

9            Your Honor, I will submit, respectfully, that if you

10   have a trial about an email and the author of the email is not

11   allowed to testify, that is baked-in error.

12           MR. SLATER:  Judge, I forgot to mention one thing,

13   and if I could just mention it, and then counsel obviously can

14   respond because I'd be interested in the response.  Can I have

15   a moment just to add one thing that I forgot to mention?

16           THE COURT:  Yes, you may.  Yes.

17           MR. SLATER:  Thank you.

18           As I started out, the burden of proof is on ZHP to

19   show that their nondisclosure is substantially justified or is

20   harmless.  And one of the things I saw in their brief was

21   something about a records retention policy, and his emails were

22   scrubbed in the ordinary course.

23           We have emails for many, many witnesses going back

24   long before two years before the recall.  They've never

25   explained why he was special and his documents would have been

```
 1    scrubbed like that, and including not being able to produce the
 2    email that he wrote.  That's a real problem.  They can't meet
 3    their burden to explain this.  They've never met it.
 4           We've looked.  We have not seen any retention policy
 5    that required documents to be destroyed for Jinsheng Lin within
 6    two years of it being -- less than two years of it being
 7    written because the recall occurred less than two years after
 8    the email was written.  And certainly they were on notice of
 9    potential litigation at that point.  They were under
10    investigation by the FDA, et cetera.
11           So that's never been explained.  They can't meet
12    their burden, and that's what this is about.  There's a burden
13    of proof.  They can't meet it.
14           And, again, we are horribly prejudiced by the lack of
15    documents and the clear -- there's no conspiracy.  There's no
16    documents for the guy.  The email he wrote isn't in his file.
17    He's not listed as a duplicate custodian, et cetera.  So I
18    don't know what counsel can say to this records retention
19    policy issue.  But it's never been fleshed out.  It's just
20    something thrown into a brief, and we don't see any such policy
21    that would have just affected him and no one else.
22           MS. DAVIDSON:  Your Honor, my response is very
23    succinct.  I would suggest that Mr. Slater depose Jinsheng Lin
24    and ask him what happened to your documents and find out what
25    his policies were and how he kept his documents, how he deleted
```

1   his documents.  I mean, that's how litigation works.  That's

2   all.

3          MR. SLATER:  But I think counsel has to answer the

4   question.  The answer, I guess, is they don't want to say or

5   they don't know.  And when they said there's a records

6   retention policy that applied, they can't point to it because

7   we can't find such a policy that allowed them to destroy the

8   document so quickly.  So there is nothing.

9          MS. DAVIDSON:  Again, Mr. Slater, I'm sorry, this is

10  all speculation that is a further example that plaintiffs'

11  counsel here want to try this case based on an innuendo,

12  innuendo rather than facts and evidence.  Facts and evidence

13  are how trials, in my experience, happen.  And witnesses are

14  identified.  They are deposed.  They testify.  They're

15  cross-examined.  That's how this should proceed.

16         THE COURT:  All right.  I certainly understand the

17  arguments.

18         You need a prompt ruling from me.  I want to do a

19  ruling in writing on this because I think it's an important

20  issue.

21         I want to go back to basics, fundamentals.  And

22  that's why I raised Rule 26 and the disclosure obligations in

23  Rule 26.  And certainly if there's a violation of disclosure

24  obligations, a sanction can be preclusion.  So witnesses get

25  precluded all the time.  The due process is baked into the

1    rules.  The rules require disclosure, and there is a penalty if

2    the disclosure is not made in a timely manner, or can be a

3    penalty.  I'm not saying there will be.  And that's how I'm

4    going to approach this for both Maggie Kong and Jinsheng Lin.

5         I am very much concerned that the circumstances

6    surrounding the disclosure of that Jinsheng Lin email from 2017

7    are suspect.  I'll use that term.

8         It is an important piece of evidence that simply

9    somehow tumbled out, and that's concerning.  Now, there's no

10    suggestion of anything nefarious.  It's just -- it's a large

11    case, a lot of evidence.  But I do want to look at this a

12    little more carefully.  I want to get the transcript from the

13    argument because the arguments were extremely well presented,

14    and then give you a prompt ruling.  And it will be a ruling in

15    writing.  And I think that's all I have to say right now.

16         It will be decided based on the fundamentals of what

17    obligations exist in terms of disclosures, et cetera.  And so

18    let me promise you a prompt ruling and do my best to get it out

19    as quickly as I can.

20         And, John, I'll look for this transcript as quickly

21    as you can get it to me.

22         THE COURT REPORTER:  Yes, Your Honor.

23         THE COURT:  Thanks.

24         All right.  Anything else for today?

25         MR. SLATER:  There's not, Judge.  Thank you very

1    much.

2                THE COURT:  Thank you all very much.

3                MS. DAVIDSON:  Thank you, Your Honor.

4                MR. SLATER:  Have a nice day.

5                THE COURT:  Take care.  Bye-bye.

6                MR. SLATER:  Bye.

7                (Proceedings concluded at 10:54 a.m.)

8                - - - - - - - - - - - - - - - - - - - -
     **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

9                - - - - - - - - - - - - - - - - - - - -

10          I certify that the foregoing is a correct transcript

11    from the record of proceedings in the above-entitled matter.

12

13

14    /S/John J. Kurz, RDR-RMR-CRR-CRC              October 7, 2024

15    Court Reporter/Transcriber

16

17

18

19

20

21

22

23

24

25

**MR. SLATER: [26]**
4/11 4/18 5/20 8/21 14/19 15/4 15/11 16/9 21/10 22/24 23/3 26/2 27/7 27/16 27/21 30/21 31/4 31/9 33/25 34/8 38/12 38/17 40/3 41/25 42/4 42/6
**MS. DAVIDSON: [19]**
4/7 9/22 12/8 12/22 12/25 13/2 13/8 13/16 19/9 20/7 26/4 26/6 31/21 33/22 36/23 36/25 39/22 40/9 42/3
**THE COURT REPORTER: [2]** 4/5 41/22
**THE COURT: [42]** 4/4 4/6 4/9 4/12 5/13 8/20 9/21 12/6 12/9 12/24 13/1 13/7 13/15 14/15 15/3 15/9 16/7 19/7 20/6 21/8 22/9 23/2 26/1 26/3 26/5 27/5 27/14 27/17 30/19 30/22 31/8 31/20 33/21 33/23 34/6 36/22 36/24 38/16 40/16 41/23 42/2 42/5

**/**

**/S/John [1]** 42/14

**0**

**07068 [1]** 1/19
**08101 [1]** 1/9

**1**

**100 [1]** 11/9
**10001 [1]** 2/4
**10022 [1]** 2/12
**103 [1]** 1/18
**10:00 [1]** 1/10
**10:00 a.m [1]** 4/3
**10:54 a.m [1]** 42/7
**11 [1]** 2/22
**1100 [1]** 1/15
**128 [1]** 2/3
**13 [2]** 29/10 29/14
**14 [1]** 29/10
**1440 [1]** 2/7
**15 [4]** 9/6 15/19 21/24 25/3
**1515 [1]** 1/15
**15219 [1]** 2/16
**16 [1]** 29/12
**18 [1]** 10/6
**19102 [1]** 1/15
**1:19-md-02875-RMB-SA K [1]** 1/4

**2**

**2,497 [2]** 14/19 15/8
**2,500-document [1]** 15/10
**20 [2]** 5/14 22/20
**20/20 [2]** 5/14 22/20

**20005 [1]** 2/8
**2012 [1]** 28/25
**2013 [1]** 28/25
**2014 [1]** 29/1
**2017 [6]** 29/2 29/4 29/10 29/15 30/7 41/6
**2018 [9]** 9/6 9/6 10/24 15/19 15/19 21/24 21/24 25/2 25/3
**2019 [1]** 31/19
**2021 [2]** 17/11 29/12
**2024 [3]** 1/9 27/12 42/14
**207 [1]** 1/18
**21 [1]** 25/8
**22 days [1]** 25/8
**2200 [1]** 3/9
**2220 [1]** 3/6
**22nd [1]** 6/1
**230 [1]** 3/6
**24 [4]** 9/6 15/19 21/24 25/2
**2500 [1]** 2/18
**26 [4]** 30/24 31/16 40/22 40/23
**2800 [1]** 3/3

**3**

**30 [15]** 16/15 16/16 17/17 18/11 26/4 27/24 28/7 28/18 29/9 34/9 34/20 34/23 35/1 36/15 36/20
**30305 [1]** 2/19
**3333 [1]** 2/18
**3600 [1]** 3/9
**37 [1]** 25/15
**38th [1]** 2/15

**4**

**42-128 [1]** 2/3
**45202 [1]** 3/3
**46204 [1]** 2/23
**4th [1]** 1/8

**5**

**50,000 [1]** 14/20
**57,000 [7]** 10/3 10/6 10/9 14/16 14/18 14/20 15/7
**576-7094 [1]** 1/22

**6**

**6/1/18 [1]** 10/6
**600 [1]** 3/3
**601 [1]** 2/12
**60606 [1]** 3/6

**7**

**7094 [1]** 1/22
**75201 [1]** 3/10

**8**

**856 [1]** 1/22

**A**

**a.m [3]** 1/10 4/3 42/7
**ability [2]** 21/1 21/1
**able [6]** 7/3 8/12 17/20 24/12 24/17 39/1

**above [1]** 42/11
**above-entitled [1]** 42/11
**absent [1]** 25/11
**absolutely [3]** 6/20 9/14 18/23
**accused [1]** 37/7
**act [1]** 17/14
**Actavis [2]** 2/20 2/20
**action [5]** 1/3 5/16 5/20 5/24 7/12
**actions [1]** 36/20
**activities [1]** 29/17
**activity [2]** 22/21 22/21
**acts [1]** 36/5
**actual [1]** 6/7
**actually [13]** 6/2 8/25 15/11 15/13 17/19 17/20 19/3 21/17 21/17 24/12 24/13 32/9 33/8
**ad [1]** 9/24
**ADAM [10]** 1/17 4/11 4/12 14/7 14/15 19/15 21/9 26/21 27/2 33/24
**add [1]** 38/15
**addressed [2]** 21/4 34/10
**administrative [3]** 12/13 13/22 18/14
**admissible [1]** 19/3
**admissions [1]** 34/20
**adulteration [1]** 36/10
**adverse [2]** 11/11 11/18
**affected [1]** 39/21
**affirmatively [2]** 16/16 18/10
**after [16]** 7/23 10/4 10/24 14/1 14/2 14/12 16/14 17/11 17/24 22/18 24/19 26/19 34/7 36/8 36/8 39/7
**again [16]** 7/22 22/5 24/5 24/19 25/1 26/16 26/22 27/10 29/2 30/10 30/15 34/19 36/14 37/25 39/14 40/9
**against [2]** 25/14 31/17
**ago [6]** 7/9 8/16 12/23 13/3 19/16 22/12
**agree [2]** 22/10 28/16
**aided [1]** 1/24
**ALEXIA [1]** 1/13
**ALFANO [1]** 2/14
**all [62]**
**ALLON [1]** 2/11
**allow [4]** 20/15 23/15 23/23 32/4
**allowed [10]** 11/2 19/1 23/7 23/25 24/11 25/23 26/16 32/24 38/11 40/7
**almost [1]** 26/13
**along [2]** 6/10 31/2
**already [3]** 18/2 29/8 29/8
**also [16]** 3/12 5/2 5/2 6/25 7/12 7/14 8/5 8/17 10/14 10/23 16/10 20/1 25/13 30/17 35/5 36/5
**always [1]** 8/21

