```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
 2     _____

 3     IN RE:  VALSARTAN, LOSARTAN,        CIVIL ACTION NUMBER:

 4     and IRBESARTAN PRODUCTS             1:19-md-02875-RMB-SAK

 5     LIABILITY LITIGATION                Case Management Conference

 6                                         via Teams videoconferencing

 7     _____

       Mitchell H. Cohen Building & U.S. Courthouse
 8     4th and Cooper Streets
       Camden, New Jersey 08101
 9     Tuesday, October 22, 2024
       Commencing at 1:00 p.m.
10
       B E F O R E:         THE HONORABLE THOMAS I. VANASKIE (RET.),
11                          SPECIAL MASTER

12

13     A P P E A R A N C E S:  (via Teams videoconferencing)

14     HONIK LLC
       BY:  RUBEN HONIK, ESQUIRE
15     1515 Market Street, Suite 1100
       Philadelphia, Pennsylvania 19102
16     Co-Lead Counsel for MDL Plaintiffs

17     MAZIE SLATER KATZ & FREEMAN, LLC
       BY:  ADAM M. SLATER, ESQUIRE
18     103 Eisenhower Parkway, Suite 207
       Roseland, New Jersey 07068
19     Co-Lead Counsel for MDL Plaintiffs

20     KANNER & WHITELEY, LLC
       BY:  CONLEE S. WHITELEY, ESQUIRE
21     701 Camp Street
       New Orleans, Louisiana 70130
22     Co-Lead Class Counsel for Third-Party Payor Economic Loss

23              John J. Kurz, Official Court Reporter
                     John_Kurz@njd.uscourts.gov
24                        (856)576-7094

25        Proceedings recorded by mechanical stenography; transcript
                produced by computer-aided transcription.
```

2

1   **A P P E A R A N C E S:** (Continued)

2   NIGH GOLDENBERG RASO & VAUGHN, PLLC
    BY:  DANIEL A. NIGH, ESQUIRE
3        C. BRETT VAUGHN, ESQUIRE
    14 Ridge Square NW, Third Floor
4   Washington, D.C. 20016
    Co-Lead Class Counsel for Third-Party Payor Economic Loss
5
    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
6   BY:  JESSICA DAVIDSON, ESQUIRE
    One Manhattan West, Suites 42-128
7   New York, New York 10001
    Counsel for Defendants Zhejiang Huahai Pharmaceutical Co.,
8   Ltd., Huahai U.S., Inc., Prinston Pharmaceutical, Inc., and
    Solco Healthcare U.S., LLC (collectively ZHP)
9
    KIRKLAND & ELLIS LLP
10  BY:  ALEXIA R. BRANCATO, ESQUIRE
    601 Lexington Avenue
11  New York, New York 10022
    Counsel for Defendants Torrent Pharma, Inc. and
12  Torrent Pharmaceuticals Ltd. (collectively Torrent)

13  PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
    BY:  FRANK STOY, ESQUIRE
14       JASON M. REEFER, ESQUIRE
    One Oxford Centre, 38th Floor
15  Pittsburgh, Pennsylvania 15219
    Counsel for Defendant Mylan Pharmaceuticals, Inc.
16
    GREENBERG TRAURIG LLP
17  BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
         STEVEN M. HARKINS, ESQUIRE
18  3333 Piedmont Road, NE, Suite 2500
    Atlanta, Georgia 30305
19  Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
    Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
20  Inc. (collectively Teva)

21  GREENBERG TRAURIG LLP
    BY:  GREGORY E. OSTFELD, ESQUIRE
22  77 West Wacker Drive, Suite 3100
    Chicago, Illinois 60601
23  Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
    Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
24  Inc. (collectively Teva)

25           (Appearances continued onto next page)

**A P P E A R A N C E S:** (Continued)

CROWELL & MORING LLP
BY:  ANDREW KAPLAN, ESQUIRE
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Counsel for Defendant Cardinal Health

BARNES & THORNBURG, LLP
BY:  KARA KAPKE, ESQUIRE
11 South Meridian Street
Indianapolis, IN 46204
Counsel for Retailer Defendants and CVS Pharmacy, Inc., and
Walmart, Walgreens

FALKENBERG IVES LLP
BY:  KIRSTIN B. IVES, ESQUIRE
230 W Monroe Street, Suite 2220
Chicago, Illinois 60606
Counsel for Defendant Humana

NORTON ROSE FULBRIGHT US LLP
BY:  D'LESLI DAVIS, ESQUIRE
2200 Ross Avenue
Suite 3600
Dallas, Texas 75201
Counsel for Defendant Mckesson Corp.

HUSCH BLACKWELL LLP
BY:  MATTHEW KNEPPER, ESQUIRE
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Counsel for Defendants Express Scripts, Inc.

**Also present:**

Larry MacStravic, The Courtroom Deputy

Loretta Smith, Esquire, Judicial Law Clerk to the Honorable
Robert B. Kugler (Ret.)

Rosemarie Bogdan, Esquire, Plaintiffs

Michelle Grant

```
 1              (PROCEEDINGS held via Teams videoconferencing before

 2    the Honorable Thomas I. Vanaskie (Ret.), Special Master, at

 3    1:00 p.m. as follows:)

 4              THE COURT:  All right.  I see it's 1:00.  Who will be

 5    addressing the issues on the plaintiffs' part today?

 6              You're still muted, Daniel.

 7              MR. NIGH:  Thank you, Your Honor.  I'll be addressing

 8    some of them, Your Honor.

 9              THE COURT:  All right.

10              MR. NIGH:  And then Mr. Slater and then we have some

11    others that are addressing them as well.

12              THE COURT:  Okay.  All right.

13              MR. NIGH:  Adam says that it's forcing him to update

14    Teams.

15              THE COURT:  Okay.  We'll wait for Adam, yeah.

16              MR. NIGH:  Okay.

17              THE COURT:  Will there be one spokesperson for the

18    defense or multiple?

19              MS. DAVIDSON:  Sorry.  I think I was on mute.  I

20    think there will be multiple.  I think both Victoria and I will

21    be addressing different matters.

22              THE COURT:  Okay.  Very well.  Thank you.

23              (Pause.)

24              MR. NIGH:  I see that Adam is in the room.  I'm not

25    sure if it's -- if it is --
```

```
 1              THE COURT:  Is Teams updated yet, Adam?  Talk when
 2   you hear -- when you can.
 3              MR. NIGH:  Well, he says the whole thing is resetting
 4   for him right now.
 5              THE COURT:  All right.  Let's give it a few minutes
 6   then.
 7              MR. NIGH:  Okay.
 8              (Pause.)
 9              MR. NIGH:  Adam asked me to go ahead and start since
10   I'm handling the first issues.
11              THE COURT:  All right.  Then we shall.
12              MR. NIGH:  Very well.
13              THE COURT:  All right.  Thank you.  We're on the
14   record now.  Now is the time that's been set for a case
15   management conference to discuss the process of getting
16   bellwether personal injury cases to trial.  And so I appreciate
17   counsel responding comprehensively to the letter order that was
18   set out that identified topics I thought we should cover today.
19   I'll be happy to address any other topics that you would like.
20   But my hope is that at the end of the day, I'll be able to have
21   the outlines and then be able to prepare an order that sets
22   forth the next few steps in this matter up to bellwether
23   trials, trials of bellwether plaintiffs, personal injury cases.
24              I know the plaintiff has made some suggestion about
25   economic loss class action perhaps being able to proceed, and
```

```
 1    I'd like to talk about that as well, but the focus will be on
 2    the bellwether personal injury plaintiffs.
 3            And I wanted to start with the general question, and
 4    if you feel you can't answer this question, but my -- I don't
 5    know who now joined, but somebody did.
 6            But how soon you think -- I'll ask first of the
 7    plaintiffs and then of the defendants -- you will be ready for
 8    a personal injury bellwether trial?
 9            MR. NIGH:  Your Honor, I believe that based on the
10    proposal that we've set forward, that we would be prepared to
11    have a trial go forward late spring.
12            THE COURT:  Late spring, you mean like May?
13            MR. NIGH:  April or May, yes.
14            THE COURT:  April, May.  All right.
15            All right.  Let's hear from the defense now, too.
16            MS. DAVIDSON:  Well, Your Honor, I think we need to
17    take a step back because we need to work these cases up for
18    trial.  We need to identify experts, depose those experts.  We
19    need expert reports.  There's no specific-cause expert reports
20    in these cases.  I think it's a pipe dream that this can be
21    ready in the spring.  I think with very aggressive work-up, we
22    can be ready in the fall.  But a lot of this -- I think the
23    date of the first trial is also contingent on a lot of other
24    issues that I think we need to discuss in terms of trial pool
25    work-up.  And, you know, this being a bellwether system, right,
```

1   it doesn't, from our perspective, make sense just to pluck one

2   case.

3            I think what we envision is having a -- which is what

4   is typically done in MDL proceedings -- we envision following

5   that general approach, which would be a smaller bellwether pool

6   from the 28 cases, have all those cases worked up for *Daubert*

7   and for summary judgment and to make them trial ready so that

8   we actually are getting information, right?

9            The purpose of the bellwether process is to get as

10  much information as possible.  And I don't know if this is the

11  right time to talk about it, but having -- we looked -- we took

12  a look at plaintiffs' proposal last night and had some ideas

13  for a compromised approach that would enable us to have a trial

14  I think October, October 1.

15           THE COURT:  Okay.

16           MS. DAVIDSON:  And if you'd like, I don't want to put

17  the cart ahead of the horse, but I could explain to you sort of

18  our thinking and what we are proposing as a compromised

19  approach that would enable us to be trial ready October 1 while

20  also getting real information about the bellwether pool and not

21  just sort of one outlier case.  If you'd like me to proceed

22  with that now or if you would like to hear that later.

23           THE COURT:  Yeah.  I would like you to proceed with

24  that, and then we'll hear from the plaintiffs.

25           MS. DAVIDSON:  Okay.  So basically, Your Honor, we

1    were proposing a randomized approach, and plaintiffs proposed a

2    liver cancer trial followed by a multi-plaintiff colon cancer

3    trial.  And we took a look at it and tried to think about how

4    to go forward.  And our understanding of the 28 trial pool,

5    Your Honor, is that there is one case -- and Gaston Roberts I

6    believe is the name -- that has a primary liver cancer.  And so

7    we would be agreeable to have that Gaston Roberts case as a

8    first trial, as plaintiffs' choice, with the following caveats:

9        Number one, we think there needs to also be, at the

10   same time, six cases randomly selected from these 28 that are

11   worked up for trial so that we have general and specific cause

12   understood for multiple types of cancers, right?

13       Because the purpose of a bellwether process, as I

14   understand it, is to get a sense of the range of potential

15   values and, you know, what cases -- to get the most information

16   about the widest range of cases, let's put it that way, right?

17   That's the goal of the bellwether process.

18       So what we would propose is at the same time that the

19   Gaston Roberts case is worked up for an October 1 trial, the

20   parties would also work up six cases randomly selected from

21   this bellwether pool, they would all be, along with the Gaston

22   Roberts case, they would all be worked up with causation

23   experts, prepared for *Daubert* and summary judgment, so we get

24   the most information about the widest range of cases.  And then

25   because plaintiffs have chosen the first case, we would --

```
 1    defendants would be able to choose a second trial to take
 2    place, say, early January 2026, three months later, of a
 3    single-plaintiff case from that pool of six that were worked
 4    up.  To the extent cases remain post summary judgment, post
 5    Daubert, we would see what remains in that pool and select a
 6    case for a second trial, a single-plaintiff trial.
 7              So this way plaintiffs would get their preference of
 8    having the first trial be the liver -- the one liver cancer
 9    case in this pool, and we would at the same time be getting
10    that broader range of information and understanding about the
11    relative values of cases so that we are doing the most to
12    advance this MDL.
13              MR. NIGH:  Your Honor, can I respond?
14              THE COURT:  Yes.  Yes, please, Daniel.
15              MR. NIGH:  So first off, there are numerous -- the
16    idea of randomization is oftentimes how you get to the first
17    initial pool of cases.  That's what most MDLs have done at this
18    stage.  We didn't do it that way.  We had a different selection
19    process.  We're past the time of, you know, case law that's
20    been cited as to why randomization is helpful.
21              Now what we have here is we've got competing
22    proposals, randomization versus what we have shown, picking
23    based on specific factors that would allow the cases that go
24    first to trial to be more representative of the overall pool of
25    cases.
```

1        Because the problem with Jessica's proposal is that

2   it's possible that, for example, the randomization pulls a

3   lymphoma case or it's possible that it picks an esophageal

4   case, esophageal cancer case, and I'm going to explain why

5   that's important.  Because to the extent that a lymphoma case

6   is tried, I don't think that's going to be very representative

7   of the pool cases.  The reason for that is there's less than

8   3 percent of the cases in this MDL are lymphoma cases.

9   Esophageal, less than 4 percent of the cases in this MDL are

10  esophageal cases.  So using this randomized pick to somehow

11  work up the cases in this fashion I think is counterproductive.

12  That's part of the reason why defendants' proposal will take so

13  long to get to trial.

14        Under my proposal, the reason it gets to trial

15  quicker is we're focused on the ZHP API defendants.  We've

16  already done most of the work-up on those.  When we talk

17  about -- I do agree that there needs to be case-specific expert

18  reports that need to be done, but that's why we're staging it

19  to where we're doing it per cancer type.  Because depending on

20  the cancer, the specific causation expert reports are going to

21  be very specific to that cancer type.

22        You know, here the question is not did valsartan

23  cause cancer generally.  It's does valsartan cause an increased

24  risk or is it capable of causing colorectal cancer or liver

25  cancer?  And depending on the type of cancer changes the

1    epidemiological studies that you're relying upon.  It changes

2    even the type of experts that you're utilizing.

3            So that's why, you know, for example, obviously we

4    didn't get past the stage in the MDL for *Zantac*, but in

5    California state court in *Zantac*, Delaware state court,

6    Pennsylvania state court, they all proposed a bellwether

7    process that was per the cancer type.  They have cancers go

8    forward first, not this randomization and then you work up

9    everything in some hodgepodge.  If you actually stage them,

10   you're going to find that what you're doing is much more

11   representative of the pool of cases.

12           So, for example, we'd be trying a liver cancer case

13   first, because almost 20 percent of the cases in this

14   litigation are liver cancer cases.  Then we proposed a

15   multi-plaintiff trial to capture more plaintiffs because more

16   than half the pool of bellwether cases are colorectal cancer

17   cases, and approximately in the litigation 35 percent of the

18   cases are colorectal cancer cases.

19           So between those first two cases, you're guaranteed

20   that, in terms of cancer type, you would have more than half

21   the cases in the nation would be representative -- their cancer

22   type would be representative from those first two trials.

23           And also we think that those first two trials should

24   be limited to the API ZHP Defendants because we've done --

25   we've done most of the work-up for the liability expert

```
 1    reports.
 2              Once you start adding in this randomization and you
 3    bring in, you know, Aurobindo and you bring in Mylan, well, now
 4    there's a lot of work.  We have to come back.  We've got to go
 5    back.  We haven't done the liability expert reports on those.
 6    I'm not saying we put them completely to the side.  I think
 7    that that work-up can happen concurrently for a fall trial, or
 8    a winter trial.  But the first two trials would be ZHP API-only
 9    defendants.
10              THE COURT:  All right.
11              MS. DAVIDSON:  Your Honor.
12              THE COURT:  Go ahead, Jessica.
13              MS. DAVIDSON:  May I briefly respond?
14              THE COURT:  Yeah.
15              MS. DAVIDSON:  I think we need to ask a question as
16    to whether the purpose of the bellwether process is to learn as
17    much as we can about the case pool or whether the purpose of
18    the bellwether trial is for plaintiffs to try to game it to
19    maximize their likelihood of getting verdicts.
20              We all know the reason they want a multi-plaintiff
21    colorectal cancer case is because the epi on colorectal cancer
22    is extraordinarily weak, and so plaintiffs want to have a
23    multi-plaintiff trial to try to improve their chance of
24    success.  They want to have a liver trial first because they
25    think that will inure to their benefit.
```

1    What I'm proposing is something that won't inure to

2    any party's benefit.  It will inure to the benefit of advancing

3    this litigation and understanding what this pool is.

4        If plaintiffs don't think that they want to try

5    esophageal cancer cases and lymphoma cases, those cases should

6    be dismissed.  But the whole purpose and the reason courts --

7    MDL courts want to have a pool worked up and not just one case,

8    you know, plucked out that plaintiffs think oh, maybe we can

9    win this one, is because what is our goal here?  If our goal

10   here is to advance this MDL proceeding, we need information.

11   We need information.  And one randomly picked case by

12   plaintiffs that they think -- maybe this case they think they

13   have a better chance of winning doesn't give us the information

14   we need about the pool more generally.

15       So what I'm proposing is that we actually work up a

16   small group of cases.  This is what's done in every other MDL

17   I've been involved in.  You work up a small group of cases.

18   All of those cases will go to Judge Bumb for *Daubert* and

19   summary judgment.  So we can see what do we have here and

20   what's the value of these cases and hopefully be able to

21   finally, after all these years, move this MDL forward in a

22   productive way that can get us closer to resolving some of

23   this.

24       Victoria looks like she wants to say something as

25   well.

```
 1                THE COURT:  We'll hear from Victoria.

 2                MS. DAVIDSON:  You're on mute, Victoria.

 3                MS. LOCKARD:  Yeah.  I was not about to say anything,

 4     but I'm happy to address this.

 5                MS. DAVIDSON:  Oh.

 6                MS. LOCKARD:  The one thing I did make a note to

 7     comment on is with respect to the multi-plaintiff trials, Your

 8     Honor.  I mean, at this point, you know, absolutely we would

 9     request, if plaintiffs intend to proceed that way, that they

10     file a motion under Rule 42 and that the parties be allowed to

11     brief that.  Because it should be obvious from our papers that

12     the defendants as a whole oppose joint plaintiff trials for

13     numerous reasons.

14                And so certainly I don't think we're at the point

15     today where that should be an issue.  But we would ask to have

16     plaintiffs, if they intend to do that, they need to follow the

17     rules, they need to file their motion, and we would have an

18     opportunity to respond to it.

19                THE COURT:  Thank you.

20                MR. NIGH:  Your Honor, right now we're talking about

21     strategy, so we wouldn't necessarily need to file that motion

22     if the Court doesn't want to have multi plaintiffs.  But if the

23     Court does want to have multi -- is considering multi

24     plaintiffs, absolutely, we would file that motion.

25                This idea that colorectal cancer epi is extremely
```

weak is completely wrong.  But to that extent, if it was so extremely weak as the defendants posited, then why would they be so fearful of that being the second trial?  We think that's absurd.

There are numerous epidemiological studies that show statistically significant increased risk of colorectal cancer due to ingestion of NDMA.  So I think that's absurd.

But nonetheless, this idea that somehow we glean more information by working up numerous different cancer types, hodgepodge of different experts all at the same time is just wrong.  It's factually incorrect.  We can stage it by doing liver cancer first, colorectal cancer first, then we can go to some of those more rare cancers.  Probably stomach cancer would be the next best because that's the third most common.  But then you would go then from there, you'd work yourself down to esophageal and lymphoma.

But to think that all of them need to be worked up at the same time is just, you know, that's why these other state courts that posited the same question on these various different cancer types, that's why they staged it because they realized that working up, you know, at this point, to be clear, we're talking about at least three different specific -- likely three different specific causation expert reports per cancer type.  That would be on the plaintiffs' side.  And I wouldn't be surprised, because in this litigation we've seen the

1    defendants like to have even more experts than us.

2            So to the extent now, all of a sudden, we have six

3    different cancer types in this randomly selected pool, we would

4    be talking about potentially, if they had four on their side

5    and we have three on our side, that would be seven times six

6    different cancer types, 42 specific causation expert reports

7    that you'd be looking at.  That to me seems absurd at this

8    stage.  That's why we stage cancer type.  And so we can first

9    handle liver cancer, move on to colorectal cancer, move on to

10   stomach cancer.

11           And the other thing that we didn't talk about too is,

12   we think it's absolutely important that the first cases go as

13   opposed to randomization, which we have already advanced the

14   ball forward for the ZHP API defendants.  I'm not surprised the

15   ZHP API defendants are the ones that are speaking on the

16   randomization right now because it inures to their benefit to

17   slow things down, to have to come back to the Mylan and

18   Aurobindo API defendants and get their liability expert reports

19   worked up before we can advance the ball.

20           We've already advanced the ball past that point, and

21   so that's why the first trials can go in late spring because

22   we've already done all the liability expert reports.  If we --

23   if we now have to bring in Aurobindo and Mylan, we slow things

24   down.  It's even more expert reports that are going to be

25   needed because of that.  So that's why the staging is

1    important.

2              THE COURT:  Well, Jessica has suggested --

3              MS. DAVIDSON:  Your Honor, if I may.

4              THE COURT:  Let me just ask a question and then,

5    Jessica, you can certainly be heard.

6              But Jessica did suggest a specific case to be tried

7    first, and that's Gaston Roberts.  It's a liver cancer case.

