# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BETTY FRANKLIN,

        Plaintiff,

vs.                                          CIVIL NO. 12-1167 KBM/LFG

UNITED STATES OF AMERICA,

        Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR EXTENSION OF DEADLINES AND FOR EXPEDITED HEARING

THIS MATTER is before the Court on Defendant United States of America's ("United States" or government) "Motion for Extension of Deadlines and Request for Expedited Hearing or Status Conference" [Doc. 59]. Plaintiff Betty Franklin ("Franklin") filed a response in opposition. Because the motion concerns quickly approaching deadlines, on August 26, 2013, the Court conducted a telephonic conference with attorneys Ruth Fuess Keegan for the government and Scott E. Borg for Franklin. The Court heard argument from both parties during the conference. After careful consideration of the pertinent law, the briefing of the parties with exhibits, and argument by counsel, the Court granted the United States' motion for extension of deadlines.[1]

### Background

On November 13, 2012, Franklin filed a Complaint under the Federal Tort Claims Act for damages arising out of allegedly negligent medical care she received at Northern New Mexico Medical Center ("NNMC") from August 16, 2010 to October 26, 2010. [Doc. 1, Doc. 15, at 1.] On

---

[1]During the telephonic conference, the Court explained its ruling on the motion for extension. Plaintiff's counsel stated his intention to appeal the ruling to the trial judge. The Court enters this Order for purposes of extending the deadlines and so that there is a record for Plaintiff's appeal.

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 07/19/24 Page 3 of 14
Case 1:12-cv-01167-KBM-CG Document 66 Filed 08/27/13 Page 2 of 13
PageID: 108285

April 4, 2013, the Court entered a Scheduling Order, setting October 1, 2013 as the close of discovery. [Doc. 23.] Plaintiff's expert disclosure deadline was August 1, 2013, and Defendant's expert disclosure deadline was August 30, 2013. [Id.] On June 5, 2013, the trial judge scheduled a bench trial on February 3, 2014. The pretrial conference is set for January 3, 2014. [Doc. 32.]

Franklin met her deadline for disclosing her experts and expert reports. [Docs. 48, 50.] However, on August 22, 2013, about eight days before the government's expert reports were due, the United States filed the present motion for extension of deadlines, including its expert report deadline. [Doc. 59.]

In the motion, the United States asks the Court to extend its expert report deadline until October 31, 2013, and the deadline to take Plaintiff's and her experts' depositions until October 15, 2013. [Doc. 59, at 5.] While the Court did not agree to the proposed dates for the extensions, it did agree to grant extensions to the United States as discussed during the telephonic conference. [Doc. 64, Minutes.] The revised deadlines are set out below and in a separate Order.

**Communications between Counsel and Franklin's Deposition Transcript**

The United States' motion for extension of time is supported by numerous emails wherein the United States sought available dates to take Franklin's deposition. On July 12, 2013, the government requested dates in the first few weeks in August when Plaintiff would be available for her deposition. [Doc. 59, Ex. A.] Government counsel did not receive a response to her inquiry, and on July 19, 2013, emailed Plaintiff's counsel again asking for dates in early August. [Id., Ex. B.] On July 20, 2013, Plaintiff's counsel responded that he was trying to get dates from his client and

2

Case 1:19-md-02875-RMB-SAK   Document 2933-4   Filed 11/19/24   Page 4 of 14
Case 1:12-cv-01167-KBM-CG   Document 66   Filed 08/27/13   Page 3 of 13
PageID: 108286

that "right now" it looked like July 30, 31 and the afternoon of August 2 were available. [Id., Ex. C.][2] Mr. Borg also stated he would get additional dates in that email correspondence. [Id.]

On July 25, 2013, Mr. Borg wrote Ms. Keegan proposing August 29 and 30 for the deposition of Plaintiff's treating doctor. On that same date, Ms. Keegan responded, asking for alternative dates for the doctor's deposition as she was out of town at the end of August. She also reminded Mr. Borg that he was going to provide dates for the deposition of Ms. Franklin. [Id., Ex. E.]

