

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA 15219
412.263.2000   FAX: 412.263.2001
WWW.PIETRAGALLO.COM

DIRECT DIAL NO.: 412.263.1816
DIRECT FAX NO: 412.263.4246
FILE NO.: MYLAN-112578
EMAIL: cct@pietragallo.com

December 3, 2024

**Via ECF**

Special Master the Hon. Thomas Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

      Re:    *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
              USDC, District of New Jersey, No. 1:19-md-2875-RMB

Dear Judge Vanaskie:

      I write on behalf of the Defendants' Executive Committee to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on Wednesday, December 4, 2024.

### 1. Jurisdictional Issues for Track 1 Bellwether Cases

      During the last case management conference, the Court ordered Plaintiffs to state their position regarding the jurisdictional issues identified by Defendants related to certain of the initial pool of six personal injury bellwether cases (the "Track 1" bellwether cases). *See* Oct. 29, 2024, Hrg. Tr. (ECF 2919) at 9:15-19; ECF 2912. Specifically, based on the operative pleadings, there is a lack of subject matter jurisdiction in both the *Roberts* case and the *Pate* case. Plaintiffs have not yet submitted a formal position statement on these issues. The parties met and conferred today regarding these issues, and Plaintiffs stated that they do not intend to proceed with their claims against the unserved, nondiverse retailer defendant in the *Roberts* case and that they will formalize the dismissal as required by the Court. Plaintiffs also indicated that the plaintiff in the *Pate* case intends to dismiss that action and refile in state court. At this point, the parties disagree as to whether that would result in limitations issues.

### 2. The Parties' Submissions on *Lexecon* Waivers

      The Court likewise instructed the parties at the October 29 conference to state their positions, as applicable, regarding waivers pursuant to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), as well as dismissal of pharmacy defendants, in the Track 1 cases. *See* Oct. 29, 2004 Hr. Tr. (ECF No. 2919) at 23:5 to 26:8. On November 12, 2024, Defendants Mylan (ECF No. 2922), Aurobindo (ECF 2925), CVS (ECF No. 2924), and Walmart

Special Master the Honorable Thomas Vanaskie
December 3, 2024
Page 2

(ECF No. 2923) submitted letters to the Court stating their respective positions on this issue. Plaintiffs did not submit a position regarding *Lexecon* waivers or dismissal of pharmacy defendants in the Track 1 bellwethers.

Defendants Mylan and Walmart each indicated that they are not prepared to execute *Lexecon* waivers at this time in the Track 1 cases. CVS stated that it was premature for CVS to assert or waive Lexecon rights with respect to the *Pate* case because there is a lack of subject matter jurisdiction over that case. (ECF No. 2924). Based on discussion with Your Honor at the last conference, Defendants understand that the Court's preference is for the initial trials in this MDL to be conducted in Camden, NJ, with a distribution of other cases via remand to follow. *See* Hrg. Tr. at 21:23-22:1. At present, there are no *Lexecon* issues in the *Roberts* case, therefore that case is on track to proceed to trial in Camden (pending resolution of the potential subject matter jurisdiction issue). Regarding the other five Track 1 cases, *Lexecon* issues have been identified, although this could potentially be resolved in the *Hanna* case if Plaintiffs dismissed Walmart and proceeded against only the manufacturer Defendants, ZHP and Aurobindo (who has conditionally agreed to waive *Lexecon* rights in the *Hanna* case). In any event, Defendants request guidance regarding how the Court intends to proceed as to the Track 1 cases where *Lexecon* issues have been identified.

With respect to cases in the larger bellwether pool, there are several cases that would not involve *Lexecon* issues, assuming Plaintiffs are willing to dismiss the named pharmacy defendants—some of whom have apparently never been served—and proceed against the manufacturers. To the extent the Court intends to only work up cases as part of Track 1 that could be tried in Camden, then one or more of these cases could be added to the pool.[1]

**Position of Defendant ZHP**

ZHP is eager to move forward with bellwether personal injury trials, either in this Court or in the applicable transferor courts. At the same time, ZHP does not believe it would be fair to limit the bellwether cases slated for trial to those involving only the ZHP defendants' active pharmaceutical ingredient ("API") and/or finished dose medications. Plaintiffs broadly assert claims related to the sale of valsartan-containing drugs produced by various finished-dose manufacturer Defendants and that include API from different API manufacturer Defendants. The

---

[1] On today's meet and confer, Plaintiffs proposed proceeding to bellwether trials in the first wave of cases against only the manufacturer defendants, without dismissing claims against the downstream defendants also named in those cases. Plaintiffs propose that the Court instead can "bifurcate" claims against manufacturers and downstream defendants. This claim-splitting proposal is not workable for numerous reasons, including because it could potentially allow a plaintiff to have multiple attempts at proving causation and other issues through separate trials (with the possibility of inconsistent verdicts) against manufacturers and then any remaining downstream defendant. Downstream defendants should be dismissed with prejudice from any case up for consideration for a bellwether trial.

Special Master the Honorable Thomas Vanaskie
December 3, 2024
Page 3

purpose of bellwether trials is the test the merit and potential value of different claims against different Defendants. Limiting the bellwether trial pool to ZHP-related cases in light of the refusal by other defendants to waive *Lexecon* would be antithetical to this goal.

As a result, ZHP urges the Court to encourage all parties involved to work together to find cases that may be tried by the MDL Court following the conclusion of the *Roberts* trial. As noted above, there are a number of cases in the bellwether pool that could be worked up for trial in Camden by this Court if Plaintiffs were to dismiss their claims against the pharmacy defendant(s). In addition, to the extent *Lexecon* issues cannot be resolved by the parties, ZHP would support Chief Judge Bumb sitting by designation in the applicable transferor courts and overseeing bellwether trials in those districts, to the extent she is willing to consider such a proposal. Finally, the parties could prepare five cases for trial to be remanded/transferred as "trial-ready" matters to the appropriate courts for trials.

### 3. Documents Related to Jinsheng Lin's Deposition

In anticipation of deposing Dr. Jinsheng Lin, Plaintiffs asked ZHP to identify or produce corporate document retention policies, certificates of analysis and material safety data sheets. Earlier today, ZHP responded to Plaintiffs' requests and indicated that, to the extent Plaintiffs seek additional or different information in advance of Dr. Lin's deposition, ZHP will meet and confer with Plaintiffs to discuss those issues. As a result, ZHP does not believe that there are any ripe issues related to Dr. Lin's deposition for the Court to resolve at this time.

Respectfully submitted,

Clem C. Trischler

c:     All counsel of record (via ECF)