## MAZIE SLATER KATZ & FREEMAN, LLC

103 Eisenhower Parkway, Suite 207, Roseland, NJ 07068
Phone: (973) 228-9898 - Fax: (973) 228-0303
www.mazieslater.com

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger
Matthew R. Mendelsohn*°
David M. Estes
Adam M. Epstein°

*Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

Karen G. Kelsen°
Cory J. Rothbort*°
Michael R. Griffith°
Christopher J. Geddis
Samuel G. Wildman
Julia S. Slater°
Trevor D. Dickson

°Member of N.J. & N.Y. Bars

December 3, 2024

*Via ECF*
Honorable Thomas I. Vanaskie, Special Master
Stevens & Lee, P.C.
1500 Market Street, East Tower, 18th Floor
Philadelphia, Pennsylvania 19103

  Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875 (D.N.J.)

Dear Judge Vanaskie:

Please accept this agenda letter on behalf of the Plaintiffs in advance of the December 4, 2024 case management conference.

1. **The Parties' *Lexecon* Waivers.**

As discussed at the previous conference, out of the five randomly selected cases, all five involved Mylan and/or Aurobindo API. Mylan refused to waive *Lexecon* and Aurobindo has stated they would only waive *Lexecon* if the Plaintiffs agreed to dismiss the foreign Aurobindo entity—which effectively equates to Aurobindo refusing to waive *Lexecon*. Plaintiffs' understanding is that the Court

Hon. Thomas I. Vanaskie, Special Master
December 3, 2024
Page 2

wants a second pool of cases that can be worked up with the ability to be *tried by the Honorable Renée Marie Bumb*. Unfortunately, since Mylan and Aurobindo have refused to waive *Lexecon*, it does not appear that there is an easy solution for these five cases to have the capability to be tried by the Honorable Renée Marie Bumb. As a result, Plaintiffs suggest that five additional cases be randomly selected from the bellwether pool that include only the ZHP API manufacturing defendants (ZHP, Teva and Torrent) and do not include Mylan or Aurobindo.

**2. Jurisdictional Issues of Track One Bellwether Cases.**

First, the Plaintiffs are not aware of any jurisdictional issues related to the *Gaston Roberts* case (the first case to be worked up for trial). Plaintiff agrees not to pursue the local pharmacy defendant, so there is not a subject matter jurisdictional issue. In addition, Plaintiff waives *Lexecon,* so this case can be tried in New Jersey.

Defendants have also raised subject matter diversity issues related to the *Pate* case. Due to Mylan's refusal to waive *Lexecon, Pate* may not be a case that can be tried in New Jersey even if there were no subject matter diversity issues. Nonetheless, Plaintiffs' leadership counsel has asked defense counsel to meet and confer with individual counsel for *Pate* to work out an agreement for potentially being able to refile that case in the state court of New Jersey as long as the defendants to do try to then assert a statute of limitations defense.

Hon. Thomas I. Vanaskie, Special Master
December 3, 2024
Page 3

The Retailer Defendants have previously raised issues as to whether the *Guillory* and *Pizzolato* plaintiffs have viable claims against the retailer defendants in Louisiana. *Guillory* was not one of the five cases randomly selected. For *Pizzolato*, Mylan refused to waive *Lexecon*. The issue of whether these plaintiffs have viable claims against the retailer defendants does not impact whether or not either of these cases could be tried in New Jersey, because Mylan refused to waive *Lexecon*. Nonetheless, Plaintiffs believe that these cases do have viable claims against the retailer defendants. Plaintiffs' Leadership Counsel suggested that these parties continue to meet and confer, but also suggested that the second trial only proceed forward against the manufacturer defendants (to avoid any complications related to pharmacy *Lexecon* issues or pharmacy state-specific claims).

### 3. Plaintiffs' Request Regarding the Documents Needed for Jinsheng Lin's Deposition.

On October 24, 2024, Plaintiffs wrote to ZHP's counsel regarding documents that should have been produced previously but apparently were not, and which will be needed for the recently ordered deposition of Jinsheng Lin. Specifically, Plaintiffs wrote:

> In preparation for that deposition, Plaintiffs have reviewed ZHP's document production for policies or procedures that would allow for the destruction of his custodial file from November 2017 and earlier; however, Plaintiffs have

Hon. Thomas I. Vanaskie, Special Master
December 3, 2024
Page 4

> been unable to find such documents. Please identify those documents or produce them immediately.
>
> Plaintiffs have also reviewed ZHP's document production for the certificates of analysis and material safety data sheets from its dimethylformamide, triethylamine, and triethylamine hydrochloride suppliers. Plaintiffs have not been able to find these documents in the production. Please identify the suppliers' certificates of analysis and material safety data sheets for the entire relevant time period in the production, or produce them immediately.

(Ex. 1 hereto). Four days later, ZHP responded: "We are looking into the issues raised in your letter and will get back to you soon regarding the requested discovery." (Ex. 2 hereto).

The documents are obviously relevant to the case in general, and the deposition in particular. Plaintiffs' need the policies allegedly justifying the destruction of most of Jinsheng Lin's custodial file, including years of emails, in order to question him about that process. Moreover, this Court explicitly ordered ZHP to produce all of its document retention policies on November 12, 2021. (ECF 1753, p.3).

The certificates of analysis are needed to establish the extent to which ZHP had documentation of the presence of nitrosamine precursors in the chemicals used to manufacture its valsartan, since Jinsheng Lin's current custodial file fails to explain how he came to his understanding that there was NDMA in valsartan and

Hon. Thomas I. Vanaskie, Special Master
December 3, 2024
Page 5

that it was caused by the combination of dimethylamine and sodium nitrite during quenching of the substance, as documented in his July 27, 2017 email. Specifically, Plaintiffs have independently obtained Certificates of Analysis from the same suppliers for the same solvents used in the manufacturing processes at issue, for example showing that the DMF used in the process was known to contain a list of impurities including dimethylamine—the substance that combined with nitrous acid to form NDMA. ZHP would have been provided the same or similar certificate of analysis with every delivery of the solvents. (Ex. 3 hereto). And the Court-approved requests for production required the production of the requested certificates of analysis. ([ECF 328](), p. 7-8 of Ex. A).

On December 3, 2024 at 4:00 pm, ZHP wrote to Plaintiffs providing some bates numbers for document related policies, and inviting a meet and confer on the documents. (Ex. 2 hereto). Plaintiffs are willing to speak to ZHP, but need to move to closure on these discrete issues, and respectfully ask the Court to enter an order for ZHP to identify or produce the requested documents within fourteen days of tomorrow's status conference, to the extent not already done.

Respectfully,

Adam M. Slater
Plaintiffs' Liaison Counsel

Cc: Counsel of record (via ECF)