SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
(212) 735-2588
DIRECT FAX
(917) 777-2588
EMAIL ADDRESS
Jessica.Davidson@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

January 9, 2025

**VIA ECF**

The Honorable Thomas I. Vanaskie
Special Master for Discovery
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103

      RE: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-2875-RBK-KMW (D.N.J.)

Dear Special Master Vanaskie:

Per the Court's MDL Text Orders (ECF 2950-52), this letter provides Defendants' proposed agenda for the January 13, 2025 Case Management Conference.

## I.    ISSUES WITH CASES SELECTED AS "WAVE 2" BELLWETHERS

### A.    Plaintiffs' Failure To Identify *Lexecon* Issues

On December 16, 2024, Your Honor entered an order identifying five cases as potential replacements for the Wave 2 bellwether pool, including *Dufrene* and others. That order specifically required "that counsel shall be prepared to assert any objections to the inclusion of any of the foregoing cases for bellwether trials at the status conference scheduled for December 18, 2024." (ECF No. 2944.) Plaintiffs submitted a letter to the Court on December 17, 2024 in response, noting jurisdiction and *Lexecon* issues with two of the five cases (*Murawski* and

*Kennedy*) and providing a list of other cases from which two Wave 2 trial case replacements could be selected. At the status conference held on December 18, 2024, Manufacturer Defendants similarly raised issues with the inclusion of three cases: *Kennedy* and *Kinkela* involve Mylan product and are therefore ineligible for the Wave 2 bellwether pool as a result of *Lexecon*, and the Court lacks subject matter jurisdiction over *Murawski*. (*See id.* at 3-4.) Additionally, Pharmacy and Wholesaler Defendants provided their respective positions on specific cases identified in said order (*Dufrene*, *Kennedy*, *Kinkela*, *Meeks*, and *Murawski*). (ECF No. 2946 at 5-6.) The Court specifically asked counsel if there was agreement with respect to the cases identified being "suitable for bellwether trials," and Plaintiffs and Manufacturer Defendants expressly agreed, subject to the issues raised by the Wholesaler and Pharmacy Defendants. Plaintiffs did not identify or raise any other issues with the prospective cases they had identified for the Court in their December 17 letter; nor did they raise issues with the inclusion of *Dufrene* and *Meeks* in the Wave 2 bellwether pool. They also did not tell the Court or Defendants that they had not conferred with individual Plaintiffs' counsel in these cases about whether there would be Plaintiff-side *Lexecon* objections. (*See* 12/18/2024 Tr. at 6-10; ECF No. 2947.)

Defense counsel have now learned that the Plaintiff in *Dufrene* may refuse to waive *Lexecon*, which would make the case ineligible for the Wave 2 bellwether pool. During a meet and confer call with Plaintiffs' counsel on January 9, Defendants learned that Plaintiffs are just now undertaking to determine individual Plaintiffs' *Lexecon* positions on the selected Wave 2 bellwether cases, despite providing the list of suitable cases to the Court and failing to identify this concern at the December 18 status conference. Plaintiffs' position seems to be that Defendants must raise potential *Lexecon* issues prior to the Court's bellwether selection process,

2

while Plaintiffs can "wait and see." This raises concerns that Plaintiffs will use their *Lexecon* rights to avoid trials of cases they perceive as favorable to Defendants.

Allowing *Dufrene,* or any other Wave 2 case, to be removed from the trial pool at this juncture will require the Court to reconstitute Wave 2 for a fourth time. Defendants at all levels of the supply chain have been forthright with the Court, and with counsel, in raising prospective *Lexecon* issues *prior* to inclusion of any matters for possible random selection, and the same should be required of individual Plaintiffs. Accordingly, to the extent *Dufrene* or any other case randomly selected by Your Honor is removed from the bellwether pool due to the belated exercise of *Lexecon* rights or voluntary dismissal, Defendants request that the replacement case be chosen by Defendants, rather than randomly selected from the remaining eligible matters.

      **B.**    **Position of Teva re: Proposed Wave 2 Bellwether Cases Naming Israeli Parent**

As raised by Teva previously, including at the December 18, 2024 status conference, the inclusion of the Teva Defendants' Israeli parent corporation, Teva Pharmaceutical Industries Ltd., is a potential jurisdictional issue in each of the Wave 2 bellwether cases where Teva is named. Teva is hopeful that the parties will be able to resolve this by stipulation, but will raise this issue promptly with the Court, if necessary, after meeting and conferring with Plaintiffs' counsel.

      **C.**    **Position of Torrent re: Proposed Wave 2 Bellwether Case *Garcia***

To the extent the *Garcia* case proceeds as a valsartan bellwether, Torrent should be dismissed from the case. Mr. Garcia's plaintiff fact sheet lists no NDCs that correlate with Torrent's valsartan products. Defendants raised this issue with Plaintiffs' counsel in *Garcia* on December 9 and met and conferred on this issue on January 9. Plaintiffs have not yet responded to Torrent's request.

