# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875** |
| **THIS DOCUMENT RELATES TO ALL CASES** | **HON. RENEE MARIE BUMB CIVIL NO. 19-2875 (RMB)** |

# PLAINTIFFS' BRIEF
# IN SUPPORT OF MOTION TO ESTABLISH COMMON BENEFIT ASSESSMENTS AND COMMON BENEFIT FUND

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................ 1

LEGAL ARGUMENT ....................................................................................... 5

    I.    THE COURT SHOULD ORDER THE REQUESTED
         COMMON BENEFIT ASSESSMENT ............................................. 5

CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    15-md-02666, Pretrial Order 9 (May 25, 2016) ............................................. 9

*In re Benicar (Olmesartan) Prods. Liab. Litig.*,
    CMO 3 (May 22, 2015) ................................................................................ 6,7

*In re Cook Medical, Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*,
    14-ml-2570, Order (Sept. 21, 2020) ............................................................. 9

*In re Diet Drugs*,
    582 F.3d 524 (3d Cir. 2009) .......................................................................... 6

*In re Genetically Modified Rice Litig.*,
    2010 WL 716190 (E.D. Mo. Feb. 24, 2010) ................................................. 8

*In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*,
    MDL No. 07-1842-ML, PPO No. 22 (D.R.I. Nov. 20, 2009) ........................ 9

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    814 F. App'x 678 (3d Cir. 2020) .................................................................... 7

*In re Orthopedic Bone Screw Products Liab. Litig.*,
    MDL 1014, 1996 WL 900349 (E.D. Pa. June 17, 1996) ............................... 9

*In re: Proton-Pump Inhibitor Prods. Liab. Litig.*,
    MDL No. 2789, CMO 49 (D.N.J. Aug. 5, 2021) ........................................... 9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .......................................................................... 7

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,
    CMO 16 (Oct. 26, 2018) ................................................................................ 9

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*,
    MDL No. 2436, CMO 12 (E.D. Pa. Aug. 22, 2013) ...................................... 8

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*,
    MDL No. 2436 (E.D. Pa. Feb. 21, 2017) ........................................................8

*In re Valsartan Prods. Liab. Litig.*,
    19-md-2875, CMO 4 (Apr. 25, 2019) ............................................................6

*In re Xarelto (Rivaroxaban) Prods Liab. Litig.*,
    14-md-02592, Order (Mar. 24, 2020).............................................................9

## PRELIMINARY STATEMENT

This motion requests entry of an Order providing for common benefit assessments, and for the creation of a common benefit fund. The common benefit process is necessary to reimburse the law firms performing common benefit work (the "common benefit law firms" or "Plaintiffs") for work performed for the common benefit of all plaintiffs, separate from and beyond the work specific to the handling of individual cases.

This litigation has now been active for nearly six years, and there is ongoing intensive work being performed by the common benefit law firms, against a collection of defendants who have aggressively defended these cases from the beginning of the litigation. The common benefit law firms have made substantial expenditures and performed significant work devoted to the financing, and administrative structuring, organization, and operation of the litigation, which is an ongoing process. In addition, Plaintiffs have obtained and reviewed millions of pages of documents, taken scores of depositions, developed general liability, causation, and damages experts, taken and defended approximately 200 depositions, including of corporate representatives, plaintiffs, and experts, engaged in extensive *Daubert* briefing for and against experts for Plaintiffs and Defendants, class certification briefing resulting in certification of economic loss and medical monitoring classes, and successfully opposed Defendants' Rule 23(f) motion to the

1

Third Circuit Court of Appeals, and engaged in extensive additional formal and informal motion practice throughout the litigation, up through the preparation for a TPP class action trial twice, and the current personal injury bellwether trial work up process, and ongoing discovery and other litigation wide issues.

