# Exhibit A

THE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION QUALIFIED SETTLEMENT FUND

# THE QUALIFIED SETTLEMENT FUND AGREEMENT

## ARTICLE I

### NAME AND PURPOSE OF THE FUND

1-1 Name. This Qualified Settlement Fund shall be known as the VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCT LIABILITY LITIGATION QUALIFIED SETTLEMENT FUND (hereinafter "Fund") and is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulation 1.468B-1. The Fund also constitutes a trust under New Jersey state law.

1-2 Purpose. The purpose of the Fund is to accept, hold, and distribute funds to be paid to and on behalf of Plaintiffs, Plaintiffs' Counsel, Plaintiffs Co-Lead Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee, in connection with the In Re Valsartan, Losartan, and Irbesartan Products Liability MDL and related State and Federal Litigation, including but not limited to payments by or on behalf of Settling Defendants (hereinafter "Defendants"), in consideration of the settlement of claims for and on behalf of Plaintiffs, Plaintiffs' Counsel, and Plaintiffs' Co-Lead Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee, collectively ("Plaintiffs' Leadership"). The legal entity known as a Qualified Settlement Fund is authorized under Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended ("IRC") and Income Tax Regulations ("Regulations") §§ 1.468B-1, *et seq*. This fund exists to facilitate the resolution, satisfaction, distribution, and payment of claims, actions, and lawsuits, and related matters, arising out of an alleged tort, or violation of law, as provided for in Regulations § 1.468B-1.

1-3 Duties. The duties of the administrator for the Fund ("Fund Administrator") shall be as defined in the Motion to Approve the Establishment of the Fund and this Agreement ("Agreement").

1-4 Government Authority. This Fund and the Fund Administrator are and shall remain under the continuing jurisdiction of the United States District Court, District of New Jersey and this Fund shall be administered and operated pursuant to this Agreement and the Order Approving the Establishment of the Fund (the "QSF Order").

## ARTICLE II

### PAYMENTS TO THE FUND

2-1 Court Approval. The Court approved the establishment of the Fund pursuant to IRC section 468B and the terms of this Agreement.

2-2 Payment. In accordance with any Court Order, agreement, or amendments thereto, Defendants, and others as required, shall deposit all funds to the Fund as they become due.

## ARTICLE III

<u>DISPOSITION OF THE FUND</u>

     3-1 <u>Corpus of the Fund</u>. The corpus of the Fund shall include all sums transferred to the Fund pursuant to the terms of any Court Order(s) or amendments thereto, and/or pursuant to any settlements, judgments, or agreements, or otherwise related to the In Re Valsartan, Losartan, Irbesartan MDL litigation.

     3-2 <u>No Authority to Conduct Business</u>. The purpose of the Fund is limited to the matters set forth in Article I and Article III hereof, and this Agreement shall not be construed to confer on the Fund Administrator any authority to carry on any business or activity for profit.

     3-3 <u>Termination of the Fund</u>. The Fund may be terminated upon the earlier of: (i) the date on which no assets remain in the Fund; or (ii) a Court Order terminating the Fund. Whenever the Fund Administrator determines that the Fund may be properly terminated pursuant to this Article, the Fund Administrator may, but is not required to, submit a petition for termination of the Fund to the Court. After reviewing the petition, the Court may terminate the Fund or may order the Fund to undertake such further actions as the Court deems necessary and appropriate. Upon Order of the Court, the Fund Administrator shall finalize distributions to any persons or entities entitled to share in such distributions, including amounts reasonably necessary and approved by the Court to compensate the Fund Administrator and its professional agents for unpaid services and costs of administration, and any funds that may be reserved for the payment of taxes or outstanding charges or fees, upon termination of the Fund. The Fund Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund and thereafter the Fund Administrator is discharged from any further responsibility with respect to the Fund.

     3-4 <u>Amendments, Alterations, and Revocation</u>. The Fund may be amended or altered from time to time or revoked by an instrument in writing executed by Co-Lead Counsel, and the Fund Administrator, and approved by Order of the Court.

     3-5 <u>Allocation Plan and Distributions</u>. The Fund Administrator shall make disbursements of the Corpus and all interest earned thereon in accordance with the Settlement Agreement(s) and/or pursuant to the terms of any future judgment or order of the Court. Such disbursements may take the form of lump sum distributions and/or periodic payments. Notwithstanding the foregoing, the Fund Administrator shall establish interest bearing custodial accounts in the name of the QSF.

