```
 1          UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
 2   _____

 3   IN RE:  VALSARTAN, LOSARTAN,        CIVIL ACTION NUMBER:

 4   and IRBESARTAN PRODUCTS             1:19-md-02875-RMB-SAK

 5   LIABILITY LITIGATION                Status Conference

 6   _____    via Teams videoconferencing

 7   Mitchell H. Cohen Building & U.S. Courthouse
     4th and Cooper Streets
 8   Camden, New Jersey 08101
     Monday, January 13, 2025
 9   Commencing at 11:00 a.m.

10   B E F O R E:        THE HONORABLE THOMAS I. VANASKIE (RET.),
                         SPECIAL MASTER
11

12   A P P E A R A N C E S:

13   MAZIE SLATER KATZ & FREEMAN, LLC
     BY:  ADAM M. SLATER, ESQUIRE
14        CHRISTOPHER J. GEDDIS, ESQUIRE
     103 Eisenhower Parkway, Suite 207
15   Roseland, New Jersey 07068
     Co-Lead Counsel for MDL Plaintiffs
16
     KANNER & WHITELEY, LLC
17   BY:  CONLEE S. WHITELEY, ESQUIRE
     701 Camp Street
18   New Orleans, Louisiana 70130
     Co-Lead Class Counsel for Third-Party Payor Economic Loss
19
     PRETI FLAHERTY BELIVEAU & PACHIOS, CHARTERED LLP
20   BY:  GREGORY P. HANSEL, ESQUIRE
     One City Center, PO Box 9546
21   Portland, Maine 04112
     Co-Lead Class Counsel for Third-Party Payor Economic Loss
22

23           John J. Kurz, Official Court Reporter
                  John_Kurz@njd.uscourts.gov
24                    (856)576-7094

25     Proceedings recorded by mechanical stenography; transcript
            produced by computer-aided transcription.
```

1    **A P P E A R A N C E S:** **(Continued)**

2    NIGH GOLDENBERG RASO & VAUGHN, PLLC
     BY:  DANIEL A. NIGH, ESQUIRE
3    14 Ridge Square NW, Third Floor
     Washington, D.C. 20016
4    Co-Lead Class Counsel for Third-Party Payor Economic Loss

5    FARR, FARR, EMERICH, HACKETT, CARR & HOLMES
     BY:  GEORGE T. WILLIAMSON, ESQUIRE
6    99 Nesbit Street
     Punta Gorda, Florida 33950
7    Counsel for Plaintiffs

8    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
     BY:  JESSICA DAVIDSON, ESQUIRE
9    One Manhattan West, Suites 42-128
     New York, New York 10001
10   Counsel for Defendants Zhejiang Huahai Pharmaceutical Co.,
     Ltd., Huahai U.S., Inc., Prinston Pharmaceutical, Inc., and
11   Solco Healthcare U.S., LLC (collectively ZHP)

12   KIRKLAND & ELLIS LLP
     BY:  ALEXIA R. BRANCATO, ESQUIRE
13   601 Lexington Avenue
     New York, New York 10022
14   Counsel for Defendants Torrent Pharma, Inc. and
     Torrent Pharmaceuticals Ltd. (collectively Torrent)
15
     MORGAN, LEWIS & BOCKIUS, LLP
16   BY: JOHN P. LAVELLE, JR.
     502 Carnegie Center
17   Princeton, New Jersey 08540
     Counsel for Defendants Aurolife Pharma LLC
18   and Aurobindo Pharma USA, Inc.

19   PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
     BY:  FRANK STOY, ESQUIRE
20        JASON M. REEFER, ESQUIRE
     One Oxford Centre, 38th Floor
21   Pittsburgh, Pennsylvania 15219
     Counsel for Defendant Mylan Pharmaceuticals, Inc.
22
     HILL WALLACK, LLP
23   BY: WILLIAM MURTHA, ESQUIRE
     21 Roszel Road
24   Princeton, New Jersey 08540
     Counsel for Defendants Hetero Drugs and Hetero Labs

25
                    (Appearances continued onto next page)

 1  **A P P E A R A N C E S:** **(Continued)**

 2  GREENBERG TRAURIG LLP
    BY:  VICTORIA DAVIS LOCKARD, ESQUIRE
 3       STEVEN HARKINS, ESQUIRE
    3333 Piedmont Road, NE, Suite 2500
 4  Atlanta, Georgia 30305
    Counsel For Defendants Teva Pharmaceutical Industries Ltd.,
 5  Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
    Inc. (collectively Teva)

 6
    WALSH PIZZI O'REILLY FALANGA LLP
 7  BY:  CHRISTINE I. GANNON, ESQUIRE
    Three Gateway Center, 100 Mulberry Street, 15th Floor
 8  Newark, New Jersey 07102
    Counsel for Defendants Teva Pharmaceutical Industries Ltd.,
 9  Teva Pharmaceuticals USA, Inc., Actavis LLC, Actavis Pharma,
    Inc. (collectively Teva)

10
    BARNES & THORNBURG, LLP
11  BY:  KARA KAPKE, ESQUIRE
    11 South Meridian Street
12  Indianapolis, IN 46204
    Counsel for Retailer Defendants and CVS Pharmacy, Inc., and
13  Walmart, Walgreens

14  ULMER & BERNE LLP
    BY: JEFFREY D. GEOPPINGER, ESQUIRE
15  600 Vine Street
    Suite 2800
16  Cincinnati, Ohio 45202
    Counsel for Wholesaler Defendants and AmerisourceBergen

17
    HUSCH BLACKWELL LLP
18  BY:  ABRAHAM JAMES SPUNG, ESQUIRE
    1801 Wewatta Street, Suite 1000
19  Denver, Colorado 80202
    Counsel for Defendant Cigna

20
    CROWELL & MORING LLP
21  BY:  ANDREW KAPLAN, ESQUIRE
    1001 Pennsylvania Avenue, NW
22  Washington, DC 20004
    Counsel for Defendant Cardinal Health

23


24
              (Appearances continued onto next page.)

25

4

**A P P E A R A N C E S:** (Continued)

ULMER & BERNE LLP
BY: JEFFREY D. GEOPPINGER, ESQUIRE
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Counsel for Wholesaler Defendants and AmerisourceBergen

NORTON ROSE FULBRIGHT US LLP
BY:  D'LESLI DAVIS, ESQUIRE
     ELIZABETH NORRIS, ESQUIRE
2200 Ross Avenue
Suite 3600
Dallas, Texas 75201
Counsel for Defendant Mckesson Corp.


**Also present:**

Larry MacStravic, The Courtroom Deputy

Clarissa Lintner, Esquire, Judicial Law Clerk to the Honorable
Renée Marie Bumb, Chief Judge

Rosemarie Bogdan, Esquire

Corey Weinstein, Esquire

Sara Zeimer, Esquire

Palmer Lambert, Esquire, on behalf of the Dufrene case

Matt Morrison, Esquire, on behalf of the Suits case

Madeline Pendley, Esquire, on behalf of the Smalls case

1      (PROCEEDINGS held via Teams videoconferencing before

2   the Honorable Thomas I. Vanaskie (Ret.), Special Master, at

3   11:00 a.m. as follows:)

4      THE COURT:  All right.  I think we'll get started.

5   This is Tom Vanaskie.  I'm having problems with my camera.  But

6   can you all hear me?

7      MS. LOCKARD:  Yes.

8      THE COURT REPORTER:  Yes, Your Honor.

9      THE COURT:  We'll get started, then.  We scheduled a

10   conference call.  I'm sorry about all the confusion over

11   scheduling, but I had a memorial service to go to down in

12   Carlisle, Pennsylvania on Friday for a colleague of mine,

13   Sylvia Rambo, who recently passed.  But I do have your agenda

14   letters, and I greatly appreciate receiving them.  And we'll

15   talk a little bit about resumption of regularly scheduled

16   conferences and including Judge Bumb in those conferences or

17   having her preside, as Judge Kugler did previously.

18      But why don't we get started, then.  We'll go through

19   the agenda letters.  And the first thing we need to address, I

20   believe, is the Wave 2 -- what we call the "Wave 2" bellwether

21   trials.  We've already gone through a couple of iterations of

22   Wave 2 lists -- the latest list having been issued I think on

23   December 31st.

24      So I need to understand if *Lexecon* issues arise with

25   respect to those cases and see if we can't get them resolved,

1    or if we can't get them resolved, look to selection of

2    replacement cases for trial.

3           Now, who will be addressing this issue on behalf of

4    the plaintiffs?

5           MR. NIGH:  Your Honor, Daniel Nigh.

6           THE COURT:  All right.  And who will be addressing

7    this for the defense?

8           MS. LOCKARD:  Your Honor, this is Victoria Lockard.

9    I'm happy to speak up with respect to the Wave 2 generally.  I

10   think the wholesalers and pharmacy have separate issues --

11          THE COURT:  Yes.

12          MS. LOCKARD:  -- and they can take those.

13          THE COURT:  Okay.  Very well.

14          Well, let's start with you, Daniel.  What is

15   plaintiffs' position with respect to the Wave 2 cases?

16          MR. NIGH:  Yes, Your Honor.

17          First I wanted to address, there was an argument that

18   somehow plaintiffs' attorneys waive *Lexecon*, which I think is

19   somewhat of an absurd argument.  I looked back at -- if you'll

20   recall what occurred at the last hearing -- can you hear me?

