# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Renée Marie Bumb, District Court Judge |
| **This Document Relates to the TPP Trial** | Oral Argument Requested |

## TPP TRIAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO REOPEN EXPERT RECORD

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................1

II.     PROCEDURAL HISTORY ..........................................................................3

III.    ARGUMENT..........................................................................................6

IV.     CONCLUSION.......................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alta Wind I Owner Lessor C v. United States*,
    154 Fed. Cl. 204 (2021) .......................................................................................11

*Anthem, Inc. v. Express Scripts, Inc.*,
    660 F. Supp. 3d 169 (S.D.N.Y. 2023) ..................................................................10

*Bozick v. Conagra Foods, Inc.*,
    No. 19-cv-4045 (LJL), 2021 WL 1198320
    (S.D.N.Y. Mar. 30, 2021) .....................................................................................10

*Deghand v. Wal-Mart Stores, Inc.*,
    904 F. Supp. 1218 (D. Kan. 1995) .........................................................................7

*Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of
    Scottsdale - Phase II LLC*,
    No. CV-17-04597-PHX-SMM, 2021 WL 9597885
    (D. Ariz. Feb. 22, 2021) .......................................................................................11

*Globespanvirata, Inc. v. Texas Instruments, Inc.*,
    No. 03-2854 (GEB), 2005 U.S. Dist. LEXIS 16348
    (D.N.J. July 11, 2005) ............................................................................................7

*Harshaw v. Bethany Christian Services*,
    No. 1:08-cv-104, 2010 U.S. Dist. LEXIS 79454
    (W.D. Mich. Aug. 5, 2010) .....................................................................................8

*Kewazinga Corp. v. Microsoft Corp.*,
    No. 1:18-cv-4500-GHW, 2022 WL 4236301
    (S.D.N.Y. Sept. 14, 2022) .....................................................................................11

*Kimmel v. Massachusetts Bay Insurance Co.*,
    No. 21-12743 (CPO), 2023 WL 8714336 (D.N.J. Dec. 15, 2023).....................11

*In re National Prescription Opiate Litigation*,
    956 F.3d 838 (6th Cir. 2020) ...............................................................................14

*In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Products Liability Litigation*,
    93 F.4th 339 (6th Cir. 2024) .................................................................8, 10, 12

*Rent-A-Center v. 47 Mamaroneck Ave. Corp.*,
    215 F.R.D. 100 (S.D.N.Y. 2003) ...........................................................7

*Rimbert v. Eli Lilly & Co.*,
    647 F.3d 1247 (10th Cir. 2011) (Mot. ) .....................................................10, 11

*TL of Florida, Inc. v. Terex Corp.*,
    706 F. App'x 89 (3d Cir. 2017) ............................................................7

*Via Vadis, LLC v. Amazon.com, Inc.*,
    No. 1:14-cv-00813-LY, 2022 WL 1667560
    (W.D. Tex. May 24, 2022)...............................................................11

*Wiest v. Tyco Electronics Corp.*,
    812 F.3d 319 (3d Cir. 2016) ............................................................9

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Products Liability Litigation*,
    MDL No. 2859, 2021 WL 4251906 (S.D.N.Y. Sept. 17, 2021) .......................14

*In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*,
    MDL No. 2342, 2015 WL 115486 (E.D. Pa. Jan. 7, 2015).........................13, 14

## I.    <u>INTRODUCTION</u>

The TPP Trial Defendants[1] oppose Plaintiffs' untimely Motion for Leave to Reopen Expert Record (<u>Doc.</u> No. 3053) (the "Motion"), which seeks a new round of damages expert discovery for the third-party payor ("TPP") trial originally set for March 2024.

Throughout this litigation, Plaintiffs have consistently alleged that they are entitled to a full refund for life-saving "valsartan-containing drugs" or "VCDs" that contained trace amounts of N-Nitrosodimethylamine ("NDMA") and N-Nitrosodiethylamine ("NDEA"), based on the overly simplistic theory that the medications were "worthless." They designated a single expert, Dr. Rena Conti, in support of that theory to obtain class certification, and they relied on Dr. Conti's opinion in opposing the TPP Trial Defendants' prior motion for summary judgment and in working up their case for trial. Now that the Court has excluded Dr. Conti's "worthlessness" opinion as "unreliable," Plaintiffs are seeking to reopen discovery, redefine their damages theory and designate as-yet-unidentified experts who will opine that the VCDs were "worth less" than what Plaintiffs paid. This request is contrary to the Court's clear directive that it "definitely" will not reopen discovery

---

[1]    The TPP Trial Defendants are Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC (collectively, "ZHP"), Teva Pharmaceuticals USA, Inc., Actavis LLC, and Actavis Pharma, Inc. (collectively, "Teva"), and Torrent Pharmaceuticals Ltd. and Torrent Pharma, Inc. (collectively, "Torrent").

given the advanced stage of these proceedings—i.e., it is "not going to . . . open this all back up again." (4/28/2025 CMC Hr'g Tr. 46:23-47:25, 48:16-19.)

