UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875**<br><br>**Hon. Renée Marie Bumb**<br>**CIVIL NO. 19-2875 (RMB)** |
| **THIS DOCUMENT RELATES TO ALL CASES** | |

**TPP BELLWETHER TRIAL PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO REOPEN EXPERT RECORD FOR LIMITED PURPOSE OF ADDRESSING INTERVENING CHANGE IN LAW**

TPP Bellwether Trial Plaintiffs ("TPP Plaintiffs") respectfully submit this Reply Brief in Further Support of their Motion for Leave to Reopen Expert Record for the Limited Purpose of Addressing Intervening Change in Law (ECF 3053) (the "Motion" or "Mot.").

\* \* \*

The narrow issue before this Court is straightforward: does an intervening change in the law of this case, along with the recent clarification of Third Circuit law (*Huertas*), demonstrate good cause to allow the Parties to narrowly supplement

1

the expert record to address those intervening changes? Plaintiffs respectfully submit that fairness and the interests of justice dictate that the answer should be "Yes."

Plaintiffs' Motion catalogued how, at every procedural milestone in this seven year-old litigation (*viz.*, Rule 12 stage, Rule 23 stage, summary judgment, attempted decertification, the eve of two since-adjourned trial dates), the law of this case was that adulterated and "contaminated drugs are economically worthless"[1] at the point of sale and that scientific, general causation evidence had little if any place at the TPP Subclass Bellwether Trial. *See* Mot. at 6-7.

This Court issued a new ruling on April 7, 2025 (ECF 3018). The Court itself emphasized this ruling presented a legal shift in the litigation: "the parties have been laboring under the assumption that causation was not part of the TPP Trial. But going forward it will be." ECF 3018 at 48. In response, Plaintiffs promptly filed this Motion to comply with the newly articulated directive, specifically to narrowly supplement the expert record to supply the jury with the economic "translating mechanism" this Court embraced at the April 28 CMC.[2]

Defendant' Opposition (ECF 3080) does not fairly frame the issue. Plaintiffs do not seek a "second bite at the apple" or to introduce an "entirely new theory of

---

[1] *See, e.g.*, ECF 775 at 20.
[2] Diligence requires a party to timely act on new information when it arises. *See, e.g.*, *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279-80 (E.D. Pa. 2010). Here, TPP Plaintiffs diligently filed their Motion shortly after the April 28 conference, which was set in part to discuss the April 7 Opinion.

2

damages." *See* Opp. at 2, 7. They merely seek to comply with the new legal directive in this case.

Plaintiffs' request will not unravel years of litigation, nor will this require the re-opening of discovery or years of additional litigation. Those assertions are made by Defendants without any explanation since they are suggested simply to create a sense of difficulty. All of the existing fact and expert evidence that the Parties amassed prior to the last two trial dates remains intact and presentable. In fact, on the existing record alone, a jury can find the VCDs were worthless after balancing the risks and benefits (especially given that, in the real world, completely uncontaminated valsartan was simultaneously available at the same time and for the same prices[3]), or find that the contaminated pills were worth less, without an economic "translating mechanism," that some limited offset is appropriate for residual value. But as this Court has now said the jury should have the benefit of an economic "translating mechanism," Plaintiffs have dutifully sought leave to proffer exactly that.

There is virtually zero prejudice or delay to Defendants here. Allowing this

---

[3] This is a critical distinguishing factor between this litigation versus legal challenges to the safety profile of brand drugs. In those cases, factfinders weigh the relative risks and benefits of a brand drug's *inherent* safety profile (*i.e.*, the good and bad are inseparable). Everyone here acknowledges that NDMA and NDEA should not have been in Defendants' VCDs and were never an approved factor in the approved risk/benefit, and that at all material times there were non-contaminated versions of these drugs available in the marketplace at the same prices.

