# EXHIBIT 5

Page 1

1               UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF NEW JERSEY

3          CASE NUMBER:  119-MD-02875 (RMB)(SAK)

4              MDL NO. 2875 - CAMDEN VICINAGE

5

6     IN RE:

7     VALSARTAN, LOSARTAN, and

8     IRBESARTAN PRODUCTS LIABILITY

9     LITIGATION

10    -------------------------------------------------

11

12       DEPOSITION OF CHRISTOPHER M. MELE, M.D.

13                THURSDAY, MAY 8, 2025

14

15              Deposition of CHRISTOPHER M. MELE,

16    M.D. in the above-mentioned matter before Jomanna

17    DeRosa, a Certified Court Reporter (License No.

18    30XI00188500), and Notary Public of the State of New

19    Jersey, taken via Zoom on Thursday, May 8, 2025,

20    commencing at 9:10 a.m. Eastern Standard Time.

21

22

23

24

25

```
                                                Page 2                                              Page 4
 1  A P P E A R A N C E S (via Zoom)              1
 2                                                2            I N D E X
 3  KIRKLAND & ELLIS                              3
 4  BY:  JOHN NOLAN, ESQ.                         4  WITNESS:
 5  601 Lexington Avenue, Floor 50               5  TYPE OF    EXAMINATION BY        PAGE
 6  New York, New York 10022                      6  EXAMINATION
 7  (212)341-7591                                 7  Direct   Mr. Nolan          8
 8  jack.nolan@kirkland.com                       8  Cross    Mr. Vaughn        290
 9                                                9  Redirect  Mr. Nolan         292
10                                               10
11  KIRKLAND & ELLIS LLP                         11
12  BY:  AUDREY ASPEGREN, ESQ.                   12          E X H I B I T S
13  1301 Pennsylvania Avenue Northwest           13
14  Washington, DC 20004                         14  EXHIBIT    DESCRIPTION         PAGE
15  (646)444-9164                                15  Mele-1   Prior Testimony History    13
16  audrey.aspegren@kirkland.com                 16  Mele-2   Deposition Notice       72
17                                               17  Mele-3   Copy of the Invoice      76
18                                               18  Mele-4   Report             105
19  NIGH GOLDENBERG RASO & VAUGHN                19  Mele-5   CV               117
20  BY:  BRETT VAUGHN, ESQ.                      20  Mele-6   Image of the Hepatic Sections  123
21  12022 Blue Valley Parkway, Suite 1020        21      of the Liver
22  Overland Park, Kansas 66213                  22  Mele-7   Report            134
23  (913)800-8518                                23  Mele-8   Liver Images         140
24  Bvaughn@nighgoldenberg.com                   24  Mele-9   Report of the CT scan From  153
25                                               25      April 19th

                                                Page 3                                              Page 5
 1  A P P E A R A N C E S (CONT'D)                1  Mele-10   Subcentimeter Foci in     186
 2                                                2       Segments 6 and 7 in the 301
 3  NIGH GOLDENBERG RASO & VAUGHN                 3       Series
 4  BY:  KATHRYN AVILA, ESQ.                      4  Mele-A    Segment 7           197
 5    STEPHANIE IKEN, LAW CLERK                   5  Mele-B    Screenshot of Image 27    203
 6  14 Ridge Square Northwest, 3rd Floor          6  Mele-C    Screenshot of Image 18    206
 7  Washington, DC 20016                          7  Mele-11   401 Series Scan From April of 209
 8  (771)210-5557 (KA)                            8       2016
 9  (202)978-1188 (SI)                            9  Mele-D    Image 35, Series 401     211
10  kavila@nighgoldenberg.com                    10  Mele-E    Image 17 From Series 401   227
11  siken@nighgoldenberg.com                     11  Mele-F    Areas of Hypodensity     234
12                                               12  Mele-G    Area of Hypodensity      236
13                                               13  Mele-12   CT Report From July 17th,   240
14  ALSO PRESENT:  HOWARD BRODSKY, VIDEOGRAPHER  14       2018
15    KEITH SHULMAN                              15  Mele-13   Radiology Report       260
16                                               16  Mele-14   Radiology Order        268
17                                               17  Mele-15   Image 48            270
18                                               18  Mele-16   Tab 42I             271
19                                               19  Mele-H    Image Number 35        272
20                                               20  Mele-I    Observation in Segment 6   274
21                                               21  Mele-J    Image 31            275
22                                               22  Mele-K    Image 46            278
23                                               23  Mele-17   Exhibit From Dr. Chernyak's  286
24                                               24       Report
25                                               25  Mele-18   Another Image From      288
```

