**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | HON. RENÉE M. BUMB NO. 19-MD-2875 |
| | |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
VALSARTAN ECONOMIC LOSS CLASS ACTION SETTLEMENT
WITH THE HETERO DEFENDANTS, CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS, AND TO DIRECT CLASS
NOTICE**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iii

I.      INTRODUCTION .................................................................................1

II.     FACTUAL BACKGROUND .................................................................3

        A.      Overview of Plaintiffs' Counsel's Investigation ............................3

        B.      History of the Litigation ................................................................5

        C.      The Parties' Settlement Negotiations .............................................8

        D.      The Settlement Class ......................................................................9

        E.      Relief Benefiting the Class in the Proposed Settlement ...............10

        F.      Attorneys' Fees, Expenses and Service Awards ...........................12

        G.      Notice to Settlement Class Members ............................................12

        H.      Release of Liability .......................................................................15

III.    ARGUMENT .......................................................................................15

        A.      The Settlement Should Be Preliminarily Approved .....................18

        B.      The *Girsh* Factors Support Preliminary Approval .......................19

        C.      Certification of the Proposed Settlement Class in Appropriate .....22

                1.      Numerosity Under Rule 23(a)(1) .........................................23

                2.      Commonality Under Rule 23(a)(2) ......................................24

                3.      Typicality Under Rule 23(2)(3) ...........................................25

                4.      Adequacy Under Rule 23(a)(4) ............................................26

5.    The Requirements of Rule 23(b)(3) Are Met ......................27

D.    The Court Should Approve the Notice Plan ..................................29

E.    The Final Approval Hearing Should Be Scheduled.......................30

IV.    CONCLUSION ........................................................................31

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)..................................................................22,27

*Augustin v. Jablonsky,*
    461 F.3d 219 (2d Cir. 2006) .........................................................28

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) .............................................................25

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.,*
    867 F.3d 434 (3d Cir. 2017) .........................................................13

*In re Corrugated Container Antitrust Litig.,*
    80 F.R.D. 244 (S.D. Tex. 1978) ...................................................28

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-md-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ............29

*Ehrheart v. Verizon Wireless,*
    609 F.3d 590 (3d Cir. 2010) .........................................................16

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ........................................................29

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) ..................................................*passim*

*In re GMC Truck Fuel Tank Prods. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ......................................................20,23

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,*
    525 F. App'x 94 (3d Cir. 2013) ....................................................26

*Grimes v. Vitalink Commc'ns Corp.,*
    17 F.3d 1553 (3d Cir. 1994) .........................................................15

*Hall v. AT&T Mobility LLC*,
　　No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010)..............................17

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) ....................................................................22,23

*Hassine v. Jeffres*,
　　846 F.2d 169 (3d Cir. 1988) ...........................................................................26

*Henderson v. Volvo Cars of N. Amer., LLC*,
　　Civil Action No. 09–4146, 2013 WL 1192479 (D.N.J. Mar. 22, 2013) ..28,30

*Huffman v. Prudential Ins. Co. of Am.*,
　　2:10-cv- 05135, 2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) ........................19

*Hunter v. M-B Cos., Inc.*,
　　No. 19-CV-04838, 2020 WL 4059898 (E.D. Pa. July 20, 2020)..................16

*In re Ins. Brokerage Antitrust Litig.*,
　　297 F.R.D. 136 (D.N.J. 2013) ....................................................................16,25

*McCoy v. Health Net, Inc.*,
　　569 F. Supp. 2d 448 (D.N.J. 2008)..................................................................28

*Mehling v. New York Life Ins.*,
　　246 F.R.D. 467 (E.D. Pa. 2007) ......................................................................16

*In re Nat'l Football League Players' Concussion Injury Litig.*,
　　301 F.R.D. 191 (E.D. Pa. 2014) ......................................................................16

*In re Nat'l Football League Players Concussion Injury Litig.*,
　　775 F.3d 570 (3d Cir. 2014) ............................................................................30

*In re NFL Players Concussion Injury Litig.*,
　　821 F.3d 410 (3d Cir. 2016) ............................................................................22

*In re Prudential Ins. Co. Sales Litig.*,
　　148 F.3d 283 (3d Cir. 1998) ............................................................................24

*Reyes v. Netdeposit, LLC*,
    802 F.3d 359 (3d Cir. 2015) ..........................................................................24

*Ritti v. U-Haul Int'l., Inc.*,
    No. 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ..........................26

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ..........................................................................24

*Rudel Corp v. Heartland Payment Sys., Inc.*,
    No. 16-cv-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017)............................16

*Shapiro v. All. MMA, Inc.*,
    No. 17- 2583(RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018).......18

*In re: Shop-Vac Mktg. & Sales Practices Litig.*,
    No. 4:12-MD-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) ..............20

