UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | HON. RENÉE M. BUMB<br>NO. 19-MD-2875 |
| | |

# JOINT DECLARATION FOR
# HETERO ECONOMIC LOSS PRELIMINARY APPROVAL MOTION

1. This declaration of Class Counsel and Plaintiff's MDL Leadership Counsel (together, "Plaintiffs' Counsel") is submitted in support of Plaintiffs' motion for preliminary approval of the proposed class action settlement of the Valsartan economic loss claims pending against the Hetero Defendants, based upon the Class Action Settlement Agreement and Release ("Agreement" or "Settlement Agreement") entered into between Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Insurance Trust ("MADA") ("TPP Plaintiffs") and Plaintiffs Leland Gildner, Veronica Longwell, Peter O'Brien, Mark Hays, and James Childs ("Consumer Plaintiffs"), (collectively "Plaintiffs" or "Representative Plaintiffs"), individually and as representatives of the Class (as defined in the Settlement Agreement), (all together referenced as the "Settlement Class Members"), and Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and

1

Camber Pharmaceuticals, Inc. (defined herein to include their predecessors, successors, subsidiaries and affiliates and each of their past, present and future direct or indirect parent companies, subsidiaries, divisions and affiliates, joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers), (collectively "Hetero Defendants"). Collectively, Plaintiffs and the Hetero Defendants shall be referred to as the "Parties." The Settlement Agreement is attached hereto as Exhibit 1.

2. The proposed class action settlement is the product of arms-length negotiations extending over the course of more than two years, against the backdrop of extensive litigation. This declaration provides the background and details relevant to the application.

3. Plaintiffs' Counsel conducted an extensive investigation into the core issues, including but not limited to the contamination of Hetero's Valsartan API and finished dose with probable human carcinogen nitrosamine impurities, including N-nitrosodimethylamine ("NDMA"), the scientific literature regarding the genotoxicity and probable human carcinogenicity of NDMA, the relevant regulatory documents and filings including the applicable Drug Master File(s) and Abbreviated New Drug Application Files, communications with the FDA and foreign regulatory agencies, the details of the United States market recall of the at-issue valsartan, the chemical reactions and mechanisms involved in the manufacturing process at issue,

the applicable United States regulatory standards, including for example FDA and ICH guidance, as well as the controlling regulations, the application of current good manufacturing practices ("cGMP") in the manufacture of the at-issue Hetero Valsartan API and finished dose, the scientific knowledge and literature at issue, the health and safety risks posed by the NDMA impurities, the distribution and sale channels of the Valsartan down through the supply chain, databases and spreadsheets quantifying pills sales and the implementation of the recall of the pills, and analysis of pricing data.

  4.  The investigation and litigation included but was not limited to the production, review, and analysis of more than one million pages of documents produced by the Hetero Defendants, including but not limited to regulatory filings and communications, technical documents, scientific literature and analyses, internal corporate documents including standard operating procedures and testing data, communications with customers, production and distribution databases, root cause analyses, and distribution and sales data. Plaintiffs served extensive document discovery requests on Hetero (*see e.g.,* Dkt. No. 328), and Plaintiffs' counsel identified document custodians and deposed at least nine (9) corporate representatives primarily based in India.

  5.  Plaintiffs' counsel's work likewise included: researching causes of action and other legal issues; opposing motions to dismiss; consulting with and

3

retaining numerous experts of varying specialties and conducting full expert discovery; *Daubert* briefing and argument; class certification briefing and related expert discovery; and numerous conferences and arguments overseen by the Court.

6. After the litigation was consolidated into an MDL, the Hetero Defendants joined their co-Defendants in the filing of an extensive motion to dismiss all claims including the claims for economic loss damages from Hetero attributable to its sale of Hetero Process III Valsartan. Plaintiffs prepared extensive responsive briefing and largely prevailed in opposing the motion to dismiss. (*See* Dkt. Nos. 675, 728, 775, 818, 838, 1019).

7. The Parties engaged in extensive discovery exchanges. Plaintiffs served over 100 document requests on Hetero and received the production of extensive discovery including ESI and paper documents, regulatory filings and communications, internal corporate documents, regulatory documents and standards, testing documents, documents relating to the recalls, root cause analyses, and sales and pricing data. (Dkt. No. 328). Plaintiffs evaluated Hetero privilege logs and similarly argued numerous discovery disputes at regularly scheduled discovery hearings before Magistrate Judge Schneider and Special Master Judge Vanaskie, who was appointed following Judge Schneider's retirement from the bench.

8. Plaintiffs took nine (9) Rule 30(b)(6) depositions of Hetero corporate representatives and defended depositions of the five (5) consumer and two (2) TPP

Representative Plaintiffs as well as participating in related depositions of third-party assignors and a third-party administrator. Plaintiffs also submitted extensive expert reports regarding general causation, presented and took general causation expert depositions, prepared and submitted related *Daubert* briefing, and presented argument at a *Daubert* hearing.

