# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: VALSARTAN N-NITROSODIMETHYLAMINE (NDMA) PRODUCTS LIABILITY LITIGATION | Hon. Reneé M. Bumb |
| | Civ. No. 19-md-2875 (RMB) |

**DECLARATION OF BRANDON SCHWARTZ REGARDING THE PROPOSED
NOTICE PLAN AND SETTLEMENT ADMINISTRATION FOR THE CERTIFIED
CONSUMER AND THIRD-PARTY PAYOR CLASS ACTION SETTLEMENTS FOR
ECONOMIC LOSS RELATED TO VALSARTAN, LOSARTAN AND IRBESARTAN**

I, Brandon Schwartz, hereby declare:

1.    I am a Director of Legal Notice, and I am preparing this Declaration for the proposed Settlement Notice Administrator, EAG Gulf Coast, LLC ("EAG")[1], a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. The following statements are based on my personal knowledge as well as information provided by other experienced employees working under my supervision.

2.    We have undertaken the creation and execution of notice plans, along with the administration of diverse class action and mass action settlements. Our expertise extends across a wide array of subject matters, encompassing but not limited to privacy, products liability, consumer rights, mass tort, antitrust, insurance, and healthcare. Our team possesses broad experience in the design and implementation of notice procedures involving various aspects of class certification and settlement programs.

---

[1] As of May 21, 2023, the Directors & employees of Postlethwaite & Netterville (P&N), APAC joined EisnerAmper as EAG Gulf Coast, LLC.

**EXPERIENCE**

3.      Drawing upon over 15 years of extensive expertise in class action, advertising, media, and marketing, I have designed and implemented comprehensive notice solutions encompassing all facets of class action certification and settlement notice programs. My proficiency includes an understanding of email and postal distribution methodologies, reach and frequency analysis, strategic media generation, meticulous demographic research, media plan design, effective media development and procurement, commercial and video production creation, and the adept application of best practices for effective social media outreach.

4.      I have designed, implemented, and managed notice campaigns for more than 100 cases. Some of my notice plans include: *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation* (non-settlement), No. 1:19-md-02875 (MDL No. 2875) (D.N.J.); *Rivera, et al. v.* LLC, No. 2019-CH-009900 (Circuit Court of Cook County, IL); *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-09892 (S.D.N.Y.); *Gilmore v. Monsanto*, No. 3:21-cv-8159 (N.D. Cal.); *Krommenhock v. Post Foods, LLC*, No. 3:16-cv-04958 (N.D. Cal.); *Hadley, et al. v. Kellogg Sales Company*, No. 5:16-cv-04955 (N.D. Cal.); *Jones v. Monsanto,* No. 4:19-cv-00102 (W.D. Mo.); *In re: Sonic Corp. Customer Data Breach* Litigation, No. 1:17-md-02807 (N.D. Ohio); *In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation*, No. 3:18-cv-00850 (E.D. Va.); *Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2:10-md-02179 (E.D. La.); and the *Indian Residential Schools Settlement*, No. 00-cv-192059 (Ont. Super. Ct.). A description of my experience is attached as **Exhibit A**.

5.      The courts have consistently acknowledged both the credibility of our team (curriculum vitae attached hereto as **Exhibit B**) and the effectiveness of our class action notice plans. Illustrative court opinions affirming the sufficiency of our notice plans include:

      a.  On April 5, 2023, in the Order Granting Plaintiffs' Motions for Final Approval of Class action Settlement in *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-09892 (S.D.N.Y.), Judge Jennifer H. Rearden wrote:

The Court finds and determines that the notice procedure carried out by Claims Administrator Postlethwaite & Netterville, APAC ("P&N") afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. The Court finds and determines that the Notice was the best notice practicable and has satisfied the requirements of law and due process.

b.  In the matter *Gilmore et al. v. Monsanto Company, et al.,* No. 3:21-CV-8159

(N.D. Cal.), Judge Vince Chhabria ruled on March 31, 2023:

The Court finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order and the Notice Plan. The Court further finds that this provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law.

c.  In the matter *Rivera, et al. v. Google LLC,* No. 2019-CH-00990 (Ill. Cir. Ct.

Cook Cnty.), Judge Anna M. Loftus ruled on September 28, 2022:

Pursuant to this Court's Order granting preliminary approval of the Settlement, Postlethwaite & Netterville, APAC ("P&N") served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.

The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.

d.  In the matter *Hadley, et al. v. Kellogg Sales Company*, No. 16-cv-04955 (N.D.

Cal.), Judge Lucy H. Koh ruled on November 23, 2021:

> The Class Notice and claims submission procedures set forth in
> Sections 4 and 6 of the Settlement Agreement, and the Notice
> Plan filed on March 10, 2021, fully satisfy Rule 23 of the Federal
> Rules of Civil Procedure and the requirements of due process,
> were the best notice practicable under the circumstances,
> provided individual notice to all Settlement Class Members who
> could be identified through reasonable effort, and support the
> Court's exercise of jurisdiction over the Settlement Classes as
> contemplated in the Settlement Agreement and this Order. See
> Fed. R. Civ. P. 23(e)(2)(C)(ii).In the matter Hadley, et al. v.
> Kellogg Sales Co., No. 16-cv-04955 (N.D. Cal.), Judge Lucy H.
> Koh ruled on November 23, 2021.

e.  Additionally, on April 19, 2021, in the Order Granting Plaintiff's Unopposed

Motion for Final Approval of Class Action Settlement in *Siddle, et al. v. The*

*Duracell Company, et al.*, No. 4:19-cv-00568 (N.D. Cal.), Judge James

Donato ruled:

> The Court finds that the Class Notice and Claims Administration
> procedures set forth in the Agreement fully satisfy Rule 23 of
> the Federal Rules of Civil Procedure and the requirements of due
> process, were the best notice practicable under the
> circumstances, provided due and sufficient individual notice to
> all persons in the Settlement Class who could be identified
> through reasonable effort, and support the Court's exercise of
> jurisdiction over the Settlement Class as contemplated in the
> Agreement and this Final Approval Order.

## **OVERVIEW**

6.  <u>Prior Declaration and Notice Program Approved by the Court in this Litigation</u>:

EAG designed the non-settlement notice program for the Consumer Economic Loss Class, Third-

Party Payor Economic Loss Class, and Medical Monitoring Class ("Valsartan Class Litigation

Notice Program"). In the *Order Approving Form and Manner of Notice to Certified Class* on

November 15, 2023 (Doc. 2535), this Court approved the notice program, and in accordance with

the Court's Order, EAG issued notice to the Classes.

7.  <u>Settlement Class Notice</u>:  Class Counsel has asked EAG to develop and execute a

proposed Notice Plan to provide notice in the consumer and third-party payor class action as to economic losses related to the purchases and/or reimbursement related to valsartan, losartan and irbesartan. To date there have been proposed settlements with Hetero, Aurobindo, and Vivimed manufacturers of each of these drugs. The class definitions are set forth in the Settlement Agreement for each of the proposed settling Defendants.

8.    The proposed Notice Plan is designed with built-in adaptability to accommodate various settlement scenarios, in the interest of efficiency. It allows for Settlement Notice to be provided either separately or jointly, as deemed most suitable and approved by the Court at the time of notice distribution. This flexibility extends to addressing both defendant-specific aspects, such as direct notice to Consumer Class Members, and shared elements applicable across multiple settling Defendants. These shared components include a centralized website, coordinated mailed notices to third-party payors, consolidated call center staffing, and other administrative functions. Furthermore, the Notice Plan's adaptable framework allows for supplementation in the event of additional settlements or successful verdicts, ensuring coverage as the litigation evolves.

9.    The proposed Notice Plan described herein has been curated to deliver the most feasible and effective notice to the Settlement Class(es) through a mixed channel approach. Consequently, it is my opinion to a reasonable degree of certainty based on my qualifications and experience outlined above and the methodology detailed in this Declaration that the Notice Plan would successfully meet due process standards, comport with Fed. R. Civ. P. 23, and align with the recommendations provided in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*[2].

## DETAILS OF THE NOTICE PLAN

### Overview of Methodology

10.    We determined the most reasonable and practicable way to reach and communicate with potential members of the Settlement Class(es) is through a multifaceted

---

[2]    https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide

approach, utilizing a combination of: (1) email notice; (2) text message notice; (3) mailed notice; (4) digital banner and social media notice; (5) video notice; (6) search advertising; (7) TPP industry publications; (8) press release; (9) Settlement Website; and (10) toll-free hotline.

11.     A reach and frequency analysis of a program employing multiple notice channels, including media notice, requires demographic considerations and media consumption habits of a target audience. We utilize the nationally syndicated research bureau MRI-Simmons (formerly GfK Mediamark Research, Inc.) ("MRI")[3] and comScore[4], among others, to establish a qualitative target audience (inclusive of Class Members) of "Adults 35 years old and older that have, or had, a prescription medication for hypertension or heart disease/heart attack" (the "Target Audience"). Excerpts of the Target Audience demographics include:[5]

- 51% are female / 49% are male;

- 10% are aged 35-44 years old, 17% are aged 45-54 years old, 26% are aged 55-64 years old, and 46% are 65 years old or older;

- Compared to adults aged 18 years or older in the United States, those in the 55–64 age group are 61 times more likely, and adults aged 65 and above are 110 times more likely, to have taken or currently be taking prescription medication for conditions related to hypertension, heart disease, or heart attacks;

- 19% have a child living at home;

- 14% identify as Black or African American;

- 10% speak Spanish at home most often;

- 79% own a home, with a median home value of $327,156; and

---

[3] MRI-Simmons is a nationally-syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. MRI-Simmons conducts more than 30,000 personal interviews annually to gather their information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[4] comScore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes.

[5] 2024 MRI-Simmons Fall Doublebase USA.

- 39% have a household income under $49,999 and 49% have a household income between $50,000 and $149,999.

12.     Notice experts use socioeconomic data, audience characteristics and media consumption habits to guide the creation of unbiased notice plans that adhere to court-approved methodologies and align with standard practices prevalent in the advertising industry. Objective data points such as these help guide the delivery of messaging to the Target Audience and shape the vehicles used to place a notice before a Class Member.

**Direct Notice**

13.     For the Valsartan Litigation Class Notice Program, Class Counsel supplied Hetero valsartan-related pharmacy dispensing files containing various data points, including specific National Drug Codes ("NDC") and contact information which facilitated the issuance of direct notice. These files, having undergone data cleansing, deduplication, and contact information verification have now been revisited to identify potential members of the relevant valsartan Settlement Classes. In total, contact information for approximately 150,000 potential class members was extracted from pharmacy dispensing files.

14.     Further, on or about August 4, 2024, Aurobindo irbesartan-related pharmacy dispensing files, and on or about January 29, 2025, Vivimed losartan-related pharmacy dispensing files, were provided to EAG. These dispensing files contained NDC codes and contact information corresponding to the medications at issue during the relevant time periods for each class, covering more than 12,000 potential class members.

15.     Pursuant to further Court Orders, we anticipate that Class Counsel will provide dispensing data related to additional irbesartan and losartan class certifications and settlements. This will be in addition to the Valsartan dispensing data previously used to implement the Valsartan Class Litigation Notice Program. In consultation with Class Counsel, and based on previous data, we estimate that the settlement classes will include tens of thousands to hundreds of thousands of unique potential members, depending on the settling Defendant. This estimate includes both individuals and entities, with specific information as to each to be provided for each

settlement.

16.    The Notice Plan proposes to distribute individual notice to each class member listed for whom the data includes a facially valid email address ("Email Notice"), mobile phone number ("Text Notice"), or mailing address ("Postcard Notice"), depending on contact information available for the Settlement Class Member.

17.    **Email Notice**: The short form notice, attached hereto as **Exhibit C**, will be formatted for email distribution to all Class Members for whom a facially valid email address is available from a defendant specific list. The Email Notice will be created using embedded html text format, presenting a user-friendly and easily readable layout that avoids the inclusion of tables, graphs, or any other elements that may increase the likelihood of the email landing in SPAM folders and/or being blocked by Internet Service Providers ("ISP" or "ISPs"). Furthermore, we are committed to adhering to email industry best practices, incorporating essential elements such as 'unsubscribe' links, readily available Settlement Notice Administrator contact information, and the utilization of multiple IP addresses with established sender reputations.[6]

18.    To safeguard the integrity and optimize the deliverability of the Email Notice, all emails would undergo a hygiene and verification process. This process entails deduplication, syntax validation, detection and correction of misspelled domains, domain validation, and risk validation. We would monitor and report all email delivery attempts. For instances where an email is returned as undeliverable, commonly known as a 'bounce,' the specific reason for the bounce will be documented. If an email address is determined to be non-existent when attempted to send, this would be categorized as a 'hard bounce,' and no further delivery attempts would be made to that address. Instances where the inbox is full, initial blocking or deferral by the ISP, or any other

---

[6] ISPs assign scores, or sender reputation, to domains and IP addresses which tells email inbox providers if the email should be delivered to the recipient's inbox or directed to the spam folder. The sender reputation is determined by multiple factors such as: the timing and number of emails sent from the IP/domain; number of recipients that have marked incoming mail from the sender as spam; number of emails that are delivered directly to spam boxes; number of emails that bounce back; number of recipients that interact with the email (e.g. open, reply, forward or delete); quality of the content within the email (e.g. typos); the number of users that unsubscribe; and many other factors.

factors impeding delivery are categorized as 'soft bounces.' To limit the number of undelivered emails as a result of soft bounces, EAG will make additional email attempts to addresses experiencing a soft bounce. If an email remains undeliverable after subsequent attempts, it will be deemed, undeliverable, and no additional delivery attempts would be pursued for that particular email address.

19.     **Text Notice**: If no email address is available or if the Email Notice is undeliverable for any Class Member on a defendant specific list, and if a mobile phone number is available, we will send a text message notification (proposed Text Notice attached hereto as **Exhibit D**). When initiating text message notifications, we follow guidelines endorsed by U.S. Chamber of Commerce and expert marketing agencies specializing in text message notifications, ensuring adherence to best practice procedures when communicating with Class Members via text message. This includes an opt-out option and sending text messages within normal operating hours, among others. The Text Notice will also clearly identify itself as being sent on behalf of a U.S. Federal Court.

20.     **Postcard Notice**: For any Class Member where a mailing address exists but no email or mobile phone number is available, we will mail a Postcard Notice (attached hereto as **Exhibit E**) via United States Postal Service ("USPS") First Class Mail. Prior to mailing, all mailing addresses would be checked against the National Change of Address ("NCOA")[7] database to ensure the accuracy and currency of Class Member address information for proper formatting and mail delivery. Additionally, the addresses will be validated through the Coding Accuracy Support System to uphold zip code precision, while Delivery Point Validation would be employed to verify mailing address accuracy. In the event that NCOA provides a more current mailing address for a Class Member, we would update the address accordingly. In instances where a Postcard Notice is returned with forwarding mailing address information, we would re-send to

---

[7] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address ("COA") records consisting of names and addresses of individuals, families, and businesses who have filed a COA with the USPS. The address information is maintained on the database for 48 months.

the newly provided mailing address. For any Postcard Notices that are returned as undeliverable, we would utilize standard skip-tracing techniques to obtain forwarding mailing address information. If skip-tracing yields an alternative forwarding mailing address, we would re-mail the notice to the mailing address identified through the skip-tracing process.

**Digital Advertising Notice**

21.     According to MRI research, 97% of the Target Audience has used the internet in the last 30 days, 53% are medium-to-heavy users of the internet, and 84% use a cellular or smartphone device to access the internet.[8] Additionally, 96% of adults over 65 years old use the internet and 77% use their cellular or smartphone device to access the internet.[9]

22.     Accordingly, we will run banner notices on desktop and mobile devices on select websites where Class Members may visit regularly and utilize audience networks based on its cost efficiency, timing, and their contribution to reaching the Target Audience as well as social media advertising on Facebook and Instagram.

23.     Additionally, MRI reveals that 9% of the Target Audience are of Spanish, Hispanic or Latino origin descent and 10% speak Spanish most often at home.[10] Therefore, where appropriate, digital notices will appear in Spanish and English.

24.     We follow advertising industry best practices when designing and implementing digital notice programs. Further, we incorporate a programmatic approach to developing and implementing our notice programs which brings multiple consumer data points into a single platform allowing us to monitor the placement of notices on websites that Class Members may be visiting and take active, real-time measures to improve efficiencies. Additionally, we develop a unique mix of segment targeting that are based on the demography and metrics of the Target Audience.

---

[8] 2024 MRI-Simmons Fall Doublebase USA.
[9] *Id.*
[10] *Id.*

25.    Here, we would include a mix of segments such as:

- *Demographics* – target users based on age, income, etc.;

- *Behavioral* – individuals who previously viewed or searched for information related hypertension, heart disease, heart attacks, Valsartan and other prescription medication related to the treatment of hypertension, heart disease, and heart attacks;

- *Contextual* – individuals that visit a web page that has key terms such as Valsartan, hypertension, heart disease, heart attacks, heart health, and more, as well as words related to the Defendant(s);

- *Interest-based & Engagement* – individuals that have interacted, liked, followed, shared, or commented on content related to heart health, hypertension, heart disease, heart attacks and other related social media accounts;

- *Language* – individuals that choose Spanish as their preferred browser language and/or Spanish language appropriate websites;

- *Cultural Affinity* – targeting individuals that identify as Black/African American, etc.;

- *Device* – individuals on both desktop and mobile devices;

- *Select Placement* – high traffic premier websites in the shopping, sports, weather, entertainment, and local sites. Sites such as WebMD.com, ReadersDigest.com, Weather.com, CNN.com, FoxNews.com, USAToday.com are a few of the premier sites that will be utilized; and

- *Look-alike* (if approved by the Parties) – target users that share similar characteristics to a defendant specific notice list.

26.    Additional targeting mechanisms and segments will be developed based on the web traffic and analytics gathered from the Valsartan Litigation Class Notice Program and claims filed in each Settlement to further increase engagement.

27.     The Notice Plan incorporates a variety of platforms to disseminate banner notices effectively. These notices will run on thousands of relevant websites via the Google Display Network and Basis programmatic demand-side platform, targeting users based on their browsing habits. These sites will provide an opportunity for a Class Member to see the banner notice while they are viewing content relevant to them.

28.     Additionally, banner notices will be featured on AARP.org, which tailors its content to adults aged 50 and over. AARP.org, boasts an average monthly audience of 26.5 million unique monthly visitors[11] and our Target Audience is 37 times more likely to visit AARP.org, compared to adults aged 18 and over[12].

29.     Furthermore, banner notices will be displayed on the top-visited social media sites Facebook and Instagram. These sites represent the leading group of social network sites with over 250 million users in the United States[13]. Social media emphasizes user-driven content sharing, thereby facilitating the organic dissemination of notices through trusted channels utilized by Class Members in their regular communication. Notices on Facebook and Instagram will appear in a user's feed.

