# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO: *Gaston Roberts v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.,* Case No. 1:20-cv-00946-RMB-SAK | HON. RENÉE MARIE BUMB |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENSE EXPERT VICTORIA CHERNYAK, M.D., M.S.

NIGH GOLDENBERG RASO & VAUGHN, PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927

On the Brief:
C. Brett Vaughn, R.N., B.S.N, J.D.
Sam Hoefs, Esq.
Ashleigh Raso, Esq.
Stephanie Iken, Esq.
Kathryn Avila, Esq.

# **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    I.    Dr. Chernyak Did Not Follow LI-RADS Methodology..................................2

    II.   Dr. Chernyak's Tumor Volume Doubling Time Opinions Are Unreliable and Based on Artificial Intelligence (AI) Generated Results ..........................4

    III.  Dr. Chernyak Improperly Assumed Mr. Roberts Had Cirrhosis in 2016 ........8

CONCLUSION...............................................................................................................9

## INTRODUCTION

Defendants' attempt to keep Dr. Chernyak's unreliable opinions alive by asserting that "the reliability test is 'different' for rebuttal experts because 'the defense d[oes] not bear' the burden of disproving causation."[1] Defendants go on to note that Dr. Chernyak's opinions only need "good grounds" or "credible evidence" for them to be sufficiently reliable.[2] As discussed in Plaintiffs' opening brief and below, Dr. Chernyak lacks "good grounds" or "credible evidence" to give her opinions and should be fully excluded from testifying at trial.

Defendants' opposition claims that Plaintiff "does not actually challenge the bulk of Dr. Chernyak's report" and opinions and therefore "effectively concedes their admissibility."[3] This is untrue, as all of Dr. Chernyak's opinions are based on one or more of the following fatal flaws: (1) Improperly applied LI-RADs in order to claim Mr. Roberts' had an LR-3 lesion on his liver in 2016;[4] (2) AI generated results without knowledge of the formulas applied and based on improper assumptions;[5] (3) Improperly assumed Mr. Roberts was diagnosed with cirrhosis

---

[1] Opp'n at 8.
[2] Opp'n at 9-10, 18.
[3] Opp'n at 1-2.
[4] Essentially all of Defendants' arguments (and Dr. Chernyak's opinions) require the Court to allow Dr. Chernyak's opinion that Mr. Roberts had an LR-3 liver lesion. (Opp'n at 2-3, 6-9, 17-20).
[5] Opp'n at 20-23.

1

prior to being exposed to NDMA contaminated valsartan.[6] Therefore, Dr. Chernyak does not have "good grounds" or "credible evidence" to give any of her opinions. Furthermore, Dr. Chernyak's entire expert report is clearly conclusion-driven, rendering all of Dr. Chernyak's opinions unreliable.

## ARGUMENT

### I. Dr. Chernyak Did Not Follow LI-RADS Methodology

Most of Dr. Chernyak's opinions flow from her unreliable opinion that Mr. Roberts had an LR-3 liver lesion in 2016.[7] In coming to her opinion that Mr. Roberts' 2016 imaging showed an LR-3 liver lesion, Dr. Chernyak's methodology deviated from the mandatory criteria laid out by LI-RADS.[8] Defendants only briefly address this fatal methodological flaw in their opposition.[9] Defendants' arguments that Dr. Chernyak's application of LI-RADS was "well-grounded" belies Dr. Chernyak's testimony.

---

[6] Opp'n at 24-25.
[7] LR-3 lesion had 33% chance of being HCC. (Opp'n at 2, 17, 19; Ex. A - Chernyak Report at 5, 7, 9); LR-3 lesion had 60% chance of progressing to HCC with 48 months (Opp'n at 3, 17; Chernyak Report at 5, 9); LR-3 "means there is an intermediate probability of malignancy" (Opp'n at 6-7; Chernyak Report at 5); "it is possible that the LR-3 lesion progressed into the LR-5 lesion" (Opp'n at 7, 18; Chernyak Report at 6); "if the LR-3 lesion observed in April 2016 progressed into the LR-5 lesion observed in August 2018, the timing of that progress would be consistent with the normal observed progression of HCC." (Opp'n at 8, 20; Chernyak Report at 8); "20 percent of LR-3 observations progress to HCC." (Opp'n at 20).
[8] Pls.' Mot. at 12-13.
[9] Opp'n at 14-15.

