# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875** |
| **THIS DOCUMENT RELATES TO:** *Gaston Roberts v. Zhejiang Huahai Pharmaceutical Co. Ltd.,* Case No. 1:20-cv-00946-RMB-SAK | **HON. RENÉE MARIE BUMB** |

## PLAINTIFF'S REPLY IN SUPPORT OF DAUBERT MOTION TO EXCLUDE DEFENSE EXPERT NADIM MAHMUD M.D., M.S., M.P.H., M.S.C.E

NIGH GOLDENBERG RASO & VAUGHN, PLLC

*Attorneys for Plaintiffs*

14 Ridge Square NW

Third Floor

Washington, D.C. 20016

Tel: 202-792-7927

Fax: 202-792-7927

On the Brief:
C. Brett Vaughn, R.N., B.S.N, J.D.
Sam Hoefs, Esq.
Ashleigh Raso, Esq.
Stephanie Iken, Esq.
Kathryn Avila, Esq.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

   I.   Dr. Mahmud Relied on Dr. Chernyak.................................................................2

   II.  Dr. Mahmud Did Not Know the FIB-4 Formula ...............................................4

   III. Not All Tumor Volume Doubling Time Projections Would Predict Mr. Roberts Had Liver Cancer Prior to Exposure to NDMA-Valsartan ................5

   IV. Dr. Mahmud Has No Basis to Opine that Mr. Roberts was at a Decreased Carcinogenic Risk from NDMA-Contaminated Valsartan.............................7

   V.  Dr. Mahmud Can Not Reliably Opine as to the Cause of Mr. Roberts' Liver Cancer ...................................................................................................7

CONCLUSION........................................................................................................9

## **INTRODUCTION**

Defendants claim that Plaintiffs "fail[ed] to challenge the core of Dr. Mahmud's opinions" and therefore "effectively conceded that his bottom-line testimony is admissible.[1] Dr. Mahmud's core, pre-determined opinion was that NDMA-contaminated valsartan couldn't have caused Mr. Roberts' liver cancer. Dr. Mahmud defended his predetermined conclusion by baselessly asserting that Mr. Roberts must have had liver cancer prior to consuming NDMA-contaminated valsartan. As detailed in Plaintiffs' initial brief, Dr. Mahmud's repeated conclusion-driven opinions render his entire expert report unreliable and warrants full exclusion. Defendants claim Dr. Mahmud is only a rebuttal expert that is critiquing Plaintiffs' experts' testimony, evidence, methodologies, and conclusions, and therefore only need "good grounds" for the offered expert testimony.[2] Dr. Mahmud does not have "good grounds" for his critiques of Plaintiffs' experts' opinions. Furthermore, Dr. Mahmud also attempts to give affirmative causation opinions, which must still be given to a reasonable degree of medical certainty, which he is unable to do.

---

[1] Opp'n at 2.
[2] Opp'n at 6-7, 9, 12-13, 17-19, 22, 26, 28-30.

## **ARGUMENT**

### I.     **Dr. Mahmud Relied on Dr. Chernyak**

Dr. Mahmud relied on and found "of critical importance", Dr. Chernyak's expert opinion that Mr. Roberts had an LR-3 liver lesion in 2016.[3]  When asked if he believed Mr. Robert's had an LR-3 lesion in 2016, Dr. Mahmud admitted, "I'm relying a lot of Dr. Chernyak's assessment here."[4]  Based solely on Dr. Chernyak's opinion that Mr. Roberts had an LR-3 lesion in 2016, Dr. Mahmud then opines "it cannot be ruled out that this LR-3 lesion represented HCC, which subsequently grew to become the LR-5 lesion."[5]  Plaintiffs do not dispute that one expert may rely upon another expert's opinion in formulating their own opinion.  However, the underlying expert opinion that is being relied upon must itself be a reliable opinion.  Defendants brush off Plaintiffs' arguments as "thinly veiled attacks on Dr. Chernyak" and that "there are 'good grounds' for Dr. Chernyak's application of the LI-RADS criteria and, by extension, Dr. Mahmud's reliance on it in his report."[6]

As discussed in Plaintiffs' motion to exclude Dr. Chernyak, in coming to her opinion that Mr. Roberts had an LR-3 liver lesion in 2016, Dr. Chernyak did not

---

[3] Opp'n at 27.
[4] Ex. A - Mahmud Dep. 402:11-15.
[5] Opp'n at 27.
[6] Opp'n at 28.

follow mandatory LI-RADS criteria or the methodology that she intended to follow.[7]

Dr. Chernyak clearly testified that she did not have the required images necessary to

apply LI-RADS:

