UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO:<br>*Gaston Roberts v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.,*<br><br>Case No. 1:20-cv-00946-RMB-SAK | HON. RENÉE MARIE BUMB |

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE DEFENSE EXPERT DR. GREGORY DIETTE DUE TO UNTIMELY DISCLOSURE OF GENERAL CAUSATION OPINION

NIGH GOLDENBERG RASO & VAUGHN, PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927

On the Brief:
Daniel Nigh, Esq.
Kathryn Avila, Esq.
Stephanie Iken, Esq.

i

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................4

    I.  Defendants' Untimely Disclosure of Dr. Diette Violated the MDL's Scheduling Orders....................................................................................4

    II.  Unlike Dr. Sawyer, Whose Opinions Are Classic Case-Specific Opinions Tied to Mr. Roberts' Medical Records, Dr. Diette's Report Does Not Reference Mr. Roberts. ...................................................................................7

    III. Defendants' Disclosure Was Neither Substantially Justified Nor Harmless. ..9

    IV. "Evolving Science" Does Not Justify Reopening General Causation............11

CONCLUSION...................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Bean-Sasser v. Sec'y of Health & Hum. Servs.*,
  127 Fed. Cl. 161, 167 (2016)......................................................................................12

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2021 WL 763778, at *2 (N.D. Fl. Jan. 15, 2021)......................................................5

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, MDL No. 2738, No. 16-2738, Text Order (D.N.J. Mar. 27, 2024)...........11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  892 F.3d 624, 631–32 (4th Cir. 2018)........................................................................4

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717, 758 (3d Cir. 1994).................................................................................9

*In re Zoloft*,
  176 F. Supp. 3d 483, 493 (E.D. Pa. 2016).................................................................8

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101, 1107 (9th Cir. 2001)..........................................................................3

**Rules**

Fed. R. Civ. P. 16(b)(4)................................................................................................8
Fed. R. Civ. P. 16(f).....................................................................................................4
Fed. R. Civ. P. 26(e)....................................................................................................8
Fed. R. Civ. P. 37(c)(1)................................................................................................4

# **INTRODUCTION**

The Court should exclude the opinions of Dr. Gregory Diette as untimely disclosed general causation opinions. Defendants do not dispute that they disclosed Dr. Diette's opinions years after the deadline for general causation expert discovery closed. Nor do they dispute that the MDL was structured to resolve general causation globally and early, leaving only case-specific issues for bellwether trials.[1] Yet, Dr. Diette's opinions are textbook general causation opinions.[2] Dr. Diette's report does not mention Plaintiff Gaston Roberts, does not analyze Mr. Roberts' exposure or medical records, and does not offer a single individualized conclusion.[3] His testimony would force relitigation of issues already addressed during the MDL's global phase, despite the Court's orders directing that specific causation is now the focus.[4] Defendants offer four arguments in response, but none justifies the late disclosure.

*First*, Defendants suggest that because no order "expressly" forbids introducing new general causation experts at trial, their disclosure of Dr. Diette is

---

[1] ECF No. 640, Case Mgmt. Order No. 22 (Nov. 25, 2020); ECF No. 726, Revised Case Mgmt. Order No. 22 (Jan. 11, 2021); ECF No. 843, Special Master Order No. 2 (Feb. 4, 2021); ECF No. 863, Case Mgmt. Order No. 23 (Feb. 11, 2021).
[2] Diette Dep. 11:18–13:1 (ECF No. 3070-3); Diette Report at 2–8 (ECF No. 3070-2).
[3] Diette Dep. 10:12–11:1 (ECF No. 3070-3); *See* Diette Report (ECF No. 3070-2).
[4] ECF No. 640, Case Mgmt. Order No. 22 (Nov. 25, 2020); ECF No. 726, Revised Case Mgmt. Order No. 22 (Jan. 11, 2021); ECF No. 843, Special Master Order No. 2 (Feb. 4, 2021); ECF No. 863, Case Mgmt. Order No. 23 (Feb. 11, 2021).

permitted. That is incorrect. The Court's case management orders closed general causation expert discovery in 2021. Defendants' reading would render that deadline meaningless. Defendants' interpretation would allow any party to designate new experts years later, which would defeat the very purpose of coordinated MDL proceedings.

*Second*, Defendants attempt to justify their disclosure by pointing to Dr. Sawyer's report and the 2022 Mansouri study. But they mischaracterize Plaintiffs' position. Defendants have not moved to exclude Dr. Sawyer for untimely disclosure. Dr. Sawyer was designated as a specific causation expert. He tied his analysis to Mr. Roberts' case, and he explicitly confirmed he is not giving a general causation opinion.[5] Although determining specific causation requires showing that NDMA can cause cancer generally, that issue was resolved in the MDL's global phase. Plaintiffs will not present any stand-alone general causation testimony from Dr. Sawyer at trial.

