# ffUNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>*Gaston Roberts et al. v. Zhejiang Huahai Pharmaceutical Co., et al.,*<br><br>Case No. 1:20-cv-00946-RBK-JS | MDL No. 2875<br><br>Honorable Renée Marie Bumb<br>District Court Judge |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE OPINIONS OF DR. JOHN RUSSO

# **TABLE OF CONTENTS**

                                                                                                   **Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

    I.    DR. RUSSO SHOULD NOT BE ALLOWED TO OFFER LEGAL OPINIONS. ........................................................................................1

    II.    DR. RUSSO'S WARNING CAUSATION OPINIONS ARE IMPROPER. .........................................................................................4

    III.    DR. RUSSO LACKS A RELIABLE BASIS FOR HIS REGULATORY OPINIONS. ........................................................................................6

    IV.    DR. RUSSO'S OPINIONS CONCERNING ZHP'S ETHICAL RESPONSIBILITES SHOULD BE EXCLUDED. .......................................8

    V.    DR. RUSSO'S REPORT CONTAINS IMPROPER SUMMARIES OF EVIDENCE. .........................................................................................9

CONCLUSION ......................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arevalo v. Coloplast Corp.*,
   No. 3:19CV3577-TKW-MJF, 2020 WL 3958505
   (N.D. Fla. July 7, 2020) ................................................................................. 2, 4-5

*In re Baycol Products Litigation*,
   532 F. Supp. 2d 1029 (D. Minn. 2007) ................................................................8

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001) ............................................................................................3

*Crockett v. Luitpold Pharmaceuticals, Inc.*,
   No. CV 19-276, 2023 WL 2162600 (E.D. Pa. Feb. 22, 2023) .............................6

*Hines v. Wyeth*,
   No. 2:04-0690, 2011 U.S. Dist. LEXIS 74011
   (S.D. W. Va. July 8, 2011) ..................................................................................7

*McWilliams v. Novartis AG*,
   No. 2:17-CV-14302-ROSENBERG/MAYNARD, 2018 WL
   3369065 (S.D. Fla. July 9, 2018) ........................................................................5

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ............................................................................................3

*Staub v. Breg, Inc.*,
   No. CV 10-02038-PHX-FJM, 2012 WL 1078335
   (D. Ariz. Mar. 30, 2012) ......................................................................................7

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust
   Litigation*,
   No. 13-MD-2445, 2020 WL 6887885 (E.D. Pa. Nov. 24, 2020) .........................5

*In re Valsartan, Losartan, & Irbesartan Products Liability Litigation*,
   MDL No. 19-2875, 2025 U.S. Dist. LEXIS 66185
   (D.N.J. Apr. 7, 2025) ...........................................................................................3

**Rule**

Fed. R. Evid. 702 ................................................................................................3

## INTRODUCTION

Plaintiff's opposition makes it clear that Dr. Russo's so-called expertise is "limited to what he knows and did as a prescribing doctor[.]" (Opp'n at 2.) But being a "prescribing doctor" in no way qualifies Dr. Russo to opine on legal, regulatory, and labeling matters. Nor should Dr. Russo be allowed to proffer "expert" opinions on non-expert matters, including testimony related to legal issues (i.e., that ZHP "failed to warn") and ZHP's ethical responsibilities, or testimony that purports to summarize factual evidence. Plaintiff is unable to explain why he should.

For these reasons, discussed further below, Dr. Russo's "expert" opinions should be excluded in their entirety.

## ARGUMENT

### I. DR. RUSSO SHOULD NOT BE ALLOWED TO OFFER LEGAL OPINIONS.

Plaintiff does not dispute that an expert cannot offer testimony on legal issues, including that a defendant "failed to warn" of certain risks. (Mem. at 6-9.) Instead, Plaintiff contends that Dr. Russo does not offer improper legal opinions because "the phrases 'failed to warn' or 'fail to warn' do not" specifically appear in his report. (Opp'n at 11.) This is patently false; Dr. Russo's report *repeatedly and explicitly* references ZHP's alleged failure to warn. (*See* Russo Rep. at 1 (Mem. Ex. 1) (explaining that he was retained to opine on whether ZHP "adequately warned physicians and patients of the risks of using ZHP's Valsartan products contaminated

