# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br><br>**This Document Relates to:**<br>*Roberts v. Zhejiang Huahai Pharmaceutical Co. Ltd.*<br><br>Case No. 1:20-cv-00946-RMB-SAK | MDL No. 2875<br><br>Honorable Renée Marie Bumb<br>Chief District Court Judge |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.    PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION. ...................2

    A.    Plaintiff Lacks Admissible Expert Evidence Of General And Specific Causation. .................................................................................2

    B.    Plaintiff's Evidence Would Be Insufficient To Survive Summary Judgment Even If Her Experts' Testimony Were Admissible.............6

II.    SEVERAL OF PLAINTIFF'S CLAIMS INDEPENDENTLY FAIL AS A MATTER OF LAW...............................................................................13

    A.    Plaintiff's Strict Liability Claims (Counts I-III) Are Subsumed By The AEMLD................................................................................13

    B.    Plaintiff's Warranty Claims (Counts V-VII) Fail For Lack Of Pre-Suit Notice. .......................................................................................13

    C.    Plaintiff's ADTPA Claim (Count X) Fails For Multiple Reasons. ................................................................................................14

CONCLUSION ...................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Archie v. Pop Warner Little Scholars, Inc.*,
    No. 16-cv-6603 PSG, 2019 U.S. Dist. LEXIS 229445
    (C.D. Cal. Dec. 27, 2019) ............................................................................. 11-12

*Bean-Sasser v. Secretary of Health & Human Services*,
    127 Fed. Cl. 161 (2016) ........................................................................................3

*Bianchi v. B & G Mach., Inc.*,
    No. 22-2172, 2023 WL 1879468 (3d Cir. Feb. 10, 2023)...................................13

*Broach-Butts v. Therapeutic Alternatives, Inc.*,
    191 A.3d 702 (N.J. Super. Ct. App. Div. 2018) ....................................................6

*Broad v. Home Depot U.S.A., Inc.*,
    16 F. Supp. 3d 413 (D.N.J. 2014)................................................................. 14-15

*Chamberlain v. United States Postal Serv.*,
    Nos. 1:16-cv-04941-NLH-AMD, 1:18-cv-01700-JBS-AMD, 2020
    U.S. Dist. LEXIS 9614 (D.N.J. Jan. 17, 2020) .................................................10

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988)...............................................................................................4

*Copley v. Bactolac Pharmaceutical, Inc.*,
    No. 18-CV-575 (FB) (PK), 2021 WL 918313
    (E.D.N.Y. Mar. 10, 2021)....................................................................................15

*Dowdy v. Suzuki Motor Corp.*,
    567 F. App'x 890 (11th Cir. 2014) .......................................................................7

*Fagan v. City of Vineland*,
    22 F.3d 1283 (3d Cir. 1994) .................................................................................4

*Feit v. Great Western Life & Annuity Insurance Co.*,
    271 F. App'x 246 (3d Cir. 2008) ..................................................................... 5-6

*Fuller v. Winn-Dixie Montgomery, LLC*,
  No. 16-00363-KD-M, 2017 WL 3098104 (S.D. Ala. July 19, 2017) .................9

*In re General Motors LLC Ignition Switch Litigation*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) ...................................................14

*In re Johnson & Johnson Talcum Powder Products Marketing, Sales*
  *Practices, & Products Liability Litigation*,
  MDL No 2738, 2024 U.S. Dist. LEXIS 5040 (D.N.J. Jan. 9, 2024)...................7

*Lowery v. Sanofi-Aventis LLC*,
  535 F. Supp. 3d 1157 (N.D. Ala. 2021)........................................13, 14

*Morguson v. 3M Co.*,
  857 So. 2d 796 (Ala. 2003)..................................................2, 6, 8

*Morris v. AngioDynamics, Inc.*,
  716 F. Supp. 3d 1205 (M.D. Ala. 2024)...........................................14

