# KIRKLAND & ELLIS LLP

Nina Rose, P.C.
To Call Writer Directly:
+1 202 389 3394
nina.rose@kirkland.com

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
United States

+1 202 389 5000

www.kirkland.com

Facsimile:
+1 202 389 5200

August 8, 2025

**VIA ECF**
The Honorable Thomas I. Vanaskie
Special Master for Discovery
Stevens & Lee
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Re: *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-2875-RBK-KMW (D.N.J.)

Dear Special Master Vanaskie:

Per the Court's request at the August 1, 2025 hearing on deposition designations in connection with the *Roberts* case ("August 1 Hearing"), this letter identifies the medical conditions experienced by Gaston Roberts that are referenced in Defendants' contested designations[1] from the deposition of Dr. Darryle P. Bullard, and explains the relevance of those conditions to Plaintiff's claims. (*See* ECF 25 ("8/1/25 Hearing Tr.") 89:21-90:4.)

Dr. Bullard is a pulmonologist who treated Mr. Roberts from 2012 to 2016. Defendants have designated testimony from Dr. Bullard that refers to Mr. Roberts' relevant health profile, including his obesity, obstructive sleep apnea ("OSA"), nonalcoholic steatohepatitis ("NASH"),[2] gastroesophageal reflux disease ("GERD"), paroxysmal atrial fibrillation ("pAF") and coronary

---

[1] Defendants' counter-designations are not referenced in this letter because they either overlap entirely with the designations listed in the table below or are offered only for context and reference medical conditions discussed in testimony designated by Plaintiff.

[2] As explained in the expert report of Defendants' specific causation expert, Dr. Nadim Mahmud, there has been a recent change in the nomenclature used to reference steatotic liver diseases. What was formerly known as NASH is now known as MASH (metabolic dysfunction-associated steatohepatitis) and what was formerly known as NAFLD (non-alcoholic fatty liver disease) is now known as MASLD (metabolic dysfunction-associated steatotic liver disease). (*See* ECF 3072-8, Ex. 9 (4/10/25 Expert Rep. of Dr. Nadim Mahmud) ("Mahmud Rep.") at 23.)

## KIRKLAND & ELLIS LLP

August 8, 2025
Page 2

artery disease ("CAD").[3] At the August 1 Hearing, Plaintiff argued that Dr. Bullard's testimony about a number of these medical conditions should be excluded because the conditions have no relationship to "liver cancer or any of the prescribing decisions for valsartan." (8/1/25 Hearing Tr. 68:3-10; 69:14-18.) In response, Defendants explained that Dr. Bullard's testimony about these medical conditions is relevant to the jury's understanding of: (1) how Mr. Roberts developed hepatocellular carcinoma ("HCC"), and/or (2) his cardiac health, both of which are critical issues in this case. (*Id.* 59:4-24.)

Courts in the Third Circuit have recognized that it is improper for a court to exclude evidence of a personal injury plaintiff's medical conditions where, as here, such conditions are relevant to understanding the nature and cause of the injuries alleged, or probative of the amount of claimed damages. *See, e.g.*, *Burke v. TransAm Trucking, Inc.*, No. 03:06-CV-2090, 2009 WL 10685129, at *2-3 (M.D. Pa. May 13, 2009) (denying request to preclude testimony regarding the plaintiff's medical conditions because "Defendants are allowed to argue that Plaintiff's prior medical conditions may have" affected his alleged injuries); *Newill v. Campbell Transp. Co.*, No. 2:12-cv-1344, 2015 WL 267879, at *3 (W.D. Pa. Jan. 14, 2015) (refusing to exclude evidence of preexisting medical conditions relevant to causation); *Robinson v. Fair Acres Geriatric Ctr.*, No. 15-06749, 2020 WL 1313721, at *5 (E.D. Pa. Mar. 20, 2020) (denying motion to exclude evidence of preexisting conditions because they were probative of causation), *aff'd*, 842 F. App'x 779 (3d Cir. 2021); *Rapine v. Harrah's Atl. City*, No. 2:04-CV-00590, 2005 WL 8176580, at *3 (E.D. Pa. Dec. 6, 2005) (denying motion to preclude testimony on unrelated, preexisting medical conditions where relevant to damages). As set forth in the chart below, each of the medical conditions at issue are relevant to the causation element of Mr. Roberts' personal injury claims, Mr. Roberts' need for valsartan, and/or Plaintiff's alleged damages.[4]

---

[3]  In the interests of compromise, Defendants agree to withdraw the following designations related to different conditions: Bullard Dep. 48:24-51:10; 56:5-57:4.

