# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Renée Marie Bumb<br>Chief District Court Judge |

## DEFENDANT ZHEJIANG HUAHAI PHARMACEUTICAL CO., LTD.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' REQUEST FOR LEAVE TO FILE A MOTION FOR SANCTIONS

# **TABLE OF CONTENTS**

    **Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .........................................................................................................8

I.     PLAINTIFFS HAVE NOT BEEN PREJUDICED BY THE LACK OF PRE-APRIL 2015 COAS BECAUSE THEY ARE THE SAME AS, AND CUMULATIVE OF, THE HUNDREDS OF COAS PRODUCED. ..................................................................................................8

II.    PLAINTIFFS HAVE BEEN AWARE SINCE DECEMBER 2024 THAT COAS ISSUED BEFORE 2015 WERE DISCARDED PURSUANT TO DISCLSOED DOCUMENT RETENTION POLICIES. ..................................................................................................11

CONCLUSION ....................................................................................................14

# **INTRODUCTION**

Plaintiffs' latest bid for sanctions—based on claims that Defendant Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP") improperly disposed of certain Certificates of Analysis ("COAs") dated prior to April 2015 that accompanied the dimethylformamide solvent ("DMF") used in the manufacture of valsartan API—is a baseless effort to divert attention from the weakness of the actual case set to try in this Court next month.

The two questions raised by the Court at the August 1, 2025 Case Management Conference highlight the two fundamental weaknesses in Plaintiffs' spoliation arguments: (1) the COAs that were discarded were cumulative of hundreds of COAs that Plaintiffs already have because a Chinese national standard in place since 2009 dictated the content of COAs for DMF; and (2) Plaintiffs have known since late last year that ZHP discarded COAs for DMF issued prior to 2015. In fact, Plaintiffs were informed in December 2024 that COAs predating 2015 likely would have been destroyed by ZHP in the ordinary course of business. ZHP also identified in December 2024 the written document retention policies (which had been produced to Plaintiffs in 2020) that governed the disposition of COAs. Indeed, Plaintiffs' counsel stated at conferences with the Court in March 2025 that pre-2015 COAs for DMF had been "destroyed" pursuant to those policies.

1

For these two fundamental reasons, discussed further below, Plaintiffs' request to file a motion for sanctions should be denied.

## BACKGROUND

At the outset of this litigation, Plaintiffs propounded more than 100 separate and very broad document requests. After multiple conferences with the parties, Special Master Schneider issued an order on December 23, 2019 approving Plaintiffs' Third Amended Set of Requests for Production of Documents to All API and Finished-Dose Manufacturing Defendants, and ordering that the materials sought be produced by November 30, 2020.[1] (*See* 12/23/19 Order (ECF 328) at 1; ECF No. 629.) Among the approximately 100 requests was a request for "certificates of analysis or similar documents concerning analysis of the purity or contents of valsartan, including the catalysts and solvents used in the tetrazole ring process, and documents and communications concerning the same." (*Id.*, Ex. A at 8.) Pursuant to this request, ZHP produced the COAs it created in connection with the manufacture of valsartan—i.e., the COAs for valsartan API. (*See* ZHP00075303–ZHP00075784; ZHP00158981–ZHP00164474; ZHP00201585–ZHP00236301.) ZHP did not understand the request to call for COAs created by third-party suppliers that

---

[1] The 2019 Order by Judge Schneider did not, as Plaintiffs' counsel have suggested, "order ZHP to produce" "all certificates of analysis" pertaining to DMF specifically. (7/30/2025 Letter from A. Slater at 4-5 (ECF 3130).) Instead, the order essentially overruled any remaining objections to Plaintiffs' document requests and ordered that requested documents be produced on a rolling basis.

2

accompanied raw materials used in the valsartan manufacturing process. Despite numerous other exchanges in which Plaintiffs asserted that there were deficiencies in ZHP's document production (some of which resulted in motion practice), ZHP's counsel has not identified any record of any communication from Plaintiffs prior to 2023 indicating Plaintiffs believed that ZHP's COA production was deficient because it did not include all third-party supplier COAs.

