# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. RENÉE MARIE BUMB CIVIL NO. 19-2875 (RMB) |

# TPP PLAINTIFFS' RESPONSE TO TPP DEFENDANTS' SUPPLEMENTAL SUBMISSION REGARDING "LAW OF THE CASE" ON GENERAL CAUSATION

## I. INTRODUCTION

The focus of the economic loss cases never contemplated general causation as a component of economic loss *valuation*. Rather, all parties understood that the balancing was the unacceptable risk posed by the contamination versus Defendants' argument that the pills still had efficacy. Everyone (including Defendants) has long agreed that NDMA and NDEA are properly classified as probable human carcinogens.[1] If a jury found Defendants' VCDs contamination was material, and/or that the pills were adulterated, then they could be found to be worthless, or worthless if the defense persuaded the jury that they had some value.

This damages approach, which had already "achieved validation" in the case law (*see* ECF 2261, at 88-89), later found further validation in *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1178 & n.14 (3d Cir. 2024) (a jury may find that "adulterated [drugs] are worthless based on the FDCA's explicit [legal] prohibition" of their sale). **Establishing contamination/adulteration and resulting impact on the value under this paradigm expressly excluded any connection to "biologic" mechanisms or to any general causation of injury standards**. *See* ECF 2657, at 7-8 & n.5. Defendants filed four separate summary judgment motions on whether

---

[1] *See, e.g.*, ECF 2607, at 123-124 (ZHP's Response to TPP Plaintiffs' Statement of Undisputed Material Facts, "admitting" that "NDMA and NDEA are probable human carcinogens").

1

their VCDs were adulterated. Judge Kugler denied all four, stating this was a jury issue.

Defendants actually agreed that general causation of cancer was not relevant to this trial; they moved to exclude "references to cancer-related terms," which this Court granted.[2] Consistent with that, this Court initially indicated that evidence of general causation evidence should not be admissible at all from either side.[3] The Court subsequently told the parties to avoid using the word "cancer" and warned the Court would be "policing" any efforts to put general causation evidence before the jury.[4]

After several months, the Court's view changed. The April 7, 2025 ruling (ECF 3018) directed that general "causation must be front and center" at trial on the breach of warranty claims. Defendants' latest brief (ECF 3126) ignores this fundamental shift. Even if general causation was expected to be a component of the economic loss trials – which it was not as discussed herein – the required linkage of

---

[2] *See* ECF 2649 at 8-9 (defense motion *in limine* to exclude "Unnecessary References to Unrelated Terms"); 7/23/24 CMC Tr. at 203:8-19 (Teva counsel stating "We're not going to ask them if anybody's cancer was caused by it [NDMA and/or NDEA]. It won't be on the jury form[.]"); *id.* at 218:15-219:3 (granting defense motion).
[3] *See, e.g.*, 7/23/24 CMC Tr. at 30:5-24 ("I'm not going to keep you all waiting. I think the plaintiffs probably are right [that general causation should be out of the TPP case]."); *id.* at 215:20-216:4 ("But it can't delve into 'because it doesn't cause cancer or the risk of cancer.' You can't delve into that."); *id.* at 269:10-11 ("They're not going to make those arguments.").
[4] 9/17/24 CMC Tr. at 114:14-18.

2

general causation to economic valuation was never contemplated by the prior court, much less understood to be a required component of the economic loss valuation by the parties' experts. And the prior court had previously validated at multiple junctures Dr. Conti's approach linking statutory adulteration and resulting economic worthlessness. *See, e.g.*, ECF 2261 at 88-89; ECF 2694 at 57-58; ECF 2657 at 7-8. This shift is precisely the type of "intervening change" that warrants a limited reopening of expert discovery (to the extent this Court believes such evidence is even necessary).

## II. ARGUMENT

Defendants rely heavily on an isolated February 28, 2022, comment by Judge Kugler, suggesting that general causation might be relevant in a TPP case. But the bulk of the record, including Defendants' own litigation conduct and Judge Kugler's repeated written rulings at class certification, summary judgment, and decertification directly contradict Defendants' position.

