# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Gaston Roberts et al. v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.*,<br><br>Case No. 1:20-cv-00946-RMB-SAK | MDL No. 2875<br><br>Honorable Renée Marie Bumb, District Court Judge |

## JOINT STIPULATIONS IN LIEU OF MOTIONS *IN LIMINE*

Plaintiff Jan Roberts ("Plaintiff"), and Defendants Zhejiang Huahai Pharmaceutical Co., Ltd., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC (collectively, "Defendants", and together with Plaintiff, the "Parties"), by their undersigned counsel, submit these stipulations in lieu of certain motions *in limine*, as follows:

WHEREAS, the Parties are scheduled to commence trial on September 8, 2025, trying certain claims alleged by Plaintiff;

WHEREAS the Parties have been meeting and conferring in an effort to narrow their evidentiary disputes and the number of motions *in limine* to be presented to the Court for rulings;

WHEREAS, the Parties have prepared this Stipulation to memorialize the evidentiary limitations on which they have reached agreement, which are limited solely to the above-captioned trial and are not binding and do not have precedential or law-of-the-case effect with respect to any future trial proceeding;

WHEREAS, this Stipulation is based upon the anticipated course of proceedings and is submitted in lieu of rulings by the Court on contested motions *in limine*; and

WHEREAS, this Stipulation is subject to being revisited by the Parties or by the Court in the same manner as a ruling on a contested motion *in limine* in the event of unexpected events at trial (e.g., if a party "opens the door" to a matter previously stipulated to be excluded);

NOW THEREFORE, incorporating the foregoing recitals and subject to the Court's consideration and approval, the Parties hereby stipulate to the following restrictions on the introduction of evidence at the above-captioned trial, in the same manner as if the Court had entered the following stipulated restrictions as rulings on contested motions *in limine*.

1. **Pejorative references to the Defendants' (or their employees') foreign nationality, including, but not limited to, evidence, argument, or references with no substantive purpose regarding the Chinese government, communism or the communist party, and Wuhan, China, are excluded. This**

2

**stipulation does not exclude relevant factual references (e.g., the location of ZHP, application of Chinese certificate of analysis standards, noting that a document is translated from Chinese).**

2. **Evidence, testimony, argument, or references regarding losartan or irbesartan active pharmaceutical ingredient ("API") or finished dose ("FD") products are excluded for the general purpose of suggesting or inferring or refuting liability and/or a failure to comply with CGMPs for the at-issue valsartan API or FD products.** This stipulation does not encompass references that are substantively relevant or incidental, for example: (1) evidence, testimony, argument, or references to the July 27, 2017 ZHP email and related documents pertaining to irbesartan; (2) certain losartan-related documents, including those used to cross-examine Dr. Ali Afnan at the September 18, 2024 *Daubert* hearing (i.e., ZHP02908569 & ZHP02929237); or (3) incidental references to losartan or irbesartan.

3. **Evidence, testimony, argument, or references to nitrosodiethylamine ("NDEA") in valsartan are excluded for the purpose of suggesting or inferring or refuting causation of cancer related to the at-issue valsartan API or FD products.** This stipulation does not encompass: (1) incidental references to NDEA, including references to NDEA in company and regulatory documents that also discuss NDMA and are otherwise relevant and admissible, or

3

(2) evidence, testimony, argument, or references that NDEA, another nitrosamine, is capable of causing cancer, without arguing whether or not the amount of NDEA in valsartan is capable of causing cancer.

