# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | **MDL No. 2875** |
| **THIS DOCUMENT RELATES TO:** *Gaston Roberts v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.,* Case No. 1:20-cv-00946-RMB-SAK | **HON. RENÉE MARIE BUMB** |

## PLAINTIFFS' BRIEF ON MOTIONS IN LIMINE

NIGH GOLDENBERG RASO & VAUGHN, PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927

On the Brief:
Daniel Nigh, Esq.
Kathryn Avila, Esq.
Stephanie Iken, Esq.

i

Plaintiff hereby brings the first two Motions in imine and responds to the following two Motions *in limine* brought by the Defendants as follows:

1. **Plaintiff's Motion to Exclude evidence or argument that contaminated valsartan API and valsartan-containing drugs could not have been adulterated until the FDA declared them adulterated shall not be permitted.**

In connection with the TPP Trial, the Court held that defense witnesses could not testify that VCDs could not be adulterated until the FDA declared them adulterated because that was incorrect as a matter of law. (*See* 7/23/24 Tr. 169:15-22; *see also* ECF 2581 (Judge Kugler also recognizing this argument is "sophistry")). The Court subsequently held, however, that since Plaintiffs' regulatory experts will testify that the VCD's were adulterated, defense expert witness Dr. Ali Afnan could opine, based on his "regulatory experience," that VCDs were not adulterated (without stating that the timing of the FDA determination is a factor). (*See* 9/18/24 Tr. 60:7-61:18). The same rulings should apply in this case.

2. **Plaintiff's Motion that Defendants cannot argue that their VCDs were not adulterated because they complied with the USP monograph for valsartan.**

1

As a threshold matter, the USP monograph for valsartan **does not** permit NDMA. (ZHP01303141 (Ex. 1); ZHP02614594 (Ex. 2); PRINSTON00141349 (Ex. 3)). To the extent Defendants seek to argue that they complied with the *testing* requirements in the USP monograph for valsartan, this should also be precluded. The USP specifically required ZHP or any other manufacturer to develop whatever testing methods were needed to detect impurities from a new manufacturing process implemented by the manufacturer—as occurred here with ZHP. (Ex. 4, p. 4 ("Nonmonograph tests and acceptance criteria suitable for detecting and controlling impurities that may result from a change in the processing methods or that may be introduced from external sources should be employed in addition to the tests provided in the individual monograph where the presence of the impurity is inconsistent with applicable good manufacturing practices," and "Any substance known to be toxic shall not be listed under *Other Impurities*."); Ex. 5, p. 8 (same); Ex. 6, p. 2 ("Toxic impurities have significant undesirable biological activity, even as minor components, and require individual identification and quantification by specific tests. These impurities may arise out of the synthesis, preparation, or degradation of compendial articles. Based on validation data, individualized tests and specifications are selected."). For the TPP trial, the Court denied this motion, but ruled that such evidence and argument would be allowed "in [a] very limited" way. (7/23/2024 Tr. 228:23-25). The same ruling should apply to this case, and if

2

necessary the jury should be informed that the specifications did not permit NDMA if that is suggested by the defense.

### 3. Defendants' motion regarding their misrepresentations to the FDA.

In connection with the TPP Trial, the Court ruled that the TPP Trial Plaintiffs could not argue that the TPP Defendants committed fraud on the FDA (as opposed to misleading the TPPs themselves), conflate the FDA and the TPPs, or argue that a misrepresentation to the FDA is a misrepresentation to the TPPs. However, the Court held that the TPP Plaintiffs were entitled to present evidence of what Defendants told the FDA. (*See* 7/23/24 Tr. 271:6-272:16.) The same ruling should apply in the *Roberts* case in that Plaintiffs may present evidence as to what Defendants told the FDA, but may not introduce evidence or argument that Defendants defrauded the FDA.

To be clear, none of this implicates *Buckman Co. v. Pls.' Legal Committee*, 531 U.S. 341 (2001), because preemption under that case only applies where the Plaintiffs' sole theory of recovery is that the defendant defrauded the FDA. In *Buckman*, the Court considered the district court's decision to dismiss the "'fraud-on-the-FDA' claims, first on the ground that they were expressly pre-empted by the MDA, and then, after our decision in *Medtronic*[*, Inc. v. Lohr*, 518 U.S. 470 (1996)], **on the ground that these claims amounted to an improper assertion of a private**

3

**right of action under the MDA**." *Buckman*, 531 U.S. at 347 (emphasis added). The *Buckman* Court was clear about how its decision conformed with the holding in *Medtronic, Inc. v. Lohr*, 518 U.S. at 492-93, 501, that federal law does not preempt actual state law claims:

> Notwithstanding the fact that *Medtronic* did not squarely address the question of implied pre-emption, it is clear that the *Medtronic* claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, **not solely from the violation of FDCA requirements**. *See* 518 U.S., at 481, 116 S.Ct. 2240. **In the present case, however, the fraud claims exist *solely* by virtue of the FDCA disclosure requirements.** *Buckman*, 531 U.S. at 352-53 (emphasis added); *see also McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040-41 (9th Cir. 2015) (stating "[t]he appellees would have us conclude that any use of federal law to establish a standard of care is an attempt to enforce the underlying federal provisions, but **we do not accept that proposition**," and explaining "*Buckman* recognized that *Lohr*, while dealing explicitly with only express preemption, left the door open to state-law claims 'parallel' to federal requirements" (emphasis added)). Here, ZHP has affirmatively claimed regulatory compliance as a defense. (ECF 3145, p. 8). ZHP's misrepresentations to the FDA and regarding their FDA compliance are simply facts that are part of the proofs, not the sole claim or sole basis for any claim.

4

Moreover, they are part of Plaintiff's refutation of ZHP's affirmative defense of regulatory compliance. Thus, ZHP's misleading of the FDA is fair game.

## 4. Defendants' motion to exclude evidence related to discovery disputes pertaining to the COAs/MSDSs/testing reports.

"The parties have agreed to wait for the Court's ruling with regard to the COAs, material safety data sheets, and inspection reports with regard to DMF before addressing those documents." (ECF 3154). ZHP has informed Plaintiffs that they are simply reserving "the right to move to exclude based on the outcome of September 8 hearing in light of [the Court's] prior rulings" at the time of this filing.

September 2, 2025

Respectfully submitted,

By: */s/ Daniel Nigh*

Daniel Nigh, Esq.
NIGH GOLDENBERG RASO & VAUGHN, PLLC
*Attorneys for Plaintiffs*
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Tel: 202-792-7927
Fax: 202-792-7927
Email: dnigh@nighgoldenberg.com

5

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Daniel A. Nigh*
Daniel A. Nigh