# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875<br><br>Honorable Renée Marie Bumb<br>Chief District Court Judge |
| **This Document Relates to All Actions** | |

## TPP TRIAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION .....................................................................................................1

ARGUMENT ..........................................................................................................1

I.      PLAINTIFFS CANNOT PROVE INJURY OR DAMAGES. .......................1

     A.    Plaintiffs Cannot Establish Injury Or Damages Based On A "Worthlessness" Theory........................................................................1

     B.    Plaintiffs Have No Admissible Evidence That The VCDs Were "Worthless." ...............................................................................5

     C.    Plaintiffs Cannot Establish Injury Or Damages On The Theory That The VCDs Were "Worth Less." ....................................................9

          1.    Plaintiffs Have Abandoned The "Worth Less" Theory.............9

          2.    Plaintiffs Lack Admissible Evidence Capable Of Establishing That The VCDs Were "Worth Less." .................10

II.     PLAINTIFFS' CLAIMS ARE SEPARATELY PREEMPTED. ..................12

CONCLUSION ......................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Cap. Mgmt., LLC v. FTC*,
  593 U.S. 67 (2021)...................................................................................................3

*Atkinson v. Luitpold Pharms., Inc.*,
  448 F. Supp. 3d 441 (E.D. Pa. 2020)...........................................................14, 15

*Buckman Co. v. Pls.' Legal Committee*,
  531 U.S. 341 (2000).......................................................................................*passim*

*Chamberlain v. United States Postal Serv.*,
  Nos. 1:16-cv-04941-NLH-AMD, 1:18-cv-01700-JBS-AMD, 2020
  WL 278639 (D.N.J. Jan. 17, 2020)......................................................................7

*Council of Alternative Political Parties v. Hooks*,
  179 F.3d 64 (3d Cir. 1999) ..................................................................................12

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
  321 F.R.D. 193 (E.D. Pa. 2017)...........................................................................10

*Davis v. Main St. Family Pharmacy, LLC*,
  2016 WL 9051172 (N.D. Fla. May 19, 2016) .....................................................5

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ...........................................................................5

*In re Dex Media, Inc.*,
  595 B.R. 19 (D. Del. 2018)...................................................................................9

*FTC v. Am. Screening, LLC*,
  105 F.4th 1098 (8th Cir. 2024) .............................................................................3

*FTC v. BlueHippo Funding, LLC*,
  762 F.3d 238 (2d Cir. 2014) .................................................................................3

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) ...............................................................................3

*Huertas v. Bayer*,
120 F.4th 1169 (3d Cir. 2024) ...............................................................................5

*In re Integrated Health Servs., Inc.*,
358 B.R. 637 (D. Del. 2007).................................................................................12

*Makaeff v. Trump Univ., LLC*,
309 F.R.D. 631 (S.D. Cal. 2015) ............................................................................5

*McGregor v. Chierico*,
206 F.3d 1378 (11th Cir. 2000) ..............................................................................3

*In re Morning Song Bird Food Litig.*,
320 F.R.D. 540 (S.D. Cal. Mar. 31, 2017).............................................................5

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ...................................................................................4

*Slatowksi v. Sig Sauer, Inc.*,
No. 24-1639, 2025 WL 2178533 (3d Cir. 2025) .................................................11

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
No. 19-2875, 2020 WL 7418006 (D.N.J. Dec. 18, 2020) ...................................13

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
No. 19-2875, 2024 WL 1286347 (D.N.J. Mar. 26, 2024) ...................................13

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
No. 19-2875, 2025 WL 1024048 (D.N.J. Apr. 7, 2025) .............................*passim*

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) .................................................................................2

*Williams v. Smith & Nephew, Inc.*,
123 F. Supp. 3d 733 (D. Md. 2015)......................................................................14

*Willoughby v. Abbott Lab'ys*,
No. 22 C 1322, 2025 WL 622925 (N.D. Ill. Feb. 26, 2025) ...............................11

*Wyeth v. Levine*,
555 U.S. 555 (2009).............................................................................................13

**Statutes**

15 U.S.C. § 45(a)(1) ............................................................................................ 2, 3

Alaska Stat. § 45.50.545 ......................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 10

Fed. R. Evid. 702 .................................................................................................... 4

