# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*Gaston Roberts et al. v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.*,<br><br>Case No. 1:20-cv-00946-RMB-SAK | MDL No. 2875<br><br>Honorable Renée Marie Bumb, Chief District Court Judge |

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING PREEMPTION

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................2

    A.    Plaintiff's Failure-To-Warn, Fraud, And Warning-Based Negligence Claims Are Preempted. ......................................................2

    B.    *Mensing* Bars All Of Plaintiff's Warning-Based Claims......................4

    C.    Plaintiff's Theory Of "Adulteration" Cannot Save Her Claims. ..........7

    D.    Plaintiff's Fraud-On-The-FDA Theory Is Preempted..........................9

CONCLUSION ............................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atkinson v. Luitpold Pharms., Inc.*,
  448 F. Supp. 3d 441 (E.D. Pa. 2020) ................................................................. 9

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001) ................................................................................. 2, 9, 10

*Gibson v. Advanced Bionics, LLC*,
  No. 2:25-cv-00423-MCS-SSC2025, 2025 WL 2555237
  (C.D. Cal. Sept. 2, 2025) ..................................................................................... 9

*Guarino v. Wyeth, LLC*,
  719 F.3d 1245 (11th Cir. 2013) ........................................................................... 6

*Jankowski v. Zydus Pharms. USA, Inc.*,
  No. 22-2212, 2023 WL 4700651 (3d Cir. July 24, 2023) ............................... 5, 6

*Mensing v. Wyeth, Inc.*,
  588 F.3d 603 (8th Cir. 2009) .............................................................................. 7

*Morris v. PLIVA, Inc.*,
  713 F.3d 774 (5th Cir. 2013) (per curiam) ........................................................ 5

*Mutual Pharmaceutical Co. v. Bartlett*,
  570 U.S. 472 (2013) ........................................................................................ 1, 3

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011) ................................................................................. passim

*Strayhorn v. Wyeth Pharms., Inc.*,
  737 F.3d 378 (6th Cir. 2014) ........................................................................... 5, 6

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
  510 F. Supp. 3d 1141 (S.D. Fla. 2020) ...................................................... passim

**Statutes**

21 U.S.C. § 331 ........................................................................................................ 7

21 U.S.C. § 337 ............................................................................................................. 8

21 U.S.C. § 337(a) ....................................................................................................... 8

**Other Authorities**

21 C.F.R. § 200.5 ........................................................................................................ 4

21 C.F.R. § 202.1(1)(2) ............................................................................................... 5

Summary judgment is independently warranted on Plaintiff's claims for failure to warn, fraud and negligence (except insofar as Plaintiff seeks to recover for a manufacturing defect) because such claims are preempted by federal law.

***First***, Plaintiff's representation-based claims are barred by *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011). *Mensing* broadly preempts claims that impose a duty on manufacturers of generic drugs to provide additional or different warnings separate from those provided by the manufacturers of the equivalent brand-name drug.[1] Plaintiff cannot evade the broad reach of this binding precedent by recasting her claims as challenging Defendants' alleged failure to warn in public statements or sounding in a theory of "adulteration." With respect to the former theory, *Mensing* makes clear that the federal duty of "sameness" extends to promotional, advertising, and other public communications. And Plaintiff's theory of "adulteration" is an impermissible attempt to enforce federal adulteration and misbranding laws. Notably, the *Zantac* court applied these straightforward principles in holding that all claims (e.g., failure to warn, design defect, and fraud) arising out of "alleged defects

---

[1] Although Plaintiff initially asserted a claim for design defect, she did not include it in her draft PTO, effectively abandoning that cause of action. (*See* Parties' Joint Pretrial Order at 37 (omitting design defect from list of claims).) In any event, in *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472 (2013), the Supreme Court held that the principles underlying *Mensing* similarly bar any design defect claims that seek to impose a duty on generic manufactures to alter the composition of their drugs. Thus, any design defect claim would also fail.

1

in ranitidine products, product labeling, or other communications that Generic Manufacturer Defendants could not independently change while remaining in compliance with federal law are pre-empted," "regardless of Plaintiffs' allegations that [those] products were misbranded." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 510 F. Supp. 3d 1141, 1149, 1161 (S.D. Fla. 2020).

