# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| IN RE VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>*Gaston Roberts et al. v. Zhejiang Huahai Pharmaceutical Co. Ltd., et al.*,<br><br>Case No. 1:20-cv-00946-RMB-SAK | No. 1:19-md-2875<br><br>Honorable Renée Marie Bumb<br>Special Master Thomas I. Vanaskie |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE ZHP DEFENDANTS' SUPPLEMENTAL MOTION FOR PARTIAL SUMMARY JUDGMENT ON FAILURE TO WARN CLAIMS ON THE BASIS OF FEDERAL PREEMPTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ........................................................................................................ 1

LEGAL ARGUMENT .................................................................................................. 2

    I.    PLAINTIFFS' FAILURE TO WARN CLAIMS ARE NOT PREEMPTED ........................................................................................... 2

        A.    Implied Preemption Under *Buckman* Is Inapplicable ................. 3

        B.    Impossibility Preemption Is Inapplicable .................................... 7

CONCLUSION ........................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Bausch v. Stryker Corp.*,
   630 F.3d 546 (7th Cir. 2010) ................................................................... 6

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341, 348 (2001) ............................................................... *passim*

*Carnero v. Deitert*,
   10 F. Supp. 2d 440 (D.N.J. 1996) ............................................................ 6

*In re Digitek Prods. Liab. Litig.*,
   MDL No. 2:08-md-01968,
   2009 WL 2433468 (S.D. W. Va. Aug. 3, 2009) ...................................... 6

*Gremo v. Bayer Corp.*,
   469 F. Supp. 3d 240 (D.N.J. 2020) ........................................................... 9

*King v. S.R. Smith, Inc.*,
   578 So. 2d 1285 (Ala. 1991) .................................................................... 5

*Medtronic, Inc. v. Lohr,*
   518 U.S. 470 (1996) ................................................................................. 2

*Lefaivre v. KV Pharm Co.*,
   636 F.3d 935 (8th Cir. 2011) ................................................................... 9

*Laverty v. Smith & Nephew, Inc.*,
   197 F. Supp. 3d 1026 (N.D. Ill. 2016) ..................................................... 6

*In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig.*,
   960 F.3d 1210 (10th Cir. 2020) ............................................................... 9

*Mutual Pharmaceutical Co., Inc., v. Bartlett*,
   570 U.S. 472 (2013) ............................................................................. 7,9

*Pliva, Inc. v. Mensing*,
   564 U.S. 604 (2011) ............................................................................. 7,8

*In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*,
    44 F. Supp. 3d 699 (E.D. Pa. 2015) .................................................................. 4

*In re Tylenol (Acetaminophen) Mktg. , Sales Pracs. & Prods. Liab. Litig.*,
    No. 2436, 2015 WL 7076012 (E.D. Pa. Nov. 13, 2015) ................................. 4

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    MDL No. 2875, 2020 WL 7418006 (D.N.J. Dec. 18, 2020) ...................... 4,8

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    MDL No. 2875, 2021 WL 222776 (D.N.J. Jan. 22, 2021) ............................ 8

*Williams v. Smith & Nephew*,
    123 F. Supp. 3d 733 (D. Md. 2015) ................................................................ 6

*Wyeth v. Levine*,
    555 U.S. 555 (2009) .................................................................................... 2,9

*Yocham v. Novartis Pharms. Corp.*,
    736 F. Supp. 2d 875 (D.N.J. 2010) ................................................................ 4

## INTRODUCTION

On September 3, 2025, after the Court confirmed that the Plaintiffs' claims in the *Roberts* case were deemed to be properly pled under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), ZHP argued that the failure to warn part of the claim was preempted, focusing on *Buckman*/fraud on the FDA as the basis for dismissal. This Court asked for briefing on "whether or not the plaintiff can maintain in this context an independent failure-to-warn claim." (9/3/25 Tr. at 63:8-70:1). The Court further stated in focusing the issue: "I mean, I think it may very well be a preemption issue because what the defense says is – **and this is what I want more briefing on -- is can you ever have an independent cause of action, such as under Alabama state law, or any state law, for that matter. Because the defense says it really is a dressed up, you know, failure -- a fraud-on-the-FDA claim. That's really all it really is.** And as a result, it's preempted, which, I don't know, might be true. I'd have -- I'm going to really look into it. And it's probably an issue I really need to resolve if it's going to surface in other cases. I probably should resolve that." (*Id.* at 70:3-71:3 (emphasis added)).

