# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | MDL No. 2875 |
|---|---|
| | HON. RENÉE M. BUMB<br>CIVIL NO. 19-2875 (RMB) |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF PROPOSED AUROBINDO IRBESARTAN ECONOMIC LOSS CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, AND TO DIRECT CLASS NOTICE

---

# **Table of Contents**

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND ...............................................................3

   A.   Overview of Plaintiffs' Counsel's Investigation ...............................3

   B.   History of the Litigation ..................................................................5

   C.   The Parties' Settlement Negotiations ...............................................6

   D.   Settlement Class...............................................................................7

   E.   Relief Benefiting the Class in the Proposed Settlement....................9

   F.   Attorneys' Fees, Expenses, and Service Awards ...........................11

   G.   Notice to Settlement Class Members ..............................................12

      1.   To Attorneys General ...............................................................12

      2.   To Settlement Class Members ...................................................12

   H.   Release of Liability........................................................................14

III.  ARGUMENT .....................................................................................15

   A.   The Settlement Should Be Preliminarily Approved.......................17

   B.   The *Girsh* Factors Support Preliminary Approval. ......................18

   C.   Certification of the Proposed Settlement Class Is Appropriate.....................22

      1.   Numerosity Under Rule 23(a)(1) ..............................................23

      2.   Commonality Under Rule 23(a)(2) ...........................................23

      3.   Typicality Under Rule 23(a)(3)................................................25

      4.   Adequacy of Representation Under Rule 23(a)(4) ....................25

      5.   The Requirements of Rule 23(b)(3) Are Met.............................27

   D.   The Court Should Approve the Notice Plan....................................28

   E.   A Final Approval Hearing Should be Scheduled. ..........................30

IV.   CONCLUSION...................................................................................30

i

# Table of Authorities

**Cases**

*Amchem Prods. v. Windsor*,
  512 U.S. 591 (1997) ..................................................................22, 27

*Augustin v. Jablonsky*,
  461 F.3d 219 (2d Cir. 2006) .........................................................28

*Baby Neal v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................25

*City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*,
  867 F.3d 434 (3d Cir. 2017) .........................................................13

*Ehrheart v. Verizon Wireless*,
  609 F.2d 590 (3d Cir. 2010) .........................................................16

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .........................................................19

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 F. App'x 94 (3d Cir. 2013) .....................................................25

*Grimes v. Vitalink Commc'ns Corp.*,
  17 F.3d 1553 (3d Cir. 1994) .........................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................22

*Henderson v. Volvo Cars of N. Amer., LLC*,
  2013 WL 1192479 ..........................................................27, 28, 29, 30

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019) .......................................19

*Hunter v. M-B Cos., Inc.*,
  2020 WL 4059898 (E.D. Pa. July 20, 2020) ......................................16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ....................................29

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ...........................................................22

*In re Ins. Brokerage Antitrust Litig.*,
    297 F.R.D 136 (D.N.J. 2013) ........................................................16, 25

*In re Nat'l Football League Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014) ...............................................................30

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ...................................................15, 16

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...............................................................21

*In re Prudential Ins. Co. Sales Litig.*,
    148 F.3d 283 (3d Cir. 1998)...............................................................24

*In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*,
    2023 WL 1818922 (D.N.J. Feb. 8, 2023) ....................................23, 24, 25, 26, 27

*In re ViroPharma Inc. Sec. Litig.*,
    2016 WL 312108 (E.D. Pa. Jan. 25, 2016) .........................................16

*McCoy v. Health Net, Inc.*,
    569 F. Supp. 2d 448 (D.N.J. 2008) ....................................................28

*Reyes v. Netdeposit, LLC*,
    802 F.3d 359 (3d Cir. 2015) .........................................................23, 24

*Ritti v. U-Haul Int'l., Inc.*,
    2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) .....................................26

*Shapiro v. All. MMA, Inc.*,
    2018 WL 3158812 (D.N.J. June 28, 2018) .........................................18

*Shop-Vac Mktg. & Sales Practices Litig.*,
    2016 WL 3015219 (M.D. Pa. May 26, 2016) .....................................20

*Smith v. Merck & Co. Inc.*,
    2019 WL 3281609 ..............................................................................19

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ...............................................................23

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .....................................................19, 27, 28

*Udeen v. Subaru of Am., Inc.,*
  2019 WL 4894568 (D.N.J. Oct. 4, 2019) ....................................15, 16, 18, 19, 22

*Zimmerman v. Zwicker & Assocs., P.C.,*
  2011 WL 65912 (D.N.J. Jan. 10, 2011) ...........................................................18

**Statutes, Rules, and Other Authorities**

28 U.S.C. § 1715 .........................................................................................12

Fed. R. Civ. P. 23 ...............................................................................*passim*

