# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION | HON. RENÉE M. BUMB<br>NO. 19-MD-2875 |
| | |

### JOINT DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED AUROBINDO IRBESARTAN ECONOMIC LOSS CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION AND TO DIRECT CLASS NOTICE

1. This declaration of Class Counsel and Plaintiffs' MDL Leadership Counsel (together, "Plaintiffs' Counsel") is submitted in support of Plaintiffs' Motion for Preliminary Approval of Proposed Aurobindo Economic Loss Class Action Settlement, Conditional Certification, and to Direct Class Notice, based upon the Class Action Settlement Agreement and Release ("Agreement" or "Settlement Agreement") entered into between Plaintiffs MSP Recovery Claims, Series LLC ("MSPRC") ("TPP Plaintiff") and Plaintiff Jacqueline Harris ("Consumer Plaintiff"), (collectively "Plaintiffs" or "Representative Plaintiffs"), individually and as representatives of the Class (as defined in the Settlement Agreement), (all together referenced as the "Settlement Class Members"), and Aurobindo Pharma Ltd., Aurobindo Pharma USA, Inc. and Aurolife Pharma LLC (defined herein to include

their predecessors, successors, subsidiaries and affiliates and each of their past, present and future direct or indirect parent companies, subsidiaries, divisions affiliates and joint ventures, and each of their present and former officers, directors, employees, stockholders, partners, owners, and insurers), (collectively "Aurobindo Defendants"). Collectively, Plaintiffs and the Aurobindo Defendants shall be referred to as the "Parties." The Settlement Agreement is attached hereto as Exhibit 1.

2. The proposed class action settlement is the product of arms-length, lengthy negotiations, against the backdrop of extensive litigation. This declaration provides the background and details relevant to the application.

3. Plaintiffs' Counsel conducted an extensive investigation into the core issues, including but not limited to the contamination of Aurobindo's Irbesartan API and finished dose medication with probable human carcinogen nitrosamine impurities, including N-nitrosodiethylamine ("NDEA"), the scientific literature regarding the genotoxicity and probable human carcinogenicity of NDEA, the relevant regulatory documents and filings including the applicable Drug Master File(s) and Abbreviated New Drug Application Files, communications with the FDA and foreign regulatory agencies, the details of the United States market recall of the at-issue irbesartan, the chemical reactions and mechanisms involved in the manufacturing process at issue, the applicable United States regulatory standards,

including for example FDA and ICH guidance, as well as the controlling regulations, the application of current good manufacturing practices ("cGMP") in the manufacture of the at-issue Aurobindo irbesartan API and finished dose, the scientific knowledge and literature at issue, the health and safety risks posed by the NDEA impurities, the distribution and sale channels of the irbesartan down through the supply chain, databases and spreadsheets quantifying pills sales and the implementation of the recall of the pills, and analysis of pricing data.

4. The investigation and litigation included but was not limited to the production, review, and analysis of extensive documents produced by the Aurobindo Defendants relating to Aurobindo Valsartan (among millions of other pages of documents produced by other MDL defendants, including but not limited to regulatory filings and communications, technical documents, scientific literature and analyses, internal corporate documents including standard operating procedures and testing data, communications with customers, production and distribution databases, root cause analyses, and distribution and sales data) bearing on the nitrosamine contamination issues in this case.

5. Plaintiffs' Counsel's work likewise included: researching causes of action and other legal issues; opposing motions to dismiss; consulting with and retaining numerous experts of varying specialties and conducting full expert discovery; *Daubert* briefing and argument; class certification briefing and related

3

expert discovery; and numerous conferences and arguments overseen by the Court with respect to Aurobindo and other Defendants' valsartan products as relates to the nitrosamine contamination that is the subject of this MDL.

6. After the litigation was consolidated into an MDL, the Aurobindo Defendants joined their co-Defendants in the filing of an extensive motion to dismiss all claims including the claims for economic loss damages attributable to sales of valsartan. Plaintiffs prepared extensive responsive briefing and largely prevailed in opposing the motion to dismiss as to Valsartan. (*See* Dkt. Nos. 675, 728, 775, 818, 838, 1019). Subsequently, remaining defendants have stipulated that the rulings will apply in the Losartan and Irbesartan cases. (*See* Dkt. No. 2803).

7. Previously the Court certified similar litigation class actions against Aurobindo and its co-defendants as to contaminated Valsartan. Plaintiffs briefed an extensive opposition to the Rule 23(f) petition submitted by Defendants, which the Third Circuit ultimately denied by Order dated May 1, 2023. *See Valsartan Losartan and Irbesartan Prods. Liab. Litig.*, No. 23-8005, Dkt. No. 60 (3d Cir. May 1 2023).

8. Plaintiffs' Counsel engaged in lengthy, arm's - length negotiations with Aurobindo to arrive at this settlement. The negotiations occurred primarily in person *via* a mediation process presided over by the Hon. Joel Schneider (retired), until reaching agreement on the material terms in November of 2023, and then during ongoing negotiations to clarify certain settlement terms, culminating in the signing

4

of a Term Sheet on April 12, 2024. Since then, Plaintiffs' Counsel have worked to finalize the Settlement Agreement and to prepare a Motion for Preliminary Approval and accompanying documents. The negotiations with Aurobindo were prolonged and the Parties left no stone unturned in evaluating and working to agree on all of the material terms.

