# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION** | MDL No. 2875 |
| | Honorable Renée Marie Bumb District Court Judge |
| **This Document Relates to All Actions** | |

## ZHP DEFENDANTS' REPLY
## IN SUPPORT OF MOTION TO SEAL

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. ii

BACKGROUND ............................................................................................... 3

ARGUMENT ..................................................................................................... 6

I.  THE COURT SHOULD DEFER CONSIDERATION OF THE INSTANT MOTION UNTIL AFTER JUDGE BUMB REVIEWS ZHP'S FINAL REPORT. .................................................................. 6

II.  ZHP HAS SHOWN THE REDACTED PORTIONS OF THE SEPTEMBER 16 LETTER ARE PRIVILEGED. ....................................... 7

III.  MS. KONG'S TESTIMONY DID NOT WAIVE PRIVILEGE OVER THE REDACTED MATERIAL IN THE SEPTEMBER 16 LETTER. ......... 8

IV.  PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE THE CRIME-FRAUD EXCEPTION, AND IN ANY EVENT, IT IS MOOT ......................................................................................... 13

CONCLUSION ................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AstraZeneca LP v. Breath Ltd.*,
  No. 08-1512, 2010 WL 11428457 (D.N.J. Aug. 26, 2010).....................10, 13

*Brigham & Women's Hospital Inc. v. Teva Pharmaceuticals USA, Inc.*,
  707 F. Supp. 2d 463 (D. Del. 2010) ....................................................9, 12, 13

*Jorjani v. New Jersey Institute of Technology*,
  No. 18-11693, 2023 WL 2986694 (D.N.J. Apr. 18, 2023) ...........9, 10, 11, 13

*MiiCs & Partners America Inc. v. Toshiba Corp.*,
  No. 14-803, 2017 WL 11573565 (D. Del. Oct. 12, 2017) ........................6, 15

*Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*,
  32 F.3d 851 (3d Cir. 1994) ................................................................9, 10, 13

*Rudderow v. Boston Scientific Corp.*,
  No. 20-08561, 2022 WL 1500958 (D.N.J. May 11, 2022) ...........................7

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
  No. 19-12107, 2025 WL 2693954 (D.N.J. Sept. 22, 2025) ....................14, 15

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)......................................................................................8

*In re Valeant Pharmaceuticals, Inc.*,
  No. 16-3087, 2021 WL 2163463 (D.N.J. Apr. 26, 2021) ...............................9

*Winston & Strawn LLP v. Janssen Products, L.P.*,
  No. 22-5061, 2022 WL 3588106 (D.N.J. Aug. 22, 2022).............................8

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP"), Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC (collectively, "ZHP") respectfully submit this reply in support of their motion to seal the September 16, 2025 letter from Richard T. Bernardo to Chief Judge Renée Marie Bumb (ECF No. 3176) (the "September 16 Letter") regarding ZHP's investigation of plaintiffs' requests for, and ZHP's production of, certificates of analysis ("COAs") for dimethylformamide.

In its September 16 Letter, ZHP's counsel provided the Court with a preliminary report into its investigation into whether any communications exist that suggest ZHP or its counsel acted in bad faith by not producing the COAs during the general discovery period. Although ZHP believes that the September 16 Letter should be sealed in its entirety for the reasons set forth in its opening brief (ECF No. 3186-1), in an effort to narrow the dispute, ZHP has refiled the September 16 Letter with narrow redactions. (*See* ECF No. 3226.) Accordingly, through its motion to seal, ZHP now seeks only to maintain redactions on very limited portions of the September 16 Letter that describe privileged communications between outside counsel and the company, attorney work product, or that contain outside counsel's mental impressions of the investigation ordered by Judge Bumb.

