SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

———

TEL: (212) 735-3000

FAX: (212) 735-2000

WWW.SKADDEN.COM

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
212-735-3453
DIRECT FAX
917-777-3453
EMAIL ADDRESS
RICHARD.BERNARDO@SKADDEN.COM

January 23, 2026

**VIA CM/ECF**
Honorable Renée Marie Bumb
United States District Court
Mitchell H. Cohen Building and
U.S. Courthouse
Courtroom 3D
4th and Cooper Streets
Camden, New Jersey 08101

RE:   *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, No. 1:19-md-02875 (D.N.J.) – Report with Redactions

Dear Chief Judge Bumb:

This is a follow up to my September 16, 2025 letter to the Court (ECF No. 3176) regarding the investigation into the questions raised by Your Honor about ZHP's delayed production or destruction of certain documents in the above-referenced matter. As set forth in more detail below, we have conducted a broad investigation into this issue by reviewing thousands of documents and speaking with a number of individuals with involvement. In short, we have identified very few discovery-related communications related to third-party supplier certificates of analysis ("COAs") for dimethylformamide ("DMF"). While we cannot say with any certainty why the COAs were not produced in 2020, the communications we reviewed and the information we gathered during our investigation does not suggest that there was any bad faith on the part of ZHP or its counsel in connection with discovery related to the COAs.

Honorable Renée Marie Bumb
January 23, 2026
Page 2

## I.        Scope of Investigation

At the September 9, 2025 hearing, the Court requested that we, as current counsel for ZHP, investigate whether there were any (1) specific communications between ZHP and Duane Morris regarding the collection or production of COAs for catalysts and solvents (Sept. 9, 2025 Tr. 207:21-209:25), or (2) specific requests by Plaintiffs for the COAs and related materials, other than the discovery requests approved by Judge Schneider (*id.* 210:20-25).  We undertook a multipronged and thorough investigation to seek information on these issues, as follows:

1. We conducted comprehensive searches across hundreds of thousands of ZHP documents using broad search terms intended to capture references to COAs for catalysts or solvents, discussions about the discovery process more generally, and communications related to ZHP's legal hold obligations. These searches were run across relevant custodians and included terms in both English and Chinese.  A detailed chart listing the terms used, as well as the custodians and time periods searched, was previously provided to Judge Vanaskie and Plaintiffs' counsel on October 1, 2025 and is attached here as Exhibit 1.

2. Out of an abundance of caution, we also searched Skadden's files for any relevant communications.  Skadden was not involved in this litigation until early 2022, and any substantive discovery-related decisions made after that time would have been raised with me, as I was responsible for the continued oversight of discovery in the litigation.  Prior to October 2024, I have no recollection of having any communications regarding COAs for solvents or catalysts used to manufacture valsartan API, other than those that occurred on the record at the depositions of Drs. Hecht and Xue.  Nonetheless, we searched my emails to confirm that no such communications existed.

3. I and/or my colleague, Milli Hansen, had multiple discussions with Jessica Priselac, an attorney from Duane Morris who is one of ZHP's prior outside counsel in this litigation and had significant involvement in discovery.  Ms. Priselac and her colleague also reached out to former Duane Morris attorneys Joseph Ferretti and Seth Goldberg, who also had significant involvement in valsartan discovery efforts, to ascertain whether they could remember any relevant information.  In addition, Duane Morris reviewed its files, including the files of attorneys who had left, for any information about these issues.

Honorable Renée Marie Bumb
January 23, 2026
Page 3

4. I and/or Milli Hansen also interviewed the relevant managers at FTI, ZHP's e-discovery vendor which worked closely with Duane Morris and ZHP to identify and collect documents in China.  FTI also reviewed its files for any information about these issues.

For more details about our search methodology and the investigative steps described above, we have attached here as Exhibit 2 a letter we sent to Plaintiffs' counsel on November 11, 2025.  This letter provides even more transparency into our investigation and why we used particular terms and searched particular custodial files.[1]

## II.    Investigation Findings

### A.    Overview of Findings

Our investigation confirmed that ZHP and its counsel considered collection of the DMF COAs, along with dozens of other categories of documents, in 2020 during the valsartan discovery process.  As we previewed in our preliminary report,

---

[1]    Although we had hoped that providing the information in the letter would allow the parties to come to an agreement about the scope of ZHP's searches (and, more specifically, the terms to be used), Plaintiffs' counsel have communicated that they are unable to evaluate the sufficiency of the search without first having broader insight into ZHP's communications regarding the discovery process.  ZHP believes that the detailed chart of search terms attached as Exhibit 1 and the letter attached as Exhibit 2 provide sufficient detail and transparency.  ZHP does not believe that any further information (which ZHP believes is privileged) is warranted at this juncture, before Your Honor has had an opportunity to review this report and the documents we identified and attached to this letter.  (*See* Sept. 9, 2025 Tr. 208:18-20 ("And if there's any questions about any document that may or may not be responsive to my concern, then I'll review it *ex parte*").)

