# Exhibit 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-2111

————

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
————
ABU DHABI
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
202-371-7128
DIRECT FAX
202-661-7128
EMAIL ADDRESS
MILLI.HANSEN@SKADDEN.COM

CONFIDENTIAL

November 11, 2025

***BY E-MAIL***

Adam Slater
Mazie Slater Katz & Freeman
103 Eisenhower Parkway, 2nd Floor
Roseland, NJ 07068

>RE:   Investigation – Sanctions Issues  (Valsartan MDL, No. 2875)

Dear Adam:

This is by way of follow-up to our meet and confer regarding counsel's search to identify documents for review in connection with the issues raised by plaintiffs regarding the production and destruction of certificates of analysis ("COAs") for dimethylformamide ("DMF") and other solvents or catalysts involved in the tetrazole ring formation process.

As a preliminary matter, we believe this endeavor has gone far afield from our interpretation of the Court's instruction to come to an agreement on the search terms to be used in this investigation.  To be clear, we want to work with you to come to agreement on the scope of our searches rather than to have to raise a dispute with the Court on this. Nevertheless, we think it makes sense to take a step back to

Adam Slater
November 11, 2025
Page 2

consider how we got to this point as we discuss what the appropriate next steps should be.

As you recall, this issue started in October 2024 when, in connection with preparing to take the deposition of Dr. Jinsheng Lin in advance of his anticipated trial testimony, you requested that ZHP "identify [certain] suppliers' COAs and material safety data sheets for the entire relevant time period in the production, or produce them immediately." (Oct. 24, 2024 Letter from A. Slater to J. Davidson.) In connection with that request, ZHP ultimately produced more than 1,500 documents consisting not only of COAs and material safety data sheets, but also of other internal inspection records for DMF, triethylamine, and triethylamine hydrochloride from approximately early 2016 to the time of the recall in 2018. ZHP also explained that documents for raw materials purchased in earlier years were no longer available and had likely been destroyed in the ordinary course of business. ZHP further explained that the older documents would not have contained information that was new or materially different from the information in the more than 750 COAs already produced, and that ZHP was willing to stipulate that the pre-2016 COAs would have been substantially similar to the post-2016 COAs already produced.

Subsequently, you took a 30(b)(6) deposition of ZHP's corporate witness, Jucai Ge, who testified for seven hours about the "contents, distribution, interpretation, and use" of the COAs and related documents. One month later, plaintiffs filed a motion for sanctions based on ZHP's destruction of the pre-2016 COAs and alleged failure to timely produce the COAs that it did have in its possession. The Court elected to hold a Rule 104 hearing to address whether plaintiffs had a good-faith basis to believe that the older COAs that were not preserved would have been any different from the hundreds of COAs produced, and whether ZHP's destruction of the older COAs was done in bad faith. That hearing took place on September 9, 2025 and included testimony from two ZHP witnesses, who testified, among other things, that they had no recollection of specific discussions about plaintiffs' interest in the DMF COAs during the valsartan discovery period and that ZHP had inadvertently allowed pre-2016 DMF COAs to be destroyed because the individuals involved had not focused on that fact that DMF COAs could be relevant to the valsartan litigation.

Following that hearing, we undertook to investigate: (1) whether there were any communications between Duane Morris and ZHP during the valsartan discovery period regarding plaintiffs' request for COAs for solvents and catalysts, including any discussions specifically related to ZHP's retention or destruction of such documents; and (2) whether we could identify any specific request by the plaintiffs at

Adam Slater
November 11, 2025
Page 3

any time prior to October 2024 for these documents (other than the discovery requests put before Judge Schneider and raised by plaintiffs in their request for sanctions).  (Sept. 9, 2025 Tr. 207-210.)

During our initial meet and confer on our search terms, you asked that we provide additional information regarding how we determined the sources of documents to review and the methodology for the review.  As explained more fully below, Skadden's investigation focused on information available in the files of the key entities involved in these issues:  ZHP; Duane Morris (ZHP's former outside counsel and the firm representing ZHP at the beginning of valsartan discovery); Skadden (ZHP's current outside counsel); and FTI (ZHP's e-discovery vendor throughout the litigation that coordinated the collection of both hard copy and electronic documents at ZHP).  As you'll see, the searches conducted in the files of these entities were extremely broad and were intended to identify any communications related to the issues before the Court.  The sections below explain in detail the scope of searches conducted in each entity's files, including the individuals whose files were searched, the search terms (if any) that were used to narrow the search, and the time period of each search.  These descriptions are meant to complement the spreadsheet previously provided to plaintiffs on October 1, 2025, and reattached here as Exhibit A, which sets forth with particularity the terms and scope of the searches described below.

