# Exhibit A

# KIRKLAND & ELLIS LLP

601 Lexington Avenue
New York, NY 10022
United States

Jessica Davidson, P.C.
To Call Writer Directly:
+1 212 446 4723
jessica.davidson@kirkland.com

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

February 17, 2026

**VIA EMAIL**

Honorable Renée Marie Bumb
United States District Court
Mitchell H. Cohen Building and
U.S. Courthouse
Courtroom 3D
4th and Cooper Streets
Camden, New Jersey 0810

Honorable Thomas I. Vanaskie (Ret.)
Special Master
Stevens & Lee
1500 Market St., East Tower,
Suite 1800
Philadelphia, Pennsylvania 19103

Re:     *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
No. 1:19-md-2875-RMB (D.N.J.)

Dear Judge Bumb and Judge Vanaskie:

I am writing on behalf of Defendants to lay out Defendants' proposal for the selection and management of the Wave Three bellwether trial pool cases. The parties met and conferred by videoconference on February 12, 2026, and any areas of agreement are noted below.

As set forth in more detail below, Defendants propose the following bellwether protocol:

- Wave Three bellwether cases should be selected from the pool of primary colorectal cancer cases that: (1) do not involve Mylan or Hetero (the settling defendants); and (2) do not include allegations regarding losartan or irbesartan. There are approximately 180 colorectal cancer cases in the MDL proceeding that fit this description and Defendants will meet and confer with Plaintiffs' counsel to confirm this list.

- Prior to selection of the Wave Three bellwether cases, Plaintiffs' counsel should be required to certify that the Plaintiffs in each of the colorectal cases that meet the requirements above still intend to proceed to trial on their claims and that they have identified a physician/expert willing and able to attest that the Plaintiff's use of Valsartan containing NDMA or NDEA caused or substantially contributed to the Plaintiff's development of colorectal cancer.

# KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 2

- The Court should then randomly select five of the certified colorectal cases as Wave Three bellwether candidates to be worked up through fact and expert discovery (and five backup cases to replenish the pool if cases are dismissed thereafter).

- Plaintiffs should be required to periodically recertify that the bellwether candidates still intend to proceed with their claims (e.g., at the end of fact discovery; prior to the deadline for Defendants' expert reports; prior to the deadline for Defendants' experts' depositions).

- Defendants' expert reports should not be due until *after* Plaintiffs' experts have been deposed to reduce the burden on Defendants in the event cases are dismissed at that point.

- Plaintiffs should be required to pay Defendants' costs and/or expert fees if any of the five bellwether cases (or further replacements) are dismissed following the deadline to certify their intent to proceed with their claims.

- Defendants should be permitted to select the first Wave Three bellwether trial case from the final pool of five cases, with Plaintiffs to choose the second trial.

Below, we discuss each of these steps in more detail.[1]

## I.      IDENTIFICATION OF WAVE THREE POOL

Consistent with the Court's comments at the February 6, 2026 case management conference ("February 6 CMC"), Defendants propose that the Wave Three bellwether pool be limited to cases involving colorectal cancer. Specifically, Defendants propose that the Wave Three bellwether trial candidates be selected from all MDL personal injury cases that involve an allegation that the Plaintiff developed primary colon, rectal, or colorectal cancer as a result of using

---

[1]      Given the Court's recent statements about Plaintiffs' continuing obligation to assess viability of claims and their clients' interest in pursuing them, Defendants have asked to meet and confer with Plaintiffs regarding broader case management issues separate and apart from the Wave Three bellwether process. Defendants anticipate submitting a proposal on overall case management in advance of the next case management conference.

# KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 3

valsartan but do not: (1) include claims against Mylan or involve a Plaintiff who received valsartan manufactured using Mylan API; (2) include claims against Hetero or involve a Plaintiff who received valsartan manufactured using Hetero API; or (3) involve claims that a Plaintiff was injured as a result of using losartan or irbesartan. In addition, Defendants do not believe that *Lexecon* concerns should be an impediment to including a case in the overall Wave Three bellwether pool. While Defendants reserve their *Lexecon* rights, these issues can be addressed after Rule 702 motions and motions for summary judgment are decided by the MDL Court. Defendants propose defining the overall Wave Three pool in this manner for several reasons.

