# Exhibit B



February 17, 2026

Honorable Thomas I. Vanaskie
Special Master
Stevens & Lee
1500 Market Street, East Tower, Suite 1800
Philadelphia, Pennsylvania 19103-7360

**Plaintiffs' Proposal for Wave 3 and Wave 4 Cases**

### I. History of the Bellwether Pool

In the Valsartan MDL, the initial set of bellwether cases was selected in approximately 2021. This was early in the litigation, prior to the exchange of general causation expert reports and before several later published scientific studies were available.

The Parties identified 28 cases for inclusion in the initial pool. In each of these cases, a maximum of four depositions were taken—two treating physicians, the Plaintiff, and their spouse or another fact witness with information about the Plaintiff's health and medical treatment. The cases then sat idle for years until this Court reactivated the pool in late 2024. At that time, the Parties agreed to proceed with the *Roberts* case for Wave 1, which was subsequently prepared and subjected to a *Daubert* hearing.

Wave 2 included the remaining 27 cases. However, the pool was substantially reduced through a series of limitations. First, Mylan and Aurobindo declined to waive *Lexecon*, reducing the pool from 27 cases to 11 cases (a 59.25% reduction), and two plaintiffs did not waive *Lexecon*. Second, two cases lacked subject matter jurisdiction, and the Parties agreed to dismiss those cases and allow them to be refiled in state court. The four Wave 2 cases were selected from this small pool of 7 remaining cases.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. 20016

T  – (202) 792-7927
F  – (202) 792-7927
W  – www.nighgoldenberg.com
E  – intake@nighgoldenberg.com

Washington D.C.
Minnesota
Kansas
Florida



## II. Plaintiffs' Proposal for Selecting Cases for Wave 3

The Court has determined that a primary objective in selecting cases for Wave 3 is to focus on the issue of specific causation. Plaintiffs propose that Plaintiffs and Defendants each select three liver cancer cases and three colorectal cancer cases (including colon and rectal cancer) from the overall pool of filed cases for a total of 12 cases in the Wave 3 pool.

On the Parties' meet and confer call, Defendants agreed that the pool should be expanded to all filed cases—so the parties agree on that point.

Defendants stated a preference to limit the cases to colorectal cancer cases but did not agree to including liver cancer cases.

Defendants also raised a question as to cases subject to *Lexecon.* Plaintiffs believe that should not be a consideration, as that will artificially narrow the pool of potential cases. The Court can later determine how to handle cases subject to *Lexecon* transfer, and the scope of its review of cases subject to *Lexecon* transfer, but that is not an issue that should be addressed at this point.

**A. Utilize the overall pool of filed cases for which a plaintiff fact sheet has been submitted.**

As previously discussed, the bellwether pool was selected before the exchange of general causation expert reports, resulting in an insufficient number of remaining cases. Accordingly, it appears the Parties agree that the bellwether cases should be chosen from the pool of filed cases where a plaintiff fact sheet has been submitted.

**B. Each party selects cases.**

Plaintiffs propose that the Plaintiffs and Defendants each select cases. This approach is preferable to random selection, as it requires that the parties attempt to

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. 20016

T   – (202) 792-7927
F   – (202) 792-7927
W  –  www.nighgoldenberg.com
E   –  intake@nighgoldenberg.com

Washington D.C.
Minnesota
Kansas
Florida



select cases that will fairly evaluate the specific causation issues. This will increase the chances that cases will proceed to a *Daubert* hearing on specific causation and provide helpful information to the parties and the Court. This balanced selection process ensures that the Court can better assess the presence and strength of expert support for the claims, advancing its stated goal.

### C. Liver and Colorectal Cancer Cases should populate the pool.

Each party should select cases in which the primary cancer type is either liver cancer or colorectal cancer. Within this MDL, approximately 40% of cases filed pertain to these two cancer types. For liver cancer, only one specific fact pattern has been developed in the *Roberts* case. With the guidance provided in the Court's recent *Daubert* order regarding the *Roberts* specific causation expert opinion, additional liver cancer cases should now be selected and specific causation expert reports prepared for those cases. For colorectal cancer, the parties have exchanged specific causation expert reports in the *Garcia* and *Suits* cases, and it is appropriate to continue working up additional colorectal cancer cases—the Parties agree on this point.

### D. Exclusion of Mylan from the Wave 3 cases.

The parties have agreed to exclude cases with Mylan defendants from Wave 3. However, this exclusion will significantly reduce the available case pool for the following reasons. Mylan is a defendant in nearly one-third of all PI cases. More importantly, plaintiffs with longer exposure histories are more likely to have used Mylan products because Mylan's contaminated valsartan entered the market at least 2 years before ZHP's contaminated product. This timing matters because of how prescriptions work: Plaintiffs are prescribed "valsartan" generically, not a specific manufacturer's product. Pharmacies select which manufacturer to dispense. Over time, patients who took valsartan for several

Nigh Goldenberg Raso & Vaughn, PLLC    T  – (202) 792-7927    Washington D.C.
14 Ridge Square NW    F  – (202) 792-7927    Minnesota
Third Floor    W  –  www.nighgoldenberg.com    Kansas
Washington, D.C. 20016    E  –  intake@nighgoldenberg.com    Florida



years typically used multiple pharmacies or had their pharmacy switch manufacturers. Therefore, plaintiffs with the highest cumulative NDMA exposure—who took valsartan for the longest periods—are statistically more likely to have received products from multiple manufacturers, including Mylan. Cumulative exposure is a factor in the evaluation of specific causation, thus excluding Mylan defendants will disproportionately exclude cases with potentially higher exposure levels.

