

38TH FLOOR   ONE OXFORD CENTRE   PITTSBURGH, PA  15219
412.263.2000     FAX: 412.263.2001
WWW.PIETRAGALLO.COM
DIRECT DIAL NO.:  412.263.1816
EMAIL:  cct@pietragallo.com

May 6, 2026

**Via ECF**

The Hon. Renée Marie Bumb
United States District Court Judge
District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets, Room 1050
Camden, NJ 08101

Special Master the Hon. Thomas Vanaskie
Stevens & Lee
1500 Market Street, East Tower, 18th Floor
Philadelphia, PA 19103

> Re:   *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*
> USDC, District of New Jersey, No. 1:19-md-2875-RMB

Dear Judge Bumb and Judge Vanaskie:

I write on behalf of the Defendants' Executive Committee to provide Defendants' positions with respect to the topics on the agenda for the conference with the Court on Friday, May 8, 2026.

1. **WAVE 3 BELLWETHER LIST OF PRESUMPTIVELY QUALIFIED WAVE THREE CASES**

   **A.  Wave Three Pool**

Pursuant to the Court's March 18, 2026 Order Establishing the Case Management Schedule for Wave Three Bellwether Cases (ECF No. 3261), the parties were instructed to work together to identify a presumptive pool of eligible Wave 3 cases that: (1) allege primary liver, colon, or rectal cancer resulting from use of valsartan containing nitrosamines; (2) do not involve claims related to API produced by Mylan or Hetero; and (3) do not include allegations involving losartan or irbesartan.

On March 13, 2026, Defendants served an initial list of 260 cases believed to be eligible under criteria 1 through 3 above. Within 45 days of that Order—by May 4, 2026—Plaintiffs were

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 2

required to confer with all of the named plaintiffs in the eligible pool and determine: (1) whether each plaintiff is alive; (2) whether the plaintiff wishes to continue the case; (3) whether the plaintiff understands the case may be selected for full discovery and trial. Over the course of the 45-day period, the parties exchanged revised lists reflecting updates to pool eligibility and some dismissals. These included edits based on the Court's April 15, 2026, Order instructing that the pool also exclude cases involving Aurobindo-manufactured API. (ECF No. 3271).

Pursuant to paragraph 3 of the Court's March 18, 2026 Order, on May 5, 2026, Plaintiffs served a purportedly final list of 131 cases from the pool that presumptively qualify for the Wave Three bellwether selection process (i.e., those Plaintiffs within the above-defined parameters who are willing to continue with full discovery and potentially trial). After further discussion on May 5th and May 6th, the parties arrived at a pool of 135 cases. (Ex. 1 – Joint Final Wave 3 Pool). Plaintiffs propose excluding from the current pool otherwise qualifying parties with pending substitution motions, as well as parties for whom suggestions of death have been filed but no substitution motion has yet been filed. Defendants are evaluating that position.

### B. *Lexecon* Issues

Pursuant to the Order, the parties will be prepared to discuss any *Lexecon* issues at the case management conference. The parties held a meet and confer on May 6, 2026, to discuss *Lexecon* issues for the 135 cases presumptively qualified for the Wave Three Bellwether Pool. The parties are scheduled to meet and confer again on May 7, 2026, prior to the CMC.

### C. Substitutions

The Court's March 18, 2026 Order also required that for any deceased Plaintiff for whom a suitable representative has not yet been substituted, Plaintiffs' counsel was required to serve  a

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 3

suggestion of death within 45 days of the Order, and must file a substitution of a representative

party within 90 days of the suggestion of death consistent with Fed. R. Civ. P. 25.

