# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **IN RE: VALSARTAN, LOSARTAN, AND IRBESARTAN PRODUCTS LIABILITY LITIGATION**<br><br>**This Document Relates to All Actions** | MDL No. 2875<br><br>Honorable Renée Marie Bumb<br>District Court Judge |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REVERSE SPECIAL MASTER ORDER ON THE ZHP MOTION TO SEAL

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS.......................................................................................i

TABLE OF AUTHORITIES ............................................................................. ii

BACKGROUND ...............................................................................................3

ARGUMENT .....................................................................................................5

I.     ZHP HAS SHOWN THE REDACTED PORTIONS OF THE
       SEPTEMBER 16 LETTER ARE PRIVILEGED. ........................................5

II.    PLAINTIFFS' DISCUSSION OF LEGAL HOLD CASELAW IS
       INAPPOSITE. ..............................................................................................7

III.   THE ZHP WITNESSES' TESTIMONY DID NOT WAIVE
       PRIVILEGE OVER THE REDACTED MATERIAL IN THE
       SEPTEMBER 16 LETTER. ..........................................................................8

IV.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE
       THE CRIME-FRAUD EXCEPTION..........................................................14

CONCLUSION ................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AstraZeneca LP v. Breath Limited*,
    No. 08-1512 (RBK/AMD), 2010 WL 11428457
    (D.N.J. Aug. 26, 2010) ...........................................................................10, 13

*Boyington v. Percheron Field Services, LLC*,
    No. 3:14-CV-90, 2016 WL 6068813 (W.D. Pa. Oct. 14, 2016) .....................7

*Brigham & Women's Hospital Inc. v. Teva Pharmaceuticals USA, Inc.*,
    707 F. Supp. 2d 463 (D. Del. 2010) ..........................................................9, 12

*Jorjani v. New Jersey Institute of Technology*,
    No. 18-11693 (WJM), 2023 WL 2986694
    (D.N.J. Apr. 18, 2023) ..................................................................9, 10, 11, 13

*Major Tours, Inc. v. Colorel*,
    No. 05-3091 (JBS/JS), 2009 WL 2413631 (D.N.J. Aug. 4, 2009)..................7

*Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*,
    32 F.3d 851 (3d Cir. 1994) ..............................................................9, 10, 13

*Rudderow v. Boston Scientific Corp.*,
    No. 20-08561 (CPO), 2022 WL 1500958 (D.N.J. May 11, 2022)..................5

*United States ex rel. Silbersher v. Janssen Biotech, Inc.*,
    No. 19-cv-12107 (MEF) (SDA), 2025 WL 2693954
    (D.N.J. Sept. 22, 2025) ..........................................................................13, 14

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)........................................................................................6

*In re Valeant Pharmaceuticals, Inc.*,
    No. 3:16-cv-3087, 2021 WL 2163463 (D.N.J. Apr. 26, 2021) .......................9

*Winston & Strawn LLP v. Janssen Products, L.P.*,
        No. 22-5061 (GC) (RLS), 2022 WL 3588106 (D.N.J. Aug. 22, 2022) ..........6

Defendants Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP"), Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC (collectively, the "ZHP Defendants") respectfully submit this opposition to Plaintiffs' Objection and Appeal of the Special Master Order on the ZHP Motion to Seal ("Objection" or "Obj.") (ECF No. 3285) the September 16, 2025 letter from Richard T. Bernardo to Chief Judge Renée Marie Bumb (the "September 16 Letter") (ECF No. 3272).

The September 16 Letter provided a preliminary report to the Court of outside counsel's investigation regarding whether ZHP or its previous counsel had acted in bad faith by not producing the certificates of analysis ("COAs") for dimethylformamide during the general discovery period.  ZHP seeks to maintain narrow redactions over portions of the September 16 Letter that describe attorney work product or outside counsel's mental impressions.  After briefing and oral argument, Judge Vanaskie agreed, in large part, with ZHP's request, finding that good cause exists to maintain almost all of the redactions in the September 16 Letter (the "Order").  (*See generally* ECF No. 3267.)