**am [4]** 10/25 20/1 33/2 41/5
**AmerisourceBergen [1]** 3/4
**analysis [1]** 20/24
**another [1]** 29/9
**answer [6]** 22/24 30/11 30/19 30/23 40/3 40/4
**answered [1]** 30/10
**any [23]** 8/18 11/13 12/12 13/22 14/7 14/11 16/18 19/17 22/2 23/18 24/22 24/24 25/20 29/2 29/4 30/3 33/1 33/2 34/13 35/13 38/6 39/4 39/20
**anybody [2]** 12/14 25/8
**anyone's [1]** 25/6
**anything [15]** 6/20 6/22 6/23 7/21 10/24 11/1 15/18 16/19 18/4 24/18 24/18 24/21 25/4 41/10 41/24
**anyway [1]** 15/17
**API [1]** 29/14
**apparently [1]** 27/2
**applicable [1]** 30/25
**applied [1]** 40/6
**apply [6]** 5/3 20/8 20/9 20/13 31/4 31/4
**approach [1]** 41/4
**April [1]** 29/12
**April 16 [1]** 29/12
**are [19]** 5/3 11/11 16/11 16/25 17/21 17/21 19/5 20/13 20/19 20/21 23/6 26/16 29/3 37/3 39/14 40/13 40/13 40/14 41/7
**areas [5]** 7/6 16/19 16/24 22/2 23/18
**argument [8]** 1/5 4/14 9/20 10/7 11/7 30/16 32/3 41/13
**arguments [3]** 12/10 40/17 41/13
**arm [1]** 25/1
**arose [1]** 5/14
**around [2]** 9/16 9/16
**ARPS [2]** 2/2 2/6
**Arps' [1]** 15/25
**arrives [1]** 36/5
**ask [8]** 12/6 13/6 21/18 24/12 29/6 32/9 32/11 39/24
**asked [4]** 17/23 21/6 22/5 22/8
**asking [1]** 11/21
**assignment [1]** 5/18
**assistant [2]** 12/14 18/14
**assume [1]** 12/19
**assure [1]** 26/11
**Atlanta [1]** 2/19
**attorneys [1]** 13/17
**author [4]** 31/25 32/6 32/14 38/10
**authored [1]** 27/18
**available [3]** 19/16 19/17 21/2

**availed [1]** 22/22
**Avenue [3]** 2/7 2/12 3/9
**awaiting [1]** 5/17
**awarded [1]** 26/23
**aware [1]** 33/2
**away [1]** 11/24

**B**

**back [17]** 7/19 14/24 15/6 21/6 22/11 24/8 25/1 25/15 29/6 31/12 31/16 31/18 34/5 37/25 38/3 38/23 40/21
**background [1]** 12/9
**bad [1]** 5/5
**bail [1]** 21/10
**baited [1]** 24/5
**baked [3]** 38/6 38/11 40/25
**baked-in [2]** 38/6 38/11
**baking [1]** 38/2
**ban [3]** 8/7 14/3 36/11
**bandy [1]** 10/16
**Baohua [13]** 7/2 7/4 7/23 9/11 9/16 12/12 12/17 15/5 16/21 18/19 22/14 22/15 34/4
**bar [3]** 12/5 32/5 33/2
**BARNES [1]** 2/21
**barred [2]** 11/16 26/24
**barring [3]** 11/19 11/22 32/14
**based [7]** 4/23 11/14 16/20 22/10 34/1 40/11 41/16
**basically [5]** 10/2 10/24 11/6 11/20 19/20
**basics [1]** 40/21
**basis [4]** 12/4 26/25 32/13 37/4
**because [44]**
**become [3]** 7/22 21/20 24/14
**becomes [1]** 23/11
**been [17]** 6/7 11/13 14/23 17/18 17/18 17/24 21/4 22/6 22/25 25/5 28/9 29/16 32/16 36/2 38/25 39/11 39/19
**before [19]** 4/2 6/1 6/8 7/19 8/19 13/13 17/2 18/25 20/2 25/11 26/19 27/11 29/4 29/10 35/6 35/16 37/20 38/24 38/24
**beginning [2]** 10/6 31/18
**behalf [2]** 16/2 16/17
**behind [2]** 25/1 29/6
**being [14]** 8/1 17/3 17/15 17/16 18/18 24/17 25/23 26/15 31/18 33/14 37/6 39/1 39/6 39/6
**believe [2]** 5/25 33/13
**believes [2]** 20/21 27/2
**benefit [2]** 19/21 28/7
**Bernardo [1]** 20/23
**BERNE [1]** 3/2
**best [2]** 34/3 41/18

**B**

**between [4]** 15/19 20/25 21/24 25/2
**beyond [1]** 23/25
**big [4]** 7/2 28/9 28/11 31/16
**binding [1]** 28/10
**bit [2]** 12/15 15/15
**blank [1]** 8/15
**block [3]** 17/3 22/25 33/14
**blow [1]** 18/20
**BOSICK [1]** 2/14
**boss [1]** 27/25
**both [3]** 10/8 29/5 41/4
**bound [2]** 28/10 34/20
**box [1]** 32/19
**BRANCATO [1]** 2/11
**break [3]** 16/6 16/7 19/20
**brief [7]** 7/5 8/4 22/25 25/22 31/10 38/20 39/20
**briefed [1]** 4/16
**Briefly [1]** 19/9
**briefs [6]** 6/4 6/16 6/17 7/6 9/2 17/5
**bring [8]** 10/10 10/17 10/21 26/17 28/17 30/15 32/24 37/4
**bringing [5]** 11/17 26/24 32/14 33/3 33/18
**broad [1]** 11/1
**brought [1]** 26/15
**Building [1]** 1/8
**Bumb [5]** 5/7 20/14 20/15 32/21 38/4
**burden [6]** 4/23 4/25 38/18 39/3 39/12 39/12
**bye [3]** 42/5 42/5 42/6
**Bye-bye [1]** 42/5

**C**

**calendar [2]** 6/22 18/17
**call [4]** 18/25 24/17 25/18 28/21
**calling [1]** 28/16 30/13 34/14
**Camden [1]** 1/9
**came [3]** 6/3 6/8 20/3
**can [32]** 4/7 4/25 6/9 6/12 8/11 8/14 8/15 11/18 12/3 13/12 13/16 16/15 20/25 21/13 21/14 21/14 21/16 22/1 26/4 26/5 28/20 29/7 30/19 32/23 35/10 38/13 38/14 39/18 40/24 41/2 41/19 41/21
**can't [20]** 5/9 8/18 13/16 16/4 16/5 16/16 18/9 18/10 18/11 18/16 19/3 21/22 24/7 24/14 37/23 39/2 39/11 39/13 40/6 40/7
**cannot [3]** 10/17 32/13 37/4
**Capitol [1]** 13/21
**card [1]** 26/9
**care [1]** 42/5

**carefully [2]** 33/16 41/12
**case [21]** 4/23 5/4 5/15 6/21 10/12 11/15 13/10 16/19 29/24 32/3 32/5 32/8 32/15 32/25 36/6 36/12 36/13 36/13 37/13 40/11 41/11
**cases [1]** 5/3
**caused [1]** 29/21
**CEMAT [4]** 29/10 29/12 30/5 30/5
**centerpiece [2]** 27/19 27/20
**Centre [1]** 2/15
**certain [1]** 30/23
**certainly [6]** 18/11 23/3 23/14 39/8 40/16 40/23
**CERTIFICATE [1]** 42/8
**certification [1]** 20/24
**certified [1]** 20/22
**certify [1]** 42/10
**cetera [5]** 15/14 29/5 39/10 39/17 41/17
**cGMP [1]** 36/10
**change [1]** 13/8
**characterization [1]** 27/18
**chart [2]** 8/19 8/24
**check [1]** 21/6
**Chen [14]** 7/2 7/4 7/23 9/11 9/16 12/17 15/5 16/21 18/19 22/14 22/15 33/12 33/13 34/4
**Chen's [1]** 12/12
**Chicago [1]** 3/6
**chief [8]** 6/21 8/21 9/2 12/12 12/17 13/19 13/20 18/14
**China [1]** 26/21
**choice [2]** 19/23 19/24
**choose [4]** 10/9 12/5 33/9 34/6
**chose [5]** 10/18 20/12 33/6 33/7 33/13 33/15 33/15 33/16
**chosen [3]** 11/17 21/3 37/12
**CHRISTOPHER [1]** 1/18
**chromatography [2]** 29/12 30/6
**Cincinnati [1]** 3/3
**circles [1]** 26/2
**circumstances [3]** 11/15 32/11 41/5
**cited [2]** 4/23 5/2
**CIVIL [2]** 1/3 30/25
**claim [1]** 5/22
**clear [9]** 4/9 6/12 20/14 20/17 32/20 33/15 34/21 37/2 39/15
**Clerk [1]** 3/14
**client [1]** 9/9
**clients [1]** 9/8
**closing [1]** 32/2
**Co [4]** 1/16 1/19 2/4 2/8
**Co-Lead [2]** 1/16 1/19