8    It fits within the parameters that you've mentioned.

9              MR. NIGH:  It does.

10             THE COURT:  ZHP is the defendant in that, along with

11   Prinston, Solco and the pharmacy.  So it seems to me you've

12   reached agreement on one.

13             MR. NIGH:  We have.

14             THE COURT:  And now the question is what comes next.

15   And perhaps that's where we go to randomization.  Why can't we

16   reach agreement on the first trial, first case, and then I'll

17   make recommendations on what comes next and how many?

18             I'm not inclined to recommend that there be

19   multi-plaintiff trials.  I think they should be

20   single-plaintiff trials.  And I'd like to get a schedule in

21   place that gets cases to trial as quickly as makes sense.  So

22   that's what I was hoping to accomplish today.

23             I think we have, as I said, with all due respect, I

24   think you have agreement on what the first case should be, at

25   least an agreement between Jessica and you, Daniel, that the

```
 1    first trial should be Gaston Roberts.  After that we don't have

 2    agreement.  But do you disagree with that, Jessica?

 3              MS. DAVIDSON:  Well, Your Honor, I just want to

 4    say -- I don't disagree with that, first off.  But I do want to

 5    just add that Mr. Nigh said something about us being afraid of

 6    colorectal cases.  I do want to make clear that as a basic

 7    concept of statistics, since '12 about 50 percent, I believe,

 8    of these cases are colon cases, if we go randomly --

 9              MS. LOCKARD:  Of the bellwethers.

10              MS. DAVIDSON:  I'm sorry?

11              MS. LOCKARD:  Of the bellwethers, not of the entire

12    set.

13              THE COURT:  Of the 28.

14              MS. LOCKARD:  Right.

15              MS. DAVIDSON:  Of this bellwether pool, about

16    50 percent are colon cancer cases.  So if we were to randomly

17    select a pool of cases for work-up from here, 50 percent of

18    that pool on average would be colon cancer cases.  So I think

19    it's silly to say that we're somehow afraid of colon cancer

20    cases.  We're not.

21              What we want is desperately, after all these years of

22    waiting and this litigation lingering, we desperately want to

23    move things forward to have real knowledge about the value of

24    this bellwether pool as a whole.  And that's why I am like

25    emphatic in my efforts to urge the Court that we should be
```

| | |
|---|---|
| 1 | working up a pool of cases simultaneously with preparing this |
| 2 | case for trial so that we can get a fuller range of knowledge |
| 3 | about the value of these cases, about the science for all of |
| 4 | these cases, to understand what is the science behind the range |
| 5 | of matters here. |
| 6 | We have been in this litigation for years.  I've been |
| 7 | in this litigation for years and when I came to it, it had |
| 8 | already been going on for years, and we don't know anything |
| 9 | about this bellwether pool.  So we try one case and at the same |
| 10 | time we're not doing something to work up other cases, we'll |
| 11 | still have very little knowledge. |
| 12 | So, yes, I agree with you that we're in agreement on |
| 13 | the first trial, but I think that has to be a package that also |
| 14 | includes working up additional cases for *Daubert* and summary |
| 15 | judgment and to find a second case. |
| 16 | THE COURT:  Well, I agree, I agree with you. |
| 17 | MS. DAVIDSON:  Thank you for listening to me. |
| 18 | THE COURT:  I think I can agree and let you maybe |
| 19 | allay some concerns here that this will not be a one-case order |
| 20 | coming out.  We will work up multiple cases for trial.  I'd |
| 21 | like to get some understanding of the number that you want to |
| 22 | have worked up for trial. |
| 23 | And I think I can also say with some certainty now |
| 24 | that one of the cases will be the Gaston Roberts case.  Beyond |
| 25 | that, I can't say what the other cases would be. |

1       But how many cases are you looking, Jessica, to have
2  worked up?
3       MS. DAVIDSON:  I thought that six was a reasonable
4  number.  As you know, Your Honor, from other MDLs, cases get
5  dismissed, things happen.
6       THE COURT:  They do.
7       MS. DAVIDSON:  So if you have anything less than six,
8  you don't -- you could end up with nothing to try.
9       THE COURT:  And, Daniel, you want how many worked up?
10 Or none?
11      MR. NIGH:  No; I think six is a fair number.  But I
12 think they should be -- we should be working up in stages.  So
13 by that I mean the second -- because you just heard 50 percent
14 of the cases are colorectal cancer in the bellwether pool.
15 That should be second.  That should be the next one that's
16 worked up.
17      The problem that you've just heard and, you know,
18 Jessica just said statistics, well, if we randomly select six,
19 what we're going to likely get from this pool:  Three
20 colorectal cancer cases, one of a second type of cancer, one of
21 a third type of cancer, and one of a fourth type of cancer.
22      THE COURT:  Understood.
23      MR. NIGH:  You get four different cancer types.  And
24 if you look at the number of specific causation experts that
25 are going to be needed to address that, you're going to have a

1    ton of expert reports coming all at the same time.  And I think

2    it's going to cause chaos.  So I think that what makes more

3    sense is going to be -- would be do the liver cancer, then

4    proceed to the -- and then do the colorectal cancer, and then

5    you could proceed to some what would probably be the third most

6    number of cases like gastric cancer.  That would give you way

7    more information than what if the random pool includes lymphoma

8    and esophageal cancer that are going to give us very little

9    representation to the overall pool of cases.

10           THE COURT:  All right.  So what you're proposing,

11    Daniel, is that there be -- we have an agreement.  We have an

12    agreement on the liver case to take the bellwether trial.  You

13    want a colorectal and gastric did you say?

14           MR. NIGH:  You know, if we're going to have six cases

15    and we're going to work them up simultaneously, then I think

16    colorectal and then gastric is the next most common cancer, so

17    we could have that there.  I think it makes the most sense to

18    do liver, colorectal, gastric staged.  But if we're going to

19    work them up --

20           THE COURT:  What do you mean by "staged"?

21           MR. NIGH:  You would do the expert reports for the

22    liver cancer case, and we could probably do colorectal at the

23    same time.  So those would be the first two that would -- you

24    would do the expert reports, you'd do the briefing, you know,

25    you'd get rulings, and those would be the first two trials.

```
 1    And then in between, while those first two trials are going,

 2    you could also then be doing the expert reports for the gastric

 3    cancer case.  So it would be following up what's happened with

 4    those first cancer cases as opposed to doing them all at the

 5    same time.

 6            THE COURT:  Jessica, what's wrong with proceeding

 7    along those lines?

 8            MS. DAVIDSON:  I think that the best way to move this

 9    litigation forward hopefully toward some sort of light at the

10    end of the tunnel is to understand the case pool more

11    generally.  There are one, two, three -- there are four stomach

12    and two small intestine cases in here, and so we want to move

13    those forward at the same time.

14            I don't see why we wouldn't this many years in find

15    out is there science to support these cases and do they have

16    value.

17            Like, I don't understand what we're waiting for.

18    That's the thing.  What are we waiting for this late in the

19    litigation?  Why would we be waiting any longer?  Why not do

20    this?

21            MR. NIGH:  Your Honor, if I may respond to that

22    point.

23            THE COURT:  Yeah.

24            MR. NIGH:  This idea of understanding the case pool

25    more generally and then is there science to support it, Your
```

1    Honor, we've gone through general causation.  The general

2    causation has already happened for all these various cancer

3    types.  So this idea that we don't know the science behind it,

4    that's already occurred.  Those epi studies, those expert

5    reports, they're written up, we have all that science.  So now

6    you're just talking about specific causation for each expert

7    report.  There's no reason that can't be staged.

8            The other thing is, to understand the pool more

9    generally, we've taken the plaintiff's deposition of all these

10   cases.  We've taken the treater.  We've taken the prescriber.

11   There's lots of information that's already been in here.  So

12   the only information I haven't heard is verdicts that the

13   defendants don't know and specific causation expert reports

14   that they don't know.  No reason those can't be staged.

15           MS. DAVIDSON:  Again, Your Honor, I just don't know

16   what we're waiting for.  I think the more information we can

17   get about these cases, the better we are.  We're way behind any

18   where I've ever been in an MDL this many years in.  And I just

19   don't understand why plaintiffs who have asked over and over

20   and over again to move this litigation forward suddenly want to

21   move at a slower pace.  I've got nothing else.

22           MR. NIGH:  Your Honor, to be crystal clear, not

23   moving at a slower pace.  This is much more efficient.  It's

24   actually quicker.  That's my point.

25           THE COURT:  Yeah.

1          MR. NIGH:  If you move in stages methodically, it's

2   quicker than a hodgepodge of expert reports all at the same

3   time.  That moves slower.  That's why we're proposing a late

4   spring trial and they're proposing a late fall trial.

5          MS. DAVIDSON:  And, Your Honor, I just do want to say

6   one thing.

7          THE COURT:  Sure.

8          MS. DAVIDSON:  I think that October 1 is early fall,

9   not late fall.  I'm looking out my window, it's

10  October 15th[sic] and it's 80 degrees.  So I just want to be

11  clear that we're not proposing a late fall trial.

12         THE COURT:  Yeah.

13         MR. NIGH:  Noted.

14         THE COURT:  A five-month difference in where you're

15  at, but that's manageable.

16         MS. LOCKARD:  Your Honor, the only thing I would add

17  to this is, you know, when we picked these bellwether cases,

18  plaintiffs got to pick 15 and we got to pick 15.

19         THE COURT:  Right.

20         MS. LOCKARD:  The plaintiffs didn't limit their

21  selection of bellwethers to just colorectal and liver cases.

22  They included other cancer types as well.

23         THE COURT:  Right.

24         MS. DAVIDSON:  Right.

25         MS. LOCKARD:  And that formed the basis of the

1    bellwether pool, which we now should be selecting from.  So to

2    say, well, plaintiffs get to decide it's going to be -- and

3    putting the liver case aside because that's the ZHP, the first

4    case, but when you're talking about the second case to say,

5    well, plaintiffs get to pick the cancer, it's colorectal,

6    plaintiffs get to pick the defendants, it's going to be the ZHP

7    line of defendants, you know, essentially, the defendants are

8    left without any say-so in this process at all.

9            And if you -- you know, in our briefing and our

10   papers you saw there's a potential motion related to the NDEA

11   issue which may further narrow down some of these cases that

12   are available in the bellwether.

13           THE COURT:  Right.

14           MS. LOCKARD:  But essentially, we're being taken out

15   of the process.  And that's why we suggested a randomization.

16   We thought it was fair.

17           I mean, if we're not doing randomization, then it

18   should be some sort of procedure where each side picks three,

19   or, you know, we take turns picking or something to that

20   effect.  But just to say, well, you know, plaintiffs are going

21   to dictate the parameters within which these six cases are

22   chosen, that totally takes defendants out of it.

23           And I will say, you know, having -- certainly I

24   represent Teva and we are more than ready and prepared to go

25   try these cases, but there are defendants who are in this

1    litigation and they do want to get their cases worked up and

2    tried at some point.  And so to totally cut them out and to

3    focus all six or seven cases on Teva, Torrent and ZHP seems a

4    little bit askew when we do have other defendants who are

5    sitting there waiting for their cases to be worked up, tried

6    and resolved through the process.

7         MR. NIGH:  Your Honor, if I may, because I think

8    we're conflating two ideas.  This idea that -- we're conflating

9    the idea of weak cases or cases we may just want to dismiss

10   with the idea of staging for efficiencies.

11        So, yes, Victoria just pointed something out.  We

12   picked cancers that were not esophageal -- that were not just

13   colorectal or liver.  This proposal is not just because we see

14   them as the strongest cases.  It's not plaintiffs picking the

15   cancers.  This is the number of cases in the pool.  We're

16   trying to put forward a proposal that's the most representative

17   of the pool of cases out there in the litigation.

18        We did pick other cancers because we think there's

19   strengths in other cancers.  But staging is more efficient and

20   it would be more representative of the pool as we try those

21   cases.  I don't know that we necessarily need to have a verdict

22   on every single cancer type, but we should get verdicts on the

23   most common cancer types.

24        MS. LOCKARD:  Well, liver certainly is not among the

25   most common cancer types in all of the filings.

```
 1          MR. NIGH:  It's the second most common.  Liver,
 2    colorectal.  That's in our papers.  The next after that --
 3    liver cancer is almost 20 percent.  Colorectal is 35 percent,
 4    and after that all the rest of the cancers are less than
 5    10 percent.  So it's clearly the most common.  Those are the
 6    most two common cases.  Once you start going after colorectal
 7    and liver, you have a nosedive in terms of the percentages, and
 8    stomach cancer is right around 10 percent.
 9          MS. LOCKARD:  Well, we have different statistics
10    based on those, I can tell you.  And some of it depends on what
11    the plaintiffs put in their fact sheets, which isn't always a
12    hundred percent accurate, but I am not endorsing those.
13          MR. NIGH:  Your Honor, there can't be different
14    statistics to show that there's some other cancer type that's
15    the second most likely.  I don't care how you splice the
16    numbers or look at the data, there's no way you're going to
17    splice that data to where, all of a sudden, another cancer type
18    is the second most common.  It's not even close.
19          MS. DAVIDSON:  So just to be clear, Daniel, your
20    statistics are that 35 percent are liver and 20 percent are
21    colon?  That gets to 55 percent.  That means you just want to
22    put on ice 45 percent of this litigation, because that's --
23          MR. NIGH:  No, no, not ice.  Staged.
24          MS. DAVIDSON:  I'm sorry.  I wasn't finished.
25          MR. NIGH:  Okay.  Because you're using words that I'm
```

```
 1    not saying.  Staged, not on ice.  That was my point, conflating
 2    two issues.
 3              MS. DAVIDSON:  Right.  But we may as well.  We've got
 4    45 percent of the pool -- we have a bellwether process that the
 5    Special Master is about to enter that would basically ignore
 6    45 percent of the pool.  And my understanding is that, you
 7    know, Judge Bumb would like to get as much information as
 8    possible.  She's made that pretty clear as to what her goals
 9    are.  And getting information about that 45 percent of the pool
10    in the next, you know, within the next 10 to 12 months would be
11    very helpful.  And I believe she does have the energy and
12    inclination to rule on motions involving multiple types of
13    cancers, which will do the most to get us where we need to be
14    in this litigation.
15              MR. NIGH:  Your Honor, when we talk about
16    randomization, we have to talk about that in perspective,
17    because now she said we're ignoring 45 percent of the pool.  I
18    don't think that's exactly what's happening here.  We're
19    staging the first two cases and prioritizing 55 percent of the
20    pool.  We can come to the next ones thereafter.
21              But this idea that somehow randomization is going to
22    pick up the other 45 percent is just wrong, too.  We're going
23    to randomly pick three other cases and they're going to make up
24    something like 3 percent, 5 percent, 4 percent.  So you might
25    pick up another 12 percent out of that 45 percent.  That
```

```
 1  doesn't get you -- that's not a big difference between
 2  prioritizing the first two cancers and picking up 55 percent of
 3  the cancers in the first two trials.
 4          THE COURT:  Okay.  So we can continue to go round and
 5  round on this.
 6          The bottom line is, we will have Gaston Roberts as
 7  the first case -- as one of the cases at least to be worked on.
 8  I'm not saying the first trial.  I will pick five other cases
 9  on a randomized basis.  I'll use a randomizer, an online tool,
10  to identify five others from the 28.  Because we're only
11  talking about a pool of 28 cases, so it's not that large a
12  pool.  And those cases will be worked up for trial, specific
13  causation expert witnesses, whatever else needs to be done with
14  respect to readying those cases for trial.  And that's how
15  we'll proceed here, because I think we're spending a lot of
16  time arguing over matters that aren't going to have a
17  substantial impact here.
18          You're going to have six cases that will be, as I
19  said, I'll use an online randomizer, I'll pick the other five
20  cases.  You have one that you know and we'll get those worked
21  up for trial.
22          Time frame, well, I'm going to think about somewhere
23  between May 1st and October 1st, frankly.
24          I know, you know, Jessica, you feel strongly that you
25  need all that time to get ready for the first trial.  And,
```

1   Daniel, you don't think you need that much time to get ready,

2   and I happen to think it's somewhere in between the two.

3          And I think you can get a case ready within that time

4   frame, recognizing that there's going to be perhaps a

5   dispositive motion or motions with respect to the cases.  There

6   may be *Daubert* motions, recognizing that, and can't control the

7   timing of their disposition, but you can have a schedule for

8   getting them worked up so that they're ready for decision.  And

9   that's what my aim is going to be here in the next few hours.

10          So let's say you've got a determination from the

11   Special Master that there will be six cases worked up for

12   trial.  One will be, because there's no dispute on this one,

13   Gaston Roberts.  The other five I will randomly select using an

14   online randomizer.  So it will be completely random.  It may

15   include a colorectal case; it may not.  That's the point of

16   using a randomizer.

17          But we'll get the cases necessary for you to focus

18   on.  So we can get these cases and you can get the data, the

19   information you need for purposes of making all the difficult

20   judgments that have to be made in terms of settlement, for

21   example.  So that's how we're going to proceed with the

22   selection of the cases.

23          MR. NIGH:  Thank you, Your Honor.

24          MS. DAVIDSON:  Thank you, Your Honor.

25          Your Honor, I assume once you provide the trial date,

1    that you would like us to meet and confer on pretrial

2    scheduling up to that date?  Is that how you'd like us to do

3    it, or will you issue an order?

4            THE COURT:  I would like you to do it that way.  I

5    would like you to have to say, okay, Vanaskie has told us we

6    have to have the first case ready for trial by July 1st.  I'm

7    not saying that's the date, just hypothetical.  Then I'd like

8    you to propose the other dates that allow you to get that case

9    to trial by that date.

10           It's going to be a busy summer, I think, for you all.

11   That's all I'm trying to forecast here.  But it would be six

12   cases, and one of which will be the Gaston Roberts case.

13           Go ahead, Daniel.

14           MR. NIGH:  Your Honor, just for clarity, sorry, I

15   didn't mean to interrupt, but just for clarity, the Gaston

16   Roberts, as we agreed, would be the first case to trial.

17   Because the reason behind that is that in terms of staging and

18   how we're preparing the scheduling of getting it to trial, we

19   then don't have to have the liability expert reports for Mylan

20   and Aurobindo decided upon before that case goes to trial.

21           THE COURT:  Okay.

22           MR. NIGH:  Or, you know, it can be sometime

23   thereafter.  And we don't have deposition designations and all

24   the rest of that.  That can happen -- that's the reason why the

25   ZHP API-only defendant for the first trial.

1        THE COURT:  Well, Gaston Roberts will be the first

2   case to go to trial, all right.

3        MR. SLATER:  Your Honor, it's Adam Slater.  I finally

4   got in here by phone.  Sorry for the delay before.

5        THE COURT:  I'm glad you're able to join.

6        MR. SLATER:  I'm going to ask something, and I'm not

7   sure how everybody else feels about this.  When we have this

8   much time ahead of us, if possible to avoid having to try the

9   case in the summer next summer, I would ask Your Honor to try

10  to see if we can do it before or after.  I don't know how the

11  other lawyers feel about it.  I can tell you, I know, from my

12  perspective, things are already being planned for next summer.

13  I don't know where other people land on that.  I would like to

14  think there's plenty of time before the summer to get the case

15  tried, but just something to put in your mind on that.

16       THE COURT:  Well, what do you consider to be the

17  summer?

18       MR. SLATER:  July and August.

19       THE COURT:  Okay.

20       MS. DAVIDSON:  Your Honor, in that case, we -- as you

21  know, I mapped it out in my head for October.  But we could

22  also do a trial September.

23       MR. SLATER:  I'm not advocating for after the summer.

24  I'm just saying it's something to think about.  I don't know

25  how the other attorneys who are going to be involved in the

```
 1   trial feel about it.  I don't know what their availability is.
 2   It's just something to put out there.  If I have to cancel all
 3   my plans, then I probably will have to cancel all my plans.  I
 4   don't know what other people are doing with their summers, too.
 5             MS. DAVIDSON:  Your Honor, ZHP can proceed with a
 6   summer trial despite vacations.  But if Mr. Slater wants to
 7   save his July and August, I would request that we not get
 8   jammed as a result of that and that the trial be in September.
 9             MR. SLATER:  I don't think I'm suggesting to jam
10   anybody.  I can't imagine how this trial against ZHP can't be
11   prepared and done before the summer, considering all the
12   work-up we've already done as to them.  But obviously I'll
13   leave it to Your Honor's discretion what you do.  I just wanted
14   to make that point and move on from it.
15             MS. DAVIDSON:  Before you joined, Adam, Judge
16   Vanaskie made the comment that he thought there should be a
17   compromise of -- that May seemed early and October seemed late
18   so the compromise --
19             MR. SLATER:  No.  I was on the whole time.
20             MS. DAVIDSON:  Oh.
21             MR. SLATER:  I'm sorry.  I was on.  I heard it.  I
22   heard it all.  But thank you.
23             THE COURT:  Okay.  Well, maybe we come away from this
24   with one thing set and that the first trial will be in
25   September, probably around September 1st, or right after Labor
```

1 | Day.