On July 29, 2013, Mr. Borg wrote Ms. Keegan, stating he gave her dates in early August for Plaintiff's deposition but did not hear back from her. Actually, the earlier email indicated one date in early August for the deposition. Mr. Borg stated he also gave her dates in late August, when Ms. Keegan indicated she was unavailable. In the July 29 email, Mr. Borg stated he was unavailable from August 5-23 and that the government would have to take Plaintiff's deposition in September. Mr. Borg wrote that he was trying to reach Franklin to get her availability; he stated he was available on September 4-5, 10-12, 17, and 20. [Id., Ex. E.]

On July 29, 2013, Ms. Keegan wrote Mr. Borg stating she believed counsel was still checking with his client about dates for the deposition and was waiting to hear back from him. She asked if he wanted her to wait until she heard from him about Franklin's availability or just schedule the deposition on one of the dates Franklin's attorney was available. [Id., Ex. F.]

The next series of emails concern scheduling Plaintiffs' experts' depositions, and Franklin's deposition. On August 6, 2013, Ms. Keegan wrote Mr. Borg asking for dates and places for expert depositions, along another request about the availability of Franklin for her deposition. [Id., Ex. G.]

---

[2]Mr. Borg attached some of the same emails to his response. [Doc. 63, Ex. 1.]

3

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 7/19/24 Page 5 of 14
Case 1:12-cv-01167-KBM-CG Document 66 Filed 08/27/13 Page 4 of 13
PageID: 108287

Ms. Keegan wrote an additional email that same day stating she needed dates for the depositions before August 30 so that her expert could include that information in his report that was due August 30. [Id.]

On August 6, 2013, Mr. Borg wrote Ms. Keegan stating he wished she had been concerned about getting him "needed information for my experts to review prior to them writing their reports. That being said, I will contact our experts for their available dates." [Doc. 63, Ex. 3.] Later, on August 6, Mr. Bork wrote Ms. Keegan again in response to other matters. However, he also stated that with respect to August, he was preparing for a trial that started on August 19. He noted that when he asked about Ms. Keegan's availability during the last week of August he recalled her saying she was not available. Because of that, Mr. Borg arranged some out-of-state medical tests that week and planned a family visit. Thus, his only available date before September was August 29. He did not yet know the availability of his client for a deposition before September. He stated he had "gathered" she might not be available, but he would check again. [Id.]

Still later on August 6, Ms. Keegan wrote Borg that she found it "amazing" Mr. Borg acted offended that she was not available one week of the month, but that he could not offer a single day for the deposition of his client and experts. She asked if he would agree to an extension of time to disclose the government's expert until after he made Franklin and her expert available for depositions. [Id., Ex. 4.]

Mr. Borg wrote Ms. Keegan on August 6, informing her Franklin was available for her deposition between September 10-12. He noted Franklin got back to his office on last Thursday (Aug. 1), but he was out of town and just saw the email then. [Id., Ex. 5.]

On August 7, 2013, Mr. Borg wrote Ms. Keegan, noting several dates in August that were available for the deposition of Franklin, August 20-23. However, he stated that he was still trying

4

Case 1:19-md-02875-RMB-SAK   Document 2933-4   Filed 7/19/24   Page 6 of 14
Case 1:12-cv-01167-KBM-CG   Document 66   Filed 08/27/13   Page 5 of 13
PageID: 108288

to reach Franklin for the date that was best for her. In the hearing, Mr. Borg explained that Franklin lives in a remote area of the Navajo reservation and that it is difficult to contact her. Mr. Borg explained that Plaintiff's experts were not available for depositions until September and that he did not see that as a problem for the government since it had Plaintiff's expert reports and all relevant documents. [Id., Ex. H.]