3

### D. Statement Regarding Possible Bellwethers From Certain Pharmacies

Of the potential bellwethers selected by Judge Vanaskie in his December 31, 2024 Order (ECF No. 2949), three (*Dufrene*, *Garcia*, and *Smalls*) ostensibly name pharmacies, whereas two (*Meeks* and *Suits*) do not. Although Plaintiffs may have "checked the box" on their Short Form Complaints to name a pharmacy defendant or defendants in these three cases, it is the position of the relevant Pharmacy Defendants that these Plaintiffs do not have valid, presentable claims against Pharmacy Defendants because of the state law that applies. Specifically:

- *Dufrene* relies on Louisiana law, but the Court dismissed, with prejudice, all claims against Defendants except those arising under the Louisiana Product Liability Act ("LPLA"). (ECF 838 at 21-22.) As this Court previously recognized, Plaintiffs intentionally did not assert an LPLA claim against pharmacies. (ECF 1614 at 43 n.27.)

- For South Carolina and Texas law, which apply to the *Smalls* and *Garcia* cases, Plaintiffs have only asserted claims under the South Carolina and Texas Deceptive Trade Practices Acts. Even assuming that personal injury actions are allowable under those states' DTPAs:

  o South Carolina law is very clear that the only type of personal injury claims that can proceed against a pharmacy under South Carolina law are those for healthcare provider negligence, which Plaintiffs cannot and do not plead. *See Duckett v. SCP 2006-C23-202, LLC,* 225 F. Supp. 3d 432 (D.S.C. 2015) (dismissing pharmacies as fraudulently joined); *Madison v. Am. Home Prods. Corp.*, 358 S.C. 449 (2004) (noting pharmacies provide a service, not a good, and dismissing claims against them). The principles underlying dismissal of the strict liability and warranty

4

claims apply equally to any possible personal injury claims under South Carolina's consumer protection statute.

- *Garcia* relies on Texas law, but the Court dismissed warranty claims under Texas law. (*See* ECF 775 at 16; ECF 1994 at 13, 24.) Because there are no warranty claims under Texas law, there likewise can be no consumer protection claims repackaging a warranty theory under Texas law. *E.g.*, *Garza v. Garza*, No. 04-11-00310-CV, 2013 Tex. App. LEXIS 1834, at *22 (Tex. Ct. App. Feb. 27, 2013) (affirming dismissal of consumer protection claim where plaintiff failed to establish breach of warranty).

In short, the relevant Pharmacy Defendants do not believe that the above bellwether claims against them could ever *get* to trial, and thus whether or not a particular Pharmacy Defendant waives or asserts its rights under *Lexecon*[1] should not be an issue. This is consistent with Plaintiffs' prior representations that they wish to try streamlined bellwether cases before Judge Bumb involving only manufacturers of valsartan with ZHP API for the first waves of bellwether trials. Pharmacy Defendants should be dismissed, with prejudice, from any Wave 2 bellwether case.

To date, Plaintiffs have not responded to individual requests to dismiss pharmacies from potential bellwether cases. During a recent meet and confer, Plaintiffs' leadership suggested that they needed a firm position regarding assertion of *Lexecon* rights before dismissing any Pharmacy Defendant from the three cases. With that in mind, and to the extent that the Court has

---

[1] *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (holding that Section 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course").

5

asked parties to take a *Lexecon* position *now* with respect to the *Dufrene*, *Garcia*, and *Smalls* cases, and a Pharmacy Defendant remains in those cases for trial:

- Walmart hereby asserts its *Lexecon* rights and objects to the trials of the *Dufrene*, *Garcia*, and *Smalls* cases in New Jersey.

- Walgreens hereby asserts its *Lexecon* rights and objects to the trial of the *Garcia* case in New Jersey.

- Cigna, putting aside that it was never properly served as a defendant in the *Garcia* matter, hereby asserts its *Lexecon* rights and objects to the trial of the *Garcia* case in New Jersey.

Pharmacy Defendants retain their rights to assert, or waive, their rights under *Lexecon* in all other cases.

### E. Position of Wholesaler Defendants re: Proposed Wave 2 Bellwether Case *Suits*

Wholesaler Defendants AmerisourceBergen Corporation (n/k/a Cencora, Inc.), Cardinal Health, Inc., and McKesson Corporation ("Wholesalers") are named in Plaintiff James Suits' SFC, based on their alleged distribution of the VCDs in issue to Mr. Suits. No other Downstream Defendants are named. Wholesalers note that the *Suits* case is inappropriate for the Wave 2 bellwether pool. First, the record discovery to date does not include any evidence that the VCDs taken by Mr. Suits were distributed by any Wholesaler to Tallent Drug Store, the local pharmacy used by Mr. Suits, which is not a defendant in the case. Second, Wholesalers understand that the Wave 2 bellwether pool is limited to plaintiffs who used finished dose VCDs manufactured by Teva, Torrent, and/or a ZHP subsidiary using ZHP API, and that it is not intended to include Downstream Defendants. For these reasons, unless Mr. Suits is willing to dismiss Wholesalers, the *Suits* matter is inappropriate for the Wave 2 pool.