Most recently, Plaintiffs performed and continue to perform a substantial amount of trial preparation for a third-party payor economic loss class action trial against ZHP, Teva, and Torrent. Despite the trial being twice postponed, the work performed has already benefitted all plaintiffs. Moreover, the common benefit law firms are now preparing for a September 2025 trial of a personal injury case involving a diagnosis of liver cancer and wrongful death. The trial preparation has included extensive briefing for affirmative dispositive motions that were granted in part, and to successfully oppose Defendants' motions, extensive work on deposition designations that will be the foundation for use at any future trials related to the trial defendants, briefing for and against a large number of motions in limine and trial issues that will also impact the ongoing litigation, and preparation of exhibit lists and other trial-related documents. All of the work summarized herein has involved significant ongoing financial and time commitments from the common benefit law firms, without which this litigation literally could not be prosecuted, and all of this work and financial investment has been for the benefit of all plaintiffs.

In addition, Plaintiffs have engaged in settlement efforts, including direct discussions and via mediators, some of which have resulted in positive outcomes, including with the Hetero Defendants (including Camber, Hetero's wholly owned distributor in the United States), resolving the Valsartan economic loss class claims, Valsartan and Losartan medical monitoring class claims, and Valsartan and Losartan personal injury claims against the Hetero Defendants.  The Losartan economic loss claims against the Hetero Defendants are the only claims against the Hetero Defendants that have not been resolved.  A settlement has also been reached with the Aurobindo defendants involving the economic loss, medical monitoring, and personal injury claims related to Aurobindo's Irbesartan only.  And a settlement has been reached with Vivimed Life Sciences Pvt. Ltd., and Strides Pharma Science Limited as to all claims against it in this litigation, including Losartan economic loss and personal injury claims.  The class economic loss and medical monitoring settlements are subject to Court approval.

Plaintiffs will be moving forward shortly to request preliminary approval of the class settlements, and to implement the personal injury settlements; therefore, it is necessary for the Court to now address Plaintiffs' common benefit motion, in part to allow those with personal injury claims within the Hetero settlements to understand what the assessment amounts will be in deciding whether or not to accept the net settlement amounts.

Plaintiffs request entry of an Order (1) providing for a common benefit assessment of 9.5% for attorney time/fees, and 2% for expenses, to be deducted off the top of the gross recovery of each settlement of an individual case, and (2) providing that any attorney fees and expenses awarded in connection with the pending class action settlements and any future class action settlements or judgments (or with regard to economic loss TPP plaintiffs who may opt out of a settlement or trial judgment) will be placed into the common benefit fund and allocated to the common benefit law firms pursuant to the common benefit process to be implemented by the Court.

## LEGAL ARGUMENT

### I.

### THE COURT SHOULD ORDER
### THE REQUESTED COMMON BENEFIT ASSESSMENT

Plaintiffs request entry of an Order providing for a common benefit assessment of 11.5% to be deducted off the top from the gross recovery of each individual case or claim that concludes with a settlement or judgment, including 9.5% for attorney time/fees, and 2% for expenses. Plaintiffs request that this assessment be applied to (1) each personal injury case in this MDL, (2) any other individual cases in this MDL or participating in an MDL settlement (for example a member of a proposed settlement class who opts out of a class settlement), (3) any such cases/claims that are part of any settlements overseen by or otherwise within the jurisdiction of the Court, regardless of where the case was filed or even if not filed, and (4) each personal injury or other individual case outside this MDL handled by any law firm with at least one case in this MDL at any time (including co-counsel firms who may not have filed an appearance in the MDL but had an interest in at least one MDL case). This broad sweep is necessary to ensure that all plaintiff law firms and their clients directly or indirectly benefitting from the valuable common benefit work performed in this MDL will pay their fair share to compensate the common benefit law firms for the work that will have made the resolution of their cases possible, whether directly or indirectly.