     3-6 <u>Interests in the Fund</u>. Any sums transferred to the Fund are the sole property of the Fund. Until such time as the Corpus and any interest are distributed, Claimants shall not possess any rights to demand or receive any portion of the Fund. Further, no interest in this Fund may be assigned or transferred in any manner unless approved in writing by Co-Lead Counsel and ordered by the Court. In addition, such interests shall not be voluntarily or involuntarily subject to any type of encumbrance, to the maximum extent allowable by law. This shall include, but not be

limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws.  Such interest, if any, shall only be made available only upon termination of the Fund.

ARTICLE IV

ADMINISTRATOR MANAGEMENT

      4-1 <u>Initial Administrator/Trustee</u>.  The initial administrator and trustee of this Fund shall be EAG Gulf Coast, LLC, 8550 United Plaza, Blvd. Suite 1001, Baton Rouge, LA 70809, ("Fund Administrator").  The Fund Administrator is independent of Defendants and Co-Lead Counsel and is to be Court appointed.

      4-2 <u>Investment</u>.  Except as set forth below in Section 4-4 the Fund Administrator recommends and shall invest the principal of the Fund and keep the Fund invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government.  All interest on or income realized by investment of the Fund, or any portion hereof shall be accumulated and added to the Fund and applied and distributed in accordance with section 3-5 above. Any investment losses realized by investment of Fund, or any portion thereof shall be charged to the Fund. To the extent the Fund Administrator invests any funds in the manner provided for in this Section 4-2, no Party hereto (including the Fund Administrator) shall be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment). Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts.

      4-3 <u>Definition of Money Market Account</u>.  For purposes of this Article, "money market account" shall mean a money fund whose objectives are (a) current income consistent with liquidity and low risk, (b) the maintenance of a portfolio of high quality, short-term money market instruments, and (c) maintenance of a constant $1.00 net asset value per share.  All investments shall be made so as at all times to provide sufficient liquidity to meet the anticipated cash needs of the Fund.  In investing, reinvesting, and exchanging, selling, and managing the Fund, the Fund Administrator shall discharge its duties with respect to the Fund solely in the interest of the accomplishment of the purposes and objectives of the Fund.

      4-4 <u>Collection of Funding Instrument.</u>  Fund Administrator is authorized to deposit funding instrument(s) into an FDIC insured bank, approved by Co-Lead Counsel, even though the amount of the deposit exceeds the current FDIC insured deposit amount for that single Qualified Settlement Fund account for such time as it takes to collect on said funding instrument.  Once the funding instrument is collected and made available by the depository bank, the Fund Administrator shall as soon as practical move the proceeds into one or more of the accounts described in 4-2 above.

4-5 <u>Reporting to the Court</u>.  The Fund Administrator shall report to the Court in writing with respect to any matter arising from the administration of the Fund that the Fund Administrator deems advisable to bring to the attention of the Court or upon request of the Court.  The Fund Administrator shall create and maintain records of the Fund Administrator's activities arising from this Agreement and as directed by any Orders of the Court.  The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by any Court Order, and this Agreement.  Copies of the records shall be provided to the Court upon its request, subject to any privileges or other protections.  Any privileged, confidential, or otherwise protected material shall be provided under seal to the Court.  Upon termination of the Fund, all privileged, confidential, or otherwise protected records shall be returned to the Fund Administrator.

ARTICLE V

<u>EXPRESS POWERS OF ADMINISTRATOR</u>

Without in any way limiting the power and discretion conferred upon the Fund Administrator by the other provisions of this Agreement, the Fund Administrator is expressly authorized and empowered as hereinafter set forth:

5-1 <u>Payment of Administrative Expenses and Costs</u>.  As agreed and approved in writing by the Court, the Fund Administrator shall pay charges, taxes and expenses imposed upon or incurred in connection with the administration of the Fund in the discharge of its obligations under this Agreement, including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the Fund.  All such payments shall be made from Fund assets.

5-2 <u>Retention of Property</u>.  The Fund shall hold the property in the manner delineated in this Agreement.  As agreed and approved in writing by Co-Lead Counsel and ordered by the Court, the Fund Administrator can hold a different type of property in the Fund than anticipated by this Agreement.  If the Court so orders such a holding, the Fund Administrator is not responsible for loss in the value of said holding (e.g. a transfer of a Bond to the Fund which is ordered held and interest rates move in a manner which causes a loss of principal).

5-3 <u>Preservation of Principal</u>.  Notwithstanding any other provision in this Agreement, the Fund Administrator shall at all times hold, manage, and invest the assets of the Fund in a manner designed to preserve the principal of the Fund for the purposes set forth in this Agreement.

5-4 <u>Grant of Powers Limited</u>.  The Fund Administrator shall not be empowered to dispose of the Fund for less than adequate and full consideration in money or money's worth unless expressly ordered by the Court.