21          THE COURT:  Yes, I can.

22          (Teams recording:  "Is now joining.")

23          MR. NIGH:  Okay.  I heard some other noise.

24          What occurred at the last hearing, we were just

25   trying to figure out what the five cases were, and we

1    recognized that we needed to replace three cases and put three

2    other cases on there.

3         I looked back at our position statement.  There's not

4    a single thing in our position statement that mentions

5    plaintiffs waiving *Lexecon*.

6         I also recognize that even wholesalers and pharmacies

7    in that same position statement -- in their position statements

8    don't have a statement as to whether or not they're going to

9    waive *Lexecon*.  So this idea that somehow being absent or not

10   speaking to the issue on *Lexecon* somehow amounts to a waiver, I

11   think, is absurd.

12        There's also, you know, we -- with *Lexecon*, really a

13   waiver needs to be in writing, which is what we ultimately

14   intend to do on each of these cases as well, on the cases that

15   are going to waive *Lexecon*.

16        So if I can just go case by case, though.

17        THE COURT:  That would be great.

18        MR. NIGH:  First off, we've got the Dufrene case, and

19   Mr. Palmer is here on behalf of the Dufrene case, Palmer

20   Lambert on behalf of the Dufrene case.  But his client does not

21   wish to waive *Lexecon*.  This is the case where the defendants

22   also have a pharmacy that doesn't want to waive *Lexecon* as

23   well, but I don't think that that's going to be an issue

24   because the plaintiff doesn't want to waive *Lexecon* and,

25   therefore, we wouldn't have that case be able to be tried in

1    front of -- in New Jersey.

2             So the next thing is the Suits case.  The Suits case,

3    we don't believe there is a *Lexecon* issue.  It was filed in New

4    Jersey.  They selected the New Jersey venue.  Therefore, we

5    don't believe there's a *Lexecon* issue.

6             We recognize that the wholesalers have made an

7    argument that they believe there's a *Lexecon* issue.  We don't

8    think that's true.  But we did just only recently get the

9    position, so we're having the discussion with the plaintiff to

10   see whether or not the plaintiff does want to dismiss the

11   wholesalers and, therefore, not have an issue over this.  And

12   we don't have a response to that yet, but hopefully we can have

13   that response soon.

14            One thing I will say is -- sorry.  Go ahead, Your

15   Honor.

16            THE COURT:  Who is plaintiff's counsel in Suits?

17            MR. NIGH:  Matt Morrison.  And he's here as well,

18   Your Honor.

19            MR. MORRISON:  Matt Morrison, Your Honor.

20            And, Daniel, I sent you an email right before the

21   hearing.  I was able to speak to my client and the plaintiffs,

22   and James Suits will dismiss the wholesaler defendants.

23            MR. NIGH:  Okay.  Great.  So we don't have an issue

24   with James Suits, then, on the plaintiff's side.  We don't

25   believe there's any issue for this case to be able to go

1    forward in New Jersey.

2             THE COURT:  All right.

3             MR. NIGH:  On Garcia, Your Honor, I represent Garcia,

4    and Garcia will be waiving *Lexecon* and dismissing the pharmacy.

5    And we will go ahead and make those positions in writing as

6    well, so we don't believe there's any issue in Garcia.

7             On Meeks and Smalls, there's not a decision yet from

8    the plaintiff on whether or not to -- whether or not to waive

9    *Lexecon* and/or the issue on -- Meeks doesn't have a pharmacy or

10   wholesaler, but Smalls does, and there's not a decision yet on

11   whether or not to dismiss the pharmacy.

12            Your Honor, we ask for an order to be placed by

13   Friday that plaintiffs need to put in writing their positions

14   as to whether or not they're going to waive *Lexecon*.  And if

15   there is a pharmacy or wholesaler, to put in writing that

16   whether or not they're going to dismiss the pharmacy or

17   wholesaler.

18            THE COURT:  That's for the Meeks and Smalls cases?

19            MR. NIGH:  And I think we should do it for all of

20   them, frankly.

21            THE COURT:  Okay.

22            MR. NIGH:  You know, because as of right now, we're

23   just -- we're talking on the record, but I think that any

24   *Lexecon* waiver and also dismissal should also be put in

25   writing.

1          THE COURT:  Do we have anybody on the call who

2    represents Meeks or Smalls?

3          MR. NIGH:  That would be Madeline Pendley, Your

4    Honor.

5          MS. PENDLEY:  Yes, Your Honor, I'm here.

6          And to add a little bit of information for Smalls, we

7    agree that the pharmacy should be dismissed, so I don't

8    anticipate it being a problem.  I just have to get permission

9    from my client.  I have a call set today, so hopefully we'll

10   get that rounded out in the next 24 hours.

11         THE COURT:  Okay.

12         And, Daniel, can you submit to me a proposed order

13   that requires parties taking positions on *Lexecon* by Friday of

14   this week, individual plaintiffs and the individual defendants?

15         MR. NIGH:  Yes, Your Honor.

16         MS. LOCKARD:  Your Honor, I think also the Gaston

17   Roberts case, I don't think there's a written waiver in that

18   case either.  That's the Wave 1 case with ZHP.

19         THE COURT:  All right.

20         MS. LOCKARD:  So I would just suggest that if we're

21   including the five cases from the last pick, that we also

22   include Gaston Roberts in that order.

23         THE COURT:  Yes, I agree.

24         MR. NIGH:  And, Your Honor, just to be clear, I had

25   said on the record before that we waive *Lexecon* on Gaston

1    Roberts.  That's my client.

2                THE COURT:  Right.

3                MR. NIGH:  But we'll also put it in writing.

4                THE COURT:  Put it in writing.  Okay.  Very well.

5    Thank you, Daniel.

6                MR. LAMBERT:  Your Honor, this is Palmer Lambert.  I

7    just wanted to add one thing to Mr. Nigh's statement in the

8    Dufrene case.  Ms. Dufrene is now deceased, so we will be

9    filing a motion to substitute as well as a notice of suggestion

10   of death as well.

11               THE COURT:  Okay.

12               MS. BRANCATO:  Your Honor, this is Alexia Brancato on

13   behalf of the Torrent defendants.  One issue we put in the

14   letter that I think might be prudent to deal with now since we

15   have to submit this letter by Friday, currently Torrent is

16   named as a defendant in the Garcia case for valsartan.  But her

17   plaintiff fact sheet does not list any valsartan prescriptions,

18   and so we believe we should be dismissed from that case and,

19   therefore, shouldn't have to say anything on Friday about

20   Lexecon for valsartan in Garcia.

21               We've been raising this with plaintiffs, but would

22   need a response from them before the submission on Friday.

23               THE COURT:  All right.  Daniel?

24               MR. NIGH:  Your Honor, I'll give them, at the latest,

25   tomorrow, probably today a decision on whether or not we are

1   dismissing that Torrent party.  It seems like we are, but I

2   just wanted to make sure we did our due diligence and turned

3   over every stone on that one.

4           THE COURT:  Okay.  Very well.

5           MS. BRANCATO:  Thank you.

6           THE COURT:  Anything else with respect to the *Lexecon*

7   issues in the Wave 2 and we'll say Wave 1 cases?

8           MR. MORRISON:  Your Honor, this is Matt Morrison on

9   behalf of James Suits.  Like Palmer, my client is deceased, and

10  we will be shortly filing a motion to substitute in that case

11  as well.

12          THE COURT:  All right.  Very well.  Thank you,

13  Mr. Morrison.

14          Anything else?

15          (No response.)

16          THE COURT:  All right.  Let's move on to the next

17  issue, which is Teva, the Israeli parent of Teva being a party

18  in the Wave 2 cases.

19          Teva's parent, which is Teva Pharmaceutical

20  Industries, LTD, is contesting personal jurisdiction, as I

21  understand it.  What is the plaintiffs' position with respect

22  to that?

23          Are you in a position, Daniel, to address that?

24          MR. NIGH:  Your Honor, I'm not the person who

25  addressed the Teva personal jurisdiction previously.  My

1    understanding is we had an agreement in the economic case where

2    we dismissed Teva, the foreign entity.  But I don't know if

3    there's any reason as to why we wouldn't do the same thing

4    here.

5              If we can also have, I think, just a week on that

6    one, and then we'll make a decision as well.

7              THE COURT:  All right.

8              MS. LOCKARD:  Yes.

9              And just for background, Your Honor, we had filed a

10   motion on the personal jurisdiction issue as to the Teva

11   Pharmaceutical Industries, Limited in the TPP case.

12             Plaintiffs responded, and I think we worked out a

13   dismissal stipulation.  So, you know, we take the same position

14   in these bellwether cases involving the ZHP line of product.

15             And I just need to know, if it's not Mr. Nigh, who do

16   I need to negotiate with on this?  Is it the individual

17   plaintiffs in each of the bellwether cases, or is there a

18   spokesperson on the plaintiffs' exec committee?  I just -- I'd

19   like to get this, you know, underway, and I'm not exactly sure

20   whom I should be speaking with.

21             So it's fine, the proposal, let us know something by

22   the end of Friday.  But if Mr. Nigh and plaintiffs can let me

23   know who we need to address this with, whether it's individual

24   plaintiff counsel or somebody on their side, that would be much

25   appreciated.

1          THE COURT:  All right.  We should know by Friday,

2     Daniel?

3          MR. NIGH:  We should, yes.

4          THE COURT:  There's been a request for resumption of

5     regularly scheduled case management conferences with Judge Bumb

6     present and presiding.