In support of their request, Plaintiffs essentially contend that Judge Kugler dictated the scope of their damages theory and that this Court's recent Rule 702 ruling is an "intervening change in the law of the case" that warrants new expert testimony on the question of damages. But it is **Plaintiffs** who insisted that the VCDs were "worthless"; and it is **Plaintiffs** who argued that this theory obviated the need to address individualized issues related to damages. The fact that the Court has now excluded Plaintiffs' sole expert espousing that theory is not a license for Plaintiffs to replace that expert with an entirely new one and obtain a second bite at the apple, upending years of work in this MDL and effectively requiring the parties to start from scratch. If Plaintiffs are permitted to introduce one or more new experts to support a "worth less" theory at this late stage, the TPP Trial Defendants will have to identify their own experts to counter those opinions; the Court will have to resolve challenges to the admissibility of those new experts' opinions; and—if Plaintiffs and their new expert(s) are permitted to proceed on a "worth less" theory—the Court will have to revisit class certification and decide whether this new theory raises individualized questions that preclude class treatment. Such a re-do of the litigation at this late stage is inappropriate. Rather, as the Court clearly instructed, the proper course is for the TPP Trial Defendants to move for summary judgment and for

Plaintiffs to identify what (if any) existing record evidence is capable of proving damages under the principles articulated in the Court's Rule 702 ruling.

For all of these reasons, discussed more fully below, the Court should deny Plaintiffs' Motion.

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiffs have alleged from the inception of this litigation that the VCDs were "worthless." Although the Second Amended Complaint also vaguely alleged that the VCDs had "significantly diminished or no intrinsic market value" (Doc. No. 398 at 99, 101, 102-03), Plaintiffs' opposition to Defendants' motion to dismiss (filed in September 2020) made clear that their theory was that the TPPs "were economically injured by paying for a worthless drug" (Doc. No. 577 at 24). And while Judge Kugler found that Plaintiffs had sufficiently pled their "worthless" theory at the pleading stage, he dismissed the diminished-value theory on the ground that Plaintiffs had "fail[ed] to allege facts which would permit a factfinder to value the purported injury with[out] resorting to mere conjecture." (Doc. No. 728 at 11.)[2]

---

[2]    It was not until Plaintiffs' November 12, 2024 letter to the Court, after the Court indicated it was going to exclude Dr. Conti's damages opinion, that Plaintiffs asked this Court in a footnote to allow them to amend their complaint "to more explicitly add a worth less theory[.]" (Doc. No. 2921 at 23 n.19.) In the Court's April 7, 2025 Opinion, the Court found no amendment necessary. (Doc. No. 3018 at 48-49.)

At the class-certification stage, Plaintiffs continued to make clear that their theory of alleged injury rests on "Dr. Conti's damages" theory, which "values the VCDs as economically worthless[.]" (Doc. No. 1748 at 79.) This theory was central to Plaintiffs' argument that their claims satisfied Rule 23. According to Plaintiffs, their "worthless" theory avoided "individualized issues regarding the value to each Class Member of the VCDs," because "for all Class Members that value is $0." (*Id.*) Judge Kugler agreed at the class-certification stage of the proceedings, without opining on the viability of the theory at successive merits stages, certifying a TPP class based on the core allegation that the "VCDs were worthless" and on Plaintiffs' demand for "the full cost of their payments for their insured's VCDs over the relevant period." (Doc. No. 2261 at 36; *see also id.* at 37 n.27 (court summarizing Plaintiffs' argument as stating: "[I]f the contamination were known from the beginning, the VCDs would not have been sold and are therefore economically worthless.").) Judge Kugler also denied Defendants' Motion to Preclude the Class Certification Report of Dr. Conti, noting that "[a]t [the] ***class certification stage***, the methodology of an expert need not be perfect or even legally correct." (*Id.* at 87, 89 (emphasis added).)