3

limited supplementation poses no scheduling difficulties because there is no trial date set for this subclass trial; indeed the next phase of this MDL focuses on three waves of personal injury cases.[4] Each side's submission of new or additional expert opinion on this narrow issue, and expert depositions, poses a negligible-to-zero inconvenience as compared to the significant prejudice to TPP Plaintiffs and the many certified TPP class members if the latter are disallowed an opportunity to

---

[4] As stated by countless courts in the Third Circuit, the fact that there is no trial date clearly weighs in favor of permitting the supplementation of the record under the *Pennypack* factors (factors which Defendants' Opposition largely ignores). *See, e.g., White v. Beaver Cty.*, No. 17-998, 2019 WL 5395212, at *2 (W.D. Pa. Oct. 22, 2019) (collecting cases for proposition that Third Circuit regularly finds the disruption of trial *Pennypack* factor does not support exclusion of expert report "if no trial date has yet been set"); *Pager v. Metro. Edison*, No. 17-934, 2019 U.S. Dist. LEXIS 166052, 2019 WL 4736227, at *16 (M.D. Pa. Sept. 27, 2019) (finding no prejudice where "there is no trial date yet scheduled"); *United Healthcare Servs. v. Cephalon, Inc.*, No. 17-555, 2019 U.S. Dist. LEXIS 113756, 2019 WL 2994660, at *8 (E.D. Pa. July 8, 2019) (allowing the non-producing party "to present some limited new expert opinions," which would not significantly disrupt the 'orderly and efficient trial of the case'"); *Zawicki v. Armstrong*, No. 16-453, 2017 U.S. Dist. LEXIS 202638, 2017 WL 6206290, at *4 (M.D. Pa. Dec. 8, 2017) ("We find that the [moving party] will not be unduly prejudiced. No trial date has been scheduled and [the non-producing party] indicate[s] that they would not object to [the moving party] conducting any additional discovery he deems appropriate for the late-disclosed information."); *Ely v. Cabot Oil & Gas Corp.*, No. 09-2284, 2014 U.S. Dist. LEXIS 40930, 2014 WL 1276487, at *8 (M.D. Pa. Mar. 27, 2014) ("[T]rial in this matter has not been scheduled, and small modifications to the pretrial schedule can be made that are tailored to alleviating the prejudice to the Defendants while avoiding the exclusion of important evidence in [the ongoing] case . . . ."); *Merchs. Ins. Co. of N.H. v. 3 R Painting & Contr. Co.*, No. 06-1602, 2008 U.S. Dist. LEXIS 47564, 2008 WL 2478387, at *3 (D.N.J. June 18, 2008) ("[A]llowing discovery to be reopened strictly for the purposes of deposing [the nondisclosed expert] will not disrupt the trial schedule in this case. Indeed, at present, the Court has yet to set a trial date.").

address a fundamental legal shift in this case.

In fact, Defendants have already proffered experts who assert that the pills had some value and thus were not worthless – that was always the defense position (even though the law of this case rejected that position until April 7). The suggestion that the defense would need to retain all new experts is not credible. And on this record (including the complaint on file) the jury always could have found that the pills were worth less, not worthless, based on a weighing of all the evidence. And the Court has recognized that depending on the jury's evaluation of the evidence, it can still find that the pills were rendered worthless due to the significance of the contamination. The change at issue is the Court's ruling that Plaintiffs must present an expert who factors in the general causation issue and opines that the pills are worth less. Plaintiffs request leave to address this change.

The legal contours of this case before this Court's April 7 Opinion (*see* Opp. at 7) demonstrate that Plaintiffs presented their expert opinions based on rulings by the Court that have now been rejected, in particular the Court's prior finding that the fact of the contamination alone could render the pills worthless. The legal contours of this case changed in a fundamental way on April 7. TPP Plaintiffs will be unfairly and incurably prejudiced if expert analysis and scientific general causation evidence, which had never been found to be necessary at trial, is now not only admissible but pivotal. Defendants should not be granted a legal windfall with this material change.

5

A federal MDL should not be a game of "gotcha," especially when the rules of the game change after the TPP subclass trial was all set to go to trial as-is not once, but twice before. Denying leave to present limited new expert evidence under the newly established damages legal framework, based on the *existing* factual record, would have the "practical effect of…exclu[ding]…certain expert testimony." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012). Disposing of potentially meritorious legal claims that already survived summary judgment (*see* ECF 2694) due to a new shift in the applicable legal paradigm as to damages (not liability) is exactly the type of "technicality" upon which courts frown. *See* ECF 3053 at 14-15 (collecting cases).

Defendants' critique of *Zoloft* (Opp. at 13-14) is quite telling. The *Zoloft* court correctly recognized as one pertinent factor the "broader ramifications" of precluding expert testimony in an MDL, where issues are often interconnected across numerous cases. *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, 2015 WL 115486, at *1-2 (E.D. Pa. Jan. 7, 2015). Those same ramifications exist here, as multiple other certified consumer and TPP subclasses already exist (with no schedule yet for submission of merits expert or damages reports, or for trial). Narrow expert supplementation in the TPP Subclass Bellwether Trial Case will promote efficiencies and legal continuity for the Parties and the Court in the other certified class cases in light of the Court's April 7 Opinion. Defendants'

Opposition does not deny this.