2 (Pages 2 - 5)

Veritext Legal Solutions

800-227-8440                                                973-410-4040

Page 158

1    A.    You read it right.  I think he got it
2  wrong, because I think there's a -- there's a switch.
3  I think you guys have the same tick with
4  hyper/hypodense.
5    Q.    Okay.
6    A.    He calls it hypodense in the body of his
7  report and then, maybe when he used voice recognition
8  or however he does his reports, it came out hyper.
9  You know, you've done it.  A lot of people do it.
10  You know, I'm guessing what he meant, but we have to
11  resolve what he said and what he said and what's
12  there.  And I would expect him to have meant to say
13  hypodense there, right, because he's talking about
14  the same thing.
15    Q.    Got it.  And hypodense means it's darker
16  than the surrounding area of the liver?
17    A.    Yes, correct.
18    Q.    Okay.  And then, the next sentence says:
19  "Benign or malignant etiologies could have this
20  appearance."  Right?
21    A.    Yes.
22    Q.    And so that means this particular lesion
23  or observation could be malign or malignant.  True?
24    A.    In his opinion, yes.
25    Q.    Do you have an opinion as to whether or

Page 159

1  not this is definitively benign or malignant?
2    A.    I am looking at it in a different light.
3  I'm looking at it in terms of likelihoods.  And to
4  say it cannot be malignant would equally not be true.
5  There's information on the CT that we may get to
6  discussing that I don't see this particular
7  radiologist making use of the information that is
8  available to arrive at his conclusion here.  I would
9  say, based upon my review of the CT, the best way to
10  characterize my impression would be that it's more
11  likely than not benign.  Similarly, because we've
12  touched upon this a little bit, you cannot entirely
13  exclude malignancy based upon what he's describing.
14        Now, I don't really know what he's
15  looking at.  He didn't give us image numbers.  He
16  didn't give us a series number.  He's just kind of
17  throwing out this 8 millimeter thing in the right
18  lobe.  And you know the right lobe has four segments,
19  so where is this guy?  So we don't even know the
20  lesion he's talking about.  We can, you know, propose
21  and suspect and we can guess and speculate.  But he's
22  giving you nothing on this about features and
23  anything he can say about it, except it's hypodense.
24  So he's kind of stuck there because of what he's
25  said.  So he's the type that it's indeterminate.

Page 160

1  He's saying that it's too small to characterize
2  definitively.  He's saying that, you know, benign or
3  malignant etiologies could have this appearance.  And
4  that's true, but he's not giving you any degree of
5  probabilities or likelihood based on what is
6  objectively present.
7        So I agree that it could have -- so I
8  agree that it's hypodense, whatever, because I've
9  seen other hypodensities and maybe we're talking
10  about the same one.  I have no idea.  I agree that
11  there's something hypodense in there.  I agree that
12  there's nothing that you can definitively
13  characterize on that scan.  And I do believe that at
14  some point, with the ability to apply likelihoods,
15  that it could be a benign or malignant etiology.  And
16  that's all -- that's all he's given you here.  He
17  hasn't given you percentages, likelihoods or
18  anything.  He's just saying yep, you know, could be.
19  I don't know what it is.
20    Q.    I want to just break down some of that.
21    A.    Sure.
22    Q.    So you agree that there were hypodense
23  areas on Mr. Roberts's liver on this CT examine from
24  April 19th, 2016.  Right?
25    A.    Yes.

Page 161

1    Q.    Okay.  You agree that -- well, let me
2  scratch that.
3        Were you able to identify the particular
4  8 millimeter focal hypodensity that this radiologist
5  saw?
6        MR. VAUGHN:  Object to form.
7        THE WITNESS:  I believe I identified
8  something similar and, if you probably asked him, it
9  could likely be the same thing.
10        MR. NOLAN:  Okay.
11
12  BY MR. NOLAN:
13    Q.    But sitting here today, you're not sure
14  whether or not you observed this specific
15  8 millimeter area that he's talking about.  Fair?
16        MR. VAUGHN:  Object to form.  Asked and
17  answered.
18        THE WITNESS:  Correct.  We may not come
19  down to the, you know, millimeter on it, so.
20
21  BY MR. NOLAN:
22    Q.    And you agree that, based on the scan,
23  it's impossible to characterize whether or not the
24  hypodensities you viewed are malignant or benign.
25  True?