*Smith v. Merck & Co.*,
    Civil Action No. 13-2970, 2019 WL 3281609 (July 19, 2019) ....................19

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) .....................................................................23,24

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..................................................................*passim*

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004)..............................................................................28

*Udeen v. Subaru of Am., Inc.*,
    No. 18 17334(RBK/JS), 2019 WL 4894568 (D.N.J. Oct. 4, 2019) .......*passim*

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
    No. 19-2875 (RBK/SAK), 2023 WL 1818922 (D.N.J. Feb. 8, 2023) ...*passim*

*In re ViroPharma Inc. Sec. Litig.*,
    No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .............................17

*Zimmerman v. Zwicker & Assocs., P.C.*,
     No. CIV. 09-3905 RMB JS, 2011 WL 65912 (D.N.J. Jan. 10, 2011)...........18

## **Rules/Other**

Federal Rule of Civil Procedure 23 .................................................................*passim*

Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth (2004) .................................29,30

## I.    <u>INTRODUCTION</u>

Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Insurance Trust ("MADA") ("TPP Plaintiffs") and Plaintiffs Leland Gildner, Veronica Longwell, Peter O'Brien, Mark Hays, and James Childs ("Consumer Plaintiffs"), (collectively "Plaintiffs" or "Representative Plaintiffs"), individually and as representatives of the Hetero Valsartan Economic Loss Settlement Class (as defined below), (all together referenced as the "Settlement Class Members") brought this class action against Defendants Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively, "Hetero" or "Hetero Defendants" and also defined herein to include their predecessors, successors, subsidiaries and affiliates and each of their past, present and future direct or indirect parent companies, subsidiaries, divisions and affiliates, joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers), seeking the recovery of economic loss damages arising from the purchase of Hetero Valsartan contaminated with nitrosamines including NDMA. The Court certified the class. (Dkt. Nos. 2261, 2262). Hetero denies Plaintiffs' allegations and all alleged wrongdoing.

Plaintiffs have reached a settlement with the Hetero Defendants that provides significant remedies to Settlement Class Members[1] without the delay, uncertainty, and risks associated with continued litigation, trial and the appellate process. With the assistance of the Hon. Joel Schneider, U.S.M.J. (ret.) via mediation, the parties negotiated and executed a Settlement Agreement ("Settlement") that provides Class Members with a range of benefits, including reimbursement for the amounts paid for the at-issue Hetero Valsartan, and payment of the costs of notice and administration of this class action Settlement. Because the Settlement provides substantial benefits to Settlement Class Members, Plaintiffs respectfully request the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, conditionally certifying the class, and to direct notice under Federal Rule of Civil Procedure 23(e). The parties also request a preliminary approval hearing be set on or before July 31, 2025.

Granting this motion will allow the parties to proceed with the notice plan provided for in conjunction with the Settlement and proceed to a fairness hearing, final approval, if appropriate, and settlement claims administration. For all the reasons set forth below, the parties' Settlement should be preliminarily approved.

---

[1] Unless otherwise indicated, capitalized terms have the meaning defined in the Settlement Agreement (cited as "SA") attached to the Joint Declaration for Hetero Economic Loss Preliminary Approval Motion ("Joint Decl.") as Exhibit 1.

## II.     **FACTUAL BACKGROUND**

### A.     **Overview of Plaintiffs' Counsel's Investigation**

Class Counsel and Plaintiffs' MDL leadership Counsel (together, "Plaintiffs' Counsel") conducted an extensive investigation into the core issues, including but not limited to the contamination of Hetero's Valsartan API and finished dose with probable human carcinogen nitrosamine impurities, including N-nitrosodimethylamine ("NDMA"), the scientific literature regarding the genotoxicity and probable human carcinogenicity of NDMA, the relevant regulatory documents and filings including the applicable Drug Master File(s) and Abbreviated New Drug Application Files, communications with the FDA and foreign regulatory agencies, the details of the United States market recall of the at-issue valsartan, the chemical reactions and mechanisms involved in the manufacturing process at issue, the applicable United States regulatory standards, including for example FDA and ICH guidance, the U.S. Pharmacopeia and Orange Book, as well as the controlling regulations, the application of current good manufacturing practices ("cGMP") in the manufacture of the at-issue Hetero Valsartan API and finished dose, the scientific knowledge and literature at issue, the health and safety risks posed by the NDMA impurities, the distribution and sale channels of the Valsartan down through the supply chain, databases and spreadsheets quantifying pills sales and the implementation of the recall of the pills, and analysis of pricing data.