9. On November 10, 2021, the Consumer Plaintiffs and Consumer Class Counsel filed a 110-page motion for class certification that included two hundred (200) exhibits including expert reports in support of class certification on points relating to liability and damages issues, ascertainability, and other Rule 23 criteria. The TPP Plaintiffs and TPP Class Counsel submitted an additional thirty (30) pages of briefing. (Dkt. Nos. 1747, 1749). Consumer Plaintiffs and Consumer Class Counsel also filed a forty (40) page Reply on May 10, 2022 along with seventy-eight (78) additional exhibits and supplemental expert reports, and TPP Class Counsel submitted an additional twenty-eight (28) pages of Reply briefing. (Dkt. Nos. 2058, 2059). Throughout the class certification briefing, Plaintiffs defended their class certification experts' depositions and took over a dozen depositions of the experts tendered both jointly and individually by Defendants. Finally, after the Court granted class certification, Plaintiffs briefed an extensive opposition to the Rule 23(f) petition submitted by Defendants, which the Third Circuit ultimately denied by

Order dated May 1, 2023. *See Valsartan Losartan and Irbesartan Prods.*, No. 23-8005, Dkt. No. 60 (3d Cir. May 1 2023).

10. Plaintiffs' Counsel engaged in lengthy, arms-length negotiations with Hetero to arrive at this settlement. The negotiations occurred both directly and *via* a mediation process presided over by the Hon. Joel Schneider (retired), until reaching agreement on the material terms on or about June 5, 2023, and then during ongoing negotiations to clarify certain settlement terms, culminating in the signing of a Term Sheet on January 25, 2024. Since then, Plaintiffs' Counsel has worked to finalize the Settlement Agreement and to prepare a Motion for Preliminary Approval and accompanying documents. The negotiations with Hetero were prolonged and difficult, and the Parties left no stone unturned in evaluating and working to agree on all of the material terms.

11. Consumer Class Counsel and TPP Class Counsel attest and affirm their strong belief that this settlement is fair, adequate, and reasonable, and should be given both preliminary and final approval.

12. The Hetero Valsartan Economic Loss Settlement Class is defined as follows:

> All individuals and third-party payors in the United States and its territories and possessions who paid any amount of money for retail purchases of valsartan finished drug formulations manufactured utilizing Hetero Process III Valsartan API (the "Process III Valsartan") from May 1, 2018 to July 31, 2018.

Persons excluded from the Class are: (a) Hetero Defendants and affiliated entities and their employees, officers, directors, and agents; (b) Hetero Defendants' assigns, and successors; (c) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) Pharmacy Benefit Managers ("PBMs"); (e) Any judge or magistrate presiding over this action, and members of their families; (f) Plaintiffs' counsel of record; (g) Any personal injury plaintiff or claimant; and, (h) All persons who properly execute and file a timely request for exclusion from any Court-approved class. If approved, the Settlement will provide substantial benefits to the submitted Settlement Class. This Class does not encompass any claims for medical monitoring or personal injury related to purchase or use of Hetero Process III Valsartan, and does not affect those claims in any way, nor does it encompass or affect any economic loss claims with regard to Hetero Losartan, which claims are expressly excluded.

13.   The Hetero Defendants have agreed to pay $11,365,489.80 to the Settlement Class ("Settlement Fund"), which amount was established based on the total quantity of Process III Valsartan pills sold in the United States at the retail level, 5,412,138 pills (the number of Process III Valsartan pills shipped by Camber to any United States retailer or entity for the purpose of facilitating retail sales in the United States, less any Process III Valsartan pills that were confirmed to have been returned to Hetero and not sold to consumers at any time). (SA at §IV. 1). The Parties engaged

7

in confirmatory discovery during the negotiations, which was also informed and supported by Plaintiffs' economic loss expert, Dr. Conti, who consulted with Plaintiffs and actively participated in the mediation process. The Settlement Fund available for distribution to the Settlement Class after deduction of any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court, shall be allocated as follows (based on direct negotiation between the TPP's and Consumers and mediation with Judge Schneider):

For Consumers: Consumer members of the Settlement Class shall submit claim forms documenting their purchases of Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court. The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims. For each valid claim, a Consumer member of the class shall receive from the Fund a distribution of no more than $40 for each 30-day supply purchased and no more than a total of $120 per Consumer. However, a Consumer member of the class who can sufficiently document through receipts or pharmacy records, a claim in excess of $120 paid in full by that Consumer, may receive a payment in excess of $120. Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund. If the amount of payments to consumers would exceed this cap, the total

8

consumer award shall be reduced on a pro rata basis based on the days' supply purchased by each consumer so that it will not exceed 40% of the Fund.

For Third Party Payors: Third Party Payor members (including assignees of TPPs) of the Settlement Class shall submit claim forms documenting their (or their assignors') payments for Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court.  The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims.  After payment of the consumer claims as provided above, the remainder of the Fund shall be distributed to each valid TPP member of the class (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments.

Class members are limited to one claim per Class Member.

14. The Hetero Defendants will also be solely responsible for all costs of settlement notice and administration, which shall be paid separate from and in addition to the Settlement Fund.