30.     The banner notices will utilize standard Interactive Advertising Bureau ad sizes (350x250, 728x90, 970x250, 300x600) and custom ads sizes according to Facebook and Instagram advertising guidelines. Proposed banner notices are attached hereto as **ExhibitF**.

31.     Combined, we estimate that the digital advertising notice will generate more than 168,560,000 million impressions over four weeks.

**<u>YouTube</u>**

32.     A 15-second and/or 30-second skippable video notice will be created and targeted to viewers that have shown an interest in hypertension, heart disease, and blood pressure resources and treatments, for example. A viewer will have the option to skip the video after 5 seconds. This

---

[11] https://advertise.aarp.org/aarp-media/aarp
[12] 2024 MRI-Simmons Fall Doublebase USA.
[13] "Number of Facebook users in United States from 2018 to 2027" (Statista; July 2023) and "Number of Instagram users in the United States from 2018 to 2027" (Statista; July 2023).

format provides an opportunity to gain a large number of impressions while maintaining an efficient budget. An estimated 9.8 million impressions will be served over four weeks.

**Search Advertising**

33.    Search-based advertising places a notice in front of users that are actively researching a topic. Utilizing Google Ads, a select list of keywords will be developed that are relevant to the litigation. When a user enters those keywords into the Google search bar, a short descriptive notice may appear above the results that would direct users to the Settlement Website.

**Third-Party Payor ("TPP") Direct Notice**

34.    The Notice Plan provides direct notice to the TPPs through email and direct mail to more than 43,000 contacts on our proprietary third-party payor list ("TPP List"). The TPP List consists of health and medical insurance organizations, associations, and claims processors; trade, labor, and union welfare benefits and health funds; labor and employee organizations and associations; self-insured entities (Form 5500 filing); and other related entities and organizations. Attached hereto as **Exhibit G** is the proposed short form Notice to TPPs

**Media Outreach to TPPs**

35.    In addition to the direct notice efforts to the TPP List described above, the Notice Plan provides issuing notice through four to six relevant industry publications and websites. In instances where a publication schedule is not conducive to the notice schedule or the notice is rejected by the publications legal review department, we will suggest an alternate publication or increase frequency in other publications.

36.    We will coordinate with the following industry publications and websites:

   ▪   *National Association of Benefits and Insurance Professionals (NABIP)*: "NABIP represents more than 100,000 licensed health insurance agents, brokers, general agents, consultants and benefit professionals through more than 200 chapters across America. NABIP members service the health insurance needs of large and small employers as well as people seeking individual health insurance

coverage."[14]

- o NABIP.org homepage banner advertisement
- o NABIP eNewsletter
- o Email sponsorship for the release of the monthly magazine, *bip Magazine,* or a ½ page in *bip Magazine*.
  - The official publication for NABIP members with a readership of more than 36,000.
- *Society for Human Resource Management (SHRM)*: With more than 329,000 members worldwide[15], SHRM represents and engages with executive leaders, HR specialist and HR generalists from small and large companies. SHRM.org website averages more than 3.2 million monthly unique visitors.[16]
  - o SHRM.org banner advertisement
- *America's Health Insurance Plans Association (AHIP)*: AHIP is the national association whose members provide health care coverage, services, and solutions to hundreds of millions of Americans.
  - o *AHIP Smart Briefs* eNewsletter: With over 57,000 subscribers, AHIP Solutions SmartBrief is a subscription-only news service dedicated to informing health plan executives and leaders of the news shaping their industry.

## Earned Media – Press Release

37.    A press release will be distributed over PRNewswire's US1 and Hispanic Newslines in substantially the same form as the short form notice. The press release will be issued broadly to media outlets, including newspapers, magazines, wire services, television, radio, and online media nationally. Combined, the Newslines distributes to more than 20,000 media outlets in the United States.

---

[14] NABIP Media Kit: https://www.nabip-mediakit.com/
[15] 2023 SHRM Annual Report: https://www.shrm.org/content/dam/en/shrm/about/2023-Annual-Report.pdf
[16] 2025 SHRM Media Kit.

**Settlement Website**

38.     We     will     establish     and     maintain     a     dedicated     website,
www.ValsartanMedicationSettlement.com, ("Settlement Website") which will provide detailed
explanations of the legal rights and options for the Settlement Class, as well updated and relevant
case information. [17]

39.     The website address will be included in the Class Notices and all digital banners
will link directly to the Settlement Website. The Settlement Website will also allow Class
Members to check their eligibility, file a Claim electronically, and register for updates.
Furthermore, it will host important case-related documents such as the Class Notices, Settlement
Agreement, Motions, Court Orders, and other relevant documents, allowing all Class Members
to review and download these documents at their convenience.

40.     The Notices to TPPs will include a web address to a sub-site of the Settlement
Website tailored to TPP-specific information. The sub-site will feature essential information
related to TPPs. This sub-site can also be accessed from the homepage of the website.

41.     The Settlement Website will also contain long form notices tailored to the
Consumer Economic Loss Class, attached hereto as **Exhibit H**, and the TPP Economic Loss
Class, attached as **Exhibit I.**

**Dedicated Toll-Free Hotline**

42.     A dedicated toll-free informational hotline, 1-866-875-9644 was established for
the Valsartan Litigation Class Notice Program. The toll-free hotline is, and has been, accessible
24 hours per day, seven days per week and will continue to be used in this Settlement. The hotline
utilizes an interactive voice response system where the Settlement Class can obtain specific and
essential information regarding this Settlement, as well as information regarding each Settlement,
and be provided responses to frequently asked questions. Settlement Class Members will also
have the option to leave a voicemail and receive a call back from the Settlement Notice

---

[17] When appropriate, Class Members will be redirected to the Valsartan Litigation Class Notice Program website
where we continue to maintain essential case information related to class certification.

Administrator.

## REQUESTS FOR EXCLUSION

43.    Class Members that want to exclude themselves, or opt out, from the Class may submit a request for exclusion by mail to a dedicated Post Office Box or email to a dedicated email address that we would maintain. We will monitor all mail delivered to that Post Office Box or email address and track all exclusion requests received, which would be provided to Counsel.

## DATA MANAGEMENT PRACTICES AND SECURITY PROTOCOLS[18]

44.    Our firm routinely manages a broad range of confidential and highly sensitive information. To ensure privacy and data protection, we maintain industry-leading practices and follow industry accepted standards as endorsed by the National Institute of Standards and Technology (NIST), HITRUST, CIS Critical Security Controls (CIS Controls). Moreover, our certified data centers, meet stringent compliance regulations – PCI, HIPAA, FINRA, Sarbanes-Oxley, and Gramm-Leach-Bliley – and undergo annual SSAE16 SOCII audits.

45.    Our data encryption protection encompasses email encryption for confidential transmissions as well as laptop hard drive encryption. Data is protected in transit using TLS 1.3, and sensitive data at rest is secured through advanced methods like column-level encryption and symmetric key encryption. Column-level encryption ensures specific database columns are encrypted, keeping data unreadable without proper decryption keys. Symmetric key encryption uses a single key for both encryption and decryption, ensuring that only authorized parties with the correct key can access sensitive information, such as personally identifiable information (PII)Complex password requirements and two-factor authentication further bolsters access to our proprietary claims management database and other system-related services. Employee security protocols are enforced through annual security awareness training, specializing in the handling of protected information such as PII and identifying the mechanisms of phishing and social engineering, among others.

---

[18] EAG continuously evaluates its information security processes and protocols. Specific details related to data hosting and security are subject to change in order to meet evolving standards, best practices, and program needs.

46.     In addition to these measures, we maintain comprehensive insurance coverage, including network security insurance, providing protection in the event of any breach. Furthermore, consumer data is strictly confined to the agreed-upon purpose. These policies underscore our commitment to safeguarding sensitive information and distinguishes us within the legal notice and settlement administration field. Detailed information regarding our information security policies is attached hereto as **Exhibit J**.

## <u>CONCLUSION</u>

47.     In 2010, the Federal Judicial Center ("FJC") issued the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.* The guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." This Notice Plan is designed to fit one or multiple settling Defendants while delivering an estimated reach to at least 80% of the Target Audience, and by inclusion the settling class(es). The measurable reach of the Notice Plan will be driven by direct notice to an overwhelming majority of Settlement Class Members identified in the defendant specific notice lists and bolstered by digital publication notice but does not include the direct notice to TPPs, press release, paid search, dedicated website, and toll-free hotline, as these vehicles are difficult to calculate. They, however, will meaningfully strengthen the reach and frequency of the Notice Plan.

48.     This method of focused notice dissemination is a measured and targeted approach to provide effective notice in this case, is designed to satisfy the guidance set forth in the *Manual for Complex Litigation (4th ed.)* and FJC guidance, and to exceed the requirements of due process, including its "desire to actually inform" requirement.[19]

///

///

---

[19] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 US 306, 315, 70 S Ct 653, 94 L Ed 865 (1950)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 25th day of June, 2025 in Portland, Oregon.

_____
Brandon Schwartz

Exhibit A: CV of Brandon Schwartz

△ | EISNERAMPER

# Brandon Schwartz



Brandon Schwartz is the Director of Notice for Eisner Advisory Group LLC ("EAG"), where he leads the strategy and execution of innovative legal notice programs for complex class actions and claims administration. With over 15 years of industry experience, he brings deep expertise in crafting effective, compliant, and results-driven notice solutions tailored to the unique demands of each case.

Brandon is widely recognized for his command of modern notice tactics, including cutting-edge digital and social media campaigns, email and direct mail distribution, demographic targeting, and reach and frequency analysis. His deep understanding of Fed R. Civ 23 ensures that notice plans meet the highest standards of compliance while maximizing reach and effectiveness.

A published author on topics related to legal notice, Brandon has led the design and delivery of notice campaigns in hundreds of matters spanning antitrust, consumer, privacy, securities litigation, and more.  Prior to joining EAG, Brandon was the Director of Notice and Media for a large claims administrator where he oversaw high-profile national campaigns and built a reputation for precision, creativity, and reliability in legal notice.

**EDUCATION & CREDENTIALS**
- Bachelor of Science, Marketing, University of Illinois at Chicago
- Bachelor of Science, Management, University of Illinois at Chicago
- Legal Notice Expert

**ARTICLES**
- Case Study: Effective Notice Leads to High Claims Rate
- Legal Notice and Social Media: How to Win the Internet
- Rule 23 Changes: Avoid Delays in Class Settlement Approval
- Rule 23 Changes: How Electronic Notice Can Save Money
- Tackling Digital Class Notice with Rule 23 Changes
- What to Expect: California's Northern District Procedural Guidance Changes

**SPEAKING ENGAGEMENTS**
- Class Action Law Forum: The Increase of Fraud in Class Actions and Mass Torts, Plus Ethics of Third-Party Filers, San Diego, March 13, 2024
- Class Action Law Forum: Notice and Administration: Fraud and Third-Party Filers, San Diego, CA, March 18, 2023
- Class Action Law Forum: Settlement and Notice & Claims Trends, San Diego, CA, March 18, 2022
- Class Action Law Forum: Consumer Class Actions, San Diego, CA, March 5, 2020
- Class Action Mastery: Best Practices in Claims Settlement Administration, HB Litigation Conference, San Diego, CA, January 17, 2019
- Class Action Mastery: Communication with the Class, HB Litigation Conference, New York, NY, May 10, 2018

"EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC are independently owned firms that practice in an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed CPA firm that provides attest services, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms.

## SAMPLE JUDICIAL COMMENTS

- ***Milan, et al. v. Clif Bar and Company,*** Case No. 1:18-cv-02354 (N.D. Cal**.**), Judge James Donato ruled on March 21, 2025:

  *The distribution of the Class Notice pursuant to the Class Notice Program constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.*

- ***Meholic, et al. v. Seattle Arena Company,*** Case No. 24-2-06283-1 (Wash. Super. Ct.), Judge Lindsey M. Teppner ruled on January 3, 2025:

  *The Court finds that the Notice Program provided for in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class Members to exclude themselves from the settlement, to object and appear at the Final Fairness Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Washington Rules of Civil Procedure, the United States Constitution, and all other applicable law.*

- ***Kandel, et al. v. Dr. Dennis Gross Skincare, LLC,*** Case No. 1:23-cv-01967 (S.D.N.Y.), Judge Edgardo Ramos ruled on October 31, 2024:

  *The Court finds that distribution of the Notice constituted the best notice practicable under the circumstances, and constituted valid, due, and sufficient notice to all members of the Settlement Class. The Court finds that such notice complies fully with the requirements of Fed. R. Civ. P. 23, the Constitution of the United States, and any other applicable laws...The Court finds and determines that the notice procedure carried out by EAG Gulf Coast LLC afforded adequate protections to Settlement Class members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Settlement Class members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process.*

- ***Andrade-Heymsfield v. NextFoods, Inc.,*** Case No. 3:21-cv-1446 (S.D. Cal.), Judge Barry T. Moskowitz ruled on April 8, 2024:

  *The Court previously approved the parties' proposed notice procedures. (ECF No. 56). In the motion for final approval, Plaintiff represents that the approved notice plan was executed. (ECF No. 59 at 9). "Notice was provided to Class Members via newspaper, a press release, and various digital means," including "display banner advertising, keyword search online advertising, and social media advertising through Facebook, Instagram, TikTok and YouTube, delivering over 120 million targeted impressions." (Id.)...In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the class members.*



- **Hymes v. Earl Enterprises Holdings,** Case No. 6:19-cv-00644 (M.D. Fla.), Judge A. James Craner ruled on February 20, 2024:

  *The Court finds that the form content, and method of giving notice to the Settlement Class as described in Article VII of the Settlement Agreement (including the exhibits thereto): (a) was the best practicable notice to the Settlement Class; (b) was reasonably calculated to apprise Settlement Class Members of the pendency of the action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including but not limited to their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) was reasonable and constituted due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) met all applicable requirements of law, including the Florida Rules of Civil Procedure, and met the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice was written in plain language, used simple terminology, and was designed to be readily understandable by Class Members.*

- **Tucker v. Marietta Area Health Care Inc.,** Case No. 2:22-cv-00184 (S.D. Ohio), Judge Sarah D. Morrison ruled on December 7, 2023:

  *The Court's Preliminary Approval Order approved the Short Form Settlement Notice, Long Form Notice, and Claim Form, and found the mailing, distribution, and publishing of the various notices as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and was the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice. The roughly 6.2% claims rate supports a finding that the Notice Program was sufficient...The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that the Notice to Class Members complied with Fed. R. Civ. P. 23 and due process.*

- **Easter v Sound Generations,** Case No. 21-2-16953-4 (Wash. Super.), Judge James E. Rogers on July 14, 2023:

  *The Court has determined that the Notice given to the Settlement Class Members in accordance with the Preliminary Approval Order fully and accurately informed Settlement Class Members of all material terms of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Civil Rule 23, applicable law, and the due process clauses of both the U.S. and Washington Constitutions.*

- **Hezi v. Celsius Holdings, Inc.,** Case No. 1:21-CV-09892-VM (S.D.N.Y.), Judge Jennifer H. Rearden on April 5, 2023:

  *The Court finds and determines that the notice procedure carried out by Claims Administrator Postlethwaite & Netterville, APAC ("P&N") afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process.*



- ***Gilmore, et al. v. Monsanto Company, et al.,*** Case No. 3:21-CV-8159 (N.D. Cal.), Judge Vince Chhabria on March 31, 2023:

  *The Court finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order and the Notice Plan. The Court further finds that this provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law.*

- ***John Doe, et al. v. Katherine Shaw Bethea Hospital and KSB Medical Group, Inc.,*** Case No. 2021L00026 (Ill. Cir. Ct., 15th Jud. Cir.), on March 28, 2023:

  *The Court has determined that the notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***In re Forefront Data Breach Litigation,*** Case No. 1:21-cv-00887-LA (E.D. Wis.), Judge Lynn Adelman on March 22, 2023:

  *The Court finds that the dissemination of Notice to Settlement Class Members: (a) was implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of the Action; (ii) their right to submit a claim (where applicable) by submitting a Claim Form; (iii) their right to exclude themselves from the Settlement Class; (iv) the effect of the proposed Settlement (including the releases to be provided thereunder); (v) Class Counsel's motion for a Fee Award and Costs and for Service Awards to the Class Representatives; (vi) their right to object to any aspect of the Settlement, and/or Class Counsel's motion for Service Awards to the Class Representatives and for a Fee Award and Costs; and (vii) their right to appear at the Final Approval Hearing; (d) constituted due, adequate, and sufficient notice to all natural persons entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States (including the Due Process Clause), and all other applicable laws and rules.*

- ***Sanders, et al. v. Ibex Global Solutions, Inc., et al.,*** Case No. 1:22-CV-00591 (D.D.C.), Judge Trevor N. McFadden on March 10, 2023:

  *An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*



- ***Pagan, et. al. v. Faneuil, Inc.,*** Case No. 3:22-CV-297 (E.D. Va), Judge Robert E. Payne on February 16, 2023:

    *The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.*

- ***LaPrairie v. Presidio, Inc., et al.,*** Case No. 1:21-CV-08795-JFK (S.D.N.Y.), Judge Andrew L. Carter, Jr. on December 12, 2022:

    *The Court hereby fully, finally and unconditionally approves the Settlement embodied in the Settlement Agreement as being a fair, reasonable and adequate settlement and compromise of the claims asserted in the Action. The Class Members have been given proper and adequate notice of the Settlement, fairness hearing, Class Counsel's application for attorneys' fees, and the service award to the Settlement Class Representative. An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Nelson v. Bansley & Kiener, LLP,*** Case No. 2021-CH-06274 (Circuit Court of Cook County, IL), Judge Sophia H. Hall on November 30, 2022:

    *The court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with requirements of 735 ILCS 5/2-801, et seq.*

- ***Buck, et al. v. Northwest Commercial Real Estate Investments, LLC, et al.,*** Case No. 21-2-03929-1-SEA (Superior Court King County, WA), Judge Douglass A. North on September 30, 2022:

    *Pursuant to the Court's Preliminary Approval Order, Postcard Notice was distributed to the Class by First Class mail and Email Notice was distributed to all Class Members for whom the Settlement Administrator had a valid email address. The Court hereby finds and concludes that Postcard and Email Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement and in compliance with the Court's Preliminary Approval Order. The Court further finds and concludes that the Postcard and Email Notice, and the distribution procedures set forth in the Settlement fully satisfy CR 23(c)(2) and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all members of the Class who could be identified through reasonable effort, provided an opportunity for the Class Members to object or exclude themselves from the Settlement,*



and support the Court's exercise of jurisdiction over the Settlement Class Members as contemplated in the Settlement and this Final Approval Order.