2

> Q: if you don't have all the phases, you can't apply LI-RADS; correct?
> A: Correct.[10]
>
> \*\*\*\*\*
>
> Q: And for CT, what are the **required** images?
> A: Arterial phase, portal venous phase, and **delayed phase**.[11]
>
> \*\*\*\*\*
>
> Q: Do you have an opinion on which of the three is the most important phase?
> A: You need all three to make LI-RADS[12]
>
> \*\*\*\*\*
>
> Q: And the 2018 LI-RADS CORE lists a required image as the delayed phase; correct?
> A: It – yes.
> Q: And **you did not have a delayed phase with Mr. Roberts**; correct?
> A: **Correct**.[13]

Not only did Dr. Chernyak not follow LI-RADS methodology, but she also incorrectly thought that she followed LI-RAD methodology, testifying that Mr. Roberts' 2016 CT, "was done with appropriate required protocol with and without contrast with arterial phase, portal venous phase, **and delayed**."[14] Not following the methodology that Dr. Chernyak thought she was following further undermines the reliability of her LR-3 diagnosis.

Finally, allowing Dr. Chernyak to apply LI-RADS to Mr. Roberts' 2016 CT would be allowing an expert to selectively apply their methodology. When questioned if she applied LI-RADS to Mr. Roberts' 2018 CT, Dr. Chernyak testified,

---

[10] Ex. B - Chernyak Dep at 67:11-14.
[11] Ex. B - Chernyak Dep. 171:14-22; 251:9-11 (emphasis added).
[12] Ex. B - Chernyak Dep. 174:16-20.
[13] Ex. B - Chernyak Dep. 270:1-7 (emphasis added).
[14] Ex. B - Chernyak Dep. 49:6-11 (emphasis added).

"**it was not done with multiphase protocol**, so it's not – you can't apply LI-RADS to that, so- -".[15] The core of what makes a reliable methodology is a consistent and dependable process. Selectively applying criteria is not only the antithesis of a reliable methodology, it is clear evidence of a conclusion-driven opinion. Dr. Chernyak should be precluded from opining that Mr. Roberts had a LI-RADS LR-3 liver lesion in 2016, and all opinions that flow from her opinion that Mr. Roberts had an LR-3 liver lesion.

II. **Dr. Chernyak's Tumor Volume Doubling Time Opinions Are Unreliable and Based on Artificial Intelligence (AI) Generated Results**

Dr. Chernyak also offers opinions related to tumor volume doubling times (TVDT). As a preliminary matter, it is important to recognize that Dr. Chernyak's tumor volume doubling time opinion necessitates that Dr. Chernyak is permitted to opine that Mr. Roberts had an LR-3 lesion in 2016.[16] Additionally, Defendants incorrectly accuse Plaintiffs of misrepresenting Dr. Chernyak's testimony when noting that Dr. Chernyak conceded that her "experience with – you know, with longitudinal untreated HCC growth is limited",[17] because Dr. Chernyak continued, testifying, "**just like it is limited for anybody**, because again, we don't follow these

---

[15] Ex. B - Chernyak Dep. 66:24-67:14 (emphasis added).
[16] "**if the LR-3 lesion** observed in April 2016 progressed into the LR-5 lesion observed in August 2018, the timing of that progress would be consistent with the normal observed progression of HCC." (Chernyak Report at 8, emphasis added).
[17] Pls.' Mot. at 23.