> Q: if you don't have all the phases, you can't apply LI-RADS; correct?
> A: Correct.[8]
> *****
> Q: And for CT, what are the **<u>required</u>** images?
> A: Arterial phase, portal venous phase, and **delayed phase**.[9]
> *****
> Q: Do you have an opinion on which of the three is the most important phase?
> A: You need all three to make LI-RADS[10]
> *****
> Q: And the 2018 LI-RADS CORE lists a required image as the delayed phase; correct?
> A: It – yes.
> Q: And **you did not have a delayed phase with Mr. Roberts**; correct?
> A: **Correct**.[11]

Dr. Chernyak did not have "good grounds" to apply LI-RADS to Mr. Roberts'

2016 imaging and, by extension, Dr. Mahmud does not have "good grounds" to rely

on Dr. Chernyak's opinion.  Dr. Mahmud should be precluded from offering any

opinions that rely on Dr. Chernyak, specifically any mention of an LR-3 lesion or a

lesion being in the same place in 2016 as cancer was later discovered in 2018.

---

[7] Dr. Chernyak Daubert at 12-13 (ECF No. 3066); Chernyak Reply at 2-4 (ECF No. 3111).
[8] Ex. B - Chernyak Dep. 67:11-14.
[9] Ex. B - Chernyak Dep. 171:14-22; 251:9-11 (emphasis added).
[10] Ex. B - Chernyak Dep. 174:16-20.
[11] Ex. B - Chernyak Dep. 270:1-7 (emphasis added).

## II.    Dr. Mahmud Did Not Know the FIB-4 Formula

Just as Defendants claimed Dr. Chernyak's reliance on results generated by artificial intelligence that applied unknown formulas as merely using a calculator, Defendants attempt to justify Dr. Mahmud's use of an online tool to compute a FIB-4 score as merely "imputing numbers into an online calculator."[12]  Defendants note that "using a calculator 'does not—without significantly more' undermine an expert's opinions."[13]   However, MDCalc.com does significantly more than a calculator, as it applies unknown formulas.

Defendants do not argue that Dr. Mahmud knew the formulas that MDCalc.com applied to calculate a FIB-4 score, but instead misdirect by arguing that Dr. Mahmud knew what inputs the MDCalc.com formula considered (AST, ALT, platelets, and age).  Plaintiffs are aware of Mr. Roberts' AST, ALT, platelets, and age.  However, Plaintiffs have no insight into the formula that MDCalc.com applied to those values to then spit out a FIB-4 score.  In deposition, it was clear that Dr. Mahmud had no idea what formula MDCalc.com applied to compute the FIB-4 score:[14]

---

[12] Opp'n at 14; Chernyak Opp'n at 22 (ECF No. 3069).
[13] Opp'n at 14.
[14] Ex. A - Mahmud Dep. 203:3-8.

> The formula that's used for this has a ratio of AST and ALT, and then it has platelets as a factor. **I think it's multiplied by that. The square root is in the formula somewhere**, and then age factors in.

MDCalc.com does significnalty more than a calculator, as it applies unknown formulas, which prevents Plaintiffs from adequately exploring the weaknesses and reliability of the calculation.  For instance, Plaintiffs argue that Mr. Roberts' age alone resulted in his elevated FIB-4 score (if all inputs are the same, but Mr. Roberts' age is decreased, his FIB-4 score is normal).[15]  However, without knowing the formulas applied by MDCalc.com, Plaintiffs are unable to determine exactly how age is driving the FIB-4 score.  Because MDCalc.com does significantly more than a calculator, it undermines Dr. Mahmud's FIB-4 opinions.  As such, Dr. Mahmud should be precluded from offering any opinions based on MDCalc.com's FIB-4 calculations.[16]

## III.    Not All Tumor Volume Doubling Time Projections Would Predict Mr. Roberts Had Liver Cancer Prior to Exposure to NDMA-Valsartan

Regarding tumor volume doubling time projections, Dr. Mahmud intends to opine, "It is clear in evaluating these data that across **all scenarios, including the most conservative scenario assuming aggressive tumor replication and growth**, Mr. Roberts **almost certainly had undiagnosed HCC at the time of his first**

---

[15] Pls.' Mot. at 25-27.
[16] Dr. Mahmud relied on MDCalc.com's FIB-4 calculations to diagnose Mr. Roberts with NASH, cirrhosis, and advanced liver fibrosis. (Pls.' Mot. at 22).

**exposure** to allegedly NDMA-contaminated valsartan in September 2016."[17]  Dr. Mahmud further testified, "**all** the projections would predict that he had identifiable lesions on imaging."[18]  However, the most aggressive tumor growth that Dr. Mahmud believed was possible and that he modeled out was only doubling every 3.9 months.[19]  Defendants other expert, Dr. Chernyak, testified that the median tumor volume doubling time is 3 months.[20]  Even the very study that Dr. Mahmud relied on notes aggressive liver tumors doubling at least every 2.2 months, nearly twice the speed that Dr. Mahmud modeled out.[21]  Dr. Mahmud admitted that Mr. Roberts would not have had liver cancer prior to ingesting NDMA-contaminated valsartan if modeled out based on the more aggressive tumor growth times.[22]  Dr. Mahmud should not be allowed to testify that under all tumor volume doubling time projections that Mr. Roberts would have had liver cancer prior to consuming NDMA-contaminated valsartan, because such an opinion is factually inaccurate.