As for Mansouri, Defendants could have addressed that study by supplementing their prior expert reports or updating their reliance materials. They did neither. Mansouri is not the only post-2021 study, and if it truly changed Defendants' views, they had the opportunity to amend their existing epidemiologist's report. Their failure to do so suggests that Mansouri did not alter

---

[5] Sawyer Dep. 54:2-9; 53:4-15 (ECF No. 3098-4 at p. 7-8).

their opinions. Defendants are essentially conceding that unless their prior epidemiologist now believes valsartan causes cancer, Mansouri would not change their position.

*Third*, Defendants have not met their burden to show harmlessness. Allowing Dr. Diette to testify would prejudice Plaintiffs and disrupt the trial schedule. This MDL has been pending since 2019. Plaintiffs prepared for trial based on the understanding that general causation was resolved and the parties would proceed to trial on specific causation. Permitting Defendants to introduce new general causation opinions now would upend that structure, waste years of coordinated effort, and impose additional time and costs on Plaintiffs and the Court. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001).

*Fourth*, Defendants suggest that "evolving science" justifies reopening general causation discovery. But that argument conflates changes in scientific literature with the legal rules governing disclosure. Defendants cite one epidemiological study, Mansouri, which finds a statistically significant increased risk of liver cancer for people who ingested contaminated valsartan.[6] This finding by Mansouri is consistent with the Gomm study that also found a statistically significant increased risk of liver cancer for people who ingested contaminated valsartan. The Gomm study and this statistically significant increased risk of liver

---

[6] Mansouri 2022, cited in Sawyer Report at 39–41 (ECF No. 3098-3).

cancer was already discussed by the general causation experts previously in 2021. This is not a paradigm shift. Other courts have enforced MDL schedules and excluded untimely experts under similar circumstances. *See In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631–32 (4th Cir. 2018).

Defendants also cite case law involving parties who sought leave to supplement their general causation reports. That did not happen here. Defendants did not move for leave, propose a new timeframe, or seek an order permitting supplementation. They simply served Dr. Diette's report and treated the prior deadlines as optional, expecting the Court to go along with their decision to flout its schedule.

There is no cure for this late disclosure that would not disrupt the MDL's progression. Allowing new general causation experts years after the deadline would effectively invite every party to re-do causation whenever convenient. That cannot be the rule. The Court should enforce its scheduling orders and exclude Dr. Diette's report and testimony under Federal Rules of Civil Procedure 37(c)(1) and 16(f).

## ARGUMENT

**I.     Defendants' Untimely Disclosure of Dr. Diette Violated the MDL's Scheduling Orders.**

Defendants do not dispute that they disclosed Dr. Gregory Diette's expert report in April 2025, more than three years after the deadline for general causation

4

expert discovery closed.[7] By serving a new general causation expert long after that deadline elapsed, Defendants violated the MDL's coordinated case management orders.

Defendants try to skate around this fact by asserting that no order "expressly" forbade new general causation experts for trial. (Diette Opp. at 7.) In other words, Defendants contend that when a Court issues an Order containing a requirement but does not simultaneously state that parties are prohibited from violating that requirement, parties may freely do so. Defendants' tortured interpretation is inconsistent with the law. *See, e.g.*, *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 763778, at *2 (N.D. Fl. Jan. 15, 2021). It further ignores both the structure and the history of this MDL. The Court set firm deadlines in 2020 and 2021 for general causation expert reports and *Daubert* motions.[8] Plaintiffs disclosed their general causation experts in May 2021. Defendants did the same. The Court then ruled on those *Daubert* motions in March 2022.[9]

At no point did the Court invite the parties to redo general causation years later. Quite the opposite. The record shows that Judge Kugler consistently stated that

---

[7] Diette Opp. at 1; Diette Report at 1 (ECF No. 3070-2).
[8] Diette Daubert Mot. at 2–4; ECF No. 640, Case Mgmt. Order No. 22 (Nov. 25, 2020); ECF No. 726, Revised Case Mgmt. Order No. 22 (Jan. 11, 2021); ECF No. 843, Special Master Order No. 2 (Feb. 4, 2021); ECF No. 863, Case Mgmt. Order No. 23 (Feb. 11, 2021)
[9] *Id*.

general causation would be resolved globally, while individual trials would focus on specific causation.[10] Defendants cite a passing remark from Judge Kugler about the idiosyncrasies of personal injury cases, but in context, that statement referred to patient-specific issues like exposure or latency.[11] It was not an invitation to bring in new general causation experts in 2025.