1

with nitrosamines including NDMA"); *id.* at 2 (opining "that ZHP and its subsidiaries failed to adequately warn physicians and patients of the risks of the nitrosamine-contaminated Valsartan"); *id.* at 5 (concluding that ZHP's "failure . . . to make any disclosure of the NDMA contamination rendered the warnings for the contaminated Valsartan inadequate by definition"); *id.* at 6 ("Based on the complete lack of disclosure, no physician or patient would have had any reason to know or suspect that ZHP's Valsartan was contaminated with NDMA at any time before public disclosure occurred in 2018."); *id.* at 10 (opining that ZHP "failed to disclose the NDMA contamination to the FDA, and failed to adequately warn physicians and patients of the risks of ZHP's contaminated Valsartan").)

Plaintiff's suggestion that Dr. Russo's inclusion of the term "adequately" somehow shields Dr. Russo from exclusion of an otherwise improper "failure to warn" legal opinion (Opp'n at 10-12) is also wrong. Plaintiff cites *Arevalo v. Coloplast Corp.*, No. 3:19CV3577-TKW-MJF, 2020 WL 3958505 (N.D. Fla. July 7, 2020) (cited in Opp'n at 11-12) for this proposition, but the *Arevalo* case merely held that an expert's general "use of the terms 'adequate' and 'inadequate' are permissible" when describing the relevant "standard of care in the industry[.]" *Id.* at *21. The court explicitly prohibited any expert testimony that the defendant there "'failed to warn' patients and physicians of the[] alleged risks" and acted "unreasonably" as "impermissible legal conclusions," *id.* at *20. That is exactly the

2

type of testimony Dr. Russo seeks to proffer in this case, and it should be excluded.

Dr. Russo's failure-to-warn opinions separately do not fit the facts of this case. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 19-2875 (RMB/SAK), 2025 U.S. Dist. LEXIS 66185, at *43 (D.N.J. Apr. 7, 2025) ("An expert's testimony 'fits' the proceedings only if it will help the trier of fact to understand the evidence or determine a fact in issue.") (citing Fed. R. Evid. 702(a)). Plaintiff contends that her "failure to warn claim extends not just to the labeling for the pills, but also to the failure to provide that information to the FDA[.]" (Opp'n at 10.) However, as a generic manufacturer, it was legally impossible for ZHP to unilaterally make any changes to the labeling of valsartan, rendering this this theory of liability preempted under *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) ("Federal drug regulations . . . prevented the Manufacturers from independently changing their generic drugs' safety labels."). And any claims arising out of what Defendants did or did not tell the FDA are preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, which holds that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." 531 U.S. 341, 350 (2001). Accordingly, even if Dr. Russo's opinions were not impermissible legal conclusions, Plaintiff's opposition brief confirms that they are premised on preempted (and therefore irrelevant) theories.

3

## II. DR. RUSSO'S WARNING CAUSATION OPINIONS ARE IMPROPER.

Plaintiff misconstrues Defendants' well-founded challenges to Dr. Russo's warning causation opinions as an argument "that no expert [testimony on failure to warn] is needed[.]" (Opp'n at 10.) Whether or not an expert on failure to warn "is needed" is irrelevant to the Rule 702 analysis. Rather, Plaintiff's burden is "demonstrat[ing] to the court that it is more likely than not" that Dr. Russo has the requisite qualifications to render him an "expert" on how a "reasonable physician" would respond to ZHP's warnings, and that Dr. Russo's testimony is grounded in hard evidence. (Mem. at 5, 9-14.) Plaintiff fails to do so.