*Rauso v. United States*,
  No. CV20320ZNQRLS, 2023 WL 3736353
  (D.N.J. May 31, 2023) ........................................................11

*Storey v. Transformhealthrx, Inc.*,
  No. 415-149, 2024 U.S. Dist. LEXIS 28737
  (S.D. Ga. Feb. 20, 2024) .......................................................5

*Ex parte Valdez*,
  636 So. 2d 401 (Ala. 1993).......................................................7

*In re Viagra Products Liability Litigation*,
  658 F. Supp. 2d 936 (D. Minn. 2009).............................................3-4

*Ex parte Vongsouvanh*,
  795 So. 2d 625 (Ala. 2000)......................................................7, 8

*In re Zantac (Ranitidine) Litigation*,
  No. 255, 2024, 2025 WL 1903760, --A.3d-- (Del. July 10, 2025)..................8-9

*In re Zostavax Products Liability Litigation*,
  579 F. Supp. 3d 675 (E.D. Pa. 2021)..............................................6

**Statute**

Ala. Code § 7-2-103(1)(a)...........................................................................................13

## **INTRODUCTION**

Mr. Roberts had cirrhosis of the liver in 2016 (before he was exposed to NDMA in valsartan), increasing his risk of hepatocellular carcinoma ("HCC") by *3,000% to 4,500%*. (SUMF ¶¶ 24, 26, 28.) That enormous, well-established risk is hundreds of times higher than the "slight[]" 12% or 16% elevated risk of liver cancer that a few studies have associated with NDMA in valsartan, rendering Plaintiff's experts' causation opinions highly unreliable and making it impossible for Plaintiff to prove to a jury that valsartan—and not Mr. Roberts' many established risk factors—caused Mr. Roberts to develop HCC. (*Id.* ¶¶ 12-13.)[1] Plaintiff's efforts to avoid this dispositive conclusion all fail.

***First***, Plaintiff falsely claims that Defendants' motion hinges on relitigating general causation. (Opp'n at 1.) Not so. The parties have not previously "litigated" whether NDMA in valsartan causes HCC, much less done so based on the current state of the science. But more importantly, the parties have never before addressed whether NDMA in valsartan caused a specific Plaintiff to develop cancer. The bulk of Defendants' motion argues that, even assuming Plaintiff's experts' general causation opinions are admitted, Plaintiff cannot prove that NDMA in valsartan was the but-for cause of his HCC—i.e., absent this exposure, "the injury or harm would

---

[1]    This translates to an absolute risk of 0.191%, as Defendants have previously explained. *See* Willy Gomm et al., *N-Nitrosodimethylamine-Contaminated Valsartan and the Risk of Cancer*, 118 Medicine 357, Table 2 (2021) (Mem. Ex. 4).

not [have] occur[ed]"—because the increased risk of HCC associated with Mr. Roberts' non-valsartan-related conditions (most notably, his cirrhosis) is hundreds of times higher than the extremely weak risk two papers have associated with valsartan. *Morguson v. 3M Co.*, 857 So. 2d 796, 800 (Ala. 2003). That is dispositive and entitles Defendants to summary judgment.

***Second***, Plaintiff also fails to refute Defendants' claim-specific arguments. Plaintiff concedes that her strict-liability claims (Counts I-III) are subsumed by Alabama's Extended Manufacturer's Liability Doctrine ("AEMLD"). Plaintiff essentially urges the Court to nullify Alabama's firm pre-suit notice requirement for her breach-of-warranty claims, but that is not the role of a federal court sitting in diversity. And Plaintiff does not seriously dispute that her claim under Alabama's Deceptive Trade Practices Act is duplicative of her common-law fraud claims and is separately time-barred.

## **ARGUMENT**

## I.    **PLAINTIFF'S CLAIMS FAIL FOR LACK OF CAUSATION.**

### A.    **Plaintiff Lacks Admissible Expert Evidence Of General And Specific Causation.**

Plaintiff cannot proceed to trial without admissible evidence of general and specific causation. She has neither.