[4]  In addition to the testimony addressed in this letter, Defendants have identified in Appendix A, attached hereto, other designated deposition testimony from Dr. Ralph Buckley and Dr. Donald Sanders relevant to sleep apnea, NASH, and CAD and pAF that the Court previously excluded at the July 31, 2025 hearing on deposition designations. Defendants respectfully request that the Court reconsider those rulings in light of the arguments herein.

# KIRKLAND & ELLIS LLP

August 8, 2025
Page 3

| Medical Condition | Defendants' Designations | Relevance & Reasons for Admissibility |
|---|---|---|
| Obesity | 40:8-44:24; 54:11-56:4; 60:9-62:17; 63:18-66:4; 66:5-69:10; 69:12-71:1; 72:3-72:12 | Dr. Bullard's testimony about Mr. Roberts' obesity is relevant and admissible because both Defendants' and Plaintiff's experts identify obesity as a risk factor for HCC. Plaintiff conceded at the August 1 Hearing that, if an expert testifies about a medical condition and ties it to the case, evidence related to that condition is admissible. (8/1/25 Hearing Tr. 74:10-12.)<br><br>Defendants' specific cause expert, Dr. Mahmud, notes in his report that "numerous studies have [] demonstrated that obesity is [] an independent risk factor for HCC." (Mahmud Rep. at 24.) As Dr. Mahmud explains, "Mr. Roberts was consistently in the range of class II obesity, which would be expected to **independently confer an approximate ~3 fold increased risk of HCC** relative to a non-obese individual." (*Id.* (emphasis added).) In addition, Plaintiff's specific cause expert, Dr. Fareeha Siddiqui, states in her report that "having excess body weight increases the risk of developing liver cancer, likely because it can result in MASLD and cirrhosis. Obesity can lead to insulin resistance and systemic inflammation, two contributors to liver damage and carcinogenesis." (ECF 3072, Ex. 1 (3/10/25 Expert Report of Dr. Fareeha Siddiqui) ("Siddiqui Rep.") at 22.) |
| Obstructive Sleep Apnea | 33:19-34:16; 38:11-39:11; 40:8-44:24; 54:11-56:4; 71:8-11 | Dr. Bullard's testimony regarding Mr. Roberts' OSA is similarly relevant to the potential causes of Mr. Roberts' HCC. Dr. Mahmud explains in his report that "Mr. Roberts had all of the metabolic comorbidities that are associated with MASLD and MASH that increase risk of progression to cirrhosis, including obesity, . . . hypertension, hyperlipidemia, ***obstructive sleep apnea***, and diabetes mellitus." |

## KIRKLAND & ELLIS LLP

August 8, 2025
Page 4

| Medical Condition | Defendants' Designations | Relevance & Reasons for Admissibility |
|---|---|---|
| | | (Mahmud Rep. at 21 (emphasis added).) In addition, counsel for Plaintiff admitted at the August 1 Hearing that "sleep apnea is a risk factor for NASH," which is "a risk factor or a comorbidity for liver cancer." (8/1/25 Hearing Tr. 64:9-14.) <br><br> Plaintiff's counsel has indicated that Plaintiff is now disputing when and whether Mr. Roberts had NASH. (*See* ECF 24 (7/31/25 Hearing Tr.) 181:20-22 ("Dr. Siddiqui has been very clear about her testimony regarding NASH, and that there wasn't actually a diagnosis of NASH in the records.").) As a result, testimony regarding Mr. Roberts' risk factors for NASH, including OSA, is highly relevant to rebut Plaintiff's argument that Mr. Roberts did not have NASH, which is an established risk factor for HCC. |
| NASH | 69:12-71:1 | Dr. Bullard's testimony on NASH is directly relevant to the issue of causation for similar reasons. As noted above, Plaintiff's counsel stated at the August 1 hearing that NASH is "a risk factor or a comorbidity" for liver cancer. (8/1/25 Hearing Tr. 64:13-14.) This is consistent with the opinion of Dr. Mahmud, who explains in his report that NASH is "a significant independent risk factor for HCC." (Mahmud Rep. at 24.) Indeed, Dr. Mahmud opines that NASH "is the underlying cause of liver disease that led to cirrhosis and HCC in Mr. Roberts' case." (*Id*.) Plaintiff's expert, Dr. Siddiqui, also acknowledges that "studies have indicated that up to 20% of NASH patients go on to develop cirrhosis, which is a major risk factor for HCC." (Siddiqui Rep. at 21.) As a result, there can be no question that treater testimony related to Mr. Roberts' NASH is relevant and admissible. |