Rather, it was not until February 3, 2023 (at the deposition of ZHP's proposed chemistry expert, Dr. Fengtian Xue) that Plaintiffs first raised third-party supplier COAs. At that deposition, Plaintiffs questioned Dr. Xue about the content of a COA pertaining to DMF sold in Japan and, when ZHP's counsel objected to the use of that irrelevant document, Plaintiffs' counsel noted that "Certificates of Analysis for the DMF" received by ZHP had not been produced. (2/3/2023 Dr. F. Xue Dep. Tr. 145:17-147:24 (Rose Decl. Ex. 1).) But even then, Plaintiffs did not follow up on that statement by making a request that ZHP produce these materials following the deposition or otherwise inquiring about the COAs. Indeed, it was not until October 2024 that Plaintiffs specifically requested the production of the COAs that were supplied with the DMF solvent used in the valsartan manufacturing process (and other third-party supplier materials such as material safety data sheets ("MSDSs"). (*See* 10/24/2024 Letter from A. Slater to J. Davidson ("Slater 10/24/24 Ltr.") (Rose Decl. Ex. 2).)

3

Following that request, counsel for ZHP investigated the various documents raised by Plaintiffs. On December 10, 2024, ZHP produced a sample of COAs and MSDSs for DMF and other raw materials dated from 2016 through 2018. (*See* 12/10/2024 Email from M. Hansen to A. Slater (Rose Decl. Ex. 3).) In that transmittal, ZHP's counsel informed Plaintiffs that the company was "investigating whether any materials from before 2016 are reasonably available" and that Plaintiffs would be provided with "a further update next week." (*See id.*) On December 17, 2024, ZHP's counsel informed Plaintiffs that ZHP no longer had certificates of analysis for DMF and other materials dated prior to 2015 and that such documents had likely been destroyed in the ordinary course of business. (*See* 8/8/2025 Declaration of Milli Hansen ("Hansen Decl.") ¶ 3 (Rose Decl. Ex. 4).) The relevant document retention policies, which had been produced in November 2020 and were specifically identified for Plaintiffs in December 2024 and again in April 2025, noted that auxiliary documents such as raw material COAs could be discarded after a period of *five* years; i.e., no sooner than five years after receipt. (*See* 12/3/2024 Email from M. Hansen to A. Slater (Rose Decl. Ex. 3); 4/4/2025 Email from M. Hansen to A. Slater (Rose Decl. Ex. 5); Certified Translation of ZHP00703012 Document Retention Policies (Rose Decl. Ex. 6.) As a result, document retention policies that have been in Plaintiffs possession since 2020—and to which Plaintiffs were pointed in both December 2024 and April 2025—indicated that at least some of the COAs

4

dated prior to April 2015 would likely have been destroyed after the litigation began in 2018.

Plaintiffs made a formal request to file a motion for sanctions with respect to the production of COAs pertaining to DMF in advance of the March 3, 2025 CMC ("March 3 CMC"). (*See* 2/27/2025 Letter from A. Slater at 3, ECF 2985.) At the March 3 CMC, Plaintiffs' counsel noted that ZHP had discarded DMF COAs they would have "gotten prior to 2015" and argued that "[t]he fact that those documents are gone is a big problem." (3/3/2025 CMC Tr. 30:23-31:6 (ECF 2992); *see also* 3/28/2025 Hearing Tr. 14:25-15:2 (ECF 3020) (Plaintiffs' counsel discussing ZHP document retention policies and asserting that ZHP had stated that it "destroyed" pre-2015 COAs for DMF and "there's nothing before 2015").)

Following the March 3 CMC, ZHP produced to Plaintiffs approximately 750 COAs it received from suppliers pertaining to raw materials used in the valsartan manufacturing process, including 229 COAs pertaining to DMF. In addition, ZHP produced approximately 229 internal ZHP inspection reports relating to DMF. ZHP also provided Plaintiffs a translated copy of HG/T 2028-2009, the Chemical Industry Standard of the People's Republic of China for dimethylamine (the "Chinese National Standard"), which has provided the substantive content for COAs for DMF since 2009. (See 3/24/2025 Email from M. Hansen to C. Geddis (Rose Decl. Ex. 7) and attached Certified Translation of HG/T 2028-2009 (Rose Decl. Ex. 8).) Notably,

5

the language included in the DMF COAs produced by ZHP (i.e., "Alkalinity (calculated as Dimethylamine)[2]" is the language in the Chinese National Standard. (*See id.* at 5.) In addition, ZHP agreed to produce a corporate representative to provide deposition testimony regarding the "contents and interpretation of the documents, and the use and distribution of the documents." (6/11/2025 Notice to Take Videotaped Oral Deposition (ECF 3085).)