### A. The Court and Parties Never Treated General Causation As Necessary to Prove Economic Loss Valuation

As early as January of 2020, Defendants conceded that in a "situation where the product is defective, but there's no general causation" the economic loss plaintiffs could still have a case proceed to trial because they were not "claiming physical injury" but rather "**loss of value**." *See* 1/28/2020 CMC Tr. at 22:5-13 (emphasis added). Defendants went on to concede that "[i]f there is a determination

3

that there's a defect, then the economic loss case might still be there" even though the personal injury cases would not. *Id.* at 22:13-19.

Judge Kugler eventually agreed with Defendants' request to place issues related to the personal injury cases, such as general causation, on a separate, yet parallel track, while demonstrating some general skepticism about proceeding in a similar manner to the *Zantac* Court as Defendants had urged*:*

> "First, there are not that many similarities between this and Zantac, so we're really not going to be bound by what's going on in Zantac. **But I continue to believe that we need to start a parallel track on what defense calls general causation or might be called the bodily injury and personal injury cases**….**It is my intention that the November conference, at the end of November, to enter an order governing discovery on the general causation/bodily injury claims**."

9/302020 CMC Tr., at 49:4-50:4 (emphasis added).

During the November 11, 2020 Conference, Counsel for ZHP confirmed the Defendants' interpretation of these separate tracks for personal injury cases and economic loss cases when conceding that "**Judge Kugler has indicated… that the general causation issues would proceed along the parallel track as to the economic loss issues**." 11/11/20 CMC Tr. at 56:21-23. Defendants knew full well general causation had little to no role in the economic loss track; their requested ("PFS") in the latter was completely devoid of the many questions about cancer risk, etc., that appeared in the PFS for the personal injury and medical monitoring tracks.

4

In other words, it was expressly recognized by the parties and the Court that NDMA and/or NDEA's capacity for cancer causation was not an issue in the economic loss cases. As discussed below, the defense was focused on efficacy.

B. **The Parties' Valuation Dispute Centered Around the Relevance of the Effectiveness of Contaminated Valsartan**

From the moment discovery began in this litigation nearly seven years ago, Defendants defined the key jury question in the economic loss cases as whether their VCDs were worthless due to contamination and adulteration or not worthless – worth-less – because the drug still worked as intended in controlling hypertension. Until recently, they never contended that whether VCDs might cause cancer was pertinent to the economic damages analysis.

For example, Defendants' 113 pages of class certification briefs never mentioned general causation or cancer once. *See* ECF 2008, 2010. Defendants' subsequent four summary judgment motions did not argue any formal general causation analysis. At most, as Judge Kugler observed, Defendants argued their VCDs worked to "lower[] consumers' blood pressure" by reference to the FDA's 1-in-8,000 statement. Judge Kugler rejected this cursory assertion as "janus-faced." ECF 2694 at 66-67.

In other words, Defendants never argued general causation *per se*, i.e., the *likelihood* that VCDs might cause cancer for anyone. Instead, they focused on the materiality of the risk in the context of the warranty claims – i.e., whatever the

5

probability of cancer, was it a breach of warranty to carry any such risk in light of the efficacy of the pills. The answer per ZHP itself, was that it was an "unacceptable carcinogenic risk to the intended patient population." ECF 2607, at 123-129 (ZHP Resp. to Pls' Statement of Undisputed Material Facts admitting its recall stated that ZHP's VCDs presented an "unacceptable carcinogenic risk").