4. **Evidence, testimony, argument, or references regarding locations of offices, residences, or home states of trial counsel outside the New Jersey/Pennsylvania area are excluded.**

5. **Evidence, testimony, argument, or references regarding the representation by any defense or plaintiff law firm or trial counsel of clients who are not parties to this action are excluded.**

6. **The Parties agree that deposition testimony shall not be played or read during opening statements. The Parties agree that deposition testimony may only be referred to or cited to during opening statements, including per PowerPoint slides summarizing or referencing deposition testimony, if it has been designated and is either not objected to or has been ruled on and permitted over objections, or where there is a good faith basis to believe that the testimony will be admitted if not yet presented to the Court for determination of admissibility.**

7. **Evidence, testimony, argument, or references to the "golden rule" are excluded.**

8. **Evidence, testimony, argument, or references regarding**

**settlements with any defendant involved in *Valsartan* litigation that is not involved in this trial are excluded.**

9. **References to or argument about the absence of corporate representatives of Defendants during all or part of trial are excluded.**

10. **The Parties and counsel will not unnecessarily present personal anecdotes or specific personal experiences relevant or irrelevant to the issues at trial, such as overcoming significant obstacles in their personal lives or the fact that they (or related family members and close friends) use or used valsartan.**

11. **Evidence or argument that FDA action or inaction is to blame for Mr. Roberts' alleged injuries.** In connection with the TPP Trial, the Court held that Defendants were permitted to introduce evidence as to what the FDA did or did not do. However, the Court noted that limiting or curative instructions may be given, "[t]o the extent that the plaintiff is seeking that the defendants not be permitted to blame it on the FDA, the Defendants will proceed at their own peril." (*See* 7/23/24 Tr. 188:23-25.) The same ruling applies in this case.

12. **Evidence or argument that the FDA statement advising patients not to discontinue their use of the VCDs until they could obtain a prescription for a replacement medication or treatment meant that the FDA did not believe that there was an unacceptable health risk due to the contamination of the VCDs.** In connection with the TPP Trial, the Court held that Defendants may present

5

evidence that the FDA told people to continue taking their VCDs until they were prescribed a replacement medication, but cannot say that this was because the FDA believed the VCDs were not adulterated and/or that there was no unacceptable health risk. (*See* 7/23/24 Tr. 189:17-24, 190:17-193:5, 192:6-16, 192:25-193:2.) The same ruling applies in this case.

13. **Evidence or testimony that at-issue VCDs did not contain NDMA.** In connection with the TPP Trial, the Parties agreed that the TPP Defendants would not argue that the VCDs did not contain NDMA. (*See* 7/23/24 Tr. 230:19-231:4.) The TPP Defendants were not precluded from arguing that the amount of impurities in the at-issue valsartan did not pose an unacceptable health risk. (*Id.* 230:11-231:4.) The same ruling applies in this case.

14. **Expert testimony that relies on the precluded opinions of other experts.** In connection with the TPP Trial, the Court held that parties cannot have their experts rely on the opinions of other experts whose own opinions have been precluded. (*See* 7/23/24 Tr. 239:3-5.) The same ruling applies to both parties in this case.

15. **Evidence, argument, or testimony criticizing plaintiffs' attorneys for bringing lawsuits or criticizing defense attorneys.** In connection with the TPP Trial, the Court held that no attorney shall deride or criticize any other attorney. (*See* 7/23/24 Tr. 259:19-260:7.) The same ruling applies to both parties in this case.

6

16. **Evidence or argument that Defendants are good companies is permitted with the understanding that, if Defendants introduce such evidence, Plaintiffs can present countervailing evidence.** In connection with the TPP Trial, the Court held that Defendants "can say how great they are, but they will do it at their own peril." (*See* 7/23/24 Tr. 241:10-11.) The same ruling applies in this case.

17. **Evidence or argument that industry practice, as opposed to cGMP requirements, governed Defendants' conduct**. In connection with the TPP Trial, the Court held that the TPP Defendants could discuss industry conduct and practice, but could not argue that industry practice, as opposed to cGMP requirements, governed their conduct. The Court stated that it would provide an instruction regarding the relevance of industry practice if warranted during trial. (7/23/24 Tr. 195:25-196:24). The same ruling will apply in the *Roberts* case.