# INTRODUCTION

Plaintiffs' opposition repeats the argument this Court has already rejected—i.e., that a jury can assess the value of valsartan contaminated with trace amounts of NDMA or NDEA without expert evidence. As the Court has already explained, "just having some experts to talk about, yes, the drugs gave some risk of cancer, that's just not going to cut it." (4/28/25 CMC Tr. 43:22-44:1, ECF 3039.) Plaintiffs also argue that their consumer-protection and fraud claims do not require proof of a fundamental defect, but if that were true, it would nullify the actual damages and injury elements of these causes of action. Finally, with respect to preemption, Plaintiffs contend that Judge Kugler's prior ruling constitutes law of the case, but that decision was issued based on the pleadings and without the benefit of a record—one that now indisputably shows Plaintiffs' case is simply a dressed-up theory of purported fraud on the FDA. *See Buckman Co. v. Pls.' Legal Committee*, 531 U.S. 341 (2000).

## ARGUMENT

## I.    PLAINTIFFS CANNOT PROVE INJURY OR DAMAGES.

### A.    Plaintiffs Cannot Establish Injury Or Damages Based On A "Worthlessness" Theory.

Plaintiffs concede that their express warranty claims are governed by a benefit-of-the bargain standard, which requires proof of a "fundamental defect" that rendered the VCDs either "worthless" or "worth less" than what Plaintiffs bargained

for. (Opp'n at 1, 13-16.) Nonetheless, Plaintiffs contend that their consumer-protection and fraud claims, which seek relief for the same alleged conduct, entitle them to "full-value damages . . . regardless of finding a fundamental defect" (i.e., without any regard to the VCDs' therapeutic value). (*Id.* at 13-14.) Plaintiffs' argument is contrary to law and at odds with their prior positions.

**State Consumer-Protection Laws.** All 16 relevant jurisdictions expressly require proof of "ascertainable loss" or "actual damages" and do not permit refunds in cases where the product provided value to the consumer. *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009) ("The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution."). Rather than address these governing statutes or any of Defendants' authority applying them, Plaintiffs contend that the relevant states generally "give due weight to the FTC Act ['FTCA']," and cite federal cases involving FTC enforcement. (Opp'n at 14, n.40.) Plaintiffs' reliance on this body of caselaw is misplaced for multiple reasons. First, while the applicable state statutes[1] broadly apply the definition of unlawful conduct in Section 5(a)(1) of the FTCA, *see, e.g.*, Alaska Stat. § 45.50.545; 15 U.S.C. § 45(a)(1), they prescribe ***their own*** remedies, which are separate from those contained in Sections 5(l), 13(b), and 19 of the FTCA.

---

[1]    Judge Kugler's prior summary judgment opinion, on which Plaintiffs rely, held that five states do not follow FTCA guidance at all. (ECF 2694, at 44.)

*See AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 72-73 (2021). Thus, federal decisions addressing Section 5(a)(1) of the FTCA are irrelevant to the separate state statutory requirements of ascertainable loss and damages.

Second, the FTCA cases cited by Plaintiffs are inapposite, as they involved evidence that consumers did ***not*** receive any meaningful value.[2] *See FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) (district court finding that the product's value to consumers was "de minimis"); *FTC v. Am. Screening, LLC*, 105 F.4th 1098 (8th Cir. 2024) (PPE orders shipped six weeks late during the height of the Covid pandemic). One example frequently cited in the caselaw is that of rhinestones. While these artificial gems have some inherent value, "[a] customer who bought a rhinestone on the belief that it was actually a diamond should have the opportunity to get all his money back" because the customer "is stuck with [a rhinestone] that he did not intend to [purchase]." *Am. Screening*, 105 F.4th at 1104. Here, by contrast, as the Court has recognized, consumers who purchased VCDs received the expected therapeutic benefits of the medications. (4/28/25 CMC Tr. 18:16-17, ECF 3039 ("Everybody agrees that they lower blood pressure.").)