***Second***, to the extent Plaintiff is claiming that Defendants made misrepresentations to the FDA, those claims are separately preempted. Under *Buckman Co. v. Plaintiffs' Legal Committee*, "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." 531 U.S. 341, 350 (2001).

## ARGUMENT

### A. Plaintiff's Failure-To-Warn, Fraud, And Warning-Based Negligence Claims Are Preempted.

*Mensing* forecloses Plaintiff's claims for failure to warn and fraud, as well as her negligence causes of action, to the extent these claims challenge Defendants' communications with prescribers and consumers. In *Mensing*, the plaintiffs alleged that manufactures of a generic drug were liable under state law for failing to provide different or stronger warnings of the risks associated with the long-term use of the generic product. 564 U.S. at 610. The Supreme Court addressed whether federal drug regulations applicable to manufacturers that develop generic drugs approved under an Abbreviated New Drug Application ("ANDA") "directly conflict with, and thus

2

pre-empt [failure to warn] state law claims." *Id.* at 609. The Supreme Court "h[e]ld that they do" and that it is "impossible" to simultaneously comply with both state and federal requirements. *Id.* at 618.

As the Supreme Court explained, ANDA holders are not permitted to make unilateral changes to the labels of the generic drugs they sell because "[f]ederal law . . . demand[s] that generic drug labels be the same at all times as the corresponding brand-name drug labels." *Mensing*, 564 U.S. at 618. A claim for failure to warn that depends on the assertion that a manufacturer of a generic drug breached a state-law duty to provide warnings that are stronger or different from those of the brand-name equivalent would require the generic manufacturer to violate the federal duty of "sameness," rendering it preempted. *Id.*; *see also Bartlett*, 570 U.S. at 486-87, 490 ("[S]tate-law design-defect claims . . . that place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition or labeling.").

Here, the crux of Plaintiff's failure-to-warn claims is that Defendants had a duty to warn valsartan prescribers and users that valsartan contained NDMA. (*See, e.g.*, Master Compl. ¶¶ 438-449.) Similarly, Plaintiff's claim for fraud is premised on the allegation that "Defendants had an affirmative duty to fully and adequately warn . . . that these drugs contained unsafe levels of NDMA[.]" (*Id.* ¶ 500.) These

3

causes of action are preempted because it would be impossible for Defendants to comply with such an alleged state-law duty to warn without violating federal law.

At a recent hearing, Plaintiff's counsel argued that *Mensing* does not apply in this case because: (1) her failure to warn claims are not based on the valsartan label, but rather a theory that Defendants failed to tell valsartan users that the product was contaminated with NDMA; and (2) Defendants allegedly manufactured an "adulterated" formulation of valsartan containing NDMA and so *Mensing* does not apply. (9/3/25 Hr'g Tr. 63:12-66:2, ECF 3170.) Both arguments should be rejected.

### B. *Mensing* Bars All Of Plaintiff's Warning-Based Claims.

Plaintiff contends that her claims for failure to warn are not preempted because they are not based on the adequacy of Defendants' labels; rather, they are grounded in Defendants' alleged failure to make public statements providing information to prescribers or the public about the risks associated with NDMA. (9/3/25 Hr'g Tr. 63:12-66:2, ECF 3170.) Putting aside that this claim contradicts the Master Complaint (*see* Master Compl. ¶¶ 224-229), all of Plaintiff's warning-based claims are preempted regardless of how she frames them. *Mensing* makes clear that the federal duty of "sameness" extends to promotional and advertising materials, updates to medication labeling after FDA approval such as Dear Doctor letters,[2] and

---

[2] "Dear Doctor" letters are communications used by manufacturers to notify health care providers about new or updated warnings regarding a drug. *See* 21 C.F.R.
*(cont'd)*

4

any other documents used by the drug's prescribers and consumers. 564 U.S. at 615, *see also* 21 C.F.R. § 202.1(1)(2). Accordingly, courts have routinely held that ***all*** warning-based claims, including those based on a generic manufacturer's failure to provide a Dear Doctor letter or other supplemental materials to prescribers or consumers, are preempted. *See, e.g.*, *Jankowski v. Zydus Pharms. USA, Inc.*, No. 22-2212, 2023 WL 4700651, at *3 (3d Cir. July 24, 2023); *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 391 (6th Cir. 2014); *Morris v. PLIVA, Inc.*, 713 F.3d 774, 777 (5th Cir. 2013) (per curiam); *Zantac*, 510 F. Supp. 3d at 1161.