Plaintiffs' state-law failure-to-warn claims are not preempted under *Buckman* because they are based on the failure to warn doctors and patients, not that ZHP defrauded the FDA. In fact, Plaintiffs only raise ZHP's failure to provide information to the FDA in response to ZHP's defense that at all times the FDA approved and allowed its conduct. Evidence of ZHP's failure to provide complete or truthful

1

information to the FDA is not provided to prove the affirmative state-law failure-to-warn-claims. Additionally, since ZHP was not selling the approved generic equivalent to the brand name drug, ZHP is not entitled to the protection of the generic drug labelling rule, and impossibility preemption does not apply. The Court should deny Defendants' Motion for Partial Summary Judgment.[1]

## LEGAL ARGUMENT

## I

## PLAINTIFFS' FAILURE TO WARN CLAIMS ARE NOT PREEMPTED

There is a presumption against preemption, which can only be applied where preemption was "the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996); *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). The presumption against preemption cannot be overcome here, where (1) the claims are based solely on violations of state law in failing to provide information to doctors and patients, (2) the claims are not based on fraud on the FDA, and (3) the pills in

---

[1] The ZHP Defendants never moved for summary judgment on the basis of preemption in accordance with the Court's pretrial schedule for this case. To the extent that the Court has asked the ZHP Defendants to supplement their original motion or this briefing is considered to be an additional motion, Plaintiffs are unaware of what "undisputed facts" are relied on or the exact contours of the Defendants' arguments, as the briefs are ordered to be filed simultaneously. Plaintiffs reserve the right to request that the formalities of the Rules be followed and that they be permitted to fully respond, and to cross-move for partial summary judgment based on ZHP's admitted failure to warn.

question were not the generic equivalent of the brand name drug Diovan because the pills were contaminated with NDMA, which was not approved by the FDA.

## A.   Implied Preemption Under *Buckman* Is Inapplicable.

The Court asked: "**[C]an you ever have an independent cause of action**, such as under Alabama state law, or any state law, for that matter. Because the defense says it really is a dressed up, you know, failure -- a fraud-on-the-FDA claim." (9/3/25 Tr. at 70:3-71:3). The answer is that courts allow state-law failure-to-warn claims regarding approved drugs. In *Buckman Co. v. Plaintiffs' Legal Committee*, the Supreme Court narrowly defined "**fraud-on-the-FDA claims**":[2]

> Notwithstanding the fact that *Medtronic* did not squarely address the question of implied pre-emption, it is clear that the *Medtronic* claims arose from the manufacturer's alleged failure to use reasonable care in the production of the product, not **solely** from the violation of FDCA requirements. In the present case, however, the fraud claims exist **solely** by virtue of the FDCA disclosure requirements. Thus, although *Medtronic* can be read to allow certain state-law causes of actions that parallel federal safety requirements, it does not and cannot stand for the proposition that any violation of the FDCA will support a state-law claim.

531 U.S. 341, 348, 352-53 (2001) (emphasis added) (citation omitted). Applying that standard, courts in this Circuit reject preemption arguments against state-law

---

[2] Plaintiffs' manufacturing defect claims are not implicated here since "fraud-on-the-FDA" claims do not include those arising "from the manufacturer's alleged failure to use reasonable care in the production of the product, not **solely** from the violation of FDCA requirements." *Buckman*, 531 U.S. at 352-353 (emphasis added).

3

failure-to-warn claims. *See In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 144 F. Supp. 3d 699, 732 (E.D. Pa. 2015) (holding "The plaintiff's claims are not impliedly preempted."); *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2436, 2015 WL 7076012, at *8 (E.D. Pa. Nov. 13, 2015) (rejecting *Buckman* preemption and explaining: "Most of the plaintiff's allegations of fraud and fraudulent concealment center on the information disclosed to consumers and physicians primarily."); *Yocham v. Novartis Pharms. Corp.*, 736 F. Supp. 2d 875, 885 (D.N.J. 2010) (explaining that "the only way to make sense of the concern in *Buckman* is to understand it to be about the unique increase in incentive created by a tort in which the **sole** conduct element was such misrepresentation to the FDA").

Accordingly, as the Court previously held, "Plaintiffs' claims depend on traditional tort and contract law sources and not on a 'fraud-on-the-FDA' claim" and thus "federal law does not preempt such state law and common law claims." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2020 WL 7418006, at *9 (D.N.J. Dec. 18, 2020).