Federal Judicial Center, *Manual for Complex Litig*ation,
  Fourth § 30.44 (2004) ............................................................................30

Federal Judicial Center, *Manual for Complex Litigation*,
  Fourth § 30.212 (2004) ..........................................................................29

I.      **INTRODUCTION**

Plaintiffs Jacqueline Harris ("Consumer Plaintiff") and Third-Party Payor MSP Recovery Claims, Series LLC ("MSP") ("TPP Plaintiff") (collectively, "Plaintiffs" or "Representative Plaintiffs"), individually and as representatives of the Aurobindo Economic Loss Settlement Class as defined below (all together referenced as the "Settlement Class Members" or the "Aurobindo Irbesartan Economic Loss Settlement Class Members"), filed suit against, among others, Defendants Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc., and Aurolife Pharma LLC (collectively, "Aurobindo" and also defined herein to include their predecessors, successors, subsidiaries, and affiliates and each of their past, present, and future direct or indirect parent companies, subsidiaries, divisions and affiliates, joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers) seeking the recovery of economic loss damages arising from the purchase of finished dose irbesartan manufactured using Aurobindo irbesartan contaminated with the impurity N-nitrosodiethylamine ("NDEA") a probable human carcinogen ("Aurobindo Irbesartan") (the "Irbesartan Action").[1]   Twenty-two batches of this drug substance were recalled in October of

---

[1] As indicated herein, this settlement pertains to Aurobindo's contaminated irbesartan containing drugs ("ICDs").  Aurobindo continues to litigate its liability as to its recalled valsartan containing drugs ("VCDs").

2018.  Collectively, Plaintiffs and the Aurobindo Defendants shall be referred to as the "Parties." Aurobindo denies Plaintiffs' allegations and all alleged wrongdoing.

Plaintiffs have reached a settlement with Aurobindo that provides monetary relief to the Aurobindo Irbesartan Economic Loss Settlement Class without the delay, uncertainty, and risks associated with continued litigation, trial and the appellate process. With the assistance of the Hon. Joel Schneider, U.S.M.J. (ret.), via mediation, the parties negotiated at arms'-length and executed a Settlement Agreement[2] ("Settlement") that provides the Settlement Class Members with monetary reimbursements for amounts paid for Aurobindo Irbesartan. Because the Settlement provides substantial benefits to the Settlement Class Members, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement, conditionally certify the Settlement class and direct class notice be given under Fed. R. Civ. P. 23(e). The Parties also request a preliminary approval hearing be set at the Court's earliest convenience.

Granting this motion will allow the Parties to proceed with the Notice Plan provided for in the Settlement and proceed to a fairness hearing and, if appropriate,

---

[2] Unless stated otherwise herein, capitalized terms shall have the meaning as ascribed to them by the Settlement Agreement attached as Exhibit 1 to the Joint Declaration ("Joint Decl.") in Support of Preliminary Approval (Exhibit A).

2

final approval and settlement administration. For all the reasons set forth below, the

Parties' Settlement should be preliminarily approved.

## II.    FACTUAL BACKGROUND

### A. Overview of Plaintiffs' Counsel's Investigation

Class Counsel and Plaintiffs' MDL leadership Counsel (together, "Plaintiffs'

Counsel") conducted an extensive investigation into the core issues, including, but

not limited to, the contamination of finished dose irbesartan manufactured using

Aurobindo Irbesartan API containing nitrosamine impurities, including NDEA; the

relevant regulatory documents and filings, including the applicable Drug Master

File(s) and Abbreviated New Drug Application Files; communications with the FDA

regarding details of the United States market recall of Aurobindo Irbesartan; the

manufacturing process; the applicable standards, including, for example, FDA and

ICH guidance; as well as the controlling regulations; the application of current good

manufacturing practices ("cGMP") in the manufacture of Aurobindo Irbesartan; the

scientific knowledge and literature; and the health and safety risks posed by the

NDEA impurities.

The investigation and litigation included, but was not limited to, the

production, review, and analysis of core discovery and confirmatory discovery

documents produced by the Aurobindo Defendants relating to Aurobindo Irbesartan

(among millions of pages of other documents produced by other MDL defendants,

including, but not limited to, regulatory filings and communications, technical documents, scientific literature and analyses, internal corporate documents, communications with customers, production and distribution databases, root cause analyses, and sales data). Relatedly, the Aurobindo Irbesartan case cannot be viewed in isolation. It followed on the heels of fully completed fact discovery as to Aurobindo's contaminated VCDs which shed significant light on all of Aurobindo's manufacturing practices and the extent of the contamination of its sartan products as a result. (*See* Joint Decl., at ¶ 4.)