9. Consumer Class Counsel and TPP Class Counsel attest and affirm their strong belief that this settlement is fair, adequate, and reasonable, and should be given both preliminary and final approval.

10. The Aurobindo Irbesartan Economic Loss Settlement Class is defined as follows:

> All individuals and third-party payors ("TPPs") in the United States and its territories and possessions who, from January 1, 2016 to the present, paid any amount of money for retail purchases of irbesartan finished drug formulations manufactured using Aurobindo irbesartan API that was manufactured using Aurobindo's IC Route of Synthesis ("IC ROS Irbesartan").
>
> (the "Aurobindo Irbesartan Economic Loss Class").

Persons excluded from the Class are:

(a) Any judge or magistrate presiding over this action, and members of their families;

(b) The Aurobindo Defendants and affiliated entities and their officers and directors;

(c) The Aurobindo Defendants' counsel of record, assigns and successors;

5

(d) All federal and state governmental entities except for cities, towns, municipalities, or counties with self-funded prescription drug plans;

(e) Pharmacy Benefit Managers ("PBMs");

(f) Plaintiffs' counsel of record, assigns and successors; and,

(g) All persons or entities who properly execute and file a timely request for exclusion from any Court-approved class.

If approved, the Settlement will provide substantial benefits to the proposed Settlement Class. This Class does not encompass any claims for medical monitoring or personal injury related to purchase or use of IC ROS Aurobindo Irbesartan which are being settled separately, and does not affect those claims in any way. It also does not encompass or affect any economic loss, medical monitoring or personal injury claims with regard to Aurobindo Valsartan, which claims are expressly excluded from this Settlement.

11. The Aurobindo Defendants have agreed to pay $2,000,000.00 to the Settlement Class ("Settlement Fund"), which amount was established based on a review and evaluation of the total quantity and price paid for the pills sold at the retail level, and other relevant factors related to the strengths and weaknesses of the claims and defenses. (SA at §IV). The Parties engaged in confirmatory discovery during the negotiations, which was also informed and supported by Plaintiffs' economic loss expert, who consulted with Plaintiffs as to sales data and pricing. The Settlement Fund available for distribution to the Settlement Class after deduction of

6

any attorneys' fees, expenses, and class representative service awards that may be ordered by the Court, shall be allocated as follows (based on a negotiation between counsel for the TPPs and Consumer Representative Plaintiffs and mediation with Judge Schneider):

For Consumers:  Consumer members of the Settlement Class shall submit claim forms documenting their purchases of Aurobindo Irbesartan as provided in the Settlement Agreement and approved by the Court.  The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims.  For each valid claim, a Consumer member of the class shall receive from the Fund a distribution of no more than $10.71 for each 30-day supply purchased and no more than a total of $128.52 per Consumer.  However, a Consumer class member who can sufficiently document through receipts or pharmacy records, a claim in excess of the caps above paid in full by that Consumer, may receive a payment in excess of these caps.  Total payments to Consumers will be capped at 70% of the net Aurobindo Economic Loss Class Settlement fund.  If the amount of payments to consumers would exceed this cap, the total consumer award shall be reduced on a pro rata basis based on the days' supply purchased by each consumer so that the claims distribution will not exceed 70% of the Fund.

<u>For Third Party Payors</u>: Third Party Payor class members (including assignees of TPPs) of the Settlement Class shall submit claim forms documenting their (or their assignors') payments for Aurobindo IC ROS Irbesartan as provided in the Settlement Agreement and approved by the Court. The Claims administrator will review the claim forms and any supporting documentation with particular attention to the possibility of fraudulent or mistaken claims. After payment of the consumer claims as provided above, the remainder of the Fund shall be distributed to each valid TPP class members (including assignees) on a pro rata basis according to the total amount of each TPP's qualifying and documented payments.

Class members are limited to one claim per Class Member.

12.     The current estimated cost of settlement notice and administration to be attributed to the Aurobindo Settlement is estimated to be under $60,000.[1]

13.     Plaintiffs will apply to the Court for an award of reasonable attorneys' fees up to, but not to exceed, one-third of the total amount of the fund before deducting costs and expenses, plus reasonable costs and expenses attributable to the Aurobindo economic loss litigation and settlement class notice. Each party shall have the right of appeal to the extent the award is inconsistent with the Settlement

---

[1] This estimate is based upon Class Counsel and EAG's recommendation that the notice of the three pending settlements be given together. If separate class notice is given, this number will increase.

Agreement. Attorneys' Fees and Expenses shall be in addition to the Representative Plaintiffs' Service Awards.

14. Plaintiffs will seek approval of service awards in the amount of $1000 for the Consumer class representative and $3000 for the TPP class representative, MSP, for its participation in information gathering, discovery and depositions on behalf of the class.