Through their opposition, Plaintiffs are now attempting to gain access to not just the narrow portions of the September 16 Letter that remain redacted, but also to

1

many years of privileged communications among ZHP, multiple law firms, and ZHP's discovery vendor regarding ZHP's efforts to comply with discovery requests. Plaintiffs' effort goes far beyond Judge Bumb's instruction that ZHP's counsel investigate whether any relevant communications exist that suggest ZHP or its counsel acted in bad faith by not producing the COAs and report back to her. Indeed, Plaintiffs appear to be seeking to review troves of privileged communications *before Judge Bumb receives and considers them.* But Judge Bumb *has already rejected* Plaintiffs' argument that Plaintiffs are entitled to review these communications in advance of her own review. (9/9/25 Tr. 208:8-20 (ECF No. 3172); *see also* 9/26/25 Tr. 7:10-12 (ECF No. 3189) ("[I]t's redacted because it contains privileged information, and I'm not going to allow the plaintiffs to have access to that carte blanche.").) Judge Bumb was very clear that, should any relevant communications be found, the Court would conduct an "ex parte review" of those documents. (9/9/25 Tr. 208:8-20.) Accordingly, and as explained in Section I *infra*, the Court should defer ruling on the instant motion until Judge Bumb completes her review of ZHP's forthcoming final report.

If the Court does not defer ruling, ZHP's motion should be granted for the following reasons:

**First**, ZHP only seeks to seal those portions of the September 16 Letter that it redacted in accordance with Judge Bumb's instructions. (*See* ECF No. 3181.) In

2

support of those redactions, ZHP has produced a privilege log outlining the basis for each one. As the log makes clear, the documents underlying the redacted text in the September 16 Letter are plainly privileged – and, as such, the description of those documents in the September 16 Letter should remain redacted.

*Second*, Ms. Kong's testimony at the hearing on September 9, 2025, which did not reveal any privileged information, did not waive the privilege over ZHP's communications with counsel regarding the preservation, collection, and production of COAs and internal testing materials.

*Third*, Plaintiffs have not provided (and cannot provide) sufficient evidence to invoke the crime fraud exception. Even if they could, in order to consider whether this exception applies, the Court would need to conduct an *in camera* review of relevant privileged communications – a step ZHP already intends to take when it submits its final report.

## BACKGROUND

This motion arises out of Plaintiffs' continued efforts to seek sanctions based on discovery that closed in 2021. As part of its efforts to resolve Plaintiffs' most recent sanctions motion, the Court elected to hold a Rule 104 hearing to address whether ZHP's destruction of certain COAs was in bad faith or whether there is any evidence that those COAs would have been substantively different from the hundreds of COAs that ZHP did produce. (8/26/25 Tr. 296:17-300:8 (ECF No.

3

3168).)  That hearing took place on September 9, 2025, during which two ZHP witnesses testified about their personal involvement in and understanding of the discovery process.

At the end of the hearing, the Court asked ZHP's counsel to confer with Duane Morris (ZHP's former counsel) and to review ZHP's communications with its counsel and report back to the Court on any relevant communications about the production of the COAs.  In connection with discussing that investigation, the Court and Plaintiffs' counsel had the following exchange:

> MR. SLATER: I was going to suggest that we confer with counsel about trying to work through the documents that have been withheld as privileged and try to talk through a solution, because we obviously want to see the communications having to do with the document production.
>
> CHIEF JUDGE BUMB: No.  I'll do an ex parte review before I -- I mean, you know, I would do a -- assuming that those documents -- assuming that there's a waiver or maybe they will agree to a limited waiver.  And maybe no such documents exist, so we're talking about nothing anyway.  If no documents exist, then it sort of proves my point.  And if there's any questions about any document that may or may not be responsive to my concern, then I'll review it ex parte.  But you're suggesting that you would look through their --
>
> MR. SLATER: No.  What I was suggesting was that we would talk about a process by which we could quantify specifically how many documents were withheld, the scope of how large the documents is, talk through a process for ZHP to search those documents; and if Your Honor wants to look at them ex parte, of course that's fine, just for us to be involved, and how are they going to be identified, how are they going to be narrowed, how are they going to search them, in order to --
>
> CHIEF JUDGE BUMB: I think if they search the word "catalyst" or "solvent," that would be a fairly easy search.