Honorable Renée Marie Bumb
January 23, 2026
Page 4



We have not identified any communications or other documents that explain with certainty why solvent COAs ultimately were not collected in 2020. As noted above, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ As Your Honor knows, some raw materials (like DMF) are used to manufacture a number of different APIs. As a result, some batches of DMF may not have been used to manufacture valsartan API and may have been used to manufacture another drug compound. As such, ████████████████████████ ████████████████████████████████

Neither Duane Morris nor FTI had any specific recollection as to ████████████ ████████████████████████ whether additional discussions were had with ZHP personnel or Plaintiffs' counsel as to the scope of the production ████████████ ████████████████. Indeed, when the Court asked Plaintiffs to prioritize the information that were seeking from ZHP and other defendants, no information about solvent COAs was included in Plaintiffs' priorities.

Duane Morris attorneys did not recall or find any additional documentation of any specific discussions of DMF or solvent COA production. Likewise, although FTI worked closely with ZHP and Duane Morris to facilitate the collection of hard copy documents, including interviewing ZHP custodians to determine the location of requested documents and managing the onsite scanning process, FTI managers involved in valsartan discovery confirmed that they do not recall any particular discussion regarding the collection or production of DMF COAs. One FTI manager who is based in China and was present for onsite collections, Frances Chen, does recall working with ZHP's Director of the Quality Control Department, Qiangming Li, to determine the location of COAs for solvents and catalysts.[3] Ms. Chen also noted that the Drug Master File for valsartan API contains an exemplar internal COA

████████████████████████████████████████████████████████

[3]    Mr. Li does not recall any specific conversations regarding the collection of COAs for DMF in 2020 or 2021.

Honorable Renée Marie Bumb
January 23, 2026
Page 5

for various raw materials, including DMF and other solvents, ███████████
████████████████████████ (*See* Exhibit 6.)

Other than ████████████████████████████████████
███████we did not find any materials or communications directly addressing the
collection of COAs for DMF or other solvents or catalysts.██████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████
████████████████████████████████ ' ██████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████ Notably, all these testing items are documented
on ZHP's internal inspection reports, an exemplar of which is in the valsartan API
Drug Master File produced to Plaintiffs in 2020.  (*See* Exhibit 6.)

Separately, our investigation did not identify any communications or other
documents suggesting that Plaintiffs had any particular interest in the DMF COA
documents. ████████████████████████████████
████████████████████████████████████
████████████████████████ Because valsartan API batch records
were quite burdensome to collect, both because of the number of pages and because
of how they were stored, ████████████████████████████
████████████████████████████████
████████████████ ZHP ultimately produced almost 175,000 pages of
valsartan API batch records in the litigation.

Finally, our investigation made clear that Duane Morris communicated
ZHP's obligation to preserve the documents in question. ████████████████
████████████████████████

---

4     Because the issues raised in the Chinese-language portions of the emails are
not related to the core issues before the Court, we have only provided machine
translations here.  The machine translation is bolded and in brackets to distinguish it
from the original email text.  We would be happy to provide a certified translation
upon request.

Honorable Renée Marie Bumb
January 23, 2026
Page 6



### B.      Specific Documents Identified in the Investigation

In the course of our investigation, we identified over 12,000 unique documents that "hit" on the broad search terms described above.  Each of those 12,000 documents was reviewed by counsel to determine if it shed any light on the questions asked by the Court.  In addition, Duane Morris reviewed their case file, including the files of attorneys who have departed the firm in the intervening years, to determine if there were any communications or other documents relevant to the questions asked by the Court.  The vast majority of the documents reviewed had no bearing on COA collection or production, nor did they indicate any particular interest on the part of Plaintiffs in obtaining the COAs.  Indeed, as summarized above, we only identified a handful of unique documents that specifically reference COAs or testing related to solvents used to manufacture valsartan API.