1. **REVIEW OF ZHP'S FILES**

   *a.  ZHP Document Collection*

   ZHP maintains an active database of the documents collected from U.S. custodians that hit on the parties' agreed-upon search terms in this litigation,[1] as well as documents collected from Chinese custodians that were found to be potentially responsive.  Given that the agreed-upon search terms include a number of terms related to the issue before the Court – including dimethylamine, dimethylformamide, certificate, COA, tetrazole, solvent, and impurity – this set of documents was most likely to contain documents and materials relevant to the issues before the Court. We did not exclude privileged documents (including documents classified as "litigation do not log") from the corpus of documents searched.

   Within this set, we focused on the individuals who would have been involved in communications related to the scope of discovery, collection efforts, and any

---

[1]      A list of the search terms is attached as Exhibit B.

Adam Slater
November 11, 2025
Page 4

decisions on whether to collect certain sets of documents at ZHP (as opposed to ZHP's U.S. subsidiaries, including Prinston or Solco). This is because ZHP's Chuannan site is the only entity that would have received and maintained COAs for DMF used to manufacture valsartan API. In other words, Prinston, Solco or other subsidiaries would not have had copies of the COAs for DMF used in valsartan API in the normal course of business.

With respect to ZHP, we confirmed that Maggie Kong would have been involved in any decisions related to the company's discovery obligations – including the scope of discovery, document collection efforts, document retention, and legal hold obligations. Although Ms. Kong is not a lawyer, she has been and continues to be the primary point of contact for both outside counsel and internal employees for discussions related to valsartan litigation strategy. As such, she assumed the role of ZHP's *de facto* in-house counsel through the duration of the litigation. It is both Duane Morris and Skadden's expectation and recollection that Ms. Kong would have been included in any communication between counsel and ZHP related to the scope of ZHP discovery. We used very broad searches to identify communications involving Ms. Kong, including communications for which she was a custodian and communications that contained various iterations of her name (including just "Maggie") in the Document Content field. This was intended to capture any lower level threads in which Ms. Kong was communicating with others.

We note that Wayne Cheng, another ZHP employee, was also involved in coordinating collection efforts within ZHP, but he would not have been responsible for decisions with respect to the scope of the documents to be produced without Ms. Kong's involvement. Further, we understand that Ms. Kong would have been copied on virtually all communications with Mr. Cheng that would be relevant to the Court's inquiry – i.e., all communications that discussed issues requiring decision points. We also would have captured Mr. Cheng's communications directly with outside counsel through our searches of the Duane Morris files, which are described more fully below.

We also searched Ms. Xiaxia Kuang's communications in light of her responsibilities in the QC laboratory in ZHP's API manufacturing facility at the Chuannan site. In particular, as she testified at the September 9 hearing, Ms. Kuang is a QC manager in the Chuannan facility responsible for testing raw materials and issuing inspection reports. In that role, she would have overseen the testing of raw materials like DMF used in the valsartan API manufacturing process. Moreover, the QC department is the repository for third-party supplier COAs as well as related testing, and, as such, is also charged with the disposition of those documents at the

Adam Slater
November 11, 2025
Page 5

end of their retention period.  Ms. Kuang was responsible for approving the request to destroy the COAs for DMF pursuant to ZHP's ordinary course retention policies.[2]

In addition, we also searched all communications between Duane Morris and ZHP (and its subsidiaries).  Because this search included all communications in which "@Duanemorris.com" appeared in the Document Content field, it would have captured not only communications to or from Duane Morris attorneys, but also any communications from Duane Morris attorneys that were subsequently forwarded internally.  This search also would have captured Duane Morris' communications with employees at Prinston or Solco – though, as noted above, such employees would have had no responsibility or knowledge of the COAs at issue.

Over these sets of documents, we ran broad searches to identify communications discussing plaintiffs' request for the COAs (or related internal testing documents) for DMF or other solvents used in the tetrazole ring formation process in the manufacture of valsartan API, including efforts to collect or produce the same. The broad search terms used to identify such documents, which have been separately provided to plaintiffs, include "certificate of analysis," "COA," or "test* w/5 of dimethylformamide OR DMF OR raw material OR solvent OR catalyst." We also searched these documents for any communications discussing the retention or destruction of documents, including COAs and related documents for DMF.  The specific search terms for this search have also been provided separately to plaintiffs, but include broad terms such as "legal hold," "litigation hold," and "ordinary course disposition."  Because internal communications within ZHP about these issues may not have been in English, we also included Chinese search terms.  The Chinese language search terms were reviewed with assistance from ZHP's Chinese outside counsel, JTN, which has been involved in this case since June 2021.

In addition to the communications described above, we also reviewed communications with FTI – ZHP's e-discovery vendor, which was integrally

---

[2]    As an additional measure, we also searched the custodial file of Qiangming Li, who is the Director of the QC Department of the site where ZHP's valsartan API is manufactured and Ms. Kuang's supervisor.  As such, he has responsibility for the laboratory in which the third-party supplier's COAs for DMF are evaluated and where ZHP's internal testing is conducted. Although we understand that Mr. Li did not have any personal oversight over the approval of the request to destroy the DMF COAs, in an abundance of caution, we reviewed Mr. Li's communications and other documents for any discussions about the collection or production of COAs (or related documents) for solvents used in the manufacture of valsartan API.