*First*, as the Court noted at the February 6 CMC, the next round of bellwether candidates should involve colorectal cancer claims given the time and resources the parties and their experts spent preparing to address the colorectal cancer claims in *Garcia* and *Suits*, the last two remaining Wave Two bellwether cases, prior to Plaintiffs' dismissal of those cases. (2/6/26 Tr. 10:4-10.) While Plaintiffs indicated during the parties' meet and confer that they intend to propose that the Wave Three bellwether trial pool involve both colorectal and liver cancer cases, inclusion of liver cancer cases would be inefficient. For one thing, the parties have already worked up, and this Court has resolved on causation grounds, liver cancer claims in *Roberts*. Moreover, the *Roberts* plaintiffs have appealed the Court's decision in that case, and the issue of causation with respect to liver cancer (including the threshold question of whether Plaintiffs' experts can establish that valsartan containing NDMA is even capable of causing liver cancer) is therefore before the Third Circuit. It makes little sense to proceed with another liver cancer case while that appeal is pending,

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 4

particularly given that the Court has yet to evaluate a case involving colorectal cancer, which is the most common cancer alleged in the MDL personal injury pool.

*Second*, cases involving Mylan and Hetero should be excluded from the pool due to the pending settlements of those Defendants' inventories of personal injury claims. The parties also have yet to exchange liability expert disclosures concerning Mylan and Hetero, adding another layer of complexity and delay to the potential workup of cases involving those Defendants.[2] And, from a practical perspective, the potential Wave Three pool is more than sufficient without inclusion of Mylan and Hetero cases. With respect to Mylan, Plaintiffs agree that cases involving Mylan products should be excluded from Wave Three.

*Third*, including cases that involve losartan and irbesartan claims would unnecessarily complicate the trial work up process, particularly given that fact discovery has not been completed with respect to losartan/irbesartan claims. While Defendants have produced document discovery, company witness depositions were deferred while Plaintiffs focused on the valsartan personal injury bellwether process. Thus, including cases that involve losartan/irbesartan allegations would inevitably delay the Court's resolution of the key issue that the bellwether cases are intended to resolve: whether Plaintiffs have admissible expert evidence capable of supporting their claims that the use of recalled valsartan caused a Plaintiff's colorectal cancer.

---

[2]    The parties have not yet exchanged liability expert disclosures concerning Aurobindo, either.

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 5

**Fourth**, the parties appear to agree that *Lexecon* should not prevent a case from being included in the Wave Three bellwether pool of cases. Plaintiffs have, however, indicated that they have an objection to the MDL Court addressing Rule 702 and dispositive motion rulings in cases subject to a *Lexecon* objection. Defendants disagree. MDL courts are charged with resolving pretrial matters in a coordinated and efficient manner, including by working up bellwether cases, weighing the admissibility of expert testimony, and deciding whether a bellwether Plaintiff's case can survive summary judgment. *See, e.g.*, *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) (recognizing that the "pretrial" phase of a case is broad, including "discovery motions, motions to amend, to dismiss, for **summary judgment**, and to determine class certification") (emphasis added); *Hooper v. Ethicon, Inc.*, 2020 U.S. Dist. LEXIS 250391, at *4-5 (E.D. Tenn. Sept. 4, 2020) ("Generally, the [MDL] court, rather than the transferor court, is in the better position to resolve motions for summary judgment because of the familiarity it has developed with the case before it."). The MDL Court need only address *Lexecon* issues following completion of motion practice and prior to any case being remanded or set for trial.

Applying these criteria, Defendants have identified approximately 180 eligible colorectal cases from which the Wave Three bellwether candidates should be selected.

## II.    SELECTION OF WAVE THREE BELLWETHER CANDIDATES

Within 60 days of the Court's issuance of a case management order establishing the Wave Three bellwether process, Plaintiffs should be required to certify that each of the potentially eligible colorectal cancer cases meets the following requirements to be selected as a bellwether

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 6

candidate: (1) the Plaintiff has been consulted and wishes to proceed to trial; and (2) Plaintiffs' counsel have identified a physician or expert willing and able to provide an initial attestation that exposure to valsartan containing NDMA/NDEA caused or substantially contributed to each Plaintiff's colorectal cancer. Any case that Plaintiffs are unable to certify in this manner should be dismissed with prejudice. This will allow the Court and the parties to identify a pool of colorectal cases from which to select bellwether candidates that are in a position to proceed to the Rule 702/motion for summary judgment stage without being dismissed.