Plaintiffs suggest that a reasonable compromise is for a Wave 4 pool of cases to be selected from the cases that utilized Mylan, on a date to be determined.

### III.  Proposed Specific Causation Evaluation Process.

Plaintiffs propose a two-stage process:

First, upon selection of a bellwether case, Plaintiff's counsel shall certify that the plaintiff understands their case has been selected as a bellwether trial case and is willing to proceed with fact discovery, including sitting for deposition. This ensures the plaintiff is engaged and committed at the outset.

Second, following completion of fact discovery and after Plaintiff's counsel has had the opportunity to review all discovery materials with a specific causation expert, Plaintiff's counsel shall confirm that their specific causation expert is willing to support the case and that the plaintiff is willing to proceed through expert discovery and trial preparation. This is appropriately timed after counsel has obtained the information necessary to make an informed assessment of the case's viability in consultation with the specific causation expert.

This process directly addresses the concern that has been raised. The process is transparent and efficient.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. 20016

T  – (202) 792-7927
F  – (202) 792-7927
W  –  www.nighgoldenberg.com
E  –  intake@nighgoldenberg.com

Washington D.C.
Minnesota
Kansas
Florida

**NGRV** | **NIGH GOLDENBERG RASO & VAUGHN**

### IV. Plaintiffs proposed for Wave 3 cases

The parties need to meet and confer as to the timing for each step; however, below are the Plaintiffs' proposed steps for the Wave 3 cases:

1) Parties to meet and confer and agree on the pool of cases (cases that are filed and without a Mylan defendant)

2) Plaintiffs and Defendants make their selections

3) Plaintiff counsel certifies that Plaintiff is or is not willing to proceed with fact discovery in a selected case. If not, a process will be instituted to replace that case.

4) Fact discovery (Plaintiff deposition, depositions of treaters/prescribers)

5) Plaintiff counsel confirms that it has a specific causation expert in place in a selected case and will proceed. If not, a process will be instituted to replace that case.

6) Plaintiff submits specific causation expert reports

7) Defendant submits specific causation expert reports

8) Specific causation expert depositions

9) *Daubert*/702 Motions

10) *Daubert*/702 Oppositions

11) *Daubert*/702 Replies

### VI.    Rejection of Wholesaler and Retailers' Broader Certification Proposals.

Wholesalers and Retailers have proposed an expansive certification requirement: that all plaintiff counsel reach out to all plaintiffs in the litigation to confirm they are alive, still represented by counsel, and still wish to proceed with their cases. This proposal should be rejected for several reasons.

Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW
Third Floor
Washington, D.C. 20016

T  – (202) 792-7927
F  – (202) 792-7927
W  – www.nighgoldenberg.com
E  – intake@nighgoldenberg.com

Washington D.C.
Minnesota
Kansas
Florida



First, it is untethered to the bellwether selection process. The concern the Court has identified relates to ensuring that selected bellwether cases will proceed to trial. Requiring status updates for thousands of non-bellwether cases does nothing to advance that objective.

Second, the proposal imposes a massive, inefficient administrative burden on counsel that provides no benefit to the bellwether selection process or case management objectives. The concern identified by the Court is ensuring that selected bellwether cases will proceed to trial without voluntary dismissal after significant resources have been expended. Requiring status updates for over fourteen hundred non-bellwether cases does nothing to address that concern. The process proposed by Plaintiffs directly targets the issue. The focus should remain on ensuring that the specific cases selected for bellwether treatment are viable and will proceed—not on conducting a census of the entire litigation inventory.

For these reasons, Plaintiffs respectfully request that the Court adopt the process outlined above. The proposed process appropriately addresses the Court's expressed concern while maintaining focus on the efficient development of the selected bellwether cases.

Respectfully,

Daniel A. Nigh
Nigh Goldenberg Raso & Vaughn, PLLC
14 Ridge Square NW Third Floor
Washington, D.C. 20016
p/f: 202-792-7927
e: dnigh@nighgoldenberg.com
*Counsel for plaintiffs*

| | | |
|---|---|---|
| Nigh Goldenberg Raso & Vaughn, PLLC | T  - (202) 792-7927 | Washington D.C. |
| 14 Ridge Square NW | F  - (202) 792-7927 | Minnesota |
| Third Floor | W  -  www.nighgoldenberg.com | Kansas |
| Washington, D.C. 20016 | E  -  intake@nighgoldenberg.com | Florida |