2. **OUTSTANDING ISSUES TO BE DECIDED WITH RESPECT TO THE WAVE THREE BELLWETHER PROCESS**

On February 17, 2026, the parties submitted letters setting forth their respective positions

regarding the Wave Three bellwether process. (*See* ECF Nos. 3258-2 (Defs.' 2/17/26 Ltr. to Court

re Wave Three Bellwether Proposal); 3258-3 (Pls.' 2/17/26 Ltr. to Court re Wave Three Bellwether

Proposal).) At the Court's request (*see* 2/18/26 Email from Judge T. Vanaskie to D. Nigh (Ex. 2)),

each party submitted a response to the other's position statement identifying areas of disagreement

(*see* ECF Nos. 3258-5 (Defs.' 2/27/26 Ltr. to Court re Opp'n To Pls.' Wave Three Bellwether

Proposal); 3258-6 (Pls.' 2/27/26 Ltr. to Court re Opp'n To Defs.' Wave Three Bellwether

Proposal)). While some of these outstanding Wave Three issues were mentioned briefly at the

March 6, 2026 CMC, the Court did not hear argument with respect to them. (ECF No. 3260.)

Below are: (A) a summary table setting forth Defendants' understanding of the parties'

respective positions on these topics; and (B) a brief recap of the basis for Defendants' positions on

each item.

A. **Summary of the Parties' Positions on Outstanding Wave Three Issues**

| ISSUE | DEFS'. POSITION | PLS.' POSITION |
|---|---|---|
| **Bellwether Candidate Selection** | | |
| Certification Process | Plaintiffs in the overall eligible Wave Three pool to certify that they have identified a physician willing to attest to specific causation prior to bellwether selection. | Plaintiffs to certify that there is a good-faith basis for specific causation fact discovery. |
| Candidate Selection Process | Random selection of five candidates from the overall eligible Wave Three | Each side to pick six cases from the eligible Wave Three |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 4

| ISSUE | DEFS'. POSITION | PLS.' POSITION |
|---|---|---|
| | Bellwether pool to be worked up, and five alternates that could be elevated to the pool at random as necessary. | Bellwether pool for a total of 12 cases to be worked up. |
| **Periodic Recertifications** | | |
| Periodic Recertifications at Various Stages of Discovery | Plaintiffs to provide periodic recertifications that bellwether candidates intend to proceed with their claims at various stages, including: (i) after the conclusion of fact discovery; (ii) following completion of the depositions of Plaintiffs' specific causation experts; and (iii) after completion of all expert discovery on specific causation. | Plaintiffs to provide a one-time certification after the close of fact discovery, without any certifications after the depositions of Plaintiffs' experts or at the close of expert discovery. |
| **Bellwether Discovery** | | |
| Timing of Expert Disclosure and Depositions | Plaintiffs to provide specific causation reports and disclose names of general causation experts at end of fact discovery; Defendants to depose Plaintiffs' specific causation experts prior to providing rebuttal reports. | Plaintiffs to provide specific causation reports at the end of fact discovery and Defendants to provide rebuttal reports before any of Plaintiffs' experts are deposed. |
| **Trial Issues** | | |
| Trial Selection Process | Defendants to pick first trial case from among any bellwether candidates whose claims survive summary judgment given that Plaintiffs selected *Roberts* as the Wave One trial case and dismissed all Wave Two cases; Plaintiffs to pick second trial. | Plaintiffs appear to agree that the parties should select the trial cases, as opposed to random selection, but appear to disagree that Defendants should pick the first trial. |

B.  **Basis for Defendants' Position on Outstanding Wave Three Issues**

    (i)  **Preliminary Certification Process of Specific Causation Is Needed Before Wave Three Selection.**

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 5

Consistent with the Court's statements at the March 6, 2026 CMC, Defendants propose an initial certification process applicable to the entire eligible Wave Three Bellwether pool. Under Defendants' proposal, within 60 days of the adoption of a Wave Three Bellwether process, the Plaintiff in each case within the eligible pool would be required to provide a certification that includes: (a) identification of the diagnosed primary cancer type of the party who consumed valsartan; (b) the date of diagnosis; and (c) a form declaration from a healthcare provider providing a preliminary affirmation, to a reasonable degree of medical certainty based on the evidence currently available, that consumption of affected valsartan products caused the Plaintiff's cancer. As the Court noted at the March 6, 2026 CMC, "this process is eminently reasonable in light of the history of this case." (3/6/26 CMC Tr. 21:14-20.) *See also, e.g.*, *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 2016 WL 3281032 (N.D. Ill. June 10, 2016) (order requiring plaintiffs in bellwether trial track in medical device MDL proceeding to provide a signed expert declaration attesting, based on the available evidence, that "to a reasonable degree of medical certainty" the alleged product defect "was a cause" of the plaintiff's alleged injury).