Plaintiffs now seek not only to reverse that ruling and unseal the handful of redactions in the September 16 Letter, but also to seek access to many years of privileged communications among ZHP, multiple law firms, and ZHP's discovery vendor regarding ZHP's efforts to comply with discovery requests.  The Court should deny that access, and affirm the Order for the following reasons:

1

*First*, ZHP only seeks to seal the redacted portions of the September 16 Letter that describe attorney work product or outside counsel's mental impressions regarding the investigation.  (*See* ECF No. 3181.)  Specifically, as the attached privilege log makes clear, the redacted information consists of the details of counsel's investigation or descriptions of a spreadsheet created by attorneys in the course of litigation, which is garden-variety work product.  (*See* Ex. 1.)[1]  As the Special Master found, such information "should be protected from discovery." (Order at 10.)

*Second*, while Plaintiffs spend many pages describing caselaw regarding the discoverability of legal hold instructions, these arguments miss the mark.  ZHP has already produced the legal hold, and none of the remaining redactions in the September 16 Letter discuss legal hold instructions.

*Third*, ZHP did not waive privilege by offering the testimony of its witnesses at the hearing on September 9, 2025, because that testimony did not reveal any privileged information and because ZHP did not (and has not) placed the advice of

---

[1]    ZHP initially sought to protect one additional redaction in which Mr. Bernardo describes an email from Duane Morris to ZHP providing legal advice regarding ZHP's collection and preservation obligations.  Consistent with Judge Vanaskie's Order, ZHP has removed that redaction.  The entries related to that footnote have been removed from the privilege log, and the privilege log attached to this opposition has been updated to reflect entries only for the redactions that continue to be challenged by Plaintiffs.

2

counsel at issue.  Plaintiffs' claims to the contrary are simply wrong, as the Special Master correctly found.  (*See* Order at 11-15.)

***Fourth***, and finally, Plaintiffs have not provided (and cannot provide) sufficient evidence to invoke the crime-fraud exception.  In any event, ZHP has provided the Court with the relevant materials related to the COA production that it has identified through its investigation.  (*See* ECF No. 3236 (ZHP's Counsel's Final Report); *see also* ECF No. 3237 (publicly-filed redacted version of ZHP's Counsel's Final Report).)  That material clearly does not support the application of the crime-fraud exception here.

## BACKGROUND

The lengthy procedural history that gives rise to this motion is set out, in large part, in the Court's April 8 Order.  (*See* ECF No. 3267 at 2-9.)  By way of brief summary, after an evidentiary hearing on September 9, 2025, regarding the production of COAs and other related materials, the Court directed ZHP to investigate whether there were any (1) specific communications between ZHP and Duane Morris regarding the collection or production of COAs for catalysts and solvents (9/9/25 Tr. 207:21-209:25 (ECF No. 3172)), or (2) specific requests by Plaintiffs for the COAs and related materials, other than certain requests approved by Judge Schneider (*id.* 210:20-25).  The Court instructed ZHP to submit its findings on these issues under seal.  (*See id.* 210:17-21.)

3

Consistent with this direction, ZHP filed its September 16 Letter under seal (ECF No. 3176), filed the required motion to seal the letter (ECF No. 3186), and provided Plaintiffs with a redacted version of the letter (which ZHP also filed on the docket, *see* ECF No. 3226). ZHP only sought to seal the redacted portions of the letter, which summarize (i) current counsel's mental impressions regarding the results of the investigation into why the COAs were not produced, and (ii) attorney work product generated by Duane Morris during the discovery process. (*See* ECF No. 3231-1.)[2]

On April 8, 2026, Judge Vanaskie issued the Order granting ZHP's motion to seal almost entirely. Specifically, Judge Vanaskie found: (1) "[c]onsistent with the prevailing view that instructions on preservation obligations are not protected, ZHP will be required to provide the text of the redacted footnote" (Order at 10 n.4); (2) the remaining redacted material in the September 16 Letter summarized "findings made by ZHP counsel as a result of its investigation into why the at-issue COAs were not produced in 2020" (*id.* at 10-11); (3) the findings "are protected by the work product doctrine" (*id.* at 11); (4) the testimony of the two witnesses proffered by ZHP at the September 9 hearing had not waived the protections of the attorney-

---

[2] Plaintiffs do not address the local requirements for sealing, which have been met and are addressed more fully in ZHP's initial motion to seal and are incorporated by reference here. (*See generally* ECF No. 3195.)