**Cohen [1]** 1/8
**colleague [1]** 20/23
**Collecting [1]** 8/2
**collection [1]** 1/07
**collectively [4]** 2/5 2/9 2/13 2/20
**come [6]** 6/2 7/3 14/5 14/6 35/14 37/23
**comes [5]** 14/20 14/21 15/7 18/21 26/19
**comfortable [1]** 20/4
**coming [6]** 7/19 9/12 12/5 19/17 26/10 26/25
**Commencing [1]** 1/10
**commented [1]** 5/8
**commenting [1]** 20/4
**communications [2]** 9/7 25/7
**company [19]** 8/7 10/17 14/1 14/12 14/13 16/14 16/17 16/17 18/9 18/9 27/25 28/1 28/8 28/10 28/24 34/10 34/19 37/4 37/22
**company's [2]** 28/19 28/19
**completely [3]** 23/15 23/17 23/20
**computer [1]** 1/24
**computer-aided [1]** 1/24
**concern [2]** 5/24 7/3
**concerned [4]** 20/10 20/18 20/20 41/5
**concerning [1]** 41/9
**concerns [1]** 21/4
**concluded [1]** 42/7
**conduct [1]** 16/2
**conduit [2]** 22/13 22/16
**confirm [1]** 21/7
**confused [1]** 28/21
**connotation [1]** 12/18
**conspiracy [5]** 37/1 37/3 37/11 37/14 39/15
**constant [1]** 32/17
**contacting [1]** 7/15
**Continued [2]** 2/1 3/1
**conversely [1]** 33/17
**Cooper [1]** 1/8
**copy [1]** 35/21 35/22
**Corp [1]** 3/10
**correct [2]** 23/12 42/10
**could [8]** 5/22 11/1 22/8 22/22 31/10 31/25 34/3 38/13
**couldn't [1]** 8/24
**counsel [29]** 1/16 1/19 2/4 2/8 2/13 2/19 2/23 2/19 2/23 3/4 3/7 3/10 9/1 9/25 15/23 16/13 16/24 25/14 31/10 31/23 34/5 35/6 35/8 35/10 36/2 36/5 38/13 39/18 40/3 40/11
**country [1]** 19/4
**couple [3]** 4/19 12/6 15/24
**course [5]** 5/14 5/16 17/1 33/10 38/22

**court [18]** 1/1 1/21 6/7 11/9 17/10 17/25 19/20 20/2 20/15 21/7 23/9 23/24 25/7 32/20 32/22 33/2 42/8 42/15
**Court's [1]** 23/23
**Courthouse [1]** 1/8
**Courtroom [1]** 3/13
**courts [1]** 23/8
**cover [2]** 35/1 35/1
**CRC [1]** 42/14
**create [2]** 6/6 28/6
**critical [1]** 9/6
**cross [9]** 6/13 10/20 10/22 20/25 21/1 21/15 25/10 27/3 40/15
**cross-examination [3]** 6/13 21/15 27/3
**cross-examine [4]** 10/20 10/22 20/25 21/1
**cross-examined [1]** 40/15
**CRR [1]** 42/14
**cure [1]** 6/5
**cured [2]** 6/9 21/14
**current [1]** 16/4
**currently [1]** 26/20
**custodial [6]** 6/18 7/1 9/4 17/3 25/11 28/5 28/23 30/8 34/3
**custodian [3]** 27/9 27/22 39/17
**custodians [4]** 17/21 31/6 31/18 35/21
**customers [2]** 7/13 7/15
**CVS [1]** 2/23

**D**

**D'LESLI [1]** 3/8
**D.C [1]** 2/8
**Dallas [1]** 3/10
**date [1]** 29/1
**DAVIDSON [1]** 2/3
**DAVIS [1]** 3/8
**day [3]** 14/1 14/1 42/4
**days [3]** 25/8 25/8 29/10
**December [2]** 29/2 29/4
**December 7 [1]** 29/2
**decide [1]** 11/14
**decided [4]** 32/7 32/13 37/13 41/16
**decides [1]** 10/12
**decision [2]** 19/19 31/24
**defendant [5]** 2/16 3/7 3/10 5/8 33/3
**Defendants [6]** 2/4 2/8 2/13 2/19 2/23 3/4
**defense [5]** 6/18 9/18 18/3 22/5 33/18
**deficient [1]** 28/23
**define [1]** 10/25
**definitely [1]** 29/16
**definition [1]** 11/3
**deflect [1]** 36/15
**deleted [1]** 39/25
**Denmark [1]** 15/20
**department [1]** 35/1
**deponent [1]** 33/13

**depose [24]** 17/20 19/18 19/19 20/12 21/22 21/22 22/7 24/4 24/12 25/10 26/18 28/23 30/3 30/12 30/16 31/24 33/12 33/15 34/4 34/6 34/24 35/2 37/17 39/23
**deposed [8]** 17/18 17/18 27/24 33/7 33/8 33/14 34/23 40/14
**deposing [2]** 19/25 32/12
**deposition [39]** 6/5 6/10 6/13 7/20 17/23 18/2 18/5 18/20 19/2 19/14 19/17 19/21 21/2 21/9 21/11 21/13 21/18 22/5 22/10 22/17 22/20 23/4 24/6 24/8 25/25 26/19 27/10 27/20 27/23 28/5 29/3 31/22 31/22 34/9 34/12 34/16 35/7 35/23 37/20
**depositions [6]** 5/19 5/21 5/23 18/3 36/14 36/19
**Deputy [1]** 3/13
**describe [1]** 13/22
**described [1]** 12/13
**describing [1]** 13/13
**designated [4]** 16/18 17/19 18/10 22/19
**designation [1]** 35/4
**destroy [1]** 40/7
**destroyed [1]** 39/5
**destroying [1]** 37/7
**details [1]** 13/5
**development [7]** 6/23 7/7 8/10 8/22 12/20 14/6 14/8
**devious [2]** 26/12 26/14
**DEVORA [1]** 2/11
**did [34]** 5/20 5/24 12/11 12/19 14/12 16/3 16/4 16/14 16/17 16/21 16/21 16/22 16/22 16/22 16/23 17/15 18/9 18/13 18/25 20/24 26/23 29/22 30/1 30/1 30/2 30/12 32/10 32/10 33/8 33/9 34/3 34/6 35/17 35/23
**didn't [26]** 5/16 5/16 6/18 7/22 8/16 13/6 13/17 18/17 18/22 20/4 20/5 24/18 25/14 27/21 28/2 28/5 28/5 30/12 31/12 32/9 34/18 35/11 35/24 36/2 37/17 37/21
**different [1]** 11/19
**direct [1]** 24/9
**disagrees [1]** 28/18
**disclose [2]** 4/21 30/25
**disclosed [7]** 6/2 19/15 25/21 31/7 31/17 34/13 36/8
**disclosure [7]** 8/1 25/11 40/22 40/23 41/1 41/2 41/6
**disclosures [1]** 41/17
**discoverable [1]** 31/1
**discovered [2]** 13/25 14/2

**D**

discovery [2] 5/5 12/11
discovery-related [1] 12/11
discuss [1] 30/2
discussion [2] 14/11 24/3
dispute [1] 5/14
distinguishable [1] 5/4
DISTRICT [2] 1/1 1/1
DMF [1] 14/10
document [9] 15/10 28/20 35/12 35/15 35/16 35/18 35/19 36/16 40/8
documentation [2] 29/18 29/19
documents [37] 9/5 9/8 10/4 10/6 10/8 10/9 14/16 14/18 14/24 15/7 15/18 15/22 20/20 21/5 21/23 25/2 25/4 29/2 29/4 29/22 30/1 30/4 30/8 35/4 35/8 35/9 35/14 36/20 37/8 37/8 38/25 39/5 39/15 39/16 39/24 39/25 40/1
does [8] 11/16 12/22 13/21 16/8 31/4 31/4 31/16 38/8
doesn't [14] 6/22 6/23 9/8 10/3 10/10 12/1 18/3 20/11 22/2 23/9 23/21 24/18 24/24 24/24
doing [2] 11/20 35/25
done [2] 17/15 25/23
down [2] 19/12 33/13
draw [2] 11/14 11/18
drugs [1] 29/18
Duane [5] 13/17 16/1 16/3 20/2 33/9
due [9] 10/15 10/15 10/17 10/20 10/21 10/22 23/11 38/1 40/25
duplicate [3] 7/1 35/21 39/17
duplications [1] 15/13
during [5] 14/2 14/2 15/22 25/8 30/8

**E**

each [1] 6/11
earlier [2] 33/6 37/9
earliest [1] 29/1
early [2] 33/7 33/8
easier [2] 26/21 36/15
effect [1] 8/6
effective [1] 12/2
effort [2] 8/6 32/16
efforts [1] 32/18
eight [1] 19/16
eight months [1] 19/16
Eisenhower [1] 1/18
either [6] 9/16 10/5 17/7 23/10 26/19 27/12
ELLIS [2] 2/10
else [5] 18/20 24/25 30/2 39/21 41/24
email [42] 15/5 19/16 27/18 28/1 28/2 28/13

28/14 28/14 29/5 29/10 31/12 31/15 31/22 31/22 31/25 32/1 32/3 32/5 32/9 32/12 32/14 32/24 33/3 33/19 34/7 34/9 34/11 34/16 34/19 35/6 36/6 36/7 36/11 37/20 37/22 37/23 38/10 38/10 39/2 39/8 39/16 41/6
emails [5] 25/7 34/24 35/3 38/21 38/23
emphatically [1] 33/1
employees [2] 10/18 37/4
enable [1] 19/21
end [2] 5/7 25/22
ensure [1] 8/9
enter [1] 11/22
entered [2] 11/8 11/9
entire [8] 24/9 32/3 32/4 32/15 32/25 33/4 36/6 36/12
entitled [1] 42/11
equity [1] 23/8
error [3] 38/2 38/6 38/11
ESQUIRE [13] 1/14 1/17 1/18 2/3 2/7 2/11 2/15 2/18 2/22 3/2 3/5 3/8 3/14
essentially [1] 28/15
estoppel [3] 23/21 23/21 23/22
et [5] 15/14 29/5 39/10 39/17 41/17
Europe [2] 13/4 13/10
even [12] 6/18 6/22 9/11 16/16 18/10 19/12 26/6 31/12 34/13 35/25 36/8 36/8
events [3] 13/13 14/12 17/11
ever [1] 9/14
every [3] 21/3 31/1 31/24
everybody [2] 18/23 36/19
everything [6] 6/25 17/13 17/14 21/14 21/14 22/3
evidence [18] 11/12 11/19 11/22 11/24 20/8 20/12 21/1 29/7 29/9 32/18 32/19 36/12 37/7 37/10 40/12 40/12 41/8 41/11
evidence-barring [2] 11/19 11/22
exactly [1] 13/16
examination [3] 6/13 21/15 27/3
examine [4] 10/20 10/22 20/25 21/1
examined [1] 40/15
example [2] 21/24 40/10
except [2] 31/25 33/20
exist [1] 41/17
existed [1] 21/23
existence [1] 34/7
experience [1] 40/13
explain [2] 31/11 39/3
explained [7] 23/6 25/5