2 |       MS. DAVIDSON:  Thank you, Your Honor.

3 |       THE COURT:  All right.  I will pick a date, but it

4 | will likely be September 2nd, all right.  And that will be for

5 | the Gaston Roberts matter.

6 |       And as I said, I will use an online randomizer to

7 | pick the next five cases to prepare for trial, to work up for

8 | trial.

9 |       *Lexecon* waivers.  I wasn't exactly sure what the

10 | defense position on the *Lexecon* waivers is.  So maybe somebody

11 | can articulate it better for me.

12 |       Anyone?

13 |       MR. STOY:  Sorry.  I was on mute.  For the record,

14 | good afternoon, Your Honor.  Frank Stoy on behalf of the Mylan

15 | defendants.

16 |       I'll speak briefly to this issue.  Our position

17 | generally, Your Honor, for those of us who have *Lexecon* rights

18 | to waive, which is not all the defendants, but is many, maybe

19 | even most, is that we're not in a position to do that today.

20 |       As Your Honor knows, once *Lexecon* is waived with

21 | respect to a specific case, you can't go back.  Once I think we

22 | as a defense group have an understanding of which five cases

23 | are selected to be the other cases that will be worked up in

24 | addition to the Roberts case, then I think we'll be in a

25 | position to evaluate *Lexecon* waivers further and provide more

1    information to the Court with regard to that.

2         But I would just say, for the record, just to be

3    completely clear, you know, any waivers that would be issued by

4    any defendant would be specific just to one of those cases and

5    would not apply more broadly to other cases that are

6    consolidated in the MDL proceeding.

7         THE COURT:  That much is understood, I believe.

8    There wouldn't be a waiver across the board.

9         Daniel, you disagree with that?

10        MR. NIGH:  Well, this kind of highlights the reason

11   why I thought the second prioritization should be -- the first

12   two trials would be ZHP API-only defendants and not include

13   Mylan or Aurobindo.  Because now what you're hearing is you're

14   going to randomize and then the defendants are going to decide

15   if they want to say the ones that are Mylan cases, they're

16   going to then be able to decide if they want to not waive

17   *Lexecon* for those cases.  So now they get to basically in some

18   way cherry-pick the cases that they don't like by saying

19   they're not going to waive the *Lexecon*.  That's the problem.

20   So we could have put that whole issue at bay by not including

21   Mylan or Aurobindo for the first two trials.

22        MR. STOY:  Your Honor, just if I may respond to that

23   just to make clear, it wouldn't be a cherry-picked situation.

24   It would be -- the cases would need to be remanded to some

25   other court to be tried.  That's the issue.  It's just where

1    the case would be tried, not if it would be tried.  And of

2    course plaintiffs have *Lexecon* rights as well that they would

3    have to -- you know, individual plaintiffs would have to waive.

4    So I think the only way to go about it really is to do it in

5    this incremental fashion that we've suggested.

6        THE COURT:  Yeah.

7        MR. NIGH:  Well, if I can continue, for the cases

8    that were ZHP API-only defendants, we wouldn't have that issue.

9    So, you know, in terms of the plaintiffs' side, we've spoken

10   with those counsel.  So I think that to that degree, you are

11   going to see some sort of selection here to the extent that the

12   Judge wants to try the case in front of her, if all the cases

13   that happen to be Mylan, and there's a decent number of them,

14   all the cases that happen to be Mylan are now going to somehow

15   be taken out of this priority pool that have to be remanded.

16       MR. STOY:  Your Honor, again, I think this is not

17   just -- counsel's framing this as, you know, a Mylan-specific

18   issue.  It's not.  Many of the cases, maybe even most of the

19   cases that involve ZHP API also involve wholesaler defendants

20   and pharmacy defendants, and those entities would also have

21   *Lexecon* rights.

22       So even if we just stuck to ZHP cases, it does not

23   necessarily get around this issue.

24       THE COURT:  Understood.

25       So I guess what I'm saying is that we'll get to the

1   *Lexecon* waiver issue on a case-by-case basis once we've

2   selected the five other cases.

3            I take it there's no *Lexecon* issue with respect to

4   the Gaston Roberts matter?

5            MR. NIGH:  That's correct, Your Honor.

6            MS. DAVIDSON:  Your Honor, I would also note,

7   although we don't have *Lexecon* issues to raise, that a *Lexecon*

8   issue does not affect pretrial rulings, et cetera.  So a lot of

9   work can still be done on those cases.

10           THE COURT:  Right.

11           MS. DAVIDSON:  I want to make sure that's clear.

12           THE COURT:  Well, thanks for that, Jessica.

13           And so we'll select the cases.  You know you've got

14  an anticipated trial date or approximate trial date for the

15  first bellwether trial.  Once you receive the list of the four

16  other -- the five other cases, then we'll have another

17  conference call to talk about what needs to be done in terms of

18  working those cases up for trial, unless we can have that

19  discussion now.  But I think it's hard in the abstract.

20           I am not hearing anybody.  Go ahead.

21           MR. NIGH:  Your Honor, I do think it is more

22  efficient after seeing the five cases to have that

23  conversation, because in seeing what those cases look like, it

24  informs, you know, you might go five for five on picking

25  colorectal randomly and it changes the situation.  But I

```
 1   think -- you know, I think after we've seen the picks, then it
 2   makes more sense to have the discussion thereafter on the
 3   work-up and the staging for the second case going forward.
 4             THE COURT:  Okay.
 5             MS. LOCKARD:  Agreed.
 6             THE COURT:  Yeah.  I think that makes more sense.
 7   Yeah.  I think there's agreement on that.  Good.  Good.  Good.
 8             MS. DAVIDSON:  Your Honor, I don't disagree with
 9   that.  I would just say that with the first trial not scheduled
10   until September and multiple defendants being involved in the
11   case pool, I think there will be appetite on the defense side
12   to be working those up simultaneously so we're ready to go.
13             THE COURT:  Sure.  That's what I'm hoping that we can
14   accomplish.
15             Listen, this has been delayed way too long, for lots
16   of reasons.  But it's time to get it to the point where it can
17   be tried.  And maybe I'm giving you too much time to go to
18   September, but I think that makes sense.
19             I wanted to talk about Maggie Kong and Jinsheng Lin
20   because they're going to be witnesses and you need a decision
21   from me.  And I'm hoping, Adam, you're still available and can
22   be heard on this.
23             Here's where I come out:  I think you were lulled
24   into believing that Maggie Kong had no relevant information and
25   now she's being called as a trial witness.  So I understand the
```

```
 1   consternation that you have over that fact.
 2            On the other hand, you have time now to take Maggie
 3   Kong's deposition, because it seems to me the biggest problem
 4   would be the surprise testimony, but you can alleviate that
 5   surprise or minimize it, at least, by taking her deposition.
 6            So why shouldn't I just -- you know, why shouldn't I
 7   just allow those persons to testify subject to them being
 8   deposed by you?  You've asked that their depositions occur here
 9   in the United States.  And I think I could direct that as well.
10   But why isn't that sufficient to avoid this issue?
11            MR. SLATER:  Well, Your Honor, I think that with
12   regard to Maggie Kong, and we're talking now about the personal
13   injury cases, I'll put the econ loss cases to the side.  The
14   proffer was that she was going to provide some information
15   relevant to the econ loss recall.
16            That proffer also, as Your Honor knows from the
17   briefing, expanded what she supposedly knew.  So we think that
18   the prejudice and the fact that they took a very hard and fast
19   position, I'm not talking about judicial estoppel, but there
20   are certain principles of fairness and gamesmanship that should
21   be avoided.
22            If Your Honor decides that okay, there's enough time,
23   what we don't want to do is we don't want to be put in the
24   situation where now we take their depositions and they're
25   suddenly no longer available and they're able to actually get
```

1   this testimony in through video depositions where they

2   otherwise would have to bring them to court.  So we would want

3   to foreclose that as a possibility if we have to depose them.

4   And the way to do that would be this:

5           Once the case is set for trial, just set a window

6   before the trial actually starts for them to be deposed here in

7   the United States shortly before the trial, with the

8   understanding that they're still -- this is not going to be a

9   substitute for their live testimony.

10          If they're going to testify, then I can depose them

11  shortly before the trial when they're here in the United States

12  for the trial and then we can move forward on that basis.

13  That's Maggie Kong.

14          We obviously have other issues with Jinsheng Lin that

15  go to the fairness of us even having to depose him.  I won't

16  address him yet.

17          THE COURT:  Well, we'll address him separately.

18          Jessica, are you going to respond on this?

19          MS. DAVIDSON:  I have no issue with having them

20  deposed in person in the U.S. shortly before trial.  There was,

21  as I indicated at the last hearing when Adam raised this issue,

22  it had never come to our mind to do anything like that.  It's

23  completely speculative.  I felt like it was a conspiracy

24  theory.  We had no intention of doing anything of the sort.  We

25  just wanted to ensure that we were able to present our

```
 1    witnesses at trial.  So to the extent Adam wants to depose them
 2    in the U.S. in the days leading up to trial, that's fine.
 3            THE COURT:  All right.  Well, I think we have at
 4    least an understanding as to Maggie Kong.  Maggie Kong can
 5    testify at trial in the bellwether plaintiff case.  She will be
 6    deposed here in the United States before the trial.  You'll all
 7    have to work out the scheduling of that.  But it will not be a
 8    substitute for her trial testimony, all right?
 9            And I think I see Jessica nodding her head.  And,
10    Adam, I can't see you, but I guess that's acceptable to you as
11    well.
12            MR. SLATER:  Yes, Your Honor.  I understand.
13            THE COURT:  All right.  Very well.  Now let's talk
14    about Jinsheng Lin.
15            What's the problem with taking his deposition?
16            MR. SLATER:  Oh, the problem with him goes -- I mean,
17    we had the problem with her custodial file also with the gaps,
18    but she's far less of a substantive witness.  It's still
19    unclear what she's even going to say aside -- the proffer
20    doesn't really fill much in.  We obviously have a huge gap in
21    her custodial file.  To the extent that we go through it and
22    we're ready and she talks about things that fall into that gap,
23    I guess we'll have to deal with it.
24            But Jinsheng Lin is a different animal.  He's the
25    person who wrote an email that's obviously of significance, and
```

1    there are massive, massive gaps to his custodial file.

2         Whatever defense wants to say about why -- they've

3    never explained why there aren't documents.  They vaguely

4    referred to some document preservation policy that we've never

5    seen.  The point is that, and it's in our brief, I don't -- I'm

6    sure that Your Honor has read that and seen the very little bit

7    we have from 2017 and before that we -- so we're basically

8    hamstrung in a very unfair way for being able to effectively

9    prepare for and cross-examine this witness.

10        On its face, his custodial file is so insufficient

11   and has such huge missing information that we're being put in a

12   situation where we're going to have to cross-examine a witness

13   without the documents that would be able to allow us to

14   actually establish the points we want to make, like -- we could

15   argue all day long with the ZHP explanation about that email

16   and say, well, it was about irbesartan.  The fact is that every

17   witness who's testified on the document and every translation,

18   including ZHP's own translation, says that it says there was

19   NDMA in valsartan and it was formed by sodium nitrite

20   quenching.

21        We don't have any documents from this witness in

22   terms of what led him to know that.  We don't have the story.

23   We don't have the background.  So all he's going to do,

24   presumably, based on what they've told us, is he's going to

25   walk in and say, well, it's not really what it says, even

1    though the witnesses testifying for the actual -- for the

2    company as 30(b)(6) witnesses said this is what it says, even

3    though the translation said this is what it says, or he's going

4    to say something else to try to explain it away.  But we don't

5    have his custodial file in a way that we can actually know,

6    okay, this is everything he had, this is what he saw.  These

7    are studies.  These are analyses.  This is why he knew that and

8    this is how we can undercut whatever explanation and excuse

9    he's trying to come up with.

10         So the prejudice to us is massive from that, and to

11   have him now be able to come in and potentially disagree with

12   30(b)(6) witnesses who said that's what the words say, it says

13   there's NDMA in valsartan, and it's formed by the sodium

14   nitrite quenching.  And then there's other things, too, all

15   true.  It's a problem with sartans.  It's highly toxic and it

16   would evidence a cGMP problem.  All those things were true.

17   But we don't have his custodial file in anything remotely

18   resembling a reasonably complete manner.  So we're terribly

19   prejudiced in our ability to adequately cross-examine and

20   question this witness.

21         THE COURT:  I understand your argument.  The problem

22   I have is, I've got a representation, at least a

23   representation, if not an affidavit, to the effect that we have

24   provided everything from Jinsheng Lin.  You can doubt that and

25   say that's not credible.  But is that enough to say he doesn't

```
 1    get to testify, or do I have to make the credibility
 2    determination based upon the absence of documents you think
 3    should be there and the other side says they're not there?
 4              MR. SLATER:  I think that the way to handle this,
 5    Your Honor, because, as you said, we have a lot of time now, is
 6    let us take a 30(b)(6) deposition on Jinsheng Lin's custodial
 7    file and the document policies that they claim his files were
 8    destroyed based upon.  Let's have a witness speak for the
 9    company about what documents existed, what documents were
10    destroyed, when and why.  And let's see what the explanation is
11    so that when Your Honor makes this ruling, you know exactly
12    what they're saying.  Because what we've gotten is vagaries.
13    We've gotten:  "That's all we had."
14              Well, okay, it's easy to say, but let's find out why
15    that's all they had.  It's not going to cost us a lot of time
16    or effort.  Let them produce whatever document policy they're
17    claiming or identify it in the production because, presumably,
18    they've produced everything, and let us take that deposition
19    and let us then make a record for Your Honor on this because
20    it's of such significance.
21              And if worse comes to worse, from our perspective,
22    and Your Honor allows the testimony, at least we'll have a full
23    record on which to potentially put a witness on the stand to
24    show the jury that the idea that his custodial file wasn't
25    manipulated or whatever word you want to use or doesn't fairly
```

 1    represent what was there so that we're at a disadvantage.

 2            And I'm not talking about a spoliation inference,

 3    although who knows what the evidence will be.  I'm talking

 4    about just factually at the very least that we don't have those

 5    documents and here's why, so that we can adequately rebut

 6    whatever this person says about his email, which every other

 7    witness that has testified about it says it has those words in

 8    it.  So that's what we would ask for.

 9            THE COURT:  All right.  Thank you.

10            Jessica.

11            MS. DAVIDSON:  Your Honor, the efforts by plaintiffs

12    to avoid deposing the person who wrote the email on which

13    they're making their entire case have now become so extreme

14    that plaintiffs want to depose someone else to ask them what

15    happened to Mr. Lin's files.

16            So we know that Dr. Lin did not work on valsartan.

17    If plaintiffs want to know how did you handle documents, how

18    did you get rid of documents, we have been offering this man

19    for a deposition for nine months.  Let them ask him, Dr. Lin,

20    how did you keep documents?  What happened to them?  Whatever

21    Adam wants to ask him, he can ask him.  But to have discovery

22    about discovery at this point makes no sense.

23            As you know, Your Honor, this company has already

24    been sanctioned.  This was not part of the sanction.  There was

25    no sanction that Mr. Lin can't testify.  And I just want to go

```
 1   back to something that I said last time, which is, Judge Bumb
 2   has made it very clear that she does not want to create error.
 3   Having a trial where the smoking gun is an email by someone who
 4   has been barred from testifying to me is a violation of due
 5   process that would undermine the whole point of having a trial,
 6   because it would be this baked-in error.
 7          So I would suggest that, at his earliest convenience,
 8   Mr. Slater depose Jinsheng Lin and ask him all the questions he
 9   wants about his files, how they were kept, what they contained,
10   et cetera, and then plaintiffs will have that evidence, any
11   evidence they want.
12          But not to allow the person who wrote the email that
13   is so central to this case to testify just strikes me as
14   undermining the entire validity of the bellwether trial.
15          THE COURT:  All right.  Here's how -- here's what
16   we're going to do, here's how we will proceed:  Adam, you can
17   take Jinsheng Lin's deposition.  You can ask him questions
18   intended to probe what happened, why aren't there more
19   documents, how is it that I don't have the backup for what
20   you're asserting.  And then after you take that deposition, you
21   can come back, because I think there's enough time now to do
22   this, and ask for a 30(b)(6) witness on preservation policies
23   or other reasons why documents you believe should exist don't
24   exist.
25          It may be you take his deposition you won't need to
```

1  do that, but with those -- with Jinsheng Lin's deposition and
2  the 30(b)(6) following his deposition, you should be able to
3  have your record if you need to seek sanctions again for
4  spoliation.  But absent that, you don't have a record right now
5  sufficient to support it, in my judgment.
6          So that's how we'll proceed with respect to Jinsheng
7  Lin.
8          Now, you could expect that he will be allowed to
9  testify unless I'm presented with a record that convinces me
10 there was spoliation of documents, material documents that bear
11 on this issue.
12         MR. SLATER:  One question, Your Honor.
13         THE COURT:  Yes.  Go ahead.
14         MR. SLATER:  I'm sorry.  First of all, they can
15 designate Jinsheng Lin as their 30(b)(6) witness if they want
16 to.  I just assumed he wouldn't be the one because he would say
17 I don't really know how documents are maintained at the
18 company.  But they could have -- so it's not that they have to
19 designate someone different.  It would just be to designate
20 somebody.  But if that's how you want us to proceed.  My only
21 remaining concern is I don't want this deposition to become an
22 avenue for them to now claim he's unavailable and then they
23 just use the video.  That was our concern with deposing him
24 long before trial when they first named him three or four weeks
25 before the first trial.

```
 1              So I would appreciate the same caveat we had with

 2      Maggie Kong, and then we can work on getting ready to take his

 3      deposition.

 4              THE COURT:  Jessica.

 5              MS. DAVIDSON:  Same response, Your Honor.  My

 6      response before went to both witnesses.

 7              THE COURT:  Okay.  So you have that understanding

 8      that this will not be -- the deposition won't be intended to

 9      provide an opportunity for his testimony then to be replayed at

10      trial.  The expectation is that he will be called live at

11      trial, all right?

12              MR. SLATER:  Understood.  Thank you.

13              THE COURT:  All right.

14              MS. DAVIDSON:  Thank you, Your Honor.

15              THE COURT:  Let's take a five-minute break.

16              (Recess was taken at 2:10 p.m. until 2:18 p.m.)

17              THE COURT:  John, are you ready?

18              THE COURT REPORTER:  Yes, Your Honor.

19              THE COURT:  Jessica, I see you're on screen now.  Is

20      the defense ready?

21              MS. DAVIDSON:  Yes.

22              THE COURT:  And, Daniel, I have you and I take it

23      Adam is available, too.  So we're ready on the plaintiffs'

24      side?

25              MR. SLATER:  Yes, Your Honor.
```

```
 1              THE COURT:  All right.
 2              MR. SLATER:  One quick question about that last
 3    ruling.  The deposition of Mr. Lin, I think you had said
 4    earlier that we could do these depositions in the U.S.  I just
 5    want to confirm his deposition will be here in the United
 6    States.
 7              THE COURT:  Did you want to say anything on that,
 8    Jessica?
 9              MS. DAVIDSON:  I guess what I would say is when we
10    were going to have Maggie's deposition in the U.S., Adam
11    indicated it would be right in the lead-up to trial so she
12    would only have to come to the U.S. twice.  Is Adam envisioning
13    that Jinsheng Lin would have to come to the U.S. -- she would
14    only have to come once.  Is Adam envisioning that Jinsheng Lin
15    would have to come to the U.S. twice?
16              MR. SLATER:  Yes.
17              MS. DAVIDSON:  Both for deposition and for trial?
18              MR. SLATER:  I am.
19              MS. DAVIDSON:  I don't understand why it would have
20    to be in the U.S.  I guess I would ask that given the expense
21    and burden of that, we're not going to use the deposition for
22    trial anyway, that it take place in Macao the way the other
23    depositions have taken place of the Chinese witnesses.
24              THE COURT:  Adam.
25              MR. SLATER:  I -- I made my argument, Your Honor.
```

```
 1   I'm not going to go back and forth on it.
 2              THE COURT:  All right.  Jinsheng Lin's deposition can
 3   take place in Macao, as the other depositions have been taken,
 4   all right.
 5              MS. DAVIDSON:  Thank you, Your Honor.
 6              THE COURT:  One of the issues that's outstanding --
 7   and I'll preface by saying I don't think this is an issue for
 8   the Special Master -- deals with the request for clarification
 9   regarding *Daubert* Hearing Order 1, and this is ECF 1976.
10              Is it understood that that's an issue for Judge Bumb
11   to decide?
12              MR. SLATER:  I believe so, Your Honor.
13              THE COURT:  Okay.  No disagreement.
14              Frank, did you want to be heard on that?
15              MR. STOY:  No; we agree, Your Honor.
16              THE COURT:  All right.  Punitive damages discovery.
17              (Simultaneous speaking.)
18              (Court reporter clarification.)
19              MR. SLATER:  Judge, I was just saying -- it's Adam
20   Slater.
21              THE COURT:  Go ahead.
22              MR. SLATER:  Your Honor, it's Adam Slater.  I was
23   just going to just say the only caveat is that, again, that
24   doesn't apply to all the cases.  It will apply to some subset.
25   So it's just something to keep in mind, Your Honor.
```

1              MR. NIGH:  Yeah.  The other thing, Your Honor, is

2     that there is new additional evidence on NDEA.  So that's

3     something we've got to recognize as well, in terms of the

4     scheduling.  That's one of the reasons why, you know, having

5     the first case go before, the ZHP API-only defendants.  And we

6     suspect that even of the Torrent cases, they're not going to

7     implicate the NDEA side because a lot of their pills are NDMA.