In the email, Mr. Borg stated in his practice, with expert reports due 30 days apart, he considered it appropriate to wait until all expert reports were served for depositions to be taken. This "levels the playing field." Mr. Borg believed Plaintiff had been at "somewhat of a disadvantage in that our experts have not had the benefit of your expert reports." He saw no problems with the government's experts serving their reports by the established deadline and then conducting depositions after that date, just as he had done. He declined to grant the requested extension. He did not believe this was a "courtesy" that was truly needed and contended the extension request in this instance was "simply too much" "where the only reason for the extension is so your experts can have the special benefit of your taking our experts' depositions." Mr. Borg did not regard that as a "genuine need," but instead, as a "strategic move." [Doc. 63, Ex. 6.]

On August 8, 2013, Mr. Borg wrote Ms. Keegan stating his paralegal would get the dates for the experts and he could get back to her with that information. He also stated he was not certain Franklin was available on August 21, because she was out-of-state. He intended, however, to make every effort "to try to make" August 21 the date of Franklin's deposition. Mr. Borg asked if Ms. Keegan wanted to have the deposition at NNMC,[3] where "they have a nice conference room?" [Id., Ex. 7.] Ms. Keegan responded that she planned to take the deposition in Albuquerque. [Id., Ex. 8.]

---

[3]NNMC is located in Shiprock, New Mexico, about 200 miles from Albuquerque.

5

Case 1:19-md-02875-RMB-SAK   Document 2933-4   Filed 7/19/24   Page 7 of 14
Case 1:12-cv-01167-KBM-CG   Document 66   Filed 08/27/13   Page 6 of 13
PageID: 108289

Mr. Borg wrote that an Albuquerque deposition would be a great inconvenience for Ms. Franklin, who was ill and had to travel from Arizona. He asked Ms. Keegan to reconsider, noting that in previous cases the Assistant U.S. Attorney "always courteously agreed [to] take the depositions of my clients at NNMC." But, if that was no longer the case, Mr. Borg stated he would plan accordingly. [Id.] Mr. Borg asked for September dates to take the depositions of the treating physicians and others.

On August 8, 2013, Ms. Keegan wrote Mr. Borg asking for specific September dates for the expert depositions. Mr. Borg stated that Dr. Domush was available on September 9-11 and 26. [Doc. 59, Ex. I.] On August 22, 2013, Ms. Keegan wrote Mr. Borg, advising that she still was waiting to hear for dates to depose the other expert. Ms. Keegan's schedule in September was completely full, other than September 18 and 24. On August 22, 2013, Mr. Borg responded that the other expert was in Kenya for several weeks and was scheduled to return the next day. Mr. Borg stated he would contact Ms. Keegan as soon as he heard from the expert. [Doc. 63, Ex. 10.]

On August 22, 2013, Mr. Borg wrote Ms. Keegan a lengthy email discussing his opposition to a motion for extension. He apologized for not getting back sooner but said he had been busy. [Doc. 63, Ex. 12.] He argued, as he did in the telephonic hearing, that there was no requirement that the government take Plaintiff's experts' depositions prior to identifying the government's experts. "That simply is not the framework within which we work. What you propose is outside the scope of the rules." [Id.] Mr. Borg did not understand Ms. Keegan's request for a "full month" of additional time, "absent some kind of emergency or major health issue." [Id.]

The United States also attached as a supplement to its motion the transcript of Franklin's deposition that went forward on August 21, 2013. [Doc. 60.] Government counsel asked Franklin if she was capable of understanding the questions in the deposition. Franklin responded "Yes. If

6

Case 1:19-md-02875-RMB-SAK   Document 2933-4   Filed 7/19/24   Page 8 of 14
PageID: 108290
Case 1:12-cv-01167-KBM-CG   Document 66   Filed 08/27/13   Page 7 of 13

I don't understand, can I ask my daughter?" [Doc. 60-1, at 6.] The attorney explained that Franklin could ask that counsel rephrase the question. [Id.] Franklin then stated: "[I]f I don't really understand it in English, can my daughter translate it for me?" [Id.] Government counsel asked Franklin what her primary language was, and Franklin stated that Navajo was her primary language and English was her second language. Franklin testified she was more comfortable with Navajo. [Id.] Ms. Stash, apparently Franklin's daughter, then stated they believed there would be a translator present. Government counsel stated that no one had informed her that Franklin only spoke Navajo, and further noted that her medical records indicated her preferred language was English. [Id., at 6-7.] Franklin testified she could understand English "but not –not too much." [Id., at 7.] Mr. Borg then explained that Franklin could understand and speak English but felt more comfortable with her first language, Navajo. Franklin thought her daughter could help her understand the questions, but Ms. Keegan did not allow her daughter to translate the deposition questions. Mr. Borg stated that government counsel might have to repeat the questions and if Franklin did not understand, she could "just say she doesn't understand it." [Id.]