In the event Mr. Suits is unwilling to dismiss Wholesalers and the Court plans to include the *Suits* matter in Wave 2, per Court order, Wholesalers will be prepared to present all grounds for objection at the case management conference.

## II. DEFENDANTS' JANUARY 8, 2025 REQUEST REGARDING COUNSEL FOR BELLWETHER PLAINTIFFS

Defense counsel submitted a brief letter request to the Court on January 8, 2025, asking the Court to order that: (1) Plaintiffs' counsel of record in each of the 28 bellwether cases file updated Notices of Appearance with current contact information no later than January 15, 2025; and (2) counsel of record with representative authority in each of the bellwether cases currently selected for the second wave of bellwether trials (*Roberts*, *Dufrene*, *Garcia*, *Smalls*, *Meeks*, and *Suits*) be ordered to appear at the upcoming Status Conference via Zoom. (ECF No. 2953.) In the course of attempting to confer directly with counsel for each of these Plaintiffs, Defendants have confirmed that information for multiple Plaintiffs in the current or potential bellwether pool is inaccurate and out of date. To the extent the information is in fact correct, a simple confirmation in writing would suffice in lieu of filing updated Notices of Appearance, but should be required by the same deadline. As the issues identified in Section I, *supra*, make clear, participation by current counsel with representative authority for any case being discussed as a potential bellwether is needed to avoid waste of the Court's and parties' time and resources.

## III. RESUMPTION OF REGULAR CASE MANAGEMENT CONFERENCES IN ACCORDANCE WITH CMO NOS. 2 AND 16

Defendants request that regularly scheduled Case Management Conferences including both Your Honor and The Honorable Judge Bumb resume in accordance with CMO 2, at the Court's convenience. (ECF No. 72 at 1.) Certain ongoing case management tasks requiring review by Judge Bumb have lapsed or are unable to be brought to the Court's attention in the absence of regular CMCs. Specifically, Defendants intend to resume presentation and resolution

7

of Plaintiff Fact Sheet ("PFS") deficiencies according to the process mandated by CMO 16. (*See* ECF No. 249.) Defendants also propose that a similar process for obtaining dismissals with respect to individual parties named in complaints for whom there is no confirmed product ID be established. Such a process will be beneficial to all parties, particularly in light of the Court's renewed focus on the personal injury matters, and Defendants will meet and confer with Plaintiffs to discuss how to implement it most efficiently.

### IV. SCHEDULE FOR THE SELECTION AND WORKUP OF "WAVE 3" BELLWETHERS

As discussed at the last status conference, Defendants anticipate that the Court will direct the parties to work up a third wave of cases for trial or potential remand following completion of fact and expert discovery and dispositive motion practice. Defendants request guidance from the Court regarding the cases that will be selected for Wave 3. The parties can then meet and confer regarding an appropriate schedule for Wave 3 (as we likewise anticipate doing for Wave 2 once the pool is finalized), including discussions concerning whether agreement can be reached on any unaddressed *Lexecon* waivers for any of these cases.

### V. UPDATE ON ZHP'S PRODUCTION OF CERTIFICATES OF ANALYSIS AND MATERIAL SAFETY DATA SHEETS AS WELL AS DOCUMENT RETENTION POLICIES

The parties are continuing to meet and confer about a proposed stipulation to resolve Plaintiffs' request for production of certificates of analysis and material safety data sheets, a sample of which was produced in December 2024. ZHP provided a draft stipulation to Plaintiffs in early January, to which Plaintiffs provided comments. The parties further discussed the stipulation on Monday, January 6 and plan to continue to discuss the scope of the stipulation later this week or early next week.

### VI. PROPOSED ORDER REQUIRING PRODUCTION OF DATA FROM PHARMACIES AS RELATES TO THE VIVIMED SETTLEMENT

Plaintiffs recently reached out to the Pharmacy Defendants to request that they produce, for the purposes of class notice and administration, certain PHI related to specific losartan-containing drugs, as a settlement has been announced with respect to losartan-containing drugs manufactured by Vivimed. Plaintiffs and the Pharmacy Defendants are conferring on the language of a proposed order finding disclosure of that PHI to be the minimum disclosure necessary for purposes of the settlement and anticipate submitting a proposed order for the Court's consideration soon.

\*   \*   \*

Defendants will be prepared to address the issues above, as well as any additional issues raised in Plaintiffs' proposed agenda and any other matters that Your Honor would like to discuss, at the January 13, 2025 Case Management Conference.

Respectfully submitted,

*Jessica Davidson*

Jessica Davidson

cc: All counsel of record (via ECF)