Plaintiffs also request that the Order provide that the attorney fees and expenses awarded in connection with any class action settlement be paid into the common benefit fund and then be allocated to the common benefit law firms through the common benefit process, as the work necessary to advance and bring the class actions to trial or resolution has been performed by the common benefit law firms.[1]

Plaintiffs' requested relief is well-supported by the applicable law. "Under the common benefit doctrine, an award of attorney's fees is appropriate where 'the plaintiff's successful litigation confers a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them.'" *In re Diet Drugs*, 582 F.3d 524, 546 (3d Cir. 2009); *In re Valsartan Prods. Liab. Litig.*, 19-md-2875, CMO 4 (Apr. 25, 2019) (stating "reasonable common benefit time and expenses are necessary for the collective prosecution of all cases in this MDL litigation") (ECF 85); *In re Benicar (Olmesartan) Prods. Liab. Litig.*, CMO 3 (May 22, 2015) (stating that "reasonable common benefit time and expenses are necessary for the collective prosecution of all cases in this MDL

---

[1] Plaintiffs have also included provisions in the proposed Order addressing the use of interest that may be earned on the common benefit fund, and making clear that the common benefit funds will be paid solely to the common benefit law firms, and that the plaintiffs and claimants will have no interest in those funds, and the payment of the common benefit funds will not be subject to or impact the amounts of the fees and expenses to be paid pursuant to the individual retainer agreements.

6

litigation") (Ex. 1)[2]; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 329-432 (3d Cir. 1998); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 814 F. App'x 678, 683-84 (3d Cir. 2020).

Here, the common benefit law firms have litigated this MDL on behalf of all plaintiffs, and will continue to do so indefinitely into the future. As summarized above, the work performed over the past five years has been extensive, with more than 130,000 hours recorded and submitted to date, and the work is ongoing. All of the policies that support a common benefit assessment and allocation of common benefit funds to the common benefit law firms are well represented here. This large, complex litigation could never exist without the ongoing commitments of human and monetary resources made by the common benefit law firms, all of whom have undertaken substantial economic risk in agreeing to perform this work with no promise of a successful outcome or compensation.

To be clear, the common benefit fund is NOT intended to compensate any law firm for the routine work performed in individual cases for the benefit of the plaintiff in that case. For example, preparation of individual complaints, obtaining necessary medical and pharmacy records, preparation and supplementation of plaintiff fact sheets, work with experts for case specific reports and issues, and preparation for

---

[2] All exhibits are attached to Adam M. Slater's certification in support of this motion unless otherwise noted.

7

and defense of plaintiffs, and their treating doctors in their depositions, are the areas of work that are not within the scope of the common benefit work. Work performed once an individual case is selected as a bellwether trial case—where the trial will have an impact on other cases, and the work performed will be beneficial to other cases is compensable.[3]

The requested 11.5% common benefit assessment is in line with the common benefit percentages ordered in other MDL's, and arguably modest in light of the complexity and difficulty of the work here. *See generally, In re Genetically Modified Rice Litig.*, 2010 WL 716190, at *6 (E.D. Mo. Feb. 24, 2010) (noting that "[c]ourts have ordered contributions between 9% and 17% in MDLs for common benefit work."). Courts managing MDLs in the Third Circuit have routinely ordered common benefit assessments within that range. *See In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2436, CMO 12 (E.D. Pa. Aug. 22, 2013) (8 percent assessment for attorney time and 2 percent assessment for costs); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2436 (E.D. Pa. Feb. 21, 2017) (assessment increased to 19%) (Exs. 2-3);

---

[3] Work performed and funds expended in connection with an individual case related to the case's status as a Court selected bellwether case, for example the time and expense related to preparation of the case for trial, and trial, would be eligible for common benefit. Also, the work performed by the common benefit law firms to guide the lawyers representing the individual plaintiffs, or for preparation of a bellwether case, is within the scope of common benefit.