5-5 <u>Retention of Investment Advisor and Other Consultants</u>.  The Fund Administrator has the power to engage the services of investment advisors, accountants, custodians, managers, attorneys, or other consultants or agents, as is reasonably necessary to assist with the management of investments and the administration of the Fund.  Notice and an opportunity to consult and object shall be provided to Co-Lead Counsel.  Payment for such services will be made from Fund assets.

      5-6 <u>Execution of Documents</u>.  The Fund Administrator has express authority to make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments, including but not limited to, any release of any parties to claims or litigation from which this Fund arose.  Such agreements may also include settlement agreements and qualified assignment agreements to effect settlement fund distributions governed by IRC §§ 104(a)(2) and 130, as may be necessary or appropriate to carry out the powers herein granted or other assignments as ordered by the Court.

      5-7 <u>Litigation</u>.  The Fund Administrator may initiate or defend, at the expense of the Fund, any litigation relating to or affecting the Fund, or the Administrator's obligations under the Fund, and to initiate or defend any litigation relating to the Fund, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Fund.  If a specific lien or garnishment is held against a single Settling Claimant, it shall be the responsibility of that Settling Claimant to handle the matter and his/her funds shall be held in the Fund until said matter is resolved.

      5-8 <u>Compliance with Law</u>.  The Fund Administrator is empowered to comply with all requirements imposed by applicable law, rule, or regulation in conformity with the QSF Order.

      5-9 <u>Discretion in Exercise of Power</u>.  Subject to the QSF Order, the Fund Administrator may do any other reasonable acts it deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Agreement.

      5-10 <u>Modification of This Agreement</u>.  The Fund Administrator shall be empowered to petition the Court for modification of the Articles of this Agreement (including Attachments hereto) if the Fund Administrator determines that such modifications are necessary to conform to legal, tax, or administrative requirements, or to address a new or unforeseen issue that must be addressed.

## ARTICLE VI

<u>ADVICE OF COUNSEL</u>

      The Fund Administrator may from time to time consult with counsel with respect to any question arising as to compliance with this Agreement.  The Fund Administrator shall be fully protected, to the extent permitted by law in acting in reliance upon the advice of counsel.

## ARTICLE VII

<u>COMPENSATION FOR ADMINISTRATION</u>

      For services performed as Fund Administrator, the initial Fund Administrator may be reimbursed for expenses, including check and bank costs, mail and printing costs, and travel expenses, reasonably required and incurred by such Fund Administrator in the performance of its duties as Fund Administrator. The Fund Administrator shall be entitled to receive reasonable

compensation for treasury management, tax preparation and filing, quarterly and annual tax payments, general administration services including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the Fund. Any successor Fund Administrator approved by Order of the Court shall receive payment for its services in accordance with its agreed schedule of rates in effect at the time such compensation becomes payable. Such compensation may be paid without additional Court approval. Payment for such services will be made from Fund assets.

## ARTICLE VIII

SUCCESSOR FUND ADMINISTRATOR

8-1 Vacancy Caused by Resignation or Removal. The Fund Administrator may resign for cause or no cause at any time upon written notice delivered to Co-Lead Counsel and the Court having jurisdiction over the Fund. Such resignation shall become effective upon the written acceptance of the appointment of a successor Fund Administrator. Co-Lead Counsel, subject to approval by the Court, shall have the power to appoint a successor Fund Administrator. If a successor Fund Administrator is not appointed within sixty (60) days, the Fund Administrator shall have the power to appoint a corporate Fund Administrator qualified under local Court rules to perform Fund services as successor Fund Administrator or it shall have the power to petition the Court to appoint its successor. All of the Fund Administrator's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor Fund Administrator shall be paid by the Fund. Insolvency or dissolution in any manner of the Fund Administrator automatically terminates the retention of the Fund Administrator, and Co-Lead Counsel shall appoint a successor Fund Administrator, subject to approval by the Court. Any successor Fund Administrator shall have the same powers, authorities, obligations, and discretions as though originally named as the Fund Administrator.

8-2 Acceptance of Appointment by Successor Fund Administrator. Unless otherwise ordered by the Court, acceptance of appointment as a successor Fund Administrator shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. Each successor Fund Administrator shall have all the rights, powers, duties, authority, and privileges as if initially named as a Fund Administrator hereunder.

8-3 Preservation of Record of Changes to Fund Administrator. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the Court.