7          I will contact Judge Bumb after our call today and

8     get her views with respect to that.  I agree we should have

9     regularly scheduled calls, at least from a case management

10    perspective.  And I'm happy to conduct those calls at least

11    once a month, if not more frequently, but we could do that.  I

12    propose that we schedule the calls for on Tuesdays.  That

13    should avoid most holidays.  And the schedule I like,

14    11:00 a.m. eastern time.  I don't know if that time is

15    inconvenient for everyone else.  But you certainly can weigh in

16    by sending me an email or a letter with respect to your

17    position.

18         But what I'd propose is that at least -- we had it

19    previously scheduled once a month, every four weeks probably,

20    where we had a discovery conference and then we had in the

21    interim every two weeks a conference where you could address

22    deficiencies in plaintiffs' fact sheets, things of that nature,

23    seek dismissal of individual cases, et cetera.

24         Do you want to go back to -- now, this is probably

25    hard to answer now, but I'd propose going back to what we used

```
 1    to have where we had two conferences a month, one to address
 2    discovery issues -- and hopefully there won't be any, so that
 3    will make that easy -- and one to address other issues,
 4    including requests for dismissal, show-cause orders on the
 5    plaintiffs' fact sheets, et cetera.
 6              I don't -- you don't need to respond right now, but
 7    I'd ask you to respond to me by this Friday with your position
 8    concerning going back to the schedule we had before.
 9              All right.
10              MS. KAPKE:  Your Honor, on that issue, going back to
11    the schedule we had before, Judge Kugler required that we have
12    these orders-to-show conferences in person.  And I think the
13    Teams or Zoom has worked very well.  So particularly if the
14    only thing we're doing is orders to show cause, I would really
15    appreciate it if we all didn't have to travel to New Jersey,
16    especially in the middle of winter.
17              THE COURT:  I understand that.  And I wasn't thinking
18    in terms of what Judge Kugler had required.  I understand the
19    purpose of in-person conferences.
20              MS. KAPKE:  I do, too.
21              THE COURT:  And they serve a valuable purpose.  But I
22    think we would limit it to Teams conferences unless otherwise
23    ordered.
24              MS. KAPKE:  Thank you, Your Honor.
25              THE COURT:  So the default would be Teams, all right?
```

1              Now, do I need to issue an order?  Or I'll ask you to

2    submit to me a proposed order that requires updated contact

3    information for all plaintiffs' counsel.  That has been an

4    issue in terms of being able to communicate with individual

5    plaintiffs' counsel, especially with respect to those who have

6    been identified -- those cases that have been identified for

7    bellwether trials.  But I'd ask you to submit to me a proposed

8    order that requires all plaintiffs to submit updated contact

9    information.

10             I don't think we need to do revised notices of

11   appearance.  But if you could submit to me and I could submit

12   to the Court through Larry MacStravic that information to

13   update the docket sheets so that we have current contact

14   information for all plaintiffs.

15             MS. LOCKARD:  So just --

16             THE COURT:  I don't know that -- go ahead, Victoria.

17             MS. LOCKARD:  Just to clarify.  So you would like the

18   parties to submit a proposed order ordering the plaintiffs in

19   the 20-something bellwether cases to provide updated contact

20   information to you?

21             THE COURT:  Yes.

22             MS. LOCKARD:  And would you like the updated contact

23   information to come via letter or how would you like to receive

24   that from individual plaintiffs?

25             THE COURT:  I think via -- that's a good question.  I

```
 1    think via letter.  The letter can be emailed to me, but it's

 2    something that I could then submit to the Clerk of Court for

 3    docketing so it gets on the official court record.

 4              MR. NIGH:  And, Your Honor, we're prepared to be able

 5    to get the updated contact info for all of those cases for

 6    plaintiffs' counsel that were selected for bellwether cases

 7    within a week.

 8              THE COURT:  Okay.

 9              MR. NIGH:  I would just ask for all plaintiffs'

10    counsel, if we could have a month for that.

11              THE COURT:  Yes.

12              MR. NIGH:  Because certain communication, just trying

13    to get plaintiffs' counsel included can take a little bit

14    longer for some law firms.

15              THE COURT:  Sure.  A month would be fine for all; a

16    week for the bellwether cases.

17              MR. NIGH:  Thank you, Your Honor.

18              THE COURT:  And cases selected for bellwether

19    treatment.

20              Now, you're working on an order dealing with personal

21    health information to protect the confidentiality of that

22    information, I take it, for the Wave 2 cases?

23              I'm drawing blank stares, so...

24              MS. WHITELEY:  Yes, Your Honor.

25              MS. KAPKE:  Your Honor, yes.  Conlee piped up.
```

```
1    That's not for Wave 2 cases.

2              THE COURT:  Okay.

3              MS. KAPKE:  That's for a certain settlement, and --

4              THE COURT:  The Vivimed settlement?

5              MS. KAPKE:  Yes, the Vivimed settlement.

6              So the pharmacies will produce their data in

7    unredacted form.  We just need a confidentiality order because

8    we are producing protected health information.  So we've done

9    this before for other prior settlements.  We just heard from

10   plaintiffs' counsel very recently, so we couldn't include it in

11   the agenda letters, but I think we could probably get that over

12   to you, if you'd prefer, by email or we could file it on the

13   docket, whatever is convenient for you.

14             THE COURT:  By email to me, and then we'll get the

15   order issued and it will appear on the docket.

16             MS. KAPKE:  Thanks.

17             THE COURT:  All right.  Thank you.

18             MS. KAPKE:  I think we'll get that this week over to

19   you.  Thanks, Your Honor.

20             THE COURT:  All right.  Thank you.

21             MS. WHITELEY:  Thank you, Your Honor.

22             THE COURT:  Where do things stand with respect to

23   your discussions concerning the defendants in the Dufrene case,

24   which is under Louisiana law, and the Smalls and Garcia cases,

25   which are under South Carolina and Texas law?
```

1    MR. NIGH:  Your Honor, Dufrene is not going to waive

2    *Lexecon*.  So at least for the issues on who is going to be in

3    the Wave 2, we haven't addressed the issue on the pharmacy

4    because they're not going to waive *Lexecon*.  So I don't think

5    we get to that next issue.

6    THE COURT:  Okay.

7    MR. NIGH:  And on Garcia, that's my case.  I

8    represent Garcia, and we're going to be waiving *Lexecon* and

9    dismissing the pharmacy.

10    THE COURT:  Okay.  And --

11    MR. NIGH:  And then what was the third case?  I

12    apologize.

13    THE COURT:  The Suits case.

14    I'm sorry, no.  It was Smalls and Garcia.

15    MR. NIGH:  Smalls.  Okay.  So we don't have a

16    decision yet on *Lexecon* or whether to dismiss the pharmacy on

17    that case.

18    We may not have an issue.  We may not have to get

19    into the state-specific law on those.

20    THE COURT:  Okay.  All right.

21    Anything else with respect to the Wave 2?

22    MR. NIGH:  Nothing else from plaintiffs, Your Honor.

23    THE COURT:  All right.  Anything else from the

24    defense?

25    MS. LOCKARD:  Your Honor, just I suppose it makes

```
1    sense to get through the Friday deadline before we discuss how

2    to go about any replacement cases that need to be added to

3    Wave 2.

4              THE COURT:  Right.

5              MS. LOCKARD:  Yeah.  But after that --

6              THE COURT:  I know the defense position is that you

7    should be able to select the replacement cases now.

8              MS. LOCKARD:  Right.

9              I mean, frankly, you know, I don't want to belabor

10   it.  I think that the tone of our email makes clear we felt

11   there was a little bit of gamesmanship going on here.  There's

12   no point in arguing about it, but I think that, you know, to

13   have plaintiffs selectively, you know, refuse to waive on cases

14   that they've previously listed as being suitable, particularly

15   when they're defense-favorable cases, I think we should have an

16   opportunity to pick one of our own.

17             But, like I say, maybe this is something we can take

18   up after Friday.

19             THE COURT:  Let's take it up after Friday, and it

20   will be on the agenda for our next conference call.

21             MR. NIGH:  Your Honor.

22             THE COURT:  Go ahead, Daniel.

23             MR. NIGH:  If I may respond briefly, and I'll address

24   it further on Friday, but it's very clear in everything that

25   we've submitted, there's nothing in there that ever states that
```

1    plaintiffs had ever waived *Lexecon*.  And this idea of

2    gamesmanship, which -- right now what we have seen is out of

3    the 28 cases that we had in our pool, the vast majority of

4    them, the reason we can't try the case is because one or more

5    of the defendants have not waived *Lexecon*.

6            Plaintiffs are going so far to try to get cases that

7    can be tried to even dismiss pharmacies and wholesalers which

8    we believe we have plausible claims against.  So this idea of

9    gamesmanship we think is absurd.

10           We never requested -- I guess we could have, under

11   the same requests the defense are making, we could have

12   requested that plaintiffs get to pick and we would have been

13   able to pick the entire pool because it was the defendants who

14   first refused to waive *Lexecon* on many cases.  So we just think

15   that that's -- you know, to the extent that there are one or

16   two cases where plaintiffs are not waiving *Lexecon*, we think

17   that's an absurd position.

18           THE COURT:  All right.  We're going to kick that can

19   down the road a little bit.  We'll wait to see what we get on

20   Friday or by Friday.  And then we can address this at our next

21   conference call.