Judge Kugler set the TPP Class Trial to commence on March 18, 2024. (*See, e.g.*, 12/1/2023 Hr'g Tr. 28:3-9.) Plaintiffs once again proffered Dr. Conti as their sole damages expert. Indeed, when the TPP Trial Defendants moved for summary

judgment last year, Plaintiff MSP Recovery Claims confirmed that the only theory of damages was the one being advanced by Dr. Conti—i.e., that the VCDs were "'worthless.'" (Doc. No. 2569 at 33 ("the Court has already determined . . . that the VCDs are 'economically worthless' . . . .") (citing Doc. No. 775 at 20).)

The TPP Trial Defendants moved to exclude Dr. Conti's opinions in advance of the previously-scheduled trial. Briefing on that motion was completed on March 6, 2024, and Judge Kugler did not rule on that motion prior to his retirement. After being assigned to this MDL proceeding, this Court heard oral argument on the admissibility of Dr. Conti's opinions, postponed the TPP Class Trial, and, on April 7, 2025, ultimately granted the TPP Trial Defendants' motion to exclude Dr. Conti's opinion that the VCDs are "worthless" as unreliable and resting solely on her *ipse dixit*. (Doc. No. 3018 at 42-46.) At the following case management conference, the Court made clear that it "definitely" will not "reopen discovery" for Plaintiffs to introduce new experts or damages theories into this case. (4/28/2025 CMC Hr'g Tr. 46:23-47:1.) Rather, the Court granted the TPP Trial Defendants' request to move for summary judgment on the TPP claims in this MDL in light of the Court's April 7 ruling. (*Id.* 18:20-19:1.) That motion is forthcoming, pursuant to the schedule set by the Court.

### III.    <u>**ARGUMENT**</u>

As the Court recognized at the April 2025 case management conference, "from day one," Plaintiffs' theory has been that the VCDs "were worthless," a theory the Court "rejected" in its Rule 702 ruling with respect to Dr. Conti. (4/28/2025 CMC Hr'g Tr. 17:13-15.) When the Court asked Plaintiffs' counsel if he "ha[s] another expert besides Conti that will put a value on" the medications (*id.* 17:16-17), counsel "request[ed] time to get another expert" to espouse an opinion that the medications are "worth less" than what Plaintiffs paid for them, and acknowledged Plaintiffs' remaining experts "are not going to say it's a fundamental defect" that renders the VCDs valueless (*id.* 18:3-9, 31:5-6, *see also id.* 34:13-14 ("our general cause experts are not going to give you valuations of a pill")). The Court rejected the request to find and introduce another expert into this case, stating on the record that the appropriate next step in these proceedings is for the TPP Trial Defendants to move for summary judgment based on the ***existing record***. (*Id.* 46:23-24.) In so stating, the Court ruled that it is "definitely not" going "to reopen discovery" because "[t]his case is too old." (*Id.* 46:24-47:1; *id.* 47:18-19 (telling Plaintiffs' counsel: "No. Because if that means all new experts, I'm not doing it. This case is too old."); *id.* 47:22-23 (Court stating "[n]o, not doing it. Not doing it. . . . The case is too old.").)

Plaintiffs nonetheless argue that there is "good cause" for "supplement[ing] the expert record under Rule 16, which governs the amendment of scheduling orders.

(Mot. at 1, 10.) This argument fails at the threshold because Plaintiffs are not merely seeking to "supplement" the current record; rather, they are attempting to introduce an entirely new theory of damages into this case that is different than the one underlying Judge Kugler's class-certification ruling, Defendants' rebuttal expert evidence, and the parties' workup for the previously-scheduled trial. Plaintiffs claim that they are "simply seeking to utilize the *existing* record with a new expert to address the translating mechanism embraced by the Court" at the April case management conference. (Mot. at 4.) But that is not credible. As the Court explained at that conference, "an economic translation into risk and benefits" of the VCDs is precisely "the piece that is missing" from this case. (4/28/2025 CMC Hr'g Tr. 41:10-13.) And far from "embrac[ing]" the view that Plaintiffs should be afforded a new opportunity years into this litigation to find and develop a "new expert" to supply this missing piece, the Court unequivocally rejected such a position. (*Id.* 46:24-47:1, 47:22-23.) Notably, the Third Circuit has affirmed the rejection of a new damages theory as "untimely" after the close of discovery where it would have required the defendant to "engage in significant, additional discovery" before trial. *See TL of Florida, Inc. v. Terex Corp.*, 706 F. App'x 89, 91, 94 (3d Cir. 2017).