Plaintiffs are not seeking to inject or resurrect a "new damages theory." Opp. at 7, 11. Worthless is a subset of worth less. This Court noted in its April 7 Opinion that new Third Circuit law (*Huertas*) held "that a product alleged to be 'worthless' is necessarily also alleged to be 'worth less' than bargained for. . . As such Plaintiffs' claim can be said to have encompassed both and the Court sees no need for Plaintiffs to amend their complaint." *Id.* at 48 (intervening citations omitted). The dual emergence of the April 7 Opinion and *Huertas* presents a new playing field, and the Parties should be permitted to supplement the existing expert record – not to re-open fact discovery – to account for these significant developments.

Defendants' reliance on the unpublished Third Circuit decision in *TL of Florida, Inc. v. Terex Corp.*, 706 F. App'x 89 (3d Cir. 2017) falls flat. There, the district court denied the plaintiff's motion for leave to amend the complaint to include a "materially different" damages theory. *Id.* at 93. In affirming, the Third Circuit noted the plaintiff's motion was filed shortly before the scheduled trial date, the delay was wholly the plaintiff's doing, and the plaintiff conceded "significant, additional" fact discovery would need to be completed if plaintiff were allowed to submit a new expert report based on a materially different damages theory. *Id.*

Here, by contrast, this Court already has said 'worthless' and 'worth less' are both encompassed by the operative complaint (*see supra*), there is no trial date, TPP

7

Plaintiffs acted promptly after the April 7 Opinion and April 28 CMC, and no additional fact discovery will be needed (*i.e.*, the narrow expert supplementation sought by Plaintiffs would be limited to expert 'translating mechanism' opinion based on the existing fact record).

Finally, Defendants "throw in" the argument that permitting Plaintiffs to present the requested expert supplement would require a re-do of class certification. Of course, that is not correct. The finding of class certification was based on the overall facts and legal issues presented, which all remain intact. There is no need for any individualized inquiry if the jury finds the contaminated pills to be worth less rather than worthless – just as the jury could have found before. There are no individual inquiries triggered by an expert presenting a worth less opinion taking into account general causation. Defendants failed to present any concrete basis for this assertion because there is none. Also, in certifying the classes, the Court expressly did not base its finding of predominance on either Plaintiffs' worthlessness theory or Defendants' counterargument. After noting Plaintiffs' and Defendants' competing theories on economic loss, the Court held that it "has NOT decided the predominance requirement of any Rule 23(b)(3) class based on its acceptance of either of the proposed economic loss theories." ECF 2261 at 23 (emphasis the Court's).

In sum, Plaintiffs' motion should be granted for all of the above reasons as

8

well as those set forth in Plaintiffs' Motion (ECF 3053).

Dated: June 9, 2025                                         Respectfully submitted,

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*MDL Plaintiffs' Co-Lead Counsel and Co-Lead Consumer Class Counsel*

*/s/ Adam Slater*
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

*MDL Plaintiffs' Co-Lead Counsel*

*/s/ Daniel Nigh*
Daniel Nigh
**LEVIN, PAPANTONIO, THOMAS, MITCHELL RAFFERTY & PROCTOR, P.A.**
316 South Baylen Street
Pensacola, FL 32502
Phone: (850) 435-7013
dnigh@levinlaw.com

*MDL Plaintiffs' Co-Lead Counsel*

*/s/ Conlee S. Whiteley*
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

*MDL Plaintiffs' Co-Lead Counsel and Co-Lead Consumer Class Counsel*

*/s/ John R. Davis*
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746

Tel.: 512-795-8686
Fax: 512-795-8787
jdavis@slackdavis.com

*Co-Lead Consumer Class Counsel*


/s/ *Jorge Mestre*
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

*Co-Lead TPP Class Counsel*

/s/ *Gregory P. Hansel*
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU &
PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

*Co-Lead TPP Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May 2025, I caused a true and correct copy of the foregoing to be filed and served upon all counsel of record by operation of the Court's CM/ECF system.

/s/ David J. Stanoch
David J. Stanoch