41 (Pages 158 - 161)

Veritext Legal Solutions

800-227-8440                                          973-410-4040

Page 162

1    MR. VAUGHN: Object to form.
2    THE WITNESS: Definitely, I agree.
3    MR. NOLAN: Okay.
4
5  BY MR. NOLAN:
6    Q.    And so, then this radiologist says:
7  "The relationship of this nodule to the findings on
8  comparison ultrasound is unknown."
9         How did you interpret that?
10   A.    I interpreted it similarly with my
11 experience and, you know, equally, Dr. Chernyak's
12 experience. We could not resolve the ultrasound
13 findings with the areas -- the observations that we
14 made on the same CT study in comparison to the same
15 ultrasound. And a lot of it has to do with the size
16 isn't even close. When you look at 1.8 or even 2
17 versus, you know, less than a centimeter.
18        And then, again, you know, this --
19 this -- I don't know. I don't remember the name of
20 this radiologist. It wasn't the same one who had the
21 benefit of supervising the ultrasound. They were
22 stuck in the same position where they're relying on
23 some very generic labeling as to where this -- where
24 these -- where these areas are anatomically. So,
25 yeah, he couldn't resolve it. He may have done it

Page 163

1  based on size. He may have -- he may have done it
2  based on, you know, the imaging that was available.
3  He couldn't figure out where one was versus the
4  other. But, you know, I honestly agree with him.
5    Q.    And just to sort of put it in my own
6  words. Basically, what you're saying and what he's
7  saying is the 2.0 centimeter and the 1.8 centimeter
8  spots that were observed on the ultrasound are not
9  observed on the CT?
10        MR. VAUGHN: Object to form.
11        THE WITNESS: Correct. I did not
12 observe them.
13        MR. NOLAN: Okay.
14
15 BY MR. NOLAN:
16   Q.    And then, the radiologist says: "Follow
17 up liver protocol CT four to six months on date of
18 study would be useful for further characterization."
19        Did I read that right?
20   A.    Yes.
21   Q.    Would you have recommended a follow up
22 CT in four to six months based on what you saw on the
23 CT?
24   A.    Yes, I think -- I think the appropriate
25 follow up is actually a little bit of a wider window,

Page 164

1  three to six months, but I think that's appropriate.
2    Q.    Okay. Now --
3    A.    But it's also important to point out,
4  you know, again, you and I touched upon this. Show
5  me the reason for the exam or the clinical history on
6  this document. Where it says other -- so he
7  starts -- so, to my recollection, going back to the
8  ultrasound, and I don't know if other specified
9  diseases of the liver is pertinent to the ultrasound
10 or if it's pertinent to something about Mr. Roberts.
11 But the same history is following epigastric pain.
12 Right? So this goes back to what we discussed before
13 where, you know, someone with epigastric pain, what
14 is the pretest probability of it being, you know,
15 HCC? Without a de facto background liver injury,
16 liver disease, you don't know. So just to cover the
17 base that, you know, some might say that a three to
18 six was appropriate. Some might say that this other
19 qualifier here of, you know, specified diseases of
20 the liver, depending on its origin, may change that
21 window. But I think three to six is absolutely fine.
22 Again, I want to make sure we understand we're going
23 to do all that in light of what we do know about the
24 individual from the radiology order, which is that he
25 started with epigastric pain.

Page 165

1    Q.    And we know that his liver was
2  cirrhotic. Right?
3         MR. VAUGHN: Object to form. Misstates.
4         THE WITNESS: Based on the CT?
5         MR. NOLAN: Yes.
6         THE WITNESS: Yes.
7
8  BY MR. NOLAN:
9    Q.    And so, because his liver was cirrhotic,
10 he's at higher risk for HCC. Agreed?
11        MR. VAUGHN: Object to form. Scope.
12        THE WITNESS: He has an increased risk,
13 yes.
14
15 BY MR. NOLAN:
16   Q.    And so, because he has an increased risk
17 of developing HCC, surveillance of the spots noticed
18 on his liver is prudent?
19        MR. VAUGHN: Object to form.
20        THE WITNESS: Yes.
21
22 BY MR. NOLAN:
23   Q.    All right. And let's look at your
24 report, Page 2, which is Exhibit 4. And so, then
25 there's two paragraphs on Page 2 where you discuss