The investigation and litigation included but was not limited to the production, review, and analysis of more than one million pages of documents produced by the Hetero Defendants, including but not limited to regulatory filings and communications, technical documents, scientific literature and analyses, internal corporate documents, communications with customers, production and distribution databases, root cause analyses, and distribution and sales data. Plaintiffs served extensive document discovery requests on Hetero (*see e.g.,* Dkt. No. 328), and Plaintiffs' counsel identified document custodians and deposed at least nine (9) corporate representatives primarily based in India.

Plaintiffs' counsel's work likewise included: researching causes of action and other legal issues; opposing motions to dismiss; consulting with and retaining numerous experts of varying specialties and conducting expert discovery; *Daubert* briefing and argument; class certification briefing and related expert discovery; and numerous conferences and arguments overseen by the Court. *See* Joint Decl., ¶ 5).

The Representative Plaintiffs are individuals and third-party payors who paid for the purchase of Hetero Valsartan, known as Process III Valsartan. Plaintiffs contend that the at-issue Valsartan was economically worthless due to the adulteration of Hetero's at-issue Valsartan based on violations of cGMPs in the manufacturing process, resulting in contamination with NDMA, and sought economic damages for consumers and TPPs including but not limited to the full

4

amounts paid for the at-issue Hetero Valsartan based on its economic worthlessness. (*See generally* Dkt. No. 1708 (Third Amended Consolidated Economic Loss Class Action Complaint)).

Plaintiffs asserted claims for breaches of express and implied warranties, fraud, negligent misrepresentation, violations of various state consumer protection laws, unjust enrichment, negligence and negligence *per se*. (*Id.* at ¶¶ 619-818).

Hetero denied and continues to deny Plaintiffs' asserted claims.

Plaintiffs also prepared an extensive and detailed motion for class certification that sought class certification against Defendants including Hetero. As part of that effort, Plaintiffs' counsel tendered expert reports on liability, damages, and other class certification related issues, and submitted hundreds of pages of briefing in support of the Motion, along with two hundred (200) exhibits that detailed Defendants' conduct and sought to establish the Rule 23 criteria including as to Hetero. (Dkt. Nos. 1747, 1749, 2058, 2059). The Court granted Plaintiffs' Motion for Class Certification including as to Hetero by Order dated February 8, 2023. (Dkt. Nos. 2261, 2262).

## B.    History of the Litigation

The litigation against Hetero commenced on or about November 7, 2018, with the filing of the first class action complaint seeking in part economic loss damages from Hetero attributable to its sale of Hetero Process III Valsartan. *See Longwell et*

*al. v. Camber Pharm., Inc. et al.*, No. 1:2018cv12339 (D. Mass. filed Nov. 7, 2018).

This and other cases, collectively including consumer and TPP cases, were
coordinated in an MDL assigned by the JPML to the Hon. Robert Kugler, U.S.D.J.,
of the United States District Court for the District of Jersey. The current operative
pleading in this proceeding is the Third Amended Consolidated Economic Loss
Class Action Complaint. (Dkt. No. 1708). In early 2024, Judge Kugler announced
his retirement, and the MDL was re-assigned by the JPML to the Hon. Renée Marie
Bumb, U.S.D.J., Chief Judge of the United States District Court for the District of
New Jersey.

After the litigation was consolidated into an MDL, the Hetero Defendants
joined their co-Defendants in the filing of an extensive motion to dismiss all claims
including the claims for economic loss damages from Hetero attributable to its sale
of Hetero Process III Valsartan. Plaintiffs prepared extensive responsive briefing,
and largely prevailed in opposing the motion to dismiss. (*See* Dkt. Nos. 675, 728,
775, 818, 838, 1019).

The MDL litigation moved forward, and the Parties engaged in extensive
discovery exchanges. Plaintiffs served over 100 document requests on Hetero, and
received the production of extensive discovery including ESI such as emails, and
paper documents, regulatory filings and communications, internal corporate
documents, regulatory documents and standards, testing documents, documents

relating to the recalls, root cause analyses, and sales and pricing data. (Dkt. No. 328).

Plaintiffs evaluated Hetero privilege logs and similarly argued numerous discovery disputes and motions at regularly scheduled discovery hearings before Magistrate Judge Schneider and Special Master Judge Vanaskie, who was appointed following Judge Schneider's retirement from the bench.

Plaintiffs took nine (9) Rule 30(b)(6) depositions of Hetero corporate representatives and defended depositions of the five (5) consumer and two (2) TPP Representative Plaintiffs as well as participating in related depositions of third-party assignors and a third-party administrator. These depositions, in particular the depositions of the corporate witnesses, required extensive preparation and were conducted via Zoom as the witnesses were based for the most part in India. Plaintiffs also submitted extensive expert reports regarding general causation, defended and took general causation expert depositions, prepared and submitted related *Daubert* briefing, and presented argument at a *Daubert* hearing.