15. The current estimated cost of settlement notice and administration for the Hetero Settlement is estimated to be $519,972.

16. Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the fund before deducting costs and expenses, plus reasonable costs and expenses attributable to the

9

Hetero Valsartan economic loss litigation. Each party shall have the right of appeal to the extent the award is inconsistent with the Settlement Agreement. Attorneys' Fees and Expenses shall be in addition to the Representative Plaintiffs' Service Awards.

17. Plaintiffs will seek approval of $5000 per Consumer class representative for service awards and $15,000 for each of the two TPP class representatives, MSP and MADA for their participation in information gathering, discovery and depositions on behalf of the class.

18. The Settlement Agreement includes a comprehensive notice plan, to be paid for by the Hetero Defendants and overseen by the experienced Settlement Administrator: EAG Gulf Coast, LLC ("EAG"). The Declaration of Brandon Schwartz, including all proposed forms of class notice, is attached hereto as Exhibit 2. Class Counsel has the right to monitor and participate in the Notice and Administration process to ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement.

19. Settlement Class Members will be notified of the Settlement by email to reasonably identifiable Settlement Class Members with valid email addresses, by text to the current or last known cellular phone numbers of all reasonably identifiable Settlement Class Members with a valid mobile number, and by first class mail to reasonably identifiable Class Members without a valid email address or mobile

10

number, but with a valid mailing address. This will provide direct notice through various methods, which "allows for notice directly to potential class members and limits the universe of potential claimants." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Due to the unavailability of records for certain class members, individual notice will be supplemented by publication notice, including but not limited to, for example, online advertising using Google Display Network, Programmatic platforms, Facebook and Instagram, AARP, and YouTube, search advertising using Google Ads, industry publications such as America's Benefit Specialist, NABIP, etc., and/or PR Newswire.

20. The Settlement Administrator will maintain a dedicated settlement website that will include the Claim Form, Opt-out Form, Full Notice, the Settlement Agreement, Court Orders regarding this Settlement, and other relevant Court documents, including Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards. The Hetero Defendants will pay the costs of Notice and Settlement Administration, and will timely provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

21. The Settlement Agreement accounts for any Settlement Class Members who wish to object or exclude themselves from the settlement. Consistent with Rule 23(e)(5)(A), the Settlement Agreement requires that any objection or opt-out request

11

contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Settlement Class Member, or certification, under penalty of perjury, that they have made a specific qualifying purchase or have made a good faith effort to obtain that information and in good faith believes that they are a part of the Settlement Class.

22. In exchange for the foregoing – and subject to approval by the Court – Plaintiffs and Class Members who do not timely exclude themselves will be bound by a release of all certified consumer and third-party payor class action claims for economic loss related to Hetero valsartan brought by Plaintiffs. ("the Released Claims"). No defendants other than the Hetero Defendants are parties to or addressed, impacted or released by this Agreement, and no other claims or actions are the subject of this Agreement. All claims for economic loss related to Hetero losartan, claims for medical monitoring related to Hetero valsartan and losartan (the subject of separate agreements), and all claims for personal injury related to Hetero valsartan and losartan (the subject of separate agreements) are explicitly excluded from this Agreement and are not impacted or affected by this Agreement or included in the definition of the Action in any way.

23. As stated above, the settlement here is the result of extensive, arms'-length negotiations that extended over the course of approximately two years

between experienced counsel, who believe the settlement is in the best interests of their respective clients.

24. Each class representative recognizes and accepts their responsibilities as a class representative and has actively participated in the litigation of this case and communicated regularly with their attorneys and Class Counsel about the proceedings. Moreover, MDL leadership counsel acting for common benefit, drew upon its extensive experience with similar class action and complex lawsuits to negotiate an excellent resolution for the Settlement Class.

Dated: June 27, 2025

| | |
|---|---|
| */s/ Ruben Honik* <br> Ruben Honik <br> **HONIK LLC** <br> 1515 Market Street, Suite 1100 <br> Philadelphia, PA 19102 <br> Phone: (267) 435-1300 <br> ruben@honiklaw.com | */s/ Conlee S. Whiteley* <br> Conlee S. Whiteley <br> **KANNER & WHITELEY, LLC** <br> 701 Camp Street <br> New Orleans, LA 70130 <br> Phone: (504) 524-5777 <br> c.whiteley@kanner-law.com |

*/s/ John R. Davis*
John R. Davis
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Phone: (512) 795-8686
jdavis@slackdavis.com

*Consumer Economic Loss Co-Lead Class Counsel*

/s/ Jorge Mestre
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

/s/ Gregory P. Hansel
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

*Third-Party Payor Economic Loss Co-Lead Class Counsel*

/s/ Ruben Honik
Ruben Honik
**Honik LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

/s/ Daniel Nigh
Daniel Nigh
**Nigh Goldenberg Raso & Vaugn, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

/s/ Adam Slater
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
c.whiteley@kanner-law.com

*MDL Plaintiffs' Co-Lead Counsel*