- ***Rivera, et al. v. Google LLC,*** Case No. 2019-CH-00990 (Cir. Ct. Cook Cnty., Ill.), Judge Anna M. Loftus on September 28, 2022:

    *Pursuant to this Court's Order granting preliminary approval of the Settlement, Postlethwaite & Netterville, APAC ("P&N") served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.*

    *The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***Patricia Davidson, et al. v. Healthgrades Operating Company, Inc.,*** Case No. 21-cv-01250-RBJ (D. Colo), Judge R. Brooke Jackson on August 22, 2022:

    *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Hosch, et al. v. Drybar Holdings LLC,*** Case No. 2021-CH-01976 (Circuit Court of Cook County, IL), Judge Pamela M. Meyerson on June 27, 2022:

    *The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***Baldwin, et. al. v. National Western Life Insurance Company,*** 2:21-cv-04066-WJE (W.D. MO), Judge Willie J. Epps, Jr. on June 16, 2022:

    *The Court finds that such Notice as therein ordered, constituted the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Rule 23(c)(2).*



- ***Chapman, et al. v. voestalpine Texas Holding LLC,*** Case No. 2:17-cv-174 (S.D. Tex.), Judge Nelva Gonzales Ramos on June 15, 2022:

  *The Class and Collective Notice provided pursuant to the Agreement and the Order Granting Preliminary Approval of Class Settlement:*

  (a) *Constituted the best practicable notice, under the circumstances;*
  (b) *Constituted notice that was reasonably calculated to apprise the Class Members of the pendency of this lawsuit, their right to object or exclude themselves from the proposed settlement, and to appear at the Fairness Hearing;*
  (c) *Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and*
  (d) *Met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution because it stated in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).*

- ***Hanson v. Welch Foods Inc.,*** Case No. 3:20-cv-02011 (N.D. Cal.), Judge Joseph C. Spero on April 15, 2022:

  *The Class Notice and claims submission procedures set forth in Sections 5 and 9 of the Settlement Agreement, and the Notice Plan detailed in the Declaration of Brandon Schwartz filed on October 1, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***McMorrow, et al. v. Mondelez International, Inc.,*** No. 17-cv-02327 (S.D. Cal.), Judge Cynthia Bashant on April 8, 2022:

  *Notice was administered nationwide and achieved an overwhelmingly positive outcome, surpassing estimates from the Claims Administrator both in the predicted reach of the notice (72.94% as compared to 70%) as well as in participation from the class (80% more claims submitted than expected). (Schwartz Decl. ¶ 14, ECF No. 206-1; Final App. Mot. 3.) Only 46 potential Class Members submitted exclusions (Schwartz Decl. ¶ 21), and only one submitted an objection—however the objection opposes the distribution of fees and costs rather than the settlement itself. (Obj. 3.) The Court agrees with Plaintiffs that the strong claims rate, single fee-related objection, and low opt-out rate weigh in favor of final approval.*

- ***Hadley, et al. v. Kellogg Sales Company,*** No. 16-cv-04955 (N.D. Cal.), Judge Lucy H. Koh on November 23, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement, and the Notice Plan filed on March 10, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all*



*Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Miracle-Pond, et al. v. Shutterfly, Inc.,*** No. 2019-CH-07050 (Cir. Ct. Cook Cnty., Ill.), Judge Raymond W. Mitchell on September 9, 2021:

  *This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement. The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***In re: Interior Molded Doors Indirect Purchasers Antitrust Litigation,*** No. 3:18-cv-00850 (E.D. Va.), Judge John A. Gibney on July 27, 2021:

  *The notice given to the Settlement Class of the settlement set forth in the Settlement Agreement and the other matters set forth herein was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings an of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons and entities entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e) and the requirements of due process.*

- ***Krommenhock, et al. v. Post Foods, LLC,*** No. 16-cv-04958 (N.D. Cal.), Judge William H. Orrick on June 25, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement and the Notice Plan filed on January 18, 2021 fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Lisa Jones, et al. v. Monsanto Company, et al.,*** No. 4:19-cv-00102-BP (W.D. Mo.), Chief Judge Beth Phillips on May 13, 2021:

  *The Court also notes that there has been only one objection filed, and even the Objector has not suggested that the amount of the settlement is inadequate or that the notice or the method of disseminating the notice was inadequate to satisfy the requirements of the Due Process  Clause or was otherwise infirm…However, with respect to the Rule 23(e)*



*factors, the Court finds that the process used to identify and pay class members and the amount paid to class members are fair and reasonable for settlement purposes.*

- ***Winters, et al. v. Two Towns Ciderhouse Inc.***, No. 3:20-cv-00468-BAS-BGS (S.D. Cal.), Judge Cynthia Bashant on May 11, 2021:

  *The settlement administrator, Postlethwaite and Netterville, APAC ("P&N") completed notice as directed by the Court in its Order Granting Preliminary Approval of the Class Action Settlement. (Decl. of Brandon Schwartz Re: Notice Plan Implementation and Settlement Administration ("Schwartz Decl.") ¶¶ 4–14, ECF No. 24-5.)....Notice via social media resulted in 30,633,610 impressions. (Schwartz Decl. ¶4.) Radio notice via Spotify resulted in 394,054 impressions. (Id. ¶ 5.) The settlement website received 155,636 hits, and the toll-free number received 51 calls. (Id. ¶¶ 9, 14.). Thus, the Court finds the Notice complies with due process.*

- ***Siddle, et al. v. The Duracell Company, et al.***, No. 4:19-cv-00568 (N.D. Cal.), Judge James Donato on April 19, 2021:

  *The Court finds that the Class Notice and Claims Administration procedures set forth in the Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Agreement and this Final Approval Order.*

- ***Fabricant v. Amerisave Mortgage Corporation***, No. 19-cv-04659-AB-AS (C.D. Cal.), Judge Andre Birotte, Jr. on November 25, 2020:

  *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

- ***Edward Makaron, et al. v. Enagic USA, Inc.***, 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson on January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*

  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and*



*sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- ***John Karpilovsky and Jimmie Criollo, Jr., et al. v. All Web Leads, Inc.***, 1:17-cv-01307 (N.D. Ill.), Judge Harry D. Leinenweber on August 8, 2019:

  *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

  *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*

- ***Hartig Drug Company Inc. v. Senju Pharmaceutical LTD. and Allergan, Inc.,*** 1:14-cv-00719 (D. Del.), Judge Joseph F. Bataillon on May 3, 2018:

  *The Court approves the proposed notice program, including the Mail Notice and the Publication Notice, attached as Exhibits A and B to the Declaration of Brandon Schwartz of Garden City Group in support of Plaintiff's Unopposed Motion to Distribute Notice to the Settlement Class ("Schwartz Declaration"). The Court further approves the claim form attached as Exhibit C to the Schwartz Declaration. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due, and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23...*

- ***Gordon v. Hain Celestial Group, et al.,*** 1:16-cv-06526 (S.D.N.Y.), Judge Katherine B. Forrest on September 22, 2017:

  *The form, content, and method of dissemination of the Class Notice given to Settlement Class Members - as previously approved by the Court in its Preliminary Approval Order – were adequate and reasonable, constituted the best notice practicable under the circumstances, and satisfied the requirements of Rule 23 (c) and (e) and Due Process.*

- ***In re: Sony PS3 "Other OS" Litigation,*** 4:10-cv-01811 (N.D. Cal.), Judge Yvonne Gonzalez Rogers on June 8, 2018:

  *The Court finds that the program for disseminating notice to the Class provided for in the Settlement, and previously approved and directed by the Court (the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws.*



- ***In re: Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation,*** 3:12-cv-00169 (D.N.J.), Judge Anne E. Thompson on June 8, 2016:

  *Notice of the Settlement Agreements to the Settlement Classes required by Rule 23(e) of the Federal Rules of Civil Procedure, including the additional forms of notice as approved by the Court, has been provided in accordance with the Court's orders granting preliminary approval of these Settlements and notice of the Settlements, and such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Federal Rules of Civil Procedure 23(c)(2)(B) and due process.*



**LEGAL NOTICE CASES**

| |
|---|
| *Lewis v. Lytx Inc.*, Case No. 3:22-CV-00046 (S.D. Ill.) |
| *Doe, et al. v. San Diego Fertility Center Medical Group, Inc., et al.*, Case No. 37-2024-00006118 (Cal. Super. Ct.) |
| *Tapia-Rendon, et al. v. Workeasy Software, LLC*, Case No. 1:21-cv-3400 (N.D. Ill.) |
| *Meholic, et al. v. Seattle Arena Company*, Case No. 24-2-06283-1 (Wash. Super. Ct.) |
| *Cadena, et al. v. American Honda Motor Co., Inc.*, Case No. CV 18-4007 (C.D. Cal.) |
| *In Re: Hapy Bear Surgery Center Data Security Incident Litigation*, Case No. VCU307987 (Cal. Super. Ct.) |
| *Brim, et al. v. Prestige Care, Inc.*, Case No. 3:24-CV-05133 (W.D. Wash.) |
| *Doe, et al. v. Virginia Mason Medical Center, et al.*, Case No. 19-2-26674-1 SEA (Wash. Super. Ct.) |
| *Velasco v. Belmont Groceries, LLC*, Case No. 2023-CH-01077 (Cir. Ct. Cook Cnty., Ill.) |
| *Newman, et al. v. Audienceview Ticketing Corporation, et al.*, Case No. 1:23-cv-03764 (S.D.N.Y) |
| *Severa, et al. v. Solvay Specialty Polymers USA, LLC, et al.*, Case No. 1:20-CV-06906 (D.N.J.) |
| *In Re Christie's Data Breach Litigation*, Case No. 1:24-cv-4221 (S.D.N.Y.) |
| *Reardon, et al. v. Suncoast Skin Solutions, Inc.*, Case No. 23-CA-000317 (Fla. 13th Jud. Cir.) |
| *Kandel, et al. v. Dr. Dennis Gross Skincare LLC*, Case No. 1:23-cv-01967-ER (S.D.N.Y.) |
| *Haggerty, et al. v. Consumer Safety Technology, LLC*, Case No. 22-cv-01414 (Cal. Super. Ct.) |
| *Guzman, et al. v. Polaris Industries, Inc. et al.*, Case No. 8:19-cv-01543 (C.D. Cal.) |
| *Coleman v. USAA*, Case No. 3:21-cv-217 (N.D. Cal.) |
| *Knott, et al. v. United Water System, Inc., et al.*, Case No. 6:23-CV-00401 (W.D. La.) |
| *Jweinat v. loanDepot.com, LLC*, Case No. CGC-23-605149 (Cal. Super. Ct.) |
| *Tracey, et al. v Elekta, Inc., et al.*, Case No. 1:21-cv-02851 (N.D. Ga.). |
| *Coleman, et al. v. United Services Automobile Association, et al.*, Case No. 3:21-cv-00217 (S.D. Cal.) |
| *Ralph Milan, et al. v. Clif Bar & Company*, Case No. 18-cv-02354-JD (N.D. Cal.) |
| *In re: Valsartan N-Nitrosodimethylamine (NDMA) Products Liability Litigation* (non-settlement), Case No. 19-md-2875 (D.N.J.) |
| *Ayala v. Commonwealth Health Physician Network, et al.*, Case No. 2023-cv-3008 (Lackawanna Cnty. Ct. Com. Pl.) |
| *Andrade-Heymsfield v. NextFoods, Inc.*, Case No. 21-cv-1446 (S.D. Cal.) |
| *In Re: Novant Health, Inc.*, Case No. 1:22-cv-00697 (M.D.N.C.) |
| *White v. General Motors, LLC*, Case No. 1:21-cv-00410 (D. Colo.) |
| *Gunaratna v. Dennis Gross Skincare, LLC, et al.*, Case No. 2:20-cv-02311 (C.D. Cal.) |
| *Hymes v. Earl Enterprises Holdings*, Case No. 6:19-cv-00644 (M.D. Fla.) |
| *Rivera, et al. v. Google LLC*, Case No. 19-CH-00990 (Cir. Ct. Cook Cnty., Ill.) |
| *Hezi v Celsius Holdings, Inc*, Case No. 1:21-cv-09892 (S.D.N.Y.) |
| *M.S. v. Med-Data, Inc.*, Case No. 4:22-cv-00187 (S.D. Tex.) |
| *Ictech-Bendeck, et al. v. Progressive Waste Solutions of LA, Inc, et al.*, Case No. 2:18-cv-7889 (E.D. La.) |
| *Quackenbush, et al. v American Honda Motor Company, Inc., et al.*, Case No. 3:20-cv-05599 (N.D. Cal.) |
| *McFadden v. Nationstar*, Case No. 1:20-cv-00166 (D.D.C.) |
| *Sanders, et al. v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591 (D.D.C.) |



| |
|---|
| *In re: Cathode Ray Tube (CRT) Antitrust Litigation,* Case No. 4:07-cv-05944 (N.D. Cal.) |
| *John Doe, et al. v. Katherine Shaw Bethea Hospital and KSB Medical Group, Inc.,* Case No. 2021L00026 (15th Jud. Cir. Ct. Lee Cnty., Ill.) |
| *Gonshorowski v. Spencer Gifts, LLC,* Case No. ATL-L-000311-22 (N.J. Super. Ct.) |
| *In re Forefront Data Breach Litigation,* Case No. 1:21-cv-00887-LA (E.D. Wis.) |
| *Stewart, et al. v. Albertsons Cos., Inc.,* Case No. 16CV15125 (Mult. Cty. Cir. Ct.) |
| *Simmons v. Assistcare Home Health Services, LLC, d/b/a Preferred Home Health Care of New York/Preferred Gold,* Case No. 511490/2021 (N.Y. Sup. Ct. Kings Cnty.) |
| *Terry Fabricant v. Top Flite Financial, Inc.,* Case No. 20STCV13837 (Cal. Super.) |
| *Riley v. Centerstone of America,* Case No. 3:22-cv-00662 (M.D. Tenn.) |
| *Bae v. Pacific City Bank,* Case, No. 21STCV45922 (Cal. Super.) |
| *Tucker v. Marietta Area Health Care Inc.,* Case No. 2:22-cv-00184 (S.D. Ohio) |
| *Acaley v. Vimeo.com, Inc,* Case No. 19-CH-10873 (Cir. Ct. Cook Cnty., Ill.) |
| *Easter v Sound Generations,* Case No. 21-2-16953-4 (Wash. Super.) |
| *GPM v City of Los Angeles,* Case No. 21STCV11054 (Cal. Super.) |
| *Pagan v. Faneuil, Inc,* Case No. 3:22-cv-297 (E.D. Va.) |
| *Estes v. Dean Innovations, Inc.,* Case No. 20-CV-22946 (Mult. Cty. Cir. Ct.) |
| *Buck, et al. v. Northwest Commercial Real Estate Investments, LLC, et al.,* Case No. 21-2-03929-1 (Wash. Super.) |
| *Gilmore, et al. v. Monsanto Company, et al.,* Case No. 3:21-cv-8159 (N.D. Cal.) |
| *Copley v. Bactolac Pharmaceutical, Inc., et al.,* Case No. 2:18-cv-00575 (E.D.N.Y.) |
| *James v. CohnReznick LLP,* Case No. 1:21-cv-06544 (S.D.N.Y.) |
| *Doe v. Virginia Mason,* Case No. 19-2-26674-1 (Wash. Super.) |
| *LaPrairie v. Presidio, Inc., et al,* Case No. 1:21-cv-08795 (S.D.N.Y.) |
| *Richardson v. Overlake Hospital Medical Center, et al.,* Case No. 20-2-07460-8 (Wash. Super.) |
| *Weidman, et al. v. Ford Motor Company,* Case No. 2:18-cv-12719 (E.D. Mich.) |
| *Siqueiros, et al. v. General Motors, LLC,* Case No. 3:16-cv-07244 (N.D. Cal.) |
| *Vaccaro v. Delta Drugs, II. Inc.,* Case No. 20STCV28871 (Cal. Super.) |
| *Hosch v. Drybar Holdings LLC,* Case No. 2021-CH-01976 (Cir. Ct. Cook Cnty., Ill. |
| *Davidson v. Healthgrades Operating Company, Inc.,* Case No. 21-cv-01250 (D. Colo.) |
| *Baldwin, et al. v. National Western Life Insurance Co.,* Case No. 2:21-cv-04066 (W.D. Mo.) |
| *Deien v. Seattle City Light,* Case No. 19-2-21999-8 (Wash. Super.) |
| *Blake Chapman, et al. v. voestalpine Texas, LLC, et al,* Case No. 2:17-cv-00174 (S.D. Tex.) |
| *Hanson v. Welch Foods Inc.,* Case No. 3:20-cv-02011 (N.D. Cal.) |
| *McMorrow v. Mondelez International, Inc.,* Case No. 3:17-cv-02327 (S.D. Cal.) |
| *Hadley, et al. v. Kellogg Sales Company,* Case No. 5:16-cv-04955 (N.D. Cal.) |
| *Miracle-Pond, et al. v. Shutterfly, Inc.,* Case No. 16-cv-10984 (Cir. Ct. Cook Cnty., Ill.) |
| *In Re: Sonic Corp. Customer Data Breach Litigation,* Case No. 1:17-md-02807 (N.D. Ohio) |
| *In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation,* Case No. 3:18-cv-00850 (E.D. Va.) |
| *Krommenhock, et al. v. Post Foods, LLC,* Case No. 3:16-cv-04958 (N.D. Cal.) |
| *Daley, et al. v. Greystar Management Services LP, et al.,* Case No. 2:18-cv-00381 (E.D. Wash.) |
| *Brianna Morris v. FPI Management Inc.,* Case No. 2:19-cv-0128 (E.D. Wash.) |