4

patients."[18]  Defendants go on, noting Dr. Chernyak also testified that "there's [a] dearth of data" regarding the growth curve of liver cancer.[19]  Defendants are just further supporting one of Plaintiffs' arguments – tumor volume doubling times in general are unreliable.

Setting aside the general unreliability of tumor volume doubling times, Dr. Chernyak did not follow a reliable (or any) methodology in coming to her tumor volume doubling time opinions.  Instead, Dr. Chernyak relied on ChatGPT (AI) to apply an unknown formula to spit out Dr. Chernyak's desired result.  Dr. Chernyak told ChatGPT to assume the "tumor volume doubling time is three months. Initial size is .5 centimeters. How long will it take to grow to this 5.8 centimeter".[20]  Dr. Chernyak admitted that she is not capable of performing the calculation performed by ChatGPT.[21]  Any lay person could do exactly what Dr. Chernyak did – an expert is not required.  Defendants are attempting to offer Dr. Chernyak as an impermissible conduit for opinions generated by ChatGPT.

Defendants attempt to keep Dr. Chernyak's tumor volume doubling time opinions alive by incorrectly claiming that "Dr. Chernyak merely used ChatGPT as a calculator".[22] Again, Defendants' argument belies Dr. Chernyak's testimony:

---

[18] Opp'n at 21.
[19] Opp'n at 21.
[20] Pls.' Mot. At 23; Ex. B - Chernyak Dep. 199:3-201:13.
[21] Ex. B - Chernyak Dep. 202:22-203:1.
[22] Opp'n at 22.

> Q: With ChatGPT, you didn't have to put the formula in; it decided the formula; correct?
> A: It showed me the formula as it – it showed me every step of the calculation so that it was transparent in how every step was applied and how it arrived, basically, at every step of the calculation.[23]
> *****
> Q: is there anywhere in your expert report that I can see the actual formula that ChatGPT applied?
> A: No. I didn't put that.[24]

Calculators don't automatically apply formulas. Dr. Chernyak did not merely utilize ChatGPT as a calculator, and therefore her opinions related to tumor volume doubling times should be excluded.

Defendants go on, even admitting that Dr. Chernyak used ChatGPT to obtain "step-by-step calculations."[25] And then perplexingly argue that "Plaintiff has not identified any errors in those calculations."[26] Of course Plaintiffs have not identified any errors in those calculations, as Dr. Chernyak did not include in her expert report the formulas or "step-by-step calculations" that ChatGPT applied to the cherry-picked set of facts that Dr. Chernyak told ChatGPT to assume.[27] This is precisely the issue – ChatGPT's methodology is hidden within a black box, preventing Plaintiffs from being able to adequately understand ChatGPT's methodology or identify errors and weaknesses in ChatGPT's calculations. Again, Dr. Chernyak

---

[23] Chernyak Dep. 266:8-16.
[24] Chernyak Dep. 267:2-5.
[25] Opp'n at 22.
[26] Opp'n at 22.
[27] Chernyak Dep 267:2-5; 199:3-201:13.

6

should be precluded from offering any opinions derived from ChatGPT's tumor volume doubling time calculations.

Finally, and what again clearly demonstrates that Dr. Chernyak's expert report is conclusion driven, is that Dr. Chernyak could not justify the facts that she told ChatGPT to assume – specifically, a tumor volume doubling time of 3 months.[28] Defendants do not address this argument anywhere in their opposition. Dr. Chernyak testified that she told ChatGPT to assume a 3-month tumor volume doubling time "because that's the median".[29] Dr. Chernyak appeared to understand what median meant, testifying "it's in the center, the value's in the center."[30] However, Dr. Chernyak's expert report notes "**2/3** of HCCs have tumor volume doubling time ("TVDT") of 3 months or longer."[31] In deposition Dr. Chernyak further confirmed that two-thirds of HCCs have a tumor volume doubling time of three months or longer, and that most HCCs take three months or longer to double in volume.[32] If two-thirds of tumors take three months or longer to double in size, three months can not be the median. When asked how she calculated the tumor volume doubling time median, Dr. Chernyak testified, "it's just data."[33] It's not just data, it's cherry-picked