---

[17] Ex. C - Mahmud Report at 34 (emphasis added).
[18] Ex. A - Mahmud Dep. 401:10-12.
[19] Ex. A - Mahmud Dep. 357:1-3, 397:4-7.
[20] Ex. B - Chernyak Dep. 186:14-17.
[21] Ex. A - Mahmud Dep. 406:5-14; Ex. D - Nathani P et al. Hepatocellular Carcinoma Tumor Volume Doubling Time: A Systemic Review and Meta-Analyss. Gut 2021; 70:401-407 at page 6.
[22] Ex. A - Mahmud Dep. 408:4-11.

## IV. Dr. Mahmud Has No Basis to Opine that Mr. Roberts was at a Decreased Carcinogenic Risk from NDMA-Contaminated Valsartan

Dr. Mahmud intends to tell the jury that "it's very plausible that a patient with cirrhosis would actually be relatively protected from, you know, NDMA-related toxicity if, in fact, that were to exist"[23] and "it is plausible that Mr. Roberts' prolonged exposure to valsartan in fact had a protective effect on the liver, potentially delaying the onset of his cirrhosis and HCC."[24]   When asked if he had "any scientific evidence specific to NDMA on that opinion", Dr. Mahmud admitted, "I don't because, as I – as I've stated numerous times, there's really limited – there's no data in patients with cirrhosis in humans being exposed to NDMA or in animals with preexisting cirrhosis."[25]  Dr. Mahmud does not have "good grounds" to opine that Mr. Roberts was at a decreased carcinogenic risk from NDMA-contaminated valsartan, or that valsartan might have had a protective effect on his liver.  As such, Dr. Mahmud should be precluded from opining at trial that valsartan protected Mr. Roberts' liver or that Mr. Roberts' was at a decreased risk from NDMA exposure.

## V. Dr. Mahmud Can Not Reliably Opine as to the Cause of Mr. Roberts' Liver Cancer

Defendants argue that Dr. Mahmud's cancer causation opinions only require him to have "good grounds" because Dr. Mahmud is only a rebuttal expert that is

---

[23] Ex. A - Mahmud Dep. 390:7-11.
[24] Ex. C - Mahmud Report at 32.
[25] Ex. A - Mahmud Dep. 390:13-20.

7

pointing out that other potential causes could not be excluded.[26]    However, Dr. Mahmud seeks to do more than just point out other potential causes, he seeks to give affirmative causation opinions such as, "In my expert opinion, Mr. Gaston Roberts' HCC was the direct result of longstanding MASLD/MASH that resulted in cirrhosis and subsequently HCC"[27] and that Mr. Roberts was "almost guaranteed to have already had hepatocellular carcinoma when he was—when he was first exposed to NDMA-contaminated valsartan."[28]    In order to give such affirmative opinions, Dr. Mahmud must be able to give the opinion to a reasonable degree of medical certainty. As detailed in Plaintiffs' initial motion, Dr. Mahmud can not reliably opine that Mr. Roberts had cirrhosis or even NASH/MASH, in part because he relies on MDCalc.com's FIB-4 results.[29]    Therefore, Dr. Mahmud can not reliably opine that Mr. Roberts' liver cancer "was the direct result of longstanding MASLD/MASH that resulted in cirrhosis and subsequently HCC."    Furthermore, Because Dr. Mahmud is just a "rebuttal expert", he should be precluded from giving any affirmative opinions at trial.

---

[26] Opp'n at 28-29.
[27] Ex. C - Mahmud Report at 41.
[28] Ex. A - Mahmud Dep. 414:1-4.
[29] Pls.' Mot. at 20-21, 33-34.

## **CONCLUSION**

Dr. Mahmud is unable to give his causation opinions to a reasonable degree of medical certainty and does not even have "good grounds" to "poke holes" in Plaintiffs' experts' opinions.  As such, Dr. Mahmud should be precluded from testifying at trial.


Dated: July 17, 2025                          Respectfully submitted,

                                              By: */s/ C. Brett Vaughn*
                                              C. Brett Vaughn, RN, BSN, JD
                                              NIGH GOLDENBERG RASO &
                                              VAUGHN, PLLC
                                              *Attorneys for Plaintiffs*
                                              14 Ridge Square NW
                                              Third Floor
                                              Washington, D.C. 20016
                                              Tel: 202-792-7927
                                              Fax: 202-792-7927
                                              Email: bvaughn@nighgoldenberg.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ C. Brett Vaughn*

C. Brett Vaughn, RN, BSN, JD