Defendants had ample opportunity to litigate general causation and did so. They cannot now smuggle in a do-over expert simply because the trial is approaching. Allowing that would unravel the entire MDL structure. It would also render deadlines meaningless. Otherwise, the instruction would have no effect. Deadlines matter. Defendants already had their chance to present general causation opinions in 2021. They cannot try again now.

Dr. Diette's own testimony confirms that he is offering a general causation opinion only. He admitted his report contains no case-specific analysis of Mr. Roberts aside from a passing reference to latency.[12] He did not review Mr. Roberts' medical records in any meaningful way, nor did he evaluate Mr. Roberts' actual NDMA dose.[13] Instead, he read scientific literature, much of it already addressed during the MDL general causation phase.[14] Like Defendants' other previously

---

[10] *Id*.
[11] Diette Opp. at 7.
[12] Diette Dep. 11:18–13:1 (ECF No. 3070-3).
[13] Diette Dep. 10:12–11:1 (ECF No. 3070-3).
[14] *See generally* Diette Report (ECF No. 3070-2).

disclosed epidemiologist, Dr. Gibb, Dr. Diette formed the opinion that NDMA in valsartan is not capable of causing liver cancer.[15]

Defendants argue that the scheduling order for this individual case, ECF 2982, did not explicitly forbid general causation opinions. But that order set deadlines for specific causation experts only. It did not, and could not, override the MDL's prior general causation schedule. By the time of ECF 2982, the parties and the Court understood that general causation was closed. Defendants should have raised any disagreement at the time. They did not. Instead, they waited for Plaintiff to serve Dr. Sawyer, then designated Dr. Diette without notifying the Court or the Special Master. This tactic runs counter to the cooperative case management expected in MDLs and prejudiced Plaintiffs.

### II. Unlike Dr. Sawyer, Whose Opinions Are Classic Case-Specific Opinions Tied to Mr. Roberts' Medical Records, Dr. Diette's Report Does Not Reference Mr. Roberts.

Defendants also mischaracterize Plaintiff's designation of Dr. Sawyer in an attempt to draw (inaccurate) comparisons between his opinions and those of Dr. Diette. Defendants never moved to exclude Dr. Sawyer for untimely disclosure. They now suggest that Plaintiff somehow "reopened" general causation by using Dr. Sawyer. That is wrong. Dr. Sawyer is a specific causation expert who ties his

---

[15] Diette Report at 2–5 (ECF No. 3070-2); *See generally* Ex. A Gibb Report.

opinions to Mr. Roberts' case.[16] Dr. Sawyer explicitly confirmed he is not giving a general causation opinion.[17] Dr. Diette, on the other hand, entirely fails to link his opinions to Mr. Robert's case.[18] Dr. Diette did not meaningfully examine Mr. Robert's medical records and did not even mention Mr. Roberts in his report.[19]

Nonetheless, Defendants are trying to turn Dr. Sawyer's routine toxic tort expert report, one that links general science to a specific plaintiff, into a justification for redoing general causation globally. That is not how MDLs work. Defendants cannot point to Dr. Sawyer to justify Dr. Diette's late-stage involvement. And even if both sides had disclosed new general causation experts, which they did not, two wrongs do not make a right. A potential remedy for a scheduling dispute is a motion to supplement or to amend their prior expert reports, not unilateral disregard of deadlines. Fed. R. Civ. P. 26(e), 16(b)(4).

In short, Defendants violated the MDL scheduling orders by disclosing Dr. Diette's report in 2025. Exclusion is warranted on that basis alone. *See In re Zoloft*, 176 F. Supp. 3d 483, 493 (E.D. Pa. 2016) (striking untimely expert report in MDL).

---

[16] *See generally* Sawyer Report (ECF No. 3098-3).
[17] Sawyer Dep. 54:2-9; 53:4-15 (ECF No. 3098-4 at p. 7-8)
[18] *See generally* Diette Report (ECF No. 3070-2).
[19] Diette Dep. 11:18–13:1; 10:12–11 (ECF No. 3070-3); *See generally* Diette Report (ECF No. 3070-2).