***First***, Plaintiff concedes that Dr. Russo's expertise is "limited to what he knows and did as a prescribing doctor[.]" (Opp'n at 2 (stating that Dr. Russo "is not a causation expert").) Plaintiff nonetheless claims that Dr. Russo's "actual experience with the medication at issue" qualifies him to opine on the impact of warnings on all other physicians. (*Id.* at 4-6.) This argument ignores the wealth of authority requiring a proposed expert to possess "specialized expertise" regarding the adequacy of labels (Mem. at 9-10 (citing authority))—expertise that Dr. Russo indisputably does not possess. And while Plaintiff posits that an expert "need not . . . have experience writing drug warnings" to opine on labeling, the case Plaintiff cites for this argument merely noted that the proposed expert's "factual statements about the [Instructions for Use ("IFUs")] contents" "d[id] not require him to have

4

experience drafting IFUs." *Arevalo*, 2020 WL 3958505, at *20 (cited in Opp'n at 4). Here, Dr. Russo seeks to offer far-ranging opinions about labeling and its effect on prescribing physicians generally, which plainly exceeds the proposed testimony at issue in *Arevalo*. In sum, Plaintiff has failed to show that Dr. Russo's mere status as "a doctor" who reads labelling "qualif[ies him] to opine on the adequacy of the labels." *McWilliams v. Novartis AG*, No. 2:17-CV-14302-ROSENBERG/MAYNARD, 2018 WL 3369065, at *1, *3 (S.D. Fla. July 9, 2018).

**Second**, Plaintiff concedes that Dr. Russo's so-called "methodology" for his opinions regarding how a "reasonable physician" would react to labeling and/or warnings is merely "built from [his] perspective of a physician[.]" (Opp'n at 6.) That is not a reliable methodology. As Plaintiff's own cited case makes clear, "most courts have prohibited experts from testifying 'about what all doctors generally consider in making prescription decisions' or about 'what doctors generally think,' unless the testimony is ***based on something more reliable than simply the expert's own experience as a doctor***." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2020 WL 6887885, at *27 (E.D. Pa. Nov. 24, 2020) (cited in Opp'n at 6) (emphasis added). In accordance with that precedent, the *Suboxone* court prohibited the doctor in that case from "improperly speculating what impact [] marketing materials had on the prescribing decisions of

5

all physicians." *Id.*[1] The same result is appropriate here; Dr. Russo's opinions about what physicians generally think/know is based on nothing more than his own personal experience, and is therefore speculative and inadmissible.

### III. DR. RUSSO LACKS A RELIABLE BASIS FOR HIS REGULATORY OPINIONS.

Plaintiff does not dispute that Dr. Russo is wholly unqualified to provide regulatory opinions. (Opp'n at 2, 3, 8 (Dr. Russo "is not a regulatory expert").) Plaintiff nonetheless argues that Dr. Russo should be able to provide regulatory opinions because he is a doctor "at whom [] FDA statement[s]" are directed. (Opp'n at 7.) But Plaintiff once again ignores the authority requiring an expert's testimony on regulatory requirements to be based on specialized FDA experience. (Mem. at 15-18 (citation omitted) (citing authority).)[2]

---

[1] While the court in *Crockett v. Luitpold Pharmaceuticals, Inc.*, No. CV 19-276, 2023 WL 2162600, at *2 (E.D. Pa. Feb. 22, 2023) (cited in Opp'n at 6) permitted a doctor to opine on the adequacy of warnings, the doctor there had conducted extensive clinical research and authored articles regarding the at-issue medication. Dr. Russo does not have equivalent experience. And in any event, the *Crockett* court appears to have conflated qualifications with reliability. *Id.* at *3 (finding reliability based on a doctor's "experience").

[2] Plaintiff accuses Defendants of ignoring ZHP's alleged "failure to provide [warning] information to the FDA[.]" (Opp'n at 10.) But Dr. Russo was utterly unaware of the rules governing a company's disclosure requirements to the FDA. (Russo Dep. 132:9-133:15 (Mem. Ex. 2).) Thus, Plaintiff's effort to attack ZHP merely underscores Dr. Russo's lack of regulatory qualifications.