***First***, Plaintiff argues that "general causation has been determined," because Judge Kugler found that certain experts' opinions on this question were admissible

in March 2022. (Opp'n at 23.) But Judge Kugler expressly recognized that the general causation question in personal injury cases is "too idiosyncratic" to address on a global basis (*see* Feb. 28, 2022 Hr'g Tr. 41:3-12, ECF No. 1946), and he also contemplated general causation experts "tak[ing] into account what is discovered" during the case-specific phases of this litigation (Nov. 24, 2020 Hr'g Tr. 13:2-14:15, ECF No. 643). Both of those concerns are implicated here. The focus of the global general causation proceedings was on several different cancers; this case, by contrast, specifically asks whether NDMA in valsartan causes HCC, a particular type of liver cancer. Moreover, there have been significant new scientific developments—namely, Mansouri 2022.

"As medicine and science continue to advance, so does our understanding about the causes of diseases . . . ." *Bean-Sasser v. Sec'y of Health & Hum. Servs.*, 127 Fed. Cl. 161, 167 (2016). And "[w]hen the evidence presented differs [from a prior case], a different result is also plausible." *Id.*; *see also, e.g.*, Text Order, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 16-md-2738 (D.N.J. Mar. 27, 2024), ECF No. 30260 (recognizing "the recent changes to Federal Rule of Evidence 702[] [and] the emergence of new relevant science" warranted revisiting expert reports on, *inter alia*, general causation); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 936, 941-42, 946 (D. Minn. 2009) (vacating prior *Daubert* ruling after "a number of errors in the McGwin

Study" relied upon by a general causation expert were discovered).[2]

Notably, Plaintiff herself designated a new witness, Dr. William Sawyer, whose report reviews the general causation epidemiology, including Mansouri 2022. (Sawyer Rep. at 39-41, 79 (Opp'n Ex. 19).) Mansouri—one of only three studies relevant to the causation questions in this specific case—highlights the unreliability of Dr. Sawyer's opinions. For example, Dr. Sawyer states in his report that there is "no debate" that the strength of the association is "potent" (Sawyer Rep. at 79, 81), but he conceded at his deposition that the 1.12 relative risk reported in Mansouri is "weak" (Sawyer Dep. 111:16-23, 113:13-24 (Mem. Ex. 6)). In her response to the SUMF, Plaintiff contends that Dr. Sawyer was merely testifying "generally" about what qualifies as a weak association. (ECF No. 3118-2 ¶ 14.) But Dr. Sawyer's general testimony that a relative risk "around 1.5" would be "weak" (Sawyer Dep. 111:21-23), directly undermines his claim that the strength of association is "potent" (SUMF ¶ 14 (citing Sawyer Dep. 113:13-18)). And although Dr. Sawyer states in

---

[2]    Plaintiff's cases merely reiterate that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance" but should generally avoid doing so under the law-of-the-case doctrine unless the initial decision was "clearly erroneous[.]" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (cited in Opp'n at 26) (law-of-the-case doctrine did not preclude revisiting jurisdictional decision); *see also, e.g.*, *Fagan v. City of Vineland*, 22 F.3d 1283, 1290-91 (3d Cir. 1994) ("hold[ing] that Judge Bassler did not abuse his discretion by reconsidering whether the defendant police officers were entitled to summary judgment . . . ."). Here, Judge Kugler did not address the particular causation issue, much less do so based on the current scientific record.

his report that the literature supports a dose-response relationship (i.e., risk increased with amount of exposure), Mansouri 2022 found an ***inverse*** relationship between dose and disease.[3] Rather than address any of these methodological holes in her opposition, Plaintiff asserts that "Defendants' own experts admit that NDMA has 'the potential to be . . . carcinogenic.'" (Opp'n at 27.) What the expert actually said is that a government toxicological profile considers it a potential carcinogen. (*See* Prueitt Dep. 112:9-17 (Opp'n Ex. 21) ("That is what is believed from the -- as mentioned in the ATSDR toxicological profile.").) In any event, the question is whether NDMA ***in valsartan*** causes HCC in humans, and the science simply does not show causation.