## KIRKLAND & ELLIS LLP

August 8, 2025
Page 5

| Medical Condition | Defendants' Designations | Relevance & Reasons for Admissibility |
|---|---|---|
| GERD | 40:8-44:24 | GERD is also relevant to causation because it is associated with obesity, which—as noted above—is an independent risk factor for HCC. Dr. Mahmud testified that "it's relevant to know if someone has GERD because it's another thing that is associated with obesity" and therefore "it's important in this context to understand that the burden of comorbidity that Mr. Roberts had was likely associated with his degree of obesity." (ECF 3099-10, Ex. 9 (5/2/25 Dep. of Dr. Nadim Mahmud) 242:8-16.) Accordingly, treater testimony regarding Mr. Roberts' GERD is relevant and admissible. |
| pAF & CAD | 33:19-34:16; 40:8-44:24 | Dr. Bullard's testimony regarding Mr. Roberts' pAF and CAD is relevant to Mr. Roberts' overall cardiac health, as well as the issue of causation.<br><br>Plaintiff's expert, Dr. Siddiqui, testified that studies addressing the potential causes of HCC show that "[t]he MASLD is the liver part of it, but [the studies are] talking about the cardiology aspect of it. ***They're talking about the coronary artery disease part of it.*** So they're trying to put them [all] together as an umbrella. Not calling it fatty, but they're trying to put it all under one umbrella of a metabolic disorder and that's what I spoke about. So can a metabolic disorder, which consists of diabetes and fatty liver, hyperlipidemia cause HCC? Yes, and I discuss that." (ECF 3075-6, Ex. 7 (4/29/25 Dep. of Dr. Fareeha Siddiqui) 209:9-23 (emphasis added).) Thus, Dr. Siddiqui's own testimony establishes that CAD is relevant to the causation inquiry.<br><br>In addition, Dr. Bullard's testimony with respect to Mr. Roberts' pAF and CAD is highly relevant to understanding Mr. Roberts' baseline health and medical treatment. Because the medication at issue in this case treats hypertension, a cardiovascular |

## KIRKLAND & ELLIS LLP

August 8, 2025
Page 6

| Medical Condition | Defendants' Designations | Relevance & Reasons for Admissibility |
|---|---|---|
| | | condition, Mr. Roberts' cardiovascular health is highly relevant to this case. It is important for the jury to understand that taking Valsartan was important to Mr. Roberts' heart health, and that he was at high risk for cardiovascular complications, such as a stroke, without this medication. Indeed, as Dr. Bullard explained in his designated testimony, Mr. Roberts' "past medical history of paroxysmal atrial fibrillation and coronary artery disease and hypertension are confounding comorbidities which increase cardiovascular risk in patients that have sleep apnea," which includes Mr. Roberts. (ECF 3072-17, Ex. 18 (2/13/25 Dep. of Dr. Darryle Bullard) 33:23-34:2.)<br><br>As the Court recognized at the August 1 hearing, Dr. Bullard's statement about Mr. Roberts' pAF and CAD is not peripheral testimony about an unrelated and irrelevant medical condition, such as a broken ankle; rather, this testimony will inform the jury's understanding about Mr. Roberts' cardiovascular health and related medical treatment. (8/1/25 Hearing Tr. 70:18-25.) Moreover, this testimony is directly relevant to the amount of Plaintiff's claimed damages, which Plaintiff's counsel stated will encompass Mr. Roberts' "impairment" and "loss of enjoyment of life." (*Id*. 82:1-7.) |

For the reasons set forth above, Dr. Bullard's designated testimony regarding Mr. Roberts' obesity, sleep apnea, NASH, GERD, pAF and CAD is not only relevant, but essential, to a fair and complete presentation of the medical evidence in this case. These conditions bear directly on the potential causes of Mr. Roberts' HCC, as well as his cardiac health, both of which are core issues in this case. In addition, Mr. Roberts' health conditions are relevant to Plaintiff's alleged damages. As a result, excluding the testimony identified above would be improper and unduly prejudicial to Defendants.

# KIRKLAND & ELLIS LLP

August 8, 2025
Page 7

                                      Sincerely,

                                      */s/ Nina Rose*

                                      Nina Rose, P.C.