Ms. Jucai Ge, ZHP's former head of Quality Assurance at the site where valsartan API was manufactured, was deposed remotely from Hong Kong on July 10 & 11, 2025 regarding the COA documents. Ms. Ge confirmed at her deposition that the specifications for DMF are governed by the Chinese National Standard and therefore COAs for DMF received in and prior to 2015 would have contained the same information included in the hundreds of COAs for DMF that ZHP has produced. (*See* 7/11/2025 J. Ge. Dep. 145:6-20 (Rose Decl. Ex. 9).) Even though Plaintiffs' Rule 30(b)(6) Deposition Notice did not identify the retention of COAs as a topic to be explored at the deposition, Ms. Ge testified that COAs for DMF were retained in conformance with ZHP's document retention policies and that, consistent with ZHP's standard operating procedures ("SOPs"), the destruction of these COAs in the ordinary course of business would have been documented by ZHP. (7/10/2025

---

[2] DMF COAs received from one of ZHP's DMF suppliers simply state "Alkalinity," which is also consistent with the Chinese National Standard.

6

J. Ge. Dep. 80:22-83:4 (Rose Decl. Ex. 10).) Plaintiffs then requested the production of the documentation of record destruction described by Ms. Ge, which ZHP identified, obtained certified English translations of, and produced to Plaintiffs on July 23, 2025. These records confirm that certain COAs were destroyed after the litigation began, as would have been expected based on the ZHP document retention policy produced to Plaintiffs in November 2020 (and identified to Plaintiffs in December 2024 and again in April 2025). Specifically, COAs from 2012 were discarded in 2020, COAs from 2013 were discarded in 2022, COAs from 2014 were discarded in 2023, and COAs from 2015 were discarded in 2024.

In advance of the August 1 CMC, Plaintiffs again asked that the Court grant them leave to file a motion for sanctions based on ZHP's failure to retain COAs predating April 2015. (*See* 7/30/2025 Letter from A. Slater at 11 (ECF 3130).) Following the August 1 CMC, during which the Court requested the instant submission from ZHP (*see* 8/1/2025 CMC Tr. 42:3-43:3 (ECF 3133)), ZHP communicated with two different distributors of DMF purchased by ZHP during the relevant time period and requested sample COAs for DMF issued by the manufacturers of the DMF purchased by ZHP prior to 2016. (*See* Certified Translation of the Declaration of Min Hu and accompanying appendices("Hu Decl.") ¶¶ 1-3 (Rose Decl. Ex. 11) One distributor provided COAs pertaining to DMF manufactured by Zhejiang Jiangshan Chemical Co., Ltd. ("Jiangshan") that

7

are dated April 2012, July 2012, and May 2015—all of which include the same language regarding the amount of "Alkalinity (calculated as Dimethylamine)" that appears in well over 100 of the COAs produced by ZHP. (*Id.* ¶ 2; Appx. A.) The distributor that sold ZHP DMF manufactured by Shandong Hualu Hengsheng Chemical Co., Ltd. ("Shandong Hualu") during the relevant period reported that it no longer had COAs for DMF predating 2016 but confirmed that, during that period, the COA for DMF produced by Shandong Hualu Hengsheng Chemical Co., Ltd. was "executed according to [] [China's] national industry standard that took effect in 2009." (*Id.* ¶ 3; Appx. B.)[3]

## ARGUMENT

**I. PLAINTIFFS HAVE NOT BEEN PREJUDICED BY THE LACK OF PRE-APRIL 2015 COAS BECAUSE THEY ARE THE SAME AS, AND CUMULATIVE OF, THE HUNDREDS OF COAS PRODUCED.**

The Court's first question at the August 1 CMC was whether a motion for sanctions would be fruitless because the pre-April 2015 COAs are "the same" as the later COAs that have been produced and therefore "the plaintiff wasn't prejudiced"

---

[3] In response to the Court's request that counsel discuss whether it is possible to resolve this issue through a stipulation (8/1/2025 CMC Tr. 55:24-25) (ECF 3133), ZHP proposed a stipulation to Plaintiffs regarding the pre-2015 DMF COAs (8/4/2025 Email from M. Hansen to A. Slate (Rose Decl. Ex. 12).) As of the time of this filing, ZHP is awaiting a counter proposal from Plaintiffs regarding that stipulation.