### C. The Court's Prior Rulings Rejected the Idea that General Causation Was Required to Establish Damages

On February 8, 2023, Judge Kugler issued his economic loss class certification ruling. ECF 2261. The ruling[5] focused on the economic valuation proof, summarizing Dr. Conti's analysis as follows: "In economic terms, such a drug [that is adulterated] will be recalled or prohibited from sale, can have no supply curve, and is therefore worthless." *Id.* at 86. The Court found that "Dr. Conti has set forth a general calculus, i.e. mathematical model, which, although possibly flawed because the data are not available or forthcoming,[6] may reliably support her

---

[5] While Defendants are quick to point out in their Supplement that Judge Kugler acknowledged the Defendants' argument that Dr. Conti's analysis was "sophomoric," they fail to mention that Judge Kugler ruled that "[e]ven though several of defendants' class certification experts have argued Dr. Conti's worthlessness theory is faulty economics, the Court has only found that Lauren Stiroh, PhD, qualified as defendants' expert to dispute this theory." ECF 2261 at 88. The crux of Dr. Stiroh's opinion, which, again, was the only expert Judge Kugler found sufficiently reliable to opine on worthlessness in this case at the class certification stage, hinged not on the cancer risks of those consuming the product, but rather the "therapeutic effectiveness" of the drugs or the cost of "alternative" therapies. *Id.* at 85. She did not opine on cancer risks.

[6] Defendants had not produced the data yet at the time.

6

presumption of the worthlessness of the sold VCDs." *Id.* at 88-89. The Court further stated that Dr. Conti's approach had already "achieved validation" in other litigations and that it had "sufficient scientifically reliable underpinnings[.]" *Id.*

The prior court's summary judgment opinion last year drove home the primacy of the jury's adulteration finding: "whether ZHPs API was adulterated is the central fact in dispute in this matter . . . . If the API is found to be statutorily adulterated, then the finished dose products were necessarily adulterated." ECF 2694 at 32 (emphasis original); *see also id.* at 55-56 ("[A]dulteration of the VCDs is a question for the fact-finder"); *id.* at 57-58 ("To be clear, the Court holds that, just as fact-finders in U.S. federal district courts decide every day whether U.S. statutes and their accompanying Code of Federal Regulations have been violated, so too the TPP trial fact-finder here may weigh the parties' facts and arguments to decide whether [and at what point in time] the VCDs were adulterated.").

And, to connect the jury's finding of adulteration (*i.e.*, a "legal prohibition" on sale, *see Huertas*, 120 F.4th at 1178 & n.14) to Dr. Conti's economics-based theory of worthlessness, the Court repeatedly affirmed Dr. Conti's economics opinion on adulteration and resulting worthlessness. *See* ECF 2261, at 88-89; ECF 2684, at 57-58 ("Ds have repeatedly sought the Court to repudiate Ps worthlessness theory … The Court finds Ds arguments that TPPs have no cognizable injury and Ps

7

opposition that the VCDs are worthless to hinge on the very central question of the VCDs adulteration and raise a genuine dispute of material fact for the factfinder.").

As if Judge Kugler's views were not clear enough, he wrote: "[I]n the TPP trial, which concerns economic loss liability of TPP insurers, there seems a small, if any, need for inquiry into individual facts of consumers' ingestion of VCDs so to answer whether a consumer *or a class* could, do, will, or may have a heightened risk of cancer development." ECF 2694 at 65-66 & n.61 (emphasis added).

Judge Kugler reaffirmed his view in denying Defendants' motion to decertify when the Defendants did attempt to implicate general causation. There, Judge Kugler rejected Defendants' argument that Dr. Conti's damages analysis amounted to a "no-value assumption, which the Court [did but] should never have accepted" and that "without evidence of medical causation, plaintiffs have not suffered any loss." ECF 2637 at 27 & n.8. He ruled as follows:

> **Ps theory of damages rests not on a "biological" basis but on an "economics" one, that the supply curve of contaminated drugs the FDA never would have allowed for sale is zero, making the drugs unmerchantable.** Contrary to Ds characterization, Ps theory of damages, while not biologically based, is nonetheless based in recognized caselaw as economic theory. The Court also observes that Ds argument about the scientific value of Conti's model of damages rehashes their previous arguments made in the class certification opinion, which is again contrary to the law of the case.
>
> Accordingly, the Court finds no legal support for decertifying the TPP subclasses by attacking Conti's model of damages. **Ds raise no argument that shows requisite elements invoke a review of the law of the case.**

8

ECF 2657, at 7-8 & n.5 (citing *Debernardis* and *BCBS*) (emphasis added).