18. **Hearsay Evidence related to communications with Jinsheng Lin, Ph.D.** In connection with the TPP Trial, the Court held that the TPP Defendants could not disclose or rely on hearsay discussions with Jinsheng Lin, Ph.D., or other sources, to assert any translation or interpretation of the July 27, 2017 email that differs from 30(b)(6) testimony of Min Li, or ZHP's translation. (7/23/24 Tr. 197:8-199:3.) The same ruling will apply in the *Roberts* case.

19. **Experts should not be subjected to unreasonable questioning on cross-examination.** This includes, but is not limited to, questioning about Dr.

7

Hecht's work at the American Health Foundation in the 1970s.

20. **Evidence and arguments related to Mr. Roberts' treating physicians and any allegations of malpractice or deviations from the standard of care.** Defendants shall not criticize or blame Mr. Roberts' treating physicians, or suggest that their care was negligent, careless, fell below the standard of care, or otherwise caused the injuries at issue.

21. **Any comment, evidence, testimony, inference, argument, or suggestion that any award of damages in this case will adversely affect the ability of any member of the jury to purchase or have available medications, devices, or surgeries in the future, or affect the cost thereof, or have any adverse effect on the medical or health products available to individuals or industries in the United States or worldwide is precluded.**

22. **Any comment, evidence, testimony, inference, argument, or suggestion that a verdict for the Plaintiff will adversely impact pharmaceutical or medical device companies' incentive/ability to develop new medications and devices is precluded.**

23. **Any comment, evidence, testimony, inference, argument, or suggestion that Plaintiff is covered by some form of insurance for the incident in question or some other collateral source is precluded.**

24. **Any comment, evidence, testimony, inference, argument, or**

8

**suggestion that this case or any other Valsartan products liability case may cause an increase in the cost of purchasing or maintaining insurance is precluded.**

25. **Any comment, evidence, testimony, inference, argument, or suggestion that if Defendants have to pay a judgment entered in this case, that Defendants may have limited policy limits or cash, or the effect or results of such judgment upon the insurance rates, premiums, finances, or ability of Defendants to compete in the marketplace is/are precluded.**

26. **Arguments about deterring future misconduct by Defendants and others that are untethered to punitive damages and/or damages relevant to Plaintiff's wrongful death claim.** In connection with the TPP Trial, the Court granted in part a motion *in limine* seeking to exclude arguments about sending Defendants a message in order to deter future misconduct. Specifically, the Court held that TPP Trial Plaintiffs were allowed to discuss the purpose of punitive damages, including deterring future misconduct by the TPP Trial Defendants, but were not permitted to make gratuitous use of the argument and had to inform the Court prior to admitting such evidence or argument relevant to punitive damages. (*See* 7/23/24 Tr. 261:18-264:9.) This aspect of the ruling will apply to the *Roberts* trial in that Plaintiff may discuss the purpose of both punitive damages and damages stemming from her wrongful death claim, including deterring future misconduct by

9

Defendants and others, but will not make gratuitous use of the argument and will inform the Court prior to offering such evidence. It is understood that this argument will be made in opening and closing statements without the need to provide notice to the Court.

27. **Regulatory statements and actions unrelated to valsartan or the same manufacturing facilities ZHP used to produce the API included in valsartan used by Mr. Roberts.** The Court granted in part a similar motion *in limine* in connection with the TPP Trial, holding that regulatory evidence would be limited to that which related to valsartan, and noting that evidence of regulatory issues or actions related to the manufacturing facilities where the TPP Trial Defendants produced valsartan would only be permitted if there was evidence of a connection to valsartan. (*See* 7/23/24 Tr. 264:10-267:11 (noting that regulatory evidence and materials unrelated to valsartan cannot be used as "character assassination").) This ruling will apply in the *Roberts* trial.