**Common-Law Fraud.** Plaintiffs previously argued that their common-law

---

[2]    Notably, two of Plaintiffs' cases—*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000) and *FTC v. BlueHippo Funding, LLC*, 762 F.3d 238 (2d Cir. 2014) (cited in Opp'n at 14, n.40)—are no longer good law after the Supreme Court's decision in *AMG Capital*, which held that the FTCA does not authorize the type of equitable relief entered in those cases. 593 U.S. at 73.

fraud claims are governed by a "benefit-of-the-bargain" or "out-of-pocket" standard, and they took the position that "the general approach is the same under either" for all of their claims. (*See* MSP MSJ Opp'n Br. at 39, ECF 2606; *see also* Class Certification Op. App'x H, ECF 2261-3 (similar).) Plaintiffs now retreat from their prior position, insisting that "where fraud taints a purchasing decision[,] a full refund damages methodology is appropriate" irrespective of whether consumers derived any value from the product. (Opp'n at 15.) In so doing, Plaintiffs highlight statements by the Court during the Rule 702 hearing on Dr. Conti's opinions, in which the Court noted that "if there was fraud involved, then you're in[] a different" category. (*Id.* at 16 (citing 9/9/24 CMC Tr. 25, ECF 2841).)[3] But as Defendants explained in plenary briefing that this Court ordered subsequent to that hearing, Plaintiffs' fraud claims are governed by a benefit-of-the-bargain standard. And under this Court's ruling, that objective benefit-of-the-bargain standard demands evidence that the VCDs were "worthless" (as a result of a fundamental defect) or "worth less." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RMB/SAK), 2025 WL 1024048, at *8 (D.N.J. Apr. 7, 2025).

Plaintiffs' cases largely address the issue of standing and are inapposite. *See, e.g.*, *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 530 (7th

---

[3]    Plaintiffs cite to the 9/10/24 CMC, but the block quote highlighted in their brief is from the 9/9/24 Rule 702 hearing.

Cir. 2024) ("Here, though, there is only a potential risk of harm or defect [and the] potential risk of contamination is not enough to confer standing."); *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1086 (11th Cir. 2019) (recognizing standing "under a benefit-of-the-bargain theory"). To the extent any of Plaintiffs' cases address the measure of damages, they confirm that value remains an essential component of that element. *See, e.g.*, *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. Mar. 31, 2017) (plaintiff alleged that product had no value and was "fit only for the trash dump"); *Makaeff v. Trump Univ., LLC*, 309 F.R.D. 631, 639 (S.D. Cal. 2015) ("a full-refund model fail[s] to account for other value consumers received from [the misbranded food]").[4] None of these cases supports Plaintiffs' bid to abrogate the damages element of their fraud-based claims.

## B. Plaintiffs Have No Admissible Evidence That The VCDs Were "Worthless."

Plaintiffs ignore the Court's repeated pronouncements that "there is simply no evidence" that the VCDs were "worthless." (4/28/25 CMC Tr. 18:10-12, ECF 3039 ("The plaintiffs keep wanting to sneak back in that they are worthless—one word. And there is simply no evidence for that. . . . I thought my opinion was clear that

---

[4]     Plaintiffs' reliance on *Huertas v. Bayer*, 120 F.4th 1169 (3d Cir. 2024), is misplaced because, as this Court has previously highlighted, it was decided at the motion-to-dismiss stage, which required the court to accept the plaintiffs' allegations that the products were unusable and worthless. *See Valsartan*, 2025 WL 1024048, at *5. *Davis v. Main St. Family Pharmacy, LLC*, 2016 WL 9051172 (N.D. Fla. May 19, 2016), is not a fraud case and is therefore inapposite.

that's out of the case.").) Nor do Plaintiffs address their prior admission that their experts "don't address value of the pills" and that they "***are not going to say it's a fundamental defect***." (4/28/25 CMC Tr. 28:18; 31:5-6, ECF 3039 (emphasis added); *see also id.* 29:25-30-2 ("[N]obody's general cause experts on either side . . . are going to say, 'and as a result, the value of the pills were [fundamentally defective.'").) Instead, Plaintiffs argue that: (1) the Court previously ruled that jurors get to decide whether the VCDs are "worthless"; and (2) Plaintiffs' general causation evidence and non-expert evidence suffice to withstand summary judgment. (Opp'n at 7-12.) Neither argument has any merit.