For example, in *Jankowski*, the plaintiffs sued a generic manufacturer, claiming that although it included the FDA-approved warnings regarding the medication's side effects in the drug's packaging, it should still be held liable under state product liability law for failing to take "additional steps to communicate the warnings to Plaintiffs' physicians, such as sending Dear Doctor letters or placing the FDA-approved information in physician reference sources." 2023 WL 4700651, at *1. The Third Circuit affirmed the district court's dismissal of the claim for failure to warn, reasoning that the "communications" underlying the plaintiffs' lawsuit "constitute labeling that is subject to the duty of sameness, and Plaintiffs do not

---

§ 200.5 ("Manufacturers and distributors of drugs and the Food and Drug Administration occasionally are required to mail important information about drugs to physicians and others responsible for patient care.").

allege that [the brand name manufacturer] warned of its drug's side effects using these means." 2023 WL 4700651, at *3.

Similarly, in *Zantac*, the court held that warning, fraud, and negligence claims "based on alleged defects in ranitidine products, product labeling, or other communications that Generic Manufacturer Defendants could not independently change while remaining in compliance with federal law are pre-empted." 510 F. Supp. 3d at 1161. The court made clear that "[t]his includes, but is not limited to, claims . . . based on failure to warn consumers that the products contained NDMA or could break down into NDMA when ingested." *Id.*; *see also, e.g.*, *Strayhorn*, 737 F.3d at 391 ("*Mensing* . . . broadly preempt[s] claims that are, at their core, claims that the generic manufacturer failed to provide additional warnings beyond that which was required by federal law of the brand-name manufacturers."); *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1249 (11th Cir. 2013) (rejecting a "failure-to-communicate theory of liability" that would require generic manufacturers to communicate warnings that brand manufacturers had not yet communicated).

The same is true here. Plaintiff's warning claims challenge "communications" that are "subject to the duty of sameness" recognized in *Mensing*. *Jankowski*, 2023 WL 4700651, at *3. Although Plaintiff's counsel highlighted the fact that the purported "contamination was disclosed by a press release from ZHP's United States subsidiaries" (9/3/25 Hr'g Tr. 67:5-8), that statement was issued at the direction of—

6

and in conjunction with—the FDA. (*See, e.g.*, Dep. of Jucai Ge 177:2-179:6, May 27, 2022, ECF 2665, Ex. 8); *see also* Am. Rep. of Ali Afnan ¶ 112, ECF 2286, Ex. 13).) Thus, this evidence only highlights that Defendants could ***not*** "independently change" the substance of what they conveyed to prescribers, confirming that Plaintiff's warning-based claims are preempted. *Zantac*, 510 F. Supp. 3d at 1161.

### C. **Plaintiff's Theory Of "Adulteration" Cannot Save Her Claims.**

Plaintiff's counsel also argued that the *Mensing* preemption doctrine does not apply because Defendants sold a medication "contain[ing] NDMA" rather than "the approved formulation of valsartan," meaning that they are not "entitled to any benefits of labeling consistent with the brand name Diovan." (9/3/25 Hr'g Tr. 65:11-21, ECF 3170.) However, that is just a repackaged version of the argument rejected in *Mensing*, where the Eighth Circuit reasoned that impossibility preemption did not apply because generic "[m]anufacturers cannot distribute a 'misbranded' drug, 21 U.S.C. §§ 331(a)–(b)." *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 606, 611 n.6 (8th Cir. 2009). In reversing that decision, the Supreme Court explained that whether the generic manufactures were obligated to seek a change in their labeling under the federal "misbranding" law was irrelevant because preemption applied "***even assuming such a duty existed***." *Mensing*, 564 U.S. at 617-18 (emphasis added).