Plaintiffs' failure to warn claims do not rely on any misrepresentation to the FDA. The state law claims are based on the failure to provide information to doctors and patients—not limited to the product's labelling. For example, ZHP's press release and ZHP's communications with its customers, doctors, and patients

4

disclosing the contamination and recall were not accompanied by any label change. (SOLCO00024231 (Ex. 1);[3] SOLCO00024226 (Ex. 2)).

In *Roberts*, preemption was pled only as an affirmative defense to Plaintiff's state-law based failure-to-warn claim. The state-law failure-to-warn claim stems from the AEMLD, which holds that "if a manufacturer or seller places goods on the market that are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods can create danger when used in their customary manner, **the defendant must exercise reasonable diligence to make such danger known to the person likely to be injured by the product**." *King v. S.R. Smith, Inc.*, 578 So. 2d 1285, 1284 (Ala. 1991) (emphasis added).[4] This state law claim is focused on ZHP's obligations to the decedent and his doctors, not on

---

[3] All exhibits are attached to Adam M. Slater's certification in support of this brief unless otherwise noted.

[4] Plaintiffs have not surveyed or addressed the laws of other states because this briefing is in the *Roberts* case. For example, New Jersey law defines failure to warn as: "In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction or, in the case of dangers a manufacturer or seller discovers or reasonably should discover after the product leaves its control, if the manufacturer or seller provides an adequate warning or instruction. An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates adequate information on the dangers and safe use of the product, **taking into account the characteristics of, and the ordinary knowledge common to, the persons by whom the product is intended to be used, or in the case of prescription drugs, taking into account the characteristics of, and the ordinary knowledge common to, the prescribing physician**." N.J.S.A. 2A:58C-4 (emphasis added).

5

ZHP's obligations to the FDA. *See Laverty v. Smith & Nephew, Inc.*, 197 F. Supp. 3d 1026, 1034 (N.D. Ill. 2016) (citing *Bausch v. Stryker Corp.*, 630 F.3d 546, 557 (7th Cir. 2010)) (rejecting *Buckman* motion where no allegation that defendant made misrepresentations or omissions to FDA on PMA application); *Williams v. Smith & Nephew*, 123 F. Supp. 3d 733, 746-47 (D. Md. 2015) ("In sum, the only claims impliedly preempted are those that are based on the violation of federal duties that have no freestanding basis in Maryland tort law.").

Even if the Defendants could point to federal regulations implicated by Plaintiffs' state law claims, those are simply parallel federal requirements that do not trigger preemption. *Buckman*, 531 U.S. at 353 (allowing "state-law causes of actions that parallel federal safety requirements"). "**And this is true even if proving those independent state law claims will rely, in part, on evidence that a federal requirement was violated**." *Williams*, 123 F. Supp. 3d at 747; *Carnero v. Deitert*, 10 F. Supp. 2d 440, 444 (D.N.J. 1996); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2009 WL 2433468, at *12-13 (S.D. W. Va. Aug. 3, 2009) (finding state law claims against Mylan for manufacture and sale of misbranded or adulterated drugs were not preempted).

Finally, the importance of ZHP's failure to provide this information to treating doctors is illustrated by the testimony of Mr. Roberts' prescribing doctor, Dr. Robichaux, who testified that if he had been made aware of the NDMA

6

contamination he would have ensured that Mr. Roberts would use pills that were not contaminated. (2/12/2025 Dep. Tr. 31:5-41:3, 74:6-75:4 (Ex. 3)).

### B.     Impossibility Preemption Is Inapplicable.

Impossibility preemption does not apply because Defendants simultaneously can comply with their state-law duties to warn and any parallel federal duties. Defendants have suggested that preemption is required based on *Pliva, Inc. v. Mensing*, 564 U.S. 604, 612 (2011). But *Mensing* does not apply here because the drugs at issue were admittedly not the generic or therapeutic equivalent of the brand drug.

In *Mensing*, the Supreme Court discussed the federal duty of sameness and held that a generic drug manufacturer cannot change the approved warning language in the label **WHERE THE DRUG AT ISSUE IS THE APPROVED GENERIC EQUIVALENT TO THE BRAND DRUG** and thus satisfied the federal requirement of sameness. The very basis for preemption in the context of generic drugs is the approval, based on the drug's "**equivalence to a reference listed drug that has already been approved by the FDA**." *Mensing*, 564 U.S. at 612 (emphasis added). "[T]he proposed generic drug must be **chemically equivalent** to the approved brand-name drug...." *Mutual Pharmaceutical Co., Inc., v. Bartlett*, 570 U.S. 472, 477 (2013) (emphasis added). The Supreme Court has defined a generic drug as "a drug designed to be a **copy** of a reference listed drug (typically a brand