Plaintiffs' Counsel's work in the MDL likewise included: identifying potential other defendants; researching causes of action and other legal issues; opposing motions to dismiss; consulting with and retaining numerous experts of varying specialties; conducting expert discovery, Daubert briefing, and related expert discovery; and numerous conferences and arguments overseen by the Court. (*See* Joint Decl., at ¶ 5.)

The Representative Plaintiffs are an individual consumer and a third-party payor who paid monetary amounts for the purchase of Aurobindo Irbesartan made with the IC Route of Synthesis ("IC ROS Irbesartan"). Plaintiffs contend that they suffered economic loss when they purchased or reimbursed for purchases of IC ROS Irbesartan contaminated with NDEA and sought economic damages for consumers and TPPs, including, but not limited to, the amounts paid for Aurobindo Irbesartan.

4

(*See generally* First Amended Consolidated Irbesartan Class Action Complaint, Dkt. No. 752).

Plaintiffs asserted claims for breaches of express and implied warranties, fraud, negligent misrepresentation, violations of various state consumer protection laws, unjust enrichment, negligence, and negligence *per se*. (*Id.*).

### B. History of the Litigation

The litigation against Aurobindo commenced on or about November 7, 2018 with the filing of the first class action complaint seeking, in part, economic loss damages from Aurobindo attributable to its manufacturing, sale, and distribution of VCDs. This and other cases, including TPP cases, were coordinated in an MDL and then transferred and assigned by the JPML to the Hon. Robert Kugler, U.S.D.J., of the United States District Court for the District of New Jersey. Subsequent to the coordination, additional economic loss actions were filed seeking economic loss damages from Aurobindo, among others, specific to its manufacturing, sale, and distribution of ICDs which were subject to a twenty-two batch recall in October of 2018. The Irbesartan cases were later transferred to MDL No. 2875 by the JPML finding the "actions involve common questions of fact" with the VCD actions "arising from the allegation that the same or substantially similar manufacturing processes are used in the production of valsartan, losartan and irbesartan and result

in the formation of nitrosamine impurities in the same manner". JPML Transfer Order, 12/18/19.

Master First Amended Complaints related to Irbesartan and Losartan were filed on December 18, 2020 (Dkt. Nos. 752 and 751 respectively).  The Court later entered a discovery schedule requiring Defendants to respond to discovery by July 10, 2023.  The production of core discovery followed.

As indicated, the courts and the parties have agreed that the Irbesartan and Losartan cases are substantially similar to the Valsartan cases, therefore the history of the Valsartan litigation, which ultimately triggered this settlement, is pertinent here. The Aurobindo Defendants joined their co-Defendants in the filing of an extensive motion to dismiss all claims including the claims for economic loss damages from the Aurobindo Defendants attributable to their manufacture of VCDs. Plaintiffs prepared extensive responsive briefing and largely prevailed in opposing the motion to dismiss. (*See* Dkt. Nos. 675, 728, 775, 818, 838, 1019).

The Irbesartan and Losartan cases proceeded with discovery consistent with agreements and orders governing the Valsartan litigation, and Plaintiffs conducted an extensive investigation and discovery with regard to the Irbesartan and Losartan claims.

**C. The Parties' Settlement Negotiations**

Plaintiffs' Counsel engaged in lengthy, arm's - length negotiations with the Aurobindo Defendants to arrive at this Settlement. The negotiations occurred during a mediation process presided over by the Hon. Joel Schneider (retired), until reaching agreement on the material terms on or about November 8, 2023 and then during further negotiation to clarify certain settlement terms, culminating in the signing of a Term Sheet on April 12, 2024. Since then, Plaintiffs' Counsel and the Aurobindo Defendants' Counsel have worked to finalize the Settlement Agreement and have worked to prepare this Motion for Preliminary Approval and accompanying documents. Plaintiffs' Counsel attest that these negotiations were difficult at times, and the Parties left no stone unturned in evaluating and working to agree on all of the material terms. (*See* Joint Decl., at ¶ 8.) Plaintiffs' Counsel and TPP Class Counsel attest and affirm that this settlement is fair, adequate, and reasonable, and should be given both preliminary and final approval. (Id., at ¶ 9.)

**D.  Settlement Class**

The Aurobindo Irbesartan Economic Loss Settlement Class is defined as follows:

> All individuals and third-party payors ("TPPs") in the United States and its territories and possessions who, from January 1, 2016 to the present, paid any amount of money for retail purchases of irbesartan finished drug formulations manufactured using Aurobindo irbesartan API that was manufactured using Aurobindo's IC Route of Synthesis ("IC ROS Irbesartan").

7

(the "Aurobindo Irbesartan Economic Loss Settlement Class" or "Settlement Class")

The Aurobindo Irbesartan Economic Loss Settlement Class will encompass all claims for economic loss advanced or that could have been advanced by the Representative Plaintiffs, on behalf of the class members, related to the sale of IC ROS Irbesartan. The Aurobindo Irbesartan Economic Loss Settlement Class does not encompass any claims for medical monitoring or personal injury related to the purchase or use of IC ROS Irbesartan.