15. The Settlement Agreement includes a comprehensive notice plan, to be overseen by the experienced Settlement Administrator: EAG Gulf Coast, LLC ("EAG"). Class Counsel has the right to monitor and participate in the Notice and Administration process to ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement. The Notice in the forms set forth in the Renewed Declaration of Brandon Schwartz Regarding the Proposed Notice Plan, (attached as Exhibit B to Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Approval of Proposed Aurobindo Irbesartan Economic Loss Class Action Settlement, Conditional Certification and to Direct Class Notice) is proposed for notification to the Class.

16. Settlement Class Members will be notified of the Settlement by email to reasonably identifiable Settlement Class Members with valid email addresses, by text to the current or last known cellular phone numbers of all reasonably identifiable Settlement Class Members with a valid mobile number, and by first class mail to

9

reasonably identifiable Class Members without a valid email address or mobile number, but with a valid mailing address. This will provide direct notice through various methods, which "allows for notice directly to potential class members and limits the universe of potential claimants." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Due to the unavailability of records for certain class members, individual notice will be supplemented by publication notice, including but not limited to, for example, online advertising using Google Display Network, Programmatic platforms, Facebook and Instagram, AARP, and YouTube, search advertising using Google Ads, industry publications such as America's Benefit Specialist, NABIP, etc., and/or PR Newswire.

17. The Settlement Administrator will maintain a dedicated settlement website that will include the Claim Form, Opt-out Form, Full Notice, the Settlement Agreement, Court Orders regarding this Settlement, and other relevant Court documents, including Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, and Service Awards.

18. The Settlement Agreement accounts for any Settlement Class Members who wish to object or exclude themselves from the settlement. Consistent with Rule 23(e)(5)(A), the Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Settlement Class Member, or certification, under

10

penalty of perjury, that they have made a specific qualifying purchase or have made a good faith effort to obtain that information and in good faith believes that they are a part of the Settlement Class.

19. In exchange for the foregoing – and subject to approval by the Court – Plaintiffs and Class Members who do not timely exclude themselves will be bound by a release of all certified consumer and third-party payor class action claims for economic loss related to Aurobindo Irbesartan brought by Plaintiffs ("the Released Claims"). No other claims and no other defendants other than those specifically listed in the Settlement Agreement, are released by the Settlement Agreement.

All claims related to Aurobindo Valsartan, claims for medical monitoring related to Aurobindo Irbesartan (the subject of a separate agreement), and all claims for personal injury related to Aurobindo Irbesartan (the subject of a separate agreement) are explicitly excluded from this Agreement and are not impacted or affected by this Agreement or included in the definition of the Action in any way.

20. As stated above, the settlement here is the result of extensive, arms'-length negotiations that extended over the course of several months between experienced counsel, who believe the settlement is in the best interests of their respective clients.

21. Each class representative recognizes and accepts their responsibilities as a class representative and has actively participated in the litigation of this case and

11

communicated regularly with their attorneys and Class Counsel about the proceedings. Moreover, MDL leadership counsel acting for common benefit, drew upon its extensive experience with similar class action and complex lawsuits to negotiate an excellent resolution for the Settlement Class.

Dated: October 17, 2025

/s/ Ruben Honik
Ruben Honik
**HONIK LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
c.whiteley@kanner-law.com

/s/ John R. Davis
John R. Davis
**SLACK DAVIS SANGER, LLP**
6001 Bold Ruler Way, Suite 100
Austin, TX 78746
Phone: (512) 795-8686
jdavis@slackdavis.com

***Consumer Economic Loss Co-Lead Class Counsel***

/s/ Jorge Mestre
Jorge Mestre
**RIVERO MESTRE LLP**
2525 Ponce de Leon Blvd., Suite 1000
Miami, FL 33134
Phone (305) 445-2500
jmestre@riveromestre.com

/s/ Gregory P. Hansel
Gregory P. Hansel
**PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP**
One City Center
P.O. Box 9546
Portland, ME 04112
Phone: (207) 791-3000
ghansel@preti.com

*Third-Party Payor Economic Loss Co-Lead Class Counsel*

/s/ Ruben Honik
Ruben Honik
**Honik LLC**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (267) 435-1300
ruben@honiklaw.com

/s/ Daniel Nigh
Daniel Nigh
**Nigh Goldenberg Raso & Vaugn, PLLC**
14 Ridge Square NW
Third Floor
Washington, D.C. 20016
Phone: (850) 600-8090
dnigh@nighgoldenberg.com

/s/ Adam Slater
Adam Slater
**MAZIE, SLATER, KATZ & FREEMAN, LLC**
103 Eisenhower Pkwy, 2nd Flr.
Roseland, NJ 07068
Phone: (973) 228-9898
aslater@mazieslater.com

/s/ Conlee S. Whiteley
Conlee S. Whiteley
**KANNER & WHITELEY, LLC**
701 Camp Street
New Orleans, LA 70130
Phone: (504) 524-5777
c.whiteley@kanner-law.com

*MDL Plaintiffs' Co-Lead Counsel*

13