4

(9/9/25 Tr. 208:8-209:7.)  In sum, the Court made clear that it would review any privileged documents ZHP located and would not allow Plaintiffs to rummage through ZHP's privileged communications prior to the Court's consideration.

Following the hearing, and at Judge Bumb's direction, ZHP's counsel undertook to investigate whether there were any communications between Duane Morris and ZHP regarding Plaintiffs' request for COAs that would shed further light on the issues.  (9/9/25 Tr. 207-210.)  In connection with that effort, ZHP sent Plaintiffs a detailed chart that contained dozens of search terms, information about where the searches would be conducted, the time periods for those searches, and the custodians whose files would be searched.  After Plaintiffs requested even more information, ZHP provided extensive details regarding its search methodology.[1]

ZHP provided Judge Bumb with its initial report in the September 16 Letter, which was filed under seal based on the Court's instruction.  (ECF No. 3176.)  The Court subsequently directed ZHP to provide Plaintiffs with a redacted version of the September 16 Letter, which ZHP did the same day.  (ECF No. 3181.)  Consistent with local rules, ZHP also filed a motion to seal on September 30, 2025.  (ECF No. 3186.)  Plaintiffs opposed ZHP's motion to seal, claiming that the redacted portions

---

[1]    Despite having this information, which ZHP will append to its final report and is happy to provide to the Court now upon request, Plaintiffs will not agree to search terms without additional, privileged information including, but not limited to, a review of ZHP's privileged documents or a corporate deposition of Duane Morris.

5

of the September 16 Letter are not privileged and, even if they were, ZHP has waived

that privilege.  (*See generally* Opp'n (ECF No. 3195).)

## ARGUMENT

I. **THE COURT SHOULD DEFER CONSIDERATION OF THE INSTANT MOTION UNTIL AFTER JUDGE BUMB REVIEWS ZHP'S FINAL REPORT.**

As noted above, Judge Bumb made clear during the September 9 hearing that she would review any privileged documents related to the discovery of COAs before deciding whether Plaintiffs should have access to them.  Resolving the motion to seal, particularly on waiver grounds, could allow Plaintiffs to circumvent Judge Bumb's proposed process, and give them immediate access to privileged documents that Judge Bumb has already stated she intends to review *in camera*.

Courts in this Circuit routinely decline to decide motions where it is clear that another pending motion or process will render the instant motion moot.  *See, e.g.*, *MiiCs & Partners Am. Inc. v. Toshiba Corp.*, No. 14-803, 2017 WL 11573565 (D. Del. Oct. 12, 2017) ("*Toshiba*") (deferring ruling on a motion in limine given resolution of a pending 702 motion would likely render it moot).  The same approach is appropriate here.

ZHP plans to file its final report to Judge Bumb, along with a handful of responsive, privileged documents for *in camera* review as soon as possible.  Judge Bumb can then decide whether Plaintiffs are entitled to access any of those

6

documents. Accordingly, the Court should defer ruling on the current motion until Judge Bumb has completed the process she outlined during the September 9 hearing.

## II. ZHP HAS SHOWN THE REDACTED PORTIONS OF THE SEPTEMBER 16 LETTER ARE PRIVILEGED.

ZHP only seeks to seal narrowly redacted portions of the September 16 Letter that contain garden-variety work product and attorney-client privileged material that warrants protection. *See, e.g.*, *Rudderow v. Bos. Sci. Corp.*, No. 20-08561, 2022 WL 1500958 (D.N.J. May 11, 2022) (finding Local Civil Rule 5.3(c)(3) was clearly met with regard to privileged materials and approving motion to seal). Specifically, the log explains that the redacted portions of the September 16 Letter contain:

- Outside counsel Richard Bernardo's characterization of communications between ZHP and its former counsel, Duane Morris, that discuss Duane Morris' mental impressions of document requests.