For the Court's convenience, we provide below bulleted descriptions of all the documents included with this submission (most of which are summarized above).  We have described related documents – e.g., later-in-time versions of a document, or different forks of one email thread – together in one bullet.  We did not include every iteration of these documents (e.g., near duplicates, documents treading the same ground, or portions of email threads that veered onto unrelated topics), as we did not want to burden the Court with documents that we did not believe would assist in its evaluation.  For the same reason, we did not include attachments to emails where those attachments did not pertain to the issues before the Court.  Of course, we would be happy to provide the Court with the complete family of any document discussed in this report, or with near duplicate versions of documents, upon request.

ZHP continues to believe that these documents are protected from disclosure by the attorney-client privilege and work product doctrine and therefore should not be disclosed to Plaintiffs.  We will provide a privilege log to Plaintiffs for the redactions in this letter as well as for the documents provided to the Court with this submission.

The following documents specifically refer to COAs for solvents and catalysts:

Honorable Renée Marie Bumb
January 23, 2026
Page 7



Honorable Renée Marie Bumb
January 23, 2026
Page 8



While the following documents do not specifically refer to COAs, they refer or relate to raw material testing:

As noted above, we have provided in bold, bracketed text a machine translation of the Chinese text in this email, and would be happy to provide a certified translation is helpful.

Honorable Renée Marie Bumb
January 23, 2026
Page 9

████████████████████████████████████████████

These documents do not explain why the DMF COAs were not produced in 2020.  They do show that Duane Morris alerted ZHP that Plaintiffs requested those documents, that both ZHP and Duane Morris made considerable and good-faith efforts to comply with discovery obligations, and that ZHP collected many dozens of categories of hard copy materials for scanning and production (ultimately producing almost 45,000 hard copy documents and over 500,000 documents total).  Notably, Duane Morris and ZHP undertook these efforts at the height of the COVID-19 pandemic during a period when travel restrictions and personal safety concerns made cross-border discovery particularly challenging.  Moreover, the documents also show that the COAs that are now at issue were not a priority for Plaintiffs during fact discovery.

\*        \*        \*        \*        \*        \*        \*

Taking a step back from the details of the investigation, ZHP has produced over three million pages in response to nearly 100 discovery requests covering the development, manufacturing, testing, and sale of valsartan API and finished dose products.  Based on our understanding from those directly involved, it is possible that, in light of the priority placed on the production of other hard copy documents (in particular, valsartan API batch records) as well as the standardized nature of raw material COAs, the parties ultimately agreed (either implicitly or explicitly) that these particular documents did not need to be produced, although we did not find any documentation of such an agreement.  As far as we understand, Plaintiffs have not been able to point to any communications or other documents suggesting that this was a priority for them or suggesting that they reached out to ZHP's counsel for additional information about these documents.  It is also possible that the documents at issue were not produced due to inadvertent error in a complex and iterative discovery process that involved overseas collections, many people, and many moving parts.  There may also be other possibilities, but both the passage of time and the fact that many discovery communications occurred via teleconference and not email make it impossible to know for sure.

In any event, when Plaintiffs re-requested these documents in late 2024, ZHP produced third-party supplier COAs and other internal inspection records for DMF from 2016 to 2018.  And although ZHP no longer has older versions of these materials, it provided to Plaintiffs the relevant Chinese national standard that confirms that the DMF COAs prior to 2016 were not materially different than those that have been produced.  ZHP further pointed Plaintiffs to the Drug Master File for

Honorable Renée Marie Bumb
January 23, 2026
Page 10

valsartan API, which contains an exemplar internal inspection report for DMF from 2012 and which is substantively identical to the hundreds of internal inspection reports produced in 2025.  In addition, ZHP reached out to its distributors to obtain exemplar supplier COAs from 2012 and 2015, which, again, are substantively identical to the many COAs produced.  Finally, Plaintiffs also took a seven-hour deposition of ZHP's corporate representative on ZHP's use and interpretation of DMF COAs and related materials.

As a result, we believe that ZHP has demonstrated that Plaintiffs were not prejudiced by ZHP's inadvertent failure to produce solvent COAs and related materials in 2020.  Nonetheless, in an effort to resolve this issue so that both parties can move forward in this litigation, ZHP remains willing to proceed with remote fact depositions of a few, relevant ZHP employees who Plaintiffs believe should be re-deposed on this topic.  ZHP expects that these depositions would be limited to these employees' understanding of the COAs for DMF used to manufacture valsartan API.

We are happy to further discuss this report or any related issues at the Court's convenience.

Respectfully,

Richard T. Bernardo