Adam Slater
November 11, 2025
Page 6

involved in the collection of documents related to valsartan – for discussions related to the collection or production of COAs using the terms described above.

We also reviewed communications with Ms. Kong, Ms. Kuang, or involving Duane Morris or FTI related to ZHP's discovery efforts generally in this litigation and not limited to the COAs or testing materials for solvents. This broad search included communications that hit on the term "valsartan" and "discovery" or "collection" or "document request" or "Schneider" or "order."

Finally, we searched for communications with plaintiffs' counsel that may have been forwarded to ZHP by Duane Morris. We understand from Duane Morris that they recall that the primary plaintiffs' attorney involved in discovery-related discussions related to ZHP was Behram Parekh. His name was included in the search terms, along with your name and others who represent plaintiffs and have been involved in discussion with ZHP's counsel on discovery matters. The purpose of this search was to identify any particular discussions about the DMF COAs that may have occurred between ZHP's counsel and plaintiffs' counsel that were then forwarded to ZHP.

### b. ZHP Recent Emails

We also undertook to search Ms. Kong and Ms. Kuang's emails through the end of 2024 for any potentially relevant communications related to the issues before the Court. These searches were designed to capture communications between the date of collection through the end of 2024 (when plaintiffs first raised the issue of COAs with ZHP's current counsel) related to the issues before the Court. Because these emails could not be searched using Boolean or other complex search strings, these searches consisted of simpler phrases and terms. We also reviewed all communications between Ms. Kong and Ms. Kuang (without any date or term limitations).

### 2. REVIEW OF DUANE MORRIS' FILES

Duane Morris independently reviewed its own files for any communications or other documents related to plaintiffs' interest in the DMF COAs, the collection or production of those COAs, and/or communications with ZHP regarding the litigation hold or record retention and disposition issues. The review focused on the communications between former Duane Morris attorney Joe Ferretti and plaintiffs' counsel or ZHP. Mr. Ferretti was responsible for valsartan discovery during the relevant period between early 2020 and his departure from Duane Morris in early

Adam Slater
November 11, 2025
Page 7

2021. In particular, he led the efforts to collect and produce hard copy manufacturing documents, including batch records, valsartan API COAs, and testing-related documents. In addition to reviewing Mr. Ferretti's files, Duane Morris also reviewed the files of Seth Goldberg and Jessica Priselac, other Duane Morris attorneys and former ZHP counsel. Finally, as Mr. Goldberg and Mr. Ferretti are no longer at the firm, Duane Morris spoke to both attorneys to understand their recollection of plaintiffs' interest in discovery related to the COAs for solvents.

### 3. <u>REVIEW OF FTI'S FILES</u>

ZHP's e-discovery vendor, FTI, has been involved in the litigation since the outset of discovery. Frances Chen, an FTI manager based in Hong Kong, managed ZHP's collection of both hard copy and electronic files, including coordinating with ZHP employees as well as the scanning vendor. Jonathan Roberts, an FTI director based in the United States, oversaw the review and production of ZHP documents. Given the difficulty of searching productions for hard copy documents due to imprecise OCR scanning, we asked Ms. Chen and Mr. Roberts to confirm our understanding that the DMF COAs were not in ZHP's valsartan production. We also asked them to review their email files for any communications related to plaintiffs' request for – or the collection or production of – COAs for solvents.

### 4. <u>REVIEW OF SKADDEN'S FILES</u>

Skadden transitioned into the role of ZHP's primary counsel in the valsartan litigation in early 2022. All decisions points on discovery-related issues went through Rich Bernardo. Prior to October 2024, Mr. Bernardo has no recollection of having any communications with plaintiffs' counsel, other than those that occurred on the record at the depositions of Drs. Hecht and Xue, regarding ZHP's production of solvent COAs or legal hold obligations pertaining to those COAs. Nonetheless, in an abundance of caution, we reviewed Mr. Bernardo's emails containing any reference to a broad set of terms for communications related to the issues before the Court. As with all the other search terms described in the letter, these terms are set forth in Exhibit A.

*    *    *    *    *    *

Adam Slater
November 11, 2025
Page 8

      We are hopeful that this letter provides you enough visibility into the methodology we employed in conducting our investigation.  We believe that that searches we have conducted go well-beyond "reasonable" searches to answer the questions raised by the Court. Nevertheless, we are willing to consider additional searches that plaintiffs believe are warranted.  Please let us know once you are ready to further meet and confer on these issues.

      Sincerely,

      Milli Kanani Hansen

cc:    Christopher Geddis
      George Williamson
      Richard Bernardo
      Nina Rose