Once the certification period is complete, the Court should randomly select five certified cases to be worked up as the Wave Three bellwether trial candidates, as well as five alternate cases that can be substituted in as bellwether cases if any of the original five cases are dismissed. The Court previously used random selection to identify the initial pool of candidates for the Wave Two bellwether trial, a common practice in MDL proceedings to avoid outlier cases. (*See* 12/4/24 CMC Tr. 14:11-14 ("You're going to get to me a list of the ZHP, Teva, Torrent-only cases, and I'm going to use a random selector to select five more cases to be identified for trial. I'll let you know what those five cases are.").)

## III.    FACT DISCOVERY IN BELLWETHER CASES

Following the selection of the bellwether candidates and alternates, the parties should proceed with fact discovery in the five selected bellwether cases. Similar to the procedure used in Wave Two, fact discovery should include the submission of updated Plaintiff Fact Sheets, medical record discovery, and fact witness depositions.

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 7

At the February 6 CMC, the Court indicated that the parties should propose a "roadmap" throughout the Wave Three bellwether process to ensure that the trial candidates remain on track. (*See, e.g.*, 2/6/26 Tr. 10:22-11:14; 16:8-24; 18:18-23.) To that end, Plaintiffs' counsel should be required to recertify at the conclusion of fact discovery that each of the five bellwether candidates intends to proceed with the case. If Plaintiffs' counsel are unable to provide this certification in any of the five initial bellwether cases, that case should be dismissed with prejudice and replaced with one of the alternate cases selected by Defendants, which will proceed immediately to fact discovery. *See, e.g.*, Case Mgmt. Order No. 33, ECF No. 513 ¶¶ 3-4, *In re Proton-Pump Inhibitor Prod. Liab. Litig.*, No. 1:17-MD-2789 (D.N.J. Nov. 20, 2019) (Ex. 1) (providing that, if plaintiffs dismiss a bellwether case, defendants may select a replacement case from the remaining eligible cases).

In addition, as set forth in Section VI, below, any Plaintiff whose claim is dismissed at this point should be required to pay costs, as is presumptively allowed under Fed. R. Civ. P. 54(d)(1), following submission of a bill of costs to the clerk of court. In addition, depending on the circumstances and timing of dismissal, Defendants should be permitted to seek recovery of Defendants' expert fees and/or attorneys' fees as appropriate.

## IV. EXPERT DISCOVERY IN BELLWETHER CASES

Once fact discovery is complete in five bellwether cases, the Plaintiffs should be required to provide expert reports on the question of specific causation and, as in Wave Two, identify any

# KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 8

previously disclosed general causation expert whom they intend to bring to trial. Plaintiffs'

causation experts should then be deposed to allow Defendants to test the bases of their opinions.

Notably, in *Roberts* and the Wave Two bellwether cases, Plaintiffs insisted that Defendants

submit their responsive expert reports ***before*** any of Plaintiffs' experts were deposed. (*See, e.g.*,

11/19/24 letter from D. Nigh (ECF No. 2932).) Thus, Defendants were required to expend

significant time and resources developing responsive expert reports in the *Suits* and *Garcia* cases,

only to have those cases dismissed when Plaintiffs' experts faced depositions (*Garcia* was

dismissed after the parties completed the vast majority of the deposition of the Plaintiff's specific

causation expert and had deposed a different expert in the case; *Suits* was dismissed just days

before Plaintiff's primary specific causation expert was set to be deposed and after two other

experts in the case were deposed). This resulted in Defendants wasting tens of thousands of dollars

in expert fees.

In light of these events, the Court should permit Defendants to depose the Wave Three

bellwether candidates' specific causation experts—and require Plaintiffs' counsel to again certify

that they remain committed to proceeding to trial following those depositions—***before*** Defendants

have to spend significant sums developing rebuttal expert evidence. This is a common practice in

MDL proceedings, including in this District. *See, e.g.*, *In re Johnson & Johnson Talcum Powder*

*Prods. Mktg. Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2738, 2024 U.S. Dist. LEXIS 84169,

at *1-2 (D.N.J. Apr. 30, 2024) (any depositions of plaintiffs' experts "must be completed on or

before May 17, 2004"; defendants shall designate their experts "on or before May 21, 2024"); *see*

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 9

*also, e.g.*, Case Mgmt. Order No. 7 (Setting New Deadlines for Track One Cases) at 2, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 876 (N.D. Ohio Aug. 13, 2018) (Ex. 2) (requiring the plaintiffs in certain designated cases to serve expert reports by February 8, 2019, "and, for each expert, provide two proposed deposition dates between February 18 and March 15, 2019," with defendants to serve expert reports and provide deposition dates by March 26, 2019) (emphasis omitted).[3]

## V.    RULE 702 HEARING AND BELLWETHER TRIAL SELECTION

At the conclusion of specific causation expert discovery (including the submission of expert reports by Defendants' causation experts and the depositions of those experts), Plaintiffs should be required to certify once again that they intend to proceed to trial in each bellwether candidate's case. Any cases that are not certified at this point should be dismissed with prejudice and, as set forth in Section VI, any Plaintiff whose claim is dismissed at this point should be required to pay both the Defendants' costs and expert fees in connection with the case.