Plaintiffs have identified approximately 135 cases as eligible for inclusion in the Wave Three Bellwether pool (subject to *Lexecon* objections from the parties). However, during a meet-and-confer videoconference earlier today, Plaintiffs' counsel stated that, when factoring in Plaintiffs' *Lexecon* objections, that number will be cut down to 30-50 cases at most (Plaintiffs indicated that they would provide Defendants with a list of those 30-50 cases in advance of the May 8 CMC but have not yet done so). Defendants have serious concerns that Plaintiffs intend to use *Lexecon* waivers to manipulate the Wave Three bellwether pool by effectively striking more than half of the bellwether pool (likely leaving only the cases that Plaintiffs believe are strongest).

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 6

As discussed further below, if this is permitted, Plaintiffs will have essentially hand-picked the Wave Three pool and, as a result, Defendants should, at the very least, be allowed to pick all of the trial candidate cases.

Regardless of the number of cases that are ultimately included in the Wave Three pool, Defendants continue to believe that preliminary certifications should be required for all cases and that 60 days is adequate time for Plaintiffs' counsel to identify a healthcare provider willing to provide a preliminary certification as to specific causation based on available information. This is particularly true given that each Plaintiff eligible for the pool has already submitted a Court-approved Plaintiff Fact Sheet that includes information relevant to their claims, including product use, length and duration of exposure, cancer diagnosis and timing, potential comorbidities and alternative risk factors, and other meaningful details.

During today's meet-and-confer, Plaintiffs' counsel also stated for the first time that their experts cannot provide even a preliminary certification as to specific causation without first obtaining information from Defendants regarding the potential amount of NDMA to which each plaintiff in the Wave Three pool was exposed based on their pharmacy and other data (some of which is in the possession of third parties). Defendants are considering Plaintiffs' position, particularly in light of the fact that the Plaintiffs already have information in their possession about the length and amount of their valsartan use. The parties are scheduled to have further meet-and-confer discussions on this, and other Wave Three issues, on Thursday, May 7, 2026. Defendants will be prepared to address this issue at the May 8 CMC.

     **(ii)  Five Wave Three Bellwether Cases Should Be Randomly Selected From The Eligible Pool.**

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 7

Defendants initially proposed that once the cases eligible for the Wave Three pool are identified, the Court should randomly select five certified cases to be worked up as the Wave Three bellwether trial candidates, as well as five alternate cases that can be substituted in as bellwether cases if any of the original five cases are dismissed. By contrast, Plaintiffs have proposed that each party select six cases to be worked up for discovery, for a total pool of 12.

As a general rule, Defendants believe that random selection best ensures that trial cases in an MDL proceeding are representative. The Court previously used random selection to identify the initial pool of candidates for the Wave Two bellwether trial, a common practice in MDL proceedings to avoid outlier cases. (*See* 12/4/24 CMC Tr. 14:11-14 ("You're going to get to me a list of the ZHP, Teva, Torrent-only cases, and I'm going to use a random selector to select five more cases to be identified for trial. I'll let you know what those five cases are.").)

Here, however, it appears that Plaintiffs are using *Lexecon* objections to exclude half the bellwether cases from consideration. If they are allowed to do so, fairness demands that Defendants be allowed to select all five trial cases from the already-narrowed pool of cases.

Defendants also believe that it makes more sense to start by working up five cases for trial, rather than 12. In connection with Wave Two, the Court randomly selected four cases to be worked up for trial. Conducting fact discovery in those four cases took months and involved depositions of approximately 29 treating physicians and other fact witnesses. Requiring the parties to prepare 12 cases for trial (three times as many) would be enormously expensive and time-consuming, particularly for ZHP, which is a defendant in virtually every potential Wave Three case. It would also require a longer pre-trial schedule, delaying trial. To the extent Plaintiffs are suggesting that they need to work up a dozen bellwether candidates to find a viable trial case, that problem should

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 8

be addressed before case workup, not after. If Plaintiffs suspect that cases in the Wave Three pool are not strong enough to proceed to trial, the solution is to weed those cases out now through the certification process discussed above.