4

client and work product privileges (*id.* at 11-15); (5) "ZHP has not placed in issue the advice of counsel in regard to the destruction of COAs" (*id.* at 15); and (6) Plaintiffs were "not entitled to production of attorney work product having nothing to do with the inability of ZHP to now produce the COAs" (*id.*).

## ARGUMENT

**I.  ZHP HAS SHOWN THE REDACTED PORTIONS OF THE SEPTEMBER 16 LETTER ARE PRIVILEGED.**

Plaintiffs argue, again, that ZHP has failed to establish that the redacted portions of the September 16 Letter are privileged (Obj. at 6).  Judge Vanaskie rejected that argument (Order at 10), and this Court should do the same.

The redacted information comprises standard attorney work product warranting protection.  *See, e.g.*, *Rudderow v. Bos. Sci. Corp.*, No. 20-08561 (CPO), 2022 WL 1500958 (D.N.J. May 11, 2022) (finding Local Civil Rule 5.3(c)(3) was clearly met with regard to privileged materials and approving motion to seal). Specifically, as the attached privilege log explains, the redacted portions of the September 16 Letter contain:

- Outside counsel Richard Bernardo's characterization of communications between ZHP and its former counsel, Duane Morris, that discuss Duane Morris' mental impressions of document requests.

- Paragraphs containing Mr. Bernardo's characterization of an early draft of a spreadsheet prepared by Duane Morris that reveals Duane Morris' mental impressions regarding collection strategy for manufacturing-related document requests.

(Ex. 1 at 1.)  In addition, even though no documents were submitted to the Court

with the September 16 Letter, ZHP's provided a privilege log with detailed information regarding the spreadsheet being discussed in the second redacted portion of the September 16 Letter.  In particular, the log specifies, among other things, the author of the spreadsheet, as well as who sent it as an attachment to an email, who received it, and the date on which it was sent. (Ex. 1 at 2-4.)  This information leaves no doubt that the handful of redacted portions of the September 16 Letter describe attorney work product and/or comprise the mental impressions of outside counsel.  As Judge Vanaskie confirmed following an *in camera* review (*see* Order at 10), such information is clearly protected, and therefore should be sealed.  *See Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981) (noting the "'strong public policy' underlying the work-product doctrine"); *Winston & Strawn LLP v. Janssen Prods., L.P.*, No. 22-5061 (GC) (RLS), 2022 WL 3588106, at *3 (D.N.J. Aug. 22, 2022) (quashing subpoena seeking "discovery efforts made by [the client] and [law firm] throughout the course of litigating the Patent Action").

Plaintiffs now claim that they do not have enough information to evaluate ZHP's work product argument.  This makes no sense.  There are only two redactions at issue and they have been clearly described.

It appears that Plaintiffs are now attacking the sufficiency of ZHP's privilege log on documents that are not even at issue in this dispute.  ZHP did not attach any documents to its September 16 Letter.  It included documents on its privilege log

6

because those documents are described in the redacted portions of the September 16 Letter and ZHP thought that providing additional context would help Plaintiffs evaluate ZHP's privilege claims for the redacted material. The privilege log complies with the ESI protocol and Plaintiffs have nearly two-dozen fields of information for the single document listed. Enough is enough. No additional information is necessary.