25/24 28/1 34/15 38/25 39/11
extensively [1] 4/16
extent [2] 20/17 20/20 24/11 30/22 30/24
extremely [1] 41/13

**F**

faced [1] 6/17
fact [5] 9/4 11/23 16/18 32/7 32/12
facts [5] 11/15 37/12 37/14 40/12 40/12
failed [1] 4/21
fair [8] 24/15 27/3 27/17 32/20 32/22 32/23 33/18 38/5
faith [1] 5/5
FALKENBERG [1] 3/5
family [1] 29/1
fashion [1] 4/22
fast [1] 19/13
faulting [2] 22/9 22/17
favor [1] 28/9
FDA [6] 17/15 17/16 36/7 36/8 36/9 39/10
February [3] 6/1 25/22 27/12
February 22nd [1] 6/1
federal [3] 20/19 30/24 42/8
feel [4] 10/15 20/4 23/4 37/9
felt [1] 6/4
few [2] 18/24 21/19
figure [1] 35/16
figured [1] 8/14
file [12] 6/3 7/1 9/4 14/16 17/3 20/21 21/23 25/12 28/5 28/23 30/8 39/16
filed [2] 17/5 25/15
files [1] 34/3
fill [1] 16/5
Finally [1] 11/5
find [6] 8/18 8/24 18/24 35/16 39/24 40/7
finding [2] 5/4 36/10
first [7] 4/17 16/15 19/11 26/7 31/18 31/22 35/6
firsthand [1] 22/13
fit [1] 12/22
fits [1] 12/21
five [1] 14/7
fix [1] 21/14
fleshed [1] 39/19
flip [1] 23/20
FLOM [2] 2/2 2/6
Floor [1] 2/15
focus [1] 25/17
focused [2] 17/22 25/16
follows [1] 4/3
forego [1] 21/3
foregoing [1] 42/10
forget [1] 23/20
forgot [2] 38/12 38/15
forthrightness [1] 5/5
found [1] 5/25

foundational [1] 4/20
frankly [1] 35/25
FREEMAN [1] 1/17
FULBRIGHT [1] 3/8
full [2] 20/24 33/18
fully [1] 5/4
fundamentally [1] 38/1
fundamentals [2] 40/21 41/16
further [2] 30/17 40/10

**G**

gain [1] 5/9
game [1] 27/3
gamesmanship [5] 8/13 9/23 10/1 10/14 11/4
gap [1] 16/5
gaps [1] 21/22
gave [3] 6/19 8/25 22/15
GCMS [1] 29/12
Ge [1] 9/11
GEDDIS [1] 1/18
general [1] 5/2
GEOPPINGER [1] 3/2
Georgia [1] 2/19
Germany [1] 26/20
gets [1] 24/12
getting [1] 16/7
give [4] 7/22 8/3 19/20 41/14
given [2] 29/11 35/10
giving [1] 34/2
globalization [2] 8/22 12/20
goes [1] 7/13
good [8] 4/4 4/5 4/6 4/7 4/9 4/12 10/11 34/15
GORDON [1] 2/14
got [5] 10/8 10/8 12/23 20/23 35/22
green [1] 26/9
GREENBERG [1] 2/17
guess [4] 4/13 15/4 22/18 40/4
guy [2] 28/24 39/16

**H**

half [1] 24/8
handled [2] 8/1 14/13
hands [1] 29/5
happen [2] 32/23 40/13
happened [11] 10/24 13/24 18/16 25/21 31/15 33/11 33/12 35/18 36/4 36/9 39/24
happening [1] 5/10
happy [2] 26/18 30/11
hard [1] 9/24
HARKINS [1] 2/18
harmless [2] 4/25 38/20
has [23] 8/10 8/18 9/5 10/9 10/19 10/20 10/22 10/24 11/17 11/22 13/9 17/17 21/4 22/25 23/18 25/2 26/9 27/2 32/20 33/19 37/9 38/6 40/3
have [81]

haven't [1] 9/1
having [4] 5/11 6/10 10/5 12/10
he [38] 10/2 10/8 10/8 10/11 10/20 10/22 12/2 12/3 19/13 19/19 19/23 19/23 20/11 20/22 20/21 27/2 27/8 27/11 27/18 28/1 28/18 28/25 29/17 29/19 29/22 30/1 30/1 30/2 30/5 34/17 37/20 37/20 37/21 38/25 39/2 39/16 39/25 39/25
he's [5] 20/20 21/3 28/12 28/15 39/17
head [1] 17/17
heading [1] 7/11
Healthcare [2] 2/5 2/9
hear [4] 4/8 4/17 9/21 19/7
heard [7] 11/6 15/15 15/24 26/25 32/2 32/21 37/1
hearing [3] 16/11 24/19 32/5
hearsay [1] 20/16
held [2] 4/1 14/24
Hello [1] 4/11
help [1] 15/18
her [54]
here [17] 5/3 5/10 9/15 10/1 11/4 11/25 12/21 12/22 17/7 18/18 19/22 21/17 24/7 24/25 28/11 30/25 40/11
hesitate [3] 10/13 10/13 10/14
hey [2] 29/3 33/9
hiding [1] 37/8
high [1] 11/22
highlight [1] 4/19
highly [1] 35/14
Hill [1] 13/21
him [26] 18/20 19/20 19/21 21/2 27/14 27/16 27/22 27/23 27/23 28/4 28/6 28/16 28/21 28/23 29/6 30/1 30/3 30/12 30/13 30/15 30/16 33/13 33/14 34/17 39/21 39/24
himself [2] 32/1 33/20
hindsight [2] 5/14 22/20
his [22] 10/12 11/3 18/20 21/4 27/10 28/5 28/14 28/23 29/4 30/4 30/5 30/8 30/14 32/2 32/3 37/20 38/25 39/16 39/25 39/25 40/1
history [1] 6/8
hold [1] 15/6
hominem [1] 9/24
HONIK [2] 1/14 1/14
Honor [32] 4/5 4/7 4/18 6/17 7/8 8/17 9/22 11/5 11/21 11/23 11/23 13/11 15/12 19/10 20/1 20/7 21/16 23/9 26/4 27/4 27/7

**H**

**Honor... [11]** 31/5 31/21 33/9 36/23 36/25 37/2 37/19 38/9 39/22 41/22 42/3

**HONORABLE [3]** 1/11 3/14 4/2

**hope [2]** 20/1 24/2

**hoping [1]** 19/20

**horribly [1]** 39/14

**hours [1]** 21/19

**Huahai [4]** 2/4 2/5 2/8 2/9

**Humana [1]** 3/7

**I**

**I'd [3]** 8/17 12/20 38/14

**I'll [6]** 5/2 5/11 21/11 33/22 41/7 41/20

**I'm [16]** 4/17 7/15 8/3 8/25 14/19 17/25 20/3 22/9 22/16 22/18 30/11 30/23 31/10 40/9 41/3 41/3

**I've [4]** 15/24 25/24 26/25 30/10

**idea [4]** 23/9 25/3 29/23 36/3

**identified [3]** 31/17 31/19 40/14

**identify [5]** 27/9 29/13 29/14 30/6 31/5

**identity [1]** 31/1

**Illinois [1]** 3/6

**immediately [2]** 6/3 19/16

**import [3]** 8/7 14/3 36/11

**important [11]** 4/20 6/16 9/9 11/6 11/10 15/21 26/22 36/12 38/4 40/19 41/8

**imposed [2]** 36/9 36/11

**impossible [1]** 35/7

**impurities [5]** 8/2 13/25 29/14 29/17 30/7

**Inc [9]** 2/5 2/5 2/9 2/9 2/13 2/16 2/20 2/20 2/23

**includes [1]** 33/18

**including [1]** 39/1

**Indianapolis [1]** 2/23

**Industries [1]** 2/19

**infer [1]** 11/12

**inference [3]** 11/11 11/14 11/18

**information [9]** 4/21 8/3 12/12 22/14 22/15 29/24 29/25 31/2 31/2

**innuendo [2]** 40/11 40/12

**integrity [1]** 20/24

**intended [1]** 6/2

**intention [1]** 28/13

**intentionally [1]** 37/7

**interacts [1]** 15/11

**interest [1]** 34/13

**interested [1]** 38/14

**interesting [2]** 16/11 35/15 37/15

**interim [1]** 23/4

**interrupt [1]** 5/13

**introducing [1]** 32/18

**investigated [1]** 31/17

**investigation [1]** 39/10

**involved [8]** 9/10 14/1 14/3 14/10 14/11 24/19 29/16 35/25

**involvement [8]** 6/20 16/25 17/7 17/9 17/9 17/12 22/3 23/19

**irbesartan [2]** 1/4 29/20

**irrelevant [2]** 13/1 13/2

**isn't [1]** 39/16

**issue [4]** 23/11 23/22 39/19 40/20

**issues [3]** 4/16 8/11 34/10

**its [2]** 29/14 37/4

**IVES [2]** 3/5 3/5

**J**

**Jane [1]** 16/22

**JASON [1]** 2/15

**JEFFREY [1]** 3/2

**JERSEY [4]** 1/1 1/9 1/19 26/9

**JESSICA [7]** 2/3 4/6 9/21 12/7 14/15 19/8 31/20

**Jinsheng [16]** 4/15 4/22 5/19 25/15 27/6 27/7 27/25 28/3 29/16 34/6 34/17 37/18 39/5 39/23 41/4 41/6

**job [1]** 36/14

**Joe [1]** 16/22

**John [4]** 1/21 1/22 41/20 42/14

**Jucai [1]** 9/11

**judge [17]** 4/11 5/7 5/18 7/5 9/10 17/2 17/24 20/14 20/15 24/24 26/17 29/7 32/21 33/25 38/4 38/12 41/25

**judgment [1]** 14/17

**judicial [2]** 3/14 23/22

**July [3]** 29/10 29/14 30/7

**July 13 [2]** 29/10 29/14

**jump [1]** 30/12

**June [4]** 9/6 15/19 21/24 25/3

**June 15 [4]** 9/6 15/19 21/24 25/3

**jury [3]** 11/18 28/20 32/5

**just [32]** 4/19 6/9 8/14 8/15 10/13 11/6 12/6 12/23 13/8 15/23 16/9 16/13 17/5 19/12 19/20 20/3 20/8 23/6 23/22 24/7 25/13 25/13 26/7 29/20 32/2 34/22 37/11 38/13 38/15 39/19 39/21 41/10