8     That's one more reason why putting forth that issue, we don't

9     have the sort of new science, NDEA new opinions issue if that

10    happens.

11             THE COURT:  All right.  So that doesn't help me a

12    whole lot here in terms of understanding what that means.

13             MS. LOCKARD:  Your Honor, if I can clarify.

14             THE COURT:  Okay.

15             MS. LOCKARD:  I think the understanding is that

16    certainly the NDEA issue does not affect the first trial, the

17    Gaston Roberts case.

18             THE COURT:  Okay.  All right.

19             MS. LOCKARD:  It may impact some of the cases that

20    are in the remaining bellwether pool that are subject to the

21    randomization, but it may not.

22             THE COURT:  Right.

23             MS. LOCKARD:  So --

24             MR. NIGH:  That's right, Victoria.  Thank you for

25    clarifying.  I think we should revisit that, too, in terms of

```
 1    the timing once we've seen what's selected in the pool.

 2              THE COURT:  Okay.  Understood.  And that's what we'll

 3    do.

 4              MR. NIGH:  Thank you.

 5              THE COURT:  Punitive damages discovery, have you

 6    worked out a stipulation on that or where does that stand?

 7    Adam?

 8              MR. SLATER:  We've sent to the defense a proposed

 9    stipulation before the trial was adjourned, and we're just

10    waiting for a response.

11              THE COURT:  All right.  That might be one of those

12    loose ends we tie up when we get back together in a few weeks

13    after I identify the other five cases for trial.

14              Now, Adam, in your submission for today, you raised

15    the interesting question of a trial for the consumer economic

16    loss cases or case.

17              MR. SLATER:  Yes.

18              THE COURT:  Can you elaborate on that?

19              MR. HONIK:  Your Honor, this is Ruben Honik.  I'm

20    happy to elaborate on that, if I may.

21              THE COURT:  All right.

22              MR. HONIK:  Good afternoon, Judge.

23              THE COURT:  Afternoon.

24              MR. HONIK:  I've been listening obviously to this

25    argument today.  I think everyone is keenly aware we're coming
```

```
 1    up on something like a seven-year anniversary of the first
 2    filed cases here.  Everyone is somewhat exasperated about the
 3    movement and wanting to get some closure.
 4            In particular, it bears mentioning, and everyone
 5    knows this, that in February of 2023, when Judge Kugler
 6    certified the TPP classes, he also certified a consumer class.
 7    And to state the obvious, I think all factual discovery has
 8    been done that would cover both the consumer and TPP aspect of
 9    this MDL.  Obviously there remains some specific expert work on
10    damages in particular that needs to be done.
11            But inasmuch as we're not looking at a first trial
12    until the third quarter of 2025, and subject of course to
13    Judge Bumb's availability or your availability or someone's
14    availability, we think it a good idea in the first or second
15    quarter at the latest of 2025 to tee up a consumer trial.  It's
16    largely ready to go.  There are some additional damage experts
17    that would need to be proffered, but apart from that, that case
18    is largely ready.  And so, therefore, subject of course to the
19    Court's availability or some ability to hear that case or have
20    that case heard, we would strongly urge the Court to consider
21    putting that on the calendar for the beginning part of 2025.
22            THE COURT:  Who wants to respond on behalf of the
23    defense?
24            MR. OSTFELD:  Good afternoon, Your Honor.  It's Greg
25    Ostfeld.  I can respond for the defense.
```

1          THE COURT:  Okay.

2          MR. OSTFELD:  So, Your Honor, I believe this issue

3    that Mr. Honik is raising pertains directly to the concerns

4    that Judge Bumb raised at the last case management conference

5    regarding the viability of the worthlessness theory, the

6    retroactive worthlessness theory that was the predicate for the

7    certification of both the consumer classes and the TPP classes.

8          Mr. Slater's letter raises the subject -- the

9    question of presenting new damages experts asserting a new

10   theory, specifically a conjoint analysis for the consumer class

11   cases and then reopening expert discovery in connection with

12   the third-party payor cases.  The problem with that is it takes

13   us back about four years in the MDL.

14         Judge Kugler held in connection with MTD Opinion 2

15   that there wasn't a factual allegation to support a

16   diminution-of-value theory, which is what a conjoint analysis

17   or reopening discovery would go to.

18         There isn't, as we were discussing at the last case

19   management conference, a basis to proceed on a worth less, two

20   words, theory.  And when Judge Kugler certified the classes,

21   his predominance analysis again focused specifically on the

22   worthlessness, one word, theory.  He didn't find that there was

23   a predominant common issue on a diminution-of-value theory or a

24   class-wide model of damages that would support that theory.

25         So what plaintiffs are proposing is essentially to go

1    back in time, alter their theory of damages from a, one word,

2    worthlessness theory to a two-word "worth less" theory, which

3    would require revisiting Judge Kugler's MTD Opinion 2 and

4    proceeding on classes on a theory that wasn't certified as a

5    predominant theory, which would require decertifying the

6    existing classes and having new class certification hearings.

7            I think what Judge Bumb said at the last case

8    management conference is she thinks there is a need to

9    reconcile Judge Kugler's MTD Opinion 2 and his summary judgment

10   ruling.  I think the class certification ruling also needs to

11   be in that mix.

12           So before there can be any conversation about

13   proceeding on either a consumer class trial or a TPP class

14   trial, first I think Judge Bumb needs an opportunity to grapple

15   with these issues that she saw as pretty fundamental issues

16   going to the heart of plaintiffs' economic loss theories.

17           And so, respectfully, I don't think that's within the

18   current referral to Your Honor.  Although if she wants to refer

19   it, we can certainly brief it to Your Honor.  But I think

20   probably in the first instance, this needs to be presented to

21   Judge Bumb to see how she wants to proceed.

22           THE COURT:  Yeah.  I'm inclined to agree with Greg on

23   this one, Ruben.  I was asked to work on getting personal

24   injury bellwether cases to trial.  And this goes outside the

25   scope of that particular assignment.

1          MR. HONIK:  I certainly understand that, Your Honor.

2     But I think in preparing our submissions for today, it became

3     fairly obvious to us that we're going to have some amount of

4     downtime.  And now we know that it's going to be in the order

5     of magnitude of almost a year before we reach a trial.  And it

6     just struck us as highly efficient and highly appropriate to

7     give consideration to putting a consumer class trial on the

8     calendar.

9          To state the obvious, the economic loss component of

10    this MDL has an outsized footprint.  The numbers are

11    staggering.  That's going to have to be dealt with.  It's not

12    going to be made to go away if we spend another year and a half

13    doing BI cases.  And I don't think we ought to have additional

14    downtime in addition to the six years that we've already

15    arrived at.

16         I don't want to argue with Greg today about some of

17    the things he said.  There's not a bit that would involve going

18    back.  Presenting a conjoint survey, which is appropriate in a

19    consumer setting, doesn't in any way diminish our idea that the

20    drug is worthless.  It just gets to it in a slightly different

21    way.

22         And to state the obvious, the economic experts that

23    we've proffered for the trial that's now been adjourned twice

24    was in support of the TPP damages.

25         And so we do have to submit additional damage expert

```
1    reports.  I agree with Your Honor that the decision likely
2    needs to be made by Judge Bumb, not least because she knows her
3    schedule, but as a purely practical matter, we believe the
4    Court should engage us about putting that on the calendar.  And
5    we can certainly roll up our sleeves and get to the bottom of
6    clearing up any damage questions raised by both sides.
7              THE COURT:  Well, I like the idea, you know, it
8    resonated with me getting a consumer plaintiffs class to trial.
9    But that's something you have to take up with Judge Bumb.
10             MR. HONIK:  Thank you, Your Honor.
11             THE COURT:  Is there anything else we need to address
12   today?
13             MR. SLATER:  I don't believe so for plaintiffs, Your
14   Honor.
15             THE COURT:  Anything else on the defense side?
16             MR. OSTFELD:  Your Honor, I'm not aware of anything
17   else for defense.  I'll let any of my colleagues speak up if
18   they view this otherwise.
19             THE COURT:  All right.  Victoria?
20             MS. LOCKARD:  Looking through the other agenda items,
21   Judge, I don't think so.  I think everything else can probably
22   flow after we know the selection of the bellwether cases to be
23   worked up.
24             THE COURT:  That's what I thought as well.  I mean, I
25   know there's still a lot more that needs to be fleshed out.
```

```
 1   But let's get the other bellwether cases selected.

 2             Do you disagree, Jessica?

 3             (No response.)

 4             THE COURT:  Very well.  All right.  Then we'll

 5   adjourn.

 6             (Court reporter clarification.)

 7             MS. DAVIDSON:  I'm so sorry.  I said I do not

 8   disagree.  Thank you.

 9             THE COURT:  Okay.  Thank you.

10             All right.  We will adjourn for today.  I'll issue an

11   order that identifies the other five bellwether cases for

12   trial, in addition to the one that has been identified.  I'll

13   confer with Judge Bumb, but tentatively we're looking at the

14   first bellwether trial starting September 2nd, all right.

15             Thank you all very much.

16             MS. LOCKARD:  Thank you.

17             MS. DAVIDSON:  Thank you, Your Honor.

18             MR. SLATER:  Thank you, Your Honor.

19             MR. NIGH:  Thank you, Your Honor.

20             (Proceedings concluded at 2:34 p.m.)

21             - - - - - - - - - - - - - - - - - - - - - - -
          FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE
22             - - - - - - - - - - - - - - - - - - - - - - -

23        I certify that the foregoing is a correct transcript

24   from the record of proceedings in the above-entitled matter.

25
```

*United States District Court*
*District of New Jersey*

1    /S/John J. Kurz, RDR-RMR-CRR-CRC                October 23, 2024

2    Court Reporter/Transcriber

**MR. HONIK: [5]** 52/19 52/22 52/24 56/1 57/10
**MR. NIGH: [42]** 4/7 4/10 4/13 4/16 4/24 5/3 5/7 5/9 5/12 6/9 6/13 9/13 9/15 14/20 17/9 17/13 20/11 20/23 21/14 21/21 22/21 22/24 23/22 24/1 24/13 26/7 27/1 27/13 27/23 27/25 28/15 30/23 31/14 31/22 35/10 36/7 37/5 37/21 51/1 51/24 52/4 58/19
**MR. OSTFELD: [3]** 53/24 54/2 57/16
**MR. SLATER: [26]** 32/3 32/6 32/18 32/23 33/9 33/19 33/21 39/11 41/12 41/16 44/4 47/12 47/14 48/12 48/25 49/2 49/16 49/18 49/25 50/12 50/19 50/22 52/8 52/17 57/13 58/18
**MR. STOY: [4]** 34/13 35/22 36/16 50/15
**MS. DAVIDSON: [44]** 4/19 6/16 7/16 7/25 12/11 12/13 12/15 14/2 14/5 17/3 18/3 18/10 18/15 19/17 20/3 20/7 22/8 23/15 24/5 24/8 24/24 27/19 27/24 28/3 30/24 32/20 33/5 33/15 33/20 34/2 37/6 37/11 38/8 40/19 45/11 48/5 48/14 48/21 49/9 49/17 49/19 50/5 58/7 58/17
**MS. LOCKARD: [18]** 14/3 14/6 18/9 18/11 18/14 24/16 24/20 24/25 25/14 26/24 27/9 38/5 51/13 51/15 51/19 51/23 57/20 58/16
**THE COURT REPORTER: [1]** 48/18
**THE COURT: [100]**

**'**

**'12 [1]** 18/7

**/**

**/S/John [1]** 59/1

**0**

**07068 [1]** 1/18
**08101 [1]** 1/8

**1**

**10 [1]** 28/10
**10 percent [2]** 27/5 27/8
**10001 [1]** 2/7
**1001 [1]** 3/3
**10022 [1]** 2/11
**103 [1]** 1/18
**11 [1]** 3/6
**1100 [1]** 1/15

**12 [1]** 28/10
**12 percent [1]** 28/25
**128 [1]** 2/6
**14 [1]** 2/3
**15 [2]** 24/18 24/18
**1500 [1]** 3/16
**1515 [1]** 1/15
**15219 [1]** 2/15
**15th [1]** 24/10
**19102 [1]** 1/15
**1976 [1]** 50/9
**1:00 [2]** 1/9 4/4
**1:00 p.m [1]** 4/3
**1:19-md-02875-RMB-SAK [1]** 1/4
**1st [4]** 29/23 29/23 31/6 33/25

**2**

**20 percent [3]** 11/13 27/3 27/20
**20004 [1]** 3/3
**20016 [1]** 2/4
**2017 [1]** 42/7
**2023 [1]** 53/5
**2024 [2]** 1/9 59/1
**2025 [3]** 53/12 53/15 53/21
**2026 [1]** 9/2
**207 [1]** 1/18
**22 [1]** 1/9
**2200 [1]** 3/12
**2220 [1]** 3/9
**23 [1]** 59/1
**230 [1]** 3/9
**2500 [1]** 2/18
**28 [6]** 7/6 8/4 8/10 18/13 29/10 29/11
**2:10 [1]** 48/16
**2:18 [1]** 48/16
**2:34 p.m [1]** 58/20
**2nd [2]** 34/4 58/14

**3**

**3 percent [2]** 10/8 28/24
**30 [6]** 43/2 43/12 44/6 46/22 47/2 47/15
**30305 [1]** 2/18
**3100 [1]** 2/22
**3333 [1]** 3/18
**35 percent [3]** 11/17 27/3 27/20
**3600 [1]** 3/13
**38th [1]** 2/14

**4**

**4 percent [1]** 10/9
**42 [2]** 14/10 16/6
**42-128 [1]** 2/6
**45 percent [7]** 27/22 28/4 28/6 28/9 28/17 28/22 28/25
**46204 [1]** 3/6
**4th [1]** 1/8

**5**

**5 percent [1]** 28/24

**50 percent [4]** 18/7 18/16 18/17 20/13
**55 percent [3]** 27/21 28/19 29/2
**576-7094 [1]** 1/24

**6**

**601 [1]** 2/10
**60601 [1]** 2/22
**60606 [1]** 3/10
**63105 [1]** 3/16

**7**

**701 [1]** 1/21
**70130 [1]** 1/21
**7094 [1]** 1/24
**75201 [1]** 3/13
**77 [1]** 2/22

**8**

**80 degrees [1]** 24/10
**8001 [1]** 3/16
**856 [1]** 1/24

**A**

**ability [2]** 43/19 53/19
**able [13]** 5/20 5/21 5/25 9/1 13/20 32/5 35/16 39/25 40/25 42/8 42/13 43/11 47/2
**above [1]** 58/24
**above-entitled [1]** 58/24
**absence [1]** 44/2
**absent [1]** 47/4
**absolutely [3]** 14/8 14/24 16/12
**abstract [1]** 37/19
**absurd [3]** 15/4 15/7 16/7
**acceptable [1]** 41/10
**accomplish [2]** 17/22 38/14
**accurate [1]** 27/12
**across [1]** 35/8
**Actavis [4]** 2/19 2/19 2/23 2/23
**action [2]** 1/3 5/25
**actual [1]** 43/1
**actually [8]** 7/8 11/9 13/15 23/24 39/25 40/6 42/14 43/5
**ADAM [23]** 1/17 4/13 4/15 4/24 5/1 5/9 32/3 33/15 38/21 40/21 41/1 41/10 45/21 46/16 48/23 49/10 49/12 49/14 49/24 50/19 50/22 52/7 52/14
**add [2]** 18/5 24/16
**adding [1]** 12/2
**addition [3]** 34/24 56/14 58/12
**additional [5]** 19/14 51/2 53/16 56/13 56/25
**address [6]** 5/19 14/4 20/25 40/16 40/17 57/11
**addressing [4]** 4/5 4/7 4/11 4/21
**adequately [2]** 43/19

**45/5
adjourn [2]** 58/5 58/10
**adjourned [2]** 52/9 56/23
**advance [3]** 9/12 13/10 16/19
**advanced [2]** 16/13 16/20
**advancing [1]** 13/2
**advocating [1]** 32/23
**affect [2]** 37/8 51/16
**affidavit [1]** 43/23
**afraid [2]** 18/5 18/19
**after [14]** 13/21 18/1 18/21 27/2 27/4 27/6 32/10 32/23 33/25 37/22 38/1 46/20 52/13 57/22
**afternoon [4]** 34/14 52/22 52/23 53/24
**again [6]** 23/15 23/20 36/16 47/3 50/23 54/21
**against [1]** 33/10
**agenda [1]** 57/20
**aggressive [1]** 6/21
**agree [8]** 10/17 19/12 19/16 19/16 19/18 50/15 55/22 57/1
**agreeable [1]** 8/7
**agreed [2]** 31/16 38/5
**agreement [9]** 17/12 17/16 17/24 17/25 18/2 19/12 21/11 21/12 38/7
**ahead [8]** 5/9 7/17 12/12 31/13 32/8 37/20 47/13 50/21
**aided [1]** 1/25
**aim [1]** 30/9
**ALEXIA [1]** 2/10
**ALFANO [1]** 2/13
**all [81]**
**allay [1]** 19/19
**allegation [1]** 54/15
**alleviate [1]** 39/4
**allow [5]** 9/23 31/8 39/7 42/13 46/12
**allowed [2]** 14/10 47/8
**allows [1]** 44/22
**almost [3]** 11/13 27/3 56/5
**along [3]** 8/21 17/10 22/7
**already [12]** 10/16 16/13 16/20 16/22 19/18 23/2 23/4 23/11 32/12 33/12 45/23 56/14
**also [17]** 3/18 6/23 7/20 8/9 8/20 11/23 19/13 19/23 22/2 32/22 36/19 36/20 37/6 39/16 41/17 53/6 55/10
**alter [1]** 55/1
**although [3]** 37/7 45/3 55/18
**always [1]** 27/11
**am [14]** 18/24 27/12 37/20 49/18
**among [1]** 26/24
**amount [1]** 56/3
**analyses [1]** 43/7
**analysis [3]** 54/10 54/16

**54/21
ANDREW [1]** 3/2
**animal [1]** 41/24
**anniversary [1]** 53/1
**another [4]** 27/17 28/25 37/16 56/12
**answer [1]** 6/4
**anticipated [1]** 37/14
**any [13]** 5/19 13/2 22/19 23/17 25/8 35/3 35/4 42/21 46/10 55/12 56/19 57/6 57/17
**anybody [2]** 33/10 37/20
**Anyone [1]** 34/12
**anything [10]** 14/3 19/8 20/7 40/22 40/24 43/17 49/7 57/11 57/15 57/16
**anyway [1]** 49/22
**apart [1]** 53/17
**API [11]** 10/15 11/24 12/8 16/14 16/15 16/18 31/25 35/12 36/8 36/19 51/5
**API-only [5]** 12/8 31/25 35/12 36/8 51/5
**Appearances [1]** 2/25
**appetite [1]** 38/11
**apply [3]** 35/5 50/24 50/24
**appreciate [2]** 5/16 48/1
**approach [4]** 7/5 7/13 7/19 8/1
**appropriate [2]** 56/6 56/18
**approximate [1]** 37/14
**approximately [1]** 11/17
**April [2]** 6/13 6/14
**are [63]**
**aren't [3]** 29/16 42/3 46/18
**argue [2]** 42/15 56/16
**arguing [1]** 29/16
**argument [3]** 43/21 49/25 52/25
**around [3]** 27/8 33/25 36/23
**ARPS [1]** 2/5
**arrived [1]** 56/15
**articulate [1]** 34/11
**aside [2]** 25/3 41/19
**ask [15]** 6/6 12/15 14/15 17/4 32/6 32/9 45/8 45/14 45/19 45/21 45/21 46/8 46/17 46/22 49/20
**asked [4]** 5/9 23/19 39/8 55/23
**askew [1]** 26/4
**aspect [1]** 53/8
**asserting [2]** 46/20 54/9
**assignment [1]** 55/25
**assume [1]** 30/25
**assumed [1]** 47/16
**Atlanta [1]** 2/18
**attorneys [2]** 32/25
**August [2]** 32/18 33/7
**Aurobindo [6]** 12/3 16/18 16/23 31/20 35/13