At one point in the deposition, when Ms. Stash answered a question to clarify Franklin's answer, Ms. Keegan asked that Ms. Stash sit in the next room, which she apparently did. [Id., at 12.] Although Franklin answered a number of preliminary questions, she answered approximately 29 questions with responses that she did not remember or did not know. [*See* id., at 17, 18, 20, 24, 26, 27.] A number of the questions that Franklin could not answer were inquiries related to her claims. For example, Franklin did not remember missing an appointment on October 1, 2008 or that she had four different appointments in October-December 2008 that she missed. [Id., at 17.] She did not recall someone from the medical clinic coming to her house on a few occasions to tell her she needed to get in for an appointment because of an abnormal pap smear. [Id.] She did not remember

7

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 17/19/24 Page 9 of 14
Case 1:12-cv-01167-KBM-CG Document 66 Filed 08/27/13 Page 8 of 13
PageID: 108291

someone from the hospital coming to pick her up for an appointment in March 2009. [Id., at 19.] She did not recall having surgery on her cervix in April 2009. [Id. at 20, 26.] Franklin also did not remember being asked to return for another pap smear six months after her surgery, nor did she recall if she returned for the pap smear. [Id., at 26.] Franklin was not clear whether she recalled going to the hospital in Chinle for her surgery. [Id., at 29.] She did not know if she had gone to the Chinle medical facility in the past. [Id. at 33.] Franklin did not recall ever talking to Dr. Wilder or Dr. Kang, the doctors who purportedly performed surgery on her. [Id., at 36-37.] At the end of the deposition, Mr. Borg informed Ms. Keegan that it appeared they would need a Navajo interpreter and that Franklin's daughter said her mother was not understanding the questions. [Id., at 40.] Ms. Keegan indicated that they would continue the deposition at a time when they could get a Navajo interpreter. [Id., at 43.]

Immediately after the failed deposition, Ms. Keegan wrote Mr. Borg, stating she could not get her expert report to him by the current deadline. He did not make his own expert available for a deposition until after the government's deadline, and at the deposition of Franklin, government counsel learned she needed a Navajo interpreter, notwithstanding medical records to the contrary. Ms. Keegan stated that her expert needed Franklin's testimony for the expert report. [Doc. 63, Ex. 12, at 2.]

In Mr. Borg's August 22, 2013 email to Ms. Keegan, he stated that Franklin had been asleep during the surgery in question so could not offer "anything of substance" in response to counsel's deposition questions on that topic. Second, Mr. Borg stated that:

> in order for you not to have to travel, you made her drive all the way from Lukachukai, Arizona for the deposition, which no doubt caused her to feel more tired than if the deposition had been taken closer to home. Third, she is an elderly Navajo woman who normally speaks English in conversations with non-Indians (I have never had to use

8

Case 1:19-md-02875-RMB-SAK   Document 2922-4   Filed 11/19/24   Page 10 of 14
Case 1:12-cv-01107-KBM-CG   Document 66   Filed 08/27/13   Page 9 of 13
PageID: 108292

>     an interpreter with her), but who has never been interrogated by an
>     adversary in a deposition.  Fourth, I did not tell you she might need
>     an interpreter because I did not think she did; and you did not ask us
>     to check on whether she might need an interpreter.  Fifth, although
>     you may not have intended to get her confused, you certainly did;
>     you asked her about appointments several years ago, prior to the
>     hysterectomy, you were somewhat accusatory in your tone about why
>     she missed some appointments and didn't easily get rides from others
>     or from the hospital, you confused her by mispronouncing some
>     Navajo words, you asked her about getting a LEEP done and used
>     some other big words she has no knowledge of, and tried to use a
>     consent form from May, 2009, to get her to say she had a procedure
>     back then.  You also tried to pressure her into saying she was given
>     the option of going to UNMH instead of having surgery done at
>     NNMC . . . . It was no wonder she was perplexed and repeatedly said
>     she did not know an answer; because she clearly did not understand
>     the question on several occasions, especially when you asked leading
>     questions.