8

*In re Orthopedic Bone Screw Products Liab. Litig.*, MDL 1014, 1996 WL 900349, at *4 (E.D. Pa. June 17, 1996) (total initial assessment of 17% which included 5 percent for costs and as much as 12% for fees, although the court noted that it would reconsider the contribution amount for fees); *In re: Proton-Pump Inhibitor Prods. Liab. Litig.*, MDL No. 2789, CMO 49 (D.N.J. Aug. 5, 2021) (ordering 12% assessment comprised of 9% for fees and 3% for expenses) (Ex. 4); *In re Kugel Mesh Hernia Patch Prods. Liab. Litig.*, MDL No. 07-1842-ML, PPO No. 22 (D.R.I. Nov. 20, 2009) (12% assessment comprised of 8% for fees and 4% for costs and expenses) (Ex. 5); *In re Testosterone Replacement Therapy Prods. Liab. Litig.*, CMO 16, p. 10 (Oct. 26, 2018) ("The assessment amount will be a total of 19.5% (14.5% for attorneys' fees and 5% for expenses).") (Ex. 6); *In re Cook Medical, Inc., IVC Filters Mktg., Sales Practices & Prod. Liab. Litig.*, 14-ml-2570, Order, p. 14 (Sept. 21, 2020)("The assessment amount shall be 10% of any gross settlement amount") (Ex. 7); *In re Xarelto (Rivaroxaban) Prods Liab. Litig.*, 14-md-02592, Order, p. 22-23 (Mar. 24, 2020) (awarding 12% for fees and 2.75% for expenses) (Ex. 8); *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 15-md-02666, Pretrial Order 9, p. 5 (May 25, 2016) ("The assessment amount shall be ten percent (10%) for common benefit attorneys' fees and two percent (2%) for common benefit costs.") (Ex. 9).

9

The scope of this MDL, with a large number of individual personal injury claims, and separate economic loss and medical monitoring class action claims, against more than twenty defendants, including numerous foreign defendants, positioned throughout the generic drug supply chain from manufacturers to retailers, is large and complex.  The funding requirements and work necessary to organize and manage Plaintiffs' leadership and advance the overall conduct of the litigation has been and continues to be substantial.  The legal, factual, and procedural issues confronting Plaintiffs are complex, varied, and require significant human and financial resources.  Moreover, Defendants have aggressively defended themselves throughout the litigation, requiring that the common benefit law firms be engaged and operate at a high level at all times.

In light of the scope and complexity of the litigation and the significant human and financial resources expended by the common benefit law firms for nearly six years at this point, and potentially with additional years of litigation ahead, it is submitted that the requested assessment percentages are quite reasonable.

Finally, it is submitted that the request that the attorney fees and expenses awarded in connection with any settlement or judgment of the class actions be paid into the common benefit fund for allocation to the common benefit firms via the common benefit process, is also reasonable.  The class cases rely heavily on the funding and work provided by the common benefit law firms, and could not be

10

advanced or tried without the concerted effort and funding from the common benefit law firms. Thus, the class actions fit well within the overall MDL common benefit process, and this will be the fairest and most comprehensive and efficient way to address common benefit across the MDL.

## CONCLUSION

For the foregoing reasons, Plaintiffs request entry of an Order (1) providing for a common benefit assessment of 11.5% to be deducted off the top from the gross recovery of each settlement or judgment of an individual case of any nature within the scope of the Order, including 9.5% for attorney time/fees and 2% for expenses, and (2) providing that the attorney fees and expenses awarded in connection with any class action settlement (and an equivalent assessment of any settlement of the claims of an opt out plaintiff from the TPP class actions so that TPP's will not be incentivized to opt out to avoid paying a reasonable assessment amount) be paid into the common benefit fund and then be allocated to the common benefit law firms through the common benefit process.

Respectfully,

PLAINTIFFS' LIAISON COUNSEL

By: /s/Adam M. Slater_____
ADAM M. SLATER
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, NJ 07068
973-228-9898

11

                                            Fax: 973-228-0303
                                            aslater@mazieslater.com

Dated:  January 15, 2025