## ARTICLE IX

INDEMNIFICATION

Each Fund Administrator, whether initially named or appointed as a successor Fund Administrator, acts as a Fund Administrator and not in its personal capacity. With respect to any contract, obligation, or liability made or incurred by the Fund Administrator in good faith, while

the Fund Administrator is complying with the terms of this QSF Agreement, the prudent investor rule, and/or any valid Court order, all persons shall look solely to the Fund and not to the Fund Administrator personally.  The Fund Administrator shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the Fund Administrator in the administration of the Fund or otherwise pursuant to this QSF Agreement unless the Fund Administrator commits fraud, acts negligently, or otherwise breaches a term of his appointment.  The Fund Administrator initially named, and any successor Fund Administrator shall be indemnified and held harmless by the Fund, so long as the Fund Administrator acts in good faith, complies with its obligations including the terms of this QSF Agreement, the prudent investor rule, and any valid Court Order.  This indemnification and hold-harmless provision shall cover all expenses reasonably incurred by such Fund Administrator in defense of the aforementioned acts or omissions of the Fund Administrator.

## ARTICLE X

## CHOICE OF LAW

This agreement has been created and accepted by the Fund Administrator and this Agreement's validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of New Jersey.

## ARTICLE XI

## INTERPRETATION

As used in this Agreement, words in the singular include words in the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine, and neuter.  The descriptive headings for each article of this Agreement shall not affect the interpretation or legal efficacy of this Agreement.  It is agreed that neither the act of entering into this Agreement nor any contribution to the Fund nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Administrator or Defendant, nor does it continue a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of this Agreement.

## ARTICLE XII

## SEPARATE DOCUMENTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Each provision in this Agreement is valid and severable and enforceable to the fullest extent permitted by law.

ARTICLE XIII

TAX ISSUES

     13-1 Generally.  The parties intend that the Fund shall be a Qualified Settlement Fund under IRC § 468B and Regulations §§ 1.468B-1, *et seq*.  The Fund Administrator shall take no actions that are inconsistent with the Fund's status as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5.  Further, the Fund Administrator may petition the Court to amend, either in whole or in part, any administrative Article of this Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.  Defendants shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. Section 1.468B-1(d)(1).  The Fund Administrator shall be classified as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3), 26 C.F.R. Section 1.468B-2(k)(3).

     It is further intended that all transfers to the Fund will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Internal Revenue Code, 26 U.S.C. Section 461(h)(1), and Regulation Section 1.461-1(a)(2), 26 C.F.R. Section 1.461-1(a)(2). As such, Defendants shall not be taxed on the income of the Fund.  The Fund shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it.  In computing the Fund's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Fund, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the Fund.  All such computations of the Fund's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4), 26 C.F.R. Section 1.468B-2(b)(1)-(4).  The Fund Administrator shall pay all taxes and associated expenses with those taxes from the Fund without the need for a Court Order.

     13-2 Tax Preparation, Reporting, and Withholding Requirements.  The Fund Administrator shall cause to be filed on behalf of the Fund, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k), 26 C.F.R. Section 1.468B-2(k).  Furthermore, in accordance with the provisions of Treasury Regulation Section 1.468B-2(l), 26 C.F.R. Section 1.468B-2(l), the Fund Administrator shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding requirements.  The Fund Administrator may retain independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance withholding requirements.  Defendant (or some other person on behalf of Defendant) shall supply to the Fund Administrator and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. Section 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which Defendant makes a transfer to the Fund.  The Fund Administrator shall, upon request, prepare and deliver to Defendants and Co-Lead Counsel, within ten days of any such request, financial statements for the Fund, including receipts and disbursements and earnings.

    13-3 <u>Savings Provision</u>.  Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service Notices, Announcements and directives thereunder, such offending Article of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator.  The overarching purpose of this Agreement is to create a Qualified Settlement fund that is at all times in compliance with Internal Revenue Code Section 468B and all administrative authority and announcements thereunder.  In the event that this Section 13-3 applies to render an offending Section null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

## **ACCEPTANCE OF FUND**

    EAG Gulf Coast, LLC, named as the Fund Administrator of the Fund, accepts this appointment and the assets to be transferred to the Fund to be held, administered and distributed as provided in this Agreement.

WITNESS the execution hereof of the Fund Administrator on this __ day of January, 2025.


By: _____
  The Valsartan, Losartan, and Irbesartan Products Liability Litigation
  Qualified Settlement Fund Administrator




Approved on behalf of Plaintiffs, Plaintiffs' Counsel, and Plaintiffs Co-Lead Counsel, Plaintiffs' Executive Committee, and Plaintiffs' Steering Committee by Plaintiffs' Co-Lead Counsel:



_____
Ruben Honik
Honik LLC
1515 Market Street, Ste. 1100
Philadelphia, PA 19102

10

_____
Daniel Nigh
Nigh Goldenberg Rasso & Vaughn
1313 College Parkway #1049
Gulf Breeze, FL 32563

_____
Adam M. Slater
103 Eisenhower Pkwy, 2nd Floor
Roseland, NJ 07068

_____
Conlee S. Whiteley
Kanner & Whiteley
701 Camp Street
New Orleans, LA 70130