22           And perhaps we should talk about scheduling that next

23   conference call.  And I'd like to -- I'm concerned that we're

24   getting bogged down here and want desperately to keep it

25   moving.  And so what I'd like to propose is that -- let me look

1    at my calendar.  But we have a call on -- and I might have to

2    change this already since I have to be in Pittsburgh on the

3    28th, but Wednesday, January 29th, all right.

4            And so we'll issue an order that schedules a

5    conference call.  I'm not sure if it's a case management

6    conference or a status conference, but it's a conference

7    intended to have dialogue to address pending issues and to keep

8    the matter moving and to give you an opportunity to submit to

9    me proposed agenda letters.  And so we'll have that on the

10   29th.

11           Where do things stand with respect to the proposed

12   stipulation of material safety data sheets?

13           MR. SLATER:  Hello, Your Honor.  Adam Slater for the

14   plaintiffs.  How are you?

15           THE COURT:  I'm well, Adam.

16           MR. SLATER:  Good.

17           We are still trying to work with ZHP.  I'm not sure

18   if we're going to reach an agreement or not.  But we had a very

19   substantive conversation at our last meet-and-confer, which I

20   think was on the 6th.  I think it was last Monday.  And they

21   were going to get back to us with an effort to try to bridge

22   our gaps.

23           What I would suggest is this, Your Honor, because

24   you've now scheduled the conference for the 29th, it actually

25   works well, what I was going to suggest is that if we can't

1   reach an agreement by the 24th, which would be next Friday, on

2   this issue, and there's a few other related issues that I'm not

3   going to bring up because they may not become issues for the

4   Court.  But if they are issues that we can't work through, my

5   suggestion was going to be to put them on the agenda, now that

6   Your Honor has scheduled for the 29th, for the 29th so that we

7   can bring things to a head at that point if we can't work it

8   through.

9           THE COURT:  That's fine.  We'll take that up on the

10  29th.  Hopefully you'll have it all resolved by then.  If not,

11  we'll address it and get the matter resolved so that it doesn't

12  hold this up.

13          MR. SLATER:  Thank you, Your Honor.

14          THE COURT:  Are there any other issues you wanted to

15  address today on the plaintiffs' part?

16          MR. SLATER:  I'm not aware of anything for

17  plaintiffs, Your Honor.

18          THE COURT:  All right.  On the defense side?

19          MS. LOCKARD:  Your Honor, the only other item on the

20  agenda letters was with respect to Wave 3.  And I know we're

21  still tinkering with Wave 2, so I don't want to put the cart

22  ahead of the horse.

23          But plaintiffs' letter had suggested we meet and

24  confer among the parties on how to tackle Wave 3, and that's a

25  good suggestion.  So I would propose that we try to get

```
 1   together with plaintiffs before the last conference of the
 2   month and report back at that time.
 3            THE COURT:  All right.  Let's do it that way.  I'll
 4   ask you to report in your agenda letters for the
 5   29th conference call where things stand with respect to your
 6   discussions on selection of cases for Wave 3, all right, and
 7   other issues.
 8            All right.  Is there anything else to address today?
 9            (No response.)
10            THE COURT:  Great.  All right.
11            We will see you all on the 29th of January.  And in
12   the meantime, I'll look forward to getting your emails
13   addressing the issues that we discussed today.  Thank you all
14   very much.
15            MS. LOCKARD:  Thank you, Your Honor.
16            MR. SLATER:  Thank you, Your Honor.
17            MR. NIGH:  Thank you, Your Honor.
18            THE COURT:  We're adjourned.  Bye-bye.
19            (Proceedings concluded at 11:33 a.m.)
20            - - - - - - - - - - - - - - - - - - - - - -
              FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE
21            - - - - - - - - - - - - - - - - - - - - - -
22       I certify that the foregoing is a correct transcript
23   from the record of proceedings in the above-entitled matter.
24   /S/John J. Kurz, RDR-RMR-CRR-CRC          January 14, 2025
25   Court Reporter/Transcriber
```

**MR. LAMBERT: [1]** 11/6
**MR. MORRISON: [2]** 8/19 12/8
**MR. NIGH: [28]**
**MR. SLATER: [5]** 22/13 22/16 23/13 23/16 24/16
**MS. BRANCATO: [2]** 11/12 12/5
**MS. KAPKE: [8]** 15/10 15/20 15/24 17/25 18/3 18/5 18/16 18/18
**MS. LOCKARD: [14]** 5/7 6/8 6/12 10/16 10/20 13/8 16/15 16/17 16/22 19/25 20/5 20/8 23/19 24/15
**MS. PENDLEY: [1]** 10/5
**MS. WHITELEY: [2]** 17/24 18/21
**THE COURT REPORTER: [1]** 5/8
**THE COURT: [59]**

**/**

**/S/John [1]** 24/24

**0**

**04112 [1]** 1/21
**07068 [1]** 1/15
**07102 [1]** 3/8
**08101 [1]** 1/8
**08540 [2]** 2/17 2/24

**1**

**100 [1]** 3/7
**1000 [1]** 3/18
**10001 [1]** 2/9
**1001 [1]** 3/21
**10022 [1]** 2/13
**103 [1]** 1/14
**11 [1]** 3/11
**11:00 [1]** 1/9
**11:00 a.m [2]** 5/3 14/14
**11:33 a.m [1]** 24/19
**128 [1]** 2/9
**13 [1]** 1/8
**14 [2]** 2/3 24/24
**15219 [1]** 2/21
**15th [1]** 3/7
**1801 [1]** 3/18
**1:19-md-02875-RMB-SAK [1]** 1/4

**2**

**20-something [1]** 16/19
**20004 [1]** 3/22
**20016 [1]** 2/3
**2025 [2]** 1/8 24/24
**207 [1]** 1/14
**21 [1]** 2/23
**2200 [1]** 4/6
**24 [1]** 10/10
**24th [1]** 23/1

**2500 [1]** 3/3
**28 [1]** 21/3
**2800 [2]** 3/15 4/3
**28th [1]** 22/3
**29th [5]** 22/3 22/10 22/24 23/6 23/10
**29th conference [1]** 24/5
**29th of [1]** 24/11
**29th so [1]** 23/6

**3**

**30305 [1]** 3/4
**31st [1]** 5/23
**3333 [1]** 3/3
**33950 [1]** 2/6
**3600 [1]** 4/7
**38th [1]** 2/20

**4**

**42-128 [1]** 2/9
**45202 [2]** 3/16 4/3
**46204 [1]** 3/12
**4th [1]** 1/7

**5**

**502 [1]** 2/16
**576-7094 [1]** 1/24

**6**

**600 [2]** 3/15 4/3
**601 [1]** 2/13
**6th [1]** 22/20

**7**

**701 [1]** 1/17
**70130 [1]** 1/18
**7094 [1]** 1/24
**75201 [1]** 4/7

**8**

**80202 [1]** 3/19
**856 [1]** 1/24

**9**

**9546 [1]** 1/20
**99 [1]** 2/6

**A**

**a.m [4]** 1/9 5/3 14/14 24/19
**able [7]** 7/25 8/21 8/25 16/4 17/4 20/7 21/23
**above [1]** 24/23
**above-entitled [1]** 24/23
**ABRAHAM [1]** 3/18
**absent [1]** 7/9
**absurd [4]** 6/19 7/11 21/9 21/17
**Actavis [4]** 3/5 3/5 3/9 3/9
**ACTION [1]** 1/3
**actually [1]** 22/24
**ADAM [3]** 1/13 22/13 22/15
**add [2]** 10/6 11/7
**added [1]** 20/2
**address [13]** 5/19 6/17

**12/23 13/23 14/21 15/1 15/3 20/23 21/20 22/7 23/11 23/15 24/8**
**addressed [2]** 12/25 19/3
**addressing [3]** 6/3 6/6 24/13
**adjourned [1]** 24/18
**after [4]** 14/7 20/5 20/18 20/19
**against [1]** 21/8
**agenda [5]** 5/13 5/19 18/11 20/20 22/9 23/5 23/20 24/4
**agree [3]** 10/7 10/23 14/8
**agreement [3]** 13/1 22/18 23/1
**ahead [5]** 8/14 9/5 16/16 20/22 23/22
**aided [1]** 1/25
**ALEXIA [2]** 2/12 11/12
**ALFANO [1]** 2/19
**all [35]**
**already [2]** 5/21 22/2
**also [10]** 4/9 7/6 7/12 7/22 9/24 9/24 10/16 10/21 11/3 13/5
**AmerisourceBergen [2]** 3/16 4/4
**among [1]** 23/24
**amounts [1]** 7/10
**ANDREW [1]** 1/13
**answer [1]** 14/25
**anticipate [1]** 10/8
**any [8]** 8/25 9/6 9/23 11/17 13/3 15/2 20/2 23/14
**anybody [1]** 10/1
**anything [7]** 11/19 12/6 12/14 19/21 19/23 23/16 24/8
**apologize [1]** 19/12
**appear [1]** 18/15
**appearance [1]** 16/11
**Appearances [2]** 2/25 3/24
**appreciate [2]** 5/14 15/15
**appreciated [1]** 13/25
**are [14]** 7/15 11/25 12/1 12/23 18/8 18/25 21/6 21/11 21/15 21/16 22/14 22/17 23/4 23/14
**arguing [1]** 20/12
**argument [3]** 6/17 6/19 8/7
**arise [1]** 5/24
**ARPS [1]** 2/8
**ask [6]** 9/12 15/7 16/1 16/7 17/9 24/4
**Atlanta [1]** 3/4
**attorneys [1]** 6/18
**Aurobindo [1]** 2/18
**Aurolife [1]** 2/17
**Avenue [3]** 2/13 3/21 4/6
**avoid [1]** 14/13
**aware [1]** 23/16