Nor have Plaintiffs come close to satisfying Rule 16(b)(4)'s "good cause" standard to modify the Court's schedule. "A finding of good cause depends on the diligence of the moving party." *Globespanvirata, Inc. v. Tex. Instruments, Inc.*, No.

03-2854 (GEB), 2005 U.S. Dist. LEXIS 16348, at *9 (D.N.J. July 11, 2005) (quoting *Rent-A-Center v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. 2003)). The Court may also consider prejudice, although "the lack of prejudice to the nonmovant does not show 'good cause.'" *Id.* at *10 (quoting *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)). The Sixth Circuit's recent ruling in another MDL is instructive. *See In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prods. Liab. Litig.*, 93 F.4th 339, 349-50 (6th Cir. 2024). In *Onglyza*, the Sixth Circuit affirmed the denial of the plaintiffs' request to identify a new expert after their original expert was excluded under *Daubert*, finding that reopening discovery "would likely impose significant costs on defendants in the form of substantial legal expenses and years of delay." *Id.* at 350. The same is true here.

***Diligence.*** Plaintiffs "were not diligent in identifying a *reliable*" damages expert to opine on the value of the VCDs. *Id.* As the Court recognized, "***from day one***," Plaintiffs' theory has been that the VCDs "were worthless[.]" (4/28/2025 CMC Hr'g Tr. 17:14-15 (emphasis added).) In the Court's words, "that's how [Plaintiffs] pled it" and that is exactly how Plaintiffs attempted to prove damages by "throwing everything into the Conti basket[.]" (*Id.* 41:23-25.) Most importantly, Plaintiffs specifically argued that Dr. Conti's overly-simplistic theory obviated "individualized issues regarding the value to each Class Member of the VCDs"

(Doc. No. 1748 at 79), which led Judge Kugler to certify their claims for class treatment (Doc. No. 2261 at 36; *see also id.* at 37 n.27). A party's "strategic" decision is not "good cause to reopen discovery or extend various deadlines . . . ." *Harshaw v. Bethany Christian Servs.*, No. 1:08-cv-104, 2010 U.S. Dist. LEXIS 79454, at *26 (W.D. Mich. Aug. 5, 2010) (affirming magistrate judge's denial of leave to designate an additional expert) (citation omitted).

Plaintiffs assert that they "labored under the law of the case," essentially laying fault with Judge Kugler as though he saddled Plaintiffs with Dr. Conti's theory of worthlessness and supposedly barred general causation expert testimony at any TPP trial. (Mot. at 11; *see also id.* at 1.) Not so. Judge Kugler's acceptance of ***Plaintiffs'*** proffered damages theory at the pleading and class-certification stages, and statements about what general causation evidence could be presented at a TPP class trial, do ***not*** implicate the law-of-the-case doctrine. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 329-30 (3d Cir. 2016) (judicial opinions addressing motions to dismiss do not constitute law of the case for purposes of summary judgment and other stages of case). In any event, as this Court recognized, it was ***Plaintiffs*** who persuaded Judge Kugler to accede to their "worthlessness" theory at earlier stages of this litigation (4/28/2025 CMC Hr'g Tr. 41:23-25) and who "erroneously persuaded Judge Kugler that causation was not part of the TPP trial" (*id.* 19:24-20:2 ("I totally reject that now. I think causation is the elephant in the room and comes

9

into play.")).[3] The Court should not "reward [P]laintiffs" for advancing a dubious damages theory that Defendants have repeatedly argued is inadmissible *ipse dixit*, which would set "a precedent that parties may drag out litigation" in MDLs. *In re Onglyza*, 93 F.4th at 350.

The cases cited by Plaintiffs either reinforce these principles or are inapposite. For example, in *Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169 (S.D.N.Y. 2023) (Mot. at 12), the court reiterated that "Rule 26 ***does not permit*** 'the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect." *Id.* at 185 (emphasis added) (citing *Bozick v. Conagra Foods, Inc.*, No. 19-cv-4045 (LJL), 2021 WL 1198320, at *3 (S.D.N.Y. Mar. 30, 2021)). The court reasoned that a limited supplemental expert report would not violate this principle both because of its "narrow" nature and because it was not "a situation" where the opponent "has demonstrated that the disclosing party's initial theory is incorrect." *Id.* (citation omitted). Here, by contrast, Plaintiffs are attempting to introduce a completely new theory of damages because the TPP Trial Defendants have demonstrated that their initial theory "is incorrect."