42 (Pages 162 - 165)

Page 290

1    THE WITNESS: I can neither rule in nor
2  rule out if this lesion progressed.
3    MR. NOLAN: Okay. Those are all the
4  questions that I have for now. I will pass the
5  witness.
6    MR. VAUGHN: Can we break for a few
7  minutes?
8    MR. NOLAN: Sure.
9    VERITEXT CONCIERGE: Waiting for Howard
10  to get us off the record.
11    THE VIDEOGRAPHER: Please standby. Time
12  is 5:39. We're off the record.
13
14    (Whereupon, a brief recess was taken off
15  the record.)
16
17    THE VIDEOGRAPHER: The time is 5:51, we
18  are on the record.
19
20  CROSS-EXAMINATION
21  BY MR. VAUGHN:
22    Q.    Doctor, do you -- strike that. Sorry.
23    Doctor, do you diagnose cirrhosis in
24  practice?
25    A.    I do not. Cirrhosis is a clinical

Page 291

1  diagnosis. What I'm able to provide are some of the
2  morphologic manifestations that are part of cirrhosis
3  on imaging examinations. And clinicians will use
4  those, among a variety of other factors, to arrive at
5  their clinical diagnosis.
6    Q.    Do you know if Mr. Roberts's treating
7  physician actually communicated a recommendation to
8  Mr. Roberts to follow up for additional imaging after
9  the 2016 CT?
10    A.    I do not, no.
11    Q.    In your opinion, was there any breach in
12  the standard of care regarding Mr. Roberts's imaging
13  in 2016?
14    A.    I do not believe that there was a breach
15  of the standard of care.
16    Q.    You testified that there was a typo in
17  your report noting that a mass in the MRI in 2018 was
18  in Section 1 or 8, but you meant to say 1 or 6. Is
19  that correct?
20    A.    That is correct.
21    Q.    And does that change your opinion in any
22  way?
23    A.    No, it does not. Because -- because the
24  findings are independent of the -- the exact
25  location.

Page 292

1    Q.    And were the findings in the 2016 CT
2  more consistent with a benign or malignant lesion?
3    A.    It would be my opinion that the imaging
4  characteristics of the various findings that I've
5  discussed with respect to the 2016 CT were more
6  likely to represent benign over malignant lesions.
7    Q.    And did you give all the opinions in
8  your expert report to a reasonable degree of medical
9  certainty?
10    A.    Based on the information I have
11  available to me at this time, yes.
12    MR. VAUGHN: I have no further
13  questions.
14    MR. NOLAN: I think I just have a
15  couple, Dr. Mele.
16
17  REDIRECT EXAMINATION
18  BY MR. NOLAN:
19    Q.    So you mentioned just now that you don't
20  diagnose cirrhosis. Right?
21    A.    Correct.
22    Q.    You look at the morphological
23  characteristics of the liver and then make a
24  recommendation to the clinician who is dealing with
25  the patient. Right?

Page 293

1    A.    I don't make a recommendation about
2  cirrhosis. What I -- what I would say is there is a
3  series of imaging findings that are compatible with
4  an underlying diagnosis of cirrhosis.
5    Q.    For Mr. Roberts in 2016?
6    MR. VAUGHN: Object to form.
7    THE WITNESS: You asked me if -- if
8  that's what I said about the scan in 2016, then the
9  answer is yes.
10
11  BY MR. NOLAN:
12    Q.    Okay. And you said that it's your
13  opinion that there was not a breach of the standard
14  of care. I don't really want to get into that too
15  much. But you have not reviewed all of Mr. Roberts's
16  medical records. True?
17    A.    True. And the question I -- I maybe
18  didn't answer the question with the level of
19  detailing required, but my opinions are confined
20  solely to the care provided under the umbrella of
21  diagnostic radiology.
22    Q.    Understood. And so you're not opining
23  on whether or not the clinician treating Dr. Roberts
24  breached the standard of care, one way or the other,
25  by -- sorry. Let me just start that over.