On November 10, 2021, the Consumer Plaintiffs and Consumer Class Counsel filed a 110-page motion for class certification that included two hundred (200) exhibits including expert reports in support of class certification on points relating to liability and damages issues, ascertainability, and other Rule 23 criteria. The TPP Plaintiffs and TPP Class Counsel submitted an additional thirty (30) pages of briefing. (Dkt. Nos. 1747, 1749). Consumer Plaintiffs and Consumer Class Counsel

also filed a forty (40) page Reply on May 10, 2022, along with seventy-eight (78) additional exhibits and supplemental expert reports, and TPP Class Counsel submitted an additional twenty-eight (28) pages of Reply briefing. (Dkt. Nos. 2058, 2059). Throughout the class certification briefing process, Plaintiffs defended their class certification experts' depositions and took over a dozen depositions of the experts tendered both jointly and individually by Defendants. Finally, after the Court granted class certification, Plaintiffs briefed an extensive opposition to the Rule 23(f) petition submitted by Defendants, which the Third Circuit ultimately denied by Order dated May 1, 2023. *See Valsartan Losartan and Irbesartan Prods.*, No. 23-8005, Dkt. No. 60 (3d Cir. May 1 2023).  (*See* Joint Decl. at ¶ 9).

## C.    The Parties' Settlement Negotiations

Plaintiffs' Counsel engaged in lengthy, arms-length negotiations with Hetero to arrive at this settlement. The negotiations occurred both directly and via a mediation process presided over by the Hon. Joel Schneider (retired), and Judge Kugler, until reaching agreement on the material terms on or about June 5, 2023, and then during ongoing negotiations to clarify certain settlement terms, culminating in the signing of a Term Sheet on January 25, 2024. Since then, Plaintiffs' Counsel and Hetero's Counsel have worked to finalize the Settlement Agreement and to prepare this Motion for Preliminary Approval and accompanying documents. These negotiations were prolonged and difficult, and the Parties left no stone unturned in

evaluating and working to agree on all of the material terms. (*See* Joint Decl. at ¶ 10). Consumer Class Counsel and TPP Class Counsel attest and affirm their strong belief that this settlement is fair, adequate, and reasonable, and should be given both preliminary and final approval. (*Id.*, at ¶ 11).

### D.    The Settlement Class

The Hetero Valsartan Economic Loss Settlement Class is defined as follows:

> All individuals and third-party payors in the United States and its territories and possessions who paid any amount of money for retail purchases of valsartan finished drug formulations manufactured utilizing Hetero Process III Valsartan API (the "Process III Valsartan") from May 1, 2018 to July 31, 2018.

Persons excluded from the Class are: (a) Hetero Defendants and affiliated entities and their employees, officers, directors, and agents; (b) Hetero Defendants' assigns, and successors; (c) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) Pharmacy Benefit Managers ("PBMs"); (e) Any judge or magistrate presiding over this action, and members of their families; (f) Plaintiffs' counsel of record; (g) Any personal injury plaintiff or claimant; and, (h) All persons who properly execute and file a timely request for exclusion from any Court-approved class. If approved, the Settlement will provide substantial benefits to the submitted Settlement Class. This Class does not encompass any claims for medical monitoring or personal injury related to purchase or use of Hetero Process III Valsartan, and does not affect those

claims in any way, nor does it encompass or affect any economic loss claims with regard to Hetero Losartan, which claims are expressly excluded. (*Id*. at ¶ 12).

### E.    Relief Benefiting the Class in the Proposed Settlement

The Hetero Defendants have agreed to pay $11,365,489.80 to the Settlement Class ("Settlement Fund"), which amount was established based on the total quantity of Process III Valsartan pills sold in the United States at the retail level, 5,412,138 pills (the number of Process III Valsartan pills shipped by Camber to any United States retailer or entity for the purpose of facilitating retail sales in the United States, less any Process III Valsartan pills that were confirmed to have been returned to Hetero and not sold to consumers at any time). (SA at p. 9). The Parties engaged in confirmatory discovery during the negotiations, which was also informed and supported by Hetero's internal data and pharmacy data provided by an independent service.  The Settlement Fund available for distribution to the Settlement Class after deduction of any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court, shall be allocated as follows:

For Consumers:  Consumer members of the Settlement Class shall submit claim forms documenting their purchases of Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court.  The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims.  For each valid claim, a

Consumer member of the class shall receive from the Fund a distribution of no more than $40 for each 30-day supply purchased and no more than a total of $120 per Consumer. However, a Consumer member of the class who can sufficiently document through receipts or pharmacy records, a claim in excess of $120 paid in full by that Consumer, may receive a payment in excess of $120. Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund. If the amount of payments to consumers would exceed this cap, the total consumer award shall be reduced on a pro rata basis based on the days' supply purchased by each consumer so that it will not exceed 40% of the Fund.