| |
|---|
| *Kirilose Mansour v. Bumble Trading Inc.,* Case No. RIC1810011 (Cal. Super.) |
| *Clopp et. al. v. Pacific Market Research, LLC et. al.,* Case No. 21-2-08738-4 (Wash. Super.) |
| *Lisa T. Leblanc, et al. v. Texas Brine Company, LLC, et al.,* Case No. 58410 (E.D. La.) |
| *Jackson-Battle v. Navicent Health, Inc.,* Case No. 2020-cv-072287 (Ga Super.) |
| *Fabricant v. Amerisave Mortgage Corp,* Case No. 2:19-cv-04659 (C.D. Cal.) |
| *Jammeh v. HNN Assoc.,* Case No. 2:19-cv-00620 (W.D. Wash.) |
| *Farruggio, et al. v. 918 James Receiver, LLC, et al.,* Case No. 3831/2017 (N.Y. Sup Ct) |
| *Winters, et al. v. Two Towns Ciderhouse Inc.,* Case No. 3:20-cv-00468 (S.D. Cal.) |
| *Siddle, et al. v. The Duracell Company,* et al, Case No. 4:19-cv-00568 (N.D. Cal.) |
| *Lisa Jones, et al. v. Monsanto Company,* Case No. 4:19-cv-00102 (W.D. Mo.) |
| *Makaron v. Enagic USA, Inc.,* Case No. 2:15-cv-05145 (C.D. Cal.) |
| *John Karpilovsky, et al. v. All Web Leads, Inc.,* Case No. 1:17-cv-01307 (N.D. Ill.) |
| *Hughes, et al. v. AutoZone Parts Inc., et al.,* Case No. BC631080 (Cal. Super.) |
| *Secaucus Investors LLC and Health Care Grower, LLC v. Harmoney Foundation of New Jersey, Inc., et al.,* Case No. BER-C-275-21 (N.J. Sup Ct.) |
| *Miller, et al. v. P.S.C., Inc. d/b/a Puget Sound Collections,* Case No. 3:17-cv-0586 (W.D. Wash.) |
| *Aaron Van Fleet, et al. v. Trion Worlds Inc.,* Case No. 535340 (Cal. Super.) |
| *Wilmington Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.),* Case No. 1:16-cv-11675 (N.D. Ill.) |
| *Deutsche Bank National Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.),* Case No. 1:16-cv-11675 (N.D. Ill.) |
| *Adriana Garcia, et al. v. Sun West Mortgage Company, Inc.,* Case No. BC652939 (Cal. Super.) |
| *Cajuns for Clean Water, LLC, et al. v. Cecilia Water Corporation, et al.,* Case No. 82253 (La. Dist.) |
| *In re: Sony PS3 "Other OS" Litigation,* Case No. 4:10-cv-01811 (N.D. Cal.) |
| *In re: Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation,* Case No. 3:12-cv-00169 (D.N.J.) |
| *In re: Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation,* Case No. 3:12-cv-00711  (D.N.J.) |
| *Hartig Drug Company Inc., v. Senju Pharmaceutical et. al.,* Case No. 1:14-cv-00719 (D. Del.) |
| *Gordon v. The Hain Celestial Group, et al.,* Case No. 1:16-cv-06526 (S.D.N.Y.) |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico – Economic and Property Damages Settlement,* MDL No. 2179 (E.D. La.) |
| *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico –Medical Benefits Settlement,* MDL No. 2179 (E.D. La.) |
| *In re: Google Inc. Cookie Placement Consumer Privacy Litigation,* MDL No. 2358 (D. Del.) |
| *In re: Pool Products Distribution Market Antitrust Litigation,* MDL No. 2128 (E.D. La.) |
| *In re: Polyurethane Foam Antitrust Litigation,* MDL No. 2196 (N.D. Ohio) |
| *In re: Processed Egg Products Antitrust Litigation,* MDL No. 2002 (E.D. Pa.) |
| *In re: The Flintkote Company and Flintkote Mines Limited,* Case No. 1:04-bk-11300 (Bankr. D. Del.) |
| *In re: Prograf (Tacrolimus) Antitrust Litigation,* MDL No. 2242 (D. Mass.) |
| *Markos v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01156 (N.D. Ga.) |
| *Cross v. Wells Fargo Bank, N.A.,* Case No. 1:15-cv-01270 (N.D. Ga.) |
| *Ferrick v. Spotify USA Inc.,* Case No. 1:16-cv-08412 (S.D.N.Y.) |
| *In re: Parmalat Securities Litigation,* MDL No. 1653 (S.D.N.Y.) |
| *Smith v. Floor and Décor Outlets of America, Inc.,* Case No. 1:15-cv-04316 (N.D. Ga.) |



| |
|---|
| *Schwartz v. Intimacy in New York, LLC,* Case No. 1:13-cv-05735 (S.D.N.Y.) |
| *In re: TRS Recovery Services, Inc., Fair Debt Collection Practices Act Litigation,* MDL No. 2426 (D. Me.) |
| *Young v. Wells Fargo & Co,* Case No. 4:08-cv-00507 (S.D. Iowa) |
| *In re: Credit Default Swaps Antitrust Litigation,* MDL No. 2476 (S.D.N.Y.) |
| *Anthony Frank Lasseter et. al. v. Rite-Aid,* Case No. 09-cv-2013-900031 (Ala. Cir. Ct.) |
| *Khoday v. Symantec Corp.,* Case No. 0:11-cv-00180 (D. Minn.) |
| *MacKinnon, Jr v. IMVU,* Case No. 1-11-cv-193767 (Cal. Super.) |
| *Ebarle, et al.. v. LifeLock, Inc.,* Case No. 3:15-cv-00258 (N.D. Cal.) |
| *Sanchez v. Kambousi Restaurant Partners ("Royal Coach Diner"),* Case No. 1:15-cv-05880 (S.D.N.Y.) |
| *Schwartz v. Avis Rent A Car System,* Case No. 2:11-cv-04052 (D.N.J.) |
| *Klein v. Budget Rent A Car System,* Case No. 2:12-cv-07300 (D.N.J.) |
| *Pietrantonio v. Kmart Corporation,* Case No. 15-5292 (Mass. Cmmw.) |
| *Cox, et al. v. Community Loans of America, Inc., et al.,* Case No. 4:11-cv-00177 (M.D. Ga.) |
| *Vodenichar. et al. v. Halcón Energy Properties, Inc., et al.,* Case No. 2013-512 (Pa. Com. Pleas) |
| *State of Oregon, ex. rel. Ellen F. Rosenblum, Attorney General v. AU Optronics Corporation, et al.,* Case No. 1208 10246 (Or. Cir.) |
| *Barr v. The Harvard Drug Group, LLC, d/b/a Expert-Med,* Case No. 0:13-cv-62019 (S.D. Fla.) |
| *Splater, et al. v. Thermal Ease Hydronic Systems, Inc., et al.,* Case No. 03-2-33553-3 (Wash. Super.) |
| *Phillips v. Bank of America,* Case No. 15-cv-00598 (Cal. Super.) |
| *Ziwczyn v. Regions Bank and American Security Insurance Co.,* Case No. 1:15-cv-24558 (S.D. Fla) |
| *Dorado vs. Bank of America, N.A.,* Case No. 1:16-cv-21147 (S.D. Fla) |
| *Glass v. Black Warrior Electric,* Case No. cv-2014-900163 (Ala. Cir.) |
| *Beck v. Harbor Freight Tools USA, Inc.,* Case No. 15-cv-00598 (Ohio Com. Pleas) |
| *Ligon v. City of New York, et al.,* Case No. 12-cv-2274 (S.D.N.Y.) |
| *Abdellahi, et al., vs. River Metals Recycling, LLC,* Case No. 13-CI00095 (Ky. Cir.) |
| *Alegre v. XPO Last Mile, Inc.,* Case No. 2:15-cv-02342 (D.N.J.) |
| *Jack Leach, et al. v. E.I. du Pont de Nemours and Co.,* Case No. 01-C-608 (W. Va. Cir.) |
| *Hayes, et al. v. Citizens Financial Group Inc., et al,* Case No. 1:16-cv-10671 (D. Mass.) |
| *In re: Foreign Exchange Benchmark Rates Antitrust Litigation,* Case No. 1:13-cv-07789 (S.D.N.Y.) |
| *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,* Case No. 2:13-cv-05693 (C.D. Cal.) |
| *Cozzitorto vs. American Automobile Association of Northern California, Nevada & Utah,* Case No. C13-02656 (Cal. Super.) |
| *Filannino-Restifo, et al. v. TD Bank, N.A.,* Case No. 0:18-cv-01159 (D.N.J.) |
| *United States v. Takata Corporation,* Case No. 2:16-cv-20810 (E.D. Mich.) |
| *Free Range Content, Inc. v. Google Inc.,* Case No. 5:14-cv-02329 (N.D. Cal.) |
| *Bautista v. Valero Marketing and Supply Company,* Case No. 3:15-cv-05557 (N.D. Cal.) |
| *Devin Forbes and Steve Lagace -and- Toyota Canada Inc.,* Case No. cv-16-70667 (Ont. Super. Ct.) |
| *Thierry Muraton -and- Toyota Canada Inc.,* Case No. 500-06-000825-162 (Que. Super. Ct.) |
| *In re: Residential Schools Class Action Litigation,* Case No. 00-cv-192059 (Ont. Super. Ct.) |
| *In re: Tricor Antitrust Litigation,* Case No. 05-340 (D. Del.) |
| *Masztal v. City of Miami,* Case No. 3D06-1259 (Fla. Dist. App.) |
| *In re: Tribune Company, et al.,* Case No. 08-13141 (D. Del.) |



| |
|---|
| *Marian Perez v. Tween Brands Inc.,* Case No. 14-cv-001119 (Ohio Com. Pleas) |
| *Ferguson v. Safeco,* Case No. DV 04-628B (Mont. Dist.) |
| *Williams v. Duke Energy,* Case No. 1:08-cv-00046 (S.D. Ohio) |
| *Boone v. City of Philadelphia,* Case No. 2:05-cv-01851 (E.D. Pa.) |
| *In re: Lehman Brothers Inc.,* Case No. 08-13555, 08-01420 (Bankr. S.D.N.Y.) |
| *In re: Department of Veterans Affairs (VA) Data Theft Litigation,* MDL No. 1796 (D.D.C.) |
| *In re: Countrywide Customer Data Breach Litigation,* MDL No. 1998 (W.D. Ky.) |
| *In re: Checking Account Overdraft Litigation,* MDL No. 2036  (S.D. Fla.) |
| *In re: Heartland Data Security Breach Litigation,* MDL No. 2046  (S.D. Tex.) |
| *Schulte v. Fifth Third Bank,* Case No. 1:09-cv-06655 (N.D. Ill.) |
| *Mathena v. Webster Bank, N.A.,* Case No. 3:10-cv-01448 (D. Conn.) |
| *Delandro v. County of Allegheny,* Case No. 2:06-cv-00927 (W.D. Pa.) |
| *Trombley v. National City Bank,* Case No. 1:10-cv-00232 (D.D.C.) |
| *Fontaine v. Attorney General of Canada,* Case No. 00-cv-192059 CP (Ont. Super. Ct.) |
| *Marolda v. Symantec Corp.,* Case No. 3:08-cv-05701 (N.D. Cal.) |



Exhibit B: CV of EAG Gulf Coast, LLC



# Class & Mass Action Settlement Administration

## Our Approach

EisnerAmper provides pre-settlement consulting and post-settlement administration services in connection with lawsuits pending in state and federal courts nationwide. Since 1999, EisnerAmper professionals have processed more than $14 billion dollars in settlement claims. Our innovative team successfully administers a wide variety of settlements, and our industry-leading technology enables us to develop customizable administration solutions for class and mass action litigations.

EisnerAmper professionals have processed more than $14 billion dollars in settlement claims.

**EISNERAMPER**

# Sample Case Experience*



## Environmental/Toxic Torts

- In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)
- Aqueous Film-Forming Foam (AFFF) Product Liability Litigation (MDL 2873) - Public Water System Settlement
- In re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)
- Sanchez et al v. Texas Brine, LLC et al.
- Burmaster et al. v. Plaquemines Parish Government, et al.
- Cajuns for Clean Water, LLC et al. v. Cecilia Water Corporation, et al.
- Cooper, et al. v. Louisiana Department of Public Works
- Maturin v. Bayou Teche Water Works
- Chevron Richmond Refinery Fire Settlement
- Chapman et al. v. voestalpine Texas LLC, et al.



## Consumer

- Jones et al. v. Monsanto Co.
- Hadley, et al. v. Kellogg Sales Co.
- McMorrow, et al. v. Mondelez International, Inc
- Krommenhock, et al. v. Post Foods, LLC
- Hanson v. Welch Foods Inc.
- Siddle et al. v. The Duracell Co. et al.
- Copley, et al. v. Bactolac Pharmaceutical, Inc.
- Hughes et al. v. AutoZone Parts Inc. et al.
- Winters v. Two Towns Ciderhouse, Inc.
- Burford et al. v. Cargill, Incorporated
- Fabricant v. AmeriSave Mortgage Corp. (TCPA)
- Makaron v. Enagic USA, Inc. (TCPA)
- Prescod et al. v. Celsius Holdings, Inc.
- Gilmore v. Monsanto Co.



## Antitrust

- In re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)[4]
- In re: Interior Molded Doors Antitrust Litigation (Indirect)



## Mass Torts

- In re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)[1]
- In re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)[1]
- In re: Paraquat Products Liability Litigation (MDL 3004)[1]
- In re: Paragard Products Liability Litigation (MDL 2974)
- In re: Roundup Products Liability Litigation (MDL 2741)[2]
- Essure Product Liability Settlement[3]
- Porter Ranch (JCCP 4861)



## Data Breach/Privacy

- Miracle-Pond, et al. v. Shutterfly
- Baldwin et al. v. National Western Life Insurance Co.
- Jackson-Battle, et al. v. Navicent Health, Inc.
- Bailey, et al. v. Grays Harbor County Public Hospital No. 2
- In re: Forefront Data Breach Litigation
- Easter et al. v. Sound Generations
- Rivera, et al. v. Google LLC
- Acaley v. Vimeo, Inc.



## Mass Arbitration

- T-Mobile
- Uber
- Postmates
- Instacart
- Intuit



## Other Notable Cases

- Brown, et al. v. State of New Jersey DOC (Civil Rights)
- Slade v. Progressive (Insurance)

*Work performed as Postlethwaite & Netterville, APAC (P&N)
[1]Services provided in cooperation with the Court-Appointed Special Master
[2]Appointed As Common Benefit Trustee
[3]Inventory Settlement

"EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC and its subsidiary entities provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC practice as an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed independent CPA firm that provides attest services to its clients, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services to their clients. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms. The entities falling under the EisnerAmper brand are independently owned and are not liable for the services provided by any other entity providing services under the EisnerAmper brand. Our use of the terms "our firm" and "we" and "us" and terms of similar import, denote the alternative practice structure conducted by EisnerAmper LLP and Eisner Advisory Group LLC.

**EISNERAMPER**

AUDIT · TAX · ADVISORY · OUTSOURCING
www.eisneramper.com



EAG Gulf Coast, LLC

# EAG Claims Administration Experience

## SAMPLE JUDICIAL COMMENTS

- ***Hezi v. Celsius Holdings, Inc.***, No. 1:21-CV-09892-VM (S.D.N.Y.), Judge Jennifer H. Rearden on April 5, 2023:

  *The Court finds and determines that the notice procedure carried out by Claims Administrator Postlethwaite & Netterville, APAC ("P&N") afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the responses of Class Members. The Court finds and determines that the Notice was the best notice practicable, and has satisfied the requirements of law and due process .*

- ***Scott Gilmore et al. v. Monsanto Company, et al.***, No. 3:21-CV-8159 (N.D. Cal.), Judge Vince Chhabria on March 31, 2023:

  *The Court finds that Class Notice has been disseminated to the Class in compliance with the Court's Preliminary Approval Order and the Notice Plan. The Court further finds that this provided the best notice to the Class practicable under the circumstances, fully satisfied due process, met the requirements of Rule 23 of the Federal Rules of Civil Procedure, and complied with all other applicable law.*

- ***John Doe et al. v. Katherine Shaw Bethea Hospital and KSB Medical Group, Inc.***, No. 2021L00026 (Fifteenth Judicial Circuit of Illinois, Lee County), on March 28, 2023:

  *The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***Sanders et al. v. Ibex Global Solutions, Inc. et al.***, No. 1:22-CV-00591 (D.D.C.), Judge Trevor N. McFadden on March 10, 2023:

  *An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

EAG Gulf Coast, LLC is a subsidiary of Eisner Advisory Group LLC. "EisnerAmper" is the brand name under which EisnerAmper LLP and Eisner Advisory Group LLC and its subsidiary entities provide professional services. EisnerAmper LLP and Eisner Advisory Group LLC are independently owned firms that practice in an alternative practice structure in accordance with the AICPA Code of Professional Conduct and applicable law, regulations and professional standards. EisnerAmper LLP is a licensed CPA firm that provides attest services, and Eisner Advisory Group LLC and its subsidiary entities provide tax and business consulting services. Eisner Advisory Group LLC and its subsidiary entities are not licensed CPA firms.

- ***Vaccaro v. Super Care, Inc.,*** No. 20STCV03833 (Cal. Superior Court), Judge David S. Cunningham on March 10, 2023:

  *The Class Notice provided to the Settlement Class conforms with the requirements of California Code of Civil Procedure § 382, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The notice fully satisfied the requirements of Due Process.*

- ***Gonshorowski v. Spencer Gifts, LLC***,  No. ATL-L-000311-22 (N.J. Super. Ct.), Judge Danielle Walcoff on March 3, 2023:

  *The Court finds that the Notice issued to the Settlement Class, as ordered in the Amended Preliminary Approval Order, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with New Jersey Court Rules 4:32-2(b)(2) and (e)(1)(B) and due process.*

- ***Vaccaro v. Delta Drugs II, Inc.,*** No. 20STCV28871 (Cal. Superior Court), Judge Elihu M. Berle on March 2, 2023:

  *The Class Notice provided to the Settlement Class conforms with the requirements of California Code of Civil Procedure § 382, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Class Members. The notice fully satisfied the requirements of Due Process.*

- ***Pagan, et al. v. Faneuil, Inc.***, No. 3:22-CV-297 (E.D. Va), Judge Robert E. Payne on February 16, 2023:

  *The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order, was the best notice practicable under the circumstances, was reasonably calculated to provide and did provide due and sufficient notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and their right to object and to appear at the final approval hearing or to exclude themselves from the Settlement Agreement, and satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and other applicable law.*



- ***LaPrairie v. Presidio, Inc., et al.***, No. 1:21-CV-08795-JFK (S.D.N.Y.), Judge Andrew L. Carter, Jr. on December 12, 2022:

    *The Court hereby fully, finally and unconditionally approves the Settlement embodied in the Settlement Agreement as being a fair, reasonable and adequate settlement and compromise of the claims asserted in the Action. The Class Members have been given proper and adequate notice of the Settlement, fairness hearing, Class Counsel's application for attorneys' fees, and the service award to the Settlement Class Representative. An affidavit or declaration of the Settlement Administrator's compliance with the Notice process has been filed with the Court. The Notice process as set forth in the Settlement Agreement and ordered in the Preliminary Approval Order constitutes the best notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Class Members in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Nelson v. Bansley & Kiener, LLP***, No. 2021-CH-06274 (Circuit Court of Cook County, IL), Judge Sophia H. Hall on November 30, 2022:

    *The court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with requirements of 735 ILCS 5/2-801, et seq.*

- ***Buck, et al. v. Northwest Commercial Real Estate Investments, LLC, et al***, No. 21-2-03929-1-SEA (Superior Court King County, WA), Judge Douglass A. North on September 30, 2022:

    *Pursuant to the Court's Preliminary Approval Order, Postcard Notice was distributed to the Class by First Class mail and Email Notice was distributed to all Class Members for whom the Settlement Administrator had a valid email address. The Court hereby finds and concludes that Postcard and Email Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement and in compliance with the Court's Preliminary Approval Order. The Court further finds and concludes that the Postcard and Email Notice, and the distribution procedures set forth in the Settlement fully satisfy CR 23(c)(2) and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all members of the Class who could be identified through reasonable effort, provided an opportunity for the Class Members to object or exclude themselves from the Settlement, and support the Court's exercise of jurisdiction over the Settlement Class Members as contemplated in the Settlement and this Final Approval Order.*