---

[28] Pls.' Mot. at 20-23; Ex. B - Chernyak Dep. 184:19-22, 186:6-189:3.
[29] Ex. B - Chernyak Dep. 186:14-17.
[30] Ex. B - Chernyak Dep. 186:18-22.
[31] Ex. A - Chernyak Report at 8 (emphasis added).
[32] Ex. B - Chernyak Dep. 184:19-22, 186:6-13.
[33] Ex. B - Chernyak Dep. 187:24-188:2.

7

data so that Dr. Chernyak could arrive at the conclusions she wanted to arrive at. Dr. Chernyak's expert report and opinions are clearly conclusion-driven and therefore warrants full exclusion.

### III. Dr. Chernyak Improperly Assumed Mr. Roberts Had Cirrhosis in 2016

Defendants also seek to have Dr. Chernyak testify that cirrhosis was "the most likely cause" of Mr. Roberts' liver cancer.[34] Dr. Chernyak does not diagnose cirrhosis in practice[35] and Plaintiffs argued that Dr. Chernyak improperly assumed that Mr. Roberts had cirrhosis prior to ingesting NDMA-contaminated valsartan.[36] Defendants only response to Dr. Chernyak improperly assuming Mr. Roberts had cirrhosis is what has become a thematic misrepresentation by Defendants in nearly all of their recent briefing, Defendants again misleading assert, "Plaintiff's own experts agree that Mr. Roberts had cirrhosis as of April 2016, more than two years before he was ever exposed to valsartan potentially contaminated with NDMA."[37] Neither Plaintiff's own experts or treating physicians diagnosed Mr. Roberts with cirrhosis in 2016.[38] Dr. Siddiqui clearly notes in her expert report that she "would not have given him an actual diagnosis of cirrhosis" in 2016.[39] Furthermore, even

---

[34] Ex. A - Chernyak Report at 9.
[35] Ex. B - Chernyak Dep. 30:9-31:1.
[36] Pls.' Mot. at 24-25.
[37] Opp'n at 24.
[38] For a more detailed explanation, *See* Siddiqui Opp, ECF No. 3097 at 3-4, 10-13.
[39] Ex. C - Siddiqui Report at 30.

8

in 2018 after being diagnosed with liver cancer, Mr. Roberts' treating hepatologist noted that Mr. Roberts had "undergone extensive work up for cirrhosis" and that the "workup for cirrhosis is essentially negative."[40] Dr. Chernyak does not have "good grounds" to assume that Mr. Roberts had cirrhosis prior to ingesting NDMA-contaminated valsartan, much less "good grounds" to opine that cirrhosis was "the most likely cause" of his liver cancer. Allowing Dr. Chernyak's conclusion-driven and unreliable cancer causation opinion will only serve to confuse the jury.

## CONCLUSION

Dr. Chernyak does not have "good grounds" to offer any of the opinions within her expert report. Furthermore, Dr. Chernyak's opinions are clearly conclusion-driven as she selectively applies her methodology, can't justify key assumptions she made, and assumed facts counter to the record. For the foregoing reasons, and for the reasons detailed in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court fully exclude Dr. Chernyak from testifying at trial.

Dated: July 17, 2025                    Respectfully submitted,

                                        By: /s/ C. Brett Vaughn

                                        C. Brett Vaughn, RN, BSN, JD
                                        NIGH GOLDENBERG RASO &
                                        VAUGHN, PLLC

---

[40] Ex. D - GRobertsJr-PPR-000093.

*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927
Email: bvaughn@nighgoldenberg.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ C. Brett Vaughn*

C. Brett Vaughn, RN, BSN, JD