### III. Defendants' Disclosure Was Neither Substantially Justified Nor Harmless.

Defendants also claim their late disclosure was justified and harmless.[20] It was neither. They point to Dr. Sawyer's report and the Mansouri 2022 study as excuses.[21] Neither argument holds water. Defendants did not move to exclude Dr. Sawyer for untimeliness. Sawyer is not offering a general causation opinion and explicitly disclaimed any general causation opinions.[22] He is offering a specific causation opinion that applies the existing science to Mr. Roberts' case. (*Id.*) Specific causation opinions routinely require first consider whether a substance is capable of causing injury and then specifically linking that opinion to the substance causing injury in a particular individual. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758 (3d Cir. 1994).

Defendants' reliance on the Mansouri study does not justify their disclosure of a new general causation expert. New studies are commonly published after general causation expert deadlines have elapsed in litigations and this does not require that the parties disclose new general causation experts. Rather, the parties can address new studies by amending the previously disclosed expert reports' reliance lists or supplementing their prior expert reports. As for Mansouri,

---

[20] Diette Opp. at 8.
[21] Diette Opp. at 15.
[22] *See generally* Sawyer Report (ECF No. 3098-3); Sawyer Dep. 54:2-9; 53:4-15 (ECF No. 3098-4 at p. 7-8)

9

Defendants could have addressed that study by updating their reliance materials or supplementing their prior expert reports.

Nor is this harmless. Allowing Dr. Diette's opinions would prejudice Plaintiffs and disrupt the trial schedule. Plaintiffs have spent years preparing under the assumption that general causation was resolved. Defendants' maneuver imposes significant time and cost burdens on Plaintiffs and the Court. There is no way to cure this late disclosure without derailing the entire MDL, which has been pending since 2019. The parties cannot get lost days back.

Defendants argue that Diette's testimony is necessary, but it is duplicative of opinions they already offered through their other experts. For example, defense expert, Dr. Gibb, another epidemiologist, already gave the opinion that the use of valsartan does not increase the risk of liver cancer and Dr. Diette's opinions are largely redundant of the opinions that Dr. Gibb has already timely offered.[23]

This issue is not about whether Defendants are allowed to have a general causation expert in theory, but rather, it is about whether Defendants can introduce a new expert years after the deadline. Defendants cite cases where parties sought permission to supplement expert reports. Each such case is distinguishable on its face because here Defendants did not bother to ask the Court for permission. They

---

[23] *See generally* Ex. A - Gibb Report.

10

did not propose a new timeline. They simply submitted the report without asking. That is not how MDLs—or the Federal Rules—work.

### IV. "Evolving Science" Does Not Justify Reopening General Causation.

Defendants argue that evolving science requires a reset of the schedule.[24] That is not correct. Scientific research will always continue. If parties could reopen general causation every time a new study was published, cases would be extensively prolonged.

Also, the findings in Mansouri are consistent with the Gomm study that was relied upon previously by both Defendants' and Plaintiffs' general causation experts. Both Gomm and Mansouri show a statistically significant increased risk of liver cancer for people who ingested contaminated valsartan.[25] It is consistent with Plaintiffs' position but not revolutionary. Defendants are trying to use it as a vehicle to relitigate general causation through a new expert. That is not necessary or appropriate.

Defendants' reliance on *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Liability Litigation* is inapposite because that case involved amendments to Rule 702, not untimely disclosure. (Diette Opp. at 14). *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,

---

[24] Diette Opp. at 14
[25] *See* Gomm et al., *J. Nat'l Cancer Inst.* (2021) (ECF No. 3098-11); Mansouri et al., *JAMA Oncol.* (2022) (ECF No. 3098-9).

11

MDL No. 2738, No. 16-2738, Text Order (D.N.J. Mar. 27, 2024). A long-anticipated change to evidentiary standards differs markedly from the publication of a single epidemiological study, especially one that is consistent with the literature the parties' experts have already reviewed. Here, there has been no relevant legal change (or even scientific change). The only thing that has changed is Defendants' litigation strategy.

They also cite *Bean-Sasser v. Sec'y of Health & Hum. Servs.*, 127 Fed. Cl. 161, 167 (2016), but that case involved a different procedural context. (Diette Opp. at 14). Courts can consider new science in new cases. That does not mean parties can ignore deadlines in existing ones.

Litigation must have an endpoint. For general causation, the Court established that endpoint through its Orders. That endpoint, the Parties agree, elapsed three years ago. Defendants failed to show that the endpoint no longer applies or that, if it does, there is an extraordinary reason to justify their noncompliance.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to exclude the expert report and testimony of Dr. Gregory Diette.

Dated: July 17, 2025	Respectfully,

By: */s/ Daniel Nigh*
Daniel Nigh, Esq.
NIGH GOLDENBERG RASO & VAUGHN, PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927
Email: dnigh@nighgoldenberg.com

# CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Daniel Nigh*
Daniel Nigh, Esq.