6

Plaintiff's attempts to cobble together a so-called methodology for Dr. Russo's regulatory opinions fares no better. Although Plaintiff claims that Dr. Russo's mere reference to certain FDA regulations somehow qualifies as a "standard . . . in forming [his] opinions" (Opp'n at 8-9), an expert cannot simply recite an FDA regulation or document and call it a proper methodology. Rather, expert opinions must include "regulatory analysis" to be admissible. *Hines v. Wyeth*, No. 2:04-0690, 2011 U.S. Dist. LEXIS 74011, at *17-20 (S.D. W. Va. July 8, 2011) (cited in Opp'n at 8). Although Plaintiff contends that Dr. Russo's regulatory testimony "complies" with the holding in *Staub v. Breg, Inc.*, No. CV 10-02038-PHX-FJM, 2012 WL 1078335, at *2-3 (D. Ariz. Mar. 30, 2012) (cited in Opp'n at 8), that case prohibited an expert with undisputed "qualification[s] as an expert on . . . the federal regulatory scheme governing [prescription medical device products]" from "simply read[ing] [FDA] documents that jurors may read and interpret for themselves," and instead required that the expert "must provide some analysis, opinion, or expertise when testifying about the regulatory process[.]" *Id*. Dr. Russo does not "provide [any] analysis" with respect to the FDA documents he seeks to opine on (nor would he be qualified to do so). (*See* Mem. at 17-18.) And if the regulatory documents cited by Dr. Russo merely contain "undisputed fact[s]" as Plaintiff claims (Opp'n at 12), there is no reason for Dr. Russo to present this evidence under the guise of expert regulatory opinions.

7

Plaintiff also claims that Dr. Russo's reliance on other experts is "a matter for cross examination" because Dr. Russo cannot be expected to replicate the work of an organic chemistry expert. (Opp'n at 10-11.) But Plaintiff does not dispute that Dr. Russo did absolutely nothing to independently verify the veracity of the information contained in Drs. Hecht and Plunkett's reports, and such "unblinking reliance" on other experts' opinions renders Dr. Russo's opinions inadmissible under Rule 702. (*See* Mem. at 19-20.)

### IV. DR. RUSSO'S OPINIONS CONCERNING ZHP'S ETHICAL RESPONSIBILITES SHOULD BE EXCLUDED.

Plaintiff baldly claims that Dr. Russo is not offering an improper ethical opinion, but is merely commenting on ZHP's "wrongdoing." (Opp'n at 12.) This is a distinction without a difference. As Plaintiff's cited case clearly explains, an expert may "not infuse [expert opinions with] his personal views as to whether [the company] acted ethically, irresponsibly or recklessly." *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053-54 (D. Minn. 2007) ("Personal views on corporate ethics and morality are not expert opinions.") (cited in Opp'n at 12). Dr. Russo's commentary on ZHP's actions—including that ZHP withheld "material information" and abdicated its "responsibility [as] th[e] drug company" to ensure "the safety of the production of that . . . drug"—runs afoul of this general principle. (Mem. at 20-22.)

## V. DR. RUSSO'S REPORT CONTAINS IMPROPER SUMMARIES OF EVIDENCE.

Lastly, Plaintiff does not dispute that Dr. Russo's report contains mere recitation of various pieces of evidence, including Dr. Robert Robichaux's deposition testimony. (Opp'n at 9.) Rather, Plaintiff argues that Dr. Russo "can[] discuss . . . the record" as part of his expert opinions. (*Id*.) But Plaintiff wholly fails to explain ***how*** Dr. Russo utilized the record evidence to form his opinions; indeed, Plaintiff can only claim that Dr. Russo "***recited*** the key facts[.]" (*Id.* at 10 (emphasis added).) As Defendants explained in their opening brief (with supporting examples that Plaintiff failed to address), this "recit[ation]" of record evidence is improper. (Mem. at 22-25.) And Plaintiff also does not dispute that the documents and depositions Dr. Russo seeks to narrate to jurors were hand-picked by Plaintiff's counsel, making his regurgitation of them all the more problematic. (*Id.* at 25.) For these reasons, Dr. Russo's summaries of evidence are improper and should be excluded.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' opening brief, the Court should exclude Dr. John Russo's opinions.

Dated: July 17, 2025                    Respectfully submitted,

*/s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**

9

601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Allison M. Brown
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Nina R. Rose (*pro hac vice*)
Jordan M. Schwartz (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
Fax: (202) 389-5200
nina.rose@kirkland.com
jordan.schwartz@kirkland.com

*Attorneys for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*

10

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on July 17, 2025, a true and correct copy of the foregoing document was served upon counsel of record via operation of the Court's electronic filing system.

Dated: July 17, 2025

Respectfully submitted,

*/s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

*Attorney for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*