***Second***, Plaintiff asserts that Dr. Siddiqui "used reliable methodologies" and performed a differential diagnosis in opining on specific causation. (*See* Opp'n at 8, 31.) However, Plaintiff must do more than "claim[] that [Dr. Siddiqui] performed a differential diagnosis[.]" *Storey v. Transformhealthrx, Inc.*, No. 415-149, 2024 U.S. Dist. LEXIS 28737, at *22 (S.D. Ga. Feb. 20, 2024) (citation omitted). She must also demonstrate that the method was "properly performed[.]" *Feit v. Great W. Life & Annuity Ins. Co.*, 271 F. App'x 246, 254 (3d Cir. 2008). Dr. Siddiqui disregarded the relevant epidemiologic literature and the elementary concepts of dose and latency in "ruling in" valsartan as a cause of Mr. Roberts' HCC and brushed aside

---

[3]    Mansouri 2022 at 9 (Mem. Ex. 5).

his cirrhosis in "ruling out" other causes. Plaintiff cannot fill this gaping hole by relying on the opinions of Drs. Sawyer and Mele (Opp'n at 31-33), neither of whom even attempted to perform a differential diagnosis. *In re Zostavax Prods. Liab. Litig.*, 579 F. Supp. 3d 675, 681 (E.D. Pa. 2021) (excluding specific causation opinion where expert "has not conducted a valid differential diagnosis"). Accordingly, Plaintiff lacks admissible expert evidence of either general or specific causation.

### B.  **Plaintiff's Evidence Would Be Insufficient To Survive Summary Judgment Even If Her Experts' Testimony Were Admissible.**

Even if Plaintiff's experts' opinions are admitted, their testimony would not suffice to establish that NDMA in valsartan "produce[d] [Mr. Roberts'] injury . . . and [that absent this exposure] the injury or harm would not occur." *Morguson*, 857 So. 2d at 800. This is so because the relative risks of HCC associated with Mr. Roberts' cirrhosis, MASLD/MASH, diabetes, and obesity are hundreds or thousands of times higher than the "slight[]" elevated risk associated with NDMA in valsartan. (SUMF ¶¶ 24, 26; *see id.* ¶ 28 (Dr. Hooks testifying that "[i]f you have cirrhosis, there's a ***two hundred times greater*** chance of having [HCC] than the general population") (emphasis added).) Plaintiff's arguments in response are meritless.

***First***, Plaintiff proposes applying the wrong state's law (New Jersey's) in an effort to lower her causation burden. (Opp'n at 29 (citing *Broach-Butts v. Therapeutic Alternatives, Inc.*, 191 A.3d 702, 711 (N.J. Super. Ct. App. Div. 2018)).) This case, however, is unquestionably governed by Alabama law. The Case

Management Order governing direct-filed cases like this one makes clear that commencing suit "in this MDL . . . shall have no impact on the choice of law . . . that would apply otherwise to an individual action had it been originally filed in another district court and transferred to this Court pursuant to 28 U.S.C. § 1407." (CMO No. 3 ¶ 2.7, ECF No. 76.) As other courts have explained, "the MDL court ordinarily applies the choice of law rules of 'a court sitting in the state where the case originated.'" *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No 2738, 2024 U.S. Dist. LEXIS 5040, at *11-12 (D.N.J. Jan. 9, 2024) (citation omitted). This case originated in Alabama because that is where Mr. Roberts used the valsartan that allegedly caused his HCC. *Id.* And under Alabama's lex loci delicti choice-of-law rules, that state's causation law applies. *See Dowdy v. Suzuki Motor Corp.*, 567 F. App'x 890, 892 (11th Cir. 2014) (applying Indiana causation law because the plaintiff "was injured in Indiana").