8

because "it's no harm, no foul." (8/1/2025 CMC Tr. 43:4-7 (ECF 3133).) The answer to that question is yes.

The record is clear that there is no possible prejudice to Plaintiffs because ZHP has produced more than 200 COAs for DMF issued in 2015 and later that were governed by the same Chinese National Standard for DMF applicable to the earlier COAs, and therefore included the same substantive information. Indeed, exemplars of pre-2015 COAs for DMF recently obtained from one of ZHP's suppliers confirm that this is the case. (*See generally* Hu Decl. ¶ 2 & Appx. A.)

The Chinese National Standard for DMF, which was adopted in 2009, sets forth, among other things, the technical requirements for DMF sold in China. (*See* Certified Translation of HG/T 2028-2009).) Those technical requirements include acceptable levels for different components or properties of the DMF being sold and provide the analytical methods to be used in testing those properties. (*Id.*) One such property of DMF that must be measured pursuant to the Chinese National Standard is the solvent's "Alkalinity (calculated as Dimethylamine)." (*Id.*) Consistent with this technical requirement, the hundreds of COAs for DMF solvent that ZHP has produced include a measurement of alkalinity that is labeled as either "alkalinity" or "Alkalinity (calculated as Dimethylamine)." In addition, the COAs all reference the Chinese National Standard (effective since 2009), to which the COAs for DMF

9

adhered, which is why the substantive content (aside from actual testing results) is the same across COAs.

Plaintiffs have presented no evidence to suggest that COAs for DMF sold in China (and purchased by ZHP) prior to April 2015 would include different information than what is dictated in the Chinese National Standard. Indeed, the evidence in the record is to the contrary. Plaintiffs specifically asked Ms. Ge at her deposition whether the "certificates of analysis and inspection reports for the prior years [are] the same in format and substance as the ones that were provided to" Plaintiffs. (7/11/2025 J. Ge. Dep. 144:18-145:20.) In response, Ms. Ge testified under oath that "COA issued by manufacturers" prior to April 2015 are the same as those produced by ZHP because they were governed "by the same . . . Chinese industrial standard for DMF."[4] (*Id*.)

In addition, as noted above, ZHP has obtained exemplar COAs for DMF sold by its own DMF suppliers prior to April 2015, and these COAs are consistent with the Chinese National Standard, and therefore substantively the same as the many DMF COAs ZHP produced. (*See generally* Hu Decl. & Appendices.) Specifically, COAs for DMF manufactured by ZHP supplier Jiangshan that are from April 2012

---

[4] In addition, Ms. Ge testified that ZHP's corresponding internal "inspection reports" for DMF received prior to April 2015 "are the same" as the later in section reports that were produced "because we did that pursuant with our SOP." (*Id*.)

10

and July 2012 provide computations for the "Alkalinity (calculated as Dimethylamine)" of the DMF, just as the post-April COAs that ZHP produced do. (*Id*. ¶ 2 & Appx. A.) In addition, the distributor of DMF manufactured by Shandong Hualu provided confirmation that COAs for DMF sold to ZHP between 2009 and 2015 would have conformed to the Chinese National Standard. (*Id*. ¶ 3 and Appx. B.) Notably, Shandong Hualu is the manufacturer that issued the 2010 COA for DMF sold in Japan that Plaintiffs found on the internet, which did not have to conform to the Chinese National Standard. (*See* 8/1/2025 CMC Tr. 50:19-52:12 (ECF 3133).)