And at summary judgment, Judge Kugler again validated Dr. Conti's damages theory: "The Court finds Ds arguments that TPPs have no cognizable injury and Ps opposition that the VCDs are worthless to hinge on the very central question of the VCDs adulteration and raise a genuine dispute of material fact for the factfinder." *See* ECF 2694 at 56-57. Judge Kugler reasoned that "whether the damages are nothing because the VCDs gave the TPPs what they paid for—lowered blood pressure—or the VCDs were economically worthless and TPPs are owed the full amount they paid for the drugs" was a genuine dispute for the jury to resolve based on the parties' evidence and expert submissions. *Id.*

### D. Plaintiffs Will Suffer Undue Prejudice If Not Allowed to Adjust to the Changed Law of the Case Introduced by the Court's April 7 Opinion

The Third Circuit has repeatedly emphasized that the law of the case doctrine disfavors "re-deciding issues that were resolved earlier in the litigation[,]" *Pub. Interest Research Grp. Of N.J. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir. 1997), and that reconsideration of earlier rulings may only occur if the district judge provides an explanation for the reconsideration and "take[s] appropriate steps so that the parties are not prejudiced by reliance on the prior ruling." *Williams v. Runyon,* 130 F.3d 568, 573 (3d Cir. 1997).

This TPP economic loss case *twice* progressed to the point of being just days or weeks from trial, pursuant to the paradigm repeatedly re-affirmed by Judge

9

Kugler: if the jury found the VCDs were adulterated, they may find them worthless based on Dr. Conti's economics analysis without the need for any biologic general causation evidence.

The April 7 Opinion sharply reversed course. ECF 3018 at 20. As a result, it is submitted that the Court should follow Third Circuit guidance and "take appropriate steps so that the [Plaintiffs] are not prejudiced by reliance on the prior ruling." *Williams,* 130 F.3d at 573. Here, if this Court believes expert evidence is *required* to map risks/benefits precisely to dollar damages (something Plaintiffs contend is unnecessary), then the Court should allow Plaintiffs to develop damages expert testimony that comports with the Court's directives provided in its April 7 Opinion.

### III. CONCLUSION

If Plaintiffs are now required to have their economic valuation expert factor general causation into his or her methodology, Plaintiffs request a fair opportunity to address that change with limited expert testimony, and will suffer undue prejudice if not allowed to do so. Accordingly, Plaintiffs respectfully oppose Defendants' submission and renew their request to be permitted to supplement its economic expert evidence to address the Court's new requirement for general causation evidence and incorporation of that evidence into the economic loss valuation in the economic loss cases.

Dated: August 12, 2025               Respectfully Submitted,

/s/ Ruben Honik
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*MDL Plaintiffs' Co-Lead Counsel and Co-Lead Consumer Class Counsel*

/s/ Adam Slater
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

*MDL Plaintiffs' Co-Lead Counsel*

/s/ Jorge Mestre
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

*Co-Lead TPP Class Counsel*

/s/ Daniel Nigh
Daniel Nigh
**NIGH, GOLDENBERG, RASO, & VAUGHN, PLLC**
14 Ridge Square NW, Third Floor
Washington, DC 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

*MDL Plaintiffs' Co-Lead Counsel*

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504)-524-5777
c.whiteley@kanner-law.com

*MDL Plaintiffs' Co-Lead Counsel and Co-Lead Consumer Class Counsel*

/s/ Gregory P. Hansel
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

*Co-Lead TPP Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, a true and correct copy of the foregoing was filed and served via the Court's CM/ECF system.

/s/ David J. Stanoch
David J. Stanoch