28. **Evidence related to memoranda and emails in which Ms. Remonda Gergis criticized the compliance environment at ZHP.** In connection with the TPP Trial, the Court granted the ZHP Defendants' motion to exclude evidence related to memoranda and emails in which Ms. Remonda Gergis, an employee at Huahai U.S. (a subsidiary of ZHP that is not a party in the *Roberts* case), criticized the compliance environment at ZHP. (7/23/24 Tr. 68:22-71:18.) Specifically, the

10

Court excluded a memorandum by Ms. Gergis criticizing conditions at an unidentified ZHP workshop, and an email chain in which Ms. Gergis faulted ZHP's quality control processes for allowing a number of valsartan FD products to be mis-stamped and blamed the timeliness of the company's on-line testing (*see* PRINSTON00170081). This ruling will apply in the *Roberts* case.

29. **Evidence, testimony, or argument suggesting that ZHP's discarding of valsartan batches C5191-17-023/024 was wrongful or deliberately done to conceal evidence.** In connection with the TPP Trial, the Court ruled that the TPP Trial Plaintiffs were not permitted to suggest that the aforementioned valsartan batches were deliberately destroyed in order to hide something or to deprive Plaintiffs of evidence. However, the Court held that evidence regarding the destruction of these valsartan batches may be admitted for the limited purpose of showing that ZHP disposed of the out-of-specification valsartan without performing a full investigation, and that the FDA criticized ZHP for disposing of the out-of-specification valsartan without performing a full investigation. (7/23/24 Tr. 71:24-73:21.) The Court reserved the right to issue a limiting instruction should the questioning go beyond the limited scope outlined above. (*Id*. 73:18-20.) The same ruling will apply in the *Roberts* case.

30. **E-mails between Charles Wang and Jim McDonald or a recitation of the contents of those e-mails.** In connection with the TPP Trial, the Court held

11

that the TPP Trial Plaintiffs were not permitted in the first instance to admit email correspondence between Charles Wang and Jim McDonald into evidence, nor were they permitted to summarize or read the correspondence on the record. The Court held that the TPP Trial Plaintiffs would be allowed to elicit testimony from ZHP witness Dr. Min Li regarding his knowledge, if any, of the information contained in the email correspondence between Charles Wang and Jim McDonald. The Court noted that, if "there's a dispute about how [that information] was communicated and how [Dr. Li] learned, then the email[s] may come in" depending on the circumstances. The Court held that the email may not come in, however, absent testimony from Dr. Li that he "saw the email[s]" or "adopted the email[s]." (7/23/24 Tr. 77:24-25; *id.* 81:15-19 ("[U]nless [plaintiffs] can tie it in that somehow that that email was either adopted by Li, that Li saw it, it doesn't come in . . . .").) The Court also held that, if the TPP Trial Plaintiffs were permitted to introduce the deposition testimony of Min Li, the parties should meet and confer to edit the deposition testimony to delete references to the email consistent with the Court's order. (*Id.* 82:25-84:10.) The same ruling will apply in the *Roberts* case, with the understanding that testimony by another ZHP witness demonstrating that Mr. Li or others at ZHP saw or adopted the emails referenced above/knew of the contents, could affect the admissibility of Min Li's testimony about the emails, depending on the context.

31. **Evidence related to the Parties' litigation conduct and discovery**

12

**disputes.** The Parties have agreed not to make arguments or elicit testimony related to litigation conduct or discovery disputes, except as set forth herein. In connection with the TPP Trial, the Court held that this does not preclude evidence that documents were not included in a particular witness's custodial file and/or are not available for use at trial. (*See* 7/23/24 Tr. 267:17-268:16.) The same ruling will apply in this case, with the exception that the parties may present evidence related to the application of the permissive adverse inference instructions adopted by the Court with respect to the production of documents related to the July 27, 2017 email and the deposition of Baohua Chen. (*See* ECF No. 2810.) The parties have agreed to wait for the Court's ruling with regard to the COAs, material safety data sheets, and inspection reports with regard to DMF before addressing those documents.