***First***, Plaintiffs contend that the Court has already ruled that the parties will put on evidence regarding the "nature and extent of the risks associated with nitrosamine exposure at the levels found in the VCDs" and that the jury will ultimately "weigh that evidence" and determine whether a "full refund is appropriate[.]" (Opp'n at 1-2 (citing *Valsartan*, 2025 WL 1024048, at *9).) Plaintiffs fundamentally misunderstand the Court's prior ruling. As the Court made clear, Plaintiffs would only have that opportunity upon establishing the admissibility of their expert evidence—i.e., after being "put to their proofs." *Valsartan*, 2025 WL 1024048, at *8. Because the Court excluded the opinions of Dr. Conti—"Plaintiffs' only evidence to support worthlessness," *id.* at *17—Plaintiffs have no admissible evidence to present, much less for the jury to weigh, on this fundamental defect

theory of damages.

*Second*, Plaintiffs argue that "the record supports a jury finding that the . . . VCDs were fundamentally defective" and therefore "worthless." (Opp'n at 8.) But nowhere in Plaintiffs' brief or their contemporaneously filed Statement of Material Facts is there any mention of a "702 expert who would say that the risks to taking this drug at this level for this many years caused cancer and therefore it had no value at all." (4/28/25 CMC Tr. 19:8-13, ECF 3039.) Instead, Plaintiffs cite evidence they claim shows that "NDMA and NDEA are probable human carcinogens," which supposedly posed an "unacceptable carcinogenic risk." (Opp'n at 8; *id.* at 11 (citing statements in FDA press release).)[5] Plaintiffs also refer to their general causation experts, whom Plaintiffs assert will testify about a purported dose-response relationship and the epidemiological studies. (*Id.* at 8.) Putting aside that those very studies reported "***no increased risk of overall cancer*** among exposed patients" and "***no evidence*** of a dose-response relation[.]" (Supp. SUMF ¶¶ 6-8 (emphases added)), any dispute about general causation is immaterial. *Chamberlain v. United States Postal Serv.*, Nos. 1:16-cv-04941-NLH-AMD, 1:18-cv-01700-JBS-AMD,

---

[5]    As the FDA explained, NDMA and NDEA are also present in other ingested products, even water, and the trace levels of NDMA in recalled VCDs presented only a "very small" risk to patients. (*See* Ex. 65 to Defs.' Orig. SUMF.) Indeed, as the FDA advised, "[b]ecause valsartan is used in medicines to treat serious medical conditions, patients taking the recalled valsartan-containing medicines should continue taking their medicine until they have a replacement product." (Defs.' Orig. SUMF 81 (citing (Ex. 1, July 13 FDA News Release at 1).)

2020 WL 278639, at \*5 (D.N.J. Jan. 17, 2020) ("[T]o the extent there is a factual dispute at all it is not a material one precluding summary judgment."). As this Court has made clear, "just having some experts to talk about, yes, the drugs gave some risk of cancer, that's just not going to cut it. ***The plaintiff will not have met its burden***." (4/28/25 CMC Tr. 43:22-44:1, ECF 3039.)

The remainder of Plaintiffs' cited evidence boils down to company "documents and witness testimony" that Plaintiffs contend show that the VCDs were "adulterated" and that TPPs "would not have paid for" the VCDs had they known of that supposed fact. (Opp'n at 9-10.) However, none of that evidence reflects any assessment of the risks or benefits of the VCDs (much less from an expert). (Pls.' SUMF ¶ 31 ("TPP Plaintiff's assignors do not reimburse for drugs that are not FDA approved and that are adulterated"); *id.* ¶¶ 34-35 (FDA sending ZHP Warning Letter notifying ZHP of deviations from cGMPs).) Although Defendants dispute Plaintiffs' theory of adulteration,[6] that is immaterial under the Court's prior ruling because a "[f]ull [r]efund is [n]ot [a]utomatic [u]pon a [f]inding of [a]dulteration [u]nder the [b]enefit of the [b]argain [t]heory," *Valsartan*, 2025 WL 1024048, at \*5; Plaintiffs must "*prove* their damages." *Id.* at \*6. In short, none of Plaintiffs' cited evidence

---

[6]    For example, Plaintiffs claim that Defendants' own prescriber expert, Dr. Flack, testified that he "transitioned all of his own patients" to VCDs that did not include NDMA following the FDA's recall announcement. (Opp'n at 12 (citing Pls.' SUMF ¶ 32).) However, Dr. Flack also clearly testified that the presence of NDMA impurities did not affect the efficacy of the VCDs. (Orig. SUMF ¶ 125.)

would be "helpful to a jury in determining . . . whether the VCDs were so fundamentally flawed as to be rendered valueless." *Id.* at *17 (rejecting "black and white" argument that adulteration warrants a finding of "worthlessness").

### C. Plaintiffs Cannot Establish Injury Or Damages On The Theory That The VCDs Were "Worth Less."

#### 1. Plaintiffs Have Abandoned The "Worth Less" Theory.

Plaintiffs cannot identify a single action that they took after Judge Kugler dismissed their "worth less" theory to maintain it. Instead, Plaintiffs argue that this Court has already decided that "Plaintiffs' allegations encompass a 'worthless' and 'worth-less' theory of recovery." (Opp'n at 18.) But the Court merely found that there was "no need for Plaintiffs to amend their complaint" to explicitly plead a theory that the VCDs were "worth less," *Valsartan*, 2025 WL 1024048, at *20; it did not specifically address—much less resolve—the issue of waiver. Plaintiffs also complain that Judge Kugler's early rulings "set up a paradigm" that "a finding of adulteration (i.e., a legal prohibition on sale) meant the jury could determine that the VCDs were adulterated from day one and therefore were worthless." (Opp'n at 20.) However, as the Court clearly explained at the April CMC, "that's how [Plaintiffs] pled" this case—i.e., "it's partly the ***plaintiff's*** own doing." (4/28/25 CMC Tr. 42:5-6, ECF 3039; *id.* 27:4-7 (emphasis added).) The Court should not permit Plaintiffs to resurrect a theory that Plaintiffs strategically abandoned to facilitate class certification. *See In re Dex Media, Inc.*, 595 B.R. 19, 38-39 (D. Del. 2018) (finding

abandonment where "[party] chose to abandon that theory and pursue one based on [an alternative theory with more potential damages]" that was ultimately rejected).

Moreover, if Plaintiffs were allowed to re-introduce into this case a theory that the VCDs were "worth less" (as opposed to being completely valueless), that would necessarily require a reassessment of class certification. After all, Plaintiffs do ***not*** dispute that they put all of their eggs in Dr. Conti's now-excluded "worthlessness" basket in an effort to satisfy Rule 23(b)(3)'s predominance requirement. Plaintiffs do not explain how they could possibly establish that the VCDs were "worth less" with "common evidence." *See Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 212 (E.D. Pa. 2017) (because "it is not true that [product] had 'zero value' at the time of sale," damages were not "provable with common evidence").

### 2. Plaintiffs Lack Admissible Evidence Capable Of Establishing That The VCDs Were "Worth Less."

As this Court and Judge Kugler have explained, to prevail on a "worth less" theory, Plaintiffs must present expert testimony from an economist that weighs the purported causation evidence of any increased risk against the undisputed therapeutic benefits, and then "translates" that into a precise diminution in value. (4/28/25 CMC Tr. 43:7-9, ECF 3039; MTD Op. 2 at 13, ECF 728.) Plaintiffs ignore these clear pronouncements, and instead insist that they can prove a "worth less" theory by presenting evidence of general causation and asking the jury to "determine damages based on its own assessment of that evidence." (Opp'n at 21.) But the Court

10

has already rejected this argument, explaining that "there has to be an economic translation into risk and benefits," which is "the piece that is missing." (4/28/25 CMC Tr. 41:10-14, ECF 3039.)

Plaintiffs essentially urge the Court to reconsider that decision in light of *Slatowksi v. Sig Sauer, Inc.*, No. 24-1639, 2025 WL 2178533 (3d Cir. 2025) (cited in Opp'n at 21), but that case only reinforces the soundness of the Court's reasoning. In *Slatowski*, the Third Circuit explained that "a question is too complicated for the jury" if "given all the admissible evidence, the jury can[not] answer it without speculating." *Id.* at *4. For example, "experts are often needed in cases where the **theory of harm is abstract or technical** and so requires expert analysis." *Id.* (emphasis added). By contrast, "no expert is needed when, even though the subject matter is complex, lay testimony can tell the story of causation," such as "what caused a gun to fire accidentally." *Id.* at *1, *5. Here, the alleged theory of harm— that, based on a weighing of risks and benefits, the VCDs were worth something more than $0 but less than their full price—is precisely the type of "abstract or technical" harm that requires expert analysis. *Id.* at *4; *see Willoughby v. Abbott Lab'ys*, No. 22 C 1322, 2025 WL 622925, at *6-7 (N.D. Ill. Feb. 26, 2025) (requiring expert "evidence of how much [plaintiffs] would have paid had they known the [product] contained [the alleged defect]").

At the April CMC, Plaintiffs' counsel essentially recognized as much,

11

observing that "economists" in drug and device litigation routinely perform "conjoint analys[es]" that isolate a purported defect to ascertain its "impact [on] value." (4/28/25 CMC Tr. 41:16-22, ECF 3039.) Defendants strongly dispute that such an analysis could provide a reliable metric for measuring damages in this case, but it is the "piece that is missing" from Plaintiffs' evidentiary presentation. (*Id.* 41:10-14.) And while Plaintiffs believe they "should be permitted to obtain" that evidence through new experts (Opp'n at 23-24 (citing cases in which plaintiffs have presented "expert opinion[s] on conjoint analys[es]") (citations omitted)), this Court has already denied their motion to reopen expert discovery (*see* ECF 3148). Accordingly, Plaintiffs' "worth less" theory cannot survive summary judgment.

## II.    **PLAINTIFFS' CLAIMS ARE SEPARATELY PREEMPTED.**

As set forth in Defendants' opening brief, summary judgment is separately warranted because Plaintiffs are attempting to proceed with an impermissible fraud-on-the FDA theory of liability, which is preempted by federal law under *Buckman*, 531 U.S. 341. (Mot. at 24-28.) In response, Plaintiffs contend that Judge Kugler already rejected this argument and that his ruling "is the law of the case." (Opp'n at 26.) But Judge Kugler's decision was issued at the pleading stage, and it is well established that a court's "holding on a motion to dismiss does not establish the law of the case for purposes of summary judgment." *In re Integrated Health Servs., Inc.*, 358 B.R. 637, 641 (D. Del. 2007); *see Council of Alternative Political Parties v.*

*Hooks*, 179 F.3d 64, 69-70 (3d Cir. 1999) (law of the case "does not prohibit courts from revisiting matters that are 'avowedly preliminary or tentative'") (citation omitted).[7] Given the low bar that applies on a motion to dismiss, Judge Kugler found that Plaintiffs' allegations, taken as true, "depend on traditional tort and contract law sources and not on a 'fraud-on-the-FDA' claim." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RMB/SAK), 2020 WL 7418006, at *9 (D.N.J. Dec. 18, 2020).[8]

Even if the prior ruling correctly construed Plaintiffs' allegations, the record developed since that decision plainly shows that this is a quintessential "fraud-on-the-FDA" case barred by *Buckman*, 531 U.S. 341. As detailed in Defendants' opening brief, Plaintiffs have repeatedly sought to litigate their claims based on evidence that they claim shows that "ZHP did not disclose" information "to the FDA" (ECF 2569-3 ¶ 41.5), and that "Teva did not inform the FDA" about

---

[7]    Plaintiffs also cite Judge Kugler's summary judgment decision on whether Defendants' VCD labeling constituted an express warranty, but that decision did not address preemption and has no bearing on Defendants' argument. *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RMB/SAK), 2024 WL 1286347, at *15 (D.N.J. Mar. 26, 2024).

[8]    As Defendants explained, Judge Kugler's prior ruling relied primarily on *Wyeth v. Levine*, 555 U.S. 555 (2009), which did not address a claim of implied preemption under *Buckman* and is therefore inapposite. (Mot. at 26.) Plaintiffs contend that the Court "correctly invoked *Wyeth v. Levine*" (Opp'n at 26), but they fail to explain how that impossibility- and obstacle-preemption decision applies to *Buckman*, which involves a completely different variant of preemption.

information either (ECF 2569-1 at 17). Plaintiffs argue that this alleged conduct is not a "critical element" of their lawsuit and is instead only "relevant to answering defense arguments that the FDA knew and approved of their conduct." (Opp'n at 25-26.) But without such allegations, Plaintiffs cannot establish scienter for their fraud claims, which is presumably why their opposition brief is replete with accusations that the sales of VCDs were illegal because Defendants "knowingly or intentionally misrepresented their VCDs." (*Id.* at 10; *see also id.* at 3 (similar).) Although Defendants strongly dispute those allegations, the critical point for purposes of this motion is that they confirm that alleged fraud on the FDA is in fact "a critical element" of Plaintiffs' lawsuit. *Buckman*, 531 U.S. at 353.

*Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733 (D. Md. 2015) (cited in Opp'n at 27), is not to the contrary. In *Williams*, the court found, at the pleading stage, that the plaintiffs' claims, "unlike those in *Buckman*, [were] tort law claims based on manufacturing defects, not fraud on a federal agency." *Id.* at 746 (citation omitted). In so finding, the court did not address any allegation that the defendant had misled the FDA. As a result, "the federal interference rationale followed in *Buckman* d[id] not apply." *Id.* Here, by contrast, Plaintiffs' theory of the case is that Defendants "ma[de] fraudulent misrepresentations to the FDA," bringing this lawsuit squarely within the ambit of *Buckman*. *See Atkinson v. Luitpold Pharms., Inc.*, 448 F. Supp. 3d 441, 447-48 (E.D. Pa. 2020) (cited in Mot. at 25). Plaintiffs

suggest that *Atkinson* is distinguishable because it addressed a Texas statute that required a plaintiff to establish concealment of information from the FDA (Opp'n at 27), but they miss the point of that decision. *Atkinson* makes clear that "the FDA is 'amply empower[ed]' to investigate fraud, and having courts step into that role would 'inevitably conflict' with the FDA's responsibilities." *Atkinson*, 448 F. Supp. 3d at 451 (citing *Buckman*, 531 U.S. at 348-51). Plaintiffs' claims are preempted under *Buckman* because they are asking the Court to take that very step here.[9]

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' opening brief, the Court should grant summary judgment in favor of Defendants.

Dated: September 12, 2025                Respectfully submitted,

/s/ Jessica Davidson
**KIRKLAND & ELLIS LLP**
Jessica Davidson, P.C. (*pro hac vice*)
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Allison M. Brown, P.C.
2005 Market Street, Suite 1000
Philadelphia, PA 19103

---

[9]    Plaintiffs inexplicably devote nearly a page of their opposition to accusing Defendants of raising "undeveloped" arguments regarding scienter and class certification. (Opp'n at 28.) With respect to scienter, Defendants simply illustrated an additional reason why Plaintiffs' prior attempts to analogize this litigation to the sale of "snake oil" as medicine in other cases is meritless. And Plaintiffs misconstrue Defendants' argument about class certification, as previously discussed.

Tel: (215) 268-5000
alli.brown@kirkland.com

Nina R. Rose, P.C. (*pro hac vice*)
Jordan M. Schwartz (*pro hac vice*)
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
nina.rose@kirkland.com
jordan.schwartz@kirkland.com

*Attorneys for Defendants Zhejiang
Huahai Pharmaceutical Co., Ltd.,
Huahai U.S., Inc., Prinston
Pharmaceutical Inc., and Solco
Healthcare U.S., LLC*

**GREENBERG TRAURIG, LLP**
Steven M. Harkins
Lori G. Cohen, Esq.
Victoria Davis Lockard
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Tel: (678) 553-2385
harkinss@gtlaw.com
cohenl@gtlaw.com
lockardv@gtlaw.com

Gregory E. Ostfeld
Tiffany M. Andras
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
ostfeldg@gtlaw.com
andrast@gtlaw.com

*Attorneys for Teva Pharmaceuticals
USA, Inc., Teva Pharmaceutical
Industries Ltd., Actavis LLC, and*

*Actavis Pharma, Inc.*

**KIRKLAND & ELLIS LLP**
Devora W. Allon, P.C.
Alexia R. Brancato, P.C.
601 Lexington Avenue
New York, New York 10022
Tel: (212) 446-5967
devora.allon@kirkland.com
alexia.brancato@kirkland.com

*Attorneys for Torrent Pharmaceuticals Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 12, 2025, a true and correct copy of the foregoing document was served upon counsel of record via operation of the Court's electronic filing system.

Dated: September 12, 2025    Respectfully submitted,

         */s/ Jessica Davidson*

         Jessica Davidson, P.C. (*pro hac vice*)
         **KIRKLAND & ELLIS LLP**
         601 Lexington Avenue
         New York, NY 10022
         Tel: (212) 446-4723
         jessica.davidson@kirkland.com