Applying these principles in *Zantac*, the court held that a "claim based on an allegation that a generic drug's labeling renders the drug misbranded is a pre-empted

7

claim because the drug's manufacturer cannot independently and lawfully change FDA-approved labeling[.]" 510 F. Supp. 3d at 1160. As the court explained, while federal law proscribes the sale of "misbranded" drugs, "[t]here is no private cause of action to enforce the federal misbranding statutes." *Id.* (citing 21 U.S.C. § 337(a)).[3] Indeed, "[a] finding that Plaintiffs can avoid pre-emption by alleging that defects in ranitidine products made the products misbranded . . . would render the vast body of pre-emption caselaw in the drug context, including binding Supreme Court decisions, meaningless." *Id.*

Here, the FDA approved Defendants' ANDAs for generic valsartan, which remain active to this day.[4] As a result, the generic version of valsartan was required to have the same labeling and to be accompanied by the same "communications" to prescribers as those made by manufactures of brand-name valsartan. While Defendants strongly dispute Plaintiff's theory of "adulteration," the critical point for purposes of this motion is that it is tantamount to a claim that valsartan containing NDMA violated federal adulteration or misbranding laws, which Plaintiff suggests should have been remedied through non-FDA-approved disclosures. Because that

---

[3]  The same is true with respect to adulteration. *See* 21 U.S.C. § 337(a) (providing that "all such proceedings for the enforcement, or to restrain violations, of [adulteration and misbranding statute] shall be by and in the name of the United States").

[4]  https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&ApplNo=204821.

8

theory contravenes the federal duty of "sameness," it confirms that Plaintiff's warning claims are preempted.

### D. Plaintiff's Fraud-On-The-FDA Theory Is Preempted.

Finally, Plaintiff's claims are also preempted under *Buckman*. In *Buckman*, the plaintiffs claimed that the defendants had "made fraudulent representations to the FDA as to the intended use of the [medical device] and that, as a result, the devices were improperly given market clearance and were subsequently used to the plaintiff's detriment." 531 U.S. at 347. The Supreme Court held that such claims "inevitably conflict with the FDA's responsibility to police fraud" and are preempted. *Id.* at 350; *see also, e.g.*, *Atkinson v. Luitpold Pharms., Inc.*, 448 F. Supp. 3d 441, 447-48 (E.D. Pa. 2020) ("causes of action that are contingent upon the defendant making fraudulent representations to the FDA conflict with federal law . . . ."); *Gibson v. Advanced Bionics, LLC*, No. 2:25-cv-00423-MCS-SSC2025, 2025 WL 2555237, at *7 (C.D. Cal. Sept. 2, 2025) ("Because Plaintiffs do not allege that Defendant made misrepresentations . . . 'outside . . . the regulatory process,' their fraud-based claims do not . . . escape preemption.").

Plaintiff's counsel has argued that this is "not a *Buckman* situation" because "we're not trying to recover based on a fraud on the FDA." (9/3/25 Hr'g Tr. 64:9-10, ECF 3170.) Rather, counsel argued, Plaintiff is merely seeking to respond to ZHP's "defense, which is that they complied with the regulatory requirements and

9

the FDA knew all along." (*Id.* 64:11-14.) But that is not a credible distinction. The very first page of Plaintiff's summary judgment opposition accuses Defendants of "***failing to notify the FDA***" of the presence of NDMA in valsartan (ECF 3099, at 1 (emphasis added)), and Plaintiff has represented in other briefing in this case that her "failure to warn claim extends not just to the labeling for the pills, but also to the failure to provide that information to the FDA[.]" (ECF 3091, at 10.) Thus, according to Plaintiff's own theory of the case, Defendants' alleged fraud on the FDA is in fact "a critical element" of Plaintiff's claims. *Buckman*, 531 U.S. at 353.

## CONCLUSION

For the reasons stated on the record by the Court, Defendants are entitled to summary judgment on all of Plaintiff's claims because she has no admissible evidence of specific causation. Alternatively, for the reasons set forth above, federal law independently preempts Plaintiff's claims for failure to warn, fraud, and negligence (except insofar as Plaintiff seeks to recover for a manufacturing defect).

Dated: September 17, 2025

Respectfully submitted,

*/s/ Jessica Davidson*
Jessica Davidson (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4723
jessica.davidson@kirkland.com

Allison M. Brown
**KIRKLAND & ELLIS LLP**

10

2005 Market Street, Suite 1000
Philadelphia, PA 19103
Tel: (215) 268-5000
alli.brown@kirkland.com

Nina R. Rose (*pro hac vice*)
Jordan M. Schwartz (*pro hac vice*)
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue
Washington, D.C. 20004
Tel: (202) 389-3394
nina.rose@kirkland.com
jordan.schwartz@kirkland.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 17, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Jessica Davidson*
Jessica Davidson