7

name drug) and thus **identical** in active ingredients, safety, and efficacy." *Mensing*, 564 U.S. at 612, n.2 (emphasis added).[5]

Here, preemption does not apply because the valsartan was not the equivalent, a copy, or identical to the reference listed drug; instead, it was contaminated with NDMA. The Court previously has recognized that ZHP failed to sell the generic equivalent by definition. "The Court finds the FDA has already made an initial determination as to the general bioequivalence when it recalled the VCDs at issue. That is, the recall serves to point out that the VCDs at issue contained contaminants not listed in the Orange Book and makes the Court's starting point as to the VCDs' lack of general chemical bioequivalence plain and simple." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2020 WL 7418006, at *12 (D.N.J. Dec. 18, 2020). "A marketed generic containing a contaminant cannot be the equivalent to the chemical entity listed in the Orange Book." *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, MDL No. 2875, 2021 WL 222776, at *12 (D.N.J. Jan. 22, 2021). The affirmative defense of preemption is inapplicable by definition, because Defendants cannot hide behind the protections given to manufacturers who sell approved generic equivalents.

---

[5] In *Mensing*, the Supreme Court found that failure to warn claims alleging inadequacy of the generic drug's warnings were preempted since the generic manufacturer could not unilaterally change the warning for the approved generic drug. Of course, in that case the defendant was selling the approved generic equivalent of the reference listed drug. Here the drug was contaminated with a prohibited, unapproved genotoxic carcinogen and not the generic equivalent.

Moreover, Defendants cannot show that federal law prohibited them from disclosing the NDMA contamination. "[S]tate law failure-to-warn claims are pre-empted by the Federal Food, Drug, and Cosmetic Act and related labeling regulations when there is 'clear evidence' that the FDA would not have approved the warning that state law requires." *Gremo v. Bayer Corp.*, 469 F. Supp. 3d 240, 252 (D.N.J. 2020) (discussing *Wyeth v. Levine*, 555 U.S. 555, 571-73 (2009)). But consistent with Plaintiffs' state-law failure-to-warn claims, federal law *required* Defendants to not sell the contaminated valsartan because "[o]nce a drug – whether generic or brand-name – is approved, the manufacturer is prohibited from making major changes to the qualitative or quantitative formulation of the drug product." *Bartlett*, 570 U.S. at 477.[6] Accordingly, when the contamination was disclosed, the result was a recall. *See, e.g.*, *Lefaivre v. KV Pharm Co.*, 636 F.3d 935, 944 (8th Cir. 2011) (finding no preemption where the defendant "manufactured 'adulterated' medication in violation of cGMP requirements," and "issued a recall for all stocks of the medication sold to retailers"); *see also In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig.*, 960 F.3d 1210, 1240 (10th Cir. 2020) (concluding that the defendant "failed to satisfy its burden of establishing that

---

[6] The facts here are completely different from *Bartlett*, where the drug at issue was the approved generic equivalent of the brand drug.

9

impossibility pre-emption applies to plaintiffs' claim," where the defendant had previously manufactured the drug as plaintiffs alleged was required).[7]

Because ZHP could have complied with its state law obligations while also complying with its federal obligations, impossibility preemption does not apply.

## CONCLUSION

For the foregoing reasons, preemption is not a legitimate basis for dismissal of the failure to warn claim.

Dated: September 17, 2025

                        Respectfully Submitted,

                        /s/ *Adam Slater*
                        Adam Slater
                        MAZIE, SLATER, KATZ & FREEMAN, LLC
                        103 Eisenhower Pkwy, 2nd Flr.
                        Roseland, NJ 07068
                        Phone: (973) 228-9898
                        aslater@mazieslater.com

---

[7] Defendants easily could have manufactured the approved, uncontaminated valsartan without the need for further FDA approval—as they did at the outset when they copied the "TIN" manufacturing process used by the brand manufacturer Novartis, which caused no NDMA to form, or by quenching the sodium azide with sodium nitrite NOT in the presence of the drug substance, so that it could not have been contaminated by the NDMA. This would have rendered the labeling and other statements accurate, with no need to provide any information about NDMA to anybody—since there would have been no NDMA.

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, I electronically filed this brief and my supporting certification with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

        **MAZIE SLATER KATZ & FREEMAN, LLC**
        Attorneys for Plaintiff

        By:   /s/ Adam M. Slater

Dated: September 17, 2025