Persons excluded from the Class are:

(a) Any judge or magistrate presiding over this action, and the members of their families;
(b) the Aurobindo Defendants and affiliated entities and their officers and directors;
(c) the Aurobindo Defendants' counsel of record, assigns, and successors;
(d) All federal and State governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans;
(e) Pharmacy Benefit Managers ("PBMs");
(f) Plaintiffs' counsel of record, assigns, and successors;  and,
(g) All persons or entities who properly execute and file a timely request for exclusion from any Court-approved class.

The Aurobindo Defendants agree to the Court entering an order preliminarily certifying the Settlement Class, appointing Representative Plaintiffs as representatives of the Settlement Class, and appointing Class Counsel to serve as counsel for the Settlement Class.

The Parties propose that Eisner Amper Gulf Coast, LLC ("EAG") be appointed as the Settlement Administrator and Qualified Settlement Fund ("QSF") Administrator, and Western Alliance Bank to be used to maintain the QSF, subject to the Court's approval of class notice, and settlement administration.

The Aurobindo Defendants agree that Representative Plaintiffs and Class Counsel are adequate representatives of the Settlement Class.

### E. Relief Benefiting the Class in the Proposed Settlement

In consideration of the full and complete Release of all Released Claims against the Aurobindo Defendants, and the dismissal of the Action with prejudice, the Aurobindo Defendants agree to provide the following consideration to the Settlement Class: $2,000,000, which number was established based on a review and evaluation of the total quantity and price paid for the pills as tracked by IQVIA in the context of the overall liability and other issues in the litigation.

The net Aurobindo Economic Loss Class Settlement fund ("the Fund"), after deduction of the proposed attorneys' fees, litigation expense, class notice and administration expenses, and service awards, shall be administered and allocated between the consumers and Third-Party Payors in a method as follows:

- For Consumers: Consumer members of the Settlement Class shall submit claim forms documenting their purchases of IC ROS Irbesartan. The Claims Administrator will review the claim forms and any supporting

9

documentation with particular attention to claims bearing indicia of fraud or mistake. Each class member will receive payment from the funds based on number of pills purchased in increments of 30 pills as documented in claim forms and supporting documents submitted. Where a class member purchased in other than 30-pill increments, e.g. for 90-pill increments, the quantity will be converted into equivalent 30-pill increments for purpose of calculation of payments. Due to the availability of punitive damages, trebling, and/or statutory penalties, except as described below, consumer recoveries will be enhanced by a multiplier up to an agreed upon cap on recovery. By way of example, a multiplier of 1.76 times the average value of a 30-pill increment of $6.12 will be applied up to a cap of $10.71 allowing for a claim of up to 12 months or $128.52 per consumer.  However, a Consumer class member who can sufficiently document through receipts of pharmacy records a claim in excess of the caps above paid in full by that Consumer, may receive a payment in excess of $128.52.  Total payments to Consumers will be capped at 70% of the net Aurobindo Economic Loss Settlement Fund.  If the amount of payments to consumers would exceed this cap, the total consumer award shall be reduced on a pro rata basis based on the days' supply purchased by each consumer so that it will not exceed 70%

10

of the fund. After administration of Consumer recoveries, any unclaimed funds will revert to Third-Party Payors.

- For Third-Party Payors: Third-Pary Payor members (including assignees of TPPs) of the Settlement Class shall submit claim forms documenting their (or their assignors') payments for IC ROS Irbesartan. After a determination of the total fund to be allocated to Third-Party Payors, (including any credits from the consumer allocation as set forth above) each Third-Party Payor class member will receive their pro-rata share of the funds based on dollars paid as documented in claim forms and supporting documents submitted.

Class members are limited to one claim per Class Member. Related companies such as corporate subsidiaries or affiliates may file claims either separately or combined. In no event shall more than one Class Member assert a claim for the same payments.

### F. Attorneys' Fees, Expenses, and Service Awards

Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the fund before deducting costs and expenses, plus reasonable costs and expenses attributable to the Aurobindo Irbesartan economic loss litigation and Settlement. Plaintiffs will also seek approval of a service award of $1000 for the consumer class representative and $3000 for the TPP class representative for their respective participation in the litigation, including without limitation, information gathering, and preparation of pleadings on behalf of

the Class. Any payment of attorneys' fees, litigation expenses, class notice and administrative expenses, and class representative service awards, if approved, will be paid from the Settlement Fund.

## G. Notice to Settlement Class Members

### 1. To Attorneys General

In compliance with the Attorney General notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants, themselves or through EAG, shall provide notice of this proposed Settlement to the Attorney General of the United States and to the Attorneys General of each state in which a Settlement Class Member resides. Defendants or EAG shall also provide contemporaneous notice to Class Counsel that notice to the Attorneys General was completed along with a copy of the notice provided.

### 2. To Settlement Class Members

The Settlement Agreement contemplates a comprehensive notice plan, to be overseen by the experienced Settlement Administrator, EAG who administered the previous class notice given when the Valsartan litigation classes were certified.[3] Class Counsel has the right to monitor and participate in the Notice and

---

[3] The Court has previously named EAG as the Settlement Administrator and the Fund Administrator and has appointed Western Alliance Bank as the Custodian of the Fund. (Dkt. No. 2978).

Administration process to ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement. (*See* Joint Decl. at ¶15).

Settlement Class Members will be notified of the Settlement by email to reasonably identifiable Settlement Class Members with valid email addresses, by text to the current or last known cellular phone numbers of all reasonably identifiable Settlement Class Members with a valid mobile number, and by first class mail to reasonably identifiable Class Members without a valid email address or mobile number, but with a valid mailing address. This will provide direct notice through various methods, which "allows for notice directly to potential class members and limits the universe of potential claimants." *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Due to the unavailability of records for certain class members, individual notice will be supplemented by publication notice, banner advertisements, and the posting of the long form notice and other relevant information on a website dedicated to this settlement. Publication notice will include but not be limited to, for example, online advertising using Google Display Network, YouTube, AARP and industry publications.

The Settlement Administrator will maintain a dedicated settlement website that will include the Claim Form, Opt-out Form, Full Notice, the Settlement Agreement, Court Orders regarding this Settlement, and other relevant Court documents, including Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and

13

Service Awards.  Class Notice in the forms submitted to the Court in connection with D.E. 3104-4 modified as necessary for a joint class notice is proposed to notify the Class of this settlement and other pending settlements. (*See* Joint Decl. at ¶15).

Finally, the Settlement Agreement accounts for any Settlement Class Members who wish to object or to exclude themselves from the Settlement. Consistent with Rule 23(e)(5)(A), the Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Settlement Class Member or to certify, under penalty of perjury that they have made a specific qualifying purchase or have made a good faith effort to obtain that information and in good faith believes that they are a part of the Settlement Class.

### H. Release of Liability

In exchange for the foregoing, and subject to approval by this Court, Settlement Class Members who do not timely exclude themselves will be bound by a release of all claims for economic loss of the certified consumer and third-party payor settlement class related to Aurobindo irbesartan bought by Plaintiffs and the Class. ("the Released Claims").  *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994).  No other claims and no other Defendants other than

those listed specifically in the Settlement Agreement[4], are released by the Settlement Agreement.   All claims for economic loss, medical monitoring or personal injury related to Aurobindo valsartan are explicitly excluded from the Settlement Agreement and are not impacted or affected by this Settlement in any way. (*See* Joint Decl. at ¶ 10); Settlement Agreement Sec. V.

## III.    <u>ARGUMENT</u>

The Court's review of a class action settlement is a two-step process consisting of preliminary approval and final approval determinations. *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019). At this preliminary approval stage, the Court is required to determine only "whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval.'" *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa.

---

[4] Albertsons Companies, LLC; Amerisource Bergen Corporation; Cardinal Health, Inc.; CVS Health Corporation; Cigna Corporation; Express Scripts Holding Company; Express Scripts, Inc.; Golden State Medical Supply Inc.; Humana, Inc.; Humana Pharmacy, Inc.; The Kroger Co.; McKesson Corporation; Optum, Inc.; Optum Rx; Red Oak Sourcing, LLC; Rite Aid Corporation; ScieGen Pharmaceuticals, Inc.; UnitedHealth Group; Walgreen Boots Alliance, Inc.; Walgreen Co.; Wal-Mart, Inc.; Westminster Pharmaceuticals, LLC; and any Doe Defendants.

2014) (quoting *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citations omitted)). Under Rule 23, a settlement falls within the "'range of possible approval,' if there is a *conceivable basis* for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *In re NFL*, 301 F.R.D. at 1698 (emphasis added) (citations omitted).

In addition, "a settlement negotiation is entitled to a presumption of fairness when it resulted from arm's length negotiations between experienced counsel." *Hunter v. M-B Cos., Inc.*, 2020 WL 4059898, at *3 (E.D. Pa. July 20, 2020); *see also Udeen*, 2019 WL 4894568, at *2 ("A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Rudel Corp. v. Heartland Payment Sys., Inc.*, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017)). This presumption applies in furtherance of the public policy favoring settlement, *see Ehrheart v. Verizon Wireless*, 609 F.2d 590, 594-95 (3d Cir. 2010), and "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D 136, 144 (D.N.J. 2013). Moreover, "the participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (quoting *Hall v. AT&T Mobility LLC*, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)).

Not only are there no "obvious deficiencies" in the parties' Settlement Agreement in this case, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are easily satisfied here. Class Counsel firmly believe this Settlement is fair, adequate, and reasonable as each certify in the Joint Declaration. As discussed below, the Settlement provides a gross recovery of over 70% of what Plaintiffs estimate to be the total available compensatory damages for the conduct covered by the Class, which is an outstanding result when accounting for litigation risk and challenges and the substantial complexity, cost, and delay of ongoing litigation. The requirements for final approval should be satisfied, and Class Members will be provided with notice in a manner that satisfies the requirements of due process and Federal Rule of Civil Procedure 23(e). Therefore, Plaintiffs respectfully ask the Court to set a date for a hearing on preliminary approval and enter the proposed order, which will: (i) grant preliminary approval of the proposed settlement; (ii) find that the Aurobindo Irbesartan Economic Loss Settlement Class is likely to be certified pursuant to Federal Rule of Civil Procedure 23(b)(3) and conditionally certify the class; (iii) direct that adequate notice be given to the Settlement Class of the Settlement and their rights pursuant to the Notice Plan as set forth in the Agreement; and, (iv) schedule a hearing to consider the fairness and final approval of the Settlement.

**A. The Settlement Should Be Preliminarily Approved**.

17

At the preliminary approval stage, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Shapiro v. All. MMA, Inc.*, 2018 WL 3158812, at *3 (D.N.J. June 28, 2018). Unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Zimmerman v. Zwicker & Assocs., P.C.*, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011).

The settlement here is the result of extensive, arm's length negotiations between experienced counsel, who believe the settlement is in the best interests of their respective clients. (See Joint Decl., ¶ 8). The settlement is well supported and will eliminate the uncertainties and risks to the Parties from proceeding further in the litigation.  Indeed, the class recovery represents a recoupment of approximately 70% of the potential compensatory damages, which is an outstanding result when accounting for litigation risk, and the substantial complexities of continued litigation.

## B. The *Girsh* Factors Support Preliminary Approval.

Although the foregoing analysis is sufficient for the Court to grant preliminary approval, a factor-by-factor analysis confirms this conclusion. *Udeen*, 2019 WL

4894568, at *3.[5] The following nine factors inform the analysis at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

The court evaluates a class settlement "against the realistic, rather than theoretical potential recovery after trial." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) (en banc). In conducting the analysis, the court also "guard[s] against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in

---

[5] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this district have continued to apply the same legal standards to preliminary approval after the 2018 amendments. *See, e.g., Udeen*, 2019 WL 4984568; *Smith v. Merck & Co. Inc.*, 2019 WL 3281609. Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors continue to apply.

exchange for certainty and resolution." *In re GMC Truck Fuel Tank Prods. Litig.*, 55F.3d 768, 806 (3d Cir. 1995); *see also In re: Shop-Vac Mktg. & Sales Practices Litig.*, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (noting that "a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). All of the *Girsh* factors that the Court can analyze now support preliminary approval.[6]

This Settlement affords significant relief to the Class. The economic loss relief provided in the settlement is intended to include reimbursement to the Class Members of amounts paid for the Aurobindo Irbesartan, based in part on a count of the number of contaminated pills sold with Aurobindo API manufactured using the IC ROS process, and an evaluation of the overall factors applicable to the Aurobindo Irbesartan litigation.

The complexity, expense, and likely duration of ongoing litigation also support preliminary approval because, without the Settlement, the parties would be engaged in continued contested motion practice, trial, and an inevitable appeal lasting years. The claims advanced on behalf of the Class involve numerous complex legal and technical issues. Continued litigation would be time consuming and expensive, with no certainty of a favorable outcome at trial. The Settlement

---

[6] The reaction of the class cannot be evaluated until after notice is issued to the Class.

Agreement secures substantial benefits for the Class with none of the delay, risk, and uncertainty of continued litigation.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. As noted above, the Parties have conducted core and confirmatory discovery in the Irbesartan cases, as well as extensive discovery in the substantially similar Valsartan cases, including production and review of over a million pages of documents, and depositions of numerous current and former employees of Aurobindo and other defendants, exchanged numerous expert reports, deposed numerous expert witnesses, prepared *Daubert* briefing and arguments, as well conducted confirmatory discovery specifically as to Aurobindo Irbesartan. The fourth, fifth, and sixth factors consider the risk of continued litigation.[7] If the Parties had been unable to resolve this case through the Settlement, the litigation would have been even more protracted and costly. The trial and post-trial activity would last several more years.

As mentioned above, the eighth and ninth *Girsh* factors weigh strongly in favor of preliminary, and ultimately final, approval of this class settlement. The settlement amounts to a recoupment of over 70% of what Plaintiffs estimate to have

---

[7] Courts routinely find the seventh factor – the defendant's ability to withstand greater judgment – to be neutral, as here. That factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016).

been the total compensatory damages available, which is an outstanding result given the inherent uncertainties of litigation and the substantial complexities and potential delay in continued litigation.

The *Girsh* factors, therefore, support granting preliminary approval of the Settlement.

### C. Certification of the Proposed Settlement Class Is Appropriate.

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 512 U.S. 591, 620 (1997); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Udeen*, 2019 WL 4894568, at *4. For the Court to certify a class for settlement, the "[s]ettlement [c]lass[] must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995). Plaintiffs seek certification under Rule 23(b)(3), which provides for certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are met and should be found to be met for purposes of settlement in this case.

22

### 1. Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (citation omitted). Numerosity is readily met here, as there are likely thousands of Settlement Class Members. *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, No. 19-2875 (RBK/SAK), 2023 WL 1818922, at *8, *21 (D.N.J. Feb. 8, 2023).

### 2. Commonality Under Rule 23(a)(2)

The second prong of Rule 23(a) – commonality – requires "consideration of whether there are 'questions of law or fact common to the class[.]" *Reyes v. Netdeposit, LLC*, 802 F.3d 359, 482 (3d Cir. 2015) (citing Fed. R. Civ. P. 23(a)(2)). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). This "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez*, 726 F.3d at 382). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and, most dramatically, when plaintiffs' claims may not have been

23

legally viable[.]" *Id.*; *see also In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) ("A finding of commonality does not require that all class members share identical claims, and factual differences among the claims … do not defeat certification.").

In the Valsartan cases, it was previously determined that common questions of law and fact exist to satisfy the commonality requirement of Rule 23(a)(2), including "that defendants' tortious conduct caused the contamination of the ingested VCDs;" whether class members "paid in whole or in part for their insureds' VCD prescriptions, regardless of the variability in the prescription specifics;" "whether paid-for / reimbursed VCD prescriptions were contaminated according to FDA recalls;" and "whether, and to what extent, the VCDs, because of their contamination, were worth less than the price paid for / reimbursed…class members." *In re Valsartan*, 2023 WL 1818922, at *8, *21.

As the claims and facts underlying the Irbesartan case are similar to those in the Valsartan case, the aforementioned questions of law and fact also apply to irbesartan-containing drugs. Common questions as to all Aurobindo Irbesartan Economic Loss Settlement Class Members abound and include whether the Aurobindo Defendants manufactured ICDs contaminated with nitrosamines including NDEA; whether the Aurobindo Defendants committed material CGMP violations at their manufacturing site(s); what was the root cause of the

24

contamination for the Aurobindo Defendants' ICDs; and whether the actions of Aurobindo met the elements of the claims for express warranty, common law fraud, negligence, unjust enrichment, or amount to violations of various state consumer protection statutes.

These common questions (among others) will lead to answers common to the class. Since Plaintiffs' and the class claims all arise out of a common wrong (i.e., Aurobindo's manufacture of economically devalued ICDs), which injured each of them in the same way, Rule 23(a)(2)'s commonality requirement is satisfied.

### 3. Typicality Under Rule 23(a)(3)

Rule 23(a)(3)'s typicality requirement is also met because the claims of all Settlement Class Members, including the Class Representatives, arise out of the same alleged conduct involving Aurobindo's sale of irbesartan, a generic hypertensive medicine contaminated with probable human carcinogens. *In re Valsartan*, 2023 WL 1818922, at *10, *22; *see also Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 149 (stating "low threshold" – "if the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established.") (citation omitted).

### 4. Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see*

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 100-01 (3d Cir. 2013). In assessing the adequacy of a proposed class representative, courts consider whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 WL 1117878, at *5 (E.D. Pa. Apr. 26, 2006) (quoting *Hassine v. Jeffres*, 846 F.2d 169, 179 (3d Cir. 1988)).

Here, the Class Representatives will fairly and adequately protect the interests of the class because "their legal interests are aligned with those of the unnamed class members." *In re Valsartan*, 2023 WL 1818922, at *11, *22. Each Class Representative recognizes and accepts their responsibilities as a class representative and has actively participated in the litigation of this case and communicated regularly with their attorneys and Plaintiffs' Counsel about the proceedings. Moreover, Plaintiffs' Counsel drew upon their extensive experience with similar class action and complex lawsuits to negotiate an excellent resolution for the Settlement Class. The Court has already found Class Counsel to be highly qualified and other MDL leadership counsel who were involved in this settlement likewise possess similar credentials having been appointed to co-lead, PEC, or PSC leadership positions by the Court (Dkt. Nos. 2261, 96 (CMO 6 appointing MDL leadership)). Based upon the substantial benefit offered through the settlement

26

achieved by Class Counsel and MDL leadership counsel alongside the Class Representatives, Plaintiffs respectfully submit the adequacy requirement is satisfied.

### 5.  The Requirements of Rule 23(b)(3) Are Met.

Plaintiffs seek to certify this Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. In making these assessments, the court may consider that there is no further consideration of manageability for trial. *See Amchem*, 521 U.S. at 618 (citing Fed. R. Civ. P. 23(b)(3)(D)).

The focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of fact and law that predominate over any questions that may affect individual Class Members. If the case were to proceed, the ultimate issue would center on Aurobindo's common course of conduct – namely, whether they are liable for the manufacture and sale of contaminated irbesartan pills. These questions are shared among all Settlement Class Members and are subject to "generalized proof." *Henderson v. Volvo Cars of N. Amer., LLC,* No. 09-cv-4146, 2013 WL 1192479, at *4. Accordingly, predominance is satisfied. *In re Valsartan*, 2023 WL 1818922, at *12-15, *23.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also

readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). Superiority requires the Court to consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted); *see McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 457 (D.N.J. 2008). Because litigating the numerous relatively small claims on an individual basis against the Aurobindo Defendants would not be economically feasible, "class status here is not only the superior means, but probably the only feasible [way] … to establish liability and perhaps damages." *Augustin v. Jablonsky*, 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)). Moreover, the Parties' Settlement will relieve the "needless duplication of effort," burdens, and other inefficiencies that would result from repeated adjudication of the same issues. *Henderson*, 2013 WL 1192479, at *6 (citing *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252-53 (S.D. Tex. 1978)). The Settlement Agreement provides Settlement Class Members with prompt, certain, and adequate relief, and establishes clearly defined administrative procedures to ensure due process and preservation of rights. Thus, a class action for settlement purposes, which requires even less scrutiny, is a superior means of resolving this controversy.

Accordingly, Plaintiffs request that the Court certify the Aurobindo Irbesartan Economic Loss Settlement Class. *See* Fed. R. Civ. P. 23(e)(1)(B).

### D. The Court Should Approve the Notice Plan.

28

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the Settlement is approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004). Under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (citing Fed. R. Civ. P. 23(c)(2)(B)). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Id.* (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The proposed forms of Notice, each attached to the Renewed Declaration of Brandon Schwartz, (Exhibit B), include all legal requirements and explain the settlement concisely using clear, simple terms. *See* Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan flows from and draws upon the Notice Plan previously approved by the Court for notice of the litigation class certification ruling in the Valsartan case. The Notice Plan described above provides the best notice practicable under the circumstances. *See Henderson*, 2013 WL 1192479, at *12-13. An experienced vendor will oversee the process of compiling the contact information for Class Members and will then use this information to implement the Notice that will be sent

via email, text, and/or first-class mail to all Class Members. In addition, individual notice will be supplemented by publication notice, as described *supra*. Notice of the Settlement will also be available on a dedicated website created and maintained by the Settlement Administrator. Therefore, the Notice and Notice Plan should be approved.[8]

### E. A Final Approval Hearing Should be Scheduled.

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval of the Settlement, consider Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives, consider any objections made and exclusions requested, and determine whether to dismiss the settled portion of this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth § 30.44 (2004); *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581-83 (3d Cir. 2014). Plaintiffs respectfully request that the final approval hearing be scheduled at least 160 days from the date an order of preliminary approval is entered.

## IV.    <u>CONCLUSION</u>

Plaintiffs respectfully request that this Court enter an Order: (1) preliminarily approving the Settlement; (2) finding that the Settlement Class is likely to be

---

[8] Class Counsel and EAG recommend that notice of the three pending settlements be given together which will reduce the notice costs for each class. (See Joint Decl., ¶ 12, footnote 1).

certified and conditionally certify the class, (3) directing notice to Class Members consistent with the Notice Plan; and (4) scheduling a final approval hearing. A proposed order granting this relief is submitted with this memorandum.

Dated: October 17, 2025

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*/s/ Adam Slater*
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

**MDL Plaintiffs' Co-Lead Counsel**

*/s/ Daniel Nigh*
Daniel Nigh
**NIGH GOLDENBREG RASO & VAUGHN, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

*/s/ Conlee S. Whiteley*
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
c.whiteley@kanner-law.com

*/s/ Ruben Honik*
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

*/s/ John R. Davis*
John R. Davis
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Phone: (512) 795-8686
jdavis@slackdavis.com

*/s/ Conlee S. Whiteley*
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
c.whiteley@kanner-law.com

***Consumer Economic Loss Co-Lead Class Counsel***

/s/ *Jorge Mestre*
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone: (305) 445-2500
jmestre@riveromestre.com

/s/ *Gregory P. Hansel*
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

***Third-Party Payor Economic Loss Co-Lead Class Counsel***