- Paragraphs containing Mr. Bernardo's characterization of an early draft of a spreadsheet prepared by Duane Morris that reveals Duane Morris' mental impressions regarding collection strategy for manufacturing-related document requests.

- Mr. Bernardo's characterization of a communication between Duane Morris and ZHP that seeks information for purposes of providing legal advice and provides legal advice regarding document collection and retention obligations.

(Ex. 1, at 1.) Given that the redactions do not relate to legal holds, Plaintiffs' discussion of caselaw purportedly finding that materials related to legal holds are not privileged (*see* Opp'n at 6-10), is inapposite. As the descriptions above make clear, the redacted material in the September 16 Letter reveal attorney-client

7

communications made for the primary purpose of requesting or providing legal advice and/or the mental impressions of outside counsel.  Such information is clearly subject to privilege and/or attorney-work product protections, and therefore should be sealed.  *See Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (noting the "'strong public policy' underlying the work-product doctrine"); *Winston & Strawn LLP v. Janssen Prods., L.P.*, No. 22-5061, 2022 WL 3588106, at *3 (D.N.J. Aug. 22, 2022) (quashing subpoena seeking "discovery efforts made by [the client] and [law firm] throughout the course of litigating the Patent Action," given "this type of information is privileged as it was created in anticipation of litigation or for trial in the Patent Action and would entail confidential communications between attorneys and their clients; therefore, such information is not subject to discovery under Rule 26 of the Federal Rules of Civil Procedure").

### III.    MS. KONG'S TESTIMONY DID NOT WAIVE PRIVILEGE OVER THE REDACTED MATERIAL IN THE SEPTEMBER 16 LETTER.

Plaintiffs next argue that ZHP waived any privilege claims over the information discussed in the September 16 Letter when it presented witnesses at the September 9 hearing who provided a high-level overview of the valsartan discovery process.  But these witnesses did not testify about the substance of any legal advice they were given – and, indeed, the litany of quotes from the hearing recited by Plaintiffs in their opposition briefing provides no more details about the substance of the advice than a privilege log would.  (*See generally* Opp'n at 11-14.)  Most

8

importantly, ZHP has not actually put any privileged communications at issue or attempted to use the privilege as a "sword and a shield."  Accordingly the ZHP witness's testimony on September 9, 2025, did not waive privilege over the September 16 Letter's redacted sections.

A client's testimony regarding its communications with counsel does not waive attorney-client privilege unless the client puts specific legal advice at issue as an essential element of a claim or defense.  *Compare Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463 (D. Del. 2010) ("*Brigham*") (finding waiver where client invoked counsel's advice to support an affirmative defense to a fraud on the PTO claim); *In re Valeant Pharms., Inc.*, No. 16-3087, 2021 WL 2163463, at *6 (D.N.J. Apr. 26, 2021) (finding subject matter waiver where the court inferred that an "advice of counsel" defense was "waiting in the wings"); *with Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863-64 (3d Cir. 1994) ("*Rhone*") (finding no waiver where plaintiffs had "not interjected the advice of counsel as an essential element of a claim in this case"); *Jorjani v. N.J. Inst. of Tech.*, No. 18-11693, 2023 WL 2986694, at *11 (D.N.J. Apr. 18, 2023), *aff'd*, No. 18-11693, 2023 WL 7895856 (D.N.J. Nov. 14, 2023) (finding no waiver where defendant had not invoked counsel's advice as an affirmative defense and the relevant testimony only went to the witnesses' state of mind).

9

The Third Circuit has given clear guidance for determining if a client has sufficiently placed the advice of counsel at issue to cause a waiver. Critically, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone*, 32 F.3d at 863. Rather, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense *by disclosing or describing an attorney client communication*." *Id.* (emphasis added). Given this guidance, courts routinely decline to find waiver where a client merely testifies that she consulted with counsel to explain how she came to pursue a particular course of action. *See, e.g.*, *AstraZeneca LP v. Breath Ltd.*, No. 08-1512, 2010 WL 11428457 (D.N.J. Aug. 26, 2010) (finding no subject matter waiver where client testified it had proposed certain language on its warning label under the advice of counsel as evidence of its good faith in trying to avoid infringing on the patent of another manufacturer).

For example, in *Jorjani*, the plaintiff sued his former employer, a university, alleging that the school "and certain members of its administration engaged in a conspiracy to violate [his] First Amendment rights." 2023 WL 2986694, at *2. Following a series of depositions, the plaintiff moved to compel the production of previously withheld documents claiming waiver on the basis that three officials had "testified that they consulted counsel on general topics as well as the issues regarding

10

[the plaintiff]" specifically. *Id.* at *8. In declining to find waiver, the court focused on *Rhone*'s admonition that "[d]efendants . . . do not waive the privilege when the clients' 'state of mind is put in issue in the action.'" *Id.* at *11 (citation omitted). Thus, because the witnesses' testimony was "limited to communications regarding [d]efendants' state of mind on [the plaintiff] and decisions about his employment," there was no waiver. *Id.* The court further noted that the defendants had "in no way ple[d] advice of counsel as an affirmative defense," which when coupled with the testimony at issue confirmed no waiver had occurred. *Id.*

The logic of *Jorjani* applies with equal force here. Ms. Kong's general testimony that she engaged in communications with ZHP's former outside counsel during the discovery process did not put counsel's legal advice at issue. Ms. Kong primarily testified as to whether she believed ZHP had complied in good faith with its discovery obligations. (*See* 9/9/25 Tr. 61:2-4 ("I -- we did -- provided all our best efforts, even though, now looking back, there are areas to improve.").) While attempting to explain why COAs for the DMF solvent used in the valsartan manufacturing process were not produced, Ms. Kong recalled discussions with counsel related to discovery requests for COAs for valsartan API, but not for DMF. (*See id.* 74:25-75:4.) However, Ms. Kong **did not** assert that counsel's advice **was why** the COAs for DMF and any related internal testing were not produced. Indeed, she specifically testified that she **could not explain** why ZHP focused on the COAs

11

for valsartan API and not those for catalysts and solvents used in the tetrazole ring process, such as DMF:

> Reading it today, reading it today, Your Honor, reading it today, I -- I think I would say, yes, it's the certificate of analysis for valsartan and also for catalysts and also for solvents used in the tetrazole ring process. Now, going back where we were, I -- I -- I think our focus was really on a certificate of analysis for valsartan. **But I -- I don't recall, and I could not explain, like, why we focused on the certificates of analysis on valsartan.**

(9/9/25 Tr. 89:20-90:3 (emphasis added).) The various quotes from Ms. Kong's testimony that have been cited by Plaintiffs (*see* Opp'n at 11-14) are not to the contrary. The cited testimony simply explains ZHP's general course of conduct during discovery, and notes that discussions with counsel occurred during this process (as would be expected) and informed ZHP's state of mind. (*See id.*)

Plaintiffs' reliance on *Brigham* is misplaced. In *Brigham*, the defendants raised as an affirmative defense that the plaintiffs' patent infringement claim failed because they had engaged in "inequitable conduct before the United States Patent and Trademark Office ('PTO')." 707 F. Supp. 2d at 465. Specifically, the defendants argued that the "plaintiffs [had] intentionally withheld information regarding [a certain patent application] in order to extend unlawfully the patent terms" for their own patents. *Id.* In response, the plaintiffs claimed that they could not have intentionally withheld any information from the PTO because they had relied on counsel to disclose all relevant materials. *See id.* at 471. Furthermore,

12

counsel for plaintiffs testified that the "final decision" regarding what prior art had to be disclosed to the patent examiners – as well as the actual disclosure – was made by counsel. *Id.* Applying Federal Circuit law – not the law of this Circuit – the court ruled that "a litigant who asserts reliance of the advice of counsel as a defense [to inequitable conduct] waives the attorney-client privilege with regard to all communications pertaining to that advice." *Id.* at 470.

Here, by contrast, ZHP has not asserted reliance on the advice of counsel as an affirmative defense in the litigation, or even as a defense to Plaintiffs' allegations of spoliation. To the contrary, ZHP introduced Ms. Kong as a witness solely in response to the Court's request that someone from ZHP appear at the September 9 hearing to provide testimony regarding ZHP's good faith efforts during the document collection process. (*See* 8/26/25 Tr. 299:18-19 ("I don't want an affidavit. I just want someone to tell me what happened.").) Ms. Kong provided her recollection of the discovery process as requested by the Court, not as part of an affirmative defense. As courts have repeatedly recognized, this is not a sufficient basis for finding that privilege protections have been waived. *See, e.g.*, *Rhone*, 32 F.3d at 863; *AstraZeneca*, 2010 WL 11428457, at *6; *Jorjani*, 2023 WL 2986694, at *11.

## IV. PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE THE CRIME-FRAUD EXCEPTION, AND IN ANY EVENT, IT IS MOOT.

Finally, Plaintiffs assert that any privilege protection that has not been waived

13

is barred by the crime-fraud exception.  (Opp'n at 14-15.)  As an initial matter, Plaintiffs have not made the prima facie case necessary to invoke the crime-fraud exception.  In order to invoke the exception, the party seeking discovery – here, Plaintiffs – must show "that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud."  *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, No. 19-12107, 2025 WL 2693954, at *3 (D.N.J. Sept. 22, 2025) (citation omitted).  Such a prima facie showing requires the party seeking discovery to present "***evidence*** which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met."  *Id.* (emphasis added) (citation omitted).  As noted above, Plaintiffs have not come close to meeting their burden of making such a showing and instead premise their argument on baseless allegations that ZHP intentionally destroyed evidence.

And even if Plaintiffs could make the requisite prima facie showing,[2] the next step in the process is for a court to conduct an *in camera* evaluation of the contested documents.  *See id.* (explaining "in camera evaluation of the material by the court" typically follows the prima facia showing) (citation omitted).  ).  Moreover, "it is

---

[2]    Notably, Judge Bumb expressed significant doubt regarding Plaintiffs' allegations of intentional spoliation during the September 9, 2025 hearing. (*See, e.g.*, 9/9/25 Tr. 174:20-21 ("I thus far do not find anything sinister on the part of the ZHP client.").)

14

well-settled law that, even if the Court determines that an *in camera* review is warranted based upon an assertion of the crime-fraud exception, it does not necessarily follow that production of the reviewed documents to the requesting party is automatically warranted" given "the standard for overcoming a privilege shielding documents from production is high."  *Id.*  ZHP already intends to provide the documents it has located that relate to the preservation and collection of the DMF COAs and related internal testing to Judge Bumb for *in camera* review.  Thus, to the extent the Court does not reject Plaintiffs' crime-fraud argument out of hand, it should, at the very least, defer resolution of the motion on this basis until Judge Bumb has had the opportunity to review the additional documents that ZHP plans to produce, among which are documents described and discussed in the September 16 Letter.  *See Toshiba*, 2017 WL 11573565, at *1 (declining to resolve a motion where resolution of a second motion would moot the first).

## CONCLUSION

For the reasons set forth above, the Court should grant ZHP's motion to seal the redacted portions of the September 16 Letter or, in the alternative, decline to resolve the motion until after ZHP provides its final report, and the relevant documents it has identified during its investigation, to Judge Bumb for review.

Dated: January 7, 2026

Respectfully submitted,

By: */s/ Richard T. Bernardo*
Richard T. Bernardo (NY Bar No. 2288959)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3453
Facsimile: (917) 777-3453
richard.bernardo@skadden.com

*Attorneys for Zhejiang Huahai
Pharmaceutical Co., Ltd., Huahai U.S., Inc.,
Prinston Pharmaceutical Inc., and Solco
Healthcare U.S., LLC*

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 7, 2026, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system which will

send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Richard T. Bernardo*
Richard T. Bernardo (NY Bar No. 2288959)

17