---

[3]      *Accord* Am. Pretrial Order No. 22 (Second Revised Schedule Regarding Issues Related to Class Certification) at 1-2, *In re Nat'l Hockey League Players' Concussion Inj. Litig.*, No. 0:14-md-02551-SRN-BRT, ECF No. 605 (D. Minn. Sept. 8, 2016) (Ex. 3) (requiring the plaintiffs to disclose their experts by December 8, 2016 and make those experts available for deposition within 45 days, and allowing the defendant until April 27, 2017 to identify its experts); Order Re: Expert Discovery Schedule at 1, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, No. 2:01-md-01407-BJR, ECF No. 340 (W.D. Wash. Mar. 22, 2002) (Ex. 4) (scheduling deposition of plaintiffs' experts to be completed before defendants' Rule 26 disclosures); *Booker v. P.A.M. Transp., Inc.*, No. 2:23-cv-18 WJ/KRS, 2024 U.S. Dist. LEXIS 200621, at *28-29 (D.N.M. Nov. 4, 2024) (explaining that "it is normal . . . that a plaintiff's expert witness [] be deposed before the defendant makes his own expert disclosures"); *Fulton Fin. Advisors v. Natcity Invs., Inc.*, No. 09-4855, 2016 U.S. Dist. LEXIS 134212, at *1-2 (E.D. Pa. Sept. 28, 2016) (requiring that plaintiff's experts serve their reports and be deposed before defendant disclosed its experts); *Morgan v. Hanna Holdings, Inc.*, No. 07-803, 2010 U.S. Dist. LEXIS 31367, at *6 (W.D. Pa. Mar. 30, 2010) (approving case management order requiring any depositions of plaintiff's experts to be completed on or before May 1, 2010 and any defense expert reports to be served on or before May 15, 2010).

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 10

As in *Roberts*, and as was the plan in the Wave Two cases, the Court should hold a hearing to evaluate whether the opinions of the general and specific causation experts disclosed in each case are admissible under Rule 702 and *Daubert*. Any case that remains viable following the Court's 702 rulings should proceed to expert disclosures and depositions on issues other than causation, e.g., damages, and then to summary judgment. If more than one of these cases survives summary judgment, Defendants should be permitted to select the first colorectal cancer case to proceed to trial. This is only fair given Plaintiffs' prior dismissals of all four of the Wave Two bellwether candidates. Plaintiffs should then be permitted to pick the second bellwether trial case from any of the remaining Wave Three bellwether candidates.

## VI.    EFFORTS TO DETER LATE DISMISSAL OF BELLWETHER CASES

At the February 6 CMC, the Court instructed the parties to "[c]ome up with a plan" for the Wave Three bellwether process so that late dismissal of bellwether candidates "never happens again." (2/6/26 Tr. 15:23-16:1) The Court further explained that "if it happens again, everyone's on notice. You've been warned. I will impose fees and costs." (*Id.*; *see also id*. 16:18-24 (the Court noting that "the parties are forewarned that if I find any engagement of bad faith on the part of counsel, I'm imposing fees and costs. I think that's the only way that I can proceed forward as a deterrent so that this does not happens again.").)

Consistent with the Court's statements, Defendants have proposed the roadmap for the Wave Three bellwether cases set forth above, which includes periodic certifications by Plaintiffs that the bellwether candidate cases remain "on track." (*Id.* 15:3-11 ("I'm going to have you folks

# KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 11

come up with some sort of steps along the way, gauges, to cut down on the unnecessary expenditure of resources here. Because I'm not going to accept on the next case that the plaintiff has decided that he or she does not wish to pursue his case. That is a decision that has to be made early on, has to be made consistently, every month or so, so that the defendants aren't left holding the bag with all of these expenditures.")

In addition, as noted above, Defendants propose that the Court impose consequences of dismissal after such periodic certifications are made. Specifically, Defendants propose that, for any case dismissed with prejudice after being selected as a bellwether candidate, the plaintiff should be required to pay Defendants' costs (including, e.g., medical record collection fees, deposition costs, and other costs) in connection with the case as presumptively allowed under Fed. R. Civ. P. 54(d)(1). *See In re Paoli R.R. Yard PCB* Litigation, 221 F.3d 449, 453 (3d Cir. 2000) ("The prevailing party in a federal civil action is entitled to costs, 'as of course,' except in cases in which either a federal rule or statute otherwise provides, or in cases in which the district court 'otherwise directs.'"); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 376-77 (2013) (describing the "venerable presumption" that prevailing parties are entitled to costs). While the Third Circuit has not specifically addressed this issue, the Court should follow the position of the Seventh and Tenth Circuits, as well as prior cases in the District of New Jersey, which have found that the defendant is entitled to "costs other than attorney's fees" as contemplated by Federal Rule of Civil Procedure 54(d)(1) as the "prevailing party" following a voluntary dismissal with prejudice. *See Ewing v. Hillstone Rest. Grp.*, Civ. No. 21-13812, 2023 WL 1470185, at *3 (D.N.J.

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 12

Feb. 2, 2023). Notably, award of these costs does not require a finding of bad faith on the part of

plaintiff or other exceptional circumstances, and may be initiated by a simple application to the

clerk of court. *See id.* at \*4; *see also In re Paoli R.R. Yard PCB Litig.*, 221 F.3d at 468 (holding

that a district court ***may not consider*** the losing party's good faith in pursuing the instant litigation

in reviewing a clerk's award of costs to the prevailing party under Rule 54(d)(1)) (emphasis added).

MDL courts have adopted similar protocols imposing costs in connection with dismissed

bellwether cases. *See, e.g.* Order, ECF No. 14081, *In re Cook Medical, Inc., IVC Filters Marketing,*

*Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-ML-02570-RLY-TAB (S.D. Ind. Aug. 25, 2020) (Ex.

5) (granting costs incurred in connection with bellwether case that dismissed before trial).

In addition, should a bellwether Plaintiff choose to voluntarily dismiss his or her case after

certifying that the Plaintiff intends to move forward following the depositions of the Plaintiff's

experts, the Court should permit Defendants to seek expert and/or attorneys' fees. Specifically,

any such Plaintiff should be required, within seven (7) days of dismissal, to show good cause and

obtain an order from the Court finding same. In the absence of such a finding, Defendants should

be permitted to move for recovery of attorneys' fees and related nontaxable expenses, including,

but not limited to, expert fees, as permitted by Fed. R. Civ. P. 54(d)(2).

\*  \*  \*

Defendants are prepared to address this proposal, and answer any questions the Court may

have, at the Court's convenience. Thank you for your consideration.

## KIRKLAND & ELLIS LLP

Honorable Renée Marie Bumb
Honorable Thomas I. Vanaskie (Ret.)
February 17, 2026
Page 13

Sincerely,

Jessica Davidson, P.C.

# Exhibit 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION | : : : : : : : : | MDL NO. 2789 Civil Action No. 1:17-MD-2789 JUDGE CLAIRE C. CECCHI |

## CASE MANAGEMENT ORDER NO. 33
## (SELECTION OF BELLWETHER DISCOVERY CASES AND TRIAL CASES)

The Court hereby issues the following Case Management Order ("CMO") to govern the selection of Bellwether Discovery Cases and Bellwether Trial Cases.

I.      Eligibility Requirements for the Bellwether Discovery Cases

1.      The Plaintiffs whose cases are eligible for selection for bellwether discovery are Plaintiffs who, as of May 31, 2019, had: (a) complaints pending in this MDL proceeding that had been served upon all named Defendants; (b) provided a Plaintiff Fact Sheet that was "substantially complete in all respects" as set forth in Paragraph II.B.1 of Case Management Order No. 9 regarding Plaintiff Fact Sheet and PFS Document Production; and (c) in accordance with Section III of Case Management Order No. 9, provided "Stage 1 Claim" evidence with respect to each named defendant, meaning Plaintiffs who had produced a record identifying the use of at least one of each named defendant's proton pump inhibitor ("PPI") products (hereinafter, the "Eligible Cases").[1]

---

[1] As noted below, the parties contemplate a period of time for the parties to meet and confer over which cases are Eligible Cases.

1

## II.   Selection Procedure for the Bellwether Discovery Cases

1.    The parties are meeting and conferring to develop a list of the Eligible Cases. Any unresolved disputes about the eligibility of a particular case for bellwether discovery shall be presented to and decided by the Court. After all such disputes have been resolved, the Court and the parties will have a list of all Eligible Cases (the "Eligible Cases List").

2.    Thereafter, each side shall select five (5) cases from the Eligible Cases List and confidentially inform the Court of the selections. The Court shall remove the ten (10) selected cases from the Eligible Cases List and then provide the remaining Eligible Cases to the Clerk. A randomizer shall then be used by the Clerk to randomly select 200 cases from the remaining Eligible Cases, for a total of 210 cases ("the Remaining Eligible Cases").

3.    From the group of 210 cases, the PSC shall select sixteen (16) cases and the Defendants shall select sixteen (16) cases. From the group of thirty-two (32) cases selected by the PSC and Defendants, the PSC shall strike six (6) cases and the Defendants shall strike six (6) cases, leaving a pool of twenty (20) cases for core, case-specific discovery (the "Bellwether Discovery Cases").

4.    If at any time Plaintiffs dismiss one or more of the Bellwether Discovery Cases, the Court will allow Defendants to select an equal number of replacement cases from the Remaining Eligible Cases. If circumstances arise regarding the replenishment of cases whereby Defendants desire a different remedy, or Plaintiffs believe they should be entitled to replenishment or a different remedy, the Court may further meet and confer with the parties to determine whether any other replenishment procedures should be adopted.

III.    Selection Procedure for Bellwether Trial Cases

1.    From the 20 Bellwether Discovery Cases, six (6) cases shall ultimately be chosen to serve as trial cases ("Bellwether Trial Cases). Following the completion of core, case-specific discovery in the Bellwether Discovery Cases, the parties shall submit either an agreed proposed case management order, or competing proposals if agreement cannot be reached, to govern the selection of six (6) of the Bellwether Discovery Cases for further case-specific discovery and trials. The selection process in that proposed case management order shall incorporate the following requirements: (i) the first trial of a Bellwether Discovery Case shall involve a plaintiff who does not reside in New Jersey and has circumstances pursuant to which applicable choice-of-law would not require the application of New Jersey substantive law; (ii) the second trial of a Bellwether Discovery case shall involve a plaintiff who resides in New Jersey and/or has circumstances pursuant to which applicable choice-of-law would dictate the application of New Jersey substantive law (a "New Jersey Plaintiff"); and (iii) the sequence of future third, fourth, fifth and sixth trials of Bellwether Discovery Cases shall be determined by the Court at a later date.

IV. *Lexecon* Waivers

1.    All Plaintiffs and all Defendants to which this order applies[2] have agreed to affirmatively waive their right under *Lexecon v. Milberg Weiss*, 523 U.S. 26 (1998) to object to this Court overseeing the trial of the case, to the extent necessary, only for trials 1 and 3 through 6. Because the second trial shall involve a New Jersey Plaintiff, no *Lexecon* waiver is necessary

---

[2] Novartis Pharmaceuticals Corporation, Novartis Institutes for Biomedical Research, Inc., Novartis Vaccines and Diagnostics, Inc., and Novartis Corp. have not joined in this bellwether plan, and have not provided a *Lexecon* waiver, because these entities have taken the position that they are not proper parties in this litigation.

or has been given.  Defendants' *Lexecon* waivers herein are expressly conditioned upon each of

the 6 trials being separate, individual plaintiff trials, not multi-plaintiff trials.


IT IS SO ORDERED, this 20 day of  November , 2019.

HON. CLAIRE C. CECCHI
UNITED STATES DISTRICT JUDGE

4

# Exhibit 2

Case: 1:19-md-02875-RMB-SAK   Document 3258-2/13   Filed 03/04/26   Page 21 of 32
PageID: 129777
Case: 1:17-md-02804-DAP   Doc #: 870   Filed: 08/13/18   1 of 2. PageID #: 20533

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) ) ) ) ) ) | CASE NO. 1:17-MD-2804<br><br>JUDGE POLSTER<br><br>**CASE MANAGEMENT ORDER NO. 7 SETTING NEW DEADLINES FOR TRACK ONE CASES** |

This Court earlier set case management deadlines in connection with the "Track One Cases." *See* CMO-1 at 6-8 (docket no. 232). The parties unanimously requested extension of those deadlines and submitted various proposed schedules. Having reviewed those proposals, the Court now enters the following amended case management schedule.

**August 31, 2018** – The parties shall exchange lists of initial fact witness depositions. If the parties agree, depositions may proceed immediately. As much as possible, however, depositions shall be taken of witnesses only after relevant documents have been produced. Thus, the majority of depositions shall occur between October 25, 2018 and January 25, 2019.

**October 25, 2018** – For all parties *except* retail pharmacy defendants: (1) production of documents shall be substantially complete; and (2) traditional 30(b)(6) depositions shall be substantially complete (i.e., 30(b)(6) depositions concerning discovery-related issues, such as types and location of documents and databases).

**November 9, 2018** – For retail pharmacy defendants: (1) production of documents shall be substantially complete; and (2) traditional 30(b)(6) depositions shall be substantially complete (i.e.,

30(b)(6) depositions concerning discovery-related issues, such as types and location of documents and databases).

**January 25, 2019** – all 30(b)(6) and fact depositions shall be completed.

**February 8, 2019** – Plaintiffs shall serve expert reports and, for each expert, provide two proposed deposition dates between **February 18 and March 15, 2019**.

**March 26, 2019** – Defendants shall serve expert reports and, for each expert, provide two proposed deposition dates between **April 8 and May 3, 2019**.

**May 13, 2019, 4:00 p.m.** – Deadline for *Daubert* and dispositive motions.

**June 10, 2019, 4:00 p.m.** – Deadline for responses to *Daubert* and dispositive motions.

**July 1, 2019, 4:00 p.m.** – Deadline for replies in support of *Daubert* and dispositive motions.

**July 16, 2019** – Hearings on *Daubert* and dispositive motions, or as otherwise set by the Court, if necessary.

**August 22, 2019, 12:00 noon** – Final Pretrial Hearing.

**September 3, 2019** – Trial.

In a separate order, the Court will set deadlines for motions in limine, deposition designations, jury instructions, jury questionnaire, and other pretrial submissions.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 13, 2018**

# Exhibit 3

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

IN RE: NATIONAL HOCKEY LEAGUE )
PLAYERS' CONCUSSION INJURY ) MDL No. 14-2551 (SRN/JSM)
LITIGATION )
)                    Amended Pretrial Order No. 22
This Document Relates to:  ALL ACTIONS ) Second Revised Schedule
)                    Regarding Issues Related to
_____ ) Class Certification

The Court hereby adopts this Pretrial Order, which supersedes Pretrial Order No.

21 [Doc. No. 555], and shall govern deadlines related to class certification.

1.      Plaintiffs shall file their motion for class certification and supporting

memorandum on or before December 8, 2016.  In their memorandum, plaintiffs

shall identify all experts and other witnesses upon whom they rely in support of

their motion (including the information contemplated by Fed. R. Civ. P.

26(a)(2)(B) as to experts) and shall attach as exhibits any expert reports or

affidavits upon which they rely.

2.      Plaintiffs shall make their class certification experts and other witnesses

identified in their memorandum available for deposition within 45 days of filing

their motion for class certification.  The parties shall confer in good faith about the

scheduling of these depositions and shall present any disputes or problems to the

Court.

3.      The NHL shall file its memorandum in opposition to class certification on

or before April 27, 2017.  In its memorandum, the NHL shall identify all experts

and witnesses upon whom it relies in opposition to plaintiffs' motion (including the

information contemplated by Fed. R. Civ. P. 26(a)(2)(B) as to experts) and file as exhibits any expert reports or affidavits upon it relies.

4. The NHL shall make its class certification experts and other witnesses identified in its memorandum available for deposition within 30 days of filing its opposition to plaintiffs' motion for class certification. The parties shall confer in good faith about the scheduling of these depositions and present any disputes or problems to the Court.

5. Plaintiffs shall file their reply memorandum in support of class certification on or before June 29, 2017.

6. If Plaintiffs conclude that rebuttal expert reports are necessary (not "new" expert reports but true "rebuttal" expert reports) and choose to file them with their reply brief, the NHL may seek leave of the Court to file a sur-reply and/or take additional deposition testimony. At that time, the Court will consider the nature of the rebuttal expert testimony and whether further discovery and briefing is warranted.

7. As set forth in this Court's Order of August 19, 2016 [Doc. No. 586], plaintiffs and defendant shall each be permitted a total of 26,000 words for briefing on plaintiffs' motion for class certification. If a sur-reply is permitted, the Court will set a word limit for that document.

8. A hearing on class certification is set for July 11, 2017 at 9:30 a.m.

2

**IT IS SO ORDERED.**

ST. PAUL, MINNESOTA, this 8th day of September, 2016.

s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States District Judge

# Exhibit 4

Case 1:19-md-02875-RMB-SAK Document 3258-2 Filed 03/04/26 Page 28 of 32
Case 2:01-md-01407-BJR Document 340 Filed 03/22/02 Page 1 of 2
PageID: 129784

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

MAR 2 2 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                     DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

MDL NO. 1407

ORDER RE: EXPERT
DISCOVERY SCHEDULE

This document relates to all
actions

Having reviewed and considered the memoranda filed by both parties in support of their proposed expert discovery schedules, the court finds the following dates to afford an equitable apportionment of time between the parties to conduct expert discovery:

**EXPERT DISCOVERY SCHEDULE**

| | |
|---|---|
| Plaintiffs' Rule 26 disclosures on or before: | 10/01/02 |
| Defendants' Rule 26 disclosures on or before: | 1/03/03 |
| Depositions of Plaintiffs' experts complete by: | 12/02/02 |
| Depositions of Defendants' experts complete by: | 3/03/03 |
| Defendants' <u>Daubert</u> and other motions filed by: | 2/03/03 |
| Plaintiffs' <u>Daubert</u> and other motions filed by: | 4/30/03 |
| Oppositions to Defendants' motions filed by: | 3/05/03 |
| Oppositions to Plaintiffs' motions filed by: | 5/30/03 |

ORDER
Page - 1 -



MD 01 01407 S00000340

340

Case 1:19-md-02875-RMB-SAK   Document 3258-2   Filed 03/04/26   Page 29 of 32
Case 2:01-md-01407-BJR   Document 340   Filed 03/22/02   Page 2 of 2
PageID: 129785

Reply briefs to Defendants' motions filed by:      3/20/03

Reply briefs to Plaintiffs' motions filed by:      6/16/03

Daubert hearings to be scheduled after:            6/16/03

The parties are hereby ORDERED to abide by the above expert discovery schedule.

DATED at Seattle, Washington this 21st day of March, 2002.

_____
BARBARA JACOBS ROTHSTEIN
UNITED STATES DISTRICT JUDGE

ORDER
Page - 2 -

# Exhibit 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC ) | |
| FILTERS MARKETING, SALES ) | |
| PRACTICES AND PRODUCT ) | |
| LIABILITY LITIGATION ) | 1:14-ml-02570-RLY-TAB |
| _____ ) | MDL No. 2570 |
| ) | |
| This Document Relates to: ) | |
| ) | |
| Eddie C. Burrage ) | |
| 1:18-cv-00273-RLY-TAB ) | |
| _____ ) | |

**ORDER GRANTING THE COOK DEFENDANTS' REQUEST FOR COSTS**

On June 5, 2020, Plaintiff Eddie C. Burrage filed a Motion to Dismiss[1] his

bellwether case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

That rule provides that "an action may be dismissed at the plaintiff's request only by court

order, on terms that the Court considers fair."

After hearing argument from counsel at the status conference held on July 30,

2020, the court granted Plaintiff's Motion to Dismiss with prejudice and took the Cook

Defendants' request for sanctions under advisement. Based on the arguments of counsel,

the parties' submissions, the record, and the applicable law, the court finds the Cook

---

[1] *Burrage* is the second bellwether case represented by the Nations Law Firm which has been dismissed on Plaintiffs' motion. (*See* Filing Nos. 13354, 13894).

1

Defendants should be reimbursed the costs incurred in connection with the *Burrage* bellwether case.

**IT IS THEREFORE ORDERED** that Plaintiff shall pay all costs incurred by the Cook Defendants in preparation of the *Burrage* case between August 21, 2019, the day the court designated the *Burrage* case for a bellwether trial, and June 5, 2020, the date Plaintiff filed his motion for voluntary dismissal with prejudice.

**IT IS FURTHER ORDERED** that on or before September 8, 2020, the Cook Defendants shall file an itemized list of the costs incurred in the preparation of the *Burrage* case between August 21, 2019, and June 5, 2020.  Any objection to the Cook Defendants' costs shall be filed on or before September 22, 2020, and any reply shall be filed on or before September 29, 2020.

**SO ORDERED** this 25th day of August 2020.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

2