### (iii) Defendants Should Select the First Trial Case.

The parties appear to disagree on which side should select the case for the first Wave Three bellwether trial. (*See* 3/6/26 CMC Tr. 7:15-8:4.) Defendants propose that, following work-up of the Wave Three Bellwether cases through summary judgment, Defendants should select the first Wave Three bellwether trial case. This is the only fair outcome because Plaintiffs selected the *Roberts* case to serve as the initial bellwether candidate and were then able to avoid taking any case to trial in Wave Two through dismissals. Defendants propose that Plaintiffs select the case for the second Wave Three bellwether trial from among the cases that remain.

### (iv) Plaintiffs Should Be Required To Provide Periodic Recertifications During Discovery.

At the March 6, 2026 CMC, the parties agreed that there should be periodic certifications by Plaintiffs that the bellwether candidate cases remain on track. (*See* 3/6/26 CMC Tr. 6:19-7:13.) The parties disagree, however, on the timing and content of those recertifications. (*Id.* 7:15-8:4.) Defendants propose that Plaintiffs' counsel provide periodic recertifications that their clients intend to proceed with their claims, including: (1) after the conclusion of fact discovery; (2) following completion of the depositions of Plaintiffs' specific causation experts; and (3) following completion of all expert discovery on specific causation. While Plaintiffs have indicated that they agree with the need to check in on the status of the Wave Three bellwether cases, their proposals provide only for a one-time certification at the close of fact discovery (without any initial certification prior to bellwether case selection or recertification after the depositions of Plaintiffs'

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 9

experts or at the close of expert discovery). Defendants are concerned that this would invite the same kind of bellwether manipulation and waste of resources that occurred in Wave Two.

### (v)    Plaintiffs' Specific Causation Experts Should Be Deposed Before Defendants' Specific Causation Experts Are Disclosed.

The parties disagree on the timing of disclosure and depositions of the parties' specific causation experts. (*See* 3/6/26 CMC Tr. 8:8-18.) Defendants' position is that the Court should permit Defendants to depose the Wave Three bellwether candidates' specific causation experts—and require Plaintiffs' counsel to again certify that they remain committed to proceeding to trial following those depositions—***before*** Defendants have to spend significant sums developing rebuttal expert evidence. This is a common practice in MDL proceedings, including in this District. *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mktg. Sales Pracs. & Prods. Liab. Litig.*, MDL No. 2738, 2024 U.S. Dist. LEXIS 84169, at *1-2 (D.N.J. Apr. 30, 2024) (any depositions of plaintiffs' experts "must be completed on or before May 17, 2004"; defendants shall designate their experts "on or before May 21, 2024"); *see also, e.g.*, Case Mgmt. Order No. 7 (Setting New Deadlines for Track One Cases) at 2, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 876 (N.D. Ohio Aug. 13, 2018) (Ex. 3) (requiring the plaintiffs in certain designated cases to serve expert reports by February 8, 2019, "and, for each expert, provide two proposed deposition dates between February 18 and March 15, 2019," with defendants to serve expert reports and provide deposition dates by March 26, 2019) (emphasis omitted).

As in Wave Two, Plaintiffs again insist that Defendants should be required to submit rebuttal specific causation reports before Plaintiffs' specific causation experts are deposed. This invites the same waste of resources that occurred in *Garcia* and *Suits*. In both cases, Defendants'

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 10

experts spent significant time and resources developing rebuttals to Plaintiffs' experts' opinions, only to have Plaintiffs drop the cases after, or shortly before, their own experts' depositions. The outcome of the Wave Two bellwether process highlights that Defendants should not be required to submit rebuttal causation reports before Plaintiffs' specific causation experts have been deposed.

3. **OTHER CASE MANAGEMENT ISSUES GENERALLY APPLICABLE TO THE MDL DOCKET**

Case management processes applicable to the larger docket are appropriate and needed, including certification of basic information as to the entire docket of personal injury cases. That said, as all parties have been immersed in the identification of cases eligible for Wave Three, the parties have not had the opportunity to fully meet and confer about potential case management procedures that could be used to help winnow the broader case docket. As such, Defendants request that the Court continue the discussion of case management processes applicable to the larger docket to the next status conference. This will allow the parties time to conference about potential procedures, and to provide proposals for potential procedures via the agenda for the next status conference. This will also provide the parties the benefit of being informed by the results of the case management procedures implemented regarding the Wave Three cases.

4. **WHOLESALER DEFENDANTS' REQUEST FOR DISMISSAL FROM WAVE THREE BELLWETHER CASES**

Of the approximately 135 cases eligible for selection as Wave Three bellwether work-up cases, 12 name one or more Wholesaler Defendants. Because the remaining claims against Wholesaler Defendants arise solely from their limited, pass-through role in the distribution chain, Wholesaler Defendants' inclusion would add needless complexity without yielding any meaningful insight into liability or exposure. Accordingly, Wholesaler Defendants request

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 11

dismissal from the 12 potential Wave Three bellwether cases in which they are named as defendants.

Wholesaler Defendants' role in the distribution chain—and the claims that remain against them—are limited and have no practical relevance to the core liability issues. Retail Pharmacy Defendants purchased valsartan-containing drugs from at least three sources: Manufacturer Defendants, Wholesaler Defendants, and other non-party wholesalers. As mere pass-through distributors, Wholesaler Defendants had no knowledge of or involvement with the alleged contamination of valsartan-containing drugs, did not alter the products, and had no direct contact with consumers. Accordingly, all conduct-based claims against Wholesaler Defendants have been dismissed. The only claims remaining against Wholesaler Defendants therefore sound in strict liability and breach of warranty—claims for which Wholesaler Defendants are entitled to indemnification, as evidenced by the terms of recent personal-injury settlement agreements with certain Manufacturer Defendants, and that are barred by many states' innocent-seller statutes.

The history of the Wave Two bellwether process underscores why Wholesaler Defendants should be dismissed from the Wave Three bellwether cases. Wholesaler Defendants were voluntarily dismissed at the outset in each Wave Two work-up case in which one or more Wholesaler Defendants was named. The dismissals were consistent with Plaintiffs' counsel's prior pronouncement that they did not want an initial bellwether case to involve claims against any Wholesaler Defendants. Those dismissals also made sense given the limited claims that remain pending against Wholesaler Defendants, the unlikelihood any of those claims would make it past summary judgment, and the added complications of having Wholesaler Defendants involved in a trial against one or more Manufacturer Defendants.

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 12

Wholesaler Defendants request the same treatment in the Wave Three bellwether process. Nothing about Wholesaler Defendants' involvement in the litigation has changed since Wave Two, and the same rationale for dismissals of Wholesaler Defendants applies with equal force to all potential Wave Three cases. Dismissal is appropriate now—before any cases are selected for work-up—because (1) Wholesalers should not be burdened with the time and expense of working up bellwether cases from which they will ultimately be dismissed and (2) the overall pool of Wave Three cases should not be limited or encumbered by claims against Wholesaler Defendants that individual personal injury Plaintiffs do not intend to pursue.

Counsel for Wholesaler Defendants has reached out to counsel for Plaintiffs, Daniel Nigh, and requested dismissal from all 12 cases involving claims against one or more Wholesaler Defendants that are eligible for selection as Wave Three bellwether cases. To date, Plaintiffs have not agreed to the requested dismissals. Thus, Wholesaler Defendants request the opportunity to address the propriety of their inclusion in the cases eligible for work-up as a Wave Three bellwether case before any work-up cases are selected.

5. **PHARMACY DEFENDANTS' POSITION REGARDING FURTHER STREAMLINING OF THE WAVE THREE POOL**

The Pharmacy Defendants have long maintained that the personal injury claims against them are legally unsustainable. Following Judge Kugler's rulings on motions to dismiss and the PEC's amendments, only a smattering of causes of action remain pending against the pharmacies, and many of those are subject to dismissal under various state's innocent seller laws. In some states, the only claims pending against the pharmacies are those asserted under various state law consumer protection statutes and should be dismissed following summary judgment briefing.

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 13

As much as the Pharmacy Defendants would like to narrow the pool of pending claims against them through state-by-state motion practice, it seems more efficient for the Court and parties to consider the broader causation issues in the Wave Three bellwether cases and/or wait for further narrowing of claims through finalized settlements among manufacturers before engaging in briefing that is pertinent only to the unique issues presented by the meritless claims against Pharmacy Defendants for dispensing an FDA-approved prescription. The Pharmacy Defendants anticipate that all parties and the Court would likewise prefer the next wave of bellwether cases involve a narrowed set of issues against the Manufacturer Defendants only, leaving any issues involving pharmacies to be decided—if necessary—at a later date.  At a meet and confer earlier today, counsel for Plaintiffs indicated a willingness to streamline the Wave Three pool in some fashion that would not include claims against Pharmacy Defendants, and the parties are continuing to meet and confer regarding proposals to accomplish further streamlining the Wave Three pool.

6. **CMO-38 PRODUCT IDENTIFICATION DEFICIENCIES AND ORDERS TO SHOW CAUSE**

**Cases Addressed at April 2, 2026 Case Management Conference:**

The Court did not issue any show cause order returnable at the May 8, 2026, Case Management Conference.

**Second Listing Cases – Order to Show Cause Requested:**

The following product identification issues remain unresolved. This list was provided to Plaintiffs' leadership on April 29, 2026 and a meet and confer was held on May 3, 2026. Defendants have also been available for further discussion as needed. This is the second time these cases have been listed on this agenda. Accordingly, the Requesting Manufacturer Defendants

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 14

request that an Order to Show Cause be entered in each of these cases, returnable at the next case

management conference, as to why the listed entities should not be dismissed from these cases.

| Plaintiff | Docket | Attorney | Deficiency | Entity(ies) to be Dismissed | Prior Dismissal Request(s) |
|---|---|---|---|---|---|
| 1. Howard Cox | 19-cv-20849 | Nigh Goldenberg | No Teva Product | Teva Pharmaceutical Industries, Ltd.; Teva Pharmaceuticals USA, Inc. | 3/20/26 |
| 2. James Gibson | 20-cv-12117 | Douglas & London | No Teva Product | Arrow Pharm Malta Ltd. | 3/13/26 |
| 3. Stephen Hnatew | 25-cv-18057 | Nigh Goldenberg | No Aurobindo Product | Aurobindo Pharma, Ltd. and Aurobindo Pharma USA, Inc. | 3/10/26 |
| 4. Terri Stine | 2019 -cv-20214 | Axley Brynelson, LLP | No Aurobindo Product | Aurobindo Pharma, Ltd. and Aurobindo Pharma USA, Inc. | 3/10/26 |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 15

| 5. Terese Fougere | 2019-cv-17597 | Pius A. Obioha | No Aurobindo Product | Aurobindo Pharma, Ltd. and Aurobindo Pharma USA, Inc. | 3/10/26 |
|---|---|---|---|---|---|
| 6. Donald Stewart | 2019-cv-21475 | Stark & Stark | No Aurobindo Product | Aurobindo Pharma, Ltd. and Aurobindo Pharma USA, Inc. | 3/9/26 |

**First Listing Cases – Order to Show Cause Requested:**

The following product identification issues remain unresolved. This list was provided to Plaintiffs' leadership on April 29, 2026 and a meet and confer was held on May 3, 2026. Defendants have also been available for further discussion as needed. This is the first time these cases have been listed on this agenda. Accordingly, Defendants are not requesting orders to show cause with respect to any of the below cases at this time and will continue to meet and confer to resolve these deficiencies.

| Plaintiff | Docket | Attorney | Deficiency | Entity(ies) to be Dismissed | Prior Dismissal Request(s) |
|---|---|---|---|---|---|
| 1. Ray Wilkes | 2025-cv-17675 | Nigh Goldenberg | Losartan Case | Aurobindo Pharma, Ltd. and Aurobindo Pharma USA, Inc. | |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 16

### 7.  PLAINTIFF FACT SHEET DEFICIENCIES AND ORDERS TO SHOW CAUSE

**Cases Addressed at the April 2, 2026, Case Management Conference:**

The Court issued twenty show cause orders returnable at the May 8, 2026, Case Management Conference:

1. *Carol Ellis v. Aurobindo, et al.* – 25-cv-1839
2. *Joseph Butler v. Amerisource Bergen, et al.* – 25-cv-14547
3. *Martin Gojcaj v. Aurobindo, et al.* – 25-cv-19122
4. *James Barnette v. ZHP, et al.* – 25-cv-16332
5. *Lester Medearis ZHP, et al.* - 25-cv-17959
6. *Allen Gouse v. Solco, et al.* - 25-cv-17942
7. *James Lynam v. Aurobindo, et al.* - 25-cv-18039
8. *James Bright v. Actavis, et al.* - 25-cv-18059
9. *Willard Bohn v. ZHP, et al.* - 25-cv-18046
10. *Timothy Zimmerman v. ZHP, et al.* - 25-cv-18045
11. *Marcia Myers v. ZHP, et al.* - 25-cv-18267
12. *Alan Ropke v. Aurobindo, et al.* - 25-cv-18474
13. *Ricky Ellis v. ZHP, et al.* - 25-cv-18634
14. *Leah Wesley v. ZHP, et al.* - *25-cv-18707*
15. *Andrea Thomas v. ZHP, et al.* - *25-cv-18764*
16. *Kenny Ladd v. Torrent, et al.* - 23-cv-1620
17. *April Williams v. Torrent, et al.* - 25-cv-11843
18. *Larry Horn v. ZHP, et al.* – 25-cv-18061
19. *Craig Nash v. ZHP, et al.* – 25-cv-18040
20. *Ray Wilkes v. Aurobindo Pharma, et al.* – 25-cv-17675

The issues in the *Carol Ellis, Butler, Barnette, Medearis, Gouse, Bohn,* and *Thomas* matters remain unresolved, but the parties agree to an extension of the show cause orders until the next case management conference.

The issues in the *Gojcaj, Lynam, Bright, Zimmerman, Myers, Ropke, Ricky Ellis, Wesley, Nash, Wilkes,* and *Horn* matter are resolved and the order to show cause is withdrawn.

The issues in the *Ladd* and *Williams* matters remain and Defendants request their dismissal.

**Second Listing Cases – Order to Show Cause Requested:**

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 17

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. Each of these cases were previously listed on the agenda for a prior CMC. This list was provided to Plaintiffs' leadership on April 29, 2026 and a meet and confer was held on May 3, 2026. Defendants have also been available for further discussion as needed. Accordingly, Defendants request that an Order to Show Cause be entered in each of these cases, returnable at the next case management conference, as to why these cases should not be dismissed.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 1. | James Hall v. Express Scripts | 20-cv-7978 | Watts Law Firm | No pharmacy records | 3/18/26 |
| 2. | Donald McCauley v. Express Scripts | 20-cv-8496 | Watts Law Firm | No pharmacy records; no authorizations; no medical records. | 3/18/26 |
| 3. | John Panos | 25-cv-17773 | Nigh Goldenberg | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>No health insurance authorization with witness signature. | 3/5/26 |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 18

| 4. | Steven Glau | 25-cv-17972 | Nigh Goldenberg | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>No health insurance authorization with witness signature | 3/16/26 |
|---|---|---|---|---|---|
| 5. | Hillary Okafor | 25-cv-17569 | Morgan & Morgan | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>Incorrectly filled out health insurance authorization, input "Morgan & Morgan" into section where health insurer name and address should be located | 3/24/26 |
| 6. | Stephen Hnatew | 25-cv-18057 | Nigh Goldenberg | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>Incorrectly filled out health insurance authorization | 3/24/26 |
| 7. | Brian Schuman | 25-cv-17809 | Nigh Goldenberg | Health care authorizations missing printed name.<br><br>Health insurance authorizations are missing witness signature. | 3/24/26 |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 19

| 8. | Nancy Moore | 26-cv-709 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/28/26 |
|---|---|---|---|---|---|
| 9. | Mona Dunn | 26-cv-705 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/28/26 |
| 10. | Patrick Quilty | 26-cv-713 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/28/26 |
| 11. | Tina Wiltshire | 25-cv-18769 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/28/26 |
| 12. | Linda Todd | 26-cv-851 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/30/26 |
| 13. | Suhail Sawaged | 26-cv-865 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/30/26 |
| 14. | Robert Chovan | 26-cv-883 | Nigh Goldenberg Raso & Vaughn | No PFS Filed | PFS Due – 3/30/26 |

**First Listing Cases – Remaining Core Deficiencies:**

Pursuant to CMO-16, the Plaintiff Fact Sheets in the below cases are substantially incomplete and contain core deficiencies. This list was provided to Plaintiffs' leadership on April

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 20

29, 2026 and a meet and confer was held on May 3, 2026. Defendants have also been available for

further discussion as needed. This is the first listing for each of these cases. Accordingly,

Defendants are not requesting orders to show cause with respect to any of the below cases at this

time and will continue to meet and confer to resolve these deficiencies.

| | Plaintiff | Civil Action No. | Law Firm | Deficiencies | Deficiency Sent |
|---|---|---|---|---|---|
| 1. | James Bright v. Actavis, LLC, et al. | 25-cv-18059 | Nigh Goldenberg | Authorizations must be addressed to providers and be undated.<br><br>Mental health authorization required per PFS responses. | 4/22/26 |
| 2. | Therese Fougere v. Aurobindo Pharma, Ltd. | 19-cv-17597 | Pius A. Obioha | No records.<br><br>No authorizations. | 3/31/26 |
| 3. | Salvatore Caruso v. ZHP, et al. | 20-cv-5897 | Watts Law Firm | No records.<br><br>No authorizations. | 4/2/26 |
| 4. | Paul Lawrence v. ZHP, et al. | 25-cv-18080 | Nigh Goldenberg | No record of valsartan usage cited in PFS | 4/28/26 |
| 5. | Thomas Williams | 20-cv-3196; 19-cv-6849 | Anapol Weiss; Levin Law Firm | Duplicate Case. Request dismissal of one case. | |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 21

| 6. | Larry Horn | 25-cv-18061 | Nigh Goldenberg | Improperly filled out PFS<br><br>No medical records<br>No authorizations or health insurance authorizations. | Mylan – 4/21/26 |
|---|---|---|---|---|---|
| 7. | Ray Wilkes | 25-cv-17675 | Nigh Goldenberg | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>Incorrectly filled out health insurance authorization | Mylan – 4/21/26 |
| 8. | Craig Nash | 25-cv-18040 | Nigh Goldenberg | Must provide one undated authorization with name and address of each provider/facility/pharmacy listed in PFS<br><br>Incorrectly filled out health insurance authorization | Mylan – 4/6/26 |
| 9. | Michael Murphy and Mary Herkenham v. Aurobindo Pharma, Ltd., et al. | 1:25-cv-15904 | Chaffin Luhana LLP | Aurobindo use post-dates recall | MLB-1/6/2026 |
| 10. | Donna Walker | 26-cv-908 | Nigh Goldenberg | No PFS Filed | PFS Due – 3/29/26 |
| 11. | Arnold Vander | 20-cv-10244 | Nigh Goldenberg | No PFS Filed | PFS Due – 10/19/20 |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 22

| 12. | Diane Frame | 26-cv-928 | Nigh Goldenberg | No PFS Filed | PFS Due – 3/29/26 |
|---|---|---|---|---|---|
| 13. | Lois Parks | 26-cv-884 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 14. | Max Hohrine | 26-cv-00932 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 15. | Robert Brock | 26-cv-00931 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 16. | Peter Kankam | 26-cv-00933 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 17. | Donna McGregory | 26-cv-00922 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 18. | William Pelekasis | 26-cv-00899 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
| 19. | Werner Raff | 26-cv-00930 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |

The Hon. Renée Marie Bumb
Special Master the Hon. Thomas Vanaskie
May 6, 2026
Page 23

| 20. | Placido Sangiorgio | 26-cv-00901 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/3/26 |
|---|---|---|---|---|---|
| 21. | James Carey | 26-cv-01500 | Nigh Goldenberg | No PFS Filed | PFS Due – 4/17/26 |

Respectfully submitted,

*Clem C. Trischler*

Clem C. Trischler

c:    All counsel of record (via ECF)