## II.    PLAINTIFFS' DISCUSSION OF LEGAL HOLD CASELAW IS INAPPOSITE.

Plaintiffs' long discussion of caselaw purportedly finding that materials related to legal holds are not privileged is, in the main, inapposite. (Obj. at 7-10.) For one, Judge Vanaskie ordered ZHP to unredact a single footnote which describes, at a high level, directions regarding document preservation – and ZHP has complied with this direction. (*See* ECF No. 3272.) None of the other redactions in the

September 16 Letter discuss legal holds.[3]

In any event, Plaintiffs already have access to the information they seek. First, ZHP previously produced a litigation hold notice distributed to ZHP employees in connection with the valsartan litigation. Second, ZHP provided a list of employees that received litigation hold notices as of December 30, 2019, which Plaintiffs included as an exhibit to their unauthorized motion for sanctions. (ECF No. 3147-2.) Plaintiffs have access to the general facts surrounding ZHP's preservation efforts; nothing more is required.

## III. THE ZHP WITNESSES' TESTIMONY DID NOT WAIVE PRIVILEGE OVER THE REDACTED MATERIAL IN THE SEPTEMBER 16 LETTER.

The Special Master also correctly disposed of Plaintiffs' claim that the testimony of the ZHP witnesses at the September 9 hearing waived privilege. (Obj.

---

[3]    Because Judge Vanaskie's Order was limited to a specific sentence that contained a high-level description of preservation obligations, ZHP complied with the Order and is not appealing that decision. ZHP reserves its right to object to a broader application of the Order to attorney-client communications providing legal advice regarding the application of the legal hold, which it believes are privileged. *See Major Tours, Inc. v. Colorel*, No. 05-3091 (JBS/JS), 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (noting only that "plaintiffs are entitled to know which categories of electronic storage information employees were instructed to preserve and collect, and what specific actions they were instructed to undertake to that end"); *Boyington v. Percheron Field Servs., LLC*, No. 3:14-CV-90, 2016 WL 6068813, at *12 (W.D. Pa. Oct. 14, 2016) (granting motion to compel to the extent it sought "the *facts surrounding* Defendant's preservation efforts," but noting "Defendant need not produce the litigation-hold notices themselves, nor disclose any communications between its attorneys and employees").

8

at 10-13.)  These witnesses did not testify about the substance of any legal advice they were given – and, indeed, the litany of quotes recited by Plaintiffs in their Objection provide no more details about the substance of the advice than a privilege log would.  (*See generally id.* at 11-13.)  Most critically, ZHP has not put any privileged communications at issue or attempted to use privileged material as a "sword and a shield."  Accordingly, the ZHP witnesses' testimony on September 9 did not waive any privilege over the September 16 Letter's redacted sections.

A client's testimony regarding its communications with counsel does not waive attorney-client privilege unless the client puts specific legal advice at issue as an essential element of a claim or defense.  *Compare Brigham & Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463 (D. Del. 2010) ("*Brigham*") (finding waiver where client invoked counsel's advice to support an affirmative defense to a fraud on the PTO claim); *In re Valeant Pharms., Inc.*, No. 3:16-cv-3087, 2021 WL 2163463, at *6 (D.N.J. Apr. 26, 2021) (finding subject matter waiver where the court inferred that an "advice of counsel" defense was "waiting in the wings"); *with Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863-64 (3d Cir. 1994) ("*Rhone*") (finding no waiver where plaintiffs had "not interjected the advice of counsel as an essential element of a claim in this case"); *Jorjani v. N.J. Inst. of Tech.*, No. 18-11693 (WJM), 2023 WL 2986694, at *11 (D.N.J. Apr. 18, 2023), *aff'd*, No. 18-11693, 2023 WL 7895856 (D.N.J. Nov. 9, 2023) (finding no

9

waiver where defendant had not invoked counsel's advice as an affirmative defense and the relevant testimony only went to the witnesses' state of mind).

The Third Circuit has given clear guidance for determining if a client has sufficiently placed the advice of counsel at issue to cause a waiver. Critically, "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Rhone*, 32 F.3d at 863. Rather, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense *by disclosing or describing an attorney client communication.*" *Id.* (emphasis added). Given this guidance, courts routinely decline to find waiver where a client merely testifies that she consulted with counsel to explain how she came to pursue a particular course of action. *See, e.g.*, *AstraZeneca LP v. Breath Ltd.*, No. 08-1512 (RBK/AMD), 2010 WL 11428457 (D.N.J. Aug. 26, 2010) (finding no subject matter waiver where client testified it had proposed certain language on its warning label at the advice of counsel as evidence of its good faith effort to avoid infringing on the patent of another manufacturer).

For example, in *Jorjani*, the plaintiff sued his former employer, a university, alleging that the school "and certain members of its administration engaged in a conspiracy to violate [his] First Amendment rights." 2023 WL 2986694, at *2. Following a series of depositions, the plaintiff moved to compel the production of

10

previously withheld documents claiming waiver on the basis that three officials had "testified that they consulted counsel on general topics as well as the issues regarding [the plaintiff]" specifically. *Id.* at *8. In declining to find waiver, the court focused on *Rhone*'s admonition that "[d]efendants . . . do not waive the privilege when the clients' 'state of mind is put in issue in the action.'" *Id.* at *11 (citation omitted). Thus, because the witnesses' testimony was "limited to communications regarding [d]efendants' state of mind on [the plaintiff] and decisions about his employment," there was no waiver. *Id.* The court further noted that the defendants had "in no way ple[d] advice of counsel as an affirmative defense," which when coupled with the testimony at issue confirmed no waiver had occurred. *Id.*

The logic of *Jorjani* applies with equal force here. Ms. Kong and Ms. Kuang's general testimony that they engaged in communications with ZHP's former outside counsel during the discovery process did not put counsel's legal advice at issue. Ms. Kong primarily testified as to whether she believed ZHP had complied in good faith with its discovery obligations. (*See* 9/9/25 Tr. 61:2-4 ("I -- we did -- provided all our best efforts, even though, now looking back, there are areas to improve.").) While attempting to explain why COAs for the DMF solvent used in the valsartan manufacturing process were not produced, Ms. Kong recalled discussions with counsel related to discovery requests for COAs for valsartan API, but not for DMF. (*See id*. 74:25-75:4.) Likewise, Ms. Kuang merely testified that

11

she did not confirm with counsel each time documents were due for destruction. (*Id.* 123:15-18.)   As Judge Vanaskie correctly found, neither witness asserted that counsel's advice *was why* the COAs for DMF and related documents were not produced. (*See* Order at 14.)  Indeed, Ms. Kong specifically testified that she *could not explain* why ZHP had focused on the COAs for valsartan API and not those for catalysts and solvents, such as DMF:

> Reading it today, reading it today, Your Honor, reading it today, I -- I think I would say, yes, it's the certificate of analysis for valsartan and also for catalysts and also for solvents used in the tetrazole ring process. Now, going back where we were, I -- I -- I think our focus was really on a certificate of analysis for valsartan.  **But I -- I don't recall, and I could not explain, like, why we focused on the certificates of analysis on valsartan.**

(9/9/25 Tr. 89:20-90:3 (emphasis added).)  The excerpts of testimony Plaintiffs cite (*see* Obj. at 11-13) are not to the contrary.  The cited testimony simply explains ZHP's general course of conduct during discovery, and show discussions with counsel occurred during the process (as expected), which informed ZHP's state of mind. (*See id.*)

Plaintiffs' reliance on *Brigham* is misplaced.  In *Brigham*, the defendants raised as an affirmative defense that the plaintiffs' patent infringement claim failed because they had engaged in "inequitable conduct before the United States Patent and Trademark Office ('PTO')."  707 F. Supp. 2d at 465.  Specifically, the defendants argued that the "plaintiffs [had] intentionally withheld information

12

regarding [a certain patent application] in order to extend unlawfully the patent terms" for their own patents. *Id.* In response, the plaintiffs claimed that they could not have intentionally withheld any information from the PTO because they had relied on counsel to disclose all relevant materials. *See id.* at 471. Furthermore, counsel for plaintiffs testified that the "final decision" regarding what prior art had to be disclosed to the patent examiners – as well as the actual disclosure – was made by counsel. *Id.* Applying Federal Circuit law – not the law of this Circuit – the court ruled that "a litigant who asserts reliance of the advice of counsel as a defense [to inequitable conduct] waives the attorney-client privilege with regard to all communications pertaining to that advice." *Id.* at 470.

Here, by contrast, ZHP has not asserted reliance on the advice of counsel as an affirmative defense in the litigation, or even as a defense to Plaintiffs' allegations of spoliation. To the contrary, ZHP introduced its witnesses in response to the Court's request that someone from ZHP provide testimony regarding ZHP's good faith efforts during the document collection process. (*See* 8/26/25 Tr. 299:18-19 (ECF No. 3168) ("I don't want an affidavit. I just want someone to tell me what happened.").) The ZHP witnesses provided their recollection of the discovery process as requested by the Court, not as part of an affirmative defense. As courts have repeatedly recognized, this is not a sufficient basis for finding that privilege protections have been waived. *See, e.g.*, *Rhone*, 32 F.3d at 863; *AstraZeneca*, 2010

13

WL 11428457, at *6; *Jorjani*, 2023 WL 2986694, at *11.

## IV.    PLAINTIFFS HAVE NOT MET THEIR BURDEN TO INVOKE THE CRIME-FRAUD EXCEPTION.

Finally, Plaintiffs assert that any privilege protection that has not been waived is barred by the crime-fraud exception. (Obj. at 13-14.) As an initial matter, Plaintiffs have not made the prima facie case necessary to invoke the crime-fraud exception. In order to invoke the exception, the party seeking discovery – here, Plaintiffs – must show "that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud." *United States ex rel. Silbersher v. Janssen Biotech, Inc.*, No. 19-cv-12107 (MEF) (SDA), 2025 WL 2693954, at *3 (D.N.J. Sept. 22, 2025) (citation omitted). Such a prima facie showing requires the party seeking discovery to present "***evidence*** which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." *Id.* (emphasis added) (citation omitted). Plaintiffs have not come close to meeting their burden of making such a showing and instead premise their argument on baseless allegations.[4]

And even if Plaintiffs could have made the requisite prima facie showing, the

---

[4]    Notably, the Court has already expressed significant doubt regarding Plaintiffs' allegations of intentional spoliation. (*See, e.g.*, 9/9/25 Tr. 174:20-21 ("I thus far do not find anything sinister on the part of the ZHP client.").)

14

next step in the process is for a court to conduct an *in camera* evaluation of the privileged information. *See id.* (explaining "in camera evaluation of the material by the court" typically follows the prima facia showing) (citation omitted). ZHP has submitted an unredacted version of the September 16 Letter to the Court, as well as its final report on its investigation, for *in camera* review. (*See* ECF No. 3236.) As the Court can see for itself, the submissions, as well as the documents described in and attached to the final report, fail to satisfy the higher standard for invoking the exception, as "they do not demonstrate that Defendants or their attorneys were engaged in or intending to commit a fraud or crime, or that attorney-client communications were being misused in furtherance of a fraud or crime." *Silbersher*, 2025 WL 2693954, at *4.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to reverse the Special Master's order on ZHP's motion to seal the redacted portions of the September 16 Letter.

Dated: May 18, 2026                    Respectfully submitted,

                                       By: */s/ Richard T. Bernardo*
                                       Richard T. Bernardo (NY Bar No. 2288959)
                                       SKADDEN, ARPS, SLATE,
                                       MEAGHER & FLOM LLP
                                       One Manhattan West
                                       New York, NY 10001
                                       Telephone: (212) 735-3453
                                       Facsimile: (917) 777-3453

15

richard.bernardo@skadden.com

*Attorneys for Zhejiang Huahai Pharmaceutical Co., Ltd., Huahai U.S., Inc., Prinston Pharmaceutical Inc., and Solco Healthcare U.S., LLC*

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants in this matter.

/s/ *Richard T. Bernardo*
Richard T. Bernardo (NY Bar No. 2288959)

17