**justified [2]** 4/24 38/19

**K**

**KAPKE [1]** 2/22

**KARA [1]** 2/22

**KATZ [1]** 1/17

**keep [3]** 6/22 18/17 26/25

**kept [1]** 39/25

**key [2]** 25/10 35/13

**kind [1]** 30/6

**KIRKLAND [1]** 2/10

**KIRSTIN [1]** 3/5

**knew [6]** 7/20 16/23 27/14 27/14 27/16 36/7

**know [58]**

**Knowing [1]** 22/20

**knowledge [16]** 6/20 7/21 8/10 9/4 16/18 16/21 18/12 20/11 20/19 22/3 22/13 22/13 23/19 27/10 28/14 34/2

**knowledgeable [1]** 7/6

**known [1]** 7/2

**knows [6]** 11/23 18/6 22/7 23/25 25/20 37/2

**Kong [28]** 4/15 4/22 5/12 5/19 6/15 9/20 9/21 10/3 10/4 10/10 10/19 12/1 12/9 12/11 13/22 17/23 19/6 19/15 20/10 20/18 22/12 24/17 25/15 25/19 26/9 26/15 26/17 41/4

**Kong's [1]** 14/16

**Kugler [1]** 3/14

**Kurz [3]** 1/21 1/22 42/14

**L**

**lab [2]** 29/17 30/5

**lack [2]** 9/3 39/14

**laptop [1]** 35/22

**large [5]** 15/9 15/13 41/10

**Larry [1]** 3/13

**late [1]** 6/8

**later [2]** 18/4 18/7

**latest [1]** 29/1

**laughed [2]** 17/25 18/1

**laughing [1]** 22/6

**law [2]** 3/14 4/23

**lawyers [3]** 15/1 15/25 16/4

**lawyers' [1]** 15/4

**lays [1]** 9/20

**lead [3]** 1/16 1/19 24/22

**learn [1]** 30/1

**learned [6]** 25/24 31/14 31/21 34/7 34/8 35/6

**least [1]** 27/15

**leave [2]** 7/8 33/22

**left [1]** 17/5

**legal [1]** 12/4

**legitimate [1]** 12/4

**less [3]** 6/1 39/6 39/7

**let [10]** 5/13 12/6 15/15 19/18 21/7 23/15 23/17 23/20 34/17 41/18

**let's [5]** 8/14 9/21 19/7 27/6 28/22

**letter [1]** 36/10

**letters [1]** 24/21

**letting [1]** 9/19

**Lexington [1]** 2/12

**Li [10]** 16/22 27/25 28/16 29/11 34/9 35/24 37/16 37/17 37/19 37/24

**LIABILITY [1]** 1/5

**light [1]** 9/19

**like [14]** 8/17 10/13 10/15 12/20 20/8 21/19 21/20 23/4 26/13 28/2 29/20 36/5 37/9 39/1

**liked [1]** 5/22

**likely [1]** 31/1

**limit [1]** 23/10

**limited [1]** 23/13

**Lin [14]** 4/15 4/22 5/19 17/17 25/15 27/6 27/7 28/3 29/16 34/7 34/17 37/18 39/5 39/23 41/4 41/6

**Lin's [1]** 27/25

**linchpin [1]** 21/21

**Linda [1]** 17/17

**list [5]** 6/19 7/7 8/3 17/5 17/6

**listed [3]** 7/5 28/3 39/17

**literally [6]** 9/18 10/16 18/1 18/15 29/24 29/25

**litigants [1]** 10/16

**litigation [7]** 1/5 13/5 15/12 16/3 32/17 39/9 40/1

**little [4]** 15/15 18/12 22/21 41/22

**live [1]** 24/14

**LLC [5]** 1/14 1/17 2/5 2/9 2/20

**LLP [9]** 2/2 2/6 2/10 2/14 2/17 2/21 3/2 3/5 3/8

**locked [4]** 34/19 37/16 37/16 37/24

**long [1]** 38/24

**longer [1]** 20/3

**look [9]** 6/16 7/5 9/3 9/4 11/10 13/11 35/13 41/11 41/20

**looked [3]** 8/24 29/17 39/4

**looks [1]** 29/20

**Loretta [1]** 3/14

**LOSARTAN [1]** 1/3

**lose [2]** 30/15 35/5

**lost [1]** 10/7

**lot [8]** 5/3 14/24 20/23 26/21 27/2 37/1 37/10 41/11

**Loud [1]** 4/9

**Ltd [4]** 2/5 2/9 2/13 2/19

**lulled [2]** 5/8 18/23

**M**

**MacStravic [1]** 3/13

**made [13]** 6/12 17/10 17/24 19/19 19/23 19/24 20/5 20/14 20/17 22/11 31/24 32/20 41/2

**Maggie [24]** 4/15 4/22 5/11 5/19 6/15 9/20 9/21 10/3 10/4 10/10 10/19

**12/1 12/9 12/11 14/16 17/23 19/5 19/15 22/12 24/17 25/15 25/18 26/8 41/4

**main [1]** 19/5

**major [1]** 13/25

**make [12]** 11/5 19/2 20/5 23/23 24/24 32/4 32/17 33/5 35/8 36/15 37/2 38/7

**makes [2]** 21/17 24/4

**making [2]** 17/15 32/15

**Manhattan [1]** 2/3

**manner [2]** 31/3 41/2

**manpower [2]** 7/25 17/8

**manufacturing [3]** 6/24 7/7 8/10

**many [4]** 26/13 28/24 38/23 38/23

**March [2]** 5/15 5/16

**Market [1]** 1/15

**massive [1]** 15/6

**MASTER [2]** 1/11 4/2

**materially [1]** 28/23

**materials [2]** 8/1 17/8

**matter [4]** 22/22 23/8 35/2 42/11

**matters [1]** 12/11

**may [9]** 9/6 15/19 18/19 21/24 25/2 36/2 36/23 36/24 38/16

**May 24 [4]** 9/6 15/19 21/24 25/2

**maybe [3]** 22/7 22/14 31/11

**MAZIE [1]** 1/9

**Mckesson [1]** 3/10

**md [1]** 1/4

**MDL [3]** 1/16 1/19 30/22

**me [15]** 4/8 5/13 12/6 12/13 15/15 16/8 18/1 23/15 30/20 32/4 37/6 37/12 40/18 41/18 41/21

**MEAGHER [2]** 2/2 2/6

**mean [8]** 22/3 23/7 31/14 32/10 35/15 37/9 38/1 40/1

**meaning [1]** 28/13

**means [2]** 8/23 35/16

**mechanical [1]** 1/23

**meet [4]** 4/25 39/2 39/11 39/13

**mention [3]** 38/12 38/13 38/15

**Merck [1]** 26/9

**merely [1]** 6/21

**Meridian [1]** 2/22

**met [1]** 39/3

**might [1]** 28/25

**Min [9]** 16/21 27/25 28/16 34/9 35/24 37/16 37/17 37/19 37/24

**mind [3]** 5/11 13/20 14/17

**minute [1]** 5/13

**minutes [3]** 26/5 26/6 36/23

**misled [1]** 5/9

**M**

missed [2]  35/12 35/20
missing [4]  8/25 20/21 20/21 20/22
misspoke [1]  21/7
Mitchell [1]  1/8
mixing [1]  14/25
moment [1]  38/15
Monday [1]  1/9
Monroe [1]  3/6
month [3]  6/1 12/23 13/3
months [2]  19/16 22/21
more [8]  6/12 12/13 16/11 22/16 30/11 33/1 33/5 41/12
morning [7]  4/4 4/5 4/6 4/7 4/9 4/12 21/6
Morris [5]  13/17 16/1 16/3 20/2 33/9
most [1]  9/9
motion [2]  22/25 25/16
mouthpiece [1]  7/23
move [3]  6/10 25/14 27/6
moved [3]  22/24 30/14 33/14
movies [1]  20/13
Mr. [29]  4/17 9/23 10/2 10/8 10/10 10/19 10/23 11/7 11/20 12/1 12/4 19/12 19/22 20/9 20/18 20/23 20/25 26/8 32/2 32/25 33/5 33/12 33/13 33/19 37/2 37/9 37/15 39/23 40/9
Mr. Bernardo [1]  20/23
Mr. Chen [2]  33/12 33/13
Mr. Slater [24]  4/17 9/23 10/2 10/8 10/10 10/19 10/23 11/7 11/20 12/1 12/4 19/12 19/22 20/9 20/25 26/8 32/2 33/5 33/19 37/2 37/9 37/15 39/23 40/9
Mr. Slater's [2]  20/18 32/25
Ms [1]  26/17
Ms. [5]  13/22 22/10 20/18 26/9 26/15
Ms. Kong [5]  13/22 20/10 20/18 26/9 26/15
much [6]  4/18 6/12 13/12 41/5 42/1 42/2
multiple [2]  32/21 33/19
my [9]  12/9 13/19 19/16 20/23 22/10 25/25 39/22 40/13 41/18
Mylan [1]  2/16

**N**

N.W [1]  2/7
named [5]  6/7 27/8 27/11 27/22 27/22
narrow [2]  14/11 16/13
narrowed [1]  24/4
nature [1]  12/13
NDMA [2]  29/20 35/13

NE [1]  2/18
necessary [3]  17/21 17/21 28/6
need [6]  13/9 18/2 26/6 31/6 34/18 40/18
needed [2]  17/22 36/19
needs [1]  15/17
nefarious [1]  41/10
never [27]  8/19 14/23 16/17 18/24 24/22 25/5 25/5 25/18 25/18 25/19 27/22 27/22 27/23 28/3 28/4 29/22 31/6 34/13 34/13 35/19 36/7 36/7 37/20 38/24 39/3 39/11 39/19
new [11]  1/1 1/9 1/19 2/4 2/4 2/7 2/12 2/12 5/18 13/9 26/9
Next [1]  20/7
nice [1]  42/4
NINA [1]  2/7
nitrite [1]  29/21
nitrosamines [1]  29/13
njd.uscourts.gov [1]  1/22
no [50]
nondisclosure [2]  4/24 38/19
none [2]  5/3 14/8
NORTON [1]  3/8
not [81]
note [1]  8/17
noted [1]  26/17
nothing [10]  7/20 10/19 14/17 15/9 20/22 22/7 25/20 26/12 34/22 40/8
notice [2]  27/19 39/8
Novartis [1]  9/9
now [32]  4/8 4/13 6/5 7/5 7/7 7/23 7/24 8/11 8/21 11/21 12/25 14/15 18/6 21/7 22/20 23/20 24/7 24/22 25/9 28/12 28/15 28/17 28/22 30/12 33/19 34/10 34/11 34/16 34/23 37/15 41/9 41/15
nowhere [2]  11/16 15/18
number [15]  1/3 12/10 14/19 14/21 14/22 14/22 14/23 15/6 15/9 15/13 15/24 21/5 22/21 38/5 38/5
numbers [3]  14/25 15/16 15/17

**O**

objected [1]  6/4
objections [1]  20/13
obligated [1]  36/18
obligations [3]  40/22 40/24 41/17
obvious [1]  36/3
obviously [17]  7/2 9/6 13/11 13/13 13/24 17/25 18/18 20/8 20/22 21/12 23/11 32/23 33/7 33/11 34/4 37/3 38/13

occurred [6]  13/13 14/13 17/11 25/18 25/19 39/7
October [2]  1/9 42/14
off [3]  4/19 17/5 35/22
offer [1]  28/5
offered [1]  27/10 27/23 28/4
officer [1]  25/6
Official [2]  1/21 42/8
often [1]  10/16
Oh [1]  27/16
Ohio [1]  3/3
okay [9]  8/20 12/8 12/24 16/9 19/7 23/2 26/1 31/8 34/23
once [2]  27/24 34/8
one [14]  2/3 2/15 4/20 10/12 15/24 21/4 28/11 32/17 33/5 38/5 38/12 38/15 38/20 39/21
one-sided [1]  32/17
ones [1]  16/4
ongoing [1]  32/16
only [6]  7/7 9/5 13/12 24/4 32/23 36/6
opportunity [2]  22/23 26/18
oppose [2]  22/8 25/22
opposing [1]  9/25
oral [2]  1/5 4/14
order [1]  11/7
ordinary [1]  38/22
organizational [2]  8/19 8/24
organize [1]  17/8
organizing [1]  7/25
other [9]  9/17 12/4 15/24 17/16 17/18 29/23 30/18 34/12 34/24
our [15]  4/21 5/4 9/20 18/9 25/1 25/22 25/24 29/3 31/14 34/1 35/15 35/18 35/19 36/11 36/14
ours [2]  7/3 11/4
out [19]  5/25 7/8 8/14 9/20 9/22 10/23 17/2 17/25 18/24 19/3 21/10 24/21 33/8 35/16 38/18 38/19 39/24 41/9 41/18
outside [2]  20/11 20/18
over [2]  6/18 23/16
overall [2]  6/25 9/5
overseen [1]  17/16
oversight [1]  17/15
overstate [1]  37/25
own [2]  28/19 28/19
Oxford [1]  2/15

**P**

P.C [1]  2/11
papers [1]  12/15
paralegal [1]  21/4
Parkway [1]  1/18
part [1]  14/4
parties [1]  4/16
party [1]  16/6
pass [1]  24/24

passed [2]  22/14 22/15
past [1]  13/12
pathway [1]  6/6
PDF [1]  35/22
penalty [2]  41/1 41/3
pending [1]  22/5
Pennsylvania [2]  1/15 2/16
people [7]  17/19 27/9 31/5 33/20 34/24 35/3 35/15
period [11]  5/17 5/17 9/7 9/9 10/4 14/3 15/21 15/22 25/11 30/4 30/8
permissive [1]  11/11
permitted [1]  11/12
person [15]  13/21 18/11 22/7 22/12 23/25 23/25 31/1 31/25 32/9 32/24 33/3 33/18 33/20 34/25 37/23
personal [5]  6/20 7/21 16/20 18/12 23/18
perspective [4]  4/21 12/10 32/8 35/18
Pharma [2]  2/13 2/20
pharmaceutical [6]  2/4 2/5 2/8 2/9 2/19 9/8
Pharmaceuticals [3]  2/13 2/16 2/20
Pharmacy [2]  2/23
Philadelphia [1]  1/15
piece [2]  36/12 41/8
Piedmont [1]  2/18
PIETRAGALLO [1]  2/14
Pittsburgh [1]  2/16
plaintiffs [17]  1/16 1/19 4/10 5/9 5/9 6/10 26/23 31/11 31/23 32/4 32/7 32/12 33/4 33/7 33/12 33/15 37/12
plaintiffs' [4]  4/14 20/9 31/23 40/10
plan [2]  26/12 26/14
platform [1]  7/22
played [1]  12/16
point [11]  9/22 10/23 11/6 19/18 28/9 31/23 33/5 34/18 37/7 39/9 40/6
pointing [1]  17/2
points [1]  19/5
policies [1]  39/25
policy [6]  38/21 39/4 39/19 39/20 40/6 40/7
politics [1]  13/20
position [3]  13/19 25/24 25/25
possess [1]  12/11
possibly [1]  11/1
post [1]  10/4
potential [2]  33/10 39/9
preclude [4]  4/15 23/10 30/14 32/18
precluded [2]  23/12 40/25
preclusion [1]  40/24

prejudice [4]  6/9 9/18 21/21 24/16
prejudiced [2]  28/22 39/14
prejudicial [2]  30/9 38/2
present [3]  3/12 8/14 33/17
presented [1]  41/13
president [2]  8/22 12/19
presume [1]  28/15
pretty [1]  36/3
principles [2]  4/20 5/11
Prinston [2]  2/5 2/9
prior [1]  20/4
privilege [1]  14/25 15/7
probably [1]  26/8
problem [3]  8/2 26/10 39/2
problematic [1]  30/9
problems [1]  28/11
Procedure [1]  30/25
proceed [2]  4/17 40/15
proceedings [4]  1/23 4/1 42/7 42/11
process [10]  6/8 10/15 10/15 10/17 10/21 10/21 10/22 23/11 38/1 40/25
procurement [2]  7/25 17/8
procuring [1]  24/20
produce [1]  39/1
produced [8]  1/24 10/3 14/16 15/8 17/4 35/9 35/11 35/20
product [3]  6/24 14/6 29/23
production [1]  6/19
productions [1]  5/6
PRODUCTS [1]  1/4
proffer [2]  7/10 28/12
proffered [3]  8/4 9/14 18/18
proffering [1]  17/1
profit [1]  5/9
projects [1]  13/4
promise [1]  41/18
promotion [2]  12/23 13/3
prompt [3]  40/18 41/14 41/18
proof [2]  38/18 39/13
provided [1]  20/24
proxy [1]  7/4
purpose [1]  19/14
pursued [1]  18/24
put [5]  9/13 23/5 25/3 25/9 33/13

**Q**

Qiangming [1]  29/11
quenching [2]  29/21 35/13
question [8]  7/19 12/3 23/22 24/8 30/11 30/19 30/23 40/4
questioned [1]  33/19
questioner [1]  12/3
questioning [1]  22/18

**Q**

**questions [4]** 12/6 29/6 30/11 32/11
**quickly [3]** 40/8 41/19 41/20
**quote [1]** 37/16

**R**

**raised [1]** 40/22
**ran [2]** 29/17 30/5
**RASPANTI [1]** 2/14
**rather [2]** 37/14 40/12
**raw [1]** 15/16
**RDR [1]** 42/14
**RDR-RMR-CRR-CRC [1]** 42/14
**RE [1]** 1/3
**reach [1]** 33/8
**reaction [1]** 8/5
**reading [1]** 8/3
**ready [1]** 4/17
**real [1]** 39/2
**really [11]** 5/3 5/10 6/13 7/15 7/17 11/5 11/10 12/22 15/11 15/16 26/22
**reason [16]** 9/14 10/11 11/24 25/16 25/20 26/15 27/21 28/2 28/21 34/11
**reasons [1]** 23/5
**reassure [1]** 26/7
**recall [17]** 7/12 8/5 8/6 9/11 10/5 10/5 14/2 14/2 16/14 17/14 17/19 24/20 36/8 36/9 37/19 38/24 39/7
**received [2]** 13/3 27/25
**recollection [1]** 22/11
**reconsider [1]** 11/21
**record [4]** 4/13 5/1 25/6 42/11
**recorded [1]** 1/23
**records [3]** 38/21 39/18 40/5
**REEFER [1]** 2/15
**regarding [1]** 4/21
**regulators [1]** 8/3
**regulatory [16]** 6/25 7/9 7/11 7/12 7/24 8/2 8/5 8/8 8/11 10/25 10/25 11/2 17/4 17/14 17/14 17/17
**relate [1]** 13/5
**related [4]** 7/11 11/2 12/11 17/13
**relevance [3]** 7/16 14/17 15/10
**relevant [13]** 6/21 7/21 12/12 16/19 20/3 22/13 24/18 27/10 27/22 27/23 30/4 35/9 35/14
**remember [2]** 15/1 27/8
**remembered [1]** 25/13
**remote [1]** 4/1
**Reporter [2]** 1/21 42/15
**REPORTER'S [1]** 42/8
**Reporter/Transcriber [1]** 42/15
**reports [1]** 17/16

**represent [1]** 35/11
**representation [1]** 13/14
**representations [5]** 17/10 17/24 20/4 22/11 23/24
**represented [5]** 18/16 18/17 22/2 22/12 23/18
**request [1]** 4/14
**require [1]** 41/1
**required [6]** 11/12 27/9 31/17 35/2 35/8 39/5
**reset [1]** 16/2
**resonate [1]** 16/8
**respectfully [1]** 38/9
**respond [1]** 38/14
**response [3]** 34/25 38/14 39/22
**responsibilities [4]** 7/1 7/9 7/24 17/4
**resume [1]** 26/8
**RET [3]** 1/11 3/14 4/2
**Retailer [1]** 2/23
**retention [4]** 38/21 39/4 39/18 40/6
**reversed [1]** 38/8
**right [28]** 4/13 10/9 10/20 10/21 10/22 11/9 17/7 18/25 19/7 20/6 21/8 21/9 23/9 25/11 27/5 27/6 27/11 30/6 30/13 30/19 31/20 33/16 33/17 33/21 36/22 40/16 41/15 41/24
**RMB [1]** 1/4
**RMR [1]** 42/14
**Road [1]** 2/18
**Robert [1]** 3/14
**role [6]** 12/14 12/16 12/19 13/9 18/13 24/22
**roles [2]** 13/21 35/3
**ROSE [2]** 2/7 3/8
**Roseland [1]** 1/19
**Ross [1]** 3/9
**rotten [1]** 15/20
**RUBEN [1]** 1/14
**Rule [5]** 25/15 30/24 31/16 40/22 40/23
**rules [8]** 20/7 20/12 20/19 20/25 21/16 30/24 41/1 41/1
**ruling [7]** 9/16 11/21 40/18 40/19 41/14 41/14 41/18
**running [1]** 24/21
**runs [1]** 20/14

**S**

**safety [1]** 8/9
**said [41]** 6/19 6/23 6/25 8/16 9/2 10/24 15/1 15/5 15/24 16/13 16/24 17/4 17/6 17/11 18/1 18/22 19/1 19/12 19/16 21/25 24/17 24/22 25/14 25/20 25/22 28/2 29/19 31/11 35/5 34/5 34/8 34/16 34/19 34/22 35/6 36/16 37/9 37/16 37/20 38/4 40/5
**sale [3]** 6/24 7/8 8/10
**sales [2]** 7/14 14/8
**sanction [3]** 11/20 11/22 40/24
**sanctions [6]** 11/7 11/7 11/21 25/14 26/23 26/23
**sat [2]** 12/10 32/22
**saw [4]** 8/19 12/15 34/2 38/20
**say [40]** 5/2 6/17 7/11 7/16 10/17 10/20 11/1 11/16 15/25 16/9 16/20 16/24 18/6 18/15 18/16 18/18 18/19 18/21 21/5 21/21 21/25 22/1 22/4 23/24 24/6 25/6 26/23 27/18 28/18 30/12 30/18 32/16 33/1 33/9 34/17 34/18 36/5 39/18 40/4 41/15
**saying [10]** 10/2 17/25 18/3 20/2 20/3 22/1 22/4 22/6 24/23 41/3
**says [8]** 11/11 11/13 11/17 14/15 19/22 28/17 34/22 36/16
**scarce [1]** 9/5
**scheduled [1]** 5/15
**scheduling [1]** 5/18
**scope [4]** 16/25 18/21 20/11 20/19
**scrubbed [2]** 38/22 39/1
**search [2]** 35/12 35/13
**secondly [1]** 26/11
**seconds [1]** 26/4
**secret [1]** 26/14
**secretarial [1]** 13/23
**see [1]** 39/20
**seeing [1]** 29/20
**seem [2]** 28/2 28/5
**seemed [1]** 36/3
**seems [1]** 37/12
**seen [6]** 9/1 12/2 26/13 29/22 37/20 39/4
**semantics [1]** 23/6
**sending [1]** 24/21
**sense [2]** 5/2 24/24
**sent [1]** 28/14
**series [1]** 14/12
**set [1]** 4/14
**she [87]**
**she's [25]** 6/21 7/16 7/18 8/4 8/22 13/3 14/6 14/25 16/15 16/18 18/4 18/8 18/15 18/18 19/13 19/16 19/17 19/17 19/23 19/24 21/17 21/25 22/4 24/23 26/21
**ship [1]** 20/15
**should [8]** 9/14 11/14 11/16 22/7 24/3 24/4 36/17 40/15
**shouldn't [6]** 6/5 11/2 19/1 19/2 23/25 35/5
**show [3]** 4/24 29/22 38/19

**SAK [1]** 1/4
**sale [3]** 6/24 7/8 8/10
**sales [2]** 7/14 14/8
**sanction [3]** 11/20 11/22 40/24
**sanctions [6]** 11/7 11/7 11/21 25/14 26/23 26/23
**sat [2]** 12/10 32/22
**saw [4]** 8/19 12/15 34/2 38/20
**say [40]** 5/2 6/17 7/11 7/16 10/17 10/20 11/1 11/16 15/25 16/9 16/20 16/24 18/6 18/15 18/16 18/18 18/19 18/21 21/5 21/21 21/25 22/1 22/4 23/24 24/6 25/6 26/23 27/18 28/18 30/12 30/18 32/16 33/1 33/9 34/17 34/18 36/5 39/18 40/4 41/15
**showed [1]** 34/13
**showing [1]** 30/1
**shown [2]** 35/12 37/19
**shows [1]** 37/10
**sided [1]** 32/17
**similar [1]** 13/19
**simply [3]** 22/13 22/16 41/8
**since [2]** 13/5 33/12
**single [2]** 21/3 31/24
**sit [1]** 26/18
**sits [1]** 19/22
**situation [4]** 23/5 25/9 30/10 33/2
**size [1]** 15/12
**SKADDEN [6]** 2/2 2/6 13/13 15/25 20/2 20/23
**slate [3]** 2/2 2/6 8/15
**SLATER [27]** 1/17 1/17 4/11 4/17 9/23 10/2 10/8 10/10 10/19 10/23 11/7 11/20 12/1 12/4 19/12 19/22 20/9 20/25 26/8 32/2 33/5 33/19 37/2 37/9 37/15 39/23 40/9
**Slater's [2]** 20/18 32/25
**sleep [1]** 18/23
**slipped [1]** 35/20
**smell [1]** 24/24
**Smith [3]** 3/14 16/22 16/22
**SMO [1]** 11/9
**so [67]**
**sodium [1]** 29/21
**soften [1]** 18/19
**Solco [2]** 2/5 2/9
**some [6]** 12/16 12/17 13/4 15/6 27/15 29/23
**somebody [2]** 23/23 32/12 37/21
**somehow [5]** 11/1 20/3 20/10 23/11 41/9
**someone [1]** 32/11
**something [19]** 9/15 10/15 13/9 15/2 15/5 15/19 15/23 18/4 18/7 19/4 20/16 21/20 24/25 26/14 33/6 34/5 38/3 38/21 39/20
**sometimes [1]** 22/15
**sorry [1]** 40/9
**sort [2]** 32/18 32/19
**South [1]** 2/22
**speaking [3]** 7/13 28/1 28/8
**special [3]** 1/11 4/2 38/25
**specific [2]** 29/25 30/5
**specifically [1]** 7/13
**speculation [5]** 26/13 37/3 37/11 37/14 40/10
**spoke [2]** 7/17 27/24
**staff [8]** 6/21 8/21 9/2 12/13 12/17 13/19 13/20 18/14
**stand [1]** 9/19
**standards [1]** 11/23
**start [5]** 4/19 5/11 6/15

**21/11 23/13**
**started [2]** 28/25 38/18
**starting [1]** 27/7
**statement [1]** 31/9
**STATES [3]** 1/1 21/17 24/13
**stayed [1]** 11/23
**stenography [1]** 1/23
**Steps [1]** 8/9
**STEVEN [1]** 2/18
**still [5]** 15/9 18/7 21/2 24/16 36/9
**story [1]** 15/17
**strategic [2]** 19/19 32/7
**strategically [1]** 33/16
**strategy [3]** 27/19 27/20 33/4
**Street [4]** 1/15 2/22 3/3 3/6
**Streets [1]** 1/8
**stronger [1]** 32/8
**subject [2]** 28/8 35/2
**subjects [1]** 31/2
**submit [1]** 38/9
**substantially [2]** 4/24 38/19
**substantive [3]** 12/14 12/17 13/21
**substitute [1]** 24/14
**succinct [1]** 39/23
**such [2]** 39/20 40/7
**sudden [4]** 7/23 8/12 8/18 18/6
**suddenly [2]** 18/4 23/20
**sufficient [1]** 6/14
**suggest [1]** 39/23
**suggested [1]** 33/6
**suggestion [1]** 41/10
**Suite [6]** 1/15 1/18 2/18 3/3 3/6 3/9
**Suites [1]** 2/3
**support [1]** 11/25
**suppose [1]** 28/21
**supposed [2]** 35/9 35/19
**sure [9]** 7/15 9/1 13/7 13/15 16/10 27/16 31/10 35/9 38/7
**surprise [1]** 37/21
**surprised [3]** 12/15 35/23 35/24
**surrounding [1]** 41/6
**suspect [1]** 41/7
**suspense [1]** 5/17

**T**

**take [24]** 5/16 5/18 5/20 5/24 6/5 6/10 7/20 8/17 18/2 18/5 19/2 21/2 21/9 21/11 21/13 21/18 22/19 22/23 23/23 29/3 34/12 34/16 36/14 36/19 42/5
**taken [1]** 8/9
**taking [6]** 5/21 18/2 19/21 22/9 22/17 24/8
**talk [16]** 7/24 8/4 8/12 8/15 9/7 13/9 15/23 16/4 18/8 18/9 19/14 19/23

**T**

talk... **[4]** 19/24 25/4 28/12 28/22
talked **[2]** 14/8 36/21
talking **[1]** 14/14
talks **[1]** 19/13
tangentially **[1]** 11/2
team **[1]** 9/11
TEAMS **[2]** 1/5 4/1
tell **[7]** 9/1 13/12 13/17 13/18 15/16 29/7 37/22
telling **[2]** 19/11 37/4
term **[1]** 41/7
terms **[4]** 5/5 23/23 35/13 41/17
test **[3]** 7/25 17/8 24/24
testified **[1]** 34/25
testifies **[2]** 10/12 12/5
testify **[24]** 9/12 9/15 9/19 10/3 14/5 14/7 16/15 16/16 19/1 20/10 20/16 21/16 23/8 23/15 23/17 24/11 24/13 24/23 25/19 25/23 28/4 37/24 38/11 40/14
testifying **[5]** 4/15 6/4 18/20 20/18 34/11
testimony **[16]** 9/17 19/3 21/19 22/25 23/10 24/14 28/6 28/7 28/10 28/19 29/8 29/11 30/14 34/15 34/21 37/17
testing **[13]** 6/24 7/7 7/13 8/1 8/10 14/8 17/7 17/8 17/9 17/10 24/22 24/23 30/6
Teva **[4]** 2/19 2/20 2/20 7/17
Texas **[1]** 3/10
Thank **[12]** 4/18 19/9 19/9 21/8 27/5 33/23 36/22 36/25 38/17 41/25 42/2 42/3
Thanks **[2]** 4/9 41/23
them **[9]** 5/3 6/4 15/18 20/5 21/10 24/10 24/16 28/9 40/7
theories **[2]** 37/1 37/3
therefore **[1]** 37/17
these **[13]** 6/2 6/6 6/17 8/2 13/25 17/6 17/11 17/20 17/21 17/21 18/3 29/6 34/10
they'll **[1]** 20/9
they're **[9]** 16/7 17/1 24/23 25/3 28/17 29/20 32/14 35/9 40/14
they've **[5]** 14/15 25/5 25/5 38/24 39/3
thing **[4]** 19/1 36/6 38/12 38/15
things **[15]** 6/19 8/12 8/16 12/2 14/7 15/4 17/6 17/20 18/16 18/18 24/20 25/23 34/2 38/4 38/20
think **[53]**
thinks **[3]** 10/11 10/19

12/1
this **[82]**
THOMAS **[2]** 1/11 4/2
THORNBURG **[2]** 2/21
thoroughly **[1]** 28/20
though **[1]** 19/13
thought **[4]** 16/10 30/13 37/15 38/4
three **[2]** 7/8 8/16
through **[7]** 6/11 7/10 12/10 15/4 17/13 35/8 35/20
throughout **[1]** 16/3
thrown **[1]** 39/20
tied **[2]** 25/1 29/5
tight **[1]** 20/15
time **[16]** 4/14 6/3 9/9 13/8 14/3 15/21 15/22 22/8 23/12 23/13 25/10 27/15 28/14 30/4 30/8 40/25
timely **[3]** 4/22 31/3 41/2
times **[2]** 15/24 32/21
title **[3]** 8/18 8/25 12/16
today **[3]** 11/20 23/1 41/24
together **[1]** 9/13
told **[12]** 7/8 7/20 11/18 13/17 14/19 15/17 17/20 20/2 28/12 31/5 33/10 34/1
tomorrow **[1]** 21/3
too **[5]** 10/16 10/21 18/17 26/13 33/17
took **[4]** 13/13 25/24 34/9 35/1
Torrent **[4]** 2/13 2/13 2/13 7/17
Transcriber **[1]** 42/15
transcript **[1]** 1/23 41/12 41/20 42/10
transcription **[1]** 1/24
translation **[1]** 28/20
TRAURIG **[1]** 2/17
trial **[48]**
trials **[1]** 40/13
tried **[2]** 17/3 19/12
troubling **[1]** 37/6
try **[9]** 5/23 9/15 9/16 9/24 18/19 20/10 28/17 37/13 40/11
trying **[1]** 16/24
tumbled **[1]** 41/9
turn **[1]** 6/18
turns **[1]** 29/24
TV **[1]** 37/10
two **[12]** 6/11 12/23 13/3 26/5 26/6 36/23 38/4 38/5 38/24 39/6 39/6 39/7
type **[1]** 29/13

**U**

U.S **[9]** 1/8 2/5 2/5 2/9 2/9 24/5 26/10 30/15 36/2
ULMER **[1]** 3/2
ultimate **[3]** 8/13 8/13 9/25

ultimately **[2]** 5/7 6/9
unavailability **[1]** 5/23
unbelievable **[1]** 25/9
under **[3]** 7/10 8/1 39/9
understand **[12]** 7/18 8/11 12/20 18/7 19/13 22/1 24/20 26/20 31/14 31/15 35/10 40/16
understanding **[1]** 35/19
understood **[1]** 20/1
unfair **[5]** 23/4 23/15 23/17 23/20 25/12
unfavorable **[1]** 11/13
unfortunate **[1]** 14/12
unique **[2]** 10/6 10/9
UNITED **[3]** 1/1 21/17 24/13
universe **[1]** 15/10
unknown **[2]** 29/14 30/6
unless **[1]** 9/15
unpack **[1]** 15/15
unprecedented **[1]** 32/4
unreasonable **[1]** 24/15
unrelated **[1]** 13/10
until **[2]** 23/1 27/11
up **[4]** 5/7 14/25 30/12 35/14
upheaval **[1]** 13/25
upon **[1]** 22/10
us **[21]** 3/8 5/22 6/5 7/20 9/1 15/25 19/18 22/6 23/4 25/12 25/18 25/19 28/6 30/3 34/1 34/2 34/11 34/13 35/10 35/11 36/17
USA **[1]** 2/20
use **[6]** 5/23 9/24 10/14 10/14 24/7 41/7
used **[7]** 9/23 13/20 29/13 31/23 35/7 35/23 36/17
using **[2]** 29/12 30/5

**V**

valsartan **[8]** 1/3 8/9 10/6 13/24 29/14 29/21 30/7 35/13
VANASKIE **[3]** 1/11 4/2 26/17
very **[31]** 4/18 11/19 11/22 11/24 12/2 13/19 14/1 14/3 14/11 15/21 15/21 16/13 18/12 19/11 20/14 20/14 20/17 20/17 25/12 25/12 27/13 30/9 30/9 32/20 33/14 34/21 38/4 39/22 41/5 41/25 42/2
via **[2]** 1/5 4/1
vice **[2]** 8/22 12/19
videoconferencing **[2]** 1/6 4/1
view **[1]** 31/14
Vine **[1]** 3/3
violation **[3]** 10/16 38/1 40/23
violations **[1]** 36/10

**W**

Walgreens **[1]** 2/24
walk **[1]** 6/11
Walmart **[1]** 2/24
want **[47]**
wanted **[3]** 16/9 18/19 33/12
wanting **[2]** 12/5 37/25
wants **[4]** 7/24 9/7 10/8 18/21
warning **[1]** 36/10
Washington **[1]** 2/8
wasn't **[10]** 9/10 9/10 9/23 12/16 12/25 16/10 20/5 23/3 27/10 27/11
watched **[1]** 37/10
way **[2]** 13/22 35/22
ways **[1]** 10/8
we'll **[4]** 4/13 4/17 24/7 30/12
we've **[4]** 23/5 25/23 29/22 39/4
week **[1]** 21/19
weeks **[1]** 18/24
weird **[1]** 31/9
weren't **[3]** 32/13 34/16 35/2
West **[1]** 2/3
whatever **[8]** 8/23 10/11 14/20 16/3 18/13 18/20 32/11 34/17
while **[1]** 22/11
who's **[2]** 9/12 20/23
whole **[1]** 36/13
Wholesaler **[1]** 3/4
whom **[2]** 29/3 33/15
why **[25]** 5/16 6/12 7/14 7/19 9/14 18/1 18/5 21/9 22/6 22/19 25/14 26/15 27/19 29/19 29/22 30/11 31/5 32/9 34/6 35/1 35/20 35/21 35/22 38/25 40/22
will **[12]** 7/1 9/1 11/18 20/8 21/6 21/7 26/16 37/19 38/9 41/3 41/14 41/16
within **[8]** 7/14 16/25 18/21 21/19 35/4 36/12 36/20 39/5
without **[1]** 36/11
witness **[39]** 6/15 6/17 8/14 16/12 16/15 16/16 16/18 17/17 18/11 19/15 20/16 22/19 23/10 24/6 24/7 24/8 24/11 24/12 25/2 25/10 25/17 25/21 25/23 27/11 27/23 27/24 28/3 28/8 28/17 28/18 29/3 29/9 30/13 34/10 34/12 34/14 34/20 34/23 36/16
witnesses **[21]** 6/2 6/6 6/7 6/12 9/17 10/18 11/17 17/18 17/22 20/8 20/9 23/12 25/17 26/24 33/10 34/1 34/23 36/21 38/23 40/13 40/24

won't **[1]** 10/11
word **[5]** 9/23 9/24 10/14 10/14 10/25
words **[2]** 10/5 11/10
work **[2]** 13/20 26/20
worked **[2]** 26/9 28/24
working **[1]** 13/4
works **[1]** 40/1
wouldn't **[2]** 17/25 28/16
write **[2]** 19/12 32/10
writing **[3]** 28/13 40/19 41/15
written **[4]** 29/5 29/10 39/7 39/8
wrong **[1]** 28/18
wrote **[11]** 32/9 32/12 32/24 33/3 33/19 34/24 35/3 36/9 37/23 39/2 39/16

**Y**

Yeah **[4]** 15/3 16/7 22/9 26/3
years **[7]** 7/8 8/16 28/24 38/24 39/6 39/6 39/7
Yes **[6]** 13/2 30/21 33/25 38/16 38/16 41/22
yet **[2]** 29/25 30/7
York **[5]** 2/4 2/4 2/7 2/12 2/12
you **[89]**
you've **[1]** 26/13
yourself **[1]** 22/22

**Z**

Zhejiang **[2]** 2/4 2/8
ZHP **[35]** 2/5 2/9 4/21 4/23 5/2 5/21 6/16 10/7 10/9 11/13 11/16 13/14 16/3 16/4 20/8 26/24 27/9 27/22 28/7 31/21 32/14 32/18 32/19 32/23 33/6 33/9 33/13 35/6 35/7 35/11 35/16 35/23 36/15 37/6 38/18
ZHP's **[1]** 8/5
Zoom **[1]** 24/6