**A**

Aurobindo... [1] 35/21
availability [5] 33/1 53/13 53/13 53/14 53/19
available [4] 25/12 38/21 39/25 48/23
avenue [4] 2/10 3/3 3/12 47/22
average [1] 18/18
avoid [3] 32/8 39/10 45/12
avoided [1] 39/21
aware [2] 52/25 57/16
away [3] 33/23 43/4 56/12

**B**

back [12] 6/17 12/4 12/5 16/17 34/21 46/1 46/21 50/1 52/12 54/13 55/1 56/18
background [1] 42/23
backup [1] 46/19
baked [1] 46/6
baked-in [1] 46/6
ball [3] 16/14 16/19 16/20
BARNES [1] 3/5
barred [1] 46/4
based [6] 6/9 9/23 27/10 42/24 44/2 44/8
basic [1] 18/6
basically [4] 7/25 28/5 35/17 42/7
basis [5] 24/25 29/9 37/1 40/12 54/19
bay [1] 35/20
bear [1] 47/10
bears [1] 53/4
became [1] 56/2
because [44] 6/17 8/13 8/25 10/1 10/5 10/19 11/13 11/15 11/24 12/21 12/24 13/9 14/11 15/14 15/20 15/25 16/16 16/21 16/25 20/13 25/3 26/7 26/13 26/18 27/22 27/25 28/17 29/10 29/15 30/12 31/17 35/13 37/23 38/20 39/3 44/5 44/12 44/17 44/19 46/6 46/21 47/16 51/7 57/2
become [2] 45/13 47/21
been [17] 5/14 9/20 13/17 19/6 19/6 19/8 23/11 23/18 38/15 45/18 45/24 46/4 50/3 52/24 53/8 56/23 58/12
before [21] 4/1 16/19 31/20 32/4 32/10 32/14 33/11 33/15 40/6 40/7 40/11 40/20 41/6 42/7 47/24 47/25 48/6 51/5 52/9 55/12 56/5
beginning [1] 53/21
behalf [2] 34/14 53/22
behind [4] 19/4 23/3

23/17 31/17
being [11] 5/25 6/25 15/3 18/5 25/14 32/12 38/10 38/25 39/7 42/8 42/11
believe [10] 6/9 8/6 18/7 28/11 35/7 46/23 50/12 54/2 57/3 57/13
believing [1] 38/24
bellwether [34] 5/16 5/22 5/23 6/2 6/8 6/25 7/5 7/9 7/20 8/13 8/17 8/21 11/6 11/16 12/16 12/18 18/15 18/24 19/9 20/14 21/12 24/17 25/1 25/12 28/4 37/15 41/5 46/14 51/20 55/24 57/22 58/1 58/11 58/14
bellwethers [3] 18/9 18/11 24/21
benefit [4] 12/25 13/2 13/2 16/16
best [2] 15/14 22/8
better [3] 13/13 23/17 34/11
between [6] 11/19 17/25 22/1 29/1 29/23 30/2
Beyond [1] 19/24
BI [1] 56/13
big [1] 29/1
biggest [1] 39/3
bit [3] 26/4 42/6 56/17
BLACKWELL [1] 3/15
board [1] 35/8
Bogdan [1] 3/21
BOSICK [1] 2/14
both [6] 4/20 48/6 49/17 53/8 54/7 57/6
bottom [2] 29/6 57/5
Boulevard [1] 3/16
BRANCATO [1] 2/10
break [1] 48/15
BRETT [1] 2/3
brief [3] 14/11 42/5 55/19
briefing [1] 21/24 25/9 39/17
briefly [2] 12/13 34/16
bring [4] 12/3 12/3 16/23 40/2
broader [1] 9/10
broadly [1] 35/5
Building [1] 1/7
Bumb [11] 13/18 28/7 46/1 50/10 54/4 55/7 55/14 55/21 57/2 57/9 58/13
Bumb's [1] 53/13
burden [1] 49/21
busy [1] 31/10

**C**

calendar [3] 53/21 56/8 57/4
California [1] 11/5
call [1] 37/17
called [2] 38/25 48/10
Camden [1] 1/8

came [1] 19/7
Camp [1] 1/21
can [60]
can't [12] 6/4 17/15 19/25 23/7 23/14 27/13 30/6 33/10 33/10 34/21 41/10 45/25
cancel [2] 33/2 33/3
cancer [64]
cancers [11] 8/12 11/7 15/13 26/12 26/15 26/18 26/19 27/4 28/13 29/2 29/3
capable [1] 10/24
capture [1] 11/15
care [1] 27/15
cart [1] 7/17
case [74]
case-specific [1] 10/17
cases [134]
causation [10] 8/22 10/20 15/23 16/6 20/24 23/1 23/2 23/6 23/13 29/13
cause [5] 6/19 8/11 10/23 10/23 21/2
causing [1] 10/24
caveat [2] 48/1 50/23
caveats [1] 8/8
central [1] 46/13
Centre [1] 2/14
certain [1] 39/20
certainly [8] 14/14 17/5 25/23 26/24 51/16 55/19 56/1 57/5
certainty [1] 19/23
CERTIFICATE [1] 58/21
certification [3] 54/7 55/6 55/10
certified [4] 53/6 53/6 54/20 55/4
certify [1] 58/23
cetera [2] 37/8 46/10
cGMP [1] 43/16
chance [2] 12/23 13/13
changes [3] 10/25 11/1 37/25
chaos [1] 21/2
cherry [2] 35/18 35/23
cherry-pick [1] 35/18
cherry-picked [1] 35/23
Chicago [2] 2/22 3/10
Chinese [1] 49/23
choice [1] 8/8
choose [1] 9/1
chosen [2] 8/25 25/22
cited [1] 9/20
CIVIL [1] 1/3
claim [2] 44/7 47/22
claiming [1] 44/17
clarification [3] 50/8 50/18 58/6
clarify [1] 51/13
clarifying [1] 51/25
clarity [2] 31/14 31/15
class [12] 1/22 2/4 5/25

53/6 54/10 54/24 55/6 55/10 55/13 55/13 56/7 57/8
class-wide [1] 54/24
classes [6] 53/6 54/7 54/7 54/20 55/4 55/6
clear [10] 15/21 18/6 23/22 24/11 27/19 28/8 35/3 35/23 37/11 46/2
clearing [1] 57/6
clearly [1] 27/5
Clerk [1] 3/20
close [1] 27/18
closer [1] 13/22
closure [1] 53/3
Co [5] 1/16 1/19 1/22 2/4 2/7
Co-Lead [4] 1/16 1/19 1/22 2/4
Cohen [1] 1/7
colleagues [1] 57/17
collectively [4] 2/8 2/12 2/20 2/24
colon [6] 8/2 18/8 18/16 18/18 18/19 27/21
colorectal [25] 10/24 11/16 11/18 12/21 12/21 14/25 15/6 15/12 16/9 18/6 20/14 20/20 21/4 21/13 21/16 21/18 21/22 24/21 25/5 26/13 27/2 27/3 27/6 30/15 37/25
come [13] 12/4 16/17 28/20 33/23 38/23 40/22 43/9 43/11 46/21 49/12 49/13 49/14 49/15
comes [3] 17/14 17/17 44/21
coming [3] 19/20 21/1 52/25
Commencing [1] 1/9
comment [2] 14/7 33/16
common [9] 15/14 21/16 26/23 26/25 27/1 27/5 27/6 27/18 54/23
company [4] 43/2 44/9 45/23 47/18
competing [1] 9/21
complete [1] 43/18
completely [5] 12/6 15/1 30/14 35/3 40/23
component [1] 56/9
comprehensively [1] 5/17
compromise [2] 33/17 33/18
compromised [2] 7/13 7/18
computer [1] 1/25
computer-aided [1] 1/25
concept [1] 18/7
concern [2] 47/21 47/23
concerns [2] 19/19 54/3
concluded [1] 58/20
concurrently [1] 12/7
confer [2] 31/1 58/13
conference [6] 1/5 5/15

37/17 54/4 54/19 55/8
confirm [1] 49/5
conflating [2] 26/8 26/8 28/1
conjoint [3] 54/10 54/16 56/18
CONLEE [1] 1/20
connection [2] 54/11 54/14
consider [2] 32/16 53/20
consideration [1] 56/7
considering [2] 14/23 33/11
consolidated [1] 35/6
conspiracy [1] 40/23
consternation [1] 39/1
consumer [10] 52/15 53/6 53/8 53/15 54/7 54/10 55/13 56/7 56/19 57/8
contained [1] 46/9
contingent [1] 6/23
continue [2] 29/4 36/7
continued [3] 2/1 2/25 3/1
control [1] 30/6
convenience [1] 46/7
conversation [2] 37/23 55/12
convinces [1] 47/9
Cooper [1] 1/8
Corp [1] 3/14
correct [2] 37/5 58/23
cost [1] 44/15
could [13] 7/17 20/8 21/5 21/17 21/22 22/2 32/21 35/20 39/9 42/14 47/8 47/18 49/4
counsel [16] 1/16 1/19 1/22 2/4 2/7 2/11 2/15 2/19 2/23 3/4 3/7 3/10 3/14 3/17 5/17 36/10
counsel's [1] 36/17
counterproductive [1] 10/11
course [3] 36/2 53/12 53/18
court [17] 1/1 1/23 11/5 11/5 11/6 14/22 14/23 18/25 35/15 35/25 40/2 50/18 53/20 57/4 58/6 58/21 59/2
Court's [1] 53/19
Courthouse [1] 1/7
Courtroom [1] 3/19
courts [3] 13/6 13/7 15/19
cover [2] 5/18 53/8
CRC [1] 59/1
create [1] 46/2
credibility [1] 44/1
credible [1] 43/25
cross [3] 42/9 42/12 43/19
cross-examine [3] 42/9 42/12 43/19
CROWELL [1] 3/2

**C**

CRR [1]  59/1
crystal [1]  23/22
current [1]  55/18
custodial [8]  41/17 41/21
42/1 42/10 43/5 43/17
44/6 44/24
cut [1]  26/2
CVS [1]  3/7

**D**

D'LESLI [1]  3/12
D.C [1]  2/4
Dallas [1]  3/13
damage [3]  53/16 56/25
57/6
damages [7]  50/16 52/5
53/10 54/9 54/24 55/1
56/24
DANIEL [11]  2/2 4/6
9/14 17/25 20/9 21/11
27/19 30/1 31/13 35/9
48/22
data [3]  27/16 27/17
30/18
date [8]  6/23 30/25 31/2
31/7 31/9 34/3 37/14
37/14
dates [1]  31/8
Daubert [7]  7/6 8/23 9/5
13/18 19/14 30/6 50/9
DAVIDSON [1]  2/6
DAVIS [2]  2/17 3/12
day [3]  5/20 34/1 42/15
days [1]  41/2
DC [1]  3/3
deal [1]  41/23
deals [1]  50/8
dealt [1]  56/11
decent [1]  36/13
decertifying [1]  55/5
decide [4]  25/2 35/14
35/16 50/11
decided [1]  31/20
decides [1]  39/22
decision [3]  30/8 38/20
57/1
defendant [7]  2/15 3/4
3/10 3/14 17/10 31/25
35/4
defendants [33]  2/7 2/11
2/19 2/23 3/7 3/17 6/7 9/1
10/15 11/24 12/9 14/12
15/2 16/1 16/14 16/15
16/18 23/13 25/6 25/7
25/7 25/22 25/25 26/4
34/15 34/18 35/12 35/14
36/8 36/19 36/20 38/10
51/5
defendants' [1]  10/12
defense [12]  4/18 6/15
34/10 34/22 38/11 42/2
48/20 52/8 53/23 53/25
57/15 57/17
degree [1]  36/10
degrees [1]  24/10
Delaware [1]  11/5

delay [1]  32/4
delayed [1]  38/15
depending [2]  10/19
10/25
depends [1]  27/10
depose [7]  6/18 40/3
40/10 40/15 41/1 45/14
46/8
deposed [4]  39/8 40/6
40/20 41/6
deposing [2]  45/12 47/23
deposition [22]  23/9
31/23 39/3 39/5 41/15
44/6 44/18 45/19 46/17
46/20 46/25 47/1 47/2
47/21 48/3 48/8 49/3 49/5
49/10 49/17 49/21 50/2
depositions [6]  39/8
39/24 40/1 49/4 49/23
50/3
Deputy [1]  3/19
designate [3]  47/15 47/19
47/19
designations [1]  31/23
desperately [2]  18/21
18/22
despite [1]  33/6
destroyed [2]  44/8 44/10
determination [2]  30/10
44/2
dictate [1]  25/21
did [12]  6/5 10/22 14/6
17/6 21/13 26/18 45/16
45/17 45/18 45/20 49/7
50/14
didn't [6]  9/18 11/4 16/11
24/20 31/15 54/22
difference [2]  24/14 29/1
different [15]  4/21 9/18
15/9 15/10 15/20 15/22
15/23 16/3 16/6 20/23
27/9 27/13 41/24 47/19
56/20
difficult [1]  30/19
diminish [1]  56/19
diminution [2]  54/16
54/23
direct [1]  39/9
directly [1]  54/3
disadvantage [1]  45/1
disagree [7]  18/2 18/4
35/9 38/8 43/11 58/2 58/8
disagreement [1]  50/13
discovery [7]  45/21 45/22
50/16 52/5 53/7 54/11
54/17
discretion [1]  33/13
discuss [2]  5/15 6/24
discussing [1]  54/18
discussion [2]  37/19 38/2
dismiss [1]  26/9
dismissed [1]  13/6 20/5
disposition [1]  30/7
dispositive [1]  30/5
dispute [1]  30/12
DISTRICT [2]  1/1 1/1
document [4]  42/4 42/17

44/7 44/16
documents [15]  42/3
42/13 42/21 44/2 44/9
44/9 45/5 45/17 45/18
45/20 46/19 46/23 47/10
47/10 47/17
does [9]  10/23 14/23 17/9
28/11 36/22 37/8 46/2
51/16 52/6
doesn't [10]  7/1 13/13
14/22 29/1 41/20 43/25
44/25 50/24 51/11 56/19
doing [11]  9/11 10/19
11/10 15/11 19/10 22/2
22/4 25/17 33/4 40/24
56/13
done [16]  7/4 9/17 10/16
10/18 11/24 11/25 12/5
13/16 16/22 29/13 33/11
33/12 37/9 37/17 53/8
53/10
doubt [1]  43/24
down [4]  15/15 16/17
16/24 25/11
downtime [2]  56/4 56/14
Dr. [2]  45/16 45/19
Dr. Lin [2]  45/16 45/19
dream [1]  6/20
Drive [1]  2/22
drug [1]  56/20
due [3]  15/7 17/23 46/4

**E**

each [2]  23/6 25/18
earlier [1]  49/4
earliest [1]  46/7
early [3]  9/2 24/8 33/17
easy [1]  44/14
ECF [1]  50/9
econ [2]  39/13 39/15
economic [7]  1/22 2/4
5/25 52/15 55/16 56/9
56/22
effect [2]  25/20 43/23
effectively [1]  42/8
efficiencies [1]  26/10
efficient [4]  23/23 26/19
37/22 56/6
effort [1]  44/16
efforts [2]  18/25 45/11
Eisenhower [1]  1/18
either [1]  55/13
elaborate [2]  52/18 52/20
ELLIS [1]  2/9
else [9]  23/21 29/13 32/7
43/4 45/14 57/11 57/15
57/17 57/21
email [6]  41/25 42/15
45/6 45/12 46/3 46/12
emphatic [1]  18/25
enable [2]  7/13 7/19
end [3]  5/20 20/8 22/10
endorsing [1]  27/12
ends [1]  52/12
energy [1]  28/11
engage [1]  57/4
enough [3]  39/22 43/25

46/21
ensure [1]  40/25
enter [1]  28/5
entire [3]  18/11 45/13
46/14
entities [1]  36/20
entitled [1]  58/24
envision [2]  7/3 7/4
envisioning [2]  49/12
49/14
epi [3]  12/21 14/25 23/4
epidemiological [2]  11/1
15/5
error [2]  46/2 46/6
esophageal [8]  10/3 10/4
10/9 10/10 13/5 15/16
21/8 26/12
ESQUIRE [19]  1/14 1/17
1/20 2/2 2/3 2/6 2/10 2/13
2/14 2/17 2/17 2/21 3/2
3/5 3/9 3/12 3/15 3/20
3/21
essentially [3]  25/7 25/14
54/25
establish [1]  42/14
estoppel [1]  39/19
et [2]  37/8 46/10
evaluate [1]  34/25
even [12]  11/2 16/1 16/24
27/18 34/19 36/18 36/22
40/15 41/19 42/25 43/2
51/6
ever [1]  23/18
every [5]  13/16 26/22
42/16 42/17 45/6
everybody [1]  32/7
everyone [3]  52/25 53/2
53/4
everything [5]  11/9 43/6
43/24 44/18 57/21
evidence [5]  43/16 45/3
46/10 46/11 51/2
exactly [3]  28/18 34/9
44/11
examine [3]  42/9 42/12
43/19
example [4]  10/2 11/3
11/12 30/21
exasperated [1]  53/2
excuse [1]  43/8
exist [2]  46/23 46/24
existed [1]  44/9
existing [1]  55/6
expanded [1]  39/17
expect [1]  47/8
expectation [1]  48/10
expense [1]  49/20
expert [24]  6/19 6/19
10/17 10/20 11/25 12/5
15/23 16/16 16/18 16/22
16/24 21/1 21/21 21/24
22/2 23/4 23/6 23/13 24/2
29/13 31/19 53/9 54/11
56/25
experts [10]  6/18 6/18
8/23 11/2 15/10 16/1
20/24 53/16 54/9 56/22

explain [3]  7/17 10/4
43/4
explained [1]  42/3
explanation [2]  42/15
43/8 44/10
Express [1]  3/17
extent [7]  9/4 10/5 15/1
16/2 36/11 41/1 41/21
extraordinarily [1]  12/22
extreme [1]  45/13
extremely [2]  14/25 15/2

**F**

face [1]  42/10
fact [4]  27/11 39/1 39/18
42/16
factors [1]  9/23
factual [2]  53/7 54/15
factually [2]  15/11 45/4
fair [2]  20/11 25/16
fairly [2]  44/25 56/3
fairness [2]  39/20 40/15
FALKENBERG [1]  3/8
fall [7]  6/22 12/7 24/4
24/8 24/9 24/11 41/22
far [1]  41/18
fashion [2]  10/11 36/5
fast [1]  39/18
fearful [1]  15/3
February [1]  53/5
FEDERAL [1]  58/21
feel [4]  6/4 29/24 32/11
33/1
feels [1]  32/7
felt [1]  40/23
few [4]  5/5 5/22 30/9
52/12
file [12]  14/10 14/17
14/21 14/24 41/17 41/21
42/1 42/10 43/5 43/17
44/7 44/24
filed [1]  53/2
files [3]  44/7 45/15 46/9
filings [1]  26/25
fill [1]  41/20
finally [2]  13/21 32/3
find [5]  11/10 19/15
22/14 44/14 54/22
fine [1]  41/2
finished [1]  27/24
first [59]  5/10 6/6 6/23
8/8 8/25 9/8 9/15 9/16
9/24 11/8 11/13 11/19
11/22 11/23 12/8 12/24
15/12 15/12 16/8 16/12
16/21 17/7 17/16 17/16
17/24 18/1 18/4 19/13
21/23 21/25 22/1 22/4
25/3 28/19 29/2 29/3 29/7
29/8 29/25 31/6 31/16
31/25 32/1 33/24 35/11
35/21 37/15 38/9 47/14
47/24 47/25 51/5 51/16
53/1 53/11 53/14 55/14
55/20 58/14
fits [1]  17/8
five [15]  24/14 29/8

**F**

five... [13] 29/10 29/19 30/13 34/7 34/22 37/2 37/16 37/22 37/24 37/24 48/15 52/13 58/11
five-minute [1] 48/15
five-month [1] 24/14
fleshed [1] 57/25
FLOM [1] 2/5
Floor [2] 2/3 2/14
flow [1] 57/22
focus [3] 6/1 26/3 30/17
focused [2] 10/15 54/21
follow [1] 14/16
followed [1] 8/2
following [4] 7/4 8/8 22/3 47/2
follows [1] 4/3
footprint [1] 56/10
forcing [1] 4/13
forecast [1] 31/11
foreclose [1] 40/3
foregoing [1] 58/23
formed [3] 24/25 42/19 43/13
Forsyth [1] 31/10
forth [3] 5/22 50/1 51/8
forward [13] 6/10 6/11 8/4 11/8 13/21 16/14 18/23 22/9 22/13 23/20 26/16 38/3 40/12
four [6] 16/4 20/23 22/11 37/15 47/24 54/13
fourth [1] 20/21
frame [2] 29/22 30/4
framing [1] 36/17
FRANK [3] 2/13 34/14 50/14
frankly [1] 29/23
FREEMAN [1] 1/17
front [1] 36/12
FULBRIGHT [1] 3/11
full [1] 44/22
fuller [1] 19/2
fundamental [1] 55/15
further [2] 25/11 34/25

**G**

game [1] 12/18
gamesmanship [1] 39/20
gap [2] 41/20 41/22
gaps [2] 41/17 42/1
Gaston [15] 8/5 8/7 8/19 8/21 17/7 18/1 19/24 29/6 30/13 31/12 31/15 32/1 34/5 37/4 51/17
gastric [5] 21/6 21/13 21/16 21/18 22/2
general [5] 6/3 7/5 8/11 23/1 23/1
generally [6] 10/23 13/14 22/11 22/25 23/9 34/17
Georgia [1] 2/18
gets [4] 10/14 17/21 27/21 56/20
getting [5] 5/15 7/8 7/20 9/9 12/19 28/9 30/8 31/18

48/2 55/23 57/8
give [5] 5/5 13/13 21/6 21/8 56/7
given [1] 49/20
giving [1] 38/17
glad [1] 32/5
glean [1] 15/8
goal [3] 8/17 13/9 13/9
goals [1] 28/8
goes [3] 31/20 41/16 55/24
GOLDENBERG [1] 2/2
gone [1] 23/1
good [7] 34/14 38/7 38/7 38/7 52/22 53/14 53/24
GORDON [1] 2/13
got [11] 9/21 12/4 23/21 24/18 24/18 28/3 30/10 32/4 37/13 43/22 51/3
gotten [2] 44/12 44/13
Grant [1] 3/22
grapple [1] 55/14
GREENBERG [2] 2/16 2/21
Greg [3] 53/24 55/22 56/16
GREGORY [1] 2/21
group [3] 13/16 13/17 34/22
guaranteed [1] 11/19
guess [5] 36/25 41/10 41/23 49/9 49/20
gun [1] 46/3

**H**

half [3] 11/16 11/20 56/12
hamstrung [1] 42/8
hand [1] 39/2
handle [3] 16/9 44/4 45/17
handling [1] 5/10
happen [6] 12/7 20/5 30/2 31/24 36/13 36/14
happened [5] 22/3 23/2 45/15 45/20 46/18
happening [1] 28/18
happens [1] 51/10
happy [3] 5/19 14/4 52/20
hard [2] 37/19 39/18
HARKINS [1] 2/17
has [17] 5/24 8/6 17/2 19/13 23/2 31/5 38/15 42/6 42/11 45/7 45/7 45/23 46/2 46/4 53/7 56/10 58/12
have [135]
haven't [2] 12/5 23/12
having [11] 7/3 7/11 9/8 25/23 32/8 40/15 40/19 46/3 46/5 51/4 55/6
he [15] 5/3 33/16 43/6 43/6 43/7 43/25 45/21 46/8 47/8 47/16 47/16 48/10 53/6 54/22 56/17
he's [6] 41/24 42/23

42/24 43/3 43/9 47/22
head [2] 32/21 41/9
Health [1] 3/4
Healthcare [1] 2/8
hear [6] 5/2 6/15 7/22 7/24 14/1 53/19
heard [9] 17/5 20/13 20/17 23/12 33/21 33/22 38/22 50/14 53/20
hearing [4] 35/13 37/20 40/21 50/9
hearings [1] 55/6
heart [1] 55/16
held [2] 4/1 54/14
help [1] 51/11
helpful [2] 19/8 41/8
her [8] 28/8 36/12 39/5 41/8 41/9 41/17 41/21 57/2
here [24] 9/21 10/22 13/9 13/10 13/19 18/17 19/5 19/19 22/12 23/11 28/18 29/15 29/17 30/9 31/11 32/4 36/11 39/8 40/6 40/11 41/6 49/5 51/12 53/2
here's [5] 38/23 45/5 46/15 46/15 46/16
highlights [1] 35/10
highly [3] 43/15 56/6 56/6
him [15] 4/13 5/4 40/15 40/16 40/17 41/16 42/22 43/11 45/19 45/21 45/21 46/8 46/17 47/23 47/24
his [18] 33/7 41/15 42/1 42/10 43/5 43/17 44/7 44/24 45/6 46/7 46/9 46/25 47/2 48/2 48/9 49/5 54/21 55/9
hodgepodge [3] 11/9 15/10 24/2
HONIK [4] 1/14 1/14 52/19 54/3
Honor [77]
Honor's [1] 33/13
HONORABLE [3] 1/10 3/20 4/2
hope [1] 5/20
hopefully [2] 13/20 22/9
hoping [3] 17/22 38/13 38/21
horse [1] 7/17
hours [1] 30/9
Huahai [2] 2/7 2/8
huge [1] 41/20 42/11
Humana [1] 3/10
hundred [1] 27/12
HUSCH [1] 3/15
hypothetical [1] 31/7

**I**

I'd [4] 6/1 17/20 19/20 31/7
I'll [15] 4/7 5/19 5/20 6/6 17/16 29/9 29/19 29/19 33/12 34/16 39/13 50/7

57/17 58/10 58/12
I'm [39] 4/24 5/10 10/4 12/6 13/1 13/15 14/4 16/14 17/18 18/10 24/9 27/24 27/25 29/8 29/22 31/6 31/11 32/5 32/6 32/6 32/23 32/24 33/9 33/21 36/25 38/13 38/17 38/21 39/19 42/5 45/2 45/3 47/9 47/14 50/1 52/19 55/22 57/16 58/7
I've [6] 13/17 19/6 23/18 23/21 43/22 52/24
ice [3] 27/22 27/23 28/1
idea [13] 9/16 14/25 15/8 22/24 23/3 26/8 26/9 26/10 28/21 44/24 53/14 56/19 57/7
ideas [2] 7/12 26/8
identified [2] 5/18 58/12
identifies [1] 58/11
identify [4] 6/18 29/10 44/17 52/13
ignore [1] 28/5
ignoring [1] 28/17
Illinois [2] 2/22 3/10
imagine [1] 33/10
impact [2] 29/17 51/19
implicate [1] 51/7
important [3] 10/5 16/12 17/1
improve [1] 12/23
inasmuch [1] 53/11
Inc [10] 2/8 2/8 2/11 2/15 2/19 2/20 2/23 2/24 3/7 3/17
inclination [1] 28/12
inclined [2] 17/18 55/22
include [2] 30/15 35/12
included [1] 24/22
includes [2] 19/14 21/7
including [2] 35/20 42/18
incorrect [1] 15/11
increased [1] 10/23 15/6
incremental [1] 36/5
Indianapolis [1] 3/6
indicated [2] 40/21 49/11
individual [1] 36/3
Industries [2] 2/19 2/23
inference [1] 45/2
information [21] 7/8 7/10 7/20 8/15 8/24 9/10 13/10 13/11 13/13 15/9 21/7 23/11 23/12 23/16 28/7 28/9 30/19 35/1 38/24 39/14 42/11
informs [1] 37/24
ingestion [1] 15/7
initial [1] 9/17
injury [6] 5/16 5/23 6/2 6/8 39/13 55/24
instance [1] 55/20
insufficient [1] 42/10
intend [2] 14/9 14/16
intended [2] 46/18 48/8
intention [1] 40/24
interesting [1] 52/15

interrupt [1] 31/15
intestine [1] 22/12
inure [3] 12/25 13/1 13/2
inures [1] 16/16
involve [3] 36/19 36/19 56/17
involved [3] 13/17 32/25 38/10
involving [1] 28/12
irbesartan [2] 1/4 42/16
isn't [3] 27/11 39/10 54/18
issue [24] 14/15 25/11 31/3 34/16 35/20 35/25 36/8 36/18 36/23 37/1 37/3 37/8 39/10 40/19 40/21 47/11 50/7 50/10 51/8 51/9 51/16 54/2 54/23 58/10
issued [1] 35/3
issues [9] 4/5 5/10 6/24 28/2 37/7 40/14 50/6 55/15 55/15
items [1] 57/20
its [1] 42/10
IVES [2] 3/8 3/9

**J**

jam [1] 33/9
jammed [1] 33/8
January [1] 9/2
January 2026 [1] 9/2
JASON [1] 2/14
JERSEY [3] 1/1 1/8 1/18
JESSICA [19] 2/6 12/12 17/2 17/5 17/6 17/25 18/2 20/1 20/18 22/6 29/24 37/12 40/18 41/9 45/10 48/4 48/19 49/8 58/2
Jessica's [1] 10/1
Jinsheng [14] 38/19 40/14 41/14 41/24 43/24 44/6 46/8 46/17 47/1 47/6 47/15 49/13 49/14 50/2
John [4] 1/23 1/23 48/17 59/1
join [1] 32/5
joined [2] 6/5 33/15
joint [1] 14/12
Judge [22] 13/18 28/7 33/15 36/12 46/1 50/10 50/19 52/22 53/5 53/13 54/4 54/14 54/20 55/3 55/7 55/9 55/14 55/21 57/2 57/9 57/21 58/13
Judge Bumb's [1] 53/13
judgment [7] 7/7 8/23 9/4 13/19 19/15 47/5 55/9
judgments [1] 30/20
judicial [2] 3/20 39/19
July [3] 31/6 32/18 33/7
July 1st [1] 31/6
jury [1] 44/24
just [59] 7/1 7/21 13/7 15/10 15/18 17/4 18/3 18/5 20/13 20/17 20/18 23/6 23/15 23/18 24/5

**J**

**just... [44]** 24/10 24/21 25/20 26/9 26/11 26/12 26/13 27/19 27/21 28/22 31/7 31/14 31/15 32/15 32/24 33/2 33/13 35/2 35/2 35/4 35/22 35/23 35/25 36/17 36/22 38/9 39/6 39/7 40/5 40/25 45/4 45/25 46/13 47/16 47/19 47/23 49/4 50/19 50/23 50/23 50/25 52/9 56/6 56/20

**K**

**KANNER [1]** 1/20
**KAPKE [1]** 3/5
**KAPLAN [1]** 3/2
**KARA [1]** 3/5
**KATZ [1]** 1/17
**keenly [1]** 52/25
**keep [2]** 45/20 50/25
**kept [1]** 46/9
**kind [1]** 35/10
**KIRKLAND [1]** 2/9
**KIRSTIN [1]** 3/9
**KNEPPER [1]** 3/15
**knew [2]** 39/17 43/7
**know [63]**
**knowledge [3]** 18/23 19/2 19/11
**knows [5]** 34/20 39/16 45/3 53/5 57/2
**Kong [7]** 38/19 38/24 39/12 40/13 41/4 41/4 48/2
**Kong's [1]** 39/3
**Kugler [4]** 3/20 53/5 54/14 54/20
**Kugler's [2]** 55/3 55/9
**Kurz [3]** 1/23 1/23 59/1

**L**

**Labor [1]** 33/25
**land [1]** 32/13
**large [1]** 29/11
**largely [2]** 53/16 53/18
**Larry [1]** 3/19
**last [7]** 7/12 40/21 46/1 49/2 54/4 54/18 55/7
**late [9]** 6/11 6/12 16/21 22/18 24/3 24/4 24/9 24/11 33/17
**later [2]** 7/22 9/2
**latest [1]** 53/15
**law [2]** 3/20 9/19
**lawyers [1]** 32/11
**lead [5]** 1/16 1/19 1/22 2/4 49/11
**lead-up [1]** 49/11
**leading [1]** 41/2
**learn [1]** 12/16
**least [9]** 15/22 17/25 29/7 39/5 41/4 43/22 44/22 45/4 57/2
**leave [1]** 33/13
**led [1]** 42/22

**left [1]** 25/8
**less [7]** 10/7 10/9 20/7 27/4 41/18 54/19 55/2
**let [8]** 17/4 19/18 44/6 44/16 44/18 44/19 45/19 57/17
**let's [10]** 5/5 6/15 8/16 30/10 41/13 44/8 44/10 44/14 48/15 58/1
**letter [2]** 5/17 54/8
**Lexecon [13]** 34/9 34/10 34/17 34/20 34/25 35/17 35/19 36/2 36/21 37/1 37/3 37/7 37/7
**Lexington [1]** 2/10
**liability [6]** 1/5 11/25 12/5 16/18 16/22 31/19
**light [1]** 22/9
**like [29]** 5/19 6/1 6/12 7/16 7/21 7/22 7/23 13/24 16/1 17/20 18/24 19/21 21/6 22/17 28/7 28/24 31/1 31/2 31/4 31/5 31/7 32/13 35/18 37/23 40/22 40/23 42/14 53/1 57/7
**likelihood [1]** 12/19
**likely [5]** 15/22 20/19 27/15 34/4 57/1
**limit [1]** 24/20
**limited [1]** 11/24
**Lin [14]** 38/19 40/14 41/14 41/24 43/24 45/16 45/19 45/25 46/8 47/7 47/15 49/3 49/13 49/14
**Lin's [5]** 44/6 45/15 46/17 47/1 50/2
**line [2]** 25/7 29/6
**lines [1]** 22/7
**lingering [1]** 18/22
**list [1]** 37/15
**Listen [1]** 38/15
**listening [2]** 19/17 52/24
**litigation [15]** 1/5 11/14 11/17 13/13 15/25 18/22 19/6 19/7 22/9 22/19 23/20 26/1 26/17 27/22 28/14
**little [4]** 19/11 21/8 26/4 42/6
**live [2]** 40/9 48/10
**liver [23]** 8/2 8/6 9/8 9/8 10/24 11/12 11/14 12/24 15/12 16/9 17/7 21/3 21/12 21/18 21/22 24/21 25/3 26/13 26/24 27/1 27/3 27/7 27/20
**LLC [6]** 1/14 1/17 1/20 2/8 2/19 2/23
**LLP [10]** 2/5 2/9 2/13 2/16 2/21 3/2 3/5 3/8 3/11 3/15
**LOCKARD [1]** 2/17
**long [4]** 10/13 38/15 42/15 47/24
**longer [2]** 22/19 39/25
**look [5]** 7/12 8/3 20/24 27/16 37/23

**looked [1]** 7/11
**looking [6]** 16/7 20/1 24/9 53/11 57/20 58/13
**looks [1]** 13/24
**loose [1]** 52/12
**Loretta [1]** 3/20
**LOSARTAN [1]** 1/3
**loss [8]** 1/22 2/4 5/25 39/13 39/15 52/16 55/16 56/9
**lot [10]** 6/22 6/23 12/4 29/15 37/8 44/5 44/15 51/7 51/12 57/25
**lots [2]** 23/11 38/15
**Louis [1]** 3/16
**Louisiana [1]** 1/21
**Ltd [4]** 2/8 2/12 2/19 2/23
**lulled [1]** 38/23
**lymphoma [6]** 10/3 10/5 10/8 13/5 15/16 21/7

**M**

**Macao [2]** 49/22 50/3
**MacStravic [1]** 3/19
**made [8]** 5/24 28/8 30/20 33/16 46/2 49/25 56/12 57/2
**Maggie [8]** 38/19 38/24 39/2 39/12 40/13 41/4 41/4 48/2
**Maggie's [1]** 49/10
**magnitude [1]** 56/5
**maintained [1]** 47/17
**make [12]** 7/1 7/7 14/6 17/17 18/6 28/23 33/14 35/23 37/11 42/14 44/1 44/19
**makes [8]** 17/21 21/2 21/17 38/2 38/6 38/18 44/11 45/22
**making [2]** 30/19 45/13
**man [1]** 45/18
**manageable [1]** 24/15
**management [5]** 1/5 5/15 54/4 54/19 55/8
**Manhattan [1]** 2/6
**manipulated [1]** 44/25
**manner [1]** 43/18
**many [7]** 17/17 20/1 20/9 22/14 23/18 34/18 36/18
**mapped [1]** 32/21
**Market [1]** 1/15
**massive [3]** 42/1 42/1 43/10
**MASTER [5]** 1/11 4/2 28/5 30/11 50/8
**material [1]** 47/10
**matter [5]** 5/22 34/5 37/4 57/3 58/24
**matters [3]** 4/21 19/5 29/16
**MATTHEW [1]** 3/15
**maximize [1]** 12/19
**may [20]** 6/12 6/13 6/14 12/13 17/3 22/21 25/11 26/7 26/9 28/3 29/23 30/6

**30/14 30/15 33/17 35/22 46/25 51/19 51/21 52/20 52/21 53/11 57/11
**May 1st [1]** 29/23
**maybe [8]** 13/8 13/12 19/18 33/23 34/10 34/18 36/18 38/17
**MAZIE [1]** 1/17
**Mckesson [1]** 3/14
**md [1]** 1/4
**MDL [16]** 1/16 1/19 7/4 9/12 10/8 10/9 11/4 13/7 13/10 13/16 13/21 23/18 35/6 53/9 54/13 56/10
**MDLs [2]** 9/17 20/4
**me [14]** 5/9 7/21 16/7 17/4 17/11 19/17 34/11 38/21 39/3 46/4 46/13 47/9 51/11 57/8
**MEAGHER [1]** 2/5
**mean [8]** 6/12 14/8 20/13 21/20 25/17 31/15 41/16 57/24
**means [2]** 27/21 51/12
**mechanical [1]** 1/25
**meet [1]** 31/1
**mentioned [1]** 17/8
**mentioning [1]** 53/4
**Meridian [1]** 3/6
**methodically [1]** 24/1
**Michelle [1]** 3/22
**might [3]** 28/24 37/24 52/11
**mind [3]** 32/15 40/22 50/25
**minimize [1]** 39/5
**minute [1]** 48/15
**minutes [1]** 5/5
**missing [1]** 42/11
**Missouri [1]** 3/16
**Mitchell [1]** 1/7
**mix [1]** 55/11
**model [1]** 54/24
**Monroe [1]** 3/9
**month [1]** 24/14
**months [3]** 9/2 28/10 45/19
**more [28]** 9/24 11/10 11/15 11/15 11/20 13/14 15/8 15/13 16/1 16/24 21/2 21/7 22/10 22/25 23/8 23/16 23/23 25/24 26/19 26/20 34/25 35/5 37/21 38/2 38/6 46/18 51/8 57/25
**MORING [1]** 3/2
**most [21]** 8/15 8/24 9/11 9/17 10/16 11/25 15/14 21/5 21/16 21/17 26/16 26/23 26/25 27/1 27/5 27/6 27/15 27/18 28/13 34/19 36/18
**motion [6]** 14/10 14/17 14/21 14/24 25/10 30/5
**motions [3]** 28/12 30/5 30/6
**move [11]** 13/21 16/9 16/9 18/23 22/8 22/12

**23/20 23/21 24/1 33/14 40/12
**movement [1]** 53/3
**moves [1]** 24/3
**moving [1]** 23/23
**Mr. [9]** 41/10 45/8 53/6 45/15 45/25 46/8 49/3 54/3 54/8
**Mr. Honik [1]** 54/3
**Mr. Lin [2]** 45/25 49/3
**Mr. Lin's [1]** 45/15
**Mr. Nigh [1]** 18/5
**Mr. Slater [3]** 4/10 33/6 46/8
**Mr. Slater's [1]** 54/8
**MTD [3]** 54/14 55/3 55/9
**much [11]** 7/10 11/10 12/17 23/23 28/7 30/1 32/8 35/7 38/17 41/20 58/15
**multi [9]** 8/2 11/15 12/20 12/23 14/7 14/22 14/23 14/23 17/19
**multi-plaintiff [6]** 8/2 11/15 12/20 12/23 14/7 17/19
**multiple [6]** 4/18 4/20 8/12 19/20 28/12 38/10
**mute [3]** 4/19 14/2 34/13
**muted [1]** 4/6
**my [18]** 5/20 6/4 10/14 18/25 23/24 24/9 28/1 28/6 30/9 32/11 32/21 33/3 33/3 47/5 47/20 48/5 49/25 57/17
**Mylan [12]** 2/15 12/3 16/17 16/23 31/19 34/14 35/13 35/15 35/21 36/13 36/14 36/17
**Mylan-specific [1]** 36/17

**N**

**name [1]** 8/6
**named [1]** 47/24
**narrow [2]** 25/11
**nation [1]** 11/21
**NDEA [5]** 25/10 51/2 51/7 51/9 51/16
**NDMA [4]** 15/7 42/19 43/13 51/7
**NE [1]** 2/18
**necessarily [3]** 14/21 26/21 36/23
**necessary [1]** 30/17
**need [26]** 6/16 6/17 6/18 6/19 6/24 10/18 12/15 13/10 13/11 13/14 14/16 14/17 14/21 15/17 26/21 28/13 29/25 30/1 30/19 35/24 38/20 46/25 47/3 53/17 55/8 57/11
**needed [2]** 16/25 20/25
**needs [10]** 8/9 10/17 29/13 37/17 53/10 55/10 55/14 55/20 57/2 57/25
**never [3]** 40/22 42/3 42/4
**new [14]** 1/1 1/8 1/18

**N**

**new... [11]** 1/21 2/7 2/7 2/11 2/11 51/2 51/9 51/9 54/9 54/9 55/6
**next [15]** 2/25 5/22 15/14 17/14 17/17 20/15 21/16 27/2 28/10 28/10 28/20 30/9 32/9 32/12 34/7
**NIGH [3]** 2/2 2/2 18/5
**night [1]** 7/12
**nine [1]** 45/19
**nitrite [2]** 42/19 43/14
**njd.uscourts.gov [1]** 1/23
**no [19]** 6/19 20/11 23/7 23/14 27/16 27/23 27/23 30/12 33/19 37/3 38/24 39/25 40/19 40/24 45/22 45/25 50/13 50/15 58/3
**nodding [1]** 41/9
**none [1]** 20/10
**nonetheless [1]** 15/8
**NORTON [1]** 3/11
**nosedive [1]** 27/7
**not [76]**
**note [2]** 14/6 37/6
**Noted [1]** 24/13
**nothing [2]** 20/8 23/21
**now [37]** 5/4 5/14 5/14 6/5 6/15 7/22 9/21 12/3 14/20 16/2 16/16 16/23 17/14 19/23 23/5 25/1 28/17 35/13 35/17 36/14 37/19 38/25 39/2 39/12 39/24 41/13 43/11 44/5 45/13 46/21 47/4 47/8 47/22 48/19 52/14 56/4 56/23
**number [9]** 1/3 8/9 19/21 20/4 20/11 20/24 21/6 26/15 36/13
**numbers [2]** 27/16 56/10
**numerous [4]** 9/15 14/13 15/5 15/9
**NW [2]** 2/3 3/3

**O**

**obvious [5]** 14/11 53/7 56/3 56/9 56/22
**obviously [7]** 11/3 33/12 40/14 41/20 41/25 52/24 53/9
**occur [1]** 39/8
**occurred [1]** 23/4
**October [11]** 1/9 7/14 7/14 7/19 8/19 24/8 24/10 29/23 32/21 33/17 59/1
**October 1 [4]** 7/14 7/19 8/19 24/8
**October 15th [1]** 24/10
**October 1st [1]** 29/23
**off [2]** 9/15 18/4
**offering [1]** 45/18
**Official [2]** 1/23 58/21
**oftentimes [1]** 9/16
**oh [4]** 13/8 14/5 33/20 41/16
**okay [24]** 4/12 4/15 4/16

4/22 5/7 7/15 7/25 27/25 29/4 31/5 31/21 32/19 33/23 38/4 39/22 43/6 44/14 48/7 50/13 51/14 51/18 52/2 54/1 58/9
**once [10]** 12/2 27/6 30/25 34/20 34/21 37/1 37/15 40/5 49/14 52/1
**one [40]** 2/6 2/14 4/17 7/1 7/21 8/5 8/9 9/8 13/7 13/9 13/11 14/6 17/12 19/9 19/19 19/24 20/15 20/20 20/20 20/21 22/11 24/6 29/7 29/20 30/12 30/12 31/12 33/24 35/4 47/12 47/16 49/2 50/6 51/4 51/8 52/11 54/22 55/1 55/23 58/12
**one-case [1]** 19/19
**ones [3]** 16/15 28/20 35/15
**online [4]** 29/9 29/19 30/14 34/6
**only [13]** 12/8 23/12 24/16 29/10 31/25 35/12 36/4 36/8 47/20 49/12 49/14 50/23 51/5
**Opinion [3]** 54/14 55/3 55/9
**opinions [1]** 51/9
**opportunity [3]** 14/18 48/9 55/14
**oppose [1]** 14/12
**opposed [2]** 16/13 22/4
**order [7]** 5/17 5/21 19/19 31/3 50/9 56/4 58/11
**Orleans [1]** 1/21
**OSTFELD [2]** 2/21 53/25
**other [43]** 5/19 6/23 13/16 15/18 16/11 19/10 19/25 20/4 23/8 24/22 26/4 26/18 26/19 27/14 28/22 28/23 29/8 29/19 30/13 31/8 32/11 32/13 32/25 33/4 34/23 35/5 35/25 37/2 37/16 37/16 39/2 40/14 43/14 44/3 45/6 46/23 49/22 50/3 51/1 52/13 57/20 58/1 58/11
**others [2]** 4/11 29/10
**otherwise [2]** 40/2 57/18
**ought [1]** 56/13
**our [20]** 7/1 7/18 8/4 13/9 13/9 14/11 16/5 25/9 25/9 27/2 34/16 40/22 40/25 42/5 43/19 44/21 47/23 56/2 56/19 57/5
**out [19]** 5/18 13/8 19/20 22/15 24/9 25/14 25/22 26/2 26/11 26/17 28/25 32/21 33/2 36/15 38/23 41/7 44/14 52/6 57/25
**outlier [1]** 7/21
**outlines [1]** 5/21
**outside [1]** 55/24

**outsized [1]** 56/10
**outstanding [1]** 50/6
**over [5]** 23/19 23/19 23/20 29/16 39/1
**overall [2]** 9/24 21/9
**own [1]** 42/18
**Oxford [1]** 2/14

**P**

**p.m [5]** 1/9 4/3 48/16 48/16 58/20
**pace [2]** 23/21 23/23
**package [1]** 19/13
**page [1]** 2/25
**papers [3]** 14/11 25/10 27/2
**parameters [2]** 17/8 25/21
**Parkway [1]** 1/18
**part [4]** 4/5 10/12 45/24 53/21
**particular [3]** 53/4 53/10 55/25
**parties [2]** 8/20 14/10
**party [3]** 1/22 2/4 54/12
**party's [1]** 13/2
**past [3]** 9/19 11/4 16/20
**Pause [2]** 4/23 5/8
**payor [3]** 1/22 2/4 54/12
**Pennsylvania [4]** 1/15 2/15 3/3 11/6
**people [2]** 32/13 33/4
**per [3]** 10/19 11/7 15/23
**percent [29]** 10/8 10/9 11/13 11/17 18/7 18/16 18/17 20/13 27/3 27/3 27/5 27/8 27/12 27/20 27/20 27/21 27/22 28/4 28/6 28/9 28/17 28/19 28/22 28/24 28/24 28/24 28/25 28/25 29/2
**percentages [1]** 27/7
**perhaps [3]** 5/25 17/15 30/4
**person [5]** 40/20 41/25 45/6 45/12 46/12
**personal [6]** 5/16 5/23 6/2 6/8 39/12 55/23
**persons [1]** 39/7
**perspective [4]** 7/1 28/16 32/12 44/21
**pertains [1]** 54/3
**Pharma [3]** 2/11 2/19 2/23
**Pharmaceutical [4]** 2/7 2/8 2/19 2/23
**Pharmaceuticals [4]** 2/12 2/15 2/19 2/23
**pharmacy [3]** 3/7 17/11 36/20
**Philadelphia [1]** 1/15
**phone [1]** 32/4
**pick [14]** 10/10 24/18 24/18 25/5 25/6 26/18 28/22 28/23 28/25 29/8 29/19 34/3 34/7 35/18
**picked [4]** 13/11 24/17

26/12 35/23
**picking [5]** 9/22 25/19 26/14 29/2 37/24
**picks [3]** 10/3 25/18 38/1
**Piedmont [1]** 2/18
**PIETRAGALLO [1]** 2/13
**pills [1]** 51/7
**pipe [1]** 6/20
**Pittsburgh [1]** 2/15
**place [5]** 9/2 17/21 49/22 49/23 50/3
**plaintiff [12]** 5/24 8/2 9/3 9/6 11/15 12/20 12/23 14/7 14/12 17/19 17/20 41/5
**plaintiff's [1]** 23/9
**plaintiffs [38]** 1/16 1/19 3/21 5/23 6/2 6/7 7/24 8/1 8/25 9/7 11/15 12/18 12/22 13/4 13/8 13/12 14/9 14/16 14/22 14/24 23/19 24/18 24/20 25/2 25/5 25/6 25/20 26/14 27/11 36/2 36/3 45/11 45/14 45/17 46/10 54/25 57/8 57/13
**plaintiffs' [7]** 4/5 7/12 8/8 15/24 36/9 48/23 55/16
**planned [1]** 32/12
**plans [2]** 33/3 33/3
**please [1]** 9/14
**plenty [1]** 32/14
**PLLC [1]** 2/2
**pluck [1]** 7/1
**plucked [1]** 13/8
**point [14]** 14/8 14/14 15/21 16/20 22/22 23/24 26/2 28/1 30/15 33/14 38/16 42/5 45/22 46/5
**pointed [1]** 26/11
**points [1]** 42/14
**policies [2]** 44/7 46/22
**policy [2]** 42/4 44/16
**pool [46]** 6/24 7/5 7/20 8/4 8/21 9/3 9/5 9/9 9/17 9/24 10/7 11/11 11/16 12/17 13/3 13/7 13/14 16/3 18/15 18/17 18/18 18/24 19/1 19/9 20/14 20/19 21/7 21/9 22/10 22/24 23/8 25/1 26/15 26/17 26/20 28/4 28/6 28/9 28/17 28/20 29/11 29/12 36/15 38/11 51/20 52/1
**posited [2]** 15/2 15/19
**position [5]** 34/10 34/16 34/19 34/25 39/19
**possibility [1]** 40/3
**possible [5]** 7/10 10/2 10/3 28/8 32/8
**post [2]** 9/4 9/4
**potential [2]** 8/14 25/10
**potentially [3]** 16/4 43/11 44/23

**practical [1]** 57/3
**predicate [1]** 54/6
**predominance [1]** 54/21
**predominant [2]** 54/23 55/5
**preface [1]** 50/7
**preference [1]** 9/7
**prejudice [2]** 39/18 43/10
**prejudiced [1]** 43/19
**prepare [3]** 5/21 34/7 42/9
**prepared [4]** 6/10 8/23 25/24 33/11
**preparing [3]** 19/1 31/18 56/2
**prescriber [1]** 23/10
**present [2]** 3/18 40/25
**presented [2]** 47/9 55/20
**presenting [2]** 54/9 56/18
**preservation [2]** 42/4 46/22
**presumably [2]** 42/24 44/17
**pretrial [2]** 31/1 37/8
**pretty [2]** 28/8 55/15
**primary [1]** 8/6
**principles [1]** 39/20
**Prinston [2]** 2/8 17/11
**prioritization [1]** 35/11
**prioritizing [2]** 28/19 29/2
**priority [1]** 36/15
**probably [7]** 15/13 21/5 21/22 33/3 33/25 55/20 57/21
**probe [1]** 46/18
**problem [11]** 10/1 20/17 35/19 39/3 41/15 41/16 41/17 43/15 43/16 43/21 54/12
**procedure [1]** 25/18
**proceed [14]** 5/25 7/21 7/23 14/9 21/4 21/5 29/15 30/21 33/5 46/16 47/6 47/20 54/19 55/21
**proceeding [5]** 13/10 22/6 35/6 55/4 55/13
**proceedings [5]** 1/25 4/1 7/4 58/20 58/24
**process [12]** 5/15 7/9 8/13 8/17 9/19 11/7 12/16 25/8 25/15 26/6 28/4 46/5
**produce [1]** 44/16
**produced [2]** 1/25 44/18
**production [1]** 44/17
**productive [1]** 13/22
**PRODUCTS [1]** 1/4
**proffer [3]** 39/14 39/16 41/19
**proffered [2]** 53/17 56/23
**proposal [7]** 6/10 7/12 10/1 10/12 10/14 26/13 26/16
**proposals [1]** 9/22
**propose [2]** 8/18 31/8
**proposed [4]** 8/1 11/6 11/14 52/8

**P**

**proposing [9]** 7/18 8/1 13/1 13/15 21/10 24/3 24/4 24/11 54/25

**provide [4]** 30/25 34/25 39/14 48/9

**provided [1]** 43/24

**pulls [1]** 10/2

**Punitive [2]** 50/16 52/5

**purely [1]** 57/3

**purpose [5]** 7/9 8/13 12/16 12/17 13/6

**purposes [1]** 30/19

**put [13]** 7/16 8/16 12/6 26/16 27/11 27/22 32/15 33/2 35/20 39/13 39/23 42/11 44/23

**putting [5]** 25/3 51/8 53/21 56/7 57/4

**Q**

**quarter [2]** 53/12 53/15

**quenching [2]** 42/20 43/14

**question [12]** 6/3 6/4 10/22 12/15 15/19 17/4 17/14 43/20 47/12 49/2 52/15 54/9

**questions [3]** 46/8 46/17 57/6

**quick [1]** 49/2

**quicker [3]** 10/15 23/24 24/2

**quickly [1]** 17/21

**R**

**raise [1]** 37/7

**raised [4]** 40/21 52/14 54/4 57/6

**raises [1]** 54/8

**raising [1]** 54/3

**random [2]** 21/7 30/14

**randomization [14]** 9/16 9/20 9/22 10/2 11/8 12/2 16/13 16/16 17/15 25/15 25/17 28/16 28/21 51/21

**randomize [1]** 35/14

**randomized [3]** 8/1 10/10 29/9

**randomizer [5]** 29/9 29/19 30/14 30/16 34/6

**randomly [10]** 8/10 8/20 13/11 16/3 18/8 18/16 20/18 28/23 30/13 37/25

**range [6]** 8/14 8/16 8/24 9/10 19/2 19/4

**rare [1]** 15/13

**RASO [1]** 2/2

**RASPANTI [1]** 2/13

**RDR [1]** 59/1

**RDR-RMR-CRR-CRC [1]** 59/1

**RE [1]** 1/3

**reach [2]** 17/16 56/5

**reached [1]** 17/12

**read [1]** 42/6

**ready [19]** 6/7 6/21 6/22 7/7 7/19 25/24 29/25 30/1 30/3 30/8 31/6 38/12 41/22 48/2 48/17 48/20 48/23 53/16 53/18

**readying [1]** 29/14

**real [2]** 7/20 18/23

**realized [1]** 15/21

**really [4]** 36/4 41/20 42/25 47/17

**reason [11]** 10/7 10/12 10/14 12/20 13/6 23/7 23/14 31/17 31/24 35/10 51/8

**reasonable [1]** 20/3

**reasonably [1]** 43/18

**reasons [4]** 14/13 38/16 46/23 51/4

**rebut [1]** 45/5

**recall [1]** 39/15

**receive [1]** 37/15

**Recess [1]** 48/16

**recognize [1]** 51/3

**recognizing [2]** 30/4 30/6

**recommend [1]** 17/18

**recommendations [1]** 17/17

**reconcile [1]** 55/9

**record [9]** 5/14 34/13 35/2 44/19 44/23 47/3 47/4 47/9 58/24

**recorded [1]** 1/25

**REEFER [1]** 2/14

**refer [1]** 55/18

**referral [1]** 55/18

**referred [1]** 42/4

**regard [2]** 35/1 39/12

**regarding [2]** 50/9 54/5

**related [1]** 25/10

**relative [1]** 9/11

**relevant [2]** 38/24 39/15

**relying [1]** 11/1

**remain [1]** 9/4

**remaining [2]** 47/21 51/20

**remains [2]** 9/5 53/9

**remanded [2]** 35/24 36/15

**remotely [1]** 43/17

**reopening [2]** 54/11 54/17

**replayed [1]** 48/9

**report [1]** 23/7

**reporter [1]** 1/23 50/18 58/6 59/2

**REPORTER'S [1]** 58/21

**Reporter/Transcriber [1]** 59/2

**reports [20]** 6/19 6/19 10/18 10/20 12/1 12/5 15/23 16/6 16/18 16/22 16/24 21/1 21/21 21/24 22/2 23/5 23/13 24/2 31/19 57/1

**represent [2]** 25/24 45/1

**representation [3]** 21/9 43/22 43/23

**representative [7]** 9/24

10/6 11/11 11/21 11/22 26/16 26/20

**request [3]** 14/9 33/7 50/8

**require [2]** 55/3 55/5

**resembling [1]** 43/18

**resetting [1]** 5/3

**resolved [1]** 26/6

**resolving [1]** 13/22

**resonated [1]** 57/8

**respect [7]** 14/7 17/23 29/14 30/5 34/21 37/3 47/6

**respectfully [1]** 55/17

**respond [8]** 9/13 12/13 14/18 22/21 35/22 40/18 53/22 53/25

**responding [1]** 5/17

**response [4]** 48/5 48/6 52/10 58/3

**rest [2]** 27/4 31/24

**result [1]** 33/8

**RET [3]** 1/10 3/20 4/2

**Retailer [1]** 3/7

**retroactive [1]** 54/6

**revisit [1]** 51/25

**revisiting [1]** 55/3

**rid [1]** 45/18

**Ridge [1]** 2/3

**right [53]** 4/4 4/9 4/12 5/4 5/5 5/11 5/13 6/14 6/15 6/25 7/8 7/11 8/12 8/16 12/10 14/20 16/16 18/14 21/10 24/19 24/23 24/24 25/13 27/8 28/3 32/2 33/25 34/3 34/4 37/10 41/3 41/8 41/13 45/9 46/15 47/4 48/11 48/13 49/1 49/11 50/2 50/4 50/16 51/11 51/18 51/22 51/24 52/11 52/21 57/19 58/4 58/10 58/14

**rights [3]** 34/17 36/2 36/21

**risk [2]** 10/24 15/6

**RMB [1]** 1/4

**RMR [1]** 59/1

**Road [1]** 2/18

**Robert [1]** 3/20

**Roberts [16]** 8/5 8/7 8/19 8/22 17/7 18/1 19/24 29/6 30/13 31/12 31/16 32/1 34/5 34/24 37/4 51/17

**roll [1]** 57/5

**room [1]** 4/24

**ROSE [1]** 3/11

**Roseland [1]** 1/18

**Rosemarie [1]** 3/21

**Ross [1]** 3/12

**round [2]** 29/4 29/5

**RUBEN [1]** 1/14 52/19 55/23

**rule [2]** 14/10 28/12

**rules [1]** 14/17

**ruling [4]** 44/11 49/3 55/10 55/10

**rulings [2]** 21/25 37/8

**S**

**said [15]** 17/23 18/5 20/18 28/17 29/19 34/6 43/2 43/3 43/12 44/5 46/1 49/3 55/7 56/17 58/7

**SAK [1]** 1/4

**same [14]** 8/10 8/18 9/9 15/10 15/18 15/19 19/9 21/1 21/23 22/5 22/13 24/2 48/1 48/5

**sanction [2]** 45/24 45/25

**sanctioned [1]** 45/24

**sanctions [1]** 47/3

**sartans [1]** 43/15

**save [1]** 33/7

**saw [3]** 25/10 43/6 55/15

**say [32]** 9/2 13/24 14/3 18/4 18/19 19/23 19/25 21/13 24/5 25/2 25/4 25/8 25/20 25/23 30/10 31/5 35/2 35/15 38/9 41/19 42/2 42/16 42/25 43/4 43/12 43/25 43/25 44/14 47/16 49/7 49/9 50/23

**say-so [1]** 25/8

**saying [10]** 12/6 28/1 29/8 31/7 32/24 35/18 36/25 44/12 50/7 50/19

**says [11]** 4/13 5/3 42/18 42/18 42/25 43/2 43/3 43/12 44/3 45/6 45/7

**schedule [3]** 17/20 30/7 57/3

**scheduled [1]** 38/9

**scheduling [4]** 31/2 31/18 41/7 51/4

**science [7]** 19/3 19/4 22/15 22/25 23/3 23/5 51/9

**scope [1]** 55/25

**screen [1]** 48/19

**Scripts [1]** 3/17

**second [14]** 9/1 9/6 15/3 19/15 20/13 20/15 20/20 25/4 27/1 27/15 27/18 35/11 38/3 53/14

**see [13]** 4/4 4/24 9/5 13/19 22/14 26/13 32/10 36/11 41/9 41/10 44/10 48/19 55/21

**seeing [2]** 37/22 37/23

**seek [1]** 47/3

**seemed [2]** 33/17 33/17

**seems [4]** 16/7 17/11 26/3 39/3

**seen [5]** 15/25 38/1 42/5 42/6 52/1

**select [5]** 9/5 18/17 20/18 30/13 37/13

**selected [7]** 8/10 8/20 16/3 34/23 37/2 52/1 58/1

**selecting [1]** 25/1

**selection [5]** 9/18 24/21 30/22 36/11 57/22

**sense [9]** 7/1 8/14 17/21 21/3 21/17 38/2 38/6 38/18 45/22

**sent [1]** 52/8

**separately [1]** 40/17

**September [8]** 32/22 33/8 33/25 33/25 34/4 38/10 38/18 58/14

**September 1st [1]** 33/25

**September 2nd [2]** 34/4 58/14

**set [7]** 5/14 5/18 6/10 18/12 33/24 40/5 40/5

**sets [1]** 5/21

**setting [1]** 56/19

**settlement [1]** 30/20

**seven [3]** 16/5 26/3 53/1

**seven-year [1]** 53/1

**shall [1]** 5/11

**she [15]** 13/24 28/11 28/17 39/14 39/17 41/5 41/22 46/2 49/11 49/13 55/8 55/15 55/18 55/21 57/2

**she's [4]** 28/8 38/25 41/18 41/19

**sheets [1]** 27/11

**shortly [3]** 40/7 40/11 40/20

**should [24]** 5/18 11/23 13/5 14/11 14/15 17/19 17/24 18/1 18/25 20/12 20/12 20/15 20/15 25/1 25/18 26/22 33/16 35/11 39/20 44/3 46/23 47/2 51/25 57/4

**shouldn't [2]** 39/6 39/6

**show [3]** 15/5 27/14 44/24

**shown [1]** 9/22

**sic [1]** 24/10

**side [12]** 12/6 15/24 16/4 16/5 25/18 36/9 38/11 39/13 44/3 48/24 51/7 57/15

**sides [1]** 57/6

**significance [2]** 41/25 44/20

**significant [1]** 15/6

**silly [1]** 18/19

**Simultaneous [1]** 50/17

**simultaneously [3]** 19/1 21/15 38/12

**since [2]** 5/9 18/7

**single [4]** 9/3 9/6 17/20 26/22

**single-plaintiff [3]** 9/3 9/6 17/20

**sitting [1]** 26/5

**situation [4]** 35/23 37/25 39/24 42/12

**six [16]** 8/10 8/20 9/3 16/2 16/5 20/3 20/7 20/11 20/18 21/14 25/21 26/3 29/18 30/11 31/11 56/14

**SKADDEN [1]** 2/5

**SLATE [1]** 2/5

**SLATER [8]** 1/17 1/17 4/10 32/3 33/6 46/8 50/20 50/22

**S**

Slater's [1]  54/8
sleeves [1]  57/5
slightly [1]  56/20
slow [2]  16/17 16/23
slower [3]  23/21 23/23 24/3
small [3]  13/16 13/17 22/12
smaller [1]  7/5
Smith [1]  3/20
smoking [1]  46/3
so [110]
sodium [2]  42/19 43/13
Solco [2]  2/8 17/11
some [30]  4/8 4/10 5/24 7/12 11/9 13/22 15/13 19/19 19/21 19/23 21/5 22/9 25/11 25/18 26/2 27/10 27/14 35/17 35/24 36/11 39/14 42/4 50/24 51/19 53/3 53/9 53/16 53/19 56/3 56/16
somebody [3]  6/5 34/10 47/20
somehow [5]  10/10 15/8 18/19 28/21 36/14
someone [3]  45/14 46/3 47/19
someone's [1]  53/13
something [17]  13/1 13/24 18/5 19/10 25/19 26/11 28/24 32/6 32/15 32/24 33/2 43/4 46/1 50/25 51/3 53/1 57/9
sometime [1]  31/22
somewhat [1]  53/2
somewhere [2]  29/22 30/2
soon [1]  6/6
sorry [9]  4/19 18/10 27/24 31/14 32/4 33/21 34/13 47/14 58/7
sort [7]  7/17 7/21 22/9 25/18 36/11 40/24 51/9
South [1]  3/6
speak [3]  34/16 44/8 57/17
speaking [2]  16/15 50/17
SPECIAL [5]  1/11 4/2 28/5 30/11 50/8
specific [18]  6/19 8/11 9/23 10/17 10/20 10/21 15/22 15/23 16/6 17/6 20/24 23/6 23/13 29/12 34/21 35/4 36/17 53/9
specific-cause [1]  6/19
specifically [2]  54/10 54/21
speculative [1]  40/23
spend [1]  56/12
spending [1]  29/15
splice [2]  27/15 27/17
spoken [1]  36/9
spokesperson [1]  4/17
spoliation [3]  45/2 47/4 47/10

spring [5]  6/11 6/12 6/21 16/21 24/4
Square [1]  2/3
St [1]  3/16
stage [6]  9/18 11/4 11/9 15/11 16/8 16/8
staged [7]  15/20 21/18 21/20 23/7 23/14 27/23 28/1
stages [2]  20/12 24/1
staggering [1]  56/11
staging [7]  10/18 16/25 26/10 26/19 28/19 31/17 38/3
stand [2]  44/23 52/6
start [4]  5/9 6/3 12/2 27/6
starting [1]  58/14
starts [1]  40/6
state [7]  11/5 11/5 11/6 15/18 53/7 56/9 56/22
STATES [6]  1/1 39/9 40/7 40/11 41/6 49/6
statistically [1]  15/6
statistics [5]  18/7 20/18 27/9 27/14 27/20
stenography [1]  1/25
step [1]  6/17
steps [1]  5/22
STEVEN [1]  2/17
still [7]  4/6 19/11 37/9 38/21 40/8 41/18 57/25
stipulation [2]  52/6 52/9
stomach [4]  15/13 16/10 22/11 27/8
story [1]  42/22
STOY [2]  2/13 34/14
strategy [1]  14/21
Street [4]  1/15 1/21 3/6 3/9
Streets [1]  1/8
strengths [1]  26/19
strikes [1]  46/13
strongest [1]  26/14
strongly [2]  29/24 53/20
struck [1]  56/6
stuck [1]  36/22
studies [4]  11/1 15/5 23/4 43/7
subject [5]  39/7 51/20 53/12 53/18 54/8
submission [1]  52/14
submissions [1]  56/2
submit [1]  56/25
subset [1]  50/24
substantial [1]  29/17
substantive [1]  41/18
substitute [2]  40/9 41/8
success [1]  12/24
such [2]  42/11 44/20
sudden [2]  16/2 27/17
suddenly [2]  23/20 39/25
sufficient [2]  39/10 47/5
suggest [2]  17/6 46/7
suggested [3]  17/2 25/15 36/5
suggesting [1]  33/9
suggestion [1]  5/24

Suite [7]  1/15 1/18 2/18 2/22 3/9 3/13 3/16
Suites [1]  2/6
summary [6]  7/7 8/23 9/4 13/19 19/14 55/9
summer [9]  31/10 32/9 32/9 32/12 32/14 32/17 32/23 33/6 33/11
summers [1]  33/4
support [6]  22/15 22/25 47/5 54/15 54/24 56/24
supposedly [1]  39/17
sure [7]  4/25 24/7 32/7 34/9 37/11 38/13 42/6
surprise [2]  39/4 39/5
surprised [2]  15/25 16/14
survey [1]  56/18
suspect [1]  51/6
system [1]  6/25

**T**

take [19]  6/17 9/1 10/12 21/12 25/19 37/3 39/2 39/24 44/6 44/18 46/17 46/20 46/25 48/2 48/15 48/22 49/22 50/3 57/9
taken [8]  23/9 23/10 23/10 25/14 36/15 48/16 49/23 50/3
takes [2]  25/22 54/12
taking [2]  39/5 41/15
talk [10]  5/1 6/1 7/11 10/16 16/11 28/15 28/16 37/17 38/19 41/13
talking [10]  14/20 15/22 16/4 23/6 25/4 29/11 39/12 39/19 45/2 45/3
talks [1]  41/22
Teams [5]  1/6 1/13 4/1 4/14 5/1
tee [1]  53/15
tell [2]  27/10 32/11
tentatively [1]  58/13
terms [11]  6/24 11/20 27/7 30/20 31/17 36/9 37/17 42/22 51/3 51/12 51/25
terribly [1]  43/18
testified [2]  42/17 45/7
testify [7]  39/7 40/10 41/5 44/1 45/25 46/13 47/9
testifying [2]  43/1 46/4
testimony [6]  39/4 40/1 40/9 41/8 44/22 48/9
Teva [8]  2/19 2/19 2/20 2/23 2/23 2/24 25/24 26/3
Texas [1]  3/13
thank [23]  4/7 4/22 5/13 14/19 19/17 30/23 30/24 33/22 34/2 45/9 48/12 48/14 50/5 51/24 52/4 57/10 58/8 58/9 58/15 58/16 58/17 58/18 58/19
thanks [1]  37/12
them [26]  4/8 4/11 7/7 11/9 12/6 15/17 21/15

21/19 22/4 26/2 26/14 30/8 33/12 36/13 39/7 40/2 40/3 40/6 40/10 40/19 41/1 44/16 45/14 45/19 45/20 47/22
theories [1]  55/16
theory [14]  40/24 54/5 54/6 54/10 54/16 54/20 54/22 54/23 54/24 55/1 55/2 55/2 55/4 55/5
thereafter [3]  28/20 31/23 38/2
therefore [1]  53/18
these [24]  6/17 6/20 8/10 13/20 13/21 15/18 15/19 18/8 18/21 19/3 19/4 22/15 23/2 23/9 23/17 24/17 25/11 25/21 25/25 30/18 43/6 43/7 49/4 55/15
they're [17]  23/5 24/4 28/23 30/8 35/15 35/19 38/20 39/24 39/25 40/8 40/10 40/11 44/3 44/12 44/16 45/13 51/6
they've [3]  42/2 42/24 44/18
thing [9]  5/3 14/6 16/11 22/18 23/8 24/6 24/16 33/24 51/1
things [9]  16/17 16/23 18/23 20/5 32/12 41/22 43/14 43/16 56/17
think [94]
thinking [1]  7/18
thinks [1]  55/8
third [8]  1/22 2/3 2/4 15/14 20/21 21/5 53/12 54/12
third-party [3]  1/22 2/4 54/12
this [117]
THOMAS [2]  1/10 4/2
THORNBURG [1]  3/5
though [2]  43/1 43/3
thought [6]  5/18 20/3 25/16 33/16 35/11 57/24
three [9]  9/2 15/22 15/23 16/5 20/19 22/11 25/18 28/23 47/24
through [5]  23/1 26/6 40/1 41/21 57/20
tie [1]  52/12
time [31]  5/14 7/11 8/10 8/18 9/9 9/19 15/10 15/18 19/10 21/1 21/23 22/5 22/13 24/3 29/16 29/22 29/25 30/1 30/3 32/8 32/14 33/19 38/16 38/17 39/2 39/22 44/5 44/15 46/1 46/21 55/1
times [1]  16/5
timing [2]  30/7 52/1
today [11]  4/5 5/18 14/15 17/22 34/19 52/14 52/25 56/2 56/16 57/12 58/10
together [1]  52/12

told [2]  31/5 42/24
ton [1]  21/1
too [9]  6/15 16/11 28/22 33/6 38/15 38/17 43/14 48/23 51/25
took [3]  7/11 8/3 39/18
tool [1]  29/9
topics [2]  5/18 5/19
Torrent [5]  2/11 2/12 2/12 26/3 51/6
totally [2]  25/22 26/2
toward [1]  22/9
toxic [1]  43/15
TPP [5]  53/6 53/8 54/7 55/13 56/24
Transcriber [1]  59/2
transcript [2]  1/25 58/23
transcription [1]  1/25
translation [3]  42/17 42/18 43/3
TRAURIG [2]  2/16 2/21
treater [1]  23/10
trial [104]
trials [15]  5/23 5/23 11/22 11/23 12/8 14/7 14/12 16/21 17/19 17/20 21/25 22/1 29/3 35/12 35/21
tried [10]  8/3 10/6 17/6 26/2 26/5 32/15 35/25 36/1 36/1 38/17
true [2]  43/15 43/16
try [11]  12/18 12/23 13/4 19/9 20/8 25/25 26/20 32/8 32/9 36/12 43/4
trying [4]  11/12 26/16 31/11 43/9
Tuesday [1]  1/9
tunnel [1]  22/10
turns [1]  25/19
twice [3]  49/12 49/15 56/23
two [20]  11/19 11/22 11/23 12/8 21/23 21/25 22/1 22/11 22/12 26/8 27/6 28/2 28/19 29/2 29/3 30/2 35/12 35/21 54/19 55/2
two-word [1]  55/2
type [15]  10/19 10/21 10/25 11/12 11/17 11/20 11/22 15/24 16/8 20/20 20/21 20/21 26/22 27/14 27/17
types [11]  8/12 15/9 15/20 16/3 16/6 20/23 23/3 24/22 26/23 26/25 28/12
typically [1]  7/4

**U**

U.S [11]  1/7 2/8 2/8 40/20 41/2 49/4 49/10 49/12 49/13 49/15 49/20 unavailable [1]  47/22
unclear [1]  41/19
under [2]  10/14 14/10

**U**

**undercut** [1]  43/8
**undermine** [1]  46/5
**undermining** [1]  46/14
**understand** [11]  8/14
19/4 22/10 22/17 23/8
23/19 38/25 41/12 43/21
49/19 56/1
**understanding** [12]  8/4
9/10 13/3 19/21 22/24
28/6 34/22 40/8 41/4 48/7
51/12 51/15
**understood** [7]  8/12
20/22 35/7 36/24 48/12
50/10 52/2
**unfair** [1]  42/8
**UNITED** [6]  1/1 39/9
40/7 40/11 41/6 49/5
**unless** [2]  37/18 47/9
**until** [3]  38/10 48/16
53/12
**up** [65]
**update** [1]  4/13
**updated** [1]  5/1
**upon** [4]  11/1 31/20 44/2
44/8
**urge** [2]  18/25 53/20
**us** [27]  3/11 7/13 7/19
13/13 13/22 16/1 18/5
21/8 28/13 31/1 31/2 31/5
32/8 34/17 40/15 42/13
42/24 43/10 44/6 44/15
44/18 44/19 47/20 54/13
56/3 56/6 57/4
**USA** [2]  2/19 2/23
**use** [6]  29/9 29/19 34/6
44/25 47/23 49/21
**using** [4]  10/10 27/25
30/13 30/16
**utilizing** [1]  11/2

**V**

**vacations** [1]  33/6
**vagaries** [1]  44/12
**vaguely** [1]  42/3
**validity** [1]  46/14
**valsartan** [6]  1/3 10/22
10/23 42/19 43/13 45/16
**value** [6]  13/20 18/23
19/3 22/16 54/16 54/23
**values** [2]  8/15 9/11
**VANASKIE** [4]  1/10 4/2
31/5 33/16
**various** [2]  15/19 23/2
**VAUGHN** [2]  2/2 2/3
**verdict** [1]  26/21
**verdicts** [3]  12/19 23/12
26/22
**versus** [1]  9/22
**very** [16]  4/22 5/12 6/21
10/6 10/21 19/11 21/8
28/11 39/18 41/13 42/6
42/8 45/4 46/2 58/4 58/15
**via** [3]  1/6 1/13 4/1
**viability** [1]  54/5
**VICTORIA** [8]  2/17 4/20
13/24 14/1 14/2 26/11

51/24 57/19
**video** [2]  40/1 47/23
**videoconferencing** [3]
1/6 1/13 4/1
**view** [1]  57/18
**violation** [1]  46/4

**W**

**Wacker** [1]  2/22
**wait** [1]  4/15
**waiting** [1]  18/22 22/17
22/18 22/19 23/16 26/5
52/10
**waive** [4]  34/18 35/16
35/19 36/3
**waived** [1]  34/20
**waiver** [2]  35/8 37/1
**waivers** [4]  34/9 34/10
34/25 35/3
**Walgreens** [1]  3/7
**walk** [1]  42/25
**Walmart** [1]  3/7
**want** [43]  7/16 12/20
12/22 12/24 13/4 13/7
14/22 14/23 18/3 18/4
18/6 18/21 18/22 19/21
20/9 21/13 22/12 23/20
24/5 24/10 26/1 26/9
27/21 35/15 35/16 37/11
39/23 39/23 40/2 42/14
44/25 45/14 45/17 45/25
46/2 46/11 47/15 47/20
47/21 49/5 49/7 50/14
56/16
**wanted** [4]  6/3 33/13
38/19 40/25
**wanting** [1]  53/3
**wants** [10]  13/24 33/6
36/12 41/1 42/2 45/21
46/9 53/22 55/18 55/21
**Washington** [2]  2/4 3/3
**wasn't** [5]  27/24 34/9
44/24 54/15 55/4
**way** [20]  8/16 9/7 9/18
13/22 14/9 21/6 22/8
23/17 27/16 31/4 35/18
36/4 38/15 40/4 42/8 43/5
44/4 49/22 56/19 56/21
**we'd** [1]  11/12
**we'll** [17]  4/15 7/24 14/1
19/10 29/15 29/20 30/17
34/24 36/25 37/13 37/16
40/17 41/23 44/22 47/6
52/2 58/4
**we've** [27]  6/10 9/21
10/15 11/24 11/25 12/4
12/25 16/20 16/22 23/1
23/9 23/10 23/10 28/3
33/12 36/5 36/9 37/1 38/1
42/4 44/12 44/13 51/3
52/1 52/8 56/14 56/23
**weak** [4]  12/22 15/1 15/2
26/9
**weeks** [2]  47/24 52/12
**went** [1]  48/6
**West** [2]  2/6 2/22
**whatever** [7]  29/13 42/2

43/8 44/16 44/25 45/6
45/20
**whether** [2]  12/16 12/17
**while** [2]  17/19 22/1
**WHITELEY** [2]  1/20
1/20
**who's** [1]  42/17
**whole** [8]  5/3 13/6 14/12
18/24 33/19 35/20 46/5
51/12
**wholesaler** [1]  36/19
**why** [35]  9/20 10/4 10/12
10/18 11/3 15/2 15/18
15/20 16/8 16/21 16/25
17/15 18/24 22/14 22/19
22/19 23/19 24/3 25/15
31/24 35/11 39/6 39/6
39/10 42/2 42/3 43/7
44/10 44/14 45/5 46/18
46/23 49/19 51/4 51/8
**wide** [1]  54/24
**widest** [2]  8/16 8/24
**will** [45]  4/4 4/17 4/20
4/20 6/1 6/7 10/12 12/25
13/2 13/18 19/19 19/20
19/24 25/23 28/13 29/6
29/8 29/12 29/18 30/11
30/12 30/13 30/14 31/3
31/12 32/1 33/3 33/24
34/3 34/4 34/4 34/6 34/23
38/11 41/5 41/7 45/3
46/10 46/16 47/8 48/8
48/10 49/5 50/24 58/10
**win** [1]  13/9
**window** [2]  24/9 40/5
**winning** [1]  13/13
**winter** [1]  12/8
**within** [5]  17/8 25/21
28/10 30/3 55/17
**without** [2]  25/8 42/13
**witness** [12]  38/25 41/18
42/9 42/12 42/17 42/21
43/20 44/8 44/23 45/7
46/22 47/15
**witnesses** [8]  29/13 38/20
41/1 43/1 43/2 43/12 48/6
49/23
**won't** [4]  13/1 40/15
46/25 48/8
**word** [4]  44/25 54/22
55/1 55/2
**words** [4]  27/25 43/12
45/7 54/20
**work** [27]  6/17 6/21 6/25
8/20 10/11 10/16 11/8
11/25 12/4 12/7 13/15
13/17 15/15 18/17 19/10
19/20 21/15 21/19 33/12
34/7 37/9 38/3 41/7 45/16
48/2 53/9 55/23
**work-up** [8]  6/21 6/25
10/16 11/25 12/7 18/17
33/12 38/3
**worked** [22]  7/6 8/11
8/19 8/22 9/3 13/7 15/17
16/19 19/22 20/2 20/9
20/16 26/1 26/5 29/7

29/12 29/20 30/8 30/11
34/23 52/6 57/23
**working** [7]  15/9 15/21
19/1 19/14 20/12 37/18
38/12
**worse** [2]  44/21 44/21
**worth** [2]  54/19 55/2
**worthless** [1]  56/20
**worthlessness** [4]  54/5
54/6 54/22 55/2
**wouldn't** [7]  14/21 15/24
22/14 35/8 35/23 36/8
47/16
**written** [1]  23/5
**wrong** [4]  15/1 15/11
22/6 28/22
**wrote** [3]  41/25 45/12
46/12

**Y**

**yeah** [12]  4/15 7/23 12/14
14/3 22/23 23/25 24/12
36/6 38/6 38/7 51/1 55/22
**year** [3]  53/1 56/5 56/12
**years** [9]  13/21 18/21
19/6 19/7 19/8 22/14
23/18 54/13 56/14
**yes** [12]  6/13 9/14 9/14
19/12 26/11 41/12 47/13
48/18 48/21 48/25 49/16
52/17
**yet** [2]  5/1 40/16
**York** [4]  2/7 2/7 2/11
2/11
**you** [182]
**you'd** [7]  7/16 7/21 15/15
16/7 21/24 21/25 31/2
**You'll** [1]  41/6
**you've** [6]  17/8 17/11
20/17 30/10 37/13 39/8
**yourself** [1]  15/15

**Z**

**Zantac** [2]  11/4 11/5
**Zhejiang** [1]  2/7
**ZHP** [19]  2/8 10/15 11/24
12/8 16/14 16/15 17/10
25/3 25/6 26/3 31/25 33/5
33/10 35/12 36/8 36/19
36/22 42/15 51/5
**ZHP's** [1]  42/18