[Doc. 63, Ex. 12, at 2.] Mr. Borg stated he did not see why Ms. Keegan was unable to complete Franklin's deposition in September and would not agreed to Ms. Keegan taking the deposition outside the discovery deadline.  "You have had much opportunity to take Ms. Franklin's deposition, but you never opted to do that.  You could have done it in May, June, or July." [Id.]

The Court observes that Franklin testified she was 68 years old. [Doc. 60, at 10.] The Court further notes that while it cannot discern tone of voice from a deposition transcript, Ms. Keegan appeared very concerned about Franklin's frustration and problems at the deposition and made every effort to accommodate her problems. [Id., at 7-8, 27-28, 34-35.] Indeed, the Court's assessment is that Ms. Keegan bent over backwards trying to consider Franklin's needs and problems during the deposition. The Court should not need to remind counsel that Plaintiff brought this lawsuit and must provide support for her claims.  If Franklin needed an interpreter to answer basic questions about her claims, her attorney should have known that and should have provided for an interpreter in advance of the deposition.

9

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 7/19/24 Page 11 of 14
Case 1:12-cv-01107-KBM-CG Document 66-4 Filed 08/27/13 Page 10 of 13
PageID: 108293

**Discussion**

Rule 6 of the Federal Rules of Civil Procedure governs requests for extensions. It states:

> When an act may or must be done within a specified time, the court may, for good cause, extend the motion: (A) with or without a motion or notice if the court acts, or if a request is made, before the original time or its extension expires . . . .

Fed. R. Civ. P. 6(b)(1). Here, Defendant's expert report deadline is August 30, 2013, and the close of discovery is October 1, 2013. Defendant filed its motion for extension on August 22, 2013, before the expiration of any pertinent deadlines for which counsel seeks extensions. [Doc. 59.] The Court finds good cause exists to grant the motion for the following reasons.

The email communications, set out *supra*, speak for themselves. They confirm that Ms. Keegan requested dates for Franklin's deposition numerous times. Mr. Borg did not always respond, and if he did, he was unable to give firm dates for the depositions when both he and Franklin were available. While the Court sympathizes with difficulties Mr. Borg may have in reaching his client who lives in a remote area of the Navajo reservation, it was Plaintiff's decision to file the lawsuit, and she must make herself available for a deposition upon a timely request. She must participate in the discovery process, even if it is difficult or taxing. Indeed, the record provided to the Court is replete with the government's good-faith attempts to complete depositions and discovery within existing case management deadlines, and Franklin's failure to agree on dates for completion of discovery.

Moreover, while Franklin did show up on August 21 for her deposition, she was unable to complete it without the assistance of an interpreter. The government had no reason to believe she would need an interpreter and now must complete the deposition. The Court finds that the

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 11/19/24 Page 12 of 14
Case 1:12-cv-01107-KBM-CG Document 66 Filed 08/27/13 Page 11 of 13
PageID: 108294

government should be able to complete Franklin's deposition before submitting its expert disclosures.

So, too, the United States' efforts to take the depositions of Franklin's experts were met with the same difficulties. Ms. Keegan asked for dates to depose Franklin's experts, but Mr. Borg believed that the government had no right essentially to take Franklin's experts' depositions before the government made its expert disclosures. During the telephonic hearing on August 26, 2013, the Court explained its disagreement with Borg's belief. The Court clarified that nothing prevents a party from taking discovery when it wants to do so, provided it does not interfere with disclosure obligations and deadlines. Mr. Borg continued to argue that the government had no right to take Plaintiff's experts' depositions before the defense expert disclosure deadline. This appears to be the impetus behind Mr. Borg's failure to provide dates for the expert depositions before August 30. The Court again emphasizes that a party may take discovery in any sequence it seeks as long as it does not make an "end run" around disclosure obligations. As an example, the government would not be permitted to take Plaintiff's expert's deposition before Plaintiff's expert disclosure deadline. But once disclosed, Defendants were free to depose Plaintiff's experts before disclosing defense experts and expert reports.

The Court finds that Plaintiff interfered with Defendant's legitimate attempt to take Plaintiff's experts' depositions before August 30, 2013, and that there were no legitimate grounds for the interference. While Mr. Borg references a "framework within which" he works and an assertion that the government's request was "outside the scope of the rules," Plaintiff's counsel omits any specific rule that supports his position.

Instead, as was made clear in the telephonic conference, Mr. Borg believes it is unfair for the government to take Plaintiffs' experts' deposition before disclosing its own experts. Unfairness,

11

Case 1:19-md-02875-RMB-SAK Document 2933-4 Filed 11/19/24 Page 13 of 14
Case 1:12-cv-01107-KBM-CG Document 66-4 Filed 08/27/13 Page 13 of 13
PageID: 108295

even if established, is not determinative in deciding whether to grant a timely request for extension. The Court explained that the government, contrary to Mr. Borg's position, was not required to accept Plaintiffs' experts' reports at face value and was allowed to depose Plaintiffs' experts before disclosing its own experts.

Moreover, as of the date of the motion and response, it was not clear if Franklin ever provided dates for one of the two expert's depositions. Under the circumstances outlined by the United States and Plaintiff, the request for extension is reasonable. Indeed, it was Franklin's failure to agree on deposition dates, failure to advise that an interpreter was necessary, and failure to make her experts available for timely depositions that prompted this problem. The Court concludes that good cause exists to extend the government's expert disclosure deadline, and provides a new deadline of September 30, 2013 for defense expert disclosures, and a new discovery deadline of October 15, 2013. In addition, the motion filing deadline is moved to November 5, 2013, Plaintiff's portion of the pretrial order must be submitted by December 20, 2013, and the final pretrial order must be provided to the Court by no later than January 2, 2014. A separate Order to this effect will be entered.

Plaintiff will have two weeks to take the depositions of the government's expert witnesses before the amended close of discovery. The Court acknowledged Mr. Borg's argument that Defendant is now given the "luxury" of having more time to depose Plaintiff's experts while Plaintiff will have a two-week period to take depositions of the government's experts. The Court explained that a defendant often argues that it is not given equal time to identify experts since a plaintiff may contact experts before ever deciding to file a lawsuit. The plaintiff chooses the filing date of a lawsuit and can select and consult with experts months before that date. Thus, the Court

Case 1:19-md-02875-RMB-SAK   Document 2933-4   Filed 11/19/24   Page 14 of 14
Case 1:12-cv-01107-KBM-CG   Document 66   Filed 08/27/13   Page 13 of 13
PageID: 108296

hears similar arguments from both parties at times. Mr. Borg's argument is unpersuasive, and the Court overrules his objections.[4]

IT IS THEREFORE ORDERED that Defendant's motion for extension is granted as described herein.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

---

[4] The Court carefully reviewed the email correspondence between counsel, along with the deposition transcript of Franklin. In some instances, Mr. Borg accuses government counsel of "evasion that has paid off." He stated that he trusted government counsel would not "do a document dump immediately prior to" a treating doctor's deposition. [Doc. 59, Ex. D.] These are only a few examples of inappropriate and disrespectful comments. The tenor of these comments is improper. A Creed of Professionalism of the New Mexico Bench and Bar, that this District has adopted by local rule, states, in part, that counsel will be courteous with opposing counsel, both in oral and in written communications and will agree to reasonable requests for extensions of time. Counsel also agrees to cooperate with opposing counsel's requests for scheduling changes and to not use litigation, delay tactics, or other courses of conduct to harass the opposing counsel. In depositions, counsel will conduct himself with dignity and will be respectful.