**B**

**back [8]** 6/19 7/3 14/24 14/25 15/8 15/10 22/21 24/2
**background [1]** 13/9
**BARNES [1]** 3/10
**because [9]** 7/24 9/22 17/12 18/7 19/4 21/4 21/13 22/23 23/3
**become [1]** 23/3
**been [7]** 5/22 11/21 14/4 16/3 16/6 16/6 21/12
**before [9]** 5/1 8/20 10/25 11/22 15/8 15/11 18/9 20/1 24/1
**behalf [8]** 4/16 4/17 4/18 6/3 7/19 7/20 11/13 12/9
**being [5]** 7/9 10/8 12/17 16/4 20/14
**belabor [1]** 20/9
**believe [8]** 5/20 8/3 8/5 8/7 8/25 9/6 11/18 21/8
**BELIVEAU [1]** 1/19
**bellwether [8]** 5/20 13/14 13/17 16/7 16/19 17/6 17/16 17/18
**BERNE [2]** 3/14 4/2
**bit [5]** 5/15 10/6 17/13 20/11 21/19
**BLACKWELL [1]** 3/17
**blank [1]** 17/23
**BOCKIUS [2]** 2/15
**Bogdan [1]** 4/13
**bogged [1]** 21/24
**BOSICK [2]** 2/19
**Box [1]** 1/20
**BRANCATO [2]** 2/12 11/12
**bridge [1]** 22/21
**briefly [1]** 20/23
**bring [2]** 23/3 23/7
**Building [1]** 1/7
**Bumb [4]** 4/12 5/16 14/5 14/7
**bye [2]** 24/18 24/18
**Bye-bye [1]** 24/18

**C**

**calendar [1]** 22/1
**call [11]** 5/10 5/20 10/1 10/9 14/7 20/20 21/21 21/23 22/1 22/5 24/5
**calls [3]** 14/9 14/10 14/12
**Camden [1]** 1/8
**camera [1]** 5/5
**Camp [1]** 1/17
**can [17]** 5/6 6/12 6/20 6/21 7/16 8/12 10/12 13/5 13/22 14/15 17/1 17/13 20/17 21/7 21/18 21/20 23/7
**can't [6]** 5/25 6/1 21/4 22/25 23/4 23/7
**Cardinal [1]** 3/22
**Carlisle [1]** 5/12
**Carnegie [2]** 2/16
**Carolina [1]** 18/25

**CARR [1]** 2/5
**cart [1]** 23/21
**case [31]**
**cases [33]**
**cause [2]** 15/4 15/14
**Center [3]** 1/20 2/16 3/7
**Centre [1]** 2/20
**certain [2]** 17/12 18/3
**certainly [1]** 14/15
**CERTIFICATE [1]** 24/20
**certify [1]** 24/22
**cetera [2]** 14/23 15/5
**change [1]** 22/2
**CHARTERED [1]** 1/19
**Chief [1]** 4/12
**CHRISTINE [1]** 3/7
**CHRISTOPHER [1]** 1/14
**Cigna [1]** 3/19
**Cincinnati [2]** 3/16 4/3
**City [1]** 1/20
**CIVIL [1]** 1/3
**claims [1]** 21/8
**clarify [1]** 16/17
**Clarissa [1]** 4/13
**Class [3]** 1/18 1/21 2/4
**clear [3]** 10/24 20/10 20/24
**Clerk [2]** 4/11 17/2
**client [5]** 7/20 8/21 10/9 11/1 12/9
**Co [5]** 1/15 1/18 1/21 2/4 2/10
**Co-Lead [4]** 1/15 1/18 1/21 2/4
**Cohen [1]** 1/7
**colleague [1]** 5/12
**collectively [4]** 2/11 2/14 3/5 3/9
**Colorado [1]** 3/19
**come [1]** 16/23
**Commencing [1]** 1/9
**committee [1]** 13/18
**communicate [1]** 16/4
**communication [1]** 17/12
**computer [1]** 1/25
**computer-aided [1]** 1/25
**concerned [1]** 21/23
**concerning [2]** 15/8 18/23
**concluded [1]** 24/19
**conduct [1]** 14/10
**confer [2]** 22/19 23/24
**conference [14]** 1/5 5/10 14/20 14/21 20/20 21/21 21/23 22/5 22/6 22/6 22/6 22/24 24/1 24/5
**conferences [7]** 5/16 5/16 14/5 15/1 15/12 15/19 15/22
**confidentiality [2]** 17/21 18/7
**confusion [1]** 5/10
**CONLEE [1]** 1/17 17/25
**contact [7]** 14/7 16/2 16/8 16/13 16/19 16/22

**C**

contact... [1] 17/5
contesting [1] 12/20
continued [5] 2/1 2/25 3/1 3/24 4/1
convenient [1] 18/13
conversation [1] 22/19
Cooper [1] 1/7
Corey [1] 4/14
Corp [1] 4/8
correct [1] 24/22
could [10] 14/11 14/21 16/11 16/11 17/2 17/10 18/11 18/12 21/10 21/11
couldn't [1] 18/10
counsel [26]
couple [1] 5/21
court [8] 1/1 1/23 16/12 17/2 17/3 23/4 24/20 24/25
Courthouse [1] 1/7
Courtroom [1] 4/10
CRC [1] 24/24
CROWELL [1] 3/20
CRR [1] 24/24
current [1] 16/13
currently [1] 11/15
CVS [1] 3/12

**D**

D'LESLI [1] 4/5
D.C [1] 2/3
Dallas [1] 4/7
DANIEL [10] 2/2 6/5 6/14 8/20 10/12 11/5 11/23 12/23 14/2 20/22
data [2] 18/6 22/12
DAVIDSON [1] 2/8
DAVIS [2] 3/2 4/5
DC [1] 3/22
deadline [1] 20/1
deal [1] 11/14
dealing [1] 17/20
death [1] 11/10
deceased [2] 11/8 12/9
December [1] 5/23
December 31st [1] 5/23
decision [5] 9/7 9/10 11/25 13/6 19/16
default [1] 15/25
defendant [5] 2/21 3/19 3/22 4/8 11/16
defendants [16] 2/10 2/14 2/17 2/24 3/4 3/8 3/12 3/16 4/4 7/21 8/22 10/14 11/13 18/23 21/5 21/13
defense [6] 6/7 19/24 20/6 20/15 21/11 23/18
defense-favorable [1] 20/15
deficiencies [1] 14/22
Denver [1] 3/19
Deputy [1] 4/10
desperately [1] 21/24
dialogue [1] 22/7
did [3] 5/17 8/8 12/2

didn't [1] 15/15
diligence [1] 12/2
discovery [2] 14/20 15/2
discuss [1] 20/1
discussed [1] 24/13
discussion [1] 8/9
discussions [2] 18/23 24/6
dismiss [6] 8/10 8/22 9/11 9/16 19/16 21/7
dismissal [4] 9/24 13/13 14/23 15/4
dismissed [3] 10/7 11/18 13/2
dismissing [3] 9/4 12/1 19/9
DISTRICT [2] 1/1 1/1
docket [3] 16/13 18/13 18/15
docketing [1] 17/3
does [4] 7/20 8/10 9/10 11/17
doesn't [4] 7/22 7/24 9/9 23/11
doing [1] 15/14
done [1] 18/8
down [3] 5/11 21/19 21/24
drawing [1] 17/23
Drugs [1] 2/24
due [1] 12/2
Dufrene [8] 4/16 7/18 7/19 7/20 11/8 11/8 18/23 19/1

**E**

each [2] 7/14 13/17
eastern [1] 14/14
easy [1] 15/3
economic [4] 1/18 1/21 2/4 13/1
effort [1] 22/21
Eisenhower [1] 1/14
either [1] 10/18
ELIZABETH [1] 4/6
ELLIS [1] 2/12
else [7] 12/6 12/14 14/15 19/21 19/22 19/23 24/8
email [5] 8/20 14/16 18/12 18/14 20/10
emailed [1] 17/1
emails [1] 24/12
EMERICH [1] 2/5
end [1] 13/22
entire [1] 21/13
entitled [1] 24/23
entity [1] 13/2
especially [2] 15/16 16/5
ESQUIRE [28]
et [2] 14/23 15/5
even [2] 7/6 21/7
ever [2] 20/25 21/1
every [3] 12/3 14/19 14/21
everyone [1] 14/15
everything [1] 20/24
exactly [1] 13/19

exec [1] 13/18
extent [1] 21/15

**F**

fact [3] 11/17 14/22 15/5
FALANGA [1] 3/6
far [1] 21/6
FARR [2] 2/5 2/5
favorable [1] 20/15
FEDERAL [1] 24/20
felt [1] 20/10
few [1] 23/2
figure [1] 6/25
file [1] 18/12
filed [2] 8/3 13/9
filing [2] 11/9 12/10
fine [3] 13/21 17/15 23/9
firms [1] 17/14
first [4] 5/19 6/17 7/18 21/14
five [2] 6/25 10/21
FLAHERTY [1] 1/19
FLOM [1] 2/8
Floor [3] 2/3 2/20 3/7
Florida [1] 2/6
follows [1] 5/3
foregoing [1] 24/22
foreign [1] 13/2
form [1] 18/7
forward [2] 9/1 24/12
four [1] 14/19
FRANK [1] 2/19
frankly [2] 9/20 20/9
FREEMAN [1] 1/13
frequently [1] 14/11
Friday [16] 5/12 9/13 10/13 11/15 11/19 11/22 13/22 14/21 15/7 20/1 20/18 20/19 20/24 21/20 21/20 23/1
front [1] 8/1
FULBRIGHT [1] 4/5
further [1] 20/24

**G**

gamesmanship [3] 20/11 21/2 21/9
GANNON [1] 3/7
gaps [1] 22/22
Garcia [10] 9/3 9/3 9/4 9/6 11/16 11/20 18/24 19/7 19/8 19/14
Gaston [3] 10/16 10/22 10/25
Gateway [1] 3/7
GEDDIS [1] 1/14
generally [1] 6/9
GEOPPINGER [2] 3/14 4/2
GEORGE [1] 2/5
Georgia [1] 3/4
gets [1] 17/3
getting [2] 21/24 24/12
give [2] 11/24 22/8
GOLDENBERG [1] 2/2
gone [1] 5/21
good [3] 16/25 22/16

23/25
Gorda [1] 2/6
GORDON [1] 2/19
got [1] 7/18
great [3] 7/17 8/23 24/10
greatly [1] 5/14
GREENBERG [1] 3/2
GREGORY [1] 1/20
guess [1] 21/10

**H**

HACKETT [1] 2/5
HANSEL [1] 1/20
happy [2] 6/9 14/10
hard [1] 14/25
HARKINS [1] 3/3
has [3] 15/13 16/3 23/6
have [42]
haven't [1] 19/3
having [4] 5/5 5/17 5/22 6/9
he's [1] 8/17
head [1] 23/7
health [3] 3/22 17/21 18/8
Healthcare [1] 2/11
hear [2] 5/6 6/20
heard [2] 6/23 18/9
hearing [3] 6/20 6/24 8/21
held [1] 5/1
Hello [1] 22/13
her [3] 5/17 11/16 14/8
here [6] 7/19 8/17 10/5 13/4 20/11 21/24
Hetero [2] 2/24 2/24
HILL [1] 2/22
his [1] 7/20
hold [1] 23/12
holidays [1] 14/13
HOLMES [1] 2/5
Honor [41]
HONORABLE [3] 1/10 4/11 5/2
hopefully [4] 8/12 10/9 15/2 23/10
horse [1] 23/22
hours [1] 10/10
Huahai [2] 2/10 2/10
HUSCH [1] 3/17

**I**

I'd [7] 13/18 14/18 14/25 15/7 16/7 21/23 21/25
I'll [5] 11/24 16/1 20/23 24/3 24/12
I'm [15] 5/5 5/10 6/9 10/5 12/24 13/19 14/10 17/23 19/14 21/23 22/5 22/15 22/17 23/2 23/16
idea [3] 7/9 21/11 21/8
identified [2] 16/6 16/6
Inc [10] 2/10 2/10 2/14 2/18 2/21 3/5 3/5 3/9 3/9 3/12
include [2] 10/22 18/10
included [1] 17/13

including [3] 5/16 10/21 15/4
inconvenient [1] 14/15
Indianapolis [1] 3/12
individual [7] 10/14 10/14 13/16 13/23 14/23 16/4 16/24
Industries [1] 3/4 3/8 12/20 13/11
info [1] 17/5
information [10] 10/6 16/3 16/9 16/12 16/14 16/20 16/23 17/21 17/22 18/8
intend [1] 7/14
intended [1] 22/7
interim [1] 14/21
involving [1] 13/14
IRBESARTAN [1] 1/4
Israeli [1] 12/17
issue [22] 6/3 7/10 7/23 8/3 8/5 8/7 8/11 8/23 8/25 9/6 9/9 11/13 12/17 13/10 15/10 16/1 16/4 19/3 19/5 19/18 22/4 23/2
issued [2] 5/22 18/15
issues [13] 5/24 6/10 12/7 15/2 15/3 19/2 22/7 23/2 23/3 23/4 23/14 24/7 24/13
item [1] 23/19
iterations [1] 5/21

**J**

JAMES [4] 3/18 8/22 8/24 12/9
January [4] 1/8 22/3 24/11 24/24
January 29th [1] 22/3
JASON [1] 2/20
JEFFREY [2] 3/14 4/2
JERSEY [11] 1/1 1/8 1/15 2/17 2/24 3/8 8/1 8/4 8/4 9/1 15/15
JESSICA [1] 1/19
John [4] 1/23 1/23 2/16 24/24
joining [1] 6/22
JR [1] 2/16
Judge [7] 4/12 5/16 5/17 14/5 14/7 15/11 15/18
Judicial [1] 4/11
jurisdiction [3] 12/20 12/25 13/10
just [21] 6/24 7/16 8/8 9/23 10/8 10/20 10/24 11/7 12/2 13/5 13/9 13/15 13/18 16/15 16/17 17/9 17/12 18/7 18/9 19/25 21/14
K

KANNER [1] 1/16
KAPKE [1] 3/11
KAPLAN [1] 3/21
KARA [1] 3/11
KATZ [1] 1/13

**K**

keep [2] 21/24 22/7
kick [1] 21/18
KIRKLAND [1] 2/12
know [17] 7/12 9/22 13/2 13/13 13/15 13/19 13/21 13/23 14/1 14/14 16/16 20/6 20/9 20/12 20/13 21/15 23/20
Kugler [3] 5/17 15/11 15/18
Kurz [3] 1/23 1/23 24/24

**L**

Labs [1] 2/24
Lambert [3] 4/16 7/20 11/6
Larry [2] 4/10 16/12
last [6] 6/20 6/24 10/21 22/19 22/20 24/1
latest [2] 5/22 11/24
LAVELLE [1] 2/16
law [5] 4/11 17/14 18/24 18/25 19/19
Lead [4] 1/15 1/18 1/21 2/4
least [4] 14/9 14/10 14/18 19/2
let [3] 13/21 13/22 21/25
let's [4] 6/14 12/16 20/19 24/3
letter [7] 11/14 11/15 14/16 16/23 17/1 17/1 23/23
letters [6] 5/14 5/19 18/11 22/9 23/20 24/4
LEWIS [1] 2/15
Lexecon [29]
Lexington [1] 2/13
LIABILITY [1] 1/5
like [10] 12/1 12/9 13/19 14/13 16/17 16/22 16/23 20/17 21/23 21/25
limit [1] 15/22
Limited [1] 13/11
line [1] 13/14
Lintner [1] 4/11
list [2] 5/22 11/17
listed [1] 20/14
lists [1] 5/22
LITIGATION [1] 1/5
little [5] 5/15 10/6 17/13 20/11 21/19
LLC [6] 1/13 1/16 2/11 2/17 3/5 3/9
LLP [14] 1/19 2/8 2/12 2/15 2/19 2/22 3/2 3/6 3/10 3/14 3/17 3/20 4/2 4/5
LOCKARD [2] 3/2 6/8
longer [1] 17/14
look [3] 6/1 21/25 24/12
looked [2] 6/19 7/3
LOSARTAN [1] 1/3
Loss [3] 1/18 1/21 2/4
Louisiana [2] 1/18 18/24
Ltd [5] 2/10 2/14 3/4 3/8

12/20

**M**

MacStravic [2] 4/10 16/12
made [1] 8/6
Madeline [2] 4/18 10/3
Maine [1] 1/21
majority [1] 21/3
make [4] 9/5 12/2 13/6 15/3
makes [2] 19/25 20/10
making [1] 21/11
management [3] 14/5 14/9 22/5
Manhattan [1] 2/9
many [1] 21/14
Marie [1] 4/12
MASTER [2] 1/10 5/2
material [1] 22/12
Matt [4] 4/17 8/17 8/19 12/8
matter [3] 22/8 23/11 24/23
may [4] 19/18 19/18 20/23 23/3
maybe [1] 20/17
MAZIE [1] 1/13
Mckesson [1] 4/8
md [1] 1/4
MDL [1] 1/15
me [13] 5/6 6/20 10/12 13/22 14/16 15/7 16/2 16/7 16/11 17/1 18/14 21/25 22/9
MEAGHER [1] 2/8
mean [1] 20/9
meantime [1] 24/12
mechanical [1] 1/25
Meeks [4] 9/7 9/9 9/18 10/2
meet [2] 22/19 23/23
memorial [1] 5/11
mentions [1] 7/4
Meridian [1] 3/11
middle [1] 15/16
might [2] 11/14 22/1
mine [1] 5/12
Mitchell [1] 1/7
Monday [2] 1/8 22/20
month [6] 14/11 14/19 15/1 17/10 17/15 24/2
more [2] 14/11 21/4
MORGAN [1] 2/15
MORING [1] 3/20
Morrison [5] 4/17 8/17 8/19 12/8 12/13
most [1] 14/13
motion [3] 11/9 12/10 13/10
move [1] 12/16
moving [2] 21/25 22/8
Mr. [5] 7/19 11/7 12/13 13/15 13/22
Mr. Morrison [1] 12/13
Mr. Nigh [2] 13/15 13/22
Mr. Nigh's [1] 11/7

Mr. Palmer [1] 7/19
Ms. [1] 11/8
Ms. Dufrene [1] 11/8
much [2] 13/24 24/14
Mulberry [1] 3/7
MURTHA [1] 2/23
my [9] 5/5 8/21 10/9 11/1 12/9 12/25 19/7 22/1 23/4
Mylan [1] 2/21

**N**

named [1] 11/16
nature [1] 14/22
NE [1] 3/3
need [12] 5/19 5/24 9/13 11/22 13/15 13/16 13/23 15/6 16/1 16/10 18/7 20/2
needed [1] 7/1
needs [1] 7/13
negotiate [1] 13/16
Nesbit [1] 2/6
never [1] 21/10
NEW [6] 1/1 1/8 1/15 1/18 2/9 2/9 2/13 2/13 2/17 2/24 3/8 8/1 8/3 8/4 9/1 15/15
Newark [1] 3/8
next [10] 2/25 3/24 8/2 10/10 12/16 19/5 20/20 21/20 21/22 23/1
NIGH [5] 2/2 2/2 6/5 13/15 13/22
Nigh's [1] 11/7
njd.uscourts.gov [1] 1/23
no [4] 12/15 19/14 20/12 24/9
noise [1] 6/23
NORRIS [1] 4/6
NORTON [1] 4/5
not [33]
nothing [2] 19/22 20/25
notice [1] 11/9
notices [1] 16/10
now [14] 6/3 6/22 9/22 11/8 11/14 14/24 14/25 15/6 16/1 17/20 20/7 21/2 22/24 23/5
NUMBER [1] 1/3
NW [2] 2/3 3/21

**O**

O'REILLY [1] 3/6
occurred [2] 6/20 6/24
off [1] 7/18
official [3] 1/23 17/3 24/20
Ohio [2] 3/16 4/3
Okay [14] 6/13 6/23 8/23 9/21 10/11 11/4 11/11 12/4 17/8 18/2 19/6 19/10 19/15 19/20
once [2] 14/11 18/9
one [13] 1/20 2/9 2/20 8/14 11/7 11/13 12/3 13/6 15/1 15/3 20/16 21/4 21/15
only [3] 8/8 15/14 23/19

opportunity [2] 20/16 22/8
order [11] 9/12 10/12 10/22 16/1 16/2 16/8 16/18 17/20 18/7 18/15 22/4
ordered [1] 15/23
ordering [1] 16/18
orders [3] 15/4 15/12 15/14
Orleans [1] 1/18
other [8] 6/23 7/2 15/3 18/9 23/2 23/14 23/19 24/7
otherwise [1] 15/22
our [11] 7/3 7/4 12/2 14/7 20/10 20/16 20/20 21/3 21/20 22/19 22/22
out [4] 6/25 10/10 13/12 2/2
over [5] 5/10 8/11 12/3 18/11 18/18
own [1] 20/16
Oxford [1] 2/20

**P**

PACHIOS [1] 1/19
page [2] 2/25 3/24
Palmer [5] 4/16 7/19 7/19 11/6 12/9
parent [2] 12/17 12/19
Parkway [1] 1/14
part [1] 23/15
particularly [2] 15/13 20/14
parties [3] 10/13 16/18 23/24
party [5] 1/18 1/21 2/4 12/1 12/17
passed [1] 5/13
Payor [3] 1/18 1/21 2/4
pending [1] 22/7
Pendley [2] 4/18 10/3
Pennsylvania [3] 2/21 3/21 5/12
perhaps [1] 21/22
permission [1] 10/8
person [2] 12/24 15/12 15/19
personal [4] 12/20 12/25 13/10 17/20
perspective [1] 14/10
Pharma [5] 2/14 2/17 2/18 3/5 3/9
Pharmaceutical [6] 2/10 2/10 3/4 3/8 12/19 13/11
Pharmaceuticals [4] 2/14 2/21 3/5 3/9
pharmacies [3] 7/6 18/6 21/7
pharmacy [12] 3/12 6/10 7/22 9/4 9/9 9/11 9/15 9/16 10/7 19/3 19/9 19/16
pick [4] 10/21 20/16 21/12 21/13
Piedmont [1] 3/3
PIETRAGALLO [1]

2/19
piped [1] 17/25
Pittsburgh [2] 2/21 22/2
PIZZI [1] 3/6
placed [1] 9/12
plaintiff [6] 7/24 8/9 8/10 9/8 11/17 13/24
plaintiff's [2] 8/16 8/24
plaintiffs [24] 1/15 2/7 6/4 7/5 8/21 9/13 10/14 11/21 13/12 13/17 13/22 16/8 16/14 16/18 16/24 19/22 20/13 21/1 21/6 21/12 21/16 22/14 23/17 24/1
plaintiffs' [14] 6/15 6/18 12/21 13/18 14/22 15/5 16/3 16/5 17/6 17/9 17/13 18/10 23/15 23/23
plausible [1] 21/8
PLLC [1] 2/2
PO [1] 1/20
point [2] 20/12 23/7
pool [2] 21/3 21/13
Portland [1] 1/21
position [6] 6/15 7/3 7/4 7/7 7/7 8/9 12/21 12/23 13/13 14/17 15/7 20/6 21/17
positions [3] 9/5 9/13 10/13
prefer [1] 18/12
prepared [1] 17/4
prescriptions [1] 11/17
present [2] 4/9 14/6
preside [1] 5/17
presiding [1] 14/6
PRETI [1] 1/19
previously [4] 5/17 12/25 14/19 20/14
Princeton [2] 2/17 2/24
Prinston [1] 2/10
prior [1] 18/9
probably [4] 11/25 14/19 14/24 18/11
problem [1] 10/8
problems [1] 5/5
proceedings [4] 1/25 5/1 24/19 24/23
produce [1] 18/6
produced [1] 1/25
producing [1] 18/8
product [1] 13/14
PRODUCTS [1] 1/4
proposal [1] 13/21
propose [5] 14/12 14/18 14/25 21/25 23/25
proposed [6] 10/12 16/2 16/7 16/18 22/9 22/11
protect [1] 17/21
protected [1] 18/8
provide [1] 16/10
prudent [1] 11/14
Punta [1] 2/6
purpose [2] 15/19 15/21
put [9] 7/1 9/13 9/15 9/24 11/3 11/4 11/13 23/5

**P**

put... [1] 23/21

**Q**

question [1] 16/25

**R**

raising [1] 11/21
Rambo [1] 5/13
RASO [1] 2/2
RASPANTI [1] 2/19
RDR [1] 24/24
RDR-RMR-CRR-CRC [1] 24/24
RE [1] 1/3
reach [2] 22/18 23/1
really [2] 7/12 15/14
reason [2] 13/3 21/4
recall [1] 6/20
receive [1] 16/23
receiving [1] 5/14
recently [3] 5/13 8/8 18/10
recognize [2] 7/6 8/6
recognized [1] 7/1
record [4] 9/23 10/25 17/3 24/23
recorded [1] 1/25
recording [1] 6/22
REEFER [1] 2/20
refuse [1] 20/13
refused [1] 21/14
regularly [3] 5/15 14/5 14/9
related [1] 23/2
Renée [1] 4/12
replace [1] 7/1
replacement [3] 6/2 20/2 20/7
report [2] 24/2 24/4
Reporter [2] 1/23 24/25
REPORTER'S [1] 24/20
Reporter/Transcriber [1] 24/25
represent [2] 9/3 19/8
represents [1] 10/2
request [1] 14/4
requested [2] 21/10 21/12
requests [2] 15/4 21/11
required [2] 15/11 15/18
requires [3] 10/13 16/2 16/8
resolved [4] 5/25 6/1 23/10 23/11
respect [13] 5/25 6/9 6/15 12/6 12/21 14/8 14/16 16/5 18/22 19/21 22/11 23/20 24/5
respond [3] 15/6 15/7 20/23
responded [1] 13/12
response [5] 8/12 8/13 11/22 12/15 24/9
resumption [2] 5/15 14/4
RET [2] 1/10 5/2
Retailer [1] 3/12

**S**

revised [1] 16/10
Ridge [1] 2/3
right [29]
RMB [1] 1/4
RMR [1] 24/24
road [3] 2/23 3/3 21/19 11/1
Roberts [1] 10/17 10/22 11/1
ROSE [1] 4/5
Roseland [1] 1/15
Rosemarie [1] 4/13
Ross [1] 4/6
Roszel [1] 2/23
rounded [1] 10/10

**S**

safety [1] 22/12
said [1] 10/25
SAK [1] 1/4
same [4] 7/7 13/3 13/13 21/11
Sara [1] 4/15
say [4] 8/14 11/19 12/7 20/17
schedule [4] 14/12 14/13 15/8 15/11
scheduled [7] 5/9 5/15 14/5 14/9 14/19 22/24 23/6
schedules [1] 22/4
scheduling [2] 5/11 21/22
see [4] 5/25 8/10 21/19 24/11
seek [1] 14/23
seems [1] 12/1
seen [1] 21/2
select [1] 20/7
selected [3] 8/4 17/6 17/18
selection [2] 6/1 24/6
selectively [1] 20/13
sending [1] 14/16
sense [1] 20/1
sent [1] 8/20
separate [1] 6/10
serve [1] 15/21
service [1] 5/11
set [1] 10/9
settlement [3] 18/3 18/4 18/5
settlements [1] 18/9
sheet [1] 11/17
sheets [4] 14/22 15/5 16/13 22/12
shortly [1] 12/10
should [12] 9/19 9/24 10/7 11/18 13/20 14/1 14/3 14/8 14/13 20/7 20/15 21/22
shouldn't [1] 11/19
show [3] 15/4 15/12 15/14
show-cause [1] 15/4
side [3] 8/24 13/24 23/18
since [2] 11/14 22/2
single [1] 7/4
SKADDEN [1] 2/8

SLATE [1] 2/8
SLATER [3] 1/13 1/13 22/13
Smalls [9] 4/18 9/7 9/10 9/18 10/2 10/6 18/24 19/14 19/15
so [38]
Solco [1] 2/11
some [2] 6/23 17/14
somebody [1] 13/24
somehow [3] 6/18 7/9 7/10
something [4] 13/21 16/19 17/2 20/17
somewhat [1] 6/19
soon [1] 8/13
sorry [3] 5/10 8/14 19/14
South [2] 3/11 18/25
speak [2] 6/9 8/21
speaking [2] 7/10 13/20
SPECIAL [2] 1/10 5/2
specific [1] 19/19
spokesperson [1] 13/18
SPUNG [1] 3/18
Square [1] 2/3
stand [3] 18/22 22/11 24/5
stares [1] 17/23
start [1] 6/14
started [3] 5/4 5/9 5/18
state [1] 19/19
state-specific [1] 19/19
statement [5] 7/3 7/4 7/7 7/8 11/7
statements [1] 7/4
states [2] 1/1 20/25
status [2] 1/5 22/6
stenography [1] 1/25
STEVEN [1] 3/3
still [2] 22/17 23/21
stipulation [2] 13/13 22/12
stone [1] 12/3
STOY [1] 2/19
Street [7] 1/17 2/6 3/7 3/11 3/15 3/18 4/3
Streets [1] 1/7
submission [1] 11/22
submit [10] 10/12 11/15 16/2 16/7 16/8 16/11 16/11 16/18 17/2 22/8
submitted [1] 20/25
substantive [2] 22/19
substitute [2] 11/9 12/10
suggest [3] 10/20 22/23 22/25
suggested [1] 23/2
suggestion [3] 11/9 23/5 23/25
suitable [1] 20/14
Suite [6] 1/14 3/3 3/15 3/18 4/3 4/7
Suites [1] 2/9
Suits [8] 4/17 8/2 8/2 8/16 8/22 8/24 12/9 19/13
suppose [1] 19/25
sure [5] 12/2 13/19 17/15

22/5 22/17
Sylvia [1] 5/13

**T**

tackle [1] 23/24
take [7] 6/12 13/13 17/13 17/22 20/17 20/19 23/9
taking [1] 10/13
talk [2] 5/15 21/22
talking [1] 9/23
Teams [6] 1/6 5/1 6/22 15/13 15/22 15/25
terms [2] 15/18 16/4
Teva [3] 3/4 3/5 3/5 3/8 3/9 3/9 12/17 12/17 12/19 12/25 13/2 13/10
Teva's [1] 12/19
Texas [2] 4/7 18/25
Thank [13] 11/5 12/5 12/12 15/24 17/17 18/17 18/20 18/21 23/13 24/13 24/15 24/16 24/17
Thanks [2] 18/16 18/19
them [8] 5/14 5/25 6/1 9/20 11/22 11/24 21/4 23/5
therefore [7] 7/25 8/4 8/11 11/19
these [3] 7/14 13/14 15/12
they're [5] 7/8 9/14 9/16 19/4 20/15
they've [1] 20/14
thing [7] 5/19 7/4 8/2 8/14 11/17 13/3 15/14
things [5] 14/22 18/22 22/11 23/7 24/5
think [30]
thinking [1] 15/17
third [5] 1/18 1/21 2/3 2/4 19/11
Third-Party [3] 1/18 1/21 2/4
this [29]
THOMAS [2] 1/10 5/2
THORNBURG [1] 3/10
though [1] 7/16
three [3] 3/7 7/1 7/1
through [6] 5/18 5/21 16/12 20/1 23/4 23/8
time [4] 14/14 14/14 24/2
tinkering [1] 23/21
today [6] 10/9 11/25 14/7 23/15 24/8 24/13
together [1] 24/1
Tom [1] 5/5
tomorrow [1] 11/25
tone [1] 20/10
too [1] 15/20
Torrent [5] 2/14 2/14 2/14 11/13 11/15 12/1
TPP [1] 13/11
Transcriber [1] 24/25
transcript [2] 1/25 24/22
transcription [1] 1/25
TRAURIG [1] 3/2
travel [1] 15/15

treatment [1] 17/19
trial [1] 6/2
trials [2] 5/21 16/7
tried [2] 7/25 21/7
true [1] 8/8
try [4] 21/4 21/6 22/21 23/25
trying [3] 6/25 17/12 22/17
Tuesdays [1] 14/12
turned [1] 12/2
two [3] 14/21 15/1 21/16

**U**

U.S [3] 1/7 2/10 2/11
ULMER [2] 3/14 4/2
ultimately [1] 7/13
under [3] 18/24 18/25 21/10
understand [4] 5/24 12/21 15/17 15/18
understanding [1] 13/1
underway [1] 13/19
UNITED [1] 1/1
unless [1] 15/22
unredacted [1] 18/7
up [7] 6/9 17/25 20/18 20/19 23/3 23/9 23/12
update [1] 16/13
updated [5] 16/2 16/8 16/19 16/22 17/5
us [3] 4/5 13/21 22/21
USA [3] 2/18 3/5 3/9
used [1] 14/25

**V**

valsartan [4] 1/3 11/16 11/17 11/20
valuable [1] 15/21
VANASKIE [3] 1/10 5/2 5/5
vast [1] 21/3
VAUGHN [1] 2/2
venue [1] 8/4
very [6] 6/13 11/4 12/4 12/12 15/13 18/10 20/24 22/18 24/14
via [5] 1/6 5/1 16/23 16/25 17/1
VICTORIA [3] 3/2 6/8 16/16
videoconferencing [2] 1/6 5/1
views [1] 14/8
Vine [2] 3/15 4/3
Vivimed [2] 18/4 18/5

**W**

wait [1] 21/19
waive [13] 6/18 7/9 7/15 7/21 7/22 7/24 9/8 9/14 10/25 19/1 19/4 20/13 21/14
waived [2] 21/1 21/5
waiver [4] 7/10 7/13 9/24 10/17
waiving [4] 7/5 9/4 19/8

## W

**waiving... [1]** 21/16
**Walgreens [1]** 3/13
**WALLACK [1]** 2/22
**Walmart [1]** 3/13
**WALSH [1]** 3/6
**want [7]** 7/22 7/24 8/10 14/24 20/9 21/24 23/21
**wanted [4]** 6/17 11/7 12/2 23/14
**Washington [2]** 2/3 3/22
**wasn't [1]** 15/17
**Wave [18]** 5/20 5/20 5/22 6/9 6/15 10/18 12/7 12/7 12/18 17/22 18/1 19/3 19/21 20/3 23/20 23/21 23/24 24/6
**Wave 2 [1]** 20/3
**way [1]** 24/3
**we'll [15]** 5/4 5/9 5/14 5/18 10/9 11/3 12/7 13/6 18/14 18/18 21/19 22/4 22/9 23/9 23/11
**we've [5]** 5/21 7/18 11/21 18/8 20/25
**Wednesday [1]** 22/3
**week [5]** 10/14 13/5 17/7 17/16 18/18
**weeks [2]** 14/19 14/21
**weigh [1]** 14/15
**Weinstein [1]** 4/14
**West [1]** 2/9
**Wewatta [1]** 3/18
**whatever [1]** 18/13
**whether [10]** 7/8 8/10 9/8 9/8 9/11 9/14 9/16 11/25 13/23 19/16
**WHITELEY [2]** 1/16 1/17
**wholesaler [6]** 3/16 4/4 8/22 9/10 9/15 9/17
**wholesalers [5]** 6/10 7/6 8/6 8/11 21/7
**whom [1]** 13/20
**why [2]** 5/18 13/3
**will [14]** 6/3 6/6 8/14 8/22 9/4 9/5 11/8 12/10 14/7 15/3 18/6 18/15 20/20 24/11
**WILLIAM [1]** 2/23
**WILLIAMSON [1]** 2/5
**winter [1]** 15/16
**wish [1]** 7/21
**within [1]** 17/7
**won't [1]** 15/2
**work [3]** 22/17 23/4 23/7
**worked [2]** 13/12 15/13
**working [1]** 17/20
**works [1]** 22/25
**wouldn't [2]** 7/25 13/3
**writing [7]** 7/13 9/5 9/13 9/15 9/25 11/3 11/4
**written [1]** 10/17

## Y

**Yeah [1]** 20/5
**yes [15]** 5/7 5/8 6/11 6/16

6/21 10/5 10/15 10/23 13/8 14/3 16/21 17/11 17/24 17/25 18/5
**yet [4]** 8/12 9/7 9/10 19/16
**York [4]** 2/9 2/9 2/13 2/13
**you [48]**
**you'd [1]** 18/12
**you'll [2]** 6/19 23/10
**you've [1]** 22/24

## Z

**Zeimer [1]** 4/15
**Zhejiang [1]** 2/10
**ZHP [4]** 2/11 10/18 13/14 22/17
**Zoom [1]** 15/13