---

[3]    Even Plaintiffs have known throughout this litigation that their attempts to keep general causation out of any TPP trial may ultimately not be successful. The parties submitted their proposed final Pretrial Order for the TPP Trial on March 14, 2024. (*See* Pretrial Order, attached as Ex. 1 to Declaration of Nina Rose.) Four of Plaintiffs' five general causation experts were disclosed as potential trial witnesses. (*Id.* at 201-03.) Defendants similarly identified five of their seven general causation experts as potential trial witnesses. (*Id.* at 215-17.)

Plaintiffs also cite *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247 (10th Cir. 2011) (Mot. at 12-13), in which the Tenth Circuit held that a district court that had reversed a predecessor judge's Rule 702 rulings should have permitted the plaintiff an opportunity to find new causation experts. *Rimbert* is inapposite because this Court has not reversed or reconsidered any ruling by Judge Kugler on the admissibility of Dr. Conti's "worthlessness" theory. Rather, Judge Kugler's acceptance of Plaintiffs' "worthlessness" theory occurred at the pleading and class-certification stages. Moreover, this case was reassigned on April 9, 2024, while the TPP Trial Defendants' motion to exclude Dr. Conti's trial opinions remained pending. (Doc. No. 2702.) Thus, unlike in *Rimbert*, the Court's ruling excluding Dr. Conti's opinions for purposes of trial does not constitute a change in the law of the case. As a result, Plaintiffs have not established the requisite due diligence (i.e., justification) for reopening discovery and trying a new damages theory.[4]

---

[4]    Plaintiffs' other cases are similarly inapposite. *See, e.g.*, *Kimmel v. Mass. Bay Ins. Co.*, No. 21-12743 (CPO), 2023 WL 8714336 (D.N.J. Dec. 15, 2023) (permitting supplementation of the expert record based on new evidentiary information obtained after the Court's expert disclosure deadline but prior to any ruling on the admissibility of the expert's testimony and without any discussion of "law of the case"); *Kewazinga Corp. v. Microsoft Corp.*, No. 1:18-cv-4500-GHW, 2022 WL 4236301 (S.D.N.Y. Sept. 14, 2022) (expressly declining to decide whether the Court would modify scheduling order and permit a supplemental expert report); *Alta Wind I Owner Lessor C v. United States*, 154 Fed. Cl. 204 (2021) (permitting supplementation of expert reports where the appellate court had established new legal principles on what the statute under which the parties were proceeding required); *Via Vadis, LLC v. Amazon.com, Inc.*, No. 1:14-cv-00813-LY, 2022 WL 1667560, at *1 (W.D. Tex. May 24, 2022) (granting leave to provide a supplemental

*Prejudice.* The prejudice from granting Plaintiffs' request is patent; as in *Onglyza*, it "would essentially restart expert discovery, requiring depositions, briefing, hearings, and motions on [P]laintiffs' new expert." *In re Onglyza*, 93 F.4th at 350. "This would delay the MDL's resolution for years" and "impose significant costs on defendants in the form of substantial legal expenses and years of delay." *Id.* Up to this point, based on Plaintiffs' own framing of their case, the TPP Trial Defendants have prepared to try a case that centers on whether the VCDs were "worthless"—i.e., had zero value, regardless of their life-saving and efficacious function. If Plaintiffs are allowed to reopen discovery and introduce an entirely new theory that the medications were actually just "worth less" than what Plaintiffs paid, the TPP Trial Defendants would have to find new experts to rebut that evidence. Moreover, Plaintiffs would have the burden of proving that their new expert testimony satisfies the requirements of Rule 23 and, if so, whether the new opinions can withstand summary judgment. This would take years to complete and effectively redo all of the work completed by the parties in the TPP proceedings.

---

expert report by the previously-excluded expert, which the plaintiffs explicitly stated "does not offer a new damages theory"); *Generations at Pinnacle Peak LLC v. Whitestone Pinnacle of Scottsdale - Phase II LLC*, No. CV-17-04597-PHX-SMM, 2021 WL 9597885, at *5 (D. Ariz. Feb. 22, 2021) (allowing defendant "to reopen discovery for the limited purpose of assessing the late disclosed documents and any expert opinions that rely upon them").

Plaintiffs downplay the prejudice, arguing that "[t]here is no trial date for the TPP Bellwether Trial." (Mot. at 13.) But as the Court recognized, "[t]he TPP trial . . . **was** ready"; the fact that Plaintiffs lack admissible evidence to proceed to trial is not a basis for the parties to start from scratch. (4/28/2025 CMC Hr'g Tr. 48:16-19 (emphasis added); *id.* 48:21-23 ("And so now's not the time to sort of fix it all up. So we'll either go forward the way it's been set or we won't.").) Moreover, "[t]his MDL as a whole is sprawling, encompassing dozens of classes of plaintiffs, upstream and downstream defendants, and multiple theories of liability covering both economic losses and personal injury." (Doc. No. 3018 at 2.) As a result, reopening discovery in the TPP proceedings so that Plaintiffs can redefine their core litigation theory of economic loss and damages would unfairly delay resolution of this entire MDL, further highlighting the prejudicial nature of Plaintiffs' request.

Although Plaintiffs argue that any prejudice to Defendants is outweighed by the importance of expert damages evidence in this MDL, the case they rely on was wrongly decided and should not be followed. (*See* Mot. at 14 (citing *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, 2015 WL 115486 (E.D. Pa. Jan. 7, 2015)).) The *Zoloft* court allowed the plaintiffs' steering committee in that proceeding to disclose a new expert after excluding their general causation experts' testimony given the "broader ramifications of barring an attempt to present [the new expert]" in an MDL. *In re Zoloft*, 2015 WL 115486, at *1-2. Indeed, the

court expressly observed that if the issue had arisen "outside of the MDL context, th[e] argument" that plaintiffs were "seek[ing] a '*Daubert* do-over' after an unfavorable outcome" "may have carried the day." *Id.* at *2. However, that reasoning is backwards given the enormous efforts expended by the parties (and now two different judges) with respect to Plaintiffs' "worthlessness" theory. And as other courts have recognized in criticizing the *Zoloft* approach, the Rules of Civil Procedure apply with equal force to cases in MDLs as they do to lawsuits outside such proceedings. *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & VerSys Femoral Head Prods. Liab. Litig.*, MDL No. 2859, 2021 WL 4251906, at *5 (S.D.N.Y. Sept. 17, 2021) (denying leave to permit introduction of new expert after excluding prior one, reasoning that the *Zoloft* court erred in "mak[ing] the MDL nature of the matter a decisive factor"); *see also In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020) ("[T]he requirements of the Civil Rules in an MDL case . . . 'are the same as those for ordinary litigation on an ordinary docket.'") (citation omitted).

In sum, reopening discovery at this late stage of the proceedings would unfairly "reward" Plaintiffs for their own strategic litigation decisions and unfairly prejudice all Defendants, warranting denial of Plaintiffs' motion.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' motion to reopen

the expert record in this case.

Dated: June 2, 2025

Respectfully submitted,

/s/ Jessica Davidson

Jessica Davidson, P.C. (*pro hac vice*)
Allison M. Brown, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com
alli.brown@kirkland.com

Nina R. Rose, P.C. (*pro hac vice*)
Jordan M. Schwartz (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
Fax: (202) 389-5200
nina.rose@kirkland.com
jordan.schwartz@kirkland.com

*Attorneys for Defendants Zhejiang*
*Huahai Pharmaceutical Co., Ltd.,*
*Huahai U.S., Inc.*, *Solco Healthcare*
*U.S., LLC, and Prinston*
*Pharmaceutical Inc.*

**GREENBERG TRAURIG, LLP**
Gregory E. Ostfeld
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601

Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

Lori G. Cohen, Esq.
Victoria Davis Lockard
Steven M. Harkins
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
cohenl@gtlaw.com
lockardv@gtlaw.com
harkinss@gtlaw.com

*Attorneys for Teva Pharmaceuticals USA, Inc., Teva Pharmaceutical Industries Ltd., Actavis LLC, and Actavis Pharma, Inc.*

**KIRKLAND & ELLIS LLP**
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals Ltd.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 2, 2025, a true and correct copy of the foregoing document was served upon counsel of record via operation of the Court's electronic filing system.

Dated: June 2, 2025                      Respectfully submitted,

                                         */s/ Jessica Davidson*

                                         Jessica Davidson, P.C. (*pro hac vice*)
                                         **KIRKLAND & ELLIS LLP**
                                         601 Lexington Avenue
                                         New York, NY 10022
                                         Tel: (212) 446-4723
                                         jessica.davidson@kirkland.com

                                         *Attorney for Defendants Zhejiang*
                                         *Huahai Pharmaceutical Co., Ltd.,*
                                         *Huahai U.S., Inc., Solco Healthcare*
                                         *U.S., LLC, and Prinston*
                                         *Pharmaceutical Inc.*