74 (Pages 290 - 293)

Veritext Legal Solutions

800-227-8440                                                        973-410-4040

Page 294

1       Your -- your opinion as to whether or
2   not the standard of care was breached is limited to
3   the diagnostic radiology findings.  True?
4       A.   True.
5       Q.   Okay.  And because you haven't read all
6   of Mr. Roberts's medical reports -- or medical
7   records, you don't know if the doctor articulated to
8   Mr. Roberts that he should return for a follow-up CT
9   in 2016.  True?
10       MR. VAUGHN:  Object to form.
11       THE WITNESS:  I -- I do not know
12   anything beyond what's available to me on the imaging
13   examinations and their corresponding radiology
14   reports.
15
16   BY MR. NOLAN:
17       Q.   And as it relates to the lesions that
18   were observed in 2016, your opinion is that they're
19   more likely benign than malignant.  True?
20       A.   I would refer to them as observations at
21   that point.  And, yes, they were more likely to be
22   benign findings than malignant findings, based on
23   their imaging characteristics.
24       Q.   And is it also true that an LR-3 is more
25   likely to be benign than malignant under the

Page 295

1   LI-RAD --
2       MR. VAUGHN:  Object to form.
3   Foundation.
4       THE WITNESS:  That is true.  I agree
5   with that statement.
6       MR. NOLAN:  Okay.  Those are all the
7   questions that I have for now.
8       THE VIDEOGRAPHER:  Counsel, if there are
9   no further questions, I will conclude the video
10   recording for this proceeding.
11       MR. VAUGHN:  We're done.
12       THE VIDEOGRAPHER:  Here ends media unit
13   number six.  This concludes the video-recorded
14   virtual remote deposition of Dr. Christopher Mele,
15   M.D. taken by the parties on Thursday, May 8th, 2025.
16   The time is 5:57 p.m. Eastern Daylight Time and we
17   are going off the record.
18
19
20       (Whereupon, the deposition was concluded
21   at 5:57 p.m.)
22
23
24
25

Page 296

1       CERTIFICATE OF DEPONENT
2
3       I have read the foregoing transcript of
4   my deposition and except for any corrections or
5   changes noted on the errata sheet, I hereby
6   subscribe to the transcript as an accurate record
7   of the statements made by me.
8
9
                _____
10              CHRISTOPHER M. MELE, M.D.
11
12       SUBSCRIBED AND SWORN before and to me
13   this ____ day of _____, 20___.
14
15
                _____
16
17              NOTARY PUBLIC
18
19
20   My Commission expires:
21
22
23
24
25

Page 297

1       CERTIFICATE
2
3
4       I, JOMANNA DEROSA, a Certified Court
5   Reporter and Notary Public of the State of New
6   Jersey, do hereby certify that the foregoing is a
7   true and accurate transcript of the testimony as
8   taken stenographically and digitally at the time,
9   place and on the date hereinbefore set forth, to the
10      best of my ability.
11
12
13       I DO FURTHER CERTIFY that I am neither a
14   relative nor employee nor attorney nor Counsel of any
15   of the parties to this action, and that I am neither
16   a relative nor employee of such attorney or Counsel,
17      and that I am not financially interested in the
18          action.
19
20
21
22   JOMANNA DEROSA, C.C.R.
           License No. 30XI00188500
23         Notary Public of the
           State of New Jersey
24
25

75 (Pages 294 - 297)

```
                                                    Page 298
 1          ERRATA SHEET
            VERITEXT/NEW YORK REPORTING, LLC
 2   CASE NAME: In Re: Valsartan, Losartan, Et Al v. Zhejiang
     Huahai Pharmaceutical Co., Ltd., Et Al. (Gaston Roberts)
 3   DATE OF DEPOSITION: 5/8/2025
     WITNESSES' NAME: Christopher  M Mele , MD
 4
 5    PAGE  LINE (S)     CHANGE         REASON
     ___|____|_____|_____
 6
     ___|____|_____|_____
 7
     ___|____|_____|_____
 8
     ___|____|_____|_____
 9
     ___|____|_____|_____
10
     ___|____|_____|_____
11
     ___|____|_____|_____
12
     ___|____|_____|_____
13
     ___|____|_____|_____
14
     ___|____|_____|_____
15
     ___|____|_____|_____
16
     ___|____|_____|_____
17
     ___|____|_____|_____
18
     ___|____|_____|_____
19
     ___|____|_____|_____
20
21
              _____
              Christopher  M Mele , MD
22   SUBSCRIBED AND SWORN TO BEFORE ME
     THIS ____ DAY OF _____, 20__.
23
24
     _____    _____
25   (NOTARY PUBLIC)        MY COMMISSION EXPIRES:
```

Veritext Legal Solutions