For Third Party Payors: Third Party Payor members (including assignees of TPPs) of the Settlement Class shall submit claim forms documenting their (or their assignors') payments for Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court. The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims. After payment of the Consumer claims as provided above, the remainder of the Fund shall be distributed to each valid TPP member of the class (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments.

Class members are limited to one claim per Class Member.

11

The Hetero Defendants will also be solely responsible to fund all costs of settlement notice and administration, which shall be paid separate from and in addition to the Settlement Fund. (*See* Joint Decl. at ¶ 14). The current estimated cost of settlement notice and administration attributable to the Hetero Defendants is $519,972. (*See* Joint Decl. at ¶ 15).

### F. Attorneys' Fees, Expenses and Service Awards

Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the fund before deducting costs and expenses, plus reasonable costs and expenses attributable to the Hetero Valsartan economic loss litigation. Plaintiffs will also seek approval of $5000 per Consumer class representative for service awards and $15,000 for each of the two TPP class representatives, MSP and MADA for their participation in information gathering, discovery and depositions on behalf of the class. Each party shall have the right of appeal to the extent the award is inconsistent with this Agreement. Attorneys' Fees and Expenses shall be separate from, and in addition to the Representative Plaintiffs' Service Awards. (*See* Joint Decl. at ¶ 16-17).

### G. Notice to Settlement Class Members

The Settlement Agreement contemplates a comprehensive notice plan, to be paid for by the Hetero Defendants and overseen by the experienced Settlement Administrator: EAG Gulf Coast, LLC ("EAG"), who also administered the previous

class notice given when the litigation class was certified.[2] (*See* generally Declaration of Brandon Schwartz, including all proposed forms of class notice, Exhibit 2 to Joint Decl.). Class Counsel has the right to monitor and participate in the Notice and Administration process to ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement. (*See* Joint Decl. at ¶ 18). Hetero is not responsible for fees and expenses incurred by Class Counsel to the extent they participate in or oversee the Settlement Administrator.

Settlement Class Members will be notified of the Settlement by email to reasonably identifiable Settlement Class Members with valid email addresses, by text to the current or last known cellular phone numbers of all reasonably identifiable Settlement Class Members with a valid mobile number, and by first class mail to reasonably identifiable Class Members without a valid email address or mobile number, but with a valid mailing address. This will provide direct notice through various methods, which "allows for notice directly to potential class members and limits the universe of potential claimants." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Due to the unavailability of records for certain class members, individual notice will be supplemented by publication notice, including but not limited to, for example, online advertising using Google

---

[2] The Court has named EAG as the Settlement Administrator and the Fund Administrator and has appointed Western Alliance Bank as the Custodian of the Fund (Dkt. No. 2978).

Display Network, Programmatic platforms, Facebook and Instagram, AARP, and YouTube, search advertising using Google Ads, industry publications such as America's Benefit Specialist, NABIP, etc., and/or PR Newswire. (*See* Joint Decl. at ¶ 19).

The Settlement Administrator will maintain a dedicated settlement website that will include the Claim Form, Opt-out Form, Full Notice, the Settlement Agreement, Court Orders regarding this Settlement, and other relevant Court documents, including Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards. The Hetero Defendants will pay the costs of Notice and Settlement Administration, and will timely provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (*See* Joint Decl. at ¶ 20).

Finally, the Settlement Agreement accounts for any Settlement Class Members who wish to object or exclude themselves from the settlement. Consistent with Rule 23(e)(5)(A), the Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Settlement Class Member, or certification, under penalty of perjury, that they have made a specific qualifying purchase or have made a good faith effort to obtain that information and in good faith believes that they are a part of the Settlement Class. (*See* Joint Decl. at ¶ 21).

## H.    Release of Liability

In exchange for the foregoing – and subject to approval by the Court – Plaintiffs and Class Members who do not timely exclude themselves will be bound by a release of all certified consumer and third-party payor class action claims for economic loss related to Hetero valsartan brought by Plaintiffs. ("the Released Claims"). *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994). No defendants other than the Hetero Defendants are parties to or addressed, impacted or released by this Agreement, and no other claims or actions are the subject of this Agreement. All claims for economic loss related to Hetero losartan, claims for medical monitoring related to Hetero valsartan and losartan (the subject of a separate agreement), and all claims for personal injury related to Hetero valsartan and losartan (the subject of separate agreements) are explicitly excluded from this Agreement and are not impacted or affected by this Agreement or included in the definition of the Action in any way.  (*See* Joint Decl. at ¶ 22).

## III.    <u>ARGUMENT</u>

The Court's review of a class action settlement is a two-step process consisting of preliminary approval and final approval determinations. *Udeen v. Subaru of Am., Inc.*, No. 18 17334(RBK/JS), 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019). At this preliminary approval stage, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other

15

obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig.* (*"In re NFL"*), 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citations omitted)). Under Rule 23, a settlement falls within the "'range of possible approval,' if there is a *conceivable basis* for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *In re NFL*, 301 F.R.D. at 198 (emphasis added) (citations omitted).

In addition, "a settlement agreement is entitled to a presumption of fairness when it resulted from arm's length negotiations between experienced counsel." *Hunter v. M-B Cos., Inc.*, No. 19-CV-04838, 2020 WL 4059898, at *3 (E.D. Pa. July 20, 2020); *see also Udeen*, 2019 WL 4894568, at *2 ("A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Rudel Corp v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017)). This presumption applies in furtherance of the public policy favoring settlement, *see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010), and "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013). Moreover, "the

16

participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (quoting *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)).

Not only are there no "obvious deficiencies" in the parties' Settlement Agreement in this case, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are easily satisfied here. Class Counsel firmly believe this Settlement is fair, adequate, and reasonable as each certify in the Joint Declaration. As discussed below, the Settlement provides a gross recovery approximating 68% of what Plaintiffs estimate to be the total available compensatory damages for the conduct covered by the Class, which is an outstanding result when accounting for litigation risk and challenges, and the substantial complexity, cost, and delay of ongoing litigation. The requirements for final approval should be satisfied, and Class Members will be provided with notice in a manner that satisfies the requirements of due process and Federal Rule of Civil Procedure 23(e). Therefore, Plaintiffs respectfully ask the Court to schedule a preliminary approval hearing, and enter the proposed order, which will: (i) grant preliminary approval of the proposed settlement; (ii) find that the Settlement Class is likely to be certified pursuant to Federal Rule of Civil Procedure 23(b)(3) and

conditionally certify the class; (iii) direct adequate notice be given consistent with the Notice Plan; and, (iv) schedule a final approval hearing to consider final approval of the Settlement.

### A.    The Settlement Should Be Preliminarily Approved

At the preliminary approval stage, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Shapiro v. All. MMA, Inc.*, No. 17- 2583(RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018). Unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Zimmerman v. Zwicker & Assocs., P.C.*, No. CIV. 09-3905 RMB JS, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011).

The settlement here is the result of extensive, arms'-length negotiations that extended over the course of approximately two years between experienced counsel, who believe the settlement is in the best interests of their respective clients. (*See* Joint Decl. ¶ 23). The settlement is well supported and will eliminate the uncertainties and risks to the Parties from proceeding further in the litigation. Thus, preliminary approval should be granted. Indeed, the class recovery represents a recoupment of approximately 68% of the potential compensatory damages, which is

an outstanding result when accounting for litigation risk, and the substantial complexities and expense of continued litigation.

## B.    The *Girsh* Factors Support Preliminary Approval

Although the foregoing analysis is sufficient for the Court to grant preliminary approval, a factor-by-factor analysis confirms this conclusion. *Udeen*, 2019 WL 4894568, at *3.[3] The following nine factors inform the analysis at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

---

[3] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this District have continued to apply the same legal standards to preliminary approval after the 2018 amendments. *See, e.g.*, *Udeen*, 2019 WL 4894568; *Smith v. Merck & Co.*, Civil Action No. 13-2970, 2019 WL 3281609 (July 19, 2019). Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv- 05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors continue to apply.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

The court evaluates a class settlement "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc). In conducting this analysis, the court also "guard[s] against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (noting that "a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). All of the *Girsh* factors that the Court can analyze now support preliminary approval.[4]

This Settlement affords significant relief to Class Members. The economic loss relief provided in the Settlement is intended to include reimbursement to the Settlement Class of a significant portion of the amounts paid for the at-issue valsartan, based on a count of the number of contaminated pills sold from May-July, 2018 (the only time period when the contaminated at-issue pills were sold).

---

[4] The reaction of the class cannot be evaluated until after notice is issued to the Class Members.

The complexity, expense, and likely duration of ongoing litigation also support preliminary approval because, without the Settlement, the parties would be engaged in continued contested motion practice, trial and an inevitable appeal lasting years. The claims advanced on behalf of the Settlement Class Members involve numerous complex factual, legal and technical issues. Continued litigation would be time consuming and expensive, with no certainty of a favorable outcome at trial. The Settlement Agreement secures substantial benefits for the Class with none of the delay, risk, and uncertainty of continued litigation.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. As noted above, the Parties have conducted extensive discovery for years, including production and review of over a million pages of documents, and 30(b)(6) depositions of nine (9) current and former employees of the Hetero Defendants spanning every subject relevant to proving the claims, as well as exchange of numerous expert reports, conduct of expert depositions, *Daubert* briefing and arguments, and significant additional extensive litigation work, as well as confirmatory discovery during over two years of arms-length negotiations.

The fourth, fifth, and sixth factors consider the risk of continued litigation.[5] If the parties had been unable to resolve this case through the Settlement, the litigation would likely have been even more protracted and costly. Trial and post-trial activity would last several more years. The benefits achieved in the settlement outweigh the risks of continued litigation.

As mentioned above, the eighth and ninth *Girsh* factors weigh strongly in favor of preliminary, and ultimately final, approval of this class settlement. The settlement amounts to a recoupment of approximately 68% of what Plaintiffs estimate to have been the total compensatory damages available, which is an outstanding result given the inherent uncertainties of litigation and the substantial complexities and potential delay in continued litigation.

The *Girsh* factors, therefore, support granting preliminary approval of the Settlement.

### C.    Certification of the Proposed Settlement Class Is Appropriate

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th

---

[5] Courts routinely find the seventh factor – the defendant's ability to withstand greater judgment – to be neutral, as here. That factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016).

Cir. 1998); *Udeen*, 2019 WL 4894568, at *4.[6] "For the Court to certify a class for settlement, the "[s]ettlement [c]lass[] must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995). Plaintiffs seek certification under Rule 23(b)(3), which provides for certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3). As discussed below, and as already recognized by this Court in its Order granting class certification (Dkt. No. 2261), these requirements are met and should be found to be met for purposes of settlement in this case.

### 1.    Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275

---

[6] The Hetero Defendants have agreed to certification of the Settlement Class for settlement purposes.

23

F.3d 220, 226-227 (3d Cir. 2001) (citation omitted). Numerosity is readily met here, as there are likely thousands of Settlement Class Members.  See *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *8, *21 (D.N.J. Feb. 8, 2023).

### 2.    Commonality Under Rule 23(a)(2).

The second prong of Rule 23(a) – commonality – requires "consideration of whether there are 'questions of law or fact common to the class." *Reyes v. Netdeposit, LLC*, 802 F.3d 359, 482 (3d Cir. 2015) (citing FED. R. CIV. P. 23(a)(2)). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id*. (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). This "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez*, 726 F.3d at 382). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and, most dramatically, when plaintiffs' claims may not have been legally viable." *Id.*; *see also In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) ("A finding of commonality does not require that all class members share identical claims, and factual differences among the claims . . . do not defeat certification").

In this case, there are common questions of law and fact, including the common source and cause of the creation of the NDMA in the manufacturing process and resulting "contamination of the ingested VCDs;" whether class members "paid in whole or in part for their or their insureds' VCD prescriptions, regardless of the variability in the prescription specifics;" "whether paid-for / reimbursed VCD prescriptions were contaminated according to FDA recalls;" and "whether, and to what extent, the VCDs, because of their alleged contamination, were worth less than the price paid for / reimbursed…class members." *In re Valsartan*, 2023 WL 1818922, at *8, *21. Commonality is, therefore, satisfied.

### 3.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3)'s typicality requirement is also met because the claims of all Class Members, including the Class Representatives, arise out of the same alleged conduct involving the Hetero Defendants' manufacture and sale of Valsartan, a generic hypertensive medicine allegedly contaminated with probable carcinogens. *In re Valsartan*, 2023 WL 1818922, at *10, *22; *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 149 (stating "low threshold"—"if the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established.'") (citation omitted).

### 4.    Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., 525 F. App'x 94, 100-01 (3d Cir. 2013). In assessing the adequacy of a proposed class representative, courts consider whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, No. 05-4182, 2006 WL 1117878, at *5 (E.D. Pa. Apr. 26, 2006) (quoting *Hassine v. Jeffres*, 846 F.2d 169, 179 (3d Cir. 1988)).

Here, all of the Class Representatives will fairly and adequately protect the interests of the class because "their legal interests are aligned with those of the unnamed class members." *In re Valsartan*, 2023 WL 1818922, at *11, *22. Each Plaintiff recognizes and accepts their responsibilities as a class representative, actively participated in the litigation of this case, and communicated regularly with their attorneys and Class Counsel about the proceedings. Moreover, MDL leadership counsel acting for common benefit, drew upon its extensive experience with similar class action and complex lawsuits to negotiate an excellent resolution for the Settlement Class. (*see*, Joint Decl. at ¶ 24). The Court has already found Class Counsel to be highly qualified, and other MDL leadership counsel who were

26

involved in the work underlying this settlement likewise possess similar credentials having been appointed to co-lead, PEC, or PSC leadership positions by the Court. (Dkt. Nos. 2261, 96 (CMO 6 appointing MDL leadership).) Based upon the substantial benefits offered through the settlement, Plaintiffs respectfully submit that the adequacy requirement is satisfied.

### 5.    The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. In making these assessments, the Court may consider that the class will be certified for settlement after previously certifying the class for trial and all other purposes, and that there is no further consideration of manageability for trial. *See Amchem*, 521 U.S. at 618 (citing FED. R. CIV. P. 23(b)(3)(D)).

The focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of fact and law that predominate over any questions that may affect individual Settlement Class Members. If the case were to proceed, the ultimate issues would center on the Hetero Defendants' common course of conduct – namely, whether they are liable for the manufacture and sale of contaminated Valsartan pills. These questions are shared among all Settlement Class Members and

subject to "generalized proof." *Henderson v. Volvo Cars of N. Amer., LLC*, Civil Action No. 09–4146, 2013 WL 1192479, at *4 (D.N.J. Mar. 22, 2013). Accordingly, predominance is satisfied.  *In re Valsartan*, 2023 WL 1818922, at *12-15, *23.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* FED. R. CIV. P. 23(b)(3). Superiority requires the Court to consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted); *see McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 457 (D.N.J. 2008). Because litigating the relatively small claims of the Class Members on an individual basis against the Hetero Defendants would not be economically feasible, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)). Moreover, the parties' settlement will relieve the "needless duplication of effort," burdens, and other inefficiencies that would result from repeated adjudication of the same issues. *Henderson*, 2013 WL 1192479, at *6 (citing *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252-53 (S.D. Tex. 1978)). The Settlement Agreement provides Class Members with prompt, certain, and adequate relief, and establishes clearly defined administrative procedures to ensure due process and

preservation of rights. This Court has already determined that the superiority prong has been met. *In re Valsartan*, 2023 WL 1818922, at \*16, \*24. Thus, a class action for settlement purposes, which requires even less scrutiny, is a superior means of resolving this controversy.

Accordingly, Plaintiffs request the Court certify the Settlement Class. *See* FED. R. CIV. P. 23(e)(1)(B).

### D.    The Court Should Approve the Notice Plan

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the settlement is approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004). Under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2009 WL 5184352, at \*12 (W.D. Ky. Dec. 22, 2009) (citing FED. R. CIV. P. 23(c)(2)(B)). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Id.* (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The proposed Notice  includes all legal requirements and explains the settlement concisely using clear, simple terms. *See* FED. R. CIV. P. 23(c)(2)(B). The

Notice Plan flows from and draws upon the Notice Plan previously approved by the Court for notice of the previous class certification ruling. The notice plan described above provides the best notice practicable under the circumstances. *See Henderson*, 2013 WL 1192479, at *12-13. An experienced vendor will oversee the process of compiling the contact information for Class Members and will then use this information to implement the Notice that will be sent via email, text and/or first-class mail to all Class Members. In addition, individual notice will be supplemented by publication notice, including but not limited to some or all of online advertising, search advertising, industry publications and PR Newswire. Notice of the settlement will also be available on a dedicated settlement website created and maintained by the Settlement Administrator.

Therefore, the Notice and Notice Plan should be approved.

### E.     A Final Approval Hearing Should Be Scheduled

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the settlement, consider Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives, consider any objections and exclusions, and determine whether to dismiss the settled claims with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.44 (2004); *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581-83 (3d Cir. 2014). Plaintiffs respectfully request that the final approval hearing be

scheduled for at least one hundred twenty (120) days from the date the preliminary approval order is entered.

## IV.    **CONCLUSION**

Plaintiffs respectfully request that this Court enter an Order: (1) scheduling a preliminary approval hearing; (2) preliminarily approving the settlement; (3) conditionally certifying the Class, approving the proposed Settlement Notice and Fund Administrator and Custodian Bank where the settlement funds will be held; (4) directing notice to Class Members consistent with the Notice Plan; and (5) scheduling a final approval hearing. A proposed order granting this relief is submitted with this memorandum.

Dated: June 27, 2025

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*/s/ Daniel Nigh*
Daniel Nigh
**Nigh Goldenberg Raso & Vaughn, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

/s/ Adam Slater
Adam Slater
**MAZIE, SLATER, KATZ &
FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

***MDL Plaintiffs' Co-Lead Counsel on
behalf of MDL Plaintiffs' Executive
Committee and MDL Plaintiffs'
Steering Committee***

/s/ Ruben Honik
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

/s/ John R. Davis
John R. Davis
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Phone: (512) 795-8686
jdavis@slackdavis.com

**Proposed Consumer Economic Loss Co-Lead Class Counsel**

/s/ Jorge Mestre
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite
1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

***Third-Party Payor Economic Loss
Co-Lead Class Counsel***

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

/s/ Gregory P. Hansel
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU
&
PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com