- ***Rivera, et al. v. Google LLC,*** No. 2019-CH-00990 (Circuit Court of Cook County, IL), Judge Anna M. Loftus on September 28, 2022:

  *Pursuant to this Court's Order granting preliminary approval of the Settlement, Postlethwaite & Netterville, APAC ("P&N") served as Settlement Administrator. This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement.*

  *The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***Davonna James, individually and on behalf of all others similarly situated v. CohnReznick LLP***, No. 1:21-cv-06544 (S.D.N.Y.), Judge Lewis J. Liman on September 21, 2022:

  *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Patricia Davidson, et al. v. Healthgrades Operating Company, Inc.***, No. 21-cv-01250-RBJ (D. Colo), Judge R. Brooke Jackson on August 22, 2022:

  *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2).*

- ***Hosch et al. v. Drybar Holdings LLC,*** No. 2021-CH-01976 (Circuit Court of Cook County, IL), Judge Pamela M. Meyerson on June 27, 2022:

  *The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed*



*Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- ***Baldwin et al. v. National Western Life Insurance Company,*** No. 2:21-cv-04066-WJE (W.D. MO), Judge Willie J. Epps, Jr. on June 16, 2022:

    *The Court finds that such Notice as therein ordered, constituted the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Rule 23(c)(2).*

- ***Chapman et al. v. voestalpine Texas Holding LLC,*** No. 2:17-cv-174 (S.D. Tex.), Judge Nelva Gonzales Ramos on June 15, 2022:

    *The Class and Collective Notice provided pursuant to the Agreement and the Order Granting Preliminary Approval of Class Settlement:*

    *(a) Constituted the best practicable notice, under the circumstances;*
    *(b) Constituted notice that was reasonably calculated to apprise the Class Members of the pendency of this lawsuit, their right to object or exclude themselves from the proposed settlement, and to appear at the Fairness Hearing;*
    *(c) Was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and*
    *(d) Met all applicable requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States Constitution because it stated in plain, easily understood language the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3).*

- ***Clopp et al. v. Pacific Market Research LLC,*** No. 21-2-08738-4 (Superior Court King County, WA), Judge Kristin Richardson on May 27, 2022:

    *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Washington Civil Rule 23(c)(2).*



- **Whitlock v. Christian Homes, Inc., et al,** No. 2020L6 (Circuit Court of Logan County, IL), Judge Jonathan Wright on May 6, 2022:

    *The Court has determined that the Notice given to the Settlement Class Members, in accordance with the Preliminary Approval Order, fully and accurately informed Settlement Class Members of all material elements of the Settlement and constituted the best notice practicable under the circumstances, and fully satisfied the requirements of 735 ILCS 5/2-803, applicable law, and the Due Process Clauses of the U.S. Constitution and Illinois Constitution.*

- **Hanson v. Welch Foods Inc.,** No. 3:20-cv-02011-JCS (N.D. Cal.), Judge Joseph C. Spero on April 15, 2022:

    *The Class Notice and claims submission procedures set forth in Sections 5 and 9 of the Settlement Agreement, and the Notice Plan detailed in the Declaration of Brandon Schwartz filed on October 1, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- **Dein v. Seattle City Light,** No. 19-2-21999-8 SEA (Superior Court King County, WA), Judge Kristin Richardson on April 15, 2022:

    *The Court hereby finds and concludes that the notice was disseminated to Settlement Class Members in accordance with the terms set forth in the Settlement and in compliance with the Court's Preliminary Approval Order. The Court further finds and concludes that the notice fully satisfies CR 23(c)(2) and the requirements of due process, was the best notice practicable under the circumstances, provided individual notice to all members of the Class who could be identified through reasonable effort, and provided an opportunity for the Class Members to object to or exclude themselves from the Settlement.*

- **Frank v. Cannabis & Glass, LLC, et al,** No. 19-cv-00250 (E.D. Wash.), Judge Stanley A. Bastian on April 11, 2022:

    *Postlethwaite & Netterville, APAC, ("P&N"), the Settlement Administrator approved by the Court, completed the delivery of Class Notice according to the terms of the Agreement. The Class Text Message Notice given by the Settlement Administrator to the Settlement Class, which set forth the principal terms of the Agreement and other matters, was the best practicable notice under the circumstances, including*



**EAG Gulf Coast, LLC**

*individual notice to all Settlement Class Members who could be identified through reasonable effort.*

- ***McMorrow, et al. v. Mondelez International, Inc,*** No. 17-cv-02327 (S.D. Cal.), Judge Cynthia Bashant on April 8, 2022:

  *Notice was administered nationwide and achieved an overwhelmingly positive outcome, surpassing estimates from the Claims Administrator both in the predicted reach of the notice (72.94% as compared to 70%) as well as in participation from the class (80% more claims submitted than expected). (Schwartz Decl. ¶ 14, ECF No. 206-1; Final App. Mot. 3.) Only 46 potential Class Members submitted exclusions (Schwartz Decl. ¶ 21), and only one submitted an objection—however the objection opposes the distribution of fees and costs rather than the settlement itself. (Obj. 3.) The Court agrees with Plaintiffs that the strong claims rate, single fee-related objection, and low opt-out rate weigh in favor of final approval.*

- ***Daley, et al. v. Greystar Management Services LP, et al.,*** No. 2:18-cv-00381 (E.D. Wash.), Judge Salvador Mendoz, Jr. on February 1, 2022:

  *The Settlement Administrator completed the delivery of Class Notice according to the terms of the Agreement. The Class Notice given by the Settlement Administrator to the Settlement Class….was the best practicable notice under the circumstances. The Class Notice program….was reasonable and provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice. The Class Notice given to the Settlement Class Members satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of constitutional due process. The Class Notice was reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of this Action….*

- ***Mansour, et al. v. Bumble Trading, Inc.,*** No. RIC1810011 (Cal. Super.), Judge Sunshine Sykes on January 27, 2022:

  *The Court finds that the Class Notice and the manner of its dissemination constituted the best practicable notice under the circumstances and was reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class. The Court finds that the notice was reasonable, that it constituted due, adequate and sufficient notice to all persons entitled to receive notice, and that it met the requirements of due process, Rules of Court 3.766 and 3.769(f), and any other applicable laws.*



- ***Hadley, et al. v. Kellogg Sales Company,*** No. 16-cv-04955 (N.D. Cal.), Judge Lucy H. Koh on November 23, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement, and the Notice Plan filed on March 10, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Miracle-Pond, et al. v. Shutterfly, Inc.,*** No. 2019-CH-07050 (Circuit Court of Cook County, IL), Judge Raymond W. Mitchell on September 9, 2021:

  *This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement. The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.*

- ***Jackson-Battle, et al. v. Navicent Health, Inc.,*** No. 2020-CV-072287 (Ga Super.), Judge Jeffery O. Monroe on August 4, 2021:

  *The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of O.C.G.A. §§ 9-11-23(c)(2).*

- ***In re: Interior Molded Doors Indirect Purchasers Antitrust Litigation,*** No. 3:18-cv-00850 (E.D. Va.), Judge John A. Gibney on July 27, 2021:

  *The notice given to the Settlement Class of the settlement set forth in the Settlement Agreement and the other matters set forth herein was the best notice practicable*



*under the circumstances. Said notice provided due and adequate notice of the proceedings an of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons and entities entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e) and the requirements of due process.*

- ***Krommenhock, et al. v. Post Foods, LLC,*** No. 16-cv-04958 (N.D. Cal.), Judge William H. Orrick on June 25, 2021:

  *The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement and the Notice Plan filed on January 18, 2021 fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).*

- ***Winters, et al. v. Two Towns Ciderhouse, Inc,*** No. 20-cv-00468 (S.D. Cal.), Judge Cynthia Bashant on May 11, 2021:

  *The settlement administrator, Postlethwaite and Netterville, APAC ("P&N") completed notice as directed by the Court in its Order Granting Preliminary Approval of the Class Action Settlement. (Decl. of Brandon Schwartz Re: Notice Plan Implementation and Settlement Administration ("Schwartz Decl.") ¶¶ 4–14, ECF No. 24-5.)...Thus, the Court finds the Notice complies with due process....With respect to the reaction of the class, it appears the class members' response has been overwhelmingly positive.*

- ***Siddle, et al. v. The Duracell Company, et al.,*** No. 4:19-cv-00568 (N.D. Cal.), Judge James Donato on April 19, 2021:

  *The Court finds that the Class Notice and Claims Administration procedures set forth in the Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided due and sufficient individual notice to all persons in the Settlement Class who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Agreement and this Final Approval Order.*



- ***Fabricant v. Amerisave Mortgage Corporation***, No. 19-cv-04659-AB-AS (C.D. Cal.), Judge Andre Birotte, Jr. on November 25, 2020:

  *The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.*

- ***Snyder, et al. v. U.S. Bank, N.A., et al.,*** No. 1:16-CV-11675 (N.D. Ill), Judge Matthew F. Kennelly on June 18, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Settlement Class:*

  *a. The Class Notice was disseminated to persons in the Settlement Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order; b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Consolidated Litigation, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- ***Edward Makaron et al. v. Enagic USA, Inc.,*** No. 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson on January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*

  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably*



**EAG Gulf Coast, LLC**

*calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- ***Kimberly Miller et al. v. P.S.C, Inc., d/b/a Puget Sound Collections,*** No. 3:17-cv-05864 (W. D. Wash.), Judge Ronald B. Leighton on January 10, 2020:

  *The Court finds that the notice given to Class Members pursuant to the terms of the Agreement fully and accurately informed Class Members of all material elements of the settlement and constituted valid, sufficient, and due notice to all Class Members. The notice fully complied with due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law.*

- ***John Karpilovsky and Jimmie Criollo, Jr. et al. v. All Web Leads, Inc.,*** No. 1:17-cv-01307 (N.D. Ill), Judge Harry D. Leinenweber on August 8, 2019:

  *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

  *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*

- ***Paul Story v. Mammoth Mountain Ski Area, LLC,*** No. 2:14-cv-02422 (E.D. Cal.), Judge John A. Mendez on March 13, 2018:

  *The Court finds that the Settlement Administrator delivered the Class Notice to the Class following the procedures set forth in the Settlement Agreement; that the Class Notice and the procedures followed by the Settlement Administrator constituted the best notice practicable under the circumstances; and that the Class Notice and the procedures contemplated by the Settlement Agreement were in full compliance with the laws of the United States and the requirements of due process. These findings support final approval of the Settlement Agreement.*



**EAG Gulf Coast, LLC**

- ***John Burford, et al. v. Cargill, Incorporated,*** No. 05-0283 (W.D. La.), Judge S. Maurice Hicks, Jr. on November 8, 2012:

  *Considering the aforementioned Declarations of Carpenter and Mire as well as the additional arguments made in the Joint Motion and during the Fairness Hearing, the Court finds that the notice procedures employed in this case satisfied all of the Rule 23 requirements and due process.*

- ***In RE: FEMA Trailer Formaldehyde Product Liability Litigation,*** MDL No. 1873, (E.D La.), Judge Kurt D. Engelhardt on September 27, 2012:

  *After completing the necessary rigorous analysis, including careful consideration of Mr. Henderson's Declaration and Mr. Balhoff's Declaration, along with the Declaration of Justin I. Woods, the Court finds that the first-class mail notice to the List of Potential Class Members (or to their attorneys, if known by the PSC), Publication Notice and distribution of the notice in accordance with the Settlement Notice Plan, the terms of the Settlement Agreement, and this Court's Preliminary Approval Order:*

  *(a) constituted the best practicable notice to Class Members under the circumstances;*

  *(b) provided Class Members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to Class Members and all other persons wishing to be heard;*

  *(c) was reasonably calculated, under the circumstances, to apprise Class Members of: (i) the pendency of this proposed class action settlement, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of representation by Plaintiffs or the PSC, and/or the award of attorneys' fees), (iv) their right to appear at the Fairness Hearing - either on their own or through counsel hired at their own expense - if they did not exclude themselves from the Class, and (v) the binding effect of the Preliminary Approval Order and Final Order and Judgment in this action, whether favorable or unfavorable, on all persons who do not timely request exclusion from the Class;*

  *(d) was calculated to reach a large number of Class Members, and the prepared notice documents adequately informed Class Members of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs;*

  *(e) focused on the effective communication of information about the class action. The notices prepared were couched in plain and easily understood language and were written and designed to the highest communication standards;*



**EAG Gulf Coast, LLC**

(f)  afforded sufficient notice and time to Class Members to receive notice and decide whether to request exclusion or to object to the settlement.;

(g)  was reasonable and constituted due, adequate, effective, and sufficient notice to all persons entitled to be provided with notice; and

(h)  fully satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, including the Due Process Clause, and any other applicable law.



**EAG Gulf Coast, LLC**

## Exhibit C: Consumer Economic Loss Short Form Notice

**Consumer Economic Loss Class Action Settlement Summary Notice**

**If you are an individual who paid any amount of money for retail purchases of Valsartan medication manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018, you could receive a payment from a class action settlement.**

A Settlement has been reached in an economic loss class action lawsuit against Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively "Hetero Defendants"). The settlement is part of a larger lawsuit called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (MDL No. 2875) (the "Lawsuit") and is currently pending in the United States District Court for the District of New Jersey ("the Court"). The Settlement resolves claims that Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or Valsartan containing drugs ("VCDs") that were contaminated with a probable human carcinogen in the form of N-nitrosodimethylamine ("NDMA"), causing economic loss to the class. The Hetero Defendants have denied any wrongdoing, have denied that the amounts of NDMA or NDEA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses to the claims asserted on behalf of the Classes.

The Court has not decided whether the Hetero Defendants did anything wrong or whether the Plaintiffs' claims have merit. This Settlement of Valsartan economic loss claims does not include or affect any other claims against the Hetero Defendants or any other entity, including but not limited to medical monitoring and personal injury claims. Please read this notice carefully. Your legal rights are affected whether you act or don't act.

A federal court directed that this Notice be provided to you. The Court authorized and specifically required notice to be provided by email or text message, where available, or U.S. mail in certain limited circumstances.

**Who is Included?**

The Settlement Class includes all individuals and third-party-payors in the United States and its territories and possessions who paid any amount of money for retail purchases of Valsartan finished drug formulations utilizing Hetero Process III Valsartan active pharmaceutical ingredient ("API") which was sold between May 1, 2018 and July 31, 2018. A separate notice has been sent to third-party payors.

Detailed information regarding the Class and how to determine your eligibility is available on the Settlement Website www.ValsartanMedicationSettlement.com.

**What Does the Settlement Provide?**

Hetero Defendants will pay $11,365.489.80, which amount was established based on the total quantity of eligible Valsartan pills sold in the United States during the established period. The settlement funds will be available for distribution to the Settlement Class, after deduction of any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court. Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund and each valid Consumer member of the class shall generally receive no more than $40 for each 30-day supply purchased and no

more than a total of $120 per Consumer. However, a Consumer member of the class who can sufficiently document, through receipts or pharmacy records, a claim in excess of $40 for a 30-day supply paid in full by that Consumer, may receive a payment in excess of $40 for that 30-day supply without regard to the $40 or $120 caps. Full details, including limitations may be found at www.ValsartanMedicationSettlement.com.

**What Are My Rights And Options?**

**Submit a Claim:** To receive a Settlement payment, you must submit a Claim Form. You can submit your Claim online at the Settlement Website or download a paper form to mail in. If possible, include documents to support your claim. The Administrator may contact you for pharmacy proof if needed. Your Claim Form must be **submitted online or postmarked by [CLAIMS DEADLINE]**.

**Do Nothing:** If you do nothing, you will remain a part of the Class and Settlement. You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants about the issues in this case.

**Opt-Out:** Excluding yourself is the only way to keep your right to sue the Hetero Defendants over the claims in this case. You won't be bound by the Settlement, but you also won't receive any payment from it, if one is awarded. To opt-out, you must submit an exclusion request to the Settlement Administrator **postmarked or emailed and received no later than [EXCLUSION DEADLINE]**.

**Object:** If you do not like any part of the Settlement, you can object by writing to the Court. You cannot submit both an exclusion request and objection. To object, you must remain a Class Member. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this case. If you also wish to receive payment, you must submit a Claim Form. Your objection must be **postmarked no later than [OBJECTION DEADLINE]**.

Complete details about your rights, including detailed requirements to submit a Claim, exclude yourself/opt-out, and to object to the Settlement are available on the Settlement Website www.ValsartanMedicationSettlement.com.

**Do I have a lawyer in this case?** Yes, if you do not exclude yourself by opting out. The Court has appointed John R. Davis, Esq., Slack Davis Sanger LLP, Ruben Honik, Esq., Honik Law, and Conlee S. Whiteley, Esq., Kanner & Whiteley, LLP to represent the Consumer Economic Loss Class.

**Where can I get more information?** This is only a summary. For more information, visit the Settlement Website or call the number below.

PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.

| www.ValsartanMedicationSettlement.com | 1-866-875-9644 |

## Exhibit D: Proposed Text Message Notice

## Text Notice – Hetero Consumer Economic Loss

Proposed Text 1

U.S. FEDERAL COURT AUTHORIZED CLASS ACTION NOTICE

Our records indicate that you may have paid for Valsartan medication manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018. A class action lawsuit may affect your legal rights.

Visit the Court approved website https://ValsartanMedicationSettlement.com or call 1-866-875-9644 for more information.

Reply STOP to end.

Proposed Text 2

U.S. FEDERAL COURT AUTHORIZED CLASS ACTION NOTICE

Our records show you may have paid for Valsartan by Hetero between May 1, 2018, and July 31, 2018. A class action lawsuit may affect your rights.

Visit the Court approved website https://ValsartanMedicationSettlement.com or call 1-866-875-9644 for more information.

Reply STOP to end.

## Exhibit E: Consumer Postcard Notice

**Who Is Included?** The Settlement Class includes all individual and third-party payors in the United States and its territories and possessions who paid any amount of money for retail purchases of Valsartan finished dose formulations utilizing Hetero Process III Valsartan active pharmaceutical ingredient ("API") which was sold between May 1, 2018 and July 31, 2018. A separate notice has been sent to third-party payors.

**What Does the Settlement Provide?** Hetero Defendants will pay $11,365,489.80, which amount was established based on the total quantity of eligible Valsartan pills sold in the United States during the established period. The settlement funds will be available for distribution to the Settlement Class, after deduction of any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court. Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund and each valid Consumer member of the class shall generally receive no more than $40 for each 30-day supply purchased and no more than a total of $120 per Consumer. However, a Consumer member of the class who can sufficiently document, through receipts or pharmacy records, a claim in excess of $40 for a 30-day supply paid in full by that Consumer, may receive a payment in excess of $40 for that 30-day supply without regard to the $40 or $120 caps. Full details, including limitations may be found at www.ValsartanMedicationSettlement.com.

**What Are My Rights And Options? Submit a Claim:** To receive a Settlement payment, you must submit a Claim Form. You can submit your Claim online at the Settlement Website or download a paper form to mail in. If possible, include documents to support your claim. The Administrator may contact you for pharmacy proof if needed. Your Claim Form must be **submitted online or postmarked by [CLAIMS DEADLINE]**. **Do Nothing:** If you do nothing, you will remain a part of the Class and Settlement. You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants about the issues in this case. **Opt-Out:** Excluding yourself is the only way to keep your right to sue the Hetero Defendants over the claims in this case. You won't be bound by the Settlement, but you also won't receive any payment from it, if one is awarded. To opt-out, you must submit an exclusion request to the Settlement Administrator **postmarked or emailed and received no later than [EXCLUSION DEADLINE]**. **Object:** If you do not like any part of the Settlement, you can object by writing to the Court. You cannot submit both an exclusion request and objection. To object, you must remain a Class Member. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this case. If you also wish to receive payment, you must submit a Claim Form. Your objection must be **postmarked no later than [OBJECTION DEADLINE]**.

Complete details about your rights, including detailed requirements to submit a Claim, exclude yourself/opt-out, and to object to the Settlement are available on the Settlement Website www.ValsartanMedicationSettlement.com.

**Do I have a lawyer in this case?** Yes, if you do not exclude yourself by opting out. The Court has appointed John R. Davis, Esq., Slack Davis Sanger LLP, Ruben Honik, Esq., Honik Law, and Conlee S. Whiteley, Esq., Kanner & Whiteley, LLP to represent the Consumer Economic Loss Class.

**Where can I get more information?** This is only a summary. For more information, visit the Settlement Website or call the number below.
**PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.**

| www.ValsartanMedicationSettlement.com | 1-866-875-9644 |

**If you are an individual who paid any amount for retail purchases of Valsartan medication
manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018,
you could receive a payment from a class action settlement.**

A Settlement has been reached in an economic loss class action lawsuit against Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively "Hetero Defendants"). The settlement is part of a larger lawsuit called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (MDL No. 2875) (the "Lawsuit") and is currently pending in the United States District Court for the District of New Jersey ("the Court"). The Settlement resolves claims that Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or Valsartan containing drugs ("VCDs") that were contaminated with a probable human carcinogen in the form of N-nitrosodimethylamine ("NDMA"), causing economic loss to the class. The Hetero Defendants have denied any wrongdoing, have denied that the amounts of NDMA or NDEA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses to the claims asserted on behalf of the Classes.

The Court has not decided whether the Hetero Defendants did anything wrong or whether the Plaintiffs' claims have merit. This Settlement of Valsartan economic loss claims does not include or affect any other claims against the Hetero Defendants or any other entity, including but not limited to medical monitoring and personal injury claims. Please read this notice carefully. Your legal rights are affected whether you act or don't act.

A federal court directed that this Notice be provided to you. The Court authorized and specifically required notice to be provided by email or text message, where available, or U.S. mail in certain limited circumstances.

---

**Valsartan Settlement Administrator**
P.O. Box 3376
Baton Rouge, LA 70821

**ELECTRONIC SERVICE REQUESTED**

SETTLEMENT CLAIM ID [ID]
[FIRST NAME] [LAST NAME]
[ADDRESS]
[ADDRESS]
[CITY] [STATE] [ZIP]

PRESORTED
FIRST CLASS
U.S. POSTAGE
**PAID**
FPI



Postal Service: Do Not Mark or Cover Barcode

FE40

Exhibit F: Proposed Banner Notices



Proposed Digital Notice A



Proposed Digital Notice B



Proposed Digital Notice C



Proposed Digital Notice D

Exhibit G: TPP Short Form Notice

**Third Party Payor Class Action Settlement Summary Notice**

**If you are a third-party payor who paid any amount of money for retail purchases of Valsartan medication manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018, you could receive a payment from a class action settlement.**

A Settlement has been reached in an economic loss class action lawsuit against Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively "Hetero Defendants"). The settlement is part of a larger lawsuit called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (MDL No. 2875) (the "Lawsuit") and is currently pending in the United States District Court for the District of New Jersey ("the Court"). The Settlement resolves claims that Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or Valsartan containing drugs ("VCDs") that were contaminated with probable human carcinogens in the form of N-nitrosodimethylamine ("NDMA"), causing economic losses to the class. The Hetero Defendants have denied any wrongdoing, have denied that the amounts of NDMA or NDEA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses to the claims asserted on behalf of the Class.

The Court has not decided whether the Hetero Defendants did anything wrong or whether the Plaintiffs' claims have merit. This Settlement of Valsartan economic loss claims does not include or affect any other claims against the Hetero Defendants or any other entity, including but not limited to medical monitoring and personal injury claims. Please read this notice carefully. Your legal rights are affected whether you act or don't act.

A federal court directed that this Notice be provided to you. The Court authorized and specifically required notice to be provided by email or text message, where available, or U.S. mail in certain limited circumstances.

**Who is Included?**

The Settlement Class includes all third-party payors and consumers in the United States and its territories and possessions who paid any amount of money for retail purchases of Valsartan finished drug formulations utilizing Hetero Process III Valsartan active pharmaceutical ingredient ("API") which was sold between May 1, 2018 to July 31, 2018. A separate notice has been sent to consumers.

Detailed information regarding the Class is viewable at www.TPP.ValsartanMedicationSettlement.com.

**What Does the Settlement Provide?**

Hetero Defendants will pay $11,365,489.80, which amount was established based on the total quantity of eligible Valsartan pills sold in the United States during the established period. The settlement funds will be available for distribution to the Settlement Class, after deduction of any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court. Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund. After payment of the consumer claims, the remainder of the Fund shall be distributed to each valid TPP member of the class (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments. Full details may be found at www.TPP.ValsartanMedicationSettlement.com.

**What Are My Rights And Options?**

**Submit a Claim:** To receive a Settlement payment, you must submit a Claim Form. You can submit your Claim online at the Settlement Website or download a paper Claim Form to mail in. Claims must include supporting documentation. Assignees of third-party payors may directly submit claims to obtain settlement funds. Such assignee will be treated as if the third-party payor had directly submitted its claims as part of the claims administration process, and it will have the same rights as a third-party payor. Class members are limited to one claim per Class Member. Related companies such as corporate subsidiaries or affiliates may file claims either separately or combined. However, no more than one claim may be submitted for the same payments. Your Claim Form must be **submitted online or postmarked by [CLAIMS DEADLINE]**.

**Do Nothing:** If you do nothing, you will remain a part of the Class and Settlement. You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants about the issues in this case.

**Opt-Out:** Excluding yourself is the only way to keep your right to sue the Hetero Defendants over the claims in this case. You won't be bound by the Settlement, but you also won't receive any payment from it, if one is awarded. To opt-out, you must submit an exclusion request, along with proof of class member status or declaration under penalty of perjury, to the Settlement Administrator **postmarked or emailed and received no later than [EXCLUSION DEADLINE]**.

**Object:** If you do not like any part of the Settlement, you can object by writing to the Court. You cannot submit both an exclusion request and objection. To Object, you must remain a Class Member. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this case. If you also wish to receive payment from the Settlement, you must submit a Claim Form. Your objection must **be postmarked no later than [OBJECTION DEADLINE]**.

Complete details about how to submit a Claim, opt-out, and object are available at www.TPP.ValsartanMedicationSettlement.com.

**Do I have a lawyer in this case?** Yes, if you do not exclude yourself by opting out. The Court has appointed Gregory P. Hansel, Esq., Preti Flaherty Beliveau & Pachios, Chartered, LLP and Jorge A. Mestre, Esq., Rivero Mestre LLP to represent the TPP Class.

**Where can I get more information?** This is only a summary. For more information, visit the Settlement Website or call the number below.

**PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.**

| www.TPP.ValsartanMedicationSettlement.com | 1-866-875-9644 |

Exhibit H: Consumer Long Form Notice

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

**Consumer Economic Loss Class Action Settlement Notice – Hetero Settlement**

**If you are an individual who paid any amount of money for retail purchases of Valsartan medication manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018, you could receive a payment from a class action settlement.**

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in an economic loss class action lawsuit against Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively "Hetero Defendants"). The settlement is part of a larger lawsuit called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (MDL No. 2875) (the "Lawsuit") and is currently pending in the United States District Court for the District of New Jersey ("the Court"). This notice informs you of your legal rights and options.
- The Settlement resolves claims that Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or Valsartan containing drugs ("VCDs") that were contaminated with probable human carcinogens in the form of N-nitrosodimethylamine ("NDMA"), causing economic losses to the class.
- The Hetero Defendants have denied any wrongdoing, have denied that the amounts of NDMA or NDEA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses to the claims asserted on behalf of the Class.
- The Court has not decided whether the Hetero Defendants did anything wrong or whether the Plaintiffs' claims have merit. This Settlement of Valsartan economic loss claims does not include or affect any other claims against the Hetero Defendants or any other entity, including but not limited to medical monitoring and personal injury claims, nor does it include any claims related to Losartan or Irbesartan.
- Your legal rights are affected regardless of whether you act or do not act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | To receive a Settlement payment, you must submit a Claim Form. You can submit your Claim online at the Settlement website    www.ValsartanMedicationSettlement.com    or download a paper Claim Form and submit it by mail. Documentation should be submitted to support your claim, if possible. After you submit your claim, the Settlement Administrator may contact you for proof of purchase from your pharmacy, if needed to approve your claim. | **[CLAIM DEADLINE]** |
| **DO NOTHING** | If you do nothing, you will remain a part of the Class and Settlement.   You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants about the issues in this case. | **NO DEADLINE** |

| EXCLUDE YOURSELF FROM THE SETTLEMENT | Excluding yourself from the Settlement is the only option that allows you to pursue your own claims against one or more Hetero Defendants for the legal claims made in the Lawsuit. Choosing this option means you will not be bound by any future determination made in the Settlement; however, you will also not be eligible for a payment, if any are awarded. See question 12 for more information. | [EXCLUSION DEADLINE] |
|---|---|---|
| OBJECT TO THE SETTLEMENT | If you do not like any part of the Settlement, you may write to the Court and explain your objection.  You can not submit both an exclusion request and objection. You must remain a part of the Class to object. The Court will consider your objection at the Final Approval Hearing. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this case. If you also wish to receive payment from the Settlement, you must submit a Claim Form. See Question 15 for more information. | [OBJECTION DEADLINE] |

- These rights and options – and the deadlines to exercise them – are explained in this Notice.

## BASIC INFORMATION

**1.   What is this Notice about?**

A federal court directed that this Notice be provided to you because you have a right to know about this class action Settlement and about all of your rights and options. The Court also authorized and required the manner by which you received this Notice, and specifically required notice to be provided by email or text message, where available, or U.S. mail in certain limited circumstances. This Notice explains the Lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court presiding over this case is the United States District Court for the District of New Jersey ("the Court").  The Court is overseeing the class actions in the Lawsuit as part of a Multi-District Litigation ("MDL") called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875. The people and entities that filed the Lawsuit are called the "Plaintiffs" and the companies they sued are called the "Defendants." The settled part of the Lawsuit relates only to the Hetero Defendants' sale of Valsartan between May 1, 2018 and July 31, 2018, and does not involve Losartan or Irbesartan.

**2.   What is the Settlement about?**

The Settlement addresses claims that the Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or VCDs that were contaminated with probable human carcinogens in the form of NDMA. Hetero Defendants deny all allegations of fault, wrongdoing, or liability made in the Lawsuit,  have denied that the amounts of NDMA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses.

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

149864.00604/134998887v.2

21695137.1

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Class Representatives" or "Plaintiffs." Together, the people included in the class action are called a "class" or "class members." One court resolves a class action lawsuit for all class members, except for those who opt out of the class and litigation. The Plaintiffs and the Defendants are the Parties (the "Parties") in the Litigation.

In this Settlement, which resolves one part of the overall Lawsuit, the Class Representatives are Leland Gildner, Veronica Longwell, Peter O'Brien, Mark Hays, and James Childs ("Consumer Plaintiffs") and MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Insurance Trust ("MADA") ("TPP Plaintiffs"). In this Settlement, the Hetero Defendants are Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (defined herein to include their predecessors, successors, subsidiaries and affiliates and each of their past, present and future direct or indirect parent companies, subsidiaries, divisions and affiliates, joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers).

## WHO IS INCLUDED IN THE LAWSUIT?

### 4. Who is included in the Settlement Class?

You are a member of the Consumer Settlement Class if you are an individual in the United States and its territories and possessions who paid any amount of money for retail purchases of Valsartan finished drug formulations utilizing Hetero Process III Valsartan active pharmaceutical ingredient ("API") which was sold between May 1, 2018 to July 31, 2018.

### 5. Are there exceptions to being a Class Member?

Yes. Excluded from the Settlement Class are: (a) Hetero Defendants and affiliated entities and their employees, officers, directors, and agents; (b) Hetero Defendants' assigns, and successors; (c) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) Pharmacy Benefit Managers ("PBMs"); (e) Any judge or magistrate presiding over this action, and members of their families; (f) Plaintiffs' counsel of record; (g) Any personal injury plaintiff or claimant; and, (h) All persons who properly execute and file a timely request for exclusion from any Court-approved class.

### 6. How can I get help in determining if I am eligible?

If you need help in determining your eligibility, you can visit the Settlement Website at www.ValsartanMedicationSettlement.com and answer a few simple questions. You can also call 1-866-875-9644 or email info@ValsartanMedicationSettlement.com for more information.

## WHAT DOES THE SETTLEMENT PROVIDE?

### 7. What does the Settlement provide?

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

Page 3 of 9

149864.00604/134998887v.2

21695137.1

In consideration of the full and complete Release of all Released Claims against the Hetero Defendants, and the dismissal of the settled part of the Lawsuit with prejudice, the Hetero Defendants agree to provide the following consideration to the Settlement Class: Hetero Defendants will pay $11,365,489.80. The Hetero Defendants will also be responsible for all costs of settlement notice and administration.

The net Hetero Economic Loss Class Settlement fund ("the Fund") available for distribution to the Settlement Class, after deduction of any attorneys' fees, litigation expenses, and class representative service awards that may be ordered by the Court, shall be first allocated between consumers up to a maximum of 40% and remaining (expected 60%) to third-party payors (described in a separate notice); allocation to individual class members as follows:

> **For Consumers:** Each Class Member will receive payment from the funds based on the number of pills purchased, as indicated in their Claim Form and supporting documents, with payments calculated in increments of 30 pills. If a Class Member purchased quantities in increments other than 30 pills, such as 90 pill increments, the quantity will be converted into equivalent 30 pill increments for payment calculation purposes.

> Each valid Consumer member of the class shall generally receive from the Fund a distribution of no more than $40 for each 30-day supply purchased and no more than a total of $120 per Consumer. However, a Consumer member of the class who can sufficiently document, through receipts or pharmacy records, a claim in excess of $40 for a 30-day supply paid in full by that Consumer, may receive a payment in excess of $40 for that 30-day supply without regard to the $40 or $120 caps.

> Total payments to Consumers will be capped at 40% of the net Hetero Economic Loss Class Settlement fund. If the amount of payments to consumers would exceed this cap, the total consumer award shall be reduced on a pro rata basis based on the days' supply purchased by each consumer so that it will not exceed 40% of the Fund.

> After payment of the consumer claims as provided above, the remainder of the Fund shall be distributed to each valid TPP member of the class (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments.

## 8. How do I get a payment?

Consumer members of the Settlement Class shall submit claim forms documenting their purchases of Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court. The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims.

Documentation should be submitted to support your claim, if possible. Your claim will be reviewed by the Settlement Administrator to determine if sufficient information is provided to accept your claim or if additional documentation, such as proof of purchase from your pharmacy, is required. You may, if you so choose, provide documentation with your claim submission to prevent any possible delays in approving your claim.

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

149864.00604/134998887v.2

21695137.1

If you are an eligible Class Member, you must submit a Claim Form to receive a Settlement payment. You can submit your Claim online at the Settlement website www.ValsartanMedicationSettlement.com or download a paper Claim Form and submit it by mail. You may be required to submit supporting documentation. Your Claim Form must be **submitted online or postmarked by [CLAIMS DEADLINE]**.

### 9. When will I get my payment?

The Court will consider the fairness of the Settlement at the Final Approval Hearing scheduled for **Month Day, Year**. If the Court grants Final Approval, following the effective date described in the Settlement Agreement and any timeline defined in the Court's Final Approval Order, the Settlement Administrator will distribute payments. Please be patient, as this process can take some time.

## ADDITIONAL RIGHTS AND OPTIONS

### 10. What happens if I do nothing at all?

If you do nothing, you will remain a part of the Class and Settlement. You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants for economic losses related to the Hetero Defendants' Valsartan **Submitting a Claim Form is the only way to receive a payment from this Settlement.**

### 11. Can I opt-out of the Settlement?

Yes, you can choose to opt-out, or exclude yourself, from the Settlement. Choosing this option means you will not be bound by any future determination made in the Settlement; however, you will also not be eligible for a payment from this Settlement. This is the only option that allows you to pursue your own claims against one or more Hetero Defendants for claimed economic losses related to the Hetero Defendants' Valsartan.

### 12. How do I exclude myself?

If you want to keep your right, if any, to separately sue the Hetero Defendants for the claims that are addressed by the Settlement, you must take steps to exclude yourself from the Class and Lawsuit. This is called "opting out". The deadline for requesting exclusion from the Class and Lawsuit is **[EXCLUSION DEADLINE]**.

To exclude yourself, you must submit a written request for exclusion that includes the following information:

- Your full name, current address, and telephone number; and
- A statement specifically and unambiguously indicating your desire to be excluded from the Settlement Class and election to be excluded from any judgment entered pursuant to the settlement.

You will also be requested to provide information as to the identification of the at-issue valsartan you purchased, if available, however this is not a requirement for exclusion.

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

149864.00604/134998887v.2

A printable exclusion request form is available on the Settlement Website www.ValsartanMedicationSettlement.com. Your request for exclusion must be mailed to the address below so it is **postmarked or received no later than** <mark>**[EXCLUSION DEADLINE]**</mark>.

Hetero Settlement Administrator
ATTN: Exclusion Request
PO Box 3376
Baton Rouge, LA 70821

You may also email a scanned copy of your signed exclusion request form to info@ValsartanMedicationSettlement.com. You must download, print, complete, and sign the PDF exclusion form found on the Settlement Website to qualify for email submission of your exclusion request.

By electing to be excluded: (1) you will not share in any recovery that might be obtained by the Class upon Final Approval of the Settlement; (2) you will not be bound by any decision related to the Settlement that is either favorable to the Class or favorable to the Hetero Defendants; and (3) you may present any claims you have against the Hetero Defendants related to Valsartan through your own lawsuit.

Requests for exclusions shall be permitted on an individual basis only. Any purported "class-wide" opt-outs will be construed as being submitted only on behalf of the person who actually submitted the exclusion.

### 13. If I do not exclude myself, can I still sue the Hetero Defendants?

No. If you stay in the Settlement Class (i.e., do nothing or do not exclude yourself), you give up any right to separately sue or pursue claims against any of the Hetero Defendants for the claims released in this Settlement.

### 14. Can I object to the Settlement?

Yes, if you do not like any part of the Settlement, you may write to the Court and explain your objection. You cannot submit both an exclusion request and objection. You must remain a part of the Class to object. The Court will consider your objection at the Final Approval Hearing. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this Settlement. If you also wish to receive payment from the Settlement, you must submit a Claim Form.

### 15. How do I object to the Settlement?

The deadline for objecting to the Settlement is <mark>**[OBJECTION DEADLINE]**</mark>.

Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must, file any objection via the Court's electronic filing system, and if not filed via the Court's electronic system, must mail, postmarked by the date specified in the Preliminary Approval Order, the objection to the Court and also serve by first-class mail copies of the objection upon:

Clerk of the Court

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

21695137.1

United States District Court

District of New Jersey

Mitchell H. Cohen Building

& U.S. Courthouse

4th & Cooper Streets

Camden, New Jersey 08101

| Class Counsel for Consumer Class: | Class Counsel for TPP Class: | Counsel for Defendants: |
|---|---|---|
| John R. Davis<br>Slack Davis Sanger, LLP<br>6001 Bold Ruler Way #100<br>Austin, TX 78746<br><br>Ruben Honik<br>Honik Law<br>1515 Market Street, Ste. 110<br>Philadelphia, PA 19102<br><br>Conlee S. Whiteley<br>Kanner & Whiteley, LLC<br>701 Camp Street<br>New Orleans, LA 70130 | Gregory P. Hansel<br>Preti Flaherty Beliveau &<br>Pachios, Chartered, LLP<br>P.O. Box 9546<br>One City Center<br>Portland, ME 04112-9546<br><br>Jorge A. Mestre<br>Rivero Mestre LLP<br>2525 Ponce De Leon Blvd.<br>Ste. 1000<br>Miami, FL 33134 | Eric Abraham<br>Hill Wallack, LLP<br>21 Roszel Road<br>Princeton, New Jersey 08540<br><br>Terry M. Henry, Esq.<br>Blank Rome, LLP<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, Pennsylvania<br>19103<br><br>Andrew F. Albero<br>Lewis Brisbois<br>550 E. Swedesford Road, Suite<br>270<br>Wayne, PA 19087 |

Your objection must include:

- Your full name, current address, and telephone number;
- the identification of the at issue Valsartan purchased by you, the objector, including the NDC code(s), the date(s) of purchase, and the documentation supporting your purchase(s);
- a written statement that you have reviewed the Settlement Class definition and represent in good faith that you are a Settlement Class Member;
- a written statement of all grounds for the objection accompanied by any legal support for such objection sufficient to enable the parties to understand and respond to those specific objections;
- copies of any papers, briefs, or other documents upon which the objection is based and which are pertinent to the objection; and
- a list of all other objections submitted by you, the objector, and/or your counsel, to any class action settlements submitted in any state or federal court in the United States in the previous five (5) years, including the full case name with jurisdiction in which it was filed and the docket

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

149864.00604/134998887v.2
21695137.1

number. If you or your counsel has not objected to any other class action settlement in the United States in the previous five (5) years, you shall affirmatively so state in the objection

Objections shall be permitted on an individual basis only. Any purported "class-wide" objections will be construed as being submitted only on behalf of the person who actually submitted the objection.

### 16. If I object, can I still sue the Hetero Defendants?

No. To object, you must stay in the Settlement Class (i.e., do not exclude yourself) and therefore you give up any right to separately sue any of the Hetero Defendants for the claims released in this Settlement.

### 17. If I object, and the Court grants Final Approval of the Settlement, can I still get a payment?

Yes, but only if you also submit a Claim Form as described in Question 8 above.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

Yes, if you do not exclude yourself by opting out. The Court has appointed the following law firms to represent the Settlement Class.

Consumer Economic Loss Class Counsel

- John R. Davis, Slack Davis Sanger, LLP
- Ruben Honik, Honik Law
- Conlee Whiteley, Kanner & Whiteley, LLC

You will not be charged directly for their services. Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the settlement fund, plus reasonable costs and expenses related to the Hetero Valsartan economic loss litigation. Attorneys' Fees and Expenses shall be in addition to any Representative Plaintiffs' Service Awards that may be awarded by the Court from the settlement fund.

### 19. Can I have my own lawyer?

If you do not exclude yourself, you do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense and have them appear on your behalf in the Lawsuit.

## THE COURT PROCESS

### 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at TIME on Day, Month Date, Year at Courthouse. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

149864.00604/134998887v.2

21695137.1

requested by Class Counsel for attorneys' fees and expenses and the requested service awards for the Class Representatives.

**Note: The date and time of the Final Approval Hearing are subject to change by Court Order.  Any changes will be posted at the Settlement website, www.ValsartanMedicationSettlement.com.**

### 21. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in Question #15 and detailed in the Settlement Agreement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

### 22. May I speak at the hearing?

Subject to the approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Final Fairness Hearing to explain why the proposed settlement should not be approved as fair, reasonable, and adequate, or to object to any petitions for Attorneys' Fees, Expenses or Service Awards.

If you intend to appear at the Final Fairness Hearing, you must file with the Clerk of the Court and serve upon all counsel designated in Question 15 above a notice of intention to appear at the Fairness Hearing by the objection deadline as specified in the Preliminary Approval Order.  The notice of intention to appear must include copies of any papers, exhibits, or other evidence, and the identity of witnesses, that you or your counsel intends to present to the Court in connection with the Final Fairness Hearing.

## GET MORE INFORMATION

### 20. How do I get more information?

For more information about the Settlement, including assistance in determining whether you qualify as a Class Member, please visit the Settlement Website www.ValsartanMedicationSettlement.com. You may contact the Settlement Administrator by email at info@ValsartanMedicationSettlement.com, by phone at 1-866-875-9644 or by mail at:

> Hetero Settlement Administrator
> P.O. Box 3376
> Baton Rouge, LA 70821

**PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.**

Questions? Call 1-866-875-9644 or visit www.ValsartanMedicationSettlement.com

Page **9** of **9**

21695137.1

Exhibit I: TPP Long Form Notice

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

## Third Party Payor Class Action Settlement Notice – Hetero Settlement

**If you are a third-party payor who paid any amount of money for retail purchases of Valsartan medication manufactured by Hetero and distributed by Camber Pharmaceuticals from May 1, 2018 to July 31, 2018, you could receive a payment from a class action settlement.**

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in an economic loss class action lawsuit against Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (collectively "Hetero Defendants"). The settlement is part of a larger lawsuit called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875 (MDL No. 2875) (the "Lawsuit") and is currently pending in the United States District Court for the District of New Jersey ("the Court"). This notice informs you of your legal rights and options.
- The Settlement resolves claims that Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or Valsartan containing drugs ("VCDs") that were contaminated with probable human carcinogens in the form of N-nitrosodimethylamine ("NDMA"), causing economic losses to the class.
- The Hetero Defendants have denied any wrongdoing, have denied that the amounts of NDMA or NDEA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses to the claims asserted on behalf of the Class.
- The Court has not decided whether the Hetero Defendants did anything wrong or whether the Plaintiffs' claims have merit. This Settlement of Valsartan economic loss claims does not include or affect any other claims against the Hetero Defendants or any other entity, including but not limited to medical monitoring and personal injury claims, nor does it include any claims related to Losartan or Irbesartan.
- Your legal rights are affected regardless of whether you act or do not act. Please read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | | DEADLINE |
|---|---|---|
| SUBMIT A CLAIM | To receive a Settlement payment, you must submit a Claim Form. You can submit your Claim online at the Settlement website  www.TPP.ValsartanMedicationSettlement.com  or download a paper Claim Form and submit it by mail. You will be required to submit supporting documentation. Assignees of third-party payors may directly submit claims to obtain settlement funds. Such assignee will be treated as if the third-party payor had directly submitted its claims as part of the claims administration process, and it will have the same rights as a third-party payor. Class members are limited to one claim per Class Member. Related companies such as corporate subsidiaries or affiliates may file claims either separately or combined.  In no event shall more than one Class Member assert a claim for the same payments. | **[CLAIM DEADLINE]** |

| | | |
|---|---|---|
| **Do Nothing** | If you do nothing, you will remain a part of the Class and Settlement. You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants about the issues in this case. | **No Deadline** |
| **Exclude Yourself from the Settlement** | Excluding yourself from the Settlement is the only option that allows you to pursue your own claims against one or more Hetero Defendants for the legal claims made in the Lawsuit. Choosing this option means you will not be bound by any future determination made in the Settlement; however, you will also not be eligible for a payment, if any are awarded. See question 12 for more information. | **[Exclusion Deadline]** |
| **Object to the Settlement** | If you do not like any part of the Settlement, you may write to the Court and explain your objection. You can not submit both an exclusion request and objection. You must remain a part of the Class to object. The Court will consider your objection at the Final Approval Hearing. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this case. If you also wish to receive payment from the Settlement, you must submit a Claim Form. See Question 15 for more information. | **[Objection Deadline]** |

- These rights and options – and the deadlines to exercise them – are explained in this Notice.

## BASIC INFORMATION

**1.  What is this Notice about?**

A federal court directed that this Notice be provided to you because you have a right to know about this class action Settlement and about all of your rights and options. The Court also authorized and required the manner by which you received this Notice, and specifically required notice to be provided by email or text message, where available, or U.S. mail in certain limited circumstances. This Notice explains the Lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court presiding over this case is the United States District Court for the District of New Jersey ("the Court"). The Court is overseeing the class actions in the Lawsuit as part of a Multi-District Litigation ("MDL") called *In re: Valsartan, Losartan, and Irbesartan Products Liability Litigation*, Case No. 1:19-md-02875. The people and entities that filed the Lawsuit are called the "Plaintiffs" and the companies they sued are called the "Defendants." The settled part of the Lawsuit relates only to the Hetero Defendants' sale of Valsartan between May 1, 2018 and July 31, 2018, and does not involve Losartan or Irbesartan.

**2.  What is the Settlement about?**

The Settlement addresses claims that the Hetero Defendants violated state laws by manufacturing, distributing, selling and/or dispensing Valsartan or VCDs that were contaminated with probable human

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

carcinogens in the form of NDMA. Hetero Defendants deny all allegations of fault, wrongdoing, or liability made in the Lawsuit, have denied that the amounts of NDMA in the Valsartan and VCDs at issue were or could be carcinogenic, and have asserted various legal and factual defenses.

### 3.   What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Class Representatives" or "Plaintiffs." Together, the people included in the class action are called a "class" or "class members." One court resolves a class action lawsuit for all class members, except for those who opt out of the class and litigation. The Plaintiffs and the Defendants are the Parties (the "Parties") in the Litigation.

In this Settlement, which resolves one part of the overall Lawsuit, the Class Representatives are MSP Recovery Claims, Series LLC ("MSPRC") and Maine Automobile Dealers Insurance Trust ("MADA") ("TPP Plaintiffs") and Leland Gildner, Veronica Longwell, Peter O'Brien, Mark Hays, and James Childs ("Consumer Plaintiffs"). In this Settlement, the Hetero Defendants are Hetero Drugs, Ltd., Hetero Labs Ltd., Hetero USA, Inc., and Camber Pharmaceuticals, Inc. (defined herein to include their predecessors, successors, subsidiaries and affiliates and each of their past, present and future direct or indirect parent companies, subsidiaries, divisions and affiliates, joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers).

## WHO IS INCLUDED IN THE LAWSUIT?

### 4. Who is included in the Settlement Class?

You are a member of the Third Party Payor Settlement Class if you are a third-party payor in the United States and its territories and possessions who paid any amount of money for retail purchases of Valsartan finished drug formulations utilizing Hetero Process III Valsartan active pharmaceutical ingredient ("API") which was sold between May 1, 2018 to July 31, 2018.

### 5. Are there exceptions to being a Class Member?

Yes. Excluded from the Settlement Class are: (a) Hetero Defendants and affiliated entities and their employees, officers, directors, and agents; (b) Hetero Defendants' assigns, and successors; (c) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans; (d) Pharmacy Benefit Managers ("PBMs"); (e) Any judge or magistrate presiding over this action, and members of their families; (f) Plaintiffs' counsel of record; (g) Any personal injury plaintiff or claimant; and, (h) All persons who properly execute and file a timely request for exclusion from any Court-approved class.

### 6. How can I get help in determining if I am eligible?

If you need help in determining your eligibility, you can visit the Settlement Website at www.TPP.ValsartanMedicationSettlement.com and answer a few simple questions. You can also call 1-866-875-9644 or email info@ValsartanMedicationSettlement.com for more information.

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

149864.00604/134998882v.2

21695110.1

## WHAT DOES THE SETTLEMENT PROVIDE?

### 7. What does the Settlement provide?

In consideration of the full and complete Release of all Released Claims against the Hetero Defendants, and the dismissal of the settled part of the Lawsuit with prejudice, the Hetero Defendants agree to provide the following consideration to the Settlement Class: Hetero Defendants will pay $11,365,489.80. The Hetero Defendants will also be responsible for all costs of settlement notice and administration.

The net Hetero Economic Loss Class Settlement fund ("the Fund") available for distribution to the Settlement Class, after deduction of any attorneys' fees, litigation expenses, and class representative service awards that may be ordered by the Court, shall be first allocated between consumers (described in a separate notice) up to a maximum of 40% and remaining (expected 60%) to third-party payors; allocation to individual class members as follows:

> **For Third-Party Payors:** After a determination of the total fund to be allocated to Third-Party Payors, each Third-Party Payor class member will receive their pro-rata share of the funds based on dollars paid as documented in claim forms, and supporting documents submitted.

### 8. How do I get a payment?

Third Party Payor members (including assignees of TPPs) of the Settlement Class shall submit claim forms documenting their (or their assignors') payments for Hetero Process III Valsartan as provided in the Settlement Agreement and approved by the Court. The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims. After payment of the consumer claims as provided above, the remainder of the Fund shall be distributed to each valid TPP member of the class (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments.

If you are an eligible Class Member, you must submit a Claim Form to receive a Settlement payment. You can submit your Claim online at the Settlement website www.TPP.ValsartanMedicationSettlement.com or download a paper Claim Form from the website and submit it by mail. You will be required to submit supporting documentation. Assignees of third-party payors may directly submit claims to obtain settlement funds. Such assignee will be treated as if the third-party payor had directly submitted its claims as part of the claims administration process, and it will have the same rights as a third-party payor. Class members are limited to one claim per Class Member. Related companies such as corporate subsidiaries or affiliates may file claims either separately or combined. In no event shall more than one Class Member assert a claim for the same payments. Your Claim Form must be **submitted online or postmarked by [CLAIMS DEADLINE]**.

### 9. When will I get my payment?

The Court will consider the fairness of the Settlement at the Final Approval Hearing scheduled for **Month Day, Year**. If the Court grants Final Approval, following the effective date described in the Settlement

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

149864.00604/134998882v.2

21695110.1

Agreement and any timeline defined in the Court's Final Approval Order, the Settlement Administrator will distribute payments.  Please be patient, as this process can take some time.

### ADDITIONAL RIGHTS AND OPTIONS

### 10. What happens if I do nothing at all?

If you do nothing, you will remain a part of the Class and Settlement.  You will receive no payment under the Settlement and you will give up your rights to sue the Hetero Defendants for economic losses related to the Hetero Defendants' Valsartan. **Submitting a Claim Form is the only way to receive a payment from this Settlement.**

### 11. Can I opt-out of the Settlement?

Yes, you can choose to opt-out, or exclude yourself, from the Settlement. Choosing this option means you will not be bound by any future determination made in the Settlement; however, you will also not be eligible for a payment from this Settlement. This is the only option that allows you to pursue your own claims against one or more Hetero Defendants for claimed economic losses related to the Hetero Defendants' Valsartan.

### 12. How do I exclude myself?

If you want to keep your right, if any, to separately sue the Hetero Defendants for the claims that are addressed by this Settlement, you must take steps to exclude yourself from the Class and Lawsuit. This is called "opting out". The deadline for requesting exclusion from the Class and Lawsuit is **[EXCLUSION DEADLINE]**.

To exclude yourself, you must submit a written request for exclusion that includes the following information:

- Your full name, current address, and telephone number;
- the identification of the at issue valsartan purchased by the Settlement Class Member, the amount of valsartan purchased by the Settlement Class Member, the price paid for the valsartan, and the date(s) of purchase; and
- A statement specifically and unambiguously indicating your desire to be excluded from the Settlement Class and election to be excluded from any judgment entered pursuant to the settlement.

You will also be asked to provide information as to whether the TPP has a filed case and if so, provide the state and docket number and if not, whether or not the TPP intends to file a case in the future.

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

Page **5** of **9**

A printable exclusion request form is available on the Settlement Website www.TPP.ValsartanMedicationSettlement.com. Your request for exclusion must be mailed to the address below so it is **postmarked or received no later than [EXCLUSION DEADLINE]**.

Hetero Settlement Administrator

ATTN: Exclusion Request

PO Box 3376

Baton Rouge, LA 70821

You may also email a scanned copy of your signed exclusion request form to info@ValsartanMedicationSettlement.com. You must download, print, complete, and sign the PDF exclusion form found on the Settlement Website to qualify for email submission of your exclusion request. You must include your documentation of purchase or declaration regarding your inability to provide documentation with your exclusion form submission.

By electing to be excluded: (1) you will not share in any recovery that might be obtained by the Class upon Final Approval of the Settlement; (2) you will not be bound by any decision related to the Settlement that is either favorable to the Class or favorable to the Hetero Defendants; and (3) you may present any claims you have against the Hetero Defendants related to Valsartan through your own lawsuit.

Requests for exclusions shall be permitted on an individual basis only. Any purported "class-wide" opt-outs will be construed as being submitted only on behalf of the person (defined herein to include a TPP entity) who actually submitted the exclusion.

### 13. If I do not exclude myself, can I still sue the Hetero Defendants?

No. If you stay in the Settlement Class (i.e., do nothing or do not exclude yourself), you give up any right to separately sue or pursue claims against any of the Hetero Defendants for the claims released in this Settlement.

### 14. Can I object to the Settlement?

Yes, if you do not like any part of the Settlement, you may write to the Court and explain your objection. You cannot submit both an exclusion request and objection. You must remain a part of the Class to object. The Court will consider your objection at the Final Approval Hearing. If the Court grants Final Approval over your objection, you will give up your rights to sue the Hetero Defendants about the issues in this Settlement. If you also wish to receive payment from the Settlement, you must submit a Claim Form.

### 15. How do I object to the Settlement?

The deadline for objecting to the Settlement is **[OBJECTION DEADLINE]**.

Any Settlement Class Member who intends to object to the fairness of the Settlement Agreement must, file any objection via the Court's electronic filing system, and if not filed via the Court's electronic system, must mail, postmarked by the date specified in the Preliminary Approval Order, the objection to the Court and also serve by first-class mail copies of the objection upon:

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

Page **6** of **9**

Clerk of the Court
United States District Court
District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

| Class Counsel for Consumer Class: | Class Counsel for TPP Class: | Counsel for Defendants: |
|---|---|---|
| John R. Davis<br>Slack Davis Sanger, LLP<br>6001 Bold Ruler Way #100<br>Austin, TX 78746<br><br>Ruben Honik<br>Honik Law<br>1515 Market Street, Ste. 110<br>Philadelphia, PA 19102<br><br>Conlee S. Whiteley<br>Kanner & Whiteley, LLC<br>701 Camp Street<br>New Orleans, LA 70130 | Gregory P. Hansel<br>Preti Flaherty Beliveau &<br>Pachios, Chartered, LLP<br>P.O. Box 9546<br>One City Center<br>Portland, ME 04112-9546<br><br>Jorge A. Mestre<br>Rivero Mestre LLP<br>2525 Ponce De Leon Blvd.<br>Ste. 1000<br>Miami, FL 33134 | Eric Abraham<br>Hill Wallack, LLP<br>21 Roszel Road<br>Princeton, New Jersey 08540<br><br>Terry M. Henry, Esq.<br>Blank Rome, LLP<br>One Logan Square<br>130 North 18th Street<br>Philadelphia, Pennsylvania<br>19103<br><br>Andrew F. Albero<br>Lewis Brisbois<br>550 E. Swedesford Road, Suite<br>270<br>Wayne, PA 19087 |

Your objection must include:

- Your full name, current address, and telephone number;
- the identification of the at issue Valsartan purchased by you, the objector, including the NDC code(s), the date(s) of purchase, and the documentation supporting your purchase(s);
- a written statement that you have reviewed the Settlement Class definition and represent in good faith that you are a Settlement Class Member;
- a written statement of all grounds for the objection accompanied by any legal support for such objection sufficient to enable the parties to understand and respond to those specific objections;
- copies of any papers, briefs, or other documents upon which the objection is based and which are pertinent to the objection; and
- a list of all other objections submitted by you, the objector, and/or your counsel, to any class action settlements submitted in any state or federal court in the United States in the previous five (5) years, including the full case name with jurisdiction in which it was filed and the docket

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

149864.00604/134998882v.2

21695110.1

number. If you or your counsel has not objected to any other class action settlement in the United States in the previous five (5) years, you shall affirmatively so state in the objection

Objections shall be permitted on an individual basis only. Any purported "class-wide" objections will be construed as being submitted only on behalf of the person (defined herein to include a TPP entity) who actually submitted the objection.

### 16. If I object, can I still sue the Hetero Defendants?

No. To object, you must stay in the Settlement Class (i.e., do not exclude yourself) and therefore you give up any right to separately sue any of the Hetero Defendants for the claims released in this Settlement.

### 17. If I object, and the Court grants Final Approval of the Settlement, can I still get a payment?

Yes, but only if you also submit a Claim Form as described in Question 8 above.

## THE LAWYERS REPRESENTING YOU

### 18. Do I have a lawyer in this case?

Yes, if you do not exclude yourself by opting out. The Court has appointed the following law firms to represent the Settlement Class.

Third-Party Payor Class Counsel

- Gregory P. Hansel, Esq., Preti Flaherty Beliveau & Pachios, Chartered, LLP
- Jorge A. Mestre, Esq., Rivero Mestre LLP

You will not be charged directly for their services. Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the settlement fund, plus reasonable costs and expenses related to the Hetero Valsartan economic loss litigation. Each party shall have the right of appeal to the extent the award is inconsistent with this Agreement. Attorneys' Fees and Expenses shall be in addition to any Representative Plaintiffs' Service Awards that may be awarded by the Court from the settlement fund.

### 19. Can I have my own lawyer?

If you do not exclude yourself, you do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense and have them appear on your behalf.

## THE COURT PROCESS

### 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at **TIME on Day, Month Date, Year at Courthouse**. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. At the hearing, the Court will hear any objections and

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

149864.00604/134998882v.2

arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the requested service awards for the Class Representatives.

**Note: The date and time of the Final Approval Hearing are subject to change by Court Order.  Any changes will be posted at the Settlement website, www.ValsartanMedicationSettlement.com.**

### 21. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in Question #15 and detailed in the Settlement Agreement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

### 22. May I speak at the hearing?

Subject to the approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Final Fairness Hearing to explain why the proposed settlement should not be approved as fair, reasonable, and adequate, or to object to any petitions for Attorneys' Fees, Expenses or Service Awards.

If you intend to appear at the Final Fairness Hearing, you must file with the Clerk of the Court and serve upon all counsel designated in Question 15 above a notice of intention to appear at the Fairness Hearing by the objection deadline as specified in the Preliminary Approval Order.  The notice of intention to appear must include copies of any papers, exhibits, or other evidence, and the identity of witnesses, that you or your counsel intends to present to the Court in connection with the Final Fairness Hearing.

## GET MORE INFORMATION

### 20. How do I get more information?

For more information about the Settlement, including assistance in determining whether you qualify as a Class Member, please visit the Settlement Website www.TPP.ValsartanMedicationSettlement.com. You may contact the Settlement Administrator by email at info@ValsartanMedicationSettlement.com, by phone at 1-866-875-9644 or by mail at:

Hetero Settlement Administrator
P.O. Box 3376
Baton Rouge, LA 70821

**PLEASE DO NOT WRITE OR CALL THE COURT OR THE CLERK'S OFFICE FOR INFORMATION.**

Questions? Call 1-866-875-9644 or visit www.TPP.ValsartanMedicationSettlement.com

21695110.1

Exhibit J: Data Management Practices and Security Protocols

# Data Management Practices and Security Protocols

www.EisnerAmper.com

## *Confidentiality is Paramount for Our Profession*

Confidentiality is of the utmost importance to our client relationships. At EisnerAmper, we are committed to keeping client data secure, which is why we have designed engagement tools and policies to help ensure information security and privacy.

EisnerAmper employs professionals that maintain numerous information technology and data security certifications as well as a Service Organization Control (SOC) services team that has substantial experience in performing SOC engagements for service organizations in a variety of industries. Our SOC services team includes personnel with specialized internal control training and backgrounds. Our professionals have completed the AICPA's SOC School and hold relevant industry certifications. Our professionals help ensure that service organizations receive the highest level of assurance over the effectiveness of their internal controls.



**EisnerAmper professionals maintain the following certifications related to information technology, data security, internal controls, and compliance:**

| | |
|---|---|
| **CISA (Certified Information Systems Auditor)** | CIA (Certified Internal Auditor) |
| **CISSP (Certified Info Systems Security Professional)** | CITP (Certified Information Technology Professional) |
| **CIPP/US (Certified Information Privacy Professional/United States)** | CRISC (Certified in Risk & Information Systems Control) |
| **CIPM (Certified Information Privacy Manager)** | Certified HITRUST Practitioner |
| **JNCIS (Juniper Networks Cert. Internet Specialist)** | VCP5 (VMware Certified Professional v5) |
| **RSA/CSE (Certified Security Engineer)** | VCP6 (VMware Certified Professional v6) |
| **Checkpoint Certified Security Admin** | MCITP (Microsoft Certified IT Professional) |
| **MCITP & MCSE - Messaging** | MCSE (Microsoft Certified System Engineer) |
| **CCSP (Cisco Certified Security Professional)** | CCVP (Cisco Certified Voice Professional) |
| **CCNA (Cisco Certified Network Associate)** | CCNP (Cisco Certified Network Professional) |
| **JNCIA (Juniper Networks Certified Associate)** | CCDA (Cisco Certified Design Associate) |

www.EisnerAmper.com

| MCNE (Master Certified Novell Engineer) | BCFP (Brocade Fiber Channel Professional) |
|---|---|
| BCSD (Brocade Certified SAN Designer) | EnCE (Encase Certified Forensic Examiner) |
| DOSD (Dell On Site Diagnostics) | AccessData Certified Forensic Examiner |

Our security processes follow industry accepted standards such as NIST, HITRUST, CIS Controls; any required elements from regulatory bodies/legislation such as AICPA, HIPAA, HITECH, FFIEC, CUNA, various state requirements; and vendor best practices (i.e. Microsoft, Cisco, VMWare, etc.)  We apply the same requirements delivered through our client engagements to our internal processes.  Our work product for client engagements have been reviewed, tested, and ultimately accepted by regulatory bodies and government entities such as OCR, FFIEC, and CUNA.

> *The EisnerAmper Team served as an expert in an Office for Civil Rights (OCR) investigation for a HIPAA breach at a large, national covered  entity.  OCR recognized the EisnerAmper Team as "HIPAA Experts" in their final report.*

**Overview of General Security Practices**

Eisner Advisory Group LLC, EisnerAmper LLP and all applicable subsidiaries maintain their network environment with a managed data center provider with locations exclusively in the U.S. The environment is protected at the perimeter with:

⚠ *Next-generation firewalls*

⚠ *DMZ*

⚠ *24/7 Intrusion Detection & Prevention services*

On the interior, activities are monitored with:

⚠ *Web Application Firewalls*

⚠ *Inbound/outbound Internet and Email filtering*

⚠ *Data Loss Prevention*

⚠ *Endpoint Detection & Response systems on every endpoint and server*

System patching and vulnerability remediation are fully automated. All internal data is encrypted using TLS 1.3 in transit and multi-factor-authentication is used for authentication. EisnerAmper



employees receive mandatory Information Security and Social Engineering training on an annual basis.

## Client Data Hosting & Security

We utilize data hosting and security services of DartPoints, who maintains certified data centers that adhere to the most rigid standards and meet compliance regulations like PCI, HIPAA, FINRA, Sarbanes-Oxley, and Gramm-Leach-Bliley.

   

DartPoints Operating Company, LLC. undergoes an annual System and Organizational Controls 2 (SOC 2), Type II exam covering the Security, Confidentiality, Availability, and Processing Integrity Trust Services Categories. EisnerAmper has reviewed the most recent independent auditor report and attest that the scope addressed the current SOC 2, Type II trust services criteria for the in scope categories and the audit opinion was unmodified ("clean" opinion), in all material respects. Based on EisnerAmper's ongoing vendor monitoring procedures, DartPoints SOC 2, Type II exams have consistently included an unmodified opinion.

## Web Application Firewall (WAF)

EisnerAmper utilizes Cloudflare's Web Application Firewall (WAF) to provide robust protection of websites by leveraging advanced threat intelligence and machine learning. Cloudflare blocks the latest attacks, including zero-day exploits, by processing millions of HTTP requests per second. The WAF uses managed and custom rulesets to prevent common threats like SQL injection, cross-site scripting, and credential stuffing. Additionally, you can define challenges or block certain traffic based on the IP address's geographical location. With fast deployment and easy management, Cloudflare's WAF integrates seamlessly with the firm's other security measures.



www.EisnerAmper.com

**Two-Factor Authentication**

Our proprietary claims management applications utilize two-factor authentication provided by Duo Security (https://duo.com) for all system users. As described by Duo, *"two-factor authentication adds a second layer of security to your online accounts. Verifying your identity using a second factor (like your mobile phone or other mobile device) prevents anyone but you from logging in, even if they know your password."*



**Mass Data Transmission Through Secure Web Portal**

In our efforts to use technology to make our client relationships more effective and efficient, EisnerAmper can establish a secure web portal for data transfer on an as-needed basis. Simply put, a secure web portal is a password protected area on our servers that allows users to securely transfer and retrieve information. When transferring a large volume of documents, using a secure web portal is a more efficient practice than traditional methods.

**Limited Access to Information and Data Encryption**

EisnerAmper makes every reasonable effort to limit access to the minimum necessary to accomplish the intended purpose of the use, disclosure, or request of information resources. Data is protected in transit using TSL 1.3. To further enhance the security of sensitive data at rest, EisnerAmper employs advanced techniques such as column-level encryption and symmetric key encryption. Column-level encryption allows specific columns within a database to be encrypted, ensuring that even if unauthorized access occurs, the sensitive data remains unreadable without the appropriate decryption keys. Symmetric key encryption, on the other hand, uses a single key to both encrypt and decrypt data, providing a fast and efficient method to secure sensitive information. This method ensures that only authorized parties with the correct key can access the data, adding an additional layer of security to protect personal identifiable information (PII), and other sensitive data.

**Employee Security Protocols Training and Testing**

All firm employees are required to complete annual security awareness training. This is a web-based interactive training using common traps, live demonstration videos, short tests and the new scenario-based Danger Zone exercises. The training specializes in making sure employees understand the importance of protecting information like PII and mechanisms of spam, phishing, spear phishing, malware, ransomware and social engineering, and are able to apply this knowledge in their day-to-day jobs.

**Insurance and Limitations of Liability**

EisnerAmper maintains insurance coverages appropriate for its size and industry, including cyber and professional liability insurance. More detailed information will be provided on request.


www.EisnerAmper.com

EisnerAmper standard contract language limits liability to the fees paid for the service of work product giving rise to liability. Such limitation does not apply where damages are judicially determined to have been caused by EA's gross negligence or willful misconduct.

## Quality Control

Our claims administration teams include professionals trained and certified in, among others, the following areas: project management (PMP), accounting (CPA), internal controls and risk (CIA), information systems controls (CISA), fraud examination (CFE), information systems security (CISSP), and legal analysis (JD).

Our project initiation phase includes an identification of critical focus areas and implementation of a plan that covers the following key components of quality control in the context of claims administration service delivery.

**Resource Consistency & Training:** Because we maintain a large, diverse professional workforce, our team is scalable without the need for temporary employees for every major project. This organic scalability is important in terms of retained process knowledge as well as consistency of execution and deliverables.

**Data Validation:** EA implements proactive data validation measures into our online claims platform to minimize claim deficiencies, duplication, and anomalies that require dedication of resources and expenses throughout the claims process.

**Segregation of Duties:** Segregation of duties is important for risk mitigation and internal control – particularly in the accounting function for large fund projects. The diversity and scalability of our workforce would allow each high risk component of the claims life cycle to be performed by a team member that specializes in the relevant professional area (rather than a single project manager or assigned resource).

**Technology & Software Analysis Tools:** EA utilizes various software tools to assist in the execution of quality control procedures and identification of suspicious activity.  Our systems include "fuzzy" matching logic which allows us to detect and address duplicate claim submissions. We also maintain service subscriptions for technology programs that allow us to research potential fraudulent claim submissions and enables us to report our findings to the parties and Court as appropriate.

**Internal Controls:** For high risk projects and data sets, our team is able to utilize our Certified Internal Audit (CIA) and other control and risk advisory professionals to design data management and processing protocols that ensure proper internal controls are established.



**Fraud, Waste, and Abuse Detection and Prevention**

We believe that effective claims administration protocols include fraud detection and prevention but also include mechanisms that combat waste and abuse from legitimate, non-fraudulent sources. EA uses a variety of techniques to prevent and deter fraud as well as monitor areas that are at high risk for wasteful and abusive claims activity. The following sections outline various methods that we employ to fight fraud, waste, and abuse (FWA) in our claims programs.

**Data Validation:** One mechanism that helps prevent abuse of the claims process, particularly in a claims process that requires minimal documentation (or no claim support), is to implement a maximum number of "units" that can be claimed without supporting documentation. Enforcing a process in which "high volume" claims follow a particular protocol allows us to easily identify high risk claims and implement particular audit or verification procedures focused on that subset of claim submissions.

It may also be reasonable to establish claim filing rules that help proactively prevent duplicative claim submissions. For example, it may be reasonable to limit claims to one-per-user or one-per-household basis. In this situation, the online claims filing platform may be programmed to reject the submission of claims if a previous claim exists that includes the same attributes such as email address, mailing address, or other information such as serial/model number, etc.

**Duplicate Claim Identification:** Of course, data validation methods are effective only to the extent that the claim submission rules do not become a barrier to participation. Therefore, it is also necessary to utilize techniques to ensure that duplicate claims are identified after they are submitted.

To meet this need, EA utilizes technology that includes "fuzzy" matching logic which allows us to detect and address duplicate claim submissions by going beyond exact matches and analyzing claims that have similar characteristics across a number of fields. For example, we may compare claims that have a combination of 90% commonality amongst the claimant name and 95% match for mailing address (and vice versa). Using these techniques across different claimant attributes has allowed us to identify thousands of duplicative claims that otherwise do not appear suspicious.

**Data Analytics:** Another method that helps to identify potential FWA activity is the use of data analysis. Our business intelligence professionals utilize custom reporting to identify anomalies in large claims datasets and assess those outliers. We utilize exception reporting to capture scenarios that exist within the data (but should not reasonably be possible) so that we can take appropriate corrective action as needed.

**Research Tools:** EA maintains service subscriptions for technology programs that allow us to research potential fraudulent claim submissions and enables us to either confirm the legitimacy

www.EisnerAmper.com

of claim information or document findings so that we can report to the parties and Court as appropriate.

The following examples illustrate our experiencing in employing fraud detection and prevention tools and processes in the class action settlement environment:

### CRT Antitrust Litigation

EA helped establish various thresholds for claims audit procedures as well as executed many different claims analysis processes to identify high risk or suspicious claims activity.

To date, EA's efforts have resulted in a recovery of over $100 Million in settlement fund value. We have achieved significant results related to (a) ineligible claim withdrawals, (b) duplicate claim identification, (c) adjustments resulting from completed claim audits, and (d) FWA procedures. The value of the recovery is determined by the total per-unit dollar value increase of all units which remain in the settlement program as a result of the claims review process.

### Deepwater Horizon Economic Claims Center (DHECC)

EA provided personnel to help create the fraud, waste and abuse (FWA) team for this program. This team managed and oversaw the investigative review process of potentially fraudulent Business Economic Loss and Seafood claims.

Engineering the Process – EA created the investigative work plans, consistency guidelines and a quality checklist to drive uniformity of each investigation. The guidelines documented standard language, management decisions, investigation requirements, scope and best practices.

### Predictive Analysis (Statistical Analysis Software, or SAS) – Our analysts recommended data points and metrics for predictive modeling and anomaly detection within the data analytics software used to automate the way in which potentially fraudulent claims were identified. Our team tested the weighted business rules used to score claims based on where they fell on a spectrum, which allowed for the prioritization of claims with a higher likelihood of fraud.

### Investigation & Reporting – EA's FWA team performed a thorough investigation of the financial records for claims identified by SAS in addition to internal and external referrals as having indicia of fraud. Investigations included review of documentation germane to claim, identification and investigation of red flags, and outreach to claimants or third parties, as necessary. The fraud team created a summary of fraud findings for each claim utilizing analysis and state and federal databases. Analysts prepared detailed court documents for appeals panelists in the event claimants appealed the initial findings, and circulated internal reports of possible organized fraud schemes.