**Second**, Plaintiff also argues that "even if Alabama law applied," she need only prove that "the agent was a contributing cause." (Opp'n at 29-30 (citing *Ex parte Valdez*, 636 So. 2d 401 (Ala. 1993), and *Ex parte Vongsouvanh*, 795 So. 2d 625 (Ala. 2000)).) But Plaintiff cites cases from the workers' compensation context, where "[i]t is not necessary that the employment conditions be the sole cause, or dominant cause, so long as they are a contributing cause." *Valdez*, 636 So. 2d at 403 (quoting Arthur Larson, *The Law of Workmen's Compensation* § 41.64(c) (1991)).

Plaintiff does not identify a single case that applies this standard outside of the labor and employment context. (*See* Opp'n at 30 (citing *Vongsouvanh*, 795 So. 2d 625 (involving claims under Alabama's workers' compensation laws).) By contrast, Defendants cited Alabama Supreme Court authority clearly recognizing that outside those narrow contexts, a plaintiff must prove that the defendant's conduct "produce[d] an injury . . . **without which the injury or harm would not occur**." *See Morguson*, 857 So. 2d at 800 (emphasis added). This Court should decline Plaintiff's request to abrogate governing Alabama tort law standards.

**Third**, Plaintiff argues that there is "ample" evidence capable of supporting causation (Opp'n at 28), but the examples she highlights would not even suffice under the weaker causation standard she presses the Court to adopt. For example, Plaintiff claims that "Dr. Sawyer found a 2.86-fold increased risk of liver cancer after Mr. Roberts' ingestion of NDMA-contaminated valsartan." (Opp'n at 31.) But the so-called 2.86-fold increase in risk is derived entirely from a study of people occupationally exposed to NDMA (and other chemicals) for years in rubber manufacturing facilities. (Sawyer *Daubert* Mem. at 35-39.) As the Delaware Supreme Court explained earlier this month in reversing the admission of a virtually identical opinion by Dr. Sawyer in another NDMA case, his "wholesale dependence on the Hidajat study" is a "'bridge too far[.]'" *See In re Zantac (Ranitidine) Litig.*, No. 255, 2024, 2025 WL 1903760, at *17, --A.3d-- (Del. July 10, 2025) (Dr.

Sawyer's attempt to convert inhalation doses of NDMA into an equivalent oral dose of ranitidine "faced numerous challenges" and was unreliable). And even if Dr. Sawyer's highly speculative extrapolation were admissible, it would still not show that Mr. Roberts' exposure to NDMA in valsartan was more likely the cause of his HCC than the alternative obvious explanation—Mr. Roberts' cirrhosis, which increased his risk of HCC by at least 30-fold (and up to 200-fold). (SUMF ¶¶ 24, 26, 28.) If one source supposedly increased the risk of HCC by 2.86 times, while another well-established risk factor did so by 30-plus times, no reasonable jury could conclude that the first one was the "*proximate and actual cause* of [the plaintiff's] injury." *Fuller v. Winn-Dixie Montgomery, LLC*, No. 16-00363-KD-M, 2017 WL 3098104, at *9 (S.D. Ala. July 19, 2017).

Plaintiff also seeks to manufacture an immaterial factual dispute about whether Mr. Roberts had cirrhosis in 2016. (Opp'n at 3.) For example, Plaintiff's response to Defendants' SUMF cites to Dr. Siddiqui's statement in her report that "I would not have given [Mr. Roberts] an actual diagnosis of cirrhosis at this time." (ECF No. 3118-2, ¶ 21 (citing Siddiqui Rep. at 30).) But Dr. Siddiqui's report clearly states that "it is my opinion that Mr. Roberts had . . . cirrhosis prior to being exposed to valsartan" containing NDMA. (SUMF ¶ 21; *see also id.* (Dr. Siddiqui testified that Mr. Roberts' cirrhosis was "compensated" in April 2016, meaning that he was not yet exhibiting clinical symptoms of cirrhosis.)) Similarly, Plaintiff's other

expert, Dr. Mele, made clear in both his report and testimony that the imaging of Mr. Roberts' CT scan was "compatible with an underlying diagnosis of cirrhosis." (*Id.* ¶ 20 (testimony); *see also id.* ¶ 19 (report).)[4] In any event, whether Mr. Roberts was diagnosed with cirrhosis in 2016 is immaterial. *See Chamberlain v. United States Postal Serv.*, Nos. 1:16-cv-04941-NLH-AMD, 1:18-cv-01700-JBS-AMD, 2020 U.S. Dist. LEXIS 9614, at *13 (D.N.J. Jan. 17, 2020) ("while there is some dispute as to what Ausborn told Marin, the dispute is not as stark as Plaintiff portrays it and to the extent there is a factual dispute at all it is not a material one precluding summary judgment."). Plaintiff admits that "[w]hat is undisputed, is that Mr. Roberts had cirrhosis in 2018 when he was diagnosed with liver cancer." (ECF No. 3097, at 13.) This should be dispositive because, as Plaintiff's response to the SUMF concedes, the literature clearly states that cirrhosis is "'the most potent risk factor' for HCC" (ECF No. 3118-2, ¶ 25 (admitting that "the quoted language does appear in the Tarao study")), while the relative risk of HCC associated with NDMA in valsartan reported in the epidemiological studies is, at most, "slight" (*id.* ¶ 12 (not disputing Gomm authors' finding of a "'slightly increased risk'"); *id.* ¶ 13 (same

---

[4]    Plaintiff's argument that Defendants' expert, Dr. Mahmud, "concede[d] that Mr. Roberts did not have any of the symptoms associated with cirrhosis" is frivolous. (Opp'n at 5.) Dr. Mahmud acknowledged that cirrhosis can sometime be asymptomatic, but he stated repeatedly that "[his] view is that [Mr. Roberts] had already had cirrhosis at this point [April 2016]," and that "cirrhosis is very clearly present at this time [2018] and prior." (Mahmud Tr. 298:18-24, 311:20-21 (Opp'n Ex. 9).)

with respect to Mansouri)).[5]

Plaintiff also asserts that "cirrhosis has a predictable and sequential progression from a healthy pristine liver to a scarred liver, to a cirrhotic non-functioning liver, which takes 7-10 year[s] to develop, to possib[ly], eventually liver cancer." (Opp'n at 3.) But that is precisely why Mr. Roberts' alleged exposure to NDMA in valsartan could not possibly have caused Mr. Roberts' HCC; the latency period was far too short. Plaintiff also downplays testimony of her own expert, Dr. Mele, arguing that he "merely opined that at the time the imaging" was taken in 2016, Mr. Roberts had pre-NDMA liver lesions and "[you] cannot entirely exclude malignancy" of those lesions. (*Id.* at 11.) While Plaintiff may not believe that Dr. Mele's concession is significant, it reinforces that Mr. Roberts' HCC may have actually predated his first exposure to NDMA in valsartan. *See Archie v. Pop Warner Little Scholars, Inc.*, No. 16-cv-6603 PSG (PLAx), 2019 U.S. Dist. LEXIS 229445, at *7 n.2, *15, *37 (C.D. Cal. Dec. 27, 2019) (granting summary judgment where expert "could not rule out" that deaths were caused by other factors), *aff'd*, No. 20-

---

[5]    In her response to the SUMF, Plaintiff cites to Dr. Sawyer's claim that the studies underestimate the true risk of HCC. (*See* ECF No. 3118-2, ¶ 14.) But this is pure conjecture, and Dr. Sawyer's pure ipse dixit, which cannot suffice to overcome the explicit findings of the studies' authors. *See Rauso v. United States*, No. CV 20-320 (ZNQ) (RLS), 2023 WL 3736353, at *7 (D.N.J. May 31, 2023) (even if admissible, "[a]t the summary judgment stage . . . [a]n expert report that merely offers conclusory opinions, without explicit factual foundation, is insufficient to defeat a motion for summary judgment.") (citations omitted).

55081, 2021 U.S. App. LEXIS 27288 (9th Cir. Sept. 10, 2021).

Finally, Plaintiff does not meaningfully address Mr. Roberts' other risk factors for HCC. For example, Plaintiff points to an isolated medical record from 2011 putting Mr. Roberts' BMI at 34.36 (ECF No. 3118-2, ¶ 31), but that is immaterial given the numerous other records cited in the SUMF reflecting a BMI between 37.16 and 40.11, which qualifies as obese or morbidly obese. (SUMF ¶ 31). Similarly, Plaintiff disputes that Mr. Roberts was diagnosed with diabetes in 2007 based on the testimony of Plaintiff's expert, Dr. Siddiqui (ECF No. 3118-2, ¶ 46), which is also immaterial given Dr. Siddiqui's own recognition that Mr. Roberts had it prior to his diagnosis of HCC (Siddiqui Dep. 196:12-14 (Mem. Ex. 11)).[6] And although Plaintiff cites to testimony from Mr. Roberts' treating gastroenterologist stating that NASH and fatty liver disease are different (*see* ECF No. 3118-2, ¶ 42), that doctor clearly testified that he considered Mr. Roberts' history of NASH to be a risk factor for his liver problems (Hooks Dep. 54:3-8 (Mem. Ex. 15)). Accordingly, none of the evidence cited by Plaintiff actually disputes that Mr. Roberts had multiple other well-established risk factors for HCC beyond cirrhosis before his cancer diagnosis. For all of these reasons, there is no material dispute of fact with respect to causation, entitling Defendants to summary judgment.

---

[6]    In any event, Dr. Siddiqui's conclusory claim cannot trump the clear statement by Mr. Roberts' own treating cardiologist, who diagnosed him with diabetes at that time. (SUMF ¶ 46.)

## II.    SEVERAL OF PLAINTIFF'S CLAIMS INDEPENDENTLY FAIL AS A MATTER OF LAW.

### A.    Plaintiff's Strict Liability Claims (Counts I-III) Are Subsumed By The AEMLD.

Plaintiff concedes that Alabama law does not recognize strict liability claims, and that she therefore cannot proceed on the strict liability counts. *See Bianchi v. B & G Mach., Inc.*, No. 22-2172, 2023 WL 1879468, at *1 n.1 (3d Cir. Feb. 10, 2023) (holding that plaintiff "unequivocally conceded that his claim under [state] law was not viable"). Instead, Plaintiff requests that the Court construe those claims as being asserted under the AEMLD. (Opp'n at 33-34.) However, the Complaint does not presently assert a claim under the AEMLD. Thus, the proper procedure is for the Court to dismiss the strict-liability counts, after which Plaintiff can move to amend.

### B.    Plaintiff's Warranty Claims (Counts V-VII) Fail For Lack Of Pre-Suit Notice.

Plaintiff admits there is no evidence of pre-suit notice and argues only that pre-suit notice is not required for warranty beneficiaries. (Opp'n at 34-35.) Mr. Roberts, however, was a buyer, rather than a warranty beneficiary; a buyer is any "person who buys or contracts to buy goods," Ala. Code § 7-2-103(1)(a), and Mr. Roberts repeatedly filled and consumed prescriptions for Valsartan, making him a "buyer" in the chain of distribution. Plaintiff cites no authority to the contrary; in fact, Plaintiff's caselaw defeats her position. In *Lowery v. Sanofi-Aventis LLC*, 535 F. Supp. 3d 1157, 1174-75 (N.D. Ala. 2021) (cited in Opp'n at 34), a patient asserted

warranty claims against the manufacturer of an allegedly defective medical device; the court found that the patient's warranty claims failed for lack of pre-suit notice because he failed to show that "he [was] a warranty beneficiary (as opposed to a buyer)[.]" *Id.* at 1175; *see also Morris v. AngioDynamics, Inc.*, 716 F. Supp. 3d 1205, 1209-10 (M.D. Ala. 2024) (patient was buyer of allegedly defective device where "device was manufactured, sold, and/or distributed by the Defendants to [patient], through his doctors"). The Court should do the same here.

### C.    Plaintiff's ADTPA Claim (Count X) Fails For Multiple Reasons.

Plaintiff's claim under the Alabama Deceptive Trade Practices Act ("ADTPA") fails because a plaintiff may not pursue both common-law claims and an ADTPA claim. (Mem. at 22-23.) Plaintiff argues that parties are allowed "to plead alternative, even inconsistent, theories" (Opp'n at 35), but "[t]here is a split of authority on the question of whether a plaintiff can plead claims under both the ADTPA and common law[.]" *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 405-06 (S.D.N.Y. 2017) (collecting authority). In any event, this case is well past the pleading stage, and as the court in *General Motors* warned, a plaintiff "will . . . need to make an 'election' to pursue either her AD[TPA] claim or her common law fraud claims[.]" *Id.* The time to elect a remedy is now; Plaintiff has all the discovery required to formulate her theory of the case, and maintaining an ADTPA claim at this juncture will only prejudice Defendants. *See Broad v. Home*

*Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 417-18 (D.N.J. 2014) (holding that plaintiff must elect his remedy following discovery).

Plaintiff's ADTPA claim is also time-barred. Plaintiff argues that whether and when Mr. Roberts "discover[ed] or reasonably should have discovered the act or practice which is the subject of the action" is a question for the jury. (Opp'n at 36.) But the facts are undisputed—the widely publicized recall of valsartan occurred in July 2018, followed weeks later by Mr. Roberts' diagnosis of HCC in August 2018. (*See* SUMF ¶ 7; Mem. at 25 (citing authority).) Indeed, the first case in this litigation was filed in August 2018, further demonstrating that a cause of action had accrued at that point. (*See* SUMF ¶¶ 10-11.) Plaintiff does not contest any of these facts, and instead cites inapposite caselaw about delayed recalls (*Copley v. Bactolac Pharm., Inc.*, No. 18-CV-575 (FB) (PK), 2021 WL 918313, at *2 (E.D.N.Y. Mar. 10, 2021)) or suggests that Defendants avoided eliciting testimony from Mrs. Roberts on this issue (Opp'n at 37-38). If Plaintiff wishes to preserve an issue for the jury, it is her burden to produce evidence creating a dispute of fact. Because she has failed to do so, the ADTPA claim is time-barred.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in favor of Defendants.

Dated: July 22, 2025                    Respectfully submitted,

15

*/s/ Jessica Davidson*

Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Allison M. Brown
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Telephone: (215) 268-5000
alli.brown@kirkland.com

Nina R. Rose (*pro hac vice*)
Jordan M. Schwartz (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
Fax: (202) 389-5200
nina.rose@kirkland.com

jordan.schwartz@kirkland.com

*Attorneys for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 22, 2025, a true and correct copy of the foregoing document was served upon counsel of record via operation of the Court's electronic filing system.

Dated: July 22, 2025                    Respectfully submitted,


                                        */s/ Jessica Davidson*
                                        _____
                                        Jessica Davidson (*pro hac vice*)
                                        **KIRKLAND & ELLIS LLP**
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        Tel: (212) 446-4723
                                        jessica.davidson@kirkland.com

                                        *Attorney for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*