In short, the evidence in this case establishes that the pre-2015 COAs for DMF discarded by ZHP pursuant to its document retention policies were substantively the same as, and therefore duplicative of, the hundreds of COAs that ZHP has produced. Accordingly, Plaintiffs have not suffered any prejudice as a result of ZHP's failure to retain pre-April-2015 COAs for DMF and have no basis for a motion for spoliation sanctions based on the loss of these materials. As a result, Plaintiffs' request for leave to file such a motion should be denied.

## II. PLAINTIFFS HAVE BEEN AWARE SINCE DECEMBER 2024 THAT COAS ISSUED BEFORE 2015 WERE DISCARDED PURSUANT TO DISCLSOED DOCUMENT RETENTION POLICIES.

The Court also asked the parties to provide evidence as to when Plaintiffs' counsel "was told that [pre-April-2015 COAs] no longer exist" and when Plaintiffs'

11

counsel "was told that they were destroyed in contravention of Judge Schneider's order" regarding the timing of production of documents.[5] (8/1//2025 CMC Tr. 42:24-43:3 (ECF 3133).) At the August 1 CMC, Plaintiffs' counsel represented to the Court that Plaintiffs first "learned [ZHP] destroyed the documents about a week ago." (*Id.* 37:9-19.) This is untrue. The record establishes that ZHP repeatedly told Plaintiffs' counsel over the last eight months that DMF COAs that predate 2015 were likely destroyed in the ordinary course of business pursuant to document retention policies that have been in Plaintiffs' possession for years.

As detailed above, Plaintiffs specifically requested the production of COAs pertaining to DMF and other specific raw materials used in the valsartan manufacturing process in late October 2024. (*See* Slater 10/24/24 Ltr.) On December 17, 2024 counsel for ZHP informed Plaintiffs' counsel that "COAs for DMF issued prior to 2015 had likely been destroyed in the ordinary course of business." (Hansen Decl. ¶ 3.)[6] In addition, in December 2024, ZHP's counsel pointed Plaintiffs to ZHP's document retention policies (*see* 12/3/2024 Email from M. Hansen to A. Slater (Rose Decl. Ex. 3)), which included retention policies governing raw material

---

[5]   *See* footnote 1 *supra.*

[6]   Contrary to assertions made by Plaintiffs, ZHP never represented to Plaintiffs' counsel that it did not have any COAs for DMF. ZHP did not produce COAs for DMF because it did not interpret Plaintiffs' 2019 document requests as requiring the production of those materials.

12

COAs, that were produced to Plaintiffs in November 2020. And, in April 2024, ZHP provided Judge Vanaskie and Plaintiffs with certified English translations of those documents. (*See* 4/4/2025 Email from M. Hansen to Hon. T. Vanaskie (Rose Decl. Ex. 13).) Those policies state that auxiliary documents such as raw material COAs could be discarded after a period of at least five years. (*See* Certified Translation of ZHP00703012, Document Retention Policies at ZHP00703018 (Rose Decl. Ex. 6).) As a result, the document retention policies indicate that at least some of the COAs dated prior to April 2015 would likely have been destroyed after the litigation began in 2018.

In addition, the fact that DMF COAs issued prior to the 2015-2016 timeframe were destroyed was discussed at meet-and-confers and conferences with the Court in late 2024 and early 2025. (*See supra* at 6-7.) As noted above, Plaintiffs' counsel expressly argued at the March 3 CMC that they had requested the production of DMF COAs from "prior to 2015" and "[t]he fact that those documents are gone is a big problem." (March 3 CMC 30:23-31:6.) Thus, the record is clear that Plaintiffs have been aware since late 2024, and certainly by March 2025, that ZHP destroyed COAs for DMF dated prior to April 2025 pursuant to its document retention policies.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' request for leave to file a motion for sanctions based on ZHP's failure to retain pre-April-2015 COAs for DMF solvent.

Dated: August 8, 2025                                 Respectfully submitted,

*/s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Nina R. Rose (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
nina.rose@kirkland.com

*Attorneys for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2025, a true and correct copy of the foregoing document was served upon counsel of record via operation of the Court's electronic filing system.

Dated: August 8, 2025

Respectfully submitted,

*/s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

*Attorney for Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Solco Healthcare U.S., LLC, and Prinston Pharmaceutical Inc.*