32. **Evidence or reference to individuals who used valsartan and allegedly developed cancer or claim economic loss, except for Plaintiff Gaston Roberts, Jr. and, generally, the individuals at issue in various studies relied on by experts.** In connection with the TPP Trial, the Court granted a motion to exclude evidence or reference to individuals who used valsartan and developed cancer, or claim economic loss, as agreed by the parties. (7/23/24 Tr. 276:16-18.) The same ruling should apply in the *Roberts* case, with the exception of the fact that the parties may introduce evidence and argument related to Plaintiff Gaston Roberts, Jr., as well as to epidemiologic studies of valsartan users and literature and studies relied on by

13

expert witnesses. (*Id.*)

33. **Evidence, testimony, or argument that Defendants are bad companies, or that a verdict in favor of Defendants will harm the jurors or public safety.** In connection with the TPP Trial, the Court recognized that the TPP Trial Plaintiffs may discuss safety rules and practices. The Court held, however, that the TPP Trial Plaintiffs could not present evidence, testimony, or argument that Defendants are bad companies. (*See* 7/23/24 Tr. 270:24-271:1 ("You're not going to get up and say, oh, they're just terrible companies, they just want to kill everybody. We know you're not going to do that.").) The Court noted that there would be a "balancing act" with respect to Defendants' arguments concerning their general benefit to society, such as that valsartan was a "lifesaving drug," and Plaintiffs' potential responding arguments concerning the wider implications of Defendants' misconduct, for example related to dangerousness of the contamination. (*See id.* 269:14-271:4.) The same ruling will apply in the *Roberts* case.

34. **Expert evidence or argument concerning corporate intent, motives, and ethics.** In connection with the TPP Trial, the Court excluded expert-related testimony, evidence and argument pertaining to the TPP Trial Defendants' overall corporate intent, motives, and ethics. (*See* 7/23/24 Tr. 272:18-273:22.) The same ruling will apply in the *Roberts* case. This does not preclude references or testimony by counsel or fact witnesses about ZHP's alleged profit motive for changing the

manufacturing process or for allegedly not disclosing information regarding NDMA in valsartan to the FDA.

35. **Evidence of statements or actions by regulatory agencies outside the United States not specifically relied upon by Defendants.** In connection with the TPP Trial, the Court held that the TPP Trial Plaintiffs would not be permitted to reference or introduce actions or statements of foreign regulatory agencies, unless the Defendants relied on or had specific notice of those statements or actions of a foreign regulatory agency. (*See* 7/23/24 Tr. 273:23-276:3 ("What I said is if the witnesses say that they relied on them, then it's relevant, right? . . . They have to know about them.").) The same ruling will apply in the *Roberts* case.

36. **Evidence or argument relating to the absence of cross-claims or to existence of indemnification obligations among Defendants, with the exception of two indemnification documents (ZHP00454953 and TEVA-MDL2875-00324735).** In connection with the TPP Trial, the parties generally agreed that evidence and argument related to cross-claims and indemnification would not be admitted and offered to meet and confer regarding whether two specific indemnification-related documents (i.e., ZHP00454953 and TEVA-MDL2875-00324735) raised by the TPP Trial Plaintiffs could be admitted in redacted form. (*See* 7/23/24 Tr. 276:4-15.) Because the TPP Trial was subsequently cancelled, neither the parties nor the Court reached a conclusion on those documents. The

parties' previous general agreement to exclude evidence and argument related to cross-claims and indemnification will apply in this case. In addition, Plaintiff has agreed not to introduce the indemnification-related documents identified herein in the first instance. However, Plaintiff reserves the right to seek leave to introduce the documents in redacted form if Defendants open the door to their introduction.

Dated: August 26, 2025　　　　　　　　　　Respectfully submitted,

 */s/ Daniel Nigh*
Daniel Nigh
**NIGH GOLDENBERG RASO & VAUGHN, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

 */s/ Adam Slater*
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

*Attorneys for Plaintiff*

 */s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Allison M. Brown
**KIRKLAND & ELLIS LLP**
2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel: (215) 268-5000
alli.brown@kirkland.com

Nina R. Rose (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
nina.rose@kirkland.com
jordan.schwartz@kirkland.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 26, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson